UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br>Direct Purchaser Plaintiffs actions | Case No. 0:18-cv-01776-JRT-HB<br><br>**DECLARATION OF W. JOSEPH BRUCKNER IN SUPPORT OF MOTION OF DIRECT PURCHASER PLAINTIFFS TO APPOINT INTERIM CO-LEAD COUNSEL** |

I, W. Joseph Bruckner, declare:

1. I am an attorney licensed to practice in the State of Minnesota and have been admitted to practice in several courts across the country, including this Court. For over twenty-five years I have been a partner with the firm of Lockridge Grindal Nauen P.L.L.P. ("LGN"), attorneys of record for Plaintiff Maplevale Farms, Inc., in the case styled as, *Maplevale Farms, Inc. v. Agri Stats, Inc., et al.*, Case No. 1:18-cv-01803 (D. Minn.) ("*Maplevale*"), which has been related in this District to other antitrust lawsuits filed by purchasers of pork in this District.

2. I submit this declaration in support of the accompanying Motion of Direct Purchaser Plaintiffs to Appoint Interim Co-Lead Counsel. I have personal knowledge of the facts in this declaration and could competently testify to them if called as a witness.

3. In addition, I am committed to prosecuting this case. If the Court appoints my firm as co-lead counsel in this litigation, I will devote myself personally to its leadership.

529469.3

I.  **Background of the Litigation**

4.  On June 29, 2018, LGN and Pearson, Simon & Warshaw, LLP ("PSW"), on behalf of our client, Maplevale Farms, Inc., filed the first direct purchaser antitrust case in these actions, *Maplevale Farms, Inc. v. Agri Stats, Inc., et al.*, Case No. 1:18-cv-01803 (D. Minn.) ("*Maplevale*").

5.  We brought the *Maplevale* action on behalf of all persons and entities who, between January 1, 2009 and the present, purchased pork directly from Defendants, their subsidiaries, affiliates, or any co-conspirator, for use or delivery in the United States. Maplevale alleges that pork producers colluded to artificially raise and maintain prices of pork sold in the United States, in violation of Section One of the Sherman Act, 15 U.S.C. § 1, and that the Class was harmed thereby.

6.  The motion in support of which I submit this declaration seeks appointment of lead counsel for the direct purchaser plaintiff cases. In addition to *Maplevale Farms*— the first direct purchaser case—and the other six direct purchaser actions,[1] at least seven indirect purchaser plaintiff class actions have been filed—five Consumer Indirect Purchaser Plaintiff ("Consumer IPP") cases, and two Commercial and Institutional Indirect Purchaser Plaintiff ("Commercial IPP") cases.[2]

---

[1] The six DPP cases on file to date are identified in the Court's Initial Case Management Order at 4, ECF No. 85, September 21, 2018.

[2] The five Consumer Indirect Purchaser Plaintiff ("Consumer IPP") cases and the two Commercial and Institutional Indirect Purchaser Plaintiff ("Commercial IPP") are identified in the Court's Initial Case Management Order at 4-5, ECF No. 85, September 21, 2018.

## II.  LGN and PSW Have Undertaken a Lengthy and Comprehensive Investigation to Develop This Litigation

7. LGN currently serves as plaintiffs' co-lead counsel in *In re Broiler Chicken Antitrust Litig.*, Case No. 1:16-cv-08637 (N.D. Ill.), in which Judge Thomas Durkin appointed LGN and PSW as DPP co-lead counsel based on our qualifications, reputation, and the other factors outlined in Fed. R. Civ. P. 23(g)(1)(A).[3] Our firms were the first to investigate the facts giving rise to the Broiler Chicken cases, which led to Plaintiffs' investigation of similar conduct in the pork industry.

8. LGN and PSW have devoted extensive efforts to identify and investigate Plaintiffs' claims in this case, and to coordinate with defense counsel and other Plaintiffs' counsel, to efficiently and effectively advance this litigation.

9. These efforts included engaging in extensive investigation of the pork market, the individual Defendants, and the facts alleged in the complaints. Our investigation included analyses of articles, research reports, SEC filings, conference calls, and investor presentations concerning the pork market and the individual Defendants. LGN and PSW also retained and consulted with experts who provided analyses of the pork market and the economics of the industry. We undertook our investigation without a parallel investigation by the U.S. Department of Justice or other federal or state competition regulator.

---

[3] Order, *In re Broiler Chicken Antitrust Litig.*, Case 1:16-cv-08637, N.D. Ill. October 14, 2016, [ECF No. 144] at 3, attached as Exhibit A to the Affidavit of W. Joseph Bruckner Describing Exhibits Submitted in Support of Motion of Direct Purchaser Plaintiffs to Appoint Interim Co-Lead Counsel ("Bruckner Exhibit Aff.").

10. The initial *Maplevale* complaint reflects our extensive investigation. The complaint details the characteristics that make the pork market susceptible to collusion, the changes in production practices that occurred during the relevant period, and their impact on pork pricing. Based on our research, the complaint also describes many specific examples of conduct and mechanisms by which we allege Defendants colluded.

11. LGN and PSW have worked and coordinated with Consumer IPP counsel Gustafson Gluek PLLC and Hagens Berman Sobol Shapiro LLP, who filed *Duryea, et al., v. Agri Stats, Inc., et al.*, Case No. 18-cv-01776 (D. Minn. filed June 28, 2018), the first class action complaint filed on behalf of indirect purchasers of pork.

12. As set forth above, several direct purchaser plaintiff actions followed the filing of the *Maplevale* case. LGN and PSW met and conferred with Plaintiffs' counsel in all known direct purchaser actions about our proposed leadership structure, among other things. All Plaintiffs' counsel unanimously support appointment of LGN and PSW as interim co-lead counsel.

13. LGN and PSW also have contacted defense counsel as they have made their appearances, sought to ensure that relevant ESI and documents are preserved by all parties, proposed a stipulation governing the scope of relevant information to be preserved by the parties, and requested that the parties meet and confer to reach that stipulation.

14. LGN and PSW also coordinated with other Defendants on certain initial pretrial matters including completion of service on the Defendants, and the timing of Defendants' response to the consolidated amended complaints. *See, e.g.*, Order to Extend Time and to Accept Service of Complaints (*Maplevale* Dkt. 71). LGN and PSW worked

with counsel for Defendants and Indirect Purchaser Plaintiffs to prepare an initial Case Management Order for the Court's consideration.

15.   LGN and PSW also served as the primary drafters and took the lead in preparing the DPP Consolidated Amended Complaint ("DPP CAC") filed on August 17, 2018. *See Maplevale* Dkt. 83. The DPP CAC reflects substantial additional research and investigation that was coordinated and conducted by LGN and PSW.

16.   We believe our firms are well suited to serve as interim co-lead counsel in this litigation. Our two firms have extensive experience in successfully prosecuting antitrust class actions and other complex litigation nationwide. As one example, in addition to *Broiler Chicken,* LGN and PSW spearheaded and co-led *In re Potash Antitrust Litigation (No. II)*, MDL No. 1996 (N.D. Ill.), a multidistrict antitrust class action involving potash sold in the United States. When a panel of the Seventh Circuit initially reversed Judge Castillo's comprehensive order denying defendants' motions to dismiss plaintiffs' highly detailed complaint, LGN and PSW obtained *en banc* review. The Seventh Circuit *en banc* unanimously affirmed Judge Castillo's ruling in an opinion of far-reaching importance. Among other things, the *en banc* opinion clarified the proper application in private civil litigation of the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a. *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845 (7th Cir. 2012). LGN and PSW ultimately obtained $90 million in settlements for the direct purchaser class. Like the *Broiler Chicken* action and the pork antitrust action now pending before this Court, LGN and PSW investigated and prosecuted the *Potash* case without the benefit of an investigation by the U.S. Department of Justice or other antitrust regulators.

### III. LGN Has Extensive Class Action and Antitrust Expertise

17. LGN specializes in antitrust litigation. For over 40 years we have prosecuted antitrust cases on behalf of large and small business injured by price-fixing, bid-rigging and other violations of the antitrust laws. We also practice in securities, environmental, employment, health care, commercial, intellectual property and telecommunications law. We have particular expertise in complex litigation, including federal multidistrict litigation. Our attorneys are skilled in pursuing and managing large complicated cases efficiently and cost-effectively. From this solid foundation, we regularly produce positive results for our clients and class members. In the last ten years alone, antitrust cases in which LGN played a significant role have recovered more than $2 billion.

18. As noted above, LGN serves as Plaintiffs' co-lead counsel in *In re Broiler Chicken Antitrust Litig.*, Case No. 1:16-cv-08637 (N.D. Ill.), appointed by the Honorable Thomas Durkin. Judge Durkin upheld our extensive and detailed complaint in that case and denied defendants' many motions to dismiss, and the case is now in discovery.

19. LGN and I also serve as Plaintiffs' co-lead-counsel in the *Freight Forwarders Antitrust Litigation (Precision Associates, Inc., et al. v. Panalpina World Transport (Holding) Ltd. et al.*, Case No. 08-cv-00042 (E.D.N.Y.), appointed by the Honorable John Gleeson. Our clients in *Freight Forwarders* alleged several global cartels to fix and impose surcharges and fees for freight forwarding services on U.S. shippers. To date we have achieved settlements of over $400 million for the class from nearly thirty defendant groups.

20. LGN and I also serve as Midwest Plaintiffs' co-lead counsel in *In re Wholesale Grocery Products Antitrust Litigation*, MDL No. 2090 (D. Minn.), appointed by the Honorable Ann Montgomery. LGN represents five certified classes of Midwest retail grocery stores who brought antitrust claims against the nation's two largest grocery wholesalers. After settling with one defendant, Ms. Odette and I tried the Midwest Plaintiffs' claims against the remaining defendant to a jury verdict before Judge Montgomery.

21. LGN and I also served in leadership positions in the following cases, among others: *In re Monosodium Glutamate Antitrust Litig.*, MDL No. 1328 (D. Minn.) (Judge Paul Magnuson), co-lead counsel, recovering $123 million for the class; *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.) (Judge John Gleeson), plaintiffs' executive committee; *In re Flat Glass Antitrust Litigation (II)*, MDL No. 1942 (W.D. Pa.) (Judge Donetta Ambrose), co-lead counsel, recovering $22 million for the class; *In re Urethane Antitrust Litigation (Polyester Polyols)*, MDL No. 1616 (D. Kan.) (Judge John Lungstrum), co-lead counsel, recovering $33 million for the class; *In re Pressure Sensitive Labelstock Antitrust Litigation*, MDL No. 1556 (M.D. Pa.) (Judge Thomas Vanaskie), co-lead counsel, recovering $45 million for the class.

22. Attached to the Bruckner Exhibit Aff. as Exhibit B is my firm's resume, which summarizes the experience of the attorneys in my firm.

23. My firm's background and my own experience, our efforts to investigate and develop the allegations contained in our complaints, and our clients' significant stake in

this litigation give us a solid foundation by which we can prosecute this case efficiently and expeditiously.

### IV. LGN's Attorneys Have Extensive Knowledge Of Antitrust Law

24. For more than 30 years, I have represented plaintiffs in antitrust class actions and other complex litigation nationwide. I have served as lead or co-lead counsel in several nationwide antitrust class actions, including those described above. I chaired the Antitrust Section of the Minnesota State Bar Association, and currently am an emeritus member. I also serve on the Board of Directors of the American Antitrust Institute,[4] and am a past president and current executive committee member of the Committee to Support the Antitrust Laws (COSAL).[5] Both COSAL and the American Antitrust Institute are dedicated to the preservation and enforcement of our nation's antitrust laws and competition regulations. I am regularly named a "Super Lawyer" by the Minnesota Journal of Law and Politics, and I frequently speak and present at programs and seminars nationwide. I am a co-author of PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES, Edward Elgar Publishing (2012), and the INTERNATIONAL HANDBOOK ON PRIVATE ENFORCEMENT OF COMPETITION LAW, Edward Elgar Publishing (2010).

25. In addition to the above examples, my resume attached to the Bruckner Exhibit Aff. as Exhibit C, provides a detailed profile of the experience and qualifications of myself and my firm.

---

[4] www.antitrustinstitute.org

[5] www.supportantitrustlaws.com

26.   The experience of other LGN attorneys is described in their declarations in support of this motion.

## V. LGN Has the Resources and Capacity to Manage this Case Effectively and Efficiently

27.   My firm has demonstrated our willingness to devote substantial resources to the effective prosecution of litigation such as this.  For example, in *re Broiler Chicken,* since our appointment as co-lead counsel, we developed an extensive and detailed complaint alleging collusion in the poultry industry, and coordinated the efforts of other counsel in overcoming defendants' multiple motions to dismiss our complaint.  We have led and coordinated document review and a deposition program among all plaintiffs' class counsel, and developed and manage a detailed time and expense reporting protocol for direct purchaser plaintiffs' counsel to eliminate unnecessary, unauthorized and duplicative case work.

28.   In *Freight Forwarders*, we overcame multiple rounds of motions by defendants to dismiss plaintiffs' complaint; arranged the review of over 1.3 million documents; took more than 30 fact interviews; took 50 depositions worldwide; retained and coordinated the work of expert economists; negotiated and reached settlements with more than 30 defendants, and as a result have recovered more than $400 million for the class to date.  LGN also developed a time and expense reporting protocol, and collected and maintained monthly time and expense reports from all class counsel.

29.   Similarly, in *Potash*, LGN and PSW led all aspects of discovery, including plaintiffs' productions, review of defendants' discovery, coordination and taking of

depositions, extensive and successful briefing at the court of appeals, expert analysis and, ultimately, lengthy and successful settlement negotiations with all defendants.

30. If the Court selects us as co-lead counsel, we will bring the same resources and commitment to ensure the successful prosecution of this case.

### VI. LGN and PSW Have the Unanimous Support of Other Qualified Firms to be Lead Counsel

31. LGN and PSW have the unanimous support of several other highly qualified firms, firms who have considerable experience in prosecuting class actions and many of whom themselves have served as lead counsel. Each firm supports the appointment of LGN and PSW as interim co-lead class counsel in recognition of the work we have undertaken to develop and lead this litigation. Their support is another indication of our ability to work with other firms in litigation such as this.

### VII. Proposed Letter to DPP Co-Counsel Regarding Time Keeping

32. Attached to the Bruckner Exhibit Aff. as Exhibit D is a proposed letter establishing a time and expense reporting protocol for all DPP counsel. If appointed interim co-lead counsel, LGN and PSW will provide a letter substantially in the form of Exhibit D to all DPP co-counsel. As described in greater detail in the draft letter, the protocol proposes that time and expenses be reported on a monthly basis, in tenths of an hour, by task.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 26, 2018, at Minneapolis, Minnesota.

<u>s/ W. Joseph Bruckner</u><br>
W. Joseph Bruckner