UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br>Direct Purchaser Plaintiffs actions | Case No. 0:18-cv-01776-JRT-HB<br><br>**DECLARATION OF BRUCE L. SIMON IN SUPPORT OF MOTION OF DIRECT PURCHASER PLAINTIFFS TO APPOINT INTERIM CO-LEAD COUNSEL** |

I, Bruce L. Simon, declare:

1.  I am a partner in the firm of Pearson, Simon & Warshaw, LLP ("PSW") attorneys of record for Plaintiff Maplevale Farms, Inc., in the case styled as, *Maplevale Farms, Inc. v. Agri Stats, Inc., et al.*, Case No. 1:18-cv-01803 (D. Minn.) ("*Maplevale*"), which has been related in this District to other antitrust lawsuits filed by purchasers of pork in this District.

2.  I submit this declaration in support of the motion to appoint PSW and Lockridge Grindal Nauen PLLP ("LGN") as Interim Co-Lead Class Counsel for a class of direct purchasers of pork in the United States.

3.  I am one of the attorneys principally responsible for the handling of this matter. I am committed to prosecuting this case. If the Court appoints my firm as co-lead counsel in this litigation, PSW will devote the necessary resources and staff to support its leadership.

531017.1

I.      **Background of the Litigation**

4.      On June 29, 2018, LGN and PSW filed the first direct purchaser antitrust case in these actions on behalf of our client, Maplevale Farms, Inc.

5.      We brought the *Maplevale* action on behalf of all persons and entities who, between January 1, 2009 and the present, purchased pork directly from Defendants, their subsidiaries, affiliates, or any co-conspirator, for use or delivery in the United States. Plaintiff Maplevale alleges that pork producers colluded to artificially raise and maintain prices of pork sold in the United States, in violation of Section One of the Sherman Act, 15 U.S.C. § 1, and that the Class was harmed thereby.

6.      The motion in support of which I submit this declaration seeks appointment of lead counsel for the direct purchaser plaintiff cases.  In addition to *Maplevale Farms*—the first direct purchaser case—and the other six direct purchaser actions,[1] at least seven indirect purchaser plaintiff class actions have been filed—five Consumer Indirect Purchaser Plaintiff ("Consumer IPP") cases, and two Commercial and Institutional Indirect Purchaser Plaintiff ("Commercial IPP") cases.[2]

---

[1] The six DPP cases on file to date are identified in the Court's Initial Case Management Order at 4, ECF No. 85, September 21, 2018.

[2] The five Consumer Indirect Purchaser Plaintiff ("Consumer IPP") cases and the two Commercial and Institutional Indirect Purchaser Plaintiff ("Commercial IPP") are identified in the Court's Initial Case Management Order at 4-5, ECF No. 85, September 21, 2018.

## II.   LGN and PSW Have Undertaken a Lengthy and Comprehensive Investigation to Develop This Litigation

7. PSW currently serves as plaintiffs' co-lead counsel in *In re Broiler Chicken Antitrust Litig.*, Case No. 1:16-cv-08637 (N.D. Ill.) ("*Broiler Chicken*"), in which Judge Thomas Durkin appointed LGN and PSW as DPP co-lead counsel based on our qualifications, reputation, and the other factors outlined in Fed. R. Civ. P. 23(g)(1)(A). Our firms were the first to investigate the facts giving rise to the *Broiler Chicken* cases, which led to Plaintiffs' investigation of similar conduct in the pork industry.

8. LGN and PSW have devoted extensive efforts to identify and investigate Plaintiffs' claims in this case, and to coordinate with defense counsel and other Plaintiffs' counsel, to efficiently and effectively advance this litigation.

9. These efforts included engaging in extensive investigation of the pork market, the individual Defendants, and the facts alleged in the complaints. Our investigation included analyses of articles, research reports, SEC filings, conference calls, and investor presentations concerning the pork market and the individual Defendants. LGN and PSW also retained and consulted with experts who provided analyses of the pork market and the economics of the industry. We undertook our investigation without a parallel investigation by the U.S. Department of Justice or other federal or state competition regulator.

10. The initial *Maplevale* complaint reflects our extensive investigation. The complaint details the characteristics that make the pork market susceptible to collusion, the changes in production practices that occurred during the relevant period, and their impact

on pork pricing. Based on our research, the complaint also describes many specific examples of conduct and mechanisms by which we allege Defendants colluded.

11. LGN and PSW have worked and coordinated with Consumer IPP counsel Gustafson Gluek PLLC and Hagens Berman Sobol Shapiro LLP, who filed *Duryea, et al., v. Agri Stats, Inc., et al.*, Case No. 18-cv-01776 (D. Minn. filed June 28, 2018), the first class action complaint filed on behalf of indirect purchasers of pork.

12. As set forth above, several direct purchaser plaintiff actions followed the filing of the *Maplevale* case. LGN and PSW met and conferred with Plaintiffs' counsel in all known direct purchaser actions about our proposed leadership structure, among other things. All Plaintiffs' counsel unanimously support appointment of LGN and PSW as interim co-lead counsel.

13. LGN and PSW also have contacted defense counsel as they have made their appearances, sought to ensure that relevant ESI and documents are preserved by all parties, proposed a stipulation governing the scope of relevant information to be preserved by the parties, and requested that the parties meet and confer to reach that stipulation.

14. LGN and PSW also coordinated with other Defendants on certain initial pretrial matters including completion of service on the Defendants, and the timing of Defendants' response to the consolidated amended complaints. *See, e.g.*, Order to Extend Time and to Accept Service of Complaints (*Maplevale* Dkt. 71). LGN and PSW worked with counsel for Defendants and Indirect Purchaser Plaintiffs to prepare an initial Case Management Order for the Court's consideration.

15. LGN and PSW also served as the primary drafters and took the lead in preparing the DPP Consolidated Amended Complaint ("DPP CAC") filed on August 17, 2018. *See Maplevale* Dkt. 83. The DPP CAC reflects substantial additional research and investigation that was coordinated and conducted by LGN and PSW.

16. We believe our firms are well suited to serve as interim co-lead counsel in this litigation. Our two firms have extensive experience in successfully prosecuting antitrust class actions and other complex litigation nationwide. As one example, in addition to *Broiler Chicken,* LGN and PSW spearheaded and co-led *In re Potash Antitrust Litigation (No. II)*, MDL No. 1996 (N.D. Ill.), a multidistrict antitrust class action involving potash sold in the United States. When a panel of the Seventh Circuit initially reversed Judge Castillo's comprehensive order denying defendants' motions to dismiss plaintiffs' highly detailed complaint, LGN and PSW obtained *en banc* review. The Seventh Circuit *en banc* unanimously affirmed Judge Castillo's ruling in an opinion of far-reaching importance. Among other things, the *en banc* opinion clarified the proper application in private civil litigation of the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a. *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845 (7th Cir. 2012). LGN and PSW ultimately obtained $90 million in settlements for the direct purchaser class. Like the *Broiler Chicken* action and the pork antitrust action now pending before this Court, LGN and PSW investigated and prosecuted the *Potash* case without the benefit of an investigation by the U.S. Department of Justice or other antitrust regulators.

### III. PSW Has the Experience, Resources and Capacity to Manage this Case Effectively and Efficiently

17. PSW has the experience, qualifications, and resources to protect the interests of the class members, and we are willing and able to commit these resources to this case. PSW has demonstrated such capability and commitment in several other significant class action matters, including *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) ("*TFT-LCD*"), and more recently, *In re Credit Default Swaps Antitrust Litigation ("CDS")*, MDL No. 2476 (S.D.N.Y.).

18. In *TFT-LCD*, PSW worked as co-lead counsel with Lieff, Cabraser, Heimann & Bernstein, LLP for over five years, obtaining more than $405 million in settlements before taking the case all the way to trial, where it secured an $87 million jury verdict before trebling against Toshiba Corporation. PSW later settled with Toshiba and AU Optronics to bring the total to $473 million in settlements. Along with our co-lead counsel, PSW managed over 50 firms that had filed direct purchaser antitrust cases. PSW helped manage discovery of nearly 8 million documents consisting of over 40 million pages, and oversaw as many as 136 document reviewers working concurrently. The direct purchaser class served 184 sets of discovery requests and three written depositions, responded to 75 sets of requests propounded by defendants, and engaged in extensive discovery motion practice before a special master. Counsel took and defended more than 130 depositions: 50 in San Francisco, 40 elsewhere across the country, and 41 outside of the United States. In all, counsel for the direct purchaser plaintiffs incurred in excess of $11 million in costs and contributed well over 250,000 hours of work on the case.

19. In 2013, California Lawyer Magazine awarded me a California Lawyer of the Year Award for my work in *TFT-LCD*. The jury verdict in that case was cited by the *Los Angeles Daily Journal* as one of the top 10 verdicts of the year.

20. In *CDS*, my firm served as co-lead counsel with Quinn Emanuel for a class of purchasers and sellers of credit default swaps against the largest banks in the world. *CDS* alleged an anticompetitive conspiracy to maintain opacity of the credit default swaps market as a means of maintaining supra-competitive prices of bid/ask spreads. After three years of litigation and many months of intensive settlement negotiations, the parties reached a landmark settlement amounting to $1.86 billion, making it one of the largest civil antitrust settlements in history. The Honorable Denise L. Cote granted final approval to the settlement on April 15, 2016. During the course of the litigation, my firm and Quinn Emanuel helped manage the review of nearly 12 million documents, engaged in multiple rounds of discovery requests, and took the depositions of key witnesses. The two firms incurred many millions of dollars in costs and expenses to achieve the result that we did in the case.

21. PSW also currently serves as co-lead counsel for plaintiffs in *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation*, MDL No. 2451 (N.D. Cal.), in which Plaintiffs allege the NCAA and its member conferences violate the antitrust laws by capping the value of athletic scholarships at far below the actual cost of attending school, and below what the free market would bear. PSW settled the damages claims for $208 million. The injunctive relief portion of that case is currently in trial. I am one of the three lead trial counsel in the case in a bench trial before the Hon. Claudia Wilken

in the Northern District of California. The trial is expected to last ten days, and will be completed on or about September 26, 2018. This is commonly referred to in the press as a landmark case with potential widespread implications for how college sports are run by the NCAA and the conferences.

22. PSW was also recently appointed as lead counsel for the indirect purchaser plaintiffs, in *In re German Auto Manufacturers Antitrust Litigation*, MDL No. 2796 (N.D. Cal). The complaint alleges that certain German car manufacturers unlawfully coordinated on several key car components, actively limiting the pace and extent of innovation, while also acting to promote consumers' perception of German cars as commanding a price premium.

23. In 2018 I was named as the Antitrust Lawyer of the Year by the Antitrust, UCL and Privacy Section of the California Lawyers Association in recognition of the antitrust work I have performed throughout the course of my career.

24. In addition to the above examples, the PSW firm resume, attached to the Affidavit of W. Joseph Bruckner Describing Exhibits Submitted in Support of Motion of Direct Purchaser Plaintiffs to Appoint Interim Co-Lead Counsel as Exhibit E, provides a detailed profile of the experience and qualifications of myself and the other attorneys of PSW.

25. As the cases set forth in this declaration and the firm resume demonstrate, PSW has the resources, capacity and willingness to serve as lead counsel in complex antitrust class actions, and successfully litigate the case through trial if necessary.

**IV.  LGN and PSW Have the Unanimous Support of Other Qualified Firms to be Lead Counsel**

26. LGN and PSW have the unanimous support of several other highly qualified firms representing DPPs in the related actions who have considerable experience in prosecuting class actions and many of whom themselves have served as lead counsel. Each firm supports the appointment of LGN and PSW as interim co-lead class counsel in recognition of the work we have undertaken to develop this case and our ability to fulfill the duties of lead class counsel. Their support is another indication of our ability to work with other firms in litigation such as this.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 26, 2018, at San Francisco, California.

s/ Bruce L. Simon
Bruce L. Simon