# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | No. 0:18-cv-01776-JRT-HB |

This Document Relates To:

Commercial and Institutional Indirect
Purchaser Plaintiff Actions

| | |
|---|---|
| *Sandee's Bakery, et al. v. Agri Stats, Inc., et al.* | No. 0:18-cv-01891-JRT-HB |

**Declaration of Jonathan W. Cuneo in Support of Unopposed Motion to Appoint Jonathan W. Cuneo and Shawn M. Raiter as Interim Co-Lead Counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs**

I, Jonathan W. Cuneo, declare:

1.      I am the founding and senior partner of Cuneo Gilbert & LaDuca, LLP ("CGL"), a law firm headquartered in Washington, D.C.  A copy of my firm's resume is attached hereto as Exhibit A.

2.      CGL has spent a significant amount of time investigating the nature of the conspiracy at issue and its effect on Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIP").  CGL has taken other steps to advance its clients' interests in this case, including coordinating closely with counsel representing other CIIPs in the *Sandee's Bakery* matter, all of whom support CGL's motion to be appointed Interim Co-Lead Counsel.

3.      In 2012, Judge Marianne Battani of the Eastern District of Michigan appointed Jon Cuneo and Shawn Raiter interim co-lead counsel for indirect purchaser automobile dealerships in MDL 2311: *In re Automotive Parts Antitrust Litigation*, 2:12-md-02311 (E.D. Mich.)  We were appointed to represent putative classes of thousands of

automobile dealers bringing dozens of actions stemming from the largest antitrust investigation in the history of the Department of Justice's Antitrust Division.

4.    The *Automotive Parts* litigation involves more than 45 different conspiracies (each their own case) and more than 160 different defendants, most of which are foreign companies.  It has been described as the largest, most complex, antitrust litigation in U.S. history.  The *Automotive Parts* litigation continues today and has resulted in well over $1.6 billion in indirect purchaser settlements.  Under the leadership of myself, Mr. Raiter, and our Co-Lead counsel Don Barrett, the intermediate indirect purchaser automobile dealership plaintiffs have recovered well over $300 million in settlements.

5.    Before *Automotive Parts*, there were few, if any, successful antitrust actions brought for intermediate level indirect purchasers like the CIIPs.  Mr. Raiter and I have subsequently led other intermediate level indirect purchaser actions like *In re Vehicle Carrier Services Antitrust Litig.*, MDL No. 2471 (Co-Lead counsel representing a putative class of thousands of automobile dealers bringing indirect purchaser actions against various vehicle shipping companies).  I am the sole lead counsel for intermediate indirect purchaser pharmacies in *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.) (representing a putative class of indirect purchaser pharmacy resellers bringing indirect purchaser actions against drug manufacturers)

6.    I am the sole court-appointed lead counsel for indirect purchaser commercial food preparers in *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD (S.D. Cal.)  In that MDL, the plaintiffs allege a price-fixing conspiracy between the leading packaged tuna manufacturers—Chicken of the Sea, StarKist, and Bumble Bee, and

their parent companies. *Id.* Mr. Raiter also represents commercial food preparers in that litigation and works closely with me on the leadership of the law firms representing those businesses. Like the present cases, the *Packaged Seafood Products* litigation involves claims and defenses unique to the putative class of commercial food preparers.

7.     Before filing the first CIIP case in this litigation, my firm invested significant time and resources into this litigation, including investigating and the complaint in the CIIP Action, investigating the nature of the alleged conspiracy and its effect on CIIPs, and coordinating strategy with counsel for other CIIPs.

8.     Based on my experience leading litigation involving intermediate indirect purchasers in antitrust actions, I and others at my firm have identified and worked with economists who specialize in analyzing and quantifying the damage that intermediate indirect purchasers sustain in antitrust conspiracies. We have already engaged such experts for this litigation and have also engaged a highly qualified expert with a specialty in agricultural antitrust issues.

9.     Mr. Raiter and I have implemented billing and expense guidelines for the law firms working on the *Sandee's Bakery* case and have coordinated the activities of those firms. We have carefully monitored and assigned work to avoid unnecessary duplication of effort and have also established a litigation fund to pay for the costs incurred to advance the CIIPs' claims.

10.     Mr. Raiter and I have expressed our desire to work cooperatively with counsel for the later-filed CIIP case and believe that the two person co-lead counsel structure proposed in this application will best serve the CIIPs in this litigation.

### CGL's Qualifications

11.     Our firm has 21 attorneys and devotes the majority of its practice to the representation of clients involved in complex liability and class action litigation involving antitrust, securities, corporate governance, consumer protection, and products liability. My firm's résumé is attached hereto as Exhibit 1.

12.     I am admitted to the state bars of the District of Columbia and New York.

13.     I enjoy Martindale Hubbell's "AV" rating, am listed in Who's Who in American Law.

14.     After a federal appellate clerkship, I began my career as an attorney in the Office of the General Counsel of the Federal Trade Commission. During my three years at the Federal Trade Commission, I worked on a number of very prominent antitrust cases.

15.     I next worked as Counsel to the Subcommittee on Monopolies and Commercial Law of the U.S. House of Representatives' Committee on the Judiciary for four and a half years. This Subcommittee has jurisdiction over the antitrust laws.

16.     I was one of the three founding directors of the American Antitrust Institute. I served as a director from 1998 until 2009.

17.     I was recognized for my contributions to the field of antitrust law by the American Antitrust Institute with the *Alfred E. Kahn Award for Antitrust Achievement*, which is awarded to individuals who have contributed greatly in the antitrust field. The AAI lauded my efforts to defend the antitrust laws even when there existed immense external pressure to weaken them in the 1980s, stating, "Mr. Cuneo was the only person outside of the

government to be a spokesperson, clearinghouse, and advocate for strong antitrust enforcement."

18.     I have published numerous articles that have appeared in the *Georgetown Law Review*, the *George Washington Law Review*, the *Yale Human Rights and Development Law Journal*, *The Nation* magazine and *The New York Times*. I am also the co-editor of a textbook: THE INTERNATIONAL HANDBOOK OF PRIVATE ENFORCEMENT OF COMPETITION LAW (Edward Elgar Publishing Inc., 2010).

19.     I have served as counsel in a number of significant cases including:

- *Mangini v. RJ Reynolds Tobacco Company*, 7th Cal. 4th 1057
  (The first case to challenge the "Joe Camel" advertising campaign, resulting in the public release of documents showing the targeting of children. Congressman Henry Waxman referred to the attorneys as American heroes for their role in release of these documents).

- *Dennis v. Metromail*, Texas Dist. Ct., No-9604451
  (One of the most significant privacy cases in United States history, involving an information company contracting with Texas inmates to process private information).

- *In re Enron Corp. Sec. Litig.*, S.D. Tex., No. H-01-3624
  (Washington Counsel in litigation resulting in over $7 billion recovery, the largest recovery in securities fraud in history).

- *Rosner, et al. v. United States*, S.D. Fla., No. 01-cv-1859
  (The so-called "Gold Train" case, which involved the looting of the personal assets of Hungarian Holocaust victims and survivors by the United States Army after World War II, resulting in a statement of acknowledgement by the government and a $25.5 million settlement).

- *Galanti, et al. v. The Goodyear Tire & Rubber Company*, D.N.J., No. 03-cv-209
  ($340+ million recovery on behalf of homeowners who purchased allegedly defective radiant heating systems. Significantly, in my firm's role as lead counsel, we brought together over 20 law firms in three factions over a year and a half to forge a bi-national global settlement that was approved from the bench).

- *In re Automotive Parts Automobile Litigation*, E.D. Mich., MDL No. 2311 (interim co-lead counsel representing a putative class of thousands of automobile dealers alleging widespread price fixing and bid rigging by automotive parts manufacturers).

- *In re Vehicle Carrier Services Antitrust Litigation*, D.N.J., MDL No. 2471 (interim co-lead counsel representing a putative class of thousands of automobile dealers alleging price fixing and bid rigging by vehicle shipping companies).

- *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD (S.D. Cal.) (interim lead counsel representing a putative class of intermediate-level indirect purchasers).

20.     Working side-by-side with me on the pork antitrust litigation will be my partner Joel Davidow.  Mr. Davidow is one of the most experienced and distinguished antitrust lawyers in the country. Mr. Davidow worked at the U.S. Federal Trade Commission, followed by 15 years in the Antitrust Division of the Department of Justice, where he eventually served as Chief of the Foreign Commerce Section and then Director of Policy and Planning. Mr. Davidow has been a partner in several firms that advised and represented major corporations. Mr. Davidow has been an adjunct Professor of Law at George Washington University School of Law, Columbia Law School, Georgetown Law Center, American University Law School, and George Mason University Law School, where he has taught courses in antitrust, regulation, and international competition policy. Mr. Davidow is also the author of the ANTITRUST GUIDE FOR INTERNATIONAL BUSINESS ACTIVITIES (BNA, 4th ed. 2011).

21.     Over the past 30 years, I have productively worked with, and for, many—if not most—of the counsel for the other Plaintiffs' groups, and we are committed to coordinating effectively with the other Plaintiffs' groups in litigating the case, under

whatever organization structure the Court should choose to create. Indeed, collegiality is a core virtue of our firm.

22.     With 21 attorneys and five offices, my firm has the resources necessary to serve as one of the lead firms in this litigation. We are ready and willing to invest the time and expenses needed to bring this action to a successful resolution.

I affirm under penalty of perjury on this 28th day of September, 2018 that the foregoing is true to the best of my knowledge.

*/s/ Jonathan W. Cuneo*
Jonathan W. Cuneo
