## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK PROCESSING ANTITRUST LITIGATION | No. 0:18-cv-01776-JRT-HB |
| This Document Relates To : <br><br> ALL ACTIONS | **MEMORANDUM OF LAW IN SUPPORT OF CLEMENS FOOD GROUP, LLC'S AND THE CLEMENS FAMILY CORPORATION'S MOTION TO DISMISS** |

Plaintiffs have not alleged any fact establishing Clemens agreed with any competitor to reduce pork supply.  Nor do they allege Clemens closed any facilities, reduced its hog supply, or bought fewer hogs to process.  Instead, Plaintiffs essentially ignore Clemens completely.  Plaintiffs' complaints against Clemens fail for this reason alone.  They cannot "lump in" a defendant in a conspiracy case but, rather, must plead facts regarding *each* defendant.  *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1020 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999).  This makes sense in antitrust cases like this one where expenses are "enormous" and there are "discovery abuse" risks.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

Ignoring Clemens is no accident.  Clemens' conduct during the class period flatly contradicts Plaintiffs' supply reduction conspiracy theory. As Plaintiffs' own pleadings reveal, Clemens spent hundreds of millions of dollars to plan and construct a new processing plant that opened in Coldwater, Michigan in 2017, increasing its annual

capacity by 2.5 million hogs during a single shift.  (Compl. ¶ 101; Compl. ¶ 84).[1]  That cannot be reconciled with Plaintiffs' supply reduction theory, which hinges on Defendants' supposed agreement not "to build a new plant to expand capacity" because it would "drive the margins lower."  (*Id.* ¶¶ 109; 124.)  This alone, too, is fatal to their claim.  *See Stark v. Bank of Am., N.A.*, 2015 WL 756938, at *1 (D. Minn. Feb. 23, 2015) (The Court "need not make unreasonable inferences or accept unrealistic assertions.") (citing *Brown v. Medtronic, Inc.*, 628 F. 3d 451, 461 (8th Cir. 2010)).

Finally, Plaintiffs have not alleged how Clemens controls hog supply.  Clemens is primarily a processor that *buys* hogs from independent entities.  (Compl. ¶ 73.)  Plaintiffs have not alleged why a hog *processor* would want to *increase* the price of the hogs it buys.  Without alleging how Clemens *could* reduce hog supply or why it has *a motive* to reduce hog supply, Plaintiffs' claim fails to satisfy the plausibility test.

At bottom, Plaintiffs have not met their burden to bring Clemens, a small family-owned defendant, into this costly litigation.  Clemens is barely mentioned and, when it is, Plaintiffs concede facts that are antithetical to their theory.  Plaintiffs' claims as to Clemens should be dismissed.

---

[1]   Complaint abbreviations are defined in Defendants' Joint Motion to Dismiss (ECF No. 162), filed contemporaneously herewith.

**ARGUMENT**

## I.   PLAINTIFFS DO NOT ALLEGE ANY FACTS THAT CLEMENS ACTUALLY AGREED WITH COMPETITORS TO REDUCE SUPPLY.

It is Plaintiffs' burden to plead facts that *Clemens* entered into an agreement with its competitors to reduce supply.  Plaintiffs cannot "lump in" defendants; rather, "[e]ach Defendant's alleged conduct must be assessed independently."  *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015); *see also In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d at 1020.

Plaintiffs fail their burden to plausibly establish that Clemens entered into a multi-year supply reduction conspiracy.  There is not a single allegation that *Clemens*:

- Cut its pork supply during the alleged 9-year class period;

- Failed to grow its pork supply;

- Purchased fewer hogs from independent farmers;

- Processed fewer hogs into pork or sold less pork;

- Closed any processing plants or other facilities;

- Signaled other Defendants to cut supply; or

- Communicated with other processors before taking coordinated actions.

There are no allegations because Clemens spent hundreds of millions of dollars to *increase* its supply, not partake in a conspiracy to reduce it.  Ignoring Clemens' conduct is fatal in this Circuit.  For example, in *In re Milk Products Antitrust Litigation*, plaintiffs alleged a price-fixing conspiracy involving dairy producers.  84 F. Supp. 2d at 1018-19.  For one defendant, K&P, plaintiffs alleged it engaged "in illegal pricing discussions in

3

person and by telephone with the other defendants and unnamed co-conspirators, illegally allocated customers, and illegally enforced compliance with the conspiracy." *Id.* at 1020 (internal quotations omitted).  The court concluded that the allegations against K&P were "too vague," merely "attempt[ing] to lump K&P in with the other defendants" without adequate supporting facts, and therefore "must be dismissed." *Id.*; *see also Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 546 (8th Cir. 2015) (affirming 12(b)(6) dismissal in antitrust conspiracy case because the complaint failed to "allege when the agreements occurred").

Plaintiffs allege *even less* here.  The sum total of Plaintiffs' Clemens-specific allegations are that Clemens:

- Subscribes to a benchmarking service (Compl. ¶ 49; CIP Compl. ¶ 54; IIP Compl. ¶ 77);

- Belongs to trade associations (Compl. ¶¶ 98, 102, 106; CIP Compl. ¶¶ 104, 108, 112);

- Is a "vertically-coordinated" agricultural business (Compl. ¶ 73; CIP Compl. ¶ 79); and

- Did not suffer as heavy pig mortality rates during the PEDv outbreak relative to other competitors (Compl. ¶ 129; CIP Compl. ¶ 135).[2]

---

[2] The IIP complaint alleges even less, pleading only jurisdictional information and Clemens' membership in Agri Stats.  (IIP Compl. ¶¶ 48-49, 77.)

And the only allegation specific to the Clemens Family Corporation—the parent of defendant Clemens Food Group, LLC (*see* Compl. ¶ 23)—is that two of its executives sit on boards of trade associations.  (Compl. ¶ 98; CIP Compl. ¶ 104.)

This does not a conspiracy make.  As Defendants' Joint Brief explains, benchmarking and trade association participation are pro-competitive activities and cannot suffice to establish a conspiracy.  (ECF No. 162, at 17-19, 40-41.)  And announcing *low* mortality rates from a nationwide PEDv outbreak, a pig disease that killed large numbers of pigs in 2013 and 2014, is irrelevant to plausibly pleading Clemens' participation in a supply reduction conspiracy.  (Compl. ¶ 129; *see also id*. ¶ 107; CIP Compl. ¶ 115; IIP Compl. ¶ 97.)

Plaintiffs speculate that Clemens should have increased its market share in the wake of PEDv.  (Compl. ¶ 129; CIP Compl. ¶ 135.)  Even putting aside that this is exactly the type of "naked assertion devoid of further factual enhancement" that does not raise a right to relief, this Monday-morning quarterbacking makes no sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Plaintiffs do not allege *where* Clemens could have acquired more pigs to increase its market share, nor could they, given (i) high mortality rates among the nationwide herd; and (ii) that "it takes nearly two years to substantially increase production" given the length of the hog lifecycle.  (IIP Compl. ¶ 80; Compl. ¶ 52; CIP Compl. ¶ 57.)

Plaintiffs' sparse and legally insufficient allegations concerning Clemens stand in stark contrast to allegations from the *Broiler* litigation.  *See In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772 (N.D. Ill. 2017).  There, the Court credited factual allegations

against *each* defendant.  *Id.* at 782-83 (naming *specific* Defendants making *specific* cuts to broiler supplies at *specific* times).  Plaintiffs' approach here is simply to "lump in" Clemens into a vast, nationwide price-fixing conspiracy, rather than naming any cuts (or specific relevant conduct) as to it.  *In re Milk Prod.*, 84 F. Supp. 2d at 1020.  Plaintiffs' claims against Clemens should be dismissed.

## II.   CLEMENS INCREASED CAPACITY DURING THE CLASS PERIOD, NEGATING ANY INFERENCE THAT CLEMENS PARTICIPATED IN AN ALLEGED SUPPLY REDUCTION CONSPIRACY.

It is no accident that Plaintiffs avoid alleging facts regarding Clemens.  Rather than cut supply during the class period, Clemens invested massive amounts of capital to build a new state-of-the-art processing facility in Coldwater, Michigan, which is the only one of its kind.  (Compl. ¶ 101 (citing Meyer 2017 "Market Outlook for Meat and Poultry," at 34).)  ***The new facility doubled Clemens processing capacity***, adding processing capacity of an additional 2.5 million hogs per year on a single shift.  (*Id.*; *see also* Compl. ¶ 73 (citing Clemens webpage announcing "our new Coldwater, Michigan plant").)  Figure 5 cited in IIP Compl. (¶ 118) highlights the increase in Clemens' capacity with the opening of the Coldwater plant in 2017:



Figure 5: Market Concentration and Market Share Stability –
U.S. Market Share by Hog Slaughter Capacity

Plaintiffs concede the enormity of the planning and expense of constructing a new processing facility: "[c]onstruction of a large-scale slaughter facility would take hundreds of millions of dollars and the additional planning, design and permitting costs are substantial." (Compl. ¶ 84; *see also* IIP Compl. ¶ 122.) They also concede that opening a new plant is inconsistent with alleged conspiratorial "signals," which allegedly warned processors that profits would decrease if competitors "kill more pigs and drive the margins lower," which would happen if "someone is going to build a plant. . . . *There is no one going to be real excited about adding capacity, adding sows at a time when we've got such volatility*." (Compl. ¶¶ 124-25.)

Clemens' investment of hundreds of millions of dollars to double its capacity with the addition of a new processing facility cannot be reconciled with Plaintiffs' theory that processors implemented their competitors' signals to reduce supply.   Rule 12(b)(6)

demands that the Court reject the "unreasonable inferences" required to sustain this action. *See Stark*, 2015 WL 756938, at *1 ("[T]the court … need not make unreasonable inferences or accept unrealistic assertions." (citing *Brown v. Medtronic, Inc.*, 628 F. 3d 451, 461 (8th Cir. 2010))).  For this additional reason, the complaints should be dismissed as to Clemens.

## III.   CLEMENS LACKED THE ABILITY OR INCENTIVE TO EFFECT THE ALLEGED SCHEME.

Plaintiffs' complaints fail for a third independent reason: Clemens is primarily a hog processor.  It buys hogs for processing from "a network of 250 farms raising hogs under contract."  (Compl. ¶ 73; CIP Compl. ¶ 79.)  There are no allegations that Clemens is able to control, did control, or even can control supply levels by those hog producers.

Unlike other Defendants, who Plaintiffs claim have direct "control [of] the production and supply of pork" through "vertical integration" (Compl. ¶ 69), Plaintiffs are careful to describe Clemens as "vertically coordinated." (*Id.* ¶ 73.)  This distinction is important:  Plaintiffs admit that Clemens' only involvement in hog production (as opposed to hog processing) is through one "procurement and production subsidiary, Country View Family Farms," which owns a negligible portion of overall hog supply and "manages . . . 250 farms raising hogs."  (*Id.*; *compare with id.* ¶ 80 n.30 (citing Sullivan 2017 report stating that "Smithfield raises pigs on approximately 3,900 company-owned, leased, and contract hog farms globally," at 3.)

In other words, Clemens predominantly *pays* independent producers for their live hogs, processes those hogs into pork, and sells the processed pork to its customers.  (Compl. ¶ 70; CIP Compl. ¶ 75.)  Plaintiffs give *no* explanation why, as a pork processor, Clemens

would want to drive up hog prices, thereby increasing its processing costs.  Their failure to allege a plausible motive is fatal to their claims.  *See Am. Channel, LLC v. Time Warner Cable, Inc.*, 2007 WL 142173, at *7 (D. Minn. Jan. 17, 2007) (granting motion to dismiss in antitrust case where no plausible motive to conspire was alleged).

Plaintiffs allege that pork production and processing is dominated by four companies, none of which are Clemens.  (Compl. ¶ 77 (alleging four non-Clemens pork integrators' market share total "just under 70 percent"); *id.* ¶ 80 n.30; *id.* ¶ 83 n.32 & CIP Compl. ¶ 90 n.34 (citing "Buyer Power in U.S. Hog Markets," listing top four hog producers at 7, none of which are Clemens); CIP Compl. ¶ 86 n.31 (citing Sullivan report which includes pie charts of the top hog producers and processors, none of which are Clemens)).  Tellingly, the IIP complaint included a table of Defendants "that have significant operations (>=5%) market share in at least two stages of the value chain" (IIP Compl. ¶ 111), and Clemens is nowhere to be found:

| Defendant | Hog Production | Hog processing and intermediate pork processing/packing | Further Pork Processing |
|---|---|---|---|
| Smithfield | ✓ | ✓ | ✓ |
| Tyson | | ✓ | ✓ |
| Triumph | ✓ | ✓ | |
| Seaboard | ✓ | ✓ | |
| Hormel | | ✓ | ✓ |

Clemens' absence speaks volumes.  Plaintiffs not only fail to allege how Clemens (with a fraction of the nationwide hog production and processing capacity) could affect nationwide supply, but also fail to reconcile why Clemens would conspire to reduce supply

when it was aggressively growing and expanding.  Plaintiffs, thus, have failed to allege any plausible claim against Clemens.

## CONCLUSION

For the foregoing reasons, Plaintiffs' complaints should be dismissed, with prejudice, as to Clemens Food Group, LLC and the Clemens Family Corporation.

Dated: October 23, 2018                    Respectfully submitted,


                                            /s/ *Daniel E. Laytin, P.C.*

                                            Mark L. Johnson (#0345520)
                                            Bethany Krueger (#0306368)
                                            Virginia R. McCalmont (#0399496)
                                            GREENE ESPEL PLLP
                                            222 South Ninth Street, Suite 2200
                                            Minneapolis, MN 55402
                                            (612) 373-0830
                                            mjohnson@greeneespel.com
                                            bkrueger@greeneespel.com
                                            vmccalmont@greeneespel.com

                                            Daniel E. Laytin, P.C. (*pro hac vice*)
                                            Christa C. Cottrell, P.C. (*pro hac vice*)
                                            Christina L. Briesacher (*pro hac vice*)
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle
                                            Chicago, IL 60654
                                            312-862-2000
                                            dlaytin@kirkland.com
                                            ccottrell@kirkland.com
                                            christina.briesacher@kirkland.com

                                            *Attorneys for Clemens Food Group, LLC*
                                            *and the Clemens Family Corporation*