UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Civil No. 18-cv-01776 (JRT/HB)<br><br>**MEMORANDUM OF LAW BY INDIANA PACKERS CORPORATION AND MITSUBISHI CORPORATION (AMERICAS) IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS** |

## INTRODUCTION

On their face, Plaintiffs' complaints make clear that neither Indiana Packers Corporation ("IPC") nor its US-based minority parent, Mitsubishi Corporation (Americas) ("MCA") should have been included in this litigation at all. Indeed, the very facts Plaintiffs plead (or don't plead) compel the dismissal of both defendants.[1] The complaints[2] barely mention IPC and, tellingly, do not allege that IPC ever cut supply (or discussed cutting supply). To the contrary, Plaintiffs' allegations show that IPC—the smallest of the pork producers—was running its processing plant at full capacity throughout the putative class period, increasing pork production by at least 20 percent.

---

[1] The claims fail on a host of other grounds, and both IPC and MCA fully adopt, but do not repeat, the arguments in Defendants' joint briefs here. Instead, this Memorandum highlights key specific deficiencies unique to IPC and MCA.

[2] The Consolidated Amended Complaints ("CACs") include nearly identical allegations directed at Defendants. Except as otherwise noted, we reference the Direct Purchasers' complaint ("DPP CAC") for simplicity. *See Maplevale Farms et al. v. Agri Stats et al.*, Case No. 18-cv-1803, Dkt. 83.

Perhaps for this reason, the DPPs along with the Commercial and Institutional Indirect Purchasers ("CIPs") drop IPC from their collusion allegations relating to market structure, while the Individual Indirect Purchasers ("IIPs") concede that IPC is not a vertically-integrated processor that can influence pork supply. In so doing, Plaintiffs have effectively pled IPC out of the alleged conspiracy. The sparse remaining allegations—involvement in a trade association and participation in Agri Stats—are insufficient to state a claim.

Nor do Plaintiffs state a claim against MCA based solely on its status as a minority shareholder of IPC. As this Court and others have recognized, a parent company cannot be liable based only on its corporate affiliation with a subsidiary.

## ARGUMENT

### I. Plaintiffs Plead Facts Foreclosing Any Claim That IPC Was Part Of An Alleged Conspiracy.

Plaintiffs lack direct evidence that any Defendant conspired to restrict capacity, so they rely on inferences drawn from circumstantial evidence. Def's Br. at 12 (Dkt. 162). Plaintiffs stress "market structure" as a key fact underlying these circumstantial conspiracy claims, alleging that the industry is "highly concentrated" and that a "small number of large companies [controlled] supply." *See* DPP CAC ¶ 1. Yet Plaintiffs affirmatively place IPC outside their market structure allegations.

The DPPs and CIPs make allegations about the relative sizes, collective market share and purported ability of six Defendants "*as a whole*" to manipulate the price of pork products. DPP CAC ¶ 80 (emphasis added). Figure 2, titled "2016 Pork Processing Market

Shares," alleges individual market shares for these Defendants, grouping them together under "Collusion." *Id.* But IPC is not listed among them. Rather, Plaintiffs appear to include IPC in the group of "Others" that are not part of the alleged conspiracy:

| Company | Share | HHI- Independent | HHI- Collusion |
|---|---|---|---|
| Smithfield | 26% | 676 | |
| JBS | 20% | 400 | |
| Tyson | 18% | 324 | 6724 |
| Hormel Foods | 8% | 64 | |
| Triumph Foods | 5% | 25 | |
| Seaboard Farms | 5% | 25 | |
| Others | 18% | 18 | 18 |
| **Total** | **100%** | **1532** | **6742** |

*See id.* IPC is also excluded from the IIPs' key claims about how vertical integration "allowed the scheme to succeed." *See* IIP CAC, IV.E. These plaintiffs allege that the "pork industry is almost completely vertically integrated, with four major producers controlling 75 percent of pork integration." *Id.* ¶ 107. IPC is not alleged to be one of those producers. The IIPs also exclude IPC from the Defendants with "significant" operations (defined as ">=5% market share in at least two stages of the value chain"). *Id.* ¶ 111. The foregoing allegations—that IPC was not among those who purportedly colluded and could not impact supply—alone require its dismissal. *See, e.g., Montero v. Bank of Am., N.A.*, No. 13-cv-850, 2014 WL 562506, at *13 (D. Minn. Feb 13, 2014) (dismissal appropriate where factual allegations contradicted conclusory claims).

Nor is Plaintiffs' exclusion of IPC from these key allegations an oversight. IPC was excluded because, as other allegations affirmatively show, it *increased* production. The DPPs and CIPs rely on an August 1, 2012 article from the *Indiana Economic Digest* (three

3

years into the putative class period) titled "Food Packing Business Steady So Far Despite Drought." DPP CAC ¶ 126. Plaintiffs claim that former IPC executive Gary Jacobson "attempted to make excuses for reducing the supply of pork." *Id*. But the article flatly refutes this. Indeed, the article quotes Jacobson as stating that IPC had *increased* employment "30 to 40 percent over the last decade," and "*increas[ed]* production by 20 percent" due to "new operations that went online." Stilson Decl., Ex. A (emphasis added). He added that there has been "good, strong, steady growth" and that the company was running "on a sold out position" (*i.e.*, at full capacity). *Id.* Jacobson also explained that adverse weather conditions for farmers had not caused any "really significant [impact] as far as production as a whole." *Id.* In other words, *IPC was not reducing production, it was increasing production*.

Courts properly consider such statements in ruling on a motion to dismiss. *Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.*, 9 F. Supp. 3d 1032, 1045 n.6 (D. Minn. 2014) (Tunheim, J.). And the pleaded fact that IPC increased its output during the class period, running its plant at full capacity, forecloses as a matter of law Plaintiffs' claim that IPC conspired to restrict capacity. Thus, Plaintiffs "plead[] [themselves] out of court [because] it would be necessary to contradict the complaint in order to prevail on the merits." *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (internal citations and quotation marks omitted).

Nor does this article suggest that IPC planned to cut production after 2012—indeed, Plaintiffs *do not* specifically allege that IPC cut production at any time—which is a key distinction with the *Broilers* litigation, where the court cited allegations that each defendant

4

"either cut production or took action to restrain production at some point during the relevant time period" in denying the motions to dismiss.[3] *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 803 (N.D. Ill. 2017). Here, Plaintiffs plead that, far from reducing output, IPC substantially increased production and was running its plant at full capacity during the alleged conspiracy. Thus, Plaintiffs' factual allegations foreclose their claims against IPC. *Montero*, 2014 WL 562506, at *13 (documents referenced in complaint showed the opposite of plaintiff's allegations, supporting dismissal); *Williams v. First Nat'l Bank of St. Louis*, 2014 U.S. Dist. LEXIS 157519, at *10-11 (E.D. Mo. Nov. 7, 2014) (courts need not accept as true "factual assertions [of a conspiracy] that are contradicted by the complaint itself [or] by documents upon which the pleadings rely...") (internal quotations omitted).

## II. Plaintiffs' Remaining Allegations Cannot Save Their Claims Against IPC.

Plaintiffs' other allegations do not save their claims. All three classes allege that IPC participated in Agri Stats (*e.g.*, DPP CAC ¶ 49). But the CACs do not allege that participation in Agri Stats by itself is unlawful, because such benchmarking programs have long been recognized as pro-competitive. Def's Br. at 17 (Dkt. 162).

The DPPs and CIPs also allege that two IPC employees were members of a trade association during the class period (*e.g.*, DPP CAC ¶ 98), but that is of no moment. Plaintiffs offer *no* factual link between these employees' membership and any specific

---

[3] Plaintiffs disclaim any production cuts by any Defendant in 2012, when the article was published. *See, e.g.*, DPP CAC ¶ 107.

action by IPC or anyone else, and "opportunity to conspire" is not enough to plead IPC into a conspiracy. *See* Def's Br. at 40 (Dkt. 162).[4]

### III. MCA's Corporate Affiliation With IPC Does Not Plausibly Suggest Its Participation In An Alleged Conspiracy.

Plaintiffs do not claim that MCA is a pork producer (much less directly involved in the pork industry), and not a single plaintiff named MCA as a Defendant in any of the thirteen actions originally filed in this district.[5] Plaintiffs only added MCA after IPC's Rule 7.1 disclosure was filed identifying the company as a US-based minority shareholder. The CACs basically repeat what the disclosure says, adding a conclusory claim that as a corporate parent MCA exerted control over IPC. *See* DPP CAC ¶ 27.[6] But, as this Court has recognized, such allegations are insufficient to state a claim and MCA must be dismissed. *Reg'l Multiple Listing Serv.*, 9 F. Supp. 3d at 1044-45; *see also* Def's Br. at 16 (Dkt. 162).

### CONCLUSION

Plaintiffs' allegations affirmatively exclude IPC and MCA from any purported conspiracy, and their remaining allegations are not well-pled. For the foregoing reasons

---

[4] While the CACs group IPC together with all "Defendants," such generalized pleading is likewise insufficient to state a claim. Def's Br. at 15 (Dkt. 162).

[5] *See* Dkt. 1 in Case Nos. 18-cv-1776; 18-cv-1803; 18-cv-1810; 18-cv-1946; 18-cv-1891; 18-cv-2008; 18-cv-2044; 18-cv-2058; 18-cv-2113; 18-cv-2337; 18-cv-2338; 18-cv-2390; 18-cv-2405.

[6] The IIPs assert that IPC is "wholly owned" by MCA. *See* IIP CAC ¶ 52. In fact, IPC's Rule 7.1 disclosure states that it has three parents: Itoham Foods, Incorporated, a Japanese corporation, Mitsubishi Corporation, a Japanese Corporation, and MCA. *See, e.g.*, Case No. 18-cv-1776, Dkt. 69. But the Court need not resolve this error to dismiss MCA.

and those set forth in Defendants' combined memoranda, the Court should dismiss all claims against IPC and MCA in these consolidated actions with prejudice.

Dated: October 23, 2018 	Respectfully submitted,

*s/Jaime Stilson*
Jaime Stilson (#392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 340-2600
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation and Mitsubishi Corporation (Americas)*