UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Civil No. 18-1776 (JRT/HB)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF JBS USA FOOD COMPANY AND JBS USA FOOD COMPANY HOLDINGS' MOTION TO DISMISS THE COMPLAINTS** |

## INTRODUCTION

Defendants JBS USA Food Company ("JBS USA") and JBS USA Food Company Holdings ("JBS Holdings") respectfully submit that the Complaints glaringly fail to allege a plausible claim against either company.

## ARGUMENT

**A.    Plaintiffs Allege Effectively Nothing About JBS Holdings.**

The Complaints contain not a single allegation about *any* conduct (conspiratorial or otherwise) by JBS Holdings.  Nor do any of the source materials cited in the Complaints mention JBS Holdings.  The Complaints' sole allegation is that JBS Holdings is the owner of JBS USA.  Compl. ¶ 29.[1]  But it is well established that a mere allegation of corporate ownership is insufficient to state a conspiracy claim.  *See Reg'l Multiple Listing Serv. of*

---

[1]    Paragraph references are to the Complaint filed by the Direct Purchaser Plaintiffs ("DPPs") in *Maplevale Farms Inc. v. Agri Stats, Inc.*, No. 18-cv-01803 (D. Minn.), Dkt. No. 83 (the "Compl." or "Complaint").

*Minn., Inc. v. Am. Home Realty Network, Inc.*, 9 F. Supp. 3d 1032, 1044-45 (D. Minn. 2014) (Tunheim, J.); Joint Br. at 16.

**B.     JBS USA's Participation in the Alleged Conspiracy Is Implausible.**

The alleged "scheme to limit hog supply," Compl. ¶ 120, and thereby increase pork prices, depends on the allegation that the Defendant pork suppliers were vertically integrated—meaning that Defendants raised the hogs used to make pork products and thus could limit the supply of those hogs.  Compl. ¶ 69; *see also* Joint Br. at 26-27.  Plaintiffs allege this supply reduction scheme commenced in 2009.

But JBS USA *had virtually no hog production until the very end of October 2015*, when it acquired certain assets of another company, Cargill.  Compl. ¶¶ 78-79.  The 2015 report on that acquisition cited in the Complaints[2] confirms that as of the time of the acquisition, JBS USA "*primarily relie[d] on purchasing auction hogs and entering market arrangements with farmers*."[3]  Furthermore, while the Complaints assert that JBS USA, during an August 13, 2009 earnings call, purportedly "communicated the start of [its] *participation in hog liquidation* efforts," Compl. ¶ 116 (emphasis added), in fact JBS

---

[2]  As discussed in greater detail in Defendants' joint brief in support of their motion to dismiss the DPPs' Complaint and the Indirect Purchasers' federal law claims ("Joint Br."), which is hereby incorporated by reference in full, the Court may consider documents embraced by the Complaints on a Rule 12 motion.  *See* Joint Br. at 11-12.

[3]  *The Anticompetitive Effects of the Proposed JBS-Cargill Pork Packing Acquisition*, at 15, http://www.inmotionmagazine.com/ra15/JBS-Cargill_White_Paper.pdf   (emphasis added) (cited at Compl. ¶¶ 79, 84).

expressly noted in that very same quoted earnings call that "in the U.S. . . . we *don't have hog production*."[4]

Thus, as a company that purchased from independent farmers essentially all of the hogs it processed from 2009 to late 2015, JBS USA was *disincentivized* from having hog prices rise, by means of reducing hog supply or otherwise. The 2015 report cited in the Complaints expressly states that a pork processing company like JBS USA "*benefit[s]* when futures and spot [hog] prices *decline*," not rise.[5] The Complaints' allegation that "JBS adhered to Defendants' agreed upon scheme to limit hog supply" is simply implausible. Compl. ¶ 120.

## C. The Few, Specific Allegations About JBS USA Do Not Even Remotely Suggest That It Participated in Any Conspiracy.

The Complaints' sparse allegations that specifically address JBS USA—allegations concerning three quarterly earnings calls of JBS USA's ultimate parent (the Brazilian company JBS S.A.), JBS USA's participation in trade associations, and JBS USA's purchase of Cargill's pork assets—do nothing to move the allegations against JBS USA across the plausibility line.[6]

---

[4] *See* Earnings Conference Call Transcript, http://jbss.infoinvest.com.br/enu/1899/2Q09EarningsConferenceCallTranscription.pdf (emphasis added) (cited at Compl. ¶ 116).

[5] *The Anticompetitive Effects of the Proposed JBS-Cargill Pork Packing Acquisition*, *supra* note 3, at 14 (emphasis added).

[6] While the DPPs and Commercial and Institutional Indirect Purchaser Plaintiffs ("CIPs") both raise these same sparse allegations about JBS USA, the Individual Indirect Purchaser Plaintiffs ("IIPs") effectively make zero allegations about the company except that it purchased Cargill's pork assets in late 2015.

3

*First*, as noted above, during the August 13, 2009 earnings call cited in the Complaints, JBS actually stated that "in the U.S. . . . we *don't have hog production*." Consistent with this statement, the language quoted in the Complaints only states that "'we are *seeing* some more [hog] liquidation,'" not that any JBS entity was undertaking liquidation. *Id*. ¶ 116 (alteration in original) (emphasis added).

*Second*, the Complaints assert that during a March 8, 2010 earnings call, JBS USA purportedly "mentioned [its] *reduction in hog supply* as a driver of profitability" and "[d]espite having the economic incentive (increased demand) to increase supply and capture market share, JBS adhered to Defendants' agreed upon scheme to *limit hog supply*." Compl. ¶ 120 (emphases added). But the language from the quoted earnings call actually only states that based on a "'combination of reduction in supply for cattle, for hogs and for chicken and . . . increase in consumption in the emergent markets we are very optimistic about our business.'" *Id.* This statement makes no reference whatsoever to any actions taken by JBS USA (or any other JBS entity) to limit hog supply—which, again, is not surprising, given that JBS USA had virtually no hog production at that time.

*Third*, the Complaints point to a supposed May 15, 2013 earnings call transcript that purportedly shows that JBS USA "continued to demonstrate [its] ability to constrain the pork market." *Id*. ¶ 128. Plaintiffs quote language from the transcript stating:

> [i]n pork, given some restrictions in supply we have been able to pass price through the system and we are seeing good margins in our pork business. . . . So this is a clear sign that we have been able to pass price increase in chicken and pork and not in the same extent in beef.

4

*Id.*  But this transcript is misdated, and is, in fact, a record of a May 15, 2014 earnings call for the first quarter of 2014.[7]  The transcript is thus discussing 2014, not 2013.  Notably, the Complaints recognize that during 2014, supply reductions in the industry "reflected the adverse impacts from the deadly pig disease, porcine epidemic diarrhea virus [PEDv]," and not any purported conspiracy.  Compl. ¶ 107.  Moreover, the quoted language again merely discusses general trends across JBS' various chicken, pork, and beef business lines.  It does not describe any actual supply restriction efforts (coordinated or otherwise) that JBS USA undertook, let alone with respect to pork.  Nor do the Complaints explain how JBS USA could have participated in any such efforts at a time when it had virtually no hog production.

The other JBS-related allegations are either wholly conclusory or unrelated to the alleged conspiracy.  Plaintiffs' allegation that JBS USA had the "mere opportunity" to conspire at industry meetings is plainly insufficient.  *Shimota v. Wegner*, 2016 WL 1254240, at *10 (D. Minn. Mar. 29, 2016) (Tunheim, J.); Joint Br. at 40-41, 49-50.  And JBS USA's acquisition of Cargill's pork assets is not even alleged to be part of any conspiracy.  Compl. ¶¶ 78-79.

## CONCLUSION

For the reasons stated herein and in the Defendants' joint brief, JBS USA and JBS Holdings respectfully submit that the claims against them must be dismissed with prejudice.

---

[7] *See* Earnings Conference Call Transcript, http://jbss.infoinvest.com.br/enu/3025/1Q14_ConfCall_eng.pdf (The second sentence of the document reads: "During this call we will present and analyze the results for *1Q 14*." (emphasis added)).

Dated:  October 23, 2018

/s/ Donald G. Heeman
Donald G. Heeman (#286023)
Jessica J. Nelson (#347358)
Randi J. Winter (#391354)
Daniel R. Haller (#396497)
FELHABER LARSON
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
(612) 339-6321
dheeman@felhaber.com
jnelson@felhaber.com
rwinter@felhaber.com
dhaller@felhaber.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky *pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
Robert P. Vance, Jr. (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
bobbyvance@quinnemanuel.com

*Counsel for JBS USA Food Company and JBS USA Food Company Holdings*