UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

In Re Pork Antitrust Litigation

This Document Relates to:  All Actions
_____

No. 1:18-cv-01776-JRT-HB

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS SEABOARD FOODS LLC AND SEABOARD CORPORATION**

Defendants Seaboard Foods LLC ("Seaboard Foods") and Seaboard Corporation submit this memorandum in support of their motion to dismiss the Direct Purchaser Plaintiffs' First Amended and Consolidated Class Action Complaint ("DPP Compl."), the Commercial Food Preparers' First Amended and Consolidated Class Action Complaint ("CIP Compl."), and the Consolidated Class Action Complaint filed on behalf of indirect purchasers who bought pork for personal use ("IIP Compl.").

## INTRODUCTION

For the reasons set forth in the joint motion to dismiss, the Complaints do not plausibly allege a conspiracy to restrict the supply of pork.  Seaboard Foods and its corporate parent bring this separate motion on the alternative grounds that the Complaints do not state claims against them in particular.

Despite their length, the Complaints contain almost no allegations about Seaboard Foods, a pork processor with "under five percent of the national slaughter capacity." DPP Compl. ¶ 79.  Although there are allegations that other producers made public statements about hog production, *id.* ¶ 109, there are no such allegations as to Seaboard

1

147938319.1

Foods.  Similarly, although the Complaints allege that the "pork industry" cut production in 2009, 2010, and 2013, *id.* ¶ 107, there is no allegation that Seaboard Foods cut production in those years.  Indeed, there are no allegations whatsoever about Seaboard Foods's pork production.  The most Plaintiffs can do is point to a news article reporting that Seaboard Triumph Foods, LLC – the company's 50/50 joint venture with Triumph Foods – postponed adding a second shift at its Sioux City plant in 2018.  But Plaintiffs offer no facts to support their speculation that this decision, made years after the production cuts alleged in the Complaints, was somehow made "in furtherance of the conspiracy."  *Id.* ¶ 130.  (To the contrary, Plaintiffs cite a news article that squarely refutes their claim.)  Because Plaintiffs have not alleged *facts* plausibly suggesting that Seaboard Foods joined any alleged conspiracy, both Seaboard Foods and its parent should be dismissed from these lawsuits.

In addition, Plaintiffs allege nothing about Seaboard Corporation beyond its ownership of Seaboard Foods.  The Complaints therefore do not state a claim against Seaboard Corporation regardless of whether these lawsuits survive against Seaboard Foods.

## BACKGROUND

Plaintiffs' allegations against Seaboard Foods are limited to the following:

- Seaboard Foods is a subsidiary of Seaboard Corporation based out of Shawnee Mission, Kansas, that sold pork in interstate commerce to purchasers in the United States.  DPP Compl. ¶ 30; CIP Compl. ¶ 33; IIP Compl. ¶ 57.

- Seaboard Foods was an Agri Stats subscriber and reported financial and production data to Agri Stats. DPP Compl. ¶ 49; CIP Compl. ¶ 54; IIP Compl. ¶ 77.

- Seaboard Foods is the sixth largest pork "integrator" in the U.S. (whatever that undefined term means) "with under five percent of the national slaughter capacity." DPP Compl. ¶ 79; CIP Compl. ¶ 85; IIP Compl. ¶ 116. By contrast, the largest "integrator" is alleged to have a twenty-six percent share. *E.g.*, DPP Compl. ¶ 80 & Fig. 2.

- Seaboard Foods has "significant operations" in hog production and "[h]og processing and intermediate pork processing/packaging." IIP Compl. ¶ 111.

- Seaboard Foods executives have presented at the National Pork Industry Conference. DPP Compl. ¶ 92; CIP Compl. ¶ 98.

- Seaboard Foods personnel attended the 2014 International Production and Processing Expo. DPP Compl. ¶ 106, CIP Compl. ¶ 112.

- Seaboard Foods executives have served as officers or directors of the American Meat Institute or its successor, the North American Meat Institute. DPP Compl. ¶¶ 98-99; CIP Compl. ¶¶ 104-05.

- In February 2017, a joint venture of Seaboard Foods and Triumph Foods, LLC, announced plans to add a second shift at its new pork processing facility in Sioux City, Iowa. DPP Compl. ¶ 130 (citing Tia Heidenbrecht, *New Pork Processing Plant Adds Second Shift in Sioux City* (Feb. 17, 2017), attached as Schwingler

Decl. Ex. A); CIP Compl. ¶ 136 (same).  In June 2018, the joint venture postponed adding the second shift.  DPP Compl. ¶ 130 (citing Jeff DeYoung, *Pork Packing Capacity Faces Delay to Growth*, Iowa Farmer Today (June 2, 2018), attached as Schwingler Decl. Ex. B); CIP Compl. ¶ 136 (same).

Seaboard Corporation is Seaboard Foods' parent company.  DPP Compl. ¶ 31; CIP Compl. ¶ 34; IIP Compl. ¶ 56.  Plaintiffs do not allege any acts by Seaboard Corporation as distinct from its subsidiary.

## ARGUMENT

**I.     To state claims against Seaboard Foods and Seaboard Corporation, Plaintiffs must plausibly allege that these companies joined the alleged conspiracy.**

To state a conspiracy claim against a particular defendant, a complaint must plausibly allege that *that* defendant joined the conspiracy.  *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1150 (D. Idaho 2011).  Applying this principle, courts routinely dismiss claims against particular defendants despite finding the overall conspiracy allegations plausible.  *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010) (dismissing claims against one or more defendants despite finding plausible conspiracy as to other defendants); *Potatoes*, 834 F. Supp. 2d at 1158-64, 1173-75 (same); *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2010 WL 3430833, at *2-5 (D. Vt. Aug. 30, 2010) (same); *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 512-17 (S.D.N.Y. 2009) (same).

Importantly, Plaintiffs cannot satisfy their burden as to Seaboard Foods and Seaboard Corporation by pointing to allegations that refer to "Defendants" collectively.

"[V]ague allegations . . . that refer to 'defendants' or 'defendants' executives'" are "precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009).

**II.     The Complaints do not allege facts suggesting Seaboard Foods agreed with anyone to reduce the supply of pork.**

Setting aside conclusory allegations and allegations directed at "Defendants" collectively, the only allegations against Seaboard Foods are that (1) it participated in trade associations; (2) it subscribed to Agri Stats reports; and (3) its 50/50 joint venture with Triumph announced plans to add a second shift at a new processing facility, but postponed adding that shift in summer 2018.  Nothing about these allegations remotely suggests Seaboard Foods agreed with anyone to restrict the supply of pork.

As an initial matter, Plaintiffs do not even allege that Seaboard Foods acted in parallel with other producers – an omission that distinguishes this case from *Broiler Chicken*.  In contrast to *Broiler Chicken*, where each defendant is alleged to have destroyed breeder flocks, *see In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 796 (N.D. Ill. 2017), there is no allegation that Seaboard Foods reduced its sow herd.  Also in contrast to *Broiler Chicken*, where each defendant is alleged to have cut production during or shortly before the conspiracy period, *see id.* at 803, there is no allegation of any sort about Seaboard Foods' production history.  Significantly, there is no allegation that Seaboard Foods cut production when the industry supposedly cut production in 2009, 2010, and 2013.  And although Plaintiffs cite the public statements of

5

other entities (including non-defendants), *see* DPP Compl. ¶ 109, there is no allegation that Seaboard Foods made any such statements.

The few allegations that Plaintiffs do make against Seaboard Foods are innocuous. Mere attendance at industry meetings is insufficient to support a conspiracy claim, as such meetings represent nothing more than an *opportunity* to conspire. *See* Defs' Mem. in Supp. of Mot. to Dismiss ("Joint Br.") at 40. (Dkt. No. 162). Unlike in *Broiler Chicken*, where the plaintiffs alleged "suspicious timing of important industry conferences . . . followed by unusual producer actions and market movements," 290 F. Supp. 3d at 800, there is no allegation that Seaboard Foods altered its production after attending an industry meeting. Consequently, nothing about Seaboard Foods' participation in trade associations or industry conferences suggests that Seaboard Foods agreed to coordinate or limit production.

The same is true for Seaboard Foods' subscription to Agri Stats. According to Plaintiffs, Agri Stats reports allow conspirators to "monitor each other's ongoing adherence to *agreed-upon plans for coordinated production limits*." DPP Compl. ¶ 60 (emphasis added); CIP Compl. ¶ 65 (same); IIP Compl. ¶ 89 (same). Absent participation in an agreement to "coordinate[] production limits," however, exchanging information through an entity like Agri-Stats is neither unlawful nor inherently anticompetitive. *See* Joint Br. at 6-7, 17-19.

Unable to allege that Seaboard Foods took any action to reduce pork supply, Plaintiffs are left to complain that the company's joint venture with Triumph has not grown rapidly enough. According to Plaintiffs, the joint venture announced in February

6

2017 that it would be adding a second shift, but then postponed adding that shift in June 2018. *E.g.*, DPP Compl. ¶ 130. These events occurred years after the production cuts alleged in the Complaints. For that reason alone, the June 2018 announcement is not even "parallel conduct." *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228 (3d Cir. 2011) (holding that plaintiffs failed to allege parallel conduct where defendants acted differently and "at different time periods"). But even if one were to treat the June 2018 postponement as an allegation of parallel conduct, such an allegation "needs some setting suggesting the *agreement* necessary to make out a § 1 claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (emphasis added).

Here, Plaintiffs allege no facts supporting their conclusion that the joint venture's decision to postpone the second shift was made in furtherance of a conspiracy. To the contrary, Plaintiffs cite a news article that attributes the decision to a labor shortage:

> Steve Meyer, an economist with Kerns & Associates in Ames, says plans have changed somewhat for the Seaboard Triumph Foods plant in Sioux City, Iowa, which opened in 2017. "They had hoped to start a second shift this year, but it sounds like starting the second shift is being pushed back to 2019," he says. "*The labor situation is really tight here*."

Jeff DeYoung, "Pork packing capacity faces delays to growth," *Iowa Farmer Today* (June 2, 2018) (emphasis added) (attached as Schwingler Decl. Ex. B). The Court may properly consider this article because Plaintiffs cite it as the basis for their allegation. *See* Joint Br. at 11-12. But the Court need not do so to grant this motion. Having failed to allege any facts supporting their characterization of the joint venture's 2018 decision, Plaintiffs cannot rely on that decision as support for their assertion that Seaboard Foods joined a conspiracy to reduce or restrict supply.

7

### III. The allegation that Seaboard Corporation is the parent company of Seaboard Foods is insufficient to state a claim.

Apart from being the parent company of Seaboard Foods, Seaboard Corporation is not alleged to have any connection to the conduct at issue in the Complaints. Plaintiffs attempt to evade their pleading obligation by simply calling both the parent and the subsidiary "Seaboard," and then alleging that "Seaboard" joined the conspiracy. This does nothing to state a plausible claim against either company; to the contrary, it merely underscores Plaintiffs' lack of a basis for suing both. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (holding that allegations referring to single corporate entity, "Hitachi," were "insufficient to put specific defendants on notice of the claims against them"). Because Plaintiffs fail to allege the predicates for suing a parent company, *see* Joint Br. at 16, the Complaints do not state plausible claims against Seaboard Corporation.

### CONCLUSION

For all their length, the Complaints are devoid of factual allegations suggesting that Seaboard Foods or Seaboard Corporation joined the alleged conspiracy. The Complaints should therefore be dismissed as to these Defendants for failure to state a claim.

| | |
|---|---|
| Dated:  October 23, 2018 | */s/ William L. Greene* <br> William L. Greene (#0198730) <br> Peter J. Schwingler (#0388909) <br> Jon M. Woodruff (#0399453) <br> STINSON LEONARD STREET LLP <br> 50 South Sixth Street, Suite 2600 <br> Minneapolis, MN 55402 <br> Phone: (612) 335-1500 <br> Fax:   (612) 335-1657 <br> william.greene@stinson.com <br> peter.schwingler@stinson.com <br> jon.woodruff@stinson.com <br><br> J. Nicci Warr (*pro hac vice*) <br> STINSON LEONARD STREET LLP <br> 7700 Forsyth Boulevard, Suite 1100 <br> St. Louis, MO 63105 <br> Phone: (314) 863-0800 <br> Fax:   (314) 863-9388 <br> nicci.warr@stinson.com <br><br> **Attorneys for Defendants** <br> **Seaboard Foods LLC and** <br> **Seaboard Corporation** |

147938319.1