UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To: All Actions | No. 0:18-cv-01776-JRT-HB<br><br>SMITHFIELD FOODS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS |

Defendant Smithfield Foods, Inc. ("Smithfield") joins the Defendants' Joint Memorandum of Law ("Joint Br.") in support of all Defendants' Motions to Dismiss the Complaints and submits this Memorandum specifically to address Plaintiffs' allegations about Smithfield.

Plaintiffs' allegations that Smithfield (a) is the largest producer of pork in the United States (DPP Compl. ¶¶ 71, 136), (b) operates in a concentrated industry (DPP Compl. ¶¶ 77, 80-81), (c) has employees who participate in trade association meetings (DPP Compl. ¶¶ 88, 89, 92, 98, 100, 106), and (d) purchases benchmarking data (DPP Compl. ¶¶ 49, 121, 146) come nowhere close to pleading a conspiracy claim against Smithfield. Joint Br. at 6-7, 17-19, 25-26, 40-42, 45-46. The same allegations could be made about entirely routine characteristics and activities of significant competitors in virtually any industry.

Plaintiffs identify no conduct above and beyond the routine, and nothing from which participation in a conspiracy or an agreement to limit supply or fix prices can be plausibly inferred. There is no conduct that Smithfield allegedly took in parallel with the other Defendants, no conduct that was inconsistent with the company's unilateral

interests, and no conduct that was so unusual that it would be unlikely to occur in the absence of an agreement. *See, e.g., Valspar Corp. v. E.I. Du Pont de Newmours & Co.*, 873 F.3d 185, 195 (3d Cir. 2017) (to raise an inference of conspiracy, plaintiff is "required to show that the suppliers' parallel pricing went 'beyond mere interdependence [and was] so unusual that in the absence of advance agreement, no reasonable firm would have engaged in it'"). To the contrary, every action by Smithfield that Plaintiffs allege was consistent with its natural, unilateral business interests in response to marketplace conditions. In these circumstances, there is no plausible inference that Smithfield acted pursuant to a conspiracy, and the Complaint must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action").

Lacking conspiratorial conduct, Plaintiffs quote out of context several statements from Smithfield executives during earnings calls about company actions, marketplace conditions, or forecasts. But it is natural – and not at all indicative of a conspiracy – for Smithfield executives to discuss marketplace events and conditions during earnings calls. Such disclosures by a public company are encouraged, if not mandated, by securities laws, and are essential to the proper functioning of financial markets. *See* Joint Br. at 35-36.

Moreover, these statements do not evidence any purported conspiracy. The statements quoted by Plaintiffs can be addressed in three groups. First are statements

about Smithfield's decisions to cut production, beginning in February 2008, in response to marketplace conditions of oversupply and plummeting prices. DPP Compl. ¶¶ 112, 114, 118, 119. The very fact that Smithfield began production cuts in February 2008 – before the alleged 2009 start of the purported conspiracy – undermines any notion that production cuts themselves indicate the existence of a conspiracy. In any event, it does not take a conspiracy for the largest producer in an industry to decide to produce less of a product when prices plummet due to oversupply. Such actions (which Plaintiffs do *not* allege were matched by other Defendants) do not remotely support an inference that there must have been a conspiracy at work. *See Twombly*, 550 U.S. at 566 ("there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway").

Second, Plaintiffs allege that a Smithfield executive stated that he "had conversations with several sizable . . . very large producers, and I would tell you that they are doing some liquidation." DPP Compl. ¶ 117. However, Plaintiffs do not suggest that the "producers" to whom Smithfield allegedly spoke were any of these Defendants, several of whom are not even hog producers. The sources cited in the Complaint show that Smithfield has ordinary supply relationships with other hog producers that supply Smithfield with well over ten million hogs per year, about half of the hogs Smithfield processes each year. *See* WH Group Smithfield Foods 2014 Annual Report at 24 ("In the year ended December 31, 2014, Smithfield produced 14,724 thousand of the 27,890 thousand hogs that it slaughtered in the U.S., or 52.8%, and the remaining 13,166

3

thousand hogs were purchased from external suppliers.").[1]  It is therefore natural, absent any alleged conspiracy, for Smithfield to have conversations with hog producers that sell Smithfield millions of hogs per year about hog supply forecasts and marketplace conditions.

Particularly given this context, this quote says nothing about any *agreement* to cut production.  To the extent other hog producers may have made similar business decisions in response to the same poor marketplace conditions, that is perfectly consistent with independent decision-making in response to low prices and therefore does not support a plausible inference of conspiracy.  *See, e.g.*, *Twombly*, 550 U.S. at 556 n.4 (allegations of parallel behavior consistent with "independent responses to common stimuli" do not carry pleading burden in a Section 1 case).

Third, Plaintiffs quote statements from Smithfield executives about how other producers were *not* cutting production in the same manner as Smithfield.  *See, e.g.,* DPP Compl. ¶ 114 ("We cut 13%.  The first 10% didn't fix it.  I don't think us going from 10 to 13 is going to fix the hog business."); *id*. at ¶ 118 ("I have not seen the significant Midwest reduction that would probably be needed to put this industry back in balance.").  All that means is that Smithfield's unilateral production cuts were *not* followed by some other producers who apparently saw industry conditions differently.  This, of course, is consistent with other allegations in the Complaints that show industry output *increasing*

---

[1]  This document is cited in the Complaints (*see* DPP Compl. ¶ 71 & n.22) and is therefore properly considered on this Motion to Dismiss.  *See, e.g.*, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010).  The document is available at file.irasia.com/listco/hk/whgroup/annual/2014/ar2014.pdf.

throughout the bulk of the supposed conspiracy period, with production in the last several years dramatically *higher* than before this supposed conspiracy to reduce output. *See* Joint Br. at 2-4, 20-25.

Finally, Plaintiffs attempt to bolster their insufficient factual allegations with *ipse dixit* that plainly is insufficient to state a claim against Smithfield or any other Defendant. *See* Joint Br. at 1-2, 13-15.

## CONCLUSION

For the reasons stated herein and in Defendants' Joint Brief, Smithfield respectfully requests that all claims against it be dismissed.

Date: October 23, 2018          */s/ John A. Cotter*
John A. Cotter (134296)
John A. Kvinge (0392303)
LARKIN HOFFMAN DALY & LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (pro hac vice)
Josh Lipton (pro hac vice)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (pro hac vice)
GIBSON, DUNN & CRUTCHER, LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

*Counsel for Smithfield Foods, Inc.*