UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>All Cases | No. 1:18-cv-01776-JRT-HB |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY TYSON FOODS, INC., TYSON FRESH MEATS, INC. AND TYSON PREPARED FOODS, INC.**

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 1

I.    Plaintiffs Fail To Plausibly Allege That Any Tyson Entity Participated In The Alleged Conspiracy To Reduce The Supply Of Pork  ............................................... 1

II.    Plaintiffs' Impermissible Group Pleading Does Not Tie Any Tyson Entity To The Alleged Conspiracy ........................................................................................ 5

CONCLUSION .................................................................................................................. 7

APPENDIX ........................................................................................................................ 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*,
  744 F.3d 595 (9th Cir. 2014) .................................................................................. 5

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-md-2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) ................... 6

*Am. Channel, LLC v. Time Warner Cable, Inc.*,
  2007 WL 142173 (D. Minn. Jan. 17, 2007) ............................................................ 4

*Banxcorp v. Apax Partners, L.P.*,
  No. 10-4769 (SDW)(MCA), 2011 WL 1253892 (D.N.J. Mar. 28, 2011) ................ 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 3, 5

*Cable Line, Inc. v. Comcast Cable Commc'ns of Pa., Inc.*,
  No. 3:16-CV-1000, 2018 WL 2209518 (M.D. Pa. May 14, 2018) ....................... 4, 5

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) ............................................................................. 4, 5

*Cascades Computer Innovation LLC v. RPX Corp.*,
  2013 WL 316023 (N.D. Cal. Jan. 24, 2013) ........................................................... 4

*In re Elec. Carbon Prods. Antitrust Litig.*,
  333 F. Supp. 2d 303 (D.N.J. 2004) ......................................................................... 5

*Five Smiths, Inc. v. Nat'l Football League Players Ass'n*,
  788 F. Supp. 1042 (D. Minn. 1992) ........................................................................ 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................ 4

*Monson v. DEA*,
  589 F.3d 952 (8th Cir. 2009) .................................................................................. 3

*Moore v. Boating Indus. Ass'ns*,
  819 F.2d 693 (7th Cir. 1987) .................................................................................. 7

*United Magazine Co. v. Murdoch Magazines Distrib.*,
  146 F. Supp. 2d 385 (S.D.N.Y. May 31, 2001) ............................................................. 4

## INTRODUCTION

Separate and apart from the pleading failures detailed by all Defendants in the Memoranda in Support of the Joint Motions to Dismiss, there are compelling and unique reasons why Plaintiffs' claims against Tyson Foods, Inc., Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. (collectively, "Tyson Defendants") are implausible and must be dismissed. *First*, Plaintiffs' own allegations show that it would be both impossible and irrational for the Tyson Defendants to join the alleged conspiracy. *Second*, Plaintiffs engage in impermissible group pleading and do not offer differentiated allegations plausibly showing that *each* Tyson entity agreed to join the alleged conspiracy. Accordingly, the Court should dismiss all claims against the Tyson Defendants.

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THAT ANY TYSON ENTITY PARTICIPATED IN THE ALLEGED CONSPIRACY TO REDUCE THE SUPPLY OF PORK

For Plaintiffs' conspiracy theory to work, it requires that *each* defendant must be vertically integrated—meaning, each defendant must *grow its own supply* of hogs for slaughter. The Tyson Defendants, however, are not vertically integrated—a fact Individual Indirect Purchaser Plaintiffs expressly acknowledge in their complaint.[1] And so, the theory is implausible as to the Tyson Defendants and the complaints must be dismissed.

---

[1] *See Duryea v. Agri Stats, Inc.*, No. 18-cv-01776 (D. Minn.), Dkt. No. 74 ("IIP CAC") ¶ 111. The Direct Purchaser Plaintiffs and the Commercial and Institutional Indirect Purchaser Plaintiffs also do not allege that Tyson is vertically integrated, nor could they.

1

Plaintiffs' entire case is premised on the theory that Defendants conspired "by coordinating output and limiting production with the intent and expected result of increasing pork prices in the United States." (*Maplevale Farms Inc. v. Agri Stats, Inc.*, No. 18-cv-01803 (D. Minn.), Dkt. No. 83 ("DPP CAC") ¶ 2; *Sandee's Bakery v. Agri Stats, Inc.*, No. 18-cv-01776, Dkt. No. 63 ("CIP CAC") ¶ 2; IIP CAC ¶ 2.) Plaintiffs contend that the alleged scheme was viable because "[v]ertical integration allows the integrator Defendants to directly control the production and supply of pork through their wholly owned and operated farms where the hogs are raised, fed, and prepared for slaughter." (DPP CAC ¶ 69; CIP CAC ¶ 74.[2])

Critically, however, Plaintiffs do not allege that any of the Tyson Defendants engaged in their own hog production. In fact, Individual End Purchaser Plaintiffs expressly plead that the Tyson entities do *not* produce hogs in any material way, as shown in the following table reproduced from their complaint:[3]

| Defendant | Hog Production | Hog processing and intermediate pork processing/packing | Further Pork Processing |
|---|---|---|---|
| Smithfield | ✓ | ✓ | ✓ |
| Tyson |  | ✓ | ✓ |
| Triumph | ✓ | ✓ |  |
| Seaboard | ✓ | ✓ |  |
| Hormel |  | ✓ | ✓ |

---

[2] (*See also* IIP CAC ¶ 109 ("Fully integrated companies have broad control over production processes, and near-total operational discretion in deciding how much to produce and when.").)

[3] (*Id.* ¶ 111 (the table in the IIP Complaint identifies Defendants "that have significant operations (>=5% market share in at least two stages of the value chain").)

2

Indeed, Plaintiffs fail to allege in any of the complaints that any specific Tyson entity took any actual steps to reduce hog production. Tyson simply lacked the ability to participate in the conspiracy as alleged by Plaintiffs.

Although Plaintiffs make sweeping statements that "Defendants" exercised "increased control over the breeding, production, growing, and processing of pork" over the class period, and that Defendants "have the ability to restrict and reduce supply," they plead no *facts* suggesting that those conclusions are true for any of the Tyson Defendants. (*E.g.*, DPP CAC ¶¶ 68-69, 74.) Therefore, the Court should disregard those broad, unsupported conclusions. *See Monson v. DEA*, 589 F.3d 952, 962 (8th Cir. 2009) (holding that district court "was not required to accept as true . . . alleged facts that were nothing more than 'unsupported conclusions, unwarranted inferences and sweeping legal conclusions'") (citation omitted). With respect to the Tyson Defendants, Plaintiffs' entire theory of collusion is not merely implausible, it is rendered impossible by Plaintiffs' own admission. As such, the complaints must be dismissed as to each of the three entities. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Moreover, because the Tyson Defendants overwhelmingly *purchase* rather than *produce* the hogs used in their operations (a fact acknowledged by IIPs in the reproduced table above), the Tyson Defendants have no incentive to participate in a conspiracy designed to raise the price of hogs. To the contrary, it would be against the Tyson Defendants' economic self-interest to do so. Under Plaintiffs' theory, the alleged conspiracy would result in the Tyson Defendants being forced to pay a much higher price

for hogs, resulting not in any ill-gotten windfall, but in effect raising the Tyson Defendants' input costs and injuring themselves. Therefore, the claims against each of the Tyson Defendants must be dismissed because Plaintiffs' own allegations demonstrate that it makes no economic sense for any of them to participate in the alleged conspiracy. *See Am. Channel, LLC v. Time Warner Cable, Inc.*, 2007 WL 142173, at *7 (D. Minn. Jan. 17, 2007) (dismissing antitrust complaint for failure to allege "any facts to explain why, how, or for what purpose" the defendants "would need to conspire"); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1109 (7th Cir. 1984) (holding that "it is inherently implausible . . . that Ford conspired to injure itself"); *Cable Line, Inc. v. Comcast Cable Commc'ns of Pa., Inc.*, No. 3:16-CV-1000, 2018 WL 2209518, at *6-7 (M.D. Pa. May 14, 2018) (dismissing complaint where, under the facts alleged, defendant would have "no motive to enter into a conspiracy where its own subcontractors would be able to charge higher rates"); *Cascades Computer Innovation LLC v. RPX Corp.*, 2013 WL 316023, *11 (N.D. Cal. Jan. 24, 2013) ("At the motion to dismiss stage, the determination turns on whether the defendants had 'any rational motive' to join the alleged conspiracy; and whether the conduct alleged 'was consistent with the defendant's independent interest.'") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986)); *United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 401 (S.D.N.Y. May 31, 2001) ("where the facts alleged in a complaint demonstrate that an alleged predatory pricing conspiracy makes no economic sense, the cause of action must be dismissed") (citing *Matsushita*, 475 U.S. 574).

Because Plaintiffs' own allegations render their claims against the Tyson Defendants implausible on their face and fundamentally flawed, Plaintiffs' claims against each Tyson entity should be dismissed with prejudice. *See Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1055 (D. Minn. 1992) (dismissing antitrust claims without leave to amend where pleading defects suffered from "fundamental inadequacies"); *see also Twombly*, 550 U.S. at 556; *Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'") (internal citation omitted); *Car Carriers*, 745 F.2d at 1109; *Cable Line*, 2018 WL 2209518, at *6-7.

## II. PLAINTIFFS' IMPERMISSIBLE GROUP PLEADING DOES NOT TIE ANY TYSON ENTITY TO THE ALLEGED CONSPIRACY

The Court also should dismiss all claims against Tyson Foods, Tyson Prepared Foods, and Tyson Fresh Meats because Plaintiffs have failed to plead any factual allegations tying any of them to the alleged conspiracy. As discussed in Section I.A of the Memorandum in Support of the Joint Motion to Dismiss, a complaint must "allege that 'each individual defendant joined the conspiracy and played some role in it' because, 'at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'" *Banxcorp v. Apax Partners, L.P.*, No. 10-4769 (SDW)(MCA), 2011 WL 1253892, at *4 (D.N.J. Mar. 28, 2011) (quoting *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 312 (D.N.J. 2004)). Because each corporate affiliate is a legally separate entity, plaintiffs cannot "group[] defendants who are

5

affiliated together into a single name . . . for pleading purposes" and "must be able separately to state a claim against each and every defendant joined in th[e] lawsuit." *In re Aluminum Warehousing Antitrust Litig.*, No. 13-mdF-2481 (KBF), 2014 WL 4277510, at *38 (S.D.N.Y. Aug. 29, 2014).

Here, Plaintiffs fail to adequately allege that each (or any) Tyson entity agreed to join the alleged conspiracy. Instead, Plaintiffs simply lumped together the allegations against each entity under the name, "Tyson." (DPP CAC ¶ 2; CIP CAC ¶ 2; IIP CAC ¶ 2.) In fact, across the three complaints, there are only five unique instances in which Plaintiffs present particular allegations against any of the three Tyson Defendants (as set forth in the Appendix). And in some cases, all three consolidated complaints are completely devoid of any factual allegations against any particular Tyson entity. For instance, no plaintiff presents *any* factual allegations against Tyson Prepared Foods; IIPs' consolidated complaint *lacks even a single factual allegation* against Tyson Foods; and the IIPs' consolidated complaint contains *no allegations* against Tyson Fresh Meats.

Plaintiffs' allegations against specific Tyson entities are wholly insufficient to state a plausible claim that any of them joined the alleged conspiracy. As to Tyson Foods, DPPs and CIPs merely allege that some employees served on the board of a trade association, some employees attended a trade association meeting, and the COO made two remarks during earnings calls that decreased supply would be favorable for pricing.

6

(DPP CAC ¶¶ 98(c), 99-100, 115, 133; CIP CAC ¶¶ 104(c), 105-06, 123, 138.[4])  And as to Tyson Fresh Meats, DPPs' and CIPs' only factual allegation is that one employee allegedly served on a trade association's board of directors.  (DPP CAC ¶ 89; CIP CAC ¶ 95.)  Merely being a member of a trade association or publicly stating a basic economic principle of supply and demand is not sufficient to state a claim for the violation of any antitrust law and is woefully inadequate to open the doors of discovery in an antitrust conspiracy case.  *See Moore v. Boating Indus. Ass'ns*, 819 F.2d 693, 712 (7th Cir. 1987).

Thus, Plaintiffs have failed to meet their burden to sufficiently allege that *any* Tyson entity joined the alleged conspiracy.  Accordingly, Plaintiffs' claims against Tyson Foods, Tyson Fresh Meats and Tyson Prepared Foods should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss all claims against Tyson Foods, Tyson Prepared Foods, and Tyson Fresh Meats with prejudice.

---

[4] Plaintiffs also allege that "Tyson's" COO said in February 2011 that the belief that pork profitability was not sustainable was incorrect because hog production levels could not change much in 2011 because of the animals' lifecycles.  (DPP CAC ¶ 123; CIP CAC ¶ 129; IIP CAC ¶ 104.)  They further claim that in 2012, "the CEO of Tyson" noted that pork prices had "inflat[ed] from reduced supply and global demand, putting less domestic product on the market."  (DPP CAC ¶ 134; CIP CAC ¶ 139.)  Lastly, IIPs include a chart that they claim compares the revenues and costs of "Tyson."  (IIP CAC ¶¶ 130-33.)

## APPENDIX

## Complete List of Allegations Against Each Specific Tyson Entity

| Tyson Foods, Inc. | Tyson Prepared Foods, Inc. | Tyson Fresh Meats, Inc. |
|---|---|---|
| • Four employees were on the board of the North American Meat Institute and its predecessor at some point since January 1, 2009, and one employee served as an officer.  (DPP CAC ¶¶ 98(c), 99; CIP CAC ¶¶ 104(c), 105.) | • None | • Todd Neff of Tyson Fresh Meats allegedly participated on the National Pork Producers Council Board of Directors.  (DPP CAC ¶ 89; CIP CAC ¶ 95.) |
| • Donnie Smith, then CEO of Tyson Foods, and twelve other "Tyson executives" allegedly attended the 2012 Annual Meat Conference.  (DPP CAC ¶ 100; CIP CAC ¶ 106.) | | |
| • Tyson Foods's Chief Operating Officer allegedly said during an earnings conference call that pork production was expected to decrease into 2010 and beyond.  (DPP CAC ¶ 115; CIP CAC ¶ 123.) | | |
| • During another earnings conference call, Tyson Foods, Inc.'s COO allegedly said, "As you know, decreased supply should be favorable to pricing."  (DPP CAC ¶ 133; CIP CAC ¶ 138.) | | |

8

Respectfully Submitted,

/s/ David P. Graham
David P. Graham
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
950 F Street, N.W.
Washington, D.C. 20004
(202) 912-4700
radcox@axinn.com
trider@axinn.com

Felix J. Gilman (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200
fgilman@axinn.com

*Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.*