UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:  All Actions | No. 0:18-cv-1776-JRT-HB<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT AGRI STATS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 1

    I.    Plaintiffs Do Not Allege That Agri Stats Knew Of A Supposed Conspiracy Among The Other Defendants .................................................... 2

    II.    Plaintiffs Do Not Allege That Agri Stats Agreed to Support Any Purported Supply-Reduction Conspiracy Among The Other Defendants ........................................................................................................ 5

CONCLUSION .................................................................................................................. 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 4

*Bank of America, N.A. v. Knight*,
    725 F.3d 815 (7th Cir. 2013) ..................................................................................... 1

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 4, 7

*Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*,
    43 F.3d 1119 (7th Cir. 1994) ..................................................................................... 6

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    288 F.3d 1028 (7th Cir. 2002) ............................................................................... 2, 5

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ................................................................................... 7

*Insulate SB, Inc. v. Advanced Finishing Sys.*,
    797 F.3d 538 (8th Cir. 2015) ..................................................................................... 1

*Maple Flooring Mfg. Ass'n v. United States*,
    268 U.S. 563 (1925) .................................................................................................. 3

*Mayor & City Council of Baltimore v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013) ...................................................................................... 6

*Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*,
    208 F.3d 655 (8th Cir. 2000) ..................................................................................... 6

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
    806 F.3d 835 (5th Cir. 2015) ..................................................................................... 1

*Sherr v. HealthEast Care Sys.*,
    262 F. Supp. 3d 869 (D. Minn. 2017) ........................................................................ 5

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ..................................................................................... 7

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978) ........................................................................................... 3

## INTRODUCTION

Defendant Agri Stats, Inc. ("Agri Stats") does not produce pork, sell pork, or compete with any other Defendant. Plaintiffs instead allege that Agri Stats generated industry benchmarking reports, but that says nothing about whether Agri Stats knew of or supported a supposed conspiracy among the other Defendants to reduce pork supplies. To fill the gap, Plaintiffs offer only conclusory and speculative assertions about Agri Stats's alleged involvement in a putative conspiracy to restrict supplies of a product it neither produces nor sells.

Agri Stats joins the motions to dismiss of all Defendants. It files this individual brief only to highlight why Plaintiffs' claims against Agri Stats are particularly implausible.

## ARGUMENT

Defendants' joint motions set out the standards for analyzing motions to dismiss in antitrust cases. Agri Stats will not repeat them here. It notes, however, that in multi-defendant cases, the well-pleaded facts must plausibly suggest "that a particular defendant joined the conspiracy and knew of its scope." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (Easterbrook, J.); *accord MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 845 (5th Cir. 2015) (plaintiffs must show a defendant "knew 'the essential nature and general scope' of the joint plan and joined it"). For each defendant, a complaint must allege "factual allegations beyond the bare conclusion that there was a conspiracy," including how *each* defendant "shared a unity of purpose or a common design and understanding, or a meeting of the minds." *Insulate SB,*

*Inc. v. Advanced Finishing Sys.*, 797 F.3d 538, 543, 546 (8th Cir. 2015) (internal quotes omitted). When antitrust plaintiffs assert that a non-competitor participates in a horizontal conspiracy, they must plead facts that, taken as true, plausibly suggest that the non-competitor both knew of the supposed conspiracy and agreed with the competing companies to join it. *In re Brand Name Prescription Drugs Antitrust Litig.*, 288 F.3d 1028, 1033 (7th Cir. 2002) (Posner, J.) (requiring antitrust plaintiffs to show that non-competitors both knew of and joined a putative horizontal conspiracy).

Plaintiffs' Complaints allege neither with respect to Agri Stats.

## I. Plaintiffs Do Not Allege That Agri Stats Knew Of A Supposed Conspiracy Among The Other Defendants.

As discussed in the memoranda on the joint motions, Plaintiffs have not alleged direct evidence of an agreement or circumstantial facts from which the Court could plausibly infer the existence of an agreement. Plaintiffs also do not allege facts showing that Defendants engaged in parallel conduct, and no such parallel conduct could possibly be alleged as to Agri Stats because it is not a pork producer or seller and could not have reduced pork output. Therefore, Plaintiffs must find a different way to plead facts plausibly suggesting that Agri Stats knew the scope of the putative supply-reduction conspiracy. That they have failed to do.

*First*, Plaintiffs' allegations about Agri Stats and its customer relationships are wholly consistent with lawful commercial conduct and do not suggest that Agri Stats knew of any putative antitrust conspiracy. Plaintiffs allege, for example, that: Agri Stats "collects participant financial and production data electronically each month"; "[i]nternal

auditors convert the data, prepare it for comparison and perform [ ] monthly audits"; and "[e]ach company's financial data is reconciled to its general ledger to help ensure actual costs are reported." Compl. ¶ 50.[1] This service adds value for customers by providing "monthly detailed reports and graphs . . . allow[ing] them to compare their performance and costs to other participants, the average of all companies, the top 25 percent and the top five companies." *Id.* ¶ 51. Supplying performance barometers that allow a firm to assess its operations in comparison to its rivals is a common, widely accepted practice that can promote competition and benefit consumers. *See, e.g.*, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among competitors. . . can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive.").[2] Plaintiffs nonetheless claim that Agri Stats "knew that it played a central role in this conspiracy" because it advertised these benchmarking services to industry participants. Compl. ¶ 56. When, as here, the factual allegations are equally—indeed, more—consistent with a defendant's participation in a legitimate business as they are with participation in an

---

[1] As the operative pleadings contain many of the same allegations, as well as other substantively similar allegations, paragraph references are to the Direct Purchaser Plaintiffs' complaint, Dkt. 83, No. 18-cv-1803, unless otherwise indicated.

[2] The Supreme Court's recognition of the procompetitive benefits of dissemination of accurate industry information is long standing: "Persons who unite in gathering and disseminating information in trade journals and statistical reports on industry . . . are not engaged in unlawful conspiracies in restraint of trade merely because the ultimate result of their efforts may be to stabilize prices or limit production through a better understanding of economic laws and a more general ability to conform to them[.]" *Maple Flooring Mfg. Ass'n v. United States*, 268 U.S. 563, 584 (1925). The Sherman Act "neither repeals economic laws nor prohibits the gathering and dissemination of information." *Id.*

alleged conspiracy, they do not satisfy Rule 8's plausibility standard, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("[W]ithout that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory.").

*Second*, Plaintiffs' remaining allegations that Agri Stats knew of the purported conspiracy are entirely conclusory. Plaintiffs stake their claim on the supposed fact that "long-time industry insiders" compromised Agri Stats's system for anonymizing its benchmark data, Compl. ¶¶ 61-62, but Plaintiffs do not allege any facts suggesting that Agri Stats was involved in compromising the anonymity of its own reports. Although Plaintiffs also assert that Agri Stats was "aware of" or "knew" that anonymity had been compromised, *id.* ¶¶ 62, 65, these assertions are legal conclusions entitled to no presumption of truth, *see Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (allegation that certain defendants "knew of, condoned, and agreed to" subject plaintiff to harsh conditions of confinement on account of race and religion held "conclusory and not entitled to be assumed true"). And even if Agri Stats was somehow aware that unidentified individuals at unidentified customers had compromised the anonymity of its reports, that fact does not raise a plausible inference that Agri Stats knew about a putative supply-reduction agreement or how its reports were used.

Plaintiffs' allegations that certain other Defendants described trends or information observed from Agri Stats's reports add nothing to any claim against Agri Stats. *See, e.g.*, Compl. ¶¶ 121-23. They do not show or support an inference that Agri Stats knew about the statements at all, much less knew that those statements sought to

further an antitrust conspiracy.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, 288 F.3d at 1033 (refusing to find that some defendants joined conspiracy when there was "no evidence that the wholesalers knew that the manufacturers' price discrimination was collusive").

Because Plaintiffs have not plausibly alleged that Agri Stats knew about any putative supply-reduction conspiracy among the other Defendants, the claims against Agri Stats should be dismissed for this reason alone.

## II. Plaintiffs Do Not Allege That Agri Stats Agreed to Support Any Purported Supply-Reduction Conspiracy Among The Other Defendants.

Plaintiffs' claims against Agri Stats also fail because the allegations do not plausibly suggest that Agri Stats agreed to support any putative conspiracy.  Indeed, Agri Stats's business model to provide reporting and consulting services negates any inference that Agri Stats had a motive to join a conspiracy to reduce pork supply.  Agri Stats does not sell pork, does not compete against the other Defendants, and therefore would not benefit from alleged price increases for pork products.  *See, e.g.*, *Sherr v. HealthEast Care Sys.*, 262 F. Supp. 3d 869, 883 (D. Minn. 2017) (dismissing antitrust claim when complaint was "[e]ntirely lacking [in] factual allegations to explain why, how, or for what purpose [defendants]—who are not alleged to compete against each other—would need to conspire together").  While Plaintiffs cite a handful of statements from Agri Stats employees touting the company's services, *see, e.g.*, Compl. ¶¶ 44-46, 56-58, these allegations show only that Agri Stats advertises and sells consulting and reporting services.  Plaintiffs do not suggest that Agri Stats actually played a role in setting pork

output or that the compensation for its services changed after the putative conspiracy supposedly began. Nor do they claim that Agri Stats's fees are based on a profit-sharing model or that Agri Stats received a "bonus" based on the results of any anticompetitive conduct.

Under Plaintiffs' own theory, Agri Stats would not have profited from joining a putative conspiracy beyond what it already earned from selling its services. Because Plaintiffs fail to identify any motive for Agri Stats to have joined the putative conspiracy, their claim is implausible. *See, e.g.*, *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 138-39 (2d Cir. 2013) (affirming dismissal of antitrust claim because "[p]laintiffs' factual allegations do not plausibly suggest a common motive to conspire" (quotation marks omitted)); *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655, 660 (8th Cir. 2000) (non-competitors had "no logical motive to 'conspire'").

Plaintiffs' allegations about the disclosure of Agri Stats report "books" to the wrong customer on a few occasions do nothing to repair this defect. *See* Compl. ¶¶ 63-64. The Complaints do not plausibly suggest that Agri Stats intended any such disclosures, much less that Agri Stats consciously committed to a years-long conspiracy to drive up prices for products that it does not sell. *See Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1123 (7th Cir. 1994) (recognizing that antitrust violations are "based on deliberate rather than inadvertent actions").

Some Plaintiffs also appear to allege that Agri Stats joined the purported conspiracy by participating in trade associations and industry conferences. Commercial

Food Preparers' Compl. ¶¶ 104-07.[3] But "mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement" because "trade associations often serve legitimate functions." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015) (internal quotation marks omitted); *see also Twombly*, 550 U.S. at 567 n.12 (recognizing that defendant should not be forced to "devote financial and human capital to hire lawyers, prepare for depositions, and otherwise fend off allegations of conspiracy . . . just because he belonged to the same trade guild as one of his competitors"); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 911 (6th Cir. 2009).

Plaintiffs have not plausibly alleged that Agri Stats supported any putative conspiracy among the pork-integrator Defendants. Their claims against Agri Stats fail for this reason as well.

---

[3] Dkt. 63, No. 18-cv-1891.

## CONCLUSION

Plaintiffs' Complaints should be dismissed with prejudice for the reasons set forth in the memoranda filed by all Defendants. Plaintiffs' claims against Agri Stats should also be dismissed with prejudice for the additional reasons explained above.

DATED: October 23, 2018 */s/ Peter H. Walsh*
Peter H. Walsh (MN# 0388672)
HOGAN LOVELLS US LLP
80 Eighth Street
Suite 1225
Minneapolis, Minnesota  55402
Tel:  (612) 402-3000
Fax:  (612) 339-5167
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Jennifer A. Fleury (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com

*Counsel for Agri Stats, Inc.*