UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK PROCESSING ANTITRUST LITIGATION | No. 0:18-cv-01776-JRT-HB |
| This Document Relates To :<br><br>ALL ACTIONS | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY DISCOVERY PENDING RESOLUTION OF DEFENDANTS' MOTION TO DISMISS** |

**INTRODUCTION**

This case is simply an attempt to copy a case against the chicken industry and apply it onto the pork industry. But the Complaints in the two cases are more like apples and oranges than two white meats. Here, Plaintiffs offer only vague and conclusory allegations that are insufficient to state a plausible claim for relief, and their claims were brought years past the four-year limitations period. Defendants are therefore moving to dismiss Plaintiffs' claims in their entirety. Given the enormous costs of antitrust discovery and the propriety of discovery stays pending rulings on dispositive motions, discovery here should be stayed pending a ruling on the motions to dismiss.

Defendants are not seeking a full stay. In fact, in addition to fulfilling their preservation obligations, Defendants have already agreed to take several actions that will facilitate discovery if it becomes necessary. These actions include: (i) negotiating an Agreed Confidentiality Order; (ii) negotiating a Proposed Order Regarding Production of Electronically Stored Information and Paper Documents; (iii) serving Initial Disclosures

pursuant to Rule 26 by December 3, 2018; and (iv) producing readily available organizational charts by December 3, 2018. In addition, Defendants agreed to Plaintiffs' aggressive briefing schedule for the motions to dismiss, and obtained the Court's first available date for oral argument, which will now be held on January 10, 2019. As a result, the motions to dismiss will be fully briefed and argued in short order.

As set forth below, Defendants' request for a stay is appropriate and should be granted.

***First***, as addressed in detail in Defendants' Motions to Dismiss, substantial grounds exist—that Plaintiffs cannot cure—for dismissing the Complaints in their entirety. None of the Complaints contains a single non-conclusory allegation describing any written or oral communication establishing, or even referencing, any agreement among the Defendants. Plaintiffs claim that there was a conspiracy to reduce pork production, but they do not allege any parallel supply cuts. Rather, the Complaints acknowledge that industry supply actually increased over the course of the alleged conspiracy period, and did so at a rate comparable to increases prior to the alleged conspiracy. Furthermore, Plaintiffs' conspiracy theory is implausible on its face because it depends on the Defendants purportedly being integrated—that is, not only selling pork for consumption, but also raising the hogs from which pork is made. Only three Defendants, however, are integrated, and thus the Defendants as a group would not have the ability to control the hog supply—nor would the Defendants have any reason to limit hog supply and thereby raise their own costs of production. In addition, Plaintiffs claim that this supposed conspiracy began in 2009, and in support they cite publicly available sources, such as statements

during earnings calls and pricing data published by the federal government. Thus, the four-year limitations period has long expired. Finally, the individual Defendants are moving to dismiss for specific pleading failures that are also likely to eliminate, or at the least narrow, the parties, relevant time periods, and allegations at issue.

*Second*, the burdens and costs of discovery are especially high in complex antitrust matters. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 558 (2007) ("proceeding to antitrust discovery can be expensive"). Here, the burden would be particularly high because Plaintiffs' claims, as pleaded, implicate almost ten years' worth of conduct and sixteen Defendants, and Plaintiffs have already proposed a discovery period covering nearly twelve years. Consistent with case law in this district, Defendants should not have to undertake costly and disruptive efforts to identify, collect, load, process, review, and produce documents or otherwise engage in burdensome discovery until this Court has resolved whether this case or any parts of it should move forward.

*Third*, a discovery stay will not prejudice Plaintiffs. Defendants have in place the appropriate document preservation notices and have agreed to additional preservation measures that Plaintiffs have requested. Defendants have further agreed to certain additional actions while the Motions to Dismiss are pending, as detailed above. Plaintiffs waited nearly a decade to bring this action and have not shown any need for additional or expedited discovery now.

*Finally*, a stay will serve the Court's interests, as there is little benefit in expending resources to manage this action until Defendants' well-founded Motions to Dismiss are decided.

Simply put, this is exactly the type of case where a discovery stay makes sense: substantial pleading defects, extraordinary costs of commencing discovery in a case involving a large number of defendants and their affiliates, and no prejudice to Plaintiffs waiting for this Court's resolution of Defendants' dispositive motions.

## ARGUMENT

The Court has "broad discretion" to grant a discovery stay, and it should do so in this case. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *see also Frable v. Synchrony Bank*, 215 F. Supp. 3d 818, 821 (D. Minn. 2016) (Bowbeer, Mag. J.) ("A district court has broad discretion to stay proceedings when appropriate to control its docket."). Courts in this Circuit consider a variety of factors in evaluating motions to stay discovery. Discovery stays are appropriate and routine where, as here, (i) a pending motion that would resolve all or substantially all of the case "appears to have substantial grounds," (ii) defendants would face substantial burden absent a stay, (iii) the plaintiffs would suffer little to no prejudice as a result of the stay, and (iv) a stay would serve the court's interests. *Dufrene v. ConAgra Foods, Inc.*, 2016 WL 10651947, at *2 (D. Minn. Apr. 7, 2016); *In re CenturyLink Sales Practices & Sec. Litig.*, 2018 WL 2122869, at *1 (D. Minn. May 8, 2018); *Kellogg v. Watts Guerra, LLP*, 2018 WL 3432048, at *1 (D. Minn. July 16, 2018).[1] Each factor weighs in favor of a stay here.

---

[1] *See also In re Wholesale Grocery Prods. Antitrust Litig.*, 2010 WL 11469883, at *3 (D. Minn. Mar. 3, 2010) (denying plaintiffs' motion to lift discovery stay before ruling on defendants' motion to dismiss); *Riehm v. Engelking*, 2006 WL 2085404, at *2 (D. Minn.

## I.   DEFENDANTS' MOTIONS TO DISMISS HAVE SUBSTANTIAL GROUNDS.

"A plaintiff must adequately plead a claim *before* obtaining discovery, not the other way around." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 2009 WL 294353, at *2 (D. Minn. Feb. 5, 2009) *aff'd*, 623 F.3d 1200 (8th Cir. 2010) (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (filing a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Twombly*, 550 U.S. at 563 n.8 ("*[B]efore* proceeding to discovery, a complaint must allege facts suggestive of illegal conduct.") (emphasis added).  Therefore, courts have routinely stayed discovery during the pendency of a motion to dismiss where, as here, the "pending motion to dismiss would dispose of all or substantially all of the case, it appears to have substantial grounds, and is not unfounded in the law." *In re CenturyLink*, 2018 WL 2122869, at *1.

Defendants' Motions to Dismiss have substantial grounds, as detailed in the pending Motions to Dismiss.  Plaintiffs allege that sixteen companies colluded to reduce pork supply from 2009 to the present.  But the Complaints allege no facts about any meetings or conversations—much less agreements—between Defendants concerning pork production.  Rather, Plaintiffs' allegations are primarily based on statements about industry conditions and company decisions during earnings calls, allegations about Defendants' purchasing of benchmarking data from Defendant Agri Stats, and membership in trade

---

July 25, 2006) (Tunheim, J.) (affirming Magistrate Judge's order granting motion to stay discovery pending resolution of dispositive motions).

5

associations. Plaintiffs attempt to buttress these unremarkable allegations with supply and pricing data published by the federal government, but those data show supply *increasing* throughout most of the relevant period, notwithstanding Plaintiffs' claim of a decade-long conspiracy to reduce supply. Plaintiffs' vague and conclusory allegations in this case stand in stark contrast to the allegations in *In re Broiler Chicken Antitrust Litigation*, 290 F. Supp. 3d 772 (N.D. Ill. 2017), where the plaintiffs alleged (i) numerous statements by certain defendants calling for supply cuts followed by actual supply cuts made *by each defendant* (*id.* at 782); (ii) "suspicious[ly]" timed meetings between defendants, followed by identifiable supply cuts by *each defendant* (*id.* at 782, 800, 803); and (iii) the closure of numerous processing plants during the class period (*id.* at 782-83). There are no similar allegations here.

Putting *Broiler* aside, Plaintiffs could never meet their pleading burden here because they have alleged neither direct evidence of a conspiracy nor any circumstantial facts giving rise to a plausible inference of such an agreement. Plaintiffs have not alleged (i) what hog supply reductions and coordinated production limits were agreed upon and when, (ii) which Defendants supposedly implemented those limits, or even (iii) any parallel actions among the Defendants. In addition, the very sources Plaintiffs cite in their Complaints indicate that: (a) supply increased, not decreased, overall during the Class Period; (b) Defendants expanded capacity; and (c) factors other than a conspiracy—such as the outbreak of disease and the Great Recession—caused any short-term supply

reductions.  Compl. ¶¶ 55, 100, 107; IPP Compl. ¶ 97; CIP Compl. ¶¶ 60, 107, 115.[2]  Plaintiffs' naked assertion of an agreement is not plausible on its face.  *See Stark v. Bank of Am., N.A.*, 2015 WL 756938, at *1 (D. Minn. Feb. 23, 2015) ("[T]he court must draw reasonable inferences in the plaintiff's favor, but it need not make unreasonable inferences or accept unrealistic assertions.") (citing *Brown v. Medtronic, Inc.*, 628 F. 3d 451, 461 (8th Cir. 2010)).  In short, Plaintiffs fail to advance plausible allegations of any conspiracy.  *See Twombly*, 550 U.S. at 555-57 (requiring dismissal when plaintiffs' factual allegations do not plausibly "suggest that an agreement was made" and therefore fail "to raise a right to relief above the speculative level").  Furthermore, even if Plaintiffs' factual allegations, which are entirely based on publicly available sources, were sufficient to state a claim, dismissal would be required because the four-year statute of limitations expired years ago.

Further justifying a stay, the Defendants have each filed individual motions to dismiss; each of which standing alone contains substantial grounds.  Plaintiffs largely ignore certain Defendants, instead attempting to "lump in" those Defendants without adequate supporting facts.  *See In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1020 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999).  In addition, certain Defendants are *not* vertically integrated and are primarily *processors*, purchasing hogs from independent farmers.  Thus, Plaintiffs' theory that the Defendants somehow conspired to drive up hog prices, which would reduce processor margins, is implausible on its face.  Certain Defendants, further, invested millions of dollars to significantly *expand* capacity; a fact

---

[2] Complaint abbreviations are defined in Defendants' Joint Motion to Dismiss Plaintiffs' federal claims (ECF No. 162), filed contemporaneously herewith.

Plaintiffs cannot and do not reconcile with their theory that processors implemented supposed signals to redfuce supply.

Defendants' Motions to Dismiss include substantial grounds that the entirety of Plaintiffs' claims should be dismissed.

## II. THE COSTS AND BURDEN OF PREMATURE AND UNNECESSARY ANTITRUST DISCOVERY ARE UNDUE AND SIGNIFICANT.

A discovery stay pending the resolution of Defendants' Motions to Dismiss is particularly warranted here because discovery in antitrust actions quickly becomes prohibitively costly and burdensome. *Insulate SB, Inc.*, 797 F.3d at 543 (recognizing "the unusually high cost of discovery in antitrust cases"); *see also DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) (noting underlying consensus that "discovery in **any** antitrust case can quickly become enormously expensive and burdensome to defendants") (emphasis added). Recognizing these significant costs, courts "counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Twombly*, 550 U.S. at 558.

Indeed, courts routinely stay discovery pending resolution of motions to dismiss in complex antitrust cases such as this:

- *In re Broiler Chicken Grower Litig.*, 2017 WL 3841912, at *6 (E.D. Okla. Sept. 1, 2017) ("In the context of this complex, putative class antitrust action with potentially thousands of claimants asserting claims of illicit conduct spanning a decade, a limited delay in discovery to resolve threshold issues raised at the

8

outset of litigation will not only prevent potentially unnecessary expenses, it will also serve judicial economy.");

- *In re Wholesale Grocery Prod. Antitrust Litig.*, 2010 WL 11469883, at *3 (D. Minn. Mar. 3, 2010) ("this Court declines to open the flood gates of discovery prior to Plaintiffs satisfying their initial burden of pleading a cause of action upon which relief can be granted");

- *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at *4-6 (N.D. Cal. July 24, 2007) (staying discovery pending resolution of the two defendants' motions to dismiss Section 1 conspiracy allegations, and remarking that "to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*" given the burdens peculiar to antitrust discovery);

- *In re London Silver Fixing, Ltd., Antitrust Litig.*, No. 14-MD-2573, ECF Nos., 4, 24, 151 (S.D.N.Y. 2016) (discovery stayed through resolution of the three defendants' motions to dismiss the plaintiffs' conspiracy allegations); and

- *In re Pre-Filled Propane Tank Antitrust Litig.*, 2015 WL 11022887, at *5 (W.D. Mo. Feb. 24, 2015) (granting motion to stay during pendency of motion to dismiss).

In addition, courts have recognized that discovery stays pending a motion to dismiss are proper because motions to dismiss can serve to significantly narrow the claims and parties in the case (if not dismiss it entirely). *See, e.g., Riehm v. Engelking*, 2006 WL 2085404, at *1-2 (D. Minn. July 25, 2006) (Tunheim, J.) (affirming order staying discovery

where it was "likely that the Court's ruling on the dispositive motions will narrow the issues in this case and obviate the need for some discovery"); *see also Oticon A/S v. GN Resound A/S*, 2015 WL 5752429, at *5 (D. Minn. Aug. 5, 2015) (Bowbeer, Mag. J.) (noting that stays are "particularly appropriate where discovery has not started, as a stay would likely conserve discovery resources because it would potentially enable the parties to focus their discovery efforts on a narrower set of issues") (quoting *VData, LLC v. Aetna, Inc.*, 2006 WL 3392889, at *8 (D. Minn. Nov. 21, 2006)).

By way of example, in this case Plaintiffs have asserted claims against companies that are not engaged in hog or pork production, based solely on allegations that they are parent or shareholder corporations of other defendants.[3] For these Defendants, it is apparent on the face of the Complaints that such allegations are not sufficient to state a claim and justify the burdens of discovery for them. *Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.*, 9 F. Supp. 3d 1032, 1044 (D. Minn. 2014) ("for antitrust allegations against a subsidiary to be fairly made against the parent company, *there must be allegations that the parent company actually engaged in anti-competitive conduct* and not merely that it served as parent to its wholly-owned subsidiary") (emphasis

---

[3] *See* Memorandum of Law by Indiana Packers Corporation and Mitsubishi Corporation (Americas) in Support of Motion to Dismiss at Sec. III; Memorandum in Support of Motion to Dismiss of Defendants Seaboard Foods LLC and Seaboard Corporation at Sec. III; Tyson Foods, Inc.'s, Tyson Fresh Meats, Inc.'s and Tyson Prepared Foods, Inc.'s Memorandum of Law in Support of Their Joint Motion to Dismiss at Sec. II; Memorandum of Law by JBS USA Food Company and JBS USA Food Company Holdings in Support of Joint Motion to Dismiss at Sec. A.

added). Absent a stay of discovery, these Defendants will be forced to bear substantial and unnecessary discovery burdens while they await dismissal of the claims against them.

Overall, the scale of any premature discovery here is undeniable given the scope of the Complaints' allegations. Plaintiffs make broad assertions regarding the conduct of sixteen Defendants over, for some, almost a decade's worth of activities.

As this Court is aware, identifying custodians and data sources; negotiating Rule 34 requests for production; and identifying, collecting, loading, processing, reviewing for responsiveness and privilege, and producing documents are time-consuming, disruptive, and costly undertakings in a large-scale litigation such as this one. Even the early stages of this process would require Defendants to incur substantial costs. Ordering a discovery stay strikes the right balance, particularly given the concessions to which Defendants have already agreed, as discussed below.

### III. A TEMPORARY STAY WILL NOT PREJUDICE THE PLAINTIFFS.

While Defendants are likely to incur tremendous costs absent a discovery stay, Plaintiffs will not be prejudiced by one. To begin, Defendants have confirmed to Plaintiffs that they already have litigation holds in place that cover the substantive allegations in the Complaints. In addition, Defendants each agreed to undertake specific additional preservation actions at Plaintiffs' request. These preservation efforts significantly diminish any potential prejudice to Plaintiffs. *See Frable*, 215 F. Supp. 3d at 822 (granting motion to stay and noting that "Plaintiff has shown no real threat of prejudice" because "a litigation hold is in place"). Defendants have further agreed to several concessions that turn this motion into a request for less than a full stay. Specifically, Defendants are currently

11

engaging in negotiations with Plaintiffs concerning the terms of an Agreed Confidentiality Order and a Proposed Order Regarding Production of Electronically Stored Information and Paper Documents, and any disputes regarding these documents will be raised with the Court. Defendants have further agreed to receive service of Plaintiffs' First Set of Requests for Production of Documents on November 1, 2018. They have also agreed that all parties will serve Initial Disclosures pursuant to Rule 26 by December 3, 2018, and to produce readily-available organizational charts by December 3, 2018. Thus, the stage will be set for the parties to be able to commence discovery expeditiously if Defendants' Motions to Dismiss are denied in whole or in part.

Further, if Defendants' Motions to Dismiss are denied, the modest discovery delay would not constitute prejudice. *See Oticon A/S*, 2015 WL 5752429, at *2 ("[N]ot all delay is necessarily unduly prejudicial and here any cost of the delay is likely offset by the gains to be achieved"). Plaintiffs have already waited almost a decade to bring claims that are based upon information that has been publicly available since 2009, and they will have ample time to conduct discovery (if allowed), negating any potential prejudice.

Moreover, this is not a situation where Plaintiffs need immediate discovery to redress ongoing consumer harm. The Complaints do not allege any facts remotely suggesting that any supply-control conspiracy (if it ever existed) is still ongoing. To the contrary, Plaintiffs' allegations show pork supply *increasing* in each year from 2015 to the present, to record levels, and Plaintiffs themselves acknowledge that a small supply

decrease was the result of hog disease, not any conspiracy. Accordingly, current marketplace conditions reflect a robust supply of pork.[4]

Simply put, Plaintiffs will not suffer prejudice from a discovery stay. While Defendants, in contrast, would suffer a significant burden if discovery is allowed and any part of their motions to dismiss are granted.

### IV. A DISCOVERY STAY PENDING DEFENDANTS' MOTION TO DISMISS WOULD BENEFIT JUDICIAL INTERESTS.

Finally, a discovery stay pending the resolution of the motions to dismiss protects not only a producing party, but also the Court. *See Dufrene*, 2016 WL 10651947, at *4 (concluding the balance of the equities and "in particular the conservation of resources" weighed in favor of a limited stay pending the resolution of the motion to dismiss). Indeed, where a motion to dismiss "has the potential to resolve all of the issues to which the currently pending discovery is relevant, this factor weighs in favor of granting the requested stay." *Id.* For these reasons, a stay of discovery would allow the Court to avoid expending resources managing an action that might ultimately be dismissed. *Cf. Kellogg*, 2018 WL 3432048, at *2 (granting motion to stay pending JPML's transfer decision,

---

[4] The abundant supply situation in the pork market has also received widespread media attention. *E.g.*, George Duke, *U.S. Pork Prices Hit Multi-Year Low*, SPEND MATTERS, Sept. 10, 2018, available at https://spendmatters.com/2018/09/10/u-s-pork-prices-hit-multi-year-low/; Ron Sterk, *Plenty of Meat Available as Prices Decline*, FOOD BUSINESS NEWS, Aug. 7, 2018, available at https://www.foodbusinessnews.net/articles/12301-plenty-of-meat-available-as-prices-decline; Jacob Bunge, *2.5 Billion Pounds of Meat Piles Up in U.S. as Production Grows, Exports Slow*, WALL STREET JOURNAL, July 22, 2018, available at https://www.wsj.com/articles/meat-piles-up-as-production-grows-and-exports-slow-1532268000.

finding without a stay "the Court will expend significant resources familiarizing itself with the facts and law of a case that will be heard in another court").

## CONCLUSION

For the foregoing reasons, Defendants respectfully move the Court to stay discovery pending the resolution of Defendants' motions to dismiss.

Date: October 23, 2018                                    Respectfully submitted,

*/s/ Mark L. Johnson*                                     */s/ Richard A. Duncan*
Mark L. Johnson (#0345520)                                Richard A. Duncan (#0192983)
Bethany Krueger (#0306368)                                Aaron D. Van Oort (#0315539)
Virginia R. McCalmont (#0399496)                          Craig S. Coleman (#0325491)
GREENE ESPEL PLLP                                         Emily E. Chow (#0388239)
222 South Ninth Street, Suite 2200                        Isaac B. Hall (#0395398)
Minneapolis, MN 55402                                     Bryan K. Washburn (#0397733)
(612) 373-0830                                            FAEGRE BAKER DANIELS LLP
mjohnson@greeneespel.com                                  2200 Wells Fargo Center
bkrueger@greeneespel.com                                  90 South Seventh Street
vmccalmont@greeneespel.com                                Minneapolis, MN 55402-3901
                                                          (612) 766-7000
Daniel Laytin, P.C. (*pro hac vice*)                      richard.duncan@faegrebd.com
Christa Cottrell, P.C. (*pro hac vice*)                   aaron.vanoort@faegrebd.com
Christina Briesacher (*pro hac vice)*                     craig.coleman@faegrebd.com
KIRKLAND & ELLIS LLP                                      emily.chow@faegrebd.com
300 North LaSalle                                         isaac.hall@faegrebd.com
Chicago, IL  60654                                        bryan.washburn@faegrebd.com
(312) 861-2000
daniel.laytin@kirkland.com                                *Counsel for Hormel Foods Corporation*
christa.cottrell@kirkland.com                             *and Hormel Foods, LLC*
christina.briesacher@kirkland.com

*Counsel for Clemens Food Group, LLC*
*and The Clemens Family Corporation*

15

*/s/ Jaime Stilson*
Jaime Stilson (#392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 492-6746
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert E. Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William H. Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation and Mitsubishi Corporation (Americas)*

*/s/ Donald G. Heeman*
Donald G. Heeman (#286023)
Jessica J. Nelson (#347358)
Randi J. Winter (#391354)
Daniel R. Haller (#396497)
FELHABER LARSON
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
(612) 339-6321
dheeman@felhaber.com
jnelson@felhaber.com
rwinter@felhaber.com
dhaller@felhaber.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky *pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
Robert P. Vance, Jr. (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
bobbyvance@quinnemanuel.com

*Counsel for JBS USA Food Company and JBS USA Food Company Holdings*

*/s/ William L. Greene*
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
Jon M. Woodruff (#0399453)
STINSON LEONARD STREET LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
john.woodruff@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LEONARD STREET LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

*Counsel for Seaboard Foods, LLC and Seaboard Corporation*

*/s/ John A. Cotter*
John A. Cotter (134296)
John A. Kvinge (0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

*Counsel for Smithfield Foods, Inc.*

CASE 0:18-cv-01776-JRT-JFD   Doc. 195   Filed 10/23/18   Page 18 of 19

*/s/ Aaron Chapin*
Aaron Chapin (#6292540)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
aaron.chapin@huschblackwell.com

Gene Summerlin (*pro hac vice*)
Marnie Jensen (*pro hac vice*)
Ryann Glenn (*pro hac vice*)
Kamron Hasan (*pro hac vice*)
Quinn Eaton (*pro hac vice*)
Sierra Faler (*pro hac vice*)
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154
(402) 964-5000
gene.summerlin@huschblackwell.com
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com
kamron.hasan@huschblackwell.com
quinn.eaton@huschblackwell.com
sierra.faler@huschblackwell.com

*Counsel for Triumph Foods, LLC*

*/s/ David P. Graham*
David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
AXINN, VELTROP &
HARKRIDER LLP
950 F Street, N.W.
Washington, D.C. 20004
(202) 912-4700
radcox@axinn.com
trider@axinn.com

*Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.*

/s/ *Peter H. Walsh*
Peter H. Walsh (# 388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3000
F. (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Jennifer A. Fleury (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com

*Counsel for Agri Stats, Inc.*