UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br>*All Actions* | Case No. 0:18-cv-01776-JRT-HB<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY** |

## I.     INTRODUCTION

Defendants seek to stay discovery until the Court decides their motions to dismiss Plaintiffs' complaints. Such a stay would keep this case "on ice" for many months, and would substantially prejudice class members. Defendants have not satisfied their heavy burden to show good cause to stay discovery. To be clear, Plaintiffs do not seek wide-open discovery now, but instead propose that the parties proceed with the threshold tasks that Plaintiffs identify below. Plaintiffs' approach would avoid prejudice and months of delay, and they respectfully request that the Court allow this limited discovery to proceed.

This case relates to the *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (N.D. Ill.) ("*Broiler Chicken*") case, where—after successfully establishing a collusive scheme to restrict competition in the Broiler industry, and significantly increasing prices and producers' profits as intended—Agri Stats, Inc., an information-sharing service, began marketing the same scheme to the pork industry.[1] Just as it did in the chicken

---

[1] Agri Stats is a subscription data service that provides highly sensitive benchmarking reports to the majority of pork integrators. Agri Stats gathers detailed financial and

industry, Agri Stats enabled pork integrators to share critical and proprietary information concerning key business metrics. This was crucial to the formation and operation of Defendants' anticompetitive scheme. Not only did the court deny the *Broiler Chicken* defendants' motions to dismiss, but it was recently publicly disclosed for the first time that the U.S. Department of Justice investigated Agri Stats from 2010 to 2012 for Sherman Act violations across various meat, poultry, and dairy industries—including pork.

This Court should deny Defendants' motion to stay discovery for several reasons. First, a motion to dismiss does not automatically stay discovery, and Defendants' reliance on their pending motions to dismiss as a basis for a stay is improper. *TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. 13-cv-1356 (ADM/FLN), 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013). Defendants must demonstrate good cause to stay discovery, including "specific hardship or inequity if the case is allowed to move forward." *NextGen HBM, Inc. v. ListReport, Inc.*, No. 16-cv-3143 (SRN/FLN), 2017 WL 8229442, at *2 (D. Minn. Feb. 9, 2017). As in this case, when a movant's "entire argument for limiting discovery seemingly rests on the presumption that it will prevail on its Motion to dismiss," the motion to stay discovery properly is denied. *LNV Corp. v. Outsource Serv. Mgmt., LLC*, No. 13-cv-1926, 2013 WL 12180768, at *4 (D. Minn. Nov. 14, 2013). Because Defendants rely solely on their motions to dismiss to support their motion to stay discovery, they have not demonstrated good cause to satisfy their burden. To hold

---

production data from each of the pork integrators, standardizes this information, and produces customized reports and graphs for the pork integrators.

532500                                            2

otherwise would necessitate staying all discovery in any case where a defendant moved to dismiss the complaint.

Second, even considering their motions to dismiss, Defendants have not shown they are likely to succeed on those motions. This case is factually analogous to *Broiler Chicken*, in which the court denied the defendants' voluminous and comprehensive motions to dismiss. 290 F. Supp. 3d 772, 822 (N.D. Ill. 2017). While Defendants try their best to distinguish this case from *Broiler Chicken*, the arguments underlying their motions to dismiss and motion to stay are identical to those of the defendants in *Broiler Chicken*. As in that case, here Plaintiffs allege ample instances of circumstantial evidence relating to Defendants' conspiracy, such as their collaboration with Agri Stats, increased prevalence of production contracts, and unprecedented market concentration. *See* DPP Am. Compl. (No. 0:18-cv-01803, Dkt. No. 83) ¶¶ 48-51, 70, 76-77; Consumer IPP Compl. (Dkt. No. 74) ¶¶ 76-79, 107-09, 113-14; Com. IPP Compl. (No. 0:18-cv-02113, Dkt. No. 54) ¶¶ 53-56, 75, 82-83. Plaintiffs' allegations of industry conditions, company decisions, membership in trade associations, and other such characteristics demonstrate a plausible conspiracy when viewed collectively. *Grasso Enters., LLC v. Express Scripts, Inc.*, No. 4:14CV1932, 2017 WL 365434, at *3-4 (E.D. Mo. Jan. 25, 2017). Indeed, just as Plaintiffs ask here, the Court in *Broiler Chicken* refused to stay discovery and recognized that "only about 10 percent of our civil cases are completely disposed of on what we call dispositive motions, motions to dismiss or summary judgment, and 90 percent are not." Affidavit of Brian D. Clark ("Clark Aff."), Exhibit A (2/24/2017 Hrg. Tr. (Dkt. No. 336) at 14). Instead, the *Broiler Chicken* court ordered the parties to make disclosures regarding ESI and

custodians, negotiate document custodians and other document sources, meet and confer regarding offers of productions and objections to Rule 34 requests, and submit a Rule 26(f) report and hold a Rule 16 Conference.  *See, e.g.*, Clark Aff., Ex. B (12/21/2016, Order (Dkt. No. 264)); *id.*, Ex. C (6/20/2017, Order (Dkt. 420) at 1-2); *id.*, Ex. D (6/16/2017, Hrg. Tr. (Dkt. No. 430) at 99, 166, 190-93).

Third, the discovery Plaintiffs propose over the coming months is not unduly burdensome, but a stay would unnecessarily prejudice Plaintiffs and delay litigation. Plaintiffs and Defendants have already negotiated various discovery protocols and established dates for initial disclosures and service of Rule 34 requests.  While the case law supports denying Defendants' motion to stay in its entirety, Plaintiffs have proposed focusing discovery and disclosures on threshold tasks that fall well short of full document discovery, but avoid starting from a near standstill on key discovery tasks after the motions to dismiss are resolved.

Finally, a stay runs contrary to judicial and public interests by impeding the Court's ability to expedite discovery in an important case affecting tens of billions of dollars in commerce for millions of American consumers and businesses.

For all of these reasons, the Court should deny Defendants' motion.  Instead, the parties should move forward with an important list of threshold discovery tasks that, while not unduly burdensome, will facilitate full discovery if the motions to dismiss are denied. The parties should:

> 1. Make disclosures regarding their ESI systems, employees with particular job responsibilities, and other relevant information

    (*see, e.g.*, Plaintiffs' September 25, 2018 proposal to Defendants regarding certain ESI Disclosures, Clark Aff., Ex. E);

2. Make Rule 26(a) initial disclosures;

3. Submit a Rule 26(f) Report and conduct a Rule 16 pretrial conference to set important parameters for the litigation by, among other means, negotiating agreements regarding discovery time periods for structured and unstructured data systems, negotiating number of interrogatories, etc.;

4. Production of documents from the DOJ's investigation into Agri Stats (including the swine/pork industry), in the same manner in which they were produced to the DOJ;

5. Negotiate offers of production for the Rule 34 requests that Plaintiffs served on November 1, 2018;

6. Negotiate document sources, including both document custodians and non-custodial document sources (*i.e.*, centralized network folders and transactional structured data); and

7. Negotiate a search methodology order.[2]

---

[2] Defendants have thus far refused to discuss any substantive provisions pertaining to culling, searching, and review as an "undue burden." *See* October 30, 2018 Joint Status Report, ECF No. 203 at 6-8.

The Court should direct the parties to complete these tasks in the coming weeks and months. If Plaintiffs' proposed set of tasks above is ordered, then the parties should discuss a schedule for completing these tasks with the Court at the November 21, 2018 hearing.

## II.     ARGUMENT

### A.     Standard of Review

A motion to dismiss a complaint does not automatically stay discovery in this Court. Defendants must show "specific hardship or inequity if the case is allowed to move forward." *NextGen HBM*, 2017 WL 8229442, at *2. A stay of a civil case is an extraordinary remedy. *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 635-36 (E.D. Pa. 2010).

While the court has broad discretion in determining whether to stay discovery pending its ruling on a motion to dismiss, this discretion is not limitless. *Steinbuch v. Cutler*, 518 F.3d 580, 588-89 (8th Cir. 2008) (finding abuse of discretion where district court should have permitted plaintiff to take jurisdictional discovery prior to dismissing action). Courts consider various relevant factors by "tak[ing] a 'peek' at the merits of the pending dispositive motion, consider[ing] the breadth of pending discovery, and balanc[ing] the harm produced by delaying discovery against the possibility that the entire matter will be resolved by the motion." *TE Connectivity Networks*, 2013 WL 4487505, at *2. This determination is "practical" and based on an evaluation of all of the circumstances. *See id.* A stay of discovery is not warranted here.

**B.     A Motion to Dismiss Is Not an Adequate Basis to Stay Discovery.**

The Federal Rules of Civil Procedure, the Eighth Circuit and the District of Minnesota require defendants to show good cause to stay discovery pending a motion to dismiss. Fed. R. Civ. Proc. 26(c); *TE Connectivity Networks*, 2013 WL 4487505, at *1. "[T]he mere filing of a motion to dismiss the complaint does not constitute 'good cause' for the issuance of a discovery stay." *Id.* at *2. Rather, a stay is more likely in cases involving threshold legal issues or defenses designed to grant immunity from discovery, because the nature of the defense gives the defendant the right not to participate in discovery. *Lovelace v. Delo*, 47 F.3d 286, 287 (8th Cir. 1995) (holding that "qualified immunity operates to protect government officials from both the burdens of trial and discovery," but finding limited discovery appropriate as to the issue of qualified immunity). Defendants' motions to stay discovery rest solely on the fact that they have moved to dismiss Plaintiffs' claims. As a result, Defendants' motion to stay does not satisfy good cause. *See LNV Corp.*, 2013 WL 12180768, at *4 (denying stay when movant's "entire argument for limiting discovery seemingly rests on the presumption that it will prevail on its Motion to Dismiss").

Even where a motion to dismiss is viable, the defendant still has a heavy burden of showing good cause for the court to grant a motion to stay. For instance, in *TE Connectivity Networks*, the court observed that although the defendant had "filed a potentially viable motion to dismiss," it did not appear that the complaint was "facially frivolous or clearly without merit." *TE Connectivity Networks*, 2013 WL 4487505, at *2. The court denied the motion to stay because the case did not involve a statute (such as the PSLRA) or

532500                                                 7

doctrine of law (such as qualified immunity) requiring resolution of the motion to dismiss before discovery begins, and the defendant did not demonstrate "any particular facts or circumstances that make responding to discovery in this case unusually burdensome or prejudicial *beyond the usual case of this nature*." *Id.* (emphasis added).  The court further noted that "[i]n circumstances where courts have stayed discovery pending the resolution of a motion, they have done so for specific, somewhat unique, reasons." *Id.*  As discussed further below, Plaintiffs sufficiently allege circumstantial evidence and conspiratorial conduct for a well-pleaded complaint.  Plaintiffs' complaint is *not* "facially frivolous or clearly without merit."  Defendants have not met their burden to show good cause.

Defendants also conflate a motion to stay discovery with a motion to dismiss by using their stay motion to assert *Twombly* arguments regarding the adequacy of Plaintiffs' allegations.  *See* Defendants' Memorandum in Support of Motion to Stay Discovery ("Def. Br."), ECF No. 195 at 5-8.  In fact, the bulk of Defendants' arguments address the adequacy of Plaintiffs' pleadings.  A court is "not in a position to address the merits of the defendants' motion to dismiss" in a motion to stay discovery.  *E. Coast Test Prep, LLC v. Allnurses.com, Inc.*, No. 15-cv-3705 (JRT/JSM), 2016 WL 6997117, at *1 (D. Minn. Feb. 22, 2016).  The most the court may do is "take[] a 'peek' at the merits of the pending dispositive motion." *TE Connectivity Networks*, 2013 WL 4487505, at *2.

As such, Defendants do not have good cause to stay discovery; their pending motions to dismiss do not justify a stay.

### C. Even Considering Their Motions to Dismiss, Defendants Have Not Shown They Are Likely to Succeed on Those Motions.

To prevail on a motion to dismiss, Defendants must persuade the court that Plaintiffs' allegations of collusion are not plausible. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 547 (2007). Defendants attempt to shift this plausibility standard by positing possible alternative explanations for their collusive conduct and attempt to recast the conspiracy by ignoring allegations, viewing allegations in isolation, and reading allegations in the light most favorable to themselves. The fact that Plaintiffs' claims may be based on circumstantial allegations instead of direct evidence is neither dispositive nor unusual. As the case law firmly establishes, plaintiffs can (and almost always do) allege antitrust conspiracies without 'the smoking gun' of direct evidence because defendants typically cannot be relied on to confess that they have entered into an unlawful agreement. *See, e.g.*, *In re Pre-filled Propane Antitrust Litig.*, 860 F.3d 1059, 1069 (8th Cir. 2017). Plaintiffs' complaints set forth details regarding Defendants' collusion, such as Defendants' collaboration with Agri Stats, increased prevalence of production contracts, unprecedented market concentration, participation in various industry trade forums, and conversations regarding pricing, production, and other proprietary, non-public information. DPP Am. Compl. ¶¶ 48-51, 70, 76-77, 86- 88, 93-95, 101; Consumer IPP Compl. ¶¶ 76-79, 107-09, 113-14; Com. IPP Compl. ¶¶ 53-56, 75, 82-83, 92-94, 99-101, 107. Nevertheless, Defendants insist that Plaintiffs provide very specific information regarding the collusive agreements—ironically (but not coincidentally) the very information that Defendants now seek to prevent from advancing in any meaningful way.

Additionally, the court must view industry conditions, company conduct, membership in trade associations, and other characteristics collectively to determine the plausibility of conspiracy allegations. *Grasso Enters.*, 2017 WL 365434, at *3-4. Indeed, the court in *Broiler Chicken* held that "[p]laintiffs' reliance on industry meetings and public statements must be evaluated in the context of all their allegations," so that "[i]n an industry where history has shown unilateral production cuts to be ineffective at moving prices, the announcement of production cuts soon after demands by other producers for such cuts is indicative of agreement." 290 F. Supp. 3d at 798. The court rejected the defendants' argument that opportunities to collude at industry and trade association meetings and public statements are insufficient to establish collusion. *Id.* Defendants' argument here must be rejected as well. Furthermore, Defendants' purported explanations that the Great Recession and disease caused any short-term supply problems are irrelevant, and factual arguments. *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 870 (N.D. Ill. 2010) ("an unforgiving market offers no excuse for violating antitrust laws").

Plaintiffs also adequately allege coordinated efforts to reduce pork supply in furtherance of the conspiracy. Courts in the Eighth Circuit recognize that coordinated supply reductions in furtherance of an antitrust conspiracy may arise from parallel conduct sequentially, rather than simultaneously. *See In re Pre-filled Propane Antitrust Litig.*, 860 F.3d at 1069 (finding parallel conduct when a defendant told another defendant that "it would follow closely behind" if the other "successfully implemented its [price] reduction."); *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan, Inc.*, 176 F.3d 1055, 1075-76 (8th Cir. 1999) (finding parallel conduct when defendants subsequently met

532500                                   10

other defendants' price changes a week afterwards); *see also Precision Rx Compounding, LLC v. Express Scripts Holding Co.*, No. 4:16-CV-0069, 2016 WL 444601, at *3 (E.D. Mo. Aug. 24, 2016) ("A plaintiff establishes parallel conduct when it pleads facts indicating that the defendants acted '*similarly*,'" not identically or simultaneously) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del Co., Inc.*, 998 F.2d 1224, 1243 (3d Cir. 1993)) (emphasis added). Here, Plaintiffs allege Defendants acted in a concerted manner to decrease pork supply in 2009, 2010, and 2013. DPP Am. Compl. ¶¶ 107, 109, 110-20; Consumer IPP Compl. ¶¶ 97, 99, 100-106; Com. IPP Compl. ¶¶ 115, 117, 118-24. Plaintiffs specifically allege Defendants disclosed certain supply restriction efforts through public earnings calls and other sources to communicate their planned supply restrictions, and coordinate and implement their actions sequentially. *Id.*

As in *Broiler Chicken*, Defendants argue that Plaintiffs "lump in" certain Defendants without adequate supporting facts, rather than alleging claims against all Defendants. 290 F. Supp. 3d 772, 792 (N.D. Ill. 2017); Def. Br. at 7. The court in *Broiler Chicken* rejected this argument and denied the defendants' motions to dismiss. *Id.* Defendants' assertions misconstrue the issues because in *Broilers* and in this case, Plaintiffs do not claim an overall decrease in absolute production numbers, but instead that overall production increases were not what they would have been in the absence of the conspiracy. *Id.*

Moreover, the U.S. Department of Justice investigated Agri Stats from 2010 to 2012 for Sherman Act violations across various meat and dairy industries, including broilers and swine. *See* Clark Aff., Ex. F (Agri Stats, Inc. Civil Investigative Demand ("CID")). This

prior government investigation was publicly disclosed in May 2018, and further demonstrates the legal sufficiency of Plaintiffs' claims alleging Defendants' collusive scheme. *See Hinds Cty., Miss. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 106, 115 (S.D.N.Y. 2011) ("[G]overnment investigations may be used to bolster the plausibility of § 1 claims.").

Finally, Defendants' statute of limitations argument ignores the fact that Plaintiffs' claims are timely under the continuing violation and fraudulent concealment doctrines. Moreover, the Eighth Circuit strongly disfavors dismissal based on a statute of limitations affirmative defense. *Braden v. Walmart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009); *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 262, 266 (D. Minn. 1989). Plaintiffs' allegations invoke the continuing violation doctrine, in which the accrual date is postponed "where the statute of limitations restarts each time the defendant commits an overt act." *In re Pre-filled Propane Tank Antitrust Litig.*, 860 F.3d at 1063-64. Similarly, Plaintiffs' claims are tolled due to fraudulent concealment because the statute of limitations period does not run until plaintiffs have had "reasonable opportunity for discovery" of the cause of action. *Kans. City, Mo. v. Fed. Pac. Elec. Co.*, 310 F.2d 271, 277 (8th Cir. 1962); *In re Bulk Popcorn Antitrust Litig.*, No. 3-98-0710, 1990 WL 123753, at *5 (D. Minn. June 19, 1990). Here, Plaintiffs allege that Defendants concealed their conspiracy through secret meetings, surreptitious communications by use of telephone or in-person meetings to avoid written records, limiting explicit reference to competitor pricing or supply restraint communications on documents, and communicating through a "proprietary, privileged, and confidential" system. *See* DPP Am. Compl. ¶ 143; Consumer IPP Compl. ¶ 141; Com. IPP

Compl. ¶ 147.  As a result, Plaintiffs had neither actual nor constructive knowledge of the facts constituting their claim for relief until shortly before filing their Complaint.

Because Plaintiffs' claims are likely to survive Defendants' motions to dismiss entirely or at least substantially, this weighs heavily in favor of discovery proceeding now without further delay.

### D. Plaintiffs Have Proposed Front-Loading Discovery With Foundational Discovery Tasks to Avoid Unnecessary Delay and Expense.

The limited discovery Plaintiffs propose pursuing over the next three to four months is not unduly burdensome and will ensure that discovery does not completely stall while Defendants' motions to dismiss are pending.  Defendants' generalized burden arguments are "essentially of the same magnitude that all defendants face in antitrust actions." *In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988168, at *6 (N.D. Ohio Nov. 7, 2002) ("it is a function of antitrust laws, and not of Plaintiffs' personal desire to burden Defendants").

Plaintiffs propose a pathway forward which would minimize the burden on Defendants, while still allowing much of the necessary foundational work to take place. Specifically, Plaintiffs propose that the parties move forward on (1) making disclosures regarding ESI systems and employees in particular positions; (2) exchanging Rule 26(a) disclosures; (3) exchanging Rule 26(f) reports and conducting a Rule 16 scheduling conference; (4) negotiating offers of production in response to the Rule 34 requests served by Plaintiffs on November 1, 2018; (5) producing the corpus of documents already produced to the DOJ during its investigation into Agri Stats (including the swine/pork

industry), in the same manner in which they were produced to the DOJ; (6) negotiating document sources, including custodial and non-custodial searches; and (7) negotiating a search methodology order.  While not fully opening discovery, these items would allow the parties to make substantial progress on threshold discovery issues, and fully avoid the largest burden Defendants complain of—the loading, processing, review, and production of custodial documents.  Plaintiffs' proposal will facilitate a smooth and efficient development of a discovery plan in this case.

Moreover, there is no burden associated with the production of documents that have been produced to the U.S. Department of Justice or other government authorities in connection with competition in the pork industry.  Although not all Defendants in this litigation may have produced documents to the DOJ in connection with its investigation into Agri Stats, at least some did—certainly, at a minimum, Agri Stats itself.  The publicly available CID relating to the DOJ investigation specifically references the pork industry and an investigation into the "exchange of competitively sensitive price and cost information in the broiler, turkey, egg, swine, beef and dairy industries." *See* Clark Aff., Ex. F (Agri Stats, Inc. CID).

Courts have routinely ordered the production of antitrust investigation documents prior to resolution of motions to dismiss or the filing of final consolidated amended complaints.  *See In re Lithium Ion Batteries Antitrust Litig.*, 2013 WL 2237887, at *1 (N.D. Cal. May 21, 2013) (requiring production of DOJ documents before consolidated amended complaints were filed); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 899-900 (N.D. Cal. Feb. 14, 2008) (explaining how the court required

production of documents produced to the DOJ well before adjudicating defendants' motions to dismiss); *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617-WHP, 2010 WL 11578945, at *1 (S.D.N.Y. Nov. 30, 2010) (compelling defendants to produce 250,000 pages of documents already produced to government authorities before the decision on the motion to dismiss); *Broiler Chicken*, 2017 WL 4417447, at *7 (ordering production of subset documents provided to Florida Attorney General investigation).

In contrast, the stay advocated by Defendants would needlessly delay the progress of litigation in this case and substantially prejudice the Plaintiffs. In particular, pursuing document custodian negotiations over the coming months will ensure all parties are in agreement regarding the relevant individuals in the litigation, and ensure their information is preserved. *See Claredi Corp. v. SeeBeyond Tech. Corp.*, No. 4-04-CV-01304 RWS, 2010 WL 11579710, at *6-8 (E.D. Mo. Mar. 8, 2010) (lack of specified agreement between parties led to insufficient document disclosure and breakdown in preservation efforts). Given that this case was filed four months ago, it is vital that Plaintiffs begin custodian negotiations soon. In addition, should a significant period of time pass before document collections and depositions start in earnest, Plaintiffs would likely suffer harm because documents often become lost or destroyed, witnesses' memories may fade, or witnesses may become unavailable when discovery is delayed for months and months. Although the hearing for Defendants' motions to dismiss is a few months away, a decision may not be issued until almost a year later. *See, e.g.*, *Broiler Chicken*, 290 F. Supp. 3d at 822 (motion to dismiss denied ten months after defendants' filing); *Ferrari v. Best Buy Co., Inc.*, No.

14-cv-2956, 2014 WL 11498023, at *1 (D. Minn. Dec. 4, 2014) (motion to dismiss denied eight months after defendants' filing).

Finally, in complex antitrust cases such as this, defining the scope of discovery early on in the case is particularly important because it provides information for "further defining and narrowing issues, which may in turn lead to revision and refinement of the discovery plan." Manual for Complex Litig., Fourth § 11.31. Defendants' proposal for an indefinite stay would substantially hinder formation of an efficient discovery plan.

### E. Staying Discovery Would Conflict With Judicial and Public Interests.

Staying discovery pending resolution of Defendants' motions to dismiss also conflicts with judicial interests. Courts disfavor staying discovery because they have a strong judicial interest in controlling their dockets and ensuring they manage their cases effectively. *See Great Lakes Gas Transmission Ltd. P'ship v. Essar Steels Minn., LLC*, No. 09-3037, 2012 WL 12895231, at *4 (D. Minn. July 5, 2012) ("Motions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.") (citing *Worldcom Techs., Inc. v. Intelnet Int'l, Inc.*, No. CIV.A.00-2284, 2002 WL 1971256, at *6 (E.D. Pa. Aug. 22, 2002)); *see also State Farm Mut. Auto. Ins. Co. v. Healthcare Chiropractic Clinic, Inc.*, No. 15-cv-2527 (SRN/HB), 2016 WL 9307608, at *6 (D. Minn. Apr. 26, 2016) (Bowbeer, Mag. J.) ("While allowing deposition discovery to go forward might present more difficult

issues, the Court is not persuaded that the burden on the Court's time would outweigh the Court's strong interest in managing its docket and moving cases forward.").[3]

Nor does staying discovery serve the public interest. "[T]he public's interest in the enforcement of the antitrust laws is furthered by the expeditious resolution" of class action lawsuits. *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d at 636 (denying stay pending resolution of a parallel criminal antitrust investigation). A stay absent special or unique circumstances would counter such "expeditious resolution" of the case. Defendants' alleged conspiracy is ongoing and continues to affect billions of dollars in commerce, so delay in proceeding with discovery and unraveling the scope of Defendants' collusive scheme means Americans will continue to pay too much for "the other white meat," pork.

### III.  CONCLUSION

Defendants have not remotely met their heavy burden to stay discovery. They have not shown good cause, and even if the Court considers their pending motions to dismiss in deciding their motion to stay, Defendants are unlikely to prevail on those motions. Defendants have shown no irreparable harm that would result from proceeding under Plaintiffs' proposal, while Plaintiffs would be substantially prejudiced by additionally delaying this litigation. Defendants also ignore the reality that Plaintiffs' proposal consists

---

[3] Defendants cite an inapposite case in their motion, *Dufrene v. ConAgra Foods, Inc.* In *Dufrene*, the only discovery pending at the time of the motion to stay was a Rule 30(b)(6) deposition. No. 15-cv-3796 (WMW/LIB), 2016 WL 10651947, at *4 (D. Minn. Apr. 7, 2016). Here, in stark contrast, discovery has not yet begun and staying discovery would not serve the judicial interests of efficient case management and resolution.

532500                                    17

of threshold tasks necessary to complete before the parties can even get to the larger tasks of production of emails and other documents.  Additional delay would also contravene the public's interest in timely adjudications of antitrust cases.  For all of these reasons, the Court should deny Defendants' motion and allow discovery to proceed as Plaintiffs have proposed.

Dated: November 6, 2018

*s/ Brian D. Clark*
W. Joseph Bruckner (MN #0147758)
Elizabeth R. Odette (MN #0340698)
Brian D. Clark (MN #0390069)
Simeon A. Morbey (MN #0391338)
Arielle S. Wagner (MN #0398332)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com
aswagner@locklaw.com

Bruce L. Simon
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
T: (415) 433-9000
F:  (415) 433-9008
bsimon@pswlaw.com

Clifford H. Pearson
Daniel L. Warshaw
Bobby Pouya
Michael H. Pearson
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN #0387900)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
T: (612) 389-0600
F: (612) 389-0610
mweiner@pswlaw.com

*Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

| | |
|---|---|
| *s/Shana E. Scarlett* | *s/Blaine Finley* |
| Steve. W. Berman | Shawn M. Raiter (MN# 240424) |
| Breanna Van Engelen | LARSON • KING, LLP |
| HAGENS BERMAN SOBOL SHAPIRO LLP | 2800 Wells Fargo Place |
| 1301 2nd Avenue, Suite 2000 | 30 East Seventh Street |
| Seattle, Washington 98101 | St. Paul, MN 55101 |
| Telephone: (206) 623-7292 | T: (651) 312-6518 |
| Facsimile: (206) 623-0594 | sraiter@larsonking.com |
| steve@hbsslaw.com | |
| breannav@hbsslaw.com | Jonathan W. Cuneo |
| | Joel Davidow |
| Shana E. Scarlett | Blaine Finley |
| HAGENS BERMAN SOBOL SHAPIRO LLP | Yifei "Evelyn" Li |
| 715 Hearst Avenue, Suite 202 | CUNEO GILBERT & LADUCA, LLP |
| Berkeley, California 94710 | 4725 Wisconsin Ave. NW, Suite 200 |
| Telephone: (510) 725-3000 | Washington, DC 20016 |
| Facsimile: (510) 725-3001 | T: (202) 789-3960 |
| shanas@hbsslaw.com | jonc@cuneolaw.com |
| | joel@cuneolaw.com |
| Elizabeth A. Fegan | bfinley@cuneolaw.com |
| HAGENS BERMAN SOBOL SHAPIRO | evelyn@cunelolaw.com |
| 455 N. Cityfront Plaza Drive, Ste 2410 | |
| Chicago, Illinois 60611 | *Co-Lead Counsel for Commercial and* |
| Telephone: (708) 628-4949 | *Institutional Indirect Purchaser Plaintiffs* |
| Facsimile: (708) 628-4950 | |
| beth@hbsslaw.com | |

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Britany N. Resch (#0397656)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
bresch@gustafsongluek.com

*Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs*