# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | No. 0:18-cv-01776-JRT-HB |
| This Document Relates To : <br><br> ALL ACTIONS | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY** |

## INTRODUCTION

Plaintiffs concede that discovery should not begin in full pending a decision on the Motions to Dismiss, admitting that they "do not seek wide-open discovery now." (Doc. 204, Pls.' Mem. of Law in Opp. to Defs.' Mot. to Stay ("Opp.") at 1.) This dispute, therefore, is narrowed to whether the seven categories identified by Plaintiffs in their Opposition (*id.* at 4-5) should proceed pending resolution of the Motions to Dismiss. Of these seven categories, Defendants have already agreed to category #2 (serving Rule 26(a) disclosures, which all Parties have agreed to do by December 3, 2018). Defendants have further agreed to undertake other tasks not on Plaintiffs' list, including (i) producing readily available relevant organizational charts by December 3, 2018; (ii) negotiating an Agreed Confidentiality Order; and (iii) negotiating a Proposed Order Regarding Production of Electronically Stored Information and Paper Documents. These agreed-upon categories strike an appropriate balance—providing a foundation for all Parties to conduct discovery expeditiously if any of Plaintiffs' claims survives dismissal, while not imposing on Defendants the premature and substantial burden of extensive antitrust discovery, which may be unnecessary if some or all of the claims are dismissed.

Plaintiffs, however, insist upon additional categories that would impose substantial burdens on the Defendants and create inefficiencies for the Parties and the Court, including several categories of discovery-about-discovery that threaten to fill the interval before the decision on Defendants' Motions to Dismiss with potentially needless meet-and-confers, discovery disputes, and motion practice.   Specifically, Plaintiffs seek the following categories of discovery while the Motions to Dismiss are pending:   (1) numerous disclosures regarding ESI and other topics beyond those required by Rule 26(a);[1] (3) a Rule 26(f) Report and a Rule 16 conference; (4) reproduction of documents, if any, previously produced to the government; (5) negotiating responses to Plaintiffs' 68 document requests; (6) negotiating custodians and document sources; and (7) negotiating a search methodology order.   Since the steps that Defendants have already agreed to take ensure that the Parties will be in a position to expeditiously begin full discovery if the Court denies the Motions to Dismiss, discovery should be stayed as to these six additional categories.

*First*, Defendants have shown good cause to stay discovery.   Defendants do not simply rely on the "mere filing of a motion to dismiss" to constitute good cause, but instead have shown that each of the factors considered by courts in this District and Circuit weighs in favor of staying discovery.   These factors include substantial pleading defects, the extraordinary costs of commencing discovery in a large multi-defendant antitrust matter (confirmed by the expansive document requests served by Plaintiffs), and no prejudice to Plaintiffs.

---

[1] As noted above, Defendants have agreed to Plaintiffs' category #2.

***Second***, a "quick peek" at the merits of the pending Motions to Dismiss reveals that the motions show "more than the mere possibility" of success on several grounds. While Plaintiffs continue their if-it-happened-in-*Broiler*-it-should-happen-here line of argument, these are different cases that involve different industries, in different courts, many different parties, and different facts alleged in the complaints. Indeed, there are substantial—and to Plaintiffs' claims here, fatal—differences between the cases. Further, Plaintiffs' attempt to justify imposing immediate discovery burdens on Defendants by arguing that their Complaints allege "continuing violations" is betrayed by Plaintiffs' own factual allegations, which contain not a single allegation of any supposedly conspiratorial actions within five years of the June 2018 filing of the Complaints. Instead, the bulk of Plaintiffs' allegations supposedly evidencing a conspiracy are from public earnings calls made over eight years ago, and the last alleged conspiratorial reduction in supply occurred in 2013.

***Third***, the six disputed discovery categories would impose substantial burdens on Defendants and create inefficiencies for the Parties and the Court. What Plaintiffs downplay as "threshold tasks" would actually require all Defendants, at significant burden and costs, to gather a decade's worth of information about many aspects of their pork businesses. Moreover, these six categories would invite disputes that may be unresolvable until the Parties and the Court know the shape of the litigation following resolution of the Motions to Dismiss. It is more efficient for the Parties and the Court to address issues concerning the scope of discovery and a case schedule after the Motions to Dismiss have been decided because those Motions may resolve the matter entirely or significantly impact the scope of the case.

*Fourth*, confining discovery to the agreed-upon tasks would not harm the judicial or public interest, particularly since the case has just begun and the stay would only extend to the resolution of Motions that will be fully briefed and argued by early January.

## ARGUMENT

### I.    Defendants Have Shown Good Cause To Stay Discovery.

Plaintiffs incorrectly state that Defendants' "entire argument for limiting discovery seemingly rests on the presumption that it will prevail on its Motion to dismiss." (Opp. at 2.)  To the contrary, while Defendants are confident in their Motions to Dismiss, presumed success is not the standard, and this Motion is not aimed at re-arguing the merits of the Motions.   Instead, courts in this District consider whether the pending motion would dispose of all or substantially all of the case, whether it appears to have substantial grounds, and whether it is not unfounded in the law.  *In re CenturyLink Sales Practices & Sec. Litig.*, 2018 WL 2122869, at *1 (D. Minn. May 8, 2018).  Defendants have established each of these factors and, accordingly, have established good cause for a stay.

Plaintiffs erroneously cite *TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013), to claim that discovery stays during the pendency of a motion to dismiss are only appropriate in cases involving threshold legal issues or defenses designed to grant immunity from discovery.  (Opp. at 7-8.)  As a threshold matter, Plaintiffs misapply *TE Connectivity*, which involved a trade secret dispute between a company and its former employees—a type of case where immediate discovery and often a preliminary injunction are sought.  *TE Connectivity*, 2013 WL 4487505, at *1.  The court, in denying the motion to stay discovery, acknowledged

that "[f]ederal courts have considered various factors in determining whether a stay is appropriate in a particular case," including a "'peek' at the merits of the pending dispositive motion" and "the breadth of pending discovery." *Id.* at *2. The court denied the stay because there were no "particular facts or circumstances that make responding to discovery in this case unusually burdensome or prejudicial beyond the usual case of this nature," (*i.e.*, a departing-employee trade secrets case). *Id.*

The circumstances in this case are exactly what the court found lacking in *TE Connectivity*. The Supreme Court, the Eighth Circuit, and the District of Minnesota all recognize that discovery is unusually burdensome in antitrust cases. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (recognizing "that proceeding to antitrust discovery can be expensive") (internal citation omitted); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 543 (8th Cir. 2015) (recognizing "the unusually high cost of discovery in antitrust cases"); *Windage, LLC v. U.S. Golf Ass'n*, 2008 WL 2622965, at *4 (D. Minn. July 2, 2008) (the plaintiff "cannot proceed to costly antitrust discovery by conclusorily labeling the conduct as a conspiracy and a group boycott"). Since the filing of this Motion, Defendants have received Plaintiffs' Requests for Production of Documents. Those 68 wide-ranging requests for production, which seek discovery into virtually every aspect of each Defendants' pork businesses over a 10+ year period, confirm that discovery would be extremely expensive and burdensome in this case. (*See* Exs. 1-3, Plaintiffs' First Set of Requests for Production.) Such broad and burdensome requests amply warrant the limited stay of discovery sought here.

## II.   Defendants' Motions To Dismiss Have Substantial Grounds.

Defendants seeking to stay discovery must simply show "more than the mere possibility" of success on their underlying motion. *Dufrene v. ConAgra Foods, Inc.*, 2016 WL 10651947, at *3 (D. Minn. Apr. 7, 2016). As detailed in Defendants' Motions to Dismiss (Doc. Nos. 161-92, 198) and the Motion to Stay (Doc. 195, Defs.' Mem. in Supp. of Mot. to Stay Discovery ("Br.") at 5-8), Plaintiffs' Complaints are fundamentally flawed on several grounds. Indeed, Plaintiffs here allege neither direct evidence of an agreement to limit production nor circumstantial evidence of coordinated production cuts.

Plaintiffs respond that most plaintiffs "can (and almost always do) allege antitrust conspiracies without 'the smoking gun' of direct evidence." (Opp. at 9.) But while circumstantial evidence *can* be used to support a claim of conspiracy, it does not mean that *any* allegations are sufficient to state a claim.[2] Just the opposite: the Supreme Court established the plausibility standard in *Twombly* precisely to limit the ability of antitrust plaintiffs to proceed to expansive and burdensome antitrust discovery based on allegations showing nothing more than a possibility of anticompetitive conduct.

Fundamentally undermining the core underpinning of Plaintiffs' liability theory, most of the named Defendants are *not* even alleged to be vertically integrated.[3] Rather,

---

[2] Even the case cited by Plaintiffs included allegations of *specific* conversations between defendants about limiting supply—something wholly absent here. *See In re Pre-filled Propane Antitrust Litig.*, 860 F.3d 1059, 1069 (8th Cir. 2017) (cited in Opp. at 9) ("Janish repeatedly dismissed concerns that Blue Rhino might undercut AmeriGas on price or fill levels with words to the effect of, 'I talked to Blue Rhino, and that's not going to happen'").

[3] For example, the individual indirect purchaser Plaintiffs allege that it was vertical integration—controlling both hog production (*i.e.*, breeding and raising pigs from birth

even the documents cited by Plaintiffs in their Complaints show that the Defendants are primarily pork *processors*, which purchase hogs from independent farmers to make pork products. Thus, Plaintiffs' theory that the Defendants somehow conspired to drive up hog prices, which would drive up input costs for non-vertically integrated processor Defendants, is implausible on its face. Tellingly, Plaintiffs do not even try to address this fundamental flaw in their opposition brief.

Indeed, recognizing the deficiencies in their Complaints, Plaintiffs once again seek to latch on to the *In re Broiler Chicken Antitrust Litigation* and claim that their allegations are "factually analogous" to those in *Broiler*. (Opp. at 3.) There are substantial differences, however, between these two cases, including different defendants, a different industry, and different alleged conduct. For example, the plaintiffs in *In re Broiler Chicken Antitrust Litigation*, 290 F. Supp. 3d 772 (N.D. Ill. 2017), alleged (i) historically unprecedented decreases in the rate of production, and historically unprecedented methods of reducing supply (*id.* at 782-83, 793); (ii) numerous statements by certain defendants calling for supply cuts followed by actual supply cuts made *by each defendant* (*id.* at 782); and (iii) "suspicious[ly]" timed meetings between defendants, followed by identifiable supply cuts by *each defendant* (*id.* at 782, 800, 803). There are no similar allegations here.

In fact, here, the Complaints reveal that (i) supply increased overall during the purported conspiracy period and in line with historical trends (Doc. 162, Joint Mot. to Dismiss at 47-48); (ii) there were no unprecedented methods of supply reduction (*id.* at

---

until they are fully-grown hogs) and pork processing (*i.e.*, slaughtering hogs and producing pork products)—that "allowed the scheme to succeed." (Doc. 74, IIP Compl. at 32.)

50); (iii) comments about supply cuts were followed by *supply increases* (*id.* at 48-50); (iv) there were essentially no specific allegations of supply cuts (or any other conduct) by most Defendants (*id.* at 13-16);[4] (v) the allegations about trade association membership are not connected to any allegedly conspiratorial conduct at all (*id.* at 40-41); and (vi) a number of Defendants even substantially *increased* supply and production capacity during the relevant time period, directly contradicting Plaintiffs' supply-reduction conspiracy theory.[5]

Plaintiffs' reference to a DOJ investigation into Agri Stats fares no better.  (Opp. at 11-12.)  Plaintiffs fail to mention that the DOJ's investigation *ended in 2012 with no action being taken*.  (Ex. 4, DOJ Letter.)  To the extent that a long-closed investigation has any relevance here (itself a dubious proposition), a limited discovery stay to allow the Court to resolve the Motions to Dismiss would have no substantive impact.

Finally, Plaintiffs' claims are foreclosed by the statute of limitations.  Plaintiffs attempt to invoke the "continuing violation doctrine," however, this argument is plainly contradicted by the Complaints.  Plaintiffs claim that the conspiracy involved an unspecified agreement to cut supply, but the most recent supply reduction alleged in the Complaint is a 2014 drop that Plaintiffs themselves attribute to a widespread hog disease, not any supposed conspiracy.  In every year since 2015, the Complaints affirmatively allege supply *increases*, rising to the record levels that prevail today.  Similarly, Plaintiffs attempt to invoke the doctrine of fraudulent concealment, but they do not even attempt to plead the

---

[4] *See also* Doc. 173, IPC Mot. to Dismiss at 6; Doc. 176, JBS Mot. to Dismiss at 1-2; Doc. 178, Seaboard Mot. to Dismiss at 8; Doc. 187, Tyson Mot. to Dismiss at 6; Doc. 168, Clemens Mot. to Dismiss at 4.
[5] *See* Doc. 168, Clemens Mot. to Dismiss at 6-8; Doc. 173, IPC Mot. to Dismiss at 3-4.

required elements of that doctrine, much less with the particularity required by Rule 9(b). Moreover, Plaintiffs rely on materials in the public record for their conspiracy claim, which forecloses their attempt to invoke fraudulent concealment. *See* Doc. 162, Joint Mot. to Dismiss at 54-64; *In re Wholesale Grocery Prods. Antitrust Litig.*, 722 F. Supp. 2d 1079, 1084 (D. Minn. 2010) (fraudulent concealment unavailable because "material information underlying the antitrust claims was available" on the public record).

Simply put, with a "quick peek" or viewed in any reasonable light, Plaintiffs' effort to lump Defendants together as a group and make the vague and conclusory assertion that at some undefined date or dates, 16 different companies agreed to enter an undefined "scheme to limit hog supply," (Compl. ¶¶ 60, 120,) over the course of a decade simply does not pass muster.

## III.   The Discovery Proposed By Plaintiffs Would Impose An Unreasonable Burden On Defendants And Create Inefficiencies For The Parties And The Court.

Defendants have already agreed to undertake several discovery-related tasks. Specifically, Defendants have agreed to serve Rule 26(a) initial disclosures and to produce readily-available organizational charts related to Plaintiffs' claims.  In addition, the Parties have negotiated an Order Protecting Confidentiality and an Order Regarding Production of Electronically Stored Information and Paper Documents.  These good faith efforts to move the litigation along in an efficient and reasonable manner are hardly an attempt to put the case "on ice."  (Opp. at 1.)  Plaintiffs now seek to characterize six onerous discovery categories as "threshold tasks" to bolster their claim that such discovery should proceed before the resolution of the Motions to Dismiss.  (*Id.* at 4.)  Such a characterization ignores

the complexity of these tasks and the reality that proceeding with these categories of discovery would place an undue burden on Defendants, require Defendants to incur substantial costs, and, ultimately, create inefficiencies for the Parties and the Court.

Plaintiffs' first and fifth categories (ESI Disclosures and Requests for Production), for example, would require Defendants to gather broad categories of information covering the last decade—the exact type of "unusually high cost" discovery referenced by the Eighth Circuit in *Insulate SB, Inc.*, 797 F.3d at 543.[6]   While superficially labeled "ESI Disclosures," Plaintiffs are in fact proposing broad interrogatories.  These ESI Disclosures would require the Defendants to disclose "documents and/or information for the period from January 1, 2007 to June 30, 2018," including identifying the employees who held a variety of positions over the last decade (as well as each individual's office, fax, and cellphone number), identifying email systems and non-custodial data sources in use over the last decade, and other information.  (Opp. at Ex. E.)  Moreover, the 68 Requests for Production served by Plaintiffs are incredibly broad in scope, such as a request for 17 categories of information about each individual pork sale transaction over the past *15 years* (Ex. 3, at No. 37), a request for all "budgets, projections, estimates, or related studies, presentations, or reports regarding Pork" over the last decade (*id*. at No. 9), and other requests encompassing all Defendants' telephone records (*id*. at No. 6), pricing models (*id.* at No. 14), and contracts (*id.* at Nos. 31 & 32) over the past decade.  Negotiating the scope

---

[6] In fact, in *Insulate*, Judge Montgomery consolidated motions to stay discovery, to expedite discovery, and to dismiss and ruled on all three together, effectively staying discovery until resolution of the motion to dismiss. *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 2014 WL 943224, at *1, *4, *12 (D. Minn. Mar. 11, 2014).

of production, custodians, search terms, and so forth in response to these vast discovery requests would involve unjustifiable burden and costs at this juncture of the litigation. A stay would allow the Parties to avoid wasted expenditure of resources until they know whether the issues will be narrowed or eliminated by the pending Motions to Dismiss.

In addition, it will be inefficient for the Parties to negotiate or make ESI Disclosures (#1), negotiate offers of production in response to Plaintiffs' Requests for Production (#5), negotiate document sources (#6), or negotiate a search methodology order (#7) before the actual scope of the litigation, if any, has been determined by the rulings on the Motions to Dismiss. Otherwise, the Parties (and the Court) would unnecessarily re-litigate issues about the scope of discovery once the litigation is better defined.

Similarly, it makes no sense to prepare a Rule 26(f) report and conduct a Rule 16 conference, which, among other items, would require the Parties to agree on the number of discovery requests and depositions, as well as the dates for the amendment of pleadings, fact discovery, expert discovery, and class certification, before a ruling on the Motions to Dismiss. This litigation may (and Defendants respectfully submit, should) be fully dismissed. But even if some aspects of the Complaints are sustained, numerous Defendants will still likely be dismissed; vast swaths of the purported conspiracy period will likely be deemed to be outside the statute of limitations; and, in any event, the Court will necessarily provide critical guidance as to the shape of this massive case going forward. Negotiations or disputes as to the number of depositions and the schedule for completing them are highly likely to be a waste of time until the Parties and the Court know what claims, time periods, and Parties are in the scope of the case.

11

For these reasons, courts recognize the efficiencies that can be gained by discovery stays pending motions to dismiss and routinely grant them in circumstances similar to the present case. *See, e.g., Riehm v. Engelking*, 2006 WL 2085404, at *1-2 (D. Minn. July 25, 2006) (Tunheim, J.) (affirming order staying discovery where it was "likely that the Court's ruling on the dispositive motions will narrow the issues in this case and obviate the need for some discovery"); *see also Oticon A/S v. GN Resound A/S*, 2015 WL 5752429, at *5 (D. Minn. Aug. 5, 2015) (Bowbeer, Mag. J.) (noting that stays are "'particularly appropriate' where discovery has not started, as 'a stay would likely conserve discovery resources because it would potentially enable the parties to focus their discovery efforts on a narrower set of issues'").

Finally, Plaintiffs' fourth category requests documents previously produced to the DOJ in connection with its 2010-2012 investigation into Agri Stats.[7]  The pork processor Defendants have no documents responsive to this request relating to pork products.  And while Agri Stats did provide documents to the DOJ relating to an investigation, the DOJ closed that investigation over six years ago without taking any action. (Ex. 4, DOJ Letter.) If Plaintiffs wish to seek the wholesale production of documents produced by one Defendant in a long-closed investigation, they should do so through ordinary discovery procedures, including by establishing the relevance of those materials.  *See In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007) ("[T]he compelled act of turning records over to the government pursuant to the subpoena

---

[7] Although Plaintiffs include this as category #4 in their Opposition, this request is also included within category #1 (ESI Disclosures) and #5 (Ex. 3, RFP No. 1).

12

does not mean that everyone else has an equal right to rummage through the same records.").

Plaintiffs' final argument—that these six categories must be completed to ensure that memories do not fade and that information is preserved—also falls flat.  (Opp. at 15.) Plaintiffs' concerns about faded memories are unwarranted.  Plaintiffs already had to reach back almost a decade to find any conduct to characterize as conspiratorial; to say that waiting a few more months is going to materially affect witnesses' memories about those events is not credible.  Defendants have already confirmed to Plaintiffs that they have litigation holds in place that cover the substantive allegations in the Complaints (just as Plaintiffs' clients should have in place).  Defendants have each agreed to undertake specific, additional preservation actions at Plaintiffs' request, which are not even required under the Federal Rules.  These preservation efforts eliminate any potential prejudice to Plaintiffs.  *See Frable v. Synchrony Bank*, 215 F. Supp. 3d 818, 822 (D. Minn. 2016) (Bowbeer, Mag. J.) (granting motion to stay and noting that "Plaintiff has shown no real threat of prejudice" because "a litigation hold is in place").

## IV.    Staying Discovery Will Not Harm Judicial Or Public Interests.

A limited stay of the six categories discussed above would not harm judicial or public interests.  The cases cited by Plaintiffs do not hold otherwise.  *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steels Minn., LLC*, 2012 WL 12895231, at *4 (D. Minn. July 5, 2012) (cited in Opp. at 16), involved a case that had already been pending for three years, in which defendants requested a stay on merits-based discovery pending resolution of a yet-to-be-filed summary judgment motion.  Similarly, in *State Farm Mut. Auto. Ins.*

13

*Co. v. Healthcare Chiropractic Clinic, Inc.*, 2016 WL 9307608, at *1 (D. Minn. Apr. 26, 2016) (Bowbeer, Mag. J.) (cited in Opp. at 16-17), the defendants sought a stay of discovery pending resolution of a criminal investigation with no definite end date (incorrectly asserting the corporation's Fifth Amendment rights). *In re Blood Reagents Antitrust Litig.* (cited in Opp. at 17) involved two motions to stay. 756 F. Supp. 2d 623, 633-36 (E.D. Pa. 2010). The first—a motion to stay discovery pending resolution of motions to dismiss—was denied as moot because the court had already ruled on the motions to dismiss (the same end result Defendants seek here). The second, a motion to stay discovery pending resolution of a parallel criminal investigation, was denied due to minimal Fifth Amendment concerns and the possibility that such a stay would last for an "undetermined, but possibly prolonged, period of time." *Id.* Notably, Plaintiffs here do not point to any ongoing investigation of any sort involving the conspiracy they allege, nor are Defendants aware of any such ongoing investigation.

The concerns about judicial and public interests in those cases do not apply here. Unlike the rulings in those cases, this case has just begun, and the discovery stay will be temporary. Defendants have agreed to Plaintiffs' briefing schedule on the Motions to Dismiss, and oral argument is scheduled for January 10, 2019—less than two months from now. In addition, the Motions to Dismiss have the potential to resolve all the issues or narrow the case substantially, thereby saving the resources of the Court in managing all or portions of an action that will ultimately be dismissed. *See Dufrene*, 2016 WL 10651947, at *4 (concluding the balance of equities and "in particular the conservation of resources" weigh in favor of a limited stay pending the resolution of the motion to dismiss).

14

Finally, Plaintiffs' assertion that the "alleged conspiracy is ongoing and continues to affect billions of dollars in commerce" is not supported by the Complaints and is contradicted by the current pork marketplace. (Opp. at 17.) Plaintiffs' Complaints, for instance, make no specific allegations about any Defendants' actions after 2014. And the last decrease Plaintiffs claim to be in furtherance of the alleged conspiracy occurred in 2013. Plaintiffs' own allegations show pork supply increasing in each year from 2015 to the present, with the resulting record production levels that prevail today. (*See* Br. at 12-13.) Simply put, judicial and public interests will not be harmed by a limited and temporary discovery stay.

## CONCLUSION

For the foregoing reasons, Defendants respectfully move the Court to stay discovery in the manner proposed by Defendants, including a stay of the six disputed categories identified by Plaintiffs in their Opposition, pending the resolution of Defendants' Motions to Dismiss.

15

Date: November 15, 2018

Respectfully submitted,

*/s/ Mark L. Johnson*
Mark L. Johnson (#0345520)
Bethany Krueger (#0306368)
Virginia R. McCalmont (#0399496)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
bkrueger@greeneespel.com
vmccalmont@greeneespel.com

Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
Christina Briesacher (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
christina.briesacher@kirkland.com

*Counsel for Clemens Food Group, LLC
and The Clemens Family Corporation*

*/s/ Richard A. Duncan*
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegrebd.com
aaron.vanoort@faegrebd.com
craig.coleman@faegrebd.com
emily.chow@faegrebd.com
isaac.hall@faegrebd.com
bryan.washburn@faegrebd.com

*Counsel for Hormel Foods Corporation
and Hormel Foods, LLC*

16

/s/ Jaime Stilson
Jaime Stilson (#0392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 492-6746
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert E. Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William H. Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation*
*and Mitsubishi Corporation (Americas)*

/s/ Donald G. Heeman
Donald G. Heeman (#0286023)
Jessica J. Nelson (#0347358)
Randi J. Winter (#0391354)
Daniel R. Haller (#0396497)
FELHABER LARSON
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
(612) 339-6321
dheeman@felhaber.com
jnelson@felhaber.com
rwinter@felhaber.com
dhaller@felhaber.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
Robert P. Vance, Jr. (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
bobbyvance@quinnemanuel.com

*Counsel for JBS USA Food Company and*
*JBS USA Food Company Holdings*

*/s/ William L. Greene*
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
Jon M. Woodruff (#0399453)
STINSON LEONARD STREET LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
john.woodruff@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LEONARD STREET LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

*Counsel for Seaboard Foods, LLC and
Seaboard Corporation*

*/s/ John A. Cotter*
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

*Counsel for Smithfield Foods, Inc.*

18

*/s/ Aaron Chapin*
Aaron Chapin (#06292540)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL  60606
(312) 655-1500
aaron.chapin@huschblackwell.com

Gene Summerlin (*pro hac vice*)
Marnie Jensen (*pro hac vice*)
Ryann Glenn (*pro hac vice*)
Kamron Hasan (*pro hac vice*)
Quinn Eaton (*pro hac vice*)
Sierra Faler (*pro hac vice*)
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154
(402) 964-5000
gene.summerlin@huschblackwell.com
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com
kamron.hasan@huschblackwell.com
quinn.eaton@huschblackwell.com
sierra.faler@huschblackwell.com

*Counsel for Triumph Foods, LLC*

*/s/ David P. Graham*
David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
AXINN, VELTROP &
HARKRIDER LLP
950 F Street, N.W.
Washington, D.C. 20004
(202) 912-4700
radcox@axinn.com
trider@axinn.com

*Counsel for Tyson Foods, Inc., Tyson
Prepared Foods, Inc. and Tyson Fresh
Meats, Inc.*

/s/ *Peter H. Walsh*
Peter H. Walsh (#0388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3000
F. (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Jennifer A. Fleury (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com

*Counsel for Agri Stats, Inc.*