UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Case No. 0:18-cv-01776-JRT-HB |
| This Document Relates To: | |
| Commercial and Institutional Indirect Purchaser Plaintiff Actions and Consumer Indirect Purchaser Plaintiff Actions | |

**INDIRECT PURCHASERS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE STATE LAW CLAIMS IN THE INDIRECT PURCHASER PLAINTIFFS' COMPLAINTS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     ARGUMENT ...............................................................................................................3

A.      The complaints plead a plausible antitrust conspiracy in the pork industry, and were timely filed. ........................................................................................................3

B.      The CIPs adequately allege standing to pursue state law claims at the motion to dismiss stage. .............................................................................................................4

  1.    Defendants do not assert that any CIPs lack standing such that they should be dismissed from this action..........................................................................4

  2.    The standing issue raised by Defendants is logically part of the class certification determination, not the motion to dismiss stage. .....................4

  3.    Defendants incorrectly characterize the majority standard.........................6

C.      Because the Federal Rules of Civil Procedure apply, Indirect Purchasers can pursue class claims regardless of state procedural prohibitions. ..........................10

D.      Indirect Purchasers provided timely notice to the State Attorneys General of Arizona, Utah, Nevada, West Virginia, and Hawaii.............................................13

E.      Because the conspiracy continued through 2018, Individual Indirect Purchasers' Rhode Island antitrust claims should not be dismissed. .......................................14

F.      Defendants' challenges to the Indirect Purchasers' consumer protection claims also fail.....................................................................................................................15

  1.    Rule 9(b) is not applicable to Indirect Purchasers' consumer protection claims. ........................................................................................................15

  2.    Regardless of the pleading standard, Plaintiffs have pled their consumer protection claims with more than adequate sufficiency............................18

  3.    Plaintiffs are not required to plead deceptive conduct or reliance under the state laws of the nine states challenged by Defendants, but regardless have sufficiently alleged deception and reliance................................................19

    a.    Arkansas (CIP).................................................................................19

    b.    California (IIP/CIP) .........................................................................20

c.      District of Columbia (IIP/CIP)......................................................21

d.      Michigan (IIP)............................................................................22

e.      New York (CIP)..........................................................................24

f.      North Dakota (CIP).....................................................................24

g.      Rhode Island (IIP)......................................................................25

h.      Virginia (IIP)..............................................................................25

i.      Wisconsin (CIP).........................................................................25

4.      CIPs withdraw their Missouri and Rhode Island consumer protection claims. ..............................................................................................26

5.      Antitrust claims are actionable under the state consumer protection statutes of Arkansas, Illinois, Michigan, Minnesota, South Dakota and Utah..............................................................................................26

a.      Arkansas (CIP)...........................................................................26

b.      Illinois (IIP)...............................................................................27

c.      Michigan (IIP/CIP) ....................................................................28

d.      Minnesota (IIP/CIP)...................................................................28

e.      South Dakota (CIP).....................................................................29

f.      Utah (IIP) ..................................................................................29

6.      Monetary damages are recoverable in Minnesota and California. ............30

7.      Indirect Purchasers adequately allege intrastate conspiratorial activity. ...32

a.      Florida (IIP/CIP) ........................................................................33

b.      Massachusetts (IIP/CIP)..............................................................34

c.      New Hampshire (IIP/CIP)...........................................................35

d.      New York (CIP)..........................................................................35

e.      North Carolina (IIP/CIP).............................................................36

f.      Wisconsin (CIP)..........................................................................36

- ii -

G. Plaintiffs adequately allege claims for unjust enrichment. ....................................37

 1. Plaintiffs' more than adequately satisfy the requirements for pleading unjust enrichment...........................................................................................37

 2. Plaintiffs' Invocation of "Unjust Enrichment" Rubric Satisfies California, Mississippi, New Hampshire, and Illinois Law. .........................................39

 3. Because Direct Benefit Does Not Mean Direct Payment, Plaintiffs' Fact Allegations Satisfy the Benefit Element of Unjust Enrichment. ...............41

 4. Plaintiffs Need Not Have Pled a "Special Duty." ......................................42

 5. The Federal Rules Allow Plaintiffs to Plead Unjust Enrichment in the Alternative, Even if State Procedural Rules Are Different.........................44

III. CONCLUSION.................................................................................................................45

010736-11 1082396 V22

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*In re Abbott Labs. Norvir Anti-Tr. Litig.*,
   2008 WL 11394207 (N.D. Cal. July 8, 2008)........................................................31

*In re Aftermarket Filters Antitrust Litig.*,
   2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ....................................................20, 27

*In re Aggrenox Antitrust Litig.*,
   2016 WL 4204478 (D. Conn. Aug. 9, 2016) ...................................................12, 14

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*,
   2010 U.S. Dist. LEXIS 76160 (W.D. Mich. Jul. 28, 2010)....................................12

*Arlandson v. Hartz Mountain Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011) ........................................................................37

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018)................................................................................7, 8

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) .................................................................................39

*AT&T Mobility LLC v. AU Optronics Corp.*,
   707 F.3d 1106 (9th Cir. 2013) ...............................................................................20

*In re Auto. Parts Antitrust Litig.*,
   50 F. Supp. 3d 836 (E.D. Mich. 2014)............................................................24, 36

*In re Auto. Parts Antitrust Litig.*,
   2013 WL 2456612 (E.D. Mich. June 6, 2013)...........................................20, 21, 27

*In re Auto. Parts Antitrust Litig.*,
   29 F. Supp. 3d 982 (E.D. Mich. 2014)........................................................ *passim*

*In re Auto. Parts Antitrust Litig.*,
   2014 WL 2993753 (E.D. Mich. July 3, 2014) .......................................................42

*In re Auto. Parts Antitrust Litig.*,
   50 F. Supp. 3d 869 (E.D. Mich 2014)..............................................................14, 17

*Baker v. John Morrell & Co.*,
   382 F.3d 816 (8th Cir. 2004) .................................................................................38

010736-11 1082396 V22

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
    701 F. Supp. 2d 356 (E.D.N.Y. 2010) ...................................................................5

*Bhatia v. 3M Co.*,
    323 F. Supp. 3d 1082 (D. Minn. 2018) ................................................................15

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    123 F.3d 599 (7th Cir. 1997) ...............................................................................32

*In re Broiler Chicken Antitrust Litig.*,
    290 F. Supp. 3d 772 (N.D. Ill. 2017) ........................................................7, 12, 15

*Broquet v. Microsoft Corp.*,
    2008 WL 2965074 (S.D. Tex. July 30, 2008) ...........................................9, 42, 43

*Brown v. Pinnacle Restoration LLC*,
    2013 WL 3148654 (Ariz. Ct. App. June 18, 2013)..............................................42

*In re Cardizem CD Antitrust Litig.*,
    105 F. Supp. 2d 618 (E.D. Mich. 2000)...............................................................37

*In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*,
    2015 WL 5166014 (E.D. Tenn. June 24, 2015).................................20, 27, 34, 43

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F. Supp. 2d 538 (M.D. Pa. 2009) ........................................................ *passim*

*In re Chocolate Confectionary Antitrust Litig.*,
    749 F. Supp. 2d 224 (M.D. Pa. 2010) ...........................................................35, 40

*Cole v. Chevron USA, Inc.*,
    554 F. Supp. 2d 655 (S.D. Miss. 2007)................................................................40

*Curtis Lumber Co. v. La. Pacific Corp.*,
    618 F.3d 762 (8th Cir. 2010) .........................................................................19, 26

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
    903 F. Supp. 2d 198 (S.D.N.Y. 2012)..................................................................29

*In re Dial Complete Mktg. & Sales Practices Litig.*,
    312 F.R.D. 36 (D.N.H. 2015) ..............................................................................20

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011)..................................................................32

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...............................................................31

*In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*,
  2013 WL 5503308 (D.N.J. Oct.2, 2013)..............................................................35

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  536 F.Supp.2d 1129 (N.D. Cal. 2008) ...............................................................24

*Everest v. Leviton Mfg. Co.*,
  2006 WL 381832 (Me. Super. Jan. 13, 2006).....................................................42

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) ...............................................................................8

*Five for Entm't S.A. v. Rodriguez*,
  877 F. Supp. 2d 1321 (S.D. Fla. 2012) ...............................................................33

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) .................................................19, 20, 27

*In re Flonase Antitrust Litig.*,
  692 F. Supp. 2d 524 (E.D. Pa. 2010) ..................................................................36

*In re Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)..................................................................................8

*Force v. ITT Hartford Life & Annuity Ins. Co.*,
  4 F. Supp. 2d 843 (D. Minn. 1998)......................................................................30

*Frese v. City Segway Tours of Washington, DC, LLC*,
  249 F. Supp. 3d 230 (D.D.C. 2017).....................................................................22

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2018 WL 4351892 (S.D.N.Y. Sept. 12, 2018).....................................................13

*Gregory v. Dillard's, Inc.*,
  565 F.3d 464 (8th Cir. 2009) ...............................................................................38

*Hatmaker v. Memorial Med. Ctr.*,
  619 F.3d 741 (7th Cir. 2010) ...............................................................................38

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  299 F.R.D. 648 (S.D. Cal. 2014) .........................................................................12

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
  2014 WL 943224 (D. Minn. Mar. 11, 2014) .........................................................9

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ......................................................................18, 21

*Khoday v. Symantec Corp.*,
    858 F. Supp. 2d 1004 (D. Minn. 2012)..................................................39

*KPS & Assocs., Inc. v. Designs By FMC, Inc.*,
    318 F.3d 1 (1st Cir. 2003)...............................................................34

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
    897 F.3d 88 (2d Cir. 2018)...............................................................8

*Laughlin v. Evanston Hosp.*,
    550 N.E.2d 986 (1990)....................................................................27

*In re Levaquin Prod. Liab. Litig.*,
    752 F. Supp. 2d 1071 (D. Minn. 2010).............................................44

*Lewis v. Casey*,
    518 U.S. 343 (1996).....................................................................4, 5

*Leyse v. Clear Channel Broad., Inc.*,
    2010 U.S. Dist. LEXIS 54103 (S.D. Ohio Jun. 2, 2010) ....................12

*In re Lidoderm Antitrust Litig.*,
    103 F. Supp. 3d 1155 (N.D. Cal. 2015) ...........................................36

*In re Light Cigarettes Mktg. Sales Practices Litig.*,
    751 F. Supp. 2d 183 (D. Me. 2010) ............................................40, 45

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
    2017 WL 3131977 (D.N.J. July 20, 2017)........................................32

*In re Lithium Ion Batteries Antitrust Litig.*,
    2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)......................................12

*In re Magnesium Oxide Antitrust Litig.*,
    2011 WL 5008090 (D.N.J. Oct. 20, 2011)........................................15

*Massachusetts v. Mylan Labs.*,
    357 F. Supp. 2d 314 (D. Mass. 2005) .............................................42

*In re McCormick & Company, Inc.*,
    217 F.Supp.3d 124 (D.D.C. 2016) .....................................................5

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) ...................................................6, 7, 8

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    257 F.R.D. 46 (2009) ......................................................................37

*In re Microsoft Corp. Antitrust Litig.*,
    401 F. Supp. 2d 461 (D. Md. 2005) ......................................................................42

*Midwestern Midget Football Club Inc. v. Riddell, Inc.*,
    2016 WL 3406129 (S.D.W. Va. June 17, 2016) ....................................................42

*Milbourne v. JRK Residential Am., LLC*,
    2016 WL 1071564 (E.D. Va. Mar. 15, 2016) ..........................................................8

*Mollicone v. Universal Handicraft, Inc.*,
    2017 WL 440257 (C.D. Cal. Jan. 30, 2017) ...........................................................6

*Moore v. Mack's Sport Shop, LLLP*,
    2017 WL 4350980 (E.D. Ark. Sept. 29, 2017) .....................................................20

*NAACP v. Am. Family Mut. Ins. Co.*,
    978 F.2d 287 (7th Cir.1992) ..................................................................................38

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    350 F. Supp. 2d 160 (D. Me. 2004) ................................................................17, 24

*Nigh v. Koons Buick Pontiac GMC, Inc.*,
    143 F. Supp. 2d 535 (E.D. Va. 2001) ...................................................................25

*In re Opana ER Antritrust Litig.*,
    162 F. Supp. 3d 704 (N.D. Ill. 2016) ......................................................................7

*In re Packaged Seafood Prod. Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017) ......................................................... *passim*

*In re Polyurethane Foam Antitrust Litig.*,
    799 F. Supp. 2d 777 (N.D. Ohio 2011) ...................................................................7

*Powers v. Lycoming Engines*,
    245 F.R.D. 226 (E.D. Penn. 2007) ........................................................................37

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ..............................................................................8

*In re Processed Egg Products Antitrust Litig.*,
    851 F. Supp. 2d 867 (E.D. Pa. 2012) ............................................................ *passim*

*In re Propranolol Antitrust Litig.*,
    249 F. Supp. 3d 712 (S.D.N.Y. 2017) .............................................................13, 36

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) .............................................................................22, 31

*Russo v. NCS Pearson, Inc.*,
   462 F. Supp. 2d 981 (D. Minn. 2006) ....................................................................18

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prod. Liab. Litig.*,
   288 F. Supp. 3d 1087 (D.N.M. 2017) ....................................................................44

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*,
   559 U.S. 393 (2010) .................................................................................2, 10, 11, 12

*Siegel v. Shell Oil Co.*,
   480 F. Supp. 2d 1034 (N.D. Ill. 2007) ...................................................................28

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   2015 WL 5458570 (D. Mass. Sept. 16, 2015) ..........................................23, 28, 29

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ....................................................................23

*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
   781 F.3d 1003 (8th Cir. 2015) ................................................................................16

*In re Target Corp. Data Sec. Breach Litig*,
   66 F.Supp.3d 1154 (D. Minn. 2014) .........................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   599 F. Supp. 2d 1179 (N.D. Cal. 2009) ..................................................................41

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*,
   663 F.Supp. 494 (M.D.N.C.1987) ..........................................................................36

*United States v. Cundiff*,
   555 F.3d 200 (6th Cir. 2009) ..................................................................................11

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
   643 F. Supp. 2d 1256 (W.D. Wash. 2009) ................................................................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2018 WL 4777134 (N.D. Cal. Oct. 3, 2018) ...........................................................13

*Volling v. Antioch Rescue Squad*,
   999 F. Supp. 2d 991 (N.D. Ill. 2013) .....................................................................38

*Weber v. Sanborn*,
   502 F. Supp. 2d 197 (D. Mass. 2007) .....................................................................34

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009) .......................................................................31, 33

010736-11 1082396 V22

*Williams v. Scottrade, Inc.*,
    2006 WL 2077588 (E.D. Mich. July 24, 2006) ............................................18, 23

*Williams v. Wells Fargo Bank, N.A.*,
    2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) .......................................................42

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
    536 F.3d 663 (7th Cir. 2008) ................................................................................15

*Witherspoon v. Philip Morris Inc.*,
    964 F. Supp. 455 (D.D.C. 1997) ...........................................................................18

*Zyla v. Wadsworth, Div. of Thomson Corp.*,
    360 F.3d 243 (1st Cir. 2004)..................................................................................35

## STATE CASES

*Ellis v. Smith Grading & Paving, Inc.*,
    366 S.E.2d 12 (S.C. Ct. App. 1998)......................................................................42

*Embree Constr. Grp., Inc. v. Rafcor, Inc.*,
    411 S.E.2d 916 (N.C. 1992)..................................................................................42

*Emergency Physicians Integrated Care v. Salt Lake Cty.*,
    167 P.3d 1080 (Utah 2007)....................................................................................42

*Freeman Indus., LLC v. Eastman Chem. Co.*,
    172 S.W. 3d 512 (Tenn. Aug. 25, 2005)................................................................44

*Gaebler v. New Mexico Potash Corp.*,
    676 N.E.2d 228 (1996)..........................................................................................27

*Gen. Insulation Co. v. Eckman Const.*,
    992 A.2d 613 (N.H. 2010) ....................................................................................40

*Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*,
    504 N.W.2d 635 (Mich. 1993)..............................................................................42

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ..................................................................................30, 31

*Long v. Dell, Inc.*,
    93 A.3d 988 (R.I. 2014) ........................................................................................25

*Martis v. Grinnell Mut. Reinsurance Co.*,
    905 N.E.2d 920 (Ill. App. Ct. 2009) .....................................................................43

*Morris Pumps v. Centerline Piping, Inc.*,
    729 N.W.2d 898 (Mich. Ct. App. 2006) ...............................................................42

*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*,
    532 S.E.2d 868 (S.C. 2000) ..................................................................42

*Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*,
    34 N.E.3d 1023 (Ill. App. Ct. 2015) ......................................................43

*Olstad v. Microsoft Corp.*,
    700 N.W.2d 139 (Wis. 2005).................................................................37

747 P.2d 159 (Kan. 1987) ............................................................................42

*Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv.*,
    67 N.E.3d 556 (Ill. App. Ct. 2016) ........................................................43

*Pitts v. Jackson Nat'l Life Ins. Co.*,
    74 S.E.2d (S.C. Ct. App. 2002)..........................................................43, 44

*Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*,
    899 So. 2d 1222 (Fla. Dist. Ct. App. 2005) ...........................................42

*Sobel v. Franks*,
    633 N.E.2d 820 (Ill. App. Ct. 1994) ......................................................43

*State ex rel. Spaeth v. Eddy Furniture Co.*,
    386 N.W.2d 901 (N.D. 1986) .................................................................24

*Tim Torres Enters. v. Linscott*,
    416 N.W.2d 670 (Wis. Ct. App. 1987) ...................................................26

*Winkelman v. Kraft Foods, Inc.*,
    693 N.W.2d 756 (Wis. Ct. App. 2005) ...................................................26

*Wisconsin v. Abbott Labs.*,
    829 N.W.2d 753 (Wis. Ct. App. 2013) ...................................................26

## STATE STATUTES

Ariz. Rev. Stat. § 44-1415(A) ....................................................................13

Ark. Code Ann. § 4-88-107(a)(10) .........................................................19, 27

Arkansas Deceptive Trade Practices Act...................................19, 20, 26, 27

Cal. Bus. & Prof. Code § 16720, *et seq.* .................................................20

Cal. Bus. & Prof. Code § 17200 ................................................................20

Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770 ......................................................20, 31

Consumer Fraud Act ...........................................................................................................15, 27, 29

D.C. Code § 28-3904 ......................................................................................................................22

Fla. Stat. § 501.204(1) ...................................................................................................................34

Illinois Antitrust Act ................................................................................................................27, 28

Illinois Consumer Fraud Act ....................................................................................................15, 27

M.G.L., c. 93A, § 11 ......................................................................................................................35

Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.* .................23, 28

Mich. Comp. Laws Ann. § 445.903(1)(z) ................................................................................23, 28

Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43–.48 .............28, 30

Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69(1) ..........................................................28

Nev. Rev. Stat. § 598A.210(3) .......................................................................................................13

New York's Gen Bus. Law § 349 ...................................................................................................24

North Carolina's Unfair and Deceptive Trade Practices Act .........................................................36

North Dakota Unfair Trade Practices Law, N.D. Cent. Code § 51-10-01, et seq. .........................24

N.D. Cent. Code § 51-15-02, et seq. ..............................................................................................24

S.D. Codified Laws § 37-24-6(1) ..................................................................................................29

South Dakota's Deceptive Trade Practices Act .............................................................................29

Utah Code Ann. § 13-1-2(2) ..........................................................................................................29

Utah Code § 76-10-919(1) .............................................................................................................10

Utah Code § 76-10-3109(9) ...........................................................................................................13

Utah Consumer Sales Practices Act ...............................................................................................29

Virginia Consumer Protection Act .................................................................................................25

**FEDERAL RULES**

Federal Rule of Civil Procedure 8 ......................................................................................... *passim*

Federal Rule of Civil Procedure 9(b)......................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) .................................................................39

Federal Rule of Civil Procedure 23 ............................................................ *passim*

Federal Rule of Civil Procedure 54 .................................................................38, 39

# I.     INTRODUCTION

Indirect Purchaser Plaintiffs[1] have plausibly alleged that Defendants orchestrated a scheme to increase pork profits by exchanging detailed, confidential, forward-looking strategic information regarding supply and prices. Defendants attack Indirect Purchaser Plaintiffs' state law claims using five general arguments; for the reasons articulated below, these arguments fail.

*First*, Defendants argue that CIPs lack standing to pursue state law claims, incorrectly arguing that CIPs must have a named plaintiff for each state under which they are pursuing claims *at the motion to dismiss stage*. Yet the weight of authority defers such decisions until at least class certification. Courts have repeatedly held that, where residents of various states suffered an injury from uniform conduct such as a price fixing conspiracy, and the laws of those states are substantially similar, the unnamed plaintiffs' concerns are the same as those of the named plaintiff. Defendants even acknowledge that an Eighth Circuit district court has found that deciding whether the named plaintiffs have standing to bring claims in states from which they don't hail can be deferred until class certification. Hence, CIP plaintiffs have adequately alleged that they have standing to bring state claims on behalf of absent class members in other states and to bring those state claims themselves.

---

[1] In this brief, the Indirect Purchaser Plaintiffs are referred to as "Indirect Purchasers." Two distinct groups of plaintiffs make up the indirect purchasers: the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIPs") and the Consumer Indirect Purchaser Plantiffs ("IIPs").

- 1 -

*Second*, Defendants argue that the statutes of several states – Illinois, Arkansas, South Carolina, and Utah – bar the Indirect Purchasers from bringing a class action in federal court, superseding Federal Rule of Civil Procedure 23. But multiple district courts have recognized, a state statute prohibiting class actions – regardless of where it is codified – falls precisely under the majority holding in *Shady Grove* and must yield to Rule 23 in federal court. Thus, Indirect Purchasers' class claims under the state statutes of Illinois, Arkansas, South Carolina, and Utah should proceed.

*Third*, Defendants incorrectly suggest the Indirect Purchasers failed to provide the appropriate "pre-filing notice" to the Arizona, Utah, and Nevada Attorneys General as required by the respective statutes. But these statutes do not require *pre-filing* notice; instead, they require notice that a complaint was *filed*. And IIPs provided the required notice on the same day that the original complaints were filed.

*Fourth*, Defendants assert that the repealer law of Rhode Island requires that IIPs' claims preceding the date of the repealer's enactment – July 15, 2013 – must be dismissed. But this argument ignores the fact that plaintiffs do allege post-July 15, 2013 conduct in furtherance of the conspiracy. Hence, the Rhode Island claims should stand.

*Fifth and finally*, Defendants make misplaced arguments regarding whether the heightened standards of Federal Rule of Civil Procedure 9(b) apply to state law consumer protection act claims. Relatedly, Defendants incorrectly suggest that the statutes of nine states require detailed allegations of conduct or reliance. In bringing forth these arguments, Defendants misstate the legal standard and misread the statutes. And

- 2 -

regardless, Indirect Purchasers have adequately alleged deception and reliance – even under the heightened Rule 9(b) requirements.

Defendants' anticompetitive actions affected billions of dollars of commerce across the country and are now the subject of this litigation. This is exactly the kind of harm state law was designed to prevent. For the reasons set forth below, Defendants' arguments as to Indirect Purchasers' state law claims should be rejected and their Motion should be denied in its entirety.

## II.    ARGUMENT

### A.    The complaints plead a plausible antitrust conspiracy in the pork industry, and were timely filed.

Defendants summarily reference arguments made in their joint motion to dismiss plaintiffs' federal law claims, but raise no new arguments. Mem. at 3.[2] Plaintiffs do not repeat their arguments here, but incorporate by reference Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss the Direct Purchaser Plaintiffs' Complaint and the Federal Law Claims in the Indirect Purchaser Plaintiffs' Complaints for Failure to State a Claim upon Which Relief May Be Granted, filed concurrently herewith.

---

[2] "Mem." refers to the Memorandum of Law in Support of Defendants' Joint Motion to Dismiss the State Law Claims in the Indirect Purchaser Plaintiffs' Complaints, Oct. 23, 2018, ECF No. 165.

**B.** **The CIPs adequately allege standing to pursue state law claims at the motion to dismiss stage.**

**1.** **Defendants do not assert that any CIPs lack standing such that they should be dismissed from this action.**

Defendants do not challenge that any named plaintiff lacks standing to bring the claims asserted, and this is where the analysis should end at the motion to dismiss stage. Rather, Defendants argue that CIPs must have a named plaintiff for each state under which they are pursuing claims *at the motion to dismiss stage*. That, however, as even Defendants must admit is not the position taken by a number of courts across the country, including at least one court in Minnesota. *See* Mem. at 4, 5.

**2.** **The standing issue raised by Defendants is logically part of the class certification determination, not the motion to dismiss stage.**

The CIP named plaintiffs all bring claims for horizontal anticompetitive conduct giving rise to price-fixing claims under various state antitrust, consumer protection, and unjust enrichment laws. Defendants cite *Lewis v. Casey*, 518 U.S. 343, 357 (1996) for the proposition that "'[N]amed plaintiffs who represent a class must meet the standing requirements of Article III, which requires an injury in fact, traceable to the defendant, that can be redressed by a favorable decision." CIPs meet this standard. The named CIPs allege that they were overcharged (i.e., the injury in fact), as a result of anticompetitive actions taken by Defendants (i.e., the injury is traceable to the defendants), and that these wrongs should be redressed by injunctive relief and money damages (i.e., these wrongs can be remedied by a favorable decision here). In other words, all of the claims asserted by the CIP named plaintiffs (whether under the laws of a state in which they reside or

not) are fundamentally of the same type, and will be redressed by the same remedies. In contrast, in *Casey*, the plaintiffs sought certain injunctive relief provisions (e.g., special services or special facilities required by non-English speakers, by prisoners in lockdown, and by the inmate population at large) that were found to be overbroad in light of the cause of the actual injury to the named plaintiff (illiteracy). *See id.* at 258.

The primary focus of the class certification process is the determination of whether a named plaintiff should be allowed to bring representative claims on behalf of a larger group of potential claimants. *See In re McCormick & Company, Inc.*, 217 F.Supp.3d 124, 144 (D.D.C. 2016) (The "requirements of Rule 23(a) – commonality, typicality, and adequacy – exist to test the relationship between the named plaintiff's claims and those of the class.").[3] "Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states."[4] Their "capacity to represent individuals from other states depends upon obtaining class certification, and the standing issue would not exist but for their assertion of state law antitrust claims on behalf of class members in these states."[5]

---

[3] Here, as is elsewhere in the brief, all emphasis added, and internal quotation marks and citations omitted, unless otherwise noted.

[4] *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010).

[5] *In re Chocolate Confectionary Antitrust Litig. ("Chocolate I")*, 602 F. Supp. 2d 538, 579 (M.D. Pa. 2009).

Defendants point out that no named plaintiff can allege that it resided or purchased pork in New Hampshire. *See* Mem. at 5. To put this into context, any given CIP named plaintiff also lacks standing to bring the claim belonging to another putative class member residing in the same state but for the class action mechanism. In both situations, the fundamental question is whether it is appropriate for the named plaintiff to be allowed to bring representative claims on behalf of putative class members, and this is a question that is clearly appropriate for the class certification stage of this litigation as opposed to the motion to dismiss stage, which is dealing with the adequacy of the claims and not the adequacy of the class representation.

### 3.   Defendants incorrectly characterize the majority standard.

Defendants cite *Mollicone v. Universal Handicraft, Inc.*, No. 16-cv-7322, 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017) for the proposition that "the majority of courts to consider this question have concluded that when a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." Mem. at 5. However, *Mollicone* is an aberration in the wake of a Ninth Circuit opinion clearly on point on the issue (*see Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015) ("The difficulty with Defendants' argument is that it conflates standing and class certification.")), and is an incorrect assessment of the state of the law. As even Defendants admit, there is a split in authority on this issue (Mem. at 5), and in

fact the clear weight of recent authority defers such decisions until at least class certification.[6]

As the Ninth Circuit stated in *Melendres*, "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded."[7] Thus, "the named plaintiffs in this case . . . are adequate representatives," and confer standing for all claims, so long as "[their] claims do not 'implicate a significantly different set of concerns' than the unnamed plaintiffs' claims."[8] The court further directed that this "significantly different set of concerns" rule must not be applied narrowly or formalistically. "In determining what constitutes the same type of relief or the same kind of injury, 'we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry.'"[9]

Where residents of various states suffered an injury from uniform conduct such as a price fixing conspiracy, and the laws of those states are substantially similar, the unnamed plaintiffs' concerns are the same as those of the named plaintiff.[10] Defendants cannot credibly argue that plaintiffs who purchased the same products and seek the same

---

[6] *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 48–51 (1st Cir. 2018); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 809-10 (N.D. Ill. 2017); *In re Opana ER Antritrust Litig.*, 162 F. Supp. 3d 704, 721-22 (N.D. Ill. 2016).

[7] *Melendres*, 784 F.3d at 1262.

[8] *Id.* at 1263 (citing *Gratz v. Bollinger*, 539 U.S. 244, 265 (2003)).

[9] *Id.* (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir.2001)).

[10] *See also In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 805-06 (N.D. Ohio 2011).

remedy under parallel state laws have claims that "implicate a significantly different set of concerns."[11] Defendants may forage for slight differences in state laws, but the language of *Melendres* is clear: slight differences do not count. Given that CIPs have suffered an injury in fact, requiring them to add plaintiffs from each and every state, particularly at the motion to dismiss stage, "would be inefficient and contrary to the purposes of Rule 23."[12] Plaintiffs allege injury-in-fact and trace it to the conspiracy. This is sufficient standing to assert their claims and to bring claims on behalf of putative class members. Courts in numerous circuits have adopted this "class certification approach."[13]

---

[11] *Melendres*, 784 F.3d at 1263.

[12] *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1264 (W.D. Wash. 2009); *see In re Asacol Antitrust Litig.*, 907 F.3d 42, 48-51 (1st Cir. 2018).

[13] *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) ("Because there has been considerable disagreement over this question in the district courts, we write to make explicit what we previously assumed in *In re Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013): as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3) . . . not a question of "adjudicatory competence" under Article III."); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000) (holding that a court must first determine whether "at least one named class representative has Article III standing," then "question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others"); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (holding that "an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans"); *Milbourne v. JRK Residential Am., LLC*, No. 12-cv-861, 2016 WL 1071564, at *6 (E.D. Va. Mar. 15, 2016) (stating that "where the named plaintiff has shown that there is an actual, justiciable controversy between himself and the defendant, differences between the claims and defenses available to the named plaintiff and to the class bear on the questions of typicality and adequacy of representation under Fed. R. Civ. P. 23, rather than standing" (footnotes omitted) and that "Rule 23(a), rather than Article III, is the appropriate rubric for evaluating these differences because, 'while standing doctrine is primarily concerned

As Defendants acknowledge, an Eighth Circuit district court has found that deciding whether the named plaintiffs have standing to bring claims in states from which they don't hail can be deferred until class certification. *See In re Target Corp. Data Sec. Breach Litig*, 66 F.Supp.3d 1154, 1159-60 (D. Minn. 2014) (Magnuson, J.) ("As Target undoubtedly knows, there are consumers in Delaware, Maine, Rhode Island, Wyoming, and the District of Columbia whose personal financial information was stolen in the 2013 breach. To force Plaintiffs' attorneys to search out those individuals at this stage serves no useful purpose."). In *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, Civ. No. 13-2664, 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014), *aff'd*, 797 F.3d 538 (8th Cir. 2015), Judge Montgomery dismissed all of the claims of the single named plaintiff, including claims in the state in which the named plaintiff resided. In the context of dismissing the case entirely, Judge Montgomery's decision not to defer the determination of the named plaintiff's standing to bring out-of-state claims until class certification is unsurprising, and was made in circumstances distinct from anything other than complete dismissal. State laws provide non-residents with a cause of action.

Even without guidance on the subject from various federal courts, the named plaintiffs would have the right to represent class members from other states because they

---

with ensuring that a real case or controversy exists, Rule 23(a)'s requirements are designed precisely to address concerns about the relationship between the class representative and the class'") (quoting Alba Conte & Herbert Newberg, Newberg on Class Actions § 2.6 (5th ed. 2013); *Broquet v. Microsoft Corp.*, Civ. No. CC-08-094, 2008 WL 2965074, at *2 (S.D. Tex. July 30, 2008) (holding that "[o]nce threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense").

themselves also have standing to assert claims in those states. Nearly all of the states'

antitrust and consumer protection laws have broad language that "can plainly be

construed to not require in-state residency or an in-state purchase, but rather only that

some of the Defendants' conduct occurred, or the effects of which were felt, within the

state – thereby violating the statute." *In re Processed Egg Products Antitrust Litig.*, 851

F. Supp. 2d 867, 888 (E.D. Pa. 2012). "Indeed, when read literally, the language of these

respective provisions authorizes broad private enforcement, and thereby can be read to

afford relief to all persons whose injuries may have occurred outside of the state, but are

causally related to an antitrust violation." *Id.* at 888-89; *compare* Utah Code § 76-10-

919(1) (explicitly conferring standing only on "[a] person who is a citizen of this state or

a resident of this state and who is injured or is threatened with injury"). CIP plaintiffs

have adequately alleged that they have standing to bring state claims on behalf of absent

class members in other states and to bring those state claims themselves.

**C.      Because the Federal Rules of Civil Procedure apply, Indirect Purchasers can
pursue class claims regardless of state procedural prohibitions.**

Defendants argue that the statutes of several states – Illinois, Arkansas, South

Carolina, and Utah – bar the Indirect Purchasers from bringing a class action in federal

court, superseding Federal Rule of Civil Procedure 23. Mem. at 23, 26. Relying on

Justice Steven's concurrence in *Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559

U.S. 393, 423 (2010), defendants suggest that state statutory class-action prohibitions are

a substantive element, and thus, apply to override Rule 23. This is simply incorrect.

In *Shady Grove*, the majority ruled that "Rule 23 unambiguously authorizes **any** plaintiff, **in any federal proceeding**, to maintain a class action if the Rule's prerequisites are met.  We cannot contort its text, even to avert a collision with state law that might render it invalid." *Id.* at 406. Because the four states at issue attempt to do exactly what the majority forbade – attempt to restrict the class device for certain statutory causes of actions – they are inapplicable under controlling law. Nor is the placement of any provision (such as Defendants' cite for Illinois (Mem. at 9)) relevant under the majority's opinion, which holds that a state cannot limit the Rule by "structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements."[14]

And even under Justice Stevens' concurrence, which is not controlling, the state statutes at issue here are no more part of the state's substantive law than the one at issue in *Shady Grove*.[15] Defendants make no showing that the statutes of Illinois, Arkansas, South Carolina, or Utah are those rare creatures that although seemingly procedural is, on its face with little doubt, would "abridge, enlarge or modify" a substantive right, as the concurring opinion would require.[16] And, as multiple district courts have recognized, a state statute prohibiting class actions – regardless of where it is codified – falls precisely

---

[14] *Shady Grove*, 559 U.S. at 400.

[15] *Shady Grove* was not a case where "no single rationale . . . enjoys the assent of five Justices," and therefore a more narrow concurrence may be applied. *United States v. Cundiff*, 555 F.3d 200, 208 (6th Cir. 2009).

[16] *Shady Grove*, 559 U.S. at 426-27 nn.10, 13 (describing examples and noting that such situations are rare); *id.* at 432 (noting the standard for finding a conflict is that there "must be little doubt" about the effect of the state law).

under the majority holding in *Shady Grove* and must yield to Rule 23 in federal court.[17]

The court in *Broilers* rejected the exact same argument by the defendants against **the**

**same state law** claims there:

> [T]he *Illinois Brick* issue – whether indirect purchasers can
> bring suit at all, even individually – is certainly substantive in
> that it affects the "rights and remedies" of indirect purchasers.
> But whether such plaintiffs may bring a class action does not
> affect their substantive rights. The availability of the class
> action procedure does not change the substantive rights or
> remedies available to them under Illinois [and South
> Carolina] law.[[18]]

Other courts have similarly rejected challenges to class claims in these states based on the

same *Shady Grove* challenge.[19] Indirect Purchasers' class claims under the state statutes

of Illinois, Arkansas, South Carolina, and Utah should proceed.

---

[17] *See Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 1:09-CV-1162, 2010 U.S. Dist. LEXIS 76160, at *7-*8 (W.D. Mich. Jul. 28, 2010); *Leyse v. Clear Channel Broad., Inc.*, No.1:09-CV-237, 2010 U.S. Dist. LEXIS 54103, at *5-*6 (S.D. Ohio Jun. 2, 2010) (rejecting defendant's argument to apply state law because Rule 23 controls).

[18] *Broiler Chicken*, 290 F. Supp. 3d at, 818, 821.

[19] *See also In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516 (SRU), 2016 WL 4204478, at *6 (D. Conn. Aug. 9, 2016) (reasoning that the Illinois indirect purchaser class action bar was similar to the New York class action bar addressed in *Shady Grove*); *In re Lithium Ion Batteries Antitrust Litig.*, No.13-md-2420 YGR, 2014 WL 4955377, at *21 & *23 (N.D. Cal. Oct. 2, 2014) (permitting class claims to proceed under the Illinois antitrust and South Carolina and Arkansas consumer protection statutes); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[T]he Court tends to view these [state statutory] limitations on class actions as procedural in nature;" allowing South Carolina consumer protection claim to proceed on a class basis); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2018 WL 4777134, at *29 (N.D. Cal. Oct. 3, 2018) (allowing Utah consumer protection claim to proceed on class basis); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2018 WL 4351892, at *46 (S.D.N.Y. Sept. 12, 2018) (same; citing *Andreason v. Felsted*, 137 P.3d 1, 5 (Utah Ct. App. 2006));

**D.** **Indirect Purchasers provided timely notice to the State Attorneys General of Arizona, Utah, Nevada, West Virginia, and Hawaii.**

Defendants incorrectly suggest the Indirect Purchasers failed to provide the appropriate "pre-filing notice" to the Arizona, Utah, and Nevada Attorneys General as required by the respective statutes. Mem. at 11. Defendants are incorrect. First, these statutes do not require <u>pre-filing</u> notice; instead, they require notice that a complaint was *filed*. Specifically, Arizona and Nevada require simultaneous service of the filed complaint on the Attorney General.[20] Utah merely requires that the Attorney General receive a copy of the filed complaint.[21] Indirect Purchasers provided timely notice to each of the Arizona, Nevada, and Utah Attorneys General.[22]

For Hawaii, even Defendants acknowledge that the as-filed complaint must be served on the Hawaii attorney general within seven days of filing. Mem. at 40. IIPs

---

*In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 728 (S.D.N.Y. 2017) ("the Court is persuaded that this state procedural rule does not control in federal court, where Rule 23 sets the only relevant requirements to file a class action").

[20] Ariz. Rev. Stat. § 44-1415(A) ("shall simultaneously with the filing of. . . ."); Nev. Rev. Stat. § 598A.210(3) ("shall, simultaneously with the filing of. . . .").

[21] Utah Code § 76-10-3109(9) ("shall be notified by the plaintiff about the filing of. . . .").

[22] *See* Declaration of Shana E. Scarlett in Support of Indirect Purchasers' Opposition to Defendants' Joint Motion to Dismiss the State Law Claims in the Indirect Purchaser Plaintiffs' Complaints ("Scarlett Decl."), Ex. A (notice to Arizona Attorney General); Ex. B (notice to Nevada Attorney General); and Ex. C (notice to Utah Attorney General), concurrently filed herewith. *See also* Declaration of Blaine Finley in Support of Indirect Purchasers' Opposition to Defendants' Joint Motion to Dismiss the State Law Claims in the Indirect Purchaser Plaintiffs' Complaints ("Finley Decl."), Ex. A (notice to Arizona Attorney General); Ex. B (notice to Nevada Attorney General); and Ex. C (notice to Utah Attorney General), concurrently filed herewith.

served the attorney general the same day as the original complaint was filed.[23]

**E.     Because the conspiracy continued through 2018, Individual Indirect Purchasers' Rhode Island antitrust claims should not be dismissed.**

Defendants assert that the repealer law of Rhode Island requires that IIPs' claims preceding the date of the repealer's enactment – July 15, 2013 – must be dismissed. Mem. at 25. Defendants further assert that because the IIPs' complaints allege no overt act after July 15, 2013, the entire Rhode Island claim must be dismissed. *Id.* But plaintiffs do allege post-July 15, 2013 conduct – including the Defendants ongoing membership and subscription in the Agri Stats data sharing service. IIP, ¶¶ 97, 113, 115, 125-27, 140-150.[24] Each receipt and use of an Agri Stats report was an act in furtherance of the conspiracy. Regardless, even if the date of enactment limits *damages*, it does not preclude the claim in its entirety.[25] IIPs' post-July 15, 2013 damages claims clearly should be sustained.[26]

---

[23] *See* Scarlett Decl., Ex. D (notice to Hawaii Attorney General).

[24] "IIP" refers to the Consumer Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint, filed Aug. 17, 2018.

[25] *In re Auto. Parts Antitrust Litig.("Auto. Parts III")*, 50 F. Supp. 3d 869, 888 (E.D. Mich 2014).

[26] *See* Memorandum Opinion and Order at 69, *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637 (N.D. Ill. Nov. 20, 2017), ECF No. 541 (allowing indirect purchasers' Rhode Island antitrust claims to proceed "to the extent they accrued after July 15, 2013"); *Aggrenox*, 2016 WL 4204478, at *4 (denying motion to dismiss Rhode Island antitrust claims "with respect to alleged overcharges incurred from that date [of enactment] forward").

**F.     Defendants' challenges to the Indirect Purchasers' consumer protection claims also fail.**

**1.     Rule 9(b) is not applicable to Indirect Purchasers' consumer protection claims.**

Indirect Purchasers allege that Defendants conspired to stabilize or reduce the supply of pork and increase prices, in violation of state consumer protection law. At its core, this is a price-fixing case alleging unfair business practices, not a case sounding in fraud.  Yet Defendants ask the Court to broadly apply the heightened standards of Rule 9(b) to Indirect Purchasers' state-law consumer protection claims. Rule 9(b) applies to "consumer-protection statutes when those claims are ***grounded in allegations of fraud***,"[27] such as false advertising claims. In contrast, courts recognize that when consumer protection claims result from allegations of an unfair business practice or unfair competition, (as is the case here) the normal pleading standards from Rule 8(a) govern.[28] For this reason, the Court should evaluate the claims under Rule 8, not the heightened requirements of Rule (9)(b).

---

[27] *Bhatia v. 3M Co.*, 323 F. Supp. 3d 1082, 1092 (D. Minn. 2018).

[28] *Broiler Chicken*, 290 F. Supp. 3d at 818 (rejecting Defendants' argument that Rule 9(b) and applying the notice pleading standard of Rule 8(a) to the plaintiffs' consumer protection claims); *In re Magnesium Oxide Antitrust Litig.*, No. 10-cv-5943 (DRD), 2011 WL 5008090, at *26 (D.N.J. Oct. 20, 2011) ("Additionally, at this time, [the indirect purchasers'] claims may move forward to the extent they are premised on allegations of Defendants' engaging in unfair competition, as there is no indication that Rule 9(b) applies to such allegations."); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc*., 536 F.3d 663, 670 (7th Cir. 2008) ("Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b).").

Defendants misconstrue the holding of *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) to support their argument that Rule 9(b) applies to the consumer protection claims in this litigation. In *Streambend*, the plaintiffs' claims rested on a statute that had "been described [by other courts] as a general anti-fraud provision."[29] The statute incorporated, almost verbatim, Securities and Exchange Commission Rule "prohibiting fraud by any person in connection with the purchase of securities."[30]  Contrary to Defendants' assertions here, the *Streambend* court **did not** hold that that Rule 9(b) applies to every complaint that "contains specific averments of fraud." Rather, the court stated that "a pleading-specific inquiry . . . is the proper way to determine whether the particularity requirements of Rule 9(b) apply."[31] It held that Rule 9(b) was the appropriate standard because the statute at issue was "**necessarily grounded in fraud**."[32]

That is not the case here. In similar antitrust cases, courts have evaluated whether state consumer protection laws are necessarily grounded in fraud and subject to the heightened pleading requirements of Rule 9(b). These courts have held that the Rule 8(a) standard to consumer protection act claims because these claims are not necessarily grounded in fraud. For example, the district court in *In re Processed Egg Prod. Antitrust*

---

[29] *Streambend*, 781 F.3d at 1011 (internal citation and quotation omitted).

[30] *Id.*

[31] *Id.* at 1013.

[32] *Id.* at 1012.

*Litig.*,[33] explained that:

> This particular alleged violation of the UCL is simply not grounded in fraud nor does it "sound in fraud." The Plaintiffs' UCL claim arises from the alleged conduct—namely, the alleged conspiracy to reduce the supply of eggs as allegedly advanced by the eight collective actions—which, as alleged, is not based on fraudulent acts. As such, the UCL claim does not entirely rely on a course of fraudulent conduct . . . so as to require the application of Rule 9(b).

So it is here.  Defendants have not shown that Indirect Purchasers' consumer protection claims are necessarily grounded in fraud. Indirect Purchasers have alleged consumer protection claims result from allegations of an unfair business practice or unfair competition resulting from an antitrust conspiracy.[34] Defendants admit that the consumer protection claims arise from an antitrust conspiracy. *See* Mem. at 12 ("These consumer protection claims are based on the same deficient antitrust conspiracy allegations as the Indirect Purchasers' federal claims."). But rather than rely on similar antitrust cases, Defendants cite to a smattering of unrelated false advertising cases where Rule 9(b)

---

[33] *In re Processed Egg Prod. Antitrust Litig.*, 851 F. Supp. 2d 867, 895–96 (E.D. Pa. 2012); *also In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1072-73 (S.D. Cal. 2017) (declining to apply the heightened requirements of Rule 9(b) to consumer protection claims under California law and Illinois law); *also Auto. Parts III*, 50 F. Supp. 3d at 891 (declining to apply the heightened requirements of Rule 9(b) to consumer protection claims under Florida and North Carolina law); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 183 (D. Me. 2004) ("I conclude that the alleged antitrust violation may violate the DCCPPA without being a deceptive practice, the criterion that triggers the Rule 9(b) pleading requirements.").

[34] *See*, *e.g.*, *Knevelbaard*, 232 F.3d at 984 ("Antitrust cases are not to be judged by a higher or different pleading standard than other cases.").

generally does apply.[35] This is not a false advertising case; it is a price-fixing case. For

that reason, Rule 8(a) applies.

### 2. Regardless of the pleading standard, Plaintiffs have pled their consumer protection claims with more than adequate sufficiency.

Defendants argue that Indirect Purchasers' consumer protection claims are not

adequately pleaded with particularity. Mem. at 30-31. Specifically, Defendants only

contend that Indirect Purchasers failed to say <u>how</u> the statements and conduct by

Defendants is false, misleading, deceptive, or fraudulent. *Id*. Indirect Purchasers allege a

concerted and secret course of conduct whereby Defendants covertly used Agri-Stats to

share confidential information to increase their prices by strategically reducing supply.

*See, e.g.*, IIP, ¶¶ 3, 4, 7, 73, 76, 79, 82, 83, 88, 89-91. To affect this scheme, Defendants

publicly gave false statements and reasons for their actions. CIP, ¶ 132; IIP, ¶ 98 ("In

public earnings calls, defendants made statements regarding their intentions to either

stabilize or decrease supply (although gave false reasons for this stabilization)."). Though

Defendants fault Indirect Purchasers for not saying how Defendants' statements included

---

[35] *See* Mem. at 14, citing to *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126 (9th Cir. 2009) (cause of action arose from fraudulent misrepresentations in advertisements and sales materials); *Witherspoon v. Philip Morris Inc*., 964 F. Supp. 455 (D.D.C. 1997) (fraud claim against tobacco company, based on allegations that company failed to inform public of addictive nature of cigarettes and publicly denied the addictive nature of nicotine); *Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (action based on misrepresentations in advertisements concerning the speed, reliability, and efficiency of software); *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 999 (D. Minn. 2006) (action based on the misrepresentations in advertisements that the scoring of the SAT would be accurate); Am. Orthodontics Corp. v. Epicor Software Corp., 746 F. Supp. 2d 996, 999 (E.D. Wis. 2010) (false misrepresentation case regarding assurances that software would function).

in the complaint are false or deceptive, Indirect Purchasers did allege that the statements are false by the very fact that the statements are untrue or part of a concerted effort to coordinate supply restrictions and raise prices. Just because Defendants say the statements are true (Mem. at n.12), doesn't make them true; especially at the motion to dismiss stage where all well-pleaded allegations must be taken as true.

3.   **Plaintiffs are not required to plead deceptive conduct or reliance under the state laws of the nine states challenged by Defendants, but regardless have sufficiently alleged deception and reliance.**

Related to their misplaced arguments regarding whether the heightened standards of Federal Rule of Civil Procedure 9(b) apply, Defendants also suggest that the statutes of nine states themselves require detailed allegations of deceptive conduct or reliance. Defendants misread the statutes, but regardless, Indirect Purchasers have adequately alleged deception and reliance.

a.   **Arkansas (CIP)**

The Arkansas Deceptive Trade Practices Act ("ADTPA") is construed liberally inasmuch as it was enacted "to protect the interest of both the consumer public and legitimate business community"[36] and merely requires Indirect Purchasers to allege that Defendants engaged in any "unconscionable . . . act or practice," Ark. Code Ann. § 4-88-107(a)(10). Reliance is not an element under the ADTPA.[37] CIPs allege that the price-

---

[36] *Curtis Lumber Co. v. La. Pacific Corp.*, 618 F.3d 762, 780 (8th Cir. 2010); *see also In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1156-57 (N.D. Cal. 2009).

[37] *See, e.g., Moore v. Mack's Sport Shop, LLLP*, No. 4:16-CV-00540-KGB, 2017 WL 4350980, at *3 (E.D. Ark. Sept. 29, 2017) (listing elements of claim, reliance not being one of them); *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 58 (D.N.H. 2015).

fixing conspiracy constituted unconscionable conduct in violation of the ADTPA. *See* CIP, ¶ 213. Courts regularly hold that indirect purchasers' allegations of price-fixing state a claim under the ADTPA's unconscionable prong.[38]

### b. California (IIP/CIP)

IPPs bring a claim under the UCL's "unlawful" prong, alleging that Defendants' violations of California Business and Professions Code section 16720, *et seq.* constitute violations of the UCL. IIP, ¶¶ 323-332; Cal. Bus. & Prof. Code § 17200; *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1107, n.1 (9th Cir. 2013) ("violation of the Cartwright Act [Cal. Bus. & Prof. Code §§ 16700-16770] is, by definition, actionable under the UCL"). Claims based on illegal price-fixing regularly proceed under the UCL and do not "sound in fraud."[39]

Defendants cite *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). However, *Kearns* held that Rule 9(b) applied to that complaint because "plaintiff

---

[38] *See, e.g., In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1072 (S.D. Cal. 2017) (allegations defendants engaged in price-fixing conduct was sufficient for purchasers of such products to plead unconscionable conduct, as required under ADTPA); *In re Auto. Parts Antitrust Litig. ("Auto. Parts I")*, No. 12-md-02311, 2013 WL 2456612, at *24, *26-*27 (E.D. Mich. June 6, 2013); *Chocolate I*, 602 F. Supp. 2d at 583; *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *9 (N.D. Ill. Nov. 5, 2009); *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, No. 14-MD-2508, 2015 WL 5166014, at *28 (E.D. Tenn. June 24, 2015); *Flash Memory*, 643 F. Supp. 2d at 1156-57; *In re Auto. Parts Antitrust Litig. ("Auto. Parts II")*, 29 F. Supp. 3d 982, 1008-09 (E.D. Mich. 2014) (citing *Burton v. Micron Tech., Inc.*, No. CV 2004-226-1 (Cir. Ct. 1st Div. 2009)) (ADTPA based on the plaintiffs' allegation that they were overcharged pursuant to a conspiracy to fix prices on computer chips was allowed to proceed).

[39] *Processed Egg*, 851 F. Supp. 2d at, 894-96; *Auto. Parts*, 2013 WL 2456612, at *28-*29.

allege[d] a unified course of fraudulent conduct and rel[ied] entirely on that course of

conduct as the basis of that claim. In that event, the claim is said to be 'grounded in

fraud' or to 'sound in fraud.'" Indirect Purchasers do not rely entirely on a fraudulent

course of conduct, and instead focus on a price-fixing conspiracy. As the court similarly

stated in *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1072-73

(S.D. Cal. 2017):

> Indeed, [the UCL] explicitly directs that "unfair competition
> shall mean and include <u>any unlawful</u>, <u>unfair</u> or fraudulent
> <u>business act or practice</u>. . . ." (emphasis in original). And
> Defendants' cited cases in response . . . were all subject to
> Rule 9(b) because allegations of fraudulent conduct were
> required to make out the principal claims at issue. *See Kearns
> v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)
> ("[F]raud is not a necessary element of a claim under the
> CLRA and UCL[.]").

Similarly, deception is not required. "To state a claim under the UCL or the FAL 'based

on false advertising or promotional practices, it is necessary only to show that members

of the public are likely to be deceived.'. . . This inquiry does not require 'individualized

proof of deception, reliance and injury."[40] Both complaints sufficiently allege causes of

action under California's unfair competition law. IIP, ¶¶ 323-332; CIP, ¶ 214.

### c.    District of Columbia (IIP/CIP)

Defendants' arguments regarding the consumer protection claims for the District

of Columbia fare no better. "CPPA claims are not held to the heightened pleading

standard of Rule 9(b), and because it is a remedial statute, the Act 'must be construed and

---

[40] *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985-86 (9th Cir. 2015)
(quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 320 (2009)).

applied liberally to promote its purpose.'"[41] "Trade practices that violate other laws, including the common law, also fall within the purview of the CPPA."[42] And Defendants misstate the law – the DCCPPA does not require deceit.[43] Courts have upheld allegations under D.C.'s consumer statute for violations of the antitrust laws, parallel to those under federal law.[44] Here, each of the complaint sufficiently pleads conduct in violation of the D.C. consumer statute. IIP, ¶¶ 333-342; CIP, ¶ 189.

### d.   Michigan (IIP)

IIPs allege that Defendants' price-fixing conduct constituted unfair or unconscionable conduct in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*. ("MiCPA"). IIP, ¶¶ 371-380. MiCPA prohibits "unfair, unconscionable, or deceptive methods, acts or practices," including "charging the consumer a price that is grossly in excess of the price at which similar property or services are sold." Mich. Comp. Laws Ann. § 445.903(1)(z). This definitional section

---

[41] *Frese v. City Segway Tours of Washington, DC, LLC*, 249 F. Supp. 3d 230, 235 (D.D.C. 2017) (quoting *McMullen v. Synchrony Bank*, 164 F.Supp.3d 77, 90-91 (D.D.C. 2016)).

[42] *Packaged Seafood*, 242 F. Supp. 3d at 1073 (quoting *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723 (D.C. 2003)).

[43] D.C. Code § 28-3904 (a violation occurs by any illegal trade practice "whether or not any consumer is in fact misled, deceived or damaged thereby."); *see also Chocolate I*, 602 F. Supp. 2d at 583-84 ("[T]he DCCPPA does not require a showing of concealment or deception to support a claim.") (quoting *Dist. Cablevision Ltd. v. Bassin*, 828 A.2d 714, 723 (D.C. 2003)).

[44] *Packaged Seafood*, 242 F. Supp. 3d at 1073 (holding plaintiffs plausibly alleged violation of federal antitrust law, and therefore denied defendants' motion to dismiss plaintiffs' consumer protection claims under the D.C. statute)

prohibits conduct in violation of the antitrust laws.[45] Here, IPPs allege they paid supra-competitive prices for pork, which is sufficient to state a claim under the MiCPA.[46]

Defendants cite *Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006), which was not an antitrust class action. Mem. at 29. Courts have held that Rule 9(b) only applies to MiCPA claims when the claim is based on fraud.[47] Because IIPs' complaint is not based on fraud and is instead based on Defendants' anticompetitive price-fixing and supply-restraining conduct, this claim should proceed. Regardless, IIPs have sufficiently alleged that Defendants' conduct intended to deceive Michigan consumers of pork by making public statements about why prices were increasing that weren't true. *See, e.g.*, IIP, ¶¶ 3, 4, 7, 73, 76, 79, 82, 83, 88, 89-91, 98, 375.

---

[45] *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503-DJC, 2015 WL 5458570, at *17 (D. Mass. Sept. 16, 2015); *cf.* Mem. at 21 (citing *Packaged Seafood*, 242 F. Supp. 3d at 1076 ("Plaintiffs do not point to a specific provision of the MCPA definitional section covering antitrust violations, and the Court is unable to find one.").

[46] *Solodyn*, 2015 WL 5458570, at *17 (allowing antitrust claims to proceed under MiCPA); *Packaged Seafood*, 242 F. Supp. 3d at 1077-78 ("Indeed, Plaintiffs have alleged that Defendants affirmatively represented that increased prices were caused by various non-conspiratorial circumstances while at the same time concealing a price-fixing conspiracy.").

[47] *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 997 (S.D. Cal. 2014), *order corrected*, No. 11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014) ("Plaintiffs are correct[] that Rule 9(b) is inapplicable to M[i]CPA claims based on breach of warranty rather than fraud . . .").

### e.    New York (CIP)

CIPs bring a claim under New York's Gen Bus. Law § 349 and allege that Defendants conduct was deceptive because they took active measures to conceal their price-fixing activities. CIP, ¶ 222. Courts have allowed this claim to proceed when "the anticompetitive conduct is 'imbued with a degree of subterfuge.'"[48]

### f.    North Dakota (CIP)

Defendants rightly do not challenge IIPs' claim under the North Dakota Unfair Trade Practices Law, N.D. Cent. Code § 51-10-01, et seq., and instead only cite authority challenging the CIPs' claim under the Unlawful Sales or Advertising Practices Statute, N.D. Cent. Code § 51-15-02, et seq. Mem. at 29. Defendants rely on *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 198 (D. Me. 2004), which admits that it reaches its holding by relying on dictum found in *State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901, 905 (N.D. 1986). At least one court has certified a class under N.D. Cent. Code § 51-15-02 in the context of allegations of artificially inflated prices.[49]

---

[48] *See, e.g.*, *In re Auto. Parts Antitrust Litig. ("Auto. Parts IV")*, 50 F. Supp. 3d 836, 859 (E.D. Mich. 2014) (quoting *Leider v. Ralfe*, 387 F.Supp.2d 283, 296 (S.D.N.Y.2005)) (rejecting a § 349 claim where the defendant's conduct was not secretive)); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F.Supp.2d 1129, 1143-44 (N.D. Cal. 2008); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 197 (D. Me. 2004) ("An antitrust violation may violate section 349, but only if it is deceptive.").

[49] *See In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 108 (D. Mass. 2008).

### g.    Rhode Island (IIP)

Indirect Purchasers allege a course of conduct that was deceptive: Defendants acted in secret to stabilize supply to keep prices of pork high. Defendants' practices were likely to mislead reasonable consumers into believing that they were receiving a fair price for pork. IIP, ¶¶ 461-62. "The deception need not be made with intent to deceive; it is enough that the representations or practices were likely to mislead consumers acting reasonably."[50] These claims should proceed. The CIPs withdraw their Rhode Island consumer protection claim. *See* section **Error! Reference source not found.**, *infra*.

### h.    Virginia (IIP)

IIPs allege under Virginia's Consumer Protection Act that Defendants falsely represented the price of pork being based on a competitive market, when, in fact, the prices were the result of the lack of competition among the leading members in the pork market. IIP, ¶¶ 3, 4, 7, 73, 76, 79, 82, 83, 88, 89-91, 98, 495-502. This is sufficient to state a claim.[51]

### i.    Wisconsin (CIP)

CIPs bring a claim under the Wisconsin Consumer Protection Statutes, Wisc. Stat. § 100.18, *et seq*. Wisconsin's law prohibits "untrue, deceptive or misleading" statements

---

[50] *Long v. Dell, Inc.*, 93 A.3d 988, 1003 (R.I. 2014).

[51] *See, e.g., Nigh v. Koons Buick Pontiac GMC, Inc*., 143 F. Supp. 2d 535, 553 (E.D. Va. 2001) ("The misrepresentations providing the basis of a VCPA claim need not be pled with the same kind of particularity as common law fraud claims.").

and is interpreted broadly.[52] Plaintiffs allege that Defendants affirmatively

misrepresented that their prices were competitive and fair. CIP, ¶ 230.[53] These allegations

state a violation of the WDTPA.[54]

### 4. CIPs withdraw their Missouri and Rhode Island consumer protection claims.

Defendants' argue that CIPs' claims fail under the consumer protection statutes of

Missouri and Rhode Island because they do not have statutory standing. Mem. at 20.

CIPs withdraw their Rhode Island and Missouri consumer protection claims.

### 5. Antitrust claims are actionable under the state consumer protection statutes of Arkansas, Illinois, Michigan, Minnesota, South Dakota and Utah.

Defendants incorrectly argue that plaintiffs' antitrust claims are not actionable

under the consumer protection statutes of Arkansas, Illinois, Michigan, Minnesota, South

Dakota and Utah. Mem. at 20-21.

### a. Arkansas (CIP)

The Arkansas Deceptive Trade Practices Act ("ADTPA") is construed liberally

inasmuch as it was enacted "to protect the interest of both the consumer public and

legitimate business community," *Curtis Lumber Co. v. La. Pacific Corp.*, 618 F.3d 762,

---

[52] *See, e.g.*, *Winkelman v. Kraft Foods, Inc.*, 693 N.W.2d 756, 762-63 (Wis. Ct. App. 2005); *Tim Torres Enters. v. Linscott*, 416 N.W.2d 670, 676 (Wis. Ct. App. 1987).

[53] "CIP" refers to the Commercial Food Preparers' First Amended and Consolidated Class Action Complaint, filed Aug. 17, 2018.

[54] *See Wisconsin v. Abbott Labs.*, 829 N.W.2d 753, 761-62 (Wis. Ct. App. 2013) (drug manufacturers violated WDTPA by reporting artificially inflated drug prices, which caused Medicaid to overpay for drugs).

780 (8th Cir. 2010).[55] The ADTPA merely requires Indirect Purchasers to allege that

Defendants engaged in any "unconscionable … act or practice," Ark. Code Ann. § 4-88-

107(a)(10). CIPs allege that the price-fixing conspiracy constituted unconscionable

conduct in violation of the ADTPA. See CIP Compl 213. Courts regularly hold that

indirect purchasers' allegations of price-fixing state a claim under the ADTPA's

unconscionable prong.[56]

### b.    Illinois (IIP)

Defendants cite *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 993 (1990) and

*Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228, 230 (1996), for the proposition

that consumers cannot bring claims under the Illinois Consumer Fraud Act for alleged

concerted, artificial price inflation by Defendants. Mem. at 21. "*Laughlin*, however, is

silent as to the situation here: whether consumers can elect to pursue a remedy under the

Consumer Fraud Act where the Illinois Antitrust Act may also provide relief."[57]

---

[55] *See also Flash Memory*, 643 F. Supp. 2d at 1156-57.

[56] *See, e.g., In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1072 (S.D. Cal. 2017) (allegations defendants engaged in price-fixing conduct was sufficient for purchasers of such products to plead unconscionable conduct, as required under ADTPA); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456612, at *24, 26-27 (E.D. Mich. June 6, 2012); *Chocolate I*, 602 F. Supp. 2d at 583; *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *9 (N.D. Ill. Nov. 5, 2009); *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, No. 14-MD-2508, 2015 WL 5166014, at *28 (E.D. Tenn. June 24, 2015); *Flash Memory*, 643 F. Supp. 2d at 1156-57; *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1008-09 (E.D. Mich. 2014) (citing *Burton v. Micron Tech., Inc.,* No. CV 2004-226-1 (Cir. Ct. 1st Div. Nov. 6, 2009)) (ADTPA based on the plaintiffs' allegation that they were overcharged pursuant to a conspiracy to fix prices on computer chips was allowed to proceed).

[57] *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1048 & n.12 (N.D. Ill. 2007) (allowing Illinois Consumer Fraud claim to proceed and recognizing that "no other

Regardless, IIPs also bring a claim under Illinois's Antitrust Act. IIP, ¶¶ 200-206.

### c.    Michigan (IIP/CIP)

Defendants suggest that antitrust claims are not actionable under Michigan's consumer protection laws. Mem. at 21.  Here, IPPs allege that Defendants' price-fixing conduct constituted unfair or unconscionable conduct in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et seq. ("MiCPA"). IIP, ¶¶ 371-380. MiCPA prohibits "unfair, unconscionable, or deceptive methods, acts or practices," including "charging the consumer a price that is ***grossly in excess*** of the price at which similar property or services are sold." Mich. Comp. Laws Ann. § 445.903(1)(z). An overcharge suffered due to a violation of the antitrust laws falls within the ambit of this statute.[58] Here, IIPs allege they have paid supra-competitive prices for pork, which is sufficient to state a claim. IIP, ¶¶ 134-39; CIP, ¶¶ 137-145

### d.    Minnesota (IIP/CIP)

CIPs bring a claim under Minnesota's Uniform Deceptive Trade Practices Act ("MUDTPA"), Minn. Stat. §§ 325D.43–.48. CIP ¶ 194. IIPs bring a claim under Minnesota's Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.69(1). IIP, ¶¶ 381-90. Defendants argue that antitrust claims are not actionable under Minnesota's consumer protection statutes. Mem. at 21.

---

Illinois appellate court has adopted such a broad view of *Laughlin*'s holding other than *Gaebler*).

[58] *See In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503-DJC, 2015 WL 5458570, at *17 (D. Mass. Sept. 16, 2015).

The CFA and MUDTPA "reflect[] "'clear legislative policy encouraging aggressive prosecution of statutory violations' and therefore, 'are generally very broadly construed to enhance consumer protection.'"[59] Minnesota courts have ruled that these statutes support a cause of action by any person injured as a result of prohibited acts, as long as that cause of action benefits the public, and even if that person did not purchase the defendant's goods.[60]

### e.    South Dakota (CIP)

CIPs' antitrust-based claim in actionable under South Dakota's Deceptive Trade Practices Act.[61]

### f.    Utah (IIP)

Defendants challenge IIPs' claim under Utah's Consumer Sales Practices Act ("UCSPA"). Mem. at 21, 36. The UCSPA is to be construed liberally "to protect consumers from suppliers who commit deceptive and unconscionable sales practices." Utah Code Ann. § 13-1-2(2). Any "unconscionable act or practice by a supplier in connection with a consumer transaction violates th[e] act" (*id*. § 13-11-5), and "[i]f it is claimed or appears to the court that an act or practice may be unconscionable, the parties shall be given a reasonable opportunity to present evidence as to its setting, purpose, and

---

[59] *Sheet Metal Workers*, 737 F. Supp. 2d at 414 (quoting *Kinetic v. Medtronic*, 672 F.Supp.2d 933, 945 (D. Minn. 2009)).

[60] *Id*. (citing *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000); *see also Group Health Plan v. Philip Morris*, 621 N.W.2d 2, 8-9 (Minn. 2001) (original emphasis).").

[61] *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 229 (S.D.N.Y. 2012); *see* S.D. Codified Laws § 37-24-6(1).

effect to aid the court in making its determination[.]" *Id.* § 13-11-5. In light of this, IIPs' claim under the UCSPA should be allowed to proceed at this stage.[62]

### 6.    Monetary damages are recoverable in Minnesota and California.

Defendants argue that the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA") prohibits recovery of monetary damages and should therefore be dismissed. Mem. at 22. Though this is true, CIPs seek injunctive relief under various state laws, including Minnesota. *See* CIP, ¶¶ 8, 157, 217. As the District Court of Minnesota has said when faced with an identical protestation, "[t]he fact that [the MUDTPA] does not provide for monetary damages is irrelevant to the issue of whether the Plaintiffs have stated a claim upon which relief could be granted."[63] Accordingly, this claim should not be dismissed for failure to state a claim.

Defendants concede, as they must, that California's UCL provides for monetary relief in the form of restitution. Mem. at 22. Relying only on *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 947 (Cal. 2003), Defendants contend that Indirect Purchasers do not and cannot state a UCL claim because they did not pay any money directly to any Defendant. However, this exact argument has been rejected:

> [Defendant] places great weight on the word "directly" in the
> [*Korea Supply* quote], and argues that because Plaintiffs, as

---

[62] *Packaged Seafood*, 242 F. Supp. 3d at 1087 (finding plaintiffs stated a claim under the UCSPA "given that the UCSPA is to be liberally construed to protect consumers – including permitting presentation of evidence if it appears an act even *may* be unconscionable – and that Plaintiffs here plausibly allege affirmative misrepresentations regarding and concealment of the alleged conspiracy[.]").

[63] *Force v. ITT Hartford Life & Annuity Ins. Co.*, 4 F. Supp. 2d 843, 857 (D. Minn. 1998).

010736-11 1082396 V2

> indirect purchasers, did not pay any money directly to [defendant], Plaintiffs cannot recover restitution under the UCL. However, as noted above, it was clear in *Korea Supply* that the plaintiff did not pay any money, even indirectly, to the defendant. In *Korea Supply*, the defendant's conduct merely caused the plaintiff to lose an opportunity to obtain a commission it would have received if a third party had awarded a contract to its client. Although the court mentions that "direct victims" of unfair competition may obtain restitution[,] the issue of whether someone who pays money to a defendant through an intermediary would be precluded from seeking restitution was not before the court in *Korea Supply*. Therefore, this Court will not read such a limitation into the holding of *Korea Supply*.

*In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1103 (N.D. Cal. 2007) (internal citation omitted).[64] Because Defendants have made no colorable argument for dismissal and Indirect Purchasers' ownership interest in the money they paid for pork products supports a proper request for restitution under the UCL, these claims should be allowed to proceed.[65] Additionally, IIPs allege a violation of the Cartwright Act, *see e.g.*, IIP, ¶ 187, which may be used as a predicate act under the UCL and which permits recovery by indirect purchasers. IIP, ¶¶ 189, 193.

---

[64] *See also Pulaski*, 802 F.3d at 986 ("restitution is available on a classwide basis once the class representative makes the threshold showing of liability under the UCL and FAL."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 159 (E.D. Pa. 2009) ("The defendants point to no authority that would otherwise bar a suit under the UCL by indirect purchasers, and the Court will, therefore, deny their motions to dismiss this claim on this basis.").

[65] *See In re Abbott Labs. Norvir Anti-Tr. Litig.*, No. C 04-1511 CW, 2008 WL 11394207, at *2 (N.D. Cal. July 8, 2008) ("the Court holds that the UCL permits indirect purchasers to obtain restitution for conduct made unlawful by federal antitrust law.").

7.      **Indirect Purchasers adequately allege intrastate conspiratorial activity.**

Defendants argue Indirect Purchasers fail to allege sufficient intrastate conduct in

Florida, Massachusetts, New Hampshire, New York, North Carolina, and Wisconsin.

Mem. at 23. Defendants are incorrect when they argue that the conduct must occur

exclusively within one state in order to bring the claim. A complaint alleging a

nationwide antitrust or consumer protection violation satisfies "intrastate" pleading

requirements so long as the impact of the conduct was felt within each state.[66] In *Digital*

*Music*, the court found allegations that defendants "produced, licensed, distributed and/or

sold" Internet Music in all of the listed states and defendants' conduct was "in a

continuous and uninterrupted flow of intrastate and interstate commerce throughout the

United States" to be sufficient to pass muster.[67] Similarly, Indirect Purchasers'

allegations of a nationwide antitrust conspiracy involving the sale of Defendants' pork *in*

*each state* at supracompetitive prices is likewise sufficient to allege "intrastate"

conduct.[68] Both CIPs and IIPs allege that Defendants sold their pork products in every

state and that residents of those states who purchased Defendants' pork products were

---

[66] *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 408 (S.D.N.Y. 2011) (collecting cases with similar nationwide allegations that have survived this argument); *see also In re Liquid Aluminum Sulfate Antitrust Litig.*, No. CV 16-MD-2687 (JLL), 2017 WL 3131977, at *24 (D.N.J. July 20, 2017).

[67] *Digital Music*, 812 F. Supp. 2d at 407-08.

[68] *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997) ("If the statute is limited today as it once was to commerce that is not within the regulatory power of Congress under the commerce clause, it is a dead letter because there are virtually no sales, in Alabama or anywhere else in the United States, that are intrastate in that sense.").

harmed as a result of Defendants' conspiratorial conduct in that specific state, even though the conspiracy was also nationwide and did not occur in any one state alone.

### a. Florida (IIP/CIP)

Defendants' cited authority is not in contradiction with Plaintiffs' theory. In *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012), the court was concerned that the complaint did not contain "sufficient specificity for the location of the conduct giving rise to the FDUTPA claim," explaining that the location where demands for prepayments were made was significant. Here, the conduct that gives rise to Indirect Purchasers claims is their purchases of Defendants pork products in the state of Florida at artificially inflated prices. *See, e.g.*, IIP, ¶¶ 19, 151(e), 348, 350; CIP, ¶¶ 22, 215. The infringing conduct does not have to occur exclusively within the state to bring a FDUTPA claim; instead, FDUTPA seeks redress for those injured within the state, regardless of whether the same conduct occurred elsewhere.[69] "There is simply no language in the FDUTPA implying a limitation of its scope to harm taking place within Florida alone. Rather, the Act proscribes unfair and unconscionable business practices 'in the conduct of any trade or commerce[.]' Fla. Stat. § 501.204(1)."[70]

---

[69] *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 162 (E.D. Pa. 2009) ("FDUTPA may apply to the named plaintiffs' claims as relate to the reimbursement of purchases of Wellbutrin XL in Florida.")

[70] *Sheet Metal*, 737 F. Supp. 2d at 408-09; *cf. In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 1:14-MD-2508, 2015 WL 5166014, at *34 (E.D. Tenn. June 24, 2015) (citing *Karhu v. Vital Pharm., Inc.*, No. 13-cv-60768, 2013 WL 4047016, at *9-*10 (S.D. Fla. Aug.9, 2013)) ("a claim can be brought by out-of-state residents under the FDUTPA as long as "the offending conduct took place predominantly or [exclusively] in Florida").

b.      **Massachusetts (IIP/CIP)**

In determining whether the conduct occurred "primarily and substantially" in

Massachusetts, courts look to three factors: "(1) where the defendant engaged in unfair or

unscrupulous conduct; (2) where the plaintiff was on the receiving end of the unfair or

unscrupulous conduct; and (3) the situs of plaintiff's losses due to the unfair and

unscrupulous conduct."[71] Defendants engaged in trade and commerce in Massachusetts

by selling their products throughout the state at artificial and noncompetitive prices

through their scheme that restrained trade. IIPs include a Massachusetts resident who

purchased Defendants' pork products in Massachusetts where he simultaneously suffered

a monetary loss due to Defendants' unfair conduct. IIP, ¶ 15. The CIPs Damages Class

includes the same type of entities that purchased Defendants' pork products in

Massachusetts and suffered monetary loss as a result of Defendants unfair conduct. CIP,

¶¶ 158, 216. These same allegations were found to be sufficient in *Auto. Parts II*, 29 F.

Supp. 3d at 1010-11. The burden of proof shall be upon the person claiming that such

transactions and actions did not occur "primarily and substantially" in Massachusetts.

M.G.L., c. 93A, § 11; *Zyla v. Wadsworth, Div. of Thomson Corp.*, 360 F.3d 243, 255 (1st

Cir. 2004). Here, Defendants have that burden and they have not met it.

---

[71] *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 24 (1st Cir. 2003) (citing *Roche v. Royal Bank of Can.*, 109 F.3d 820, 829 (1st Cir. 1997)); *see also Weber v. Sanborn*, 502 F. Supp. 2d 197, 199 (D. Mass. 2007) ("The inquiry is made on a case-by-case basis on the facts presented.").

### c.     New Hampshire (IIP/CIP)

Defendants marketed and sold their pork products in New Hampshire, and Defendants' illegal conduct substantially affected New Hampshire commerce. CIP, ¶ 220; IIP, ¶¶ 12, 418-19. Furthermore, pork purchasers in New Hampshire were substantially affected through the purchase of the pork products at artificially inflated and noncompetitive prices. CIP, ¶ 220; IIP, ¶¶ 12, 418-19. These allegations are sufficient to satisfy the in-state requirement.[72]

### d.     New York (CIP)

CIPs allege that Defendants raised and maintained the prices of pork products throughout New York, and deprived purchasers in New York of free and open competition, causing them to pay artificially inflated prices. CIP, ¶ 222. Conversely, in Defendants cited authority, *see* Mem. at 24, plaintiffs made "no allegation that any deceptive conduct" occurred in New York. That is simply not the case here because CIPs pleaded an intrastate commercial impact and, therefore, this claim should be sustained.[73]

---

[72] *See, e.g.*, *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, No. Civ. No. 12-169, 2013 WL 5503308, at *22 (D.N.J. Oct.2, 2013) ("courts interpreting New Hampshire's consumer protection law disagree as to whether a nationwide scheme in which the plaintiffs pay a higher price in the state is sufficient to satisfy the statute's requirement."); *In re Chocolate Confectionary Antitrust Litig.* (*Chocolate II*), 749 F. Supp. 2d 224, 234-35 (M.D. Pa. 2010) ("The . . . complaint avers that defendants colluded to fix the price of chocolate products that were then introduced into the New Hampshire market [which], at the very least, had indirect effects on the New Hampshire market and its residents.").

[73] *See Propranolol*, 249 F. Supp. 3d at 728; *Auto. Parts II*, 29 F. Supp. 3d at 1006; *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1173 (N.D. Cal. 2015).

e.      **North Carolina (IIP/CIP)**

North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA") itself does not contain or mandate a "substantial effects" analysis; it is a judicially created element.[74] Indirect Purchasers allege that Defendants sold their products in North Carolina and that IIPs and CIPs purchased their products in North Carolina at artificially inflated prices. IIP, ¶¶ 36, 112-119, 435-41; CIP, ¶¶ 201, 223. These allegations are sufficient to state a claim under the NCUDTPA.[75]

f.      **Wisconsin (CIP)**

"Under Wisconsin's antitrust act, a plaintiff bringing a claim must allege that the conduct complained of "substantially affects" the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state."[76] CIPs allege that, because of Defendants affirmative

---

[74] *See The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F.Supp. 494, 501 (M.D.N.C.1987) (finding that the UDPTA is not available "to a foreign plaintiff suing a resident defendant over alleged foreign injuries having a negligible effect, if any, on North Carolina trade or commerce.").

[75] *See Propranolol*, 249 F. Supp. 3d at 728; *Lidoderm*, 103 F. Supp. 3d at 1173-74 ("Here, [plaintiff] has alleged in-state injury and that defendants' products were being sold in North Carolina. That is sufficient at this juncture to state a claim under the NCUDTPA."); *Auto. Parts IV*, 50 F. Supp. 3d at 860-61(finding allegations that "IPPs were harmed by paying supracompetitive, artificially inflated prices" for Bearings was sufficient); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 541 (E.D. Pa. 2010) (denying motion to dismiss NCUDTPA claim because plaintiffs alleged defendants "sold large amounts of Flonase within the state, including to [p]laintiffs, at artificially inflated prices.")

[76] *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005); *Sheet Metal Workers*, 737 F. Supp. 2d at 402 ("The Wisconsin Supreme Court has expressly ruled that the Act applies to interstate commerce").

misrepresentations made in Wisconsin as to the prices of pork, CIPs were misled into believing they were buying pork at fair and competitive prices. CIP, ¶ 230. These allegations are sufficient.[77]

## G.    Plaintiffs adequately allege claims for unjust enrichment.

### 1.    Plaintiffs' more than adequately satisfy the requirements for pleading unjust enrichment.

Plaintiffs' factual allegations plausibly support their theory of recovery under principles of unjust enrichment in all the jurisdictions enumerated in the complaints. That is all Rule 8 requires. Defendants' arguments that the Plaintiffs have "failed" to plead unjust enrichment – because (1) they did not re-recite all the factual predicates in the "Unjust Enrichment" count of the IIP Complaint and (2) they did not list the elements of unjust enrichment in each state – do not provide a basis to dismiss the actions.[78] They instead elevate irrelevant form over the notice pleading requirements in the Rules.

---

[77] *See In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 666 (E.D. Mich. 2000) ("the Wisconsin antitrust statute applies to illegal [nationwide] conspiracies that are alleged to have restrained trade in Wisconsin").

[78] Contrary to Defendants' unsupported statement that the law of unjust enrichment varies widely, courts have held the opposite. *See Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011) ("Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state."); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (2009) ("While there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict."); *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Penn. 2007) ("At the core of each state's [unjust enrichment] law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state."), *rev'd on other grounds*, 328 Fed. Appx. 121 (3d Cir. 2009).

Under Rule 8, Plaintiffs need not list the elements of a given claim; they need only "include sufficient factual allegations to provide the grounds on which the claim rests."[79] Plaintiffs need not include legal theories or requests for relief in their complaint at all. In fact, as long as the pleading does not deny Defendants the opportunity to make "a realistic appraisal of the case," Rule 54(c) requires courts – even *at final judgment* – to "grant the relief to which each party entitled, even if the party has not demanded that relief in its pleadings."[80] Thus, as long as the facts support *any* theory of recovery, the failure to outline every conceivable legal theory and its elements cannot lead to dismissal.

Nor does pleading unjust enrichment as a separate count mean Defendants can casually ignore supporting facts asserted elsewhere in the Complaints. The use of counts to identify various legal theories merely assists the court "in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules."[81]

---

[79] *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

[80] *See Baker v. John Morrell & Co.*, 382 F.3d 816, 831-32 (8th Cir. 2004)(affirming post-verdict amendment under Rule 54(c) to add claim under state civil rights statute, which permitted recovery to exceed cap imposed under Title VII theory alone); *see also Hatmaker v. Memorial Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) (stating that *Twombly* and *Iqbal* "do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories"); *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 997 (N.D. Ill. 2013) ("If there is another theory under which the same set of facts would entitle the plaintiff to relief, then dismissal of the complaint is improper.").

[81] *NAACP v. Am. Family Mut. Ins. Co.,* 978 F.2d 287, 292 (7th Cir.1992); *see also Volling*, 999 F. Supp. 2d at 996 (noting that defendants' attacking of the complaint "count by count" on motion to dismiss "tends to obscure the critical difference between 'claims,' which explain the plaintiff's grievance and demand relief, and 'counts,' which describe legal theories by which those facts purportedly give rise to liability and damages.").

### 2. Plaintiffs' Invocation of "Unjust Enrichment" Rubric Satisfies California, Mississippi, New Hampshire, and Illinois Law.

Rule 12 does not ask whether certain words or phrases are considered "causes of action." Rather, it asks only whether Plaintiffs' factual allegations suffice to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). And again, Rules 8 and 54 equally eschew magic words and prolix legal analyses in pleadings. Thus, whether a state considers unjust enrichment an independent cause of action or a theory of recovery makes no difference in pleading an action.

**California** law, for instance, describes unjust enrichment as a remedy typically sought in a quasi-contract cause of action, and "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution."[82] California recognizes that a plaintiff adequately pleads such a quasi-contract claim – for which unjust enrichment is a remedy – when an indirect purchaser seeks the return of the benefits defendants received as a result of antitrust conduct.[83] Thus, despite the fact that California has not called unjust enrichment an independent tort does not make dismissal proper.

Even more perplexing is Defendants' citation to *Gen. Insulation Co. v. Eckman Const.*, 992 A.2d 613, 621 (N.H. 2010). Although that case notes that **New Hampshire**

---

[82] *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotations omitted); *see also Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1016 n.15 (D. Minn. 2012) (Tunheim, J.) ("To the extent that some California courts appear to reject claims for unjust enrichment, these decisions improperly focus on semantic disputes over the facial characterization of the cause of action.").

[83] *Packaged Seafood*, 242 F. Supp. 3d at 1093.

does not consider unjust enrichment to form an independent basis for a cause of action,"
it clearly held, "[r]estitution and quantum meruit recovery based upon '*unjust enrichment
are allowed* by the courts as alternative remedies to an action for damages for breach of
contract.'" *Id.* at 620. As demonstrated above, whether unjust enrichment is a moniker
used to describe a theory of liability or a theory of recovery makes absolutely no
difference in the quest to determine whether Plaintiffs have stated a claim.[84]

Defendants are simply wrong about **Mississippi**. They cite *Cole v. Chevron USA,
Inc.*, 554 F. Supp. 2d 655, 671 (S.D. Miss. 2007), as their sole authority for asserting that
**Mississippi** does not recognize unjust enrichment as an independent compensable tort.
With due respect to the court's decision, "Contrary to *Coleman* and its federal progeny
[including *Cole*], however, there is a *substantial body of Mississippi case law* that treats
unjust enrichment as a separate cause of action."[85]

Finally, Defendants do not dispute that unjust enrichment is a viable theory under
**Illinois** law. They merely dispute the plausibility of the general conspiracy allegations,
which Plaintiffs have adequately addressed above.

---

[84] *See Chocolate II*, 749 F. Supp. 2d at 240 (rejecting dismissal of indirect purchasers'
unjust enrichment claim under New Hampshire law, where "unjust enrichment is an
equitable remedy") (citations omitted).

[85] *In re Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d 183, 194 (D.
Me. 2010) (emphasis added) (collecting seven Miss. S. Ct. decisions contradicting *Cole*);
*see also Processed Egg*, 851 F. Supp. 2d at 913 ("there is considerable authority that
supports the existence of an independent state law claim for unjust enrichment" in
Mississippi).

### 3.    Because Direct Benefit Does Not Mean Direct Payment, Plaintiffs' Fact Allegations Satisfy the Benefit Element of Unjust Enrichment.

Defendants' entire argument that Plaintiffs have not alleged that they provided a "direct benefit" arises solely from an inapt play on the words "indirect purchasers." Just because Plaintiffs did not purchase their pork from Defendants "directly," as that term is understood in *antitrust* law, does not mean they failed to confer a direct benefit on Defendants as contemplated by *unjust enrichment* law. In *Processed Egg*, defendants argued that the unjust enrichment law of several of the states at issue here requires a direct payment to the defendant from the plaintiff.[86] The court acknowledged some of these jurisdictions' use of the phrase "direct benefit," but the court determined that those states' precedents still found a direct benefit in the *absence of a direct relationship or direct payment*, where the benefit conferred was not merely "incidental."[87]

Thus, each of the ten states identified by Defendants has recognized unjust enrichment in cases such as this, where a benefit flows from a plaintiff to a defendant, even where there was no direct payment or direct relationship.[88] Plaintiffs have adequately alleged facts supporting a "direct benefit" here.

---

[86] *Processed Egg*, 851 F. Supp. 2d at 927-28.

[87] *Id.* at 928-36; *see also Auto. Parts II*, 29 F. Supp. 3d at 1015-16 (antitrust defendants could be considered unjustly enriched by indirect purchaser plaintiffs, despite phrase "direct benefit" in certain states); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1189-90, 1192-93 (N.D. Cal. 2009) (same).

[88] *See Brown v. Pinnacle Restoration LLC*, No. 1 CA-CV 12-0550, 2013 WL 3148654, at *2-*3 (Ariz. Ct. App. June 18, 2013) (**Arizona**; supporting Plaintiffs' view despite Defendants' citation to it); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222 (Fla. Dist. Ct. App. 2005), and *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011) (**Florida**);

### 4.    Plaintiffs Need Not Have Pled a "Special Duty."

There is no requirement in South Carolina or Illinois that a defendant owes a "special duty" to an unjust-enrichment plaintiff. To recover on a South Carolina unjust enrichment claim, a plaintiff need only show: (1) a benefit conferred upon the defendant by plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for it to retain the benefit.[89]

Defendants rely on *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464-65 (D. Md. 2005), for their special-duty argument under South Carolina law, but *Microsoft* misinterpreted the South Carolina Supreme Court's decision in *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (S.C. 2000), and *Microsoft* has been subsequently criticized on that basis.[90] And the reason the unjust enrichment claim failed in *Pitts v. Jackson Nat'l Life Ins. Co.* was because the unjustness of the defendant's conduct was expressly premised on the purported duty of an insurer to inform an

---

*Peterson v. Midland Nat'l Bank*, 747 P.2d 159, 166-67 (Kan. 1987) (**Kansas**); *Auto. Parts II*, 29 F. Supp. 3d at 1020, and *Everest v. Leviton Mfg. Co.*, No. CV-04-612, 2006 WL 381832, at *4 (Me. Super. Jan. 13, 2006) (**Maine**); *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 323 (D. Mass. 2005) (**Massachusetts**); *Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*, 504 N.W.2d 635, 640-41 (Mich. 1993), and *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904-905 (Mich. Ct. App. 2006) (**Michigan**); *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916 (N.C. 1992) (**North Carolina**); *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2014 WL 2993753, at *35 (E.D. Mich. July 3, 2014) (**North Dakota**); *Emergency Physicians Integrated Care v. Salt Lake Cty.*, 167 P.3d 1080, 1085 (Utah 2007) (**Utah**); *Midwestern Midget Football Club Inc. v. Riddell, Inc.*, No. CV 2:15-00244, 2016 WL 3406129, at *8 (S.D.W. Va. June 17, 2016) (**West Virginia**).

[89] *Ellis v. Smith Grading & Paving, Inc.*, 366 S.E.2d 12, 15 (S.C. Ct. App. 1998).

[90] *See In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 14-md-2508, 2015 WL 5166014, *37 (E.D. Tenn. June 24, 2015); *Auto. Parts II*, 29 F. Supp. 3d at 1026.

applicant of the availability of a superior product, which duty "does not exist in South Carolina."[91] To the contrary, generally "[t]here is no requirement to allege a duty" under South Carolina unjust enrichment law.[92] But certainly Defendants here had a duty not to cause antitrust injury, which is painstakingly alleged in the Complaints.

Similarly, under Illinois law "there is no duty or privity requirement when bringing a claim for unjust enrichment."[93] Defendants rely on *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920 (Ill. App. Ct. 2009), to support their argument. But *Martis* relied on a series of cases involving a narrow category of harm-to-the-public claims. And *Martis*'s mistaken expansion of this narrow principle has since been sharply criticized. As the Illinois Appellate Court recently explained, "*Martis* is not an accurate statement of the law on the equitable claim for unjust enrichment."[94] The court there held that the unjust enrichment claim failed because it was not unjust for the bus company to refuse to contribute to a settlement because an insurance policy excused its duty to do so. But just as in *Pitts*, that does not graft a general "duty" element onto an unjust enrichment claim, it simply shows why the conduct was not unjust in that case, under related state

---

[91] *Pitts v. Jackson Nat'l Life Ins. Co.*, 74 S.E.2d at 511-12 (S.C. Ct. App. 2002).

[92] *See Auto. Parts II*, 29 F. Supp. 3d at 1026.

[93] *Sobel v. Franks*, 633 N.E.2d 820, 829 (Ill. App. Ct. 1994) (citing *M.J. McCarthy Motor v. Van C. Argiris & Co.*, 396 N.E.2d 1253 (Ill. App. Ct. 1979)).

[94] *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1042-43 (Ill. App. Ct. 2015). Defendants also rely on *Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv.*, 67 N.E.3d 556, 570 (Ill. App. Ct. 2016).

law. Again, Defendants indisputably have a "duty" not to conspire to reduce supply, which Plaintiffs plausibly allege they did.

### 5. The Federal Rules Allow Plaintiffs to Plead Unjust Enrichment in the Alternative, Even if State Procedural Rules Are Different.

Rule 8 allows Plaintiffs to plead unjust enrichment in the alternative to remedies at law.[95] Because Plaintiffs have pled unjust enrichment in the alternative, they do not need to demonstrate that they have no adequate legal remedy or that they have exhausted their legal remedies.[96] Defendants' argument to the contrary flies in the face of the Court's obligation to apply federal procedural rules, not those of the various states.[97] Defendants also cite no authority in any state asserting that the legal remedies are exclusive.[98]

---

[95] Fed. R. Civ. P. 8(d)(2); *In re Levaquin Prod. Liab. Litig.*, 752 F. Supp. 2d 1071, 1081 (D. Minn. 2010) (denying judgment on the pleadings under Rule 8(d)(2) for unjust enrichment where plaintiff chose to plead remedies at law and pled equitable remedies only in the alternative).

[96] Defendants appear to invoke an alleged failure to exhaust legal remedies in their argument heading, but do not make any actual argument in support of that bald assertion. ECF No. 165 at 47-48. Even so, such an argument would ignore Plaintiffs' allegations that it would be futile for them to assert any remedial claim against the immediate intermediary in the chain of distribution because such entities are not liable and cannot reasonably be expected to compensate them for Defendants' unlawful conduct. CIP, ¶ 242; *see also*, *e.g.*, *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W. 3d 512, 515 (Tenn. Aug. 25, 2005) ("[T]o maintain an action for unjust enrichment, a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile.").

[97] *See In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prod. Liab. Litig.*, 288 F. Supp. 3d 1087, 1258-59 (D.N.M. 2017) (holding, because state laws regarding exhaustion and no adequate remedy serve only to eliminate duplicative pleading, dismissal of unjust enrichment claims pled in the alternative would run afoul of *Shady Grove Orthopedic Ass'n v. Allstate Ins. Co.*, and by extension *Erie R.R. v. Tompkins*, which requires application of federal procedural law).

[98] *See Light Cigarettes*, 751 F. Supp. 2d at 193 (holding that dismissal of unjust enrichment pleading was improper where state legal remedies were not exclusive).

## III.    CONCLUSION

For all the reasons stated above, Defendants' joint motion to dismiss the state law claims of the Indirect Purchasers should be denied.

DATED: November 30, 2018

| <u>s/ Steve W. Berman</u> | <u>s/ Shawn M. Raiter</u> |
|---|---|
| STEVE W. BERMAN | SHAWN M. RAITER |

Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO
455 N. Cityfront Plaza Drive, Ste 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
beth@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Britany N. Resch (#0397656)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
bresch@gustafsongluek.com

Shawn M. Raiter (MN# 240424)
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6518
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Blaine Finley
Yifei "Evelyn" Li
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cunelolaw.com

*Co-Lead Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs*

*Co-Lead Counsel for Consumer Indirect*
*Purchaser Plaintiffs*

010736-11 1082396 V2