# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Case No. 0:18-cv-01776-JRT-HB |
| This Document Relates To: <br><br> All Actions | **JOINT STATUS REPORT AND LETTER BRIEF** |

## JOINT STATUS REPORT AND LETTER BRIEF

Pursuant to the Court's Minute Entry on November 21, 2018 (Dkt. 214) and Order on December 10, 2018 (ECF No. 232), the parties in these cases submit this joint status report and letter brief laying out the parties' positions on any remaining disputed provisions in the ESI Protocol.

## I.   SUMMARY OF AGREEMENTS REACHED

***Holding Companies***:  Without waiving any of their rights or otherwise conceding that they are not proper Defendants in this action, Plaintiffs have agreed to defer discovery with respect to Hormel Foods, LLC, JBS USA Food Company Holdings, Mitsubishi Corporation (Americas), and Seaboard Corporation pending resolution of Defendants' motions to dismiss.  Defendants have represented that this agreement will in no way whatsoever be raised or referred to in connection with Defendants' motions to dismiss.  In the event said motions are not granted, all four will promptly move forward with discovery-related tasks relating to these entities.

***Relevancy Redactions***:  The parties have further agreed to slight edits to clarify Judge Bowbeer's proposed relevancy redaction language in Section II(K)(2) of the ESI Protocol.  The agreed language is as follows below.  The parties have included the language of this revised proposal in Exhibit A.

*II(K)(2): Redactions of Nonresponsive Highly Confidential Business Information: A producing Party may redact specific highly confidential business information relating to non-pork businesses provided (1) the redacted information is both nonresponsive and irrelevant; and (2) the redacted information would not assist in understanding or providing context for the relevant portion of the document or document family of which it is a part. Such redactions must be identified as "Redacted – Highly Confidential Nonresponsive Information."*

## II.   RULE 34 REQUESTS FOR PRODUCTION

The parties have agreed to limit the Requests for Production that they will meet and confer upon 32 of the 46 requests for production propounded by Plaintiffs (deferring 14 such requests until after a decision on the motions to dismiss).  Those Requests that will be deferred are All Plaintiffs' Request Numbers 9, 12-13, 18, 28-30, 35-39 (served November 1, 2018) and Indirect Purchaser Plaintiffs' Request Numbers 5-6 (served November 1, 2018).  However, the parties disagree regarding precisely what the scope and form of those discussions will be, so each party's position is provided below.

1

_Plaintiffs' Position:_  Plaintiffs believe the only practical way to proceed is that after the parties have initial discussions and meet and confers regarding the Requests for Production is for Defendants to then serve written objections and responses to Plaintiffs' Requests for Production.  Plaintiffs propose that initial meet and confers regarding the Rule 34 requests take place no later than February 8, 2019, and that written objections and responses to the 32 requests be provided no later than February 22, 2019.

_Defendants' Position:_  Defendants propose to meet and confer collectively on the scope of the 32 requests to the extent possible without prejudice to (1) Defendants providing individual written responses and objections following the ruling on the motions to dismiss and (2) further negotiations once Document Custodians are identified, documents are collected and reviewed, and the burdens of document discovery are ascertained.  Defendants propose the meet-and-confer discussions regarding the 32 RFPs begin following oral argument on the motions to dismiss on January 10, 2019. Defendants believe that there are global concerns about scope that can be negotiated on a group-wide basis while individual concerns will materialize after the rulings on the motions to dismiss that the parties can address at that time.  Defendants' proposal balances the delay concerns raised by the Plaintiffs with Defendants' concerns regarding efficiencies and burdens.  Specifically, while Defendants are committed to meeting and conferring with Plaintiffs regarding the scope of the 32 requests for production, requiring Defendants to provide individual written responses and objections now would be inefficient because it would require Defendants to caveat all of their responses due to the unknown scope of the case prior to the rulings on the motions to dismiss.  Further, once the motion to dismiss rulings are issued, Defendants would be forced to redo all of their individual responses and objections, regardless of the outcome of the ruling, which would likely lead to yet another round of meet and confer sessions.  This repetitive, expensive do-over process is exactly what occurred in the _Broiler_ case and is what the Defendants here sought to avoid through the Motion to Stay.

## III.   OUTSTANDING ISSUES RELATING TO ESI PROTOCOL

Although the parties have met-and-conferred in good faith and have substantially narrowed the areas of dispute as to the remaining portions of the ESI Protocol, the following issues remain:[1]

### A.   Time Period (¶ V (A)(1), Ex. A at p. 1):

_Plaintiffs' Position:_ Plaintiffs propose a provision limiting the processing of discoverable information to that which was created, modified, sent, or received between January 1, 2007 and June 30, 2018 (with the exception of structured data, for which the parties will meet and confer upon regarding a reasonable time period).  Defendants'

---

[1] Attached to this filing as Exhibits A and B, respectively, are the agreed-upon provisions of the ESI Protocol and a chart identifying the issues still in dispute.

request to wait to negotiate a start date until after receiving a ruling on the motions to dismiss will result in a needless slowdown of discovery. Although the hearing for Defendants' motions to dismiss is a month away, a decision may not be issued until almost a year later. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 822 (motion to dismiss denied ten months after defendants' filing); *Ferrari v. Best Buy Co., Inc.*, No. 14-cv-2956, 2014 WL 11498023, at *1 (D. Minn. Dec. 4, 2014) (motion to dismiss denied eight months after defendants' filing).

In any event, a decision on the motions to dismiss will not determine the relevant time period for discoverable information. Even if the Court finds that the statute of limitations tolls the time period for damages, the time period with respect to the relevant liability information remains unaffected. The acts that took place prior to the damages period still remain relevant to the events that occurred during the damages period. *See* Fed. R. Evid. 401 (relevant evidence admissible if "it has any tendency to make a fact more or less probable"). As the Court emphasized at the November 21, 2018 hearing, the scope of relevant and discoverable documents will hardly be affected by a decision to narrow the case. Hearing Tr. (Nov. 21, 2018) at 38-40, 47. Moreover, adopting Plaintiffs' proposed period will impose little burden on Defendants, since Plaintiffs have already agreed to defer the collection, processing, review, and production of documents until after the ruling on Defendants' motions to dismiss.

It is important to set a time period now so that the parties may be confident in knowing what data must be kept and that each party has taken the effective steps to keep such data. Hearing Tr. (Nov. 21, 2018) at 47. Defendants have already agreed to an end date of June 30, 2018 so that it does not make sense to delay setting a start date at this point of the litigation. Because Defendants have declined to negotiate regarding the provision that Plaintiffs propose, Plaintiffs ask the Court to enter Plaintiffs' proposal regarding the start date for limiting the processing of discoverable information.

*__Defendants' Position:__* The parties have agreed that June 30, 2018 is an appropriate end-date for the processing of discoverable information. Thus, the only remaining dispute between the parties is regarding the appropriate start date. The Defendants believe that such a date should be finalized within thirty days of a ruling on the pending motions to dismiss, as those motions may have significant implications for the relevant time period and the scope of the allegations at issue. For example, the Court could rule that Plaintiffs have pled a plausible conspiracy only for a time frame significantly shorter than what they have claimed—an outcome that is entirely possible given the paucity of Plaintiffs' allegations. Separately, Defendants have strong statute of limitations arguments that could limit the relevant time frame for certain discovery. Plaintiffs have argued that even if the damages period is truncated, they may still be entitled to a longer "look-back" period. Even if that were true, Defendants would have a compelling argument in such a circumstance that under Federal Rule of Civil Procedure 26(b)(1), it would not be proportional to the needs of the case to require Defendants to

3

produce *eleven* years of documents where Plaintiffs are entitled to no more than *four* years of damages. In short, by asking the Court to set a date now, Plaintiffs are essentially asking the Court to validate their allegations regarding the relevant period—an issue very much in dispute. Were the Court to indulge their request, Defendants would be put in the inequitable position of having to seek a court order to alter Plaintiffs' proposed start date down the road. Given the possibility (and in Defendants' view, the high likelihood) that the relevant time frame will be significantly impacted by the rulings on the motions to dismiss, Defendants believe it would be prejudicial to their interests to set a discovery start date at this time. To be clear, Defendants are not asking the Court to set a start date or to pre-judge the issue. Defendants merely ask the Court to defer a decision until after the motions to dismiss are decided.

### B.    Commencement of Document Custodian and Source Discussions (¶ V (A)(2)(a), Ex. A at p. 1):

*Plaintiffs' Position:* Defendants have indicated that they are not willing to negotiate document sources, including document custodians and non-custodial document sources, at this time. Plaintiffs disagree and believe potential Document Custodians and other document sources are ripe for discussion. Identifying specific individuals and other sources now will avoid prejudice to Plaintiffs by reducing potential preservation issues. And it is work that needs to be undertaken by the Defendants regardless, to ensure proper preservation. Plaintiffs are simply requesting that they have the opportunity now to address custodians and sources, and to ensure that the parties are in agreement on the reasonable limits of productions. To that end, because the parties have agreed to move forward and discuss the proposed scope of productions in response to 32 of the document requests, the parties necessarily must also discuss custodians and non-custodial document sources. For example, Defendants may propose to respond to some requests (for example, those requests asking for contracts) by pointing to a centralized source. For others, productions might come from custodial files. Without allowing Plaintiffs to also negotiate in tandem what those sources and custodians are, Plaintiffs will be hamstrung in their negotiation of the appropriate responses to these document requests. It will also result in inefficiencies and redundancies in the discovery process that has the potential to increase costs and prevent progress. Moreover, because the entire twelve-year time period will be relevant even if the scope of damages is narrowed by a decision on the motions to dismiss, it is unlikely that document sources will need to be limited after the order is issued. Plaintiffs believe these items should be discussed among the parties and the Court now.

*Defendants' Position:* Consistent with their arguments in support of their motion to stay discovery, Defendants believe that substantive negotiations on document custodians and sources should await the outcome of the motions to dismiss. In the interim, and consistent with the Court's direction at the November 21 status conference, Defendants are prepared to begin a discussion with Plaintiffs about Defendants'

organizational structure and employees, using the organizational charts already produced by Defendants, so that Defendants can ensure that the appropriate preservation steps have been taken.  Additionally, Defendants are willing to discuss, at a high level, the types of documents that are maintained (and will be preserved) without undertaking the burdensome task of trying to catalogue their entire ESI structures.  As described above, the pending motions to dismiss have significant implications for the parties' document custodians and sources, particularly as to the relevant time frame. Indeed, some or all of the Defendants may be dismissed.  Defendants' position is guided by this Court's instruction that such discussions will help ensure the preservation of potentially responsive documents, while at the same time not requiring Defendants to "go into every file cabinet and search in every corner of the company" to identify document sources at this early stage. *See* Nov. 21 Tr. 47:2-6; 45:19-24.  It would be extremely costly to canvass historic ESI systems to identify document custodians and sources from 11 years ago, and Defendants seek to avoid this considerable expense given that the need for such historic information may well be obviated by the ruling on the motions to dismiss.

### C.    Document Custodian Cell Phone Data (¶ V (E)(1)(a), Ex. A at p. 4):

*Plaintiffs' Position:* Plaintiffs propose a provision detailing: (1) information about a Document Custodian's cell phone that should be disclosed prior to culling of cell phone data, (2) the sources of information on the cell phone, including cell phone call and voicemail logs and text messages, and (3) relevant contacts on the cell phone that should be exported into an appropriate spreadsheet.  Disclosing such identifying information for Document Custodians' cell phones would help facilitate an efficient discovery process and ensure all pertinent data remains preserved and available for review by Defendants as well as third party providers.  This is especially important because cell phone data could reveal relevant admissions or other information about pork-related products or views of the products and their pricing.  The Court recently sanctioned a party for the insufficient production of important text messages which denied the plaintiff's access to "highly probative evidence" in a way that was "obviously prejudicial."  *First Fin. Sec., Inc. v. Lee*, No. 14-CV-1843 (PJS/SER), 2016 WL 881003, at *5-7 (D. Minn. Mar. 8, 2016). Here, similarly, certain cell phone data such as text messages, call and voicemail logs, and contact information are relevant and cannot be replaced through other potential discovery.

Defendants' proposal is too vague and does not clearly define the scope of each producing party's obligations with regard to identifying relevant cell phone data and their sources.  As such, Defendants' proposal would not only risk spoliation of important evidence, but also opens the door to further discovery disputes over data production.  The Court should therefore reject Defendants' proposal in favor of a more detailed disclosure protocol governing Document Custodian cell phone data.

*Defendants' Position:* Defendants have already imaged or taken other reasonable steps to preserve the devices of executives identified by Plaintiffs' as potentially relevant.

Thus, there is no preservation concern here.  Also, Defendants have committed to ensuring that reasonably available sources of cellphone data are considered potential sources of data subject to discovery. Defendants are not willing, however, to commit to detailed disclosures about each custodians' cell phone prior to ascertaining how cell phones were used by each custodian or before even searching and reviewing the devices within their possession, custody, or control. Plaintiffs are not entitled at this time to the "discovery on discovery" that they are requesting—especially prior to any sign of material failure on the part of the Defendants to preserve the subject material. As clearly emphasized in the Sedona Principles, "neither a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations…". *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 118, 120 n.97 (2018) (collecting cases). Plaintiffs' attempts to micromanage Defendants' discovery procedures only add unnecessary costs, delay, and conflict to an already burdensome process.  The parties can appropriately negotiate customized culling methodologies for cell phone data after the boundaries of the case are determined by a ruling on the motions to dismiss.

### D.   Social Media Data (¶ V (E)(2), Ex. A at p. 4):

*Plaintiffs' Position:* Plaintiffs propose a provision for identifying and producing Social Media communications in the case where a Document Custodian has used Social Media for business purposes or to communicate regarding a subject relevant to the Litigation.  Social Media is no different from other potentially relevant evidence and should be preserved and produced in the same way as documents and ESI.  Given the ubiquitous nature of social media, it is important to include this topic in the ESI Protocol to ensure all relevant content is preserved and produced.  Failure to explicitly address Social Media Data as part of the ESI Protocol can lead to confusion and spoliation, even if unintentional.  *See Katiroll Co., Inc. v. Kati Roll & Platters, Inc.*, No. 10-3620 (GEB), 2011 WL 3583408, at *4 (D.N.J. Aug. 3, 2011) (because plaintiff did not explicitly request that defendant preserve his Facebook account, it was not immediately clear to the defendant that changing his Facebook profile picture would constitute destruction of evidence and thus prejudice the plaintiff).  Because Defendants have declined to negotiate regarding the provision that Plaintiffs propose, Plaintiffs ask the Court to enter Plaintiffs' proposal regarding identifying and producing Social Media communications in the absence of any counter-proposal from Defendants.

*Defendants' Position:* Defendants are under an obligation to take reasonable steps to preserve data relevant to the claims and defenses in the case that are within their respective possession, custody or control. This includes Defendants' social media data. Defendants have further committed to evaluate and consider their social media as a potential source of data subject to discovery.  Plaintiffs seek to impose more onerous and amorphous requirements at this early stage that put the onus on Defendants to assume

control of their employees' social media data. But that, too, is inconsistent with the Sedona principles, which make clear that "Courts do not hold that corporate defendants have the ability to obtain their employees' private data from social media sites, and an employer's demand for this information from an employee may be viewed as improper or coercive." *See The Sedona Conference Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control"*, 17 Sedona Conf. J. 467, 524–25 (2016). Defendants will consider social media data as a potential source of discoverable data to the extent that such data is reasonably accessible, is used for work purposes, contains relevant information, and is within the Defendants' possession, custody or control. Defendants oppose any additional obligations as to social media data. Defendants note that social media data is also already addressed in paragraph V(E)(1)(a) of the proposed ESI Protocol.

### E.    Other: Search Methodology Disclosures:

*Plaintiffs' Position:* Defendants refuse to discuss in any way Plaintiffs' proposed ESI Disclosures or Search Methodology Order. Plaintiffs believe that is not what the Court intended and Defendants are simply delaying progress on these topics. Defendants have also indicated that they are not willing to negotiate document sources, including document custodians and non-custodial document sources, at this time. For the reasons stated above, Plaintiffs disagree and believe potential document custodians and other document sources are ripe for discussion. Plaintiffs request the Court's guidance so these discussions can move forward.

*Defendants' Position:* Pursuant to the Court's instructions, the parties have already negotiated and agreed upon processes to govern the negotiation of a search methodology order as laid out in Section V(C) of the ESI Protocol. Plaintiffs now seek to reach beyond what the Court instructed the parties to do at this earlier stage, continuing to insist that the parties actively negotiate actual, substantive search methodologies for the search and review of custodial and non-custodial unstructured data. Defendants cannot meaningfully engage in such negotiations until they understand the scope of discovery. In particular, without an understanding of the relevant time period, identifying appropriate document custodians, and identifying appropriate data sources—items that can only be determined after the Court has established the boundaries of the case—Defendants cannot fully appreciate data volumes, nuanced data formats, and substantive content to properly determine (1) the appropriate search methodology (*e.g.,* search terms, TAR, etc.); (2) the best e-discovery tools and resources for their document/data collections; and (3) the types of disclosures that can be made about the process. Therefore, even establishing potential umbrella principles for disclosures to search hypothetical data sources is impractical and premature and would likely necessitate a complete "do over" after the rulings on the motions to dismiss. Defendants instead propose having these methodologies negotiated within 30 days of a ruling from the Court.

In support of the position that the parties need not nail down these issues at this early stage, Defendants note that the Court is still considering what, if any, efforts the parties will be required to undertake pending the outcome of the motions to dismiss. *See, e.g.,* Nov. 21 Tr. at 45:4-47:14 and 54:23-55:8 (document sources is a longer conversation that the Court is not going to put the parties through a "two week drill" on). While the Court may order the parties to confer on these issues, such discussions, if any, will be guided by the limitations set in forthcoming Court Orders. *See, e.g., Id.* at 55:14-24. In any event, these are not issues on which the Court has directed the parties to meet-and-confer and report to the Court by December 10. *See* Dkt. Nos. 213, 214, and 226.

## IV.   AGRI STATS'S DEPARTMENT OF JUSTICE DOCUMENTS

*Plaintiffs' Position:*

**Relevance**: Agri Stats admits that documents relating to pork exist within this set of documents. To address this Court's concerns regarding relevance of the entirety of the set of documents, Plaintiffs proposed to Agri Stats that they jointly work together to create a list of search terms to apply to the documents, which would include (1) synonyms and variations of the word pork; and (2) synonyms and variations of the names of the defendants (excepting Agri Stats). Plaintiffs also proposed that Agri Stats would produce the totality of any custodian who had duties relating solely to Pork. (Plaintiffs asked Agri Stats to identify these custodians, which it did not do so by the time of the joint letter.) Plaintiffs' proposed compromise would allow Agri Stats to produce a limited set of highly relevant documents while the joint motions to dismiss is pending. Plaintiffs propose that the remainder of the documents would be produced after the denial of Agri Stats's motions to dismiss.

**Burden**: Agri Stats has failed to articulate anything other than a minimal burden associated with review and production. For of course, this is not a normal production. In the normal course of discovery, custodians would be identified, documents collected and uploaded to a review platform, search terms run, a privilege review conducted, and then finally, a production to plaintiffs. Here, these documents have already undergone all these steps – multiple times.

Agri Stats negotiated custodians with the DOJ (there were 32 individual custodians in total).[2] The documents have since been reviewed and produced twice. First, in connection with the productions to the DOJ, these documents were reviewed and produced by counsel – the same firm representing Agri Stats as in this case. Agri Stats produced the same documents a second time to the Plaintiffs in the *In re Broiler Chicken*

---

[2] *See* Declaration of Habin Chung, Esq. in Support of Defendant's Motion for Protective Order, Ex. 1 at 3, *In re Broiler Antitrust Litigation*, No, 16-cv-08637 (N.D. Ill. May 18, 2018), ECF No. 895.

*Antitrust Litigation*. Although Agri Stats declined to answer Plaintiffs' questions, presumably these documents are still being hosted by Agri Stats on a review platform for use in the *Broiler* litigation, given that depositions are occurring in that case on a near-weekly basis. The fact that they are already being hosted on a platform would make the application of search terms and production of a subset of the documents a minimal burden. Regardless, even if Agri Stats started anew and hosted the documents on a new platform, the burden would still be minimal. Plaintiffs contacted a vendor, and for a production this size (44 GB), it would cost approximately $1,100 per month to load and host the documents.

Given the size of the collection, only 20,000 documents, after the application of pork-related search terms, any review and production would cause Agri Stats minimal burden, and production would be easily accomplished. Agri Stats has already reviewed these documents multiple times for privilege (prior to the previous productions), or if not, has certainly waived any such claims.[3] Agri Stats was unable to identify for Plaintiffs the percent of documents which might be related to pork, or any indication of the number of custodians who worked in pork related tasks, making a specific quantification of the hourly review burden by Plaintiffs impossible. But this emphasizes the point that to the extent there is any burden associated with production, Agri Stats has failed to carry its burden.

**Timing**: Agri Stats has taken the position that <u>none</u> of these documents should be produced until after the motions to dismiss have been denied. But these documents relate to the heart of Plaintiffs' allegations regarding Agri Stats' functioning as the data clearinghouse for this conspiracy. This is not a set of documents on the periphery which might be impacted by a nuanced ruling on the motions to dismiss. Similarly, the relevance would not change even if the motions to dismiss against one of the individual defendants were granted. All the pork producer defendants subscribed to the Agri Stats reports and, therefore, these reports would be relevant even if the case survived against only a single defendant. And beyond the relevance to the merits of the case itself, these documents will also assist Plaintiffs in their other negotiations with defendants, such as the negotiations of custodians. The Agri Stats documents may well identify those

---

[3] Agri Stats confirmed to Plaintiffs that it reviewed the documents for privilege prior to the DOJ production. Agri Stats would neither confirm nor deny that it reviewed the document set a second time for the *Broiler* litigation. Presumably, it conducted a review. If it did not, privilege has been waived. *See Irth Solutions, LLC v. Windstream Commc'n LLC*, No. 16-cv-219, 2017 WL 3276021, at *14 (S.D.Ohio Aug. 2, 2017) (finding that producing party waived privilege because it did not take reasonable steps to prevent disclosure and producing the documents *twice*.); *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc*., No. 11 Civ. 3543(WHP), 2014 WL 2116147, at *1 (S.D.N.Y. May 14, 2014) (finding that privilege had been destroyed where producing party did "not appear to have conducted any privilege review[.]").

employees at the pork producers who were tasked with production of data, who received the Agri Stats reports, and who may have requested custom information from Agri Stats about the industry.  These additional pieces of information will benefit all parties, including defendants, by allowing Plaintiffs to focus their discovery requests, and to more efficiently proceed with negotiations over the scope of productions.

Respectfully, Plaintiffs request that this Court order production of the DOJ materials, consistent with the above proposal or, in the alternative, permit Plaintiffs to bring a motion to compel pursuant to Federal Rule of Civil Procedure 37.

*Defendants' Position*:

**Relevance:** No processor defendant produced documents to DOJ related to pork products during DOJ's 2010 to 2012 investigation. DOJ's investigation focused primarily on chicken and on the growing side of the business. Only four of the over two dozen employees from whom Agri Stats ultimately produced documents, however, appear to have had responsibilities related to pork during the relevant time period. Documents that Agri Stats produced to DOJ in relation to the chicken industry are not relevant to Plaintiffs' lawsuit or the pork industry. Moreover, DOJ affirmatively closed its investigation of Agri Stats after a thorough inquiry, without taking any action against the company. *See* Oct. 3, 2012 DOJ Closing Letter (Ex. 4 to Reply in Support of Mot. to Stay). Although DOJ's long-closed investigation has little relevance to Plaintiffs' lawsuit, in the interest of compromise, Agri Stats offered to conduct a thorough search of the DOJ production for relevant documents, in the event that Defendants' motion to dismiss is denied. Agri Stats' proposal would enable the parties to "hit the ground running" and complete the agreed-upon search, review, and production quickly once the motion to dismiss is resolved. The proposal is as follows:

- Produce all non-privileged, responsive documents from Agri Stats' DOJ production for the four document custodians with responsibilities related to pork.

- Use the search methodology the parties ultimately agree upon for Agri Stats' response to Plaintiffs' discovery requests to search the remainder of Agri Stats' DOJ production and produce all non-privileged, responsive documents captured by that search methodology.

In contrast, Plaintiffs demand that Agri Stats produce *all* of the documents produced to DOJ, regardless of whether they relate to pork or Plaintiffs' requests for production. However, as the Court recognized at the hearing on the motion to stay, Plaintiffs are not entitled to documents that are not relevant to their lawsuit. The mere existence of a protective order in this case does not mean that Agri Stats should be deprived of a reasonable opportunity to review its internal documents and communications before producing only the relevant materials to Plaintiffs. That analysis

does not change simply because the documents were collected as part of a government inquiry. *Cf. In re Graphics Processing Units Antitrust Litig*., 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007) ("[T]he compelled act of turning records over to the government pursuant to the subpoena does not mean that everyone else has an equal right to rummage through the same records."). Although most document custodians in the DOJ investigation have no relevance to Plaintiffs' claims or the pork industry whatsoever, Agri Stats is willing to search and review all of those materials using the plan set forth above in the interest of reaching a compromise solution.

**Burden:** Executing the above plan now, before resolution of the motion to dismiss, would be inefficient and counterproductive. The parties have generally agreed to stay the search, review, and production of documents from all other document sources at issue in this lawsuit. With the input of the Court, the parties have agreed that incurring such costs now, prior to the resolution of the motion to dismiss, would be inefficient. For example, particular document requests or search terms may no longer be relevant if the motion is granted in part, and document discovery would be unnecessary altogether if the motion is granted in full. Moreover, production of documents now violates a fundamental principle of the Federal Rules – namely, that the ticket to discovery is not the filing of a complaint but the assertion of facts actually stating a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) ("it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence to support a § 1 claim") (internal quotes omitted).

Agri Stats has segregated and preserved the documents it produced to DOJ. The only portion of discovery costs that Agri Stats would *not* ultimately need to incur with respect to the DOJ documents are collection costs. Agri Stats would be required to host 44 gigabytes of data (approximately 370,000 pages of documents), filter the documents using a search methodology (which could change after resolution of the motion to dismiss), review the documents for relevance, and then process the documents for production. The costs of collection are a fraction of these larger costs of search, review, and production. If Defendants' motion to dismiss is denied, Agri Stats would have to go through this same search, review, and production process again for the remainder of its document production – a process the parties have agreed to stay, with good reason. Agri Stats should not have to endure that process multiple times. It would be far more efficient to complete the search, review, and production of documents from *all* Agri Stats' document sources simultaneously, once the motion to dismiss is resolved.

In contrast, Plaintiffs' proposal is inexplicably inefficient. Plaintiffs demand that Agri Stats conduct an extensive search and review of the DOJ production now, only to be followed by production of the remainder of the entire DOJ production (the bulk of which is irrelevant, as discussed above) after the motion to dismiss is resolved. This proposal

achieves no purpose other than imposing needless costs and burdens on Agri Stats prior to resolution of the motion to dismiss.

Agri Stats cannot precisely estimate the costs of executing its proposed plan now, prior to resolution of a search methodology to identify the documents that are potentially responsive to Plaintiffs' requests. However, the costs likely would be in the tens of thousands of dollars – a substantial cash outlay for Agri Stats, a small data company that does not sell pork or chicken. Agri Stats is willing to incur these costs should it ultimately become necessary to do so, but Agri Stats should not incur them now given that the parties have agreed to stay such efforts for all other document sources. This is particularly true because the ultimate search methodology employed for Agri Stats' document sources (including search terms, for example) depends on the scope of Plaintiffs' claims after the motion to dismiss is resolved.

Agri Stats can complete its production of DOJ documents promptly after resolution of the motion to dismiss, should that be necessary. Plaintiffs have identified no reason why these documents must be produced now, or any other reason why they would be prejudiced by Agri Stats' proposal. In contrast, Plaintiffs' demand that Agri Stats produce *all* documents produced to DOJ – and produce them *immediately* – imposes an unreasonable and premature burden on Agri Stats.

Dated: December 12, 2018

s/ Brian D. Clark
W. Joseph Bruckner (MN #0147758)
Elizabeth R. Odette (MN #0340698)
Brian D. Clark (MN #0390069)
Arielle S. Wagner (MN #0398332)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com
aswagner@locklaw.com

Bruce L. Simon
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
T: (415) 433-9000
F:  (415) 433-9008
bsimon@pswlaw.com

Daniel L. Warshaw
Bobby Pouya
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T: (818) 788-8300
F: (818) 788-8104
dwarshaw@pswlaw.com
bpouya@pswlaw.com

Melissa S. Weiner (MN #0387900)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
T: (612) 389-0600
F: (612) 389-0610
mweiner@pswlaw.com
*Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

s/ Steve W. Berman
Steve. W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO
455 N. Cityfront Plaza Drive, Ste 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
beth@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Britany N. Resch (#0397656)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
bresch@gustafsongluek.com

*Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs*

13

*s/ Shawn M. Raiter*

Shawn M. Raiter (MN# 240424)
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
T: (651) 312-6518
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Blaine Finley
Yifei "Evelyn" Li
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
T: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cunelolaw.com

*Co-Lead Counsel for Commercial and
Institutional Indirect Purchaser Plaintiffs*

Date: December 12, 2018

/s/ Mark L. Johnson
Mark L. Johnson (#0345520)
Bethany Krueger (#0306368)
Virginia R. McCalmont (#0399496)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
bkrueger@greeneespel.com
vmccalmont@greeneespel.com
Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
Christina Briesacher (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
christina.briesacher@kirkland.com

*Counsel for Clemens Food Group, LLC
and The Clemens Family Corporation*

/s/ Richard A. Duncan
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegrebd.com
aaron.vanoort@faegrebd.com
craig.coleman@faegrebd.com
emily.chow@faegrebd.com
isaac.hall@faegrebd.com
bryan.washburn@faegrebd.com

*Counsel for Hormel Foods Corporation
and Hormel Foods, LLC*

/s/ Jaime Stilson
Jaime Stilson (#392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 492-6746
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert E. Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William H. Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation
and Mitsubishi Corporation (Americas)*

/s/ Donald G. Heeman
Donald G. Heeman (#286023)
Jessica J. Nelson (#347358)
Randi J. Winter (#391354)
Daniel R. Haller (#396497)
FELHABER LARSON
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
(612) 339-6321
dheeman@felhaber.com
jnelson@felhaber.com
rwinter@felhaber.com
dhaller@felhaber.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
Robert P. Vance, Jr. (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
bobbyvance@quinnemanuel.com

*Counsel for JBS USA Food Company and
JBS USA Food Company Holdings*

/s/ William L. Greene
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
Jon M. Woodruff (#0399453)
STINSON LEONARD STREET LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
john.woodruff@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LEONARD STREET LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

*Counsel for Seaboard Foods, LLC and Seaboard Corporation*

/s/ John A. Cotter
John A. Cotter (134296)
John A. Kvinge (0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

*Counsel for Smithfield Foods, Inc.*

/s/ Aaron Chapin
Aaron Chapin (#6292540)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL  60606
(312) 655-1500
aaron.chapin@huschblackwell.com

Gene Summerlin (*pro hac vice*)
Marnie Jensen (*pro hac vice*)
Ryann Glenn (*pro hac vice*)
Kamron Hasan (*pro hac vice*)
Quinn Eaton (*pro hac vice*)
Sierra Faler (*pro hac vice*)
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154
(402) 964-5000
gene.summerlin@huschblackwell.com
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com
kamron.hasan@huschblackwell.com
quinn.eaton@huschblackwell.com
sierra.faler@huschblackwell.com

*Counsel for Triumph Foods, LLC*

/s/ David P. Graham
David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
AXINN, VELTROP &
HARKRIDER LLP
950 F Street, N.W.
Washington, D.C. 20004
(202) 912-4700
radcox@axinn.com
trider@axinn.com

*Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.*

<u>/s/ *Peter H. Walsh*</u>
Peter H. Walsh (# 388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3000
F. (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Jennifer A. Fleury (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com

*Counsel for Agri Stats, Inc.*