# Exhibit A to December 12, 2018, Status Letter: Additional Agreed Upon ESI Protocol Provisions

**II(K)(2):** Redactions of Nonresponsive Highly Confidential Business Information: A producing Party may redact specific highly confidential business information relating to non-pork businesses provided (1) the redacted information is both nonresponsive and irrelevant; and (2) the redacted information would not assist in understanding or providing context for the relevant portion of the document or document family of which it is a part. Such redactions must be identified as "Redacted – Highly Confidential Nonresponsive Information."

## IV.   ESI METADATA FORMAT AND PROCESSING ISSUES

### D.   Email Collection and Processing:

2.   **Email Domains:**  To the extent a Party opts to exclude uniquely identifiable email domain names (e.g., emails from domains typically associated with junk or irrelevant topics like sports, fantasy team competitions, retailer advertising, and newsletters or alerts from non-industry sources) as part of its initial filter of potentially responsive documents, the Parties agree to disclose domain names excluded under this paragraph and to meet and confer on the timing for such disclosures.

## V.   PARAMETERS FOR CULLING AND REVIEWING ESI AND PAPER DOCUMENTS

### A.   General Provisions:

1.   **[Disputed Provision—Time Period]**

2.   **Meet and Confer:**

   a.   **[Disputed Provision—Commencement of Custodian Discussions]**

   b.   If the Parties cannot reach agreement under the provisions of this Section V, any dispute may be presented to the Court. All meet and confer sessions under this Section V will involve each Party's respective ESI Liaison and will give appropriate consideration to minimizing expense.

3.   **Non-Waiver:**  The Parties' discussion of proposed search terms, Document Custodians or Sources does not preclude a Party from

requesting additional search terms, Document Custodians or Sources pursuant to the terms of this ESI Protocol Order, nor does it preclude a Party from objecting to any such additional requests.

B.  **Document Custodians and Sources:**

1.  **Initial Document Custodians and Sources**:  The Court will issue a separate order addressing the timing, process, and procedure for negotiating and disclosing Document Custodians and Sources.

2.  **Additional Document Custodians or Sources:**  If, after the initial Document Custodian and Source negotiations and order described in the preceding paragraph, a Requesting Party determines that additional Document Custodians or Sources should be added, then the Requesting Party shall advise the Producing Party in writing of the proposed additional Document Custodians or Sources and the basis for the request.  If the Parties have not agreed whether to add the Document Custodian or Source within 21 days of the Requesting Party's request, then the Parties may bring the matter to the Court via motion within 21 days or the issue is waived, unless the parties agree to defer resolution of the issue.  The parties shall raise disputed Document Custodians or Sources via a joint letter brief not to exceed five pages split equally between Plaintiffs and Defendants.

3.  Except by agreement of the Parties or by order of the Court, a Producing Party is not required to add Document Custodians or Sources after the deadlines identified in paragraphs V(B)(1).

C.  **Search Methodology**

1.  **Use of Search Terms to Cull Unstructured ESI:**

    a.  The Parties may use search terms and other limiters, including, by way of example only, date ranges and email domains in metadata fields, as a means of limiting the volumes of information to be reviewed for responsiveness. To the extent that search terms are used to identify responsive ESI, a Producing Party will notify the Requesting Party of its intent to use search terms and disclose to the Requesting Party (1) an initial list of search terms the Producing Party intends to use and (2) whether the Producing Party intends to use different search terms with different Document Custodians or Sources.  The Parties will meet and confer in good faith regarding the disclosure and formulation of

appropriate search terms and protocols to cull unstructured ESI.

b. **Addition or Removal of Search Terms After Initial Search Term Negotiation:**  If, after the completion of the initial search methodology negotiations, a requesting or producing Party determines that any search terms should be added to or removed from the initial search term list, then the requesting or producing Party shall advise the affected Parties in writing of the proposed change(s) to the search term(s) and of the reason(s) for the proposed change(s).

c. Except by agreement of the Parties or by order of the Court, a Producing Party is not required to add search terms after completion of the process described in paragraph V(C)(1)(a).

2. **Use of Technology Assisted Review or Other Advanced Technology-Based Analytics to Cull Unstructured ESI:**

a. **Use of TAR:**  A Party may use Technology Assisted Review ("TAR") to sort documents for linear review without disclosure of that use.  If a Party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, the parties will meet and confer regarding the following parameters that will apply to the use of TAR.

    i. **Paper Documents:**  The Parties agree to meet and confer to determine whether paper documents may be included in a TAR process.

    ii. **The TAR Tool:**  A Producing Party shall describe to a Requesting Party the vendor and the TAR technology or tool being used, including a description of the TAR tool's procedures.

b. A Producing Party need not conduct any additional review of information subjected to, but not retrieved by, a TAR tool as part of the identification of the subset of information that will be subject to review and production.

D. **Structured Data:**  To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably

usable and exportable electronic file for review by the Requesting Party. Upon review of the report, the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

E.   **Custodial Cellphone & Personal Communications Data:**

1.   **Cellphones:**  For Document Custodians agreed on by the Parties or ordered by the Court, a Producing Party will take reasonable steps to identify whether any unique responsive communications are located on any cellphones in the possession, custody, or control of the Producing Party.   Unless agreed otherwise, the following shall govern the identification of unique, responsive, and non-privileged communications for cellphone-based data for the agreed or ordered Document Custodians with respect to cellphones in the possession, custody, or control of the Producing Party.

     a.   [**Disputed Provision—Procedures for Custodial cellphone and other data**]

2.   [**Disputed Provision—Social Media Data**]