IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK PROCESSING ANTITRUST LITIGATION | No. 0:18-cv-01776-JRT-HB |
| This Document Relates To : <br><br> ALL ACTIONS | **REPLY MEMORANDUM OF LAW IN SUPPORT OF CLEMENS FOOD GROUP, LLC'S AND THE CLEMENS FAMILY CORPORATION'S MOTION TO DISMISS** |

Plaintiffs do not dispute that there are no allegations that Clemens:

   (1) bought or processed fewer hogs,

   (2) reduced its pork supply when it could have increased it, or

   (3) closed any plants.

Quite the opposite. Plaintiffs admit that by opening the Coldwater, Michigan processing facility in 2017, Clemens ***doubled its capacity and market share*** from 2009-2017. *See* IIP Compl. ¶ 118 (Figure 5). This was no small task: it cost hundreds of millions of dollars and took years to complete. Compl. ¶ 84. It makes no sense for Clemens to spend so much to grow supply—at the expense of its competitors' market shares—if it was part of a supply reduction conspiracy. For Clemens, Plaintiffs have pled themselves out of Court.

1

## ARGUMENT

### I. CLEMENS' PARTICIPATION IN THE CONSPIRACY IS IMPLAUSIBLE

#### A. Plaintiffs Allege Clemens *Grew*—Not *Cut*—Supply

Plaintiffs cannot reconcile their supply-reduction claim with their admission that Clemens grew its supply. Their only response is that:

> Clemens increasing *its* capacity does not detract from the purpose and effect of the whole of the conspiracy, of which it is a part. Dkt. 230 at 18.

In fact, it does detract. Plaintiffs allege a supply-*reduction* conspiracy; increasing supply is its antithesis. *Kleen Prod. LLC v. Georgia-Pac. LLC*, 2018 WL 6423941, at *7 (7th Cir. Dec. 7, 2018) (holding that company's "supply behavior" contradicts a supply reduction conspiracy because its mill purchase "allowed it to *increase* its production capacity"). Indeed, Plaintiffs allege Defendants were concerned a competitor would add capacity and "drive the margins lower." Compl. ¶¶ 124-25. Clemens' actions to increase production capacity contradict the alleged signals to reduce supply. Plaintiffs' self-defeating allegations cannot meet their pleading burden. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (holding that even allegations merely "consistent with" a conspiracy—much less *inconsistent* with that conspiracy—fail).

That is particularly true because Plaintiffs do *not* argue Clemens failed to run Coldwater at full capacity or delayed its opening. Rather, the facts as pled show Clemens growing its supply, nothing else. Plaintiffs have, thus, "plead [themselves] out of court" by relying on documents "that indicate that [they are] not entitled to relief." *M.M. Silta, Inc. v. Cleveland-Cliffs, Inc.*, 2008 WL 11349885, at *4 (D. Minn. Dec. 1, 2008).

Plaintiffs finally argue in a single sentence that the Court should not consider the Coldwater facility. Dkt. 230 at 18. This, too, is wrong. *Plaintiffs*' Complaints cite Clemens' expansion through Coldwater. *See* Dkt. 168 at 6-7. Plaintiffs cannot now ask the Court to ignore their own allegations under the false pretense that it raises a "fact issue." *See Twombly*, 550 U.S. at 568 n.13.

### B.     Plaintiffs Cannot Explain Clemens' Incentive to Collude

Plaintiffs ignore that it would be irrational for Clemens to agree to reduce hog supply when its business primarily consists of purchasing hogs for processing.[1] Instead, Plaintiffs now maintain that they do "*not* [allege] that the price paid by a processor such as Clemens to the hog farms was elevated." Dkt. 230 at 19 (emphasis added). This defies common sense, contradicts the complaint (*e.g.*, Compl. ¶¶ 52, 69, 112-16) *and* contradicts Plaintiffs' arguments in their response to Defendants' Joint Motion (*e.g.*, Dkt. 229 at 18). Put simply, it makes no sense for Clemens to enter into a conspiracy that would lead to an "unprecedented increase" in Clemens' costs. *See* Dkt. 229 at 18 (arguing "decreasing hog production" caused "an unprecedented increase in hog prices"). Without a plausibly pled motive, Plaintiffs' claim fails. *See Sherr v. HealthEast Care Sys.*, 262 F. Supp. 3d 869, 883-84 (D. Minn. 2017) (dismissing antitrust claim for lack of rational economic motive).

---

[1] Plaintiffs miss the point when it comes to Clemens' small size. That Clemens controls a negligible portion of hog supply, primarily buying rather than selling hogs, makes it unlikely Clemens would agree to raise hog prices. Clemens' small share of the pork supply market also *minimizes* its incentive and ability to contribute to the alleged scheme: more likely, Clemens would increase supply if consumer pork prices rose, just as Plaintiffs' evidence confirms it did.

## II.  PARTICIPATION IN AGRI STATS AND TRADE ASSOCIATIONS IS INSUFFICIENT

Without allegations of supply cuts or a motive, Plaintiffs are left with Clemens' participation in a benchmarking service and trade associations.  Dkt. 230 at 17.  These facts are true of nearly every large company and are not sufficient to allege conspiracy.  *See, e.g.*, *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1046 (D. Minn. 1992) (alleging price sharing among competitors fails to state a price-fixing claim). Even *In re Broiler Chickens* recognized as much.  290 F. Supp. 3d 772 (N.D. Ill. 2017) (requiring more than Agri Stats membership to deny motion, including defendant-specific facility closures, egg destruction, breeder flock cuts, price index tampering, and signaling statements).

Tellingly, Plaintiffs misstate the pleading standard as requiring only "slight evidence" of agreement in the hopes of lowering their burden.  Dkt. 230 at 4.  That is not the law.[2]  *Twombly*, 550 U.S. at 557; *see also* Dkt. 234 at 4-7.  Regardless, Plaintiffs lack even "slight evidence" of Clemens' involvement in a conspiracy; any indicators (such as supply cuts) are **non-existent** or **contradicted**.  *See, e.g.*, *Montero v. Bank of Am., N.A.*, 2014 WL 562506, at *4 (D. Minn. Feb. 13, 2014) (dismissing when "the record directly contradicts Plaintiff's allegations").

---

[2]  The opinions Plaintiffs cite are either pre-*Twombly*, do not involve antitrust claims, or contradict their very argument.  Dkt. 230 at 5 (citing *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, 2012 WL 3307486, at *2 (E.D.N.Y. Aug. 13, 2012) ("[P]laintiffs must allege facts . . . that nudge their claims *against each defendant* across the line from conceivable to plausible." (emphasis added)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1113 (N.D. Cal. 2008) (same)).

4

## CONCLUSION

Clemens' motion to dismiss should be granted.

Dated: December 21, 2018 　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ *Daniel E. Laytin, P.C.*

　　　　　　　　　　　　　　　　　　　　　　Mark L. Johnson (#0345520)
　　　　　　　　　　　　　　　　　　　　　　Bethany Krueger (#0306368)
　　　　　　　　　　　　　　　　　　　　　　Virginia R. McCalmont (#0399496)
　　　　　　　　　　　　　　　　　　　　　　GREENE ESPEL PLLP
　　　　　　　　　　　　　　　　　　　　　　222 South Ninth Street, Suite 2200
　　　　　　　　　　　　　　　　　　　　　　Minneapolis, MN 55402
　　　　　　　　　　　　　　　　　　　　　　(612) 373-0830
　　　　　　　　　　　　　　　　　　　　　　mjohnson@greeneespel.com
　　　　　　　　　　　　　　　　　　　　　　bkrueger@greeneespel.com
　　　　　　　　　　　　　　　　　　　　　　vmccalmont@greeneespel.com

　　　　　　　　　　　　　　　　　　　　　　Daniel E. Laytin, P.C. (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　Christa C. Cottrell, P.C. (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　Christina L. Briesacher (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　　　300 North LaSalle
　　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60654
　　　　　　　　　　　　　　　　　　　　　　312-862-2000
　　　　　　　　　　　　　　　　　　　　　　dlaytin@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　ccottrell@kirkland.com
　　　　　　　　　　　　　　　　　　　　　　christina.briesacher@kirkland.com

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Clemens Food Group, LLC and the Clemens Family Corporation*