UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Civil No. 18-cv-01776 (JRT/HB)<br><br>**REPLY BY INDIANA PACKERS CORPORATION AND MITSUBISHI CORPORATION (AMERICAS) IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS** |

## INTRODUCTION

Indiana Packers Corporation ("IPC") and its minority shareholder parent, Mitsubishi Corporation (Americas) ("MCA") do not belong in this lawsuit. When the CACs are stripped of improper group pleading, conclusions, and perfunctory definitions, Plaintiffs mention IPC a scant three times (in complaints containing hundreds of paragraphs). These three allegations fall well short of the mark. And Plaintiffs cannot keep MCA in this lawsuit simply by defining it as "Indiana Packers," with no link to the alleged conspiracy. IPC and MCA should be dismissed.[1]

## ARGUMENT

**I.     The Allegations Against IPC and MCA Are Insufficient.**

Plaintiffs allege seven pork producers conspired to restrict production and fix pork prices. DPP CAC ¶ 169. But they cannot state a claim against IPC (and, by extension,

---

[1] As in IPC's and MCA's opening brief ("IPC Br."), we reference the Direct Purchasers' complaint ("DPP CAC"). We refer to Defendants' brief seeking dismissal of the federal claims (Dkt. 162) as "Def. Br." Plaintiffs' opposition brief (Dkt. 229) is "Opp.," and Plaintiffs' omnibus response to individual defendant's briefs (Dkt. 230) is "Om. Br."

MCA) by simply alleging a group conspiracy; rather—as they acknowledge—the question "[w]hether or not relatively smaller firms like Indiana Packers conspired with the dominant six suppliers is a separate inquiry" for which Plaintiffs must allege specific facts showing that IPC "joined and committed acts in furtherance of the conspiracy." Om. Br. at 22-23. The CACs fail to do so, and courts routinely dismiss individual defendants in large antitrust conspiracy cases where plaintiffs fail to link them to any alleged conspiracy. *See, e.g.*, In re Milk Products Antitrust Litig., 84 F. Supp. 2d 1016, 1020 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999); *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 483 (S.D.N.Y. 2017). Here, the CACs simply define IPC and MCA as parties, and then make three IPC-specific allegations: i) IPC subscribed to Agri Stats (DPP CAC ¶ 49); ii) IPC participated in a trade association (*id.* at ¶ 98); and iii) an IPC executive was quoted in a regional newsletter about IPC's growth (*id.* at ¶ 126). Such allegations fail to plausibly allege participation in an extensive, multi-year, pork price-fixing conspiracy. *See* IPC Br. at 2-5.

Trade association membership and a subscription to Agri Stats are not enough. *Id.* Indeed, *Broilers*—which Plaintiffs emphasize and describe as both "persuasive" and "instructive" (Opp. at 45)—made this very point. There, the court recognized "the existence and characteristics of Agri Stats" and "opportunities to collude at industry conferences and trade association meetings," but nevertheless held that the question is "whether Plaintiffs have sufficiently alleged… that *each defendant* … either *cut production* or *took action to restrain production* ..." In re Broiler Chicken Antitrust Litig., 290 F. Supp.

3d 772, 803 (N.D. Ill. 2017) (emphasis added). The court then listed specific allegations as to each defendant. *Id.*

By contrast, here Plaintiffs allege no specific acts with respect to IPC. Instead, the only remaining IPC-specific allegation comes from a one-page August 2012 article titled <u>Food Packing Business Steady So Far Despite Drought</u>. DPP CAC ¶ 126. As stated in IPC's opening brief (at 3-5), this article discusses IPC's *growth*, not any production cuts. Plaintiffs' capacity-restriction conspiracy theory is contradicted by this article, which describes IPC as increasing production by "20 percent," and increasing employment by "30-40 percent," during a decade that overlaps with the alleged conspiracy period. The Court need not accept as true claims that are contrary to the factual content Plaintiffs rely upon. *See* IPC Br. at 4.

Plaintiffs' selective quotations from the article also cannot be read as advocating industry "discipline," or "invitations to agree," or requests to "limit production." Opp. at 21-22.[2] The article quotes IPC's Mr. Jacobson as stating that IPC's growth had been "good, strong, [and] steady." Stilson Decl., Ex. A. It notes that current heat waves and drought "*could*" affect *corn prices* in the future, impacting "pig farming," not pork processing. *Id*. The best Plaintiffs can do with their quotes is make an unsupported claim that running in a "sold out position" was a "pretext" to facilitate price increases. Om. Br. at 24. But a mere statement that IPC was selling all it had available at that time cannot be read as pretextual,

---

[2] Plaintiffs carefully used ellipses to omit quotes from the article discussing IPC's substantial capacity increases. *Compare* Om. Br. at 24 *with* Stilson Decl., Ex. A (Dkt. 174).

and Mr. Jacobson also said that "the impact" from the drought "has not been really significant as far as production as a whole." Stilson Decl., Ex. A. Nothing in this article raises an inference that IPC ever restrained production.

Plaintiffs appear to have made a tactical decision not to attach the article to the CACs. They now argue (Om. Br. at 25) that the Court must not look at it either. But Plaintiffs cannot have it both ways. The article is Plaintiffs' *sole* allegation of substance that they claim links IPC to the alleged conspiracy, and the Court is entitled to consider what it actually says. *See* IPC Br. at 4; *see also Silver v. H&R Block, Inc.*, 5 F.3d 394, 397 (8th Cir. 1997); *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1087 (D. Minn. 2017) (Tunheim, J.). As the Eighth Circuit said—in a case cited by Plaintiffs (Om. Br. at 14)— "[i]t is true that the plaintiff must supply any documents upon which the complaint relies, and if the plaintiff does not provide such documents the defendant is free to do so." *See BJC Health System v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003). IPC has provided the Court with a copy of the article, because—although embraced by the CACs— it provides no basis for Plaintiffs' claim that IPC joined a price-fixing conspiracy.

Plaintiffs also fail to justify their decision to omit IPC from their list of "Collusion" defendants in their "plus factor" market structure claims. *See* IPC Br. at 2-3; Om. Br. at 23. All Plaintiffs come-up with (Om. Br. at 23) is that they chose to focus on the "dominant six suppliers." And they also do not respond at all to IPC's showing that it was excluded from the indirect purchasers' key allegations about vertical integration. *See* IPC Br. at 3. Such omissions further underscore why IPC should be dismissed.

4

## II.      Plaintiffs Cannot Simply Define MCA As "Indiana Packers."

Plaintiffs try to keep MCA in this case by defining it as "Indiana Packers" (Om. Br. at 26), but that argument already was rejected in a case brought by some of the same lawyers representing certain plaintiffs in this lawsuit. *See Hudock v. LG Electronics U.S.A., Inc.*, 2017 WL 1157098, at *3 (D. Minn. Mar. 27, 2017) (Tunheim, J.).[3] Nor can the conclusory statement that MCA "exerted control" over IPC change the outcome. DPP CAC ¶ 27. Plaintiffs cite this Court's opinion in *Reg'l Multiple Listing Serv. of Minnesota, Inc. v. Am. Home Realty Network, Inc.*, 9 F. Supp. 3d 1032, 1045 (D. Minn. 2014) (Om. Br. at 26), but they completely ignore what it says: "Courts have repeatedly found that, where a plaintiff alleges only that a parent wholly owns a subsidiary or generally alleges that the parent company participated in the conspiracy, without specific examples, plaintiff fails to state a claim against the parent for the subsidiary's actions." *See also* Def. Br. at 16. This Court has already rejected corporate affiliation arguments equivalent to those Plaintiffs raise here, and Plaintiffs provide no reason why the result here should be any different. MCA should be dismissed from this lawsuit for these independent reasons.[4]

## **CONCLUSION**

The CACs should be dismissed in their entirety, but at a minimum, IPC and MCA should be dismissed.

---

[3] Plaintiffs do not even list MCA among the defendants in their opposition brief. Om. Br. at 1 n.2.

[4] Plaintiffs request to "explore … issues [about MCA] via discovery." Om. Br. at 26.  That's not how it works—plaintiffs must state a colorable claim *before* they are allowed to engage in discovery. *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 2009 WL 294353, at *2 (D. Minn. Feb. 5, 2009).

Dated: December 21, 2018

Respectfully submitted,

*/s Jaime Stilson*
Jaime Stilson (#0392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 492-6746
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation and Mitsubishi Corporation (Americas)*

729915109