# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

---

IN RE PORK ANTITRUST LITIGATION

This Document Relates To:  All Actions

---

No. 0:18-cv-1776-JRT-HB

**REPLY IN SUPPORT OF DEFENDANT AGRI STATS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................ 1

ARGUMENT ...................................................................... 2

    I.    Plaintiffs Do Not Allege That Agri Stats Knew Of A Supposed Conspiracy Among The Other Defendants ........................ 2

    II.    Plaintiffs Do Not Allege That Agri Stats Agreed To Support Any Purported Supply-Reduction Conspiracy Among The Other Defendants ............................................................ 3

CONCLUSION ................................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................1, 4

*Kleen Prods. LLC v. Georgia-Pacific LLC*,
   — F.3d —, 2018 WL 6423941 (7th Cir. Dec. 7, 2018) ......................2

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   288 F.3d 1028 (7th Cir. 2002) ............................................................3

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ............................................................4

*Maple Flooring Mfg. Ass'n v. United States*,
   268 U.S. 563 (1925) ............................................................................2

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) ............................................................................1

## INTRODUCTION

Defendant Agri Stats, Inc. ("Agri Stats") joins the reply memoranda filed in support of the joint motions to dismiss (Dkts. 234, 236).

On Agri Stats's individual motion, Plaintiffs do not dispute that: (1) they must allege that Agri Stats both knew of and supported a putative conspiracy among the pork-integrator defendants to reduce pork supplies, Plfs.' Opp'n to Agri Stats's Mot. to Dismiss (Dkt. 230) ("Opp'n") at 6; and (2) "an account of a defendant's commercial efforts stays in neutral territory" and does not plausibly suggest an agreement, as Section 1 of the Sherman Act requires. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Indeed, Plaintiffs frame the issue as whether they have alleged that Agri Stats was more than "an unwitting tool for the [alleged] conspirators." Opp'n at 10.

But their opposition brief sidesteps that question. Plaintiffs instead recount their allegations about how Agri Stats, like any benchmarking firm, works to provide performance barometers allowing industry participants to assess their operations in comparison to rivals. The law has long acknowledged that this widely accepted practice can enhance competition and benefit consumers. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978). So Plaintiffs must do more than describe Agri Stats's "commercial efforts," which are as consistent with lawful economic activity as with an alleged conspiracy. They fail to do so, and in fact *cannot* do so, because they have alleged no facts plausibly explaining why Agri Stats would knowingly support a conspiracy about a product it neither produces nor sells. Agri Stats, therefore, should be dismissed with prejudice.

- 1 -

**ARGUMENT**

**I.      Plaintiffs Do Not Allege That Agri Stats Knew Of A Supposed Conspiracy Among The Other Defendants.**

Plaintiffs assert that "Agri Stats knew that its co-defendants used the benchmarking reports to restrict supply," Opp'n at 10, but cite only two allegations in support.  First, they claim that Agri Stats "emphasized" to customers that its data could be used to restrict production.  *Id.* at 7.  Second, they assert that Agri Stats "knew" that the anonymized data it compiled was not anonymous among the pork-integrator defendants, who had "keys to decipher which data belong[ed] to which producers."  *Id.* at 8.  Neither allegation supports a plausible inference of Agri Stats's knowledge of some conspiracy.

*First*, Plaintiffs rely on statements that Agri Stats made in 2008 selling its services and touting the benefits of benchmarking.  *Id.* at 7.  Agri Stats allegedly stated that "the ultimate goal is increasing profitability—not always increasing the level of production." *Id.*   That Agri Stats seeks to help its customers be more profitable "is hardly an earthshattering insight."  *Kleen Prods. LLC v. Georgia-Pacific LLC*, — F.3d —, 2018 WL 6423941, at \*8 (7th Cir. Dec. 7, 2018) (statement that "industry 'should say no on deals' that, though competitive, are not profitable" did not support conspiracy inference). That is the purpose of any benchmarking service, and there is nothing improper about providing companies with data to make them better-informed market participants.  *Maple Flooring Mfg. Ass'n v. United States*, 268 U.S. 563, 584 (1925).  Accordingly, to state a claim against Agri Stats, Plaintiffs must do more than show that Agri Stats provided

benchmarking data. They must allege that Agri Stats made a *conscious* commitment to an alleged conspiracy. Nothing in their allegations suggests any such conscious commitment. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 288 F.3d 1028, 1033 (7th Cir. 2002) (refusing to infer conspiracy from "a careless failure to tumble [in]to the nature of one's suppliers' business methods").

*Second*, Plaintiffs' assertion that Agri States "knew" that its customers could decrypt its anonymous data reports is a legal conclusion. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). But even crediting that allegation, Plaintiffs have not identified any instance in which the anonymity of the Agri Stats reports was compromised, much less that Agri Stats learned that the anonymity had been compromised. These vague and conclusory allegations do not state a claim.

## II.    Plaintiffs Do Not Allege That Agri Stats Agreed To Support Any Purported Supply-Reduction Conspiracy Among The Other Defendants.

Plaintiffs argue that Agri Stats must have participated in a putative conspiracy because "genuine competitors do not make daily, weekly and monthly reports of the minutest details of their business to their rivals." Opp'n at 8 (alteration and quotation marks omitted). But that is exactly Agri Stats's point: Agri Stats is *not* a "genuine competitor" of the pork-integrator defendants—it neither produces nor sells pork. Plaintiffs have not alleged any reason for Agri Stats to support a putative conspiracy as a result. Plaintiffs rely heavily on the conclusory allegation that Agri Stats made "far in excess of other pricing and production indices." Opp'n at 10. That Agri Stats allegedly made more money than other, unidentified benchmarking firms does not suggest that

Agri Stats supported a putative conspiracy among the pork-integrator defendants. Making profits neither violates the antitrust laws nor suggests any motive to conspire because a "motive for increased profits always exists." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.8 (9th Cir. 2015).

Plaintiffs mischaracterize their own complaints in arguing that Agri Stats supposedly stated that "'[e]ach participant has to commit' to the conspiracy." Opp'n at 10 (quoting Compl. ¶ 57). But Plaintiffs never allege that Agri Stats actually made such a statement. Instead, the complaints allege that Agri Stats made a presentation in which it stated that "[e]ach participant has to commit," *id.* (citing complaint allegations), not *to a conspiracy* to reduce pork supplies but to a set of reporting procedures to ensure data integrity and accuracy for benchmarking purposes. Compl. ¶ 57.

Plaintiffs also describe how Agri Stats conducts its business: Agri Stats "collect[s] and disseminat[es]" data, "standardize[s] and audit[s] the data for accuracy," and "visit[s] the [pork-integrator defendants] and explain[s] the implications of the data" when its customers "need[] help understanding" it. Opp'n at 9. That merely describes what a benchmarking firm does—or, in the words of *Twombly*, provides "an account of a defendant's commercial efforts," which "stays in neutral territory" and does not give rise to a conspiracy inference. *Twombly*, 550 U.S. at 557. Plaintiffs also contend that the type of data Agri Stats shares has "the greatest potential for generating anticompetitive effects." Opp'n at 7 (quotation marks omitted). But even assuming the truth of that legal conclusion, these allegations are just as consistent with Agri Stats serving, in Plaintiffs' own terms, as an "unwitting tool" of, rather than a knowing participant in, a conspiracy.

*Id.* at 10.  As such, Plaintiffs do not plausibly allege that Agri Stats participated in any putative supply-restriction agreement.

## CONCLUSION

For the foregoing reasons, and those stated in Defendants' joint motions, the claims against Agri Stats should be dismissed with prejudice.

Respectfully submitted,

DATED: December 21, 2018

*/s/ Peter H. Walsh*
Peter H. Walsh
HOGAN LOVELLS US LLP
80 Eighth Street
Suite 1225
Minneapolis, Minnesota  55402
Tel: (612) 402-3000
Fax: (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts III (*Pro Hac Vice*)
Justin W. Bernick (*Pro Hac Vice*)
Jennifer A. Fleury (*Pro Hac Vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com

*Counsel for Agri Stats, Inc.*