# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* <br><br> This Document Relates To: All Actions | Case No. 18-cv-1776 (JRT/HB) <br><br> **ORDER** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendants' Motion to Stay Discovery [Doc. No. 193]. The motion is granted in part and denied in part as set forth below and as further detailed on the record at the November 21, 2018, motion hearing and status conference and at the status conference on January 28, 2019, and in the Order Regarding Disclosure of Information filed contemporaneously herewith.

**I.     Background**

On September 21, 2018, thirteen putative antitrust class actions were consolidated for pretrial purposes. (Order at 4–5 [Doc. No. 85].) Generally, the Plaintiffs in these matters allege that Defendants conspired or colluded to artificially raise, fix, or maintain prices in the pork market in violation of federal antitrust laws.

On October 23, 2018, pursuant to a schedule established by the Court with the agreement of the parties, Defendants filed eleven motions to dismiss and a motion to stay discovery. The motions to dismiss were heard by the Honorable John R. Tunheim, Chief Judge, United States District Court, on January 28, 2019. The motion to stay was heard by the undersigned on November 21, 2018.

### A. The Parties' Positions on Conducting Discovery While the Motions to Dismiss Are Pending

Significantly, neither side urged the Court to adopt an "all or nothing" approach to moving forward with discovery while the motions to dismiss are pending, although their respective positions about what precisely should occur during the interim are materially different. Plaintiffs initially proposed that the parties undertake the following tasks while the motions to dismiss are pending:

1. Make disclosures regarding ESI systems, employees with certain job duties, and other relevant information, as more specifically described in a Proposed Order Regarding Disclosure of Information (*see* Clark Decl. Ex. E [Doc. No. 205-2 at 25]);

2. Exchange Rule 26(a) initial disclosures;

3. Submit a Rule 26(f) report and conduct a Rule 16 pretrial conference to, *inter alia*, negotiate time periods and the number of interrogatories;

4. Produce all documents produced to the Department of Justice (DOJ) during a prior investigation of Agri Stats;

5. Negotiate the production of documents responsive to the Rule 34 requests Plaintiffs served on November 1, 2018;

6. Meet and confer on document sources, such as document custodians and non-custodial sources; and

7. Meet and confer on a proposed search methodology order.

(Pl.'s Mem. Opp'n Mot. Stay at 4–5 [Doc. No. 204].) Plaintiffs argued these tasks would allow the parties to make substantial progress on threshold discovery issues, while avoiding the significant burden of loading, processing, reviewing, and producing custodial documents. Plaintiffs did not seek full-scale discovery.

Defendants agreed to serve Rule 26(a) disclosures, negotiate a confidentiality order, negotiate an ESI protocol, serve initial disclosures by December 3, 2018, and produce readily available organizational charts by December 3, 2018. (Defs.' Mem. Supp. Mot. Stay at 1–2 [Doc. No. 195].) Defendants did not agree to the other proposed tasks, however. They pointed out that the full disclosures sought by Plaintiffs would require them to gather broad categories of information for a ten-year period at significant expense. They also argued that although Plaintiffs characterized the requested disclosures as "ESI disclosures," Plaintiffs really sought broad discovery over a ten-year period in the form of documents and information, the identification of email systems and noncustodial data sources, and the identification of employees who held numerous positions. Thus, Defendants objected, the additional tasks requested by Plaintiffs would involve significant additional burden, and the ruling on the motions to dismiss could dramatically affect the scope of discovery and therefore of the associated tasks, including by impacting the assessment of both relevance and proportionality required by Federal Rule of Civil Procedure 26. As a result, there was a substantial risk that much of the effort associated with these tasks would be wasted, either because they would have to be redone in light of the rulings on the motions to dismiss, or because those rulings could make some of the work irrelevant and unnecessary or even eliminate the need for any discovery whatsoever.

In addition, Defendants pointed out as to the fourth proposed task that the DOJ investigation had not concerned pork products and that in any event, no Defendants other than Agri Stats had produced any documents to the DOJ. And the fifth proposed task,

3

Defendants argued, would require them to respond to 68 broad requests for production pertaining to virtually every aspect of their businesses for the past ten years, including each individual pork sale transaction (for the past fifteen years), budgets and projections, telephone records, pricing models, and contracts, even if they were not yet required to actually collect and produce documents.

### B. The Motion Hearing and Subsequent Developments

At the conclusion of the motion hearing on November 21, the Court took the motion to stay under advisement, but instructed the parties to meet and confer further on two issues: (1) the relevance of documents produced in connection with the DOJ's investigation of Agri Stats, and the burden of reviewing and producing them; and (2) the extent to which the parties could make progress on negotiating the Plaintiffs' Rule 34 requests for production before a decision on the pending motions to dismiss was issued. (Ct. Mins. Nov. 21, 2018 [Doc. No. 213].) The Court convened a status conference immediately after the motion hearing and provided further guidance and direction about the tasks it expected the parties to undertake while the motions to dismiss were pending. (Ct. Mins. Nov. 21, 2018 [Doc. No. 214].) Specifically, the Court advised the parties it would issue a protective order in the form proposed by the parties[1]; ordered the parties to meet and confer further on paragraphs IV(D)(2) and V of the proposed ESI Protocol[2] and

---

[1] The Court declined to include Defendants' proposed language that communications with in-house counsel need not be included on privilege logs.
[2] The parties' draft ESI Protocol and a description of the terms on which they had not reached agreement were submitted to the Court in advance of the status conference. (Joint Status Rep. & Letter Br. Exs. C, D, Oct. 30, 2018 [Doc. No. 203-1].)

submit a joint letter update to the Court; and to meet and confer to attempt to reach agreement concerning the interim discovery obligations of so-called "holding company" Defendants.  (*Id.*)  The Court entered the protective order on November 26, 2018 [Doc. No. 212].

As instructed, the parties filed a joint status report and letter brief on December 12, 2018 [Doc. No. 233].  The parties set forth their agreement that the "holding company" Defendants (Hormel Foods, LLC, JBS USA Food Company Holdings, Mitsubishi Corporation (Americas), and Seaboard Corporation) could defer discovery pending resolution of the motions to dismiss.

As for the Rule 34 requests for production, the parties agreed to limit their meet-and-confer efforts to 32 of the 46 requests for production propounded by Plaintiffs, but did not agree on the scope and form of such discussions.  Plaintiffs proposed that Defendants serve written objections and responses to the requests for production after engaging in a meet-and-confer, but Defendants agreed only to meet and confer.

The parties also reached additional agreements concerning the ESI Protocol and submitted a document describing the additional agreed-upon provisions and a chart identifying the terms that remained in dispute.  (Joint Status Rep. & Letter Br. Exs. A, B, Dec. 12, 2018 [Doc. Nos. 233-1, 233-2].)  The terms in dispute related to (1) the temporal scope of custodial and non-custodial non-structured data to be processed; (2) whether to commence discussions of document custodians and sources immediately or wait until after the motions to dismiss are decided; (3) disclosures of information regarding document custodians' cell phone data; and (4) identification and production of social

media data.  While some of the disputes involved what obligations the parties would have once discovery was fully underway, others affected the extent of the parties' activities while the motions to dismiss were pending, and were therefore pertinent to the motion to stay.

With respect to search methodology disclosures, Plaintiffs proposed commencing negotiations of document sources including document custodians and non-custodial document sources at this time, whereas Defendants proposed negotiating the methodologies within thirty days of a ruling on the motions to dismiss.  Finally, the December 12 joint status report updated the Court on the parties' continuing discussions—and ongoing dispute—concerning whether and to what extent Agri Stats should produce to Plaintiffs the documents it had produced to the DOJ during the prior investigation.

The parties filed a second joint status report on January 24, 2019, in anticipation of the upcoming status conference, confirming that the disputes described in the December 12 joint status report remained at issue. [Doc. No. 257.]

At the January 28, 2019, status conference, the Court gave direction on the outstanding areas of disagreement in the ESI Protocol and instructed the parties to submit to the Court by February 18, 2019, a revised proposed ESI Protocol incorporating language that reflects the agreements reached by the parties before the status conference and the Court's direction with regard to the disputed issues.  (*See* Ct. Mins. Jan. 28, 2019 [Doc. No. 264].)

The Court also advised the parties that it would enter a written Order Regarding

Disclosure of Information and confirmed the parties' agreement that the so-called "holding companies" would not participate in discovery-related discussions at this time (although they are subject to preservation obligations). As to the Rule 34 requests for production, the Court instructed the parties to meet and confer about the 32 agreed requests by March 8, 2019, and instructed Defendants to serve written responses and objections to those requests by March 29, 2019. Recognizing that Defendants might be preparing those responses and objections without knowing the parameters of the claims that would survive the motions to dismiss, and that those rulings could potentially affect the Defendants' final positions on objections and responses, the Court declined to require Defendants to prepare alternative forms of the objections and responses for every possible outcome, but instructed Defendants to craft their initial objections and responses based on an assumption that the motions to dismiss would be denied and that the scope of the litigation would not be limited significantly by the District Court's ruling on the motions to dismiss. The Court further instructed each Defendant, however, to identify on a request-by-request basis each issue in the pending motions to dismiss that it would contend could alter its position as to the objections and the scope of its production in response to each request.

Finally, concerning Agri Stats' DOJ documents, the Court ordered Agri Stats to review the documents it produced to the DOJ from the four custodians whose responsibilities included the pork industry during the relevant time frame, and to produce nonprivileged, relevant documents from those custodians. Agri Stats and Plaintiffs were directed to meet and confer about a methodology for that review. The Court further

7

ordered Agri Stats that if the motions to dismiss are denied, it must confer with Plaintiffs about a search methodology for the remaining custodians. The Court noted, however, that the question of whether Plaintiffs are entitled to the entire set of documents Agri Stats produced to the DOJ would have to be addressed on a motion to compel.

## II. Considerations Relevant to the Court's Rulings and Guidance

A court has the discretion to stay discovery in whole or in part during the pendency of a motion to dismiss. *See Jones v. Clinton*, 72 F.3d 1354, 1361 (1996) ("The trial court has broad discretion to control the scheduling of events in matters on its docket."); *TE Connectivity Networks, Inc. v. All Systems Broadband, Inc.*, No. 13-cv-1356 (ADM/FLN), 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013) ("[A] court may stay discovery for good cause shown."). Several factors may inform a court's decision whether to stay discovery while a motion to dismiss is pending, including the merits of the motion, the scope of the discovery, the potential harm to the plaintiff if discovery is delayed, the potential hardship or injustice to the defendant if discovery proceeds, and the resources of the parties and the Court. *See Dufrene v. ConAgra Foods, Inc.*, No. 15-cv-3796 (WMW/LIB), 2016 WL 10651947, at *2 (D. Minn. Apr. 7, 2016); *TE Connectivity*, 2013 WL 4487505, at *2.

The Court has considered the above factors, with the exception of the merits factor, in fashioning the relief and guidance described herein. As to the merits factor, this Court is not inclined to "take a peek" and weigh in on the merits of motions that were argued to and are presently pending before the District Court. The Court has considered, however, the possibility that some or all of the discovery sought from some or all

Defendants could prove unnecessary if the motions are granted or granted in part.  In resolving the issues presented by the motion to stay, the Court took into account the interests that favored deferring a significant burden of discovery that might ultimately prove unnecessary, as well as the interests that favored moving the litigation forward efficiently and expeditiously if the motions to dismiss are denied in whole or in part.  Although there is no perfect way to meet all of those interests, the Court is persuaded there is a reasonable way to balance them so that significant and meaningful progress can be made on a number of fronts, while still conserving resources and moderating unfairness or prejudice.  The balance the Court has struck—while not eliminating the cost and burden to the parties or eliminating the possibility that there will need to be additional negotiations to refine the agreements and the parties' disclosures after the motions are resolved—best assures the parties will make good and efficient use of the time during which the motions are pending.

The Court has issued rulings or guidance on each of the seven tasks initially proposed by Plaintiffs and summarized them here for the benefit and convenience of the parties.  The Court will also issue an Order Regarding Disclosure of Information, as requested by the parties at the January 28 status conference, and resolve any remaining disputes concerning the ESI Protocol before approving that Protocol.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Stay Discovery [Doc. No. 193] is **GRANTED IN PART** and **DENIED IN PART** as set forth above and as further detailed on the record at the November 21, 2018, motion hearing

9

and status conference and at the status conference on January 28, 2019, and in the Order Regarding Disclosure of Information filed contemporaneously herewith.


Dated: February 7, 2019         s/ *Hildy Bowbeer*
                                HILDY BOWBEER
                                United States Magistrate Judge