**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re Pork Antitrust Litigation<br><br>This Document Relates To:<br>All Actions | Case No. 0:18-cv-01776-JRT-HB<br><br>**ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS** |

This Order Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol Order") shall govern the Parties in the above-captioned case whether they currently are involved or become so in the future, and any related actions that may later be consolidated with this case (collectively, the "Litigation").

I.  **GENERAL PROVISIONS**

   A.  **Applicability:** This ESI Protocol Order will govern the production of ESI and paper documents. To the extent that a Party collected and processed documents prior to the entry of this ESI Protocol Order, and production of such documents cannot be made in accordance with the terms of this ESI Protocol Order, the Parties will meet and confer concerning the potential formats of the production of any such documents.

   B.  **Limitations & Non-Waiver:** Nothing in this ESI Protocol Order shall be construed to affect the admissibility of discoverable information. All objections to the admissibility of any documents are preserved and may be asserted at any time. Pursuant to the terms of this ESI Protocol Order, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but compliance with this ESI Protocol Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. For the avoidance of doubt, a Party's compliance with this ESI Protocol Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. All

535532.3

parties preserve all such privileges and protections, and all parties reserve the right to object to any such privileges and protections.

C. **ESI Liaisons:**

1. **Designation:** Each Party agrees to designate an ESI Liaison within 7 days after entry of this ESI Protocol Order. Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

2. **Duties of ESI Liaison:** Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible) and have access to personnel most knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, answer pertinent questions.

3. **Time Frame for ESI Issue Resolution:** Each ESI Liaison will acknowledge receipt of an ESI-related inquiry from another ESI Liaison within 3 business days after the initial inquiry and respond substantively no later than 10 business days after the initial inquiry. If the responding ESI Liaison believes the ESI issue in question is particularly complex and requires more than 10 business days to respond substantively, then within 10 business days the responding ESI Liaison will provide a general explanation of the process necessary to answer the question and provide an estimated response date.

D. **Deadlines:** References to schedules and deadlines in this ESI Protocol Order shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

E. **Definitions:**

1. "Discovery Material" is defined as all information produced, given, or exchanged by and among all Parties, or received from non-Parties in the Litigation, including all deposition testimony, testimony given at hearings or other proceedings, interrogatory answers, documents and all other discovery materials, whether produced informally or in response to requests for discovery.

2. Plaintiffs and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this ESI Protocol Order. A single Plaintiff or Defendant, as well as, where applicable, its respective officers,

        directors, employees, agents, and legal counsel, may also be referred to as a "Party" solely for the purposes of this ESI Protocol Order.

      3.    "Plaintiffs" as used herein shall mean the putative Direct Purchaser Plaintiff class, Commercial and Institutional Indirect Purchaser Plaintiff class, and End-User Consumer Plaintiff class as set forth in the respective operative complaints.

      4.    "Defendants" as used herein shall mean Defendants named in the Direct Purchaser, Commercial and Institutional Indirect Purchaser, and End-User Consumer Complaints.

      5.    To avoid misunderstandings about terms, all Parties should consult the most current edition of The Sedona Conference Glossary.

  F.  **Authenticity and Admissibility:** Nothing in this ESI Protocol Order shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

  G.  **Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under the Agreed Confidentiality Order (Dkt.[X]).

## II.  GENERAL PRODUCTION FORMAT PROTOCOLS

  A.  **TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image, pursuant to ¶ II(E). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). The imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks. Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format and visible in the form in which the electronic document was last saved, shall also be imaged so that such content is viewable on the image file. Nothing in this subsection requires the modification or alteration of any document or data in order to make any hidden content, tracked changes or edits, comments, notes, and other similar information viewable if it is not already viewable in the

form in which the electronic document was last saved. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

B. **Text Files:** Each ESI item produced under this ESI Protocol Order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

   1. **OCR:** A producing Party may make paper documents available for inspection and copying/scanning in accordance with FED. R. CIV. P. 34 or, additionally or alternatively, scan and OCR paper documents. Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Even if OCR is used by a producing Party, however, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

   2. **ESI:** Except for redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available. For redacted documents, Parties shall provide OCR text in accordance with the specifications in Section II.B(1).

C. **Production of Native Items:** The Parties agree that ESI shall be produced as TIFF images consistent with the format described in section II.A. with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be spreadsheet-application files (e.g., MS Excel), presentation files (e.g., MS PowerPoint), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format upon reasonable request. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced. The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the Parties agree to meet and confer

prior to producing native file types other than spreadsheet application files, presentation files, and multimedia audio/visual file types such as .wav, .mpeg and .avi. Prior to processing non-standard native files for production, the producing Party shall disclose the file type to and meet and confer with the requesting Party on a reasonably useable production format. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

D. **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol Order does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

E. **Bates Numbering:**

   1. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

   2. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

   3. The producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

F. **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent

reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

G. **Entire Document Families: Subject to Paragraphs II(K)(1) and II(K)(2) below,** entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, excepting (1) junk files and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the parties), and (2) documents that are withheld on the basis of privilege and in compliance with the parties' stipulation or the Court's order on such assertions of privilege.

H. **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production.

I. **Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol Order regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this ¶ II(I) will not be unreasonably denied by the producing Party. If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

J. **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or to the terms of a Protective Order entered by the Court in the Litigation or a confidentiality stipulation entered into by the Parties, the

designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. This designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Requesting parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol Order, any protective order or confidential order, or any confidential stipulation shall not waive any protection or confidential treatment. The Parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The Parties agree to work together on an as-needed (and per document) basis to address any potential over (or under) designation.

K. **Redactions**

1. **Personal Data Redactions:** A producing Party may redact personal information to the extent that the information falls within one of the following categories: (1) the information relates to medical or health issues of an individual; (2) social security numbers, bank account information, or personal passcodes; or (3) personal contact information of friends or family to the extent they do not work in in the Pork industry or work for a Party's competitors. Such redactions should be identified as "Redacted – Personal Data" on the document.

2. **Redactions of Nonresponsive Highly Confidential Business Information**: A producing Party may redact specific highly confidential business information relating to non-pork businesses provided (1) the redacted information is both nonresponsive and irrelevant; and (2) the redacted information would not assist in understanding or providing context for the relevant portion of the document or document family of which it is a part. Such redactions must be identified as "Redacted – Highly Confidential Nonresponsive Information.

L. **Production Media & Protocol:** A producing Party may produce documents via email, readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"), or via file-sharing service, including any network-based secure file transfer mechanism or SFTP. Any requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide

a copy of that production using Production Media. The producing Party may encrypt Production Media, and will provide a decryption key to the requesting Party in a communication separate from the production itself.

III. **PAPER DOCUMENT PRODUCTION PROTOCOLS**

A. **Scanning:** A producing Party may make paper documents available for inspection and copying in accordance with FED. R. CIV. P. 34 or, additionally or alternatively, OCR paper documents. Where OCR is used, the Parties agree that the following ¶¶ III(B)-(E) shall apply.

B. **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N) or otherwise indicating that a redaction is present. Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y" or otherwise indicate that the document originated in paper, and such indication shall be explained to the requesting party.

C. **Unitization of Paper Documents:** Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly.

1. **Relationship:** The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable.

2. **Identification:** Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

IV. **ESI METADATA FORMAT AND PROCESSING ISSUES**

A. **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files if they clearly do not have user-created content.

535532.3                                    8

B.  **Metadata Fields and Processing:**

    1.  **Time Zone:**  To the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g., GMT), and the time zone used shall be disclosed to the requesting Party.

    2.  **Auto Date/Time Stamps:**  To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

    3.  Except as otherwise set forth in this ESI Protocol Order, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

    4.  The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields:  (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

C.  **Redaction:**

    1.  The Parties agree that, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ II(C), *supra*.  Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction shall be provided.  The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable.  These documents may be redacted in native format.

    2.  If the items redacted and partially withheld from production are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content.  If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

D.  **Email Collection and Processing:**

    1.  **Email Threading:**  The Parties may use email thread suppression to avoid review and production of information contained within an

existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

2. **Email Domains:** Producing parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources. To the extent a Party opts to exclude uniquely identifiable email domain names (e.g., emails from domains typically associated with junk or irrelevant topics like sports, fantasy team competitions, retailer advertising, and newsletters or alerts from non-industry sources) as part of its initial filter of potentially responsive documents, the Parties agree to disclose domain names excluded under this paragraph and to meet and confer on the timing for such disclosures.

E. **De-duplication:** A producing Party may de-duplicate any file globally (i.e., across Document Custodians, *see infra* ¶ V(B)(1)) at the "family" level (i.e., families should not be broken due to de-duplication). Each party may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and therefore produce only the most complete iteration of an email chain. The producing Party will make a reasonable effort to identify all custodians who were in possession of any de-duplicated documents through an appropriate load file such as DuplicateCustodian or CustodianAll/Other. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 1 to the extent such metadata exists. In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated duplicate custodian information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party after the Party has substantially completed its production of ESI.

1. Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party shall use reasonable

efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents. Any other methodology for identification of duplicates, including email field selection for hash value creation, must be discussed with the requesting Party and approved in writing before implementation.

2. Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MD5 hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments. Email families bearing an identical value are considered a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

F. **Zero-byte Files:** The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

G. **Microsoft "Auto" Feature:** To the extent reasonably practicable and technologically possible for a producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be identified in a load file, metadata field, or otherwise as having these features.

H. **Hidden Text:** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

I. **Embedded Objects:** Microsoft Excel (.xls) spreadsheets embedded in Microsoft Word documents will be extracted as separate documents and

treated like attachments to the document. The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments).

J. **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

K. **Password-Protected, Encrypted, or Proprietary-Software Files:** With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting Party. ESI that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

## V. PARAMETERS FOR CULLING AND REVIEWING ESI AND PAPER DOCUMENTS

A. **General Provisions:**

1. **Time Period:** Except as noted elsewhere in this paragraph, the Parties agree that they may limit the processing of discoverable information to that which was created, modified, sent, or received from a start date to be negotiated by the parties within 30 days of a ruling on the motions to dismiss, through June 30, 2018.

2. **Meet and Confer:**

    a. **Commencement of Custodian Discussions:** The parties will commence discussions about Document Custodians and non-custodial document sources.

    b. If the Parties cannot reach agreement under the provisions of this Section V, any dispute may be presented to the Court. All meet and confer sessions under this Section V will involve

        each Party's respective ESI Liaison and will give appropriate consideration to minimizing expense.

    3. **Non-Waiver:** The Parties' discussion of proposed search terms, Document Custodians or Sources does not preclude a Party from requesting additional search terms, Document Custodians or Sources pursuant to the terms of this ESI Protocol Order, nor does it preclude a Party from objecting to any such additional requests.

B. **Document Custodians and Sources:**

    1. **Initial Document Custodians and Sources**: Consistent with paragraph V.A.2.a. of this ESI Protocol, the Parties agree to commence discussions about Document Custodians and non-custodial document sources, including the process and procedure for negotiating and disclosing such sources.

    2. **Additional Document Custodians or Sources:** If, after the initial Document Custodian and Source negotiations and order described in the preceding paragraph, a Requesting Party determines that additional Document Custodians or Sources should be added, then the Requesting Party shall advise the Producing Party in writing of the proposed additional Document Custodians or Sources and the basis for the request. If the Parties have not agreed whether to add the Document Custodian or Source within 21 days of the Requesting Party's request, then the Parties may bring the matter to the Court via motion within 21 days or the issue is waived, unless the parties agree to defer resolution of the issue. The parties shall raise disputed Document Custodians or Sources via a joint letter brief not to exceed five pages split equally between Plaintiffs and Defendants.

    3. Except by agreement of the Parties or by order of the Court, a Producing Party is not required to add Document Custodians or Sources after the deadlines identified in paragraphs V(B)(1).

C. **Search Methodology**

    1. **Use of Search Terms to Cull Unstructured ESI:**

        a. The Parties may use search terms and other limiters, including, by way of example only, date ranges and email domains in metadata fields, as a means of limiting the volumes of information to be reviewed for responsiveness. To the extent that search terms are used to identify responsive ESI, a

        Producing Party will notify the Requesting Party of its intent to use search terms and disclose to the Requesting Party (1) an initial list of search terms the Producing Party intends to use and (2) whether the Producing Party intends to use different search terms with different Document Custodians or Sources. The Parties will meet and confer in good faith regarding the disclosure and formulation of appropriate search terms and protocols to cull unstructured ESI.

    b. **Addition or Removal of Search Terms After Initial Search Term Negotiation:** If, after the completion of the initial search methodology negotiations, a requesting or producing Party determines that any search terms should be added to or removed from the initial search term list, then the requesting or producing Party shall advise the affected Parties in writing of the proposed change(s) to the search term(s) and of the reason(s) for the proposed change(s).

    c. Except by agreement of the Parties or by order of the Court, a Producing Party is not required to add search terms after completion of the process described in paragraph V(C)(1)(a).

2. **Use of Technology Assisted Review or Other Advanced Technology-Based Analytics to Cull Unstructured ESI:**

    a. **Use of TAR:** A Party may use Technology Assisted Review ("TAR") to sort documents for linear review without disclosure of that use. If a Party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, the parties will meet and confer regarding the following parameters that will apply to the use of TAR.

        i. **Paper Documents:** The Parties agree to meet and confer to determine whether paper documents may be included in a TAR process.

        ii. **The TAR Tool:** A Producing Party shall describe to a Requesting Party the vendor and the TAR technology or tool being used, including a description of the TAR tool's procedures.

    b. A Producing Party need not conduct any additional review of information subjected to, but not retrieved by, a TAR tool as

    part of the identification of the subset of information that will be subject to review and production.

D. **Structured Data:** To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the Requesting Party. Upon review of the report, the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

E. **Custodial Cellphone & Personal Communications Data:**

    1. **Cellphones:** For Document Custodians agreed on by the Parties or ordered by the Court, a Producing Party will take reasonable steps to identify whether any unique responsive communications are located on any cellphones in the possession, custody, or control of the Producing Party. Unless agreed otherwise, the following shall govern the identification of unique, responsive, and non-privileged communications for cellphone-based data for the agreed or ordered Document Custodians with respect to cellphones in the possession, custody, or control of the Producing Party.

        a. A Producing Party shall use reasonable due diligence to ensure that reasonably available sources of data/applications on a cellphone and related backups and archives, if those data sources/applications are used for work purposes, are evaluated and considered as a potential source of data subject to discovery, including without limitation call and voicemail logs, text messages, contacts, and social media. Prior to any culling of the cellphone data, a Producing Party will disclose whether or not the Producing Party claims that a cellphone used by the Document Custodian for work purposes is not within its possession, custody, or control. A Producing Party shall not be required to disclose any other cellphone-related information prior to any culling of cellphone data.

        b. A Producing Party will consider the sources of information on a cellphone identified below, to the extent reasonably available, to identify unique, responsive, and discoverable information. The parties will meet and confer regarding any culling of the sources of information below.

    i. **Cellphone Call and Voicemail Logs:** The logs of any calls made/received and logs of voicemails left on a cellphone that the Document Custodian used for work purposes, if any, if the cellphone is in the possession, custody, or control of a producing Party.

    ii. **Text Messages:** All text messages and/or iMessages on the cellphone device used for work purposes or contained in available backups/archives associated with the device, if any, if the cellphone is in the possession, custody, or control of a Producing Party.

  2. **"Contacts":** A Document Custodian's relevant contacts (e.g., MS Outlook Contacts or cellphone-based contacts) in the possession, custody or control of a Producing Party will be exported to MS Excel (or .csv) with all reasonably available metadata fields. A Producing Party is entitled to redact or withhold information from the contacts file that does not relate to the Document Custodian's work—including, but not limited to, the name and contact information for any family or friends not involved in the Pork industry. If, after reviewing the redactions, the Requesting Party believes that more information is needed about the redactions, then the Parties will meet and confer regarding the information redacted, and the producing Party shall provide explanations for information redacted or withheld. Any document produced with redactions permitted under this ESI Protocol shall maintain the electronic search capabilities of the other data in the spreadsheet.

  3. **Social Media Data:** If a Document Custodian confirms that he or she (1) used Social Media for business purposes and (2) used that Social Media to communicate with an employee of another Defendant or otherwise regarding a subject relevant to the Litigation and included within a Request for Production, subject to objections to that Request, then the requested communication(s) must be produced if it is reasonably accessible, in the Producing Party's possession, custody, or control, and not withheld as privileged and/or as illegal to produce under applicable privacy laws. The Parties shall meet and confer to the extent there are any issues with respect to the format of such Social Media data.

## VI.  MISCELLANEOUS PROVISIONS

 A. **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible

or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

B.  **Variations or Modifications:** Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

**SO ORDERED.**

Dated:  February 20, 2019            s/ *Hildy Bowbeer*
                                                          HILDY BOWBEER
                                                          United States Magistrate Judge

**Appendix 1: ESI Metadata and Coding Fields**

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact, Cellphone, or All*) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact, Cellphone, or All*) | Field Description |
|---|---|---|
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Withheld Placeholder | All | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y" |
| Privilege Asserted | All | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (e.g., "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged") |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Legend/Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |