# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-1776 (JRT/HB) |
| | **JOINT UPDATE LETTER** |

Dear Judge Bowbeer:

Pursuant to the Court's instructions during the July 2, 2019 status conference and Minute Order (Dkt. 342), the parties hereby provide the following joint update regarding: (1) setting a deadline or deadlines by which the parties' meet and confer efforts on pending discovery disputes must be completed and agreement reached or impasse declared; (2) of those discovery disputes, which could be meaningfully presented to the Court for adjudication before a ruling is issued on Defendants' motions to dismiss (and by when), and which should be reserved until after that ruling is issued; and (3) setting deadlines for discovery and other tasks that will be triggered when the ruling is issued on Defendants' Motions to Dismiss.

## Plaintiffs' Position

Pursuant to the Court's guidance and directives the parties have made substantial progress in meeting and conferring on issues relating to custodians, non-custodial document sources, and their requests for production. After multiple rounds of meet and confers during the last several months, there are issues which the parties have not been able to reach agreement upon and now request the Court's guidance. Resolving some of these disputes prior to the ruling on the Motions to Dismiss will ensure that the parties continue to make progress on discovery matters and are in the best position to commence the deferred tasks of collecting and producing documents once the Court rules on Defendants' Motions to Dismiss.

Defendants seek to place resolution of discovery and custodian disputes on hold until after the ruling on their Motions to Dismiss; and as a result their proposed case management schedule does not provide any deadline for the completion of the production of documents. While Defendants claim that the discovery disputes are not "ripe" for resolution, they have agreed to an August deadline to complete meet and confer discussions and provided extensive briefing on these issues in this letter. While Defendants claim they are concerned regarding "costly and time consuming" motion practice, they have insisted on resolving discovery disputes through costly formal discovery motions rather than efficient letter briefs.

Defendants' insistence on deferring discovery disputes until after the ruling on the Motions to Dismiss will effectively implement a stay in the case after the September 11, 2019 status conference. This is a reassertion of the argument the Court rejected with respect to Defendants' motion to stay discovery, and will impede the progress that the Court has ensured to date. Plaintiffs do not believe that delaying resolution of disputes, which the parties have been meeting and conferring upon for the past several months, is necessitated by the pendency of Defendants' Motions to Dismiss. Plaintiffs have specifically chosen disputes that will not be meaningfully impacted by the scope of the Court's order on the Motions to Dismiss. Plaintiffs' proposal will ensure that the parties are able to proceed efficiently with discovery following the Court's order on the pending Motions to Dismiss. In particular, expeditious resolution of lists of custodians for each Defendant will help ensure that the parties are able to quickly proceed with document collection and production once Defendants' Motions to Dismiss are decided.

Plaintiffs' further believe that it is appropriate for the parties to negotiate and for the Court to enter a search methodology order to ensure that the collection and production of documents are handled in a transparent manner that is consistent with best practices. Plaintiffs sent Defendants a proposed Search Methodology Order on July 23, 2019, which was modelled after the order negotiated by the parties with the assistance of the court and court appointed special master Professor Maura Grossman in *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (N.D. Ill.). Plaintiffs are willing to continue to meet and confer regarding the proposed search methodology order and provide an update to the Court on their respective positions at the September 11, 2019 status conference. Defendants have essentially ignored this proposal entirely.

Finally, Plaintiffs believe that given the progress which has been made on the requests for production of documents, that beginning discussions regarding the availability and accessibility of structured data is a natural next step. The identification of databases – including the time period for which data is available, whether the data is reasonably accessible, and the general contents of any databases – takes some amount of time before the data itself is extracted and produced. Plaintiffs have requested structured data in Requests for Production Nos. 36-37. While initially, Plaintiffs agreed to postpone discussions regarding these requests while the other requests and custodians were discussed, beginning the process of identifying the sources for production of data at this time will help facilitate an orderly progression in the schedule. Plaintiffs propose that the parties start discussing the sources and content of structured data shortly after the September 11, 2019 conference, and bring any disputes regarding this data to the Court 90 days after the ruling on the pending Motions to Dismiss.

**Plaintiffs' Proposal Regarding Presentation of Certain Pre-Motion to Dismiss Discovery Disputes to the Court**

Plaintiffs served their initial Rule 34 requests for production on Defendants on November 1, 2018 and did not receive Defendants' responses until March 29, 2019. Defendants served their initial Rule 34 requests for production on Plaintiffs on April 19, 2019 and received Plaintiffs' responses without an extension on May 20, 2019. Despite the incongruence in the timing of the parties' discovery requests, Plaintiffs have proposed a mutual deadline of August 22, 2019 for the parties to complete the meet and confers regarding Rule 34 requests, custodians, and non-custodial data sources. Defendants' claim that they have been more forthcoming or diligent in the meet and confer process than Plaintiffs is not supported by the facts.[1]

Pursuant to the Court's instructions during the July 2, 2019 status conference, Plaintiffs believe that the below listed discovery disputes for presentation to the Court during the September 11, 2019 status conference. As set forth in the proposed schedule below, Plaintiffs are willing to continue meeting and conferring regarding these and other issues until August 22, 2019, and propose filing a joint brief fully addressing any remaining areas where the parties have not reached agreement by August 29, 2019.

> Defendants' Custodians: The Court has instructed the parties to meet and confer regarding custodians, and these discussions will be completed prior to the September 11, 2019 status conference. While the parties have reached agreement on numerous custodians, there are certain narrow categories of custodians that remain in dispute. Resolution of these custodian disputes now, will allow the parties to quickly start the deferred process of collecting documents once the Court has ruled on Defendants' Motions to Dismiss.

> Defendants' General Objections: Plaintiffs have asked Defendants to withdraw their improper general objections which are improper and violate Fed. R. Civ. P. 34(b)(2). *See e.g.*, *Fischer v. Forrest,* No. 14-cv-01304, 2017 WL 773694, *3 (S.D.N.Y. Feb. 28, 2017) ("From now on in cases before this Court, any discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege)"); *see also Liguria Foods, Inc. v. Griffith Labs, Inc.*, 320 F.R.D. 168 (N.D. Iowa 2017);

---

[1] Plaintiffs do not believe that Defendants' attempt to mudsling in this letter regarding the timing of specific meet and confer discussions is appropriate or productive. If the Court wants more facts regarding the timing and manner of individual meet and confer discussions by Plaintiffs and Defendants, Plaintiffs are willing to provide it.

*Ramirez-Cruz v. Chipotle Servs., LLC*, No. 15-cv-4514, 2017 WL 8947191 (D. Minn. May 11, 2017). Defendants main retort to this dispute is that Plaintiffs have asserted general objections too. While Plaintiffs dispute this mischaracterization of their responses, this is no reason to delay the resolution of this dispute.

Production of Complete Work Calendars: Certain Defendants have insisted on the production of incomplete and redacted work calendars based on "relevance." Plaintiffs have made it clear that work calendars are relevant documents and should be produced in their entirety under the Federal Rules and the ESI Protocol (Dkt. 292), which limits redactions to the categories of information agreed upon in Section II(K).

Production of Complete Telephone Records: Certain Defendants have indicated they intend to redact or produce incomplete phone records. These telephone records are relevant non-privileged documents which should be produced in their entirety under the Federal Rules and the ESI Protocol (Dkt. 292), which limits redactions to the categories of information agreed upon in Section II(K).

Production of Documents Relating to Benchmark Services: Certain Defendants have refused to produce documents relating to benchmarking services other than Agri Stats. Although these other benchmark services are not alleged as direct mechanisms of the conspiracy, they provide relevant market analysis and pricing information which is discoverable by Plaintiffs. These benchmark services will also provide a relevant comparison to the alleged conspiratorial information found in Agri Stats.[2]

Defendants agree it is appropriate to complete the parties meet and confer discussions in August of 2019, and have included extensive (and premature) briefing on these issues in this letter. Nevertheless, Defendants seek to cease all further discussions and defer the resolution of any disputes until an unknown date upon which the Court rules on their Motions to Dismiss. Plaintiffs believe this approach makes no sense and will result in substantial delays during the pendency and after the ruling on Defendants' Motions to Dismiss.

Moreover, Plaintiffs submit that these discovery disputes can be efficiently and effectively resolved at the September 11, 2019 hearing through the submission of joint

---

[2] This is not intended to be a complete list of all pending discovery disputes between Plaintiffs and Defendants. Plaintiffs reserve the right to present additional discovery issues they are unable to reach agreement upon with Defendants after the September 11, 2019 Status Conference.

letter briefs, rather than time consuming and costly formal discovery motions requested by Defendants.  Plaintiffs proposal is consistent with this Court's Practice Pointers, which advise, "Before filing a formal non-dispositive motion on a particular dispute, the parties should confer on whether the issue can be resolved instead through an informal telephone conference with Magistrate Judge Bowbeer."  *See* Magistrate Judge Hildy Bowbeer Practice Pointers and Preferences (Rev. Mar. 2019).

Consistent with the foregoing, Plaintiffs request that the Court enters the below schedule through the September 11, 2019 Status Conference.

| **Event** | **Deadline** |
|---|---|
| Deadline for parties to complete meet and confer regarding search methodology order | August 22, 2019 |
| Deadline for parties to complete meet and confer regarding Defendants and Plaintiffs' custodians/non-custodial document sources and objections to Rule 34 | August 22, 2019 |
| Deadline for parties submit a joint letter brief regarding certain pre-motion to dismiss disputes regarding Defendants' custodians and Rule 34 objections and responses | August 29, 2019 |
| Deadline for parties to file joint agenda and status conference report, including summary of status of search methodology discussions | September 4, 2019[3] |
| Status Conference Hearing | September 11, 2019 at 1:30 p.m. |

---

[3]  The Court already ordered the joint agenda and status report to be filed in its Order Setting Case Management Conference dated July 11, 2019 (Dkt. 351).

**Plaintiffs' Proposed Post Status Conference Schedule**

The benefits of Plaintiffs' proposal to continue working through the resolution of discovery disputes, custodian issues, and search methodologies, is that it will place the parties in the best position to expeditiously engage in the deferred tasks, such as collecting and producing documents once the Court rules on Defendants' Motions to Dismiss.

A comparison of Plaintiffs' and Defendants post status conference schedules highlights these differences. Plaintiffs proposal sets forth concrete and reasonable deadlines for the resolution of any remaining discovery disputes and the substantial completion of productions. Conversely, Defendants' proposal delays the resolution of numerous disputes and calls on the parties to file a further schedule relating to discovery deadlines 70 days after the ruling on their Motions to dismiss.

Plaintiffs proposed schedule following the September 11, 2019 Status Conference set forth below. Plaintiffs are willing to continue meeting and conferring with Defendants, and provide an update on the proposed schedule in the status report for the September 11, 2019 Status Conference.[4]

| Event | Deadline |
|---|---|
| Parties to begin meet-and-confer regarding production of structured data and deferred RFPs | September 12, 2019 |
| Parties to begin meet and confer on any deferred disputes concerning RFPs, custodians, or non-custodial data sources | 10 days after Order on Defendants' Motions to Dismiss ("MTD Order") |
| Parties to complete meet and confer on deferred RFPs and any deferred disputes concerning RFPs, custodians, or non-custodial data sources | 30 days after MTD Order |

---

[4] Plaintiffs have addressed certain deadlines proposed by Defendants relating to search methodology in the separate proposed search methodology order. The absence of such deadlines in Plaintiffs' proposal in no way suggests Plaintiffs would agree to forgo any such deadlines for the parties' search of documents, including the staging of initial productions of some priority custodians' documents prior to a second phase set of search terms to permit Plaintiffs a seed set from which to propose search terms.

| | |
|---|---|
| For any discovery disputes on these topics requiring motion practice, Parties to submit proposed briefing schedule to Court | |
| Parties to Serve Amended Objections and Responses to First Set of Requests for Production of Documents | 30 days after MTD Order |
| Production of Readily Available Responsive Phone Records for Agreed Document Custodians and Central Phone Lines | 30 days after MTD Order |
| Production of readily-available responsive Agri Stats reports from centrally-located files | 60 days after MTD Order |
| Rolling Production of Documents, Prioritizing Custodians as Agreed by the Parties or Ordered by the Court | 90 days after MTD Order |
| Deadline to reach agreement on production of structured data or seek relief from the court | 90 days after MTD Order |
| Commencement of Rolling Production of Documents Reviewed by Producing Party | 120 days after MTD Order |
| Substantial Completion of Document and Structured Data Productions | 180 days after MTD Order |

<u>**Defendants' Position**</u>

I.  **DEADLINE FOR THE PARTIES TO COMPLETE THEIR MEET AND CONFER EFFORTS AND TO REACH AGREEMENT OR DECLARE IMPASSE ON PENDING DISCOVERY DISPUTES**

Defendants propose August 28, 2019 as the date by which the parties must conclude their ongoing meet and confer efforts and reach an agreement or declare an impasse on pending discovery disputes (that is, current disputes over Plaintiffs' and Defendants' document custodians, Plaintiffs' and Defendants' non-custodial document sources, and Plaintiffs' and Defendants' responses to document requests). This date is late enough to afford the parties a reasonable amount of time to complete their discussions, but is also early enough to enable the parties to submit a joint report to the Court on September 4 in advance of the scheduled September 11 conference. During the last status conference, the Court said it will consider during the upcoming status conference which discovery disputes are ripe for decision and which of those disputes, if any, it would be appropriate to resolve before a ruling on the motions to dismiss. As Defendants explained at the July 2 status conference, the parties have devoted substantial resources toward preparing for discovery, so that in the event the pending motions to dismiss are denied in whole or in part, the parties can hit the ground running. The parties are still in the midst of negotiations over these custodians and other discovery-related matters, and it is likely that the areas of disagreement will be further narrowed with additional conversations.

Furthermore, if the Court decides to set a deadline for reaching agreement or declaring impasse on pending discovery disputes, Defendants request that the Court set a single deadline for all parties to file formal discovery motions. Plaintiffs propose staggered deadlines allowing them to file motions first, apparently to be followed by an unspecified later deadline for Defendants to file motions. However, there is no valid basis for setting different motion-practice deadlines for different parties, especially considering that the parties began negotiating document custodians and non-custodial sources for Plaintiffs and Defendants at roughly the same time.[5]

Plaintiffs' request for staggered deadlines is based on the fact that the parties have made more progress on Defendants' custodians and sources than on Plaintiffs' custodians and sources, but that is a function of Defendants being more forthcoming with information than Plaintiffs. Defendants will not burden the Court with a full recitation of the delays on Plaintiffs' part, but the following examples show that certain Plaintiffs would not engage

---

[5]     On or around May 15, Plaintiffs served their counter-proposals for custodians (and requests for further information on sources) on each Defendant. On May 17, Defendants served their corresponding proposals on each Plaintiff.

in any meet and confer calls on their custodians and sources for more than a month, while others have been extremely slow in providing basic information about relevant custodians and non-custodial sources:[6]

- Defendants served their custodian counter-proposal on Direct Purchaser Plaintiff ("DPP") John Gross & Co. ("John Gross") on May 17, 2019. Notwithstanding a number of attempts by Defendants to follow-up, John Gross provided no substantive response, and DPP counsel did not make themselves available for a meet-and-confer until July 16, 2019, nearly two months later. Defendants continue to wait for further information about John Gross following that meet-and-confer.

- Defendants had a meet and confer call with DPP Olean Wholesale Grocery Cooperative, Inc. ("Olean") on June 13 and sent a confirming letter on June 20, which listed the open questions that Olean needed to answer. Olean has not responded to that letter or confirmed a date for a follow-up call.

- Defendants are still waiting for a response from Commercial Indirect Purchaser Plaintiff ("CIPP") The Breakfast Joynt following the June 13, 2019 meet-and-confer over its potential custodians even though Defendants followed up with CIPP counsel on June 20 and July 19.

In short, although Defendants have engaged expeditiously with Plaintiffs to negotiate these matters, Plaintiffs have been far less active in providing information about themselves. Because of these delays, Defendants need additional time to finish meet and confer calls about Plaintiffs' discovery responses, and Defendants therefore request August 28 as the deadline for all parties to reach agreement or declare impasse on pending discovery disputes.

Defendants' proposal of an August 28 deadline for all parties to reach an agreement or declare an impasse also makes good sense, because (as noted above) it permits the parties to conclude their negotiations and inform the Court about any disputes in advance of the September 11 conference, where the Court could consider the list of impasses, hear argument from counsel on the proper timing of motion practice, and discuss next steps with the parties. Defendants are not asking for a stay of the case after September 11, as Plaintiffs repeatedly claim. Instead, Defendants propose that the parties conclude their meet and confer efforts by August 28, update the Court on any impasses on September 4, and then

---

[6] Defendants make these truthful, purely factual statements not to "mudsling," as Plaintiffs say, but to explain their basis for requesting August 28 as the deadline to complete meet and confer efforts as to all parties.

discuss next steps with the Court on September 11, at which time the Court can set a briefing schedule on any disputes the Court believes could be decided at that point. Finally, some of the discovery topics currently under negotiation are a two-way street, meaning that not only would it be more efficient for the Court to consider the issues together, but also the Court would benefit from assessing the issues all at once with full visibility into the positions taken by both sides and how a ruling would affect both sides.

## II.   PENDING DISCOVERY DISPUTES THAT COULD BE MEANINGFULLY PRESENTED TO THE COURT FOR ADJUDICATION BEFORE A RULING IS ISSUED ON THE MOTIONS TO DISMISS

The Court's July 2 Minute Entry "directed counsel to meet and confer on the following matters: . . . (2) Of those discovery disputes, which could be meaningfully presented to the Court for adjudication before a ruling is issued on Defendants' motions to dismiss (and by when), and which should be reserved until after that ruling is issued." During a conference call on July 18, Defendants attempted to confer on this issue, but Plaintiffs refused. Instead of meeting and conferring as ordered by the Court, Plaintiffs said they would send Defendants "a list" of disputes by July 25. Plaintiffs presented their list for the first time on the afternoon of July 23, thereby preventing any conference on the list and giving Defendants little time to consider it. Defendants nevertheless provide the following response to Plaintiffs' list of discovery disputes.

Plaintiffs propose that the Court resolve the following five categories of discovery disputes before the Court rules on the pending motions to dismiss: (1) the final list of document custodians for all 9 Defendant groups (but not for all 17 corporate Plaintiffs);[7] (2) the propriety (of Plaintiffs' and) Defendants' use of General Objections included with responses to document requests;[8] (3) the extent to which parties may redact entries on hard-copy calendars; (4) production of complete phone records, and (5) production of documents related to unspecified benchmarking services other than Agri Stats.

Defendants respectfully submit that costly and time-consuming motion practice on discovery disputes should not occur until after Judge Tunheim rules on the motions to

---

[7]     As discussed above, although Plaintiffs propose that the Court address disputes only as to Defendants' custodians, Defendants respectfully submit that the Court should consider discovery issues as to all parties on the same schedule. These numbers do not include CIPP Gondolier Pizza International, Inc., which recently announced that it decided to dismiss its case against Defendants (but has not yet taken any action to do so).

[8]     Plaintiffs refer to this as an issue that affects only Defendants' document responses, but as shown below, Plaintiffs' arguments apply equally to their responses to document requests.

dismiss (the "MTD Order").  The MTD Order could obviate the need for discovery for some or all parties and could define the scope of the case in a way that would affect the scope of discovery.  However, if the Court is inclined to entertain any discovery-related motions before the MTD Order, then Defendants believe that the only supposed impasse on the Plaintiffs' new list that the Court could theoretically provide guidance on before the MTD Order is the calendar-redaction issue.  In addition, regardless of when discovery-related motion practice begins for any issue on Plaintiffs' new list, Defendants request that the Court follow the normal procedures in Local Rule 7.1 for formal motion practice, rather than Plaintiffs' proposal of informal letter briefs.  Defendants will now address each of the five supposed discovery disputes listed in Plaintiffs' section of this Status Report.  In doing so, Defendants are not submitting "extensive briefing" on the merits of these issues, as Plaintiffs say twice.  All Defendants do here is explain why certain issues on Plaintiffs' new list of supposed discovery disputes are not ripe for Court involvement, are a total surprise to Defendants, and cannot be resolved before the MTD Order.

### A.        Final Document Custodian Lists

Defendants oppose early motion practice on document custodians because such disputes cannot be resolved before the MTD Order.  A final determination as to relevant custodians and what is proportional to the needs of the case will necessarily depend on the ultimate scope of the case, which the parties and the Court will not know until after the MTD Order.  Plaintiffs offer no explanation at all as to why the MTD Order would not affect custodian disputes, nor did they do so at the last status conference.[9]  And, confusingly, even Plaintiffs' latest schedule sets forth a period for meeting and conferring about custodians *following* the MTD Order.  *See supra*.

The parties have made progress on their negotiations.  The defense-side custodian negotiations started with Defendants proposing a total of 72 custodians.  Plaintiffs responded by demanding a total of *370 additional defense custodians, for a total of 442*.  In response, Defendants conditionally offered 78 more custodians, for a total of 150 custodians.  The parties are still negotiating, and their disputes continue to narrow.  On the other side, Plaintiffs started by proposing a total of 38 custodians.  Defendants responded with questions as to an additional 42 people who appeared to hold relevant positions at the

---

[9]        Indeed, at the last status conference, Plaintiffs effectively acknowledged that disputes concerning custodians could be affected by the scope of the case following the MTD Order.  July 2 Status Conf. Tr.  at 33 ("we're talking like impermissible general objections, whether or not complete copies of work calendars will be produced, categories of document custodians.  Those aren't things that are necessarily -- *maybe the latter more so* but those aren't necessarily things that revolve around what the motion-to-dismiss order says") (emphasis added).

Plaintiffs' companies and knowledge of relevant facts.[10]  As summarized above, Plaintiffs have been slow to respond to many of those questions, but the parties have made some progress and likely will make further progress if given additional time.

The Court previously declined to pre-judge the merits of Defendants' dismissal motions.  *See* Stay Order at 8 (Dkt. 289).  However, engaging in custodian-related motion practice now effectively would require the Court to pre-judge the merits of those motions, determine what the likely rulings will be, what those future rulings would mean for each Plaintiff and Defendant, which custodians would be relevant for the parties and claims that might remain after those rulings, and how many custodians would be proportional to the needs of the case in light of the future rulings.  Among other things, this inquiry would necessarily involve the Court understanding what the proposed custodians' roles were at each company during an allegedly relevant, 12-year time period, why one side contends that the disputed custodians are necessary given the conspiracy alleged, why the other side contends the disputed custodians are irrelevant, duplicative, or not proportional to the needs of the case, and whether there are other custodial or non-custodial sources of information that suffice for one side's stated need for each disputed custodian.

Two examples demonstrate how this detailed inquiry would necessarily be affected by the scope of the case as will be determined by the MTD Order when it is issued.

- First, many of the disputed custodians run far afield of Plaintiffs' alleged conspiracy that "from at least 2009" to the present, the pork-producing Defendants conspired "to limit hog supply" and "coordinate[] production limits" in order to increase prices of pork products in the United States, and that Agri Stats "supplie[d] the data necessary" for Defendants to "coordinate production limitations," and "to know that supply would not increase in the future." *See* Dkt. No. 83 at ¶¶ 2, 60, 120, 121-22. Given the broad swath of custodians that Plaintiffs believe is appropriate, Plaintiffs' current view of their case is apparently much more expansive than the conspiracy they actually alleged.  Any dispute over custodians would necessarily involve arguments about what this case is about, and resolving such disputes would require the Court to decide the scope of the alleged conspiracy *before* the issuance of the MTD Order that will bear heavily on that very issue.

---

[10]    These numbers do not include CIPP Gondolier Pizza International, Inc., for the reason explained above.  *See supra* note 2.  These numbers also do not include non-party Erbert & Gerbert's, Inc., for which CIPPs disclosed one custodian and other limited information but have since promised to amend their ESI Disclosures to remove these disclosures.  Defendants continue to wait for those amended disclosures.

- Second, the MTD Order could affect the relevant time period for the litigation, given Defendants' arguments that Plaintiffs' claims are barred by the statute of limitations, and given Plaintiffs' failure to allege *any* production cuts from 2014 forward. The only production dip to which they point during the latter half of the alleged conspiracy is in 2014, which Plaintiffs' own complaints show was the result of a widespread hog disease as opposed to any conspiracy, and Plaintiffs' allegations show dramatically *increasing* pork production every year since 2014. As such, disputes over custodians may become moot if the purported relevance of certain custodians stems from their employment during a period determined no longer to be relevant to the litigation.

Given these types of issues, Defendants have proposed a sensible schedule that requires the parties to meet and confer about any custodian-related disputes 10 days after the MTD Order and bring any disputes to the Court's attention within 30 days of the MTD Order. *See infra* at III. Defendants believe this is a far more practical, but still expeditious, time frame for resolving both sides' disputed custodians.

### B.      Both Sides' Use of General Objections

Defendants oppose Plaintiffs' request for early motion practice on the use of General Objections for several reasons, including that there is no ripe dispute for the Court to resolve. However, it is worth noting at the outset that this is an issue that runs both ways. That is, both sides used objections at the start of responses to document requests; Plaintiffs just used a different label in doing so. As noted in Exhibit A, Plaintiffs used the phrase "Scope Limitations" rather than General Objections but still took similar positions to Defendants (e.g., excluding privileged documents from production). Moreover, in response to Defendants' 27 Definitions and Instructions, Plaintiffs did not identify any basis for any objections to any of the Definitions and Instructions, but instead asserted the vaguest possible blanket objection to all of them: "Plaintiffs object to Defendants' boilerplate definitions and instructions under the December 2015 amendments to the Federal Rules of Civil Procedure." This response breaches Rule 34(b)(2)(B) by failing to "state with specificity the grounds for objecting to the request, including the reasons" and leaves Defendants completely in the dark as to which definition or instruction is objectionable, the bases for any objections, and whether documents are being withheld on the basis of the undisclosed objections. Thus, to the extent the Court is even inclined to consider this issue now, the Court should disregard Plaintiffs' suggestion that this issue affects only Defendants' document responses.

Defendants oppose Plaintiffs' request for early motion practice on Defendants' use of General Objections and Plaintiffs' use of Scope Limitations for the following reasons:

First, Plaintiffs' request is premature because there is no ripe dispute for the Court to resolve.  The parties continue to meet and confer on this issue, certain parties on both sides have discussed recently the possibility of serving amended document responses to address concerns raised by opponents, and additional negotiations would likely narrow any disputes.  Given the ongoing talks, the parties have not reached an impasse for the Court to resolve.

Second, it is important to note that Defendants have not asserted the sort of vacuous general objections that the courts condemned in the cases cited by Plaintiffs.  *See, e.g.*, *St. Paul Reins. Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 512 (N.D. Iowa 2000) (rejecting "boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc. without specifying how each request for production is deficient").  Defendants' counsel are experienced in complex antitrust litigation, are well aware of the 2015 amendments to Rule 34, and made sure to list under the heading of General Objections only those objections that applied broadly across Plaintiffs' document requests, while still specifying the basis for the objection.  It would have been inefficient and a waste of paper for Defendants to re-type the same language from the General Objections in response to each specific document request.

Third, Defendants have already resolved the only concern motivating Plaintiffs' complaints about Defendants' General Objections – the concern that plaintiffs do not know if any Defendant is withholding any category of documents based on a General Objection. Defendants' discovery responses explain what will be produced in response to Plaintiffs' requests, and the parties have been discussing the scope of those responses regularly in phone calls and letters since Defendants first served their written responses. At this stage, Defendants of course do not know if they will eventually need to withhold documents based on a General Objection (that is not already specifically incorporated into a specific request) because discovery is partially stayed and Defendants have not yet started collecting and reviewing documents.  However, each Defendant has committed that if it later decides to withhold a category of documents based on a General Objection, it will disclose that decision to Plaintiffs.  Thus, Defendants are not hiding the ball or forcing Plaintiffs to guess as to what is not being produced, and there is no ongoing or imminent prejudice to Plaintiffs that the Court must rectify through early motion practice over General Objections.

Finally, Defendants believe that motion practice over objections to document requests should await the MTD Order – for the obvious reason that the parties' objections and responses could change based on those rulings, thus possibly mooting any current disputes and making hurry-up motion practice now a needless waste of time.  The Court previously noted "the possibility that there will need to be additional negotiations to refine the agreements and the parties' disclosures after the motions are resolved."  Stay Order,

Dkt. No. 289, at 9. The Court also discussed with Plaintiffs' counsel at the status conference in January "that there could be caveats" built into the Defendants' initial responses to document requests and that Defendants might change their objections if their underlying assumptions change. Jan. 28, 2019 Tr. at 19. And when ordering Defendants to serve conditional written responses to Plaintiffs' document requests, the Court ordered Defendants to "identify pending issues in the motions to dismiss that are pertinent to the document requests and that could alter the scope of Defendants' production." Dkt. No. 264 at 2. Even Plaintiffs' proposed schedule for proceedings after the MTD Order includes a date by which Defendants must serve amended document responses. The opportunity to amend conditional written responses is logical because the MTD Order will define the scope of the remaining parties and claims, if any, and will necessarily affect the scope of the parties' productions and what is proportional to the needs of the case.

### C.      Redactions on Hard-Copy Calendars

Defendants oppose Plaintiffs' request for early and abstract motion practice over redactions from paper calendars for several reasons.

First, Plaintiffs' position on paper calendar redactions is apparently a moving target that might be clarified with additional negotiations. For several months prior to circulating their section of this Status Report, Plaintiffs had taken the position that the only possible relevance redaction from a paper calendar that they would accept would be an entry for a doctor's appointment. However, Plaintiffs now seem to recognize that the Court's ESI Protocol specifically allows a party to redact the following categories of personal information:

> (1) the information relates to medical or health issues of an individual; (2) social security numbers, bank account information, or personal passcodes; or (3) personal contact information of friends or family to the extent they do not work in the Pork industry or work for a Party's competitors.

ESI Protocol, Dkt. No. 292, at § II.K.

In addition, the Court's ESI Protocol allows a party to redact certain non-responsive and highly confidential competitive information:

> A      producing Party may redact specific highly confidential business information relating to non-pork businesses provided (1) the redacted information is both nonresponsive and irrelevant; and (2) the redacted information would not assist in understanding or providing context for the relevant portion of the document or document family of which it is a part.

*Id.*

For months, Plaintiffs have been essentially ignoring the Court's ESI Protocol and insisted on a special rule allowing a much narrower range of relevance redactions on paper calendars. Defendants believe that the parties should continue to meet and confer on what Plaintiffs' position is, whether that position now applies to all calendars (until July 23, Plaintiffs had focused solely on hard-copy calendars), and whether there is actually a dispute between the parties.

Second, Plaintiffs are asking the Court to rule on a hypothetical discovery dispute without a document or disputed redaction to review. If the parties engaged in early motion practice on this issue, Plaintiffs would basically be asking the Court for an advisory opinion without the benefit of a paper calendar or a redaction to consider. As of now, the Court does not yet know the final list of custodians, whether any particular custodian kept a paper calendar, whether Defendants will redact any information from such a calendar, or whether Plaintiffs will object to any such redaction. The redaction scenario Plaintiffs envision has not occurred yet and may never occur. Defendants believe it is improper to ask the Court to issue an early advisory opinion on what might possibly be a proper redaction without the benefit of knowing anything about a particular calendar, a particular entry, or the circumstances surrounding a redaction.

Third, it is worth noting that other courts have rejected Plaintiffs' argument that a party must produce an entire calendar, rather than just the pages with relevant entries.[11] As Defendants would demonstrate if forced to engage in early formal motion practice, this is not an issue on which courts unanimously adopt Plaintiffs' position. Rather, it is an issue that would require extensive, formal motion practice—a burden the Court and parties should not incur while awaiting the MTD Order, which could end the case entirely and make motion practice about calendars unnecessary.

---

[11]    *See, e.g.*, *Benjamin v. Sparks*, 2017 WL 1497930, at *4 (E.D.N.C. Apr. 26, 2017) (denying a motion to compel production of diaries, journals, and calendars in their entirety and finding that party's offer to disclose the relevant *entries* within each was a "reasonable compromise"); *Combe v. Cinemark USA, Inc.*, 2009 WL 3270767, at *1–2 (D. Utah Oct. 9, 2009) (parties not required to produce entire diary, but instead "only those pages that relate to the issues of the lawsuit"); *Carolan v. N.Y. Tel. Co.*, 1984 WL 368, at *5 (S.D.N.Y. May 17, 1984) ("In the event that portions of the diary are not pertinent to plaintiff's claims or the defenses asserted by defendants, those of course need not be produced."); *Cooke v. N.M. Jr. Coll. Bd.*, 579 F.2d 568, 570 (10th Cir. 1978) (rejecting request for a diary to be produced in its entirety).

While the MTD Order in and of itself should not affect any further guidance the Court is inclined to provide about the issue of relevance redactions from paper calendars, Defendants maintain motion practice is premature for the reasons explained above. However, if the Court is inclined to agree to Plaintiffs' request for early motion practice on this issue without a calendar or redaction to consider, then Defendants request that the dispute be presented through formal non-dispositive motion practice under Local Rule 7.1, with a briefing schedule to be agreed-upon by the parties and approved by the Court.

### D.     Production of Complete Phone Records

Defendants were surprised to see this issue listed in Plaintiffs' section of this Joint Status Report.  Before circulating their section of this Report on the afternoon of July 23, Plaintiffs had never once mentioned this as a brewing discovery dispute that might need Court involvement prior to the MTD Order.[12]  Plaintiffs still have never identified which Defendants are involved in this supposed dispute or which category of relevant phone records any Defendant has supposedly refused to produce.  Because Defendants are completely in the dark as to what this dispute might be and which parties are involved, Defendants cannot comment on whether this is an issue that the Court could decide now or that should wait for the MTD Order.

### E.     Unspecified Benchmarking Services Other Than Agri Stats

Plaintiffs also never mentioned this potential dispute before circulating their draft section of this Joint Status Report on the afternoon of July 23.  Although Plaintiffs insist that "Certain defendants have refused to produce documents relating to benchmarking services other than Agri Stats," Plaintiffs do not identify those Defendants, and Defendants themselves are not sure to which companies Plaintiffs are referring.  It is certainly true that Defendants have legitimately questioned Plaintiffs' stated need for "all documents" related to other, unspecified benchmarking services given their allegations that Agri Stats "acts as the modern equivalent of the proverbial smoke-filled room of the cartels of yesteryear" and allows the pork producing Defendants "to know that the supply of pork would not be increasing." Dkt. No. 83 at ¶¶ 3, 121.  Plaintiffs have never identified what other services might be relevant, and Defendants remain unclear why Plaintiffs need literally all documents about other services if Plaintiffs are getting the agreed-upon discovery about Agri Stats.  But those discussions between the parties remain ongoing.

Defendants respectfully submit that there is no sound reason for the Court to resolve any impasse that might be reached on this issue before the MTD Order is issued. The MTD

---

[12]     For example, Plaintiffs did not list this issue in the June 25 Joint Agenda and Joint Update Letter, Dkt. No. 341, or on the record at the July 2 Status Conference.

Order will almost certainly assess Plaintiffs' Agri Stats-related allegations given their centrality to the purported conspiracy and, in doing so, could define the alleged conspiracy in such a way that could affect the proportionality analysis with respect to any other, non-Agri Stats benchmarking services.

### F. Formal Motion Practice on Discovery Disputes

Regardless of when discovery-related motion practice begins, either before or after the MTD Order, Defendants object to Plaintiffs' suggestion that discovery disputes should be resolved through informal letter briefs.   Defendants instead request formal non-dispositive motion practice under the Local Rules of the District of Minnesota with a briefing schedule to be agreed-upon by the parties and approved by the Court.   The procedural safeguards in Local Rule 7.1 are particularly important in a case like this one, which will require the Court to examine detailed fact issues to adjudicate discovery disputes.  Local Rule 7.1 implements the fundamental procedural safeguards set forth in Fed. R. Civ. P. 7(b), which requires that "requests for a court order must made by motion" through a writing that "state[s] with particularity the grounds for seeking the order." Removing any doubt, Local Rule 7.1(b)(4) declares that "discovery-related motions" are non-dispositive motions subject to the Rule's provisions. While Defendants may consent to informal submissions for certain filings, such as updates to the Court prior to a status conference, Defendants do not consent to informal letter briefs for the supposed discovery disputes listed in Plaintiffs' submission.  Evaluating the fairness and burden of discovery disputes in a large, complex case like this will require a fact-intensive inquiry of the type that Local Rule 7.1 facilitates through briefing, exhibits, and oral argument.

Defendants are mindful of the Court's interest in efficiency and the Court's Practice Pointers and Preferences, and Defendants appreciate the Court's willingness to resolve appropriate matters through less formal procedures.   But Plaintiffs' demands regarding documents custodians, as just one example, cannot be soundly adjudicated without a full record and oral argument.   Accordingly, Defendants ask that the Court's scheduling order provide for non-dispositive motion practice under Local Rule 7.1 to allow for full briefing, supporting materials, and oral argument.

### III. SETTING DEADLINES FOR DISCOVERY AND OTHER TASKS THAT WOULD BE TRIGGERED WHEN THE RULING IS ISSUED ON THE MOTIONS TO DISMISS

Consistent with the Court's guidance at the last status conference, Defendants have proposed a process-oriented and orderly schedule that allows for "supplemental meeting and conferring in the immediate wake" of the MTD Order on the issues where Defendants believe that the "the metes and bounds of Judge Tunheim's order could make a difference in how those disputes are resolved," while allowing some document production to get

underway promptly.  July 2 Status Conf. Tr. 35; *see also id.* at 40 (suggesting the parties consider a schedule that provides for "specific deadlines," for example "within 'X' days after that order we are going to have this conversation.  Within 'Y' days we know that we will be able to produce this.").

Defendants' proposed schedule is set forth below, and the key features include the following:

- With respect to any custodian- or RFP-related disputes remaining as of August 28, the parties are required to meet and confer within 10 days of the MTD Order to see if the dispute has been mooted, requires further negotiation, or remains ripe.  Any disputes on these topics that cannot be resolved through these supplemental meet-and-confers will be identified to the Court within 30 days of the MTD Order along with a proposed briefing schedule for formal motion practice.

- Adoption of Plaintiffs' proposal to produce readily-available responsive phone records within 30 days of the MTD Order.  In addition, Defendants have proposed producing within 60 days of the MTD Order readily-available responsive Agri Stats reports contained in central files.

- A period of time to allow the parties to undertake negotiations required by the ESI Protocol on search methodology[13] and structured data, and deadlines to bring any related disputes to the Court through formal motion practice.

- Commencement of the rolling production of documents from the files of agreed-upon custodians tied to the date of the resolution of negotiations – either by the parties' agreement or Court order – on search terms (or alternative review methodologies such as technology assisted review ("TAR")) and RFPs.

---

[13]      Plaintiffs again raise their proposed Search Methodology Order and claim that "Defendants have ignored this proposal entirely."  That is not true.  Defendants are well aware that the Court instructed the parties to meet and confer on this issue before September 11.  However, at the July 2 status conference, the Court specifically said that it did not want Plaintiffs' proposed order "to overwhelm the other meeting and conferring that I think has more urgency right now," July 2 Status Conf. Tr. at 59, and the Court's July 2 Minute Entry did not instruct the parties to update the Court on this issue by July 25.  Therefore, Defendants will be available to meet and confer on Plaintiffs' *Broiler* proposal between now and the September 4 status report, while noting that there is already an ESI Protocol that addresses search methodology.

- A deadline for submitting a complete case management order for the Court's approval. Such a proposal shall include dates for substantial completion of document production, but defers setting that deadline until 70 days after the MTD Order to allow the parties to resolve pending disputes and begin their document collections because, only at that stage, would the parties have any sense of the approximate scope of discovery and how long document production might realistically take.

Defendants' Proposed Schedule

| **Event** | **Deadline** | **Related Information** |
|---|---|---|
| Parties begin meet and confer on any pending disputes concerning RFPs and custodians.<br><br>Deadline for initial meet-and-confer re time period for structured data culling. | T + 10 days after MTD Order | Meet-and-confer required on data by section V.D of the ESI Protocol [Doc. No. 292]. As forth in section V.A.1 of the ESI Protocol, discussions on (starting) time period need to happen within 30 days of ESI ruling [Doc. No. 292]<br><br>*Plaintiffs' schedule adopts Defendants' T+10 deadline in part.* |
| Deadline for Parties to serve Amended Objections and Responses to First Set of Requests for Production of Documents | T + 30 days after MTD Order | *Accepts Plaintiffs' proposal from Joint Updated Letter [Doc. No. 341]* |

| | | |
|---|---|---|
| Deadline for Parties to complete meet and confers on (1) pending disputes concerning RFPs and custodians, (2) time period for data culling.<br><br>For any discovery disputes on these topics requiring motion practice, Parties to submit proposed briefing schedule to Court. | T + 30 days after MTD Order | *Plaintiffs' schedule adopts Defendants' T+30 deadline in part.* |
| Production of readily-available responsive phone records for agreed-upon document custodians and central phone lines from centrally-located files. | T + 30 days after MTD Order | *Accepts Plaintiffs' proposal from Joint Updated Letter [Doc. No. 341] and clarifies production will be from centrally-located files.* |
| Deadline for Producing Party to notify Requesting Party of intent to use search terms and disclose initial search terms (or other search methodology process). | T + 40 days after MTD Order | See section V.C.1.a of the ESI Protocol [Doc. No. 292] |
| Deadline for Parties to start meet-and-confer on negotiation of search terms.<br><br>Deadline for Parties to hold meet-and-confer re production of structured data. | T + 55 days after MTD Order | See above.<br><br>Also noted above, meet-and-confer required on data by section V.D of the ESI Protocol [Doc. No. 292]. |
| Production of readily-available responsive Agri Stats reports from centrally-located files. | T + 60 days after MTD Order | *Plaintiffs' schedule adopts Defendants' T+60 deadline* |

| | | |
|---|---|---|
| Deadline to complete search term negotiations.<br><br>For any disputes on search terms requiring motion practice, Parties to submit proposed briefing schedule to Court. | T + 70 days after MTD Order | |
| Parties to submit joint status report with proposal(s) for case management (scheduling) order for remainder of the case. With respect to discovery, proposal(s) will include deadlines for substantial completion of document and data productions. | T + 70 days after MTD Order | |
| Commencement of rolling production of responsive documents from files from agreed-upon custodians | If no dispute on search terms and RFPs, 30 days from agreement on search terms. Otherwise, 30 days following the Court's resolution of RFP and search term disputes. | |
| Deadline to reach agreement on production of structured data or seek relief from the court | T + 90 days after MTD Order | *Plaintiffs' schedule adopts Defendants' T+90 deadline* |

Although Plaintiffs have not engaged in any meaningful meet and confer with Defendants over Defendants' proposed schedule, Plaintiffs have subsequently adopted a few of the deadlines Defendants have proposed as summarized in the chart above.

Overall, however, Plaintiffs' schedule remains impractical and incoherent because, among other things, it (1) contemplates motion practice on custodians *before* the MTD Order, but also requires the parties to meet and confer on custodians *after* the MTD Order, (2) contemplates no time at all and sets no deadlines for the development of and negotiations over search terms, yet sets a rigid deadline for rolling production of documents, and (3) sets an arbitrary deadline for substantial completion for production (which, notably, is significantly shorter than the deadline set in the *Broiler* case) before the

parties even know the scope of the case following the MTD Order or begin to collect any documents. For these reasons, Defendants respectfully submit that their proposed schedule—which allows the parties to commence meaningful discovery in an orderly and efficient manner following the MTD Order—provides a more sensible path forward in this litigation.

Dated: July 26, 2019

/s/ Bobby Pouya
Bruce L. Simon
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

Clifford H. Pearson
Daniel L. Warshaw
Bobby Pouya
Michael H. Pearson
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN #0387900)
Joseph C. Bourne (MN #0389922)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com
jbourne@pswlaw.com

/s/ Brian D. Clark
W. Joseph Bruckner (MN #0147758)
Elizabeth R. Odette (MN #0340698)
Brian D. Clark (MN #0390069)
Simeon A. Morbey (MN #0391338)
Arielle S. Wagner (MN #0398332)
Stephanie A. Chen (MN #0400032)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com
aswagner@locklaw.com
sachen@locklaw.com

*Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

*/s/ Shana E. Scarlett*
Steve. W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Britany N. Resch (#0397656)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
bresch@gustafsongluek.com

*Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs*

*/s/ Jonathon W. Cuneo*
Shawn M. Raiter (MN# 240424)
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6518
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Blaine Finley
Yifei "Evelyn" Li
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cunelolaw.com

*Co-Lead Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs*

*/s/ Mark L. Johnson*

Mark L. Johnson (#0345520)
Bethany Krueger (#0306368)
Virginia R. McCalmont (#0399496)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
bkrueger@greeneespel.com
vmccalmont@greeneespel.com

Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
Christina Briesacher (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
christina.briesacher@kirkland.com

*Counsel for Clemens Food Group, LLC
and The Clemens Family Corporation*

*/s/ Richard A. Duncan*

Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegrebd.com
aaron.vanoort@faegrebd.com
craig.coleman@faegrebd.com
emily.chow@faegrebd.com
isaac.hall@faegrebd.com
bryan.washburn@faegrebd.com

*Counsel for Hormel Foods Corporation
and Hormel Foods, LLC*

/s/ Jaime Stilson
Jaime Stilson (#0392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 492-6746
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert E. Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William H. Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation
and Mitsubishi Corporation (Americas)*

/s/ Donald G. Heeman
Donald G. Heeman (#0286023)
Jessica J. Nelson (#0347358)
Randi J. Winter (#0391354)
SPENCER FANE
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
Robert P. Vance, Jr. (*pro hac vice*)
QUINN   EMANUEL   URQUHART   &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
bobbyvance@quinnemanuel.com

*Counsel for JBS USA Food Company and
JBS USA Food Company Holdings*

/s/ William L. Greene
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
Jon M. Woodruff (#0399453)
STINSON LEONARD STREET LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
john.woodruff@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LEONARD STREET LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

*Counsel for Seaboard Foods, LLC and Seaboard Corporation*

/s/ John A. Cotter
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
LARKIN   HOFFMAN   DALY   &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050   Connecticut   Avenue,   N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

*Counsel for Smithfield Foods, Inc.*

/s/ Aaron Chapin
Aaron Chapin (#06292540)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
aaron.chapin@huschblackwell.com

Gene Summerlin (*pro hac vice*)
Marnie Jensen (*pro hac vice*)
Ryann Glenn (*pro hac vice*)
Kamron Hasan (*pro hac vice*)
Quinn Eaton (*pro hac vice*)
Sierra Faler (*pro hac vice*)
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154
(402) 964-5000
gene.summerlin@huschblackwell.com
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com
kamron.hasan@huschblackwell.com
quinn.eaton@huschblackwell.com
sierra.faler@huschblackwell.com

*Counsel for Triumph Foods, LLC*

/s/ David P. Graham
David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
AXINN,               VELTROP &
HARKRIDER LLP
950 F Street, N.W.
Washington, D.C. 20004
(202) 912-4700
radcox@axinn.com
trider@axinn.com

*Counsel for Tyson Foods, Inc., Tyson
Prepared Foods, Inc. and Tyson Fresh
Meats, Inc.*

*/s/ Peter H. Walsh*

Peter H. Walsh (#0388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3000
F. (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Jennifer A. Fleury (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com

*Counsel for Agri Stats, Inc.*