## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION*<br><br>This Document Relates To :<br>*All Actions* | No. 0:18-cv-01776 (JRT-HB)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING *EX PARTE* LAWYER COMMUNICATIONS** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING <u>*EX PARTE* LAWYER COMMUNICATIONS</u>

Following the dismissal of Plaintiffs' Complaints, Defendants learned that Plaintiffs have been contacting and interviewing industry participants, including Defendants' former and current employees.  In one such instance, an investigator employed by Plaintiffs called a current Clemens employee and identified himself as a "researcher," but did not disclose that he worked for Plaintiffs and that his "research" was on their behalf.  Although contacting former or current employees is not *per se* problematic, Plaintiffs' methods are misleading and inappropriate.  Accordingly, to safeguard the rights of parties and non-parties alike, Defendants respectfully ask the Court to enter the Proposed Protective Order, which requires each party to fully disclose their representative capacity, inquire whether the individual contacted is a current employee of a party or represented, and inform the individual contacted of his or her right to refuse to be interviewed or to have counsel present during the interview.

**BACKGROUND**

On August 28, 2019, an investigator for Plaintiffs called current Clemens Family Corporation Chief Relationship Officer, John Reininger, and left him a voicemail.  (Aff. J. Reininger ¶ 3.)  In his voicemail, the investigator did not identify himself as an investigator or as an employee of a law firm.  (*Id.* ¶ 4.)  Nor did he say that he worked for Plaintiffs or that he was calling with respect to this litigation.  (*Id.*)  Rather, the investigator represented that he was a "researcher looking into the pork industry."  (*Id.*)  Specifically, he stated:

> Hi Mr. Reininger.  My name is Matt Isaacs.  I'm a researcher looking into the pork industry.  I've seen that you worked with pork companies for awhile.  Please give me a call back as soon as you can. My number is 510-725-3043.  That's 510-725-3043.  Not selling anything, just wanted to ask you a few quick questions.  Please give me a call.  Thanks a lot.  Bye Bye.[1]

(*Id.*)

Having no idea that the caller worked for a law firm,[2] let alone that he had an interest in this lawsuit, Mr. Reininger returned the call.  (*Id.* ¶ 5.)  The investigator answered.  (*Id.*) During the approximately two minutes that followed, the investigator pressed Mr. Reininger about his experience related to hog farming, mentioned that he was particularly interested in speaking with individuals who worked on a farm between 2009 and 2013, and

---

[1]   In the event it would be helpful to the Court, Defendants are prepared to provide a copy of the voicemail recording Mr. Reininger received from the investigator.

[2]   Mr. Isaacs is an employee of Hagens Berman Sobol Shapiro LLP.  Per the firm's website, Mr. Isaacs current role is "Investigator."  (Ex. 1, Hagens Berman Sobol Shapiro LLP Website, Matt Isaacs.)

\

indicated he was trying to gain information on the industry generally.  (*Id.* ¶¶ 7, 8.)  The investigator ***never*** (1) confirmed if Mr. Reininger currently or previously worked for Clemens, (2) asked if Mr. Reininger was represented by counsel, (3) explained his role in the litigation and the fact that he was gathering information on behalf of Plaintiffs, or (4) advised Mr. Reininger of his right to refuse to be interviewed and his right to have his own counsel present.  (*Id.* ¶ 6.)

Plaintiffs knew that Mr. Reininger was a current Clemens employee.  In fact, before this case was dismissed, Plaintiffs asked Defendants to include Mr. Reininger as one of Clemens' document custodians.  (Ex. 2, May 15, 2019 Letter from J. Bourne to C. Briesacher.)  Not only that, but Clemens identified Mr. Reininger as a Clemens employee in over a dozen organizational charts that Clemens produced to Plaintiffs in this matter. Indeed, the current Clemens website includes Mr. Reininger's photograph and identifies him as "Current Senior Leadership."  (Ex. 3, Clemens Food Group Website.)

Because the methods Plaintiffs' investigator employed in this interview did not comport with the applicable rules of professional conduct, Defendants had—and continue to have—reason to doubt the compliance of Plaintiffs' continuing investigative efforts. Accordingly, Defendants sought to reach agreement with Plaintiffs' counsel regarding the parameters of their investigative interviews.  In response, Plaintiffs indicated they had not had any "substantive communications with current employees of Clemens" and "endeavored in [their] initial communication to confirm that these individuals are no longer employed by Clemens."  (Ex. 4 at Aug. 30, 2019 email from Counsel for Plaintiffs to Counsel for Clemens.)  Knowing this was not true in at least Mr. Reininger's case—where

3

\

Plaintiffs **did** seek to have a substantive communication with a ***current*** Clemens employee without even attempting to confirm whether he was currently employed by Clemens or represented—Defendants asked Plaintiffs to agree to the following safeguards: (1) fully disclose representative capacity to the individual contacted, including that Plaintiffs and their investigators are working for Hagens Berman and representing Plaintiffs in this lawsuit, and the reasons for seeking the interview; (2) inquire and confirm the individual is not a current employee of any Defendant, and if so, stop the interview immediately; (3) inquire whether the individual is currently represented, and if so, stop the interview immediately; (4) inform the individual of his or her right to refuse to be interviewed; (5) inform the individual of his or her right to have counsel of their choosing present during the interview; and (6) inform the individual that he or she should not divulge privileged communications. (*Id.* at Sept. 12, 2019 email from Counsel for Clemens to Counsel for Plaintiffs.) Plaintiffs refused, instead agreeing only "at the beginning of any substantive conversation, [Plaintiffs'] investigator identifies that they are affiliated with Hagens Berman and asks if they are speaking with a current employee. If someone does so identify, the call is ended." In addition, Plaintiffs revised their position that no "substantive communications" with current Clemens employees had occurred, admitting instead that their investigator's interview of Mr. Reininger was "inadvertent error." (*Id.* at Oct. 1, 2019 email from Counsel for Plaintiffs to Counsel for Clemens.)

## ARGUMENT

Whether Plaintiffs' improper outreach to a known employee of a represented party was "inadvertent" or not, Plaintiffs' refusal to agree to safeguards that would ensure that

4

\

their conduct is consistent with ethical requirements before pursuing their investigative interviews prompts this request for a protective order from the Court.  Defendants submit that a protective order will be beneficial to the parties to ensure that all are operating under a clear set of ground rules with respect to contacting represented and unrepresented individuals.

The Minnesota Rules of Professional Conduct (the "Rules") are clear.  Lawyers must make reasonable efforts to ensure that the conduct of their non-lawyer assistants, including investigators, comport with the professional obligations of the lawyer.  (Rule 5.3.) With respect to represented parties, Rule 4.2 requires that a lawyer "not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter."  *See In re Disciplinary Action against McCormick*, 819 N.W.2d 442, 443 (Minn. 2012) (attorney violated Rule 4.2 by asking an investigator to meet with represented person and ask him questions about his planned testimony at trial). Under this rule, five classes of employees of an adversary's corporation may never be contacted *ex parte*.[3]

---

[3]   The five classes of employees of an adversary's corporation who may never be contacted *ex parte* are:

1. Current officials of the corporation or organization who have managerial responsibility;

2. Other current corporate or organizational employees whose act or omission in connection with the matter may be imputed to the corporation or organization for purposes of civil or criminal liability;

With respect to those employees who are not deemed to be represented persons, Rule 4.3 requires counsel "not state or imply that the lawyer is disinterested," "clearly disclose that the client's interests are adverse to the interests of the unrepresented person," "make reasonable efforts to correct" an unrepresented person's misunderstanding of the lawyer's role in the matter when a lawyer knows of such misunderstanding, and not give legal advice other than the advice to secure counsel.

Minnesota courts impose limitations on *ex parte* communications with employees consistent with the Rules' requirements. For example, in *Paulson v. Plainfield Trucking, Inc.*, 210 F.R.D. 654, 659 (D. Minn. 2002), Plaintiff sought *ex parte* communications with Defendant's employees that were not within the classes of employees with whom counsel for an adversary may never have *ex parte* communications. The Court permitted the communication, but drew Plaintiff's attention to Rule 4.3 in setting the following

---

3. Those who are responsible for implementing the advise [*sic*] of the corporation's or organization's lawyers;

4. Any members of the corporation or organization whose own interests are directly at stake in a representation; and

5. An agent or servant of the corporation or organization whose statement concerns a matter within the scope of the agency or employment, which statement was made during the existence of the relationship and which is offered against the corporation or organization as an admission. However, ex parte interviews of employees who are 'mere witnesses' to an event for which the corporation is sued (i.e., holders of factual information), are permitted.

*Paulson v. Plainfield Trucking, Inc.*, 210 F.R.D. 654, 657–58 (D. Minn. 2002).

6

\

limitations:   Plaintiff's attorney or investigator was "to fully disclose his or her representative capacity to the employee; state the reason for seeking the interview as it concerns [Plaintiff] and [Defendant]; and inform the employee of his or her right to refuse to be interviewed, and his or her right to have their own counsel present." *Id.* at 659.  The Court cautioned, "[f]ailure to abide by these directions will result in the imposition of appropriate sanctions." *Id.  See also Eldredge v. City of Saint Paul*, No. CV 09-2018 (JRT/JSM), 2010 WL 11561317, at *20 (D. Minn. Sept. 29, 2010) ("When plaintiff's counsel contacts City employees *ex parte* for informal interviews, prior to any interview, counsel shall fully disclose that she represents plaintiff in this litigation, state the reason for seeking the interview as it concerns plaintiff's litigation against the City, inform the employee of his or her right to refuse to be interviewed, and inform the employee that he or she may have their own attorney present.  If the employee agrees to be interviewed after this disclosure, plaintiff's counsel may proceed with the interview."); *Cosgrove v. OS Rest. Servs., Inc.*, No. 10-CV-1937 (SRN/SER), 2011 WL 13312206, at *2 (D. Minn. Feb. 28, 2011) ("[B]ased on Rules 4.2, 4.3, and 4.4, Plaintiffs must inform OSI's former employees that they are not required to speak with Plaintiffs and that they have the right to have OSI's counsel or their own counsel present.").

Plaintiffs' proposal to only notify the interviewee of their affiliation with Plaintiffs' counsel and ask if the individual is a current employee *if* the conversation is "substantive" is vague and does not comport with the Rules.  Neither the Rules nor case law applying them require inquiries and disclosures related to identification and representation only where the conversation is "substantive."  Further, Plaintiffs non-compliant proposal would

7

\

leave it to their discretion to determine when a conversation becomes "substantive" such that it would trigger their offered disclosures.  Plaintiffs further refuse to inform those they interview that they are conducting the interview for purposes of the instant litigation, and that the interviewees have a right to refuse to be interviewed and/or to have counsel of their choosing present.  Defendants' proposal, on the other hand, seeks to implement the same ground rules that Minnesota courts have ruled are proper.  (*See* Proposed Protective Order.) These simple guideposts will ensure any investigative interviews are conducted in compliance with the applicable rules.

\

## CONCLUSION

For the foregoing reasons, this Court should enter the Proposed Protective Order.

Dated: October 15, 2019

Respectfully submitted,

*/s/ Daniel E. Laytin, P.C.*

Mark L. Johnson (#0345520)
Virginia R. McCalmont (#0399496)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
vmccalmont@greeneespel.com

Daniel E. Laytin, P.C. (*pro hac vice*)
Christa C. Cottrell, P.C. (*pro hac vice*)
Christina L. Briesacher (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
312-862-2000
dlaytin@kirkland.com
ccottrell@kirkland.com
christina.briesacher@kirkland.com

*Attorneys for Clemens Food Group, LLC
and the Clemens Family Corporation*

\

*/s/ Peter H. Walsh*
Peter H. Walsh (# 388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3000
F. (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Jennifer A. Fleury (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com

*Counsel for Agri Stats, Inc.*

*/s/ Richard A. Duncan*
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegrebd.com
aaron.vanoort@faegrebd.com
craig.coleman@faegrebd.com
emily.chow@faegrebd.com
isaac.hall@faegrebd.com
bryan.washburn@faegrebd.com

*Counsel for Hormel Foods Corporation
and Hormel Foods, LLC*

*/s/ Jaime Stilson*
Jaime Stilson (#392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 492-6746
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert E. Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William H. Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation*
*and Mitsubishi Corporation (Americas)*

*/s/ Donald G. Heeman*
Donald G. Heeman (#286023)
Jessica J. Nelson (#347358)
Randi J. Winter (#391354)
Daniel R. Haller (#396497)
FELHABER LARSON
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
(612) 339-6321
dheeman@felhaber.com
jnelson@felhaber.com
rwinter@felhaber.com
dhaller@felhaber.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
Robert P. Vance, Jr. (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
bobbyvance@quinnemanuel.com

*Counsel for JBS USA Food Company and*
*JBS USA Food Company Holdings*

*/s/ William L. Greene*
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
Jon M. Woodruff (#0399453)
STINSON LEONARD STREET LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
john.woodruff@stinson.com

J. Nicci Warr (pro hac vice)
STINSON LEONARD STREET LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

*Counsel for Seaboard Foods, LLC and
Seaboard Corporation*

*/s/ John A. Cotter*
John A. Cotter (134296)
John A. Kvinge (0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (pro hac vice)
GIBSON, DUNN & CRUTCHER, LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

*Counsel for Smithfield Foods, Inc.*

\

<u>/s/ Aaron Chapin</u>
Aaron Chapin (#6292540)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
aaron.chapin@huschblackwell.com

Gene Summerlin (*pro hac vice*)
Marnie Jensen (*pro hac vice*)
Ryann Glenn (*pro hac vice*)
Kamron Hasan (*pro hac vice*)
Quinn Eaton (*pro hac vice*)
Sierra Faler (*pro hac vice*)
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154
(402) 964-5000
gene.summerlin@huschblackwell.com
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com
kamron.hasan@huschblackwell.com
quinn.eaton@huschblackwell.com
sierra.faler@huschblackwell.com

*Counsel for Triumph Foods, LLC*

<u>/s/ David P. Graham</u>
David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
AXINN, VELTROP &
HARKRIDER LLP
950 F Street, N.W.
Washington, D.C. 20004
(202) 912-4700
radcox@axinn.com trider@axinn.com

*Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.*

13

\