# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>Consumer Indirect Purchaser Plaintiff Actions | Case No. 0:18-cv-01776-JRT-HB<br><br>CONSUMER INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING EX PARTE LAWYER COMMUNICATIONS |

## I. INTRODUCTION

The Consumer Indirect Purchaser Plaintiffs[1] led the investigation into the pork industry price fixing conspiracy and were the first to shine a light onto the industry's hidden conduct. To expose this conspiracy, Plaintiffs have conducted a significant investigation into the industry – including speaking with economists, former industry participants, and experts in the field to gather information and place it into context. This kind of methodical investigation is not only permissible under the rules, it is the gold standard for bringing forth a well-pleaded Complaint. Without this important, old-fashioned background investigatory work, it is likely that Defendants would instead be arguing that Plaintiffs' complaint lacks specificity and has no factual support.

It should be no surprise that Defendants now improperly seek to stymie Plaintiffs' investigation. To do so, they have manufactured a dispute based on an inadvertent, two minute-introductory call where no material information was exchanged. Instead of meeting and conferring on this issue in good faith, Defendants took the first opportunity they could to raise this overblown issue before the Court so they could ask for restrictions to be placed on Plaintiffs' investigators.[2] Defendants conduct should not be rewarded and Plaintiffs' investigation should be allowed to proceed unhindered.

---

[1] Throughout this response, Consumer Indirect Purchaser Plaintiffs are referred to as "Plaintiffs."

[2] *See* Mag. J. Hildy Bowebeer - Practice Pointers and Preferences (Rev. Mar. 2019) ("The obligation to meet and confer before filing a non-dispositive motion, as set forth in the Local Rules, is critical. A mere exchange of emails or letters without diligent attempts at personal contact will generally not be considered sufficient to discharge this obligation.").

Plaintiffs do not dispute that on August 28, 2019, Plaintiffs' investigator, Matthew Isaacs, contacted John Reininger, who is currently employed by Defendant Clemens Family Corporation. Prior to becoming an investigator for Hagens Berman, Mr. Isaacs taught investigative journalism for the University of California, Berkeley Graduate School of Journalism. As a journalist who developed several articles for The Guardian, Reuters, PBS Frontline, and ProPublica, Mr. Isaacs focused on investigating international business crime and misconduct. At the time Mr. Isaacs placed this call, Mr. Isaacs mistakenly believed that Mr. Reininger was a hog farmer and not employed by any Defendant.[3] Mr. Isaacs left a brief voice message for Mr. Reininger that introduced himself, explained that he was researching the pork industry, and gave a phone number to Mr. Reininger.

Shortly thereafter, Mr. Reininger returned Mr. Isaacs's call, and the two spoke on the phone briefly. After exchanging pleasantries, Mr. Isaacs explained that he contacted Mr. Reininger because he believed that Mr. Reininger worked on a hog farm and was interested in speaking with hog farmers.  At no time during the call did Mr. Reininger tell Mr. Issacs that he was employed by Clemens.  But before proceeding with any substantive interview, Mr. Isaacs sought to verify that his information was accurate – that

---

[3] It is not Plaintiffs' general practice to have investigators contact Defendants' current employees, despite the limited exceptions that apply under Rule 4.2 of the Minnesota Rules of Professional Conduct. Plaintiffs do not intend to contact any of Defendants' current employees and no substantive communications with any of Defendants' current employees have occurred. *See* Declaration of Steve Berman in Support of Plaintiffs' Response to Defendants' Motion for Protective Order, ¶¶ 2-4 (hereinafter "Berman Decl."), concurrently filed herewith.

Mr. Reininger worked on a hog farm. In response, Mr. Reininger indicated that he did not work in the industry. The call then ended.[4]

This brief, two-minute introduction was the only time Mr. Isaacs spoke to Mr. Reininger. No substantive information was discussed on the call. No privileged information was revealed. Simply put, although the call was inadvertent, nothing happened to prejudice Defendants in any way. Yet Defendants now seek to impose a strict set of new required disclosures for *all* interviews – including interviews with nonparties who are not associated with the Defendants – based on this short, non-substantive call. Essentially, the Defendants argue that an investigator must make six formal disclosures – before exchanging pleasantries and introductions and before confirming the identity of the person with whom they are speaking. This is unreasonable and it not required under the law. For these reasons, Plaintiffs oppose Defendants' motion for a protective order. In the alternative, Plaintiffs request that the Court limit the protective order so that it applies narrowly and specifically to the Defendants' current and former employees who cannot otherwise properly be contacted, but not nonparties unrelated to the Defendants.

## II.   ARGUMENT

Even though Mr. Isaacs's contact with Mr. Reininger was inadvertent and caused the Defendants no prejudice, the Defendants are using this call as opportunity to limit

---

[4] *See* Declaration of Matt Isaacs in Support of Consumer Indirect Purchaser Plaintiffs' Response to Defendants' Motion for Protective Order Concerning Ex Parte Lawyer Communications, ¶¶ 5, 10 (hereinafter "Isaacs Decl."), concurrently filed herewith.

- 3 -

Plaintiffs' investigation. Mr. Isaacs did not contact Mr. Reininger with the intent to seek privileged material or gather any information related to Mr. Reininger's employment with Clemens.[5] That fact is plain from Defendants' papers. In fact, Mr. Isaacs mistakenly believed that Mr. Reininger was not employed by the Defendants at all. *Id.*, ¶¶ 4, 6. As Mr. Isaacs made clear within the first two minutes of the phone conversation, Mr. Isaacs contacted Mr. Reininger because he thought Mr. Reininger was a hog farmer that worked *with* the Defendants. *Id.*, ¶ 4; *See also* Defs.' Mot. at 2 (Mr. Isaacs states, "I've seen that you worked with pork companies for a while."). Before conducting any interview, Mr. Isaacs explained to Mr. Reininger that he was interested in speaking with hog farmers to gather general information about the industry. Isaacs Decl., ¶ 5. Mr. Isaacs then attempted to verify that Mr. Reininger worked as a hog farmer. *Id.*, ¶ 5; *see also* Reininger Aff., ¶ 7 (Mr. Reininger states "[a]t one point, [Mr. Isaacs] indicated he was particularly interested in speaking with individuals *who had worked on a farm*") (emphasis added). When Mr. Reininger indicated that he did not work in the industry, the call promptly ended. Isaacs Decl., ¶ 5.

---

[5] Even though Rule 4.2 of the Minnesota Rules of Professional Conduct allows for some *ex parte* interviews of current employees, counsel for Plaintiffs have instructed their investigators to not contact *any* of the Defendants' current employees. Upon learning on August 29, 2019 that a current Defendant employee had been contacted by mistake, Plaintiffs' counsel reviewed their investigators' methods and confirmed that no substantive interviews of a Defendant employees have occurred. *See* Defs.' Ex. 4. In response to Defendants' emails, Plaintiffs' counsel offered to meet and confer to discuss this matter further and answer any additional questions the Defendants had regarding this matter; Plaintiffs' offer to hold a meet and confer teleconference was rejected. *Id.*

A.  **Plaintiffs' conduct comports with the intent and purpose of the Rules.**

In this district, Courts have instructed the parties to "promptly end" communications with potential witnesses if they tell the investigator that they do not have information related to the investigation. *See Paulson v. Plainfield Trucking, Inc.*, 210 F.R.D. 654, n.6 (D. Minn. 2002) (instructing the parties to "promptly end" any interview where a witness confirms to have no knowledge of the facts in order to "minimize the potential for harassment"). Hence, it was proper for the call between the witness and Mr. Isaacs to end (as it indisputably did) once the witness indicated that he did not work in the industry.

Had the call proceeded beyond pleasantries and this short perfunctory introduction, Mr. Isaacs would have provided all his usual disclosures – as is his standard practice.[6] Isaacs Decl., ¶ 7. When speaking with a potential witness, Mr. Isaacs first describes the purpose of the call and verifies the identity of the person with whom he is speaking. *Id.*, ¶ 7. After answering any questions a witness may have, Mr. Isaacs discloses that he works for Hagens Berman. *Id.*, ¶ 7. Mr. Isaacs then confirms that the witness is not a current employee of a defendant corporation. *Id.*, ¶ 8. While making these disclosures, Mr. Isaacs seeks to verify that the witness understands them. *Id.*, ¶¶ 7-9. Here, because Mr. Reininger indicated that he did not work in the industry, the call was properly ended around two minutes into the conversation, before Mr. Isaacs would have

---

[6] Counsel for Plaintiffs explained to the Defendants' counsel that contacting Mr. Reininger was an inadvertent error and confirmed that no substantive communications with current Clemens employees have occurred. *See* Defs.' Ex. 4. Counsel offered to meet and confer with the Defendants regarding this contact; that offer was refused. *Id.*

made and explained all these disclosures and before a substantive interview could take place. *Id.*, ¶ 10.

Although they never say so outright, Defendants seem to take issue with the fact that Mr. Isaacs did not make these disclosures in his initial perfunctory voicemail to the witness. *See* Defs.' Mot. at 2. Making these disclosures can take ten minutes or longer, depending on how many questions the witness may have about the case, counsel's relationship to the case, or the instructions to not divulge privileged material. Isaacs Decl., ¶ 9. Before wasting a person's time with these disclosures or even worse, providing them with incorrect or misleading information in a voicemail, Plaintiffs' investigators first attempt to verify the identity of the person with whom they are speaking – because in the event of a mistaken identity, the disclosures can cause confusion and distress. Plaintiffs' investigators also make these disclosures when they are on the line with a live witness (rather than by voicemail) in order to verify that the witness fully understands the disclosures. *Id.*, ¶ 9. Being on the line with the witness gives the witness an opportunity to ask questions to help clarify their understanding. This is in line with the Minnesota Rules of Professional Conduct, which require a lawyer to make reasonable efforts to correct misunderstandings that might arise. *See* Rule 4.3(c). By explaining Hagens Berman's role to the witness, Mr. Isaacs can correct misunderstandings as they arise, including the misunderstanding that Hagens Berman represents the witness, or that the witness is being sued by Hagens Berman. This approach is preferable to listing the disclosures in a voicemail, which tends to cause – rather than prevent – these very misunderstandings. Isaacs Decl., ¶ 9.

By verifying the witness's identity, and then ensuring that the witness understands the disclosures and has an opportunity to ask questions as the disclosures occur, Mr. Isaacs is fulfilling the intent of the Rules. The purpose of Rule 4.3 is to prevent attorneys from unfairly taking advantage of unrepresented parties when acting on behalf of a client. *Olson v. Snap Prod., Inc.*, 183 F.R.D. 539, 545 (D. Minn. 1998). Defendants have not argued – and cannot argue – that Mr. Isaacs unfairly took advantage of the witness by mistakenly engaging in a short two-minute call where Mr. Isaacs attempted to confirm that the witness was a hog farmer. No privileged material was revealed on the call. Nor was any information regarding Clemens's conduct revealed as a result of the call. On the call, the witness never even discussed that he worked for Clemens.

Plaintiffs could not find a single case or secondary source – and the Defendants cite to none – where a court held that an attorney must expel a list of disclosures *before* exchanging pleasantries and confirming the identity of the witness. The Defendants' cases are inapposite. For example, in *In re Disciplinary Action against McCormick*, 819 N.W.2d 442 (Minn. 2012), a criminal attorney was admonished for *intentionally* interviewing a co-defendant regarding the co-defendants' trial testimony without the co-defendants' lawyer. *Id*. The co-defendants' identity was never in doubt, and the lengthy interview that followed was a substantive communication that violated Rule 4.2. In contrast, Plaintiffs have had no substantive communications with the Defendants' current employees that have violated Rule 4.2. Berman Decl., ¶ 4.

Moreover, confirming the identity of the potential witness before providing the full disclosures listed by Defendants makes sense and aligns with the policy goals of Rule

- 7 -

010736-11/1201654 V2

4.2. The purpose of Rule 4.2 "is to protect an organization from improper disclosures of attorney-client communications or untoward intrusions into the attorney-client relationship in the context of an organization's ability to prosecute or defend litigation." *Eldredge v. City of Saint Paul*, No. CV 09-2018 (JRT/JSM), 2010 WL 11561317, at *16 (D. Minn. Sept. 29, 2010). By first confirming the potential witness's identity, an investigator is ensuring that he is not intruding – even mistakenly – on the attorney-client relationship.

Confirming the identity of the witness also allows an investigator to then tailor the disclosures to the witness. Some witnesses, such as former employees, may need more forceful and detailed instructions regarding privilege. Other witnesses such as third parties unrelated to defendants, may not need as much instruction, since discussions that touch on privileged material are unlikely to occur. Hence, confirming the identity of the witness before engaging in the disclosures aligns with the purpose of the Rules.

**B.     In the alternative, Plaintiffs request that the protective order be limited to the Defendants' current and former employees.**

Defendants do not allege that nonparties were improperly advised or contacted as part of Plaintiffs' investigation. When deciding whether to apply rule that limits *ex parte* contact, courts should employ "flexible approach" that assess whether the contact in question has actually impaired the policy underlying the rule. *Olson v. Snap Prod., Inc.*, 183 F.R.D. 539, 544 (D. Minn. 1998). Here, the conduct in question did not impair the policy underlying the rule. Because Plaintiffs have already committed to following the Minnesota Rules of Professional Conduct, and because Mr. Isaacs's contact with the

witness was inadvertent and harmless, no protective order is necessary or warranted under the law.

But if the Court were inclined to grant a protective order, Plaintiffs request that the order be limited to apply to the Defendants' current employees and former employees that cannot otherwise properly be contacted. As written, the Defendants' protective order requires Plaintiffs to make six disclosures to all parties – including nonparties are not related to the Defendants. Such an order would be seriously overbroad and inconsistent with the law. Defendants argue that this protective order is necessary to "safeguard the rights of parties and non-parties alike" (Mot. at 1), but some of the disclosures do not make sense and would be inappropriate with regard to certain nonparties. For example, at the outset of an interview it does not make sense to advise a neutral nonparty (such as an economist or professor of agriculture) that they may bring counsel of their choosing to an interview. Making such a pronouncement could cause the nonparty to mistakenly believe that Plaintiffs' position is adverse to the nonparty witness. Rule 4.3 recognizes that there are different obligations placed on lawyers when a nonparty is adverse to a client. *See* Rule 4.3, Comment 2 ("The Rule distinguishes between situations involving unrepresented persons whose interests may be adverse to those of the lawyer's client and those in which the person's interests are not in conflict with the client's.").[7] As written,

---

[7] Notably, all the cases that the Defendants rely upon to support their instruction informing the potential witness of their right to have counsel of their choosing present at an interview involve interviews with current or former employees – not disinterested nonparties. *See* Mot. at 6-7 citing *Paulson v. Plainfield Trucking, Inc.*, 210 F.R.D. 654 (D. Minn. 2002) (applying the instruction to interviews with former employees); *Eldredge*, 2010 WL 11561317 (applying the instruction to current employees); *Cosgrove*

the Defendants' disclosures do not distinguish between the obligations of potentially adverse unrepresented persons and neutral unrepresented persons and is therefore overbroad. Defendants' request should be denied entirely for the reasons discussed above. But if a limited protective order were to be entered, it should be specific and narrowly tailored.

### III.   CONCLUSION

Contacting Mr. Reininger was inadvertent and did not cause even the slightest prejudice to the Defendants; Defendants are simply creating a dispute so that they can try to limit Plaintiffs' legitimate investigation. Given this, a protective order is not necessary. And as written, the Defendants' proposed relief is overly broad; Defendants' proposed order includes nonparties who are not employed by or associated with the Defendants. For these reasons, Defendants' motion for a protective order should be denied, or in the alternative narrowly limited.

DATED: October 22, 2019

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   s/ Steve W. Berman
STEVE W. BERMAN (pro hac vice)

Breanna Van Engelen (pro hac vice)
1301 2nd Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

---

*v. OS Rest. Servs., Inc.,* No. 10-CV-1937 (SRN/SER), 2011 WL 13312206 (D. Minn. Feb. 28, 2011) (applying the instruction to former employees).

Shana E. Scarlett (pro hac vice)
Rio S. Pierce (pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Britany N. Resch (#0397656)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
bresch@gustafsongluek.com

*Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs*