**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-1776 (JRT/HB) |
| This Document Relates to:<br><br>Consumer Indirect Purchaser Plaintiff Actions | |

**DECLARATION OF MATT ISAACS IN SUPPORT OF CONSUMER INDIRECT PURCHASER PLAINTIFFS RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING EX PARTE LAWYER COMMUNICATIONS**

I, MATT ISAACS, declare as follows:

1. I am an investigator for the law firm Hagens Berman Sobol Shapiro LLP (Hagens Berman), attorneys for plaintiffs in the above-titled action. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. Prior to becoming an investigator for Hagens Berman, I taught investigative journalism for the University of California, Berkeley Graduate School of Journalism. My focus was on investigating international business crime and misconduct. My students and I developed several articles for The Guardian, Reuters, PBS Frontline, and ProPublica. As an instructor, I led a 5-year investigation leading to exposing of organized crime connections with US casino companies in the Macau gambling industry, which was reported by The Guardian, Reuters, and ProPublica. I also mentored student projects on possible mail-based bio-chemical terrorism, published by the Miami Herald, the AP, ABC News, and NPR and advised a student collaboration with the award-winning PBS Frontline documentary, *Rape In the Fields*.

3. As an investigator, I do not ever misrepresent my position at Hagens Berman. It is my practice to disclose that I work for Hagens Berman after I have made contact with the witness, introduced the purpose of the contact, and verified the witness's identity. But if a witness asks about my employment before I've had an opportunity to verify their identity, I tell them the truth: that I work for a law firm called Hagens Berman.

4. On August 28, 2019, I contacted John Reininger and left a short voice message. At the time, I believed that Mr. Reininger was a hog farmer who had worked with the defendants, but was not employed by the defendants. I did not learn until later that this was incorrect and Mr. Reininger is employed by Clemens.

5. Shortly after this call was placed, Mr. Reininger returned my call and we spoke on the phone briefly. To the best of my memory, I told Mr. Reininger that I was interested in speaking with hog farmers and was contacting him to obtain some information about the hog industry that related to his experience as a hog farmer. I believe I told Mr. Reininger that I was particularly interested in speaking with people who worked on the farm. In response, Mr. Reininger told me that he was not affiliated with the industry. Unable to verify that Mr. Reininger was a hog farmer, the call was ended.

6. This brief, two-minute call is the only time I've spoken with Mr. Reininger. At the time, I did not know that he was employed with Clemens. I did not ask for material related to his work at Clemens. I did not intend to contact a Clemens employee.

7. When conducting interviews for this case, the first thing I usually do is give my first and last name and briefly introduce the subject matter I am interested in speaking about. Next, I attempt to verify the identity of the person with whom I am speaking. Once I have verified their identity, I answer any questions the witness has. It is my general practice to explain that I work for a law firm, Hagens Berman, which is investigating the pork industry.

8. When conducting interviews with former employees for this case, I also verify that the former employee is not currently employed with a defendant. I have been instructed not to contact any current employees. Although I made a mistake with respect to Mr. Reininger, I have reviewed my notes and have confirmed that I have not engaged in any substantive interviews with an individual employed by the defendants. If I learn that a witness is a current employee, then the conversation ceases immediately.

9. Depending on how many questions the witness has during this process, these disclosures can take up to 10 minutes. I usually do not make these disclosures by voicemail because it can cause more confusion than it prevents. In my experience, it is more effective to explain an investigator's role over the phone and answer questions as they arise. This gives me an opportunity to correct any misimpressions as they arise – such as the misimpression that Hagens Berman represents the witness or is suing the witness.

10. I did not make these disclosures to Mr. Reininger because he told me that he was unaffiliated with the industry. As a result, the call was ended within two minutes of contact. If Mr. Reininger had said he worked in the industry, then I would have made the disclosures. But it is not my practice to harass or annoy individuals who claim they do not have information related to the case.

//

//

//

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 22nd day of October, 2019 at Berkeley, California.

s/ Matt Isaacs<br>
MATT ISAACS