**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To :<br>*All Actions* | No. 0:18-cv-01776 (JRT-HB)<br><br>**JOINT LETTER UPDATE REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING *EX PARTE* LAWYER COMMUNICATIONS** |

Dear Judge Bowbeer:

At the hearing on Defendants' Motion for Protective Order Concerning *Ex Parte* Lawyer Communications (the "Motion"), the Court asked the Parties to confer further on the issue of the appropriate approach to *ex parte* witness contact disclosures in this litigation. (Hr'g Tr. 49:6–9.) Consistent with the Court's direction, the Parties further met and conferred, and now provide this joint letter update on the status of their agreements and remaining disputes.

The Parties have made substantial progress towards agreeing on a Proposed Order, as shown in Exhibit A ("Proposed Order"). However, the Parties continue to disagree on (1) when disclosures must be made, and (2) to whom disclosures must be made. The Parties' positions on each of the disputed issues are set forth below.

## I.   WHEN DISCLOSURES MUST BE MADE (PROPOSED ORDER ¶¶ 1, 2).

### A.   Plaintiffs'[1] Position

The parties' first dispute relates not to the timing of the disclosure – both parties agree that the disclosures should be made before the disclosure of any substantive information – but what flexibility plaintiffs have to ensure that the person they are speaking with is indeed the intended witness, and to engage in social formalities.

---

[1] "Plaintiffs" as used in this brief refers to the Consumer Indirect Purchaser Plaintiffs, Commercial Indirect Purchaser Plaintiffs, and Direct Purchaser Plaintiffs ("DPPs"). As set forth in the DPPs response to the Motion (Dkt. No. 381), the DPPs are not a proper subject of Defendants' Motion and Defendants did not meet and confer with DPPs prior to filing the motion as required by Local Rule 7.1(a). Nonetheless, DPPs are willing to abide by the terms of Plaintiffs' [Proposed] Order Regarding Ex Parte Witness Contact Disclosures, and join the other classes in the filing of this joint statement.

1

Plaintiffs propose that the disclosures be made after verifying the identity of an individual contacted as a possible fact witness. Defendants, in contrast, propose that the disclosures be made "at the outset." (Proposed Order ¶¶ 1, 2.) The defendants seek to have the additional language "at the outset of the interview" applied to these additional disclosures. Defendants' proposal seeks to impose a rigid requirement as to the timing and pace of Plaintiffs' discussions with witnesses that is nowhere found in the case law. In contrast, Plaintiffs seek to preserve their ability to have a respectful conversation with witnesses, by being allowed to make salutary greetings, and verify their name, location, and that they are involved in the pork or hog industry.

To support their somewhat rigid proposal (that plaintiffs be permitted to say only a small number of words before entering a robotic series of questions), defendants point, again, to the conversation between plaintiffs' case investigator and Mr. Reininger. But only one person on that telephone call misrepresented himself – and that was Mr. Reininger. When Mr. Isaacs described to Mr. Reininger that he was interested in speaking with hog farmers, Mr. Reininger stated that he was not affiliated with the industry.[2] Defendants have acknowledged that no confidential, privileged, or prejudicial information was disclosed from Mr. Reininger to plaintiffs. (Hr'g Tr. 13:7-15.)

Nothing in this interaction justifies the relief that defendants seek – to severely constrain what Plaintiffs are able to say at the outset of any phone call with a possible witness. During the course of the parties' conferring over this topic, defendants have even requested that plaintiffs provide (and defendants be allowed to approve) a script for any conversations with witnesses. No case cited by the defendants in this district has allowed an opposing party to dictate the communications of their adversary in such a manner. And no facts exist here to support such a broad request.

The parties agree that for fact witnesses who have confirmed they are <u>current</u> employees of defendants, the conversation will end. (Proposed Order ¶ 1(b).) For those who are <u>former</u> employees, the parties agree that a series of additional disclosures will take place. (Proposed Order ¶¶ 2(a)-(b).) Defendants' proposal "at the outset" simply fails to take into account the reality of witness interviews, and the need to engage in a back and forth with witnesses to ensure their identity, that their answers regarding this litigation and plaintiffs are answered as they arise. Plaintiffs' case investigator – the most experienced and perhaps only affiant capable of providing an estimate to the court – states that these disclosures "can take up to 10 minutes." Isaacs Decl., ¶ 9. Defendants proposal that all disclosures take place "at the outset" of the call simply cannot be reconciled with how witness interviews

---

[2] Declaration of Matt Isaacs in Support of Consumer Indirect Purchaser Plaintiffs Responses to Defendants' Motion for Protective Order Concerning Ex Parte Lawyer Communications, ECF No. 387-3 (Oct. 22, 2019), at ¶ 5 ("Isaacs Decl.").

2

unfold, and the irrefutable logic that all disclosures cannot take place all at once. There must be a logical sequence to a conversation.

Plaintiffs' proposal that these set of disclosures simply fall after verifying the identity of the witness is consistent with the law and should be adopted by the Court. (Proposed Order ¶ 2.)

### B. Defendants' Position

As Defendants articulated in their Memorandum and oral argument in support of their Motion, they firmly believe the required disclosures must be given "at the outset" of any conversation with a witness. (Proposed Order ¶¶ 1, 2.) Anything else creates the unwelcome possibility that an attorney or his or her agent will offend the Rules by communicating about the subject of representation with a represented party. (Rule 4.2.) Take, for example, Mr. Reininger's phone call with Mr. Isaacs. Mr. Isaacs' mistaken belief could have been corrected if he had asked a single question to elicit Mr. Reininger's employer. His failure to do so within a two-minute conversation in which he was able to (1) ask Mr. Reininger questions related to his experience with hog farming, (2) learn whether Mr. Reininger worked on a farm between 2009 and 2013, (3) ask whether Mr. Reininger knew others who had worked on farms, and (4) be questioned regarding what it was he was looking for (Reininger Decl. ¶¶ 7–8) underscores the need for the requested disclosures *earlier*.[3]

Plaintiffs' proposal on timing is unworkable. Plaintiffs suggest the disclosures on (i) representative capacity, (ii) employment, (iii) whether the individual contacted is represented in the litigation only need to be made "after verifying the identity of an individual who is contacted as a possible fact witness." (Proposed Order ¶ 1.) Plaintiffs provide no roadmap for how long a conversation may continue before getting to these disclosures, nor any certainty with respect to what kinds of questions are appropriate for "verifying identity" before the disclosures are made. Even more problematically, Plaintiffs propose no limitations on timing of the additional disclosures for former employees and adverse witnesses (Paragraph 2). Defendants propose that the disclosures of Paragraph 2

---

[3] Plaintiffs attempt to shift the blame to Mr. Reininger, claiming that he failed to identify himself as affiliated with the industry. Defendants disagree with Plaintiffs' representations regarding what Mr. Reininger said on the call and in any event, the only person on the call who was required to provide a disclosure of their affiliation but did not was Plaintiffs' investigator. Nonetheless, Plaintiffs' argument highlights the need for clear, unambiguous disclosures at the outset of future witness interviews to avoid any confusion on the part of the witness or misrepresentations by the Plaintiffs moving forward.

should follow the disclosures of Paragraph 1, but disagree that no further requirements as to timing are required.

Given the open-endedness of Plaintiffs' proposals on timing, Defendants sought further clarification: specifically, Defendants asked which questions Plaintiffs consider appropriate prior to the disclosures. Defendants also suggested that a script for communications prior to the disclosures could clarify the ambiguity in Plaintiffs' proposed approach and provide the safeguards required to avoid future missteps like those occurring with Mr. Reininger. The only clarification Plaintiffs provided was within their argument, above, proposing the caller (i) make salutary greetings, (ii) verify the witness's name, (iii) verify the witness's location, and (iv) verify the witness is involved in the pork or hog industry *before* making any disclosures. Plaintiffs are attempting to overcomplicate these issues. All Defendants are seeking is that Plaintiffs must start to make these disclosures at the outset—within the first 30 seconds—of a call. Thus, while it may be appropriate to provide a salutary greeting and confirm the witness's name (*i.e.*, "Hi, is this [witness's name]?") prior to making the disclosures, probing any further creates unwarranted risk of offending the Rules. Indeed, had Mr. Isaacs only made a salutary greeting and verified Mr. Reininger's name before disclosing his identity and asking if Mr. Reininger was a current or former employee of an adversary, the Plaintiffs would have then immediately known Mr. Reininger was a current employee of a Defendant, and the Parties could have avoided this motion.

Plaintiffs are wrong that requirements as to disclosure timing are "nowhere found in the case law." In fact, courts have held that interview disclosures should be made "prior to any interview." *Eldredge v. City of Saint Paul*, 2010 WL 11561317, at *20 (D. Minn. Sept. 29, 2010) ("prior to any interview, counsel shall fully disclose that she represents plaintiff in this litigation, state the reason for seeking the interview as it concerns plaintiff's litigation against the City, . . ."). This makes sense because disclosures would hardly be useful if they only come later in time after the interviewer may have already mislead the interviewee regarding the interviewer's role, communicated regarding the litigation with a represented interviewee, or discussed privileged information with the interviewee. *Eldredge*, like the other cases cited in Defendants' Memorandum (Dkt. 376, at 6-7), stands for the proposition that there is a risk of offending the Rules if the disclosures are not provided *at the outset*.

### II. TO WHOM DISCLOSURES MUST BE MADE (PROPOSED ORDER ¶¶ 1, 3).

#### A. Plaintiffs' Proposal

The second point in dispute, is to whom these disclosures must be made. Plaintiffs propose that these disclosures are limited to possible fact witnesses – Defendants propose an expanded group of possible fact <u>or expert</u> witnesses. (Proposed Order ¶¶ 1, 3.) This

substantial change goes beyond the scope of Defendants' original motion and proposed order.

Defendants have presented no factual justification or case law supporting this expansive interference with Plaintiffs' communications with potential experts being interviewed to testify (or consult) in this litigation. Fact and expert witnesses perform very different roles in litigation – one, providing first-hand testimony on the operation of the industry and defendants' business operations; the second, providing a specialized lens to assist the court and/or jury in viewing the facts of this case. Expert witnesses are most frequently sophisticated and educated individuals, possessed of specialized training giving them a unique ability to interpret the facts of a complex conspiracy such as the one alleged in this case.

Defendants proffer a hypothetical scenario where plaintiffs might seek to retain an industry expert who is a current or former industry participant. But the retention of any expert witness requires a thorough vetting of conflicts of interests, the signing of a retainer agreement, the agreement of the proposed expert witness to abide by the terms of the protective order, before confidential information can be disclosed. The rigorous process undertaken prior to retaining an expert witness is completely unrelated to the set of disclosures that are undertaken when contacting a percipient witness.

Expert witnesses are experienced witnesses, aware of the role of plaintiffs and defendants in any litigation, and unlikely to be confused. Requiring plaintiffs to ask an expert witness whether they have their own representation in this matter (proposed paragraph 1(c)) is a misplaced question, which would undoubtedly be met with confusion from a proposed expert, and require a detailed explanation as to the origins of the question. Defendants' proposal fails to take into account that plaintiffs may have ongoing relationships with expert witnesses from prior litigation, which makes this series of disclosures an ill-conceived interference with ongoing conversations protected by the Federal Rules of Civil Procedure and attorney work-product protections. Defendants' proposal – to constrict how Plaintiffs are able to interact with possible expert witnesses – fails to find any support in cases addressing interactions with less sophisticated potential fact witnesses.

### B. Defendants' Proposal

Defendants propose that the disclosures be made to all potential fact and expert witnesses (Proposed Order ¶ 1.) Defendants' proposal fairly cabins the scope of the Proposed Order to potential witnesses, ensuring that situations in which the disclosures are unwarranted (*e.g.*, communications with potential vendors) are excluded to avoid unnecessary burden. Plaintiffs are wrong that Defendants' proposal "goes beyond the scope" of Defendants' original motion and proposed order—indeed, it is the opposite. Defendants' Proposed Order filed with its Motion would have applied to *any individual contacted* by a lawyer or

5

agent working at their behest (Docket No. 380), whereas the current proposal is limited to potential fact and expert witnesses.

Plaintiffs' proposal is even more limited, requiring the disclosures only when the individual contacted is "a possible fact witness." Defendants disagree that only witnesses that may testify regarding things they observed first-hand warrant the disclosures. Take, for example, the possibility that a former or current industry participant is contacted as a potential industry expert, not a fact witness. In that circumstance as well, the lawyer may not imply that he or she is disinterested or misrepresent his or her role in the litigation. Likewise, the lawyer may not communicate with the witness if the witness is represented. (Rules 4.1, 4.2, 4.3.) There is no rationale or basis for disparate treatment of a fact witness and a potential expert under the Rules, particularly because experts in the industry may indeed be former employees of one or more Defendants or an affiliate of one or more Defendants, justifying additional disclosures. (*See* Proposed Order ¶ 2.) The three basic disclosures listed in Paragraph 1 provide a necessary "check" on any assumptions Plaintiffs are making with respect to the potential expert witnesses' affiliations.

Plaintiffs argue that expert witnesses are often experienced and "unlikely to be confused" about the role of plaintiffs and defendants in any litigation. However, even if Plaintiffs reasonably assume a potential expert is familiar with litigation generally, it is not a basis to fail to disclose a lawyer's representative capacity with respect to *this* litigation (Proposed Order, Paragraph 1(a)) and to inquire and confirm whether the individual contacted is a current or former employee of an adverse party (Proposed Order, Paragraph 1(b)). At a minimum, these two disclosures must be made to potential experts with the remaining disclosures to follow if they learn the individual is a former employee or is otherwise adverse.

Dated: December 2, 2019

Respectfully submitted,

| | |
|---|---|
| */s/ Bobby Pouya* | */s/ Mark L. Johnson* |
| Bruce L. Simon | Mark L. Johnson (#0345520) |
| PEARSON, SIMON & WARSHAW, LLP | Virginia R. McCalmont (#0399496) |
| 44 Montgomery Street, Suite 2450 | GREENE ESPEL PLLP |
| San Francisco, CA 94104 | 222 South Ninth Street, Suite 2200 |
| Telephone: (415) 433-9000 | Minneapolis, MN 55402 |
| Facsimile: (415) 433-9008 | (612) 373-0830 |
| bsimon@pswlaw.com | mjohnson@greeneespel.com |
| | vmccalmont@greeneespel.com |
| Clifford H. Pearson | |
| Daniel L. Warshaw | Daniel Laytin, P.C. (*pro hac vice*) |
| Bobby Pouya | Christa Cottrell, P.C. (*pro hac vice*) |

Michael H. Pearson
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN #0387900)
Joseph C. Bourne (MN #0389922)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com
jbourne@pswlaw.com

W. Joseph Bruckner (MN #0147758)
Elizabeth R. Odette (MN #0340698)
Brian D. Clark (MN #0390069) Simeon A. Morbey (MN #0391338)
Arielle S. Wagner (MN #0398332)
Stephanie A. Chen (MN #0400032)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com
aswagner@locklaw.com
sachen@locklaw.com

*Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

Christina Briesacher (*pro hac vice*)
Christina Sharkey (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
christina.briesacher@kirkland.com
christina.sharkey@kirkland.com

*Counsel for Clemens Food Group, LLC and The Clemens Family Corporation*

*/s/ Richard A. Duncan*
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegrebd.com
aaron.vanoort@faegrebd.com
craig.coleman@faegrebd.com
emily.chow@faegrebd.com
isaac.hall@faegrebd.com
bryan.washburn@faegrebd.com

*Counsel for Hormel Foods Corporation and Hormel Foods, LLC*

*/s/ Jaime Stilson*
Jaime Stilson (#0392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
(612) 492-6746

*/s/ Shana E. Scarlett*
Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Britany N. Resch (#0397656)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
bresch@gustafsongluek.com

*Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs*

*/s/ Blaine Finley*
Shawn M. Raiter (MN# 240424)
LARSON • KING, LLP

stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert E. Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William H. Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation*

*/s/ Donald G. Heeman*
Donald G. Heeman (#0286023)
Jessica J. Nelson (#0347358)
Randi J. Winter (#0391354)
SPENCER FANE LLP
150 South Fifth Street, Suite 1900
Minneapolis, MN 55402
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
Robert P. Vance, Jr. (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com

8

2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6518
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Blaine Finley
Yifei "Evelyn" Li
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cunelolaw.com

*Co-Lead Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs*

michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
bobbyvance@quinnemanuel.com

*Counsel for JBS USA Food Company*

*/s/ William L. Greene*
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
Jon M. Woodruff (#0399453)
STINSON LEONARD STREET LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
john.woodruff@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LEONARD STREET LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

*Counsel for Seaboard Foods, LLC*

*/s/ John A. Cotter*
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.

9

Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

*Counsel for Smithfield Foods, Inc.*

*/s/ Aaron Chapin*
Aaron Chapin (#06292540)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
aaron.chapin@huschblackwell.com

Gene Summerlin (pro hac vice)
Marnie Jensen (pro hac vice)
Ryann Glenn (pro hac vice)
Kamron Hasan (pro hac vice)
Quinn Eaton (pro hac vice)
Sierra Faler (pro hac vice)
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154
(402) 964-5000
gene.summerlin@huschblackwell.com
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com
kamron.hasan@huschblackwell.com
quinn.eaton@huschblackwell.com
sierra.faler@huschblackwell.com

*Counsel for Triumph Foods, LLC*

*/s/ David P. Graham*
David P. Graham (#0185462)
DYKEMA GOSSETT PLLC

10

4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Jetta Sandin (*pro hac vice*)
Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
950 F Street, N.W.
Washington, D.C. 20004
(202) 912-4700
jsandin@axinn.com
adcox@axinn.com
trider@axinn.com

*Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.*

*/s/ Peter H Walsh*
Peter H. Walsh (#0388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3000
F. (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Jennifer A. Fleury (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com

*Counsel for Agri Stats., Inc.*

11