IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* <br><br> This Document Relates To : <br> *ALL ACTIONS* | No. 0:18-cv-01776-JRT-HB <br><br> **MEMORANDUM OF LAW IN SUPPORT OF CLEMENS FOOD GROUP, LLC'S AND THE CLEMENS FAMILY CORPORATION'S MOTION TO DISMISS** |

Plaintiffs did not—because they cannot—cure the deficiencies in their complaints with respect to Clemens. Rather, Plaintiffs continue to admit that Clemens spent hundreds of millions of dollars to build a new processing plant in Coldwater, Michigan in 2017. This new facility, which was built during the class period and completed in 2017, doubled Clemens' processing capacity. Doubling supply cannot be reconciled with Plaintiffs' theory that Clemens conspired to reduce it. Plaintiffs don't even try.

But the pleading defects do not end there. Despite the Court's order requiring production cuts be pled for "each Defendant," plaintiffs do not plead a single parallel production cut by Clemens. The consumer indirect purchasers ("IPP") include ***no allegations*** whatsoever regarding cuts by Clemens. And the direct purchasers ("DPP"), commercial indirect purchasers ("CIP"), Winn-Dixie ("WD"), and Puerto Rico ("PR") add only a single sentence regarding Clemens' production: they assert that Clemens produced "1,000 fewer sows" in 2011. But the documents Plaintiffs rely on show the opposite is true: Clemens was *increasing* supply in 2011. What's more, even if true,

1

reduction of 1,000 sows (a negligible 2% cut) is not in line with Plaintiffs' theory of the case. Plaintiffs claim production cuts were made in 2009, 2010, and 2013—not 2011.

For the reasons discussed below, Plaintiffs have not met their pleading burden as to Clemens.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT PLED PARALLEL CONDUCT AS TO CLEMENS.

The Court's order on Defendants' motions to dismiss the original complaints was clear: Plaintiffs' original complaint lacked "specific and individualized" allegations of (1) production cuts by each Defendant and (2) "temporal proximity" between each Defendant's production cuts. (Dkt. 361, Slip Op. at 20–21.)[1] Plaintiffs have not met their burden—nor could they—as to Clemens. Quite the opposite. Plaintiffs concede Clemens doubled its capacity during the class period and, as discussed below, they do not allege a single parallel supply cut.

#### A. Plaintiffs' Own Sources Demonstrate That Clemens Grew Supply During The Class Period.

Plaintiffs' own sources demonstrate that Clemens *grew* supply during the class period. For example, the *Pork Powerhouses* rankings—incorporated by reference into the Amended Complaints ("Complaints")—show that Clemens' overall sow numbers

---

[1] The Complaints contain no allegation that Clemens increased exports whatsoever. Thus, any claim against Clemens based on export allegations must be dismissed. (Dkt. 361, Slip Op. at 23 ("Plaintiffs give no individualized examples of any one Defendant increasing its rate of export, but simply provide the Court with the industry-wide data. As discussed above, this does not suffice to plausibly plead parallel conduct.").)

grew a whopping 42.65% from 2009 (the start of the class period) to 2018 (the end of the class period) (2009: 46,500 sows to 2018: 66,330 sows).[2] (*See, i.e.,* DPP ¶¶119 & n.44, 121 & n.46, 124 & n.47, 134 & n.51, 161; CIP ¶¶123 & n.44, 125 & n.46, 128 & n.47, 138 & n.51; 165; WD ¶¶118 & n.41; 120 & n.43; PR ¶¶109, 148; s*ee also* Dkt. 435, Exhibit 2.)[3] Clemens consistently grew throughout the class period, increasing sows in 2008, 2009, 2010, 2012, 2013, 2014, 2015, 2017, and 2018, and maintaining supply in 2016. (*Id.*)

Clemens grew supply in the very years Plaintiffs claim the industry cut production *and* in years when they allege other Defendants made cuts. While Plaintiffs allege that pork producers made "coordinated, historic and unprecedented" cuts in 2009, their source reveals that Clemens increased sows by 6.4% that year (from 43,700 to 46,500). (DPP ¶121 & n.46; CIP ¶125 & n.46; WD ¶120; PR ¶109.) In fact, the source specifically notes that—of the 25 firms on the *Powerhouses* list, which includes numerous firms beyond the eight Defendants in this litigation—Clemens was one of "only two firms [that] increased sows from last year." (*Id.*)

---

[2] In the 2008, 2009, 2014, and 2015 rankings, Clemens is referred to as Country View Family Farms. In the 2010–2013 rankings, Clemens is referred to as Hatfield Quality Meats. In the 2016–2018 rankings, Clemens is referred to by name.

[3] Plaintiffs cite to *Pork Powerhouses* reports from 2007, 2008, 2009, and 2014. The *Pork Powerhouses* reporting is central to Plaintiffs' allegations because it forms the basis for many of Plaintiffs' allegations regarding production cuts by specific Defendants. Accordingly, *Pork Powerhouses* reporting from 2010–2013 and 2015–2018 are properly considered on a motion to dismiss. *See Reg'l Multiple Listing Serv. of Minnesota, Inc. v. Am. Home Realty Network, Inc.*, 9 F. Supp. 3d 1032, 1045 n.6 (D. Minn. 2014) (Tunheim, J.); *see also Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

It is no accident that Plaintiffs avoid alleging facts regarding Clemens. Rather than cut supply during the class period, Clemens invested massive amounts of capital to build a new state-of-the-art and one-of-a-kind processing facility in Coldwater, Michigan, which opened in 2017. (DPP ¶113; CIP ¶117; WD ¶112; PR ¶102 (referencing Meyer 2017 "Market Outlook for Meat and Poultry," at 34).) ***The new facility doubled Clemens' processing capacity***, adding processing capacity of an additional 2.5 million hogs per year on a single shift. (*Id.*; *see also* DPP ¶75 n.29; CIP ¶79 n.29; WD ¶73 n.24; PR ¶69 n.24 (citing Clemens webpage announcing "our new Coldwater, Michigan plant").) DPP Figure 5 (¶92) (also cited as CIP Figure 5 (¶96), IPP Figure 14 (¶151), WD Figure 5 (¶91)) highlights the increase in Clemens' capacity with the opening of the Coldwater plant:



Plaintiffs concede the enormity of the planning and expense of constructing a new processing facility: "[c]onstruction of a large-scale slaughter facility would take hundreds of millions of dollars and the additional planning, design and permitting costs are substantial." (DPP ¶94; CIP ¶98; WD ¶93; PR ¶84.)  They also concede that opening a new plant is inconsistent with alleged conspiratorial "signals," which allegedly warned processors that profits would decrease if competitors "kill more pigs and drive the margins lower," which would happen if "someone is going to build a plant. . . . *There is no one going to be real excited about adding capacity, adding sows at a time when we've got such volatility*."  (DPP ¶¶154–55; CIP ¶¶158–59; WD ¶¶170–71; PR ¶¶141–42.)

Clemens' investment of hundreds of millions of dollars to double its capacity with the addition of a new processing facility cannot be reconciled with Plaintiffs' theory that processors implemented their competitors' signals to reduce supply.  *Kleen Prod. LLC v. Georgia-Pac. LLC*, 910 F.3d 927, 938 (7th Cir. 2018) (holding that company's "supply behavior" contradicts a supply reduction conspiracy because its mill purchase "allowed it to increase its production capacity").  Rule 12(b)(6) demands that the Court reject the "unreasonable inferences" required to sustain this action.  *See Stark v. Bank of Am., N.A.*, 2015 WL 756938, at *1 (D. Minn. Feb. 23, 2015) ("[T]he court . . . need not make unreasonable inferences or accept unrealistic assertions." (citing *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010))).  For this reason alone, the Complaints fail as to Clemens.

5

## B. Plaintiffs Have Not Added Any Allegations Of Parallel Conduct As To Clemens.

Recognizing Clemens' significant growth, the IPP Plaintiffs include *zero* allegations of supply cuts whatsoever. The remaining Plaintiffs muster only a single sentence directed at Clemens regarding purported cuts in 2011. (DPP ¶131; CIP ¶135; WD ¶131; PR ¶119.) This allegation is far from sufficient—it is contradicted by Plaintiffs' cited sources, negligible, and at the wrong point in time. Even if taken as true, a single allegation that Clemens cut production by 2% in a single year does not plausibly support a finding that it participated in a decade-long conspiracy to reduce supply.

*First*, this alleged cut is directly contradicted by the *Pork Powerhouses* rankings, which Plaintiffs cite throughout their Complaints. (*See, supra,* pp. 2–3.) The 2011 *Pork Powerhouses* rankings, published in *September* 2011, expressly qualified its report of a 2% dip in Clemens' production from the previous year by explaining that Hatfield (Clemens' predecessor) is "*[e]xpecting slight increase in sow numbers in the next few months.*" Thus, Plaintiffs' own source indicates that the mid-year 2011 number as to Clemens was anticipated to increase.

*Second*, even if the allegation of a supply cut in 2011 were taken as true, such an allegation would not demonstrate conscious parallelism with other Defendants. 2011 does not line up with Plaintiffs' timeline: "In 2009, 2010, and again in 2013, the pork industry cut production." (DPP ¶120; CIP ¶124; IPP ¶98; WD ¶119; PR ¶108.) As to

those three years, Plaintiffs allege no Clemens cuts whatsoever. In fact, as outlined above, Clemens *increased* production during each of these years.[4]

***Third***, the alleged 2011 supply cut, even if true, does not plausibly indicate participation in a decade-long supply-reduction conspiracy. The alleged cut of 1,000 sows is small: only 2% of Clemens' sow numbers. By contrast, Plaintiffs allege cuts by other Defendants as high as 25%. (DPP ¶126; CIP ¶130; WD ¶125; PR ¶114.) (Notably, those allegations of 25% cuts occurred in years when Clemens was increasing its sow numbers.) Parallel conduct is "behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.4 (2007); Dkt. 361, Slip Op. at 17 n.6.

The Court's opinion was clear. Plaintiffs must plead specific cuts by ***each*** Defendant. Plaintiffs' allegation of a negligible (and contradicted) 2% reduction in a single year of the alleged decade-long conspiracy—a year that corresponds to only one of the other seven Defendants' cuts—does not qualify.

---

[4] Nor does it line up with the alleged cuts made by the other Defendants. Plaintiffs only allege sow cuts from one of the other seven pork Defendants in 2011: Smithfield. Plaintiffs did not allege that Clemens cut supply in any other year that they allege Smithfield did (2008, 2009, or 2010), or in any other year that they allege any other Defendant did (2008, 2009, 2010, 2013, 2014, 2015, 2016). Given the number of Defendants named and the length of the class period, it is telling that Plaintiffs only allege a single, *de minimis* production cut by Clemens that overlapped with a single other Defendant. Further, Plaintiffs' Complaints reveal that the pork industry as a whole increased supply in 2011. (DPP ¶120, Fig. 7; CIP ¶124, Fig. 7; IIP ¶98, Fig. 1.)

## II. CLEMENS LACKED THE ABILITY OR INCENTIVE TO EFFECT THE ALLEGED SCHEME

Plaintiffs' Complaints fail for another independent reason: Clemens is primarily a hog processor. It buys hogs for processing from "a network of 250 farms raising hogs under contract." (DPP ¶75; CIP ¶79; WD ¶73; PR ¶69.) There are no allegations that Clemens is able to control, did control, or even can control supply levels by these hog producers.

Unlike other Defendants, who Plaintiffs claim have direct "control [of] the production and supply of pork" through "vertical integration" (DPP ¶68; CIP ¶72; WD ¶66; PR ¶63), Plaintiffs are careful to describe Clemens as "vertically-coordinated." (DPP ¶75; CIP ¶79; WD ¶73; PR ¶69.) This distinction is important: Plaintiffs admit that Clemens' only involvement in hog production (as opposed to hog processing) is through one "procurement and production subsidiary, Country View Family Farms," which owns a negligible portion of overall hog supply and "manages . . . 250 farms raising hogs under contract." (*Id.*; *compare with* DPP ¶88; CIP ¶92; WD ¶86 (citing Sullivan 2017 report stating that "Smithfield raises pigs on approximately 3,900 company-owned, leased, and contract hog farms globally," at 3).)

Plaintiffs give no explanation why, as a pork processor, Clemens would want to drive up hog prices, thereby increasing its processing costs. Their failure to allege a plausible motive is fatal to their claims. *See Am. Channel, LLC v. Time Warner Cable, Inc.*, 2007 WL 142173, at *7 (D. Minn. Jan. 17, 2007) (granting motion to dismiss in antitrust case where no plausible motive to conspire was alleged).

Plaintiffs allege that pork production and processing is dominated by four companies, none of which are Clemens. (DPP ¶84, CIP ¶88, WD ¶82; PR ¶78 (alleging four non-Clemens pork integrators' market share total "just under 70 percent"); DPP ¶88 n.35, CIP ¶92 n.35, WD ¶86 n.32 (citing Sullivan report which includes pie charts of the top hog producers and processors, none of which are Clemens); DPP ¶91 n.37, CIP ¶95 n.37, WD ¶90 n.34 (citing "Buyer Power in U.S. Hog Markets," listing top four hog producers at 7, none of which are Clemens).) Tellingly, the IPP Complaint included a table of Defendants "that have significant operations (>=5%) market share in at least two stages of the value chain" (IPP ¶144), and Clemens is nowhere to be found:

| Defendant | Hog Production | Hog processing and intermediate pork processing/packing | Further Pork Processing |
|---|---|---|---|
| Smithfield | ✓ | ✓ | ✓ |
| Tyson | | ✓ | ✓ |
| Triumph | ✓ | ✓ | |
| Seaboard | ✓ | ✓ | |
| Hormel | | ✓ | ✓ |

Clemens' absence speaks volumes. Plaintiffs not only fail to allege how Clemens (with a fraction of the nationwide hog production and processing capacity) could affect nationwide supply, but also fail to reconcile why Clemens would conspire to reduce supply when it was aggressively growing and expanding. Plaintiffs, thus, have failed to allege any plausible claim against Clemens.

9

## III. THE IPP PLAINTIFFS DO NOT STATE AN INFORMATION-SHARING CLAIM AGAINST CLEMENS

The IPPs' new "rule of reason" theory does not save their case. To avoid dismissal, IPPs must allege adverse, anticompetitive effects resulting from an agreement to share information. *Five Smiths, Inc. v. Natl. Football League Players Assn.*, 788 F Supp. 1042, 1053 (D. Minn. 1992). Because IPPs plead neither of these required elements as to Clemens, their information-sharing claim against Clemens must be dismissed.

As discussed further in Defendants' Joint Motion to Dismiss Federal Law Claims (Dkt. 439, at 41–52), IPPs do not allege that Clemens ever communicated with its competitors about its decision to join Agri Stats, its use of Agri Stats, or the fields reported in Agri Stats—not at any trade or industry meeting, not by phone, and not in any other way. While Plaintiffs do plead that Clemens uses Agri Stats' services (IPP ¶50), that allegation at best pleads only a non-actionable subscription between Clemens and Agri Stats, not a conspiracy between Clemens and its competitors. *Five Smiths,* 788 F. Supp. at 1053 ("absent some agreement between competitors to restrain price, the exchange of price and other market information is generally benign conduct that facilitates efficient economic activity").

Further, IPPs do not allege any particular Clemens pork production reduction or price increase resulted from the allegedly conspiratorial information sharing. Thus, even if IPPs had alleged Clemens' participation in an information-exchange conspiracy—

which they have not—IPPs do not even attempt to connect the alleged information exchange involving Clemens with any anticompetitive effects.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaints should be dismissed, with prejudice, as to Clemens Food Group, LLC and The Clemens Family Corporation.

Dated: January 15, 2020 Respectfully submitted,

/s/ *Daniel E. Laytin, P.C.*

Mark L. Johnson (#0345520)
Virginia R. McCalmont (#0399496)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
vmccalmont@greeneespel.com

Daniel E. Laytin, P.C. (*pro hac vice*)
Christa C. Cottrell, P.C. (*pro hac vice*)
Christina L. Briesacher (*pro hac vice*)
Christina Sharkey (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
312-862-2000
dlaytin@kirkland.com
ccottrell@kirkland.com
christina.briesacher@kirkland.com
christina.sharkey@kirkland.com

*Counsel for Clemens Food Group, LLC (formerly Hatfield Quality Meats, Inc.) and The Clemens Family Corporation*