# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-cv-01776 (JRT/HB) |
| | **MEMORANDUM OF LAW BY INDIANA PACKERS CORPORATION IN SUPPORT OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINTS** |
| This Document Relates To: *All Actions* | |

## INTRODUCTION

The class plaintiffs have now had two opportunities to sufficiently allege that Indiana Packers Corporation ("IPC") was part of a purported massive decade-long antitrust conspiracy in the pork industry. The amended complaints,[1] however, continue to fail to allege facts that plausibly link IPC to any such conspiracy; indeed, they do not make any *new* claims as to IPC whatsoever. Instead, they simply recycle as to IPC the very same allegations the Court already found to be insufficient. Most importantly, and notwithstanding the Court's direction, they do not allege *any* act by IPC to reduce pork production. *See* Aug. 8, 2019 Order at 1, 20 (Dkt. 360) ("Order") (requiring plaintiffs to allege "specific information" stating how and when each defendant "acted to reduce the supply of pork"). To the contrary, the sole "factual" material relied upon by plaintiffs to show IPC engaged in parallel supply cuts is a 2012 news article in a local Indiana

---

[1] Dkts. 431 (Direct Purchasers, "DPs"), 392 (Indirect Purchaser Plaintiffs, "IPPs") & 432 (Commercial and Institutional Indirect Purchasers, "CIIPs"). References are to the DP Third Amended Complaint ("TAC") unless otherwise noted.

newspaper that plaintiffs relied upon in their prior complaints.  The article—which actually states that IPC had *increased* production—did not suffice as to their First Amended Complaints ("FACs") to allow plaintiffs to meet their pleading requirements and it does not suffice now.  In short, the complaints simply do not link IPC—which operates only one processing plant—to any pork supply conspiracy (or any other conspiracy).  Accordingly, IPC does not belong in this litigation and the complaints against it should be dismissed with prejudice.

## ARGUMENT

### I.  Plaintiffs Do Not Allege that IPC Ever Cut Production, Let Alone Engaged in Parallel Supply Cuts with Other Defendants.

In response to the Court's specific direction to plaintiffs that they allege supply reductions by *each* defendant in order to show parallel conduct, the DPs and CIIPs added a new section IV.H. to their complaints, titled, "Defendants implemented capacity and supply restraints during the Class Period."  There, Plaintiffs purport to set forth the alleged conspiratorial supply restraints on a defendant-by-defendant basis.  TACs at § IV.H.1 ("Summary of Defendants' Conspiratorial Supply Restraints").[2] The *entire* allegation in both complaints (which are identical for these purposes) as to IPC's alleged conspiratorial capacity and supply cuts reads as follows:

> Indiana Packers is a private company with limited information available to the public regarding its production statistics. Nevertheless, in 2012 Indiana Packers indicated that it expected to reduce the number of hogs or pounds of pork processed at its facilities ostensibly because of high corn prices.

---

[2] *See also* Winn Dixie Second Am. Compl. at § IV.H.1 (Dkt. 94); Puerto Rico Second Am. Compl. at § IV.H.1 (Dkt. 47).

2

TAC ¶ 132.[3]  Plaintiffs then provide a "timeline" of statements (§ IV.H.2) in which they refer to the *very same* 2012 news article quoting an IPC executive that Plaintiffs relied upon in their FACs.  *See id.* ¶ 157[4]; *see also e.g.* DP FAC ¶ 126 (Dkt. 83).

These sparse and conclusory allegations as to IPC are wholly insufficient to allow Plaintiffs to meet their required burden:

**First**, *they do not allege any actual supply cut*.  Plaintiffs recognize that they must allege facts showing IPC "implemented" a parallel supply cut, but the operative allegations do no such thing.  On their face, the allegations are only Plaintiffs' assertions that IPC "indicated" at one point in time that it "expected" to make some unspecified reduction.  At best, Plaintiffs are claiming these are "statements" by IPC.  But the Court was clear that "[r]arely are statements used as evidence of parallel conduct itself."  Order at 21.  Indeed, the Court specifically addressed the very same IPC statements that Plaintiffs wish to recycle here, holding that, "besides Smithfield's clear acknowledgment that it made cuts, the public statements referenced by Plaintiffs do not read as admissions that any other individual Defendant made cuts."  Order at 22 (referencing statements by Tyson, JBS, Hormel, and Indiana Packers).[5]  Plaintiffs have not introduced *any* new facts with respect to IPC.  In failing to allege that IPC participated in any coordinated production cuts, much

---

[3] *See also* Winn Dixie Second Am. Compl. ¶ 132; Puerto Rico Second Am. Compl. ¶ 120. The IPPs make no allegations whatsoever about IPC engaging in production cuts.

[4] Winn Dixie Second Am. Compl. ¶ 173; Puerto Rico Second Am. Compl. ¶ 144.

[5] The Court's summary of the public statements that Plaintiffs relied upon in their FACs reads, in part: "JBS stated that it was running on a sold-out position, ([DP FAC] ¶ 126)." Order at 7.  The cited paragraph refers to the 2012 article about IPC.  As such, we believe that the company attribution should be to IPC, not JBS.  The 2012 article is the same one upon which Plaintiffs rely again here.

less ones spanning the near decade that Plaintiffs claim the conspiracy was in existence, Plaintiffs fail to plausibly allege IPC was part of any purported conspiracy.

**Second**, plaintiffs wholly mischaracterize the referenced 2012 article.  This is not a question of "weighing facts" at a motion to dismiss stage; instead, an objective reading of the article shows that there is no plausible basis in which it demonstrates that IPC "shared a 'unity of purpose or a common design and understanding, or a meeting of the minds'" with other defendants to reduce pork production.  Order at 16 (*quoting Insulate CB, Inv. V. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 543 (8th Cir. 2015)).[6]

The article does not support a supply-reduction conspiracy.  Indeed, its very title is, "Food packing business steady so far despite drought."  Moreover, it first appeared in the *Pharos Tribune*, a local paper based in Logansport, Indiana, which is not a source one would expect to be used to "signal" conspiratorial conduct to the pork industry.[7]  Most importantly, Plaintiffs' selective quotations from the article omit that Gary Jacobson, then President of IPC, stated that IPC had increased employment "30-40 percent over the last decade," and "increas[ed] production by 20 percent" due to "new operations that went

---

[6] Plaintiffs once again have made a tactical decision not to attach the article to their complaints.  It is clear, though, that they necessarily embrace its contents as it contains the sole allegation of substance purportedly linking IPC to the alleged conspiracy.  As such, IPC is attaching the entire article to this motion, Stilson Decl. Ex. A, just as IPC did in its motion to dismiss the prior complaints.  *See BJC Health System v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003) ("It is true that the plaintiff must supply any documents upon which the complaint relies, and if the plaintiff does not provide such documents the defendant is free to do so.").

[7] The article was later reprinted in the Indiana Economic Digest, which provides daily news on general business and economic events in Indiana.

online." Stilson Decl. Ex. A.  In other words, IPC was not reducing production, it was increasing production.

Plaintiffs, though, misrepresent the article by claiming that it shows IPC "expected" to reduce pork supply.  TAC ¶ 132.[8]  Far from it.  The article says that the summer's "heat waves and drought" would likely affect pork prices during fall and spring due to higher costs for corn and that "high temperatures make pigs less hungry" so they do not fatten as quickly.  Farmers then may wait to bring pigs to market or take them to market at a lighter weight.  *See* Stilson Decl., Ex. A; *see also* TAC ¶ 157.[9]  However, Plaintiffs ignore Jacobson's critical statement that "*the impact has not been really significant as far as production as a whole*," and that "it remains to be seen how the drought will change the plant's supply in the coming months."  *Id.* (emphasis added).  Nothing in this article or anything else in the amended complaints suggests IPC ever cut production or otherwise signaled its adherence to a conspiratorial agreement.

**Third**, Plaintiffs try to salvage their claims by asserting that IPC's statements in the 2012 article were pretext.  TAC ¶ 132 (stating that IPC "expected to reduce the number of hogs or pounds of pork processed at its facilities *ostensibly* because of high corn prices") (emphasis added).[10]  The recognition that adverse weather could impact corn prices and, ultimately, hog supply cannot be plausibly viewed as pretextual.  This is a classic example of Plaintiffs improperly "assuming a conspiracy and then explaining the evidence

---

[8] *See also* Winn Dixie Second Am. Compl. ¶ 132; Puerto Rico Second Am. Compl. ¶ 120.
[9] Winn Dixie Second Am. Compl. ¶ 173; Puerto Rico Second Am. Compl. ¶ 144.
[10] *See also* Winn Dixie Second Am. Compl. ¶ 132; Puerto Rico Second Am. Compl. ¶ 120.

accordingly." *Valspar Corp. v. E.I. du Pont de Nemours & Co.*, 873 F.3d 185, 198 (3d Cir. 2017) (*quoting Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1033 (8th Cir. 2000)).  Plaintiffs must come forward with more than mere *ipse dixit* to claim pretext.  *Oce North America, Inc. v. MCS Services, Inc.*, 795 F. Supp. 2d 337, 344 (D. Md. 2011) (holding that, because the plaintiff "bears the initial burden of pleading sufficient allegations to warrant the lengthy discovery required of antitrust cases," they must provide "additional support or further factual enhancement" beyond claiming "baldly" that defendant's conduct was "pretext for anticompetitive behavior").

**Finally**, perhaps in recognition that the 2012 article provides no support for their allegations, Plaintiffs assert that IPC is a "private company" with limited available information.  TAC ¶ 132.  But Plaintiffs cannot avoid their pleading burden in this way.  There is no differentiated pleading requirement applicable to private companies versus public companies.  *MacCausland v. Uber Technologies, Inc.*, 312 F. Supp. 3d 209, 213 (D. Mass. 2018) (holding, in context of motion to dismiss antitrust case, that "although plaintiff correctly notes that '[the defendant] is a privately-held company that [does] not disclose relevant financial and market information,' that fact does not absolve plaintiff from meeting the required pleading standard").  To hold otherwise would eviscerate the Federal Rules by subjecting private companies to burdensome discovery on the mere assertion that facts core to plaintiffs' claims are unavailable at the time of pleading.  Plaintiffs in myriad other cases have met their pleading burdens notwithstanding the defendant being a private company; plaintiffs here should be held to the same standard.

\*     \*     \*

6

Plaintiffs have not met their required burden to entitle them to discovery (or in this case, further discovery) to see if they can come up with a plausible antitrust claim against IPC. *See* Order at 24; *see also In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.,* 2009 WL 294353, at *2 (D. Minn. Feb. 5, 2009) ("A plaintiff must adequately plead a claim before obtaining discovery, not the other way around.").

## II. The Indirect Purchasers Fail to State a Claim Against IPC Based Solely on a Subscription to Agri Stats.

The IPPs plead in the alternative that a subscription to Agri Stats constitutes an improper exchange of information that if not *per se* unlawful, is unlawful under the rule of reason because it permitted the Defendants to reduce production below competitive levels or otherwise raise prices. *See* IPP SAC ¶¶ 274, 277-78, 281, 284. However, the IPPs' rule of reason claim fails as to IPC for the same reason their *per se* antitrust claims fail: there are no plausible allegations that IPC cut production or raised prices at any time—alone or together with other defendants. Indeed, the IPPs do not specifically allege production cuts or price increases by IPC anywhere in their SAC. Thus, even if the IPPs plausibly alleged that a mere subscription to Agri Stats constitutes an improper exchange of information (and they do not), Plaintiffs fail to plausibly allege resulting conduct by IPC that injured competition. *See, e.g.*, *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F Supp. 1042, 1051 n.10 (D. Minn. 1992) (plaintiffs must allege how competition was injured by an information exchange in order to state a claim).

### III.     Plaintiffs Do Not Plausibly Allege "Plus Factors" Applicable to IPC.

Plaintiffs direct only three (of eight) "plus factor" allegations at IPC: 1) IPC subscribed to Agri Stats; 2) some employees were members of trade associations; and 3) IPC had a "vertically integrated operation" to procure Midwest hogs.  *See* TAC ¶¶ 46, 79, 110.[11]  Not one of these allegations plausibly suggest IPC's participation in any conspiracy. The Court has already recognized that a subscription to Agri Stats is not enough (Order at 18) and no inference of conspiracy lies simply "because [one] belong[s] to the same trade guild as one of his  competitors." *Bell Atlantic v. Twombly,* 550 U.S. 544, 567 n.12 (2007). As to the third, none of the Plaintiffs plausibly allege IPC controlled hog production in the Midwest or elsewhere.  *See* TAC ¶ 79.  The website excerpt that references a "vertically integrated operation" says that IPC procures hogs through family farmers and "surrounding farm neighbors," which is a far cry from Plaintiffs' claim that IPC somehow controlled hog *production*.  *Id.*  Indeed, the IPPs specifically exclude IPC from their claims that certain defendants were vertically integrated through hog production operations.  *See* IPP SAC ¶ 144.

The remaining alleged plus factors are not only unpled as to IPC, they are completely inapplicable to IPC:

- Plaintiffs allege no specific interfirm communications between IPC and any other defendant, or conspiratorial communications between IPC and Agri

---

[11] Winn Dixie Second Am. Compl. ¶¶ 40, 77, 109; Puerto Rico Second Am. Compl. ¶¶ 41, 73.

Stats.

- There are no plausible allegations that IPC took any actions against its own unilateral best interests.

- There are no allegations that IPC increased exports in furtherance of conspiratorial conduct.

- Plaintiffs' recite their attorneys' allegations in the *Broiler* litigation (*e.g.*, TAC ¶¶ 35-39)[12], but those unsubstantiated allegations have no relevance to IPC.   IPC does not produce chicken and is not a defendant in the *Broiler* case.  *See In re Broiler Chicken Antitrust Litigation,* No. 16-cv-08637 (N.D. Ill.).

- Nor do Plaintiffs' generalized charts that purport to depict industry pricing, industry consolidation, concentration, production, and exports plausibly suggest IPC's participation in any conspiracy.  These illustrations are either totally aggregated such that they are just another form of improper group pleading, or they expressly exclude IPC.  *See* TAC ¶¶ 84, 87, 120, 122; *see also id.* at ¶ 88 (omitting IPC from list of defendants when calculating concentration shares of colluding defendants).[13]

In short, not only have Plaintiffs failed to allege any coordinated production cuts by IPC as required by the Court, but their so-called plus factors are not well pled as to IPC.

---

[12] Winn-Dixie Second Am. Compl. ¶¶ 33-37; Puerto Rico Second Am. Compl ¶¶ 29-33.
[13] *See also, e.g.*, Winn-Dixie Second Am. Compl ¶¶ 73, 76, 103, 104; Puerto Rico Second Am. Compl. ¶ 77.

## <u>CONCLUSION</u>

Individual defendants like IPC are regularly dismissed from large antitrust cases where Plaintiffs fail to plausibly link them to any allegations of harm caused by purportedly unlawful conduct.  *See, e.g., In re Milk Products Antitrust Litig.,* 84 F. Supp. 2d 1016, 1020 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999); *In re Interest Rate Swaps Antitrust Litig.,* 261 F. Supp. 3d 430, 483 (S.D.N.Y. 2017).  The result should be no different here.

Dated: January 15, 2020

Respectfully submitted,

*s/ Jaime Stilson*_____
Jaime Stilson (#392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402-1498
(612) 492-6746
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation*