# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Civil No. 18-1776 (JRT/HB)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF JBS USA FOOD COMPANY'S MOTION TO DISMISS THE AMENDED COMPLAINTS** |

**INTRODUCTION**

JBS USA Food Company ("JBS USA") respectfully submits that it should be dismissed with prejudice from the Amended Complaints.[1] The few new supply-related allegations referencing JBS USA highlight the implausibility of JBS USA's participation in the purported decade-long conspiracy. Indeed, the Amended Complaints allege that JBS USA undertook only a *single* production cut throughout the entire conspiracy period – and that this production cut allegedly occurred in 2016, a year in which *no other Defendant is alleged to have cut production* and *several years* after the alleged conspiracy began. Moreover, the materials embraced by the Amended Complaints reveal that even this production cut allegation is false.

The Amended Complaints also contain a single allegation that JBS increased its exports early during the conspiracy, but fail even to suggest, as this Court deemed essential, that JBS USA "intentionally exported a greater percentage of their pork" in order "to limit the supply of pork" in the United States – let alone when specifically the exports occurred and in what amounts. *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *7-8 (D. Minn. Aug. 8, 2019) ("Order"). And the Complaints actually quote from a contemporaneous JBS

---

[1]  "Amended Complaints" refers to the third amended complaints filed by the Direct Purchaser Plaintiffs ("DPPs") (Dkt. 431) and the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIPs") (Dkt. 432), as well as the second amended complaints filed by Consumer Indirect Purchaser Plaintiffs ("IPPs") (Dkt. 392), Puerto Rico (No. 19-cv-2723 (D. Minn.), Dkt. 47), and Winn-Dixie (No. 19-cv-1578 (D. Minn.), Dkt. 94). All of the Amended Complaints contain substantively similar allegations. Unless otherwise indicated, all paragraph references herein are to the DPP complaint (*e.g.*, DPP ¶__).

earnings call explaining that these exports occurred at a time of "improvement and increase in consumption in the emergent markets." DPP ¶149.

Finally, the Amended Complaints no longer allege that JBS USA was vertically integrated at all prior to its acquisition of certain Cargill assets in late 2015 – effectively conceding that JBS thus was a hog *purchaser*, not a hog *producer*, from the outset and through most of the alleged "agreed upon scheme to limit hog supply." *Id.* ¶149.

## ARGUMENT

**A.  The Amended Complaints Demonstrate JBS USA Did Not Engage in Any Supply-Reduction Conspiracy.**

The Court dismissed the original complaints because "except for Smithfield," there were "no **specific** allegations in the complaints that plausibly establish that the individual Defendants decreased their own production of pork." Order at *9 (emphasis in original). The Court granted Plaintiffs leave to amend, with instructions to correct this fatal deficiency by including "specific information" that would permit the Court to "analyze which, how many, or when any of the individual Defendants may have affirmatively acted to reduce the supply of pork." *Id.* at *8.

In response, IPPs added ***no new, specific allegations*** that JBS USA engaged in any supply-reducing acts whatsoever. The remaining Plaintiffs have advanced, at most, only two new supply-related allegations against JBS USA: (1) "after acquiring Cargill's hog production facilities, JBS reduced the number of sows it produced in 2016 despite increased consumer demand"; and (2) "[i]n 2011 JBS USA reported that in the prior two years its pork export volume had grown from 15% to 20% of total production." DPP ¶127.

2

That Plaintiffs are only able to allege, at best, *two* supply-related allegations throughout the entire alleged conspiracy period, that are each *separated by five or six years*, confirms the implausibility of any claim that JBS USA was involved in a conspiracy to reduce supply.

First, the unsourced allegation that JBS USA reduced the number of sows it produced in 2016 is false, as demonstrated by materials embraced by the Amended Complaints. Plaintiffs cite the *Pork Powerhouses* reports throughout their complaints.[2] The 2016 *Top 35 U.S. Pork Powerhouses* report shows that JBS USA *increased* the number of sows in its inventory in 2016, from 175,000 in 2015 to 177,000 in 2016. *See* Decl. of John A. Kvinge in Supp. of Defs.' Mot. to Dismiss (Dkt. 435) ("Kvinge Decl."), Ex. 2. Moreover, the bare assertion that JBS USA undertook a single hog production cut – in a year in which no other Defendant is alleged to have made a single production cut of any kind and *several years* after the "scheme to limit hog supply" allegedly began, DPP ¶149 – only highlights the implausibility of JBS USA's alleged participation in the purported conspiracy.

Piggybacking off this false allegation, Plaintiffs then assert that "[t]his production restriction had the intended effect," because the 2016 annual report published by JBS S.A. – *JBS USA's Brazilian parent* – states that "pork prices were 18% higher year on year at the end of 2016, on the back of increased demand and output restrictions." DPP ¶127.

---

[2] *See, e.g.*, DPP ¶¶119 & n.44, 121 & n.46, 124 & n.47, 134 & n.51, 161. They are thus proper to consider on a motion to dismiss. *See* Memorandum of Law in Support of Plaintiffs' Joint Motion to Dismiss the Federal Law Claims in Plaintiffs' Amended Complaints ("Joint Memorandum") at 25.

3

However, the quoted material comes from the "Economic Scenario" section of the annual report and clearly pertains to the U.S. market, not JBS USA's own conduct:

> **ECONOMIC SCENARIO**
>
> **GLOBAL ECONOMY**
> The World Economic Situation and Prospects 2016 report, published by the United Nations, indicates the global economy grew just 2.2% in 2016, its lowest rate since 2009. The report says this performance reflects low levels of investment, a drop in global trade and productivity and higher debt levels. Additionally, low commodity prices and geopolitical conflicts and tensions have affected a number of regions.
>
> **UNITED STATES**
> According to the Bureau of Economic Analysis, US GDP increased 1.6% in 2016, which is less than the 2.6% growth reported in 2015. This growth reflects positive contributions from personal spending, residential investment, municipal, state and federal government expenditure as well as exports, all of which were partially offset by the negative contribution from private investment inventories and non-residential investment.
>
> Looking specifically at the US beef industry, the USDA Cattle Report signals an increase in the US cattle herd for the third consecutive year, attributed to significant returns for cattle breeders in 2014 and 2015, as well as good pasture conditions. Rising slaughter figures and slightly heavier carcasses resulted in a 6% rise in beef output. The USDA believes growth will continue into 2017. It is forecasting a 3% rise in beef output, as animals housed in feedlots between the end of 2016 and first half of 2017 have already been sold.
>
> The chicken market also faced a period of recovery after US exports were embargoed. This, alongside grain prices being held down at below US$4.00 a bushel, reduced industry profitability in 2016.
>
> **However, pork prices were 18% higher year on year at the end of 2016, on the back of increased demand and output restrictions.** Exports also rose 4.5%, particularly to China, where sales were up 17.7% on 2015. In 2017, the USDA expects pork exports to increase an additional 4%.
>
> **BRAZIL**
> The Brazilian economy shrank further in 2016, according to the Brazilian Statistical and Geographical Institute (IBGE), with GDP falling 3.6% after losing 3.8% the previous year. Also, according to the IBGE, inflation fell to 6.29%, its lowest rate since 2013. Food and beverage prices rose 8.62% in 2016 compared with 12.9% in 2015.

*See* JBS S.A. 2016 Annual and Sustainability Report at 68, available at https://jbss.infoinvest.com.br/enu/4070/JBS%20RAS%202016%20EN%20170502%20Final.pdf (emphasis added). The Court has already recognized that such statements, which "generally refer to the industry as a whole, and are largely vague," are "too indefinite to plausibly establish that any Defendant . . . actually made cuts." Order at *9.

Second, the allegation about JBS USA's exports does not even suggest, as this Court instructed was necessary, that JBS USA "intentionally exported a greater percentage of their pork" in order "to limit the supply of pork" in the United States. Order at *7. The

4

export allegation also does not indicate "when" the action was taken and in what amounts,[3] and thus gives the Court no ability to assess whether the exports were "proximate in time and value" to any other Defendants' acts. *Id.* at *8. Finally, Plaintiffs have made no factual allegations that any of JBS USA's sales to foreign purchasers were contrary to JBS USA's unilateral self-interest or contrary to market forces absent a conspiracy. To the contrary, Plaintiffs actually quote a March 2010 earnings call statement where JBS specifically noted the "improvement and increase in consumption in the emergent markets" during this period. DPP ¶149.

## B. JBS USA Was Not Vertically Integrated Through Most of the Alleged Conspiracy Period.

The Amended Complaints repeat the debunked and improper group pleading assertion that JBS USA is one of the "integrator Defendants" whose operations were vertically integrated. DPP ¶68. This allegation is critical to Plaintiffs' claims. Plaintiffs' assertion that Defendants engaged in a "scheme to limit hog supply," *id.* ¶149, and thereby increased pork prices, only makes sense if the Defendant pork producers were vertically integrated: that Defendants raised the hogs used to make pork products, and thus could limit the supply of hogs, *id.* ¶68.

However, as explained in JBS USA's motion to dismiss the original complaints, *see* Dkt. 176 at 2-3, this allegation is false as to JBS USA. JBS USA had no meaningful hog

---

[3] The Amended Complaints do not even attempt to identify whether the phrase, "prior two years," refers to 2009 and 2010, or 2010 and 2011. (For example, the exports could have increased by 1% in 2009 and 4% in 2010; or 4% in 2010 and 1% in 2011.)

production until acquiring certain Cargill assets in late 2015.[4] Plaintiffs now effectively concede this fact by adding the new allegation in the Amended Complaints that: "JBS' purchase of its predecessor in interest, Cargill, in 2015 . . . allowed JBS to exercise greater control over the production of hogs, by acquiring four hog farms and two packing plants operated by Cargill." DPP ¶76.

That JBS USA had no meaningful hog production until late 2015 is further confirmed by the sources Plaintiffs cite. A 2015 white paper on the Cargill asset acquisition cited by the Amended Complaints confirms that, as of the time of the acquisition, JBS USA "primarily relie[d] on purchasing auction hogs and entering market arrangements with farmers."[5] In addition, Plaintiffs cite a 2009 JBS S.A. earnings call transcript as "communicat[ing] the start of JBS USA's participation in hog liquidation efforts," DPP ¶144; but that very same transcript explicitly states "in the U.S. . . . [w]e don't have hog production."[6] Unsurprisingly, JBS USA is also conspicuously absent from *all Pork*

---

[4] Surprisingly, Cargill is now labeled a "co-conspirator," IPP ¶52, notwithstanding that (1) Plaintiffs do not allege Cargill engaged in a single hog or pork supply-reducing act throughout the entire conspiracy period; and (2) Plaintiffs acknowledge that Cargill spent $25 million in 2012 to expand an existing pork production facility. *Id.* ¶155; DPP ¶94. That an alleged co-conspirator *expanded* production capacity during the middle of an alleged scheme to reduce production fundamentally undermines the alleged conspiracy.

[5] *The Anticompetitive Effects of the Proposed JBS-Cargill Pork Packing Acquisition*, at 15, http://www.inmotionmagazine.com/ra15/JBS-Cargill_White_Paper.pdf (emphasis added) (cited at DPP ¶94 n.38).

[6] *See* Aug. 13, 2009 Earnings Conference Call Transcript ("Aug. 2009 Transcript"), at 15, http://jbss.infoinvest.com.br/enu/1899/2Q09EarningsConferenceCallTranscription.pdf (emphasis added) (cited at DPP ¶144).

6

*Powerhouses* reports until 2015 – that is, after it completed the acquisition of certain Cargill assets. *See* Kvinge Decl., Ex. 2.

Thus, as a company that purchased from independent third parties essentially all of the hogs it processed from 2009 to late 2015, JBS USA was *disincentivized* from having hog prices rise, by means of reducing hog supply or otherwise. Plaintiffs' allegation that "JBS adhered to Defendants' agreed upon scheme to limit hog supply" remains preposterous. DPP ¶149.

### C. The Few Remaining Allegations About JBS USA Do Not Suggest That It Participated in Any Conspiracy.

Plaintiffs are left to repeat the few scattershot allegations from their original complaints that this Court previously deemed insufficient. In particular, Plaintiffs continue to cite public statements made during various JBS S.A. earnings conference calls. But it was precisely these "largely vague" statements by Defendants or third parties that "refer to the industry as a whole" that the Court already found do not "indicate that any individual Defendant was making cuts." Order at *8-9.

*First*, as mentioned above, Plaintiffs cite an August 2009 earnings call as "communicat[ing] the start of JBS's participation in hog liquidation efforts," and quote a statement during the call that JBS was "seeing some more [hog] liquidation." DPP ¶144. However, as the Court specifically recognized, this statement only indicates that "JBS confirmed that it expected to see some shortage in the industry," Order at *3, and does not "indicate that [JBS USA] was making cuts," *id.* at *9. Nor could it have, given that in the

7

very same transcript JBS states that "in the U.S. . . . we don't have hog production." *See* Aug. 2009 Transcript, at 15.

*Second*, Plaintiffs quote a March 2010 earnings call in which JBS purportedly "mentioned [its] reduction in hog supply as a driver of profitability." DPP ¶149. But the quote itself merely states that a "'combination of reduction in supply for cattle, for hogs and for chicken and in the other hand the improvement and increase in consumption in the emergent markets we are very optimistic about our business, about the margin that we will see a strong demand and this reduction in supply, so we believe that we will see some shortage in protein going forward.'" *Id*. Again, this statement makes no reference whatsoever to any actions taken by JBS USA itself – which is not surprising, considering that JBS USA did not have any meaningful hog production. Rather, the statement innocuously reveals JBS "simply noticed that the industry's production as a whole was declining." Order at *9.

*Third*, this same rationale applies to a statement Plaintiffs quote from a May 2014 earnings call that, "'[i]n pork, given some restrictions in supply we have been able to pass price through the system and we are seeing good margins in our pork business. . . . So this is a clear sign that we have been able to pass price increase in chicken and pork and not in the same extent in beef.'" DPP ¶159.[7] Notably, this quote was made in the midst of the

---

[7] Remarkably, Plaintiffs continue to allege that this quote came from a May 2013 earnings call when it plainly came from the May 2014 earnings call. *See* JBS 1st Quarter 2014 Earnings Results International Conference Call Transcript, http://jbss.infoinvest.com.br/enu/3025/1Q14_ConfCall_eng.pdf (The second sentence of the document reads: "During this call we will present and analyze the results for 1Q 14.").

8

PEDv outbreak that the Amended Complaints, in the very next paragraph, acknowledge "caused industry supply disruptions." DPP ¶160; *see also id*. ¶120. Moreover, this comment generally addresses trends across several lines of business, not any supply-reduction acts specifically undertaken by JBS USA.

Plaintiffs also again conclusorily allege that JBS USA had the opportunity to conspire at industry meetings, but such conclusory allegations about the mere "opportunity to communicate" are not enough. *See Shimota v. Wegner*, 2016 WL 1254240, at *10 (D. Minn. Mar. 29, 2016) (Tunheim, J.).

Finally, Plaintiffs mention in several places that JBS USA acquired certain Cargill pork assets, and point out the obvious fact that the acquisition increased the size of JBS USA's pork operations. As in the original complaints, however, Plaintiffs do not claim that the acquisition was part of any conspiracy. *See* DPP ¶¶76, 85-86.

## **CONCLUSION**

For the reasons stated herein and in the Joint Memorandum, JBS USA respectfully submits that the claims against it should be dismissed, and now with prejudice.

Dated:  January 15, 2020        */s/ Donald G. Heeman*
                                            Donald G. Heeman (#286023)
                                            Jessica J. Nelson (#347358)
                                            Randi J. Winter (#391354)
                                            SPENCER FANE LLP
                                            150 South Fifth Street, Suite 1900
                                            Minneapolis, MN 55402
                                            Telephone: (612) 268-7000
                                            dheeman@spencerfane.com
                                            jnelson@spencerfane.com
                                            rwinter@spencerfane.com

                                            Stephen R. Neuwirth (*pro hac vice*)
                                            Michael B. Carlinsky (*pro hac vice*)
                                            Sami H. Rashid (*pro hac vice*)
                                            Richard T. Vagas (*pro hac vice*)
                                            David B. Adler (*pro hac vice*)
                                            QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                            51 Madison Avenue, 22nd Floor
                                            New York, NY 10010
                                            Telephone: (212) 849-7000
                                            stephenneuwirth@quinnemanuel.com
                                            michaelcarlinsky@quinnemanuel.com
                                            samirashid@quinnemanuel.com
                                            richardvagas@quinnemanuel.com
                                            davidadler@quinnemanuel.com

                                            *Counsel for JBS USA Food Company*