UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

In Re Pork Antitrust Litigation

This Document Relates to:  All Actions
_____

No. 1:18-cv-01776-JRT-HB

# MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS SEABOARD FOODS LLC AND SEABOARD CORPORATION

Defendants Seaboard Foods LLC ("Seaboard Foods") and Seaboard Corporation submit this memorandum in support of their motion to dismiss the amended complaints filed by the Direct Purchaser Plaintiffs ("DPP TAC," ECF No. 431), the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIP TAC," ECF No. 432), the Consumer Indirect Purchaser Plaintiffs ("IIP SAC," ECF No. 392), the Commonwealth of Puerto Rico ("P.R. SAC," No. 19-cv-2723, ECF No. 47), and Winn-Dixie Stores, Inc. ("Winn-Dixie SAC," No. 19-cv-1578, ECF No. 94) (collectively, the "Amended Complaints").

## INTRODUCTION

For the reasons set forth in the joint motion to dismiss, the Amended Complaints do not plausibly allege a conspiracy to restrict the supply of pork.  Seaboard Foods and its corporate parent bring this separate motion because the Amended Complaints do not state claims against them in particular.

Like the original pleadings, the Amended Complaints do not allege facts suggesting that Seaboard Foods engaged in any parallel conduct with other Defendants, much less conduct "sufficient to be interpreted as collusive." *In re Pork Antitrust Litig.*,

No. 18-cv-01776, 2019 WL 3752497, at *6 n.6 (D. Minn. Aug. 8, 2019).  Despite this Court's guidance that Plaintiffs must allege "specific information regarding each Defendant," *id.* *8, the only new allegations against Seaboard Foods are that (1) it increased its emphasis on exports during the alleged conspiracy period, and (2) in one year during that entire decade, it reported lower domestic sales.

Neither allegation cures Plaintiffs' failure to allege that Seaboard Foods agreed with other producers to restrict supply.  An increase in export sales is consistent with independent, profit-maximizing behavior; absent facts suggesting the exports were against Seaboard Foods' independent self-interest, these exports do not support an inference of agreement.  And a single, year-over-year reduction in domestic sales tells us nothing about Seaboard Foods' pork *production*, much less anything suggestive of conspiracy.  Seaboard Foods could have experienced lower domestic sales for a variety of reasons, including reduced demand, a labor shortage, or an outbreak of disease.  Indeed, Plaintiffs allege a perfectly innocuous reason why Seaboard may have reported lower *domestic* sales in 2013:  its "increasing emphasis" on exports.

In addition, some (but not all) Plaintiff groups continue to allege nothing about Seaboard Corporation beyond its ownership of Seaboard Foods.  Having failed to "distinguish the actions of the two [entities]," the Amended Complaints do not state a claim against Seaboard Corporation.  *Pork*, 2019 WL 3752497, at *9 n.11.

## BACKGROUND

Plaintiffs' original allegations against Seaboard Foods, which are republished in their Amended Complaints, were limited to the following:

- Seaboard Foods is a subsidiary of Seaboard Corporation based out of Shawnee Mission, Kansas, that sold pork in interstate commerce to purchasers in the United States.  DPP TAC ¶ 27.

- Seaboard Foods was an Agri Stats subscriber and reported financial and production data to Agri Stats.  DPP TAC ¶ 46.

- Seaboard Foods is the sixth largest pork "integrator" in the U.S. "with under five percent of the national slaughter capacity."  DPP TAC ¶ 86.  By contrast, the largest "integrator" is alleged to have a twenty-six percent share.  *E.g.*, DPP TAC ¶ 88 & Fig. 4.

- Seaboard Foods has "significant operations" in hog production and "[h]og processing and intermediate pork processing/packaging."  IIP SAC ¶ 144; Winn-Dixie SAC ¶ 70.

- Seaboard Foods executives have presented at the National Pork Industry Conference.  DPP TAC ¶ 104.

- Seaboard Foods personnel attended the 2014 International Production and Processing Expo.  DPP TAC ¶ 118.

- Seaboard Foods executives have served as officers or directors of the American Meat Institute or its successor, the North American Meat Institute.  DPP TAC ¶¶ 110-11.

- In February 2017, a joint venture of Seaboard Foods and Triumph Foods, LLC, announced plans to add a second shift at its new pork processing facility in Sioux

City, Iowa.  DPP TAC ¶ 163 (citing Tia Heidenbrecht, *New Pork Processing Plant Adds Second Shift in Sioux City* (Feb. 17, 2017), attached as Ex. A to this motion). In June 2018, the joint venture postponed adding the second shift.  DPP TAC ¶ 163 (citing Jeff DeYoung, *Pork Packing Capacity Faces Delay to Growth*, Iowa Farmer Today (June 2, 2018), attached as Exhibit B to this motion).

Plaintiffs' Amended Complaints add only a few allegations about Seaboard Foods. All Plaintiff groups except the consumer class add allegations that Seaboard Foods "placed an increasing emphasis" on exports throughout the class period, "including in 2010 and 2011" and "reduced supply" in 2013.  DPP TAC ¶ 129; P.R. SAC ¶ 117; Winn-Dixie SAC ¶ 129.  The allegation that Seaboard "reduced supply" is a characterization of statements in Seaboard Corporation's 2013 Annual Report that Seaboard Foods had a "lower sales volume of pork products in the domestic market," which—according to Plaintiffs—resulted in "higher prices for pork products sold in the domestic market." DPP TAC ¶ 129.  The consumers do not add these allegations, but instead allege that sow reductions by *other* producers "may" have led Seaboard Foods to sell less pork.  IIP SAC ¶¶ 108, 112; *see also* Winn-Dixie SAC ¶ 154.

Seaboard Corporation is Seaboard Foods' parent company.  DPP TAC ¶ 28. Plaintiffs do not allege any acts by Seaboard Corporation as distinct from its subsidiary.

## ARGUMENT

**I.     To state claims against Seaboard Foods and Seaboard Corporation, Plaintiffs must plausibly allege that these companies joined the alleged conspiracy.**

To state a conspiracy claim against a particular defendant, a complaint must plausibly allege that *that* defendant joined the conspiracy. *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1150 (D. Idaho 2011). Applying this principle, courts routinely dismiss claims against particular defendants despite finding the overall conspiracy allegations plausible. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010) (dismissing claims against one or more defendants despite finding plausible conspiracy as to other defendants); *Potatoes*, 834 F. Supp. 2d at 1158-64, 1173-75 (same); *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 512-17 (S.D.N.Y. 2009) (same).

Importantly, Plaintiffs cannot satisfy their burden as to Seaboard Foods and Seaboard Corporation by pointing to allegations that refer to "Defendants" collectively. "[V]ague allegations . . . that refer to 'defendants' or 'defendants' executives'" are "precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009).

## II. The Amended Complaints do not allege facts suggesting Seaboard Foods agreed with anyone to reduce the supply of pork.

Setting aside conclusory allegations and allegations directed at "Defendants" collectively, the only allegations against Seaboard Foods are that (1) it participated in trade associations; (2) it subscribed to Agri Stats reports; (3) it "placed an increasing emphasis on exports" during the alleged conspiracy; (4) it reported lower domestic sales in 2013; (5) alleged reductions in *other producers*' sow herds "may" have led Seaboard

5

Foods to sell less pork; and (6) its 50/50 joint venture with Triumph announced plans to add a second shift at a new processing facility, but postponed adding that shift in summer 2018.  Nothing about these allegations remotely suggests Seaboard Foods agreed with anyone to restrict the supply of pork.

### A. Plaintiffs do not plausibly allege that Seaboard Foods participated in "supply restraints."

As an initial matter, Plaintiffs do not allege that Seaboard Foods cut its pork production at any time during the alleged conspiracy—an omission that distinguishes this case from *Broiler Chicken*.  In contrast to *Broiler Chicken*, where each defendant is alleged to have destroyed breeder flocks, *see In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 796 (N.D. Ill. 2017), there is no allegation that Seaboard Foods reduced its sow herd.  Also in contrast to *Broiler Chicken*, where each defendant is alleged to have cut production during or shortly before the conspiracy period, *see id.* at 803, there is no allegation of any sort about Seaboard Foods' pork production.  Significantly, there is no allegation that Seaboard Foods cut production when the industry supposedly cut production in 2009, 2010, and 2013.  Given that Plaintiffs' case is premised on an alleged conspiracy to reduce pork supply, this deficiency alone warrants dismissal of the claims against Seaboard Foods.  *See Pork*, 2019 WL 3752497, at *8-9 (finding complaint deficient for failing to allege "when each Defendant undertook production cuts" or otherwise "plausibly establish that the individual Defendants decreased their own production of pork").

6

Unable to allege that Seaboard Foods cut its pork production, Plaintiffs characterize several innocuous facts as "supply constraints": that Seaboard Foods increased its export volumes during the alleged conspiracy; that Seaboard Foods reported lower domestic sales in 2013; and that Seaboard Foods' joint venture with Triumph postponed adding a second shift in June 2018. DPP TAC ¶¶ 123, 129. None of these allegations suggests that Seaboard Foods conspired with other producers to reduce pork supply.

*Exports*. Plaintiffs first allege that, throughout the class period, Seaboard Foods "placed an increasing emphasis on exports," "increased its volume of export sales to foreign markets," and "dedicated several employees to international sales and exports." DPP TAC ¶ 129. Plaintiffs do not, however, allege any facts suggesting that Seaboard Foods increased its export sales in concert with others. They do not, for example, allege that Seaboard Foods exported pork at a loss or for lower margins than Seaboard Foods could have earned on domestic sales. Nor do they allege that Seaboard Foods coordinated its exports with any other producer. To the contrary, Plaintiffs quote documents suggesting legitimate, independent reasons for the increased export volumes: "higher valued markets in the Far East" and "strong" demand from "the usual countries." DPP TAC ¶ 129 n.49. Plaintiffs' export allegations thus amount to nothing more than an allegation that Seaboard Foods engaged in ordinary commercial activity, which, under *Twombly*, is insufficient to allege a plausible conspiracy claim. *Twombly*, 550 U.S. at 557 ("[W]ithout that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory."); *see, e.g.*, *In re*

7

*Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 738-39 (E.D. Pa. 2011) (holding that export allegations were insufficient to allege that a defendant joined an alleged supply reduction conspiracy because the complaint did not "foreclose the possibility that export pricing could have been higher than domestic prices at the times of certain exports").

*Lower Domestic Sales Volumes in 2013.* Plaintiffs next allege that Seaboard Foods "reduced supply" in 2013 because its parent company reported a "lower sales volume of pork products in the domestic market" for that year. DPP TAC ¶ 129. But a reduction in *domestic* sales does not mean Seaboard Foods reduced its production of hogs or pork. Lower U.S. sales could result from increased demand in foreign markets, decreased demand in the U.S., or involuntary shocks to output (such as a plant fire, labor shortage, or outbreak of disease).[1] Consequently, that Seaboard Foods sold less pork in the U.S. in 2013 does not suggest that Seaboard Foods cut production or took any action for the purpose of reducing supply.[2]

---

[1] As with their earlier pleadings, Plaintiffs allege that the porcine epidemic diarrhea virus (PEDv) impacted U.S. hog and pork production in 2014. In fact, as Plaintiffs' own sources acknowledge, PEDv first impacted U.S. hog production in 2013. *See* Defs' Mem. in Supp. of Mot. to Dismiss ("Joint Br.") at 23 (ECF No. 439); *see also* United States Dep't of Ag., Animal & Plant Health Inspection Serv. Factsheet at 1 (Apr. 2014) (noting that USDA confirmed the presence of PEDv in the United States on May 16, 2013), *available at*
https://www.aphis.usda.gov/publications/animal_health/2014/faq_ped_reporting.pdf.
[2] Plaintiffs seek to bolster their conclusory allegation that Seaboard Foods "reduced supply in 2013" with misleading quotations from Seaboard Corporation's 2013 annual report. The annual report does not, as Plaintiffs allege, attribute higher pork prices to Seaboard Foods' lower domestic sales. *See* DPP TAC ¶ 129 ("Despite having an almost identical capacity as in 2012, it reported in 2013 that it had 'lower sales volume of pork products in the domestic market,' which resulted in 'higher prices for pork products sold

*Delayed Second Shift at Seaboard-Triumph Foods.*  Lastly, Plaintiffs complain that the company's joint venture with Triumph has not grown rapidly enough.  According to Plaintiffs, the joint venture announced in February 2017 that it would be adding a second shift, but then postponed adding that shift in June 2018.  *E.g.*, DPP TAC ¶ 163.  These events occurred years after the production cuts alleged in the Amended Complaints.  Thus, as the Court has already held, the June 2018 announcement is not even "parallel conduct."  *Pork*, 2019 WL 3752497, at *8.  But even if one were to treat the June 2018 postponement as an allegation of parallel conduct, such an allegation "needs some setting suggesting the *agreement* necessary to make out a § 1 claim."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (emphasis added).

Here, Plaintiffs allege no facts supporting their conclusion that the joint venture's decision to postpone the second shift was made in furtherance of a conspiracy.  To the contrary, Plaintiffs cite a news article that attributes the decision to a labor shortage:

> Steve Meyer, an economist with Kerns & Associates in Ames, says plans have changed somewhat for the Seaboard Triumph Foods plant in Sioux City, Iowa, which opened in 2017.  "They had hoped to start a second shift this year, but it sounds like starting the second shift is being pushed back to 2019," he says.  *"The labor situation is really tight here."*

---

in the domestic market.'").  Instead, the report notes that domestic prices were higher in 2013, but that Seaboard Foods' gains from those higher prices were offset by reduced domestic sales.  *See* Seaboard Corp. Annual Rep. at 17 (attached as Ex. C to this motion).  For purposes of this motion, the Court need not accept as true Plaintiffs' efforts to re-write Seaboard Corporation's annual report, but may review the entire contents of the document "from which the truncated quotations were drawn."  *Twombly*, 550 U.S. at 568 n.13.

9

Jeff DeYoung, "Pork packing capacity faces delays to growth," *Iowa Farmer Today* (June 2, 2018) (emphasis added) (attached as Ex. B).  The Court may properly consider this article because Plaintiffs cite it as the basis for their allegation.  *See Twombly*, 550 U.S. at 568 n.13.  But the Court need not do so to grant this motion.  Having failed to allege any facts supporting their characterization of the joint venture's 2018 decision, Plaintiffs cannot rely on that decision as support for their assertion that Seaboard Foods joined a conspiracy to reduce or restrict supply.

>    **B.    Plaintiffs' speculation that other producers' sow reductions "may" have led Seaboard to sell less pork is insufficient to state a claim against Seaboard Foods.**

Two Plaintiff groups—the consumer class and Winn-Dixie—allege that supposed production cuts by *other* producers "may" have led Seaboard to sell less pork.  According to these Plaintiffs, on a June 2009 conference call, Smithfield's CEO noted that, due to Smithfield's planned hog liquidation, Smithfield would need to purchase hogs on the open market to fulfil a long-term contractual commitment to Seaboard Foods.  IPP SAC ¶ 108.  Smithfield's CEO then noted that "We supply over 20—about 20% of Seaboard's raw material so they're going to have to address that issue at some point down the road."  *Id.*  Plaintiffs then go on to speculate that "Smithfield's cutbacks therefore *may* reduce the amount of pork that was sold by Seaboard over the long term."  *Id.* (emphasis added).  Plaintiffs further allege that sow reductions by Triumph Foods—whose pork Seaboard sells pursuant to a marketing agreement—likewise "*may* result in a reduction in the amount of pork that was sold by Seaboard."  *Id.* ¶ 112 (emphasis added).

10

It is unclear what these Plaintiff groups purport to allege against Seaboard Foods. What is clear, however, is that a plaintiff cannot defeat a motion to dismiss by speculating about what a defendant "may" or may not have done.

### C. Seaboard Foods' participation in trade associations and subscription to Agri Stats do not support an inference that Seaboard Foods agreed to restrict pork supply.

The remaining allegations against Seaboard Foods are innocuous. Mere attendance at industry meetings is insufficient to support a conspiracy claim, as such meetings represent nothing more than an *opportunity* to conspire. Joint Br. at 38. Unlike in *Broiler Chicken*, where the plaintiffs alleged "suspicious timing of important industry conferences . . . followed by unusual producer actions and market movements," 290 F. Supp. 3d at 800, there is no allegation that Seaboard Foods altered its production after attending an industry meeting. Consequently, nothing about Seaboard Foods' participation in trade associations or industry conferences suggests that Seaboard Foods agreed to coordinate or limit production.

The same is true for Seaboard Foods' subscription to Agri Stats. According to Plaintiffs, Agri Stats reports allow conspirators to "monitor each other's ongoing adherence to *agreed-upon plans for coordinated production limits*." DPP TAC ¶ 59. Absent participation in an agreement to "coordinate[] production limits," however, exchanging information through an entity like Agri-Stats is neither unlawful nor inherently anticompetitive. *See* Joint Br. at 39.

### III. The allegation that Seaboard Corporation is the parent company of Seaboard Foods is insufficient to state a claim.

Apart from being the parent company of Seaboard Foods, Seaboard Corporation is not alleged to have any connection to the conduct at issue in the Amended Complaints. Plaintiffs attempt to evade their pleading obligation by simply calling both the parent and the subsidiary "Seaboard," and then alleging that "Seaboard" joined the conspiracy. This does nothing to state a plausible claim against either company; to the contrary, it merely underscores Plaintiffs' lack of a basis for suing both. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (holding that allegations referring to single corporate entity, "Hitachi," were "insufficient to put specific defendants on notice of the claims against them"). Because Plaintiffs fail to allege the predicates for suing a parent company, *see Pork*, 2019 WL 3752497, at *9 n.11, the Amended Complaints do not state plausible claims against Seaboard Corporation.

## **CONCLUSION**

For all their length, the Amended Complaints are devoid of factual allegations suggesting that Seaboard Foods or Seaboard Corporation joined the alleged conspiracy. The Amended Complaints should therefore be dismissed as to these Defendants for failure to state a claim.

| | |
|---|---|
| Dated:  January 15, 2020 | */s/ William L. Greene* |
| | William L. Greene (#0198730) |
| | Peter J. Schwingler (#0388909) |
| | Jon M. Woodruff (#0399453) |
| | STINSON LLP |
| | 50 South Sixth Street, Suite 2600 |
| | Minneapolis, MN 55402 |
| | Phone: (612) 335-1500 |
| | Fax:    (612) 335-1657 |
| | william.greene@stinson.com |
| | peter.schwingler@stinson.com |
| | jon.woodruff@stinson.com |
| | |
| | Nicci Warr (*pro hac vice*) |
| | STINSON LLP |
| | 7700 Forsyth Boulevard, Suite 1100 |
| | St. Louis, MO 63105 |
| | Phone: (314) 863-0800 |
| | Fax:    (314) 863-9388 |
| | nicci.warr@stinson.com |
| | |
| | **Attorneys for Defendants Seaboard Foods LLC and Seaboard Corporation** |