UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION*<br>This Document Relates To:<br><br>All Class Actions | No. 1:18-cv-01776-JRT-HB |

**MEMORANDUM OF LAW BY TYSON FOODS, INC.,
TYSON FRESH MEATS, INC., AND TYSON PREPARED FOODS, INC.
IN SUPPORT OF THEIR MOTION TO DISMISS
<u>ALL PLAINTIFFS' AMENDED COMPLAINTS</u>**

Separate and apart from the pleading deficiencies detailed in the Defendants' joint motions, Plaintiffs' allegations against Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc. (collectively, "Tyson Defendants") fail for a distinct and unique reason. That is, Plaintiffs' own allegations show that it would be economically irrational for the Tyson Defendants to join the alleged conspiracy. Because Tyson's pork business is not vertically integrated and Tyson Fresh Meats 'must purchase the vast majority of hogs used in its operations from independent third-parties, Plaintiffs' alleged conspiracy would result in an overall increase in Tyson's costs. Plaintiffs have not only failed to cure this fatal defect in their Amended Complaints, but have added new allegations acknowledging that Tyson obtains the majority of its hog supply from independent producers,[1] while still failing to offer any explanation as to why Tyson

---

[1]     Direct Purchaser Plaintiffs' Third Amended and Consolidated Class Action Complaint ("DPPTAC") ¶ 78; Commercial and Institutional Indirect Purchaser Plaintiffs' Third Amended and Consolidated Class Action Complaint ("CIPTAC") ¶ 82; Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC Second Amended Complaint ("WDSAC") ¶ 76; Commonwealth of Puerto Rico's Second Amended Complaint ("PRSAC") ¶ 72.

1

would nonetheless conspire to raise the price of hogs. Further, Plaintiffs impermissibly group all three Tyson Defendants together and do not plausibly allege that *each* Tyson entity agreed to join the alleged conspiracy. Accordingly, the Tyson Defendants respectfully request that the Court dismiss all claims against them.

## ARGUMENT

### I.  THE CONSPIRACY ALLEGED IS NOT PLAUSIBLE AS TO ANY TYSON DEFENDANT

Plaintiffs purport to allege a conspiracy among pork producers to affect the supply and price of *pork*,[2] but in reality, their factual allegations center around the supply and price of *hogs*. Throughout the complaints, Plaintiffs conflate these two concepts, using the term "pork" at times to refer to live swine or hogs, and at other times, to the meat derived from those hogs.[3] The breeding and raising of hogs, though, is a separate industry from the slaughtering of hogs to produce consumable pork products. While some vertically integrated companies compete in both markets, others compete only in one. Tyson falls into the second category—Tyson is *not* a producer of hogs, but almost exclusively a purchaser of such hogs which it processes into pork— as Plaintiffs acknowledge.[4]

---

[2]  DPPTAC ¶ 2; CIPTAC ¶ 4; Consumer Indirect Purchaser Plaintiffs' Second Amended Consolidated Class Action Complaint ("IPPSAC") ¶ 6; WDSAC ¶ 4; PRSAC ¶ 4.

[3]  In fact, three of the complaints expressly acknowledge that, "From time to time in this complaint, "pork" and "swine" are used interchangeably ..." DPPTAC ¶ 2, n.2; CIPTAC ¶ 2, n.2; WDSAC ¶ 2, n.1.

[4]  All Plaintiffs admit as much in their amended complaints. (IPPSAC ¶ 144 (table indicating that Tyson had no significant hog production); WDSAC ¶ 70 (same).)

2

This is a critical issue because, sweeping and conclusory assertions aside, Plaintiffs allege that Defendants coordinated to reduce the supply of *hogs* in the market,[5] including by exchanging information relating to hog farming operations via Agri Stats.[6] Recognizing the centrality of live hogs to their theory, Plaintiffs attempt to paint all Defendants as hog producers, alleging the conspiracy was viable because "[v]ertical integration allows the integrator Defendants to directly control the production and supply of pork through their wholly owned and operated farms where the hogs are raised, fed, and prepared for slaughter." (*Id.* ¶ 68; *see also* CIPTAC ¶ 72; WDSAC ¶ 66; PRSAC ¶ 63.) To the extent that Plaintiffs have alleged any conspiracy—to be clear, they have not—it is a conspiracy involving the price and supply of *hogs*.

But unfortunately for Plaintiffs, Tyson is not vertically integrated in hog production; instead, as alleged, "[t]he *majority* of [Tyson's] live hog supply is obtained through various procurement relationships with *independent* producers." (DPPTAC ¶ 78; CIPTAC ¶ 82; WDSAC ¶ 76; PRSAC ¶ 72 (emphasis added).) This fact is also

---

DPPTAC ¶ 78 ("As Defendant Tyson stated in its 2009 10K Report, "The majority of our live hog supply is obtained through various procurement relationships with independent producers."); CIPTAC ¶ 82 (same); WDFAC ¶ 76 (same); PRSAC ¶ 72 (same)).

[5]  The entirety of Plaintiffs' section IV.D (headed "Defendants controlled the supply and production of pork in the United States, which allowed the scheme to succeed"), for example, deals exclusively with allegations regarding the breeding and raising of live hogs. (DPPTAC p. 26; CIPTAC p. 27; WDFAC p. 20; PRSAC p. 19.)

[6]  *See* DPPTAC ¶ 49 ("As of 2009, each [Agri Stats] monthly report contained nine sections for analysis and comparison: Performance Summary, Feed Mill, Ingredient Purchasing, Weaned Pig Production, Nursery, Finishing, Wean-to-Finish, Market Haul, Profit and Sales.")

3

expressly acknowledged by the IPPs and the Winn-Dixie Plaintiffs in the following table reproduced from their complaints:[7]

| Defendant | Hog Production | Hog processing and intermediate pork processing/packing | Further Pork Processing |
|---|---|---|---|
| Smithfield | ✓ | ✓ | ✓ |
| Tyson | | ✓ | ✓ |
| Triumph | ✓ | ✓ | |
| Seaboard | ✓ | ✓ | |
| Hormel | | ✓ | ✓ |

And now that Plaintiffs have acknowledged Tyson's heavy reliance on independent producers, the most they can say about the Tyson Defendants' hog production is that Tyson "raises a number of weanling swine to sell to independent finishers and *supply a minimal amount* of live swine for its processing needs." (DPPTAC ¶ 78; CIPTAC ¶ 82; WDSAC ¶ 76; PRSAC ¶ 72.) In fact, throughout the alleged conspiracy period, Tyson *purchased more than 90% of the hogs* it slaughtered from independent producers, as is evident from publicly available materials cited by Plaintiffs.[8] Thus, the Tyson defendants had virtually no control over hog supply, but rather, were at its mercy. This fact is fatal

---

[7]    IPPSAC ¶ 144; WDSAC ¶ 70.

[8]    For example, in 2009, Tyson owned approximately 52,000 sows. *See* Betsy Freese, *Top 25 U.S. Pork Powerhouses 2009*, Successful Farming (Sept. 14, 2009) (cited at DPPTAC ¶ 121; CIPTAC ¶ 125; WDSAC ¶ 120). On average, each sow gave birth to 22.05 weanling swine per year. (*See* DPPTAC ¶ 51; CIPTAC ¶ 55; WDSAC ¶ 49.) Therefore, Tyson produced only approximately 1,146,000 hogs in 2009. Whereas, Tyson harvested over 20 million hogs that year, more than 17 times the number of hogs Tyson produced. *See* Tyson Foods, Inc. 2009 Form 10-K, p. 13 (cited at DPPTAC ¶ 78; CIPTAC ¶ 82; WDSAC ¶ 76; PRSAC ¶ 72).

to Plaintiffs' claims against the Tyson Defendants. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322 n.20 (3d Cir. 2010) ("[M]ost courts rely on the absence of motivation or offense to self-interest to preclude a conspiracy inference from ambiguous evidence or mere parallelism.").

Because the Tyson Defendants overwhelmingly *purchase* rather than *produce* the hogs used in their operations, the Tyson Defendants had no incentive to participate in a conspiracy designed to raise the price of hogs. To the contrary, it would be against the Tyson Defendants' economic self-interest to do so. Under Plaintiffs' theory, the alleged conspiracy would result in the Tyson Defendants being forced to pay a much higher price for hogs, resulting not in any ill-gotten windfall, but in effect raising the Tyson Defendants' input costs and injuring themselves. Therefore, the claims against each of the Tyson Defendants must be dismissed because Plaintiffs' own allegations demonstrate that it makes no economic sense for any of them to participate in the alleged conspiracy. *See Am. Channel, LLC v. Time Warner Cable, Inc.*, 2007 WL 142173, at *7 (D. Minn. Jan. 17, 2007) (dismissing antitrust complaint for failure to allege "any facts to explain why, how, or for what purpose" the defendants "would need to conspire"); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1109 (7th Cir. 1984) (holding that "it is inherently implausible . . . that Ford conspired to injure itself"); *Cable Line, Inc. v. Comcast Cable Commc'ns of Pa., Inc.*, No. 3:16-CV-1000, 2018 WL 2209518, at *6-7 (M.D. Pa. May 14, 2018) ), *aff'd*, 767 F. App'x 348 (3d Cir. 2019) (dismissing complaint where, under the facts alleged, defendant would have "no motive to enter into a conspiracy where its own subcontractors would be able to charge higher rates");

5

*Cascades Computer Innovation LLC v. RPX Corp.*, 2013 WL 316023, *11 (N.D. Cal. Jan. 24, 2013) ("At the motion to dismiss stage, the determination turns on whether the defendants had 'any rational motive' to join the alleged conspiracy; and whether the conduct alleged 'was consistent with the defendant's independent interest.'") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986)); *United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 401 (S.D.N.Y. May 31, 2001) ("where the facts alleged in a complaint demonstrate that an alleged predatory pricing conspiracy makes no economic sense, the cause of action must be dismissed") (citing *Matsushita*, 475 U.S. 574).

Because Plaintiffs' own allegations render their claims against the Tyson Defendants implausible on their face and fundamentally flawed, Plaintiffs' claims against each Tyson entity should be dismissed with prejudice. *See Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1055 (D. Minn. 1992) (dismissing antitrust claims without leave to amend where pleading defects suffered from "fundamental inadequacies"); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'") (internal citation omitted); *Cable Line*, 2018 WL 2209518, at *6–7.

## II.   PLAINTIFFS' IMPERMISSIBLE GROUP PLEADING

All claims against Tyson Foods, Tyson Prepared Foods, and Tyson Fresh Meats should be dismissed because Plaintiffs fail to plead factual allegations that tie any of them

6

individually to the alleged conspiracy. As discussed in the Memorandum of Law in Support of Defendants' Joint Motion to Dismiss the Federal Law Claims in Plaintiffs' Amended Complaints ("Joint Federal Brief"), a complaint must "allege that 'each individual defendant joined the conspiracy and played some role in it' because, 'at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'" *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1170 (D. Idaho 2011) (quoting *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 311-312 (D.N.J. 2004)).

Here, Plaintiffs fail to plead that each (or any) Tyson Defendant made a conscious decision to join the alleged conspiracy. Rather, Plaintiffs impermissibly lump together the allegations against each entity under the name "Tyson." (*See, e.g.*, DPPSAC ¶ 2; CIPTAC ¶ 2; IPPSAC ¶ 15.) In fact, across the five complaints, there are only eight unique instances in which Plaintiffs present particular allegations against any of the three Tyson Defendants.[9] Puerto Rico and the IPPs make no factual allegations regarding Tyson Fresh Meats and ***no Plaintiff makes any factual allegations regarding Tyson Prepared Foods***.

Given that Plaintiffs were put on notice of these exact deficiencies by the Tyson Defendants' previous motion to dismiss, they should not be given yet another opportunity

---

[9] IPPs have added a handful of new allegations that a certain "Tyson" employee in an accounting role communicated with Agri Stats regarding the data contained in its reports, without specifying to which Tyson entity they would attribute those facts. (*See, e.g.*, IPPSAC ¶¶ 35-38.) As described more fully in the Joint Federal Brief (Part IV.C), these allegations entirely fail to support IPPs' claim that Defendants used Agri Stats to inflate prices.

to amend their complaints. *Wersal v. LivingSocial, Inc.*, No. CIV. 13-381 DWF/FLN, 2013 WL 3871434, at *3 (D. Minn. July 26, 2013) (dismissing plaintiff's first amended complaint with prejudice because plaintiff had been given an opportunity to amend and failed to rectify the deficiencies). As such, Plaintiffs' claims against Tyson Foods, Tyson Fresh Meats, and Tyson Prepared Foods should be dismissed with prejudice. *Id.*

## CONCLUSION

For the foregoing reasons, all claims against Tyson Foods, Tyson Fresh Meats, and Tyson Prepared Foods should be dismissed with prejudice.

Respectfully Submitted,

Dated: January 15, 2020

/s/ David P. Graham
David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
Jetta C. Sandin (*pro hac vice*)
Lindsey Strang Aberg (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
950 F Street, N.W.
Washington, D.C. 20004
(202) 912-4700
radcox@axinn.com
trider@axinn.com
jsandin@axinn.com
lstrang@axinn.com

*Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.*