UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:  All Actions | No. 0:18-cv-1776-JRT-HB<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT AGRI STATS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.      Plaintiffs Still Do Not Allege That Agri Stats Knew Of, Let Alone Participated In, A Supposed Conspiracy Among The Other Defendants. ................................................................................................. 2

    II.     Despite New Allegations, Plaintiffs Again Fail to Allege Facts Linking Agri Stats to Putative Pork Production Cuts. ................................ 5

CONCLUSION ................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

*CASES*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 5, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 3

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   288 F.3d 1028 (7th Cir. 2002) (Posner, J.) .................................................................... 2

*Five Smiths v. National Football League Players Ass'n*,
   788 F. Supp. 1042 (D. Minn. 1992) ............................................................................... 3

*Maple Flooring Mfrs. Ass'n v. United States*,
   268 U.S. 563 (1925) .................................................................................................. 4, 6

*Mayor & City Council of Baltimore v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013) .......................................................................................... 4

*Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*,
   208 F.3d 655 (8th Cir. 2000) ........................................................................................ 4

*In re Processed Egg Prod. Antitrust Litig.*,
   821 F. Supp. 2d 709 (E.D. Pa. 2011) ............................................................................ 5

*Sherr v. HealthEast Care Sys.*,
   262 F. Supp. 3d 869, 883 (D. Minn. 2017) ................................................................... 4

*Trace X Chem., Inc. v. Canadian Indus., Ltd.*,
   738 F.2d 261 (8th Cir. 1984) ........................................................................................ 7

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) ...................................................................................................... 3

*United States v. Citizens & Southern Nat'l Bank*,
   422 U.S. 86 (1975) ........................................................................................................ 6

**Statutes**

15 U.S.C. § 1 ................................................................................................................. 6, 7

**Other Authorities**

Index of Monthly Livestock, Dairy, and Poultry Outlook ................................................. 9

Index of Quarterly Hogs and Pigs Reports ....................................................................... 9

Fed. R. of Civ. P. 8 ............................................................................................................ 3

# INTRODUCTION

Despite receiving substantial discovery about Agri Stats since filing this suit, Plaintiffs have not cured the defects in their initial complaints.[1] They renew their claims against Defendant Agri Stats, Inc. ("Agri Stats") based solely on the company's industry benchmarking reports, again failing to allege that Agri Stats knew of or supported a putative conspiracy among the other Defendants to reduce pork supply.[2] Plaintiffs again attempt to link Agri Stats to the purported agreement even though Agri Stats does not produce or sell pork and its benchmarking reports do not contain forward-looking pork production data. In short, Plaintiffs again offer only conclusions and speculation about Agri Stats, adding no specific factual allegations to remedy the defects in their initial pleadings.

---

[1] Because the allegations concerning Agri Stats in the Consumer Indirect Purchaser Plaintiffs' Second Amended Consolidated Class Action Complaint (Dkt. No. 392) ("CIPP Complaint" or the "Amended Complaint") are more thorough than those in the Direct Purchaser Plaintiffs' Third Amended and Consolidated Class Action Complaint (Dkt. No. 431) ("DPP Complaint"), the Commercial and Institutional Indirect Purchaser Plaintiffs' Third Amended and Consolidated Class Action Complaint (Dkt. No. 432) ("CIIPP Complaint"), Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC's Second Amended Complaint (Dkt. No. 94) ("Winn-Dixie Complaint"), and the Commonwealth of Puerto Rico's Second Amended Complaint (Dkt. No. 47) ("Puerto Rico Complaint"), Agri Stats focuses on the CIPP Complaint. *In re Pork Antitrust Litig.*, 0:18-cv-01776-JRT-HB, Dkt. Nos. 392, 431, 432; *Winn-Dixie Stores, Inc. v. Agri Stats, Inc.*, 0:19-cv-01578-JRT-HB, Dkt. No. 94; *Commonwealth of Puerto Rico v. Agri Stats, Inc.*, 0:19-cv-02723-JRT-HB, Dkt. No. 47. Because that Complaint fails, the less detailed DPP, CIIPP, Winn-Dixie, and Puerto Rico Complaints also fail.

[2] The CIPPs include both *per se* and rule of reason claims in their second amended complaint. Both fail for the reasons outlined in the joint motions and here.

# ARGUMENT

## I. Plaintiffs Still Do Not Allege That Agri Stats Knew Of, Let Alone Participated In, A Supposed Conspiracy Among The Other Defendants.

As discussed in the joint motions, Plaintiffs do not allege facts plausibly suggesting an agreement to reduce pork supply. But their allegations involving Agri Stats are even more tenuous. Agri Stats neither produces nor sells pork and thus could not have reduced pork output. To treat Agri Stats as a putative conspirator, Plaintiffs must allege facts, taken as true, showing Agri Stats knew of the purported supply-reduction conspiracy. *In re Brand Name Prescription Drugs Antitrust Litig.*, 288 F.3d 1028, 1033 (7th Cir. 2002) (Posner, J.) (requiring antitrust plaintiffs to show that noncompetitors both knew of and joined a putative horizontal conspiracy). The Amended Complaints come nowhere close.

Most of Plaintiffs' new allegations relate to Agri Stats reports, but only highlight Agri Stats' lawful commercial business of providing valuable benchmarking services to its customers. Plaintiffs allege that "[t]he sales reports allowed defendants to compare their prices for individual products against the national average net price, and the national top 25 percent average price. For each product, Agri Stats specifically broke out the variance between the company's price and the national average price, as well as the economic impact of the variance." CIPP Compl. ¶ 22.[3] Providing performance metrics

---

[3] Although Plaintiffs' rhetorical flourishes try to create the impression that Agri Stats reports are so detailed as to allow one company to know the exact future behavior of identified competitors, when Plaintiffs allege facts and discuss sample reports, they tell a different story, repeatedly alleging only that the reports allow a company to compare its

allowing industry participants to compare their results against their competitors is commonly accepted and procompetitive. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978); *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1054 (D. Minn. 1992). Asserting additional details of Agri Stats reports and the historical data they contain says nothing about Agri Stats' knowledge of a putative supply-reduction agreement.

Plaintiffs also assert that Agri Stats encouraged Defendants to participate in data sharing, alleging that "Agri Stats knew that its service only had value if it had sufficient participation from the market." CIPP Compl. ¶ 171. In other words, Plaintiffs have accused Agri Stats of advertising its services and marketing its product – again, perfectly lawful conduct. When the factual allegations are more consistent with a defendant's participation in a legitimate business than with participation in an alleged conspiracy, they do not satisfy Rule 8's plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("[W]ithout that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory.").

Plaintiffs do not plausibly allege that Agri Stats actually participated in any purported conspiracy to restrict the supply of pork. Instead, Plaintiffs now allege that Agri Stats facilitated a conspiracy through its sales meetings with customers. *See* CIPP Compl. ¶¶ 11, 37 ("Agri Stats also helped defendants identify pricing opportunities at face to face meetings with defendants."). Notably, Plaintiffs never allege that any

---

performance against aggregated numbers like "the national average" and "the national top 25%." *See* CIPP Compl. ¶¶ 20, 22, 26, 28-30, 43, 47, 49, 55.

meeting occurred with more than one Agri Stats customer present. Sales meetings between Agri Stats and *individual* pork sellers to explain the benchmarking reports previously provided say nothing about Agri Stats' participation in any supposed supply-reduction agreement. *See Maple Flooring Mfrs.' Ass'n v. United States*, 268 U.S. 563, 586 (1925) ("defendants . . . who . . . . meet and discuss such information and statistics without however reaching or attempting to reach any agreement or any concerted action with respect to prices or production or restraining competition, do not thereby engage in unlawful restraint of commerce.").

Finally, nothing in the Amended Complaints suggests that Agri Stats could benefit from any alleged supply-reduction agreement. *See, e.g., Sherr v. HealthEast Care Sys.*, 262 F. Supp. 3d 869, 883 (D. Minn. 2017) (dismissing antitrust claim when complaint was "[e]ntirely lacking [in] factual allegations to explain why, how, or for what purpose [defendants]—who are not alleged to compete against each other—would need to conspire together"). Agri Stats is paid for its services; Plaintiffs do not explain how it could possibly benefit from restricting pork supply. *See, e.g., Mayor & City Council of Balt., Md. v. Citigroup, Inc.*, 709 F.3d 129, 138-39 (2d Cir. 2013) (affirming dismissal of antitrust claim because "[p]laintiffs' factual allegations do not plausibly suggest a common motive to conspire" (quotation marks omitted)); *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655, 660 (8th Cir. 2000) (non-competitors had "no logical motive to 'conspire'"). Agri Stats should be dismissed for these reasons alone.

## II. Despite New Allegations, Plaintiffs Again Fail to Allege Facts Linking Agri Stats to Putative Pork Production Cuts.

Agri Stats has produced almost 30,000 pages of documents to Plaintiffs since the original Complaints were filed. Even with this material, Plaintiffs still fail to plead facts showing that Agri Stats reports contain forward-looking production information, much less that such reports would enable pork producers to somehow restrict the supply of pork.[4]

To survive a motion to dismiss, Plaintiffs must support their theory that producer defendants agreed to limit pork production using Agri Stats reports with "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Mere "'naked assertion[s]' devoid of 'further factual enhancement'" cannot survive dismissal. *Id.* (quoting *Twombly*, 550 U.S. at 557). Plaintiffs allege no facts (as opposed to conclusory averments) demonstrating that Agri Stats reports allowed the producer defendants to coordinate on future production levels. *See In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 752 (E.D. Pa. 2011) (dismissing Section 1 claim as "unsupported" when plaintiffs failed to allege "specific facts" in support of plaintiff's "bald assertion[s]" about participation in a conspiracy).

Agri Stats produced the files of four employees – Agri Stats' only four employees with customer-facing pork account management responsibilities at the time – that were

---

[4] Further, the reports do not provide identifying numbers for competing plants, negating that competitors could identify each other based on the plant numbers as the plaintiffs claim.

included in Agri Stats' 2010 production to the Department of Justice.[5] CIPPs spend 80 paragraphs of their complaint on Agri Stats, many of which cite and discuss these materials, CIPP Compl. ¶¶ 17-97, and attach five exemplar reports. They assert in conclusory fashion that the reports generally give producer defendants the ability to see how their operations were performing with respect to sales, profits, and costs in relation to the (1) national average of the participating pork companies and (2) top 25% of the companies participating in Agri Stats. CIPP Compl. Exs. A-D, G. Yet they allege no facts support the theory that the reports allowed participants to ascertain *any* competitor production levels, let alone future production levels. In fact, a review of those reports proves the exact opposite: production volume, either by participant or in total, is not anywhere in the reports.

While Plaintiffs baldly assert that Agri Stats reports contain "forward-looking" information, CIPP Compl. ¶¶ 4, 7, 180, they offer no supporting citations because, as the exemplars show, those reports *do not contain* such information.[6] Four of the five appended reports contain information about a customer's sales and profits for specific pork products. CIPP Compl. Exs. A-D. While Plaintiffs allege that all of these reports

---

[5] Agri Stats originally produced this material in response to a civil investigative demand from the Department of Justice ("DOJ"). DOJ closed the investigation without taking any action.

[6] *See United States v. Citizens & S. Nat'l Bank*, 422 U.S. 86 (1975) (holding that an information sharing program is more likely to survive scrutiny when participants share information concerning past (rather than current/future) transactions, among other factors); *see also Maple Flooring Mfrs.' Ass'n*, 268 U.S. at 586 (holding that discussion of prices does not violate the Sherman Act when the discussions do not touch on future prices).

allow an Agri Stats customer to compare its prices and margins against the national average and the best-performing 25% of Agri Stats participants during the reporting period, CIPP Comp. ¶¶ 22, 26, 29-30, conspicuously missing are any allegations suggesting that a Defendant could identify any specific competitor's production levels or even aggregated production levels – much less *future* production levels. Instead of alleging that these reports provide any information about pork production or supply, Plaintiffs assert that these sales reports allow producers to identify opportunities to increase individual profitability. But companies do not violate the Sherman Act by individually seeking to maximize their respective profits. *See Trace X Chem., Inc. v. Canadian Indus., Ltd.*, 738 F.2d 261, 268 (8th Cir. 1984) (holding that "profit-maximizing" is not a Sherman Act violation and that it is "the normal, rational response of a business ... [] to maximize profits, sales or revenues").

The remaining appended report, CIPP Comp. Ex. G, is a Swine Processing Report, which contains "'Plant Cost Analysis,' including: labor, material, supplies, M&R, utilities, water & sewage, inspection, overhead, depreciation, and support departments." Like the sales reports, it breaks down specific historical costs associated with pork processing and provides "a weighted Top 25% number" comparing past data from different plants. CIPP Compl. ¶ 55. Again, nothing in the Amended Complaints alleges that a pork producer's ability to compare its historical processing costs to aggregated competitor processing costs allows that producer to identify any specific competitor's

production levels or even aggregated production levels – much less *future* production levels.[7]

Plaintiffs' remaining efforts to link Agri Stats reports to an ability to monitor production levels are conclusory and entitled to no presumption of truth. *See Iqbal*, 556 U.S. at 680-81 (holding that allegations that are "conclusory and not entitled to be assumed true"). Of the 73 paragraphs in which Plaintiffs purport to assert pork-related[8] factual allegations about Agri Stats, supply and production levels are only mentioned twice. CIPP Compl. ¶¶ 50, 84. One repeats the conclusion that Agri Stats reports could be used to detect cheating on the putative supply-reduction agreement. The other claims that one customer could identify information relating to another. Neither suggests that the supposedly "detailed information" and "figures" related to pork production alleged to be shared by Agri Stats enable any pork producer to coordinate on future production levels.

Finally, Plaintiffs simply ignore that past and even *future* pork production information is publicly available through government agencies. The USDA publishes a "Quarterly Hogs and Pigs" report outlining (1) total United States inventory, (2) total

---

[7] Plaintiffs also attach two presentations explaining Agri Stats' pork reporting process, CIPP Compl. Exs. E-F, but neither contains information related to forward-looking production levels.

[8] The other seven paragraphs about Agri Stats relate entirely to litigation regarding broiler chicken businesses. CIPP Compl. ¶¶ 91-97. These allegations have no bearing on any putative reduction of pork supply.

breeding inventory, and (3) total market hog inventory.[9] For all three, the USDA breaks down production of pork by month and by state. USDA data also compares the production numbers from the same month and state for the previous year. As such, anyone can visit the USDA website and see what the pork production levels were in a given state within weeks of the report publication date and can compare the various months to observe production trends. In addition to the production data contained in the "Quarterly Hogs and Pigs" report, USDA also publishes a monthly "Livestock, Dairy, and Poultry Outlook" that forecasts forward-looking pork production based on data USDA itself collects.[10] While Plaintiffs fail to allege facts showing that Agri Stats exchanged *any* forward-looking production information from Defendants, USDA's detailed production data and forecasts belie Plaintiffs' suggestion that the Agri Stats reports are somehow a nefarious tool in a pork supply-reduction agreement.

---

[9] United States Department of Agriculture, National Agricultural Statistics Service, Index of Quarterly Hogs and Pigs Reports (last updated, Dec. 23, 2019), https://usda.library.cornell.edu/concern/publications/rj430453j.

[10] United States Department of Agriculture, National Agricultural Statistics Service, Index of Monthly Livestock, Dairy, and Poultry Outlook (last updated, Dec. 16, 2019), https://usda.library.cornell.edu/concern/publications/g445cd121?locale=en.

## CONCLUSION

Plaintiffs' Complaints should be dismissed with prejudice for the reasons set forth in the memoranda filed by all Defendants. Plaintiffs' claims against Agri Stats should also be dismissed with prejudice for the additional reasons explained above.

DATED: January 15, 2020

*/s/ Peter H. Walsh*
Peter H. Walsh (MN# 0388672)
HOGAN LOVELLS US LLP
80 Eighth Street
Suite 1225
Minneapolis, Minnesota  55402
Tel:  (612) 402-3000
Fax:  (612) 339-5167
peter.walsh@hoganlovells.com

William L. Monts III (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
Jennifer A. Fleury (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com
jennifer.fleury@hoganlovells.com

*Counsel for Agri Stats, Inc.*