# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil Case No. 18-1776 (JRT/HB) |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | |

**PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS'
JOINT MOTION TO DISMISS THE STATE LAW CLAIMS IN THE
COMMERCIAL AND INDIVIDUAL INDIRECT PURCHASER PLAINTIFFS'
AMENDED COMPLAINTS**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   INDIRECT PURCHASER PLAINTIFFS ADEQUATELY PLEAD STATE
      LAW CLAIMS. .................................................................................................3

      A.    The Commercial Indirect Plaintiffs (CIP) have Article III standing............3

      B.    Rule 23 of the Federal Rules of Civil Procedure permits Plaintiffs to bring
            classwide claims, regardless of state procedural prohibitions. ...................9

      C.    Plaintiffs allege that Defendants restrained the national market for pork
            and thus satisfy the "intrastate" statutory requirements. ...........................12

      D.    Because the conspiracy continued through 2018, Indirect Purchasers'
            Rhode Island antitrust claims should not be dismissed..............................18

      E.    Indirect Plaintiffs adequately plead their consumer protection claims. ......19

            1.    Plaintiffs' consumer protection claims are based on price-fixing
                  allegations and do not sound in fraud and satisfy Rule 8(a). ..........20

            2.    Regardless of the pleading standard, Plaintiffs have pled their
                  consumer protection claims with more than adequate sufficiency. 23

            3.    Price-fixing is an unfair or unconscionable practice under the
                  consumer protection statutes and reliance and concealment are not
                  required elements. ..........................................................................24

      F.    Plaintiffs adequately allege claims for unjust enrichment. ........................34

            1.    Plaintiffs more than adequately satisfy the requirements for
                  pleading unjust enrichment. ...........................................................34

            2.    California, Illinois, Mississippi, and New Hampshire law recognize
                  claims for unjust enrichment...........................................................35

            3.    To the extent state law requires it, Indirect Plaintiffs satisfy any
                  direct benefit requirement. .............................................................36

            4.    The existence of a defined relationship is not required..................39

            5.    Plaintiffs may allege both unjust enrichment and claims at law.....40

III.  CONCLUSION ................................................................................................41

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Ackre v. Chapman & Chapman, P.C.*,
788 N.W.2d 344 (N.D. 2010) ....................................................................22

*In re Aftermarket Filters Antitrust Litig.*,
2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) .............................................27

*Alsides v. Brown Inst., Ltd.*,
592 N.W.2d 468 (Minn. Ct. App. 1999) ...................................................29

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .....................................................................................6

*Ames v. Oceanside Welding & Towing Co., Inc.*,
767 A.2d 677 (R.I. 2001) ...........................................................................31

*Apex Oil Co., Inc. v. Jones Stephens Corp.*,
881 F.3d 658 (8th Cir. 2018) .....................................................................25

*Arlandson v. Hartz Mountain Corp.*,
792 F. Supp. 2d 691 (D.N.J. 2011) ...........................................................34

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) ..........................................................................6

*In re Auto. Parts Antitrust Litig.*,
2013 WL 2456612 (E.D. Mich. June 6, 2013) .....................................26, 27

*In re Auto. Parts Antitrust Litig.*,
29 F. Supp. 3d 982 (E.D. Mich. 2014) ..........................................35, 37, 39

*In re Auto. Parts Antitrust Litig.*,
50 F. Supp. 3d 836 (E.D. Mich. 2014) ................................................25, 30

*In re Auto. Parts Antitrust Litig.*,
50 F. Supp. 3d 869 (E.D. Mich. 2014) ................................................18, 23

*Baptist Health v. Murphy*,
226 S.W.3d 800 (Ark. 2006) ................................................................23, 25

*Bates v. Dollar Loan Ctr., LLC*,
  2014 WL 3516260 (D. Nev. July 15, 2014) .............................................................22

*Belfiore v. Procter & Gamble Co.*,
  94 F. Supp. 3d 440 (E.D.N.Y. 2015) .......................................................................22

*Bellermann v. Fitchburg Gas & Elec. Light Co.*,
  54 N.E.3d 1106 (Ma. 2016) ....................................................................................22

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) .....................................................................................5

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) .......................................................10, 11, 19

*Brownlee v. Yellow Freight Sys., Inc.*,
  921 F.2d 745 (8th Cir. 1990) ...................................................................................41

*Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*,
  61 N.E.3d 1155 (Ill. App. Ct. 2016) .......................................................................22

*Bus. Cabling, Inc. v. Yokeley*,
  643 S.E.2d 63 (N.C. Ct. App. 2007) .......................................................................22

*Butler v. Jimmy John's Franchise, LLC*,
  331 F. Supp. 3d 786 (S.D. Ill. 2018) .......................................................................27

*Cal-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) .........................................................................................26

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................................................8

*Carriuolo v. Gen. Motors LLC*,
  72 F. Supp. 3d 1323 (S.D. Fla. 2014) .....................................................................22

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
  2015 WL 5166014 (E.D. Tenn. June 24, 2015)...................................................12, 39

*In re Chocolate Confectionary Antitrust Litig.*,
  749 F. Supp. 2d 224 (M.D. Pa. 2010) .................................................................16, 36

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) ...................................................................................36

*Coastal Physician Servs. of Broward Cty., Inc. v. Ortiz,*
   764 So. 2d 7 (Fla. Dist. Ct. App. 1999) ...................................................................15

*Dairy Queen, Inc. v. Wood,*
   369 U.S. 469 (1962) .................................................................................................41

*Davis v. Four Seasons Hotel Ltd.,*
   228 P.3d 303 (Haw. 2010) ........................................................................................22

*In re DDAVP Indirect Purchaser Antitrust Litig.,*
   903 F. Supp. 2d 198 (S.D.N.Y. 2012) ......................................................................32

*In re Dealer Mgmt. Sys. Antitrust Litig.,*
   362 F. Supp. 3d 510 (N.D. Ill. 2019) .......................................................................12

*In re Digital Music Antitrust Litig.,*
   812 F. Supp. 2d 390 (S.D.N.Y. 2011) ......................................................................13

*Dist. Cablevision Ltd. P'ship v. Bassin,*
   828 A.2d 714 (D.C. 2003) ........................................................................................27

*In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.,*
   2013 WL 5503308 (D.N.J. Oct. 2, 2013) ..................................................................16

*Durell v. Sharp Healthcare,*
   183 Cal. App. 4th 1350 (Cal. Ct. App. 2010) ...........................................................26

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
   536 F. Supp. 2d 1129 (N.D. Cal. 2008) ..............................................................17, 30

*Ellis v. Smith Grading & Paving, Inc.,*
   366 S.E.2d 12 (S.C. Ct. App. 1988) .........................................................................39

*Five for Entm't S.A. v. Rodriguez,*
   877 F. Supp. 2d 1321 (S.D. Fla. 2012) .....................................................................15

*In re Flonase Antitrust Litig.,*
   692 F. Supp. 2d 524 (E.D. Pa. 2010) ........................................................................14

*Gaebler v. New Mexico Potash Corp.,*
   676 N.E.2d 228 (Ill. App. Ct. 1996) .........................................................................27

*Gen. Insulation Co. v. Eckman Const.,*
   992 A.2d 613 (N.H. 2010) ........................................................................................36

*In re Generic Pharms. Pricing Antitrust Litig.*,
    368 F. Supp. 3d 814 (E.D. Pa. 2019) ................................................................*passim*

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ....................................................25

*Gregory v. Dillard's, Inc.*,
    565 F.3d 464 (8th Cir. 2009) .....................................................................34

*Hampshire Paper Corp. v. Highland Supply Corp.*,
    2002 WL 31114120 (D.N.H. Sept. 23, 2002) ..........................................22

*Hudock v. LG Elecs. U.S.A., Inc.*,
    2017 WL 1157098 (D. Minn. Mar. 27, 2017) ............................................8

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
    299 F.R.D. 648 (S.D. Cal. 2014) .............................................................12

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
    797 F.3d 538 (8th Cir. 2015) .......................................................................7

*In re iPhone 4S Consumer Litig.*,
    2013 WL 3829653 (N.D. Cal. July 23, 2013) ..........................................22

*Jackson v. ASA Holdings, LLC*,
    751 F. Supp. 2d 91 (D.D.C. 2010) ...........................................................22

*K.A.C. v. Benson*,
    527 N.W.2d 553 (Minn. 1995)..................................................................22

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    383 F. Supp. 3d 187 (S.D.N.Y. 2019).......................................................14

*Khoday v. Symantec Corp.*,
    858 F. Supp. 2d 1004 (D. Minn. 2012) .....................................................35

*Kremens v. Bartley*,
    431 U.S. 119 (1977)....................................................................................9

*LaChance v. United States Smokeless Tobacco Co.*,
    931 A.2d 571 (N.H. 2007) ........................................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).....................................................................................4

*In re Lidoderm Antitrust Litig.*,
    103 F. Supp. 3d 1155 (N.D. Cal. 2015) ...................................................17

*Lisk v. Lumber One Wood Preserving, LLC*,
    792 F.3d 1331 (11th Cir. 2015) ..........................................................10, 11

*In re Lithium Ion Batteries Antitrust Litig.*,
    2014 WL 4955377 (N.D. Cal. Oct. 2, 2014).......................................11, 25

*Long v. Dell, Inc.*,
    93 A.3d 988 (R.I. 2014) ........................................................................31

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
    2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) .........................................12

*Martis v. Grinnell Mut. Reinsurance Co.*,
    905 N.E.2d 920 (Ill. App. Ct. 2009) .......................................................40

*Marty H. Segelbaum, Inc. v. MW Capital, LLC*,
    673 F.Supp.2d 875 (D. Minn. 2009).......................................................41

*In re Mercedes-Benz Tele Aid Litig.*,
    257 F.R.D. 46 (D.N.J. 2009).................................................................34

*In re Microsoft Corp. Antitrust Litig.*,
    127 F. Supp. 2d 702 (D. Md. 2001) ..................................................15, 39

*In re Microsoft Corp. Antitrust Litig.*,
    401 F. Supp. 2d 461 (D. Md. 2005) ........................................................39

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ....................................................26

*Moore v. Compass Grp. USA, Inc.*,
    2019 WL 4723077 (E.D. Mo. Sept. 26, 2019)...........................................8

*Mulford v. Altria Grp., Inc.*,
    242 F.R.D. 615 (D.N.M. 2007)...............................................................22

*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*,
    532 S.E.2d 868 (S.C. 2000) ...................................................................39

*Nat'l Ass'n for the Advancement of Colored People v. Am. Family Mut.
    Ins. Co.*,
    978 F.2d 287 (7th Cir.1992) ....................................................................8

*Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*,
   34 N.E.3d 1023 (Ill. App. Ct. 2015) ............................................................... 40

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004) ...................................................... 23, 30, 32

*New York Jets LLC v. Cablevision Sys. Corp.*,
   2005 WL 2649330 (S.D.N.Y. Oct. 17, 2005) .................................................. 16, 29

*In re Niaspan Antitrust Litig.*,
   42 F. Supp. 3d 735 (E.D. Pa. 2014) .............................................................. 36

*Nigh v. Koons Buick Pontiac GMC, Inc.*,
   143 F. Supp. 2d 535 (E.D. Va. 2001) ............................................................ 33

*Olin v. Dakota Access, LLC*,
   910 F.3d 1072 (8th Cir. 2018) .................................................................... 20

*In re Optical Disk Drive Antitrust Litig.*,
   2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) ..................................................... 12

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ................................................................................ 6

*In re Packaged Seafood Prods. Antitrust Litig.*,
   242 F. Supp. 3d (S.D. Cal. 2017) ........................................................... *passim*

*Paxton v. Union Nat'l Bank*,
   688 F.2d 555 (8th Cir. 1982) ...................................................................... 6

*PH W. Dover Prop., LLC v. Lalancette Eng'rs*,
   120 A.3d 1135 (Vt. 2015) .......................................................................... 22

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   252 F.R.D. 83 (D. Mass. 2008) .................................................................... 30

*Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv.*,
   67 N.E.3d 556 (Ill. App. Ct. 2016) ............................................................... 40

*Pitts v. Jackson Nat'l Life Ins. Co.*,
   574 S.E.2d 502 (S.C. Ct. App. 2002) ......................................................... 39, 40

*Plubell v. Merck & Co. Inc.*,
   434 F.3d 1070 (8th Cir. 2006) ..................................................................... 9

*Powers v. Lycoming Engines*,
   245 F.R.D. 226 (E.D. Penn. 2007)..............................................................35

*In re Processed Egg Prods. Antitrust Litig.*,
   851 F. Supp. 2d 867 (E.D. Pa. 2012)....................................................*passim*

*In re Propranolol Antitrust Litig.*,
   249 F. Supp. 3d 712 (S.D.N.Y. 2017).......................................................12

*Roth v. Life Time Fitness, Inc.*,
   2016 WL 3911875 (D. Minn. July 14, 2016) ......................................6, 7, 8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010).........................................................................9, 10, 12

*Sheet Metal Workers Local 441 Health & Welfare Plan v.*
   *GlaxoSmithKline, PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010) ...................................................28, 29

*Siegel v. Shell Oil Co.*,
   480 F. Supp. 2d 1034 (N.D. Ill. 2007) ......................................................28

*Singer v. AT&T Corp.*,
   185 F.R.D. 681 (S.D. Fla. 1988) ..............................................................34

*Sisney v. Best Inc.*,
   2008 S.D. 70, 754 N.W.2d 804 (S.D. 2008) .............................................22

*Smith-Brown v. Ulta Beauty, Inc.*,
   2019 WL 932022 (N.D. Ill. Feb. 26, 2019) ..............................................11

*Sobel v. Franks*,
   633 N.E.2d 820 (Ill. App. Ct. 1994) .........................................................40

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   2017 WL 4621777 (D. Mass. Oct. 16, 2017)............................................12

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   2015 WL 5458570 (D. Mass. Sept. 16, 2015) ..........................................28

*State ex rel. Spaeth v. Eddy Furniture Co.*,
   386 N.W.2d 901 (N.D. 1986) ...................................................................30

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)................................................................................3

*Hood ex rel. State v. BASF Corp.*,
  2006 WL 308378 (Miss. Ch. Jan. 17, 2006) ....................................................14

*Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*,
  781 F.3d 1003 (8th Cir. 2015) ......................................................................21

*In re SuperValu, Inc.*,
  870 F.3d 763 (8th Cir. 2017) .....................................................................4, 5

*In re Target Corp. Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014)................................................................8

*In re Terazosin Hydrochloride Antitrust Litig.*,
  220 F.R.D. 672 (S.D. Fla. 2004)....................................................................34

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) .................................................16, 17, 27, 31

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  599 F. Supp. 2d 1179 (N.D. Cal. 2009) ............................................................37

*Thomas v. U.S. Bank N.A., N.D.*,
  2012 WL 12897284 (W.D. Mo. Sept. 27, 2012) ........................................................8

*Tim Torres Enters., Inc. v. Linscott*,
  416 N.W.2d 670 (Wis. Ct. App. 1987) ..............................................................33

*In re Tobacco II Cases*,
  207 P.3d 20 (Cal. 2009) ..........................................................................26

*United States v. Bame*,
  721 F.3d 1025 (8th Cir. 2013) .....................................................................40

*United States v. R.J. Zavoral & Sons, Inc.*,
  894 F.Supp.2d 1118 (D. Minn. 2012)................................................................41

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988) ......................................................................8

*Volling v. Antioch Rescue Squad*,
  999 F. Supp. 2d 991 (N.D. Ill. 2013) ..............................................................8

*Wallis v. Ford Motor Co.*,
  208 S.W.3d 153 (Ark. 2005)........................................................................22

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009) ................................................................ 14

*White v. Medico Life Ins. Co.*,
    327 N.W.2d 606 (Neb. 1982) .................................................................... 22

*Williams v. Purdue Pharma Co.*,
    297 F. Supp. 2d 171 (D.D.C. 2003) .......................................................... 27

*Wilson v. Volkswagen Grp. of Am., Inc.*,
    2018 WL 4623539 (S.D. Fla. Sept. 26, 2018) .......................................... 12

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
    536 F.3d 663 (7th Cir. 2008) .................................................................... 20

*Winkelman v. Kraft Foods, Inc.*,
    693 N.W.2d 756 (Wis. Ct. App. 2005) ..................................................... 33

*Wisconsin v. Abbott Labs.*,
    829 N.W.2d 753 (Wis. Ct. App. 2013) ..................................................... 33

*Wright v. Craft*,
    640 S.E.2d 486 (S.C. Ct. App. 2006) ....................................................... 22

*Zyla v. Wadsworth, Div. of Thomson Corp.*,
    360 F.3d 243 (1st Cir. 2004) .................................................................... 15

## STATE STATUTES

Ark. Code § 4-88-107(10) ................................................................................ 25

Arkansas Deceptive Trade Practices Act ................................................. 23, 25

Cal. Bus. & Prof. Code § 17200 ..................................................................... 26

Consumer Fraud Act ....................................................................................... 27

D.C. Code § 28-3901(b)(1) ....................................................................... 26, 27

Illinois Antitrust Act ...................................................................................... 27

Illinois Consumer Fraud Act .................................................................... 20, 27

M.G.L., c. 93A § 9 .......................................................................................... 13

Mich. Comp. Laws Ann. § 445.903 ......................................................28

Mich. Comp. Laws Ann. § 445.911(3)(c) ...........................................28

Michigan Consumer Protection Act .....................................................28

Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.* ........29

Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. §
325.D.43 *et seq.* ..................................................................................29

N.C. Gen.Stat. § 75–1.1 ......................................................................17

N.D. Cent. Code § 51-10 .....................................................................30

N.D. Cent. Code § 51-10-03 ................................................................30

N.D. Cent. Code § 51-15-01 *et seq.* ..................................................30

N.D. Cent. Code § 51-15-02 ................................................................30

Nebraska Consumer Protection Act .....................................................22

Nevada Deceptive Trade Practices Act ................................................22

New Hampshire's Consumer Protection Act ........................................15

New York Gen. Bus. Law § 349 ...............................................16, 29, 30

R.I. Gen. Laws §§ 6-13.1-2, 6-13.1-3 .................................................31

S.D. Codified Laws § 37-24-6(1) .........................................................32

South Dakota's Deceptive Trade Practices Act....................................31

Utah Code Ann. § 13-1-2(2).................................................................32

Utah Code § 76-10...................................................................................4

Utah's Consumer Sales Practices Act ..................................................32

Utah's Unfair Practices Act ..................................................................21

Virginia's Consumer Protection Act ...............................................21, 33

## FEDERAL RULES

Federal Rule of Civil Procedure 8 ...............................................................*passim*

Federal Rule of Civil Procedure 9(b) ............................................19, 20, 21, 23

Federal Rule of Civil Procedure 18 ...........................................................41

Federal Rule of Civil Procedure Rule 23 ................................................*passim*

## I.      INTRODUCTION

Indirect Plaintiffs[1] have plausibly alleged that Defendants[2] orchestrated a scheme to increase pork profits by exchanging detailed, confidential, forward-looking strategic information regarding supply and prices. Because this conduct violates a variety of state antitrust and consumer protection laws, Indirect Plaintiffs have pleaded a number of state law claims. *See generally* CIP ¶¶ 221-288; IPP ¶¶ 285-622.[3] In their Motion to Dismiss the State Law Claims, Defendants introduce assortment of arguments challenging these well-pled state law claims.[4] As iterated below, none of these arguments is persuasive and Defendants' Motion to Dismiss the State Law Claims should be denied.

The Motion to Dismiss the State Law Claims can be arranged into five main categories of challenges; each of these is unavailing. *First*, Defendants argue that if there is not yet a named representative who resides in a state, then all claims bought under that

---

[1] "Indirect Plaintiffs" refers to the Commercial Indirect Purchaser Plaintiffs (the CIPs) and the Consumer Indirect Purchaser Plaintiffs (the IPPs).

[2] "Defendants" has the same definition as Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss the Direct Purchaser Plaintiffs' Complaint and the Federal Law Claims in the Indirect Purchaser Plaintiffs' Complaints for Failure to State a Claim Upon Which Relief May Be Granted ("Opposition to the Joint Motion to Dismiss" or "Joint MTD Opp'n"), filed concurrently herewith.

[3] "IPP ¶ __" refers to the Consumer Indirect Purchaser Plaintiffs' Second Amended Consolidated Class Action Complaint, Nov. 6, 2019, ECF No. 393; Likewise, "CIP ¶ __" refers to the Commercial and Institutional Indirect Purchaser Plaintiffs' Third Amended and Consolidated Class Action Complaint, Jan. 15, 2020, ECF No. 432.

[4] "Motion to Dismiss the State Law Claims" refers to Memorandum of Law in Support of Defendants' Joint Motion to Dismiss the State Law Claims in the Commercial and Individual Indirect Purchaser Plaintiffs' Amended Complaints (MTD State Law), Jan. 15, 2020, ECF No. 437.

- 1 -

state's laws must be dismissed; this argument misconstrues Article III's standing requirements. *See* Section II(A) *infra*. *Second*, Defendants opine that Indirect Plaintiffs cannot bring classwide claims for some states because these states limit class actions; this opinion distorts the relationship between state and federal law. *See* Section II(B), *infra*. *Third*, Defendants exaggerate some states' requirements for showing intrastate conduct and suggest that Indirect Plaintiffs' claims should be dismissed because the conduct alleged here does not satisfy their heightened requirements; Indirect Plaintiffs have correctly pleaded intrastate conduct to the extent it is required. *See* Section II(C), *infra*. *Fourth*, Defendants misinterpret Indirect Plaintiffs' consumer protection claims as sounding in fraud and as a result, apply the incorrect pleading standard to the consumer protection claims. *See* Section II(E), *infra*. *Fifth*, Defendants distort the requirements for pleading unjust enrichment claims. *See* Section II(F), *infra*.

In addition to these arguments, Defendants rely exclusively on their Joint Motion to Dismiss to posit that the state law claims are implausible and time-barred. *See* MTD State Law at 2-3. Since Defendants raise no new, state-specific arguments regarding the plausibility of Indirect Purchasers' allegations or regarding the state statute of limitations, these arguments must rise and fall with their Joint Motion. And for this reason, the request to dismiss Indirect Purchasers' claims should be denied as stated in Plaintiffs' Opposition to the Joint Motion to Dismiss.[5]

---

[5] Plaintiffs hereby incorporate the arguments and case law from Plaintiffs' Opposition to the Joint Motion to Dismiss filed concurrently herewith.

- 2 -

010736-11/1240736 V1

## II.     INDIRECT PURCHASER PLAINTIFFS ADEQUATELY PLEAD STATE LAW CLAIMS.

### A.     The Commercial Indirect Plaintiffs (CIP) have Article III standing.

Article III requires a plaintiff to show that she has suffered injury in fact that is "fairly traceable to the challenged conduct of the defendant" and that is likely to be "redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The CIP named plaintiffs allege that they were overcharged (i.e., the injury in fact), because of anticompetitive actions taken by Defendants (i.e., the injury is traceable to the defendants), and that these wrongs should be redressed by injunctive relief and money damages (i.e., these wrongs can be remedied by a favorable decision here). In other words, all of the claims asserted in the CIP named plaintiffs' complaint, whether or not brought under the laws of a state in which a CIP named plaintiff resides, are fundamentally of the same type and will be redressed by the same kind of remedies.

While Defendants concede that CIPs have Article III standing for state claims in the states where CIPs reside, Defendants contend that CIPs lack standing with claims in the remaining 20 states.[6] MTD State Law at 3-8. Defendants argue that the Court must dismiss CIP's claims for twenty states – D.C., Iowa, Kansas, Maine, Massachusetts, Michigan, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, and West Virginia – for lack of Article III standing because there is not yet a

---

[6] Defendants make no Article III arguments related to IPP's standing and thus concede that IPPs have standing for all IPP claims.

named plaintiff who resides in these states. MTD State Law at 3. Defendants are incorrect.

Under the law, a plaintiff has Article III standing if he or she alleges "'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014). But Defendants invent an additional standing element: residency within a particular state.[7] MTD State Law at 4. This misconstrues Article III standing. In the Rule 23 context, a named plaintiff need only satisfy the constitutional requirements of Article III and establish individual standing, not class standing. "'Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court; there is no further, separate 'class action standing' requirement.'" *In re SuperValu, Inc.*, 870 F.3d 763, 773 (8th Cir.

---

[7] Even setting aside that Rule 23 sets forth a procedural mechanism for bringing representative litigation, the CIP named plaintiffs have the right to represent class members from other states because they themselves also have standing to assert claims in those states. Nearly all of the states' antitrust and consumer protection laws contain broad language that "can plainly be construed to not require in-state residency or an in-state purchase, but rather only that some of the Defendants' conduct occurred, or the effects of which were felt, within the state – thereby violating the statute." *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 888 (E.D. Pa. 2012). "Indeed, when read literally, the language of these respective provisions authorizes broad private enforcement, and thereby can be read to afford relief to all persons whose injuries may have occurred outside of the state, but are causally related to an antitrust violation." *Id.* at 888-89; *compare* Utah Code § 76-10--919(1) (explicitly conferring standing only on "[a] person who is a citizen of this state or a resident of this state and who is injured or is threatened with injury"). CIP plaintiffs have adequately alleged that they have standing to bring state claims on behalf of absent class members in other states and to bring those state claims themselves.

2017) (quoting 2 William B. Rubenstein, Newberg on Class Actions § 2:1 (5th ed. 2012)). Courts and leading authorities on class actions agree that absent class members are passive participants in the litigation – in contrast to the named plaintiff who is actively prosecuting the litigation on their behalf. Once the named plaintiff's standing is established, the "plaintiff may be able to assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009). Thus, "[a] putative class action can proceed as long as one named plaintiff has standing." *SuperValu*, 870 F.3d at 768.

For example, Defendants point out that no named plaintiff can allege that he or she resided or purchased pork in New Hampshire. *See* MTD State Law at 5. To put this into context, but for the class action mechanism, a CIP named plaintiff also lacks standing to bring a claim belonging to an absent class member residing in the same state. Regardless of whether or not absent class members are located in the same state as a named plaintiff, the fundamental question is whether it is appropriate for the named plaintiff to be allowed to assert representative claims on behalf of the absent class members, and this is a question that is clearly appropriate for this litigation's class certification stage.

Whether or not a named plaintiff may represent and thus help vindicate the rights of absent class members is neither a standing issue nor an Article III case or controversy issue. Instead, this question turns on whether the prerequisites of Rule 23 have been met, namely typicality, adequacy, and whether common questions of fact or law predominate. The typicality requirement does not require a plaintiff to demonstrate that her personal

claim can be asserted directly under a different state's law. Rather, it merely "'requires a demonstration that there are other members of the class who have the same or *similar grievances* as the plaintiff."' *Paxton v. Union Nat'l Bank*, 688 F.2d 555, 562 (8th Cir. 1982) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)) (emphasis added). Indeed, authority from the class certification stage of litigation has found that a named plaintiff may engage in representative litigation on behalf of absent class members residing in other states. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 49-51 (1st Cir. 2018) ("Importantly, the claims of the named plaintiffs parallel those of the putative class members in the sense that, assuming a proper class is certified, success on the claim under one state's law will more or less dictate success under another state's law.").

This Court has found that deciding whether the named plaintiffs are appropriate class representatives is premature until Plaintiffs' motion for class certification. This Court recently recognized that two Supreme Court decisions – *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) – permit postponing a decision on standing "when class certification is 'logically antecedent' to standing." *Roth v. Life Time Fitness, Inc.*, No. 15-cv-3270 (JRT/HB), 2016 WL 3911875, at *4 (D. Minn. July 14, 2016). In *Roth*, a single named plaintiff, Jennifer Roth, sought to bring unjust enrichment claims under the law in twenty-three states. *Id.*, at *1. This Court opined that "a number of recent and thoroughly reasoned decisions have come down in favor of permitting courts the discretion to wait to address standing in class actions" and elected to defer judgment on the standing issue. *Id.* The Court should

make the same decision here, given that class certification is logically antecedent to standing. *Id*.

Defendants' reliance on *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538 (8th Cir. 2015), is misplaced. *See* MTD State Law at 6. It is true that the district court in *Insulate* elected to apply a rigid, narrow interpretation of Supreme Court precedent. On this basis, the district court decided that a California corporation did not have standing to bring forth a Minnesota antitrust claim. But before it decided this issue, the district court had already determined it would dismiss all federal antitrust claims for failure to adequately state a claim. Since the Minnesota claims were nearly identical to the federal law claims, the district court held that these claims were also pled inadequately. *Insulate*, 797 F.3d at 547. Because there were no cognizable claims, the district court did not need to determine whether class certification was 'logically antecedent' to standing; it was clear that no claims would survive to be certified. In the context of dismissing the case entirely, Judge Montgomery's decision not to defer the determination of the named plaintiff's standing to bring out-of-state claims until class certification is unsurprising, and was made in circumstances distinguishable from any other than complete dismissal.

On appeal, the Eighth Circuit avoided the standing issues entirely – electing to assume (without deciding) that Insulate *did* have standing to bring a Minnesota claim and dismissing because Insulate still failed to state a claim. *Id.* Furthermore, the district court's decision in *Insulate* appears to be an outlier in this district.

- 7 -

*Roth* follows the majority of holdings in this District and Circuit, which tend to defer on standing until class certification.[8] Indeed, there appears to be "a 'growing consensus' among lower courts . . . that class certification should indeed be decided first 'where its outcome will affect the Article III standing determination.'" *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1072 (N.D. Cal. 2015). Since the weight of the authority recognizes that Article III, at the pleading stage, only requires plausible allegations that the individual plaintiffs have standing to pursue their own claims,[9] and permits deferring their representation of others to the class certification stage, the Court should deny Defendants' request to dismiss.[10]

---

[8] *See Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-cv-1220 (JRT/FLN), 2017 WL 1157098, at *2 (D. Minn. Mar. 27, 2017) (electing to wait until class certification to decide whether a plaintiff can bring claims under the laws of states where no currently-named plaintiff resides); *Moore v. Compass Grp. USA, Inc.*, No. 4:18CV1962 RLW, 2019 WL 4723077, at *7 (E.D. Mo. Sept. 26, 2019) (same); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014) (same); *Thomas v. U.S. Bank N.A., N.D.*, No. 11-cv-6013-SJ-SOW, 2012 WL 12897284, at *9 (W.D. Mo. Sept. 27, 2012) (deferring the issue of standing until class certification).

[9] Plaintiffs' citation to other state's laws in their complaint does not mean they are necessarily invoking those states' laws in support of their individual claims. Rather they are indicating how they hope to prevail in certifying a class. *See Nat'l Ass'n for the Advancement of Colored People v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir.1992) (plaintiffs' use of counts to identify various legal theories merely assists the court "in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules"); *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 996 (N.D. Ill. 2013) (noting that defendants' attacking of the complaint "count by count" on motion to dismiss "tends to obscure the critical difference between 'claims,' which explain the plaintiff's grievance and demand relief, and 'counts,' which describe legal theories by which those facts purportedly give rise to liability and damages").

[10] If the Court later finds that Plaintiffs are not proper representatives of all class members, it may permit additional representatives to become plaintiffs at that time. *See Van Horn v. Trickey*, 840 F.2d 604, 608 (8th Cir. 1988) ("[L]iberal substitution of

But if the Court is inclined to address class representation now, the resolution of this issue should not result in dismissal with prejudice. CIPs may seek to add additional named plaintiffs to serve as class representatives in the states at issue.

**B.     Rule 23 of the Federal Rules of Civil Procedure permits Plaintiffs to bring classwide claims, regardless of state procedural prohibitions.**

Federal Rule of Civil Procedure Rule 23 provides the procedure by which Plaintiffs may join their individual claims to pursue the claims on a classwide basis. Rule 23 supersedes the state laws that prohibit the maintenance of class action lawsuits. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 397-406 (2010). Defendants contend that Plaintiffs' antitrust claims under Illinois law fail since Illinois requires that the state attorney general bring class actions. MTD State Law 10-12. Likewise, Defendants contend that the consumer-protection claims under Arkansas, South Carolina, and Utah law should be dismissed because the state statutes specify that no class actions may be brought. MTD State Law at 26-27. However, these bars are procedural, rather than substantive and are thus superseded by Rule 23.

In *Shady Grove*, the Supreme Court held that a New York statute prohibiting class actions could not serve to bar a class action under New York law in federal court because it conflicted with Federal Rule of Civil Procedure 23. *Id*. A plurality held that because

---

representatives [is] commonly allowed in class actions."); *Plubell v. Merck & Co. Inc.*, 434 F.3d 1070, 1073 (8th Cir. 2006) (holding that a defendant is "in no way prejudiced by the identical allegations" when a pleading is amended to include new class representative as a substitution); *Kremens v. Bartley*, 431 U.S. 119 (1977) (ordering the district court to exclude the representatives whose claims are moot and substitute them with class representatives who have live claims).

Rule 23 "neither change[s] plaintiffs' separate entitlements to relief nor abridge[s] defendants' rights; [but] alter[s] only how the claims are processed," it was proper to apply Rule 23 and permit the class action to proceed. *Id* at 408. Justice Stevens concurred in the judgment, but reasoned the proper analysis examined not whether Rule 23 is procedural, but whether New York's class action bar was procedural such that it should not be applied by federal courts, or whether it was "so bound up with," or "sufficiently intertwined with," a substantive state-law right or remedy "that it defines the scope of that substantive right or remedy" with effect in federal court.[11] *Id*. at 411.

To determine whether a class action bar is substantive, Defendants argue that the Court should only examine where the state legislature placed the prohibition within the statute. *See* MTD State Law at 27 ("Because [the state law prohibitions] are found in the same statutory framework as the clause giving rise to the claim, the bars are substantive elements of a state law cause of action."). Defendants attempt to distinguish *Broiler Chicken* – where the district court found that these same class action bars were not substantive – by noting that the district court did not adopt Defendants' formulaic approach. MTD State Law at 12.  Yet most courts "have determined that the legislature's

---

[11] Courts are divided on whether to apply the reasoning of the plurality or Justice Steven's concurrence. But under either analysis, Courts have determined that class action bars are procedural, rather than substantive. *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("[T]his point squares with the views set out not only in Justice Scalia's majority opinion in *Shady Grove* (the portion of his opinion joined by five justices and thus constituting the opinion of the Court) but also with the views set out in both Justice Scalia's plurality opinion and in Justice Stevens's concurrence. This makes it unnecessary to decide whether the further binding opinion is that of the plurality or Justice Stevens.").

placement of a class action prohibition within a specific state consumer protection act (as opposed to a free-standing rule of procedure) does not necessarily mean that the prohibition is a substantive one." *Smith-Brown v. Ulta Beauty, Inc*., No. 18 C 610, 2019 WL 932022, at *13 (N.D. Ill. Feb. 26, 2019) (citing McLaughlin on Class Actions § 2:47 (15th ed.)). Instead, courts generally examine whether applying Rule 23 will "abridge, enlarge, or modify a substantive right." *Lisk*, 792 F.3d at 1335.

Here, whether claims may be pursued on a classwide basis is a matter of procedure: the bars do not "alter the elements of their respective causes of action, the methods of proving those elements, or the relief available under them." *In re Lithium Ion Batteries Antitrust Litig.* ("*Batteries I*"), No. 13-MD-2420 YGR, 2014 WL 4955377, at *21 (N.D. Cal. Oct. 2, 2014). Because the bars do not alter an element of a claim, they do "not modify any substantive right" and are therefore procedural, rather than substantive. *Id*. This reasoning is consistent with how many other district courts have interpreted the bars under Illinois, Arkansas South Carolina and Utah law: "The class action mechanism is merely a way of joining numerous plaintiffs' claims together in order to adjudicate them more efficiently; a law permitting it or prohibiting it is procedural, not substantive, because it does not alter the nature of the claim or the right that gives rise to it." *Smith-Brown*, 2019 WL 932022, at *13.[12] For these reasons, the Court should permit the Illinois, Arkansas, South Carolina, and Utah claims to proceed under Rule 23.

---

[12] **Illinois**: *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 817 (N.D. Ill. 2017) ("*Shady Grove's* reasoning with respect to New York's class action ban is equally applicable to Illinois's requirement that class actions be brought by the Attorney General."); *Batteries I*, 2014 WL 4955377, at *21 (the IAA ban on class actions is

**C.      Plaintiffs allege that Defendants restrained the national market for pork and thus satisfy the "intrastate" statutory requirements.**

The Indirect Plaintiffs allege that Defendants engaged in a conspiracy to deflate

the amount of pork produced in the United States to below competitive levels. IPP ¶ 274.

As a result, the Indirect Plaintiffs paid artificially high prices for pork during the

conspiracy period. CIP ¶ 7; IPP ¶ 274. By engaging in the conspiracy, Defendants had

"direct, substantial, and reasonably foreseeable effects on, the foreign and interstate

commerce of the United States." CIP ¶ 12; IPP ¶ 198.

Under the law, a complaint alleging a nationwide antitrust or consumer protection

violation satisfies "intrastate" pleading requirements so long as the impact of the conduct

---

"procedural, not substantive, and that application of Rule 23 . . . would not modify any substantive right"); *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 728 (S.D.N.Y. 2017) ("[T]he Court is persuaded that this [Illinois] procedural rule does not control in federal court, where Rule 23 sets the only relevant requirements to file a class action."). **Arkansas**: *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 553 (N.D. Ill. 2019) (holding that the class action bars of Arkansas, Illinois, and South Carolina were procedural, not substantive). **South Carolina**: *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 652 (S.D. Cal. 2014) (holding that the class action bar in South Carolina were impermissible under Rule 23 and *Shady Grove*); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-md-2508, 2015 WL 5166014, at *32 (E.D. Tenn. June 24, 2015) (denying defendants' request to dismiss consumer protection claims under South Carolina law); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180-BLF, 2015 WL 4755335, at *21 (N.D. Cal. Aug. 11, 2015) (holding that a class action alleging violations of South Carolina's consumer protection law may be maintained under Rule 23); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2012 WL 1366718, at *8 (N.D. Cal. Apr. 19, 2012) (same). **Utah**: *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777, at *20 (D. Mass. Oct. 16, 2017) ("Utah consumer protection law provides that class members waive statutory damages; it does not bar class actions."); *Wilson v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-23033-Scola, 2018 WL 4623539, at *14 (S.D. Fla. Sept. 26, 2018) (upholding a class claim under Utah's consumer protection statute).

was felt within each state. *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 408 (S.D.N.Y. 2011) (collecting cases). Yet Defendants contend that Plaintiffs fail to adequately plead a connection between their claims of intrastate commerce for the following claims: (1) IPPs antitrust claim under Mississippi law; (2) IPPs and CIPs Florida, Massachusetts,[13] and New Hampshire claims; (3) CIPs New York and Wisconsin consumer protection claims.[14] MTD State Law at 13, 24-26. But as set forth below, Indirect Plaintiffs have sufficiently pled intrastate conduct for each of these states:

**Mississippi (IPP/CIP)**: Indirect Purchaser Plaintiffs allege that Defendants "pork is sold indirectly via distributors throughout the State of Mississippi," and their conduct "substantially affected Mississippi commerce. IPP ¶ 352; CIP ¶ 237. Defendants' conduct thus injured Mississippi consumers because they paid artificially high prices for the pork purchases they made in Mississippi. IPP ¶¶ 350-353. Similarly, CIPs allege that, as a result of Defendants' conduct, "pork prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi." CIP ¶ 237. Defendants' conduct injured Mississippi commercial indirect purchasers of pork because "defendants' illegal conduct substantially affected Mississippi commerce." CIP ¶ 237. Mississippi state courts

---

[13] Defendants correctly note that IPPs have reserved their rights to bring forth a claim under Mass. Gen. Laws Ch. 93A § 9. The statutory demand letter was served on the defendants, and IPPs will amend to add these claims at the appropriate time.

[14] Defendants' challenges do not always extend to all causes of action brought under the laws of a given state. For example, CIPs have brought both antitrust and consumer protection claims under New York law. *See* CIP ¶¶ 242, 263. Hence, the wholesale dismissal of all New York claims would not be warranted if Defendants were to prevail only on their argument regarding the New York consumer protection claims.

have held that this is sufficient to state a claim: once goods for sale have "reached the

State of Mississippi, their final destination, the [goods are] under the jurisdiction of

Mississippi's laws. Thus the Attorney General has stated a claim under the Mississippi

Antitrust Act[.]" *Hood ex rel. State v. BASF Corp.*, No. 56863, 2006 WL 308378, at *5

(Miss. Ch. Jan. 17, 2006). Defendants' reliance on *In re Keurig Green Mountain Single-*

*Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187 (S.D.N.Y. 2019), is inapposite because

*Keurig* misapplies the dicta from a 106 year old state Supreme Court case.

**Florida (IPP/CIP)**: Indirect Plaintiffs have alleged that Defendants "maintained

or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the

market for pork, for the purpose of excluding competition or controlling, fixing or

maintaining prices in Florida at a level higher than the competitive market level." IPP ¶

459, *see also* CIP ¶ 257. This harmed consumers in Florida, who would have paid less for

the price of pork but for the Defendants' conduct. IPP ¶ 457, *also* CIP ¶ 257. This is

sufficient to permit a claim under Florida law; the plain language of the FDUTPA does

not limit the reach of the statute to conduct that occurs wholly within Florida, and courts

have not required plaintiffs to plead that all of the unlawful conduct occurred in Florida.

Rather, allegations of "some injury in the state of Florida," are "sufficient to state a claim

under the FDUTPA." *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 538 (E.D. Pa.

2010); *see also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 162 (E.D. Pa. 2009)

("[T]he amended complaint alleges that certain of the named plaintiffs were injured in

part through reimbursements for purchases of overpriced drugs sold in the state of

Florida. This suffices to state a claim under the FDUTPA."). Defendants' reliance on

*Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321 (S.D. Fla. 2012), is inapposite because there were no allegations of harm to Florida consumers in that case – there, the plaintiff was seeking a remedy because the defendants canceled his music tour in Argentina. Indeed, it is well-established that FDUTPA is "for the protection of in-state consumers from either in-state or out-of-state" corporations. *Coastal Physician Servs. of Broward Cty., Inc. v. Ortiz*, 764 So. 2d 7, 8 (Fla. Dist. Ct. App. 1999).

**Massachusetts (CIP)**: The CIPs allege that "Defendants' pork was sold, distributed or obtained in Massachusetts" and that Defendants "restrained, suppressed, and eliminated [pork price competition] throughout Massachusetts." CIP ¶ 258. As a result of this conduct, the Massachusetts class paid "supracompetitive, artificially inflated prices for products containing pork" in Massachusetts. *Id*. Hence, "Defendants' illegal conduct substantially affected Massachusetts commerce and consumers." *Id*. These allegations are sufficient to bring forth a claim under Massachusetts law. *See In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 726 (D. Md. 2001) (holding that plaintiffs had stated a claim under Massachusetts' unfair trade practices law where plaintiffs alleged that they purchased the product and suffered the loss). Defendants' reliance on *Zyla* is inapposite. The plaintiff in *Zyla* was a resident of New Jersey who made no purchases in Massachusetts and there appeared to be no connection between Massachusetts and the alleged wrong. *Zyla v. Wadsworth, Div. of Thomson Corp.*, 360 F.3d 243, 255 (1st Cir. 2004).

**New Hampshire (IPP/CIP)**: The New Hampshire Supreme Court has stressed that New Hampshire's Consumer Protection Act is broad in sweep, and explained that a

- 15 -

pleading sufficiently states a claim under the CPA if the "allegations encompass conduct which was part of trade or commerce that had direct or indirect effects on the people of [New Hampshire]." *LaChance v. United States Smokeless Tobacco Co.*, 931 A.2d 571, 578 (N.H. 2007). Here, Indirect Plaintiffs allege just that: Defendants' conduct – artificially raising the price of pork – affected the people of the state. *See* CIP ¶ 261 ("Defendants sold the Pork at Issue in New Hampshire and deceived Plaintiffs and Class Members in New Hampshire into believing that the Pork at Issue were competitively priced"); IPP ¶ 527-529. Courts, following the guidance of *LaChance*, have upheld New Hampshire CPA claims in situations nearly identical to the present action. *See In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 234-35 (M.D. Pa. 2010); *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, No. 12-cv-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013).

**New York (CIP)**: In order to state a claim under New York Gen. Bus. Law § 349, CIPs "must allege 'first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1127 (N.D. Cal. 2008) (quoting *New York Jets LLC v. Cablevision Sys. Corp.*, No. 05 Civ. 2875 (HB), 2005 WL 2649330, *11 (S.D.N.Y. Oct. 17, 2005)). CIPs have alleged as much: Defendants restrained commerce in New York by "affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which pork were sold, distributed and obtained in New York." CIP ¶ 263. And Defendants misrepresented the real cause of price increases for pork or omitted material

information that rendered the statements that they made materially misleading. *Id*.  Due to this conduct, "New York class members who indirectly purchased pork were misled to believe that they were paying a fair price for pork or the price increases for pork were for valid business reasons." *Id*.  These allegations are sufficient; "[P]laintiffs need only allege—and ultimately show—that defendants' acts or practices have a broader impact on consumers at large." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1143 (N.D. Cal. 2008) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y.1995)).

**North Carolina (IPP/CIP)**: Under North Carolina's Unfair Trade Practices Act, N.C. Gen.Stat. § 75–1.1, "if an injury to person or property occurs within North Carolina and, at or about the time of the injury, the defendants were either working in North Carolina or had products in the North Carolina commerce through the ordinary course of business" then a claim may be stated. *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1174 (N.D. Cal. 2015) (citing *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F.Supp. 494, 501 (M.D.N.C.1987)). Plaintiffs have done this: Plaintiff allege that Defendants entered into a conspiracy to restrain and monopolize the North Carolina pork market and that members of the North Carolina class were injured as a result. CIP ¶ 264; IPP ¶¶ 394-397. Defendants misapply the "substantial effects" test: this test only applies if the plaintiff did not suffer an in-state injury. *See Lidoderm*, 103 F. Supp. 3d at 1174; *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d at 1033, 1083 (S.D. Cal. 2017).

- 17 -

**Wisconsin (CIP)**: CIPs allege that Wisconsin purchasers were misled into believing that they were purchasing pork at prices set by a free and fair market due to Defendants' affirmative misrepresentations about pork prices. CIP ¶ 270. Defendants' reliance on *Demitropoulos v. Bank One Milwaukee*, N.A., 915 F. Supp. 1399, 1414 (N.D. Ill. 1996) demonstrates the wide scope of this statute. In *Demitropoulos*, the district court held that the Wisconsin consumer protection statute applied even when a non-resident of Wisconsin alleged harm. *Id*. And the court found that deceptive statements disseminated through an intermediary were actionable. *Id*.

**D.    Because the conspiracy continued through 2018, Indirect Purchasers' Rhode Island antitrust claims should not be dismissed.**

Defendants assert that the repealer law of Rhode Island requires that Indirect Purchasers' claims preceding the date of the repealer's enactment – July 15, 2013 – must be dismissed. MTD State Law at 12. Defendants further assert that because the Indirect Purchasers' complaints allege no overt act after July 15, 2013, the entire Rhode Island claim must be dismissed. *Id*. But plaintiffs do allege post-July 15, 2013 conduct – including the Defendants' ongoing membership and subscription in the Agri Stats data sharing service. IPP ¶¶ 9, 60, 98, 125-127, 148, 277-284, 140-150. Each receipt and use of an Agri Stats report was an act in furtherance of the conspiracy. Regardless, even if the date of enactment limits damages, it does not preclude the claim in its entirety. *In re Auto. Parts Antitrust Litig.* ("*Auto Parts I*"), 50 F. Supp. 3d 869, 888 (E.D. Mich. 2014). Indirect Purchasers' post-July 15, 2013 damages claims clearly should be sustained. *See*

- 18 -

*Broiler Chicken*, 290 F. Supp. 3d at 811 (applying Rhode Island's antitrust statute to all post-2013 claims).[15]

### E.   Indirect Plaintiffs adequately plead their consumer protection claims.

The laws that Indirect Purchasers rely upon for their consumer protection claims generally prohibit unfair *or* deceptive business conduct. Here, Indirect Purchasers allege Defendants engaged in *unfair* conduct by agreeing to limit hog production and fix pork prices. Yet Defendants try to tangle case law that involves deceptive conduct (such as false advertising) with the unfair business conduct alleged here.

For instance, Defendants argue that all state consumer protection claims brought by Indirect Plaintiffs should be dismissed because the claims do not meet the heightened pleading requirements of Rule 9(b). MTD State Law 14-19. But by arguing this, Defendants misconstrue Indirect Plaintiffs' consumer protection claims as sounding in fraud, as if the Indirect Purchasers' allegations were equivalent to a false advertising claim. As demonstrated below, these claims need not be evaluated under Rule 9(b) because they involve unfair trade practices.

Next, Defendants argue that these Indirect Plaintiffs must allege that Defendants engaged in deceptive behavior or that Indirect Purchasers relied on a deception. MTD State Law 20-24. Relatedly, Defendants argue that their alleged conduct is not actionable

---

[15] Defendants' motion to dismiss does not clearly indicate that dismissal of CIPs' Rhode Island antitrust claim is sought in whole or in part. MTD State Law at 12. CIPs adopt the arguments above to the extent that Defendants are allowed to seek the dismissal of their Rhode Island antitrust claim retroactively.

under the consumer protection statutes because it is "antitrust-focused." MTD State Law

at 22. As explained below, these arguments are flawed.

### 1. Plaintiffs' consumer protection claims are based on price-fixing allegations and do not sound in fraud and satisfy Rule 8(a).

It is well established that Rule 9(b) applies only to claims that "sound in fraud."

*Olin v. Dakota Access*, *LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018). Simply put the

antitrust-based consumer protection claims alleged here do not sound in fraud. Rather,

Plaintiffs' claims are grounded in Defendants' illegal and anticompetitive conspiracy to

raise the price of pork. Plaintiffs allege that this conduct was unfair or unconscionable

under the state consumer protection statutes. All allegations of deceptive, misleading, or

otherwise fraudulent conduct are in addition to the core price-fixing and supply-

restriction allegations – which are unfair or unconscionable trade practices. When a

consumer protection claim alleges unfair or deceptive conduct, not fraud, the pleading

standards of Rule 8 govern. *See Windy City Metal Fabricators & Supply, Inc*. *v. CIT*

*Tech. Fin. Servs.*, *Inc*., 536 F.3d 663, 670 (7th Cir. 2008) (applying Rule 8 to claims

brought under Illinois' Consumer Fraud Act "[b]ecause neither fraud nor mistake is an

element of unfair conduct.").

Defendants' attempt to recast these price-fixing claims as sounding in fraud falls

short. The cherry-picked words Defendants emphasize (MTD State Law 15-16), are not

essential to Plaintiffs' price-fixing claims. Those allegations, which characterize

Defendants' conduct as deceptive or fraudulent, are *in addition to* Plaintiffs' price-fixing

claims. Plaintiffs' inclusion of these words alone does not convert the antitrust-based

- 20 -

consumer protection claims into ones "sounding in fraud" or otherwise trigger Rule 9(b). *See In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 846 (E.D. Pa. 2019).

Defendants' reliance on *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003 (8th Cir. 2015), supports applying Rule 8 to Plaintiffs' antitrust-based consumer protection claims. In *Streambend*, the plaintiffs alleged several counts of fraud in addition to claims that rested on a statute that had "been described [by other courts] as a general anti-fraud provision." *Streambend*, 781 F.3d at 1011-13 (internal quotation marks and citation omitted). The Eighth Circuit held that the fraud claims should be evaluated under Rule 9(b), but that Rule 8(a) should govern other claims, including the claim for a non-fraudulent misrepresentation. *Id*. at 1013-1014.  The same logic applies here to Indirect Plaintiffs' claims, which are based on allegations of Defendants' unfair or unconscionable conduct, and should therefore be evaluated under Rule 8(a).

To argue that Rule 9(b) should apply to almost every consumer protection claim, Defendants drop a string citation in a footnote – Defendants do not attempt to analyze or apply the law they cite to the facts of this case.[16] This is because even a cursory analysis would demonstrate that these cases are inapposite; nearly all involve allegations of

---

[16] Defendants concede that IPP's claim under Utah's Unfair Practices Act (IPP ¶¶ 596-603) and IPP's claim under Virginia's Consumer Protection Act (IPP ¶¶ 604-611) do not require evaluation under the heighted pleading standards of Rule 9(b). MTD State Law at 19.

deception, such as false advertising or fraudulent concealment.[17] For example,

Defendants rely upon *Wallis*, 208 S.W.3d at 153, to contend that Indirect Plaintiffs must

---

[17] *See* MTD State Law at 18, citing *Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005) (alleging that defendants fraudulently concealed a design defect); *In re iPhone 4S Consumer Litig.*, No. 12-cv-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) (alleging that Apple misrepresented the capabilities of its voice assistant software, Siri, in ads); *Jackson v. ASA Holdings, LLC*, 751 F. Supp. 2d 91, 94 (D.D.C. 2010) (alleging that a bank made misrepresentations about the loan modification process prior to foreclosure); *Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323 (S.D. Fla. 2014) (alleging that a car manufacturer misrepresented the safety rating of a vehicle it sold); *Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303 (Haw. 2010) (alleging that the hotel misrepresented its "service charge" fee by failing to inform customers that the hotel kept the proceeds); *Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 61 N.E.3d 1155 (Ill. App. Ct. 2016) (alleging that the price advertised online for a car was fraudulent); *Bellermann v. Fitchburg Gas & Elec. Light Co.*, 54 N.E.3d 1106 (Ma. 2016) (regarding a power company's misrepresentations); *K.A.C. v. Benson*, 527 N.W.2d 553 (Minn. 1995) (holding that a plaintiff lacked any injury); *White v. Medico Life Ins. Co.*, 327 N.W.2d 606, 611 (Neb. 1982) (holding that a pretrial agreement to compensate some claims does not violate the Nebraska Consumer Protection Act); *Bates v. Dollar Loan Ctr., LLC*, No. 2:13-CV-1731-KJD-CWH, 2014 WL 3516260, at *3 (D. Nev. July 15, 2014) (holding that defendants' unsolicited phone calls to the plaintiff could amount to a consumer protection violation under the Nevada Deceptive Trade Practices Act); *Hampshire Paper Corp. v. Highland Supply Corp.*, No.02-cv-32-JD, 2002 WL 31114120, at *4 (D.N.H. Sept. 23, 2002) (holding that a plaintiff could not bring an unfair competition claim because they did not allege harm); *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 618 (D.N.M. 2007) (alleging that the term "lowered in tar and nicotine" was deceptive because it misled consumers); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015) (alleging that defendants misrepresented their "flushable wipes" as "flushable"); *Bus. Cabling, Inc. v. Yokeley*, 643 S.E.2d 63, 68 (N.C. Ct. App. 2007) (holding that there was no violation because the trial court found no agreement or common scheme); *Ackre v. Chapman & Chapman, P.C.*, 788 N.W.2d 344 (N.D. 2010) (law firm did not engage in deceptive acts or practices when it settled personal injury claim); *Wright v. Craft*, 640 S.E.2d 486 (S.C. Ct. App. 2006) (dealer's omission that a truck had been wrecked and repaired was deceptive); *Sisney v. Best Inc.*, 2008 S.D. 70, 754 N.W.2d 804 (S.D. 2008) (prisoner stated a cognizable claim based on the misrepresentation that non-kosher bread was kosher); *PH W. Dover Prop., LLC v. Lalancette Eng'rs*, 120 A.3d 1135 (Vt. 2015) (regarding misrepresentations about real property); *Spacesaver Corp. v. Marvel Grp.*, Inc., 621 F. Supp. 2d 659, 663 (W.D. Wis.

show reliance and causation under Arkansas law. But that case involves allegations of fraud – not allegations of unfair trade practices. Indeed, the Arkansas Supreme Court has expressly held unconscionable acts can constitute violations of the ADTPA. *See Baptist Health v. Murphy*, 226 S.W.3d 800, 811 (Ark. 2006). The consumer protection statutes prohibit unlawful, unfair, and unconscionable conduct, ***in addition to*** misleading, deceptive, or fraudulent conduct. Rule 9(b)'s particularity requirements are inapplicable to Plaintiffs' claims. *See Generic*, 368 F. Supp. 3d at 846.[18]

> ### 2.   Regardless of the pleading standard, Plaintiffs have pled their consumer protection claims with more than adequate sufficiency.

Defendants argue that Indirect Purchasers' consumer protection claims are not adequately pleaded with particularity. MTD State Law at 17-19. Specifically, Defendants only contend that Indirect Purchasers failed to say how the statements and conduct by Defendants is false, misleading, deceptive, or fraudulent. *Id.* Indirect Purchasers allege a concerted and secret course of conduct whereby Defendants covertly used Agri Stats to share confidential information to increase their prices by strategically reducing supply. *See, e.g.*, IPP, ¶¶ 6-9, 20-30, 41-43, 124-132; CIP ¶¶ 38-85. To affect this scheme,

---

2009) (denying a claim for deceptive trade practices based on a claim that defendants infringed plaintiffs' trademark).

[18] *See also Processed Egg,* 851 F. Supp. 2d at 895–96; *Packaged Seafood*, 242 F. Supp. 3d at 1072-73 (declining to apply the heightened requirements of Rule 9(b) to consumer protection claims under California law and Illinois law); *also Auto Parts I*, 50 F. Supp. 3d at 891 (declining to apply the heightened requirements of Rule 9(b) to consumer protection claims under Florida law); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 183 n.36 (D. Me. 2004) ("I conclude that the alleged antitrust violation may violate the DCCPPA without being a deceptive practice, the criterion that triggers the Rule 9(b) pleading requirements.").

Defendants publicly gave false statements and reasons for their actions. IPP ¶ 99

("Throughout this period, defendants made statements regarding their intentions to either

stabilize or decrease supply (although gave false reasons for this stabilization"); CIP ¶

186. Though Defendants fault Indirect Purchasers for not saying how Defendants'

statements included in the complaint are false or deceptive, Indirect Purchasers did allege

that the statements are false by the very fact that the statements are untrue or part of a

concerted effort to coordinate supply restrictions and raise prices. Just because

Defendants say the statements are true (MTD State Law at 18), doesn't make them true;

especially at the motion to dismiss stage.

### 3. Price-fixing is an unfair or unconscionable practice under the consumer protection statutes and reliance and concealment are not required elements.

Defendants continue to rely on cases that allege deception – such as false

advertising cases – to argue that Indirect Plaintiffs must allege deception and reliance to

bring their consumer protection claims under the laws of Arkansas, California, D.C.,

Michigan, New York, North Dakota, Rhode Island, Virginia, and Wisconsin. MTD State

Law at 20-21. Although deceit and reliance may be required if the consumer protection

claims center on a deceptive act, it is not required where – as is the case here – the

consumer protection claims center on unfair business practices, or antitrust conduct.[19]

Relatedly, Defendants incorrectly argue that eight states do not permit antitrust-focused

---

[19] Further, to the extent deception is required under a particular state's law, Indirect Plaintiffs sufficiently plead Defendants' concealment of price fixing agreement, which injured class members through supracompetitive prices. *See, e.g.* CIP ¶¶ 185-195; IPP ¶¶ 156 167.

allegations to be brought under consumer protection law including: Arkansas, Illinois, Michigan, Minnesota, North Dakota, South Dakota, Rhode Island and Utah. MTD State Law at 22-24. Because these two arguments overlap, Indirect Plaintiffs address them both at once:

**Arkansas (CIP)**: Defendants incorrectly argue that deception and reliance are required and that antitrust-based conduct is not actionable under the Arkansas Deceptive Trade Practices Act ("ADTPA"). MTD State Law at 20, 22. The ADTPA prohibits "[e]ngaging in any [] unconscionable, false, or deceptive act or practice in business[.]" Ark. Code § 4-88-107(10). Many courts have held that prohibition on unconscionable conduct encompasses claims based on anticompetitive conduct. *See, e.g.*, *Packaged Seafood*, 242 F. Supp. 3d at 1072; *Batteries*, 2014 WL 4955377, at *22; *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 859 (E.D. Mich. 2014) ("*Auto Parts II*"). Defendants rely on *In re Graphics Processing Units Antitrust Litig.* ("*GPU*"), 527 F. Supp. 2d 1011 (N.D. Cal. 2007) – a case that is in the minority and inconsistent with the numerous authorities cited above. *GPU* is also inconsistent with the Arkansas Supreme Court's broad interpretation of the statute *in Baptist Health*, 226 S.W.3d at 811 (affirming definition of unconscionable conduct as inclusive of conduct that violates public policy or statute).[20]

---

[20] Defendants also attempt to argue that reliance and deceit are required under the ADTPA. State Law Mot. at 20, citing *Apex Oil Co., Inc. v. Jones Stephens Corp.*, 881 F.3d 658 (8th Cir. 2018). But *Apex* is inapplicable because it did not involve allegations of unconscionable conduct; rather, it involved simple allegations of a defective product. *Id.* at 660.

**California (IPP/CIP)**: Relying on false advertising case law, Defendants incorrectly argue that deception and reliance are required to bring a claim under California's Unfair Competition Law ("UCL"). MTD State Law at 20. Yet violation of "[v]irtually any law—federal, state or local—can serve as a predicate for an action under" the UCL. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (Cal. Ct. App. 2010). Here, Plaintiffs bring a claim under the UCL's "unlawful" prong, alleging that Defendants' "unlawful and unfair business practices of defendants . . . have caused and continue to cause plaintiffs and the members of the California Class to pay supra-competitive and artificially inflated prices for pork" IPP ¶ 440; *also* CIP ¶ 256 Accordingly, Defendants' violation of the antitrust laws states a UCL claim. S*ee Cal-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999) (antitrust violation creates claim under UCL). Claims based on illegal price-fixing regularly proceed under the UCL and do not "sound in fraud" or require allegations of deception or reliance. *Processed Egg*, 851 F. Supp. 2d at 894-96; *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612, at *28-29 (E.D. Mich. June 6, 2013) ("*Auto Parts III*").[21]

**District of Columbia (IPP)**: Defendants also incorrectly argue that deception and reliance are required to bring a claim under D.C. Code § 28-3901(b)(1). *See* MTD State

---

[21] Defendants' reliance on *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) is inapplicable because *Tobacco II* alleged deceptive advertising about the addictive nature of tobacco – not unfair business practices. Likewise, *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, (N.D. Cal. 2014) is inapplicable because the plaintiff abandoned her unfair business practice claim, and only brought an lawful business practice UCL claim based on the plaintiff's tortious interference with a contract; tortious interference requires causation. *Id.* at 1205.

Law at 20. Not so. The law prohibits "all improper trade practices." D.C. Code § 28-3901(b)(1). Because "[t]rade practices that violate other laws . . . also fall within the purview of the CPPA" (*Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 722-23 (D.C. 2003)), courts interpret the statute to encompass antitrust violations. *See, e.g.*, *Packaged Seafood*, 242 F. Supp. 3d at 1073 (federal antitrust violation stated a claim); *TFT-LCD*, 586 F. Supp. 2d at 1125-26 (same). IPPs' claim, based on Defendants' price-fixing, is not dependent upon allegations of fraudulent conduct and thus requires no allegations of deception or reliance. IPP ¶¶ 443-451; s*ee also Processed Eggs*, 851 F. Supp. 2d at 897-98; *TFT-LCD*, 586 F. Supp. 2d at 1126; *Auto Parts III*, 2013 WL 2456612, at *24-25; *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *9 (N.D. Ill. Nov. 5, 2009).[22]

    **Illinois (IPP)**: Defendants rely on *Butler v. Jimmy John's Franchise, LLC*, 331 F. Supp. 3d 786 (S.D. Ill. 2018) and *Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228, 230 (Ill. App. Ct. 1996) for the proposition that consumers cannot bring claims under the Illinois Consumer Fraud Act for alleged concerted, artificial price inflation by Defendants. *See* MTD State Law at 22. These cases hold that consumers cannot bring claims under the Illinois Consumer Fraud Act if their claims are not cognizable under the Illinois Antitrust Act. Yet they are "silent as to the situation here: whether consumers can elect to pursue a remedy under the Consumer Fraud Act where the Illinois Antitrust Act

---

[22] *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 172 (D.D.C. 2003) is inapplicable because it involved false advertising allegations not present here.

may also provide relief." *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1048 & n.12 (N.D. Ill. 2007) (allowing Illinois Consumer Fraud claim to proceed).

**Michigan (IPP)**: Defendants argue that antitrust conduct is not actionable under The Michigan Consumer Protection Act ("MCPA"), and that deception or reliance are required to bring a claim. *See* MTD State Law, 20, 22-23. Neither augment is persuasive. The MCPA prohibits "[u]nfair, unconscionable *or* deceptive methods, acts or practices[.]" Mich. Comp. Laws § 445.903 (emphasis added). Because the MCPA, like the FTC Act, prohibits "unfair" practices, courts have interpreted the MCPA to encompass antitrust violations. *See Generic*, 368 F. Supp. 3d at 845-46; Mich. Comp. Laws § 445.911(3)(c) (permitting a claim for anyone injured by any conduct "declared by a circuit court of appeals or the supreme court of the United States to be an unfair or deceptive act or practice within the meaning of section 5(a)(1) of the [FTC Act]").[23]

Here, Plaintiffs allege Defendants engaged in a monopoly to control and maintain pork prices (IPP ¶ 483) and that this caused injury to consumers (IPP ¶ 488) which is sufficient to state a claim and thus need not allege IPPs relied on deceptive statements in order to proceed under MCPA. *See In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503-DJC, 2015 WL 5458570, at *17 (D. Mass. Sept. 16, 2015).

---

[23] Neither *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 412-413 (E.D. Pa. 2010) nor *Packaged Seafood*, 242 F. Supp. 3d at 1076-77 discussed § 445.911(3)(c), which clearly provides a MCPA remedy for antitrust violations and Defendants' reliance on these cases is misplaced.

010736-11/1240736 V1

**Minnesota (IPP/CIP):** IPPs allege Defendants' price-fixing conduct constituted unfair or unconscionable conduct in violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq*. IPP ¶ 491. CIPs allege Defendants' price-fixing conduct violated Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325.D.43 *et seq*. CIP ¶ 259. Defendants incorrectly argue that antitrust claims are not actionable under these two statutes. *See* MTD State Law at 23. But these statutes are intended to be read broadly; the Minnesota Supreme Court has held that these statutes "reflect clear legislative policy encouraging aggressive prosecution of statutory violations' and therefore, 'are generally very broadly construed to enhance consumer protection." *Sheet Metal Workers*, 737 F. Supp. 2d at 414 (citing cases). "To sustain a claim for consumer fraud, a plaintiff must demonstrate that the defendant made a false promise or misrepresentation with the intent that others rely thereon *regardless of whether any person has, in fact, been misled, deceived, or damaged*." *Alsides v. Brown Inst., Ltd*., 592 N.W.2d 468, 474 (Minn. Ct. App. 1999) (emphasis added). Here, Defendants' concealment of the agreement satisfies *Alsides*' interpretation of Minnesota's law.

For these reasons, antitrust conduct violates the statutes. And Rule 8 applies to antitrust claims brought under the statutes. *See Sheet Metal Workers*, 737 F. Supp. 2d at 413-14 (applying Rule 8 in denying motion to dismiss antitrust-based claim under Minnesota's Consumer Fraud Act).

**New York (CIP)**: CIPs bring a claim under New York's Gen Bus. Law § 349 and allege that Defendants conduct was deceptive because they took active measures to conceal their price-fixing activities. CIP ¶ 242.  Defendants argue that an antitrust

violation may only violate Section 349 if it is deceptive. MTD State Law at 21. Courts

have allowed this claim to proceed when "the anticompetitive conduct is 'imbued with a

degree of subterfuge.'" *Auto Parts II*, 50 F. Supp. 3d at 859 (quoting *Leider v. Ralfe*, 387

F. Supp. 2d 283, 296 (S.D.N.Y.2005)) (rejecting a § 349 claim where the defendant's

conduct was not secretive)); *DRAM*, 536 F.Supp.2d at 1143-44.

**North Dakota (IPP/CIP)**: Defendants challenge IPPs' consumer protection claim

under N.D. Cent. Code § 51-10 by claiming that the statute does not contain an express or

implied private right of action. MTD at 23. But the statute provides that "Any person

damaged, or who is threatened with loss or injury . . . is entitled to sue for and have

injunctive relief in the district court against any damage or threatened loss or injury by

reason of a violation hereof." N.D. Cent. Code § 51-10-03.

Defendants challenge CIPs' consumer protection claim under North Dakota

Unlawful Sales or Advertising Practices Statute, N.D. Cent. Code § 51-15-01 *et seq.*, by

arguing that reliance and deception are required elements under the statute. MTD State

Law at 21. Defendants rely on *New Motor Vehicles*, 350 F. Supp. 2d at 198, which admits

that it reaches its holding by relying on dictum found in *State ex rel. Spaeth v. Eddy*

*Furniture Co.*, 386 N.W.2d 901, 905 (N.D. 1986). At least one court has certified a class

under N.D. Cent. Code § 51-15-02 in the context of allegations of artificially inflated

prices. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 108 (D.

Mass. 2008).

**Rhode Island (IPP)**: Defendants challenge IPPs' consumer protection claim

under Rhode Island law by arguing that the law does not permit antitrust claims (MTD

State Law 23) and that reliance on a deceptive statement is required (MTD State law 21). The law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices." R.I. Gen. Laws §§ 6-13.1-2, 6-13.1-3. Conduct is "unfair" under the statute if it, among other things, offends public policy or violates statutes, including the antitrust laws. *See Packaged Seafood*, 242 F. Supp. 3d at 1084 (citing *Ames v. Oceanside Welding & Towing Co., Inc.,* 767 A.2d 677, 681 (R.I. 2001)); *TFT-LCD I*, 586 F. Supp. 2d at 1129. Thus, antitrust claims are cognizable under the statute, and deception is not required.[24] Furthermore, to the extent deception would be required, Indirect Purchasers allege that Defendants acted in secret to stabilize supply to keep prices of pork high. Defendants' practices were thus likely to mislead reasonable consumers into believing that they were receiving a fair price for pork. IPP ¶¶ 570-573. "The deception need not be made with intent to deceive; it is enough that the representations or practices were likely to mislead consumers acting reasonably." *Long*, 93 A.3d at 1003 (internal quotation marks and citation omitted). These claims should proceed.

**South Dakota (CIP)**: Defendants argue that antitrust claims are not cognizable under South Dakota's Deceptive Trade Practices Act. MTD State Law at 23. The law prohibits the "use[] or employ [of] any deceptive act or practice . . . to conceal, suppress, or omit any material fact in connection with the sale . . . of any merchandise, regardless

---

[24] The cases cited by Defendants overlook *Ames* and rely on state law that pre-dates *Ames*. Likewise, *Long v. Dell, Inc.*, 93 A.3d 988, 992 (R.I. 2014) is inapplicable here – where at summary judgment, the court held that the defendants' overcharge was caused by an "honest misinterpretation of a delicate area of state tax law."

of whether any person has in fact been misled, deceived, or damaged." S.D. Codified Laws § 37-24-6(1). A claim is stated where, as here, Defendants' deceptive conduct concealing the price fixing agreement caused CIPs to pay supracompetitive prices. *See Generic*, 368 F. Supp. 3d at 845-46; *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 229 (S.D.N.Y. 2012).[25]

**Utah (IPP)**: Defendants argue that IPPs may not bring an antitrust-based consumer protection claim under Utah's Consumer Sales Practices Act ("UCSPA"). MTD State Law 23-24. The UCSPA simply requires a plaintiff to plead unconscionable conduct, which courts have construed to include anticompetitive conduct. *See Packaged Seafood*, 242 F. Supp. 3d at 1086-87 (upholding claim arising from anticompetitive conduct). Moreover, the UCSPA is to be construed liberally "to protect consumers from suppliers who commit deceptive and unconscionable sales practices." Utah Code Ann. § 13-1-2(2). Any "unconscionable act or practice by a supplier in connection with a consumer transaction violates th[e] act" (*id.* § 13-11-5), and "[i]f it is claimed or appears to the court that an act or practice may be unconscionable, the parties shall be given a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making its determination[.]" *Id.* § 13-11-5. In light of this, IIPs' claim under the UCSPA should be allowed to proceed at this stage.

---

[25] While the *New Motor Vehicles*, 350 F. Supp. 2d at 160, reached a different conclusion, CIPs respectfully submit that the more recent authority of *Generics* and *DDAVP* are more persuasive.

**Virginia (IPP)**: IPPs allege under Virginia's Consumer Protection Act that Defendants falsely represented the price of pork being based on a competitive market, when, in fact, the prices were the result of the lack of competition among the leading members in the pork market and information sharing through a highly secretive company, Agri Stats. IPP ¶¶ 6, 12, 19, 36, 38-40, 42-50, 124, 130-138, 158-163, 606-607. This is sufficient to state a claim. *See, e.g.*, *Nigh v. Koons Buick Pontiac GMC, Inc*., 143 F. Supp. 2d 535, 553 (E.D. Va. 2001) ("The misrepresentations providing the basis of a VCPA claim need not be pled with the same kind of particularity as common law fraud claims.").

**Wisconsin (CIP)**: CIPs bring a claim under the Wisconsin Consumer Protection Statutes, Wisc. Stat. § 100.18, *et seq*. Wisconsin's law prohibits "untrue, deceptive or misleading" statements and is interpreted broadly. S*ee, e.g., Winkelman v. Kraft Foods, Inc.*, 693 N.W.2d 756, 762-63 (Wis. Ct. App. 2005); *Tim Torres Enters., Inc. v. Linscott*, 416 N.W.2d 670, 676 (Wis. Ct. App. 1987). Plaintiffs allege that Defendants affirmatively misrepresented that their prices were competitive and fair. CIP ¶ 186. These allegations state a violation of the WDTPA. *See Wisconsin v. Abbott Labs*., 829 N.W.2d 753, 761-62 (Wis. Ct. App. 2013) (drug manufacturers violated WDTPA by reporting artificially inflated drug prices, which caused Medicaid to overpay for drugs).

**F.    Plaintiffs adequately allege claims for unjust enrichment.**

**1.    Plaintiffs more than adequately satisfy the requirements for pleading unjust enrichment.**

Plaintiffs' factual allegations plausibly support their theory of recovery under principles of unjust enrichment in all the jurisdictions enumerated in the complaints. That is all Rule 8 requires. Defendants' arguments that the Indirect Plaintiffs have "failed" to plead unjust enrichment – because (1) they did not re-recite all the factual predicates in the "Unjust Enrichment" count of the IPP Complaint and (2) they did not list the elements of unjust enrichment in each state – do not provide a basis to dismiss the actions. They instead elevate irrelevant form over the notice pleading requirements in the Rules.

Under Rule 8, Indirect Plaintiffs need not list the elements of a given claim; they need only "include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). Moreover, unjust enrichment claims are "universally recognized causes of action that are materially the same throughout the United States." *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1988); *see also In re Mercedes-Benz Tele Aid Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009*); In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 679 n.40 (S.D. Fla. 2004).[26] Indeed, "when stripped to its essence, a claim of unjust enrichment requires

---

[26] Contrary to Defendants' unsupported statement that the law of unjust enrichment varies widely, courts have held the opposite. *See Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011) ("Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state."); *Mercedes-Benz*, 257 F.R.D. at 58 ("While there are minor variations in the elements of unjust enrichment

IPPs to allege sufficient facts to show that Defendants received a benefit and under the

circumstances of the case, retention of the benefit would be unjust." *In re Auto. Parts*

*Antitrust Litig.*, 29 F. Supp. 3d 982, 1014-15 (E.D. Mich. 2014) ("*Auto Parts IV*").

Indirect Plaintiffs adequately allege facts that support these two core elements:

Defendants received a benefit from Indirect Plaintiffs in the form of ill-gotten profits

from the sale of pork and it would be inequitable to allow Defendants to retain these

gains. This satisfies Rule 8. *Id.*

> **2.     California, Illinois, Mississippi, and New Hampshire law recognize claims for unjust enrichment.**

Defendants contend that unjust enrichment is not a standalone cause of action in

these four states. MTD State Law at 29-30. This is incorrect as to California, Illinois, and

Mississippi. *Processed Eggs*, 851 F. Supp. 2d at 913-14 ("California courts, including the

Supreme Court of California, have acknowledged that parties may pursue causes of

action arising from an unjust enrichment claim under California law.");[27] *id.* at 913

(finding "considerable authority that supports the existence of an independent state law

---

under the laws of the various states, those differences are not material and do not create
an actual conflict."; *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Penn.
2007), *rev'd on other grounds*, 328 Fed. Appx. 121 (3d Cir. 2009) ("At the core of each
state's [unjust enrichment] law are two fundamental elements – the defendant received a
benefit from the plaintiff and it would be inequitable for the defendant to retain that
benefit without compensating the plaintiff. The focus of the inquiry is the same in each
state.").

[27] *See also Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1015 n.15 (D. Minn.
2012) ("To the extent that some California courts appear to reject claims for unjust
enrichment, these decisions improperly focus on semantic disputes over the facial
characterization of the cause of action."); *Packaged Seafood*, 242 F. Supp. 3d at 1093
(unjust enrichment is recognized by California as remedy for quasi-contract claim).

claim for unjust enrichment" in Mississippi) (collecting cases); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (unjust enrichment is "recognize[d] . . . as an independent cause of action" in Illinois). As to New Hampshire, courts "have allowed indirect purchasers to bring . . . unjust-enrichment claims" as an equitable remedy based on the same violations of New Hampshire consumer laws alleged here. *See In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 767 (E.D. Pa. 2014) (upholding end payors' New Hampshire unjust enrichment claim); *Chocolate*, 749 F. Supp. 2d at 240 (rejecting dismissal of indirect purchasers' unjust enrichment claim under New Hampshire law, where "unjust enrichment is an equitable remedy") (citations omitted).[28]

### 3.    To the extent state law requires it, Indirect Plaintiffs satisfy any direct benefit requirement.

Defendants' entire argument that Plaintiffs have not alleged that they provided a "direct benefit" arises solely from an inapt play on the words "indirect purchasers." MTD State Law at 32. By making this argument, Defendants add a new requirement for unjust enrichment – direct contact. Just because Plaintiffs did not purchase their pork from Defendants "directly," as that term is understood in *antitrust* law, does not mean they failed to confer a direct benefit on Defendants as contemplated by *unjust enrichment* law. In *Processed Egg*, defendants argued that the unjust enrichment law of several of the states at issue here requires a direct payment to the defendant from the plaintiff. 851 F.

---

[28] Defendants' citation to *Gen. Insulation Co. v. Eckman Const.*, 992 A.2d 613, 620 (N.H. 2010), proves Indirect Plaintiffs' argument. There, the court clearly held, "[r]estitution and quantum meruit recovery based upon 'unjust enrichment are allowed by the courts as alternative remedies."

Supp. 2d at 927-28. The court acknowledged some of these jurisdictions' use of the phrase "direct benefit," but the court determined that those states' precedents still found a direct benefit in the absence of a direct relationship or direct payment, where the benefit conferred was not merely "incidental." *Id.* at 928-36.[29]

Thus, each of the ten states identified by Defendants has recognized unjust enrichment in cases such as this, where a benefit flows from a plaintiff to a defendant, even where there was no direct payment or direct relationship:

> **Arizona:** *See Brown v. Pinnacle Restoration LLC*, No. 1 CA-CV 12-0550, 2013 WL 3148654, at *2-*3 (Ariz. Ct. App. June 18, 2013) (supporting Plaintiffs' view despite Defendants' citation to it), *see also Auto Parts II*, 50 F. Supp. 3d at 864-65 (under Arizona law the "critical inquiry [i]s not whether the benefit is conferred directly on the defendant, but whether the plaintiff can establish the relationship between his detriment and the defendant's benefit 'flow from the challenged conduct'") (alteration in original; internal citation omitted).

> **Florida:** Because "[i]t would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary," the benefit need not pass directly from plaintiff to defendant. *Williams v. Wells Fargo Bank N.A.,* No. 11-civ-21233, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011); *see also Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222 (Fla. Dist. Ct. App. 2005).

> **Kansas:** "Kansas law does not mandate the conferral of a direct benefit under an unjust enrichment." *Processed Eggs*, 851 F. Supp. 2d at 929–30; *see also Peterson v. Midland Nat'l Bank*, 747 P.2d 159, 166-67 (Kan. 1987).

---

[29] *See also Auto Parts IV*, 29 F. Supp. 3d at 1015-16 (antitrust defendants could be considered unjustly enriched by indirect purchaser plaintiffs, despite phrase "direct benefit" in certain states); *In re TFT-LCD (Flat Panel) Antitrust Litig.*("*TFT-LCD II*"), 599 F. Supp. 2d 1179, 1189-90, 1192-93 (N.D. Cal. 2009) (same).

**Maine:** *See Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994) (lack of privity does not bar unjust enrichment claim); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M-07-1827 SI, 2011 WL 4501223, at *10-11 (N.D. Cal. Sept. 28, 2011) (upholding indirect purchaser Maine unjust enrichment claim).

**Massachusetts:** *Chocolate*, 749 F. Supp. 2d at 237 (upholding indirect purchaser's unjust enrichment claim under Massachusetts law); *see also Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 323 (D. Mass. 2005).

**Michigan***: TFT-LCD II*, 599 F. Supp. 2d at 1189-90 (Michigan does not require direct contact between the parties in order to state a claim for unjust enrichment); *see also Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*, 504 N.W.2d 635, 640-41 (Mich. 1993), and *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904-905 (Mich. Ct. App. 2006).

**North Carolina:** "[A]n indirect benefit can support an unjust enrichment claim." *Lau v. Constable*, No. 16-cvs-4393, 2017 WL 536361, at *5 (N.C. Super. Ct. Feb. 7, 2017); *see also Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916 (N.C. 1992).

**North Dakota:** Direct benefit is not a necessary element of an unjust enrichment claim. *See Opp v. Matzk*e, 559 N.W.2d 837, 839-40 (N.D. 1997). *See also Home Ins. of Dickinson v. Speldrich*, 436 N.W.2d 1, 3 (N.D. 1989) (parties can be unjustly enriched without direct involvement in a transaction); *Auto Parts III*, No. 12-md-02311, 2014 WL 2993753, at *35 (E.D. Mich. July 3, 2014).

**Utah:** "Utah law does not mandate that a plaintiff demonstrate that she directly conferred a benefit upon a defendant." *Processed Eggs*, 851 F. Supp. 2d at 934; *see also Emergency Physicians Integrated Care v. Salt Lake Cty.*, 167 P.3d 1080, 1085 (Utah 2007).

**West Virginia:** *Midwestern Midget Football Club Inc. v. Riddell, Inc.*, No. CV 2:15-00244, 2016 WL 3406129, at *8 (S.D.W.Va. June 17, 2016).

For these reasons, Plaintiffs have adequately alleged facts supporting a "direct benefit" here.

4.      **The existence of a defined relationship is not required.**

There is no requirement in South Carolina or Illinois that a defendant owes a "special duty" to an unjust-enrichment plaintiff. To recover on a South Carolina unjust enrichment claim, a plaintiff need only show: (1) a benefit conferred upon the defendant by plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for it to retain the benefit. *Ellis v. Smith Grading & Paving, Inc.*, 366 S.E.2d 12, 15 (S.C. Ct. App. 1988).

Defendants rely on *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464-65 (D. Md. 2005), for their special-duty argument under South Carolina law, but *Microsoft* misinterpreted the South Carolina Supreme Court's decision in *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868 (S.C. 2000), and *Microsoft* has been subsequently criticized on that basis.[30] And the reason the unjust enrichment claim failed in *Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502 (S.C. Ct. App. 2002) was because the unjustness of the defendant's conduct was expressly premised on the purported duty of an insurer to inform an applicant of the availability of a superior product, which duty "does not exist in South Carolina." *Id.* at 511-512. To the contrary, generally "[t]here is no requirement to allege a duty" under South Carolina unjust enrichment law. *Auto Parts IV*, 29 F. Supp. 3d at 1026. But certainly Defendants here had a duty not to cause antitrust injury, which is painstakingly alleged in the complaints.

---

[30] *See Cast Iron*, 2015 WL 5166014, at *37; *Auto Parts IV*, 29 F. Supp. 3d at 1026.

Similarly, under Illinois law "there is no duty or privity requirement when bringing a claim for unjust enrichment." *Sobel v. Franks*, 633 N.E.2d 820, 829 (Ill. App. Ct. 1994). Defendants rely on *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920 (Ill. App. Ct. 2009), to support their argument. But *Martis* relied on a series of cases involving a narrow category of harm-to-the-public claims. And *Martis's* mistaken expansion of this narrow principle has since been sharply criticized. As the Illinois Appellate Court recently explained, "*Martis* is not an accurate statement of the law on the equitable claim for unjust enrichment." *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1042-43 (Ill. App. Ct. 2015). Defendants finally rely on *Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv.*, 67 N.E.3d 556, 570 (Ill. App. Ct. 2016). The court there held that the unjust enrichment claim failed because it was not unjust for the bus company to refuse to contribute to a settlement because an insurance policy excused its duty to do so. But just as in *Pitts,* that does not graft a general "duty" element onto an unjust enrichment claim, it simply shows why the conduct was not unjust in that case, under related state law. Again, Defendants indisputably have a "duty" not to conspire to reduce supply, which Plaintiffs plausibly allege they did.

### 5.     Plaintiffs may allege both unjust enrichment and claims at law.

Defendants' contention that eleven states prohibit Plaintiffs from alleging unjust enrichment if Plaintiffs also have an "adequate remedy at law" argument fails under the Federal Rules of Civil Procedure for two reasons. MTD State Law at 33-35. First, Rule 8 allows Plaintiffs to plead unjust enrichment in the alternative despite any adequate remedies at law. Fed. R. Civ. P. 8; *United States v. Bame*, 721 F.3d 1025, 1031 (8th Cir.

2013) ("courts are unwilling to dismiss an unjust enrichment claim at the pleading stage despite the existence of an adequate legal remedy, because the federal rules allow for the pleading of claims in the alternative").[31]

Second, Rule 18 allows Plaintiffs to bring both equitable and legal claims in the same suit, regardless of whether one needs to be decided before the other (i.e., Plaintiffs were not required to exhaust their legal claims in an earlier proceeding). Fed. R. Civ. P. 18; *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472 (1962); *Brownlee v. Yellow Freight Sys., Inc.*, 921 F.2d 745, 749 (8th Cir. 1990) ("Where legal and equitable claims are joined in the same complaint, and where there are common issues of fact, the normal practice is to try both claims to a jury."). Defendants' argument ignores these rules.

### III.    CONCLUSION

For the reasons advanced above, Defendants' Joint Motion to Dismiss the State Law Claims in the Commercial and Individual Indirect Purchaser Plaintiffs' Amended Complaints should be denied.

---

[31] *See also Generic*, 368 F. Supp. 3d at 851 (rejecting argument to dismiss Arizona, Minnesota, Montana, New Hampshire, New York South Dakota, Tennessee and Utah unjust enrichment claims for failure to plead that they "lack an adequate legal remedy"); *United States v. R.J. Zavoral & Sons, Inc.*, 894 F.Supp.2d 1118, 1127 (D. Minn. 2012); *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F.Supp.2d 875, 880 (D. Minn. 2009).

DATED: February 21, 2020

HAGENS BERMAN SOBOL SHAPIRO LLP

By:＿＿＿/s/ Steve W. Berman＿＿＿＿＿＿＿
　　　STEVE W. BERMAN

Breanna Van Engelen
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

GUSTAFSON GLUEK PLLC

By:＿＿＿/s/ Daniel C. Hedlund＿＿＿＿＿
　　　DANIEL C. HEDLUND (#258337)

Daniel E. Gustafson (#202241)
Michelle J. Looby (#388166)
Brittany N. Resch (#0397656)
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
bresch@gustafsongluek.com

*Co-Lead Counsel for Consumer Indirect
Purchaser Plaintiffs*

LARSON • KING, LLP

By:＿＿＿/s/ Shawn M. Raiter＿＿＿＿＿＿＿
　　　SHAWN M. RAITER (MN# 240424)

2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6518
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Blaine Finley
Yifei "Evelyn" Li
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cunelolaw.com

*Co-Lead Counsel for Commercial and
Institutional Indirect Purchaser Plaintiffs*