# EXHIBIT 6

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

------------------------------------

Chocolate Pop Corn Company,

        Plaintiff,

   v.

Vogel Popcorn Company, Golden
Valley Microwave Foods, Inc.,
Wyandot Corporation,
Weaver Popcorn Company, Ellis
Popcorn Company, Gettelfinger
Popcorn Company, Inc., Curtice
Burns Foods, Inc., and The
Popcorn Institute,

        Defendants.

------------------------------------

File No.: *Cv 3-89-515*

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

*Copy* 8-16-89
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INITIALS

The Plaintiff, for its claims against the Defendants, states and alleges as follows:

## I.   JURISDICTION AND VENUE

1.    This is an action brought pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) by the Plaintiff to recover damages, including treble damages and costs of suit and a reasonable attorney's fee, for the Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2.    This Court has jurisdiction over the subject matter of this action pursuant to Section 4(a) of the Clayton Act and 28 U.S.C. §§ 1331 and 1337(a).

3.    Each of the Defendants is a corporation or other entity which is licensed to do business or is transacting business in this District.  A significant part of the cause of action arose in this District or affected persons in this District.  Venue in this District is proper pursuant to Section 4(a) and 12 of the Clayton

Act, 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. §§ 1391(b) and (c) and § 1407.

## II.  DEFINITIONS

4.   "Bulk popcorn" means popcorn processed and sold or supplied in large volumes or weights, generally to customers for repackaging and/or resale.

5.   "Person" includes any individual or natural person, partnership, corporation, association or other business or legal entity.

6.   "Relevant period" means January 1, 1979 through at least December 31, 1988.

## III.  PARTIES AND UNNAMED CO-CONSPIRATORS

7.   Plaintiff, Chocolate Pop Corn Company (hereinafter referred to as "Chocolate"), is a corporation organized under the laws of the Commonwealth of Pennsylvania.  During the relevant period, Chocolate directly purchased bulk popcorn from one or more of the defendants.

8.   Defendant Vogel Popcorn Company ("Vogel") is a corporation organized under the laws of the State of Minnesota, with its principal place of business in Hamburg, Iowa.  On or about October 14, 1987, all outstanding shares of Vogel were acquired by the Defendant Golden Valley Microwave Foods, Inc., which since that time has operated Vogel as a wholly-owned subsidiary.  Defendant Vogel is named as a conspirator herein.  At all material times, Vogel processed and sold bulk popcorn in the State of Minnesota and other states.

3

9.   Defendant Golden Valley Microwave Foods, Inc. ("GVMF") is a corporation organized under the laws of the State of Minnesota, with its principal place of business in Edina, Minnesota.  GVMF is the successor-in-interest to the Defendant Vogel.  GVMF is named as a conspirator herein.  At all material times, GVMF or its predecessor in interest processed and sold bulk popcorn in the State of Minnesota and other states.

10.   Defendant Wyandot Corporation ("Wyandot") is a corporation organized under the laws of the State of Ohio, with its principal place of business in Marion, Ohio.  Wyandot is named as a conspirator herein.  At all material times, Wyandot processed and sold bulk popcorn in the State of Minnesota and other states.

11.   Defendant Weaver Popcorn Company ("Weaver") is a corporation organized under the laws of the State of Indiana, with its principal place of business in Van Buren, Indiana.  Weaver is named as a conspirator herein.  At all material times, Weaver processed and sold bulk popcorn in the State of Minnesota and other states.

12.   Defendant Ellis Popcorn Company ("Ellis") is a corporation organized under the laws of the State of Kentucky, with its principal place of business in Murray, Kentucky.  Ellis is named as a conspirator herein.  At all material times, Ellis processed and sold bulk popcorn in the State of Minnesota and other states.

13.   Defendant Gettelfinger Popcorn Company, Inc. ("Gettelfinger") is a corporation organized under the laws of the State of Indiana, with its principal place of business in Palmyra,

3

Indiana.  Gettelfinger is named as a conspirator herein.  At all material times, Gettelfinger processed and sold bulk popcorn in the State of Minnesota and other states.

14.  Defendant Curtice Burns Foods, Inc. ("Curtice Burns") is a corporation organized under the laws of the State of New York, with its principal place of business in Rochester, New York. Curtice Burns is named as a conspirator herein.  At all material times, Curtice Burns, through one or more of its operating divisions, processed and sold bulk popcorn in the State of Minnesota and other states.

15.  Defendant Popcorn Institute is a non-profit corporation organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.  Popcorn Institute is named as a conspirator herein.  At all material times, Popcorn Institute was engaged in the business of providing trade association services to processors and sellers of bulk popcorn.

16.  Various other individuals, partnerships and corporations, not named as defendants in this Complaint, have participated as co-conspirators in the violations alleged herein, and have performed acts and made statements in furtherance thereof.

## IV.  CLASS ACTION ALLEGATIONS

17.  This action is brought as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of a class of all persons or entities (including but not limited to individuals, proprietorships, partnerships, corporation, other business entities and governmental entities located in the United States, but excluding Defendants, their parents, subsidiaries and affiliates)

4

who at any time during the period January 1, 1979 through at least
December 31, 1988, purchased bulk popcorn from the Defendants or
their co-conspirators.

18. Plaintiff does not yet know the exact size of the class,
since such information is in the exclusive control of the
Defendants.   However, based upon the nature of the trade and
commerce involved, Plaintiff believes that the total number of
class members is in the hundreds, and that class members are
geographically dispersed throughout the United States. Therefore,
joinder of all members of the class is not practicable.

19. There are questions of law and fact common to the class,
including but not limited to:

a. Whether the Defendants conspired among themselves
and with others to fix, raise, maintain or stabilize prices of bulk
popcorn;

b. Whether the Defendants conspired among themselves
and with others to allocate among themselves customers for bulk
popcorn and to eliminate competition for such customers between and
among those Defendants;

c. Whether the Defendants conspired among themselves
and with others to establish geographical lines of demarcation upon
which to base such allocation of customers;

d. Whether the Defendants conspired among themselves
and with others to submit collusive, noncompetitive and rigged bids
or price quotations to customers for bulk popcorn;

e. Whether the conspiracies were implemented;

5

f.   Whether the Defendants' conduct violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

g.   Whether the Defendants' conduct affected interstate commerce;

h.   Whether the Defendants took steps to actively conceal the conspiracies;

i.   Whether the Defendants' conduct caused injury to the business or property of the Plaintiff and the members of the class, and if so, the appropriate class-wide measure of damages; and

j.   Whether the conspiracies operated for a determinable period of time and if so, the operative time period of the conspiracies.

These and other questions of law and fact are common to the class and predominate over any questions affecting only individual members of the class, the only individual question being the dollar amount of damages to which each class member is entitled.

20. Plaintiff's claims are typical of the claims of all members of the class in that the Plaintiff was a purchaser of bulk popcorn no different from any other class member, and the relief sought, monetary damages, is common to the class.

21. Plaintiff will fairly and adequately protect the interests of the class in that the Plaintiff is a typical purchaser of bulk popcorn, and has no conflict with any other members of the class. Plaintiff has retained competent counsel experienced in class action litigation and antitrust litigation.

22. Plaintiff knows of no difficulty which would be encountered in the management of this litigation that would

6

preclude its maintenance as a class action.   A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.

23.   In the absence of a class action, Defendants will retain the benefits of their wrongful conduct.

## V.   TRADE & COMMERCE

24.   During the relevant period, the Defendant processors and sellers processed and sold bulk popcorn to customers located outside the state of their processing or supply, including to the Plaintiff and to the members of the class.   At all material times, bulk popcorn processed and sold by these Defendants was shipped across state lines to customers outside the state of their processing or supply.

25.   During the relevant period, in connection with the purchase and sale of bulk popcorn, monies as well as contracts, bills, and other forms of business communications and transactions were transmitted in a continuous and uninterrupted flow across state lines.

26.   During the relevant period, various devices were used to effectuate the conspiracy alleged herein, including the United States mail, interstate travel, and interstate telephone lines.

27.   The activities of all Defendants as charged in this Complaint were within the flow of and substantially affected interstate commerce.

## VI.  OFFENSES COMMITTED

28.  Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or organization, the allegation means that the corporation or organization engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

29.  Beginning at least as early as January 1, 1979 and continuing at least through December 31, 1988, the exact dates being unknown to the Plaintiff, all of the above-named Defendants, together with other persons and entities known and unknown, engaged in a contract, combination and conspiracy, as is alleged specifically in this Complaint.  This contract, combination and conspiracy unreasonably restrained interstate trade and commerce, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

30.  The contract, combination and conspiracy alleged herein consisted of a continuing agreement, understanding and concert of action among the Defendants identified above, the substantial terms of which included but were not limited to:

a.  To raise, fix, stabilize and maintain prices for bulk popcorn;

b.  To allocate among the Defendant processors and sellers customers for bulk popcorn, and to eliminate competition for such customers between and among those Defendants;

8

c.   To establish geographical lines of demarcation, among other methods and devices, upon which to base those Defendants' allocation of customers;

d.   To submit collusive, noncompetitive, and rigged bids or price quotations from time to time to customers for bulk popcorn; and

e.   To facilitate, effectuate and implement the contract, combination and conspiracy by, among other means, using the facilities and auspices of the Defendant Popcorn Institute.

31.   For the purpose of forming and carrying out the contract, combination and conspiracy alleged herein, the Defendants did those things that they conspired to do, including but not limited to the following:

a.   raised, fixed, stabilized and maintained prices for bulk popcorn;

b.   refused to quote prices or sell bulk popcorn to customers at prices lower than the prices agreed upon by and among the Defendants;

c.   allocated among the Defendant processors and sellers customers for bulk popcorn and thereby eliminated competition for such customers between and among those Defendants;

d.   established geographical lines of demarcation, among other methods and devices, upon which to base those Defendants' allocation of customers;

e.   submitted collusive, noncompetitive and rigged bids or price quotations from time to time to customers; and

9

f.   discussed among themselves the prices charged to customers for bulk popcorn, at times with the assistance and under the auspices of the Defendant Popcorn Institute.

32.   For example, in 1988 Mr. George Brown, who was president of the Defendant Wyandot, and, upon information and belief, others also employed by the Defendant Wyandot assisted and coordinated the implementation of the price-fixing scheme among all of the Defendant processors and sellers through the use of telephone conversations with all other Defendant processors and sellers. During these telephone conversations, the price at which bulk popcorn was to be sold was communicated to and agreed upon by the Defendant processors and sellers.

33.   For another example, during the summer of 1988, the president of the Defendant Vogel, Mr. Arthur Vogel, stated on several occasions that he had "given his word" to the other Defendant processors and sellers that the Defendant Vogel would raise its prices for bulk popcorn pursuant to and in furtherance of the agreement reached by all Defendant processors and sellers.

34.   For another example, at a meeting of the Defendant Popcorn Institute sometime in approximately June 1988, Mr. George Brown, president of the Defendant Wyandot, and Mr. Herb Gettelfinger, president of the Defendant Gettelfinger, informed the other Defendants of the agreed-upon price for bulk popcorn during the remainder of 1988, and urged all Defendants to raise their prices to the agreed-upon level.   Upon information and belief, the Defendant processors and sellers accordingly raised their prices for bulk popcorn to the level agreed upon by all

10

Defendants.  In the alternative, one or more, but not all, of the Defendant processors and sellers raised their prices for bulk popcorn to a level sufficient to enable them to profit and otherwise benefit from the ongoing contract, combination, and conspiracy, which they would not have been able to do in the absence of such contract, combination, and conspiracy among all Defendants.

35.  On several occasions, Mr. Arthur Vogel, the president of the Defendant Vogel, acknowledged that for many years there has been an agreement and understanding among all Defendant processors and sellers that the prices to be charged by each Defendant processor and seller would be within $0.25 to $0.50 per hundred weight of the prices charged by the other Defendant processors and sellers for bulk popcorn.  Upon information and belief, this agreement and understanding had been in effect among the Defendants at least since January 1, 1979 and continued at least through December 31, 1988. According to the Defendant Vogel, the Defendant processors and sellers maintained and adhered to this agreement and understanding so that all the Defendant processors and sellers would profit, and so that no one Defendant processor and seller would gain an advantage over the other processors and sellers by charging customers a lower price for bulk popcorn than the other Defendants were charging.

36.  On occasion, the Defendant processors and sellers agreed among themselves that certain of those Defendants would not compete for the business of a particular customer, in order that one designated Defendant would obtain  the business of such customer.

11

In the alternative, on occasion certain of those Defendants agreed to submit rigged, artificially high, and non-competitive price quotations to such customer, to ensure that the price quotation of another designated Defendant would be the lowest price quotation received by such customer.

37. At least since January 1, 1979, the Defendant processors and sellers agreed among themselves from time to time that they would establish and honor geographical lines and areas of demarcation, to "protect" each other's customers from competition from the other Defendants. In return for being granted such a "protected" geographical base of customers, the particular Defendant agreed with these other Defendants not to compete for the business of customers located within another Defendant's "protected" geographical area. For example, from time to time certain Defendant processors and sellers agreed not to compete for the business of customers located on one side of the Mississippi River, in return for the agreement of other Defendant processors and sellers that they would not compete for the business of customers located on the other side of the Mississippi River.

38. Defendant Popcorn Institute knowingly and intentionally cooperated with the other Defendants and co-conspirators by allowing conspiratorial meetings and conspiratorial exchanges of pricing information to take place under its auspices, and by assisting and facilitating such meetings and exchanges at meetings of the Popcorn Institute. Upon information and belief, the Defendant Popcorn Institute, by and through the activities of its president, also maintained and helped ensure adherence by the other

12

Defendants to the Defendants' agreements and understandings by, among other methods, communicating with the other Defendants regarding the agreed-upon price to be charged by the Defendant processors and sellers, and other elements and terms of the Defendants' agreements and understandings.

## VII.   EFFECTS

39.   The contract, combination and conspiracy charged herein had the following effects, among others:

a.   Prices charges by the Defendants to the Plaintiff and to the class members were fixed, raised, maintained and stabilized at artificially high and non-competitive levels;

b.   Competition in the sale of bulk popcorn in the United States was unreasonably restrained;

c.   The freedom of the Plaintiff and the members of the class to do business with the bulk popcorn processor and seller of their choice was unreasonably restricted.

40.   As a result of the Defendants' unlawful conduct, the Plaintiff and the members of the class have been injured in their business and property, in that they paid more for bulk popcorn than they otherwise would have paid in the absence of the Defendants' unlawful conduct.

## VIII.   FRAUDULENT CONCEALMENT

41.   Throughout the period set forth herein, the Defendants have fraudulently concealed their unlawful contract, combination and conspiracy from the Plaintiff and the members of the class.

42.   In order to fraudulently conceal their contract, combination and conspiracy from the Plaintiff and the members of

13

the class, the Defendants engaged, _inter alia_, in the following affirmative conduct:

a.   All Defendants, throughout the period of their unlawful conduct, secretly and conspiratorially fixed and raised the prices of bulk popcorn.

b.   The Defendant processors and sellers, throughout the period of their unlawful conduct, secretly and conspiratorially allocated among themselves customers for bulk popcorn.

c.   The Defendant processors and sellers, throughout the period of their unlawful conduct, refrained from competing, on the basis of price, for the business of customers.

d.   The Defendant processors and sellers, throughout the period of their unlawful conduct, on occasion secretly and conspiratorially agreed to and did submit collusive, noncompetitive, and rigged bids or price quotations to customers or, upon the request of another Defendant, secretly and conspiratorially agreed not to submit bids or price quotations to certain customers, and otherwise agreed to refrain and did refrain from competing for the business of that customer.

e.   All Defendants, throughout the period of their unlawful conduct, secretly and conspiratorially discussed and agreed among themselves, _inter alia_, the allocation of customers and the prices to be charged to customers.  For example, the Defendants -- at meetings of and under the auspices of the Defendant Popcorn Institute, in June 1988, among other occasions -- secretly met among themselves and discussed prices to be charged to customers of bulk popcorn.

14

e.   To create the illusion of active competition, the Defendant processors and sellers, throughout the period of their unlawful conduct, submitted collusive, noncompetitive and fixed price quotations to customers.

f.   All Defendants, throughout the period of their unlawful conduct, used means of communication which they believed to be safe from detection and avoided means of communication which they believed to be subject to detection.

43.   At all material times, the market for bulk popcorn was dominated and controlled by the Defendant processors and sellers and the Defendants have developed and maintained close and tightly-knit relationships between and among themselves for the purpose, among others, of planning and implementing the activities and conduct alleged in this Complaint.   Accordingly, much of the Defendants' communication which underlies the wrongful conduct alleged herein was carried out during telephone conversations, during informal and otherwise secret meetings and gatherings, and by other informal methods of communication that were not discoverable by outside parties.   As a result, the substance of these communications was not known to and was not reasonably discoverable by the Plaintiff.

44.   Because of the secret and conspiratorial nature of the Defendants' conduct, the Defendants' use of collusive, non-competitive and fixed price quotations, and the Defendants' cloaking of unlawful acts in the mantle of legitimate trade association activity, the Plaintiff and the members of the class did not know, and by the exercise of reasonable diligence could not

15

have known, of the Defendants' unlawful conduct prior to August 1989.

## COUNT I

### VIOLATION OF THE SHERMAN ACT

45. Plaintiff incorporates herein by reference paragraphs 1-44 of the Complaint.

46. The conduct of the Defendants as alleged in this Complaint violated Section 1 of the Sherman Act, 15 U.S.C. § 1.

47. As alleged in this Complaint, Plaintiff and the members of the class have been injured in their business and property as a result of the Defendants' violation of Section 1 of the Sherman Act.

### PRAYER FOR RELIEF

48. Wherefore, Plaintiff prays that the Court enter judgment on its behalf and on behalf of the class herein, adjudging and decreeing that:

   a. The Defendants have engaged in a contract, combination and conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and that Plaintiff and members of the class have been damaged and injured in their business and property as a result of the Defendants' violation of Section 1 of the Sherman Act;

   b. Plaintiff and members of the class recover threefold the damages determined to have been sustained by each of them as a result of the conduct of the Defendants complained of herein, and that judgment be entered against the Defendants, jointly and severally, for the amount so determined;

16

c.   Plaintiff and the members of the class recover from the Defendants, jointly and severally, the costs of this action, including reasonable attorney's fees, in accordance with federal antitrust laws; and

d.   Plaintiff and the members of the class have such other and further relief as the Court may deem just and proper.

### JURY DEMAND

49.  Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: August 15, 1989.

OPPERMAN HEINS & PAQUIN

By: _____
     Samuel D. Heins (#43576)
     W. Joseph Bruckner (#147758)
     2200 Washington Square
     100 Washington Avenue South
     Minneapolis, Minnesota 55401
     Telephone: (612) 339-6900

**JERRY B. CHARITON, ESQUIRE**
Suite 306 Bicentennial Bldg.
15 Public Square
Wilkes Barre, PA  18701
(717) 824-3511

**LARRY KEISER, ESQUIRE**
33 West South Street
P.O. Box 22
Wilkes Barre, PA  18703
(717) 822-2929

**GROSS, SKLAR & METZGER, P.C.**
Warren Rubin
Bernard M. Gross
1500 Walnut Street
Sixth Floor
Philadelphia, PA  19102
(215) 561-3600

17

**SAVERI & SAVERI**
Guido Saveri
111 Sutter Street
21st Floor
San Francisco, CA  94104
(415) 391-0300

**ALTHEIMER & GRAY**
Gary L. Specks
10 South Wacker Drive
Suite 4000
Chicago, IL  60606
(312) 715-4000


ATTORNEYS FOR PLAINTIFF
CHOCOLATE POP CORN COMPANY

18