# EXHIBIT 7



## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

IN RE MILK PRODUCTS
ANTITRUST LITIGATION

Master File No. 3-96-458
Chief Judge Magnuson

(This document relates
to all cases)

## SECOND AMENDED AND CONSOLIDATED
## CLASS ACTION COMPLAINT
### Jury Trial Demanded

Gerald Bukstein, d/b/a Sol's Super
Market; Hoffman Corner Oil Co.,
Inc., a Minnesota corporation;
and Magic City Cakes, Inc.,
a North Dakota corporation,

Civil No. 3-96-458

     Plaintiffs,

    v.

Marigold Foods, Inc., a Delaware
corporation; Bolswessanen Holdings,
Inc., a Delaware corporation;
Bolswessanen U.S.A., Inc., a
Delaware corporation; Land O'Lakes,
Inc., a Minnesota corporation individually
and as a successor in interest to
Country Lake Foods, Inc. and Dairy
Fresh, Inc.; Meyer Bros. Dairy, Inc., a
Minnesota corporation; Oak Grove
Dairy, Inc., d/b/a Oak Grove Dairy,
a Minnesota corporation; Geo. Benz
& Sons, Inc. d/b/a Oak Grove Dairy,
Inc., a Minnesota corporation, Schroeder
Milk Co., Inc., a Minnesota
corporation; Marigold Venture, Inc.,
d/b/a Franklin Foods, a Delaware
corporation; K&P Company, Inc.,
d/b/a Polka Dot Dairy, Inc., a
Minnesota corporation; and John
Doe, Richard Roe and XYZ corporations.

     Defendants.



FILED     **JAN 3 1 1997**

FRANCIS E. DOSAL, CLERK

JUDGMENT ENTD

DEPUTY CLERK

Robinson Enterprises of Washington,
Inc., d/b/a Plaza 66, on behalf of
itself and all others similarly
situated,

Civil No. 4-96-447

      Plaintiffs,

   vs.

Marigold Foods, Inc., a Delaware
corporation; Bolswessanen Holdings,
Inc., a Delaware corporation;
Bolswessanen U.S.A., Inc., a
Delaware corporation; Land O'Lakes,
Inc., a Minnesota corporation individually
and as a successor in interest to
Country Lake Foods, Inc. and Dairy
Fresh, Inc.; Meyer Bros. Dairy, Inc., a
Minnesota corporation; Oak Grove
Dairy, Inc., d/b/a Oak Grove Dairy,
a Minnesota corporation; Geo. Benz
& Sons, Inc. d/b/a Oak Grove Dairy,
Inc., a Minnesota corporation, Schroeder
Milk Co., Inc., a Minnesota
corporation; Marigold Venture, Inc.,
d/b/a Franklin Foods, a Delaware
corporation; K&P Company, Inc.,
d/b/a Polka Dot Dairy, Inc., a
Minnesota corporation; and John
Doe, Richard Roe and XYZ corporations.

      Defendants.

---

Thomas DeCaigny, d/b/a DeCaigny
Grocery; Stan Denne, d/b/a Denne's
Market and Roseville Superette, on
behalf of themselves and all others
similarly situated,

Civil No. 5-96-150

      Plaintiffs,

   vs.

Marigold Foods, Inc., a Delaware
corporation; Bolswessanen Holdings,
Inc., a Delaware corporation;
Bolswessanen U.S.A., Inc., a

2

Delaware corporation; Land O'Lakes,
Inc., a Minnesota corporation individually
and as a successor in interest to
Country Lake Foods, Inc. and Dairy
Fresh, Inc.; Meyer Bros. Dairy, Inc., a
Minnesota corporation; Oak Grove
Dairy, Inc., d/b/a Oak Grove Dairy,
a Minnesota corporation; Geo. Benz
& Sons, Inc. d/b/a Oak Grove Dairy,
Inc., a Minnesota corporation, Schroeder
Milk Co., Inc., a Minnesota
corporation; Marigold Venture, Inc.,
d/b/a Franklin Foods, a Delaware
corporation; K&P Company, Inc.,
d/b/a Polka Dot Dairy, Inc., a
Minnesota corporation; and John
Doe, Richard Roe and XYZ corporations.

        Defendants.

---

Rainy Lake One Stop, Inc.
a Minnesota corporation,

        Plaintiff,

    vs.

Marigold Foods, Inc., a Delaware
corporation; Bolswessanen Holdings,
Inc., a Delaware corporation;
Bolswessanen U.S.A., Inc., a
Delaware corporation; Land O'Lakes,
Inc., a Minnesota corporation individually
and as a successor in interest to
Country Lake Foods, Inc. and Dairy
Fresh, Inc.; Meyer Bros. Dairy, Inc., a
Minnesota corporation; Oak Grove
Dairy, Inc., d/b/a Oak Grove Dairy,
a Minnesota corporation; Geo. Benz
& Sons, Inc. d/b/a Oak Grove Dairy,
Inc., a Minnesota corporation, Schroeder
Milk Co., Inc., a Minnesota
corporation; Marigold Venture, Inc.,
d/b/a Franklin Foods, a Delaware
corporation; K&P Company, Inc.,
d/b/a Polka Dot Dairy, Inc., a

Civil No. 3-96-458

3

Minnesota corporation; and John
Doe, Richard Roe and XYZ corporations.

       Defendants.

---

The Littlestore of Minneapolis, Inc.

       Plaintiff,

    vs.

Marigold Foods, Inc., a Delaware
corporation; Bolswessanen Holdings,
Inc., a Delaware corporation;
Bolswessanen U.S.A., Inc., a
Delaware corporation; Land O'Lakes,
Inc., a Minnesota corporation individually
and as a successor in interest to
Country Lake Foods, Inc. and Dairy
Fresh, Inc.; Meyer Bros. Dairy, Inc., a
Minnesota corporation; Oak Grove
Dairy, Inc., d/b/a Oak Grove Dairy,
a Minnesota corporation; Geo. Benz
& Sons, Inc. d/b/a Oak Grove Dairy,
Inc., a Minnesota corporation, Schroeder
Milk Co., Inc., a Minnesota
corporation; Marigold Venture, Inc.,
d/b/a Franklin Foods, a Delaware
corporation; K&P Company, Inc.,
d/b/a Polka Dot Dairy, Inc., a
Minnesota corporation; and John
Doe, Richard Roe and XYZ corporations.

       Defendants.

Civil No. 3-96-575

---

Plaintiffs, on behalf of themselves and a class of all those similarly situated bring this action

against defendants named herein for treble damages, costs of suit, and injunctive and other suitable

relief under the antitrust laws of the United States of America.

4

## I.  JURISDICTION AND VENUE

1.      Plaintiffs bring this action pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) to recover damages and costs of suit, including reasonable attorneys' fees, as the result of defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2.      This action also seeks to obtain injunctive relief against defendants and their employees, agents, subsidiaries and affiliates to prevent and restrain them from further and continued violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3.      This Court has jurisdiction over this action and all proceedings herein pursuant to 28 U.S.C. §§ 1331 and 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and Section 12 of the Clayton Act, 15 U.S.C. § 22.

5.      Each defendant in this case transacts business in this district and the cause of action arose, in part, within this district.  The interstate trade and commerce described herein is and has been carried out, in part, within this district.  Many of the unlawful acts done in violation of the Sherman Act have occurred within this district.

## II.  DEFINITIONS

6.      The phrase "milk and milk products" is used to refer collectively to the products derived from dairy cows, processed from raw milk and used for human consumption, including, but not limited to, fluid milk, fluid milk products and ice cream.

7.      The phrase "five-state area" means all or parts of the states of Minnesota, Wisconsin, Iowa, North Dakota, and South Dakota.

8.      The phrase "relevant time period" means the time of the combination or conspiracy (hereinafter "conspiracy") alleged herein, commencing as early as 1985 and continuing through at

least July 1995. To the extent that defendants may no longer be actively engaged in furthering their illegal conspiracy to fix and maintain the price of milk and milk products, the effects of defendants' illegal conspiracy continue to this day.

### III.   PARTIES

#### A.   PLAINTIFFS.

9.      Plaintiff Gerald Bukstein does business as Sol's Super Market, a sole proprietorship, which has its principal place of business in St. Louis Park, Minnesota, and is engaged in the business of selling merchandise, including milk and milk products, to the general public. In the course of its business, and during the relevant time period, plaintiff Sol's Super Market purchased milk and milk products directly from one or more of the defendants and has been injured by reason of the antitrust and conspiracy violations alleged in this Complaint.

10.      Plaintiff Magic City Cakes, Inc., a North Dakota corporation having its principal place of business in the state of North Dakota, is engaged in the business of selling merchandise, including milk and milk products, to the general public. In the course of its business, and during the relevant time period, plaintiff Magic City Cakes, Inc., purchased milk and milk products directly from one or more of the defendants and has been injured by reason of the antitrust combination or conspiracy violations alleged in this Complaint.

11.      Plaintiff Thomas DeCaigny did business as DeCaigny's Grocery, a sole proprietorship, which had its principal place of business in Cloquet, Minnesota, and was engaged in the business of selling merchandise, including milk and milk products, to the general public. In the course of his business, and during the relevant time period, plaintiff DeCaigny purchased milk and milk products directly from one or more of the defendants and has been injured by reason of the antitrust and conspiracy violations alleged in this Complaint.

6

12.     Plaintiff Stan Denne did business as Denne's Market, a sole proprietorship, which had its principal places of business in Brooklyn Center and Columbia Heights, Minnesota, and as Roseville Superette, a sole proprietorship, which had its principal place of business in Roseville, Minnesota. Through these businesses, plaintiff Denne was and is engaged in the business of selling merchandise, including milk and milk products, to the general public. In the course of his business, and during the relevant time period, plaintiff Denne purchased milk and milk products directly from one or more of the defendants and has been injured by reason of the antitrust and conspiracy violations alleged in this Complaint.

13.     Plaintiff Hoffman Corner Oil Company, Inc. is a Minnesota corporation with its principal place of business in Gem Lake, Minnesota, and is engaged in the business of selling merchandise, including milk and milk products, to the general public. In the course of its business, and during the relevant time period, plaintiff Hoffman Oil Company, Inc. purchased milk and milk products directly from one or more of the defendants and has been injured by reason of the antitrust and conspiracy violations alleged in this Complaint.

14.     Plaintiff The Littlestore of Minneapolis, Inc., is a Minnesota corporation and was engaged in the business of selling merchandise, including milk and milk products, to the general public. In the course of its business, and during the relevant time period, plaintiff The Littlestore of Minneapolis, Inc. purchased milk and milk products directly from one or more of the defendants and has been injured by reason of the antitrust and conspiracy violations alleged in this Complaint.

15.     Plaintiff  Rainy Lake One Stop, Inc. is a Minnesota corporation with its principal place of business in International Falls, Minnesota and is engaged in retail business, including the sale of milk and milk products to the general public. In the course of its business, and during the relevant time period, plaintiff Rainy Lake One Stop, Inc. purchased milk and milk products from one

7

or more of the defendants, including from Bridgeman's Creameries/Bridgeman's Dairy Products, a division of Country Lake Foods, Inc., which is an internal operating division of defendant Land O'Lakes, Inc. Plaintiff Rainy Lake One Stop, Inc. has been injured by reason of the antitrust and conspiracy violations alleged in this Complaint.

16.     Plaintiff Robinson Enterprises of Worthington, Inc. is a Minnesota corporation, doing business as Plaza 66, with its principal place of business in Worthington, Minnesota. Plaintiff Robinson Enterprises of Worthington, Inc. is engaged in the business of selling merchandise, including milk and milk products, to the general public. In the course of its business, and during the relevant time period, plaintiff Robinson Enterprises of Worthington, Inc. purchased milk and milk products directly from one or more of the defendants and has been injured by reason of the antitrust and conspiracy violations alleged in this Complaint.

**B.     DEFENDANTS.**

17.     Defendant Marigold Foods, Inc., a Delaware corporation having its principal place of business in Minnesota, and with business operations throughout the United States but principally in Minnesota and Wisconsin, purchases, transports, stores, processes and merchandises milk and milk products. Throughout the relevant time period, it engaged in the business of producing, marketing and selling milk and milk products throughout the five-state area. Defendant Marigold Foods, Inc. is a wholly-owned subsidiary of defendant Bolswessanen U.S.A., Inc.

18.     Defendant Bolswessanen Holdings, Inc. is the parent corporation of defendant Bolswessanen U.S.A., Inc., and is a wholly-owned American division of Koninklijke Wessanen NV of Amstelveen, The Netherlands, a multi-billion dollar international conglomerate. Defendant Bolswessanen Holdings, Inc. acquired defendant Marigold Foods, Inc. in 1978 and operated it as a wholly-owned subsidiary until 1982, when it transferred ownership of Marigold Foods, Inc. to

8

defendant Bolswessanen U.S.A., Inc., another wholly-owned subsidiary.  Since 1982, defendant Bolswessanen Holdings, Inc. has operated defendant Marigold Foods, Inc. through its wholly-owned subsidiary defendant Bolswessanen U.S.A., Inc.  Bolswessanen Holdings, Inc. is the alter ego of Bolswessanen U.S.A., Inc. and the successor-in-interest to Marigold Foods, Inc.  At all times after its acquisition of Marigold Foods, Inc., Bolswessanen Holdings, Inc. was directly and through Marigold Foods, Inc., engaged in the business of selling milk and milk products within the five-state area.  Bolswessanen Holdings, Inc. is named as a conspirator with the defendants other than Marigold Foods, Inc. and as a direct participant in the conspiracy alleged herein.  Bolswessanen Holdings, Inc. is also named as liable for the actions of its wholly-owned subsidiaries, defendants Bolswessanen U.S.A., Inc. and Marigold Foods, Inc.

19.     Defendant Bolswessanen U.S.A., Inc., is the parent corporation of defendant Marigold Foods, Inc., and is, in turn, a wholly-owned subsidiary of defendant Bolswessanen Holdings, Inc.  Defendant Bolswessanen U.S.A., Inc. was incorporated in 1982 to operate as a wholly-owned subsidiary and holding company for five subsidiaries, including defendant Marigold Foods, Inc.  At all times after Bolswessanen U.S.A., Inc.'s founding, it operated Marigold Foods as a wholly-owned subsidiary.  Bolswessanen U.S.A., Inc. is the successor-in-interest to Marigold Foods.  At all times after its establishment, Bolswessanen U.S.A., Inc. through Marigold Foods was engaged in the business of selling milk and milk products within the five-state area.  Bolswessanen U.S.A., Inc. is named as a conspirator with the defendants other than Marigold Foods and as a direct participant in the conspiracy alleged herein.  Bolswessanen U.S.A., Inc. is also named as liable for the actions of its wholly-owned subsidiary, defendant Marigold Foods.

20.     Defendant Land O' Lakes, Inc., a Minnesota corporation having its principal place of business in Minnesota, and with business operations in Minnesota, purchases, transports, stores,

9

processes and merchandises milk and milk products. Throughout the relevant time period, it engaged in the business of producing, marketing and selling milk and milk products nationally with principal distribution throughout the five-state area. Land O'Lakes is sued as a direct participant in the conspiracy alleged herein and, as set forth in the following paragraphs, as the successor-in-interest to Country Lake Foods, Inc. and Dairy Fresh, Inc.

21.     Defendant Land O'Lakes, Inc. is further named as majority owner and as successor-in-interest to Country Lake Foods, Inc., which was a direct participant in the antitrust and conspiracy violations alleged herein from 1988 to 1991, when Land O'Lakes, Inc. acquired the minority publicly-held interest of Country Lake Foods, Inc. Country Lake Foods currently operates as an internal operating division of Land O'Lakes, Inc. Accordingly, Land O'Lakes, Inc. is liable for the illegal acts and omissions of Country Lake Foods, Inc. and its officers and employees and for Country Lake Foods, Inc.'s participation in and furtherance of the illegal combination or conspiracy alleged herein.

22.     Defendant Land O'Lakes, Inc. is further named as successor-in-interest to Dairy Fresh, Inc., which was a direct participant in the antitrust and conspiracy violations alleged herein from at least 1985 to 1990. In 1989, Country Lake Foods, Inc. acquired 100% of Dairy Fresh, Inc., and the merger was allowed to proceed over Justice Department objection in 1990. In 1991, Country Lake Foods was acquired by Land O'Lakes, Inc. and Land O'Lakes continues to use the Dairy Fresh trade name in marketing Land O'Lakes, Inc.'s milk and milk products. Further, after re-acquiring Country Lake Foods, Inc., Land O'Lakes continued to employ several of Dairy Fresh, Inc.'s former officers and management. Accordingly, Land O'Lakes, Inc. is liable for the illegal acts and omissions of Dairy Fresh, Inc. and its officers and employees, and for Dairy Fresh, Inc.'s participation in and furtherance of the illegal combination or conspiracy alleged herein.

23.     Defendant Meyer Bros. Dairy, Inc., a Minnesota corporation having its principal place of business in Minnesota, and with business operations in Minnesota, purchases, transports, stores, processes and merchandises milk and milk products. Throughout the relevant time period, it engaged in the business of producing, marketing and selling milk and milk products in portions of the five-state area.

24.     Defendant Oak Grove Dairy, Inc., a Minnesota corporation having its principal place of business in Minnesota, and with business operations in Minnesota, purchases, transports, stores, processes and merchandises milk and milk products. Throughout the relevant time period, it engaged in the business of producing, marketing and selling milk and milk products in portions of the five-state area. Oak Grove Dairy, Inc., is a subsidiary of Defendant Geo. Benz & Sons, Inc.

25.     Defendant Geo. Benz & Sons, Inc. is a Minnesota corporation having its principal place of business in Minnesota, and with business operations in Minnesota, purchases, transports, stores, processes and merchandises milk and milk products. Defendant Geo. Benz & Sons, Inc. is the parent corporation of Defendant Oak Grove Dairy, Inc. and does business as Oak Grove Dairy. Defendant Geo. Benz & Sons, Inc. is named as a conspirator with the defendants other than Oak Grove Dairy and as a direct participant in the conspiracy alleged herein. Defendant Geo. Benz & Sons, Inc. is also named as liable for the acts of its subsidiary, Oak Grove Dairy.

26.     Defendant Schroeder Milk Company, Inc., a Minnesota corporation, having its principal place of business in Minnesota, and with business operations in Minnesota, purchases, transports, stores, processes and merchandises milk and milk products. Throughout the relevant time period, it engaged in the business of producing, marketing and selling milk and milk products in portions of the five-state area.

11

27.     Defendant Marigold Venture, Inc. doing business as Franklin Foods, a Delaware corporation, having its principal place of business in Duluth, Minnesota, and with business operations in Minnesota, purchases, transports, stores, processes and merchandises milk and milk products. Throughout the relevant time period, it engaged in the business of producing, marketing and selling milk and milk products in portions of the five-state area.

28.     Defendant K & P Company, Inc. doing business as Polka Dot Dairy, Inc., a Minnesota corporation having its principal place of business in Minnesota, and with business operations in Minnesota, purchases, transports, stores, processes and merchandises milk and milk products. Throughout the relevant time period, it engaged in the business of producing, marketing and selling milk and milk products in portions of the five-state area.

29.     The violations alleged in this Complaint to have been done by each defendant were authorized, ordered and done by its officers, directors, agents, employees or representatives while actively engaged in the management, direction, control or transaction of the defendants' business or affairs.

## IV.   UNNAMED CO-CONSPIRATORS

30.     Various other persons, firms or corporations not as yet named as defendants in this lawsuit, may have participated as co-conspirators with the defendants and defendants' subsidiaries and affiliates in the violations alleged and may have performed acts and made statements in furtherance of those violations.

## V.   CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following class:

12

All purchasers (excluding governmental entities; defendant co-conspirators, and their respective parents, subsidiaries and affiliates; of milk and milk products and their parents, subsidiaries and affiliates) in the five-state area, who purchased milk or milk products directly from any defendant or co-conspirator, any subsidiary or affiliate of any defendant or co-conspirator, and/or any acquired entity of any defendant or co-conspirators, and/or any predecessor-in-interest of any defendant or co-conspirator, at any time during the period of at least as early as January 1985 to, and including, the date of filing the original Complaint in this matter.

32.     The exact size of the class is unknown, since such information is in the exclusive control of defendants. However, based on the nature of the trade and commerce involved, plaintiffs believe that the class numbers in the several thousands and that the members of the class are dispersed throughout the five-state area. Therefore, joinder of all members of the class would be impracticable.

33.     The class members are readily identifiable from information and records in the possession of the defendants.

34.     There are questions of law or fact common to the class. These questions of law and fact predominate over any questions affecting only individual members of the class.

35.     The claims of the plaintiffs are typical of the claims of the class in that plaintiffs are purchasers of milk and milk products who are no different in any relevant respect from any other class members, and the relief sought is common to the class.

36.     Plaintiffs will fairly and adequately protect the interests of the class in that plaintiffs are typical purchasers of milk and milk products, have no conflicts with any other members of the class and have engaged counsel experienced and competent in antitrust litigation of this type.

37.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members of the class. A class action is superior to other available alternatives, if any, for the fair and efficient adjudication of this controversy.

13

38.   Common questions include, but are not limited to:

a.   Whether defendants combined or conspired with one another and others unnamed to fix, raise, maintain, and/or stabilize the price of milk and milk products;

b.   Whether and how the alleged combination, conspiracy, and common course of conduct were implemented by defendants;

c.   Whether defendants' conduct caused injury to the business or property of plaintiffs and/or other members of the class;

d.   The mode, manner and method used by defendants and each of them to conceal the alleged combination or conspiracy from plaintiffs and other members of the class; and

e.   Whether defendants' combination or conspiracy is continuing, thus entitling plaintiffs and members of the class to injunctive relief.

These and other questions of law and fact are common to the members of the class and they predominate over any questions as to individual class members.

## VI.   TRADE AND COMMERCE

39.   Wholesale milk sales and distribution in the five-state area is a $150+ million per year business.  Defendants either produce for themselves or purchase from producers and their agents milk and milk products for further production and wholesale distribution in the flow of interstate commerce within the five state area.  In this case, defendants sell and distribute their milk and milk products to class members.

40.   During the relevant time period, defendants and their co-conspirators were major processors, sellers and distributors of milk and milk products operating in all or parts of the five-state area.

14

41.     During the relevant time period, one or more of the defendants and their co-conspirators sold and shipped substantial quantities of milk and milk products in a continuous and uninterrupted flow in interstate commerce to customers located in other states.

42.     The business activities of the defendants and their co-conspirators were within the flow of, and substantially affected, interstate trade and commerce.

## VII.   VIOLATIONS CHARGED

43.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs.

44.     Beginning at least as early as 1985, and continuing until at least approximately July 1995, defendants and their co-conspirators, named and unnamed, entered into and engaged in a combination or conspiracy in unreasonable restraint of trade and commerce in violation of the antitrust laws of the United States of America, namely, Section 1 of the Sherman Act, 15 U.S.C. § 1. The effects of this combination or conspiracy still impact the price and distribution of milk and milk products in the five-state area today and have injured and continue to injure the plaintiffs and members of the putative class.

45.     Pursuant to certain milk marketing orders issued by the U.S. Department of Agriculture, the federal government regulates from time to time minimum prices for raw milk paid to producers, such as farmers and their cooperatives. These "floor" prices are published every thirty days and take effect thirty days following their publication.

46.     Defendants implemented their illegal combination or conspiracy by first negotiating raw milk prices with producers and their agents after learning of the raw milk prices as set by federal milk marketing orders and then determining a "premium" price. Upon determining the "premium" over and above the government's base price that would be paid to the producers or their agents, the defendant conspirators, through their agents, servants and employees, would:

15

a.   Confer and agree among and between themselves to increase the price of milk at which they would sell milk and milk products to the plaintiffs and the members of the class herein; or

b.   In the event of falling prices the defendants and their co-conspirators would agree upon a uniform reduction in price so as to fix, maintain, and stabilize the price of milk and milk products.

47.   Upon reaching agreement as to the price they would pay for raw milk, defendants then regularly discussed and agreed amongst themselves the prices they would charge retail outlets, such as the plaintiffs and members of the putative class, for milk and milk products.

48.   A former employee of Defendant Marigold Foods, Inc. acknowledged that the object of defendants' unlawful pricing discussions, illegal agreements and enforcement practices was to prevent price competition and to fix, raise and maintain the price of milk and milk products.

49.   Defendants effectuated and furthered their illegal combination or conspiracy by consistently discussing and agreeing on the prices that they would charge for milk and milk products.

50.   Defendants accomplished their illegal combination or conspiracy through continued contact and agreement that caused the prices for milk and milk products to move up and down in concert. But for defendants' constant pricing discussions and illegal conspiratorial actions, the price of milk would have been subjected to competitive forces in the marketplace and members of the Class would not have been injured and would have enjoyed the benefits of free and open competition.

51.   Defendants' illegal price discussions and agreements occurred between officers, agents, and employees of each of the defendants in face-to-face clandestine meetings, or by clandestine telephone calls, at least on a monthly basis.

16

52.    Defendants furthered their combination or conspiracy by agreeing to stabilize and maintain the prices for milk and milk products.

53.    Upon reaching agreement as to prices, defendants would then separately publish their agreed-upon prices to their respective customers.  Prior to releasing their agreed-upon prices, defendants agreed among themselves as to the timing and manner of the price announcements.  Such coordinated price announcements accomplished the goal of their combination or conspiracy, which was to eliminate competition in the milk and milk product market and to fix, raise and maintain the price of milk and milk products in the five-state area.

54.    Defendants further implemented and maintained their ongoing illegal combination or conspiracy by allocating customers and markets among themselves and by agreeing not to compete for one another's customers.  In those rare cases where competition for customers appeared imminent, defendants would agree together to swap customers in a concerted, organized manner such that price competition was eliminated and defendants' illegal conspiracy continued unabated.

55.    In furtherance of their illegal combination or conspiracy, defendants allocated among themselves certain geographic markets, certain customers, and certain government bidding markets.  In exchange for exclusivity in these markets, defendants agreed not to compete with one another in these markets or for these customers.

56.    For instance, in order to prevent Defendant Schroeder Milk Co., Inc. from breaking ranks and discounting prices after it lost substantial business from a major retail outlets Defendants Marigold Foods, Inc. and Marigold Venture, Inc. provided Defendant Schroeder Milk Co. with a contract for bottling milk in Duluth, Minnesota, in exchange for Defendant Schroeder Milk Co.'s agreement to not compete for additional customers and not to start price competition.

57.     For instance, in order to maintain the continued policing of the illegal combination or conspiracy, when a new supermarket store was to be opened in St. Cloud, Minnesota, the conspirators agreed that Defendants Geo. Benz & Sons, Inc. and Oak Grove Dairy, Inc. could have that market, but if Geo. Benz & Sons, Inc. or Oak Grove Dairy, Inc. competed for another market, such action would be met with retribution.

58.     Several of the defendants do substantial business in providing milk and milk products to government purchasers, including school districts. These milk and milk products are sold through a public bidding process. Defendants furthered their illegal conspiracy in fixing the price of milk and milk products sold to direct purchasers through a grand combination or conspiracy to allocate customers and fix and maintain the price of milk and milk products sold to both direct purchasers and government purchasers.

59.     For instance, in exchange for agreements from the defendants who sell primarily to government purchasers to fix prices and not compete for direct purchasers,  the other defendants agreed either to submit bogus bids to government purchasers or to not bid at all.

60.     The result of such illegal agreements to allocate customers by trading government purchasers in exchange for direct purchasers has been to eliminate competition and illegally fix and raise the price of milk and milk products in the five-state area.

61.     Defendants would further control the market by refusing to bottle milk for certain independent sales entities who were not a part of the alleged combination or conspiracy if the independent sales entities intended to attempt to compete with one or more of the defendants in certain markets, such as bid markets not subject to this suit, which were allocated to one or more of the defendants.

18

62.     For instance, independent sales entities who did not purchase directly but had their product bottled by one or more defendants for resale were told that their milk would not be bottled if it were sold to a market that was already allocated to, or controlled by, Meyer Bros., Geo. Benz & Sons, Oak Grove Dairy, or Schroeder Milk Company.  Meyer Bros., Geo. Benz & Sons, Oak Grove Dairy, and Schroeder Milk Company were allocated certain government bidding markets, such as the University of Minnesota, and any attempted incursion into those markets by independent sales entities was met with direct refusals to deal with these independent entities.

63.     Defendants who were assigned the bid markets not subject to this suit furthered the combination or conspiracy alleged in this Complaint by affirmatively refraining from entering into markets not assigned to them and by acquiescing through their silence and inaction in decisions made by other defendants and co-conspirators.

64.     Through such illegal market allocation and refusals to deal with non-conspirators, defendants injured plaintiffs and members of the putative class and deprived them of the benefits of free and open competition.

65.     Defendants further policed and enforced their illegal conspiracy through punitive measures against conspirators who broke ranks and who threatened to in actuality, or charged, less than the agreed-upon conspiratorial price.  These punitive measures included, but were not limited to, threatening to heavily discount prices to valued customers, or to "start a price war" if the conspirator who broke ranks did not come back in line.

66.     Defendants immediately contacted any co-conspirator who attempted to break ranks.  These contacts included, but are not limited to, threats from Defendant Marigold Foods, Inc. to conspirators who broke ranks to "go after your big account with a dime off," meaning that Marigold

Foods, Inc. intended to approach the "rank breaker's" large customers with heavily discounted prices in an effort to seriously injure its business and bring it back into line.

67.     Defendant Marigold Foods enhanced and furthered the combination or conspiracy by terminating an employee who refused to continue the practice of fixing the price of milk and milk products with the other defendants.

68.     Defendant Marigold Foods also furthered and enhanced the illegal combination or conspiracy through an illegal payment to one or more of its employees who agreed to fix the price of milk and milk products with the other defendants.

69.     Defendant Marigold Foods, Inc. actively established and furthered the illegal combination or conspiracy alleged herein by engaging in illegal pricing discussions in person and by telephone with the other defendants and unnamed co-conspirators, by using illegal means to allocate customers and eliminate competition amongst the defendants and co-conspirators in the five-state area, by using illegal means to police and enforce compliance with the combination or conspiracy alleged herein and by using illegal means to conceal the combination or conspiracy alleged herein, all in concert with the other defendants and unnamed co-conspirators in this action.

70.     Defendant Bolswessanen U.S.A., Inc., on its own and through its wholly-owned subsidiary Defendant Marigold Foods, Inc., acted in furtherance of the illegal combination or conspiracy alleged herein by participating in meetings where pricing was discussed and approving the actions of its wholly-owned subsidiary Defendant Marigold Foods, Inc. in engaging in pricing discussions, enforcement and concealment of the combination or conspiracy to fix, maintain and stabilize the price of milk and milk products in the five-state area during the relevant time period in concert with the other defendants and unnamed co-conspirators in this action. Defendant Bolswessanen U.S.A., Inc. furthered the illegal combination or conspiracy by approving of or

20

acquiescing in an illegal payment to a Marigold Foods' employee in exchange for that employee's agreement to continue to conceal and further the conspiracy alleged herein.

71.     Defendant Bolswessanen Holdings, Inc., on its own and through its wholly-owned subsidiaries Defendants Bolswessanen U.S.A., Inc. and Marigold Foods, Inc., acted in furtherance of the illegal combination or conspiracy alleged herein by participating in meetings where pricing was discussed and approving the actions of its wholly-owned subsidiaries in engaging in pricing discussions, enforcement and concealment of the conspiracy to fix, maintain and stabilize the price of milk and milk products in the five-state area during the relevant time period, in whole or in part, in concert with the other defendants and unnamed co-conspirators in this action. Defendant Bolswessanen Holdings, Inc. furthered the illegal combination or conspiracy by approving of or acquiescing in an illegal payment to a Marigold Foods' employee in exchange for that employee's agreement to continue to conceal and further the combination or conspiracy alleged herein.

72.     Defendant Land O'Lakes, Inc. actively established and furthered the illegal combination or conspiracy alleged herein by engaging in illegal pricing discussions in person and by telephone with the other defendants and unnamed co-conspirators, including an employee of Defendant Marigold Foods, Inc. and an officer and employee of Defendant Meyer Bros. Dairy, Inc., by using illegal means to allocate customers and eliminate competition amongst the defendants and co-conspirators in the five-state area, by using illegal means to police and enforce compliance with the conspiracy alleged herein and by using illegal means to conceal the combination or conspiracy alleged herein, all in concert with the other defendants and unnamed co-conspirators in this action.

73.     Defendant Land O'Lakes, Inc. further participated in the combination or conspiracy to illegally fix the price of milk and milk products and eliminate competition for such products in the five-state area by agreeing with the other defendants and unnamed co-conspirators, including

Defendants Marigold Foods, Inc. and Marigold Venture, Inc., to refuse to bottle milk for any potential competitor who was not part of the conspiracy alleged herein, effectively eliminating those individuals and companies as competitors and preserving the illegal combination or conspiracy.

74.     Defendant Meyer Bros. Dairy, Inc. actively established and furthered the illegal combination or conspiracy alleged herein by engaging in illegal pricing discussions in person and by telephone with the other defendants and unnamed co-conspirators, including an employee of Defendant Marigold Foods, Inc. and an officer and employee of Defendant Land O'Lakes, Inc., by using illegal means to allocate customers and eliminate competition amongst the defendants and co-conspirators, by using illegal means to police and enforce compliance with the conspiracy alleged herein and by using illegal means to conceal the conspiracy alleged herein, all in concert with the other defendants and unnamed co-conspirators in this action.

75.     Defendant Meyer Bros. Dairy, Inc. further participated in the combination or conspiracy alleged herein by agreeing not to compete for direct purchasers with the other defendants and unnamed co-conspirators in this action in exchange for the other defendants and unnamed co-conspirators agreeing either to submit bogus bids to government purchasers or not to bid at all.

76.     Defendant Meyer Bros. Dairy, Inc. further participated in market allocation and conspiratorial conduct to freeze out or otherwise prevent independent sales agents from getting their milk bottled that would be delivered to markets which the defendant conspirators had allocated to Meyer Brothers. Defendant Meyer Bros. Dairy, Inc. is an active participant in the conspiracy alleged herein to illegally fix prices and allocate markets during the relevant time period. This was done by freezing out sales by independent dairies to government agencies whereby they were told that they could not get their milk bottled if they were going to bid or sell to certain government contracts already allocated to Meyers Brothers.

22

77.     Defendant Oak Grove Dairy, Inc. actively established and furthered the illegal combination or conspiracy alleged herein by engaging in illegal pricing discussions in person and by telephone with the other defendants and unnamed co-conspirators, including employees of Defendants Marigold Foods, Inc. and Land O'Lakes, Inc., by using illegal means to allocate customers and eliminate competition amongst the defendants and co-conspirators by using illegal means to police and enforce compliance with the conspiracy alleged herein and by using illegal means to conceal the conspiracy alleged herein, all in concert with the other defendants and unnamed co-conspirators in this action.

78.     Defendant Geo. Benz & Sons, Inc., d/b/a Oak Grove Dairy, Inc., by itself and through Oak Grove Dairy, Inc., actively established and furthered the illegal combination or conspiracy alleged herein by engaging in illegal pricing discussions in person and by telephone with the other defendants and unnamed co-conspirators, including employees of Defendants Marigold Foods, Inc. and Land O'Lakes, Inc., by using illegal means to allocate customers and eliminate competition amongst the defendants and co-conspirators, by using illegal means to police and enforce compliance with the conspiracy alleged herein and by using illegal means to conceal the combination or conspiracy alleged herein, all in concert with the other defendants and unnamed co-conspirators in this action.

79.     Defendant Schroeder Milk Company, Inc. actively established and furthered the illegal combination or conspiracy alleged herein by engaging in illegal pricing discussions in person and by telephone with the other defendants and unnamed co-conspirators, including an employee of Defendant Marigold Foods, Inc., by using illegal means to allocate customers and eliminate competition amongst the defendants and co-conspirators by using illegal means to police and enforce

compliance with the conspiracy alleged herein and by using illegal means to conceal the conspiracy alleged herein, all in concert with the other defendants and unnamed co-conspirators in this action.

80.     Defendant Schroeder Milk Company, Inc. further participated in the combination or conspiracy alleged herein by agreeing not to compete for direct purchasers with the other defendants and unnamed co-conspirators in this action in exchange for the other defendants and unnamed co-conspirators agreeing either to submit bogus bids to government purchasers or not to bid at all, which are a prime customer base for Defendant Schroeder Milk Co., Inc.

81.     Defendant Marigold Venture, Inc. (d/b/a Franklin Foods) actively established and furthered the illegal combination or conspiracy alleged herein by engaging in illegal pricing discussions in person and by telephone with the other defendants and unnamed co-conspirators, by using illegal means to allocate customers and eliminate competition amongst the defendants and co-conspirators, by using illegal means to police and enforce compliance with the conspiracy alleged herein and by using illegal means to conceal the conspiracy alleged herein, all in concert with the other defendants and unnamed co-conspirators in this action.

82.     Defendant Marigold Venture, Inc. further participated in the combination or conspiracy to illegally fix the price of milk and milk products and eliminate competition for such products in the five-state area by agreeing with the other defendants and unnamed co-conspirators to refuse to bottle milk for any potential competitor who was not part of the conspiracy alleged herein, effectively eliminating those individuals and companies as competitors and preserving the illegal conspiracy.

83.     Defendant K&P Company (d/b/a Polka Dot Dairy) actively established and furthered the illegal combination or conspiracy alleged herein by engaging in illegal pricing discussions in person and by telephone with the other defendants and unnamed co-conspirators, including

24

Defendant Marigold Foods, Inc., by using illegal means to allocate customers and eliminate competition amongst the defendants and co-conspirators by using illegal means to police and enforce compliance with the combination or conspiracy alleged herein and by using illegal means to conceal the combination or conspiracy alleged herein, all in concert with the other defendants and unnamed co-conspirators in this action.

84.     At no time has any of the defendants publicly withdrawn from the illegal combination or conspiracy to fix and maintain the price of milk and milk products in the five-state area.

85.     Each defendant has participated in one or more overt acts in furtherance of the combination or conspiracy alleged in this Complaint and has participated in conspiratorial activities and attended conspiratorial meetings either in person, by telephone, or otherwise.

## VIII.   EFFECTS

86.     Prior to defendants' conspiracy there was price competition for milk and milk products in the five-state area.  After defendants established their conspiracy, prices for milk and milk products were raised and stabilized, markets were allocated and price competition was substantially eliminated.

87.     Defendants' illegal combination or conspiracy has had the following effects, among others:

     a.     price competition in the sale of milk and milk products throughout the five-state area has been illegally suppressed and eliminated;

     b.     prices for the milk and milk products sold by defendants and their co-conspirators have been raised, fixed, maintained and stabilized at artificially high and noncompetitive levels throughout the five-state area; and

25

c.    purchasers of milk and milk products from the defendants and their conspirators have been deprived of the benefit of free and open competition.

88.    During the pendency of their illegal combination or conspiracy, defendants rarely even approached each other's customers. As such, competition in the market for milk and milk products in the five-state area was effectively nonexistent.

89.    Previously, truck drivers delivering milk were both encouraged and authorized to actively market one company's brand of milk in an attempt to turn accounts. In approximately 1985, the defendants eliminated the use of truck drivers as a marketing arm. In the process, the number of persons who had knowledge of pricing practices for the defendants was substantially reduced.

90.    Through an overall agreement to allocate customers on the one hand and a refusal to bottle milk for potential competitors on the other hand, defendants effectively foreclosed any price competition.

91.    By agreeing to allocate the direct purchasers and the government bidding business among themselves, defendants effectively eliminated any price competition in the five-state area, thereby allowing them to fix, raise, maintain and stabilize the price of milk and milk products during the relevant time period. Plaintiffs and members of the putative class were thereby injured and deprived of the benefits of free and open competition.

## IX.    FRAUDULENT CONCEALMENT

92.    Until shortly before the filing of this Complaint, the plaintiffs and members of the class had no knowledge that defendants and their co-conspirators were violating the antitrust laws as alleged herein. It was not until May of 1996 that plaintiffs and class became knowledgeable of the facts supporting the allegations of concealment of the combination or conspiracy alleged in this Complaint. The plaintiffs and members of the class could not have discovered any of the violations

26

at any time prior to this date by the exercise of due diligence because the violations were fraudulently concealed by defendants, and each of them, and their co-conspirators who engaged in activities designed to safeguard their illegal activity. It is axiomatic that all conspiracies are self-concealing. Because the defendants were engaged in a combination or conspiracy, the acts and statements of fraudulent concealment of any one of the defendants done or made in the course of and in furtherance of the combination or conspiracy may be attributed to all of the defendants. Such activities included, but were not limited to, the following conduct:

A.      During the relevant time period, defendants' agents and employees routinely explained, either through direct communications or communications disseminated by the mass media, that price increases to their customers were a result of butterfat and raw milk price increases, high demand, the complicated structure of federal and state pricing regulations, increases in dairy cattle feed costs, weather conditions and other factors wholly unrelated to the illegal conspiracy alleged herein. Plaintiffs were thereby fraudulently led by the defendants to believe that increased prices for milk and milk products were not the result of an illegal combination or conspiracy. Further defendants attributed their high profits to their business acumen and other factors unrelated to the combination or conspiracy alleged herein.

B.      For instance, on or about August 6, 1986, the vice president and chief financial officer of Land O'Lakes publicly attributed Land O'Lakes' high profits to diversified operations and efforts to control costs, improve efficiency and maintain sales with lower net assets.

C.      For instance, on or about February 27, 1986, the president of Land O'Lakes Foods attributed 1985's profits to better planning and increased efficiencies in operations.

27

D.   For instance, on September 13, 1990, a vice president of Defendant Land O'Lakes, Inc., publicly attributed record levels in the price of milk in 1989 to the 1988 drought and other factors unrelated to the combination or conspiracy.

E.   For instance, on or about September 23, 1989, the vice president of dairy planning for Land O'Lakes publicly explained that milk prices were climbing because of tight milk supplies.

F.   For instance, on or about September 22, 1991, a vice president of marketing for Country Lake Foods publicly explained high milk prices in the face of a drop in raw milk costs by claiming that other market factors account for the price of milk and milk products and that Country Lake Foods was impacted by these factors, none of which were related to the combination or conspiracy.

G.   For instance, in 1992, Defendants Marigold Foods, Inc., Schroeder Milk Company, and Geo. Benz & Sons, Inc., d/b/a Oak Grove Dairy, Inc. obtained an injunction prohibiting enforcement of a Minnesota law setting minimum prices for milk produced and sold by dairy farmers within the state. See Marigold Foods v. Redalen, 809 F. Supp. 714 (D. Minn. 1992). In filing this action, these defendants contended inter alia that the Minnesota law had improperly restrained their constitutional rights and caused increases in the price of milk. Through the publicity following this action, members of the putative class were led to believe that increased prices for milk and milk products were the result of Minnesota law. Defendants Marigold Foods, Schroeder Milk Company and Geo. Benz & Sons, Inc. d/b/a Oak Grove Dairy, made no mention during this lawsuit of their participation in the combination or conspiracy alleged herein.

H.      For instance, on February 27, 1993, a Vice President of Defendant Land O'Lakes, Inc., publicly stated that the cause of increased milk prices in Minnesota was a 1992 state law imposing a premium for milk produced in Minnesota.

I.      For instance, on or about May 5, 1993, an executive vice president of Marigold publicly stated that cost increases to Marigold's customers were the result of Marigold's slim margins.

J.      For instance, in June 1994, a spokesman for Defendant Land O'Lakes, Inc. publicly stated that the price of milk would be increased to offset any losses to dairy farmers as a result of the abolition of the payment of volume premiums by dairies to farmers.

K.      For instance, in March 6, 1995, the chief financial officer and vice president of Land O'Lakes publicly attributed the increase in Land O'Lakes' earnings to double-digit growth in its market-leading butter, deli cheese, and sour cream sales. By publicly attributing such earning's increases to factors other than the illegal conspiracy alleged herein, Defendant Land O'Lakes fraudulently concealed from plaintiffs and members of the putative class the existence of the illegal combination or conspiracy.

93.     Throughout the relevant time period, defendants mailed or otherwise delivered letters and correspondence to their customers which consistently attributed increases in the price of milk to production costs, the price of raw milk and other factors - none of which is defendants' illegal combination or conspiracy. This correspondence, either singularly or collectively, fraudulently concealed from members of the class the fact that the price of milk and milk products was fixed, raised and maintained by defendants' illegal combination or conspiracy.

94.     To this day, agents and employees of the defendants and spokespersons retained by the defendants to speak on their behalf continue to deny the existence of, and their participation in,

29

a combination or conspiracy to fix, maintain, and stabilize the price of milk and milk products. Such activity included, but was not limited to, the following:

A.   On or about November 14, 1996, a Land O'Lakes spokesman again publicly denied the essential allegations that price fixing involving milk and milk products ever existed.

B.   On or about November 14, 1996, an executive of Oak Grove continued to publicly deny any participation by his company in the alleged price-fixing scheme.

C.   On or about November 15, 1996, a spokesman for the Dairies Federation of Minnesota stated that he had participated in meetings and public hearings with officials from the defendants in this case, that he was unaware of any price fixing scheme and that none existed. On information and belief, each of the defendants is a member of the Dairies Federation of Minnesota and the Federation at all times relevant hereto operated on behalf of the named defendants.

D.   On or about January 24, 1997, a lobbyist for the Dairies Federation of Minnesota stated that none of the Federation's members participated in a combination or conspiracy to fix prices.

95.   By attributing increases in the price of milk to factors other than the conspiracy alleged herein and consistently denying the existence of any price-fixing conspiracy, defendants fraudulently concealed from members of the putative class the existence of the defendants' illegal combination or conspiracy to fix, raise and maintain the price of milk and milk products in the five-state area during the relevant time period.

96.     In mid-1995, a United States Department of Justice investigation began into the pricing practices of certain dairies and others related to the bid market which is not the subject to this suit.

97.     Plaintiffs and class members believed that the Department of Justice investigation only concerned bids submitted to state and federal governmental agencies such as schools and universities.

98.     In July 1995, Defendants Marigold Foods, Inc., Land O'Lakes, Inc., Oak Grove Dairy, Inc. and Meyer Bros. Dairy, Inc. each publicly confirmed that they had received subpoenas from the U.S. Department of Justice regarding allegations of bid-rigging in school district milk contracts (not the subject of this action) in Minnesota. However, all of the defendants either denied the allegations or remained silent so as to not confirm the existence of or their propensity to engage in, a combination or conspiracy. Through such blanket denials and acquiescence through silence, the defendants fraudulently concealed from members of the class the existence of their combination or conspiracy to illegally fix, raise and maintain the price of milk and milk products.

99.    In May 1996, the facts which plaintiffs and class members were made aware of, included:

    a.     Defendant Marigold Foods, Inc., in part, fraudulently concealed its participation in the combination or conspiracy sometime in 1990 or 1991 by paying one of its executives hush money to prevent him from alerting federal agencies of the on-going combination or conspiracy to fix, maintain, and stabilize the price of milk and milk products.

31

b.    Defendant Bolswessanen Holdings, Inc., in part, fraudulently concealed its participation in the combination or conspiracy by approving of or acquiescing in payments being made to the executive referenced above.

c.    Defendant Bolswessanen U.S.A., Inc., in part, fraudulently concealed its participation in the combination or conspiracy by approving of or acquiescing in payments being made to the executive referenced above.

d.    Defendant Land O'Lakes, Inc., in part, fraudulently concealed its participation in the combination or conspiracy by participating in clandestine meetings of which no record was kept wherein discussions with one or more Marigold executives concerned fixing, maintaining, and stabilizing the price of milk and milk products as well as market allocation.

e.    Defendant Meyer Bros. Dairy, Inc. fraudulently concealed its participation in the combination or conspiracy by participating in clandestine meetings that were purposely not recorded concerning market allocation as well as freezing out independent wholesalers from bottling capacity.

f.    Defendants Geo. Benz & Sons, Inc., Oak Grove Dairy, Inc., Schroeder Milk Company, Marigold Ventures, and K&P Company fraudulently concealed their participation in the combination or conspiracy by participating in the market allocation referenced above, by affirmatively not competing in markets or with accounts not assigned to them and by acquiescing in all actions alleged in this Complaint through their silence.

100.    As a result of the fraudulent concealment of the combination or conspiracy, plaintiffs assert the tolling of the applicable statute of limitations affecting rights of action by plaintiffs and the members of the class.

## X.   **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request:

A.    That the Court certify this case as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    That the alleged acts, agreements, and understandings by, between and among the defendants and their co-conspirators be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and that plaintiffs and members of the class have been injured in their business and property as a result of such violations by defendants;

C.    That judgment be entered for the plaintiffs and against defendants, jointly and severally, for treble the damages sustained by plaintiffs and the class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

D.    That defendants, their subsidiaries, affiliates, successors, transferees, assignees and their respective officers, directors, agents, and employees, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner continuing, maintaining or renewing the contracts, combinations or conspiracies alleged herein, or from engaging in any other contracts, combinations or conspiracies having similar purposes or effect, and from adopting or following any practices, plans, programs or devices having similar purposes or effects;

E.    That the Court order and instruct that any document retention policies for the named defendants, their agents, servants and employees which in any way provides for the destruction of

33

documents, images, data storage, or writings of any kind that may be related to the gravamen of this

Complaint be suspended and that the same be preserved during the pendency of these proceedings

or until further order of this Court; and

     F.    That plaintiffs and members of the class have such other relief as the Court may deem

just and appropriate.

## JURY DEMAND

    Plaintiffs request a jury trial of all issues so triable, pursuant to Fed. R. Civ. P. 38.

Dated: January 31, 1997          COCHRANE & BRESNAHAN, P.A.


By _____
    John A. Cochrane, #17577
    24 East Fourth Street
    St. Paul, Minnesota 55102
    Telephone:    (612) 298-1950
    Facsimile:     (612) 298-0098

### LEAD COUNSEL FOR PLAINTIFFS

REINHARDT AND ANDERSON
  Mark Reinhardt, #90530
  Gary D. Ansel, #201030
  Jonathan S. Drage, #249142
E-1000 First National Bank Building
332 Minnesota Street
St. Paul, Minnesota 55101
Telephone:    (612) 227-9990
Facsimile:     (612) 297-6543

PLUNKETT, SCHWARTZ, PETERSON, P.A.
  Hugh V. Plunkett, III, #87282
  Robert K. Shelquist, #21310X
  Bryan J. Leary, #203038
East Bridge at Riverplace
10 Second Street, N.E., Suite 114
Minneapolis, Minnesota 55413
Telephone:    (612) 378-3700
Facsimile:     (612) 378-3737

LOCKRIDGE GRINDAL
NAUEN & HOLSTEIN P.L.L.P.


By: _____
Richard A. Lockridge, #64117
Christian M. Sande, #026474X
Suite 2200
100 Washington Avenue South
Minneapolis, Minnesota 55401
Telephone:    (612) 339-6900
Facsimile:    (612) 339-0981

CHESTNUT & BROOKS, P.A.
Jack L. Chestnut, #16378
Karl L. Cambronne, #14321
Jeffrey D. Bores, #227699
3700 Piper Jaffray Tower
222 South Ninth Street
Minneapolis, Minnesota 55402
Telephone:    (612) 339-7300
Facsimile:    (612) 336-2940

CHARLES H. JOHNSON & ASSOCIATES
Charles H. Johnson, #50696
Garrett Blanchfield, Jr. #209855
2599 Mississippi Street
New Brighton, Minnesota 55112
Telephone:    (612) 633-5685
Facsimile:    (612) 633-4442

MEREDITH, COHEN & GREENFOGEL, P.C.
Joel Meredith
Steven Greenfogel
117 South 17th Street
Architects Building, 22nd Floor
Philadelphia, Pennsylvania 19103
Telephone:    (215) 564-5182
Facsimile:    (215) 569-0958

35

OLSON BURNS LEE & LARSON, P.C.
  Richard P. Olson
Seventeenth First Avenue S.E.
P.O. Box 1180
Minot, North Dakota  58702-1180
Telephone:     (701) 839-1740
Facsimile:     (701) 839-5315

BRIAN N. TODER, LTD.
  Brian N. Toder, #17869X
1622 Pioneer Building
336 North Robert Street
St. Paul, Minnesota  55101
Telephone:     (612) 224-5632
Facsimile:     (612) 224-0390

Kevin W. Rouse, #121939
4033 Brookline Avenue South
Minneapolis, Minnesota  55416
Telephone:     (612) 925-2530

James C. Easterly
915 Grain Exchange Building
Minneapolis, Minnesota  55402
Telephone:     (612) 333-7888

**ATTORNEYS FOR PLAINTIFFS**