**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | No. 0:18-cv-01776-JRT-HB |
| This Document Relates To : *ALL ACTIONS* | **REPLY MEMORANDUM OF LAW IN SUPPORT OF CLEMENS FOOD GROUP, LLC'S AND THE CLEMENS FAMILY CORPORATION'S MOTION TO DISMISS** |

Clemens identified allegation after allegation from Plaintiffs' complaints that contradict their assertion of parallel conduct by Clemens.  Plaintiffs' Opposition ignores it all (Opp., Dkt. 479, at 21-24), including that their sole allegation of a supply "cut" by Clemens is neither a cut nor parallel with other Defendants.  Plaintiffs do not dispute their own sources reveal that Clemens:

1)  increased supply in 2011;

2)  doubled its processing capacity;

3)  opened a new processing plant;

4)  increased sows 42.65%; and

5)  increased sows in the very years the industry allegedly cut production.

Rather than confront their complaints, Plaintiffs' Opposition relies on generalized allegations of parallel conduct.  Plaintiffs cannot escape the consequences of their own allegations by ignoring them.  The complaints establish that Clemens' actions were inconsistent with any alleged conspiracy.  Clemens should once again be dismissed from the suit, this time with prejudice.

1

## <u>ARGUMENT</u>

Plaintiffs argue they have alleged parallel conduct by Clemens because, supposedly: (1) Clemens "kept its market share the same" and (2) cut production in 2011.  (Opp. 22-23.)  The complaints contradict both claims.

## I.    PLAINTIFFS' CONCESSION THAT CLEMENS DOUBLED ITS PROCESSING CAPACITY REQUIRES DISMISSAL.

Plaintiffs declare it "critical" to their claims that "Clemens's market share remained remarkably stable throughout the conspiracy period."  (Opp. 23.)[1]  They say it repeatedly throughout their Opposition, asserting, "Clemens failed to increase its market share," "Clemens kept its market share the same," and Clemens "stay[ed] the course . . . even though it would have been in Clemens' interest to increase market share."  (*Id.* at 21, 23.) Yet, these assertions are directly ***contradicted by*** Plaintiffs' complaints.

Every complaint contains the following graphic demonstrating Clemens ***more than doubled its market share*** during the relevant period.  (Clemens MTD, Dkt. 441, 1-5.)

---

[1]   Plaintiffs raised this exact allegation in their prior complaints, and this Court dismissed it as insufficient.  (*E.g.*, No. 18-cv-01803, Dkt. 83, ¶129; Dkt. 168 at 5 (explaining why this allegation fails); Slip Op., Dkt. 361, at 19 (dismissing because defendant-specific allegations "regarding parallel conduct are sparse and conclusory").)

**Plaintiffs' Graphic in Amended Complaints**
(Figure 5 in DPP ¶92, CIP ¶96, WD ¶91; Figure 14, IPP ¶151)

Figure 5: Market Concentration and Market Share Stability –
U.S. Market Share by Hog Slaughter Capacity

The complaints further acknowledge the source of Clemens' aggressive growth in market share: Clemens invested hundreds of millions into building a new plant that increased its processing by 2.5 million hogs per year on a single shift.  (*See* DPP ¶¶94, 113; WD ¶112; PR ¶102 (referencing Meyer 2017 "Market Outlook for Meat and Poultry," at 34); *see also* DPP ¶75 n.29; WD ¶73 n.24; PR ¶69 n.24 (citing Clemens webpage announcing "our new Coldwater, Michigan plant").)

Plaintiffs' admission that Clemens expanded both its processing capacity and its market share mandate Clemens' dismissal.  It is Plaintiffs who emphasize that whether Clemens increased market share is "critical," and Plaintiffs who concede Clemens did just

3

that.  That ends the debate.  *M.M. Silta, Inc. v. Cleveland-Cliffs, Inc.*, 2008 WL 11349885,

at *4 (D. Minn. Dec. 1, 2008) (plaintiffs "plead [themselves] out of court" by relying on

documents "that indicate that [they are] not entitled to relief"); *see also Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 557 (2007) (holding that even allegations merely "consistent with"

a conspiracy—much less *inconsistent* with that conspiracy—fail).

As if that were not enough, Plaintiffs make the remarkable concession that their

"stable market share" allegation fails the *Twombly* standard in the first place.  According

to Plaintiffs, "stable" market share (even if true) only raises "the ***possibility*** that Clemens

participated in the conspiracy by agreeing to not intrude on other Defendants' market

share."  (Opp. 23 (emphasis added).)  The whole point of *Twombly* was that allegations

raising the mere "***possibility***" of parallel conduct do not state a claim.  *Twombly*, 550 U.S.

at 557.  The *Twombly* Court explained that "parallel conduct allegation[s]" must cross "the

line between possibility [into] plausibility" to survive dismissal.  *Id.*  That Plaintiffs'

speculation contradicts their own allegations further emphasizes the propriety of dismissal

here.

Finally, Plaintiffs cannot seek refuge in *Kleen*.  That court affirmed dismissal of a

defendant whose opening of a processing plant "d[id] not point towards [defendant] having

a role in any conspiracy" because it "allowed it to ***increase*** its production capacity."  *Kleen*

*Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927, 938 (7th Cir. 2018).  Plaintiffs urge the

Court to ignore *Kleen*'s on-point holding because it affirmed summary judgment, rather

than Rule 12 dismissal.  (Opp. 22.)  But what took the *Kleen* defendant until summary

judgment to show was undisputed (a mill opening) Plaintiffs have affirmatively alleged

4

here as to Clemens (a plant opening).   Contrary to *Kleen*, this case does not require significant and costly discovery because Plaintiffs' own allegations prove that Clemens increased its production capacity.   For these reasons, Clemens should be dismissed with prejudice now.

## II.   PLAINTIFFS' SOLE ALLEGED CUT DOES NOT SAVE THEIR CLAIMS.

Plaintiffs argue that Clemens' motion should be denied because, while they concede Clemens' supply increased almost every year, it supposedly decreased in 2011.  (Opp. 22.) But they ignore the three independent reasons why their allegation of a negligible 2% supply dip in one year out of ten fails to plausibly allege conscious parallelism.  (Clemens MTD 6-7.)

***First***, Plaintiffs ignore that the 2011 allegation is not well-pled.  Plaintiffs' own source—*Pork Powerhouses*—reveals that Clemens ***increased*** supply in 2011.  (Clemens MTD 6.)   Crucially, they do not dispute that the *Powerhouses* ranking published in ***September*** 2011 projected a "slight ***increase*** in sow number[s] in the next few months" from Hatfield, Clemens' predecessor.  (*Id.*)   That Plaintiffs are entitled to "all plausible inferences" misses the point.  (Opp. 22.)  The plain language of the document they rely on creates ***no*** plausible inference that Clemens cut supply in 2011, and they do not argue otherwise. *Montero v. Bank of Am., N.A.*, 2014 WL 562506, at *4 (D. Minn. Feb. 13, 2014) (dismissing when "the record directly contradicts Plaintiff's allegations").

***Second***, the 2011 allegation would not establish conscious parallelism even if it were well-pled.  Once again, Plaintiffs concede the very facts that require dismissal: six out of seven other Defendants did not cut production in 2011, and Clemens increased in

every year Plaintiffs allege the industry cut supply.  Plaintiffs respond (1) that Clemens' market share remained stable (which Plaintiffs' own allegations prove untrue) and (2) parallel action need not be "simultaneous." (Opp. 23.)  But the Court—not Clemens—held that Plaintiffs must plead "parallel conduct" that is "temporally proximate" to survive a motion to dismiss.  (Slip Op. 20-21.)  And if "parallel" and "proximate" mean anything, there must be some connection between Clemens' alleged cut and those of other Defendants *other than* allegedly occurring at *different times* over the span of a decade. Here, there is no such connection.

Courts have dismissed as insufficient allegations that are more parallel and proximate than what Plaintiffs here pled as to Clemens.  *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018) (conduct within six months too long to suggest parallel activity); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1022 (N.D. Cal. 2007) (conduct within three months fell "short of unusual, lockstep" behavior).  Plaintiffs' citation to *Broilers* proves the point.  There, plaintiffs alleged a specific conference in January 2008 that defendants attended, followed by five defendants cutting production in April 2008.  *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 782 (N.D. Ill. 2017).  Plaintiffs allege nothing close as to Clemens.

***Third***, Plaintiffs do not dispute that even if true, the 2011 cut is "negligible," representing at most a 2% dip in a single year of a supposed ten-year supply reduction conspiracy.  (Clemens MTD 7.)  They note that the "size of capacity reductions" in conspiracies can "var[y]" (Opp. 23 n.8), but they fail to cite a single authority holding that

a single negligible dip over a ten-year period plausibly pleads "behavior that would probably not result from chance." *Twombly*, 550 U.S. at 556 n.4.

Plaintiffs' self-defeating allegations cannot meet their pleading burden.

## III.   CLEMENS LACKED MOTIVE TO JOIN ANY CONSPIRACY.

Plaintiffs have not alleged a rational motive for Clemens, a hog processor, to join any supply-reduction conspiracy. (Clemens MTD 8-9.) Plaintiffs respond by arguing their conspiracy allegations only pertain to "*pork* prices, not *hog* prices." (Opp. 24.) This misses Clemens' point. A "scheme to limit hog supply" would increase hog prices, increasing input costs. (DPP ¶80, CIP ¶84, citing HFC Annual Report ("[H]igher hog costs resulting from a decreased supply" would "negatively impact margins.")) Plaintiffs cannot explain why Clemens would agree to restrict supply through hog reductions when it primarily buys hogs for processing. This requires Clemens' dismissal.

## IV.   IPPS DO NOT ALLEGE CLEMENS VIOLATED THE RULE OF REASON.

IPPs acknowledge a "hub-and-spoke" conspiracy requires "horizontal agreement among the spokes" to engage in anticompetitive conduct. (Dkt. 479 at 34.) They contend Clemens made such an agreement because it subscribed to Agri Stats and attended trade shows. That is insufficient to state a rule-of-reason claim. *Five Smiths, Inc. v. Natl. Football League Players Assn.*, 788 F. Supp. 1042, 1053 (D. Minn. 1992). Because Plaintiffs fail to point to a single allegation that Clemens ***agreed*** to restrain trade, rather than agreed to benchmarking, this claim must be dismissed.

## CONCLUSION

Clemens' motion to dismiss should be granted, with prejudice.

Dated: March 13, 2020                    Respectfully submitted,


                                         /s/ *Daniel E. Laytin, P.C.*

                                         Mark L. Johnson (#0345520)
                                         Virginia R. McCalmont (#0399496)
                                         Davida S. McGhee (#0400175)
                                         GREENE ESPEL PLLP
                                         222 South Ninth Street, Suite 2200
                                         Minneapolis, MN 55402
                                         (612) 373-0830
                                         mjohnson@greeneespel.com
                                         vmccalmont@greeneespel.com
                                         dwilliams@greeneespel.com

                                         Daniel E. Laytin, P.C. (*pro hac vice*)
                                         Christa C. Cottrell, P.C. (*pro hac vice*)
                                         Christina L. Briesacher (*pro hac vice*)
                                         Christina Sharkey (*pro hac vice*)
                                         KIRKLAND & ELLIS LLP
                                         300 North LaSalle
                                         Chicago, IL 60654
                                         312-862-2000
                                         dlaytin@kirkland.com
                                         ccottrell@kirkland.com
                                         christina.briesacher@kirkland.com
                                         christina.sharkey@kirkland.com

                                         *Counsel for Clemens Food Group, LLC*
                                         *(formerly Hatfield Quality Meats, Inc.) and*
                                         *The Clemens Family Corporation*