UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **In re Pork Antitrust Litigation**<br><br>This Document Relates To All Actions | Case No. 18-cv-1776 (JRT-HB)<br><br>**DEFENDANTS HORMEL FOODS CORPORATION AND HORMEL FOODS, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS** |

Claims against Defendants Hormel Foods Corporation ("HFC") and Hormel Foods, LLC[1] should again be dismissed, this time with prejudice.

First, Plaintiffs' amended class complaints ("Complaints") fail to provide "specific information" regarding steps taken by HFC to further the alleged conspiracy. (Docket 361, Order 20) Rather, the Complaints allege:

- HFC's pork-processing volumes declined in two discrete years by *de minimus* amounts – in 2009 when HFC was experiencing high hog costs and at one plant in 2014 during the PEDV outbreak. (DPP ¶¶128, 120)

- HFC "maintained" its sow herd "throughout the class period." (DPP ¶128)

- Regarding exports, the Complaints allege only that HFC "reported strong earnings from its pork exports in 2011." (DPP ¶128)

As to HFC, these alleged facts cannot meet the Court's directive for pleading viable claims.

---

[1] Plaintiffs never explain why Hormel Foods, LLC is a defendant, so it should be dismissed.

1

Second, the Complaints also concede that HFC is not vertically integrated into hog production and purchases more than 90% of its hogs from independent producers. (IPP ¶144 (chart); DPP ¶80) Yet Plaintiffs cannot explain why HFC would have participated in a conspiracy to raise its costs by restricting hog production. The Complaints never allege that HFC raised prices for its products or that it could pass through higher hog costs. To the contrary, Plaintiffs' brief accepts that HFC lost margin when hog costs increased. (Docket 479, Pls.' Omnibus Opp'n 16) Apart from HFC reporting "strong earnings from its pork exports in 2011" and "lower sales of pork products in 2013" (DPP ¶128), the Complaints allege nothing about HFC's pork sales or prices throughout the supposed conspiracy. Without any explanation as to how HFC could have benefitted, Plaintiffs provide no justification to send HFC into discovery to determine whether it conspired against its own interests. *See Sherr v. HealthEast Care System*, 262 F.Supp.3d 869, 883-84 (D. Minn. 2017) (dismissing Section 1 claim where "no economic motive" to conspire alleged).

Plaintiffs cannot salvage claims against HFC by ignoring their allegations that vertical integration effectuated the conspiracy by "allow[ing] the integrator Defendants to directly control the production and supply of pork through their wholly owned and operated farms where the hogs are raised, fed, and prepared for slaughter." (DPP ¶68) The Complaints devote pages to Defendants' supposed control over hog production (*id.* ¶¶67-80) and repeatedly offer sow numbers and hog-production data to plead the conspiracy (*see, e.g.*, *id.* ¶¶120-21), including HFC's comments about industry-wide hog supply (*see, e.g.*, *id.* ¶139). *Cf.* DPP ¶149 (alleging "Defendants' agreed upon scheme to

limit hog supply"). Restricting hog production was pleaded as the operative mechanism of the alleged conspiracy, excluding HFC as a plausible participant.

Third, even if the conspiracy centered on raising prices of processed pork products, *see* Pls.' Omnibus Opp'n 15-17, Plaintiffs cannot plausibly allege HFC's participation. The Complaints acknowledge that HFC did not exchange pricing or sales information through Agri Stats for its pork products. (IPP ¶¶23, 31, 38, 78-79) Plaintiffs allege that Agri Stats "*sales* reports allowed defendants to compare their prices" and "identify opportunities for Defendants to raise prices." (IPP ¶22 (emphasis added)) But HFC lacked the asserted means to do so. Over 10 pages of the IPP Complaint (pp. 9-21) allege that Agri Stats' sales reports were necessary to the alleged conspiracy. Plaintiffs' claim that HFC "participated in the processing reports that did include cost data," Pls.' Omnibus Opp'n 32, cannot obscure the fact that the Complaints never allege that HFC received the reports containing sales or pricing information.

Finally, Plaintiffs cannot avoid the documents that the Complaints quote and cite when trying to connect HFC to the alleged conspiracy. None of the cases Plaintiffs cite involved a court refusing to consider documents explicitly referenced and quoted in a complaint. (*See* Pls.' Omnibus Opp'n 16-17) Notably, Plaintiffs do not deny that the Complaints' source documents directly contradict their assertions by showing that HFC does not control hog production, that its executives' comments about hog supply referred to general market conditions not HFC's own actions, and that HFC did not materially decrease pork processing during the alleged conspiracy. Thus, materials embraced by the

Complaints demonstrate that Plaintiffs cannot cure the deficiencies that the Court identified in their previously dismissed complaints.

Claims against HFC should be dismissed with prejudice.

<table>
<tr><td>Date: March 13, 2020</td><td>

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Richard A. Duncan*
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com
bryan.washburn@faegredrinker.com

*Counsel for Defendants Hormel Foods Corporation and Hormel Foods, LLC*

</td></tr>
</table>

US.126829528.06