UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To: *All Actions* | Civil No. 18-cv-01776 (JRT/HB)<br><br>**REPLY BY INDIANA PACKERS CORPORATION IN SUPPORT OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINTS** |

Plaintiffs fail to allege *any* pork production cuts by Indiana Packers Corporation ("IPC"). Instead, their opposition[1] recasts arguments the Court previously rejected, fails to link IPC to any *per se* conspiracy, and insufficiently alleges that IPC's conduct violates the rule of reason. Having now repeatedly failed to adequately plead a conspiracy against IPC, Plaintiffs' claims should be dismissed with prejudice.

**I. Plaintiffs Fail to Allege Any IPC Production Cut.**

The amended complaints do not allege any act by IPC to reduce pork production, as required by the Court's Order. Plaintiffs do not contest this point. While their Opp. (at 3) states, without citation, that IPC "reduced its pork processing in 2012," Plaintiffs' counsel subsequently clarified that this statement is inaccurate: "It appears that this statement was included in error and we agree that the complaints do not contain an allegation that Indiana Packers reduced its pork processing in 2012." *See* Stilson Reply Decl., Exs. A-B. And there are no allegations that IPC reduced production at any other time. *See* Opp. at 12-15

---

[1] Joint Federal Opposition Brief (Dkt. 476) ("Opp"); Omnibus Opposition to Individual Motions (Dkt. 479) ("Omnibus Opp.").

(omitting IPC from list of purported supply cuts). Plaintiffs' hypothesis that "supply restrictions may also present themselves in the form of lesser supply increases," Omnibus Opp. at 25, fares no better as there are no such allegations as to IPC.

## II. The Court Previously Rejected Plaintiffs' Other "Conduct" Allegations.

Ignoring the absence of production cut allegations, Plaintiffs nonetheless assert that they "*do* allege specific conduct [against IPC] in furtherance of the alleged conspiracy." Omnibus Opp. at 24. But the factual allegations on which Plaintiffs rely are the same ones set forth in the prior complaints that the Court found lacking. Undeterred, Plaintiffs again focus on a sole local Indiana news article, asserting that IPC "discussed potential production cuts" to signal competitors and that "there is no pro-competitive justification for such an announcement." *Id.* at 25. The subject article says nothing of the kind.

**First**, Plaintiffs relied on this same Aug. 1, 2012 article—"<u>Food packing business steady so far despite drought</u>" (Dkt 446-1)—in the prior complaints to claim IPC's participation in the conspiracy. The Court rejected those allegations then, *see, e.g.*, Order at 22 ("None of these statements indicate that any individual Defendant was making cuts …."), and should do so again now.

**Second**, *the article nowhere refers to any IPC production cuts*, much less any "discussion" or "announcement" about potential cuts. Instead, it notes IPC's growth (increasing employment 30-40% over the past decade and production by 20%) and the potential impact of that summer's extreme weather. It quotes an IPC executive as stating "the impact has not been really significant as far as production as a whole" and that the

2

effect on supply in the coming months remains to be seen.  No production "announcement," no "discussion" of cuts, and thus no basis whatsoever to claim "signaling."

**Third**, Plaintiffs—without any legal support—assert that the article was pretext as there "is no reason for a private company to make such a statement publicly, no matter the form or media."  Omnibus Opp. at 25.  The article, which appeared in a local Indiana circular, addressed the potential impact on local food packing businesses of the severe drought and record-breaking heat in early summer 2012.[2]  Such extreme conditions would be a topic of great importance to the farming community in which IPC resides and operates.  Taking Plaintiffs' position at face value (and in the light most favorable to them), IPC could not publicly discuss such topics within its community for fear of subsequently being accused of antitrust conspiratorial conduct.  The resulting chilling effect on valuable public discourse would be extraordinary and simply is not the law.

**Finally,** IPC does not "simply ignore[]" (Omnibus Opp. at 26) Plaintiffs' remaining "plus factor" allegations, such as an AgriStats subscription and trade association participation.  IPC addressed these claims.  *See* Dkt. 446, Section III.  More importantly, the Court has already considered these same arguments and found them unavailing.  Order at 18 ("[P]lus factors without plausible allegations of parallel conduct are insufficient to establish an inference of an agreement.").

---

[2] "Hot and Dry Summer of 2012," National Weather Service (reporting Indianapolis area conditions, approximately 60 miles from IPC's plant) (Stilson Reply Decl., Ex. C).  *Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015) (approving judicial notice of National Weather Service materials).

### III. The Rule of Reason Claim Similarly Fails.

Defendants' joint briefs show that the Indirect Purchaser Plaintiffs' ("IPP") "rule of reason" claim fails as a matter of law. But the claim is even more flawed as to IPC because, like the *per se* allegations against IPC, it consists of nothing other than conjecture and bald assertions.

Plaintiffs rely on IPC's discovery disclosures for the unremarkable proposition that IPC participated in AgriStats. *See* Omnibus Opp. at 36. Those disclosures simply list IPC employees who had oversight of IPC's data submissions to AgriStats and the USDA. *See* IPP ¶174. From this, IPPs claim they are entitled to an inference that IPC participated in an anticompetitive "agreement" to use AgriStats data to set prices.

But to state a claim Plaintiffs must allege an agreement that unreasonably restrains trade. "[G]eneral allegations of conspiracy, without a statement of the facts constituting the conspiracy, its objects and *accomplishment* are inadequate to state a cause of action." *Insignia Sys., Inc. v. News Corp., Ltd.*, 2005 WL 2063890, *1 (D. Minn. 2005) (emphasis added). And the anticompetitive effect in a rule of reason case must be one "that is intended to harm or unreasonably restrain competition and that actually causes such injury to competition." *Five Smiths, Inc. v. NFL Players Ass'n*, 788 F. Supp. 1042, 1051 (D. Minn. 1992).

Plaintiffs' claim against IPC necessarily fails because it does not plausibly allege how IPC's AgriStats subscription causes injury to competition. Plaintiffs state that IPC can be held liable because they "have pleaded extensive evidence of anticompetitive effect to the market as a whole." Omnibus Opp. at 36 (referencing Opp'n, Section VI.D.2.). But

this only begs the question as Section VI.D.2 points to complaint allegations of higher prices *resulting from the alleged general pork conspiracy*. *See* Opp. at 59-63 (citing IPP ¶¶127-28, 129-32 & 135-38). Those allegations are from the section of the IPP complaint titled "Defendants' conspiracy had the intended effect of raising prices of pork during the class period." These price effects relate to the alleged impact of the *per se* conspiracy, not to any harm caused by AgriStats or IPC's use of AgriStats. Indeed, IPC is not mentioned in that entire section of the IPP's complaint.[3]

The Court's Order acknowledged that AgriStats may be a plus factor for a *per se* conspiracy claim or alternatively could be the focus of an independent rule of reason claim. Order at 18 n.7. Here, though, Plaintiffs try to have it both ways by basing a claim of injury to competition in its rule of reason case on allegations of price effects from its *per se* case. That is especially improper with respect to IPC because—as set forth above—*Plaintiffs do not allege facts linking IPC to the alleged per se conspiracy*. Having no *per se* case against IPC, Plaintiffs should not be allowed to back-door a rule of reason claim against it based on the same allegations.

After jettisoning the *per se* case allegations, Plaintiffs are left only arguing that they "have also specifically alleged that the information exchange agreements led to increases in pork prices." Opp. at 61 (citing IPP ¶¶280-83). But the cited paragraphs do not include any *factual* material. The sole allegation on price effects (¶283) states, in its entirety, "[t]he information-exchange agreement has had the effect of (1) reducing and suppressing

---

[3] Moreover, IPPs exclude IPC from those defendants they claim had "significant" market share or vertically integrated operations that facilitated the conspiracy. IPP ¶¶144-46, 150.

competition among Defendants in the market for pork in the United States and (2) inflating the prices of pork during the Class Period."

Such *ipse dixit* does not plausibly allege harm caused by IPC's AgriStats subscription, *see Insignia*, 2005 WL 2063890, at *4 (broad, unsupported allegations of actual detrimental effects in rule of reason case that "in-store information and advertising has been reduced and that higher prices have resulted" are inadequate to withstand a motion to dismiss), and, importantly, does not link IPC to any such effects. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

\*   \*   \*

Having failed multiple times to articulate any plausible allegation that IPC was part of a decade long antitrust conspiracy or violated the rule of reason, IPC should be dismissed with prejudice.

Dated: March 13, 2020                                    Respectfully submitted,

*s/ Jaime Stilson*
Jaime Stilson (#392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402-1498
(612) 492-6746
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600

bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation*