UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Civil No. 18-1776 (JRT/HB)<br><br>**REPLY IN SUPPORT OF JBS USA FOOD COMPANY'S MOTION TO DISMISS THE AMENDED COMPLAINTS** |

**INTRODUCTION**

Plaintiffs' Opposition confirms that the Amended Complaints[1] lack any specific, factual allegations plausibly connecting JBS USA Food Company ("JBS USA") to the purported supply-reduction conspiracy.

*First*, Plaintiffs argue that the Amended Complaints "detail a conspiracy rooted in supply restrictions in which JBS participated." Omnibus Opp. 13.[2] But that sweeping declaration aside, Plaintiffs' Opposition confirms that they allege *JBS USA undertook its first and only production cut in 2016*, *several years after the alleged conspiracy began* and in a year in which no other Defendant is alleged to have cut production. *See* JBS Mem. (Dkt. 449) at 2-4. Apart from that alleged cut, JBS USA is only alleged to have unremarkably reported increased pork exports in 2011 during a period in which Plaintiffs acknowledge global demand for pork was increasing. *See id*. 4-5.

*Second*, Plaintiffs readily concede that JBS USA was not vertically integrated until its acquisition of certain Cargill assets in late 2015, Opp. 26, and thus was a hog *purchaser*, not a hog *producer*, through the *first six years* of the alleged "agreed upon scheme to limit hog supply," DPP ¶149. On that basis alone, JBS USA's participation in a purported conspiracy beginning in 2009 is implausible, as JBS USA had neither the means nor the economic motive to limit the supply of hogs throughout most of that period.

---

[1] Defined terms herein have the same meaning as set forth in Defendants' Joint Reply (Dkt. 481) ("Joint Reply").

[2] In their Amended Complaint, IPPs *did not add any* new, specific allegations that JBS USA engaged in any supply-reducing acts, thereby conceding the lack of parallel conduct.

## ARGUMENT

**A.     Plaintiffs' Opposition Confirms that JBS USA Did Not Participate in Any Supply-Reduction Conspiracy.**

Plaintiffs' Opposition confirms that their attempt to allege with "specificity which Defendants reduced production during which years," has yielded, at best, just *two* supply-related allegations involving JBS USA, *five* years apart, and not "reasonably proximate in time and value" to the alleged supply reductions by other Defendants. *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *8 (D. Minn. Aug. 8, 2019) (citation omitted) ("Order"); *see also* Opp. 13-14; JBS Mem. 2-5. On this basis alone, JBS USA's participation in the alleged decade-long conspiracy is implausible.

*First*, Plaintiffs do not dispute that JBS USA allegedly cut supply *just once* throughout the entire conspiracy by "reduc[ing] the number of sows it produced in 2016." DPP ¶127. Even if that allegation was true (and it is not), Plaintiffs concede that *no other Defendant* is alleged to have cut production in that year (or even during the surrounding years). *See* Opp. 14; JBS Mem. 1-3; Mem. (Dkt. 439) 8-9, 24. The *single* alleged production cut by JBS USA years after the conspiracy began thus only underscores the lack of any remotely parallel conduct by the company. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018) (finding conduct "executed under dissimilar circumstances and separated by six months, did not constitute parallel conduct").

But even that sole JBS USA supply cut allegation is false. JBS Mem. 3. Plaintiffs themselves concede that the *Pork Powerhouses* reports they cite show JBS USA *increased* the number of sows in its inventory in 2016. Omnibus Opp. 13. Given this concession,

Plaintiffs first argue that the Court must ignore the *Pork Powerhouses* reports even though Plaintiffs repeatedly cite and reference the reports throughout the Amended Complaints. But that is not the law. *See* Joint Reply 13. Plaintiffs then urge the Court to compare numbers from *two different sources* reporting sow figures *at different times of the year*. *See* Omnibus Opp. 13.[3] Not only is such an apples-to-oranges comparison illogical but, at best, it merely shows that JBS USA's sow inventory fell by 7,000 from 2015 to 2016 – a fraction of the approximately 3.8 million sows held in inventory by major producers in 2016. *Id*; Kvinge Decl. (Dkt. 435), Ex. 2. Moreover, this minor reduction in no way cures the lack of any allegation that other Defendants reduced supply, by a reasonably proximate value or otherwise, within years of that purported decrease. *See* JBS Mem. 1, 3; Order *8 ("plaintiffs must allege conduct that is 'reasonably proximate in time and value'").

*Second*, while Plaintiffs make a passing reference to a single export-related allegation as to JBS USA, *see* Omnibus Opp. 13, they do not dispute that the allegation is entirely too vague to establish conduct that is remotely parallel to acts undertaken by other Defendants or contrary to JBS USA's independent self-interest, *see* JBS Mem. 4-5; Joint Reply 11-12, 18. To the contrary, "Plaintiffs do not dispute that demand increased during the class period," Opp. 32; and the Amended Complaints allege that JBS specifically remarked about the "improvement and increase in consumption in the emergent markets" during this period, DPP ¶149, which would explain any increase in exports.

---

[3]  *See* https://jbss.infoinvest.com.br/financial-information/annual-reports/2017 (showing JBS S.A. 2016 annual report was published in May 2017); https://www.agriculture.com/livestock/pork-powerhouses/pork-powerhouses-2016-glut-of-pigs (showing 2016 *Pork Powerhouses* report was published in September 2016).

3

Unable to allege specific supply reductions, Plaintiffs resort to the conclusory assertion that the Amended Complaints "detail a conspiracy rooted in supply restrictions in which JBS participated." Omnibus Opp. 13. Tellingly, however, that assertion is not followed by any alleged "specific production cuts" by JBS USA, but instead by "largely vague" statements that "refer to the industry as a whole" that the Court already found do not "indicate that any individual Defendant was making cuts." Order *8-9. In fact, the very same allegations that Plaintiffs reference were raised in their prior complaints and, thus, were already considered by the Court. *See* Kvinge Decl. (Dkt. 435), Ex. 1 (redline comparison of DPP first and third amended complaints).

And although Plaintiffs provide no response in opposition, the very same allegations are shown in JBS USA's opening brief to be merely public statements about the industry made during various earnings conference calls by JBS USA's Brazilian parent, JBS S.A. JBS Mem. 7-9. Plaintiffs also do not dispute that the statement cited from the 2016 annual report published by JBS S.A., allegedly showing that JBS USA's purported 2016 "production restriction had the intended effect," DPP ¶127, in fact, appears in the "Economic Scenario" section of that report and covers only general market conditions as opposed to any conduct undertaken by JBS USA, *see* JBS Mem. 3-4.

**B.    Plaintiffs' Opposition Concedes that JBS USA Was a Hog Purchaser, Not Producer, Throughout Most of the Alleged Conspiracy.**

Plaintiffs concede that JBS USA was never vertically integrated and had virtually no hog production *prior to late 2015* – approximately *six years* after the conspiracy allegedly began. Opp. 26. Further, Plaintiffs do not even contest that, as a company that

4

purchased essentially all of the hogs it processed from independent third parties between 2009 and late 2015, JBS USA was *disincentivized* from having hog prices rise, by means of reducing hog supply or otherwise, thereby rendering JBS USA's participation in any alleged "agreed upon scheme to limit hog supply" utterly implausible. *See* DPP ¶149; JBS Mem. 5-7; Mem. 28-29; *see also Am. Channel, LLC v. Time Warner Cable, Inc.*, 2007 WL 142173, at *7 (D. Minn. Jan 17, 2007) (dismissing antitrust case because no plausible motive to conspire alleged); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1109 (7th Cir. 1984) (holding "it is inherently implausible that Ford, as a buyer . . . would conspire in order to allow its new carrier, [another defendant], to charge noncompetitive prices . . . in essence, that Ford conspired to injure itself").

### C. Plaintiffs' Remaining Allegations Do Not Remotely Suggest JBS USA Participated in the Alleged Conspiracy.

The remaining sparse allegations as to JBS USA were virtually all present in Plaintiffs' prior complaints and remain insufficient to move the claims against JBS USA across the plausibility line. While Plaintiffs again raise JBS USA's acquisition of certain Cargill assets in late 2015, Plaintiffs do not deny that they have never alleged this acquisition was made in furtherance of any conspiracy. *See* JBS Mem. 9 (citing DPP ¶¶76, 85-86). And contrary to Plaintiffs' conclusory assertion that "trade associations and industry groups were . . . opportunities that Defendants, including JBS, exploited in furtherance of their conspiracy," Omnibus Opp. 14-15, such mere "opportunit[ies] to communicate . . . are insufficient alone to suggest a conspiracy," *Shimota v. Wegner*, 2016 WL 1254240, at *10 (D. Minn. Mar. 29, 2016) (Tunheim, J.) (citation omitted). Critically,

5

Plaintiffs do not dispute that they have never alleged a connection between any supply-reducing act and JBS USA's participation in any trade association or industry group meeting.  *See* JBS Mem. 9; Mem. 38-39.

Given that allegations about JBS USA get them nowhere, Plaintiffs fall back on the argument that the mere "inclu[sion of JBS USA] in the definition of 'Defendants,'" is a sufficiently specific allegation to plausibly connect JBS USA to a purported decade-long conspiracy, *see* Omnibus Opp. 15, and subject it to costly antitrust discovery.  But the Court has already rejected that same group pleading tactic as insufficient.  Order *8 ("Without more specific facts, Plaintiffs' allegations that the Defendants engaged in production cuts are nothing more than bare assertions."); *see also Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831-32 (D. Minn. 2012) ("[a] complaint which lumps all defendants together and does not sufficiently allege who did what to whom fails to state a claim").

### D. IPPs Do Not Allege that JBS Violated the Rule of Reason Through Use of Agri Stats Information.

As noted, IPPs added no JBS-specific supply-reduction allegations in their Amended Complaint.  *Supra* n.2.  While IPPs included a *single* JBS-specific allegation about its use of Agri Stats in support of their new Rule of Reason claim, *see* IPP ¶39, they do not dispute that the alleged quote, at most, confirms Agri Stats information was truly anonymous to JBS USA and reflected continuing pricing variation during the alleged conspiracy, *see* Mem. 48.  Plaintiffs' failure to allege any other specific facts regarding JBS USA's alleged use of Agri Stats information to match and inflate prices, as opposed

6

to its mere participation in Agri Stats, requires dismissal of that Rule of Reason claim as to JBS. *See also* Joint Reply 24-26.

## **CONCLUSION**

For the reasons stated herein, JBS USA respectfully submits the claims against it should be dismissed with prejudice.

Dated: March 13, 2020

*/s/ Donald G. Heeman*
Donald G. Heeman (#286023)
Jessica J. Nelson (#347358)
Randi J. Winter (#391354)
SPENCER FANE LLP
150 South Fifth Street, Suite 1900
Minneapolis, MN 55402
Telephone: (612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
David B. Adler (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
davidadler@quinnemanuel.com

*Counsel for JBS USA Food Company*

7