UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | No. 18-cv-1776 (JRT/HB) |
| This Document Relates To: All Actions | **SMITHFIELD'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |

This Court aptly has stated the test for pleading a conspiracy through circumstantial evidence. Plaintiffs must allege "behavior that would probably not result from . . . independent responses to common stimuli." Order Granting Motion to Dismiss at 17 n.6 (Dkt. 361) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 n.4 (2007)). Here, the "stimuli" that prompted Smithfield to reduce its hog herd (as shown in statements partially quoted in the Complaints) included disastrous market conditions resulting from the Great Recession, record high feed prices, and the Swine Flu, which cratered demand for pork. Mot. 4 (Dkt. 454). The result was a perfect storm that caused Smithfield to lose money on every hog it raised. A billion dollars in losses over two years. Mot. 5. Any rational business acting independently would cut its losses by reducing money-losing production in those circumstances. An inference of conspiracy based on production cuts in this context thus defies common sense and, in *Twombly* terms, is implausible.

It is instructive to examine what Plaintiffs are not disputing here: (i) the obvious alternative explanation for Smithfield's conduct; (ii) Smithfield's duty to disclose to public investors the facts surrounding its losses, the steps it was taking to mitigate those losses, and its outlook for the future; and (iii) Smithfield exported more pork to China after it was wholly acquired by a Hong Kong-based parent company and during a time when market

prices were considerably higher in China. Perhaps most importantly for this Motion, Plaintiffs do not dispute that all of these explanations are part of the Complaints' factual allegations and the materials cited therein.

Under *Twombly*, that should end the case against Smithfield. The facts alleged simply do not support a plausible inference of conspiracy because they point to an "obvious alternative explanation" for Smithfield's alleged conduct. *Twombly*, 550 U.S. at 567-68 (proposed inference of conspiracy is not plausible where "we have an obvious alternative explanation" to a conspiracy).

But Plaintiffs say the Court is constrained by the law from considering the context for Smithfield's alleged conduct and obvious benign explanations for that conduct. Opp. 9 (Dkt. 479). Plaintiffs argue that the Court may only consider the "independent business reasons" for Smithfield's conduct at the summary judgment stage. *Id.* But that is exactly the *opposite* of the Supreme Court's instructions in *Twombly* and *Iqbal*.

A complaint must plead allegations of unlawful conduct that "[]cross the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. To determine whether an inference of an antitrust conspiracy is plausible, courts must consider—at the pleading stage—whether there are "obvious alternative explanation[s]" for the alleged conduct. *Id.* at 567. That is not a heightened pleading requirement; that is the baseline pleading requirement. *Id.* at 570. Antitrust allegations are not plausible under *Twombly* when the alleged conduct is "not only compatible with, but indeed . . . more likely explained by, lawful, unchoreographed free-market behavior." *Ashcroft v. Iqbal,* 556 U.S. 662, 680 (2009).

Plaintiffs can point to no allegations that are inconsistent with the obvious nonconspiratorial explanation for Smithfield to reduce its production during the 2008-2011 time period. And they offer no authority or explanation as to how a conspiracy can be inferred in the face of an obvious alternative explanation.

Plaintiffs argue that considering alternative explanations would improperly "shift the motion to dismiss standard from plausibility to probability." Opp. 9. Nonsense. The Supreme Court set forth the plausibility standard in *Twombly*, an antitrust conspiracy case in which the Court squarely held that conspiracy cannot be inferred where there is a benign alternative explanation for the alleged conduct. 550 U.S. at 567-68. The Eighth Circuit's decisions are in accord. *See, e.g., McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) ("[c]ourts should consider whether there are lawful, 'obvious alternative explanation[s]' for the alleged conduct" at the motion to dismiss stage) (quoting *Iqbal*, 556 U.S. at 682); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 824 (8th Cir. 2018) ("[a]n inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged") (citation omitted). Likewise, this Court has recognized this fundamental pleading standard. *See, e.g., Meldahl v. City of Brooklyn Ctr.*, No. 14-4465, 2015 WL 6962841, at *8-10 (D. Minn. Nov. 9, 2015) (Tunheim, C.J.) ("consider[ing] whether obvious alternative explanations exist" at the motion to dismiss stage); *J.S. v. Saint Paul Acad. and Summit Sch.*, No. 11-1537, 2012 WL 591623, at *3 (D. Minn. Feb. 22, 2012) (dismissing claim where plaintiff "fails to address the 'obvious alternative explanation'" for the alleged conduct) (citation omitted).

In sum, Plaintiffs are patently wrong to suggest that the consideration of lawful alternative explanations is improper on a motion to dismiss where such facts are included in the Complaints or in documents relied upon in the Complaints. Smithfield is not asking the Court to determine whether it is more likely than not that Smithfield acted lawfully. Opp. 9-10 (misrepresenting Smithfield's argument). Smithfield is simply arguing that Plaintiffs have failed to raise a plausible inference of conspiracy where, as here, the alleged conduct is what "one would expect" from a defendant acting independently in those circumstances. *Meiners*, 898 F.3d at 824; *see also, e.g., Mayor and City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 138 (2d Cir. 2013) (dismissing antitrust allegations as implausible because "abandoning bad investments was not just *a* rational business decision, but the *only* rational business decision").

Finally, Plaintiffs also reiterate that the Court should infer Smithfield participated in an antitrust conspiracy because it allegedly attended trade shows and received benchmarking data. Opp. 8-9. Those are lawful activities, and Defendants' Joint Brief to Dismiss Plaintiffs' Federal Claims, at 37-40 (Dkt. 439), explains why Plaintiffs' attempt to draw a conspiratorial inference is absolutely wrong-headed. *See also Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1049 n.5 (D. Minn. 1992) ("A trade association is not a 'walking conspiracy' of its members.").

For the reasons stated herein, in Smithfield's Individual Brief, and in Defendants' Joint Briefs, Smithfield respectfully requests that all claims against it be dismissed with prejudice.

Date: March 13, 2020  /s/ *John A. Cotter*
John A. Cotter (134296)
John A. Kvinge (0392303)
LARKIN HOFFMAN DALY & LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 896-3340
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
(214) 698-3370
brobison@gibsondunn.com

*Counsel for Smithfield Foods, Inc.*

5