# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:  All Actions | No. 0:18-cv-1776-JRT-HB<br><br>**DEFENDANT AGRI STATS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** |

## TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................ 2

    I.    Plaintiffs Do Not Allege That Agri Stats Knew of or Benefitted from A Supposed Conspiracy to Reduce Pork Output. ............................... 2

        a.    Plaintiffs Allege Only that Agri Stats Provided Benchmarking Services. ................................................................ 2

        b.    Plaintiffs Do Not Allege Facts Suggesting That Agri Stats Would Benefit from an Agreement to Reduce Pork Output. ............ 5

    II.    Plaintiffs Fail To Link Agri Stats To Any Putative Reduction in Pork Output. ........................................................................................... 5

CONCLUSION ............................................................................................................. 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................ 1, 4

*Kleen Prods. LLC v. Georgia-Pacific LLC*,
 910 F.3d 927 (7th Cir. 2018) ................................................................................. 3

*In re Brand Name Prescription Drugs Antitrust Litig.*,
 288 F.3d 1028 (7th Cir. 2002) ............................................................................... 3

*In re Plasma-Derivative Therapies Antitrust Litig.*,
 764 F. Supp. 2d 991 (2011) ................................................................................... 4

*In re Musical Instruments & Equip. Antitrust Litig.*,
 798 F.3d 1186 (9th Cir. 2015) ............................................................................... 5

*In re Processed Egg Prods. Antitrust Litig.*,
 821 F. Supp. 2d 709 (E.D. Pa. 2011) .................................................................... 6

*Jung v. Assoc. of Am. Med.l Colleges*,
 300 F. Supp. 2d 119 (2004) ................................................................................... 4

*Maple Flooring Mfg. Ass'n v. United States*,
 268 U.S. 563 (1925) ............................................................................................ 3, 4

*Penne v. Greater Minneapolis Area Bd. of Realtors*,
 604 F.2d 1143 (8th Cir. 1979) ............................................................................... 4

*United States v. U.S. Gypsum Co.*,
 438 U.S. 422 (1978) ............................................................................................ 1, 4

## INTRODUCTION

Defendant Agri Stats, Inc. ("Agri Stats") joins the reply memoranda filed in support of the joint motions to dismiss (Dkts. 481 and 483) and submits this reply memorandum in support of its individual motion to dismiss.

Plaintiffs do not dispute that: (1) they must allege that Agri Stats both knew of and participated in a putative conspiracy to reduce pork output, Plfs.' Opp'n to Individual Mots. to Dismiss (Dkt. 479) ("Opp'n") at 26-27; (2) "an account of a [Agri Stats'] commercial efforts" does not plausibly suggest an unlawful agreement, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); and (3) factual allegations must connect the information in Agri Stats' reports to the putative conspiracy to reduce pork output. Opp'n at 29-30. Instead, they frame the issue as whether they have alleged that Agri Stats was more than "an unwitting tool for the [alleged] conspirators." *Id*. at 30. That is not the standard.

Rather than explicating the factual assertions showing that Agri Stats knowingly participated in a per se unlawful agreement, Plaintiffs instead recount how Agri Stats, like any benchmarking service, provides performance metrics allowing customers to compare their operations to rivals. This widely-accepted practice enhances competition and benefits consumers. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978). Plaintiffs, therefore, must do more than describe Agri Stats' "commercial efforts," which are as consistent with lawful economic activity as with an alleged conspiracy. Their opposition fails to do so because their Complaints allege no facts

plausibly suggesting that Agri Stats knowingly joined a putative agreement to reduce output of a product it neither produces nor sells.

Additionally, rather than explaining how Agri Stats pork reports contain forward-looking production levels, Plaintiffs reaffirm that those reports contain certain cost, sales, and profit information related to the pork business. They do not explain how these data could be used to predict forward-looking pork production levels. Without such allegations, Plaintiffs fail to link Agri Stats to a purported conspiracy to limit pork output. Plaintiffs' Complaints[1] therefore, should be dismissed with prejudice.[2]

## ARGUMENT

### I. Plaintiffs Do Not Allege That Agri Stats Knew of or Benefitted from A Supposed Conspiracy to Reduce Pork Output.

#### a. Plaintiffs Allege Only that Agri Stats Provided Benchmarking Services.

Plaintiffs assert that "Agri Stats . . . knowingly provided Defendants reports that they used for their conspiracy of fixing the price of pork," Opp'n at 30, and cite three assertions in support: (1) Agri Stats purportedly "emphasized" to customers that its data could be used to restrict production, *Id.* at 27; (2) the data included in Agri Stats reports is the "type" of information that could be used to support an anticompetitive agreement, *id.*; and (3) Agri Stats supposedly "knew that Defendants were able to deanonymize the data

---

[1] Agri Stats uses in this reply the same references and abbreviations from its opening memorandum. *See* Dkt. 461 n.1.

[2] Plaintiffs address Agri Stats' argument on their rule of reason claim in their opposition to the joint motion. Agri Stats joins the joint reply memorandum on that issue. *See* Dkt. 481.

and yet continued to provide its detailed reports." *Id.* None of these assertions plausibly suggest Agri Stats knew of or joined an unlawful agreement.

*First*, Plaintiffs cite a 2008 statement touting the benefits of benchmarking that "the ultimate goal is increasing profitability—not always increasing the level of production." *Id.* That Agri Stats seeks to help its customers be more profitable "is hardly an earthshattering insight." *Kleen Prods. LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 939 (7th Cir. 2018) (statement that "industry 'should say no on deals' that, though competitive, are not profitable" does not support conspiracy inference). That is the purpose of any benchmarking service, and the Sherman Act does not prohibit it. *Maple Flooring Mfg. Ass'n v. United States*, 268 U.S. 563, 584 (1925). To state a claim against Agri Stats, Plaintiffs must allege that Agri Stats made a *conscious* commitment to the putative agreement. Asserting that Agri Stats provides companies with data to improve their commercial results falls far short. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 288 F.3d 1028, 1033 (7th Cir. 2002) (refusing to infer conspiracy from "a careless failure to tumble [in]to the nature of one's suppliers' business methods").

*Second*, Plaintiffs contend that the type of information in Agri Stats reports *could be* used to facilitate an agreement to reduce pork output. Opp'n at 27. That, of course, says nothing about Agri Stats' conduct or the use of the reports by others. Moreover, the authorities Plaintiffs cite are inapposite. In each, the complaints included specific factual

allegations that the party facilitating the information exchange *consciously committed* to furthering an anticompetitive agreement.[3] Such allegations are lacking here.

Plaintiffs, instead, describe Agri Stats' business: Agri Stats collects, audits, and disseminates reports containing anonymized data and sometimes "[holds] communications with Defendants regarding the contents of the reports." *Id.* at 29-30. That recites a benchmarking firm's commercial conduct,[4] which, in *Twombly*'s words, "stays in neutral territory" and does not permit a conspiracy inference. *Twombly*, 550 U.S. at 557. Plaintiffs also contend that "Agri Stats' exchange of production, sales, and profit data constitutes exactly the kinds of sensitive exchange of business data that suggest commitment to an anticompetitive scheme." Opp'n at 30.[5] But that legal conclusion is a frontal assault on information exchanges generally. Such exchanges are not invariably anticompetitive. *Gypsum*, 438 U.S. at 441 n.16; *Maple Flooring*, 268 U.S. at 584. Plaintiffs' *ipse dixit* does not alter that rule.

---

[3] *In re Plasma-Derivative Therapies Antitrust Litigation* involved specific allegations that the trade association exchanging information knew the information was false and intentionally misleading. 764 F. Supp. 2d 991, 1003 (2011). *Penne v. Greater Minneapolis Area Board of Realtors* held that the trade association at issue allegedly engaged in "punitive splits," "blacklisting," and "deprecatory statements," all of which demonstrated a conscious commitment to engage in anticompetitive behavior. 604 F.2d 1143, 1148 (8th Cir. 1979). Finally, *Jung v. Association of American Medical Colleges* specifically connected a trade association survey with two other standard-setting metrics used to effect the conspiracy alleged. 300 F. Supp. 2d 119, 166-67 (2004).

[4] Plaintiffs claim that "[b]enchmarking of the type undertaken by Agri Stats and its co-conspirators here reduces strategic uncertainty in the market and changes the incentives for competitors to compete" but cite no authority for the proposition and allege no facts suggesting Agri Stats' reports reduced any subscriber's incentive to compete.

[5] Plaintiffs do not allege what characteristics, or combination thereof, comprise "exactly the kinds of sensitive exchange of business data that suggest commitment to an anticompetitive scheme." Without such allegations, their Complaints are defective.

*Third*, Plaintiffs' assertion that Agri States "knew" its customers could decrypt its anonymous data reports, CIPP ¶¶ 84-90, is also a conclusion. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). But even crediting those averments, Plaintiffs identify no instance in which the anonymity of the Agri Stats reports was compromised, much less that Agri Stats learned of that fact. These vague assertions likewise do not plausibly suggest knowing participation in an unlawful agreement.

### b. Plaintiffs Do Not Allege Facts Suggesting That Agri Stats Would Benefit from an Agreement to Reduce Pork Output.

Plaintiffs ignore another critical point: Agri Stats does *not* compete with the pork-integrator defendants. It neither produces nor sells pork. It is separately owned and provides only a benchmarking service. Plaintiffs have not alleged any motive for Agri Stats to join a putative conspiracy, and instead contend – again, without factual allegations – that "Agri Stats received far more than market rates for its benchmarking services." Opp'n at 29. Setting aside that Plaintiffs never identify the "market rate," that Agri Stats supposedly charges more for its services than other, unidentified benchmarking firms says nothing. Making profits neither violates the antitrust laws nor suggests any motive to conspire because a "motive for increased profits always exists." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.8 (9th Cir. 2015).

### II. Plaintiffs Fail To Link Agri Stats To Any Putative Reduction in Pork Output.

Plaintiffs' opposition never addresses that the Amended Complaints fail to plead, aside from a few conclusory averments, that Agri Stats reports contain forward-looking

- 5 -

production information that could facilitate an agreement to reduce pork output.  *See In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 752 (E.D. Pa. 2011) (dismissing Section 1 claim as "unsupported" when plaintiffs failed to allege "specific facts" in support of "bald assertion[s]" about participation in a conspiracy).

Instead of addressing this deficiency, the Opposition reiterates that Agri Stats reports contain "granular" information related to (1) the prices of pork products, (2) profits made on the sale of pork product, and (3) the costs associated with pork production and processing.  These assertions say nothing about forward-looking production levels.  Plaintiffs' only reference to "forward looking" information in the opposition is that the data in Agri Stats reports "was current and forward looking, including sales data that was less than two weeks old."  Opp'n 27 (citing CIPP ¶¶ 19-57).[6]  None of the 39 paragraphs cited allege forward-looking information in Agri Stats reports.  As such, Plaintiffs again fail to link Agri Stats to a supposed conspiracy to reduce pork output.

---

[6] Plaintiffs claim that pork is a commodity.  DPP ¶ 172; CIPP ¶ 187.  The Dow Jones Industrials Average's trajectory over the last few weeks illustrates the pitfalls of making forward-looking business judgments in commodities based on two-week old data.

- 7 -

## CONCLUSION

For the foregoing reasons, and those stated in Defendants' joint motions, the claims against Agri Stats should be dismissed with prejudice.

Respectfully submitted,

DATED: March 13, 2018

/s/ Peter H. Walsh
Peter H. Walsh
HOGAN LOVELLS US LLP
80 Eighth Street
Suite 1225
Minneapolis, Minnesota  55402
Tel: (612) 402-3000
Fax: (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts III (*Pro Hac Vice*)
Justin W. Bernick (*Pro Hac Vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Agri Stats, Inc.*