## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-1776 (JRT/HB) |
| This Document Relates to:<br><br>ALL ACTIONS | |

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Plaintiffs[1] hereby request that the Court take judicial notice of the attached Executive Order 13917, dated April 28, 2020, titled, "Delegating Authority Under the Defense Production Act With Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19 (the "Executive Order").[2]

## I.   BACKGROUND

Defendants are pork processors and are in the business of slaughtering hogs to produce edible meat products. Plaintiffs have alleged that Defendants engaged in a conspiracy to restrain the supply of pork by coordinating output and limiting production, which illegally increased pork prices in the United States. *See, e.g.*, IPP, ¶¶ 98-123.[3] While moving to dismiss, Defendants have challenged the plausibility of the alleged conspiracy since some Defendants do not own hogs and thus do not have a "shared motive to conspire." *See, e.g.*, Defs.' Mot. at 26-29.[4]  Defendants have also suggested that the capacity restrictions alleged by Plaintiffs are too limited to support the conspiracy, opining that the conspiracy is thus implausible.

---

[1] Throughout this Request, "Plaintiffs" refers to all class plaintiffs (the Consumer Indirect Purchaser Plaintiffs, the Commercial Indirect Purchaser Plaintiffs, the Direct Purchaser Plaintiffs), as well as Winn Dixie and Puerto Rico.

[2] The Executive Order is attached to this pleading as Exhibit 1.

[3] "IPP, ¶¶__" refers to Consumer Indirect Purchaser Plaintiffs' Second Amended Consolidated Class Action Complaint, filed under seal on Nov 6, 2019.

[4] "Defs.' Mot." refers to Memorandum of Law in Support of Defendants' Joint Motion to Dismiss the Federal Law Claims in Plaintiffs' Amended Complaints, Jan. 15, 2020, ECF No. 434.

Plaintiffs now request that the Court take judicial notice of the President's Executive Order, which emphasizes the stark effects even a small reduction in output has on the supply chain. The Executive Order states that because of "the high volume of meat and poultry processed by many facilities, any unnecessary closures can quickly have a large effect on the food supply chain . . . . under established supply chains, the closure of a single meat or poultry processing facility can severely disrupt the supply of protein to an entire grocery store chain." Ex. 1 at 26313. These statements are consistent with Plaintiffs' allegations that by coordinating output and limiting production, Defendants were able to manipulate pork prices on a statistically significant scale.

Under Rule 201, a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Here, Plaintiffs are requesting that the Court take judicial notice that the President issued an Executive Order on April 28, 2020 and the Executive Order contains statements that are consistent with the Plaintiffs' allegations that the Defendant processors can readily affect domestic pork supply by reducing output. *See. e.g.*, IPP, ¶ 6 (explaining Defendants' conspiracy was executed by "coordinating output and limiting production").

It is appropriate for the Court to take judicial notice that this Executive Order was issued on April 28, 2020. It is a matter of public record and no party can reasonably dispute its authenticity. The Federal Register has recorded the Executive Order and it contains the President's signature. *See* Exhibit 1.

Courts regularly take judicial notice of Executive Orders that are relevant to a case. *See Democracy Forward Found. v. White House Office of Am. Innovation*, 356 F. Supp. 3d 61, 69 n.6 (D.D.C. 2019), citing *Dennis v. United States*, 339 U.S. 162, 169 (1950) (explaining that the Court could "[o]f course" take notice of a particular Executive Order relevant to the case). Moreover, it is indisputable that a Court may take judicial notice of an Executive Order that "contain[s] information relevant to this litigation." *Pac. Gas & Elec. Co. v. Lynch*, No. 01-cv-1083 RSWLSHX, 2001 WL 840611, at *6 (C.D. Cal. May 2, 2001) (taking judicial notice of Governor Gray Davis's January 17, 2001, Proclamation of a State of Emergency).

Here, the Executive Order contains information regarding the dramatic effect even small output reductions can have on supply of pork at the grocery store – the Executive Order suggests that the closure of just one plant can severely disrupt the supply chain for many grocery stores. This information is directly relevant to the case, because Defendants have challenged the idea that small supply cuts can affect pork supply and prices; Defendants have argued that Plaintiffs' supply cut conspiracy is implausible since not all Defendants raise hogs, and arguing that the capacity cuts Plaintiffs allege are insufficient to plausibly support the conspiracy allegations. *See* Defs.' Mot. at 22 (arguing about capacity restrictions), and *id*. at 26-29 (arguing about raising hogs). That the Executive Order is consistent with Plaintiffs' allegations – namely, that even small output reductions – such as a single plant closure – can dramatically affect supply. This lends additional credibility to Plaintiffs' claim that the alleged output restrictions had a

measurable effect on pork supply and prices. *See, e.g.*, IPP, ¶¶ 135-138 (noting the increase in prices for ham and bacon).

Defendants may oppose Plaintiffs' request and argue that there is some disagreement as to whether a Court may notice specific facts contained within Executive Orders. *See, e.g.*, *Trans Am. Recovery Servs., Inc. v. Puerto Rico Maritime Shipping Authority*, 850 F. Supp. 103, 104 (D.P.R. 1994). However, this disagreement is not relevant to the present case. Here, Plaintiffs are not requesting that the Court decide – as a matter of law – that the statements contained in the Executive Order are true. Such factual determinations should be left for trial. But when determining whether a claim is facially plausible at the motion to dismiss phase, courts must "'accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'" *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (internal citation omitted). Here, at the motion to dismiss stage, the fact that an Executive Order was recently issued opining that even small output restrictions can dramatically affect the supply of pork at the grocery store adds an additional layer of plausibility to Plaintiffs' allegations. Hence, judicial notice of the fact that this Executive Order was issued is appropriate.

## II.    CONCLUSION

Plaintiffs have alleged that Defendants coordinated output at their slaughterhouses and thus facilitated a conspiracy that affected the supply and price of pork in the United States. On April 28, 2020, the President issued an Executive Order that opines that even small reductions in output at meat processing plants can dramatically affect the supply

chain. Plaintiffs respectfully request that the Court take judicial notice of this Executive Order.

DATED: May 11, 2020

| HAGENS BERMAN SOBOL SHAPIRO LLP | PEARSON SIMON & WARSHAW, LLP |
|---|---|
| By:    s/ Shana E. Scarlett<br>      SHANA E. SCARLETT | By  s/ Bobby Pouya<br>      BOBBY POUYA |
| Rio R. Pierce<br>715 Hearst Avenue, Suite 202<br>Berkeley, California 94710<br>Telephone: (510) 725-3000<br>Facsimile: (510) 725-3001<br>shanas@hbsslaw.com<br>riop@hbsslaw.com | Bruce L. Simon<br>Daniel L. Warshaw<br>Clifford H. Pearson<br>Michael H. Pearson<br>15165 Ventura Boulevard, Suite 400<br>Sherman Oaks, CA 92403<br>Telephone: (818) 788-8300<br>Facsimile: (818) 788-8104<br>bpouya@pswlaw.com<br>bsimon@pswlaw.com<br>cpearson@pswlaw.com<br>dwarshaw@pswlaw.com<br>mpearson@pswlaw.com |
| Steve W. Berman<br>Breanna Van Engelen<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>1301 2nd Avenue, Suite 2000<br>Seattle, WA 98101<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br>steve@hbsslaw.com<br>breannav@hbsslaw.com | Melissa S. Weiner (MN #0387900)<br>Joseph C. Bourne (MN #0389922)<br>PEARSON, SIMON & WARSHAW, LLP<br>800 LaSalle Avenue, Suite 2150<br>Minneapolis, MN 55402<br>Telephone: (612) 389-0600<br>Facsimile: (612) 389-0610<br>mweiner@pswlaw.com<br>jbourne@pswlaw.com |
| Daniel E. Gustafson (#202241)<br>Daniel C. Hedlund (#258337)<br>Michelle J. Looby (#388166)<br>Britany N. Resch (#0397656)<br>GUSTAFSON GLUEK PLLC<br>120 South 6th Street, Suite 2600<br>Minneapolis, MN 55402<br>Telephone: (612) 333-8844<br>Facsimile: (612) 339-6622<br>dgustafson@gustafsongluek.com<br>dhedlund@gustafsongluek.com<br>mlooby@gustafsongluek.com<br>bresch@gustafsongluek.com | W. Joseph Bruckner (MN #0147758)<br>Brian D. Clark (MN #0390069)<br>Simeon A. Morbey (MN #0391338)<br>Arielle S. Wagner (MN #0398332)<br>Stephanie A. Chen (MN #0400032)<br>LOCKRIDGE GRINDAL NAUEN P.L.L.P.<br>100 Washington Avenue South<br>Suite 2200<br>Minneapolis, MN 55401<br>Telephone: (612) 339-6900<br>Facsimile: (612) 339-0981<br>wjbruckner@locklaw.com<br>bdclark@locklaw.com<br>samorbey@locklaw.com |

010736-11/1266942 V1

*Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs*

SCHNEIDER WALLACE COTTRELL KONECKY LLP

By  s/ Kyle G. Bates
KYLE G. BATES (USDCPR-306412)

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell St., Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
kbates@schneiderwallace.com

Dennise Longo Quiñones
Attorney General

Johan M. Rosa Rodríguez
PR Bar No. 16819
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 2600, 2601
Fax: (787) 721-3223
jorosa@justicia.pr.gov

Todd M. Schneider
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell St., Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com

Peter B. Schneider
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 300
Houston, Texas 77098
Telephone: (713) 338-2560
Facsimile: (415) 421-7105
pschneider@schneiderwallace.com

*Counsel for the Commonwealth of Puerto Rico*

aswagner@locklaw.com
sachen@locklaw.com

*Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

LARSON • KING, LLP

By     s/  Shawn M. Raiter
SHAWN M. RAITER

2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6518
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Blaine Finley
Yifei "Evelyn" Li
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cunelolaw.com

*Co-Lead Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs*

AHERN AND ASSOCIATES, P.C.

By  s/ Patrick J. Ahern
PATRICK J. AHERN

Willoughby Tower
8 South Michigan Ave., Suite 3600
Chicago, IL 60603
Telephone: (312) 404-3760
patrick.ahern@ahernandassociatespc.com

*Counsel for Direct Action Plaintiffs*

010736-11/1266942 V1

*Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC*

- 7 -

# EXHIBIT 1

| | |
|---|---|
| Federal Register<br>Vol. 85, No. 85<br>Friday, May 1, 2020 | **Presidential Documents** |

| | |
|---|---|
| **Title 3—**<br><br>**The President** | Executive Order 13917 of April 28, 2020<br><br>**Delegating Authority Under the Defense Production Act With Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID–19** |

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the Defense Production Act of 1950, as amended (50 U.S.C. 4501 *et seq.*) (the ''Act''), and section 301 of title 3, United States Code, it is hereby ordered as follows:

**Section 1**. *Policy.* The 2019 novel (new) coronavirus known as SARS–CoV–2, the virus causing outbreaks of the disease COVID–19, has significantly disrupted the lives of Americans. In Proclamation 9994 of March 13, 2020 (Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak), I declared that the COVID–19 outbreak in the United States constituted a national emergency, beginning March 1, 2020. Since then, the American people have united behind a policy of mitigation strategies, including social distancing, to flatten the curve of infections and reduce the spread of COVID–19. The COVID–19 outbreak and these necessary mitigation measures have taken a dramatic toll on the United States economy and critical infrastructure.

It is important that processors of beef, pork, and poultry (''meat and poultry'') in the food supply chain continue operating and fulfilling orders to ensure a continued supply of protein for Americans. However, outbreaks of COVID–19 among workers at some processing facilities have led to the reduction in some of those facilities' production capacity. In addition, recent actions in some States have led to the complete closure of some large processing facilities. Such actions may differ from or be inconsistent with interim guidance recently issued by the Centers for Disease Control and Prevention (CDC) of the Department of Health and Human Services and the Occupational Safety and Health Administration (OSHA) of the Department of Labor entitled ''Meat and Poultry Processing Workers and Employers'' providing for the safe operation of such facilities.

Such closures threaten the continued functioning of the national meat and poultry supply chain, undermining critical infrastructure during the national emergency. Given the high volume of meat and poultry processed by many facilities, any unnecessary closures can quickly have a large effect on the food supply chain. For example, closure of a single large beef processing facility can result in the loss of over 10 million individual servings of beef in a single day. Similarly, under established supply chains, closure of a single meat or poultry processing facility can severely disrupt the supply of protein to an entire grocery store chain.

Accordingly, I find that meat and poultry in the food supply chain meet the criteria specified in section 101(b) of the Act (50 U.S.C. 4511(b)). Under the delegation of authority provided in this order, the Secretary of Agriculture shall take all appropriate action under that section to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA. Under the delegation of authority provided in this order, the Secretary of Agriculture may identify additional specific food supply chain resources that meet the criteria of section 101(b).

**Sec. 2**. *Ensuring the Continued Supply of Meat and Poultry.* (a) Notwithstanding Executive Order 13603 of March 16, 2012 (National Defense Resources Preparedness), the authority of the President to require performance of contracts or orders (other than contracts of employment) to promote the national defense over performance of any other contracts or orders, to allocate materials, services, and facilities as deemed necessary or appropriate to promote the national defense, and to implement the Act in subchapter III of chapter 55 of title 50, United States Code (50 U.S.C. 4554, 4555, 4556, 4559, 4560), is delegated to the Secretary of Agriculture with respect to food supply chain resources, including meat and poultry, during the national emergency caused by the outbreak of COVID–19 within the United States.

(b) The Secretary of Agriculture shall use the authority under section 101 of the Act, in consultation with the heads of such other executive departments and agencies as he deems appropriate, to determine the proper nationwide priorities and allocation of all the materials, services, and facilities necessary to ensure the continued supply of meat and poultry, consistent with the guidance for the operations of meat and poultry processing facilities jointly issued by the CDC and OSHA.

(c) The Secretary of Agriculture shall issue such orders and adopt and revise appropriate rules and regulations as may be necessary to implement this order.

**Sec. 3**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

*[signature: Donald Trump]*

THE WHITE HOUSE,
*April 28, 2020.*

[FR Doc. 2020–09536
Filed 4–30–20; 11:15 am]
Billing code 3295–F0–P