**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

September 22, 2020

**VIA ECF**
Honorable John R. Tunheim
Chief U.S. District Judge, District of Minnesota
U.S. Courthouse, Suite 15
300 South Fourth Street
Minneapolis, MN 55415

Re:   *In re Pork Antitrust Litig.*, Civ. No. 18-cv-1776 (JRT/HB)

Dear Chief Judge Tunheim:

We represent JBS USA Food Company.  We write on behalf of all Defendants in response to Plaintiffs' September 18, 2020 letter (the "Letter"), concerning *Jien, et al. v. Perdue Farms, Inc., et al.*, Civ. No. 1:19-CV-2521-SAG (D. Md. September 16, 2020).

Defendants do not undertake here to address the merits of, or their disagreement with, the *Jien* opinion (which they would be prepared to do at an appropriate time if requested by the Court).  But we write because *Jien* is not, as Plaintiffs assert, about "whether an Agri Stats-led information exchange agreement is sufficient to support a rule of reason claim."  Letter at 1.  To begin with, *Jien* in fact ***dismissed*** per se antitrust claims against most defendants based on group pleading and failure to allege parallel conduct.  *Jien* at 18.

While *Jien* did not dismiss rule of reason claims as to some defendants, the court there focused on "alleged ***specific, secret meetings*** between poultry executives in which extensive poultry processing wage data was exchanged" and that "Defendants' executives in attendance at the secret meetings ***discuss and agree on salary raises and bonus budgets for the coming year***."  *Jien* at 26, 4 (emphases added).  The plaintiffs in turn alleged that the exchange of Agri Stats data was a means to *enforce* the agreements made at those secret meetings.  *Id.* at 26 ("Moreover, Defendant Processors are alleged to have used Agri Stats to monitor competitors' adherence to this plan, *Id.* at 46, and to have chastised processors who deviated from this set compensation level.").  Here, by contrast, there are no alleged secret meetings, and the exchange of Agri Stats data is not alleged to be an enforcement mechanism, but instead to be the agreement itself.

Finally, *Jien* noted that the plaintiffs there alleged a "***plethora of specific allegations*** regarding detailed and highly sensitive ***present*** and ***future*** wage data exchanged among ostensible competitor Defendant Processors."  *Jien* at 26 (emphases added); *id.* at 27 (Agri Stats' "***real-time***, and ***current*** wage data") (emphases added); *id.* at 5 ("The data distributed by Agri Stats includes ***current*** wage and salary data.") (emphasis added).  Here, by contrast – where pork prices fluctuate so frequently that the USDA requires pork processors to report detailed price information once or twice daily, including "[t]he price for each wholesale pork sale," 7 C.F.R. § 59.205; *see also* Dkt. 476 at 21-22 – Plaintiffs have conceded that the pricing information provided by Agri Stats was not current but instead "***generally two to six weeks old***."  Dkt. 476 at 52 (emphasis added); *see also* IPP 2nd Am. Compl. ¶¶ 43, 47.

Respectfully submitted,

*Stephen R. Neuwirth*

Stephen R. Neuwirth

cc: Counsel of Record via ECF