UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 0:18-cv-01776-JRT-HB<br><br>**JOINT LETTER BRIEF REGARDING SEARCH METHODOLOGY ORDER** |

Dear Judge Bowbeer:

Pursuant to the Court's Order on Stipulation Regarding Pretrial Scheduling Order (ECF No. 532), the parties hereby submit this joint letter brief regarding Plaintiffs' request that the Court enter a search methodology order.

## Plaintiffs' Position

Pursuant to the stipulated scheduling order (ECF No. 532), the parties met and conferred on issues related to search methodology. After meeting both before the Court's stay of discovery (ECF No. 289) and after the order denying Defendants' motions to dismiss the parties are unable to reach agreement upon Plaintiffs' proposed search methodology order and again request the Court's guidance. Although technically meet and confers, Defendants did not engage in any substantive, good faith negotiations regarding a proposed search methodology order. Instead, even after being ordered to meet and confer on the search methodology order by the Court, Defendants sent no substantive comments to Plaintiffs' proposal (despite Plaintiffs' repeated assurances that we will consider proposed changes) and merely participated in a perfunctory phone call saying they felt no order was necessary.

Plaintiffs believe that it is appropriate for the Court to enter a search methodology order to ensure that the collection and production of documents are handled in a transparent manner that is consistent with best practices. No one wants a do-over after a party has already expended substantial effort in a search process. But without cooperation and transparency, that is often exactly what happens. In similar antitrust cases, courts have entered substantially similar (though not identical) protocols to the order proposed by Plaintiffs. *See In re Peanut Farmers Antitrust Litigation*, No. 2:19-cv-00463 (E.D. Va.) (entering a detailed ESI Protocol and Validation Protocol Order, which contain provisions regarding pre-search deduplication and culling of collected data, TAR/CAL disclosures

1

and a TAR/CAL search process, keyword search processes with a two-phased approach, and a separate validation protocol, attached here as **Exhibits A and B**); *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (N.D. Ill.) (entering a detailed search methodology order, attached here as **Exhibit C**). Courts typically establish a protocol addressing these issues in order to avoid unnecessary motion practice later on in the case, after the parties have already devoted significant resources to discovery. *See, e.g.*, *EEOC v. FedEx Ground Package Systems, Inc.*, 2018 WL 1441426, at *4 (W.D. Pa. 2018) (noting that if defendant "initially focused its considerable legal energy on working with [plaintiff] to conduct the sample analysis and then refine (and perhaps refine again, and if necessary, again) search terms, [defendant] might have saved time, resources, and expense by avoiding work that was performed to generate and support an argument, as opposed to just doing that discovery work"); *see also, e.g.*, *Gardner v. Continental Casualty Company*, 2016 WL 155002, at *3 (D. Conn. 2016) (ordering the parties to meet and confer regarding validation efforts, including "sampling and iterative refinement" or using a "quick peek protocol" to test the search terms); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 JMF, at 1 (S.D.N.Y. Mar. 27, 2015) (ordering parties to qualitatively validate custodial search terms); *In re Lithium Ion Batteries Antitrust Litig.*, 13MD02420 YGR (DMR), 2015 WL 833681, at *3 (N.D. Cal. Feb. 24, 2015) (incorporating provision regarding qualitative sampling of documents returned by disputed search terms into the parties Search Term Protocol); *Procaps S.A. v. Patheon Inc.*, 2014 WL 800468, at *3 (S.D. Fla. 2014), order amended, 2014 WL 11878435 (S.D. Fla. 2014) (ordering parties to develop "a reasonable procedure by which the search terms may be reasonably refined, if necessary"); *Aurora Coop. Elevator Co. v. Aventine Renewable Energy*, No 4:12-cv-230, at 1–2 (D. Neb. Mar. 10, 2014) (ordering parties to consult with computer forensics expert to develop search protocols, including TAR, for document review).

Plaintiffs' proposed order provides a transparent and cooperative search process among the parties. It avoids the substantial risk of a "do-over," when *after* all the effort and money is expended by the producing party, an obvious flaw is identified that could have been identified *ex ante* with a focused and transparent discussion among the parties. Plaintiffs previously proposed that the parties establish a search methodology order in 2018, which Defendants refused to discuss. *See* ECF No. 233 at 7. Since that time, the Court has repeatedly asked the parties to meet and confer regarding search methodology. *See* November 21, 2018 Status Conference Hearing Transcript at 55; January 28, 2019 Status Conference Hearing Transcript at 34; July 2, 2019 Case Management Conference Hearing Transcript at 59. Upon entry of the initial order granting Defendants' motions to dismiss the parties agreed to stay these discussions pending resolution of a further motion to dismiss Plaintiffs' amended complaints.

Once the Court denied Defendants' subsequent motions to dismiss (ECF No. 519; ECF No. 520), Plaintiffs attempted to resume these negotiations. On November 11, 2020, Plaintiffs sent Defendants a slightly revised proposed search methodology order largely similar to the one they had proposed more than a year ago, attached as **Exhibit D**, which

was modelled after the order negotiated by the parties with the assistance of the court and court-appointed special master Professor Maura Grossman in *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-08637 (N.D. Ill.). While Plaintiffs understand that the Court has not endorsed (or rejected) a formal search methodology order (*see* July 2, 2019 Case Management Conference Hearing Transcript at 59), Plaintiffs believe that the Court intended the parties to at least discuss the substance of the topics that Plaintiffs proposed. However, Defendants continue to reiterate their position that a search methodology protocol is not needed.

Defendants point to the ESI Protocol previously entered at ECF No. 292, which contains language on search terms and TAR. But as the Court previously recognized, there are several topics that have not been addressed in the ESI Protocol. *See* July 2, 2019 Case Management Conference Hearing Transcript at 55. Plaintiffs' proposal lays out the details on these topics in an attempt to have all of those discussions upfront—before any problems arise. Plaintiffs' proposed search methodology order describes pre-search deduplication and culling of collected data, including exception reporting, disclosures of culling parameters, and specific parameters for which documents should be included in the data set against which search terms are tested. This would avoid confusion and later motion practice about topics we can and should discuss before searches are run. Plaintiffs' proposed search methodology order also describes TAR/CAL disclosures and a TAR/CAL search process, which includes a limited number of document custodians for whom search term pre-culling will not used. These provisions are crucial, as in Plaintiffs' experience, nearly all Defendants will want to apply TAR/CAL on top of search terms.

Plaintiffs' proposal describes keyword search processes, including disclosures of search software, and a detailed first and second phased search term method, which establishes a clear process and clear timeline to allow document productions moving forward. Plaintiffs' proposal sets forth an orderly process for the parties to propose a second set of narrowly tailored search terms sixty (60) days after the production of an agreed set of Priority Custodian documents. Common sense, backed by experience, tells us that despite our best efforts, the lawyers involved in this litigation may not guess at all of the acronyms, nicknames, and jargon used in the industry and among colleagues who are in regular communication. It is these very code words and unique phrases that often prove to be the most important search terms in a case. By allowing the parties to conduct an initial review of the Priority Custodian documents and then propose a narrowly tailored set of additional key terms, the return of responsive documents is greatly enhanced. Defense counsel's suggestion that a second set of search terms would impede the prompt forward progress of this matter is simply not supported by the facts.[1]

---

[1] Pursuant to the Stipulation Regarding Pretrial Scheduling Order (ECF No. 532), the parties are to commence the rolling production of documents on March 16, 2021, which pursuant to Plaintiffs' proposed search methodology order would include the Priority Custodian documents. The parties would then provide the list of additional search terms

Plaintiffs' proposal includes a validation protocol, which is critical given the black box TAR/CAL programs that Defendants may use, and which also applies to the keyword search process. Defendants' suggestion that the proposed validation protocol is burdensome or expensive is belied by the fact that the Defendants' eDiscovery vendors will already be undertaking this step as a necessary part of their search for responsive documents. Plaintiffs' proposal does not add materiality to that burden, proposing as it does that the validation measures be undertaken on a sample set of between 3,000 - 5,000 documents.[2] The Search Methodology Order simply sets forth parameters to ensure that this validation, which is already an integral part of the process, is done in an effective, transparent manner.

Finally, Plaintiffs' proposal includes numerous other provisions that will avoid after-the-fact conflict about things that can be addressed now. To give just one additional example, Plaintiffs' proposal notes that paper the parties collect and scan to PDF in this litigation typically has low quality OCR, so in the absence of some objective metric showing the OCR is high enough quality that a TAR algorithm or keyword search terms can be used to cull that data, it must be manually reviewed.

Because Defendants have declined to negotiate or even discuss adoption of any of the provisions Plaintiffs have proposed, Plaintiffs ask the Court to enter Plaintiffs' proposal attached at **Exhibit D** in the absence of any counter-proposal from Defendants. It is time for the parties to move forward with the search process. And it is in no one's interests to have a do-over on a flawed search process *after* the money has been spent. As the saying goes, "an ounce of prevention is worth a pound of cure."

### Defendants' Position

I.   INTRODUCTION

On February 20, 2019, following several weeks of negotiation among the parties, the Court entered a 19-page Order Regarding Production of Electronically Stored

---

on or before May 17, 2021, with any subsequent negotiations to be concluded within twenty-five (25) days, *i.e.,* by early June 2021. There is no reason that the subsequent production of documents could not be completed well in advance of the September 1, 2021 substantial completion deadline.

[2] Assuming a conservative rate of 60 documents reviewed per hour, the parties would spend 50 to 83 hours completing the review of the validation sample. In a case that will involve tens of thousands of hours of review time, this small investment will allow the parties to ensure that all those efforts have actually identified the responsive documents they are intended to.

Information and Paper Documents (the "ESI Order"). (ECF No. 292.) That comprehensive order addresses ediscovery in detail, including how to process and produce paper files (II.B.1., III.), email collection and processing (III.D.), document review, and a process and timing for negotiations over search terms and use of technology-assisted review ("TAR") (V.). The ESI Order provides guidance and transparency for the ediscovery process, while also maintaining the flexibility that the 3 classes, 2 direct action plaintiffs, and 8 defendant families will need in order to navigate what will inevitably be a complex and dynamic document-production process. The parties have already been engaging in discovery under the ESI Order without incident.

Plaintiffs nevertheless seek to impose an additional detailed and burdensome Search Methodology Order ("SMO") that covers largely the same subject matter, walks back stipulations to which Plaintiffs agreed in the ESI Order, and would deprive the ESI Order of its flexibility by micromanaging discovery with onerous, one-size-fits-all procedures. (*See* Decl. of J. Sandin ("Sandin Decl.") ¶ 2 & Ex. A (proposed SMO sent by Plaintiffs to Defendants).) This additional SMO is not only unnecessary, but also contrary to the authority and best practices laid out in the Federal Rules of Civil Procedure, the Sedona Principles, and the ESI Order. Rather than have the restrictions and additional expense resulting from the SMO imposed on the parties now, the parties should simply continue to work together in good faith under those rules, pursuant to the process followed in nearly every federal litigation.

II.   THE DETAILED SEARCH METHODOLOGY ORDER PROPOSED BY PLAINTIFFS IS NOT NECESSARY.

Plaintiffs' SMO is, at best, a solution in search of a problem. The parties have already negotiated the procedures that should govern the topics covered by the proposed SMO—those procedures were then formalized in the ESI Order. This Court entered its ESI Order to provide the parties additional guidance in preparing for e-discovery, and in numerous respects, the proposed SMO is either redundant of the procedures in the ESI Order, or as shown in more detail in Section III below, an attempt by Plaintiffs to rewrite the Court's Order to Plaintiffs' benefit. The redundancy can be seen in the chart below setting out areas in which the proposed SMO overlaps with the ESI Order:

| ESI Order | Proposed SMO |
|---|---|
| IV.E. De-duplication | I.B.1. De-Duplication |
| IV.D.1. Email Threading | I.B.2. Email Threading |
| IV.D.2. Email Domains | I.B.3. Email Domains |

5

| | |
|---|---|
| V. Parameters for Culling and Reviewing ESI And Paper Documents | I.B.6. Disclosure of Other Culling Parameters Required |
| III. Paper Document Production Protocols | I.B.7. Paper Documents |
| V.C.2. Use of Technology Assisted Review or Other Advanced Technology-Based Analytics to Cull Unstructured ESI | II.A.2. Producing Party TAR/CAL Disclosures |
| V.C.1. Use of Search Terms to Cull Unstructured ESI | II.B. Keyword Search Process |
| V.C.1.b. Addition or Removal of Search Terms After Initial Search Term Negotiation | II. B. 4. Second Phase Search Term Proposals |

The ESI Order provides clear guidance on the topics it covers, while also allowing each party the flexibility needed to conduct discovery according to its individual circumstances, working in good faith with opposing parties as required. Under the ESI Order, the parties have already or will shortly, without incident:

- Begun document production, including of organization charts, document retention and data usage policies, documents produced in investigations (if any), readily available phone records, and Agri Stats reports stored in centralized locations;

- Negotiated the addition of dozens of custodians requested by Plaintiffs; and

- Begun additional document collection from negotiated custodians, as well as data collection.

As shown in more detail in the discussion in Section III below, Plaintiffs' proposal is not merely redundant. It is an attempt to *renegotiate* and *walk back* provisions already agreed to under the Court's supervision. The parties do not need additional obligations imposed at this point, especially with a tight discovery schedule and the hardships of conducting discovery in a global pandemic. The overlap between the ESI Order and Plaintiffs' proposed SMO is sure to create confusion as discovery progresses. Furthermore, Plaintiffs' attempt to unnecessarily insert themselves into each Defendant's discovery processes stands in clear contradiction of Sedona Conference Principle 6, which provides that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information," The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic*

6

*Document Production*, 19 Sedona Conf. J. 1, 17 (2018). As evidenced by the progress thus far, counsel here are perfectly capable of making this evaluation, and any input or response from Plaintiffs can be made within the bounds of the ESI Protocol and the Rules of Civil Procedure.

As discussed further below, Plaintiffs' proposed SMO is a radical departure from the standard procedures and principles governing discovery. Plaintiffs can point to no problems that have arisen or are expected, nor otherwise justify that departure. In fact, it appears that Plaintiffs' counsel simply copied the SMO entered in the *In re Broiler Chicken Antitrust Litigation* nearly verbatim, without regard to the need for an SMO here at all, much less any need for specific provisions. (*See* Sandin Decl., ¶ 3 & Ex. B (redline showing minimal differences between *Broilers* order and Plaintiffs' proposed SMO).[3] Contrary to Plaintiffs' assertion that its proposal is standard procedure, the parties in that case agreed to the order, and Defendants are not aware of any court that has imposed, over objections, any SMO as intrusive and burdensome as the one proposed here.[4] This Court itself has never, to Defendants' knowledge, imposed something with this level of intrusiveness and detail at the outset of discovery, despite its long history of adjudicating multidistrict litigation, class actions, and other complex litigation. Courts have instead relied on the well-tested principles that producing counsel are best positioned to determine their procedures and will do so in good faith, and that requesting counsel are not entitled to insert themselves into those decisions. The *Broilers* order is an outlier precisely because it is in stark contrast with the Federal Rules, the ESI Order, and Sedona Principle 6.

Nor did the SMO actually reduce disputes in the *Broilers* case. As just one example, as recently as this summer, well more than a year after the Validation Protocol process in that case was complete, plaintiffs there continued to claim that "Defendants are withholding a substantial number of documents." (Mem. of Pts. and Auth. ISO Pls.' Mot. to Compel, 10 n.3, *In re Broiler Chicken Antitrust Lit.*, Case No.: 1:16-cv-08637, ECF No. 3672.) No amount of transparency or validation procedures will stop a determined Plaintiff from pressing for more. And the Validation Protocol process itself led to a proliferation of disputes over Defendants' TAR processes.

---

[3] Indeed, Plaintiffs' proposed SMO refers to an "analysis . . . of the Florida AG production made by certain Defendants." (I.B.3.) While certain defendants in the *Broiler* litigation produced documents to the Florida Attorney General, Defendants here have not.

[4] Defendants understand that a Validation Order similar to that proposed by Plaintiffs was recently entered in the *In re Peanut Farmers Antitrust Litigation*, No. 2:19-cv-00463-RAJ-LRL, ECF No. 161. That, too, was a consent order, not imposed on the parties, and to Defendants' knowledge, that is the only additional time such an order has even been agreed to, much less imposed.

The supposed need for such a detailed SMO is particularly lacking in this case, considering the lawyers and law firms involved. Defense counsel have extensive experience and expertise in complex antitrust class actions, in negotiating discovery parameters in such cases, and in selecting and implementing appropriate processes for identifying and producing documents. Each attorney is aware of and will comply with his or her obligation to make good faith efforts to ensure that responsive documents are located and produced within the parameters negotiated by the parties.

Those attorneys collectively have handled hundreds of antitrust class actions that did not involve any similar SMO, yet capably fulfilled their discovery obligations—the same will happen here. The presumption in ediscovery is that attorneys for producing parties are in the best position to determine how to do so, and are in fact doing so, absent a showing by the requesting party. Plaintiffs' SMO would turn that presumption on its head, encroach on the producing parties' attorneys' roles, and invite the Court to do the same as a matter of course, rather than on a showing of cause.

The ESI Order, the Federal Rules, and the Sedona Conference Principles should continue to govern here, and without a supplemental search methodology order. If specific issues arise with respect to specific parties, nothing prevents those parties from raising and addressing them in good faith, as the standard discovery rules and ESI Order permit and require parties to do.

III. THE PROPOSED SMO WILL CREATE MORE PROBLEMS THAN IT PURPORTS TO SOLVE.

The proposed SMO is also an exercise in micromanagement. It would impose numerous onerous procedures on all parties, at the outset of discovery, and with no regard for individual parties' particular circumstances.

The proposed SMO is littered with provisions perfectly illustrating the wisdom of Sedona Conference Principle 6, and the folly of the proposed SMO. For example, Plaintiffs' proposed SMO would require: "Unless otherwise agreed by the parties, a document existing in paper form and scanned to PDF for purposes of discovery in this litigation will not be subjected to electronic search and will be manually reviewed." (I.B.7.) The first problem with this provision is that it violates an earlier agreement with Plaintiffs' counsel and this Court's ESI Order, which provided the parties needed flexibility in how they handle paper documents scanned into PDFs. (ESI Order V.C.2. (providing for "meet and confer[s] to determine whether paper documents may be included in a TAR process")). Second, this provision in the SMO mandates a single process when there may be situations when a different review process would be more efficient. Issues like this are exactly why detailed, one-size-fits-all approaches should not be imposed, *especially* in such a large, complex case, with so many different parties who are differently situated. Manual review without search terms (or production without review) *might* make sense for *certain* sets of documents identified by *certain* parties, but

it would not work, for example, if a party discovers a large warehouse or other cache of mixed paper documents. While "Optical Character Recognition" ("OCR") for paper documents is often not perfect, it is regularly used in modern litigation, and the parties agreed to it here. (ESI Order II.B.1 "A producing Party may make paper documents available for inspection and copying/scanning in accordance with FED. R. CIV. P. 34 or, *additionally or alternatively, scan and OCR paper documents*.") (emphasis added). The question is whether manual review of *every* paper document identified is proportionate to the needs of the case given the specific documents at issue. That question, like the other issues covered in the proposed SMO, is best answered on a case-by-case basis, rather than with a uniform solution for disparate circumstances. That is exactly what the ESI Order provided, and Plaintiffs should not be permitted to walk back from it. And while the proposed SMO allows for deviation "if agreed by the parties," that simply invites additional litigation while hindering moving forward with document production in the meantime.

The proposed SMO is full of other inappropriately intrusive provisions that are likely to result in more discovery litigation, not less:

- It permits a requesting party to prevent *all* producing parties from using search terms before using TAR for certain custodians, which would result in tremendous additional cost given the proliferation of ESI in today's world, and it provides for litigation to ensue if the parties cannot agree on those custodians (II.A.1.). *See Livingston v. City of Chicago*, No. 16 CV 10156, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3, 2020) (finding that "pre-TAR culling [with search terms] . . . satisfie[d] the reasonable inquiry standard and was proportional to the needs of th[at] case").

- It imposes arbitrary interim dates on all parties, such as a December date for disclosing search or TAR software, despite the fact that, with respect to that example, not all parties will necessarily have selected software by that date. These interim dates are unnecessary, because the ESI Order and the Court's recent scheduling order already provide discovery dates (*see, e.g.*, II.A.2. (December 18, 2020 deadline for TAR disclosures), II.B.2. (December 18, 2020 deadline for search software disclosures), II.B.3. (December 18, 2020 deadline to propose initial search terms)).

- It allows the requesting parties to intrude into the minutiae of selecting a review platform and then structuring the review, again providing for litigation if the requesting party does not agree with the producing party's process (II.A.3.);

- It requires early production from an undefined set of "Priority Custodians," and then requires renegotiation of a new set of "Second Phase" search terms (II.A.4.). This is yet another complete repudiation of Plaintiffs

9

> earlier *agreement* (adopted by the Court) that "a Producing Party is not required to add search terms after completion of the [initial negotiation process] described in V(C)(1)(a) [of the ESI Order]." (ESI Order V(C)(1)(c), ECF No. 292.) If a need for additional search terms presents itself for specific parties, Defendants will consider Plaintiffs' request in good faith. But this is again best handled on an as-needed basis according to the results of specific parties' productions, and on a timeline that makes sense for those parties.

Plaintiffs' proposals stand in direct contrast to the principle that the producing party is best positioned, and thus entitled, to determine its own search methodologies. *See Livingston v. City of Chicago*, 2020 WL 5253848 (N.D. Ill. Sept. 3, 2020) ("Plaintiffs' insistence that the [defendant] must collaborate with them to establish a review protocol and validation process has no foothold in the federal rules governing discovery.").

The extensive "Validation Protocol" is likely the most burdensome and intrusive aspect of Plaintiffs' proposed SMO, and again illustrates why it is both unworkable and unnecessary to impose a uniform procedure at the outset of discovery—before parties are even certain whether they will use TAR, search terms, or some combination; before collections and substantial production have been made; and of course before any requesting party has identified any gap at all in any production. Despite all those unknowns, Plaintiffs seek to obtain *now* what amounts to a preemptive right to second-guess Defendants' productions.

Not only is any Validation Protocol unwarranted, particularly at this stage, but the particulars of what Plaintiffs propose cannot be justified. Plaintiffs' proposal effectively requires *every* defendant to set up a second database to re-review thousands of documents. (*See* III.F.) Plaintiffs even purport to require Defendants to review a sample of documents *that have already been reviewed manually by an attorney*. (III.C.2, D.2.). Plaintiffs also propose re-reviewing documents tagged as responsive and already produced, apparently, but non-sensically, to ensure that a producing party did not produce too many documents. (*See* III.C.1., D.1.) And it requires review of documents discarded by TAR (III.C.3, D.3.), which again directly contradicts—without justification—the stipulation entered in the ESI Order (V.C.2.b. ("A Producing Party need not conduct any additional review of information subjected to, but not retrieved by, a TAR tool . . . .")). These procedures are undoubtedly onerous. And whether any basis for these demands might exist cannot be judged now. The safest course at this point is for producing parties to implement quality control processes that are tailored and proportionate to their individual productions in the ordinary course.

What Plaintiffs really seek is a preemptive license to engage in discovery-on-discovery, which is not permitted without cause. *Gross v. Chapman*, No. 19 C 2743, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020). Defendants are obligated to use reasonable efforts to locate and produce documents in good faith. As in every case, they

will utilize reasonable quality control measures to do so. But imposing uniform procedures, before any issue is identified, threatens to throw spanners into the works, proliferating unforeseen problems, rather than solving problems. If Plaintiffs identify potential gaps in production, Defendants will work with Plaintiffs to rectify them. The Court's scheduling order will presumably give all parties ample time to raise and address concerns related to document production. But onerous, one-size-fits-all measures for identifying and rectifying hypothetical problems of unknown scope are inappropriate and should not be imposed. *See, e.g.*, Sedona Conference Principle 6, Comment 6.b. (citing *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) ("A requesting party should not normally be able to restrain the responding party's discovery process to prevent an anticipated, but uncertain, future harm.").

IV.   DEFENDANTS' ALTERNATIVE IS WORKABLE AND APPROPRIATE HERE.

Plaintiffs claim that Defendants have refused to engage or offer an alternative proposal. Neither assertion is accurate. Defendants engaged substantially in a process that culminated with the ESI Order in place, and have proposed as an alternative to Plaintiffs' onerous and unnecessary demands that the parties adhere to the stipulations contained in the ESI Order and the requirements of the Federal Rules of Civil Procedure, much as parties do in every other case before this Court. The ESI Order and Federal Rules satisfy Plaintiffs' need for transparency and cooperation, while also meeting each producing party's need for flexibility in light of their specific circumstances. The ESI Order requires producing parties to disclose and negotiate search terms (ESI Order V.C.1.) and to disclose any intended TAR process (*id.* at V.C.2.ii.). The Federal Rules further require producing counsel to ensure that adequate steps are taken to ensure relevant documents are identified and produced.

In accord with the ESI Order and Federal Rules, Defendants will (a) share their proposed search terms, (b) consider Plaintiffs' request for additional search terms, (c) negotiate over search terms and, if needed, provide explanations for why certain search terms seem geared toward irrelevant topics or are disproportionate to the needs of the case, and try to see if there are narrower search terms (or strings) that might be more appropriate, and (d) engage in appropriate quality control testing. The ESI Order strikes the right balance of providing an appropriate level of transparency without automatically giving the requesting party a say, or even an effective veto, over producing parties' processes.

Defendants' proposal is consistent with Sedona Conference Principle 6. That is why discovery is conducted without anything like Plaintiffs' intrusive version of an SMO in the overwhelming majority of cases, including complex antitrust class actions.

V.     CONCLUSION

Plaintiffs' proposal threatens to complicate and significantly increase the expense of this litigation, rather than to simplify it or reduce disputes.  Plaintiffs cannot adequately justify such a radical departure from the rules that ordinarily govern discovery.  Defendants accordingly respectfully request that the Court deny entry of Plaintiffs' proposed Search Methodology Order.

Respectfully submitted this 20th day of November, 2020.


/s/ Bobby Pouya
Bobby Pouya (Pro Hac Vice)
Clifford H. Pearson (Pro Hac Vice)
Daniel L. Warshaw (Pro Hac Vice)
Michael H. Pearson (Pro Hac Vice)
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN #0387900)
Joseph C. Bourne (MN #0389922)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com
jbourne@pswlaw.com

Bruce L. Simon (Pro Hac Vice)
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

/s/ Arielle S. Wagner
Arielle S. Wagner (MN #0398332)
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Craig S. Davis (MN #0148192)
Simeon A. Morbey (MN #0391338)
Stephen M. Owen (MN # 0399370)
Stephanie A. Chen (MN #0400032)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
aswagner@locklaw.com
wjbruckner@locklaw.com
csdavis@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com
smowen@locklaw.com
sachen@locklaw.com

***Co-Lead Class Counsel for Direct Purchaser Plaintiffs***

/s/ Shana E. Scarlett
Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve. W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

/s/ Daniel E. Gustafson
Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Britany N. Resch (#0397656)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
bresch@gustafsongluek.com

***Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs***

/s/ Shawn M. Raiter
Shawn M. Raiter (MN# 240424)
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6518
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Blaine Finley
Yifei "Evelyn" Li
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cunelolaw.com

***Co-Lead Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs***

/s/ Kyle G. Bates
Kyle G. Bates (USDCPR-306412)
Todd M. Schneider
Matthew S. Weiler
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell St., Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
kbates@schneiderwallace.com
tschneider@schneiderwallace.com
mweiler@schneiderwallace.com

Peter B. Schneider
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
3700 Buffalo Speedway, Suite 300
Houston, Texas 77098
Telephone: (713) 338-2560
Facsimile: (415) 421-7105
pschneider@schneiderwallace.com

Ines Carrau Martinez
Attorney General

Johan M. Rosa Rodríguez
PR Bar No. 16819
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 2600, 2601
Fax: (787) 721-3223
jorosa@justicia.pr.gov

***Counsel for the Commonwealth of Puerto Rico***

/s/ Patrick J. Ahern
Patrick J. Ahern
AHERN AND ASSOCIATES, P.C.
Willoughby Tower
8 South Michigan Ave., Suite 3600
Chicago, IL 60603
Telephone: (312) 404-3760
patrick.ahern@ahernandassociatespc.com

***Counsel for Direct Action Plaintiffs Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC***

| | |
|---|---|
| */s/* Daniel Laytin<br>Mark L. Johnson (#0345520)<br>Virginia R. McCalmont (#0399496)<br>GREENE ESPEL PLLP<br>222 South Ninth Street, Suite 2200<br>Minneapolis, MN 55402<br>(612) 373-0830<br>mjohnson@greeneespel.com<br>vmccalmont@greeneespel.com<br><br>Daniel Laytin, P.C. (*pro hac vice*)<br>Christa Cottrell, P.C. (*pro hac vice*)<br>Christina Briesacher (*pro hac vice)*<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL  60654<br>(312) 861-2000<br>daniel.laytin@kirkland.com<br>christa.cottrell@kirkland.com<br>christina.briesacher@kirkland.com<br><br>***Counsel for Clemens Food Group, LLC and The Clemens Family Corporation*** | */s/* Craig S. Coleman<br>Richard A. Duncan (#0192983)<br>Aaron D. Van Oort (#0315539)<br>Craig S. Coleman (#0325491)<br>Emily E. Chow (#0388239)<br>Isaac B. Hall (#0395398)<br>Bryan K. Washburn (#0397733)<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402-3901<br>(612) 766-7000<br>richard.duncan@faegredrinker.com<br>aaron.vanoort@faegredrinker.com<br>craig.coleman@faegredrinker.com<br>emily.chow@faegredrinker.com<br>isaac.hall@faegredrinker.com<br>bryan.washburn@faegredrinker.com<br><br>***Counsel for Hormel Foods Corporation and Hormel Foods, LLC*** |

/*s/* Sami H. Rashid
Donald G. Heeman (#0286023)
Jessica J. Nelson (#0347358)
Randi J. Winter (#0391354)
SPENCER FANE LLP
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
David B. Adler (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
davidadler@quinnemanuel.com


***Counsel for JBS USA Food Company***

/*s/* William L. Greene
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
Jon M. Woodruff (#0399453)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
john.woodruff@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

***Counsel for Seaboard Foods LLC and Seaboard Corporation***

*/s/* Brian Robison
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

***Counsel for Smithfield Foods, Inc.***

*/s/* Gene Summerlin
Gene Summerlin (*pro hac vice*)
Aaron Chapin (#06292540)
Marnie Jensen (*pro hac vice*)
Ryann Glenn (*pro hac vice*)
Kamron Hasan (*pro hac vice*)
Sierra Faler (*pro hac vice*)
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154
(402) 964-5000
gene.summerlin@huschblackwell.com
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com
kamron.hasan@huschblackwell.com
sierra.faler@huschblackwell.com

***Counsel for Triumph Foods, LLC***

*/s/* Tiffany Rider Rohrbaugh
David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
AXINN, VELTROP &
HARKRIDER LLP
950 F Street, N.W.
Washington, D.C. 20004
(202) 912-4700
radcox@axinn.com
trider@axinn.com

***Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.***

*/s/* William L. Monts
Peter H. Walsh (#0388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3000
F. (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

***Counsel for Agri Stats, Inc.***