# UNITED STATES DISTRICT COURT
# DISTRICT COURT OF MINNESOTA

IN RE PORK ANTITRUST
LITIGATION


This Document Relates To:

THE DIRECT PURCHASER
PLAINTIFF ACTION

Case No. 18-cv-01776 (JRT-HB)

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF
THE CLASS ACTION
SETTLEMENT BETWEEN
DIRECT PURCHASER
PLAINTIFFS AND DEFENDANT
JBS**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      INTRODUCTION ..................................................................................................1

II.     LITIGATION BACKGROUND ...........................................................................1

III.    THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR
        PRELIMINARY APPROVAL ...............................................................................4

        A.      The Proposed Settlement Is the Result of Arm's-Length Negotiations..................6

        B.      The Settlement Provides Significant Relief to the Settlement Class and
                Should be Preliminarily Approved by the Court ......................................................8

IV.     THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS ............10

        A.      The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)............11

                1.      The Class is Sufficiently Numerous ...........................................................11

                2.      Questions of Law and Fact Are Common to the Settlement Class............12

                3.      Plaintiffs' Claims are Typical of Those of the Settlement Class...............12

                4.      Plaintiffs and Their Counsel Will Adequately Represent the
                        Interests of the Class ...................................................................................13

        B.      The Proposed Settlement Class Satisfies the Requirements of Rule
                23(b)(3) ......................................................................................................................15

V.      THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ......................17

VI.     THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING .....................20

VII.    CONCLUSION.....................................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpern v. UtiliCorp United, Inc.*,
    84 F.3d 1525 (8th Cir. 1996) ...............................................................13

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................10, 15, 16, 17

*Blades v. Monsanto Co.*,
    430 F.3d 562 (8th Cir. 2005) ...............................................................12

*In re Broiler Chicken Antitrust Litig.*,
    1:16-cv-08637, ECF No. 3394 (N.D. Ill. Jan. 8, 2020) ......................20

*City of Greenville v. Syngenta Crop Prot.*,
    No. 3:10-CV-188, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ...........18

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ...............................................................14

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) .....................................................7, 13, 20

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974). Notice ...............................................................18

*In re Emp. Benefit Plans Sec. Litig.*,
    No. 3-92-708, 1993 WL330595 (D. Minn. June 2, 1993) .....................6

*Grier v. Chase Manhattan Auto Fin. Co.*,
    No. A.99-180, 2000 WL175126 (E.D. Pa. Feb. 16, 2000) .....................6

*Gries v. Standard Ready Mix Concrete, L.L.C.*,
    252 F.R.D 479 (N.D. Iowa 2008) .........................................................11

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ..............................................................5, 6

*Huyer v. Wells Fargo & Co.*,
    295 F.R.D. 332 (S.D. Iowa 2016).........................................................12

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ...............................................................14

*In re Monosodium Glutamate Antitrust Litig.*,
    205 F.R.D. 229 (D. Minn. 2001) .................................................................10

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
    281 F.3d 629 (7th Cir. 2002) .......................................................................9

*In re Potash Antitrust Litig.*,
    159 F.R.D. 682, 693 (D. Minn. 1995) .........................................................15

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ...............................................7, 17, 18, 20

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ...............................................7, 17, 18, 20

*Richter v. Bowen*,
    669 F. Supp. 275 (N.D. Iowa 1987) ............................................................11

*Sullivan v. DB Invs.*,
    667 F.3d 273 (3d Cir. 2011) .......................................................................16

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ......................................................................................9

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) .......................................................................5

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002) ....................................................................15

*Welsch v. Gardenbring*,
    667 F. Supp. 1284 (D. Minn. 1987) .............................................................6

*White v. Nat'l Football League*,
    822 F. Supp. 1389 (D. Minn. 1993) .......................................................5, 10

*White v. Nat'l Football League*,
    836 F. Supp. 1458 (D. Minn. 1993) .............................................................6

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) ..............5

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ................6

**Statutes & Rules**

15 U.S.C. § 1 ..................................................................................................2, 3, 9

28 U.S.C. § 1715, *et seq.* ......................................................................................22

Fed. R. Civ. P. 23, *et seq.* ............................................................................. *passim*


**Other Authorities**

Manual for Complex Litigation (Fourth) (2004) ....................................................5, 17

2 Newberg on Class Actions (3d ed. 1992) ...........................................................5, 10

4 Newberg on Class Actions (4th ed. 2002) ........................................................16, 17

## I.      INTRODUCTION

The Direct Purchaser Plaintiffs ("DPPs") in this antitrust class action respectfully move the Court to preliminarily approve a proposed settlement of their claims against Defendant JBS.[1] While this is the first "ice-breaker" settlement in this litigation, it provides the Settlement Class with significant and substantial relief. Pursuant to the Settlement Agreement, JBS will pay $24,500,000 in monetary relief and will provide material cooperation to DPPs. As discussed in this memorandum, the Settlement Agreement is the product of protracted arm's-length settlement negotiations with the assistance of an experienced and nationally-renowned mediator, provides substantial monetary and non-monetary relief to the DPP Settlement Class, and should be granted preliminary approval because it falls well within the range of possible approval. The DPPs further request that the Court certify the proposed Settlement Class for settlement purposes, approve the proposed plan for disseminating notice to the class, and set a schedule for the Final Fairness Hearing of the Settlement. At the Final Fairness Hearing, Interim Co-Lead Class Counsel will request entry of a final order and judgment dismissing JBS and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

## II.     LITIGATION BACKGROUND

This case represents the consolidation of multiple putative class actions and direct purchaser actions alleging a conspiracy to fix, raise and stabilize the price of Pork in the

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as in the Settlement Agreement (also referred to herein as "Settlement"), which is filed concurrently herewith as Exhibit A, to the Declaration of W. Joseph Bruckner ("Bruckner Decl.").

United States. There are three categories of class action plaintiffs in this litigation, all of whom allege that they purchased Pork[2] products in the United States: DPPs, Consumer Indirect Purchaser Plaintiffs, and Commercial and Institutional Indirect Purchaser Plaintiffs.

DPPs allege that Defendants[3] conspired to restrain production and fix the price of Pork in the United States in violation of the Sherman Act, 15 U.S.C. § 1. DPPs allege that the Pork industry has significant market concentration: between 1988 and 2015, the top four Pork integrators (Smithfield, Tyson, JBS, and Hormel) increased their market share from 34 percent in 1988 to just under 70 percent by 2015. *See* DPP Third Consolidated and

---

[2] As used herein, "Pork" means porcine or swine products processed, produced or sold by JBS, or by any of the Defendants or their co-conspirators, including but not limited to: primals (including but not limited to loin s, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chefs prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including, but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products), offal or variety products (including, but not limited to hearts, tongues, livers, head products, spleens, kidneys, feet, stomach, bladder, uterus, snoot, ears, tail, brisket bone, intestines, jowls, neck bones or other bones, skin, lungs, glands, hair, or pet food ingredients), rendered product and byproducts (including, but not limited to, lard, grease, meat meal, bone meal, blood meal , or blood plasma), casings (including, but not limited to, mucosa), and carcasses. *See* Settlement Agreement ¶ 1.l.

[3] As defined in the Settlement Agreement, "Defendants" means JBS USA Food Company, JBS USA Food Company Holdings, Clemens Food Group, LLC, The Clemens Family Corporation, Hormel Foods Corporation and Hormel Foods, LLC, Indiana Packers Corporation, Mitsubishi Corporation (Americas), Seaboard Foods LLC, Seaboard Corporation, Smithfield Foods, Inc., Triumph Foods, LLC, Tyson Foods, Inc. Tyson Prepared Foods, Inc., Tyson Fresh Meats, Inc., and Agri Stats, Inc. *See* Settlement Agreement ¶ 1.e.

Amended Complaint ("TCAC" or "Complaint") (ECF No. 431) ¶ 84. DPPs allege that this includes JBS's acquisition of Cargill's Pork business in 2015, which resulted in JBS moving from the fourth largest producer to the second largest producer at the time. *Id.* ¶ 85.

DPPs allege that any single Defendant acting independently lacked sufficient market power to restrain production and increase prices. TCAC ¶¶ 89-90. However, DPPs allege that beginning no later than 2009 Defendants began sharing competitively sensitive and confidential information with each other through Agri Stats, a data sharing service. *Id.* ¶¶ 2-4, 35-66. DPPs allege that by participating in Agri Stats, vertically integrated Pork producers shared confidential information concerning production levels, short and long-term production capacity, costs, profits, and sales. *Id.* While data in the reports purports to be anonymous, many are organized by company and facility with "such detailed figures covering every aspect of Pork production and sales that producers can accurately identify the companies behind the metrics," using, for example "unique but recurring data points." *Id.* ¶ 60. DPPs allege that, through their coordinated conduct, Defendants collectively had sufficient market power to control supply and increase profits. *Id.* ¶¶ 82-95. DPPs allege that Defendants' collusion achieved its intended result; after years of increasing production prior to the onset of the conspiracy, the Pork industry cut production in a coordinated fashion and, as Defendants intended, an unprecedented upswing in prices followed. *Id.* ¶¶ 119-180.

The DPP class action lawsuit was filed on June 29, 2018 and consolidated before Chief Judge John R. Tunheim in this Court. Thereafter, the Court appointed the

undersigned as Interim Co-Lead Class Counsel for the DPPs. ECF No. 149. Defendants moved to dismiss all Plaintiffs' complaints. In August 2019, the Court granted their motions and granted Plaintiffs leave to amend. ECF No. 360. DPPs amended their complaint, and on October 16, 2020, the Court largely denied Defendants' motions to dismiss. ECF No. 519, amended October 20, 2020, ECF No. 520.

Unlike many other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. *See* Corporate Leniency Policy, U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy. Since the initial complaint was filed, DPPs have continued their factual investigation into the conspiracy alleged in their complaint, and since the Court has largely denied Defendants' motions to dismiss Plaintiffs' complaints, DPPs are pressing to set the parameters for discovery.

As part of their ongoing prosecution, Interim Co-Lead Class Counsel negotiated the ice-breaker Settlement with JBS, the terms of which are detailed in this brief and the supporting documents.

## III. THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL

Parties proposing to settle a class action must seek approval of the settlement from the court. Fed. R. Civ. P. 23(e). Federal Rule of Civil Procedure ("Rule") 23(e) contemplates a sequential process for courts evaluating class action settlements. At this preliminary approval stage, the court determines whether the settlement is within the range

of possible approval and whether class members should be notified of the terms of the proposed settlement. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); 2 Newberg on Class Actions, § 11.24 (3d ed. 1992) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'"). Generally, before directing notice to the class members, a court makes a preliminary evaluation of the proposed class action settlement pursuant to Rule 23(e). *See* Manual For Complex Litigation, (Fourth) § 21.632 (2004).

If the court preliminarily approves the settlement and authorizes notice to the class, and once the class has had the opportunity to consider the settlement, the court must decide whether to grant final approval of the settlement as "fair, reasonable and adequate." Fed. R. Civ. P. 23(e); *see also, e.g., Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The court has broad discretion in evaluating a class action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988). The law strongly favors resolving litigation through settlement, particularly in class actions. *White*, 822 F. Supp. at 1416 ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context.") (citation omitted); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2012 WL 5055810, *6 (D. Minn. Oct. 18, 2012).

It is respectfully submitted that the proposed Settlement Agreement between DPPs and JBS satisfies the preliminary approval standard and should be approved by the Court.

## A.  The Proposed Settlement Is the Result of Arm's-Length Negotiations

"The court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL330595, *5 (D. Minn. June 2, 1993) (citation omitted); *see also Welsch v. Gardenbring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight" to opinions of experienced counsel). Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery." *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-180, 2000 WL175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin*, 513 F.2d at 123; *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993).

Indeed, courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g., In re Emp. Benefit Plans Sec. Litig.*, 1993 WL 330595, at *5 (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .'") (citation omitted). When, as here, experienced counsel represent the parties, and rigorous negotiations were conducted at arms' length (in this instance with the assistance of a nationally recognized mediator), the

judgment of the litigants and their counsel concerning the adequacy of the Settlement should be considered. *See Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

Here, the parties have had ample opportunity to assess the merits of DPPs' claims and JBS's defenses, through investigation, research, settlement discussions and contested motion practice; and to balance the value of Settlement Class members' claims against the substantial risks and expense of continuing litigation. The proposed settlement comes after extensive arm's-length negotiations between the parties. *See* Bruckner Decl. ¶¶ 6-9. These discussions commenced prior to the Court's ruling on Defendants' initial motion to dismiss, at which time counsel for JBS and DPPs met in person to discuss a possible resolution. *Id.* ¶ 6. The parties were unable to reach an agreement at that time and continued litigating the case, including briefing and arguments relating to Defendants' motions to dismiss. *Id.* The Court granted JBS's initial motion to dismiss (ECF No. 360), which resulted in DPPs filing the TCAC, and a second round of motions to dismiss by Defendants. Before the Court denied JBS's second motion to dismiss on October 16, 2020 (ECF Nos. 519, 520), JBS and DPPs recommenced discussions and negotiated in good faith over a two-week period, but did not reach an agreement. *Id.* ¶ 7. After the Court denied JBS's second motion to dismiss, the parties continued their settlement negotiations, this time with the assistance of an experienced and nationally-renowned mediator, Professor Eric Green of Resolutions, LLC. The parties and Professor Green held a full day remote mediation on October 28, 2020. *Id.* While the parties made substantial progress during the mediation, they did not reach agreement on all material settlement terms. *Id.* Over the next few days

the parties continued negotiating, with the assistance of Professor Green, and signed a binding settlement term sheet on November 3, 2020. *Id*. Thereafter, the parties negotiated the terms of and finalized a long form Settlement Agreement, which was executed on November 17, 2020. *Id*.

In sum, the Settlement Agreement: (1) is the result of extensive good faith negotiations between knowledgeable and skilled counsel; (2) was entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced class counsel, is fair, reasonable, and adequate. Based on both the monetary and cooperation elements of the Settlement Agreement, Interim Co-Lead Class Counsel believes the Settlement Agreement is in the best interests of the Settlement Class members and should be approved by the Court. *Id*. ¶¶ 6-10; *see also* Declaration of Bobby Pouya ("Pouya Decl.") ¶¶ 3-7.

**B.    The Settlement Provides Significant Relief to the Settlement Class and Should be Preliminarily Approved by the Court**

The Settlement Agreement with JBS provides substantial relief to the Settlement Class in terms of monetary relief and cooperation. Under the terms of the Settlement Agreement, within 14 days of the Court's preliminary approval of the Settlement, JBS will pay $24,500,000 into the Settlement Fund, which shall be deposited into an interest-bearing escrow account. *See* Settlement Agreement ¶ 9. The Settlement Fund will be used to compensate the Settlement Class for the damages suffered, and expenses incurred, including attorneys' fees, litigation expenses, and the costs of notice. *Id*. ¶¶ 9, 12. At this time, Plaintiffs and their counsel are not seeking any attorneys' fees, non-administration

expenses, or incentive awards from the Settlement proceeds.  However, they may do so in the future, and will file a motion with the Court at an appropriate time.[4]

In addition to the payment of money, the Settlement requires JBS to provide specified cooperation in the DPPs' continued prosecution of the action against the remaining Defendants. The terms of this cooperation are set forth in a confidential letter agreement, which will be provided to the Court for *in camera* review upon request. *See* Settlement Agreement ¶ 10. The cooperation aspect of the settlement is significant, because pursuant to the Sherman Act, the remaining Defendants are jointly and severally liable for any damages resulting from JBS's Pork sales to DPPs during the Class Period. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981); *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 633 (7th Cir. 2002). Thus, this cooperation will assist Plaintiffs in recovering the maximum amount of their damages against the remaining Defendants in the case.

In consideration for these settlement benefits, DPPs and the proposed Settlement Class agree to release certain Released Claims (as defined in the Settlement Agreement) against JBS Released Parties (as defined in the Settlement Agreement). *See* Settlement Agreement ¶ 9, 14. The release does not extend to any other Defendants or co-conspirators, or unrelated claims for breach of contract, any negligence, personal injury, bailment, failure

---

[4] As set forth in the proposed Settlement Class notice documents and the Settlement Agreement at ¶ 6.b, DPPs may withdraw up to $500,000 of the Settlement Fund, subject to the Court's approval, to pay for actual costs of notice and for Preliminary Approval and Final Approval of this Settlement Agreement.

to deliver lost goods, damaged or delayed goods, product defect, or securities claims. *Id.*
At 14.[5]

In sum, this Settlement with JBS provides substantial monetary and non-monetary
relief to the Settlement Class and falls well within the range of possible approval. For these
reasons, the Court should grant preliminary approval to the Settlement Agreement and
authorize notice to the Settlement Class. *See White v. Nat'l Football League*, 822 F. Supp.
1389, 1399 (D. Minn. 1993); 2 *Newberg on Class Actions* § 11.24.

## IV.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

At the preliminary approval stage, the Court must also determine whether to certify
the proposed Settlement Class for settlement purposes under Rule 23. *See, e.g.*, *Amchem
Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a settlement class must
satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate
provisions of Rule 23(b). *Id.* at 613-14; *see also In re Monosodium Glutamate Antitrust
Litig.*, 205 F.R.D. 229, 231 (D. Minn. 2001) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457
U.S. 147, 161 (1982)).

Here, DPPs seek certification of a Settlement Class consisting of:

> All persons who purchased Pork directly from any of the
> Defendants or any co-conspirator, or their respective
> subsidiaries or affiliates for use or delivery in the United States
> from at least as early as January 1, 2009 until the date of the

---

[5] The Settlement also provides JBS with the ability to terminate the Settlement
Agreement if potential members of the Settlement Class representing more than a specified
portion of relevant transactions—as set forth in a confidential letter agreement being filed
under seal with Court, *see* Bruckner Decl. Ex. C opt out of the Settlement Class. Settlement
Agreement ¶ 19.

order granting Preliminary Approval of the Settlement Agreement. Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Settlement Agreement ¶ 5. As detailed herein, this proposed Settlement Class meets the requirements of Rule 23(a), as well as the requirements of Rule 23(b)(3).

### A.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)

#### 1.    The Class is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No rigid rule of thumb has been developed in the Eighth Circuit as to how many potential class members is sufficient to satisfy the numerosity requirement. *Gries v. Standard Ready Mix Concrete, L.L.C.*, 252 F.R.D 479, 484 (N.D. Iowa 2008). However, some courts apply a rule of thumb that a class of over 40 persons is sufficiently numerous. *Richter v. Bowen*, 669 F. Supp. 275, 281 n.4 (N.D. Iowa 1987) (citing 3B J. Moore, Moore's Fed. Procedure 23.05[1]). The proposed Settlement Class consists of entities that purchased Pork directly from the Defendants during the Class Period. Because Pork products are widely distributed and consumed throughout the United States, DPPs estimate that there are thousands of Settlement Class members. Bruckner Decl. ¶ 5.

### 2.     Questions of Law and Fact Are Common to the Settlement Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Dukes*, 564 U.S. at 359. A central allegation in this case is that Defendants illegally conspired to fix, raise, maintain and stabilize Pork prices. Proof and defense of this alleged conspiracy will be common to all Class members. *See, e.g.*, *Blades v. Monsanto Co.*, 430 F.3d 562, 566 (8th Cir. 2005) ("For a class to be certified, plaintiffs need to demonstrate that common issues prevail as to the existence of a conspiracy and the fact of injury."). In addition to this overarching common question, this case is replete with other questions of law and fact common to the Settlement Class, including but not limited to the following: (1) whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the Plaintiffs and the other members of the Class; (2) the effect of Defendants' alleged conspiracy on the prices of Pork sold in the United States during the Class Period; and (3) the appropriate measure of any damages. Accordingly, the Settlement Class satisfies Rule 23(a)(2).

### 3.     Plaintiffs' Claims are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the class representatives' claims be typical of class members' claims. Typicality is closely related to commonality and "a finding of one generally compels a finding of the other." *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 349 (S.D. Iowa 2016). Typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the

individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

DPPs here allege that Defendants illegally conspired to fix, raise, maintain and stabilize Pork prices. As alleged in the Complaint, the named Plaintiffs each alleged that they purchased Pork directly from a Defendant or co-conspirator in the United States from at least January 1, 2009 until the present and were overcharged and suffered an antitrust injury as a result thereof. TCAC ¶¶ 7, 14-19, 180. The named Plaintiffs will have to prove the same elements that other Settlement Class members would have to prove, *e.g.*, the existence and effect of such a conspiracy. Because the named Plaintiffs' claims arise out of the same alleged illegal anticompetitive conduct and are based on the same alleged theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Plaintiffs and Their Counsel Will Adequately Represent the Interests of the Class

Rule 23(a)(4) requires that, in order for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." The focus here is whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982). Both requirements are satisfied in this case.

First, the interests of the Settlement Class members are aligned with those of the representative Plaintiffs. Plaintiffs, like all Settlement Class members, share an overriding interest in obtaining the largest possible monetary recovery and cooperation in their ongoing prosecution of the case. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 679 (7th Cir. 2009) (holding that "hypothetical" conflicts of interest are not sufficient to defeat the common interest prong of the Rule 23(a)(4)).

Second, Plaintiffs and their counsel will also adequately represent the interest of the Class Members. As the Court has already recognized in appointing Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP as Interim Co-Lead Class Counsel, these firms and their attorneys are qualified, experienced, and thoroughly familiar with antitrust class action litigation. *See* ECF Nos. 94 (Motion to Appoint Co-Lead Counsel), 149 (Order Appointing Co-Lead Counsel); *see also* Bruckner Decl. ¶¶ 13-14; Pouya Decl. ¶¶ 4-6. Interim Co-Lead Class Counsel have successfully litigated many significant antitrust actions and have prosecuted and will continue to vigorously prosecute this lawsuit. Interim Co-Lead Class Counsel have diligently represented the interests of the Class throughout this litigation and will continue to do so in the future. *Id.*

Furthermore, the named Plaintiffs have fulfilled their duties to the Class by actively participating in the litigation including reviewing relevant pleadings and remaining

apprised of the status of the case, preserving and collecting documents for production, and performing their duties in discovery. Bruckner Decl. ¶ 15. They are committed to continuing to perform these duties and representing the Settlement Class members throughout the course of this litigation. *Id.*

### B. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Settlement Class satisfies Rule 23(b)(3) by showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance in direct purchaser antitrust actions has been found where "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis[.]" *See In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002). Common questions need only predominate; they need not be dispositive of the litigation. *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) ("[a]s a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment") (quoting *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993)). In this direct purchaser antitrust conspiracy case, the central common question of the existence of the conspiracy drives the issue of liability and

damages as to the Settlement Class members. 4 *Newberg on Class Actions* § 18.28 at 102 (4th ed. 2002) ("As a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions."); *Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *Sullivan v. DB Invs.*, 667 F.3d 273, 298-301 (3d Cir. 2011) (holding predominance is met because antitrust conspiracy claims necessarily turn on defendants' common course of conduct and a common theory of market impact).

Plaintiffs must also show that a class action is superior to individual actions. Superiority is evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).

Here, any Settlement Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Since thousands of Settlement Class members purchased Pork during the Class Period, settling these claims in the context of a class action conserves both judicial and private resources and hastens the Settlement Class members' recovery. Finally, while DPPs see no management difficulties in this case, this consideration is not pertinent to approving a settlement class. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only

class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Accordingly, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to JBS.

## V.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Under Rule 23(e), Class Members are entitled to reasonable notice of the proposed Settlement. *See* Manual for Complex Litig. §§ 21.312, 21.631 (4th ed. 2011). For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) states:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The form of notice is "adequate if it may be understood by the average class member." 4 *Newberg on Class Actions* § 11.53 (4th ed. 2002).

Settlement notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Notice need not provide "a complete source of information" or an exact amount of recovery for

each class member. *Id.* (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995)). Best notice practicable means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen*, 417 U.S. at 176. Furthermore, in addition to United States mail, notice may be by electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Other members may be notified by publication. *City of Greenville v. Syngenta Crop Prot.*, No. 3:10-CV-188, 2012 WL 1948153, at \*4 (S.D. Ill. May 30, 2012).

The proposed notice plan in this case satisfies these criteria. DPPs propose to the Court a plan of notice that comports with due process and provides reasonable notice to known and reasonably identifiable customers of JBS pursuant to Rule 23. The class notice documents, consisting of the long form, email, and publication notice, comply with the requirements of Rule 23(c)(2)(B). *See* Class Notice Documents, attached to the Declaration of Eric Schachter ("Schachter Decl.") as Exhibits B through D. The notice documents define the Settlement Class, describe the nature of the action, summarize the class claims, and explain the procedure for requesting exclusion from the Settlement Class and objecting to the proposed Settlement. *Id.* The notice documents describe the terms of the Settlement Agreement, and inform the Settlement Class members that there is no plan of distribution at this time. *Id.* The notice documents will provide the date, time and place of the Final Fairness Hearing (once that hearing is set by the Court), and inform Settlement Class

Members that they do not need to enter an appearance through counsel, but may do so if they choose. *Id.*

The proposed notice plan also comports with due process and Rule 23. The plan includes: (1) direct notice by U.S. mail and email to Class members who can be identified by reasonable effort, including but not limited to Defendants' customer lists; (2) publication of the summary notice in industry-related mailed and digital media; and (3) the posting of notice on a case website to be created. Schachter Decl. ¶¶ 6-13. Since the Settlement Class members in this case purchased Pork directly from Defendants, DPPs intend to obtain mailing addresses for the vast majority of Settlement Class members from Defendants' customer lists, and will rely to the extent practicable on direct mail and email to Class Members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs have retained A.B. Data Ltd., an experienced national class action notice provider and claims administrator, to administer the notice plan. Schachter Decl. ¶¶ 3-4, Ex. A. A.B. Data will mail the long form notice via first-class U.S. mail to Settlement Class Members whose addresses can be identified with reasonable effort through Defendants' records. *Id.* ¶¶ 7-8. A.B. Data will also send the email notice to all Settlement Class Members for whom email addresses can be identified with reasonable effort in the class list data. *Id.* The email notice will provide Settlement Class Members with an electronic link to the settlement website, where they can obtain more information including the long form notice and the Settlement Agreement. *Id.*

A.B. Data further plans to supplement the direct mail and email notice via publication notice, to reach those remaining Settlement Class members that do not receive direct notice of the Settlement. This will include both print and digital media components. Schachter Decl. ¶ 10. This type of notice plan, which relies on direct notice and publication notice, has been successfully implemented in direct purchaser class actions. *See id.* ¶ 15; *see also* Bruckner Decl. ¶ 11, Exh. B (*In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637 (N.D. Ill. Jan. 8, 2020) (ECF No. 3394) (Order Granting Direct Purchaser Plaintiffs' Motion for Preliminary Approval of the Settlements with Defendants Peco Foods, Inc., George's, Inc., George's Farms, Inc., and Amick Farms, LLC)).

A.B. Data will also host the settlement website, providing additional information and documents, and a toll-free number for frequently asked questions and requests for mailing of further information. Schachter Decl. ¶¶ 11-13. The website and call center will be available in both English and Spanish.

DPPs respectfully submit that this multifaceted, comprehensive notice plan provides the best notice practicable under the circumstances of this case and fully satisfies Rule 23 and due process requirements. *See Petrovic*, 200 F.3d at 1153; *DeBoer*, 64 F.3d at 1176; Schachter Decl. ¶ 15. Interim Co-Lead Class Counsel requests that the Court approve the proposed form and manner of notice to the Settlement Class as set forth in the Notice Plan.

## VI.    THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING

The last step in the settlement approval process is the Final Fairness Hearing, at which the Court may hear all evidence necessary to evaluate and determine whether to grant final approval to the proposed Settlement. At that hearing, proponents of the

Settlement may explain and describe their terms and conditions and offer argument in support of the Settlement's approval, and members of the Settlement Class or their counsel may be heard regarding the proposed Settlement if they choose. DPPs propose the following schedule of events necessary for disseminating notice to the Settlement Class and the Final Fairness Hearing.

| DATE | EVENT |
|---|---|
| Within 45 days after entry of the preliminary approval order | Each Defendant to provide a customer list to the Settlement Administrator including any reasonably available names, email addresses, and mailing addresses |
| Within 75 days after entry of the preliminary approval order | Settlement Administrator to provide direct mail and email notice, and commence implementation of the publication notice plan |
| 60 days after the commencement of Notice | Last day for Settlement Class members to request exclusion from the Settlement Class; for Settlement Class members to object to the Settlement; and for Settlement Class members to file notices to appear at the Final Fairness Hearing |
| 7 days after last day to request exclusion from the Settlements | Co-Lead Counsel to provide JBS with a list of all persons and entities who have timely and adequately requested exclusion from the Settlement Class |
| 14 days before Final Settlement Fairness Hearing | Co-Lead Counsel shall file a motion for final approval of the Settlement and all supporting papers, and Co-Lead Counsel and JBS may respond to any objections to the proposed Settlement |

| DATE | EVENT |
|---|---|
| 40 days after last day to request exclusion from the Settlement, or as soon thereafter as the matter may be heard by the Court | Final Fairness Hearing[6] |

## VII.   CONCLUSION

For the aforementioned reasons, DPPs respectfully request that the Court preliminary approve the JBS Settlement, preliminary certify the Settlement Class, approve the proposed notice plan, and enter a schedule for the dissemination of notice to the Settlement Class and Final Fairness Hearing for the Settlement.

---

[6] Under the terms of the Settlement Agreement (¶ 23), within 10 days of the filing of this motion for preliminary approval, JBS shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Under the Act, this Court may not enter an order giving final approval of the proposed settlement earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under 28 U.S.C. § 1715 (b).  DPPs' proposed timetable and "no sooner than" Final Settlement Fairness Hearing date proposed above will allow ample time for the notice required under the Act.

Dated: December 1, 2020

*/s/ W. Joseph Bruckner*

W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Craig S. Davis (MN #0148192)
Simeon A. Morbey (MN #0391338)
Arielle S. Wagner (MN #0398332)
Stephen M. Owen (MN # 0399370)
Stephanie A. Chen (MN #0400032)
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
csdavis@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com
aswagner@locklaw.com
smowen@locklaw.com
sachen@locklaw.com

Clifford H. Pearson (Pro Hac Vice)
Daniel Warshaw (Pro Hac Vice)
Bobby Pouya (Pro Hac Vice)
Michael H. Pearson (Pro Hac Vice)
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T:  (818) 788-8300
F:  (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Bruce L. Simon (Pro Hac Vice)
Neil Swartzberg (Pro Hac Vice)
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
T:  (415) 433-9000
F:  (415) 433-9008
bsimon@pswlaw.com
nswartzberg@pswlaw.com

Melissa S. Weiner (MN #0387900)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
T: (612) 389-0600
F: (612) 389-0610
mweiner@pswlaw.com

*Interim Co-Lead Class Counsel for the Direct Purchaser Plaintiff Class*