# UNITED STATES DISTRICT COURT
# DISTRICT COURT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION,<br><br>This Document Relates To:<br><br>THE DIRECT PURCHASER PLAINTIFF ACTION | Case No. 0:18-cv-01776 (JRT-HB)<br><br>**DECLARATION OF W. JOSEPH BRUCKNER IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT BETWEEN DIRECT PURCHASER PLAINTIFFS AND JBS** |

554854.3

I, W. Joseph Bruckner, declare and state as follows:

1. I am a Partner of the law firm of Lockridge Grindal Nauen P.L.L.P. This Court has appointed me and my firm, together with Pearson, Simon & Warshaw, LLP, as Interim Co-Lead Counsel for Direct Purchaser Plaintiffs and the Direct Purchaser Plaintiff Class in this litigation ("Interim Co-Lead Counsel").

2. I submit this Declaration in support of Plaintiffs' Motion For Preliminary Approval of the Class Action Settlement Between Direct Purchaser Plaintiffs ("DPPs") and defendant JBS.[1]

3. On behalf of DPPs, other Interim Co-Lead Counsel and I personally conducted settlement negotiations with counsel for JBS over a period of many months on many occasions.

4. Well before our clients filed this case in June 2018, we commenced and pursued an extensive investigation of the Pork market and conduct underlying the allegations in DPPs' initial complaint (ECF No. 1). We have litigated this case extensively since then. By the time we signed a binding settlement term sheet with JBS to settle our claims against them, we were fully aware of the strengths and weaknesses of each side's positions. In addition to our extensive pre-filing investigation, we had briefed the motions to dismiss our complaints, and the parties are currently engaged in discovery negotiations. The parties have exchanged initial disclosures and responses to written discovery and have

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as in the Settlement Agreement (also referred to herein as "Settlement"), attached hereto as **Exhibit A**.

produced documents. As a result, we have had the benefit of substantial information obtained from the Defendants through their document productions and through formal discovery.

5. During the litigation, Interim Co-Lead Counsel researched, analyzed, and evaluated many contested legal and factual issues. Based on that analysis, and the information obtained from discovery and cooperation, Interim Co-Lead Counsel were well informed of the facts and the benefits, risks, and consequences of the proposed settlement with JBS. Interim Co-Lead Counsel thoroughly evaluated the relative strengths and weaknesses of our respective litigation positions in relation to this settlement. Based on Class Counsel's investigation there are thousands of direct purchasers of Pork products in the United States who are putative members of the Settlement Class.

6. The discussions with counsel for JBS commenced prior to the Court's ruling on Defendants' initial motions to dismiss, at which time counsel for JBS and DPPs met in person to discuss a possible resolution. The parties were unable to reach an agreement at that time and continued litigating the case, including briefing and arguments relating to Defendants' motions to dismiss. The Court granted JBS' initial motion to dismiss (ECF No. 360), which resulted in DPPs filing the DPPs' Third Amended and Consolidated Class Action Complaint (ECF No. 431), and a second round of motions to dismiss by Defendants. Before the Court denied JBS' second motion to dismiss on October 16, 2020 (ECF Nos. 519, 520), JBS and DPPs recommenced discussions and negotiated in good faith over a two-week period, but did not reach an agreement.

7. After the Court denied JBS' second motion to dismiss, the parties continued their settlement negotiations, this time with the assistance of an experienced and nationally renowned mediator, Professor Eric Green of Resolutions, LLC. The parties and Professor Green held a full day remote mediation on October 28, 2020. While the parties made substantial progress during the mediation, they did not reach agreement on all material settlement terms. Over the next few days the parties continued negotiating, with the assistance of Professor Green, and signed a binding settlement term sheet on November 3, 2020. Thereafter, the parties negotiated the terms of and finalized a long form Settlement Agreement, which was executed on November 17, 2020. A true and correct copy of the Settlement Agreement Between DPPs and JBS, fully executed on November 17, 2020, is attached hereto as **Exhibit A** to this Declaration.

8. The resulting settlement negotiations with JBS were at arm's length and were hard fought at all times. The Settlement was the product of intensive settlement negotiations conducted over a period of many months and included several rounds of give-and-take between Interim Co-Lead Counsel and JBS' counsel. The parties debated many issues, and negotiated many terms of the settlement, including the amount of payment, the timing of payment, potential conditions on payment, the effect of opt-outs on any settlement, and potential cooperation against other Defendants. Throughout this process, JBS has been represented by experienced, sophisticated counsel.

9. There was no collusion or preferential treatment at any time during these negotiations. To the contrary, the negotiations were contentious, hard fought, and fully informed. DPPs sought to obtain the greatest monetary benefit possible from JBS.

Furthermore, there was no discussion or agreement at any time regarding the amount of attorneys' fees Interim Co-Lead Counsel would ask the Court to award in this case.

10. In the Settlement Agreement, JBS commits to pay $24.5 million to the settlement fund within 14 business days of the Court's grant of Preliminary Approval of the Settlement Agreement. Settlement Agreement ¶ 9.[2] JBS also agrees to provide specified cooperation in the DPPs' continued prosecution of the action against the remaining Defendants. The terms of JBS' cooperation are contained in a confidential letter agreement, which will be provided to the Court for *in camera* review upon request. *Id.* ¶ 10.

11. The Settlement Agreement requires Interim Co-Lead Counsel to send out notice to potential members of the Settlement Class of, among other things, the fact and material terms of the proposed settlement, instructions on how to opt out of the proposed class or object to the settlement, and other information. *Id.* ¶ 6. The type of notice plan proposed here, which relies on direct notice to the extent practicable to identified class members who can be identified through reasonable effort, supplemented by publication notice, has been successfully implemented in direct purchaser class actions, including *In re Broiler Chicken Antitrust Litigation*, a copy of which order is attached as **Exhibit B** to this Declaration. (*In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637 (N.D. Ill. Jan. 8, 2020) (ECF No. 3394) (Order Granting DPPs' Motion for Preliminary Approval of the

---

[2] The Settlement also provides JBS with the ability to terminate the Settlement Agreement if members of the Settlement Class representing more than a specified portion of relevant transactions opt out of the Settlement Class. Settlement Agreement ¶ 19. The specified portion of relevant transactions is set forth in a confidential letter, which is being filed under seal and is attached hereto as **Exhibit C**.

Settlements with Defendants Peco Foods, Inc., George's, Inc., George's Farms, Inc., and Amick Farms, LLC)).

12. In my experience, the cost of providing class notice in complex antitrust class actions like this exceeds $100,000, and often costs significantly more.

13. I have practiced law since 1983, I have specialized in antitrust class action law since 1988, and I have prosecuted numerous antitrust class actions as lead counsel or other leadership positions. I have negotiated many settlements during those years. In my opinion, and in that of my Interim Co-Lead Counsel, the proposed settlement agreement with JBS is fair, reasonable, and adequate, and is in the best interests of the Settlement Class members and should be approved by the Court. The settlement provides substantial benefits to the Class, and avoids the delay and uncertainty of continuing protracted litigation with JBS.

14. As demonstrated by the Motion of DPPs to Appoint Interim Co-Lead Class Counsel (ECF No. 94) and Order Granting DPPs' Motion (ECF No. 149), Interim Co-Lead Class Counsel and their attorneys are qualified, experienced, and thoroughly familiar with antitrust class action litigation. We have successfully litigated many significant antitrust actions, and have prosecuted and will continue to vigorously prosecute this lawsuit. We have diligently represented the interests of the Class throughout this litigation and will continue to do so in the future.

15. Each of the named Plaintiffs in this case have chosen to pursue this lawsuit as representatives of the Settlement Class. Since the filing of this lawsuit each of the named Plaintiffs have fulfilled their duties to the Class by actively participating in the litigation

including reviewing relevant pleadings and remaining apprised of the status of the case, preserving and collecting documents for production, and performing their duties in discovery. They are committed to continuing to perform these duties and representing the Settlement Class members throughout the course of this litigation.

16. To the best of Interim Co-Lead Counsel's knowledge, only one individual action has been filed against JBS by direct purchasers who would be members of the proposed settlement class regarding an agreement during the class period to fix prices for Pork Products, and no class member otherwise has expressed an interest in individually controlling separate actions against JBS.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 1st day of December, 2020 at Minneapolis, Minnesota.

*/s/ W. Joseph Bruckner*
W. Joseph Bruckner