UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-cv-1776 (JRT/HB) |
| This Document Relates to:<br><br>All ACTIONS | |

**DEFENDANTS TYSON FOODS, INC., TYSON PREPARED FOODS, INC., AND TYSON FRESH MEATS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL TYSON CUSTODIANS**

**INTRODUCTION**

Plaintiffs' motion to compel seeks to add Tyson[1] board member John Tyson and former board member Donald "Don" Tyson to the 29 custodians from throughout the Tyson organization that Tyson has already agreed to include as custodians—including every CEO of Tyson Foods, Inc. throughout the relevant time period. As Tyson has explained, however, neither Don nor John Tyson were involved in production planning or other day-to-day operations of Tyson's pork business. Plaintiffs nevertheless remain stubbornly focused on obtaining their files, apparently motivated by the mistaken belief that the Tyson family name somehow gives them unique knowledge of and involvement in every aspect of Tyson's business. Yet Plaintiffs fail to point to a *single fact* connecting either of them to Tyson's *pork* business, much less to the specific claims made in Plaintiffs' complaints. The information Plaintiffs seek is thus neither relevant nor proportional to the needs of the case, and Tyson respectfully requests that their motion be denied.

**ARGUMENT**

Plaintiffs have no justifiable basis to compel Don Tyson and John Tyson as document custodians in the present litigation. Tyson has agreed to produce materials from the files of 29 senior executives and other managerial employees from all relevant areas of Tyson's pork business, including pricing, procurement, sales, operations, production, finance, investor relations, and Agri Stats reporting, throughout the relevant

---

[1] "Tyson" refers to Defendants Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc.

1

Class Period. These custodians include all employees likely to have unique information relevant to the pork output restriction and information exchange conspiracy alleged by the Plaintiffs.

As Plaintiffs acknowledge, courts compel inclusion of senior executives as ESI custodians only when justified, based on 1) the executive's "level of involvement in discussions and decisions serving as the basis for the claims at issue in the case"; and 2) the uniqueness of the data as compared to the data available from other designated custodians. Pls' Memo. Law in Support of Pls' Mot. to Compel Custodians and Docs. 11-12, ECF No. 557, *In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/HB) (D. Minn. Dec. 7, 2020) [hereinafter "Memo. in Support of Pls' Mot. to Compel"] (citing *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018)). The party responding to discovery requests is in the best position to make custodial decisions, and the designation of additional custodians should not be compelled unless the party's choice is "manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient." *In re EpiPen*, 2018 WL 1440293, at *2 (D. Kan. March 15, 2018).

The party seeking to compel the designation of an ESI custodian bears the burden of showing that the disputed custodian's ESI likely includes information relevant to the claims or defenses in the case. *Mortgage Resolution Serv., LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. Sept. 16, 2020). To carry that burden, it is not enough for the party to point to the individual's high-ranking position, because it is

2

"equally plausible" that a senior-level executive "would have less information about specific transactions than employees lower in the hierarchy." *Id.* at *2. Even where plaintiffs can demonstrate that executives were directly involved in the business functions at issue in a case—a showing Plaintiffs have not come close to making with respect to the Tysons—courts have consistently rejected attempts to designate executives as custodians without a showing that they would likely possess uniquely relevant ESI. *See Houston v. Papa John's Int'l, Inc.*, No. 3:18-CV-00825-CHB, 2020 WL 6588505, at *2 (W.D. Ky. Oct. 30, 2020) (executive shown to have approval authority over a relevant function could not be compelled because plaintiffs had no basis to assume the data would be "unique" as compared to offered custodians); *Blackrock Allocation Target Shares: Series S. Portfolio v. Bank of N.Y. Mellon*, 14 Civ. 9372 (GBD) (HBP), 2018 WL 2215510, at *12 (S.D.N.Y. May 15, 2018) (executive shown to have "general knowledge" of alleged misconduct could not be compelled because plaintiffs failed to establish data's "marginal utility"); *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (showing that executives were "in charge of" a relevant function was not sufficient "to justify their inclusion as custodians").

      Plaintiffs fail to establish that Don Tyson or John Tyson had a "significant level of involvement in discussions and decisions" relating to Tyson's pork business. *In re EpiPen*, 2018 WL 1440293, at *2. Courts' concern that senior executives "would have less information about specific transactions than employees lower in the hierarchy" applies even more here, where the custodians sought *were not even executives* within the relevant time period, but were instead board members. *Mortgage Resolution Serv., LLC*,

3

2017 WL 2305398, at *2.  They were thus even further removed from the actual running of the business than the executives discussed in the cases above—as well as the senior executives Tyson has already agreed to designate as custodians.  Indeed, Plaintiffs cite *no cases* compelling board members who were not also C-level executives as custodians.

While both Don Tyson and John Tyson served on Tyson's Board of Directors during the Class Period—Don Tyson from 2009 until his death in January 2011 and John Tyson throughout the entire Period—neither had an operational role at Tyson during that time.  They did not regularly visit Tyson's Dakota Dunes facilities (where Tyson's pork business is based) or engage in production planning for Tyson's pork operations.  Decl. of Stephen Stouffer ("Stouffer Decl.") at ¶¶ 9-11, 15-17.  And while it is true that both devoted their professional careers and provided "critical insight" to the historically chicken-focused family business, Memo. in Support of Pls. Mot. to Compel 13-14, this says nothing about the likelihood that either would possess unique and relevant information about Tyson's *pork* business during the Class Period, or more specifically, the pork supply and pricing decisions at issue in this case.[2]  Finally, while Plaintiffs rely on Don Tyson's "shadow" as a former CEO and Chairman of the Board (Memo. in Support of Pls. Mot. to Compel 13), the reality is that he vacated the CEO position in 1991 (18 years prior to the start of the Class Period), and stepped down as senior chairman in 2001 (8 years prior to the start of the Class Period, and the same year that Tyson first became a significant pork producer through its acquisition of IBP).  Thus, the

---

[2] Even in the chicken-focused *Broiler* litigation, only Don Tyson, and not John Tyson, was included as a document custodian.

4

Tysons' connection to the alleged conduct at issue in this case is tenuous at best.  *See, e.g.*, *Kreuger v. Ameriprise Fin., Inc.*, 2013 WL 12139425, at *10 (D. Minn. Aug. 15, 2013) (finding a former CFO was not a relevant custodian because his role was "too tangential to warrant adding him to the list of custodians").

Even if Plaintiffs could establish that Don or John Tyson might have relevant information relating to Tyson's pork business, compelling their designation as custodians would still be unwarranted because their data would be duplicative of the 29 custodians Tyson has already agreed to designate.  *See In re EpiPen*, 2018 WL 1440923, at *2 (acknowledging that designation can be compelled only where the data sought is unique from that possessed by previously designated custodians).[3]  For example, Plaintiffs cite to an article stating that CEO Donnie Smith and John Tyson had regular conversations.  Memo. in Support of Pls. Mot. to Compel 14.  However, the CEO and Mr. Tyson speaking "at least once a week" in Springdale, Arkansas, *id.*, does not show a significant level of involvement in Tyson's pork operations, which are run out of Dakota Dunes, South Dakota.  Stouffer Decl. at ¶¶ 11-13, 17-19; *see In re EpiPen*, 2018 WL 1440293, at *4.  Moreover, Tyson has already agreed to designate Donnie Smith, along with all of the other CEOs that served throughout the Class Period.  A court should not designate an additional custodian when the party seeking documents will receive duplicative information from other sources.

---

[3] *See also* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery . . . if it determines that[] the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source.").

5

Tyson has made a good faith effort to identify and designate as custodians its current and former employees most likely to possess information relevant to Plaintiffs' allegations. Indeed, in the spirit of compromise, Tyson has already agreed to more than double the number of custodians it initially proposed. Additionally, Tyson offered a "wait-and-see" approach so that Plaintiffs could review the files of the offered custodians and determine on the basis of those documents whether they have any reasonable basis to require Don Tyson and John Tyson as custodians.[4] Plaintiffs flatly rejected the offer.

Plaintiffs should not be permitted to require production of irrelevant or duplicative materials of two board members simply because they bear the Tyson family name. The Court should deny the motion to compel the designation of Don Tyson and John Tyson as custodians in this litigation.

## **CONCLUSION**

For the foregoing reasons, the Plaintiffs' Motion to Compel should be denied.

---

[4] Courts have signaled approval of such an approach in similar circumstances involving disputed custodians. *See, e.g., Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) ("If documents produced during discovery indicate that [disputed custodians] were in close communication with the current custodians about the [the subject matter of the litigation], or were otherwise involved in any wrongdoing, they may be added at a later time.").

6

Dated: December 21, 2020                    Respectfully submitted,

                                                s\ David P. Graham
David P. Graham (MN ID# 0185462)
DYKEMA GOSSETT PLLC
90 S 7th Street, FL 2
Minneapolis, MN 55402
Telephone: 612-486-1521
dgraham@dykema.com

Rachel Adcox (*pro hac vice*)
Tiffany Rider (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
950 F. Street, NW
Washington, DC 20004
Telephone:  202.912.4700
radcox@axinn.com
trider@axinn.com

Jarod Taylor (*pro hac vice pending*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Telephone:  860.275.8109
jtaylor@axinn.com

***Counsel for Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc.***

7