**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-cv-01776 (JRT/HB) |
| This Document Relates To:<br><br>ALL ACTIONS | **JBS USA FOOD COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CUSTODIANS AND DOCUMENTS** |

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..............................................................................................................3

ARGUMENT ....................................................................................................................5

    A.    Plaintiffs' Speculation Cannot Justify Their Burdensome Demand for the
Disputed Custodians .............................................................................................5

    B.    The Requested Custodians Are Not the Decision-Makers Regarding Pork
and Hog Supply and Pricing ................................................................................7

    C.    Plaintiffs' Request Is Premature and Unnecessary ...............................................14

CONCLUSION................................................................................................................14

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*,
2013 WL 1195545 (S.D.N.Y. Mar. 25, 2013) ........................................................ 12

*Blackrock Allocation Target Shares:  Series S. Portfolio v. Bank of N.Y. Mellon*,
2018 WL 2215510 (S.D.N.Y. May 15, 2018) ............................................. 6

*Enslin v. Coca-Cola Co.*,
2016 WL 7042206 (E.D. Pa. June 8, 2016) ................................................. 8

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013) ................................................................. 13

*Harris v. Union Pac. R.R. Co.*,
2018 WL 2729131 (D. Neb. June 6, 2018) ................................................. 6

*Houston v. Papa John's Int'l, Inc.*,
2020 WL 6588505 (W.D. Ky. Oct. 30, 2020) ....................................... 6, 14

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
2018 WL 1440923 (D. Kan. Mar. 15, 2018) ..................................... 2, 6, 14

*In re Pork Antitrust Litig.*,
2019 WL 3752497 (D. Minn. Aug. 8, 2019) ............................................... 9

*Krueger v. Ameriprise Fin., Inc.*,
2013 WL 12139425 (D. Minn. Aug. 15, 2013) ........................................... 6

*Lutzeier v. Citigroup Inc.*,
2015 WL 430196 (E.D. Mo. Feb. 2, 2015) ........................................... 8-9, 14

*MariCal Inc. v. Cooke Aquaculture, Inc.*,
2016 WL 9459260 (D. Me. Aug. 9, 2016) ................................................ 14

*Mortg. Resolution Serv., LLC v. JPMorgan Chase Bank, N.A.*,
2017 WL 2305398 (S.D.N.Y. May 18, 2017) ............................................. 7

## PRELIMINARY STATEMENT

Following extensive meet and confers with Plaintiffs,[1] JBS USA has agreed to designate 28 current and former employees as document custodians, including all of the members of its Pork Management Team during the relevant time period for document discovery (January 1, 2008 to June 30, 2018).  This includes Marty Dooley, who led the Pork Management Team from 2007 until late 2019 in his role as President & Chief Operating Officer (COO) of JBS USA's pork business.  The Pork Management Team runs JBS USA's pork business on a day-to-day basis, and the executives *within* that group (*i.e.*, individuals such as Mr. Dooley) make the pork-related business decisions related to supply and pricing.  Mr. Dooley and the members of the Pork Management Team are thus the ones with "responsibility for business decisions regarding pork supply, output, and pricing"—the exact type of discovery Plaintiffs claim to seek.  *See* Plaintiffs' Mot. (Dkt. 557) at 15.

Plaintiffs nonetheless demand four additional custodians:  Wesley Batista, Joesley Batista, Don Jackson, and Andre Nogueira (Mot. at 14-16).  Plaintiffs' proposed fishing expedition into the files of senior executives should be denied for the following reasons.

*First*, Plaintiffs' burdensome demand is based solely on the conclusory speculation that these individuals may have had relevant communications because of

---

[1]   Although the motion was filed on behalf of Plaintiffs in all three proposed class cases, JBS had already reached a settlement agreement with the DPPs in which the DPPs agreed to "cease all litigation activities against JBS."  Dkt. 543-1, Ex. A, ¶ 3.  As such, the motion is not brought by DPPs against JBS.  Counsel for JBS has conferred with DPP counsel regarding this and they confirmed that this reflects their view as well.

their senior roles.  But Plaintiffs' own cited authority recognizes such speculation is insufficient to meet their burden of showing that the disputed custodians possess relevant, non-duplicative information.  *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018) ("mere speculation . . . is not a basis for designating" senior executives as custodians) (cited at Mot. 11 n.23).

*Second*, Plaintiffs' demand is unnecessary, because the four disputed document custodians did not make JBS USA's "business decisions regarding pork supply, output, and pricing."  (Mot. at 15.)  The individuals that *did* make those decisions have already been designated as custodians.  In contrast, the four disputed custodians focused their efforts on:  (1) JBS USA's broader business issues, including as to unrelated products (such as beef and lamb) and unrelated markets (such as Australia); and (2) the management of JBS USA's ultimate parent company (JBS S.A.) in Brazil.

*Third*, Plaintiffs' demand is at the very least premature, because JBS USA has already agreed that Plaintiffs can "reserve their right" to seek the collection of documents from the disputed custodians at a later date, if discovery reveals a legitimate basis for doing so—a fact entirely omitted from Plaintiffs' motion.  Plaintiffs also fail to mention that, during the meet and confer process, Plaintiffs *agreed* to take the same "wait-and-see" approach with respect to the current Chief Financial Officer (CFO) of JBS USA.  Plaintiffs offer no explanation why such an approach is workable for the CFO but not for the senior-level custodians at issue.

## BACKGROUND

Plaintiffs' motion does not mention considerable concessions that JBS USA has made during the meet-and-confer process and the fulsome search efforts JBS USA has agreed to undertake.

JBS USA initially proposed—and still maintains—that the appropriate set of document custodians for this litigation should be drawn from those serving as key senior leadership of JBS USA's pork business (referred to as the Pork Management Team). This includes Mr. Dooley, who served as the President and COO of JBS USA's pork business and who led the Pork Management Team from 2007 to late 2019.[2]  *See* Declaration of Chris Gaddis ("Gaddis Decl.") ¶ 7.  The 12 Pork Management Team custodians originally proposed by JBS USA made day-to-day decisions about the following matters during the relevant time period:  (1) JBS USA's procurement and raising of hogs for pork processing; (2) JBS USA's pork processing; and (3) the price and supply of pork processed and sold by JBS USA.  Gaddis Decl. ¶ 6; Declaration of Sami Rashid ("Rashid Decl.") ¶¶ 3-4, 6.  Also included in JBS USA's initial proposal were the individuals primarily responsible for overseeing the use of Agri Stats by JBS USA's pork business.  Gaddis Decl. ¶ 11; Rashid Decl. ¶¶ 3-5.  All told, the initial set of custodians included, among others, the individuals who held the following positions during the relevant time period:

- the Pork President and COO;
- the Head of Pork Operations;

---

[2]  Mr. Dooley's successor (Bob Krebs) was also proposed as a document custodian as he served as the Head of Pork Operations during the relevant period.

- the Head of Hog Procurement;
- the Head of Live Operations;
- the Head of Processor Sales;
- the Head of Boxed Pork Sales;
- the Head of International Sales;
- the Head of Business Analysis, Transportation and Scheduling; and
- the Head of Finance.

Rashid Decl. ¶ 4.

JBS USA maintains that these individuals are the appropriate custodians for this litigation given their roles and responsibilities. Nonetheless, following months of extensive meet and confers with Plaintiffs, *JBS USA agreed to add another 16 document custodians*—for a total of 28 custodians. Rashid Decl. ¶ 8. This includes not only all relevant members of the Pork Management Team during the relevant time period,[3] but also a number of the employees that reported to members of the Pork Management Team during the relevant time period. *Id*. ¶¶ 4-6, 8. In addition, JBS USA has agreed to search non-custodial files, including any repository of board-related documents as well as any presentations or reports prepared or received on a regular, periodic basis by management. *Id*. ¶ 9.

Despite all that JBS USA has agreed to do, Plaintiffs nonetheless sought to expand the list of custodians even further to the four individuals that are the subject of their current motion. Plaintiffs also requested that JBS USA designate as custodians Denilson Molina, the CFO of JBS USA since 2012, and Cameron Bruett, who has held a position

---

[3]  JBS USA did not propose, and Plaintiffs did not seek, the inclusion of one member of the Pork Management Team (the Head of Human Resources) as a document custodian. Gaddis Decl. ¶ 9; Rashid Decl. ¶ 5.

regarding Corporate Communications, Industry Affairs & Sustainability since 2012. Rashid Decl. ¶¶ 7, 12.  Seeking to avoid motion practice, JBS USA proposed that the parties defer any final decisions on the disputed custodians until after Plaintiffs have had an opportunity to review documents that will be produced from the files of the agreed-upon custodians, including the Pork Management Team.  At that point, if Plaintiffs still believe there is a legitimate basis for doing so, Plaintiffs would be free to re-propose document production from any of the six senior executive disputed custodians, and the parties would meet and confer about such requests.  Rashid Decl. ¶ 11.  While Plaintiffs agreed to that exact process as to two of the disputed custodians—that is, Mr. Molina, the current CFO of JBS USA, and Mr. Bruett—they rejected it as to the four remaining custodians, precipitating this dispute.  Rashid Decl. ¶ 12.

## ARGUMENT

Against this backdrop, Plaintiffs' request that the files of the four disputed custodians be searched at this time should be denied.

### A. Plaintiffs' Speculation Cannot Justify Their Burdensome Demand for the Disputed Custodians

*First*, at its core, Plaintiffs' request is supported by nothing more than their own speculation that the four individuals may have had relevant communications because they "held senior executive roles at JBS or its parent company" (Mot. at 15).  For example, Plaintiffs hypothesize—with no support whatsoever—that two of the requested custodians may have had relevant "direct communications" on which no other individuals

were copied (Mot. at 16).  That is insufficient to meet Plaintiffs' burden.[4]  Indeed,

Plaintiffs' *own cited authority* acknowledges such "mere speculation . . . is not a basis for

designating" senior executives as custodians.  *See In re EpiPen Mktg.,* 2018 WL

1440923, at *2 (cited at Mot. 11 n.23).

This is particularly true here, because—as explained further below and in the

accompanying Gaddis Declaration—the disputed custodians have many responsibilities

spanning numerous, unrelated business lines and other markets.  Gaddis Decl. ¶¶ 8, 13.

The low likelihood the disputed custodians possess relevant materials is far outweighed

by the burden of searching their files.[5]

Even a preliminary analysis reveals the disputed custodians possess hundreds of

thousands of documents that will cost significant sums of money to collect, process,

review, and produce.  Gaddis Decl. ¶ 18.  And because the disputed custodians are senior

executives who oversee broader business issues—including as to unrelated products and

unrelated markets—they likely possess a high volume of privileged, irrelevant, or

---

[4]   *E.g.*, *Houston v. Papa John's Int'l, Inc*., 2020 WL 6588505, at *2-3 (W.D. Ky. Oct. 30, 2020) (in antitrust case, noting that requesting party has "the initial threshold burden of showing" relevance; denying request to add former CEOs as custodians where plaintiffs "only ma[d]e general assertions" about their relevance); *Harris v. Union Pac. R.R. Co.*, 2018 WL 2729131, at *4 (D. Neb. June 6, 2018) (denying request to add CEO as custodian because "there has not been a sufficient showing that this information is necessary and not cumulative").

[5]   *See Blackrock Allocation Target Shares:  Series S. Portfolio v. Bank of N.Y. Mellon*, 2018 WL 2215510, at *12 (S.D.N.Y. May 15, 2018) (denying motion to compel senior executives as custodians because their "marginal utility" was "low"); *Krueger v. Ameriprise Fin., Inc*., 2013 WL 12139425, at *8-*9 (D. Minn. Aug. 15, 2013) (denying request to add president and CEO as custodian because "[h]e had no involvement with" the decisions at issue).

commercially sensitive materials that would require a time-consuming and burdensome review to ensure their documents are responsive, appropriately withheld, or redacted. *See* ESI Protocol Order (Dkt. 292) at § II.K (allowing for the redaction of otherwise responsive documents for "highly confidential business information relating to non-pork businesses"); *Mortg. Resolution Serv., LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *3 (S.D.N.Y. May 18, 2017) (denying request to add senior executive as custodian because he might "have less information about specific transactions than employees lower in the hierarchy" and "the cost and burden would be disproportionate").

## B. The Requested Custodians Are Not the Decision-Makers Regarding Pork and Hog Supply and Pricing

*Second*, while JBS USA does not dispute that the some of the custodians had "ultimate responsibility" (Mot. at 15-16) for the pork business unit in the U.S. at various times, those high-level responsibilities are unrelated to Plaintiffs' allegations. As its core, Plaintiffs' complaints focus on decision-making concerning the amount of hogs procured, the amount of pork processed, and the prices at which pork was sold in the U.S.[6] But, as has been explained to Plaintiffs during the meet-and-confer process, these key decisions were not made by any of the disputed custodians but by the Pork Management Team. Gaddis Decl. ¶ 8; Rashid Decl. ¶ 10. Indeed, members of the Pork Management Team meet multiple times a day to assess and make those very decisions. Gaddis Decl. ¶ 6.

---

[6] *See, e.g.*, IPP Compl. (Dkt. 392) ¶¶ 1 (describing the conspiracy as "defendants' collusion stabilizing the price and supply of pork being sold to consumers *on a daily basis*"); 98 (alleging "the pork processors *acted in a concerted way to decrease supply*"); 193 (describing Defendants' alleged "*decisions to reduce supply* while raising the price of pork") (emphasis added throughout).

Plaintiffs provide no reason to "second-guess[]" JBS USA's showing that the proposed custodians are not the individuals charged with making the types of decisions underlying the conduct that is at the core of the Complaint.  *See Enslin v. Coca-Cola Co.*, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (declining to "second-guess[] the responding party's representation" about custodians and denying request to add additional custodians).[7]

In the few instances Plaintiffs attempt to make a relevance showing for any of the proposed custodians, their efforts fall flat:

***Joesley Batista (CEO of JBS S.A., 2007-2011)***:  Plaintiffs acknowledge Joesley Batista never held any relevant role at JBS USA, and their own cited source explains that he "stayed in Brazil" and focused on JBS USA's ultimate Brazilian parent company (JBS S.A.).  Mot., Ex. U (Dkt. 558-21) at 5.[8]  Plaintiffs are left with only vague innuendo about Joesley Batista's "control" of JBS generally and "communications" he supposedly may have had at unspecified points in time (Mot. at 15-16), which is insufficient to justify adding him as a custodian.  *E.g.*, *Lutzeier v. Citigroup Inc*., 2015 WL 430196, at

---

[7]  Plaintiffs' argument that other Defendants have added custodians "whom supervised their entire business operations" (Mot. at 17) is likewise off point because each company is obviously different.  That a CEO at another company may be a relevant custodian given the way that company is managed says nothing about whether JBS USA's CEO is a relevant custodian.  Here, JBS has *already agreed* to add the custodians who managed and made the relevant decisions concerning JBS USA's pork business.

[8]  Although Joesley Batista served as a board member of JBS USA from 2007-2017, that is not Plaintiffs' basis for adding him as a custodian presumably because:  (i) board members are not charged with pork-related supply and pricing decisions; and (ii) as noted, JBS USA has already agreed to provide Plaintiffs with board-related documents from any centralized repository.  Gaddis Decl. ¶ 15; Rashid Decl. ¶¶ 9-10; *supra* at 5.

*7 (E.D. Mo. Feb. 2, 2015) (denying request to add executives as custodians where plaintiff failed to show they had "unique or personal knowledge" of relevant issues).

Moreover, Plaintiffs' apparent focus on discovery of JBS S.A. is not only unnecessary, given that this litigation focuses on the United States. It is also unprincipled given that they *dismissed JBS USA's immediate parent company* (JBS USA Food Company Holdings) from the lawsuit. *See* Notice of Voluntary Dismissal of Defendant JBS USA Food Company Holdings (Dkt. 397). Tellingly, they did so after Judge Tunheim held that "in order for antitrust allegations against a subsidiary to be fairly made against the parent company, there must be allegations that the parent company actually engaged in anti-competitive conduct and not merely that it served as parent to its wholly-owned subsidiary." *In re Pork Antitrust Litig*., 2019 WL 3752497, at *9 n.11 (D. Minn. Aug. 8, 2019). Given that history, Plaintiffs' attempt to now seek discovery from an individual who worked at a different parent company in Brazil does not withstand scrutiny.

**Wesley Batista (President & CEO of JBS USA, July 2007-2010)**: Plaintiffs note that Wesley Batista had "responsibilities related to pork" and "investor/creditor relations," and was an "owner[] and operator[] of both JBS USA and its parent companies" (Mot. at 15).[9] These general descriptions overlook that his specific responsibilities did not encompass the pork and hog pricing or supply decisions that are

---

[9]  Mr. Bruett also had responsibilities for "investor/creditor relations," and as noted above, Plaintiffs have agreed to defer any request that he be added as a custodian, confirming there is no need, or at least urgency, to add individuals with such responsibilities as custodians.

the subject of Plaintiffs' complaints.  Gaddis Decl. ¶ 14.  Rather, in his role as JBS

USA's President and CEO, he oversaw JBS USA's entire business, including unrelated

products such as beef and lamb, its investment in a chicken business, and its operations in

Australia.  Gaddis Decl. ¶¶ 3, 14.

Plaintiffs also claim that "Wesley [Batista] and Joesley [Batista] run the company"

based on statements in a 2011 news article (Mot. at 15), but Plaintiffs mischaracterize

that source.  It actually states:  "[The family is] very responsible to the other shareholders

and creditors.  ***In that sense Wesley and Joesley run the company unlike many family-***

***controlled businesses***."  Mot., Ex. U at 7 (emphasis added).  That the Batistas run "the

company"—a reference to JBS S.A., the ultimate Brazilian parent company of JBS

USA—and in a manner that is "responsible to . . . shareholders and creditors" says

nothing about whether they possess documents about *Plaintiffs' allegations* concerning

the U.S. pork industry.[10]

Next, Plaintiffs cite three "public statements made by Wesley Batista" that are

referenced in the complaints.  (Mot. at 15.)  But these statements, which are drawn from

earnings call reports, are not probative of Mr. Batista's involvement in the issues raised in

this litigation.  Rather, the statements concern general, industry-wide hog supply trends

that predate the 2015 acquisition of Cargill's pork business—*i.e.*, the point at which JBS

---

[10]   Plaintiffs reference a statement in the same article that Wesley and Joesley Batista are
"always talking, always debating."  Mot., Ex. U at 5.  There is nothing probative about
this.  The Batistas are brothers who presumably have many reasons for "talking," and the
discussions referenced in the article appear to have concerned high-level financial issues,
not JBS USA's pork business.  *Id.*

USA became a hog supplier—and *do not relate to supply decisions made by JBS USA.* *See* IPP Compl. ¶¶ 148-149 (noting the 2015 Cargill asset acquisition); IPP Compl. ¶¶ 109 (describing 2009 supply trends), 117 (similar, in 2010), 123 (similar, in 2013).  If anything, the transcripts cut *against* adding Mr. Batista as a custodian, because they expressly confirm that JBS USA did not "have hog production" when he served as its President and CEO.[11]  They further show that adding him as a custodian would be disproportionately burdensome, because his responsibilities encompassed unrelated products like "cattle" and "chicken."[12]

Last, Plaintiffs note that Wesley Batista (like Mr. Nogueira) "served on the board of directors for the North American Meat Association."  (Mot. at 16).  But such trade association allegations are, at best, tangential to Plaintiffs' alleged conspiracy, which focuses on Defendants' communications through Agri Stats.[13]  Moreover, Plaintiffs do not argue that any of the disputed custodians were the only JBS USA employees affiliated with the North American Meat Association, and Plaintiffs have served a subpoena on its successor organization (the North American Meat Institute, or "NAMI")

---

[11]   *See* Ex. B, Aug. 13, 2009 Earnings Conference Call Transcript (cited at IPP Compl. ¶ 109), at 15 (emphasis added).

[12]   *See* Ex. C, Mar. 8, 2010 Earnings Conference Call Transcript (cited at IPP Compl. ¶ 117), at 17.

[13]   *See, e.g.*, IPP Compl. ¶ 5 ("Agri Stats' provision of detailed and sensitive information *acted as the proverbial smoke-filled room of the cartels of yesteryear*") (emphasis added); CIP Compl. (Dkt. 432) ¶ 49 ("*Agri Stats was key to the formation, operation, and continuing stability of the Defendants' anticompetitive scheme.*") (emphasis added).

seeking similar materials.  Rashid Decl. ¶¶ 13-14.[14]  Plaintiffs thus provide "no good reason" to believe the disputed custodians are necessary to capture relevant documents (if any) related to the North American Meat Association.  *See Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, 2013 WL 1195545, at *3-4 (S.D.N.Y. Mar. 25, 2013) (committee membership insufficient to add senior executives as custodians where "[t]here is no good reason [] to believe" other custodians did not have similar documents).

*Andre Nogueira:  President & CEO of JBS USA, January 2013-present; CFO of JBS USA, July 2007-January 2012)*:  As with Wesley Batista's tenure as President and CEO of JBS USA, Mr. Nogueira's responsibilities in that role have not been focused on pork supply and pricing decisions in the U.S. (which were left to the Pork Management Team).  Gaddis Decl. ¶ 17.  Indeed, unlike Mr. Dooley, who was President of JBS USA's pork business, Mr. Nogueira's responsibilities span all of JBS USA's business lines and encompass non-U.S. markets.  Gaddis Decl. ¶ 17.

Nor does Mr. Nogueira's former role as JBS USA's CFO warrant his designation as a custodian.  As noted above, JBS USA has already agreed to include the current and former Head of Finance for the pork business as a document custodian, ensuring that Plaintiffs will receive responsive, finance-related documents.  *Supra* at 4.  As also noted above, Plaintiffs have agreed to defer the current CFO of JBS USA (Mr. Molina) as a

---

[14]   Although NAMI has served objections to the subpoena, it appears willing to produce at least some documents, confirming there is no urgency to adding Mr. Nogueira or Mr. Batista as custodians.

document custodian, demonstrating there is no pressing need for the files from Mr. Nogueira.  Rashid Decl. ¶ 12.

**Don Jackson (President & CEO of JBS USA, December 2010-December 2012):** Plaintiffs' demand that Don Jackson be added as a document custodian, based on his role as the President and CEO of JBS USA, fails for the same reasons as outlined above for Wesley Batista and Mr. Nogueira.  Gaddis Decl. ¶ 16.  Plaintiffs speculate that Mr. Jackson *may* have had relevant communications with Mr. Nogueira when Mr. Nogueira served as CFO (Mot. at 16).  But there is no basis simply to speculate that two individuals responsible for JBS USA's broader business lines would have had isolated one-on-one communications concerning the amount of hogs procured, the amount of pork processed, or the prices at which pork was sold.  Any such communications would almost certainly involve other members of the Pork Management Team, such as the President and COO of the pork business, who are already agreed-upon custodians.  *E.g.*, *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (denying custodian request where plaintiffs failed to show proposed custodians had "*unique* relevant information" about the subject matter; merely being "in charge" of relevant subjects "does not justify their inclusion as custodians").  And, as with the other disputed custodians, given Mr. Jackson's many responsibilities, searching his files would likely

generate a large volume of irrelevant documents and place a disproportionate burden on JBS USA.  Gaddis Decl. ¶ 18.[15]

### C. Plaintiffs' Request Is Premature and Unnecessary

*Finally*, Plaintiffs' motion should be denied as untimely and unnecessary, because JBS USA has already agreed that Plaintiffs may renew their request for documents from the files of the disputed custodians if discovery later shows that doing so is truly necessary.  Plaintiffs have agreed to the same process for Mr. Molina (the current CFO) and Mr. Bruett, confirming it is workable.  Other courts have concluded that it is appropriate to defer searches of senior executives in this manner, because doing so is more efficient than requiring burdensome and duplicative front-end searches of individuals that are highly likely to prove irrelevant or tangential.  *See Houston*, 2020 WL 6588505, at *2-3 (similar process in antitrust case); *Lutzeier*, 2015 WL 430196, at *7 (similar).  There is thus no reason to grant Plaintiffs' motion.

### <u>CONCLUSION</u>

Accordingly, JBS USA respectfully submits that Plaintiffs' motion with respect to JBS USA should be denied.

---

[15]  Plaintiffs' cited cases are distinguishable.  In *In re EpiPen*, the court ordered the defendant to add senior executives as custodians because they were "actively involved in material transactions" and "likely to have unique information."  2018 WL 1440923, at *3-4 (D. Kan. Mar. 15, 2018) (cited in Mot. at 11 n.23).  Similarly, in *MariCal Inc. v. Cooke Aquaculture, Inc*., the court ordered the defendants to add a custodian due to his "personal involvement" in activities related to alleged patent infringement.  2016 WL 9459260, at *2 (D. Me. Aug. 9, 2016) (cited in Mot. at 18 n.40).  The same is not true of the requested custodians, as shown above.

Dated:  December 21, 2020

*/s/ Jessica J. Nelson*
Donald G. Heeman (#286023)
Jessica J. Nelson (#347358)
Randi J. Winter (#391354)
SPENCER FANE LLP
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
David B. Adler (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
davidadler@quinnemanuel.com

*Counsel for JBS USA Food Company*