**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>Direct Purchaser Plaintiff and Direct Action Plaintiff Actions | No. 0:18-cv-01776<br><br>Hon. John R. Tunheim<br>Magistrate Judge Hildy Bowbeer |

## DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF A SET-ASIDE ORDER

Direct Purchaser Plaintiffs ("DPPs"), by and through their undersigned counsel ("DPP Counsel"), hereby move this Court for entry of a set-aside order that sequesters 10% of the monetary value of any settlement or judgment obtained by any Direct Action Plaintiffs ("DAPs") who file lawsuits following the Court's October 20, 2020 order on Defendants' motions to dismiss DPPs' complaint (ECF No. 520), and provides DPP Counsel with a framework for seeking fair and adequate compensation from the fund for the extensive work they have performed that provided a common benefit to DAPs and all direct purchasers of Pork.[1]

## INTRODUCTION

DPP Counsel have devoted enormous time and resources to develop and litigate this case. DPP Counsel invested significant personal and monetary capital into investigating

---

[1] The Commonwealth of Puerto Rico, who has filed its own direct purchaser action, is not the subject of the requested relief because as a governmental entity it is excluded from DPPs' proposed class definition. The only existing DAP that is the subject of this motion is Cheney Brothers, Inc. (filed December 22, 2020, Case No. 0:20-cv-02642).

556807.3

facts, preparing economic analyses, drafting a comprehensive complaint, meeting and conferring on written discovery and the timing of Defendants' production of documents, negotiating document custodians and non-custodial sources of electronically stored information ("ESI"), negotiating an ESI protocol, issuing third-party subpoenas, briefing discovery disputes, defeating Defendants' voluminous motions to dismiss, and reaching an initial ice-breaker settlement of $24.5 million with Defendant JBS USA Food Company. All of DPP Counsel's work has, and will continue to be, performed on a contingency basis. DPP Counsel have undertaken a substantial risk by advancing their own funds to pay for the costs of the case and working without compensation unless and until they achieve a settlement or verdict on behalf of DPPs.

As DPP Counsel continue to improve the prospects of this case, it is inevitable that more DAPs will file their own complaints. The same pattern emerged in a similar direct purchaser case, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill.). There, once the Court denied Defendants' motions to dismiss DPPs' complaint, a number of DAPs filed their own complaints, all closely modeled after DPPs' complaint. Then, as the case progressed and achieved additional milestones, more DAPs filed their own complaints. The wave of DAP filings was precipitated by DPP Counsel's success, and exacerbated by misleading communications from certain counsel for DAPs in their solicitations of new clients. (Declaration of Brian D. Clark ("Clark Decl."), ¶ 6.) Nearly four-and-a-half years into that litigation, additional DAP actions continue to be filed. (*Id.*, ¶ 7.) In this case, now that notice is being provided to class members about DPPs' ice-breaker settlement with Defendant JBS USA Food Company, more DAPs likely will file separate complaints.

Here, DAPs who file after the Court ruled on Defendants' motions to dismiss DPPs' complaint will benefit directly and substantially from DPP Counsel's hard work, expenditure of substantial resources, litigation agreements, and hard-won victories to date, and will continue to do so as the case progresses through fact discovery, expert discovery, *Daubert* motions, and summary judgment. If DPPs take the first direct purchaser case to trial (subject to the Court's later approval of a trial plan), such DAPs will benefit from DPPs' trying an antitrust class action. They will have the advantage of rulings on motions *in limine*, page and line designations for depositions, jury instructions, trial exhibits, stipulations of uncontested facts, and statements of the case. As a matter of fairness such DAPs should not be allowed to reap the benefit of DPP Counsel's substantial efforts without fair compensation.

While a class member has a right to bring its own direct action against Defendants, doing so without compensating class counsel for their time and expenses undermines the class action mechanism and disproportionately burdens the remaining class members. In bringing its own direct action, the former class member takes its commerce with it, which reduces the value of the class members' case. And because it reduces the value of the class members' case, the remaining class members are left to pay a disproportionately larger share for class counsel's work up to that point and for the money expended to prosecute the class members' case—work and expenses that benefitted the direct action plaintiff before it decided to break away from the class. What's more, if that direct action plaintiff negotiates a settlement with Defendants, absent an agreement or order to the contrary, they do not compensate class counsel for any of the work that put them in a favorable position

to resolve their claims. The Court must therefore step in and use its inherent equitable power to establish a set-aside mechanism that ensures there will be adequate funds to fairly compensate DPP Counsel for their work that benefited all direct purchasers.

Precisely what compensation is fair can be determined later, on a more fully developed record. At this time, DPPs ask that the Court use its inherent equitable power to order that 10% of the monetary value of any settlement or judgment obtained by a DAP who filed after October 20, 2020 be set aside and deposited into escrow. This way, funds will be preserved so that at an appropriate time, the interested parties can negotiate and agree, or the Court can determine, an amount to fairly compensate DPP Counsel for the benefit their work conferred on these DAPs. Ten percent is a reasonable amount to set aside given the value and extent of DPP Counsel's common benefit work. Courts have used such a set-aside mechanism in other class actions and mass tort cases to ensure that counsel who provide a common benefit for other plaintiffs receive fair and just compensation for their work and costs. DPPs ask that the Court implement this process at this stage of the litigation, before more DAPs bring their own claims.

## BACKGROUND

DPP Counsel filed the first of the direct purchaser cases, *Maplevale Farms, Inc. v. Agri Stats, Inc., et al.*, Case No. 0:18-cv-01803 (D. Minn.), on June 29, 2018. This was an original case, not a follow-on; there were no existing related civil or criminal government investigations or prosecutions. Instead, DPP Counsel brought this direct purchaser case after extensive investigation and development, and after years of developing, investigating, originating, and litigating a related direct purchaser case, *In re Broiler Chicken Antitrust*

*Litig.*, No. 1:16-cv-08637 (N.D. Ill.). Here, their 90-page operative complaint contains extensive and specific allegations about the acts, persons, structure, and operation of the conspiracy, including the nature of the Pork market, Defendants' coordination on output and limitation of supply, their exchange of detailed and competitively sensitive information, and the impact of their anticompetitive conduct on Pork prices.

## ARGUMENT

### A. The Court Has the Authority to Set Aside Settlement Funds to Compensate DPP Counsel for Work that Provides a Common Benefit

Under the common fund doctrine, this Court may set aside settlement funds to compensate DPP Counsel for work that creates a common benefit for other plaintiffs. The doctrine allows "federal courts, in the exercise of their equitable powers, [to] award attorneys' fees when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4–5 (1973) (quoting *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939)) (internal quotation marks omitted). The doctrine is a well-recognized exception to the general "American rule" that every litigant is responsible for his or her own attorney's fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257-58 (1975)). It accounts for the fact that "in certain settings, the American rule creates the problem of free riding, that is, when individuals who benefit from the litigation avoid sharing the full burden and expense of litigation by relying on the work of others." *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676, 680 (E.D. La. 2006); *accord Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) ("To allow the others

to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense.").

Set-aside orders are commonly used in mass tort litigation. *See, e.g.*, *In re Genetically Modified Rice Litig.*, 835 F.3d 822, 826, 828, 830 (8th Cir. 2016) (holding it was within the district court's well-established authority to order the defendant to hold back and deposit into a set-aside fund a percentage of all recoveries in the federal litigation: eleven percent of recoveries by producer plaintiffs, ten percent of recoveries by non-producer plaintiffs, and nine percent of recoveries by European non-producer plaintiffs); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) ("District courts have exercised this power to establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in consolidated litigation."); *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708, 2008 WL 682174, at *16 (D. Minn. Mar. 7, 2008) (ordering a $34,500,000.00 set-aside for attorney's fees and a $10,000,000.00 set-aside for costs from a $240,000,000.00 settlement); *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 265–66 (E.D.N.Y. 2006) ("[I]t is standard practice for courts to compensate attorneys who work for the common benefit of all plaintiffs by setting aside a fixed percentage of settlement proceeds."). And they are now used in complex class actions as well. It would be an appropriate use of the Court's inherent equitable power to enter a set-aside order here.

### B. A Set-Aside Order Is Appropriate in This Case

There are ample grounds for a set-aside order to compensate DPP Counsel for their common benefit work. DPP Counsel have already performed a considerable amount of

work that produced a common benefit for DAPs, and their pursuit of fact and expert discovery, opposition to summary judgment and *Daubert* motions, and trying the first case against Defendants will confer even more common benefits on DAPs. Other district courts have created set-aside funds in similar circumstances.

*Linerboard* is instructive. There, the Federal Trade Commission brought administrative proceedings against Stone Container Corporation, which were resolved by consent decree. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 648–49 (E.D. Pa. 2003). After the consent decree was made public, the plaintiffs brought an antitrust action alleging that Stone Container Corporation and eleven other manufacturers of linerboard conspired to unreasonably restrain trade and commerce in violation of the Sherman Act. *Id.* at 648. The district court certified two classes and the defendants appealed. *Id.* at 649. While the appeal was pending, the class settled with two of the twelve defendants. *Id.* After the district court preliminarily approved the settlements, 140 entities opted out of the classes; several of those entities filed tag-along cases against the defendants. *Id.* at 651. A month later, the attorneys for the plaintiffs in the tag-along actions asked the court for access to discovery materials from the class action, which the court granted. *Id.* at 652. At the same hearing, the attorneys for the classes asked the court to enter a set-aside order because the tag-along plaintiffs had obtained substantial benefits from their work in litigating and managing the case. *Id.* In opposition, the tag-along plaintiffs argued that "[a] fee award of the type class counsel seek is unprecedented and amounts to a penalty on the right to opt out [and] . . . unduly burdens . . . the related right to be represented by counsel of one's own choosing." *Id.* at 652–53. They further claimed that "as there is no imminence

of any recovery by any of the direct action plaintiffs, it is both unnecessary and inappropriate for the Court to attempt any determination as this time as to class counsel's possible entitlement to such unusual compensation, much less its amount." *Id.* at 653. One of the defendants joined the tag-along plaintiffs in opposing the set-aside orders, contending it "amounts to a contingent fee interest . . . in an unknown number of present and future cases, including cases that are not and that may never come before this Court . . . ." *Id.*

In recognition of its discretion to administer complex, multi-party cases in a manner that minimizes expenses and encourages judicial efficiency, the district court noted that its first step in promoting the just and efficient conduct of the case was the appointment of the appointment of lead and liaison counsel. *Id.* "A necessary corollary to court appointment of lead and liaison counsel . . . is the power to assure that these attorneys receive reasonable compensation for their work," the court reasoned. *Id.* at 653–54 (citing *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) ("District courts have exercised this power to establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in consolidated litigation."); *Walitalo v. Iacocca*, 968 F.2d 741, 747 (8th Cir. 1992) ("It is well established that courts can impose liability for court-appointed counsel's fees on all plaintiffs benefitting from their services.")). The court mentioned that compensating these attorneys for their efforts was endorsed by the Fifth Circuit, the Manual for Complex Litigation, and several multidistrict cases. *Id.* at 654–56.

The district court then observed that lead and liaison counsel did much to craft the case against defendants and performed other work that benefitted all litigants in the class action and the tag-along actions. *Id.* at 656–59. To further underscore the benefit of class counsel's work, the court remarked, "The fact that tag-along plaintiffs have sought—and used—class discovery at every stage of their involvement in the case to date is a strong indication of the utility attributed to that discovery by the tag-along plaintiffs." *Id.* at 659. The district court therefore concluded that a set-side was warranted. *Id.* at 661–62. It ordered the creation of a fund to pay lead and liaison counsel a percentage of all payments by the defendants to the tag-along plaintiffs for their common benefit work. *Id.* at 661–62, 668–69. However, the court deferred the determination of the actual amount of fees to award lead and liaison counsel to a later date. *Id.* In doing so, the court rejected the tag-along plaintiffs' objection that requiring them to pay for the common benefit work amounts to a penalty on the right to opt out and interfered with the right to counsel of their own choosing. *Id.* at 662–63.

In *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676, 680 (E.D. La. 2006), over 25,000 barrels of crude oil escaped from an above-ground storage tank at Murphy Oil's facility in the wake of Hurricane Katrina and traveled into the surrounding neighborhoods. *Id.* at 678. A number of class actions by residents and business owners in the surrounding area followed. *Id.* After the district court certified a class, a group of people brought cases directly against Murphy Oil. *Id.* Class counsel brought a motion to set aside 15% of any settlements for their attorneys' fees and 7% for their costs. *Id.* The district court granted class counsel's request but reduced the set-aside amounts to 10% for fees and 2% for costs.

*Id.* at 683. Basing its decision on the common fund doctrine, the court emphasized, "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* at 680 (citing *Boeing*, 444 U.S. at 478; Manual for Complex Litigation (Fourth) § 14.121 (2004) (discussing the American Rule and the common-benefit exception in complex cases)). It also rejected the arguments of the direct action plaintiffs, who contended that the imposition of a set-aside would discourage class members from exercising their rights to opt out and to choose their own counsel. *Turner*, 422 F. Supp. 2d at 681. Relying on *Linerboard*, the district court found that a set-aside would not burden the right to opt out because class counsel would have to demonstrate that their work created a common benefit to receive compensation from the set-aside funds. *Id.* (citing *Linerboard*, 292 F. Supp. 2d at 662–63). Similarly, a set-aside order would not burden the direct action plaintiffs' right to choose their own counsel because the considerable advantages of consolidation and the appointment of lead counsel outweighed the interest that a plaintiff may have in obtaining his or her own attorney. *Id.* (citing *Turner*, 422 F. Supp. 2d at 681) (The efficiencies in case management from appointment of liaison counsel cannot be understated: the district court's 'managerial power is not merely desirable. It is a critical necessity.'") (citation omitted) (internal quotation marks omitted).

The district court in *Lidoderm* found a 10% set-aside of any judgment or settlement secured from defendants by any opt-out from the End Payor Plaintiff class who filed a separate action to be appropriate. *In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521, 2017 WL 3478810, at *3 (N.D. Cal. Aug. 14, 2017). The only opposition to the request came

from the defendants since there were no separate actions and no settlements at the time. *Id.* at *1. The defendants argued that there is little precedent for set-aside orders in antitrust class action cases, that a set-aside order is premature, and that set-asides typically fall in the range of 3–6%. *Id.* The district court dismissed each argument. The *Lidoderm* court agreed with the defendants that set-aside orders were more common in mass tort litigation. *Id.* But that does not mean "the equitable principles that the mass torts courts recognized to justify set-aside orders do not apply in the class action context," the court countered. *Id.* "[W]here lead plaintiffs' counsel are responsible for pushing the cases forward, marshalling the evidence and discovery, and at least initial rounds of motion practice, EPP Class Counsel has performed the same tasks here for the benefit of all of the EPPs." *Id.* As for the defendants' timing argument, the district court observed that other courts have entered set-aside orders prior to any recovery so long as the litigation has been "significantly advanced." *Id.* at *2 (citing *In re Protegen Sling & Vesica Sys. Prod. Liab. Litig.*, No. 1387, 2002 WL 31834446, at *1 (D. Md. Apr. 12, 2002); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, No. 1203, 1999 WL 124414, at *2 (E.D. Pa. Feb. 10, 1999); *Turner*, 422 F. Supp. 2d at 681; *Compensation for Designated Counsel*, Ann. Manual Complex Lit. § 14.215 (4th ed.). And it found that the case had been significantly advanced. *Id.* The court was also not persuaded a set-aside order constituted a tax that would deter settlement. *Id.* "Establishing a set maximum percentage from the outset (*e.g.*, prior to settlement negotiations), the court said, "will provide clarity and certainty to the negotiating parties as to the most EPP Class Counsel can seek from any opt-out settlements or judgments." *Id.* As for the set-aside amount, while the range of

3–6% was common in the mass tort context, "the circumstances of this case—specifically the amount of discovery, motion practice, and expert work required to get to case to this juncture—[justified] a 10% set-aside . . . ." *Id.*

Here, DPP Counsel have significantly advanced the litigation. DPP Counsel constructed the direct purchaser case from the ground up by investigating the facts, producing economic analyses, and drafting a detailed complaint. They defeated Defendants' motions to dismiss, assuring every subsequently-filing DAP that the direct purchaser case was past the pleading stage. They are leading the discovery of the direct purchaser case, including negotiating document custodians and non-custodial sources of ESI, meeting and conferring about the search process and crafting search terms, propounding discovery, reconciling some discovery disputes with Defendants and litigating others, engaging in extensive negotiations on an ESI protocol, and subpoenaing documents from third parties. Entry of a side-aside order to compensate DPP Counsel for their common benefit work is appropriate here.

### C. Now Is an Appropriate Time to Enter Set-Aside Orders

One of the key considerations of an initial set aside order is to ensure there are adequate funds available to compensate DPP Counsel for the benefits they conferred on the DAPs. Instituting a framework for setting aside funds at this stage of the case will promote judicial efficiency by eliminating the need to litigate the establishment of such funds after each DAP settlement and ensure there are adequate funds to compensate DPP Counsel for their common benefit work. And unlike class action settlements, which require court approval, a settling DAP can take its money and run. Thus, unless the Court acts now,

the funds needed to remunerate DPP Counsel for the benefit their work conferred on the DAP may not be available. Furthermore, establishing a set-aside framework now will eliminate the potential for confusion or surprise by ensuring that any potential DAP has an accurate picture; that is, before it agrees to retain counsel and file its own action, it knows that if it succeeds, it may need to compensate DPP Counsel for common benefit work.

For these reasons, courts prefer to establish set-asides in the early stages of complex cases. *See Lidoderm*, 2017 WL 3478810, at *2 ("Establishing a set maximum percentage from the outset (*e.g.*, prior to settlement negotiations) will provide clarity and certainty to the negotiating parties as to the most EPP Class Counsel can seek from any opt-out settlements or judgments."); *Turner*, 422 F. Supp. 2d at 680–81 ("[I]t has been a common practice in the federal courts to impose set-asides in the early stages of complex litigation in order to preserve common-benefit funds for later distribution.") (collecting cases); *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2004 WL 2549682, at *4 (S.D.N.Y. Nov. 10, 2004) ("Without the entry of a set-aside order in advance of Individual Action settlements or judgments, Individual Actions could be dismissed after settlement or a judgment, requiring Liaison Counsel to pursue separate compensation claims in any number of jurisdictions around the country.").

Creating a system for setting aside funds now will ensure that such funds are preserved so that at a later time, when a DAP settles or obtains a judgment, there will be adequate funds to fairly remunerate DPP Counsel for their common benefit work.[2] The

---

[2] Here, the proposed set-aside order would apply to absent parties. It is well settled that courts have the equitable power to order parties to hold back funds to contribute to the costs of suit, even

determination of whether DPP Counsel are entitled to some or all of those funds, and how particular terms of a particular settlement should be valued, can occur later on a more developed record based on the facts of the particular DAP settlement. Thus, the question now is not whether DPP Counsel are entitled to common benefit funds and if so, how much; the question is whether they *may* be entitled to such funds at the end of the litigation. *See Linerboard*, 292 F. Supp. 2d at 662 ("[T]he Court concludes that designated counsel have made sufficient showing to warrant establishment of a framework to ensure that funds will be available to compensate them should the Court later determine such compensation is warranted."); *Lidoderm*, 2017 WL 3478810, at *3 n.3 ("A showing will have to be made why the amount sought by EPP Class Counsel is necessary to compensate them for time

---

if it affects absent parties. In *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161 (1939), the Supreme Court "upheld the District Court's power to grant reimbursement for a plaintiff's litigation expenses even though she had sued only on her own behalf and not for a class, because her success would have a stare decisis effect entitling others to recover out of specific assets of the same defendant." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). And in *Mills*, the Court summarized its ruling in *Sprague* by explaining that "[a]lthough those others were not parties before the court, they could be forced to contribute to the costs of the suit by an order reimbursing the plaintiff from the defendant's assets out of which their recoveries later would have to come. *Mills*, 396 U.S. at 393 (citing *Sprague*, 307 U.S. at 167). (*See also In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521, ECF No. 742 (N.D. Cal.) (Orrick, J.) (Clark Decl., Ex. A) (Order Granting Motion for a Set-Aside) (ordering a set-aside mechanism that "appl[ied] to all actions included in this multidistrict litigation or otherwise transferred to this Court"); *In re Guidant Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, ECF No. 56 (D. Minn.) (Frank, J.) (Clark Decl., Ex. B) (Pretrial Order No. 6 Common Benefit Order) (ordering a set-aside that applies "to all Guidant defibrillator and/or pacemaker cases . . . now pending or later filed in, transferred to, or removed to, this Court as well as all unfiled and tolled cases and claims treated as part of the coordinated proceeding"); *In re Baycol Prods. Litig.*, MDL No. 1431 (D. Minn.) (Davis, J.) (Clark Decl., Ex. C) (Pretrial Order No. 25) (ordering a set-aside process that "appl[ies] regardless of whether a plaintiff's case is disposed of during the time it is on the docket of the transferee court, or following remand or transfer from the transferee court to another federal district court for trial, or transfer to other district courts in accordance with 28 U.S.C. § 1404 or other provisions of law.").)

and costs incurred litigating common benefit issues. If the amount awarded is less than the 10% retained, those funds will be returned to the opt-out EPPs.").

Again, the amount set aside now may or may not be the amount DPP Counsel will receive. If the interested parties negotiate a lower number or Court decides to award DPP Counsel a lesser amount, then the Court may return the remaining sequestered funds to the DAP. But if the initial set-aside amount is too low, DPP Counsel will likely never receive full compensation for their common benefit work.

> D.      **A Ten-Percent Set-Aside is Reasonable and Appropriate**

DPP Counsel request the Court to set aside 10% of the monetary value of any settlement or judgment obtained by such DAPs. Given the material benefit conferred on DAPs, DPP Counsel submit that this amount is reasonable and fair, and in any event is needed to ensure that DPP Counsel are able to petition for and obtain the value of their common benefit work, whatever that ultimately is determined to be. The amount is also in line with set-asides in similar cases.

The courts in *Turner* and *Lidoderm*, discussed above, ordered set-asides of 12% and 10%, respectively. *Turner*, 422 F. Supp. 2d at 683; *Lidoderm*, 2017 WL 3478810, at *3. In the multidistrict litigation context, set-aside amounts have ranged from 9% to 17%. *See In re Genetically Modified Rice Litig.*, No. 4:06-md-01811, 2010 WL 716190, at *6 (E.D. Mo. Feb. 24, 2010), *aff'd*, 764 F.3d 864 (8th Cir. 2014) (collecting cases). Set-asides in excess of 9% are common, and one-fifth of set-aside awards are 11% or greater. 5 *Newberg on Class Actions* § 15:117, Fig. 6–7 (5th ed. 2019).

Here, like in *Linerboard*, *Turner*, and *Lidoderm*, DPP Counsel performed a significant amount of work that provided a common benefit to all direct purchaser plaintiffs and will continue to do so as this case progresses. This factor is especially significant in this case because the DPP Complaint was not derived from a parallel criminal investigation or other public sources. In filing their complaints, such DAPs will receive the fruits of DPP Counsel's labor to date. And importantly, DAPs will continue to benefit from DPP Counsel's common benefit work as the litigation proceeds through DPP Counsel's work on fact discovery, expert discovery, summary judgment, and trial. A set aside of 10% of the monetary value of any settlement or verdict is obtained by such DAPs is appropriate and fair given the considerable work DPP Counsel performed to significantly advance the direct purchasers' case.

## CONCLUSION

For these reasons, Direct Purchaser Plaintiffs respectfully request that this Court enter a set-aside order that sequesters 10% of the monetary value of any settlement or judgment obtained by Direct Action Plaintiffs ("DAPs") and provides DPP Counsel with a framework for seeking fair and adequate compensation from the fund for the extensive work they have performed that provided a common benefit to DAPs and all direct purchasers of Pork.

Dated: February 5, 2021                          Respectfully submitted,

                                                                                     */s/ Brian D. Clark*

| Left column | Right column |
|---|---|
| Bobby Pouya (Pro Hac Vice) | W. Joseph Bruckner (MN #0147758) |
| Clifford H. Pearson (Pro Hac Vice) | Brian D. Clark (MN #0390069) |
| Thomas J. Nolan (Pro Hac Vice) | Craig S. Davis (MN #0148192) |
| Daniel L. Warshaw (Pro Hac Vice) | Simeon A. Morbey (MN #0391338) |
| Michael H. Pearson (Pro Hac Vice) | Arielle S. Wagner (MN #0398332) |
| PEARSON SIMON & WARSHAW, LLP | Stephen M. Owen (MN # 0399370) |
| 15165 Ventura Boulevard, Suite 400 | Stephanie A. Chen (MN #0400032) |
| Sherman Oaks, CA 92403 | LOCKRIDGE GRINDAL NAUEN P.L.L.P. |
| Telephone: (818) 788-8300 | 100 Washington Avenue South, Suite 2200 |
| Facsimile: (818) 788-8104 | Minneapolis, MN 55401 |
| cpearson@pswlaw.com | Telephone: (612) 339-6900 |
| tnolan@pswlaw.com | Facsimile: (612) 339-0981 |
| dwarshaw@pswlaw.com | wjbruckner@locklaw.com |
| bpouya@pswlaw.com | bdclark@locklaw.com |
| mpearson@pswlaw.com | csdavis@locklaw.com |
| | samorbey@locklaw.com |
| Melissa S. Weiner (MN #0387900) | aswagner@locklaw.com |
| Joseph C. Bourne (MN #0389922) | smowen@locklaw.com |
| PEARSON, SIMON & WARSHAW, LLP | sachen@locklaw.com |
| 800 LaSalle Avenue, Suite 2150 | |
| Minneapolis, MN 55402 | *Co-Lead Class Counsel for* |
| Telephone: (612) 389-0600 | *Direct Purchaser Plaintiffs* |
| Facsimile: (612) 389-0610 | |
| mweiner@pswlaw.com | |
| jbourne@pswlaw.com | |
| | |
| Bruce L. Simon | |
| Neil Swartzberg | |
| PEARSON, SIMON & WARSHAW, LLP | |
| 350 Sansome Street, Suite 680 | |
| San Francisco, CA 94104 | |
| Telephone: (415) 433-9000 | |
| Facsimile: (415) 433-9008 | |
| bsimon@pswlaw.com | |
| nswartzberg@pswlaw.com | |

## **CERTIFICATE OF SERVICE**

I, Brian D. Clark, depose and state that I have served a copy of Direct Purchaser Plaintiffs' Motion for Entry of Set-Aside Order upon all counsel of record via the United States Court for the District of Minnesota's CM/ECF Document Filing System on February 5, 2021.

By: s/ *Brian D. Clark*

[x]   As provided by law pursuant to Rule 5(b) of Fed. Rules of Civil Procedure, I certify that the statements set forth herein are true and correct.