## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>Direct Purchaser Plaintiff and Direct Action Plaintiff Actions | No. 0:18-cv-01776-JRT-HB |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO DIRECT PURCHASER PLAINTIFFS' MOTION FOR A SET-ASIDE ORDER

Defendants Agri Stats, Inc., Clemens Food Group, LLC, The Clemens Family Corporation, Hormel Foods Corporation, Seaboard Foods LLC, Smithfield Foods, Inc., Triumph Foods, LLC, Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. (collectively, "Defendants") respectfully submit this memorandum in opposition to Direct Purchaser Plaintiffs' Motion for Entry of a Set-Aside Order (ECF No. 673).

## INTRODUCTION

DPPs ask the Court for relief no court has ever granted at this stage of a case. Citing the "common benefit" doctrine, DPPs ask the Court to tax any future direct action plaintiff who might assert overlapping claims—and any Defendant that might settle with such future plaintiff—before substantial discovery has occurred and before any ruling on class certification. But they invoke cases in which courts granted set-aside orders only after class certification, when it was clear that "tag-along" plaintiffs were free riding on class

1

counsel's work. DPPs do not cite a single decision entering a set-aside order before a class was certified, much less before class counsel took a single deposition.

DPPs' lack of authority is hardly surprising. The common benefit doctrine is aimed at free riding. Until class counsel have, at the very least, taken substantial discovery and succeeded in certifying a class, there is no basis for deciding whether (or to what extent) future opt-outs have taken or might ever take a free ride on class counsel's efforts. Thus, even assuming set-aside orders are permissible in antitrust cases—a doubtful proposition—DPPs' motion is premature.

DPPs also fail to identify any real-world need for a set-aside. They invoke judicial economy, but their order would lead to motion practice and forum-shopping. They speculate that every future DAP will free ride on DPPs' efforts—in taking discovery, briefing dispositive motions, and preparing for trial—and even suggest that unknown future DAPs might "take [their] money and run." DPP Mem. at 12. Yet they cannot offer a single example in which a tag-along plaintiff waited for class counsel develop a winning case, and then: (i) opted out of the class; (ii) filed a complaint asserting the same claims; (iii) settled with defendants; and (iv) absconded before class counsel could seek fair compensation. Lastly, DPPs suggest a set-aside order is necessary to provide "notice" to future DAPs—a complete non sequitur given the relief they seek.

DPPs' motion is premature, speculative, and without support in the case law.[1] It should be denied.

---

[1] DPP's motion raises a significant justiciability issue. With the dismissal of the Cheney Brothers action on February 11, 2021 (ECF No. 688), no DAP is before this Court to which

**ARGUMENT**

**I.     DPPs' motion is premature.**

As DPPs concede, the "common benefit fund" doctrine is an exception to the general rule that every litigant "is responsible for his or her own attorney's fees." DPP Mem. at 5. The doctrine is intended to address the problem of free riding, when "individuals who benefit from the litigation avoid sharing the full burden and expense of litigation by relying on the work of others." *Id.* (quoting *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676, 680 (E.D. La. 2006)). DPPs further acknowledge that a set-aside order can be entered, even though no settlement has yet been reached only where the litigation is "significantly advanced." *Id.* at 11. To satisfy the "significantly advanced" threshold, class counsel must, at a minimum, have obtained class certification. *See In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-md-2724, 2019 WL 6044308, at *1 (E.D. Pa. Oct. 7, 2019) [hereinafter *Generic Drugs*] (denying set-aside order as premature

---

DPP's proposed set-aside order could apply. DPPs do not seek to apply the set-aside order to Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC (collectively, "Winn-Dixie"), the only private DAPs with a pending action before the Court, or to the Commonwealth of Puerto Rico. *See* DPP Mem. at 1 & n.1. Accordingly, there is no possibility now that any DAP may free ride on the work of DPP counsel, and there may never be. Whether framed as a problem of standing—DPPs have no concrete or particularized injury or threat of it now, *see Hillesheim v. O.J.'s Café, Inc.*, 968 F.3d 866, 868 (8th Cir. 2020)—ripeness— there is no pending case that threatens any free riding on DPP counsel's work, *see Parrish v. Dayton*, 761 F.3d 873, 875-76 (8th Cir. 2014) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998))—or mootness— the one case to which an order could have applied has now ended, *see Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (issue is moot when it is "'no longer "live" or the parties lack a legally cognizable interest in the outcome.'") (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam))—there is no concrete issue for this Court to decide. The motion can be denied on this ground alone.

3

"[b]ecause no classes have yet been certified"); *cf. Slamon v. Carrizo (Marcellus) LLC*, No. 3:16-CV-02187, 2019 WL 3987770, at *16 (M.D. Pa. Aug. 22, 2019) ("class certification" is a "prerequisite[] of the application of the common benefit doctrine"). DPPs do not cite, and Defendants are not aware of, *any* court that has granted a set-aside motion before certifying a class.

The two cases DPPs cite to support issuing a set-aside order in an antitrust class action—*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644 (E.D. Pa. 2003), and *In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521, 2017 WL 3478810 (N.D. Cal. Aug. 14, 2017)—are inapplicable here. *See* DPP Mem. at 7-11. Both cases involved set-aside orders entered *after* class certification (and after substantial discovery had occurred). They provide no support for entering such an order at this early stage in litigation—at least a year away from the filing of any motion for class certification.

The *Linerboard* court issued a set-aside order more than five years into the litigation. Class counsel had already taken extensive discovery, secured class certification, defended class certification on appeal, and negotiated a settlement with several major defendants. 292 F. Supp. 2d at 648-50. After receiving notice of the settlements, several class members sought (and received) access to the deposition transcripts and exhibits so they could assess whether to opt out. *Id.* at 650-51. A number of those entities then opted out, filed tag-along complaints, and received access "to all documents produced in discovery at the request of class plaintiffs." *Id.* at 659. In granting class counsel's motion for compensation from the tag-along plaintiffs, the court emphasized two free-riding concerns: first, the tag-along plaintiffs "sought—and used—class discovery at every stage

4

of their involvement," which was "a strong indication of the utility attributed to that discovery by tag-along plaintiffs"; and second, due to the class certification wins before the district court and Court of Appeals, "the tag-along plaintiffs obtained the benefit of the *imprimatur* of those courts on the theory of the case formulated by class plaintiffs and adopted in the tag-along actions." *Id.*; *see also Slamon*, 2019 WL 3987770, at *16 (explaining that *Linerboard* permits a common fund out of proceeds from tag-along suits "only following certification of a class").

*Lidoderm* also involved a set-aside order after class certification. There, class counsel had reviewed over 3.4 million pages of documents and deposed more than thirty fact witnesses. Mot. for Entry of Set-Side Order, *In re Lidoderm Antitrust Litig.*, No. 14-md-02521, 2017 WL 2875194 (E.D. Pa. June 2, 2017). The parties had retained and produced reports from twenty-three experts and engaged in "extensive expert discovery," which was "nearing completion." *Id.* And class counsel had moved for and obtained class certification. The court emphasized these facts when granting class counsel's motion: "Given the circumstances of this case—specifically *the amount of discovery, motion practice, and expert work* required to get [the] case to this juncture—I find that a 10% set-aside is appropriate." *Lidoderm*, 2017 WL 3478810, at *3 (emphasis added).

The present case is nothing like *Linerboard* or *Lidoderm*. There have been no depositions, document production has just begun, and DPPs will not produce expert reports or move for class certification for another year. This Court cannot predict the extent to which opt-out plaintiffs, should any other than Winn-Dixie even sue in this district, will develop their own theories, pursue their own discovery, or engage their own experts. And,

5

although DPPs, Winn-Dixie, and Puerto Rico have survived a motion to dismiss, no court has tested DPPs' theory of the case on an evidentiary record. Thus, unlike *Linerboard*, this is not "the rare antitrust case" in which tag-along plaintiffs "awaited the development of the case by designated counsel and only filed suit on the eve of the conclusion of discovery." 292 F. Supp. 2d at 661. And unlike class counsel in *Lidoderm*, DPPs have not "significantly advanced" this litigation by prosecuting their case through discovery and class certification. 2017 WL 3478810, at *3. Plaintiffs appear to concede these differences; apart from selectively quoting parts of those opinions, they make no effort to explain how either case resembles this one.[2]

This case is most analogous to *Generic Drugs*—a recent decision mentioned nowhere in DPPs' brief. There, as here, class counsel requested a set-aside before class certification. Class counsel argued that, over three years, they had investigated factual and legal support for their complaints, defeated motions to dismiss, served more than 100 interrogatories and document requests, issued more than 500 third-party subpoenas, engaged in negotiations and motion practice related to discovery, obtained access to millions of documents, and filed more than 50 motions. Mem. in Supp. of Mot. for Entry

---

[2] DPPs also rely on a non-antitrust case—*Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676 (E.D. La. 2006)—to support their position. DPP Mem. at 9. But *Turner* is likewise inapplicable because the set-aside order was issued after class certification. *Id.* at 678. DPPs also cite two product liability cases that entered set-aside orders, but they do not contend that such orders support a set-aside order here. *See* DPP Mem. at 14 n.2 (citing *In re Guidant Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, ECF No. 56 (D. Minn.) (Frank, J.) (Clark Decl., Ex. B)); *In re Baycol Prods. Litig.*, MDL No. 1431 (D. Minn.) (Davis, J.) (Clark Decl., Ex. C)). Rather, DPPs cite those cases with respect to who would be covered by any set-aside order, if one were to be issued in this case.

of Set-Aside Order at 1-2, 11, *Generic Drugs*, No. 16-md-2724 (E.D. Pa. Apr. 4, 2019), ECF No. 955. Yet the court denied the motion as premature because "no classes have yet been certified" and "the scope of the parties that would be affected by the orders has not been established." *Generic Drugs*, 2019 WL 6044308, at *1; *see also Slamon*, 2019 WL 3987770, at *16-17 (denying motion for set-aside order when no class had been certified). The same result is warranted here.

That DPPs' motion is premature is also apparent from their own brief. DPPs repeatedly hypothesize about common benefits they *might* provide to unknown DAPs at unknown future times. *See, e.g.*, DPP Mem. at 7 (arguing that "their pursuit of fact and expert discovery, opposition to summary judgment and *Daubert* motions, and trying the first case against Defendants *will* confer even more common benefits on DAPs" (emphasis added)); *id.* at 3 (arguing that DAPs "*will* continue to" benefit from DPP Counsel's work "as the case progresses through fact discovery, expert discovery, *Daubert* motions, and summary judgment" (emphasis added)); *id.* ("*If* DPPs take the first direct purchaser case to trial . . . such DAPs *will* benefit from DPPs' trying an antitrust class action. They *will* have the advantage of rulings on motions *in limine*, page and line designations for depositions, jury instructions, trial exhibits, stipulations of uncontested facts, and statements of the case." (emphasis added)).

This puts the cart *way* before the horse. Fact discovery is just starting. Expert discovery, *Daubert*, and summary judgment are nowhere in sight. There is no reason to believe any trial, much less one on behalf of a class, will ever occur. That DPPs *might* significantly advance the litigation and confer a benefit to unknown DAPs at some point

7

in the future is insufficient to satisfy the standard for obtaining a set-side order. Accordingly, the Court should follow *Generic Drug* and deny DPPs' motion as premature.

## II. Set-aside orders are unnecessary in antitrust cases.

DPP's motion should be denied for another independent reason: set-aside orders are inappropriate in antitrust class actions. Common benefit funds are "not unusual" in mass-tort MDLs, when "lead counsel who have actively litigated an MDL supply other counsel with extensive work-product dubbed 'trial in a box.'" *Generic Drugs*, 2019 WL 6044308, at *1; *accord* DPP Mem. at 6. But such funds are extremely rare in antitrust cases: DPPs cite only two examples, and Defendants are aware of no others.

Set-aside orders are extremely rare in antitrust class actions for good reason. For one thing, antitrust class actions do not present the same case management challenges as mass-tort MDLs, which often involve hundreds or even thousands of individual cases. For another, antitrust class actions offer two mechanisms to compensate class counsel for their work, as both the Clayton Act and Rule 23(h) entitle class counsel to reasonable attorneys' fees if they prevail at trial. 15 U.S.C. § 15(a); Fed R. Civ. P. 23(h). In mass-tort cases, by contrast, lead counsel have no statutory right to fees. Noting these distinctions, at least two courts have denied set-aside motions in antitrust MDLs. *See Generic Drugs*, 2019 WL 6044308, at *1 (denying motion for set-aside order without prejudice and noting that "the traditional mechanisms of class actions may appropriately compensate any class counsel"); *In re TFT-LCD Flat Panel Antitrust Litig.*, No 07-md-1827, ECF No. 2696 at 13 (N.D. Cal. Apr. 30, 2011) (denying motion for set-aside order and explaining that set-aside orders "make[] a lot more sense" in mass-tort cases).

8

But the Court need not resolve this question in the abstract. Even assuming *arguendo* that the common benefit doctrine applies to antitrust class actions, DPPs have not satisfied the legal threshold for obtaining a set-aside order at this early stage in litigation. *See supra* Section I.[3]

## III. DPPs' justifications for their motion do not hold up.

DPPs offer three reasons for a set-aside order, all of which confirm why no court has ever granted such an order so early in a case.

First, DPPs claim an order is necessary "to ensure there are adequate funds available to compensate DPP counsel for the benefits they conferred on the DAPs." DPP Mem. at 12. But DPPs offer no reason to believe they will confer any benefits on future DAPs, much less that "adequate funds" will not exist; they merely speculate that a future settling DAP "can take its money and run." *Id.* at 13. It is unclear what DPPs have in mind. Their rhetoric, however, suggests that large buyers of pork—for example, broadline distributors or grocery chains—will file their own complaints near the end of discovery, settle with Defendants, and then flee the country. But as DPPs are aware, if any direct purchaser opts out, joins this litigation, and settles, the fact of such settlement will be reflected on the public docket even if the terms are confidential. There is, in short, no chance that a settling

---

[3] Except in cases in which a plaintiff has either created or preserved a true common fund, set-aside orders raise significant issues under the Federal Rules of Civil Procedure and the Constitution. Defendants and this Court need not address those now. They can be explored if and when counsel offer facts showing that some DAP has actually engaged in free riding rather than the crystal-ball exercise put forth here.

DAP could deny DPPs a chance to seek compensation by secretly absconding with the settlement proceeds.

Second, DPPs claim a set-aside order is necessary to "promote judicial efficiency" by "eliminating the need to litigate the establishment of such funds after each DAP settlement." DPP Mem. at 13. But DPPs' proposed order would only require Defendants to place funds in escrow; whether DPPs are entitled to any such funds would require future motion practice. DPPs concede as much in their brief: "The determination of whether DPP counsel are entitled to some or all of those funds, and how particular terms of a settlement should be valued, can occur later *on a more developed factual record based on the facts of the particular DAP settlement*." *Id.* at 13-14 (emphasis added). Thus, nothing about this motion will promote judicial efficiency. To the contrary, any set-aside order would incentivize future DAPs to file in other jurisdictions, defeating the efficiencies of consolidated pretrial proceedings. *See Lidoderm*, 2017 WL 3478810, at *3 (explaining that "[o]nce a class member opts-out, it is no longer a party to any case before me and I no longer have jurisdiction over it or over the monies due to it" and limiting set-aside order to opt-out plaintiffs who obtain settlement or judgment "in an action filed in this Court or transferred to this [MDL]").[4]

---

[4] Even assuming the Judicial Panel for Multidistrict Litigation transfers cases from other federal courts to Minnesota, those cases must return to the original forum after coordinated pretrial proceedings. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). And any cases filed in state court that cannot be removed are beyond the reach of any set-aside order, no matter how "free" the alleged "ride" on counsel's work. *In re OSB Antitrust Litig.,* No. 06-826, 2009 WL 579376, at *4 (E.D. Pa. Mar. 4, 2009) ("In these circumstances, it is apparent that there is no basis for me to assert jurisdiction over the opt-outs. Accordingly, I cannot order the opt-outs to pay Class Counsel's fees.");

10

Third, DPPs argue that a set-aside order would "eliminate the potential for confusion or surprise by ensuring that any potential DAP has an accurate picture." DPP Mem. at 13. This is a non sequitur. An order requiring the escrow of funds is not necessary to inform putative class members that DPP counsel claim a right to future compensation. There are other devices, such as the forthcoming JBS settlement notice, for providing putative class members with an "accurate picture" of DPPs' intention to seek compensation from future DAP settlements.

## CONCLUSION

DPPs offer no legal authority supporting their request for a set-aside order at this time. They also cannot identify any practical reason why the Court should grant such relief. Accordingly, the Court should deny DPPs' motion.

---

*Linerboard*, 292 F. Supp. 2d at 664 ("[A]ny order sequestering funds from settlements and other recoveries in the tag-along actions should not extend to non-transferred cases.").

Dated: February 12, 2021

/s/ *Mark L. Johnson*
Mark L. Johnson (#0345520)
Virginia R. McCalmont (#0399496)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
vmccalmont@greeneespel.com

Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
Christina Briesacher (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
christina.briesacher@kirkland.com

***Counsel for Clemens Food Group, LLC and The Clemens Family Corporation***

/s/ *Richard A. Duncan*
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com
bryan.washburn@faegredrinker.com

***Counsel for Hormel Foods Corporation***

*/s/ Aaron Chapin*
Christopher Smith (*pro hac vice*)
Aaron Chapin (#06292540)
Marnie Jensen (*pro hac vice*)
Ryann Glenn (*pro hac vice*)
Kamron Hasan (*pro hac vice*)
Sierra Faler (*pro hac vice*)
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154
(402) 964-5000
gene.summerlin@huschblackwell.com
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com
kamron.hasan@huschblackwell.com
sierra.faler@huschblackwell.com

**Counsel for Triumph Foods, LLC**

*/s/ David P. Graham*
David P. Graham
DYKEMA GOSSETT PLLC
90 S 7th Street, FL 2
Minneapolis, MN 55402
Telephone: 612-486-1521
dgraham@dykema.com

Rachel Adcox (*pro hac vice*)
Tiffany Rider (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
950 F. Street, NW
Washington, DC 20004
Telephone: 202.912.4700
radcox@axinn.com
trider@axinn.com

Jarod Taylor (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Telephone: 860.275.8109
jtaylor@axinn.com

**Counsel for Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc.**

*/s/ William L. Greene*
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
Jon M. Woodruff (#0399453)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
jon.woodruff@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

**Counsel for Seaboard Foods LLC**

*/s/ John A. Cotter*
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

**Counsel for Smithfield Foods, Inc.**

*/s/ Peter H. Walsh*
Peter H. Walsh (#0388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3000
F. (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Agri Stats, Inc.*