1              UNITED STATES DISTRICT COURT
                   DISTRICT OF MINNESOTA
2
   ------------------------------------------------------------
3                                  )
   In Re: Pork Antitrust           )   File No. 18-cv-1776
4  Litigation                      )          (JRT-HB)
                                   )
5                                  )
                                   )   St. Paul, Minnesota
6                                  )   February 25, 2021
                                   )   9:01 a.m.
7                                  )
                                   )
8                                  )
   ------------------------------------------------------------
9

10            **BEFORE THE HONORABLE HILDY BOWBEER**
        **UNITED STATES DISTRICT COURT MAGISTRATE JUDGE**

11                **(MOTION HEARING VIA ZOOM)**

12

13

14

15

16

17

18

19

20

21

22

23

24      Proceedings recorded by mechanical stenography;
   transcript produced by computer.
25

```
 1      APPEARANCES VIA ZOOM:

 2          For Direct Purchaser Plaintiffs:

 3                  Lockridge, Grindal, Nauen, PLLP
                    BRIAN D. CLARK, ESQ.
 4                  JOSEPH BRUCKNER, ESQ.
                    ARIELLE WAGNER, ESQ.
 5                  Suite 2200
                    100 Washington Avenue South
 6                  Minneapolis, Minnesota 55401

 7                  Pearson, Simon & Warshaw
                    BOBBY POUYA, ESQ.
 8                  MICHAEL PEARSON, ESQ.
                    Suite 2150
 9                  800 LaSalle Avenue
                    Minneapolis, Minnesota 55402
10
        For the Consumer Indirect Purchaser Plaintiffs:
11
                    Gustafson Gluek, PLLC
12                  DANIEL HEDLUND, ESQ.
                    Suite 2600
13                  120 South Sixth Street
                    Minneapolis, Minnesota 55402
14
                    Hagens, Berman, Sobol, Shapiro
15                  SHANA E. SCARLETT, ESQ.
                    RIO PIERCE, ESQ.
16                  Suite 202
                    715 Hearst Avenue.
17                  Berkeley, California 94710

18      For the Commercial and Institutional Indirect Purchaser
        Plaintiffs:
19
                    Cuneo, Gilbert & Laduca, LLP
20                  A. BLAINE FINLEY, ESQ.
                    Suite 2200
21                  4725 Wisconsin Avenue NW
                    Washington, DC 20016
22
        For Direct Action Plaintiffs Winn-Dixie Stores, Inc., and
23      Bi-Lo Holdings, LLC:

24                  Ahern and Associates, P.C.
                    PATRICK AHERN, ESQ.
25                  590 North Sheridan Road
                    Lake Forest, Illinois 60045
```

```
 1        For Defendant Triumph Foods:

 2                Husch Blackwell
                 CHRISTOPHER SMITH, ESQ.
 3                Suite 200
                 13330 California Street
 4                Omaha, Nebraska 68154

 5        For Defendant JBS USA:

 6                Spencer Fane, LLP
                 DONALD G. HEEMAN, ESQ.
 7                Suite 1900
                 100 South Fifth Street
 8                Minneapolis, Minnesota 55402

 9                Quinn Emanuel Urquhart & Sullivan
                 SAMI H. RASHID, ESQ.
10                51 Madison Avenue
                 22nd Floor
11                New York, New York 10010

12        For Defendant Smithfield Foods:

13                Larkin, Hoffman, Daly & Lindgren
                 JOHN A. COTTER, ESQ.
14                Suite 1000
                 8300 Norman Center Drive
15                Minneapolis, Minnesota 55437

16                Gibson, Dunn & Crutcher
                 BRIAN EDWARD ROBISON, ESQ.
17                Suite 1100
                 2100 McKinney Avenue
18                Dallas, Texas 75201

19        For Defendant Tyson Foods:

20                Axinn, Veltrop & Harkrider, LLP
                 TIFFANY RIDER ROHRBAUGH, ESQ.
21                950 F Street NW
                 7th Floor
22                Washington, DC 20004

23        For Defendant Clemens Food Group:

24                Kirkland & Ellis, LLP
                 CHRISTINA BRIESACHER, ESQ.
25                300 North LaSalle
                 Chicago, Illinois 60654
```

```
 1                    Greene Espel, PLLP
                      MARK JOHNSON, ESQ.
 2                    Suite 2200
                      222 South Ninth Street
 3                    Minneapolis, Minnesota 55402

 4        For Defendant Hormel Foods:

 5                    Faegre, Drinker, Biddle & Reath, LLP
                      ISAAC B. HALL, ESQ.
 6                    Suite 2200
                      90 South Seventh Street
 7                    Minneapolis, Minnesota 55402

 8        For Defendants Seaboard Foods, LLC, and Seaboard
          Corporation:
 9
                      Stinson, LLP
10                    PETER J. SCHWINGLER, ESQ.
                      Suite 2600
11                    50 South Sixth Street
                      Minneapolis, Minnesota 55402
12
          For Defendant Agri Stats, Inc.:
13
                      Hogan Lovells U.S., LLP
14                    WILLIAM MONTS, III, ESQ.
                      JUSTIN BERNICK, ESQ.
15                    Columbia Square
                      555 Thirteenth Street NW
16                    Washington, DC 20004

17        Court Reporter:

18                    ERIN D. DROST, RMR-CRR
                      Suite 146
19                    316 North Robert Street
                      St. Paul, Minnesota 55101
20

21

22

23

24

25
```

1                        **P R O C E E D I N G S**

2                          **IN OPEN COURT**

3                          **(Via Zoom)**

4

5              THE COURT:  This is the United States District

6     Court for the District of Minnesota.  I'm Magistrate Judge

7     Hildy Bowbeer.  We are gathered by Zoom this morning for a

8     hearing in the matter of In Re: Pork Antitrust Litigation.

9     This is Case Number 18-cv-1776.  We're here on Docket Number

10    673, which is a motion by the direct purchaser plaintiffs to

11    set aside fees from future direct action plaintiffs.

12              What I will do is what I have done before in terms

13    of getting appearances, and that is essentially to call the

14    roll.  You've been through this drill before.

15              As always, we've got a court reporter on.  She

16    will be the only one responsible for making the official

17    record of this hearing.  I'm also making a recording through

18    the Zoom platform, but no other recordings are permitted.

19              I've got one other person in the waiting room.

20    Give that -- all right.

21              So let me start with appearances for the

22    plaintiffs, starting with the direct purchaser plaintiffs.

23    I'll call out the names of the people I'm expecting, and

24    I'll just ask that you acknowledge your presence audibly.

25    And if -- and then at the end of each group, as I always do,

1    I'll check to see if there's anybody on whose name I have

2    missed and who wants their appearance noted.

3           So starting with the direct purchaser plaintiffs,

4    Bobby Pouya?

5           MR. POUYA:  Good morning, Your Honor.

6           THE COURT:  Michael Pearson?

7           MR. PEARSON:  Good morning, Your Honor.

8           THE COURT:  Joseph Bruckner?

9           MR. BRUCKNER:  Good morning, Your Honor.

10          THE COURT:  And I understand, Mr. Bruckner, you'll

11   be the one speaking on behalf of plaintiffs today?

12          MR. BRUCKNER:  That's right, Your Honor.

13          THE COURT:  Brian Clark?

14          MR. CLARK:  Good morning, Your Honor.

15          THE COURT:  Arielle Wagner?

16          MS. WAGNER:  Good morning, Your Honor.

17          THE COURT:  Anybody else for the direct purchaser

18   plaintiffs whose name I have not called?

19          Moving on to the consumer indirect purchaser

20   plaintiffs, Shana Scarlett?

21          MS. SCARLETT:  Good morning, Your Honor.

22          THE COURT:  Hold on.  I'm sorry.  You'd think the

23   judge, above all people, would know to mute her cell phone

24   before the hearing.

25          Rio Pierce?

1          MR. PIERCE:  Good morning, Your Honor.

2          THE COURT:  Breanna Van Engelen?  Is Ms. Van

3    Engelen on?  All right.  I'll come back to that later.

4          Daniel Hedlund?

5          MR. HEDLUND:  Good morning, Judge.  Gustafson

6    Gluek, I may be the only one from my firm.  You can

7    obviously call others that are listed on there, but I'm not

8    sure --

9          THE COURT:  All right.  Michelle Looby, are you

10   on?  All right.  So at this point I don't have an appearance

11   by Ms. Van Engelen or Ms. Looby.

12          Anybody else whose name I have not called for the

13   consumer indirect purchaser plaintiffs?

14          Moving on to the commercial and institutional

15   indirect purchaser plaintiffs, Shawn Raiter?  Okay.  I'm not

16   getting an answer from Mr. Raiter.

17          Blaine Finley?

18          MR. FINLEY:  Good morning, Your Honor.

19          THE COURT:  David McMullan?  Not hearing from

20   Mr. McMullan.

21          Katherine Barrett Riley?

22          All right.  So far on behalf of the commercial and

23   institutional indirect purchaser plaintiffs, I've got only

24   Mr. Finley.  Not to suggest that that's not plenty, but is

25   there anybody else whose appearance hasn't been noted on

1    behalf of that group of plaintiffs?

2              MR. FINLEY:  I think that's going to be it for my

3    group today, Your Honor.

4              THE COURT:  All right.  Moving on, Commonwealth of

5    Puerto Rico, Matthew Weiler?  Kyle Bates?  I'm not hearing

6    anything from either Mr. Weiler or Mr. Bates.  Is there

7    anybody on on behalf of the Commonwealth of Puerto Rico?

8              All right.  Moving on to Winn-Dixie and Bi-Lo

9    Holdings, Patrick Ahern?  And I'm not hearing from

10   Mr. Ahern.  Is there anybody on for the Winn-Dixie

11   plaintiffs?

12             All right.  Anybody representing any of the

13   plaintiffs whose name I haven't called?

14             Hearing nothing, moving on to defendants.

15   Defendant Smithfield Foods, John Cotter?

16             MR. COTTER:  Good morning, Your Honor.

17             THE COURT:  Brian Robison?

18             MR. ROBISON:  Good morning, Your Honor.

19             THE COURT:  Anyone else for Smithfield?

20             MR. COTTER:  No, Your Honor.

21             THE COURT:  Defendant Agri Stats, Tripp Monts?

22             MR. MONTS:  Good morning, Your Honor.

23             THE COURT:  Justin Bernick?

24             MR. BERNICK:  Good morning, Your Honor.

25             THE COURT:  Anyone else for Agri Stats?

1           JBS USA Food Company, Sami Rashid?

2           MR. RASHID:  Good morning, Your Honor.

3           THE COURT:  And, Mr. Rashid, I understand you will

4    be the one speaking on behalf of defendants; is that

5    correct?

6           MR. RASHID:  I will not, Your Honor.  Just so the

7    record is clear, JBS has reached a settlement with the

8    direct purchasers and decided to take no position on the

9    motion.  But to the extent this issue plays out further in

10   the litigation, we would like to reserve the right to weigh

11   in on these types of issues in the future.  So that's a

12   short way of saying I'm the last person to be arguing this

13   motion today.

14          THE COURT:  All right.  Moving on in terms of

15   representation for JBS, Don Heeman?

16          MR. HEEMAN:  Good morning, Your Honor.

17          THE COURT:  Good morning.  Anybody else for JBS

18   USA?

19          Okay.  Defendant Triumph Foods, Christopher Smith?

20          MR. SMITH:  Good morning, Your Honor.

21          THE COURT:  Anybody else for Triumph?

22          Defendant Seaboard Foods, LLC, Peter Schwingler?

23          MR. SCHWINGLER:  Good morning, Your Honor.

24          THE COURT:  Anybody else for Seaboard Foods?

25          MR. SCHWINGLER:  Not for Seaboard, Your Honor, and

1    I will be arguing on behalf of the non-JBS defendants.

2              THE COURT:  All right.  Thank you, Mr. Schwingler.

3              Defendant Hormel Foods, Isaac Hall?

4              MR. HALL:  I'm here, Your Honor.  Good morning.

5              THE COURT:  Good morning.  And is anyone else

6    going to appear on behalf of Hormel?

7              MR. HALL:  No.

8              THE COURT:  And the Clemens Food Group and Clemens

9    Family Corporation, Mark Johnson?

10             MR. JOHNSON:  On by phone, Your Honor.

11             THE COURT:  And Christina Briesacher?

12             MR. BRIESACHER:  Good morning, Your Honor.

13             THE COURT:  And you know what, I go back and forth

14   about whether it ought to be Briesacher or Briesacher or

15   whether it's something else altogether.  Would you please

16   tell me --

17             MR. BRIESACHER:  You had it right.  It's

18   Briesacher.

19             THE COURT:  All right.  Thank you.

20             Anyone else for the Clemens defendants?

21             Last call for anyone representing the defendants

22   who wants their appearance noted.

23             MS. RIDER ROHRBAUGH:  Your Honor, did you go

24   through all the defendants, for Tyson?

25             THE COURT:  You know what, I didn't.  And for

1   whatever reason, it didn't show up on my cheat sheet and I

2   am sorry about that.

3          MS. RIDER ROHRBAUGH:  No problem.  This is Tiffany

4   Rider Rohrbaugh on behalf of Tyson defendants.

5          THE COURT:  Thank you for speaking up,

6   Ms. Rohrbaugh.

7          And is there anyone else appearing on behalf of

8   the Tyson defendants?

9          MS. RIDER ROHRBAUGH:  I don't believe so.

10          THE COURT:  Am I missing anybody else, whether a

11   defendant -- oh, I have somebody else in the waiting room.

12   All right.  I just admitted someone from the waiting room.

13   Can you please introduce yourself?

14          MR. AHERN:  I believe this is me, Patrick Ahern,

15   for the Winn-Dixie plaintiffs.  I apologize, Your Honor.

16          THE COURT:  That's all right.  Mr. Ahern, your

17   appearance is noted.

18          Anyone -- any counsel whose name I haven't called

19   and who wants their appearance noted?

20          All right.  I think we've got the full list now.

21          So, as I indicated, this is Docket Number 673.

22   It's a motion by the direct purchaser plaintiffs.  And,

23   Mr. Bruckner, it's your motion, so I'll give you the first

24   crack at the podium.

25          MR. BRUCKNER:  Great.  Thank you, Your Honor.

1          Your Honor, we're seeking an order that would have

2     the defendants set aside 10 percent of the monetary value of

3     any settlement or judgment obtained by any direct action

4     plaintiff who filed a lawsuit after the Court's October 20th

5     of 2020 order that upheld our complaint, the direct

6     purchaser plaintiffs' complaint, against defendants' motions

7     to dismiss.

8          And with the Court's indulgence and the court

9     reporter's indulgence, I probably will refer to the direct

10    purchaser plaintiffs as the DPPs and any direct action

11    plaintiffs as the DAPs.  I try to avoid the acronyms, but

12    after a point, it becomes inevitable.

13         THE COURT:  Understand.

14         MR. BRUCKNER:  In any event, Your Honor, what

15    we're seeking, it would provide a fund for the DPPs, at a

16    later time and on a fully-developed -- or more

17    fully-developed record, to seek fair compensation for the

18    extensive work that we've done and the successes we've

19    achieved that are going to provide a common benefit to any

20    future DAPs and all direct purchasers of pork.

21         I'm happy to address the defendants' --

22    defendants' objections in a few moments, which I'll note all

23    of which other Courts have rejected, but I want to say at

24    the outset that the defendants don't have any standing.

25    They don't raise a single right of their own that's affected

13

1    by this motion.

2              Now, let me spend a minute just setting the

3    context for this motion.  We've already expended significant

4    time and resources in this case, and we've significantly

5    advanced the case.  We prepared a comprehensive and original

6    complaint.  This is not a Government follow-on, and our

7    complaint includes an extensive factual investigation and

8    economic analyses.  We had our complaint upheld by the

9    Court, and we largely defeated the defendants' motions to

10   dismiss.

11             We've accomplished significant discovery, and we

12   established a pretrial schedule.  We've met and we've

13   conferred with the defendants on written discovery and

14   production of documents.  We negotiated document custodians

15   and other sources of ESI.  We negotiated an ESI protocol.

16   We've issued third-party subpoenas, and we've briefed

17   discovery disputes.  And, notably, we've reached a

18   significant icebreaker settlement with one defendant for 24

19   and a half million dollars.

20             Now, we're going to continue -- we, being the

21   DPPs, are going to continue to lead the prosecution of this

22   case for all direct purchasers, all of whom at the moment

23   are members of the putative direct purchaser class.  That's

24   going to include fact discovery, expert discovery and

25   analyses, dispositive motions, and trial.

1              Now, if our experience in similar cases is any

2    guide, the work that we've done and the achievements that

3    we've made are going to lead at least some direct action

4    plaintiffs to opt out of any certified direct purchaser

5    class, file their own complaints, and seek their own

6    recoveries.  And if and when they do so, they're going to

7    benefit from the work we've put in and the successes that

8    we've achieved.  Now, they're entitled to file their own

9    case, assuming they're fully informed, but they are not

10   entitled to take our hard work and our achievements for

11   their own benefit without fair compensation.

12             And as Judge Orrick noted in the *Lidoderm* case,

13   absent an order, like the one we seek, we won't know when or

14   if opt-outs settle and benefit from our work.  So we think

15   it's not only fair that the direct action plaintiffs pay

16   fair compensation for the benefits they receive, it's also

17   fair to all of the direct purchasers who stay in the class

18   so that they're not bearing a disproportionate share of the

19   litigation costs in litigating this case -- in prosecuting

20   the case.

21             Now, I want to stress that the amount of fair

22   compensation, what exactly is fair, that question is not

23   before the Court today.  We're simply asking the Court to

24   establish a set-aside so that, at an appropriate time on a

25   developed record, the truly affected parties, that is, the

1   DPPs, the DAPs, and the Court, not the defendants, can

2   determine what compensation is fair.

3           Now, I also want to stress there's no risk of

4   double recovery.  All compensation for us as counsel for

5   DPPs and for the DPPs is going to be court reviewed and

6   court approved.  The Court is going to review and approve

7   not only any fees we get based on our recovery for the

8   class, but the Court is also going to review and approve any

9   distributions from these set-aside funds.

10          Now, you have the authority -- the Court has the

11  authority --

12          THE COURT:  On --

13          MR. BRUCKNER:  I'm sorry.  Yes, Your Honor.

14          THE COURT:  On the issue of authority, I didn't

15  see addressed in either side's briefs a question that I

16  always have to consider, which is whether as a Magistrate

17  Judge I've got the authority or whether a question like this

18  has to go to the Article III Judge.  And I was -- it looked

19  like almost it -- in almost every situation any set-aside

20  order has been issued by a District Judge, an Article III

21  Judge.  I think there was one, maybe, that was cited by the

22  parties in which a Magistrate Judge had issued the order,

23  but without consideration of the issue of authority.  And I

24  was curious about whether that was something that you could

25  comment on.

1           MR. BRUCKNER:  Your Honor, I think you're correct.

2     I do not think we cited specifically that issue in our

3     brief; that is, can it be the Magistrate that enters that

4     order or is it the Article III Judge.  And when we did file

5     this motion, the Court did suggest or request that we file

6     it with Your Honor and not with Judge Tunheim.

7           If you would like supplemental briefing on that

8     question, we'd be more than happy to provide it.  It does --

9     we think, and as I'll argue in a moment, it falls within the

10    Court's inherent authority to manage and administer these

11    cases, and Your Honor has entered other similar orders.

12    We're not seeking any adjudication of a substantive right of

13    anyone, whether a future DAP or any party before the Court

14    now.  All we're asking is for a procedural device, a

15    procedural set-aside.

16          So, anyway, with the Court's indulgence, we're

17    happy to provide supplemental briefing on that very point if

18    you like, but I believe it's within the Court's ministerial

19    and management authority to manage and direct these cases,

20    as Your Honor has done so far in setting schedules --

21          THE COURT:  Yeah, just one other question on

22    the -- on the issue of authority, and that is to what

23    extent -- if I were to grant the motion, or Judge Tunheim,

24    for that matter, if direct actions are brought by plaintiffs

25    in other district courts, to what extent would any order

1    that we may enter here on a -- requiring a set-aside even

2    apply or have effect in those other actions, in those other

3    jurisdictions?

4         MR. BRUCKNER:  Here's how I think that would play

5    out, Your Honor.  Number one, if cases that are

6    substantially similar to these cases get filed in other

7    jurisdictions, I think the defendants would be at the front

8    of the line to seek to transfer them to this Court and to

9    have them consolidated with these cases.  And you could

10   either do it under 28 U.S.C. 1404, the change of venue

11   statute, or you could initiate an MDL under Section 1407.

12        So I think all parties, given the significant

13   advances we've made in this case so far, would seek to bring

14   them here.  And, as I say, I think the defendants would be

15   at the front of the line, because they'd rather be in fewer

16   courts than more courts.

17        In the unlikely event that some case did escape

18   this Court's jurisdiction, then I think the onus is on us,

19   the DPPs.  This Court doesn't have the authority, I don't

20   think, to enter an order in some other court.  In that

21   event, I think it would -- the burden would be on us, the

22   DPPs, to take Your Honor's order or Judge Tunheim's order,

23   as the case may be, and seek a sequestration order or a

24   similar order in that other court and -- if the facts

25   warranted it.  And as I can get into in a moment, how much

1   compensation is fair and do the facts warrant it will, in

2   some degree, be a case-by-case determination.  And the same

3   would be true for any case in this scenario that would not

4   end up before this Court.

5          As I say, I think that's an unlikely scenario, but

6   it's possible.  But, again, the burden would be on us to try

7   to carry that out and try to execute it.

8          THE COURT:  Okay.  Go ahead.

9          MR. BRUCKNER:  I think the -- one of the points I

10  was going to make is that there is no risk of double

11  recovery here because the Court is going to approve and

12  review all of the fees that we're going to obtain, whether

13  it's from a class recovery or whether it's from the

14  set-aside orders.

15         One question the Court might have is, you know,

16  why should I decide this now, there aren't any DAPs in front

17  of me.  I think the response to that is because we've

18  already significantly advanced this case, and we've achieved

19  significant and certain and concrete benefits for any future

20  DAPs.  Again, we're not asking the Court to adjudicate any

21  substantive rights of any parties that are not presently

22  before the Court.  We're simply asking that the funds be set

23  aside so that they are available when a determination is

24  made on a fully-developed record.  If it's not established

25  now, we do run the risk that future DAPs, without us even

1    knowing, will settle a claim based partly or entirely on the

2    work that we did.

3         There was one DAP case, Cheney Brothers, that was

4    on file when we filed this motion.  They dismissed it

5    shortly after we filed this motion.  I don't know why they

6    dismissed it, and I'm not suggesting or intimating anything,

7    and I'm not going to speculate on why they dismissed it.  I

8    simply don't know, and we simply don't know.  But it

9    illustrates the problem that we face in the absence of an

10   order like this.

11        One aspect of this is who's the best party to hold

12   the funds.  We propose that the defendants do it, but that's

13   not the only way that it can be done.  In *Baycol*, Judge

14   Davis appointed an escrow agent himself and the Court held

15   the funds.  In the *Guidant Defibrillators* case, Judge Frank

16   had plaintiffs' counsel establish the escrow account to hold

17   the funds.  And in *Lidoderm*, Judge Orrick, in the Northern

18   District of California, had the defendants establish the

19   accounts and hold the funds.

20        What's important is that it be in an insured

21   escrow account, but which party holds it, among the various

22   possibilities, I don't think is particularly dispositive one

23   way or the other.  We propose that the defendants do it

24   because that seems as simple as anything, but not

25   dispositive.

1          THE COURT:  You know, I think what I'd like you to

2     turn to at this point is the argument the defendants have

3     made that the case is not significantly advanced, at least

4     not in the way and to the inflection points that have

5     characterized the cases in which set-asides have been

6     created.  So could you address that?

7          MR. BRUCKNER:  Sure.  Happy to, Your Honor.

8          Well, they point to the *Generic Drugs* case and say

9     that significantly advanced means having a class certified.

10    Well, we disagree that this case is not significantly

11    advanced.  And if you think about it, the fact that a class

12    is certified doesn't provide a rationale for not

13    establishing a set-aside now.

14         Frankly, we think that's just an arbitrary

15    line-drawing exercise.  And, again, without any standing,

16    the defendants are saying, Draw the line somewhere else,

17    draw it farther down the road, draw it when a class is

18    certified.  But, again, if you think about it, what's magic

19    about that particular marker?  You could say that you can

20    draw the line when a complaint is filed.  In this case,

21    arguably, I think you could.  It's an original complaint

22    that represents a significant amount of time, investment,

23    investigation, and analysis.  That's not what we're

24    proposing here.

25         But you can also -- we can draw the line at the

1    point at which the DPPs defeated the motions to dismiss.

2    That's the point at which the District Court, after no small

3    amount of motion practice and argument and briefing and

4    rebriefing, decided that the plaintiffs' complaint has

5    enough heft to allow discovery to go forward.  That's a

6    clear and concrete and tangible benefit to any DAP that

7    files a case subsequent to that point.

8              You could argue that the line ought to be drawn

9    when -- not my dog, Your Honor.

10             THE COURT:  If anybody has a dog in the

11   background, make sure you're muted, please.

12             MR. BRUCKNER:  You could say that the line ought

13   to be drawn at the point that the DPPs achieve a significant

14   settlement, as we've done here.  In this case, it

15   coincidentally happens to be about the same time that Judge

16   Tunheim upheld our complaints against the motions to

17   dismiss.  But that too is a point at which at least one

18   defendant decided that the case was significant enough that

19   it wanted to resolve it by agreement, and it paid a

20   significant amount to do so.

21             So that's -- I think significantly advanced, I

22   think we certainly argue and submit that we have

23   significantly advanced the case.  I think there is nothing

24   magic about whether a class is certified or not, if you

25   think about the rationale of what's the point, or what is it

1    that drives the need for a set-aside motion like this.

2    There is nothing magic or particularly pertinent about

3    having a class certified if you think about it in terms of

4    what benefit is provided to the -- to the DAPs that follow

5    on after our cases.

6          THE COURT:  Can you point me to examples of cases

7    in which the case has reached the inflection points that you

8    are describing in this one in which a Court has agreed that

9    a set-aside would be appropriate?  I mean, I've got to

10   believe that in -- that motions to dismiss, and, indeed,

11   hard-fought motions to dismiss, are regularly filed and the

12   case wouldn't be going forward at all if they hadn't been

13   successfully defeated, but that seems like it would turn

14   into the exception that swallows the rule if that's all

15   that's required to justify a set-aside.  So can you point me

16   to some cases in which you had reached -- in those cases,

17   they had reached the point that you are describing this case

18   has reached and the Court has said, Yes, this is

19   significantly advanced, the set-aside is appropriate here?

20         MR. BRUCKNER:  Your Honor, not beyond the cases

21   that we've cited in our brief, except I would note that we

22   do have a class preliminarily certified as part of the JBS

23   settlement, and I have not seen a case where a Court said,

24   No, no, it must be a litigated certified class before you

25   can consider something like a -- this sort of set-aside that

1    we're proposing here.

2          Again, I think if you look at -- oh, I would say

3    that -- I would have to check this to be sure, Your Honor,

4    but I believe that in the *Baycol* and *Guidant Defibrillator*

5    cases that are here in this court, I believe those motions

6    were -- or those funds were set as part of early

7    organizational orders in the case, but, again, I would have

8    to double-check the dockets in those cases to make sure that

9    that's correct.

10         THE COURT:  All right.  Go ahead.

11         MR. BRUCKNER:  If I could, I want to address a

12   couple of the other points that the defendants raise, and

13   that is they speculate whether maybe the DAPs' cases really

14   are going to be so materially different that compensation

15   might never be warranted, they suggest.

16         But, again, putting aside the fact that they have

17   no standing, let's look at the particulars of that.  Are the

18   DAPs going to develop their own theories of the case

19   materially different than ours?  I guess it's possible.  But

20   if they truly do allege a new theory of recovery and uncover

21   brand-new facts, that can be considered at the time that

22   fair compensation is determined on a developed record.  If I

23   were such a DAP counsel with such a new theory, that is

24   certainly what I would argue, is that my case is as original

25   as anyone else's and, therefore, I don't owe anything to

1      anyone else.  But that determination can be made once that

2      record is developed.

3              Are the DAPs going to pursue their own discovery,

4      as the defendants say?  I think that's highly unlikely, and

5      it will only be to a limited extent, if at all.  As the

6      Court has directed the parties, discovery is to be

7      coordinated as much as possible to make it as efficient as

8      possible, and I am sure that the defendants support that

9      goal as much as anyone.

10             Are the DAPs going to hire their own experts?  I

11     presume they will.  But, again, since DPPs have gone first

12     and likely will continue to go first and will continue to

13     make material and substantial progress in our cases, those

14     DAPs necessarily are going to benefit from the work of our

15     experts and our other work.  But, again, that's a

16     determination that can be made at the time that a record is

17     developed.

18             I think my final point that I'd like to address

19     that the defendants make is that they suggest that the

20     antitrust cases don't have the same management problems that

21     a mass tort case has and, therefore, set-asides aren't

22     really necessary in a case like this.  Well, A, I think

23     that's simply not true.  They do present management issues.

24     Judge Orrick in *Lidoderm* specifically rejected that

25     argument.  And in the similar *Broiler Chicken Antitrust* case

1       that's pending in the Northern District of Illinois, I think

2       Judge Durkin and Magistrate Judge Gilbert would strongly

3       disagree with the suggestion that the antitrust cases,

4       there's no management issues.  There's a significant number

5       of DAPs in that case, and the management issues are

6       considerable.

7               So, with that, Your Honor, unless the Court has

8       any questions, I'll stand down.

9               THE COURT:  I don't think at this point.  I may

10      very well have some additional follow-up questions for you

11      after I hear from Mr. Schwingler, but let me give him a

12      chance at the podium first.  And -- although,

13      Mr. Schwingler, hang on just one second.  I want to look at

14      one thing before you start, so give me just a moment.

15              Yeah.  Actually, I did have one more question for

16      you, Mr. Bruckner, and that is has this issue been addressed

17      yet in the *Broiler Chicken* litigation?  Has a request for a

18      set-aside been made; and, if so, what did the Court do with

19      it?

20              MR. BRUCKNER:  No, Your Honor, it has not yet been

21      addressed.

22              THE COURT:  All right.  Thank you.  It's one of

23      the rare times that somebody is not pointing me to something

24      that the Judge did in *Broiler Chicken* and say, Here, do it

25      this way.  So all right.  Thank you.

1              Now, Mr. Schwingler, you're on.

2              MR. SCHWINGLER:  Good morning, Your Honor.

3              I will -- I'd like to start by addressing the

4      question of my client's standing and those of the other

5      defendants I'm speaking on behalf of this morning.  If the

6      DPPs are correct, then there is nobody that has standing to

7      oppose this motion, because there are no DAPs that would

8      be -- that exist that are subject to the motion, and

9      apparently the defendants have no rights at stake here

10     either.  We don't agree with that.  The order would require

11     us to set aside funds, so it's directed at us, and so of

12     course we have standing.  But that argument underscores the

13     very problem with the motion, which is that it's premature

14     on every possible level.

15             Because Cheney Brothers has dismissed its case,

16     there are no pending DAP actions that are subject to the

17     motion, so it's moot as to Cheney Brothers, but it's unripe

18     as to everybody else.

19             But, more importantly, the motion is unripe and

20     premature under the DPPs' own authorities.  They cite three

21     class actions, I believe, in their brief.  Two are antitrust

22     cases, and one involved Hurricane Katrina.  In all three,

23     the Court granted some form of compensation, not necessarily

24     a set-aside, to class counsel after certifying a class.

25             We focused on the two antitrust cases in our

 1    brief, *Lidoderm* and *Linerboard*.  I won't repeat what we said

 2    chapter and verse, but I'd like to emphasize a few points.

 3    Those cases had a few things in common.  The orders came

 4    years into the cases after substantial document production,

 5    millions of pages of documents I think the record showed in

 6    *Lidoderm*, it was probably even more in *Linerboard*, dozens of

 7    depositions had been taken by class counsel, motion

 8    practice, expert discovery, expert reports, and the class

 9    counsel there had successfully prevailed on class

10    certification, and then *Linerboard* successfully defended a

11    23(f) appeal.

12           After the classes were certified and then counsel

13    was actually representing these entities, then you had a

14    wave of opt-outs by large class members who filed tagalong

15    complaints and wanted access to the discovery record that

16    was, at that point in time, massive.

17           And so on that posture is when the Courts granted

18    the type of relief -- or at least in *Lidoderm* the type of

19    relief that the DPPs seek here.  I believe *Linerboard*

20    involved a more generic order.

21           So none of those facts are present here.  And

22    we're certainly not trying to trivialize what class counsel

23    or putative class counsel have done so far in filing a

24    complaint and opposing a motion to dismiss and negotiating

25    discovery, but it's not what happened in the two prior cases

1    they rely on so heavily.

2            The motion is also premature on a practical level.

3    There is no real-world need for this relief now.  You know,

4    they talked about three sort of practical concerns in their

5    brief.  Just to hit them briefly, it's pure speculation to

6    say that someone will bring a case, free ride on class

7    counsel's actions, settle, and then disappear.  We --

8    it's -- they point to no examples of that ever happening in

9    the past.  But to suggest that it might happen in this case

10   just shows how premature the motion is.

11           The order will not promote judicial economy, which

12   they argued in the brief, I'm not sure if Mr. Bruckner

13   mentioned that in his remarks this morning, but it would

14   have the opposite effect.  It would encourage DAPs to file

15   in other jurisdictions and deprive everybody on the Zoom

16   this morning of the benefits of coordinated proceedings.

17   And so you have the forum shopping issue, which is just

18   another way in which this order would impact defendants, but

19   it would impact everybody.

20           And then, of course, as Mr. Bruckner mentioned

21   several times, the ultimate entitlement to any money will

22   have to be addressed in future motions at a later time on a

23   fully-developed record, which were Mr. Bruckner's exact

24   words.  Of course that's correct.  And that's why we

25   shouldn't be addressing these issues now, when there's

1      nobody that's even opted out yet.

2              And then, lastly, I won't dwell on the notice

3      rationale, but of course if notice was the plaintiffs'

4      concern, there's other ways to give notice than to order a

5      set-aside.

6              I don't want to dwell on whether this kind of

7      relief can ever be appropriate in an antitrust case, but

8      what is important is that the Court need not wade into that

9      issue now in a vacuum.  It makes more sense to evaluate

10     whether this concept even fits the case on a more developed

11     record with an actual DAP in the room to defend its

12     interests.  But if the Court is inclined to address that

13     issue, we do not believe that this type of relief is

14     appropriate in an antitrust case with a fee-shifting statute

15     and all the other mechanisms that can ensure that

16     Mr. Bruckner and his colleagues, if successful, are paid for

17     their work.

18             The -- I'm just checking to see if there's

19     anything else I need to address from Mr. Bruckner's comments

20     before I wrap.

21             Mr. Bruckner noted that every Court has rejected

22     the defendants' objections, and I -- it is possible that

23     *Lidoderm* and *Linerboard* rejected similar objections that

24     were made years later at a totally different time, but I

25     don't believe any Court has rejected our objections on this

1   record.  And I think that has to be the case because

2   plaintiffs cite no authorities entering any such order.  So

3   as far as I know, *Generic Drugs* is the one case that took

4   this on before class cert, and the Court there agreed with

5   us.

6           THE COURT:  What about Mr. Bruckner's argument

7   that class certification is kind of at an arbitrary place to

8   draw the line, that important and valuable work gets done

9   all the way up through and -- but before that and that,

10  therefore, counsel's interest in assuring that there are not

11  free riders on their work is already -- is already in play?

12  How would you address that sort of the arbitrary line in the

13  sand argument?

14          MR. SCHWINGLER:  I have a couple reactions to

15  that, Your Honor.  The first is it's the least arbitrary

16  possible line, because it's a major point in the case where

17  counsel, who then would later seek compensation from others,

18  has had to test -- put its case to the test in front of the

19  Judge with evidence and present the developed record and the

20  legal theories that fit that record and get the Judge's

21  blessing at least as to class certification.  The order then

22  certifying the class makes those lawyers the lawyers of the

23  absent class members until they opt out.

24          As of right now, apart from whatever significance

25  the JBS settlement may have, which I think is none for

1    purposes of this motion, Mr. Bruckner and his colleagues

2    don't represent anybody other than the class -- the named

3    plaintiffs in the complaints.

4          But it's not arbitrary.  There's a reason why

5    Courts don't grant this relief before class cert.  It has to

6    do with the fact that the record isn't developed at that

7    point.  There's no record of free riding here, right?  There

8    is -- there was in *Linerboard*, and that's the big

9    difference.

10          But the question and, you know, the suggestion

11   that class cert is arbitrary underscores if not at class

12   cert, then when.  And doing it now is just as arbitrary, if

13   not more.

14          I heard Mr. Bruckner say you could make an

15   argument that once we filed our complaint, that's when a

16   set-aside order should come in.  And my reaction to that is

17   I think the question Your Honor had, if this is really

18   feasible, if this is an appropriate time to enter this

19   relief, why don't you see this in every antitrust class

20   action.  Because there are many that get past Rule 12 and

21   none that have entered a set-aside order at that stage in

22   the case.  And the reason is simply Courts require a much

23   more developed record and much stronger showing of free

24   riding, and that has occurred in every instance after class

25   certification.

1          THE COURT:  Thank you, Mr. Schwingler.

2          Mr. Bruckner, I'm going to give you a chance to

3     reply.

4          MR. BRUCKNER:  Thank you, Your Honor.  I thought

5     Mr. Schwingler asked a really good question toward the end,

6     and that is if not at class certification, then when.  And I

7     think that's a very important question.  And I think if you

8     think about it for a moment, you end up at, well, what's the

9     rationale.  And I submit the rationale for all of these

10    Courts who have entered these orders is what's the point at

11    which the DPPs' work has provided a real and material

12    tangible benefit to direct action plaintiffs.

13         Class cert -- in the vast majority of cases, the

14    plaintiff class certification is not when direct action

15    plaintiffs start appearing and start filing cases.  That

16    almost always is shortly after motions to dismiss are filed

17    and shortly after settlements start to occur.  They do not

18    wait until classes are certified.  But, again, if you think

19    about the rationale of what is the point at which the DPPs'

20    work has provided some benefit for direct action plaintiffs.

21         Let me make a couple of comments on

22    Mr. Schwingler's point about judicial economy.  Number one,

23    I have never seen a class -- I'm sorry -- a set-aside order

24    encourage forum shopping.  But, again, I mean -- and the

25    risk of forum shopping is present in any case, set-aside

1   order or not.  But, as I said, I think the parties would be

2   unified -- the parties in this case would be unified in

3   seeking to have any such cases transferred to this Court

4   just for matters of judicial efficiency.  So I do not see it

5   as being less economical from a judicial standpoint.

6         And, in fact, the alternative that the defendants

7   are suggesting, that we wait until a DAP shows up, we wait

8   until a DAP has their recovery -- and assuming that we even

9   know about it, we, the direct purchasers, because there's no

10  requirement for Court approval or anything like that -- then

11  let's address the matter then.  To address it and litigate

12  it piecemeal and on a case-by-case basis, that seems to be

13  the least efficient of all the alternatives here.

14        And, similarly, when he says, You know, let's

15  address it when there's a determination to be made, was

16  Mr. Schwingler's suggestion, again, by that point, from our

17  standpoint, the horse is already out of the barn.  The case

18  is settled.  The DAP case is settled.  The case is resolved.

19  At that point -- and there are no funds to be set aside --

20  we can try and we can do our best, but it is much more

21  fraught with uncertainty than the simple requirement now

22  that the funds be set aside.

23        Mr. Schwingler noted that there's no real-world

24  relief or no action required now.  If you think about the

25  mechanism of how this is going to work, if the Court enters

 1     a set-aside order, Mr. Schwingler is correct that there will

 2     not be any action required by any party until a DAP files

 3     and then achieves a recovery.  At that point, the escrow

 4     account can be opened and the set-aside can be deposited in

 5     the -- in the escrow account.  Up until that time, he's

 6     correct, there is no action to be required, but the

 7     procedure will be in place.  And it is a not dissimilar

 8     procedure from many other aspects of court organizational

 9     orders and court ministerial orders that provide that future

10     parties who file cases who end up consolidated before the

11     Court must follow the following strictures and the following

12     guidelines, and it's no different than that.

13             Mr. Schwingler referred to fee-shifting statutes

14     and other ways to make sure that DPPs are adequately

15     compensated.  That misses the point.  I don't see how a

16     fee-shifting statute, which, by the way, typically only

17     comes into play when and if we take a defendant to trial and

18     we win a verdict and we win a judgment, that's when

19     fee-shifting statutes come into play, how that addresses

20     whether a DAP was able to benefit from our work without fair

21     compensation, I just don't see the connection.  I just don't

22     get how that argument applies in the least.

23             Finally, to harken back to the *Broiler* point, I

24     know Your Honor was thrilled that, you know, we weren't

25     bringing *Broiler* back into this, but I'm only going to do it

1       a little bit at the end.  I will note there are a

2       significant number of opt-outs in the *Broiler* case.  And

3       those companies that buy chicken, they also buy pork, so I

4       think it's a pretty good harbinger of what we are going to

5       see in this case.

6              And, again, we think the time is opportune now to

7       set up this procedure, to enter this order.  All parties

8       will know it coming in.  All parties will know it when they

9       consider whether they want to opt out or not.  Again, once a

10      DAP files and once a DAP paddles its own canoe, you know,

11      pursues its own case, all of those considerations will be

12      relevant and will be ripe at the time a determination is

13      made of what's fair compensation.  All this is is a

14      procedural device to make sure that funds are available to

15      address that compensation or to provide for that

16      compensation.

17             Unless the Court has anything else, I think that's

18      all I have.

19             THE COURT:  All right.  I don't think so,

20      Mr. Bruckner.

21             Mr. Schwingler, anything you haven't already said

22      in response to the points that Mr. Bruckner made?

23             MR. SCHWINGLER:  No.  Just the only point I'd like

24      to close on is just to come back to the fundamental issue,

25      which is no Court has ever granted this relief at this time

1    and for many good reasons, so I won't repeat any of those

2    reasons, but that's the bottom line.

3              THE COURT:  All right.  All right.  Well, I'm

4    going to take a few minutes.  I want to look at a couple of

5    things and think about how I want to proceed from here.  So

6    I'm going to go off camera.  You're welcome to go off

7    camera.  I'll suspend the recording for a moment.  I think

8    I'll only need about five minutes or so, and then we'll

9    figure out where we go from here.

10       (Recess taken at 9:50 a.m.)

11                    *    *    *    *    *

12       (10:03 a.m.)

13                        **IN OPEN COURT**

14

15             THE COURT:  We're back on the record in the matter

16   of In Re: Pork Antitrust Litigation, 18-cv-1776, and

17   specifically on the direct purchaser plaintiffs' motion for

18   entry of a set-aside order.

19             I am going to deny the motion, but I'll give you a

20   fairly detailed explanation of why so that if the DPPs

21   believe that it's something that they'd like to raise with

22   Judge Tunheim on appeal, this record should give you an

23   adequate explanation, an adequate record on which to do

24   that.

25             Let me note at the outset that I do have some

1    questions still about the authority of a Magistrate Judge

2    versus an Article III Judge to order a set-aside of this

3    type.  Since I'm denying the motion and specifically denying

4    the motion as premature, I think that probably makes that a

5    moot point, but down the line if a -- if the motion is

6    renewed, it would probably be helpful if, plaintiffs, you

7    would specifically address that in the motion so that we can

8    be confident that it's coming to the right person.

9            As for the standing issue, I think the defendants

10   do have standing to object to this.  But even if they

11   didn't, as the plaintiffs have noted, this is an issue that

12   goes to the Court's inherent ability to manage its own

13   cases, its own docket, and it also implicates the rights of

14   people and entities who are not, at this point, before the

15   Court, and therefore I consider it not only my option, but

16   my responsibility to consider any arguments that ought to

17   and do inform the decision to be made.

18           To be clear, I'm denying the DPPs' motion without

19   prejudice.  That's probably clear from the fact that I'm

20   denying it on the ground that it's premature.

21           I don't disagree that counsel for the DPPs has

22   done important work, has done valuable work thus far in the

23   case; but, as I noted in some of the questions I asked

24   during the argument, I think if that was sufficient to

25   trigger the appropriateness of the set-aside, these kinds of

1    orders would be routinely granted, and they're not.

2         The Courts have routinely talked about the case

3    being significantly advanced and not simply a question of is

4    there a point at which you could assign real and tangible

5    value to the work done by plaintiffs' counsel.  And I'm not

6    persuaded that this case is yet significantly advanced in

7    the sense that's been described by the Courts when they have

8    granted or denied orders of this kind.

9         First, it is significant to me that -- and has

10   been significant in those other matters that class

11   certification hasn't been granted in this case.  And I agree

12   with the point defendants made that I don't think that's an

13   arbitrary line to draw.  I never say never.  I'm not saying

14   that I couldn't imagine a situation or there could never be

15   a situation in which a set-aside could be granted before

16   class cert, but the case law cited to me doesn't -- doesn't

17   cite such a case yet or even a Court saying -- you know,

18   describing what it might look like if it happened, and I

19   certainly haven't seen anything to tell me that in this case

20   at this point that that line isn't an important one.

21        There are other distinguishers here.  At this

22   point, there's been no steering committee appointed.

23   Asterisk, more on that in a moment.  And although, as I

24   said, I know, I agree that important work has been done on

25   preparation for discovery and some discovery, but discovery

1    in many ways is still just getting started.

2              And, finally, it is also significant to me that at

3    this point there aren't any direct action plaintiffs, and so

4    right now I think this motion is still more a solution in

5    search of a problem, and we don't have -- we don't have a

6    problem and -- or concrete reason to expect and predict that

7    there will be one.

8              So I think the authority that the direct purchaser

9    plaintiffs has relied on is distinguishable.  *Modified Rice*,

10   that was an MDL, which this is not, but the Court in that

11   case created the common benefit fund after the special

12   master noted that the plaintiffs' leadership group had

13   invested 100,000 hours and had taken more than 100

14   depositions, conducted bellwether trials, and prevailed on

15   several motions for summary judgment.

16             I did, by the way, during the break confirm that

17   there was an early set-aside order in *Baycol* and *Guidant*.

18   Again, those were MDLs, and I think there is some

19   distinction there, but I also noted that it doesn't appear

20   that there was any opposition to that in those cases, so the

21   Judge in each of those cases was not called on to actually

22   consider the question of prematurity.  It wasn't raised.  It

23   was -- the set-aside order was apparently in there by

24   agreement, or at least that's -- you know, my quick read of

25   the record suggested that that was the case.

1              *In Re Linerboard* can also be distinguished.  In

2      that case, discovery essentially had been concluded.  And

3      the tagalong plaintiffs, the free rider plaintiffs, many of

4      them were former class members who had opted out and then

5      filed separate suits as discovery was concluding.  And the

6      Court noted that it was the rare antitrust case in which

7      major entities and their counsel awaited the development of

8      the case by designated counsel and only filed suit on the

9      eve of the conclusion of discovery.  We're not there yet,

10     and it's not clear that -- that that will happen here.

11             *Lidoderm*, an antitrust case, the Court ordered a

12     set-aside.  But, again, there the class had been certified

13     and the Court found the litigation was significantly and

14     sufficiently advanced.  *Turner* can also be distinguished in

15     terms of how far along that case was compared to this one.

16             So I do find the authority cited by the defendants

17     to be more apropos to this case and to distinguishing the

18     status of this case, and *Generic Drugs* being kind of the

19     primary key there where the Court denied the motion for a

20     set-aside fund without prejudice, noting that no class had

21     been certified and that the scope of affected parties had

22     not yet been established, and essentially found that the

23     record simply wasn't well enough developed and the case not

24     sufficiently advanced to warrant the entry of an order of

25     this kind.

1            As I've indicated, if and when, and I'm assuming

2      very likely, a new motion is brought, I do want you to take

3      a look at the question of whether this ought to go to Judge

4      Tunheim.  But, as I say, given the basis on which I'm

5      denying the motion at this point, I think that's a question

6      for another day.

7            So I'm denying the motion without prejudice, and I

8      won't be issuing a written order.  I'll do minutes that

9      simply capture the bottom line here, but this should give

10      you enough of a record if you want to take it further at

11      this point.

12            I mentioned an asterisk.  There is one other

13      matter I wanted to address while I've got you here.  And to

14      be clear, on this next matter, I will also be doing a text

15      only order because I don't think I've got everybody here

16      who's interested in the question, but I do want to get it on

17      your radar.  The commercial and institutional plaintiffs had

18      filed a motion to appoint a steering committee -- I'm

19      sorry -- commercial and institutional indirect purchaser

20      plaintiffs had filed a motion to appoint a steering

21      committee.  It looks like the motion was opposed.

22            But there was a very important issue that wasn't

23      addressed in any of the filings and without which I'm not

24      willing, and Judge Tunheim would not want me, to take the

25      motion up, and that is there was no mention, as far as I

1    could tell in any of the memoranda or in any of the

2    declarations, of diversity in the proposed steering

3    committee.  There may very well be diversity there, but it

4    wasn't mentioned.  It wasn't called out either in the

5    memorandum or in any of the declarations.

6          And I think I noted in one of our early

7    conferences, maybe our very first conference, that it's

8    important both to me and, more importantly, to Chief Judge

9    Tunheim that diversity be reflected in the leadership roles

10   in litigation of this kind.  And, in fact, it was something

11   that was specifically addressed in the submissions when you

12   asked to have interim lead counsel appointed.  So its

13   absence concerned me in the more recent filings.

14         So, as I say, I'll do a -- I'll do a text-only

15   entry as well so that all counsel who are getting CM/ECF

16   notices on this case and, in particular, the counsel who

17   were involved in the filing of that motion will know this is

18   on my mind, but just wanted to get it on your radar.

19         But I am not going to enter an order on that

20   motion until it is supplemented with some specific

21   information about the diversity in the leadership of the

22   proposed steering committee.

23         So I think that covers what I wanted to cover this

24   morning.  Is there anything else that we should address

25   before I adjourn the hearing?

1          Mr. Bruckner, on behalf of any of the plaintiffs?

2          MR. BRUCKNER:  No, Your Honor, nothing on our

3     agenda.

4          THE COURT:  All right.  And, Mr. Schwingler, or

5     any of the other defense counsel who are here, anything

6     further?

7          MR. SCHWINGLER:  Nothing from me, Your Honor.

8          THE COURT:  Okay.  Last call?

9          All right.  Thank you very much.  We are

10    adjourned.

11       (Court adjourned at 10:16 a.m.)

12                        *     *     *

13

14

15       I, Erin D. Drost, certify that the foregoing is a

16    correct transcript from the record of proceedings in the

17    above-entitled matter to the best of my ability.

18

19            Certified by:  *s/ Erin D. Drost*

20                           Erin D. Drost, RMR-CRR

21

22

23

24

25