# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE PORK ANTITRUST
LITIGATION

This Document Relates to:

All Consumer Indirect Purchaser Actions

Civil No. 18-1776 (JRT/HB)

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PRELIMINARY APPROVAL OF
THE CLASS ACTION
SETTLEMENT BETWEEN
CONSUMER INDIRECT
PURCHASER PLAINTIFFS AND
JBS DEFENDANTS**

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................1

II.     SUMMARY OF LITIGATION ............................................................1

III.    SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS....................4

IV.     THE SETTLEMENTS FALL WITHIN THE RANGE OF
        POSSIBLE APPROVAL ......................................................................6

        A.     The settlements were reached in arm's length negotiations
               between experienced and capable counsel. .................................7

        B.     Consumer IPPs have had adequate opportunity to assess the
               merits of their claims, and JBS's defenses. .................................8

        C.     The settlement provides significant relief to the settlement
               class. ...........................................................................................9

V.      THE COURT SHOULD CERTIFY THE PROPOSED
        SETTLEMENT CLASS.......................................................................10

        A.     The Proposed Settlement Class Satisfies Rule 23(a) .................11

               1.     Numerosity ...................................................................11

               2.     Commonality .................................................................11

               3.     Typicality ......................................................................12

               4.     Adequacy........................................................................13

        B.     The Proposed Settlement Class Satisfies Rule 23(b)(3) ............14

VI.     CONSUMER IPPS PROPOSE TO SEND NOTICE AFTER THEY
        HAVE COLLECTED DIRECT CONTACT INFORMATION FOR
        CLASS MEMBERS .............................................................................15

VII.    CONCLUSION .................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alpern v. UtiliCorp United, Inc.,*
    84 F.3d 1525 (8th Cir. 1996) .................................................................... 12

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).................................................................................. 10

*Custom Hair Designs by Sandy v. Cent. Payment Co., LLC,*
    984 F.3d 595 (8th Cir. 2020) .................................................................... 14

*DeBoer v. Mellon Mortg. Co.,*
    64 F.3d 1171 (8th Cir. 1995) ................................................................ 8, 12

*In re Emp. Benefit Plans Sec. Litig.,*
    1993 WL 330595 (D. Minn. June 2, 1993)................................................ 7

*Grier v. Chase Manhattan Auto Fin. Co.,*
    2000 WL175126 (E.D. Pa. Feb. 16, 2000) ................................................ 7

*Huyer v. Wells Fargo & Co.,*
    295 F.R.D. 332 (S.D. Iowa 2016) ............................................................ 12

*In re Monosodium Glutamate Antitrust Litig.,*
    205 F.R.D. 229 (D. Minn. 2001)............................................................... 10

*Paxton v. Union Nat. Bank,*
    688 F.2d 552 (8th Cir. 1982) .................................................................... 13

*Petrovic v. Amoco Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) .............................................................. 8, 15

*Richter v. Bowen,*
    669 F. Supp. 275 (N.D. Iowa 1987).......................................................... 11

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011).................................................................................. 11

*White v. Nat'l Football League,*
    822 F.Supp. 1389 (D. Minn.1993).......................................................... 6, 7

*White v. Nat'l Football League*,
836 F. Supp. 1458 (D. Minn. 1993) ................................................................. 7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
2013 WL 716088 (D. Minn. Feb. 27, 2013) .................................................... 7

## FEDERAL STATUTES

Sherman Act § 1 ................................................................................................ 2, 15

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ............................................................ *passim*

# I.   INTRODUCTION

Consumer Indirect Purchaser Plaintiffs ("consumer IPPs") respectfully move for preliminary approval of settlements with Defendants JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company (collectively, "Settling Defendants" or "JBS"). This first settlement for the consumer IPP class – negotiated at arm's length – provides $20 million in total relief to the consumer IPP class. This settlement is the result of arm's length negotiations, conducted in front of an experienced mediator, which provides substantial monetary and non-monetary relief to the consumer IPP class. Settling Defendants' agreement to provide cooperation will also strengthen plaintiffs' case against the remaining Defendants. Consumer IPPs request that this Court grant preliminary approval of the settlement, certify the proposed settlement class for settlement purposes, and allow the consumer IPPs time days to acquire contact information for class members from grocery stores. Subject to the Court's preliminary approval of the settlement, the consumer IPPs will file a motion to direct notice within 60 days, proposing a notice plan to this court as well as the proposed notices themselves.

# II.   SUMMARY OF LITIGATION

Consumer IPPs – the first to file a complaint against the Pork industry – have been litigating this case diligently for almost three years.[1] The consumer IPP complaint alleges

---

[1] The defendants in this case are: Agri Stats, Inc. ("Agri Stats"); Clemens Food Group, LLC, The Clemens Family Corporation, and Hatfield Quality Meats (together and separately, "Clemens"); Hormel Foods Corporation ("Hormel"); Indiana Packers Corporation ("Indiana Packers"); JBS USA Food Company ("JBS"); Seaboard Foods LLC ("Seaboard"); Smithfield Foods, Inc. ("Smithfield"); Triumph Foods, LLC

that defendants coordinated the supply and price of pork from at least 2009 to the present through the exchange of detailed, competitively sensitive information through Agri Stats. MTD Order at 7.[2] Agri Stats would collect the sensitive information from the pork defendants and disseminate it back to them in detailed weekly and monthly reports, standardizing the information across the defendants into an "apples to apples" comparison. Through these reports, defendants were able to decipher which data belonged to which defendant, allowing them to monitor production and price levels in the industry. *Id.* In addition, Plaintiffs allege that defendants carried out the conspiracy through public statements, aimed at one another, regarding the need to cut production. Defendants then took individual action to cut supply or limit supply increases that would otherwise not have occurred. *Id.*

On October 15, 2018, the Court appointed Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Gustafson Gluek PLLC ("Gustafson Gluek") as lead counsel for the proposed consumer IPP class. ECF No. 151. On August 17, 2018, the consumer indirect purchasers filed a Consolidated Amended Class Action Complaint alleging that the defendants conspired to suppress pork output and raise pork prices, in violation of the Sherman Act and state antitrust and consumer protection laws. ECF No. 74.[3] The Court

---

("Triumph"); and Tyson Foods, Inc., Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. (together and separately, "Tyson").

[2] "MTD Order" refers to the Memorandum and Order, ECF No. 519 (filed Oct. 16, 2020).

[3] EUCPs' initial Consolidated Amended Class Action Complaint alleged that fifteen pork processors maintained a *per se* unlawful conspiracy to suppress pork output and

granted the defendants' first set of motions to dismiss, and on November 6, 2019, the consumer IPPs filed a Second Amended Consolidated Class Action Complaint (SAC). ECF Nos. 393 (redacted) and 392 (under seal). On October 16, 2020, the Court denied the defendants' motions to dismiss, except as to Indiana Packers. ECF No. 519. The consumer IPPs bring claims for damages under the antitrust, consumer protection and unjust enrichment laws of 26 states and the District of Columbia. SAC, ¶ 246.

Unlike many other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the DOJ's Corporate Leniency Program. Rather, the conspiracy was identified by consumer IPPs through the use of investigators and economists, leading to the first complaint filed – the consumer IPP complaint.

Since the filing of the complaint, consumer IPPs have engaged in rigorous discovery. On January 28, 2019, Magistrate Judge Bowbeer granted the plaintiffs' motion to compel documents produced by Agri Stats to the Department of Justice. ECF No. 264. These documents were heavily incorporated into the consumer IPPs' second amended complaint. Moreover, working with counsel representing the other classes, consumer IPPs have collected over 85,000 documents to date relevant to the defendants and the pork market. Scarlett Decl., ¶ 3.[4]

---

raise prices, as well as an additional claim for an agreement to exchange information under the rule of reason standard. ECF No. 74.

[4] "Scarlett Decl." refers to the Declaration of Shana E. Scarlett in Support of the Motion for Preliminary Approval of Settlement Between Consumer Indirect Purchaser Plaintiffs and JBS Defendants, filed concurrently herewith.

### III.   SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

The settlement between JBS and the consumer IPPs is the product of confidential, protracted, intense arms-length negotiations and includes both monetary relief for the class and cooperation in the consumer IPPs' litigation against the non-settling defendants.

JBS and the consumer IPPs first discussed settlement while the second set of motions to dismiss were pending, in September 2020. Scarlett Decl., ¶ 4. While the initial discussions were unsuccessful, after the motions to dismiss were denied, the parties reengaged in early 2021. A mediation was held before Professor Eric Green, a noted mediator with Resolutions, LLC. An agreement upon terms was reached on March 9, 2021 and the settlement agreement was signed by both parties on March 12, 2021. Scarlett Decl., ¶ 5; Ex. A.

The settlement provides that JBS will pay $20 million into a settlement fund that will be used to compensate the consumer IPP class and cover litigation fees and expenses, including the cost of notifying class members and administering the settlement. Scarlett Decl., Ex. A. Lead Counsel believe this sum is fair and reasonable in light of JBS's market share of class products, and the significant cooperation JBS agreed to provide:

> Cooperation by JBS is a material term of this Settlement Agreement and shall include the following categories of cooperation:
>
> a.      To the extent that JBS responds to discovery, produces document, or provides proffers or other cooperation to other plaintiffs in the *In re: Pork Antitrust Litigation* it will serve or otherwise provide IPPs a copy of such materials reasonably soon after such production to any other plaintiff.

- 4 -

     b.      JBS agrees to use reasonable effort to respond to a reasonable number of IPPs questions [] and otherwise assist IPPs to understand structured data produced by JBS in this matter (if any).

     c.      JBS agrees to use reasonable efforts to authenticate documents and/or things produced by JBS in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action.

*Id.*, Ex. A at 11.

In exchange, consumer IPPs agree to release:

the JBS parties from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, that exist as of the date of the order granting Preliminary Approval, on account of, or in any way arising out of; any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the indirect purchase of Pork produced, processed or sold by JBS or any of the Defendants or their co-conspirators Defendants or their co-conspirators, and purchased indirectly by the Releasing Parties (the "Released Claims").

Scarlett Decl., Ex. A at 13-14. The released claims "do not include (i) claims asserted

against any Defendant or co-conspirator other than the JBS Released Parties; (ii) any

claims wholly unrelated to the allegations in the Actions that are based on breach of

contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged

or delayed goods, product defect or securities claim; or (iii) damages claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State." *Id.*[5] For the purposes of this settlement, Pork means:

> "Pork" means porcine or swine products processed, produced or sold by JBS, or by any of the Defendants or their co-conspirators, including but not limited to: primals (including but not limited to loins, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chef's prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including, but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products).

Scarlett Decl., Ex. A at 5.

## IV.   THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."[6] However, Courts must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

At this preliminary approval stage, the Court determines whether the settlement is within the range of possible approval and whether class members should be notified of

---

[5] The settlement agreement with JBS may be terminated in the unlikely event that more than 500,000 potential class members "timely and validly exclude themselves from the Settlement Class." *Id.* at 15.

[6] *White v. Nat'l Football League*, 822 F.Supp. 1389, 1416 (D. Minn.1993).

the terms of the proposed settlement.[7] Generally, before directing notice to the class members, a Court makes a preliminary evaluation of the proposed class action settlement pursuant to Rule 23(e).[8] In other words, the Court must consider whether it "will likely be able to" approve the settlement as fair, reasonable, and adequate.[9]

As set forth below, consumer IPPs' agreement with JBS is fair, reasonable, and adequate. Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery."[10]

## A.   The settlements were reached in arm's length negotiations between experienced and capable counsel.

Courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement.[11]

---

[7] *White,* 822 F. Supp. At 1399; 2 Newberg on Class Actions, § 11.24 (3d ed. 1992) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'").

[8] *See* Manual For Complex Litigation, (Fourth) § 21.632 (2004).

[9] Fed. R. Civ. P. 23(e)(1)(B)(i); *see* Fed. R. Civ. P. 23(e)(2).

[10] *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-180, 2000 WL175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993).

[11] *See, e.g., In re Emp. Benefit Plans Sec. Litig.*, Civ. No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No.

Both sets of counsel – both those representing the consumer IPPs, and those representing JBS – are experienced counsel in antitrust matters. The negotiations between counsel were conducted before a mediator, well respected in the industry (Professor Eric Green), who ensured that the negotiations were conducted at arm's length. Given this, the judgment of the litigants and their counsel concerning the adequacy of the settlement should be considered.[12]

**B.    Consumer IPPs have had adequate opportunity to assess the merits of their claims, and JBS's defenses.**

The consumer IPPs especially, have had adequate opportunity to assess the merits of their claims. This group of plaintiffs first began their case investigation in January 2018 – six months before the first complaint was filed. Hagens Berman retained case investigators to interview witnesses, and economists to examine publicly available data to assist in building a complaint against the Pork industry. Attorneys reviewed public statements by the defendants, press releases, transcripts of investor calls, and filings with the Security and Exchange Commission to determine whether public signaling across the defendants had occurred. As counsel for the consumer IPP class in the *In re Broilers Chicken Antitrust Litigation*, Hagens Berman was aware of the role that Agri Stats played in that industry.

---

08-MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .'") (citation omitted).

[12] *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

While the motions to dismiss were pending, plaintiffs brought a motion to compel the production of documents produced by Agri Stats to the DOJ. Magistrate Bowbeer granted this motion, resulting in the production of approximately 65,000 documents by Agri Stats. These documents were eventually incorporated into the second amended complaint – the complaint upheld by this Court in its second motion to dismiss order. Scarlett Decl., ¶ 6.

Access to these documents, plus the additional 20,000 documents produced by other defendants and industry participants, have given the consumer IPPs sufficient information to understand the strength and weaknesses of their claims and JBS's defenses. The settlement should therefore be accorded a presumption of fairness.

**C.    The settlement provides significant relief to the settlement class.**

The settlement provides "adequate" relief for the class, in accordance with Fed. R. Civ. P. 23(e)(2)(C). Although the defendants have not yet produced their data to plaintiffs, based on publicly available information, consumer IPPs estimate that the JBS defendants have approximately 20 percent of the market share for consumer IPP class products. *See* Scarlett Decl., ¶ 7. The $20 million settlement represents $1 million for each point of market share – putting the value of this case well over $100 million at this stage in the litigation. This is an outstanding result. In addition to the financial compensation, the cooperation that consumer IPPs have secured from the settlement will bolster consumer IPPs' claims against the seven non-settling defendants.

The proposed settlement also "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Funds will be awarded based on the purchase of

qualifying class products purchased. Although consumer IPPs are not requesting

distribution of funds at this time, they will propose that class members be allowed to

submit claims through a simplified online claims process. The funds will then be

distributed through an electronic method, pro rata, to each class member based on

qualifying purchases. For efficiency's sake, however, consumer IPPs propose that this

plan of distribution and the distribution itself wait until later in the litigation when more

settlement monies are available.

## V.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

At the preliminary approval stage, the Court must also determine whether to

certify the proposed Settlement Class for settlement purposes under Rule 23.[13]

Certification of a settlement class must satisfy each requirement set forth in Rule 23(a),

as well as at least one of the separate provisions of Rule 23(b).[14]

The settlement proposes the same Settlement Class, which is consistent with the

one alleged in the Consumer Indirect Purchaser Plaintiffs' Second Amended

Consolidated Class Action Complaint, November 6, 2019, ECF Nos. 392 (sealed), 393

(redacted), defined as:

> [A]ll persons and entities who purchased pork indirectly from
> any of the Defendants or any co-conspirator, or their respective
> subsidiaries or affiliates, for personal use in the United States
> from at least as early as January 1, 2009 until the date of the

---

[13] *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

[14] *Id.* at 613-14; *see also In re Monosodium Glutamate Antitrust Litig.*, 205 F.R.D. 229, 231 (D. Minn. 2001) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

order granting Preliminary Approval of the Settlement Agreement. Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and members of his/her immediate family and judicial staff, and any juror assigned to this action.

As explained below, this Settlement Class satisfies all the requirements of Rule 23.

## A.   The Proposed Settlement Class Satisfies Rule 23(a)

### 1.   Numerosity

The numerosity requirement of Rule 23(a)(1) is satisfied where joiner of all putative class members is "impracticable." Generally, a class of forty or more plaintiffs is sufficient to satisfy the numerosity requirement.[15] Certainly here, where the proposed class spans over a decade, and the product (pork) is nearly ubiquitous in American households, the low threshold of numerosity is satisfied.

### 2.   Commonality

There are also "questions of law or fact common to the [consumer IPP] class." Fed. R. Civ. P. 23(a)(2). Commonality exists where plaintiffs' claims depend on a "common contention . . . of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*,

---

[15] *Richter v. Bowen*, 669 F. Supp. 275, 281 n.4 (N.D. Iowa 1987) (citing 3B J. Moore, Moore's Fed. Procedure 23.05[1]).

564 U.S. 338, 350 (2011). Consumer IPPs are relying on several common contentions, including: (1) defendants conspired to decrease pork output and increase pork prices; and (2) defendants' conduct caused overcharges for pork consumers.

### 3.    Typicality

Under Rule 23(a), typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). Typicality is closely related to commonality and "a finding of one generally compels a finding of the other."[16] Typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff."[17] "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory."[18]

Here, typicality is satisfied because consumer IPPs' claims are based on the same antitrust conspiracy. Each class member has suffered the same harm through the purchase of pork in grocery stores that was subject to an overcharge. No individual class member could have known of the conspiracy – the Agri Stats reports themselves are highly secretive, provided only to industry participants and never released to the public. Each individual class representative has the same interests in pursuing these claims on behalf of the absent class. Their claims are typical.

---

[16] *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 349 (S.D. Iowa 2016).

[17] *DeBoer*, 64 F.3d at 1174.

[18] *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

- 12 -

4.      **Adequacy**

The proposed plaintiffs are adequate representatives of the proposed class. Fed. R.

Civ. P. 23(a)(4). The focus here is whether "(1) the class representatives have common

interests with the members of the class, and (2) whether the class representatives will

vigorously prosecute the interests of the class through qualified counsel."[19]

Here, the named plaintiffs have no material conflict with other class members.

Each purchased pork from grocery stores, unaware of the existence of the defendants'

alleged agreement to fix, raise, maintain, and stabilize pork prices, and suppress pork

output. No one individual class member could avoid the claimed overcharges. Each

named plaintiff is aligned with the class in establishing the defendants' liability and

maximizing class-wide damages.

Interim co-lead class counsel is also adequate. As the Court has already

recognized in appointing Hagens Berman and Gustafson Gluek, each of these firms and

their attorneys are qualified and experienced in representing antitrust plaintiffs. Interim

co-lead counsel have represented victims of antitrust conspiracies across the country, and

will continue to vigorously represent the class here.

The named plaintiffs have fulfilled their duties as class representatives by actively

participating in the litigation. Each representative has approved the terms of this

settlement, and remains apprised of the status of the case. Scarlett Decl., ¶ 8.

---

[19] *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

**B.**     **The Proposed Settlement Class Satisfies Rule 23(b)(3)**

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

First, common questions of law or fact predominate over individual questions. "Slight variation in actual damages does not defeat predominance if there are common legal questions and common facts."[20] Here, a series of common questions lies at the heart of all plaintiffs' claims, including: whether the defendants conspired to lower pork output and raise prices; whether the defendants' information exchange was anticompetitive; whether the defendants' conspiracy caused market-wide supracompetitive pork prices; and whether higher pork prices were passed on to pork consumers.

Second, a class action is the superior mechanism for trying plaintiffs' claims. Rule 23 instructs that the matters pertinent to this inquiry include: (a) class members' interests in individually controlling the prosecution of separate actions; (b) whether other litigation exists concerning this controversy; (c) the desirability of concentrating the litigation in this forum; and (d) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). In this case, the first three factors weigh heavily in favor of class certification: class members have little economic incentive to sue individually based on the amount of potential recovery involved, and no other known litigation exists regarding these claims.

---

[20] *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020).

- 14 -

At the same time, there are no difficulties in managing this case as a class action. Litigating the claims of the class members from different states in this Court does not present manageability concerns because all class members purchased pork in states that have an antitrust or consumer statute that can be used to seek recovery for price-fixing conspiracies, ensuring that the core questions of liability will be proved with common evidence.

Finally, the proposed Settlement Class is ascertainable. Here, a class member may self-identify simply by reviewing the class definition. Moreover, as explained in the next section, consumer IPPs can use grocery store data as an additional mechanism to help identify class members. *See id.*

## VI.   CONSUMER IPPS PROPOSE TO SEND NOTICE AFTER THEY HAVE COLLECTED DIRECT CONTACT INFORMATION FOR CLASS MEMBERS

After a court preliminarily approves a settlement under Rule 23, class members must be notified of the settlement. *See* Fed. R. Civ. P. 23(3)(1)(B). The notice must be "the best notice that is practicable under the circumstances" and describe the contours of the litigation and proposed class in reasonably understandable language. The notice:

> [M]ust clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

- 15 -

Under the rules, "the notice need only satisfy the "broad 'reasonableness' standards imposed by due process."[21] "[I]ndividual notice" must be given to all class members "who can be identified through reasonable effort," and may be given by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Other class members may be notified by publication.

Here, consumer IPPs propose to pursue contact information for class members through subpoenas to grocery stores for contact information for shoppers. JBS and consumer IPPs agreed to allow three months for this process. Scarlett Decl., Ex. A at ¶ 6(c).

Many of the major grocery stores retain consumers' purchase histories and contact information, including customers' email addresses. Consumer IPPs have already issued subpoenas for the production of this information, and will prioritize acquiring it from third party grocery stores. Scarlett Decl., ¶ 9. Having this direct contact information – such as emails – will allow direct notice to known class members, and ensure that they are notified of their claims. Subject to the Court's preliminary approval of the settlement, consumer IPPs will file a motion to direct notice with the Court within 60 days.

## VII.   CONCLUSION

For these reasons, Interim Lead Counsel respectfully requests that the Court preliminary approve the settlement agreements with JBS, and preliminarily certify the Settlement Class. Consumer IPPs propose that they will file a motion to direct notice to

---

[21] *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (citation and quotation omitted).

the class within 60 days, which would include a plan of notice and the proposed notices themselves.

DATED: March 26, 2021                    Respectfully submitted,

                                         HAGENS BERMAN SOBOL SHAPIRO LLP

                                         By:    /s/ Shana E. Scarlett
                                                 SHANA E. SCARLETT
                                         Rio Pierce
                                         715 Hearst Avenue, Suite 202
                                         Berkeley, California 94710
                                         Telephone: (510) 725-3000
                                         Facsimile: (510) 725-3001
                                         shanas@hbsslaw.com
                                         riop@hbsslaw.om

                                         Steve W. Berman
                                         Breanna Van Engelen
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1301 Second Avenue, Suite 2000
                                         Seattle, Washington 98101
                                         Telephone: (206) 623-7292
                                         Facsimile: (206) 623-0594
                                         steve@hbsslaw.com
                                         breannav@hbsslaw.com

                                         Daniel E. Gustafson (#202241)
                                         Daniel C. Hedlund (#258337)
                                         Michelle J. Looby (#388166)
                                         Joshua J. Rissman (#391500)
                                         GUSTAFSON GLUEK PLLC
                                         120 South 6th Street, Suite 2600
                                         Minneapolis, MN 55402
                                         Telephone: (612) 333-8844
                                         Facsimile: (612) 339-6622
                                         dgustafson@gustafsongluek.com
                                         dhedlund@gustafsongluek.com
                                         mlooby@gustafsongluek.com
                                         jrissman@gustafsongluek.com

                                         *Counsel for Consumer Indirect Purchaser*

010737-11 1449936V1

*Plaintiffs*

010737-11 1449936V1