# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Case No. 0:18-cv-01776-JRT-HB |
| This Document Relates To: | |
| ALL CONSUMER INDIRECT PURCHASER ACTIONS | |

## LONG-FORM SETTLEMENT AGREEMENT BETWEEN
## CONSUMER INDIRECT PURCHASER CLASS PLAINTIFFS AND JBS

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 12th day of March, 2021 ("Execution Date") by and between the Indirect Purchaser Plaintiffs ("IPPs"),[1] through Interim Co-Lead Counsel (as hereinafter defined) for the proposed Settlement Class (as hereinafter defined), and JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company, and all of their predecessors; successors; assigns; affiliates; and any and all past, present, and future parents, owners, subsidiaries, divisions, departments (collectively referred to as "Settling Defendant" or "JBS") in the above-captioned action (the "Actions"). IPPs, on behalf of the Settlement Class, and JBS are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, IPPs on behalf of themselves and as representatives of the putative class of similarly situated persons or entities allege in the Actions, among other things, that JBS participated in a conspiracy — with other Defendants in this litigation and unnamed co-

---

[1] As used herein, "IPPs" means Borhan Ishani Afoosi, Michael Anderson, Rebekah Kingsley, Sandra Steffen, Michael Pickett, Lisa Axelrod, David Look, Joseph Realdine, Ryan Kutil, Kory Bird, Barbara Brueggemann, Duncan Birch, Paul Glantz, Jordan Chambers, Robert Eccles, Jennifer Sullivan, Anbessa Tufa, Susan McCullough, Kenneth King, Craig Thomsen, Alika Naehu, Wanda Duryea, Michael Reilly, Edwin Blakey, Jeffrey Allison, Kenneth Neal, Chad Nodland, Chris Deery, Laura Wheeler, Christina Hall, Chase Hoke, Donya Collins, Thomas Cosgrove, Rebecca Green Watson, and Charles Dye.

conspirators — "from at least 2009 to the present to fix, raise, maintain, and  stabilize pork prices." (Consumer Indirect Purchaser Plaintiffs' Second Amended Consolidated Class Action Complaint, Dkt No. 392/393, ¶ 6) ;

WHEREAS, Interim Co-Lead Counsel have been appointed by the Court to represent, on an interim basis, the putative class of indirect purchasers of Pork (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against JBS in any way arising out of or relating in any way to the indirect purchase of Pork (as hereinafter defined) produced, processed or sold by JBS or any of the Defendants or their co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations, including mediation with a nationally recognized and highly experienced mediator, on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the Settlement;

WHEREAS, IPPs have concluded, after preliminary investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of IPPs to enter into this Settlement Agreement with JBS to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of IPPs and the Settlement Class;

WHEREAS, JBS wishes to avoid the costs, expenses, and uncertainties of this complex litigation;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the

claims of the IPPs and the Settlement Class be settled and compromised, and dismissed on the merits with prejudice as to JBS subject to Court approval:

1. <u>General Definitions</u>.  The terms below and elsewhere in this Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

  a. "JBS Released Parties" means JBS and JBS' former, current and future parents, subsidiaries and affiliates, and any of the respective former, current and future, direct or indirect trustees, directors, officers, shareholders, managers, members, attorneys, equity holders, agents, insurers and employees of JBS.  Notwithstanding the foregoing, "JBS Released Parties" does not include any Defendant other than JBS named by IPPs in the Actions, either explicitly or as a third-party beneficiary.

  b. "Actions" means the putative class actions filed by IPPs in the above-captioned proceeding.

  c. "Complaint" means the Consumer Indirect Purchaser Plaintiffs' Second Amended Consolidated Class Action Complaint, Dkt No. 392/393.

  d. "Court" means the United States District Court for the District of Minnesota.

  e. "Defendants" means JBS USA Food Company, JBS USA Food Company Holdings, Clemens Food Group, LLC, The Clemens Family Corporation, Hormel Foods Corporation, Seaboard Foods LLC, Smithfield Foods, Inc., Triumph Foods, LLC, Tyson Foods, Inc. Tyson Prepared Foods, Inc., Tyson Fresh Meats, Inc., and Agri Stats, Inc.

f.      "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by JBS for the benefit of the Settlement Class.

g.      "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and IPPs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

h.      "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses JBS with prejudice from the Actions.

i.      "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) final approval of the Settlement Agreement by the Court ("Final Approval"); and (b) either (1) thirty days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

j.      "Interim Co-Lead Counsel" means Hagens Berman Sobol Shapiro LLP and Gustafson Gluek PLLC as appointed by the Court on an interim basis to represent the putative class of indirect purchasers of Pork.

4

k.    "Indirect Purchaser States" means Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Carolina, Tennessee, Utah, Virginia, and West Virginia.

l.    "Person" means without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business.

m.    "Pork" means porcine or swine products processed, produced or sold by JBS, or by any of the Defendants or their co-conspirators, including but not limited to: primals (including but not limited to loins, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chef's prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including, but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products).

n.    "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

o.    "Released Claims" shall have the meaning set forth in Paragraph 14 of this Agreement.

p.   "Releasing Party" or "Releasing Parties" shall refer individually and collectively, to the Settlement Class and all members of the Settlement Class, including the IPPs, each on behalf of themselves and their respective predecessors and successors; their current and former, direct and indirect parents, subsidiaries and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common ownership or control with, in whole or in part, any of the Releasing Parties.

q.   "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

r.   "Settlement Class" means the class defined in Paragraph 5 below.

s.    "Settlement Class Period" means January 1, 2009 until the date of the order granting Preliminary Approval of the Settlement Class.

t.    "Settlement Fund" means $20,000,000 (twenty million U.S. dollars), the amount JBS shall pay or cause to be paid into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below.

2.    The Parties' Efforts to Effectuate this Settlement Agreement. The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.    Litigation Standstill. IPPs through Interim Co-Lead Counsel shall cease all litigation activities against JBS related to the pursuit of claims against JBS in the Actions. None of the foregoing provisions shall be construed to prohibit IPPs from seeking appropriate discovery from non-settling Defendants or Co-Conspirators or any other person other than Settling Defendant.

4.    Motion for Preliminary Approval. No later than fourteen (14) days after the Execution Date, IPPs will move the Court for Preliminary Approval of this Settlement. JBS shall take no position with respect to appointment of Interim Co-Lead Counsel as counsel for the Settlement Class for purposes of this Settlement Agreement and certification in the Action of a class for settlement purposes only. Within a reasonable time in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Interim Co-Lead Counsel to JBS for its review. To the extent that JBS objects to any aspect of the motion, they shall communicate such objection to Interim Co-Lead Counsel and the Parties shall meet and

confer to resolve any such objection. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class.

5. <u>Certification of a Settlement Class</u>. As part of the motion for Preliminary Approval of this Settlement, IPPs shall seek, and JBS shall take no position with respect to, appointment of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement and certification in the Action of the following "Settlement Class" for settlement purposes only:

> All persons and entities who indirectly purchased Pork from any of the Defendants or any co-conspirator, or their respective subsidiaries or affiliates, for personal use in the United States from at least as early as January 1, 2009 until the date of the order granting Preliminary Approval of the Settlement Agreement. Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

6. <u>Settlement Class Notices</u>. After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

> a. To the extent reasonably practicable, individual notice of this settlement shall be mailed, emailed, or otherwise sent and/or published by the Settlement Administrator, at the direction of Interim Co-Lead Counsel, to potential members of the Settlement Class, in conformance with a notice plan to be approved by the Court.

> b. Neither the Settlement Class, Interim Co-Lead Counsel, nor JBS shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the settlement. Such fees, costs,

8

or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval. JBS shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $500,000 to pay the costs for notice and for Preliminary Approval and Final Approval of this Settlement Agreement.

c.      Interim Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class within three (3) months of Preliminary Approval by the Court of the Settlement Agreement. Any costs of notice that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund, either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court.

7.      Motion for Final Approval and Entry of Final Judgment. If the Court grants Preliminary Approval and certifies the Settlement Class, then IPPs, through Interim Co-Lead Counsel — in accordance with the schedule set forth in the Court's Preliminary Approval — shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to JBS for their review. To the extent that JBS objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.      Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal

9

Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement;

b. Determining that the Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c. Dismissing the Actions with prejudice as to JBS in all class action complaints asserted by IPPs or the Settlement Class;

d. Discharging and releasing JBS Released Parties from all Released Claims;

e. Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

f. Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to JBS shall be final and appealable and entered forthwith.

The Parties shall take all reasonable steps to obtain Final Approval of the Settlement Agreement.

8.      Escrow Account. The Escrow Account shall be administered by Interim Co-Lead Counsel for the IPPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9.      Settlement Consideration. In consideration for the release of Released Claims and the dismissal of the Actions, within fourteen (14) business days of the Court's grant of Preliminary Approval, JBS shall pay or cause to be paid the Settlement Fund of $20,000,000 (twenty million dollars) into the Escrow Account.

10.     Cooperation. Cooperation by JBS is a material term of this Settlement Agreement and shall include the following categories of cooperation:

    a.     To the extent that JBS responds to discovery, produces documents, or provides proffers or other cooperation to other plaintiffs in the *In re: Pork Antitrust Litigation* it will serve or otherwise provide IPPs a copy of such materials reasonably soon after such production to any other plaintiff.

    b.     JBS agrees to use reasonable efforts to respond to a reasonable number of IPPs' questions regarding and otherwise assist IPPs to understand structured data produced by JBS in this matter (if any).

    c.     JBS agrees to use reasonable efforts to authenticate documents and/or things produced by JBS in the Action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations, affidavits, depositions, hearings and/or trials as may be necessary for the Action..

11.     Qualified Settlement Fund. The Parties agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 11, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  All

provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1. Interim Co-Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. JBS shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.     Distribution of Settlement Fund to Settlement Class. Members of the Settlement Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction against the JBS Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from the JBS Released Parties. Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. IPPs, members of the Settlement Class, and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. JBS and the other JBS Released Parties shall not be liable for any costs, fees, or expenses of any of IPPs' and  Interim Co-Lead Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13.     Fee Awards, Costs and Expenses, and Incentive Payments to IPPs: Subject to Interim Co-Lead Counsel's sole discretion as to timing, Interim Co-Lead Counsel will apply to the Court for a fee award, plus expenses, and costs incurred, and service awards to the IPPs to be paid

from the proceeds of the Settlement Fund. JBS shall have no responsibility, financial obligation, or liability for any such fees, costs, or expenses. Within 15 days after any order by the Court awarding attorneys' fees, expenses, class representative service awards or expenses, the Escrow Agent shall pay the approved attorneys' fees, costs, and service award via wire transfer from the Settlement Fund as directed by Settlement Class Counsel in accordance with and attaching the Court's order. In the event the Settlement does not become Final or the amount of attorneys' fees, costs, or service award is reversed or modified, within 30 days of the order from a court of appropriate jurisdiction, Settlement Class Counsel will cause the difference in the amount paid and the amount awarded to be returned to the Settlement Fund.

14.    Release.  Upon Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the JBS Released Parties from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, that exist as of the date of the order granting Preliminary Approval, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the indirect purchase of Pork produced, processed or sold by JBS or any of the Defendants or their co-conspirators, and purchased indirectly by the Releasing Parties (the "Released Claims").  Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant or co-

conspirator other than the JBS Released Parties; (ii) any claims wholly unrelated to the allegations in the Actions that are based on breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim; or (iii) damages claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State. This reservation of claims set forth in (i), (ii) and (iii) of this paragraph does not impair or diminish the right of the JBS Released Parties to assert any and all defenses to such claims. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any Released Claims against the JBS Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the JBS Released Parties arising out of or relating to the Released Claims.

15.     Further Release.  In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing

Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

16.   Non-Disparagement: The Parties agree they will not disparage this Action or one another, such as by making public statements to the media that disparage either of the parties or their conduct in connection with this Action.

17.   This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

18.   This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

19.   Option to Terminate. Interim Co-Lead Counsel shall provide a list of those Persons, if any, who have filed a request to opt out of any of the Settlement Classes (the "Opt Outs") to counsel for JBS within twenty (20) days of the deadline set by the Court for opting out of the Settlement Classes. In the event that a minimum of 500,000 of potential members of the Settlement Class timely and validly exclude themselves from the Settlement Class pursuant to the procedures approved by the Court, JBS shall, in its sole discretion, have the authority to rescind this Settlement Agreement in its entirety by providing written notice of their election to do so (the "Opt-Out Termination Notice"). JBS shall provide the Opt-Out Termination Notice within fifteen (15)

calendar days of the date that the final list of potential Class Members who timely and validly opt out is provided to JBS. If JBS elects to terminate, then IPPs shall in no way whatsoever be prejudiced in resuming full discovery and adjudication of the Action as it stood as of the Execution Date and JBS shall be prohibited from arguing to IPPs or the Court that its agreements with other plaintiffs or parties in any way limit IPPs' ability to do so.

20.     Effect of Disapproval and Rescission.  If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1(i) of this Settlement Agreement, or if this Settlement Agreement is terminated pursuant to Paragraph 19 or 20, then this Agreement may be cancelled and terminated:

        a.     solely by JBS with respect to Paragraph 19, or

        b.     otherwise by JBS or IPPs on behalf of the Settlement Class.

If cancelled and terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(c), in the event the settlement is not preliminarily or finally approved by the Court, all other funds in the Escrow Account shall be returned to JBS and the Parties' position shall be returned to the status quo ante.

21.     Choice of Law and Dispute Resolution.  Any disputes relating to this Settlement Agreement shall be governed by Minnesota law without regard to conflicts of law provisions, and any and all disputes regarding this Settlement Agreement will be mediated with Eric Green.

22.     Consent to Jurisdiction.  The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraph 14 or 15, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraph 14 or 15 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement.  In the event that the provisions of Paragraph 14 or 15 are asserted by any JBS Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such JBS Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions.  Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court.  Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Agreement.

23.     Class Action Fairness Act.  Within ten (10) days of filing of this Settlement Agreement in court with the abovementioned motion for preliminary approval, JBS, at its sole expense, shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and shall confirm to IPPs' Interim Co-Lead Counsel that such notices have been sent.

24.     Costs Relating to Administration.   The JBS Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

25.     Binding Effect.   This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class, the Releasing Parties, and the JBS Released Parties.  Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the IPPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

26.     Sole Remedy.   This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any JBS Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any JBS Released Party.

27.     Counsel's Express Authority.   Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

28.     It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

29.     Notices.   All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return

receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in

the case of either (a), (b) or (c) shall be addressed:

If directed to IPPs, the Settlement Class, or any member of the Settlement Class, to:

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710

Daniel E. Gustafson
Daniel C. Hedlund
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 55402

If directed to the JBS, to:

Stephen R. Neuwirth
Sami H. Rashid
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

or such other address as the Parties may designate, from time to time, by giving notice to all

parties hereto in the manner described in this Paragraph.

30.    No Admission.   Whether or not Final Judgment is entered or this Settlement

Agreement is terminated, the Parties expressly agree that this Settlement Agreement and its

contents, and any and all statements, negotiations, documents, and discussions associated with it,

are not and shall not be deemed or construed to be an admission of liability by any Party or JBS

Released Party.

19

31.    No Third-Party Beneficiaries.  No provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a JBS Released Party, IPP, member of the Settlement Class, or Interim Co-Lead Counsel.

32.    No Party is the Drafter.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

33.    Amendment and Waiver.  This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.  The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.  This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement.  Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law.  Accordingly, in addition to any other remedies and damages available, the  Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

34.    Execution in Counterparts.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.  Facsimile or Electronic Mail signatures shall be considered as valid

20

signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

35.     Integrated Agreement.     This Settlement Agreement (including all Exhibits) comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

36.     Voluntary Settlement.     The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

37.     Confidentiality.     The Parties agree to continue to maintain the confidentiality of all settlement discussions, and materials exchanged during the settlement negotiation. However, JBS can inform other Defendants that it is has reached a settlement agreement with IPPs. In addition, the existence and terms of this Settlement Agreement and the settlement contemplated herein shall be kept confidential, except (a) for purposes of obtaining Preliminary Approval and Final Approval by the Court, which is expected to include public filing of this Settlement Agreement; (b) for purposes of providing notice to members of the Settlement Class; (c) as otherwise required by law (including any applicable court order) or regulation or administrative guidance, request, ruling or proceeding or stock exchange rule and as necessary to prepare tax, securities, and other required documents and disclosure; or (d) to enforce this Settlement Agreement. Notwithstanding anything

in this paragraph, the terms of cooperation by JBS are to be kept confidential except as provided in Paragraph 10 of this Agreement.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized
representatives, enter into this Settlement Agreement on the date first above written.

Dated: 3/12/21

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Dated: 3-12-21

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Joshua J. Rissman (#391500)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

*Interim Co-Lead Counsel for the Consumer
Indirect Purchaser Class*

23

Dated: <u>March 12, 2021</u>

Stephen R. Neuwirth
Sami H. Rashid
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com

*Counsel for JBS USA Food Company*