# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTION | Case No. 18-cv-1776 (JRT/HB)<br><br>**Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement Between the Commercial and Institutional Indirect Purchaser Plaintiffs and Defendant JBS** |

## Table of Contents

Page

I. Introduction ........................................................................................................... 1

II. Background and Basic Settlement Terms ........................................................... 1

III. Preliminary Approval of the Settlement Should be Granted .............................. 5

    A. The Proposed Settlement Is the Result of Arm's-Length Negotiations ............. 6

    B. The Settlement Provides Significant Relief to the Settlement Class and Should be Preliminarily Approved by the Court ....................................... 7

IV. The Court Should Certify the Proposed Settlement Class ................................. 8

    A. The Proposed Settlement Class Satisfies the Requirements of Rule 23(a) ......... 9

        1. Numerosity ................................................................................. 9

        2. Commonality .............................................................................. 9

        3. Typicality .................................................................................. 10

        4. Adequacy of Representation ................................................... 10

    B. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3) ............................................................................................... 11

V. The Court Should Allow CIIPPs to Provide a Proposed Notice Plan Later ............... 13

VI. Conclusion ........................................................................................................ 14

i

# Table of Authorities

**Cases**

*Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525 (8th Cir. 1996) ......................................................... 10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 8, 11, 13

*Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.,* 446 F.2d 763 (8th Cir. 1971) ........... 9

*Blades v. Monsanto Co.*, 430 F.3d 562 (8th Cir. 2005) ....................................................................... 9

*Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251 (Minn. 2000) ......................... 11

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...................................................................................... 13

*Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595 (8th Cir. 2020) ............... 12

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ......................................................... 9, 10

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ........................................................ 7

*In re Hartford Sales Practices Litig.*, 192 F.R.D. 592 (D. Minn. 1999) ............................................... 9

*In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995) ........................................................ 11

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ................................ 6

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) .......... 14

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ........ 7, 13

*Jones v. Flowers*, 547 U.S. 220 (2006) ............................................................................................... 14

*Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569 (D. Minn. 1995) ................................ 9

*Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013) ......................................................... 5, 6, 7

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .................................................. 13

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) ............................................................. 10

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ............................................................... 13

*Sandusky Wellness Ctr., LLC v. Medtox Sci, inc.*, 821 F.3d 992 (8th Cir. 2016) ............................. 12

*Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921 (8th Cir. 2015) .................................................. 8

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ........................................................................... 5

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) ................................................. 6

**Statutes & Rules**

28 U.S.C. § 1715 ............................................................................................................................. 5

Fed. R. Civ. P. 23 ................................................................................................................... *passim*

**Other Authorities**

Class Actions Fairness Act of 2005, 28 U.S.C. § 1715 .................................................................. 5

Manual for Complex Litigation (Third) (1995) ............................................................................. 6

4 Newberg on Class Actions (4th ed. 2002) ..................................................................... 6, 7, 12

## I.     Introduction

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs")[1] seek the Court's preliminary approval of the settlement of their claims against the JBS defendants (JBS USA Food Company; JBS USA Food Company Holdings; and Swift Pork Company). The proposed settlement arose from arm's length negotiations and provides the CIIPPs an "ice-breaker" settlement in this litigation. JBS will pay $12,750,000.00 ($12.75 million) and will provide non-monetary relief through material cooperation to CIIPPs. Such cooperation is valuable and will assist the CIIPPs' claims against non-settling defendants.

The Court should grant preliminary approval of the proposed settlement because it falls well within the range of possible approval. The Court should certify the proposed Settlement Class for settlement purposes. In a separate motion, CIIPPs will ask the Court to approve a proposed plan for disseminating notice to the Settlement Class and to schedule a Final Fairness Hearing for the proposed settlement.

## II.    Background and Settlement Terms.

This case represents the consolidation of separately filed putative class actions alleging that Defendants[2] engaged in a price-fixing conspiracy to artificially constrict the supply of pork

---

[1]     The CIIPP representative plaintiffs are: Sandee's Bakery; Confetti's; Francis T. Enterprises d/b/a Erbert & Gerbert's; Joe Lopez, d/b/a Joe's Steak and Leaf; Longhorn's Steakhouse; Betty's Eat Shop; Ziggy's BBQ Smokehouse & Ice Cream Parlor, LLC; The Grady Corporation; and Mcmjoynt LLC d/b/a The Breakfast Joynt.

[2]     Defendants in this action include Agri Stats, Inc.; Clemens Food Group, LLC and The Clemens Family Corporation; Hormel Foods Corporation and Hormel Foods, LLC; Indiana Packers Corporation; JBS USA Food Company; Seaboard Foods LLC and Seaboard Corporation; Smithfield Foods, Inc.; Triumph Foods, LLC; and Tyson Foods, Inc., Tyson

1

products in the domestic market of the United States. The CIIPPs allege that Defendants conspired to constrain the supply, and fix the price, of pork[3] from at least 2009 through the commencement of the present action. *See* CIIPP Third Consolidated and Amended Complaint (Dkt. 432). The CIIPPs allege that Defendants, through their co-conspirator, Agri Stats, exchanged detailed, competitively sensitive, and closely guarded non-public information about price, capacity, sales volume, and demand. (*Id.* ¶ 2). Agri Stats provided highly sensitive "benchmarking" reports to most pork integrators, thereby allowing competitors to compare their profits or performance against that of other companies. (*Id.* ¶ 3). The effect of this anti-competitive exchange of non-public information allow pork integrators to control the supply and price of pork. (*Id.*) The named CIIPPs Plaintiffs and class members paid artificially inflated prices for pork during the Class Period. (*Id.* ¶ 7).

On October 15, 2018, the Court appointed the undersigned as Interim Co-Lead Class Counsel for the CIIPPs. (Dkt. 150). The Court granted Defendants' initial motions to dismiss

---

Fresh Meats, Inc. and Tyson Prepared Foods, Inc.

[3]    For this settlement, "Pork" means porcine or swine products processed, produced or sold by JBS, or by any of the Defendants or their co-conspirators, including but not limited to: primals (including but not limited to loins, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chef's prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including, but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products), offal or variety products (including, but not limited to hearts, tongues, livers, head products, spleens, kidneys, feet, stomach, bladder, uterus, snoot, ears, tail, brisket bone, intestines, jowls neck bones or other bones, skin, lungs, glands, hair, or pet food ingredients), rendered product and byproducts (including, but not limited to, lard, grease, meat meal, bone meal, blood meal, or blood plasma), casings (including, but not limited to, mucosa), and carcasses. (*See* Settlement Agreement ¶ 1m, attached as Ex. A to the Declaration of Shawn M. Raiter).

2

Plaintiffs' complaints, with leave to amend, in August 2019. (Dkt. 360.) On October 16, 2020, the Court denied Defendants' motions to dismiss the CIIPPs Third Consolidated Amended Complaint, except as to certain state-law claims. (Dkts. 519, 520).

Unlike some civil-antitrust actions, these cases were brought before a formal antitrust investigation by the United States Department of Justice was disclosed and without the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. Since filing their first complaint, the CIIPPs have continued their investigation and development of their case. During ongoing discovery, Interim Co-Lead Class Counsel negotiated the proposed settlement with JBS.

This first CIIPP settlement came after substantial adversarial litigation with Defendants in this MDL and after years of investigation. CIIPPs' counsel was well-informed and the Settlement Agreement with JBS arose from arm's length and good-faith negotiations. The parties participated in fact-gathering sessions, informational meetings, and several mediation sessions with a nationally recognized mediator.

**Settlement Class**: The Settlement Agreement defines the Settlement Class in this action as:

> All entities who indirectly purchased Pork from Defendants or co-conspirators or their respective subsidiaries or affiliates in the United States during the Settlement Class Period for their own business use in commercial food preparation.
>
> Specifically excluded from the Settlement Class are Defendants; the officers, directors or employees of any Defendant; the parent companies of any Defendant; the subsidiaries of any Defendant and any entity in which Defendant has a controlling interest; purchasers of Pork that purchased Pork directly from any Defendant, including those that directly purchased Pork for resale in an unmodified and untransformed form; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the

3

Settlement Class are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action.

(Ex. A, ¶ 5).

**Settlement Amount**: JBS will pay $12,750,000.00 (twelve million seven hundred and fifty thousand U.S. dollars) to the CIIPP Settlement Class. From the Settlement Amount, up to $500,000.00 may be used for reasonable costs of disseminating notice of the Settlement Agreement, including the cost of administration. (Ex. A, ¶¶ 6b, 9). Attorneys' fees, service awards, or other costs allowed by the Court will also come from the Settlement Amount. (*Id.*, ¶ 12).

**Cooperation**: Cooperation by JBS is a material term of the Settlement Agreement. The terms of the cooperation are outlined in a confidential letter agreement available upon request by the Court for *in camera* review in connection with approval of the Settlement. (Ex. A, ¶ 10).

**Released Claims**: In consideration for the $12,750,000.00 payment and cooperation, the CIIPPs agree to release the JBS Released Parties from:

> any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now has, or hereafter can, shall, or may ever have, that exist as of the date of the order granting Preliminary Approval, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the indirect purchase of Pork produced, processed or sold by JBS or any of the Defendants or their co-conspirators, and purchased indirectly by the Releasing Parties (the "Released Claims").

(Ex. A, ¶ 14). The Released Claims, however, do not include:

4

(i) claims asserted against any Defendant or coconspirator other than the JBS Released Parties; (ii) any claims made by direct purchasers of Pork as to such direct purchases; (iii) any claims made by consumers that are indirect purchasers of Pork for their personal use; (iv) any claims made by any state, state agency, or instrumentality or political subdivision of a state as to government purchases of Pork; (v) claims wholly unrelated to the allegations in the Action involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim relating to Pork; (vi) claims concerning any product other than Pork; (vii) claims under laws other than those of the United States relating to purchases of Pork made outside of the United States; and (viii) damage claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State.

(*Id.*, ¶ 14).

**Provisional Opt-Out Reduction**: The terms of the Settlement Agreement provide JBS the right to a reduction of the Settlement Amount if potential members of the Settlement Class representing more than a specified portion of relevant transactions—as set forth in a confidential letter which is provided to the Court through a filing under seal—opt out of the Settlement Class. (Ex. A, ¶ 19; Ex. B).

The Settlement Agreement also requires JBS—within ten days of filing the Agreement with the Court in connection with the motion for preliminary approval—to submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Actions Fairness Act of 2005, 28 U.S.C. § 1715. (Ex. A, ¶ 23).

### III.  Preliminary Approval Should be Granted.

The Court must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A district court has broad discretion in evaluating a class action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606–07 (8th Cir. 1988). Review of a proposed class-action settlement typically proceeds in two stages. *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). At the preliminary approval stage, the court determines

5

whether the settlement is within the range of possible approval and whether class members should be notified of the terms of the proposed settlement.[4] *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993). The purpose of a court's preliminary evaluation of proposed settlements is simply to determine whether it is within the range of reasonableness, and thus, whether notice to the Class of the terms and conditions of the settlement, and scheduling a formal fairness hearing, are worthwhile. 4 Newberg on Class Actions § 11.26.

A proposed settlement agreement should be preliminary approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." Manual for Complex Litigation (Third) § 30.41 at 237 (1995). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White*, 822 F. Supp. 2d at 1416. The proposed settlement between the CIIPPs and JBS should be granted preliminary approval because the settlement is fair, reasonable, and adequate.

### A. The Proposed Settlement Agreement is the Result of Arm's Length Negotiations.

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."

---

[4] In making a final determination of settlement approval, the district court ultimately is required to consider four factors: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005). But, at the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383 (quotation omitted).

6

4 Newberg on Class Actions § 11.41 (4th ed. 2005) (collecting cases); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The preliminary determination establishes a presumption of fairness when a settlement "has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 08-MDL-1958 (ADM/AJB), 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). The court gives "great weight" to and may rely on the judgment of experienced counsel in its evaluation of a proposed settlement. *Id.*

At the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383 (quotation omitted). The Settlement is within the range of possible approval because there are no glaring substantive or procedural deficiencies. The Settlement Agreement is the product of arm's length negotiations, mediated by highly experienced and nationally renowned mediator Professor Eric Green of Resolutions, LLC. CIIPPs have developed and assessed their claims and defenses of JBS. The CIIPPs and JBS are represented by experienced counsel and the Settlement was reached after years of litigation.

### B. The Settlement Agreement Provides Significant Relief.

The Settlement Agreement provides significant relief to CIIPP class members, far greater than the threshold "adequate" relief required by Fed. R. Civ. P. 23(e)(2)(C). The Settlement Agreement requires JBS to pay $12,750,000.00 into the Settlement Fund within 14 days of the Court's preliminary approval. (Ex. A, ¶ 9). The Settlement Fund will be used to compensate the Settlement Class for damages suffered and expenses incurred, and potentially

7

for the benefit of pursuing claims against non-settling defendants. In addition to the monetary relief, the terms of the Settlement Agreement require JBS to provide material cooperation to CIIPPs for the benefit of pursuing claims against the non-settling defendants. The cooperation that CIIPPs have secured from the settlement will bolster CIIPPs' claims against the seven non-settling Defendants.

## IV.     The Court Should Provisionally Certify the Settlement Class.

At the preliminary stage, the Court must also determine whether to certify the proposed Settlement Class for settlement purposes under Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (describing Rule 23(a) requirements as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation). A settlement class may be certified if it satisfies each requirement set forth in Rule 23(a), and at least one of the separate provisions set forth in Rule 23(b). *Id.* at 613–14; *Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015).

> The CIIPPs seek certification of a Settlement Class defined as:
>
> All entities who indirectly purchased Pork from Defendants or co-conspirators or their respective subsidiaries or affiliates in the United States during the Settlement Class Period for their own business use in commercial food preparation.
>
> Specifically excluded from the Settlement Class are Defendants; the officers, directors or employees of any Defendant; the parent companies of any Defendant; the subsidiaries of any Defendant and any entity in which Defendant has a controlling interest; purchasers of Pork that purchased Pork directly from any Defendant, including those that directly purchased Pork for resale in an unmodified and untransformed form; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Settlement Class are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action.

8

(Ex. A, ¶ 5). The proposed Settlement Class meets the threshold requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

### A. The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).

#### 1. Numerosity

Rule 23(a)(1), Fed. R. Civ. P., requires that the class be "so numerous that joinder of all members is impracticable." CIIPPs estimate that there are hundreds of thousands of Settlement Class members. This easily satisfies the numerosity requirements. *See Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (approving class of twenty members); *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (approving class with as few as forty members).

#### 2. Commonality

Rule 23(a)(2), Fed. R. Civ. P., requires that there be "questions of law of fact common to the class." The threshold for commonality is low, requiring only that the legal question "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *see In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999) ("[T]he commonality requirement imposes a very light burden on Plaintiff seeking to certify a class and is easily satisfied."). For a class to be certified, plaintiffs need to demonstrate "that common issues prevail as to the existence of a conspiracy and the fact of injury." *Blades v. Monsanto Co.*, 430 F.3d 562, 566 (8th Cir. 2005).

Common questions prevail here about whether Defendants illegally conspired to fix the supply and price of Pork in the United States. Common questions also prevail as to

whether CIIPPs were injured because of Defendants' anti-competitive conduct. The Settlement Class satisfies the commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be typical of those of other class members. This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

The CIIPPs allege claims that arise out of the same alleged conduct of Defendants—whether they illegally conspired to fix the supply and price of Pork in the United States. The representative Plaintiffs of the CIIPP Settlement Class each allege that they paid artificially inflated prices for Pork, which exceeded the amount they would have paid if the price for Pork had been determined by a competitive market. (Dkt. 432, ¶ 7). Each individual class member has the same interests as the class representatives, suffered the same or similar harm, and must prove the same conspiracy. The typicality requirement is therefore satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The focus of Rule 23(a)(4) is "whether (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

The CIIPP class representatives have common interests with the members of the Settlement Class. They share interests in obtaining the best possible monetary recovery and securing cooperation against non-settling Defendants. The named representatives have and will vigorously pursue this matter through qualified counsel. Undersigned counsel have significant antitrust experience and have successfully led other antitrust MDL actions involving intermediate indirect purchasers. (*See* Mem. in Support of Motion to Appoint Counsel for Commercial and Indirect Purchaser Plaintiffs, Dkt. 114). The Court has recognized that the undersigned counsel will adequately represent the CIIPPs. (Order Appointing Co-Lead Counsel, Dkt. 150). Counsel thus far has vigorously prosecuted the interests of the CIIPPs throughout motion practice, discovery, and settlement negotiations.

### B. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b).

In addition to satisfying the requirements of Rule 23(a), plaintiffs seeking class certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). "The requirements of 'predominance of common issues' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251, 261 (Minn. 2000).

The Rule 23(b) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. This test is readily met in certain cases, including those alleging violations of antitrust laws. *Id.* at 625; *see also In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) ("As a rule of

11

thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."); 4 Newberg on Class Actions § 18.28 at 102 (4th ed. 2002) ("As a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions."). Slight variation in actual damages does not defeat predominance if there are common legal questions and common facts. *Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020).

Questions of law or fact common to the CIIPP Settlement Class predominate over any questions affecting only individual members. These questions, subject to common proof, include whether Defendants engaged in anticompetitive conduct and/or conspired to artificially lower Pork output and raise prices, and whether the CIIPPs paid artificially inflated prices for Pork during the class period. *See Sandusky Wellness Ctr., LLC v. Medtox Sci, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question."). Therefore, the CIIPP class satisfies the predominance requirement.

Plaintiffs seeking class certification must also show that a class action is superior to individual claims. Rule 23(b) provides four pertinent considerations: (A) the interest of the class members in individually controlling the prosecution or defense of separate actions; (B) whether other litigation concerning the controversy already exists; (C) the desirability of concentrating the litigation in the particular forum; and (D) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). But when a class is being certified for settlement, the Court "need not examine the Rule 23(b)(3)(A–D) manageability issues, because it will not be

managing a class action trial." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *5 (citing *Amchem Prods., Inc.*, 521 U.S. at 620).

Where class wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). A class action is the superior method to adjudicate this litigation because it promotes greater efficiency than individually litigating hundreds or thousands of class members' claims. The requirements of Rule 23(b) are satisfied in this case.

## V.     The Court Should Allow CIIPPs to Provide a Proposed Notice Plan Later.

After receiving preliminary approval of a settlement agreement, class members must be notified of the settlement. Fed. R. Civ. P. 23(3)(1)(B). For a class proposed under Rule 23(b)(3), whether litigated or by settlement, the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The notice of a class action settlement need only satisfy the broad "reasonableness" standards imposed by due process. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). A notice is adequate if "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). To satisfy due process, the notice must reflect a desire to inform. *Mullane*, 339 U.S. at

13

315. The notice plan should take reasonable steps to update addresses before mailing and provide for re-mailing of notices to better addresses when returned as undeliverable. *Jones v. Flowers*, 547 U.S. 220, 226–27 (2006). The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810, at *8. Furthermore, in addition to United States mail, notice may be by electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

Interim Co-Lead Class Counsel request that the Court allow them to defer providing notice of this settlement until a later time. CIIPPs will submit a motion for leave to disseminate notice and that motion will include a proposed form, method, and date for dissemination of notice. CIIPPs expect to file that motion shortly after the present motion is filed.

## VI. Conclusion

For the reasons stated herein, the CIIPPs respectfully request that the Court preliminarily approve the JBS Settlement and preliminarily certify the Settlement Class. If approved, the CIIPPs will submit a separate motion seeking approval of a proposed notice plan and setting a schedule for the dissemination of notice to the Settlement Class and Final Fairness Hearing for the Settlement Agreement.

Dated: April 15, 2021 **Larson · King, LLP**

By <u>*s/ Shawn M. Raiter*</u>
Shawn M. Raiter (#240424)
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500
sraiter@larsonking.com

Jonathan W. Cuneo (admitted *pro hac vice*)
Blaine Finley (admitted *pro hac vice*)
**Cuneo Gilbert & LaDuca, LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
(202) 789-3960
jonc@cuneolaw.com
bfinley@cuneolaw.com

**Interim Co-Lead Counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs**