**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF MINNESOTA**

IN RE PORK ANTITRUST
LITIGATION


This Document Relates To:

THE DIRECT PURCHASER
PLAINTIFF ACTION

Case No. 18-cv-01776 (JRT-HB)


**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF MOTION FOR
FINAL APPROVAL OF THE
CLASS ACTION SETTLEMENT
BETWEEN DIRECT
PURCHASER PLAINTIFFS AND
THE JBS DEFENDANTS**

957036.10 560827.1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................. 1

II.    LITIGATION BACKGROUND ........................................................... 2

III.    SUMMARY OF THE SETTLEMENT AND NOTICE ......................... 4

    A.    Settlement Negotiations and the Settlement Terms ..................... 4

    B.    The Court Preliminarily Approved the Settlement and Notice Plan; The Class Has Received Notice; and No Class Member Has Objected to the Proposed Settlement ............................................ 6

    C.    The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented .............................................. 7

IV.    LEGAL ARGUMENT ...................................................................... 10

    A.    Final Approval Should be Granted ............................................ 10

    B.    The Settlement was Negotiated at Arm's-Length and has the Support of Experienced Class Counsel .................................... 11

    C.    The Settlement Provides Significant Relief to the Settlement Class .......... 14

    D.    The Settlement Eliminates Significant Risk to a Class Facing Complex, Lengthy and Expensive Litigation .............................. 15

    E.    Class Members Support the Settlement .................................... 16

V.    CONCLUSION ................................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987)...................................................................................8

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...........................................................................................8

*Christina A. v. Bloomberg*,
  No. Civ. 00-4036, 2000 WL 33980011 (D.S.D. Dec. 13, 2000) ...........................13

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005)....................................................................11

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ...............................................................................15

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ..........................................................................11, 14

*E.E.O.C. v. Faribault Foods, Inc.*,
  Civ. Nos. 07-3976, 07-3986, 07-3977, 07-3985, 2008 WL 879999 (D. Minn.
  Mar. 28, 2008)....................................................................................................13

*In re Employee Benefit Plans Sec. Litig.*,
  No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ...............................12, 13

*Ficalora v. Lockheed Cal. Co.*,
  751 F.2d 995 (9th Cir. 1985) ...............................................................................11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995).....................................................................................10

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ...............................................................................10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C. 2002)...............................................................................16

*Martin v. Cargill, Inc.*,
  295 F.R.D. 380 (D. Minn. 2013)............................................................................11

*MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.*,
  546 F.3d 533 (8th Cir. 2008) ...............................................................................10

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
    281 F.3d 629 (7th Cir. 2002) .................................................................................14

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) .....................................................................8, 10, 14

*In re Rambus Inc. Derivative Litig.*,
    No. C 06-3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ................................16

*In re Shopping Carts Antitrust Litig.*,
    MDL No. 451, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ....................................15

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ..............................................................................................14

*In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*,
    631 F. Supp. 2d 1151 (D. Minn. 2009) ...................................................11, 12, 14

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) .................................................................................11

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ...............................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..............................................................................15, 16

*Welsch v. Gardenbring*,
    667 F. Supp. 1284 (D. Minn. 1987) .......................................................................12

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013)...........................13

**Other Authorities**

Class Action Fairness Act, 28 U.S.C. § 1715(b) ...............................................................7

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11.22 (4th ed. 2002) ..............10

Class Action Fairness Act, 28 U.S.C. § 1715(b) ...............................................................7

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................8

Fed. R. Civ. P. 23(e)(1)(A) ...............................................................................................11

*Manual for Complex Litigation*, § 21.632 (4th ed. 2004).............................................10

## I.   **INTRODUCTION**

The Direct Purchaser Plaintiffs ("DPPs") hereby seek final approval of the Settlement[1] with Defendants JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company ("JBS" or "Settling Defendant"). Under the Settlement, JBS will pay $24,500,000 to the DPP Settlement Class.[2] (*See* Declaration of W. Joseph Bruckner in Support of Motion ("Bruckner Decl.") at ¶ 10.)

In granting preliminary approval of this Settlement, the Court found it fell within the range of reasonableness and ordered notice to be provided to the Class members. (*See* Preliminary Approval Order, Jan. 12, 2021, ECF No. 631 (hereinafter referred to as "Preliminary Approval Order") at 2.) Interim Co-Lead Counsel[3] and A.B. Data Ltd., the Court-appointed claims administrator (*see id.* at 3-4), have executed the Notice Plan in

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as in the Settlement Agreement (ECF No. 543-1, also referred to herein as "Settlement").

[2] The term "Class" or "Settlement Class" is consistent with the definition of the term in the Court's Preliminary Approval Order: "All persons who purchased Pork directly from any of the Defendants or any co-conspirator, or their respective subsidiaries or affiliates for use or delivery in the United States from at least as early as January 1, 2009 until the date of this order granting Preliminary Approval of the Settlement Agreement [January 12, 2021]. Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action." (*See* Preliminary Approval Order at 2-3.)

[3] Interim Co-Lead Counsel are Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP. (*See* Order of Oct. 15, 2018 (ECF No. 149).) Interim Co-Lead Counsel was appointed Class Counsel of the JBS Settlement Class. (*See* Preliminary Approval Order at 2-3.)

accordance with the Court's Preliminary Approval Order. (*Id.*) This process has confirmed that the Settlement with JBS is fair, reasonable, and adequate, and should be granted final approval by the Court. The reaction of the Class members has been uniformly positive, with no member of the Settlement Class objecting to the Settlement. (*See* Sections III.C and IV.E *infra*.)

This "ice-breaker" Settlement provides $24,500,000 in relief to the Class members while eliminating the risk, uncertainty, and expense of continuing litigation, and preserving DPPs' right to obtain additional settlements or judgments against the numerous remaining Defendants. DPPs therefore respectfully request that the Court grant final approval to the Settlement and enter final judgment.

## II.   <u>LITIGATION BACKGROUND</u>

This is an antitrust class action against certain producers of Pork.[4] DPPs allege that Defendants combined and conspired to fix, raise, maintain, or stabilize prices of Pork sold

---

[4] As used in connection with the Settlement, "Pork" means porcine or swine products processed, produced or sold by JBS, or by any of the Defendants or their co-conspirators, including but not limited to: primals (including but not limited to loins, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chefs prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including, but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products), offal or variety products (including, but not limited to hearts, tongues, livers, head products, spleens, kidneys, feet, stomach, bladder, uterus, snoot, ears, tail, brisket bone, intestines, jowls, neck bones or other bones, skin, lungs, glands, hair, or pet food ingredients), rendered product and byproducts (including, but not limited to, lard, grease, meat meal, bone meal, blood meal , or blood plasma), casings (including, but not limited to, mucosa), and carcasses. (*See* Settlement Agreement ¶ 1.l.) JBS agrees to this definition only for purposes of the Settlement Class. (*Id.*)

in the United States in violation of the Sherman Act, 15 U.S.C. § 1. (*See generally* DPP Third Consolidated and Amended Complaint ECF No. 431 ("TCAC" or "Complaint").) DPPs allege that Defendants implemented their conspiracy in various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and otherwise manipulating Pork prices. (*Id.*) JBS denies all allegations of wrongdoing in the Action and would allege numerous defenses to DPPs' claims, but desires to settle the Action to avoid, among other things, the further expense, inconvenience, disruption, and burden of this litigation.

The DPP class action lawsuit was filed on June 29, 2018, and consolidated before Chief Judge John R. Tunheim in this Court. Unlike many other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. (*See* Corporate Leniency Policy, U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy.) Thereafter, the Court appointed the undersigned as Interim Co-Lead Class Counsel for the DPPs. (ECF No. 149.) Defendants moved to dismiss all Plaintiffs' complaints. In August 2019, the Court granted their motions and granted Plaintiffs leave to amend. (ECF No. 360.) DPPs amended their complaint, and after extensive briefing by the parties, on October 16, 2020, the Court largely denied Defendants' motions to dismiss. (ECF No. 519, amended Oct. 20, 2020, ECF No. 520.)

DPPs performed a thorough investigation prior to reaching the Settlement and were well informed by the time the parties agreed to settle. These efforts commenced prior to

the filing of DPPs' initial complaint and included pre-litigation investigation into Defendants' conduct that formed the basis of the DPPs' complaints. (*See* Bruckner Decl. ¶ 4.)

Since the initial complaint was filed, DPPs have continued their factual investigation into the conspiracy alleged in their complaint, and since the Court has largely denied Defendants' motions to dismiss Plaintiffs' complaints, DPPs have commenced discovery. (*Id.* ¶ 5.)

## III.   SUMMARY OF THE SETTLEMENT AND NOTICE

### A.   Settlement Negotiations and the Settlement Terms

The parties have had ample opportunity to assess the merits of DPPs' claims and JBS's defenses, through investigation, research, settlement discussions and contested motion practice; and to balance the value of Settlement Class members' claims against the substantial risks and expense of continuing litigation. The Settlement comes after extensive arm's-length negotiations between the parties. (*See Id.* ¶¶ 6-9.) These discussions commenced prior to the Court's ruling in August 2019 on Defendants' initial motions to dismiss Plaintiffs' complaints, at which time counsel for JBS and DPPs met in person to discuss a possible resolution. (*Id.* ¶ 6.) The parties were unable to reach an agreement at that time and continued litigating the case, including briefing and arguments relating to Defendants' motions to dismiss. (*Id.*) Before the Court denied Defendants' second motion to dismiss on October 16, 2020 (ECF Nos. 519, 520), JBS and DPPs recommenced discussions and negotiated in good faith over a two-week period, but did not reach an agreement. (*Id.* ¶ 7.) After the Court denied Defendants' second motion to dismiss, the

parties continued their settlement negotiations, this time with the assistance of an experienced and nationally-renowned mediator, Professor Eric Green of Resolutions, LLC. The parties and Professor Green held a full day remote mediation on October 28, 2020. (*Id.*) While the parties made substantial progress during the mediation, they did not reach agreement on all material settlement terms. (*Id.*) Over the next few days the parties continued negotiating, with the assistance of Professor Green, and signed a binding settlement term sheet on November 3, 2020. (*Id.*) Thereafter, the parties negotiated the terms of and finalized a long form Settlement Agreement, which they executed on November 17, 2020. (*Id.*)

In addition to paying $24,500.000 in monetary relief, JBS also agreed to provide meaningful cooperation that will assist the DPPs in the ongoing prosecution of this Action. (*Id.*) In exchange, the DPPs and the proposed Settlement Class will release certain Released Claims (as defined in the Settlement Agreement) against the Released Parties (as defined in the Settlement Agreement). (*See* Settlement Agreement §§ 14, 15.) The releases do not extend to other Defendants or to unrelated claims for breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claims. (*Id.*)

The Settlement (with accrued interest) will be used to: (1) pay for notice costs and costs incurred in the administration of the Settlement and distribution of Settlement; (2) pay taxes and tax-related costs associated with the escrow account for proceeds from the Settlement; (3) make a distribution to Settlement Class members in accordance with a proposed plan of distribution to be filed in the future and approved by the Court; (4) pay

any Court-awarded attorneys' fees and expenses to Counsel for the Settlement Class; and (5) pay any Court-awarded service awards to the named Plaintiffs. At this time, DPPs do not intend to distribute settlement proceeds to qualified Settlement Class members or to seek attorneys' fees or costs (other than the costs of notice) from the Settlement. DPPs will make a motion for distribution of net settlement proceeds, and attorneys' fees and costs at an appropriate date in the future.

In sum, the Settlement Agreement: (1) is the result of extensive good faith negotiations between knowledgeable and skilled counsel; (2) was entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced class counsel, is fair, reasonable, and adequate. Based on both the monetary and cooperation elements of the Settlement Agreement, Interim Co-Lead Counsel believes the Settlement Agreement is in the best interests of the Settlement Class members and should be approved by the Court. (*Id.* ¶ 13.)

**B.    The Court Preliminarily Approved the Settlement and Notice Plan; The Class Has Received Notice; and No Class Member Has Objected to the Proposed Settlement**

The Court entered the Preliminary Approval Order on January 12, 2021. (ECF No. 631.) Pursuant to the Preliminary Approval Order, DPPs sent notice to all known Class members of the proposed Settlement and the fairness hearing to be held on July 26, 2021. The Claims Administrator, A.B. Data Ltd., mailed a long-form notice by first class mail to Class members identified through reasonable effort. (Declaration of Eric Schachter ("Schachter Decl.") ¶ 5.) On a public website dedicated to this litigation, www.porkantitrustlitigation.com, the Claims Administrator also posted notice of the

objection deadline (May 28, 2021) and many other case-related documents, including the full text of the Settlement Agreement, instructions on how to attend the Court's fairness hearing, instructions on how to object to the Settlement, and other details regarding the Settlement and the approval process. (*Id.* ¶¶ 8, 10.) The Claims Administrator has also operated a toll-free telephone number to field Class member questions. (*Id.* ¶ 9.)

On December 9, 2020, JBS notified the appropriate federal and state officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b), which requires that appropriate federal and state officials (in this case, the U.S. and state attorneys general) be notified of any proposed class action settlement. The statute provides that a court may not grant final approval to a proposed settlement sooner than 90 days after such notice is served. The 90-day waiting period has long passed, and none of the notified federal or state officials have objected to or otherwise commented on the proposed settlement.

The Court set May 28, 2021, as the deadline for Class members to object to the Settlement. (Preliminary Approval Order at 5). No Class member has objected to the proposed Settlement or to any other aspect of the litigation. (Bruckner Decl. ¶ 12; Schachter Decl. ¶ 11.)

## C.   The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented

The Court-approved Notice Plan related to the Settlements has been successfully implemented and Class members have been notified of the Settlements. When a proposed class action settlement is presented for court approval, the Federal Rules require "the best notice that is practicable under the circumstances," and that certain specifically identified

items in the notice be "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). A settlement notice is a summary, not a complete source, of information. *See, e.g.*, *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988).

The Notice Plan approved by this Court (*see* Preliminary Approval Order at 3-4)—which relies primarily on direct notice to Class members supplemented by publication notice—is commonly used in class actions like this one. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting Fed. R. Civ. P. 23(c)(2)); Fed. R. Civ. P. 23(c)(2)(B). It constitutes valid, due, and sufficient notice to class members, and is the best notice practicable under the circumstances. The content of the Court-approved notice complies with the requirements of Rule 23(c)(2)(b). Both the summary and long-form notice clearly and concisely explained in plain English the nature of the action and the terms of the Settlements. (*See* Schachter Decl. ¶ 4.) The notices provided a clear description of who is a member of the Settlement Class and the binding effects of Class membership. *Id.* They also explained how to exclude oneself from the Settlement Class, how to object to the Settlement, and how to contact Interim Co-Lead Counsel for the Settlement Class. *Id.* The notices also explained that they provided only a summary of the Settlements, and that the Settlement Agreements, as well as other important documents related to the litigation, are available online at www.porkantitrustlitigation.com. (*See id.*) In addition, the information from that website, as well as the toll-free call-in number for the Settlements, were available

in both English and Spanish. (*See id.* ¶¶ 8, 9.) Consequently, every provision of the Settlements was available to each Class member.

The Notice Plan was implemented by the Court-appointed settlement administrator, A.B. Data Ltd. (*See* Preliminary Approval Order at 3-4.) Specifically, using customer information obtained from Defendants, A.B. Data Ltd. mailed 68,160 print notices and emailed 3,506 electronic notices to potential class members. (*See* Schachter Decl. ¶¶ 4, 6.) A.B. Data Ltd. also published notice in the April 2021 edition of *Food Logistics*, a trade journal targeting supply chain executives and food industry professionals, and also effectuated a 30-day digital media banner ad campaign on www.foodlogistics.com. (*See id.* ¶ 7.) In addition, A.B. Data Ltd. continues to maintain the case website, where Class members can view and print important documents and obtain other information related to the litigation. (*See id.* ¶ 8.) A.B. Data Ltd. also continues to maintain a toll-free call-in number to answer Class members' questions. (*See id.* ¶ 9.)

The Settlement Administrator reviewed and processed all requests for exclusion. (*See id.* ¶¶ 10-11.) This process included determining the timeliness and validity of any requests for exclusion, identifying the entities that fell within the scope of valid requests for exclusion, conducting appropriate follow-ups with requested opt-outs to determine the scope and value of any assignments or partial assignments, and assisting the parties in determining the opt-out calculations. (*See id.*) As a result of this process, the Administrator has come up with a recommended list of valid opt-outs, which is set forth at Exhibit A of the Schachter Declaration. This recommended list of opt-outs includes certain partial assignments which are set forth at Exhibit B to the Schachter Declaration.

## IV.   LEGAL ARGUMENT

### A.   Final Approval Should be Granted

Whether a proposed settlement should be approved is within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of controversies, particularly in the context of class action lawsuits. *See MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.*, 546 F.3d 533, 541 (8th Cir. 2008) (noting "strong public policy of encouraging settlement"); *Petrovic*, 200 F.3d at 1148 ("[S]trong public policy favors agreements, and courts should approach them with a presumption in their favor.") (internal citation omitted); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation[.]"); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) (approval of a settlement "is committed to the sound discretion of the trial judge").

Review of a proposed settlement generally proceeds in two stages: first, preliminary approval, followed by a fairness hearing on final approval. *See Manual for Complex Litigation*, § 21.632 (4th ed. 2004). Between preliminary and final approval, the class is notified of the proposed settlement and given an opportunity to object to the settlement, opt out of the settlement class, or otherwise be heard. This procedure safeguards class members' procedural due process rights and enables courts to fulfill their roles as guardians of class interests. *See* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11.22, *et seq.* (4th ed. 2002).

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, before a class action may be settled, voluntarily dismissed or compromised, the court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(A); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (quoting *Grunin*, 513 F.2d at 123); *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995). In determining whether a settlement is fair, reasonable, and adequate, courts in the Eighth Circuit examine a range of factors, which typically include: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d 1151, 1156 (D. Minn. 2009). The court must also assess whether a proposed settlement is "within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013).

This Court preliminarily approved the Settlement and now, DPPs respectfully submit, that it should grant final approval.

## B. The Settlement was Negotiated at Arm's-Length and has the Support of Experienced Class Counsel

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties[.]" *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("[P]rior

to approving settlement . . . the court must determine there has been no fraud or collusion in arriving at the settlement agreement[.]").

If a settlement is negotiated at arm's length, there is a presumption that the settlement is procedurally sound. *See, e.g.*, *In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d at 1158 ("Where sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.") (quoting *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

Here, there is no dispute that the proposed Settlement is the product of extensive, arm's length negotiations. (*See* Section III.A *supra*.) Here, the parties have had ample opportunity to assess the merits of DPPs' claims and JBS's defenses, through investigation, research, settlement discussions and contested motion practice; and to balance the value of Settlement Class members' claims against the substantial risks and expense of continuing litigation. (*See* Bruckner Decl. ¶¶ 4-5, 8-9.) The parties, after negotiating for a prolonged period, engaged nationally-renowned mediator Professor Eric Green of Resolutions, LLC. (*See* ¶ 7.) Soon thereafter, the Settlement Agreement was entered into.

Further, "[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) (citation omitted); *see also Welsch v. Gardenbring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight" to opinions of experienced counsel). Indeed, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement.

*Christina A. v. Bloomberg*, No. Civ. 00-4036, 2000 WL 33980011, *4 (D.S.D. Dec. 13, 2000) ("The Court attributes significant weight to Plaintiffs' attorney's assertion that the Settlement Agreement is fair, reasonable and provides significant benefits to the Plaintiff class. Indeed, Plaintiffs' lead attorney . . . based this assertion on his 22 years of experience in this field and his participation in similar cases in 15 other states."). Co-Lead Counsel's approval of a settlement weighs in favor of the settlement's fairness. *E.E.O.C. v. Faribault Foods, Inc.*, Civ. Nos. 07-3976, 07-3986, 07-3977, 07-3985 (RHK/AJB), 2008 WL 879999, *4 (D. Minn. Mar. 28, 2008); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005).

Indeed, courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g., In re Emp. Benefit Plans Sec. Litig.*, 1993 WL 330595, at *5 (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .'") (citation omitted). When, as here, experienced counsel represent the parties, and rigorous negotiations were conducted at arms' length (in this instance with the assistance of a nationally recognized mediator), the

judgment of the litigants and their counsel concerning the adequacy of the Settlement should be considered. *See Petrovic*, 200 F.3d at 1149; *DeBoer*, 64 F.3d at 1178.

Here, Interim Co-Lead Class Counsel unequivocally believes the Settlement is in the best interests of the Settlement Class members and should be approved by the Court. (*See* Bruckner Decl. ¶¶ 13.)

### C.   The Settlement Provides Significant Relief to the Settlement Class

The Settlement Agreement with JBS provides substantial relief to the Settlement Class in terms of monetary relief and cooperation. JBS has paid $24,500,000 into the Settlement Fund. (*See* Bruckner Decl. ¶ 10.) This payment removes any concerns about the ability to pay the settlement amount. *See In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d at 1156. In addition to the payment of money, the Settlement requires JBS to provide specified cooperation in the DPPs' continued prosecution of the action against the remaining Defendants. The terms of this cooperation are set forth in a confidential letter agreement, which DPPs will provide to the Court for *in camera* review upon request. (*See* Bruckner Decl. ¶ 10.) The cooperation aspect of the Settlement is significant, because pursuant to the Sherman Act, the remaining Defendants are jointly and severally liable for any damages resulting from JBS's Pork sales to DPPs during the Class Period. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981); *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 633 (7th Cir. 2002).

In consideration for these settlement benefits, DPPs and the proposed Settlement Class agree to release certain Released Claims (as defined in the Settlement Agreement) against JBS Released Parties (as defined in the Settlement Agreement). (*See* Settlement

Agreement ¶¶ 9, 14.) The release does not extend to any other Defendants or co-conspirators, or unrelated claims for breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claims. (*Id.* ¶ 14.)

In sum, this Settlement with JBS provides substantial monetary and non-monetary relief to the Settlement Class and falls well within the range of possible approval.

### D. The Settlement Eliminates Significant Risk to a Class Facing Complex, Lengthy and Expensive Litigation

Courts consistently hold that the complexity, expense and likely duration of litigation are all factors supporting approval of a settlement. *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir. 1981). In particular, "antitrust cases, by their nature, are highly complex." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 122 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044 (2005); *In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 WL 1950, *6 (S.D.N.Y. Nov. 18, 1983) ("[A]ntitrust price fixing actions are generally complex, expensive and lengthy.").

This case is no different. While the DPPs believe their case is strong, the Settlement eliminates significant risks they would face if the action were to proceed against JBS, including the complexity, length and expense of these types of litigations. Indeed, as reflected in the extensive docket, this case is three years old and the DPPs have expended significant effort to defeat motions to dismiss, begin conducting extensive discovery, prepare to brief class certification, and plan and prepare for trial. The Settlements allow Class members to recover a significant sum from one of the Defendants that will

undoubtedly put pressure on, and allow the DPPs to maximize future recoveries from, the remaining Defendants. Absent settlement, the DPPs would need to successfully obtain class certification, go to trial, and bear the burden of establishing liability, impact and damages before obtaining any recovery from JBS. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 118 ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'") (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998)). Continued litigation against the remaining Defendants, absent future settlements, will involve significant additional expenses and protracted legal battles.

Therefore, the complexity, length and expense of further litigation, which the Settlement mitigates at least as to the Settling Defendant, also favor final approval.

### E.   Class Members Support the Settlement

The fact that no class member has objected to the proposed settlement supports a finding that it is fair, reasonable, and adequate. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (finding that "the settlement group's reaction to this settlement has been overwhelmingly positive and supports approval" and that "[t]he existence of a relatively few objections certainly counsels in favor of approval"); *In re Rambus Inc. Derivative Litig.*, No. C 06-3513, 2009 WL 166689, *3 (N.D. Cal. Jan. 20, 2009) ("The reaction of the class to the proffered settlement . . . is perhaps the most

significant factor to be weighed in considering its adequacy . . . .") (internal quotations and brackets omitted). In this case, the fact that no Class member has objected substantially supports the fairness of this Settlement.

As discussed in Section III.C, A.B. Data Ltd. implemented the Notice program as Ordered by this Court. (*See* Preliminary Approval Order at 3-4.) Both the mailed notice and the case website informed Class members of the terms of the Settlement and the May 28, 2021 deadline for objections. (Preliminary Approval Order at 4-5.) No Class member has objected. (*See* Schachter Decl. ¶ 11.)

That no Class member has objected is an impressive result for a settlement of this prominence and for such a class of sophisticated businesses and individuals. The Class's overwhelming affirmation strongly supports the fairness and reasonableness of the Settlement.

## V.   <u>CONCLUSION</u>

For the reasons set forth herein, Interim Co-Lead Counsel respectfully request that the Court grant final approval to the JBS Settlement Agreement.[5]

---

[5] DPPs will file a [Proposed] Order granting this Motion no later than July 23, 2021.

Date: July 12, 2021

*/s/ W. Joseph Bruckner*
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Joseph C. Bourne (MN #0389922)
Arielle S. Wagner (MN #0398332)
Craig S. Davis (MN #0148192)
Simeon A. Morbey (MN #0391338)
Stephen M. Owen (MN # 0399370)
Stephen J. Teti (*Pro Hac Vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
jcbourne@locklaw.com
aswagner@locklaw.com
csdavis@locklaw.com
samorbey@locklaw.com
smowen@locklaw.com
sjteti@locklaw.com

Clifford H. Pearson (*Pro Hac Vice*)
Daniel Warshaw (*Pro Hac Vice*)
Thomas J. Nolan (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T:  (818) 788-8300
F:  (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
tnolan@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Bruce L. Simon (*Pro Hac Vice*)
Benjamin E. Shiftan (*Pro Hac Vice*)
Neil Swartzberg (*Pro Hac Vice*)
**PEARSON, SIMON & WARSHAW, LLP**
350 Sansome Street, Suite 680
San Francisco, CA 94104
T:  (415) 433-9000
F:  (415) 433-9008
bsimon@pswlaw.com
bshiftan@pswlaw.com
nswartzberg@pswlaw.com

Melissa S. Weiner (MN #0387900)
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
T: (612) 389-0600
F: (612) 389-0610
mweiner@pswlaw.com

*Interim Co-Lead Class Counsel for the*
*Direct Purchaser Plaintiff Class*