## UNITED STATES DISTRICT COURT
## DISTRICT COURT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br><br>This Document Relates To:<br><br>THE DIRECT PURCHASER PLAINTIFF ACTION | Case No. 18-cv-01776 (JRT-HB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT BETWEEN DIRECT PURCHASER PLAINTIFFS AND SMITHFIELD FOODS, INC.** |

560906.1

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................... 1

II.  LITIGATION BACKGROUND ............................................................................. 2

III.  THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR
PRELIMINARY APPROVAL.................................................................................. 4

    A.  The Proposed Settlement is the Result of Arm's-Length Negotiations ........ 5

    B.  The Settlement Provides Significant Relief to the Settlement Class
and Should be Preliminarily Approved by the Court................................... 8

IV.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT
CLASS..................................................................................................................... 10

    A.  The Proposed Settlement Class Satisfies the Requirements of Rule
23(a)........................................................................................................... 11

        1.  The Class is Sufficiently Numerous.................................................. 11

        2.  Questions of Law and Fact Are Common to the Settlement
Class ................................................................................................ 12

        3.  Plaintiffs' Claims are Typical of Those of the Settlement
Class ................................................................................................ 13

        4.  Plaintiffs and Their Counsel Will Continue to Adequately
Represent the Interests of the Class ................................................ 14

    B.  The Proposed Settlement Class Satisfies the Requirements of
Rule 23(b)(3) ............................................................................................. 15

V.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ............ 17

VI.  THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING ........... 21

VII.  CONCLUSION .................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpern v. UtiliCorp United, Inc.*,
    84 F.3d 1525 (8th Cir. 1996) .................................................13

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).........................................10, 15, 16, 17

*Blades v. Monsanto Co.*,
    430 F.3d 562 (8th Cir. 2005) ...............................................12

*City of Greenville v. Syngenta Crop Prot.*,
    No. 3:10-CV-188, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ...........18

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ...............................................14

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) .......................................6, 13, 20

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).........................................................18

*In re Employee Benefit Plans Sec. Litig.*,
    No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ...............5, 6

*Grier v. Chase Manhattan Auto Fin. Co.*,
    No. A.99-180, 2000 WL 175126 (E.D. Pa. Feb. 16, 2000) ...................6

*Gries v. Standard Ready Mix Concrete, L.L.C.*,
    252 F.R.D 479 (N.D. Iowa 2008) ..........................................11

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ...........................................5, 6

*Huyer v. Wells Fargo & Co.*,
    295 F.R.D. 332 (S.D. Iowa 2016) ..........................................13

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ...............................................14

*In re Monosodium Glutamate Antitrust Litig.*,
    205 F.R.D. 229 (D. Minn. 2001)...........................................10

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
   281 F.3d 629 (7th Cir. 2002) ...........................................................................10

*Paxton v. Union Nat. Bank*,
   688 F.2d 552 (8th Cir. 1982) ...........................................................................14

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) .................................................................6, 18, 20

*In re Potash Antitrust Litig.*,
   159 F.R.D. 682 (D. Minn. 1995) .......................................................................16

*Richter v. Bowen*,
   669 F. Supp. 275 (N.D. Iowa 1987) ...................................................................11

*Sullivan v. DB Invs.*,
   667 F.3d 273 (3d Cir. 2011) ..............................................................................16

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
   451 U.S. 630 (1981) ...........................................................................................9

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ..............................................................................5

*In re Vitamins Antitrust Litig.*,
   209 F.R.D. 251 (D.D.C. 2002) ..........................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .........................................................................................12

*Welsch v. Gardenbring*,
   667 F. Supp. 1284 (D. Minn. 1987) ....................................................................5

*White v. Nat'l Football League*,
   822 F. Supp. 1389 (D. Minn. 1993) ............................................................4, 5, 10

*White v. Nat'l Football League*,
   836 F. Supp. 1458 (D. Minn. 1993) ....................................................................6

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   No. 08-MDL-1958, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) ...........................5

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) .............................6

**Other Authorities**

Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ...................................................22

Fed. R. Civ. P. 23(a) ........................................................................................11

Fed. R. Civ. P. 23(a)(1) ....................................................................................11

Fed. R. Civ. P. 23(a)(2) ....................................................................................12

Fed. R. Civ. P. 23(a)(3) ....................................................................................13

Fed. R. Civ. P. 23(a)(4) ....................................................................................14

Fed. R. Civ. P. 23(b)(3) ........................................................................15, 16, 17

Fed. R. Civ. P. 23(c)(2)(B) .....................................................................17, 18, 19

Fed. R. Civ. P. 23(e) ...............................................................................4, 5, 17

Manual for Complex Litig., §§ 21.312, 21.631 (4th ed. 2011)........................17

Manual for Complex Litig., § 21.632 (4th ed. 2004)........................................5

2 *Newberg on Class Actions*, § 11.24 (3d ed. 1992)................................4, 10

4 *Newberg on Class Actions*, § 11.53 (4th ed. 2002)...................................17

4 *Newberg on Class Actions*, § 18.28 (4th ed. 2002)...................................16

## I.   __INTRODUCTION__

The Direct Purchaser Plaintiffs ("DPPs") in this antitrust class action respectfully move the Court to preliminarily approve a proposed settlement of their claims against Defendant Smithfield Foods, Inc. ("Smithfield").[1] This is the second major settlement in this litigation, and it provides the Settlement Class with significant and substantial relief. Pursuant to the Settlement Agreement, Smithfield will pay up to $83 million in monetary relief and will provide cooperation to DPPs, as defined in the Agreement. Combined with DPPs' earlier settlement with the JBS Defendants, this brings the total settlements to date to $107,500,000 from just two of the Defendants in the case. (*See* Declaration of W. Joseph Bruckner ("Bruckner Decl.") ¶ 13.)

As discussed in this memorandum, the Settlement Agreement is the product of protracted arm's-length settlement negotiations that took place over eight months, and provides substantial monetary and non-monetary relief to the DPP Settlement Class (as defined in Section IV *infra*). It should be granted preliminary approval because it is fair, reasonable, and adequate, and is in the best interests of the Settlement Class members.

The DPPs further request that the Court certify the proposed Settlement Class for settlement purposes, approve the proposed plan for disseminating notice to the Class, and set a schedule for the Final Fairness Hearing of the Settlement. At the Final Fairness

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as in the Settlement Agreement (also referred to herein as "Settlement"), which is filed concurrently herewith as Exhibit A to the Declaration of W. Joseph Bruckner.

Hearing, Interim Co-Lead Class Counsel[2] will request entry of a final order and judgment dismissing Smithfield and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

## II.   LITIGATION BACKGROUND

This is an antitrust class action against certain producers of Pork.[3] DPPs allege that Defendants combined and conspired to fix, raise, maintain, or stabilize prices of Pork sold in the United States in violation of the Sherman Act, 15 U.S.C. § 1. (*See generally* DPP Third Consolidated and Amended Complaint, ECF No. 431 ("TCAC" or "Complaint").) DPPs allege that Defendants implemented their conspiracy in various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and otherwise manipulating Pork prices. (*Id.*) Smithfield denies all allegations of wrongdoing in the Action and would allege numerous defenses to DPPs' claims, but

---

[2] Interim Co-Lead Counsel are Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP. (*See* Order of Oct. 15, 2018 (ECF No. 149).)

[3] As used herein, "Pork" means porcine or swine products processed, produced or sold by Smithfield, or by any of the Defendants or their co-conspirators, including but not limited to: primals (including but not limited to loins, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chefs prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including, but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products), offal or variety products (including, but not limited to hearts, tongues, livers, head products, spleens, kidneys, feet, stomach, bladder, uterus, snoot, ears, tail, brisket bone, intestines, jowls, neck bones or other bones, skin, lungs, glands, hair, or pet food ingredients), rendered product and byproducts (including, but not limited to, lard, grease, meat meal, bone meal, blood meal , or blood plasma), casings (including, but not limited to, mucosa), and carcasses. (*See* Settlement Agreement ¶ 1.l.) Smithfield agrees to this definition only for purposes of the Settlement Class. (*Id.*)

desires to settle the Action to avoid, among other things, the further expense, inconvenience, disruption, and burden of this litigation.

The DPP class action lawsuit was filed on June 29, 2018, and consolidated before Chief Judge John R. Tunheim in this Court. Unlike many other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. (*See* Corporate Leniency Policy, U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy.) Thereafter, the Court appointed the undersigned as Interim Co-Lead Class Counsel for the DPPs. (ECF No. 149.) Defendants moved to dismiss all Plaintiffs' complaints. In August 2019, the Court granted their motions and granted Plaintiffs leave to amend. (ECF No. 360.) DPPs amended their complaint, and after extensive briefing by the parties, on October 16, 2020, the Court largely denied Defendants' motions to dismiss. (ECF No. 519, amended Oct. 20, 2020, ECF No. 520.)

DPPs performed a thorough investigation prior to reaching the Settlement and were well informed by the time the parties agreed to settle. These efforts commenced prior to the filing of DPPs' initial complaint and included pre-litigation investigation into Defendants' conduct that formed the basis of the DPPs' complaints and the analysis of discovery conducted to date. (*See* Bruckner Decl. ¶ 4.)

Since the initial complaint was filed, DPPs have continued their factual investigation into the conspiracy alleged in their complaint, and once the Court largely denied Defendants' motions to dismiss Plaintiffs' complaints, DPPs have commenced

discovery. (*Id.*) DPPs have reviewed and analyzed the discovery produced to date, including documents produced by Smithfield, the other Defendants, and third parties.

On November 17, 2020, DPPs and the JBS Defendants entered into a settlement that provided for a payment of $24,500,000 and meaningful cooperation. (*Id.* ¶ 13.) The Court preliminarily approved that settlement on January 12, 2021. (*See* ECF No. 631.) Since preliminarily approval of the JBS settlement, DPPs have successfully implemented the Court-approved notice plan and now have moved for final approval of that settlement. (*See* ECF No. 822.)

As part of their ongoing prosecution, Interim Co-Lead Class Counsel negotiated the Settlement with Smithfield, the terms of which are detailed in this brief and the supporting documents. This settlement represents a significant step up from the per market share recovery DPPs obtained from JBS.

## III.   THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL

Parties proposing to settle a class action must seek approval of the settlement from the court. Fed. R. Civ. P. 23(e). Federal Rule of Civil Procedure ("Rule") 23(e) contemplates a sequential process for courts evaluating class action settlements. At this preliminary approval stage, the court determines whether the settlement is within the range of possible approval and whether class members should be notified of the terms of the proposed settlement. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); 2 *Newberg on Class Actions*, § 11.24 (3d ed. 1992) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine

whether the proposed settlement is 'within the range of possible approval.'"). Generally, before directing notice to the class members, a court makes a preliminary evaluation of the proposed class action settlement pursuant to Rule 23(e). *See* Manual for Complex Litig., § 21.632 (4th ed. 2004).

If the court preliminarily approves the settlement and authorizes notice to the class, and once the class has had the opportunity to consider the settlement, the court must decide whether to grant final approval of the settlement as "fair, reasonable and adequate." Fed. R. Civ. P. 23(e); *see also, e.g.*, *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The court has broad discretion in evaluating a class action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988). The law strongly favors resolving litigation through settlement, particularly in class actions. *White*, 822 F. Supp. at 1416 ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context.") (citation omitted); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2012 WL 5055810, *6 (D. Minn. Oct. 18, 2012).

DPPs respectfully submit that the proposed Settlement Agreement with Smithfield satisfies the preliminary approval standard and should be approved by the Court.

### A.       The Proposed Settlement is the Result of Arm's-Length Negotiations

"The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) (citation omitted); *see also Welsch v. Gardenbring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great

weight" to opinions of experienced counsel). Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery." *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-180, 2000 WL 175126, *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin*, 513 F.2d at 123; *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993).

Indeed, courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiations at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g., In re Emp. Benefit Plans Sec. Litig.*, 1993 WL 330595, at *5 (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .'") (citation omitted). When, as here, experienced counsel represent the parties, and rigorous negotiations were conducted at arms' length, the judgment of the litigants and their counsel concerning the adequacy of the settlement should be considered. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

Here, the parties have had ample opportunity to assess the merits of DPPs' claims and Smithfield's defenses, through investigation, discovery, research, settlement discussions and contested motion practice; and to balance the value of Settlement Class

members' claims against the substantial risks and expense of continuing litigation. The proposed settlement comes after extensive confidential, protracted arm's-length negotiations between the parties. (*See* Bruckner Decl. ¶¶ 6-8.) These discussions commenced after the Court mostly denied all Defendants' second motion to dismiss in October 2020. (ECF No. 520; Bruckner Decl. ¶ 6.) During the subsequent eight months, the parties engaged in extensive arm's-length negotiations, which ultimately resulted in the Settlement. (*Id.*) The hard-fought negotiations were kept confidential over the past eight months, and often broke down as the parties vigorously litigated the case. (*Id.*) The negotiations necessitated numerous conferences as well as written exchanges between counsel during which they negotiated the material terms of the settlement, as well as the final Settlement Agreement. (*Id.*) In engaging in these settlement discussions, counsel for DPPs were focused on obtaining the best possible result for the DPP class. (*Id.*) The parties ultimately executed the Settlement Agreement on June 29, 2021. (*See id.*; *see also* Settlement Agreement.)

In sum, the Settlement Agreement: (1) is the result of extensive good-faith and hard-fought negotiations between knowledgeable and skilled counsel; (2) was entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced class counsel, is fair, reasonable, and adequate. Based on both the monetary and cooperation elements of the Settlement Agreement, Interim Co-Lead Class Counsel believes the Settlement Agreement is in the best interests of the Settlement Class members and should be approved by the Court. (Bruckner Decl. ¶ 14.)

**B.    The Settlement Provides Significant Relief to the Settlement Class and Should be Preliminarily Approved by the Court**

The Settlement Agreement with Smithfield provides substantial relief to the Settlement Class in terms of monetary relief and cooperation. Under the terms of the Settlement Agreement, within 14 days of the Court's preliminary approval of the Settlement, Smithfield will pay $83 million into the Settlement Fund, which shall be deposited into an interest-bearing escrow account. (*See* Settlement Agreement ¶¶ 9-10.) The Settlement Fund will be used to compensate the Settlement Class for the damages suffered and expenses incurred, including attorneys' fees, litigation expenses, and the costs of notice. (*Id.* ¶¶ 9-14.)

At this time, Plaintiffs and their counsel are not seeking attorneys' fees, reimbursement of litigation expenses, or class representative service awards from the Settlement proceeds. However, they will do so in the future, and will notify the Class and file a motion with the Court at an appropriate time.[4] At this time, DPPs also are not seeking to distribute the net Settlement proceeds from the JBS and Smithfield settlements to qualified class members (assuming the Court's final approval of both settlements), but intend to do so in the coming months once they receive and process the necessary sales data from Defendants.

---

[4] As set forth in the proposed Settlement Class notice documents and the Settlement Agreement at ¶ 6.b, DPPs may withdraw up to $400,000 of the Settlement Fund, subject to the Court's approval, to pay for actual costs of notice and for Preliminary Approval and Final Approval of this Settlement Agreement.

The Settlement Agreement contains a reduction mechanism that could result in a reduction of the Settlement amount if the Pork purchases of Class members who opt out of the Settlement Class exceed an agreed-upon threshold. (*See* Settlement Agreement ¶ 20.)[5] Smithfield has no right to terminate the Settlement based on opt-outs. DPPs will report on the number of opt-outs and the final amount recovered by the Settlement Class prior to final approval.

In addition to the payment of money, the Settlement requires Smithfield to cooperate with DPPs in their continued prosecution of the action against the remaining Defendants. (*See* Settlement Agreement ¶ 11.) This cooperation includes providing DPPs with copies of discovery, responses, or other information provide to any other plaintiff in the *In re Pork Antitrust Litigation* or any government entity making substantially similar allegations regarding competition in the Pork industry; allowing the DPPs to participate in up to five depositions of Smithfield witnesses; producing structured data as agreed and assisting as necessary in understanding the data; authenticating documents for summary judgment and trial; providing a live witness for testimony at trial; and allowing DPPs to seek phone records of Smithfield's current and former employees. (*Id.*) The cooperation aspect of the settlement is significant, because pursuant to the Sherman Act, the remaining Defendants are jointly and severally liable for any damages resulting from Smithfield's Pork sales to DPPs during the Class Period. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S.

---

[5] The agreed-upon opt-out threshold is contained in a confidential side letter agreement between DPPs and Smithfield as referenced in the Settlement Agreement (¶ 20). DPPs will provide the side letter to the Court for *in camera* review upon request. (*See* Bruckner Decl. ¶ 9.)

630, 646 (1981); *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 633 (7th Cir. 2002). Thus, this cooperation will assist Plaintiffs in recovering the maximum amount of their damages against the remaining Defendants.

In consideration for these settlement benefits, DPPs and the proposed Settlement Class agree to release certain Released Claims (as defined in the Settlement Agreement) against the Smithfield Released Parties (as defined in the Settlement Agreement). (*See* Settlement Agreement ¶¶ 10, 15, 16.) The release does not extend to any other Defendants or co-conspirators, or to unrelated claims for breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claims. (*Id.* ¶ 15.)

In sum, this Settlement with Smithfield provides substantial monetary and non-monetary relief to the Settlement Class and falls well within the range of possible approval. For these reasons, the Court should grant preliminary approval to the Settlement Agreement and authorize notice to the Settlement Class. *See White*, 822 F. Supp. at 1399; 2 *Newberg on Class Actions*, § 11.24.

## IV.   THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

At the preliminary approval stage, the Court must also determine whether to certify the proposed Settlement Class for settlement purposes under Rule 23. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14; *see also In re Monosodium Glutamate Antitrust*

*Litig.*, 205 F.R.D. 229, 231 (D. Minn. 2001) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

Here, DPPs seek certification of a Settlement Class consisting of:

> DPPs and all other persons who purchased Pork directly from any of the Defendants or any co-conspirator, or their respective subsidiaries or affiliates for use or delivery in the United States from January 1, 2009 through January 12, 2021. Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

(Settlement Agreement ¶ 5.) The Settlement Class is substantially identical to the JBS settlement class, which the Court has already certified. (*See* JBS Preliminary Approval Order, ECF No. 631.) As detailed herein, this proposed Settlement Class meets the requirements of Rule 23(a), as well as the requirements of Rule 23(b)(3).

### A.  The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)

#### 1.  The Class is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No rigid rule of thumb has been developed in the Eighth Circuit as to how many potential class members is sufficient to satisfy the numerosity requirement. *Gries v. Standard Ready Mix Concrete, L.L.C.*, 252 F.R.D 479, 484 (N.D. Iowa 2008). However, some courts apply a rule of thumb that a class of over 40 persons is sufficiently numerous. *Richter v. Bowen*, 669 F. Supp. 275, 281 n.4 (N.D. Iowa 1987) (citing 3B J.

Moore, Moore's Fed. Procedure 23.05[1]). The proposed Settlement Class consists of entities that purchased Pork directly from the Defendants during the Class Period. Based on DPPs' experience in notifying the same DPP class of the earlier JBS Settlement, DPPs know that there are at least tens of thousands of DPP class members. (Schachter Decl. ¶ 6.)

2.   Questions of Law and Fact Are Common to the Settlement Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). A central allegation in this case is that Defendants illegally conspired to fix, raise, maintain and stabilize Pork prices. Proof and defense of this alleged conspiracy will be common to all Class members. *See, e.g.*, *Blades v. Monsanto Co.*, 430 F.3d 562, 566 (8th Cir. 2005) ("For a class to be certified, plaintiffs need to demonstrate that common issues prevail as to the existence of a conspiracy and the fact of injury."). In addition to this overarching common question, this case is replete with other questions of law and fact common to the Settlement Class, including but not limited to the following: (1) whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the Plaintiffs and the other members of the Class; (2) the effect of Defendants' alleged conspiracy on the prices of Pork sold in the United States during the Class Period; and (3) the appropriate measure of any damages. Accordingly, the Settlement Class satisfies Rule 23(a)(2).

3.     Plaintiffs' Claims are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that the class representatives' claims be typical of class members' claims. Typicality is closely related to commonality and "a finding of one generally compels a finding of the other." *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 349 (S.D. Iowa 2016). Typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

DPPs allege that Defendants illegally conspired to fix, raise, maintain and stabilize Pork prices. As alleged in the Complaint, the named Plaintiffs each alleged that they purchased Pork directly from a Defendant or co-conspirator in the United States from at least January 1, 2009 until the present and were overcharged and suffered an antitrust injury as a result. (TCAC ¶¶ 7, 14-19, 180.) To prevail on their claims, the named Plaintiffs will prove the same elements that other Settlement Class members would prove, *e.g.*, the existence and effect of such a conspiracy. Because the named Plaintiffs' claims arise out of the same alleged anticompetitive conduct and are based on the same theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

4. <u>Plaintiffs and Their Counsel Will Continue to Adequately Represent the Interests of the Class</u>

Rule 23(a)(4) requires that, in order for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." The focus here is whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982). Both requirements are satisfied in this case.

First, the interests of the Settlement Class members are aligned with those of the representative Plaintiffs. Plaintiffs, like all Settlement Class members, share an overriding interest in obtaining the largest possible monetary recovery and the settling defendants' cooperation in their ongoing prosecution of the case. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 679 (7th Cir. 2009) (holding that "hypothetical" conflicts of interest are not sufficient to defeat the common interest prong of the Rule 23(a)(4)).

Second, Plaintiffs and their counsel will also continue to adequately represent the interest of the Class Members. As the Court has already recognized in appointing Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP as Interim Co-Lead Class Counsel and in granting preliminary approval to the JBS settlement, these firms

and their attorneys are qualified, experienced, and thoroughly familiar with antitrust class action litigation. (*See* ECF Nos. 94 (Motion to Appoint Co-Lead Counsel), 149 (Order Appointing Co-Lead Counsel), 631 (JBS Preliminary Approval Order); *see also* Bruckner Decl. ¶¶ 14-16.) Interim Co-Lead Class Counsel have successfully litigated many significant antitrust actions, have vigorously prosecuted this lawsuit to date, and will continue to diligently represent the Class throughout this litigation. (*Id.*)

Furthermore, the named Plaintiffs have ably represented the Class by actively participating in the litigation. They have reviewed relevant pleadings and kept apprised of the status of the case, preserved and collected documents for production, and participated fully in discovery. (Bruckner Decl. ¶ 16.) They are committed to performing these duties and representing the Settlement Class members throughout this litigation. (*Id.*)

### B.   The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *See Amchem*, 521 U.S. at 623. Predominance in direct purchaser antitrust actions has been found where "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis[.]" *See In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002). Common

questions need only predominate; they need not be dispositive of the litigation. *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) ("[a]s a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment") (quoting *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993)). In this direct purchaser antitrust conspiracy case, the central common question of the existence of the conspiracy predominates over any individual issues. 4 *Newberg on Class Actions*, § 18.28 at 102 (4th ed. 2002) ("As a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions."); *Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *Sullivan v. DB Invs.*, 667 F.3d 273, 298-301 (3d Cir. 2011) (holding predominance is met because antitrust conspiracy claims necessarily turn on defendants' common course of conduct and a common theory of market impact).

Plaintiffs must also show that a class action is superior to individual actions. Superiority is evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).

Here, any Settlement Class member's hypothetical interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class

mechanism. Since tens of thousands of Settlement Class members purchased Pork during the Class Period, settling these claims in the context of a class action conserves both judicial and private resources and hastens the Settlement Class members' recovery. Finally, while DPPs see no management difficulties in this case, this consideration is not pertinent to approving a settlement class. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Accordingly, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to Smithfield.

## V.      **THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN**

Under Rule 23(e), Class Members are entitled to reasonable notice of the proposed Settlement. *See* Manual for Complex Litig., §§ 21.312, 21.631 (4th ed. 2011). For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) states:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The form of notice is "adequate if it may be understood by the average class member." 4 *Newberg on Class Actions*, § 11.53 (4th ed. 2002).

Settlement notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Notice need not provide "a complete source of information" or an exact amount of recovery for each class member. *Id*. (citing *DeBoer*, 64 F.3d at 1176). Best notice practicable means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Id.* at 176. Furthermore, in addition to United States mail, notice may be by electronic means or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Other members may be notified by publication. *City of Greenville v. Syngenta Crop Prot.*, No. 3:10-CV-188, 2012 WL 1948153, *4 (S.D. Ill. May 30, 2012).

The proposed notice plan in this case satisfies these criteria and is the same as the notice plan previously approved by the Court in the JBS settlement. (*See* ECF No. 631.) Namely, DPPs propose to the Court a plan of notice that comports with due process and provides reasonable notice to known and reasonably identifiable customers of Smithfield and the other Defendants pursuant to Rule 23. The class notice documents, consisting of the long form, email, and publication notice, comply with the requirements of Rule 23(c)(2)(B). (*See* Class Notice Documents, attached to the Schachter Decl. as Exhibits B through D.) The notice documents define the Settlement Class, describe the nature of the action, summarize the class claims, and explain the procedure for requesting exclusion

from the Settlement Class and objecting to the proposed Settlement. (*Id.*) The notice documents describe the terms of the Settlement Agreement and inform the Settlement Class members that there is no plan of distribution at this time. (*Id.*) The notice documents will provide the date, time and place of the Final Fairness Hearing (once that hearing is set by the Court) and inform Settlement Class Members that they do not need to enter an appearance through counsel, but may do so if they choose. (*Id.*)

As the Court has previously recognized, this proposed notice plan also comports with due process and Rule 23. The plan includes: (1) direct notice by U.S. mail and email to Class members who can be identified by reasonable effort, including but not limited to Defendants' customer lists; (2) publication of the summary notice in industry-related mailed and digital media; and (3) the posting of notice on a case website to be created. (Schachter Decl. ¶¶ 6-10.) Since the Settlement Class members in this case purchased Pork directly from Defendants, DPPs already have obtained the mailing addresses for the vast majority of Settlement Class members from Defendants' customer lists and will rely to the extent practicable on direct mail and email to Class Members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs have retained A.B. Data Ltd., an experienced national class action notice provider and claims administrator and Court-appointed administrator of the JBS settlement, to administer the notice plan. (Schachter Decl. ¶¶ 1-2, Ex. A; ECF No. 631.) A.B. Data will mail the long form notice via first-class U.S. mail to Settlement Class members whose addresses can be identified with reasonable effort through Defendants' records. (*Id.* ¶¶ 6-10.) A.B. Data will also send the email notice to all Settlement Class

members for whom email addresses can be identified with reasonable effort in the class list data. (*Id.*) The email notice will provide Settlement Class Members with an electronic link to the settlement website, where they can obtain more information including the long form notice and the Settlement Agreement. (*Id.*) This direct mail and email notice should reach the vast majority of Settlement Class members. (*Id.* ¶ 15.)

A.B. Data further plans to supplement the direct mail and email notice via publication notice, to reach those remaining Settlement Class members that do not receive direct notice of the Settlement. This will include both print and digital media components. (*Id.* ¶ 10.)

A.B. Data will also continue to host the settlement website, providing additional information and documents, and a toll-free number for frequently asked questions and requests for mailing of further information. (*Id.* ¶¶ 11-13.) The website and call center are available in both English and Spanish.

This type of notice plan, which relies on direct notice and publication notice, has been successfully implemented in direct purchaser class actions, including in the instant case following preliminary approval of the JBS settlement. (*See id.* ¶ 6; *see also* Bruckner Decl. ¶ 11.) DPPs respectfully submit that this multifaceted, comprehensive notice plan (which was successfully implemented for the JBS settlement) provides the best notice practicable under the circumstances of this case and fully satisfies Rule 23 and due process requirements. *See Petrovic*, 200 F.3d at 1153; *DeBoer*, 64 F.3d at 1176; Schachter Decl. ¶ 15. Interim Co-Lead Class Counsel requests that the Court approve the proposed form and manner of notice to the Settlement Class as set forth in the Notice Plan.

## VI.   THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING

The last step in the settlement approval process is the Final Fairness Hearing, at which the Court may hear all evidence necessary to evaluate and determine whether to grant final approval to the proposed Settlement. At that hearing, proponents of the Settlement may explain and describe their terms and conditions and offer argument in support of the Settlement's approval, and members of the Settlement Class or their counsel may be heard regarding the proposed Settlement if they choose. DPPs propose the following schedule of events necessary for disseminating notice to the Settlement Class and the Final Fairness Hearing.

| DATE | EVENT |
| --- | --- |
| Within 30 days after entry of the preliminary approval order. | Settlement Administrator to provide direct mail and email notice, and commence implementation of the publication notice plan. |
| 60 days after the commencement of Notice. | Last day for Settlement Class members to request exclusion from the Settlement Class; for Settlement Class members to object to the Settlement; and for Settlement Class members to file notices to appear at the Final Fairness Hearing. |
| 7 days after last day to request exclusion from the Settlements. | Co-Lead Counsel to provide Smithfield with a list of all persons and entities who have timely and adequately requested exclusion from the Settlement Class. |
| 14 days before Final Settlement Fairness Hearing. | Co-Lead Counsel shall file a motion for final approval of the Settlement and all supporting papers, and Co-Lead Counsel and Smithfield may respond to any objections to the proposed Settlement. |

| DATE | EVENT |
|---|---|
| 60 days after last day to request exclusion from the Settlement, or as soon thereafter as the matter may be heard by the Court. | Final Fairness Hearing.[6] |

## VII.   CONCLUSION

For these reasons, DPPs respectfully request that the Court preliminary approve the Settlement with Smithfield, preliminary certify the Settlement Class, approve the proposed notice plan, and enter a schedule for the dissemination of notice to the Settlement Class and Final Fairness Hearing for the Settlement.

---

[6] Under the terms of the Settlement Agreement (¶ 25), within 10 days of the filing of this motion for preliminary approval, Smithfield shall serve appropriate Federal and State officials with all required materials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Under the Act, this Court may not enter an order giving final approval of the proposed settlement earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under 28 U.S.C. § 1715 (b). DPPs' proposed timetable and "no sooner than" Final Settlement Fairness Hearing date proposed above will allow time for the notice required under the Act.

Date: July 14, 2021

*/s/ W. Joseph Bruckner*
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Joseph C. Bourne (MN #0389922)
Arielle S. Wagner (MN #0398332)
Craig S. Davis (MN #0148192)
Simeon A. Morbey (MN #0391338)
Stephen M. Owen (MN # 0399370)
Stephen J. Teti (*Pro Hac Vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
jcbourne@locklaw.com
aswagner@locklaw.com
csdavis@locklaw.com
samorbey@locklaw.com
smowen@locklaw.com
sjteti@locklaw.com

Clifford H. Pearson (*Pro Hac Vice*)
Daniel Warshaw (*Pro Hac Vice*)
Thomas J. Nolan (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T:  (818) 788-8300
F:  (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
tnolan@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Bruce L. Simon (*Pro Hac Vice*)
Benjamin E. Shiftan (*Pro Hac Vice*)
Neil Swartzberg (*Pro Hac Vice*)
**PEARSON, SIMON & WARSHAW, LLP**
350 Sansome Street, Suite 680
San Francisco, CA 94104
T:  (415) 433-9000
F:  (415) 433-9008
bsimon@pswlaw.com
bshiftan@pswlaw.com
nswartzberg@pswlaw.com

Melissa S. Weiner (MN #0387900)
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
T: (612) 389-0600
F: (612) 389-0610
mweiner@pswlaw.com

*Interim Co-Lead Class Counsel for the*
*Direct Purchaser Plaintiff Class*