# EXHIBIT A



**Headquarters**
600 A.B. Data Drive
Milwaukee, WI 53217
P: 866-217-4470
F: 414-961-3099

**New York**
One Battery Park Plaza
32nd Floor
New York, NY 10004
P: 646-290-9137

**Washington DC**
915 15th St., NW, Ste. 300
Washington, DC 20005
P: 202-618-2900
F: 202-462-2085

**Florida**
5080 PGA Boulevard, Ste. 209
Palm Beach Gardens, FL 33418
P: 561-336-1801
F: 561-252-7720

**Israel**
19 Weissburg Street
Tel Aviv 69358
Israel
P: +972 (3) 720-8782



# CAPABILITIES

## About A.B. Data

Founded in 1981, **A.B. Data has earned a reputation** for expertly managing the complexities of class action administration in consumer, antitrust, securities, Securities and Exchange Commission (SEC) enforcement actions, and ERISA, Attorneys General, employment, civil rights, insurance, environmental, wage and hour, and other class action cases. **A.B. Data's work in all aspects of class action administration** has been perfected by decades of experience in hundreds of class action cases involving billions of dollars in total settlements. Dedicated professionals deliver **A.B. Data's all-inclusive services,** working in partnership with its clients to administer their class action cases effectively, efficiently, and affordably, regardless of size or scope.

**A.B. Data offers unmatched resources and capacity** and is capable of expertly administering any class action notice, settlement, and/or fund administration. Whether notifying millions of class members in the United States or throughout the world, processing millions of claims, distributing payments digitally via A.B. Data's Digital PayPortal℠, or printing and distributing millions of checks, **A.B. Data matches its talent and technology** to the specific needs of its clients, delivering unparalleled service on time and on budget without ever compromising quality.

## Location, Ownership Structure

**A.B. Data is an independently owned,** 39-year-old, Milwaukee, Wisconsin-based company that prides itself on its vast expertise and industry-leading innovations. We like to remind our clients and partners that we're not just a class action administration company, but a group of experienced, dedicated professionals who believe that relationships are just as important as the accurate and timely management of class action administrations. In other words, we are people who do business with people.

## Services

**Every A.B. Data client is deserving of the best job we can put forward.** A.B. Data makes class action administration easy for our clients with clarity, convenience, and efficiency. Our priority is to navigate the intricacies of our clients' matters and deliver successful results by using our solid expertise, advanced technology, and top-quality products and services. We pay attention to the details and get it right the first time.

We aim to provide our clients the full experience of a truly collaborative working relationship. It is why we believe much of our success originates from our philosophy of "people doing business with people."



# Services

## All Digital — From Notice to Distribution

**A.B. Data is uniquely positioned to design, implement, and maintain notice and settlement administration programs** using an innovative, "all-digital" approach that replaces the more traditional and less efficient methods of administration, such as newspaper ads, mailed notices, and paper checks. Many of our recent proposed notice plans and claim programs utilize the latest technologies such as microtargeted digital ads for notice, streamlined online claims, and distributing settlement funds electronically using a digital paywall. These methods provide significant cost savings, are consistent with the amendments to Rule 23 that are now in effect, and importantly provide much-needed alignment of class action notice and administration with current consumer behaviors.

## Pre-Settlement Consultation

**The pre-settlement consultation is a collaborative session** designed to help A.B. Data clients prepare a stronger case. Our support teams simplify the task of sorting through a maze of documents during investigation and discovery, streamlining the process and preserving fund assets. From there, we assist with fully interactive media packages for court presentations and settlement negotiations. A.B. Data works closely with our clients, offering expert testimony on documents, processing, class and notice manageability, and proposed plans of allocation.

## Media Services

**A.B. Data continues to earn our reputation** as the early innovator in integrating advanced micro-targeting techniques, including contextual targeting, behavioral targeting, and predictive modeling. Coupled with inventive digital media strategies to drive claims, case-specific banner ad development, class member research, and comScore analysis services, our multi-tiered media programs are designed to cost-effectively deliver notice to potential class members and increase claims rates.

## Notice Administration

**In A.B. Data, clients have a comprehensive resource** with a depth of experience in direct notice. Our compliance and understanding of Rule 23 of the Federal Rules of Civil Procedure are crucial in meeting the "plain language" legal requirements for any campaign. From our sophisticated digital media capabilities and extensive global experience with class member research, our experts create notice documents that are easily understandable and cost-efficient to produce. We consult with our clients to deliver notice documents from multi-page, mailed, or emailed notice packets to concise postcards that establish the most influential and cost-effective means of communicating with potential claimants.



## Claims Processing

**A.B. Data continues to bring game-changing technologies** to improve the speed and precision in claims processing. Our robust system for online claims submissions allows us to meticulously verify data and documentation, preserve and authenticate claims, and calculate and verify settlement amounts. In addition, our data network infrastructure includes on-site data storage, backup, contingency plans, and security for electronic and hard copy claim filings. It is all part of a total commitment to be the most innovative and comprehensive resource in the industry. At A.B. Data, we take pride in having the in-house capacity to process millions of pages, as well as the organizational integrity to treat every claim as if it were the only one.

## Contact Center

**A.B. Data's Contact Center is comprised of a full staff** that is trained on and equipped with online and telecommunication systems to monitor and connect with class members. Associates routinely monitor class member communication for all class action administrations, including antitrust, consumer, and securities.

Utilizing monitoring software, associates watch multiple social media channels simultaneously, allowing for instantaneous routing of inquiries and interaction with claimants. Detailed and concise analytical reports outlining Contact Center activities are always provided.

Our Contact Center and case websites are capable of handling millions of class member engagements, as recently displayed in a campaign which garnered over 1.2 million website visits in two months and had more than 72,500 Facebook engagements. Facebook comments and threads are monitored and claimants are guided to the website for more information. Google AdWords and display advertising have also brought hundreds of thousands of visitors to various case websites.

A.B. Data's Contact Center also has Spanish language associates in-house and we can accommodate any language, given proper lead time. Traditional call center facilities are also available, if needed.

## Case Websites

**We offer a state-of-the-art technology platform** that supports every step of our class action administration process. Our expert marketing professionals design customized case-specific websites that provide potential class members easy access to case information, critical documents, important deadlines, as well as the capability to file claim forms and register for future mailings about the case. Claimants can use the website to elect to receive their settlement payments by mail or by one of several digital payment options, all accessible by mobile devices.

## Settlement Fund Distribution

**From complete escrow services to establishment of qualified settlement funds,** check printing and mailing, electronic cash or stock distribution and tax services, A.B. Data has always provided a full-service solution to Settlement Fund Distribution. Our IT team has decades of experience in developing and implementing fast, secure databases and claims administration systems that ensure class members receive the correct amount in their settlement disbursement. Today's digital capabilities allow even greater convenience for class members. In certain instances, claimants can now elect to instantaneously receive settlement payments through popular digital-payment options, such as PayPal, Amazon, and virtual debit cards.



# A.B. Data's Leadership

 **A.B. Data's administration team** is composed of the following key executives, who collectively have decades of experience settling and administering class actions:

**Bruce A. Arbit, Co-Managing Director** and one of the founders of the A.B. Data Group, serves as Chairman of the Board and oversees the day-to-day operations of the A.B. Data Group of companies, employing almost 400 people in the United States and Israel. Mr. Arbit is also  Chairman of the Board of Integrated Mail Industries, Ltd. and has served as a member of the Board of Directors of University National Bank and State Financial Bank. He is the past Chairman of Asset Development Group, Inc., Home Source One, and American Deposit Management and is a member of the National Direct Marketing Association, the Direct Marketing Fundraising Association, and the American Association of Political Consultants. He was named 1996 Direct Marketer of the Year by the Wisconsin Direct Marketing Association.

A.B. Data's work in class action litigation support began with the Court selecting A.B. Data to oversee the restitution effort in the now-famous Swiss Banks Class Action Case, the International Commission on Holocaust Era Insurance Claims, and every other Holocaust Era Asset Restitution program, in which it was the company's job to identify, contact, and inform survivors of the Holocaust. A.B. Data delivered by reaching out to millions of people in 109 countries who spoke more than 30 languages. Since those days, Mr. Arbit has guided the class action division through phenomenal growth and success. Today, A.B. Data manages hundreds of administrations annually that distributes billions of dollars to class members.

**Thomas R. Glenn, President**, Mr. Glenn's management of A.B. Data's Class Action Administration Company includes designing and implementing notice plans and settlement administration programs for antitrust, securities, and Securities and Exchange Commission settlements and SEC disgorgement fund distributions, as well as consumer, employment, insurance, and civil rights class actions. Mr. Glenn previously served as Executive Vice President at Rust Consulting and has more than 30 years of executive leadership experience.

**Eric Miller, Senior Vice President**, as a key member of A.B. Data's Class Action Administration Leadership Team, oversees the Case Management Department and supervises the operations and procedures of all of A.B. Data's class action administration cases. Mr. Miller is recognized in the class action administration industry as an expert on securities, SEC, consumer, product recall, product liability, general antitrust, pharmaceutical antitrust, and futures contract settlements, to name a few settlement types. Prior to joining A.B. Data, Mr. Miller served as the Client Service Director for Rust Consulting, responsible there for its securities practice area. He has more than 20 years of operations, project management, quality assurance, and training experience in the class action administration industry. In addition, Mr. Miller manages A.B. Data's office in Palm Beach Gardens, Florida.

**Ravin Raj, Vice President-Operations**, has more than 15 years of experience in class action claims management, document management, and insurance claims remediation. Mr. Raj's responsibilities for A.B. Data's Class Action Administration Company include heading the shared operations center, which includes mailroom, contact center, claims processing, quality control, and information systems operations. His areas of expertise include business process development, strategic/tactical operations



planning and implementation, risk analysis, budgeting, business expansion, growth planning and implementation, cost reduction, and profit, change, and project management. In his previous position, as Assistant Vice President-Operations at RR Donnelley India Pvt. Ltd., in Chennai, India, he led a team of more than 400 employees with the capacity to process more than 4 million claims a year, servicing several leading claims administrators. Mr. Raj managed six of the top ten securities class action settlements, by settlement value, including several multibillion-dollar settlements. His background also includes work as a Project Lead for iMarque Solutions Pvt. Ltd., Chennai, India.

**Linda V. Young, Vice President, Media**, oversees the Media Department and is responsible for the direction, development, and implementation of media notice plans for A.B. Data's clients. Ms. Young is an expert in media planning using most forms of advertising including digital, print, and broadcast. She developed some of the first Court-approved Notice Plans using an all-digital approach for cases such as *In re Vizio Consumer Privacy Litigation*, *In re Qualcomm Antitrust Litigation*, and *In re Google Inc. Street View Electronic Communications Litigation*, among others. Her ability to create notice plans that efficiently extend reach and drive class member engagement and participation has made a significant impact across many types of administrations. Ms. Young has developed and implemented national and international print, digital-, and earned-media notice plans for some of the industry's leading pharmaceutical, insurance, and securities class action cases, including Libor-based Financial Instruments Antitrust Litigation, Cipro Antitrust Cases I and II, Euribor and Euroyen-based Derivatives cases, and many more. She has more than 20 years of general market and ethnic media advertising and media planning experience, having managed advertising for brands such as Georgia-Pacific, American Express, Denny's, and Coca-Cola USA.

**Eric Schachter, Vice President**, is a member of A.B. Data's Class Action Administration Leadership Team. He has over 15 years of experience in the legal settlement administration services industry. Mr. Schachter's responsibilities include ensuring successful implementation of claims administration services for A.B. Data's clients in accordance with settlement agreements, court orders, and service agreements. He also works closely with Project Managers to develop plans of administration to provide the highest level of effective and efficient delivery of work product. A frequent speaker on claims administration innovation and best practices at industry events nationwide, Mr. Schachter has a bachelor's degree in sociology from Syracuse University, earned his law degree at Hofstra University School of Law, and was previously an associate at Labaton Sucharow LLP in New York City.

**Paul Sauberer, Director of Quality Assurance**, is responsible for overseeing quality assurance and process management, working diligently to mitigate risk, ensure exceptional quality control, and develop seamless calculation programming. Mr. Sauberer brings more than 20 years of experience as a quality assurance specialist with a leading claims-processing company where he developed extensive knowledge in securities class action administration. He is recognized as the class action administration industry's leading expert on claims and settlement administrations of futures contracts class actions.

**Justin Parks, Business Development Director**, provides expertise in legal marketing strategies and brings extensive experience in client relations to A.B. Data's business development team. Previously, Mr. Parks served the legal industry as part of the marketing group at a major class action administration firm where he successfully managed and consulted on notice plans and other administrative aspects in hundreds of cases with an estimated value of several hundred million dollars in settlement funds distributed to class members, including some of the largest Employment settlements in history. Mr. Parks is uniquely experienced in Data Privacy matters, having consulted with clients on numerous matters stemming from data breaches as well as violations of the Illinois Biometric Information Privacy Act (BIPA), several of which resulted in the first ever Biometric Privacy related settlements in history. Mr. Parks' knowledge and understanding of the class action industry, as well as his client relationship skills, expand A.B. Data's capacity to achieve its business development and marketing goals effectively.

**Camron Assadi, Vice President, Digital Marketing**, has more than 20 years of experience in digital marketing leadership, which includes directing and overseeing all aspects of the company's digital notice plans and campaigns across multiple networks and platforms. Mr. Assadi is an expert in online advertising and social media campaigns including Facebook, Google Ads, LinkedIn, Twitter, Amazon, Pinterest, Verizon Media, and others. He holds certifications in Google Ads Display and Search, and is a Facebook Certified Digital Marketing Associate. His ability to create and optimize business opportunities, extend brand reach, and capture the interest and support of local and international audiences has proven him an invaluable leader of A.B. Data's effort to maximize and streamline class member notice and engagement. Mr. Assadi has managed the notice plans for cases that have garnered millions of unique visitors and social media interactions. He holds a BS in Psychology from the University of Utah.

**Adam Walter, PMP, Senior Project Manager**, has nearly fifteen years of experience managing the administration of securities class action settlements and SEC disgorgements totaling more than $4 billion. He has managed settlement programs in engagements involving some of the largest securities class action settlements and is a key contributor to the development of administration strategies that meet the evolving needs of our clients. His responsibilities include developing case administration strategies to ensure that all client and court requirements and objectives are met, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to class counsel, overseeing notice dissemination programs, implementing complex claims-processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Walter holds a bachelor's degree in business administration from Florida Atlantic University, Boca Raton, Florida. He also has been an active member of the Project Management Institute since 2010 and is PMP®-certified.

**Steve Straub, Senior Project Manager**, joined A.B. Data in February 2012. As a Senior Project Manager, his responsibilities include developing case administration strategies, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to case counsel, overseeing notice dissemination programs, implementing complex claims processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Straub's experience in administering class action settlements includes securities, consumer, and antitrust settlements, with a primary focus on antitrust cases. He holds a Juris Doctor degree from Seton Hall University School of Law, Newark, New Jersey.

**Patty Nogalski, Project Manager**, is a veteran in the equity and securities industry and now contributes her talents to A.B. Data as a Project Manager specializing in class action administrations for securities litigation. Ms. Nogalski brings to A.B. Data many new ideas, methods, and technologies to achieve project efficiency and organizational integration. For much of her twenty-year career, she served as Vice President Equity Trading for BMO Global Asset Management Corporation where she managed equity trading for mutual funds and institutional accounts. She works closely with Eric Miller and the project management team to deliver strategies that meet the unique needs of securities and commodities settlements. Ms. Nogalski attended the University of Wisconsin-Milwaukee where she earned her Bachelor of Arts in Communications, and has also obtained her Financial Industry Regulatory Authority (FINRA) Series 7, Series 63, and Series 65 licenses.

**Eric Schultz, MCSE, Information Technology Manager and Security Team Chairperson**, has been with A.B. Data for more than 19 years, and is currently responsible for overseeing all information technology areas for all A.B. Data divisions across the United States and abroad, including network infrastructure and architecture, IT operations, data security, disaster recovery, and all physical, logical, data, and information systems security reviews and audits required by our clients or otherwise. As a Microsoft Certified Systems Engineer (MCSE) with more than 25 years of experience in information technology systems and solutions, Mr. Schultz has developed specializations in network security, infrastructure, design/architecture, telephony, and high-availability network systems.



## Secure Environment



**A.B. Data's facilities provide the highest level of security** and customization of security procedures, including:

- A Secure Sockets Layer server
- Video monitoring
- Limited physical access to production facilities
- Lockdown mode when checks are printed
- Background checks of key employees completed prior to hire
- Frequency of police patrol – every two hours, with response time of five or fewer minutes
- Disaster recovery plan available upon request

## Data Security



**A.B. Data is committed to protecting the confidentiality, integrity, and availability of personal identifying information** and other information it collects from our clients, investors, and class members and requires that its employees, subcontractors, consultants, service providers, and other persons and entities it retains to assist in distributions do the same. A.B. Data has developed an Information Security Policy, a suite of policies and procedures intended to cover all information security issues and bases for A.B. Data, and all of its divisions, departments, employees, vendors, and clients. A.B. Data has also recently taken the necessary, affirmative steps toward compliance with the EU's General Data Protection Regulation and the California Consumer Privacy Act.

A.B. Data has a number of high-profile clients, including the Securities and Exchange Commission (SEC), the United States Department of Justice, the Attorneys General of nearly all 50 states, other agencies of the United States government, and the Government of Israel, as well as direct banking and payment services companies with some of the most recognized brands in United States financial services and some of the largest credit card issuers in the world.

We are therefore frequently subjected to physical, logical, data, and information systems security reviews and audits. We have been compliant with our clients' security standards and have also been determined to be compliant with ISO/IEC 27001/2 and Payment Card Industry (PCI) data-security standards, the Gramm-Leach-Bliley Act (GLB) of 1999, the National Association of Insurance Commissioners (NAIC) Regulations, the Health Insurance Portability and Accountability Act (HIPAA) of 1996, and the Health Information Technology for Economic and Clinical Health Act (HITECH).

The Government of Israel has determined that A.B. Data is compliant with its rigorous security standards in connection with its work on Project HEART (Holocaust Era Asset Restitution Taskforce).

A.B. Data's fund distribution team has been audited by EisnerAmper LLP and was found compliant with class action industry standards and within 99% accuracy. EisnerAmper LLP is a full-service advisory and accounting firm and is ranked the 15th-largest accounting firm in the United States.



In addition, as part of PCI compliance requirements, A.B. Data has multiple network scans and audits from third-party companies, such as SecurityMetrics and 403 Labs, and is determined to be compliant with each of them.

## Fraud Prevention and Detection



**A.B. Data is at the forefront of class action fraud prevention.**

A.B. Data maintains and utilizes comprehensive proprietary databases and procedures to detect fraud and prevent payment of allegedly fraudulent claims.

We review and analyze various filing patterns across all existing cases and claims. Potential fraudulent filers are reported to our clients as well as to the appropriate governmental agencies where applicable.

## Representative Class Action Engagements

**A.B. Data and/or its team members have successfully administered** hundreds of class actions, including many major cases. Listed below are just some of the most representative or recent engagements.

### Consumer & Antitrust Cases

- *Phil Shin, et al. v. Plantronics, Inc.*
- *In re: Qualcomm Antitrust Litigation*
- *In re Resistors Antitrust Litigation*
- *The Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc. and Sandoz Inc.* ("Lovenox Antitrust Matter")
- *William Kivett, et al. v. Flagstar Bank, FSB, and DOES 1-100, inclusive*
- *Adelphia, Inc. v. Heritage-Crystal Clean, Inc.*
- *LLE One, LLC, et al. v. Facebook, Inc.*
- *Bach Enterprises, Inc., et al. v. Advanced Disposal Services South, Inc., et al.*
- *JWG Inc., et al. v. Advanced Disposal Services Jacksonville, L.L.C., et al.*
- *State of Washington v. Motel 6 Operating L.P. and G6 Hospitality LLC*
- *In re GSE Bonds Antitrust Litigation*
- *Wave Lengths Hair Salons of Florida, Inc., et al. v. CBL & Associates Properties, Inc., et al.*
- *In re Loestrin 24 FE Antitrust Litigation*
- *Office of the Attorney General, Department of Legal Affairs, State of Florida v. Pultegroup, Inc. and Pulte Home Company, LLC*
- *In re Cigna-American Specialties Health Administration Fee Litigation*
- *In re: Intuniv Antitrust Litigation*
- *High Street, et al. v. Cigna Corporation, et al.*
- *Gordon Fair, et al. v. The Archdiocese of San Francisco, San Mateo, and Marin County*



- *Bizzarro, et al. v. Ocean County Department of Corrections, et al.*
- *Meeker, et al. v. Bullseye Glass Co.*
- *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance Company*
- *Tennille v. Western Union Company - Arizona*
- *Garner, et al. v. Atherotech Holdings, Inc.* and *Garner, et al. v. Behrman Brothers IV, LLC, et al.*
- *Robinson, et al. v. Escallate, LLC*
- *Josefina Valle and Wilfredo Valle, et al. v. Popular Community Bank f/k/a Banco Popular North America*
- *Vision Construction Ent., Inc. v. Waste Pro USA, Inc. and Waste Pro USA, Inc. and Waste Pro of Florida, Inc.*
- *Plumley v. Erickson Retirement Communities, et al.*
- *In re London Silver Fixing, Ltd. Antitrust Litigation*
- *In re EpiPen Marketing, Sales Practices and Antitrust Litigation*
- *Ploss v. Kraft Foods Group, Inc. and Mondelēz Global LLC*
- *In re Mexican Government Bonds Antitrust Litigation*
- *In re Ready-Mixed Concrete Antitrust Litigation*
- *In re: Marine Hose Antitrust Litigation*
- *Iowa Ready Mixed Concrete Antitrust Litigation*
- *In re Potash Antitrust Litigation (II)*
- *In re Evanston Northwestern Healthcare Corp. Antitrust Litigation*
- *In re Polyurethane Foam Antitrust Litigation*
- *In re LIBOR-Based Financial Instruments Antitrust Litigation*
- *In re Lorazepam and Clorazepate Antitrust Litigation*
- *In re Cardizem CD Antitrust Litigation*
- *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.*
- *In re Lupron Marketing and Sales Practices Litigation*
- *In re Terazosin Hydrochloride Antitrust Litigation*
- *In re Warfarin Sodium Antitrust Litigation*
- *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation*
- *Carpenters and Joiners Welfare Fund, et al. v. SmithKline Beecham*
- *New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, et al. v. Purdue Pharma L.P.*
- *In Re Pharmaceutical Industry Average Wholesale Price Litigation*
- *Alma Simonet, et al. v. SmithKline Beecham Corporation, d/b/a GlaxoSmithKline*
- *In re Relafen Antitrust Litigation*
- *In Re Remeron Direct Purchaser Antitrust Litigation*
- *In re TriCor Indirect Purchasers Antitrust Litigation*
- *Nichols, et al., v. SmithKline Beecham Corporation*
- *In re: DDAVP Indirect Purchaser Antitrust Litigation*

## Securities Cases

- *Laydon v. Mizuho Bank, Ltd., et al.*
- *Lomingkit, et al. v. Apollo Education Group, Inc., et al.*
- *In re Caraco Pharmaceutical Laboratories, Ltd. Shareholder Litigation*
- *Norfolk County Retirement System, et al. v. Community Health Systems, Inc., et al.*
- *Chester County Employees' Retirement Fund v. KCG Holdings, Inc., et al.*
- *Oklahoma Law Enforcement Retirement System, et al. v. Adeptus Health Inc., et al.*
- *Di Donato v. Insys Therapeutics, Inc., et al.*
- *Lundgren-Wiedinmyer, et al. v. LJM Partners, Ltd, et al.*



- *Martin, et al. v. Altisource Residential Corporation, et al.*
- *Stephen Appel, et al. v. Apollo Management, et al.*
- *In re Medley Capital Corporation Stockholder Litigation*
- *Forman, et al. v. Meridian BioScience, Inc., et al.*
- *Public Employees' Retirement System of Mississippi, et al. v. Endo International PLC, et al.*
- *In Re Flowers Foods, Inc. Securities Litigation*
- *Jiangchen, et al. v. Rentech, Inc., et al.*
- *In re Liberty Tax, Inc. Stockholder Litigation*
- *In re RH, Inc. Securities Litigation*
- *Lazan v. Quantum Corporation, et al.*
- *Nabhan v. Quantum Corporation, et al.*
- *Edmund Murphy III, et al. v. JBS S.A.*
- *Public Employees' Retirement System of Mississippi, et al. v. Sprouts Farmers Market, Inc., et al.*
- *In re Starz Stockholder Litigation*
- *Judith Godinez, et al. v. Alere Inc., et al.*
- *Rahman and Giovagnoli, et al. v. GlobalSCAPE, Inc., et al.*
- *Arthur Kaye, et al. v. ImmunoCellular Therapeutics, Ltd., et al.*
- *In re CPI Card Group Inc. Securities Litigation*
- *Daniel Aude, et al. v. Kobe Steel, Ltd., et al.*
- *In re Quality Systems, Inc. Securities Litigation*
- *Cooper, et al. v. Thoratec Corporation, et al.*
- *Washtenaw County Employees' Retirement System, et al. v. Walgreen Co., et al.*
- *Elkin v. Walter Investment Management Corp., et al.*
- *In Re CytRx Corporation Securities Litigation*
- *Ranjit Singh, et al. v. 21Vianet Group, Inc., et al.*
- *In re PTC Therapeutics, Inc. Securities Litigation*
- *Securities and Exchange Commission v. Mark A. Jones*
- *In re Sequans Communications S.A. Securities Litigation*
- *In re Henry Schein, Inc. Securities Litigation*
- *Ronge, et al. v. Camping World Holdings, Inc., et al.*
- *Oklahoma Firefighters Pension & Retirement System v. Lexmark International, Inc.*
- *Christakis Vrakas, et al. v. United States Steel Corporation, et al.*
- *Emerson et al. v. Mutual Fund Series Trust, et al.* ("Catalyst")
- *In re Fannie Mae 2008 Securities Litigation*
- *In re Anadarko Petroleum Corporation Class Action Litigation*
- *Ge Dandong, et al., v. Pinnacle Performance Limited, et al.*
- *In Re: Rough Rice Commodity Litigation*
- *Xuechen Yang v. Focus Media Holding Limited et al.*
- *In re Massey Energy Co. Securities Litigation*
- *In re Swisher Hygiene, Inc.*
- *The City of Providence vs. Aeropostale, Inc., et al.*
- *In re Metrologic Instruments, Inc. Shareholders Litigation*
- *Public Pension Fund Group v. KV Pharmaceutical Company et al.*
- *Pension Trust Fund for Operating Engineers, et al. v. Assisted Living Concepts, Inc., et al.*
- *In re Lehman Brothers Equity/Debt Securities Litigation*
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Physical Action)
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Futures Action)
- *In re General Electric Co. Securities Litigation*
- *In re CNX Gas Corporation Shareholders Litigation*
- *Oscar S. Wyatt, Jr. et al. v. El Paso Corporation, et al.*
- *In re Par Pharmaceutical Securities Litigation*



- *In re Par Pharmaceutical Companies, Inc. Shareholders Litigation*
- *In re Delphi Financial Group Shareholders Litigation*
- *In re SLM Corporation Securities Litigation*
- *In re Del Monte Foods Company Shareholder Litigation*
- *Leslie Niederklein v. PCS Edventures!.com, Inc. and Anthony A. Maher*
- *In re Beckman Coulter, Inc. Securities Litigation*
- *Michael Rubin v. MF Global, Ltd., et al.*
- *Allen Zametkin v. Fidelity Management & Research Company, et al.*
- *In re BP Prudhoe Bay Royalty Trust Securities Litigation*
- *Police and Fire Retirement System of the City of Detroit et al. v. SafeNet, Inc., et al.*
- *In re Limelight Networks, Inc. Securities Litigation*
- *In re Gilead Sciences Securities Litigation*
- *In re ACS Shareholder Litigation, Consolidated C.A. No. 4940-VCP*
- *Lance Provo v. China Organic Agriculture, Inc., et al.*
- *In re LDK Solar Securities Litigation*

### Labor & Employment Cases

- *Talisa Borders, et al. v. Wal-mart Stores, Inc.*
- *Reale v. McClain Sonics Inc., et al.*
- *Larita Finisterre and Songhai Woodard, et al. v. Global Contact Services, LLC*
- *Adebisi Bello v. The Parc at Joliet*
- *Garcia, et al. v. Vertical Screen, Inc.*
- *Brook Lemma and Matthieu Hubert, et al. v. 103W77 Partners LLC, et al. ("Dovetail Settlement")*
- *American Federation of Government Employees, Local 1145 v. Federal Bureau of Prisons, U.S. Penitentiary, Atlanta, Georgia*
- *Lisa Ferguson, Octavia Brown, et al. v. Matthew G. Whitaker, Acting AG, DOJ Bureau of Prisons ("USP Victorville")*
- *American Federation of Government Employees, Local 2001 v. Federal Bureau of Prisons, Federal Correctional Institution, Fort Dix, New Jersey*
- *American Federation of Government Employees, Local 506 v. U.S. Department of Justice, Federal Bureau of Prisons, U.S. Penitentiary Coleman II, Coleman, Florida*
- *Vargas v. Sterling Engineering*
- *Rosenbohm v. Verizon*
- *Alex Morgan, et al. v. United States Soccer Federation, Inc.*
- *Iskander Rasulev v. Good Care Agency, Inc.*
- *Kyndl Buzas, et al., v. Phillips 66 Company and DOES 1 through 10*
- *American Federation of Government Employees, Local 408 v. U.S. Dept. of Justice, Federal Bureau of Prisons, Federal Correctional Complex, Butner, NC*
- *In re 2014 Avon Products, Inc. ERISA Litigation*
- *In re Eastman Kodak ERISA Litigation*
- *Taronica White, et al. v. Attorney General Loretta Lynch, Department of Justice*
- *Lisa Ferguson, et al. v. Acting Attorney General Matthew Whitaker, Department of Justice*
- *Melissa Compere v. Nusret Miami, LLC, et al.*
- *Abelar v. American Residential Services, L.L.C., Central District of California*
- *Flores, et al. v. Eagle Diner Corp., et al., Eastern District of Pennsylvania*
- *Michael Furman v. Godiva Chocolatier, Inc., 15th Judicial Circuit, Palm Beach County, Florida*
- *Finisterre et. al v. Global Contact Services, LLC, New York State Supreme Court, Kings County*
- *McGuire v. Intelident Solutions, LLC, et al., Middle District of Florida, Tampa Division*
- *Duran De Rodriguez, et al. v. Five Star Home Health Care Agency, Inc. et al., Eastern District of New York*



## Data Breach/BIPA Cases

- *In re: Vizio, Inc. Consumer Privacy Litigation*
- *In re: Google, Inc. Street View Electronic Communications Litigation*
- *Devin Briggs and Bobby Watson, et al. v. Rhinoag, Inc.* ("Briggs Biometric Settlement")
- *Trost v. Pretium Packaging L.L.C.*

## Telephone Consumer Protection Act (TCPA) Cases

- *Lowe and Kaiser, et al. v. CVS Pharmacy, Inc., et al.*
- *Johansen v. HomeAdvisor, Inc., et al.*
- *Charvat, et al. v. National Holdings Corporation*
- *Hopkins, et al. v. Modernize, Inc.*
- *Diana Mey vs. Frontier Communications Corporation*
- *Matthew Donaca v. Dish Network, L.L.C.*
- *Matthew Benzion and Theodore Glaser v. Vivint, Inc.*
- *John Lofton v. Verizon Wireless (VAW) LLC, et al.*
- *Lori Shamblin v. Obama for America et al.*
- *Ellman v. Security Networks*

# For More Information

For more detailed information regarding A.B. Data's experience, services, or personnel, please see our website at **www.abdataclassaction.com**

# EXHIBIT B

<u>UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA</u>

# If you purchased any Pork product directly from a Pork producer for use or delivery in the United States from January 1, 2009, through January 12, 2021, a class action settlement may affect your rights.

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- A new Settlement has been reached in a class action antitrust lawsuit filed on behalf of Direct Purchaser Plaintiffs against Defendant Smithfield Foods, Inc. and related or affiliated entities ("Smithfield" or "Settling Defendant"). This Settlement between the Direct Purchaser Plaintiffs and Smithfield only applies to Smithfield and does not dismiss claims against other Defendants in the case entitled *In re Pork Antitrust Litigation*, D. Minn. Case No. 0:18-cv-01776.

- If approved by the Court, the Settlement will resolve a lawsuit over whether Smithfield combined and conspired in restraint of trade, the purpose and effect of which was to suppress competition and to allow Smithfield and other Pork producers to charge supra-competitive prices for Pork products during the Settlement Class Period, in violation of federal law. If approved, the Settlement will avoid litigation costs and risks to Direct Purchaser Plaintiffs and Smithfield, and will release Smithfield from liability to members of the Settlement Class.

- The Settlement requires Smithfield to pay up to $83,000,000.  In addition to this monetary payment, Smithfield has agreed to provide specified cooperation in the Direct Purchaser Plaintiffs' continued prosecution of the litigation.

- The Court has not decided whether Smithfield did anything wrong, and Smithfield denies any wrongdoing.

- Your legal rights are affected whether you act or don't act.  Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **ASK TO BE EXCLUDED** | This is the only option that allows you ever to be part of any *other* lawsuit against Smithfield concerning the Released Claims (as defined in the Settlement Agreement).  Requests for Exclusion must be postmarked or received by _____, 2021. |
| **OBJECT** | Write to the Court about why you don't like the Settlement.  Objections must be postmarked or received by _____, 2021. |
| **ATTEND THE FAIRNESS HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | You will remain part of the Settlement and you may participate in any monetary distribution to qualified purchasers. The Settlement will resolve your claims against Smithfield and you will give up your rights to sue or to continue suing Smithfield about the Released Claims (as defined in the Settlement Agreement).  You will be bound by the judgment. |

- Your options are explained in this notice. To ask to be excluded, you must act before **_____, 2021.**

## What This Notice Contains

What This Notice Contains ............................................................................................................. 2

BASIC INFORMATION ......................................................................................................................... 3

    1.  Why did I receive a notice? ................................................................................................. 3

    2.  What is this lawsuit about? ................................................................................................. 3

    3.  What is a class action, and who is involved? ...................................................................... 3

    4.  Why is there a Settlement? ................................................................................................. 3

    5.  What if I received previous communications regarding this lawsuit? ................................. 4

WHO IS IN THE CLASS? ...................................................................................................................... 4

    6.  Am I part of the Class? ....................................................................................................... 4

    7.  Are there exceptions to being included? ............................................................................. 4

    8.  I'm still not sure if I'm included. ....................................................................................... 4

THE BENEFITS OF THE SETTLEMENT AGREEMENT WITH SMITHFIELD ................................................. 4

    9.  What does the Settlement with Smithfield provide? .......................................................... 4

    10.  What are the Settlement benefits being used for? ............................................................. 5

    11.  What am I giving up by staying in the Settlement Class? ................................................... 5

    12.  What happens if I do nothing at all? ................................................................................... 5

EXCLUDING YOURSELF FROM THE SETTLEMENT ............................................................................... 5

    13.  How do I exclude myself from the Settlement with Smithfield? ........................................ 5

    14.  If I don't exclude myself, can I sue Smithfield for the same thing later? .......................... 6

OBJECTING TO THE SETTLEMENT ...................................................................................................... 6

    15.  How do I tell the Court that I don't like the Settlement? ................................................... 6

    16.  What is the difference between excluding myself and objecting? ...................................... 6

THE LAWYERS REPRESENTING YOU ................................................................................................. 6

    17.  Do I have a lawyer in this case? ......................................................................................... 6

    18.  How will the lawyers be paid? ........................................................................................... 7

THE COURT'S FAIRNESS HEARING ..................................................................................................... 7

    19.  When and where will the Court decide whether to approve the Settlement? ...................... 7

    20.  Do I have to come to the hearing? ..................................................................................... 7

    21.  May I speak at the hearing? ............................................................................................... 7

GETTING MORE INFORMATION .......................................................................................................... 7

    22.  How do I get more information about the Settlement? ....................................................... 7

## BASIC INFORMATION

### 1. Why did I receive a notice?

Defendants, including Smithfield, produce Pork products. Defendants' records show that you may have purchased Pork products directly from one or more of the Defendants for use or delivery in the United States between January 1, 2009, and January 12, 2021. The list of Defendants is in Section 2 below. The Court authorized this notice because you have a right to know about the Settlement of certain claims against Smithfield in this class action lawsuit and about your options before the Court decides whether to approve the Settlement between Smithfield and Direct Purchaser Plaintiffs. If the Court approves the Settlement, then after objections and appeals are resolved, you will be bound by the judgment and terms of the Settlement unless you exclude yourself from the Settlement Class before the deadline to request exclusion. This notice explains the lawsuit, the Settlement, and your legal rights.

### 2. What is this lawsuit about?

This class action is called *In re Pork Antitrust Litigation*, D. Minn. Case No. 0:18-cv-01776 and is pending in the United States District Court for the District of Minnesota. U.S. District Court Judge John R. Tunheim is in charge of this class action.

Direct Purchaser Plaintiffs allege that Defendants and their co-conspirators conspired and combined to fix, raise, maintain, and stabilize the price of Pork products, beginning at least as early as January 1, 2009, with the intent and expected result of increasing prices of Pork products in the United States, in violation of federal antitrust laws.

The Defendants and co-conspirators named in Direct Purchaser Plaintiffs' Third Consolidated Amended Complaint are producers of Pork products in the United States, as well as Agri Stats, Inc. In this notice, "Defendants" refers to JBS USA Food Company, JBS USA Food Company Holdings, Clemens Food Group, LLC, The Clemens Family Corporation, Hormel Foods Corporation, Indiana Packers Corporation, Seaboard Foods LLC, Smithfield Foods, Inc., Triumph Foods, LLC, Tyson Foods, Inc., Tyson Prepared Foods, Inc., Tyson Fresh Meats, Inc., and Agri Stats, Inc.[1]

Direct Purchaser Plaintiffs previously reached a settlement with one Defendant, JBS. The settlement with JBS is pending final approval by the Court. Direct Purchaser Plaintiffs have now reached a new proposed Settlement with Defendant Smithfield. Smithfield has denied all allegations of wrongdoing in this lawsuit and would allege numerous defenses to Plaintiffs' claims if the case against it were to proceed. The Direct Purchasers' case is proceeding against all other Defendants besides JBS and Smithfield. Those other Defendants may be subject to separate settlements, judgments, or class certification orders. If applicable, you will receive a separate notice regarding the progress of the litigation and any resolution of claims against other Defendants.

### 3. What is a class action, and who is involved?

In a class action lawsuit, one or more people or businesses called class representatives sue on behalf of others who have similar claims, all of whom together are a "class." Individual class members do not have to file a lawsuit to participate in the class action settlement or be bound by the judgment in the class action. One court resolves the issues for everyone in the class, except for those who exclude themselves from the class.

### 4. Why is there a Settlement?

The Court did not decide in favor of Direct Purchaser Plaintiffs or Smithfield. Direct Purchaser Plaintiffs believe they may have won at trial and possibly obtained a greater recovery. Smithfield believes the Direct Purchaser Plaintiffs may not have succeeded at class certification or won at a trial. But litigation involves risks to both sides, and therefore Direct Purchaser Plaintiffs and Smithfield have agreed to the Settlement. The Settlement requires Smithfield to pay money, as

---

[1] The Court dismissed Indiana Packers Corporation from this lawsuit with prejudice, but if you purchased Pork directly from Indiana Packers between January 1, 2009, and January 12, 2021, you are a member of the Settlement Class.

well as provide specified cooperation in the Direct Purchaser Plaintiffs' continued prosecution of the litigation. Direct Purchaser Plaintiffs and their attorneys believe the Settlement is in the best interests of all Settlement Class Members.

---

**5.  What if I received previous communications regarding this lawsuit?**

---

A previous notice went to the Direct Purchaser Settlement Class Members regarding the JBS settlement. You are permitted to participate in this Settlement with Smithfield regardless of whether you excluded yourself from the JBS settlement.

You may have received other communications regarding this lawsuit, including solicitations by other attorneys seeking to represent you as a plaintiff in an individual (or "direct action") lawsuit against Defendants. These communications were not approved by the Court and did not come from Court-appointed Co-Lead Counsel. You should carefully review this notice and your rights as a potential member of the Settlement Class before deciding whether to opt out or stay in the Settlement Class. If you have questions about this litigation and your rights as a potential member of the Settlement Class, please contact Co-Lead Counsel whose contact information is listed in question 15 below.

## WHO IS IN THE CLASS?

---

**6.  Am I part of the Class?**

---

The Court decided that, for settlement purposes, members of the Settlement Class are defined as:

> All persons who purchased Pork directly from any of the Defendants or any co-conspirator, or their respective subsidiaries or affiliates for use or delivery in the United States from January 1, 2009 through January 12, 2021.

If you satisfy these criteria, then you are a member of the Settlement Class, subject to the exceptions listed in Section 7.

While this Settlement is only with Smithfield, the Settlement Class includes persons who purchased Pork products (as defined in the Settlement Agreement) from ***any*** of the Defendants or their co-conspirators. (The Court dismissed Indiana Packers Corporation from this lawsuit with prejudice, but if you purchased Pork directly from Indiana Packers between January 1, 2009, and January 12, 2021, you are a member of the Settlement Class.) If you are a member of the Settlement Class and do not exclude yourself, you may be eligible to participate in (or exclude yourself from) any additional settlements which may arise with any other Defendants in the case.

---

**7.  Are there exceptions to being included?**

---

Yes. Specifically excluded from the Settlement Class are the Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant. Also excluded from the Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action. If you are in one of these categories, you are not a member of the Settlement Class and not eligible to participate in the Settlement.

---

**8.  I'm still not sure if I'm included.**

---

If you are still not sure if you are included, please review the detailed information contained in the Settlement Agreement, available for download at www.PorkAntitrustLitigation.com. You may also call the Settlement Administrator at 1-866-797-0864 or call or write to Co-Lead Counsel at the phone numbers or addresses listed in question 15 below.

## THE BENEFITS OF THE SETTLEMENT AGREEMENT WITH SMITHFIELD

---

**9.  What does the Settlement with Smithfield provide?**

---

If the Settlement is approved, Smithfield will pay up to $83,000,000 to resolve all Settlement Class Members' claims against Smithfield for the Released Claims (as defined in the Settlement Agreement). In addition to this monetary

benefit, Smithfield has also agreed to provide specified cooperation in the Direct Purchaser Plaintiffs' continued prosecution of the litigation.

## 10. What are the Settlement benefits being used for?

A portion of the Settlement proceeds are being used for the administration of the notice of the Settlement to potential members of the Settlement Class by the Settlement Administrator. The remainder of the Settlement proceeds will remain available for any future notice, distribution to members of the Settlement Class, or attorneys' fees, litigation expenses, and incentive awards to Direct Purchaser Plaintiffs and their counsel. At this time, Direct Purchaser Plaintiffs and their counsel are not seeking any attorneys' fees, non-administration expenses, or incentive awards to be paid from the Settlement proceeds. However, they will do so in the future, subject to additional notice to you and approval by the Court.

Co-Lead Counsel do not intend to distribute any net proceeds from the Settlement to qualifying members of the Settlement Class at this time, but will do so in the future. You will be provided further notice of any such distribution.

## 11. What am I giving up by staying in the Settlement Class?

Unless you exclude yourself, you are staying in the Settlement Class, which means that you can't sue, continue to sue, or be part of any other lawsuit against Smithfield that pertains to the Released Claims (as defined in the Settlement Agreement). It also means that all of the Court's orders will apply to you and legally bind you. The Released Claims are detailed in the Settlement Agreement, available at www.PorkAntitrustLitigation.com.

You are not releasing your claims against any Defendant other than Smithfield by staying in the Settlement Class.

## 12. What happens if I do nothing at all?

If you do nothing, you will remain a member of the Settlement Class and participate in this Settlement. You will also have the opportunity to participate in (or exclude yourself from) any future settlements or judgments obtained by Direct Purchaser Plaintiffs.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

## 13. How do I exclude myself from the Settlement with Smithfield?

If you do not want the benefits offered by the Settlement and you do not want to be legally bound by the terms of the Settlement, or if you wish to pursue or continue your own separate lawsuit against Smithfield, you must exclude yourself by submitting a written request to the Settlement Administrator stating your intent to exclude yourself from the Settlement with Smithfield (an "Exclusion Request"). Your Exclusion Request must include the following: (a) your name, including the name of your business which purchased Pork products, and address; (b) a statement that you want to be excluded from the Settlement with Smithfield in *In re Pork Antitrust Litigation*; and (c) your signature.

If you intend to exclude subsidiaries, affiliates, divisions, related or controlled entities, entities under common control, predecessors in interest, or any other related entity, such entities must be expressly identified by name and address in your request. Additionally, if you intend to exclude claims that were assigned to you from another potential Settlement Class Member, you must include the assignor's name; whether the assignor fully or partially assigned their Pork claims; the annual value of Pork purchases assigned, identified by Defendant or Co-Conspirator from whom the purchases were made; and a copy of the executed assignment agreement or a statement outlining the assignment signed by both the assignor and assignee.

You must mail or email your Exclusion Request, postmarked or received by _____, 2021, to: Pork Antitrust Litigation, Attn: EXCLUSIONS, c/o A.B. Data, Ltd., P.O. Box 173001, Milwaukee, WI 53217; or info@PorkAntitrustLitigation.com.

---

| **14. If I don't exclude myself, can I sue Smithfield for the same thing later?** |
|---|

No. Unless you exclude yourself, you give up the right to sue Smithfield for the same claims that the Settlement resolves. If you have a pending lawsuit against Smithfield, speak to your lawyer in that lawsuit immediately to determine whether you must exclude yourself from this Settlement Class to continue your own lawsuit against Smithfield.

By staying in the lawsuit you are not releasing your claims in this case against any Defendant other than Smithfield.

## OBJECTING TO THE SETTLEMENT

| **15. How do I tell the Court that I don't like the Settlement?** |
|---|

If you are a member of the Settlement Class and have not excluded yourself from the Settlement, you can object to the Settlement if you don't like part or all of it. The Court will consider your views.

To object, you must send a letter or other written statement saying that you object to the Settlement with Smithfield in *In re Pork Antitrust Litigation* and the reasons why you object to the Settlement. Be sure to include your full name, the name of your business which purchased Pork, current mailing address, and email address. Your objection must be signed. You may include or attach any documents that you would like the Court to consider. Do not send your written objection to the Court or the judge. Instead, mail the objection to the Settlement Administrator, Co-Lead Counsel, and counsel for Smithfield at the addresses listed below. Your objection must be postmarked no later than _____, 2021.

| **Settlement Administrator:** | **Direct Purchaser Plaintiffs' Co-Lead Counsel:** | **Counsel for Smithfield:** |
|---|---|---|
| Pork Antitrust Litigation<br>ATTN: OBJECTIONS<br>c/o A.B. Data, Ltd.<br>P.O. Box 173001<br>Milwaukee, WI 53217 | W. Joseph Bruckner<br>Brian D. Clark<br>LOCKRIDGE GRINDAL NAUEN P.L.L.P.<br>100 Washington Ave. S., Ste. 2200<br>Minneapolis, MN 55401<br>(612) 339-6900<br>wjbruckner@locklaw.com<br>bdclark@locklaw.com | Richard Parker<br>Josh Lipton<br>GIBSON, DUNN &<br>CRUTCHER, LLP<br>1050 Connecticut Avenue, N.W.<br>Washington DC 20036<br>(202) 955-8500<br>rparker@gibsondunn.com<br>jlipton@gibsondunn.com |
| | Clifford H. Pearson<br>Bobby Pouya<br>PEARSON, SIMON & WARSHAW, LLP<br>15165 Ventura Blvd., Ste. 400<br>Sherman Oaks, CA 91403<br>(818) 788-8300<br>cpearson@pswlaw.com<br>bpouya@pswlaw.com | |

| **16. What is the difference between excluding myself and objecting?** |
|---|

Objecting is telling the Court that you do not like something about the Settlement. You can object only if you do not exclude yourself from the Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no standing to object because the Settlement no longer affects you.

## THE LAWYERS REPRESENTING YOU

| **17. Do I have a lawyer in this case?** |
|---|

The Court has appointed Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP as Co-Lead Counsel for the Settlement Class. Their contact information is provided above in question 15.

If you wish to remain a member of the Settlement Class, you do not need to hire your own lawyer because Co-Lead Counsel is working on your behalf.

If you wish to pursue or continue your own case separate from this one, or if you exclude yourself from the Settlement Class, these lawyers will no longer represent you.  You will need to hire your own lawyer if you wish to pursue or continue your own lawsuit against Smithfield.

## 18. How will the lawyers be paid?

Co-Lead Counsel are not asking the Court to award any attorneys' fees from the Settlement with Smithfield at this time.  In the future, Co-Lead Counsel will ask the Court to award attorneys' fees and reimbursement of reasonable and necessary litigation expenses from the Settlement or any other settlement or recovery in this litigation.  At such time, and prior to any Court approval, members of the Settlement Class will be provided with notice of the amount of fees or expenses sought by Co-Lead Counsel and the opportunity to be heard by the Court.  You will not have to pay any fees or costs out-of-pocket.

# THE COURT'S FAIRNESS HEARING

## 19. When and where will the Court decide whether to approve the Settlement?

The Court will hold a hearing to decide whether to approve the Settlement (the "Fairness Hearing").  You may attend and you may ask to speak, but you don't have to.  The Court will hold a Fairness Hearing on _____, 2021, at _____ _.m., at the United States District Court for the District of Minnesota, Courtroom 15, 300 South Fourth Street, Minneapolis, MN 55415.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court will listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take. Pursuant to any applicable orders relating to the COVID-19 emergency or otherwise, the Fairness Hearing may take place remotely, including via telephone or video conference.  The Court may also move the Fairness Hearing to a later date without providing additional notice to the Class.  Updates will be posted to the Settlement website regarding any changes to the hearing date or conduct of the Fairness Hearing.

## 20. Do I have to come to the hearing?

No. Co-Lead Counsel will answer any questions the Court may have.  However, you are welcome to come at your own expense.  If you send an objection, you do not have to come to court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

## 21. May I speak at the hearing?

You may ask to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re Pork Antitrust Litigation*."  Be sure to include your name, including the name of your business which purchased Pork, current mailing address, telephone number, and signature.  Your Notice of Intention to Appear must be postmarked no later than _____, 2021, and it must be sent to the Clerk of the Court, Co-Lead Counsel, and counsel for Smithfield.  The address for the Clerk of the Court is: 300 South Fourth Street, Courtroom 15, Minneapolis, MN 55415. The addresses for Co-Lead Counsel and counsel for Smithfield are provided in Question 15.  You cannot ask to speak at the hearing if you excluded yourself from the Settlement Class.

# GETTING MORE INFORMATION

## 22. How do I get more information about the Settlement?

This notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can find a copy of the Settlement Agreement, other important documents, and information about the current status of the litigation by visiting   www.PorkAntitrustLitigation.com.   You   may   contact   the   Settlement   Administrator   at info@PorkAntitrustLitigation.com or toll-free at 1-866-797-0864.  You may also contact Co-Lead Counsel at the addresses, phone numbers, and email addresses provided in Question 15.

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

# EXHIBIT C

| | |
|---|---|
| **From:** | noreply@porkantitrustlitigation.com |
| **Sent:** | XXXXXXX |
| **To:** | XXXXXXX |
| **Subject:** | Test - Notice of Class Action Settlement |

EXTERNAL SENDER

Please do not reply to this email, this inbox is unmonitored.

### <u>COURT-APPROVED LEGAL NOTICE</u>

**If you purchased any Pork product directly from a Pork producer for use or delivery in the United States from January 1, 2009, through January 12, 2021, a class action settlement may affect your rights.**

*Para una notificacion in español, llame gratis al 1-866-797-0864*
*o visite nuestro website www.PorkAntitrustLitigation.com.*

A settlement has been reached in a class action antitrust lawsuit filed on behalf of Direct Purchaser Plaintiffs with Smithfield Foods, Inc. and related or affiliated entities ("Smithfield" or "Settling Defendant"). This Court-ordered notice may affect your rights. Please review and follow the instructions carefully.

The United States District Court for the District of Minnesota authorized this notice. Before any money is paid, the Court will hold a hearing to decide whether to approve the Settlement.

### <u>WHO IS INCLUDED?</u>

For settlement purposes, members of the Settlement Class are defined as all persons who purchased Pork directly from any of the Defendants or any coconspirator, or their respective subsidiaries or affiliates for use or delivery in the United States from January 1, 2009 through January 12, 2021. Specifically excluded from the Settlement Class are the Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action. In addition to Smithfield, the Defendants in this lawsuit for purposes of this notice include Clemens Food Group, LLC, The Clemens Family Corporation, Hormel Foods Corporation, JBS USA Food Company, JBS USA Food Company Holdings, Indiana Packers Corporation, Seaboard Foods LLC, Triumph Foods, LLC,

Tyson Foods, Inc., Tyson Prepared Foods, Inc., Tyson Fresh Meats, Inc., and Agri Stats, Inc. (The Court dismissed Indiana Packers Corporation from this lawsuit with prejudice, but if you purchased Pork directly from Indiana Packers between January 1, 2009, and January 12, 2021, you are a member of the Settlement Class.)

If you are not sure you are included, you can get more information, including a detailed notice, at www.PorkAntitrustLitigation.com or by calling toll-free 1-866-797-0864.

### WHAT IS THIS LAWSUIT ABOUT?

Direct Purchaser Plaintiffs allege that Defendants and their co-conspirators conspired and combined to fix, raise, maintain, and stabilize the price of Pork, beginning at least as early as January 1, 2009, with the intent and expected result of increasing prices of Pork in the United States, in violation of federal antitrust laws. Direct Purchaser Plaintiffs previously reached a settlement with one Defendant, JBS. The settlement with JBS is pending final approval by the Court. Direct Purchaser Plaintiffs have now reached a new proposed Settlement with Defendant Smithfield. Smithfield denies it did anything wrong. The Court did not decide which side was right, but both sides agreed to the Settlement Agreement to resolve the case and avoid the uncertainty associated with continued litigation. The case is still proceeding on behalf of the Direct Purchaser Plaintiffs against other Defendants who may be subject to separate settlements, judgments, or class certification orders.

### WHAT DOES THE SETTLEMENT PROVIDE?

Under the terms of the Settlement Agreement, Smithfield will pay up to $83,000,000 to resolve all Settlement Class claims against it in this litigation. In addition to this monetary benefit, Smithfield has also agreed to provide specified cooperation in the Direct Purchaser Plaintiffs' continued prosecution of the litigation. Co-Lead Counsel are not seeking to recover attorneys' fees, litigation expenses, or class representative incentive awards at this time, and do not plan for distribution of net settlement proceeds to the Settlement Class Members at this time, but will do so at a future date subject to further notice and Court approval.

### WHAT ARE YOUR RIGHTS AND OPTIONS?

You do not need to take any action to remain a member of the Settlement Class and be bound by the Settlement Agreement. As a Settlement Class Member, you may be able to participate in (or exclude yourself from) any future settlement or judgment obtained by Direct Purchaser Plaintiffs against other Defendants in the case. If you don't want to be legally bound by the Settlement Agreement, you must exclude yourself by _____, 2021, or you won't be able to sue or continue to sue Smithfield for the Released Claims (as defined in the Settlement Agreement). If you exclude yourself, you can't get money from the Settlement. If you don't exclude yourself from the Settlement Class, you may still object to the Settlement Agreement by _____, 2021. The detailed notice explains how to exclude yourself or object. Details may also be found on the FAQs page of the Settlement website. The Court

will hold a hearing in this case (In re Pork Antitrust Litigation, Case No. 0:18-cv-01776) on _____, 2021, at _____ _.m., to consider whether to approve the Settlement Agreement.  You may ask to speak at the hearing, but you don't have to.

**This notice is only a summary. You can find more details about the Settlement at www.PorkAntitrustLitigation.com or by calling toll-free 1-866-797-0864. Please do not contact the Court.**

Please do not reply to this email, this inbox is unmonitored.

Unsubscribe

# EXHIBIT D

<u>COURT-APPROVED LEGAL NOTICE</u>

**If you purchased any Pork product directly from a Pork producer for use or delivery in the United States from January 1, 2009, through January 12, 2021, a class action settlement may affect your rights.**

*Para una notificacion en español, llame gratis al 1-866-797-0864*
*o visite nuestro website <u>www.PorkAntitrustLitigation.com</u>.*

A settlement has been reached in a class action antitrust lawsuit filed on behalf of Direct Purchaser Plaintiffs with Smithfield Foods, Inc. and related or affiliated entities ("Smithfield" or "Settling Defendant"). This Court-ordered notice may affect your rights. Please review and follow the instructions carefully.

The United States District Court for the District of Minnesota authorized this notice. Before any money is paid, the Court will hold a hearing to decide whether to approve the Settlement.

<u>WHO IS INCLUDED?</u>

For settlement purposes, members of the Settlement Class are defined as all persons who purchased Pork directly from any of the Defendants or any co-conspirator, or their respective subsidiaries or affiliates for use or delivery in the United States from January 1, 2009 through January 12, 2021. Specifically excluded from the Settlement Class are the Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action. In addition to Smithfield, the Defendants in this lawsuit for purposes of this notice include Clemens Food Group, LLC, The Clemens Family Corporation, Hormel Foods Corporation, JBS USA Food Company, JBS USA Food Company Holdings, Indiana Packers Corporation, Seaboard Foods LLC, Triumph Foods, LLC, Tyson Foods, Inc., Tyson Prepared Foods, Inc., Tyson Fresh Meats, Inc., and Agri Stats, Inc. (The Court dismissed Indiana Packers Corporation from this lawsuit with prejudice, but if you purchased Pork directly from Indiana Packers between January 1, 2009, and January 12, 2021, you are a member of the Settlement Class.)

If you are not sure you are included, you can get more information, including a detailed notice, at <u>www.PorkAntitrustLitigation.com</u> or by calling toll-free 1-866-797-0864.

<u>WHAT IS THIS LAWSUIT ABOUT?</u>

Direct Purchaser Plaintiffs allege that Defendants and their co-conspirators conspired and combined to fix, raise, maintain, and stabilize the price of Pork, beginning at least as early as January 1, 2009, with the intent and expected result of increasing prices of Pork in the United States, in violation of federal antitrust laws. Direct Purchaser Plaintiffs previously reached a settlement with one Defendant, JBS. The settlement with JBS is pending final approval by the Court. Direct Purchaser Plaintiffs have now reached a new proposed Settlement with Defendant Smithfield. Smithfield denies it did anything wrong. The Court did not decide which side was right, but both sides agreed to the Settlement Agreement to resolve the case and avoid the uncertainty associated with continued litigation. The case is still proceeding on behalf of the Direct Purchaser Plaintiffs against other Defendants who may be subject to separate settlements, judgments, or class certification orders.

<u>WHAT DOES THE SETTLEMENT PROVIDE?</u>

Under the terms of the Settlement Agreement, Smithfield will pay up to $83,000,000 to resolve all Settlement Class claims against it in this litigation. In addition to this monetary benefit, Smithfield has also agreed to provide specified cooperation in the Direct Purchaser Plaintiffs' continued prosecution of the litigation. Co-Lead Counsel are not seeking to recover attorneys' fees, litigation expenses, or class representative incentive awards at this time, and do not plan for distribution of net settlement proceeds to the Settlement Class Members at this time, but will do so at a future date subject to further notice and Court approval.

<u>WHAT ARE YOUR RIGHTS AND OPTIONS?</u>

You do not need to take any action to remain a member of the Settlement Class and be bound by the Settlement Agreement. As a Settlement Class Member, you may be able to participate in (or exclude yourself from) any future settlement or judgment obtained by Direct Purchaser Plaintiffs against other Defendants in the case. If you don't want to be legally bound by the Settlement Agreement, you must exclude yourself by _____, 2021, or you won't be able to sue or continue to sue Smithfield for the Released Claims (as defined in the Settlement Agreement). If you exclude yourself, you can't get money from the Settlement. If you don't exclude yourself from the Settlement Class, you may still object to the Settlement Agreement by _____, 2021. The detailed notice explains how to exclude yourself or object. Details may also be found on the FAQs page of the Settlement website. The Court will hold a hearing in this case (*In re Pork Antitrust Litigation*, Case No. 0:18-cv-01776) on _____**, 2021**, at _____ **.m.**, to consider whether to approve the Settlement Agreement. You may ask to speak at the hearing, but you don't have to.

**This notice is only a summary. You can find more details about the Settlement at <u>www.PorkAntitrustLitigation.com</u> or by calling toll-free 1-866-797-0864. Please do not contact the Court.**

# EXHIBIT E

# If You Purchased Any Pork Products

## directly from a Pork producer for use or delivery in the U.S.

from 1/1/09 through 1/12/21

## A CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS

LEARN MORE HERE

**porkantitrustlitigation.com**

**If You Purchased Any Pork Products**

directly from a Pork producer for use or delivery in the U.S. from 1/1/09 through 1/12/21

A CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS

porkantitrustlitigation.com        Learn More Here