```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MINNESOTA
 2
      ------------------------------------------------------------
 3                                     )
       In Re:  Pork Antitrust          )   File No. 18CV1776
 4     Litigation                      )   19CV1578, 19CV2723
                                       )       21CV2998
 5                                     )       (JRT/HB)
                                       )
 6                                     )
                                       )   Minneapolis, Minnesota
 7                                     )   July 14, 2021
                                       )   10:08 A.M.
 8                                     )
      ------------------------------------------------------------
 9

10           BEFORE THE HONORABLE CHIEF JUDGE JOHN R. TUNHEIM
                UNITED STATES DISTRICT COURT JUDGE
11              (STATUS CONFERENCE VIA VIDEO CONFERENCE)

12    APPEARANCES
       For Direct Purchaser        Lockridge Grindal Nauen PLLP
13     Plaintiffs:                 BRIAN D. CLARK, ESQ.
                                   JOSEPH BRUCKNER, ESQ.
14                                 100 Washington Avenue South
                                   Suite 2200
15                                 Minneapolis, MN 55401

16                                 Pearson Simon & Warshaw
                                   BOBBY POUYA, ESQ.
17                                 800 LaSalle Avenue
                                   Suite 2150
18                                 Minneapolis, MN 55402

19                                 Gustafson Gluek PLLC
                                   DANIEL C. HEDLUND, ESQ.
20                                 120 South Sixth Street
                                   Suite 2600
21                                 Minneapolis, MN 55402

22
       On behalf of the           Hagens Berman Sobol Shapiro
23     Consumer Indirect          SHANA E.  SCARLETT, ESQ.
       Plaintiffs:                715 Hearst Avenue
24                                 Suite 202
                                   Berkeley, CA 94710
25
```

```
 1        On behalf of the          Cuneo Gilbert & LaDuca, LLP
          Consumer Indirect         ALEC BLAINE FINLEY, ESQ.
 2        Plaintiffs:               4725 Wisconsin Avenue NW
                                    Suite 200
 3                                  Washington, DC 20016

 4                                  Larson King, LLP
                                    SHAWN M. RAITER, ESQ.
 5                                  30 East Seventh Street
                                    Suite 2800
 6                                  St. Paul, MN 55101

 7
          For Plaintiffs in         Ahern and Associates, P.C.
 8        Winn-Dixie Stores,        PATRICK AHERN, ESQ.
          Inc., et al.:             590 North Sheridan Road
 9                                  Lake Forest, IL 60045

10
          For Plaintiffs in         Schneider Wallace Cottrell
11        Commonwealth of Puerto    Konecky Wotkns
          Rico:                     KYLE G. BATES, ESQ.
12                                  2000 Powell Street
                                    Suite 1400
13                                  Emeryville, CA 94608

14        For Plaintiffs:           MARCUS BOZEMAN, ESQ.
                                    MICHAEL PEARSON, ESQ.
15                                  ANTHONY CARTER, ESQ.
                                    KRISTIN GORE, ESQ.
16                                  ERIC LIFVENDAHL, ESQ.
                                    ROBERT KAPLAN, ESQ.
17                                  RYAN MANION, ESQ.
                                    KATHERINE RILEY, ESQ.
18                                  KYLE POZAN, ESQ.
                                    SARAH STERLING ALDRIDGE, ESQ.
19
          For Defendant JBS USA:    Spencer Fane LLP
20                                  DONALD G. HEEMAN, ESQ.
                                    100 South Fifth Street
21                                  Suite 1900
                                    Minneapolis, MN 55402
22
                                    Quinn Emanuel Urquhart &
23                                  Sullivan
                                    STEPHEN R. NEUWIRTH, ESQ.
24                                  SAMI RASHID, ESQ.
                                    51 Madison Avenue
25                                  22nd Floor
                                    New York, NY 10010
```

```
 1      For the Defendant          Larkin Hoffman Daly & Lindgren
        Smithfield:                JOHN A. COTTER, ESQ.
 2                                 8300 Norman Center Dr., Ste 1000
                                   Minneapolis, MN 55437
 3
                                   Gibson Dunn & Crutcher
 4                                 RICHARD G. PARKER, ESQ.
                                   1050 Connecticut Avenue NW
 5                                 Washington, DC 20036

 6                                 Gibson Dunn & Crutcher
                                   BRIAN EDWARD ROBISON, ESQ.
 7                                 2100 McKinney Avenue, Ste 1100
                                   Dallas, Texas 75201
 8
        For Defendant Hormel:      Faegre Baker Daniels LLP
 9                                 RICHARD A. DUNCAN, ESQ.
                                   90 South 7th Street, Ste 2200
10                                 Minneapolis, MN 55402

11      For Defendant Seaboard     Stinson Leonard Street, OOP
        Foods LLC:                 PETER J. SCHWINGLER, ESQ.
12                                 50 South Sixth Street
                                   Suite 2600
13                                 Minneapolis, MN 55402

14      For Defendant Agri         Hogan Lovells US, LLP
        Stats:                     WILLIAM LEITZSEY MONTS, III, ESQ
15                                 555 13th Street NW
                                   Washington, DC 20004
16
        For Defendant Tyson        Axinn Veltrop & Harkrider LLP
17      Foods:                     TIFFANY RIDER ROHRBAUGH, ESQ.
                                   950 F Street NW, 7th Floor
18                                 Washington, DC 20004

19      For Defendants:            CRAIG COLEMAN, ESQ.
                                   CHRISTOPHER SMITH, ESQ.
20                                 MARK JOHNSON, ESQ.
                                   DAN LAYTIN, ESQ.
21                                 DAVID GRAHAM, ESQ.

22

23

24

25
```

1              **10:08 A.M.**

2

3         **(In open court via video conference.)**

4              THE COURT:  This is 21-2998 multi district

5    litigation.  I don't have captions yet, so we're going to

6    figure that out as we go along.  We also have the former

7    case 18-1776 and the other cases that are part of this that

8    are part of the record.

9              I don't think we need to go through and note

10   appearances today.  That might take us a while.  Heather

11   has a handle on that, and we will make sure that we have

12   appearances noted, and if she doesn't have your name down,

13   then you get in touch with her.  You should communicate

14   directly with her.

15             The purpose this morning is really for the Court

16   to get a handle on what is going on so we can start

17   coordinating and get the process moving quickly for the new

18   MDL and also coordinate as much as possible with prior

19   cases.

20             So on my list really is to focus on what we need

21   to do to get to the initial Case Management Order, some

22   reasonable time limits here, and also to start coordinating

23   discovery with the help of Judge Bowbeer.

24             Let me hear from everybody here who is wishing to

25   speak.  I think I noted here for -- well, maybe you can

1    tell me.  Who is going to speak for the plaintiffs?  Let's

2    hear from you first on what needs to be done right away.

3              MR. KAPLAN:  From the MDL plaintiffs or the class

4    plaintiffs?

5              THE COURT:  Let's go MDL first, please.

6              MR. KAPLAN:  It's Robert Kaplan.  We've exchanged

7    briefing, and if we could have a couple of weeks, I think

8    we could probably agree on most of the dates and the

9    procedures and submit hopefully an agreed upon order to

10   Your Honor.  If not, we would note whatever differences

11   there are.

12             THE COURT:  Okay.  All right.  Anyone else in the

13   MDL plaintiffs wish to say anything?

14             MR. GANT:  This is Scott Gant.  I represent

15   Cisco, and I represent some other plaintiffs that will be

16   filing.  As Your Honor may have noted, there are over 80

17   opt-outs from the class action.  There was an opt-out

18   notice recently filed, so I'm filing some additional cases.

19   I know others are coming.

20             And we've proposed a schedule to the defendants

21   to attempt to accommodate the expected incoming cases over

22   the next weeks and months.  So as Mr. Kaplan said, we would

23   appreciate a couple of weeks to confer with the defendants.

24   One of the issues about which we have disagreed is whether

25   the MDL is going to be separate and coordinated, separate

1    formally but coordinated significantly with the existing

2    action, which in our view is reflected in our papers.

3              The defendants seem to have a view that these

4    matters should be collapsed, which I don't think was what

5    the JPML did in its orders, but once we have that matter

6    settled, I agree with Mr. Kaplan.  It's just a matter of

7    weeks and hopefully less for us to submit to you a proposed

8    schedule for the MDL, which will be significantly

9    coordinated.

10             And you will note, Your Honor, we proposed the

11   same fact discovery cutoff for the MDL as exists in the

12   current matter.

13             THE COURT:  Okay.  Do you have any idea,

14   Mr. Gant, about the number of cases coming, or is that

15   impossible to know?

16             MR. GANT:  I will give you my best faith

17   estimate, and you may know, Your Honor, the *Broiler Chicken*

18   matter in Chicago is ongoing.  It's similar in some

19   respects.  Many of the same counsel who appear for both

20   plaintiffs and defendants are in this case and that case.

21             Many of the same entities that have opted out

22   have filed their own cases in Illinois, which are over 150.

23   So my best guess, Your Honor, is that we are going to end

24   with several dozen, but I can't be more precise than that.

25             I think because in *Chicken* the opt-outs came over

 1   the course of a few years.  Mr. Kaplan and I were the first

 2   two DAPs to file in Chicago, and we did that three and a

 3   half years ago.  There are still cases being filed here.

 4          I think that was partly a function of the fact

 5   that there were very small settlements initially and no

 6   settlements, which of course is the time when people need

 7   to decide whether to opt out.  Here, because JBS settled

 8   relatively early, and now there is a settlement with

 9   Smithfield, Your Honor, I think that people will make their

10   decisions earlier.

11          So I think we won't hopefully face a situation

12   where we have cases filed over years.  I think it will be a

13   matter of months for most or all the cases, and I think

14   that will probably be a few dozen would be my best guess.

15          THE COURT:  Okay.  That's helpful.

16          Okay.  Anyone else, plaintiffs, in the MDL that

17   has a thought on this point?

18          How about the class plaintiffs?

19          MR. CLARK:  Your Honor, Brian Clark for direct

20   purchaser plaintiffs and for the most part speaking on

21   behalf of the classes, though my colleagues Shana Scarlett

22   and Shawn Raiter have a couple other comments.

23          We do think it would be helpful to confer.  We

24   haven't seen the new DAP proposal on things like

25   depositions and such, so some coordination is obviously

1    going to be required.  That is the entire advantage of an

2    MDL, and coordinating them before you and Judge Bowbeer, we

3    get those advantages of having the same judges dealing with

4    the scheduling and discovery issues.

5              But a couple issues there that we thought were

6    worth flagging for Your Honor just because they caused us

7    some serious pause as we read through some of the

8    coordination proposals from the MDL DAPs.  This case has

9    been going on for three years, and the classes, Puerto Rico

10   and Winn-Dixie, have been in front of Your Honor litigating

11   this case.

12             So there are existing DAPs that were already

13   here, and the classes have been litigating in this case for

14   three years before Your Honor, and we are starting

15   depositions in a few months.  We are 45 days from

16   substantial completion of document production, and we need

17   the case to stay on track and keep pushing it forward.

18             And these new direct action plaintiffs, they have

19   chosen, as is their right, three years into the case to

20   file.  One of the DAPs that triggered the MDL actually was

21   before Your Honor, if you check your docket, back in

22   December.  Then they were dismissed.  Then they re-filed in

23   Florida, triggered the MDL, and I think here they are again

24   today in front of you.

25             In that whole time, we have been pushing the case

1   forward, and so we think this kind of fits a pattern that

2   we just want to flag now early on in the case.  When there

3   is large numbers of DAPs in a case like this, that just

4   causes some coordination issues that I think are worth

5   putting out there.

6          The DAP counsel have been aware of this case for

7   three years.  It's probably a covered case in the media,

8   and as with other large cases with large numbers of

9   opt-outs, the DAPs have chosen to wait until after the

10  motions to dismiss have been successfully defeated for the

11  most part because there was Winn-Dixie and Puerto Rico

12  here.

13         The modification of the pattern here we didn't

14  see in other cases is this kind of side route to the MDL

15  proceedings after the defeat of the motions to dismiss.  I

16  don't think anybody ever questioned the outcome of the MDL

17  panel when the case has been proceeding this long, and

18  certainly the MDL panel confirmed these cases are all the

19  same and should all be in front of Your Honor.

20         Again, nothing precludes the new DAPs from doing

21  what they did.  I mean, that's their right, but waiting to

22  file until the case is viable and off the ground has some

23  consequences because now the case has proceeded in these

24  three years, the classes, Puerto Rico and Winn-Dixie, have

25  invested considerable time, money and effort to demonstrate

1     that these are viable cases.

2            So I say all that because there is a couple

3     things in the proposals from the new DAPs that cause us

4     pause.  One of them is a proposal that the depositions,

5     half of them be led by the new DAPs, who as far as I know

6     don't even have the documents that have been produced, the

7     hundreds of thousands of documents to date.  Certainly I'm

8     sure they will get them.

9            We want to start taking depositions on those

10    documents because we have a class certification deadline of

11    February 7 that we intend to meet, and so it is important

12    to us not only to keep, you know, leading in the case and

13    pushing it forward as we have done for three years, but not

14    have kind of, I guess, a new person in the case come and

15    disrupt our ability to litigate this case as we have done

16    for the last three years.

17           But with all that said, we have been and will

18    continue to be able to effectively, logically and equitably

19    coordinate discovery with DAPs.  As Mr. Gant said, we do

20    that in lots of other cases.  So we can certainly do that,

21    but I guess that proposal kind of came in pretty loud to us

22    for kind of coming into this case three years in.

23           I guess all that is really just another way of

24    saying this is a moving train, and folks need to hop on it.

25    I think that also certainly goes to the proposal to have

1    kind of a separate discovery track.  I'm not entirely clear

2    how that will proceed.  If there is any proposal to delay

3    those depositions after substantial completion September

4    1st, it's not clear because we are going to have a window

5    between September 1st and February 7th where there are some

6    depositions we will be ready and must proceed on to meet

7    that class certification date.

8            Again, just worth bearing in mind, different

9    discovery protocols, depositions, Winn-Dixie and Puerto

10   Rico were part of that.  So it's kind of this weird

11   artificial distinction that I guess has been attempted to

12   be created here by the new DAPs and existing DAPs, and we

13   all are plaintiffs who represent clients who allegedly were

14   victims of a price fixing conspiracy for pork.

15           We all seek to prove that case, and so we need to

16   from the get-go set it up to make it successful and also

17   recognize that we are three years in to doing that.  So the

18   two things, kind of substantive things that I think would

19   occur to the classes that we ought to do, substantively as

20   we did in pork early on, having a single ECF number where

21   we file all these cases and having a case caption, whatever

22   it is, that lets us all file in the same matter number.

23           We see orders that are entered that might only

24   pertain -- like we have done all along the way.  For

25   instance, we moved for final approval of the JBS settlement

1    on Monday.  We just note on the case caption that that was

2    only specific to the direct purchaser plaintiff case.  So

3    we think that's appropriate here and have a lot of

4    efficiencies.

5         It can become very difficult to track different

6    matter numbers, like Your Honor knows from the beef and

7    cattle case where I think there is four matter numbers we

8    file motions on each time and you enter orders on each

9    time.  So that I think is really important.  However you do

10   it, having a single number for all of these cases is

11   important.

12        To the extent the Court today intends to address

13   the new DAPs' proposals on depositions and other things, I

14   think give us a little direction would be helpful on that.

15   Certainly we will talk as we have done for years with these

16   folks and figure it out, but that was the first we saw that

17   struck us that it was a little off key, given we are three

18   years in and about to start depositions.

19        So that's all I had.  I think colleagues Shana

20   Scarlett and Shawn Raiter have a couple comments on behalf

21   of their clients.

22             THE COURT:  Thank you, Mr. Clark.

23             Ms. Scarlett?

24             MS. SCARLETT:  Thank you, Your Honor.  Just a

25   couple issues that are very particular to the indirect

1    purchaser class.  The DAPs have come into this litigation

2    and ask that there be two separate tracks, the MDL track

3    and the non MDL track, and to us that presents a bit of a

4    dilemma.

5         In other litigation, these exact DAPs have taken

6    the position that the indirect purchasers who seek

7    information through discovery from these DAPs that relate

8    to pass-through and contact information for class members,

9    that the indirect purchasers must seek this information

10   through third-party subpoenas and have made the argument

11   that because the *Chicken* MDL -- the *Chicken* proceedings are

12   not a MDL that we're forced to get all of this information

13   through nonparty subpoenas.

14        And that seems to be the procedure that they are

15   setting up here in the pork litigation.  They're acting

16   under the pretense like this is the first day of

17   litigation, when in fact they stopped the MDL.  What the

18   indirect purchasers ask is that the entire case be

19   consolidated as an MDL so that we are able to do two

20   things:

21        Number one, that we are able to seek data which

22   relates to pass-through and which relates to our class

23   motion on the same schedule as we need to bring the motion

24   for class certification.  You will note in the schedule

25   they propose that they have the date for completion of

1    their structure data in January, with our class

2    certification motions due in February.

3            That simply leaves us not enough time to use that

4    data to perform the pass-through regressions necessary for

5    a class cert motion.  In addition, they also ask that,

6    sorry, by their structuring of the MDL with the non MDL

7    portion being the class plaintiffs, we'll also be forced to

8    issue nonparty subpoenas to participate in any deposition

9    of the DAP representatives.

10           In other MDLs, the DAPs have declined to allow

11   the indirect purchasers to ask questions that relate to

12   pass-through and have argued that we have to issue nonparty

13   subpoenas for every deposition despite the fact that all of

14   us are participating in most of the depositions, and this

15   has created another substantial hurdle for the indirect

16   purchaser classes.

17           So for that reason one of the things that we're

18   asking today is that all of these cases are consolidated

19   under the one MDL caption, and I would just point out that

20   the consumer indirect purchaser action was the one first

21   filed.  We were the ones that filed in June 2018, and we

22   are the lowest numbered case.

23           So for us to be excluded from participating in

24   these late coming DAP actions is somewhat difficult for us

25   to understand why the DAPs believe this is a reasonable

1    proposal, and I would just like to directly address as

2    well, as my colleague Mr. Clark did, their request that the

3    DAPs be able to lead half the depositions.

4            The direct action plaintiffs and the opt-outs

5    have much smaller cases that they attempt to prove.  They

6    have very little interest in proving a conspiracy that

7    impacts the entire market.  They usually don't have a lot

8    of interest in demonstrating common impact.

9            Many of their requests in other large MDLs relate

10   to their individual salesperson that negotiated with the

11   defendant and on the other side the individual defendant

12   employee that negotiated with them.  This is in direct

13   contrast to what the class is trying to prove, which is a

14   market mechanism and a broader impact at class

15   certification.

16           To allow a DAP to take the lead on half the

17   depositions would gravely prejudice the plaintiff classes

18   from being able to demonstrate what they need to for class

19   certification.  In addition, the DAPs are hostile and in

20   conflict with the indirect purchasers when it relates to

21   pass-through.

22           So allowing these entities to step in and take

23   the lead on half of the depositions where they're directly

24   in conflict to what the indirect purchaser classes are

25   trying to show in terms of pass-through through the

1    distribution channels would again be gravely prejudicial to

2    the plaintiffs.

3              So I reiterate what Mr. Clark said.  We would

4    like a couple things.  One, we want the schedule to stay on

5    track.  We are three years into this litigation.  We spent

6    an enormous amount of time reviewing the 800,000 documents

7    produced.  Substantial completion of documents is almost

8    there.

9              We have all of our teams working incredibly hard

10   to get us ready for depositions and to stay on the schedule

11   that this Court and Judge Bowbeer have ordered.  We would

12   ask this Court to consolidate everything under the one

13   caption as an MDL so we are able to use all the discovery

14   tools available us.

15             To the extent that Your Honor can give us

16   guidance on depositions and how you would like the

17   plaintiffs to split the time, I think all of us would

18   appreciate that clarity.  Thank you.

19             THE COURT:  Thank you, Ms. Scarlett.

20             Mr. Raiter, did you have something?

21             MR. RAITER:  Your Honor, on behalf of the

22   commercial indirect purchasers, we join in the comments

23   from the consumers and the direct action, the direct

24   purchaser plaintiffs in the class action cases.  Mr. Finley

25   from our group may have a comment about the timing of some

1   transactional data that the DAPs have proposed.

2           MR. FINLEY:  Good morning, Your Honor.  Blaine

3   Finley of the commercial, institutional and direct

4   purchaser plaintiffs.  So I would like to address the Court

5   about third-party discovery briefly.

6           COURT REPORTER:  Mr. Finley?  Mr. Finley, for

7   some reason you are not coming across as loudly as everyone

8   else did, and you need to slow down for that very reason,

9   please.  I am having a hard time.  Could you please start

10  over?

11          MR. FINLEY:  Absolutely.

12          COURT REPORTER:  Thank you.

13          MR. FINLEY:  Good morning, Your Honor.  My name

14  is Blaine Finley of the commercial, institutional and

15  direct purchaser plaintiffs, and I would like to address

16  the Court on the subject of third-party discovery briefly.

17          My group has several subpoenas issued to DAPs,

18  and these subpoenas preexist the formation of this MDL.  In

19  the schedule proposed to this Court by defendants, I noted

20  that December 1st is currently set for the proposed

21  (indiscernible due to audio malfunction) of structured data

22  production.

23          And what my group would propose, and want to be

24  included in the negotiation of, would be bringing forward

25  that deadline in light of the February 7th class

1    certification deadline.  Unsurprisingly, structured data,

2    transactional datasets, that the direct action plaintiffs

3    would produce would likely be material in my group showing

4    the price impact to our class numbers, and so to -- in

5    summary, would like to be included in any future

6    negotiations about the schedule going forward, particularly

7    as to the issue of the deadline for the production of

8    structured data.

9              Thank you very much.

10             THE COURT:  All right.  Thank you.  Before we

11   turn to defendants, Mr. Gant, did you want to respond to

12   anything?

13             MR. GANT:  I did, Your Honor.  Thank you.

14             A couple of points.  One is, we did learn some

15   lessons from the *Chicken* litigation, which as Ms. Scarlett

16   corrected herself sometimes is erroneously referred to as

17   an MDL, but it is not.  That has caused a lot of

18   complications, and that is what led me and others to seek

19   an MDL in this case.

20             We have worked usually cooperatively with class

21   counsel in the case, but we have had differences with them,

22   and one of the differences we had was our role in taking

23   depositions.  We wanted to play in the *Broiler Chicken* case

24   the role that we're contemplating here where we were equal

25   in terms of the time that we were allotted at depositions.

1          In the *Chicken* case, the direct action plaintiffs

2     now represent the majority of the commerce compared with

3     the direct class, and I expect that likely will be the case

4     here, too, as often is the case where there are a large of

5     number of opt-outs.  So our clients have exercised their

6     due process rights to file their own cases.

7          Rule 23 and due process contemplate that direct

8     action plaintiffs can file their cases at the time that

9     they believe is appropriate, and that's what we did here.

10    There is no game playing or effort to any -- I think

11    Ms. Scarlett used the word "pretense."  There is no

12    pretense, no game playing.

13         We exercised the rights that we have.  We don't

14    want to be subordinated to a second class status role.  Our

15    clients have significant interests.  We're among the

16    largest purchasers, and we are and were fully prepared to

17    litigate this out.

18         As you know, Your Honor, we asked to have this

19    case proceed in a different forum, not because we don't

20    want to be under your stewardship, and we're happy to be in

21    front of you, Your Honor, but in part for the reasons that

22    you're seeing today, which is that the classes want to

23    relegate us to a subordinate status.

24         We want an equal status.  We want to be partners

25    with the classes in prosecuting the cases.  Our interests

1   are substantially aligned.  Ms. Scarlett's suggestion that

2   we're somehow adverse to the indirect classes I don't think

3   is accurate, but if she were right, then as a matter of

4   logic her class is also adverse to the interests of the

5   classes represented by Mr. Clark, Mr. Pouya and

6   Mr. Bruckner, because the class representatives are also

7   direct purchasers.

8           So in terms of the structure of the case, we're

9   in the same position as they are vis-à-vis Ms. Scarlett.

10   We have been able to work out in the *Chicken* case many of

11   the issues that Ms. Scarlett referenced, like whether

12   examinations can be conducted by the indirect classes but

13   witnesses from DAPs.

14           We ended up entering into a stipulation there.

15   We're happy to try and do that here.  We're happy to try

16   and come up with solutions, as we did in the *Chicken* case,

17   through stipulations for document productions.  Whether

18   this is an MDL or not doesn't change the fact that the

19   relationship between Ms. Scarlett's clients and the direct

20   action plaintiffs were not parties to the same case.

21           Whether you consolidate or coordinate or whatever

22   you do, we are third parties vis-a-vis the cases brought by

23   the indirect classes against defendants, and the proper

24   mechanism for obtaining discovery we believe is subpoenas,

25   but we're happy to discuss that.

1          Fundamentally, Your Honor, we see, we represent

2     large purchasers of these products.  We elected to

3     prosecute the case ourselves.  We want to cooperate and

4     coordinate with class counsel, and we don't want to

5     interfere with the existing schedule.  I said that in my

6     initial comments, Your Honor.

7          Our proposed deadline for fact discovery is the

8     same as exists currently and the schedule that was

9     established by Your Honor in coordination with class

10    counsel and defense counsel.

11         We will be ready to participate fully in

12    depositions when those occur, and we're willing to

13    cooperate and negotiate with class counsel in terms of who

14    does what, but we want to be equal partners, and we want to

15    have the opportunity to protect our clients' interests in

16    prosecuting these cases and not be relegated to a

17    subordinate or second class role.

18         MR. KAPLAN:  Your Honor, Robert Kaplan just to

19    follow up.  I agree with what Mr. Gant said.  As I said in

20    the beginning, if we have a couple weeks, I think we can

21    work out virtually all of these issues.  I spoke to

22    Mr. Finley yesterday.  I told him, where he explained his

23    issue, I said we will try to work with him.

24         We're not trying to hurt anybody's class

25    certification motion, so we're ready to sit down and try to

1    work out something cooperatively, and I think 90 plus if

2    not all of these issues can be worked out.  So if you would

3    give us a couple of weeks, I think we can make a lot of

4    progress on these issues.

5              THE COURT:  Well, Mr. Kaplan and Mr. Gant, do you

6    favor a consolidation all into one case, or do you want

7    coordination?  What's your view?

8              MR. GANT:  Your Honor, my view is that there

9    should be significant coordination but not complete

10   consolidation.  First as a formal matter, and sometimes I

11   get accused of trying to queue too closely to the rules,

12   but it seems like class counsel are suggesting that their

13   cases should be put into the MDL, and I don't think that's

14   permitted as a matter of statute, and it's also not

15   consistent with what the JPML order provided.

16             So I think whatever you do, my understanding of

17   the statutory structure is, you can't put everything into

18   the MDL, to the extent that someone is suggesting that.  We

19   believe that there should be significant coordination.  I'm

20   not necessarily opposed to Mr. Clark's suggestion of the

21   creation of a new number, and that may have constituent

22   parts.

23             It may have the MDL in it.  It may have the prior

24   case in it as well, and so for -- I don't want to create

25   inefficiency or wasteful duplication in terms of having to

1    file in multiple dockets, but I do think it's important to

2    continue to recognize that the MDL is separate, and there

3    may be -- I think the wisest course is to have separate

4    schedules because there may be things that affect the MDL

5    that don't affect the other cases and vice versa.

6             So I think having separate schedules, even if

7    they're entered under the same ECF number, makes some

8    sense, but I'm sure Your Honor will have even better ideas

9    than I do about the precise mechanics.  The view of the

10   DAPs, and I speak for everyone who has filed on this point,

11   is that we should have significant amount of coordination

12   but not complete consolidation, Your Honor.

13            THE COURT:  Okay.  Anyone else from the

14   plaintiffs' side before I turn to defendants?

15            Okay.  All right.  Who is speaking first for

16   defendants?

17            MR. ROBISON:  Good morning, Your Honor.  This is

18   Brian Robison.  I'm with Gibson, Dunn & Crutcher, and we

19   represent Smithfield Foods, and I will be representing the

20   collective group of defendants' position here today.

21            The defendants' calling card for how we integrate

22   these new plaintiffs is efficiency.  We want to be

23   efficient in how we're managing the existing cases and how

24   we integrate the new DAPs.  A corollary to that is, we want

25   to eliminate duplication.  We don't want to have to keep

1     doing the same things over and over.

2          A lot of progress has been made in these cases.

3     Mr. Clark went through some of the high level explanations

4     there, but a lot of progress has been made.  The parties

5     have spent a lot of time negotiating the details of

6     discovery, the scope of discovery.  There is a lot of sweat

7     equity involved in these cases, a lot of sweat equity

8     invested by the parties but also by the Court.

9          The progress that has been made, the reason why

10    we are just about six weeks away from the date for

11    substantial completion of documents and data productions

12    is, number one, active case management by Judge Bowbeer;

13    and number two, the result of intense negotiations between

14    the existing parties on the scope of discovery.

15         Judge Bowbeer has been hands on from day one.

16    She was hands on during the preservation phase of the case,

17    and she has been just as hands on during the discovery

18    phase.  We have had multiple status conferences.  She has

19    required multiple status reports.  She has decided motions

20    to compel.  She has entered orders on stipulations where

21    the parties could agree on the scope of discovery.

22         The parties have negotiated things like the

23    custodian lists for both sides, the search terms that both

24    sides would use in searching for e-mails, the date range

25    for discovery, the scope of data productions, and we have

1    done this obviously for our benefit.  The parties need to

2    know the scope of discovery, so we're doing things once.

3              But we also had to do it for the benefit of

4    thirds parties.  You've heard a little bit about subpoenas

5    for third parties.  There have been dozens of subpoenas

6    served by the existing parties on nonparties, and few of

7    those nonparties had the exact same position I'm advocating

8    today, they wanted to do things once.

9              These nonparties came back to the subpoenaing

10   parties and said, we're happy to comply with the subpoena.

11   We're going to negotiate the scope here and there, but

12   we're concerned when you say you want things like sales

13   data.  We're concerned when you talk about pork.  What do

14   you mean by sales data, and what exactly is included in

15   pork?

16             So the parties in the case had to reach agreement

17   on the scope of sales data productions and the definition

18   of pork, what exactly is going to be at issue in the case,

19   and then we took that agreement to the third parties so

20   that they could do their searches for e-mails and their

21   searches for data once.

22             That's just an example of what the parties have

23   had to do to get discovery to the point where we are now

24   where we're just a few weeks away from substantial

25   completion of document and data productions.  We don't want

1    to waste the benefit of that.

2              We don't want to have to start over and

3    renegotiate things that we've already negotiated.  We don't

4    want to have to go back to Judge Bowbeer and talk about the

5    scope of discovery.

6              There are obviously going to have to be some

7    modifications.  We're not unrealistic here.  We realize

8    we're going to have to add search terms for parties like

9    Cisco and Topco and some of these new direct action

10   plaintiffs.  So we realize that there will be additional

11   discovery at some point of some kind.

12             But we do not want to do what we see in the new

13   DAPs' proposal where it does look like they're trying to

14   re-trade some of the agreements on discovery and they are

15   trying to rewrite some of Judge Bowbeer's orders on what

16   the limits of discovery are going to look like.

17             We also agree with Mr. Clark's point about the

18   need for there to be one ECF number and the point that

19   Ms. Scarlett made about consolidation.  On consolidation,

20   Your Honor, it is important to understand this has already

21   been addressed in the pre-existing cases.

22             There is a Case Management Order, ECF 85, that

23   was entered early on that talked about consolidation of

24   future cases.  That order said if there were future cases

25   transferred to this Court that involved substantially

27

1   similar allegations of an antitrust conspiracy in the pork

2   industry, those cases would be consolidated with the

3   existing cases.

4          We used that principle later on, ECF 644.  Judge

5   Bowbeer had a status conference, I think it was the summer

6   of 2019, where everybody discussed the need to get the

7   Winn-Dixie case and the Puerto Rico case consolidated with

8   the class cases.  There had been a lot of confusion up to

9   that point.

10          When an order was entered, was it entered in

11   every case or just certain cases?  When there was a status

12   conference, was it going to involve a few cases or all

13   cases?  When there were pleadings filed, did they have to

14   be filed once or five times?

15          So Judge Bowbeer did the parties a favor there by

16   clearing that up and consolidating everything for

17   administrative purposes only into one matter, and that's

18   what we think should happen here.  If we look at the MDL

19   transfer order, the original transfer order on June 9th,

20   what the MDL panel said was, it was sending the cases to

21   Your Honor's court for consolidated or coordinated

22   proceedings.

23          The way I read that order, the MDL panel left it

24   up to Your Honor, and probably Judge Bowbeer as well, as to

25   how exactly to integrate the cases coming through the MDL

1    process with the cases that have been here for three years

2    now.  So we think for administrative purposes these really

3    do need to be consolidated.  It will be much easier on the

4    Court to have one filing, rather than five or six.

5         It will be much easier on the parties to

6    understand which orders apply in which cases, which status

7    conferences are going to cover which cases, those sorts of

8    details.  Again, this all comes back to efficiency and

9    wanting to do things once rather than multiple times.

10        I agree with everything that has been said about

11   the need for meet and confers.  Maybe some of this can be

12   hashed out.  This idea of whether there is going to be

13   separate tracks for the MDL cases and the preexisting

14   cases, whether they're going to be consolidated and

15   coordinated in some amorphous fashion, I think that's an

16   important issue we probably need to hash out with Judge

17   Bowbeer on a status conference.

18            THE COURT:  All right.  Anyone else from the

19   defense, or were you speaking for everyone, Mr. Robison?

20            MR. ROBISON:  Your Honor, I believe I'm speaking

21   for everybody on the defense side today.

22            THE COURT:  All right.

23        Anything else from plaintiffs that you wish to

24   respond to?

25            MR. GANT:  No, Your Honor.  Thank you.

1          THE COURT:  Okay.  Great.  All right.  Well, we

2   need to get this moving quickly, and I want to move it as

3   quickly as possible in coordination with both the existing

4   cases and the new MDL cases and whatever else comes into

5   the MDL.

6          I think the idea of having, for administrative

7   purposes, one ECF account for filing is a good idea.  It's

8   a lot simpler, and we won't have confusion.  So we will

9   make sure we set that up.

10          Here's what I would like to do:  I would like to

11   see an additional Case Management Order proposed for the

12   MDL.  Is a two-week period enough, or do you need more time

13   for that, Counsel?

14          MR. GANT:  Speaking for DAPs, two weeks we

15   believe is sufficient, Your Honor.  Obviously if we find

16   that that's not enough, we will come back to you and let

17   you know, but my expectation is that that will be

18   sufficient.

19          Thank you.

20          THE COURT:  Okay.  All right.  Ms. Scarlett?

21          MS. SCARLETT:  Two weeks would be sufficient,

22   Your Honor.

23          Thank you.

24          THE COURT:  Okay.  Let's have a draft in two

25   weeks.  If there are aspects of it that can't be determined

1    by the parties, you can write short briefing materials on

2    that, and I will decide right away.  I would like this

3    order to be as closely resembling the order in the existing

4    case as possible.

5            To me it makes no sense to proceed on separate

6    tracks except on issues that are peculiar to a particular

7    case and not the other.  So I would like to see this as

8    close as possible to the existing Case Management Order,

9    and if there is a need to amend the existing Case

10   Management Order to accommodate the addition, additions

11   into the MDL, we can do that.

12           But I would prefer not to do that, and we can

13   address the particulars of who does what at depositions

14   after we get the Case Management Order in place.

15           Does that sound okay?

16           MR. KAPLAN:  Yes, Your Honor.

17           MR. GANT:  Yes, Your Honor, and just to clarify

18   to make sure we are all working consistent with what you

19   would like us to do, this would be a Case Management Order

20   for the MDL.  You asked Ms. Scarlett if that was okay.  I

21   just want to make sure there is no confusion.  Obviously

22   her clients are not in the MDL.

23           I fully agree we should be conferring not only

24   with defendants who are in the MDL but with the classes who

25   have an interest in the structure of the MDL, but I just

1    wanted to make sure we were on the same page that what you

2    want is a companion or supplemental order for the MDL

3    itself and that we leave intact or modify slightly the

4    existing schedule as needed.

5            Is that what you are suggesting, Your Honor?

6            THE COURT:  That's exactly what I'm suggesting.

7    The only reason I asked Ms. Scarlett is I noticed her mute

8    button was off, so I suspected she had something to say.  I

9    try to check out the mute buttons, although I apologize for

10   not noting my own at the beginning of the hearing today.

11   Sometimes that happens.

12           MS. SCARLETT:  Your Honor, there is a reason why

13   I unmuted is just because the schedule in the DAP case does

14   impact the class cases.  Because of that deadline for

15   structured data, that dramatically impacts our ability to

16   prepare for class certification and keep on track in our

17   cases.

18           For that reason, the classes would like to be

19   included and have some input on that.

20           MR. KAPLAN:  Your Honor, I said that I spoke to

21   Mr. Finley yesterday, and it applies to Ms. Scarlett.

22   We're going to work that out.  We're not going to interfere

23   with their class certification.

24           THE COURT:  Okay.  Good.  And once we get that in

25   place, then we can address some other issues relative to

1    the MDL.  If we need coordinating counsel, those kinds of

2    issues, we can address that, and you can address it in the

3    draft Case Management Order if you wish, but I would like

4    to get the schedule on track right away.

5          That's the critical point for getting moving.  My

6    anticipation is, you know, not consolidating the two sides

7    of this case into one but coordinating it very closely so

8    that we're basically on the same track for everything.

9    That would be my intent.

10         All right?

11         MR. GANT:  Thank you, Your Honor.

12         THE COURT:  Anything else anyone has today?  And

13   I will coordinate also with Judge Bowbeer so we're on the

14   same path here as well.  So I appreciate your joining me

15   this morning and getting me up to speed on where we're at.

16   If I could have that draft order two weeks from today, I

17   would appreciate it.

18         If you run into difficulties or there is anything

19   else, you know, just be in touch, and we'll take care of

20   it.  All right?

21         MR. GANT:  One final question, Your Honor.  How

22   would you like it submitted?  You referred to it as a

23   draft.  So you want us to file it on the docket or submit

24   it to chambers?

25         THE COURT:  Submit it to the chambers e-mail box.

1          MR. GANT:  Will do.  Thank you, Your Honor.

2          THE COURT:  And we'll work at making sure we have

3    an order relative to a single filing for everything.  All

4    right?

5          MR. KAPLAN:  Thank you, Your Honor.

6          THE COURT:  Okay.  Thank you, everyone.

7                    **(Court was adjourned.)**

8                    *          *          *

9          I, Kristine Mousseau, certify that the foregoing

10   is a correct transcript from the record of proceedings in

11   the above-entitled matter.

12

13

14

15   Certified by:  s/  *Kristine Mousseau, CRR-RPR*
                         Kristine Mousseau, CRR-RPR
16

17

18

19

20

21

22

23

24

25