# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Case No. 0:18-cv-01776-JRT-HB |
| This Document Relates To: | |
| ALL COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTIONS | |

# COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE <u>WITH SUBPOENA DIRECTED TO AFFILIATED FOODS, INC.</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND .............................................................................................. 2

III.  ARGUMENT ................................................................................................... 5

   A.    Plaintiffs May Subpoena Non-Parties ............................................. 5

   B.    The Court Has Specific Statutory Authority To Compel Compliance With
         The Subpoena ................................................................................... 7

   C.    Plaintiffs Have A Legitimate Need For The Purchase And Sales
         Transactional Data ........................................................................... 9

   D.    Plaintiffs Should Not Have To Compensate Affiliated Foods For The
         Expenses Incurred ......................................................................... 11

IV.   CONCLUSION .............................................................................................. 11

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*El Encanto, Inc. v. Hatch Chile Co., Inc.*, 825 F.3d 1161 (10th Cir. 2016) .................................. 6

*Everflow Tech Corp. v. Millennium Elecs., Inc.*,

    2009 WL 3565558 (N.D. Cal. Oct. 27, 2009)...................................................... 9

*Garneau v. City of Seattle*, 147 F.3d 802 (9th Cir. 1998)................................................ 9

*Heitzman v. Engelstad*, No. 12-CV-2274 MJD/LIB,

    2013 WL 4519403 (D. Minn. July 11, 2013) ...................................................... 6

*Hofer v. Mack Trucks, Inc.*, 981 F.2d 377 (8th Cir. 1992) ........................................... 5

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,

    2014 WL 2884726 (S.D.N.Y. June 26, 2014) .................................................... 9

*In re San Juan Dupont Plaza Hotel Fire Litig.*, 117 F.R.D. 30 (D.P.R. 1987) ............................ 8

*In re Sunrise Sec. Litig.,* 130 F.R.D. 560 (E.D. Pa. 1989)................................................ 7

*In re Uranium Antitrust Litig.,* 503 F. Supp. 33 (N.D. Ill. 1980) .................................................... 7

*In re Welding Rod Products Liability Litig.*, 406 F. Supp.2d 1064 (N.D. Cal. 2005).................. 9

*Matter of Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46 (7th Cir. 1996) ........................ 8

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)............................................. 5

*Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014) .................................... 5

*Shepherd v. Castle*, 20 F.R.D. 184 (W.D. Mo. 1957)................................................. 5

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*,

    444 F.3d 462 (6th Cir. 2006) ........................................................................... 8

**Statutes**

28 U.S.C. § 1407...................................................................................................... 8

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................. 6

Fed. R. Civ. P. 45 ........................................................................................................... 5, 6, 7

**Treatises**

James Wm. Moore et al., Moore's Federal Practice § 112.07[1] [b] (3d ed. 2004) ...................... 8

## I.    INTRODUCTION

The Commercial and Institutional Indirect Purchaser Plaintiffs ("Plaintiffs") respectfully move this Court for an Order compelling third-party Affiliated Foods, Inc. (hereinafter "Affiliated Foods") pursuant to the subpoena *duces tecum* served on it to produce transactional data reflecting purchases of pork products from Defendants and sales of pork products to Plaintiffs and the Class.

Affiliated Foods is a major foodservice distributor and is in the business of supplying produce, meats, bread, and dairy products, including pork products, to grocery stores and restaurants across the country. Affiliated Foods purchases pork products from pork manufacturers and resells those pork products to purchasers and businesses, such as Plaintiffs and similarly-situated class members.

Counsel for Affiliated Foods began negotiations with Plaintiffs by threatening to file a motion for sanctions in response to Plaintiffs' subpoena. However, Affiliated Foods is no stranger to the claims made in the Plaintiffs' complaint or the transactional data that Plaintiffs seek. In fact, Affiliated Foods has served as a plaintiff in several lawsuits involving antitrust claims across the country, including 1) *In Re Packaged Seafood Products Antitrust Litigation*, No. 15-md-2670 (S.D. Cal) (alleging violation of the Sherman Act, 15 U.S.C. § 1, *see* Consolidated Am. Compl., Dkt. No. 152); 2) *In re Broiler Chicken Antitrust Litigation*, No. 1:16-cv-1867 (N.D. Ill.) (same); and *In re Chocolate Confectionary Antitrust Litigation*, No. 1:08-MDL-1935 (M.D. Pa.) (same).

In *Packaged Seafood* and *Broilers*, subpoenas similar to Plaintiffs' were served on other entities and sought essentially the same transactional data as Plaintiffs do here, albeit for different animal protein products. *See* Notices of Third Party Subpoenas, *In Re Packaged Seafood Prods. Antitrust Litig.*, Dkt. Nos. 806, 807, 808, No. 15-md-2670 (S.D. Cal Jan. 31, 2018); Mot. to Quash Subpoena and/or for a Protective Order, *In re Broiler Chicken Antitrust Litig.*, Dkt. No. 973, No. 1:16-cv-8637 (N.D. Ill. June, 22, 2019) (motion to quash ultimately withdrawn, *see* Dkt. No. 1276). Likewise, Affiliated Foods has submitted expert reports in at least one of these cases which apparently relied on transactional data, like Plaintiffs seek to do here. *See* Mem., *In re Chocolate Confectionary Antitrust Litigation*, Dkt. No. 1500, No. 1:08-MDL-1935 (M.D. Pa.).

By virtue of its active participation in these actions, Affiliated Foods is undeniably familiar with the transactional data that Plaintiffs seek. In spite of its presumed familiarity with the contours of the instant litigation, Affiliated Foods continues to rely on a motion to quash and related papers, filed in the Northern District of Texas, in which Affiliated Foods asserts that it will require in excess of 70,000 hours of labor to respond to Plaintiffs' subpoena. Affiliated Foods has so far been unwilling to make any compromise offer of production.

## II.   BACKGROUND

On May 7, 2021, Plaintiffs served Affiliated Foods with a subpoena *duces tecum*. The requests in the subpoena relate to the transactional purchase and sales data of pork products from the purchase of pork products from Defendants and the sale of those pork

products to customers and/or end-user consumers for the period January 1, 2004 to present. *See* Declaration of Anthony Carter, Ex. A.[1]

Affiliated Foods, however, has so far refused to produce any discovery in response to the Plaintiffs' subpoena, which includes requests for the production of:

- Transactional data (maintained as structured data) sufficient to reflect Your purchases of Pork from Defendants, including but not limited to the net wholesale prices at which You purchased the Pork, during the period January 1, 2004 to present;

- Transactional data (maintained as structured data) sufficient to reflect Your sales of Pork purchased from Defendants, during the period January 1, 2004 to the present; and

- Any data dictionaries, data crosswalks, or data keys relevant to the requests above.

*Id.*

On May 17, 2021, counsel for Affiliated Foods responded via email threatening a motion for sanctions and claiming Plaintiffs' subpoena *duces tecum* is defective under Federal Rules of Civil Procedure 45. *See* Carter Decl., Ex. B. Affiliated Foods' objection was based on the assertion the subpoena requires Affiliated Foods to produce documents in Washington, D.C., more than 100 miles from Amarillo, Texas, where Affiliated Foods is headquartered. The parties met and conferred on May 20, 2021 and successfully

---

[1] Exhibits to the Declaration of Anthony Carter will be referred to as "Ex. [____]."

resolved this issue by clarifying that any production would occur electronically, thereby relieving Affiliated Foods of any distance-related burden, and in addition, Plaintiffs agreed to extend the time to respond to the subpoena *duces tecum* by 30 days. *See* Carter Decl., Ex. C. Plaintiffs expressed an interest in narrowing the scope of their requests based on Affiliated Foods' apparent willingness to produce pork product purchase and sales transactional data to satisfy the subpoena. *Id*.

On June 25, 2021, the parties again met and conferred to determine what information Affiliated Foods was willing to produce in response to the subpoena. Plaintiffs reiterated their narrowly-tailored request for transactional data reflecting the purchase and sale of pork products from Affiliated Foods. Soon after the call, Counsel for Affiliated Foods sent Plaintiffs an email outlining the burden and expense Affiliated Foods would have to bear in order to produce the data requested by Plaintiffs. *See* Carter Decl., Ex. D.

On July 7, 2021, Affiliated Foods surprisingly served its Motion to Quash the subpoena *duces tecum,* which it filed in USDC for the Northern District of Texas (the "Texas Action"). On July 12, 2021, the parties again met and conferred on how to best address Affiliate Foods' cost concerns associated with complying with the subpoena while working towards providing Plaintiffs the narrowly-focused transactional data requested. *See* Carter Decl., Ex. E, Email chain between David Mullin and Anthony Carter dated July 15-25, 2021. The parties are now at an impasse as Affiliated Foods still refuses to produce any transactional data as requested by the subpoena *duces tecum*—data to be used to demonstrate that Plaintiffs and other similarly situated class members that purchased pork were forced to pay artificially inflated, supra-competitive prices for pork.

4

III.    **ARGUMENT**

A.    **Plaintiffs May Subpoena Non-Parties.**

Federal Rule of Civil Procedure 45 governs any request to produce documents by subpoena. The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as can be requested under Rule 34, which in turn is the same as can be requested under Rule 26(b).[2] Rule 26(b) permits a party, such as Plaintiffs, to "obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense". Fed. R. Civ. P. 26(b)(1); *see also Shepherd v. Castle*, 20 F.R.D. 184, 189 (W.D. Mo. 1957) ("under the mandate of Rule 45[], 'any matter, not privileged, which is relevant to the subject matter involved in the pending action', Rule 26(b), which 'constitutes or contains evidence' may be sought by subpoena *duces tecum* as a matter of right …."); *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 139 (2014) ("The general rule in the federal system is that, subject to the district court's discretion, '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" (quoting Fed. Rule Civ. Proc. 26(b)(1)).

The general rule is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and

---

[2] Fed. R. Civ. P. 45 advisory committee's note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules"); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)").

interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence"). This includes the power to subpoena relevant information that is in the hands of nonparties to the action.[3] *See also* Fed. R. Civ. P. 45, committee note as to "purpose" of 1991 amendments ("to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties"); *El Encanto, Inc. v. Hatch Chile Co., Inc.*, 825 F.3d 1161, 1163 (10th Cir. 2016) ("Rule 45 today affords parties the power to compel nonparties to produce documents without also convening a deposition").

The vast reach of the subpoena power is not without limits.  Indeed, Rule 45 provides corresponding protections for nonparties subject to subpoena. For instance, after being served with a subpoena *duces tecum*, a nonparty may object to producing any or all the requested information by serving a written objection on the party or person designated in the subpoena. Such a written objection must be served to the subpoenaing party within fourteen days after the subpoena is served, but it need not be filed with the court. Fed. R. Civ P. 45(d)(2)(B).  Here, Affiliated Foods has asserted that production of the requested transactional data is unduly burdensome and cost prohibitive. *See* Carter Decl., Ex. D.  It is this objection, which does not seem to have been properly served or preserved, by

---

[3] *See, e.g.*, *Heitzman v. Engelstad*, No. 12-CV-2274 MJD/LIB, 2013 WL 4519403, at *3 (D. Minn. July 11, 2013), *aff'd*, No. CIV. 12-2274 MJD/LIB, 2013 WL 4516320 (D. Minn. Aug. 26, 2013) ("Pursuant to a subpoena, a non-party can be compelled to produce evidence regarding any matter relevant to the claim or defense of any party, unless a privilege applies.") (quotation omitted quoting Fed. R. Civ. P. 26(b)(1), 34(c)).

Affiliated Foods that has triggered Plaintiffs' motion to compel this Court to order compliance with the subpoena in accordance with the design of the Federal Rules of Civil Procedure.  Fed. R. Civ P. 45(d)(2)(B)(i).[4]

### B.   The Court Has Specific Statutory Authority To Compel Compliance With The Subpoena.

The federal statute governing multidistrict litigation ("MDL"), 28 U.S.C. § 1407, provides that "[t]he judge or judges to whom [MDL] actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(b). The MDL statute thus authorizes a transferee court judge to sit as the court in "'other districts to hear and decide motions to compel discovery from non-parties.'" *In re Sunrise Sec. Litig.,* 130 F.R.D. 560, 586 (E.D. Pa. 1989) (quoting *In re Uranium Antitrust Litig.,* 503 F. Supp. 33, 35 (N.D. Ill. 1980)); *see also id.* ("[A] multidistrict judge may decide a motion to compel a non-party in other districts even if he or she is not physically situated in those districts."); 17 James Wm. Moore et al., Moore's Federal Practice § 112.07[1] [b] (3d ed. 2004) ("[T]he [MDL] judge has jurisdiction to order nonparties to comply with a subpoena duces tecum issued by another district judge. There is no requirement that the [MDL] court or judge be physically present in the other district to decide a motion to compel production pursuant to a subpoena issued by another district." (footnotes omitted));

---

[4] Plaintiffs are contemporaneously filing in the Texas Action a Motion to Transfer and a Motion to Stay, as well as an Opposition to Affiliated Foods' Motion to Quash. *See* Case No. 2:21-mc-00003-Z (N.D. Tex.), Dkt. 6-10.

*see also U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 468–69 (6th Cir. 2006) ("A judge presiding over an MDL case therefore can compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted.")[5]

Indeed, for the purposes of a subpoena in an MDL, the MDL judge is, pursuant to the statute, acting as a judge of the District of Minnesota, not the Northern District of Texas, and any appeals would go to the Eighth Circuit rather than the Fifth. *See Diabetes Treatment Centers of Am., Inc*., 444 F.3d at 468 ("[T]he MDL statute empowers an MDL judge to act as a judge of the deposition or discovery district."); *Matter of Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir. 1996) (MDL judge "is entitled to exercise all of the powers of a judge in the Eastern or Western District of Wisconsin" on nonparty witnesses' motions for protective orders, and Wisconsin judges were entitled to request that the MDL court rule on the motions). These and other decisions required no showing beyond the pendency of an MDL in order to refer such motions to the MDL judge. None of Affiliated Foods' arguments and authorities address the resolution of subpoena disputes when the underlying litigation is an MDL.

---

[5] The MDL transferee judge also has the power to refer these out-of-district discovery matters to a magistrate judge in the transferee district. *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 117 F.R.D. 30, 32 (D.P.R. 1987).

Therefore, this Court, the transferee court in an MDL action, may compel compliance with the subpoena *duces tecum* served by Plaintiffs. *In re Welding Rod Products Liability Litig.*, 406 F. Supp.2d 1064 (N.D. Cal. 2005) (motion to compel compliance with Rule 45 subpoena should be heard in the MDL court); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 2014 WL 2884726 (S.D.N.Y. June 26, 2014) (authority of MDL court extends to enforcing compliance with third-party document subpoenas).

## C.   Plaintiffs Have A Legitimate Need For The Purchase And Sales Transactional Data.

Rule 45, through Rule 26, provides for liberal discovery, and relevance is construed broadly to include any information reasonably calculated to lead to the discovery of admissible evidence. *Everflow Tech Corp. v. Millennium Elecs., Inc.*, 2009 WL 3565558, at *1 (N.D. Cal. Oct. 27, 2009); *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998).

The information requested will materially advance Plaintiffs' proof of their claims. The data for Affiliated Foods' purchase and sales of pork products can be analyzed by expert witnesses, such as economists, to determine whether Affiliated Foods absorbed price increases, or passed them through to their customers by raising downstream prices, impacting Plaintiffs and similarly-situated class members.  Plaintiffs in this case have issued subpoenas to more than eighty food distributors across the country requesting structured transactional data, and the inclusion of Affiliated Foods' transactional sales and purchase data in the materials to be analyzed by Plaintiffs will contribute to a more

complete and robust analysis of impact and damages to Plaintiffs and the class that they seek to represent.

At class certification, Plaintiffs will demonstrate that damages are calculable on a class-wide basis. That usually includes demonstrating an overcharge on the price of pork sold by Defendants to direct purchasers, such as Affiliated Foods, and then measuring pass-through of that overcharge to the Plaintiffs and similarly-situated class members. This pass-through estimation is potentially significant to Plaintiffs' proof of their claims along with their forthcoming motion for class certification. *See In re Aftermarket Filters*, No. 08 C 4883, 2010 WL 3909502, at *2 (N.D. Ill. Oct. 1, 2010) ("[I]t is undisputed that discovery from direct purchasers is necessary on the issue of certifying an indirect purchaser class."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 454 (N.D. Cal. 2014) (overruling direct purchaser plaintiff's objection and allowing downstream discovery related to direct purchaser's pricing because it was "directly relevant to the question of how, and in what amount, any potential overcharges were passed through to other plaintiffs."); *see also In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 464 (D. Kan. 2006). Because this kind of transactional data is routinely used in indirect purchaser cases to establish antitrust injury and pass-through of damages, it is precisely the type of data that non-parties are typically required to produce in indirect purchaser antitrust litigation, which Affiliated Foods knows and is familiar with.

The Court should issue an Order compelling Affiliated Foods to comply with the subpoena served on May 7, 2021, as the balance here clearly tips in favor of discovery.

**D.      Plaintiffs Should Not Have To Compensate Affiliated Foods For Any Expenses Incurred.**

Courts should also consider whether a subpoena is directed towards a non-party witness, and if so, "[a] non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court." Fed. R. Civ. P. 45, Advisory Committee Note of 1992, subdivision (c). Affiliated Foods projects it will take approximately 73,939 labor hours at a cost of $1,256,963.00 plus benefits to provide the transactional data requested by Plaintiffs' subpoena. *See* Carter Decl., Ex. D.  Further, Affiliated Foods baselessly claims it would have to hire an additional 35.5 employees to complete the data production in one year. *Id.*  Plaintiffs are not requesting Affiliated Foods spend thousands of hours or hire dozens of employees creating a dataset that does not exist, nor do Plaintiffs expect Affiliated Foods to spend over one million dollars to satisfy the subpoena.  Plaintiffs are simply looking for data on pork sales and purchases maintained in the normal course of Affiliated Foods' business operations.  Plaintiffs have repeatedly advised counsel for Affiliated Foods that they will work with Affiliated Foods to devise a method for obtaining the requested information in the most expeditious and cost-effective manner possible. *See* Carter Decl., Ex. E, Email from Anthony Carter to David Mullin dated July 15, 2021.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion to enforce the subpoena directed to Affiliated Foods and require Affiliated Foods to produce all transactional data responsive to Request Nos. 2 and 4, which request

pork and purchase and sale transactional data, within ten (10) business days of the issuance of the Proposed Order.

Date: August 17, 2021                    Respectfully Submitted,

By: */s/ Blaine Finley*_____
Jonathan W. Cuneo (*pro hac vice*)
Blaine Finley (*pro hac vice*)
Yifei (Evelyn) Li (*pro hac vice*)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 589-1813
jonc@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cuneolaw.com

Shawn M. Raiter (MN# 240424)
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
(651) 312-6518 Telephone
sraiter@larsonking.com

***Co-Lead Counsel for Commercial and
Institutional Indirect Purchaser Plaintiffs***

Don Barrett (*pro hac vice*)
David McMullan (*pro hac vice*)
Sterling Starns (pro hac vice)
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com
sstarns@barrettlawgroup.com

Jon A. Tostrud
Anthony M. Carter
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com

J. Gordon Rudd, Jr., (MN# 222082)
David M. Cialkowski, (MN# 0306526)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612.341.0400
gordon.rudd@zimmreed.com
david.cialkowski@zimmreed.com
behdad.sadeghi@zimmreed.com

Marcus Bozeman (*pro hac vice*)
**BOZEMAN LAW FIRM, P.A.**
400 West Capitol, Suite 1700
Little Rock, Arkansas  72201
https://www.bozemanfirm.com
Telephone:  (501) 492-3441
mbozeman@bozemanfirm.com

***Plaintiffs' Steering Committee for Commercial
and Institutional Indirect Purchaser Plaintiffs***

14

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 17th day of August, 2021, I served the foregoing document and related motion filings through the CM/ECF system and on the following party by electronic mail:

> David Mullin
> **MULLIN HOARD & BROWN, L.L.P.**
> 500 S. Taylor, Suite 800
> Amarillo, Texas 79101-2445
> dmullin@mhba.com

By:  */s/ Blaine Finley*_____
Blaine Finley