# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Case No. 0:18-cv-01776-JRT-HB |
| This Document Relates To:<br>ALL ACTIONS | **REDACTED - FILED PUBLICALLY**<br><br>**CLASS PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL HORMEL TO PRODUCE RESPONSIVE TEXT MESSAGE CONTENT AND TO ENFORCE SUBPOENAS TO HORMEL CUSTODIANS** |

561035.13

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 3

III. ARGUMENT .................................................................................................................. 7

    A.    Legal Standard ..................................................................................................... 7

    B.    Hormel Must Identify and Produce Its Agreed Document Custodians' Text Message Content ............................................................... 8

        1.    The Hormel Custodians' Text Message Content Is in the Possession, Custody, or Control of Hormel. ................................. 8

        2.    Hormel Was, and Is, Required to Preserve Its Custodians' Text Message Content. ................................................................. 11

    C.    The Court Should Enforce the Subpoenas to the Hormel Custodians and Require Them to Produce Relevant Text Message Content ................. 14

IV. Conclusion .................................................................................................................... 16

## I.  INTRODUCTION

Defendant Hormel Foods Corporation ("Hormel") has refused to search for or produce (or even preserve, except by happenstance[1]) *any* text message content from its document custodians' mobile devices or applicable cloud backups. Text messages and phone records will likely provide compelling evidence of Defendants' supply-reduction and price-fixing conspiracy. *See, e.g.*, *United States v. Norman W. Fries*, No. 1:21-cr-00168-RM (D. Colo. July 28, 2021), ECF No. 30, at 21 (indicating that text messages between employees of defendants were "part of the conspiracy" in price-fixing conspiracy involving broiler chickens). The Court should compel Hormel to produce relevant, responsive text messages from its custodians' mobile devices and/or cloud backups.

Hormel claims its custodians' work-related text messages are outside its possession, custody, or control because the custodians' mobile devices are "personal" devices, owned and paid for by the employees, pursuant to Hormel's bring-your-own-device policy. Belying this unsupported legal assertion (a position no other Defendant in this hard-fought litigation has taken[2]), Hormel admits its custodians *used their mobile devices for work.* This admission defeats Hormel's contention that it "is not aware of" its custodians sending or receiving work-related text messages and "has no reason to believe" they ever did so. Hormel and its counsel were obligated to conduct an adequate investigation to *determine*

---

[1] At most, based upon Hormel and its custodians' representations, it appears that the phones of only 5 of Hormel's 30 agreed document custodians were ever imaged in this litigation—in one instance, not until 2021.

[2] Every other Defendant has agreed to search for and produce relevant text messages from its agreed document custodians.

561035.13                                           1

the extent to which relevant and responsive information is (or was) contained in its custodians' mobile devices and cloud backups; it cannot simply assume away its discovery obligations like this, particularly when the limited facts it has disclosed, common sense and ordinary mobile device usage habits from 2018 to the present, and third-party phone log data discovery from the telephone carriers compel the opposite conclusion.

Given Hormel's response, Plaintiffs[3] subpoenaed Hormel's document custodians as a stopgap measure to mitigate the potential loss of information and to obtain the documents Hormel should have produced itself. But the individual custodians have also declined to search for documents in any meaningful way because, they claim, they do not believe they are likely to have relevant and responsive information.

Plaintiffs seek an order: (1) compelling Hormel to produce the text message content of its currently employed custodians, including backup content stored on cloud services; (2) declaring Hormel had since the outset of the litigation, and continues to have with respect to custodians who are current employees, an obligation to preserve text message content from the custodians' mobile devices and cloud backups; and to the extent necessary (3) enforcing the subpoenas to the Hormel custodians for the same material.[4]

---

[3] Unless otherwise specified, "Plaintiffs" in this brief refers to the Class Plaintiffs (Direct Purchaser Plaintiffs, Consumer Indirect Purchaser Plaintiffs, and Commercial and Institutional Indirect Purchaser Plaintiffs).

[4] If the Court compels Hormel to produce this information for its document custodians who are current employees, then Plaintiffs are willing to withdraw their request to enforce those particular subpoenas and maintain their request only as to Hormel's document custodians who are no longer employed by Hormel. A chart summarizing the employment status of each of the Hormel document custodians is submitted herewith as Exhibit 1 and a compilation of all objection letters sent by the Hormel custodians is submitted herewith as

561035.13                                                2

## II.   BACKGROUND

On June 29, 2018, Plaintiffs initiated this action alleging that from at least 2009, Defendants, including Hormel, engaged in a conspiracy to fix, raise, maintain, and stabilize the price of pork. On November 1, 2018, Plaintiffs served their first set of document requests on Defendants. Bourne Decl. Ex. 3. Substantively, Plaintiffs requested the production of documents related to communications and meetings with the other defendants and industry analysts, and information regarding supply, demand, and price of pork products. *See, e.g.*, *id.* at Requests 3, 4, 5, 6, 7, 8, 14, 15, 16, 17, 18, 19. Plaintiffs and Hormel met and conferred extensively and eventually reached agreement on the subject matter of the responsive documents Hormel would search for and, if available, produce.

From the start of the discovery process, Plaintiffs were concerned that cell phone data needed to be preserved or else would likely be lost as time passed. For that reason, the parties agreed upon a protocol for the preservation of phone records and included provisions in the ESI protocol relating to custodial cell phone and personal communications data. *See* Order re Production of Electronically Stored Information & Paper Docs. § V(E), ECF No. 292. The provision related to the preservation of cell phone data was disputed and submitted to the Court. *See* ECF No. 233-2. If Hormel had clearly and expressly notified Plaintiffs that it did not intend to preserve or produce phone data, including text messages, from its document custodians' mobile devices, Plaintiffs could have subpoenaed Hormel's agreed document custodians to ensure phone data was not lost.

---

Exhibit 2 to the Declaration of Joseph C. Bourne in Support of Motion to Compel ("Bourne Decl.").



*See* Bourne Decl. Ex. 4 (Interrog. Resp. 9)

The dispute now before the Court concerns the *sources of documents* for Hormel's document custodians that must be searched for responsive documents. There is no question that Plaintiffs' document requests encompass text message content.[5] Plaintiffs defined "Document" to include written information on "mobile phones or devices," even providing "text messages" as an example of a document. Bourne Decl. Ex. 3 (Pls. First Set of Document Requests, at Instruction 8); *see also* Bourne Decl. Ex. 5 (First Set of Interrogatories, at Instruction 4).



Bourne Decl. Ex. 4 (Interrog. Resp. 9).

*Id.*

---

[5] As used in their communications with Hormel, Hormel's custodians, and now in this Motion, by "text message content" Plaintiffs refer to the content of SMS and MMS text messages or the content from a messaging application including but not limited to iMessage.

561035.13                                   4

(emphasis added). Nonetheless, Hormel maintained that its document custodians' cell phones were "outside [its] possession, custody, or control." *Id.* at Interrog. Resp. 10.

The parties' written correspondence and telephonic meet and confer confirmed that Hormel maintains its position that it will not produce text message content from its custodians' mobile devices. *See* Bourne Decl. Exs. 6, 7, 8, 9, 10. Notably, unlike phone records, which can be obtained through carriers, text message content resides solely on personal cell phones, unless it is backed up on the cloud. Thus, unable to obtain the requested materials, Plaintiffs subpoenaed the 30 Hormel custodians. All of them stated that their current phones are not the same ones used during the time of the conspiracy, but only five had their phones imaged to preserve the documents and information contained on the phone. Bourne Decl. Exs. 1, 2.[6]

The search terms and parameters Plaintiffs proposed to the Hormel custodians were substantially similar to those that Plaintiffs proposed to the other Defendants. Plaintiffs included a list of phone numbers associated with Defendants and other industry participants for the custodians to search, as well as terms relating to non-party pork integrators and their affiliates, Defendant Agri Stats and its affiliates, and major industry trade associations. These terms were carefully drafted by Plaintiffs' counsel to capture information relevant to Plaintiffs' conspiracy allegations while weeding out purely personal text messages,

---

[6] The only way to preserve to text message and phone log data is through imaging, but the custodians represented they do not have the phones used during the relevant time period, and only five custodians imaged their phones. Although Plaintiffs have obtained log data from phone carriers (e.g., AT&T) relating to phone calls and SMS or MMS text messages, log data relating to any iMessages the custodians sent is available only from the devices themselves. *See* Bourne Decl. ¶ 25.

561035.13                                              5

taking into account the unique nature of text messages (*e.g.*, their brevity) and the smaller universe of potentially responsive documents (as compared to emails, for example). Bourne Decl. ¶ 12. Plaintiffs requested the custodians to first search their text message content for the phone numbers and either produce all "hits" or review them for relevancy, suggesting that any inter-defendant communications be directly produced, given the nature of Plaintiffs' claims. As a second and separate step, Plaintiffs requested that any remaining text messages be searched using the specific terms, subject to a relevance review.

Counsel for the Hormel custodians objected to this methodology, claiming the search terms were overly broad. Bourne Decl. Exs. 11, 12. During the subsequent meet and confer, the custodians' counsel refused to search the phones of each Hormel custodian, suggesting that Plaintiffs identify particular individuals that might have especially responsive information and limit the search to those individuals. Bourne Decl. ¶ 15. The Hormel custodians took this position even though each document custodian was designated as such by Hormel, the search terms and parameters were designed to capture relevant or potentially relevant documents, and captured documents would largely be subject to an attorney-conducted relevancy review. Bourne Decl. Exs. 11, 12. Following the meet and confer, the positions of the Hormel custodians and Plaintiffs were considerably at odds.

With Hormel refusing to produce the requested material and its custodians taking effectively the same position in response to the subpoenas, relevant data has almost certainly been lost in the three years since this lawsuit was initiated. But Plaintiffs will not know what may have been lost until they receive the relevant and responsive text messages that still exist from Hormel's agreed document custodians. At this point, it is paramount

561035.13                                6

that Hormel and its custodians search for and produce responsive phone content on their personal cell phones to the greatest extent feasible.

### III.   ARGUMENT

#### A.   Legal Standard

Parties may obtain discovery that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 34 requires the production of any relevant and responsive document, including "data or data compilations—stored in any medium from which information can be obtained." Fed. R. Civ. P. 34(a)(1)(A). Further, "it is well established that text messages 'fit comfortably within the scope of materials that a party may request under Rule 34.'" *Paisley Park v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019) (quoting *Flagg v. City of Detroit*, 252 F.R.D. 346, 352-53 (E.D. Mich. 2008)). The scope of discovery under Rule 45 is the same as the scope of discovery under Rules 34 and 26. *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008); *Richmond v. UPS Serv. Parts Logistics*, No. IP01-1412-C-H/G, 2002 WL 745588, at *2 (S.D. Ind. Apr. 25, 2002); *see also Mille Lacs Band of Ojibwe, v. Cty. of Mille Lacs*, No. 17-CV-5155 (SRN/LIB), 2020 WL 1847574, at *5 (D. Minn. Apr. 13, 2020); *United States v. R.J. Zavoral & Sons, Inc.*, No. 12-CV-668 (MJD/LIB), 2014 WL 12756820, at *3 (D. Minn. Jan. 17, 2014).

Parties are also required to take reasonable steps to preserve electronically stored information ("ESI") that is relevant to the litigation. Fed. R. Civ. P. 37(e). The duty to preserve evidence arises when a party knows or should have known that the evidence is

561035.13                                          7

relevant to current or future litigation. *The Valspar Corp. v. Millennium Chems., Inc.*, No. 13-cv-3214 (ADM/LIB), 2016 WL 6902459, at *4 (D. Minn. Jan. 20, 2016). The requesting party need not identify all types of ESI that may need preservation in the future, as that burden lies with the preserving party. *See* Fed. R. Civ. P. 37(e); *Paisley Park*, 330 F.R.D. at 234. Foreseeable litigation requires the key players to preserve "unique, relevant evidence that might be useful to the adversary." *Paisley Park*, 330 F.R.D. at 233 (quoting *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 517 (S.D. W. Va. 2014)); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("A party's discovery obligations do not end with the implementation of a 'litigation hold'—to the contrary, that's only the beginning. Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents.").

### B. Hormel Must Identify and Produce Its Agreed Document Custodians' Text Message Content

Hormel has refused to identify and produce relevant text message content from its agreed document custodians, putting it at odds with its discovery obligations.

#### 1. The Hormel Custodians' Text Message Content Is in the Possession, Custody, or Control of Hormel.

Hormel has repeatedly asserted that documents or information from its custodians' cell phones or cloud backup is not "within its possession, custody, or control." Bourne Decl. Ex. 13 (Defendant Hormel Foods Corporation's Initial Objections and Responses to All Plaintiffs' First Set of Requests, 5(d)); Ex. 4 (Interrog. Resp. No. 9); Ex. 8. This position is contrary to law.

Whether there is "possession, custody, or control" of materials does not depend solely on literal physical possession; rather, it depends on the relationship between the parties. Courts in this District and others have concluded that "control" encompasses the *legal right or practical ability* to obtain the documents. *Damgaard v. Avera Health*, CIV. NO. 13-2192 (RHK/JSM), 2014 WL 12599853, at *2 (D. Minn. June 9, 2014) ("Courts in this jurisdiction and other jurisdictions subscribe to the proposition that control not only encompasses actual physical possession of the documents, but also the legal right or practical ability to demand the documents from a third party."); *Afremov v. Sulloway & Hollis, P.L.L.C.*, No. CV0903678PSJJSM, 2011 WL 13199154, at *3 (D. Minn. Dec. 2, 2011) ("The question, therefore, is not only whether the documents are within the physical possession of the party, but also whether the party has a legal right to the documents or practical ability to obtain the information."); *see also Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-04394 (AJN) (BCM), 2016 WL 5408171, at *6 (S.D.N.Y Sept. 27, 2016) ("[C]orporations have control over their officers and employees and corporations may be required to produce documents in their possession.") (collecting cases).

In *H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, the defendant moved to compel the plaintiff to produce "non-privileged instant messages, text messages, voicemail and other electronically stored information ('ESI') that [was] within [the plaintiff's] custody or control." No. 2:15-cv-00631-AJS, 2015 WL 12791338, at *2 (W.D. Pa. July 28, 2015). The court explained that pursuant to the plaintiff's bring-your-own-device program, the company had possession, custody, or control over work-related data on its employees'

561035.13                                9

devices, noting the company's ability to "delete any [company] data it believes may be in jeopardy." *Id.* at *4. Accordingly, the court ordered the plaintiff to determine whether its employees sent or received text messages from their personal devices for relevant business-related purposes, and if so, to produce such material. *Id.* at *3-4.

This case is on all fours with *H.J. Heinz.* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇ *See* Bourne Decl. Ex. 14, HFC-PORKAT-0000536 at -539 ▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at -541.

▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* ▇▇▇▇▇▇▇▇▇▇▇▇
▇▇



*Id.*; *see also H.J. Heinz*, 2015 WL 12791338, at *3-4. Hormel appears to have both a legal and practical ability to demand or obtain materials from its employees' personal mobile devices, giving it possession, custody, or control of its custodians' personal cell phones as a matter of law. *See Damgaard*, 2014 WL 12599853, at *2. It apparently has *never even asked* them for this information. But its own conduct in this litigation shows that it could

have asked its employees for their personal mobile devices (which they used for work purposes), and they would have complied. *See* Bourne Decl. Ex. 15 (stating Hormel would hire a vendor to image the personal cell phones of five "Identified Senior Executives" even though Hormel did not purchase or pay for their cell phones).

Hormel has not shown that its custodians never communicated by text for business purposes. Rather, Hormel claims only that it is "not aware" of such text messages and "has no reason to believe" its custodians texted for such purposes. This position is dubious at best, as Hormel *admitted* that its employees use their "personal" phones for work purposes, including emails and phone calls—particularly since Hormel refused to provide detailed information about its investigation into this matter. Bourne Decl. ¶ 21 & Exs. 7, 8, 9, 10. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Bourne Decl. ¶¶ 18-20.

2.   Hormel Was, and Is, Required to Preserve Its Custodians' Text Message Content.

Hormel's related position that it was not obligated to preserve its custodians' text message content because it was not aware of its custodians using personal cell phones for work-related text messages is equally without merit.

In *In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, the defendants argued that because an employee whose work-related text-messages were only "non-substantive" pursuant to a policy prohibiting "substantive" work-related text messages, their failure preserve the employee's text message content was harmless. MDL No. 2385, 2013 WL 6486921, at *18 (S.D. Ill. Dec. 19, 2013), *order rescinded on other*

*grounds sub nom. In re Boehringer Ingelheim Pharms., Inc.*, 745 F.3d 216 (7th Cir. 2014). The court disagreed, however, explaining the plaintiff "d[id] not have to accept as true" that employees do not send substantive text messages, recognizing "[i]t is certainly common knowledge that texting has become the preferred means of communication." *Id.*

In *Paisley Park v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019), the plaintiff moved for sanctions against the defendants because they failed to preserve text message data. The defendants argued, in part, that they "could not possibly be expected to know" that they should have preserved text messages. The court disagreed and remarked:

> In the contemporary world of communications, even leaving out the potential and reality of finding the modern-day litigation equivalent of a "smoking gun" in text messages, emails, and possibly other social media, the Court is baffled as to how Defendants can reasonably claim to believe that their text messages would be immune from discovery.

*Id.*; *see also United States v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003 (WMW/DTS), 2020 WL 9209366, at *12 (D. Minn. July 10, 2020), *reversed on other grounds* (rejecting defendants' argument that they were not obligated to preserve text messages when defendants were "clearly aware that communications about remunerations and trips, whether in text messages or elsewhere, were relevant to the potential litigation").

Hormel's obligation to preserve text message content relevant to the litigation began, at the latest, on June 29, 2018, the date the Complaint was filed. *Valspar*, 2016 WL 6902459, at *4. Hormel did not tell Plaintiffs whether it had reasonably preserved text message content. Instead, Hormel equivocated by stating it "has no reason to believe that any information potentially relevant to this lawsuit uniquely resides on any personal

561035.13                                    12

devices," and that Hormel "does not purchase or otherwise pay for cell phones." Bourne Decl. Ex. 15. It is clear that Hormel did not take adequate steps to preserve text message content; Hormel did not image its custodians' phones or instruct them to do so based on its litigation position that their phones are outside its possession, custody, or control.

Simply disclaiming the existence of relevant text message content, or not otherwise acknowledging a need to preserve it, does not relieve Hormel of its preservation obligations. *See Pradaxa*, 2013 WL 6486921,*18; *Paisley Park*, 330 F.R.D. at 234; *see also Alter v. Rocky Point Sch. Dist.*, No. 13-1100 JS AKT, 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014) (rejecting argument that employer was "not obliged to preserve work-related ESI" from employees' "personal computers" because, "to the extent that the . . . employees had documents related to this matter, the information should have been preserved *on whatever devices contained the information* (*e.g.* laptops, cellphones, *and any personal digital devices* capable of ESI storage)") (emphasis added).



Bourne Decl. Ex. 4 (Interrog. Resp. 9); Ex. 6. As courts have explained, text messaging has become a common method of communication and is not immune from discovery. *Pradaxa*, 2013 WL 6486921, at *18; *Paisley Park*, 330 F.R.D. at 234.

561035.13                                    13

███████████████████████████████████████████████████ Bourne Decl. ¶¶18-20. Hormel's claimed "belief" that its custodians do not use personal cell phones for business-related text messages did not relieve its obligation to preserve cell phone data.

In short, Hormel had a duty to preserve its custodians' phone content, as its custodians' personal cell phones were within its possession, custody, or control. Because text message content cannot be preserved except through the custodians' mobile devices and cloud backup, Hormel should have taken every reasonable step to preserve the data on its custodians' cell phones. Hormel did not, and now it is likely that relevant and responsive text message content has been lost. Accordingly, Plaintiffs respectfully request that the Court order Hormel to preserve any currently existing text message content by imaging their phones and preserving any cloud backup, and to declare Hormel has been obligated to do so since 2018 when this litigation was commenced.

### C. The Court Should Enforce the Subpoenas to the Hormel Custodians and Require Them to Produce Relevant Text Message Content

A party that served a subpoena may move the court for the district where the compliance is required for an order compelling production. Fed. R. Civ. P. 45(d)(2); *see also* Fed. R. Civ. P. 34(c) (nonparty may be compelled to produce documents and tangible things). As noted above, the standard for obtaining document discovery pursuant to Rule 45 is the same as that pursuant to Rules 26 and 34, and therefore includes text messages. *See, e.g.*, *Paisley Park*, 330 F.R.D. at 234; *R.J. Zavoral & Sons, Inc.*, 2014 WL 12756820, at *3; *Williams*, 2008 WL 68680, at *3.

In response to the subpoenas, the Hormel custodians have refused to produce text message content relating to the pork industry, claiming they are "unaware" of such data and that it is not relevant to the case. The 30 document custodians stated they are using different phones than those used during the relevant time period, and of all 30 subpoenaed custodians, only five have had their phones imaged (in some instances, not until 2021). The custodians have otherwise refused to search the existing phones using a search methodology, such as the one agreed-to by other Defendants in this litigation. Bourne Decl. ¶ 23 & Exs. 1, 2. ███████████████████████████████

███████████████████████████████████████████████ Bourne Decl. ¶¶ 18-20.

Text message content on the custodians' mobile devices and cloud backup is relevant, responsive, and proportional to the needs of the case. Plaintiffs allege that beginning in at least 2009, Defendants, including Hormel, engaged in a conspiracy to fix, raise, maintain, and stabilize the price of pork. The principal method by which Defendants implemented and executed their conspiracy was by coordinating output and limiting production with the intent and expected result of increasing pork prices. Defendants' employees, like the Hormel custodians, communicated with other Defendants as well as internally about pricing and supply through various mediums, including text messages. Accordingly, any work-related text messages on the personal cell phones or cloud backup of the Hormel custodians are relevant to proving Plaintiffs' claims, and Plaintiffs respectfully request the Court enforce the subpoenas to the Hormel custodians by requiring the custodians (at least those no longer employed by Hormel, or any the Court finds outside

561035.13                                      15

of Hormel's possession, custody, or control) to utilize the search methodology proposed by Plaintiffs. *See* Bourne Decl. Ex. 16 (proposed search methodology).

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court grant Plaintiffs' Motion. Specifically, Plaintiffs seek an Order: (1) compelling Hormel to search for and produce responsive text message content from its agreed document custodians' personal mobile devices and cloud backup (at least those who are still currently Hormel employees); (2) concluding that Hormel had, and has, an obligation to preserve the text message content of its agreed document custodians (at least those who are now, or at the time the lawsuit was filed were, Hormel employees); and (3) enforcing the subpoenas to the 30 Hormel custodians and compelling them to search for and produce responsive and relevant text message content pursuant to the search terms and methodology proposed by Plaintiffs.

| | |
|---|---|
| Dated:  August 18, 2021 | Respectfully submitted, |

*/s/ Joseph C. Bourne*

W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Craig S. Davis (MN #0148192)
Arielle S. Wagner (MN #0398332)
Joseph C. Bourne (MN #0389922)
Simeon A. Morbey (MN #0391338)
Stephen M. Owen (MN # 0399370)
Stephen J. Teti (Pro Hac Vice)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
jcbourne@locklaw.com
aswagner@locklaw.com
csdavis@locklaw.com
samorbey@locklaw.com
smowen@locklaw.com
steti@locklaw.com

Bobby Pouya (Pro Hac Vice)
Clifford H. Pearson (Pro Hac Vice)
Daniel L. Warshaw (Pro Hac Vice)
Michael H. Pearson (Pro Hac Vice)
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN #0387900)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com

Bruce L. Simon
Benjamin E. Shiftan
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com
bshiftan@pswlaw.com

*Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

| | |
|---|---|
| */s/* Shana E. Scarlett | */s/* Shawn M. Raiter |
| Shana E. Scarlett | Shawn M. Raiter (MN# 240424) |
| HAGENS BERMAN SOBOL SHAPIRO LLP | LARSON • KING, LLP |
| 715 Hearst Avenue, Suite 202 | 2800 Wells Fargo Place |
| Berkeley, CA 94710 | 30 East Seventh Street |
| Telephone: (510) 725-3000 | St. Paul, MN 55101 |
| Facsimile: (510) 725-3001 | Telephone: (651) 312-6518 |
| shanas@hbsslaw.com | sraiter@larsonking.com |
| | |
| Steve. W. Berman | Jonathan W. Cuneo |
| Breanna Van Engelen | Joel Davidow |
| HAGENS BERMAN SOBOL SHAPIRO LLP | Blaine Finley |
| 1301 2nd Avenue, Suite 2000 | Yifei "Evelyn" Li |
| Seattle, WA 98101 | CUNEO GILBERT & LADUCA, LLP |
| Telephone: (206) 623-7292 | 4725 Wisconsin Avenue NW, Suite 200 |
| Facsimile: (206) 623-0594 | Washington, DC 20016 |
| steve@hbsslaw.com | Telephone: (202) 789-3960 |
| breannav@hbsslaw.com | jonc@cuneolaw.com |
| | joel@cuneolaw.com |
| Daniel E. Gustafson (#202241) | bfinley@cuneolaw.com |
| Daniel C. Hedlund (#258337) | evelyn@cunelolaw.com |
| Michelle J. Looby (#388166) | |
| Brittany N. Resch (#0397656) | *Co-Lead Counsel for Commercial and* |
| GUSTAFSON GLUEK PLLC | *Institutional Indirect Purchaser Plaintiffs* |
| 120 South 6th Street, Suite 2600 | |
| Minneapolis, MN 55402 | |
| Telephone: (612) 333-8844 | |
| Facsimile: (612) 339-6622 | |
| dgustafson@gustafsongluek.com | |
| dhedlund@gustafsongluek.com | |
| mlooby@gustafsongluek.com | |
| bresch@gustafsongluek.com | |
| | |
| *Co-Lead Counsel for Consumer Indirect* | |
| *Purchaser Plaintiffs* | |