# EXHIBIT 1

**Hormel Custodians' Subpoena Responses and Objections**

| Hormel Custodian | Using Same Phone Presently as During the Relevant Period ? | Phone Imaged? | Personal Cell Phone Used For Work Purposes? | Text Messages to Employee or Representative of Pork Integrator about Supply and Demand Conditions In Pork Industry? | Current Hormel Employee? |
|---|---|---|---|---|---|
| Alan Meiergerd | No. | No. | **Letter:** "Used minimally for work-related communications."<br><br>**Letter:** "[D]id not communicate by text message for work related matters, using only his office phone or e-mail for that type of communication." | **Letter:** "[D]id not communicate by text message for work related matters, using only his office phone or e-mail for that type of communication."<br><br>**Objections & Responses:** Not aware of such text messages or related data. | No. |
| Albert Lieberum | No. | No. | **Letter:** "Used minimally for work-related communications."<br><br>**Letter:** "[D]id not communicate by text with individuals outside of Hormel for work-related matters, using only his office phone or work-provided e-mail address for that type of communication." | **Letter:** "[D]id not communicate by text with individuals outside of Hormel for work-related matters, using only his office phone or work-provided e-mail address for that type of communication."<br><br>**Objections & Responses:** Not aware of such text messages or related data. | No. |
| Bryan Farnsworth | No. | No. | **Letter:** "Did not communicate by text for work-related matters. Mr. Farnsworth used only his office phone or work- | **Objections & Responses:** Not aware of such text messages or related data. | No. |

Unless otherwise indicated, the information on this chart is derived from the letters and objections sent on behalf of the Hormel custodians by their attorneys, Rock Hutchinson PLLP, in response to the subpoenas Plaintiffs served. The text in the chart following "**Letter**" indicates that the text came from the body of the letter prefacing the Hormel custodians' objections to the specific requests. The text in the cart following "**Objections & Responses**" indicates that the information came from the actual objections to Plaintiffs' subpoena requests.

**Hormel Custodians' Subpoena Responses and Objections**

| | | | | | |
|---|---|---|---|---|---|
| | | | provided e-mail address for that type of communication." **Letter:** "[U]sed used minimally, if at all, for work-related communications." | | |
| Cory Bollum | No. | No. | **Letter:** "[U]sed minimally for work-related communications." **Letter:** "[D]oes not use any other messaging applications for work communications. With the possible exception of occasional calls when travelling or out of the office, Mr. Bollum used only his office phone or work-provided e-mail address for that type of communication." | **Letter:** "[R]arely communicated by text message for work-related matters, and recalls no text communications of the nature sought by the subpoena." **Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |
| Donald Temperley | No. | No. | "**Letter:** Mr. Temperley's personal cell phone, which was used minimally, if at all, for work-related communications . . ." **Letter:** "With the possible exception of occasional calls or checking e-mail when travelling or out of the office, Mr. Temperley used only his office phone or work-provided | **Letter:** "Mr. Temperley rarely communicated by text message for work-related matters. Such text messaging was limited to other Hormel employees and partners. Mr. Temperley recalls no text communications of the nature sought by the subpoena." **Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |

Unless otherwise indicated, the information on this chart is derived from the letters and objections sent on behalf of the Hormel custodians by their attorneys, Rock Hutchinson PLLP, in response to the subpoenas Plaintiffs served. The text in the chart following "**Letter**" indicates that the text came from the body of the letter prefacing the Hormel custodians' objections to the specific requests. The text in the cart following "**Objections & Responses**" indicates that the information came from the actual objections to Plaintiffs' subpoena requests.

**Hormel Custodians' Subpoena Responses and Objections**

| | | | | | |
|---|---|---|---|---|---|
| | | | e-mail address for work communications." | | |
| Eric Steinbach | No. | No. | **Letter:** "Mr. Steinbach communicated very little by text message for work-related matters, using primarily phone or e-mail for that type of communication, and recalls no text communications of the nature sought by the subpoena." | **Letter:** "Mr. Steinbach communicated very little by text message for work-related matters, using primarily phone or e-mail for that type of communication, and recalls no text communications of the nature sought by the subpoena."<br><br>**Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |
| Glenn Leitch | No | Yes, 2021. Phone that was imaged is not the one he currently uses. | **Letter:** "Us[ed] primarily his phone or work-provided e-mail address for [work-related matters]." | **Letter:** His personal cell phone was "used minimally, if at all, for work-related text communications."<br><br>**Letter:** "[R]arely communicated by text with individuals outside of Hormel for work-related matters."<br><br>**Objections & Responses:** Not aware of such text messages or related data. | No. |
| Holly LaVallie | No. | No. | **Letter:** "Ms. LaVallie did not routinely communicate by text message for work-related matters, using primarily phone or e-mail for that type of communication." | **Letter:** Her personal cell phone was "used minimally, if at all, for work-related text communications."<br><br>**Letter:** Ms. LaVallie did not routinely communicate by text message for work-related matters, using primarily phone or e-mail for that type of communication."<br><br>**Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |

Unless otherwise indicated, the information on this chart is derived from the letters and objections sent on behalf of the Hormel custodians by their attorneys, Rock Hutchinson PLLP, in response to the subpoenas Plaintiffs served. The text in the chart following "**Letter**" indicates that the text came from the body of the letter prefacing the Hormel custodians' objections to the specific requests. The text in the cart following "**Objections & Responses**" indicates that the information came from the actual objections to Plaintiffs' subpoena requests.

**Hormel Custodians' Subpoena Responses and Objections**

| | | | | | |
|---|---|---|---|---|---|
| James Fiala | No. | No. | **Letter:** "[U]sed minimally for work-related communications."<br><br>**Letter:** "[R]arely communicated by text message for work-related matters, using primarily his office phone or e-mail for that type of communication." | **Letter:** "[R]arely communicated by text message for work-related matters, using primarily his office phone or e-mail for that type of communication."<br><br>**Objections & Responses:** Objects to request seeking text messages sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator on the grounds that the information is equally available from another source that is less burdensome and more appropriate under the circumstances. | Yes, upon information and belief. |
| James Snee | No. | Yes, 2018. | N/A | **Letter:** "Mr. Snee did not engage in any text communications of the nature targeted by the subpoena."<br><br>**Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |
| Jana Haynes | No. | No. | **Letter:** "[U]sed minimally, if at all, for work-related communications."<br><br>**Letter:** "Ms. Haynes did not communicate by text message for work-related matters, using only her office phone or e-mail for that type of communication." | **Letter:** "Ms. Haynes did not communicate by text message for work-related matters, using only her office phone or e-mail for that type of communication."<br><br>**Objections & Responses:** Not aware of such text messages | Yes, upon information and belief. |

Unless otherwise indicated, the information on this chart is derived from the letters and objections sent on behalf of the Hormel custodians by their attorneys, Rock Hutchinson PLLP, in response to the subpoenas Plaintiffs served. The text in the chart following "**Letter**" indicates that the text came from the body of the letter prefacing the Hormel custodians' objections to the specific requests. The text in the cart following "**Objections & Responses**" indicates that the information came from the actual objections to Plaintiffs' subpoena requests.

**Hormel Custodians' Subpoena Responses and Objections**

| Jeffrey Ettinger | No. | No. | N/A | **Letter:** "Mr. Ettinger did not engage in any text communications of the nature targeted by the subpoena." <br><br> **Objections & Responses:** Not aware of such text messages or related data. | No. |
|---|---|---|---|---|---|
| Jennifer Johnson | No. | No. | **Letter:** "[U]sed minimally, if at all, for work-related communications." <br><br> **Letter:** "Ms. Johnson did not communicate by text message for work-related matters, using only telephone or e-mail for that type of communication." | **Letter:** "Ms. Johnson did not communicate by text message for work-related matters, using only telephone or e-mail for that type of communication." <br><br> **Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |
| Jerry Adwell | No. | No. | **Letter:** "[Mr. Adwell used only his office phone or work-provided e-mail address for external business communication." | **Letter:** "Mr. Adwell did not communicate by text with individuals outside of Hormel for work-related matters" <br><br> **Objections & Responses:** Not aware of such text messages or related data. | No. |
| Jesse Hyland | No. | No. | **Letter:** "Used minimally for work-related communications." <br><br> **Letter:** "Mr. Hyland used his office phone or work-provided e-mail address for work-related communication." | **Letter:** Mr. Hyland did not communicate by text for work-related matters and had no communications of the nature targeted by the subpoena. <br><br> **Objections & Responses:** Not aware of text messages or related data. | No. |

Unless otherwise indicated, the information on this chart is derived from the letters and objections sent on behalf of the Hormel custodians by their attorneys, Rock Hutchinson PLLP, in response to the subpoenas Plaintiffs served. The text in the chart following "**Letter**" indicates that the text came from the body of the letter prefacing the Hormel custodians' objections to the specific requests. The text in the cart following "**Objections & Responses**" indicates that the information came from the actual objections to Plaintiffs' subpoena requests.

**Hormel Custodians' Subpoena Responses and Objections**

| | | | | | |
|---|---|---|---|---|---|
| Jessica Chenoweth | No. | No. | **Letter:** "Ms. Chenoweth did not use her personal cell phone for work-related matters during the relevant time period, and her role at that time did not involve communication with individuals outside of Hormel. All of Ms. Chenoweth's work-related communication at that time was via her office phone or work-provided e-mail address." | **Objections & Responses:** Not aware of text messages or related data. | Yes, upon information and belief. |
| Jim Sheehan | No. | Yes, 2018. Phone that was imaged is not the phone he currently uses. | N/A | **Letter:** "Mr. Sheehan did not engage in any text communications of the nature targeted by the subpoena."<br><br>**Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |
| Jody Feragen | No. | No. | **Letter:** "[Ms. Feragen] only used her office phone or work-issued e-mail address for business communications." | **Letter:** "Ms. Feragen did not use text messaging of any type for any work-related communications."<br><br>**Objections & Responses:** Does not have text messages or related data. | No. |
| Jose Rojas | No. | No. | **Letter:** "Mr. Rojas did not routinely communicate by text message for work-related matters, using primarily his office phone or e-mail for that type of communication." | **Letter:** Personal cell phone was "used minimally for work-related text communications."<br><br>**Letter:** "Mr. Rojas did not routinely communicate by text message for work-related matters, using primarily his office phone or e-mail for that type of communication." | Yes, upon information and belief. |

Unless otherwise indicated, the information on this chart is derived from the letters and objections sent on behalf of the Hormel custodians by their attorneys, Rock Hutchinson PLLP, in response to the subpoenas Plaintiffs served. The text in the chart following "**Letter**" indicates that the text came from the body of the letter prefacing the Hormel custodians' objections to the specific requests. The text in the cart following "**Objections & Responses**" indicates that the information came from the actual objections to Plaintiffs' subpoena requests.

**Hormel Custodians' Subpoena Responses and Objections**

| | | | | **Objections & Responses:** Not aware of such text messages or related data. | |
|---|---|---|---|---|---|
| Lance Hoefflin | No. | No. | **Letter:** "Mr. Hoefflin's personal cell phone, which was not used for work-related communications . . ." <br><br> **Letter:** "[D]id not use his cell phone at all for work-related matters prior to 2020." <br><br> **Letter:** "Mr. Hoefflin used only his office phone or work-provided e-mail address for work communications during the relevant time period." | **Letter:** "Mr. Hoefflin did not communicate by text message for work-related matters, and did not use his cell phone at all for work-related matters prior to 2020." <br><br> **Letter:** Mr. Hoefflin recalls no text communications of the nature sought by the subpoena." <br><br> **Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |
| Mark Coffey | No. | No. | **Letter:** "Mr. Coffey did not communicate by text message for work-related matters with any contacts external to Hormel, using only his office phone or e-mail for that type of communication." | **Letter:** "Mr. Coffey did not communicate by text message for work-related matters with any contacts external to Hormel, using only his office phone or e-mail for that type of communication." <br><br> **Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |
| Michael Gyarmarty | No. | No. | **Letter:** "Mr. Gyarmarty's personal cell phone . . . was not used for work-related communications." | **Letter:** "Mr. Gyarmarty did not communicate by text message for work-related matters, using only his office phone or e-mail for that type of communication" <br><br> **Letter:** "Mr. Gyarmarty's personal cell phone . . . was not used for work-related communications." | Yes, upon information and belief. |

Unless otherwise indicated, the information on this chart is derived from the letters and objections sent on behalf of the Hormel custodians by their attorneys, Rock Hutchinson PLLP, in response to the subpoenas Plaintiffs served. The text in the chart following "**Letter**" indicates that the text came from the body of the letter prefacing the Hormel custodians' objections to the specific requests. The text in the cart following "**Objections & Responses**" indicates that the information came from the actual objections to Plaintiffs' subpoena requests.

**Hormel Custodians' Subpoena Responses and Objections**

| | | | | **Objections & Responses:** Not aware of such text messages or related data. | |
|---|---|---|---|---|---|
| Nathan Annis | No. | No. | **Letter:** "Mr. Annis did not communicate by text message with individuals outside of Hormel for work-related matters, using only his office phone or e-mail for that type of communication." | **Letter:** "Mr. Annis's personal cell phone . . . was not used for work-related text communications external to Hormel" | Yes, upon information and belief. |
| Neal Hull | No. | No. | **Letter:** "[Mr. Hull's] role did not involve communication with industry competitors at all." | **Letter:** "Mr. Hull did not communicate by text with individuals outside of Hormel for work-related matters." <br><br> **Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |
| Paul Bogle | No. | No. | **Letter:** "[U] used minimally, if at all, for work-related communications." <br><br> **Letter:** "With the possible exception of occasional calls when travelling or out of the office, Mr. Bogle used only his office phone or work-provided e-mail address for that type of communication." | **Letter:** "Mr. Bogle did not communicate by text with individuals outside of Hormel for work-related matters." <br><br> **Objections & Responses:** Not aware of such text messages or related data. | Yes, upon information and belief. |
| Paul Peil | No. | No. | **Letter:** "[U]sed minimally, if at all, for work-related communications." | **Letter:** "Mr. Peil did not communicate by text message for work-related matters, using only his office phone or e-mail for that type of communication" | Yes, upon information and belief. |

Unless otherwise indicated, the information on this chart is derived from the letters and objections sent on behalf of the Hormel custodians by their attorneys, Rock Hutchinson PLLP, in response to the subpoenas Plaintiffs served. The text in the chart following "**Letter**" indicates that the text came from the body of the letter prefacing the Hormel custodians' objections to the specific requests. The text in the cart following "**Objections & Responses**" indicates that the information came from the actual objections to Plaintiffs' subpoena requests.

**Hormel Custodians' Subpoena Responses and Objections**

| | | | | | |
|---|---|---|---|---|---|
| | | | **Letter:** "Mr. Peil did not communicate by text message for work-related matters, using only his office phone or e-mail for that type of communication." | **Objections & Responses:** Not aware of such text messages or related data. | |
| Steven Binder | No. | Yes, 2018. Phone that was imaged is not the one he currently uses. | N/A | **Letter:** "Prior to his retirement in 2018, Mr. Binder rarely communicated by text with individuals outside of Hormel for work-related matters, and never engaged in text communications of the nature targeted by the subpoena." <br><br> **Objections & Responses:** Not aware of any text messages or related data. | No. |
| Steven Venenga | No. | No. | **Letter:** "Mr. Venenga's personal cell phone . . . was not used for work-related communications external to Hormel." <br><br> **Letter:** "Mr. Venenga did not communicate by text message with individuals outside of Hormel for work-related matters, using only his office phone or e-mail for that type of communication." | **Letter:** "Mr. Venenga did not communicate by text message with individuals outside of Hormel for work-related matters, using only his office phone or e-mail for that type of communication." <br><br> **Objections & Responses:** Not aware of text messages or related data. | Yes, upon information and belief. |
| Thomas Day | No. | Yes, 2018. | **Letter:** "Mr. Day used primarily his work provided e-mail address for work-related communications outside of Hormel." | "**Letter:** Mr. Day did not engage in any text communications of the nature targeted by the subpoena." | No. |

Unless otherwise indicated, the information on this chart is derived from the letters and objections sent on behalf of the Hormel custodians by their attorneys, Rock Hutchinson PLLP, in response to the subpoenas Plaintiffs served. The text in the chart following "**Letter**" indicates that the text came from the body of the letter prefacing the Hormel custodians' objections to the specific requests. The text in the cart following "**Objections & Responses**" indicates that the information came from the actual objections to Plaintiffs' subpoena requests.

**Hormel Custodians' Subpoena Responses and Objections**

| | | | | **Objections & Responses:** Not aware of such text messages or related data. | |
|---|---|---|---|---|---|
| William Snyder | No. | No. | **Letter:** "[U]sed minimally for work-related communications."<br><br>**Letter:** "Prior to his retirement in 2014, Mr. Snyder did not communicate by text with individuals outside of Hormel for work-related matters, using his work-provided e-mail address for that type of communication." | **Letter:** "Prior to his retirement in 2014, Mr. Snyder did not communicate by text with individuals outside of Hormel for work-related matters, using his work-provided e-mail address for that type of communication."<br><br><br>**Objections & Responses:** Not aware of such text messages or related data. | No. |

Unless otherwise indicated, the information on this chart is derived from the letters and objections sent on behalf of the Hormel custodians by their attorneys, Rock Hutchinson PLLP, in response to the subpoenas Plaintiffs served. The text in the chart following "**Letter**" indicates that the text came from the body of the letter prefacing the Hormel custodians' objections to the specific requests. The text in the cart following "**Objections & Responses**" indicates that the information came from the actual objections to Plaintiffs' subpoena requests.

# EXHIBIT 2



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                      (612) 573-3682
120 South Sixth Street          FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

May 18, 2021

**VIA U.S. MAIL and E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Re:   Subpoena to Jessica Chenoweth In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Jessica Chenoweth in connection with the recently issued subpoena seeking production of data from her personal cell phone in the above-referenced litigation. Ms. Chenoweth objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Ms. Chenoweth objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and burdensome, particularly given the unreasonably long time period covered by the requests. Ms. Chenoweth's personal cell phone contains extensive amounts of private personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Ms. Chenoweth did not use her personal cell phone for work-related matters during the relevant time period, and her role at that time did not involve communication with individuals outside of Hormel. All of Ms. Chenoweth's work-related communication at that time was via her office phone or work-provided e-mail address. Given the other measures in place for preservation and discovery of relevant and potentially responsive material, if any, the subpoena directed to Ms. Chenoweth is improper and unnecessary.

In addition, Ms. Chenoweth has not been provided with a copy of any applicable Protective Order in this matter, and objects to the production of any documents or information without an appropriate protective order in place to adequately protect private and potentially confidential third-party documents and information.

Ms. Chenoweth also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Ms. Chenoweth has been advised of the need to preserve any work-related communications on her personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation and responsive to these subpoena requests uniquely resides on Ms. Chenoweth's personal cell phone. The cell phone Ms. Chenoweth is currently using is not the same phone that she had or would have been using for the majority of the relevant time period. In addition, Ms. Chenoweth has not sent or received any text communications of the nature sought by the subpoena and no further response should be required of her.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Ms. Chenoweth reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc: Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Jessica Chenoweth**

**DOCUMENT REQUESTS**

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Ms. Chenoweth objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Chenoweth objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Ms. Chenoweth further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Ms. Chenoweth is not aware of any documents responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Ms. Chenoweth objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Chenoweth objects to this request to the extent it imposes an undue burden on a non-party. Ms. Chenoweth further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**:          Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:          Ms. Chenoweth objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation, and is disproportionate to the needs of the case. Ms. Chenoweth objects to this

request to the extent it imposes an undue burden on a non-party. Subject to and without waiving

the foregoing objections, after conducting a reasonable investigation, Ms. Chenoweth is not

aware of any documents responsive to this request.

**REQUEST 4**:          Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:          Ms. Chenoweth objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation. Subject to and without waiving the foregoing objections, Ms. Chenoweth will

produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:          Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:          Ms. Chenoweth objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms.

Chenoweth objects to this request to the extent it imposes an undue burden on a non-party by

seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**: Ms. Chenoweth objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Chenoweth objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in her possession or use over an unreasonably long period of time.

**REQUEST 7**: If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**: Ms. Chenoweth objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Ms. Chenoweth responds that she is not aware of the existence of any documents responsive to this request.



Canadian Pacific Plaza
Suite 2050
120 South Sixth Street
Minneapolis, MN 55402

John Rock, Esq.
(612) 573-3682
FAX (612) 330-0959
jrock@rockhutchinson.com

May 18, 2021

**<u>VIA U.S. MAIL and E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

   Re:  Subpoena to Paul Bogle In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Paul Bogle in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Bogle objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Bogle objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and burdensome, particularly given the unreasonably long time period covered by the requests. Mr. Bogle's personal cell phone, which was used minimally, if at all, for work-related communications, contains extensive amounts of private personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Bogle did not communicate by text with individuals outside of Hormel for work-related matters. With the possible exception of occasional calls when travelling or out of the office, Mr. Bogle used only his office phone or work-provided e-mail address for that type of communication. Given the other measures in place for preservation and discovery of relevant and potentially responsive material, if any, the subpoena directed to Mr. Bogle is improper and unnecessary.

In addition, Mr. Bogle has not been provided with a copy of any applicable Protective Order in this matter, and objects to the production of any documents or information without an appropriate protective order in place to adequately protect private and potentially confidential third-party documents and information.

Mr. Bogle also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Bogle has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation and responsive to these subpoena requests uniquely resides on Mr. Bogle's personal cell phone. The cell phone Mr. Bogle is currently using is not the same phone that he had or would have been using for the majority of the relevant time period. In addition, Mr. Bogle has previously provided his cellular service provider with a notice and request to preserve records in the providers' possession with respect to his personal cell phone for the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Bogle individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Bogle reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc: Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Paul Bogle**

**DOCUMENT REQUESTS**

**REQUEST 1**:          Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Bogle objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Bogle objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Bogle further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Bogle is not aware of any documents responsive to this request.

**REQUEST 2**:          Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:           Mr. Bogle objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Bogle objects to this request to the extent it imposes an undue burden on a non-party. Mr. Bogle further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**:      Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:      Mr. Bogle objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Bogle objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Bogle is not aware of any documents

responsive to this request.

**REQUEST 4**:      Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:      Mr. Bogle objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Bogle will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:      Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:      Mr. Bogle objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Bogle objects to

this request to the extent it imposes an undue burden on a non-party by seeking all archived

cellphone data over an unreasonably long period of time.

**REQUEST 6**:      Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Mr. Bogle objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Bogle objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:        Mr. Bogle objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Bogle responds that he is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

May 19, 2021

**<u>VIA U.S. MAIL and E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

     Re:    Subpoena to Cory Bollum In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Cory Bollum in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Bollum objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Bollum objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and burdensome, particularly given the unreasonably long time period covered by the requests. Mr. Bollum's personal cell phone, which he used minimally for work-related communications, contains extensive amounts of private personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Bollum rarely communicated by text message for work-related matters, and recalls no text communications of the nature sought by the subpoena. Mr. Bollum does not use any other messaging applications for work communications. With the possible exception of occasional calls when travelling or out of the office, Mr. Bollum used only his office phone or work-provided e-mail address for that type of communication. Given the other measures in place for preservation and discovery of relevant and potentially responsive material, if any, the subpoena directed to Mr. Bollum is improper and unnecessary.

In addition, Mr. Bollum has not been provided with a copy of any applicable Protective Order in this matter, and objects to the production of any documents or information without an appropriate protective order in place to adequately protect private and potentially confidential third-party documents and information.

Mr. Bollum also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Bollum has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation and responsive to these subpoena requests uniquely resides on Mr. Bollum's personal cell phone. The cell phone Mr. Bollum is currently using is not the same phone that he had or would have been using for the majority of the relevant time period. In addition, Mr. Bollum has previously provided his cellular service provider with a notice and request to preserve records in the providers' possession with respect to his personal cell phone for the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Bollum individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Bollum reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner


cc: Counsel of record (via email only)

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Corwyn Bollum**

**DOCUMENT REQUESTS**

**REQUEST 1**:         Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Mr. Bollum objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Bollum objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Bollum further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Bollum is not aware of any documents responsive to this request.

**REQUEST 2**:         Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Bollum objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Bollum objects to this request to the extent it imposes an undue burden on a non-party. Mr. Bollum further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**:          Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:          Mr. Bollum objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Bollum objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Bollum is not aware of any

documents responsive to this request.

**REQUEST 4**:          Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:          Mr. Bollum objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Bollum will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:          Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:          Mr. Bollum objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Bollum objects to

this request to the extent it imposes an undue burden on a non-party by seeking all archived

cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Mr. Bollum objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Bollum objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:        Mr. Bollum objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Bollum responds that he is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

May 19, 2021

**<u>VIA U.S. MAIL and E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

      Re:    Subpoena to Paul Peil In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Paul Peil in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Peil objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Peil objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and burdensome, particularly given the unreasonably long time period covered by the requests. Mr. Peil's personal cell phone, which was used minimally, if at all, for work-related communications, contains extensive amounts of private personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Peil did not communicate by text message for work-related matters, using only his office phone or e-mail for that type of communication. Given the other measures in place for preservation and discovery of relevant and potentially responsive material, if any, the subpoena directed to Mr. Peil is improper and unnecessary.

In addition, Mr. Peil has not been provided with a copy of any applicable Protective Order in this matter, and objects to the production of any documents or information without an appropriate protective order in place to adequately protect private and potentially confidential third-party documents and information.

Mr. Peil also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Peil has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that

any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation and responsive to these subpoena requests uniquely resides on Mr. Peil's personal cell phone. The cell phone Mr. Peil is currently using is not the same phone that he had or would have been using for the majority of the relevant time period. In addition, Mr. Peil has previously provided his cellular service provider with a notice and request to preserve records in the providers' possession with respect to his personal cell phone for the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Peil individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Peil reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner


cc: Counsel of record (via email only)

2

## EXHIBIT A

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Paul Peil**

### DOCUMENT REQUESTS

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Peil objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Peil objects to this

request to the extent it imposes an undue burden on a non-party by seeking "each Text Message"

exchanged with the identified individuals over a ten-year period that ended three years ago. Mr.

Peil further objects to this request to the extent it seeks information equally available from

another source that would be less burdensome and more appropriate under the circumstances.

Subject to and without waiving the foregoing objections, Mr. Peil is not aware of any documents

responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Mr. Peil objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Peil objects to this request to the extent it

imposes an undue burden on a non-party. Mr. Peil further objects to this request as vague and

ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**: Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**: Mr. Peil objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Peil objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Peil is not aware of any documents responsive to this request.

**REQUEST 4**: Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**: Mr. Peil objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Mr. Peil will produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**: Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**: Mr. Peil objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Peil objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**: Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Mr. Peil objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Peil objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Mr. Peil objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Peil responds that he is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 7, 2021

**<u>VIA U.S. MAIL and E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Re:     Subpoena to Donald Temperley In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Donald Temperley in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Temperley objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Temperley objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and burdensome, particularly given the unreasonably long time period covered by the requests. Mr. Temperley's personal cell phone, which was used minimally, if at all, for work-related communications, contains extensive amounts of private personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Temperley rarely communicated by text message for work-related matters. Such text messaging was limited to other Hormel employees and partners. Mr. Temperley recalls no text communications of the nature sought by the subpoena. With the possible exception of occasional calls or checking e-mail when travelling or out of the office, Mr. Temperley used only his office phone or work-provided e-mail address for work communications. Given the other measures in place for preservation and discovery of relevant and potentially responsive material, if any, the subpoena directed to Mr. Temperley is improper and unnecessary.

Mr. Temperley also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Temperley has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent

that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation and responsive to these subpoena requests uniquely resides on Mr. Temperley's personal cell phone. The cell phone Mr. Temperley is currently using is not the same phone that he had or would have been using for the majority of the relevant time period. In addition, Mr. Temperley has previously provided his cellular service provider with a notice and request to preserve records in the providers' possession with respect to his personal cell phone for the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Temperley individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Temperley reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Donald Temperley**

**DOCUMENT REQUESTS**

**REQUEST 1**:  Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:  Mr. Temperley objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Temperley objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Temperley further objects to this request to the extent it seeks information equally available for another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Temperley is not aware of any documents responsive to this request.

**REQUEST 2**:  Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:   Mr. Temperley objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Temperley objects to this request to the extent it imposes an undue burden on a non-party. Mr. Temperley further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**:         Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:         Mr. Temperley objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation, and is disproportionate to the needs of the case. Mr. Temperley objects to this

request to the extent it imposes an undue burden on a non-party. Subject to and without waiving

the foregoing objections, after conducting a reasonable investigation, Mr. Temperley is not

aware of any documents responsive to this request.

**REQUEST 4**:         Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:         Mr. Temperley objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation. Subject to and without waiving the foregoing objections, Mr. Temperley will

produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:         Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:         Mr. Temperley objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr.

Temperley objects to this request to the extent it imposes an undue burden on a non-party by

seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:         Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:         Mr. Temperley objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation, and is disproportionate to the needs of the case. Mr. Temperley objects to this

request to the extent it imposes an undue burden on a non-party by seeking information related to

devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:         If any text messages requested in Request No. 1 above have been deleted
or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances
surrounding such deletion or loss.

**OBJECTION**:         Mr. Temperley objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to

and without waiving the foregoing objections, after conducting a reasonable investigation, Mr.

Temperley responds that he is not aware of the existence of any documents responsive to this

request.



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                          (612) 573-3682
120 South Sixth Street          FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

June 7, 2021

**VIA U.S. MAIL and E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

      Re:     Subpoena to Lace Hoefflin In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Lance Hoefflin in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Hoefflin objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Hoefflin objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and burdensome, particularly given the unreasonably long time period covered by the requests. Mr. Hoefflin's personal cell phone, which was not used for work-related communications, contains extensive amounts of private personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Hoefflin did not communicate by text message for work-related matters, and did not use his cell phone at all for work-related matters prior to 2020. Mr. Hoefflin recalls no text communications of the nature sought by the subpoena. Mr. Hoefflin used only his office phone or work-provided e-mail address for work communications during the relevant time period. Given the other measures in place for preservation and discovery of relevant and potentially responsive material, if any, the subpoena directed to Mr. Hoefflin is improper and unnecessary.

Mr. Hoefflin also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Hoefflin has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the

subpoena, we have no reason to believe that any information potentially relevant to the litigation and responsive to these subpoena requests uniquely resides on Mr. Hoefflin's personal cell phone. The cell phone Mr. Hoefflin is currently using is not the same phone that he had or would have been using for the majority of the relevant time period. In addition, Mr. Hoefflin has previously provided his cellular service provider with a notice and request to preserve records in the providers' possession with respect to his personal cell phone for the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Hoefflin individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Hoefflin reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Lance Hoefflin**

**DOCUMENT REQUESTS**

**REQUEST 1**:          Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Hoefflin objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hoefflin

objects to this request to the extent it imposes an undue burden on a non-party by seeking "each

Text Message" exchanged with the identified individuals over a ten-year period that ended three

years ago. Mr. Hoefflin further objects to this request to the extent it seeks information equally

available for another source that would be less burdensome and more appropriate under the

circumstances. Subject to and without waiving the foregoing objections, Mr. Hoefflin is not

aware of any documents responsive to this request.

**REQUEST 2**:          Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:           Mr. Hoefflin objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Hoefflin objects to this request to the extent

it imposes an undue burden on a non-party. Mr. Hoefflin further objects to this request as vague

and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is

unclear.

**REQUEST 3**:        Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:        Mr. Hoefflin objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Hoefflin objects to this request to the extent

it imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Hoefflin is not aware of any

documents responsive to this request.

**REQUEST 4**:        Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:        Mr. Hoefflin objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Hoefflin will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:        Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:        Mr. Hoefflin objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hoefflin

objects to this request to the extent it imposes an undue burden on a non-party by seeking all

archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**: Mr. Hoefflin objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hoefflin objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**: If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**: Mr. Hoefflin objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Hoefflin responds that he is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 9, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

> Re:   Production Subpoena to Alan Meiergerd In Re Pork Antitrust Subpoena
> matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Alan Meiergerd in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Meiergerd objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Meiergerd objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Meiergerd's personal cell phone, which was used minimally for work-related communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Meiergerd did not communicate by text message for work-related matters, using only his office phone or e-mail for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Meiergerd is excessive.

Mr. Meiergerd also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Meiergerd has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Meiergerd's personal cell phone. The cell phone Mr.

Meiergerd is currently using is not the same phone that he had or would have been using for the majority of the relevant time period. In addition, Mr. Meiergerd's role at Hormel did not involve communications with individuals outside of Hormel. Accordingly, he does not engage in the type of communication addressed by the subpoena. Given these circumstances, no further response should be required from Mr. Meiergerd individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Meiergerd reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner


cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Alan Meiergerd**

**DOCUMENT REQUESTS**

**REQUEST 1**:      Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:      Mr. Meiergerd objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Meiergerd objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Meiergerd further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Meiergerd is not aware of any documents responsive to this request.

**REQUEST 2**:      Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:      Mr. Meiergerd objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Meiergerd objects to this request to the extent it imposes an undue burden on a non-party. Mr. Meiergerd further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**:        Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:        Mr. Meiergerd objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation, and is disproportionate to the needs of the case. Mr. Meiergerd objects to this

request to the extent it imposes an undue burden on a non-party. Subject to and without waiving

the foregoing objections, after conducting a reasonable investigation, Mr. Meiergerd is not aware

of any documents responsive to this request.

**REQUEST 4**:        Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:        Mr. Meiergerd objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation. Subject to and without waiving the foregoing objections, Mr. Meiergerd will

produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:        Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:        Mr. Meiergerd objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr.

Meiergerd objects to this request to the extent it imposes an undue burden on a non-party by

seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Mr. Meiergerd objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation, and is disproportionate to the needs of the case. Mr. Meiergerd objects to this

request to the extent it imposes an undue burden on a non-party by seeking information related to

devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted
or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances
surrounding such deletion or loss.

**OBJECTION**:          Mr. Meiergerd objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to

and without waiving the foregoing objections, after conducting a reasonable investigation, Mr.

Meiergerd responds that he is not aware of the existence of any documents responsive to this

request.



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                     (612) 573-3682
120 South Sixth Street         FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

June 9, 2021

<u>**VIA E-MAIL**</u>
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

      Re:    Production Subpoena to Eric Steinbach In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Eric Steinbach in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Steinbach objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Steinbach objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Steinbach's personal cell phone contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Steinbach communicated very little by text message for work-related matters, using primarily phone or e-mail for that type of communication, and recalls no text communications of the nature sought by the subpoena. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Steinbach is excessive.

Mr. Steinbach also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Steinbach has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Steinbach's personal cell phone. The cell phone Mr. Steinbach is currently using is not the same phone that he had or would have been using for

the majority of the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Steinbach individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Steinbach reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc: Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Eric Steinbach**

**DOCUMENT REQUESTS**

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Steinbach objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr.

Steinbach objects to this request to the extent it imposes an undue burden on a non-party by

seeking "each Text Message" exchanged with the identified individuals over a ten-year period

that ended three years ago. Mr. Steinbach further objects to this request to the extent it seeks

information equally available from another source that would be less burdensome and more

appropriate under the circumstances. Subject to and without waiving the foregoing objections,

Mr. Steinbach is not aware of any documents responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Mr. Steinbach objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation, and is disproportionate to the needs of the case. Mr. Steinbach objects to this

request to the extent it imposes an undue burden on a non-party. Mr. Steinbach further objects to

this request as vague and ambiguous as the phrase "about supply and demand conditions in the

Pork industry" is unclear.

**REQUEST 3**:        Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:        Mr. Steinbach objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Steinbach objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Steinbach is not aware of any documents responsive to this request.

**REQUEST 4**:        Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:        Mr. Steinbach objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Mr. Steinbach will produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:        Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:        Mr. Steinbach objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Steinbach objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Mr. Steinbach objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Steinbach objects to this request to the

extent it imposes an undue burden on a non-party by seeking information related to devices no

longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted
or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances
surrounding such deletion or loss.

**OBJECTION**:        Mr. Steinbach objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to

and without waiving the foregoing objections, after conducting a reasonable investigation, Mr.

Steinbach responds that he is not aware of the existence of any documents responsive to this

request.



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                      (612) 573-3682
120 South Sixth Street      FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

June 9, 2021

**<u>VIA E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

   Re: Production Subpoena to Holly LaVallie In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Holly LaVallie in connection with the recently issued subpoena seeking production of data from her personal cell phone in the above-referenced litigation. Ms. LaVallie objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Ms. LaVallie objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Ms. LaVallie's personal cell phone, which was used minimally, if at all, for work-related text communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Ms. LaVallie did not routinely communicate by text message for work-related matters, using primarily phone or e-mail for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Ms. LaVallie is excessive.

Ms. LaVallie also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Ms. LaVallie has been advised of the need to preserve any work-related communications on her personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Ms. LaVallie's personal cell phone. The cell phone Ms. LaVallie is currently using is not the same phone that she had or would have been using for the

majority of the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Ms. LaVallie individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Ms. LaVallie reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Holly LaVallie**

**DOCUMENT REQUESTS**

**REQUEST 1**:         Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Ms. LaVallie objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. LaVallie

objects to this request to the extent it imposes an undue burden on a non-party by seeking "each

Text Message" exchanged with the identified individuals over a ten-year period that ended three

years ago. Ms. LaVallie further objects to this request to the extent it seeks information equally

available from another source that would be less burdensome and more appropriate under the

circumstances. Subject to and without waiving the foregoing objections, Ms. LaVallie is not

aware of any documents responsive to this request.

**REQUEST 2**:         Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Ms. LaVallie objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Ms. LaVallie objects to this request to the extent

it imposes an undue burden on a non-party. Ms. LaVallie further objects to this request as vague

and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is

unclear. Subject to and without waiving the foregoing objections, Ms. LaVallie is not aware of

any documents responsive to this Request.

**REQUEST 3**:         Documents sufficient to show a list of the installed communications-
related application on Your cellphone, including ephemeral messaging applications (e.g.,
SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:         Ms. LaVallie objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Ms. LaVallie objects to this request to the extent

it imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Ms. LaVallie is not aware of any

documents responsive to this request.

**REQUEST 4**:         Documents sufficient to show any steps you took to preserve data on Your
cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:         Ms. LaVallie objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Ms. LaVallie will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:         Documents sufficient to show, and provide access to the forensic vendor
for collection purposes, the location, date, and scope of any archived copies of your cellphone
data, such as iTunes archives or iCloud archives.

**OBJECTION**:         Ms. LaVallie objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. LaVallie

objects to this request to the extent it imposes an undue burden on a non-party by seeking all

archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Ms. LaVallie objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. LaVallie objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in her possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:        Ms. LaVallie objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Ms. LaVallie responds that she is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 9, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

  Re: Production Subpoena to James Fiala In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent James Fiala in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Fiala objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Fiala objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Fiala's personal cell phone, which was used minimally for work-related communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Fiala rarely communicated by text message for work-related matters, using primarily his office phone or e-mail for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Fiala is excessive.

Mr. Fiala also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Fiala has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Fiala's personal cell phone. The cell phone Mr. Fiala is currently using is not the same phone that he had or would have been using for the majority

of the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Fiala individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Fiala reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to James Fiala**

<u>**DOCUMENT REQUESTS**</u>

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Fiala objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Fiala objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Fiala further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Fiala objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Fiala objects to this request to the extent it imposes an undue burden on a non-party. Mr. Fiala further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**:        Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:        Mr. Fiala objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Fiala objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Fiala is not aware of any documents responsive to this request.

**REQUEST 4**:        Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:        Mr. Fiala objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Mr. Fiala will produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:        Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:        Mr. Fiala objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Fiala objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Mr. Fiala objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Fiala objects to this request to the extent it

imposes an undue burden on a non-party by seeking information related to devices no longer in

his possession or use over an unreasonably long period of time.

**REQUEST 7**:         If any text messages requested in Request No. 1 above have been deleted
or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances
surrounding such deletion or loss.

**OBJECTION**:         Mr. Fiala objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without

waiving the foregoing objections, after conducting a reasonable investigation, Mr. Fiala responds

that he is not aware of the existence of any documents responsive to this request.



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                    (612) 573-3682
120 South Sixth Street       FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

June 9, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

      Re:    Production Subpoena to Jana Haynes In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Jana Haynes in connection with the recently issued subpoena seeking production of data from her personal cell phone in the above-referenced litigation. Ms. Haynes objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Ms. Haynes objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Ms. Haynes's personal cell phone, which was used minimally, if at all, for work-related communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Ms. Haynes did not communicate by text message for work-related matters, using only her office phone or e-mail for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Ms. Haynes is excessive.

Ms. Haynes also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Ms. Haynes has been advised of the need to preserve any work-related communications on her personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Ms. Haynes's personal cell phone. The cell phone Ms. Haynes is currently using is not the same phone that she had or would have been using for the majority

of the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Ms. Haynes individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Ms. Haynes reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Jana Haynes**

## DOCUMENT REQUESTS

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Ms. Haynes objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Haynes

objects to this request to the extent it imposes an undue burden on a non-party by seeking "each

Text Message" exchanged with the identified individuals over a ten-year period that ended three

years ago. Ms. Haynes further objects to this request to the extent it seeks information equally

available from another source that would be less burdensome and more appropriate under the

circumstances. Subject to and without waiving the foregoing objections, Ms. Haynes is not aware

of any documents responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Ms. Haynes objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Ms. Haynes objects to this request to the extent it

imposes an undue burden on a non-party. Ms. Haynes further objects to this request as vague and

ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**:        Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:        Ms. Haynes objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Ms. Haynes objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Ms. Haynes is not aware of any

documents responsive to this request.

**REQUEST 4**:        Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:        Ms. Haynes objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Ms. Haynes will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:        Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:        Ms. Haynes objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Haynes

objects to this request to the extent it imposes an undue burden on a non-party by seeking all

archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Ms. Haynes objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Haynes objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in her possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:        Ms. Haynes objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Ms. Haynes responds that she is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 9, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

   Re: Production Subpoena to Jennifer Johnson In Re Pork Antitrust Subpoena
     matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Jennifer Johnson in connection with the recently issued subpoena seeking production of data from her personal cell phone in the above-referenced litigation. Ms. Johnson objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Ms. Johnson objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Ms. Johnson's personal cell phone, which was used minimally, if at all, for work-related communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Ms. Johnson did not communicate by text message for work-related matters, using only telephone or e-mail for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Ms. Johnson is excessive.

Ms. Johnson also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Ms. Johnson has been advised of the need to preserve any work-related communications on her personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Ms. Johnson's personal cell phone. The cell phone Ms. Johnson

is currently using is not the same phone that she had or would have been using during the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Ms. Johnson individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Ms. Johnson reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner


cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Jennifer Johnson**

## DOCUMENT REQUESTS

**REQUEST 1**:          Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Ms. Johnson objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Johnson

objects to this request to the extent it imposes an undue burden on a non-party by seeking "each

Text Message" exchanged with the identified individuals over a ten-year period that ended three

years ago. Ms. Johnson further objects to this request to the extent it seeks information equally

available from another source that would be less burdensome and more appropriate under the

circumstances. Subject to and without waiving the foregoing objections, Ms. Johnson is not

aware of any documents responsive to this request.

**REQUEST 2**:          Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:           Ms. Johnson objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Ms. Johnson objects to this request to the extent

it imposes an undue burden on a non-party. Ms. Johnson further objects to this request as vague

and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is

unclear. Subject to and without waiving the foregoing objections, Ms. Johnson has no documents responsive to this Request.

**REQUEST 3**:      Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:      Ms. Johnson objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Johnson objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Ms. Johnson is not aware of any documents responsive to this request.

**REQUEST 4**:      Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:      Ms. Johnson objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Ms. Johnson will produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:      Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:      Ms. Johnson objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Johnson objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Ms. Johnson objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Johnson objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in her possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Ms. Johnson objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Ms. Johnson responds that she is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 9, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Re:     Production Subpoena to Jose Rojas In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Jose Rojas in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Rojas objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Rojas objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Rojas's personal cell phone, which was used minimally for work-related text communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Rojas did not routinely communicate by text message for work-related matters, using primarily his office phone or e-mail for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Rojas is excessive.

Mr. Rojas also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Rojas has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Rojas's personal cell phone. The cell phone Mr. Rojas is currently using is not the same phone that he had or would have been using for the majority

of the relevant time period. In addition, Mr. Rojas has previously provided his cellular service provider with a notice and request to preserve records in the providers' possession with respect to his personal cell phone for the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Rojas individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Rojas reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Jose Rojas**

**DOCUMENT REQUESTS**

**REQUEST 1**:          Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Rojas objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Rojas objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Rojas further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Rojas is not aware of any documents responsive to this request.

**REQUEST 2**:          Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:           Mr. Rojas objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Rojas objects to this request to the extent it imposes an undue burden on a non-party. Mr. Rojas further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**:          Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:          Mr. Rojas objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Rojas objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Rojas is not aware of any documents

responsive to this request.

**REQUEST 4**:          Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:          Mr. Rojas objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Rojas will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:          Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:          Mr. Rojas objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Rojas objects to

this request to the extent it imposes an undue burden on a non-party by seeking all archived

cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Mr. Rojas objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Rojas objects to this request to the extent it

imposes an undue burden on a non-party by seeking information related to devices no longer in

his possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted
or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances
surrounding such deletion or loss.

**OBJECTION**:        Mr. Rojas objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without

waiving the foregoing objections, after conducting a reasonable investigation, Mr. Rojas

responds that he is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 9, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Re:     Production Subpoena to Mark Coffey In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Mark Coffey in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Coffey objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Coffey objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Coffey's personal cell phone contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Coffey did not communicate by text message for work-related matters with any contacts external to Hormel, using only his office phone or e-mail for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Coffey is excessive.

Mr. Coffey also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Coffey has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Coffey's personal cell phone. The cell phone Mr. Coffey is currently using is not the same phone that he had or would have been using for the majority

of the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Coffey individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Coffey reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner


cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Mark Coffey**

<u>**DOCUMENT REQUESTS**</u>

**REQUEST 1**:          Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Coffey objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Coffey objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Coffey further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Coffey is not aware of any documents responsive to this request.

**REQUEST 2**:          Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Coffey objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Coffey objects to this request to the extent it imposes an undue burden on a non-party. Mr. Coffey further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**:        Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:        Mr. Coffey objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Coffey objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Coffey is not aware of any

documents responsive to this request.

**REQUEST 4**:        Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:        Mr. Coffey objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Coffey will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:        Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:        Mr. Coffey objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Coffey objects to

this request to the extent it imposes an undue burden on a non-party by seeking all archived

cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Mr. Coffey objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Coffey objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:        Mr. Coffey objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Coffey responds that he is not aware of the existence of any documents responsive to this request.



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                     (612) 573-3682
120 South Sixth Street         FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

June 9, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

      Re:    Production Subpoena to Michael Gyarmaty In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Michael Gyarmaty in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Gyarmaty objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Gyarmaty objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Gyarmaty's personal cell phone, which was not used for work-related text communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Gyarmaty did not communicate by text message for work-related matters, using only his office phone or e-mail for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Gyarmaty is excessive.

Mr. Gyarmaty also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Gyarmaty has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Gyarmaty's personal cell phone. The cell phone Mr.

Gyarmaty is currently using is not the same phone that he had or would have been using for the majority of the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Gyarmaty individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Gyarmaty reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Michael Gyarmaty**

## DOCUMENT REQUESTS

**REQUEST 1**:         Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Mr. Gyarmaty objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr.

Gyarmaty objects to this request to the extent it imposes an undue burden on a non-party by

seeking "each Text Message" exchanged with the identified individuals over a ten-year period

that ended three years ago. Mr. Gyarmaty further objects to this request to the extent it seeks

information equally available from another source that would be less burdensome and more

appropriate under the circumstances. Subject to and without waiving the foregoing objections,

Mr. Gyarmaty is not aware of any documents responsive to this request.

**REQUEST 2**:         Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Gyarmaty objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation, and is disproportionate to the needs of the case. Mr. Gyarmaty objects to this

request to the extent it imposes an undue burden on a non-party. Mr. Gyarmaty further objects to

this request as vague and ambiguous as the phrase "about supply and demand conditions in the

Pork industry" is unclear.

**REQUEST 3**:⠀⠀⠀⠀Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:⠀⠀⠀⠀Mr. Gyarmaty objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Gyarmaty objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Gyarmaty is not aware of any documents responsive to this request.

**REQUEST 4**:⠀⠀⠀⠀Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:⠀⠀⠀⠀Mr. Gyarmaty objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Mr. Gyarmaty will produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:⠀⠀⠀⠀Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:⠀⠀⠀⠀Mr. Gyarmaty objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Gyarmaty objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:⠀⠀⠀⠀Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:         Mr. Gyarmaty objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Gyarmaty objects to this request to the

extent it imposes an undue burden on a non-party by seeking information related to devices no

longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:         If any text messages requested in Request No. 1 above have been deleted
or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances
surrounding such deletion or loss.

**OBJECTION**:         Mr. Gyarmaty objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to

and without waiving the foregoing objections, after conducting a reasonable investigation, Mr.

Gyarmaty responds that he is not aware of the existence of any documents responsive to this

request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 9, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Re:     Production Subpoena to Nathan Annis In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Nathan Annis in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Annis objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Annis objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Annis's personal cell phone, which was not used for work-related text communications external to Hormel, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Annis did not communicate by text message with individuals outside of Hormel for work-related matters, using only his office phone or e-mail for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Annis is excessive.

Mr. Annis also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Annis has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Annis's personal cell phone. The cell phone Mr. Annis is

currently using is not the same phone that he had or would have been using during the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Annis individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Annis reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner


cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Nathan Annis**

**DOCUMENT REQUESTS**

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Annis objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Annis objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Annis further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Annis is not aware of any documents responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Mr. Annis objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Annis objects to this request to the extent it imposes an undue burden on a non-party. Mr. Annis further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

**REQUEST 3**:        Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:        Mr. Annis objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Annis objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Annis is not aware of any documents responsive to this request.

**REQUEST 4**:        Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:        Mr. Annis objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Mr. Annis will produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:        Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:        Mr. Annis objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Annis objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Mr. Annis objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Annis objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:        Mr. Annis objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Annis responds that he is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 9, 2021

**<u>VIA E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

      Re:    Production Subpoena to Steven Venenga In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Steven Venenga in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Venenga objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Venenga objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Venenga's personal cell phone, which was not used for work-related communications external to Hormel, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Venenga did not communicate by text message with individuals outside of Hormel for work-related matters, using only his office phone or e-mail for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Venenga is excessive.

Mr. Venenga also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Venenga has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the

litigation uniquely resides on Mr. Venenga's personal cell phone. The cell phone Mr. Venenga is currently using is not the same phone that he had or would have been using for the majority of the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Venenga individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Venenga reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner


cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Steven Venenga**

**DOCUMENT REQUESTS**

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Venenga objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Venenga

objects to this request to the extent it imposes an undue burden on a non-party by seeking "each

Text Message" exchanged with the identified individuals over a ten-year period that ended three

years ago. Mr. Venenga further objects to this request to the extent it seeks information equally

available from another source that would be less burdensome and more appropriate under the

circumstances. Subject to and without waiving the foregoing objections, Mr. Venenga is not

aware of any documents responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Mr. Venenga objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Venenga objects to this request to the extent

it imposes an undue burden on a non-party. Mr. Venenga further objects to this request as vague

and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is

unclear. Subject to and without waiving the foregoing objections, Mr. Venenga is not aware of any documents responsive to this Request.

**REQUEST 3**:     Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:     Mr. Venenga objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Venenga objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Venenga is not aware of any documents responsive to this request.

**REQUEST 4**:     Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:     Mr. Venenga objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Mr. Venenga will produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:     Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:     Mr. Venenga objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Venenga objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Mr. Venenga objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Venenga objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Mr. Venenga objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Venenga responds that he is not aware of the existence of any documents responsive to this request.



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                     (612) 573-3682
120 South Sixth Street         FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

June 10, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

     Re:    Production Subpoena to Jim Sheehan In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Jim Sheehan in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Sheehan objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Sheehan objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Sheehan's personal cell phone contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Sheehan did not engage in any text communications of the nature targeted by the subpoena. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Sheehan is excessive.

Mr. Sheehan also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Sheehan has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Sheehan's current personal cell phone that has not been previously captured by other preservation measures. The cell phone Mr. Sheehan is currently using is not the same phone that he had or would have been using for the majority

of the relevant time period. In addition, a digital image of Mr. Sheehan's cell phone was captured in 2018 so there is no concern regarding data loss. He has upgraded his phone to a newer model since that image was created.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Sheehan reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Jim Sheehan**

**DOCUMENT REQUESTS**

**REQUEST 1**:          Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Sheehan objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Sheehan

objects to this request to the extent it imposes an undue burden on a non-party by seeking "each

Text Message" exchanged with the identified individuals over a ten-year period that ended three

years ago. Mr. Sheehan further objects to this request to the extent it seeks information equally

available from another source that would be less burdensome and more appropriate under the

circumstances. Subject to and without waiving the foregoing objections, Mr. Sheehan is not

aware of any documents responsive to this request.

**REQUEST 2**:          Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:           Mr. Sheehan objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Sheehan objects to this request to the extent

it imposes an undue burden on a non-party. Mr. Sheehan further objects to this request as vague

and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is

unclear. Subject to and without waiving the foregoing objections, Mr. Sheehan has no documents responsive to this Request.

**REQUEST 3**:        Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:        Mr. Sheehan objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Sheehan objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Sheehan is not aware of any documents responsive to this request.

**REQUEST 4**:        Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:        Mr. Sheehan objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Mr. Sheehan will produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:        Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:        Mr. Sheehan objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Sheehan objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Mr. Sheehan objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Sheehan objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Mr. Sheehan objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Sheehan responds that he is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 21, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Re:     Production Subpoena to Steven Binder In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Steven Binder in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Binder objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Binder objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Binder's personal cell phone contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Prior to his retirement in 2018, Mr. Binder rarely communicated by text with individuals outside of Hormel for work-related matters, and never engaged in text communications of the nature targeted by the subpoena. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Binder is excessive.

Mr. Binder also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Binder has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Binder's personal cell phone that has not been previously captured by other preservation measures. The cell phone Mr. Binder is currently using is not

the same phone that he had or would have been using during the relevant time period. In addition, a digital image of Mr. Binder's cell phone was captured in 2018 prior to his retirement, so there is no concern regarding data loss. Mr. Binder has upgraded his phone to a newer model since that image was created. Given these circumstances, no further response from Mr. Binder individually should be required.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Binder reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Steven Binder**

## DOCUMENT REQUESTS

**REQUEST 1**:  Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:  Mr. Binder objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Binder objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Binder further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Binder is not aware of any documents responsive to this request.

**REQUEST 2**:  Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:   Mr. Binder objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Binder objects to this request to the extent it imposes an undue burden on a non-party. Mr. Binder further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

Subject to and without waiving the foregoing objections, Mr. Binder is not aware of any

documents responsive to this Request.

**REQUEST 3**:          Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:          Mr. Binder objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Binder objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Binder is not aware of any

documents responsive to this request.

**REQUEST 4**:          Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:          Mr. Binder objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Binder will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:          Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:          Mr. Binder objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Binder objects to

this request to the extent it imposes an undue burden on a non-party by seeking all archived

cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Mr. Binder objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Binder objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:        Mr. Binder objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Binder responds that he is not aware of the existence of any documents responsive to this request.



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                      (612) 573-3682
120 South Sixth Street          FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

June 21, 2021

**<u>VIA E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Re:    Production Subpoena to Thomas Day In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Thomas Day in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Day objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Day objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Day's personal cell phone contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Day did not engage in any text communications of the nature targeted by the subpoena. Mr. Day used primarily his work-provided e-mail address for work-related communications outside of Hormel. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Day is excessive.

Mr. Day also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Day has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Day's personal cell phone that has not been previously captured by other preservation measures. The cell phone Mr. Day is currently using is not

the same phone that he had or would have been using for the majority of the relevant time period. In addition, a digital image of Mr. Day's cell phone was captured in 2018 prior to his retirement so there is no concern regarding data loss. Given these circumstances, no further response from Mr. Day individually should be required.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Day reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Thomas Day**

<u>**DOCUMENT REQUESTS**</u>

**<u>REQUEST 1</u>**:          Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Day objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Day objects to this

request to the extent it imposes an undue burden on a non-party by seeking "each Text Message"

exchanged with the identified individuals over a ten-year period that ended three years ago. Mr.

Day further objects to this request to the extent it seeks information equally available from

another source that would be less burdensome and more appropriate under the circumstances.

Subject to and without waiving the foregoing objections, Mr. Day is not aware of any documents

responsive to this request.

**<u>REQUEST 2</u>**:          Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:           Mr. Day objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Day objects to this request to the extent it

imposes an undue burden on a non-party. Mr. Day further objects to this request as vague and

ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

Subject to and without waiving the foregoing objections, Mr. Day is not aware of any documents responsive to this Request.

**REQUEST 3**: Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**: Mr. Day objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Day objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Day is not aware of any documents responsive to this request.

**REQUEST 4**: Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**: Mr. Day objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Mr. Day will produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**: Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**: Mr. Day objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Day objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Mr. Day objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Day objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Mr. Day objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Day responds that he is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 21, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

      Re:    Production Subpoena to Jeff Ettinger In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Jeff Ettinger in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Ettinger objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Ettinger objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Ettinger's personal cell phone contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Prior to his retirement in 2016, Mr. Ettinger did not engage in any text communications of the nature targeted by the subpoena. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Ettinger is excessive.

Mr. Ettinger also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Ettinger has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Ettinger's personal cell phone. The cell phone Mr. Ettinger is currently using is not the same phone that he had or would have been using during the relevant time period. Given these circumstances, any responsive information is equally

obtainable from the service provider and should not require further response from Mr. Ettinger individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Ettinger reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc: Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to
Permit Inspection of Premises Directed to Jeff Ettinger**

## DOCUMENT REQUESTS

**REQUEST 1**:      Produce a copy of each Text Message that you sent or received during the
Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other
individual with whom you communicated about supply and demand conditions in the Pork
industry.

**OBJECTION**:      Mr. Ettinger objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Ettinger

objects to this request to the extent it imposes an undue burden on a non-party by seeking "each

Text Message" exchanged with the identified individuals over a ten-year period that ended three

years ago. Mr. Ettinger further objects to this request to the extent it seeks information equally

available from another source that would be less burdensome and more appropriate under the

circumstances. Subject to and without waiving the foregoing objections, Mr. Ettinger is not

aware of any documents responsive to this request.

**REQUEST 2**:      Produce a copy of each contact (e.g., the contact "card") on your
cellphone who is or was an Employee or Representative of a Pork Integrator, or any other
individual with whom you communicated about supply and demand conditions in the Pork
industry.

**OBJECTION**:       Mr. Ettinger objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Ettinger objects to this request to the extent

it imposes an undue burden on a non-party. Mr. Ettinger further objects to this request as vague

and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is

unclear. Subject to and without waiving the foregoing objections, Mr. Ettinger is not aware of

any documents responsive to this Request.

**REQUEST 3**:          Documents sufficient to show a list of the installed communications-
related application on Your cellphone, including ephemeral messaging applications (e.g.,
SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:          Mr. Ettinger objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Ettinger objects to this request to the extent

it imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Ettinger is not aware of any

documents responsive to this request.

**REQUEST 4**:          Documents sufficient to show any steps you took to preserve data on Your
cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:          Mr. Ettinger objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Ettinger will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:          Documents sufficient to show, and provide access to the forensic vendor
for collection purposes, the location, date, and scope of any archived copies of your cellphone
data, such as iTunes archives or iCloud archives.

**OBJECTION**:          Mr. Ettinger objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Ettinger

objects to this request to the extent it imposes an undue burden on a non-party by seeking all

archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Mr. Ettinger objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Ettinger objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:        Mr. Ettinger objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Ettinger responds that he is not aware of the existence of any documents responsive to this request.



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                    (612) 573-3682
120 South Sixth Street        FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

June 21, 2021

**<u>VIA E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

> Re:   Production Subpoena to Bryan Farnsworth In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Bryan Farnsworth in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Farnsworth objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Farnsworth objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Farnsworth's personal cell phone, which he used minimally, if at all, for work-related communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Prior to his retirement in 2017, Mr. Farnsworth did not communicate by text for work-related matters. Mr. Farnsworth used only his office phone or work-provided e-mail address for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Farnsworth is excessive.

Mr. Farnsworth also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Farnsworth has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the

litigation uniquely resides on Mr. Farnsworth's personal cell phone. The cell phone Mr. Farnsworth is currently using is not the same phone that he had or would have been using during the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Farnsworth individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Farnsworth reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner


cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Bryan Farnsworth**

**DOCUMENT REQUESTS**

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Farnsworth objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr.

Farnsworth objects to this request to the extent it imposes an undue burden on a non-party by

seeking "each Text Message" exchanged with the identified individuals over a ten-year period

that ended three years ago. Mr. Farnsworth further objects to this request to the extent it seeks

information equally available from another source that would be less burdensome and more

appropriate under the circumstances. Subject to and without waiving the foregoing objections,

Mr. Farnsworth is not aware of any documents responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Farnsworth objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation, and is disproportionate to the needs of the case. Mr. Farnsworth objects to this

request to the extent it imposes an undue burden on a non-party. Mr. Farnsworth further objects

to this request as vague and ambiguous as the phrase "about supply and demand conditions in the

Pork industry" is unclear. Subject to and without waiving the foregoing objections, Mr.

Farnsworth is not aware of any documents responsive to this Request.

**REQUEST 3**:        Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:        Mr. Farnsworth objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation, and is disproportionate to the needs of the case. Mr. Farnsworth objects to this

request to the extent it imposes an undue burden on a non-party. Subject to and without waiving

the foregoing objections, after conducting a reasonable investigation, Mr. Farnsworth is not

aware of any documents responsive to this request.

**REQUEST 4**:        Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:        Mr. Farnsworth objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation. Subject to and without waiving the foregoing objections, Mr. Farnsworth will

produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:        Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:        Mr. Farnsworth objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr.

Farnsworth objects to this request to the extent it imposes an undue burden on a non-party by

seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Mr. Farnsworth objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Farnsworth objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Mr. Farnsworth objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Farnsworth responds that he is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 21, 2021

**<u>VIA E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

  Re: Production Subpoena to Jesse Hyland In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Jesse Hyland in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Hyland objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Hyland objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Hyland's personal cell phone, which was used minimally for work-related communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Prior to his retirement in 2016, Mr. Hyland did not communicate by text for work-related matters and had no communications of the nature targeted by the subpoena. Mr. Hyland used his office phone or work-provided e-mail address for work-related communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Hyland is excessive.

Mr. Hyland also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Hyland has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Hyland's personal cell phone. The cell phone Mr. Hyland is

currently using is not the same phone that he had or would have been using during the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Hyland individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Hyland reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Jesse Hyland**

**DOCUMENT REQUESTS**

**REQUEST 1**:         Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Mr. Hyland objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hyland objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Hyland further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Hyland is not aware of any documents responsive to this request.

**REQUEST 2**:         Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Hyland objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hyland objects to this request to the extent it imposes an undue burden on a non-party. Mr. Hyland further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

Subject to and without waiving the foregoing objections, Mr. Hyland has no documents

responsive to this Request.

**REQUEST 3**:         Documents sufficient to show a list of the installed communications-
related application on Your cellphone, including ephemeral messaging applications (e.g.,
SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:         Mr. Hyland objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Hyland objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Hyland is not aware of any

documents responsive to this request.

**REQUEST 4**:         Documents sufficient to show any steps you took to preserve data on Your
cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:         Mr. Hyland objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Hyland will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:         Documents sufficient to show, and provide access to the forensic vendor
for collection purposes, the location, date, and scope of any archived copies of your cellphone
data, such as iTunes archives or iCloud archives.

**OBJECTION**:         Mr. Hyland objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hyland objects to

this request to the extent it imposes an undue burden on a non-party by seeking all archived

cellphone data over an unreasonably long period of time.

**REQUEST 6**:        Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:        Mr. Hyland objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hyland objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:        If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:        Mr. Hyland objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Hyland responds that he is not aware of the existence of any documents responsive to this request.



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                      (612) 573-3682
120 South Sixth Street          FAX (612) 330-0959
Minneapolis, MN 55402    jrock@rockhutchinson.com

June 21, 2021

<u>**VIA E-MAIL**</u>
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Re:    Production Subpoena to Glenn Leitch In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Glenn Leitch in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Leitch objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Leitch objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Leitch's personal cell phone, which he used minimally, if at all, for work-related text communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Prior to his retirement earlier this year, Mr. Leitch rarely communicated by text with individuals outside of Hormel for work-related matters, using primarily his office phone or work-provided e-mail address for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Leitch is excessive.

Mr. Leitch also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Leitch has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Leitch's personal cell phone that has not been previously

captured by other preservation measures. The cell phone Mr. Leitch is currently using is not the same phone that he had or would have been using for the majority of the relevant time period. In addition, a digital image of Mr. Leitch's cell phone was captured in 2021 so there is no concern regarding data loss. The cell phone he is currently using is not the same phone that was imaged in 2021.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Leitch reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Glenn Leitch**

**DOCUMENT REQUESTS**

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Leitch objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Leitch objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Leitch further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Leitch is not aware of any documents responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Mr. Leitch objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Leitch objects to this request to the extent it imposes an undue burden on a non-party. Mr. Leitch further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

Subject to and without waiving the foregoing objections, Mr. Leitch is not aware of any

documents responsive to this Request.

**REQUEST 3**:          Documents sufficient to show a list of the installed communications-
related application on Your cellphone, including ephemeral messaging applications (e.g.,
SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:          Mr. Leitch objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Leitch objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Leitch is not aware of any documents

responsive to this request.

**REQUEST 4**:          Documents sufficient to show any steps you took to preserve data on Your
cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:          Mr. Leitch objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Leitch will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:          Documents sufficient to show, and provide access to the forensic vendor
for collection purposes, the location, date, and scope of any archived copies of your cellphone
data, such as iTunes archives or iCloud archives.

**OBJECTION**:          Mr. Leitch objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Leitch objects to

this request to the extent it imposes an undue burden on a non-party by seeking all archived

cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Mr. Leitch objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Leitch objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Mr. Leitch objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Leitch responds that he is not aware of the existence of any documents responsive to this request.



Canadian Pacific Plaza                    John Rock, Esq.
Suite 2050                              (612) 573-3682
120 South Sixth Street              FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

June 21, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

       Re:     Production Subpoena to Al Lieberum In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Al Lieberum in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Lieberum objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Lieberum objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Lieberum's personal cell phone, which was used minimally for work-related communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Prior to his retirement in 2016, Mr. Lieberum did not communicate by text with individuals outside of Hormel for work-related matters, using only his office phone or work-provided e-mail address for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Lieberum is excessive.

Mr. Lieberum also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Lieberum has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Lieberum's personal cell phone. The cell phone Mr.

Lieberum is currently using is not the same phone that he had or would have been using during the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Lieberum individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Lieberum reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to
Permit Inspection of Premises Directed to Al Lieberum**

<u>**DOCUMENT REQUESTS**</u>

<u>**REQUEST 1**</u>:          Produce a copy of each Text Message that you sent or received during the
Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other
individual with whom you communicated about supply and demand conditions in the Pork
industry.

**OBJECTION**:          Mr. Lieberum objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr.

Lieberum objects to this request to the extent it imposes an undue burden on a non-party by

seeking "each Text Message" exchanged with the identified individuals over a ten-year period

that ended three years ago. Mr. Lieberum further objects to this request to the extent it seeks

information equally available from another source that would be less burdensome and more

appropriate under the circumstances. Subject to and without waiving the foregoing objections,

Mr. Lieberum is not aware of any documents responsive to this request.

<u>**REQUEST 2**</u>:          Produce a copy of each contact (e.g., the contact "card") on your
cellphone who is or was an Employee or Representative of a Pork Integrator, or any other
individual with whom you communicated about supply and demand conditions in the Pork
industry.

**OBJECTION**:          Mr. Lieberum objects to this request as overbroad and unduly

burdensome to the extent it seeks information not relevant to any party's claims or defenses in

this litigation, and is disproportionate to the needs of the case. Mr. Lieberum objects to this

request to the extent it imposes an undue burden on a non-party. Mr. Lieberum further objects to

this request as vague and ambiguous as the phrase "about supply and demand conditions in the

Pork industry" is unclear. Subject to and without waiving the foregoing objections, Mr.

Lieberum is not aware of any documents responsive to this Request.

**REQUEST 3**:          Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:          Mr. Lieberum objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Lieberum objects to this request to the extent

it imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Lieberum is not aware of any

documents responsive to this request.

**REQUEST 4**:          Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:          Mr. Lieberum objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Lieberum will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:          Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:          Mr. Lieberum objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr.

Lieberum objects to this request to the extent it imposes an undue burden on a non-party by

seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Mr. Lieberum objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Lieberum objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Mr. Lieberum objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Lieberum responds that he is not aware of the existence of any documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 21, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

>Re:   Production Subpoena to William Snyder In Re Pork Antitrust Subpoena
>matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent William Snyder in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Snyder objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Snyder objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Snyder's personal cell phone, which was used minimally for work-related communications, contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Prior to his retirement in 2014, Mr. Snyder did not communicate by text with individuals outside of Hormel for work-related matters, using his work-provided e-mail address for that type of communication. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Snyder is excessive.

Mr. Snyder also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Snyder has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the

litigation uniquely resides on Mr. Snyder's personal cell phone. The cell phone Mr. Snyder is currently using is not the same phone that he had or would have been using during the relevant time period. Given these circumstances, any responsive information is equally obtainable from the service provider and should not require further response from Mr. Snyder individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Snyder reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner


cc: Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to William Snyder**

**DOCUMENT REQUESTS**

**REQUEST 1**:          Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Mr. Snyder objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Snyder objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Snyder further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Snyder is not aware of any documents responsive to this request.

**REQUEST 2**:          Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:           Mr. Snyder objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Snyder objects to this request to the extent it imposes an undue burden on a non-party. Mr. Snyder further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

Subject to and without waiving the foregoing objections, Mr. Snyder is not aware of any

documents responsive to this Request.

**REQUEST 3**:       Documents sufficient to show a list of the installed communications-
related application on Your cellphone, including ephemeral messaging applications (e.g.,
SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:       Mr. Snyder objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Snyder objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Snyder is not aware of any

documents responsive to this request.

**REQUEST 4**:       Documents sufficient to show any steps you took to preserve data on Your
cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:       Mr. Snyder objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Snyder will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:       Documents sufficient to show, and provide access to the forensic vendor
for collection purposes, the location, date, and scope of any archived copies of your cellphone
data, such as iTunes archives or iCloud archives.

**OBJECTION**:       Mr. Snyder objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Snyder objects to

this request to the extent it imposes an undue burden on a non-party by seeking all archived

cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Mr. Snyder objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Snyder objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Mr. Snyder objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Snyder responds that he is not aware of the existence of any documents responsive to this request.



Canadian Pacific Plaza          John Rock, Esq.
Suite 2050                          (612) 573-3682
120 South Sixth Street          FAX (612) 330-0959
Minneapolis, MN 55402    jrock@rockhutchinson.com

June 23, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

      Re:    Production Subpoena to Jody Feragen In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Jody Feragen in connection with the recently issued subpoena seeking production of data from her personal cell phone in the above-referenced litigation. Ms. Feragen objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Ms. Feragen objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Ms. Feragen's personal cell phone contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Prior to her retirement in 2017, Ms. Feragen did not use text messaging of any type for any work-related communications. She only used her office phone or work-issued e-mail address for business communications. In addition, her role and job functions for Hormel did not involve any communications with representatives of Hormel's competitors or any "Pork Integrators." Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Ms. Feragen is excessive.

Ms. Feragen also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Ms. Feragen's current personal cell phone. The cell phone Ms. Feragen is currently using is not the same

phone that she had or would have been using during the relevant time period. She no longer has possession of her prior cell phones.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Ms. Feragen reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner


cc:  Counsel of record (via email only)

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Jody Feragen**

**DOCUMENT REQUESTS**

**REQUEST 1**:          Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:          Ms. Feragen objects to this request as vague and ambiguous, and

overbroad and unduly burdensome to the extent it seeks information not relevant to any party's

claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Feragen

objects to this request to the extent it imposes an undue burden on a non-party by seeking "each

Text Message" exchanged with the identified individuals over a ten-year period that ended three

years ago. Ms. Feragen further objects to this request to the extent it seeks information equally

available from another source that would be less burdensome and more appropriate under the

circumstances. Subject to and without waiving the foregoing objections, Ms. Feragen has no

documents responsive to this Request.

**REQUEST 2**:          Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:           Ms. Feragen objects to this request as overbroad and unduly burdensome

to the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Ms. Feragen objects to this request to the extent

it imposes an undue burden on a non-party. Ms. Feragen further objects to this request as vague

and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is

unclear. Subject to and without waiving the foregoing objections, Ms. Feragen has no documents responsive to this Request.

**REQUEST 3**:      Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:      Ms. Feragen objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Feragen objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Ms. Feragen is not aware of any documents responsive to this request.

**REQUEST 4**:      Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:      Ms. Feragen objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Ms. Feragen is not aware of any documents responsive to this request.

**REQUEST 5**:      Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:      Ms. Feragen objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Feragen objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Ms. Feragen objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Ms. Feragen objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in her possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Ms. Feragen objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Ms. Feragen has no documents responsive to this Request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

June 29, 2021

**VIA E-MAIL**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Re:     Production Subpoena to Jerry Adwell In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Jerry Adwell in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Adwell objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Adwell objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Adwell's personal cell phone contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Prior to his retirement in 2012, Mr. Adwell did not communicate by text with individuals outside of Hormel for work-related matters. He used only his office phone or work-provided e-mail address for external business communication. In addition, his role and job functions at Hormel did not involve any communications of the type targeted by the subpoena. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Adwell is excessive.

Mr. Adwell also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Adwell's personal cell phone. The cell phone Mr. Adwell is currently using is not the same phone that he had or would have been using during the relevant time period.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Adwell reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Jerry Adwell**

**DOCUMENT REQUESTS**

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Adwell objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Adwell objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Adwell further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Adwell has no documents responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Adwell objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Adwell objects to this request to the extent it imposes an undue burden on a non-party. Mr. Adwell further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

Subject to and without waiving the foregoing objections, Mr. Adwell is not aware of any

documents responsive to this Request.

**REQUEST 3**:          Documents sufficient to show a list of the installed communications-
related application on Your cellphone, including ephemeral messaging applications (e.g.,
SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:          Mr. Adwell objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Adwell objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Adwell is not aware of any

documents responsive to this request.

**REQUEST 4**:          Documents sufficient to show any steps you took to preserve data on Your
cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:          Mr. Adwell objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Adwell will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:          Documents sufficient to show, and provide access to the forensic vendor
for collection purposes, the location, date, and scope of any archived copies of your cellphone
data, such as iTunes archives or iCloud archives.

**OBJECTION**:          Mr. Adwell objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Adwell objects to

this request to the extent it imposes an undue burden on a non-party by seeking all archived

cellphone data over an unreasonably long period of time.

**REQUEST 6**:          Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:          Mr. Adwell objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Adwell objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:          If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:          Mr. Adwell objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Adwell has no documents responsive to this request.



| | |
|---|---|
| Canadian Pacific Plaza | John Rock, Esq. |
| Suite 2050 | (612) 573-3682 |
| 120 South Sixth Street | FAX (612) 330-0959 |
| Minneapolis, MN 55402 | jrock@rockhutchinson.com |

July 2, 2021

**<u>VIA E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

Re:   Production Subpoena to James Snee In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent James Snee in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Snee objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Snee objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Snee's personal cell phone contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Snee did not engage in any text communications of the nature targeted by the subpoena. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Snee is excessive.

Mr. Snee also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Mr. Snee has been advised of the need to preserve any work-related communications on his personal device for some time and has fully complied with that obligation to the extent that any such communications exist. Based upon our investigation following receipt of the subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Snee's personal cell phone. The cell phone Mr. Snee is currently using is not the same phone that he had or would have been using during the

relevant time period. In addition, a digital image of Mr. Snee's cell phone was captured in 2018 so there is no concern regarding data loss.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Snee reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to James Snee**

## DOCUMENT REQUESTS

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Snee objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Snee objects to this request to the extent it imposes an undue burden on a non-party by seeking "each Text Message" exchanged with the identified individuals over a ten-year period that ended three years ago. Mr. Snee further objects to this request to the extent it seeks information equally available from another source that would be less burdensome and more appropriate under the circumstances. Subject to and without waiving the foregoing objections, Mr. Snee is not aware of any documents responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:         Mr. Snee objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Snee objects to this request to the extent it imposes an undue burden on a non-party. Mr. Snee further objects to this request as vague and ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

Subject to and without waiving the foregoing objections, Mr. Snee is not aware of any

documents responsive to this Request.

**REQUEST 3**:       Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:       Mr. Snee objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Snee objects to this request to the extent it

imposes an undue burden on a non-party. Subject to and without waiving the foregoing

objections, after conducting a reasonable investigation, Mr. Snee is not aware of any documents

responsive to this request.

**REQUEST 4**:       Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:       Mr. Snee objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation.

Subject to and without waiving the foregoing objections, Mr. Snee will produce documents

responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:       Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:       Mr. Snee objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Snee objects to

this request to the extent it imposes an undue burden on a non-party by seeking all archived

cellphone data over an unreasonably long period of time.

**REQUEST 6**:　　　Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:　　　Mr. Snee objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Snee objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:　　　If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:　　　Mr. Snee objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Snee responds that he is not aware of the existence of any documents responsive to this request.



Canadian Pacific Plaza                    John Rock, Esq.
Suite 2050                              (612) 573-3682
120 South Sixth Street              FAX (612) 330-0959
Minneapolis, MN 55402   jrock@rockhutchinson.com

August 4, 2021

**<u>VIA E-MAIL</u>**
Brian D. Clark
Lockridge Grindal Nauen PLLP
100 Washington Ave. South
Suite 2200
Minneapolis, MN 55401
bdclark@locklaw.com

      Re:     Production Subpoena to Neal Hull In Re Pork Antitrust Subpoena matter

Dear Mr. Clark:

Rock Hutchinson, PLLP has been retained to represent Neal Hull in connection with the recently issued subpoena seeking production of data from his personal cell phone in the above-referenced litigation. Mr. Hull objects to the Subpoena for the reasons stated herein and in the enclosed Exhibit A.

As an initial matter, Mr. Hull objects to the Subpoena as imposing an unreasonable burden on a non-party that is both personally intrusive and inconvenient, particularly given the unreasonably long time period covered by the requests. Mr. Hull's personal cell phone contains extensive amounts of personal information and data completely unrelated to any matter at issue in the above-referenced litigation. Mr. Hull did not communicate by text with individuals outside of Hormel for work-related matters. In fact, his role with Hormel did not involve communication with industry competitors at all. Given the other measures in place for preservation of any relevant and potentially responsive material, the subpoena directed to Mr. Hull is excessive.

Mr. Hull also objects generally to the definition of "Pork Integrator" as overbroad, unduly burdensome and disproportionate to the circumstances.

Based upon our investigation following receipt of Mr. Hull's subpoena, we have no reason to believe that any information potentially relevant to the litigation uniquely resides on Mr. Hull's personal cell phone. The cell phone Mr. Hull is currently using is not the same phone that he had or would have been using during the relevant time period. He no longer has possession of his prior cell phones. Given these circumstances, any responsive information

is equally obtainable from the service provider and should not require further response from Mr. Hull individually.

Enclosed as Exhibit A are additional, specific objections to each of the individual document requests. Mr. Hull reserves the right to assert additional objections based on any grounds revealed by any further investigation or review of potentially responsive documents. If you would like to discuss the substance of these objections or any potential further response, please feel free to give me a call.

Sincerely,

John Rock, Esq.
Managing Partner

cc:  Counsel of record (via email only)

2

**EXHIBIT A**

**Specific Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises Directed to Neal Hull**

**DOCUMENT REQUESTS**

**REQUEST 1**:        Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Hull objects to this request as vague and ambiguous, and overbroad

and unduly burdensome to the extent it seeks information not relevant to any party's claims or

defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hull objects to

this request to the extent it imposes an undue burden on a non-party by seeking "each Text

Message" exchanged with the identified individuals over a ten-year period that ended three years

ago. Mr. Hull further objects to this request to the extent it seeks information equally available

from another source that would be less burdensome and more appropriate under the

circumstances. Subject to and without waiving the foregoing objections, Mr. Hull is not aware of

any documents responsive to this request.

**REQUEST 2**:        Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**OBJECTION**:        Mr. Hull objects to this request as overbroad and unduly burdensome to

the extent it seeks information not relevant to any party's claims or defenses in this litigation,

and is disproportionate to the needs of the case. Mr. Hull objects to this request to the extent it

imposes an undue burden on a non-party. Mr. Hull further objects to this request as vague and

ambiguous as the phrase "about supply and demand conditions in the Pork industry" is unclear.

Subject to and without waiving the foregoing objections, Mr. Hull is not aware of any documents responsive to this Request.

**REQUEST 3**:          Documents sufficient to show a list of the installed communications-related application on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**OBJECTION**:          Mr. Hull objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hull objects to this request to the extent it imposes an undue burden on a non-party. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Hull is not aware of any documents responsive to this request.

**REQUEST 4**:          Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**OBJECTION**:          Mr. Hull objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation. Subject to and without waiving the foregoing objections, Mr. Hull will produce documents responsive to this request, if any, identified upon reasonable investigation.

**REQUEST 5**:          Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**OBJECTION**:          Mr. Hull objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hull objects to this request to the extent it imposes an undue burden on a non-party by seeking all archived cellphone data over an unreasonably long period of time.

**REQUEST 6**:         Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from [sic] during the Relevant Time Period.

**OBJECTION**:         Mr. Hull objects to this request as overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Mr. Hull objects to this request to the extent it imposes an undue burden on a non-party by seeking information related to devices no longer in his possession or use over an unreasonably long period of time.

**REQUEST 7**:         If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

**OBJECTION**:         Mr. Hull objects to this request as vague and ambiguous, and overbroad and unduly burdensome to the extent it seeks information not relevant to any party's claims or defenses in this litigation, and is disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, after conducting a reasonable investigation, Mr. Hull responds that he is not aware of the existence of any documents responsive to this request.

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-1776 (JRT/HB) |
| | DIRECT PURCHASER PLAINTIFFS, CONSUMER INDIRECT PURCHASER PLAINTIFFS, AND COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' FIRST SET OF INTERROGATORIES TO THE PORK INTEGRATOR DEFENDANTS |
| This Document Relates to:<br><br>Direct Purchaser, Consumer Indirect Purchaser, and Commercial and Institutional Indirect Purchaser Actions | |

554069.1

Pursuant to Federal Rule of Civil Procedure 33, Direct Purchaser Plaintiffs, Consumer Indirect Purchaser Plaintiffs, and Commercial and Institutional Indirect Purchaser Plaintiffs (collectively, "Plaintiffs") hereby request that Defendants Clemens Food Group, LLC; The Clemens Family Corporation; Hormel Foods Corporation; Hormel Foods, LLC; Mitsubishi Corporation (Americas); JBS USA Food Company; JBS USA Food Company Holdings; Seaboard Foods LLC; Seaboard Corporation; Smithfield Foods, Inc.; Triumph Foods, LLC; Tyson Foods, Inc.; Tyson Prepared Foods, Inc.; and Tyson Fresh Meats, Inc. (collectively, "Pork Integrator Defendants") answer the following Interrogatories separately and fully, in writing and under oath, and in accordance with the following definitions and instructions, within 30 days of the date of service.

## I.    DEFINITIONS

The following definitions shall apply to these Interrogatories:

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular Interrogatory or definition in which either or both is used.

2.      "Benchmarking Service" means a company to whom You submitted data on a regular basis concerning the breeding, growing, processing, production, distribution, or sale of Pork. Examples of some currently known Benchmarking Services include Agri Stats, Inc. and Agrimetrics.

3.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly

owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are: Agri Stats, Inc.; Clemens Food Group, LLC; The Clemens Family Corporation; Hormel Foods Corporation; Hormel Foods, LLC; Mitsubishi Corporation (Americas); JBS USA Food Company; JBS USA Food Company Holdings; Seaboard Foods LLC; Seaboard Corporation; Smithfield Foods, Inc.; Triumph Foods, LLC; Tyson Foods, Inc.; Tyson Prepared Foods, Inc.; and Tyson Fresh Meats, Inc.

4. "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, cloud storage, mobile phones or devices, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not

to limit) the breadth of this definition, "Document" in this sense includes papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, email, voice mail, text messages, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds, and the contents of storage media used in data-processing systems. Documents include "Electronically Stored Information" or "ESI."

5.      "Document Custodian" refers to Your employees and/or representatives who the parties agree, or the Court orders, must have Documents in Your, the employee's, and/or representative's possession, custody, or control collected and produced in this matter.

6.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media, including (without limitation) all examples identified in the definition of "ESI" set forth in All Plaintiffs' First Set of Requests for Production of Documents to the Pork Integrator Defendants, served on November 1, 2018.

7.      "Identify" means to provide the requested information with particularity. When used with respect to any entity(ies), "Identify" shall mean to name the entity(ies) and provide address, contact information, and relevant time period for each, including sufficient information to identify all individuals affiliated with or participating with the entity(ies) on Your behalf.  When used with respect to a person, "Identify" shall mean to give the person's full name, professional title, present or last known address, and

telephone number.  Once a person has been identified in accordance with this instruction, only the name of that person need be listed in response to subsequent Interrogatories requesting the identification of that person.

8.     "Including" should not be construed as limiting an Interrogatory in any way and therefore means "including, but not limited to," or "including without limitation."

9.     "Industry Meeting" means a Meeting for companies in the Pork industry and at which the Pork industry is discussed, organized or hosted by an entity other than a named Defendant, a Defendant's parent, a Defendant's subsidiary, or another Pork Integrator, including at least one named Defendant.

10.     "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video, or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, schedule or not.

11.     "Person" means, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.     "Pork" means pig or swine meat sold or purchased fresh or frozen, smoked ham, sausage, and bacon.

13.     "Pork Integrator" means Defendants (except Agri Stats), and any non-Defendant entity that raises, buys, slaughters, and processes pigs to make Pork.

14.     "Price or Supply Index" refers to a measure of Pork pricing or supply, such as those run by the United States Department of Agriculture, Express Markets, Inc., and Urner Barry, including (without limitation) Urner Barry's COMTELL service.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly or indirectly.

16.     "Trade Association" means an association of business organizations—or committee, subcommittee thereof— that promotes the interests of Pork Integrators relating to Pork and in which two or more Pork Integrators are members, including the Pork Act Delegate Body, the National Pork Board, the National Pork Producers Council ("NPPC"), the National Conference ("NPIC"), the 21st Century Pork Club, the North American Meat Institute ("NAMI"), and the American Meat Institute ("AMI").

17.     "You," "Your" or "Your Company" means the responding Defendant, including any predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding Defendant manages or controls, including those merged with or acquired, together with all present and former

directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on their behalf.

## II.   INSTRUCTIONS

In addition to the requirements set forth in the Federal Rules of Civil Procedure, which Plaintiffs incorporate herein, the following instructions apply to the Interrogatories set forth below, and are incorporated into the Interrogatories as though fully set forth therein:

1.   The Interrogatories are continuing in nature and require supplemental responses if additional information becomes available or is discovered after Your responses thereto, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.  Each supplemental response shall be served on Plaintiffs no later than thirty (30) days after the discovery of the subsequently discovered or obtained information, and in no event shall any supplemental response be served later than thirty (30) days before the first day of trial, absent leave of court.

2.   If You elect to refer to or produce Documents in response to an Interrogatory pursuant to Federal Rule of Civil Procedure 33(d), You shall identify such Documents by control or Bates number and shall produce the records as they are kept in the usual course of business or, alternatively, shall organize and label them to correspond with the Interrogatory.  If the Document is being produced in its native electronic format (allowing the Document to retain its metadata), You shall identify the Document using its hash or other appropriate electronic identification and also identify which Interrogatory or Interrogatories to which the Document is responsive.  If the Document is not being

produced in electronic form, identify the Document using the applicable Bates numbers or specifically identify the type of Document being produced (*e.g.*, letter, memorandum, telegram, contract, invoice, etc.), its date and author(s), its custodian, and every person to whom such Document or any copy thereof was given or sent.  For all Documents produced pursuant to Rule 33(d), identify the name of the employee, officer, or agent certifying the Documents as business records.

3.      The Interrogatories shall be answered separately and fully in writing under oath, unless they are objected to, in whole or in part.  If an objection is made to an Interrogatory or to a part of the Interrogatory, the specific ground for the objection shall be set forth clearly.  If an objection is based on a claim of privilege or other protection, the particular privilege or protection invoked shall be clearly stated.

4.      If only a part of the Interrogatory is objected to, the remainder of the Interrogatory shall be answered in full.

5.      If an Interrogatory cannot be answered completely, it must be answered to the fullest extent possible.  If You do not have personal knowledge sufficient to respond fully to the Interrogatory, You shall so state, but shall make a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations.

## III.   INTERROGATORIES

Unless otherwise indicated, the Relevant Time Period for each of the requests below is from January 1, 2008 through the present.

**INTERROGATORY NO. 1:**

Identify Your corporate structure and ownership, including the names and relevant ownership interests related to all of Your subsidiaries, parents, and owners.

**INTERROGATORY NO. 2:**

Identify any and all joint ventures, alliances, co-packing agreements, partnerships, or other business agreements in which You participated, that relate to the buying, processing, packaging, marketing, or selling of Pork.

**INTERROGATORY NO. 3:**

Identify each entity or Person who owns 1% or more of You and/or Your subsidiaries or from whom You collectively borrowed or received funds totaling in excess of $10 million during the Relevant Time Period, including the amount of such ownership or funds borrowed or received and the applicable time periods.

**INTERROGATORY NO. 4:**

For each Benchmarking Service or Price or Supply Index in which You participated, describe in detail all information relating to your participation, including who was involved, the date range of participation, whether participation was voluntary or mandatory, a description of precisely what information and/or reports You provided and/or received (and any changes to that information over time), the method by which you sent or received such data or information, any terms or contractual obligations relating to Your participation, and how much money you paid to participate in such a service.

**INTERROGATORY NO. 5:**

Describe any information You received from Agri Stats, Inc. relating to other Pork Integrators' breeding, processing, slaughter, production, distribution, or sales data that was not anonymized or through which you were informed and/or determined the identity of specific data submitted by another Pork Integrators including, but not limited to, any unique numeric identifiers or descriptors that permitted the identification of another Pork Integrator's data.

**INTERROGATORY NO. 6:**

Identify every Industry Meeting and Meeting of a Trade Association attended by a Document Custodian, including when and where it occurred, the entity or organization that arranged the meeting, who from Your Company attended, and any documents (e.g., agendas, minutes, or notes) that relate to the content of what was discussed at the meeting.

**INTERROGATORY NO. 7:**

Explain in detail any circumstance in which You cancelled, commenced, or altered a subscription to any of Agri Stats, Inc.'s Pork-related services from January 1, 2003 through the present.

**INTERROGATORY NO. 8:**

Explain the process by which the price You sell Pork is determined and identify by name and title the Persons involved in making that determination, including any employees and/or representatives.

**INTERROGATORY NO. 9:**

For each of Your Document Custodians, Identify All email addresses, social or industrial/business web-based media accounts (e.g., Facebook®, Twitter®, LinkedIn® Instagram®, Snapchat®, Cluster, or WhatsApp), cellular phone numbers, office phone, and facsimile numbers, or other telephone numbers (and applicable phone carriers for each telephone number) used by each such employee regarding or relating to his work for You.

**INTERROGATORY NO. 10:**

For each of Your Document Custodians, Identify the device manufacturer, device model, and IMEI (where applicable) of all cellphone devices, personal computer(s), and similar devices (iPad, Microsoft Surface, etc.) used by each such Document Custodians regarding or relating to his or her work for You during the Relevant Time Period, specifying the date range when each device was in use, the method by which its data was backed up or archived (if any), and whether or not the device still exists.

DATED: November 20, 2020

/s/ Bobby Pouya
Bobby Pouya (Pro Hac Vice)
Clifford H. Pearson (Pro Hac Vice)
Daniel L. Warshaw (Pro Hac Vice)
Michael H. Pearson (Pro Hac Vice)
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN #0387900)
Joseph C. Bourne (MN #0389922)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com
jbourne@pswlaw.com

Bruce L. Simon
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

/s/ Arielle S. Wagner
Arielle S. Wagner (MN #0398332)
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Craig S. Davis (MN #0148192)
Simeon A. Morbey (MN #0391338)
Stephen M. Owen (MN # 0399370)
Stephanie A. Chen (MN #0400032)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
aswagner@locklaw.com
wjbruckner@locklaw.com
csdavis@locklaw.com
bdclark@locklaw.com
samorbey@locklaw.com
smowen@locklaw.com
sachen@locklaw.com

*Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

*/s/* Shana E. Scarlett

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve. W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

*/s/* Daniel E. Gustafson

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Britany N. Resch (#0397656)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
bresch@gustafsongluek.com

*Co-Lead Counsel for Consumer Indirect
Purchaser Plaintiffs*

*/s/* Shawn M. Raiter

Shawn M. Raiter (MN# 240424)
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6518
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Blaine Finley
Yifei "Evelyn" Li
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cunelolaw.com

*Co-Lead Counsel for Commercial and
Institutional Indirect Purchaser Plaintiffs*

**DECLARATION OF SERVICE BY E-MAIL**

I, the undersigned, declare:

That declarant is and was, at all times herein mentioned, a resident of the United States and employed in the City of Berkeley, in the County of Alameda, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 715 Hearst Avenue, Suite 202, Berkeley, California 94710.

That on November 20, 2020, I served by e-mail, DIRECT PURCHASER PLAINTIFFS, CONSUMER INDIRECT PURCHASER PLAINTIFFS, AND COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' FIRST SET OF INTERROGATORIES TO THE PORK INTEGRATOR DEFENDANTS to the parties listed on the attached Service List.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of November 2020, at Berkeley, California.



s/ Jeaneth Decena

JEANETH DECENA

| Defendant | Name | Email Address |
|---|---|---|
| **Agri Stats** | Justin Bernick | justin.bernick@hoganlovells.com |
| | Tripp Monts | william.monts@hoganlovells.com |
| | Peter Walsh | peter.walsh@hoganlovells.com |
| | Liam Phibbs | liam.phibbs@hoganlovells.com |
| | Olga Fleysh | olga.fleysh@hoganlovells.com |
| **Clemens** | Dan Laytin | dlaytin@kirkland.com |
| | Christa Cottrell | ccottrell@kirkland.com |
| | Christina Briesacher | christina.briesacher@kirkland.com |
| | Christina Sharkey | christina.sharkey@kirkland.com |
| | Adam Collins | adam.collins@kirkland.com |
| | Mark Johnson | mjohnson@greeneespel.com |
| | Virginia McCalmont | vmccalmont@greeneespel.com |
| **Hormel** | Richard Duncan | Richard.Duncan@FaegreDrinker.com |
| | Aaron Van Oort | Aaron.VanOort@FaegreDrinker.com |
| | Craig Coleman | Craig.Coleman@FaegreDrinker.com |
| | Emily Chow | Emily.Chow@FaegreDrinker.com |
| | Isaac Hall | Isaac.Hall@FaegreDrinker.com |
| | Anna Sallstrom | anna.sallstrom@FaegreDrinker.com |
| | Bryan Washburn | Bryan.Washburn@FaegreDrinker.com |
| **Indiana Packers** | Britt Miller | BMiller@mayerbrown.com |
| | William Stallings | WStallings@mayerbrown.com |
| | Bob Entwisle | rentwisle@mayerbrown.com |
| | Priya Desai | PDesai@mayerbrown.com |
| | Jaime Stilson | stilson.jaime@dorsey.com |
| **JBS** | Stephen Neuwirth | stephenneuwirth@quinnemanuel.com |
| | Michael Carlinsky | michaelcarlinsky@quinnemanuel.com |
| | Sami Rashid | samirashid@quinnemanuel.com |
| | Richard Vagas | richardvagas@quinnemanuel.com |
| | Robert Vance, Jr. | bobbyvance@quinnemanuel.com |
| | David Adler | davidadler@quinnemanuel.com |
| | Anais Berland | anaisberland@quinnemanuel.com |
| | Michael Guerrero | michaelguerrero@quinnemanuel.com |
| | Donald Heeman | dheeman@spencerfane.com |
| | Jessica Nelson | jnelson@spencerfane.com |
| | Randi Winter | rwinter@spencerfane.com |
| | Angela McClintic | amcclintic@spencerfane.com |
| **Seaboard** | William Greene | william.greene@stinson.com |
| | Nicci Warr | nicci.warr@stinson.com |
| | Peter Schwingler | peter.schwingler@stinson.com |
| | Zach Hemenway | zachary.hemenway@stinson.com |
| | Jon Woodruff | jon.woodruff@stinson.com |
| **Smithfield** | Richard G. Parker | rparker@gibsondunn.com |

| Defendant | Name | Email Address |
|---|---|---|
| | Josh Lipton | jlipton@gibsondunn.com |
| | Brian Robison | brobison@gibsondunn.com |
| | Rachel Robertson | rrobertson@gibsondunn.com |
| | Stephanie Pearl | spearl@gibsondunn.com |
| | Pooja Patel | PPatel@gibsondunn.com |
| | John Cotter | jcotter@larkinhoffman.com |
| | John Kvinge | jkvinge@larkinhoffman.com |
| | Cara Fitzgerald | cfitzgerald@gibsondunn.com |
| **Triumph** | Aaron Chapin | aaron.chapin@huschblackwell.com |
| | Gene Summerlin | gene.summerlin@huschblackwell.com |
| | Marnie Jensen | marnie.jensen@huschblackwell.com |
| | Ryann Glenn | ryann.glenn@huschblackwell.com |
| | Kamron Hasan | kamron.hasan@huschblackwell.com |
| | Sierra Faler | sierra.faler@huschblackwell.com |
| | Administration | LegalSupportTeam-Law-OMA@huschblackwell.com |
| **Tyson** | Rachel Adcox | radcox@axinn.com |
| | Tiffany Rider | trider@axinn.com |
| | Lindsey Strang | lstrang@axinn.com |
| | Brooke Oppenheimer | boppenheimer@axinn.com |
| | David Graham | DGraham@dykema.com |
| | Brandon Boxbaum | bboxbaum@axinn.com |
| | Madeline Greathouse | mgreathouse@axinn.com |
| | Jarod Taylor | jtaylor@axinn.com |
| | Daniel Leon | dleon@axinn.com |
| | Jetta Sandin | jsandin@axinn.com |

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re Pork Antitrust Litigation | Case No. 0:18-cv-01776-JRT-HB |
| This Document Relates To:<br><br>All Actions | **ALL PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE PORK INTEGRATOR DEFENDANTS** |

531390.1

Pursuant to Federal Rules of Civil Procedure 26 and 34, Direct Purchaser Plaintiffs, Consumer Indirect Purchaser Plaintiffs, and Commercial and Institutional Indirect Purchaser Plaintiffs (collectively, "Plaintiffs") hereby request that Defendants Clemens Food Group, LLC; The Clemens Family Corporation; Hormel Foods Corporation; Hormel Foods, LLC; Indiana Packers Corporation; Mitsubishi Corporation (Americas); JBS USA Food Company; JBS USA Food Company Holdings; Seaboard Foods LLC; Seaboard Corporation; Smithfield Foods, Inc.; Triumph Foods, LLC; Tyson Foods, Inc.; Tyson Prepared Foods, Inc.; and Tyson Fresh Meats, Inc. produce the documents and things herein requested within 30 days at the offices of Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, or such other time and place as may be agreed upon by counsel. Pursuant to Federal Rule of Civil Procedure 34(b), unless otherwise specified, all documents must be organized and labeled to correspond to the categories in the associated document request. Corrections and supplemental answers and production of documents are required as provided for in the Federal Rules of Civil Procedure.

## **DEFINITIONS**

The following definitions shall apply to these document requests:

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated" means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not limited to, any advice, advisement, announcement,

articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes, publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Complaints" means Direct Purchaser Plaintiffs' First Amended and Consolidated Class Action Complaint, Case No. 18-cv-1803 (ECF No. 83); Consumer Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint, Case No. 18-cv-1776 (ECF No. 74); and Commercial and Institutional Indirect Purchasers Plaintiffs' First Amended and Consolidated Class Action Complaint, Case No. 18-cv-1891 (ECF No. 63).

5.      "Creditor Conference" means a conference or event relating to Pork that is organized or hosted by a company that provides credit or loan financing for Pork Integrators or a Pork Integrator's contract farmers.

6.      "Creditor Representative" means an employee of a non-Defendant company that provides credit or loan financing to a Pork Integrator for its Pork-related business or to a Pork Integrator's contract farmers for the contract farmers' Pork-related business who has a direct role in providing financing to a Pork Integrator for its Pork-related business or a Pork Integrator's contract farmers for the contract farmers' Pork-related business on behalf of that company.

7.     "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are: Agri Stats, Inc.; Clemens Food Group, LLC; The Clemens Family Corporation; Hormel Foods Corporation; Hormel Foods, LLC; Indiana Packers Corporation; Mitsubishi Corporation (Americas); JBS USA Food Company; JBS USA Food Company Holdings; Seaboard Foods LLC; Seaboard Corporation; Smithfield Foods, Inc.; Triumph Foods, LLC; Tyson Foods, Inc.; Tyson Prepared Foods, Inc.; and Tyson Fresh Meats, Inc.

8.     "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, cloud storage, mobile phones or devices, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or

otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense includes papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, email, voice mail, text messages, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds, and the contents of storage media used in data-processing systems. Documents include ESI as defined in these requests. Each and every draft of a Document is a separate Document for purposes of these document requests.

9.      "Document Custodian" refers to Your employees and/or representatives who the parties agree, or the Court orders, must have Documents in Your, the employee's, and/or Representative's possession, custody, or control collected and produced in this matter.

10.     "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (SnapChat, Confide, Signal, etc.));
- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);
- Word processed documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Unstructured Data;
- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content); and
- Cloud based or other virtualized ESI, including application, infrastructure and data.

11.    "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

12.    "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

13.    "Industry Analyst" means a Person, other than an employee of a Defendant, a Defendant's parent, a Defendant's subsidiary, or another Pork Integrator, who analyzes Pork Integrators for the purpose or with the effect of advising clients on investment in Pork Integrators.

14.     "Industry Meeting" means a meeting for companies in the Pork industry and at which the Pork industry is discussed, organized or hosted by an entity other than a named Defendant, a Defendant's parent, a Defendant's subsidiary, or another Pork Integrator, and attended by two or more Pork Integrators, including at least one named Defendant.

15.     "Management" means a Defendant's (a) Board of Directors, (b) officers, (c) CEO, CFO, COO, or President, and (d) senior executives.

16.     "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video, or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

17.     "Named Plaintiffs" means those individuals or entities listed as plaintiffs in the Complaints, and any entities subsequently added as named plaintiffs in this matter.

18.     "Person" means, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

19.     "Plaintiffs" refers to Direct Purchaser Plaintiffs, Consumer Indirect Purchaser Plaintiffs, and Commercial and Institutional Indirect Purchaser Plaintiffs.

20.     "Policy" or "Procedure" means any rule, practice or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

21.     "Pork" means pig or swine meat sold or purchased fresh or frozen, smoked ham, sausage, and bacon.

22.     "Pork Farm" means any farm where pigs are raised for eventual slaughter and processing as Pork. This includes farrow-to-finish operations (which raise pigs from birth to slaughter weight), feeder pig producer operations (which raise pigs from birth to about 10-60 pounds), and feeder pig finisher operations (which buy feeder pigs and grow them to slaughter weight).

23.     "Pork Grower" means any person or facility that raises pigs for eventual slaughter and processing as Pork. This includes farrow-to-finish operations (which raise pigs from birth to slaughter weight), feeder pig producer operations (which raise pigs from birth to about 10-60 pounds), and feeder pig finisher operations (which buy feeder pigs and grow them to slaughter weight).

24.     "Pork Integrator" means Defendants (except Agri Stats) and any non-Defendant entity that raises, buys, slaughters, and processes pigs to make Pork.

25.     "Pork Processing Facility" means a slaughter and/or packing facility where pigs are slaughtered, processed, or prepared to be sold as Pork.

26.     "Pork Supply Factors" refers to the ways in which Defendants control the supply of Pork, including capacity reductions, controlling slaughter rates, and exports.

27.    "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly or indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

28.    "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

29.    "Sales Personnel" refers to an employee of a Defendant whose primary job responsibilities include selling that Defendant's Pork to customers in the United States or from the United States to customers outside the United States, as well as any agent or representative authorized by that Defendant to sell its Pork on its behalf.

30.    "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

31.    "Studies" or "Analyses" include written presentations or summaries of researched information and/or compiled data and conclusions derived from such information and/or data.

32.    "Telephone Record" means any record of the originating and terminating phone numbers for a particular phone call or facsimile transmission, such as the monthly

bill that telephone carriers such as AT&T, CenturyLink, and numerous other telephone carriers provide on a monthly basis.

33.     "Trade Association" means an association of business organizations that promotes the interests of Pork Integrators relating to Pork and in which two or more Pork Integrators are members, including the Pork Act Delegate Body, the National Pork Board, the National Pork Producers Council ("NPPC"), the National Conference ("NPIC"), the 21st Century Pork Club, the North American Meat Institute ("NAMI"), and the American Meat Institute ("AMI").

34.     "United States" or "U.S." means each of the 50 states, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

35.     "Unstructured Data" is data that does not conform to a specific, pre-defined data model, it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but not are limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

36.     "You," "Your" or "Your company" mean the responding Defendant, including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding Defendant manages or controls, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on their behalf.

## SPECIFIC DOCUMENT REQUESTS

The "Relevant Time Period" for these requests is January 1, 2008, through and including August 17, 2018, unless otherwise noted.

**REQUEST NO. 1:**   All Documents relating to competition in the Pork industry produced to the Department of Justice, Federal Trade Commission, U.S. Department of Agriculture, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators voluntarily or pursuant to any civil investigative demand, grand jury subpoena, or other investigative request.

**REQUEST NO. 2:**   Documents sufficient to show Your corporate organizational structure throughout the Relevant Time Period, including, but not limited to, departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions that had any role at any time during the Relevant Time Period in the production, processing, distribution, marketing, pricing or sale of Pork.

**REQUEST NO. 3:**   All Documents or Communications between You and any other Defendant or Pork Integrator, relating to Competitive Conditions in the Pork Industry.

**REQUEST NO. 4:**   All Communications and Documents relating to the scheduling, attendance, or otherwise referencing any in-person, telephonic, or other meeting between You and any other Defendant or Pork Integrator.

**REQUEST NO. 5:**   For each Document Custodian, all:

a)   electronic and hard copy diaries, calendars, appointment books or notes, notebooks, or to-do lists ;

b)   contact information maintained in electronic or hard copy format, for any Person who is or was: (i) an owner, employee, consultant, officer, board

member, Representative, or agent of a Pork Integrator or Agri Stats; (ii) a Creditor Representative or Industry Analyst; (iii) an employee of a Trade Association; or (iv) an employee of any entity that falls within the definition of Industry Meeting.

c)    trip and travel logs and records, expense reports, and entertainment reports, including any other supporting Documents;

d)    bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you go cellphones) if such telephones were used for business purposes;

e)    Documents relating to membership in any Trade Association or industry group or attendance at any Trade Association, Industry Meeting or Creditor Conference, including announcements, membership lists, presentations (including speaker notes), agendas, minutes, notes, attendance lists, and correspondence;

f)    a copy of the Person's most recently created resume or curriculum vitae (CV);

g)    copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Pork, such as testimony at a deposition, trial, or public hearing;

h)    Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by such persons for any business purposes, even if only sparingly; and

i)    Any severance agreements in connection with the Document Custodian ceasing employment or changing employment status with You (without time limitation).

**REQUEST NO. 6:**    Copies of all Telephone Records in your possession, custody, or control, including Telephone Records of your main phone number(s), main fax number(s), and any phone number used as a switchboard for any of your relevant

facilities such as your headquarters, administrative offices, Pork Farms, Pork Processing Facilities, and Pork sales offices.

**REQUEST NO. 7:**    All Documents relating to Communications with investors, Industry Analysts, benchmarking services, and/or Creditor Representatives regarding Competitive Conditions in the Pork industry.

**REQUEST NO. 8:**    All Documents and Communications regarding the terms of all purchases, sales, trades, exchanges, or swaps of Pork between You and any other Pork Integrator, including any contracts, co-packing agreements, joint ventures, other agreements (whether formal or informal), and any contemplated, proposed, or actual bids.

**REQUEST NO. 9:**    All Documents relating to budgets, projections, estimates, or related studies, presentations, or reports regarding Pork regularly prepared or received by Your current or former directors, officers, or Management on a regular basis (weekly, monthly, quarterly, or annually) regarding the following topics:

  a.  cost and/or cost accounting reports (including, production, sale and distribution);

  b.  audited or unaudited financial statements (including all appendices);

  c.  cost and supply of raw material and/or inputs, including any back-integration of raw materials, swaps or sales of raw materials with other Pork Integrators, or hedging of purchased raw materials and/or inputs for Pork;

  d.  distribution channels for Pork;

  e.  export markets for Pork including a breakdown of country of destination and product form;

  f.  Pork product information regarding the types and product forms of Pork sold by You;

g.  forecasted, projected, estimated, planned, or actual demand for Pork;

h.  demand changes or demand fluctuations for Pork sold in the U.S.; and

i.  profits, revenues, and loss information on Pork produced or sold in the U.S. identified on a (i) consolidated basis; (ii) product line or product category basis; and/or (iii) facility-by-facility basis (including, but not limited to, gross profits, operating profits, net profits, cash flow reports, and EBITDA).

**REQUEST NO. 10:**   Documents sufficient to show industry-wide standards of products and definitions or descriptions of standards for Pork.

**REQUEST NO. 11:**   Documents sufficient to show actual or potential substitutes for Pork, or the elasticity of supply, demand, or price of Pork, analyzed by You during the Class Period (including the effect of such substitutes' prices upon Pork pricing, purchase terms, or profits).

**REQUEST NO. 12:**   All Documents concerning the costs of and potential obstacles to entering the Pork market, including, but not limited to, capital costs, environmental regulations, production costs, marketing costs and difficulties, contractual supply relationships, market conditions, brand loyalty or differentiation, start-up costs, and any other difficulties or obstacles to entry into the market for producing and selling Pork.

**REQUEST NO. 13:**   All Documents concerning the identity of any actual or potential entrant(s) into the Pork market and any barriers, obstacles or difficulties facing the actual or potential entrant(s).

**REQUEST NO. 14:**   All Documents utilized or generally referred to by Your Management or Sales Personnel for quoting, changing, or setting the prices or the terms and conditions for sale of Pork, including pricing guidelines, pricing methods, pricing

formulas, procedures or authorization procedures for Sales Personnel to quote a price, price changes, price lists, pricing policies, violations of pricing policies and Documents providing guidance to Sales Personnel about implementation of price changes.

**REQUEST NO. 15:**   All Documents relating to or communicating Pork price announcements, price changes, explanations of the reasons for price changes, price lists, pricing policies, pricing guidelines, pricing methods, pricing formulas, analysis of market prices, monitoring of competitor pricing, price changes of Pork produced or sold in the U.S. (including price announcements or explanations of the reasons for price changes), price increase and surcharge announcements, and any other Communications concerning Pork price increases or the imposition of surcharges.

**REQUEST NO. 16:**   All Documents or Communications relating to or exchanged with Agri Stats or its affiliates (including Express Markets, Inc.), including any consideration of the risks and/or benefits of providing information to or receiving information from Agri Stats, the anonymity of individual Pork Integrator data received from Agri Stats, any reverse-engineering processes employed by You to de-anonymize Agri Stats data, any contracts or agreements with Agri Stats, any presentations, Communications, or meeting minutes received from or provided to Agri Stats, and all copies of reports received from Agri Stats.

**REQUEST NO. 17:**   All Documents or Communications relating to meetings with Agri Stats or its affiliates (including Express Markets, Inc.).

**REQUEST NO. 18:**   All Documents relating to Competitive Conditions in the market for Pork, including reports, presentations, industry publications, business plans, studies,

analyses, or other Documents concerning forecasted, projected, estimated, planned or actual: (i) market shares; (ii) consolidation, mergers, acquisitions, or joint ventures; (iii) production or processing capacity, capacity reduction, capacity utilization, or operating rates; (iv) fixed or variable costs; (v) pricing; (vi) inventories; (vii) entry or exit conditions; (viii) inventories; (ix) supplies/supply trends; (x) data, publications, or other sources used in the regular course of business by You to monitor Pork demand in the United States; (xi) substitute products; (xii) exports; (xiii) raw materials; (xiv) Pork Supply Factors; or (xv) other industry statistics.

**REQUEST NO. 19:**    All Documents concerning Pork supply rationalization, industry leadership, industry discipline, production discipline, supply discipline, capacity discipline, or other so-called disciplined approaches or practices relating to the Pork industry.

**REQUEST NO. 20:**    Documents concerning the porcine epidemic diarrhea virus and its impact on Pork production.

**REQUEST NO. 21:**    All Documents and Communications relating to any benchmarking or information sharing services relating to Pork industry profitability, pricing, production, or supply other than Agri Stats or Express Markets, Inc.

**REQUEST NO. 22:**    Documents sufficient to identify any tentative, proposed or consummated sale, acquisition, merger, joint venture, divestiture, transfer of assets, spin-off, or any other form of change of ownership or control or business combination concerning any Pork-related business, production facilities, product lines, or other assets (including both businesses or assets owned or controlled by You and those owned or

controlled by other Persons), and any minutes, notes, reports, studies, analysis, presentations, expert or market participant comments, and any analysis or other information submitted to or received from any governmental agency.

**REQUEST NO. 23:**   All Documents and Communications relating to the immediately prior Request that reflect the disclosure of any non-public information to another Pork Integrator concerning Pork Supply Factors, Pork pricing, or any future Pork supply plans, including documents made available to You or by You through an electronic "data room" associated with a proposed transaction.

**REQUEST NO. 24:**   All Documents relating to public announcements, press releases, or corporate Communications by You concerning Competitive Conditions for Pork.

**REQUEST NO. 25:**   All Documents relating to compliance policies, whether implemented, adopted, used or considered, concerning federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws or regulations, or contacts and/or Communications with Your competitors (including current and former versions of compliance policies and procedures, presentations, seminars, programs, memos, statements signed by Your employees with responsibility for Pork that acknowledge receipt of or compliance with such policies arising from or relating to any prior legal proceedings), and all Documents relating to any inquiries or investigations concerning compliance with such policies including those listed in the prior Request.

**REQUEST NO. 26:**   All Documents relating to the Named Plaintiffs.

**REQUEST NO. 27:**     Documents relating to actions to conceal or avoid detection of any potential violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws, rules or regulations (including the use of code words or otherwise masking the identity of any Person or entity, meeting in locations or communicating at times or via methods with the intent to avoid detection by any Person or entity, using non-traceable prepaid calling cards or cellphones, non-contract or disposable cell phones, placing calls from public phones, and destroying, secreting, altering or forging Documents).

**REQUEST NO. 28:**     All Documents necessary to understand the operation of any of the computer hardware and systems, software, Structured Databases, ESI, database, storage, backup and archiving systems and Communications systems and devices information requested herein (including, but not limited to, Documents describing or defining the fields contained in any such database file naming conventions and standards); user manuals; Help features or documentation; password, encryption, and other security protocols; diskette, CD, DVD, and other removable media labeling standards; email storage conventions, e.g., limitations on mailbox sizes/storage locations; schedule and logs for storage; software and hardware upgrades (including patches) for the Relevant Time Period (including who and what organization conducted such upgrades); and Backup tape rotation.

**REQUEST NO. 29:**     Documents sufficient to identify and describe Your computer hardware and systems (including email systems), software, ESI, Structured Databases, storage, backup and archiving systems and Communications systems and devices used in

connection with Documents called for by production of these Requests for Production, including data maps, data dictionaries, explanations of information contained in each system or database, and document retention policies.

**REQUEST NO. 30:**    All Documents referenced or relied upon in responding to any Interrogatory served by any party in this Action.

**REQUEST NO. 31:**    Documents sufficient to show all forms of Your contracts and invoices, and any summaries of the terms, with contract farmers or Pork Growers.

**REQUEST NO. 32:**    All contracts, and any summaries of the terms (including duration, price protection, terms for price modification, surcharges, discounts, or rebates) for the sale of Pork in the U.S. to Your customers.

**REQUEST NO. 33:**    All Documents relating to any decision to change the pricing terms for Your customers' contracts for Pork, including any analyses regarding changes from fixed-price to adjustable price provisions.

**REQUEST NO. 34:**    All Documents relating to complaints received from any Pork customer regarding prices, pricing, or terms or conditions of sale or the refusal or failure to supply Pork and any responses thereto, and all Documents reflecting any policy of Your company concerning the handling of such complaints.

**REQUEST NO. 35:**    For the period January 1, 2005 through the present, Documents sufficient to identify all of Your Pork Growers, Pork Farms, and Pork Processing Facilities.

**REQUEST NO. 36:**    Structured Data regarding the terms of all purchases, sales, trades, exchanges, or swaps of Pork between You and any other Pork Integrator,

including any contracts, co-packing agreements, joint ventures, and/or other agreements, whether formal or informal.

**REQUEST NO. 37:**   For the time period from January 1, 2003 through the present, Structured Data sufficient to show, for each U.S. Pork sale, the categories of information listed below, and Documents sufficient to understand all data fields, codes, or other fields on the invoice. Plaintiffs request this information in the most disaggregated form (meaning at the transactional level, not aggregated by month or quarter) in which it is kept, and Defendants should produce the data in a comma-delimited text file (*e.g.*, a file with a file extension of .csv or .txt). If You maintain separate or distinct sets of such data for internal purposes, Agri Stats reporting purposes, or any other purpose, Plaintiffs' request is for each separate set of data for the categories of information listed below.

    a.    the terms of each sale;

    b.    the invoice number;

    c.    the purchase order number;

    d.    the location from which the Pork was shipped;

    e.    the customer's name, phone number(s), address(es), email address(es), including the identity of the customer that was billed and the location to which the Pork was shipped;

    f.    the date You shipped the Pork, the date You billed for the Pork, and the date the customer took delivery;

    g.    the grade, cut, product form, and/or type of Pork, including any product numbers, unique purchaser-specific identifier, any description of characteristics, and product descriptions sold for each transaction;

    h.    the quantity (and units of measure) for each sale;

i.      all pricing information concerning the sale, including shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;

j.      the currency in which the sale was billed and paid;

k.      any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales;

l.      if a resale, the Supplier of each Pork sold in connection with each sale;

m.      the price You paid Your Supplier for each type of Pork sold in connection with each sale, including gross and net aggregate and per-unit prices;

n.      any fixed or variable costs or costs of goods sold concerning the sale (including freight charge and transportation cost, sales and distribution cost, raw materials, intermediates, marketing or sales cost, and any other cost attributed or allocated to the sale);

o.      for any sale or purchase from another Pork Integrator, Electronic Data Interchange fields for which the user can freely enter text, such as "comments" or similar fields;

p.      any Structured Database field summarizing terms of sale or agreements or contracts for customers;

q.      any other data available in Your database Concerning the purchase, sale or distribution of the Pork for each sale.

**REQUEST NO. 38:**    Documents sufficient to show Your policies regarding rebates, surcharges, credits, discounts, or other special price arrangements relating to pork, including:

a.      Structured Data of any marketing funds or rebate payments made to downstream purchasers of Pork, including:

1.      Date of payment;
2.      Period over which payment applies;

3.      Name and description of program (e.g., volume rebate or discounts);

4.      Payment amount;

5.      Information pertaining to which customer the rebate applied to;

6.      Total purchase dollars and volume of Pork on which basis the rebate is paid.

b.      Any supplier agreements or other Documents describing the terms of the program.

**REQUEST NO. 39:**      Documents sufficient to describe in detail the Pork products You sold, marketed, or distributed from January 1, 2003 through the present, including any variations relating to brand name, physical properties and characteristics, packaging, product form, cut, further processing, grade, specialty products and any other factors influencing price.

Dated: November 1, 2018                Respectfully submitted,

         /s/ Brian D. Clark

W. Joseph Bruckner (MN #0147758)
Elizabeth R. Odette (MN #0340698)
Brian D. Clark (MN #0390069)
Simeon A. Morbey (MN # 0391338)
Arielle S. Wagner (MN #0398332)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com
aswagner@locklaw.com

Bruce L. Simon
Neil Swartzberg
PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
T: (415) 433-9000
F:  (415) 433-9008
bsimon@pswlaw.com
nswartzberg@pswlaw.com

Clifford H. Pearson
Daniel Warshaw
Bobby Pouya
Michael H. Pearson
PEARSON SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T: (818) 788-8300
F: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN #0387900)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
T: (612) 389-0600
F: (612) 389-0610
mweiner@pswlaw.com

*Interim Co-Lead Class Counsel for Direct
Purchaser Plaintiffs*

DATED: November 1, 2018          HAGENS BERMAN SOBOL SHAPIRO LLP

By:_____*/s/ Shana Scarlett*_____
          Shana E. Scarlett

715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000

Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
beth@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Britany N. Resch (#0397656)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

*Interim Co-Lead Counsel for Consumer*
*Indirect Purchaser Plaintiffs*

DATED: November 1, 2018                    LARSON • KING, LLP

                                           By:_____/s/ Shawn M. Raiter_____
                                                  Shawn M. Raiter

                                           Shawn M. Raiter (MN# 240424)
                                           LARSON • KING, LLP
                                           2800 Wells Fargo Place
                                           30 East Seventh Street
                                           St. Paul, MN  55101
                                           Telephone: (651) 312-6518
                                           sraiter@larsonking.com

                                           Jonathan W. Cuneo
                                           Joel Davidow
                                           Blaine Finley
                                           CUNEO GILBERT & LADUCA, LLP
                                           4725 Wisconsin Ave. NW, Suite 200
                                           Washington, DC 20016
                                           Telephone: (202) 789-3960
                                           jonc@cuneolaw.com
                                           joel@cuneolaw.com
                                           bfinley@cuneolaw.com

## CERTIFICATE OF SERVICE

I, Brian D. Clark, hereby affirms that on November 1, 2018, I caused a true and correct copy of **ALL PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE PORK INTEGRATOR DEFENDANTS** to be served on counsel listed on the attached schedule via email.

Dated: November 1, 2018

Respectfully submitted,

s        /s/ Brian D. Clark
W. Joseph Bruckner (MN #0147758)
Elizabeth R. Odette (MN #0340698)
Brian D. Clark (MN #0390069)
Arielle S. Wagner (MN #0398332)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com
aswagner@locklaw.com

*Interim Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

**IN RE PORK ANTITRUST LITIGATION DEFENDANTS' SERVICE LIST**

| | | |
|---|---|---|
| **Agri Stats, Inc.** | Jennifer Fleury | jennifer.fleury@hoganlovells.com |
| | Justin Bernick | justin.bernick@hoganlovells.com |
| | Kim M Schmid | kim.schmid@bowmanandbrooke.com |
| | William Leitzsey Monts, III | william.monts@hoganlovells.com |
| | Anne Lee | alee@cov.com |
| **Clemens Food Group** | Bethany D. Krueger | bkrueger@greeneespel.com |
| | Christa C Cottrell | ccottrell@kirkland.com |
| | Daniel E Laytin | daniel.laytin@kirkland.com |
| | Mark L. Johnson | mjohnson@greeneespel.com |
| | Virginia R McCalmont | vmccalmont@greeneespel.com |
| **Hormel Foods Corporation and Hormel Foods, LLC** | Aaron D Van Oort | aaron.vanoort@faegrebd.com |
| | Bryan K. Washburn | bryan.washburn@faegrebd.com |
| | Craig S Coleman | craig.coleman@faegrebd.com |
| | Emily Elizabeth Chow | emily.chow@FaegreBD.com |
| | Isaac B Hall | isaac.hall@faegrebd.com |
| | Richard A Duncan | richard.duncan@faegrebd.com |
| **Indiana Packers Corporation** | Britt M Miller | bmiller@mayerbrown.com |
| | Jaime Stilson | stilson.jaime@dorsey.com |
| | Robert Entwisle | rentwisle@mayerbrown.com |
| | William Stallings | wstallings@mayerbrown.com |
| **JBS USA** | Donald G Heeman | dheeman@felhaber.com |
| | Jessica J. Nelson | jnelson@felhaber.com |
| | Randi J Winter | rwinter@felhaber.com |
| **Seaboard Foods LLC** | Jon M. Woodruff | jon.woodruff@stinson.com |
| | Peter J Schwingler | peter.schwingler@stinson.com |
| | William L. Greene | william.greene@stinson.com |
| **Smithfield Foods, Inc.** | Brian Edward Robison | brobison@gibsondunn.com |
| | John A Cotter | jcotter@larkinhoffman.com |
| | John Anders Kvinge | jkvinge@larkinhoffman.com |
| | Joshua Lipton | jlipton@gibsondunn.com |
| | Richard G. Parker | rparker@gibsondunn.com |

| | | |
|---|---|---|
| **Triumph Foods LLC** | Aaron B Chapin | aaron.chapin@huschblackwell.com |
| | Vollis Gene Summerlin, Jr | gene.summerlin@huschblackwell.com |
| **Tyson Foods, Inc. Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.** | David P Graham | dgraham@dykema.com |
| | Felix Gilman | fgilman@axinn.com |
| | Jonathan Justl | jjustl@axinn.com |
| | Rachel Johanna Adcox | radcox@axinn.com |
| | Tiffany Rider Rohrbaugh | trider@axinn.com |
| **JBS USA Food Company** | Daniel Robert Moses Haller | dhaller@felhaber.com |
| **Clemens Family Corporation** | Mark L. Johnson | mjohnson@greeneespel.com |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# EXHIBIT 6

**Archived:** Tuesday, August 17, 2021 3:34:14 PM
**From:** Hall, Isaac B.
**Sent:** Friday, April 23, 2021 5:01:50 PM
**To:** Wagner, Arielle S.; Blaine Finley; Duncan, Richard A.; Coleman, Craig S.; Chow, Emily E.
**Cc:** Clark, Brian D.; Bourne, Joseph C.; Michelle J. Looby Esq. (mlooby@gustafsongluek.com); riop@hbsslaw.com; benh@hbsslaw.com
**Subject:** RE: Pork Antitrust - Hormel Priority Custodians
**Sensitivity:** Normal

---

Arielle:

I write in response to your email on April 21, 2021.

Hormel Foods has complied with the parties' Agreed Protocol for Preservation of Phone Records ("Preservation Protocol") with respect to the cellphone records for Mr. Bollum and Mr. Peil. Contrary to your email, the Preservation Protocol—which relates to "the preservation of telephone records pertaining to Defendants' document custodians in the possession of their respective telephone service providers"—does not require Hormel Foods to provide any notice to Plaintiffs regarding whether it has possession, custody, or control over the personal devices of its employees.

Nonetheless, Hormel Foods has, at various times in correspondence and discovery responses, indicated that it does not have possession, custody, or control over the personal devices of its employees. For example,

- In a letter dated October 26, 2018, Hormel Foods informed Plaintiffs' counsel that "Hormel does not purchase or otherwise pay for cell phones or other personal devices of Company employees." That letter also stated that, "Hormel has no reason to believe that any information potentially relevant to this lawsuit uniquely resides on any personal devices of the Identified Senior Executives."

- In its March 29, 2019 Responses to All Plaintiffs' First Set of Requests for Production of Documents, Hormel Foods noted, in response to Request 5(d), that it was not in possession, custody, or control of documents related to "personal cell phones."

- In its January 20, 2021 Answers to Plaintiffs' Interrogatories, Hormel Foods objected to Interrogatory No. 9 because it sought "information outside of Hormel Foods' possession, custody, or control" and reiterated that "it is not aware of Document Custodians using their cell phones for substantive external communications 'regarding or relating to [their] work' for the Company, beyond sending work-related emails and making and receiving telephone calls." Similarly, Hormel Foods objected to providing information about the cellphone devices of Document Custodians in response to Interrogatory 10 because it sought "information outside of Hormel Foods' possession, custody or control."

Given that Plaintiffs intend to serve subpoenas on Mr. Bollum and Mr. Peil regarding text messages and cell phones, we remind Plaintiffs that the Preservation Protocol also specifically provides that, "[n]othing in this protocol shall be construed as a concession that any information addressed by any preservation request is relevant, admissible, or will be produced to Plaintiffs in this litigation . . . ." The Preservation Protocol is not a license to pursue discovery that is not relevant or proportionate to the needs of the case.

The Faegre attorneys representing Hormel Foods in this case have not been authorized to accept service of any subpoena on behalf of Mr. Bollum or Mr. Peil. We are working to confirm the method of service, but may not have such confirmation by April 27. We ask that Plaintiffs wait to attempt service until we have confirmation or April 30—whichever comes first.

Kind regards,

**Isaac B. Hall**
Associate
isaac.hall@faegredrinker.com
Connect: vCard

+1 612 766 7266 direct

**Faegre Drinker Biddle & Reath** LLP
2200 Wells Fargo Center, 90 South Seventh Street
Minneapolis, Minnesota 55402, USA

---

**From:** Wagner, Arielle S. <aswagner@locklaw.com>
**Sent:** Wednesday, April 21, 2021 5:35 PM
**To:** Hall, Isaac B. <isaac.hall@faegredrinker.com>; Blaine Finley <bfinley@cuneolaw.com>; Duncan, Richard A. <richard.duncan@faegredrinker.com>; Coleman, Craig S. <craig.coleman@faegredrinker.com>; Chow, Emily E. <emily.chow@faegredrinker.com>
**Cc:** Clark, Brian D. <bdclark@locklaw.com>; Bourne, Joseph C. <jcbourne@locklaw.com>; Michelle J. Looby Esq. (mlooby@gustafsongluek.com) <mlooby@gustafsongluek.com>; riop@hbsslaw.com; benh@hbsslaw.com
**Subject:** RE: Pork Antitrust - Hormel Priority Custodians

**This Message originated outside your organization.**

---

Isaac,

I write in response to your April 21, 2021 email regarding the documents and content on Messrs. Bollum and Peil's personal devices, including telephone and text message data. Specifically, you state, in pertinent part:

    "As we have stated in previous correspondence and discovery responses, Hormel Foods does not have possession, custody, or control of Mr. Peil's or Mr. Bollum's personal devices and accordingly will not be producing documents or content from those devices."

Please identify the "previous correspondence and discovery responses" referenced in your email, as we have no record of any such communication or discovery response.

Under the Parties' Agreed Protocol For Preservation of Phone Records (attached), Hormel was obligated to provide notice by June 1, 2019 if there were any personal cell phones of an agreed-to custodian that Hormel asserted were not within its possession, custody, or control. Again, we have no record of receiving any such notice and are concerned that we are only just now finding this out, as data is nearly certain to have been lost in the intervening two years.

Although your email from earlier today pertained to Messrs. Peil and Bollum specifically, you've now caused us concern that there is an overall preservation issue with all Hormel custodian

personal devices.  Please confirm as soon as possible that Hormel has preserved the telephone and text message data on the agreed-to custodians' personal devices.

Please also advise by no later than Friday, April 23 whether Hormel will accept service of subpoenas on Messrs. Bollum and Peil.

Best,
Arielle

Arielle S. Wagner | she/her/hers | Attorney
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S | Suite 2200 | Minneapolis MN  55401
V: 612-596-4055 | F: 612-339-0981 | www.locklaw.com

---

**From:** Hall, Isaac B. <isaac.hall@faegredrinker.com>
**Sent:** Wednesday, April 21, 2021 8:16 AM
**To:** Blaine Finley <bfinley@cuneolaw.com>; Duncan, Richard A. <richard.duncan@faegredrinker.com>; Coleman, Craig S. <craig.coleman@faegredrinker.com>; Chow, Emily E. <emily.chow@faegredrinker.com>
**Cc:** Wagner, Arielle S. <aswagner@locklaw.com>; Clark, Brian D. <bdclark@locklaw.com>; Bourne, Joseph C. <jcbourne@locklaw.com>; Michelle J. Looby Esq. (mlooby@gustafsongluek.com) <mlooby@gustafsongluek.com>; riop@hbsslaw.com; benh@hbsslaw.com
**Subject:** RE: Pork Antitrust - Hormel Priority Custodians

Blaine:

As of the April 15, 2021 deadline, we have substantially completed the production of documents for the priority custodians Paul Peil and Corwyn Bollum.

As we have stated in previous correspondence and discovery responses, Hormel Foods does not have possession, custody, or control of Mr. Peil's or Mr. Bollum's personal devices and accordingly will not be producing documents or content from those devices.

Kind regards,

**Isaac B. Hall**
Associate
isaac.hall@faegredrinker.com
Connect: vCard

+1 612 766 7266 direct
———
**Faegre Drinker Biddle & Reath** LLP
2200 Wells Fargo Center, 90 South Seventh Street
Minneapolis, Minnesota 55402, USA

---

**From:** Blaine Finley <bfinley@cuneolaw.com>
**Sent:** Monday, April 19, 2021 9:43 PM
**To:** Hall, Isaac B. <isaac.hall@faegredrinker.com>; Duncan, Richard A. <richard.duncan@faegredrinker.com>; Coleman, Craig S. <craig.coleman@faegredrinker.com>; Chow, Emily E. <emily.chow@faegredrinker.com>
**Cc:** Wagner, Arielle S. <aswagner@locklaw.com>; Clark, Brian D. <bdclark@locklaw.com>; Bourne, Joseph C. <jcbourne@locklaw.com>; Michelle J. Looby Esq. (mlooby@gustafsongluek.com) <mlooby@gustafsongluek.com>; riop@hbsslaw.com; benh@hbsslaw.com
**Subject:** Pork Antitrust - Hormel Priority Custodians

**This Message originated outside your organization.**

Isaac,

Can you please confirm that you produced all documents for Hormel's two priority custodians (Corwyn Bollum and Paul Peil), including cell phone and text message content?

Best regards,

Blaine Finley
**Cuneo Gilbert & LaDuca, llp**
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
Office: (202) 789-3960
Mobile: (202) 495-8992

The information contained in this message may be attorney-client or work-product privileged and should be treated as confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail, destroying the original message and any copies.

*******************************
This message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments. Thank you.
*******************************

*******************************
This message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or

distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments. Thank you.
*****************************

# EXHIBIT 7



MINNEAPOLIS
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2179
T 612.339.6900
F 612.339.0981

Joseph C. Bourne
jcbourne@locklaw.com
Phone: 612.339.6900

April 30, 2021

<u>**VIA E-MAIL**</u>

Isaac B. Hall
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
isaac.hall@fagredrinker.com

     **Re:**    *In Re Pork Antitrust Litigation*, **Case No. 0:18-CV-01776-JRT-HB**

Dear Isaac:

     I write in response to your email dated April 23, 2021. That email raises several serious concerns about Hormel's failure to identify, preserve, and produce relevant and responsive information on its document custodians' personal mobile devices. *See* Fed. R. Civ. P. 37(e) (if ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," court may order measures necessary to cure prejudice, including adverse evidentiary presumption).

     Your April 23 email makes two core claims: (1) the Phone Preservation Protocol did "not require Hormel Foods to provide any notice to Plaintiffs regarding whether it has possession, custody, or control over the personal devices of its employees"; and (2) Hormel previously "indicated that it does not have possession, custody, or control over the personal devices of its employees." These claims fall flat given the history and needs of this case and the apparent facts related to Hormel's document custodians' personal mobile devices.

     First, the parties long ago negotiated phone record preservation measures in order to avoid exactly the situation in which we now find ourselves—with serious questions about Hormel's adherence to its preservation obligations and a lost opportunity for Plaintiffs to seek document preservation or production from the personal mobile devices of employees that Hormel claims are not in its possession, custody, or control. *See generally* ESI Protocol § V(E)(1) (producing party must take reasonable steps to determine if "any unique responsive communications" are located on mobile devices in its possession, custody, or control, and if so, to preserve the data); Status Conf. Tr. 33-37 (ECF No. 331) (discussing identification of custodians' phone records because of carriers' rolling seven-year retention policy in order to ensure no relevant data is deleted); Phone Preservation Protocol (for phone records in Defendants' possession, custody, or control, Defendants to send preservation letters to carriers; for phone records *not* in Defendants'

Isaac B. Hall
April 30, 2021
Page 2

possession, custody, or control, Defendants to help send preservation letters to carriers or notify Plaintiffs that such a letter would not be sent).

There are two types of important information that can be found on document custodians' personal mobile devices: phone call and text message log data ("log data") and text message content or content from a messaging application such as iMessage ("text message content"). Log data can be obtained from personal mobile devices, from carriers, or both—if it has been preserved. Text message content, however, can be obtained *only* through the custodians' personal mobile devices or data they have backed up to the cloud; it cannot be obtained from the carriers. Thus, if text message content has not been preserved by Hormel's document custodians, the ability to obtain such relevant information will likely be lost to Plaintiffs.

Hormel should have clearly and expressly notified Plaintiffs that it did not intend to produce log data or text message content for any of its document custodians. The communications cited in your April 23, 2021, email do not do that. A statement buried in interrogatory answers that was not served until January 20, 2021, is too late and inconspicuous. And statements such as "Hormel does not purchase or otherwise pay for cell phones" and "Hormel has no reason to believe that any information potentially relevant to this lawsuit uniquely resides on any personal devices" fail to fully inform. This is particularly true because case law has expressly recognized employers' obligation to preserve employees' ESI, whether on work-issued devices or personally owned devices. *See, e.g.*, *Alter v. Rocky Point Sch. Dist.*, No. 13-1100 JS AKT, 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014) (rejecting argument that employer was "not obliged to preserve work-related ESI" from employees' "personal computers" because, "to the extent that the . . . employees had documents related to this matter, the information should have been preserved *on whatever devices contained the information* (e.g. laptops, cellphones, *and any personal digital devices* capable of ESI storage)." (emphasis added)).

The appropriate course would have been to err on the side of disclosure so Plaintiffs could do what Hormel apparently failed to do: ensure log data and text message content were preserved. Whether documents are within a party's "possession, custody, or control" for purposes of Rule 34 is a legal conclusion. That legal conclusion requires close factual analysis; your claim that they were not in Hormel's possession, custody, or control is unsupported by critical facts here. Further, Hormel could have worked with its employees and former employees to voluntarily preserve and produce their ESI even if it claimed that was not required.

Second, Hormel's "possession, custody, or control" claim is contrary to case law. Documents are within a party's *control* within the meaning of Rule 34 if it has "the legal right or practical ability to demand the documents." *Damgaard v. Avera Health*, No. CV 13-2192 (RHK/JSM), 2014 WL 12599853, at *2 (D. Minn. June 9, 2014). In other words, "'control' is determined by the nature of the relationship between the parties." *Afremov v. Sulloway & Hollis, P.L.L.C.*, No. CV0903678PSJJSM, 2011 WL 13199154, at *3 (D. Minn. Dec. 2, 2011). Thus, courts routinely find that "corporations have control over their officers and employees and that corporations may be required to produce documents in their possession." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14CV04394AJNBCM, 2016 WL 5408171, at *6 (S.D.N.Y. Sept. 27, 2016) (collecting cases).

Isaac B. Hall
April 30, 2021
Page 3

That is enough to end this argument. Hormel *can* require its document custodians to produce documents in their possession, and so it *must*. Hormel has the "practical ability" to produce these documents based on the nature of its relationship with its employees. It also very likely has the "legal right" via its employee handbook, bring-your-own-device policy, or similar employment policies. *See id.* at *7 ("[A] number of courts in this District and elsewhere apply the most 'practical' test of all: whether the party has asked the non-party to turn over the documents at issue and, if so, whether the non-party is willing to do so."); *H.J. Heinz Co. v. Starr Surplus Lines Ins. Co.*, No. 2:15-CV-00631-AJS, 2015 WL 12791338, at *4 (W.D. Pa. July 28, 2015) (concluding employer has control of work-related "data on employee-owned personal mobile devices under its BYOD program").

Further, Hormel acknowledges its custodians used their personal mobile devices for "sending and receiving work-related e-mails and making and receiving telephone calls." *See* Hormel's Answers to First Set of Interrogatories, Answer to Interrogatory No. 9 (Jan. 20, 2021); Apr. 23, 2021 Email from I. Hall. In other words, the document custodians used their personal mobile devices for work in exactly the way that one would expect an employee to do so—for phone calls and emails. Although Hormel was silent on text messages, these likely exist, too, given trends in mobile phone usage and changing work norms in recent years. Hormel cannot simply make conclusory statements, with no objective analysis or inquiry, that no document custodians send or receive work-related text message content, then allow all of that data to be deleted through a failure to preserve it. *See In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, No. 312MD02385DRHSCW, 2013 WL 6486921, at *18 (S.D. Ill. Dec. 9, 2013), *order rescinded on other grounds sub nom. In re Boehringer Ingelheim Pharms., Inc.*, 745 F.3d 216 (7th Cir. 2014) ("It is certainly common knowledge that texting has become the preferred means of communication.").

Hormel's admission that its document custodians use their personal mobile devices *for work* defeats its suggestion that its employees' personal mobile devices do not "uniquely" contain relevant information. While the emails may be located on Hormel's email servers, log data is not. Nor is text message content. This is particularly troubling because the language cited in your email suggests Hormel and its counsel *do not know* to what extent the custodians' personal mobile devices were used for work. Noncommittal, less-than-straightforward phrases such as "Hormel has no reason to believe" and "it is not aware of" imply that the use of personal mobile devices has not been thoroughly investigated.

Hormel's apparent failure to preserve this data, coupled with its failure to notify Plaintiffs that it did not intend to preserve or produce log data or text message content for any of its document custodians, raises serious spoliation concerns that cannot be abated simply by suggesting that the log data and text message content are not likely to present "unique" information relevant to Plaintiffs' claims. *See, e.g.*, *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 417 (S.D.N.Y. 2010) (finding failure to preserve text messages, Skype messages, and emails "constitutes gross negligence" and that defendant "engaged in the spoliation of evidence" by failing to preserve such written communications). Rather than allow further potentially relevant information to be lost, we will promptly subpoena Hormel's remaining document custodians, reserving all rights and remedies for Hormel's conduct with respect to personal mobile devices. We do not concede this

Isaac B. Hall
April 30, 2021
Page 4

information was ever outside Hormel's control or ability to obtain, but further delay here makes it even more likely data will be lost. However, we still need to discuss Hormel's efforts to (1) determine whether relevant and responsive data exists (or existed) on its custodians' mobile devices, (2) preserve such data, and (3) whether such data has been lost. For instance, did you interview the document custodians to investigate whether, when, how frequently, and under what circumstances they sent or received text messages for work? Did they search their mobile devices to confirm? Did you ask them or instruct them to cooperate in providing log data and text message content from their mobile devices? What do Hormel's applicable policies, such as an employee handbook or bring-your-own-device policy, say about employees' obligations to make their personal mobile devices available to Hormel for inspection? Did you ask them or instruct them to preserve all potentially relevant data or documents (including log data and text message content) that can be found on their mobile devices?

We need to discuss these issues promptly. Please let us know when you are available to meet and confer next week.

Very truly yours,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

*/s/Joseph C. Bourne*

Joseph C. Bourne

JCB/dms

cc:     Co-Lead Counsel for Class Plaintiffs (via email)
        Richard A. Duncan (via email)
        Craig Coleman (via email)
        Emily E. Chow (via email)

# EXHIBIT 8



**Craig S. Coleman**
Partner
craig.coleman@faegredrinker.com
+1 612 766 6981 direct

faegredrinker.com

**Faegre Drinker Biddle & Reath** LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
+1 612 766 7000 main
+1 612 766 1600 fax

May 5, 2021

*<u>VIA E-MAIL</u>*

Joe Bourne
Lockridge Grindal Nauen P.L.L.P
Suite 2200
100 Washington Ave. South
Minneapolis, MN 55401

Re:     *In re Pork Antitrust Litigation*, Case No. 18-cv-01776-JRT-HB (D. Minn.)

Dear Joe:

I write to respond to the unfounded accusations set forth in your April 30, 2021 letter regarding the personal mobile devices owned and used by Hormel Foods employees. Your letter is based upon the false and unwarranted assumption that Hormel Foods has not satisfied its preservation obligations with respect to mobile devices. It is not appropriate to level accusations of spoliation with no factual basis.

Your letter purports to respond to our April 23, 2021 email, while ignoring the lead sentence of that email: "Hormel Foods has complied with the parties' Agreed Protocol for Preservation of Phone Records ('Preservation Protocol') with respect to the cellphone records of Mr. Bollum and Mr. Peil." As you know, paragraph 2 of the Preservation Protocol addresses Defendants' obligations with respect to "personal cell phones that a Defendant asserts are not within its possession, custody, or control." (Preservation Protocol ¶ 2) In particular, if a Defendant has ascertained that a document custodian uses a personal cell phone not within the Defendant's possession, custody, or control for work purposes, that Defendant

will *either*:

    a.   Assist that document custodian in sending a letter to their telephone carrier asking that carrier to preserve telephone records related to their phone number; or

    b.   If the Defendant or document custodian will not agree to the sending of such a letter, inform Plaintiffs that such a letter will not be sent with regard to that document custodian.

(*Id.* (emphasis in original)) Consistent with our April 23 email, Hormel Foods confirms that it has complied with this provision by assisting in the sending of preservation letters to the telephone-service providers responsible for personal cell phones used for any work purpose by Mr. Bollum,

Joe Bourne                                    - 2 -

Mr. Peil, and the other Hormel Foods employees who Plaintiffs have noticed their intent to subpoena. Such letters fully satisfy Hormel Foods' obligations under the Preservation Protocol that was negotiated by Plaintiffs' counsel, and we do not see how Plaintiffs can claim to have "serious spoliation concerns" based upon our correspondence stating that Hormel Foods complied with that protocol.

Moreover, while Plaintiffs have provided no factual basis to question the preservation measures that Hormel Foods has taken and Hormel Foods does not waive attorney-client privilege regarding the content of its legal communications with employees, Hormel Foods has fulfilled its obligations to take reasonable measures to ensure that relevant documents and ESI are preserved in all formats. Those measures include legal-hold notices issued to all custodians who are employees. You cite no facts suggesting that Hormel Foods and/or its employees have failed to preserve relevant documents.

Additionally, Hormel Foods disagrees with your assertion that information in Hormel Foods' interrogatory responses—which were served on January 20, 2021—is somehow "inconspicuous" or "buried." Plaintiffs' Interrogatory No. 9 requests information about cell phones and phone carriers used by custodians, and, in response, Hormel Foods specifically objected that the interrogatory seeks information "outside of Hormel Foods' possession, custody, or control." If Plaintiffs had any questions or concerns about answers to Plaintiffs' interrogatory on the exact subject giving rise to their supposed "serious concerns," Plaintiffs could have raised the issue at any time.

Finally, Hormel Foods' response to Interrogatory No. 9, as well as Plaintiffs' third-party discovery, negates the remaining issues argued in your letter. In that response, Hormel Foods also noted that it is not aware of its custodians using personal mobile phones for any work purpose other than telephone calls and emails, which have been preserved. Hormel Foods provided the telephone numbers, and Plaintiffs have issued subpoenas to both the carriers and relevant employees. Thus, Hormel Foods has provided Plaintiffs with all information needed to obtain discovery regarding personal mobile phones used for work-related purposes, and Plaintiffs have done so.

In short, your letter fails to establish any basis for maintaining that Hormel Foods has not complied with the Preservation Protocol or any other applicable preservation obligation. And your letter fails to provide any basis to maintain that relevant documents have not, in fact, been preserved. I question the value of meeting and conferring to discuss concerns lacking any factual basis, but I am available should Plaintiffs continue to think discussion is necessary.

Very truly yours,

Craig S. Coleman

cc:     Plaintiffs' counsel of record (*via e-mail*)
        Richard A. Duncan (*via e-mail*)
        Emily E. Chow (*via e-mail*)

# EXHIBIT 9



**LOCKRIDGE GRINDAL NAUEN**
P.L.L.P.

Attorneys at Law

www.locklaw.com

Joseph C. Bourne
jcbourne@locklaw.com
Phone: 612.339.6900

MINNEAPOLIS
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2179
T 612.339.6900
F 612.339.0981

May 10, 2021

**VIA ELECTRONIC MAIL**

Craig S. Coleman
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
craig.coleman@faegredrinker.com

> Re:    *In Re Pork Antitrust Litigation*, Case No. 0:18-CV-01776-JRT-HB

Dear Craig:

Thank you for your letter dated May 5, 2021.

Your letter and prior correspondence focus on log data, but not text message content. While we appreciate the confirmation that Hormel helped Hormel's employee custodians send preservation letters to phone carriers and provided those employees with "legal-hold notices," this still leaves open the question of whether text message content (which can be obtained only from the devices or, in some instances, cloud backup) has in fact been preserved. Please confirm whether Hormel's employee custodians have preserved text message data, including text message content.

Although your letter again states that Hormel "is ***not aware of*** its custodians using personal mobile phones for any work purpose other than telephone calls and emails,"[1] you do not address whether they in fact sent or received text messages related to work. It is difficult to imagine they did not; they used their personal mobile devices for work purposes, and text messages have become a dominant form of communication in recent years. Please confirm Hormel investigated whether its employee custodians sent or received text messages as part of their work for Hormel and its determination as to each custodian.

Last, your letter implies that the personal mobile devices owned by Hormel's employees, which they used for work purposes, are outside of Hormel's possession, custody, or control. However, as the authorities in my April 30 letter make clear, the mere fact of employee (rather than employer) ownership is not enough, on its own, to establish this legal contention. We are now seeking log data and text message content via subpoenas to the carriers and the custodians in an effort to mitigate the potential loss of documents and to obtain documents that Hormel should be producing itself. But serving a subpoena to ensure further data is not destroyed in no way absolves

---

[1] *See* I. Hall May 5, 2021 letter at p. 2 (emphasis added).

Craig S. Coleman
May 10, 2021
Page 2

Hormel of its obligation to preserve relevant data. This is instead a stop-gap measure necessitated by Hormel's failure to abide by its obligations. We maintain our position that the personal mobile devices owned by Hormel's employees are within Hormel's possession, custody, or control for discovery purposes, and Hormel had duties to ensure the preservation of relevant log data and text message content and to produce it. Although our immediate focus is on ensuring the preservation and production of extant relevant log data and text message content, we will address Hormel's failure to abide by its obligations in due course, and we reserve all rights.

We look forward to hearing from you soon.

Very truly yours,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

*/s/Joseph C. Bourne*

Joseph C. Bourne

JCB/dms

559177.2

# EXHIBIT 10



faegredrinker.com

**Craig S. Coleman**
Partner
craig.coleman@faegredrinker.com
+1 612 766 6981 direct

**Faegre Drinker Biddle & Reath** LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
+1 612 766 7000 main
+1 612 766 1600 fax

May 12, 2021

*__VIA E-MAIL__*

Joe Bourne
Lockridge Grindal Nauen P.L.L.P
Suite 2200
100 Washington Ave. South
Minneapolis, MN 55401

Re:    *In re Pork Antitrust Litigation*, Case No. 18-cv-01776-JRT-HB (D. Minn.)

Dear Joe:

The repeated accusation in your May 10 letter that Hormel Foods has "fail[ed] to abide by its obligations" regarding custodian cell phones is improper and ignores the Agreed Protocol for Preservation of Phone Records ("Preservation Protocol"), even while acknowledging Hormel Foods' explanation as to how it complied with the protocol that Plaintiffs negotiated.

Because Plaintiffs continue to levy factually erroneous and unsubstantiated accusations about Hormel Foods' conduct in discovery, it is necessary to review the parties' correspondence on this subject. On April 21, Plaintiffs invoked, and attached, the Preservation Protocol as the legal standard setting forth Hormel Foods' obligations regarding employee cell phones. Indeed, the Preservation Protocol opens by stating that "[t]he Parties agree that Defendants are to use the following protocol regarding 'the preservation of telephone records pertaining to Defendants' document custodians in the possession of their respective telephone service providers.'"

Although Plaintiffs' April 21 e-mail subsequently misrepresented what the Preservation Protocol requires and your May 10 letter now wishes it away entirely, that protocol permits a Defendant to "assert" that personal cell phones are not within its possession, custody, or control. As quoted in my May 5 letter, the Preservation Protocol then specifies preservation procedures that arise based on that assertion—none of which require a Defendant to provide notice to Plaintiffs or otherwise prove lack of possession, custody, or control to Plaintiffs' satisfaction.

Hormel Foods has explained how it complied with the Preservation Protocol despite the absence of any basis for Plaintiffs to question Hormel Foods' fulfillment of its obligations. Plaintiffs should desist in making unwarranted accusations.

Very truly yours,

Craig S. Coleman

Joe Bourne                              - 2 -


cc:     Plaintiffs' counsel of record (*via e-mail*)
        Richard A. Duncan (*via e-mail*)
        Emily E. Chow (*via e-mail*)

# EXHIBIT 11

**Archived:** Tuesday, August 17, 2021 3:35:58 PM
**From:** Kathryn Stephens
**Sent:** Thursday, July 22, 2021 10:53:16 AM
**To:** Owen, Stephen M.
**Cc:** John Rock; Clark, Brian D.; Bourne, Joseph C.
**Subject:** RE: In re Pork Antitrust Litigation, No. 18-CV-01776-JRT-HB
**Sensitivity:** Normal

---

Steve,

Thank you for your e-mail. To be clear, my letter of July 16 was an appropriate response to your letter of June 30 which was inconsistent with the message you gave us during the June 1 meet and confer—that your primary concern was preservation of relevant and responsive data, and that you understood the cost burden imaging would place on our individual third-party clients.

We have not taken the position that all imaging and searches based on a reasonably targeted list of search terms is completely unavailable, at least for some portion of our clients. In fact, as we have acknowledged, some of our clients' devices have previously been imaged. We do contend, however, that as third parties to the underlying litigation, our clients should not have to bear the costs associated with any of these processes.

In addition, the list of proposed search terms you provided is extremely overbroad and would necessarily capture information completely unrelated to anything remotely relevant to the underlying litigation.

If you would like to discuss these issues further, please advise as to your availability to conduct a meet and confer in the next couple of weeks.

Best,
Kathy

*Kathy Stephens*
Senior Attorney

**Rock Hutchinson**
business litigation & counsel

120 South Sixth Street
Suite 2050 Canadian Pacific Plaza
Minneapolis, MN 55402
Tel. 612-573-3661
Fax 612-330-0959
Email kstephens@rockhutchinson.com
Web www.rockhutchinson.com

---

**From:** Owen, Stephen M. <smowen@locklaw.com>
**Sent:** Monday, July 19, 2021 3:23 PM
**To:** Kathryn Stephens <kstephens@rockhutchinson.com>
**Cc:** John Rock <jrock@rockhutchinson.com>; Clark, Brian D. <bdclark@locklaw.com>; Bourne, Joseph C. <jcbourne@locklaw.com>
**Subject:** RE: In re Pork Antitrust Litigation, No. 18-CV-01776-JRT-HB

Kathryn,

Thank you for your correspondence. We disagree with your characterization of our June 1 meet and confer and disagree that Plaintiffs would be responsible for costs associated with the subpoenas. Further, we contend that we have sufficiently explained why your clients could have information highly relevant to this litigation. In light of your correspondence, we understand you do not intend to image the devices and run search terms on the imaged devices or cloud backup of any messaging apps used by your clients, which we continue to maintain is necessary to conduct a reasonable search.

Best,
Steve

---

**From:** Kathryn Stephens <kstephens@rockhutchinson.com>
**Sent:** Friday, July 16, 2021 10:29 AM
**To:** Owen, Stephen M. <smowen@locklaw.com>
**Cc:** John Rock <jrock@rockhutchinson.com>; Clark, Brian D. <bdclark@locklaw.com>; Bourne, Joseph C. <jcbourne@locklaw.com>
**Subject:** In re Pork Antitrust Litigation, No. 18-CV-01776-JRT-HB

Mr. Owen,

Please see the attached correspondence.

Best,

*Kathy Stephens*
Senior Attorney

**Rock Hutchinson**
business litigation & counsel

120 South Sixth Street
Suite 2050 Canadian Pacific Plaza
Minneapolis, MN 55402
Tel. 612-573-3661
Fax 612-330-0959

Email kstephens@rockhutchinson.com
Web  www.rockhutchinson.com

This e-mail may contain information that is privileged, confidential or otherwise protected from disclosure. If you are not the intended recipient or otherwise have received this message in error, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you are not the intended recipient or otherwise have received this message in error, please notify us immediately by e-mail, discard any paper copies and delete all electronic files of the message.

# EXHIBIT 12



Canadian Pacific Plaza
Suite 2050
120 South Sixth Street
Minneapolis, MN 55402

Kathryn Stephens
(612) 573-3661
FAX (612) 330-0959
kstephens@rockhutchinson.com

July 16, 2021

**VIA E-MAIL**
Joe Bourne
Lockridge Grindal Nauen PLLP
100 Washington Ave. S. #2200
Minneapolis, MN 55401-2179
smowen@locklaw.com

Re:     Case No. 18-CV-01776-JRT-HB, *In re Pork Antitrust Litigation*

Dear Mr. Bourne:

Thank you for your time on the phone this morning; however, we were surprised and disappointed by your unwillingness to negotiate or compromise in any way as to the scope and proposed method for the cell phone subpoenas issued to our clients.

As we understand your current position, Plaintiffs are (1) refusing to identify any sub-set of the broad spectrum of our thirty individual clients who might be most likely to have potentially relevant communications in their current cell phones as a starting point for any further discovery;  (2) refusing to provide the justification or basis for inclusion of all thirty of our clients; and (3) unwilling to narrow the extremely broad and inclusive list of proposed search terms beyond your initial proposal.

If our understanding is incorrect, please advise.


Sincerely,

*Kathy Stephens*

cc:     Stephen Owen
        John Rock

**Archived:** Tuesday, August 17, 2021 3:36:56 PM
**From:** Kathryn Stephens
**Sent:** Monday, August 2, 2021 12:36:57 PM
**To:** Bourne, Joseph C.; Owen, Stephen M.
**Cc:** John Rock
**Subject:** In re Pork Antitrust Litigation, No. 18-CV-01776-JRT-HB
**Sensitivity:** Normal
**Attachments:**
20210802 LTR to Bourne- meet and confer.pdf

---

Counsel,

Please see the attached correspondence summarizing this morning's meet and confer call.

Best,

**Kathy Stephens**
Senior Attorney

ROCKHUTCHINSON
business litigation & counsel

120 South Sixth Street
Suite 2050 Canadian Pacific Plaza
Minneapolis, MN 55402
Tel. 612-573-3661
Fax 612-330-0959
Email kstephens@rockhutchinson.com
Web www.rockhutchinson.com

# EXHIBIT 13

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **In re Pork Antitrust Litigation** | Case No. 18-cv-01776-JRT-HB |
| This Document Relates To: All Actions | **DEFENDANT HORMEL FOODS CORPORATION'S INITIAL OBJECTIONS AND RESPONSES TO ALL PLAINTIFFS' FIRST SET OF REQUESTS** |

Pursuant to the Court's February 7, 2019 Order, Defendant Hormel Foods Corporation[1] ("Hormel Foods" or the "Company"), by and through its undersigned counsel, hereby serves these Initial Objections and Responses ("Objections and Responses") to the twenty-eight agreed-upon requests[2] from All Plaintiffs' First Set of Requests for Production of Documents to the Pork Integrator Defendants ("Requests").

Hormel Foods' General Objections below are incorporated by reference in each of Hormel Foods' responses as if set forth separately therein, and each response is made without waiving any of these General Objections. The assertion of additional specific objections to a particular Request or the repetition of an objection shall not be construed as

---

[1] As stipulated by the parties in their December 12, 2018 Joint Status Report and Letter Brief, discovery as to holding-company defendant Hormel Foods, LLC is deferred pending resolution of the motions to dismiss. (*See* Joint Status Report & Letter Br. 1 [Doc. No. 233])

[2] Pursuant to the Court's February 7, 2019 Order and the parties' agreement, Hormel Foods' objections and responses to the remaining eleven requests—that is, Request Nos. 9, 12-13, 18, 28-30, and 35-39—are deferred until after the Court rules on the Defendants' motions to dismiss. (*See* Order 7 [Doc. No. 289]; Joint Status Report & Letter Br. 1 [Doc. No. 233])

waiving any applicable objection with respect to that or any other Request. Hormel Foods reserves the right to assert additional objections or to supplement the objections set forth herein.

Any response by Hormel Foods that it will produce documents, if any, indicates that Hormel Foods will (1) conduct a reasonable search for nonprivileged, responsive documents; and (2) produce any such nonprivileged documents in a format consistent with the Order Regarding Production of Electronically Stored Information and Paper Documents ("ESI Protocol Order" [Doc No. 292]). Hormel Foods reserves (a) the right to object to the use of documents and information obtained during discovery in any subsequent proceedings in this or any other action on the grounds of competency, privilege, relevance, materiality, and/or any other proper grounds; (b) the right to object, at any time, to requests or other discovery procedures involving or relating to the subject of these Requests; and (c) the right to revise, correct, supplement, or clarify any of the written responses provided herein.

These Objections and Responses have been prepared prior to the Court's ruling on the Defendants' motions to dismiss, and prior to the completion of Hormel Foods' investigation, discovery, and preparation for trial. It is not possible to respond completely or reasonably estimate the burden or expense of the proposed discovery at this time because, among other things, the parties have not agreed on—and the Court has not issued any orders regarding—Document Custodians, noncustodial data sources, search terms, and other aspects of discovery. Hormel Foods anticipates that the Court's ruling on the Defendants' motions to dismiss will provide guidance regarding the proper scope of

discovery, and that further discovery, independent investigation, and analysis may supply additional facts, add meaning to known facts, and establish new factual conclusions and legal contentions—all of which could lead to modifications and/or additions to the responses set forth herein. Hormel Foods reserves the right to supplement and/or amend these Objections and Responses, and the right to raise any additional objections deemed necessary and appropriate.

## <u>GENERAL OBJECTIONS</u>

1.      Hormel Foods objects to these Requests on the grounds that the scope of the claims and defenses in this litigation depends on the outcome of Defendants' pending motions to dismiss. Hormel Foods reserves the right to amend its objections and responses to these Requests based upon the Court's ruling on those motions.

2.      Hormel Foods objects to these Requests to the extent they seek to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any Orders which may be entered in this case—including the February 7, 2019 Order (*see* Doc. No. 289) and the February 20, 2019 ESI Protocol Order (*see* Doc. No. 292). Hormel Foods further objects to the Requests' mischaracterization of Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure, which permits the production of documents as they are kept in the usual course of business.

3.      Hormel Foods objects to these Requests to the extent they seek discovery that is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the

issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

4.      Hormel Foods objects to these Requests to the extent they seek discovery that is not directly related to the claims or defenses at issue in this litigation. Any Request that encompasses time periods, activities, or locations beyond those at issue in this case is overly broad.

5.      Hormel Foods objects to the production of any electronically stored information that is not reasonable accessible, or that cannot be compiled or produced without unreasonable investments in time and expense. Hormel Foods further objects to these Requests to the extent they purport to require a search beyond the scope of permissible discovery contemplated by Federal Rule of Civil Procedure 26(b)(2)(C) and the ESI Protocol Order.

6.      Hormel Foods objects to these Requests to the extent they attempt or purport to seek documents and/or information that is not within the Company's possession, custody, or control.

7.      Hormel Foods objects to these Requests—and the "Relevant Time Period" defined therein—to the extent they seek documents and/or information generated after the agreed-upon end-date for processing discoverable information of June 30, 2018. (*See* Joint Status Report & Letter Br. 2-3 [Doc. No. 233]; Letter from Brian D. Clark, to All Defense Counsel (Mar. 15, 2019) [hereinafter, "Plaintiffs' March 15 Letter"]) Hormel Foods also objects to the start date of the "Relevant Time Period" of January 1, 2008, and

anticipates responding further in this regard following the Courts' ruling on the motions to dismiss.

8.      Unless expressly stated otherwise in a response to a Request, as by referring to noncustodial sources of data, Hormel Foods objects to any search for production of nonprivileged, responsive documents beyond documents in the files of identified Document Custodians.

9.      Hormel Foods objects to these Requests to the extent they attempt or purport to seek documents and/or information unrelated to U.S. pork production and sales. Any Request that encompasses activities or locations beyond those at issue in this case and/or entities that do not sell pork into the United States or export pork out of the United States is overly broad, unduly burdensome, and disproportionate to the needs of this case.

10.     Hormel Foods objects to these Requests to the extent they attempt or purport to seek documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege held by Hormel Foods. The inadvertent production of any document shall not constitute a waiver of Hormel Foods' rights or privileges. Hormel Foods reserves the right to seek the return of any inadvertently produced documents in accordance with paragraph 18 of the Protective Order. (*See* Protective Order 17-20 [Doc. No. 212]) If production of a document is deemed to be a waiver of a right or privilege, that waiver shall be a limited waiver pertaining to that document only.

5

11.     Hormel Foods objects to these Requests to the extent they seek confidential business information, proprietary information, commercially sensitive information, competitively significant information, protected health information, personal information related to Hormel Foods' employees, and/or trade secrets of Hormel Foods, its predecessors, and/or third-parties.

12.     A statement by Hormel Foods that it will produce documents in response to a particular Request does not mean that any such documents exist; it means only that, if nonprivileged, responsive documents exist and can be located through a diligent search of Hormel Foods' reasonably accessible records, Hormel Foods will produce them—subject to the General Objections, specific objections, and responses herein.

## OBJECTIONS TO DEFINITIONS

1.     Hormel Foods objects to Plaintiffs' definition of the term "Communications" on the grounds that the definition is overly broad, and, as worded, encompasses matters that are not reasonably understood as a "communication" (for example, "behavior," "contact," or "revelation"). Hormel Foods will interpret the term "Communication[]" as transmitting information.

2.     Hormel Foods objects to Plaintiffs' definition of the term "Competitive Conditions" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent the term includes every document in the possession, custody, or control of the Company, as an entity involved in pork production.

3.     Hormel Foods objects to Plaintiffs' definition of the term "Creditor Conference" as vague and ambiguous because the phrase "contract farmers" is not defined.

6

Hormel Foods will interpret the term "contract farmers" to mean "someone who is contracted to raise hogs for [the Company], rather than a farmer who may independently raise hogs and sell to whomever they wish to sell to," as clarified by the Plaintiffs' March 15 Letter. In addition, the definition is overly broad, unduly burdensome, and disproportionate to the needs of the case, and calls for information outside of Hormel Foods' possession, custody, or control because it calls for information regarding a credit or loan financing entity's dealings with other Pork Integrators and/or their "contract farmers."

4.      Hormel Foods objects to Plaintiffs' definition of the term "Creditor Representative" for the same reasons it objects to the definition of the term "Creditor Conference" above.

5.      Hormel Foods objects to Plaintiffs' definition of the term "Defendant" as overly broad because it includes "predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant." Hormel Foods further objects to the definition as vague and ambiguous because (a) "managed" and "controlled" are undefined and unclear; and (b) it is unclear who may be "subsequently named as a Defendant in this litigation," and thus this definition may change over time. Hormel Foods also objects to the definition as overly broad, unduly burdensome, and disproportionate to the needs of the case because it includes persons "purporting to act on behalf of a Defendant," which would require the Company to have knowledge of matters beyond its custody or control. Hormel Foods will interpret

"Defendant" to mean a named Defendant as of the date of these Objections and Responses—excluding holding companies and entities that do not sell pork into the United States or export pork out of the United States, consistent with the clarification in Plaintiffs' March 15 Letter. See also the below Objection to the definitions of the terms "You," "Your," and "Your company."

6.     Hormel Foods objects to Plaintiffs' definition of the term "Document" as overly broad, unduly burdensome, vague, ambiguous, and not in compliance with the Federal Rules of Civil Procedure or applicable local rules. Hormel Foods will interpret "Document" to be synonymous in meaning and equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure.

7.     Hormel Foods objects to Plaintiffs' definition of the term "Document Custodian" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. Hormel Foods will collect and produce documents in this litigation from the individuals agreed to by the Parties and/or so ordered by the Court. Hormel Foods further objects to this definition to the extent it purports to extend the Company's possession, custody, or control as defined by the Federal Rules of Civil Procedure to each and every "employee['s] and/or representative['s]" possession, custody, or control. In addition, the word "representative" as used in the definition of "Document Custodian" is vague and ambiguous.

8.     Hormel Foods objects to Plaintiffs' definition of the term "ESI" to the extent such definition departs from its plain and ordinary meaning, and seeks to impose burdens or obligations on the Company beyond those imposed by the Federal Rules of Civil

Procedure, or any applicable local rules, case law, or court orders. Hormel Foods further objects to the definition of the term "ESI" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case of the case to the extent Requests incorporating this term seek (a) material not in the possession, custody, or control of Hormel Foods; (b) production of ESI from sources that are not reasonably accessible in light of the burdens or costs required to locate, restore, review, and produce whatever responsive information may be found; or (c) seek information that is not relevant to the claim or defense of any party to this action.

9.     Hormel Foods objects to Plaintiffs' definition of the term "Employee" because by incorporating the definitions of "Person" and "You" "without limitation," that definition includes individuals and entities who are not employed by the Company, and seeks information beyond the Company's possession, custody, or control. Hormel Foods will interpret any references to an "employee" or "employees" to mean the Company's employees.

10.    Hormel Foods objects to Plaintiffs' definition of the term "Industry Analyst" on the grounds that this definition seeks information not within the Company's possession, custody, or control, and that it is vague and ambiguous as the Company cannot identify all people possibly falling within this definition.

11.    Hormel Foods objects to Plaintiffs' definition of the term "Industry Meeting" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks discovery of meetings with entities other than other Defendants—including untold, undefined and unspecified third parties.

9

12.     Hormel Foods objects to Plaintiffs' definition of the term "Management" on the grounds that this definition includes individuals who do not maintain information that is relevant to this dispute and because the reference to "senior executives" is vague, is subject to multiple interpretations, and may include individuals who are not a part of the Company's "management." Hormel Foods interprets "management" to include its executive-level employees at the Hormel Foods vice-president level and higher, but not its Board of Directors.

13.     Hormel Foods objects to Plaintiffs' definition of the term "Person" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. Hormel Foods further objects to the definition of this term on the grounds that it purports to include individuals and entities beyond the named Defendants that are irrelevant and outside the scope of the case, and that it purports to impose a burden on the Company to obtain information from third parties outside of its control.

14.     Hormel Foods objects to Plaintiffs' definitions of the terms "Policy" or "Procedure" on the grounds that, in referring to courses of conduct, business methods, or traditions that may be "informal" or "unwritten" or followed by some unidentified person "implicitly," they include matters that are not Hormel Foods' policies or procedures. Hormel Foods will interpret these terms to mean formal practices, methods, or courses of action.

15.     Hormel Foods objects to Plaintiffs' definitions of the terms "Pork Farm" and "Pork Grower" as vague and ambiguous as the definition for "Pork Grower" appears to encompass the term "Pork Farm." Plaintiffs' March 15 Letter proposes meet-and-confers

with individual Defendants to further refine these terms. Hormel Foods reserves all rights with respect to any revised definitions that Plaintiffs may propose, and notes that Plaintiffs' March 15 Letter does not address the above-referenced concern regarding the apparent overlap between the defined terms.

16.     Hormel Foods objects to Plaintiffs' definition of the term "Pork Integrator" on the grounds that this definition is vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case; seeks information not within the Company's possession, custody, or control; and would require the Company to guess at whether any non-Defendant entity fits within the scope of this definition. Defendants requested clarification from Plaintiffs about whether this definition is conjunctive (that is, to qualify as a "Pork Integrator" one must not only process pork, but also raise hogs) or disjunctive (that is, to qualify as a "Pork Integrator" one need only buy hogs or process pork). Plaintiffs' March 15 Letter states that "the integrator decision would apply to the slaughter or process of pork regardless of whether the hogs were bought, raised, or acquired through other means." Hormel Foods objects to the definition of "Pork Integrator" as clarified by Plaintiffs' March 15 Letter as unduly burdensome, disproportionate to the needs of the case, lacking in particularity, and seeking information that is not relevant to the claim or defense of any party to this action—especially to the extent it seeks "all" documents concerning non-Defendant entities that process pork, and/or are not in the possession, custody, or control of the Company. Plaintiffs' counsel also stated that they intend to supply a list of purported "Pork Integrators" for Defendants' consideration. Hormel Foods will consider such a list but reserves its objections.

17. Hormel Foods objects to Plaintiffs' definition of the term "Pork Processing Facility" as overly broad and unduly burdensome because the definition is not limited to facilities within the United States.

18. Hormel Foods objects to Plaintiffs' definition of the term "Pork Supply Factors" to the extent that it suggests that "Defendants control the supply of Pork" or that engaging in "capacity reductions, controlling slaughter rates, and exports" equates to "control[ing] the supply of Pork." Hormel Foods is a net purchaser of hogs. Hormel Foods' Responses to these Requests should not be construed as an admission that Hormel Foods controlled the supply of Pork or has the ability to do so.

19. Hormel Foods objects to Plaintiffs' definitions of the terms "relating to," "referring to," "regarding," "with respect to," and "concerning" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent they purport to impose upon Hormel Foods obligations greater than those set forth in the Federal Rules of Civil Procedure. Hormel Foods further objects to the definitions to the extent they incorporate other defined terms to which the Company objects.

20. Hormel Foods objects to Plaintiffs' definition of the term "Representative" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. Hormel Foods further objects to the definition to the extent it incorporates other defined terms to which Hormel Foods objects. Hormel Foods further objects to the definition of this term on the grounds that it purports to include individuals and entities that are irrelevant and outside the scope of the case, and that it purports to impose a burden on the Company to obtain information from third parties outside of its control.

12

21. Hormel Foods objects to Plaintiffs' definition of the term "Sales Personnel" to the extent that it includes any "agent or representative" whose documents are not within the possession, custody, or control of the Company (such as a downstream seller), and also objects on the grounds that the responsibilities of another Defendant's employees are unknown to Hormel Foods. Hormel Foods will interpret "any agent or representative authorized by that Defendant to sell its Pork on its behalf" to mean only documents in the possession, custody, and control of the Company's entities and operations that sell pork into the United States or export pork out of the United States.

22. Hormel Foods objects to Plaintiffs' definition of the term "Structured Data" as vague and ambiguous, overly broad, and unduly burdensome. Hormel Foods will interpret these terms consistent with the ESI Protocol Order and related agreements already in place or ultimately reached by the parties, or, as necessary, further ordered by the Court.

23. Hormel Foods objects to Plaintiffs' definitions of the terms "studies" or "analyses" as overly broad because they could include almost any Company document or file, structured or unstructured.

24. Hormel Foods objects to Plaintiffs' definition of the term "Trade Association" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case because the term is defined as any "association or business organization that promotes the interest of Pork Integrators," without limitation. Hormel Foods does not have knowledge of whether an "association or business organization" of which it was not a participant "promote[d] the interest of Pork integrators."

25.     Hormel Foods objects to Plaintiffs' definition of the term "Unstructured Data" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. Hormel Foods further objects to the definition on the grounds that it purports to impose a burden on Hormel Foods to obtain information from third parties outside of its control. Hormel Foods will interpret the term consistent with the ESI Order and related agreements already in place or ultimately reached by the parties, or, as necessary, further ordered by the Court.

26.     Hormel Foods objects to Plaintiffs' definitions of the terms "You," "Your," and "Your company" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. Hormel Foods further objects to the definitions of these terms on the grounds that they purport to include individuals and entities beyond the named Defendants that are irrelevant and outside the scope of the case, and that they purport to impose a burden on Hormel Foods to obtain information from third parties outside of its control. Hormel Foods interprets these terms to mean a named Defendant in *Ire Pork Antitrust Litigation* only as of the date of these Objections of Responses; it does not interpret these terms to include any other predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, joint ventures, other affiliates, and any organization or entity managed or controlled by a named Defendant. As specifically applied to Hormel Foods, Hormel Foods interprets these terms to mean the operations of Hormel Foods in its purchasing, manufacturing, processing, and sale of Pork.

## SPECIFIC INITIAL OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS

**REQUEST NO. 1:** All Documents relating to competition in the Pork industry produced to the Department of Justice, Federal Trade Commission, U.S. Department of Agriculture, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators voluntarily or pursuant to any civil investigative demand, grand jury subpoena, or other investigative request.

## RESPONSE TO REQUEST NO. 1:

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 1 on the grounds that it is vague and ambiguous as to scope. Based upon Plaintiffs' March 15 Letter, Hormel Foods interprets Request No. 1 to (1) only include voluntary disclosures made to any government entity focused on pork pricing or supply as it relates to competition in the Pork industry for investigative purposes; and (2) not include mandatory submissions to government agencies (for example, submissions to the USDA required by the Livestock Mandatory Reporting Act of 1999, reports to the SEC pursuant to the Securities Exchange Act of 1934, and pre-merger notifications to the FTC and DOJ under the Hart-Scott-Rodino Antitrust Improvements Act of 1976). In accordance with this interpretation, and subject to and without waiving the above objections, Hormel Foods will produce nonprivileged, responsive documents that it produced to any U.S. federal or state agencies and regulators either voluntarily or in response to any investigative request, if any.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time

period for which documents and information responsive to this Request would be relevant

and discoverable.

**REQUEST NO. 2:** Documents sufficient to show Your corporate organizational structure throughout the Relevant Time Period, including, but not limited to, departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions that had any role at any time during the Relevant Time Period in the production, processing, distribution, marketing, pricing or sale of Pork.

**RESPONSE TO REQUEST NO. 2:**

In response to Request No. 2, Hormel Foods states it has already produced

documents sufficient to show its salaried personnel that had any role in the production,

processing, distribution, marketing, pricing, or sale of Pork for the years 2007 through

2018. No further documents will be produced in response to this Request.

**REQUEST NO. 3:** All Documents or Communications between You and any other Defendant or Pork Integrator, relating to Competitive Conditions in the Pork Industry.

**RESPONSE TO REQUEST NO. 3:**

In addition to the General Objections and Objections to Definitions, Hormel Foods

objects to Request No. 3 on the grounds that it is overly broad, unnecessarily cumulative,

and unduly burdensome; calls for the production of documents not relevant to any matter

in dispute; and is duplicative insofar as it seeks the same documents and communications

requested by other Requests. Hormel Foods states that its communications with any other

Defendant relating to the Pork Industry include the reporting and transmitting of data to

Agri Stats for the Swine Production and Swine Processing books,[3] and the declension of Agri Stats' services regarding Swine Sales.

Subject to and without waiving any of the above objections, Hormel Foods will produce nonprivileged, responsive communications sent to or received from Agri Stats and any other Defendant or identified Pork Integrator in its possession, custody, and control, and noncustodial data sufficient to show its sales to and purchases from other Defendants and identified Pork Integrators.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

---

[3] As set forth in the Company's March 8, 2019 Limited Disclosures, for the period from January 1, 2007 to June 30, 2018, Hormel Foods subscribed to Agri Stats reports as follows: Hormel Foods subscribed to Agri Stats reports for Swine Processing from January 1, 2007 to October 2010, and from December 2014 to November 2017. Through the now-divested PFFJ, LLC, the Company also subscribed to Agri Stats reports for Swine Production. After the divestiture of PFFJ to Smithfield in 2016, Hormel Foods subscribed to the Agri Stats reports for Swine Production from June 2017 to February 2018. Hormel Foods never subscribed to any other Agri Stats reports (for example, Swine Sales).

**REQUEST NO. 4:** All Communications and Documents relating to the scheduling, attendance, or otherwise referencing any in-person, telephonic, or other meeting between You and any other Defendant or Pork Integrator.

**RESPONSE TO REQUEST NO. 4:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 4 on the grounds that it is overly broad and unduly burdensome insofar as it is not limited to communications and documents related to Pork, unnecessarily cumulative, and duplicative insofar as it seeks the same documents and communications requested by other Requests. Subject to and without waiving any of the above objections, Hormel Foods will produce nonprivileged, responsive communications and documents sufficient to show any meetings with any other Defendant or identified Pork Integrator to the extent they have not already been produced in response to other Requests.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 5:** For each Document Custodian, all:

a)    electronic and hard copy diaries, calendars, appointment books or notes, notebooks, or to-do lists;

b)    contact information maintained in electronic or hard copy format, for any Person who is or was: (i) an owner, employee, consultant, officer, board member, Representative, or agent of a Pork Integrator or Agri Stats; (ii) a Creditor Representative or Industry Analyst; (iii) an employee of a Trade Association; or (iv) an employee of any entity that falls within the definition of Industry Meeting.

c)    trip and travel logs and records, expense reports, and entertainment reports, including any other supporting Documents;

d)    bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you go cellphones) if such telephones were used for business purposes;

e)    Documents relating to membership in any Trade Association or industry group or attendance at any Trade Association, Industry Meeting or Creditor Conference, including announcements, membership lists, presentations (including speaker notes), agendas, minutes, notes, attendance lists, and correspondence;

f)    a copy of the Person's most recently created resume or curriculum vitae (CV);

g)    copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Pork, such as testimony at a deposition, trial, or public hearing;

h)    Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by such persons for any business purposes, even if only sparingly; and

i)    Any severance agreements in connection with the Document Custodian ceasing employment or changing employment status with You (without time limitation).

**RESPONSE TO REQUEST NO. 5:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 5 on multiple grounds:

- Hormel Foods objects to Request No. 5 on the grounds that its request for "all" documents is overly broad, unduly burdensome, and not proportional to the needs of this litigation, and calls for the production of information not relevant to any matter in dispute to the extent that "all" documents are not limited to communications with competitors.

- Hormel Foods objects to Request Nos. 5(a), 5(b), 5(c), and 5(h) on the grounds that those requests conflict with and/or impose burdens in excess of the requirements of the ESI Protocol Order. Hormel Foods specifically objects to the production of nonbusiness and non-Pork information of an identified Document Custodian— including, but not limited to, any nonbusiness contact information from the Company's e-mail systems.

- Hormel Foods objects to Request No. 5(d) on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case, and calls for the production of information not relevant to any matter in dispute because it purports to seek information related to home telephone and fax numbers and purely personal cell phones. Hormel Foods further states that it does not have possession, custody, or control over the documents sought by Request No. 5(d).

- Hormel Foods objects to Request No. 5(e) to the extent it seeks documents related to "membership in any Trade Association or industry group or attendance at any

Trade Association, Industry Meeting or Creditor Conference" on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of this litigation, and calls for the production of information not relevant to any matter in dispute.

- Hormel Foods objects to Request No. 5(f) to the extent it seeks documents that are not within the Company's possession, custody, or control, and information that is publicly available.

- Hormel Foods objects to Request No. 5(g) to the extent it calls for the production of information not relevant to any matter in dispute and to the extent that any applicable protective order would prevent the production of the transcript of a Document Custodian's testimony, if any.

- Hormel Foods objects to Request No. 5(h) to the extent it purports to require the creation of document that do not exist.

- Hormel Foods objects to Request No. 5(i) on the grounds that it calls for the production of information not relevant to any matter in dispute, and is overly broad in that it is not limited as to time.

Subject to and without waiving the above objections, Hormel Foods will produce nonprivileged, responsive documents that exist; that relate to the Company's Pork business; that are relevant to the parties' claims and defenses as determined by the Court's rulings on Defendants' motions to dismiss; and that are in its possession, custody, and control.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 6:** Copies of all Telephone Records in your possession, custody, or control, including Telephone Records of your main phone number(s), main fax number(s), and any phone number used as a switchboard for any of your relevant facilities such as your headquarters, administrative offices, Pork Farms, Pork Processing Facilities, and Pork sales offices.

**RESPONSE TO REQUEST NO. 6:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 6 on the grounds that it is overly broad insofar as it is not limited to calls made by Document Custodians, unduly burdensome, and calls for the production of information not relevant to any matter in dispute because it purports to seek Telephone Records without regard to whether calls were exchanged with any other Defendant or identified Pork Integrator. On August 8, 2018, the Company sent letters to its telecommunications providers—Century Link, Jaguar Communications, and Verizon—requesting that they preserve the Company's call records. Hormel Foods states that it does

not have possession, custody, or control of any Telephone Records of any Company phone or fax numbers. Thus, no documents will be produced in response to this Request.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 7:** All Documents relating to Communications with investors, Industry Analysts, benchmarking services, and/or Creditor Representatives regarding Competitive Conditions in the Pork industry.

**RESPONSE TO REQUEST NO. 7:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 7 on the grounds that it is overly broad, unnecessarily cumulative, and unduly burdensome to the extent it purports to seek drafts or internal communications; calls for the production of documents not relevant to any matter in dispute; and is duplicative insofar as it seeks the same documents and communications requested by other Requests. Hormel Foods maintains a website for investor relations (https://investor.hormelfoods.com/ir-home), which contains public announcements, press releases, and earnings releases since 2011 and materials from investor events (for example,

earnings conference calls) since 2013. Hormel Foods further incorporates its objections and Response to Request No. 21. Subject to and without waiving the above objections, Hormel Foods will produce responsive public announcements, press releases, earning releases, and materials from investor events since the beginning of the Relevant Time Period (which may be shortened by a ruling of the Court on the Defendants' Motions to Dismiss), to the extent those documents are not available through the Company's investor-relations website. No further documents will be produced in response to this Request.

**REQUEST NO. 8:** All Documents and Communications regarding the terms of all purchases, sales, trades, exchanges, or swaps of Pork between You and any other Pork Integrator, including any contracts, co-packing agreements, joint ventures, other agreements (whether formal or informal), and any contemplated, proposed, or actual bids.

**RESPONSE TO REQUEST NO. 8:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 8 on the grounds that it is vague and ambiguous insofar as the Company lacks knowledge of which entities constitute Pork Integrators, overly broad, unnecessarily cumulative, and unduly burdensome. Subject to and without waiving the above objections, Hormel Foods will produce nonprivileged, responsive documents and communications between Document Custodians and identified Pork Integrators, if any, and noncustodial data sufficient to show the Company's sales to and purchases from identified Pork Integrators, if any.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time

period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 10:** Documents sufficient to show industry wide standards of products and definitions or descriptions of standards for Pork.

**RESPONSE TO REQUEST NO. 10:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 10 insofar as it is vague as to the meaning of "industry wide standards," and seeks documents that are publicly available. Hormel Foods states that it looks to the USDA and that agency's publicly available reports for industry-wide standards for Pork. No documents will be produced in response to this Request.

**REQUEST NO. 11:** Documents sufficient to show actual or potential substitutes for Pork, or the elasticity of supply, demand, or price of Pork, analyzed by You during the Class Period (including the effect of such substitutes' prices upon Pork pricing, purchase terms, or profits).

**RESPONSE TO REQUEST NO. 11:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 11 on the grounds that it is vague and ambiguous insofar as it fails to adequately define "the elasticity of supply, demand, or price of Pork," and "actual or potential substitutes for Pork." Subject to and without waiving the above objections,

Hormel Foods will produce nonprivileged, responsive documents, if any, sufficient to show actual or potential substitutes for Pork, or the elasticity of supply, demand, or price of Pork.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable.

**REQUEST NO. 14:** All Documents utilized or generally referred to by Your Management or Sales Personnel for quoting, changing, or setting the prices or the terms and conditions for sale of Pork, including pricing guidelines, pricing methods, pricing formulas, procedures or authorization procedures for Sales Personnel to quote a price, price changes, price lists, pricing policies, violations of pricing policies and Documents providing guidance to Sales Personnel about implementation of price changes.

**RESPONSE TO REQUEST NO. 14:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 14 on the grounds that it is overly broad, unnecessarily cumulative, and unduly burdensome; and calls for the production of documents not relevant to any matter in dispute insofar as it purports to seek documents related to the pricing of the Company's processed, branded, and packaged products. To the extent Request No. 14 purports to seek information regarding the sale of hogs, Hormel Foods states that it is a net purchaser of hogs. Subject to and without waiving the above objections, Hormel Foods will produce noncustodial data sufficient to demonstrate the Company's sales prices for Pork products it manufactures.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable.

**REQUEST NO. 15:** All Documents relating to or communicating Pork price announcements, price changes, explanations of the reasons for price changes, price lists, pricing policies, pricing guidelines, pricing methods, pricing formulas, analysis of market prices, monitoring of competitor pricing, price changes of Pork produced or sold in the U.S. (including price announcements or explanations of the reasons for price changes), price increase and surcharge announcements, and any other Communications concerning Pork price increases or the imposition of surcharges.

**RESPONSE TO REQUEST NO. 15:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 15 on the grounds that it is overly broad, unnecessarily cumulative, and unduly burdensome; is vague and ambiguous to the extent "price announcements, . . . pricing policies, pricing guidelines, pricing methods, [and] pricing formulas" are not defined and are unclear; calls for the production of documents not relevant to any matter in dispute insofar as it purports to seek documents related to the pricing of the Company's processed, branded, and packaged products; and is duplicative insofar as it seeks the same documents and communications requested by other Requests.

Subject to and without waiving the above objections, Hormel Foods will produce noncustodial data sufficient to demonstrate the Company's sales prices—and thus any price

changes—for Pork products it manufactures. See also the above Response to Request No. 14.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable.

**REQUEST NO. 16:** All Documents or Communications relating to or exchanged with Agri Stats or its affiliates (including Express Markets, Inc.), including any consideration of the risks and/or benefits of providing information to or receiving information from Agri Stats, the anonymity of individual Pork Integrator data received from Agri Stats, any reverse-engineering processes employed by You to de-anonymize Agri Stats data, any contracts or agreements with Agri Stats, any presentations, Communications, or meeting minutes received from or provided to Agri Stats, and all copies of reports received from Agri Stats.

**RESPONSE TO REQUEST NO. 16:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 16 on the grounds that it is duplicative insofar as it seeks the same documents and communications requested by other Requests. Subject to and without waiving any of the above objections, Hormel Foods will produce nonprivileged, responsive pork-related documents and communications from Document Custodians who communicated with or received data from Agri Stats and from any noncustodial data sources.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which

the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 17:** All Documents or Communications relating to meetings with Agri Stats or its affiliates (including Express Markets, Inc.).

**RESPONSE TO REQUEST NO. 17:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 17 on the grounds that it is duplicative insofar as it seeks the same documents and communications requested by other Requests. Subject to and without waiving any of the above objections, Hormel Foods will produce nonprivileged, responsive pork-related documents and communications relating to meetings with Agri Stats from Document Custodians and from any noncustodial data sources.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with

regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 19:** All Documents concerning Pork supply rationalization, industry leadership, industry discipline, production discipline, supply discipline, capacity discipline, or other so-called disciplined approaches or practices relating to the Pork industry.

**RESPONSE TO REQUEST NO. 19:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 19 on the grounds that it is vague and ambiguous insofar as the terms "supply rationalization" and "discipline" are not defined. Subject to and without waiving any of the above objections, Hormel Foods will apply "supply rationalization," "industry leadership," "industry discipline," "production discipline," "supply discipline," and "capacity discipline" as search terms to the Document Custodians' documents, and will produce nonprivileged, responsive documents, if any.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 20:** Documents concerning the porcine epidemic diarrhea virus and its impact on Pork production.

**RESPONSE TO REQUEST NO. 20:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 20 on the grounds that it is overly broad, unnecessarily cumulative, and unduly burdensome. Subject to and without waiving any of the above objections, Hormel Foods will produce copies of nonprivileged, responsive documents sufficient to demonstrate the impact of the porcine epidemic diarrhea virus on Pork production.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable.

**REQUEST NO. 21:** All Documents and Communications relating to any benchmarking or information sharing services relating to Pork industry profitability, pricing, production, or supply other than Agri Stats or Express Markets, Inc.

**RESPONSE TO REQUEST NO. 21:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 21 on the grounds that it is vague and ambiguous insofar as it fails to adequately define "benchmarking or information sharing services," unduly burdensome to the extent it purports to seek all documents and communications relating to the USDA mandatory-reporting requirements, and calls for the production of documents not relevant to any matter in dispute because the Complaint's conspiracy allegations are limited to Agri

Stats and Express Market, Inc. Hormel Foods states that, since terminating its relationship with Agri Stats, the Company has not entered into any new agreements for benchmarking services. Subject to and without waiving any of the above objections, Hormel Foods will produce nonprivileged, responsive documents related to non-USDA benchmarking or information-sharing services, if any.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 22:** Documents sufficient to identify any tentative, proposed or consummated sale, acquisition, merger, joint venture, divestiture, transfer of assets, spin-off, or any other form of change of ownership or control or business combination concerning any Pork-related business, production facilities, product lines, or other assets (including both businesses or assets owned or controlled by You and those owned or controlled by other Persons), and any minutes, notes, reports, studies, analysis, presentations, expert or market participant comments, and any analysis or other information submitted to or received from any governmental agency.

**RESPONSE TO REQUEST NO. 22:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 22 on the grounds that it is overly broad, unnecessarily cumulative, unduly burdensome, and duplicative insofar as it seeks the same documents and communications requested by other Requests; calls for the production of documents not relevant to any matter in dispute because the Complaint does not allege that the Defendants used deal negotiations to share nonpublic information and to the extent the Request seeks documents regarding transactions between affiliated entities; and seeks documents and communications that are subject to nondisclosure and confidentiality agreements. Hormel Foods further objects to Request No. 22 insofar as it seeks information regarding "any tentative [or] proposed" transaction concerning any Pork-related business, facilities, lines, or other assets because such discovery is disproportionate to the needs of the case. Hormel Foods states that it has consummated the following transactions related to Pork between January 1, 2008 and June 30, 2018 which required premerger notification under the Hart-Scott-Rodino Antitrust Improvements Act of 1976: the acquisition of non-corporate interests of Applegate Farms, LLC in 2015; the divestiture of PFFJ, LLC and Clougherty Packing, LLC in 2016; the acquisition of assets of Capitol Wholesale Meats, Inc. in 2017; and the acquisition of voting securities of Columbus Manufacturing, Inc. in 2017. Subject to and without waiving the above objections, Hormel Foods will produce the HSR filing and any other materials submitted to or received from the FTC and DOJ in connection with the above-listed transactions.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 23:** All Documents and Communications relating to the immediately prior Request that reflect the disclosure of any non-public information to another Pork Integrator concerning Pork Supply Factors, Pork pricing, or any future Pork supply plans, including documents made available to You or by You through an electronic "data room" associated with a proposed transaction.

**RESPONSE TO REQUEST NO. 23:**

Hormel Foods denies any implication that it engages in merger-and-acquisition activity and negotiations in order to share or communicate sensitive information with competitors. In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 23 on the grounds that it is overly broad, unnecessarily cumulative, and unduly burdensome; calls for the production of documents not relevant to any matter in dispute because the Complaint does not allege that the Defendants used deal negotiations to share nonpublic information; and seeks documents and communications that are subject to nondisclosure and confidentiality agreements. Of the transactions listed in response to Request No. 22, only the 2016 divestiture of PFFJ, LLC and Clougherty

34

Packing, LLC to Smithfield involved a company engaged in the slaughter and processing of pork. Subject to and without waiving any of the above objections, Hormel Foods will produce responsive documents provided by the Company in the data room for the PFFJ transaction to the extent that the data room still exists and the documents provided by the Company can still be identified.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 24:** All Documents relating to public announcements, press releases, or corporate Communications by You concerning Competitive Conditions for Pork.

**RESPONSE TO REQUEST NO. 24:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 24 on the grounds that it is overly broad, unnecessarily cumulative, and unduly burdensome to the extent it purports to seek drafts or internal communications; and calls for the production of documents not relevant to any matter in dispute. Hormel Foods maintains a website for corporate communications (https://www.hormelfoods.com/newsroom/), as well as a website for investor relations

35

([https://investor.hormelfoods.com/ir-home](https://investor.hormelfoods.com/ir-home)), which contains public announcements and press releases since 2011. Subject to and without waiving the above objections, Hormel Foods will produce responsive public announcements and press releases since the beginning of the Relevant Time Period (which may be shortened by a ruling of the Court on the Defendants' Motions to Dismiss), to the extent those documents are not available through the Company's investor-relations website. No further documents will be produced in response to this Request.

**REQUEST NO. 25:** All Documents relating to compliance policies, whether implemented, adopted, used or considered, concerning federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws or regulations, or contacts and/or Communications with Your competitors (including current and former versions of compliance policies and procedures, presentations, seminars, programs, memos, statements signed by Your employees with responsibility for Pork that acknowledge receipt of or compliance with such policies arising from or relating to any prior legal proceedings), and all Documents relating to any inquiries or investigations concerning compliance with such policies including those listed in the prior Request.

**RESPONSE TO REQUEST NO. 25:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 25 on the grounds that it is vague and ambiguous to the extent "inquiries or investigations concerning compliance" is not defined and unclear; and calls for the production of documents related to compliance policies related to international laws, antibribery laws, and "any similar laws or regulations" which are not relevant to any matter in dispute and not proportional to the needs of this litigation. Subject to and without waiving the General Objections and Objections to Definitions, Hormel Foods will produce nonprivileged, responsive documents sufficient to show the Company's antitrust-

compliance policies and that the Document Custodians' certifications of compliance with those policies, if any.

**REQUEST NO. 26:** All Documents relating to the Named Plaintiffs.

**RESPONSE TO REQUEST NO. 26:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 26 on the grounds that it is overly broad and unduly burdensome, and calls for the production of documents which are equally available to Plaintiffs. Subject to and without waiving the above objections, Hormel Foods will apply search terms consisting of the names of Named Plaintiffs to the Document Custodians' documents and noncustodial data sources, and will produce nonprivileged, responsive documents, if any.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable.

**REQUEST NO. 27:** Documents relating to actions to conceal or avoid detection of any potential violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws, rules or regulations (including the use of code words or otherwise masking the identity of any Person or entity, meeting in locations or communicating at times or via methods with the intent to avoid detection by any Person or entity, using non-traceable prepaid calling cards or cellphones, non-contract or disposable cell phones, placing calls from public phones, and destroying, secreting, altering or forging Documents).

**RESPONSE TO REQUEST NO. 27:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 27 on the grounds that it calls for the production of documents related to international laws, antibribery laws, and "any similar laws or regulations" which are not relevant to any matter in dispute and not proportional to the needs of this litigation. Hormel Foods specifically denies any implication that the Company has ever acted to conceal or avoid detection of any potential violations of federal, state, or international antitrust, competition, antimonopoly, anticartel, unfair-competition, antibribery, or other similar laws, rules, or regulations. Although Hormel Foods is not aware of any documents relating to such actions, subject to and without waiving the above objections, Hormel Foods will produce nonprivileged, responsive documents relating to actions to conceal or avoid detection of any potential violations of federal or state antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, and antitrust-related unfair-competition laws, if any.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

**REQUEST NO. 31:** Documents sufficient to show all forms of Your contracts and invoices, and any summaries of the terms, with contract farmers or Pork Growers.

**RESPONSE TO REQUEST NO. 31:**

Subject to and without waiving any of the General Objections and Objections to Definitions, Hormel Foods will produce template contracts intended for use by the Company's procurement group and contracts with contract farmers or Pork Growers maintained in noncustodial data sources sufficient to show the forms of contracts and terms used by the Company and the contract farmers or Pork Growers, if any.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable.

**REQUEST NO. 32:** All contracts, and any summaries of the terms (including duration, price protection, terms for price modification, surcharges, discounts, or rebates) for the sale of Pork in the U.S. to Your customers.

**RESPONSE TO REQUEST NO. 32:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 32 on the grounds that it is overly broad, unnecessarily cumulative, unduly burdensome, and duplicative insofar as it seeks the same documents requested by other Requests. Subject to and without waiving the above objections, Hormel Foods will produce noncustodial data sources sufficient to show the Company's sales (and thus pricing) of Pork to customers and responsive contracts stored in noncustodial data sources.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable.

**REQUEST NO. 33:** All Documents relating to any decision to change the pricing terms for Your customers' contracts for Pork, including any analyses regarding changes from fixed-price to adjustable price provisions.

**RESPONSE TO REQUEST NO. 33:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 33 on the grounds that it is overly broad and unduly burdensome, and calls for the production of documents not relevant to any matter in dispute. Subject to and without waiving the above objections, Hormel Foods will produce nonprivileged, responsive documents from noncustodial data sources relating to replacement costs, USDA market reports, and forecasts, and data sufficient to show the Company's sales (and thus pricing) of Pork to customers. See also the Company's Response to Request No. 32 above.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable.

**REQUEST NO. 34:** All Documents relating to complaints received from any Pork customer regarding prices, pricing, or terms or conditions of sale or the refusal or failure to supply Pork and any responses thereto, and all Documents reflecting any policy of Your company concerning the handling of such complaints.

**RESPONSE TO REQUEST NO. 34:**

In addition to the General Objections and Objections to Definitions, Hormel Foods objects to Request No. 34 as overly broad, unduly burdensome, and vague and ambiguous insofar as it fails to adequately define the term "complaints," and calls for the production of documents not relevant to any matter in dispute. Based upon Plaintiffs' March 15 Letter, Hormel interprets the term "complaints" to include only "customer complaints regarding any of the pricing or supply terms of the contract (volume, rebates, discounts, etc.)." Subject to and without waiving any of the above objections, Hormel Foods will endeavor to work with Plaintiffs' counsel to identify custodial search terms that may result in nonprivileged, responsive documents.

The outcome of the Defendants' Motions to Dismiss based on the statute of limitations—or any other ruling of the Court regarding the relevant time period in which the alleged unlawful conduct occurred or plausibly supports a claim—may shorten the time period for which documents and information responsive to this Request would be relevant and discoverable. The outcome of the Defendants' Motions to Dismiss, including the Court's rationale if it denies the motions, may affect the proportionality analysis with regard to the relevancy of the documents and information sought in this Request as compared to the expense and burden of production.

Dated: March 29, 2019

                                        *s/ Emily E. Chow*
                                        Richard A. Duncan (#0192983)
                                        Aaron D. Van Oort (#0315539)
                                        Craig S. Coleman (#0325491)
                                        Emily E. Chow (#0388239)
                                        Isaac B. Hall (#0395398)
                                        Bryan K. Washburn (#0397733)
                                        **FAEGRE BAKER DANIELS LLP**
                                        2200 Wells Fargo Center
                                        90 South Seventh Street
                                        Minneapolis, MN 55402-3901
                                        Telephone: (612) 766-7000
                                        Facsimile: (612) 766-1600
                                        richard.duncan@faegrebd.com
                                        aaron.vanoort@faegrebd.com
                                        craig.coleman@faegrebd.com
                                        emily.chow@faegrebd.com
                                        isaac.hall@faegrebd.com
                                        bryan.washburn@faegrebd.com

                                        *Counsel for Defendant Hormel Foods*
                                        *Corporation*

US.121867538.07

# EXHIBIT 15

FaegreBD.com

# FAEGRE BAKER
# DANIELS

USA ▾ UK ▾ CHINA

**Richard A. Duncan**
*Partner*
**richard.duncan@FaegreBD.com**
Direct **+1 612 766 8612**

**Faegre Baker Daniels LLP**
2200 Wells Fargo Center ▾ 90 South Seventh Street
Minneapolis ▾ Minnesota 55402-3901
Main **+1 612 766 7000**
Fax +1 612 766 1600

October 26, 2018

**VIA EMAIL AND U.S. MAIL**

W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

Re:   **In re Pork Products Antitrust Litig. (D. Minn.)**

Dear Mr. Bruckner:

This letter constitutes the response of Hormel Foods Corporation ("Hormel" or "Company") to the letter that plaintiffs' counsel in the above-listed action sent to me on July 19, 2018, requesting that Hormel take certain information-preservation steps with regard to personal device data of five "Identified Senior Executives" of the Company. In response to that request, to the extent the Identified Senior Executives were not previously under a legal hold with regard to this matter, they were placed on legal hold, which will preserve their communications and data on Company-owned computers and other devices. Additionally, preservation letters were sent to the Company's telecommunications providers.

Hormel does not purchase or otherwise pay for cell phones or other personal devices of Company employees, including the Identified Senior Executives. Based on our investigation following receipt of your July 19 letter, there is no reason to believe that any information potentially relevant to this lawsuit uniquely resides on any personal devices of the Identified Senior Executives (work-related emails would also reside on Company data storage devices), and we are aware of no general obligation under the Federal Rules of Civil Procedure to forensically image personal devices of Company personnel. Nonetheless, Hormel will work with a vendor to have the personal cell phones of the Identified Senior

W. Joseph Bruckner             -2-             October 26, 2018

Executives imaged, and anticipates having that work completed by November 15, 2018. This action is being taken without conceding that there is any data contained on those cell phones that would be relevant to this case and without waiving any argument or objection about the propriety of discovery directed to those devices.

Very truly yours,

Richard A. Duncan

DUNRA

US.120521867.01

# EXHIBIT 16

| Telephone Numbers |
|---|
| (202) 277-6328 |
| (202) 320-4858 |
| (202) 680-3820 |
| (202) 720-1749 |
| (203) 663-1966 |
| (209) 988-2940 |
| (212) 574-7588 |
| (215) 237-6605 |
| (215) 237-7472 |
| (215) 368-2500 |
| (215) 680-1373 |
| (215) 896-6408 |
| (217) 370-7284 |
| (217) 494-9027 |
| (217) 547-7109 |
| (217) 622-2535 |
| (217) 652-5171 |
| (217) 871-2166 |
| (219) 309-4350 |
| (224) 255-9448 |
| (224) 500-8285 |
| (224) 944-7107 |
| (252) 813-0769 |
| (252) 813-2669 |
| (260) 241-0371 |
| (260) 249-4648 |
| (260) 249-4833 |
| (260) 249-9777 |
| (260) 341-7636 |
| (260) 407-2700 |
| (260) 407-2725 |
| (260) 407-2737 |
| (260) 407-2738 |
| (260) 407-2751 |
| (260) 407-2759 |
| (260) 407-2772 |
| (260) 407-2788 |
| (260) 407-6009 |
| (260) 409-1538 |
| (260) 410-3403 |
| (260) 414-3356 |
| (260) 416-6538 |
| (260) 416-7143 |
| (260) 416-9069 |
| (260) 417-4999 |
| (260) 433-7142 |

Phone Numbers for Text Searches

| |
|---|
| (260) 433-9957 |
| (260) 433-9960 |
| (260) 433-9969 |
| (260) 433-9992 |
| (260) 437-3550 |
| (260) 437-3806 |
| (260) 437-3808 |
| (260) 437-3812 |
| (260) 437-3974 |
| (260) 437-8678 |
| (260) 437-9633 |
| (260) 438-0784 |
| (260) 438-1997 |
| (260) 438-2188 |
| (260) 443-4489 |
| (260) 571-0914 |
| (260) 579-6169 |
| (260) 579-6943 |
| (260) 579-8470 |
| (260) 579-8474 |
| (260) 705-1090 |
| (262) 305-5032 |
| (262) 496-5933 |
| (267) 221-1669 |
| (267) 347-2481 |
| (267) 347-9624 |
| (267) 374-5173 |
| (267) 374-9576 |
| (267) 377-5818 |
| (267) 377-6051 |
| (267) 421-1264 |
| (267) 421-4724 |
| (267) 421-4896 |
| (270) 776-2533 |
| (270) 776-2536 |
| (303) 386-5871 |
| (303) 517-7630 |
| (303) 548-9311 |
| (303) 710-0703 |
| (305) 491-8491 |
| (309) 335-4842 |
| (310) 683-8348 |
| (312) 246-7617 |
| (312) 446-1288 |
| (312) 588-3013 |
| (314) 276-5406 |
| (314) 765-2702 |

Phone Numbers for Text Searches

| |
|---|
| (316) 200-3040 |
| (316) 291-3012 |
| (316) 734-1521 |
| (317) 225-9976 |
| (317) 450-5925 |
| (317) 489-1552 |
| (317) 518-7433 |
| (317) 525-1728 |
| (317) 600-6751 |
| (317) 730-0918 |
| (317) 967-1107 |
| (319) 239-3473 |
| (319) 256-6912 |
| (319) 330-9822 |
| (319) 429-6642 |
| (319) 575-5420 |
| (319) 575-5462 |
| (319) 575-5485 |
| (319) 594-4000 |
| (319) 759-6874 |
| (319) 766-2230 |
| (319) 850-9457 |
| (319) 931-7893 |
| (319) 931-9303 |
| (320) 214-5847 |
| (320) 894-1492 |
| (320) 963-3307 |
| (330) 806-6399 |
| (331) 212-1482 |
| (336) 430-0443 |
| (361) 813-9819 |
| (388) 437-4603 |
| (402) 202-3431 |
| (402) 216-9483 |
| (402) 380-5371 |
| (402) 490-9370 |
| (402) 670-9878 |
| (402) 720-7406 |
| (402) 720-8638 |
| (402) 729-7761 |
| (402) 826-8809 |
| (402) 928-0635 |
| (402) 952-0532 |
| (402) 952-0553 |
| (402) 952-0560 |
| (402) 952-0561 |
| (402) 968-8284 |

Phone Numbers for Text Searches

| |
|---|
| (402) 983-1681 |
| (402) 990-2175 |
| (402) 990-5244 |
| (404) 229-8910 |
| (404) 754-6570 |
| (405) 227-1360 |
| (405) 550-2195 |
| (405) 747-4832 |
| (405) 833-2074 |
| (407) 952-0553 |
| (410) 271-1398 |
| (414) 732-3883 |
| (414) 918-3293 |
| (419) 266-1978 |
| (435) 691-4705 |
| (440) 225-4854 |
| (440) 506-8501 |
| (479) 200-3879 |
| (479) 200-4576 |
| (479) 236-1192 |
| (479) 236-4836 |
| (479) 236-5157 |
| (479) 236-5375 |
| (479) 236-7651 |
| (479) 236-8706 |
| (479) 263-0358 |
| (479) 263-6083 |
| (479) 263-9890 |
| (479) 268-5920 |
| (479) 268-5922 |
| (479) 273-0128 |
| (479) 290-2970 |
| (479) 290-3949 |
| (479) 290-4001 |
| (479) 290-4002 |
| (479) 290-4194 |
| (479) 290-4235 |
| (479) 290-4617 |
| (479) 290-5817 |
| (479) 290-6338 |
| (479) 290-6393 |
| (479) 290-6676 |
| (479) 290-8094 |
| (479) 290-8095 |
| (479) 290-8096 |
| (479) 387-1749 |
| (479) 387-6178 |

| |
|---|
| (479) 387-7426 |
| (479) 435-4974 |
| (479) 466-9322 |
| (479) 595-1328 |
| (479) 601-1584 |
| (479) 601-3250 |
| (479) 713-0877 |
| (479) 713-9779 |
| (479) 713-9961 |
| (479) 841-7584 |
| (479) 871-0563 |
| (479) 871-1240 |
| (479) 871-4186 |
| (479) 871-4959 |
| (479) 871-8566 |
| (479) 871-9491 |
| (479) 879-2864 |
| (479) 879-7262 |
| (479) 903-5783 |
| (479) 957-7801 |
| (479) 968-5376 |
| (479) 986-1364 |
| (502) 552-5341 |
| (502) 582-0317 |
| (503) 784-3036 |
| (505) 220-4796 |
| (507) 206-7232 |
| (507) 206-7433 |
| (507) 206-7544 |
| (507) 206-7957 |
| (507) 206-9643 |
| (507) 206-9833 |
| (507) 208-3021 |
| (507) 208-8179 |
| (507) 215-0474 |
| (507) 215-3749 |
| (507) 215-5032 |
| (507) 219-1048 |
| (507) 219-6986 |
| (507) 227-2308 |
| (507) 227-9485 |
| (507) 272-9693 |
| (507) 276-7883 |
| (507) 279-0216 |
| (507) 279-0480 |
| (507) 298-0968 |
| (507) 301-1089 |

| |
|---|
| (507) 301-1110 |
| (507) 301-1160 |
| (507) 301-2128 |
| (507) 317-5617 |
| (507) 344-6466 |
| (507) 381-0611 |
| (507) 381-9630 |
| (507) 383-3062 |
| (507) 437-5173 |
| (507) 437-5318 |
| (507) 437-5691 |
| (507) 437-5694 |
| (507) 437-5696 |
| (507) 437-5697 |
| (507) 437-5698 |
| (507) 438-0009 |
| (507) 438-1119 |
| (507) 440-4172 |
| (507) 440-4920 |
| (507) 440-6811 |
| (507) 460-8708 |
| (507) 589-5890 |
| (507) 774-9655 |
| (507) 794-8582 |
| (507) 822-8488 |
| (507) 822-8489 |
| (507) 840-0778 |
| (507) 841-0402 |
| (507) 841-0931 |
| (507) 841-4108 |
| (507) 848-6751 |
| (507) 993-0346 |
| (507) 993-2661 |
| (507) 993-3506 |
| (507) 993-5185 |
| (513) 218-5392 |
| (513) 226-1690 |
| (513) 235-3414 |
| (513) 260-4401 |
| (513) 502-8948 |
| (513) 672-4520 |
| (513) 884-5044 |
| (513) 979-5141 |
| (515) 203-1325 |
| (515) 204-7036 |
| (515) 210-1263 |
| (515) 210-6907 |

Phone Numbers for Text Searches

Pork Antitrust Litigation

| |
|---|
| (515) 223-2606 |
| (515) 229-4235 |
| (515) 230-9272 |
| (515) 231-2758 |
| (515) 231-7027 |
| (515) 238-7389 |
| (515) 240-0315 |
| (515) 240-7240 |
| (515) 250-4505 |
| (515) 284-4856 |
| (515) 298-1421 |
| (515) 320-1343 |
| (515) 321-5550 |
| (515) 330-5431 |
| (515) 333-1092 |
| (515) 360-6188 |
| (515) 418-2450 |
| (515) 450-2029 |
| (515) 451-6652 |
| (515) 473-1580 |
| (515) 480-0370 |
| (515) 491-5173 |
| (515) 509-1570 |
| (515) 520-3299 |
| (515) 520-9208 |
| (515) 554-6059 |
| (515) 556-8964 |
| (515) 577-0784 |
| (515) 669-5536 |
| (515) 681-3445 |
| (515) 681-6476 |
| (515) 681-7673 |
| (515) 689-0500 |
| (515) 689-0522 |
| (515) 689-2495 |
| (515) 689-3632 |
| (515) 689-6642 |
| (515) 720-0936 |
| (515) 720-3332 |
| (515) 778-7763 |
| (515) 795-3626 |
| (515) 817-6065 |
| (515) 864-1776 |
| (515) 864-7994 |
| (515) 864-8848 |
| (515) 890-2252 |
| (515) 979-5730 |

Phone Numbers for Text Searches

| |
|---|
| (515) 984-6046 |
| (515) 988-2244 |
| (515) 988-5686 |
| (520) 582-0317 |
| (520) 907-8170 |
| (540) 750-0399 |
| (540) 896-4043 |
| (559) 999-1514 |
| (561) 523-1796 |
| (563) 212-3475 |
| (563) 299-6112 |
| (563) 320-0369 |
| (563) 343-3545 |
| (563) 349-8722 |
| (563) 379-9100 |
| (563) 412-9208 |
| (563) 412-9256 |
| (563) 529-1581 |
| (563) 940-0600 |
| (573) 268-1422 |
| (573) 289-0088 |
| (580) 334-5750 |
| (580) 461-7151 |
| (580) 541-9166 |
| (580) 651-6299 |
| (580) 651-6507 |
| (580) 651-6725 |
| (580) 651-7141 |
| (580) 651-7566 |
| (585) 662-7131 |
| (602) 430-5105 |
| (605) 235-2692 |
| (605) 235-2812 |
| (605) 235-3081 |
| (605) 235-3325 |
| (605) 235-3649 |
| (605) 295-2406 |
| (605) 323-3514 |
| (605) 330-3144 |
| (605) 330-3300 |
| (605) 592-0373 |
| (605) 660-8944 |
| (608) 243-0776 |
| (608) 279-2160 |
| (608) 588-5405 |
| (608) 588-5407 |
| (608) 588-5409 |

Phone Numbers for Text Searches

| |
|---|
| (608) 588-5884 |
| (610) 405-4985 |
| (610) 504-9078 |
| (612) 202-3143 |
| (612) 747-0943 |
| (612) 805-4735 |
| (612) 963-8092 |
| (614) 783-9800 |
| (615) 476-0808 |
| (617) 560-9351 |
| (618) 301-2051 |
| (618) 301-2055 |
| (618) 322-5315 |
| (618) 335-0555 |
| (618) 335-0883 |
| (618) 335-1359 |
| (618) 335-1557 |
| (618) 335-1940 |
| (618) 335-2022 |
| (618) 335-8663 |
| (618) 335-8933 |
| (618) 401-3572 |
| (618) 525-8824 |
| (618) 541-2286 |
| (618) 791-3560 |
| (618) 792-8082 |
| (618) 792-8320 |
| (618) 830-1041 |
| (618) 830-2077 |
| (618) 830-5821 |
| (618) 830-7676 |
| (618) 830-8362 |
| (618) 844-7471 |
| (618) 844-7527 |
| (619) 980-9962 |
| (626) 905-5029 |
| (630) 437-0900 |
| (630) 453-1024 |
| (630) 544-7169 |
| (630) 835-9892 |
| (641) 229-6170 |
| (641) 229-6319 |
| (641) 330-3943 |
| (641) 364-7844 |
| (641) 394-6514 |
| (641) 485-5631 |
| (641) 485-9363 |

Phone Numbers for Text Searches

| |
|---|
| (641) 584-2777 |
| (641) 660-2469 |
| (641) 680-2041 |
| (641) 751-6714 |
| (641) 757-9300 |
| (660) 748-5602 |
| (704) 298-0936 |
| (704) 330-9171 |
| (704) 533-2088 |
| (704) 791-4858 |
| (712) 212-6127 |
| (712) 212-6731 |
| (712) 223-6480 |
| (712) 229-2102 |
| (712) 229-8906 |
| (712) 229-8913 |
| (712) 229-8915 |
| (712) 251-2272 |
| (712) 251-2678 |
| (712) 251-5243 |
| (712) 251-6112 |
| (712) 251-7650 |
| (712) 252-7650 |
| (712) 252-9075 |
| (712) 259-4587 |
| (712) 259-9054 |
| (712) 273-5745 |
| (712) 277-2632 |
| (712) 299-0891 |
| (712) 299-3426 |
| (712) 330-3678 |
| (712) 371-2150 |
| (712) 389-7860 |
| (712) 490-2506 |
| (712) 490-2809 |
| (712) 490-3502 |
| (712) 490-6201 |
| (712) 490-8076 |
| (712) 490-8148 |
| (712) 490-9209 |
| (712) 490-9777 |
| (712) 539-2994 |
| (712) 574-0092 |
| (712) 574-0284 |
| (712) 574-1230 |
| (712) 574-1994 |
| (712) 574-2069 |

Phone Numbers for Text Searches

| |
|---|
| (712) 574-4194 |
| (712) 574-8736 |
| (712) 749-5254 |
| (712) 752-8666 |
| (712) 830-7745 |
| (712) 898-1460 |
| (712) 898-7402 |
| (712) 898-8812 |
| (712) 899-6143 |
| (712) 899-6278 |
| (712) 899-8961 |
| (717) 413-8717 |
| (717) 554-0475 |
| (717) 725-2781 |
| (720) 579-4920 |
| (732) 673-8323 |
| (757) 274-6172 |
| (757) 275-4548 |
| (757) 284-8025 |
| (757) 323-5025 |
| (757) 332-0049 |
| (757) 334-2402 |
| (757) 345-1146 |
| (757) 355-2620 |
| (757) 357-1514 |
| (757) 365-1986 |
| (757) 371-1032 |
| (757) 371-9499 |
| (757) 375-1648 |
| (757) 375-2541 |
| (757) 375-5758 |
| (757) 377-0989 |
| (757) 377-3983 |
| (757) 377-7733 |
| (757) 377-8730 |
| (757) 503-6793 |
| (757) 510-3194 |
| (757) 535-7703 |
| (757) 570-2441 |
| (757) 585-6544 |
| (757) 593-3144 |
| (757) 618-9246 |
| (757) 620-1746 |
| (757) 620-9438 |
| (757) 620-9715 |
| (757) 642-0359 |
| (757) 687-9664 |

Phone Numbers for Text Searches

| |
|---|
| (757) 705-1989 |
| (757) 771-6418 |
| (757) 803-3620 |
| (757) 803-4521 |
| (757) 803-7452 |
| (757) 803-8518 |
| (757) 813-4899 |
| (757) 846-7077 |
| (757) 846-8197 |
| (757) 846-8435 |
| (757) 876-2475 |
| (757) 876-6606 |
| (763) 744-7011 |
| (765) 210-0658 |
| (765) 412-1450 |
| (765) 426-0029 |
| (765) 489-1387 |
| (765) 564-3680 |
| (765) 564-3844 |
| (765) 564-7269 |
| (765) 654-9722 |
| (785) 806-4732 |
| (800) 626-7424 |
| (800) 679-7979 |
| (803) 429-3759 |
| (804) 382-4697 |
| (804) 690-5430 |
| (804) 814-9353 |
| (806) 252-8156 |
| (812) 493-2892 |
| (814) 758-3115 |
| (815) 275-9018 |
| (815) 591-4010 |
| (815) 761-5368 |
| (815) 848-5158 |
| (816) 243-2737 |
| (816) 243-2738 |
| (816) 243-2739 |
| (816) 243-2782 |
| (816) 243-2783 |
| (816) 243-2786 |
| (816) 243-2793 |
| (816) 243-2803 |
| (816) 243-2804 |
| (816) 243-2808 |
| (816) 243-2809 |
| (816) 243-2822 |

Phone Numbers for Text Searches

| |
|---|
| (816) 243-2824 |
| (816) 243-2825 |
| (816) 243-2827 |
| (816) 243-2870 |
| (816) 243-2871 |
| (816) 243-2876 |
| (816) 243-2878 |
| (816) 243-3396 |
| (816) 243-4312 |
| (816) 243-4334 |
| (816) 243-4342 |
| (816) 243-4355 |
| (816) 260-0149 |
| (816) 260-0892 |
| (816) 260-1209 |
| (816) 260-1660 |
| (816) 260-5882 |
| (816) 260-9231 |
| (816) 261-4789 |
| (816) 261-5284 |
| (816) 266-0040 |
| (816) 273-8890 |
| (816) 288-3488 |
| (816) 289-5501 |
| (816) 304-1101 |
| (816) 344-8580 |
| (816) 396-2701 |
| (816) 396-2706 |
| (816) 396-2707 |
| (816) 396-2736 |
| (816) 396-2831 |
| (816) 396-2832 |
| (816) 396-2856 |
| (816) 401-7768 |
| (816) 500-4979 |
| (816) 500-6184 |
| (816) 500-9701 |
| (816) 507-1402 |
| (816) 507-5940 |
| (816) 509-0971 |
| (816) 509-5585 |
| (816) 509-5657 |
| (816) 510-3641 |
| (816) 510-6484 |
| (816) 510-8476 |
| (816) 510-9966 |
| (816) 516-5992 |

Phone Numbers for Text Searches

| |
|---|
| (816) 519-6826 |
| (816) 522-0827 |
| (816) 536-6046 |
| (816) 589-8824 |
| (816) 591-1240 |
| (816) 591-4010 |
| (816) 591-8443 |
| (816) 604-7088 |
| (816) 665-4308 |
| (816) 678-5579 |
| (816) 728-8640 |
| (816) 728-8659 |
| (816) 786-0629 |
| (816) 803-1935 |
| (816) 805-0156 |
| (816) 806-3326 |
| (816) 806-3354 |
| (816) 807-7303 |
| (816) 835-7542 |
| (816) 868-3348 |
| (816) 868-4139 |
| (816) 868-7978 |
| (816) 872-0469 |
| (816) 876-1086 |
| (847) 421-6772 |
| (847) 651-9870 |
| (847) 757-2842 |
| (847) 772-5313 |
| (850) 699-3950 |
| (860) 208-3342 |
| (866) 267-4412 |
| (888) 634-6740 |
| (901) 647-8453 |
| (901) 761-8420 |
| (901) 761-8465 |
| (910) 289-9155 |
| (910) 290-1511 |
| (910) 290-5531 |
| (910) 293-3434 |
| (910) 293-5200 |
| (910) 299-3006 |
| (910) 301-0072 |
| (910) 372-8060 |
| (910) 379-7555 |
| (910) 385-6229 |
| (910) 385-6913 |
| (910) 470-1042 |

Phone Numbers for Text Searches

| |
|---|
| (910) 506-9411 |
| (910) 592-2104 |
| (910) 596-8295 |
| (910) 862-5246 |
| (910) 862-5252 |
| (912) 665-8155 |
| (913) 205-4234 |
| (913) 205-7839 |
| (913) 219-1044 |
| (913) 229-2335 |
| (913) 261-2614 |
| (913) 302-0361 |
| (913) 302-1480 |
| (913) 302-1550 |
| (913) 302-2484 |
| (913) 302-3057 |
| (913) 302-4229 |
| (913) 302-5890 |
| (913) 302-9638 |
| (913) 302-9880 |
| (913) 302-9881 |
| (913) 302-9882 |
| (913) 302-9883 |
| (913) 302-9884 |
| (913) 302-9885 |
| (913) 314-1384 |
| (913) 314-7379 |
| (913) 314-7501 |
| (913) 314-8597 |
| (913) 314-9824 |
| (913) 314-9907 |
| (913) 394-9907 |
| (913) 439-9858 |
| (913) 449-8764 |
| (913) 558-2575 |
| (913) 558-6175 |
| (913) 558-8141 |
| (913) 593-3352 |
| (913) 593-6455 |
| (913) 660-3463 |
| (913) 687-2897 |
| (913) 708-2194 |
| (913) 709-8881 |
| (913) 754-6244 |
| (913) 787-2044 |
| (913) 851-3269 |
| (913) 888-5103 |

Phone Numbers for Text Searches

| |
|---|
| (913) 957-0163 |
| (913) 957-6206 |
| (913) 972-2673 |
| (913) 991-0290 |
| (917) 297-3360 |
| (917) 692-6985 |
| (918) 964-9729 |
| (920) 698-0594 |
| (928) 358-8372 |
| (928) 386-0544 |
| (941) 400-1265 |
| (941) 450-5905 |
| (949) 794-2241 |
| (952) 292-7759 |
| (970) 223-1237 |
| (970) 237-1273 |
| (970) 260-5920 |
| (970) 260-5960 |
| (970) 301-6181 |
| (970) 302-5020 |
| (970) 302-6194 |
| (970) 302-8191 |
| (970) 330-7712 |
| (970) 371-2754 |
| (970) 373-6261 |
| (970) 373-8024 |
| (970) 381-4430 |
| (970) 506-7595 |
| (970) 506-7622 |
| (970) 506-7664 |
| (970) 506-7904 |
| (970) 506-8003 |
| (970) 506-8008 |
| (970) 506-8235 |
| (970) 584-9659 |
| (970) 590-5763 |
| (970) 590-5886 |
| (973) 873-4935 |
| (973) 938-9256 |
| (262) 587-2410 |
| (262) 587-2618 |
| (402) 314-0669 |
| (910) 267-1870 |
| (910) 269-2918 |
| (910) 282-0605 |
| (910) 282-6605 |
| (910) 285-2778 |

Phone Numbers for Text Searches

| |
|---|
| (910) 285-6865 |
| (910) 289-2111 |
| (910) 289-2114 |
| (910) 289-2263 |
| (910) 289-2414 |
| (910) 289-2918 |
| (910) 289-4211 |
| (910) 289-4214 |
| (910) 289-4476 |
| (910) 289-4493 |
| (910) 293-2939 |
| (910) 293-3089 |
| (910) 293-3139 |
| (910) 293-3285 |
| (910) 293-4226 |
| (910) 293-4344 |
| (910) 293-4737 |
| (910) 293-9352 |
| (910) 296-0107 |
| (910) 296-1120 |
| (910) 296-1437 |
| (910) 296-1524 |
| (910) 296-1800 |
| (910) 296-1823 |
| (910) 296-1860 |
| (910)265-2778 |
| (919) 865-3059 |
| (940) 267-1870 |
| (940) 843-3487 |

| Search Terms for Text Messages |
|---|
| Smithfield OR "Farmland" or "MurphyBrown" or "Murphy Brown" or "John Morrell" or "Farmer John" or farmerjohn |
| *smithfield.com OR *smithfieldfoods.com OR *farmland.com OR *murphybrownllc.com OR *sf-fl.com OR *sf.fl.com OR *jmfg.com OR *farmerjohn.com |
| Copa OR Dubbert OR (Ron* w/2 Knowles) OR ((robert or bo) w/2 manly) OR Phalen OR (Larry w/2 Pope) OR (Scott w/2 Saunders) OR (Gregg w/2 Schmidt) OR (Dhamu or Thamodaran) OR Barger OR Bogaard OR Dohlman OR (Su* w/2 Dow) OR (Vic* w/2 Flemming) OR Kaster OR Lombardo OR ((Robert or Bob*) w/2 Moore) OR Sabin OR Szaloky OR Luckman OR (Ken* w/2 Sullivan) OR (Keller w/2 Watts) OR ((joe or joseph) w/2 Weber) OR luter OR Schellpeper OR Nunziata OR Sebring OR Dokken OR (Arn* w/2 Silver) OR Mallahan OR (Jerry w/2 Lamb) OR Kapella OR (john w/2 french) or (Darden w/2 Hurt) or (Jacob w/2 Einberger) or ((Benjamin or Benjie or Ben) w/2 Oates) or  (Brian w/2 Gordon) |
| timshellpeper* OR toschellpeper* OR ebarger* OR ddubbert* OR srphalen* OR joeweber* OR markcopa* OR dandubbert* OR ronknowles* OR robertmanly* OR shellyphalen* OR clarrypope* OR larrypope* OR scottsaunders* OR greggschmidt* OR dhamuthamodaran* OR elizabethbarger*  OR robertbogaard*OR jessedohlman* OR susandow* OR victorflemming* OR collettekaster* OR keiralombardo* OR robertmoore*  OR dansabin* OR joeszaloky* OR jeffluckman* OR kennethsullivan* OR kellerwatts* OR josephluter* OR glennnunziata* OR josephsebring*  OR russelldokken* OR arnoldsilver* OR karolinamallahan* OR jerrylamb* OR dankapella* OR jfrench* or dhurt* or jeinberger* or boates* or bgordon* |
| Tyson or TSN or TYSN |
| *tyson.com |
| (Don* w/2 Tyson) OR John* w/2 Tyson) OR ((Thomas or Tom) w/2 Hayes) OR (Don* w/2 Smith) OR (Rich* w/2 Bond) OR (Noel w/2 White) OR Stouffer OR (Todd w/2 Neff) OR (Shane w/2 Miller) OR Krehbiel OR Solsma OR ((James or Jim) w/2 Schmitz) OR (Steve* w/2 Billups) OR (Deborah w/2 McConnell) OR Tollett OR Lochner OR (Leah w/2 Anders*) OR Brester OR Machan OR (Jeremy w/2 Dickinson) OR (John* w/2 Thomas) OR Kathol OR Wisener OR Holbrook OR Leatherby OR (Ray* w/2 McGaugh) OR Sheneman OR Hollingsworth OR Gingerich OR Glendinning OR Johnk OR Roel or Andriessen or (melissa w/2 fick) or (donnie w/2 king) or Heffernan |
| deb.mcconnell* OR noel.white* OR todd.neff* OR shane.miller* OR jason.brester* OR gary.machan* OR john.c.thomas* OR don.tyson* OR john.h.tyson* OR thomas.hayes* OR donnie.smith* OR richard.bond* OR stephen.stouffer* OR jay.krehbiel* OR jason.solsma* OR james.schmitz* OR steve.billups* OR leland.tollett* OR james.lochner* OR leah.andersen* OR jeremy.dickinson* OR jon.kathol* OR ruth.wisener* OR ruth.a.wisener* OR jerry.holbrook* OR dennis.leatherby* OR ray.mcgaugh* OR gary.sheneman* OR raymond.hollingsworth* OR mark.gingerich* OR steward.glendinning* OR lanny.johnk* OR roel.andriessen* or melissa.fick* or donnie.king* or daniel.heffernan* |
| Triumph or seaboardtriumphfoods |

| |
|---|
| *triumphfoods.com OR *seaboardtriumphfoods.com OR *stfmail.com |
| (Mark w/2 Campbell) OR Papenberg OR (Matt* w/2 England) OR Wedeking OR Lehenbauer OR ((Tom* or Thomas) w/2 French) OR (Ken* w/2 Grannas) OR Diebold OR ((Rick or Rich*) w/2 Hoffman) OR Kleiniein OR Larimer OR (Pat* w/2 Lilly) OR (Dan* w/2 Marlow) OR Schmerbach OR McClain OR Southwell OR (Clay w/2 Swan) OR Conaway OR Reeder OR (Misty w/2 Taylor) |
| kgrannas* OR mengland* OR alarimer* OR mcampbell* OR fpapenberg* OR kwedeking* OR jlehenbauer* OR tfrench* OR jdiebold* OR rhoffman* OR jkleiniein* OR plilly* OR dmarlow* OR dschmerbach* OR msouthwell* OR cswan* OR kconaway* OR jreeder* OR mtaylor* |
| Seaboard or "sea board" or SBF or seaboardtriumphfoods |
| *seaboardfoods.com OR *seaboardtriumphfoods.com OR *stfmail.com |
| Blumhardt OR Brenneman OR (Mel w/2 Davis) OR Dye OR Getzel OR Ginther OR Hast OR (Kevin w/2 Henn) or (Ter* w/ Holton) OR Hunderdosse OR (Gary w/2 Lewis) OR (Duke w/2 Sand) OR (Kevin w/2 Smith) OR (Josh* w/2 Stewart) OR Summerlin OR Taphorm OR (Joan w/2 Contreras) OR Lecluyse OR (Lesa w/2 Tuley) OR Brandi w/2 McClure |
| stephen_summerlin* OR damon_ginther* OR rod_brenneman* OR terry_holton* OR marty_hast* OR thomas_blumhardt* OR mel_davis* OR tom_dye* OR bret_getzel* OR kevin_henn* OR aaron_hunderdosse* OR gary_lewis* OR duke_sand* OR kevin_smith* OR josh_stewart* OR brian_taphorn* OR joan_contreras* OR anna_lecluyse* OR lesa_tuley* OR brandi.mcclure* or brandi_mcclure* |
| "Agri Stats" or agristat* or agstat* or "A-stat" OR "agri-stats" OR "agri-metrix" or agrimetrix OR "agri metrix" OR "agri tech" OR "AG-stats" OR agsts OR astats OR agst OR agrimetric* OR "agri metric" OR "agri metrics" OR "agri-metrics" "Express Market" OR "Express Markets" OR "EMI" OR ExpressMarket* OR  paragon* OR *emianalytics.com |
| *agristats.com OR *expressmarketsinc.com OR *emianalytics.com |
| (Brian w/2 Synder) OR Grismore OR Scholer OR Bilbrey OR (Stac* w/2 Edwards) OR (Stac* w/2 Brooks) OR Dess OR Agne OR (Josh* w/2 Edwards) OR Feitz OR (Steve* w/2 Meyer) OR Stegall OR Neff OR (Blair w/2 Synder) OR Matt w/2 McNeal |
| dgrismore* OR sedwards* OR bhsnyder* OR escholer* OR gbilbrey* OR gdess* OR cagne* OR jedwards* OR jfeitz* OR smeyer* OR cstegall* OR tneff* OR bsnyder* OR sbrooks* OR mmcneal* |
| Hormel or PFFJ* |
| *hormel.com |
| Bogle OR Bollum OR Chenoweth OR Hoefflin OR Peil OR (Jose w/2 Rojas) OR Temperley OR Adwell OR Annis OR (Steve* w/2 Binder) OR ((Tom or Thomas) w/2 Day) OR Ettinger or Farnsworth OR Feragen OR (Jana w/2 Haynes) OR Hyland or Lieberum OR ((Jim OR James) w/2 Sheehan) OR ((William or Bill) w/2 Snyder) OR Coffey OR Fiala OR Leitch OR Meiergerg OR Snee OR Gyarmarty OR (Neal w/2 Hull) OR ((Jennifer or Jenny) w/2 Johnson) OR LaVallie OR Steinbach OR Venenga OR (Rebecca w/2 Roddy) |
| jnsheehan* OR cdbollum* OR paul_l_peil* OR RMRoddy* |
| Clemens or CFG or CVF or "country view family farms" or Hatfield or cvff or hqm |

| |
|---|
| *cvff.com OR *clemensfoodgroup.com OR *clemensdevelopment.com OR *clemensfamilycorp.com OR *cvff.com OR *hqm.com |
| (Doug* w/2 Clemens) OR Edsill OR (Eric w/2 Patton) OR Rennells OR ((Rob* OR Bob) w/ Ruth) OR Groff OR Masotta OR Schmberbeck OR Budnick OR (Phil* w/2 Clemens) OR ((Ronald or Ron) w/2 Freed) or ((Thomas or Tom) w/2 Clemens) |
| dgroff* or dclemens* OR cedsill* or epatton* OR jrennells* OR rruth* OR jmasotta* OR jschmerbeck* OR dbudnick* OR pclemens* OR ron@clemens* or tom@hqm* |
| JBS* or Cargill |
| *jbssa.com OR *JBSunited.com OR *cargill.com |
| (wesley w/2 batista) OR (joesley w/2 batista) OR (Don* w/2 Jackson) OR Nogueira OR Bruett OR Denilson OR (Garry w/2 Albright) OR (Kevin w/2 Arnold) OR (Ed* w/2 Bick) OR (Jerry w/2 Bick) OR (Jerry w/2 Brooks ) OR Dooley OR Goulding OR (Tim* w/2 Hiller) OR ((Bob OR Robert) w/2 Krebs) OR (Kristina w/2 Lambert) OR Lorenger OR (Matt* w/2 Turner) OR (Eric w/2 Wallin) OR Andersland OR Fosbery OR Huebner OR (Rob* w/2 Kearns) OR Kupfer OR (Ron* w/2 Ott) OR (Lisa w/2 Peters) OR (George w/2 Price) OR ((Mike OR Michael) w/2 Swanson) OR (Joe* w/2 Newhart) OR ((Mike or Michael) w/2 McCarthy) OR (Sara w/2 Armstrong) OR (Beth w/2 Foss) OR (Jeannie w/2 Foster) OR (Jeff* w/2 Greene) OR (Tim* w/2 Uber) |
| kevin.arnold* OR wesley.batista* OR joesley.batista* OR don.jackson* OR andre.nogueira* OR cameron.bruett* OR denilson.molina* OR garry.albright* OR ed.bick* OR jerry.brooks* OR martin.dooley* OR roger.goulding* OR tim.hiller* OR bob.krebs* OR kristina.lambert* OR brad.lorenger* OR matthew.turner* OR eric.wallin* OR ryan.andersland* OR jamie.fosbery* OR pat.huebner* OR robbie.kearns* OR joh.kupfer* OR ron.ott* OR lisa.peters* OR george.price* OR michael.swanson* OR joe.newhart* OR mike.mccarthy* OR sara.armstrong* OR beth.foss* OR jeannie.foster* OR jeff.greene* OR tim.uber* |
| IPC or "Indiana Packers" |
| *inpac.com OR *indianapackerscorp.com |
| (Gary w/3 Jacobson) OR (Russ* w/3 Yearwood) OR (Dav* w/3 Murray) OR (Galen w/3 Stiverson) OR (Mark w/3 McCain) OR  ((James or Jim) w/3 Allen) |
| Gary.Jacobson OR Russell.Yearwood OR David.Murray OR Galen.Stiverson OR Mark.McCain OR James.Allen |
| (agro w/2 bauer) OR (aspen w/2 pork) OR (cottonwood w/2 river) OR (eichelberger w/2 farm*) OR (IC w/2 pork) OR (kronseder w/2 farm*) OR (nfp w/2 west) OR (oak w/2 research) OR (southern w/2 minnesota w/2 farm*) OR hanor OR trioak OR (upper w/2 midwest w/2 swine) OR (allied w/2 producer*) OR (christensen w/2 farm*) OR (crown w/2 prairie) OR (ewington w/2 farm*) OR (new w/2 fashion w/2 pork) OR (roberts w/2 ranch) OR ((daily's OR dailys) w/2 premium) |
| *eichelbergerfarms@gmail.com OR *eichfarms.com OR *eichelbergerfarms.com OR *hanorusa.com OR *hanorcompany.com OR *trioak.com OR *alliedproducers.com OR *christensenfarms.com OR *nfpinc.com OR *dailysmeats.com |

Text Message Search Terms

(allied w/2 producer*) OR christensen OR eichelberger OR hanor OR "Iowa Select" OR *iowaselect OR *jkerns OR "Joe Kerns" OR (maple w/2 leaf) OR (pork w/2 king w/2 packing) OR (Premium w/2 Iowa w/2 Pork) OR (sara w/2 lee) OR (swift w/2 pork) OR pigsrus OR Maschhoffs OR themaschhoffs OR trioak OR (wakefield w/2 pork)

*christensenfarms.com OR *farmtel.net OR *hanorusa.com OR *iowaselect.com OR *mapleleaf.ca OR *mapleleaf.com OR *porkkingpacking.com OR *premiumiowapork.com OR *saralee.com OR *jbssa.com OR *pigsrus.net OR *trioak.com OR *wakefieldpork.com

"National Pork Producers Council" OR (neil w/2 dierks) OR NPPC OR *@nppc.org OR "PORK Academy" OR "National Pork" OR "Fall Legislative Action Conference" OR "National Pork Industry Forum" OR "Spring Legislative Conference" OR "World Pork Expo" OR PORKPAC OR LEADR OR "Pork Leadership Institute" OR "Food Marketplace Inc." OR (Leslie w/2 sarasin) OR "Food Marketing Institute" OR *fmi.org OR "21st Century Strategic Forums" OR *porkconference.com OR *21stforums.com OR "National Pork Industry Conference" OR NPIC OR "Graham Strategic Partners" OR "Larry Graham" OR "Lawrence Graham" OR "National Pork Board" OR (dav* w/2 newman) OR (gene w/2 noem) OR *@pork.org OR "21st Century Pork Club" OR "Pork Checkoff" OR "North American Meat Institute" OR (pat* w/2 boyle) OR jpboyle* OR (barry w/2 carpenter) OR bcarpenter* OR *meatami OR (cristl w/2 (mccarthy or cmccarthy*)) OR NAMI OR *@meatinstitute.org OR "American Meat Institute" OR NAMI OR AMI OR (animal w/2 care w/2 handling w/2 conference) OR "Annual Meat Conference"
(International w/2 Meat /2 Poultry w/2 Seafood w/2 Convention w/2 Expo) OR "Meat Industry Management Conference" OR "Meat Industry Summit" OR "Outlook and Industry Management Conference*" OR "Meat Institute" or meatinstitute or *meatinstitute.org OR (julie w/2 potts) OR "Worldwide Food Expo" OR IFDA OR "Center of the Plate Training" OR "Environmental Conference" OR "Fall Forum" OR IPPE OR "Meat Pavilion" OR "Meat Industry Food Safety Conference" OR "International Meat Secretariat" OR *meat-ims.org OR "World Meat Congress" OR IMS OR "United States Meat Export Federation" OR "U.S. Meat Export Federation" OR USMEF OR *@usmef.org OR (phil* w/2 (seng OR pseng*)) OR *usmef.org OR jhaggard* OR "World Meat Congress" OR "American Feed Industry Assoc*" OR ((constance or connie) w/2 cullman) OR AFIA OR *@afia.org OR "International Production and Processing Expo" OR IPPE

Text Message Search Terms

(Justin w/2 Sherrard)  OR (sawyer w/2 (will* OR WR OR W.R.)) OR (don* w/2 close) or Cordingley OR (Chenjun w/2 Pan) OR (Ben w/2 santoso) OR (Christine w/2 McCracken) OR or (Weststrate or westrate or Adriaan)  or (juan 2/ manual w/2 fernandez) OR ((jm or j.m.) w/2 fernandez) OR CoBank* OR tamen* OR lsahling* OR *cobank.com OR BMO*  OR bmocm or *bmo.com or zaslow or kzaslow OR (ken* /2 zaslow) OR Compeer*  OR *kerns-associates.com OR (Kerns w/2 Assoc*) OR (steve w/2 meyer) OR (Meredith* w/2 Corp*) OR (Jefferies w/2 LLC) OR Jagdale* OR Akshay* OR (Stephens w/2 Inc)  OR bienvenu* or *stephens.com or faslam* Farha or Aslam OR "Goldman Sachs"  OR GoldmanSachs or *gs.com OR "JP Morgan*"  OR  JPMorgan* or JPM or "Basic Materials Conference" or *jpmorganchase.com or *jpmchase.com or *jpmorgan or (Ken* w/2 Goldman) or *jpmresearchmail.com or jpmchase or (Hinsdale w/2 Palmer) or  (alan w/2 alanis) OR "Merrill Lynch" OR ml.com OR (Bank w/2 America) OR bankofamerica or BOA or "Global Agriculture Conference" or *bankofamerica.com or *baml.com OR "b of a" OR bofa OR boa OR "bottom line" OR agstar or (Graham w/2 Dee) OR (Aaron w/2 Knewston) OR (Craig w/2 Nelson) OR (Mark w/2 Greenwood) OR "Deutsche Bank*" OR db.com or (Christina w/2 McGlone) OR (Vertical w/2 Group) OR (Heather w/2 Jones) OR hljones* or vertgrp* OR *bbandtcm.com or bbtcapitalmarkets.com or "BB&T Capital" OR "Morgan Stanley" or morganstanley* or Colantuoni* OR "Credit Suisse" or ((bob OR Robert) w/2 Moskow) OR "Cleveland Research" or  OR "cleveland-research" or cmccracken* or (Christine w/2 McCracken) OR "pork outlook" OR "outlook conference" or "pork conference" OR (Nielsen OR IRI OR iriworldwide OR nielsen.com) AND (supply* OR Inventor* OR Pric*) OR "Urner Barry" OR UrnerBarry* or Urner* or UB OR (BAIN  OR  Mckinsey  OR  Deloitte  OR  "hudson river group"  OR  "charles river") AND (pork or swine or hog* or sow*)

---

pork OR hog* OR swine OR porcine OR pig* OR sow OR shoat* OR boar* OR gilt OR bacon* OR sausage OR ham OR shoulder OR loin* OR backloin* OR tenderloin* OR chop* OR hock* OR picnics OR butt OR butts OR rib OR ribs OR backrib* OR bellies OR primal* OR "sub-primal" OR subprimal OR brisket OR jowl* OR lard OR herd OR drift OR drove OR litter* OR passel OR sounder OR singular

---

pric* OR demand OR suppl* OR head OR kill* OR cut* OR tight* OR capacity OR market* OR industry OR compet* OR slaughter OR quantity OR courage* OR disciplin* OR coordinat* OR produc* OR inventor* OR cost* OR rational* OR irrational* OR benchmark OR index OR indic* OR share OR monitor* OR manual OR lead* OR intelligence OR deanonym* OR anonym* OR "de-anonymize" OR "de-anonymization"

---

constrain* OR restrain* OR increas* OR expand* OR grow* OR grew* OR spik* OR climb* OR increment* OR fluctuat* OR decreas* OR shrink* OR reduc* OR restrict* OR reced* OR recession* OR slow* OR drop* OR dips* OR fall* OR chang* OR adjust* OR modif* OR add* OR subtract* OR amend* OR revis* OR rework* OR refin* OR alter OR chang*  OR  adjust*  OR  modif* OR decrease* OR lower* OR raise*

---

export* OR "relief valve" OR dump OR foreign OR territor* OR international OR import*

| |
|---|
| Civil investigative demand OR CID or "Department of Justice" OR USDOJ OR DOJ OR "Federal Trade Commission" OR FTC OR "the feds" OR *doj.gov OR "Securities Exchange Commission" OR *sec.gov OR antitrust OR "anti-trust" OR "anti trust" OR collu* OR cartel OR "anticartel" OR "Sherman Act" OR monop* OR "anti compet*" OR conspir* OR "unfair competition" |
| do not forward or "don't forward" or "dont forward" or "do not circulate" or "don't circulate" or "dont circulate" or "do not distribute" or "don't distribute" or "dont distribute" or "destroy after reading" or "read and delete" or "delete after reading" or "do not save" or "do not share" or "don't share" or "dont share" or "handle with care" or discretion or evidence or "paper trail" or papertrail or "call me" or "not over email" or "not over email" or "against the law" or laws or illegal or "not legal" or "in person" or "fill you in" or "keep to yourself or "keep to your self" or "keep confidential" or "downlow" or "down low" or "down-low" or "close to the vest" or "do not tell" or "don't tell" or "dont tell" or CYA or "cover your ass" or "go to jail" or stripes or sensitive or confidential or paranoi* or "someone is talking" or "wrong message" or "wrong signal" or rumor or rumour or "our friend" or "our friends" or "your friend" or "your friends" or |
| tour or swap OR "co pack*" OR "co-pack*" OR copack* OR due-diligence OR "M&A" OR "spin off " OR "spun off" OR "joint venture" OR "joint ventures" |
| "pass through" "pass-through" or "pass thru" or "pass along" or "pass-along" or "pass on" or distribut* OR  channel*  OR  ship* OR truck* OR freight* OR retail* OR wholesale* OR MSRP OR FS OR foodserv! OR "food serv*" OR supermarket* or "super market" or "super markets" or grocery or customer* or consumer* |
| warehous* |
| "21st century club" |
| "21st century group" |
| "apple cart" |
| "back off" |
| "bacon report" |
| "Big Stone Marketing" |
| "blue book" |
| "cost plus" |
| "cut out" |
| "difficult times" |
| disappearance |
| "Econ 101" |
| "green book" |
| "hold the line" |
| "Joe Christiana Foods" |
| "john gross" |
| "lifts all boats" |
| "madison project" |
| "mandatory price report" |
| "national average" |
| "new entry" |
| "operations planning" |
| "our fair share" |

Text Message Search Terms

| |
|---|
| "our part" |
| "our share" |
| "parts of whole" |
| "pay grade" |
| "prop up" |
| "pull back" |
| "quid pro quo" |
| "red book" |
| "reliable source" |
| "rising tide" |
| "rock da boat" |
| "rock the boat" |
| "senior mgmt" |
| "senior mgt" |
| "sold out" |
| "Stein Incident" |
| "target list" |
| "top 25" |
| "under pressure" |
| "USDA mandatory" |
| "weather the storm" |
| "weathering the storm" |
| "worst performing" |
| "yellow book" |
| "Olean Wholesale" |
| "operating efficiency" |
| "powers that be" |
| "push back" |
| "rough shape" |
| "Senior management" |
| "swine sales analysis" |
| *agstar.com |
| *bigstonemarketing.com |
| *ferraro.com |
| *ferrarofoods.com |
| *ferrarofoods.net |
| *jgrossco.com |
| *mcvean.com |
| *meatfyi.com |
| *metafarms.com |
| *oleanwholesale.com |
| *reicksview.com |
| acquir* |
| action |
| adjust* |
| advantage |
| advertis* |

| |
|---|
| agreement |
| alternativ* |
| analy* |
| announcement* |
| approv* |
| asset* |
| authorit* |
| availab* |
| balanc* |
| barrier* |
| behav* |
| bid* |
| bottom |
| bought* |
| brand* |
| "break even" |
| breakeven |
| budget* |
| buil* |
| bulletin* |
| buy* |
| capacit* |
| challenge* |
| charg* |
| cheap |
| collectively |
| command* |
| complain* |
| complex |
| component |
| consolid* |
| construction |
| contract* |
| control* |
| cost-plus |
| credit* |
| crosswalk |
| curv* |
| customer* |
| cut-out |
| cutout |
| cycle |
| data |
| de-pop* |
| decision |
| delay |
| depop* |

Text Message Search Terms

| direct* |
|---|
| disadvantage |
| discount* |
| Divest* |
| drive* |
| econom* |
| efficien* |
| elasticit* |
| elimin* |
| entrant* |
| ES&OP |
| ESOP |
| estimate* |
| excess |
| expand* |
| expansion |
| expensive |
| facilit* |
| farm* |
| ferraro* |
| financ* |
| fixed |
| flat |
| floor |
| focus |
| follow* |
| forecast* |
| formula* |
| friend* |
| future* |
| graph* |
| grow* |
| guid* |
| guideline* |
| harvest* |
| hedg* |
| idl* |
| imbalance* |
| inelastic* |
| internal |
| jgrossco |
| label* |
| landscape |
| letter* |
| liquidat* |
| loss* |
| mafia |

Text Message Search Terms

| |
|---|
| manipulat* |
| mapleview* |
| margin* |
| "mark up" |
| mark-up |
| mark.greenwood* |
| markup |
| match* |
| matrix |
| mcvean |
| meat |
| Metafarms |
| method* |
| metric |
| metrix |
| mill* |
| mothball* |
| offset |
| operating |
| operation* |
| opportunit* |
| order* |
| outlook* |
| P&L |
| participant* |
| paygrade |
| plan |
| plant* |
| PnL |
| polic* |
| practice* |
| priorit* |
| problem* |
| procedur* |
| process* |
| profit* |
| program* |
| project* |
| protein |
| protocol* |
| pull-back |
| pullback |
| purchas* |
| pushback |
| quot* |
| rank* |
| ratchet |

| |
|---|
| react* |
| rebate* |
| reduc* |
| reference* |
| region* |
| reicksview |
| report* |
| request* |
| resale* |
| resell* |
| respect* |
| restrain* |
| retire |
| return* |
| revenue* |
| review |
| Robert.A.Brown@cox.net |
| RTC |
| rumor* |
| S&OP |
| sale* |
| Sell* |
| sensitiv* |
| shape |
| share |
| sheet* |
| shelf |
| shift |
| shut* |
| situation |
| smeyer* |
| sold-out |
| soldout |
| SOP |
| standard* |
| strategy |
| strength |
| studies |
| study |
| substitut* |
| surcharg* |
| surcharge* |
| surplus |
| sustain* |
| swap* |
| target* |
| term* |

Text Message Search Terms

| |
|---|
| territor* |
| together |
| track* |
| trade* |
| trading |
| transfer* |
| tray |
| trend* |
| turbulen* |
| upcharg* |
| utlilization |
| variable |
| varian* |
| volume* |
| weight |
| whisper* |
| withdraw* |
| yield* |
| "brown book" |
| "brown profit book" |

Text Message Search Terms

# EXHIBIT 17

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | ) | |
|---|---|---|
| IN RE PORK ANTITRUST | ) | Civil Action No. 0:18-CV-01776-JRT-HB |
| LITIGATION | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Corwyn Bollum, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑       *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401 | Date and Time: May 27, 2021, 9:00 a.m. |
|---|---|

☐       *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   April 27, 2021

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | s/ Brian D. Clark<br>_____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐       I served the subpoena by delivering a copy to the named person as follows:

☐       I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered
to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                                                              *signature*

                                                            _____
                                                                                    *Server'sPrinted name and title*

                                                            _____
                                                                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i)  is a party or a party's officer; or
  (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i)  fails to allow a reasonable time to comply;
  (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv)  subjects a person to undue burden.
 (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i)  expressly make the claim; and
  (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO CORWYN BOLLUM

Pursuant to the foregoing subpoena *duces tecum*, Corwyn Bollum is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

558654.2

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST NO. 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Paul Peil, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place: Lockridge Grindal Nauen P.L.L.P. 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 | Date and Time: May 27 2021, 9:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  April 27, 2021

|  | |
|---|---|
| *CLERK OF COURT* | OR |
| | |
| _____ | s/ Brian D. Clark |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐    I served the subpoena by delivering a copy to the named person as follows:

☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server's Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO PAUL PEIL

Pursuant to the foregoing subpoena *duces tecum*, Paul Peil is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

   a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

   b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

558655.3

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Donald Temperley, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P. 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 | Date and Time: May 31, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 3, 2021

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | |
| | | |
| _____ | s/ Brian D. Clark _____ | |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* | |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)*_____.

☐        I served the subpoena by delivering a copy to the named person as follows: _____

☐        I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____                _____
                                                                                            *signature*


                                                             _____
                                                                                      *Server'sPrinted name and title*


                                                             _____
                                                                                            *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A)   within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B)   within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i)   is a party or a party's officer; or
      (ii)   is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   (A)   production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B)   inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   (A)   *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B)   *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i)   At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii)   These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   (A)   *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i)   fails to allow a reasonable time to comply;
      (ii)   requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv)   subjects a person to undue burden.
   (B)   *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i)   disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii)   disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C)   *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i)   shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii)   ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A)   *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B)   *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C)   *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D)   *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i)   expressly make the claim; and
      (ii)   describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**PLAINTIFFS' REQUESTS FOR PRODUCTION
TO DONALD TEMPERLEY**

Pursuant to the foregoing subpoena *duces tecum*, Donald Temperley is required to produce, by the date stated on the subpoena, the documents requested herein.

**INSTRUCTIONS**

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

**DEFINITIONS**

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

        a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

        b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.    "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.    "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.    "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.    All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Jessica Chenoweth, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401 | Date and Time: May 31, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 3, 2021

|                        *CLERK OF COURT*                        | OR |  |
|---|---|---|
|  |  | s/ Brian D. Clark |
| *Signature of Clerk or Deputy Clerk* |  | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

---

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐     I served the subpoena by delivering a copy to the named person as follows:

☐     I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                              *signature*


                                               _____
                                                              *Server'sPrinted name and title*


                                               _____
                                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A)   within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B)   within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i)   is a party or a party's officer; or
      (ii)   is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   (A)   production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B)   inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   (A)   *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B)   *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i)   At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii)   These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   (A)   *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i)   fails to allow a reasonable time to comply;
      (ii)   requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv)   subjects a person to undue burden.
   (B)   *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C)   *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i)   shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii)   ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A)   *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B)   *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C)   *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D)   *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i)   expressly make the claim; and
      (ii)   describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO JESSICA CHENOWETH

Pursuant to the foregoing subpoena *duces tecum*, Jessica Chenoweth is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

        a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

        b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.    "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.     "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.     "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.     "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.     "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.     "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.     "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Lance Hoefflin, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P. 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 | Date and Time: May 31, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 3, 2021

|  CLERK OF COURT | |
|---|---|
| | OR |
| _____ | s/ Brian D. Clark |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

    ☐    I served the subpoena by delivering a copy to the named person as follows:

    ☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server'sPrinted name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i)  is a party or a party's officer; or
  (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i)  fails to allow a reasonable time to comply;
  (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv)  subjects a person to undue burden.
 (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i)  expressly make the claim; and
  (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO LANCE HOEFFLIN

Pursuant to the foregoing subpoena *duces tecum*, Lance Hoefflin is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced. Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached). However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.       "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.       "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.       "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.     "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.  "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.  "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.  "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.  "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.  "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.  "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the
### District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Paul Bogle, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>          100 Washington Avenue South, Suite 2200<br>          Minneapolis, MN 55401 | Date and Time: May 31, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 3, 2021

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
|  | s/ Brian D. Clark |
| _____<br>*Signature of Clerk or Deputy Clerk* | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐    I served the subpoena by delivering a copy to the named person as follows:

☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server's Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A)   within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B)   within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i)   is a party or a party's officer; or
      (ii)   is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
   (A)   production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B)   inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   *(A)   Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   *(B)   Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i)   At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii)   These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i)   fails to allow a reasonable time to comply;
      (ii)   requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv)   subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i)   shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii)   ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   *(A)   Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   *(B)   Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   *(C)   Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   *(D)   Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   (i)   expressly make the claim; and
   (ii)   describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**PLAINTIFFS' REQUESTS FOR PRODUCTION
TO PAUL BOGLE**

Pursuant to the foregoing subpoena *duces tecum*, Paul Bogle is required to produce, by the date stated on the subpoena, the documents requested herein.

**INSTRUCTIONS**

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

**DEFINITIONS**

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

558809.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.     "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.     "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.     "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7. "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Steven Binder, Hormel Foods, 1 Hormel Place, Austin, MN 55912

   *(Name of person to whom this subpoena is directed)*

☑    *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>         100 Washington Avenue South, Suite 2200<br>         Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐    *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

   *CLERK OF COURT*

OR

_____          s/ Brian D. Clark
   *Signature of Clerk or Deputy Clerk*               *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

    ☐    I served the subpoena by delivering a copy to the named person as follows:

    ☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server'sPrinted name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i)  is a party or a party's officer; or

(ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

(A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

(A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

(A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i)  fails to allow a reasonable time to comply;

(ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv)  subjects a person to undue burden.

(B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i)  disclosing a trade secret or other confidential research, development, or commercial information; or

(ii)  disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i)  expressly make the claim; and

(ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**PLAINTIFFS' REQUESTS FOR PRODUCTION
TO STEVEN BINDER**

Pursuant to the foregoing subpoena *duces tecum*, Steven Binder is required to produce, by the date stated on the subpoena, the documents requested herein.

**INSTRUCTIONS**

1.       Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.       Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.       The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

**DEFINITIONS**

1.       "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.       "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559415.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

      a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

      b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.     "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Alan Meiergerd, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑       *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>          100 Washington Avenue South, Suite 2200<br>          Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐       *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   May 25, 2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | s/ Brian D. Clark |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)*_____.

☐    I served the subpoena by delivering a copy to the named person as follows:

☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                     *signature*

                                        _____
                                    *Server'sPrinted name and title*

                                        _____
                                      *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i)  expressly make the claim; and
  (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO ALAN MEIERGERD

Pursuant to the foregoing subpoena *duces tecum*, Alan Meiergerd is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559434.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

      a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

      b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.     "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | )<br>)<br>) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Albert Lieberum Jr., Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑       *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐       *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   May 25, 2021

|  | |
|---|---|
| *CLERK OF COURT* | OR |
| | s/ Brian D. Clark |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐    I served the subpoena by delivering a copy to the named person as follows:

☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                 *signature*

                                            _____
                                    *Server'sPrinted name and title*

                                            _____
                                    *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i)  disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii)  disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO ALBERT LIEBERUM, JR.

Pursuant to the foregoing subpoena *duces tecum*, Albert Lieberum, Jr. is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559425.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

     a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

     b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.    "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8. "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9. "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

10. "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11. "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12. "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13. "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Bryan Farnsworth, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑      *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br> 100 Washington Avenue South, Suite 2200<br> Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐      *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

|   *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | s/ Brian D. Clark<br>_____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐   I served the subpoena by delivering a copy to the named person as follows:

☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered
to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                                *signature*

                                        _____
                                                *Server'sPrinted name and title*

                                        _____
                                                *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i)  is a party or a party's officer; or
      (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i)  fails to allow a reasonable time to comply;
      (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv)  subjects a person to undue burden.
   (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i)  expressly make the claim; and
      (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO BRYAN FARNSWORTH

Pursuant to the foregoing subpoena *duces tecum*, Bryan Farnsworth is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559421.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.     "Identity" or "identify" means:

a.     when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b.     when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.    "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8. "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9. "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

10. "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11. "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12. "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13. "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Eric Steinbach, Hormel Foods, 1 Hormel Place, Austin, MN 55912

   *(Name of person to whom this subpoena is directed)*

☑   *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P. 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐   *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   May 25, 2021

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
|  | s/ Brian D. Clark |
| _____ *Signature of Clerk or Deputy Clerk* | _____ *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)*_____.

    ☐    I served the subpoena by delivering a copy to the named person as follows:

    ☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server's Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO ERIC STEINBACH

Pursuant to the foregoing subpoena *duces tecum*, Eric Steinbach is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559210.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.    "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.    "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.    "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

    a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

    b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.     "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.     "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.     "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.     "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.     "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.     "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Glenn Leitch, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | s/ Brian D. Clark<br>_____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

---

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

     ☐     I served the subpoena by delivering a copy to the named person as follows:

     ☐     I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                             *signature*

                                         _____
                                   *Server'sPrinted name and title*

                                         _____
                                         *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
        (i)  is a party or a party's officer; or
        (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
    (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
    (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
    (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        (i)  fails to allow a reasonable time to comply;
        (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
        (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        (iv)  subjects a person to undue burden.
    (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        (i)  expressly make the claim; and
        (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO GLENN LEITCH

Pursuant to the foregoing subpoena *duces tecum*, Glenn Leitch is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.     "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Holly LaVallie, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:  Lockridge Grindal Nauen P.L.L.P.<br> 100 Washington Avenue South, Suite 2200<br> Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

| CLERK OF COURT | OR | |
|---|---|---|
| _____ <br> *Signature of Clerk or Deputy Clerk* | | s/ Brian D. Clark <br> _____ <br> *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

□     I served the subpoena by delivering a copy to the named person as follows:

□     I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server'sPrinted name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A)   within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B)   within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i)   is a party or a party's officer; or
      (ii)   is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   (A)   production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B)   inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   (A)   *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B)   *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i)   At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii)   These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   (A)   *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i)   fails to allow a reasonable time to comply;
      (ii)   requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv)   subjects a person to undue burden.
   (B)   *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A)   *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B)   *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C)   *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D)   *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i)   expressly make the claim; and
      (ii)   describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### PLAINTIFFS' REQUESTS FOR PRODUCTION
### TO HOLLY LAVALLIE

Pursuant to the foregoing subpoena *duces tecum*, Holly LaVillie is required to produce, by the date stated on the subpoena, the documents requested herein.

### INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

### DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559437.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.　　　"Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.　　　"Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.　　　"Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.  "Identity" or "identify" means:

  a.  when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

  b.  when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

559437.1                                                5

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.      "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.      "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   James Fiala, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P. 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
|  | s/ Brian D. Clark |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐        I served the subpoena by delivering a copy to the named person as follows:

☐        I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____              _____
                                                                    *signature*


                                                         _____
                                                            *Server'sPrinted name and title*



                                                         _____
                                                                  *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A)   within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B)   within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i)   is a party or a party's officer; or
      (ii)   is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   (A)   production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B)   inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   (A)   *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B)   *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i)   At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii)   These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   (A)   *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i)   fails to allow a reasonable time to comply;
      (ii)   requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv)   subjects a person to undue burden.
   (B)   *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C)   *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i)   shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii)   ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A)   *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B)   *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C)   *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D)   *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i)   expressly make the claim; and
      (ii)   describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO JAMES FIALA

Pursuant to the foregoing subpoena *duces tecum*, James Fiala is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.     Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.     Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.     The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.     "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.     "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559431.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.     "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

<u>**DOCUMENT REQUESTS**</u>

**<u>REQUEST 1:</u>** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**<u>REQUEST 2:</u>** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**<u>REQUEST 3:</u>** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) <br> )     Civil Action No. 0:18-CV-01776-JRT-HB <br> ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  James Snee, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P. <br>        100 Washington Avenue South, Suite 2200 <br>        Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | s/ Brian D. Clark <br> _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)*_____.

☐      I served the subpoena by delivering a copy to the named person as follows:

☐      I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server'sPrinted name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i)  disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii)  disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO JAMES SNEE

Pursuant to the foregoing subpoena *duces tecum*, James Snee is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.     Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.     Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.     The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.     "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.     "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559435.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.     "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.     "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.     "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

        a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

        b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.    "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.      "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.      "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Jana Haynes, Hormel Foods, 1 Hormel Place, Austin, MN 55912
       *(Name of person to whom this subpoena is directed)*

☑      *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| | |
|---|---|
| Place:   Lockridge Grindal Nauen P.L.L.P.<br>           100 Washington Avenue South, Suite 2200<br>           Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |

☐      *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| | |
|---|---|
| Place: | Date and Time: |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   May 25, 2021

CLERK OF COURT

                                                                OR

_____                    s/ Brian D. Clark
  *Signature of Clerk or Deputy Clerk*                        _____
                                                                 *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

    ☐    I served the subpoena by delivering a copy to the named person as follows:

    ☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server'sPrinted name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**PLAINTIFFS' REQUESTS FOR PRODUCTION
TO JANA HAYNES**

Pursuant to the foregoing subpoena *duces tecum*, Jana Haynes is required to produce, by the date stated on the subpoena, the documents requested herein.

**INSTRUCTIONS**

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

**DEFINITIONS**

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

      a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

      b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.    "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Jeffrey Ettinger, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>        100 Washington Avenue South, Suite 2200<br>        Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
|  | s/ Brian D. Clark |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)*_____.

☐        I served the subpoena by delivering a copy to the named person as follows: 

☐         I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server'sPrinted name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i)  disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii)  disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO JEFFREY ETTINGER

Pursuant to the foregoing subpoena *duces tecum*, Jeffrey Ettinger is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.     Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.     Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.     The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.     "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.     "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.   "Identity" or "identify" means:

a.   when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b.   when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8. "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9. "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

10. "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11. "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12. "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13. "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Minnesota

| | | |
|---|---|---|
| | ) | |
| IN RE PORK ANTITRUST | ) | Civil Action No. 0:18-CV-01776-JRT-HB |
| LITIGATION | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Jennifer Johnson, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P. 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   May 25, 2021

|  *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | s/ Brian D. Clark _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

□    I served the subpoena by delivering a copy to the named person as follows:

□    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server'sPrinted name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i)  is a party or a party's officer; or
      (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i)  fails to allow a reasonable time to comply;
      (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv)  subjects a person to undue burden.
   (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i)  expressly make the claim; and
      (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO JENNIFER JOHNSON

Pursuant to the foregoing subpoena *duces tecum*, Jennifer Johnson is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6. "Identity" or "identify" means:

a. when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b. when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document

request and for which the entity was identified.

7. "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | ) | |
|---|---|---|
| IN RE PORK ANTITRUST | ) | Civil Action No. 0:18-CV-01776-JRT-HB |
| LITIGATION | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Jerry Adwell, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   May 25, 2021

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | s/ Brian D. Clark |
| *Signature of Clerk or Deputy Clerk* | _____ |
| | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐     I served the subpoena by delivering a copy to the named person as follows:

☐     I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server'sPrinted name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A)   within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B)   within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i)   is a party or a party's officer; or
      (ii)   is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
   (A)   production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B)   inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   (A)   *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B)   *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i)   At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii)   These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
   (A)   *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i)   fails to allow a reasonable time to comply;
      (ii)   requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv)   subjects a person to undue burden.
   (B)   *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i)   shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii)   ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   (A)   *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B)   *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C)   *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D)   *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i)   expressly make the claim; and
      (ii)   describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO JERRY ADWELL

Pursuant to the foregoing subpoena *duces tecum*, Jerry Adwell is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559412.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3. "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4. "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5. "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document

request and for which the entity was identified.

7. "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | | |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Jesse Hyland, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P. 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

|  *CLERK OF COURT* | OR | |
|---|---|---|
| _____ *Signature of Clerk or Deputy Clerk* | | s/ Brian D. Clark _____ *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)*_____.

☐       I served the subpoena by delivering a copy to the named person as follows:

☐        I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                          *signature*

                                                 _____
                                                          *Server'sPrinted name and title*

                                                 _____
                                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i)  disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii)  disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO JESSE HYLAND

Pursuant to the foregoing subpoena *duces tecum*, Jesse Hyland is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.     "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.     "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.     "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

    a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

    b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.     "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.     "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.     "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.     "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.     "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.     "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.     "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Minnesota

|  | ) |  |
|---|---|---|
| IN RE PORK ANTITRUST | ) | Civil Action No. 0:18-CV-01776-JRT-HB |
| LITIGATION | ) |  |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Jim Sheehan, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑       *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐       *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

*CLERK OF COURT*

OR

_____            _____
*Signature of Clerk or Deputy Clerk*                       s/ Brian D. Clark
                                                                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

     ☐     I served the subpoena by delivering a copy to the named person as follows:

     ☐     I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server's Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person

   (i)  is a party or a party's officer; or

   (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

(A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

(A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

   (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

   (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

   (i)  fails to allow a reasonable time to comply;

   (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);

   (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

   (iv)  subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

   (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

   (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

   (i)  expressly make the claim; and

   (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO JIM SHEEHAN

Pursuant to the foregoing subpoena *duces tecum*, Jim Sheehan is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.     "Identity" or "identify" means:

      a.     when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

      b.     when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Jody Feragen, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>        100 Washington Avenue South, Suite 2200<br>        Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   May 25, 2021

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
|  |  |
| _____<br>*Signature of Clerk or Deputy Clerk* | s/ Brian D. Clark<br>_____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐      I served the subpoena by delivering a copy to the named person as follows:

☐      I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server'sPrinted name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i)  expressly make the claim; and
  (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO JODY FERAGEN

Pursuant to the foregoing subpoena *duces tecum*, Jody Feragen is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559422.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.       "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.       "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.       "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

       a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

       b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8. "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9. "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

10. "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11. "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12. "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13. "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the
### District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Jose Rojas, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                s/ Brian D. Clark
                                                                      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐       I served the subpoena by delivering a copy to the named person as follows: 

☐       I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                               *signature*

                                        _____
                                               *Server'sPrinted name and title*

                                        _____
                                               *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i)  disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii)  disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i)  expressly make the claim; and
  (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### PLAINTIFFS' REQUESTS FOR PRODUCTION
### TO JOSE ROJAS

Pursuant to the foregoing subpoena *duces tecum*, Jose Rojas is required to produce, by the date stated on the subpoena, the documents requested herein.

### INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

### DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559206.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.     "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.     "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.     "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

        a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

        b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.   "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.     "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.     "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.     "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.     "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.     "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.     "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | | |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Mark Coffey, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑     *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| | |
|---|---|
| Place:   Lockridge Grindal Nauen P.L.L.P.<br>          100 Washington Avenue South, Suite 2200<br>          Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |

☐     *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| | |
|---|---|
| Place: | Date and Time: |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   May 25, 2021

|                  CLERK OF COURT                  |  OR  |                                |
|---|---|---|
| | | s/ Brian D. Clark |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐        I served the subpoena by delivering a copy to the named person as follows:

☐        I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____        _____

*signature*

_____

*Server'sPrinted name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A)   within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B)   within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i)   is a party or a party's officer; or
      (ii)   is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   (A)   production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B)   inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   (A)   *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B)   *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i)   At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii)   These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   (A)   *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i)   fails to allow a reasonable time to comply;
      (ii)   requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv)   subjects a person to undue burden.
   (B)   *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C)   *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i)   shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii)   ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A)   *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B)   *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C)   *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D)   *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i)   expressly make the claim; and
      (ii)   describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO MARK COFFEY

Pursuant to the foregoing subpoena *duces tecum*, Mark Coffey is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6. "Identity" or "identify" means:

    a. when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

    b. when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.    "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8. "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9. "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10. "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11. "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12. "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13. "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Michael Gyarmaty, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   May 25, 2021

|  |  |
|---|---|
| CLERK OF COURT | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | s/ Brian D. Clark<br>_____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐        I served the subpoena by delivering a copy to the named person as follows: 

☐         I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server's Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i)  is a party or a party's officer; or

(ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

(A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

(A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

(A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i)  fails to allow a reasonable time to comply;

(ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv)  subjects a person to undue burden.

(B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i)  disclosing a trade secret or other confidential research, development, or commercial information; or

(ii)  disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i)  expressly make the claim; and

(ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO MICHAEL GYARMARTY

Pursuant to the foregoing subpoena *duces tecum*, Michael Gyarmarty is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

      a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

      b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.    "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8. "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9. "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

10. "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11. "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12. "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13. "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | ) | |
|---|---|---|
| IN RE PORK ANTITRUST | ) | Civil Action No. 0:18-CV-01776-JRT-HB |
| LITIGATION | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Nathan Annis, Hormel Foods, 1 Hormel Place, Austin, MN 55912

 *(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>             100 Washington Avenue South, Suite 2200<br>             Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

|  *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | s/ Brian D. Clark<br>_____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐     I served the subpoena by delivering a copy to the named person as follows:

☐     I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server's Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.

  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

  (i) expressly make the claim; and

  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### PLAINTIFFS' REQUESTS FOR PRODUCTION
### TO NATHAN ANNIS

Pursuant to the foregoing subpoena *duces tecum*, Nathan Annis is required to produce, by the date stated on the subpoena, the documents requested herein.

### INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

### DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559414.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

        a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

        b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.     "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8. "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9. "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

10. "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11. "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12. "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13. "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.      "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.      "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Neal Hull, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑        *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>            100 Washington Avenue South, Suite 2200<br>            Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐        *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | s/ Brian D. Clark |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐        I served the subpoena by delivering a copy to the named person as follows: _____

☐        I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server'sPrinted name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO NEAL HULL

Pursuant to the foregoing subpoena *duces tecum*, Neal Hull is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559208.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6. "Identity" or "identify" means:

a. when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

b. when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8. "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9. "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way. Including therefore means "including, but not limited to," or "including without limitation."

10. "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11. "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12. "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13. "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

IN RE PORK ANTITRUST
LITIGATION

)
)
)

Civil Action No. 0:18-CV-01776-JRT-HB

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Steven Venenga, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑   *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>          100 Washington Avenue South, Suite 2200<br>          Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐   *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

s/ Brian D. Clark
_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐        I served the subpoena by delivering a copy to the named person as follows:

☐        I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server's Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO STEVEN VENENGA

Pursuant to the foregoing subpoena *duces tecum*, Steven Venenga is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.       Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.       Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.       The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.       "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.       "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559211.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

        a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

        b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.     "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Thomas Day, Hormel Foods, 1 Hormel Place, Austin, MN 55912
*(Name of person to whom this subpoena is directed)*

☑      *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P. 100 Washington Avenue South, Suite 2200 Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐      *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
|  | s/ Brian D. Clark |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐        I served the subpoena by delivering a copy to the named person as follows: _____

☐         I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____            _____
                                                                          *signature*


                                                     _____
                                                              *Server'sPrinted name and title*


                                                     _____
                                                                   *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i)  is a party or a party's officer; or
      (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i)  fails to allow a reasonable time to comply;
      (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv)  subjects a person to undue burden.
   (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i)  expressly make the claim; and
      (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### PLAINTIFFS' REQUESTS FOR PRODUCTION
### TO THOMAS DAY

Pursuant to the foregoing subpoena *duces tecum*, Thomas Day is required to produce, by the date stated on the subpoena, the documents requested herein.

### INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

### DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.    "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.    "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.    "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

      a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

      b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7. "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

559417.1                                    5

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   William Snyder, Hormel Foods, 1 Hormel Place, Austin, MN 55912

*(Name of person to whom this subpoena is directed)*

☑      *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **As described in the attached Schedule A.**

| Place:   Lockridge Grindal Nauen P.L.L.P.<br>              100 Washington Avenue South, Suite 2200<br>              Minneapolis, MN 55401 | Date and Time: June 24, 2021, 9:00 a.m. |
|---|---|

☐      *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  May 25, 2021

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | s/ Brian D. Clark<br>_____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)*_____.

    ☐    I served the subpoena by delivering a copy to the named person as follows:

    ☐    I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*signature*

_____
*Server's*Printed name and title

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i)  is a party or a party's officer; or
  (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i)  fails to allow a reasonable time to comply;
  (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv)  subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i)  expressly make the claim; and
  (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO WILLIAM SNYDER

Pursuant to the foregoing subpoena *duces tecum*, William Snyder is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.        Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.        Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.        The Relevant Time Period for each request below is January 1, 2008 through August 17, 2018, unless otherwise noted.

## DEFINITIONS

1.        "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.        "Communication" or "Communicated means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

559428.1

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

    a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

    b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.    "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; Texas Farm LLC; The Maschhoffs; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.     "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.     All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST 1:** Produce a copy of each Text Message that you sent or received during the Relevant Time Period with an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 2:** Produce a copy of each contact (e.g., the contact "card") on your cellphone who is or was an Employee or Representative of a Pork Integrator, or any other individual with whom you communicated about supply and demand conditions in the Pork industry.

**REQUEST 3:** Documents sufficient to show a list of the installed communications-related applications on Your cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications.

**REQUEST 4:** Documents sufficient to show any steps you took to preserve data on Your cellphone(s) since the filing of this lawsuit on June 29, 2018.

**REQUEST 5:** Documents sufficient to show, and provide access to the forensic vendor for collection purposes, the location, date, and scope of any archived copies of your cellphone data, such as iTunes archives or iCloud archives.

**REQUEST 6:** Documents sufficient to show the type of cellphone, including brand and model number, of each cellphone you used from during the Relevant Time Period.

**REQUEST 7:** If any text messages requested in Request No. 1 above have been deleted or otherwise lost since June 29, 2018, then produce all documents relating to the circumstances surrounding such deletion or loss.