EXHIBIT 4

REDACTED

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **In re Pork Antitrust Litigation**<br><br>This Document Relates To: All Actions | Case No. 18-cv-01776-JRT-HB<br><br>**DEFENDANT HORMEL FOODS CORPORATION'S ANSWERS AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**<br><br>**CONTAINS CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION – SUBJECT TO PROTECTIVE ORDER** |

Defendant Hormel Foods Corporation ("Hormel Foods" or the "Company"), by and through its undersigned counsel, hereby serves these Answers and Objections ("Responses") to Plaintiffs' First Set of Interrogatories to the Pork Integrator Defendants ("Interrogatories").

Hormel Foods' Scope Limitations below are incorporated by reference in each of its Responses as if set forth separately therein, and each Response is made without waiving any of these Scope Limitations. The assertion of additional specific objections to a particular Interrogatory or the repetition of an objection shall not be construed as waiving any applicable objection with respect to that or any other Interrogatory. Hormel Foods reserves the right to assert additional scope limitations and objections or to supplement the Scope Limitations and objections set forth herein.

## SCOPE LIMITATIONS ON HORMEL FOODS' RESPONSES

1.     Hormel Foods objects to these Interrogatories to the extent they seek to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any Orders which may be entered in this case—including the February 20, 2019 ESI Protocol Order (*see* Doc. No. 292).

2.     Hormel Foods objects to these Interrogatories to the extent they seek discovery that is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

3.     Hormel Foods objects to these Interrogatories to the extent they seek discovery that is not directly related to the claims or defenses at issue in this litigation. Any Interrogatory that encompasses time periods, activities, or locations beyond those at issue in this case is overly broad.

4.     Hormel Foods objects to these Interrogatories to the extent they attempt or purport to seek documents and/or information that is not within the Company's possession, custody, or control.

5.     Hormel Foods objects to these Interrogatories—and the "Relevant Time Period" defined therein—as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent they seek documents and/or information generated well before the begin date of the start of the alleged conspiracy. Subject to and without waiving

its objections, Hormel Foods will respond to these Interrogatories for a timeframe of January 1, 2008 through June 30, 2018.

6.      Hormel Foods objects to these Interrogatories to the extent they attempt or purport to seek information unrelated to U.S. pork production and sales. Any Interrogatory that encompasses activities or locations beyond those at issue in this case and/or entities that do not sell pork into the United States or export pork out of the United States is overly broad, unduly burdensome, and disproportionate to the needs of this case.

7.      Hormel Foods objects to these Interrogatories to the extent they attempt or purport to seek documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege held by the Company.

8.      Hormel Foods objects to these Interrogatories to the extent they seek confidential business information, proprietary information, commercially sensitive information, competitively significant information, protected health information, personal information related to Hormel Foods' employees, and/or trade secrets of the Company, its predecessors, and/or third parties. Hormel Foods intends to produce its Responses subject to the Protective Order (Doc. No. 212) in this matter, where appropriate, but reserves the right to seek further protections if needed.

9.      Hormel Foods objects to the Interrogatories as premature to the extent they seek the production of information that is properly the subject of expert analysis. Hormel Foods may produce expert reports in this matter and, if so, will comply with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District

of Minnesota or any other applicable local rules, case law or court orders in producing related information.

10.     Hormel Foods objects to the Interrogatories to the extent they seek the production of information not in the Company's possession, custody or control, or information more easily obtained from sources other than Hormel Foods, including but not limited to public sources. Hormel Foods further objects to the Interrogatories to the extent they seek information already in Plaintiffs' possession. Hormel Foods also objects to the Interrogatories on the grounds and to the extent they seek the production of information available through other means of discovery that are more convenient, more efficient and more practical, including requests for production or depositions.

11.     Hormel Foods objects to the Interrogatories to the extent they are improperly compound and contain multiple subparts. Hormel Foods may answer compound Interrogatories, but reserve all rights to cease responding to Interrogatories and/or subparts of Interrogatories in excess of the limits set forth in Federal Rule of Civil Procedure 33, agreed upon by the Parties, or ordered by the Court.

12.     Finally, Hormel Foods' investigation into this matter is ongoing. Accordingly, the Company reserves the right to alter, amend or supplement its Responses as this matter progresses.

### **OBJECTIONS TO DEFINITIONS**

1.     Hormel Foods objects to Plaintiffs' definition of the term "Benchmarking Service" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks information irrelevant to any Party's claims

4

or defenses. Hormel Foods will interpret "Benchmarking Service" to mean Agri Stats, Inc. and Agrimetrics. See also the below Objection to the definitions of the terms "You," "Your," and "Your company."

2.      Hormel Foods objects to Plaintiffs' definition of the term "Defendant" as overly broad because it includes "predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant." Hormel Foods further objects to the definition as vague and ambiguous because (a) "managed" and "controlled" are undefined and unclear; and (b) it is unclear who may be "subsequently named as a Defendant in this litigation," and thus this definition may change over time. Hormel Foods also objects to the definition as overly broad, unduly burdensome, and disproportionate to the needs of the case because it includes persons "purporting to act on behalf of a Defendant," which would require Hormel Foods to have knowledge of matters beyond its custody or control. See also the below Objection to the definitions of the terms "You," "Your," and "Your company."

3.      Hormel Foods objects to Plaintiffs' definition of the term "Document" as overly broad, unduly burdensome, vague, ambiguous, and not in compliance with the Federal Rules of Civil Procedure or applicable local rules. Hormel Foods will interpret "Document" to be synonymous in meaning and equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure.

4.      Hormel Foods objects to Plaintiffs' definition of the term "Document Custodian" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate

to the needs of the case. Hormel Foods will collect and produce relevant, responsive documents in this litigation from the individuals agreed to by the Parties and/or so ordered by the Court. Hormel Foods further objects to this definition to the extent it purports to extend the Company's possession, custody, or control as defined by the Federal Rules of Civil Procedure to each and every "employee['s] and/or representative['s]" possession, custody, or control. In addition, the word "representative" as used in the definition of "Document Custodian" is vague and ambiguous.

5.      Hormel Foods objects to Plaintiffs' definition of the term "ESI" to the extent such definition departs from its plain and ordinary meaning, and seeks to impose burdens or obligations on the Company beyond those imposed by the Federal Rules of Civil Procedure, or any applicable local rules, case law, or court orders. Hormel Foods further objects to the definition of the term "ESI" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case of the case to the extent Interrogatories incorporating this term seek (a) material not in the possession, custody, or control of Hormel Foods; (b) production of ESI from sources that are not reasonably accessible in light of the burdens or costs required to locate, restore, review, and produce whatever responsive information may be found; or (c) seek information that is not relevant to the claim or defense of any party to this action.

6.      Hormel Foods objects to Plaintiffs' definition of the term "Identify" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information irrelevant to any Party's claims or defenses. Hormel Foods further objects to the extent that Plaintiffs request that the Company

"identify all individuals affiliated with or participating with the entity(ies) on Your behalf" as overly broad, unduly burdensome, and disproportionate to the needs of the case. Unless otherwise noted, Hormel Foods will not identify "all individuals affiliated with or participating" with an entity. See also the below Objection to the definitions of the terms "You," "Your," and "Your company."

7.     Hormel Foods objects to Plaintiffs' definition of the term "Industry Meeting" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks discovery of meetings with entities other than other Defendants—including untold, undefined and unspecified third parties.

8.     Hormel Foods objects to the definition of "Meeting" as vague and ambiguous, overly broad, and unduly burdensome.

9.     Hormel Foods objects to Plaintiffs' definition of the term "Person" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. Hormel Foods further objects to the definition of this term on the grounds that it purports to include individuals and entities beyond the named Defendants that are irrelevant and outside the scope of the case, and that it purports to impose a burden on Hormel Foods to obtain information from third parties outside of its control.

10.     Hormel Foods objects to any definition of "Pork" that purports to expand the definition beyond the definition set forth in Plaintiffs' pleadings: that is, "pig or swine meat sold or purchased fresh or frozen, smoked ham, sausage, and bacon."

11.     Hormel Foods objects to any definition of "Pork Integrator" that purports to expand the definition beyond the list of entities negotiated by the parties in January 2021

7

in order to resolve Hormel Foods' initial objections that the definition is vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. That negotiated list includes the named Defendants in *In re Pork Antitrust Litigation* as of the date of these Responses; Eichelberger Farms; Hanor; Christensen Farms; Iowa Select Farms; Maple Leaf Agri-Farms; Swift Pork Co.; The Maschhoffs; and TriOak Foods. For the avoidance of doubt, Hormel Foods continues to reject Plaintiffs' definition of "Pork Integrator," and it disagrees that the eight above-listed entities are integrated, should be called "Pork Integrators," or meet Plaintiffs' own definition of "Pork Integrators."

12.     Hormel Foods objects to Plaintiffs' definition of the term "Price or Supply Index" on the grounds that this definition is vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case; seeks information not within the Company's possession, custody, or control; and seeks information more easily obtained from sources other than Hormel Foods, including but not limited to public sources like the USDA. Hormel Foods requests a list of each purported "Price or Supply Index" to which this definition is intended to apply, and to which Hormel Foods reserves its rights to object. If Plaintiffs decline to do so, Hormel Foods will interpret "Price or Supply Index" to mean the entities listed in Plaintiffs' definition—that is, the USDA, Express Markets, and Urner Barry—and the following entities which publish information regarding Pork: Informa, Steiner, Sterling, IRI, and Nielsen.

13.     Hormel Foods objects to Plaintiffs' definitions of the terms "relating to," "referring to," "regarding," "with respect to," and "concerning" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the

extent they purport to impose upon the Company obligations greater than those set forth in the Federal Rules of Civil Procedure. Hormel Foods further objects to the definitions to the extent they incorporate other defined terms to which Hormel Foods has objected.

14.    Hormel Foods objects to Plaintiffs' definition of the term "Trade Association" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case because the term is defined as any "association or business organization that promotes the interest of Pork Integrators," without limitation. Hormel Foods does not have knowledge of whether an "association or business organization" of which they were not a participant "promote[d] the interest of Pork integrators." Accordingly, Hormel Foods will limit its Responses, to the extent it has responsive information, to the organizations listed in the definition: the National Pork Board; the National Pork Producers Council ("NPPC"); the National Pork Industry Conference ("NPIC"); the 21st Century Pork Club; the North American Meat Institute ("NAMI"); and the American Meat Institute ("AMI").

15.    Hormel Foods objects to Plaintiffs' definitions of the terms "You," "Your," and "Your company" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. Hormel Foods further objects to the definitions of these terms on the grounds that they purport to include individuals and entities beyond the named Defendants that are irrelevant and outside the scope of the case, and that they purport to impose a burden on Hormel Foods to obtain information from third parties outside of its control. Hormel Foods interprets these terms to mean a named Defendant in *In re Pork Antitrust Litigation* only as of the date of these Responses; it does not interpret

these terms to include any other predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, joint ventures, other affiliates, and any organization or entity managed or controlled by a named Defendant. As specifically applied to Hormel Foods, Hormel Foods interprets these terms to mean the operations of Hormel Foods in its procurement, manufacturing, processing, and sale of Pork.

## OBJECTIONS TO INSTRUCTIONS

1.      Hormel Foods objects to Instruction No. 1 to the extent that it seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any Orders which may be entered in this case. Hormel Foods will supplement its discovery as needed consistent with the Federal Rules of Civil Procedure, the Local Rules, or as ordered by the Court.

2.      Hormel Foods objects to Instruction No. 2 to the extent that it seeks to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any Orders which may be entered in this case—including, the February 20, 2019 ESI Protocol Order (*see* Doc. No. 292). To the extent that Hormel Foods produces documents under Rule 33(d), it will do so in accordance with the Federal Rules of Civil Procedure, the Local Rules, and any Order by the Court.

## ANSWERS AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify Your corporate structure and ownership, including the names and relevant ownership interests related to all of Your subsidiaries, parents, and owners.

**ANSWER TO INTERROGATORY NO. 1:**

In addition to the Scope Limitations, Objections to Definitions, and Objections to Instructions, Hormel Foods objects to Interrogatory No. 1 as (1) vague and ambiguous as to scope; (2) overly broad and unduly burdensome to the extent that the Interrogatory asks for the identity of every owner of Hormel Foods, which is a publicly held company; and (3) overly broad and unduly burdensome to the extent that it seeks information regarding entities—including Hormel Foods' subsidiaries—unrelated to the Parties' claims or defenses.

Subject to and without waiving any of the above objections, Hormel Foods states that it has no parent, and that the names and relevant ownership interests related to its subsidiaries and shareholders with more than 5 percent of the Company's stock change from time to time and are publicly available through SEC filings.

**INTERROGATORY NO. 2:** Identify any and all joint ventures, alliances, co-packing agreements, partnerships, or other business agreements in which You participated, that relate to the buying, processing, packaging, marketing, or selling of Pork.

**ANSWER TO INTERROGATORY NO. 2:**

In addition to the Scope Limitations, Objections to Definitions, and Objections to Instructions, Hormel Foods objects to Interrogatory No. 2 as (1) vague and ambiguous in its use of the undefined term "alliance" and the phrase "other business agreement"; (2) over broad, unduly burdensome and not proportionate to the needs of the case to the extent that it seeks information irrelevant to the Parties' claims or defenses.

11

Subject to and without waiving any of the above objections, Hormel Foods states that, based upon its records, between January 1, 2008 through June 30, 2018, the Company participated in the following:

    A.    Precept Foods LLC—a joint venture with Cargill Meat Solutions which was dissolved in 2014. (*See* Hormel Foods' Resp. to All Plaintiffs' Request for Production No. 22)

    B.    Co-packing agreements for Pork products with the following named Defendants in *In re Pork Antitrust Litigation* as of the date of these Responses: Clemens; and Smithfield, as part of the Company's divestiture of Clougherty Packing LLC (and PFFJ LLC) to Smithfield in 2016.

Hormel Foods further states that it had no legal partnerships relating to Pork during the Relevant Time Period.

**INTERROGATORY NO. 3:** Identify each entity or Person who owns 1% or more of You and/or Your subsidiaries or from whom You collectively borrowed or received funds totaling in excess of $10 million during the Relevant Time Period, including the amount of such ownership or funds borrowed or received and the applicable time periods.

**ANSWER TO INTERROGATORY NO. 3:**

In addition to the Scope Limitations, Objections to Definitions, and Objections to Instructions, Hormel Foods objects to Interrogatory No. 3 as (1) vague and ambiguous as to scope; (2) overly broad and unduly burdensome to the extent that the Interrogatory asks for the identity of every owner of 1 percent or more of Hormel Foods—a publicly held company—over a twelve-year period; and (3) overly broad and unduly burdensome to the

extent that it seeks information regarding entities unrelated to the Parties' claims or defenses.

Subject to and without waiving any of the above objections, Hormel Foods states that the identities of its shareholders with more than 5 percent of the Company's stock and material contracts are reported to the SEC, and are publicly available through SEC filings.

**INTERROGATORY NO. 4:** For each Benchmarking Service or Price or Supply Index in which You participated, describe in detail all information relating to your participation, including who was involved, the date range of participation, whether participation was voluntary or mandatory, a description of precisely what information and/or reports You provided and/or received (and any changes to that information over time), the method by which you sent or received such data or information, any terms or contractual obligations relating to Your participation, and how much money you paid to participate in such a service.

**ANSWER TO INTERROGATORY NO. 4:**

14

███████████████████████████████████

███████████████████████████████████

████████████████████████████

**INTERROGATORY NO. 5:** Describe any information You received from Agri Stats, Inc. relating to other Pork Integrators' breeding, processing, slaughter, production, distribution, or sales data that was not anonymized or through which you were informed and/or determined the identity of specific data submitted by another Pork Integrators [sic] including, but not limited to, any unique numeric identifiers or descriptors that permitted the identification of another Pork Integrator's data.

**ANSWER TO INTERROGATORY NO. 5:**

In addition to the Scope Limitations, Objections to Definitions, and Objections to Instructions, Hormel Foods objects to Interrogatory No. 5 as vague and ambiguous in its use of undefined phrases such as "determined the identity of specific data." Hormel Foods will interpret this phrase as analysis undertaken to conclusively link data submitted by another subscriber to Agri Stats' pork reports to that particular participant.

Subject to and without waiving its objections, Hormel Foods states that, based upon a reasonable investigation to date, it is not aware of any information received from Agri Stats relating to the data of another participant that was not anonymized or that otherwise revealed the identity of another participant. Nor is Hormel Foods aware of any efforts by Hormel Foods to undertake any analysis to conclusively link Pork data submitted by another Agri Stats participant to that particular participant.

**INTERROGATORY NO. 6:** Identify every Industry Meeting and Meeting of a Trade Association attended by a Document Custodian, including when and where it occurred, the entity or organization that arranged the meeting, who from Your Company attended, and any documents (e.g., agendas, minutes, or notes) that relate to the content of what was discussed at the meeting.

15

**ANSWER TO INTERROGATORY NO. 6:**

In addition to the Scope Limitations, Objections to Definitions, and Objections to Instructions, Hormel Foods objects to Interrogatory No. 6 as over broad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks information irrelevant to the Parties' claims or defenses, and seeking information that is better obtained through depositions or other less burdensome sources—for example, Plaintiffs have subpoenaed various trade associations.

Subject to and without waiving its objections above, Hormel Foods states that it does not maintain information regarding its employees' participation in trade associations. Based upon publicly available, or otherwise readily available, information, Hormel Foods states that, between January 1, 2008 and June 30, 2018, the following Document Custodians have participated in the following trade associations referenced in Plaintiffs' complaints:

| Document Custodian | Trade Associations |
| --- | --- |
| Corwyn Bollum | NPPC, NAMI, National Pork Board, 21st Century Pork Club |
| Eric Steinbach | National Pork Board |
| James Snee | NAMI |
| Jeffrey Ettinger | NAMI, AMI |
| Paul Peil | NPPC, NAMI, National Pork Board |
| Steven Binder | NAMI |

Hormel Foods refers Plaintiffs to its Response to All Plaintiffs' Request for Production No. 5.

16

**INTERROGATORY NO. 7:** Explain in detail any circumstance in which You cancelled, commenced, or altered a subscription to any of Agri Stats, Inc.'s Pork-related services from January 1, 2003 through the present.

**ANSWER TO INTERROGATORY NO. 7:**

Subject to and without waiving the Scope Limitations, Objections to Definitions, and Objections to Instructions, Hormel Foods states that, based upon its records, for the period from January 1, 2008 through June 30, 2018, the Company cancelled, commenced, or altered its limited subscription to Agri Stats' pork reports as follows:

For the Swine Processing and Swine Production reports, Hormel Foods states that, based upon its records, for the period from January 1, 2008 through June 30, 2018, Hormel Foods subscribed to Agri Stats reports as follows:

- Swine Processing.
  - Hormel Foods cancelled its subscription to the Swine Processing and Swine Profit reports in approximately October 2010 after determining that it did not derive sufficient value from the reports to continue its subscription, and again subscribed to the Swine Processing reports in approximately December 2014 after being persuaded by better pricing from Agri Stats and that intervening updates to Agri Stats' system would streamline the collection and submission of select Company data and result in fewer data inaccuracies.

- Swine Production.
  - Hormel Foods subscribed to the Swine Production reports in approximately June 2017, following the closing of its divestiture of PFFJ to Smithfield. Prior to the divestiture, PFFJ had subscribed to the Swine Production reports.

17

Hormel Foods ended its limited subscription Agri Stats' pork reports in approximately October or November 2017, and made its final payment to Agri Stats related to pork reports in February 2018. The Company discontinued its limited subscription after determining that it did not derive sufficient value from the reports to justify continuing its subscription.

**INTERROGATORY NO. 8:** Explain the process by which the price You sell Pork is determined and identify by name and title the Persons involved in making that determination, including any employees and/or representatives.

**ANSWER TO INTERROGATORY NO. 8:**



**INTERROGATORY NO. 9:** For each of Your Document Custodians, Identify All email addresses, social or industrial/business web-based media accounts (e.g., Facebook®, Twitter®, LinkedIn® Instagram®, Snapchat®, Cluster, or WhatsApp), cellular phone numbers, office phone, and facsimile numbers, or other telephone numbers (and applicable



phone carriers for each telephone number) used by each such employee regarding or relating to his work for You.

**ANSWER TO INTERROGATORY NO. 9:**







**INTERROGATORY NO. 10:** For each of Your Document Custodians, Identify the device manufacturer, device model, and IMEI (where applicable) of all cellphone devices, personal computer(s), and similar devices (iPad, Microsoft Surface, etc.) used by each such Document Custodians regarding or relating to his or her work for You during the Relevant Time Period, specifying the date range when each device was in use, the method by which its data was backed up or archived (if any), and whether or not the device still exists.

**ANSWER TO INTERROGATORY NO. 10:**

In addition to the Scope Limitations, Objections to Definitions, and Objections to Instructions, Hormel Foods objects to Interrogatory No. 10 as (1) overly broad and unduly burdensome to the extent that it seeks information unrelated to the Parties' claims or defenses and disproportionate to the needs of the case—Plaintiffs seek discovery into discovery; and (2) seeking information outside of Hormel Foods' possession, custody, or control.

**AS TO ANSWERS:**

I, Corwyn Bollum, after being duly sworn on oath, state that I am an authorized signatory of Defendant Hormel Foods Corporation, and verify the above Interrogatory answers for and on behalf of Hormel Foods and am duly authorized to do so; that certain of the matters stated in these Interrogatory answers are not within the personal knowledge of the signatory; that these Interrogatory answers have been assembled by authorized employees and counsel of Hormel Foods; and that the facts stated in these Interrogatory answers are true and correct.

Dated: January 20, 2021                    HORMEL FOODS CORPORATION


                                           *s/ Corwyn Bollum*
                                           Director Pork Operations and Pork Procurement


**AS TO OBJECTIONS:**

Dated: January 20, 2021

                                           *s/ Emily E. Chow*
                                           Richard A. Duncan (#0192983)
                                           Aaron D. Van Oort (#0315539)
                                           Craig S. Coleman (#0325491)
                                           Emily E. Chow (#0388239)
                                           Isaac B. Hall (#0395398)
                                           Bryan K. Washburn (#0397733)
                                           FAEGRE DRINKER BIDDLE & REATH LLP
                                           2200 Wells Fargo Center
                                           90 South Seventh Street
                                           Minneapolis, MN 55402-3901
                                           Telephone: (612) 766-7000
                                           Facsimile: (612) 766-1600
                                           richard.duncan@faegredrinker.com
                                           aaron.vanoort@faegredrinker.com
                                           craig.coleman@faegredrinker.com
                                           emily.chow@faegredrinker.com
                                           isaac.hall@faegredrinker.com
                                           bryan.washburn@faegredrinker.com

                                           *Counsel for Defendant Hormel Foods Corporation*