UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | No. 0:18-cv-01776-JRT-HB |
| This Document Relates To: All Actions | No. 0:21-md-02998-JRT-HB |

**DEFENDANTS' BRIEF REGARDING CONSOLIDATION**

The Court should consolidate the cases brought by the MDL DAPs[1] with the existing Class and non-MDL DAP cases for pretrial proceedings. The Court's authority to consolidate is clear. Federal Rule of Civil Procedure 42(a) authorizes courts to consolidate actions involving common questions of law or fact. The MDL DAPs are pursuing claims that are substantively identical to those found in the consolidated DAPs' and classes' respective complaints, but even if they were to pursue additional claims as well, "consolidation is not barred simply because the plaintiffs may be relying on different legal theories[.]" *Doe YZ v. Shattuck-St. Mary's School*, No. CIV 15-1151 ADM/SER, 2016 WL 6594077, at *1 (D. Minn. Nov. 4, 2016); *Clifford v. First Am.*

---

[1] The MDL DAPs currently include: Action Meat Distributors, Inc.; Alex Lee, Inc. and its affiliates Merchants Distributors, LLC, Lowe's Food Stores, Inc. and W. Lee Flowers & Company; Amory Investments LLC; Associated Food Stores, Inc.; Brookshire Grocery Company; Certco, Inc.; Cheney Brothers, Inc.; Colorado Boxed Beef Co.; Nestlé Purina PetCare Company; Nestlé USA, Inc.; Nicholas & Co., Inc.; PFD Enterprises, Inc.; SpartanNash Company; Springfield Grocer Company; Subway Protein Litigation Corp., as Litigation Trustee of the Subway® Protein Litigation Trust; Sysco Corporation; The Distribution Group d/b/a Van Eerden Foodservice Co.; The Golub Corporation; Topco Associates, LLC; Troyer Foods, Inc.; and URM Stores, Inc. Additional complaints, brought by DAPs BJ's Wholesale Club, Inc., Conagra Brands, Inc., Giant Eagle, Inc., and Kraft Heinz Foods Company, will soon be transferred to this district and consolidated into the MDL docket. The JPML finalized the Conditional Transfer Order on August 19, 2021. (MDL No. 2998, ECF No. 80 (J.P.M.L. Aug. 19, 2021).)

*Corp.*, No. CIV.A. 95-0877 JHG, 1996 WL 707022, at *3 (D.D.C. Nov. 26, 1996) (consolidating non-identical cases).  The JPML accordingly transferred the MDL DAPs to this district "for coordinated *or consolidated* pretrial proceedings" (Case No. 21-md-02998, ECF No. 1 (emphasis added)).

The Court should exercise its discretion to consolidate these cases because the "savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009). Consolidation of actions under Rule 42(a) is "a valuable and important tool of judicial administration." *Id.* (internal quotation marks and citations omitted).  Consolidation is also a useful tool in promoting efficiency and avoiding repetitive discovery.  "Actions that involve the same parties are apt candidates for consolidation." *Id.* (internal citations omitted).

As a practical matter, consolidation is the procedural device most likely to eliminate the following needless inefficiencies:

- Multiple separate negotiations across cases on discovery issues and the resulting complexity as the parties attempt to track and comply with slightly different orders governing the same topics (*e.g.,* discovery limits, deposition protocols, the applicability of discovery orders to non-parties);
- Multiple deadlines for the same case events, including the possibility that the MDL DAPs could upset the existing case schedule by attempting to force summary judgment briefing on an accelerated timeline (which would

then require the Court to hear summary judgment motions concerning the same alleged conspiracy at different times);

- Needlessly duplicative docket filings and resulting complexity in managing different references to substantively identical documents across dockets; and

- Countless likely largely unforeseen, unintended procedural complications, such as the need for third-party consent to release to the MDL DAPs third-party documents and data produced to date because the governing Protective Order in the non-MDL case (Case No. 18-cv-01776, ECF No. 212) permits disclosure only in connection with "this litigation."

This Court previously recognized the efficiencies of consolidation when it consolidated the Winn-Dixie, Cheney Brothers, and Puerto Rico actions with the class actions for pretrial purposes. (Case No. 18-cv-01776, ECF No. 644.) All of the reasons for consolidating those cases pertain here, and there are no significant drawbacks to consolidating the MDL DAP cases with the Class and non-MDL DAP cases.

## ARGUMENT

### I. CONSOLIDATION WILL PROMOTE THE MOST EFFICIENT ADMINISTRATION OF THESE RELATED ACTIONS

Consolidation is the most efficient path forward. Under similar circumstances, this Court has observed that "it would be unwieldy and unnecessary for both [the Court] and the parties to attempt to maintain . . . two [related] cases separately—issuing different scheduling orders, hearing separate motions, and attempting to avoid inconsistent

results." *Arctic Cat, Inc. v. Polaris Indus. Inc.*, No. CIV. 13-3579 JRT/FLN, 2014 WL 5325361, at *16 (D. Minn. Oct. 20, 2014) (Tunheim, J.). The Court exercised "its discretion to consolidate [those] related actions in the interests of judicial economy and maintenance of consistent results." *Id.* at *1. The Court should exercise that same discretion here. Consolidation of these related cases will serve the interests of judicial economy, maintain consistent results, and reduce the burden on the Court of the administration of these cases.

The MDL DAPs' preferred approach—coordination—is typically reserved for scenarios where consolidation is not feasible; *e.g.*, where the related proceedings are pending in federal and state court. *See, e.g.*, *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) (noting that "all federal cases in the MDL" were consolidated, and the "MDL and state court cases" were coordinated); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Frasch*, 751 F. Supp. 1075, 1080 (S.D.N.Y. 1990) (federal and state cases were coordinated because they "cannot be consolidated"). But consolidation here is feasible as all of the related cases are before this Court. The MDL Panel expressly allowed for consolidation in its original ruling (Case No. 21-md-02998, ECF No. 1), and the Manual for Complex Litigation explains in Section 11.631 that "Class actions may be consolidated with cases brought by opt-outs or other individual plaintiffs." Consolidation also presents significantly greater benefits than coordination, as described further below.

4

### A.  Consolidation Will Prevent Multiple Competing Orders

Consolidating the cases will limit inefficient and costly divergences in the case management and other orders in a way that coordination will not.  Absent consolidation, plaintiffs in either action can argue that orders in the other action do not pertain to them.  We saw this when the MDL DAPs attempted to renegotiate the discovery limits from the prior Case Management Order and insisted on a different ESI Protocol, contrary to this Court's admonition that the parties should submit a case management order that "closely resembl[ed] the order in the existing case[,]" (July 14, 2021 Hr'g Tr. at 30:2-4), and despite the MDL DAPs' stated desire to "coordinate[] significantly with the existing action." (*Id.* at 6:1-2.)  The MDL DAPs have also indicated their intent to continue this practice, stating that "the MDL should have its own orders governing the case[.]"  (Case No. 21-md-02998, ECF No. 4, at 3.)  As long as the cases are separate, not only will Defendants be forced to repeatedly negotiate (or renegotiate) agreements on the same topics, but the Court will likely be asked to decide disputes over topics that had been resolved in the pre-existing case, a process that will unnecessarily burden the Court and potentially yield at least slightly different orders governing the same subject matter.  This is a recipe for ongoing confusion and needless complexity in an already complex litigation and will create unwarranted additional burdens on the Court.

The MDL DAPs have attempted to allay this concern by volunteering to use existing orders "as models for the MDL."  (Case No. 21-md-02998, ECF No. 4, at 3.)  That is cold comfort, however, as they have already shown their willingness to depart from those orders.  As noted above, the MDL DAPs insisted on reopening the previously-

settled ESI Protocol and case management order.[2]  The parties had multiple meet and confers, each attended by more than a dozen attorneys, the result of which was nearly twenty pages of briefing on the parties' dueling case management proposals.[3]  These negotiations also resulted in a new ESI Protocol that—at the MDL DAPs' insistence—contains some minor differences from the ESI Protocol in the existing cases, requiring Defendants to manage yet another layer of complexity.

If the cases remain separate, this same inefficient and costly process will likely be repeated when the parties negotiate deposition protocols, subsequent scheduling orders, and the like.  At every turn, unwarranted minor departures between the separate cases have the potential to unnecessarily burden the Court and complicate the parties' (and non-parties') efforts to track, refer to, and comply with applicable limitations.  Moreover, the parties and non-parties will have to continually manage the risk that agreements struck in one set of cases might not be honored in the other cases, and all parties will have to consider the risk that changes to the schedule or the scope of discovery might

---

[2] The parties in the pre-existing case had already extensively negotiated the settled ESI protocol: meeting and conferring multiple times over several months, providing multiple status updates to the Court, arguing disputed provisions before the Court, and incorporating rulings from the Court on areas of dispute.  (*See* Case No. 18-cv-01776, ECF No. 264.)

[3] The uncertainty and confusion regarding the role of Class Plaintiffs and the non-MDL DAPs in these negotiations predictably created a need for the Court to inquire about the process.  Class Plaintiffs are not parties to the MDL cases.  After the MDL DAPs and the Defendants submitted their competing proposals, the Court sent an email inquiring as to the involvement of the Class Plaintiffs in the talks and the submission.  Upon learning that the Class Plaintiffs had not been involved, the Court ordered that they participate in the discussions so they could voice any concern about how the MDL case schedule might affect the Class and non-MDL DAP cases.

prejudice the ability of the plaintiffs in the other cases (who are not party to those discussions) to meet their own deadlines.

### B. Consolidation Will Prevent Costly Divergences in Case Schedules

Consolidating the cases will also ensure that deadlines proceed on the same track to the extent possible, with minor allowances where necessary or already agreed to. The MDL DAPs have already hinted that they may seek a different post-fact discovery schedule than the Class and non-MDL DAP cases. (Case No. 21-md-02998, ECF No. 4, at 9 (requesting a different schedule for merits expert discovery than the Class and non-MDL DAP cases)); *see also* July 14, 2021 Hr'g Tr. at 23:3-5 (counsel for MDL DAP Sysco advised the Court that "the wisest course is to have separate schedules because there may be things that affect the MDL that don't affect the other cases and vice versa.").) The MDL DAPs might also attempt to seek an early summary judgment briefing schedule to accompany their accelerated merits expert discovery schedule. If ordered, not only would that require the Court (and Defendants) to juggle multiple deadlines for the same case events, it would also require multiple rounds of merits expert discovery and briefing—first for the MDL DAPs on an accelerated schedule, and again for the Class and non-MDL DAP cases. Two rounds of merits expert discovery and briefing will unnecessarily complicate these proceedings and burden the Court and Defendants. Consolidating the cases and entering a uniform case management order for all parties would avoid those inefficiencies and limit the potential for future divergences.

### C. Consolidation Will Streamline the Docket

Consolidating the cases will eliminate a number of administrative burdens that coordination will require. Maintaining two separate dockets creates a number of avoidable administrative issues, because as long as the cases remain separate, existing orders in the Class and non-MDL DAP cases cannot automatically apply to the MDL DAPs. The MDL DAPs could also take the position that future orders in the Class and non-MDL DAP cases also do not apply to them unless they participate in the associated briefing. (*See* Case No. 21-md-02998, ECF No. 4, at 3 ("[O]rders in the *Preexisting Non-MDL Pork Cases* should not presumptively or automatically apply to the MDL given that . . . the MDL is a distinct proceeding. . . .").) Unless the MDL DAPs are willing to be bound by any pertinent orders in the Class and non-MDL DAP cases (and the Class and non-MDL DAPs are willing to be bound by orders in the MDL DAP cases), the close coordination that the MDL DAPs envision could require additional motion practice and duplicative docket entries just to keep the cases aligned.

Even for orders to which the MDL DAPs will agree to be bound without modification, the parties must expend resources to take existing orders, amend case numbers and signature blocks, and create new docket entries. Once such filings are docketed, the parties must take care to appropriately reference the applicable version of the substantively identical orders. The Protective Order is one such example. Although the MDL DAPs agreed not to alter the existing Protective Order (Case No. 18-cv-01776, ECF No. 212), the parties nonetheless had to generate a new one (Case No. 21-md-02998, ECF No. 18) and must hereinafter refer third parties and others producing

documents in the non-MDL cases to that docket entry if their productions are to be shared with the MDL DAPs, because the MDL DAPs are not part of the existing litigation.

### D. Consolidation Will Reduce a Variety of Other Unforeseen Procedural Issues

Finally, merely coordinating, rather than consolidating, is sure to result in myriad unforeseen issues as motion practice and orders continue to proliferate. The two Protective Orders highlight just one example of an avoidable complexity: the treatment of third party document productions. The MDL DAPs requested that the parties promptly transmit the documents and data produced by third parties to date. Defendants were preparing to produce the requested materials when they realized that the Protective Order governing the non-MDL cases (Case No. 18-cv-01776, ECF No. 212) permits disclosure only in connection with "this litigation." The Protective Order in the MDL cases contains a similar provision. (Case No. 21-md-02998, ECF No. 18.) Defendants therefore cannot share third party documents and data across non-MDL and MDL cases without running afoul of the Protective Orders, unless all affected third parties consent. But those consents would not be necessary if the cases were consolidated. If the cases remain separate, similar issues will likely arise again and again. Consolidation now will nip those issues in the bud. Simply put, it will be easier for the Court and the parties to manage one sprawling case than two sprawling cases.

## II. CONSOLIDATION WILL NOT PREJUDICE ANY PARTY

Despite their protestations, MDL DAPs will not be prejudiced by consolidation. Instead, the practical advantages of consolidation described above far outweigh "any

9

inconvenience, delay or expense that [consolidation] would cause" and will promote efficient resolution of these cases to the benefit of all parties. *Powell v. Nat'l Football League*, 764 F. Supp. 1351, 1359 (D. Minn. 1991). MDL DAPs have offered only the thinnest objections to consolidation, and whatever vague concerns they have can be disposed of with ease.[4]

First, MDL DAPs have argued that "no party asked [the JPML that] the existing non-MDL cases be included in the proposed MDL." (Case No. 21-md-02998, ECF No. 4, at 2.) That is disingenuous at best. In their brief to the JPML, the Defendants repeatedly asked that the new DAP cases be transferred to Minnesota and *consolidated* with all of the pre-existing pork antitrust cases: "These [efficiency] objectives can be achieved only by transferring the *Cheney* and *Sysco* Actions to the District of Minnesota and consolidating them with *In re Pork Antitrust Litigation*, No. 18-cv-1776, which is the collection of 15 cases pending before Chief Judge John R. Tunheim and Magistrate Judge Hildy Bowbeer." (Defendants' Resp. to Plaintiffs Sysco and Cheney Brothers' Joint Motion for Transfer of Related Actions Pursuant to 28 U.S.C. § 1407 for Consolidated Pretrial Proceedings, Case No. 21-md-02998, ECF No. 34, at 2; *see also id*. at 9, 13, 17, 20.) The MDL DAPs' argument also ignores both Rule 42 and this Court's inherent power to manage its docket "so as to achieve the orderly and expeditious

---

[4] The Class Plaintiffs are not prejudiced by consolidation either—they support it. (*See* July 14, 2021 Hr'g Tr. at 13:17-19 ("What the indirect purchasers ask is that the entire case be consolidated as an MDL"); *id.* at 10:23-12:11; s*ee also* Case No. 18-cv-01776, ECF No. 895.)

disposition of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (internal quotation marks and citations omitted). The JPML left the decision to this Court's discretion by transferring the MDL DAPs to this district "for coordinated *or consolidated* pretrial proceedings" (Case No. 21-md-02998, ECF No. 1 (emphasis added)). Finally, the MDL DAPs ignore that Defendants—or any party to the cases—can simply file a notice of tag-along action with the JPML.

Second, MDL DAPs have argued it is not fair to hold them to deals they did not strike. (Case No. 21-md-02998, ECF No. 4, at 3.) The reality, however, is that the operative case orders reflect substantial negotiation between Defendants, Class Plaintiffs, and non-MDL DAPs. The MDL DAPs' interests do not differ from the existing Plaintiffs' in any meaningful way such that consolidation would deprive them of due process—nor can the MDL DAPs claim they do. And whatever minor inconvenience MDL DAPs might suffer if they are required to comply with certain existing orders rather than negotiating their own, consolidation will not deprive the MDL DAPs of a full and fair opportunity to pursue their own claims. Indeed, it is well accepted that class plaintiffs can adequately represent during the course of discovery the interests of non-parties who may later opt out, *see, e.g.*, *In re CenturyLink Sales Practices & Sec. Litig.*, MDL No. 17-2795 MJD/KMM, 2020 WL 869980, at *7 (D. Minn. Feb. 21, 2020) (quoting *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940))—nor have MDL DAPs offered any meaningful arguments that the Class Plaintiffs cannot adequately negotiate the scope

11

of discovery or the case schedule.[5]  Thus, any possible prejudice to the MDL DAPs that may result if they are prevented from negotiating slightly different orders is far outweighed by the confusion, inconvenience and additional costs from managing and enforcing multiple orders applicable to different Plaintiffs covering the same subject.  *See Arctic Cat*, 2014 WL 5325361, at *16; *see also supra*, Section I.A.  And MDL DAPs will of course be present to participate in the negotiation of any stipulations going forward.

Third, MDL DAPs have emphasized their right to pursue their own claims, which may differ from those found in the Class Plaintiffs' complaints.  But to the extent the MDL cases present distinct issues, consolidation will not prevent the MDL DAPs from pursuing their own unique legal theories or factual allegations.  Defendants are not attempting to use consolidation to justify rejecting any case-specific requests from the MDL DAPs.  While their position even if the cases are merely coordinated is that the MDL DAPs' allegations likely do not warrant additional, unique discovery, Defendants will consider in good faith any requests made, whether the cases are coordinated or consolidated.

Fourth, consolidation is not likely to cause any significant delay in the resolution of the MDL DAP cases.  Indeed, it will do quite the opposite; consolidation will keep these cases moving.  MDL DAPs filed their complaints three years after the Class Plaintiffs, and there are new cases being filed nearly every week.  By the time class

---

[5] Defendants make no argument with respect to adequacy for purposes of class certification.

certification briefing occurs—in just six months—the MDL DAPs will likely still be in the process of serving disclosures, negotiating the scope of their discovery obligations, collecting and producing documents, and responding to written discovery. *See Miller Brewing Co. v. Meal Co.*, 177 F.R.D. 642, 643-44 (E.D. Wis. 1998) (consolidating cases in different phases of litigation).[6] While the MDL DAPs have hinted that they would like an accelerated merits schedule—which would be inefficient for the reasons described above—the MDL DAPs late arrival into the litigation suggests that the MDL cases will lag behind the non-MDL cases to some extent. Consolidation will not materially change that.

Finally, if the MDL DAPs are worried that consolidation will affect their ability to try their cases in their chosen forum, that concern is unfounded. "Cases consolidated for MDL pretrial proceedings ordinarily retain their separate identities[,]" *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 406 (2015), and consolidation will not affect the MDL DAPs' right to have their respective complaints remanded to the transferor district for trial. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998) (Section 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course").

---

[6] New DAPs could be filing complaints while class certification briefing is ongoing and beyond. The MDL DAPs oppose Defendants' proposed January 10, 2022 deadline for new DAPs to file complaints or forego the automatic right to seek new discovery—a deadline intended to incentivize prompt decision making. As counsel for DPPs emphasized during the July 14 hearing, "this is a moving train, and folks need to hop on it." (July 14, 2021 Hr'g Tr. at 10:24.)

13

## CONCLUSION

The benefits of consolidation for judicial economy far outweigh the potential for inconvenience, delay, expense, or prejudice. For the foregoing reasons, Defendants request that the Court consolidate the MDL cases with the existing Class and non-MDL DAP cases for pretrial and administrative purposes.

*[Signature pages follow]*

Dated: August 19, 2021

Respectfully submitted,

By: /s/ *Rachel J. Adcox*
Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
Lindsey Strang Aberg (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
radcox@axinn.com
trider@axinn.com
lstrang@axinn.com

Jarod Taylor (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8109
jtaylor@axinn.com

Kail Jethmalani (*pro hac vice* pending)
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200
kjethmalani@axinn.com

David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

***Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.***

15

*/s/ Mark L. Johnson*
Mark L. Johnson (#0345520)
Virginia R. McCalmont (#0399496)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
bkrueger@greeneespel.com
vmccalmont@greeneespel.com

Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com

**Counsel for Clemens Food Group, LLC and The Clemens Family Corporation**

*/s/ Richard A. Duncan*
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com
bryan.washburn@faegredrinker.com

**Counsel for Hormel Foods Corporation**

/s/ *Peter H. Walsh*
Peter H. Walsh (# 388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
T. (612) 402-3000
F. (612) 402-3001
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square 555 Thirteenth Street,
NW Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

**Counsel for Agri Stats, Inc.**

/s/ *Donald G. Heeman*
Donald G. Heeman (#286023)
Jessica J. Nelson (#347358)
Randi J. Winter (#391354)
SPENCER FANE LLP
150 South Fifth Street, Suite 1900
Minneapolis, MN 55402-4206
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
David B. Adler (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
davidadler@quinnemanuel.com

**Counsel for JBS USA Food Company**

*/s/ William L. Greene*
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
William D. Thomson (#0396743)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
william.thomson@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

**Counsel for Seaboard Foods LLC**

*/s/ John A. Cotter*
John A. Cotter (134296)
John A. Kvinge (0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN &CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3370
brobison@gibsondunn.com

**Counsel for Smithfield Foods, Inc.**

*/s/ Christopher A. Smith*
Aaron Chapin (#6292540)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
aaron.chapin@huschblackwell.com

Christopher A. Smith (*pro hac vice*)
Jason Husgen (*pro hac vice*)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
chris.smith@huschblackwell.com
jason.husgen@huschblackwell.com

Tessa K. Jacob (*pro hac vice*)
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
tessa.jacob@huschblackwell.com

**Counsel for Triumph Foods, LLC**