# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA

 ---------------------------------------------------------------
                                  )
  In Re:  Pork Antitrust           )   File No. 18CV1776
  Litigation                       )   19CV1578, 19CV2723
                                   )        21CV2998
                                   )        (JRT/HB)
                                   )
                                   )
                                   )   Minneapolis, Minnesota
                                   )   July 14, 2021
                                   )   10:08 A.M.
                                   )
 ---------------------------------------------------------------

        BEFORE THE HONORABLE CHIEF JUDGE JOHN R. TUNHEIM
              UNITED STATES DISTRICT COURT JUDGE
             (STATUS CONFERENCE VIA VIDEO CONFERENCE)
```

APPEARANCES

| | |
|---|---|
| For Direct Purchaser Plaintiffs: | Lockridge Grindal Nauen PLLP<br>BRIAN D. CLARK, ESQ.<br>JOSEPH BRUCKNER, ESQ.<br>100 Washington Avenue South<br>Suite 2200<br>Minneapolis, MN 55401 |
| | Pearson Simon & Warshaw<br>BOBBY POUYA, ESQ.<br>800 LaSalle Avenue<br>Suite 2150<br>Minneapolis, MN 55402 |
| | Gustafson Gluek PLLC<br>DANIEL C. HEDLUND, ESQ.<br>120 South Sixth Street<br>Suite 2600<br>Minneapolis, MN 55402 |
| On behalf of the Consumer Indirect Plaintiffs: | Hagens Berman Sobol Shapiro<br>SHANA E. SCARLETT, ESQ.<br>715 Hearst Avenue<br>Suite 202<br>Berkeley, CA 94710 |

1  tell me.  Who is going to speak for the plaintiffs?  Let's
2  hear from you first on what needs to be done right away.
3              MR. KAPLAN:  From the MDL plaintiffs or the class
4  plaintiffs?
5              THE COURT:  Let's go MDL first, please.
6              MR. KAPLAN:  It's Robert Kaplan.  We've exchanged
7  briefing, and if we could have a couple of weeks, I think
8  we could probably agree on most of the dates and the
9  procedures and submit hopefully an agreed upon order to
10 Your Honor.  If not, we would note whatever differences
11 there are.
12             THE COURT:  Okay.  All right.  Anyone else in the
13 MDL plaintiffs wish to say anything?
14             MR. GANT:  This is Scott Gant.  I represent
15 Cisco, and I represent some other plaintiffs that will be
16 filing.  As Your Honor may have noted, there are over 80
17 opt-outs from the class action.  There was an opt-out
18 notice recently filed, so I'm filing some additional cases.
19 I know others are coming.
20             And we've proposed a schedule to the defendants
21 to attempt to accommodate the expected incoming cases over
22 the next weeks and months.  So as Mr. Kaplan said, we would
23 appreciate a couple of weeks to confer with the defendants.
24 One of the issues about which we have disagreed is whether
25 the MDL is going to be separate and coordinated, separate

1  formally but coordinated significantly with the existing
2  action, which in our view is reflected in our papers.
3              The defendants seem to have a view that these
4  matters should be collapsed, which I don't think was what
5  the JPML did in its orders, but once we have that matter
6  settled, I agree with Mr. Kaplan.  It's just a matter of
7  weeks and hopefully less for us to submit to you a proposed
8  schedule for the MDL, which will be significantly
9  coordinated.
10             And you will note, Your Honor, we proposed the
11 same fact discovery cutoff for the MDL as exists in the
12 current matter.
13             THE COURT:  Okay.  Do you have any idea,
14 Mr. Gant, about the number of cases coming, or is that
15 impossible to know?
16             MR. GANT:  I will give you my best faith
17 estimate, and you may know, Your Honor, the *Broiler Chicken*
18 matter in Chicago is ongoing.  It's similar in some
19 respects.  Many of the same counsel who appear for both
20 plaintiffs and defendants are in this case and that case.
21             Many of the same entities that have opted out
22 have filed their own cases in Illinois, which are over 150.
23 So my best guess, Your Honor, is that we are going to end
24 with several dozen, but I can't be more precise than that.
25             I think because in *Chicken* the opt-outs came over

1  their structure data in January, with our class
2  certification motions due in February.
3          That simply leaves us not enough time to use that
4  data to perform the pass-through regressions necessary for
5  a class cert motion.  In addition, they also ask that,
6  sorry, by their structuring of the MDL with the non MDL
7  portion being the class plaintiffs, we'll also be forced to
8  issue nonparty subpoenas to participate in any deposition
9  of the DAP representatives.
10         In other MDLs, the DAPs have declined to allow
11 the indirect purchasers to ask questions that relate to
12 pass-through and have argued that we have to issue nonparty
13 subpoenas for every deposition despite the fact that all of
14 us are participating in most of the depositions, and this
15 has created another substantial hurdle for the indirect
16 purchaser classes.
17         So for that reason one of the things that we're
18 asking today is that all of these cases are consolidated
19 under the one MDL caption, and I would just point out that
20 the consumer indirect purchaser action was the one first
21 filed.  We were the ones that filed in June 2018, and we
22 are the lowest numbered case.
23         So for us to be excluded from participating in
24 these late coming DAP actions is somewhat difficult for us
25 to understand why the DAPs believe this is a reasonable

1   proposal, and I would just like to directly address as
2   well, as my colleague Mr. Clark did, their request that the
3   DAPs be able to lead half the depositions.
4            The direct action plaintiffs and the opt-outs
5   have much smaller cases that they attempt to prove.  They
6   have very little interest in proving a conspiracy that
7   impacts the entire market.  They usually don't have a lot
8   of interest in demonstrating common impact.
9            Many of their requests in other large MDLs relate
10  to their individual salesperson that negotiated with the
11  defendant and on the other side the individual defendant
12  employee that negotiated with them.  This is in direct
13  contrast to what the class is trying to prove, which is a
14  market mechanism and a broader impact at class
15  certification.
16           To allow a DAP to take the lead on half the
17  depositions would gravely prejudice the plaintiff classes
18  from being able to demonstrate what they need to for class
19  certification.  In addition, the DAPs are hostile and in
20  conflict with the indirect purchasers when it relates to
21  pass-through.
22           So allowing these entities to step in and take
23  the lead on half of the depositions where they're directly
24  in conflict to what the indirect purchaser classes are
25  trying to show in terms of pass-through through the

1                In the *Chicken* case, the direct action plaintiffs
2       now represent the majority of the commerce compared with
3       the direct class, and I expect that likely will be the case
4       here, too, as often is the case where there are a large of
5       number of opt-outs.  So our clients have exercised their
6       due process rights to file their own cases.
7                Rule 23 and due process contemplate that direct
8       action plaintiffs can file their cases at the time that
9       they believe is appropriate, and that's what we did here.
10      There is no game playing or effort to any -- I think
11      Ms. Scarlett used the word "pretense."  There is no
12      pretense, no game playing.
13               We exercised the rights that we have.  We don't
14      want to be subordinated to a second class status role.  Our
15      clients have significant interests.  We're among the
16      largest purchasers, and we are and were fully prepared to
17      litigate this out.
18               As you know, Your Honor, we asked to have this
19      case proceed in a different forum, not because we don't
20      want to be under your stewardship, and we're happy to be in
21      front of you, Your Honor, but in part for the reasons that
22      you're seeing today, which is that the classes want to
23      relegate us to a subordinate status.
24               We want an equal status.  We want to be partners
25      with the classes in prosecuting the cases.  Our interests

1  are substantially aligned.  Ms. Scarlett's suggestion that
2  we're somehow adverse to the indirect classes I don't think
3  is accurate, but if she were right, then as a matter of
4  logic her class is also adverse to the interests of the
5  classes represented by Mr. Clark, Mr. Pouya and
6  Mr. Bruckner, because the class representatives are also
7  direct purchasers.
8              So in terms of the structure of the case, we're
9  in the same position as they are vis-à-vis Ms. Scarlett.
10 We have been able to work out in the *Chicken* case many of
11 the issues that Ms. Scarlett referenced, like whether
12 examinations can be conducted by the indirect classes but
13 witnesses from DAPs.
14             We ended up entering into a stipulation there.
15 We're happy to try and do that here.  We're happy to try
16 and come up with solutions, as we did in the *Chicken* case,
17 through stipulations for document productions.  Whether
18 this is an MDL or not doesn't change the fact that the
19 relationship between Ms. Scarlett's clients and the direct
20 action plaintiffs were not parties to the same case.
21             Whether you consolidate or coordinate or whatever
22 you do, we are third parties vis-a-vis the cases brought by
23 the indirect classes against defendants, and the proper
24 mechanism for obtaining discovery we believe is subpoenas,
25 but we're happy to discuss that.

1   file in multiple dockets, but I do think it's important to
2   continue to recognize that the MDL is separate, and there
3   may be -- I think the wisest course is to have separate
4   schedules because there may be things that affect the MDL
5   that don't affect the other cases and vice versa.
6           So I think having separate schedules, even if
7   they're entered under the same ECF number, makes some
8   sense, but I'm sure Your Honor will have even better ideas
9   than I do about the precise mechanics.  The view of the
10  DAPs, and I speak for everyone who has filed on this point,
11  is that we should have significant amount of coordination
12  but not complete consolidation, Your Honor.
13          THE COURT:  Okay.  Anyone else from the
14  plaintiffs' side before I turn to defendants?
15          Okay.  All right.  Who is speaking first for
16  defendants?
17          MR. ROBISON:  Good morning, Your Honor.  This is
18  Brian Robison.  I'm with Gibson, Dunn & Crutcher, and we
19  represent Smithfield Foods, and I will be representing the
20  collective group of defendants' position here today.
21          The defendants' calling card for how we integrate
22  these new plaintiffs is efficiency.  We want to be
23  efficient in how we're managing the existing cases and how
24  we integrate the new DAPs.  A corollary to that is, we want
25  to eliminate duplication.  We don't want to have to keep

1          MR. GANT:  Will do.  Thank you, Your Honor.
2          THE COURT:  And we'll work at making sure we have
3  an order relative to a single filing for everything.  All
4  right?
5          MR. KAPLAN:  Thank you, Your Honor.
6          THE COURT:  Okay.  Thank you, everyone.
7                    **(Court was adjourned.)**
8                    *       *       *
9          I, Kristine Mousseau, certify that the foregoing
10  is a correct transcript from the record of proceedings in
11  the above-entitled matter.
12
13
14
15     Certified by:  s/  *Kristine Mousseau, CRR-RPR*
                        Kristine Mousseau, CRR-RPR
16