# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

IN RE PORK ANTITRUST
LITIGATION

Case No. 18-cv-1776 (JRT/HB)

This Document Relates To:

COMMERCIAL AND
INSTITUTIONAL INDIRECT
PURCHASER PLAINTIFF ACTION

## DECLARATION OF SHAWN M. RAITER IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, SET ASIDE FOR FUTURE LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS

I, Shawn M. Raiter, declare as follows:

1. I am a partner at Larson • King, LLP in St. Paul, Minnesota, have practiced law since 1993, and have been appointed lead MDL counsel or class counsel in numerous litigations. I submit this declaration in support of the Commercial and Institutional Indirect Purchaser Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, Set Aside for Future Expenses, and Class Representative Service Awards.

2. I am one of the Interim Co-Lead Class Counsel appointed by the Court to represent the putative litigation and provisionally certified settlement class of commercial and institutional indirect purchaser plaintiffs ("CIIPPs") in this litigation.

3. The law firms representing the CIIPPs have worked on this litigation on a contingent basis since 2018. My law firm, and the law firms representing the CIIPPs under the direction of Interim Co-Lead Counsel for the CIIPPs, have done so without any guarantee of being paid for their time or being reimbursed for the considerable expenses they devoted to pursuing this case and the settlement currently before the Court.

4. Antitrust class actions are challenging, and this is a decidedly complex litigation. There are 12 CIIPP class representatives who are pursuing money damage claims in 27 states and the District of Columbia. The CIIPP representative plaintiffs are: Sandee's Bakery; Francis T. Enterprises d/b/a Erbert & Gerbert's; Joe Lopez, d/b/a Joe's Steak and Leaf; Longhorn's Steakhouse; Betty's Eat Shop; The Grady Corporation; Mcmjoynt LLC d/b/a The Breakfast Joynt; Edley's Restaurant Group, LLC; Basil Mt. Pleasant, LLC; Basil Charlotte, Inc.; Farah's Courtyard Deli, Inc.; and Tri-Ten LLC.

5. . The Defendants are large national and international companies with the resources to hire some of the best defense lawyers in the country. The alleged conspiratorial conduct spans more than a decade and involves many companies and witnesses.

6. Since 2018, some of the CIIPPs' attorneys have worked nearly full-time on this litigation. It has been and will continue to be a huge undertaking. To-date, our activities have included:

- Research and investigation of the pork industry and the sale of pork products through commercial and foodservice distribution channels;

- Collecting information from a variety of sources, including industry sources and evidence produced by Defendants and third-parties;

- Extensive research on the various aspects of the antitrust and other laws of nearly 30 states and the District of Columbia, and drafting and editing the initial and amended complaints;

- Analyzed and prepared liability and damages claims against Defendants;

- Collecting and analyzing information and discovery including voluminous discovery produced by the Defendants and third parties, such as food service distributors;

- Consultation with economic and other liability and damages experts;

- Drafting and negotiating key case-management documents, protocols, and stipulations;

- Review, in conjunction with the other plaintiff groups, hundreds of thousands of pages of documents produced by the Defendants and third parties;

- Drafting, preparing for, and arguing oppositions to motions to dismiss;

- Responding to discovery and other information sought by the Defendants from the CIIPPs;

- Negotiating discovery issues with defense counsel including numerous meet-and-confer sessions, each of which required substantial preparation;

- Preparing correspondence with respect to timing, stipulations, and case planning issues;

- Corresponding and attending calls with CIIPP co-counsel regarding client discovery and trial preparation issues;

- Obtaining and analyzing documents and data from class representatives;

- Locating, review, redaction, and production of documents from class representatives;

- Exchanging information and coordinating with end-payor, direct purchaser, and individual action counsel regarding various issues;

- Attending calls and meetings to help formulate subpoenas and discovery from third-parties;

- Attending status conferences with the Court;

- Performing all the tasks necessary to reach this settlement, including formulating demands, negotiating, mediation, in-person meetings, exchange of drafts, preparing escrow agreements;

- Drafting settlement agreement, preliminary approval motion, and class notices; and

- Drafting notices, claim forms, and other settlement-related documents and consult with the claims administrator.

7. Defendants have asked the class representative CIIPPs to produce documents and electronic data relating to numerous aspects of their businesses. They have asked for purchase and transactional data, emails, organizational information, and numerous other topics. Defendants have sought documents and data located on computers, databases, and other storage devices. Counsel for the CIIPPs have had to negotiate these demands with Defendants. Discovery continues in this case and the non-settling Defendants will continue to pursue discovery from the CIIPPs. Depositions have not yet been conducted but will continue for months once started.

8. The representative plaintiffs have devoted time and attention to this litigation and have repeatedly conferred with counsel for the CIIPPs, assisted counsel in numerous ways, and opened their business operations and records up for review and scrutiny by Defendants. The representative plaintiffs understand that they may need to provide deposition or trial testimony and are committed to representing both their own interests and the interests of similarly situated businesses and individuals.

9. The settlement with the JBS Defendants provides $12.75 million for the benefit of eligible CIIPPs. This is an all-cash settlement with no reversion to the JBS Defendants or any third parties. The settlement includes terms requiring the JBS Defendants

to provide certain cooperation to the CIIPPs, which counsel for the CIIPPs believe will provide valuable assistance in their prosecution of claims against the non-settling Defendants.

10. The settlement was reached after years of litigation and was negotiated by experienced counsel on both sides. The settlement was reached through adversarial, arms-length negotiations. Counsel for the CIIPPs had transactional data, documents produced in discovery, assistance from experts, and a strong understanding the the strengths and weaknesses of the claims and defenses. CIIPPs and the JBS Defendants exchanged information and had in-person and written communications about settlement. They also engaged a mediator, Professor Eric Green, who has helped settle many high-profile class action cases. Professor Green conducted several mediation sessions and counsel on both sides were well prepared to represent the interests of their clients.

11. After several mediation sessions, the parties reached agreement on the core terms of the settlement but then continued to negotiate other components. They exchanged proposals and drafts of the settlement agreement before they reached agreement on all terms.

12. The class notices published for this settlement advised class members that counsel would seek: (a) up to one-third of the settlement as attorneys' fees, (b) reimbursement of up to $350,000.00 in past expenses, (c) up to eight percent of the settlement be set aside for future litigation expenses, and (d) class representative service awards of $7,500.00 for the representative plaintiffs.

13. As of the date of this declaration, no class member has objected to the settlement or opted out.

14. The Court is familiar with the complexity of this litigation and of antitrust litigation in general. Counsel for the CIIPPs have already dedicated thousands of attorney and paralegal hours to this case. Interim Co–Lead Counsel for the CIIPPs coordinated the efforts of counsel representing the CIIPPs to maximize efficiency, minimize duplication of effort, and minimize unnecessary or duplicative billing. Interim Co-Lead Counsel for the CIIPPs also monitored the work to avoid unauthorized or unnecessary work.

15. Interim Co-Lead Counsel for the CIIPPs directed the firms who would perform common benefit work for the CIIPPs to keep detailed time and expense records and provided counsel with instructions about what time would be considered for reimbursement and how time and expense requests must be recorded. Interim Co-Lead Counsel for the CIIPPs monitored the work of the firms working for the CIIPPs to ensure efficiency and to avoid unauthorized and unnecessary work.

16. Interim Co-Lead Counsel for the CIIPPs and the firms working under their direction have devoted substantial time on this litigation, which they could have spent working on other matters. They have invested this time for three years and have not been paid for their work.

17. Counsel for the CIIPPs have also invested their own money to pay for unreimbursed litigation expenses to achieve the settlement before the Court. These expenses included court fees, service of process fees, expert fees, costs of gathering and producing documents and data, maintaining a database for the documents produced Defendants in

discovery, computerized legal and factual research, mediation costs, travel expenses, photocopying, long distance telephone and facsimile charges, postage and delivery expenses, and filing fees. These costs included the fees charged by experts for data gathering and production, economic analysis, and the cost of document review and hosting for the ever-increasing volume of documents and data produced in the litigation. These expenses were paid by CIIPPs' counsel, with no guarantee they would ultimately be recovered.

18. Interim Co-Lead Counsel for the CIIPPs also issued assessments to the firms working for the CIIPPs to establish a fund that would be used to pay certain large expenses. My law firm has maintained that fund and has recorded and documented the litigation expenses paid out of that fund. A total of **$190,142.16** in expenses has been paid from that fund, primaily for expert fees and data gathering, preparation, production, and hosting.

19. Counsel for the CIIPPs have advanced and additional **$50,839.17** in unreimbursed litigation costs. These are reasonable litigation costs that were incurred in this case for the benefit of the settlement class members. Current invoices from the notice and claim administrator for the development, implementation, and delivery of the notice plan for the settlement before the Court total **$97,870.58**. Interim Co-Lead Counsel for the CIIPPs therefore request an award of **$338,851.91** for past, unreimbursed expenses.

20. The size and complexity of this litigation requires the expenditure of significant expenses for scanning and preparation of documents for database entry, document review and database hosting of those documents, and extensive economic expert analysis. As the case progresses to class certification, the expert and other expenses will increase dramatically. Experts in antitrust cases typically create economic and damage

7

models that describe the mechanisms and impact of the anti-competitive behavior at issue. In this litigation, counsel for the CIIPPs expect that the work by their experts will cost more than a million dollars.

21. In addition, ongoing expenses related to the Plaintiffs' processing and hosting of hundreds of thousands of pages of documents are a significant expense, for which the CIIPPs' share alone will be substantial. CIIPs' counsel also maintains their own database or documents gathered and produced in the case. And, if the settlement is granted final approval, the cost to administer claims from class members is expected to total several hundred thousand dollars.

22. Interim Co-Lead Counsel for the CIIPPs request that the Court authorize them to set aside eight percent of the current settlement proceeds **($1,020,000.00**) to be used for future litigation expenses in pursuit of the claims against the non-settling Defendants. Having this money available to help adequately fund the litigation against the non-settling Defendants will maximize the likelihood of success for the CIIPPs.

23. The schedule attached to this declaration as Exhibit A, and incorporated herein, is a summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation through the end of July 2021. The lodestar calculation is based on my firm's current billing rates for antitrust class action litigation. Exhibit A was prepared from contemporaneous time records regularly prepared and maintained by my firm. The hourly rates for my firm's partners, attorneys, and professional support staff included in Exhibit A are the customary hourly rates charged for their services in similar complex litigation. In addition, my firm has submitted fee petitions in

other cases that have reported hourly rates at amounts comparable to those sought here, and courts have approved awards of attorneys' fees in such cases.

24. The total number of hours reasonably expended on this litigation by my firm from inception through July 31, 2021 is 2,312.50. The total lodestar for my firm at current rates is $1,078,550.00. Expense items are billed separately and are not duplicated in my firm's lodestar.

25. The expenses my firm incurred in litigating this case are reflected in the records of my firm. These records are prepared from expense vouchers, receipts, check records, and other source materials and accurately reflect the expenses incurred.

26. My firm incurred **$10,431.85** in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. A summary of those expenses by category is attached as Exhibit B. Assessments my firm paid to a litigation expense fund for this case are not included in Exhibit B and are addressed separately in this declaration.

27. The time records submitted to Interim Co-Lead Counsel for the CIIPPs by Larson • King, LLP; Cuneo Gilbert & LaDuca, LLP; Zimmerman Reed LLP; Tostrud Law Group, PC; Barrett Law Group; and Bozeman Law Firm, PA demonstrate that counsel for the CIIPPs have worked for nearly three years and devoted **5,889.3** attorney hours and **1,523.2** hours for legal assistants to this litigation. Applying the rates customarily charged by those attorneys and legal professionals to the hours expended yields a lodestar of **$4,692,051.00** (through July 31, 2021).

28. The table below provides an aggregated summary of the lodestar of counsel for the CIIPPs through July 30, 2021:

| Lodestar Using Customary CIIPPs Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Number of Hours** | **Lodestar** |
| Partner | 4601.1 | $3,708,215.50 |
| Associate | 1288.2 | $663,623.00 |
| Paralegal | 1511.4 | $317,322.50 |
| Law Clerk | 11.8 | $2,890.00 |
| **Total** | **7,412.50** | **$4,692,051.00** |

29.     Interim Co-Lead Counsel for the CIIPPs respectfully request a fee award equal to one-third of the JBS settlement, after deducting the fund for future litigation expenses and the cost of class notice and claims administration to-date. That calculation is: **$12,750,000.00 – $97,870.58 – $1,020,000.00 = $11,632,129.40 / 3 = $3,877,376.47**.

30.     The **$3,877,376.47** fee award Interim Co-Lead Counsel for the CIIPPs respectfully seek represents a **negative .82 multiplier** of the the current lodestar, using counsel's customary rates. That multiplier will become a larger negative number as counsel for the CIIPPs continue to work to conclude this settlement and process claims.

31.     Interim Co-Lead Counsel for the CIIPPs believe an award of $7,500.00 to each of the following businesses is warranted for their willingness to serve as class representatives and to compensate them for their service in this case, without which the settlement with the JBS Defendants would not have been possible: Sandee's Bakery; Francis T. Enterprises d/b/a Erbert & Gerbert's; Joe Lopez, d/b/a Joe's Steak and Leaf; Longhorn's Steakhouse; Betty's Eat Shop; The Grady Corporation; Mcmjoynt LLC d/b/a The Breakfast Joynt; Edley's Restaurant Group, LLC; Basil Mt. Pleasant, LLC; Basil Charlotte, Inc.; Farah's Courtyard Deli, Inc.; and Tri-Ten LLC.

I declare under pentalty of perjury that the foregoing is true and correct.

Executed this the 28th day of August 2021 in St. Paul, Minnesota.

*/s/ Shawn M. Raiter*
Shawn M. Raiter
