# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

*IN RE PORK ANTITRUST LITIGATION*    §        Case No. 0:18-cv-01776-JRT-HB

This Document Relates To:

ALL COMMERICAL AND
INSTITUTIONAL INDIRECT
PURCHASER PLAINTIFF ACTIONS

## NON-PARTY AFFILIATED FOODS' MEMORANDUM OF LAW IN OPPOSITION TO COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH <u>SUBPOENA DIRECTED TO AFFILIATED FOODS, INC.</u>

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  SUMMARY OF RESPONSE ............................................................................. 1

III.  ARGUMENT AND AUTHORITIES ................................................................. 2

    A.  This court does not have personal jurisdiction over non-party Affiliated Foods, a Texas corporation, because it has no minimum contacts with Minnesota ......................... 2

    B.  This court does not have jurisdiction because its authority under Section 1407(b) applies only to depositions unless the compliance court transfers jurisdiction to this court pursuant rule 45. ................................................................................................ 4

        1.  The plain language of Section 1407(b) grants this court extra-district jurisdiction only over depositions. ........................................................... 6

        2.  Rule 45(f) provides the appropriate method for this court obtaining jurisdiction, not Section 1407(b). .......................................................... 11

    C.  The court should deny Plaintiffs' motion to compel because the Subpoena Duces Tecum imposes an undue (indeed a crushing) burden on Affiliated Foods. .................... 14

    D.  The principles of comity require this court to deny Plaintiffs' motion ............................ 18

IV.  CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*,
  313 F.R.D. 39, 45 (N.D. Tex. 2015) ................................................................................ 15

*Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*,
  87 F.3d 413, 417–418 (10th Cir.1996) ............................................................................ 2

*Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*,
  474 U.S. 361, 373–74 (1986) ........................................................................................... 8

*Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1749, 207 L. Ed. 2d 218 (2020) .............. 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) .......................................................... 3

*Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) ....................................................................... 3

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) ................................................. 2

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ......................................................... 6

*In re 3M Combat Arms Earplug Products Liab. Litig.*,
  3:19-MD-2885, 2020 WL 8673437, at *2 (N.D. Fla. Nov. 18, 2020) ....................... passim

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
  11 CIV. 9175 LAK JLC, 2014 WL 2884726, at *1 (S.D.N.Y. June 26, 2014) ................ 9

*In re Corrugated Container Antitrust Litig.*, 662 F.2d 875, 881 (D.C. Cir. 1981) ................ 10, 11

*In re Monat Hair Care Products Mktg., Sales Practices, & Products Liab. Litig.*,
  2020 WL 1950463, at *2 ................................................................................................... 7

*In re Packaged Seafood Products Antitrust Litig.*, 15-MD-2670-JLS-MDD,
  2018 WL 454440, at *2 (S.D. Cal. Jan. 17, 2018) ............................................. 6, 9, 11, 13

*In re Showa Denko K.K. L-Tryptophan Products Liab. Litig.-II,*

    953 F.2d 162, 165 (4th Cir. 1992) ................................................................... 3

*In re Sunrise Sec. Litig.,* 130 F.R.D. 560, 585–86 (E.D. Pa. 1989) ................................ 9

*In re Welding Rod Products Liab. Litig.*, 406 F. Supp. 2d 1064, 1066 (N.D. Cal. 2005) ............. 9

*Leibovitch v. Islamic Republic of Iran*, 852 F.3d 687, 689 (7th Cir. 2017) .................................. 3

*Millennium TGA, Inc. v. Comcast Cable Communications LLC,*

    286 F.R.D. 8, 11 (D.D.C. 2012) ................................................................ 14, 18

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.,*

    238 F. Supp. 2d 270, 273 (D.D.C. 2002) ...................................................... 9, 10

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.,*

    444 F.3d 462, 469 n.4 (6th Cir. 2006) ...................................................... 7, 8, 10

*United States v. Rainey,* 757 F.3d 234, 245 (5th Cir. 2014) ........................................... 8

*VISX, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002) ......................................... 5, 7, 12

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) .................................. 14

**Statutes**

28 U.S.C. §1407 ....................................................................................................... 9

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ................................................................... 10

**Rules**

Fed. R. Civ. P. 26 ...................................................................................................... 18

Fed. R. Civ. P. 45 ............................................................................................... passim

## I.    INTRODUCTION

Non-party Affiliated Foods, Inc. ("Affiliated Foods") respectfully requests the court to deny Commercial and Institutional Indirect Purchaser Plaintiffs' ("Plaintiffs") motion to compel non-party Affiliated Foods, Inc. to produce the documents requested by Plaintiffs in a subpoena duces tecum served on Affiliated Foods on May 7, 2021 (the "Subpoena").

## II.   SUMMARY OF RESPONSE

First, the Court should deny Plaintiffs' Motion to Compel because Affiliated Foods does not have minimum contacts with Minnesota to make this Court's exercise of jurisdiction over it consistent with due process. Thus, the Court does not have in personam jurisdiction over Affiliated Foods.

Second, the Court should deny Plaintiffs' Motion to Compel because under Rule 45 of the Federal Rules of Civil Procedure ("Rule 45"), absent exceptional circumstances (not present here), only the Court in the place for compliance with a subpoena duces tecum has jurisdiction to grant a Motion to Compel compliance with a subpoena duces tecum directed to a non-party. Here the place for compliance is the Northern District of Texas and that Court has already assumed jurisdiction over this issue. *See* Declaration of David Mullin, Ex. A.[1]

Third, the Court should deny Plaintiffs' Motion to Compel because Affiliated Foods' Motion to Quash or for Protection from the Subpoena Duces Tecum and Plaintiffs Motion to Transfer that proceeding to this Court were already pending before the United

---

[1] Exhibits to the Declaration of David Mullin will be referred to as "Ex. [____]."

States District Court for the Northern District of Texas at the time the Plaintiffs decided to forum shop and file a Motion to Compel in this Court. *See* Mullin Decl., Ex. A and B.

Fourth, the Court should deny Plaintiffs' Motion to Compel because the Subpoena Duces Tecum places an Undue Burden on Affiliated Foods and compliance with the Subpoena Duces Tecum would cost Affiliated Foods over $1.2 million, require the hiring of 35 additional employees, and take at least a year.

## III.   ARGUMENT AND AUTHORITIES

### A.   This court does not have personal jurisdiction over non-party Affiliated Foods, a Texas corporation, because it has no minimum contacts with Minnesota.

Affiliated Foods is a Texas Corporation with a principal place of business in Amarillo, Texas. Affiliated Foods is a grocery wholesaler in the business of supplying grocery products to grocery stores and restaurants in Texas, Oklahoma, Kansas, New Mexico, Colorado, Arizona, and Arkansas. Affiliated Foods is not "at home" in the State of Minnesota. In fact, Affiliated Foods does no business in Minnesota much less business that is somehow connected to Plaintiffs' causes of action. *See* Mullin Decl., Ex. E, ¶ 3 (hereinafter, Ex. E referred to as "Piancino Aff. ¶ [___]").

A district court "must have personal jurisdiction over a non-party in order to compel it to comply with a valid discovery request under [Rule 45]." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014); *see also Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 417–418 (10th Cir.1996) (requiring that a Bahamian non-party have minimum contacts with the United States before holding it subject to an administrative agency subpoena); *Leibovitch v. Islamic*

*Republic of Iran*, 852 F.3d 687, 689 (7th Cir. 2017) (holding personal jurisdiction is relevant for enforcing subpoenas under Rule 45).

This court does not have general personal jurisdiction over Affiliated Foods because it is incorporated and has its principal place of business in Texas and cannot be considered at home in the State of Minnesota. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).

To exercise specific personal jurisdiction over a civil defendant, the defendant must have sufficient minimum contacts with the forum which is established when it purposefully directs its activities at the forum and litigation arises out of or relates to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted). If such minimum contacts exist, the court may exercise personal jurisdiction only if it "would comport with 'fair play and substantial justice.'" *Id.* at 476, (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Further, even though the goal of multi-district litigation is to promote just and efficient actions, Section 1407's authority for consolidating cases "is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred." *In re Showa Denko K.K. L-Tryptophan Products Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992) (interpreting 28 U.S.C. § 1407, hereinafter, the "MDL Statute" or "Section 1407).

Non-party Affiliated Foods has no contacts with the State of Minnesota—it has not purchased or sold any products in the state and has not otherwise conducted any business in or directed at the state. Piancino Aff. ¶ 3. Thus, Plaintiffs' motion to compel

should be denied because this court does not have personal jurisdiction over non-party

Affiliated Foods.

> **B.** **This court does not have jurisdiction because its authority under Section 1407(b) applies only to depositions unless the compliance court transfers jurisdiction to this court pursuant rule 45.**

After receiving the Subpoena on May 7, 2021, Affiliated Foods informed

Plaintiffs that the original place of compliance, Washington, D.C., was defective under

Rule 45. *See* Mullin Decl., Ex. C. The Plaintiffs subsequently agreed that the place of

compliance should be the Northern District of Texas. *Id*. Despite the plain requirement of

Rule 45 that a motion to compel be filed in the district where compliance is required, and

despite the fact that Affiliated Foods on July 7, 2021 moved the United States District

Court for the Northern District of Texas to quash the Subpoena as unduly burdensome,

and despite the fact that Plaintiffs have responded to Affiliated Foods' motion and filed

their own Motion to Transfer in the Northern District of Texas, the Plaintiffs' chose to

file a motion to compel compliance with the Subpoena in the District of Minnesota.

Rule 45 clearly requires the serving party move to compel compliance with a

subpoena duces tecum in "the district where compliance is required[.]" Fed. R. Civ. P.

45(d)(2)(B)(i). This court is not the district where compliance with the Subpoena Duces

Tecum is required. If this were any ordinary civil case in federal court, Plaintiffs' motion

to compel should be denied for lack of jurisdiction without any further discussion. *See In

re 3M Combat Arms Earplug Products Liab. Litig.*, 3:19-MD-2885, 2020 WL 8673437,

at *2 (N.D. Fla. Nov. 18, 2020) (citing *Collins v. Koch Foods, Inc.*, No. MC 119-008,

2019 WL 2520308, at *2 (S.D. Ga. June 18, 2019)).

Plaintiffs, however, argue that this court has jurisdiction over their motion to compel based on an expansive reading of the MDL Statute. Plaintiffs, and their cited authorities, ignore the plain language of the MDL Statute which provides "[t]he judge or judges to whom [MDL] actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting *pretrial depositions* in such coordinated or consolidated pretrial proceedings." 28 U.S.C. §1407(b) (emphasis added). A deposition, as that term is commonly understood, does not include a subpoena duces tecum. *See VISX, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002). As such, Section 1407(b) does not grant this court jurisdiction to hear Plaintiffs' motion to compel and it should be denied.

Further, the policy considerations on which Plaintiffs' cited cases rely "do not support an expansive reading of [the MDL Statute] in view of the 2013 amendments to Rule 45" which gives the district where compliance is required the authority to transfer subpoena-related motions to the MDL court in the presence of "exceptional circumstances." Fed. R. Civ. P. 45(f); *see also In re 3M Combat Arms Earplug Products Liab. Litig.*, 2020 WL 8673437, at *4. Thus, this court does not have jurisdiction over compliance with the Subpoena until the Northern District of Texas, the district where compliance is required, transfers any subpoena-related motion to this court pursuant Rule 45(f).

5

*1. The plain language of Section 1407(b) grants this court extra-district jurisdiction only over depositions.*

When the plain language of a statute provides a clear answer, the court must follow the language of the statute as written because "[t]he people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1749, 207 L. Ed. 2d 218 (2020); *see also Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438 (1999) (holding in any case of statutory construction, the analysis begins with the statutory language and "where the statutory language provides a clear answer, it ends there as well"). A deposition is a "witness's out-of-court testimony that is reduced to writing [] for later use in court or for discovery purposes." *Deposition*, Black's Law Dictionary (11th ed. 2019). Conversely, a subpoena duces tecum "order[s] the witness to appear in court and to bring specified documents, records, or things." *Subpoena*, Black's Law Dictionary (11th ed. 2019). Further, the distinction between a subpoena duces tecum and a pretrial deposition "makes a difference." *In re Packaged Seafood Products Antitrust Litig.*, 15-MD-2670-JLS-MDD, 2018 WL 454440, at *2 (S.D. Cal. Jan. 17, 2018) ("The extension of jurisdiction in MDL cases to the conduct of pretrial depositions [] is not tantamount to extending jurisdiction to enforce document subpoenas on third parties.").

Accordingly, the term "pretrial depositions" is not ambiguous nor can it be interpreted to refer to a subpoena duces tecum without a corresponding deposition. *In re 3M Combat Arms Earplug Products Liab. Litig.*, 2020 WL 8673437, at *3. Thus, the

6

MDL Statute only permits a judge to whom a MDL action is assigned to sit as the court in other districts to hear and decide motions related to pretrial depositions, not motions related to a subpoena duces tecum without a corresponding deposition. *See, e.g., VISX*, 208 F.R.D. at 616 ("Had Congress wanted to expand these powers to document subpoenas, it would have said so . . . and the court has not found, any legislative history or commentary to suggest Congress meant something other than what it said."); *In re Monat Hair Care Products Mktg., Sales Practices, & Products Liab. Litig.*, 2020 WL 1950463, at *2 ("Section 1407(b) makes no reference to subpoenas for the production of documents.").

Even though the language in the MDL statute is clear, courts are split on whether Section 1407(b) gives the MDL district court the power to oversee non-party subpoenas for only depositions or for both depositions and document production. *See id.* (comparing the split among several jurisdictions on the issue).

For example, the Sixth Circuit recognized that a legitimate argument may be made that the MDL Statute's grant of authority to the MDL judge does not extend to enforcement of documents-only subpoenas. *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 469 n.4 (6th Cir. 2006) (hereinafter, "*Pogue II*") (referencing the decision of *VISX*, 208 F.R.D. at 616). Incorrectly dismissing the *VISX* decision, however, the Sixth Circuit ultimately held that "[a] judge presiding over an MDL case [] can compel production by an extra-district non-party; enforce, modify, or quash a subpoena directed to an extra-district non-party; and hold an extra-district non-party deponent in contempt, notwithstanding the non-party's physical situs in a foreign

7

district where discovery is being conducted." *Id.* at 468–469. As the basis for its holding, the *Pogue II* court stated "that the rationale underlying the MDL statute of 'just and efficient' resolution of pretrial proceedings requires the conclusion that Section 1407(b)'s grant of authority applies to both deposition subpoenas and documents-only subpoenas." *Id.* at 469 n.4.

While *Pogue II* correctly summarized the rationale underlying the MDL statute, it improperly concluded that such rational requires circumventing the unambiguous language of Section 1407(b) implemented by Congress which grants authority to a MDL judge only for conducting pretrial depositions. *See United States v. Rainey*, 757 F.3d 234, 245 (5th Cir. 2014) ("a statute's purpose may not override its plain language[.]"); *Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 373–74 (1986) ("Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action."). Worse, *Pogue II* did not even consider whether the MDL Statute was ambiguous before simply concluding it must apply to document-only subpoenas because of the statute's underlying rationale. *See Pogue II*, 444 F.3d at 468–469 (merely stating because Rule 45 and similar discovery rules "could hamstring an MDL court's ability to conduct coordinated pretrial proceedings over cases that have been consolidated from far-flung foreign districts, the MDL statute empowers an MDL judge to act as a judge of the deposition or discovery district."). Similarly, in a previous decision in the same case, the Sixth Circuit relied on the "purposes of multi-district litigation [to] support a finding of jurisdiction" without first looking to the statutory text.

8

*See U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.,* 238 F. Supp. 2d 270, 273 (D.D.C. 2002) (hereinafter, "*Pogue I*").

Likewise, the Plaintiffs further depend on cases in which the courts failed to consider the plain statutory language of Section 1407(b) at the outset and instead rely solely on the broad purposes of the statute to hold that a motion to compel should be heard in the MDL court. *See In re Sunrise Sec. Litig.,* 130 F.R.D. 560, 585–86 (E.D. Pa. 1989) (relying on "obvious policy reasons"); *In re Welding Rod Products Liab. Litig.,* 406 F. Supp. 2d 1064, 1066 (N.D. Cal. 2005) (relying on the "stated purpose of coordinating pretrial proceedings in MDL actions"); *In re Bank of New York Mellon Corp. Forex Transactions Litig.,* 11 CIV. 9175 LAK JLC, 2014 WL 2884726, at *1 (S.D.N.Y. June 26, 2014) (acknowledging that the plain language is limited to depositions but nonetheless relies on cases ignoring the plain language based on the MDL statute's underlying rationale and purpose).

As previously stated, a court must start with the statute's plain language for statutory interpretation. *See, e.g., In re 3M Combat Arms Earplug Products Liab. Litig.,* 2020 WL 8673437, at *3 (citing *Meridor v. U.S. Att'y Gen.,* 891 F.3d 1302, 1307 (11th Cir. 2018). The distinction between a deposition and a documents-only subpoena makes a difference, and the jurisdiction granted by the plain language of Section 1407(b) to a MDL judge over pretrial depositions does not require extending jurisdiction over subpoenas for the production of documents only. *In re Packaged Seafood Products Antitrust Litig.,* 2018 WL 454440, at *2. Further, "an MDL court may not 'distort or disregard' any law, including § 1407(b) or Rule 45, even in an attempt "to create

efficiencies and avoid duplication of both effort and expenditure[.]" *In re 3M Combat Arms Earplug Products Liab. Litig.,* 2020 WL 8673437, at *4 (quoting *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020).

Plaintiffs do not cite any cases that engaged in a plain language statutory analysis; instead, they rely only on cases that have blatantly distorted or disregarded Section 1407(b) and Rule 45 in an attempt to create efficiencies and avoid duplication of both effort and expenditure. Accordingly, the cases relied upon by the Plaintiffs, and other similar holdings, are unpersuasive because they stray from the plain language of the MDL statute and attempt to justify their holdings solely on the apparent rationale of the statute. *See id.* (noting that the five cases cited by the defendants, including *Pogue I* and *Pogue II*, supporting an MDL judge's jurisdiction over a motion to compel were not persuasive because they did not consider Section 1407(b)'s plain language.).

Finally, Plaintiffs suggest this court has jurisdiction over their motion because this matter would go to the Eighth Circuit on appeal rather than the Fifth based on Plaintiffs' incorrect reading of *Pogue II*. Although *Pogue II* incorrectly extended Section 1407(b) to include documents only subpoenas, it correctly held that any appeal must go to the circuit of the district taking the deposition because those circuits need uniformity in decisions on depositions. *Pogue II*, 444 F.3d at 469 (citing *Pogue I*, 238 F.Supp.2d at 276). When applicable, Section 1407(b) grants the MDL judge the "same powers a judge of those courts where the depositions are being taken[,]" but the MDL judge is bound by the rules and procedures of the district in which he acts as a temporary judge. *In re Corrugated Container Antitrust Litig.*, 662 F.2d 875, 881 (D.C. Cir. 1981). It follows then, that any

10

appeal from an MDL judge's decision as a temporary district judge of another district must be heard by that district, not the MDL judge's district to which he is permanently assigned. *Id.* (holding Southern District of Texas MDL judge correctly exercised the powers of the District of Columbia and any appeal must be heard by the Court of Appeals for the District of Columbia). Accordingly, any appeal related to the Subpoena must go to the Fifth Circuit rather than the Eighth because, even if this court obtained jurisdiction, it must apply the law of the Northern District of Texas as the district where compliance is required and any appeal must be made to the Fifth Circuit to ensure uniformity within the circuit regarding decisions on compliance with subpoenas duces tecum.

Therefore, the plain language of Section 1407(b) dictates that this Court does not have jurisdiction to hear Plaintiffs' motion to compel compliance with the Subpoena Duces Tecum served by Plaintiffs on Texas non-party Affiliated Foods.

2. *Rule 45(f) provides the appropriate method for this court obtaining jurisdiction, not Section 1407(b).*

Further, it is significant that all but one of the cases relied upon by the Plaintiffs regarding the jurisdiction of this court pre-date the addition of Rule 45(f) in 2013.[2] *See In re Packaged Seafood Products Antitrust Litig.,* 2018 WL 454440, at *2. Rule 45 provides that when the court where compliance is required did not issue the subpoena, it may

---

[2] The only case cited by Plaintiffs on this issue that was decided after the addition of Rule 45(f) in 2013 is *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 2014 WL 2884726 (S.D.N.Y. June 26, 2014). However, the court in that case did not even discuss, nor mention, Rule 45.

transfer a motion to the issuing court if the court finds exceptional circumstances. Fed. R. Civ. P. 45(f).[3]

With the 2013 amendment to Rule 45, courts need not make an improper, expansive reading of Section 1407(b) which authorizes a MDL judge to exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions, not document-only subpoenas, as previously discussed. Instead, "[t]he consistency and efficiency of resolving subpoena-related motions in the MDL court is more appropriately considered under Rule 45(f) than as a basis to attempt to invoke the MDL court's jurisdiction in the first instance under § 1407(b)." *In re 3M Combat Arms Earplug Products Liab. Litig.*, 2020 WL 8673437, at *4.

Simply, the plain language of Section 1407(b) and Rule 45 harmoniously address the proper jurisdiction to hear motions related to a subpoena duces tecum between a MDL court and the court where compliance is required. When read together, Section 1407(b) and Rule 45 provide a clear, non-conflicting roadmap to determine whether motions related to a subpoena duces tecum issued by an MDL court to an out-of-state non-party that requires compliance in another district should be heard by the MDL court or the court where compliance with the subpoena is required:

> (1) Section 1407(b) grants a MDL judge power of any district judge only for the purpose of conducting pretrial depositions because if Congress meant to expand this power to document subpoenas, it would have said so. *See VISX*, 208 F.R.D. at 616. Thus, the MDL court does not have jurisdiction.

---

[3] The term "exceptional circumstances" is not defined by Rule 45. Since this court is not the court where compliance is required, we need not discuss what courts consider "exceptional circumstances."

(2) "Rule 45(d)(2)(i) clearly and unequivocally requires that motions to compel compliance with Rule 45 subpoenas be brought in the court where compliance is required." *In re Packaged Seafood Products Antitrust Litig.*, 2018 WL 454440, at *1. Thus, the district where compliance is required has jurisdiction.

(3) The court in the district where compliance is required may transfer any subpoena-related motion to the MDL court if it finds exceptional circumstances; thereby, affording the serving party or the person subject the subpoena to convince the compliance court that the MDL court is the more appropriate court to decide any compliance issues. Fed. R. Civ. P. 45; *See also In re 3M Combat Arms Earplug Products Liab. Litig.*, 2020 WL 8673437, at *4.

Indeed, Affiliated Foods properly filed a motion to quash in the Northern District of Texas where compliance with the Subpoena is required. *See* Mullin Decl., Ex. A. In response, Plaintiffs attempt to utilize Rule 45(f) by moving the Northern District of Texas to transfer Affiliated Foods' motion to this court arguing that multi-district litigation alone is an exceptional circumstance that warrants transfer. *See* Mullin Decl., Ex. B. So, Plaintiffs are aware of Rule(f)'s method of transferring subpoena-related motions to this court but chose instead proliferate litigation by filing its current motion.

Therefore, this court does not have jurisdiction to hear Plaintiffs' motion to compel because Rule 45 requires the Plaintiffs to move for compliance with Subpoena in the Northern District of Texas and Section 1407(b)'s limited exception to this rule concerns subpoenas in MDL cases for "pretrial depositions" only. Since Affiliated Foods has already filed a motion to quash the Subpoena in the Northern District of Texas, Plaintiffs may move that court to transfer the motion to this court pursuant Rule 45(f). Until that time, this court does not have jurisdiction to enforce the Subpoena.

**C.     The court should deny Plaintiffs' motion to compel because the Subpoena Duces Tecum imposes an undue (indeed a crushing) burden on Affiliated Foods.**

Plaintiffs failed to take reasonable steps to avoid imposing an undue burden or expense on Affiliated Foods in issuing and serving the Subpoena, and the court must enforce this duty by denying Plaintiffs' motion to compel. Fed. R. Civ. P. 45(d)(1).

Although Rule 26 allows for discovery of any matter "not privileged, that is relevant to the claim or defense of any party and proportional to the needs of the case[,]" the discovery request must be reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Even if the requested information is discoverable under Rule 26, a district court must limit the extent of discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i). So, the court may protect a person from an unduly burdensome or expensive discovery request. Fed. R. Civ. P. 26(c)(1). In the context of a Rule 45 subpoena, the court must quash or modify a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). Courts should be "'generally sensitive to the costs imposed on third parties" when considering a motion to compel (or quash) pursuant to Rule 45[.] *Millennium TGA, Inc. v. Comcast Cable Communications LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012).

Further, a subpoena that is facially overbroad may create an undue burden. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). A subpoena for documents from a non-party may be facially overbroad where the subpoena seeks "all

14

documents", the requests are not particularized, and the period covered by the requests is unlimited. *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015).

Here, Categories 1 and 6 of the Subpoena require the production of "[a]ll documents and data reflecting [Affiliated Foods'] analysis of competition" (i) in the procurement and sale of pork and (ii) in the sale of prepared foods that include pork, respectively. The subcategories under Categories 1 and 6 do not provide any additional specificity as to the particular documents and data requested. Rather, the subcategories further expand the already expansive requests for information related to Affiliated Foods' competition by further requesting any assessments and analysis of its actual or prospective suppliers, resellers, and actual or prospective customers. Further, Categories 1 and 6 do not provide a limiting period covered by the requests. *See* Mullin Decl., Ex. D.

Likewise, although Categories 2 through 5 limit the period covered by the requests, the relevant time period still covers approximately 19 years, from January 1, 2002 to the present. Specifically, Category 2 requests transactional data related to Affiliated Foods' purchases of pork that is responsive to 34 subcategories of information, some of which include purchase order number, internal product identification number, manufacturer product code, manufacturer name, brand name, indicator of private label brands, product description, any data filed related to product types or product categories, all pricing and fee information related to the purchase, any data filed related to supplier type, supplier name and address, and various shipping and billing information. Category 3 also relates to Affiliated Foods' purchases of pork. The Subpoena commands Affiliated

15

Foods' to produce its contracting methods, practices, policies, or strategies relating to pork, including, but not limited to, quotes, bids, bid announcements, or proposals issued to or relating to any pork supplier; communications relating to negotiations with suppliers related to price and non-price terms of contracts (i.e., all communications relating to negotiations); and all agreed upon price and non-price terms (i.e., all terms) including delivery schedules, quotas, or required purchases. Still in Category 3, Plaintiffs request all data relating to any off-invoice financial transactions between Affiliated Foods and pork suppliers. In the interest of brevity, the 41 subcategories of Category 4 mostly mirror the 34 subcategories of Category 2 summarized above, except in the context of Affiliated Foods' sales of pork, rather than purchases. Likewise, Category 5 almost replicates Category 3's burdensome requests, only in the context of Affiliated Foods' sales of pork. *See* Mullin Decl., Ex. D.

Despite the apparent all-encompassing, non-particularized nature of the requests and decades long time period covered by the Subpoena, Plaintiffs maintain that they are only seeking the pork purchases and sale transactional data that Affiliated Foods maintains in the ordinary course of business. Throughout negotiations, Plaintiffs continue to reiterate this statement but have not provided Affiliated Foods with any particularized description of the type of documents and data requested nor have they reasonably limited the period covered by the requests. Nonetheless, Affiliated Foods, in good faith, considered Plaintiffs' supposed modification of the Subpoena but determined that the pork purchase and transactional data that it maintains in the ordinary course of business in not retrievable without a massive investment in time and labor cost. Piancino Aff. ¶ 6.

16

In short, Affiliated Foods does not maintain "straightforward" "purchase/sale datasets" for pork product purchases and sales that can be exported into a useable form, such as Microsoft Excel. *See id.*

As such, Affiliated Foods' IT department estimated that it would take a minimum of 327 hours to complete the necessary backup tape restorations, data formatting, and database searches to produce the information requested by the Plaintiffs in a "useable form." There are only two people in Affiliated Foods' IT department with the training and skill sets to comply with the Subpoena. These two individuals are currently involved in five large projects in addition to their normal daily operational workload. These five projects are critical to the success of Affiliated Foods' operations and cannot be paused while Affiliated Foods attempts to comply with the Subpoena. Two of the projects are 30-60 days away from completion, but the most time-consuming and important project is an estimated nine months from completion. Piancino Aff. ¶ 7. Affiliated Foods further estimates that compliance with the Subpoena would cost over $1.2 million in labor plus benefits and require 35 additional employees to compile the data and documents requested by the Plaintiffs in one year. Piancino Aff. ¶ 9.

Therefore, the significant burden, inconvenience, and expense imposed on non-party Affiliated Foods by the overbroad, non-particularized Subpoena grossly outweighs any marginal benefit the requested documents may provide the Plaintiffs, particularly when considering (i) the Plaintiffs' access to the requested information from other sources, including parties, (ii) Affiliated Foods' limited resources with which to comply, and (iii) the fact that Affiliated Foods is a non-party.

17

### D.     The principles of comity require this court to deny Plaintiffs' motion.

The United States District Court for the Northern District of Texas currently has two pending matters related to the Subpoena: (i) Affiliated Foods' motion to quash and (ii) Plaintiffs' motion to transfer Affiliated Foods' motion to this court. *See* Mullin Decl., Ex. A and B, respectively. Plaintiffs' act of filing a Motion to Compel in this Court while the two motions were pending in the Northern District of Texas is obvious forum shopping, disrespects the authority of the court in Texas, and in fact, asks this Court to jump ahead of another Federal District Court. None of this conduct should be rewarded or encouraged.  As stated above, the Northern District of Texas is the appropriate court to hear both motions. Deciding a motion to quash is the functional equivalent of deciding a motion to compel. *See Millennium TGA*, 286 F.R.D. at 10.

Therefore, out of respect for and to promote comity between the Northern District of Texas and the District of Minnesota, this court should deny Plaintiffs' motion to compel and allow the United States District Court for the Northern District of Texas to properly decide the issue of compliance. Again, the United States District Court for Northern District of Texas may decide to transfer the motions to this court on a convincing showing of exceptional circumstances pursuant Rule 45(f) and is the appropriate court to determine whether such exceptional circumstances exist.

## IV.     CONCLUSION

Affiliated Foods respectfully requests that the court deny Plaintiffs motion to compel compliance with the Subpoena Duces Tecum directed to Affiliated Foods.

Respectfully submitted,

**MULLIN HOARD & BROWN, L.L.P.**
David Mullin, TSB No. 14651600
500 S. Taylor, Suite 800
Amarillo, Texas 79101-2445
806-372-5050 (Telephone)
806-371-6230 (Facsimile)
dmullin@mhba.com (Email)


*/s/ David Mullin*_____
David Mullin
*Attorney for Affiliated Foods, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this ___ day of August, 2021, I served the foregoing document through the CM/ECF system on the parties listed below since they are registered with the electronic case filing system, and by electronic mail:

Anthony M. Carter
Tostrud Law Group, P.C.,
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 278-2600
acarter@tostrudlaw.com

Yifei "Evelyn" Li
Cuneo Gilbert & LaDuca, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, D.C. 20016
(202) 789-3960
evelyn@cuneolaw.com

A. Blaine Finley
Cuneo Gilbert & LaDuca, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, D.C. 20016
(202) 789-3960
bfinley@cuneolaw.com

                                        */s/ David Mullin*
                                        David Mullin

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

*IN RE PORK ANTITRUST LITIGATION*   §       Case No. 0:18-cv-01776-JRT-HB

This Document Relates To:

ALL COMMERICAL AND
INSTITUTIONAL INDIRECT
PURCHASER PLAINTIFF ACTIONS

## CERTIFICATE ON COMPLIANCE ON NON-PARTY AFFILIATED FOODS' MEMORANDUM OF LAW IN OPPOSITION TO COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASE PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO AFFILIATED FOODS, INC.

I, David Mullin, certify that this brief complies with the type-volume limitation of D. Min. L.R. 72.2(c)(1) and with the type-size limit of D. Min. L.R. 72.2(c)(2). The brief has 5,788 words of type, font size 13 and was prepared using Microsoft Word, which includes all text, including headings, footnotes, and quotations in the word count.

*/s/ David Mullin*
David Mullin

# ATTACHMENT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

*IN RE PORK ANTITRUST LITIGATION*    §    Case No. 0:18-cv-01776-JRT-HB

This Document Relates To:

ALL COMMERICAL AND
INSTITUTIONAL INDIRECT
PURCHASER PLAINTIFF ACTIONS

## DECLARATION OF DAVID MULLIN IN SUPPORT OF NON-PARTY AFFILIATED FOODS' MEMORANDUM OF LAW IN OPPOSITION TO COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASE PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO <u>AFFILIATED FOODS, INC.</u>

I, David Mullin, declare as follows:

1.  I am an attorney with the law firm of Mullin Hoard & Brown, LLP and counsel of record for non-party Affiliated Foods, Inc. ("Affiliated Foods") in the above captioned litigation. I submit this declaration in support of Affiliated Foods' Memorandum of Law in Opposition to Commercial and Institutional Indirect Purchaser Plaintiffs' Motion to Compel Compliance with Subpoena Directed to Affiliated Foods, Inc. I am familiar with the facts set forth herein, based on my personal knowledge, involvement in the proceedings, and review of the materials referenced herein.

2.  Attached as Exhibit A is a true and correct copy of Non-Party Affiliated Foods' Motion to Quash and for Protection filed in the United District Court for the Northern District of Texas, Amarillo Division on July 7, 2021.

3.   Attached as Exhibit B is a true and correct copy of Plaintiffs' Motion to Transfer Affiliated Foods' Motion to Quash and for Protection to the District of Minnesota, or to Stay Proceedings filed in the United District Court for the Northern District of Texas, Amarillo Division on August 16, 2021.

4.   Attached as Exhibit C is an email chain between David Mullin and Anthony Carter (and others), dated May 17–20, 2021.

5.   Attached as Exhibit D is a true and correct copy of the subpoena duces tecum served on Affiliated Foods on May 7, 2021.

6.   Attached as Exhibit E is the Affidavit of Brian Piancino dated August 30, 2021.

I affirm under penalty of perjury on this 30th day of August, 2021 that the foregoing is true to the best of my knowledge.

*/s/ David Mullin*_____
David Mullin

# EXHIBIT A

## TO DECLARATION

## OF DAVID MULLIN

## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | § | Case No. 18-cv-1776 (JRT/HB) |

---

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE SUBPOENA SERVED ON | § | |
| AFFILIATED FOODS, INC. C/O | § | Misc. Case No. 21-3 |
| REGISTERED AGENT BRIAN PIANCINO | § | |

## NON-PARTY AFFILIATED FOODS' MOTION TO QUASH AND FOR PROTECTION

Non-party Affiliated Foods, Inc. ("Affiliated Foods") moves the court to quash the subpoena duces tecum served on it in Civil Action No. 18-cv-1776 (JRT/HB); *In Re Pork Antitrust Litigation*; in the United States District Court for the District of Minnesota (the "Pork Lawsuit") by the Plaintiffs in the Pork Lawsuit on May 7, 2021 (the "Subpoena"), and for protection from the same, and respectfully shows as follows:

## I.
## BACKGROUND

1.      In the Pork Lawsuit, Plaintiffs filed class action claims against the Defendants seeking injunctive relief under Section 1 of the Sherman Act, and treble damages under the antitrust laws, unfair competition laws, consumer protection laws, and unjust enrichment common laws of several states. Relevant portions of the Plaintiffs' Complaint in the Pork Lawsuit are attached hereto as Exhibit "A" and fully incorporated by reference. In short, the Plaintiffs allege that the Defendants "coordinated to fix, raise, maintain and stabilize pork prices" in a price-fixing scheme starting in at least 2009, resulting in an "anticompetitive cartel." Complaint at 34, *In Re Pork Antitrust Litigation*.

2.      Affiliated Foods is not a party to the Pork Lawsuit nor is it a pork producer like the Defendants in that case.

3.      The Subpoena was served on Affiliated Foods on May 7, 2021. A true and correct copy of the Subpoena is attached hereto as Exhibit "B" and fully incorporated by reference. Affiliated Foods' response date to the Subpoena was extended to July 7, 2021, and the place of production was agreed to be Amarillo, Texas.[1]

4.      Among other things, the Subpoena requires the production of all documents and data reflecting Affiliated Foods' analysis of its competition in the procurement and sale of pork, including prepared foods containing pork; and for the period from January 1, 2002 to the present, certain transactional data and documents related to Affiliated Foods' purchases and sales of pork or prepared foods containing pork. The breadth of the Subpoena is breath taking. In total, the Subpoena lists six broad categories of production with numerous subcategories covering seven pages.

5.      As such, the Subpoena is overly broad and burdensome and should be quashed. Specifically, Affiliated Foods raises the following objections to the non-party Subpoena served upon it:

## II.
## JURISDICTION AND VENUE

6.      This court has original subject matter jurisdiction to hear this Motion pursuant Rule 45(d)(3) of the Federal Rules of Civil Procedure as the court for the district where compliance with the Subpoena is required. The location for compliance with the Subpoena is Amarillo, Texas which is in the Northern District of Texas.

---

[1] Affiliated Foods' principal place of business is located in Randall County, Texas. Under Rule 45(c) of the Federal Rules of Civil Procedure, the Plaintiffs' could not compel compliance with the Subpoena in Washington, D.C. as originally called for by the Subpoena.

7.     This court has personal jurisdiction over the Plaintiffs because they have purposefully availed themselves of the privilege of conducting activities within the State of Texas and the Northern District of Texas, thus invoking the benefits and protections of its laws, by making Amarillo, Texas the place of compliance with the Subpoena.

8.     Venue is proper is this district because Amarillo, Texas is the place of compliance with the Subpoena.

### III.
### THE SUBPOENA IMPOSES AN UNDUE BURDEN AND EXPENSE

9.     Plaintiffs failed to take reasonable steps to avoid imposing an undue burden or expense on Affiliated Foods in issuing and serving the Subpoena, and the court must enforce this duty despite the Plaintiffs' failure to comply. Fed. R. Civ. P. 45(d)(1).

10.     Further, on timely motion, the court must quash or modify the Subpoena because it subjects Affiliated Foods to undue burden and expense. Fed. R. Civ. P. 45(d)(3)(iv). This motion is timely filed because it was filed before the date of compliance set in the Subpoena, as amended.  *MetroPCS v. Thomas*, 327 F.R.D. 600, 608 (N.D. Tex. 2018).

*A.  Categories 1 and 6 are facially overbroad and burdensome.*

11.     A subpoena that is facially overbroad may create an undue burden. *See Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004). A subpoena for documents from a non-party may be facially overbroad where the subpoena seeks "all documents", the requests are not particularized, and the period covered by the requests is unlimited. *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015).

12.     Categories 1 and 6 of the Subpoena require the production of "[a]ll documents and data reflecting [Affiliated Foods'] analysis of competition" (i) in the procurement and sale of

pork and (ii) in the sale of prepared foods that include pork, respectively. The subcategories under Categories 1 and 6 do not provide any additional specificity as to the particular documents and data requested. Rather, the subcategories further expand the already expansive requests for information related to Affiliated Foods' competition by further requesting any assessments and analysis of its actual or prospective suppliers, resellers, and actual or prospective customers. Further, Categories 1 and 6 do not provide a limiting period covered by the requests.

13.     Simply stated, Plaintiffs have requested all documents and data reflecting Affiliated Foods' analysis of almost every person or company that has ever done business with it. Affiliated Foods was incorporated in 1968. As a non-party, it is unreasonable, and likely impossible, to search its records for any document or any data reflecting an analysis of every person and company with whom it had a business relationship with in the last 53 years.

14.     In addition to the overbreadth and unlimited time period covered, the requests in Categories 1 and 6 do not provide a particularized description of the documents or data requested.

15.     Categories 1 and 6 do not define the term "competition" in the requests for documents and data. As alluded to earlier, the subcategories expand the commonly understood term of competitors to include suppliers and customers—categories that Affiliated Foods would not normally consider "competition." These vague descriptions of the type of records covered by the Subpoena requires that Affiliated Foods produce any and all documents related to its day-to-day operations since, like any sensible business, it regularly analyzes its suppliers, competition, and customers to provide quality, competitive products and services.

16.     Accordingly, Categories 1 and 6 are a type of "all documents" request that do not describe in particularity the type of documents to be produced nor limit the period covered by the

requests and should be quashed as facially overbroad and unduly burdensome to Affiliated Foods.

B. *The Subpoena in its entirety is unduly burdensome.*

17.     When considering whether a subpoena is unduly burdensome, the Fifth Circuit considers the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818. "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.*

18.     "When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Andra Group, LP v. JDA Software Group, Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015) (quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. 1998)) (modification in original). Under that rule, a court must consider the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

19.     As stated above, Categories 1 and 6 are facially overbroad because the far-reaching breadth of the non-particularized document request and the lack of a specified time period imposes an undue burden on Affiliated Foods. Further, the request to produce all documents of Affiliated Foods' analysis of its competition since its inception will necessarily produce information irrelevant to the Pork Lawsuit which only alleges wrongdoing beginning in

2009. Finally, the cost and burden on non-party Affiliated Foods to comply with the almost unlimited requests in these categories greatly outweighs any benefit these tangentially relevant documents may provide to the Plaintiffs, especially when the Plaintiffs have a less burdensome means to obtain the requested information as discussed more fully below.

20.     Categories 2 through 5 also impose an undue burden on Affiliated Foods.

21.     Although Categories 2 through 5 limit the period covered by the requests, the relevant time period still covers approximately 19 years, from January 1, 2002 to the present. Further, the amount of documents and data requested over that 19 year period is unreasonably massive.

22.     Specifically, Category 2 requests transactional data related to Affiliated Foods' purchases of pork that is responsive to 34 subcategories of information, some of which include purchase order number, internal product identification number, manufacturer product code, manufacturer name, brand name, indicator of private label brands, product description, any data filed related to product types or product categories, all pricing and fee information related to the purchase, any data filed related to supplier type, supplier name and address, and various shipping and billing information.

23.     Category 3 also relates to Affiliated Foods' purchases of pork. The Subpoena commands Affiliated Foods' to produce its contracting methods, practices, policies, or strategies relating to pork, including, but not limited to, quotes, bids, bid announcements, or proposals issued to or relating to any pork supplier; communications relating to negotiations with suppliers related to price and non-price terms of contracts (i.e., all communications relating to negotiations); and all agreed upon price and non-price terms (i.e., all terms) including delivery

schedules, quotas, or required purchases. Still in Category 3, Plaintiffs request all data relating to any off-invoice financial transactions between Affiliated Foods and pork suppliers.

24.     In the interest of brevity, the 41 subcategories of Category 4 mostly mirror the 34 subcategories of Category 2 summarized above, except in the context of Affiliated Foods' sales of pork, rather than purchases. Likewise, Category 5 almost replicates Category 3's burdensome requests, only in the context of Affiliated Foods' sales of pork.

25.     Much of the information requested by the Plaintiffs is irrelevant to its claims against the Defendants due to the all-encompassing nature of the requests and the decades long time period covering the requests. Again, Plaintiffs' allege Defendants began their anticompetitive scheme sometime in 2009. Affiliated Foods' analyses of its competitors before that period are in no way relevant to any of the Plaintiffs' claims, nor are purchase orders, shipping information, and contracting methods from the early 2000s. Every email, memo, or letter correspondence to Affiliated Foods' suppliers or customers in the past 20 years is not only grossly overbroad, unnecessary, and not reasonably calculated to prevent undue burden, but also requires Affiliated Foods to spend significant time and resources to dig up old records that the Plaintiffs likely will never use in the Pork Lawsuit.

26.     Further, the Plaintiffs likely have sufficient discovery methods at their disposal to obtain the requested information from a more appropriate source—the Defendants in this case. For example, almost all of the information requested from Affiliated Foods' regarding its purchase of pork, such as invoices and contracts with suppliers, can be obtained from the Defendant pork producers themselves who possess corresponding information from the other side of such transactions. In fact, the Plaintiffs' antitrust claims against the Defendants largely rest on the Defendants allegedly sharing and comparing their financial and production data,

including profits, costs, prices, and slaughter information, through a company, also a Defendant, that compiles this information into "benchmarking" reports to each of the Defendants. Complaint at 3, *In Re Pork Antitrust Litigation*.

27.     Finally, the expense and inconvenience to non-party Affiliated Foods alone makes the Subpoena unduly burdensome and makes compliance nearly impossible.

28.     Affiliated Foods' IT department estimated that it would take a minimum of 327 hours to complete the necessary backup tape restorations, data formatting, and database searches to produce the information requested in the Subpoena. There are only two people in Affiliated Foods' IT department with the training and skill sets to comply with the Subpoena. These two individuals are currently involved in five large projects in addition to their normal daily operational workload. These five projects are critical to the success of Affiliated Foods' operations and cannot be paused while Affiliated Foods attempts to comply with the Subpoena. Two of the projects are 30-60 days away from completion, but the most time-consuming and important project is an estimated nine months from completion. Piancino Aff. ¶ 5 (attached hereto as Exhibit "C" and fully incorporated by reference).

29.     Affiliated Foods' accounting department analyzed the Subpoena  and performed an initial inquiry into the number of potential relevant records. Based on its analysis, the accounting department determined that an estimated 300,000 records were relevant to the requests in the Subpoena. This analysis only looked back at data through 2009, however. To reiterate, Categories 1 and 6 provided no time period covered by the requests while the remaining Categories cover the period from 2002 through the present. Accordingly, at least an additional seven years of records must be produced to comply with the Subpoena. Each of the

relevant records requires a manual search and retrieval from Affiliated Foods' imaging database to be imported and prepared for production. Piancino Aff. ¶ 6.

30.     Affiliated Foods' CFO performed a test on one batch of records identified by the accounting department to determine the amount of time required to perform a search and retrieval of relevant records. The CFO's test determined that the accounting department must spend approximately seven minutes to search and produce purchase records and approximately eight minutes for sales records. When applying theses averages to the total potential records, a projected 300,000 just through 2009, the CFO determined the process would require approximately 74,000 hours to execute the requests in the Subpoena. At an average of $17.00 per hour, compliance with the Subpoena would cost Affiliated Foods over $1.2 million in labor plus benefits. Further, Affiliated Foods would be required to hire at least 35 people to complete this process in one year. The Subpoena originally required compliance in one month but was extended an additional month by agreement. Piancino Aff. ¶ 7.

31.     Affiliated Foods currently has 50 open positions that it is struggling to fill. As such, it estimates that it would struggle to comply with the Subpoena within five years. Piancino Aff. ¶ 8.

32.     Thus, the significant burden, inconvenience, and expense imposed on non-party Affiliated Foods by the overbroad, non-particularized Subpoena grossly outweighs any marginal benefit the requested documents may provide the Plaintiffs, particularly when considering (i) the Plaintiffs' access to the requested information from other sources, including parties, (ii) Affiliated Foods' limited resources with which to comply, and (iii) the fact that Affiliated Foods is a non-party.

## PRAYER

Affiliated Foods prays that the Court quash the Subpoena filed in this matter because it is unduly burdensome. Affiliated Foods further seeks protection from the issuance of successive subpoenas seeking the same or similar materials.

Respectfully submitted,

**MULLIN HOARD & BROWN, L.L.P.**
David Mullin, TSB No. 14651600
500 S. Taylor, Suite 800
Amarillo, Texas 79101-2445
806-372-5050 (Telephone)
806-371-6230 (Facsimile)
dmullin@mhba.com (Email)

/s/ David Mullin
David Mullin
*Attorney for Affiliated Foods, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 7th day of July, 2021, I served the foregoing document through the CM/ECF system on the parties listed below since they are registered with the electronic case filing system, and by electronic mail:

Anthony M. Carter
Tostrud Law Group, P.C.,
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 278-2600
acarter@tostrudlaw.com

Yifei "Evelyn" Li
Cuneo Gilbert & LaDuca, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, D.C. 20016
(202) 789-3960
evelyn@cuneolaw.com

A. Blaine Finley
Cuneo Gilbert & LaDuca, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, D.C. 20016
(202) 789-3960
bfinley@cuneolaw.com

/s/ David Mullin
David Mullin

# EXHIBIT B

## TO DECLARATION
## OF DAVID MULLIN

## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

IN RE PORK ANTITRUST LITIGATION      §      Case No. 18-cv-1776 (JRT/HB)

---

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

IN RE SUBPOENA SERVED ON           §
AFFILIATED FOODS, INC. C/O         §      Misc. Case No. 2:21-mc-00003-Z
REGISTERED AGENT BRIAN PIANCINO     §

### MOTION TO TRANSFER AFFILIATED FOODS' MOTION TO QUASH AND FOR PROTECTION TO THE DISTRICT OF MINNESOTA, OR TO STAY PROCEEDINGS

Pursuant to 28 U.S.C. section 1407(b) and Rule 45(f) of the Federal Rules of Civil Procedure, and supported by the Memorandum and Declaration submitted herewith, Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"), by and through the undersigned counsel, respectfully request that the Court transfer Affiliated Foods, Inc.'s ("Affiliated Foods") Motion to Quash and for Protection (the "Motion") to the court that issued the subpoena—the United States District Court for the District of Minnesota (the "Issuing Court").

In the alternative, CIIPPs respectfully request that the Court stay proceedings related to Affiliated Foods' Motion, pending resolution of CIIPPs' motion to compel Affiliated Foods' compliance with the subpoena, filed concurrently with this motion in the Issuing Court.

A proposed order is included with this motion.

1

Dated: August 16, 2021                          Respectfully submitted,

                                                /s/ Darren Nicholson
                                                Darren Nicholson
                                                Burns Charest LLP
                                                900 Jackson Street
                                                Suite 500
                                                Dallas, Texas 75202
                                                T: 469.998.4303
                                                F: 469.444.5002

## CERTIFICATE OF CONFERNCE

On August 12, 2021, Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs")
sent Affiliated Foods' counsel an email asking Affiliated Foods to confirm that it does not intend
to produce transactional data or, in the alternative, agree to a stay of proceedings related to its
Motion to Quash and for Protection or a transfer of this dispute to the District of Minnesota. To
date, Affiliated Foods has not responded indicating that it will either produce transactional data or
agree to a stay or a transfer of this dispute to the District of Minnesota. Accordingly, CIIPPs have
concluded that their motion is opposed.

                                                /s/ Darren Nicholson
                                                Darren Nicholson

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 16th day of August, 2021, I electronically
submittedthe foregoing document with the clerk of court for the U.S. District Court, Northern
District of Texas, using the electronic case filing system of the court. I hereby certify that I have
served all counsel of record electronically or by another manner authorized by Federal Rule of
Civil Procedure 5(b)(2).

                                                /s/ Darren Nicholson
                                                Darren Nicholson

# Exhibit A
## *Excerpts from*
## *Class Action Complaint*

**Exhibit A to Non-Party Affiliated Foods' Motion to Quash and Protection**

**In re Subpoena Served on Affiliated Foods, Inc. c/o Registered Agent Brian Piancino; Misc. Case No. 21:21-mc-00003-Z in the United States District Court, for the Northern District of Texas, Amarillo Division**

CASE 0:18-cv-01776-JRT-JFD   Doc. 924   Filed 08/30/21   Page 44 of 138
CASE 0:18-cv-01776   Document 1   Filed 06/28/18   Page 1 of 98
Case 2:21-mc-00003-Z   Document 1   Filed 07/07/21   Page 13 of 58   PageID 13

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| WANDA DURYEA, MATTHEW HOSKING, JOHN MCKEE, LISA MELEGARI, MICHAEL REILLY, SANDRA STEFFEN, PAUL GLANTZ, EDWIN BLAKEY, JENNIFER SULLIVAN, LISA AXELROD, ANBESSA TUFA AND CHRISTINA HALL, | No. |
| Plaintiffs, | |
| v. | CLASS ACTION COMPLAINT |
| AGRI STATS, INC., CLEMENS FOOD GROUP, LLC, HORMEL FOODS CORPORATION, INDIANA PACKERS CORPORATION, JBS USA, SEABOARD FOODS, LLC, SMITHFIELD FOODS, INC., TRIUMPH FOODS, LLC, AND TYSON FOODS, INC. | DEMAND FOR JURY TRIAL |
| Defendants. | |

CASE 0:18-cv-01776-JRT-JFD   Doc. 924   Filed 08/30/21   Page 45 of 138
CASE 0:18-cv-01776   Document 1   Filed 06/28/18   Page 4 of 98
Case 2:21-mc-00003-Z   Document 1   Filed 07/07/21   Page 14 of 58   PageID 14

public information about prices, capacity, sales volume and demand through their co-conspirator Agri Stats.

3.      Beginning in at least 2009, Agri Stats began providing highly sensitive "benchmarking" reports to the majority of pork integrators. Benchmarking allows competitors to compare their profits or performance against that of other companies. But Agri Stats' reports are unlike those of other lawful industry reports. Agri Stats gathers detailed financial and production data from each of the pork integrators, standardizes this information, and produces customized reports and graphs for the co-conspirators. The type of information available in these reports is not the type of information that competitors would provide each other in a normal, competitive market. Instead, the provision of this detailed information acts as the proverbial smoke-filled room of the cartels of yesteryear. Rather than meeting in a room with pen and paper, Agri Stats collected the pork integrators' competitively sensitive supply and pricing data and intentionally shared that information through detailed reports it provided to the pork integrators. On a weekly and monthly basis, Agri Stats provides the pork integrators with current and forward-looking sensitive information (such as profits, costs, prices and slaughter information), as well as regularly provides the keys to deciphering which data belongs to which producers. The effect of this information exchange was to allow the pork integrators to monitor each other's production and hence control supply and price.

4.      The data exchanged through Agri Stats bears all the hallmarks of the enforcement mechanism of a price-fixing scheme. First, the data is current and forward-looking – which courts consistently hold has "the greatest potential for generating anticompetitive effects."[2]

---

[2] *Todd v. Exxon Corp.*, 275 F.3d 191, 2011 (2d Cir. 2001) (Sotomayor, J.) (quoting *United States v. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978)).

CASE 0:18-cv-01776-JRT-JFD   Doc. 924   Filed 08/30/21   Page 46 of 138
CASE 0:18-cv-01776   Document 1   Filed 06/28/18   Page 12 of 98
Case 2:21-mc-00003-Z   Document 1   Filed 07/07/21   Page 15 of 58   PageID 15

33.   Tyson Foods, Inc. is a publicly traded Delaware corporation headquartered in Springdale, Arkansas. During the Class Period, Tyson Foods, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold pork in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

## IV.   FACTUAL ALLEGATIONS

34.   Starting in at least 2009 and continuing to the present, defendants coordinated to fix, raise, maintain and stabilize pork prices. To effectuate and ensure the stability of their price-fixing agreement, defendants relied on a unique industry data sharing service known as Agri Stats.  Agri Stats provided a means for defendants to obtain and monitor critical and competitively sensitive business information regarding each other's production metrics, thereby serving as a central and critical part of defendants' price-fixing scheme, resulting in a remarkably stable and successful anticompetitive cartel.

**A.    The price-fixing scheme started from Agri Stats' central role in collusion in the broiler industry.**

35.   Agri Stats has played a central role in other industries, including collusion in the broiler industry.[5] As alleged in the *In re Broiler Chicken Antitrust Litigation*, No. 16-cv-08637 (N.D. Ill.), the broiler producers used Agri Stats as a part of their conspiracy to restrain production and inflate prices.

36.   In the broiler industry, Agri Stats collected and disseminated to the other members of the conspiracy disaggregated financial information (such as monthly operating profit, sales and cost per live pound), production volumes, capacity, slaughter information, inventory levels, sales data for finished product form and type, amongst other pieces of

---

[5] Broilers are chickens raised to be slaughtered before the age of 13 weeks.

# Exhibit B
## *Subpoena issued to Affiliated Foods, Inc.*

**Exhibit B to Non-Party Affiliated Foods' Motion to Quash and Protection**

**In re Subpoena Served on Affiliated Foods, Inc. c/o Registered Agent Brian Piancino; Misc. Case No. 21:21-mc-00003-Z in the United States District Court, for the Northern District of Texas, Amarillo Division**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Minnesota ▾

*5/7/21   1:50pm*
*DMD*
*PSC 2174*

| | | |
|---|---|---|
| In Re Pork Antitrust Litigation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  18-cv-1776 (JRT/HB) |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
**Affiliated Foods, Inc.,**
**c/o Registered Agent - Brian Piancino, 1401 W. Farmers Ave., Amarillo, TX 79118**

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Cuneo Gilbert & LaDuca, LLP, 4725 Wisconsin Ave., NW, Suite 200, Washington, D.C. 20016 | Date and Time: 06/07/2021 12:00 pm |
|---|---|

⌐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/07/2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Anthony M. Carter |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Commerical and Institutional Indirect Purchaser Plaintiffs, who issues or requests this subpoena, are:
Anthony M. Carter, Tostrud Law Group, P.C., 1925 Century Park East, Suite 2100, Los Angeles, CA 90067
Tel: (310) 278-2600  acarter@tostrudlaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 18-cv-1776 (JRT/HB)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*                         .

☐ I served the subpoena by delivering a copy to the named person as follows:

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                               *Server's signature*

                                           _____
                                               *Printed name and title*

                                           _____
                                               *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

1.      All documents and data reflecting your analysis of competition in the procurement and sale of Pork, including but not limited to:

      a)    Assessments and analyses of available Pork suppliers, whether you purchased from those suppliers or not;

      b)    Assessments and analyses of Pork resellers with which you compete, including but not limited to other wholesale distributors and mass merchandisers; and

      c)    Assessments and analyses of your (actual or prospective) customers, including, if available, analyses by customer type, location within the United States, or any other dimension along which you segment customers.

2.      For the period from January 1, 2002, to the present, please provide transactional data sufficient to show the following information related to your purchases of Pork:

      a)    purchase order number;

      b)    date of purchase;

      c)    internal product identification number;

      d)    manufacturer product code (e.g., UPC, SKU, or other identifying code associated with the item);

      e)    manufacturer name;

      f)    manufacturer identification number;

      g)    brand name (including private label brands);

      h)    brand identification number (including private label brands);

      i)    indicator of private label brands;

j)      product description;

k)      the grade, cut, product form, and/or type of Pork;

l)      quantity purchased;

m)      any data field related to product types or product categories;

n)      quantity measure (e.g., live weight, carcass weight, retail weight, etc.);

o)      unit of measurement for quantity purchased;

p)      unit converter (if applicable);

q)      transaction type (e.g., purchase, return, exchange);

r)      contract number under which the purchase was made (if applicable);

s)      all pricing and fee information related to the purchase, including unit price, freight, tax, and similar charges (USD);

t)      unit of measure for any price fields (e.g., dollar per carcass weight pound);

u)      any purchase order-level chargebacks, discounts, rebates, credits, freight allowances, free goods and/or services;

v)      gross purchase amount (USD);

w)      net purchase amount (USD);

x)      Any data fields related to supplier type (e.g., processor, distributor, etc.);

y)      supplier identification/vendor number;

z)      supplier name and address;

aa)      ship-to entity identification number;

bb)      ship-to entity name;

cc)      ship-to entity address;

dd)   bill-to entity identification number;

ee)   bill-to entity name;

ff)   bill-to entity address;

gg)   bill-to entity phone number; and

hh)   bill-to entity email address.

3.   For the period from January 1, 2002, to the present, please provide documents and data sufficient to show the following information related to your purchases of Pork:

a)   Contracting methods, practices, policies, or strategies relating to Pork, including but not limited to:

   i.   all RFPs or bid documents issued by any Pork supplier;

   ii.   quotes, bids, bid announcements, or proposals issued by you to or relating to any Pork supplier;

   iii.   communications relating to negotiations with suppliers related to price and non-price terms of contracts;

   iv.   all agreed upon price and non-price terms including delivery schedules, quotas, or required purchases; and

   v.   contracts consummated with suppliers including all amendments, appendices, or addendums to those contracts.

b)   Data relating to any off-invoice financial transactions between you and Pork suppliers (for each item, indicate the date of the transaction, type of transaction, supplier, and USD amount), including but not limited to:

   i.   chargebacks, discounts, rebates, credits, freight allowances, free goods and/or services, cooperative marketing funds, advertising

3

funds, promotional funds or allowances, slotting allowances; and

    ii.    any other marketing assistance, support, or other off-invoice financial incentives received.

4.    For the period from January 1, 2002, to the present, please provide transactional data sufficient to show the following information related to your sales of Pork and prepared foods that include Pork:

a)    invoice number;

b)    date of sale;

c)    internal product identification number;

d)    manufacturer product code (e.g., UPC, SKU, or other identifying code associated with the item);

e)    manufacturer identification number;

f)    manufacturer that supplied you the items sold, and the brand (including private label brands) under which the item was labeled by the manufacturer;

g)    indicator of private label brands;

h)    the grade, cut, product form, and/or type of Pork;

i)    product description;

j)    any data field related to product types or product categories;

k)    quantity sold;

l)    unit of measurement for quantity sold;

m)    quantity measure (e.g., live weight, carcass weight, retail weight, etc.);

n)    unit converter (if applicable);

o)    transaction type (e.g., sale, return, exchange);

4

p)   all pricing and fee information related to the sale, including unit price, freight, tax, or similar charges (USD);

q)   unit of measure for any price fields (e.g., dollar per carcass weight pound);

r)   any invoice-level chargebacks, discounts, rebates, credits, freight allowances, free goods and/or services;

s)   cost of goods sold ("COGS") (USD), including a definition/description of how you calculated COGS;

t)   cost of the meat in the Pork product;

u)   cost of the entire Pork product;

v)   any data fields for any other fixed or variable costs or costs associated with the Pork sold;

w)   gross sale amount (USD);

x)   net sale amount (USD);

y)   customer group identification number;

z)   customer group name and description (e.g., university, prison, caterer);

aa)   distributor name and description;

bb)   customer identification number;

cc)   customer name;

dd)   customer address;

ee)   contract number under which the purchase was made (if applicable)

ff)   indicator of whether the sale price was negotiated by you, or if the customer negotiated it directly with the supplier;

gg)   margin added to sales in cost-plus model (if applicable);

    hh)    ship-to entity identification number;

    ii)    ship-to entity name;

    jj)    ship-to entity address;

    kk)    bill-to entity identification number;

    ll)    bill-to entity name;

    mm)    bill-to entity address;

    nn)    bill-to entity phone number; and

    oo)    bill-to entity email.

5.    For the period from January 1, 2002, to the present, please provide documents and data sufficient to show the following information related to your sales of Pork and prepared foods that include Pork:

    a)    Contracting methods, practices, policies, or strategies relating to Pork, including but not limited to:

        i.    all RFPs or bid documents issued by any customers;

        ii.    quotes, bids, bid announcements, or proposals issued by you to or relating to any customer;

        iii.    communications relating to negotiations with customers related to price and non-price terms of contracts; and

        iv.    contracts consummated with customers.

    b)    Data relating to any off-invoice financial transactions between you and your customers (for each item, indicate the date of the transaction, type of transaction, supplier, and USD amount), including but not limited to:

        i.    chargebacks, discounts, rebates, credits, freight allowances, free

goods and/or services, cooperative marketing funds, advertising funds, promotional funds or allowances, slotting allowances; and

ii.    any other marketing assistance, support, or other off-invoice financial incentives paid.

6.    All documents and data reflecting your analysis of competition in the sale of prepared foods that include Pork, including but not limited to:

a)    Assessments and analyses of prepared foods sellers with which you compete, including but not limited to other wholesale distributors and mass merchandisers; and

b)    Assessments and analyses of your (actual or prospective) customers, including if available, analyses by customer type, location within the United States, or any other dimension along which you segment customers.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Pork Antitrust Litigation | Civil No. 18-cv-1776 (JRT/HB) |
| This Document Relates To: All Actions | **PROTECTIVE ORDER** |

Pursuant to the proposed Protective Order, attached as Exhibit A to the Joint Status Report and Letter Brief (ECF No. 203-1), e-filed by the parties on October 30, 2018,

**IT IS HEREBY ORDERED** that the proposed Protective Order (ECF No. 203-1) is **ADOPTED**, and confidential information shall be disclosed only in the following ways:

1.  **Scope.** All documents, electronically stored information, items, and other information produced or adduced in the course of discovery, regardless of the medium or manner generated, stored, maintained or revealed (including, among other things, initial disclosures, responses to discovery requests, deposition testimony, and exhibits), and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential or Highly Confidential Information as defined below. This Order shall apply to any named party to this action (including all of its officers, directors, employees, retained experts, outside counsel (and their support staff)). This Order is subject to the Local Rules of this District and the Federal Rules of

Civil Procedure on matters of procedure and calculation of time periods.

2. **Confidential Information.** As used in this Order, "Confidential Information" means any document, or any portion thereof, which contains confidential or proprietary business, commercial, research, personnel, product or financial content belonging to the producing party, and which is designated as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" for purposes of this litigation. Confidential Information may fall within one or more of the following categories: (a) information prohibited from disclosure by statute or contractual agreement; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a person who is not a party to the case. The parties will make reasonable efforts to ensure that information or documents that are available to the public are not designated as Confidential Information.

3. **Highly Confidential Information.** As used in this Order, "Highly Confidential Information" means any document, or any portion thereof, which a producing party or non-party believes to be so highly sensitive that: (i) it is the subject of reasonable efforts to maintain its secrecy; (ii) it is sufficiently valuable and secret to afford a potential or actual advantage over others; (iii) its disclosure to existing or potential competitors or customers would cause injury to the business, commercial, competitive, or financial interests of the producing party or non-party; and (iv) it is

2

designated as "HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" for purposes of this litigation.  By way of example only, Highly Confidential Information may include but is not limited to:  (a) current or future business strategies and other strategic planning information; (b) projections or plans regarding performance, budgets, production, output, sales, marketing or distribution practices; (c) research and development information; (d) manufacturing know-how or technology; (e) board of directors materials and presentations; (f) customer lists or information; (g) negotiation strategies; (h) proprietary software, systems, or processes; (i) margin, cost, and pricing information; or (j) intellectual property.  If required by applicable privacy laws, Highly Confidential Information may also include personnel files that are designated as such for purposes of this litigation.

   **4.    Designation.**

   (a)    A party may designate a document as Confidential or Highly Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner that will not interfere with the legibility of the document.   To the extent a document is produced in a form in which placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document is not practicable, the producing party may designate the document as confidential by cover letter, slip sheet, or by affixing a label to the production media containing the document.

3

As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential or Highly Confidential Information. The marking "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time the documents are produced or disclosed. Applying such marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of documents designated as Confidential or Highly Confidential Information and do not otherwise disclose the substance of the Confidential or Highly Confidential Information are not required to be marked.

(b)     Though the parties understand that the designation of a document as Confidential or Highly Confidential Information is a certification by an attorney that the document contains Confidential or Highly Confidential Information as defined in this Order, the parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The parties agree to work together on an as-needed (and per document) basis to address any potential over (or under) designation.

5.     **Depositions.**  Unless all parties agree otherwise on the record at the time

4

the deposition testimony is taken, all deposition testimony taken in this case shall be treated

as Confidential Information for a period of thirty (30) days after the transcript is delivered

to the party being deposed.   If counsel for any party states on the record that the

deposition testimony should be treated as Highly Confidential Information, such

testimony will be treated as Highly Confidential Information for the thirty (30)-day

period following the delivery of the transcript to the party seeking to designate material

as confidential.  No later than the thirtieth day after the transcript is delivered to the party

being deposed or a party seeking to designate material as confidential, whichever is later,

a party may serve a Notice of Designation to all parties of record and the court reporter

for the deposition in question as to specific pages of the transcript that are designated

Confidential or Highly Confidential Information, and thereafter only those portions

identified in the Notice of Designation shall be protected by the terms of this Order.  The

court reporter shall provide a final copy of the transcript that reflects any designations of

pages of the transcript as Confidential or Highly Confidential Information in the lower

left-hand corner of each designated page.

      **6.**       **Protection of Confidential or Highly Confidential Material.**

      (a)       **General Protections.**  Except as set forth below, Confidential or

Highly Confidential Information shall not be used or disclosed by the parties, counsel for

the parties or any other persons identified in subparagraph (b) for any purpose whatsoever

other than the prosecution or defense of claims in, or the settlement of, this litigation,

including any appeal thereof.  In this putative class action, Confidential or Highly

Confidential Information may be disclosed only to the named plaintiffs and not to any

other member of the putative class unless and until a class including the putative member has been certified. Nothing in this Order, however, shall prevent or prejudice any party designating materials Confidential or Highly Confidential Information from using its own such designated documents for any purpose, including privately disclosing its own Confidential or Highly Confidential Information to others not mentioned in this Paragraph 6, and such private disclosure shall not waive the protections of this Order.

   (b)   **Limited Third-Party Disclosures.** The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential or Highly Confidential Information to any third person or entity except as set forth below in subparagraphs (1)-(10) and (1)-(9), respectively. Subject to these requirements, the following categories of persons may be allowed to review Confidential Information:

   (1)   Counsel. Outside or in-house counsel for the parties (or in-house counsel for the parties' affiliates) and employees of such counsel who have responsibility for the preparation and trial of the action;

   (2)   Parties. Individual parties and employees or former employees of a party, but only to the extent counsel has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the individual party, employee, or former employee has knowledge; disclosure to such individual party, employee, or former employee is limited to the portion of the document about such events, transactions, discussions, communications, or data; and such party, employee, or

6

former employee has completed the certification contained in

Attachment A, Acknowledgment of Understanding and Agreement to

Be Bound to this Order;

(3)   The Court and its personnel;

(4)   Court Reporters and Recorders.  Court reporters and recorders

engaged for depositions;

(5)   Contractors.  Those persons specifically engaged for the limited

purpose of making copies of documents or organizing or processing

documents, including outside vendors hired to process electronically

stored documents;

(6)   Consultants and Experts.  Consultants, investigators, or experts

employed by the parties or counsel for the parties to assist in the

preparation and trial of this action but only after such persons have

completed the certification contained in Attachment A to this Order;

(7)   Witnesses.  During depositions or testimony at trial or any hearing,

witnesses in this action to whom disclosure is reasonably necessary,

provided that counsel for the party intending to disclose the

information has a good-faith basis for believing such Confidential

Information is relevant to events, transactions, discussions,

communications or data about which the witness is expected to testify

or about which the witness may have knowledge.  Witnesses shall

not retain a copy of documents containing Confidential Information,

7

except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts. Pages of transcribed testimony that are designated as Confidential Information pursuant to Paragraph 5 may not be disclosed to anyone except as permitted under this Order.

(8)   Author or recipient. The author or recipient of the document (not including a person who received the document solely in the course of litigation);

(9)   Identified Persons. Any person who is referenced in the document or whose conduct is purported to be identified in the document, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the person has knowledge; disclosure to such person is limited to the portion of the document in which the person or person's conduct is identified or referenced; and such person has completed the certification contained in Attachment A to this Order; and

(10)   Others by Consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

8

The following categories of persons may be allowed to review Highly Confidential Information:

(1)     Counsel.  Outside counsel for the parties and employees of such counsel who have responsibility for the action, provided that such individuals do not regularly participate in the commercial business activities of the party;

(2)     The Court and its personnel;

(3)     Court Reporters and Recorders.  Court reporters and recorders engaged for depositions;

(4)     Contractors.  Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

(5)     Consultants and Experts.  Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A to this Order;

(6)     Witnesses.  During depositions or testimony at trial or any hearing, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Highly Confidential Information is relevant to events, transactions,

9

discussions, communications or data about which the witness is

expected to testify or about which the witness may have knowledge.

Before disclosing any document pursuant to this paragraph, counsel

who intends to disclose the document must first notify counsel for the

designating party of their intent to do so.  At depositions, trial or

hearings, such notice may be accomplished by presenting a copy of

the Highly Confidential Information to counsel for the designating

party and permitting counsel an opportunity to object before the

document is shown to the witness.  Until the designating party

agrees to the disclosure, or the Court orders such disclosure, Highly

Confidential Information shall not be disclosed to or discussed with

any witness.  Witnesses shall not retain a copy of documents

containing Highly Confidential Information, except witnesses may

receive a copy of all exhibits marked at their depositions in connection

with review of the transcripts.  Pages of transcribed testimony or

exhibits to depositions that are designated as Highly Confidential

Information must be separately bound by the court reporter and may

not be disclosed to anyone except as permitted under this Order.

(7)   Author or recipient.  The author or recipient of the document (not

including a person who received the document solely in the course of

litigation);

(8)   Identified Persons.  Any person who is referenced in the document

10

or whose conduct is purported to be identified in the document, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Highly Confidential Information is relevant to events, transactions, discussions, communications or data about which the person has knowledge; disclosure to such person is limited to the portion of the document in which the person or person's conduct is identified or referenced; and such person has completed the certification contained in Attachment A to this Order; and

(9)     Others by Consent.  Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

To the extent any person is required to complete the certification contained in Attachment A to this Order, facsimile signatures or signatures transferred in electronic format (*e.g.,* PDF) shall be treated as original signatures purposes of this Order.

(c)     **High Level Summaries**.  Notwithstanding the provisions of paragraph 6(b), outside counsel for a party that is a corporation or other type of business entity may provide high level summaries or characterizations of the evidence in the case to individuals employed by the party who have responsibility to make decisions regarding the defense or settlement of the case.  Nothing in this Order is intended to bar or otherwise prevent any counsel from rendering advice to his or her client with respect to this litigation

11

and, in the course of rendering such advice, from relying upon his or her examination or knowledge of Confidential or Highly Confidential Information.

(d)     **Control of Documents.**   Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential or Highly Confidential Information.   Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

7.     **Absent Class Members.**   Confidential or Highly Confidential Information may not be disclosed to absent members of a certified class (each an "Absent Class Member") who have not intervened or otherwise appeared in this litigation, except under the circumstances described in Paragraph 6(a)-(b) of this Order.   If, however, Confidential or Highly Confidential Information is contained in a filing with the Court pursuant to Paragraph 9 of this Order, such filing may be disclosed to counsel for the Absent Class Member (or the Absent Class Member if not represented) for purposes of evaluating any settlement affecting the Absent Class Member, provided that such counsel, if any, and the Absent Class Member have completed the certification contained in Attachment A to this Order.

8.     **Inadvertent Failure to Designate.**   An inadvertent failure to designate a document as Confidential or Highly Confidential Information does not, standing alone, waive the right to so designate the document.   If a party designates a document as Confidential or Highly Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to ensure

12

that the document is treated in accordance with the provisions of this Order.   No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential or Highly Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential or Highly Confidential Information.

9. **Filing of Confidential or Highly Confidential Information.** This Order does not, by itself, authorize the filing of any document under seal.  Any party wishing to file a document designated as Confidential or Highly Confidential Information in connection with a motion, brief or other submission to the Court must comply with Local Rule 5.6.

10. **No Greater Protection of Specific Documents.** Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.  Nothing in this Order shall prevent a party from seeking greater or lesser protection with respect to the use of any Confidential or Highly Confidential Information.

11. **Challenges by a Party to Designation as Confidential or Highly Confidential Information.** The designation of any document as Confidential or Highly Confidential Information is subject to challenge by any party.  The following procedure shall apply to any such challenge.

(a) **Meet and Confer.** A party challenging the designation of Confidential or Highly Confidential Information must do so in good faith and must begin

13

the process by conferring directly with counsel for the designating party. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated document, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within five (5) business days of the meet and confer.

(b)   **Judicial Intervention.**  A party that elects to challenge a confidentiality designation may (i) seek informal dispute resolution with the Court if such process can be mutually agreed upon with the designating party; or (ii) file and serve a motion that identifies the challenged document and sets forth in detail the basis for the challenge. Each such motion's supporting brief may not exceed five (5) pages and must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure outlined above. The burden of persuasion in any such challenge proceeding shall be on the designating party, who shall have the right to respond to any motion filed by a challenging party. Until the Court rules on the challenge, all parties shall continue to treat the document as Confidential or Highly Confidential Information under the terms of this Order. As such, any motion challenging a confidentiality designation must not publicly file the documents with contested designations nor describe them in a manner that would reveal Confidential or Highly Confidential Information.

12.   **Action by the Court.**  Applications to the Court for an order relating to documents designated Confidential or Highly Confidential Information shall be by motion.

14

Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

13.   **Use of Confidential or Highly Confidential Documents or Information at Trial.**  Nothing in this Order shall be construed to limit the use of any document at any trial or hearing provided that the parties take necessary advance precautions to avoid the public disclosure of Confidential or Highly Confidential Information.  A party that intends to present or that anticipates that another party may present Confidential or Highly Confidential Information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum sufficiently in advance of the proceeding without disclosing the Confidential or Highly Confidential Information. The Court may thereafter make such orders as are necessary to govern the use of such documents at hearing or trial.

14.   **Third Parties.**  In seeking discovery from third parties, the parties shall attach this Order to a copy of any subpoena or other discovery request.  Third parties from whom discovery is requested are parties to this Order and are entitled to the protections of this Order in responding to such requests.

15.   **Confidential or Highly Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**

(a)   If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any document designated in this action as Confidential or Highly Confidential Information, the receiving party must so notify the

15

designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b)     The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c)     The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential or Highly Confidential Information in the court from which the subpoena or order issued. The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential or Highly Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential or Highly Confidential Information by the other party to this case.

16.     **Challenges by Members of the Public to Sealing Orders.** If a party or interested member of the public challenges the sealing of particular documents that have been filed under seal, the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

17.     **Unauthorized Disclosure or Use.**  If a party learns that it or its counsel, officers, directors, employees, consultants, experts or other agents have disclosed documents designated Confidential or Highly Confidential Information in any circumstance not authorized under this Order, that party must within two (2) business days of learning of such disclosure (a) notify the designating party of the disclosure and all pertinent facts relating thereto, (b) make every reasonable effort to prevent disclosure by each unauthorized person who received such information, (c) use reasonable best efforts to retrieve all copies of the protected documents disclosed to unauthorized persons, (d) inform the person or persons to whom unauthorized disclosures were made of the terms of this Order, and (e) request that each such person execute the certification contained in Exhibit A to this Order.  Nothing contained herein shall limit the right of the designating party to seek relief against the party responsible for such disclosure.

18.     **Limitations on Waiver of Privilege.**

(a)     **Clawback of Inadvertent Disclosure.**  This Order is entered, *inter alia*, pursuant to Federal Rule of Evidence 502(d).  If a party or non-party that produces or otherwise discloses information in connection with this Litigation (the "Producing Party") thereafter claims that such information is protected by any privilege or attorney work product protection ("Disclosed Protected Information"), the disclosure of the Disclosed Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Disclosed Protected Information and its subject matter in this proceeding or in any other federal or state proceeding.  The parties

17

stipulate that by entering this Confidentiality Order, the Court shall provide the maximum protection allowed by Rule 502(d).

(1)      **Assertion of a Clawback.**  Any Producing Party may request, in writing, the return of any Disclosed Protected Information by identifying it and stating the basis for withholding such material or information from production.  The Producing Party must also provide a privilege log explaining the basis for the assertion of the privilege within 3 business days of asserting a clawback.

(2)      **Clawbacks before Deposition.**  To the extent a party believes a clawback made prior to a scheduled deposition impacts that deposition, the parties will meet and confer and a party may seek guidance from the Court if the meet and confer does not reach a successful resolution.

(3)      **Clawback Process.** Federal Rule of Civil Procedure 26(B)(5)(b) shall govern the clawback of Disclosed Protected Information.

a.      If a Producing Party requests the return of such Disclosed Protected Information then in the custody of one or more parties, the receiving parties shall—unless it contests the claim of attorney-client privilege or work product protection in accordance with sub-paragraph 18(b)(2)(b) – within ten (10) business days of receipt of written notice (i) destroy or return to the Producing Party the Disclosed Protected Information and all copies thereof, and (ii) provide a certification of counsel that all of the Disclosed Protected Information has been returned or destroyed.

b.      **Challenging a Clawback.**  Notify the producing Party or non-Party that it wishes to challenge the claim of privilege or work product

18

protection and has sequestered the material until the issue can be resolved. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. A Party challenging a clawback request under this paragraph may use the clawed-back document and its contents for the purpose of filing a motion with the Court under seal that challenges whether or not the document is privileged or work product only in accordance with the provisions of Fed. R. Civ. P. 26(b)(5)(B).

        c.     The parties may stipulate to extend the time periods set forth in sub-paragraph (a).

        d.     Disclosed Protected Information that is sought to be reclaimed by the parties to this case pursuant to this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

        e.     The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information. Nothing in this paragraph shall limit the right of any party to petition the Court for an *in camera* review of the Disclosed Protected Information.

        (b)     Where a party agrees to or is ordered to destroy a clawed back document, the party must instruct their e-discovery vendor to delete the document entirely from their e-discovery database and delete other copies of the clawed back document. To the extent that it is not technologically feasible for a receiving party to destroy a clawed back document (for example, if the clawed back document is part of a production

19

provided on read-only production media such that the clawed back document cannot be destroyed without destroying the entire production media), the parties will meet and confer as to an acceptable alternative approach.

      (c)    **Receiving Party's Obligation.** Without waiving the ability to challenge a clawback under ¶ 18(a)(3)(b) a party who discovers that it may have received an inadvertently disclosed or produced protected document must promptly notify the disclosing or producing party. A party who is notified or discovers that it may have received a protected document must comply with Fed. R. Civ. P. 26(b)(5)(B).

**19.    Claims of Privilege and Redactions**

      (a)    **Production of Privilege Logs.** Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs in MS Excel format or any other format that permits electronic sorting and searching. All privilege logs will served within 60 days after Substantial Completion of Document Productions.

      (b)    **Exclusions from Logging Potentially Privileged Documents.** The following categories of documents do not need to be contained on a producing Party's initial privilege log, unless good cause exists to require that a Party do so.

            (1)    Information generated after June 30, 2018. This provision does not apply to third parties to the Litigation.

            (2)    Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with

20

specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

(3)   Any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

(c)   Privilege Log Requirements:

(1)   **Metadata Log.**  To the extent applicable, each Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.

a.   Objective metadata includes the following (as applicable to the document types as shown in Appendix A to the ESI Protocol Order):

   i.   A unique privilege log identifier that makes clear the familial relationship of documents, i.e., parent/child.
   ii.   Custodian
   iii.   DuplicateCustodian, CustodianOther or

21

|       |                                  |
|-------|----------------------------------|
|       | CustodianAll (if applicable)     |
| iv.   | File Name                        |
| v.    | Email Subject                    |
| vi.   | Author                           |
| vii.  | From                             |
| viii. | To                               |
| ix.   | CC                               |
| x.    | BCC                              |
| xi.   | Date Sent                        |
| xii.  | Date Received                    |
| xiii. | Date Created                     |

    b.      In addition to the objective metadata fields, a Party must also include a field on its privilege log entitled "Attorney/Description of Privileged Material" if the basis for the privilege asserted is not apparent from the objective metadata (e.g., the name of the attorney will be provided if not included in the objective metadata). Further, a Party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the claim of privilege in light of the metadata that is discernable and/or the information provided in the Attorney/Description of Privileged Material field.

    c.      With respect to the "Email Subject" or "File Name" field, the producing Party may substitute a description of the document where the contents of these fields may reveal privileged information. In the privilege log(s), the producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "File Name" field (e.g., "[metadata redacted/altered to protect privilege]."

    d.      Should a receiving Party, in good faith, have reason

22

to believe a particular entry on a metadata-generated privilege log is responsive and does

not reflect privileged discoverable information, the receiving Party may request, and the

producing Party will not unreasonably refuse to provide, more information about the basis

of the asserted privilege in compliance with Fed. R. Civ. P. 26(b)(5).

(2)     **Email Chains.**  If there is more than one branch of

(i.e., more than one unique group of recipients of) an email thread, each branch will be

individually logged; however, each individual email within the thread need not be logged

if the recipients of the email chain are all identical.   A Party asserting privilege over a

chain of emails may produce only a single redacted copy of such email chain consistent

with the ESI Protocol to the extent some portions are only partially privileged, except that

any unique branches of the email chain must also either be produced in redacted form or

included on the metadata privilege log.

(3)     **Email Families.**  Attachments to emails shall be

logged as separate documents on the log, with family relationships identified.

(d)     **Documents Redacted for Privilege.**  As an initial production

matter, redacted documents need not be logged as long as (a) for emails, the objective

metadata (i.e., to, from, cc, bcc, recipients, date, and time, unless the privilege or

protection is contained in these fields) is not redacted, and the reason for the redaction,

including the nature of the privilege asserted, is noted on the face of the document, or, if

noting the nature on the face of the document is not technologically feasible, is noted in

the metadata field provided in section F below (for redacted documents where the subject

matter is not decipherable as a result of redactions, a description of the contents of the

23

document that is sufficient to understand the subject matter of the document may be requested); and (b) for non-email documents, the reason for the redaction is noted on the face of the document in the redacted area.   The producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information.   After receipt of the production, the requesting Party may request in good faith that the producing Party create a privilege log for specific redacted documents. Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

    (e)    **Challenges to Privilege Claims.**  Following the receipt of a privilege/redaction log, a requesting Party may identify, in writing (by Bates/unique identified number), the particular documents that it believes require further explanation. The producing Party shall endeavor to respond to such a request within 14 days.  If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.   If they cannot agree, the matter may be brought to the Court.

    (f)    **Privilege Metadata Fields.**  Where a document is either withheld in full or redacted on the basis of a privilege, then that privilege shall be provided in a metadata field entitled "Privilege Asserted" and list a short description of the privilege asserted (e.g., "Attorney Client Privilege", "Attorney Work Product").

    **20.**    **Obligations on Conclusion of Litigation.**

    (a)    **Order Continues in Force.**  Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to

further appeal.

(b)     **Obligations at Conclusion of Litigation.**  Within sixty (60) days

after dismissal or entry of final judgment not subject to further appeal, all Confidential and

Highly Confidential Information, including copies as defined in Paragraph 4(a), shall be

returned to the producing party unless:  (1) the document has been offered into evidence

or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent

practicable in lieu of return; or (3) as to documents bearing the notations, summations or

other mental impressions of the receiving party, that party elects to destroy the documents

and certifies to the producing party that it has done so.

(c)     **Retention of Work Product and Filed Documents.**

Notwithstanding the above requirements to return or destroy documents, counsel may

retain (1) email correspondence related to their representation, (2) attorney work product,

including an index that refers or relates to designated Confidential or Highly Confidential

Information so long as that work product does not duplicate verbatim substantial portions

of Confidential or Highly Confidential Information; and (3) one complete set of (a) all

documents filed with or by the Court, including those filed under seal; (b) all transcripts of

depositions, including exhibits; and (c) all final expert witness reports and supporting

materials disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure.  Any

retained Confidential or Highly Confidential Information shall continue to be protected

under this Order.  An attorney may use his or her work product in subsequent litigation,

provided that its use does not disclose Confidential or Highly Confidential Information.

Nothing in this Order shall be construed to require the destruction or return of Confidential

or Highly Confidential Information stored in counsels' archives, back-up media, or disaster recovery media.

(d)     **Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System.**  Filings under seal shall be deleted from the ECF system only upon order of the Court.

21.     **Order Subject to Modification.**  This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

22.     **No Prior Judicial Determination.**  This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document designated Confidential or Highly Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

23.     **Persons Bound.**  This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

24.     **Future Parties.**  The terms of this Order shall be binding upon all current and future parties to this litigation and their counsel; any party appearing in the litigation following entry of this Order shall be deemed to have joined the case subject to its provisions.

25.     **Personal Jurisdiction.**  Nothing herein shall be construed as a

26

determination by the Court, or as a consent or waiver by any party, or parent or affiliate of

any party, that such party, or parent or affiliate of a party, is subject to personal

jurisdiction in this Court or that discovery as to such party, or parent or affiliate of a party,

shall proceed pursuant to the Federal Rules of Civil Procedure.


Dated:  November 26, 2018                    *s/ Hildy Bowbeer*
                                             HILDY BOWBEER
                                             United States Magistrate Judge

## ATTACHMENT A TO PROTECTIVE ORDER

**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

_____

In re Pork Antitrust Litigation                    Civil No. 18-cv-1776 (JRT/HB)

_____

This Document Relates To:  All Actions             **ACKNOWLEDGMENT AND
                                                   AGREEMENT TO BE BOUND**

_____


     The undersigned hereby acknowledges that he/she has read the Protective Order in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms.  The undersigned submits to the jurisdiction of the United States District Court for the District of Minnesota in matters relating to the Protective Order and understands that the terms of the Protective Order obligate him/her to use materials designated as Confidential or Highly Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential or Highly Confidential Information to any other person, firm, or concern.

     The undersigned acknowledges that violation of the Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Date: _____        _____
                                      Signature

# Exhibit C
## *Affidavit of Brian Piancino*

**Exhibit C to Non-Party Affiliated Foods' Motion to Quash and Protection**

**In re Subpoena Served on Affiliated Foods, Inc. c/o Registered Agent Brian Piancino; Misc. Case No. 21:21-mc-00003-Z in the United States District Court, for the Northern District of Texas, Amarillo Division**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

IN RE PORK ANTITRUST LITIGATION    §         Case No. 18-cv-1776 (JRT/HB)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

IN RE SUBPOENA SERVED ON        §
AFFILIATED FOODS, INC. C/O      §         Case No. _____
REGISTERED AGENT BRIAN PIANCINO §

## AFFIDAVIT OF BRIAN PIANCINO

**BEFORE ME**, the undersigned notary, on this day personally appeared Brian Piancino the Affiant, a person whose identity is known to me. After I administered an oath, Affiant testified:

1.      My name is Brian Piancino. I am over the age of eighteen (18) years, am of sound mind, and fully competent to make this Affidavit. I have personal knowledge of all facts stated herein, and they are all true and correct.

2.      I am currently employed by Affiliated Foods, Inc. ("Affiliated Foods") full-time as its Chief Operating Officer. I have been Affiliated Foods' COO for over two years. I am not a party to this lawsuit styled *In Re Pork Antitrust Litigation*; in the United States District Court for the District of Minnesota; Civil Action No. 18-cv-1776 (JRT/HB) (the "Pork Lawsuit"). Affiliated Foods is not a party to such lawsuit.

3.      On May 7, 2021, Affiliated Foods was served with a subpoena to produce documents and data by the class action Plaintiffs in the Pork Lawsuit (the "Subpoena").

4.      At my direction, Affiliated Foods' accounting department, IT department and management team closely reviewed the Subpoena to determine what resources Affiliated Foods

needed to employ to comply with the Subpoena, including, but not limited to, the number of employees needed, the amount of time needed, and the various logistical production processes needed. In our review, Affiliated Foods determined, among other things, that, if compelled to comply with the Subpoena, it could produce the relevant records only back to 2009, despite the Subpoena requiring records from before 2009.

5.      There are only two employees in Affiliated Foods IT department with the training and the knowledge to perform the work necessary to comply with the Subpoena. These individuals informed me that it would take them a minimum of 327 hours to complete their portion of the work required to find and produce the responsive documents and data, which would include backup tape restorations, data formatting, and database searches. In addition to this added work caused by the Subpoena, I am personally aware of five large projects ongoing within the IT department, not including these employees' normal daily operational workload. I, and other members of management, have determined that these five projects are critical to the success of Affiliated Foods' operations and cannot be paused to comply with the Subpoena. While two of the five projects are an estimated 30-60 days away from completion, the most time-consuming and important project is an estimated nine months from completion.

6.      Affiliated Foods' accounting department analyzed the Subpoena and performed an initial inquiry into the number of relevant records. Based on its analysis, the accounting department informed me that an estimated 300,000 records were relevant to the requests in the Subpoena. They also told me that these documents must be manually searched and retrieved from our imaging database, imported, and prepared for production. Again, these records only go back through 2009.

7.     After the accounting department's analysis, Affiliated Foods' CFO ran a sample batch for all items and vendors relevant to the Subpoena since January 2020 (approximately one and a half years). She then annualized the volume of the records and calculated the average time to gather the relevant purchase and sales records—seven minutes for purchase records and eight minutes for sales records. She then used the annualized volume to calculate the total amount of time required to produce all the relevant records and determined that it would take Affiliated Foods approximately 74,000 hours to comply with the Subpoena. The CFO informed me that the average salary of an employee needed for such a project is $17.00 per hour. Accordingly, she determined that it would cost over $1.2 million in labor plus benefits to comply. Finally, the CFO estimates that Affiliated Foods must hire at least 35 people to comply with the Subpoena in one year.

8.     I am personally aware that Affiliated Foods currently has approximately 50 open positions that we are struggling to fill. Based on our recent hiring trends, I personally believe that Affiliated Foods could not hire enough people to comply with the Subpoena in 5 years.

9.     Based on the foregoing, the burden imposed on non-party Affiliated Foods by this Subpoena would cause great harm to the business because numerous employees would be pulled away from their daily tasks and operations for months or longer to comply. Thus, compliance with the Subpoena is simply not feasible.

Brian Piancino, Affiant

**SWORN TO, SUBSCRIBED AND ACKOWLEDGED BEFORE ME** on this 7th day of July 2021 by Brian Piancino.

CINDY JEAN CRAIG
Notary ID #126743648
My Commission Expires
December 5, 2024

Notary Public in and for the State of Texas

7-7-21

# EXHIBIT C

## TO DECLARATION

## OF DAVID MULLIN

**David Mullin**

| | |
|---|---|
| **From:** | Anthony Carter <acarter@tostrudlaw.com> |
| **Sent:** | Thursday, May 20, 2021 7:11 PM |
| **To:** | David Mullin |
| **Cc:** | Blaine Finley; Evelyn Li; Jon Tostrud |
| **Subject:** | Re: Subpoena Duces Tecum to Affliliated Foods, Inc. in No. 18-CV-1776 in the U.S. District Court for the District of Minnesota, In re Pork Antitrust Litigation |

David,

Thank you for taking time to speak with us today. As per our discussion, we agreed upon the following as the relevant place of production for the purpose of the subpoena:

In Amarillo, Texas via electronic means (Email or File Sharing site such as Dropbox) to acarter@tostrudlaw.com; evelyn@cuneolaw.com & bfinley@cuneolaw.com

In addition, it was agreed that the response deadline is extended by 30 days to July 7, 2021. It is our understanding that, as a result of this clarification, you no longer intend to move for sanctions.

You indicated that you would check with your client about the possibility of producing pork product purchase and sale transactional data in satisfaction of the subpoena. In particular, our group is seeking the following information about a potential transactional data production:

- The timespan that would be covered by the purchase and sale transactional data;
- The granularity at which the transactional data can be produced (e.g., whether the data is maintained on a transaction-by-transaction level); and
- Which of the data fields requested in the subpoena would be included.

Our group indicated that providing sample transactional data could make sense as a path forward. If an agreement on a transactional data production can be reached, our group would also like to have the opportunity to pose a reasonable number of follow-up questions, such as how to interpret data field names, regarding the transactional data produced.

Would it be possible to have a follow-up call in approximately two weeks, after you have had time to discuss with your client?

Best regards,

Anthony M. Carter
(VA Bar No. 39736)
TOSTRUD LAW GROUP, P.C.
1925 Century Park East
Suite 2100
Los Angeles, CA. 90067
ph: 310-278-2600
fax: 310-278-2640

acarter@tostrudlaw.com
www.tostrudlaw.com

Notice: This communication may contain material that is confidential, privileged and/or attorney work product or exempt from disclosure under applicable law. It is for the sole use of the intended recipient. If you have received this in error, or are not the named recipient, please immediately notify the sender and delete this from your computer and all copies thereof. Also, this message does not create an attorney-client relationship; does not constitute legal advice and should not be relied upon for any purpose without named recipient's hard copy signed verification by sender. We do not accept service of process via e-mail. Nothing herein is or is intended to be an electronic signature under any law.

On Wed, May 19, 2021 at 2:39 PM David Mullin <dmullin@mhba.com> wrote:

3:30 central tomorrow works.

**David Mullin**
**Mullin Hoard & Brown, LLP**

**From:** Anthony Carter [mailto:acarter@tostrudlaw.com]
**Sent:** Wednesday, May 19, 2021 4:31 PM
**To:** David Mullin
**Cc:** Johnny Merritt; Blaine Finley; Evelyn Li; Jon Tostrud
**Subject:** Re: Subpoena Duces Tecum to Affiliated Foods, Inc. in No. 18-CV-1776 in the U.S. District Court for the District of Minnesota, In re Pork Antitrust Litigation

David,

We are in receipt of your email regarding our subpoena duces tecum to Affiliated Foods. Would you be available to speak after 3 pm CT tomorrow? Or anytime after 1 pm CT on Friday? Please let me know if any of these time windows work, or if a different time works better for you.

Regards,

Anthony M. Carter

(VA Bar No. 39736)

TOSTRUD LAW GROUP, P.C.
1925 Century Park East
Suite 2100
Los Angeles, CA. 90067
ph: 310-278-2600
fax: 310-278-2640
acarter@tostrudlaw.com
www.tostrudlaw.com

Notice: This communication may contain material that is confidential, privileged and/or attorney work product or exempt from disclosure under applicable law. It is for the sole use of the intended recipient. If you have received this in error, or are not the named recipient, please immediately notify the sender and delete this from your computer and all copies thereof. Also, this message does not create an attorney-client relationship; does not constitute legal advice and should not be relied upon for any purpose without named recipient's hard copy signed verification by sender. We do not accept service of process via e-mail. Nothing herein is or is intended to be an electronic signature under any law.

On Mon, May 17, 2021 at 6:50 AM David Mullin <dmullin@mhba.com> wrote:

Anthony,

I am counsel to Affiliated Foods, Inc. in connection with the subpoena duces tecum issued by your firm to Affiliated Foods. The subpoena duces tecum is defective under Federal Rule of Civil Procedure 45 in that it commands Affiliated Foods to produce documents in Washington, D.C., which is more than 100 miles from Amarillo.

Please let me know by close of business on Wednesday, May 19, if you will withdraw the subpoena duces tecum or we will have no choice but to file a motion to quash and for sanctions in the appropriate forum. I have attached the pertinent portions of Rule 45 for your consideration:

2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Respectfully,

**David Mullin**
**Mullin Hoard & Brown, LLP**
500 S. Taylor, Suite 800
Amarillo National Bank Plaza II
Amarillo, Texas 79101

**806.372.5050**
**806.372.5086 – fax**

Mailing Address:
P. O. Box 31656
Amarillo, TX 79120-1656

www.mullinhoard.com
dmullin@mhba.com

This email contains confidential information (including any attachments) belonging to the sender or his client which may be protected from disclosure by the attorney-client privilege, the attorney or core work product immunity, the work product immunity, and/or other privilege or immunity. This confidential information is intended only for the use of the individuals or entities identified above. If you are not the

intended recipient, you are hereby notified that any use, disclosure, copying, distribution, dissemination, or the taking of any action in reliance on the contents of the emailed information, is strictly prohibited. If you have received this email in error, please immediately notify the sender by replying to the email or by telephone at 806.372.5050.

Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

# EXHIBIT D

## TO DECLARATION

## OF DAVID MULLIN

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Minnesota  ▼

*5/7/21  1:50pm*
*DAD*
*PSC 2174*

| | |
|---|---|
| In Re Pork Antitrust Litigation | ) |
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.  18-cv-1776 (JRT/HB)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Affiliated Foods, Inc.,
c/o Registered Agent - Brian Piancino, 1401 W. Farmers Ave., Amarillo, TX 79118

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Cuneo Gilbert & LaDuca, LLP, 4725 Wisconsin Ave., NW, Suite 200, Washington, D.C. 20016 | Date and Time: 06/07/2021 12:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  05/07/2021

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Anthony M. Carter |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Commerical and Institutional Indirect Purchaser Plaintiffs , who issues or requests this subpoena, are:
Anthony M. Carter, Tostrud Law Group, P.C., 1925 Century Park East, Suite 2100, Los Angeles, CA 90067
Tel: (310) 278-2600  acarter@tostrudlaw.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev  02-14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 18-cv-1776 (JRT/HB)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*                     .

❐ I served the subpoena by delivering a copy to the named person as follows:

on *(date)*                     : or

❐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $                for travel and $                for services, for a total of $        0.00        .

I declare under penalty of perjury that this information is true.

Date:

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

1.      All documents and data reflecting your analysis of competition in the procurement and sale of Pork, including but not limited to:

    a)   Assessments and analyses of available Pork suppliers, whether you purchased from those suppliers or not;

    b)   Assessments and analyses of Pork resellers with which you compete, including but not limited to other wholesale distributors and mass merchandisers; and

    c)   Assessments and analyses of your (actual or prospective) customers, including, if available, analyses by customer type, location within the United States, or any other dimension along which you segment customers.

2.      For the period from January 1, 2002, to the present, please provide transactional data sufficient to show the following information related to your purchases of Pork:

    a)   purchase order number;

    b)   date of purchase;

    c)   internal product identification number;

    d)   manufacturer product code (e.g., UPC, SKU, or other identifying code associated with the item);

    e)   manufacturer name;

    f)   manufacturer identification number;

    g)   brand name (including private label brands);

    h)   brand identification number (including private label brands);

    i)   indicator of private label brands;

j)      product description;

k)      the grade, cut, product form, and/or type of Pork;

l)      quantity purchased;

m)      any data field related to product types or product categories;

n)      quantity measure (e.g., live weight, carcass weight, retail weight, etc.);

o)      unit of measurement for quantity purchased;

p)      unit converter (if applicable);

q)      transaction type (e.g., purchase, return, exchange);

r)      contract number under which the purchase was made (if applicable);

s)      all pricing and fee information related to the purchase, including unit price, freight, tax, and similar charges (USD);

t)      unit of measure for any price fields (e.g., dollar per carcass weight pound);

u)      any purchase order-level chargebacks, discounts, rebates, credits, freight allowances, free goods and/or services;

v)      gross purchase amount (USD);

w)      net purchase amount (USD);

x)      Any data fields related to supplier type (e.g., processor, distributor, etc.);

y)      supplier identification/vendor number;

z)      supplier name and address;

aa)     ship-to entity identification number;

bb)     ship-to entity name;

cc)     ship-to entity address;

2

dd)   bill-to entity identification number;

ee)   bill-to entity name;

ff)   bill-to entity address;

gg)   bill-to entity phone number; and

hh)   bill-to entity email address.

3.   For the period from January 1, 2002, to the present, please provide documents and data sufficient to show the following information related to your purchases of Pork:

a)   Contracting methods, practices, policies, or strategies relating to Pork, including but not limited to:

    i.   all RFPs or bid documents issued by any Pork supplier;

    ii.   quotes, bids, bid announcements, or proposals issued by you to or relating to any Pork supplier;

    iii.   communications relating to negotiations with suppliers related to price and non-price terms of contracts;

    iv.   all agreed upon price and non-price terms including delivery schedules, quotas, or required purchases; and

    v.   contracts consummated with suppliers including all amendments, appendices, or addendums to those contracts.

b)   Data relating to any off-invoice financial transactions between you and Pork suppliers (for each item, indicate the date of the transaction, type of transaction, supplier, and USD amount), including but not limited to:

    i.   chargebacks, discounts, rebates, credits, freight allowances, free goods and/or services, cooperative marketing funds, advertising

3

funds, promotional funds or allowances, slotting allowances; and

    ii.    any other marketing assistance, support, or other off-invoice financial incentives received.

4.    For the period from January 1, 2002, to the present, please provide transactional data sufficient to show the following information related to your sales of Pork and prepared foods that include Pork:

    a)    invoice number;

    b)    date of sale;

    c)    internal product identification number;

    d)    manufacturer product code (e.g., UPC, SKU, or other identifying code associated with the item);

    e)    manufacturer identification number;

    f)    manufacturer that supplied you the items sold, and the brand (including private label brands) under which the item was labeled by the manufacturer;

    g)    indicator of private label brands;

    h)    the grade, cut, product form, and/or type of Pork;

    i)    product description;

    j)    any data field related to product types or product categories;

    k)    quantity sold;

    l)    unit of measurement for quantity sold;

    m)    quantity measure (e.g., live weight, carcass weight, retail weight, etc.);

    n)    unit converter (if applicable);

    o)    transaction type (e.g., sale, return, exchange);

p)   all pricing and fee information related to the sale, including unit price, freight, tax, or similar charges (USD);

q)   unit of measure for any price fields (e.g., dollar per carcass weight pound);

r)   any invoice-level chargebacks, discounts, rebates, credits, freight allowances, free goods and/or services;

s)   cost of goods sold ("COGS") (USD), including a definition/description of how you calculated COGS;

t)   cost of the meat in the Pork product;

u)   cost of the entire Pork product;

v)   any data fields for any other fixed or variable costs or costs associated with the Pork sold;

w)   gross sale amount (USD);

x)   net sale amount (USD);

y)   customer group identification number;

z)   customer group name and description (e.g., university, prison, caterer);

aa)  distributor name and description;

bb)  customer identification number;

cc)  customer name;

dd)  customer address;

ee)  contract number under which the purchase was made (if applicable)

ff)  indicator of whether the sale price was negotiated by you, or if the customer negotiated it directly with the supplier;

gg)  margin added to sales in cost-plus model (if applicable);

hh)   ship-to entity identification number;

ii)   ship-to entity name;

jj)   ship-to entity address;

kk)   bill-to entity identification number;

ll)   bill-to entity name;

mm)   bill-to entity address;

nn)   bill-to entity phone number; and

oo)   bill-to entity email.

5.   For the period from January 1, 2002, to the present, please provide documents and data sufficient to show the following information related to your sales of Pork and prepared foods that include Pork:

a)   Contracting methods, practices, policies, or strategies relating to Pork, including but not limited to:

i.   all RFPs or bid documents issued by any customers;

ii.   quotes, bids, bid announcements, or proposals issued by you to or relating to any customer;

iii.   communications relating to negotiations with customers related to price and non-price terms of contracts; and

iv.   contracts consummated with customers.

b)   Data relating to any off-invoice financial transactions between you and your customers (for each item, indicate the date of the transaction, type of transaction, supplier, and USD amount), including but not limited to:

i.   chargebacks, discounts, rebates, credits, freight allowances, free

6

goods and/or services, cooperative marketing funds, advertising funds, promotional funds or allowances, slotting allowances; and

ii.    any other marketing assistance, support, or other off-invoice financial incentives paid.

6.    All documents and data reflecting your analysis of competition in the sale of prepared foods that include Pork, including but not limited to:

a)    Assessments and analyses of prepared foods sellers with which you compete, including but not limited to other wholesale distributors and mass merchandisers; and

b)    Assessments and analyses of your (actual or prospective) customers, including if available, analyses by customer type, location within the United States, or any other dimension along which you segment customers.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Pork Antitrust Litigation | Civil No. 18-cv-1776 (JRT/HB) |
| This Document Relates To:  All Actions | **PROTECTIVE ORDER** |

Pursuant to the proposed Protective Order, attached as Exhibit A to the Joint Status Report and Letter Brief (ECF No. 203-1), e-filed by the parties on October 30, 2018,

**IT IS HEREBY ORDERED** that the proposed Protective Order (ECF No. 203-1) is **ADOPTED**, and confidential information shall be disclosed only in the following ways:

1.     **Scope.** All documents, electronically stored information, items, and other information produced or adduced in the course of discovery, regardless of the medium or manner generated, stored, maintained or revealed (including, among other things, initial disclosures, responses to discovery requests, deposition testimony, and exhibits), and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential or Highly Confidential Information as defined below.  This Order shall apply to any named party to this action (including all of its officers, directors, employees, retained experts, outside counsel (and their support staff)).  This Order is subject to the Local Rules of this District and the Federal Rules of

Civil Procedure on matters of procedure and calculation of time periods.

2. **Confidential Information.** As used in this Order, "Confidential Information" means any document, or any portion thereof, which contains confidential or proprietary business, commercial, research, personnel, product or financial content belonging to the producing party, and which is designated as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" for purposes of this litigation. Confidential Information may fall within one or more of the following categories: (a) information prohibited from disclosure by statute or contractual agreement; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a person who is not a party to the case. The parties will make reasonable efforts to ensure that information or documents that are available to the public are not designated as Confidential Information.

3. **Highly Confidential Information.** As used in this Order, "Highly Confidential Information" means any document, or any portion thereof, which a producing party or non-party believes to be so highly sensitive that: (i) it is the subject of reasonable efforts to maintain its secrecy; (ii) it is sufficiently valuable and secret to afford a potential or actual advantage over others; (iii) its disclosure to existing or potential competitors or customers would cause injury to the business, commercial, competitive, or financial interests of the producing party or non-party; and (iv) it is

2

designated as "HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" for purposes of this litigation.  By way of example only, Highly Confidential Information may include but is not limited to:  (a) current or future business strategies and other strategic planning information; (b) projections or plans regarding performance, budgets, production, output, sales, marketing or distribution practices; (c) research and development information; (d) manufacturing know-how or technology; (e) board of directors materials and presentations; (f) customer lists or information; (g) negotiation strategies; (h) proprietary software, systems, or processes; (i) margin, cost, and pricing information; or (j) intellectual property.  If required by applicable privacy laws, Highly Confidential Information may also include personnel files that are designated as such for purposes of this litigation.

   **4.      Designation.**

      (a)      A party may designate a document as Confidential or Highly Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner that will not interfere with the legibility of the document.   To the extent a document is produced in a form in which placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document is not practicable, the producing party may designate the document as confidential by cover letter, slip sheet, or by affixing a label to the production media containing the document.

3

As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential or Highly Confidential Information.  The marking "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time the documents are produced or disclosed.  Applying such marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.  Any copies that are made of any documents marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of documents designated as Confidential or Highly Confidential Information and do not otherwise disclose the substance of the Confidential or Highly Confidential Information are not required to be marked.

(b)     Though the parties understand that the designation of a document as Confidential or Highly Confidential Information is a certification by an attorney that the document contains Confidential or Highly Confidential Information as defined in this Order, the parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The parties agree to work together on an as-needed (and per document) basis to address any potential over (or under) designation.

5.     **Depositions.**  Unless all parties agree otherwise on the record at the time

4

the deposition testimony is taken, all deposition testimony taken in this case shall be treated as Confidential Information for a period of thirty (30) days after the transcript is delivered to the party being deposed.   If counsel for any party states on the record that the deposition testimony should be treated as Highly Confidential Information, such testimony will be treated as Highly Confidential Information for the thirty (30)-day period following the delivery of the transcript to the party seeking to designate material as confidential.  No later than the thirtieth day after the transcript is delivered to the party being deposed or a party seeking to designate material as confidential, whichever is later, a party may serve a Notice of Designation to all parties of record and the court reporter for the deposition in question as to specific pages of the transcript that are designated Confidential or Highly Confidential Information, and thereafter only those portions identified in the Notice of Designation shall be protected by the terms of this Order.  The court reporter shall provide a final copy of the transcript that reflects any designations of pages of the transcript as Confidential or Highly Confidential Information in the lower left-hand corner of each designated page.

**6.    Protection of Confidential or Highly Confidential Material.**

(a)    **General Protections.**  Except as set forth below, Confidential or Highly Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than the prosecution or defense of claims in, or the settlement of, this litigation, including any appeal thereof.  In this putative class action, Confidential or Highly Confidential Information may be disclosed only to the named plaintiffs and not to any

other member of the putative class unless and until a class including the putative member has been certified. Nothing in this Order, however, shall prevent or prejudice any party designating materials Confidential or Highly Confidential Information from using its own such designated documents for any purpose, including privately disclosing its own Confidential or Highly Confidential Information to others not mentioned in this Paragraph 6, and such private disclosure shall not waive the protections of this Order.

(b) **Limited Third-Party Disclosures.** The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential or Highly Confidential Information to any third person or entity except as set forth below in subparagraphs (1)-(10) and (1)-(9), respectively. Subject to these requirements, the following categories of persons may be allowed to review Confidential Information:

(1) Counsel. Outside or in-house counsel for the parties (or in-house counsel for the parties' affiliates) and employees of such counsel who have responsibility for the preparation and trial of the action;

(2) Parties. Individual parties and employees or former employees of a party, but only to the extent counsel has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the individual party, employee, or former employee has knowledge; disclosure to such individual party, employee, or former employee is limited to the portion of the document about such events, transactions, discussions, communications, or data; and such party, employee, or

former employee has completed the certification contained in
Attachment A, Acknowledgment of Understanding and Agreement to
Be Bound to this Order;

(3)   The Court and its personnel;

(4)   Court Reporters and Recorders.  Court reporters and recorders
engaged for depositions;

(5)   Contractors.  Those persons specifically engaged for the limited
purpose of making copies of documents or organizing or processing
documents, including outside vendors hired to process electronically
stored documents;

(6)   Consultants and Experts.  Consultants, investigators, or experts
employed by the parties or counsel for the parties to assist in the
preparation and trial of this action but only after such persons have
completed the certification contained in Attachment A to this Order;

(7)   Witnesses.  During depositions or testimony at trial or any hearing,
witnesses in this action to whom disclosure is reasonably necessary,
provided that counsel for the party intending to disclose the
information has a good-faith basis for believing such Confidential
Information is relevant to events, transactions, discussions,
communications or data about which the witness is expected to testify
or about which the witness may have knowledge.  Witnesses shall
not retain a copy of documents containing Confidential Information,

7

except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts. Pages of transcribed testimony that are designated as Confidential Information pursuant to Paragraph 5 may not be disclosed to anyone except as permitted under this Order.

(8)     Author or recipient. The author or recipient of the document (not including a person who received the document solely in the course of litigation);

(9)     Identified Persons. Any person who is referenced in the document or whose conduct is purported to be identified in the document, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the person has knowledge; disclosure to such person is limited to the portion of the document in which the person or person's conduct is identified or referenced; and such person has completed the certification contained in Attachment A to this Order; and

(10)   Others by Consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

The following categories of persons may be allowed to review Highly
Confidential Information:

(1)     Counsel.  Outside counsel for the parties and employees of such
        counsel who have responsibility for the action, provided that such
        individuals do not regularly participate in the commercial business
        activities of the party;

(2)     The Court and its personnel;

(3)     Court Reporters and Recorders.  Court reporters and recorders
        engaged for depositions;

(4)     Contractors.  Those persons specifically engaged for the limited
        purpose of making copies of documents or organizing or processing
        documents, including outside vendors hired to process electronically
        stored documents;

(5)     Consultants and Experts.  Consultants, investigators, or experts
        employed by the parties or counsel for the parties to assist in the
        preparation and trial of this action but only after such persons have
        completed the certification contained in Attachment A to this Order;

(6)     Witnesses.  During depositions or testimony at trial or any hearing,
        witnesses in this action to whom disclosure is reasonably necessary,
        provided that counsel for the party intending to disclose the
        information has a good-faith basis for believing such Highly
        Confidential Information is relevant to events, transactions,

9

discussions, communications or data about which the witness is

expected to testify or about which the witness may have knowledge.

Before disclosing any document pursuant to this paragraph, counsel

who intends to disclose the document must first notify counsel for the

designating party of their intent to do so.  At depositions, trial or

hearings, such notice may be accomplished by presenting a copy of

the Highly Confidential Information to counsel for the designating

party and permitting counsel an opportunity to object before the

document is shown to the witness.  Until the designating party

agrees to the disclosure, or the Court orders such disclosure, Highly

Confidential Information shall not be disclosed to or discussed with

any witness.  Witnesses shall not retain a copy of documents

containing Highly Confidential Information, except witnesses may

receive a copy of all exhibits marked at their depositions in connection

with review of the transcripts.  Pages of transcribed testimony or

exhibits to depositions that are designated as Highly Confidential

Information must be separately bound by the court reporter and may

not be disclosed to anyone except as permitted under this Order.

(7)     Author or recipient.  The author or recipient of the document (not

including a person who received the document solely in the course of

litigation);

(8)     Identified Persons.  Any person who is referenced in the document

10

or whose conduct is purported to be identified in the document, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Highly Confidential Information is relevant to events, transactions, discussions, communications or data about which the person has knowledge; disclosure to such person is limited to the portion of the document in which the person or person's conduct is identified or referenced; and such person has completed the certification contained in Attachment A to this Order; and

(9)   Others by Consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

To the extent any person is required to complete the certification contained in Attachment A to this Order, facsimile signatures or signatures transferred in electronic format (*e.g.*, PDF) shall be treated as original signatures purposes of this Order.

(c)   **High Level Summaries**. Notwithstanding the provisions of paragraph 6(b), outside counsel for a party that is a corporation or other type of business entity may provide high level summaries or characterizations of the evidence in the case to individuals employed by the party who have responsibility to make decisions regarding the defense or settlement of the case. Nothing in this Order is intended to bar or otherwise prevent any counsel from rendering advice to his or her client with respect to this litigation

11

and, in the course of rendering such advice, from relying upon his or her examination or knowledge of Confidential or Highly Confidential Information.

      (d)    **Control of Documents.**  Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential or Highly Confidential Information.  Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

      7.    **Absent Class Members.**  Confidential or Highly Confidential Information may not be disclosed to absent members of a certified class (each an "Absent Class Member") who have not intervened or otherwise appeared in this litigation, except under the circumstances described in Paragraph 6(a)-(b) of this Order.  If, however, Confidential or Highly Confidential Information is contained in a filing with the Court pursuant to Paragraph 9 of this Order, such filing may be disclosed to counsel for the Absent Class Member (or the Absent Class Member if not represented) for purposes of evaluating any settlement affecting the Absent Class Member, provided that such counsel, if any, and the Absent Class Member have completed the certification contained in Attachment A to this Order.

      8.    **Inadvertent Failure to Designate.**  An inadvertent failure to designate a document as Confidential or Highly Confidential Information does not, standing alone, waive the right to so designate the document.  If a party designates a document as Confidential or Highly Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to ensure

that the document is treated in accordance with the provisions of this Order.   No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential or Highly Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential or Highly Confidential Information.

9.     **Filing of Confidential or Highly Confidential Information.**  This Order does not, by itself, authorize the filing of any document under seal.  Any party wishing to file a document designated as Confidential or Highly Confidential Information in connection with a motion, brief or other submission to the Court must comply with Local Rule 5.6.

10.     **No Greater Protection of Specific Documents.**  Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.  Nothing in this Order shall prevent a party from seeking greater or lesser protection with respect to the use of any Confidential or Highly Confidential Information.

11.     **Challenges by a Party to Designation as Confidential or Highly Confidential Information.**  The designation of any document as Confidential or Highly Confidential Information is subject to challenge by any party.  The following procedure shall apply to any such challenge.

(a)     **Meet and Confer.**  A party challenging the designation of Confidential or Highly Confidential Information must do so in good faith and must begin

the process by conferring directly with counsel for the designating party. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated document, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within five (5) business days of the meet and confer.

(b) **Judicial Intervention.** A party that elects to challenge a confidentiality designation may (i) seek informal dispute resolution with the Court if such process can be mutually agreed upon with the designating party; or (ii) file and serve a motion that identifies the challenged document and sets forth in detail the basis for the challenge. Each such motion's supporting brief may not exceed five (5) pages and must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure outlined above. The burden of persuasion in any such challenge proceeding shall be on the designating party, who shall have the right to respond to any motion filed by a challenging party. Until the Court rules on the challenge, all parties shall continue to treat the document as Confidential or Highly Confidential Information under the terms of this Order. As such, any motion challenging a confidentiality designation must not publicly file the documents with contested designations nor describe them in a manner that would reveal Confidential or Highly Confidential Information.

12. **Action by the Court.** Applications to the Court for an order relating to documents designated Confidential or Highly Confidential Information shall be by motion.

14

Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

13.   **Use of Confidential or Highly Confidential Documents or Information at Trial.**  Nothing in this Order shall be construed to limit the use of any document at any trial or hearing provided that the parties take necessary advance precautions to avoid the public disclosure of Confidential or Highly Confidential Information.  A party that intends to present or that anticipates that another party may present Confidential or Highly Confidential Information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum sufficiently in advance of the proceeding without disclosing the Confidential or Highly Confidential Information. The Court may thereafter make such orders as are necessary to govern the use of such documents at hearing or trial.

14.   **Third Parties.**  In seeking discovery from third parties, the parties shall attach this Order to a copy of any subpoena or other discovery request.  Third parties from whom discovery is requested are parties to this Order and are entitled to the protections of this Order in responding to such requests.

15.   **Confidential or Highly Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**

(a)      If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any document designated in this action as Confidential or Highly Confidential Information, the receiving party must so notify the

15

designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b)     The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c)     The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential or Highly Confidential Information in the court from which the subpoena or order issued. The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential or Highly Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential or Highly Confidential Information by the other party to this case.

16.     **Challenges by Members of the Public to Sealing Orders.** If a party or interested member of the public challenges the sealing of particular documents that have been filed under seal, the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

17.    **Unauthorized Disclosure or Use.**  If a party learns that it or its counsel, officers. directors, employees, consultants, experts or other agents have disclosed documents designated Confidential or Highly Confidential Information in any circumstance not authorized under this Order, that party must within two (2) business days of learning of such disclosure (a) notify the designating party of the disclosure and all pertinent facts relating thereto, (b) make every reasonable effort to prevent disclosure by each unauthorized person who received such information, (c) use reasonable best efforts to retrieve all copies of the protected documents disclosed to unauthorized persons, (d) inform the person or persons to whom unauthorized disclosures were made of the terms of this Order, and (e) request that each such person execute the certification contained in Exhibit A to this Order.  Nothing contained herein shall limit the right of the designating party to seek relief against the party responsible for such disclosure.

18.    **Limitations on Waiver of Privilege.**

(a)    **Clawback of Inadvertent Disclosure.**  This Order is entered, *inter alia*, pursuant to Federal Rule of Evidence 502(d).  If a party or non-party that produces or otherwise discloses information in connection with this Litigation (the "Producing Party") thereafter claims that such information is protected by any privilege or attorney work product protection ("Disclosed Protected Information"), the disclosure of the Disclosed Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Disclosed Protected Information and its subject matter in this proceeding or in any other federal or state proceeding.  The parties

17

stipulate that by entering this Confidentiality Order, the Court shall provide the maximum protection allowed by Rule 502(d).

(1)     **Assertion of a Clawback.**  Any Producing Party may request, in writing, the return of any Disclosed Protected Information by identifying it and stating the basis for withholding such material or information from production.  The Producing Party must also provide a privilege log explaining the basis for the assertion of the privilege within 3 business days of asserting a clawback.

(2)     **Clawbacks before Deposition.**  To the extent a party believes a clawback made prior to a scheduled deposition impacts that deposition, the parties will meet and confer and a party may seek guidance from the Court if the meet and confer does not reach a successful resolution.

(3)     **Clawback  Process.**  Federal Rule of Civil Procedure 26(B)(5)(b) shall govern the clawback of Disclosed Protected Information.

a.     If a Producing Party requests the return of such Disclosed Protected Information then in the custody of one or more parties, the receiving parties shall—unless it contests the claim of attorney-client privilege or work product protection in accordance with sub-paragraph 18(b)(2)(b) – within ten (10) business days of receipt of written notice (i) destroy or return to the Producing Party the Disclosed Protected Information and all copies thereof, and (ii) provide a certification of counsel that all of the Disclosed Protected Information has been returned or destroyed.

b.     **Challenging a Clawback.**  Notify the producing Party or non-Party that it wishes to challenge the claim of privilege or work product

18

protection and has sequestered the material until the issue can be resolved. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. A Party challenging a clawback request under this paragraph may use the clawed-back document and its contents for the purpose of filing a motion with the Court under seal that challenges whether or not the document is privileged or work product only in accordance with the provisions of Fed. R. Civ. P. 26(b)(5)(B).

   c. The parties may stipulate to extend the time periods set forth in sub-paragraph (a).

   d. Disclosed Protected Information that is sought to be reclaimed by the parties to this case pursuant to this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

   e. The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information. Nothing in this paragraph shall limit the right of any party to petition the Court for an *in camera* review of the Disclosed Protected Information.

   (b) Where a party agrees to or is ordered to destroy a clawed back document, the party must instruct their e-discovery vendor to delete the document entirely from their e-discovery database and delete other copies of the clawed back document. To the extent that it is not technologically feasible for a receiving party to destroy a clawed back document (for example, if the clawed back document is part of a production

19

provided on read-only production media such that the clawed back document cannot be destroyed without destroying the entire production media), the parties will meet and confer as to an acceptable alternative approach.

(c)     **Receiving Party's Obligation.**  Without waiving the ability to challenge a clawback under ¶ 18(a)(3)(b) a party who discovers that it may have received an inadvertently disclosed or produced protected document must promptly notify the disclosing or producing party.  A party who is notified or discovers that it may have received a protected document must comply with Fed. R. Civ. P. 26(b)(5)(B).

19.     **Claims of Privilege and Redactions**

(a)     **Production of Privilege Logs.**  Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs in MS Excel format or any other format that permits electronic sorting and searching.  All privilege logs will served within 60 days after Substantial Completion of Document Productions.

(b)     **Exclusions from Logging Potentially Privileged Documents.** The following categories of documents do not need to be contained on a producing Party's initial privilege log, unless good cause exists to require that a Party do so.

(1)     Information generated after June 30, 2018.  This provision does not apply to third parties to the Litigation.

(2)     Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with

20

specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

(3)     Any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

(c)   Privilege Log Requirements:

(1)     **Metadata Log.**  To the extent applicable, each Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.

a.     Objective metadata includes the following (as applicable to the document types as shown in Appendix A to the ESI Protocol Order):

i.     A unique privilege log identifier that makes clear the familial relationship of documents, i.e., parent/child.
ii.     Custodian
iii.     DuplicateCustodian, CustodianOther or

21

              CustodianAll (if applicable)

    iv.     File Name

    v.      Email Subject

    vi.     Author

    vii.    From

    viii.   To

    ix.     CC

    x.      BCC

    xi.     Date Sent

    xii.    Date Received

    xiii.   Date Created

    b.     In addition to the objective metadata fields, a Party must also include a field on its privilege log entitled "Attorney/Description of Privileged Material" if the basis for the privilege asserted is not apparent from the objective metadata (e.g., the name of the attorney will be provided if not included in the objective metadata). Further, a Party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the claim of privilege in light of the metadata that is discernable and/or the information provided in the Attorney/Description of Privileged Material field.

    c.     With respect to the "Email Subject" or "File Name" field, the producing Party may substitute a description of the document where the contents of these fields may reveal privileged information. In the privilege log(s), the producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "File Name" field (e.g., "[metadata redacted/altered to protect privilege]."

    d.     Should a receiving Party, in good faith, have reason

to believe a particular entry on a metadata-generated privilege log is responsive and does not reflect privileged discoverable information, the receiving Party may request, and the producing Party will not unreasonably refuse to provide, more information about the basis of the asserted privilege in compliance with Fed. R. Civ. P. 26(b)(5).

   (2) **Email Chains.** If there is more than one branch of (i.e., more than one unique group of recipients of) an email thread, each branch will be individually logged; however, each individual email within the thread need not be logged if the recipients of the email chain are all identical.   A Party asserting privilege over a chain of emails may produce only a single redacted copy of such email chain consistent with the ESI Protocol to the extent some portions are only partially privileged, except that any unique branches of the email chain must also either be produced in redacted form or included on the metadata privilege log.

   (3) **Email Families.** Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

   (d) **Documents Redacted for Privilege.** As an initial production matter, redacted documents need not be logged as long as (a) for emails, the objective metadata (i.e., to, from, cc, bcc, recipients, date, and time, unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document, or, if noting the nature on the face of the document is not technologically feasible, is noted in the metadata field provided in section F below (for redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the

document that is sufficient to understand the subject matter of the document may be requested); and (b) for non-email documents, the reason for the redaction is noted on the face of the document in the redacted area.   The producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information.   After receipt of the production, the requesting Party may request in good faith that the producing Party create a privilege log for specific redacted documents. Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

(e)     **Challenges to Privilege Claims.**  Following the receipt of a privilege/redaction log, a requesting Party may identify, in writing (by Bates/unique identified number), the particular documents that it believes require further explanation. The producing Party shall endeavor to respond to such a request within 14 days.  If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.   If they cannot agree, the matter may be brought to the Court.

(f)     **Privilege Metadata Fields.**  Where a document is either withheld in full or redacted on the basis of a privilege, then that privilege shall be provided in a metadata field entitled "Privilege Asserted" and list a short description of the privilege asserted (e.g., "Attorney Client Privilege", "Attorney Work Product").

**20.**   **Obligations on Conclusion of Litigation.**

(a)     **Order Continues in Force.**  Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to

24

further appeal.

(b)      **Obligations at Conclusion of Litigation.**  Within sixty (60) days

after dismissal or entry of final judgment not subject to further appeal, all Confidential and

Highly Confidential Information, including copies as defined in Paragraph 4(a), shall be

returned to the producing party unless:  (1) the document has been offered into evidence

or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent

practicable in lieu of return; or (3) as to documents bearing the notations, summations or

other mental impressions of the receiving party, that party elects to destroy the documents

and certifies to the producing party that it has done so.

(c)      **Retention of Work Product and Filed Documents.**

Notwithstanding the above requirements to return or destroy documents, counsel may

retain (1) email correspondence related to their representation, (2) attorney work product,

including an index that refers or relates to designated Confidential or Highly Confidential

Information so long as that work product does not duplicate verbatim substantial portions

of Confidential or Highly Confidential Information; and (3) one complete set of (a) all

documents filed with or by the Court, including those filed under seal; (b) all transcripts of

depositions, including exhibits; and (c) all final expert witness reports and supporting

materials disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure.  Any

retained Confidential or Highly Confidential Information shall continue to be protected

under this Order.  An attorney may use his or her work product in subsequent litigation,

provided that its use does not disclose Confidential or Highly Confidential Information.

Nothing in this Order shall be construed to require the destruction or return of Confidential

or Highly Confidential Information stored in counsels' archives, back-up media, or disaster recovery media.

(d)     **Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System.**  Filings under seal shall be deleted from the ECF system only upon order of the Court.

21.     **Order Subject to Modification.**  This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

22.     **No Prior Judicial Determination.**  This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document designated Confidential or Highly Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

23.     **Persons Bound.**  This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

24.     **Future Parties.**  The terms of this Order shall be binding upon all current and future parties to this litigation and their counsel; any party appearing in the litigation following entry of this Order shall be deemed to have joined the case subject to its provisions.

25.     **Personal Jurisdiction.**  Nothing herein shall be construed as a

26

determination by the Court, or as a consent or waiver by any party, or parent or affiliate of

any party, that such party, or parent or affiliate of a party, is subject to personal

jurisdiction in this Court or that discovery as to such party, or parent or affiliate of a party,

shall proceed pursuant to the Federal Rules of Civil Procedure.


Dated:  November 26, 2018                    _s/ Hildy Bowbeer_____
                                              HILDY BOWBEER
                                              United States Magistrate Judge

27

## ATTACHMENT A TO PROTECTIVE ORDER

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

In re Pork Antitrust Litigation

Civil No. 18-cv-1776 (JRT/HB)

---

This Document Relates To:  All Actions

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

---

The undersigned hereby acknowledges that he/she has read the Protective Order in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms.  The undersigned submits to the jurisdiction of the United States District Court for the District of Minnesota in matters relating to the Protective Order and understands that the terms of the Protective Order obligate him/her to use materials designated as Confidential or Highly Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential or Highly Confidential Information to any other person, firm, or concern.

The undersigned acknowledges that violation of the Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Date: _____     _____
                              Signature

# EXHIBIT E

## TO DECLARATION
## OF DAVID MULLIN

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

*IN RE PORK ANTITRUST LITIGATION*        §        Case No. 0:18-cv-01776-JRT-HB

This Document Relates To:

ALL COMMERICAL AND
INSTITUTIONAL INDIRECT
PURCHASER PLAINTIFF ACTIONS

## AFFIDAVIT OF BRIAN PIANCINO

**BEFORE ME**, the undersigned notary, on this day personally appeared Brian Piancino the Affiant, a person whose identity is known to me. After I administered an oath, Affiant testified:

1.      My name is Brian Piancino. I am over the age of eighteen (18) years, am of sound mind, and fully competent to make this Affidavit. I have personal knowledge of all facts stated herein, and they are all true and correct.

2.      I am currently employed by Affiliated Foods, Inc. ("Affiliated Foods") full-time as its Chief Operating Officer ("COO"). I have been Affiliated Foods' COO for over two years. I am not a party to this lawsuit styled *In Re Pork Antitrust Litigation*; in the United States District Court for the District of Minnesota; Civil Action No. 18-cv-1776 (JRT/HB) (the "Pork Lawsuit"). Affiliated Foods is not a party to such lawsuit.

3.      Based on my personal knowledge as COO of Affiliated Foods, Affiliated Foods has never (i) conducted business in the State of Minnesota, (ii) made sales in or directed at the State of Minnesota, (iii) purchased any goods from any person or entity residing or located in the State of Minnesota, nor (iv) entered into any contracts with a

Minnesota resident. Affiliated Foods is incorporated under the laws of the State of Texas and has its principal place of business in Amarillo, Texas.

4.      On May 7, 2021, Affiliated Foods was served with a subpoena to produce documents and data by the class action Plaintiffs in the Pork Lawsuit (the "Subpoena").

5.      At my direction, Affiliated Foods' accounting department, IT department and management team closely reviewed the Subpoena to determine what resources Affiliated Foods needed to employ to comply with the Subpoena, including, but not limited to, the number of employees needed, the amount of time needed, and the various logistical production processes needed. In our review, Affiliated Foods determined, among other things, that, if compelled to comply with the Subpoena, it could produce the relevant records only back to 2009, despite the Subpoena requiring records from before 2009.

6.      After considering Plaintiffs' contention that they are only seeking the pork purchases and sale transactional data that Affiliated foods maintains in the ordinary course of business which they say should be a straightforward process of exporting purchase/sale datasets exportable into a useable form, such as Microsoft Excel, Affiliated Foods determined that the pork purchase and transactional data that it maintains in the ordinary course of business, as described by the Plaintiffs, is not retrievable without a massive investment in time and labor cost because it does not maintain any such purchase/sale datasets in its ordinary course of business.

7.      There are only two employees in Affiliated Foods IT department with the training and the knowledge to perform the work necessary to comply with the Subpoena.

Based on our careful and thorough analysis, it would take those two individuals a minimum of 327 hours to complete their portion of the work required to find and produce the responsive documents and data, which would include backup tape restorations, data formatting, and database searches. In addition to this added work caused by the Subpoena, I am personally aware of five large projects ongoing within the IT department, not including these employees' normal daily operational workload. I, and other members of management, have determined that these five projects are critical to the success of Affiliated Foods' operations and cannot be paused to comply with the Subpoena. While two of the five projects are an estimated 30-60 days away from completion, the most time-consuming and important project is an estimated nine months from completion.

8.    Affiliated Foods' accounting department analyzed the Subpoena and performed an initial inquiry into the number of relevant records. Based on its analysis, the accounting department determined that an estimated 300,000 records were relevant to the requests in the Subpoena. They also determined that these documents must be manually searched and retrieved from our imaging database, imported, and prepared for production. Again, these records only go back through 2009.

9.    After the accounting department's analysis, Affiliated Foods' CFO ran a sample batch for all items and vendors relevant to the Subpoena since January 2020 (approximately one and a half years). We annualized the volume of the records and calculated the average time to gather the relevant purchase and sales records—seven minutes for purchase records and eight minutes for sales records. We then used the annualized volume to calculate the total amount of time required to produce all the

3

relevant records and determined that it would take Affiliated Foods approximately 74,000 hours to comply with the Subpoena. We also determined that the average salary of an employee needed for such a project is $17.00 per hour. Accordingly, we determined that it would cost over $1.2 million in labor plus benefits to comply. Finally, we determined that Affiliated Foods must hire at least 35 people to comply with the Subpoena in one year.

10.     I am personally aware that Affiliated Foods currently has approximately 50 open positions that we are struggling to fill. Based on our recent hiring trends, I personally believe that Affiliated Foods could not hire enough people to comply with the Subpoena in 5 years.

11.     Based on the foregoing, the burden imposed on non-party Affiliated Foods by this Subpoena would cause great harm to the business because numerous employees would be pulled away from their daily tasks and operations for months or longer to comply. Thus, compliance with the Subpoena is simply not feasible.

_____
Brian Piancino, Affiant

**SWORN TO, SUBSCRIBED AND ACKOWLEDGED BEFORE ME** on this 30th day of August 2021 by Brian Piancino.

_____
Notary Public in and for the State of Texas Idaho

4