UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Case No. 0:18-cv-01776-JRT-HB <br><br> **HORMEL CUSTODIANS' RESPONSE AND OPPOSITION TO CLASS PLAINTIFFS' MOTION TO COMPEL AND ENFORCE SUBPOENAS** |

## I.   INTRODUCTION

Plaintiffs served document subpoenas on thirty non-party individuals seeking detailed content from the subpoena recipients' personal cell phones over a ten-year period that ended three years ago. The vastly overbroad and unduly burdensome requests are not proportional to the needs of the case or reasonably tailored to lead to the discovery of information relevant to Plaintiffs' allegations. In response to the subpoena recipients' initial objections, rather than work with counsel to narrow the requests and identify a mutually agreeable compromise, Plaintiffs proposed a methodology and list of search terms even more broad and burdensome than the initial subpoena requests.

Plaintiffs have not met their burden to establish the likelihood that relevant and responsive information exists on the subpoena recipients' personal cell phones and Plaintiffs' motion to compel should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Overview of Subpoena Recipients

Since May 3, 2021, Rock Hutchinson, PLLP has accepted service of subpoenas on behalf of its clients, 30 individual recipients ("Subpoena Recipients"), including 17 current and 13 former employees of Hormel Foods Corporation, a named Defendant in this litigation. (Dkt. 888-2, Ex. 17; Stephens Decl. at ¶2[1]) None of the individual Subpoena Recipients is a named party in this litigation. (Stephens Decl. at ¶3) The Subpoena Recipients' roles and responsibilities during their employment with Hormel vary widely, from the current President, CEO and Chairman of the Board, to a Director of Deli Marketing, and a Director of Pork Operations who retired in 2012. (Stephens Decl. at ¶4) In their Motion to Compel, as in the entire process and exchange related to these subpoenas, Plaintiffs have made no effort to distinguish between the individual Subpoena Recipients or address their widely varied circumstances.

Each of the subpoenas included seven identical requests, aimed at text messages exchanged with other defendants in this litigation and industry competitors "or any other individual with whom you communicated about supply and demand conditions in the Pork industry," as well as other documents regarding contact cards, messaging applications, preservation efforts, and device identification information. (Dkt. 888-2, Ex.

---

[1] References in this Response to the Stephens Decl. refer to the Declaration of Kathryn Stephens, dated August 31, 2021, filed concurrently with this Response, and the Exhibits thereto.

17) The subpoenas also sought access by a forensic vendor, to "any archived copies of your cellphone data." (Id.)

### B. Overview of Process

Counsel for the Subpoena Recipients conducted individual interviews with each Subpoena Recipient to determine whether each of them might have potentially responsive communications stored on their personal cell phones, especially text messages that would not be discoverable through other less intrusive and less burdensome means. (Stephens Decl. at ¶5) Specifically, counsel inquired regarding each Subpoena Recipient's use of their personal cell phone for work-related text communications during the relevant time period (January 1, 2008 to August 17, 2018); their history with Hormel; whether their role(s) involved communication with individuals outside of Hormel and whether any of those were via text message; whether they had any text communications with anyone outside of Hormel regarding supply and demand conditions in the pork industry; the identification of their current and prior devices and cell phone carriers; their use of cloud back-up for cell phone content; and other information regarding their historical use of their personal cell phones. (Stephens Decl. at ¶6) Based upon information obtained in these interviews, counsel for the Subpoena Recipients prepared and served individual response letters and objections for each deponent. (Stephens Decl. at ¶7; Dkt. 888-2, Ex. 2) Only a small group of the Subpoena Recipients reported using their personal devices for work-related text communications with anyone outside of Hormel. (Stephens Decl. at ¶8) None of the Subpoena Recipients reported having any text communications with anyone outside of Hormel regarding supply and demand conditions in the pork industry.

(Stephens Decl. at ¶8) More than half of those Subpoena Recipients who reported external work-related text communications also reported that their cell phones had previously been imaged. (Stephens Decl. at ¶8) The vast majority of the Subpoena Recipients either did not use text messaging for any work-related communications, or used it only for communications with other Hormel employees. (Stephens Decl. at ¶8)

### C. Communications Between Counsel

Counsel have exchanged four letters and three e-mails, and participated in two meet and confer calls regarding the subpoenas and the Subpoena Recipients' objections. (Stephens Decl. at ¶9 and Ex. A to G) Following receipt of the first handful of response letters and objections, Plaintiffs' counsel sent correspondence suggesting that Hormel's earlier discovery response indicating that some document custodians used their cell phones for work-related e-mails and phone calls somehow contradicted the Subpoena Recipients' representations in response letters that they did not communicate by text-message for work-related matters. (Clark letter dated 5/31/2021, Ex. A to Stephens Decl.) Certainly, e-mails and phone calls are not the same as text messages and the two representations are not contradictory.

The following day, counsel for the Subpoena Recipients had an initial meet and confer call with Plaintiffs' counsel. (Stephens Decl. at ¶10) During that June 1 call, Plaintiff's counsel asked whether the Subpoena Recipients would be amenable to having their devices imaged for the purpose of preserving current content. (Stephens Decl. at ¶10) Plaintiffs' counsel suggested that a list of search terms might be run against those images with any hits to be reviewed by counsel for relevance. (Stephens Decl. at ¶10)

Counsel for the Subpoena Recipients agreed to explore that possibility, but made clear that the cost for any imaging and forensic searches would need to be borne by Plaintiffs, not by the non-party Subpoena Recipients, and that the list of search terms must be targeted to identify only text communications relevant to Plaintiffs' claims. (Stephens Decl. at ¶10)

Several weeks after this initial meet and confer call, Plaintiffs' counsel sent additional correspondence enclosing a proposed methodology for imaging and searching all of the Subpoena Recipients' personal devices using a list of proposed terms comprising 781 unidentified telephone numbers and 330 search terms.[2] (Owen letter dated 6/30/2021, Ex. B to Stephens Decl.; Dkt. 888-2, Ex. 16) The proposed search terms included such vague and indefinite terms as "buy," "drive," "practice," and "together," in addition to a series of names of other Hormel employees and former employees. (Ex. B to Stephens Decl.; Dkt. 888-2, Ex. 16) Counsel requested that all of the Subpoena Recipients' phones be imaged and the images be searched for any text messages exchanged with any of the unidentified 781 phone numbers provided. (Ex. B to Stephens Decl.) Counsel requested that any hits "be produced directly" and indicated that "Plaintiffs' position is that any inter-defendant text message should be produced (irrespective of a relevance review)." (Id.) Plaintiffs provided no information to establish the purported owners of the 781 phone numbers. Plaintiffs' counsel then proposed as a

---

[2] For Subpoena Recipients whose phones had previously been imaged, Plaintiffs requested additional detailed information considerably beyond the initial subpoena requests.

second step, that any *remaining* text messages (with *any* phone numbers) be searched using the proposed 330 search terms, presumably with any hits being reviewed by counsel for relevance. (Id.) Counsel also stated that Plaintiffs would not pay for any of the proposed imaging or forensic searches. (Id.)

What Plaintiffs' counsel purportedly proposed as a "compromise" related to the initial subpoena requests and objections did not align with the earlier meet and confer conversation, and was actually vastly broader and more burdensome than the original, objectionable subpoena requests. After counsel pointed out this basic departure from the earlier conversation, Plaintiffs' counsel responded indicating their understanding that the Subpoena Recipients were refusing to image devices or run search terms using the methodology "necessary to conduct a reasonable search." (Stephens letter dated 7/16/2021, Ex. C to Stephens Decl.; Owen email dated 7/19/2021, Ex. D to Stephens Decl.)

Counsel for the Subpoena Recipients clarified that imaging and searches based upon a reasonably targeted list of search terms, at least for some portion of the Subpoena Recipients, was not out of the question, but that the proposed methodology was vastly overbroad and that the Subpoena Recipients, as non-parties, should not have to bear the costs associated with these proposed processes. (Stephens email dated 7/22/2021, Ex. E to Stephens Decl.)

In a subsequent meet and confer call, counsel discussed the widely varying situations of the thirty Subpoena Recipients and that there had not been adequate information provided to establish, or even suggest, that each of them (or any of them)

was reasonably likely to have responsive text messages on their current personal devices, particularly given the information provided by the current and former employees themselves. (Stephens Decl. at ¶17) Counsel also pointed out the vastly overbroad nature of many of the proposed search terms and why they were not reasonably tailored to find messages directly relevant to the underlying litigation or the original subpoena requests. (Stephens Decl. at ¶17) Counsel for the Subpoena Recipients requested a compromise proposal considering these issues and Plaintiffs refused. (Id.) Plaintiffs' counsel was unwilling to provide justification for the inclusion of all thirty of the Subpoena Recipients in the same methodology, and unwilling to narrow the list of proposed search terms. (Stephens letter sent 8/2/2021, Ex. G to Stephens Decl.) Rather than negotiate further, Plaintiffs' counsel abruptly stated the parties were too far apart and indicated Plaintiffs intended to file a motion to compel, as the Subpoena Recipients were unwilling to provide the information in the precise manner in which it was requested. (Stephens Decl. at ¶17)

Plaintiffs then filed their Motion to Compel and related documents approximately two weeks later. (Dkt. 883-891)

### III.   ARGUMENT

#### A. Legal Standard

The moving party must make a threshold showing of relevance on a motion to compel. Bredemus v. Int'l Paper Co., 252 F.R.D. 529, 533 (D. Minn. 2008). District courts have broad discretion to limit discovery when the burden of compliance outweighs its likely benefit or relevance. See Fed. R. Civ. P. 26 (b)(2)(C). Non-party status is a

factor courts may consider when analyzing whether a subpoena is unduly burdensome. See, e.g., Aeritas, LLC v. Delta Airlines, Inc., No. 1:13-cv-346-RWS-WEJ, 2013 WL 454452, at *2 (N.D. Ga. Feb. 7, 2013); Precourt v. Fairbank Reconstruction Corp., 280 F.R.D. 462, 467 (D. S.D. 2011) (noting courts are particularly mindful of Rule 45's undue burden and expense cautions when subpoena is to non-party); Whitlow v. Martin, 263 F.R.D. 507, 512 (C.D. Ill. 2009). "To determine whether a Rule 45 subpoena is unduly burdensome, a court may weigh a number of factors including 'relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are requested, and the burden imposed.'" Whitlow, 263 F.R.D. at 512 (quoting Morrow v. Air Ride Technologies, Inc., No. IP-05-113, 2006 WL 559288, at *2 (S.D. Ind. Mar. 6, 2006)).

Rule 45 protects subpoena recipients from undue burden or expense in responding to requests to produce electronically stored information. See Fed. R. Civ. P. 45 (d)(1), (e)(1)(D). Requested information may be considered "not reasonably accessible" on the basis of undue burden or cost. See id.; see also Peterson v. Seagate, No. 07-2502 MJD/AJB, 2011 WL 861580, at *1 (D. Minn. Feb. 2, 2011) (ordering discovery be conducted at requesting party's expense where requested information not reasonably accessible because of undue burden or cost). Discovery from non-parties typically carries a heavier burden to establish relevance than that required for discovery from parties. Zukoski v. Philadelphia Elec. Co., No. CIVB.A.93-4780., 1994 WL 637345, at*3 (E.D. Pa. Nov. 14, 1994). "The burden on the non-party is particularly great when the party issuing the subpoena seeks private information." Pinehaven Plantation Props., LLC v.

Mountcastle Family LLC, No. 1:12-cv-62 (WLS), 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013) (citing Wheeles v. Human Res. Sys., Inc., 179 F.R.D. 635, 639 (S.D. Ala. 1998)).

### B. Plaintiffs have not met their burden

In their Motion, Plaintiffs attempt to justify the subpoenas based on broad general statements about "the Hormel custodians" as if they were all similarly situated. Plaintiffs refer to "phone record evidence" demonstrating that the "Hormel custodians" "sent and received text messages for work-related purposes." (Dkt. 885 at p. 15) Importantly, Plaintiffs' counsel has not previously provided any information regarding these phone record logs to counsel for the Subpoena Recipients. Tellingly, Plaintiffs' supporting Declaration refers to only five Subpoena Recipients sending text messages for work purposes. (Dkt. 887 at ¶20) Furthermore, sending work-related text messages generally is far different than communicating with industry competitors regarding supply and demand conditions in the Pork industry. Plaintiffs have provided no information supporting their suggestion that any of the Subpoena Recipients, not to mention *all* of them, are reasonably likely to have responsive text communications on the current cell phones.

Plaintiffs have not met their burden to establish the likelihood that each of the thirty Subpoena Recipients is likely to have responsive text messages on their current personal cell phones, particularly given the Subpoena Recipients' representations regarding their own use of text messaging for work-related communications outside of Hormel. Plaintiffs' motion to compel should be denied. See Struzyk, 2003 WL 21302966,

at *2 ("Denial of a motion to compel discovery is proper if the evidence sought was almost certainly nonexistent or the object of pure speculation.")

### C. Plaintiffs' Request is Overly Burdensome and Not Proportional

Counsel for the Subpoena Recipients contacted a vendor to provide an early cost estimate for imaging and conducting forensic examination of the Subpoena Recipients' personal devices. Based on that inquiry, the Subpoena Recipients estimate that the cost to collect and image 30 devices and complete forensic searches of text messages using Plaintiffs' proposed list of search terms would be somewhere between $65,000 and $85,000, excluding the attorneys' fees associated with conducting a relevance review of any hits resulting from the searches. Given the vastly overbroad list of terms, such searches would almost certainly result in a large body of documents to be reviewed by counsel for potential relevance. The potential costs are not proportional to the vanishingly small chance that the proposed searches would lead to the discovery of any information responsive to the subpoena requests or relevant to any parties' claims or defenses in this litigation.

### D. Even If Subpoenas to Some Custodians Were Proper, Plaintiffs Did Not Meet Obligation to Meet and Confer in Good Faith

The movant seeking to compel discovery responses has an obligation under the Rules to meet and confer in good faith with the other party in an effort to obtain the requested discovery without court action. See Fed. R. Civ. P. 37(a)(1); D. Minn. L.R. 7.1, 37.1; see also Struzyk v. Prudential Ins. Co. of Am., No. 99-1736 (JRT/FLN), 2003 WL 21302966, at *1-2 (D. Minn. May 16, 2003). After counsel for the Subpoena Recipients

pointed out the overly broad and unduly burdensome nature of the proposed methodology and search terms, Plaintiffs' counsel's response indicated that they had no interest in addressing the concerns and objections of the Subpoena Recipients and that they were already planning to file discovery motions against Hormel and the Subpoena Recipients. Plaintiffs' made no attempt to negotiate in good faith to develop a more narrowly tailored list of search terms or a more appropriately targeted list of Subpoena Recipients for imaging and conducting forensic searches. Plaintiffs have provided no information to counsel to establish, based on a given Subpoena Recipients' role, known communications, or any other evidence, why he or she is likely to have responsive text communications on their personal cell phone.

## IV.  CONCLUSION

Plaintiffs have made no attempt to explain why any one Subpoena Recipient's response to the subpoena was insufficient or why any particular Subpoena Recipient is likely to have any additional responsive documents.  Further, given the estimated costs associated with conducting the searches as proposed, the requested information is not reasonably accessible to the Subpoena Recipients and Plaintiffs' motion to compel and enforce the subpoenas as served should be denied. See Fed. R. Civ. P. 45 (d)(1), (e)(1)(D).

- 12 -

Dated: August 31, 2021　　　　　**ROCK HUTCHINSON, PLLP**

　　　　　　　　　　　　　By:　*/s/ Kathryn Stephens*
　　　　　　　　　　　　　　　John Rock (#0323299)
　　　　　　　　　　　　　　　jrock@rockhutchinson.com
　　　　　　　　　　　　　　　Kathryn Stephens (#0399582)
　　　　　　　　　　　　　　　kstephens@rockhutchinson.com
　　　　　　　　　　　　　　　2050 Canadian Pacific Plaza
　　　　　　　　　　　　　　　120 South Sixth Street
　　　　　　　　　　　　　　　Minneapolis, MN  55402
　　　　　　　　　　　　　　　Telephone: (612) 573-3688
　　　　　　　　　　　　　　　Facsimile: (612) 330-0959

　　　　　　　　　　　　　　　*Counsel for Subpoena Recipients*