**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **In re Pork Antitrust Litigation** | Case No. 18-cv-01776-JRT-HB |
| This Document Relates To All Actions | |

**DEFENDANT HORMEL FOODS CORPORATION'S MEMORANDUM IN
OPPOSITION TO CLASS PLAINTIFFS' MOTION TO COMPEL**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

    A.    Hormel Foods' Mobile Device Policy Does Not Provide Hormel
           Foods Access to Cell-Phone Data ................................................... 2

    B.    Hormel Foods Complied with Preservation Requests from Plaintiffs .......... 4

    C.    Custodian Negotiations Between the Parties Resulted in the Addition
           of Custodians ................................................................................. 6

    D.    Hormel Foods Has Consistently Maintained That It Lacks
           Possession, Custody, or Control Over Its Employees' Cell Phones ............ 7

    E.    Most of the Custodians Have No Unique Information on Their
           Phones, And Plaintiffs Had the Opportunity to Address Their
           Concerns to Counsel for the Custodians ....................................... 10

ARGUMENT .................................................................................................... 11

I.     HORMEL FOODS DOES NOT HAVE POSSESSION, CUSTODY, OR
      CONTROL OF ITS EMPLOYEES' CELL PHONES ......................................... 11

    A.    The Court's ESI Protocol Recognizes That Cell Phones May Be
           Outside of a Party's Control .......................................................... 11

    B.    Hormel Foods' Mobile Device Policy and Software Do Not Permit
           Company Access to Employee Text Messages ............................. 12

    C.    The Weight of Authority Supports Hormel Foods' Position ..................... 13

II.    HORMEL FOODS COMPLIED WITH ITS PRESERVATION
      OBLIGATIONS ................................................................................. 18

    A.    Plaintiffs' Request Is an Improper Request for Declaratory Judgment ...... 18

    B.    Hormel Foods Complied with Its Preservation Obligations Under the
           Federal Rules of Civil Procedure ................................................. 21

    C.    Hormel Foods Complied with the Agreed-Upon Protocols Entered
           by This Court Governing Preservation and Production ............................. 22

III.    PLAINTIFFS' MOTION REPRESENTS A GROSS OVERREACH OF

DISCOVERY ............................................................................................. 25

A.      Plaintiffs' Request Is Overly Broad and Disproportionate ......................... 25

B.      Plaintiffs Have Made No Effort to Reasonably Narrow the Scope of
        the Information Sought by Their Rule 45 Subpoenas ................................. 28

CONCLUSION ............................................................................................. 29

## INTRODUCTION

Hormel Foods Corporation ("Hormel Foods" or "Company") has consistently maintained a Bring Your Own Device ("BYOD") program which does not give the Company the authority to take custody of employee cell phones or to control personal data stored on those phones. The BYOD program respects the very personal nature of cell phones, and Hormel Foods neither claims nor exercises any right to monitor, access, inspect, or image its employees' phones or any data residing on those phones not owned by the Company, including text messages. Plaintiffs' Motion to Compel, however, asks this Court for an order effectively declaring that Hormel Foods' employees have no expectation of privacy in their phones and that Hormel Foods has the invasive power to access, control, inspect, and image personal data on employee phones.

Consistent with its BYOD program and Mobile Device Policy ("MDP"), and the ESI Protocol and the Protocol for Preservation of Phone Records ("Agreed Protocol") in this litigation, Hormel Foods has maintained that it does not have possession, custody, or control of employee cell phones. In response, Plaintiffs served third-party subpoenas on all thirty of Hormel Foods' agreed-upon custodians, regardless of their position, role in the Company, connection to the litigation, or status as current or former employees. Despite Plaintiffs' sweeping and overreaching use of the Court's subpoena power, all thirty custodians retained counsel who provided Plaintiffs with details regarding each custodian's cell-phone usage and attempted to negotiate a reasonable approach to discovery. But, perhaps seeing a procedural shortcut and motivated by litigation gamesmanship, Plaintiffs chose to file their Motion in an attempt to obtain the data from

1

Hormel Foods instead of working with counsel for the custodians.

Hormel Foods has repeatedly raised objections to cell-phone discovery based upon its lack of possession, custody, or control of those devices, and Plaintiffs waited for months to resolve the issue. Plaintiffs appear more interested in engaging in motion practice than obtaining relevant facts through legitimate discovery, as evidenced by their abrupt end to negotiations with the custodians and rejection of reasonable offers of production and discovery of the custodians' phones. Fact discovery in this case continues to confirm that Hormel Foods never subscribed to Agri Stats sales reports, purchases nearly all of its hogs from independent producers, never materially decreased its processing of pork during the Relevant Time Period, and never discussed—much less agreed—to reduce its production of pork or hogs. Sideshow discovery motions should be no substitute for actual proof of Plaintiffs' claims.

Hormel Foods does not have possession, custody, or control of its employees' cell phones, and Class Plaintiffs' motion should be denied.

## **BACKGROUND**

### A.  **Hormel Foods' Mobile Device Policy Does Not Provide Hormel Foods Access to Cell-Phone Data**

Since at least 2011, Hormel Foods has utilized a BYOD program for employee cell phones, governed by a written MDP. HRL Ex. 1;[1] Declaration of Amy Morrison ("Morrison Decl."), ¶ 2. The BYOD program allows employees to interact remotely with

---

[1] To avoid confusion with the exhibits submitted by Plaintiffs, Hormel Foods will denote exhibits included with this response as HRL Ex. __.

certain Hormel Foods corporate systems using personally owned mobile devices. *See* Morrison Decl. ¶ 4. These corporate systems include data on Hormel Foods' servers such as email, calendars, and contacts (if set up through an employee's corporate email account). *Id.* ¶ 8. The MDP is clear as to what data is and is not owned by Hormel Foods. Specifically, the MDP provides that Hormel Foods only "owns all data that is sourced from Hormel systems." HRL Ex. 1 § F. Hormel Foods does not claim any right to control or access employee-owned phones, personal email, text messages, personal contacts, device location, photos and videos, voicemail, or the content of personal applications installed by employees. *See id.* § B; Morrison Decl. ¶ 18. In other words, Hormel Foods controls only Company data accessed through a phone—but *not* the phone itself or any other personal data on the phone.

The only right that Hormel Foods claims with respect to employee phones enrolled in the BYOD program is the ability to retire (remove) MobileIron, its mobile-device-management software, and MobileIron-controlled (Company) data, or to initiate a remote wipe of Company data under limited and specifically designated circumstances where Company data may be at risk. Morrison Decl. ¶ 11. Hormel Foods has—and claims—no right to physically inspect, image, access, or otherwise control its employees' phones or the data on those phones. *Id.* ¶¶ 7, 18.

Employees may back up personal data using their own device-management accounts, such as iTunes, iCloud, or Google Drive. *Id.* ¶ 13. Employees enrolled in the BYOD program, however, cannot use a device-management account to back-up data owned by Hormel Foods or used with any applications delivered by Hormel Foods

3

through MobileIron. *Id.* ¶ 14. The MDP allocates responsibility for device-management accounts to employees and provides that "[a]ll app downloads and purchases for the device are the sole responsibility of the owner or assigned user of the device." HRL Ex. 1 § B. Hormel Foods does not have the right to access employee cloud backups. Nor does it have the technical ability to remotely "image" a phone, and *it has never before* performed an "imaging" process to extract personal data from devices owned by employees. Morrison Decl. ¶¶ 19, 20.

**B.      Hormel Foods Complied with Preservation Requests from Plaintiffs**

During the early months of this litigation, Hormel Foods and Plaintiffs communicated regarding preservation of personal phone records and Hormel Foods complied with Plaintiffs' various requests. On July 19, 2018, shortly after the filing of the first Complaints in this matter, Plaintiffs requested that Hormel Foods preserve data from the personal cell phones of five Company "Senior Executives" through forensic imaging of those devices. HRL Ex. 2.

On October 26, 2018, Hormel Foods informed Plaintiffs that Hormel Foods did not "purchase or otherwise pay for cell phones or other personal devices of Company employees," including the "Senior Executives" identified by Plaintiffs. HRL Ex. 3. Hormel Foods also informed Plaintiffs that it had "no reason to believe that any information potentially relevant to this lawsuit uniquely resides on any personal devices of the [identified Senior Executives]" and that it was "aware of no general obligation under the Federal Rules of Civil Procedure to forensically image personal devices of Company personnel." *Id.* Hormel Foods nonetheless agreed that for limited custodians, it

4

would retain a vendor that would, with the consent, participation, and permission of the identified custodians, and at significant expense to Hormel Foods, image their personal devices, capturing information over which Hormel Foods did not have possession, custody, or control. *Id.* Hormel Foods informed Plaintiffs that the action was "being taken without conceding that there is any data contained on those cell phones that would be relevant to this case and without waiving any argument or objection about the propriety of discovery directed to those devices." *Id.* Hormel Foods confirmed that devices in addition to personal cell phones were also imaged for the identified executives. HRL Ex. 4.

On May 13, 2019, following the Court's direction to meet and confer regarding procedures for cell-phone preservation (Dkt. 318), the Parties entered into an Agreed Protocol for Preservation of Phone Records ("Agreed Protocol") for agreed-to document custodians. HRL Ex. 5. The Agreed Protocol explicitly recognized that parties may not have possession, custody, or control of personal cell-phone data. For custodians whose cell-phone data is not within the possession, custody, or control of a Defendant, the Agreed Protocol provides that (1) the Defendant will undertake reasonable efforts to determine whether the custodian used the cell phone for work purposes; and (2) if so, either assist the custodian in sending a preservation request to their telephone carrier or inform Plaintiffs that the custodian would not agree to send such a letter. *Id.*

Hormel Foods complied with the Agreed Protocol for the seven custodians agreed upon by the Parties at that time. Specifically, for those custodians who used their cell phones for any work purpose, Hormel Foods assisted them in sending preservation letters

to their carriers. HRL Ex. 6.[2] None of the custodians who used their cell phones for work purposes refused to send a preservation letter to their carriers. The Agreed Protocol that Plaintiffs negotiated did not impose any obligation to image personal cell phones or take any other preservation measures for employee-controlled devices. *See* HRL Ex. 5. Nor did the Agreed Protocol impose any obligation on Defendants to disclose whether it had possession, custody, or control of document custodian text message data or mobile device backups. *See id.* Plaintiffs also did not make any demand that Hormel Foods image the personal devices of newly proposed document custodians.

### C.    Custodian Negotiations Between the Parties Resulted in the Addition of Custodians

Negotiations between Hormel Foods and Plaintiffs did not result in agreement on most custodians until late November 2020.

On April 18, 2019, Hormel Foods served its initial list of document custodians identifying the seven individuals that Hormel Foods had previously disclosed in its December 3, 2018 Initial Disclosures. HRL Ex. 6. In response, on May 15, 2019, Plaintiffs proposed an additional fifty-two persons as document custodians. HRL Ex. 8. Hormel Foods' response indicated that some of the conditionally proposed custodians were former employees with no custodial ESI, and stated that it has consistently informed Plaintiffs that it does not have ESI for former employees. *Id.* As the Parties continued

---

[2] After the Parties agreed to twenty-three additional document custodians, Hormel Foods disclosed the cell phone numbers of current employees and, on December 30, 2020, Plaintiffs subpoenaed the cell-phone records for those individuals from the cell carriers. *See* HRL Ex. 7.

custodian negotiations, the Court granted Defendants' Motion to Dismiss. At that point, Hormel Foods had only agreed to the initial seven custodians proposed in its April 2019 list.

After the Court denied Defendants' Motion to Dismiss Plaintiffs' Amended Complaints in October 2020, discovery negotiations recommenced. After extensive negotiations, the Parties reached agreement on custodians on November 24, 2020. HRL Ex. 9. Of the twenty-three additional custodians, the Parties understood that some were former employees (seven); some were added for the limited purpose of involvement in internal pricing decisions (six); some were added for the limited purpose of involvement in investor relations (two); and some were limited to specific time periods (five). *See* HRL Exs. 10–11. None of the current employees added at that point had involvement in Agri Stats reports, Hormel Foods' decisions about hog or pork production, or any direct connection to the purported conspiracy Plaintiffs allege. And for most of the agreed-upon custodians, the Parties were therefore in agreement that a limited collection of documents was appropriate and that, for many of them, no ESI would be available.

### D.   Hormel Foods Has Consistently Maintained That It Lacks Possession, Custody, or Control Over Its Employees' Cell Phones

As Plaintiffs recognize, Hormel Foods has repeatedly asserted that documents or information from its custodians' cell phones are not within its possession, custody, or control. On March 29, 2019, in response to a request for production of documents related to cell phones, Hormel Foods objected and stated that it was not in possession, custody, or control of documents related to "personal cell phones." Declaration of Joseph C.

Bourne ("Bourne Decl.") Ex. 13, p. 20. Similarly, on January 20, 2021, in response to Interrogatory No. 9—which sought information about personal cell phones and personal social media used by Hormel Foods custodians—Hormel Foods stated that the Interrogatory sought information "outside of Hormel Foods' possession, custody, or control." Bourne Decl. Ex. 4. In addition, in response to Interrogatory No. 10—which sought device manufacturer and model information for personal electronic devices of Hormel Foods' document custodians—Hormel Foods objected to the Interrogatory as seeking information "outside of Hormel Foods' possession, custody, or control." *Id.*

Despite these disclosures, the present dispute was not raised until after Hormel Foods substantially completed production of documents from its two priority custodians—identified by Plaintiffs as Corwyn Bollum and Paul Peil—on April 15, 2021. *See* Dkt. 615. When Plaintiffs asked whether Bollum's and Peil's cell-phone and text-message content were complete, Hormel Foods again confirmed that it did not have possession, custody, or control of either custodian's personal devices and would thus not be producing content from those devices. *See* Bourne Decl. Ex. 6.

In subsequent correspondence, Plaintiffs misstated the contents of the Agreed Protocol and the ESI Protocol, while baselessly accusing Hormel Foods of failing to comply with preservation obligations. *See* Bourne Decl. Exs. 6–7, 9. For example, Plaintiffs inexplicably claimed that the Agreed Protocol obligated Hormel Foods to notify Plaintiffs if Hormel Foods took the position that personal cell phone devices were not within its possession, custody, or control—even though the Agreed Protocol contains no such requirement. *See* Bourne Decl. Ex. 6.

After the Parties reached an impasse regarding whether Hormel Foods has possession, custody, or control over its custodians' cell phones, and between May 27 and June 25, Plaintiffs served subpoenas on all thirty individuals identified as Hormel Foods' document custodians. Bourne Decl. Ex. 17. Via their Rule 45 subpoenas, Plaintiffs sought far more information than Hormel Foods would ever have been required to produce based upon the Parties' agreements. For example, Plaintiffs knew that Hormel Foods lacked custodial ESI for seven former employees who left the Company prior to the commencement of litigation, but Plaintiffs served each of those individuals with broad subpoenas seeking cell-phone data. For eleven document custodians, the Parties agreed that only certain time frames during which those employees served in particular roles were relevant; but Plaintiffs served each of those individuals with broad subpoenas seeking cell-phone data for the entirety of Plaintiffs' defined "Relevant Period" without regard to the prior agreements. And Plaintiffs proposed to the document custodians a list of search terms to be applied to their ESI that is much broader than the agreed-upon search terms to be applied to custodial ESI within Hormel Foods' possession, custody, or control. *See* Bourne Decl. Ex. 16.

During their perfunctory meet-and-confer process with the custodians, Plaintiffs refused to limit their subpoenas to certain individuals based on their positions, role, or usage of cell phones, and they objected to any relevancy review by the custodians' counsel. *See* Dkt. 885, 6. Indeed, Plaintiffs' claim is not that the ESI productions negotiated with Hormel Foods should be produced from ESI on custodians' cell phones, or that ESI be preserved, but instead that Hormel Foods and its custodians should

"produce responsive phone content on personal cell phones to the *greatest extent feasible*." *Id.* at 7 (emphasis added).)

### E. Most of the Custodians Have No Unique Information on Their Phones, And Plaintiffs Had the Opportunity to Address Their Concerns to Counsel for the Custodians

Counsel for the document custodians provided Plaintiffs with significant information disclosing how each custodian used their cell phones during the relevant time period. *See* Bourne Decl. Ex. 2. Many of the custodians did not use their cell phones for work purposes at all. Others used their phones only to access e-mail or make calls. Few sent text messages for work purposes, and those who did were disclosed to Plaintiffs. *Id.*

Rather than engage in meet-and-confers and continue negotiations with the custodians' counsel, Plaintiffs filed this motion. *See* Bourne Decl. Exs. 11–12. Plaintiffs purport to identify several custodians who texted numbers associated with other Hormel Foods custodians, while ignoring that many of the custodians are colleagues and friends who live in the same small town of Austin, Minnesota[3]—where Hormel Foods is headquartered. Virtually no custodians are alleged to have texted anyone outside of Hormel Foods for work-related purposes, and those few custodians were disclosed by Plaintiffs' Counsel. Plaintiffs declined to focus discovery on those custodians and filed their Motion instead.

---

[3] Austin has a population of approximately 25,000—which is more than seventeen times smaller than Minneapolis. *Compare* U.S. Census Bureau, QuickFacts: Austin, Minn., https://www.census.gov/quickfacts/austincityminnesota (last visited Aug. 30, 2021); *with* U.S. Census Bureau, QuickFacts: Minneapolis, Minn., https://www.census.gov/quickfacts/minneapoliscityminnesota (last visited Aug. 30, 2021).

## <u>ARGUMENT</u>

Hormel Foods respectfully requests that this Court deny Plaintiffs' Motion for three reasons. First, the Company's policies and practices are consistent with the law that an employer may adopt a BYOD program which recognizes the reasonable expectation of privacy that employees have in personal cell phones and does not authorize control over employee-owned phones. Second, Hormel Foods complied with its preservation obligations. Third, Plaintiffs' motion to compel reflects a gross overreach of discovery and results from their refusal to negotiate in good faith to reach a reasonable resolution of their demands with counsel for the custodians.

## I.   HORMEL FOODS DOES NOT HAVE POSSESSION, CUSTODY, OR CONTROL OF ITS EMPLOYEES' CELL PHONES

The prevailing law, this Court's orders, and the facts associated with Hormel Foods' cell-phone policies do not support Plaintiffs' assertion that an employer necessarily controls its employees' personal cell phones.

### A.   The Court's ESI Protocol Recognizes That Cell Phones May Be Outside of a Party's Control

The ESI Protocol—which was negotiated and litigated by the Parties—expressly recognizes that a cell phone used for work purposes may be outside a party's control. Specifically, section V.E sets forth steps that should be taken by a producing party *if* a cell phone used for work purposes is within the possession, custody, or control of the producing party. Dkt. 292. Thus, the ESI Protocol contemplates that a party may take the position that it does not possess or control its employees' cell phones.

In accordance with the ESI Protocol, Hormel Foods has consistently maintained

that it does not have possession, custody, or control of its custodians' cell phones, and it notified Plaintiffs of this position "prior to the culling of any cell phone data." *See id.*

### B. Hormel Foods' Mobile Device Policy and Software Do Not Permit Company Access to Employee Text Messages

The recognition that an employer does not have *de facto* control over its employees' personal devices is grounded in privacy law and affords companies the flexibility to adopt mobile-device policies based upon their unique circumstances and company cultures. The Supreme Court has recognized the significant privacy interests that individuals possess in their personal cell phones. *See, e.g.*, *Riley v. California*, 573 U.S. 373, 403 (2014) (finding that a warrant is required before searching a personal cell phone, barring exigent circumstances); *United States v. Carpenter*, 585 U.S. ---, 138 S. Ct. 2206, 2218–19 (2018) (finding that a person has an expectation of privacy in movements captured by cell-phone data from wireless carriers).

Consistent with the courts' broad recognition of the personal nature of cell phones, Hormel Foods' MDP recognizes its employees' privacy interests in their BYOD cell phones. To access Hormel Foods' corporate information from personal devices, including Company e-mail, employees must install mobile-device management software. Morrison Decl. ¶ 4. That software enables Hormel Foods to protect Company data by allowing Hormel Foods to retire (remove) MobileIron, its mobile-device-management software, and MobileIron-controlled (Company) data, or initiate a remote wipe of a cell phone if it is lost or compromised. *Id.* ¶ 11. Hormel Foods does not have any other control over its employees' cell phones, nor does the Company claim or possess any right to access,

view, or copy data on those phones. Most notably, Hormel Foods does not have the ability, software, or right to access employee text messages or personal information, inspect or image phones, or otherwise take custody or control of their phones, and has never done so. *See id.* ¶¶ 19, 20.

### C.      The Weight of Authority Supports Hormel Foods' Position

Courts recognize that where company policies do not give a company the right to access ESI on personal devices—as is the case with Hormel Foods' BYOD policy—such ESI is outside the company's possession, custody, or control. For example, in *Matthew Enterprise, Inc. v. Chrysler Group LLC*, No. 13-CV-04236-BLF, 2015 WL 8482256, at *3-4 (N.D. Cal. Dec. 10, 2015), the court found that, even where company employees were not provided company e-mail accounts and instead used personal accounts for business purposes, personal e-mail was nonetheless outside of the company's possession, custody, or control. Similarly, in *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JW, 2013 WL 3819974, at *6 (D. Kan. July 24, 2013), the court held that a defendant did not have possession, custody, or control over employee text messages where the company was not found to have any right to obtain text messages on demand.

This case law comports with the Sedona Conference principles regarding BYOD policies. In *The Sedona Conference Commentary on BYOD: Principles and Guidance for Developing Policies and Meeting Discovery Obligations* ("*BYOD: Principles and Guidance*"), the Sedona Conference recognizes that the legal-right standard should be applied to questions of possession custody, or control over BYOD devices. Specifically, courts should refrain from assuming that companies can "demand the device from its

13

employees." 19 Sedona Conf. J. 495, 531 (2018). Whether or not employers have that power as a practical matter, "organizations should not be compelled to terminate or threaten employees who refuse to turn over their devices for preservation or collection." *Id.* To hold otherwise "would impose too heavily on the relationship between employees and their employer." *Id.* at 532. That policy accords with the overwhelming weight of authority recognizing the importance of employee control over their own devices.

Here, Hormel Foods MDP—which is a BYOD policy—does not give the Company a right to exercise any control over employees' personal data. Thus, by not asserting or establishing any legal right with respect to its employees' data, the MDP is squarely consistent with the facts in *Cotton*. *See* 2013 WL 3819974, at *6. And although the Sedona Conference recognizes that a "consent," "acknowledgment," or other agreement executed by an employee may grant an organization control over the employee's ESI, Hormel Foods' policy declines to establish any employer right to access personal data. *BYOD: Principles and Guidance*, 19 Sedona Conf. J. at 531. Thus, the order Plaintiffs seek would rewrite Hormel Foods' MDP and *sua sponte* declare that the Company has the legal right to control employee-owned devices and data despite the Company's clear language and practice to the contrary.

Although this District has not squarely addressed whether or when a company is required to produce text-message data from its employees' cell phones when BYOD policies are in effect, this Court recognizes that there is a significant difference between work-provided devices and personal devices. In *Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2013 WL 6094600, at *10 (D. Minn. Nov. 20, 2013), the Court

14

addressed discovery requests for text-message data and other ESI contained on mobile devices. The Court granted a motion to compel text messages from work-provided mobile devices but denied a motion to compel production from personal mobile devices and denied a request for additional time to subpoena those devices, noting that the plaintiff had not met her burden to establish entitlement to such devices. *Id.* Here, the devices at issue are owned by the custodians and not provided or owned by Hormel Foods. *Ewald* clearly indicates that Plaintiffs cannot demand discovery of employee cell phones through Hormel Foods.

The facts here contrast markedly with *United States v. Cameron-Ehlen Group, Inc.*, No. 13-CV-3003 (WMW/DTS), 2020 WL 9209366, at *10 (D. Minn. July 10, 2020), *aff'd in part, rev'd in part sub nom. United States ex rel. Fesenmaier v. Cameron-Ehlen Group, Inc.*, No. 13-CV-3003 (WMW/DTS), 2021 WL 101193 (D. Minn. Jan. 12, 2021). There, the Court recognized that the inquiry turns on a specific, fact-intensive focus on the employer's policies, approaches, and legal rights, including, in that case, the employer's practice of reimbursing for use of employee-owned phones for work purposes. Significantly, the plaintiffs in *Cameron-Ehlen* presented testimony about substantive, relevant use of text messages for work purposes. *Id.* Here, however, Plaintiffs have not offered any such evidence, drawing only speculative conclusions from text-message logs and blatantly ignoring the statements provided by the custodians regarding their usage of their personal phones. The mere fact that colleagues texted one another indicates nothing about whether they did so for work or any purpose remotely related to this litigation. Finally, in *Cameron-Ehlen*, personal devices were destroyed

after discovery requests had been submitted; thus, a clear record existed that relevant text messages existed but were not preserved. Plaintiffs have presented no evidence that relevant information requested during discovery was improperly lost.

In short, the overwhelming weight of authority supports the conclusion that employers with BYOD policies do not control their employees' cell phones, particularly when the policies decline to exercise control over employee phones and personal data. Plaintiffs cite no case law to the contrary and instead rely upon case law consistent with these principles. For example, in *H.J. Heinz Co. v. Starr Surplus Lines Insurance Co.*, No. 2:15-CV-00631-AJS, 2015 WL 12791338, at *4 (W.D. Pa. July 28, 2015), *report and recommendation adopted*, No. 2:15-CV-00631-AJS, 2015 WL 12792025 (W.D. Pa. July 31, 2015), that court made the unremarkable finding that H.J. Heinz Co. maintained custody and control over personal mobile devices that *were company owned* and over the *company's information and e-mails* on personally owned devices. *Id.* at *4. Thus, "with regard to Heinz's data present on employee-owned personal mobile devices under its BYOD program, Heinz has custody and control *of Heinz's data*." *Id.* (emphasis added).[4] Moreover, the BYOD policy at issue there was much more restrictive because it required employees to place "monitoring software" on their device to facilitate Heinz's control of corporate data—software not required by Hormel Foods' MDP or used by the Company.

---

[4] Notably, the *Heinz* court concluded that because the custodians at issue provided declarations that they did not use their personal mobile devices to send or receive text messages related to substantive Heinz business, the motion to compel production of their text messages was denied. In contrast, Plaintiffs ask this Court to ignore the clear statements offered by the custodians regarding their usage of their cell phones.

Plaintiffs' reliance on Hormel Foods' ability to remotely wipe data is misplaced. Hormel Foods' right to wipe data is expressly limited to specific instances necessary to protect Company data; the Company does not have the right to possess or control the devices or data on those devices. The *Heinz* court never held that the power to remotely wipe an employee's phone constitutes possession, custody, or control over the device that grants the employer the right to insist on full inspection and imaging of the phone. Here, Plaintiffs seek an order stating that Hormel Foods has the right to inspect and image its employees' phones, and it clearly does not.

While Plaintiffs' motion seeks production by Hormel Foods from cloud backups of custodians' cell phones, Hormel Foods has no authority at all to wipe or access those backups. *See* Morrison Decl. ¶ 18; HRL Ex. 1 § F. Nor does it even know whether or where cloud backups exist. Even under Plaintiffs' unsupported theory, an employee's cloud backup would fall outside of Hormel Foods' control. Indeed, accessing those cloud backups—if any exist—would require the Company to obtain personal logins and passwords necessary to download such information. As to current employees, this request may run afoul of employment and privacy laws; as to former employees (some of whom retired a decade ago), Hormel Foods has no basis or ability to demand such information. Plaintiffs' position illustrates the extent of their overreach.

Importantly, Plaintiffs' motion does *not* seek Company e-mail or data found uniquely on an employees' personal device—that information has already been obtained, searched, and produced to Plaintiffs if responsive and nonprivileged. Rather, Plaintiffs seek discovery into the personal text messages (and other personal messaging apps) of

17

Hormel Foods' current and former employees. Because Hormel Foods lacks possession, custody, or control of that information, the Court should deny Plaintiffs' motion.

## II.   HORMEL FOODS COMPLIED WITH ITS PRESERVATION OBLIGATIONS

While styled as a motion to compel, Plaintiffs' motion asks the Court to declare that Hormel Foods has been obligated to preserve its custodians' text-message content since 2018. This thinly veiled motion for declaratory relief is procedurally improper, factually unfounded, and a transparent attempt to tee up a spoliation motion that cannot be substantiated. It also ignores the preservation obligations negotiated and agreed on by the Parties to this litigation. The requested relief amounts to a demand that the Court implement a broad rule that a party to a litigation has a sweeping duty to image employee-owned cell phones, evidently including the phones of employees before they have even been identified as custodians.

### A.   Plaintiffs' Request Is an Improper Request for Declaratory Judgment

Buried within Plaintiffs' Motion, pursuant to Federal Rule of Civil Procedure 37(a), to compel Hormel Foods to produce text messages from personal devices over which Hormel Foods has no possession, custody, or control—and without proper authority—is Plaintiffs' request for a declaration that Hormel Foods had a duty to preserve its employees'[5] text messages from the date the initial Complaint was filed.

---

[5] Plaintiffs' request is not limited to agreed-upon custodians, which were not identified until November 24, 2020. Rather, Plaintiffs request is this Court declare that Hormel Foods has been obligated to image cell phones and preserve the elective cloud backup of untold numbers of potential custodians' personal data since the litigation commenced.

(footnote continued)

A request for declaratory judgment may be had "upon the filing of an appropriate pleading" to "declare the rights or other legal relations of any interested party seeking such declaration," and "is appropriate when it will 'terminate the controversy' giving rise to the proceeding." *See* Fed. R. Civ. P. 57 & advisory committee's note. Here, Plaintiffs have neither filed the appropriate pleading nor properly presented a question of the Parties' rights to the Court.

The case law Plaintiffs cite neither supports their argument that Hormel Foods failed to comply with its preservation obligations, nor their contention that this Court could issue an order declaring that Hormel Foods had an independent obligation to image its employees' devices. First, in *In re Pradaxa Products Liability Litigation*, the defendant's employees were directed, by company policy, "to utilize text messaging as a form of business related communication." MDL No. 2385, 2013 WL 6486921, at *17 (S.D. Ill. Dec. 19, 2013), *order rescinded on other grounds sub nom.*, *In re Boehringer Ingelheim Pharms., Inc.*, 745 F.3d 216 (7th Cir. 2014). Moreover, "many employees utilized company issued cell phones," including the employee who attempted to draw a distinction between her non-substantive, work-related text messages and those that may have been substantive. *Id.* at *16 n.9, *18. In contrast, Plaintiffs now seek discovery of employee-owned BYOD phones that Hormel Foods did not provide or own, nor has

---

(footnote continued from previous page)

This is as impractical as it is burdensome. It is also impossible, because, as described previously, Hormel Foods does not have access to the elective cloud backups of its employees or former employees, at least not without obtaining their personal (not work) logins and passwords.

Hormel Foods ever directed its employees to conduct business via text message. Second, *Paisley Enterprises, Inc. v. Boxill* involved the intentional destruction of relevant text messages—which, based upon messages produced by a third party, indisputably existed—*after* the lawsuit had been filed, and for one custodian, after that custodian had been ordered to preserve text messages and expressly asked to produce them. 330 F.R.D. 226, 233 (D. Minn. 2019). Here, Plaintiffs have no basis to assert that *any* custodian has intentionally destroyed text messages. Similarly, *Cameron-Ehlen*, involved an admission by a defendant that "he communicated with a 'select group' of about 25 physicians by text message." 2020 WL 9209366, at *10. Moreover, that case further emphasizes that the obligation to preserve extends only to "business-related records, including text messages" that "could be relevant" to litigation—alleged kickbacks paid to physicians in that case. *Id.* at *12–13. Again, here, there is no indication that *any* text messages that may exist on a custodian's device has any relevance to the formation, enforcement, or operation of the alleged conspiracy at issue in this case. Finally, *Alter v. Rocky Point School District* involved a counsel's failure to convey to a custodian very likely to have relevant documents that an obligation to preserve relevant ESI exists. No. 13-1100, 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014).

Plaintiffs have not articulated any basis for their speculation that Hormel Foods failed to preserve all relevant ESI in existence at the time this case was filed, which is a necessary precursor to the declaratory relief Plaintiffs seek. Nor have Plaintiffs cited any case law supporting their demand that the Court issue an order that Hormel Foods failed to comply with its preservation obligations in this case.

20

### B.     Hormel Foods Complied with Its Preservation Obligations Under the Federal Rules of Civil Procedure

The Federal Rules of Civil Procedure require parties to take reasonable steps to preserve electronically stored information when litigation is anticipated or conducted. Fed. R. Civ. P. 37(e). Hormel Foods did not engage in the conduct alleged by Plaintiffs and thus had no reason to anticipate this litigation. When this action was filed, Hormel Foods issued litigation holds to all reasonable custodians, and it has supplemented that hold as necessary and appropriate throughout the course of this litigation.

Hormel Foods also performed due diligence to confirm whether and the extent to which its employees used personal devices for work-related purposes. Hormel Foods formally (and informally) confirmed to Plaintiffs on multiple occasions that exceedingly few of its custodians use their cell phones for work purposes other than sending and reviewing e-mails or placing and receiving phone calls. *See, e.g.*, Bourne Decl. Exs. 4, 6, 13. This has been verified by the custodians' responses to Plaintiffs' subpoenas. *See id.* Ex. 2.

Plaintiffs acknowledge that, as early as October 2018, Hormel Foods advised that it did not "purchase or otherwise pay for cell phones or other personal devices of Company employees," and that it had "no reason to believe that any information potentially relevant to this lawsuit uniquely resides on any personal devices of the Identified Senior Executives [i.e., the custodians that Plaintiffs identified in their July 19, 2018 letter]." HRL Ex. 3. Hormel Foods nonetheless agreed to facilitate the imaging of the phones of the identified executives, *based upon the consent* of those executives to

provide access to the devices. That letter also informed Plaintiffs that legal holds were in place and that preservation letters had been sent to cell-phone carriers. Thus, Hormel Foods fully complied with Plaintiffs' demands for imaging of the phones that Plaintiffs identified as of particular interest based on their allegations and claims.

Hormel Foods has fully complied with its preservation obligations pursuant to the Federal Rules of Civil Procedure, and it has produced voluminous documents and ESI in its possession, custody, and control. In good faith, Hormel Foods has exceeded its obligations by retaining a vendor and obtaining voluntary custodial consent to provide access to personal data over which Hormel Foods does not have access, possession, custody, or control.

### C. Hormel Foods Complied with the Agreed-Upon Protocols Entered by This Court Governing Preservation and Production

As described above, Hormel Foods does not have possession, custody, or control of its employees' cell phones. Regardless of whether custodians sent work-related text messages, the Company does not have the technical capability or authority to access those text messages. Morrison Decl. ¶ 19. Hormel Foods has acted consistently with the ESI Protocol and Agreed Protocol governing this matter.

The Parties negotiated and stipulated to the ESI Protocol, entered by the Court on February 20, 2019. *See* Dkt. 292. With regard to cell phones, the ESI Protocol provides as a threshold matter: "For Document Custodians agreed on by the Parties[6] or ordered by the

---

[6] The Parties did not agree on twenty-three of Hormel Foods' thirty custodians until November 24, 2020, yet Plaintiffs request this Court declare that Hormel Foods had an

(footnote continued)

Court, a Producing Party will take reasonable steps to identify whether any unique responsive communications are located on any cellphones in the possession, custody, or control of the Producing Party." *Id.* § V(E)(1). Hormel Foods took reasonable steps to confirm with its custodians whether any unique responsive communications were located on their cell phones. And the custodians have since confirmed to Plaintiffs that exceedingly little, if any, such data exists. *See* Bourne Decl. Ex. 2. Because Hormel Foods does not have possession, custody, or control of employees' personal cell phones (nor the text message communications Plaintiffs seek), its obligations under the ESI Protocol end there. *See* Bourne Decl. Exs. 4, 6.

At the Court's direction, the Parties also negotiated and agreed to the Agreed Protocol, which specifically addresses the Parties' preservation obligations for cell phones. As to cell phones *not within its possession, custody, or control* of a Defendant, the Defendant will undertake reasonable efforts:

- To determine whether each agreed-upon document custodian has a personal cell phone that was used by that document custodian for work purposes; and
- For each agreed-upon document custodian determined to have a personal cell phone that was used by that document custodian for work purposes, such Defendant will either:

    a. Assist that document custodian in sending a letter to their telephone carrier asking that carrier to preserve telephone records related to their phone number; or

---

(footnote continued from previous page)

obligation to preserve information from the June 2018 filing of the Complaint. Plaintiffs' request for such a ruling, untethered by any reasonable limitations on custodians or data in the possession, custody, or control of Hormel Foods, is unreasonable.

> b. If the Defendant or document custodian will not agree to the sending of such a letter, inform Plaintiffs that such a letter will not be sent with regard to that document custodian.

HRL Ex. 5, ¶ 2. The Agreed Protocol explicitly recognizes that "[n]othing in this protocol shall be construed as a concession that any information addressed by any preservation request is relevant, admissible, or will be produced to Plaintiffs in this litigation," and further, that Defendants do not "concede that personal cell phones or any other personal property of their employees are within Defendants' possession, custody, or control." *Id.* ¶ 3.

Plaintiffs do not point to any failure by Hormel Foods to comply with the Agreed Protocol. Hormel Foods has assisted agreed-upon custodians to send letters to their telephone carrier requesting that the carriers preserve telephone records related to their telephone number. Plaintiffs do not claim that any data from carriers has been lost, and, to the contrary, they tout to the Court the extensive discovery they have taken of the carriers. Plaintiffs had the opportunity to specific preservation obligations for cell phones, the Agreed Protocol was the result, Hormel Foods complied, and Plaintiffs do not point to any lost or missing information.

Nothing in the ESI Protocol nor the Agreed Protocol requires Hormel Foods take the extraordinary measures Plaintiffs ask this Court to impose upon it. Plaintiffs instead seek to retroactively impose preservation obligations beyond the Court's orders. Plaintiffs' improper use of Rule 37(a) to obtain a declaratory ruling on a party's broad duty to image employee-owned cell phones is both improper and a transparent attempt to set the stage for an unwarranted spoliation claim. For these reasons, Plaintiffs' motion

should be denied.

## III.   PLAINTIFFS' MOTION REPRESENTS A GROSS OVERREACH OF DISCOVERY

Separate and apart from the above, the Court should deny Plaintiffs' motion for two additional reasons.[7] First, the categories of information sought in Plaintiffs' discovery requests and subpoenas are overbroad and not proportionate to the needs of the case. Second, Plaintiffs have made no effort to reasonably narrow the scope of information sought by their subpoenas or to otherwise fulfill their meet-and-confer obligations with counsel for the custodians.

### A.   Plaintiffs' Request Is Overly Broad and Disproportionate

To the extent this Court concludes that the information sought *is* within Hormel Foods' possession, custody, or control, information sought must be significantly tailored in order to comply with the scope of discovery in this case.

The Federal Rules limit the scope of discovery to those materials that are "relevant to any party's claim or defense and proportiona[te] to the needs of the case." Fed. R. Civ. P. 26(b)(1). In deciding whether a request is proportionate to the needs of the case, a court should consider "the importance of the issues at stake in the action, . . . the

---

[7] It appears that Plaintiffs' motion is a motion to compel directed to Hormel and, separately, a motion to enforce the subpoenas served on the custodians. To the extent that Plaintiffs' request for relief is unclear, "Rule 37 *does not* provide a mechanism for enforcement of a subpoena. . . . '[Rule 37] has no application to a non-party's refusal to produce documents.'" *United States v. R.J. Zavoral & Sons, Inc.*, No. 12-cv-668, 2014 WL 12756820, at \*4 (D. Minn. Jan. 17, 2014) (quoting *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir. 1975)). Plaintiffs identify no authority by which this Court could "compel *a party* to respond to a subpoena *that was served on a non-party.*" *Id.* at \*5 (emphasis in original).

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* When a discovery request is beyond the permitted scope, a court "[o]n motion or on its own" "must limit" the extent of discovery sought. Fed. R. Civ. P. 26(b)(2)(C). Here, text messages of Hormel Foods' custodians are beyond the scope of discovery and would impose a burden on Hormel Foods that is disproportionate to the needs of this case.

Plaintiffs have no factual basis to expect that any custodian's cell phone is likely to contain unique responsive information. Under the terms of the ESI Protocol entered in this case, all Defendants are entitled and directed to take "reasonable steps" to determine whether custodian cell phones contain unique information. For nearly all of the thirty Hormel Foods custodians, it is clear that their phones do not have *any* unique information because their cell-phone usage for work was limited to calls or e-mails. *See* Bourne Decl. Ex. 2. Those cell phones are plainly beyond the scope of discovery.

Illustrating that fact, Plaintiffs have issued voluminous, expansive subpoenas to cell-phone carriers and inform the Court that they have undertaken extensive analysis of contacts. *See* Bourne Decl. ¶ 20. The result of that analysis is apparently a grand total of five Hormel Foods custodians who Plaintiffs claim may have texted for work. *Id.* Most of those five do not send texts related to their work. *See* Bourne Decl. Ex. 2. Most of them also held internal marketing jobs which did not involve contact with other Defendants, Agri Stats, or anything remotely related to the smoking-gun evidence Plaintiffs seek through cell-phone discovery. *See* Bourne Decl. ¶ 20. And the mere fact that some Hormel Foods custodians texted their colleagues and friends at Hormel Foods fails to

establish that the texts were related to work or were likely to have anything to do with Plaintiffs' claims. Plaintiffs' attempt to leap from that exceedingly thin factual foundation to sweeping imaging, collection, and search of all thirty custodians' cell phones used over more than ten years is vexatious.

Moreover, *very* few custodians text anyone outside of Hormel Foods for work purposes. *Id.* Based on the information in Plaintiffs' declaration, the result of their far-reaching discovery of cell-phone carriers is apparently a single Hormel Foods custodian who has corresponded by cell phone with another Defendant—a pork buyer whose job involves purchasing pork to use in Hormel Foods' processing operation and therefore is expected to communicate with other processors. *See* Bourne Decl. ¶ 20. Plaintiffs fail to establish any factual foundation to justify their extreme demand that all Hormel Foods custodians image and search their personal phones based on this record.

Further, Plaintiffs have made no effort to narrow the breadth of their requests. Rule 37(a)(1) requires that, before moving to compel discovery, the movant meet and confer in good faith to resolve the dispute with the person from whom discovery is sought. Here, Plaintiffs have repeatedly failed to engage in any kind of good-faith conferral to resolve this dispute. Plaintiffs have refused to identify any subset of the thirty custodians likely to have relevant communications; to justify their position that the text messages of all thirty custodians must be collected, reviewed, and produced; and to narrow or negotiate their proposed search terms. Plaintiffs have made no effort to confer in good faith to resolve the present dispute over the scope of information sought and appear to be more interested in motion practice than negotiating to obtain relevant

27

information.

**B.    Plaintiffs Have Made No Effort to Reasonably Narrow the Scope of the Information Sought by Their Rule 45 Subpoenas**

Moreover, even though Hormel Foods has not moved for a protective order to limit the scope of the subpoenas or otherwise been involved in Plaintiffs' negotiations with the custodians—many of whom remain employees of Hormel Foods—the overbreadth and disproportionality of Plaintiffs' efforts are obvious.

Plaintiffs ask this Court to order each custodian to provide their phones for imaging and subsequent searching—regardless of whether the custodian uses the phone for work-related purposes, and whether the custodian still has the same phone used during the Relevant Time Period. *See* Dkt. 890, Proposed Order; Bourne Decl. Exs. 1, 17. And the search terms demanded by Plaintiffs are patently overbroad. For example, Plaintiffs propose several single-word searches—such as pork, pig*, loin*, brisket, slow*, fall*, rumor, ship*, bought, budget, cheap, plan, study—each of which are likely to hit on an enormous number of plainly irrelevant and even personal messages. Bourne Decl. Ex. 16. Plaintiffs have made no effort to establish why such search terms need to be run against text messages collected from the phones of individual custodians.

Additionally, Plaintiffs should have engaged in and exhausted good-faith negotiation with the custodians to reasonably narrow discovery before filing this motion. A review of correspondence between Plaintiffs and the custodians shows multiple separate failures to do so.

First, Plaintiffs refused to rely upon the reasonable efforts of the custodians'

counsel to ascertain (and fully disclose) whether unique responsive information exists on the custodians' cell phones. That process confirmed what Hormel Foods had already stated to Plaintiffs. Under the ESI Protocol, that information could and should have been used to narrowly tailor and prioritize cell-phone discovery, particularly when matched against the extensive cell-phone discovery that Plaintiffs conducted with respect to the cell carriers. Absent some indication that a custodian texts or messages for work, Plaintiffs' demands for discovery exceed the ESI Protocol and are patently unreasonable.

Second, particularly in the absence of facts supporting Plaintiffs' belief that relevant information resides on a custodian's phone, Plaintiffs should bear the burden and cost associated with imaging and searching the phones of the custodians.[8]

And finally, Plaintiffs could have negotiated a targeted and focused approach to cell-phone discovery. Counsel for the custodians invited Plaintiffs to do so, and Plaintiffs instead opted for motion practice. Plaintiffs' failure to do so underscores their unwillingness to engage in any meaningful negotiation to narrow the scope of their subpoenas.

Plaintiffs should not seek to obtain through motion practice what they should have negotiated in good faith, and their Motion should be denied.

## CONCLUSION

For the foregoing reasons, Hormel Foods respectfully requests that the Court deny

---

[8] Indeed, Hormel Foods suspects that Plaintiffs are seeking to use their Motion to avoid negotiating reasonable cost-sharing arrangements with the custodians for the imaging demands Plaintiffs are making.

Plaintiffs' Motion to Compel in its entirety.

Date: August 31, 2021                    Respectfully submitted,

                                         /s/ Craig S. Coleman
                                         Richard A. Duncan (#0192983)
                                         Aaron D. Van Oort (#0315539)
                                         Craig S. Coleman (#0325491)
                                         Emily E. Chow (#0388239)
                                         Isaac B. Hall (#0395398)
                                         Bryan K. Washburn (#0397733)
                                         FAEGRE DRINKER BIDDLE & REATH LLP
                                         2200 Wells Fargo Center
                                         90 South Seventh Street
                                         Minneapolis, MN 55402-3901
                                         Telephone: (612) 766-7000
                                         Facsimile: (612) 766-1600
                                         richard.duncan@faegredrinker.com
                                         aaron.vanoort@faegredrinker.com
                                         craig.coleman@faegredrinker.com
                                         emily.chow@faegredrinker.com
                                         isaac.hall@faegredrinker.com
                                         bryan.washburn@faegredrinker.com

                                         *Counsel for Defendants Hormel Foods*
                                         *Corporation and Hormel Foods, LLC*

US.134290951.11