# **HRL EXHIBIT 10**



faegredrinker.com

**Craig S. Coleman**
Partner
craig.coleman@faegredrinker.com
+1 612 766 6981 direct

Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
+1 612 766 7000 main
+1 612 766 1600 fax

November 19, 2020

<u>VIA E-MAIL</u>

Michelle J. Looby
Gustafson Gluek PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402

Re:   *In re Pork Antitrust Litigation*, Case No. 18-cv-01776-JRT-HB (D. Minn.)
      <u>Meet and Confer Regarding Hormel Foods' Document Custodians</u>

Dear Michelle:

Thank you for your November 13 e-mail, confirming Plaintiffs' understanding of outstanding discovery issues. Following on our meet-and-confer teleconference on November 9, 2020, this letter confirms Hormel Foods Corporation[1]'s ("Hormel Foods" or "Company") positions regarding custodial sources. In addition to the supplemental information set forth below, Hormel Foods reiterates and incorporates its prior correspondence on these issues.

Because the parties' discussions span a significant period of time, below is a summary of the parties' correspondence regarding custodians:

- <u>April 18, 2019.</u> Hormel Foods served its Initial List of Proposed Document Custodians. That list included **7 custodians** and explained that Hormel Foods "could not have participated in the alleged conspiracy . . . without some or all of the above-listed individuals possessing documents . . . related to it." (*See infra* Part I)

- <u>May 15, 2019.</u> Plaintiffs responded to Hormel Foods' Initial List of Proposed Document Custodians by requesting that Hormel Foods add an additional **53 custodians** based solely upon those individuals' job titles.

- <u>June 6, 2019.</u> Hormel Foods conditionally agreed to add **15 more custodians** "in a significant spirit of compromise." That letter noted that Plaintiffs had not offered any explanation why the additional custodians "would have relevant or unique information." (*See infra* Part II)

- <u>August 2, 2019.</u> Plaintiffs withdrew their request for 16 custodians and renewed their request for an additional **8 custodians**, while also requesting that Hormel Foods

---

[1] As you know, Hormel Foods, LLC holds the intellectual property of Hormel Foods Corporation, has no employees, and has no operations or documents relevant to this litigation.

Michelle J. Looby                                                              - 2 -

investigate whether multiple additional potential custodians "have had significant involvement in the development of pricing." (*See infra* Part III)

While updating and clarifying Hormel Foods' position on custodians, we believe this letter should resolve any disputes regarding custodians at this stage of the litigation. In Part IV, we confirm Hormel Foods' agreement to add 5 additional custodians. Those additions broadly address topics of concern to Plaintiffs and commit Hormel Foods to 27 custodians. In Part V, we confirm that products sold by Hormel Foods' Grocery Products division do not meet Plaintiffs' definition of "Pork" and that Hormel Foods' Consumer Products Sales division is not relevant to this litigation. Accordingly, there is no basis to add custodians from these business units.

I.   **HORMEL FOODS' INITIAL LIST OF PROPOSED DOCUMENT CUSTODIANS**

Hormel Foods agreed to 7 custodians in its Initial List of Proposed Document Custodians served on April 18, 2019:

| Name | Title |
|---|---|
| Paul Bogle | Director, Cost Accounting |
| Corwyn Bollum | Director, Pork Operations and Procurement |
| Jessica Chenoweth | Cost Analyst |
| Lance Hoefflin | Manager, Pork Operations |
| Paul Peil | Director of Sales, Fresh Meat |
| Jose Rojas | Vice President, Farm Operations (2012-17) |
| Donald Temperley | Vice President, Operations-Refrigerated Foods |

Consistent with our discussions on November 9, 2020 and the previous correspondence referenced above, Hormel Foods again stresses that these custodians are sufficient at this stage of the litigation given the claims Plaintiffs have alleged. First, these custodians include Hormel Foods' employees responsible for its relationship with Agri Stats for pork, its Agri Stats subscription to pork reports, and its use of Agri Stats' services for pork. This group of custodians is fully sufficient to determine whether there is any validity to Plaintiffs' allegations that Hormel Foods used Agri Stats for anti-competitive purposes. And if their documents disprove Plaintiffs' allegations as Hormel Foods expects, Plaintiffs' demands for additional custodians will constitute nothing more than a fishing expedition untethered to their pleadings and their rationale for suing Hormel Foods.

Second, this same group of custodians is responsible for acquiring hogs and managing the throughput of pork meat through Hormel Foods' processing operations. As Hormel Foods has repeatedly made clear to Plaintiffs, the notion that Hormel Foods would have benefitted from restricting the supply of hogs or pork meat defies Hormel Foods' public financial disclosures and basic economic logic given the nature of its pork business—which is <u>not</u> vertically integrated. This group of custodians will give Plaintiffs a full opportunity to test their theory of the case because these custodians would necessarily have been central to any supposed conspiracy to restrict the supply of either hogs or pork meat.

In short, this Initial List of custodians will give Plaintiffs full visibility into Hormel Foods' relationship with and use of Agri Stats pork reports, as well as its management of pork

Michelle J. Looby - 3 -

supply. If Plaintiffs cannot prove their allegations based on relevant documents from these custodians and noncustodial data, Plaintiffs' sweeping requests for numerous other custodians will serve no purpose other than the imposition of discovery burdens and a blind, baseless search for some justification for Plaintiffs' litigation.

**II.     HORMEL FOODS' CONDITIONAL PROPOSAL TO ADD DOCUMENT CUSTODIANS**

On June 6, 2019, Hormel Foods informed Plaintiffs that, although it maintained that its Initial List was "more than reasonable based on the most favorable reading of Plaintiffs' Complaints," the Company was willing to discuss the addition of fifteen individuals from Plaintiffs' counterproposal of 53 individuals—nearly all of whom held titles like Group VP, Senior VP, and VP—"*if* Plaintiffs agree to drop the remainder of their proposed list[.]" That offer was made in the spirit of compromise to achieve a reasonable scope of discovery.

| Name | Title |
| --- | --- |
| Jerry Adwell* | Director of Pork Operations and Feeds |
| Nathan Annis | Director of Investor Relations |
| Steven Binder* | Executive VP and President of Hormel Business Units |
| Thomas Day* | Executive VP, Refrigerated Foods |
| Craig Drefcinski | Director of Deli Sales |
| Jeffrey Ettinger* | CEO |
| Bryan Farnsworth* | Senior VP, Supply Chain |
| Jody Feragen* | CFO |
| Jana Haynes | VP and Controller |
| Jesse Hyland* | Corporate Manager Production Planning and Procurement |
| Albert Lieberum, Jr.* | Director of Pork Operations |
| Mark Ourada | Group VP, Foodservice |
| Jim Sheehan | CFO |
| William Snyder* | Senior VP, Supply Chain |
| David Weber | VP, Foodservice Sales |

As previously indicated, the asterisks refer to individuals who have retired from the Company. You will note that we have added an asterisk to Thomas Day since our last correspondence, reflecting his retirement in 2019.

Our November 9 teleconference was helpful in clarifying Plaintiffs' intent in proposing custodians. In particular, as to sales-related custodians, you explained that Plaintiffs are seeking custodians responsible for making pricing decisions for relevant products, and had identified

Michelle J. Looby                              - 4 -

senior executives, assuming that those individuals would have such responsibilities. Based on that discussion and further investigation, however, we do not believe that VP-level positions will be productive custodians addressing what Plaintiffs seek. As we have explained, Hormel Foods' pricing management is decentralized. Accordingly, we would like to discuss an agreement to substitute Mr. Ourada, and Mr. Weber with custodians responsible for active management of Hormel Foods' pricing of fresh pork, smoked ham, sausage, and bacon.

### III. HORMEL FOODS' RESPONSES TO PLAINTIFFS' AUGUST 2, 2019 LETTER REQUESTS

On page 3 of Plaintiffs' August 2, 2019 letter, you made several requests regarding this list. Hormel Foods responds as follows:

**LETTER REQUESTS 1 & 2. For each conditionally proposed custodian, please list each role the individual held during the relevant time period and the dates for each role; [and] [i]dentify any predecessors or successors for each role during the Relevant Period and the dates the predecessor/successor held said role.**

Hormel Foods objects to these requests as constituting interrogatories that should be served as such if Plaintiffs find it necessary. However, dispute over this issue should be unnecessary because Plaintiffs already have this information. In accordance with the February 7, 2019 Order Regarding Disclosure of Information, Hormel Foods has produced to Plaintiffs complete lists[2] of salaried personnel for the years 2007 through 2018. These previously produced lists show the roles held by each of the above-listed individuals between January 1, 2008 and June 30, 2018; the dates for which the individuals held each role; the predecessors or successors, if any, for each role; and the dates for which the predecessor or successor held said role. We invite Plaintiffs to submit specific questions related to a specific conditionally proposed custodian or a specific role, but otherwise direct Plaintiffs to the various lists of salaried employees produced on December 3, 2018 and April 18, 2019.

In footnote 4 of your Letter, Plaintiffs specifically request that Hormel Foods "identify the individual(s) who held the [Director of Investor Relations] role from January 1, 2008 through September 2013"—before conditionally proposed custodians Jana Haynes and Nathan Annis. As demonstrated by the Company's documents (*see, e.g.*, HFC-PORKAT-0000007), Kevin C. Jones was the Director of Investor Relations before Ms. Haynes. We have confirmed that Mr. Jones held that role from January 2008 until he retired and Ms. Haynes assumed the role in October 2013. As a former employee, Mr. Jones is not believed to have any remaining custodial ESI.

**LETTER REQUEST 3. Clarify whether Hormel will collect former employee's custodial documents, to the extent they exist, even if housed on a shared drive or in the files of a Hormel employee that is not a separately designated Document Custodian[.]**

As we discussed during our November 9 teleconference, Hormel Foods does not intend to conduct custodial interviews of retired employees—some of whom have been retired for many years. Because Steven Binder and Thomas Day retired after the commencement of this litigation and after Hormel Foods instituted a legal hold for this litigation, the Company will include their files in its document collection and review. With the exception of Mr. Binder and Mr. Day,

---

[2] As previously noted, in connection with these productions, Hormel Foods does not maintain formal organizational charts in the ordinary course of business. These lists of salaried personnel were produced in lieu of formal organizational charts.

Michelle J. Looby                              - 5 -

Hormel Foods believes that there is no custodial ESI remaining for any of the other retired employees discussed by the parties to date. As stated in prior correspondence, to the extent an above-listed former employee's custodial documents are in the possession of another custodian, Hormel Foods intends to collect and review such documents during discovery.

**LETTER REQUEST 4. Confirm whether any former employees continued in a consulting role or otherwise for Hormel after leaving Hormel's employ such that responsive ESI may still exist.**

Confirming what we communicated during the November 9 teleconference, none of the former employees on this are currently in a consulting role with Hormel Foods after retirement. Mr. Ettinger remained on the Board of Directors until 2017 after retiring from his CEO role. As explained above, Hormel Foods believes that there is no custodial ESI remaining for Mr. Ettinger.

**IV.     ADDITIONAL DOCUMENT CUSTODIANS**

In response to Plaintiffs' August 2, 2019 letter and based upon our November 9, 2020 teleconference, Hormel Foods confirms its conditional agreement to add the following additional 5 custodians for the time periods when they held the below-specified roles:

| Name | Title |
| --- | --- |
| Mark Coffey | Senior VP, Supply Chain and Manufacturing |
| James Fiala | Manager, Pork Operations |
| Glenn Leitch | Executive VP, Supply Chain |
| Alan Meiergerd* | Manager, Pork Operations |
| James Snee | CEO |

Mr. Fiala and Mr. Meiergerd are offered in response to Plaintiffs' inquiry in footnote 2 of your August 2, 2019 letter regarding predecessors to Mr. Hoefflin's role as Manager, Pork Operations. The other individuals identified in footnote 2 have either never held relevant positions or have long since retired. As to Mr. Coffey and Mr. Leitch, Hormel Foods conditionally agrees to add them as custodians for the time periods during which they had responsibilities related to the pork supply chain. Hormel Foods also conditionally agrees to add Mr. Snee as a custodian for the time period between October 2016 when he became CEO and the end of the relevant time period.

Hormel Foods strongly disputes any notion that Plaintiffs have adequately justified their request for numerous custodians solely based on a connection to the pricing of Pork products. First, as we have explained, Plaintiffs allege a conspiracy centered on the supposed reduction of supply, not a price-fixing or bid-rigging conspiracy. Second, Hormel Foods never subscribed to Agri Stats sales reports so Plaintiffs have no basis to maintain that Hormel Foods could have used Agri Stats data in its pricing of Pork products. Third, Hormel Foods intends to produce structured data showing its actual prices, which will be more than sufficient to demonstrate the impact of any diminished supply on Hormel Foods' profitability and margins. Finally, Hormel Foods has already added numerous custodians to address Plaintiffs' request for sales-side documents, and additional custodians would impose extreme burdens vastly exceeding their minimal relevance.

Michelle J. Looby                                 - 6 -

With that said, Hormel Foods believes that additional discussion may make it possible to agree on a limited number of custodians to address Plaintiffs' professed interest in understanding how Hormel Foods prices Pork products. Discussion is required, however, due to the need for compromise.

With the addition of the **5 custodians** above, Hormel Foods has conditionally agreed to a total of **27 custodians**. These custodians not only cover every aspect of Hormel Foods' relationship with Agri Stats, but also include custodians addressing its pork-processing operations, investor relations, participation in trade associations, sales of relevant products, and senior executive management of all of these topics. While we remain willing to discuss specific additions to this list, particularly related to the issue of pricing, we believe it is highly unlikely that Plaintiffs can justify additional custodians, particularly since it is inconceivable that Plaintiffs' claims will have any merit if not substantiated by the documents in the files of this group.

V.   **PLAINTIFFS' DEFINITION OF "PORK" AND REQUESTS FOR CUSTODIANS FROM HORMEL FOODS' DIVISIONS NOT RELEVANT TO THIS LITIGATION**

Hormel Foods objects to Plaintiffs' attempt to expand document discovery into various Hormel Foods' business units by seeking documents related to the pricing and sales of products beyond the definition of "Pork" that Plaintiffs have pleaded in their complaints. From the start of this litigation, Plaintiffs have defined pork to mean "pig or swine meat sold or purchased fresh or frozen, smoked ham, sausage, and bacon." Although that definition will prove to be indefensibly broad and incoherent as an antitrust market if not narrowed further, Hormel Foods is nonetheless willing to work with Plaintiffs' pleaded definition of "Pork" at this time. In any event, Plaintiffs have no justification for moving the goal posts to further expand the definition now.

   A.   *Hormel® Chili and SPAM® Are Not "Pork" Products*

Hormel Foods agrees that the following products are included in Plaintiffs' definition of "Pork": raw cuts of pork, whether fresh or frozen, such as chops, loins, ribs, or shoulders; hams; bacon; and pork sausage. Hormel Foods agrees that its now-discontinued Little Sizzlers pork sausage meets this definition. All of these products are managed and sold by Hormel Foods' Refrigerated Foods division. Refrigerated Foods not only includes the sale of pork cuts, smoked ham, sausage, and bacon to grocery stores, it also includes Deli and Foodservice. Custodians have been identified addressing all of these products.

Hormel Foods also agrees with Plaintiffs' recognition in their August 2, 2019 letter that "a can of Hormel chili containing pork along with various other ingredients would not be included" in Plaintiffs' definition, *see also, e.g.*, Hormel | Products, HORMEL® Chili No Beans, http://hormel.com/Brands/HormelChili/HormelChili/HORMEL-Chili-No-Beans (last visited Nov. 16, 2020). Indeed, canned goods and other shelf-stable products sold in center-aisles of grocery stores are not "Pork" simply because some element of pork is listed as an ingredient.

Accordingly, Hormel Foods does not agree that SPAM® meets Plaintiffs' definition of "Pork." It is not fresh or frozen pork meat, nor is it ham, bacon, or sausage. As described on the Company's website, "SPAM is a canned lunch meat product . . . ." Hormel Foods, What Is SPAM, Anyway?, https://www.hormelfoods.com/newsroom/company-news/what-is-spam-anyway/ (last visited Nov. 16, 2020).

   B.   *The Grocery Products Division and Consumer Products Sales Are Not Relevant*

Michelle J. Looby                                    - 7 -

Hormel Foods confirms that the Company's Grocery Products division and its Consumer Products Sales business unit are not relevant.

Based on Plaintiffs' definition of "Pork," Hormel Foods' Grocery Products division does not sell relevant products. As Plaintiffs may be aware from their review of Hormel Foods' website,[3] Grocery Products houses (1) Hormel-branded products, like Hormel® chili; (2) SPAM® products and legacy brands, like Dinty Moore® beef stew; (3) SKIPPY® peanut butter and enhancers, like House of Tsang® sauces; (4) Justin's® nut butters and confections; (5) Hormel Health Labs;[4] and (6) various private-label products, including protein powders and puddings. All of these shelf-stable products are sold in the center aisle of grocery stores, in contrast to fresh or frozen cuts of pork meat sold in meat departments, ham sold in the meat or deli departments, or pork breakfast sausage sold in freezer cases. Plaintiffs' claims do not provide any basis for seeking custodians from the Grocery Products division.

Hormel Foods' Consumer Products Sales unit manages customer accounts with retailers across a wide variety of products, but it is not responsible for the pricing of "Pork" products. Indeed, Consumer Product Sales custodians are unlikely to have non-duplicative documents related to any of Plaintiffs' pending document requests. Hormel Foods notes that Plaintiffs have requested 9 custodians from Consumer Product Sales in your August 2, 2019 letter and that request does not appear to be based on anything other than an incorrect assumption that these custodians might have some role to play in pricing. The burden entailed in the request for multiple custodians from Consumer Products Sales cannot be justified, and Hormel Foods sees no basis to add any of them as custodians.

C. HFIC

As we have explained, Hormel Foods exports an exceedingly small amount of pork. Most of Hormel Foods International Corporation's (HFIC) sales of pork products are processed at overseas plants from hogs procured there. Such products clearly have no relevance to Plaintiffs' claims. Most of HFIC's exports involve offal (such as intestines, kidneys, feet, and uteri), which is not consumed in the United States and Hormel Foods does not consider it to meet the definition of "Pork" meat. In any case, Hormel Foods will agree to produce noncustodial structured data regarding its exports of "Pork" products but does not agree that any custodian is justified.

****************

If the parties are unable to reach agreement regarding Document Custodians, Hormel Foods reserves its right to seek an order limiting Document Custodians to those seven individuals originally identified in its Initial List of Proposed Document Custodians, as referenced above.

---

[3] (*See* Letter from Michelle J. Looby, Gustafson Gluek PLLC, to Richard A. Duncan et al., Faegre Baker Daniels LLP, at 6, n.14 (Aug. 2, 2019) (citing Press Release, Hormel Foods, Hormel Foods Announces the Strategic Merger of Its Grocery Products and Specialty Foods Segments (Nov. 21, 2017), *available at* https://www.hormelfoods.com/newsroom/press-releases/hormel-foods-announces-strategic-merger-grocery-products-specialty-foods-segments/))

[4] *See* Hormel Health Labs, https://www.hormelhealthlabs.com/ (last visited Aug. 7, 2019).

Michelle J. Looby                                              - 8 -

       We look forward to discussing further with you during our next meet-and-confer to discuss RFP responses and objections and the other issues set forth in your November 13 e-mail.

Very truly yours,

Craig S. Coleman

cc:      Plaintiffs' counsel of record (*via e-mail*)
           Richard A. Duncan (*via e-mail*)
           Emily E. Chow (*via e-mail*)