# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Case No. 0:18-cv-01776 (JRT-HB) |
| | **MEMORANDUM IN SUPPORT OF CONSUMER INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES** |
| *This Document Relates to*: | |
| All Consumer Indirect Purchaser Plaintiff Actions | |

# TABLE OF CONTENTS

STATEMENT OF ISSUES ...................................................................................... v

I.    INTRODUCTION .......................................................................................... 1

II.   BACKGROUND ............................................................................................ 2

III.  LEGAL STANDARD ...................................................................................... 8

IV.   ARGUMENT .................................................................................................. 9

      A.    The Court should grant Counsel's request for attorneys' fees. .................... 9

      B.    Application of the percent-of-funds approach is appropriate. .................... 10

            1.    The $20 million cash settlement provides a substantial
                  and immediate benefit to the Consumer Indirect Class. ................. 11

            2.    This case involves difficult factual and legal issues. ...................... 12

            3.    In taking this case on contingency, Counsel has been
                  exposed to significant risk. .............................................................. 13

            4.    Counsel has invested significant time and resources to
                  advance this case. ............................................................................ 14

            5.    The attorneys litigating this case have extensive
                  experience and expertise. ................................................................ 15

            6.    The reaction of the Class supports the award. ................................. 17

            7.    The request is consistent with the percent awarded in
                  similar cases. ................................................................................... 17

      C.    The Lodestar Crosscheck Confirms that the Request is
            Reasonable ...................................................................................... 18

      D.    The Court Should Reimburse the Expenses that Counsel has
            Incurred Over the Course of this Litigation. ............................................. 21

V.    CONCLUSION .............................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ........................................................ 10

*In re Airline Ticket Comm'n Antitrust Litig.*,
953 F.Supp. 280 (D. Minn. 1997) ........................................................................ 18

*In re Auto. Parts Antitrust Litig.*,
2016 WL 8201516 (E.D. Mich. Dec. 28, 2016) ........................................................ 18

*In re Auto Parts Antitrust Litig.*,
2018 WL 7108072 (E.D. Mich. Nov. 5, 2018) .......................................................... 20

*In re Auto. Refinishing Paint Antitrust Litig.*,
2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ................................................................ 10

*Caligiuri v. Symantec Corp.*,
855 F.3d 860 (8th Cir. 2017) .................................................................... 11, 14

*In re Capacitors Antitrust Litig.*,
2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) .......................................................... 11

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
2020 WL 7133805 (D. Minn. Dec. 4, 2020) .............................................................. 17

*In re Centurylink Sales Pracs. & Sec. Litig.*,
2021 WL 3080960 (D. Minn. July 21, 2021) ............................................................ 20

*In re Charter Commc'ns, Inc., Sec. Litig.*,
2005 WL 4045741 (E.D. Mo. Jun. 30, 2005) ............................................................ 21

*In re Dairy Farmers of Am., Inc.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) .................................................................. 18

*Dial Corp. v. News Corp.*,
317 F.R.D. 426 (S.D.N.Y. 2016) ........................................................................ 12

*Dickey v. Advanced Micro Devices, Inc.*,
2020 WL 870928 (N.D. Cal. Feb. 21, 2020) ............................................................ 20

*In re Diet Drugs Prod. Liab. Litig.*,
2002 WL 32154197 (E.D. Pa., Oct. 3, 2002) ........................................................... 10

*In re Flonase Antitrust Litig.*,
951 F. Supp. 2d 739 (E.D. Pa. 2013) ...................................................................... 18

*Huyer v. Buckley*,
849 F.3d 395 (8th Cir. 2017) ......................................................................... 9, 18

*Johnson v. Georgia Highway Express*,
488 F.2d 714 (5th Cir. 1974) ............................................................................... 9

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) ...................................................................... 8, 9, 18, 19

*Khoday v. Symantec Corp.*,
2016 WL 1637039 (D. Minn. Apr. 5, 2016) ............................................. 14, 18, 21, 22

*Krueger v. Ameriprise Fin., Inc.*,
2015 WL 4246879 (D. Minn. July 13, 2015) ...................................................... 18, 22

*In re Lidoderm Antitrust Litig.*,
2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ......................................................... 20

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
847 F.3d 619 (8th Cir. 2017) ................................................................................ 8

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 369 (D.D.C. 2002) ............................................................................. 13

*McDonald v. Edward D. Jones & Co., L.P.*,
791 F. App'x 638 (8th Cir.) .................................................................................. 17

*In re Monosodium Glutamate Antitrust Litig.*,
2003 WL 297276 (D. Minn. Feb. 6, 2003) ............................................................. 10

*In re Motorsports Merchandise Antitrust Litig.*,
112 F. Supp .2d 1329 (N.D. Ga. 2000) .................................................................. 12

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ............................................................. 16

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-aid Cap Antitrust Litig.*,
2019 WL 1593939 (N.D. Cal. Mar. 8, 2019) ............................................................. 16

*Nat'l Collegiate Athletic Ass'n v. Alston*,
141 S. Ct. 2141, 210 L. Ed. 2d 314 (2021) ............................................................. 16

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................. 11

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) .............................................................. 18

*In re Processed Egg Prod. Antitrust Litig.*,
    2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ........................................... 11

*Rawa v. Monsanto Co.*,
    934 F.3d 862 (8th Cir. 2019) ................................................................ 21

*Shiyang Huang v. Schultz*,
    141 S. Ct. 252, 208 L. Ed. 2d 25 (2020) ............................................... 17

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    2014 WL 2946459 (E.D. Tenn. June 30, 2014) ...................................... 18

*In re St. Paul Travelers Sec. Litig.*,
    2006 WL 1116118 (D. Minn. Apr. 25, 2006) ......................................... 21

*In re U.S. Bancorp Litig.*,
    291 F.3d 1035 (8th Cir. 2002) .............................................................. 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................... 12

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) .............................................. *passim*

*Yarrington v. Solvay Pharms., Inc.*,
    697 F. Supp. 2d 1057 (D. Minn. 2010) ....................................... 20, 21, 22

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 23(h) ...................................................... 8, 9

010736-11/1671275 V1

## STATEMENT OF ISSUES

1.     Counsel for the Consumer Indirect Class has dedicated more than 8,977 hours and advanced over $322,972.19 in expenses and costs to this matter over three years, without any compensation to date. A $20 million settlement with JBS has been proposed while the Consumer Indirect Class continues to pursue other defendants. In asking for fees of $6,600,000, counsel is seeking a 1.44 multiplier. Should the Court approve this fee request in its discretion as fair and reasonable?

2.     Counsel for the Consumer Indirect Class have advanced $322,972.19 in out-of-pocket expenses in this litigation. Should the Court approve reimbursement of these reasonable fees and expenses?

010736-11/1671275 V1

# I.    INTRODUCTION

More than three years ago, a core team of lawyers working on behalf of the Consumer Indirect Class[1] spearheaded an extensive investigation the pork industry. Unlike many other civil antitrust cases, this investigation was the first of its kind; counsel developed the facts without relying upon a public announcement by the U.S. Department of Justice or disclosures made by defendants in a leniency application. Instead, a small team of lawyers reviewed troves of public documents, followed up with leads on potential confidential witnesses, and parsed out complicated economic data to evaluate the potential claims. After launching this investigation, Hagens Berman and Gustafson Gluek[2] filed the first complaint in this case against the defendants – pork processors who artificially suppressed supply to overcharge consumers.[3] Every complaint that followed relied extensively on Hagens Berman and Gustafson Gluek's original investigation and work product.

This core team of lawyers and staff working on behalf of the Consumer Indirect Class has continued to vigorously investigate this case and lead the litigation and strategy

---

[1] The "Consumer Indirect Class" refers to the Consumer Indirect Purchaser Plaintiffs.

[2] Throughout this memorandum, Hagens Berman Sobol Shapiro, LLP is referred to as "Hagens Berman" and Gustafson Gluek PLLC is referred to as "Gustafson Gluek." As shorthand, this memorandum refers to these firms as "Counsel." *See* Order Granting Hagens Berman Sobol Shapiro LLP and Gustafson Gluek PLLC's Motion for Appointment as Interim Co-Lead Counsel for Proposed Consumer Indirect Purchaser Class, ECF No. 151 (filed October 15, 2018).

[3] *See* Complaint, ECF No. 1 (filed June 28, 2018).

during many of the hard-fought contests with sophisticated defendants – many of whom are represented by some of the most well-known defense counsel in the antitrust bar.

The JBS defendants[4] have now offered to settle with the Consumer Indirect Class for $20 million – approximately $1 million for every point of JBS's market share. As the first settlement for the Consumer Indirect Class, this represents a remarkable recovery for class members; the settlement provides a guarantee that class members will receive some compensation for their claims. And since JBS constitutes only 20 percent of the market, , and the remaining defendants remain jointly and severally liable for the damages caused by JBS, there is potential for class members to recover more as the case proceeds.

Respectfully, Counsel requests an attorneys' fee award of $6,600,000, which is 33 percent of the proposed settlement, equating to a modest 1.44 multiplier from class counsel's lodestar of $4,566,752. Counsel also seek reimbursement for the litigation expenses already incurred. As discussed below, these requests are well within the range of awards made by courts in this District.

## II.  BACKGROUND

In January 2018, Hagens Berman began investigating potential misconduct in the pork industry. This investigation started because a few experienced antitrust attorneys noticed suspicious patterns in pork market and had the gumption follow every lead they could find. Unlike many other antitrust cases, there was no public investigation that counsel could copy to bring the complaint. Instead, Counsel independently reviewed

---

[4] The JBS defendants (or "JBS") refers to Defendants JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company.

hundreds of detailed documents about the pork industry and sifted through troves of complicated financial data to parse out information concerning the industry's market structure and pricing patterns.

Even though there was no certainty of this investigations' outcome – or even that Hagens Berman and Gustafson Gluek would be appointed as lead counsel – Counsel invested significant time and resources into developing this case. Counsel retained expert economists in January 2018 to analyze pork price trends, research market concentration, and make sense of complicated economic data. Counsel also employed professional investigators, who spent time following leads on former employees to gather information on what they witnessed concerning potential antitrust misconduct in the pork industry.

This extraordinary pre-filing investigation took place for approximately six months before Hagens Berman and Gustafson Gluek filed the first complaint in this case. The complaint compiled the results of their investigation into 98 pages of detailed allegations. The facts alleged in all the complaints that have followed benefited from this extensive research. Rather than spread out the work to many attorneys – which would reduce risk to any firm but increase costs to the Class – Counsel kept the pre-filing investigation limited to just a few attorneys who now intimately know the intricacies of the pork processing market. Scarlett Decl., ¶ 3.[5] Every plaintiff in this case has benefited from the hard work and resourcefulness of these few attorneys who spent months

---

[5] "Scarlett Decl." refers to the Declaration of Shana E. Scarlett in Support of Consumer Indirect Purchaser Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses, which accompanies this motion.

amassing the pre-filing evidence. Without their extraordinary effort, nobody in this litigation would have been able to seek justice for the harms caused by defendants' misconduct.

In the three years that have passed since the first complaint was filed, Counsel for the Consumer Indirect Purchasers has continued to push this litigation forward. Defendants – the largest pork processors in the United States – are represented by sophisticated attorneys who can sink incredible resources into their mounting defenses. This has ensured that every dispute in this litigation has been hard-fought: for example, the classes have prevailed despite defendants filing more than a dozen motions to dismiss over two years.

On October 23, 2018, defendants filed 11 individual and joint motions to dismiss against the Consumer Indirect Class. Defendants raised a litany of arguments including arguments to dismiss all the state law claims. Counsel for the Consumer Indirect Class drafted much of the briefing in opposition to these motions and in this Court and argued portions of the opposition on behalf of all plaintiffs. Scarlett Decl., ¶ 5. On August 8, 2019, the Court granted the motions to dismiss with leave to amend.[6]

Before the Court had ruled on first round of motions to dismiss, the Consumer Indirect Class sought the production of certain Agri Stats documents. Agri Stats

---

[6] Memorandum Opinion and Order Granting Defendants' Motions to Dismiss Plaintiffs Complaints, ECF No. 360 (filed August 8, 2019).

vigorously sought a stay to prevent any production. [7] Shana Scarlett – counsel for the

Consumer Indirect Class – argued on behalf of the classes and in opposition to Agri

Stats's motion. On February 9, 2019, Magistrate Judge Bowbeer ordered that Agri Stats

produce the documents.[8] After Agri Stats produced these documents, counsel for the

Consumer Indirect Class invested their resources into carefully reviewing the production

and then used many of these documents to fortify the classes' claims and cite relevant

positions in their Second Amended Consolidated Complaint, which was filed on

November 6, 2019.[9]

In response to the Second Amended Consolidated Complaint, defendants filed 11

more motions to dismiss, again challenging nearly every facet of the complaint. But

armed with specific documents from the Agri Stats production, Plaintiffs overcame the

second round of motions to dismiss from defendants. Counsel for the Consumer Indirect

Purchasers again took a lead role in the argument. On October 16, 2020 the Court denied

defendants' second round of motions to dismiss, ruling that the amended complaint

alleged a plausible conspiracy.[10] Unique among the classes, the Consumer Indirect Class

has also articulated a cognizable rule of reason claim using the Agri Stats documents.

---

[7] *See* Memorandum in Opposition of Motion to Stay, ECF No. 204 (filed November 6, 2018).

[8] *See* Order Granting in Part and Denying in Part Motion to Stay, ECF. No. 289 (filed February 7, 2019).

[9] *See* Consumer Indirect Purchaser Plaintiffs Second Amended Consolidated Class Action Complaint, ECF No. 392 (filed under seal November 6, 2019).

[10] Amended Memorandum and Order, ECF No. 520 (filed October 20, 2020).

Counsel for the Consumer Indirect Class took the lead on negotiating much of the discovery in this case, including taking the lead on drafting many other interrogatories and requests for production served on defendants. Scarlett Decl., ¶ 6. Once these were served, the Consumer Indirect Class led many of the discovery negotiations, including negotiations with Agri Stats, JBS, Tyson, Smithfield – as well as the negotiating the production of structured data from all defendants. *Id*. When the Court and Magistrate Judge Bowbeer needed case updates, Counsel for the Consumer Indirect Class took the lead on drafting and filing many of the joint status reports. Counsel also prepared oral status updates for the Court at the status hearings.[11] When discovery disputes have arisen, Counsel for the Consumer Indirect Class drafted many of the motions to compel custodians and documents[12] and negotiated stipulations regarding discovery extensions.[13]

Counsel has also been deeply involved in developing the facts of this case as defendants' document productions have rolled in. Several individuals have worked full time to review hundreds of thousands of defendants' documents and compile the best documents for depositions. In a few short weeks, the class plaintiffs will begin deposing

---

[11] *See* Status Report, ECF No. 341 (filed June 25, 2019); Status Report, ECF No. 422 (filed December 13, 2019); Joint Update Letter Regarding Agri Stats Document Search Methodology and Search Terms, ECF No. 646 (filed January 22, 2021);

[12] *See* Motion to Compel Custodians and Documents, ECF No. 555 (filed December 7, 2020).

[13] *See* Stipulation to Amend the Scheduling Pretrial Order Regarding Deadline on Structured Data, ECF No. 693 (filed February 23, 2021); Stipulation to Amend the Scheduling Pretrial on Structured Data, ECF No. 727 (filed March 9, 2021).

010736-11/1671275 V1

defendants' employees: many of these depositions will rely on documents analyzed and selected by the Consumer Indirect Class.

On April 2, 2021, this Court granted preliminary approval of the $20 million settlement between the Consumer Indirect Class and JBS.[14] As the Consumer Indirect Class discussed in their motion for preliminary approval,[15] this settlement was the result of arm's-length negotiations conducted using an experienced mediator. Litigation has inherent risks, and settlement reduces those risks by guaranteeing that the Consumer Indirect Class will receive at least some compensation for their claims.

Settling also allows plaintiffs to focus on building their strongest case against the remaining defendants. Beyond monetary compensation, the JBS settlement benefits the class because JBS has agreed to cooperate with the class plaintiffs on discovery requests. These cooperation terms – which includes giving the Consumer Indirect Class copies of any additional documents produced in this litigation, an agreement to authenticate JBS documents and an agreement to respond to Counsel's questions regarding structured data[16] – give the Consumer Indirect Class a chance to focus on the remaining defendants while minimizing additional future discovery disputes.

---

[14] Order Granting Motion for Preliminary Approval of Class Action Settlement Between Consumer Indirect Purchaser Plaintiffs and the JBS Defendants, ECF No. 752 (filed April 2, 2021).

[15] *See* Memorandum in Support of Preliminary Approval of the Class Action Settlement between Consumer Indirect Purchaser Plaintiffs and JBS Defendants, ECF. No 742 (filed May 26, 2021) at 1.

[16] *See* Ex. A-Settlement Agreement, ECF No. 743-1 (filed March 26, 2021).

010736-11/1671275 V1

### III.    LEGAL STANDARD

Rule 23(h) permits a district court in a class action proceeding to "award reasonable attorney's fees and nontaxable costs that are authorized by law[.]" The Eighth Circuit reviews decisions by district courts regarding attorney fees in a class action settlement under the "abuse of discretion" standard.[17]

There are two approaches district courts generally use to award fees. Under the "percentage of benefit approach," a court is permitted to award fees "equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation."[18]  Under the "lodestar methodology" courts may award fees by multiplying the hours worked "by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action."[19] The district court has discretion "to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case."[20] "Although not required to do so," district courts who use the percentage-of-the benefit approach may verify the reasonableness of the award "by cross-checking it against the lodestar method."[21]

---

[17] *See Keil v. Lopez*, 862 F.3d 685, 700 (8th Cir. 2017) *citing Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999).

[18] *Id.* at 701 (quotations and citations omitted).

[19] *Id.*

[20] *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (quotations and citations omitted).

[21] *Keil*, 862 F.3d at 701.

010736-11/1671275 V1

Under either approach, to assess whether a fee award is reasonable under Rule 23(h), the Eighth Circuit encourages district courts to "consider the relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974)."[22]

## IV.   ARGUMENT

Counsel for the Consumer Indirect Class requests: (1) an award of attorneys' fees in the amount of 33 percent of the $20 million settlement fund; and (2) reimbursement of expenses Counsel has advanced to date on behalf of the class.

As discussed below, Counsel's request for $6,600,000 in fees is reasonable and in line with the fees awarded in similar cases. Applying a lodestar cross-check, Counsel's request represents a modest 1.44 multiplier, well in line with other cases. Likewise, Counsel's request for reimbursement for out-of-pocket funds to advance this litigation is reasonable and should be granted.

### A.   The Court should grant Counsel's request for attorneys' fees.

Before any depositions have been taken, JBS has offered to pay $20 million to settle the claims with the Consumer Indirect Class. Although this litigation has persisted for more than three years, relative to other antitrust cases, resolution with JBS has occurred while the case is still relatively young; by the time many antitrust cases are resolved and all appeals are heard, antitrust litigation typically extends through the better

---

[22] *Keil*, 862 F.3d at 701; *also Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (permitting the district court to use the *Johnson* factors to assess the reasonableness of the fees based on the percentage-of-funds method).

010736-11/1671275 V1

part of decade. The attorneys who bring these antitrust cases work on contingency basis –

meaning that they work for free for years and pay the class's expenses while doing so.

*See* Scarlett Decl., ¶ 2. In this kind of protracted and hard-fought litigation, it is

appropriate to award fees while the litigation is ongoing.[23]

## B.    Application of the percent-of-funds approach is appropriate.

The Court has discretion to use the percent of funds approach to award attorney's

fees.[24] As the district court in *In re Xcel Energy, Inc.* explained, "[t]here are strong policy

reasons behind the judicial and legislative preference for the percentage of recovery

method for determining attorney fees[.]"[25] One benefit is that this structure incentives

attorneys to maximize the recovery for the class while expending fewer legal hours to

reach the result, which will "encourage class counsel to prosecute the case in an efficient

---

[23] *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *3 (E.D.N.Y. Sept. 25, 2009) (approving an interim award for attorneys' fees for a settlement that was reached one year into the litigation); *In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *2 (E.D. Pa. Jan. 3, 2008) (discussing the award for attorneys' fees for a settlement reached three years into litigation); *In re Diet Drugs Prod. Liab. Litig.*, 2002 WL 32154197, at *12 (E.D. Pa., Oct. 3, 2002) (after four years, awarding a fee because to have counsel "wait any longer for at least some award would be grossly unfair").

[24] *See, e.g.*, *In re Monosodium Glutamate Antitrust Litig.*, 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003).

[25] *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005).

manner."[26] Relying upon similar reasoning, courts in other districts have often used the percent of funds approach in large antitrust cases.[27]

The typical factors that courts evaluate when employing the percent of fund approach include: (1) the benefit to the class; (2) the difficulty and novelty of the litigation; (3) the risks to plaintiffs' counsel; (4) the time and labor involved to bring the litigation; (5) the skill and experience of the attorneys representing the parties; (6) the reactions of class members; *and* (7) whether the award is consistent with awards in other cases.[28]

### 1. The $20 million cash settlement provides a substantial and immediate benefit to the Consumer Indirect Class.

One factor that plays an important role in determining a fair fee award is the value achieved for the class. The JBS settlement is the first settlement and has potential to be a benchmark for any future settlements – with 7 defendant families remaining, this is an important consideration. For the JBS settlement, the Consumer Indirect Class will receive approximately $1 million in compensation for each point of JBS's estimated market share. Scarlett Decl., ¶ 8. As discussed above, this litigation is still relatively young for an

---

[26] *Id.*

[27] *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (holding that the district court did not abuse its discretion in applying the percent of funds approach); *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018) (finding the percent of funds approach was appropriate "[w]here there is an easily quantifiable benefit to the class – namely, the cash recovery achieved through settlement"); *In re Processed Egg Prod. Antitrust Litig.*, 2012 WL 5467530, at *2 (E.D. Pa. Nov. 9, 2012) (noting that the percentage of recovery method is "generally favored in cases involving a common settlement fund.") (citations and quotations omitted).

[28] *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017).

antitrust case. If similar or better results are achieved against the remaining defendants, the class stands to recover well over $100 million. *Id*. Moreover, the remaining defendants remain joint and severally liable for JBS's damages to the extent not already recovered by the class in this settlement.

In addition to these monetary benefits, the Consumer Indirect Class will benefit from JBS's agreement to cooperate as plaintiffs pursue the claims against the remaining defendants. *Id*., ¶ 9.

### 2. This case involves difficult factual and legal issues.

Another factor that courts use to determine a reasonable fee is the difficulty and novelty of the litigation. Here, antitrust cases stand out: courts routinely remark on the time and expenses it takes for a civil plaintiff to bring an antitrust suit. As one court aptly stated, "[a]n antitrust class action is arguably the most complex action to prosecute."[29] Antitrust cases are especially difficult because they "are complicated, lengthy and bitterly fought."[30] Antitrust litigation often involves claims that are "highly nuanced" and require "both sides to work extensively with economists[.]"[31] And even when plaintiffs surpass the hurdles of the motions to dismiss, motions for summary judgment, and class certification, "post-trial motions and appeals [are] likely, which would delay and further

---

[29] *In re Motorsports Merchandise Antitrust Litig*., 112 F. Supp .2d 1329, 1337 (N.D. Ga. 2000).

[30] *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005).

[31] *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 435 (S.D.N.Y. 2016).

010736-11/1671275 V1

risk recovery."[32] These cases involve issues that "are always numerous and uncertain in outcome."[33]

This litigation has already proven to live up to these observations. More than three years have passed since the first complaint was filed, and the parties are just now noticing depositions. To get to this point, Plaintiffs had to first overcome 22 motions to dismiss. Though the parties have always been civil to one another, discovery has nevertheless been hard-fought, including motions to stay and motions compel [34]

### 3. In taking this case on contingency, Counsel has been exposed to significant risk.

Another factor courts examine when deciding to award attorneys fees is the risks associated with advancing the litigation. "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees."[35] Counsel for the Consumer Indirect Class has worked this case on contingency. Scarlett Decl., ¶ 2. The contingent nature of this case means that Counsel has a balanced set of interests – to achieve excellent results for the class, as efficiently as possible. This substantial risk that

---

[32] *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 393 (D.D.C. 2002)

[33] *Id*.

[34] *See, e.g.,* Motion to Stay, ECF No. 193 (filed October 23, 2018); Motion to Compel Custodians and Documents, ECF No. 555 (filed December 7, 2020).

[35] *In re Xcel Energy*, 364 F. Supp. 2d at 994.

Counsel has undertaken to advance this litigation over the past three years strongly favors the fee award.[36]

### 4. Counsel has invested significant time and resources to advance this case.

Courts also evaluate the time and labor counsel invests into the case to move it forward.[37] From the beginning their investigation into the pork industry through June 2021, Counsel for the Consumer Indirect Class have expended more than 8,977 hours pursing the class's claims. Scarlett Decl., ¶ 11. This effort has consisted of conducting the first extensive factual investigation into the antitrust claims; drafting two complaints; reviewing and analyzing over hundreds of thousands of documents and preparing for defendant depositions. *Id.*, ¶ 6.

For a case of this complexity and size, Counsel has kept the team relatively small – a core team of experienced lawyers have been working on this case since the beginning and these lawyers have drafted all briefing. Scarlett Decl., ¶ 4. Counsel intentionally kept the team small to avoid bloat to their lodestar – this small team knows the case well and understands the complexity and nuances of the litigation.

To avoid duplication, Counsel has also worked with the other class plaintiffs to split assignments wherever possible, including document review assignments. For the document review undertaken on behalf of the Consumer Indirect Class, Counsel has

---

[36] *See id; also Khoday v. Symantec Corp.*, 2016 WL 1637039, at *10 (D. Minn. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

[37] *See In re Xcel Energy*, 364 F. Supp. 2d at 995.

conducted its portion of the document review using a small team of attorneys who have years of experience dedicated to reviewing troves of corporate communications for these antitrust cases. Scarlett Decl., ¶ 12. Through June 2021, non-lead counsel conducted minimal work on this case; most of the work involved communicating with named plaintiffs who retained counsel and gathering their documents to respond to Defendants' discovery requests. *Id.*, ¶ 11. By keeping the team of lawyers relatively small, Counsel has been able to efficiently prosecute the claims. The table below summarizes the time spent by all law firms and illustrates this point:

| Hours Expended on behalf Consumer Indirect Class | |
|---|---|
| **Firm** | **Hours Expended** |
| Hagens Berman (Co-Lead Counsel) | 4,918.3 |
| Gustafson Gluek (Co-Lead Counsel) | 3,942.4 |
| All Other Firms | 116.9 |
| **TOTAL:** | **8,977.7** |

In addition to the hours expended, Counsel has expended $322,972.19 in costs to fund this litigation. Most of these costs are associated with retaining economic experts and hosting the significant production of defendants' documents. Scarlett Decl., ¶ 20. Given the time and resources Counsel has devoted to this case, the fee and expense request should be granted.

**5.     The attorneys litigating this case have extensive experience and expertise.**

Courts also examine the skill and experience of the attorneys prosecuting and defending the litigation when deciding fee requests.[38] Courts across the country have

---

[38] *See In re Xcel Energy*, 364 F. Supp. 2d at 995.

commended the skill and experience of Hagens Berman and Gustafson Gluek in antitrust class actions. Recently, when evaluating fees for the *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation,* Judge Wilken wrote that Hagens Berman was "among the most well-respected class action litigation firms in the country."[39] Hagens Berman and Gustafson Gluek have deep experience in class action antitrust cases, representing class plaintiffs in some of the largest antitrust cases in this country.[40] Counsel also has experience taking these complex antitrust cases to trial and winning. For example, Judge Wilken found for the plaintiffs after a bench trial in the *National Collegiate Athletic Association* litigation,[41] a verdict that was upheld by the Supreme Court on review.[42]

Meanwhile, Defendants have retained some of the most well-known large law firms, such as Quinn Emanuel Urquhart & Sullivan, LLP (representing JBS). On all sides, attorneys in this case are some of the most skilled and experienced professionals in the legal field. This factor supports the fee request by the Consumer Indirect Class.

---

[39] *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *10 (N.D. Cal. Dec. 6, 2017) (calling Hagens Berman "among the most well-respected class action litigation firms in the country[.]"); *aff'd,* 768 F. App'x 651 (9th Cir. 2019).

[40] *See, e.g., In re EBooks Antitrust Litigation*, Case No. 11-md-02293 (S.D.N.Y.) (Hagens Berman); *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-cv-05238 (E.D.N.Y.) (Hagens Berman); *In re DRAM Antitrust Litig.*, MDL No. 1486 (N.D. Cal.) (Gustafson Gluek); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 07-1827 (N.D. Cal.) (Gustafson Gluek).

[41] *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-aid Cap Antitrust Litig.*, 2019 WL 1593939, at *1 (N.D. Cal. Mar. 8, 2019).

[42] *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 210 L. Ed. 2d 314 (2021).

### 6. The reaction of the Class supports the award.

Another factor courts use to evaluate fees is the reaction of the class.[43] Counsel has filed this Motion early to give class members an opportunity to comment on the request, and this Motion will be posted on the settlement website for class members to view. Through the published notice, the Class has been advised that Counsel may seek up to a 33.3% the settlement funds as attorneys' fees and will also seek past costs in an amount not to exceed $350,000.

Only one member of the Consumer Indirect Class has objected to the JBS settlement – not due to a deficiency in the negotiations for the settlement, but because this individual believes that class certification should not be granted.[44] This individual has previously raised similar arguments in opposition to class settlements that have been rejected by the Eighth Circuit.[45]

No class member has yet objected to Counsel's request for fees and expenses. Counsel will update the Court if this factor changes.

### 7. The request is consistent with the percent awarded in similar cases.

Courts often compare the request to awards in similar cases to determine whether the request is reasonable. Here, Counsel has requested 33% of the settlement funds to

---

[43] *See In re Xcel Energy*, 364 F. Supp. 2d at 996; *In re CenturyLink Sales Pracs. & Sec. Litig*., 2020 WL 7133805, at *12 (D. Minn. Dec. 4, 2020) (finding "little dissatisfaction with the settlement" where only 8 class members objected and .07% of the class opted out).

[44] *See* Objection to Class Certification, ECF No. 948 (filed October 4, 2021).

[45] *See McDonald v. Edward D. Jones & Co., L.P.*, 791 F. App'x 638, 639 (8th Cir.), *cert. denied sub nom. Shiyang Huang v. Schultz*, 141 S. Ct. 252, 208 L. Ed. 2d 25 (2020).

cover attorneys' fees, which is well in line with other cases. In this district, courts

routinely approve attorneys' fees of at least one third of the common fund.[46] The request

for 33% of the settlement funds is also in line with awards approved in similar antitrust

class actions brought around the country.[47] Thus, this factor supports the award.

## C.    The Lodestar Crosscheck Confirms that the Request is Reasonable.

Though it is not required in this district, courts routinely apply a lodestar "cross-

check" on the reasonableness of the fee calculated as a percentage of the fund.[48] Under

the lodestar methodology for awarding attorney fees, the total hours expended by the

attorneys advancing the litigation are multiplied by a reasonable hourly rate of

compensation.[49] When performing a lodestar cross-check, a court may rely on summaries

---

[46] *See, e.g.*, *Huyer*, 849 F.3d at 399 (upholding an award for one third of the total settlement fund); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (upholding an award for 36 percent of the common fund); *Khoday*, 2016 WL 1637039, at *11 ("In this District, however, courts have frequently awarded attorney fees between 25 and 36 percent of a common fund in class actions."); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (noting that a request for one third of the common fund is in line with other class cases); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F.Supp. 280, 285–86 (D. Minn. 1997) (awarding 33.3% of $86 million fund); *In re Xcel Energy*, 364 F. Supp. 2d at 998 (collecting other cases).

[47] *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 862 (N.D. Ill. 2015) (awarding one-third of the $46 million common fund); *In re Auto. Parts Antitrust Litig.*, 2016 WL 8201516, at *2 (E.D. Mich. Dec. 28, 2016) (awarding one-third of the common fund); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *3 (E.D. Tenn. June 30, 2014) (awarding one third of the $73 million settlement fund); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 756 (E.D. Pa. 2013) (awarding $50 million, or one third of the common fund, as fees).

[48] *Keil*, 862 F.3d at 701.

[49] *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999).

submitted by attorneys.[50] "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case."[51] A court may give an upwards of adjustment to a lodestar (through a positive multiplier) to reflect "the contingent nature of success, and … the quality of the attorney's work."[52]

Counsel for the Consumer Indirect Class has expended over 8,977 hours from the outset of this case investigation through June 2021. Scarlett Decl., ¶ 11. All the law firms that have worked to advance the classes' claims have done so under the direction of Hagens Berman or Gustafson Gluek, who were appointed as Interim Co-Lead Counsel.[53] Counsel for the Consumer Indirect Class have provided their monthly time and expense documentation to Interim Co-Lead Counsel.

Those time reports set forth the timekeepers, customary rates, and hours worked to advance the litigation for the Consumer Indirect Class. Each law firm who has conducted work on behalf of the Consumer Indirect Class has submitted a declaration regarding attesting to the hours spent on this case. Most of the hours spent on this litigation – more

---

[50] *Keil*, 862 F.3d at 702.

[51] *In re Xcel Energy*, 364 F. Supp. 2d at 999.

[52] *Id.*

[53] Order Granting Hagens Berman Sobol Shapiro LLP and Gustafson Gluek PLLC's Motion for Appointment as Interim Co-Lead Counsel for Proposed Consumer Indirect Purchaser Class. ECF No. 151 (filed October 15, 2018).

than 98 percent – have been incurred by Interim Co-Lead Counsel.[54] The table below

provides an aggregated summary of Counsel's lodestar through June 2021:

| Lodestar for Consumer Indirect Counsel | | | |
|---|---|---|---|
| Category of Timekeeper | Number of Hours | Mean Hourly Rate | Lodestar |
| Partner | 3,165.0 | $760 | $2,408,349.50 |
| Associate | 1,395.6 | $491 | $668,797.50 |
| Staff/Contract Attorney | 2,786.0 | $350 | $975,100.00 |
| Law Clerk | 15.4 | $355 | $5,478.00 |
| Case Investigator | 57.5 | $200 | $11,500.00 |
| Non-Attorney Reviewer | 331.0 | $175 | $57,925.00 |
| Paralegal | 1,107.0 | $319 | $353,455.50 |
| Legal Assistant | 39.3 | $175 | $6,877.50 |
| Non-Lead Counsel | 116.9 | $622 | $79,269.00 |
| Total | 8977.7 | | $4,566,752.00 |

The hourly rates used to calculate this lodestar are reasonable and in line with similar

litigation. Indeed, more than a decade ago, this Court approved partner rates of up to

$850 per hour and associate rates up to $410 per hour.[55] In 2016, the Court approved

rates up to $915 per hour.[56] Likewise, courts overseeing large antitrust matters have used

similar rates, up to $1,050 per hour.[57]

---

[54] *See In re Centurylink Sales Pracs. & Sec. Litig.*, 2021 WL 3080960, at *10 (D. Minn. July 21, 2021) (commending that 91% of the total lodestar was incurred by lead counsel).

[55] *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1065 (D. Minn. 2010).

[56] *See Khoday v. Symantec Corp.*, Case No. 11-cv-180 (JRT/TNL) (D. Minn.), ECF Nos. 409-1, 410-1 (filed December 7, 2015).

[57] *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (finding rates between $300 and $1,050 for attorneys reasonable); *Dickey v. Advanced Micro Devices, Inc.*, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (finding rates between $275 and $1,000 for attorneys reasonable); *In re Auto Parts Antitrust Litig.*, 2018 WL 7108072, at *3 (E.D. Mich. Nov. 5, 2018) ("In national markets, "partners

The 1.44 multiplier does not exceed the bounds of reasonableness, particularly in light of the work performed by Counsel prior to this settlement.[58] In this district, courts routinely award positive multipliers of up to 4.7.[59] Indeed a multiplier of less than two is below the range of multipliers commonly accepted in similar litigation.[60]

**D.    The Court Should Reimburse the Expenses that Counsel has Incurred Over the Course of this Litigation.**

Finally, Counsel seeks reimbursement for the out-of-pocket costs advanced to support this litigation. "It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile

---

routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400." In specialties such as "antitrust and high-stakes litigation and appeals … [f]or lawyers at the very top of those fields, hourly rates can hit $1,800 or even $1,950.").

[58] *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019) (upholding a lodestar multiplier of 5.3); *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *18 (E.D. Mo. Jun. 30, 2005) (finding reasonable a 5.61 cross-check multiplier and noting that "[t]o overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services" (internal quotation omitted)).

[59] *See, e.g., In re Xcel Energy*, 364 F. Supp. 2d at 999 (awarding a fee representing a 4.7 multiplier); *Yarrington*, 697 F. Supp. 2d at 1076 (awarding a fee representing a 2.26 multiplier); *In re St. Paul Travelers Sec. Litig.*, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (using a multiplier of 3.9).

[60] *Khoday*, 2016 WL 1637039, at *11, *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016).

010736-11/1671275 V1

expenses."[61] Thus far, Counsel has spent $322,972.19 to advance this litigation. Scarlett Decl., ¶ 19. Most of these costs are attributable to hosting defendants' document production in an online database ($31,524.05) and paying experts and consultants ($258,352.33). *Id.*, ¶¶ 20-21. These costs were incurred by Counsel with no guarantee that they would ultimately be recovered. They were reasonable, necessary for this case and should be reimbursed.

## V. CONCLUSION

For these reasons Counsel respectfully request an award of $6,600,000 in attorneys' fees and $322,972.19 in expenses.

DATED: October 6, 2021

HAGENS BERMAN SOBOL SHAPIRO LLP

By:_____*/s/ Shana E. Scarlett*_____
        SHANA E. SCARLETT
Rio Pierce
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.om

---

[61] *Yarrington*, 697 F. Supp. 2d at 1065; *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *3 (D. Minn. July 13, 2015) (citing to Fed. R. Civ. P. Rule 23 and cases); *see also Khoday*, 2016 WL 1637039, at *12 (D. Minn. April 5, 2016) ("Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation.").

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Joshua J. Rissman (#391500)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844
Facsimile:  (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

*Interim Co-Lead Counsel for Consumer
Indirect Purchaser Plaintiffs*

010736-11/1671275 V1