# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Case No. 18-cv-1776 (JRT/HB) |
| This Document Relates To: | **Memorandum in Support of Motion for Final Approval of Class Action Settlement Between the Commercial and Institutional Indirect Purchaser Plaintiffs and Defendant JBS** |
| COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTION | |

# Table of Contents

Introduction ................................................................................................................1

Factual Background.....................................................................................................2

    I.     The Settlement Terms .................................................................3

    II.    The Notice Plan...........................................................................4

    III.   Class Member Reaction .............................................................5

Legal Standard............................................................................................................6

Argument.....................................................................................................................7

    I.     The Settlement is Fair, Reasonable, and Adequate...............................7

        A.    The Likelihood of Success on the Merits Weighed Against the Relief Offered in the Settlement Supports Final Approval.....................7

        B.    The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval ................................................................8

        C.    The Class Member Reaction Favors Final Approval..............................9

        D.    The Circumstances of the Settlement, and the Judgment of Experienced Counsel Who Have Evaluated the Case Supports Approval.......................................................................................................9

    II.    Notice of the Settlements was Proper Under Federal Rule of Civil Procedure 23 and Met Due Process Requirements ...............................10

        A.    There Were No Objections to the Notice Content or Plan .................11

        B.    Timing of CAFA Notices and Final Approval Orders..........................12

    III.   Certification of the Settlement Class is Appropriate ..........................12

        A.    The Settlement Class Satisfies the Requirements of Rule 23(a) ...........12

            1.    The Settlement Class is Sufficiently Numerous ..........................12

    2. Common Questions of Law and Fact Exist ...............................13

    3. The Representative Plaintiffs' Claims are Typical of Those of the Settlement Class ......................................................................13

    4. CIIPP Class Representatives and Their Counsel Have Fairly and Adequately Represented the Interests of the Class Members ..................................................................................14

  B. The Settlement Class Satisfies the Requirements of Rule 23(b) ...........15

    1. Common Legal and Factual Questions Predominate.................16

    2. Class Actions Settlement is Superior to Other Methods of Adjudication ...............................................................................16

 IV. The Court Should Appoint Settlement Class Counsel and Class Representatives ...........................................................................................17

Conclusion.......................................................................................................................17

## Table of Authorities

**Cases**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ........................................................14

*AmChem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) ............................ 12, 15, 16

*Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763 (8th Cir. 1971) .........12

*Blades v. Monsanto Co.*, 430 F.3d 562 (8th Cir. 2005) ......................................................................13

*Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251 (D. Minn. 2000) ....................15

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ......................................................................................16

*Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595 (8th Cir. 2020) ..............15

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ..................................................... 7, 9, 13

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ...................................................7, 11

*In re Hartford Sales Practices Litig.*, 192 F.R.D. 592 (D. Minn. 1999) ............................................13

*In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995) .........................................................15

*In re Pressure Sensitive Lablestock Antitrust Litig.*, 584 F. Supp. 2d 697 (M.D. Pa. 2008) ...............8

*In re UnitedHealth Grp., Inc. S'holder Derivative Litig.*,
    631 F. Supp. 2d 1151 (D. Minn. 2009) ......................................................................9, 10

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ...............................7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    2013 WL 716088 (D. Minn. Feb. 27, 2013) ....................................................6, 10, 11, 16

*Jones v. Flowers*, 547 U.S. 220 (2006) ...............................................................................................11

*Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569 (D. Minn. 1995) .............................13

*Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013) .............................................................6, 10

*MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.*, 546 F.3d 533 (8th Cir. 2008) .....................................6

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .......................................... 10, 11

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) ............................................... 14

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .............................................. 8, 10

*Sandusky Wellness Ctr., LLC v. Medtox Sci, Inc.*, 821 F.3d 992 (8th Cir. 2016) ........................... 16

*Smith v. Conoco Phillips Pipe Line Co.*, 801 F.3d 921 (8th Cir. 2015) ................................... 12

*Smith v. SEECO, Inc.*, 965 F.3d 1021 (8th Cir. 2017) ................................................. 11

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) .......................................... 9

*TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456 (2d Cir. 1982) ................................... 9

*Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) .................................. 8

*UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ........................................... 6

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) .................................................. 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005),
    *cert. denied* 544 U.S. 1044 (2005) ............................................................ 9

*Welsch v. Gardenbring*, 667 F. Supp. 1284 (D. Minn. 1987) ............................................. 8

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) .................................... 6

**Statutes**

Federal Rule of Civil Procedure 23 ............................................................... 7, 11

Federal Rule of Civil Procedure 23(a) .............................................................. 12

Federal Rule of Civil Procedure 23(a)(1) ........................................................... 12

Federal Rule of Civil Procedure 23(a)(2) ........................................................... 13

Federal Rule of Civil Procedure 23(a)(3) ........................................................... 13

Federal Rule of Civil Procedure 23(a)(4) ........................................................... 14

Federal Rule of Civil Procedure 23(b) ............................................................... 15, 16, 17

Federal Rule of Civil Procedure 23(b)(3) ....................................................... 10, 15, 16

Federal Rule of Civil Procedure 23(c)(2)(B) ...................................................... 10, 11

Federal Rule of Civil Procedure 23(e) .......................................................................7

Federal Rule of Civil Procedure 23(e)(1) ...............................................................10

Federal Rule of Civil Procedure 23(e)(2) ................................................................6

Federal Rule of Civil Procedure 23(g) .....................................................................17

## Other Authorities

28 U.S.C. § 1715(b) ...............................................................................................12

4 Newberg on Class Actions § 11.26 .......................................................................6

4 Newberg on Class Actions § 11.41 (4th ed. 2005) ...............................................6

4 Newberg on Class Actions § 18.28 (4th ed. 2002) .............................................15

## Introduction

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") seek the Court's final approval of the settlement of their claims against the JBS defendants (JBS USA Food Company; JBS USA Food Company Holdings; and Swift Pork Company). Under this "ice-breaker" settlement, JBS will pay $12,750,000.00 ($12.75 million) to the CIIPP settlement class. The settlement also provides meaningful cooperation, which will assist the CIIPPs in their pursuit of the remaining Defendants. No class member objected or opted out.

The settlement provides excellent benefits considering the conduct, damage, and litigation risks related to JBS. The cash component is a reasonable compromise of the liability claim in comparison to the volume of commerce believed to be affected by JBS's conduct. The settlement also reflects the value of receiving money and cooperation now, which benefit the CIIPPs' claims against any new or non-settling Defendants.

Notice of the settlement, as required by Federal Rule of Civil Procedure 23, was provided through the notice plan the Court previously approved. The response from the members of the settlement class was uniformly positive. No class member objected to the settlement, attorney fees, litigation expenses, or the request to set aside funds for future class representative service awards. This is significant given that the settlement class consists of sophisticated businesses with their own counsel who can analyze the merits of these settlements. The favorable reception of this settlement provides good evidence that final approval should be granted, and final judgment be entered.

**Factual Background**

This putative class action alleges that Defendants[1] engaged in a price-fixing conspiracy to artificially constrict the supply of pork products in the domestic market of the United States. The CIIPPs allege that Defendants conspired to constrain the supply, and fix the price, of pork[2] from at least 2009 through the commencement of the present action.[3] (*See* CIIPP Fourth Consolidated and Amended Complaint (Dkt. 808)).[4] The CIIPPs allege that Defendants—

---

[1] Defendants in this action include Agri Stats, Inc.; Clemens Food Group, LLC and The Clemens Family Corporation; Hormel Foods Corporation and Hormel Foods, LLC; Indiana Packers Corporation; JBS USA Food Company; Seaboard Foods LLC and Seaboard Corporation; Smithfield Foods, Inc.; Triumph Foods, LLC; and Tyson Foods, Inc., Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc.

[2] For this settlement, "Pork" means porcine or swine products processed, produced or sold by JBS, or by any of the Defendants or their co-conspirators, including but not limited to: primals (including but not limited to loins, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chef's prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including, but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products), offal or variety products (including, but not limited to hearts, tongues, livers, head products, spleens, kidneys, feet, stomach, bladder, uterus, snoot, ears, tail, brisket bone, intestines, jowls neck bones or other bones, skin, lungs, glands, hair, or pet food ingredients), rendered product and byproducts (including, but not limited to, lard, grease, meat meal, bone meal, blood meal, or blood plasma), casings (including, but not limited to, mucosa), and carcasses. (Dkt. 757).

[3] The CIIPP representative plaintiffs are: Sandee's Bakery; Francis T. Enterprises d/b/a Erbert & Gerbert's; Joe Lopez, d/b/a Joe's Steak and Leaf; Longhorn's Steakhouse; The Grady Corporation; Mcmjoynt LLC d/b/a The Breakfast Joynt; Edley's Restaurant Group, LLC; Basil Mt. Pleasant, LLC; Basil Charlotte, Inc.; Farah's Courtyard Deli, Inc.; and Tri-Ten LLC.

[4] The Court granted Defendants' initial motions to dismiss Plaintiffs' complaints, with leave to amend, in August 2019. (Dkt. 360.) On October 16, 2020, the Court denied Defendants' motions to dismiss the CIIPPs Third Consolidated Amended Complaint, except as to certain state-law claims. (Dkts. 519, 520).

through their co-conspirator, Agri Stats—exchanged detailed, competitively sensitive, and closely guarded non-public information about price, capacity, sales volume, and demand. (*Id.* ¶ 2). Agri Stats provided highly sensitive "benchmarking" reports to most pork integrators, thereby allowing competitors to compare their profits or performance against that of other companies. (*Id.* ¶ 3). The effect of this anti-competitive exchange of non-public information allowed pork integrators to control the supply and price of pork. (*Id.*)

The cases in this coordinated litigation, unlike some civil-antitrust actions, were brought without the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program and without a formal antitrust investigation by the Department of Justice. On October 15, 2018, the Court appointed the undersigned as Interim Co-Lead Class Counsel for the CIIPPs. (Dkt. 150). Since filing their first complaint, the CIIPPs have continued their investigation and development of their case. During ongoing discovery, Interim Co-Lead Class Counsel negotiated a proposed settlement with JBS. The Court preliminarily approved the settlement between CIIPPs and JBS on May 3, 2021. (Dkt. 767).

## I.    The Settlement Terms

This first CIIPP settlement came after substantial adversarial litigation with Defendants in this MDL and after years of investigation. CIIPPs' counsel was well-informed and the Settlement Agreement with JBS arose from arm's length and good-faith negotiations. (*See* Declaration of Shawn Raiter). The parties participated in fact-gathering sessions, informational meetings, and several mediation sessions with a nationally recognized mediator. (*Id.*)

The CIIPPs negotiated a Settlement which provides a substantial cash benefit. Under the Settlement, JBS will pay $12,750,000 (twelve million seven hundred fifty thousand U.S.

dollars) to the CIIPP Settlement Class.[5] Of that amount, the Court approved up to $500,000 to be used for reasonable costs of disseminating notice of the Settlement Agreement, including the cost of administration. (Dkt. 812). The Settlement may, upon the Court's approval, also be of further benefit by being utilized to fund litigation expenses against the non-settling Defendants.

On top of the $12,750,000 in cash payments, JBS is also required to provide the CIIPPs with various forms of cooperation. The terms of the cooperation were outlined in a confidential side letter agreement that remains available upon request by the Court for *in camera* review. (Settlement Agreement, Ex. A, ¶ 10 (Dkt. 757-1)).

## II.   The Notice Plan

The Court preliminarily approved the settlement on May 3, 2021. (Dkt. 767). Separately, the Court approved the CIIPPs proposed notice plan. (Dkt. 812). Pursuant to that Order, the CIIPPs effectuated the proposed notice plan through class action notice consultant Epiq Class Action & Claims Solutions, Inc. ("Epiq") and its business unit Hilsoft Notifications ("Hilsoft"). Through Epiq, Hilsoft, and Cameron Azari—a nationally-recognized expert in

---

[5] The Settlement Class is defined as: "All entities who indirectly purchased Pork from Defendants or co-conspirators or their respective subsidiaries or affiliates in the United States during the Settlement Class Period for their own business use in commercial food preparation.

Specifically excluded from the Settlement Class are Defendants; the officers, directors or employees of any Defendant; the parent companies of any Defendant; the subsidiaries of any Defendant and any entity in which Defendant has a controlling interest; purchasers of Pork that purchased Pork for resale in an unmodified and untransformed form; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Settlement Class are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action." (Settlement Agreement, Dkt. 757-1).

the field of legal notice—potential CIIPP class members were identified and mailed a long form notice that provided information about the settlement. (*See* Declaration of Cameron Azari). The notice consultant also sent long form notices to email addresses associated with potential class members. (*Id.*) A multi-faceted notice program intended to provide the best notice practicable under the circumstances was therefore carried out and included:

- Individual Email Notice to approximately 90,000 Class Members;
- Establishment of a Settlement Website and toll-free telephone number;
- Targeted Banner Notices on advertising networks *Google Display Network* and *Verizon (Yahoo) Audience Network*;
- Advertising on social media websites, including *Facebook* and *LinkedIn*;
- Sponsored search listings on the three most-visited search engines: *Google*, *Yahoo!*, and *Bing*; and
- An Information Release issued over PR newswire to approximately 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television, and radio broadcast, as well as approximately 4,500 websites, online databases, internet networks, and social media networks, and also distributed to more than 530 journalists that report specifically on restaurants and the food industry.

(*See id.*) The notice plan "reached" approximately 70 percent of the potentially eligible class members. (*Id.*). Class members were notified of the Settlement Website, which provided information and further case-related documents such as the long-form notice, short-form notice, and the full text of the Settlement Agreement. (*Id.*). The Claims-Administrator also provided instructions on how to attend the Court's fairness hearing, details on how to object to the Settlement or opt out of the Settlement Class, and other details regarding the Settlement and approval process. (*Id.*).

## III.   Class Member Reaction

The reaction to the Settlement Agreement was uniformly positive. No class member objected to any term of the Settlement or opted out of the Settlement class. (*Id.*).

**Legal Standard**

The district court must review class action settlements to ensure that they are "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993); *see MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.*, 546 F.3d 533, 541 (8th Cir. 2008); *accord UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions). Review of a proposed class-action settlement typically proceeds in two stages: preliminary approval and final approval. *See Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). Between preliminary and final approval, the class must be notified of the proposed settlement and be given an opportunity to object, opt out of the class, or be heard. 4 Newberg on Class Actions § 11.26.

A district court "has broad discretion in evaluating a class action settlement." *Van Horn v. Trickey*, 840 F.2d 604, 606–07 (8th Cir. 1988). In exercising this discretion, the court gives "great weight" to and may rely on the judgment of experienced counsel in its evaluation of a proposed settlement. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 08-MDL-1958 (ADM/AJB), 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41 (4th ed. 2005) (collecting cases). "In examining a proposed compromise for approval or disapproval … the court does not try the case. The very purpose of compromise is to avoid the delay and

expense of such a trial." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975) (quotation omitted).

**Argument**

**I.     The Settlement is Fair, Reasonable, and Adequate.**

The Settlement with JBS meets the criteria required for final approval under Rule 23 of the Federal Rules of Civil Procedure. It provides meaningful benefits and was reached after negotiations between experienced counsel who were armed with sufficient background about the merits and defenses to the claims asserted. The settlements reflect a reasonable compromise considering the liability, damages, and procedural uncertainties facing both the CIIPPs and JBS.

In making the determination under Rule 23(e) of whether the settlement is fair, reasonable, and adequate, the district court considers a number of factors, including: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005). The court may also consider procedural fairness to ensure the settlement is not the product of fraud or collusion. *Id.* And the court may consider whether a settlement resulted from arm's length negotiations, and whether a skilled mediator was involved. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

**A.     The Likelihood of Success on the Merits Weighed Against the Relief Offered in the Settlement Supports Final Approval.**

The strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement, is an important consideration in determining whether a settlement is

7

fair, reasonable, and adequate. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999). While the CIIPPs believe they have a strong case against JBS on the merits, success is by no means guaranteed. The Settlement provides, as discussed, substantial benefits in the form of cash and cooperation. The fact of certain substantial monetary compensation and cooperation is significant to this factor because, even if CIIPPs could potentially recover greater damages at trial, the non-settling defendants remain jointly and severally liable for any damages resulting from JBS's Pork sales to CIIPPs during the class period. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981); *see also In re Pressure Sensitive Lablestock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tend to offset the fact that they would be able to withstand a larger judgment.").

Interim Co-Lead Counsel has investigated and analyzed, among other things, the strength of the liability claims against JBS, the volume of affected commerce, the value of the cooperation being provided, and the range of damage that could be proven at trial against JBS. Counsel believes this Settlement to be a positive outcome for the CIIPPs—it reflects both the strength of the CIIPPs case and the risk that JBS could prevail on some of its arguments. The Court may afford "great weight" to the opinions of experienced counsel. *E.g., Welsch v. Gardenbring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987). This factor weighs in favor of final approval.

### B. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval.

This Court has had substantial opportunity to consider the claims and defenses in this litigation and knows that complex antitrust litigation of this scope has many inherent risks that settlements extinguish. This case was commenced more than three years ago, and it would

likely continue for several more years, at significant additional expense, if litigated through an adversarial judgment any appeals. Even then, "the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (quotation omitted), *cert. denied*, 544 U.S. 1044 (2005). This factor also weighs heavily in favor of final approval.

## C.   The Class Member Reaction Favors Final Approval.

The absence of negative reaction to a settlement weighs in favor of approval. *In re UnitedHealth Grp., Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009); *accord Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *see also TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of large number of class). Here, notice of the Settlement was sent and published to the potential class, and no class member objected to any term of the Settlement or opted-out of the class. The lack of objection speaks loudly about the benefits of the Settlement. This factor counsels in support of final approval.

## D.   The Circumstances of the Settlement, and the Judgment of Experienced Counsel Who Have Evaluated the Case Supports Approval.

There are several other miscellaneous factors the district court considers in determining whether a settlement is fair, reasonable, and adequate. All of them support final approval.  The experience and opinion of counsel on both sides may be considered in determining whether a settlement is fair, reasonable, and adequate. *DeBoer*, 64 F.3d at 1178. Also, where sufficient discovery has been conducted and the parties have bargained at arms-length, there is a

presumption in favor of the settlement. *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d at 1158; *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1959, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) ("Settlement agreements are presumptively valid, particularly where a settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters….").

This settlement is the result of extensive negotiations, with the assistance of an experienced mediator, between counsel actively involved and informed with the case. The judgment of counsel under these circumstances should be considered. *See Petrovic*, 200 F.3d at 1149. Finally, the "absence of any glaring substantive or procedural deficiencies," in conjunction with the other factors considered, supports final approval. *Martin*, 295 F.R.D. at 383.

## II. Notice of the Settlements was Proper Under Federal Rule of Civil Procedure 23 and Met Due Process Requirements.

The Court is required to "direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1). For Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notice of a class action settlement need only satisfy the broad "reasonableness" standards imposed by due process. *Petrovic*, 200 F.3d at 1153. A notice is adequate if "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). To satisfy due

process, the notice must reflect a desire to inform. *Mullane*, 339 U.S. at 315. The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process." *Grunin*, 513 F.2d at 121. The notice plan should take reasonable steps to update addresses before mailing and provide for re-mailing of notices to better addresses when returned as undeliverable. *Jones v. Flowers*, 547 U.S. 220, 226–27 (2006).

The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. I*n re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 (ADM/AJB), 2012 WL 5055810, at *8 (D. Minn. Oct. 18, 2012); *see Smith v. SEECO, Inc.*, 965 F.3d 1021, 1025-26 (8th Cir. 2017) (stating that best notice practicable "is essentially an interest in due process"). Furthermore, in addition to United States mail, notice may be by electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

### A.      There Were No Objections to the Notice Content or Plan.

No member of the Settlement Class objected to or criticized the notice program. (Azari Decl. at 33). Through its class administrator, the notice plan was executed and reached an estimated 70% of the potential class members. (*Id.*). As described more fully above, potential CIIPP class members received information concerning all details of the settlement, as well as information regarding their rights to object to the Settlement or opt out of the Settlement Class. The notice program easily satisfied the requirements of Rule 23 and Due Process.

**B.**     **Timing of CAFA Notices and Final Approval Orders.**

The Class Action Fairness Act, 28 U.S.C. § 1715(b), requires that appropriate federal and state officials (here, the United States and state attorneys general) be notified of any proposed class action settlement. The Court may not grant final approval to a proposed settlement until 90 days after such notice is served. *Id.* JBS served the required notices to public officials more than 90 days ago, and none of the state attorneys general have responded or requested an opportunity to be heard about the terms of the settlement. (Raiter Decl.).

**III.   Certification of the Settlement Class is Appropriate.**

In its preliminary approval order, the Court found that Rule 23's requirements were met and provisionally certified—for settlement purposes only—a Settlement Class relating to the parties covered by the Settlement. It is well-established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) (describing Rule 23(a) requirements as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation). A settlement class may be certified if it satisfies each requirement set forth in Rule 23(a), and at least one of the separate provisions set forth in Rule 23(b). *Id.* at 613–14; *Smith v. Conoco Phillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015).

**A.**     **The Settlement Class Satisfies the Requirements of Rule 23(a).**

1.     <u>The Settlement Class is Sufficiently Numerous</u>

Rule 23(a)(1), Fed. R. Civ. P., requires that the class be "so numerous that joinder of all members is impracticable." The notice for this Settlement was mailed to thousands of potential class members. (Azari Decl.) This easily satisfies the numerosity requirements. *See Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765–66 (8th Cir. 1971)

(approving class of twenty members); *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (approving class with as few as forty members).

### 2.   Common Questions of Law and Fact Exist

Federal Rule of Procedure 23(a)(2) requires that there be "questions of law of fact common to the class." The threshold for commonality is low, requiring only that the legal question "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *see In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999) ("[T]he commonality requirement imposes a very light burden on Plaintiff seeking to certify a class and is easily satisfied."). For a class to be certified, plaintiffs need to demonstrate "that common issues prevail as to the existence of a conspiracy and the fact of injury." *Blades v. Monsanto Co.*, 430 F.3d 562, 566 (8th Cir. 2005). Common questions prevail here about whether JBS illegally conspired to fix the supply and price of Pork in the United States. Common questions also prevail as to whether CIIPPs were injured because of JBS' anti-competitive conduct. The Settlement Class satisfies the commonality requirement.

### 3.   The Representative Plaintiffs' Claims are Typical of Those of the Settlement Class

Federal Rule of Procedure Rule 23(a)(3) requires that a representative plaintiff's claims be typical of those of other class members. This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the

same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

The CIIPPs allege claims that arise out of the same alleged conduct of JBS—whether it illegally conspired to fix the supply and price of Pork in the United States. The representative Plaintiffs of the CIIPP Settlement Class each allege that they paid artificially inflated prices for Pork, which exceeded the amount they would have paid if the price for Pork had been determined by a competitive market. (Dkt. 808, ¶ 7). Each individual class member has the same interests as the class representatives, suffered the same or similar harm, and must prove the same conspiracy. The typicality requirement is therefore satisfied.

### 4. CIIPP Class Representatives and Their Counsel Have Fairly and Adequately Represented the Interests of the Class Members

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The focus of Rule 23(a)(4) is "whether (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

The CIIPP class representatives have common interests with the members of the Settlement Class. They share interests in obtaining the best possible monetary recovery and securing cooperation against non-settling Defendants. The named representatives have and will vigorously pursue this matter through qualified counsel. Undersigned counsel have significant antitrust experience and have successfully led other antitrust MDL actions involving intermediate indirect purchasers. (*See* Mem. in Support of Motion to Appoint Counsel for Commercial and Indirect Purchaser Plaintiffs, Dkt. 114). The Court has

14

recognized that the undersigned counsel will adequately represent the CIIPPs. (Order Appointing Co-Lead Counsel, Dkt. 150). Counsel has vigorously prosecuted the interests of the CIIPPs throughout motion practice, discovery, and settlement negotiations.

### B. The Settlement Class Satisfies the Requirements of Rule 23(b).

In addition to satisfying the requirements of Rule 23(a), plaintiffs seeking class certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). "The requirements of 'predominance of common issues' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000).

The Rule 23(b) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. This test is readily met in certain cases, including those alleging violations of antitrust laws. *Id.* at 625; *see also In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."); 4 Newberg on Class Actions § 18.28 at 102 (4th ed. 2002) ("As a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions."). Slight variation in actual damages does not defeat predominance if there are common legal questions and common facts. *Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020).

1.     <u>Common Legal and Factual Questions Predominate</u>

Questions of law or fact common to the CIIPP Settlement Class predominate over any questions affecting only individual members. These questions, subject to common proof, include whether JBS engaged in anticompetitive conduct and/or conspired to artificially lower Pork output and raise prices, and whether the CIIPPs paid artificially inflated prices for Pork during the class period. *See Sandusky Wellness Ctr., LLC v. Medtox Sci, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question."). Therefore, the CIIPP class satisfies the predominance requirement.

2.     <u>Class Actions Settlement is Superior to Other Methods of Adjudication</u>

Plaintiffs seeking class certification must also show that a class action is superior to individual claims. Rule 23(b) provides four pertinent considerations: (A) the interest of the class members in individually controlling the prosecution or defense of separate actions; (B) whether other litigation concerning the controversy already exists; (C) the desirability of concentrating the litigation in the particular forum; and (D) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). But when a class is being certified for settlement, the Court "need not examine the Rule 23(b)(3)(A–D) manageability issues, because it will not be managing a class action trial." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *5 (citing *Amchem Prods., Inc.*, 521 U.S. at 620).

Where class wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). A class action is the superior method to adjudicate this

litigation because it promotes greater efficiency than individually litigating hundreds or thousands of class members' claims. The requirements of Rule 23(b) are satisfied in this case.

## IV.    The Court Should Appoint Settlement Class Counsel and Class Representatives.

At preliminary approval, the Court provisionally appointed Interim Co-Lead Counsel for the CIIPPs as class settlement counsel and appointed the named CIIPP representatives as the representatives of the provisionally certified class settlements. (Dkt. 767). As part of the final approval process, the Court should appoint Larson · King, LLP and Cuneo Gilbert & LaDuca, LLP as Settlement Class Counsel. These firms have represented the CIIPPs throughout the litigation and satisfy the requirements of Rule 23(g), Fed. R. Civ. P. The Court should also appoint the CIIPPs named in footnote 3 above as class representatives of the Settlement Class.

## Conclusion

For the foregoing reasons, CIIPPs respectfully request that the Court: (1) grant final approval of the Settlement with JBS; (2) certify the Settlement Class for purposes of settlement; and (3) enter judgement as to the relevant JBS Defendants in this case.

Dated: October 20, 2021                     **Larson · King, LLP**


By ___*s/ Shawn M. Raiter*___
Shawn M. Raiter (#240424)
Jason T. Johnson (#0399974)
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
(651) 312-6500
sraiter@larsonking.com
jjohnson@larsonking.com

Jonathan W. Cuneo (admitted *pro hac vice*)
Blaine Finley (admitted *pro hac vice*)
**Cuneo, Gilbert & LaDuca, LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, DC  20016
(202) 789-3960
jonc@cuneolaw.com
bfinley@cuneolaw.com

**Interim Co-Lead Counsel for the Commercial
and Institutional Indirect Purchaser Plaintiffs**