UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTIONS | Case No. 18-cv-1776 (JRT/HB) |

**DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM**

I, Cameron Azari, declare as follows:

1. My name is Cameron R. Azari, Esq. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am a nationally recognized expert in the field of legal notice, and I have served as an expert in hundreds of federal and state cases involving class action notice plans.

3. I am a Senior Vice President with Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"); a firm that specializes in designing, developing, analyzing and implementing large-scale legal notification plans. Hilsoft is a business unit of Epiq.

4. This declaration will describe the implementation of the Settlement Notice Program for the Commercial and Institutional Indirect Purchaser Plaintiffs ("Notice Program" or "Notice Plan") and notice (the "Notice" or "Notices") for *In re Pork Antitrust Litigation (Indirect Purchaser Actions)*, Case No. 0:18-cv-01776 (D. Minn.). I previously executed my *Declaration of Cameron R. Azari, Esq. Regarding Notice Program*, on June 15, 2021, in which I detailed Hilsoft's class action notice experience and attached Hilsoft's *curriculum vitae*. I also provided my educational and professional experience relating to class actions and my ability to render opinions on overall adequacy of notice programs.

## OVERVIEW

5. On May 3, 2021, in the *Order Granting Commercial and Institutional Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Proposed Settlement with JBS Defendants and Provisional Certification of Settlement Class* ("Preliminary Approval Order"), the Court provisionally certified the following Settlement Class for settlement purposes:

> All entities who indirectly purchased Pork from Defendants or coconspirators or their respective subsidiaries or affiliates in the United States during the Settlement Class Period for their own business use in commercial food preparation.
>
> Specifically excluded from the Settlement Class are Defendants; the officers, directors or employees of any Defendant; the parent companies of any Defendant; the subsidiaries of any Defendant and any entity in which Defendant has a controlling interest; purchasers of Pork that purchased Pork directly from any Defendant, including those that directly purchased Pork for resale in an unmodified and untransformed form; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Settlement Class are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action.

6. I have reviewed the *Long-Form Settlement Agreement Between Commercial and Institutional Indirect Purchaser Class Plaintiffs and JBS* ("Settlement Agreement") and understand that the Settlement Class Period is from January 1, 2009, to May 3, 2021.

7. It is my understanding that all Settlement Class members are members of the nationwide class and only Settlement Class members in the following jurisdictions are eligible to potentially recover money from the settlement funds: Arkansas Arizona, California, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia and/or Wisconsin.

8. Subsequently, on June 22, 2021, the Court approved the Notice Plan as designed by Hilsoft in the *Order Granting Motion to Approve the Manner and Form of Class Notice*

*Regarding Settlement with JBS Defendants* ("Notice Order").

9. After the Court's Preliminary Approval Order and Notice Order were entered, we began to implement the Notice Program. This declaration will detail the notice activities undertaken and explain how and why the Notice Plan was comprehensive and well-suited to the Settlement Class. This declaration will also discuss the administration activity to date. The facts in this declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues from Hilsoft and Epiq, who worked with us to implement the notice effort.

10. Hilsoft developed the Notice Program based on our prior experience and research into the notice issues in this case. We analyzed and proposed the most effective method practicable of notice for this Settlement Class. In my opinion, the Notice Program as implemented reached the greatest practicable number of Settlement Class Members through the use of individual notice and targeted media notice.

## NOTICE PROGRAM DETAIL

11. Federal Rule of Civil Procedure 23 directs that notice must be the best notice practicable under the circumstances must include "individual notice to all members who can be identified through reasonable effort."[1] The Notice Program here satisfied this requirement. Notice was provided with an individual notice effort and was supplemented by a targeted, media campaign.

12. The Notice Program (individual notice and supplemental media - nationally distributed digital and social media) reached 71% of the Settlement Class, with an average frequency of 2.6 times each. "Reach" refers to the estimated percentage of the unduplicated audience exposed to the notice. Notice exposure is defined as the opportunity to see a notice. "Frequency" of notice exposure is the average number of times that those reached by a notice would be exposed to the notice. The reach was further enhanced by internet sponsored search

---

[1] Fed. R. Civ. P. 23(c)(2)(B).

listings, an informational release, and a settlement website, which were included in the reach calculation. In my experience, the reach of the Notice Program was consistent with other court approved notice programs, was the best notice practicable under the circumstances of this case and satisfied the requirements of due process, including its "desire to actually inform" requirement.[2]

## INDIVIDUAL NOTICE

### *Email Notice – Direct Mail*

13.     On June 16, 2021, Epiq acquired an email list of 90,832 restaurants nationwide ("potential Settlement Class Member List"). This data was used to provide individual notice to the Settlement Class. Epiq used the potential Settlement Class Member List to send an Email Notice to all facially valid email addresses contained in the List.

14.     On July 13, 2021, Epiq sent 90,839 Email Notices to potential Settlement Class Members with a facially valid email address, as obtained from the potential Settlement Class Member List. Industry standard best practices were followed for the Email Notice efforts. The Email Notice was drafted in such a way that the subject line, the sender, and the body of the message would overcome SPAM filters and ensure readership to the fullest extent reasonably practicable. For instance, the Email Notice used an embedded html text format. This format provided easy to read text without graphics, tables, images, attachments, and other elements that would increase the likelihood that the message could have been blocked by Internet Service Providers (ISPs) and/or SPAM filters. The Email Notices was sent from an IP address known to major email providers as one not used to send bulk "SPAM" or "junk" email blasts. Each Email Notice was transmitted with a digital signature to the header and content of the Email Notice, which allowed ISPs to programmatically authenticate that the Email Notices were from authorized mail servers. Each Email Notice was also transmitted with a unique message

---

[2] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

identifier.  The Email Notice included an embedded link to the settlement website.  By clicking the link, recipients were able access the Long Form Notice, Settlement Agreement and other information about the Settlement.  The Email Notice is included as **Attachment 1**.  The Long Form Notice is included as **Attachment 2**.

15.     If the receiving email server could not deliver the message, a "bounce code" was returned along with the unique message identifier.  For any Email Notice for which a bounce code was received indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical auto-replies, etc., at least two additional attempts were made to deliver the Notice by email.  After completion of the Email Notice effort, 16,153 Email Notices remained undeliverable.

## *Media Plan*

### *Targeted Internet Banner Advertising*

16.     Internet advertising has become a standard component in legal notice programs.  The internet has proven to be an efficient and cost-effective method to target class members as part of providing notice of class certification and/or a settlement for a class action case.  According to MRI-Simmons syndicated research, over 89% of adults, aged 18+ in the United States are online.[3]

17.     The Notice Program included targeted banner advertising on selected advertising networks, which were targeted to Settlement Class Members.  The internet Banner Notices linked directly to the settlement website, thereby allowing visitors easy access to relevant information and documents.

18.     The internet Banner Notices used language from the Long Form Notice, which allowed users to identify themselves as potential Settlement Class Members.  As an additional way to draw the interest of Settlement Class Members, and to be consistent with FJC recommendations that a picture or graphic may help class members self-identify, the internet Banner Notices prominently featured a high-resolution graphic of a diagram of the pork butcher

---

[3] MRI-Simmons 2020 Survey of the American Consumer®.

cuts identified on a pig.  Examples of the Banner Notices are included as **Attachment 3**.

19. The Notice Program included internet Banner Notices in various sizes, which were placed on the advertising networks, *Google Display Network* and *Verizon (Yahoo) Audience Network*. Combined, these ad networks cover 90% of the United States' population that is online. All internet Banner Notices ran on desktop, mobile and tablet devices and were distributed to the selected targeted audiences nationwide as described below.  Internet Banner Notices were also targeted (remarketed) to people who visited the settlement website.

20. The Notice Program also included advertising on social media, which consisted of internet Banner Notices on *Facebook* and *LinkedIn* in multiple sizes.  *Facebook* is the leading social networking site in the United States with more than 220 million users in the United States and *LinkedIn* is the world's largest professional network on the internet with more than 178 million members in the United States.

21. More details regarding the target audiences, distribution, and specific ad sizes of the internet Banner Notices, are included in the following table.

| *Network/Property* | *Target* | *Distribution* | *Ad Sizes* | *Delivered Impressions* |
|---|---|---|---|---|
| *Google Display Network* | Adults 18+ | National | 728x90, 300x250, 300x600, 970x250 | 12,042,665 |
| *Google Display Network* | Custom Affinity Audience:[4] Business Owner | National | 728x90, 300x250, 300x600, 970x250 | 31,804,712 |
| *Google Display Network* | Custom Intent Audience:[5] Food Service | National | 728x90, 300x250, 300x600, 970x250 | 29,389,650 |
| *Google Display Network* | Custom Affinity Audience: Food Service | National | 728x90, 300x250, 300x600, 970x250 | 30,164,233 |
| *Verizon (Yahoo) Audience Network* | Finance/Business Channels | National | 728x90, 300x250, 300x600, 970x250 | 35,113,475 |

---

[4] "Custom Affinity Audience" means Banner Notices were targeted to specific website content, here meaning websites, blogs, etc. that focus on business owners, small businesses, business opportunities, and business formation.
[5] "Custom Intent Audience" means Banner Notices were targeted to individuals who have searched for the targeted topic, here meaning the food service, restaurant, & hospitality industry.

| Facebook | Adults 18+ | National | Newsfeed & Right Hand Column | 5,168,769 |
|---|---|---|---|---|
| Facebook | Interests include Business Ownership | National | Newsfeed & Right Hand Column | 14,718,999 |
| Facebook | Interests include Food Service | National | Newsfeed & Right Hand Column | 14,442,666 |
| Facebook | Demographics Targeting: Food and Restaurants | National | Newsfeed & Right Hand Column | 14,606,210 |
| LinkedIn | Jobs in the Food Service Industry | National | LinkedIn Ads | 8,557,225 |
| **TOTAL** | | | | **196,008,604** |

22. Combined, more than 196 million targeted impressions were generated by the internet Banner Notices, which ran from July 13, 2021, through August 12, 2021, nationwide.[6] Clicking on the Banner Notices linked the reader to the settlement website, where they could easily obtain detailed information about the case.

23. Throughout the implementation of the Notice Program, Hilsoft continuously monitored the effectiveness of the Notice Program to ensure impression goals are met to satisfy a combined reach of at least 70%.

### *Sponsored Search Listings*

24. The Notice Program included purchasing sponsored search listings to facilitate locating the settlement website. Sponsored search listings were acquired on the three most highly-visited internet search engines: *Google*, *Yahoo!* and *Bing*. When search engine visitors searched on selected common keyword combinations related to the case, the sponsored search listing was generally displayed at the top of the page prior to the search results or in the upper right-hand column. Representative search terms included word and phrase variations related to the Settlement. The sponsored search listings were displayed nationwide.

---

[6] The third-party ad management platform, ClickCease was used to audit the digital Banner Notice ad placements. This type of platform tracks all Banner Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses. This helps reduce wasted, fraudulent or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

25. The sponsored listings ran from July 13, 2021, through September 11, 2021, and were displayed 20,684 times, resulting in 697 clicks that displayed the settlement website. A complete list of the sponsored search keyword combinations is included as **Attachment 4**. Examples of the sponsored search listing as displayed on each search engine are included as **Attachment 5**.

### *Informational Release*

26. To build additional reach and extend exposures, on July 13, 2021, a party-neutral Informational Release was issued broadly over PR Newswire to approximately 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the United States as well as approximately 4,500 websites, online databases, internet networks and social networking media. The informational release was also distributed to more than 530 journalists that report specifically on restaurants and the food industry.

27. The Informational Release included the address of the settlement website and the toll-free telephone number. The Informational Release served a valuable role by providing additional notice exposures beyond that which was provided by the paid media. The Information Release is included as **Attachment 6**.

### *Settlement Website, Toll-free Telephone Number, and Postal Mailing Address*

28. On July 12, 2021, a settlement website with an easy to remember domain name (www.PorkCommercialCase.com) was established. The settlement website allows Settlement Class Members to obtain detailed information about the case and review key documents, including the Complaints, Long Form Notice, Settlement Agreement, Preliminary Approval Order, and Motion for Attorneys' Fees and Expenses, as well as answers to frequently asked questions ("FAQs"). The website address was displayed prominently on all Notice documents.

29. As of October 18, 2021, there have been 22,803 visitors to the website and 28,101 website pages presented.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM

30. July 12, 2021, a toll-free telephone number (855-867-0738) was also established to allow Settlement Class Members to call for additional information and listen to answers to FAQs. The toll-free telephone number was prominently displayed in the Notice documents as well. The automated phone system is available 24 hours per day, 7 days per week.

31. As of October 18, 2021, the toll-free telephone number has handled 41 calls representing 123 minutes of use.

32. A post office box and an email address for correspondence about the case were also established and maintained, to allow Settlement Class Members to contact the Settlement Administrator by mail with any specific requests or questions.

### *Requests for Exclusion and Objections*

33. The deadline to request exclusion from the Settlement or to object to the Settlement was September 11, 2021. As of October 18, 2021, Epiq has not received any requests for exclusion or objections to the Settlement. As of October 18, 2021, I am not aware of any objections.

## PLAIN LANGUAGE NOTICE DESIGN

34. The Notices were designed to be "noticed" and reviewed by Settlement Class Members and were written in plain language so the Notices could be understood by Settlement Class Members. The design of the Notices followed the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. Many courts, and as previously cited, the FJC itself, have approved notices that we have written and designed in a similar fashion. The Notices contained substantial, albeit easy-to-read, summaries of all of the key information about Settlement Class Members' rights and options. Consistent with our normal practice, all notice documents underwent a final edit for grammatical errors and accuracy.

35. The Notices were designed to increase noticeability and comprehension. Once people "notice" the Notices, it is critical that they can understand them. As such, the Notices, as written, were clearly worded with an emphasis on simple, plain language to encourage readership

and comprehension.

36. The Notices featured a prominent headline in bold text. These design elements alerted recipients and readers that the Notice was an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice.

37. The Long Form Notice provided substantial information to Settlement Class Members. It begins with a summary page, which provided a concise overview of the important information and a table, which highlights key options available to Settlement Class Members. A table of contents, categorized into logical sections, helped to organize the information, while a question and answer format made it easy to find answers to common questions by breaking the information into simple headings.

## CONCLUSION

38. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, and by case law pertaining to the recognized notice standards under Rule 23. This framework directs that the notice plan be optimized to reach the class and, in a settlement notice situation such as this, that the notice or notice plan itself not limit knowledge of legal rights—nor the ability to exercise other options—to class members in any way. All of these requirements were met in this case.

39. The Notice Program included individual notice to potential identified Settlement Class Members and supplemental media. The Notice Program (individual notice and supplemental media - nationally distributed digital and social media) reached 71% of the Settlement Class. The reach was further enhanced by internet sponsored search listings, an informational release, and a settlement website. In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide. This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." Here, we developed and implemented a Notice Program

that readily achieve a reach within that standard.

40. The Notice Program followed the guidance for how to satisfy due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so:

    A. "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950).

    B. "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) citing *Mullane* at 314.

41. The Notice Program described in this declaration provided for the best notice practicable under the circumstances of this case, conformed to all aspects of the Rule 23, and comported with the guidance for effective notice set out in the Manual for Complex Litigation, Fourth.

42. The Notice Program schedule afforded sufficient time to provide full and proper notice to Settlement Class Members before the exclusion request and objection deadlines.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on October 20, 2021, at Beaverton, Oregon.

*/s/ Cameron R. Azari*
Cameron R. Azari