UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>*This Document Relates to:*<br><br>All Actions | Case No. 0:18-cv-01776 (JRT-HB)<br><br>Case No. 0:21-md-02998 (JRT-HB)<br><br>**DECLARATION OF SHANA SCARLETT IN SUPPORT OF CONSUMER INDIRECT PURCHASER PLAINTIFFS' RESPONSE REGARDING COURT'S AUGUST 5, 2021, BRIEFING ORDER** |

I, Shana E. Scarlett, state under oath, as follows:

1.  I am a partner at Hagens Berman Sobol Shapiro LLP. I am admitted to this Court *pro hac vice*, and am counsel for the Consumer Indirect Purchaser Plaintiffs in the above-titled action. I have full knowledge of the matters stated herein and could and would testify thereto.

2.  Attached is a true and correct copy of the following exhibits:

   Exhibit A:   July 14, 2021, Hearing Transcript in Case No. 0:18-cv-1776; and

   Exhibit B:   December 2, 2020, Letter from Gustafson Gluek PLLC to all counsel.

3.  Since the Court requested briefing regarding consolidation, new DAPs requested copies of documents produced in response to third-party subpoenas to date, but Defendants take the position that the protective order prohibits producing third party materials in a different case without express permission; new DAPs say theirs is a separate case, so Defendants say the materials cannot be produced.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: August 19, 2021

                                                    */s/ Shana E. Scarlett*
                                                    SHANA E. SCARLETT

# EXHIBIT A

```
                  UNITED STATES DISTRICT COURT
                      DISTRICT OF MINNESOTA

 -----------------------------------------------------------------
                                     )
  In Re:  Pork Antitrust             )  File No. 18CV1776
  Litigation                         )  19CV1578, 19CV2723
                                     )       21CV2998
                                     )       (JRT/HB)
                                     )
                                     )
                                     )  Minneapolis, Minnesota
                                     )  July 14, 2021
                                     )  10:08 A.M.
                                     )
 -----------------------------------------------------------------

        BEFORE THE HONORABLE CHIEF JUDGE JOHN R. TUNHEIM
              UNITED STATES DISTRICT COURT JUDGE
             (STATUS CONFERENCE VIA VIDEO CONFERENCE)


  APPEARANCES
   For Direct Purchaser         Lockridge Grindal Nauen PLLP
   Plaintiffs:                  BRIAN D. CLARK, ESQ.
                                JOSEPH BRUCKNER, ESQ.
                                100 Washington Avenue South
                                Suite 2200
                                Minneapolis, MN 55401

                                Pearson Simon & Warshaw
                                BOBBY POUYA, ESQ.
                                800 LaSalle Avenue
                                Suite 2150
                                Minneapolis, MN 55402

                                Gustafson Gluek PLLC
                                DANIEL C. HEDLUND, ESQ.
                                120 South Sixth Street
                                Suite 2600
                                Minneapolis, MN 55402


   On behalf of the             Hagens Berman Sobol Shapiro
   Consumer Indirect            SHANA E.  SCARLETT, ESQ.
   Plaintiffs:                  715 Hearst Avenue
                                Suite 202
                                Berkeley, CA 94710
```

1  tell me.  Who is going to speak for the plaintiffs?  Let's
2  hear from you first on what needs to be done right away.
3          MR. KAPLAN:  From the MDL plaintiffs or the class
4  plaintiffs?
5          THE COURT:  Let's go MDL first, please.
6          MR. KAPLAN:  It's Robert Kaplan.  We've exchanged
7  briefing, and if we could have a couple of weeks, I think
8  we could probably agree on most of the dates and the
9  procedures and submit hopefully an agreed upon order to
10 Your Honor.  If not, we would note whatever differences
11 there are.
12         THE COURT:  Okay.  All right.  Anyone else in the
13 MDL plaintiffs wish to say anything?
14         MR. GANT:  This is Scott Gant.  I represent
15 Cisco, and I represent some other plaintiffs that will be
16 filing.  As Your Honor may have noted, there are over 80
17 opt-outs from the class action.  There was an opt-out
18 notice recently filed, so I'm filing some additional cases.
19 I know others are coming.
20         And we've proposed a schedule to the defendants
21 to attempt to accommodate the expected incoming cases over
22 the next weeks and months.  So as Mr. Kaplan said, we would
23 appreciate a couple of weeks to confer with the defendants.
24 One of the issues about which we have disagreed is whether
25 the MDL is going to be separate and coordinated, separate

1   formally but coordinated significantly with the existing
2   action, which in our view is reflected in our papers.
3              The defendants seem to have a view that these
4   matters should be collapsed, which I don't think was what
5   the JPML did in its orders, but once we have that matter
6   settled, I agree with Mr. Kaplan.  It's just a matter of
7   weeks and hopefully less for us to submit to you a proposed
8   schedule for the MDL, which will be significantly
9   coordinated.
10             And you will note, Your Honor, we proposed the
11  same fact discovery cutoff for the MDL as exists in the
12  current matter.
13             THE COURT:  Okay.  Do you have any idea,
14  Mr. Gant, about the number of cases coming, or is that
15  impossible to know?
16             MR. GANT:  I will give you my best faith
17  estimate, and you may know, Your Honor, the *Broiler Chicken*
18  matter in Chicago is ongoing.  It's similar in some
19  respects.  Many of the same counsel who appear for both
20  plaintiffs and defendants are in this case and that case.
21             Many of the same entities that have opted out
22  have filed their own cases in Illinois, which are over 150.
23  So my best guess, Your Honor, is that we are going to end
24  with several dozen, but I can't be more precise than that.
25             I think because in *Chicken* the opt-outs came over

1  their structure data in January, with our class
2  certification motions due in February.
3  That simply leaves us not enough time to use that
4  data to perform the pass-through regressions necessary for
5  a class cert motion.  In addition, they also ask that,
6  sorry, by their structuring of the MDL with the non MDL
7  portion being the class plaintiffs, we'll also be forced to
8  issue nonparty subpoenas to participate in any deposition
9  of the DAP representatives.
10  In other MDLs, the DAPs have declined to allow
11  the indirect purchasers to ask questions that relate to
12  pass-through and have argued that we have to issue nonparty
13  subpoenas for every deposition despite the fact that all of
14  us are participating in most of the depositions, and this
15  has created another substantial hurdle for the indirect
16  purchaser classes.
17  So for that reason one of the things that we're
18  asking today is that all of these cases are consolidated
19  under the one MDL caption, and I would just point out that
20  the consumer indirect purchaser action was the one first
21  filed.  We were the ones that filed in June 2018, and we
22  are the lowest numbered case.
23  So for us to be excluded from participating in
24  these late coming DAP actions is somewhat difficult for us
25  to understand why the DAPs believe this is a reasonable

1  proposal, and I would just like to directly address as
2  well, as my colleague Mr. Clark did, their request that the
3  DAPs be able to lead half the depositions.
4         The direct action plaintiffs and the opt-outs
5  have much smaller cases that they attempt to prove.  They
6  have very little interest in proving a conspiracy that
7  impacts the entire market.  They usually don't have a lot
8  of interest in demonstrating common impact.
9         Many of their requests in other large MDLs relate
10 to their individual salesperson that negotiated with the
11 defendant and on the other side the individual defendant
12 employee that negotiated with them.  This is in direct
13 contrast to what the class is trying to prove, which is a
14 market mechanism and a broader impact at class
15 certification.
16        To allow a DAP to take the lead on half the
17 depositions would gravely prejudice the plaintiff classes
18 from being able to demonstrate what they need to for class
19 certification.  In addition, the DAPs are hostile and in
20 conflict with the indirect purchasers when it relates to
21 pass-through.
22        So allowing these entities to step in and take
23 the lead on half of the depositions where they're directly
24 in conflict to what the indirect purchaser classes are
25 trying to show in terms of pass-through through the

1    In the *Chicken* case, the direct action plaintiffs
2    now represent the majority of the commerce compared with
3    the direct class, and I expect that likely will be the case
4    here, too, as often is the case where there are a large of
5    number of opt-outs. So our clients have exercised their
6    due process rights to file their own cases.
7    Rule 23 and due process contemplate that direct
8    action plaintiffs can file their cases at the time that
9    they believe is appropriate, and that's what we did here.
10   There is no game playing or effort to any -- I think
11   Ms. Scarlett used the word "pretense." There is no
12   pretense, no game playing.
13   We exercised the rights that we have. We don't
14   want to be subordinated to a second class status role. Our
15   clients have significant interests. We're among the
16   largest purchasers, and we are and were fully prepared to
17   litigate this out.
18   As you know, Your Honor, we asked to have this
19   case proceed in a different forum, not because we don't
20   want to be under your stewardship, and we're happy to be in
21   front of you, Your Honor, but in part for the reasons that
22   you're seeing today, which is that the classes want to
23   relegate us to a subordinate status.
24   We want an equal status. We want to be partners
25   with the classes in prosecuting the cases. Our interests

1   are substantially aligned.  Ms. Scarlett's suggestion that
2   we're somehow adverse to the indirect classes I don't think
3   is accurate, but if she were right, then as a matter of
4   logic her class is also adverse to the interests of the
5   classes represented by Mr. Clark, Mr. Pouya and
6   Mr. Bruckner, because the class representatives are also
7   direct purchasers.
8              So in terms of the structure of the case, we're
9   in the same position as they are vis-à-vis Ms. Scarlett.
10  We have been able to work out in the *Chicken* case many of
11  the issues that Ms. Scarlett referenced, like whether
12  examinations can be conducted by the indirect classes but
13  witnesses from DAPs.
14             We ended up entering into a stipulation there.
15  We're happy to try and do that here.  We're happy to try
16  and come up with solutions, as we did in the *Chicken* case,
17  through stipulations for document productions.  Whether
18  this is an MDL or not doesn't change the fact that the
19  relationship between Ms. Scarlett's clients and the direct
20  action plaintiffs were not parties to the same case.
21             Whether you consolidate or coordinate or whatever
22  you do, we are third parties vis-a-vis the cases brought by
23  the indirect classes against defendants, and the proper
24  mechanism for obtaining discovery we believe is subpoenas,
25  but we're happy to discuss that.

1   file in multiple dockets, but I do think it's important to
2   continue to recognize that the MDL is separate, and there
3   may be -- I think the wisest course is to have separate
4   schedules because there may be things that affect the MDL
5   that don't affect the other cases and vice versa.
6            So I think having separate schedules, even if
7   they're entered under the same ECF number, makes some
8   sense, but I'm sure Your Honor will have even better ideas
9   than I do about the precise mechanics.  The view of the
10  DAPs, and I speak for everyone who has filed on this point,
11  is that we should have significant amount of coordination
12  but not complete consolidation, Your Honor.
13           THE COURT:  Okay.  Anyone else from the
14  plaintiffs' side before I turn to defendants?
15           Okay.  All right.  Who is speaking first for
16  defendants?
17           MR. ROBISON:  Good morning, Your Honor.  This is
18  Brian Robison.  I'm with Gibson, Dunn & Crutcher, and we
19  represent Smithfield Foods, and I will be representing the
20  collective group of defendants' position here today.
21           The defendants' calling card for how we integrate
22  these new plaintiffs is efficiency.  We want to be
23  efficient in how we're managing the existing cases and how
24  we integrate the new DAPs.  A corollary to that is, we want
25  to eliminate duplication.  We don't want to have to keep

```
 1              MR. GANT:  Will do.  Thank you, Your Honor.
 2              THE COURT:  And we'll work at making sure we have
 3   an order relative to a single filing for everything.  All
 4   right?
 5              MR. KAPLAN:  Thank you, Your Honor.
 6              THE COURT:  Okay.  Thank you, everyone.
 7                      (Court was adjourned.)
 8                         *      *      *
 9              I, Kristine Mousseau, certify that the foregoing
10   is a correct transcript from the record of proceedings in
11   the above-entitled matter.
12
13
14
15        Certified by:  s/  Kristine Mousseau, CRR-RPR
                             Kristine Mousseau, CRR-RPR
16
17
18
19
20
21
22
23
24
25
```

# EXHIBIT B



**MINNESOTA OFFICE**
CANADIAN PACIFIC PLAZA
120 S. 6TH ST., STE 2600
MINNEAPOLIS, MN 55402

**CALIFORNIA OFFICE**
600 B STREET
17TH FLOOR
SAN DIEGO, CA 92101

**JOSHUA J. RISSMAN**
jrissman@gustafsongluek.com
TEL (612) 333-8844 • FAX (612) 339-6622
MINNESOTA OFFICE

December 2, 2020

<u>Via Electronic Mail</u>

**TO ALL COUNSEL ON ATTACHED SERVICE LIST**

Re:   *In re Broiler Chicken Antitrust Litigation,* Case No. 1:16-cv-08637-TMD

Dear Counsel:

Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs (CIIPPs) and End-User Consumer Plaintiffs (EUCPs) (collectively "IPPs") in the above-captioned action are in receipt of Defendants' September 29, 2020 Notice of 30(b)(6) Deposition of Sysco Corporation (the "Notice"), which on its face expressly states "This Document Relates To: All Actions." The Notice states that the deposition will proceed pursuant to the operative Order and Stipulation Concerning Remote Deposition Protocol, <u>ECF No. 3729</u> (the "Deposition Protocol"), starting tomorrow, December 3, 2020, at 9:00 a.m. Central Time. IPPs write today to memorialize certain meet and confer discussions regarding the deposition and IPPs objection to Sysco's seeming unwillingness to allow any IPP to examination of the witness, should the need arise, regarding information and topics relevant to IPPs' claims.

Prior to the temporary suspension and resetting of deposition discovery earlier this year due to the coronavirus pandemic, the parties successfully completed dozens of depositions of witnesses presented either individually or as Rule 30(b)(6) corporate designees by the various Direct Action Plaintiffs. Defendants directed notice as required under Rule 30(b)(1) to "every other party." Counsel for IPPs attended and in some instances, conducted short concluding examinations of DAP witnesses, where appropriate.

That practice continued correctly, for the entire case until March 10, 2020, at the 30(b)(1) deposition of U.S. Foods employee Robert Ficklin. Notably, U.S. Foods and Sysco are represented by the same Direct Action Plaintiff counsel, Mr. Scott Gant. IPPs sought to conduct a short follow-up examination on testimony relevant to the IPP's case.

Page 2
December 2, 2020

Counsel for U.S. Foods (and Sysco) intervened, however, and unilaterally ended the deposition.

IPPs therefore write to put Sysco, and Defendants, on notice of their intention to examine Sysco's Rule 30(b)(6) designee to the extent the witness testifies or is asked questions regarding matters germane to Class Plaintiffs' claims, including in particular topics relating to sales to IPPs. Counsel for IPPs have reached out both to Sysco seeking an understanding that if necessary the deposition will continue up to 30 minutes beyond the conclusion of Defendants' examination. IPPs have also reached out to Defendants to request that up to 30 minutes of the standard seven-hour time limit be reserved for use by Class Plaintiffs in the event such testimony is given. So far Sysco has not agreed to allow any IPP testimony, and Defendants have not agreed to cede any of their 7 hours to IPPs, but have taken no position on whether questioning beyond the 7 hours is appropriate.

The current position by Sysco and Defendants is contrary to law. All parties present at a deposition are entitled to cross-examine the deponent, just as they would at trial. Fed. R. Civ. P. 30(c)(1) ("The examination *and* cross-examination of a deponent proceed *as they would at trial. . . .*"); *and see Smith v. Logansport Community School Corp.,* 139 F.R.D. 637, 641-42 (N.D. Ind. 1991) ("the party noticing the deposition will commence the interrogation with direct examination. Afterward, each other attending party may cross-examine."). Indeed, non-noticing parties may cross-examine the witness even about matters not within the scope of the noticing party's examination. *Id.* Rule 30 further provides for sanctions if any party "impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). To the extent Defendants seek to examine Sysco (or any other DAP, for that matter) on issues relevant to the IPPs' claims, while at the same time refusing to permit the IPPs' a reasonable opportunity to cross-examine the witness on those issues, IPPs will seek exclusion of any such testimony in their respective cases.

Moreover, this is a complex, high-stakes, multiparty, coordinated action encompassing the claims of many individual Direct Action Plaintiffs and three groups of Class Plaintiffs asserted against more than 20 Defendant groups regarding activities that occurred across a multiyear period, proceeding in parallel to a criminal proceeding by the Department of Justice that has already resulted in 10 indictments. All parties are bound by various protocols, applicable civility guidelines, and the general admonition contained within the most recent revision to Rule 26(b)(1) that proportionality and considerations of "burden and expense" should guide the parties in reaching reasonable agreements regarding the scope and means of discovery. Judge Durkin, who presides over this matter, also maintains a standing order on Discovery advising *inter alia* that "The Court believes that parties can and should work out most discovery disputes."

IPPs therefore advise Sysco and the Defendants that should such questioning be warranted by the scope of Defendants' examination, counsel for Class Plaintiffs intend to

Page 3
December 2, 2020

conduct a limited examination of up to 30 minutes on those topics. The cooperation of Sysco and Defendants is expected, and if it is refused, IPPs reserve all rights, including the ability to strike the use of any testimony where IPPs were not permitted to cross-examine the witness, including but not limited to the use of the testimony at class certification, summary judgment and trial.

                                                    Sincerely,

                                                    GUSTAFSON GLUEK PLLC

                                                    Joshua J. Rissman