1          UNITED STATES DISTRICT COURT

2            DISTRICT OF MINNESOTA

3    ------------------------------------------------------------

4                                  )
                                    )  File No. 18-cv-1776
5    In Re:  Pork Antitrust         )      (JRT/HB)
                                    )
6    Litigation                     )
                                    )
7    ------------------------------ )  ----------------------
                                    )  File No. 19-cv-2723
8    Commonwealth of Puerto Rico,   )      (JRT/HB)
                                    )
9                  Plaintiff,       )
                                    )
10   v.                             )
                                    )
11   Agri Stats, Inc., et al,       )
                                    )
12                 Defendants.      )
                                    )
13   ------------------------------ )  ----------------------
                                    )  File No. 19-cv-1578
14   Winn-Dixie Stores, Inc. and    )      (JRT/HB)
     Bi-Lo Holdings, LLC,           )
15                 Plaintiffs,      )
     v.                             )  **St. Paul, Minnesota**
16   Agri States, Inc., et al,      )  **June 4, 2021**
                   Defendants.      )  **1:00 p.m.**
17                                  )
     ------------------------------------------------------------

18

19            BEFORE THE HONORABLE HILDY BOWBEER
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
            **(VIDEO CONFERENCE OF SCHEDULING CONFERENCE)**

20

21

22

23

24

25

```
 1    APPEARANCES
        For Direct Purchaser      LOCKRIDGE, GRINDAL, NAUEN, PLLP
 2      Plaintiffs:               BRIAN D. CLARK, ESQ.
                                  W. JOSEPH BRUCKNER, ESQ.
 3                                JOSEPH BOURNE, ESQ.
                                  ARIELLE WAGNER, ESQ.
 4                                100 Washington Avenue South
                                  Suite 2200
 5                                Minneapolis, Minnesota 55401

 6                                PEARSON, SIMON & WARSHAW
                                  BOBBY POUYA, ESQ.
 7                                CLIFFORD PEARSON, ESQ.
                                  800 LaSalle Avenue
 8                                Suite 2150
                                  Minneapolis, Minnesota 55402
 9
        For Consumer Indirect     GUSTAFSON GLUEK, PLLC
10      Purchaser Plaintiffs:     MICHELLE LOOBY, ESQ.
                                  120 South Sixth Street
11                                Suite 2600
                                  Minneapolis, Minnesota 55402
12
                                  HAGENS, BERMAN, SOBOL, SHAPIRO
13                                SHANA E. SCARLETT, ESQ.
                                  715 Hearst Avenue
14                                Suite 202
                                  Berkeley, California 94710
15
        For Commercial and        CUNEO, GILBERT & LADUCA, LLP
16      Institutional Indirect    A. BLAINE FINLEY, ESQ.
        Purchaser Plaintiffs:     4725 Wisconsin Ave. NW
17                                Suite 2200
                                  Washington, D.C. 20016
18
                                  BARRETT LAW GROUP, P.A.
19                                DAVID McMULLAN, JR., ESQ.
                                  404 Court Square North
20                                Lexington, Mississippi 39095

21                                TOSTRUD LAW GROUP, P.C.
                                  ANTHONY CARTER, ESQ.
22                                1925 Century Park E,  #2100
                                  Los Angeles, California 90067
23
        For the Commonwealth of   AHERN AND ASSOCIATES, P.C.
24      Puerto Rico:              PATRICK AHERN, ESQ.
                                  590 North Sheridan Rd.
25                                Lake Forest, Illinois 60045
```

```
 1
           Direct Action              HAUSFIELD, LLP
 2         Plaintiffs Winn-Dixie      KYLE BATES, ESQ.
           Stores, Inc. and Bi-Lo     600 Montgomery St., #3200
 3         Holdings, LLC:             San Francisco, California 94111

 4         For Defendant Triumph      HUSCH BLACKWELL
           Foods:                     CHRISTOPHER SMITH, ESQ.
 5                                    13330 California Street
                                      Suite 200
 6                                    Omaha, Nebraska 68154

 7                                    HOGAN LOVELLS U.S., LLP
                                      WILLIAM MONTS, III, ESQ.
 8                                    LIAM PHIBBS, ESQ.
                                      555 Thirteenth St. NW
 9                                    Washington, D.C. 20004

10         For Defendant JBS USA:     SPENCER FANE, LLP
                                      DONALD G. HEEMAN, ESQ.
11                                    100 South Fifth Street
                                      Suite 1900
12                                    Minneapolis, Minnesota 55402

13                                    QUINN, EMANUEL, URQUHART &
                                      SULLIVAN
14                                    SAMI H. RASHID, ESQ.
                                      51 Madison Avenue
15                                    22nd Floor
                                      New York, New York 10010
16
           For Defendant             LARKIN, HOFFMAN, DALY & LINDGREN
17         Smithfield Foods:         JOHN A. COTTER, ESQ.
                                      8300 Norman Center Dr.
18                                    Suite 1000
                                      Minneapolis, Minnesota 55437
19
                                      GIBSON, DUNN & CRUTCHER
20                                    BRIAN EDWARD ROBISON, ESQ.
                                      2100 McKinney Avenue,
21                                    Suite 1100
                                      Dallas, Texas 75201
22
           For Defendant Tyson       AXINN, VELTROP & HARKRIDER, LLP
23         Foods:                     TIFFANY RIDER ROHRBAUGH, ESQ.
                                      JAROD TAYLOR, ESQ.
24                                    950 F Street NW,
                                      7th Floor
25                                    Washington, D.C. 20004
```

```
 1                                    DYKEMA GOSSSETT, PLLC
                                      DAVID GRAHAM, ESQ.
 2                                    90 S. 7th St., #4000
                                      Minneapolis, Minnesota 55402
 3        For Defendant Clemens
          Food Group:                 KIRKLAND & ELLIS, LLP
 4                                    VANESSA BARSANTI, ESQ.
                                      DANIEL LAYTIN, ESQ.
 5                                    300 North LaSalle
                                      Chicago, Illinois 60654
 6
                                      GREENE ESPEL, PLLP
 7                                    DAVIDA McGHEE, ESQ.
                                      222 S. 9th St., Suite 2200
 8                                    Minneapolis, Minnesota 55402

 9        For Defendant Hormel
          Foods:                      FAEGRE, DRINKER, BIDDLE & REATH,
10                                    LLP
                                      CRAIG S. COLEMAN, ESQ.
11                                    90 South 7th Street
                                      Suite 2200
12                                    Minneapolis, Minnesota 55402

13        For Defendants Seaboard
          Foods, LLC, and            PETER J. SCHWINGLER, ESQ.
14        Seaboard Corporation:       50 South Sixth Street
                                      Suite 2600
15                                    Minneapolis, Minnesota 55402

16

17

18           Proceedings recorded by mechanical stenography;
          transcript produced by computer.
19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

**IN OPEN COURT**

1
2
3          THE COURT:  Good afternoon, everyone.  Thank you
4     for your patience.  We had a couple of technical
5     difficulties we wanted to make sure we ironed out first
6     before we brought you all into the main session.
7          This is the United States District Court for the
8     District of Minnesota.  We are gathered by Zoom today for a
9     case management conference in the matter of In re Pork
10     Antitrust Litigation.  This is Matter No. 18-cv-1776.
11          We have a court reporter on with us this
12     afternoon, and we have a recording running through the Zoom
13     platform as well.  You all have done this drill numerous
14     times, so I'm not going to repeat my usual admonitions about
15     the various things that will help our court reporter get a
16     good transcript for us this afternoon.
17          What I will do, though, is take the usual approach
18     to calling the roll because that does make it easier for our
19     court reporter.  I will call out the names of the people
20     that at least are on my list of people I understood were
21     going to be attending.
22          There are a number of telephone numbers that I
23     can't assign names to, so after I refer to each group of
24     parties, I will ask whether there is anybody else who would
25     like their appearance noted on behalf of that party.  If

1    there are people on the line just to listen and they don't

2    feel the need to have their appearance noted, that's fine,

3    too.  I don't need the name of everybody on the line.  I

4    just want the names of people who want it on the record that

5    they were in attendance at this case management conference.

6              So let's start with counsel for the Direct

7    Purchaser Plaintiffs.  Bobby Pouya.

8              MR. POUYA:  Hello, Your Honor.  Good afternoon.

9              THE COURT:  Good afternoon.

10             Joseph Bruckner.

11             MR. BRUCKNER:  I'm here, Your Honor.  Good

12   afternoon.

13             THE COURT:  Brian Clark.

14             MR. CLARK:  Good afternoon.

15             THE COURT:  Joseph Bourne.

16             MR. BOURNE:  Good afternoon, Your Honor.

17             THE COURT:  Arielle Wagner.

18             MS. WAGNER:  Good afternoon.

19             THE COURT:  Is there anybody else who wants their

20   appearance noted for the Direct Purchaser Plaintiffs?

21             MR. PEARSON:  Good afternoon, Your Honor.

22   Clifford Pearson for the DPPs.

23             THE COURT:  Good afternoon.

24             Anyone else that --

25             MR. NOLAN:  Good afternoon, Your Honor.  I'm sorry

 1      -- Thomas Nolan on behalf of the Direct Purchasers.

 2                  THE COURT:  All right.  Hold on a moment.

 3                  Anyone else for the Direct Purchaser Plaintiffs?

 4      No.  All right.

 5                  Turning to the Consumer Indirect Purchaser

 6      Plaintiffs.  Shana Scarlett.

 7                  MS. SCARLETT:  Good afternoon, Your Honor.

 8                  THE COURT:  And Michelle Looby.

 9                  MS. LOOBY:  Good afternoon, Your Honor.

10                  THE COURT:  Anybody else on for the Consumer

11      Indirect Purchaser Plaintiffs?  No.  All right.

12                  Moving to the Commercial and Institutional

13      Indirect Purchaser Plaintiffs.  Blaine Finley.

14                  MR. FINLEY:  Good afternoon, Your Honor.

15                  THE COURT:  David McMullan.

16                  MR. McMULLAN:  Good afternoon, Your Honor.

17                  THE COURT:  Anyone else for the Commercial and

18      Institutional Indirect Purchaser Plaintiffs?

19                  MR. CARTER:  Good afternoon, Your Honor.  Anthony

20      Carter.

21                  THE COURT:  Got it.

22                  Moving on to the Commonwealth of Puerto Rico.

23      Kyle Bates.

24                  MR. BATES:  Good afternoon, Your Honor.

25                  THE COURT:  And, Mr. Bates, is anyone else going

1     to join you this afternoon on behalf of Puerto Rico?

2               MR. BATES:  No, Your Honor.

3               THE COURT:  And on behalf of the Winn-Dixie stores

4     and Bi-Lo Holdings.  Patrick Ahern.

5               MR. AHERN:  Good afternoon, Your Honor.

6               THE COURT:  Is anyone else on for those two

7     plaintiffs?

8               MR. AHERN:  No, Your Honor.

9               THE COURT:  Okay.  I think that covers the

10    plaintiffs.  Let's turn now to the defendants.  Clemens Food

11    Group.

12              MS. WILLIAMS:  Good afternoon, Your Honor.  This

13    is Davida Williams.

14              THE COURT:  And it looks like Vanessa Barsanti is

15    on as well.  Is that right?

16              MS. BARSANTI:  Good afternoon, Your Honor.

17              THE COURT:  And Dan Laytin.

18              MR. LAYTIN:  Good afternoon, Your Honor.

19              THE COURT:  Anyone else for the Clemens Food

20    Group?

21              MS. WILLIAMS:  No, Your Honor.

22              THE COURT:  Turning to Triumph Foods.  Christopher

23    Smith.

24              MR. SMITH:  Good afternoon, Your Honor.

25              THE COURT:  Anyone else for Triumph Foods?

1          MR. SMITH:  No, Your Honor.

2          THE COURT:  For Agri Stats, Inc.  William Monts.

3          MR. MONTS:  Good afternoon, Your Honor.

4          THE COURT:  Liam Phibbs.

5          MR. PHIBBS:  Good afternoon, Your Honor.

6          THE COURT:  Anyone else for Agri Stats?

7          MR. MONTS:  No, Your Honor.

8          THE COURT:  For JBS USA.  Sami Rashid.

9          MR. RASHID:  Good afternoon, Your Honor.

10         THE COURT:  Don Heeman.

11         MR. HEEMAN:  Good afternoon, Your Honor.

12         THE COURT:  Is there anyone else on for JBS USA?

13         MR. RASHID:  Just the two of us, Your Honor.

14         THE COURT:  Seaboard Foods.  Peter Schwingler.

15         MR. SCHWINGLER:  Good afternoon, Your Honor.

16         THE COURT:  Anyone else for Seaboard Foods?

17         MR. SCHWINGLER:  My colleague, Zach Hemingway, is

18    listening in as well.

19         THE COURT:  All right.  For Hormel Foods.  Craig

20    Coleman.

21         MR. COLEMAN:  Here, Your Honor.

22         THE COURT:  Anyone else for Hormel?

23         MR. COLEMAN:  No, Your Honor.

24         THE COURT:  Smithfield Foods.  Brian Robison.

25         MR. ROBISON:  Yes.  Good afternoon, Your Honor.

1          THE COURT:  All right.  So, Mr. Robison, are you

2     on both by computer and by phone then?

3          MR. ROBISON:  No, just by iPad.  I'm not sure how

4     it's appearing.

5          THE COURT:  Okay.  There was a telephone icon that

6     lit up at the same time you spoke, and I wasn't sure if

7     maybe that was you as well.

8          MR. ROBISON:  That may be John Cotter who is also,

9     I think, on for Smithfield.

10          MR. COTTER:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.

12          All right.  Anyone else for Smithfield?

13          MR. ROBISON:  No, Your Honor.

14          THE COURT:  And moving on to Tyson Foods or the

15     Tyson defendants.  Tiffany Rider.

16          MS. RIDER ROHRBAUGH:  Yes, Your Honor.  Good

17     afternoon.

18          THE COURT:  Good afternoon.

19          And Jared Taylor.

20          MR. TAYLOR:  Good afternoon, Your Honor.

21          THE COURT:  Anyone else for the Tyson defendants?

22          MR. GRAHAM:  David Graham, Your Honor.

23          THE COURT:  All right.  Is there anyone who wants

24     their appearance noted that has not yet identified

25     themselves on the record?

1       I just admitted somebody else from the waiting

2   room, but I'm assuming that anybody who hasn't named

3   themselves is fine just participating as a listener.

4       All right.  Then we have several items on the

5   agenda.  One thing I did want to clarify, and to the extent

6   it wasn't clear I'll take responsibility for that, but even

7   though certainly a significant purpose of these periodic

8   conferences is to address disputes -- whether they are

9   disputes that are ripe for resolution or just disputes that

10  are bubbling up and the parties want to air them with the

11  Court -- I don't intend for these conferences to be only

12  about that.  They are useful to me as well just to provide a

13  periodic update about where you're at and where you had

14  hoped to be by now and to identify things that, even though

15  they couldn't even remotely be called disputes, are things

16  that you want to get on my radar.

17      So I recognize there was some difference of

18  viewpoint between plaintiffs' counsel and defendants'

19  counsel about whether it made any sense to have this meeting

20  at this point.  And if there was confusion about what the

21  mission for these periodic gatherings is, I'll take

22  responsibility for that.

23      That being said, I am absolutely willing to cancel

24  a case management conference if there is no purpose to be

25  served.  But it doesn't necessarily answer that question

1    that there is no dispute that is yet ripe for presentation

2    to me for resolution.

3            So hopefully that will clarify some things going

4    forward both about why we have these gatherings, as well as

5    what you would consider including in update letters, which

6    just don't have to be about disputes.  They can even be

7    update letters about how much amazing work you have done to

8    get discovery out the door in the time since we last met.

9    And I, actually, kind of enjoy the good newsletters as well.

10           So turning to the agenda items, there are three

11   that the plaintiffs had suggested.  One had to do with the

12   proposed validation protocol that had been teed up, along

13   with some other things relating to the ESI protocol back in

14   November.

15           Another was about structured data, particularly

16   the kind of where the parties were at in negotiating about

17   structured data and the timing of potential productions.

18           And then generally the plaintiffs have proposed

19   also just providing an update about where you're at on meet

20   and confers with regard to other issues.

21           With respect to the proposed validation protocol,

22   obviously, I recognize that that was a piece that was a part

23   of a package that was presented in November, and it's a

24   piece that's left unresolved.

25           To the extent the plaintiffs' short question is do

1    I have questions about the proposed protocol itself, the

2    answer is no, I don't have questions about the proposed

3    protocol.  I understand the protocol and if I hadn't, I'd

4    have asked those questions at the time it was presented.

5            But my inclination following that discussion we

6    had in November was at the time, and continues to be,

7    against inserting myself preemptively into how ESI processes

8    will be validated.

9            And particularly I noted at the time the

10   defendants' point that it was early going and potentially

11   premature to have the discussion before you'd even really

12   fleshed out what methodologies would be used -- whether

13   you're going with TAR, whether you're going to search terms,

14   whether you're going with some combination of processes.

15           I know that some courts have gone ahead and

16   imposed validation protocols from the get-go.  I tend to be

17   of the camp, at least as a baseline, of the courts that have

18   chosen not to do that at least until there was more reason

19   to believe that there was a problem that needed to be fixed

20   or that you were on the road to a problem that if something

21   didn't happen it was going to need to be fixed.

22           And I took at their word the defendants'

23   representations at the time that with or without a

24   court-ordered validation protocol their watchword was going

25   to be transparency with respect to how they would validate

1    their processes.

2         But that being said, rather than enter an order at

3    that time just saying nope, not gonna, for better or for

4    worse, I decided to just let it ride and let your

5    conversations about process continue to take shape and see

6    whether in the intervening time things had developed that

7    suggested a reconsideration -- a preemptive strike when it

8    comes to validation or whether the defendants'

9    protestations, if you will, against the need for court

10   action on that subject so far had proved well-founded.

11        So if that left you in limbo and particularly if

12   it inhibited your progress in these areas or stilted your

13   discussions, then that's on me.  Speaking of transparency, I

14   should have perhaps been more transparent about how I was

15   going to view that and how I was going to let that ride.

16   But that's where I'm at with it at the moment.

17        So plaintiffs having raised it as an agenda item I

18   think is a good opportunity for you to bring me up to date

19   on any developments that you think, from either side, ought

20   to weigh in favor either of revisiting -- yep, it makes good

21   sense to do something proactive with regard to validation --

22   or to continue to stay out of that until it appears that

23   there's actually something that needs to be fixed that went

24   wrong and needs to be addressed.

25        So that's by way of introduction.  Let me ask who

1    on behalf of plaintiffs wanted to speak to that first agenda

2    item?

3              MS. WAGNER:  I think that's me, Arielle Wagner for

4    DPP.

5              So we've had some conversation with defendants

6    about TAR, but, frankly, we haven't gotten to the validation

7    part of the discussion.  So I think we can continue to have

8    those discussions with defendants based on your guidance

9    today.

10             THE COURT:  Let me ask if defendants want to put a

11   different spin on that?

12             MR. TAYLOR:  Your Honor, I think this is one of

13   those instances you mentioned earlier where we can happily

14   report that the parties are doing amazing work to get

15   productions out the door.  We've made substantial completion

16   of production of our priority custodians.  And so far there

17   are really no disputes in particular with the respect to the

18   validation protocols.  So we don't have any specific updates

19   or requests for the Court at this time.

20             THE COURT:  Okay.  Well, unless the parties would

21   ask for something different, my intention would be to

22   continue to let that ride.  I've got all the information I

23   need.  I understand what was requested.

24             I'm inclined to view this as an area that if the

25   parties can get where they need to go on their own, I'd

1    rather not impose a top-down solution.  But if there's a

2    problem, I won't hesitate.  I won't say I'd be happy to get

3    involved, but I won't hesitate to get involved if I believe

4    that that process isn't working as it ought to.  So that's

5    where we're at on validation protocol.

6           Is there anything further that ought to be

7    discussed at this point or should we move on to structured

8    data?

9           MR. TAYLOR:  Nothing from defendants, Your Honor,

10   on that issue.

11          MS. WAGNER:  Nothing for plaintiffs.

12          THE COURT:  All right.  So moving on to structured

13   data, then.  It looked like Mr. Clark was going to speak on

14   structured data on behalf of the plaintiffs.  Is that right?

15          MR. CLARK:  Yes, Your Honor.

16          THE COURT:  All right.  Please go ahead.

17          MR. CLARK:  Brian Clark for DPP but speaking for

18   all plaintiffs.

19          This category of structured data falls into the

20   bubbling-up category you mentioned earlier.  So I'll kind of

21   get to what we think might be a way forward or a suggestion.

22   But we just kind of want to update you because this is one

23   of those things that does have some long-term implications,

24   and we think a discussion here is appropriate and useful.

25          I'll start off, first off, plaintiffs absolutely

1    recognize it isn't totally clear when structured data was

2    going to be produced.  It happens, and that's where we're

3    at.

4              We recognize a November 4th, 2020 stipulation says

5    September 1, 2021 was a substantial completion deadline for

6    documents and structured data.  But between that stipulation

7    and the January 26th, 2021 order from the Court, there were

8    lots of discussions about deadlines for production.

9              There was also the December 18th, 2020 status

10   hearing where a lot of statements and a lot of assurances

11   were made about rolling productions of documents to make the

12   schedule work.

13             And, finally, in that November 2020 stipulation it

14   didn't address class certification, and class certification

15   is really important after this gap between when we get

16   structured data and when we file for reasons I'll kind of

17   explain later.

18             I think just, finally, the January 26, 2021 order

19   did not address whether September 1 remained a deadline for

20   structured data productions or just documents.

21             We have spent many months since November talking

22   about structured data and what types of categories and

23   fields would be produced, and there is agreement on those

24   fields to be produced at this point.  And all that's left,

25   from our perspective as plaintiffs, is to produce that data.

1    And I think just kind of the bottom line is to us it seems

2    like there's a lot of time between now and September 1st to

3    start those rolling productions.

4         And we thought that the November 4th order and

5    other orders required a meet and confer deadline for

6    structured data that did admittedly get pushed out a number

7    of times, we thought that meant we would be getting these

8    rolling productions of structured data long prior to

9    September 1st.  That hasn't happened.  Many conversations

10   about data samples from structured data have happened, but

11   we haven't gotten the actual productions yet.  And it's

12   apparent to us now there's just not a meeting of the minds

13   if we're going to get some of that structured data before

14   September 1st or not.

15        From the class plaintiffs' perspective, a

16   five-month gap between September 1 and February 7th -- if we

17   were to get all that data on September 1 -- is not enough

18   time for our experts to clean that data; send 10, 20-page

19   letters back is how this goes, each defendant, with our

20   expert's questions; get the questions answered by the

21   defendants and some follow-ups and get to a point where the

22   regressions can be run.  Five months isn't enough.

23        However, our point is in no way -- we are not

24   trying to jam defendants up here.  That's not our goal, to

25   say you must get it to us next week or else.  But we do

1    think we need to work something out here because of that

2    concern that we have.

3            So we think the best way possible right now is to

4    get rolling productions of that data.  In particular,

5    production of sales-related information and specifically

6    invoice-level data for the sale of pork we think is

7    particularly important because, in our experience, the

8    cleaning of that data takes a lot of time to standardize

9    customer names and do many other tasks related to it.

10           So I think one of our goals is -- and we said in

11   our letter and I think defendants -- there's been some

12   discussion about rolling production and getting that

13   earlier.  But the sooner we can get that and have some

14   assurance on a date certain to get that, the better from our

15   perspective in front loading that sales data.

16           And our proposal would be to set a deadline of

17   June 14th to report back to the Court on whether we have

18   this agreement on rolling productions of structured data;

19   and if we don't, a regular report back to the Court on that

20   or if there is an issue or schedule adjustment we need to

21   make, come back to you.

22           But I think the two truisms or the two essential

23   points for plaintiffs here is, number one, a five-month gap

24   between getting the data and class cert is not going to

25   work.  But, number two, if we can get some rolling

1    productions in the very near future, we are really committed

2    to making February work because we are plaintiffs.  It is

3    our job to advance the schedule as quickly as we can.  And

4    if we can get this data soon, we can stick to that.

5                THE COURT:  All right.  Understood.

6                And who was going to speak for defendants on the

7    structured data?

8                MR. ROBISON:  Brian Robison for Smithfield, Your

9    Honor.

10               THE COURT:  So your name is Brian, and you are

11   going to be speaking to the structured data.

12               MR. ROBISON:  Thank you, Your Honor.

13               I think one of the things you've heard already

14   today is that discovery in this case, objectively speaking,

15   is going really well.  There's a reason the parties were

16   able to cancel the last three status conferences --

17   February, March, and April.  We didn't have any disputes.

18   We didn't even have brewing disputes.  We didn't have

19   anything to bring to you.  And I think that's remarkable

20   considering a case of this size with this many lawyers and

21   this many parties.  I think that speaks to how the parties

22   have been able to work together.

23               I don't really think there's a dispute today

24   either.  I don't think there's any dispute as to what the

25   deadline is for substantial completion of data productions.

1   It's pretty clear to us.  The parties agreed on this date.

2   Way back in November the parties agreed on a date.  ECF-530

3   was the stipulation the parties entered that had various

4   discovery milestones and the date for each one.  And the

5   date for substantial completion of documents and data was

6   September 1, 2021.

7        The next week the Court accepted all of those

8   dates and then entered a Scheduling Order under Rule 16 and

9   Local Rule 16.3 that adopted September 1 as the date.  And

10  ever since then, the defendants have been prioritizing their

11  discovery tasks with their clients, their vendors, their

12  contract attorneys, however they're doing their review.

13  We've been prioritizing various steps along the way based on

14  the schedule that was entered in November.

15       And there were additional dates for class

16  certification and *Daubert* and that sort of thing entered

17  later, but that subsequent Scheduling Order did not alter

18  the date for substantial completion of data.

19       So that's been the parties' understanding ever

20  since last November.  That's been our understanding, and

21  we've been relying on that date ever since.

22       And there have been rolling productions.  Just

23  like I said we could do, we have done rolling production of

24  documents.  That's what I said at the status conference in

25  December right before Christmas, that we would be able to

1    roll out documents, and that's what we've done.

2           Rolling productions started in March.  They

3    continued in April with substantial completion of our

4    priority custodians.  The DPPs also substantially completed

5    production for their priority custodians.  And then

6    defendants have been rolling out documents around April,

7    May, and this week.

8           So, in our view, we're doing exactly what we're

9    supposed to be doing.  We're meeting the deadlines.  We're

10   doing rolling productions of documents.

11          Data is a different world.  Data is an entirely

12   different animal.  Each one of those defendants is organized

13   differently with different systems, back-up tapes, legacy

14   systems, different subsidiaries.  So a rolling production of

15   data is a new concept the plaintiffs introduced recently.

16          We're hearing a different message today than we

17   heard when they first reached out about this.  When they

18   first reached out about this, they wanted full production of

19   all data on June 15th, which was a startling turn of events

20   for us.

21          Again, we're operating on a very different

22   schedule, prioritizing what we're doing based on the

23   schedule we have in place.  And the idea of accelerating our

24   data productions by 75 days simply wasn't going to work.

25   We're still in the process of pulling data.  We're still

1   trying to get extracts.  Once we get the data extracted, we

2   have to check it, make sure our clients really pulled what

3   we needed to pull.

4         Some of these clients don't really host their own

5   data.  It's hosted by third parties.  So we're working with

6   third parties to extract the data that we really need.

7         So when they first came to us and started to

8   explain that they think they're going to be in a squeeze --

9   that they're going to be squeezed by the September 1 date of

10  the substantial completion of data and the February 7 date

11  they chose for their class briefs and class expert reports

12  when they first came to us, their solution for the squeeze

13  was to put a huge burden on us, ask us to produce data 75

14  days early, which would be 11 days from now, and we said

15  we're not going to be able to do that.

16        Several defendants did say they would be able to

17  do rolling productions.  Some are not probably going to be

18  able to just because the way their systems, again, are

19  oriented.  So we're not sure there is a one-size-fits-all

20  answer here.  Some said they could.  Some said they

21  couldn't.  Some were still considering it.

22        So, again, the defendants were willing to talk

23  about things, but we couldn't commit to June 15th for

24  producing all the data or even substantial completion of

25  data because, again, we've been operating under the idea

1    that we had until September 1.

2         So to us we don't have a discovery dispute.  There

3    is no confusion over the dates in the Court's orders.  To us

4    what it looks like is the plaintiffs want to change the

5    order.  They want to have a new date for data to solve their

6    squeeze that they think they're going to have between

7    September 1 and February 7.

8         To us we're not sure they're going to be in a

9    squeeze because, again, there will be some rolling

10   productions of data.  But to us if there is a squeeze, if

11   they're not going to have enough time between September 1

12   and February 7, to us the solution is not put massive

13   burdens on the other side of the case.  Don't put burdens on

14   the side that was not involved in choosing February 7th as

15   the class date.  Let's move the class date back 30, 60, 75

16   days, whatever they think their experts are going to need to

17   do the analysis they need.

18        So that's our position.  We're not trying to be

19   difficult.  We're trying to get documents and data out

20   quickly.  We're mindful of the Court's schedule.

21        We are going to meet, as far as we know, barring

22   any bizarre technical problems -- every defendant is

23   committed to meeting the September 1 date for substantial

24   completion of documents and data.  We're just saying if

25   there is a problem in the schedule the plaintiffs requested,

1     then the solution should not be to burden us.  The solution

2     should be to bump back the class cert briefings and

3     deadlines.

4          THE COURT:  Well, let's think about a few of these

5     things.  One is, you know, of course, I don't know what the

6     initial ask from the plaintiffs was, but certainly what I'm

7     hearing today is that it's going to -- that it's always been

8     understood that one way or another discovery productions

9     would be rolling so that nobody ever contemplated that

10    nothing would be produced until September 1st, but you were

11    all cool as long as it all got produced by September 1st.

12    So you've all been working on a rolling basis.

13         And it's been clear certainly -- I think it's been

14    implicit in all of the discussions we've had that there

15    would be -- that nobody was going to be sort of back-end

16    loading productions, and that the parties were going to talk

17    with each other about prioritizing to the extent that they

18    could.  In other words, if one party needed certain

19    information of one type sooner than something else to let

20    the other party know that and see whether that could be

21    taken into account in the rolling productions.

22         At the same time, it sounds -- there was no

23    interim date set for beginning the production or for being

24    so far down the line on a particular kind of information.

25    And with 20/20 hindsight maybe that's something that should

1    have been surfaced.

2         But what we have at this point is the plaintiffs

3    now recognizing that it's going to take a certain amount of

4    time to deal with the data they get and if they don't get it

5    until the last date, there's going to be a challenge in

6    making the class certification motion deadline.

7         Yes, one answer is to push that deadline back, but

8    I'd rather not do that, and Judge Tunheim would rather not

9    do that.  So I don't want that to be the easy answer if

10   there's another way to sort this out.

11        What I think I'm hearing from the plaintiffs at

12   this point is we've identified this concern.  Let's talk

13   about it.  Let's find out what it's going to take.  Is

14   rolling production of structured data an option?  If it's an

15   option, could we prioritize this over that?  Maybe it's

16   going to involve -- I don't know, maybe it involves having

17   to shift some resources, to reorder things that are

18   currently in the works.

19        I don't hear them asking any longer for, okay, we

20   want it ten days from now.  But I do hear an ask for a

21   conversation soon to explore what can be done and what could

22   be agreed to and what the cost of that in terms of having to

23   potentially reorder other things or the plaintiffs

24   potentially having to take something else later in order to

25   get this sooner.  It strikes me that all of that potentially

1     is a topic of conversation.

2              Do you have any objection, Mr. Robison, to -- and

3     I can poll the other defendants' counsel as well.  I realize

4     you are only in a position ultimately to talk to your one

5     set of clients, but do you have any objection to setting a

6     fairly short target date by which these conversations will

7     have happened and you'll have fully explored what can be

8     done to address the plaintiffs' ask and what the trade-offs

9     might be for doing it and what are the options that maybe

10    don't involve having to push back the deadline for the class

11    certification motion?

12              MR. ROBISON:  Your Honor, definitely for

13    Smithfield we're not opposed to getting into the

14    conversation you're talking about where there may be a lot

15    of moving parts.  And I don't think other defendants would

16    be opposed to having the conversation.

17              I don't know where the conversation will come out

18    just because there are different defendants with different

19    systems and different hurdles to producing even sales data.

20              My client, for example, has multiple different

21    databases with multiple different date ranges and systems,

22    so it's a complicated discussion no matter what.

23              There will be a lot of moving parts.  There may be

24    things that we have to shuffle and the plaintiffs would,

25    like you say, get later than they would otherwise.  But

1    having a conversation, no.  There's certainly no objection

2    to having a conversation.

3             THE COURT:  And it also strikes me but if there

4    are some defendants who can move up or begin a sooner rather

5    than later rolling production of structured data, that in

6    itself -- I mean, that even and of itself gets some

7    information in the plaintiffs' hands, rather than all

8    information from all defendants coming in really close to

9    that September 1 deadline.  So the answer may be a

10   combination of all of the above.

11            But the request I would have for you is that you

12   have that conversation and you look at the possibilities and

13   get me a letter that tells me where you're at and whether

14   you've been able to reach some agreements among some or all

15   of you about how to address this and whether in light of

16   those it looks like we can stick to the ultimate deadline

17   we're looking at, which is the class cert -- the deadline

18   for the motion for class certification or whether given

19   where we're at we may need to look at something different

20   there.

21            I don't want to make that easy.  In other words, I

22   don't want to make it the easy fix to push back the class

23   cert deadline.  But I realize that we're dealing with a lot

24   of different realities here.  And I've been in other cases

25   where structured data turned out to be -- it was a bear to

1    be wrestled with.  And I know that can take some time.

2              MR. ROBISON:  Yep.

3              THE COURT:  So Mr. Clark had proposed a June 14

4    date, which is ten days from now, but it's a week from

5    Monday.  Is that realistic?

6              MR. ROBISON:  Could we make it Friday, the 18th?

7              THE COURT:  If there's a better chance of having

8    to work some things out that will solve these issues, then

9    I'm fine with making it the 18th.

10             MR. ROBISON:  I'm out all of next week for

11   vacation.  So if we can make it a few days after the 14th,

12   that just gives me more time to be involved for our client.

13   I don't know what other people's schedules are, but Friday

14   the 18th would work for me.

15             THE COURT:  Any defense counsel who couldn't

16   commit to a conversational timeline that we could get a

17   letter to me by the 18th?  Nope.

18             All right.  All right.  So I will look for one or

19   more letters by the 18th.  I want them to be joint, but if

20   they are bilateral, that's okay, too.  In other words, it's

21   possible that the most efficient way to get me that

22   information is on a defendant-by-defendant basis and, if

23   so -- I still want it to be joint plaintiff-defendant, but I

24   won't impose on you the obligation of trying to come up with

25   one letter that speaks for all of the defendants if that's

 1    helpful.

 2            MR. ROBISON:  Sure.

 3            THE COURT:  All right.  Anything else on

 4    structured data?

 5            MR. ROBISON:  Not from the defendants.

 6            THE COURT:  All right.  Thank you.

 7            Otherwise, the last was sort of a catch-all update

 8    on meet and confers with regard to discovery issues

 9    generally.  Certainly my take-away from your respective

10    letters was that you're feeling pretty good about your

11    ability to work through disputes so far.

12            So any additional ornaments you want to hang on

13    that tree?

14            MS. WAGNER:  I'm Arielle Wagner.  Plaintiffs don't

15    have any other specific discovery issues we want to address

16    at this time.  As you said, everything is moving forward and

17    we're largely on track.

18            THE COURT:  Anything for the defendants?

19            MR. ROBISON:  I don't think so, Your Honor.

20            THE COURT:  All right.  Now, I forgot to look at

21    when our next -- anybody have handy the date of our next

22    conference?  I should've looked that up.  No?  Nobody has

23    it?  Do we not have it?  Do we not have another conference

24    scheduled?  If so, we probably -- we don't have another one

25    scheduled?

1          MR. ROBISON:  I don't think so.

2          THE COURT:  Then we ought to do that.  Let me ask

3     for suggestions about how far out we should be looking at a

4     next conference.

5          MR. CLARK:  Your Honor, Brian Clark for

6     plaintiffs.

7          I do think maybe towards the end of that week

8     after the 4th of July or even the beginning of that next

9     week might make some sense.

10          I do think some things will start to bubble up as

11     we get more productions and each of us identify potential

12     issues it might be useful to speak to you.  So I just throw

13     out the dates of July 8th or 9th or July 12th or 13th.

14          THE COURT:  All right.  Hold on just a moment and

15     let me look at that.  I'm, actually, going to be out of town

16     the 8th and 9th.

17          I could maybe do some -- I think I could do some

18     finagling to do a morning conference on July 15th by Zoom,

19     obviously.  Generally speaking, anybody that you just know

20     right out of the blocks there's no way that could work?

21          MR. ROBISON:  For Smithfield July 15th is fine.

22          MR. CLARK:  Same for plaintiffs, Your Honor.

23          THE COURT:  All right.  Then we'll plan on July

24     15th.  I'll have to move some things around, so I don't know

25     right now whether we'll do 9:00 or 9:30 or 10:00.  It won't

1    be -- we won't start any later than 10:00 Central Time.  I

2    may start earlier depending on what I can move around on my

3    schedule.  But that's when we'll schedule the next one.

4            I'll get an order out that sets that date and time

5    formally, and I'll also include deadlines for submissions in

6    advance.

7            And maybe one of the things you all could talk

8    about as you're planning the agenda for that conference

9    would be whether you want to propose at that point that we

10   get regularly-scheduled conferences on the calendar, just go

11   ahead and prophylactically schedule them or continue to do

12   them on an ad hoc basis.  I'm open to either one, but if it

13   helps your planning to get them on the calendar on a more

14   regular basis, I'm happy to do that.  So why don't you plan

15   to make that one of your conversation starters when you

16   start thinking about the agenda for the next conference.

17           All right.  Anything else that ought to be on my

18   radar at this point on behalf of the plaintiffs?

19           MR. CLARK:  No, Your Honor.

20           THE COURT:  On behalf of the defendants?

21           MR. ROBISON:  No, Your Honor.

22           THE COURT:  All right.  Thank you very much, and I

23   will see you in the middle of July.  Have a good weekend,

24   everybody.

25           (Court adjourned at 1:53 p.m.)

1                          *       *       *

2              I, Debra Beauvais, certify that the foregoing is a

3     correct transcript from the record of proceedings in the

4     above-entitled matter.

5                    Certified by:  *s/Debra Beauvais*
                                    Debra Beauvais, RPR-CRR
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25