```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA

-------------------------------------------------------------
                                    )
  In Re:  Pork Antitrust             )  File No. 18CV1776
  Litigation                         )  21MD2998, 21CV1373,
                                    )  21CV1374, 21CV1454
                                    )
                                    )       (JRT/HB)
                                    )
                                    )
                                    )  Minneapolis, Minnesota
                                    )  November 3, 2021
                                    )  10:13 A.M.
-------------------------------------------------------------

      BEFORE THE HONORABLE CHIEF JUDGE JOHN R. TUNHEIM

            UNITED STATES DISTRICT COURT JUDGE

   (MOTION FOR APPROVAL OF SETTLEMENT VIA VIDEO CONFERENCE)
```

```
 1
        APPEARANCES
 2
         For Direct Purchaser       Lockridge Grindal Nauen PLLP
 3       Plaintiffs:                BRIAN D. CLARK, ESQ.
                                    JOSEPH BRUCKNER, ESQ.
 4                                  JOSEPH C. BOURNE, ESQ.
                                    ARIELLE S. WAGNER, ESQ.
 5                                  100 Washington Avenue South
                                    Suite 2200
 6                                  Minneapolis, MN 55401

 7                                  Pearson Simon & Warshaw
                                    MICHAEL H. PEARSON, ESQ.
 8                                  800 LaSalle Avenue
                                    Suite 2150
 9                                  Minneapolis, MN 55402

10                                  Gustafson Gluek PLLC
                                    DANIEL C. HEDLUND, ESQ.
11                                  MICHELLE J. LOOBY, ESQ.
                                    120 South Sixth Street
12                                  Suite 2600
                                    Minneapolis, MN 55402
13

14       On behalf of the           Hagens Berman Sobol Shapiro
         Consumer Indirect          SHANA E.  SCARLETT, ESQ.
15       Plaintiffs:                715 Hearst Avenue
                                    Suite 202
16                                  Berkeley, CA 94710

17
         On behalf of the           Cuneo Gilbert & LaDuca, LLP
18       Commercial and             ALEC BLAINE FINLEY, ESQ.
         Institutional Indirect     4725 Wisconsin Avenue NW
19       Plaintiffs:                Suite 200
                                    Washington, DC 20016
20
                                    Barrett Law Group, P.A.
21                                  KATHERINE RILEY, ESQ.
                                    404 Court Square North Lexington
22                                  Lexington, MS 39095

23                                  Larson King, LLP
                                    SHAWN M. RAITER, ESQ.
24                                  30 East Seventh Street
                                    Suite 2800
25                                  St. Paul, MN 55101
```

```
 1                                 Bozeman Law Firm, P.A.
                                   MARCUS BOZEMAN, ESQ.
 2                                 400 West Capitol Avenue
                                   Suite 1700
 3                                 Little Rock, AR 72201

 4
                                   L&G Law Group
 5                                 RYAN MANION, ESQ.
                                   175 West Jackson Boulevard
 6                                 Suite 950
                                   Chicago, IL 60604
 7

 8      For Defendant JBS USA:     Spencer Fane LLP
                                   JESSICA NELSON, ESQ.
 9                                 100 South Fifth Street
                                   Suite 1900
10                                 Minneapolis, MN 55402

11                                 Quinn Emanuel Urquhart &
                                   Sullivan
12                                 SAMI RASHID, ESQ.
                                   51 Madison Avenue
13                                 22nd Floor
                                   New York, NY 10010
14
        For the Defendant          Gibson Dunn & Crutcher
15      Smithfield:                RICHARD G. PARKER, ESQ.
                                   1050 Connecticut Avenue NW
16                                 Washington, DC 20036

17      For Defendant Triumph:     Husch Blackwell LLP
                                   CHRISTOPHER A. SMITH, ESQ.
18                                 190 Carondelet Plaza
                                   Suite 600
19                                 St. Louis, MO 63105

20

21

22

23

24

25
```

1        **10:13 A.M.**

2

3        **(In open court via video conference.)**

4                THE COURT:  All right.  Good morning, everyone.

5        This is Civil Case Number 18-1776 and part of the multi

6        district litigation case 21-MD-2998.  We have a number of

7        other member cases that are relevant.  I won't state them.

8        We will put them in the record.

9                Let's have counsel note appearances.  First,

10       let's go with you first, Mr. Raiter.

11               MR. RAITER:  Good morning, Your Honor.  Shawn

12       Raiter from Larson King for the commercial and

13       institutional indirect purchaser plaintiffs.

14               THE COURT:  All right.  Let's have other

15       plaintiffs' lawyers note their appearances.  First for the

16       direct purchaser plaintiffs?

17               MR. CLARK:  Brian Clark, Lockridge Grindal Nauen,

18       for the direct purchaser plaintiffs.

19               THE COURT:  Maybe you can introduce the others

20       who are on, too, if you have that noted.

21               MR. CLARK:  Of course.  I can do so.  We also

22       have Joe Bruckner and Arielle Wagner and Joe Bourne from

23       Lockridge Grindal Nauen and I believe Cliff Pearson from

24       Pearson Simon.

25               THE COURT:  All right.  And then the consumer

1   indirect purchaser plaintiffs?  Ms. Scarlet, maybe you can
2   introduce who is there.
3              MS. SCARLETT:  Shana Scarlett from Hagens Berman
4   Sobol & Shapiro, Your Honor.
5              I'm the only one appearing on behalf of
6   consumers, but I can't see the Zoom screen.
7              THE COURT:  Okay.  Anyone else for consumer and
8   indirect purchaser plaintiffs?
9              MR. HEDLUND:  Good morning, Judge.  Dan Hedlund
10  from Gustafson Gluek, and also Michelle Looby from our
11  firm.
12             THE COURT:  Good morning.  Let's see.
13             How about Action Meat Distributors, Inc.?
14  Mr. Manion, are you here?
15             MR. MANION:  I am, Your Honor, although I'm more
16  here for observational purposes.
17             THE COURT:  Sure.  That's right.  I just want to
18  note appearances.  I'm not expecting many of you to speak.
19             Let's see.  Anyone else on the plaintiffs' side
20  that I'm missing here?
21             MR. FINLEY:  Good morning, Your Honor.  Blaine
22  Finley of Cuneo Gilbert & LaDuca also on behalf of the
23  commercial and institutional indirect purchaser plaintiffs,
24  and we also have Katherine Barrett Riley of Barrett Law
25  Group on the line and Marcus Bozeman of Bozeman Law Firm on

1   the line, I believe.
2           THE COURT: Okay. Thank you, Mr. Finley.
3           Anyone else?
4           Okay. Now for defendants. Mr. Rashid, why don't
5   you begin?
6           MR. RASHID: Good morning, Your Honor. Sami
7   Rashid from Quinn Emanuel on behalf of JBS USA, and with me
8   is Jessica Nelson from the Spencer Fane Law Firm.
9           MS. NELSON: Good morning, Your Honor.
10          THE COURT: Good morning.
11          Anyone else for defendants that wish to have
12  their appearances noted? All right.
13          Okay. Let's begin.
14          Mr. Raiter?
15          MR. RAITER: Thank you, Your Honor. We're here
16  today on a motion for final approval of a settlement
17  between the commercial and institutional indirect purchaser
18  plaintiffs and the JBS defendants.
19          You also have before you a motion for an award of
20  attorneys' fees, reimbursement of costs already incurred,
21  the establishment of a future litigation fund from this
22  settlement and then also an award of service awards to the
23  named representative plaintiffs.
24          As Your Honor knows via the preliminary approval
25  order, this is a settlement of 12.75 million dollars paid

1     by the JBS defendants to the CIIPPs.  It is a no reversion
2     settlement.  It is all cash.  There is substantial
3     cooperation also accounted for within the settlement terms,
4     and because it's an ice breaker settlement, it's
5     particularly valuable to the plaintiffs in this case.
6              We carried out the notice plan that Your Honor
7     approved via the motion that we submitted, along with the
8     preliminary approval papers, and as you saw from the
9     declaration of Cam Azari, there were about 90,000 e-mails
10    sent directly to businesses and individuals associated with
11    food service or restaurant type entities.
12             There were wires sent to about 9,500 news outlets
13    and websites.  There were banner ads.  There was
14    substantial notice provided.  Mr. Azari has averred that
15    the reach was at least 70 percent to potential class
16    members, and the defendants via counsel for the JBS
17    defendants provided the CAFA notice to state attorney
18    generals, and there has been no response from any of those
19    as well.
20             The settlement was very well received.  We did
21    not have a single opt-out.  We did not have a single
22    objection, and we did not have a single request for the
23    ability to appear at this hearing.  So it was
24    overwhelmingly and resoundingly well accepted we believe
25    among the class members.

1    Your Honor is well familiar with the standard you
2    need to look at whether the settlement is fair, reasonable
3    and adequate.  Essentially you're looking at whether the
4    class and its interests would be better served by settling
5    the litigation now or continuing the litigation.  We have
6    set out all of those elements that are set out in either
7    the *Wireless Telephone* case or other Eighth Circuit
8    opinions in our brief.
9            I will quickly run through them.  I know Your
10   Honor has done this many times and is well familiar with
11   the standard, but the amount of relief being provided,
12   12.75 million dollars, we believe as class counsel for the
13   CIIPPs is a good settlement in light of JBS's value of
14   commerce and in light of the amount of commerce that flows
15   through the food service chain and the inherent risks of
16   litigation.
17           Again, lump sum, no aversion, cooperation is
18   important in this case as we consider the litigation with
19   the remaining defendants.  The complexity and expense of
20   further litigation, you are well familiar with how complex
21   anti trust class actions and multi district litigations
22   are, and that's a factor that weighs in favor of approving
23   the settlement.
24           There was no opposition to the settlement.  It
25   was arm's length negotiations in front of a very

1   experienced mediator, Professor Eric Green.  We had several
2   sessions with him.  So there is I believe no evidence of
3   collusion, and we as lead counsel or co-lead for the CIIPPs
4   believe this is an excellent settlement that should be
5   granted final approval.
6           And as Your Honor knows from the *Petrovic* case or
7   *Welsch versus Gardenbring,* you can afford great weight to
8   counsels' opinions about that.  We have set out the Rule 23
9   requirements for a settlement class.  Again, Your Honor is
10  very familiar with those elements.
11          We believe those have been met here.  Numerosity,
12  common questions of fact or law, typicality, adequacy all
13  have been addressed.  All are similar to the direct
14  purchaser settlement with JBS that the Court has already
15  granted final approval on as well.
16          If Your Honor has any questions thus far, I would
17  be happy to respond to those.
18          THE COURT:  Just a couple of questions.  One, I
19  noted in the materials a confidential cooperation
20  agreement.  I would like to review that in camera if that's
21  okay.
22          MR. RAITER:  Absolutely.  We will send that to
23  you in camera.
24          THE COURT:  And then I will return that.  It
25  wasn't clear in the declarations that notices had been

1  given to the state attorneys general. It was in the
2  memorandum that notice had been given, but I didn't see it
3  in the declarations.
4              MR. RAITER: Yeah. So, Your Honor, my
5  declaration also had a paragraph that tailed off and had a
6  typo. So I will submit that in its intended form, which
7  would include a declaration from me that counsel for JBS
8  has provided the CAFA notices, and Mr. Rashid obviously is
9  on the line here and can speak to that as well.
10             THE COURT: Is notice required to the Attorney
11 General of the United States?
12             MR. RAITER: It goes to the -- yes, it does, if
13 I'm not mistaken, and it also goes to Puerto Rico and some
14 of the other territories.
15             THE COURT: All right. Those were the only two
16 questions that I had.
17             Mr. Rashid, can I hear from you?
18             MR. RASHID: Nothing further to add, Your Honor,
19 really, except I can confirm that the CAFA notice did in
20 fact go out to all of the AGs.
21             THE COURT: Okay. Do you know whether the
22 Justice Department needs to be advised?
23             MR. RASHID: I can't actually, without looking at
24 the law, tell you whether or not they need to be advised,
25 but I can tell you that the CAFA notice did go to them.

1          THE COURT:  It did go to them?
2          MR. RASHID:  Yes.
3          THE COURT:  Okay.  All right.  Between you and
4   Mr. Raiter if someone can make sure there is a declaration
5   in the record, then I would be satisfied with that.
6          MR. RAITER:  Will do, Your Honor.
7          The last point on the terms of the settlement
8   that I think are relevant here is that you do not yet have
9   before you a plan of allocation or a proposal as to how we
10  would allocate this money among the class members, and we
11  would plan to do that via a motion to you in the future.
12         THE COURT:  Okay.  That's fine.
13         MR. RAITER:  Okay.  And unless Your Honor wants
14  to talk further about the merits of the settlement, the
15  Rule 23 approval process, whether it's fair, reasonable and
16  adequate, I would move to attorneys' fees and costs,
17  service awards.
18         THE COURT:  Okay.  Unless Mr. Rashid has
19  something he would like to say.
20         MR. RASHID:  Nothing for JBS, Your Honor.  Thank
21  you.
22         THE COURT:  Okay.  Why don't you move on, then,
23  Mr. Raiter, and at the end, I will give anyone else a
24  chance to speak if they wish to, but go ahead, Mr. Raiter.
25         MR. RAITER:  Thank you, Your Honor.  We have also

1    made a separate motion, which we provided notice to the
2    class of via the settlement website, which is what we told
3    the class members we would do in the notice, that they
4    would have advance notice of the fees, costs, expenses,
5    that we were seeking.
6             And again, that was posted to the settlement
7    website, and there have been no objections, no comments, no
8    requests to be heard regarding the attorneys' fees and
9    costs, service award motion.
10            So we're asking for reimbursement of costs
11   already incurred roughly in the amount of $338,851.91.  I
12   guess that's not roughly.  That's precise.  Those are costs
13   that we have already incurred on behalf of the settlement
14   class members.
15            They relate to gathering data, electronic
16   databases, expert expense, et cetera, and we detailed that
17   in the submission.  We have also asked for the
18   establishment of a future litigation fund for expenses.
19   That is a fund that we would use only for expenses related
20   to the pursuit of the remaining defendants.
21            Other courts have granted such requests.  We have
22   cited the *Packaged Ice* case.  The Manual for Complex
23   Litigation has approved such funds in the past, as has
24   Judge Battani in the very large and sprawling *Auto Parts*
25   litigation in Detroit.

1                   We have asked for 8 percent of the gross
2          settlement funds to be set aside.  That totals $1,020,000.
3          That too was noticed in the class notices so that any class
4          members who had any objections or concerns about that, they
5          were apprised that that was our request that would be made
6          to you, and we have not received any response to that.
7                   Going forward, Your Honor, these cases are
8          extremely expensive.  I think you're well aware of that.
9          As we move toward class certification, we have experts who
10         need to do data analysis, data gathering, damages modeling.
11         We have documents being produced that are posted and via
12         shared databases, et cetera, and those are expenses that we
13         expect and will incur going forward.
14                  So we would ask that the Court allow that money
15         to be set aside from this settlement for use in the future
16         for these class members and their benefits and hopefully
17         recovering more money from other defendants in the future.
18                  We have also asked for an award of attorneys'
19         fees.  Of the 12.75 million dollar settlement, we have
20         asked Your Honor to award one-third of the amount after the
21         deduction of notice and administration, which is about
22         $98,000, and after that future litigation cost set-aside
23         fund.
24                  So if we take out the 98,000 and the million,
25         twenty, we are left, when you take one-third of that, the

|   |   |
|---|---|
| 1 | fee being requested is 3,877,376.47.  If you did that |
| 2 | calculation on the gross settlement, that would be 30.4 |
| 3 | percent of the gross amount, and as Your Honor knows having |
| 4 | done this many times before, there are a number of factors |
| 5 | that you look at to decide whether the fee being requested |
| 6 | is reasonable. |
| 7 | You look at the benefit conferred, the risk to |
| 8 | which counsel is exposed, the difficulty and novelty of the |
| 9 | legal issues, the skill of the lawyers, the time and labor |
| 10 | involved, reaction of the class and a comparison of this |
| 11 | percent versus other percentages awarded in similar cases |
| 12 | or other cases in the district. |
| 13 | And we have cited in the papers, for example, |
| 14 | *Yankton* talks about the common awards being between 25 |
| 15 | percent and 36 percent in this district, and either the one |
| 16 | third or the 30.4 percent that we have requested would fall |
| 17 | squarely within that range.  The benefit, as we have |
| 18 | already talked about, all cash, no aversion. |
| 19 | These are inherently risky cases.  Because there |
| 20 | has not been public Department of Justice involvement in |
| 21 | this litigation we believe exposes counsel to a greater |
| 22 | risk of not being successful.  Certainly sitting in the |
| 23 | indirect purchaser slot, we have other defenses that the |
| 24 | defendants assert against us making our case more difficult |
| 25 | and more challenging, again increasing the risk. |

1               The time and labor involved, Your Honor, as we
2       laid out in the papers, as of the time we submitted that
3       motion had 5,889 attorney hours, 15,023 hours for
4       paralegals and law clerks.  When we apply those hours to
5       the customary rates charged by lawyers working on behalf of
6       the CIIPPs, the Lodestar is $4,692,051.
7               The Lodestar multiplier on that number, given the
8       fee being requested of 3.877 is a negative multiplier.  So
9       the multiplier being sought here for this settlement at
10      this time is .82 negative.  As Your Honor knows from other
11      cases and from cases in the district, there are multipliers
12      that are often awarded, you know, two to five times on a
13      positive basis.  So this negative Lodestar multiplier we
14      believe is reasonable and should be allowed.
15              We have also asked for service awards from this
16      settlement.  At this point we don't know if we will have
17      other settlements.  We sure hope we do, but because the
18      class representatives who have already provided substantial
19      cooperation, who have already provided data information
20      that is being disclosed or has been disclosed to the
21      defendants, who have volunteered to be deposed at some
22      point in this case, to appear at trial if necessary, we
23      have asked for $7,500 for each of them.
24              I do have another caveat there, Your Honor.  We
25      just this morning filed a dismissal that we have already

1   previewed with the defendants, and one of the class
2   representatives who we have listed in the proposed order
3   that we have already submitted to you, and that is Betty's
4   Eat Shop, is withdrawing from the case as a representative
5   plaintiff.
6               So I would propose to send to Your Honor an
7   amended order withdrawing her or that business so that she
8   would not receive a class representative service award, and
9   she understands that that is the case.
10              Your Honor, this is, again, lengthy litigation,
11  and in particular for businesses, it can be a substantial
12  amount of work.  If you have an individual who is serving
13  as a class representative, they only have so much
14  information.  They don't have to produce a ton of documents
15  or spend a lot of time.
16              Representing institutions and businesses like we
17  are, it is a substantial investment that they make in these
18  cases, and we believe that the $7,500 award is justified
19  under these circumstances, and with that, Your Honor,
20  that's all I have to say unless you have questions.
21              THE COURT:  I don't.
22              Mr. Rashid, would you like to comment?
23              MR. RASHID:  JBS is taking no position on this
24  portion of plaintiffs' motion.
25              THE COURT:  All right.  Thank you.

1          Anyone else wish to speak today that is here?
2     All right.  I'm not hearing anybody.  Sometimes it takes a
3     moment to get off of mute.
4          All right.  Mr. Raiter, any final comment?
5          MR. RAITER:  No, Your Honor, other than we will
6     send and file with the Court my amended declaration that
7     has the typographical error fixed, which also addresses the
8     CAFA notice, and then I will send an amended order for the
9     service award issue that we mentioned today.
10         THE COURT:  All right.  So I will await the
11    remaining material being filed and the in camera review of
12    the confidential cooperation agreement, but I am prepared
13    to approve the motion for final approval, grant the motion
14    for final approval.
15         And I don't see any issues relative to the fees
16    and costs issues in the case as well, but I would like to
17    get the remaining materials and the updated first before
18    finally issuing the order, which I would handle quickly.
19         All right.  Anything else we need to address
20    today?
21         MR. RAITER:  No, Your Honor.
22         THE COURT:  Mr. Rashid, anything else?
23         MR. RASHID:  No.  Thank you, Your Honor.
24         THE COURT:  All right.  Thank you, everyone.  I
25    appreciate everyone participating today by video

```
 1    conference, and we will be in recess.
 2              Thank you.
 3              MR. RAITER:  Thank you, Your Honor.
 4              MR. RASHID:  Thank you.
 5                    (Court was adjourned.)
 6                   *         *         *
 7              I, Kristine Mousseau, certify that the foregoing
 8    is a correct transcript from the record of proceedings in
 9    the above-entitled matter.
10
11
12
13        Certified by:  s/  Kristine Mousseau, CRR-RPR
                              Kristine Mousseau, CRR-RPR
14
15
16
17
18
19
20
21
22
23
24
25
```