

<div style="text-align:right">December 1, 2021</div>

**FILED VIA ECF**

The Honorable Hildy Bowbeer
Magistrate Judge, District of Minnesota
United States District Court
316 N. Robert Street
St. Paul, MN 55101

**RE:** *In re Pork Antitrust Litigation*, 0:18-cv-01776-JRT-HB
Informal Dispute Resolution (IDR) Request
Hearing Date Proposed By Both Parties: December 14, 2021

Dear Judge Bowbeer:

The MDL Direct Action Plaintiffs (the "MDL DAPs") consolidated to this action from Case No. 0:21-md-02998 (the "*Pork MDL*"), hereby submit that they are at an impasse in search term negotiations and that this dispute is suitable for IDR in lieu of formal motion practice. Defendants have agreed to resolve this dispute through the IDR process.

1. **The Issue to Be Resolved**

MDL DAPs have proposed search terms relevant to allegations of their complaints, as they are entitled under Fed. R. Civ. P. 26. The search terms can be divided into two groups. The first group targets the name and domain name of each individual MDL DAP. (*See* Ex. B, Search Term Nos. 95-120) (the "DAP Name Terms"), which Defendants agreed to run (or some variant of them), and thus, are not in dispute. The second group, making up the majority of the terms, are universally relevant to the MDL DAP complaints or Defendants' anticipated defenses (the "DAP Global Terms"). (*See id.*, Search Term Nos. 1-94). Defendants have refused to use all but four[1] of the DAP Global Terms and have not provided individualized objections to each term. The issue presented to this Court is whether Defendants should be ordered to use the remainder of the DAP Global Terms.

2. **The MDL DAPs' Position**

Defendants refuse to use the DAP Global Terms, despite their indisputable relevance, for two reasons. First, Defendants contend that MDL DAPs must demonstrate "good cause" to justify search terms common to issues in both the MDL DAP cases and the *Pre-Existing Non-MDL Pork Cases* because Defendants have already negotiated search terms with the plaintiffs in those other cases. (*See* Ex. A at 5, 18, 29). The MDL DAPs have no such special burden. The DAPs have their own cases and claims, and should not be stuck with terms resulting from negotiations they did not and could not have participated in. Second, Defendants argue using the Global DAP terms would be burdensome. (*See id.* at 5). But

---

[1] Those four MDL DAP Global Search Terms related to Defendants' anticipated defenses and are not in dispute. (*See* Ex. B, Search Term Nos. 91-94). Defendants agreed to run those four terms only after the MDL DAPs pointed out that Defendants had asked the MDL DAPs to use them. (Ex. A at 5-6, 16).

BOIES SCHILLER FLEXNER LLP

1401 New York Avenue NW, Washington, DC 20005 | (t) 202 237 2727 | (f) 202 237 6131 | www.bsfllp.com



Defendants have not substantiated that objection as the law requires, despite the MDL DAPs' repeated requests. Accordingly, the Court should reject Defendants' objections and order Defendants to run the terms.

### *a. Background*

In December 2020, Defendants and the plaintiffs in the *Preexisting Non-MDL Pork Cases* began negotiating search terms. Over half a year later, on June 22, 2021, the *Pork MDL* cases were transferred to this district pursuant to the order of the Judicial Panel on Multidistrict Litigation. (*Pork MDL*, Dkt. Nos. 1, 2).

On August 2, 2021, the parties to the *Pork MDL* submitted the Proposed Case Management Order ("Proposed CMO") to the Court. The Proposed CMO included an October 8, 2021 deadline for the parties to resolve negotiations of search terms. The parties agreed to abide by the terms of the Proposed CMO and have since extended the October 8, 2021 deadline because they have not been able to reach agreement in search terms. The parties have been adhering to their Proposed CMO until the Court's November 14, 2021 Order on consolidation and MDL DAPs are willing to continue to adhere to that agreed upon schedule.

On August 3, 2021, the Court entered on the *Pork MDL* docket its Order Regarding Production of Electronically Stored Information. (*Pork MDL*, Dkt. No. 21). A similar ESI order was previously entered in the *Preexisting Non-MDL Pork Cases*.

Consistent with the Proposed CMO, MDL DAPs proposed a list of search terms to Defendants on September 1, 2021. (Ex. A at 30-31). Since then, MDL DAPs have sent Defendants two other variations of the list of search terms, each making adjustments to the original list in the interest of compromise. (*Id.* at 2-4, 23-24). On September 29, 2021, MDL DAPs sent Defendants a second list articulating the basis for each proposed term. (*Id.* at 23-24). And on November 12, 2021, MDL DAPs offered Defendants a prioritized list, removing nearly 30 terms. (*Id.* at 2-4).

Despite MDL DAPs' good faith efforts, in each round of negotiation, Defendants have flatly refused to run all but four of the DAP Global Terms. (*See id.* at 1-2, 4-6, 17-18, 20-22, 24-25. 28-30).

The email correspondence in these negotiations is extensive. Below are excerpts of the parties' statements most pertinent to this dispute:

On October 15, 2021, MDL DAPs maintained their right to negotiate their own search terms and receive a particularized basis for Defendants' rejection of the DAP Global Terms (*id.* at 6-17):

> The MDL DAPs do not believe they should be forced to accept search terms that resulted from negotiations in which they had no involvement, long before they even filed suit and long before the JPML created MDL 2998, particularly since Defendants have provided no specific relevance or burden objections to the terms proposed by the MDL DAPs.



> Defendants have made no effort to substantiate their assertion that "the burden for adding new search terms at this stage is high." We have invited Defendants multiple times to provide a factual basis for their claim of burden, which they must do. Moreover, Defendants have already agreed to run certain of the MDL DAPs' proposed terms (or some modification of them)—specifically those relating to the names of the MDL DAPs. Thus, Defendants have already agreed to running "new search terms at this stage" for the purpose of searching and reviewing additional documents. Whatever additional burden there might be from having to use the additional terms requested by the MDL DAPs, clearly relevant to this case, Defendants have not provided any factual basis for it. Even if Defendants could substantiate that burden, the MDL DAPs are willing to have the Defendants produce whatever documents might be hit by those terms, subject to any privilege screen or review the Defendants might want to apply before doing so and the robust clawback provisions of the Protective Order in this case. ECF No. 18 at 18-21.

On November 5, 2021, Defendants maintained their position rejecting the 90 search terms, justifying it as follows (*id.* at pg. 5):

> As Defendants have stated from the beginning, Defendants disagree that MDL DAPs should be free to renegotiate search terms as a matter of course absent good cause. . . .

> When Defendants said that "the burden for adding new search terms at this stage is high," we meant that the burden on MDL DAPs to justify new search terms after substantial completion of production, and when their allegations mirror those of the other plaintiffs, is high. Defendants have already produced millions of documents pursuant to negotiations with plaintiffs whose interests are aligned with MDL DAPs'; that burden must be considered when addressing MDL DAPs' additional requests. The burden of MDL DAPs' terms alone is also substantial. As just one example, MDL DAPs' proposed search terms would require Smithfield to review over one million additional documents.

On November 12, 2021, MDL DAPs reasserted their position on their rights to negotiate the terms and withdrew nearly 30 terms for the sake of compromise. (*id.* at 3). MDL DAPs also explained that (*id.*):

> The MDL DAPs cannot evaluate Defendants' claim of burden without information sufficient to assess the volume of documents hit by each proposed term (such as a search term hit report). But Defendants have not provided any such information to the MDL DAPs. In light of Defendants' failure to provide that information, Defendants' burden objection remains without basis.

> The MDL DAPs believe the remaining terms are likely to result in highly relevant documents without imposing any undue burden on Defendants,

3



particularly since the Defendants have already agreed to run at least some of them and will be reviewing and producing additional documents to the MDL DAPs.  Note that for many of these terms, one or more Defendants agreed to use them in the non-MDL cases, and we are merely asking that certain other Defendants run the same terms as their co-Defendants.

On November 14, 2021, the Court entered an order consolidating the *Pork MDL* and the *Preexisting Pork Non-MDL Cases*.  (Dkt. No. 985).  On November 19, 2021, Defendants asserted a final refusal to negotiate the 90 terms and agreed to submit this dispute to the IDR process.  (Ex. A at 1).

    **b.**  *Argument*

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Pursuant to the ESI Order (*Pork MDL*, Dkt. 21 at 11), MDL DAPs are engaged in an "Initial Search Term Negotiation" with Defendants regarding search terms relevant to MDL DAPs' complaints.  When plaintiffs demonstrate the relevance of each of their proposed search terms, the defendants must "adequately support [their] claimed burden in utilizing those search terms."  *Murphy v. Piper*, 2017 WL 6389690, at *4 (D. Minn. Dec. 14, 2017).

MDL DAPs have demonstrated the relevance of each of the DAP Global Terms by presenting to Defendants the basis of each in the September 29, 2021 and November 12, 2021 spreadsheets.  For the Court's reference, the final list of search terms and bases have been renumbered and attached as Exhibit B.  Search Term Numbers 1-90 on Exhibit B are those now before the Court.  The DAP Global Terms in dispute can be organized into the following categories listed in Exhibit C, each relevant to the allegations of the MDL DAP complaints.

Per this Court's ESI Order (*Pork MDL*, Dkt. 21 at 11), the parties must act in good faith in the Initial Search Term Negotiation regarding terms used to identify responsive ESI.  In response to MDL DAPs' good faith proposal, Defendants have not provided any specific objections to the DAP Global Terms, including as to relevance.

Instead, Defendants simply contend that the DAP Global Terms are "inappropriate" because they relate to allegations that the MDL DAPs share with the plaintiffs in the *Preexisting Non-MDL Pork Cases*, with whom the Defendants have already negotiated search terms.  But the MDL DAPs should not be limited to the search terms Defendants may have negotiated with the plaintiffs in the *Preexisting Non-MDL Pork Cases*, especially since MDL DAPs were not involved in those negotiations.  Some of the DAP Global Terms were never proposed by the plaintiffs in the *Preexisting Non-MDL Pork Cases*, while others were terms the plaintiffs in those cases proposed to Defendants but then agreed to drop.[2]  However,

---

[2]  A number of the DAP Global Terms appear to be search terms that some Defendants agreed to run in response to requests by plaintiffs' in the *Preexisting Non-MDL Pork Cases*, but that other Defendants did not for reasons that are unknown to the MDL DAPs.  Defendants have not explained this disparity, which underscores the unfairness of forcing the MDL DAPs to live with results of negotiations they could not have participated in.



the MDL DAPs, which include some of the largest pork buyers in the United States, are individual plaintiffs with their own cases and counsel of their choosing, and should not be forced to accept the decisions by counsel for the plaintiffs in the *Preexisting Non-MDL Pork Cases*.

Defendants have also failed to support their general claim that using the DAP Global Terms will be unduly burdensome. To maintain a burden objection, Defendants must provide some factual basis (such as a search term "hit report," or other information establishing the burden of using a particular term). *See e.g.*, *Murphy*, 2017 WL 6389690 at *4 (affirming Magistrate Judge's order requiring Defendant to use search terms "in light of the demonstrated relevance of each of Plaintiffs' proposed search terms and Defendant's failure to adequately support her claimed burden in utilizing those search terms"). As the court stated in *Axcan Scandipharm Inc. v. Ethex Corp.*:

> Until [Defendant] limits the search to custodians likely to have responsive emails, de-duplicates the results for identical documents, performs and reviews at least a reasonable sampling of documents (with and without certain search terms) to develop a realistic estimate of the numbers of documents likely to be responsive and non-privileged from each search, and then calculates the time and expense associated with a search for, review and production of these different searches, neither it nor the Court has any basis to conclude that inclusion of more search terms is too burdensome or that the burden is exceeds the benefit of the search.

2008 WL 11349882, at *17 (D. Minn. Dec. 31, 2008).

Defendants have provided nothing more than one unsupported contention as to one defendant that "MDL DAPs' proposed search terms would require Smithfield to review over one million additional documents." (Ex. A at 5). Moreover, Defendants have already agreed to run the MDL DAP Name Terms (or some variant of them). Thus, Defendants have already agreed to run "new search terms at this stage" for the purpose of searching and reviewing additional documents. (*Id.*). Whatever additional burden there might be from having to use the DAP Global Terms—terms that are clearly relevant to this case—Defendants have not provided any factual basis for it.[3]

### 3. Relief Sought

MDL DAPs request that the Court order Defendants to apply the DAP Global Terms.

---

[3] Even if Defendants could substantiate that burden, MDL DAPs told Defendants they are willing to have the Defendants produce the documents hit by the DAP Global Terms, subject to any privilege screen or review the Defendants might want to conduct and the robust clawback protections of the applicable Protective Order, (*Pork MDL*, Dkt. 18). (See Ex. A at 16-17). Defendants refused.

5



      Respectfully submitted,

      */s/ Michael S. Mitchell*

      Scott E. Gant
      Michael S. Mitchell
      Sarah L. Jones
      **BOIES SCHILLER FLEXNER LLP**
      1401 New York Ave., NW
      Washington, DC 20005
      Tel: 202-237-2727
      Fax: 202-237-6131
      sgant@bsfllp.com
      mmitchell@bsfllp.com
      sjones@bsfllp.com

      Colleen Harrison
      **BOIES SCHILLER FLEXNER LLP**
      333 Main Street
      Armonk, NY 10504
      Tel: 914-749-8204
      Fax: 914-749-8300
      charrison@bsfllp.com

      *Counsel for Plaintiffs Sysco Corporation and Amory Investments LLC*

      */s/ Robert N. Kaplan*
      Robert N. Kaplan
      Matthew P. McCahill
      Jason A. Uris
      **KAPLAN FOX & KILSHEIMER, LLP**
      850 Third Avenue, 14th Floor
      New York, New York 10022
      Telephone: (212) 687-1980
      Email: rkaplan@kaplanfox.com
      Email: mmccahill@kaplanfox.com
      Email: juris@kaplanfox.com



*/s/ Eric R. Lifvendahl*
Eric R. Lifvendahl
Ryan F. Manion
**L&G LAW GROUP, LLP**
175 W. Jackson Blvd., Suite 950
Chicago, Illinois 60604
Telephone: (312) 364-2500
Email: elifvendahl@lgcounsel.com
Email: rmanion@lgcounsel.com

*/s/ Richard L. Coffman*
Richard L. Coffman
**THE COFFMAN LAW FIRM**
3355 W. Alabama St., Suite 240
Houston, Texas 77098
Telephone: (713) 528-6700
Email: rcoffman@coffmanlawfirm.com

*/s/ Bernard D. Marcus*
Bernard D. Marcus
Moira Cain-Mannix
Brian C. Hill
Rachel A. Beckman
**MARCUS & SHAPIRA LLP**
One Oxford Center, 35th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 471-3490
Email: marcus@marcus-shapira.com
Email: cain-mannix@marcus-shapira.com
Email: hill@marcus-shapira.com
Email: beckman@marcus-shapira.com

*Counsel for MDL DAPs Action Meat Distributors, Inc., Topco Associates, LLC, Alex Lee, Inc./Merchants Distributors, LLC, Associated Food Stores, Inc., Brookshire Grocery Company, Colorado Boxed Beef Co., Certco, Inc., The Golub Corporation, Nicholas & Co., PFD Enterprises, Inc., SpartanNash Company, Springfield Grocer Company, The Distribution Group d/b/a Van Eerden Foodservice Co., Troyer Foods, Inc., URM Stores, Inc., and Giant Eagle, Inc.*

*/s/ David C. Eddy*



David C. Eddy  
Dennis J. Lynch  
Travis C. Wheeler  
Chase C. Keibler  
**NEXSEN PRUET, LLC**  
1230 Main Street, Suite 700  
Columbia, South Carolina 29201  
Telephone: (803) 771-8900  
Facsimile: (803) 253-8277  
Email: deddy@nexsenpruet.com  
Email: dlynch@nexsenpruet.com  
Email: twheeler@nexsenpruet.com  
Email: ckeibler@nexsenpruet.com  

*Counsel for Plaintiffs Conagra Brands, Inc., Nestlé USA, Inc., and Nestlé Purina PetCare Co.; and Howard B. Samuels, acting solely in his capacity as Chapter 7 trustee for the bankruptcy of the estate of Central Grocers, Inc.*

*/s/ David B. Esau*  
David B. Esau  
Kristin A. Gore  
Garth T. Yearick  
**CARLTON FIELDS, P.A.**  
525 Okeechobee Boulevard, Suite 1200  
West Palm Beach, Florida 33401  
Telephone: (561) 659-7070  
Facsimile: (561) 659-7368  
Email:  gyearick@carltonfields.com  
Email:  kgore@carltonfields.com  
Email:  desau@carltonfields.com  

*Counsel for Plaintiffs Cheney Brothers, Inc. and Subway Protein Litigation Corp., as litigation trustee of the Subway® Protein Litigation Trust*

/s/ *Philip J. Iovieno*  
Philip J. Iovieno  
Nicholas A. Gravante, Jr.  
Karen C. Dyer  
Lawrence S. Brandman  
Jack G. Stern  

8



Gillian Groarke Burns
Mark A. Singer
Elizabeth R. Moore
**CADWALADER, WICKERSHAM & TAFT LLP**
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
E-mail: philip.iovieno@cwt.com
E-mail: nicholas.gravante@cwt.com
E-mail: karen.dyer@cwt.com
E-mail: lawrence.brandman@cwt.com
E-mail: jack.stern@cwt.com
E-mail: gillian.burns@cwt.com
E-mail: mark.singer@cwt.com
E-mail: elizabeth.moore@cwt.com

*Counsel for Plaintiffs Jetro Holdings, LLC, BJ's Wholesale Club, Inc., and Sherwood Food Distributors, L.L.C., Harvest Meat Company, Inc., Western Boxed Meat Distributors, Inc., and Hamilton Meat, LLC and Co-Counsel for Plaintiffs Kraft Heinz Foods Company; Winn-Dixie Stores, Inc.; and Bi-Lo Holdings, LLC*

9