# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE PORK ANTITRUST LITIGATION**<br><br>**This Document Relates to Commercial and Institutional Indirect Purchaser Plaintiffs' Action** | **Case No. 18-cv-1776 (JRT/HB)** |

## COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO PACIFIC AGRI-PRODUCTS, INC.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

    A.  The Nature of This Action. ............................................................................ 2

    B.  The Subpoena *Duces Tecum* Served on Pac-Agri. ........................................ 3

LEGAL STANDARD ........................................................................................... 10

ARGUMENT ........................................................................................................ 11

    A.  This Court has Authority to Compel Pac-Agri's Compliance with the
        Subpoena. ...................................................................................................... 11

    B.  CIIPPs' Requests for Pac-Agri's Transactional Data Are Relevant and
        Proportional to the Needs of the Case. ......................................................... 12

    C.  The Court Should Compel Pac-Agri to Produce Its Transactional Data
        Notwithstanding Its Objection That It "Considers" Its Profit Margins to Be a
        Trade Secret. .................................................................................................. 14

          1.  Pac-Agri has not made a strong showing that its transactional data meet
            the definition of a trade secret. ................................................................ 15

          2.  CIIPPs' Have Shown a Substantial Use for Pac-Agri's Transactional
            Data and Pac-Agri's Confidentiality Concerns Can Be Adequately
            Addressed by a Protective Order. ............................................................. 16

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

Cases

*Argo Grp. US, Inc. v. Pro. Governmental Underwriters, Inc.*,
    No. SACV131787AGDFMX, 2013 WL 11327772 (C.D. Cal. Dec. 6, 2013) .............. 15

*Baranski v. United States*,
    No. 4:11-CV-123 CAS, 2014 WL 7335151 (E.D. Mo. Dec. 19, 2014) ....................... 16

*Bridgestone/Firestone, Inc. v. Superior Court*,
    7 Cal. App. 4th 1384 (1992) .................................................................................. 14, 17

*Fair Isaac Corp. v. Equifax, Inc.*,
    No. 06–4112 (ADM/JSM), 2007 WL 2791168 (D. Minn. Sept. 25, 2007) ........... 17, 18

*Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*,
    443 U.S. 340, 99 S. Ct. 2800, 61 L.Ed.2d 587 (1979) .................................................. 14

*Gonzales v. Google, Inc.*,
    234 F.R.D. 674 (N.D. Cal. 2006) ................................................................................. 15

*In re Aftermarket Filters*,
    No. 08 C 4883, 2010 WL 3909502 (N.D. Ill. Oct. 1, 2010) ................................... 13, 18

*In re Broiler Chicken Antitrust Litig.*,
    No. 16 C 8637, 2019 WL 2764260 (N.D. Ill. May 6, 2019) ............................ 13, 18, 19

*In re Disposable Contact Lens Antitrust*,
    329 F.R.D. 336 (M.D. Fla. 2018) ............................................................................ 13, 18

*In re Pork Antitrust Litig.*,
    No. 18-1776 (JRT/HB), 2021 WL 5310590 (D. Minn. Nov. 14, 2021) ....................... 12

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    264 F.R.D. 603 (N.D. Cal. 2009) ............................................................................ 13, 18

*Jeffcoat Enterprises, Inc. v. Charter Commc'ns, Inc.*,
    No. 4:20-MC-00112-AGF, 2020 WL 2104732 (E.D. Mo. May 1, 2020) ..................... 11

*Lubrication Techs., Inc. v. Lee's Oil Serv., LLC*,
    No. CIV. 11-2226 DSD/LIB, 2012 WL 1633259 (D. Minn. Apr. 10, 2012) .......... 19, 20

*McKeage v. Bass Pro Outdoor World, L.L.C.*,
    No. 12-03157-CV-S-GAF, 2014 WL 12921607 (W.D. Mo. July 30, 2014) ................... 8

*Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*,
    171 F.R.D. 246 (D. Minn. 1997) ................................................................... 19

*Oppenheimer Fund v. Sanders*,
    437 U.S. 340 (1978) ............................................................................................ 8

*Sedlock v. Bic Corp.*,
    926 F.2d 757 (8th Cir. 1991) ........................................................................... 19

*Taiyo Int'l, Inc. v. Phyto Tech Corp.*,
    275 F.R.D. 497 (D. Minn. 2011) ............................................................... passim

*Terry v. Reg. Tapes Unlimited, Inc.*,
    No. 2:16-CV-0806-WBS-AC, 2017 WL 3226867 (E.D. Cal. July 31, 2017) ........ 14, 17

*Upjohn Co. v. Hygieia Biological*,
    *Lab'ys*, 151 F.R.D. 355 (E.D. Cal. 1993) ..................................................... 15

Statutes

28 U.S.C. § 1407 ...................................................................................................... 11

28 U.S.C. § 1407(b) .................................................................................................. 12

Cal Civ. Code. § 3426.1(d) ....................................................................................... 15

Rules

Fed. R. Civ. P. 34(a) ................................................................................................. 11

Fed. R. Civ. P. 45(d)(2)(A)(ii) ................................................................................. 16

Fed. R. Civ. P. 45(d)(2)(B)(i) ................................................................................. 11

Fed. R. Civ. P. 45(d)(3)(B) ...................................................................................... 15

Federal Rule of Civil Procedure 45(a)(1)(D) ......................................................... 10

Federal Rule of Civil Procedure 45(c)(2) ................................................................. 8

Federal Rule of Civil Procedure 45(d)(1) ................................................................. 8

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs" or "Plaintiffs") submit this memorandum of points and authorities in support of their Motion to Compel Compliance with the Subpoena Directed to Pacific Agri-Products, Inc. ("Pac-Agri").

## INTRODUCTION

This Court should enforce the subpoena duces tecum CIIPPs served on Pac-Agri. There is no dispute that the limited transactional data that CIIPPs seek from Pac-Agri is highly relevant to their claims in the underlying *In Re Pork Antitrust Litigation*, No. 18-cv-1776 (D. Minn.), and proportional to the needs of the case. Courts routinely order non-party direct purchasers to produce such transactional data in indirect purchaser antitrust class actions. Depriving CIIPPs of this data would unfairly prejudice them at both class certification and trial.

Pac-Agri has not argued that production of its transactional data is irrelevant or unduly burdensome—in fact, it has already agreed to produce its purchase data. Rather, Pac-Agri has objected to also producing its sales data because doing so could allow its margins, which it considers a "trade secret," to be calculated when combined with the purchase data. But that objection does not stand as a bar to reasonable production. First, Pac-Agri has not carried its burden of demonstrating that its purchase and sales data are trade secrets. Second, even if the data could be considered a trade secret, the existing protective order more than adequately safeguards this information.

This issue is one central to all indirect purchaser antitrust class actions: whether a non-party can avoid producing highly relevant transactional data that will be used by

indirect purchasers to establish that any alleged overcharge was passed through the distribution chain to them. The issue is not unique to Pac-Agri, and if Pac-Agri and other non-party distributors could avoid producing transactional data on the basis of a trade secret objection, the Court would be deprived of evidence highly relevant to the class certification analysis it must undertake.

Accordingly, CIIPPs' motion to compel should be granted, and the Court should order Pac-Agri to produce its transactional data.

## BACKGROUND

### A. The Nature of This Action.

CIIPPs are commercial and institutional indirect purchasers of pork, such as restaurants and caterers. They do not resell the pork as a commodity but instead convert it to create meals for their customers. CIIPPs allege that the nation's leading pork suppliers conspired to fix, raise, maintain, and stabilize the price of pork from at least 2009 to the present. *See* Declaration of Ian F. McFarland ("McFarland Decl."), Ex. A.[1]

CIIPPs allege that Defendants' anticompetitive conduct had the intended purpose and effect of increasing pork prices to CIIPPs and the putative class. Beginning in 2009, the earnings of Defendant pork suppliers began to increase, as they took an increasing amount of the profits available in the pork industry. As a result of the defendants' unlawful conduct, CIIPPs and the putative class allege that they paid artificially inflated prices for pork during the conspiracy.

---

[1] CIIPPs Fourth Am. and Consolidated Class Action Compl., Dkt. No. 808, No. 18-cv-1776 (D. Minn. June 15, 2021).

CIIPPs, other groups of indirect and direct purchaser plaintiffs, as well as Defendants, have all issued subpoenas to a nationwide cross-section of pork distributors, in an effort to obtain highly relevant transactional data demonstrating the conspiracy's nationwide effect on pork prices.

On November 14, 2021, the Court consolidated all of the pork antitrust cases pending in the District of Minnesota, including CIIPPs', into a single MDL in order to "further increase efficiency and decrease the risk of inconsistent discovery rulings by eliminating the need for multiple courts to get involved in addressing nonparty subpoenas." (Doc. No. 985.)

### B.  The Subpoena *Duces Tecum* Served on Pac-Agri.

On May 10, 2021, CIIPPs served a subpoena on Pac-Agri, which is headquartered in South San Francisco and specializes in the distribution of wholesale meat products, including the pork products at issue.[2] While the subpoena served on Pac-Agri consisted of a list of six requests for the production of documents, CIIPPs seek an order compelling Pac-Agri to comply with only the second and fourth requests, which seek Pac-Agri's structured transactional data for purchases and sales of pork products. Specifically, those requests provide:

> 2. For the period from January 1, 2002, to the present, please provide transactional data sufficient to show the following information related to your purchases of Pork:
>
>> a) purchase order number;

---

[2] *See* http://pacagri.com/products/pork/.

b) date of purchase;

c) internal product identification number;

d) manufacturer product code (e.g., UPC, SKU, or other identifying code associated with the item);

e) manufacturer name;

f) manufacturer identification number;

g) brand name (including private label brands);

h) brand identification number (including private label brands);

i) indicator of private label brands;

j) product description;

k) the grade, cut, product form, and/or type of Pork;

l) quantity purchased;

m) any data field related to product types or product categories;

n) quantity measure (e.g., live weight, carcass weight, retail weight, etc.);

o) unit of measurement for quantity purchased;

p) unit converter (if applicable);

q) transaction type (e.g., purchase, return, exchange);

r) contract number under which the purchase was made (if applicable);

s) all pricing and fee information related to the purchase, including unit price, freight, tax, and similar charges (USD);

t) unit of measure for any price fields (e.g., dollar per carcass weight pound);

u) any purchase order-level chargebacks, discounts, rebates, credits, freight allowances, free goods and/or services;

v) gross purchase amount (USD);

w) net purchase amount (USD);

x) Any data fields related to supplier type (e.g., processor, distributor, etc.);

y) supplier identification/vendor number;

z) supplier name and address;

aa) ship-to entity identification number;

bb) ship-to entity name;

cc) ship-to entity address;

dd) bill-to entity identification number;

ee) bill-to entity name;

ff) bill-to entity address;

gg) bill-to entity phone number; and

hh) bill-to entity email address.

…

4. For the period from January 1, 2002, to the present, please provide transactional data sufficient to show the following information related to your sales of Pork and prepared foods that include Pork:

a) invoice number;

b) date of sale;

c) internal product identification number;

d) manufacturer product code (e.g., UPC, SKU, or other identifying code associated with the item);

e) manufacturer identification number;

f) manufacturer that supplied you the items sold, and the brand (including private label brands) under which the item was labeled by the manufacturer;

g) indicator of private label brands;

h) the grade, cut, product form, and/or type of Pork;

i) product description;

j) any data field related to product types or product categories;

k) quantity sold;

l) unit of measurement for quantity sold;

m) quantity measure (e.g., live weight, carcass weight, retail weight, etc.);

n) unit converter (if applicable);

o) transaction type (e.g., sale, return, exchange);

p) all pricing and fee information related to the sale, including unit price, freight, tax, or similar charges (USD);

q) unit of measure for any price fields (e.g., dollar per carcass weight pound);

r) any invoice-level chargebacks, discounts, rebates, credits, freight allowances, free goods and/or services;

s) cost of goods sold ("COGS") (USD), including a definition/description of how you calculated COGS;

t) cost of the meat in the Pork product;

u) cost of the entire Pork product;

v) any data fields for any other fixed or variable costs or costs associated with the Pork sold;

w) gross sale amount (USD);

x) net sale amount (USD);

y) customer group identification number;

z) customer group name and description (e.g., university, prison, caterer);

aa) distributor name and description;

bb) customer identification number;

cc) customer name;

dd) customer address;

ee) contract number under which the purchase was made (if applicable);

ff) indicator of whether the sale price was negotiated by you, or if the customer negotiated it directly with the supplier;

gg) margin added to sales in cost-plus model (if applicable);

hh) ship-to entity identification number;

ii) ship-to entity name;

jj) ship-to entity address;

kk) bill-to entity identification number;

ll) bill-to entity name;

mm) bill-to entity address;

nn) bill-to entity phone number; and

oo) bill-to entity email.

McFarland Decl., Ex. B. As explained in detail below, the transactional data that is the subject matter of these requests will materially advance the proof of CIIPPs' claims. At class certification, CIIPPs will have the opportunity to demonstrate the impact of Defendants' conduct and that their damages are calculable on a classwide basis. Analysis of transactional data of direct purchasers, like Pac-Agri, showing that the defendants' overcharges on the price of pork products were passed through the distribution chain to CIIPPs, will bolster those showings.[3] *See infra* Sec. B.

On May 26, 2021, Pac-Agri served written objections to CIIPPs' subpoena, objecting to the requests for production in their entirety. McFarland Decl., Ex. C. Pac-Agri presented identical objections to each request. Specifically, Pac-Agri's objections provided:

> Pac-Agri objects that this subpoena calls for the production of documents outside the geographical limits permitted by Federal Rule of Civil Procedure 45(c)(2), in that it purports to command production in Washington, D.C. Pac-Agri objects on the basis of lack of personal jurisdiction. Pac-Agri objects on the basis that the request is overbroad, and subjects Pac-Agri to undue burden and expense in violation of Federal Rule of Civil Procedure 45(d)(1), including but not limited to because it seeks documents dating back to 2002. Pac-Agri further objects that the request seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case. Pac-Agri further objects on the ground of privacy, both under the common law and the federal and applicable state constitutions. Pac-Agri

---

[3] In addition, if a CIIPP class is certified, Plaintiffs will seek to notify the class. *See, e.g.*, *McKeage v. Bass Pro Outdoor World, L.L.C.*, No. 12-03157-CV-S-GAF, 2014 WL 12921607, at *14 (W.D. Mo. July 30, 2014) (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 362 (1978)). The sales data of direct purchasers, like Pac-Agri, can provide an especially effective way for indirect purchasers, like CIIPPs, to identify and notify members of a certified class.

further objects to the extent that the request seeks documents protected by the attorney-client privilege, the work-product doctrine, the taxpayer privilege, the trade secret privilege, and any other applicable privilege or protection.  Pac-Agri further objects that the request seeks Pac-Agri's trade secrets and/or other confidential research, development, or commercial information. Pac-Agri further objects that the request seeks the production of electronically stored information that is not reasonably accessible because of cost.  Pac-Agri reserves all rights to require the subpoenaing party to bear any cost that Pac-Agri incurs through the production of any information sought by the request.

*See* McFarland Decl., Ex. C.

The parties held a meet and confer on June 7, 2021, during which CIIPPs made clear that they were only seeking Pac-Agri's transactional data for its purchases and sales of pork products and were abandoning their requests for other documentary evidence. During the meet and confer, the parties narrowed the issues preventing Pac-Agri from producing its sales data. Although Pac-Agri ultimately did not object to producing the purchase data, its counsel explained that Pac-Agri was reluctant to produce its sales data as well, because doing so would allow its profit margin to be calculated, which it considers to be a trade secret.

Over the next several weeks, CIIPPs and Pac-Agri's counsel engaged in extensive written correspondence and met and conferred an additional two times, on June 7, 2021, and June 29, 2021. *See* McFarland Decl., Ex. D, E. In an effort to address Pac-Agri's confidentiality concerns, CIIPPs provided Pac-Agri's counsel with a copy of the operative protective order in the underlying litigation and explained,

After signing on to the protective order, your client will have the ability to designate sensitive commercial information, including its purchase and sales data, as "highly confidential." Information your client designates as "highly confidential" may only be reviewed by (1) counsel for the parties; (2) the court and its personnel; (3) court reporters and recorders; (4) contractors

engaged for the limited purpose of processing documents; (5) trial consultants and experts employed by the parties; (6) witnesses (after your client has had an opportunity to object); (7) authors or recipients of the document; (8) persons identified in the document (provided such disclosure is limited to the portion of the document in which the person identified is referenced); (9) others by your client's consent. Thus, the information will not be viewed by your client's competitors or other third parties.

We can also inform you that we do not anticipate that your client's data will be shared with any fact witnesses. Rather, we are seeking it for our experts to use in generating their report. We anticipate that we will file the expert report under seal. And again, only counsel and experts would see it, not the parties employing them.

McFarland Decl., Ex. E. Thereafter, Pac-Agri agreed to produce its purchase data, but despite CIIPPs' provision of the protective order in the case, and their offer to designate Pac-Agri's production of transactional data as "Highly Confidential," the parties were unable to resolve Pac-Agri's trade secret objection to producing its sales data.

On October 13, 2021, CIIPPs filed a motion to compel Pac-Agri to comply with the subpoena in the Northern District of California. On October 22, 2021, Magistrate Judge Ryu ordered the parties to file a joint discovery letter in lieu of full briefing. The parties did so on November 12, 2021. After this Court consolidated CIIPPs' case into the MDL, and with agreement from Pac-Agri, CIIPPs promptly withdrew their motion and the joint discovery letter from the Northern District of California.

Although Pac-Agri has agreed to produce its purchase data, it has not yet done so, and the parties remain at impasse with regard to CIIPPs' request for production of Pac-Agri's sales of data.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45(a)(1)(D) authorizes the issuance of a subpoena

to a non-party to produce documents, electronically stored information, or other tangible things for inspection. The scope of discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26(b). Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). Accordingly, a Rule 45 subpoena's requests must be relevant and proportional to the needs of the case. *See Jeffcoat Enterprises, Inc. v. Charter Commc'ns, Inc.*, No. 4:20-MC-00112-AGF, 2020 WL 2104732, at *2 (E.D. Mo. May 1, 2020). "Relevancy in this context has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* If the non-party objects to the subpoena's commands, "[a]t any time, on notice to the commanded person, the serving party may move the court in the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

## ARGUMENT

### A. This Court has Authority to Compel Pac-Agri's Compliance with the Subpoena.

The federal statute governing multidistrict litigation ("MDL"), 28 U.S.C. § 1407, provides that "[t]he judge or judges to whom [MDL] actions are assigned ... may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(b). "[T]his grant of authority is generally understood to apply to all pretrial

proceedings including nonparty, document-only subpoenas." *In re Pork Antitrust Litig.*, No. 18-1776 (JRT/HB), 2021 WL 5310590, at *3 (D. Minn. Nov. 14, 2021).

Earlier this year, CIIPPs moved the Court to compel a different non-party pork distributor to comply with a subpoena for transactional data. (*See* Doc. No. 876.) In denying the motion, the Court explained, "[CIIPPs'] case is not part of the MDL; the statutes and rules governing multidistrict litigation do not apply." (Doc. No. 935.) The Court, however, noted that the issue of whether CIIPPs' case should be consolidated into the MDL remained open. (*Id.*)

On November 14, 2021, the Court consolidated all of the pork antitrust cases pending in the District of Minnesota, including CIIPPs', into a single MDL "to increase efficiency and decrease the risk of inconsistent discovery rulings by eliminating the need for multiple courts to get involved in addressing nonparty subpoenas." *In re Pork Antitrust Litig.*, 2021 WL 5310590, at *3. Accordingly, CIIPPs' present motion is properly before the Court, and the Court may compel Pac-Agri to comply with the subpoena.

## B. CIIPPs' Requests for Pac-Agri's Transactional Data Are Relevant and Proportional to the Needs of the Case.

At class certification, the CIIPPs are entitled to demonstrate price impact to class members and to show their damages are calculable on a classwide basis. That includes demonstrating an overcharge on the price of pork sold by the defendants to direct purchasers, such as Pac-Agri, *and then measuring pass-through of that overcharge to CIIPPs*. Precedent provides that CIIPPs have the ability to make this showing, in part, by using data from participants in the distribution channel. In a case involving allegations of

12

a substantially similar price fixing conspiracy with the same Agri Stats firm acting as an

intermediary among suppliers of broiler chickens, the court explained,

> To show impact on the indirect purchaser classes, the IPPs will have to
> establish that any overcharge due to the alleged conspiracy was passed
> through to the EUPs and CIIPPs. The transaction data and information being
> sought from [distributor] is directly relevant to the EUPs' and CIIPPs' efforts
> to show that any alleged overcharge for the purchase of Broilers was passed
> through the distribution chain to the IPPs.

*In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2019 WL 2764260, at *2 (N.D. Ill.

May 6, 2019).

To collect data for these regressions, CIIPPs have subpoenaed data from a

nationwide sample of non-party direct purchasers of pork, including Pac-Agri. This data is

particularly relevant because it reflects both the purchase price of pork products bought

from the defendants (e.g., its major cost input) and the price at which those same products

were sold to CIIPPs. Thus, if the defendants' alleged conspiracy inflated the price of those

pork products, Pac-Agri's data will help measure the overcharges and demonstrate the

passing through of those overcharges to the CIIPP class members.

 Pac-Agri's pork purchase and sale transactional data will therefore aid in estimating

pass-through to the CIIPP class and thus the proof of CIIPPs' claims, strongly favoring

production. *See, e.g.*, *In re Aftermarket Filters*, No. 08 C 4883, 2010 WL 3909502, at *1

(N.D. Ill. Oct. 1, 2010) ("[I]t is undisputed that discovery from direct purchasers is

necessary on the issue of certifying an indirect purchaser class."); *see also In re Disposable*

*Contact Lens Antitrust*, 329 F.R.D. 336, 376, 390 (M.D. Fla. 2018) (distributor

transactional data directly relevant to expert analysis of class certification); *In re Static*

*Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 613, 615 (N.D. Cal. 2009) (same).

Because the transactional data sought by the subpoena is routinely used in indirect purchaser cases to establish antitrust injury and pass-through damages, and is precisely the type of data that non-parties are typically required to produce in indirect purchaser antitrust litigation, the Court should conclude that it is both relevant and proportional to the needs of the case.

### C. The Court Should Compel Pac-Agri to Produce Its Transactional Data Notwithstanding Its Objection That It "Considers" Its Profit Margins to Be a Trade Secret.

"[T]here is no absolute privilege [against disclosure] for trade secrets and similar confidential information." *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 500 (D. Minn. 2011) (quoting *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362, 99 S. Ct. 2800, 61 L.Ed.2d 587 (1979)); *see also Terry v. Reg. Tapes Unlimited, Inc.*, No. 2:16-CV-0806-WBS-AC, 2017 WL 3226867, at *4 (E.D. Cal. July 31, 2017) ("Allowance of the trade secret privilege may not be deemed to 'work injustice' within the meaning of Evidence Code section 1060 simply because it would protect information generally relevant to the subject matter of an action or helpful to preparation of a case." (quoting *Bridgestone/Firestone, Inc. v. Superior Court*, 7 Cal. App. 4th 1384 (1992)).

The Court should order Pac-Agri to produce its transactional data for two reasons. First, Pac-Agri has not fulfilled the burden of establishing that its purchase and sale transactional data is proprietary information, and Pac-Agri must satisfy this burden in order

to assert trade secret protection. Second, even if the data could be considered a trade secret, the applicable protective order more than adequately safeguards this information.

### 1. Pac-Agri has not made a strong showing that its transactional data meet the definition of a trade secret.

The burden is on the challenging party to "demonstrate that the information at issue is a trade secret … and that its disclosure would be harmful to the party's interest in the property." *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 500 (D. Minn. 2011). "Trade secret or commercially sensitive information must be 'important proprietary information' and the party challenging a subpoena must make 'a strong showing that it has historically sought to maintain the confidentiality of this information.'" *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) (construing Fed. R. Civ. P. 45(d)(3)(B)); *see also Argo Grp. US, Inc. v. Pro. Governmental Underwriters, Inc.*, No. SACV131787AGDFMX, 2013 WL 11327772, at *2 (C.D. Cal. Dec. 6, 2013) ("[California law] defines a trade secret as information that both "[d]erives independent economic value ... from not being generally known to the public or to other persons who can obtain economic value from its disclosure and use" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (quoting Cal Civ. Code. § 3426.1(d))). The burden is on the challenging party to establish the existence of a trade secret. *See Upjohn Co. v. Hygieia Biological Lab'ys*, 151 F.R.D. 355, 358 (E.D. Cal. 1993) ("Under California law, as in federal common law, the party asserting an evidentiary privilege has the burden of establishing its existence. Here, [subpoenaed party] has the burden of establishing that the information sought by the subpoenas implicates

a trade secret."). A witness who withholds information on a claim of protection must state the claim expressly and support it with sufficient documentation to enable the demanding party to contest the claim. *Baranski v. United States*, No. 4:11-CV-123 CAS, 2014 WL 7335151, at *6 (E.D. Mo. Dec. 19, 2014) (quoting Fed. R. Civ. P. 45(d)(2)(A)(ii)).

To date, Pac-Agri has made no factual showing that its transactional data are important proprietary information. Rather, Pac-Agri has merely stated that production of its sales data together with its purchase data could allow its margins to be calculated. Accordingly, the Court should conclude that Pac-Agri's transactional data do not meet the definition of a trade secret.

### 2. CIIPPs' Have Shown a Substantial Use for Pac-Agri's Transactional Data and Pac-Agri's Confidentiality Concerns Can Be Adequately Addressed by a Protective Order.

Even if Pac-Agri's transactional data constituted a trade secret, the Court should nonetheless order the sales data's production because CIIPPs have demonstrated a substantial use for it, and Pac-Agri's confidentiality concerns can be adequately addressed by a Protective Order. Where the requesting party establishes that "the information is relevant to the lawsuit and is necessary to prepare the case for trial … the court must weigh the injury that disclosure might cause against the moving party's need for the information." *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 500 (D. Minn. 2011).[4] When

---

[4] California's analysis is substantially similar:

> The party asserting trade secret privilege has the initial burden of establishing its existence, and thereafter the party seeking discovery must make a "prima facie, particularized showing" that the information is necessary to prove or defend against a "material element of one or more causes of action in the

weighing this factor, courts routinely order that the information be produced subject to a protective order. *See, e.g.*, *Fair Isaac Corp. v. Equifax, Inc.,* No. 06–4112 (ADM/JSM), 2007 WL 2791168, at *5 (D. Minn. Sept. 25, 2007) ("[O]rders forbidding any disclosure of trade secrets or confidential information are rare.... Instead, where such information is relevant and necessary, it is incumbent upon the district court to utilize its authority to issue an appropriate protective order to safeguard the rights of the parties."); *see also Taiyo Int'l*, 275 F.R.D. at 501-02 (collecting cases). Indeed, courts have determined that "[w]here the parties have agreed to a protective order, particularly one with 'Attorneys' Eyes Only' designation, even a very sensitive trade secret will be sufficiently protected and should be produced if relevant." *Taiyo Int'l*, 275 F.R.D. at 501.

As CIIPPs explained in detail in the preceding section, they have a substantial use for Pac-Agri's transactional data so they can establish impact and that damages are calculable on a classwide basis by demonstrating that defendants' overcharges to direct purchasers, like Pac-Agri, were passed through to CIIPPs. *See supra* Sec. B. As demonstrated above, courts in indirect purchaser antitrust cases consistently conclude that

---

case, and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit." If this showing is made, the privilege holder must demonstrate any claimed disadvantages of a protective order." Either party may propose or oppose less intrusive alternatives to disclosure of the trade secret, but the burden is upon the trade secret claimant to demonstrate that an alternative to disclosure will not be unduly burdensome to the opposing side and that it will maintain the same fair balance in the litigation that would have been achieved by disclosure."

*Terry*, 2017 WL 3226867, at *4 (quoting *Bridgestone/Firestone, Inc.*, 7 Cal. App. 4th 1384).

such data materially advances the proof of indirect purchaser plaintiffs' claims. *Cf. In re Broiler Chicken Antitrust Litig.*, 2019 WL 2764260, at *2 ("To show impact on the indirect purchaser classes, the IPPs will have to establish that any overcharge due to the alleged conspiracy was passed through to the EUPs and CIIPPs. The transaction data and information being sought from [distributor] is directly relevant to the EUPs' and CIIPPs' efforts to show that any alleged overcharge for the purchase of Broilers was passed through the distribution chain to the IPPs."); *In re Aftermarket Filters*, 2010 WL 3909502, at *1 ("[I]t is undisputed that discovery from direct purchasers is necessary on the issue of certifying an indirect purchaser class."); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. at 376, 390  (distributor transactional data directly relevant to expert analysis of class certification); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. at 613, 615 (same). Accordingly, the Court should conclude that CIIPPs' have demonstrated a substantial use for Pac-Agri's transactional data.

Where, as a here, the requesting party has shown relevance and potential for substantial use, courts routinely conclude that a protective order is sufficient to protect even very sensitive trade secrets, which should be produced if relevant. *See, e.g.*, *Taiyo Int'l*, 275 F.R.D. at 501 ("Where the parties have agreed to a protective order, particularly one with 'Attorneys' Eyes Only' designation, even a very sensitive trade secret will be sufficiently protected and should be produced if relevant."); *Fair Isaac Corp.*, 2007 WL 2791168, at *5 ("[O]rders forbidding any disclosure of trade secrets or confidential information are rare.... Instead, where such information is relevant and necessary, it is incumbent upon the district court to utilize its authority to issue an appropriate protective

order to safeguard the rights of the parties."); *Sedlock v. Bic Corp.,* 926 F.2d 757, 759 (8th Cir. 1991) (concluding that protective order permitting confidential designation limiting dissemination of discovery to other attorneys and their experts was sufficient to protect trade secrets); *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 171 F.R.D. 246, 250 (D. Minn. 1997) (concluding that protective order was sufficient to protect trade secrets); *Lubrication Techs., Inc. v. Lee's Oil Serv., LLC*, No. CIV. 11-2226 DSD/LIB, 2012 WL 1633259, at *13 (D. Minn. Apr. 10, 2012) (concluding that protective order was sufficient to protect trade secrets where it limited disclosure to "the Court, Attorneys and their office staff, persons shown on the face of the document to have authored or received it, court reporters, outside independent persons who are retained by a party or its attorney to furnish technical or expert services, or to provide assistance as mock jurors or focus group members or the like and/or to give testimony in this action"); *In re Broiler Chicken Antitrust Litig.*, 2019 WL 2764260, at *4 ("Although some of the data the IPPs are seeking from [subpoenaed non-party] contains sensitive business and financial information that is confidential, the Court is not persuaded by [subpoenaed non-party] argument that such information should not be produced in this case or that the Agreed Confidentiality Order entered in this case would not protect [subpoenaed non-party] interests once it is produced.").

Here, there is a protective order in place in the underlying litigation, and CIIPPs have offered Pac-Agri the opportunity to designate its transactional data as "Highly Confidential," which would limit disclosure to only to certain enumerated groups of persons necessary for prosecution of the litigation. *See* McFarland Decl., Ex. E; *see also*

19

*Lubrication Techs.*, 2012 WL 1633259, at *13 (concluding that substantially similar protective order was sufficient to protect trade secrets). CIIPPs have further explained to Pac-Agri that its transactional data will be used by CIIPPs' experts in generating their report, which will be filed under seal, and they do not anticipate that it will be shared with any fact witnesses. *Id.* Accordingly, the Court should conclude that the protective order adequately addresses Pac-Agri's confidentiality concerns and order Pac-Agri to produce its transactional data.

## CONCLUSION

For the reasons set forth above, CIIPPs respectfully request that the Court grant their motion to enforce the subpoena directed to Pac-Agri and require Pac-Agri to produce all transactional data responsive to Requests No. 2 and 4 within ten (10) business days of the issuance of its Order.

Date: December 3, 2021                    Respectfully Submitted,

By: */s/ Ian F. McFarland*
David M. Cialkowski (0306526)
Ian F. McFarland, (0392900)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
ian.mcfarland@zimmreed.com
**Members of Steering Committee for
Commercial and Institutional Indirect
Purchaser Plaintiffs**

Shawn M. Raiter (#240424)
Jason T. Johnson (#0399974)
**Larson King, LLP**

2800 Wells Fargo Place 30 East Seventh Street
St. Paul, MN 55101 (651) 312-6500
sraiter@larsonking.com
jjohnson@larsonking.com

Jonathan W. Cuneo (admitted pro hac vice)
Blaine Finley (admitted pro hac vice)
**Cuneo, Gilbert & LaDuca, LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016 (202) 789-3960
jonc@cuneolaw.com
bfinley@cuneolaw.com

**Interim Co-Lead Counsel for the
Commercial and Institutional Indirect
Purchaser Plaintiffs**