

TIFFANY RIDER
1901 L STREET NW
WASHINGTON, DC  20036
202.721.5402
TRIDER@AXINN.COM

December 7, 2021

**FILED VIA ECF AND EMAIL**

The Honorable Hildy Bowbeer
Magistrate Judge, District of Minnesota
United States District Court
316 N. Robert Street
St. Paul, MN 55101
bowbeer_chambers@mnd.uscourts.gov

   Re: *In re Pork Antitrust Litig.*, 0:18-cv-01776-JRT-HB
      Informal Dispute Resolution (IDR) Request

Dear Judge Bowbeer:

  Defendants write in response to MDL Direct Action Plaintiffs' (the "MDL DAPs") letter regarding search term negotiations (ECF No. 1022) (the "MDL DAPs' Letter").[1] After receiving more than 3 million documents resulting from hundreds of search term strings negotiated with putative Class Plaintiffs and non-MDL DAPs Winn-Dixie and Bi-Lo (collectively, the "Non-MDL Plaintiffs"), and in addition to the 30 additional search strings that Defendants have already agreed to run for MDL DAPs, MDL DAPs now seek to force Defendants to run an additional 90 search strings, reflected in Search Terms Nos. 1-90 in Exhibit B to the MDL DAPs' Letter (the "Disputed Terms"). MDL DAPs concede that this demand is not based on any allegations unique to MDL DAPs' cases. They instead rely only upon the purported right to "not be limited to the search terms Defendants may have negotiated with the plaintiffs in the *Preexisting Non-MDL Pork Cases*." (MDL DAPs' Ltr., at 4.)

  The Court should deny MDL DAPs' demand because: 1) it is disproportionate given the millions of documents already produced; 2) re-trading agreements reached with the Non-MDL Plaintiffs would result in unfairness to Defendants and needless inefficiency, potentially compromising the case schedule; and 3) the Disputed Terms are overly broad on their face.

---

[1] Defendants confirm their agreement that the dispute raised in MDL DAPs' Letter may be resolved through IDR in lieu of formal motion practice.

December 7, 2021
Page 2

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Over a year ago, on December 18, 2020, Non-MDL Plaintiffs and Defendants began negotiating search terms pursuant to the Court's Order on Stipulation Regarding Pretrial Schedule Order (ECF No. 532). Over the next seven weeks, Non-MDL Plaintiffs separately negotiated with each Defendant hundreds of search strings. After exchanging multiple rounds of search term proposals with Non-MDL Plaintiffs, each Defendant agreed to run between over 200 to over 400 search strings. Those agreements reflected a careful balancing of relevance and burden specific to each Defendant, which resulted in each Defendant accepting a unique combination of search terms. While Defendants believed they were unnecessarily broad, Defendants agreed to them in the spirit of compromise and to avoid burdening the Court with unnecessary disputes.

Putative Class Plaintiffs then requested dozens of supplemental search strings, as well as additional custodians, from many Defendants, and the parties resolved these additional requests without the need for motion practice. Defendants substantially completed production of over 3 million documents using the complete set of search terms on September 1, 2021.

Meanwhile, the first MDL DAP, Sysco, filed its complaint on March 8, 2021. The order transferring the resulting multidistrict litigation to this district was docketed in Case No. 21-md-2998 on June 22, 2021. Defendants produced their productions and structured data and proposed search terms to MDL DAPs on June 18, 2021. On August 2, 2021, Defendants and MDL DAPs submitted a proposed Case Management Order, which included a September 1, 2021 deadline for MDL DAPs to propose new search terms. Defendants stated in a footnote to that deadline, however, that the search terms negotiated with the Non-MDL Plaintiffs "should govern in the MDL absent good cause," and that "[b]y agreeing to provide deadlines for proposals for new search terms . . ., d[id] not concede that . . . new proposed search terms are proper."[2]

On September 1, 2021, MDL DAPs served a list of 142 proposed additional search terms, generally covering the same subject matter as the terms previously negotiated with Non-MDL Plaintiffs.[3] Many of the terms that putative Class Plaintiffs had proposed but

---

[2] Nor does the procedure for negotiating search terms include in ESI Order entered in the MDL, (No. 21-md-2998, ECF No. 21, at 11) support MDL DAPs' request. As discussed further below, and as MDL DAPs concede (MDL DAPs' Ltr., at 5), Defendants and MDL DAPs did negotiate and agree on certain limited search terms that are not at issue here.

[3] The MDL DAPs' categorization of the Disputed Terms is instructive: "Communications with and regarding competitors, co-Defendants, and their subsidiaries, affiliates and employees"; "Communications and documents regarding trade associations"; and "General communications evidencing the conspiracy." (*See* MDL DAPs' Ltr., Ex. C.) These categories are already covered by the agreed-upon search terms. (*See* Ex. A (Tyson's Agreed Upon Search Terms).)

December 7, 2021
Page 3

agreed to drop as overbroad, such as "Feds," "FBI," and "your friend." Defendants agreed to run the search terms related to specific DAPs, as well as four search strings that Defendants had asked MDL DAPs to run, while objecting to running new terms that were not tethered to allegations specific to MDL DAPs.

Defendants invited MDL DAPs to explain how the remaining search terms relate specifically to MDL DAPs' allegations, as opposed to allegations that MDL DAPs share with the Non-MDL Plaintiffs. As Defendants noted, "MDL DAPs' allegations largely mirror those of" the Non-MDL Plaintiffs and thus "these existing terms are sufficient to meet the needs of the MDL DAPs" in light of the "unnecessary inefficiency and delay" that would result from revisiting "hard-fought negotiations between the parties." (MDL DAPs' Ltr., Ex. A, at ECF p. 30.) MDL DAPs have offered no such explanation, however, instead insisting only that "MDL DAPs do not believe they should be forced to accept search terms that resulted from negotiations in which they had no involvement." (MDL DAPs' Ltr., at 2.)

On November 14, 2021, the Court consolidated the MDL into the previously consolidated action, rather than enter the proposed MDL Case Management Order, so that all orders entered in either case now apply to all parties from both cases absent further order of the Court.

## II.     ARGUMENT

MDL DAPs make no attempt to show why the millions of documents already produced, in addition to the DAP-specific terms already agreed to, are insufficient to prosecute their case, or why terms like "Feds" are relevant at all. They argue only that they "are individual plaintiffs . . . and should not be forced to accept the decisions by counsel for the plaintiffs in the *Preexisting Non-MDL Pork Cases*." (*Id.* at 5.) Their letter ignores that their cases have been consolidated into an action pending since 2018. It also ignores that the Court recently recognized that "the [DAP and putative Class] cases raise identical issues of fact, many identical issues of law, and other similar if not identical issues of law," (ECF No. 985, at 6), and that the MDL DAPs' document requests thus mirror those propounded by the putative Class Plaintiffs.

MDL DAPs' interests were fully aligned with and protected by the able Class counsel who negotiated the search terms in that action. It is a fact that plaintiffs in any consolidated proceeding, including MDL DAPs, will be "forced to accept the decisions by counsel" for earlier plaintiffs. There is no unfairness in that, especially here, where counsel for Direct Purchaser Plaintiffs have zealously pursued the documents that direct purchasers need to prosecute this case. And MDL DAPs make *no attempt* to show that the numerous additional search terms they seek are *based* on their status as individual plaintiffs, *i.e.*, on any allegations unique to their cases. Instead, MDL DAPs want to force a lopsided process where Defendants, but not Plaintiffs, are required to engage in endless

December 7, 2021
Page 4

rounds of search term negotiations each time a new related action is filed. Granting MDL DAPs' motion will therefore result in both unfairness and inefficiency.

MDL DAPs make the conclusory assertion that the Dispute Terms are relevant, arguing that Defendants must therefore "establish[] the burden of using a particular term." (*Id.*) In addition to the lack of any apparent relevance of many of the Disputed Terms, MDL DAPs' focus on relevance alone is misplaced. The Federal Rules "do not impose a duty upon litigants to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 3498161, at *2 (E.D. Pa. June 29, 2020) (quotations and citations omitted). Proportionality is the touchstone, and the proportionality of MDL DAPs' proposal cannot be looked at in isolation.

When a case has been consolidated for pretrial proceedings, proportionality must be considered in the context of the substantial burdens already incurred in the course of the entire consolidated action. *Cf. Jones v. Goord*, 2002 WL 1007614, at *15 (S.D.N.Y. May 16, 2002) (the cost of additional discovery sought "should not be assessed in isolation, but in the context of the total cost of discovery to date"). MDL DAPs' position ignores the *3 million* documents already produced to all plaintiffs, including MDL DAPs. It also ignores the burden and needless complication that successive renegotiation itself imposes, regardless of resulting search term hits. And it ignores that MDL DAPs offer no limiting principle—their rationale would permit successive rounds of additional search term negotiations for every future wave of plaintiffs.[4]

MDL DAPs' citations to decisions from entirely different contexts are therefore inapposite. *See Murphy v. Piper*, 2017 WL 6389690 (D. Minn. Dec. 14, 2017) (search terms resulting in "more than 70,000" hits ordered in non-consolidated, non-MDL class action against single defendant in decision not related to successive rounds of search terms), *cited by* MDL DAPs' Ltr., at 4, 5; *Axcan Scandipharm Inc. v. Ethex Corp.*, 2008 WL 11349882, at *17 (D. Minn. Dec. 31, 2008) (consideration of initial search terms in non-consolidated, non-MDL action), *cited by* MDL DAPs' Ltr., at 5.[5]

---

[4] Not all potential individual plaintiffs have brought suit yet. On the contrary, counsel for Jetro Holdings, LLC, BJ's Wholesale Club, Inc. and several other MDL DAPs recently advised Defendants that they "anticipate[d] filing [additional complaints] . . . on behalf of a number of additional clients in the coming weeks and months." (See Ex. B (11/19/2021 M. Singer email to C. Smith & H. Christenson).)

[5] Many of MDL DAPs' proposed search terms are also facially overbroad and would result in substantial burden in their own right. For example, the Disputed Terms pull in 832,246 documents, including attachments, for review by Smithfield alone, *in addition to* the millions of documents already reviewed for prior productions or still being reviewed in response to the MDL-DAP specific terms that Defendants have agreed to run. Further, Disputed Terms 12-15, 17, 21, 42-45, 75, 81-82, 84, 86, 88 are comprised of generic words untethered to any issue in

December 7, 2021
Page 5

MDL DAPs' proposal would undo the extensive and hard fought search term negotiations that Defendants conducted with Non-MDL Plaintiffs. MDL DAPs acknowledge that they seek both completely new terms—despite the lack of new allegations—as well as terms requested by prior plaintiffs but dropped during negotiations, either with respect to all Defendants, or with respect to specific Defendants based on their particular circumstances. (*Id.* at 4, 4 n.2.) MDL DAPs thus seek the benefit of the bargains that the Non-MDL Plaintiffs and Defendants struck, but free of the concessions made by both sides during those negotiations. (*Id.* at 5.) There is no "unfairness" in "forcing the MDL DAPs to live with results of negotiations" by Non-MDL Plaintiffs, when MDL DAPs' interests were fully represented by putative Class (and earlier DAP) counsel. Unfairness would instead result from permitting MDL DAPs to wait until document discovery is over to renegotiate the deals previously struck.

MDL DAPs' demand threatens to create a one-way ratchet against Defendants, in which prior agreements and the concessions on discovery are ignored as current MDL DAPs and future plaintiffs demand additional search terms in isolation, and without showing any deficiencies in the existing productions. This will inevitably burden not just Defendants, but also the Court. *See, e.g.*, *Busey Bank v. Benja Inc.*, 2021 WL 694824, at *2 (E.D. Mo. Feb. 23, 2021) ("The Court has a strong interest in managing its docket and keeping litigation moving to a conclusion without unnecessary delay.").

Permitting successive rounds of search-term negotiations for new plaintiffs, untethered to any unique allegations, also threatens the case schedule and orderly management of the consolidated action. Defendants substantially completed their document productions on September 1, 2021. The first deposition in this case occurred three months later—on December 1, 2021. Several more depositions are scheduled to occur in the coming weeks. And the class certification deadline is fast approaching. All parties—including current and future DAPs—are scheduled to complete fact discovery by September 1, 2022. Continuous rounds of renegotiation and production for both current and future DAPs threaten to delay the parties' progress and the Court's deadlines.

### III.  CONCLUSION

Defendants respectfully request that the Court deny MDL DAPs' request.

---

this litigation, let alone issues specific to any MDL DAP. *See, e.g.*, *Lutzeier v. Citigroup Inc.*, 2015 WL 430196, at *8 (E.D. Mo. Feb. 2, 2015) (denying plaintiff's motion to compel additional search terms capturing over 550,000 documents because they were "too generic" and "likely to produce a large number of documents that are irrelevant" to the case).

Should the Court hold that MDL DAPs are entitled to new search terms absent good cause based on allegations unique to MDL DAPs, Defendants request that the parties be ordered to negotiate terms narrowed from those proposed by MDL DAPs.

Dated: December 7, 2021                     Respectfully submitted,

By: */s/  Tiffany Rider Rohrbaugh*
Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
Lindsey Strang Aberg (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
radcox@axinn.com
trider@axinn.com
lstrang@axinn.com

Jarod Taylor (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8109
jtaylor@axinn.com

Kail Jethmalani (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200
kjethmalani@axinn.com

David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

***Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.***

*/s/ Mark L. Johnson*
Mark L. Johnson (#0345520)
Davida S. McGhee (#0400175)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
vmccalmont@greeneespel.com

Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com

**Counsel for Clemens Food Group, LLC and The Clemens Family Corporation**

*/s/ Richard A. Duncan*
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com
bryan.washburn@faegredrinker.com

**Counsel for Hormel Foods Corporation and Hormel Foods, LLC**

<table>
<tr><td>

/s/ *Peter H. Walsh*
Peter H. Walsh (#0388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
(612) 402-3000
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

**Counsel for Agri Stats, Inc.**

</td><td>

/s/ *Donald G. Heeman*
Donald G. Heeman (#0286023)
Jessica J. Nelson (#0347358)
Randi J. Winter (#0391354)
SPENCER FANE LLP
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402-4206
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
David B. Adler (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
davidadler@quinnemanuel.com

**Counsel for JBS USA Food Company**

</td></tr>
</table>

/s/ William L. Greene
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
Jon M. Woodruff (#0399453)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
jon.woodruff@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

**Counsel for Seaboard Foods LLC and Seaboard Corporation**

/s/ John A. Cotter
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN &CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

**Counsel for Smithfield Foods, Inc.**

*/s/ Christopher A. Smith*
Aaron Chapin (#06292540)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
aaron.chapin@huschblackwell.com

Marnie Jensen (*pro hac vice*)
Ryann Glenn (*pro hac vice*)
Kamron Hasan (*pro hac vice*)
Sierra Faler (*pro hac vice*)
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154
(402) 964-5000
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com
kamron.hasan@huschblackwell.com
sierra.faler@huschblackwell.com

Christopher A. Smith (*pro hac vice*)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
chris.smith@huschblackwell.com

**Counsel for Triumph Foods, LLC**