UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates to Commercial and Institutional Indirect Purchaser Plaintiffs' Action | Case No. 18-cv-1776 (JRT/HB) |

**PACIFIC AGRIPRODUCTS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DIRECTED TO PACIFIC AGRIPRODUCTS, INC.**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................... 1

II. BACKGROUND .................................................................................................. 3

III. LEGAL STANDARD ........................................................................................... 4

IV. ARGUMENT ........................................................................................................ 6

    A. Pac-Agri Has Shown That the Subpoena Seeks Its Trade Secret or Confidential Commercial Information ........................................................ 6

    B. The Court Should Protect Pac-Agri's Interest in Its Trade Secret and Confidential Information and Deny the CIIPP's Motion .............................. 9

        1. CIIPPs Have Not Shown a Substantial Need for Pac-Agri's Information Against the Other Information They Acknowledge Having .............................................................................. 9

        2. The Protective Order Does Not Afford Adequate Protection Here ................................................................................................. 11

        3. If The Court Grants the Motion, Pac-Agri Requests Modifications ............................................................................... 12

V. CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*,
  No. 819CV00642JLSJDE, 2019 WL 2177262 (C.D. Cal. May 20, 2019).............. 8

*Convolve, Inc. v. Dell, Inc.*,
  No. C 10-80071 WHA, 2011 WL 1766486, 2011 U.S. Dist. LEXIS 53641
  (N. D. Cal. May 9, 2011)................................................................................... 5

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
  444 F. Supp. 3d 1198 (E.D. Cal. 2020) ................................................................ 6

*General Parts Distribution, LLC v. Perry*, No. 12-mc-93 (SRN/SER),
  2013 WL 3223374 (D. Minn. June 25, 2013) ...................................................... 8

*Gonzalez v. Google*,
  234 F.R.D. 674 (N. D. Cal. 2006) ................................................................... 5, 9

*H.Q. Milton, Inc. v. Webster*,
  No. 17-CV-06598-PJH, 2017 WL 5625929 (N.D. Cal. Nov. 22, 2017).............. 6, 8

*In re Aftermarket Filters*,
  2010 WL 3909502 (N.D. Ill. Oct. 1, 2010) ......................................................... 11

*In re Broiler Chicken Antitrust Litig.*,
  2019 WL 2764260 (N.D. Ill. May 6, 2019) ......................................................... 11

*In re Disposable Contact Lens Antitrust*,
  329 F.R.D. 336 (M.D. Fl. 2018) .......................................................................... 11

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  264 F.R.D. 603 (N.D. Cal. 2009) ......................................................................... 11

*In re Worlds of Wonder Sec. Litig.*,
  147 F.R.D. 214 (N.D. Cal. 1992) .......................................................................... 5

*MAI Sys. Corp. v. Peak Computer, Inc.*,
  991 F.2d 511 (9th Cir. 1993).................................................................................. 7

*Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA(JSC),
  2017 WL 2929439 (N.D. Cal. July 7, 2017) .................................................... 5, 11

**STATE CASES**

*Whyte v. Schlage Lock Co.*,
  101 Cal. App. 4th 1443 (2002) ............................................................................. 6

**FEDERAL STATUTES**

Fed. R. Civ. P. 45(d)(3)(B)(i) ......................................................................................... 3, 4

**STATE STATUTES**

Cal. Civ. Code § 3426.1(d) ................................................................................................ 6

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Pacific Agri-Products, Inc. ("Pac-Agri") submits this memorandum of points and authorities in opposition to Commercial and Institutional Indirect Purchaser Plaintiffs' ("CIIPPs" or "Plaintiffs") Motion to Compel Compliance with the Subpoena Directed to Pacific Agri-Products, Inc.

I.  **INTRODUCTION**

Pac-Agri is a third party that has steered clear of this antitrust litigation. Save attempting to protect its confidential, trade secret financial information, it has not sought the Court's assistance in any way. Many of the Defendants in this action, however, are not only Pac-Agri's suppliers but also its competitors. The CIIPPs subpoena that is the subject of this motion to compel would require Pac-Agri to disclose its purchase and sales information, and thus its confidential margin information, not only to the CIIPPs, but also to its competitors in the Defendants' ranks.

The detailed combination of information sought by the CIIPPs' subpoena is a Pac-Agri trade secret. As Pac-Agri has previously demonstrated in letter briefing before the U.S. District Court for the Northern District of California, its margin information is strictly protected and has independent economic value to Pac-Agri by virtue of being held at the highest level of security, even within Pac-Agri itself. The information is kept on a secured server, accessible only by top-tier management, and subject to other stringent security measures described herein. Only the three owners of the company, its chief financial officer, and its controller, know its margin information. Were any of Pac-Agri's competitors, including Defendants here, to learn Pac-Agri's margins, they would gain an

1

instant competitive advantage by knowing precisely which customers to target, by how much to undercut Pac-Agri, and on which products to focus their efforts.

Disclosure of this information in this litigation, where Pac-Agri's competitors are Defendants, creates a tangible threat of irreparable harm to Pac-Agri. The burden is thus on CIIPPs to demonstrate a substantial need for the information outweighing that threat, which they cannot do. The CIIPPs also acknowledge that they already have nationwide sources of information for their case, namely other parties and also non-parties who have, for their own reasons, elected to produce their own financial information. The CIIPPs submit nothing to the Court to support the conclusion that their case will suffer without Pac-Agri's information. No expert has said their analysis will suffer. No declaration states the regression analysis will be incomplete. Moreover, Pac-Agri has negligible or no purchases from most of the Defendants in this action, and its purchases are miniscule in comparison to the scope of the market described in the CIIPPs' Fourth Amended and Consolidated Class Action Complaint. The CIIPPs cannot, on this record, demonstrate a substantial need for Pac-Agri's trade secret information.

Finally, the Protective Order does not adequately protect Pac-Agri. The Protective Order does not restrict even Highly Confidential Information to outside experts, provides Pac-Agri no opportunity to object to its Highly Confidential Information being provided to a particular expert, allows for summaries of Highly Confidential Information to be presented to parties, and gives Pac-Agri little visibility as to how its Highly Confidential Information is being used.

In these circumstances, Pac-Agri should not be forced to disclose its vital information. Rule 45 specifically empowers the Court to quash or modify a subpoena that would require the disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Pac-Agri requests that the Court exercise that power here and protect Pac-Agri by denying the CIIPPs' motion to compel.

## II.  BACKGROUND

Pac-Agri is a family-owned master distributor of major line poultry, pork, beef, and further processed meat products to the Northern & Central California, Pacific Basin, and Far-East areas. (Declaration of Brian Riparbelli in Support of Opposition to Motion to Compel, filed herewith ("Riparbelli Decl.") ¶ 2.) The company has a 47-year history, and has built a national reputation for quality and excellence. (*Id.*) Pac-Agri markets to the food service & retail industry, exporters, military prime vendors, and food manufacturers. (*Id.* ¶ 3.) Significantly, in many markets, Pac-Agri's suppliers—some of which are defendants in this antitrust class action—are also its competitors. (*Id.* ¶ 4.) If they could obtain Pac-Agri's confidential margin information, it would cause severe harm to Pac-Agri as those competitors determined how best to undercut Pac-Agri in those markets. (*Id.* ¶ 5.)

In Requests Nos. 2 and 4, the subpoena served by CIIPPs seeks detailed purchase and sale information from Pac-Agri going back to 2002. For purchases, CIIPPs seek 34 specific categories of information. (*See* Declaration of Ian McFarland in Support of Mtn. to Compel, filed Dec. 3, 2021 (McFarland Decl.), Ex. B at Request No. 2 (Dkt. #1027-

3).)  For sales, CIIPPs seek 41 specific categories of information, including Pac-Agri's cost of goods sold ("COGs"), a description of how Pac-Agri calculates its COGs, the specific manufacture from whom the product was purchased, the cost of the meat in the product, the cost of the entire product, other fixed or variable costs associated with the Pork sold, the gross and net sales amounts, and margin added to sales.  (*See* McFarland Decl., Ex. B at Request No. 4 (Dkt. #1027-3).)

Pac-Agri responded with detailed objections, including that the information sought was Pac-Agri's "trade secrets and/or other confidential research, development, or commercial information," was not reasonably accessible because of cost, was not proportional to the needs of the case, and by virtue of going back to 2002, was unduly burdensome to gather (if even possible to gather).  (*See* McFarland Decl., Ex. D at Responses to Requests Nos. 2 and 4 (Dkt. #1027-3).)  The instant motion focuses on the objection that the information constitutes Pac-Agri's "trade secrets and/or other confidential research, development, or commercial information."[1]

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 45(c)(3)(B)(i), a court may quash or modify a subpoena that would require disclosure of "a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i).  "Once the nonparty shows that the requested information is a trade secret or confidential

---

[1]  The CIIPPs note that Pac-Agri offered to produce its purchase information only.  It is important to recognize, however, that the offer was intended to moot this controversy by avoiding production of purchase and sales information.  The offer was not accepted.

commercial information, the burden shifts to the requesting party to show a substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Gonzalez v. Google*, 234 F.R.D. 674, 684 (N. D. Cal. 2006) (cleaned up). Moreover, the information requested from a non-party "should be narrowly drawn to meet specific needs for information." *Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486, at *2, 2011 U.S. Dist. LEXIS 53641 at *7 (N. D. Cal. May 9, 2011) (internal citations and quotation marks omitted).

The need for protection is heightened where a subpoena would require that nonparty to produce trade secrets or confidential information to its competitors who are parties to the litigation. *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA(JSC), 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017); *In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 214, 216 (N.D. Cal. 1992) (denying motion to compel discovery from litigating party where party's confidential trade secrets would be disclosed to its competitors, who were serving as expert witnesses). In fact, when the subpoena would require the production of a nonparty's trade secret or confidential information to a competitor, even a protective order allowing for attorneys'-eyes only treatment and mandating that the information only be used in the litigation will not provide adequate protection. *Waymo*, 2017 WL 2929439, at *3 (quashing subpoena to nonparty that was a competitor of a party).

IV. **ARGUMENT**

A. **Pac-Agri Has Shown That the Subpoena Seeks Its Trade Secret or Confidential Commercial Information**

A "trade secret" is "information, including a formula, pattern, compilation,...or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public..., and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1205 (E.D. Cal. 2020) (citing Cal. Civ. Code § 3426.1(d)). A company's profit margins are protectable trade secrets, unless they derive from commonly-used pricing formulas. *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1456 (2002) (margins and pricing information unique to a company, as opposed to general pricing formulas, are trade secrets); *Cutera*, 444 F. Supp. 3d at 1206; *H.Q. Milton, Inc. v. Webster*, No. 17-CV-06598-PJH, 2017 WL 5625929, at *3 (N.D. Cal. Nov. 22, 2017).

Production of the detailed purchase and sales information called for in Requests Nos. 2 and 4 would necessarily involve production of Pac-Agri's margins across all sale of pork products. (Riparbelli Decl. ¶ 7.) Pac-Agri's pricing information and in particular margin information is not the result of general pricing formulas, but Pac-Agri's own business efforts, including an experienced and loyal sales staff, volume, and long experience in the business. (*Id.* ¶ 8.) It is unique to Pac-Agri. (*Id.*) Pac-Agri's margins are in fact its most important trade secret, and its business would suffer serious, irreparable harm if they were disclosed. (*Id.* ¶ 9.)

6

If Pac-Agri's competitors learned its margins, they could undercut its pricing and divert business. (*Id.*) This is not a mere hypothetical. Pac-Agri commonly spends resources to build new brands and promote new items for its vendors. (*Id.* ¶ 10.) When Pac-Agri succeeds, vendors sometimes attempt to go around Pac-Agri to gain more margin for themselves, and would be helped if they knew Pac-Agri's margins. (*Id.*) This is exactly the kind of economic "head start" courts recognize is economic value sufficient to support a finding that information is a trade secret. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (information that allowed competitor to "direct its sales efforts" had independent economic value).

As to the second element of trade secret protection, "efforts that are reasonable under the circumstances to maintain its secrecy," Pac-Agri protects its margin information in several ways:

- Margin information is saved on a secure server onsite, physically protected by locked doors. Keys are only carried by 2 members of high-level management. (Riparbelli Decl. ¶ 11.)

- The server is protected by several layers of internet security supported by several appliances. The security measures are updated daily to protect against new threats, and monitored by managed service providers. (*Id.*)

- Access to the margin information is password protected using multi-factor authentication, and only granted to individuals who sign a Proprietary Information and Inventions Agreement. (*Id.*)

- Salespersons only have margin information for their particular customers. (*Id.*)

- Only the three owners of the company, the Chief Financial Officer, and the Controller, have access to company-wide margin. (*Id.*)

- Access to the margin information is immediately revoked upon a previously authorized employee's termination or demotion. (*Id.*)

These are precisely the sort of efforts that are recognized as reasonable efforts to maintain confidentiality. *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, No. 819CV00642JLSJDE, 2019 WL 2177262, at *6 (C.D. Cal. May 20, 2019), appeal dismissed, No. 19-55614, 2020 WL 2791789 (9th Cir. May 19, 2020) (recognizing that reasonable efforts to maintain secrecy existed where "[e]mployees must use a password to access the databases, their credentials are immediately deleted upon termination or resignation, and each employee must sign an Employment Agreement that prohibits the disclosure of information . . . ."). Indeed, Pac-Agri's efforts go beyond what is reasonable. *E.g.*, *H.Q. Milton, Inc. v. Webster*, No. 17-CV-06598-PJH, 2017 WL 5625929, at *4 (N.D. Cal. Nov. 22, 2017) ("The statute does not require, and defendants have not cited any authority to support a requirement, that "reasonable measures" necessarily includes encryptions, passwords, or confidentiality agreements.").

Finally, even if the Court concludes that this information is not a trade secret, Rule 45 allows the Court to protect information that, while not a trade secret, is confidential commercial information. *General Parts Distribution, LLC v. Perry*, No. 12-mc-93 (SRN/SER), 2013 WL 3223374, *3 (D. Minn. June 25, 2013). "Confidential commercial

8

information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *Id.* (cleaned up). At the very least, Pac-Agri's detailed purchase and sales information, and its margins, constitutes confidential commercial information within the meaning of Rule 45. Its disclosure would cause substantial economic harm to Pac-Agri, as demonstrated above.

### B. The Court Should Protect Pac-Agri's Interest in Its Trade Secret and Confidential Information and Deny the CIIPP's Motion

#### 1. CIIPPs Have Not Shown a Substantial Need for Pac-Agri's Information Against the Other Information They Acknowledge Having

As demonstrated above, Pac-Agri has shown that Requests Nos. 2 and 4 of the CIIPPs' subpoena seek its trade secret and confidential information, information that Pac-Agri vigorously protects. Pac-Agri has further shown the harm it will suffer from disclosure of this information. The CIIPPs thus have the burden of demonstrating a substantial need for the information. *Gonzalez*, 234 F.R.D. at 684. While CIIPPs refer to the information sought as "limited transactional data," it is anything but. Rather, Requests Nos. 2 and 4 of the subpoena seek a comprehensive set of transactional data over many years, including detail regarding Pac-Agri's COGs, margins, fixed cost, variable cost, and related pricing information.

The CIIPPs have access to all sales information from the Defendant pork suppliers. The CIIPPs also have, as they acknowledge, received transactional data from a "nationwide cross section" of pork distributors. (CIIPPs' Mem. of Law at 3, 13.) The

9

CIIPPs do not explain why they do not already have enough information, between these numerous sources, to run the regression analysis their experts need to run.  The CIIPPs do not submit any declaration from any expert indicating why the necessary analysis cannot be run with information currently on hand and available from nonparties who, for whatever reason, do not protect their transactional information as vigorously as Pac-Agri.

Nor would any such declaration from CIIPPs be entitled to much weight, because Pac-Agri does little business with the vast majority of the Defendants in the Fourth Amended Complaint.  The CIIPPs' Fourth Amended and Consolidated Class Action Complaint alleges that U.S. pork production has been over 20,000,000,000 pounds each year since 2005.  (Fourth Am. Consol. Compl. ¶ 124, at Figure 7.)  It further alleges that Smithfield and Tyson control approximately half the market.  (*Id*. ¶ 96 at Figure 5.)  In perspective, Pac-Agri's transactions cannot be material to the overall analysis given the other information CIIPPs have.  Over the last 10 years, Pac-Agri has made no purchases from Defendants Triumph or Clemens.  (Riparbelli Decl. ¶ 12.)  It has purchased less than 1 million pounds total from Hormel, well under 10,000,000 pounds total from JBS, and less than 20 million pounds from Seaboard.  (*Id*.)  Even as to Smithfield and Tyson, who Plaintiffs allege control half the market, Pac-Agri's total purchases by weight over the entire ten-year period come out to less than one half of one percent of the annual tonnage Plaintiffs allege for the entire United States.  (*Id*.)  Pac-Agri's purchases and sales cannot be that important and cannot weigh materially on the CIIPP's analysis.

None of the authorities relied on by the CIIPPs in support of their argument that Pac-Agri's transactional data is relevant involve the situation presented here, namely a

10

nonparty trying to protect its trade secret and confidential information from competitors, against a backdrop of already ample information available to the subpoenaing party. *See, e.g., In re Broiler Chicken Antitrust Litig.*, 2019 WL 2764260 (N.D. Ill. May 6, 2019) (referring matter to a special master and denying motion without prejudice); *In re Aftermarket Filters*, 2010 WL 3909502 (N.D. Ill. Oct. 1, 2010) (addressing motion to quash served by plaintiffs, not by nonparties; no discussion of competition); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336 (M.D. Fl. 2018) (addressing motion to exclude expert); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 613 (N.D. Cal. 2009) (addressing motion for class certification).

As such, those cases are not at all comparable to the instant one. The Court should be guided by the principles recognized in the *Waymo* litigation. A nonparty should not have to turn over its trade secrets to competitors, even in the face of a protective order. *Waymo*, 2017 WL 2929439, at *3 (quashing subpoena to nonparty that was a competitor of a party).

### 2. The Protective Order Does Not Afford Adequate Protection Here

The protections for Highly Confidential Information in this case are set forth in the Protective Order, Dkt. #212, and they are not adequate to protect Pac-Agri's sensitive information. The Protective Order at issue here contemplates that fact witnesses may be given access to Highly Confidential Information at a deposition, and that outside counsel can give a synopsis of Highly Confidential Information to employees of parties. (Protective Order, Dkt. #212, § 6(b) at 9 ("Consultants and Experts"), § 6(c) at 11.) The

Protective Order does not limit the consultants, investigators, or experts to whom Highly Confidential Information may be shown to <u>outside</u> consultants, investigators, or experts, thus opening up the possibility that an in-house expert of a Defendant could receive Pac-Agri's information. (Protective Order, Dkt. #212, § 6(b) at 9 ("Consultants and Experts").) The Protective Order does not require notice to the designating party and the opportunity to object before the party's Highly Confidential Information is disclosed to an expert. (*Id.*) It does not give the designating nonparty the right to appear at or monitor a deposition at which its information may be used, limiting any right to object solely to notice that a document may be used. (*Id.* § 6(b) at 9 ("Witnesses").) It allows for disclosure to absent class members, which would include Pac-Agri customers. (*Id.* § 7 ("Absent Class Members").

These provisions, taken together in a case in which parties are Pac-Agri's competitors and absent class members are Pac-Agri's customers, create unacceptable risk. The Protective Order does not justify compelling Pac-Agri to turn over its most valuable information.

### 3. If The Court Grants the Motion, Pac-Agri Requests Modifications

Should the Court overrule Pac-Agri's objections, Pac-Agri requests the following modifications:

(1) Pac-Agri should only be required to produce purchase information for purchases from Defendants in this case;

(2) High-level summaries of Highly Confidential Information must be anonymized, without identifying information, geographical or regional information that could provide an indication as to whose information is being summarized;

(3) Pac-Agri should be given notice and an opportunity to object before any of its Highly Confidential Information is shown to any consultant, investigator, or expert, and such information may only be shown to an outside consultant, investigator, or expert not employed by any party;

(4) Pac-Agri should be given notice and an opportunity to object before any of its Highly Confidential Information is shown to any absent class member or counsel for any absent class member; and

(5) Pac-Agri should be given an opportunity to appear at portions of any depositions where its information, whether in documentary form or not, is being discussed, for the purpose of protecting its information.

## V.  CONCLUSION

For the foregoing reasons, Pac-Agri requests that the Court protect Pac-Agri's trade secret and/confidential information, namely the detailed combination of Pac-Agri's purchase and sales information going back several years.  Failing that, Pac-Agri requests that at the very least, the Court impose the conditions described in Section IV.B.3, above.

Dated: December 10, 2021	Respectfully Submitted,


By:	*/s/ Adrian Sawyer*
Adrian Sawyer (CA SBN 203712)
SAWYER & LABAR LLP
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820
sawyer@sawyerlabar.com

*Attorneys for*
*Pacific Agri-Products, Inc.*

14