**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br>*MDL Direct Action Plaintiff Cases* | Civil Action No. 0:18-cv-01776 (JRT/HB) |

**JOINT STATEMENT OF THE PARTIES IN THE DIRECT ACTION PLAINTIFF
CASES REGARDING CASE MANAGEMENT ISSUES
IN RESPONSE TO THE COURT'S CONSOLIDATION ORDER DKT. 985**

The parties in the MDL Direct Action Plaintiff cases consolidated to this action from Case No. 0:21-md-02998 (the "*MDL DAP Cases*") respectfully submit this joint statement pursuant to the Court's Order Consolidating Actions (Case No. 18-cv-1776, Dkt. 985) ("Consolidation Order"), to address outstanding case management issues pertaining only the *MDL DAP Cases*, and to raise any objections to the application of certain orders previously on the docket prior to MDL 2998.

In the hope of making it easier for the Court to resolve these issues, the parties attach as Exhibit A a proposed Pretrial Case Management and Scheduling Order Applicable to the *MDL DAP Cases* that contains the provisions the parties have agreed upon and, in brackets, the particular provisions about which the parties disagree. For the provisions in dispute, Exhibit A contains each side's proposed language, with the MDL DAPs' proposal

1

bracketed in blue text, and the Defendants' proposal bracketed in red text. The parties provide below their respective positions on the disputed provisions.

## I.      Case Management Schedule

The Pretrial Scheduling Orders (Dkts. 532 & 658) in the *Pre-Existing Non-MDL Pork Cases* (18-cv-1776, prior to consolidation),[1] include certain discovery-related deadlines that have passed or are otherwise infeasible for the parties in the *MDL DAP Cases* to meet. In light of that fact, and pursuant to the Court's Minute Order on July 14, 2021 (21-md-02998, Dkt. 9), the parties negotiated and submitted to the Court via email to chambers on August 2, 2021 an agreed-upon proposed schedule that would apply to the *MDL DAP Cases*. That proposed schedule tracked the events in the existing Scheduling Orders (Dkts. 532 & 658) but on a timeline that is feasible for the parties in the *MDL DAP Cases*. Importantly, the deadline for the completion of fact discovery as to the *MDL DAP Cases* is the same as in the *Pre-Existing Non-MDL Pork Cases*—September 1, 2022.

Since the parties submitted the agreed-upon schedule on August 2, 2021, the MDL DAPs and Defendants have been operating under these agreed-upon dates (subject to extensions agreed to on an *ad hoc* basis). However, that schedule has not been entered by the Court.  Accordingly, the parties respectfully request that the Court enter a supplemental Pretrial Case Management and Scheduling Order providing for certain discovery-related deadlines tailored to the *MDL DAP Cases*. *See* Exhibit A at Section II.

---

[1] The term "*Pre-Existing Non-MDL Pork Cases*" refers to the cases that were part of this case (18-cv-1776) prior to the Court's Order Consolidating Actions (Dkt. 985).

## II.   <u>**Amended Pleading Deadline**</u>

The Pretrial Scheduling Order in Case 1776, Dkt. 658 at 2 (¶ 1), had an amended pleading deadline of June 1, 2021, which passed before the *MDL DAP Cases* had been transferred to this Court. (*See* June 9, 2021 Transfer Order, MDL No. 2998). The parties ask the Court to set an amended pleading deadline for the *MDL DAP Cases*. The parties disagree about what that date should be. The parties' respective positions are as follows:

<u>**Plaintiffs' Position**</u>: The MDL DAPs propose that any amended pleadings shall be filed on or before April 30, 2022, or 120 days before the deadline for the completion of fact discovery, whichever occurs later. This deadline allows the MDL DAPs to have any amended complaint informed by discovery.[2] The parties have agreed to a deadline of December 1, 2021 for the substantial completion of production of any additional structured data, and a deadline of January 31, 2022 for the substantial completion of document productions. The case schedule should afford MDL DAPs the opportunity to move under Rule 15 to amend their pleading(s) informed by that discovery without also having to meet the additional burden of satisfying Rule 16 to amend the scheduling order.  The MDL

---

[2] Rule 15(b)(2) expressly provides that "[a] party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." Rule 15 thus "contains no restriction on the use of information garnered through discovery in framing an amendment." *Remmes v. Int'l Flavors & Fragrances, Inc.*, 453 F. Supp. 2d 1058, 1071-72 (N.D. Iowa 2006). As set forth in the parties submission to the Court on August 2, 2021, Defendants proposed a deadline of November 1, 2021 for any amended pleadings.  But that is far too early in the MDL DAPs' cases.  That is a month before the agreed-upon deadline for substantial completion of structured data, and three months before the agreed-upon deadline for substantial completion of documents. If Defendants' proposed deadline were adopted, that will likely result in otherwise unnecessary motions practice about amendment of the schedule, which would be avoided by adopting the MDL DAP's proposed amended pleading deadline of April 30, 2022.

DAPs' proposed deadline of four months before the end of fact discovery also provides the parties ample time to conduct any additional or supplemental discovery pertaining to the new allegations in any amended pleading.

**Defendants' Position:** The deadline to amend the pleadings in the consolidated *In re Pork Antitrust Litigation* was June 1, 2021—three months before the deadline for substantial completion of document production; and one year and three months before the deadline for the completion of fact discovery. (Pretrial Scheduling Order, Dkt. 658.) That is just what Defendants propose here, and MDL DAPs fail to explain why a period that is sufficient for all other plaintiffs is not sufficient for them. As the Court noted during the Rule 16 conference for that action on December 18, 2020, "We have to hit the restart button every time [an amended complaint] happens." (Ex. B, 12/18/2020 Tr. of Rule 16 Conf. at 16:7-9.) Now that discovery with MDL DAPs is under way and depositions have begun, the pleadings in this case should be closed within 30 days so that the parties can move forward into discovery with certainty as to what claims and defenses are at issue.

Contrary to MDL DAPs' position, parties are not inherently entitled to take discovery to determine whether they might have other claims and then to amend based on what is discovered. *See, e.g.*, *Squicciarini v. Vill. of Amityville*, No. 17-CV-6768 (DRH), 2019 WL 2191371, at *2 (E.D.N.Y. May 21, 2019) ("Plaintiff cannot use discovery as a tool to plausibly plead his . . . claim. He must state a plausible claim capable of surviving a motion to dismiss to unlock the doors of discovery."). If discovery uncovers material warranting amendment, nothing will prevent DAPs from moving to amend the pleadings and scheduling order for cause at that time. (*See, e.g.*, Ex. B, 12/18/2020 Tr. of Rule 16

Conf. at 15:3-7 ("I need to provide a deadline by which any such motions will be made failing which you would have to not only make a motion to amend but move to amend the Scheduling Order as well.").)

## III.    <u>Consolidated Amended MDL DAP Complaint</u>

Defendants ask the Court to order the MDL DAPs to file a consolidated amended MDL DAP Complaint. The MDL DAPs disagree. The parties' respective positions are as follows:

<u>Plaintiffs' Position</u>: The MDL DAPs should not be required to prepare and file a Consolidated Amended MDL DAP Complaint. Requiring separate plaintiffs to coordinate and agree on a joint pleading is unduly burdensome and would unnecessarily complicate this litigation.

The MDL DAPs filed their cases outside this district. Under the Supreme Court's decision in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), those cases will return to their filing districts for trial. The MDL DAPs' claims are separate, and are asserted by different businesses with separate legal existence.

Under the Federal Rules of Civil Procedure, each plaintiff is entitled to receive a separate answer to its own pleading, including any defenses. Defendants have the burden of establishing the need and propriety of departing from what the Rules provide.

Defendants invoke *In Re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.) ("*Broiler Chicken*")—which involves, *inter alia*, an alleged conspiracy including chicken producers and Agri Stats to restrict broiler chicken supply, and bears similarities to the conspiracy alleged against the Defendants here—where more than 150

individual direct purchasers filed complaints.[3] Early in *Broiler Chicken* the court rejected defendants' proposal that they be relieved of their obligations under the Rules to provide Answers.

Later in *Broiler Chicken*, which is *not* an MDL proceeding (a material difference), the court *sua sponte* directed the DAPs to file a consolidated complaint, which DAPs did, over their objections. Since then, there has been considerable uncertainty about the nature and effects of the consolidated pleading—even after some clarifying comments from the court. There is now a pending, fully briefed motion before the court regarding lingering disagreements about the consolidated complaint. Among other issues before that court are whether the consolidated complaint is substantive or administrative, and the status of the individual DAP complaints, amended complaints and defendants' answers to them, in light of the existence of the consolidated complaint.

Defendants here acknowledge there is in *Broiler Chicken* a "dispute over the extent to which the consolidated complaint control[s]," although they mischaracterize the events that have resulted in ongoing confusion and extensive motion practice concerning a consolidated DAP pleading. There is no need to repeat that experience here.[4]

---

[3] *See, e.g., In re Broiler Chicken Antitrust Litig.*, Case No. 1:16-cv-08637 (N.D. Ill.), Direct Action Plfs' Am. Consol. Compl. (Dkt. 4244, Jan. 29, 2021), at 3-52.

[4] Defendants suggest they should be relieved of providing answers required by the Rules in order to save "hundreds of hours' worth of unnecessary legal fees." Yet their proposal would simply shift to Plaintiffs that burden. In *Broiler Chicken*, counsel for DAPs spent hundreds of hours preparing the consolidated pleading ordered by the court—and even after that Defendants complained the pleading was insufficient. Defendants here "hope" that future MDL DAPs will "simply adopt" a consolidated complaint prepared by the current MDL DAPs.  But they are not required to do so, and there is no reason to think they necessarily will. Moreover, new MDL DAPs are likely to file new cases while any

Defendants in this case also attempt to justify the filing of a Consolidated Complaint by the MDL DAPs by citing other cases. But, with one exception, Defendants' cases involved the consolidation of pleadings for putative class actions. The preparation of Consolidated Amended Complaints in class actions, including MDLs, is routine where all of the named plaintiffs are bringing their claims as representatives of the same group of absent class members. Those cases are therefore inapposite. As for the one non-class case cited by Defendants, it bears little resemblance to this case. In *In re Fluoroquinolone Products Liability Litigation*, this Court, *with the parties' consent*—in a case involving 1,266 individual actions—accepted their proposal for the filing of a Master Complaint, a Master Answer, and a procedure for short form complaints. While the parties in that massive product liability lawsuit may have chosen to do so, there is no reason for a Master Complaint in this antitrust MDL where fewer than 10 MDL DAP complaints have been filed, and only a dozen or so more may be expected—not 1,266.[5]

Defendants claim they "will soon be filing answers" that will "clog the Court's docket," but even if they had to respond to each MDL DAP complaint, filing seven, ten or even twenty answers is hardly going to "clog" the docket. But even so, Defendants ask the Court to order extraordinary departure from the Federal Rules based on a pretext, since they have rejected an MDL DAP proposal under which they would avoid having to file

---

consolidated pleading is prepared, making for a moving target. Again, Defendants are seeking to shift to the MDL DAPs considerable new work in order to avoid preparing their own answers.

[5] Defendants oddly claim as support for their position that MDL DAPs use the term "tag-along" cases. This is a technical term used by the JPML, not an invention of the MDL DAPs.

answers to each complaint for the foreseeable future. The MDL DAPs proposed to Defendants that (1) Defendants provide defenses and affirmative defenses to each complaint, which are needed for the respective MDL DAPs to conduct discovery, and should not be delayed, but (2) that Defendants need only answer *one* of the MDL DAP complaints (an "exemplar") to be selected jointly by the MDL DAPs, in the near term, with (3) the issue of answers to other MDL DAP complaints deferred into the future (and may eventually avoided altogether, for example due to settlements). This proposal gives Defendants the relief they claim they need from filing numerous answers in the near term, while ensuring MDL DAPs are promptly provided with Defendants' defenses and affirmative defenses.

**Defendants' Position:**   Twenty-two Direct Action Plaintiffs have filed six complaints that have been transferred into this MDL. Several more DAPs have filed complaints in other districts that will soon be transferred to this Court. And an additional sixty-three companies have opted out from the class settlements already reached in this case, meaning that many more complaints are likely on their way. Forcing each of the eight defendant groups to file separate answers to what may be dozens of DAP complaints is unnecessarily wasteful. To avoid hundreds of hours' worth of unnecessary legal fees and unnecessary complexity, and to preserve judicial resources by streamlining both the docket and the administration of this case, Defendants propose that the MDL DAPs file a consolidated complaint (sometimes referred to as a "master complaint"), with the parties to negotiate within 30 days a procedure for folding future MDL DAPs into the consolidated

complaint and applying Defendants' answers to the consolidated complaint to those future MDL DAPs' complaints.

Without a consolidated complaint, Defendants will soon be filing answers to each of the seven current complaints, followed by answers to each subsequent complaint, likely followed by answers to one or more amendments to many of those complaints.

This will not only clog the Court's docket, but also needlessly complicate the proceedings. Defendants and the Court will be forced to scour and compare allegations across numerous complaints in the course of motion practice and rulings throughout the life of this case. Even though the complaints are substantively identical, and use wording that is nearly identical, dealing with multiple complaints will not be a simple matter of, for example, filing the same answer multiple times but with a different caption. When complaints combine or break up paragraphs differently; or add or delete clauses; or even add or delete a fact that does not change the nature of the claims or defenses, the content of the answer must change accordingly. And lining up the content of one answer to fit the slightly different organization of another complaint wastes substantial attorney time on an exercise that is neither helpful nor required to actually progress the case.

None of this is necessary; there is simply no reason to continue to respond and refer to dozens of complaints, rather than to a single complaint. Even MDL DAPs' proposed case management order acknowledges that these cases as "tag-along" cases, they are essentially identical, and there is no reason not to treat them as such.  That is why this Court and many other courts have required consolidated complaints in similar cases, including antitrust class actions. *See, e.g.*, Pretrial Order # 1 on Procedural Issues, *In re:*

*Fluoroquinolone Prods. Liab. Litig.*, MDL No. 15-2642 (D. Minn. Feb. 12, 2016), Dkt. 76 (Tunheim, C.J.); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020); *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586 (6th Cir. 2013); *In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, 2017 WL 3863866, at *4 (W.D. Mo. Aug. 3, 2017); *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940 (N.D. Ill. 2016). The court in the *Broiler Chicken* case also ordered consolidated pleadings *sua sponte* in March of 2020, over DAPs' objections. That Court clearly found the profusion of complaints to be unmanageable.

MDL DAPs have not, and cannot, provide a convincing reason to avoid consolidation. MDL DAPs refer repeatedly to their right "to receive a separate answer to its own pleading" under the Federal Rules of Civil Procedure. They will have their answers under Defendants' proposal, however. Defendants will answer every allegation by any MDL DAP—in the form of their answers to the consolidated complaint. The rules do not require more—otherwise, consolidated complaints would not be permitted in any case.

MDL DAPs also intimate that the consolidated complaint in *Broiler Chicken* created more issues than it solved. That is not true. In *Broiler Chicken*, that court required a consolidated complaint much later in the proceedings, after far more than six DAP cases had been filed, and those DAPs failed to include all of the allegations from all of the underlying complaints in the consolidated complaint, leading to a dispute over the extent to which the consolidated complaint controlled. Any similar confusion can be avoided here if the MDL DAPs file a consolidated complaint now, at a relatively early stage of the DAP filings, and  make sure to include all allegations that any MDL DAP wishes to pursue.

Future MDL DAPs will then hopefully simply adopt the consolidated complaint. This should also avoid the hundreds of hours in legal fees that MDL DAPs spent merging the numerous complaints in the *Broiler Chicken* case that had been filed before the consolidation order was entered.

Any uncertainties that MDL DAPs believe arose in *Broiler Chicken* can be addressed in the 30-day period that Defendants propose for negotiating a consolidation process, with the Court's guidance if necessary. At most, the *Broiler Chicken* case highlights lessons learned and problems to avoid, not reasons never to consolidate.

Defendants' proposal is simple—MDL DAPs will file a consolidated complaint that is the legally operative complaint in all of their individual actions, and that will serve as the complaint if their cases survive, for example, summary judgment and *Daubert* motion and are then remanded. The allegations in which each MDL DAP joins or declines to join will be made clear in the consolidated complaint itself, making it suitable for that purpose. This will not merge their separate actions, and MDL DAPs cite no authority holding this procedure to be improper. If MDL DAPs wish to further amend the consolidated complaint before trial, the parties can address any issues at that time, and in the remand courts.

MDL DAPs' proposal—that Defendants respond to a single complaint now, and then respond to all of the other complaints in the future—does not solve the problems that Defendants have identified. It merely *delays* one of them, namely, the burden of filing multiple answers. It will not relieve Defendants or the Court of the burden of continuously referring to similar allegations across dozens of complaints. The Court should therefore

order a consolidated complaint to streamline and simplify these proceedings, as it has done in other cases.

## IV.    **Depositions of MDL DAPs**

The Pretrial Scheduling Order provides Defendants with six depositions per direct action plaintiff (Dkt. 658 at 7-8: "Defendants may collectively depose . . . up to 5 percipient witnesses per Direct Action Plaintiff pursuant to Federal Rule of Civil Procedure 30(b)(1)" and "Defendants may notice one Rule 30(b)(6) deposition on each corporate Plaintiff."). The MDL DAPs object to the application of this provision to them under the Consolidation Order. Defendants disagree. The parties' respective positions are as follows:

**Plaintiffs' Position:** The MDL DAPs seek relief from the burden of six depositions per MDL DAP. The MDL DAPs propose that the Defendants may take up to two depositions per MDL DAP (including one Rule 30(b)(6) deposition) for the following reasons.[6]

First, unlike the MDL DAPs, Defendants do not bear the burden of proof, and a presumptive limit of two depositions per MDL DAP family is sufficient for Defendants to discover necessary information concerning a particular plaintiff.

Second, MDL DAP counsels' recent experience in *Broiler Chicken*, where the years-long fact discovery period ended on July 31, 2021, showed that the relevant case

---

[6] The only direct action plaintiff in the Pre-*Existing Non-MDL Pork Cases*, Winn-Dixie, submitted a statement to the Court on September 8, 2021, supporting the MDL DAPs' position of only two depositions per MDL DAP, and explaining why the limit in the current Pretrial Scheduling Order (Dkt. 658) should not apply to the MDL DAPs. *See* Exhibit B.

management order's presumptive limit of up to two depositions per DAP[7] did not hinder defendants from discovering information relevant to their defenses. In fact, in numerous instances, the *Broiler Chicken* defendants took only one DAP deposition even when they were entitled to take two.

Third, allowing Defendants up to six depositions per MDL DAP will jeopardize the agreed September 1, 2022 fact discovery deadline. Allowing four extra depositions of each DAP will add dozens of depositions to the case. There are already 22 MDL DAPs, and likely to be more. Even if there are eventually only 40 MDL DAPs, that would give Defendants up to 240 depositions—compared with fewer than 100 depositions of Defendants collectively. Such a disproportionate imbalance is unwarranted, and will jeopardize the case schedule. The best course is for the Court to set a presumption of two MDL DAP depositions without permission from the Court, and leave it to the parties to negotiate if Defendants believe they need more from a given DAP—as has generally worked successfully in *Broiler Chicken*.

Defendants suggest the Court should order up to six depositions of each MDL DAP because that was agreed to by the plaintiffs in *Pre-Existing Non-MDL Pork Cases*. But the fact that other plaintiffs voluntarily agreed to six depositions should not bind the MDL DAPs—and does not excuse the non-MDL DAPs from abiding by their existing commitment. Moreover, the number of depositions of MDL DAPs permitted has no bearing on, or inconsistency with, existing case management orders in or the progress of

---

[7] *See* August 18, 2018 Order, p. 2 (Dkt. 1155) in *In re Broiler Chicken Antitrust Litig.*, Case No. 1:16-cv-08637 (N.D. Ill.) (attached hereto as Exhibit C).

the *Pre-Existing Non-MDL Pork Cases*. To the contrary, the only potential impact on the *Pre-Existing Non-MDL Pork Cases* of allowing 6 depositions of each MDL DAP is that it will make it more difficult to complete fact discovery by September 2022. There are already 21 MDL DAPs, and likely to be many more. Even if there are eventually only 40 MDL DAPs, that would give Defendants up to 240 depositions—compared with fewer than 100 depositions of Defendants collectively. Such a disproportionate imbalance is unwarranted, and will jeopardize the case schedule being put in place.

The MDL DAPs invited Defendants to propose a compromise of more than two but fewer than four depositions of each MDL DAP family; Defendants declined to propose a compromise.

**Defendants' Position:** The Pretrial Scheduling Order in the consolidated action expressly provides for the number of depositions to be taken by Direct Action Plaintiffs: "up to 5 percipient witnesses per Direct Action Plaintiff" and "one rule 30(b)(6) deposition." (ECF No. 658, pp 7-8.) MDL DAP's now seek to re-trade the discovery balance struck in all of the pre-existing actions by changing several discovery provisions to their advantage—by *limiting* the number of depositions Defendants may take of MDL DAP witnesses on the one hand, while *increasing* the number of interrogatories and requests for admission that MDL DAPs may serve on the other. MDL DAPs' objection to the application of the discovery limits in the Pretrial Scheduling Order is not well-founded and should be denied.

There is no basis for renegotiating the discovery limits that apply to three putative classes; to the Commonwealth of Puerto Rico; to two Direct Action Plaintiffs, Winn-Dixie

and Bi-Lo Holdings—and that previously applied to one of the MDL DAPs, Cheney Bros., until it voluntarily dismissed its Minnesota case only to refile it in Florida and then ask to have its case consolidated in Texas.[8] The MDL DAPs' claims are not unique, and there is no reason why they should not have to provide the same discovery to Defendants that the plaintiffs in all of the prior consolidated actions must provide.

To support their requested deviation from the limits negotiated with prior DAPs, MDL DAPs note that the defendants in the *Broiler Chicken* case took only one deposition of certain direct action plaintiffs in that case, despite being allowed to take two. That only shows, however, that the *Broiler Chicken* defendants did not take depositions needlessly or as part of a strategy of attrition. Defendants here will do the same, treating the previously negotiated limit of five fact depositions and one corporate deposition per DAP family as a ceiling, not a floor. But where Defendants do need more than two depositions, they should not be at MDL DAPs' mercy, or be forced to burden the Court with motions for additional depositions. Discovery from the MDL DAPs, some of which are among the largest buyers in the nation (*e.g.*, Sysco and Topco), is still in the early stages. Defendants, therefore, have no insight into how the MDL DAPs have organized their purchasing departments and should not be forced to accept the MDL DAPs' unilateral declaration that merely two

---

[8] The Court entered the Pretrial Scheduling Order on January 26, 2021 and noted in the caption that the Order "relates to: ALL CASES." (Dkt. 658.) Cheney Brothers, Inc. did not file its Notice of Voluntary Dismissal until February 11, 2021 and thus was subject to the Pretrial Scheduling Order in the interim between the two filings. (Dkt. 688.) Winn-Dixie's and Bi-Lo's argument that the deposition limits in the Pretrial Scheduling Order should not apply to MDL DAPs because Winn-Dixie and Bi-Lo are uniquely situated therefore falls flat.

witnesses from large pork buyers with nationwide operations will be sufficient. Moreover, preserving the current limit of six depositions per DAP will not jeopardize the September 1, 2022 fact discovery deadline. Defendants will take only those depositions that they need, and the ability to take up to five fact depositions and a potential 30(b)(6) deposition[9] as needed will not delay the case.[10]

## V.   Limits on Interrogatories and Requests for Admission

The Pretrial Scheduling Order (Dkt. 658) provides that DAPs, as a group, shall have five interrogatories that they may serve on each Defendant family and that *all* Plaintiffs may jointly serve up to 75 requests for admission on each Defendant family.[11] MDL DAPs

---

[9] The CMO would require the parties to use their best efforts to coordinate so as to avoid multiple depositions of the same witness, so it is possible that one of the depositions would be a combined 30(b)(6) and fact deposition, resulting in five depositions total for any particular MDL DAP family.

[10] MDL DAPs also claim that Defendants' proposal would create a "disproportionate imbalance" in the number of total depositions of MDL DAP witnesses with respect to the total number of Defendant depositions. But as MDL DAPs assert throughout this joint statement, MDL DAPs have brought individual actions. Therefore, while MDL DAPs will be able to use all of the depositions taken of Defendants, generally speaking, a deposition showing, for example, the strong bargaining power of one MDL DAP will have no bearing on the actions brought by the other MDL DAPs. At summary judgment and trial, the balance will continue to overwhelmingly favor each MDL DAP, which will have dozens of depositions of Defendants at its disposal, while Defendants will have only six from the respective MDL DAP in each MDL DAP action.

[11] Pretrial Scheduling Order, Dkt. 658, at 4, 6 (emphasis added):

> All Plaintiffs may jointly serve 25 interrogatories on each Defendant family. In addition, each Plaintiff Class (DPPs, EUCPs, and CIIPPs), and **Direct Action Plaintiffs as a group, shall separately have 5 interrogatories they may serve on each Defendant family.**
>
> . . .

object to the existing interrogatory and RFA limit and instead propose that MDL DAPs collectively (including future MDL DAPs) may jointly serve 20 interrogatories and 75 non-evidentiary requests for admission ("RFAs") on each Defendant family. Defendants disagree.

**Plaintiffs' Position:** Under Rule 33, each party is ordinarily be permitted to serve 25 interrogatories in its own case on each Defendant. Fed. R. Civ. P. 33(a). Thus, the MDL DAPs' proposal of jointly serving only 20 interrogatories on each Defendant family is a *substantial* reduction of what each MDL DAP would be entitled to under the Rules.

To be clear, and as expressly stated in the proposed CMO, the MDL DAPs will coordinate with the plaintiffs in the *Pre-Existing Non-MDL Pork Cases* to avoid serving duplicative or unduly burdensome interrogatories. But the MDL DAPs need more than five unique interrogatories that they must share. The MDL DAPs also need their own non-evidentiary RFAs.

While this proposal differs from the interrogatory and RFA limits agreed to by the parties in the *Pre-Existing Non-MDL Pork Cases*,[12] the MDL DAPs should not be forced to comply with limits they had no part in negotiating.

---

With respect to non-evidentiary issues set forth in the paragraph above, **Plaintiffs may jointly serve 75 requests for admission on each Defendant family.**

[12] The Pretrial Scheduling Order (Dkt. 658) in the *Pre-Existing Non-MDL Pork Cases* states, in relevant part that:

All Plaintiffs may jointly serve 25 interrogatories on each Defendant family. In addition, each Plaintiff Class (DPPs, EUCPs, and CIIPPs), and **Direct Action Plaintiffs as a group, shall separately have 5 interrogatories they may serve on each Defendant family.**

**<u>Defendants' Position</u>:** Just as MDL DAPs should not be permitted to produce fewer deponents than the DAPs in the consolidated cases, so, too, they should not be permitted to serve more interrogatories and requests for admission than the DAPs in the consolidated case. MDL DAPs' rationale for deviating from the current limits on interrogatories and requests for admission is that they "should not be forced to comply with limits they had no part in negotiating."  But MDL DAPs themselves are of course currently negotiating the limits that will apply to future MDL DAPs that are not part of these negotiations. That is how complex multidistrict litigations work. Indeed, it is how they must work, or discovery limits would need to be renegotiated with the arrival of each new plaintiff—just as MDL DAPs are seeking to do here.

The existing limits on interrogatories should govern here, as they expressly contemplated applying to multiple direct action plaintiffs as a group:

> All Plaintiffs may jointly serve 25 interrogatories on each Defendant family. In addition, each Plaintiff Class (DPPs, EUCPs, and CIIPPs), ***and Direct Action Plaintiffs as a group***, shall separately have 5 interrogatories they may serve on each Defendant family. Plaintiffs will coordinate efforts to avoid serving duplicative or unduly burdensome interrogatories.

(Dkt. 658 at 4) (emphasis added). The legal claims and supporting allegations contained in the MDL DAP complaints are virtually indistinguishable from the operative complaints

---

. . .

With respect to non-evidentiary issues set forth in the paragraph above, **Plaintiffs may jointly serve 75 requests for admission on each Defendant family.**

in the previously consolidated cases, and the MDL DAPs therefore can and should coordinate with the plaintiffs in the consolidated cases within the existing limits.

MDL DAPs claim that their attempt to quadruple the number of interrogatories they may serve "is a substantial reduction of what each MDL DAP would be entitled to under the Rules." But they cannot square that statement with their attempt to reduce the number of depositions that Defendants may take from five to two, when the same Rules would allow the defendants to depose ten witnesses from each MDL DAP. Additional limits on discovery are necessary in a case like this, and the bargain struck with the earlier DAPs is a fair compromise.

MDL DAPs will also have the benefit of the 25 interrogatories they may serve jointly with other Plaintiffs. Their attempt to increase the number of additional, DAP-specific interrogatories from 5 to 20 will undoubtedly result in unnecessary, duplicative, and burdensome discovery. The Court should hold the MDL DAPs to the same standard as previous the DAPs by ordering them to work with the parties in the Consolidated Cases to "coordinate discovery in a manner that reduces needless duplication and inefficiency." (Dkt. 644 at 4).

As with interrogatories, the MDL DAPs should work within the existing limits on requests for admission, which provide that all Plaintiffs together may jointly serve 75 requests for admission on each Defendant family. (Dkt. 658 at 6). Given the similarity of the MDL DAP complaints to the operative complaints in the Consolidated Cases, MDL DAPs cannot justify their request to separately propound 75 of their own requests for admission.

**VI.**    <u>**Discovery Limits Applicable to Future DAP Cases**</u>

   <u>**Plaintiffs' Position:**</u> The MDL DAPs believe it would be inappropriate, and may

not even be permissible, for the Court to set a deadline by which future MDL DAPs must

file a complaint or be barred from seeking discovery of Defendants "without a court order

allowing such discovery to occur," and "based upon a demonstration of good cause by the

moving party," as the Defendants propose. In any event, the current MDL DAPs do not

believe they should consent to a proposal which does not affect them, but will prejudice

potential future plaintiffs—and therefore decline to do so.

   <u>**Defendants' Position:**</u> Future MDL DAPs should be held to the discovery

deadlines set forth in the parties' proposed CMO. The only way to ensure that those dates

hold is if late-filing DAPs—those filing after January 10, 2022—are held to the discovery

already propounded and received by the other DAPs and the Class Plaintiffs, rather than

permitted to serve their own new discovery.  January 10 is well after Defendants' document

production will be substantially complete, and less than a month before substantial

completion of MDL DAPs' document production and any production by Defendants in

response to new search terms under the proposed CMO. It is also more than five months

from now. Permitting new discovery by new MDL DAPs after that date thus risks

upsetting the case schedule and unduly burdening Defendants, and it is entirely reasonable

to require future MDL DAPs to file by that date in order to attempt to propound unique,

additional discovery.

   MDL DAPs claim that such a limitation "may not even be permissible." That

assertion is not only unsupported by any cited authority, however, but also fails to account

for a number of factors. First, any late-joining MDL DAPs will have the benefit of all of the discovery served by their co-plaintiffs into what must be substantially similar claims in order to be transferred into the MDL. Second, potential MDL DAPs have already had to determine whether to opt out of the settlement between the Direct Purchaser Plaintiffs and JBS (Dkt. 631 at 5), which received final approval on July 26, 2021. (Dkt. 838). Third, the deadline that Defendants propose will be on the public docket in this case, which is related to the case from which those DAPs opted out, providing adequate notice.

The Court need not permit indefinitely "protracted discovery, the bane of modern litigation." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) (citation omitted). Future MDL DAPs are on notice of their claims and the discovery limits in this case. If they want to sleep on their rights, that is their prerogative. But they should not be allowed to upset the case schedule if they choose to do so.

## VII.   <u>Testifying Experts and Summary Judgment Motions</u>

The current Pretrial Scheduling Order provides a schedule for merits experts disclosures and discovery that is not triggered until after a decision on class certification and then a decision by the United States Court of Appeals for the Eighth Circuit on a Rule 23(f) Petition and a final decision on any eventual appeal of a class certification ruling. Dkt. 658 at 16. The current Pretrial Scheduling Order also does not set any deadline for dispositive motions, and instead instructs the parties in the class cases to "contact the Court within 14 days after a class-certification ruling becomes final to schedule a status conference to discuss deadlines for dispositive motions and a trial-ready date." *Id.* at 17.

The parties jointly consent to including in the case management order applicable to

21

the *MDL DAP Cases* a deadline by which the parties in the *MDL DAP Cases* must "meet and confer and present to the Court within 90 days of the fact discovery completion deadline a proposed schedule for expert disclosures and discovery, and for summary judgment motions, without prejudice to any party's ability to argue that a separate schedule is premature and/or that the schedule should track that of other cases consolidated into Case No. 18-1776." *See* Exhibit A, Section IV.

Dated: December 10, 2021                    Respectfully submitted,

                                            */s/ Michael S. Mitchell*
                                            Scott E. Gant
                                            Michael S. Mitchell
                                            Sarah L. Jones
                                            **BOIES SCHILLER FLEXNER LLP**
                                            1401 New York Ave., NW
                                            Washington, DC 20005
                                            Tel: 202-237-2727
                                            Fax: 202-237-6131
                                            sgant@bsfllp.com
                                            mmitchell@bsfllp.com
                                            sjones@bsfllp.com

                                            Colleen Harrison
                                            **BOIES SCHILLER FLEXNER LLP**
                                            333 Main Street
                                            Armonk, NY 10504
                                            Tel: 914-749-8204
                                            Fax: 914-749-8300
                                            charrison@bsfllp.com

                                            *Counsel for Plaintiffs Sysco Corporation and
                                            Amory Investments LLC*

                                            */s/ Robert N. Kaplan*
                                            Robert N. Kaplan
                                            Matthew P. McCahill
                                            Jason A. Uris
                                            **KAPLAN FOX & KILSHEIMER, LLP**
                                            850 Third Avenue, 14th Floor
                                            New York, New York 10022
                                            Telephone: (212) 687-1980
                                            Email: rkaplan@kaplanfox.com
                                            Email: mmccahill@kaplanfox.com
                                            Email: juris@kaplanfox.com

*/s/ Eric R. Lifvendahl*
Eric R. Lifvendahl
Ryan F. Manion
**L&G LAW GROUP, LLP**
175 W. Jackson Blvd., Suite 950
Chicago, Illinois 60604
Telephone: (312) 364-2500
Email: elifvendahl@lgcounsel.com
Email: rmanion@lgcounsel.com

*/s/ Richard L. Coffman*
Richard L. Coffman
**THE COFFMAN LAW FIRM**
3355 W. Alabama St., Suite 240
Houston, Texas 77098
Telephone: (713) 528-6700
Email: rcoffman@coffmanlawfirm.com

*/s/ Bernard D. Marcus*
Bernard D. Marcus
Moira Cain-Mannix
Brian C. Hill
Rachel A. Beckman
**MARCUS & SHAPIRA LLP**
One Oxford Center, 35th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 471-3490
Email: marcus@marcus-shapira.com
Email: cain-mannix@marcus-shapira.com
Email: hill@marcus-shapira.com
Email: beckman@marcus-shapira.com

*Counsel for MDL DAPs Action Meat
Distributors, Inc., Topco Associates, LLC,
Alex Lee, Inc./Merchants Distributors, LLC,
Associated Food Stores, Inc., Brookshire
Grocery Company, Colorado Boxed Beef Co.,
Certco, Inc., The Golub Corporation,
Nicholas & Co., PFD Enterprises, Inc.,
SpartanNash Company, Springfield Grocer
Company, The Distribution Group d/b/a Van
Eerden Foodservice Co., Troyer Foods, Inc.,
URM Stores, Inc., and Giant Eagle, Inc.*

*/s/ David C. Eddy*
David C. Eddy
Dennis J. Lynch
Travis C. Wheeler
Chase C. Keibler
**NEXSEN PRUET, LLC**
1230 Main Street, Suite 700
Columbia, South Carolina 29201
Telephone: (803) 771-8900
Facsimile: (803) 253-8277
Email: deddy@nexsenpruet.com
Email: dlynch@nexsenpruet.com
Email: twheeler@nexsenpruet.com
Email: ckeibler@nexsenpruet.com

*Counsel for Plaintiffs Conagra Brands, Inc., Nestlé USA, Inc., and Nestlé Purina PetCare Co.*

*/s/ David B. Esau*
David B. Esau
Kristin A. Gore
Garth T. Yearick
**CARLTON FIELDS, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Telephone: (561) 659-7070
Facsimile: (561) 659-7368
Email: gyearick@carltonfields.com
Email: kgore@carltonfields.com
Email:  desau@carltonfields.com

*Counsel for Plaintiffs Cheney Brothers, Inc. and Subway Protein Litigation Corp., as litigation trustee of the Subway® Protein Litigation Trust*

*/s/ Philip J. Iovieno*
Philip J. Iovieno
Nicholas A. Gravante, Jr.
Karen C. Dyer
Lawrence S. Brandman

Jack G. Stern
Gillian Groarke Burns
Mark A. Singer
Elizabeth R. Moore
**CADWALADER, WICKERSHAM & TAFT LLP**
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
E-mail: philip.iovieno@cwt.com
E-mail: nicholas.gravante@cwt.com
E-mail: karen.dyer@cwt.com
E-mail: lawrence.brandman@cwt.com
E-mail: jack.stern@cwt.com
E-mail: gillian.burns@cwt.com
E-mail: mark.singer@cwt.com
E-mail: elizabeth.moore@cwt.com

*Counsel for Plaintiffs Jetro Holdings, LLC and BJ's Wholesale Club, Inc. and Co-Counsel for Plaintiffs Kraft Heinz Foods Company; Winn-Dixie Stores, Inc.; and Bi-Lo Holdings, LLC*

Dated: December 10, 2021

Respectfully submitted,

By: */s/  Tiffany Rider Rohrbaugh*
Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
Lindsey Strang Aberg (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
radcox@axinn.com
trider@axinn.com
lstrang@axinn.com

Jarod Taylor (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8109
jtaylor@axinn.com

Kail Jethmalani (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200
kjethmalani@axinn.com

David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

***Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.***

/s/ Mark L. Johnson
Mark L. Johnson (#0345520)
Davida S. McGhee (#0400175)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
vmccalmont@greeneespel.com

Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com

**Counsel for Clemens Food Group, LLC
and The Clemens Family Corporation**

/s/ Richard A. Duncan
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
FAEGRE DRINKER BIDDLE & REATH
LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com
bryan.washburn@faegredrinker.com

**Counsel for Hormel Foods Corporation
and Hormel Foods, LLC**

/s/ *Peter H. Walsh*

Peter H. Walsh (#0388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
(612) 402-3000
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

**Counsel for Agri Stats, Inc.**

/s/ *Donald G. Heeman*

Donald G. Heeman (#0286023)
Jessica J. Nelson (#0347358)
Randi J. Winter (#0391354)
SPENCER FANE LLP
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402-4206
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
David B. Adler (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
davidadler@quinnemanuel.com

**Counsel for JBS USA Food Company**

/s/ William L. Greene
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
Jon M. Woodruff (#0399453)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
jon.woodruff@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

**Counsel for Seaboard Foods LLC and
Seaboard Corporation**

/s/ John A. Cotter
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN &CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-6912
(214) 698-3370
brobison@gibsondunn.com

**Counsel for Smithfield Foods, Inc.**

*/s/ Christopher A. Smith*
Aaron Chapin (#06292540)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
aaron.chapin@huschblackwell.com

Marnie Jensen (*pro hac vice*)
Ryann Glenn (*pro hac vice*)
Kamron Hasan (*pro hac vice*)
Sierra Faler (*pro hac vice*)
HUSCH BLACKWELL LLP
13330 California St., Suite 200
Omaha, NE 68154
(402) 964-5000
marnie.jensen@huschblackwell.com
ryann.glenn@huschblackwell.com
kamron.hasan@huschblackwell.com
sierra.faler@huschblackwell.com

Christopher A. Smith (*pro hac vice*)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
chris.smith@huschblackwell.com

***Counsel for Triumph Foods, LLC***