```
1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
2
     ------------------------------------------------------------
3                                    )
     IN RE PORT ANTITRUST             )   File No. 18-cv-1776
4    LITIGATION                       )            (JRT/HB)
                                      )
5    This Document Relates to:        )
                                      )   St. Paul, Minnesota
6    Direct Action Plaintiffs         )   Courtroom 7C
                                      )   December 17, 2021
7                                     )   Via Video Conference
                                      )   2:49 p.m.
8    ------------------------------------------------------------
9

10

11            BEFORE THE HONORABLE HILDY BOWBEER
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
              (INFORMAL DISPUTE RESOLUTION CONFERENCE)
12

13

14

15

16

17

18

19

20
         Proceedings recorded by mechanical stenography;
21   transcript produced by computer.

22

23

24

25
```

```
 1     APPEARANCES:
       For MDL Direct Action        Boies Schiller Flexner, LLP
 2     Plaintiffs:                  Michael S. Mitchell, Esq.
                                    1401 New York Avenue, NW
 3                                  Washington, DC 20005

 4                                  Nexsen Pruet, LLC
                                    David Eddy, Esq.
 5                                  1230 Main Street, Suite 700
                                    Columbia, South Carolina 29201
 6
       For Direct Purchaser         Lockridge Grindal Nauen P.L.L.P.
 7     Plaintiffs:                  Brian Clark, Esq.
                                    100 Washington Avenue South
 8                                  Suite 2200
                                    Minneapolis, MN 554001
 9
       For Commercial and          Cuneo Gilbert & LaDuca, LLP
10     Institutional Indirect      Alec Blaine Finley, Esq.
       Purchaser Plaintiffs:       4725 Wisconsin Avenue NW
11                                  Suite 200
                                    Washington, DC 20016
12
       For Consumer Indirect        Gustafson Gluek, PLLC
13     Purchaser Plaintiffs:        Michelle J. Looby, Esq.
                                    120 South 6th Street
14                                  Suite 2600
                                    Minneapolis, MN 55402
15
                                    Hagens Berman Sobol Shapiro LLP
16                                  Shana Scarlett, Esq.
                                    715 Hearst Avenue
17                                  Suite 202
                                    Berkeley, CA 94710
18
       For Defendant Hormel:        Faegre Drinker Biddle & Reath
19                                  LLP
                                    Craig S. Coleman, Esq.
20                                  90 South 7th Street
                                    Suite 2200
21                                  Minneapolis, MN 55402

22     For Defendant Seaboard       Stinson Leonard
       Foods:                       Jaclyn Nicci Warr, Esq.
23                                  7700 Forsyth
                                    Suite 1100
24                                  St. Louis, MO 63105

25
```

```
 1      For Defendant                 Gibson, Dunn & Crutcher, LLP
        Smithfield Foods, Inc.:       Brian Edward Robison, Esq.
 2                                    2001 Ross Avenue
                                      Suite 2100
 3                                    Dallas, TX 75201

 4      For Defendant Triumph         Husch Blackwell
        Foods:                        Tessa K. Jacob, Esq.
 5                                    4801 Main Street
                                      Suite 1000
 6                                    Kansas City, MO 64112

 7      For Defendant Tyson           Axinn Veltrop & Harkrider, LLP
        Foods:                        Jarod Taylor, Esq.
 8                                    90 State House Square
                                      Hartford, CT 06103
 9
        For Defendant JBS USA         Spencer Fane LLP
10      Food Co.:                     Donald Heeman, Esq.
                                      100 South Fifth Street
11                                    Suite 2500
                                      Minneapolis, MN 55402
12
                                      Quinn Emanuel Urquhart &
13                                    Sullivan, LLP
                                      Richard Thomas Vagas, Esq.
14                                    51 Madison Avenue
                                      Suite 22nd Floor
15                                    New York NY 10010

16

17      For Clemens Foods            Kirkland & Ellis
        Group, LLC:                  Vanessa Barsanti, Esq.
18                                   300 N. LaSalle
                                     Chicago, IL 60654
19
        Court Reporter:              Lynne M. Krenz, RMR, CRR, CRC
20                                   Suite 146
                                     316 North Robert Street
21                                   St. Paul, Minnesota 55101

22

23

24

25
```

1                    **P R O C E E D I N G S**

2                      **IN OPEN COURT**

3           THE COURT:  This is the United States District

4    Court for the District of Minnesota.

5           We are convened by zoom this afternoon for an

6    informal dispute resolution conference in the matter of

7    18-cv-1776, the In Re Pork Antitrust Litigation.

8           Specifically, this IDR is based on letters that

9    were submitted on behalf of the MDL direct action plaintiffs

10   at Docket Number 1022 and by the defendants in the -- in

11   those direct actions.  Their letter was submitted at Docket

12   Number 1035.

13          The specific issue here has to do with search

14   terms and the development and negotiation of search terms.

15          What I'd like to do first is just identify who is

16   in attendance that wants their appearance noted for this

17   particular hearing.

18          And I will simply go through with in no particular

19   order the names that I see on the screen, although I will

20   note particularly the ones that I understand are going to be

21   speaking to the particular issue raised by the IDR.

22          So, first, I see on screen Mr. Mitchell, who I

23   know is going to be speaking on behalf of the MDL direct

24   action plaintiffs.  Is that correct, sir?

25          MR. MITCHELL:  That is correct, Your Honor.  Thank

1      you.

2              THE COURT:  All right.  And I see Jarod Taylor who

3      I understand is going to be speaking on behalf of all

4      defendants.  Is that correct?

5              MR. TAYLOR:  That's correct.

6              THE COURT:  All right.

7              And then in addition, and in no particular order

8      but we will assign you to your appropriate bucket when we do

9      the minutes for this, I see Nicci Warr.  I see Brian Clark.

10     Blaine Finley, Brian Robinson, Tessa Jacob, Don Heeman,

11     Richard Vagas, Michelle Looby, Shana Scarlett, David Eddy,

12     Craig Coleman and Vanessa Barsanti.

13             Let me ask if there's anyone else who specifically

14     wanted their appearance noted for this IDR proceeding whose

15     name I did not call?  Going once.  Going twice.

16             All right.

17             So just to kind of level set so everybody

18     understands the nature of this proceeding this is, as I

19     said, is an IDR or informal dispute resolution proceeding,

20     it has been presented to me on the basis of letters rather

21     than the kinds of formal briefs that would go with formal

22     motion practice under Local Rule 7.1B.

23             My understanding is that the parties to this

24     particular dispute have agreed to submit it through the IDR

25     process.  And one of the -- part of that agreement is that

1    you going to live with the outcome.  In other words, because

2    of the informality of the process parties who agree to

3    engage in IDR are agreeing that they will live with my

4    result regardless of whether they are satisfied or

5    disappointed with it.

6              So I just want to make sure everybody understands

7    that even though we are on the record for this IDR, which is

8    not always my practice, but even though we are on the

9    record -- yes, Ms. Krenz.

10             (Court Reporter interrupted.)

11             THE COURT:  Good reminder.  If you are on the

12   phone, please make sure your device is muted.

13             So as I said, that even though we're on the record

14   for this proceeding the part of the -- the tradeoff for the

15   IDR process is that the parties are agreeing to live with

16   the decision that I make, which I will be making on this --

17   as a part of this zoom meeting.

18             So any question about that?  Mr. Mitchell?

19             MR. MITCHELL:  No, Your Honor.  Thank you.

20             THE COURT:  Mr. Taylor?

21             MR. TAYLOR:  No, Your Honor.

22             THE COURT:  All right.  So I have read the

23   parties' submissions.  And let me pull up my notes here.

24   Just a moment, I've got to switch my notes to the correct

25   set.  Hold on.  All right.  Okay.  Very well.

1           So I understand the fundamentals, but let me give

2       each of you a chance to give me an overview of your position

3       to kick us off and then I will have some questions for each

4       of you as well.

5           So, Mr. Mitchell, I think you wrote the first

6       letters so you get the first say.

7           MR. MITCHELL:  Yes.  Thank you, Your Honor for

8       indulging us on this Friday afternoon to talk about search

9       terms.

10          I think the crux of the dispute before you is

11      whether the MDL direct action plaintiffs are entitled to one

12      -- at least one fair shot at their own search terms in the

13      case.

14          The defendants have taken the position that we

15      should be -- we as a group, the MDL direct action

16      plaintiffs, and I'll receive to them as just the DAPs for

17      shorthand, should be or are limited to the search terms that

18      the defendants agreed to with the class plaintiffs.  And

19      that they, the defendants, need not consider any additional

20      terms beyond those that are related to issues unique to the

21      the DAP complaints.

22          And I think that as -- and there are just a few

23      issues that I'd like to address, you know, in my

24      presentation.

25          The first is as a matter of principle and law we

1    do not believe that the defendants are correct that the DAPs

2    should be forced to live with whatever deal the defendants

3    struck with the classes.  The defendants in their letter

4    cite no case and we are aware of none that says that direct

5    action plaintiffs or opt-out plaintiffs like the DAPs here

6    are, are limited only to discovery that is unique to their

7    complaints in this context.

8           The DAPs, as you may well know, including one of

9    the clients that I represent, Sysco, are some of the largest

10   pork buyers in the United States.  We filed our own cases

11   all over the country.  And but for the fact that we were

12   transferred by the JPML to this Court and consolidated by

13   Judge Tunheim with this case, we believe we would be

14   entitled to our own discovery, including the use -- the use

15   of search terms.

16          I think that -- that said, we, of course,

17   understand, you know -- the issue being are we entitled to

18   our own -- to at least one shot on search terms.  But we do

19   understand that we will most certainly be entitled to only

20   one shot and we also understand that that our requests for

21   search terms are subject to the principles of relevance and

22   proportionality and in light of what has occurred in this

23   case to date.

24          We understand that our requests for additional

25   search terms must be reasonable.  And it is our view that we

1    have very much tried to do this in the course of the meet

2    and confers over the terms at issue and in our view the

3    defendants have not.

4            And what I mean by that is the defendants have not

5    offered any specific objections to any of the terms at issue

6    nor have they done what we believe is required by the law to

7    substantiate the burden objection that they have made.

8            First, just a few points as to relevance.  As I

9    said, the defendants -- and we say in our letter, the

10   defendants in our view have not meaningfully disputed the

11   relevance of any of the terms at issue.

12           We have invited them to do so multiple times

13   including by sending a spreadsheet that had a column for

14   them to identify any objections that they had to the terms

15   and they declined to take us up on that invitation.

16           The terms at issue really fall into two groups.

17           Most of the terms are terms that at least one or

18   more of the defendants have agreed to use but other

19   defendants have not for reasons that are unknown to us.  We

20   have tried to do our best to sift through the correspondence

21   that we received between the defendants and the classes, but

22   for reasons that are unknown to us and that have not been

23   explained to us by the defendants, we are merely asking for

24   with respect to most of the terms consistency across the

25   defendants or at a minimum, which we have not received, an

1    explanation as to what the reason is for the discrepancy

2    across the defendants.

3           The other category of terms in dispute are

4    entirely new terms, and I believe there are only eighteen of

5    those, so these would be entirely new terms that for reasons

6    also unknown to us, either the classes did not ask for or

7    dropped at some point in the negotiations.  And we believe

8    that those terms are relevant.  And we have explained in our

9    spreadsheet provided to the defendants and to the Court why

10   we believe that to be the case and the defendants have not

11   responded in any meaningful way.  Certainly not in any way

12   specific to each term, which we think the defendants should

13   do.

14          The next, I think, part of this analysis of, you

15   know, is what we are asking for proportional?  And is

16   defendants' burden objection.  And as we stated in our

17   letter, and I don't want to belabor it too much, I think the

18   law is clear in this district that they have to do more than

19   what they have done to establish and substantiate a burden

20   objection.

21          At a minimum, they should have provided us a

22   search term hit report providing the number of hits on each

23   term.  We invited them to do so multiple times but, again,

24   they declined.

25          I think that is not only inconsistent with the law

1   in this district but also the Sedona Principles on

2   cooperation, which we know are attached to your practice

3   pointers, which call for an urge transparency in the

4   negotiations for ESI and also the Sedona Principles on

5   proportionality, which make very clear that when a party

6   lodges a burden objection to search terms they should or

7   must provide a hit report.  Because without that kind of

8   information neither the party requesting the terms nor the

9   court can assess what the burden is with respect to

10   particular terms.

11          It's unclear to us why the defendants have refused

12   or been so reluctant to provide that information to us.  We

13   do not think it would be hard to generate.  I suspect,

14   although I don't know, that the defendants may have, in

15   fact, already generated search term hit reports on the terms

16   we have requested.

17          But without that information we are left to merely

18   speculate and I think you are left to merely speculate what

19   the burden is with respect to these search terms at issue

20   and, therefore, cannot make any determination about what is

21   proportional or not with respect to our terms.

22          There's just one other argument that the

23   defendants made in their letter which obviously we did not

24   have to reply to which is, I think, based on unfairness.

25   They make the point that if the Court were to accept our

1   position as to new terms by the MDL direct action plaintiffs

2   they and the Court will be confronted with this every time a

3   new direct action plaintiff or a new wave of direct action

4   plaintiff cases is filed.  And I think that that's wrong for

5   several reasons.

6          The existing DAPs have coordinated very closely on

7   the search terms that are in dispute.  And there is

8   currently no reason to believe in our view that there will

9   be subsequent waves of additional DAPs who are, and this is

10  the key point, unlikely to accept what the current DAPs are

11  seeking.  Any new DAPs with existing counsel, I think it's

12  safe to assume, will not be seeking additional terms.

13         Exhibit B to the defendants' letter I think makes

14  that clear.  The e-mail attached as Exhibit B to their

15  letter is an e-mail from counsel for existing DAPs telling

16  the defendants that there may be additional cases and

17  indicating that the views they take with respect to those

18  new plaintiffs and new cases will be consistent with or

19  intend to be consistent with the positions taken by their

20  current DAPs, who are a part of this dispute before the

21  Court now.

22         There had been no new DAP counsel that has entered

23  this case in months.  Even if there were, I think it's safe

24  to assume that those counsel are very likely to have

25  participated in the *Broilers* case and including with the

1    counsel in this case, and will understand that the DAP group

2    should have and had only one shot at additional terms.  And

3    they -- the burden will be very high for any new additional

4    DAPs so seek new terms beyond those that we are seeking now.

5           So to conclude I think all we're asking for here

6    is at least one fair shot for some search terms that we

7    believe are relevant and important to the case.  And in the

8    absence of any substantiation of defendants' burden

9    objection, their objection should be overruled and those

10   terms -- and they should be instructed to provide those

11   terms.

12          THE COURT:  Let me ask --

13          MR. MITCHELL:  -- those terms.

14          THE COURT:  Let me ask you some questions and then

15   I'll give Mr. Taylor a chance to speak.

16          First, have you looked at what you've already

17   gotten?  And what can you tell me, if anything, about what

18   gaps you've identified in what you've received?

19          And a part of what I'm struggling with here is

20   that, you know, search terms are a means to an end.  Search

21   terms are not in and of themselves clearly relevant or not

22   relevant, but they're designed to try to get at relevant

23   information but they tend to pull up a whole bunch of stuff

24   that isn't along with what may turn out to be relevant.

25          So I'm -- we can't pretend that a whole lot of

1    work hasn't already been done in this case and a whole lot

2    of documents already provided in response to requests by

3    excellent experienced plaintiffs' counsel for the class

4    plaintiffs.

5         So what -- what can you tell me about the analysis

6    of -- you've made of what you've got already and why you

7    believe there are gaps, you know, sub -- yeah, gaps in that

8    production?

9         MR. MITCHELL:  Sure.

10        So first, I think it is obviously always difficult

11   to access in the abstract what you are missing.  We don't

12   know what documents are missing from the documents that have

13   been produced.

14        Now that said, we have made an effort to take the

15   terms that are at issue and apply them to the existing

16   productions to see what those terms might yield.  And I can

17   take you through a few examples if it would be helpful.

18        THE COURT:  Mm-hmm.

19        MR. MITCHELL:  For example, Term Number 11 in our

20   spreadsheet, Rabo, relates to Rabobank.  Now that is a term

21   that all defendants, except Hormel, have agreed to run or

22   some version of it.  And we are simply asking now for Hormel

23   to run that term given that the other defendants have agreed

24   to do so it.

25        And when we run that term across the defendants'

1    productions we find that there are relevant documents,

2    responsive and relevant documents.

3          Now, can I describe for you specific documents

4    that appear to be missing based on that term or other terms

5    that we are proposing to provide?  Not at this point.  We

6    are still obviously making our way through the many

7    documents -- the millions of documents that have been

8    produced.

9          But I will just make one other point on this which

10   is if the terms -- and admittedly there were many that

11   defendants in the classes agreed to, if the terms were as

12   comprehensive, and I think the defendant has suggested broad

13   as they contend, that it stands to reason that it may well

14   be the case that all or most of the responsive documents

15   have already been caught up and that our terms will not

16   meaningfully add to the relevant documents in the case.

17         But, again, without a hit report telling us what

18   our terms yield, it is impossible to know the answer to that

19   question, so.

20         And there are other terms as well.  You know, one

21   of the terms we proposed, Term 77, is a Sysco-specific term

22   that relates to information that was discovered in the

23   *Broilers* case in which we learned there that Sysco had made

24   a request of the defendants for a modification to certain

25   credit terms and that the allegations are in the *Broilers*

1    case, that the defendants, and these are included in public

2    indictments in the case, that defendants as part of the

3    conspiracy there reached agreement as to how to respond to

4    Sysco's request for modification of credit terms.

5            So that is another term where we believe clearly

6    there is a gap in the existing productions and thus

7    justifies the application of that term.

8            So I don't know if -- I hope that answers your

9    question.  I'm happy to provide more detail on additional

10   terms if that would be helpful but I will pause there.

11           THE COURT:  Okay.  All right.  Thank you, Mr.

12   Mitchell.

13           Mr. Taylor, let me hear from you.

14           MR. TAYLOR:  Yes, Your Honor.

15           Opposing counsel started off by stating their view

16   of the case which was that believed the crux was later they

17   were entitled to one fair shot at their own terms.

18           And I believe if I heard and remember correctly,

19   Mr. Mitchell said that they would have gotten that shot but

20   for their centralization and consolidation and transfer to

21   this case.  But the fact is that they were centralized into

22   an MDL.  They were transferred to this case.  And they were

23   recently by Judge Tunheim's order consolidated into the 1776

24   case.

25           So we have to look so the effect and words of that

1  order which guide the consolidation.  That was --

2  consolidation was made over MDL DAP's objection and after

3  briefing and the Court acknowledged, of course, that the

4  allegations were essentially identical between MDL DAPs in

5  the classes, but it also acknowledged that, "Differences

6  between the cases may create individualized discovery and

7  that the Court can accommodate these issues as necessary to

8  ensure each member case is resolved on its own legal

9  theories and merits."

10         That's much different from the Court saying MDL

11  DAPs are entitled to renegotiate an agreement as impactful

12  and that took as long to come to conclusion as it did as the

13  search terms that resulted in production of over 3 million

14  documents in a course of over half a year.

15         Defendants have already offered to discuss and

16  have agreed to terms that they identified as relating to

17  potential differences between the cases, as the Court put

18  it, and we are running those terms, have produced those

19  terms.

20         So to one of the examples that Mr. Mitchell raised

21  relating particularly to Sysco, again, you know, we told MDL

22  -- defendants told MDL DAPs which terms we believed related

23  particularly to the MDL DAPs as opposed to all of the

24  plaintiffs collectively and are willing to negotiate DAP

25  terms.  If that is one more term, I'm sure defendants would

1    be willing to look at it.   But when you look at all of the

2    dozens of other terms it's clear that they go much more

3    broadly than that and without justification.

4          I think you identified -- or Your Honor identified

5    one of the key questions, which is what are the gaps.  I

6    believe MDL DAPs have had defendants' productions since the

7    summer and so by now there has been time to actually create

8    a record.  We don't have documents on this subject, we don't

9    have documents on that subject, and I don't believe MDL DAPs

10   have attempted to do so.

11         I think -- I think Mr. Mitchell is right that we

12   haven't -- we haven't cited a case that is very specific and

13   analogous to the facts here stating expressly that MDL DAPs

14   in a case like this must be limited to prior negotiated

15   terms, but I think that's because of a dearth of the case

16   law not because the principle is wrong.  Because I note that

17   MDL DAPs similarly cite no case holding that they're

18   entitled as a matter of right to negotiate terms that were

19   previously negotiated.

20         I think we are looking -- we all agreed that the

21   Rule 26 proportionality standard that we're all familiar

22   with governs here but with the tweak that it has to be

23   proportional looking at the entire scope of the case, as

24   Your Honor identified that has come before.

25         And, you know, Your Honor took some of the wind

1   out of my sails I think because one of the other points we

2   wanted to highlight was that in fact MDL DAPs were

3   represented as class members a year ago when those

4   negotiations were struck by, compliments to our opposing

5   counsel, able counsel who have zealously prosecuted this

6   case.  We had hundreds of search term strings agreed to for

7   each individual defendant, let alone all of them combined.

8   And Your Honor will recall that we have been here before on

9   motions to compel by plaintiffs, so they did not go easy on

10   us, I'll just -- I'll put it that way.

11          And the burden that we're looking at is

12   substantial.  MDL DAPs have faulted defendants for not

13   providing hit reports, but I don't think it can be the case

14   that every time a new search term or new dozens of search

15   terms are demanded, okay, we go back to the well, now we're

16   doing hit reports, we're negotiating each line item.  I

17   think by this point in the case the threshold is, okay, that

18   months and months of work has been done, is there a

19   particularized cause for new terms?

20          In that case we did the hit report work.  We spent

21   some time doing some tweaks to the terms that were actually

22   specific to DAPs and as I mentioned, we are now producing

23   those, but there is a threshold issue that comes before

24   negotiating on a line-by-line basis with hit reports, 90

25   additional search strings and that is, Why?  What don't you

1   have already?  What allegations do you have particularly

2   unique to your client that are not covered by any of the

3   search terms negotiated with plaintiffs?

4          Sure there are -- some of the -- defendants do not

5   concede that a showing of relevance has been made as to many

6   of these terms.  For example, FBI is a term.  Civil

7   investigative demand is a term.  Not limited to pork, not

8   limited to the issues in this case, there are -- there are

9   other examples.  But even -- even so, even if all of the

10  terms were relevant, there's always another term.  You can't

11  exhaust all the words in the English language.

12         We have hundreds of terms and now there has to be

13  some showing of why they're not sufficient and that has not

14  been made.

15         THE COURT:  Let me ask this.  In the negotiations

16  with the -- with counsel for the class plaintiffs, there was

17  an initial period of negotiation that wound up in agreement

18  on a defendant by defendant, or at least

19  defendant-family-by-defendant-family basis for -- it sounds

20  like several hundred search strings.

21         And then after those were run and documents were

22  produced, there was a process by which requests were made

23  for supplemental searches.

24         Can you tell me a little bit about that and sort

25  of what the bar was and what the process was for coming back

1    to request a supplemental search and how that -- how that

2    dynamic went?

3            MR. TAYLOR:  Yes, I can, Your Honor.  One moment,

4    please.

5            So Your Honor will recall that there were priority

6    custodians negotiated with class plaintiffs.  The hot

7    custodians that counsel really wanted to see upfront, and we

8    substantially produced their productions, I believe, in

9    early April of this year.

10           Some months we want by, class plaintiffs had the

11   opportunity to review those.  And I believe all defendants,

12   at least nearly all defendants and certainly Tyson then in

13   June got requests from class plaintiffs for additional

14   search strings.  Again, at least in Tyson's case, those were

15   dozen of search strings and class plaintiffs in their

16   transmittal e-mail represented that those were based on a

17   review of the documents from the priority custodians.

18           We then negotiated another dozens of sets of

19   terms.  And for Tyson we came to conclusion on those terms

20   in early September and only shortly after that though, a

21   couple of weeks, we subsequentially completed production

22   because for the most part we were able to come to some

23   conclusion in July or August and went ahead and began the

24   review process and the production process while we waited

25   for those final kinks to be worked out.

1           So in Defendants' Exhibit A, as an example of the

2    types of search terms agreed to with class plaintiffs, I

3    believe Row Number 317 is the cutoff or the original terms

4    negotiate with plaintiffs and the terms after that were

5    negotiated in -- between June and technically September, but

6    full candor it didn't take us really that long to settle on

7    the crux of the terms.

8           THE COURT:  Okay.  All right.  All right.  Thank

9    you.  Let me see if I had any other questions.

10          There in your letter you did cite by way of

11   example that, as I recall, that the Smithfield terms that

12   were requested by the direct action plaintiffs had generated

13   800,000 or a million additional documents.

14          So at least in that respect somebody ran a hit

15   list?

16          MR. TAYLOR:  Yes, Your Honor.  I think most

17   defendants, I don't know that all, most ran kind of a total

18   hit for all of the terms MDL DAPs were seeking.

19          It's somewhat -- you know, that's part of the

20   complication and the burden here.  It's never easy to

21   negotiate these things.  Because what that doesn't really

22   tell you necessarily is which terms bring in the most terms

23   that are not also brought by other terms.

24          But, I mean, most defendants I think have a

25   general sense of how much it would -- total would have to be

1    reviewed if all of the terms demanded were adopted.  And it

2    varies pretty widely among the defendants, some have a lot,

3    some fewer, none, you know, they're all in the tens of

4    thousands for everyone who was provided -- run the terms and

5    provided them.  So for none of them is it de minimis.

6            THE COURT:  And is that -- and when you're

7    referring to that in the Smithfield examples, specifically,

8    those were -- that number, 800,000, or whatever it was, that

9    was additional documents?  In other words, documents that

10   were -- that were -- that had not been included in any of

11   the productions so far?

12           MR. TAYLOR:  Correct, Your Honor.  Not included in

13   the productions.  So it's any document hitting on those

14   terms then bringing in the attachments or parents, the full

15   family of those documents.

16           THE COURT:  Mm-hmm.

17           MR. TAYLOR:  Not produced --

18           THE COURT:  And then subtracting out what had

19   already been produced.

20           MR. TAYLOR:  Correct.

21           THE COURT:  All right.  Okay.  I think that was

22   the one thing I wanted to make sure I understood.  Thank

23   you, Mr. Taylor.

24           Mr. Mitchell, anything further?

25           MR. MITCHELL:  Just a couple of brief comments.

1          So Mr. Taylor made a comment about what I think

2     that they also described in their letter as generic terms.

3     I think the example he used was Attorney General or FBI.

4     The fact that a few of the terms may be too generic in their

5     view is a claim of overbreadth not relevance that it

6     captures more of the documents than it should.

7          But terms like Attorney Generals, within ten of

8     CID or destroy within five of Re, which were among the terms

9     described as too generic, I don't expect that those terms

10     would yield a significant amount of documents.  It would

11     shock me if that were the case.

12          Which underscores, I think, the need for having a

13     hit report that identifies the number of documents yielded

14     by each of these terms individually.

15          It is my experience that there is -- it would not

16     be possible to run all of these terms at one time.  The

17     systems just don't typically allow that to run.  You

18     couldn't run all 90 of these terms in one search, at least

19     that has been my experience.

20          And it is not extraordinarily burdensome when you

21     receive an excel spreadsheet like this and you have a

22     document repository where the documents collected are

23     sitting to run the terms like we have produced in

24     spreadsheet form and generate a hit count by term.

25          And it seems -- I didn't hear Mr. Taylor say that

1    the defendants have not done that and if they have, I don't

2    see the difficulty or burden in providing that information

3    to the DAPs so that we can assess whether our terms are

4    overly broad or overly burdensome.  Without that information

5    it's impossible for us to assess that and we contend the

6    same is true for you in assessing that.

7              THE COURT:  Let me ask this.  And I sort of early

8    on in this conversation noted that search terms themselves

9    are not relevant or not relevant -- I mean search terms

10   themselves aren't requests for documents, they're not

11   Rule 34 requests, there are ways of getting to it.

12             Have Rule 34 requests been served?

13             MR. MITCHELL:  Yes, they have, Your Honor.

14             THE COURT:  Okay.  And have -- what I'm trying to

15   understand is -- well, have those Rule 34 requests been

16   negotiated?

17             In other words, have you gotten to -- have you

18   come to an understanding about what the metes and bounds

19   will be of the responses to those requests or are those

20   responses -- and I'm forgetting where things stand with in

21   terms of what to do when.

22             Have responses to those requests been served and

23   have you negotiated what the metes and bounds of the

24   responses will be?

25             MR. MITCHELL:  The -- forgive me for not knowing

1     the exact date.  I want to say a few weeks ago we received

2     from each of the defendants written responses and objections

3     to the direct action plaintiffs RFPs.  We are in the process

4     of reviewing those.

5            I will say that there appear to be substantial

6     differences among the defendants as to the responses.

7            So assessing who has agreed to provide documents

8     in response to which request is the process that we are

9     undertaking right now to identify any issues that we may

10    have with those responses so that we can bring them to the

11    attention of the defendants.  We are very much in the middle

12    of that process right now.

13           THE COURT:  Okay.  All right.  All right.

14           Let me take a couple of minutes off screen to

15    think about my ruling here.  And I will be back on in just a

16    moment.  I will stop the recording in the meantime.

17           (Recess at 3:28 p.m.)

18           (Reconvene at 3:50 p.m.)

19           THE COURT:  All right.  Thank you for your

20    patience.  It looks like we may have had some attrition

21    among the attendees, but we are back on the record in

22    connection with the IDR proceeding with regard to the

23    dispute between the MDL direct action plaintiffs and the

24    defendants about search terms.

25           I am going to deny the MDL DAPs' request for an

1    order that defendants run their 90 -- I think it was 90,

2    proposed global terms.

3          Unlike the cases that were cited -- the case law

4    that was cited in the plaintiffs letter we're not writing on

5    a blank slate here and the defendants have already responded

6    to discovery requests that involved tremendous overlap in

7    the issues and have produced millions of documents.

8          The search strategy that led to that production

9    was negotiated over a significant period of time with highly

10   capable class counsel who have been living with this case

11   since 2018.  So this isn't a situation in which lawyers who

12   don't know which end is up in antitrust litigation were

13   somehow overmatched or overborne in negotiating search terms

14   with defense counsel.

15         And so I think that does shift the proportionality

16   analysis in some significant ways.

17         Proportionality requires that we look at the

18   incremental value of the additional discovery sought.  And

19   so in this scenario I don't agree with -- Mr. Mitchell, with

20   your -- with the position that you're entitled to your one

21   free shot on search terms.  I think that because of the

22   consolidation of the cases that simply isn't true here.  The

23   consolidation did change that calculus and changed that

24   paradigm.

25         And the case law, of course, is plentiful that one

1   side isn't entitled to have the other side search for every

2   single responsive document in any event.

3          So I do think in this instance that defendants are

4   correct that the burden starts with the direct action

5   plaintiffs to assess what you have already and to be able to

6   explain to the defendants with some specificity how what you

7   have is deficient and why that gap -- like why the documents

8   that you hope would fill that gap would have incremental

9   value that is important to the resolution of issues in the

10  case.

11         As for burden, you're absolutely, right, Mr.

12  Mitchell, that ordinarily, and I'm not ruling that out down

13  the line as you will see, but ordinarily defendants do have

14  an obligation to show the burden part of the proportionality

15  analysis.  But, again, we're not writing on a blank slate

16  here and it does take into account about what has already

17  been done.

18         And so I think particularly in a case where

19  several hundred search terms have already been run and

20  several million documents already produced, I don't think

21  that defendants have to come up with search term hit lists

22  for me to conclude that running another 90 terms, many of

23  which do contain some very generic language and are

24  definitely overlapping with what's already been done, I

25  don't need a bunch of hit lists to tell me that that creates

1    a significant burden and that you haven't shown me enough to

2    conclude that the incremental value of those searches

3    justifies that burden.

4            But before the defendants go off, you know,

5    irrationally exuberant, there is a sliding scale here and I

6    am not deciding at this point that it is required that the

7    additional value you show or the gap you identify has to be

8    unique to the particular DAP or to the -- or the unique

9    position of the DAPs in this case.

10           I think that that can -- I think that that is a

11   relevant factor but I'm not saying that's the sine qua non

12   of you being able to ask for more.

13           So, for example, if after you review the documents

14   you have you can show that there's a limited number of

15   precise additional search terms that was needed to capture

16   something that those other guys missed, even if it wasn't

17   necessarily tied to who you are as a plaintiff compared to

18   who they are as class plaintiffs.  I am not -- I'm not

19   ruling that out here.  I'm not saying that you can only get

20   what's unique to your role as DAPs.

21           If you could show that there was something that

22   was missed, whether it was unique to your role as DAPs or

23   just by saying there's a gap here and these search terms

24   didn't cover that gap and here's why that gap's important,

25   then the burden would shift to the defendants to run that

1    hit list for the search term or terms you're proposing and

2    engage in that proportionality analysis.  Yes.  I see what

3    you're going after, here's how burdensome it would be.

4    Let's talk about a different way of getting there.

5        So I think there are scenarios under which the

6    burden can be triggered on the defendants to show burden but

7    the -- I am rejecting the sort of baseline premise that as

8    DAPs you get your free shot at a bunch of search terms where

9    it really looks like overwhelmingly the issues have been

10   covered by the work that was already done.

11       Another scenario, and this is why I asked about

12   Rule 34 requests, certainly if after you negotiate with the

13   defendants the metes and bounds of their responses to

14   Rule 34 requests, and you can show why the search terms that

15   were run weren't adequate to address those Rule 34 requests.

16   That's something you can raise.

17       And, again, the defendants may need to -- may then

18   need to engage with you on the burden of filling that -- of

19   filling that gap.

20       Defendants, and you quoted the Sedona Principles,

21   of course, those are near and dear to my heart, defendants

22   have a responsibility to and are often, as Sedona notes, are

23   in the best position to come up with a search strategy that

24   will fulfill their obligations but that also puts an

25   obligation on them so they, too, will need to be confident

1      that whatever the search terms were run they were reasonably

2      calculated to get to what they promised to give you.  So

3      that could also trigger a further conversation about some

4      specific terms.

5            But I'm -- but right now I don't believe,

6      particularly with a list of 90, I'm not satisfied that you

7      have shown what you need to show Mr. Mitchell to shift the

8      burden to the defendants to quantify a burden for doing a

9      bunch of additional work that they've got good reason to

10     believe has largely been done in this case.

11           So that's where I come out on this IDR.  I

12     recognize it may kick the can down the road, but hopefully

13     for a much more precise conversation and ideally for one

14     that could be worked out through a meet and confer process

15     and wouldn't -- and wouldn't require further intervention.

16           Mr. Mitchell, any questions at this point?

17           MR. MITCHELL:  No questions.  But thank you for

18     that guidance going forward.

19           THE COURT:  All right.  Mr. Taylor, any questions

20     about anything I've said?

21           MR. TAYLOR:  Nothing further from defendants, Your

22     Honor.  Thank you.

23           THE COURT:  All right.  Well, thank you all.

24     Appreciate your patience with the work we did this

25     afternoon.

1              And as always, a thanks to our court reporter for

2      her seeing us all the way through the process.

3              We're adjourned.

4              (Court adjourned at 4:00 p.m.)

5                          *           *            *

6

7

8                   **REPORTER'S CERTIFICATE VIDEO CONFERENCE**

9

10

11             I certify the foregoing pages of typewritten
       material constitute a full, true and correct transcript of
       the video conference hearing, as they purport to contain, of
12     the proceedings reported by me at the time and place
       hereinbefore mentioned.

13

14                   /s/Lynne M. Krenz
                     Lynne M. Krenz, RMR, CRR, CRC
15

16

17

18

19

20

21

22

23

24

25