# UNITED STATES DISTRICT COURT
# DISTRICT COURT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>THE DIRECT PURCHASER PLAINTIFF ACTION | Case No. 0:18-cv-01776 (JRT-HB)<br><br>**DECLARATION OF W. JOSEPH BRUCKNER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT BETWEEN DIRECT PURCHASER PLAINTIFFS AND SMITHFIELD FOODS, INC.** |

I, W. Joseph Bruckner, declare and state:

1.      I am a partner of the law firm of Lockridge Grindal Nauen P.L.L.P. This Court has appointed me and my firm, together with Pearson, Simon & Warshaw, LLP, as Interim Co-Lead Counsel for Direct Purchaser Plaintiffs and the Direct Purchaser Plaintiff Class ("DPPs") in this litigation (*see* ECF No. 149, "Interim Co-Lead Counsel"), and also Class Counsel for the Smithfield Settlement (*see* ECF No. 870).

2.      I submit this Declaration in support of the concurrently filed Motion For Final Approval of the Class Action Settlement Between Direct Purchaser Plaintiffs and Smithfield.

3.      On behalf of DPPs, my firm, my co-counsel, and I personally conducted settlement negotiations with counsel for Smithfield over a period of many months on many occasions.

4.      DPPs thoroughly investigated the facts underlying DPPs' claims prior to reaching the Settlement and were well informed by the time the parties agreed to settle. During the litigation, Interim Co-Lead Counsel researched, analyzed, and evaluated many contested legal and factual issues. Based on that analysis, and the information obtained from discovery and cooperation, Interim Co-Lead Counsel were well informed of the facts and the benefits, risks, and consequences of the proposed settlement with Smithfield. Interim Co-Lead Counsel thoroughly evaluated the relative strengths and weaknesses of our respective litigation positions in relation to this settlement.

5.      After the initial complaint was filed, DPPs continued their factual investigation into the conspiracy alleged in their complaint, and once the Court largely

denied Defendants' motions to dismiss Plaintiffs' complaints, DPPs have commenced discovery, including depositions.

6. DPPs' discussions with counsel for Smithfield commenced after the Court largely denied Defendants' second motion to dismiss on October 16, 2020 (ECF Nos. 519, 520). During the subsequent eight months, the parties engaged in extensive arm's-length negotiations, which ultimately resulted in the Settlement. The hard-fought negotiations were kept confidential over eight months, and often broke down as the parties vigorously litigated the case. The negotiations necessitated numerous conferences as well as written exchanges between counsel during which they negotiated the material terms of the settlement, as well as the final Settlement Agreement. In engaging in these settlement discussions, counsel for DPPs were focused on obtaining the best possible result for the DPP class. The parties ultimately executed the Settlement Agreement on June 29, 2021.

7. The resulting settlement negotiations with Smithfield were at arm's length and were hard fought at all times. The Settlement was the product of intensive settlement negotiations conducted over a period of many months and included several rounds of give-and-take between Interim Co-Lead Counsel and Smithfield's counsel. The parties debated many issues, and negotiated many terms of the settlement, including the amount of payment, the timing of payment, potential conditions on payment, the effect of opt-outs on any settlement, and potential cooperation against other Defendants. Throughout this process, Smithfield has been represented by experienced, sophisticated counsel.

8. There was no collusion or preferential treatment at any time during these negotiations. To the contrary, the negotiations were contentious, hard fought, and fully

967361.3                                   2

informed. DPPs sought to obtain the greatest monetary benefit possible from Smithfield. Furthermore, there was no discussion or agreement at any time regarding the amount of attorneys' fees Interim Co-Lead Counsel would ask the Court to award in this case.

9. In the Settlement Agreement, Smithfield committed to pay $83 million to the settlement fund, and has done so. The Settlement Agreement contains a reduction mechanism keyed to the amount of affected commerce represented by class members who elected to opt out of the Settlement Class and the Smithfield Settlement. Those opt-outs resulted in a reduction of the $83 million Settlement amount. (*See* Settlement Agreement ¶ 20.) The agreed-upon opt-out threshold is contained in a confidential side letter agreement between DPPs and Smithfield as referenced in the Settlement Agreement (¶ 20). DPPs will provide the side letter to the Court for *in camera* review upon request. After completion of the settlement administration process, the parties and the class administrator calculated the amount of affected commerce represented by those opt-outs, including opt-outs based on partial assignments. The Settlement is subject to a $5,635,700 reduction based on the opt-outs received during the settlement administration process. Thus, the total amount paid by Smithfield equals $77,364,300. Combined with DPPs' earlier settlement with the JBS Defendants, this brings the total settlements to date to $101,864,300 from just two of the Defendants in the case.

10. Smithfield also agreed to provide specified cooperation in the DPPs' continued prosecution of the action against the remaining Defendants. This cooperation includes providing DPPs with copies of discovery responses, documents, or other information provide to any other plaintiff in the *In re Pork Antitrust Litigation* or any

government entity making substantially similar allegations regarding competition in the Pork industry; allowing the DPPs to participate in up to five depositions of Smithfield witnesses; producing structured data as agreed and assisting as necessary in understanding the data; authenticating documents for summary judgment and trial; providing a live witness for testimony at trial on certain topics, as listed in the Settlement Agreement; and allowing DPPs to seek phone records of Smithfield's current and former employees. (*See* Settlement Agreement ¶ 11.) The cooperation aspect of the settlement is significant, because pursuant to the Sherman Act, the remaining Defendants are jointly and severally liable for any damages resulting from Smithfield's Pork sales to DPPs during the Class Period.

11. Based on Interim Co-Lead Counsel's investigation there are thousands of direct purchasers of Pork products in the United States who are putative members of the Settlement Class. DPPs have enlisted the services of an experienced class action administrator, A.B. Data Ltd., to administer notice to the Class members. As set forth in the Motion and supporting Declaration of Eric Schachter, the Court-approved Notice Plan has been successfully implemented and Class members have been notified of the Settlements.

12. No Class member has objected to the proposed Settlement or to any other aspect of the litigation.

13. I have practiced law since 1983, I have specialized in antitrust class action law since 1988, and I have prosecuted numerous antitrust class actions as lead counsel and in other leadership positions. I have negotiated many settlements during those years. In my

opinion, and in that of my Interim Co-Lead Counsel, the Settlement provides substantial benefits to the Class, and avoids the delay and uncertainty of continuing protracted litigation with Smithfield. The Settlement with Smithfield is fair, reasonable, and adequate, is in the best interests of the Settlement Class members, and should be approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13th day of January, 2022 at Minneapolis, Minnesota.

*/s/ W. Joseph Bruckner*
W. Joseph Bruckner