1               UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
2

3  -------------------------------------------------------------

                        )
4  In Re: Pork Antitrust    )  File No. 18-CV-1776
  Litigation             )  (JRT/HB)
5                       )
                       )  MDL: 21-MD-2998
6                       )  (JRT/HB)
                       )
7                       )  Minneapolis, Minnesota
                       )
8                       )  February 4, 2022
                       )
9                       )  11:11 a.m.
                       )
10  -------------------------------------------------------------

11

12     **BEFORE THE HONORABLE CHIEF JUDGE JOHN R. TUNHEIM**

13        **UNITED STATES DISTRICT COURT JUDGE**

      **(STATUS CONFERENCE VIA ZOOM VIDEO CONFERENCE)**
14

15

16

17

  Court Reporter:
18
             MARIA V. WEINBECK, RMR-FCRR
19            1005 U.S. Courthouse
            300 South Fourth Street
20         Minneapolis, Minnesota 55415
             (612) 664-5109
21

22  Proceedings reported by court reporter; transcript produced
               by computer.
23
         *     *     *     *     *
24

25

1                          **APPEARANCES VIA ZOOM:**

2    For Direct Purchaser      Lockridge Grindal Nauen PLLP
     Plaintiffs:               BRIAN D. CLARK, ESQ.
                               100 Washington Avenue South
3                              Suite 2200
                               Minneapolis, MN 55401
4
     For the Consumer          Gustafson Bluek PLLC
5    Indirect Purchaser        MICHELLE J. LOOBY, ESQ.
     Plaintiffs:               120 South 6th Street
6                              Suite 2600
                               Minneapolis, MN 55402
7
                               Hagens Berman Sobol Shapiro LLP
8                              BREANNA VAN ENGELEN, ESQ.
                               1301 Second Avenue, Suite 2000
9                              Seattle, WA  98101

10   Commercial and            Cuneo Gilbert & LaDuca, LLP
     Institutional Indirect    A. BLAINE FINLEY, ESQ.
11   Purchaser Plaintiffs:     4725 Wisconsin Avenue NW
                               Suite 200
12                             Washington, DC  20016

13                             Barrett Law Group, P.A.
                               SARAH STERLING ALDRIDGE, ESQ.
14                             404 Court Square North
                               P.O. Box 927
15                             Lexington, MS 39095

16   For Plaintiffs in         Hausfeld LLP
     Commonwealth of Puerto    KYLE G. BATES, ESQ.
17   Rico:                     600 Montgomery Street
                               Suite 3200
18                             San Francisco, CA  94111

19   For Plaintiffs:           ALBERTO RODRIGUEZ, ESQ.
                               CHRISTINA LOPEZ, ESQ.
20                             GARTH YEARICK, ESQ.
                               MICHAEL A. PONZOLI, ESQ.
21                             SAMUEL J. RANDALL, ESQ.
                               WILLIAM J. BLECHMAN, ESQ.
22                             ROBERT KAPLAN, ESQ.
                               MICHAEL MITCHELL, ESQ.
23                             SCOTT E. GANT, ESQ.
                               DAVID C. EDDY, ESQ.
24                             KRISTIN GORE, ESQ.

25

```
 1      CONTINUED APPEARANCES (Via Zoom):
        For the Defendant          Stinson LLP
 2      Seaboard Foods, LLC:       PETER J. SCHWINGLER, ESQ.
                                   50 South Sixth Street
 3                                 Suite 2600
                                   Minneapolis, MN  55402
 4
        For Defendant Agri         Hogan Lovells USLLP
 5      Stats, Inc.                WILLIAM LEITZSEY MONTS, III
                                   555 Thirteenth Street, N.W.
 6                                 Washington, DC  20004

 7      For Defendant Clemens      Kirkland & Ellis LLP
        Food Group:                MAX SAMELS, ESQ.
 8                                 300 North LaSalle
                                   Chicago, IL 60654
 9
        For Defendant Hormel       Faegre, Drinker, Biddle & Reath,
10      Foods Corporation:         LLP
                                   CRAIG S. COLEMAN, ESQ.
11                                 Suite 2200
                                   90 South Seventh Street
12                                 Minneapolis, MN  55402

13      For Defendant Tyson        Axinn, Veltrop & Harkrider, LLP
        Food, Inc.:                JAROD TAYLOR, ESQ.
14                                 90 State House Square
                                   Hartford, CT 06103
15
        For Defendant Triumph      Husch Blackwell LLP
16      Foods, LLC:                CHRISTOPHER A. SMITH, ESQ.
                                   190 Carondelet Plaza
17                                 Suite 600
                                   St. Louis, MO  63105
18
        For Defendant              Brown Fox PLLC
19      Smithfield Foods, Inc.     BRIAN ROBISON, ESQ.
                                   6303 Cowboys Way
20                                 Suite 450
                                   Frisco, TX  75034
21
        For Defendant              Quinn Emanuel Urquhart &
22      JBS USA Food Company:      Sullivan LLP
                                   SAMI H. RASHID, ESQ.
23                                 51 Madison Avenue
                                   New York, NY  10010
24
                   *     *     *     *     *     *     *
25
```

1        **P R O C E E D I N G S**

2        **IN OPEN COURT VIA ZOOM**

3              **(11:11 a.m.)**

4        THE COURT:  Good morning, good afternoon,

5   everyone.  Let's proceed.  This is In Re Pork Antitrust

6   Litigation.  The MDL is 21-2998, Local Number here 18-1776.

7   Now, rather than go through and note all the appearances,

8   let me know who I have here and then if there is anyone else

9   that wish to be noted for the record, you can speak up at

10  that point.

11        For Direct Purchaser Plaintiffs, I have Mr. Clark.

12        Consumer Indirect Purchaser Plaintiffs, Ms. Van

13  Engelen, Ms. Looby.

14        Commercial and Institutional Indirect Purchaser

15  Plaintiffs, I have Mr. Finley and Ms. Aldridge.

16        Direct Action Plaintiffs, I won't list the

17  individual plaintiffs but totally we've got Mr. Bates,

18  Mr. Rodriguez, Ms. Lopez, Mr. Yearick, Mr. Ponzoli,

19  Mr. Randall, Mr. Blechman, Mr. Kaplan, Mr. Mitchell,

20  Mr. Gant, and Mr. Eddy.

21        And for defendants for Clemens, Mr. Samels,

22  Mr. Schwingler.

23        For Hormel, Mr. Coleman.

24        For JBS, Mr. Rashid.

25        For Smithfield, Mr. Robison.

1          For Triumph, Mr. Smith.

2          And for Tyson, Mr. Taylor.

3          Who am I missing that wish to be noted here?

4          MR. SCHWINGLER:  Good morning, Your Honor.  This

5     is Pete Schwingler from Stinson.  I'm actually appearing for

6     (audio distortion) instead of Clemens.

7          THE COURT:  I'm sorry.  Who are you appearing for,

8     Mr. Schwingler?

9          MR. SCHWINGLER:  For Seaboard Foods and Seaboard

10    Corporation.

11         THE COURT:  Okay.  Thank you for clarifying that.

12         Anyone else?

13         MS. GORE:  Yes, Your Honor, for Direct Action

14    Plaintiffs, Kristin Gore.

15         THE COURT:  All right.  Let me make sure I have

16    you in the right place.

17         Thank you, Ms. Gore.  Anybody else?

18         MR. MONTS:  Good morning, Your Honor.  It's

19    William Monts for Agri Stats.  I'm appearing by phone

20    because I don't expect otherwise to speak.

21         THE COURT:  All right, thank you.  Good morning.

22         Anyone else?  All right.  Let's proceed.

23         I called a status conference this morning.  I just

24    wanted to get us going.  I know that there have been

25    meetings with Magistrate Judge Bowbeer, and she is working

1      hard at getting a case management and scheduling order

2      together.  I've been in consultation with her, which has

3      been helpful, but I wanted to just get us together to

4      discuss some of these issues and kind of get us on a path to

5      getting moving quickly.

6                I do want to get everyone on the same track as

7      possible with discovery.  I know that the class action

8      plaintiffs case is much farther ahead, but at the same time,

9      I think it's important that we get to the same point as

10     quickly as we can, as quickly as is reasonable, given the

11     situation.

12               One issue I wanted to hear from you about is the

13     issue of whether we should have a consolidated complaint

14     that can be operative throughout the case or individualized

15     complaints or even more of a hybrid approach.  So who wishes

16     to speak on this issue?  I would like to hear some argument

17     about this, and I will work with Judge Bowbeer on this one

18     in the next week or so.

19               MR. GANT:  Good morning, Your Honor.  This is

20     Scott Gant for Bois Schiller Flexner.

21               THE COURT:  Yes.

22               MR. GANT:  For Direct.  You may recall, we spoke

23     in July during the last conference we had with you, Your

24     Honor.

25               THE COURT:  Yes.

 1           MR. GANT:  And as a reminder, I represent Direct

 2     Action Plaintiff Sysco and Armory Investments, and I also

 3     served on the *Broiler Chicken Litigation* as liaison counsel

 4     for all the DAPS and had that role for about four years in

 5     that case.  And I mention that because I think that that's

 6     particularly, the *Broiler* case is particularly relevant to

 7     the topic you're asking about now, Your Honor, because you

 8     may recall that in the *Broiler Chicken Litigation*, Judge

 9     Durkin sua sponte asked the direct action plaintiffs fairly

10     far into the case to file a consolidated amended pleading,

11     which we did pursuant to his direction over our objections.

12           The experience in that case, I think, tells us

13     about why we should not follow that approach here.  And,

14     Your Honor, I presume you know that we did discuss this with

15     Judge Bowbeer on Monday.

16           THE COURT:  Yes, I'm aware of that.

17           MR. GANT:  Okay.  And she said she was going to

18     consult with you but did offer a provisional view, which I

19     presume she shared with you.

20           THE COURT:  She did.

21           MR. GANT:  Okay.  So our experience in the *Broiler*

22     *Litigation* is that the effect was to create a lot of

23     uncertainty, to proliferate a series of additional motions.

24     For example, there was from the outset and it remains to

25     this day uncertainty about the nature of that pleading.  It

1    is unclear and the parties have a difference of opinion as

2    to whether it is purely an administrative document or

3    whether it is substantive.  That is whether it's superceded

4    and displaced all the other completely individual complaints

5    because in that case, each case was initiated by a separate

6    complaint and then they were consolidated, including with

7    the class cases for purposes of organizing the case, but

8    from the perspective of the DAPS, the individual cases

9    remained, and but there has been uncertainty in numerous

10   motions, and to this date they remain unresolved.

11          But one thing that absolutely is clear it that it

12   created an enormous additional burden on the direct action

13   plaintiffs because we, after everyone filed their own

14   complaint, we all had to come together and spend time

15   putting together a document over which we didn't always see

16   eye-to-eye.  There were different DAPS that had different

17   causes od action, different theories of the case, and we had

18   to put them into one document and that I can represent to

19   you as an officer of the court is a process that's taken

20   hundreds of hours of direct action plaintiff time.

21          And in fact, we are putting together a second

22   amended pleading in the *Broiler* case, which is going to be

23   filed in the middle of this month, and I can tell you again

24   we're spending hundreds of hours of attorney time

25   coordinating.  We don't agree on all the issues.  It causes

1   a lot of debate within the group, and the pleading is going

2   to be between 400 and 500 pages.

3           So it's shifting, and the principle rationale in

4   *Broilers* and articulated by the defendants here for doing

5   this is to ease the largely administrative burden on the

6   defendants of having to answer individual complaints.  We

7   have attempted to offer a solution to that problem, which

8   I'd like to come to in a second, but there is an important

9   difference between this case and *Broilers* vis-a-vis a

10  potential consolidated pleading, which is unlike *Broilers,*

11  which is not an MDL.  This, of course, is an MDL, and

12  everyone who filed a complaint outside of this district who

13  survives the pretrial proceedings and is going to trial will

14  go back home, so we have the problem here that we don't have

15  in *Broilers*, which is, well, if we have a consolidated

16  pleading, what is going to go back to the Court?  And what I

17  would expect would happen here is then everyone who went

18  back to their own court would then want an opportunity to

19  refashion their own new complaint that reflected their own

20  causes of action, their own theorys, their own allegations,

21  so that we're shifting here if we adopt this process.  To

22  the back end, part of what does not have to be done in the

23  *Broilers* case.

24          So I think the *Broilers*, and we attempted to learn

25  lessons from the *Broilers* case and that's why we sought an

1      MDL in this case because we learned a lot of lessons, and we

2      saw that there were a lot of complications that arose from

3      not having the *Broiler* case organized as an MDL and that's

4      why we went to the JPML here and requested one, so that is

5      an important difference here.  And there are salient

6      differences.  There are different causes of action asserted.

7      There are different theories with respect to, for example,

8      fraudulent concealment among the different DAPS.

9           And I think there's a presumption here in the

10     idea, at least on the defendants' part, that we can and

11     should have a consolidated pleading that we're all on the

12     same page on the DAPS, and we're not.  We attempt to be

13     organized, and we'll talk about that with respect to some of

14     the other topics on your agenda, but we all have a common

15     among the DAPS is we decided we didn't want to be part of

16     the class.

17          Each client made a decision that it wants to

18     control its own fate, to hire its own counsel, and be in

19     charge of its own case, and compelling us to have a

20     consolidated pleading runs counter to that desire and that

21     initiative.

22          What we propose to the Court and to the defendants

23     is that in order to alleviate some of the burden of filing

24     answers to every single complaint is the following:

25          One, we said, one, we would like to file a

1    complete answer to one exemplar complaint.  And to that,

2    within a specified time, we're discussing the exact number

3    of days but in relatively short order, but only one

4    complaint would require a complete answer in the short run.

5         The second thing that would have to happen in a

6    relative short run is that each defendant would have to file

7    any defenses and affirmative defenses to each respective DAP

8    complaint.  That is important that that be done because,

9    obviously, we need to know what the defenses are that are

10   being asserted by the defendants so that we could shape

11   discovery accordingly, because if we find that out after

12   discovery is complete or nearly complete, we will not have a

13   reasonable opportunity to take discovery to try and rebut

14   those defenses.

15        So we need to know what those are and those need

16   to be asserted in conformance with the Federal Rules of

17   Civil Procedure, so that we don't have a list of defenses,

18   but we actually know what the bases for those purported

19   defenses are, and those may vary by DAP.

20        So, for example, if you have a contract case

21   defense, well, the contracts are likely different from one

22   DAP to the other, so they need to tell us, well, what is the

23   contractor pointing to?  What about it do they believe

24   provides a defense and so on?  So those are the two things

25   --

1          THE COURT:  You're not envisioning an answer on

2     each of these to each of the complaints.  You're envisioning

3     what list of defenses and if there are counterclaims of any

4     kind?

5          MR. GANT:  Not only a list, it should be whatever

6     the standards are of the Federal Rules.  Those should be met

7     with respect to just the defenses and affirmative defenses,

8     so they don't have to answer paragraph by paragraph the

9     allegations in the Complaint, but just a list of defenses

10    and affirmative defenses, but also the bases for them.

11         I mean something that I've confronted in my own

12    practice, Your Honor, and you may have seen is oftentimes

13    the defendants don't satisfy what I believe are their

14    obligations under the rules, to actually articulate, explain

15    what the defense is so they could just say "statute of

16    limitations", but they don't say what it is.  Or they say

17    "waiver", but they don't explain what the theory of waiver

18    is.

19         So whatever their obligations are with respect to

20    responsive pleading under the rules for defenses and

21    affirmative defenses, those would be fulfilled in a short

22    run with respect to each DAP complaint, so we could know how

23    to shape the course of discovery to address those, but then

24    we would defer the rest of the answer indefinitely down the

25    line, because as long as we have an exemplar answer to one

1    complaint, we believe that that will give us what we need

2    and is an appropriate balance to be struck between what the

3    obligations of the rules are and what the needs of the

4    parties are at this point in time.

5             THE COURT:  I see, okay.  All right.  Anything

6    else, Mr. Gant?

7             MR. GANT:  Not unless you have any questions about

8    that, Your Honor.

9             THE COURT:  Anyone else on the Plaintiffs' side

10   wish to speak on this?

11            MR. KAPLAN:  Yes, Your Honor, Robert Kaplan.  The

12   consolidated complaint is also unmanageable because every

13   time a new DAP file is transferred in, and do we have to

14   then do another consolidated complaint?  It's a moving

15   target.  So it's very hard to manage.

16            THE COURT:  All right.  Thank you.

17            MR. BLECHMAN:  Your Honor?

18            THE COURT:  Yes.

19            MR. BLECHMAN:  If I may address the Court.

20            THE COURT:  Go ahead.

21            MR. BLECHMAN:  Thank you, Your Honor.  William

22   Blechman from Kenny Nachwalter.  We represent Kroger and

23   Albertsons, Hy-Vee, Save Mart and US Foods as Direct Action

24   Plaintiffs in this case.  And I can see from my screen, Your

25   Honor, that I have something of a dubious distinction of

1    having a lot more gray hair than a number of other faces

2    that I'm seeing on the screen, having done this kind of work

3    for about 30 years, not as a class lawyer but representing

4    individual companies in these kinds of cases, including

5    MDLs, and including having served as liaison counsel in some

6    of the largest MDL antitrust cases in the country.

7         And what I'm struck by with regard to the, of

8    late, the effort by I think defendants largely to try and

9    reduce the various individual direct action plaintiff cases

10   to their lowest common denominator.  Mr. Gant spoke well

11   about what the practical difficulties are of doing that.

12        But I wanted to address the Court on this point

13   because there is a suggestion or an implication in the

14   discussion about a hybrid or having a consolidated answer

15   that somehow this MDL is presenting a procedural posture and

16   circumstances that are different or radically different than

17   what has been the situation presented in most all MDLs that

18   have occurred over many, many years.

19        For example, I'm in an MDL in front of Chief Judge

20   Howell in the District of Columbia, involving a conspiracy

21   to fix price of fuel, the *Rail Fuel Surcharge Antitrust*

22   *Litigation*.  There must be about 150 individual plaintiffs

23   there because the class was defeated, and I think there's

24   probably somewhere between about 20 and 30 individual

25   complaints that have been filed.

1           Where there is other MDLs that are going on right

2    now, whether it's the *Generics* MDL in the Eastern District

3    of Pennsylvania.  The MDL in the *Packaged Seafood* in the

4    Southern District of California that started several years

5    ago.  All of these and many, many others, vitamins, line of

6    work, graphite electrodes.  I mean I can give you a long

7    list where you have a number of individual plaintiffs that

8    have filed direct actions as opposed to choosing to remain

9    in the class.  And the Federal Rules of Civil Procedure

10   works just fine in securing answer defenses as and when it

11   is ripe for that to occur under the rules.

12           There are practical adverse consequences to try

13   and change that regimen at this point in this case as there

14   would be in most any other case, but one of many important

15   points is that at least I think from our experience getting

16   cases at issue having answer defenses so that you know

17   exactly what is being pled against you and then being in a

18   position when the case is ready to be renamed as many cases

19   are becomes much more difficult to do in the absence of

20   simply having answer defenses as and when filed under the

21   rules.

22           In short, and in a practical matter, Your Honor,

23   the burden here as Mr. Gant explained to you, is very, very

24   substantial on the individual plaintiffs.  I question the

25   need.  The burden on the defendants of having to file answer

1    defenses as they do in most every case is pretty much the

2    same as it is in other cases and, therefore, I suggest that

3    there be no change to that regimen.  Thank you.

4              THE COURT:  All right.  Thank you, Mr. Blechman.

5    Anyone else on the plaintiffs' side on this issue?

6              MR. BATES:  Yes, Your Honor.  Kyle Bates for the

7    Commonwealth of Puerto Rico.  Can I briefly be heard?

8              THE COURT:  Yes.  Go ahead, Mr. Bates.

9              MR. BATES:  Thank you, Your Honor.  I just wanted

10    to point out some unique aspects of this issue as it affects

11    the Commonwealth of Puerto Rico, which as Your Honor knows,

12    is the only governmental plaintiff in this case.  And I

13    don't have a position on the unique aspects of the other

14    DAPS claims.  I wasn't involved in the conversations Mr.

15    Gant was referencing, but I can say that there are certain

16    aspects of the direct action plaintiffs claim as a whole

17    that don't apply to the Commonwealth of Puerto Rico.

18              Puerto Rico is a governmental entity, as I've

19    mentioned.  Puerto Rico is not and was not a class member in

20    any of the classes as a governmental entity that was

21    excluded, and to the extent that there are any contract

22    based claims for the defenses asserted by the DAPS, there's

23    no contract at all between Puerto Rico and any of the

24    defendants.

25              So if the Court is inclined to order that a

1    consolidated complaint be filed on behalf of the private or

2    commercial DAPS, Puerto Rico would suggest that that would

3    be inappropriate to apply to the Commonwealth of Puerto

4    Rico.

5            THE COURT:  Thank you, Mr. Bates.  Anyone else on

6    the plaintiffs' side?

7            Okay.  For the defendants?

8            MR. TAYLOR:  Your Honor, Jarod Taylor for the

9    Tyson defendants, and I can begin for defendants.

10           THE COURT:  Go ahead, Mr. Taylor.

11           MR. TAYLOR:  Thank you.  So at a high level, I

12   think it's clear or important to understand that defendants

13   believe there will be administrative benefit to permitting a

14   consolidated complaint to the Court and certainly benefit to

15   defendants.

16           So in the Court's Order consolidating the MDL into

17   the 1776 case, one of the things the Court noted was that

18   when reviewing even just that briefing on that one issue, it

19   had to review each submission on each docket to ensure they

20   were in fact identical, and the Court said one of the goals

21   of consolidation was to conserve resources for the parties

22   and the Court by eliminating redundancies, especially as the

23   Court and parties dealing with more complicated and

24   substantive issues, and those complicated and substantive

25   issues are before us now, and with respect to filing such

1      motions to dismiss and later on down the road, the motions

2      for summary judgment, we see similar problems arising if

3      we're dealing with 24-plus complaints rather than a single

4      consolidated complaint.

5              For example, the defendants will likely file

6      partial motions to dismiss to limit at least the damages

7      period based on the statute of limitations, and having a

8      single complaint where we can see where the allegations

9      amongst the different MDL DAPS are actually, the same where

10     differences and wordings are material and more stylistic,

11     understanding that will assist defendants substantively, and

12     it should assist the Court when reviewing those filings as

13     well.

14             Similarly, multiple complaints create the

15     potential for at the very least unwieldy appendices setting

16     out multiple what defendants believe are at least

17     substantively identical allegations, and the Court will be

18     obliged then again, as it was in the briefing on the

19     consolidation, to go through and make sure that defendants

20     got it right, that each of those allegations are actually

21     identical at least materially so.

22             And Mr. Gant pointed out at the beginning that the

23     order to consolidate the complaint in the *Broilers* case was

24     done sua sponte by the Court, so that Court, obviously,

25     didn't believe that consolidation, non-consolidation had

1      become unwieldy and that there were administrative benefits

2      to consolidation.

3              I won't belabor this long, but answering over 24

4      complaints is going to take significant expense for

5      defendants and manpower resources for each of the eight

6      defendants groups.  It's a significant pleading that has the

7      potential to bind each defendant to admissions, so we have

8      to treat each paragraph and each of those complaints

9      carefully, but in terms of actually guiding, you know, the

10     case, those answers probably are not going to be that

11     useful, which I think MDL DAPS can see when they propose to

12     put off the filing of those answers to most of the filing of

13     most of the answers to some indefinite time down the road,

14     but that's all it does is kick all of that work down the

15     road.  It doesn't reduce it.

16             And in the meantime, it also leaves some

17     uncertainty, as I alluded to a moment ago, a consolidated

18     complaint will clarify for all the parties which allegations

19     are really materially identical and which are DAP specific

20     such that defendants can guide their discovery accordingly,

21     and DAPS proposal not only kicks the can down the road, but

22     it also leaves unresolved issues such as serial motions to

23     dismiss.

24             I think it was Mr. Kaplan's had mentioned that a

25     consolidated complaint would be unmanageable because it's

1    unclear what would happen after consolidation.  But many

2    MDLs have consolidated complaints.  There are ways to

3    address that.  Typically, it's done with a short form

4    complaint that future plaintiffs can sign onto; but to the

5    contrary, if there is a non-consolidated complaint that

6    defendants must respond to through a motion and/or through

7    an answer now, that raises the question of what happens for

8    the next complaint?  There will not be a short form

9    complaint.  There will be nothing to sign onto, and so that

10   raises the question of whether we will need to have these

11   serial motions to dismiss.

12           In terms of Mr. Gant's note about the burden to

13   plaintiffs of doing this, defendants don't deny that it does

14   shift some of the burden to plaintiffs.  There are going to

15   be pros and cons, whichever way the Court rules on this.

16   This is going to be a complex litigation whether we have

17   consolidation or not.

18           The idea is to eliminate complexity and allocate

19   costs across the parties fairly to the extent possible.

20   With respect, MDL DAPS are already not putting up as many

21   proponents as defendants will be, so there are many points

22   in the case in which defendants will be having greater

23   expense than the plaintiffs.

24           Also, it is our supposition that DAPS borrow

25   heavily from the direct class plaintiffs, the direct

1    purchaser class plaintiffs' complaints rather than each

2    independently doing the painstaking Rule 11 work that

3    usually proceeds an initial complaint in this case, and so

4    defendants really see this as a little bit of catch up.

5    They had an easier time of it to file their initial

6    complaint, and if they have to spend some additional amount

7    now in this consolidation process, defendants admit that

8    it's not an unfair or undue expenditure.

9            If I could go through and address some of the

10   specific criticisms of defendant's proposal that Mr. Gant

11   made.  He started out by explaining that he thought the

12   *Broilers* consolidation experience shows why consolidation

13   should not take place here.  To the contrary, I think we can

14   easily take the learnings from the *Broilers* case to the

15   extent there were any issues or problems, apply those

16   learnings here and avoid those problems at the outset.

17           I believe the only actual extra confusion or

18   complexity purported that was identified is the issue of

19   whether the complaint was administrative or consolidated.

20   That can be simply addressed here.  Your Honor can order

21   that this is an operative, excuse me, not consolidated but

22   operative.  Your Honor can order from the outset that this

23   should be an operative complaint.

24           And, in fact, there has been an order in the

25   *Broilers* case with respect to one of the two tracks of

1    direct action plaintiffs.  That was simply a minute entry

2    stating that defendants' request for clarification that it

3    be operative is granted, and so it ordered that there be an

4    amended complaint, which I believe was already contemplated,

5    and that when that amended consolidated complaint is filed,

6    it will be the operative complaint.  So that's simply

7    addressed here from the outset.

8           With respect to the fact that *Broilers*, the

9    *Broilers* case is not an MDL, as opposed to this case,

10   defendants don't, frankly, don't see the material import of

11   that.  Those direct action plaintiffs will still be going

12   back to their individual trials and have their individual

13   cases that will be separated from the consolidated case, if

14   they get that far in the *Broilers* case.

15          As I mentioned earlier, it is not uncommon to have

16   consolidated complaints in multi-district litigation, and

17   there is ample case law confirming that it does not merge

18   the cases and that even after a consolidated complaint, the

19   individual actions can be remanded to their respective

20   districts.

21          With respect to the concern about the affirmative

22   defenses and DAPS entitlement to them now, defendants can

23   comply with pleadings rules applicable to affirmative

24   defenses in response to a consolidated complaint.  We are

25   happy to outline which of those affirmative defenses apply

1    to which MDL DAPS in response to the consolidated complaint.

2    That should not be an issue.

3            And then, finally, with respect to Mr. Blechman's

4    comments on his experience and defendant's purported attempt

5    to rework the Federal Rules, it's not clear but it seems

6    like he might have been attempting to walk back MDL DAPS'

7    own proposal already for what I believe Your Honor was

8    referring to and the Court mentioned the hybrid approach,

9    which is to have an answer now, and one answer now to one

10   complaint and file the remainder of the answers to other

11   complaints later.  Defendants do not agree that that is the

12   most efficient way to proceed, but I think there is

13   consensus amongst most MDL DAPS at least and defendants that

14   it's at least more workable and/or acceptable to MDL DAPS to

15   have that process rather than to have, you know, well over

16   probably 150 answers at the outset on the docket right now.

17   That I think is the worst case scenario, and I'm happy to

18   take questions from the Court.

19           THE COURT:  How, if we did adopt the approach

20   where there would simply be a document that lists

21   affirmative defenses and other relevant matters to

22   individual complaints, what does that look like to you?  Do

23   you know?  Is it just in the format of just a -- I'm curious

24   how that works and the plaintiffs can tell me as well, but

25   what would that look like if you had to do that?

1          MR. TAYLOR:  We are having some discussions, and

2     we're currently negotiating that with MDL DAPS in response

3     to a request from Judge Bowbeer.  It could look like

4     affirmative, you know, the section on affirmative defenses

5     that would be in a typical answer.  MDL DAPS have proposed

6     that it be filed and operative as a pleading.  I don't

7     believe defendants have an objection to doing that.

8          MDL DAPS have proposed that each -- that

9     defendants should file separate affirmative defenses to each

10    of the complaints, which again will create some of what we

11    believe to be unnecessary work, and we believe that in

12    response to a consolidated complaint, again, it would be a

13    fairly simple matter simply to outline which were applicable

14    to which MDL DAP with even including particular facts, such

15    as whether one might have agreed, just as an example, to

16    some kind of vague provision or something like that but

17    another did not or a damages limitation.  We can set forth

18    those specific facts even in an answer on affirmative

19    defenses to a consolidated complaint.

20          THE COURT:  Do you see significant differences

21    among the direct action complaints that have been filed or

22    are they relatively similar in your view?

23          MR. TAYLOR:  I think they're very similar, Your

24    Honor.

25          THE COURT:  Interesting.  Okay.  All right.  Thank

1    you, Mr. Taylor.  Anyone else on the defendant's side?

2              All right.  Any reply from plaintiff's side?

3    Mr. Gant, do you have anything?  Or Mr. Blechman?

4              MR. GANT:  I do.  This is Mr. Gant, Your Honor.  A

5    few quick points, if I may, and, sorry, if they don't seem

6    in any particular logical order.  But I want to -- I don't

7    think the defendants dispute that in many, perhaps most

8    MDLs, there is no order to consolidate the pleading.

9              For example, Mr. Blechman mentioned the *Packaged*

10   *Seafood Litigation*, which I think we discussed with Your

11   Honor back in July.  That case is a lot further along than

12   this case or the *Broilers* case, and there was never any

13   order to consolidate, and the parties were able to proceed

14   completely efficiently.  There was no impediment to going

15   forward.  The defendants were able to manage, and it worked

16   just fine there, and I was in that case as well for three

17   clients.  So the suggestion is that this can't be done in an

18   organized and efficient way without having consolidated

19   pleadings, experience teaches us otherwise.

20             Mr. Taylor just conceded that he views the DAP

21   complaints as very similar to one another.  But earlier in

22   his argument to you, Your Honor, he was saying or there's

23   this enormous burden on defendants to try to understand the

24   different DAP complaints and discern how they are different

25   from one another.

1           Well, if they are different from one another, that

2      is more to the fact that these are individual clients with

3      their own views, and we shouldn't be -- one of two things

4      would happen if we were compelled to file a consolidated

5      pleading.  Either we would be forced to adopt these and

6      allegations that our clients didn't owe or make or we would

7      just be putting into one document the different allegations

8      and theories and claims that now reside in our own

9      complaints.

10          So there's less burden there, I think, than

11     defendants would actually like to admit.  But to the extent

12     there are differences, there are reasons for those

13     differences, and they shouldn't be washed away by an order

14     asking us to adopt one another's views and claims and

15     theories of the case.

16          With respect to your question about what it would

17     look like for there to be a filing or a pleading of defenses

18     on affirmative defenses, I think there Mr. Taylor and I are

19     in large agreement, and on these points, I'm speaking for

20     all of the DAPS, Your Honor, because we've discussed this

21     many times internally and discussed it with Judge Bowbeer.

22          What I think this would look like is the part of

23     an normal answer that turns to the defenses and affirmative

24     defenses, so it would not be the part that has the paragraph

25     by paragraph responses, but it would be the part that in my

1    experience usually follows that where it says defenses or

2    affirmative defenses, and it lists those, and it describes

3    them with the specificity required by the rules and by cases

4    like *Twombley* and *Iqbal*, which I believe apply to

5    affirmative defenses just as much to allegations in a

6    complaint.

7          But one other point that we haven't mentioned,

8    Your Honor, is that if we are forced do consolidated

9    pleading, it takes, as I said, an enormous amount of work,

10   which means more delay.  For example, Sysco filed its

11   original complaint, I believe it's now 10 months ago, and we

12   still don't have an answer and not only do we not have an

13   answer, we don't have a list of defenses and affirmative

14   defenses.  And if we are forced to do a consolidated

15   pleading, that's just going to take an extra few months for

16   us to work together to do that.

17         We should start from where we are now, which is

18   take the complaints as filed, and we respectfully suggest

19   take up our suggestion to have one exemplar complaint

20   responded to in full.  That would be the operative pleading,

21   responsive pleading for that complaint, and then have the

22   defendants promptly get us their defenses and affirmative

23   defenses, so that we can move ahead with discovery.

24         If we adopt their recommendation to the Court,

25   that will just delay us further and get us further apart

1      from rather than caught up to where the classes are.

2              I'm happy to answer any other questions, Your

3      Honor.

4              THE COURT:  All right.  That's fine.  Anyone else?

5              MR. BLECHMAN:  Yes, Your Honor.  William Blechman.

6              THE COURT:  Go ahead.

7              MR. BLECHMAN:  Thank you, Your Honor.

8              Just a few points.  First, with regard to the

9      mechanics of this, if the Court is going to use a hybrid

10     approach, then I think it's really important that there be a

11     very clearly set out process and timetable, so that there

12     are answers and defenses that are in fact filed, as opposed

13     to there being an exemplar pleading or consolidated pleading

14     that leaves all the DAP cases or a substantial portion of

15     them not at issue.  So among the proposals that I'm aware

16     of, I don't know that there is actually a mechanism to bring

17     these cases to an issue and that's a fundamental piece of

18     this administration of the process that I think is

19     necessary.

20             Second, there is an implication here, Your Honor,

21     in what you're hearing that somehow if we just follow the

22     Federal Rules, for example, that experienced lawyers here

23     are not going to know how to do this.  There's an enormous

24     amount of experience that is in this hearing and that is in

25     this case.  Experienced lawyers here know how to move these

1    cases forward, and what the defendants are looking to do

2    here in a broader sense is to try to bring all the DAP cases

3    down to their lowest common denominator.  Our complaint, for

4    example, contains an account brought under the Stockyard and

5    Packers Act.

6              You've heard of other differences that are in

7    other DAP complaints.  There are issues about knowledge that

8    the defendants have raised with regard to some of the

9    defenses, apparently, they're going to assert.

10             In taking depositions, Your Honor, somebody is

11   going to be using a complaint in order to depose a witness.

12   You having some kind of massive consolidated pleading to my

13   sense of this presents all sorts of practical difficulties

14   and becomes enormously unwieldy in just trying to take

15   discovery, Your Honor, and that is why I remain of the view

16   that if it ain't broke, don't fix it.  That if there are

17   rules and procedures that set forth how this can go, and has

18   worked successfully in other MDLs, then I don't particularly

19   see the need for us to have to do so.

20             I heard defense counsel say that this sort of

21   consolidated pleading has been ordered in many MDLs.  I've

22   been in a lot of MDLs, Your Honor, and I've only seen this

23   happen of late and in a few MDLs, and I'm in a number of

24   MDLs now where this is not going on at all, and the case is

25   being administered perfectly fine.  Discovery is going

1    forward.

2              And so I come back to the point I wanted to make

3    before, which is these are not class cases.  These are

4    individual cases.  These are experienced lawyers that you

5    have in this case, Your Honor, on both sides of the v, and

6    we know how to do this.  If the Court gives us milestones

7    and targets, experienced lawyers have an understanding of

8    not wanting to burden the Court, and those are all factors

9    that would be taken into account in enabling this process to

10   move forward efficiently.

11             THE COURT:  All right.  Anyone else for the

12   plaintiffs?

13             All right.  Anything else that you had, Mr.

14    Taylor?

15             MR. TAYLOR:  If I could, just one or two points,

16   Your Honor, and I do appreciate your time.

17             But defendants do understand, as Mr. Blechman

18   said, that there are some differences among direct action

19   plaintiffs complaints.  We think largely they are very

20   similar, but as Mr. Blechman noted, his clients have an

21   additional claim.  That can be dealt with and will be made

22   easier to deal with with the consolidated complaint.  We

23   will see where those differences are material and where they

24   aren't, and to the extent one set of MDL DAPS has some kind

25   of material difference, that can be noted, and then yes, to

1   an extent, it will be a consolidation of different claims

2   into one complaint but that is going to simplify the

3   administration of the case.

4          Everyone will have one primary pleading to

5   reference, and I think it's undeniable the Court

6   acknowledged that there are, that for the most part, the

7   complaints are the same, so they will be able to be

8   consolidated, and we're perfectly happy for the differences

9   to be pointed out where there are differences, and we will

10  answer that in our answer to the consolidated complaint.

11         And then, again, my last point with respect to Mr.

12  Blechman, I think his suggestion is not only to oppose a

13  consolidated complaint but even to oppose what has been MDL

14  DAPS proposal to us, which is to have an exemplar complaint

15  that we answer now and then answer the remaining complaints

16  later.  This is the first defendants are hearing that this

17  is back on the table, and in the interest of both

18  negotiation in fairness and moving the case forward, we do

19  hope that that is not up to be revisited.

20         MR. BLECHMAN:  Your Honor, if I might clarify.

21         THE COURT:  Go ahead.

22         MR. BLECHMAN:  I'm not looking to walk back what

23  has been presented in a coordinated way among DAPS who are

24  working together and then dealing with the defendants.  My

25  comments are intended to respond to sort of the broader

1    implication in what is being suggested by the defendants

2    that if we don't do something that any directional act they

3    would like to do here, that this MDL is going to become very

4    difficult for the Court to administer.

5         And I'm here to say to you, Your Honor, that based

6    on a fair amount of experience in MDLs, and the Court has

7    experience on its own, I think that that is an urban myth,

8    that there are, in fact, all sorts of rules and procedures

9    combined with the experience that is in this MDL among the

10   lawyers to be able to move this case forward efficiently and

11   mindful of and to avoid the burdens to the Court.  That's my

12   point.

13        THE COURT:  All right.  Thank you.  I will consult

14   with Judge Bowbeer about this before wrapping that up and

15   making a decision on this.  Thank you for the argument

16   today.  It was very helpful.

17        All right.  Other issues that we should discuss

18   here today?  I set out some possibilities in an agenda.  I

19   just wanted to hear thoughts from everyone.

20        Particularly on organization, I mean we've got

21   sort of two sides of the case, one fairly well organized for

22   a period of time already and the other side just getting

23   organized and how to get that all together.  Do any of you

24   have additional thoughts on that?

25        MR. KAPLAN:  Your Honor, this is Robert Kaplan.  I

1     think the MDL DAPS are organized.  We have a structured one

2     ourselves.  We have a weekly call.  We're processing jointly

3     the defendant's transaction data.  We're participating in

4     the depositions.  We have the same discovery fact cut-off

5     date, and I think we're moving along.

6              The MDL DAPS that were transferred here some time

7     ago are producing documents.  We're trying to get that done

8     quickly.  So I don't think we are behind the classes.  I

9     think we're moving in tandem with the classes.

10             MR. GANT:  Your Honor?

11             THE COURT:  Yes, Mr. Gant.

12             MR. GANT:  Thank you, Your Honor.  To just build

13    on what Mr. Kaplan said with which I know I and other DAPS

14    are in full agreement.  We have put on the proposed agenda

15    whether we need a steering committee.  I think this is

16    implied in what Mr. Kaplan said, but the short answer on

17    behalf of all the DAPS is no.

18             We've mentioned some of these other cases where

19    the *Packaged Seafood* case, the *Broilers* case, where we've

20    had many of the same clients filing cases.  We've had many

21    of the same counsel both on the plaintiff's side and the

22    defense side.  The class counsel in the *Broilers* case and

23    this case are substantially the same.  We know each other

24    very, very well, and we're all working well together, and my

25    guess is Mr. Taylor will agree with me on this point.

1         I don't think the defendants have any complaints

2    about their communications with the DAPS.  We are, as Mr.

3    Kaplan said, we're working together under a familiar

4    structure to us, and we feel comfortable that we are

5    organized and able to communicate effectively amongst

6    ourselves and with the Court and with the defendants and

7    with the classes, and catching up in the case and are on

8    track to hit all of our milestones.

9         THE COURT:  Anyone else?  Mr. Clark, do you want

10   to be heard from?

11        MR. CLARK:  Sure, Your Honor.  Thank you.

12        Just a couple kind of comments.  We did notice

13   your comment about a steering committee.  You know, I'm

14   certainly speaking for DPPS, and the classes will correct me

15   if I think also for the other classes.  Some type of formal

16   steering committee or designated point person or liaison or

17   liaisons for the DAPS would be helpful.

18        There is some informal coordination going on.  We

19   certainly don't want to put one particular DAP attorney

20   under the gun or under fire from all sides, but it would be

21   helpful to know who we're supposed to coordinate with

22   sometimes in a more formal nature.  There are a lot of

23   attorneys and, yes, we do know them, but it's often hard to

24   know when we've checked the box and who we're supposed to

25   talk to.

1          And then just a second point that seemed

2     appropriate to raise from your agenda, it's gotten a little

3     bit confusing with the various names, for instance, in the

4     December 10th filing, which the classes in Puerto Rico have

5     been coordinating here for two or three years together

6     pretty closely.  We didn't know what's being filed or

7     certainly didn't see a draft.

8          The names in there have just kind of gotten beyond

9     the structure of the case in our view.  In our view, there

10    is not an MDL DAP and there's not pre-existing and non-MDL

11    parties.  It's one MDL per your Court's Order.  There are

12    DAPS, there are classes, and there is one government entity,

13    Puerto Rico, and that clarification would kind of help a lot

14    of things because these names have kind of left us at a loss

15    sometimes on what DAPS we ought to coordinate with.  Those

16    are the two points I wanted to make.

17          THE COURT:  All right, that's helpful.  Any other

18    thoughts?

19          The Consumer Indirect Purchaser Plaintiffs, anyone

20    wish to speak there relative to this issue.

21          MS. LOOBY:  Good afternoon, Your Honor.  Michelle

22    Looby for the Consumer class.  I would adopt what Mr. Clark

23    said we coordinated beforehand, and we agree with his

24    position as articulated today.

25          THE COURT:  All right, thank you.  I appreciate

1    that.

2           All right.  Anything else on the plaintiffs' side

3    here?  This is largely a plaintiffs' issue.

4           Defendants, you can weigh in, if you would like to

5    as well.

6           MR. BATES:  Yes, Your Honor.  Kyle Bates for

7    Puerto Rico.  If I could just briefly be heard on the

8    nomenclature point that Mr. Clark raised, which I agree with

9    particularly.  We think it's important to get the names

10   right at this point in the case.

11          I've heard Mr. Gant say a couple times today that

12   he speaks for all the DAPS, and I think it's clear but I

13   just wanted to make it clear again for the record that

14   Puerto Rico is not a part of the group that Mr. Gant speaks

15   for and the coordinating group that Mr. Kaplan was

16   referencing, Puerto Rico is not a part of that group either.

17          We certainly have been coordinating with the

18   classes for several years, as Mr. Clark notes, but it is

19   confusing to Mr. Clark's point when filings come in and

20   there is a reference to the MDL DAPS, and when we have

21   hearings like this and Mr. Gant and Mr. Kaplan are using

22   words like "the DAPS."  I do think it's important that we

23   make clear, for example, that there is a group of private

24   and commercial DAPS and then there's also the governmental

25   entity Puerto Rico, which is separate.  I just want to make

1    it clear for the record which positions are being taken by

2    which entities.

3              THE COURT:  Good.  Helpful.

4              MR. GANT:  Your Honor?

5              THE COURT:  Yes, go ahead.

6              MR. GANT:  It's Mr. Gant.  Thank you, Your Honor.

7    Just briefly.

8              We don't, as I said, we do not think a steering

9    committee is necessary.  As I mentioned, and Mr. Blechman

10   alluded to in other cases like this, there are often liaison

11   counsel.  Neither we nor the defendants have picked one.

12             As I mentioned, I am the liaison counsel for the

13   DAPS in the *Broiler* case.  Mr. Blechman was in the *Packaged*

14   *Seafood* case.  If the Court thinks it's useful, I'm sure

15   that the DAPS, and apologies to Mr. Bates for using the

16   term, but I'm sure that we will be happy to pick one amongst

17   ourselves.

18             We think that Mr. Bates sort of needs to stand

19   alone because as he acknowledges there are differences

20   between his client and their nature and their claims from

21   the private DAPS, but if you think that we should have and

22   we're happy to do so.  But we did raise that with the

23   defendants many months ago, and suggested that if we were to

24   have one, they should as well, and they declined.

25             So we believe that if you're going to ask the

1    private DAPS to appoint a liaison counsel, that you do the

2    same for the defendants, so that we're all on the same

3    playing field, but we don't have any objection to doing so,

4    and we will organize ourselves accordingly.

5            We're also, for clarity and nomenclature and

6    whatever terminology we come up with collectively, we will

7    use it so we all know what we're talking about.

8            On the point about your creating, bringing the

9    classes into the MDL, I think I understood that's what you

10   intended with your order, Your Honor.  I just always had a

11   question, and this is maybe more an academic question about

12   whether that is something that needs to be ratified by the

13   JPML or not, but I leave that in your hands.  Presumably,

14   you don't think that needs to be done, but we will follow

15   whatever nomenclature you would like to establish, Your

16   Honor, but we've been using MDL DAPS to refer, to track what

17   the JPML did.  That's what we're referring to.

18           THE COURT:  Yes, I did do some checking, and I was

19   told that it was within my discretion to decide how to

20   coordinate the two sides of the case.

21           MR. GANT:  Thank you for clarifying that, Your

22   Honor, but we'll come up with whatever nomenclature you

23   would like us to use.

24           THE COURT:  All right.

25           MR. GANT:  And thank you for all your time today,

1    Your Honor.

2            THE COURT:  Oh, perfectly fine.  No problem.  So I

3    think that it sounds like there's at least some agreement

4    that we're getting close to being on the same track, and the

5    proposed scheduling order that Judge Bowbeer is working on

6    and has discussed with all of you envisions that.  Are there

7    any issues that we should discuss about that today while

8    we're together?

9            MR. TAYLOR:  Judge Tunheim, Jarod Taylor again for

10   defendants, if I may.

11           THE COURT:  Yes.

12           MR. TAYLOR:  So we are largely in agreement with

13   how DAPS have characterized the progress of the case so far.

14   We agree that they are so far basically on track with

15   respect to discovery and the track that the class plaintiffs

16   have been on.

17           One issue we did want to raise is that that might

18   -- will soon become more difficult.  As DAPS continue to,

19   new DAPS continue to file later in the case, it will become

20   impossible under the agreed MDL DAP case schedule for them

21   to complete production of documents, for example, by the

22   September 1, 2022, deadline.

23           So this issue in a late filing, plaintiffs

24   upsetting the calendar is something we have raised before,

25   and one of our proposals to deal with it, defendants'

1    proposals in the proposed case management order we submitted

2    was for new direct action plaintiffs who file after a

3    certain date, that they would have to live with the

4    discovery taken by the earlier plaintiffs absent some kind

5    of good cause per the Court order.  I think there are

6    probably other ways to deal with that.

7              Later, direct action plaintiffs could, for

8    example, be put on an indefinitely stayed second track until

9    after the first trench of cases have been resolved.  I'm

10   just putting some ideas out there, but the main goal is to

11   raise that this isn't an issue now, but it is, I assume,

12   going to be an issue, assuming that new direct action

13   plaintiffs do continue to file.

14             THE COURT:  Yes, it seems obvious that that's

15   going to be an issue, and I don't know if anyone knows how

16   many potential new DAPS there are out there at this point in

17   time.  Any clue?

18             MR. GANT:  Your Honor, this is Mr. Gant.

19             Sitting here today, I don't currently have

20   personal knowledge of anyone else that is going to file but,

21   of course, that is a possibility.  I can tell you that these

22   are sophisticated parties that opted out.  I think anyone

23   who didn't opt out of at least one of the two existing

24   settlements is unlikely to file based on my experience.

25             There are some who did opt out who have not filed

1    a case, and there are could be many reasons for that.  I

2    think it's possible there will be none or only a handful of

3    additional filings or there could be a few more than that.

4    But I think, as Mr. Taylor acknowledged, it's not something

5    we have to tackle at present, and I think we could see what

6    unfolds over the coming months and then address it at that

7    time, Your Honor.

8              THE COURT:  I think that is probably correct.  I

9    appreciate Mr. Taylor pointing it out because it could be a

10   significant issue.

11             Do you know, Mr. Gant, how many opt-outs have not

12   filed at this point in time.

13             MR. GANT:  I believe Mr. Taylor gave Judge Bowbeer

14   a number, so I'm going to actually pass it to my friend Mr.

15   Taylor.  I think he used the number something in the 40's,

16   but he may recall the number he gave to Judge Bowbeer on

17   Monday.

18             MR. TAYLOR:  I think about 40 is our count, Your

19   Honor.

20             THE COURT:  Okay.  All right.  Anyone else wish to

21   speak on this issue before we wrap up today?

22             MR. KAPLAN:  Well, there is one additional case

23   that has been filed that will probably be transferred in.

24             THE COURT:  Okay.  So there's one on the way.

25   Somewhere between the headquarters of the JPML and here.

 1              MR. KAPLAN:  Right.

 2              THE COURT:  All right.  That's helpful.

 3              All right.  Anything else we should discuss today?

 4    I will give the steering committee versus liaison counsel

 5    some thought here, and I'll let you know if I need any more

 6    information from you.  I do think some sort of coordination

 7    is appropriate and would be helpful, but I want to think it

 8    through before I go any further, and I'll perhaps discuss

 9    this with Judge Bowbeer as well.

10              So anything else we should discuss today while

11    we're together?

12              MR. ROBISON:  Your Honor, just briefly, Brian

13    Robison for Smithfield.

14              THE COURT:  Yes, Mr. Robison.

15              MR. ROBISON:  Your Honor, I know there's been a

16    lot of discussion with both Your Honor and Judge Bowbeer

17    about the idea of a consolidating complaint and serves

18    affirmative defenses, whatever the Court decides to do on

19    those issues, all the parties in the DAP cases could also

20    use guidance on how motions to dismiss are going to be

21    handled.

22              There's a lot of talk at all of these hearings

23    about answers and affirmative defenses and defenses and

24    whether *Twombley* applies to those, but once we get to

25    motions to dismiss, there is a lot less talk, and so it's

 1    not clear, at least on the defense side how exactly Mr.

 2    Gant or Mr. Blechman would envision motions to dismiss and

 3    the statute of limitations, for example, whether we're going

 4    to be able to file one against an exemplar DAP complaint or

 5    whether we need to file 24.

 6           So that's something that's really on the

 7    defendant's radar, but at some of these hearings it doesn't

 8    seem to get as much argument as the answer, so that's

 9    something we would like to seek guidance from the Court on

10    how the Court wants us to handle those.

11           THE COURT:  Good point, Mr. Robison, and I think

12    that that's probably the subject for our next status

13    conference to discuss ideas for how to proceed there.

14    Obviously, I normally would prefer one to 24, but at the

15    same time, we'll try to do this in a way that best protects

16    everyone's interests on both sides.

17           MR. ROBISON:  Thank you, Your Honor.

18           THE COURT:  All right.  Anything else?  I

19    appreciate you raising that Mr. Robison.

20           All right.  Thank you, everyone.  I'll work with

21    Judge Bowbeer.  We'll get the scheduling order out shortly,

22    and we will proceed.  I appreciate you joining us all by

23    virtual hearing today, and it's good to see all of you.

24    Have a good weekend.

25           COUNSEL (collective response):  Thank you, Your

1    Honor.

2              THE COURT:  We'll be in recess.

3                    (Court adjourned at 12:08 p.m.)

4

5

6                    *      *      *      *      *

7                    **REPORTER'S CERTIFICATE**

8         I, Maria V. Weinbeck, certify that the foregoing is

9    a correct transcript from the record of proceedings in the

10   above-entitled matter.

11

12             Certified by:   *s/ Maria V. Weinbeck*
                               *Maria V. Weinbeck, RMR-FCRR*
13

14

15

16

17

18

19

20

21

22

23

24

25