1          UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
2

      ------------------------------------------------------------
3                                        )
                                         )
4     In Re: Pork Antitrust              )    File No. 18-CV-1776
      Litigation                         )    (JRT/HB)
5                                        )
                                         )
6                                        )    Minneapolis, Minnesota
                                         )
7                                        )    March 16, 2022
                                         )
8                                        )    10:07 a.m.
                                         )
9                                        )
                                         )
10    ------------------------------------------------------------

11

12        **BEFORE THE HONORABLE MAGISTRATE JUDGE HILDY BOWBEER**

            **UNITED STATES DISTRICT COURT JUDGE**
13
           **(STATUS CONFERENCE VIA ZOOM VIDEO CONFERENCE)**
14

15

16

17

      <u>Court Reporter:</u>
18
                  PAULA K. RICHTER, RMR-CRR-CRC
19                   300 South Fourth Street
                   Minneapolis, Minnesota 55415
20                      (612) 664-5102

21

22    Proceedings reported by court reporter; transcript produced
                          by computer.
23
                  *     *     *     *     *
24

25

```
 1      For Direct Purchaser          Lockridge Grindal Nauen, PLLP
        Plaintiffs:                   BRIAN D. CLARK, ESQ.
 2                                    JOSEPH C. BOURNE, ESQ.
                                      W. JOSEPH BRUCKNER, ESQ.
 3                                    100 Washington Avenue South
                                      Suite 2200
 4                                    Minneapolis, MN 55401

 5                                    Pearson Simon & Warshaw
                                      BOBBY POUYA, ESQ.
 6                                    MICHAEL H. PEARSON, ESQ.
                                      CLIFFORD H. PEARSON, ESQ.
 7                                    800 LaSalle Avenue
                                      Suite 2150
 8                                    Minneapolis, MN 55402

 9      For the Consumer             Gustafson Gluek, PLLC
        Indirect Purchaser          DANIEL C. HEDLUND, ESQ.
10      Plaintiffs:                  MICHELLE J. LOOBY, ESQ.
                                     120 South 6th Street
11                                   Suite 2600
                                     Minneapolis, MN 55402
12
                                     Hagens Berman Sobol Shapiro, LLP
13                                   BREANNA VAN ENGELEN, ESQ.
                                     1301 Second Avenue
14                                   Suite 2000
                                     Seattle, WA 98101
15
                                     Hagens Berman Sobol Shapiro, LLP
16                                   SHANA SCARLETT
                                     715 Hearst Avenue
17                                   Suite 202
                                     Berkeley, CA 94710
18
        Commercial and              Cuneo Gilbert & LaDuca, LLP
19      Institutional Indirect      A. BLAINE FINLEY, ESQ.
        Purchaser Plaintiffs:       4725 Wisconsin Avenue Northwest
20                                   Suite 200
                                     Washington, DC 20016
21
                                     Larson King, LLP
22                                   SHAWN M. RAITER, ESQ.
                                     30 East Seventh Street
23                                   Suite 2800
                                     St. Paul, MN 55101
24

25
```

CONTINUED APPEARANCES (Via Zoom):

```
 1
         For Plaintiffs in        Hausfeld, LLP
 2       Commonwealth of Puerto   KYLE G. BATES, ESQ.
         Rico:                    600 Montgomery Street
 3                                Suite 3200
                                  San Francisco, CA 94111
 4
         For Plaintiffs:          MICHAEL A. PONZOLI, ESQ.
 5                                SAMUEL J. RANDALL, ESQ.
                                  WILLIAM J. BLECHMAN, ESQ.
 6                                JEFFREY BERGMAN, ESQ.
                                  ROBERT KAPLAN, ESQ.
 7                                MATTHEW P. McCAHILL, ESQ.
                                  MICHAEL MITCHELL, ESQ.
 8                                SCOTT E. GANT, ESQ.
                                  DAVID C. EDDY, ESQ.
 9                                KRISTIN GORE, ESQ.
                                  JACK G. STERN, ESQ.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

CONTINUED APPEARANCES (Via Zoom):

| | | |
|---|---|---|
| 1 | For the Defendant | Stinson, LLP |
| | Seaboard Foods, LLC: | PETER J. SCHWINGLER, ESQ. |
| 2 | | 50 South Sixth Street |
| | | Suite 2600 |
| 3 | | Minneapolis, MN 55402 |
| 4 | For Defendant Agri | Hogan Lovells US, LLP |
| | Stats, Inc. | WILLIAM LEITZSEY MONTS, III |
| 5 | | LIAM PHIBBS, ESQ. |
| | | 555 Thirteenth Street Northwest |
| 6 | | Washington, DC 20004 |
| 7 | For Defendant Clemens | Kirkland & Ellis, LLP |
| | Food Group: | MAX SAMELS, ESQ. |
| 8 | | 300 North LaSalle |
| | | Chicago, IL 60654 |
| 9 | | |
| | For Defendant Hormel | Faegre Drinker Biddle & Reath, |
| 10 | Foods Corporation: | LLP |
| | | CRAIG S. COLEMAN, ESQ. |
| 11 | | 90 South Seventh Street |
| | | Suite 2200 |
| 12 | | Minneapolis, MN 55402 |
| 13 | For Defendant Tyson | Axinn Veltrop & Harkrider, LLP |
| | Foods, Inc.: | JAROD TAYLOR, ESQ. |
| 14 | | 90 State House Square |
| | | Hartford, CT 06103 |
| 15 | | |
| | | Axinn, Veltrop & Harkrider, LLP |
| 16 | | TIFFANY RIDER ROHRBAUGH, ESQ. |
| | | 1901 L Street Northwest |
| 17 | | Washington, DC 20036 |
| 18 | For Defendant Triumph | Husch Blackwell, LLP |
| | Foods, LLC: | CHRISTOPHER A. SMITH, ESQ. |
| 19 | | 190 Carondelet Plaza |
| | | Suite 600 |
| 20 | | St. Louis, MO 63105 |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

CONTINUED APPEARANCES (Via Zoom):

```
 1      For Defendant           Brown Fox, PLLC
        Smithfield Foods, Inc.   BRIAN E. ROBISON, ESQ.
 2                               6303 Cowboys Way
                                 Suite 450
 3                               Frisco, TX 75034

 4                               Larkin Hoffman Daly & Lindgren
                                 JOHN A. KVINGE, ESQ.
 5                               8300 Norman Center Drive
                                 Suite 1000
 6                               Minneapolis, MN 55437

 7                               GIBSON DUNN & CRUTCHER, LLP
                                 ROD STONE, ESQ.
 8                               333 South Grand Avenue
                                 Los Angeles, CA 90071
 9
        For Defendant           Quinn Emanuel Urquhart &
10      JBS USA Food Company:    Sullivan, LLP
                                 RICHARD T. VAGAS, ESQ.
11                               51 Madison Avenue
                                 New York, NY 10010
12
                                 Spencer Fane, LLP
13                               DONALD G. HEEMAN, ESQ.
                                 100 South Fifth Street
14                               Suite 2500
                                 Minneapolis, MN 55402
15

16              *       *       *       *       *       *       *

17

18

19

20

21

22

23

24

25
```

1               **P R O C E E D I N G S**

2            **IN OPEN COURT VIA ZOOM**

3                  **(10:07 a.m.)**

4          THE COURT:  Good morning, everyone.  I've still

5    got some folks coming in from the waiting room, so give me a

6    second to bring everyone in from the cold.  All right.  That

7    looks like it has stabilized.

8          Well, good morning, everyone.  I'm Magistrate

9    Judge Hildy Bowbeer -- and somebody else has entered the

10   waiting room -- and we are gathered for a conference in the

11   matter of In Re Pork Antitrust Litigation, which is

12   proceeding under Docket Number 18-CV-1776.

13         What I have done in the past and what I will do on

14   this occasion as well is to call out the names of the people

15   that reported to my chambers that they would be attending.

16   I think I spotted a couple of additional names in the

17   waiting room.  I've tried to flag those as well.  So what I

18   will ask is when I call your name, let me know you're -- you

19   know, confirm you're here for the record.  And then as

20   usual, I will also do a last call at the end of each type of

21   plaintiff or group of defendants and see if there's anyone

22   else who wants their appearance noted.

23         So let's start with counsel for the class

24   plaintiffs, and among them, let's start with counsel for the

25   direct purchaser plaintiffs.  It looks like we're joined

1    this morning by Bobby Pouya.

2              MR. POUYA:  Good morning, Your Honor.

3              THE COURT:  Brian Clark.

4              MR. CLARK:  Good morning, Your Honor.

5              THE COURT:  Joseph Bourne.

6              MR. BOURNE:  Good morning, Your Honor.

7              THE COURT:  Michael Pearson.

8              MR. PEARSON:  Good morning, Your Honor.

9              THE COURT:  Steven Hart.  I thought I saw

10   Mr. Hart.  Maybe not.  All right.  So at the moment I don't

11   have Mr. Hart present.

12             Joseph Bruckner.

13             MR. BRUCKNER:  Yes, Your Honor.  Good morning.

14             THE COURT:  Does anybody know whether Mr. Hart

15   will be joining us this morning?

16             MR. BRUCKNER:  I don't know, Your Honor, but I

17   think we can proceed.

18             THE COURT:  Okay.  And is there anyone whose name

19   hasn't been called who would like their appearance noted on

20   behalf of the direct purchaser class plaintiffs?

21             MR. PEARSON:  Good morning, Your Honor.  Clifford

22   Pearson.

23             THE COURT:  I've got Clifford Pearson as well

24   then.  Thank you.

25             Anyone else?

1          Moving on to the consumer indirect purchaser class

2     plaintiffs, I have Breanna Van Engelen.

3          MS. VAN ENGELEN:  Good morning, Your Honor.

4          THE COURT:  Daniel Hedlund.

5          MR. HEDLUND:  Good morning, Your Honor.

6          THE COURT:  Michelle Looby.

7          MS. LOOBY:  Yes.  Good morning, Your Honor.

8          THE COURT:  Shana Scarlett.

9          MS. SCARLETT:  Good morning, Your Honor.

10          THE COURT:  Is there anyone else who wanted their

11     appearance noted on behalf of the consumer indirect

12     purchaser class plaintiffs?

13          Moving on to the commercial and institutional

14     indirect purchaser class plaintiffs, I've got Blaine Finley.

15          MR. FINLEY:  Good morning, Your Honor.

16          THE COURT:  And Shawn Raiter.

17          MR. RAITER:  Good morning, Your Honor.

18          THE COURT:  Is there anyone else who wanted their

19     appearance noted on behalf of the commercial and

20     institutional indirect purchaser class plaintiffs?

21          That takes me, I believe, to the direct action

22     plaintiffs.  And so for the Commonwealth of Puerto Rico, I

23     have Kyle Bates.

24          MR. BATES:  Good morning, Your Honor.

25          THE COURT:  Anybody else want their appearance

 1   noted for the Commonwealth of Puerto Rico?

 2           Moving on to the direct action plaintiffs who are

 3   commonly represented with Dollar General, Jeffrey Bergman.

 4           MR. BERGMAN:  Yes, Your Honor.  Good morning.

 5           THE COURT:  Is there anyone else who wanted their

 6   appearance noted on behalf of that group of direct action

 7   plaintiffs?

 8           Moving on to the direct action plaintiffs who are

 9   commonly represented with Cheney Brothers, Kristin Gore.

10           MS. GORE:  Good morning, Your Honor.

11           THE COURT:  Is there anyone else appearing on

12   behalf of that group of direct action plaintiffs who wanted

13   their appearance noted?

14           Moving to the direct action plaintiffs that are

15   together with Kroger, Michael Ponzoli.

16           MR. PONZOLI:  Good morning, Your Honor.

17           THE COURT:  Samuel Randall.

18           MR. RANDALL:  Good morning, Your Honor.

19           THE COURT:  William Blechman.

20           MR. BLECHMAN:  Your Honor, good morning.  Thank

21   you.

22           THE COURT:  Anyone else who wants their appearance

23   noted on behalf of the Kroger Direct Action Plaintiffs?

24           Now, the meat direct action plaintiffs, Michael

25   McCahill.

```
 1              MR. McCAHILL:  It's Matthew McCahill.  I'm here,
 2     Your Honor.
 3              THE COURT:  I'm sorry.  It's right here correct
 4     and I --
 5              MR. McCAHILL:  I look like a Michael.
 6              THE COURT:  Matthew McCahill, you're here.  And
 7     Robert Kaplan.
 8              MR. KAPLAN:  Yes, Your Honor.  Good morning.
 9              THE COURT:  Is there anyone else who wants their
10     appearance noted on behalf of the group of plaintiffs that
11     is commonly represented with Action Meat?
12              The Sysco Direct Action Plaintiffs, Michael
13     Mitchell.
14              MR. MITCHELL:  Present, Your Honor.
15              THE COURT:  Sarah Jones.
16              MS. JONES:  Also present, Your Honor.
17              THE COURT:  And Scott Gant.
18              MR. GANT:  Good morning, Your Honor.
19              THE COURT:  Mr. Gant, I don't know if you'll be
20     speaking.  At least when you spoke just now, your voice was
21     pretty distorted.  So if it turns out you're going to be
22     speaking, we'll address that at the time, but I just wanted
23     to give you a heads-up.
24              Anyone else who wants their appearance noted on
25     behalf of the Sysco Direct Action Plaintiffs?
```

```
1            All right.  On behalf of the Kraft Heinz and

2     Winn-Dixie Direct Action Plaintiffs, Jack Stern.

3            MR. STERN:  Yes, Your Honor.  Present.

4            THE COURT:  That's the only one I caught, I think,

5     in the waiting room on behalf of that group of direct action

6     plaintiffs, but is there anyone else who wanted their

7     appearance noted?

8            Moving to the Nestle Direct Action Plaintiffs, or

9     the plaintiffs that are commonly represented with Nestle,

10    David Eddy.

11           MR. EDDY:  Here, Your Honor.  Thank you.

12           THE COURT:  Anyone else who wants their appearance

13    noted for that group of plaintiffs?

14           Let's move on to the defendants.  Agri Stats.  I

15    see Liam Phibbs.

16           MR. PHIBBS:  Good morning, Your Honor.

17           THE COURT:  And William Leitzsey Monts.

18           MR. MONTS:  Good morning, Your Honor.

19           THE COURT:  Anyone else from Agri Stats?

20           MR. MONTS:  No.  That's all for us, Your Honor.

21    Thank you.

22           THE COURT:  The Clemens defendants, Max Samels.

23           MR. SAMELS:  Good morning, Your Honor.

24           THE COURT:  Anyone else on behalf -- I think I saw

25    Peter Schwingler.  Is Mr. Schwingler present as well?
```

1          MR. SCHWINGLER:  I am.  I'm on behalf of the

2     Seaboard defendants.

3          THE COURT:  All right.  We're still working the

4     bugs out.  For some reason you showed up for both.

5          Is there anyone else that wants their appearance

6     noted for the Clemens defendants other than Mr. Samels?

7          All right.  For Hormel, Craig Coleman.

8          MR. COLEMAN:  Good morning, Your Honor.

9          THE COURT:  Anyone else on behalf of Hormel?

10         MR. COLEMAN:  No, Your Honor.

11         THE COURT:  JBS USA, Donald Heeman.

12         MR. HEEMAN:  Good morning, Your Honor.

13         THE COURT:  Richard Vagas.

14         MR. VAGAS:  Good morning, Your Honor.

15         THE COURT:  Anyone else on behalf of JBS?

16         MR. VAGAS:  No, Your Honor.

17         THE COURT:  Seaboard Foods.  Now we've got

18    Mr. Schwingler, and I know you're here.

19         Is there anyone else who wants their appearance

20    noted for Seaboard Foods?

21         MR. SCHWINGLER:  Just me today, Your Honor.

22         THE COURT:  Smithfield Foods, Brian Robison.

23         MR. ROBISON:  Good morning, Your Honor.

24         THE COURT:  John Kvinge.

25         MR. KVINGE:  Good morning, Your Honor.

```
 1                 THE COURT:  Rod Stone.

 2                 MR. STONE:  Good morning, Your Honor.

 3                 THE COURT:  Anyone else on behalf of Smithfield

 4     Foods?

 5                 Triumph Foods.  I've got James Spung.

 6                 MR. SPUNG:  Good morning, Your Honor.

 7                 THE COURT:  And Christopher Smith.

 8                 MR. SMITH:  Good morning, Your Honor.

 9                 THE COURT:  Anyone else on behalf of Triumph?

10                 Moving on to Tyson, I've got Jarod Taylor.

11                 MR. TAYLOR:  Here, Your Honor.

12                 THE COURT:  Is there anyone else here on behalf of

13     Tyson?

14                 MR. TAYLOR:  Tiffany --

15                 MS. RIDER ROHRBAUGH:  This is Tiffany Rider

16     Rohrbaugh.

17                 THE COURT:  Okay.  There you are.  I didn't spot a

18     name, and I didn't recognize your phone number.

19                 Anyone other than Mr. Taylor and Ms. Rider

20     Rohrbaugh?

21                 MR. TAYLOR:  No, Your Honor.

22                 THE COURT:  And I think that covers the group.  I

23     know that I admitted one or two people after I got started,

24     so let me simply ask:  Is there anyone else whose name

25     hasn't been called who wants their appearance noted?  Going
```

1    once, going twice.  All right.  So I think we've got our

2    full complement.

3            So at the case management conference at the end of

4    January -- this is just by way of reprise -- the parties

5    discussed with me a number of case management issues, but

6    among those was whether individual direct action plaintiff

7    complaints or a single consolidated direct action plaintiff

8    complaint or some hybrid approach would best serve to

9    streamline the MDL.

10           One of the things I asked you to do was explore

11   what a hybrid model might look like, and you all did that

12   and you responded with your thoughts and your input by a

13   letter that was filed, I believe, at Docket Number 1181-1.

14           After that conference, Chief Judge Tunheim

15   convened a status conference himself with you all, and there

16   was some further discussion at that time about whether there

17   ought to be a consolidated complaint, and he took additional

18   input at that time.

19           And I believe at that time he also raised with you

20   the need for some, you know, co-organization, for want of a

21   better word, of the class and direct action plaintiffs,

22   together through the appointment of liaison counsel and a

23   steering committee.

24           So Chief Judge Tunheim and I have talked about

25   those issues since those conferences were held, and we're

1    close to making some final decisions on the scheduling order

2    in this case, but obviously the issue of that, how to

3    address the direct action complaints is a key concern, as

4    also is the need for some organization and some formal

5    coordination between the class plaintiff side of things and

6    the direct action side of things so that to the extent

7    possible, the direct action plaintiffs can ultimately catch

8    up with the class plaintiffs and the case can move in a

9    coordinated and efficient fashion.

10          So Judge Tunheim and I have talked about those

11   issues, and he asked me to preview with you certain ideas

12   and to report back to him about your thoughts on those

13   ideas.  So what I'm going to do is put these out on the

14   table and then I'll seek out comment, both live and in

15   person, or at least live and by Zoom, from you all today,

16   but will also give you an opportunity to conjugate a bit

17   more and provide any further thoughts by letter, and I'll

18   get to that in a moment.

19          But let me talk about -- put out both pieces that

20   I want to get input from you on first, and then I'll call on

21   the groups in order to share your thoughts, reactions,

22   questions, mostly for me.  Once I tell you what our ideas

23   are, this is mostly going to be listening for me.

24   Ultimately I'll take this back to the Chief and a final

25   decision will be made.

1              What I will ask, since usually when we're talking

2       motions or case management conference, you've told me ahead

3       of time who's going to be speaking.  You've done that to

4       some extent here as well, and I appreciate that, but I also

5       recognize that since you didn't know for sure what we were

6       going to discuss, there are some of you who may want to

7       address these things who didn't sign up to be a speaker, and

8       I want to give you that opportunity.

9              So what I'm going to ask, as I call on each group

10      of plaintiffs and defendants, I'm going to ask you to

11      raise -- to use the hand-raise option on your Zoom device so

12      that I can actually see you and call on you, and that will

13      make it easier for our court reporter to avoid interruption

14      and to know who they're hearing from at any given time.

15             So first, we've concluded that both party and

16      judicial efficiency would best be served by requiring a

17      master amended complaint from the existing direct action

18      plaintiffs as well as for future direct action plaintiffs.

19      For now it would only include the direct action plaintiffs,

20      although we're not ruling out completely the possibility

21      that in the future there could be some request for an

22      amended master complaint that would fold in the class

23      plaintiffs, but we're not going there now and that's not a

24      part of the plan as we see it.

25             Our vision at this point is that the master

1    complaint should also include the direct action plaintiffs

2    who preceded the MDL, mainly the Winn-Dixie plaintiffs and

3    the Commonwealth of Puerto Rico, but certainly that's

4    something on which we will listen to additional comments.

5         As we envision it, the master complaint should

6    include sections of allegations for each category of direct

7    action plaintiffs.  And it occurs to us that in preparing

8    the master complaint, counsel -- and each section of the

9    master complaint, counsel may find useful guidance in the

10   existing class action complaints, but obviously you're not

11   bound by that.

12        The defendants would be required to answer that

13   master complaint in full, but in addition, we would propose

14   that the parties work together to prepare a standard

15   short-form complaint or short-form fact sheet that would be

16   specific to each direct action plaintiff and would be --

17   that would have blanks, for lack of a better word, to be

18   filled in by the specific direct action plaintiffs to

19   identify party-specific facts.

20        The defendants would not need to replicate in

21   response to each short-form complaint or fact sheet the

22   entirety of their answers to the master complaint.  That

23   would sort of defeat the purpose.  But they would be

24   required to respond to the specifics of the short-form

25   complaint or fact sheet, whatever we end up calling it,

1    including identifying as to each direct action plaintiff any

2    affirmative defenses that they intend to rely on as against

3    that plaintiff.

4         So that's piece number one of this, and we're

5    interested in your questions, reactions, thoughts about that

6    construct.  And I'll call on you for those in just a moment,

7    but let me get to piece number two.

8         As the Chief previewed in your previous conference

9    with him, he is eager to proceed with appointing a

10   plaintiffs' liaison counsel and a plaintiffs' steering

11   committee that would include representation from both the

12   class plaintiff side of things and the direct action

13   plaintiffs' side of things.

14        For liaison counsel, we would propose and prefer

15   that the plaintiffs identify one person from the class side

16   and one person from the direct action side.

17        For the steering committee, we're interested in

18   perhaps five to seven from each side.  We're open to your

19   thoughts on this, but just for the sake of putting some

20   numbers on it, perhaps five individuals from the class side

21   and five individuals from the direct action side.  As I say,

22   we're open to your input about that number and about how

23   that group ought best to be constituted.

24        One thing that has to be a part of that, though,

25   and you know this from previous conferences with me as well

1    as the Chief having long been on record in this regard, is

2    that diversity in the leadership roles and on the steering

3    committee is of critical importance to him in making those

4    appointments.

5            So that's the overview.  Those are the two pieces

6    that he asked me to preview with you and that he is

7    interested in your thoughts today, to the extent you're

8    eager and willing to share them, but as I say, we'll also

9    give you a time-limited opportunity to submit additional

10   thoughts and reactions by letter.

11           So let's start with each of those two pieces.

12   We'll take them one at a time, and I'll cycle through the

13   constituencies, and then we'll circle back for part number

14   two.

15           So first, with regard to the master complaint and

16   how that ought to be structured and reactions about a

17   short-form complaint or fact sheet and how the defendants

18   would respond thereto.  So that's proposal number one.

19           Let me start I think with -- to get some reactions

20   from the direct action plaintiffs, start with them and then

21   go to the class action plaintiffs and then go to the

22   defendants.  But as I indicated, it would be easier for me

23   if you use the hand-raise signal so that I know who I should

24   be calling on.

25           So is there anyone from the direct action

1    plaintiffs who wants to comment?  And I'm seeing two people

2    at the moment.  Let's start with Mr. Gant.  I think I saw

3    his hand first.

4              MR. GANT:  Good morning, Your Honor.  Can you hear

5    me okay now?

6              THE COURT:  I can, yes.

7              MR. GANT:  Okay.  And I apologize.  I'm not on

8    video.  I was expecting Mr. Mitchell to cover much of what

9    we were going to discuss today, not knowing what the agenda

10   was.

11             Moving on to the substance, first, we appreciate

12   your and Chief Judge Tunheim's careful consideration of

13   these issues, and we look forward to be able to present some

14   thoughts in writing, as you suggested.

15             For the reasons that I and others have stated in

16   prior conferences, the direct action plaintiffs oppose the

17   idea of being forced to file a consolidated pleading for the

18   reasons we've explained and we'll elaborate on again in

19   writing.

20             There is one particular aspect of this, though,

21   that we haven't really addressed that I think is important

22   to cover, which is that we -- for example, Sysco filed its

23   complaint, I believe, about one year ago.  We do not have

24   any pleading of defenses or affirmative defenses from any of

25   the defendants, and we're in the midst of a very tight

1    discovery schedule where the Court has aspired to catch up

2    the direct action plaintiffs to the classes, and we're

3    working diligently to do that.

4           But without having defenses and affirmative

5    defenses pled by the defendants, we are handicapped in our

6    ability to conduct discovery in a way that protects

7    ourselves.  We're in the middle of taking depositions where

8    we don't have defenses and affirmative defenses, and we may

9    have to come back and ask the Court to reopen all of the

10   depositions to the extent that they're relevant to the

11   litigation of our defenses -- of defenses which haven't been

12   asserted.

13          And this proposal additionally prejudices us

14   because -- and the defendants, by the way, have not obtained

15   any relief from the Court for having to file defenses and

16   affirmative defenses.  There were deadlines that have come

17   and gone, and the defendants have not met them and they have

18   not obtained orders from the Court that would relieve them

19   of those deadlines.

20          The proposal that the Court is now advancing seems

21   to me will further prejudice the direct action plaintiffs in

22   this regard because if we're compelled to file a

23   consolidated pleading, which would then be responded to,

24   we're months away, from today, from receiving defenses and

25   affirmative defenses in a case where we're supposed to

1    complete fact discovery this year.  That is extremely

2    prejudicial to us, and we're not sure that the Court has yet

3    focused on that because that subject really hasn't come up

4    yet.  It's been an obvious fact in the discussions, but I

5    don't think anyone has focused on the fact that we don't

6    have these, which I think everyone would acknowledge we

7    should be entitled to receive early enough in discovery so

8    that we can take discovery to marshal responses to defenses

9    and affirmative defenses.  So this is an additional

10   extremely important complicating factor that we believe the

11   Court needs to take into account, and --

12            THE COURT:  Mr. Gant?

13            MR. GANT:  Yes.

14            THE COURT:  Mr. Gant, sometimes your voice is

15   trailing off.  I think I can discern what -- and it was just

16   in the last couple of sentences, but I just wanted to ask

17   you to make sure you speak up so that we don't miss your

18   comments.

19            MR. GANT:  Thank you, Your Honor.

20            So hopefully you heard the thrust of the

21   observation that I was making.  We think this is extremely

22   important and is one, but only one, of many reasons why

23   being forced to go through the process of drafting a

24   consolidated pleading will be further prejudicial because,

25   as I noted previously, including with Chief Judge Tunheim,

1    it's extremely time-consuming to put together a consolidated

2    pleading.  So that just prolongs the date by which we will

3    receive defenses and affirmative defenses, which we need to

4    litigate this case.

5            Thank you, Your Honor.

6            THE COURT:  Understood.  And I did catch all of

7    your comments.  I just wanted to let you know where it was

8    starting to trail off, but I heard you loud and clear.  So

9    thank you.

10           Anything further, Mr. Gant, subject to writing a

11   letter?

12           MR. GANT:  Not at this time.  Thank you, Your

13   Honor.

14           THE COURT:  All right.  Mr. Bates, I saw your hand

15   next.  And then I'll call on Mr. Kaplan.

16           MR. BATES:  Thank you, Your Honor.  And thank you

17   and Chief Judge Tunheim for considering these issues and

18   presenting that background to us.

19           I also wanted to re-raise some distinctions

20   between the Commonwealth of Puerto Rico and the other direct

21   action plaintiffs, which I also spoke with Judge Tunheim

22   about when he convened the last status conference on this

23   issue, and there are both procedural and substantive

24   differences between Puerto Rico and the rest of the direct

25   action plaintiffs.  Puerto Rico is a governmental entity,

1    and it doesn't resell products.  And I actually think that

2    those substantive differences bear more on your second point

3    with regard to liaison counsel and a steering committee.

4            The procedural differences that I want to

5    highlight for the Court I think more relate to the idea that

6    Puerto Rico would be included in a master complaint.  As I

7    just mentioned briefly, Puerto Rico's allegations are

8    different.  Puerto Rico's place in the market is different.

9    But we also don't have the procedural concerns that Mr. Gant

10   just referenced.  The defendants have answered Puerto Rico's

11   complaint.  Puerto Rico is participating in depositions.

12   Puerto Rico doesn't have the issues that Mr. Gant just

13   raised.  And so the -- at least for Puerto Rico, we don't

14   see the benefit of including Puerto Rico in a complaint

15   dominated by allegations and largely intended to serve

16   direct action plaintiffs that are fundamentally different

17   from Puerto Rico, while not conferring any of the benefits

18   that may arise from doing that.

19           And so for that reason, Puerto Rico would ask not

20   to be included in any master amended complaint.

21           THE COURT:  Thank you, Mr. Bates.

22           Mr. Kaplan, I see your hand up.

23           MR. KAPLAN:  Yes.  Thank you, Your Honor.

24           I think the basic thesis of this is wrong when

25   Your Honor said the direct action plaintiffs should catch

1    up.  We are caught up.  I mean, my clients have produced --

2    substantially completed our document production.  We are

3    participating in the depositions.  We have the same

4    discovery cutoff schedule.  So we are caught up.

5         And I would respectfully endorse what Mr. Gant

6    said.  I think this master complaint will just slow things

7    down and will put us behind when we're already caught up.

8    So I don't think it makes sense, but of course, if Your

9    Honor and Judge Tunheim wants us to do that, we will, of

10   course, you know, comply with whatever the Court wants.  But

11   I don't think, for the reasons that Mr. Gant said, that it

12   makes any sense.

13        THE COURT:  And to be clear, I understand and

14   Judge Tunheim understands that by objecting, and even

15   strenuously objecting, you're not saying that you won't do

16   it if we order you to do it.  We appreciate your input on

17   this but also understand the good faith with which you will

18   comply with anything we decide ought to be done.

19        One thing I would like to clarify in terms of any

20   subsequent written remarks is that while the -- want to hear

21   any additional or re-emphasize arguments you'd care to make

22   about whether this should happen or why it shouldn't happen

23   because I think we're headed in this direction.  In addition

24   to re-emphasizing any objections, we would like you to

25   comment on the content of it as well.  In other words, if

1    we've got to do this, then we have the following input about

2    how it should be structured.  So please plan for

3    the alternative on the assumption that the objections won't

4    win the day here.

5            Mr. Kaplan, was there anything else from you?

6            MR. KAPLAN:  No, Your Honor.  Not on point one,

7    which is what you want comments on.

8            THE COURT:  Right.  I'll circle back to everybody

9    on point two.

10            Mr. Randall.

11            MR. RANDALL:  Yes, Your Honor.  Thank you.

12            And I appreciate Your Honor's comments about

13    working within the framework of planning for this to happen.

14    I would just add to what Mr. Gant and what Mr. Kaplan said

15    about the added delay that we're concerned that this would

16    add.

17            You know, I don't think -- as we've discussed this

18    process, one of the things that I don't think we've -- when

19    it comes down to this, we owe a fiduciary duty to our

20    clients to make allegations that they agree with.  And so if

21    Mr. Gant or Mr. Kaplan has included certain allegations, you

22    know, we have to start this process of vetting every single

23    allegation that's different if we're being forced to conform

24    our allegations to the allegations of another plaintiff

25    because, you know, we can't just allege something because

1    another plaintiff has alleged it.  We have to clear every

2    single one of these allegations that's different with our

3    clients, and so it's a very time-consuming process.

4         And so, you know, to the extent the Court is going

5    in this direction, you know, we would ask that the complaint

6    essentially include -- you know, allow for large differences

7    where we're alleging something that Mr. Gant's clients are

8    not or Mr. Kaplan's are not.  You know, for example, we have

9    a number of allegations in our complaint.  We've brought up

10   Packers and Stockyards Act claims.  So there are a number of

11   allegations in our complaint that other direct action

12   plaintiffs have not raised.  You know, we have slightly

13   different theories that we've made that other direct action

14   plaintiffs have not raised.

15        And so it's going to be a very, very

16   time-consuming process to try to conform our allegations to

17   others.  And I think there are a number of allegations that

18   we would need to include that others do not, just because of

19   the differences of the complaint that we are asserting.

20        THE COURT:  All right.  Thank you, Mr. Randall.

21        I saw Mr. Blechman next and then Mr. Eddy.  So

22   Mr. Blechman, you're on.

23        You are muted.

24        MR. BLECHMAN:  Well, then you'll believe me now,

25   Your Honor, when I tell you that I wasn't completely facile

1    with all the buttons here to raise my hand or not.  So

2    Mr. Randall actually covered it, and I inadvertently hit the

3    button.  But as long as I've got a little air time, I just

4    have two points of clarification, if I might.

5           The first is with regard to the defendants' -- I'm

6    going to use the word consolidated answer.  I don't know if

7    that's what Your Honor used.  But whatever the defendants

8    are putting in as the long form of the answer to the

9    complaint, I'm wondering if you could share with us any more

10   texture to what the Court is considering in terms of what

11   that looks like because defendants have fiduciary duties to

12   their clients, just like, as Mr. Randall said, we do to each

13   of our respective clients.

14          And as part of that, Your Honor -- and I'll ask

15   this other thing and then I'll be quiet -- does the Court

16   have some idea of timing for this process in so -- picking

17   up on the point Mr. Gant made earlier?  Because if I'm

18   understanding what Your Honor said correctly, what the Court

19   has in mind is a consolidated pleading filed by all direct

20   action plaintiffs, which is going to be a considerable

21   undertaking and it will take time, and then the Court has in

22   mind, I think, a consolidated answer and defenses filed by

23   the defendants.

24          THE COURT:  No.  And if what I said sounded like

25   that, I take responsibility.  It isn't what I was thinking

1       or what Judge Tunheim was thinking.

2               Each defendant or defendant group would still need

3       to file its own answer to the consolidated complaint.  There

4       would not be a consolidated answer to the consolidated

5       complaint.

6               So the answer -- what I meant to say was that each

7       defendant or defendant group would answer the master

8       complaint in full and then would respond to each short-form

9       complaint, plaintiff-specific complaint, with their

10      affirmative defenses and any other counter-contentions to

11      what was in that short form.

12              Does that help?

13              MR. BLECHMAN:  It does, and I apologize if I

14      misunderstood what Your Honor said.  And it's not my

15      practice to ask the Court a question, and the Court can tell

16      me to just listen to what you're saying going forward.  But

17      if I might ask you a question to help us in understanding

18      what the Court has in mind and in considering further those

19      points when we submit something further in writing.

20              Can you help us understand, Your Honor, the

21      Court's thinking as to why the defendants would each file

22      separate answer defenses given that -- recognizing they have

23      fiduciary duties, whereas the direct action plaintiffs all

24      would have to file a consolidated pleading, notwithstanding

25      the fiduciary duties that all of us have to our respective

```
 1    clients?  I'm just wondering about why the differential

 2    treatment.

 3              THE COURT:  It sounds a little like

 4    cross-examination.

 5              MR. BLECHMAN:  Your Honor, I can assure you I

 6    genuinely don't intend that, but --

 7              THE COURT:  I know.

 8              MR. BLECHMAN:  -- in the spirit of this

 9    conversation with the Court that you've mentioned at the

10    top, I thought it might not be inappropriate to ask that

11    question, but I certainly understand if you tell me that I

12    should just listen to what Your Honor is saying.

13              THE COURT:  I will do my best, although I can't

14    speak for Judge Tunheim because that was not a question that

15    Judge Tunheim and I talked about.

16              First, it is my understanding, and I'm eager to

17    learn more if I'm incorrect on this, but it's my

18    understanding that in the typical MDL, which we're dealing

19    with here, that there is often a master complaint, but I'm

20    not aware of any situation where in a multi-defendant MDL

21    there are master answers.  So that's one piece.  I think it

22    is generally the case that the responsibility where a master

23    complaint has been called for has been a plaintiffs -- has

24    been one-sided, if you will.  The plaintiffs file that.

25              I think that the allegations that the plaintiffs
```

1      are making, there's a great deal of commonality.  They, at

2      least within categories of plaintiffs, understand that they

3      are not identical and that there may be some important

4      differences but that there is significant commonality in the

5      claims and allegations.

6              On the other hand, the defendants have their own

7      course of conduct and their own potential affirmative

8      defenses that they would allege in response.

9              And so I'm not aware of any precedent -- even

10     though I'm aware of precedent for a master complaint, I'm

11     not aware of any precedent for master answers.  As I say,

12     I'm always willing to be educated on the subject, but that

13     would be a new one to me.

14             Is that something you're familiar with,

15     Mr. Blechman?

16             MR. BLECHMAN:  No, Your Honor.  And I don't mean

17     to imply that that would necessarily be something to do

18     here.  I was really just looking to understand better what

19     you and the Chief Judge are thinking about as you are

20     contemplating how to manage the MDL and how to structure the

21     case.

22             And I thought your remarks, at least for me, were

23     very helpful.  And I'm done with my questions, so thank you

24     very much.  But I had no agenda, Your Honor, other than to

25     better understand what you all were thinking.

1              THE COURT:  Okay.  And I appreciate the question,

2      and if the response was useful, then that's a good thing

3      too.

4              MR. BLECHMAN:  Yeah.

5              THE COURT:  Anything else, Mr. Blechman?

6              MR. BLECHMAN:  The defendant-specific defenses to

7      a given plaintiff are quite crucial to any direct action

8      plaintiff being able to respond in discovery and being able

9      to do those things necessary in presenting the case further,

10     as Mr. Gant alluded to, and I wouldn't want to do anything

11     to undercut our ability to get those kind of plaintiffs'

12     defendant-specific responses that are so important to being

13     able to discover and prosecute the case.

14             THE COURT:  Understood.  And certainly in my

15     conversations with Chief Judge Tunheim, the proposal, the

16     vision, if you will, clearly calls for the defendants to

17     identify as to each plaintiff what affirmative defenses they

18     are asserting.  That's part of the reason for that -- part

19     of the reason, not the entire reason, but part of the reason

20     for that plaintiff-specific short-form complaint or fact

21     sheet.

22             MR. BLECHMAN:  Thank you.

23             THE COURT:  Mr. Eddy, I see your hand raised.

24             MR. EDDY:  Yes, Your Honor.  Two things.  The

25     defendants in the *Broilers* case were required to submit a

1    consolidated answer.  That's just addressing a point between

2    you and Mr. Blechman.

3            I'm coming at this a little differently with a

4    proposal, that there are eight law firms on the DAPs side in

5    the MDL that have filed complaints for 23 -- or filed 23

6    complaints.  And rather than having a massive artificial

7    complaint and a massive artificial response, I would propose

8    that we do it on a by-firm basis, which means the defendants

9    could take each complaint filed by a firm, whether it's

10   Boies Schiller or Kenny Nachwalter or Carlton Fields or my

11   firm, Nexsen Pruet -- we filed three complaints -- they're

12   all the same pattern, and I am sure that's the case for

13   every other DAP that's filed, that the defendants simply

14   answer the complaints by firm.  That preserves the

15   uniqueness of the claims.  That preserves our ability on

16   remand to take these complaints back to the courts where we

17   filed.  And it imposes no burden on them.  Basically, they

18   have to file eight answers.  They're specific to the

19   allegations raised by each firm and their clients.  No one

20   has to get involved with allegations of other firms or other

21   plaintiffs.

22           And they've had these now for well beyond the

23   federal rules.  We could simply -- Your Honor could simply

24   direct that they file their answers to those in 30 days.  We

25   don't have to have this massive delay.  And as Mr. Gant

1    said, they've had the Sysco complaint for a year.  And

2    they've had the complaints of my clients for up to nine

3    months.

4              So they're not -- there's no prejudice to them.

5    It makes everything plaintiff-specific.  It does require

6    them to file eight answers, but they're going to be

7    patterned to those complaints.  And to the extent someone

8    amends, then that can be dealt with.  And if they have a

9    motion to dismiss, they can, you know, file it with respect

10   to that firm's complaints.

11             I know this is kind of taking a step from left

12   field, and I apologize for throwing out a new concept, but I

13   think it's something that will cut down the delay that we're

14   all concerned with as discovery is ongoing.  It doesn't

15   require the plaintiffs to do anything further.  They've

16   already drafted and filed their complaints, and the

17   defendants have had them for a long time.  Maybe they need

18   45 days.  I don't know.  But it seems to me that let's just

19   get on with responding to what they have.

20             Thank you, Your Honor.

21             THE COURT:  Thank you, Mr. Eddy.  And first, thank

22   you for correcting my lack of information on the

23   consolidated answer in *Broiler*.  I thought I had stayed

24   relatively up to date on what went on in *Broiler*, but I

25   missed that detail.

1          Are you advocating for a consolidated answer if

2     there is a required consolidated complaint or simply

3     pointing out that yes, there is precedent for it and it was

4     done?

5          MR. EDDY:  Well, it is a massive document, as you

6     might expect, and I think both the amended consolidated DAP

7     complaint and the answers are massive.  They're more than

8     1,200 pages probably together.

9          If we are going -- the DAPs are going the route of

10    a master consolidated complaint, then I think the defendants

11    should respond in the same manner as they did, and without

12    problem, in the *Broilers* case.

13         THE COURT:  I guess I'm asking a slightly

14    different question.  I mean, there's -- and that is,

15    understanding that you believe there shouldn't be a master

16    complaint, does it advance the ball for the plaintiffs for

17    there to be a master answer, or is it more about if we've

18    got to go through this misery, they ought to have to go

19    through this misery as well?

20         MR. EDDY:  A fair question, Your Honor.  I think

21    at the end of the day what my clients are concerned about,

22    and I think this is something that Mr. Blechman said, we

23    want to know how they respond to the claims that we have

24    asserted for our clients and what their defenses are on a

25    client-by-client basis.  So if that's in a massive answer,

1     that's fine.  If that's done by separate filings, that's

2     what we need and we need it now.

3                 THE COURT:  Thank you, Mr. Eddy.

4                 I see Mr. Gant's hand up.  I wasn't sure if it was

5     up again or it just had never come down.

6                 Mr. Gant, did you have something else?

7                 MR. GANT:  Yes, Your Honor.  I had taken it down

8     and then put it back up in response to the question you just

9     posed to Mr. Eddy.

10                And I'll preface this by saying obviously I have

11    not had a chance to confer with any other DAP about this, so

12    we're speaking only for our clients in this regard.

13                To your specific question about whether the

14    defendants should be required to file an amended answer --

15    excuse me, a consolidated answer if the DAPs are, my view is

16    no.  To the contrary.  First of all, I wouldn't compound

17    what we view as a bad idea with a second bad idea.

18                But more importantly, more specificity is

19    important.  And one of the problems, in our view, with a

20    consolidated pleading, as we've discussed, is it compels us

21    to homogenize where we are putting all of our allegations

22    together and trying to sort out how they compare, and as

23    Mr. Randall pointed out, and then having to dissent from

24    allegations that others have made, which is what has to

25    happen in *Broilers*.

1          We just filed -- you may have seen our second

2     amended consolidated complaint there, which was 450 pages

3     and has sections where DAPs are disagreeing with one

4     another.  It is a painful process, and I do not wish that on

5     the defendants as punishment.  There's no reason for us to

6     do it, and there's no reason for them to do it.  They should

7     each be required, in my view, again, speaking only for our

8     clients, to provide answers which provide specific responses

9     that reflect their views and their allegations and their

10    positions about the allegations and asserting with

11    specificity the defenses and affirmative defenses with

12    respect to each and every DAP.

13          THE COURT:  Thank you, Mr. Gant.

14          Mr. Randall, I see your hand up.  Is it again or

15    still?

16          MR. RANDALL:  No, Your Honor.  I should put it

17    down.  I apologize.

18          THE COURT:  Very well.  I've never figured out how

19    to put it down.  I just thought it went down on its own at

20    some point.

21          Mr. Blechman, did you have something more?

22          MR. BLECHMAN:  I did, Your Honor.  I wanted to

23    just say that in listening to Mr. Eddy's suggestion to you,

24    I was struck by the fact at how it aligns each law firm's

25    fiduciary duties to their clients with pleading.  And I'm --

1   all of us are sensitive to the fact that the Court wants to

2   find -- and as Your Honor noted, the Court wants to strike

3   the right balance so that it can efficiently manage this

4   case that centralizes cases that have been filed not only in

5   the District of Minnesota, but in transferor courts as well

6   under the MDL.  And so we get it about the desire to do

7   that, but lost in the shuffle should not be the fiduciary

8   duties that unmistakably each of these firms owe to their

9   respective clients that then translates into the pleadings

10  that appear and the allegations that are made.

11          And Mr. Eddy's suggestion to you struck me as

12  really finding the right balance in that because it reduces

13  the number of complaints, it allows for plaintiff/defendant

14  specific responses, and allows this process to go forward

15  without the kind of burgeoning consolidated pleading that is

16  going to -- I think is going to -- at the end of the day

17  we're going to look back at it and say, no good deed goes

18  unpunished, because this is going to be an exercise that is

19  going to take so long and become so unwieldy in the result

20  that you're getting that it becomes very difficult to

21  translate in terms of its application through the case.

22          But I come back to first principles, that each of

23  these firms owe fiduciary duties to our respective clients,

24  and that, I would suggest, has to be incorporated into the

25  way in which the pleadings are structured for purposes of

1    managing the case.

2              Thank you.

3              THE COURT:   Thank you.

4              All right.   Let me ask if any of the counsel for

5    the class plaintiffs wanted to comment.   And I see

6    Ms. Van Engelen.

7              MS. VAN ENGELEN:   Good morning, Your Honor.   Thank

8    you for your time today.

9              To the extent that the Court is considering a

10   consolidated DAP complaint, the classes are not going to

11   take a position.

12             You did mention possibly down the road a

13   consolidated class complaint, and the classes would have

14   concerns about that.   As you know, in these actions,

15   pass-through is not relevant for direct purchaser actions.

16   It's not a relevant defense.   But consumers, we have to

17   prove pass-through as part of our case.

18             Similarly, the direct purchaser complaint alleges

19   violations under the federal antitrust statute.   We as the

20   consumers, and the commercial indirect purchasers as well,

21   are bringing causes of action under the laws of 25 different

22   states.   So there's a fundamental difference there.

23             Finally, the consumer indirect purchasers are the

24   only class that has brought a rule of reason claim in

25   addition to the standard Section 1 claims.

1          And for these reasons we think that it would be

2     better to keep the class complaints separate.  I don't

3     believe we've seen any of the issues or have any issues

4     arise that would require consolidating the class complaints.

5          Thank you.

6          THE COURT:  Thank you, Ms. Van Engelen.  And you

7     correctly heard me, that at this point we're not looking at

8     that but certainly would -- if it seems like a good idea at

9     some point in the future, we would be gathering before we

10    went there.  So thank you.

11         Anything else from any of the class plaintiffs'

12    counsel?

13         All right.  Let me ask whether any of the defense

14    counsel want to comment then.

15         MR. TAYLOR:  Your Honor, this is Jarod Taylor.

16    I'm trying to raise my hand, but if no one else has yet,

17    maybe I can just lead off.

18         THE COURT:  Yeah, I saw you first, so go ahead.  I

19    do see Mr. Robison's hand raised.  I'll call on him

20    afterward.  But, Mr. Taylor, please go ahead.

21         MR. TAYLOR:  Great.  Thank you.

22         So I guess, just responding to a few points that

23    DAPs raised, understanding that I'm sure we'll hear

24    elaboration on the written papers and, you know, we would

25    like the chance to respond to anything DAPs have to say,

1    obviously.  I don't know if, you know, a mutual exchange

2    before filing makes the most sense or if an

3    objection/elaboration by DAPs followed by a reply by

4    defendants makes sense, but we would appreciate just if we

5    could be heard on the issues they raise after we see them so

6    that we can consider them.

7           And then moving to the substance, I think the

8    delay complained of is exaggerated.  Perhaps it's no

9    surprise that that would be our position since we've

10   discussed and the courts have probably -- the Court has

11   probably analyzed allegations among the complaints are

12   similar.

13          The one concrete example of a different set has

14   been raised today is that a couple of the DAPs have Packers

15   and Stockyards Act claims.  My understanding is that that

16   doesn't really vary the factual or concrete factual

17   allegations much, but it does require a different section

18   where you have a certain claim that essentially repeats the

19   legal elements.  I don't think it will be a surprise to

20   anyone that all defendants will deny all of those.  And I

21   don't think that will put much burden on DAPs to specify, we

22   have this four extra paragraphs or whatever it is that

23   essentially merit the legal elements of that claim.

24          You know, we've heard a few concepts thrown out,

25   like fiduciary duty, which DAPs undoubtedly do owe to their

1    clients, but what we haven't heard is the tie between that

2    concept and the delay and why it would cause delay.  It's

3    right that defendants have had the complaints for a long

4    time, but similarly, DAPs have been conducting discovery

5    together, taking depositions together.  They know -- you

6    know, the claims mirror each other, largely.  And, you know,

7    I think there is probably -- our position is it's an

8    exaggeration that each slight difference in wording or

9    allegation based on the public record, public statements and

10   the like, whatever it might be, will require a painstaking

11   Rule 11 investigation going back to the well.

12            You know, if some caveat is necessary to allay

13   DAPs' concerns, if they would somehow be violating Rule 11

14   by echoing a fellow DAPs' allegation, I think we could

15   address that.  I don't think we would be moving for

16   sanctions and saying what is your specific basis for making

17   that allegation when you didn't originally.  So I think

18   those concerns can be dealt with and are exaggerated.

19            The specific things, assuming the Court does end

20   up going down this route, that I think we would benefit from

21   having clarified are the extent to which it is an operative

22   complaint so that we can rely on these allegations and don't

23   have to go back to the original complaints and double-check

24   that everything has been caught in the consolidated

25   complaint and so that we can take comfort when we answer the

1    consolidated complaint that our responsibilities under the

2    rules have been satisfied.  And to the extent we need to

3    move to dismiss, in part, the consolidated complaint, we can

4    take comfort that we are dealing only with the consolidated

5    complaint and that it's procedurally proper under the rules

6    to make a motion against it, which segues into my final

7    point, that how and when to handle a motion to dismiss this

8    consolidated complaint and how we handle any future

9    short-form complaints should be included as well.

10            I don't know that there's much to argue on that

11   point or that it needs to be unnecessarily complicated, but

12   it's just something that has to be addressed so we know when

13   and how to do that.

14            THE COURT:  And to the extent you've got some

15   thoughts about how that might best work, that's absolutely a

16   piece of what we would like to see addressed in your

17   letters.

18            As far as your suggestion about having a chance

19   for the parties to react to each other's letters, that's

20   something I hadn't thought about, and I'm letting that

21   percolate in the back of my head while I listen to other

22   remarks, but I'll circle back at the end of this and we'll

23   make sure we do what seems fair.

24            MR. TAYLOR:  Thank you, Your Honor.

25            THE COURT:  Thank you, Mr. Taylor.

1             Mr. Robison.

2             MR. ROBISON:  Your Honor, Mr. Taylor sort of

3     addressed the only point I was going to raise, which is how

4     the Court would like us to handle motions to dismiss.  If we

5     go down the route of having a master amended complaint

6     joined by all of the existing DAPs, I just want to make sure

7     we understand on the defense side when exactly we would file

8     motions to dismiss as well as answers, because when the DAPs

9     were speaking earlier -- and I think this happens at a lot

10    of these status conferences with Your Honor and with Judge

11    Tunheim -- when the DAPs are talking about how to go forward

12    on complaints, their focus is on answers, defenses, and

13    affirmative defenses, but I don't want motions to dismiss to

14    get lost in the shuffle here.  There's a fourth piece of the

15    puzzle that's important to our side.

16             And so one of the main efficiencies we see with

17    some sort of a master complaint or a consolidated complaint

18    is that the Court and the parties will be dealing, we think,

19    we hope, with one motion to dismiss that addresses what we

20    see as pleading defects in the consolidated complaint rather

21    than trying to move against 23 different complaints.

22             So Mr. Taylor sort of raised it, but that was the

23    point I wanted to raise, which is how to handle motions to

24    dismiss if we go down the route of having a master

25    complaint.

1          THE COURT:  And, again, as I indicated before, I'd

2     be interested, and Judge Tunheim would be interested, in

3     your thoughts about how you would propose to address that.

4     And, obviously, among other things, your thoughts about how

5     to -- you know, without going the route of a consolidated

6     answer, it doesn't necessarily mean that we want to see, you

7     know, half a dozen, you know, or eight separate motions to

8     dismiss either.  And so we would be interested in hearing

9     your thoughts about how something like that might be

10    organized in a way that minimizes the amount of redundant

11    briefing for this, not only for the sake of the parties, but

12    for the sake of the Court.

13          Thank you, Mr. Robison.

14          Anyone else on behalf of the defendants?  I don't

15    see any other hands.

16          All right.  Then let's turn to the second piece,

17    which had to do with establishing liaisons as well as a

18    steering committee that would further the coordination of

19    the cases across the bridge between the class plaintiffs and

20    the direct action plaintiffs.

21          And I'll start with the class plaintiffs this time

22    since I started with the direct action plaintiffs last time.

23    And, Ms. Van Engelen, your hand shot up first.

24          MS. VAN ENGELEN:  Thank you, Your Honor.

25          We are interested in this idea, and we would like

1      to confer among the classes and among the DAPs to consider a

2      structure.

3              It would be helpful if Your Honor would be

4      interested in issuing a ruling on what kind of tasks or

5      responsibilities you'd like the steering committee to have

6      so that we can assess that when meeting and conferring among

7      each other.

8              THE COURT:  I think Judge Tunheim was, to some

9      extent, interested in what tasks you would propose, but I

10     know he also has some ideas in mind for what he would

11     expect.

12             Let me talk with him about that.  One possibility

13     might be rather than a formal order, at least some kind of

14     letter or something that says, here are the kinds of things

15     the Court has in mind that would be on the plates of the

16     liaisons and the steering committee so that you can take

17     that into account in your conferring and also so if there

18     are things you think don't belong there or ought to be added

19     to it, then you've got something to react to.

20             Would that make sense?

21             MS. VAN ENGELEN:  That would make sense to us,

22     Your Honor, and it would be very helpful.  I believe that we

23     would be able to corral the parties and get you a joint

24     submission within a week of something like that.

25             THE COURT:  Okay.  Got it.  Thank you.  All right.

1    I will definitely talk with the Chief about that.

2           That suggests to me that I may be looking for two

3    letters or two sets of letters rather than one letter

4    addressing -- from each category of people addressing both

5    things because there may be a little different process for

6    reacting to the master complaint proposal and different

7    timing for reacting to that than for reacting on the liaison

8    and steering committee side of things.

9           Okay.  Anybody else?  Before I call on you,

10   Mr. Bates, let me just check and see if there's anyone else

11   among the class plaintiff counsel who wanted to react on the

12   liaison and steering committee side of things.  No.

13          All right.  Mr. Bates.

14          MR. BATES:  Thank you, Your Honor.

15          And before I speak to the liaison and steering

16   counsel issue, I wanted to raise one thing that Mr. Robison

17   just said about motions to dismiss, if I could.

18          THE COURT:  Yes.

19          MR. BATES:  And so Mr. Robison's discussion with

20   Your Honor about motions to dismiss and how that plays into

21   the master complaint underscores the concerns that Puerto

22   Rico has about being included in the master complaint

23   because as I mentioned to Your Honor, the defendants moved

24   to dismiss Puerto Rico's complaint.  That motion was denied

25   in part, and the defendants have since answered Puerto

1   Rico's operative complaint.  And so it gets confusing if

2   Puerto Rico is required to be bound by a master complaint

3   that defendants then intend to move to dismiss, even though

4   defendants have already had that opportunity with respect to

5   Puerto Rico.

6           And so I didn't understand Mr. Robison to be

7   saying that defendants intended to move again as to Puerto

8   Rico.  It just underscores the confusion with including

9   Puerto Rico in the master complaint.  But to the extent that

10  that is something that defendants are contemplating, Puerto

11  Rico would obviously have a problem with that.  So I just

12  wanted to say that.

13          THE COURT:  Understood.  Thank you, Mr. Bates.

14          Mr. Robison, I saw you come up on screen.  Did you

15  want to tie that off at all?

16          MR. ROBISON:  Sure, Your Honor.  Mr. Bates is

17  right.  We would not, on the defense side, be trying to move

18  again on something that we had already addressed and the

19  Court had already addressed on a prior motion to dismiss as

20  to Puerto Rico.

21          THE COURT:  All right.  Thank you, Mr. Robison.

22          MR. BATES:  And, Your Honor, if I could just turn

23  back to the liaison counsel and steering committee issue.

24  As I previewed for Your Honor in my earlier remarks, there

25  are substantive differences between the Commonwealth of

1    Puerto Rico and the other direct action plaintiffs.  The

2    Commonwealth of Puerto Rico is obviously not a commercial

3    entity.  They don't sell products.  They have claims on

4    behalf of their own citizens in a parens patriae capacity

5    that are different than the commercial claims that are being

6    brought by the direct action plaintiffs.  And so their

7    interests are different, their allegations are different.

8    And the evidence that Puerto Rico is going to marshal to

9    prove its case, although it may overlap with the direct

10   action plaintiffs in some ways, is going to be different.

11        So Puerto Rico has serious concerns about a

12   structure in which a liaison counsel who represents the

13   other direct action plaintiffs -- and as Your Honor

14   mentioned, it may be reasonable to group together because

15   they share common characteristics -- Puerto Rico doesn't

16   share those common characteristics, and so it would be

17   inappropriate for Puerto Rico to be represented by a lawyer

18   for the direct action plaintiffs that are commercial in

19   nature in this kind of a liaison counsel/steering committee

20   structure.

21        I'm happy to serve as liaison counsel for

22   governmental entities in such a structure, which at this

23   point includes Puerto Rico.  It may include others in the

24   future.  I don't know.  But if it would be helpful to the

25   Court in terms of structuring this proposal, I'm happy to

1    fill that role.  Puerto Rico's only point is that Puerto

2    Rico shouldn't be lumped in with the rest of the direct

3    action plaintiffs.

4            THE COURT:  Thank you, Mr. Bates.

5            MR. BATES:  Thank you, Your Honor.

6            THE COURT:  Anyone else from the plaintiff side?

7    Then I'll turn to other direct action plaintiffs.

8    Mr. McCahill, I see you.

9            MR. McCAHILL:  Good morning, Your Honor.  And I

10   apologize if my background is a little dark.  I think Mr.

11   Robison and I share both a barber and the lighting crew for

12   our Zoom.  So apologies.

13           But I just wanted to put on the record -- I'm sure

14   some of my co-DAP counsel will have more to say on this

15   particular issue on the liaison counsel issue and the

16   coordination, but I would just like to put on the record

17   that over the past four or five months, myself and a whole

18   host of DAP counsel who represent differing clients, people

19   in different streams of the distribution chain, have been

20   working collaboratively with the classes on scheduling

21   depositions and following up with defendants on various

22   things.  So that process is already -- informally has proved

23   to be pretty effective to date.

24           And I just wanted to let Your Honor know that that

25   was something that was going on and to put on the record

1      that we've been collaborating with counsel for the classes,

2      I think, personally, pretty effectively over the last few

3      months as discovery has heated up.

4                  THE COURT:  Thank you.

5                  Anyone else for the direct action plaintiffs?

6                  All right.  Let me get input from the defendants

7      then on kind of the organizational side of the conversation

8      today and liaison -- and obviously this has to do with the

9      organization among the plaintiffs, but certainly there are

10     implications for how the case goes from the defense

11     perspective, so I want to give you a chance for your input

12     as well.

13                 Anybody want to comment?  No, I don't see anybody

14     jumping to raise their hands.

15                 All right.  Well, I see Mr. Gant.  Did you have

16     something else?

17                 MR. GANT:  Yes, but I wanted to give the

18     defendants an opportunity first.  But to repeat a point that

19     I made in one of our previous conferences with the Court, we

20     believe that the defendants should also be required to

21     appoint a single liaison counsel if that is going to be a

22     requirement of the plaintiffs.  I can't conceive of any

23     reason why that shouldn't happen.  And the case, if it's

24     going to be organized, it should be organized on both sides.

25                 So if the defendants have one liaison counsel

1      among the DAPs and one among the classes to go to, we would

2      like the same convenience, Your Honor.  Thank you.

3                THE COURT:  Makes sense.

4                Anybody from the defense side want to comment now

5      that they've heard Mr. Gant's remarks?

6                MR. ROBISON:  Your Honor, Brian Robison for

7      Smithfield.

8                I don't think the defendants have talked much

9      about the idea of liaison counsel.  I think that defendants

10     have been able to coordinate well with all of the various

11     plaintiff groups, but we will certainly talk about it.

12     We'll put something in a post-conference letter if we have

13     any problems with it.

14               But it sounds like what the Court envisions is one

15     single person as sort of a point of contact for scheduling

16     conferences and meet-and-confers and that sort of thing and

17     not something that would be a person who would be authorized

18     to bind parties to positions and that sort of thing.  So

19     defendants' side I just don't think came to this conference

20     with a definite position on that, but we will put something

21     in writing.

22               THE COURT:  All right.  Thank you, Mr. Robison.

23               Anybody else?  I see Mr. Gant's hand still up, but

24     I think that's still up and not up anew.

25               All right.  Well, thank you.  Given that I just

1    kind of threw this at you, I really, really appreciate the

2    thoughtful remarks that you offered today.  I know Judge

3    Tunheim will appreciate them as well.  We've got a court

4    reporter here for a reason.  She's been taking it down, but

5    I'll also be reporting back to Judge Tunheim kind of with my

6    distillation of what I heard, and we will talk about it

7    further.

8            Let's talk now about your opportunity to provide

9    some written remarks.  I think that the point that was made,

10   and I don't remember who made it, about an opportunity to

11   react to the other side's comments, I think that makes sense

12   as long as we don't take it to an extreme.  We'd like to

13   move this along fairly promptly.

14           So let me ask, would you -- and what I want to do

15   first is let's just talk about your written thoughts on the

16   master complaint proposal.  We'll set the liaison and

17   steering committee piece aside for a moment.  Let's just

18   talk about the master complaint proposal.

19           Would you all be able to provide any supplemental

20   written remarks by close of business Monday, for example?

21   My idea being that I would then look for any brief responses

22   to each other's remarks by close of business on Wednesday.

23           Let me just hear if anybody believes that doesn't

24   give you adequate time to react.

25           Mr. Kaplan?

1          MR. KAPLAN:  Your Honor, I would suggest a week,

2     one week.  We have a weekend coming up.

3          THE COURT:  We do.  You guys don't work weekends?

4          MR. KAPLAN:  Yeah, we do, unfortunately, but . . .

5          THE COURT:  Yes.  So do we, unfortunately.

6          How about close of business Tuesday and get

7     replies, if you will, by close of business Thursday?  Can

8     you make that work?

9          MR. ROBISON:  That works for the defendants, Your

10    Honor.

11         THE COURT:  Mr. Gant, Mr. Kaplan, can you make

12    that work?

13         MR. GANT:  Your Honor, we'll do whatever you ask

14    us to.  I will just point out that as a dad with kids on

15    spring break all of next week, it's going to be a particular

16    challenge.  I don't know if I'm the only one affected by

17    that.  And I know spring break varies by school and by

18    jurisdiction, but at least for me, next week is spring

19    break, and I'm going to be on full-time co-parenting duty.

20         But if I may, aside from that point of personal

21    privilege, Your Honor -- and we'll do whatever you need us

22    to do and you think is appropriate, But I did have a

23    question about the submissions.

24         THE COURT:  Okay.  Go ahead, Mr. Gant.

25         MR. GANT:  And I'm not trying to make this more

1    argument, but as I expressed, we have deep concerns and

2    questions about the implications on the schedule for what

3    the Court appears to be asking us to do.  That's compounded

4    by the defendants' unsurprising observation that they plan

5    to move to dismiss the consolidated pleading that we're

6    going to be compelled to file.  And under the ordinary

7    course of things, that would then obviate their obligation,

8    which has already passed, to file a responsive pleading.

9          So we're looking at not having defenses and

10   affirmative defenses and an answer for months, and perhaps

11   until the end of fact discovery.  And I am genuinely

12   confused and concerned about how we're going to manage these

13   two facts that you're asking us to undertake this process,

14   which will be filed by motion to dismiss briefing on the one

15   hand, and the other fact that we have a discovery schedule

16   that is actively underway and has an impending deadline.

17   And is that something that you want us to address in these

18   filings?  That's the specific administrative question, Your

19   Honor.

20         THE COURT:  The administrative question of how the

21   discovery schedule is going to interact with motions to

22   dismiss, you mean?

23         MR. GANT:  Yes.

24         THE COURT:  I think --

25         MR. GANT:  Both the schedule for filing an amended

1    consolidated DAP pleading and the presumably inevitable

2    motion to dismiss briefing which will follow that, how those

3    two things are going to interact with the ongoing discovery

4    and the discovery deadline that is currently in place.

5           THE COURT:  I'm trying to think how to respond to

6    that.  I've certainly heard you loud and clear on your

7    concerns along those lines.  I will make sure that those are

8    conveyed to Judge Tunheim, and you can also reiterate and

9    underscore those in your letter as well.

10          At this point I don't -- I don't think we're --

11    let me think about this.

12          Well, let me ask you a clarifying question.  If I

13    said yes, I'd like you to address that in your letter, what

14    do you have in mind?  I'm trying to get a sense of kind of

15    what specifically you're asking.

16          MR. GANT:  Well, in terms of what the substance of

17    a response would be, it would be to caucus and then come up

18    with our view.

19          All I can tell you, which I've already conveyed,

20    is that it's extremely challenging and prejudicial, and we

21    have depositions that we are taking and will take in the

22    coming months and we'll do that without the benefit of

23    having received a responsive pleading or defenses and

24    affirmative defenses.  And, you know, at a minimum, I would

25    think that we can no longer meet the discovery deadline

1    that's in place and that we would need to have the right to

2    reopen depositions, for example.  But we would need to

3    caucus as a group and hopefully come up with a unified

4    position or express different positions of different DAPs on

5    the question.

6            So the question I was posing is do you want us to

7    address that in the letter or do you contemplate addressing

8    that in some other way at some other time?

9            THE COURT:  Well, I think the risk that that

10   would -- the risk that that would become necessary I think

11   is the same as the risk you identified in this conversation.

12   I think you can reiterate that.

13           I don't think you need to get into the

14   nitty-gritty about and here is precisely how much more time

15   we would need and that kind of thing.  If you've got

16   thoughts about how long it would take to develop a master

17   amended complaint, I think that's a point you've raised

18   before, the plaintiffs generally have raised before.  I

19   think that if you've got some thoughts about if we go this

20   route, this is how long we would need to do this and then

21   pointing out that that has implications potentially for then

22   when motions to dismiss are filed and then whether discovery

23   can be completed on time, to that level of detail, yes.  But

24   I don't know that we're looking for you to propose an entire

25   new scheduling order, if you will, based on the proposal of

1    a master amended complaint.

2              Does that answer your question?

3              MR. GANT:  It does, Your Honor.  That's helpful.

4    I think I understand what you have in mind.  Thank you.

5              THE COURT:  Anything else?

6              All right.  So I'd like to get follow-up letters

7    on the master amended complaint by close of business on the

8    22nd.  Any responsive letters by close of business on the

9    24th -- actually, I won't even be -- yeah, never mind.  I

10   was about to reverse myself, but no.  So close of business

11   the 22nd; close of business the 24th.

12             With regard to the liaison and steering committee

13   proposal, let me talk to Judge Tunheim hopefully today about

14   the idea that it would be easier to provide specific

15   comments on that with some more guidance about what tasks

16   would be on the plates of those respective roles.  And I

17   will get back to you on that just as soon as I have a chance

18   to talk with Judge Tunheim, and then we'll set a deadline

19   for responding in light of that.

20             I know, Ms. Van Engelen, you suggested a week to

21   respond so that the different groups of people could

22   coordinate with each other on that.  That will probably be

23   fine, but I want to confirm that with Judge Tunheim as well.

24             MS. VAN ENGELEN:  Thank you, Your Honor.

25             THE COURT:  All right.  I think that covers what

1    we came to cover today.  Thank you very much for your

2    listening and your reacting and your thoughtful and

3    respectful comments.  And I will look forward to your

4    letters and I will, in the meantime, be chatting with Judge

5    Tunheim about what I've learned today.

6            Take care, everybody.

7                (Court adjourned at 11:30 a.m.)

8

9                *     *     *     *     *

10                **REPORTER'S CERTIFICATE**

11        I, Paula K. Richter, certify that the foregoing is

12   a correct transcript from the record of proceedings in the

13   above-entitled matter.

14

15            Certified by:  *s/ Paula K. Richter*
                             *Paula K. Richter, RMR-CRR-CRC*
16

17

18

19

20

21

22

23

24

25