**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Civil No. 0:18-cv-01776-JRT-HB |
| This Document Relates To:<br><br>ALL ACTIONS | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL INDIANA PACKERS CORPORATION TO COMPLY WITH SUBPOENA DUCES TECUM** |

<u>**REDACTED VERSION – FILED PUBLICLY**</u>

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

III.   LEGAL STANDARD ........................................................................................ 5

IV.   ARGUMENT .................................................................................................... 6

     A.    The Subpoena Seeks Relevant Information. .................................. 6

     B.    Indiana Packers Cannot Show an Undue Burden and Has Made No
           Effort to Negotiate Search Parameters ........................................... 9

IV.   CONCLUSION ................................................................................................ 14

i

## I.  **<u>INTRODUCTION</u>**

Direct Purchaser Plaintiffs, Consumer Indirect Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, and the Commonwealth of Puerto Rico (collectively, "Plaintiffs") issued a subpoena to Indiana Packers Corporation ("Indiana Packers") seeking nine limited categories of documents. After meeting and conferring, Plaintiffs agreed to seek only Indiana Packers' structured data (e.g., transaction data) and three categories of documents that all, generally, concern competitive conditions in the pork industry (communications with other Pork Integrators, communications with Agri Stats, and other documents concerning competitive conditions in the pork market).

Ultimately, Indiana Packers was willing to produce only its structured data and limited substantive documents that can be acquired through a "go get" search; this was expressly conditioned upon Plaintiffs not seeking emails or other ESI that would require search terms to locate it. As a practical matter, the types of documents that can be obtained through a "go get" search (e.g., board minutes, investor calls and earnings reports, or Agri Stats reports) are unlikely to evince the Defendants' conspiratorial communications and are instead more probative of Indiana Packers' day-to-day business and more general industry information.

Plaintiffs proposed search terms and custodians to Indiana Packers. The search terms were substantially similar to those utilized by other third parties in this litigation, but Plaintiffs also expressly offered to modify and tailor the search methodology if it hit on too many documents. Plaintiffs also offered to provide a document hosting and review platform, at Plaintiffs' expense but which only Indiana Packers could access. Indiana

Packers rejected Plaintiffs' offer and stated that it and Plaintiffs were at an impasse unless Plaintiffs would agree not to seek *any* custodian-based searches for documents.

The information Plaintiffs seek from Indiana Packers is relevant and proportional to the needs of the case. Plaintiffs remain willing to negotiate a search methodology—including the identity and number of custodians, and the particular search terms to be utilized—but will not agree to forego the production of any emails or custodial documents at all. Because Indiana Packers and Plaintiffs are at an impasse, Plaintiffs now seek an Order compelling Indiana Packers to comply with the subpoena (specifically, requests 1, 2, 4, and 9).

## II.   <u>BACKGROUND</u>

Indiana Packers describes itself as "one of the Midwest's premier food companies" and "a fully integrated food supplier with a strong pork background that operates its sourcing, production, sales and shipping all from one Midwest location."[1] Emphasizing that it oversees all stages of production, from procurement to processing and shipping,[2] Indiana Packers offers a wide variety of products, from hams and lunchmeats to bacon and fresh pork items.[3]

Indiana Packers was previously named as a Defendant in this litigation. *See, e.g.*, Direct Purchaser Plaintiffs' Third Am. & Consolidated Class Action Compl., ECF No. 431

---

[1] https://indianapackerscorp.com/company/message-from-president/ (last accessed 1/21/2022); https://indianapackerscorp.com/company/ (last accessed 1/21/2022).
[2] *Id.*
[3] *See* https://indianapackerscorp.com/sales/retail/ (last accessed 1/21/2022).

("Complaint" or "TAC"). The Defendants moved to dismiss, and the Court granted the motion with respect to Indiana Packers (but not the other Defendants), concluding that Plaintiffs did not sufficiently allege parallel conduct—specifically, supply reduction—involving Indiana Packers. Mem. Op. & Order 14, ECF No. 519.



*See, e.g.*, Ex. 1[4] (JBS-PORK-00880538); Ex. 2 (SBF0349004); Ex. 3 (SMITHFIELD01177237). ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ *See, e.g.*, Ex. 4 (SMITHFIELD03678665). Because of Indiana Packers' size, prominence within the pork industry, ▮▮▮▮▮▮

▮▮▮▮▮▮▮, Plaintiffs subpoenaed Indiana Packers. *See* Ex. 5 (Subpoena to Indiana Packers). The original subpoena contained nine requests, but after Indiana Packers served objections, and following several meet and confers, Plaintiffs limited the subpoena to four. *See* Ex. 6 (Objections and Responses to Subpoena); Ex. 7 (Email Exchange at Oct. 29, 2021 email from J. Bourne); Ex. 8 (Dec. 1, 2021 Letter from J. Bourne). These requests are:

> **Request No. 1**: Communications between You and any Pork Integrator relating to Competitive Conditions[5] in the Pork Industry, including email and text messages;

---

[4] All references to "Exhibit __" in this Memorandum refer to the Exhibits to the Declaration of Joseph C. Bourne in Support of Plaintiffs' Motion to Compel Indiana Packers Corporation to Produce Documents Responsive to Subpoena Duces Tecum ("Bourne Declaration").

[5] The term "Competitive Conditions" is defined in the Schedule A to the subpoena as "Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares."

**Request No. 2:** Communications between You and Agri Stats relating to Competitive Conditions in the Pork Industry;

**Request No. 4:** Structured data, such as databases regarding customer purchases of Pork during the Relevant Time Period. Plaintiffs will meet and confer with you regarding the exact data fields and format of the production of the structured data; and

**Request No. 9:** All Documents relating to Competitive Conditions in the market for Pork, including reports, presentations, industry publications, business plans, studies, analyses, or other Documents concerning forecasted, projected, estimated, planned or actual: (i) market shares; (ii) consolidation, mergers, acquisitions, or joint ventures; (iii) production or processing capacity, capacity reduction, capacity utilization, or operating rates; (iv) fixed or variable costs; (v) pricing; (vi) inventories; (vii) entry or exit conditions; (viii) inventories; (ix) supplies/supply trends; (x) data, publications, or other sources use in the regular course of business by You to monitor Pork demand in the United States; (xi) substitute products; (xii) exports; (xiii) raw materials; (xiv) Pork Supply Factors; or (xv) other industry statistics.

*See* Ex. 5 (Subpoena); Ex. 8 (Dec. 1, 2021 Letter from J. Bourne).

With respect to Request No. 4, Plaintiffs provided a list of 17 fields for which they sought data (to the extent those data fields exist and are maintained by Indiana Packers). *See* Ex. 8 (Email Exchange at Oct. 29, 2021 email from J. Bourne); Ex. 8 (Dec. 1, 2021 Letter from J. Bourne). Regarding Requests Nos. 1, 2, and 9, Plaintiffs provided a list of 116 search strings to be run against the custodial files of nine current and former employees of Indiana Packers. *See* Ex. 9 (Search Terms); Ex. 8 (Dec. 1, 2021 Letter from J. Bourne). The search terms are substantially the same as the search terms used in the negotiations with other non-parties in this case. Bourne Decl. ¶ 11. The proposed custodians are the

same custodians that Indiana Packers and Plaintiffs agreed to when Indiana Packers was a Defendant in the case. *See* Ex. 8 (Dec. 1, 2021 Letter from J. Bourne). To further minimize the burden in reviewing and producing these documents, Plaintiffs offered a document hosting and review platform (DISCO) to Indiana Packers to use for their search, review, and production, at no cost to them. *See id.*

With respect to Request No. 4, a request for structured data, Indiana Packers stated it could produce 12 of the 17 proposed data fields. *See* Ex. 10 (Dec. 28, 2021 Letter from B. Miller). Indiana Packers conditioned this potential production, however, on Plaintiffs eliminating Requests Nos. 1, 2, and 9. *See id.* Thus, Indiana Packers conditionally agreed to produce a subset of the requested structured data, but only if Plaintiffs completely withdraw their requests for any unstructured data requiring a search of any custodial files. Indiana Packers has made clear that is a firm line in the sand from its perspective; it will not search for or produce any emails, regardless of any further negotiation and narrowing of proposed search terms and custodians that could occur. *See id.*

## III.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 45(a)(1)(D) authorizes the issuance of a subpoena to a non-party to produce documents, electronically stored information, or other tangible things for inspection. The scope of discovery under Rule 26(b), which permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," applies equally to subpoenas under Rule 45. Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena

is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a)

("A party may serve on any other party a request within the scope of Rule 26(b).").

"[P]ursuant to a subpoena, a non-party can be compelled to produce evidence regarding any matter relevant to the claim or defense of any party, unless a privilege applies." *Macro Techs., LLC v. Midkiff*, No. 19-cv-2323 (PJS/LIB), 2020 WL 12442102, at *4 (D. Minn. Dec. 7, 2020) (quoting *Keefe v. City of Minneapolis*, No. 09-cv-2941 (DSD/SER), 2012 WL 7766299, at *3 (D. Minn. May 25, 2012) (internal quotations and alterations omitted)); *see also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). While a Rule 45 subpoena's requests must be relevant and proportional to the needs of the case, "[r]elevancy in this context has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Jeffcoat Enters., Inc. v. Charter Commc'ns, Inc.*, No. 4:20-MC-00112-AGF, 2020 WL 2104732, at *2 (E.D. Mo. May 1, 2020) (internal quotations omitted). The party that resists production bears the burden of establishing lack of relevancy or undue burden. *Midkiff*, 2020 WL 12442102, at *4.

## IV.   <u>ARGUMENT</u>

### A.   <u>The Subpoena Seeks Relevant Information.</u>

Indiana Packers' documents and materials are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiffs allege that a conspiracy to fix, raise, maintain, and stabilize the price of pork was carried out from

at least 2009 through the present. TAC ¶¶ 1-2. Plaintiffs further allege that during this period, eight companies controlled eighty percent of the wholesale pork integration market, one of which was Indiana Packers. TAC ¶¶ 1-2. Indeed, Indiana Packers holds itself out to be not only "one of the Midwest's premier food companies" but also a vertically integrated food supplier with a strong pork background that operates its own sourcing, production, sales, and shipping. As a major player in the pork industry during the relevant period, Indiana Packers possesses documents relevant to Plaintiffs' claims of price fixing and supply restraints in the pork industry. The subpoena requests, therefore, satisfy the liberal discovery permitted by Rule 26(b).

Notably, Indiana Packers engaged in conduct similar to the conduct the Defendants used to effect the conspiracy, and thus is likely to have documents relevant to the Defendants' participation in the conspiracy. Indiana Packers participated in Agri Stats, a benchmarking service that collected and provided easily de-anonymized benchmarking data to its participants. Although Indiana Packers was dismissed from the case as a Defendant, as a participant in Agri Stats, it received information about the remaining Defendants' data while compiling and sending its own data to Agri Stats, which Defendants could have ultimately used to carry out the conspiracy. *See, e.g.*, TAC ¶¶ 34, 40-42, 44-49, 52-57. Internal communications between Indiana Packers employees concerning its communications with Agri Stats also almost certainly exist.

Defendants and their co-conspirators also had opportunities to conspire through their participation in various forums, such as industry and trade association meetings. These occasions provided industry members the ability to discuss pricing, production, and

other non-public proprietary information. TAC ¶ 98. For example, Indiana Packers executives Gary Jacobson and Russ Yearwood served on the boards of the former American Meat Institute and the subsequent North American Meat Institute, organizations that boasted "95 percent of red meat . . . in the US and their suppliers throughout America." TAC ¶¶ 109; 110(h). ████████████████████████████████

████████████████████████████████████████████

████████████████ *See* Ex. 11 (SBF0218426). ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ *See* Ex. 12 (JBS-PORK-00096504); Ex. 13 (TF-P-001698022); Ex. 14 (HFC-PORKAT0000025940). ████████████████████

████████████████████████████████████████████

████████████████████████ *See* Ex. 15 (TF-P-001604401).

Of course, communications pertaining to the pork industry were not limited to invitations and mass emails; Indiana Packers employees communicated with other Defendants and Pork Integrators through independent emails. For example, ████████

████████████████████████████████████████████

████████████████████████████████████████ *See e.g.*, Ex. 16 (SMITHFIELD01237636). Other documents indicate that ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ *See* Ex. 17 (TF-P-000646687); Ex. 18 (TF-P-000581785). Still other

documents reflect ███████████████████████████████████████

████████. *See* Ex. 19 (JBS-PORK-01009311). Further, employees of Indiana Packers

likely received important industry information and could have shared that information with

a Defendant or other Pork Integrator, thereby furthering the conspiracy, whether

intentionally or inadvertently on Indiana Packers' part. Documents in response to Requests

No. 1 and 9 capture these communications.

### B.   Indiana Packers Cannot Show an Undue Burden and Has Made No Effort to Negotiate Search Parameters

Indiana Packers has not shown, and cannot show, that complying with this subpoena

is disproportional to the needs of the case. The information Plaintiffs seek to obtain is

highly relevant and cannot be fully obtained from the parties to the litigation. While

Defendants' productions include some communications between them and Indiana

Packers, Plaintiffs cannot rely solely on Defendants to produce the same documents that

are in the possession, custody, or control of Indiana Packers. There appear to be some gaps

in Defendants' document productions that, to-date, have not been resolved. Bourne Decl.

¶ 22. And in any event, internal communications *about* communications between Indiana

Packers and a Defendant can be produced only by Indiana Packers.

Indiana Packers has also suggested that because it had the burden of participating in

the litigation until it was dismissed from the case as a Defendant, any non-party discovery

from Indiana Packers is not proportional to the needs of the case. *See* Ex. 10 (Dec. 28, 2021

Letter from B. Miller). But there is no such "former litigant" exception in the text of Rule

45. Indeed, courts have instructed parties that subpoenas are the appropriate method for

getting discovery from a former party. *See, e.g.*, *Wagle v. Mich. Dept. of Corrs.*, No. 10–CV–10506, 2012 WL 4795638, at *2 (E.D. Mich. Oct. 9, 2012) (stating that a party must use a Rule 45 subpoena to retrieve documents from a party that was dismissed from the case); *Gil v. Cty. of Suffolk*, No. CV06-1683(LDW)(ARL), 2007 WL 2071701, at *1 (E.D.N.Y. July 13, 2007) ("As a threshold matter, . . . [the district court judge] granted defendant Spota's motion to dismiss the claims asserted against him. Given that he is no longer a party, the plaintiffs correctly acknowledge that his deposition must be compelled by subpoena."); *Bouchard v. New York Archdiocese*, No. 04 Civ. 9978(CSH)(HBP), 2007 WL 2728666, at *5 n.3 (S.D.N.Y Sept. 19, 2007) ("Since Cardinal Egan is no longer a party to this action, plaintiff will now have to serve a subpoena to compel his deposition."); *Rushing v. Bd. of Supervisors of the Univ. of La. Sys. (Southeastern Louisiana University)*, No. 06–623–RET–SCR, 2008 WL 4330186, at *2 (M.D. La. Sept. 15, 2008) (former defendant could not appear for deposition unless he was issued a subpoena). Even in a case where the court determined that a subpoena to a former party was too broad, the court simply ordered the subpoenaing party to issue renewed, more tailored requests. *Agilysys, Inc. v. Hall*, No. 1:16-CV-03557-ELR, 2018 WL 1229990, at *6 (N.D. Ga. Jan. 11, 2018) (ordering more tailored requests when the original subpoena contained 29 requests, many of which were no longer relevant to the plaintiff's claims). Plaintiffs' efforts to negotiate the requests and search terms, propose custodians, and provide a free document review platform are consistent with these principles.

In its correspondence, Indiana Packers sought to analogize to an order in *In re Turkey Antitrust Litigation*, No. 1:19-cv-08318, Doc No 305. *See* Ex. 10 (Dec. 28, 2021

Letter from B. Miller); Ex. 20 (Turkey Order). There, following initial discovery requests, the defendants moved for a protective order arguing that the plaintiffs' discovery requests were overly burdensome, not proportional to the needs of the case, and that they improperly related to a claim that was dismissed from the case. *See* Ex. 20 (Turkey Order at 2-3, 5). Relevant here, the court determined that one of the plaintiffs' discovery requests was vague and overbroad as written. The original request was, as paraphrased by the court: "all documents or communications between Defendants related to competitive conditions in the turkey industry." *See id.* at 11. As such, the court simply instructed the plaintiffs to reformulate the request more specifically, stating it would "leave that task to the parties." *Id.*

The *Turkey* order does not foreclose the relief Plaintiffs seek. The *Turkey* court did not comment on the appropriateness of search term and custodial file searches to refine the requests; to the contrary, the court instructed the parties to engage in a "meet-and-confer consultation" and to discuss "reasonable search terms for electronically-stored information." *Id.* at 7. Here, Plaintiffs have proposed just that. Plaintiffs sent search terms and proposed document custodians to further refine and narrow the requests. In their proposal, Plaintiffs offered to review search term hit reports and listen to any particular concerns Indiana Packers might have with the specific search terms. See Ex. 8 (Dec. 1, 2021 Letter from J. Bourne). If necessary, Plaintiffs offered to modify and tailor search terms in order to decrease the total number of documents Indiana Packers has to review. *See id.* Plaintiffs offered a document hosting and review platform to which Plaintiffs would have no access and which would be free to Indiana Packers. *See id.* These efforts to work

collaboratively with Indiana Packers mitigate the burden on Indiana Packers. However, Indiana Packers rejected these offers and has foreclosed any further negotiation of search methodology by refusing to consider any request involving search terms and custodians.

Indiana Packers' decision to draw a line in the sand at the use of search terms on custodial ESI is contrary to how courts in this District evaluate disputed document requests. Courts routinely encourage parties to negotiate search terms and custodial files to identify and produce relevant documents. *See, e.g.*, *B. Riley FBR, Inc. v. Clarke*, No. 18-CV-2318 (NEB/BRT), 2020 WL 2488045, at *1 (D. Minn. May 13, 2020) (parties agreed, after hearing, to meet and confer to discuss which search terms to apply in response to a subpoena); *In re Telehealth Prods. Corp. Ltd.*, No. 0:20-mc-00060-WMW-KMM, 2021 WL 1758965, at *1 (D. Minn. May 4, 2021) (requiring that the parties meet and confer regarding the use of search terms); *Hodges v. Pfizer*, No. 14-cv-4855 (ADM/TNL), 2015 WL 13804602, at *8-9 (D. Minn. Dec. 15, 2015) (approving use of approximately 228 search terms across 21 custodians*); Escamilla v. SMS Holdings Corp.*, No. 09–2120 (ADM/JSM), 2011 WL 13243580, at *42 (D. Minn. June 28, 2011) (requiring the parties to develop a list of search terms to use on the Defendants' key custodians). Indiana Packers' demand that Plaintiffs specifically request discrete documents, i.e., "go get" documents, is unhelpful because of the information asymmetry between it and Plaintiffs. *See* Ex. 11 (Dec. 28, 2021 Letter from B. Miller). It is also a hollow offer. The types of documents Plaintiffs could seek with a "go get" search would be limited to documents such as board minutes, meeting minutes, investor calls, and corporate filings—documents that, while relevant and

discoverable, would be far less probative of the Defendants' conspiracy than emails and other communications concerning competitive conditions in the pork industry.

Finally, Indiana Packers has not shown why Plaintiffs' requests and proposals are disproportional to the needs of the case. *See N.U. v. Wal-Mart Stores, Inc*., No. 15-cv-4885, 2016 WL 3654759, at *7 (D. Kan. July 8, 2016) (overruling "relevance and overbreadth" objections in part because the party resisting discovery failed to address the Rule 26(b) factors). Indeed, it is Indiana Packers' burden to quantify its claimed burden so Plaintiffs and the Court can evaluate it. *Abhe & Svoboda, Inc. v. Hedley*, No. CV 15-1952 (WMW/BRT), 2016 WL 11509914, at *3 (D. Minn. Mar. 15, 2016) ("A party asserting undue burden should submit something in support, whether it be by affidavit or other evidence, to specify the nature of the burden."). Indiana Packers has not provided hit reports or any specific, factual information about its claimed burden, such as the volume of any ESI to be collected, the sources where it is maintained, or the time and expense involved in making such a collection. Instead, it has chosen not to quantify its burden and instead rest on the legally unsupported proposition that email searches are not proportional when the third party is a former party.

As Plaintiffs' efforts to negotiate and work with Indiana Packers demonstrate, Indiana Packers' compliance with Requests 1, 2, 4 and 9 in the subpoena will be proportional to the needs of the case. Third parties routinely produce structured data in antitrust litigation. *See, e.g.*, *In re Novartis & Par Antitrust Litig.*, No. 2:19-MC-00149, 2019 WL 5722055, at *6 (E.D. Pa. Nov. 5, 2019). Plaintiffs have proposed a reasonable search methodology that other third parties have accepted, and they remain willing to

negotiate the particulars of that proposed search methodology, including further refinement of both the custodians and the search terms.

## IV.    CONCLUSION

For the reasons set forth above, and on the basis of the entire record in this litigation, Plaintiffs respectfully request the Court grant Plaintiffs' Motion.

Dated:  March 17, 2022

Respectfully submitted,

*/s/ Joseph C. Bourne*

Joseph C. Bourne (MN #0389922)
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Arielle S. Wagner (MN #0398332)
Simeon A. Morbey (MN #0391338)
Stephen M. Owen (MN # 0399370)
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
100 Washington Avenue South, Suite
2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
jcbourne@locklaw.com
wjbruckner@locklaw.com
bdclark@locklaw.com
aswagner@locklaw.com
samorbey@locklaw.com
smowen@locklaw.com

*/s/ Bobby Pouya*

Bobby Pouya (Pro Hac Vice)
Clifford H. Pearson (Pro Hac Vice)
Daniel L. Warshaw (Pro Hac Vice)
Michael H. Pearson (Pro Hac Vice)
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN #0387900)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com

Bruce L. Simon
Benjamin E. Shiftan
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com
bshiftan@pswlaw.com

*Co-Lead Class Counsel for Direct
Purchaser Plaintiffs*

/s/ Shana E. Scarlett
Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO
LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO
LLP
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

*Co-Lead Counsel for Consumer Indirect
Purchaser Plaintiffs*

/s/ Shawn M. Raiter
Shawn M. Raiter (MN# 240424)
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6518
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Blaine Finley
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com

*Co-Lead Counsel for Commercial and
Institutional Indirect Purchaser Plaintiffs*

_/s/ Kyle G. Bates_
Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
T: (415) 633-1908
kbates@hausfled.com

Peter B. Schneider
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
3700 Buffalo Speedway, Suite 300
Houston, Texas 77098
T: (713) 338-2560
F: (415)421-7105
pschneider@schneiderwallace.com

Todd M. Schneider
Matthew S. Weiler
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell St., Suite 1400
Emeryville, California 94608
T: (415) 421-7100
tschneider@schneiderwallace.com
mweiler@schneiderwallace.com

Garrett W. Wotkyns
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
T: (480) 428-0145
gwotkyns@schneiderwallace.com

Domingo Emanuelli-Hernández
Attorney General
Guarionex Díaz Martínez
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
T: (787) 721-2900, ext. 2600, 2601
F: (787) 721-3223
gdiaz@justicia.pr.gov

_Counsel for the Commonwealth of Puerto Rico_