# EXHIBIT 5

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

|  |  |  |
|---|---|---|
| IN RE PORK ANTITRUST LITIGATION | ) ) ) | Civil Action No. 0:18-CV-01776-JRT-HB |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Indiana Packers Corporation, P.O. Box 318, Highway 421 South, County Road 100 North, Delphi, IN 46923
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **As described in the attached Schedule A.**

| Place:   111 Monument Circle, Suite 4350 Indianapolis, IN 46204 | Date and Time: July 7, 2021, 9:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   June 7, 2021

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
| _____ *Signature of Clerk or Deputy Clerk* | s/ Brian D. Clark _____ *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Class Plaintiffs, who issues or requests this subpoena, are:

Brian D. Clark, Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200 Minneapolis, MN  55401 (612) 339-6900 bdclark@locklaw.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:16-CV-08637-TMD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)*_____.

☐        I served the subpoena by delivering a copy to the named person as follows: 

☐        I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United State, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                                          *signature*

                                                           _____
                                                                     *Server'sPrinted name and title*

                                                           _____
                                                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A)  within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B)  within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i)  is a party or a party's officer; or
    (ii)  is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A)  production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B)  inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A)  *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B)  *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii)  These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A)  *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i)  fails to allow a reasonable time to comply;
    (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)  subjects a person to undue burden.
  (B)  *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i)  disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii)  disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C)  *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i)  shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii)  ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A)  *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B)  *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C)  *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D)  *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i)  expressly make the claim; and
    (ii)  describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## PLAINTIFFS' REQUESTS FOR PRODUCTION
## TO INDIANA PACKERS CORPORATION

Pursuant to the foregoing subpoena *duces tecum*, Indiana Packers Corporation is required to produce, by the date stated on the subpoena, the documents requested herein.

## INSTRUCTIONS

1.      Counsel for Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico ("Plaintiffs") will discuss with you the format and manner in which electronic and paper documents shall be produced.  Unless otherwise agreed, all documents shall be provided in compliance with all provisions of the ESI Protocol Order in place for this matter (Dkt. No. 292, attached).  However, Plaintiffs are willing to receive native productions of documents from You and Bates number those documents on Your behalf to minimize the burden and expense associated with processing and labeling the documents.

2.      Pursuant to Section II.J of the November 26, 2018, Protective Order (Dkt. No. 212, attached), You are entitled to the protections of the Protective Order as a third party receiving a subpoena in this matter.

3.      The Relevant Time Period for each request below is January 1, 2008 through the present, unless otherwise noted.

## DEFINITIONS

1.      "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2.      "Communication" or "Communicated" means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not

limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

3.      "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

4.      "Defendant" means any company, organization, entity or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers employees, agents, attorneys, representatives or any persons acting or purporting to act on behalf of a Defendant. The currently named Defendants in this litigation are Agri Stats, Inc. ("Agri Stats"), Clemens Food Group, LLC, The Clemens Family Corporation  ("Clemens"), Hormel Foods Corporation, Hormel Foods, LLC ("Hormel"), JBS USA Food Company ("JBS" or "JBS USA"), Seaboard Foods LLC, Seaboard Corporation ("Seaboard"), Smithfield Foods, Inc. ("Smithfield"), Triumph Foods, LLC ("Triumph"), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

5.      "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any

words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics. To illustrate (and not to limit) the breadth of this definition, "document" in this sense papers or objects bearing handwritten notes, material written in Braille, contracts, letters, bills, telegrams, notes, e-mail, voice mail, books, desk calendars, memoranda, envelopes, drafts or partial copies of anything, signs, photographic negatives and prints, video and audio recordings of all kinds and the contents of storage media used in data-processing systems. Each and every draft of a document is a separate document for purposes of these document requests.

6.      "Identity" or "identify" means:

   a.      when used with reference to a natural person, to state his or her full name, and if known, his or her present home address, present business address, present home and business telephone numbers, present or last known position and business affiliation and contact information; and

   b.      when used in reference to any entity, such as a partnership, joint venture, trust or corporation, to state the full legal name of such entity, each name under which such entity does business, the entity's street address, the entity's telephone number, the identity of the chief operating officer, manager, trustee or other principal representative and the identity of those persons employed by or otherwise acting for such entity who are

known or are believed to possess the knowledge or information responsive to the document request and for which the entity was identified.

7.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (Snap Chat, Confide, Signal, etc.);

- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange.EDB);

- Word processing documents (e.g., MS Word or WordPerfect files and drafts);

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., Quickbooks, Money, Peachtree data);

- Image and Fascimile Files (e.g., PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., AVI and .MOV files);

- Unstructured Data;

- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies)

- Presentations (e.g., PowerPoint, Corel Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content);

- Cloud based or other virtualized ESI, including application, infrastructure and data.

8.      "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

9.      "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

10.      "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

11.      "Person" means, without any limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

12.      "Policy" or "Procedure" means any rule, practice, or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

13.      "Pork" and "Swine" have the same meaning as the definition in ¶ 2, n.2 of Direct Purchaser Plaintiffs' Third Amended and Consolidated Complaint (ECF No. 431), which states:

> For the purposes of this complaint, "pork" includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon. From time to time in this complaint,

"pork" and "swine" are used interchangeably, particularly when referring to the pork or swine industry.

14.     "Pork Integrator" means any Defendant (see above) and any non-Defendant entity, including but not limited to: Abbyland Foods, Inc.; ALL Holding Co., LLC; Allied Producers Cooperative; Applegate Farms, LLC; BEF Foods, Inc. (a Post Holdings Co.); Boar's Head; Butterball, LLC (Gusto Packing Co.); Carthage System; Cargill Pork, LLC; Christensen Farms; Clougherty Packing LLC; Conestoga Meat Packers; Eichelberger Farms; Farmington Foods; Fisher Ham and Meat Co.; Golden State Foods; Godshall's Quality Meats; Granjas Carroll de Mexico; Greenwood Packing; Hanor; Holden Farms; HyLife; Indiana Packers Corporation; Iowa Select Farms; J.H. Routh Packing Co.; Johnsonville Sausage; Kayem Foods; Kekén; La Coop Fédérée (Olymel); Maple Leaf Agri-Farms (Maple Leaf Foods); Maxwell Foods; New Fashion Pork; OSI Group; Perdue Farms; Pillen Family Farms; Pine Ridge Farms; Pipestone System; Pork King Packing; Premium Iowa Pork; Prestage Farms; Proteina Animal (PROAN); ProVista Agriculture; Rantoul Foods; Rose Packing; Sara Lee; Schwartz Farms; Sierra Meat and Seafood; Sioux-Preme Packing; Specialty Foods Group; SuKarne; Swaggerty Farm; Swift Pork Co. (part of Swift & Company); Swine Graphics Enterprises; The Maschhoffs; Texas Farm LLC; Trim-Rite Food Corp. (part of Rantoul Foods); TriOak Foods; Wakefield Pork; Williams Sausage; and Wolverine Packing Co.

15.     "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly indirectly. Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

16.    "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other persons authorized to act on Your behalf.

17.    "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

18.    "Unstructured data" is data that does not conform to a specific, pre-defined data model; it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but are not limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

19.    "You," Your," or "Your company" means Indiana Packers Corporation including its predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that You manage or control, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any persons acting or purporting to act on their half.

20.    All other words have their plain and ordinary meaning.

## DOCUMENT REQUESTS

**REQUEST NO. 1:** Communications between You and any Pork Integrator relating to Competitive Conditions in the Pork Industry, including email and text messages.

**REQUEST NO. 2:** Communications between You and Agri Stats relating to Competitive Conditions in the Pork Industry or any Pork Integrator.

**REQUEST NO. 3:** For each document custodian we agree upon or the court orders you to collect and produce documents from, produce the following:

a. electronic and hard copy diaries, calendars, appointment books, notebooks, to-do lists, Day Timers, day planners or appointment notes;

b. contact information maintained in Microsoft Outlook, similar programs, Rolodex cards, or any other format, for any Person who is or was: (i) an owner, employee, consultant, officer, board member, representative, or agent of a Pork Integrator or Agri Stats; (ii) Industry Analyst; or (iii) employee of a Trade Association;

c. trip and travel logs, records, expenses, and other supporting Documents;

d. expense and entertainment reports, including supporting Documents;

e. bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you go cellphones) if such telephones were used for business purposes;

f. Documents relating to membership in any Trade Association or industry group or attendance at any Industry Meeting or Industry Conference;

g. a copy of the Person's most recently created resume or curriculum vitae (CV);

h. personnel file, including any discipline or performance evaluations, and any terms of employment (such as confidentiality or non-compete agreements);

i. copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Pork, such as testimony at a deposition, trial, or public hearing; and

j. Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by such persons for any business purposes, even if only sparingly.

**REQUEST NO. 4:** Structured data, such as databases regarding customer purchases of Pork during the Relevant Time Period. Plaintiffs will meet and confer with you regarding the exact data fields and format of the production of the structured data.

**REQUEST NO. 5:** Documents relating to guidelines and policies for compliance with competition or antitrust laws, including training manuals and alleged, suspected, potential or actual violations of such guidelines or policies.

**REQUEST NO. 6:** Documents sufficient to identify your policies and procedures during the Relevant Time Period relating to electronically stored information, including retention periods, use of auto-delete for email or other systems, and employee cellphone use.

**REQUEST NO. 7:** Documents sufficient to identify Your organizational structure, including but not limited to any constitution, formation or organizational documents, articles of incorporation, business licenses, or organizational charts.

**REQUEST NO. 8:** Copies of all Telephone Records in your possession, custody, or control, including Telephone Records of your main phone number(s), main fax number(s), Document Custodian's direct dial or shared phone numbers, and any phone number used as a switchboard for any of your relevant facilities such as your headquarters, administrative offices, Pork processing plants, and Pork sales offices.

**REQUEST NO. 9:** All Documents relating to Competitive Conditions in the market for Pork, including reports, presentations, industry publications, business plans, studies, analyses, or other Documents concerning forecasted, projected, estimated, planned or actual: (i) market shares; (ii) consolidation, mergers, acquisitions, or joint ventures; (iii) production or processing capacity, capacity reduction, capacity utilization, or operating rates; (iv) fixed or variable costs; (v) pricing; (vi) inventories; (vii) entry or exit conditions; (viii) inventories; (ix) supplies/supply trends; (x) data, publications, or other sources used in the regular course of business by You to monitor Pork demand in the United States; (xi)

substitute products; (xii) exports; (xiii) raw materials; (xiv) Pork Supply Factors; or (xv) other industry statistics.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Pork Antitrust Litigation | Case No. 0:18-cv-01776-JRT-HB |
| This Document Relates To:<br>All Actions | **ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS** |

This Order Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol Order") shall govern the Parties in the above-captioned case whether they currently are involved or become so in the future, and any related actions that may later be consolidated with this case (collectively, the "Litigation").

## I.   GENERAL PROVISIONS

A.   **Applicability:** This ESI Protocol Order will govern the production of ESI and paper documents. To the extent that a Party collected and processed documents prior to the entry of this ESI Protocol Order, and production of such documents cannot be made in accordance with the terms of this ESI Protocol Order, the Parties will meet and confer concerning the potential formats of the production of any such documents.

B.   **Limitations & Non-Waiver:** Nothing in this ESI Protocol Order shall be construed to affect the admissibility of discoverable information. All objections to the admissibility of any documents are preserved and may be asserted at any time. Pursuant to the terms of this ESI Protocol Order, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but compliance with this ESI Protocol Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. For the avoidance of doubt, a Party's compliance with this ESI Protocol Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. All

parties preserve all such privileges and protections, and all parties reserve the right to object to any such privileges and protections.

C.    **ESI Liaisons:**

    1.    **Designation:** Each Party agrees to designate an ESI Liaison within 7 days after entry of this ESI Protocol Order. Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

    2.    **Duties of ESI Liaison:** Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible) and have access to personnel most knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, answer pertinent questions.

    3.    **Time Frame for ESI Issue Resolution:** Each ESI Liaison will acknowledge receipt of an ESI-related inquiry from another ESI Liaison within 3 business days after the initial inquiry and respond substantively no later than 10 business days after the initial inquiry. If the responding ESI Liaison believes the ESI issue in question is particularly complex and requires more than 10 business days to respond substantively, then within 10 business days the responding ESI Liaison will provide a general explanation of the process necessary to answer the question and provide an estimated response date.

D.    **Deadlines:** References to schedules and deadlines in this ESI Protocol Order shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

E.    **Definitions:**

    1.    "Discovery Material" is defined as all information produced, given, or exchanged by and among all Parties, or received from non-Parties in the Litigation, including all deposition testimony, testimony given at hearings or other proceedings, interrogatory answers, documents and all other discovery materials, whether produced informally or in response to requests for discovery.

    2.    Plaintiffs and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this ESI Protocol Order. A single Plaintiff or Defendant, as well as, where applicable, its respective officers,

directors, employees, agents, and legal counsel, may also be referred to as a "Party" solely for the purposes of this ESI Protocol Order.

3.      "Plaintiffs" as used herein shall mean the putative Direct Purchaser Plaintiff class, Commercial and Institutional Indirect Purchaser Plaintiff class, and End-User Consumer Plaintiff class as set forth in the respective operative complaints.

4.      "Defendants" as used herein shall mean Defendants named in the Direct Purchaser, Commercial and Institutional Indirect Purchaser, and End-User Consumer Complaints.

5.      To avoid misunderstandings about terms, all Parties should consult the most current edition of The Sedona Conference Glossary.

F.      **Authenticity and Admissibility:** Nothing in this ESI Protocol Order shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

G.      **Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under the Agreed Confidentiality Order (Dkt.[X]).

## II.      GENERAL PRODUCTION FORMAT PROTOCOLS

A.      **TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image, pursuant to ¶ II(E). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). The imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks. Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format and visible in the form in which the electronic document was last saved, shall also be imaged so that such content is viewable on the image file. Nothing in this subsection requires the modification or alteration of any document or data in order to make any hidden content, tracked changes or edits, comments, notes, and other similar information viewable if it is not already viewable in the

form in which the electronic document was last saved. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

B.    **Text Files:** Each ESI item produced under this ESI Protocol Order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

    1.    **OCR:** A producing Party may make paper documents available for inspection and copying/scanning in accordance with FED. R. CIV. P. 34 or, additionally or alternatively, scan and OCR paper documents. Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Even if OCR is used by a producing Party, however, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

    2.    **ESI:** Except for redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available. For redacted documents, Parties shall provide OCR text in accordance with the specifications in Section II.B(1).

C.    **Production of Native Items:** The Parties agree that ESI shall be produced as TIFF images consistent with the format described in section II.A. with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be spreadsheet-application files (e.g., MS Excel), presentation files (e.g., MS PowerPoint), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format upon reasonable request. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced. The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the Parties agree to meet and confer

prior to producing native file types other than spreadsheet application files, presentation files, and multimedia audio/visual file types such as .wav, .mpeg and .avi. Prior to processing non-standard native files for production, the producing Party shall disclose the file type to and meet and confer with the requesting Party on a reasonably useable production format. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

D.  **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol Order does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

E.  **Bates Numbering:**

1.  All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2.  If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

3.  The producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

F.  **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent

reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

G.     **Entire Document Families: Subject to Paragraphs II(K)(1) and II(K)(2) below,** entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, excepting (1) junk files and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the parties), and (2) documents that are withheld on the basis of privilege and in compliance with the parties' stipulation or the Court's order on such assertions of privilege.

H.     **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production.

I.     **Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol Order regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this ¶ II(I) will not be unreasonably denied by the producing Party. If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

J.     **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or to the terms of a Protective Order entered by the Court in the Litigation or a confidentiality stipulation entered into by the Parties, the

designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. This designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Requesting parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol Order, any protective order or confidential order, or any confidential stipulation shall not waive any protection or confidential treatment. The Parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The Parties agree to work together on an as-needed (and per document) basis to address any potential over (or under) designation.

K.   **Redactions**

    1.   **Personal Data Redactions:** A producing Party may redact personal information to the extent that the information falls within one of the following categories: (1) the information relates to medical or health issues of an individual; (2) social security numbers, bank account information, or personal passcodes; or (3) personal contact information of friends or family to the extent they do not work in in the Pork industry or work for a Party's competitors. Such redactions should be identified as "Redacted – Personal Data" on the document.

    2.   **Redactions of Nonresponsive Highly Confidential Business Information**: A producing Party may redact specific highly confidential business information relating to non-pork businesses provided (1) the redacted information is both nonresponsive and irrelevant; and (2) the redacted information would not assist in understanding or providing context for the relevant portion of the document or document family of which it is a part. Such redactions must be identified as "Redacted – Highly Confidential Nonresponsive Information.

L.   **Production Media & Protocol:** A producing Party may produce documents via email, readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"), or via file-sharing service, including any network-based secure file transfer mechanism or SFTP. Any requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide

a copy of that production using Production Media. The producing Party may encrypt Production Media, and will provide a decryption key to the requesting Party in a communication separate from the production itself.

## III. PAPER DOCUMENT PRODUCTION PROTOCOLS

A. **Scanning:** A producing Party may make paper documents available for inspection and copying in accordance with FED. R. CIV. P. 34 or, additionally or alternatively, OCR paper documents. Where OCR is used, the Parties agree that the following ¶¶ III(B)-(E) shall apply.

B. **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N) or otherwise indicating that a redaction is present. Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y" or otherwise indicate that the document originated in paper, and such indication shall be explained to the requesting party.

C. **Unitization of Paper Documents:** Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly.

1. **Relationship:** The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable.

2. **Identification:** Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

## IV. ESI METADATA FORMAT AND PROCESSING ISSUES

A. **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files if they clearly do not have user-created content.

B.    **Metadata Fields and Processing:**

   1.    **Time Zone:**  To the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g., GMT), and the time zone used shall be disclosed to the requesting Party.

   2.    **Auto Date/Time Stamps:**  To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

   3.    Except as otherwise set forth in this ESI Protocol Order, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

   4.    The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields:    (a) BegBates,  (b) EndBates,  (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

C.    **Redaction:**

   1.    The Parties agree that, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ II(C), *supra*.  Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction shall be provided.  The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable.  These documents may be redacted in native format.

   2.    If the items redacted and partially withheld from production are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content.  If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

D.    **Email Collection and Processing:**

   1.    **Email Threading:**  The Parties may use email thread suppression to avoid review and production of information contained within an

existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

2.   **Email Domains:**  Producing parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources.  To the extent a Party opts to exclude uniquely identifiable email domain names (e.g., emails from domains typically associated with junk or irrelevant topics like sports, fantasy team competitions, retailer advertising, and newsletters or alerts from non-industry sources) as part of its initial filter of potentially responsive documents, the Parties agree to disclose domain names excluded under this paragraph and to meet and confer on the timing for such disclosures.

E.   **De-duplication:**  A producing Party may de-duplicate any file globally (i.e., across Document Custodians, *see infra* ¶ V(B)(1)) at the "family" level (i.e., families should not be broken due to de-duplication).  Each party may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and therefore produce only the most complete iteration of an email chain.  The producing Party will make a reasonable effort to identify all custodians who were in possession of any de-duplicated documents through an appropriate load file such as DuplicateCustodian or CustodianAll/Other. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 1 to the extent such metadata exists.  In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated duplicate custodian  information, as well as BCC information to the extent such metadata exists.  Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party after the Party has substantially completed its production of ESI.

1.   Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content.  All electronic documents bearing an identical value are a duplicate group.  The producing Party shall use reasonable

efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents. Any other methodology for identification of duplicates, including email field selection for hash value creation, must be discussed with the requesting Party and approved in writing before implementation.

2.     Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MD5 hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments. Email families bearing an identical value are considered a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

F.     **Zero-byte Files:** The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

G.     **Microsoft "Auto" Feature:** To the extent reasonably practicable and technologically possible for a producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be identified in a load file, metadata field, or otherwise as having these features.

H.     **Hidden Text:** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

I.     **Embedded Objects:** Microsoft Excel (.xls) spreadsheets embedded in Microsoft Word documents will be extracted as separate documents and

treated like attachments to the document. The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments).

J.    **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

K.    **Password-Protected, Encrypted, or Proprietary-Software Files:** With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting Party. ESI that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

## V.    PARAMETERS FOR CULLING AND REVIEWING ESI AND PAPER DOCUMENTS

A.    **General Provisions:**

1.    **Time Period:** Except as noted elsewhere in this paragraph, the Parties agree that they may limit the processing of discoverable information to that which was created, modified, sent, or received from a start date to be negotiated by the parties within 30 days of a ruling on the motions to dismiss, through June 30, 2018.

2.    **Meet and Confer:**

a.    **Commencement of Custodian Discussions:** The parties will commence discussions about Document Custodians and non-custodial document sources.

b.    If the Parties cannot reach agreement under the provisions of this Section V, any dispute may be presented to the Court. All meet and confer sessions under this Section V will involve

each Party's respective ESI Liaison and will give appropriate consideration to minimizing expense.

3. **Non-Waiver:** The Parties' discussion of proposed search terms, Document Custodians or Sources does not preclude a Party from requesting additional search terms, Document Custodians or Sources pursuant to the terms of this ESI Protocol Order, nor does it preclude a Party from objecting to any such additional requests.

B. **Document Custodians and Sources:**

1. **Initial Document Custodians and Sources**: Consistent with paragraph V.A.2.a. of this ESI Protocol, the Parties agree to commence discussions about Document Custodians and non-custodial document sources, including the process and procedure for negotiating and disclosing such sources.

2. **Additional Document Custodians or Sources:** If, after the initial Document Custodian and Source negotiations and order described in the preceding paragraph, a Requesting Party determines that additional Document Custodians or Sources should be added, then the Requesting Party shall advise the Producing Party in writing of the proposed additional Document Custodians or Sources and the basis for the request. If the Parties have not agreed whether to add the Document Custodian or Source within 21 days of the Requesting Party's request, then the Parties may bring the matter to the Court via motion within 21 days or the issue is waived, unless the parties agree to defer resolution of the issue. The parties shall raise disputed Document Custodians or Sources via a joint letter brief not to exceed five pages split equally between Plaintiffs and Defendants.

3. Except by agreement of the Parties or by order of the Court, a Producing Party is not required to add Document Custodians or Sources after the deadlines identified in paragraphs V(B)(1).

C. **Search Methodology**

1. **Use of Search Terms to Cull Unstructured ESI:**

a. The Parties may use search terms and other limiters, including, by way of example only, date ranges and email domains in metadata fields, as a means of limiting the volumes of information to be reviewed for responsiveness. To the extent that search terms are used to identify responsive ESI, a

Producing Party will notify the Requesting Party of its intent to use search terms and disclose to the Requesting Party (1) an initial list of search terms the Producing Party intends to use and (2) whether the Producing Party intends to use different search terms with different Document Custodians or Sources. The Parties will meet and confer in good faith regarding the disclosure and formulation of appropriate search terms and protocols to cull unstructured ESI.

b.     **Addition or Removal of Search Terms After Initial Search Term Negotiation:**  If, after the completion of the initial search methodology negotiations, a requesting or producing Party determines that any search terms should be added to or removed from the initial search term list, then the requesting or producing Party shall advise the affected Parties in writing of the proposed change(s) to the search term(s) and of the reason(s) for the proposed change(s).

c.     Except by agreement of the Parties or by order of the Court, a Producing Party is not required to add search terms after completion of the process described in paragraph V(C)(1)(a).

2.     **Use of Technology Assisted Review or Other Advanced Technology-Based Analytics to Cull Unstructured ESI:**

a.     **Use of TAR:**  A Party may use Technology Assisted Review ("TAR") to sort documents for linear review without disclosure of that use. If a Party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, the parties will meet and confer regarding the following parameters that will apply to the use of TAR.

i.     **Paper Documents:**  The Parties agree to meet and confer to determine whether paper documents may be included in a TAR process.

ii.     **The TAR Tool:**  A Producing Party shall describe to a Requesting Party the vendor and the TAR technology or tool being used, including a description of the TAR tool's procedures.

b.     A Producing Party need not conduct any additional review of information subjected to, but not retrieved by, a TAR tool as

part of the identification of the subset of information that will be subject to review and production.

D.   **Structured Data:**  To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the Requesting Party.  Upon review of the report, the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

E.   **Custodial Cellphone & Personal Communications Data:**

1.   **Cellphones:**  For Document Custodians agreed on by the Parties or ordered by the Court, a Producing Party will take reasonable steps to identify whether any unique responsive communications are located on any cellphones in the possession, custody, or control of the Producing Party.  Unless agreed otherwise, the following shall govern the identification of unique, responsive, and non-privileged communications for cellphone-based data for the agreed or ordered Document Custodians with respect to cellphones in the possession, custody, or control of the Producing Party.

   a.   A Producing Party shall use reasonable due diligence to ensure that reasonably available sources of data/applications on a cellphone and related backups and archives, if those data sources/applications are used for work purposes, are evaluated and considered as a potential source of data subject to discovery, including without limitation call and voicemail logs, text messages, contacts, and social media. Prior to any culling of the cellphone data, a Producing Party will disclose whether or not the Producing Party claims that a cellphone used by the Document Custodian for work purposes is not within its possession, custody, or control. A Producing Party shall not be required to disclose any other cellphone-related information prior to any culling of cellphone data.

   b.   A Producing Party will consider the sources of information on a cellphone identified below, to the extent reasonably available, to identify unique, responsive, and discoverable information.  The parties will meet and confer regarding any culling of the sources of information below.

      i.      **Cellphone Call and Voicemail Logs:** The logs of any calls made/received and logs of voicemails left on a cellphone that the Document Custodian used for work purposes, if any, if the cellphone is in the possession, custody, or control of a producing Party.

      ii.     **Text Messages:** All text messages and/or iMessages on the cellphone device used for work purposes or contained in available backups/archives associated with the device, if any, if the cellphone is in the possession, custody, or control of a Producing Party.

2.    **"Contacts":** A Document Custodian's relevant contacts (e.g., MS Outlook Contacts or cellphone-based contacts) in the possession, custody or control of a Producing Party will be exported to MS Excel (or .csv) with all reasonably available metadata fields. A Producing Party is entitled to redact or withhold information from the contacts file that does not relate to the Document Custodian's work—including, but not limited to, the name and contact information for any family or friends not involved in the Pork industry. If, after reviewing the redactions, the Requesting Party believes that more information is needed about the redactions, then the Parties will meet and confer regarding the information redacted, and the producing Party shall provide explanations for information redacted or withheld. Any document produced with redactions permitted under this ESI Protocol shall maintain the electronic search capabilities of the other data in the spreadsheet.

3.    **Social Media Data:** If a Document Custodian confirms that he or she (1) used Social Media for business purposes and (2) used that Social Media to communicate with an employee of another Defendant or otherwise regarding a subject relevant to the Litigation and included within a Request for Production, subject to objections to that Request, then the requested communication(s) must be produced if it is reasonably accessible, in the Producing Party's possession, custody, or control, and not withheld as privileged and/or as illegal to produce under applicable privacy laws. The Parties shall meet and confer to the extent there are any issues with respect to the format of such Social Media data.

## VI.    <u>MISCELLANEOUS PROVISIONS</u>

A.    **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible

or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

B.    **Variations or Modifications:** Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

**SO ORDERED.**

Dated:  February 20, 2019               _s/ Hildy Bowbeer_____

                                          HILDY BOWBEER

                                          United States Magistrate Judge

## Appendix 1: ESI Metadata and Coding Fields

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Withheld Placeholder | All | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y" |
| Privilege Asserted | All | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (e.g., "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged") |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Legend/Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

In re Pork Antitrust Litigation

Civil No. 18-cv-1776 (JRT/HB)

**PROTECTIVE ORDER**

This Document Relates To:  All Actions

Pursuant to the proposed Protective Order, attached as Exhibit A to the Joint Status Report and Letter Brief (ECF No. 203-1), e-filed by the parties on October 30, 2018,

**IT IS HEREBY ORDERED** that the proposed Protective Order (ECF No. 203-1) is **ADOPTED**, and confidential information shall be disclosed only in the following ways:

1. **Scope.** All documents, electronically stored information, items, and other information produced or adduced in the course of discovery, regardless of the medium or manner generated, stored, maintained or revealed (including, among other things, initial disclosures, responses to discovery requests, deposition testimony, and exhibits), and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential or Highly Confidential Information as defined below.  This Order shall apply to any named party to this action (including all of its officers, directors, employees, retained experts, outside counsel (and their support staff)).  This Order is subject to the Local Rules of this District and the Federal Rules of

Civil Procedure on matters of procedure and calculation of time periods.

2.    **Confidential Information.**  As used in this Order, "Confidential

Information" means any document, or any portion thereof, which contains confidential or

proprietary business, commercial, research, personnel, product or financial content

belonging to the producing party, and which is designated as "CONFIDENTIAL -

SUBJECT TO PROTECTIVE ORDER" for purposes of this litigation.  Confidential

Information may fall within one or more of the following categories:  (a) information

prohibited from disclosure by statute or contractual agreement; (b) information that reveals

trade secrets; (c) research, technical, commercial or financial information that the party

has maintained as confidential; (d) medical information concerning any individual;

(e) personal identity information; (f) income tax returns (including attached schedules

and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a

person who is not a party to the case.  The parties will make reasonable efforts to ensure

that information or documents that are available to the public are not designated as

Confidential Information.

3.    **Highly Confidential Information.**  As used in this Order, "Highly

Confidential Information" means any document, or any portion thereof, which a

producing party or non-party believes to be so highly sensitive that:  (i) it is the subject of

reasonable efforts to maintain its secrecy; (ii) it is sufficiently valuable and secret to

afford a potential or actual advantage over others; (iii) its disclosure to existing or

potential competitors or customers would cause injury to the business, commercial,

competitive, or financial interests of the producing party or non-party; and (iv) it is

designated as "HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" for

purposes of this litigation. By way of example only, Highly Confidential Information

may include but is not limited to: (a) current or future business strategies and other

strategic planning information; (b) projections or plans regarding performance, budgets,

production, output, sales, marketing or distribution practices; (c) research and

development information; (d) manufacturing know-how or technology; (e) board of

directors materials and presentations; (f) customer lists or information; (g) negotiation

strategies; (h) proprietary software, systems, or processes; (i) margin, cost, and pricing

information; or (j) intellectual property. If required by applicable privacy laws, Highly

Confidential Information may also include personnel files that are designated as such for

purposes of this litigation.

**4. Designation.**

(a)     A party may designate a document as Confidential or Highly

Confidential Information for protection under this Order by placing or affixing the words

"CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document and on all

copies in a manner that will not interfere with the legibility of the document.   To the

extent a document is produced in a form in which placing or affixing the words

"CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document is not

practicable, the producing party may designate the document as confidential by cover

letter, slip sheet, or by affixing a label to the production media containing the document.

As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential or Highly Confidential Information. The marking "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time the documents are produced or disclosed. Applying such marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of documents designated as Confidential or Highly Confidential Information and do not otherwise disclose the substance of the Confidential or Highly Confidential Information are not required to be marked.

(b)     Though the parties understand that the designation of a document as Confidential or Highly Confidential Information is a certification by an attorney that the document contains Confidential or Highly Confidential Information as defined in this Order, the parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The parties agree to work together on an as-needed (and per document) basis to address any potential over (or under) designation.

5.     **Depositions.**  Unless all parties agree otherwise on the record at the time

the deposition testimony is taken, all deposition testimony taken in this case shall be treated

as Confidential Information for a period of thirty (30) days after the transcript is delivered

to the party being deposed.   If counsel for any party states on the record that the

deposition testimony should be treated as Highly Confidential Information, such

testimony will be treated as Highly Confidential Information for the thirty (30)-day

period following the delivery of the transcript to the party seeking to designate material

as confidential.  No later than the thirtieth day after the transcript is delivered to the party

being deposed or a party seeking to designate material as confidential, whichever is later,

a party may serve a Notice of Designation to all parties of record and the court reporter

for the deposition in question as to specific pages of the transcript that are designated

Confidential or Highly Confidential Information, and thereafter only those portions

identified in the Notice of Designation shall be protected by the terms of this Order.  The

court reporter shall provide a final copy of the transcript that reflects any designations of

pages of the transcript as Confidential or Highly Confidential Information in the lower

left-hand corner of each designated page.

**6.    Protection of Confidential or Highly Confidential Material.**

(a)    **General Protections.**  Except as set forth below, Confidential or

Highly Confidential Information shall not be used or disclosed by the parties, counsel for

the parties or any other persons identified in subparagraph (b) for any purpose whatsoever

other than the prosecution or defense of claims in, or the settlement of, this litigation,

including any appeal thereof.  In this putative class action, Confidential or Highly

Confidential Information may be disclosed only to the named plaintiffs and not to any

other member of the putative class unless and until a class including the putative member has been certified.  Nothing in this Order, however, shall prevent or prejudice any party designating materials Confidential or Highly Confidential Information from using its own such designated documents for any purpose, including privately disclosing its own Confidential or Highly Confidential Information to others not mentioned in this Paragraph 6, and such private disclosure shall not waive the protections of this Order.

(b)      **Limited Third-Party Disclosures.**  The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential or Highly Confidential Information to any third person or entity except as set forth below in subparagraphs (1)-(10) and (1)-(9), respectively.  Subject to these requirements, the following categories of persons may be allowed to review Confidential Information:

(1)      Counsel.  Outside or in-house counsel for the parties (or in-house counsel for the parties' affiliates) and employees of such counsel who have responsibility for the preparation and trial of the action;

(2)      Parties.  Individual parties and employees or former employees of a party, but only to the extent counsel has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the individual party, employee, or former employee has knowledge; disclosure to such individual party, employee, or former employee is limited to the portion of the document about such events, transactions, discussions, communications, or data; and such party, employee, or

former employee has completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound to this Order;

(3)     The Court and its personnel;

(4)     Court Reporters and Recorders. Court reporters and recorders engaged for depositions;

(5)     Contractors. Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

(6)     Consultants and Experts. Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A to this Order;

(7)     Witnesses. During depositions or testimony at trial or any hearing, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the witness is expected to testify or about which the witness may have knowledge. Witnesses shall not retain a copy of documents containing Confidential Information,

except witnesses may receive a copy of all exhibits marked at their

depositions in connection with review of the transcripts. Pages of

transcribed testimony that are designated as Confidential Information

pursuant to Paragraph 5 may not be disclosed to anyone except as

permitted under this Order.

(8)     Author or recipient. The author or recipient of the document (not

including a person who received the document solely in the course of

litigation);

(9)     Identified Persons. Any person who is referenced in the document

or whose conduct is purported to be identified in the document,

provided that counsel for the party intending to disclose the

information has a good-faith basis for believing such Confidential

Information is relevant to events, transactions, discussions,

communications or data about which the person has knowledge;

disclosure to such person is limited to the portion of the document in

which the person or person's conduct is identified or referenced; and

such person has completed the certification contained in Attachment

A to this Order; and

(10)    Others by Consent. Other persons only by written consent of the

producing party or upon order of the Court and on such conditions as

may be agreed or ordered, but such consent shall not be

unreasonably withheld.

The following categories of persons may be allowed to review Highly Confidential Information:

    (1)    Counsel.  Outside counsel for the parties and employees of such counsel who have responsibility for the action, provided that such individuals do not regularly participate in the commercial business activities of the party;

    (2)    The Court and its personnel;

    (3)    Court Reporters and Recorders.  Court reporters and recorders engaged for depositions;

    (4)    Contractors.  Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

    (5)    Consultants and Experts.  Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A to this Order;

    (6)    Witnesses.  During depositions or testimony at trial or any hearing, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Highly Confidential Information is relevant to events, transactions,

discussions, communications or data about which the witness is expected to testify or about which the witness may have knowledge. Before disclosing any document pursuant to this paragraph, counsel who intends to disclose the document must first notify counsel for the designating party of their intent to do so. At depositions, trial or hearings, such notice may be accomplished by presenting a copy of the Highly Confidential Information to counsel for the designating party and permitting counsel an opportunity to object before the document is shown to the witness. Until the designating party agrees to the disclosure, or the Court orders such disclosure, Highly Confidential Information shall not be disclosed to or discussed with any witness. Witnesses shall not retain a copy of documents containing Highly Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts. Pages of transcribed testimony or exhibits to depositions that are designated as Highly Confidential Information must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

(7)     Author or recipient. The author or recipient of the document (not including a person who received the document solely in the course of litigation);

(8)     Identified Persons. Any person who is referenced in the document

or whose conduct is purported to be identified in the document, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Highly Confidential Information is relevant to events, transactions, discussions, communications or data about which the person has knowledge; disclosure to such person is limited to the portion of the document in which the person or person's conduct is identified or referenced; and such person has completed the certification contained in Attachment A to this Order; and

(9)     Others by Consent.  Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

To the extent any person is required to complete the certification contained in Attachment A to this Order, facsimile signatures or signatures transferred in electronic format (*e.g.,* PDF) shall be treated as original signatures purposes of this Order.

(c)     **High Level Summaries**.  Notwithstanding the provisions of paragraph 6(b), outside counsel for a party that is a corporation or other type of business entity may provide high level summaries or characterizations of the evidence in the case to individuals employed by the party who have responsibility to make decisions regarding the defense or settlement of the case.  Nothing in this Order is intended to bar or otherwise prevent any counsel from rendering advice to his or her client with respect to this litigation

11

and, in the course of rendering such advice, from relying upon his or her examination or knowledge of Confidential or Highly Confidential Information.

(d)     **Control of Documents.**  Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential or Highly Confidential Information.  Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

7.     **Absent Class Members.**  Confidential or Highly Confidential Information may not be disclosed to absent members of a certified class (each an "Absent Class Member") who have not intervened or otherwise appeared in this litigation, except under the circumstances described in Paragraph 6(a)-(b) of this Order.  If, however, Confidential or Highly Confidential Information is contained in a filing with the Court pursuant to Paragraph 9 of this Order, such filing may be disclosed to counsel for the Absent Class Member (or the Absent Class Member if not represented) for purposes of evaluating any settlement affecting the Absent Class Member, provided that such counsel, if any, and the Absent Class Member have completed the certification contained in Attachment A to this Order.

8.     **Inadvertent Failure to Designate.**  An inadvertent failure to designate a document as Confidential or Highly Confidential Information does not, standing alone, waive the right to so designate the document.  If a party designates a document as Confidential or Highly Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to ensure

12

that the document is treated in accordance with the provisions of this Order. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential or Highly Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential or Highly Confidential Information.

9. **Filing of Confidential or Highly Confidential Information.** This Order does not, by itself, authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential or Highly Confidential Information in connection with a motion, brief or other submission to the Court must comply with Local Rule 5.6.

10. **No Greater Protection of Specific Documents.** Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection. Nothing in this Order shall prevent a party from seeking greater or lesser protection with respect to the use of any Confidential or Highly Confidential Information.

11. **Challenges by a Party to Designation as Confidential or Highly Confidential Information.** The designation of any document as Confidential or Highly Confidential Information is subject to challenge by any party. The following procedure shall apply to any such challenge.

(a) **Meet and Confer.** A party challenging the designation of Confidential or Highly Confidential Information must do so in good faith and must begin

the process by conferring directly with counsel for the designating party.  In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated document, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation.  The designating party must respond to the challenge within five (5) business days of the meet and confer.

(b)     **Judicial Intervention.**  A party that elects to challenge a confidentiality designation may (i) seek informal dispute resolution with the Court if such process can be mutually agreed upon with the designating party; or (ii) file and serve a motion that identifies the challenged document and sets forth in detail the basis for the challenge.  Each such motion's supporting brief may not exceed five (5) pages and must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure outlined above.  The burden of persuasion in any such challenge proceeding shall be on the designating party, who shall have the right to respond to any motion filed by a challenging party.  Until the Court rules on the challenge, all parties shall continue to treat the document as Confidential or Highly Confidential Information under the terms of this Order.  As such, any motion challenging a confidentiality designation must not publicly file the documents with contested designations nor describe them in a manner that would reveal Confidential or Highly Confidential Information.

12.     **Action by the Court.**  Applications to the Court for an order relating to documents designated Confidential or Highly Confidential Information shall be by motion.

Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

13.     **Use of Confidential or Highly Confidential Documents or Information at Trial.**  Nothing in this Order shall be construed to limit the use of any document at any trial or hearing provided that the parties take necessary advance precautions to avoid the public disclosure of Confidential or Highly Confidential Information.  A party that intends to present or that anticipates that another party may present Confidential or Highly Confidential Information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum sufficiently in advance of the proceeding without disclosing the Confidential or Highly Confidential Information. The Court may thereafter make such orders as are necessary to govern the use of such documents at hearing or trial.

14.     **Third Parties.**  In seeking discovery from third parties, the parties shall attach this Order to a copy of any subpoena or other discovery request.  Third parties from whom discovery is requested are parties to this Order and are entitled to the protections of this Order in responding to such requests.

**15.     Confidential or Highly Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**

(a)     If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any document designated in this action as Confidential or Highly Confidential Information, the receiving party must so notify the

designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b)     The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c)     The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential or Highly Confidential Information in the court from which the subpoena or order issued. The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential or Highly Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential or Highly Confidential Information by the other party to this case.

16.     **Challenges by Members of the Public to Sealing Orders.** If a party or interested member of the public challenges the sealing of particular documents that have been filed under seal, the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

16

17.     **Unauthorized Disclosure or Use.**  If a party learns that it or its counsel, officers, directors, employees, consultants, experts or other agents have disclosed documents designated Confidential or Highly Confidential Information in any circumstance not authorized under this Order, that party must within two (2) business days of learning of such disclosure (a) notify the designating party of the disclosure and all pertinent facts relating thereto, (b) make every reasonable effort to prevent disclosure by each unauthorized person who received such information, (c) use reasonable best efforts to retrieve all copies of the protected documents disclosed to unauthorized persons, (d) inform the person or persons to whom unauthorized disclosures were made of the terms of this Order, and (e) request that each such person execute the certification contained in Exhibit A to this Order.  Nothing contained herein shall limit the right of the designating party to seek relief against the party responsible for such disclosure.

18.     **Limitations on Waiver of Privilege.**

(a)     **Clawback of Inadvertent Disclosure.**  This Order is entered, *inter alia*, pursuant to Federal Rule of Evidence 502(d).  If a party or non-party that produces or otherwise discloses information in connection with this Litigation (the "Producing Party") thereafter claims that such information is protected by any privilege or attorney work product protection ("Disclosed Protected Information"), the disclosure of the Disclosed Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Disclosed Protected Information and its subject matter in this proceeding or in any other federal or state proceeding.  The parties

17

stipulate that by entering this Confidentiality Order, the Court shall provide the maximum

protection allowed by Rule 502(d).

(1)     **Assertion of a Clawback.**  Any Producing Party may

request, in writing, the return of any Disclosed Protected Information by identifying it

and stating the basis for withholding such material or information from production.  The

Producing Party must also provide a privilege log explaining the basis for the assertion of

the privilege within 3 business days of asserting a clawback.

(2)     **Clawbacks before Deposition.**  To the extent a party

believes a clawback made prior to a scheduled deposition impacts that deposition, the

parties will meet and confer and a party may seek guidance from the Court if the meet

and confer does not reach a successful resolution.

(3)     **Clawback  Process.**  Federal Rule of Civil Procedure

26(B)(5)(b) shall govern the clawback of Disclosed Protected Information.

a.     If a Producing Party requests the return of such

Disclosed Protected Information then in the custody of one or more parties, the receiving

parties shall—unless it contests the claim of attorney-client privilege or work product

protection in accordance with sub-paragraph 18(b)(2)(b) – within ten (10) business days of

receipt of written notice (i) destroy or return to the Producing Party the Disclosed Protected

Information and all copies thereof, and (ii) provide a certification of counsel that all of the

Disclosed Protected Information has been returned or destroyed.

b.     **Challenging a Clawback.**  Notify the producing

Party or non-Party that it wishes to challenge the claim of privilege or work product

protection and has sequestered the material until the issue can be resolved. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. A Party challenging a clawback request under this paragraph may use the clawed-back document and its contents for the purpose of filing a motion with the Court under seal that challenges whether or not the document is privileged or work product only in accordance with the provisions of Fed. R. Civ. P. 26(b)(5)(B).

c. The parties may stipulate to extend the time periods set forth in sub-paragraph (a).

d. Disclosed Protected Information that is sought to be reclaimed by the parties to this case pursuant to this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

e. The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information. Nothing in this paragraph shall limit the right of any party to petition the Court for an *in camera* review of the Disclosed Protected Information.

(b) Where a party agrees to or is ordered to destroy a clawed back document, the party must instruct their e-discovery vendor to delete the document entirely from their e-discovery database and delete other copies of the clawed back document. To the extent that it is not technologically feasible for a receiving party to destroy a clawed back document (for example, if the clawed back document is part of a production

provided on read-only production media such that the clawed back document cannot be destroyed without destroying the entire production media), the parties will meet and confer as to an acceptable alternative approach.

(c)     **Receiving Party's Obligation.**  Without waiving the ability to challenge a clawback under ¶ 18(a)(3)(b) a party who discovers that it may have received an inadvertently disclosed or produced protected document must promptly notify the disclosing or producing party.  A party who is notified or discovers that it may have received a protected document must comply with <u>Fed. R. Civ. P. 26(b)(5)(B)</u>.

**19.     Claims of Privilege and Redactions**

(a)     **Production of Privilege Logs.**  Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs in MS Excel format or any other format that permits electronic sorting and searching.  All privilege logs will served within 60 days after Substantial Completion of Document Productions.

(b)     **Exclusions from Logging Potentially Privileged Documents.** The following categories of documents do not need to be contained on a producing Party's initial privilege log, unless good cause exists to require that a Party do so.

(1)     Information generated after June 30, 2018.  This provision does not apply to third parties to the Litigation.

(2)     Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with

20

specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

(3) Any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

(c) Privilege Log Requirements:

(1) **Metadata Log.** To the extent applicable, each Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.

a. Objective metadata includes the following (as applicable to the document types as shown in Appendix A to the ESI Protocol Order):

i. A unique privilege log identifier that makes clear the familial relationship of documents, i.e., parent/child.

ii. Custodian

iii. DuplicateCustodian, CustodianOther or

| | CustodianAll (if applicable) |
|---|---|
| iv. | File Name |
| v. | Email Subject |
| vi. | Author |
| vii. | From |
| viii. | To |
| ix. | CC |
| x. | BCC |
| xi. | Date Sent |
| xii. | Date Received |
| xiii. | Date Created |

b.      In addition to the objective metadata fields, a Party must also include a field on its privilege log entitled "Attorney/Description of Privileged Material" if the basis for the privilege asserted is not apparent from the objective metadata (e.g., the name of the attorney will be provided if not included in the objective metadata). Further, a Party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the claim of privilege in light of the metadata that is discernable and/or the information provided in the Attorney/Description of Privileged Material field.

c.      With respect to the "Email Subject" or "File Name" field, the producing Party may substitute a description of the document where the contents of these fields may reveal privileged information. In the privilege log(s), the producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "File Name" field (e.g., "[metadata redacted/altered to protect privilege]."

d.      Should a receiving Party, in good faith, have reason

22

to believe a particular entry on a metadata-generated privilege log is responsive and does

not reflect privileged discoverable information, the receiving Party may request, and the

producing Party will not unreasonably refuse to provide, more information about the basis

of the asserted privilege in compliance with Fed. R. Civ. P. 26(b)(5).

          (2)        **Email Chains.**  If there is more than one branch of

(i.e., more than one unique group of recipients of) an email thread, each branch will be

individually logged; however, each individual email within the thread need not be logged

if the recipients of the email chain are all identical.   A Party asserting privilege over a

chain of emails may produce only a single redacted copy of such email chain consistent

with the ESI Protocol to the extent some portions are only partially privileged, except that

any unique branches of the email chain must also either be produced in redacted form or

included on the metadata privilege log.

          (3)        **Email Families.**  Attachments to emails shall be

logged as separate documents on the log, with family relationships identified.

          (d)        **Documents Redacted for Privilege.**  As an initial production

matter, redacted documents need not be logged as long as (a) for emails, the objective

metadata (i.e., to, from, cc, bcc, recipients, date, and time, unless the privilege or

protection is contained in these fields) is not redacted, and the reason for the redaction,

including the nature of the privilege asserted, is noted on the face of the document, or, if

noting the nature on the face of the document is not technologically feasible, is noted in

the metadata field provided in section F below (for redacted documents where the subject

matter is not decipherable as a result of redactions, a description of the contents of the

document that is sufficient to understand the subject matter of the document may be requested); and (b) for non-email documents, the reason for the redaction is noted on the face of the document in the redacted area. The producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information. After receipt of the production, the requesting Party may request in good faith that the producing Party create a privilege log for specific redacted documents. Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

(e) **Challenges to Privilege Claims.** Following the receipt of a privilege/redaction log, a requesting Party may identify, in writing (by Bates/unique identified number), the particular documents that it believes require further explanation. The producing Party shall endeavor to respond to such a request within 14 days. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court.

(f) **Privilege Metadata Fields.** Where a document is either withheld in full or redacted on the basis of a privilege, then that privilege shall be provided in a metadata field entitled "Privilege Asserted" and list a short description of the privilege asserted (e.g., "Attorney Client Privilege", "Attorney Work Product").

**20. Obligations on Conclusion of Litigation.**

(a) **Order Continues in Force.** Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to

further appeal.

        (b)    **Obligations at Conclusion of Litigation.**  Within sixty (60) days after dismissal or entry of final judgment not subject to further appeal, all Confidential and Highly Confidential Information, including copies as defined in Paragraph 4(a), shall be returned to the producing party unless:  (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return; or (3) as to documents bearing the notations, summations or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.

        (c)    **Retention of Work Product and Filed Documents.** Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) email correspondence related to their representation, (2) attorney work product, including an index that refers or relates to designated Confidential or Highly Confidential Information so long as that work product does not duplicate verbatim substantial portions of Confidential or Highly Confidential Information; and (3) one complete set of (a) all documents filed with or by the Court, including those filed under seal; (b) all transcripts of depositions, including exhibits; and (c) all final expert witness reports and supporting materials disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure.  Any retained Confidential or Highly Confidential Information shall continue to be protected under this Order.  An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose Confidential or Highly Confidential Information. Nothing in this Order shall be construed to require the destruction or return of Confidential

or Highly Confidential Information stored in counsels' archives, back-up media, or disaster recovery media.

(d)     **Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System.**  Filings under seal shall be deleted from the ECF system only upon order of the Court.

21.     **Order Subject to Modification.**  This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

22.     **No Prior Judicial Determination.**  This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document designated Confidential or Highly Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

23.     **Persons Bound.**  This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

24.     **Future Parties.**  The terms of this Order shall be binding upon all current and future parties to this litigation and their counsel; any party appearing in the litigation following entry of this Order shall be deemed to have joined the case subject to its provisions.

25.     **Personal Jurisdiction.**  Nothing herein shall be construed as a

determination by the Court, or as a consent or waiver by any party, or parent or affiliate of

any party, that such party, or parent or affiliate of a party, is subject to personal

jurisdiction in this Court or that discovery as to such party, or parent or affiliate of a party,

shall proceed pursuant to the Federal Rules of Civil Procedure.


Dated: November 26, 2018              _s/ *Hildy Bowbeer*_____
                                      HILDY BOWBEER
                                      United States Magistrate Judge

## ATTACHMENT A TO PROTECTIVE ORDER

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re Pork Antitrust Litigation                   Civil No. 18-cv-1776 (JRT/HB)

This Document Relates To:  All Actions            **ACKNOWLEDGMENT AND
                                                  AGREEMENT TO BE BOUND**

          The undersigned hereby acknowledges that he/she has read the Protective Order in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms.  The undersigned submits to the jurisdiction of the United States District Court for the District of Minnesota in matters relating to the Protective Order and understands that the terms of the Protective Order obligate him/her to use materials designated as Confidential or Highly Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential or Highly Confidential Information to any other person, firm, or concern.

          The undersigned acknowledges that violation of the Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Date: _____        _____
                                       Signature

# EXHIBIT 6

566590.1



Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

T: +1 312 782 0600
F: +1 312 701 7711

mayerbrown.com

July 9, 2021

<u>BY EMAIL</u>
Brian Clark
Stephen Owen
LOCKRIDGE GRINDAL NAUEL P.L.L.P.
100 Washington Avenue South
Minneapolis, MN  55401-2179
bdclark@locklaw.com
smowen@locklaw.com

Re:   <u>Rule 45 Subpoena to Indiana Packers</u>
      <u>Corporation</u>

Counsel,

This letter responds to the Rule 45 subpoena for documents that Plaintiffs[1] served on Indiana Packers Corporation ("IPC") as of June 15, 2021 ("Subpoena" or "Requests").  As you know, IPC was dismissed with prejudice from the *Pork Antitrust Litigation* because Plaintiffs twice failed to "allege Indiana Packers' involvement in the conspiracy."  *See* Am. Order at 25 (Oct. 20, 2020) (Dkt. 520); *see also* Am. Order (Aug. 8, 2019) (Dkt. 361).  The Court also rejected Plaintiffs' request to reconsider that dismissal with prejudice, finding that "concerted action by IPC could not be reasonably inferred" and that Plaintiffs "failed to clear the initial hurdle to plead a plausible Sherman Act claim against IPC."  Order at 5 & n.1 (Feb. 4, 2021) (Dkt. 672).

Notwithstanding Judge Tunheim's *three* prior dismissal orders, Plaintiffs are improperly using Rule 45 to simply reissue burdensome discovery requests that were served on IPC while it was a party to the lawsuits.  These reissued Requests do not seek relevant information and much, if not all, of the information sought is cumulative and duplicative of discovery Plaintiffs are already obtaining ***from the actual defendants*** in the litigation.  Plaintiffs also have made no attempt to avoid the significant expense and undue burden that these Requests would impose on IPC, in contravention of Rule 45.

Accordingly, at the outset we want to make clear that IPC reserves all rights to seek appropriate relief in response to the Subpoena, including sanctions and attorney's fees from Plaintiffs and their counsel.  Further, although Plaintiffs purport to issue the Subpoena from the District of Minnesota, IPC does not consent to that Court's jurisdiction in connection with the Subpoena

---

[1] The Subpoena defines the "Plaintiffs" as "Direct Purchaser Plaintiffs, Commercial and Institutional Indirect Purchaser Plaintiffs, End-User Consumer Plaintiffs, and the Commonwealth of Puerto Rico."

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 2

and any proceeding related to the Subpoena must be brought in the U.S. District Court for the
N.D. Indiana.

## OBJECTIONS TO INSTRUCTIONS

1.      IPC objects to the Subpoena's compliance deadline as it does not provide
sufficient time for IPC to respond to the Requests, if required to do so.  Indeed, IPC understands
that the parties to the litigation are not even required to substantially complete their own
productions until September 2021, based on discovery requests issued and negotiated during
2019, and third party discovery need not be completed until September 2022.

2.      IPC objects to Instruction No. 1 as unduly burdensome.  To the extent IPC
produces any documents in response to the Subpoena Requests, IPC reserves the right to produce
such documents in a reasonably useable format of its choosing that minimizes its expense and
burden.

3.      IPC objects to Instruction No. 2 to the extent that the provisions of the Protective
Order do not provide sufficient protection for information responsive to the Subpoena.  IPC
reserves all rights to require appropriate protection for any materials that it agrees to produce,
whether or not provided for in the Protective Order.

4.      IPC objects to Instruction No. 3, which defines the "Relevant Time Period" as
"January 1, 2008 through the present" as overly broad, unduly burdensome, and to the extent it
seeks information that even Plaintiffs themselves have agreed is irrelevant in the underlying
litigation.  *See, e.g.*, March 15, 2019 Letter from B. Clark to Defendants.  IPC does not adopt
Plaintiffs' expansive and unwarranted thirteen-year time period in response to any of the
Subpoena Requests.

## OBJECTIONS TO DEFINITIONS

1.      IPC objects to the definitions of "and" and "or" as overly broad and unduly
burdensome in purporting to "give the broadest possible meaning" to the Requests.

2.      IPC objects to the definitions of "Communication" or "Communicated" as overly
broad, unduly burdensome, and vague.  As written, the terms encompass matters that are not
reasonably understood as constituting a "communication" (*e.g.*, "behavior," "contact,"
"revelation," "reception.")

3.      IPC objects to the definition of "Competitive Conditions" as overly broad, unduly
burdensome, and encompassing information that is irrelevant, and is vague, ambiguous, and
subject to multiple interpretations.

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 3

4.      IPC objects to the definition of "Defendant" as overly broad, unduly burdensome, vague, ambiguous and subject to multiple interpretations, and because it purports to include entities and persons that are not Defendants in the litigation.

5.      IPC objects to the definition of "Documents" as it includes materials not within IPC's possession, custody, or control, and because its application would be unduly burdensome. The definition encompasses information that is not proportional to the needs of the litigation and would require IPC to attempt to access, review, and produce information that is not reasonably accessible due to undue burden or cost.

6.      IPC objects to the definitions of "Identity" and "Identify" as overly broad, vague, ambiguous, subject to multiple interpretations, and unduly burdensome in that they purport to require IPC to answer the Subpoena requests as though they were interrogatories.  IPC further objects to the extent these definitions seek information that is not within IPC's possession, custody, or control.

7.      IPC objects to the definition of "ESI" as overly broad and unduly burdensome. The definition not only includes materials not within IPC's possession, custody, or control but encompasses information that is not proportional to the needs of the litigation, and would require IPC to attempt to access, review, and produce information that is not reasonably accessible due to undue burden or cost.

8.      IPC objects to Plaintiffs' incorporation of their definitions of "Person" and "You" "without limitation," and "Relevant Time Period" into the definition of "Employee," the definition is overly broad and unduly burdensome and it purports to include individuals and entities who are not employed by IPC, and seeks information beyond IPC's possession, custody, or control.

9.      IPC objects to the extent that applying the definition of "Including" would be unduly burdensome.

10.      IPC objects to the definition of "Meeting" as overly broad in that it goes far beyond any normal interpretation of that term and would be unduly burdensome to apply.  IPC further objects to the extent that this definition seeks information that is neither reasonably accessible, nor within IPC's possession, custody, or control.

11.      IPC objects to the term "Person" as overly broad, unduly burdensome, and vague, ambiguous, and subject to multiple interpretations.

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 4

12.     IPC objects to the definition of "Policy" or "Procedure" as overly broad and unduly burdensome, particularly in its reference to "course[es] of conduct," "business methods or traditions" that may be "informal" or "unwritten" or followed by some unidentified person "implicitly." This definition includes matters that are not legitimately viewed or considered to be policies or procedures.

13.     IPC objects to the term "Pork Integrator" as vague and ambiguous as it is not a term recognized in the industry and instead appears to be a term that Plaintiffs have created for purposes of this litigation, and to the extent that it seeks information not within IPC's possession, custody, or control.

14.     IPC objects to the definitions of "relating to," "referring to," "regarding," "with respect to" or "concerning" as overly broad and unduly burdensome as worded. In addition, the definition is grossly vague (*e.g.*, "[d]ocuments are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.")

15.     IPC objects to the definition of "Representative" as overly broad, vague, ambiguous, and unduly burdensome to the extent it encompasses individuals who are not IPC's "representatives" and seeks information not within IPC's possession, custody, or control.

16.     IPC objects to the definition of "Structured Data" as overly broad, vague, ambiguous, subject to multiple interpretations, and unduly burdensome. IPC further objects to this definition to the extent that it purports to require the production of information that is neither reasonably accessible nor within IPC's possession, custody, or control.

17.     IPC objects to the definition of "Unstructured Data" as overly broad, vague, ambiguous, subject to multiple interpretations, and unduly burdensome. IPC further objects to this definition to the extent that it purports to require the production of information that is neither reasonably accessible nor within IPC's possession, custody, or control.

18.     IPC objects to the definition of "You," "Your" or "Your company" as overly broad in its reference to entities such as affiliates, subsidiaries, parents, along with directors, agents, or those "purporting to act on their [be]half," for example. The definition also is vague, ambiguous, and subject to multiple interpretations by including entities that are purportedly managed or controlled by IPC, along with "any persons acting or purporting to act" on IPC's behalf. IPC further objects to the extent that, through this expansive definition, Plaintiffs seek documents not within IPC's possession, custody, or control. IPC responds on its own behalf, and not on behalf of any other entity or person.

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 5

## OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS

**REQUEST NO. 1:** Communications between You and any Pork Integrator relating to Competitive Conditions in the Pork Industry, including email and text messages.

**RESPONSE:** IPC incorporates its objections to Plaintiffs' definitions for the defined terms used in this Request. IPC objects to this Request because it seeks information that is completely irrelevant in light of IPC's dismissal, with prejudice, from the *Pork* litigation and its status as a non-party. IPC's purported communications with "Pork Integrators" are of no probative value and the information sought is cumulative and duplicative of information that Plaintiffs are presumably obtaining through discovery of the actual defendants in the litigation. IPC further objects to this Request as grossly overbroad and unduly burdensome as it would require IPC to incur significant expense if required to respond for a thirteen-year period, particularly for "email and text messages." Moreover, the Request, as written, plainly violates Fed. R. Civ. P. 45(d)(1) and is copied almost verbatim from Plaintiffs' First Request for Production No. 3, which was served on the defendants prior to IPC's dismissal with prejudice. IPC objects to Plaintiffs' efforts to circumvent the Court's orders by simply reissuing requests under the guise of Rule 45. IPC further objects to the extent that this Request seeks documents and materials not within IPC's possession, custody, or control. Finally, IPC objects to this Request to the extent it purports to require the production of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 6

**REQUEST NO. 2:** Communications between You and Agri Stats relating to Competitive Conditions in the Pork Industry or any Pork Integrator.

**RESPONSE**:  IPC refers to and incorporates its objections to Request No. 1 as if fully

set forth herein.

**REQUEST NO. 3:** For each document custodian we agree upon or the court orders you to collect and produce documents from, produce the following:

a.  electronic and hard copy diaries, calendars, appointment books, notebooks, to-do lists, Day Timers, day planners or appointment notes;

b.  contact information maintained in Microsoft Outlook, similar programs, Rolodex cards, or any other format, for any Person who is or was: (i) an owner, employee, consultant, officer, board member, representative, or agent of a Pork Integrator or Agri Stats; (ii) Industry Analyst; or (iii) employee of a Trade Association;

c.  trip and travel logs, records, expenses, and other supporting Documents;

d.  expense and entertainment reports, including supporting Documents;

e.  bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you go cellphones) if such telephones were used for business purposes;

f.  Documents relating to membership in any Trade Association or industry group or attendance at any Industry Meeting or Industry Conference;

g.  a copy of the Person's most recently created resume or curriculum vitae (CV);

h.  personnel file, including any discipline or performance evaluations, and any terms of employment (such as confidentiality or non-compete agreements);

i.  copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Pork, such as testimony at a deposition, trial, or public hearing; and

j.  Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by such persons for any business purposes, even if only sparingly.

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 7

**RESPONSE:**  IPC incorporates its objections to Plaintiffs' definitions for the defined terms used in this Request.  IPC further objects to this Request because it seeks information that is completely irrelevant in light of IPC's dismissal, with prejudice, from the *Pork* litigation and its status as a non-party.  This overly broad Request seeks various items that have nothing to do with the parties' claims and defenses, such as IPC employee calendars, personnel files, Rolodex cards, expense reports, court records, CVs, and if IPC were to be required to comply it would be oppressive and cause IPC to incur significant expense, thereby making the Request unduly burdensome.  Moreover, the Request, as written, plainly violates Fed. R. Civ. P. 45(d)(1) and is copied almost verbatim from Plaintiffs' First Request for Production No. 5, which was served on the defendants prior to IPC's dismissal with prejudice.  IPC objects to Plaintiffs' efforts to circumvent the Court's dismissal orders by reissuing requests under the guise of Rule 45.  Moreover, the Request is also vague, ambiguous, and subject to multiple interpretations in that it includes a variety of undefined terms (*e.g.*, Industry Analyst, Day Timers, Industry Meeting, Industry Analyst) and other references that fail to reasonably describe the information sought.  Finally, IPC objects to this Request insofar as it seeks documents or information not within IPC's possession, custody, or control.

**REQUEST NO. 4:** Structured data, such as databases regarding customer purchases of Pork during the Relevant Time Period. Plaintiffs will meet and confer with you regarding the exact data fields and format of the production of the structured data.

**RESPONSE:**  IPC incorporates its objections to Plaintiffs' definitions for the defined terms used in this Request.  IPC objects to this Request for "Structured Data" as overly broad, vague, and ambiguous in that it fails to make any effort whatsoever to describe the information

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 8

sought.  Nor can Plaintiffs appropriately defer providing any reasonable descriptions of what they are seeking by suggesting they are willing to "meet and confer" about all of IPC's Structured Data that may exist for a thirteen-year period.  IPC further objects because this Request is an effort to circumvent the Court's dismissal orders through improper use of Rule 45 as Plaintiffs have directed numerous of their structured data Requests to the parties in the *Pork* litigation.  IPC was dismissed with prejudice and is no longer a party and its "Structured Data" is not relevant to the parties' claims or defenses in the litigation, and would be cumulative of the structured data available from the remaining parties in the litigation.  Indeed, the parties are in the process of negotiating structured data productions.  *See* Minute Entry, *In re Pork Antitrust Litigation* (Dkt. 795).  Finally, IPC objects to the extent that the "Structured Data" Plaintiffs seek (whenever sufficiently defined) would be unduly burdensome to produce, would impose significant costs on IPC, or require the production of information that is not reasonably accessible.

**REQUEST NO. 5:** Documents relating to guidelines and policies for compliance with competition or antitrust laws, including training manuals and alleged, suspected, potential or actual violations of such guidelines or policies.

**RESPONSE:**  IPC incorporates its objections to Plaintiffs' definitions for the defined terms used in this Request.  IPC objects to this Request as overly broad in that it seeks information that is completely irrelevant in light of IPC's dismissal, with prejudice, from the *Pork* litigation and its status as a non-party.  IPC further objects because this Request not only seeks information that is of no probative value to the underlying litigation, but it is unduly burdensome as it would require IPC to incur significant expense if required to respond for the

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 9

thirteen-year period encompassed by this Request.  Moreover, the Request, as written, plainly

violates Fed. R. Civ. P. 45(d)(1) and is copied from Plaintiffs' First Request for Production No.

25 and other disclosure requests, which were served on the defendants prior to IPC's dismissal

with prejudice.  IPC objects to Plaintiffs' efforts to circumvent the Court's dismissal orders by

reissuing those requests under the guise of Rule 45.  IPC already produced relevant policies and

procedures to Plaintiffs as required by the Court while the motions to dismiss were pending, a

fact Plaintiffs were well aware of before they served the instant Subpoena.  As a result, this

Request plainly seeks information already in Plaintiffs' possession and thus is unduly

burdensome.  Finally, IPC objects to the extent this Request purports to require the production of

documents protected from disclosure by the attorney-client privilege and/or the work product

doctrine.

    **REQUEST NO. 6:**  Documents sufficient to identify your policies and procedures during
the Relevant Time Period relating to electronically stored information, including retention
periods, use of auto-delete for email or other systems, and employee cellphone use.

    **RESPONSE:** IPC incorporates its objections to Plaintiffs' definitions for the defined

terms used in this Request.  IPC objects to this Request as IPC is no longer a party to the

underlying litigation, and the Request plainly seeks preservation-related "discovery about

discovery" that is wholly irrelevant.  IPC also objects to this Request as it not only seeks

information that is of no probative value to the underlying litigation, but would be extremely

burdensome to comply with as worded and require IPC to incur significant expense if IPC were

required to respond for the thirteen-year period encompassed by this Request.  Moreover, the

Request, as written, plainly violates Fed. R. Civ. P. 45(d)(1) and is copied from Plaintiffs' First

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 10

Request for Production No. 29 and the other disclosure requests, which were served on the

defendants prior to IPC's dismissal with prejudice.  IPC objects to Plaintiffs' efforts to

circumvent the Court's dismissal orders by reissuing those requests under the guise of Rule 45.

IPC already has produced relevant policies and procedures as required by the Court while the

motions to dismiss were pending, a fact Plaintiffs were well aware of before they served the

instant Subpoena.  As a result, this Request seeks information already in Plaintiffs' possession

and thus is unduly burdensome.

      **REQUEST NO. 7:**  Documents sufficient to identify Your organizational structure, including but not limited to any constitution, formation or organizational documents, articles of incorporation, business licenses, or organizational charts.

      **RESPONSE:**  IPC incorporates its objections to Plaintiffs' definitions for the defined

terms used in this Request.  IPC objects to this Request as IPC is no longer a party to the *Pork*

litigation, and the Request plainly seeks information about IPC's organizational structure, a topic

that is wholly irrelevant to the litigation.  IPC also objects to this Request as it not only seeks

information that is of no probative value to the underlying litigation, but would be extremely

burdensome to comply with as worded and require IPC to incur significant expense if IPC were

required to respond for the thirteen-year period encompassed by this Request.  Moreover, the

Request, as written, plainly violates Fed. R. Civ. P. 45(d)(1) and is copied from Plaintiffs' First

Request for Production No. 2, which was served on the defendants prior to IPC's dismissal with

prejudice.  IPC objects to Plaintiffs' efforts to circumvent the Court's dismissal orders by

reissuing requests under the guise of Rule 45.  IPC already has produced relevant organizational

information as required by the Court while the motions to dismiss were pending, a fact Plaintiffs

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 11

were well aware of before they served the instant Subpoena.  As a result, this Request seeks information already in Plaintiffs' possession and thus is unduly burdensome.  Finally, IPC objects to this Request insofar as it seeks information that is publicly available.

**REQUEST NO. 8:**  Copies of all Telephone Records in your possession, custody, or control, including Telephone Records of your main phone number(s), main fax number(s), Document Custodian's direct dial or shared phone numbers, and any phone number used as a switchboard for any of your relevant facilities such as your headquarters, administrative offices, Pork processing plants, and Pork sales offices.

**RESPONSE:**  IPC incorporates its objections to Plaintiffs' definitions for the defined terms used in this Request.  On its face, this Request seeks information that is wholly irrelevant and/or would be cumulative and duplicative of information that Plaintiffs sought from the remaining defendants in the litigation (or the phone carriers to which Plaintiffs have directed subpoenas).  *See* Stipulation, *In re Pork Antitrust Litigation*, (Dkt. 660).  Moreover, the Request, as written, plainly violates Fed. R. Civ. P. 45(d)(1) and is copied almost verbatim from Plaintiffs' First Request for Production No. 6, which was served on the defendants prior to IPC's dismissal with prejudice.  IPC objects to Plaintiffs' efforts to circumvent the Court's dismissal orders by reissuing requests under the guise of Rule 45.  IPC further objects to this Request as it not only seeks information that is of no probative value to the underlying litigation, but is unduly burdensome as it would require IPC to incur significant expense if IPC were required to locate and produce telephone records for the thirteen-year period encompassed by this Request. Finally, IPC objects to this Request insofar as it seeks information that is not within IPC's possession, custody, or control.

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 12

**REQUEST NO. 9:** All Documents relating to Competitive Conditions in the market for Pork, including reports, presentations, industry publications, business plans, studies, analyses, or other Documents concerning forecasted, projected, estimated, planned or actual: (i) market shares; (ii) consolidation, mergers, acquisitions, or joint ventures; (iii) production or processing capacity, capacity reduction, capacity utilization, or operating rates; (iv) fixed or variable costs; (v) pricing; (vi) inventories; (vii) entry or exit conditions; (viii) inventories; (ix) supplies/supply trends; (x) data, publications, or other sources used in the regular course of business by You to monitor Pork demand in the United States; (xi) substitute products; (xii) exports; (xiii) raw materials; (xiv) Pork Supply Factors; or (xv) other industry statistics.

**RESPONSE:**     IPC incorporates its objections to Plaintiffs' definitions for the defined terms used in this Request.  IPC objects to this Request as patently over broad in that it seeks information that is completely irrelevant in light of IPC's dismissal, with prejudice, from the *Pork* litigation and its status as a non-party.  Moreover, the information sought by this Request regarding so-called "Competitive Conditions" is cumulative and duplicative of information Plaintiffs presumably are obtaining from the remaining defendants in the litigation.  If required to comply with this Request, which seeks vague categories of materials like "reports," "business plans," "analyses," "operating rates," "entry or exit conditions," or "other industry statistics," IPC would incur substantial expense, thereby making the Request unduly burdensome.  Moreover, the Request, as written, plainly violates Fed. R. Civ. P. 45(d)(1) and is copied almost verbatim from Plaintiffs' First Request for Production No. 18, which was served on the defendants prior to IPC's dismissal with prejudice.  IPC objects to Plaintiffs' efforts to circumvent the Court's dismissal orders by reissuing requests under the guise of Rule 45.  Finally, IPC also objects to this Request insofar as it seeks documents or information not within IPC's possession, custody, or control, or information that is available from public sources.

Mayer Brown LLP

Brian Clark
Stephen Owen
July 9, 2021
Page 13

********

       If you believe it would be productive to discuss the foregoing, please feel free to reach out to find a mutually-convenient time to meet-and-confer.

Sincerely,

Britt M. Miller

cc:    William H. Stallings
       Jaime Stilson
       Robert E. Entwisle

# EXHIBIT 7

| | |
|---|---|
| **From:** | Miller, Britt M. <BMiller@mayerbrown.com> |
| **Sent:** | Tuesday, December 28, 2021 4:12 PM |
| **To:** | Bourne, Joseph C.; Owen, Stephen M.; Clark, Brian D.; Sipe, Elizabeth M. |
| **Cc:** | Stallings, William H.; stilson.jaime@dorsey.com; Entwisle, Robert E. |
| **Subject:** | RE: FRCP 45 Subpoena to Indiana Packers Corp. |
| **Attachments:** | Pork - Response re IPC Subpoena.pdf |

Joe –

Please see the attached correspondence.  As always, happy to discuss further.

Best for the New Year – Britt

_____
**Britt M. Miller**
*Managing Partner-Chicago/Co-Lead Global Antitrust Practice*
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL  60606
T +1 312 701 8663

LinkedIn | Twitter
mayerbrown.com

**From:** Bourne, Joseph C. <jcbourne@locklaw.com>
**Sent:** Tuesday, December 14, 2021 1:32 PM
**To:** Miller, Britt M. <BMiller@mayerbrown.com>; Owen, Stephen M. <smowen@locklaw.com>; Entwisle, Robert E. <REntwisle@mayerbrown.com>; Clark, Brian D. (EXTERNAL CONTACT) <bdclark@locklaw.com>
**Cc:** Stallings, William H. <WStallings@mayerbrown.com>; stilson.jaime@dorsey.com; Sipe, Elizabeth M. (EXTERNAL CONTACT) <emsipe@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

**\*\*EXTERNAL SENDER\*\***

Hi Britt,

Just checking in here. We look forward to hearing from you.

Best,
Joe

Joseph C. Bourne | he/him/his | Senior Counsel
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S | Suite 2200 | Minneapolis MN  55401
V: 612-339-6900 | F: 612-339-0981 | www.locklaw.com

**From:** Bourne, Joseph C.
**Sent:** Thursday, December 2, 2021 2:31 PM
**To:** 'Miller, Britt M.' <BMiller@mayerbrown.com>; Owen, Stephen M. <smowen@locklaw.com>; Entwisle, Robert E. <REntwisle@mayerbrown.com>; Clark, Brian D. <bdclark@locklaw.com>

**Cc:** Stallings, William H. <WStallings@mayerbrown.com>; stilson.jaime@dorsey.com>; Sipe, Elizabeth M. <emsipe@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

Britt and all,

Please see the attached correspondence. We look forward to your response and are happy to discuss at your convenience.

Best regards,
Joe

Joseph C. Bourne | he/him/his | Senior Counsel
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S | Suite 2200 | Minneapolis MN  55401
V: 612-339-6900 | F: 612-339-0981 | www.locklaw.com

---

**From:** Miller, Britt M. <BMiller@mayerbrown.com>
**Sent:** Monday, November 1, 2021 2:48 PM
**To:** Bourne, Joseph C. <jcbourne@locklaw.com>; Owen, Stephen M. <smowen@locklaw.com>; Entwisle, Robert E. <REntwisle@mayerbrown.com>; Clark, Brian D. <bdclark@locklaw.com>
**Cc:** Stallings, William H. <WStallings@mayerbrown.com>; stilson.jaime@dorsey.com>; Sipe, Elizabeth M. <emsipe@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

Joe –

Thanks.  As made clear in our July responses and objections to plaintiffs' subpoena, IPC does not believe that the subpoena, as written, is either reasonable or enforceable.

Plaintiffs' continued demands that IPC undertake the substantial effort to investigate all of the categories of data that plaintiffs are requesting, including one that literally asks for "any other data available in your database concerning the purchase, sale or distribution of the pork for each sale" and the intimation that the questions of whether IPC has such data and whether it is accessible is somehow determinative of burden are misguided.  There is burden in even undertaking the inquiry you are suggesting which is why we asked for the types of data plaintiffs are seeking in the first instance.

As for plaintiffs' unstructured data requests, as we discussed during our meet-and-confer, IPC has no interest in undertaking some drawn out process of negotiating custodians or search terms in response to these requests especially ones, like Request No. 9, that ask for virtually every document IPC has related to its business.  Nor does it have any appetite for incurring the costs of the collection, processing, and production of some as yet undefined set of documents for some as yet undefined number of custodians.  We made clear that we were willing to entertain requests for "go get" documents that could be retrieved without significant burden, but your proposal does not appear to have taken us up on that offer.  And plaintiffs' commitment to work with us on "search methodology" again puts the cart before the horse.  Plaintiffs have had our organizational charts for over a year.  They have had discovery from the defendants in the litigation for months (indeed, we understand that the parties were substantially complete with their productions this past September).  If plaintiffs are willing to identify which custodians they are interested in, if they can point to something in the parties' discovery record that leads them to believe that IPC was involved in any of the sorts of communications requested by the subpoena, and if they can identify the sorts of documents related to IPC's pork operations that they would be looking for—*i.e.*, something other than "all documents"—all of that information would materially advance these discussions.  Of course, if plaintiffs are willing to bear the costs associated with any collection, processing and production of unstructured data IPC might undertake, that would be highly relevant as well.

As stated in my prior email, plaintiffs need to make a comprehensive proposal on structured data and unstructured data so that we can evaluate the overall burden and determine whether further discussion would be fruitful or whether the parties need to take the issue up in the N.D. Indiana.

If you believe a conversation this week would be productive we, of course, are willing to engage and would ask that you propose some dates/times.

Regards – Britt

_____

**Britt M. Miller**
*Managing Partner-Chicago/Co-Lead Global Antitrust Practice*
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL  60606
T +1 312 701 8663

LinkedIn | Twitter
mayerbrown.com

---

**From:** Bourne, Joseph C. <jcbourne@locklaw.com>
**Sent:** Friday, October 29, 2021 2:55 PM
**To:** Miller, Britt M. <BMiller@mayerbrown.com>; Owen, Stephen M. <smowen@locklaw.com>; Entwisle, Robert E. <REntwisle@mayerbrown.com>; Clark, Brian D. (EXTERNAL CONTACT) <bdclark@locklaw.com>
**Cc:** Stallings, William H. <WStallings@mayerbrown.com>; stilson.jaime@dorsey.com; Sipe, Elizabeth M. (EXTERNAL CONTACT) <emsipe@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

**\*\*EXTERNAL SENDER\*\***

Britt,

Thank you for your email.

In order to meaningfully discuss and reach resolution regarding both structured data and other documents together, as you request, Plaintiffs need to know the extent of available structured data, including the time period for which it is available. We also need to know if you contend any of this data exists but is not accessible, and if so, to what extent.

Regarding the substantive document requests, or non-structured data, Plaintiffs will agree to seek documents responsive only to requests 1, 2, and 9. These are, generally, communications with the Defendants about competitive conditions in the pork industry and other documents concerning competitive conditions in the pork industry. We would work with you to reach agreement on search methodology (e.g., custodians and search terms), which we expect could further address your client's burden concerns.

We continue to believe the subpoena is enforceable as written, and our willingness to narrow the scope of the subpoena is contingent upon reaching agreement on the scope of IPC's response.

We look forward to hearing from you and are available to discuss further next week, if that would be helpful.

Best,
Joe

Joseph C. Bourne | he/him/his | Senior Counsel
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S | Suite 2200 | Minneapolis MN  55401

V: 612-339-6900 | F: 612-339-0981 | www.locklaw.com

---

**From:** Miller, Britt M. <BMiller@mayerbrown.com>
**Sent:** Wednesday, October 27, 2021 4:37 PM
**To:** Bourne, Joseph C. <jcbourne@locklaw.com>; Owen, Stephen M. <smowen@locklaw.com>; Entwisle, Robert E. <REntwisle@mayerbrown.com>; Clark, Brian D. <bdclark@locklaw.com>
**Cc:** Stallings, William H. <WStallings@mayerbrown.com>; stilson.jaime@dorsey.com; Sipe, Elizabeth M. <emsipe@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

Joe –

Thank you for your follow-up email and your earlier clarifications.  As discussed during our meet-and-confer, IPC needs to understand the full scope of what plaintiffs are seeking—structured and unstructured data—in response to their subpoena before we can meaningfully move forward as the burden is cumulative.  In other words, we are not going to do this piecemeal.  In your October 13 email, you indicated that plaintiffs intended to "follow up soon about a proposal regarding the remaining requests in the subpoena".  Once we receive that proposal, we will be in a better position to evaluate plaintiffs' request and respond.

Regards – Britt

_____

**Britt M. Miller**
*Managing Partner-Chicago/Co-Lead Global Antitrust Practice*
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL  60606
T +1 312 701 8663

LinkedIn | Twitter
mayerbrown.com

---

**From:** Bourne, Joseph C. <jcbourne@locklaw.com>
**Sent:** Wednesday, October 27, 2021 1:43 PM
**To:** Owen, Stephen M. <smowen@locklaw.com>; Miller, Britt M. <BMiller@mayerbrown.com>; Entwisle, Robert E. <REntwisle@mayerbrown.com>; Clark, Brian D. (EXTERNAL CONTACT) <bdclark@locklaw.com>
**Cc:** Stallings, William H. <WStallings@mayerbrown.com>; stilson.jaime@dorsey.com; Sipe, Elizabeth M. (EXTERNAL CONTACT) <emsipe@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

**\*\*EXTERNAL SENDER\*\***

Britt,

Following up here. Can you please let us (1) whether IPC will agree to produce such structured data, to the extent it exists; (2) if IPC contends any of the data sought exists but is inaccessible (if so, please specify); and (3) whether IPC will agree to the same definition of "pork" for purposes of this request as Plaintiffs agreed with Defendants in this action?

Thanks,
Joe

Joseph C. Bourne | he/him/his | Senior Counsel
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S | Suite 2200 | Minneapolis MN  55401

V: 612-339-6900 | F: 612-339-0981 | www.locklaw.com

---

**From:** Bourne, Joseph C.
**Sent:** Wednesday, October 13, 2021 1:25 PM
**To:** Owen, Stephen M. <smowen@locklaw.com>; Miller, Britt M. <BMiller@mayerbrown.com>; Entwisle, Robert E. <REntwisle@mayerbrown.com>; Clark, Brian D. <bdclark@locklaw.com>
**Cc:** Stallings, William H. <WStallings@mayerbrown.com>; stilson.jaime@dorsey.com; Sipe, Elizabeth M. <emsipe@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

Britt and all,

It was good speaking with you on Friday.

Plaintiffs request the following fields of structured data in the most disaggregated form (i.e., at the transaction level) in which it is kept, to be produced in a comma delimited text file (e.g., a file with a file extension of .csv or .txt). We suggest providing a data sample so we can review and ask any questions before your client makes a complete production.

   a. The terms of each sale;
   b. The invoice number;
   c. The purchase order number;
   d. The location from which the pork was shipped;
   e. The customer's name, phone number(s), address(es), email address(es), including the identity of the customer that was billed and the location to which the pork was shipped;
   f. The date you shipped the pork, the date you billed for the pork, and the date the customer took delivery;
   g. The grade, cut, product form, and/or type of pork, including any product numbers, unique purchaser-specific identifier, any description of characteristics, and product descriptions sold for each transaction;
   h. The quantity (and units of measure) for each sale;
   i. All pricing information concerning the sale, including shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;
   j. The currency in which the sale was billed and paid;
   k. Any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales;
   l. If a resale, the supplier of each pork sold in connection with each sale;
   m. The price you paid your supplier for each type of pork sold in connection with each sale, including gross and net aggregate and per-unit prices;
   n. Any fixed or variable costs or costs of goods sold concerning the sale (including freight charge and transportation cost, sales and distribution cost, raw materials, intermediates, marketing or sales cost, and any other cost attributed or allocated to the sale);
   o. For any sale or purchase from another pork integrator, Electronic Data Interchange fields for which the user can freely enter text, such as "comments" or similar fields;
   p. Any structured database field summarizing the terms of sale or agreements or contracts for customers;
   q. Any other data available in your database concerning the purchase, sale or distribution of the pork for each sale.

Please let us know if you contend any of this data exists but is not accessible (e.g., if it is available only on backup tapes that would need to be restored), and if so, for what fields and during what time period.

The subpoena seeks structured data for "Pork." For the avoidance of doubt and ambiguity, Plaintiffs reached agreement with Defendants to exclude products that Defendants categorize as: 1) byproducts or offal (with the exception of hearts and feet sold in Puerto Rico); 2) multi-protein sausages; and 3) multi-ingredient products. We propose the same definition and exclusions here.

We will follow up soon about a proposal regarding the remaining requests in the subpoena, but in the meantime would like to keep this moving regarding IPC's structured data.

Best,
Joe

Joseph C. Bourne | he/him/his | Senior Counsel
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S | Suite 2200 | Minneapolis MN  55401
V: 612-339-6900 | F: 612-339-0981 | www.locklaw.com

---

**From:** Owen, Stephen M. <smowen@locklaw.com>
**Sent:** Tuesday, October 5, 2021 12:55 PM
**To:** Miller, Britt M. <BMiller@mayerbrown.com>; Entwisle, Robert E. <REntwisle@mayerbrown.com>; Clark, Brian D. <bdclark@locklaw.com>
**Cc:** Stallings, William H. <WStallings@mayerbrown.com>; stilson.jaime@dorsey.com; Bourne, Joseph C. <jcbourne@locklaw.com>; Sipe, Elizabeth M. <emsipe@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

Britt,

11:00 am central on Friday will work for us. We will send dial-in information/a calendar entry.

Thanks.

---

**From:** Miller, Britt M. <BMiller@mayerbrown.com>
**Sent:** Tuesday, October 5, 2021 12:19 PM
**To:** Owen, Stephen M. <smowen@locklaw.com>; Entwisle, Robert E. <REntwisle@mayerbrown.com>; Clark, Brian D. <bdclark@locklaw.com>
**Cc:** Stallings, William H. <WStallings@mayerbrown.com>; stilson.jaime@dorsey.com; Bourne, Joseph C. <jcbourne@locklaw.com>; Sipe, Elizabeth M. <emsipe@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

Counsel –

We are available to meet-and-confer this Friday at 11:00 a.m. Central.  If that works, we would ask that you circulate a calendar entry/dial-in information.

Regards – Britt

_____
**Britt M. Miller**
*Managing Partner-Chicago/Co-Lead Global Antitrust Practice*
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL  60606
T +1 312 701 8663
LinkedIn | Twitter
mayerbrown.com

---

**From:** Owen, Stephen M. <smowen@locklaw.com>
**Sent:** Monday, October 4, 2021 3:27 PM

**To:** Entwisle, Robert E. <REntwisle@mayerbrown.com>; Clark, Brian D. (EXTERNAL CONTACT) <bdclark@locklaw.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Stallings, William H. <WStallings@mayerbrown.com>;
stilson.jaime@dorsey.com; Bourne, Joseph C. <jcbourne@locklaw.com>; Sipe, Elizabeth M. (EXTERNAL CONTACT)
<emsipe@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

**\*\*EXTERNAL SENDER\*\***

Counsel,

Following up on the below. Can you please let us know when you're available to meet and confer?

Thank you.

Best,
Steve

---

**From:** Owen, Stephen M.
**Sent:** Tuesday, September 28, 2021 3:01 PM
**To:** 'Entwisle, Robert E.' <REntwisle@mayerbrown.com>; Clark, Brian D. <bdclark@locklaw.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Stallings, William H. <WStallings@mayerbrown.com>;
stilson.jaime@dorsey.com; Bourne, Joseph C. <jcbourne@locklaw.com>
**Subject:** RE: FRCP 45 Subpoena to Indiana Packers Corp.

Counsel,

We would like to set up a meet-and-confer to discuss the subpoena and objections. Can you please let us know a time
that works for you?

Thank you.

Best,
Steve

---

**From:** Entwisle, Robert E. <REntwisle@mayerbrown.com>
**Sent:** Friday, July 9, 2021 4:58 PM
**To:** Clark, Brian D. <bdclark@locklaw.com>; Owen, Stephen M. <smowen@locklaw.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Stallings, William H. <WStallings@mayerbrown.com>;
stilson.jaime@dorsey.com
**Subject:** FRCP 45 Subpoena to Indiana Packers Corp.

Counsel,

Please see the attached letter.

_____

**Robert Entwisle**
*Counsel*
Mayer Brown LLP
71 S. Wacker
Chicago, IL 60606
T +1 312 701 8151 | M +1 312 782 0600

LinkedIn | Twitter
mayerbrown.com

---

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities, including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership) and Tauil & Chequer Advogados (a Brazilian partnership).

Information about how we handle personal information is available in our Privacy Notice.

This e-mail may contain information that is privileged, confidential or otherwise protected from disclosure. If you are not the intended recipient or otherwise have received this message in error, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you are not the intended recipient or otherwise have received this message in error, please notify us immediately by e-mail, discard any paper copies and delete all electronic files of the message.

# EXHIBIT 8

# LOCKRIDGE
# GRINDAL
# NAUEN
P . L . L . P .

Attorneys at Law

w w w . l o c k l a w . c o m

**Joseph C. Bourne**
jcbourne@locklaw.com
Phone: 612.339.6900

**MINNEAPOLIS**
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401-2179
T 612.339.6900
F 612.339.0981

December 1, 2021

<u>**VIA E-MAIL**</u>

Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
bmiller@mayerbrown.com

> **Re:** ***In re Pork Antitrust Litigation*, Case No. 0:18-cv-1776**
> **Subpoena to Indiana Packers Corporation**

Dear Britt:

I write to follow up on our conversations regarding the subpoena Plaintiffs served on Indiana Packers Corporation on June 7, 2021. In our last correspondence, IPC requested Plaintiffs make a "comprehensive proposal on structured data and unstructured data" so IPC could evaluate overall burden.

Plaintiffs continue to seek structured data from IPC that is the same as the structured data requested from, and produced by, Defendants. As noted in my October 13, 2021 email, this would be the following fields of structured data in the most disaggregated form (i.e., at the transaction level) in which it is kept, to be produced in a comma delimited text file (e.g., a file with a file extension of .csv or .txt). We suggest providing a data sample so we can review and ask any questions before your client makes a complete production.

a.  The terms of each sale;

b.  The invoice number;

c.  The purchase order number;

d.  The location from which the pork was shipped;

e.  The customer's name, phone number(s), address(es), email address(es), including the identity of the customer that was billed and the location to which the pork was shipped;

Britt M. Miller
December 1, 2021
Page 2

      f.       The date you shipped the pork, the date you billed for the pork, and the date the customer took delivery;

      g.      The grade, cut, product form, and/or type of pork, including any product numbers, unique purchaser-specific identifier, any description of characteristics, and product descriptions sold for each transaction;

      h.      The quantity (and units of measure) for each sale;

      i.       All pricing information concerning the sale, including shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;

      j.       The currency in which the sale was billed and paid;

      k.      Any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales;

      l.       If a resale, the supplier of each pork sold in connection with each sale;

      m.     The price you paid your supplier for each type of pork sold in connection with each sale, including gross and net aggregate and per-unit prices;

      n.      Any fixed or variable costs or costs of goods sold concerning the sale (including freight charge and transportation cost, sales and distribution cost, raw materials, intermediates, marketing or sales cost, and any other cost attributed or allocated to the sale);

      o.      For any sale or purchase from another pork integrator, Electronic Data Interchange fields for which the user can freely enter text, such as "comments" or similar fields;

      p.      Any structured database field summarizing the terms of sale or agreements or contracts for customers;

      q.      Any other data available in your database concerning the purchase, sale or distribution of the pork for each sale.

The subpoena seeks structured data for "Pork." For the avoidance of doubt and ambiguity, Plaintiffs reached agreement with Defendants to exclude products that Defendants categorize as: (1) byproducts or offal (with the exception of hearts and feet sold in Puerto Rico); (2) multi-protein sausages; and (3) multi-ingredient products. We propose the same definition and exclusions here.

Britt M. Miller
December 1, 2021
Page 3

Again, we request that you let us know the extent of the available structured data, including the time period for which it is available. If you contend any of this data exists but is not accessible, please let us know.

As to substantive documents or non-structured data, as noted in my October 29, 2021 email, Plaintiffs are willing to compromise and seek only documents responsive to Requests 1, 2, and 9. These are, generally, emails and other documents concerning competitive conditions in the pork industry.

IPC expressed concern about undertaking a drawn-out process of negotiating custodians and search terms. We propose the following.

First, as to custodians, IPC and Plaintiffs previously agreed upon custodians in August 2019 when IPC was a party to the litigation. *See* Brittany Resch August 22, 2019 letter to Bob Entwisle at page 4. At that time, the parties agreed on the following custodians: Gary Jacobson, Russell Yearwood, David Murray, Galen (Paul) Stiverson, Mark McCain, James Allen, Robert Kastens, Carl Wollenburg, and Randy Toleman.[1] These are the same custodians Plaintiffs propose now.

Second, as to search terms, Plaintiffs attach a list of proposed terms that are substantially the same as those Plaintiffs have proposed, and generally agreed to utilize, with other third parties. Plaintiffs are willing to consider hit reports and listen to any other specific concerns you have with particular terms. As we have with other third parties, we can, if necessary, modify and tailor the search terms in a meaningful way when we receive those hit reports.

Further, to minimize the burden in producing such documents, Plaintiffs are willing to make available a document hosting and review platform (DISCO), at no cost to IPC. Plaintiffs have reached such agreement with other third parties. In a nutshell, we can execute an agreement with you and DISCO to allow you to utilize that platform to host and efficiently review the documents. Plaintiffs would not have access to those documents; only you and your colleagues would.

We hope to engage in a collaborative process that will enable us to obtain the relevant, responsive documents IPC possesses, while minimizing the burden on IPC in collecting and producing its structured data and substantive documents. We look forward to hearing from you.

Very truly yours,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

*/s/Joseph C. Bourne*

---

[1] In August 2019, IPC confirmed that some documents were retained for Mr. Toleman after he left IPC in 2012 and that those documents would be produced subject to search terms.

Britt M. Miller
December 1, 2021
Page 4


Joseph C. Bourne

Attachment

cc:   Robert Entwisle
      William Stallings
      Jaime Stilson

# EXHIBIT 9

| Search Terms |
| --- |
| Smithfield |
| "Murphy Brown" |
| "Farmland" |
| "John Morrell" |
| Hormel |
| JBS |
| Seaboard |
| "sea board" |
| STF |
| SBF |
| Clemens |
| Hatfield |
| hqm |
| CFG |
| CVF |
| Triumph |
| Tyson |
| TSN |
| TYSN |
| Cargill |
| "country view family farms" |
| "Farmer John" |
| "Agri Stats" OR agristat! OR agstat! OR "A-stat" OR "agri-stats" OR "agri-metrix" OR agrimetrix OR "agri metrix" OR "agri tech" OR "AG-stats" OR agsts OR astats OR agst OR agrimetric! OR "agri metric" OR "agrimetrics" OR "agri-metrics" OR EMI OR "Express Markets" OR "Express Market" OR ExpressMarket! OR paragon! OR agristats! OR expressmarketsinc! OR emianalytics! |
| |
| PFFJ! |
| smithfieldfoods! |
| murphybrownllc! |
|  farmlandfoods! |
| cvff! |
| clemensfoodgroup! |
| tyson! |
| triumphfoods! |
| seaboardfoods! |
| hormel! |
| cvff! |
| clemensfoodgroup! |
| jbssa! |

cargill!
jmfg!
sf-fl!
sf.fl!
seaboardtriumphfoods!
farmerjohn!
clemensdevelopment!
clemensfamilycorp!
Maplevale!
(Ronald or Ron) w/2 Freed
ron@clemens*
Rebecca w/2 Roddy
RMRoddy*
mafia
Robert.A.Brown@cox.net
Copa OR Dubbert OR (Ron! /2 Knowles) OR ((robert or bo) /2 manly)
OR Phalen OR (Larry /2 Pope) OR (Scott /2 Saunders) OR (Gregg /2
Schmidt) OR (Dhamu or Thamodaran) OR Barger OR Bogaard OR
Dohlman OR (Su! /2 Dow) OR (Vic! /2 Flemming) OR Kaster OR
Lombardo OR ((Robert or Bob!) /2 Moore) OR Sabin OR Szaloky OR
Luckman OR (Ken! /2 Sullivan) OR (Keller /2 Watts) OR ((joe or joseph)
/2 Weber) OR luter OR Schellpeper OR Nunziata OR Sebring OR Dokken
OR (Arn! /2 Silver) OR Mallahan OR (Jerry /2 Lamb) OR Kapella OR
French
(Doug! /2 Clemens) OR Edsill OR (Eric /2 Patton) OR Rennells OR ((Rob!
OR Bob) / Ruth) OR Groff OR Masotta OR Schmberbeck OR Budnick OR
(Phil! /2 Clemens)
(Don! /2 Tyson) OR John! /2 Tyson) OR ((Thomas or Tom) /2 Hayes) OR
(Don! /2 Smith) OR (Rich! /2 Bond) OR (Noel /2 White) OR Stouffer OR
(Todd /2 Neff) OR (Shane /2 Miller) OR Krehbiel OR Solsma OR ((James
or Jim) /2 Schmitz) OR (Steve! /2 Billups) OR (Deborah /2 McConnell)
OR Tollett OR Lochner OR (Leah /2 Anders!) OR Brester OR Machan OR
(Jeremy /2 Dickinson) OR (John! /2 Thomas) OR Kathol OR Wisener OR
Holbrook OR Leatherby OR (Ray! /2 McGaugh) OR Sheneman OR
Hollingsworth OR Gingerich OR Glendinning OR Johnk OR alderson OR
King OR Roel OR Andriessen OR Fick

Brian w/2 Gordon
bgordon*
Brandi w/2 McClure
brandi.mcclure*
brandi_mcclure*

(Mark /2 Campbell) OR Papenberg OR (Matt! /2 England) OR Wedeking OR Lehenbauer OR ((Tom! or Thomas) /2 French) OR (Ken! /2 Grannas) OR Diebold OR ((Rick or Rich!) /2 Hoffman) OR Kleiniein OR Larimer OR (Pat! /2 Lilly) OR (Dan! /2 Marlow) OR Schmerbach OR McClain OR Southwell OR (Clay /2 Swan) OR Conaway OR Reeder OR (Misty /2 Taylor)

Blumhardt OR Brenneman OR (Mel /2 Davis) OR Dye OR Getzel OR Ginther OR Hast OR (Kevin /2 Henn) or (Ter! / Holton) OR Hunderdosse OR (Gary /2 Lewis) OR (Duke /2 Sand) OR (Kevin /2 Smith) OR (Josh! /2 Stewart) OR Summerlin OR Taphorn OR (Joan /2 Contreras) OR Lecluyse OR (Lesa /2 Tuley)

(Brian /2 Synder) OR Grismore OR Scholer OR Bilbrey OR (Stac! /2 Edwards) OR (Stac! /2 Brooks) OR Dess OR Agne OR (Josh! /2 Edwards) OR Feitz OR (Steve! /2 Meyer) OR Stegall OR Neff OR (Blair /2 Synder)


Bogle OR Bollum OR Chenoweth OR Hoefflin OR Peil OR (Jose /2 Rojas) OR Temperley OR Adwell OR Annis OR (Steve! /2 Binder) OR ((Tom or Thomas) /2 Day) OR Ettinger or Farnsworth OR Feragen OR (Jana /2 Haynes) OR Hyland or Lieberum OR ((Jim OR James) /2 Sheehan) OR ((William or Bill) /2 Snyder) OR Coffey OR Fiala OR Leitch OR Meiergerg OR Snee OR Gyarmarty OR (Neal /2 Hull) OR ((Jennifer or Jenny) /2 Johnson) OR LaVallie OR Steinbach OR Venenga


(wesley /2 batista) OR (joesley /2 batista) OR (Don! /2 Jackson) OR Nogueira OR Bruett OR Denilson OR (Garry /2 Albright) OR (Kevin /2 Arnold) OR (Ed! /2 Bick) OR (Jerry /2 Bick) OR (Jerry /2 Brooks ) OR Dooley OR Goulding OR (Tim! /2 Hiller) OR ((Bob OR Robert) /2 Krebs) OR (Kristina /2 Lambert) OR Lorenger OR (Matt! /2 Turner) OR (Eric /2 Wallin) OR Andersland OR Fosbery OR Huebner OR (Rob! /2 Kearns) OR Kupfer OR (Ron! /2 Ott) OR (Lisa /2 Peters) OR (George /2 Price) OR ((Mike OR Michael) /2 Swanson) OR (Joe! /2 Newhart) OR ((Mike or Michael) /2 McCarthy) OR (Sara /2 Armstrong) OR (Beth /2 Foss) OR (Jeannie /2 Foster) OR (Jeff! /2 Greene) OR (Tim! /2 Uber)

timshellpeper! OR toschellpeper! OR ebarger! OR ddubbert! OR
srphalen! OR joeweber! OR markcopa! OR dandubbert! OR
ronknowles! OR robertmanly! OR shellyphalen! OR clarrypope! OR
larrypope! OR scottsaunders! OR greggschmidt! OR
dhamuthamodaran! OR elizabethbarger! OR robertbogaard!OR
jessedohlman! OR susandow! OR victorflemming! OR collettekaster!
OR keiralombardo! OR robertmoore! OR dansabin! OR joeszaloky!
jeffluckman! OR kennethsullivan! OR kellerwatts! OR josephluter! OR
glennnunziata! OR josephsebring! OR russelldokken! OR arnoldsilver!
OR karolinamallahan! OR jerrylamb! OR dankapella! OR johnfrench! OR
jfrench!
dgroff! OR dclemens! OR cedsill! or epatton! OR jrennells! OR rruth!
OR jmasotta! OR jschmerbeck! OR dbudnick! OR pclemens!
deb.mcconnell! OR noel.white! OR todd.neff! OR shane.miller! OR
jason.brester! OR gary.machan! OR john.c.thomas! OR don.tyson! OR
john.h.tyson! OR thomas.hayes! OR donnie.smith! OR richard.bond!
OR stephen.stouffer! OR jay.krehbiel! OR jason.solsma! OR
james.schmitz! OR steve.billups! OR leland.tollett! OR james.lochner!
OR leah.andersen! OR jeremy.dickinson! OR jon.kathol! OR
ruth.wisener! OR ruth.a.wisener! OR jerry.holbrook! OR
dennis.leatherby! OR ray.mcgaugh! OR gary.sheneman! OR
raymond.hollingsworth! OR mark.gingerich! OR steward.glendinning!
OR lanny.johnk! OR tim.alderson! OR donnie.king! OR roel.andriessen!
OR melissa.fick!
kgrannas! OR mengland! OR alarimer! OR mcampbell! OR fpapenberg!
OR kwedeking! OR jlehenbauer! OR tfrench! OR jdiebold! OR
rhoffman! OR jkleiniein! OR plilly! OR dmarlow! OR dschmerbach! OR
msouthwell! OR cswan! OR kconaway! OR jreeder! OR mtaylor!


stephen_summerlin! OR damon_ginther! OR rod_brenneman! OR
terry_holton! OR marty_hast! OR thomas_blumhardt! OR mel_davis!
OR tom_dye! OR bret_getzel! OR kevin_henn! OR aaron_hunderdosse!
OR gary_lewis! OR duke_sand! OR kevin_smith! OR josh_stewart! OR
brian_taphorn! OR joan_contreras! OR anna_lecluyse! OR lesa_tuley!


dgrismore! OR sedwards! OR bhsnyder! OR escholer! OR gbilbrey! OR
gdess! OR cagne! OR jedwards! OR jfeitz! OR smeyer! OR cstegall! OR
tneff! OR bsnyder! OR sbrooks!
jnsheehan! OR cdbollum! OR paul_l_peil!

kevin.arnold! OR wesley.batista! OR joesley.batista! OR don.jackson!
OR andre.nogueira! OR cameron.bruett! OR denilson.molina! OR
garry.albright! OR ed.bick! OR jerry.brooks! OR martin.dooley! OR
roger.goulding! OR tim.hiller! OR bob.krebs! OR kristina.lambert! OR
brad.lorenger! OR matthew.turner! OR eric.wallin! OR
ryan.andersland! OR jamie.fosbery! OR pat.huebner! OR
robbie.kearns! OR joh.kupfer! OR ron.ott! OR lisa.peters! OR
george.price! OR michael.swanson! OR joe.newhart! OR
mike.mccarthy! OR sara.armstrong! OR beth.foss! OR jeannie.foster!
OR jeff.greene! OR tim.uber!
 "supply and demand" OR "law of supply" OR "laws of supply" OR "laws
of demand" OR "law of demand"
(Production OR supply OR volume OR industry) AND ("price response"
OR "pricing response" OR "pricing action" OR "price action")

(withdraw! OR liquid! OR "back off" OR restrain! OR reduc! OR grow!
OR tight! OR balanc! OR  control! OR depop! OR de-pop! OR cut! OR
retire OR (kill /10 early)) AND (pork OR hog! OR swine OR porcine OR
pig! OR sow OR shoat! OR boar! OR gilt OR bacon! OR sausage OR ham
OR shoulder OR loin! OR backloin! OR tenderloin! OR chop! OR hock!
OR picnics OR butt OR butts OR rib OR ribs OR backrib! OR bellies OR
primal! OR "sub-primal" OR subprimal OR brisket OR jowl! OR
lard OR herd OR drift OR drove OR litter! OR passel OR sounder OR
singular)
(surplus OR excess OR tight! OR capacity OR utlilization) AND (pork OR
hog! OR swine OR porcine OR pig! OR sow OR shoat! OR boar! OR
gilt OR bacon! OR sausage OR ham OR shoulder OR loin! OR backloin!
OR tenderloin! OR chop! OR hock! OR picnics OR butt OR butts OR rib
OR ribs OR backrib! OR bellies OR primal! OR "sub-primal" OR
subprimal OR brisket OR jowl! OR lard OR herd OR drift OR drove OR
litter! OR passel OR sounder OR singular)
market /3 supply
(oversuppl! OR (over /2 suppl!) OR over-suppl! OR fair-share OR "fair
share")
rationaliz! AND (facility OR facilities OR production OR plant OR
complex! supply OR supplies OR produc! OR inventor! OR warehous!
OR demand OR capacit! OR plants OR line!)

(pric! OR varian!) AND (pork OR hog! OR swine OR porcine OR pig! OR
sow OR shoat! OR boar! OR gilt OR bacon! OR sausage OR ham OR
shoulder OR loin! OR backloin! OR tenderloin! OR chop! OR hock! OR
picnics OR butt OR butts OR rib OR ribs OR backrib! OR bellies OR
primal! OR "sub-primal" OR subprimal OR brisket OR jowl! OR
lard OR herd OR drift OR drove OR litter! OR passel OR sounder OR
singular)
(pric! OR return) AND opportunity
(improve OR increase OR raise OR advantage OR disadvantage) AND
(sale OR return OR price OR profit!)
("elasticity of demand" or "demand elasticity" or "price elastic!" or
"inelasticity of demand" or "inelastic demand" or "price sensitiv!") AND
(pig! OR pork OR hog! OR swine OR sow!)
((monitor! OR analy! OR forecast! OR project! OR graph!,OR curv! OR
trend!) AND (pig!, hog!, swine, sow, pork! OR porcine  OR shoat! OR
boar! OR gilt OR bacon! OR sausage OR ham OR shoulder OR loin! OR
backloin! OR tenderloin! OR chop! OR hock! OR picnics OR butt OR
butts OR rib OR ribs OR backrib! OR bellies OR primal! OR "sub-primal"
OR subprimal OR brisket OR jowl! OR lard OR herd OR drift OR drove
OR litter! OR passel OR sounder OR singular)
((revenue OR revenues OR profit! OR loss! OR P&L OR  PnL  OR  financ!
OR future! OR cost) AND (pig!, hog!, swine, sow, pork! OR porcine  OR
shoat! OR boar! OR gilt OR bacon! OR sausage OR ham OR shoulder OR
loin! OR backloin! OR tenderloin! OR chop! OR hock! OR picnics OR
butt OR butts OR rib OR ribs OR backrib! OR bellies OR primal! OR "sub-
primal" OR subprimal OR brisket OR jowl! OR lard OR herd OR drift OR
drove OR litter! OR passel OR sounder OR singular)

((compet! OR landscape OR market OR industry OR share) AND (pig!
OR hog! OR swine OR sow OR pork! OR porcine OR pig! OR sow OR
shoat! OR boar! OR gilt OR bacon! OR sausage OR ham OR shoulder OR
loin! OR backloin! OR tenderloin! OR chop! OR hock! OR picnics OR
butt OR butts OR rib OR ribs OR backrib! OR bellies OR primal! OR "sub-
primal" OR subprimal OR brisket OR jowl! OR lard OR herd OR drift OR
drove OR litter! OR passel OR sounder OR singular)
Saturday w/3 (harvest* OR kill)
pric! /3 courag!
industry /5 collective!
manipulat! /5 (pric! OR market OR sow OR pork)
liquidat* w/15 (sow OR hog OR hogs OR pork OR herd OR herds)
rumor!
(agro /2 bauer)
(aspen /2 pork)

(cottonwood /2 river)
((eichelberger /2 farm!) OR !eichelbergerfarms@gmail.com OR
!eichfarms.com OR !eichelbergerfarms.com)
(IC /2 pork)
(kronseder /2 farm!)
(nfp /2 west)
(oak /2 research)
(southern /2 minnesota /2 farm!)
(hanor OR !hanorusa.com OR !hanorcompany.com)
(Trioak OR !trioak.com)
(upper /2 midwest /2 swine)
((allied /2 producer!) OR !alliedproducers.com)
((christensen /2 farm!) OR !christensenfarms.com)
(crown /2 prairie)
(ewington /2 farm!)
((new /2 fashion /2 pork) OR !nfpinc.com)
(roberts /2 ranch)
(((daily's OR dailys) /2 premium) OR !dailysmeats.com)
rank* w/10 (guess or switch*)
supply w/10 withdraw*
index w/2 "operating efficiency" w/2 (metric* or metrix or matrix)
disappearance
Export w/ 10 sale*

# EXHIBIT 10



Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

T: +1 312 782 0600
F: +1 312 701 7711

mayerbrown.com

December 28, 2021

BY EMAIL
Brian Clark
Joseph Bourne
LOCKRIDGE GRINDAL NAUEL P.L.L.P.
100 Washington Avenue South
Minneapolis, MN  55401-2179
bdclark@locklaw.com
jbourne@locklaw.com

Re:     Rule 45 Subpoena to Indiana Packers
        Corporation

Counsel,

I write in response to your letter dated December 1, 2021 (but actually sent December 2) regarding the June 15, 2021 subpoena directed to Indiana Packers Corporation ("IPC") ("Subpoena" or "Requests").   Notwithstanding the fact that IPC has been dismissed *with prejudice* from the *Pork* litigation, Plaintiffs' Subpoena, and your December 1 proposal, attempts to treat IPC as though it remains a party to the litigation, seeking information that is neither relevant nor unavailable to Plaintiffs through actual party discovery.  Without suggesting that IPC has any duty to comply with the Subpoena, but solely in the interest of a potential compromise, we provide the following information and proposal.

**Structured Data Request**

Subpoena Request No. 4 provided none of the details regarding the types of "structured data" sought by the Subpoena, and IPC has no obligation to attempt to respond on the basis of this Request as drafted.  That said, our client has evaluated the categories outlined in your December 1 letter.  Based on our investigation to date, we expect that IPC could produce data maintained in the ordinary course from its active database for customers in the United States for the following Items: a (terms of sale); b (invoice number); c (purchase order number); d (shipping location); e (customer contact information); f (shipping dates, invoice dates, and delivery dates, where available); g (pork descriptions and identifiers); h (quantity); i (pricing information, broken down by item, shipping, and tax, where available); j (currency); k, n (discount details and transactional level costs, again, where tracked and available).  IPC does not appear to track information in its database on Items l, m, o (resale details, to the extent such "resales" even occurred) and Plaintiffs' "catchall" Items p and q, which essentially seek whatever other data IPC has in its systems, are facially (and ridiculously) overbroad and IPC will not provide any such data.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Mayer Brown LLP

Brian Clark
Joseph Bourne
December 28, 2021
Page 2

We expect IPC would have data for US sales for the above referenced categories for the period January 1, 2008 through June 30, 2018, to the extent that information was entered into its transaction database in the ordinary course.

If Plaintiffs will withdraw the unstructured data requests outlined in their December 1 letter, our client is prepared to commit to providing a sample within 21 days, and estimates that it will be able to produce a full data set within 30 days of agreement based on the sample.  The sample and any data production would be designated Highly Confidential under the Protective Order (Dkt. 212).

As investigating these matters, preparing a sample, and ultimately preparing data for production has been, and will continue to be, a burdensome and unwarranted process, it more than satisfies IPC's obligations under Rule 45.  And so there is no confusion, IPC is willing to take on this considerable burden if and only if Plaintiffs withdraw their unstructured data requests (below) and commit that they will not seek further documents or material from IPC in connection with the litigation.  If Plaintiffs so agree, IPC will not seek reimbursement of its costs in complying with the agreed-upon portions of the Subpoena.

## Unstructured Data Requests

As we repeatedly stated during this process, IPC was willing to consider requests for discrete, "go-get" type documents if it would obviate the need for motion practice, but will not engage in burdensome efforts to collect, search, review, and produce email and other documents.  Your proposal ignores our previously stated position on this, and instead asks that IPC engage in the very same discovery Plaintiffs sought while it was a party.  Plaintiffs' letter is unambiguous in this regard:  "IPC and Plaintiffs previously agreed upon custodians in August 2019 when IPC was a party to the litigation…. These are the same custodians Plaintiffs propose now."  Plaintiffs then ask that IPC search those nine custodians' files over a 10+ year period using such blatantly overbroad terms like "disappearance" or "mafia"—which Plaintiffs have failed to demonstrate the relevance of to the lawsuit, much less the three Requests that you claim constitute a narrowing of the Subpoena.  Based on our experience in other litigation (in which your Firm represents another plaintiff), similar undertakings have resulted in more than 100,000 documents to be reviewed, and based on the breadth of Plaintiffs' search terms we would expect that to be the case here.  Review and production of that volume of documents would inevitably result in IPC spending hundreds of thousands of dollars to satisfy Plaintiffs' requests.  Such an undertaking is clearly not required of a third party under Rule 45 (and would likely be subject to a challenge of proportionality even if IPC were a party, which it is not).

Moreover, Plaintiffs' proposal continues to put the cart before the horse, as they have not proffered any information to suggest that these individuals maintain information relevant to these

Mayer Brown LLP

Brian Clark
Joseph Bourne
December 28, 2021
Page 3

Requests that cannot be obtained from the parties to the litigation.  And at least one court has rejected similar requests by Plaintiffs directed at parties in other litigation.  *See* Order at 11, *In re Turkey Antitrust Litigation*, No. 1:19-cv-08318 (Dkt. 305) (granting motion for protective order "in full" as to similar request for documents relating to "competitive conditions" in the turkey industry).  In short, your proposal that IPC provide the very same burdensome discovery sought while it was a party, and review documents from nine custodians using more than 100 search strings to respond to requests that other courts have already rejected "in full" because they were too burdensome, is not a reasonable compromise, nor is it compliant with your obligations under Rule 45 to avoid imposing undue burden on non-parties.

********

As stated above, IPC will agree to produce the transactional data detailed above if it will *resolve* the Subpoena and Plaintiffs' discovery efforts as they related to IPC.  If Plaintiffs persist in their requests for facially burdensome custodian-based searches for documents, then we are at impasse and we will raise the matter with the court in Indiana.  Please let us know.  If you believe that a further discussion of these issues would be productive, we are happy to engage.

Sincerely,

Britt M. Miller

cc:   William H. Stallings
      Jaime Stilson
      Robert E. Entwisle

745252587