# EXHIBIT 20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Olean Wholesale Grocery Cooperative, Inc., et.al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 19 C 8318 |
| v. | ) ) ) | Judge: Virginia M. Kendall |
| | ) ) | Magistrate Judge: Gabriel A. Fuentes |
| Agri Stats, Inc., et al., | ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| Sandee's Bakery, | ) ) ) ) | Case No.: 20 C 2295 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Judge: Virginia M. Kendall |
| | ) ) | Magistrate Judge: Gabriel A. Fuentes |
| Agri Stats, Inc., et.al., | ) ) ) | |
| Defendants. | ) ) ) | |

**ORDER**

Before us is Defendants' motion for a protective order pursuant to Federal Rule of Civil Procedure 26, seeking to bar certain of Plaintiffs' discovery requests and addressing other discovery topics, which Defendants contend seek information well beyond the scope of the issues

in the case. (D.E. 205: Def. Mot. for Prot. Order.)[1] Plaintiffs have filed a response (D.E. 209) and Defendants have replied. (D.E. 214.)

I.  **BACKGROUND**

Plaintiffs are direct[2] and indirect purchasers of turkey products sold by all named Defendants except Defendant Agri Stats.[3] Plaintiffs accuse the Turkey Defendants of agreeing to exchange competitively sensitive information compiled and distributed by Agri Stats and then using that information to control the turkey supply, thus causing prices to rise. (Pl. Resp. to Def. Mot. for Prot. Order, at 2.) The original complaint alleged violations of Section 1 of the Sherman Act under both a *per se* theory (that is, that Defendants' actions were unlawful by their very nature) and the more common rule-of-reason theory (that Defendants' actions, even if not unlawful *per se*, nevertheless created illegal anti-competitive effects), and the District Court subsequently dismissed Plaintiffs' *per se* claim. (Order: D.E. 173.)

After Plaintiffs served their initial discovery, the Defendants brought this motion for protective order, arguing that Plaintiffs' discovery requests are irrelevant, overly burdensome, and not proportional to the needs of the case and suggesting that many of them relate to Plaintiffs' alleged plan to resurrect the dismissed *per se* claim. They contend that a protective order is proper now to forestall Plaintiffs from being able to waste time and resources seeking irrelevant discovery,

---

[1] The parties submitted identical briefing in case numbers 20 C 2295 and 19 C 8318, which have been consolidated in front of Judge Kendall. (D.E. 118, 122, 129); we will refer to docket numbers for case 19 C 8318 in our citations.

[2] Direct Purchaser Plaintiffs ("DPP") are those named in case 19 C 8318. Indirect Purchaser Plaintiffs ("IPP") are those named in case 20 C 2295.

[3] The Court will refer to all Defendants as a whole as "Defendants." When referring to only those Defendants that sell turkey or turkey products - Cargill, Butterball LLC, Cooper Farms, Inc., Farbest Foods, Inc., Foster Farms, Hormel Foods Corporation, House of Raeford Farms, Inc., Purdue Farms, Inc., The Hillshire Brands Company, Tyson Foods, Inc., and various subsidiaries, the Court will refer to them as the "Turkey Defendants."

2

particularly when discovery relevant to the remaining rule-of-reason claim is already extensive on its own. Therefore, Defendants ask for a protective order barring not only certain specific discovery requests, but also that the Court bar any discovery related to the dismissed *per se* claim as well as any purported agreement among Defendants aside from the alleged anti-competitive information-sharing with Agri Stats that is the basis for the rule-of-reason claim.[4]

In response, Plaintiffs contend that all of the discovery in dispute is relevant to the remaining rule-of-reason claim and that moreover, Defendants filed their motion for protective order before engaging in substantive discussions about document custodians, scope of searches, or Defendants' various objections to Plaintiffs' requests.[5]

---

[4] According to Defendants, Plaintiffs have also issued subpoenas to a number of major telephone companies, seeking information about Defendants' phone calls and text messages, and have informed Defendants that they intend to also subpoena additional information about phone calls made to and from Defendants' employees. (Def. Reply in Supp. of Mot. for Prot. Order at 3.) Defendants argue that they have standing to seek a protective order to limit discovery sought from a non-party, *citing DeLeon-Reyes v. Guevara,* No. 18 C 1028, 2312, 2020 WL 3050230 at *3 (N.D. Ill. June 8, 2020), but the propriety of any third-party subpoena is not currently before the Court. The Court declines to opine now about how it may apply *DeLeon-Reyes* to other, future discovery disputes or protective order motions, including any involving third-party subpoenas, and this Court has noted in the past that the resolutions of fact-laden discovery disputes in cases such as *DeLeon-Reyes* will often be unique to those cases and offer only limited guidance as to the individualized determinations courts must make in litigation over the scope of permissible discovery under Rule 26(b)(1). *See Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *5 (Sept. 25, 2020) ("It is not difficult to imagine different outcomes under analyses of different fact patterns by different magistrate judges considering protective order motions to preclude discovery …. [L]itigants should tread cautiously before placing too much stock in any one decision hinging on a magistrate judge's individualized, fact-skeptical examination of whether certain information sought to be discovered in a case should be off-limits for failure to meet the broad relevancy standard of Rule 26(b)(1)."). The Court has full confidence that it will be able to decide discovery disputes over subpoenas in due course, and to the extent Defendants now seek a broad protective order barring various classes of present and future third-party discovery, that request is denied.

[5] Defendants state in their motion that the parties met and conferred about their differences before Defendants filed this motion, a claim Plaintiffs do not dispute. The Local Rule 37.2 certification (Mot. for Prot. Order at 2 n.3) is not compliant. The Court will proceed to decide the motion in the interest of efficiency per Fed. R. Civ. P. 1, but going forward, the parties are kindly reminded to comply strictly with Local Rule 37.2, which requires certification of a meet-and-confer consultation to recite "the date, time, and place of such conference, *and the names of all parties participating therein.*" LR 37.2 (emphasis added).

3

## II.     LEGAL STANDARD

### A.     Motions for Protective Order

District courts – including magistrate judges – have broad authority to manage their dockets, including determining the scope of allowable discovery. *Jones v. City of Elkhart,* 737 F.3d 1107, 1115 (7th Cir. 2013). The Court construes Defendants' motion for a protective order as arising under Rule 26(c), which permits a court, upon a showing of good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The standard for issuing a protective order is identical to that for considering a motion to compel under Rule 26(b); the court must determine if the material sought is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2018 WL 3398141, at *1 (N.D. Ill. July 12, 2018). The scope of relevancy is broader than that of admissibility, even to the degree that the 2015 amendments to Rule 26(b)(1) narrowed that scope slightly be deleting the words "reasonably calculated to lead to the discovery of admissible evidence." *Coleman*, 2020 WL 5752149, at *3-4.

### B.     Rule of Reason Under Section 1 of the Sherman Act

Section 1 of the Sherman Act prohibits any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. To prevail on a claim under Section 1, a plaintiff must therefore

4

prove three elements: (1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury. *Menasha Corp. v. News America Marketing In-Store, Inc.,* 238 F. Supp. 2d 1024, 1032 (7th Cir. 2003) (citing *Denny's Marina, Inc. v. Renfro Productions, Inc.,* 8 F.3d 1217, 1220 (7th Cir. 1993)).

Certain activities in restraint of trade are so inherently anticompetitive that they are considered *per se* violations of the Sherman Act. These activities include such behaviors as horizontal price fixing, market allocation, group boycotts, or tying arrangements. *See Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 768 (1984). In contrast, activities such as mergers, joint ventures, various vertical agreements and – as relevant to this case – information exchanges, may legitimately enable a firm to compete more effectively. These activities are therefore commonly judged under the "rule of reason" standard, which considers the actual effects of these commercial efforts in the relevant market. *Copperweld,* 467 U.S. at 768. "A challenged action is unreasonable if – in light of facts particular to the industry, its condition before and after the imposition of the restraint, and the restraint's nature, history, and effects – it suppresses rather than promotes competition." *State Oil Co. v. Khan,* 522 U.S. 3, 10 (1997). Under the rule of reason, an exchange of information claim calls for consideration of "a number of factors including most prominently the structure of the industry involved and the nature of the information exchanged." *In re Loc. TV Advert. Antitrust Litig.*, No. 18 C 6785, 2020 WL 6557665, at *11 (N.D. Ill. Nov. 6, 2020) (*citing Todd v. Exxon Corp*., 275 F.3d 191, 199 (2d Cir. 2001)).

Defendants contend that the disputed discovery is irrelevant because it relates to the dismissed *per se* claim, but the discovery may yet be relevant to the rule-of-reason claim, as Plaintiffs contend it is. Therefore, we will review the discovery requests with an eye to relevance to that theory. In doing so, we are guided by Judge Kendall's order dismissing the *per se* claim, in

5

which she described the complaint as sufficient to allege a "hub-and-spoke conspiracy among the Turkey Defendants and Agri Stats." (Order at 9.) That is, the district court has agreed that Plaintiffs sufficiently alleged that the Turkey Defendants agreed to "'regularly exchange detailed, timely, competitively sensitive and non-public information about their operations' via Agri Stats" and that the parties "understood that such sharing of information would be reciprocated by the other Defendants." (*Id.* at 9-10.) In arguing that these actions had anti-competitive effects on the market, Plaintiffs further allege that even though Agri Stats purported to anonymize the data it received from each Turkey Defendant, the data was detailed enough for each participant to infer which data corresponded to which company. *Id.* Plaintiffs further allege that the Turkey Defendants used the information to control the turkey supply, resulting in higher prices. (Pl. Mem. in Opp. To Mot. for Prot. Order at 2.)

### III. ANALYSIS

The disputed discovery includes Interrogatories 1, 6, and 9 and Requests for Production 4, 5, 6, 7, 9, 35 and 37. Defendants argue that the disputed requests are irrelevant because they are "untethered" from the information Defendants exchanged through Agri Stats and instead constitute a fishing expedition aimed to revive the previously dismissed *per se* claim. Defendants reject Plaintiffs' argument that the discovery is relevant to the rule-of-reason claim, pointing out that they have not objected on relevance grounds to a number of Plaintiffs' other discovery requests that fully cover the rule-of-reason factors.

After reviewing the parties' arguments and considering the nature of the information requested, we grant in part and deny in part Defendants' motion. As an initial matter, we deny Defendants' request for a protective order barring Plaintiffs from conducting discovery that touches upon the dismissed *per se* theory or upon any other purported agreements that do not

involve Agri Stats. Defendants are concerned that Plaintiffs may intend to re-plead the *per se* claim, but whether that proves true or not, the Court is not prepared to enter a protective order categorically barring Plaintiff from taking discovery that is relevant and proportional with respect to the rule-of-reason analysis. Similarly, the Court will not categorically bar all discovery about other possible agreements not involving Agri Stats. The parties will need to evaluate discovery requests as they receive them, confer in good faith and in compliance with Local Rule 37.2, and seek whatever judicial intervention they believe necessary to the extent they see specific discovery requests as outside the scope of Rule 26(b)(1).

With respect to the specific discovery requests at issue, some of Plaintiffs' requests, although relevant, are overbroad as written, and thus, the Court will excuse Defendants from responding to those requests (identified more specifically below) pending a reformulation of them after an appropriate meet-and-confer consultation. The issues for discussion by the parties include reasonable date limitations and reasonable search terms for electronically stored information (ESI). Today's order is without prejudice to such reformulated discovery requests.

Therefore, with respect to each individual discovery request,[6] the Court's rulings are below.

**Interrogatories**

*Interrogatory No. 1* asks, "[f]or each individual identified in your Initial Disclosures and for each of Your Document Custodians," identification of "all email addresses, social or industrial/business web-based media accounts (e.g., Facebook®, Twitter®, LinkedIn® Instagram®, Snapchat®, Cluster, or WhatsApp), cellular phone numbers, office phone, and facsimile numbers, or other telephone numbers (and applicable phone carriers for each telephone number) used by each such Employee regarding or relating to his or her work for You."

---

[6] The Court has reviewed the actual language of each discovery request and summarizes the important points as necessary to explain our decision.

Defendants view the request as overly intrusive and broad, but the reality is that in Sherman Act Section 1 cases based on information exchanges, Plaintiffs will be entitled to broad discovery of relevant communications, and today's array of communication media is broad. Not all of the relevant communication will be on a surreptitiously made videotape of one competitor telling another that the competitors are their friends and the customers are their enemies, as in the famous Lysine case video. Interrogatory No. 1 does not seek unbridled discovery of irrelevant personal communications – instead, it seeks the identifiers that presumably would then be used in an ESI term search as to a defined category of persons, namely those identified in the Rule 26(a)(1) disclosures and those identified as document custodians. How the parties will cull relevant and proportional discovery from the body of these persons' communications has yet to be determined, but the Court declines to bar discovery of the identifiers on the ground that it is too personally intrusive or overbroad. Defendants may designate this information confidential under a protective order so that it is not misused in other litigation or disclosed to third parties, so that the individuals' privacy interests in the information is protected. Or, alternatively, the information could be designated by agreement as attorneys'-eyes-only and used in the manner to facilitate ESI discovery. But the sensitive nature of the information on its own does not bar its discovery.

*Interrogatory No. 6* asks for information related to Defendants' participation in benchmarking services or price or supply indices apart from Agri Stats, including the individuals who communicated with the services or used their information; a description of the data provided by Defendants to the services, including information related to all aspects of the turkey breeding/processing/selling process, and information about the data or reports Defendants received; and a description of the terms of agreements related to participation in the benchmarking services.

Defendants argue that this Interrogatory is not relevant because it seeks information about Defendants' interactions with benchmarking and index services *besides* Agri Stats. We disagree with that narrow conception of relevancy. Defendants' participation in other benchmarking

8

services, including the type of information shared with or received from them, if it occurred, may make more likely the fact of consequence (alleged by Plaintiffs) that Defendants shared sensitive information through Agri Stats in restraint of trade. Or, information about an information-exchange mechanism through other benchmarking or indices services besides Agri Stats would be relevant to how Defendants used Agri Stats or how their alleged use of Agri Stats compared to the use of other services to exchange information in restraint of trade. Defendants' concern that Plaintiffs are being permitted to engage in a "fishing expedition" is without merit. Nearly 75 years ago, the U.S. Supreme Court warned against cutting off discovery based on the trite expression that a plaintiff sought a "fishing expedition":

> We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. But discovery, like all matters of procedure, has ultimate and necessary boundaries …. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.

*Hickman v. Taylor*, 329 U.S. 495, 392 (1947). Inherent in the cry of "fishing expedition" is the notion that a party seeking discovery is trying to learn something that party does not already know, and the old Rule 26(b)(1) allowed that party to obtain discovery that was "reasonably calculated" to lead to the discovery of admissible evidence. The Supreme Court in *Hickman* recognized that a "fishing expedition" for irrelevant information would be outside Rule 26(b) as it was then written. Nor is this Court today authorizing irrelevant discovery outside the bounds of the current iteration of Rule 26(b)(1). Instead, the Court is allowing a group of antitrust plaintiffs, who have alleged that Defendants used Agri Stats to share information in an anti-competitive fashion, to learn

9

whether those same defendants used other information-services during the class period, because that information is relevant to the claims in the action. Fed. R. Civ. P. 26(b)(1). Whether the information is admissible at trial may be another matter for another day, but it need not be admissible to be discoverable. *Coleman*, 2020 WL 5752149, at *3. Defendants' motion is thus denied with respect to Interrogatory No. 6, and Defendants are ordered to respond to the interrogatory for the 2010-2017 class period alleged in the complaint.

<u>Interrogatory No. 9</u> asks for identification of industry and trade association meetings attended by document custodians, and identification of documents relating to content discussed at such meetings.

Plaintiffs are entitled to discovery about information exchanges that may have occurred during trade association meetings. Under the discovery rules, Defendants will have to review the information available to them – including documents from the meetings and information from witnesses who attended and whom were interviewed during any defendant's reasonable investigation conducted amid the kind of allegations leveled here – and determine which, if any, meetings saw information exchange or discussion of it being done through Agri Stats or any other benchmarking and index service, and as to any such meetings, Defendants must provide the requested information. As for identifying documents, the Court views that type of request as overly burdensome and disproportionate when posed in an interrogatory format. Other discovery requests such as Rule 34 Request No. 6(e) (directed at trade association meeting documents including agendas, minutes and notes) encompass the type of documents referenced in Interrogatory No. 9.

**Document Requests**

Requests for production Nos. 4, 5, 6 and 7 read a bit like a U.S. Department of Justice criminal antitrust subpoena looking for any modality in which competitors met or communicated,

10

and any record that might reflect such a meeting. The Court applies Rule 26(b)(1)'s discovery scope to these requests and the others at issue as set forth below.

*Request for Production No. 4* asks for all documents or communications between Defendants related to competitive conditions in the turkey industry.

Request No. 4 is too vague to be upheld, as Defendants cannot reasonably be expected to produce "all" of their documents or communications "related to Competitive Conditions" as Plaintiffs defined them to encompass turkey "costs, pricing, production, production/output, capacity, sales, demand, supply, imports, experts, or market shares." (D.E. 205-2 at 3.) The protective order motion is granted in full as to this request, and Defendants are relieved from responding because it is too vague. Although it is possible to fashion a more specific request that might fall within the scope of Rule 26(b)(1), the Court will leave that task to the parties.

*Request for Production No. 5* asks for all communications and documents related to meetings between the Defendants.

In any competitive industry, meetings among competitors may not be uncommon, but when they happen, they raise red flags. Such meetings offer opportunities for information exchange and thus the exchange of signs and signals about where one company or another might be heading on price or output, or product line, and as a result, they can be anti-competitive. In this case, Plaintiffs seek to prove that information exchanged through Agri Stats ran afoul of the rule of reason and was anti-competitive. Plaintiffs are entitled to Defendants' documents indicating that any competitor meetings at which an information exchange through Agri Stats or any other benchmarking and index services occurred or was discussed, who attended them, and what information was discussed during the 2010-17 class period.

*Request for Production No. 6* has a number of subsections, but in essence asks for documents belonging to the document custodians, including diaries, calendars, appointment books; contact information for individuals who worked for or with the Defendants, industry analysts, trade associations, or other industry insiders; trip and travel records; phone records and supporting

11

documents made by all such individual identified above; documents related to membership or participation in trade associations, industry meetings or creditor conferences; and documents that show all document custodian's complete contact information used for business purposes including social media names and "handles."

Not surprisingly, records of meetings among competitors can be found in innocuous places, such as a company's accounts payable department or other unit to which employees submit reimbursement requests for their travel expenses and entertainment costs. Similarly, sales representatives involved in outreach to competitors may commonly maintain contact information, calendars, or diary entries reflecting such meetings, so that evidence of an inter-company meeting is gold in an information-exchange case. Civil antitrust plaintiffs and the Department of Justice antitrust prosecutors will commonly use grand jury subpoenas to prospect for such information. The grand jury subpoena in particular will subject antitrust investigation targets to a top-to-bottom combing of corporate records showing who went to lunch with whom and when. And the DOJ will usually obtain the information from corporate targets who prefer keeping possible avenues of cooperation open. But this matter, in which the focus of the alleged information exchange involved communications with or through Agri Stats, is not an Antitrust Division criminal investigation, and Rule 26(b)(1) imposes limitations on civil discovery scope. The Court agrees that full production of all the materials requested by Plaintiffs in Request No. 6 is disproportionate to the needs of the case and will generate irrelevant information and wasteful discovery. To their credit, Plaintiffs have limited Request No. 6 to the identified document custodians, but the Court will stop short of having Defendants produce "all" of these custodians' diaries, office materials, expense and travel records and so on so that Plaintiffs' counsel can see not just competitor meetings having nothing to do with Agri Stats, but every time a custodian played golf with an uncle or had coffee with a high school classmate. The protective order is partially granted and partially denied as to Request No. 6, as follows:

12

a. For the custodians, Defendants must produce electronic and hard-copy diaries, appointment books, calendars, notes or notebooks *to the extent they reflect a meeting or communication with a competitor or with Agri Stats or any other benchmarking and index service concerning an exchange of information through Agri Stats or any other such service, or an agreement to do so* during the 2010-17 class period.

b. For the custodians, Defendants must produce contact information for any person with whom the custodian communicated *concerning an exchange of information through Agri Stats or any other such service, or concerning an agreement with a competitor to do so* during the 2010-17 class period.

c. For the custodians, Defendants must produce travel, expense and entertainment records *to the extent they reflect a meeting or communication with a competitor or with Agri Stats, or any other such service, concerning an exchange of information through Agri Stats or any other such service, or an agreement to do so*, during the 2010-17 class period. Learning this information is not disproportional or overly burdensome: Defendants have already identified the custodians, and now they will have to work with them in a reasonable investigation to identify when any such meetings happened, so the corresponding records can be identified. If a custodian kept an appointment book or calendar indicating these meetings, as often can be the case in information-exchange cases, identifying the dates of meetings or communications will be that much more feasible.

d. As to Request No. 6(d), the motion is granted in full, and Defendants are not being ordered to fly-speck their phone records or bills for every phone call an employee might have had with a competitor or about Agri Stats – that sort of discovery is not proportional to the needs of this case.

  e. As to Request No. 6(e) and as explained in our decision regarding Interrogatory 9, the motion is denied and Defendants are ordered to produce the responsive, non-privileged documents they possess – for the 2010-17 class period, without other limitation.

  f. As to Request No. 6(f), the motion is denied, and Defendants must produce the most current resumes or CVs they possess for document custodians, as the information is relevant and proportional. The Court has some trouble understanding why this provision had to be presented for judicial intervention.

  g. As to Request No. 6(g), the motion is denied, and to the extent Defendants possess or control (through possession of agents or attorneys) transcripts of past testimony by any document custodian relating to the market for turkey products, Defendants must produce them. It is not disproportionate to require Defendants to figure out which of the custodians gave past testimony about the turkey market, if any ever did, and to obtain those transcripts from their files or their attorneys' files.

  h. As to Request No. 6(h), the motion is granted in full, because Defendants are being ordered to answer Interrogatory No. 1 by providing all of the custodians' contact information and other identifiers. Producing documents "sufficient to show" the same information is duplicative and wasteful.

  i. As to Request No. 6(i), the motion is denied in full. Severance agreements with former employees who are document custodians in this case could be marginally relevant to their bias and prejudice as witnesses, and the burden associated with producing them is minimal. Compliance with this request is not limited by time, as a custodian might have departed after 2010, and the circumstances of his or her severance might still be relevant to evaluating any current testimony the person might give in this case.

14

*Request for Production No. 7* asks for all telephone records from all of Defendants' phone numbers and switchboards for all main and satellite offices.

The protective order is granted because this request is overbroad and disproportionate to the needs of the case. "All" telephone records from "all" of Defendants' phone numbers for "all" of its offices? Presumably for "all" time but even li]mited to the eight-year class period? The answer is no.

*Request for Production No. 9* asks for all documents regarding the terms of all purchases, sales, trades, etc. of turkey between the various Defendants, including contemplated and proposed agreements.

Plaintiff argues that this request is "highly relevant" to the structure of the market and whether turkey products sold by different Defendants are so interchangeable that the market is "susceptible to collusion," which suggests that Defendants only compete with each other on price (and not factors such as quality, taste, or specialization of product.) (Pl. Resp. to Mot. for Prot. Order at 8.) And relevant it may be. But the request technically encompasses every purchase order Defendants might have kept during the eight-year class period with respect to any other turkey integrator, and as such, it is overbroad. The Court will partially grant and partially deny the protective order motion as to this request by requiring Defendants to produce, for the 2010-17 class period, all contracts or documents reflecting agreement with other turkey integrators on the terms of sale of turkey products between Defendants and such integrators, including the terms of such agreements, without requiring production of documents individualized to particular sale or purchase transactions.

*Request for Production No. 35* asks for all documents and communications relating to any benchmarking or information sharing services related to turkey industry profitability, pricing, production, or supply other than from Agri Stats.

CaseCASE 9:1cv-0830317-JFD Document 305 Filed 04/24/06/21 Page 17 of 17 PageID #:4330

15

The protective order motion as to this document request is denied for the same reason it is denied above concerning Interrogatory No. 6, except that the time frame for responsiveness is limited to the 2010-17 class period.

*Request for Production No. 37* asks for all documents and communications related to Request No. 36 (which requests information related to proposed or actual mergers and acquisitions and which is not subject to the motion for protective order), that reflect the exchange of non-public information between Turkey Defendants concerning turkey supply factors, pricing, and supply plans.

To the extent that merger-related communications provided another clandestine avenue for illicit information exchange, documents about such communications are relevant and discoverable, but the Court is uncomfortable with the breadth of the term "non-public information." The motion for protective order is granted in part and denied in part as to this request, with Defendants' response limited to the 2010-17 class period and to documents reflecting, in connection with an actual or proposed merger or acquisition, an exchange of information through Agri Stats or any other such service about pricing, output, use, or quality of turkey products.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Protective Order [205, 118] is granted in part and denied in part as stated above.

**ENTER:**

*/s/ Gabriel A. Fuentes*

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: October 6, 2021**

16