UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-cv-01776 (JRT/HB) |
| This Document Relates To: *All Actions* | |

**NON-PARTY INDIANA PACKERS CORPORATION'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL INDIANA PACKERS CORPORATION TO COMPLY WITH SUBPOENA *DUCES TECUM***

Non-party Indiana Packers Corporation ("IPC") respectfully requests that the Court deny plaintiffs' motion to compel IPC's compliance with their subpoena ("Motion to Compel" or "Motion") because the Southern District of Indiana has jurisdiction to resolve this dispute under Rule 45. Alternatively, IPC requests that the Court defer consideration of plaintiffs' motion until the Southern District of Indiana rules on IPC's separately-filed motion to quash the Subpoena ("Motion to Quash"). *See* Declaration of Robert Entwisle, Ex. A.

**BACKGROUND**

IPC was dismissed from this lawsuit ***with prejudice*** for plaintiffs' failure to state a claim against it. Judge Tunheim also denied plaintiffs' request for reconsideration of his two prior dismissal rulings. *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *10 (D. Minn. Aug. 8, 2019); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 765 (D. Minn. 2020); Order re Reconsideration at 5 & n.1 (Feb. 4, 2021) (Dkt. 672). As the Court may recall,

1

while the motions to dismiss were pending, plaintiffs were permitted to serve Rule 34 requests on the defendants, but IPC's obligations to comply with those requests ended when it was dismissed from the litigation.

Undeterred, plaintiffs have now reissued some of their most burdensome Rule 34 requests under the guise of a Rule 45 subpoena, and originally sought compliance in Indianapolis, Indiana. *See* Entwisle Decl., Mem. at 5-7. Despite plaintiffs' attempt to recast their Subpoena requests as "limited" (Mem. at 1), they are facially oppressive, seeking "All Documents relating to Competitive Conditions in the market for Pork," as well as any communications between IPC and its competitors or Agri Stats relating to "Competitive Conditions" in the pork industry for a thirteen-year period. Mem. at 3-4. As drafted, these requests conceivably capture most documents relating to IPC's pork business over a thirteen year period. *See, e.g.,* Order at 11, *In re Turkey Antitrust Litig.,* No. 1:19-cv-08318, (N.D. Ill. Oct. 6, 2021) (Dkt. 305) (holding that parties "cannot reasonably be expected to produce 'all' of their documents or communications 'related to Competitive Conditions' as Plaintiffs defined them.")

Indeed, plaintiffs' motion makes plain that they are still pursuing IPC as though it were a party to the lawsuit. In support of their motion, they re-plead the very allegations Judge Tunheim found lacking when he dismissed IPC, point to a handful of benign emails evidencing trade association invitations, and take a handful of communications produced by the actual defendants in the litigation, some of which do not even involve IPC, out of context. Mem. at 7-9. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 n. 12 (2007) (no inference of a conspiracy based on trade association membership). But IPC is a non-party,

2

and plaintiffs should not be permitted to heap unwarranted burdens on it as though it were a party based on little more than the bare-bones allegations that have been rejected three times by the Court as to IPC.[1]

Plaintiffs also unreasonably dragged the Subpoena process out for almost a year only to rush to this Court after months of silence, creating a jurisdictional dispute in the process. After they sent a copy of the Subpoena to IPC's counsel on June 4, 2021, IPC timely responded on July 9 with its objections and an offer to meet and confer. Entwisle Decl., Mem. at Ex. 3 (June 15, 2021 email) and Ex. 4 (July 9, 2021 letter). Plaintiffs disappeared for months before finally scheduling a meet-and-confer for October. Entwisle Decl., Mem. at Ex. 5 (September 28, 2021 email from S. Owen). It was not until December 2, however, that plaintiffs finally laid out the proposed scope of their requests in adequate detail. Entwisle Decl., Mem. at Ex. 5 (December 2, 2021 email from J. Bourne) and Ex. 6 (December 1, 2021 letter). IPC reviewed plaintiffs' proposal and offered a compromise on December 28.[2] Entwisle Decl., Mem. at Ex. 11. Plaintiffs again ignored IPC's

---

[1] Plaintiffs' demands would require an initial cost of at least $70,000 to process the requested data, and then an estimated cost of more than $220,000 in first level review alone. *See* Motion to Quash, Mem. at 7. Those costs do not include the substantial attorneys' fees likely to be incurred by IPC for their primary outside counsel to conduct higher level attorney reviews and quality control, or, for example, to prepare a privilege log. Moreover, plaintiffs' attempts to justify facially extreme and undue burdens on IPC are anemic, as they concede they are basically just fishing for information that may be available. *See, e.g.,* Mem. at 9 (claiming without support that "Indiana Packers *likely* received important industry information and *could have shared* that information with a Defendant or other Pork Integrator, thereby furthering the conspiracy, *whether intentionally or inadvertently* on Indiana Packers' part.") (emphasis added).

[2] Plaintiffs have suggested that IPC's December 28 correspondence declared impasse such that plaintiffs' meet-and-confer obligations have been met. *See* Entwisle Decl., Mem. at Ex. 5 (March 18 email from J. Bourne). That assertion proves too much. In its December

3

correspondence, this time for another two and a half months before unexpectedly and unilaterally declaring an impasse in an email dated March 11, 2022. Entwisle Decl., Mem. at Ex. 5.

Worse still, even though IPC repeatedly advised plaintiffs—throughout the nine months the Subpoena was outstanding—that IPC reserved its right to have any dispute regarding the Subpoena be resolved by the federal courts in Indiana (IPC's home state), plaintiffs summarily announced in their March 11 email that "[t]he appropriate court to resolve this dispute is the District of Minnesota." Entwisle Decl., Mem. at Ex. 5 (March 11, 2022 Email from J. Bourne). Plaintiffs offered to discuss "an orderly process for seeking court intervention," *id.,* but then moved to compel on March 17, four business days after their abrupt March 11 correspondence and before IPC had an opportunity to respond or the parties had spoken. IPC promptly requested that plaintiffs withdraw their improper motion so that IPC could pursue relief in Indiana; plaintiffs refused. *See* Entwisle Decl., Mem. at Ex. 5 (March 18, 2022 from J. Bourne).[3] IPC again requested that plaintiffs

---

28 letter, IPC offered to produce a substantial amount of structured data using 12 out of 17 of plaintiffs' requested data categories if that production would resolve the Subpoena. It further stated that "[i]f Plaintiffs persist in their requests for facially burdensome custodian-based searches for documents, then we are at impasse." In other words, IPC did *not* declare an impasse but rather warned plaintiffs that continued efforts to subpoena the unduly burdensome volume and scope of custodial data they requested in the Subpoena and subsequent correspondence would lead IPC to seek court intervention in Indiana. Entwisle Decl., Mem. at Ex. 11 at 3. Plaintiffs never countered that offer nor attempted to explain why the burdensome discovery they seek is warranted, choosing instead to file their motion.

[3] Plaintiffs were required to make a meaningful effort to meet and confer, beyond a mere exchange of emails or letters, before bringing their motion to the Court's attention under Local Rule 7.1 and this Court's May 2021 Practice Pointers. Although IPC and plaintiffs engaged in *one* brief telephonic meet-and-confer in October 2021, they have not done so

4

withdraw their motion on March 25, 2022 and March 28, 2022, but plaintiffs declined to do so. Entwisle Decl., Mem. at Ex. 5 (March 28 emails from J. Bourne). As a result, IPC must not only respond in this Court but has also moved to quash the Subpoena in the Southern District of Indiana.

As detailed below, the Court should deny plaintiffs' Motion to Compel in its entirety for the simple, and unassailable, reason that Rule 45 required plaintiffs to file it, if at all, in Southern District of Indiana, where plaintiffs sought compliance with the Subpoena. Jurisdiction rests with this Court only if the Indiana court transfers the dispute pursuant to Rule 45(f). IPC therefore respectfully requests that the Court deny the Motion to Compel, or in the alternative, hold it in abeyance pending a ruling in the Southern District of Indiana.

## ARGUMENT

### I. Rule 45 Requires This Dispute To Be Resolved in the Southern District of Indiana, Where IPC Has Moved to Quash the Subpoena.

Under Rule 45, plaintiffs were required to file the Motion to Compel in the Southern District of Indiana, "the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 8673437, at *2 (N.D. Fla. Nov. 18, 2020) ("Rule 45 is clear: the serving party must move to compel compliance with a discovery subpoena in 'the district where compliance is required.'"). Just as Your Honor held when these plaintiffs tried this same tactic with another non-party,

---

since the exchange of letters in December 2021. Plaintiffs were also required to obtain a hearing date before filing their motion. Plaintiffs did not do so. ECF No. 1220. Instead, after multiple delays for months on end, they raced to this Court knowing full well that IPC would insist on its right to resolve this dispute in the district where plaintiffs sought compliance. Such tactics should not be rewarded.

it is improper for plaintiffs to move to compel in this Court. *In re Pork Antitrust Litig.*, No. 0:18-cv-01776-JRT-HB (D. Minn. Sept. 3, 3021) (Dkt. 935) (Bowbeer, J.) (denying motion to compel filed in this Court rather than the compliance court); *Williams Dev. & Const., Inc. v. United States*, 2019 WL 6716786 (D.S.D. Dec. 10, 2019) (denying motions to quash that should have been filed in the respective compliance courts). That is because a court may not "usurp the role assigned to [the compliance court] by Rule 45," and absent transfer of a motion from a compliance court, "it has no authority to rule on" a motion to compel. *Id.* (Dkt. 935 at 4). Plaintiffs' Subpoena called for production of documents in Indianapolis, Indiana, within the territory of the Southern District of Indiana. Entwisle Decl., Mem. at Ex. 2. The Southern District of Indiana is therefore the court where compliance is required, and where plaintiffs' motion should have been filed pursuant to Rule 45(d)(2)(B)(i), if anywhere.

Notably, plaintiffs do not articulate any jurisdictional basis for their Motion despite knowing full well that this Court previously dismissed one of their own prior motions to compel against another non-party, Affiliated Foods, in September 2021, for lack of jurisdiction. *See* ECF No. 876. Indeed, this Court denied that motion after expressly inviting plaintiffs to address, in reply, the jurisdictional basis for that motion, noting in its order that plaintiffs failed to explain whether any exceptional circumstances existed under Rule 45(f). *Id.* Instead, plaintiffs suggested in their March 11 correspondence that this Court has expressly ruled that the existence of an MDL permits them to disregard the mandates of Rule 45. *See* Entwisle Decl., Mem. at Ex 5 (Email from J. Bourne, citing Case Management Order ("CMO"), No. 0:18-cv-01776-JRT-HB (Dkt. 985) at 8, n.1 (Nov.

6

14, 2021)). Plaintiffs overreach in both their reading of the Case Management Order and the underlying law.

To be sure, plaintiffs are correct that Judge Tunheim indicated in a *footnote* to a Case Management Order that he might be receptive to the efficiencies that might be gained by resolving document subpoenas in an MDL court. CMO, at 8, n.1. But any purported efficiencies have neither been articulated in plaintiffs' Motion nor reconciled with Rule 45's mandate that the compliance court resolve this dispute or transfer the matter. Indeed, the CMO footnote does not meaningfully address this issue at all, nor has any judge in the Eighth Circuit or this District. In short, that footnote does not give plaintiffs license to dispense with Rule 45's mandates. Rule 45(d)(2)(B)(i) "clearly and unequivocally requires that motions to compel compliance with Rule 45 subpoenas be brought in the court where compliance is required." *In re Packaged Seafood Prods. Antitrust Litig.*, 2018 WL 454440, at *1 (S.D. Cal. Jan. 17, 2018). The purpose is to "protect local nonparties" and ensure "local resolution of disputes about subpoenas" by requiring that subpoena-related motions "be made in the court in which compliance is required under Rule 45(c)." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment.[4] That is even at risk of reducing case management efficiencies, which are not unique to MDLs, as they "exist in any case in which subpoenas duces tecum issue from courts other than the district in which a case is

---

[4] Structurally, new section Rule 45(f) was added in 2013 to permit the compliance court in its discretion to transfer a motion to the issuing court if the subpoena recipient consents or if the court finds exceptional circumstances, providing further guidance that such motions should be initiated in the compliance court. Fed. R. Civ. P. 45(f); *In re 3M*, 2020 WL 8673437 at *4.

pending." *VISX v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002). As another court concluded in deciding a similar dispute involving *these very plaintiffs* and non-party Affiliated Foods, "Congress could have added that, in a subpoena that is part of MDL litigation, a court must transfer" a subpoena-related motion, but it "chose not to do so." *In re Subpoena Served on Affiliated Foods, Inc.*, 2021 WL 4439796, at *3 (N.D. Tex. Sept. 28, 2021). Thus, "[t]he consistency and efficiency of resolving subpoena-related motions in the MDL court is more appropriately considered under Rule 45(f) than as a basis to attempt to invoke the MDL court's jurisdiction in the first instance under § 1407(b)." *In re 3M*, 2020 WL 8673437 at *4; *see also In re Monitronics Int'l, Inc.*, 2015 WL 12748329, at *2 (N.D.W. Va. Feb. 20, 2015) and *In re ClassicStar Mare Lease Litig.*, 2017 WL 27455, at *1 n. 4 (E.D. Ky. Jan. 3, 2017) (both employing the amended Rule 45 to find subpoena-related motion filed initially in the MDL court was filed in the wrong court).

The MDL statute grants authority to conduct "coordinated or consolidated pretrial proceedings," including "for the purpose of conducting *pretrial depositions* in such coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(b) (emphasis added). By its plain terms, that statute does not extend to subpoenas duces tecum.[5] And

---

[5] In fact, the ordinary meaning of the phrase "pretrial depositions" at the time the MDL statute was enacted in 1968 could not have extended to embrace document-only subpoenas because the latter were not authorized until 1991; as such, there is no basis in the statutory language itself for jurisdiction over motions involving such subpoenas. *In re 3M*, 2020 WL 8673437 at *3. Nor are there other indicia of Congressional intent to extend the meaning of "pretrial depositions" to include document-only subpoenas. Courts considering the question have found no legislative history or other evidence that support plaintiffs' proffered reading of the statute. *Id.*; *VISX*, 208 F.R.D. at 616 ("Had Congress wanted to expand these powers to document subpoenas, it would have said so.").

8

while the power of an MDL judge to conduct pretrial depositions may "include the power to enforce deposition subpoenas," courts have held that such power does not extend to a subpoena duces tecum as the latter requires only the production of documents. *In re Packaged Seafood*, 2018 WL 454440, at *2. The distinction between these types of subpoenas "makes a difference," and as a result "[t]he extension of jurisdiction in MDL cases to the conduct of pretrial depositions … is not tantamount to extending jurisdiction to enforce document subpoenas on third parties." *Id.* (holding that the MDL court lacked jurisdiction to enforce a document subpoena pursuant to § 1407(b) alone).

The *Affiliated Foods* court expressly recognized this limitation. *Affiliated Foods*, 2021 WL 4439796, at *3 ("A clear reading of the statute gives jurisdiction to the MDL judge to rule on subpoenas related to depositions but does not give authority to the MDL judge to rule on subpoenas related to document production."). So, too, have courts around the country. *See, e.g., In re 3M*, 2020 WL 8673437, at *4 ("the plain language of § 1407(b) does not give an MDL court jurisdiction to compel compliance with documents-only subpoenas."); *In re Monat Hair Care Prods. Mktg., Sales Pracs., and Prods. Liab. Litig.*, 2020 WL 1950463, at *2 (S.D. Fla. Apr. 23, 2020) (the MDL statute "makes no reference to subpoenas for the production of documents."); *VISX*, 208 F.R.D. at 616 ("§ 1407(b) expands a transferee court's discovery powers only to pretrial depositions," not to "document subpoenas").

Those courts that have interpreted § 1407(b) to confer jurisdiction on the MDL court emphasized policy grounds for doing so that are not implicated here. For example, in *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, the Sixth Circuit

9

pointed to "the rationale underlying the MDL statute of 'just and efficient' resolution of pretrial proceedings" in finding that the MDL court had jurisdiction over document subpoenas, but did not address the statutory text. 444 F.3d 462, 469 n. 4 (6th Cir. 2006). In IPC's case, there is no efficiency loss in having the Southern District of Indiana rule on the Subpoena instead of this Court because no special knowledge, skill, or familiarity with the case is needed to resolve the issues between IPC and plaintiffs. The Subpoena is an ordinary—albeit unduly burdensome—document subpoena. And there are more compelling policy reasons underlying Rule 45 that weigh in favor of local resolution of subpoena disputes, as recognized by the *Affiliated Foods* court. 2021 WL 4439796, at *4; Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. Like the non-party subpoena recipient in that case, IPC "has a strong interest in immediate resolution without being told to take additional steps in a foreign jurisdiction for the benefit of the parties to the litigation" (here, the plaintiffs). *Id*. Such interests in local resolution are no less important than the interests of judicial economy in the management of MDLs.

Put simply, in their rush to file the Motion to Compel before this Court plainly for their own benefit, plaintiffs actively chose to disregard Rule 45, as well as this Court's prior ruling on a similar non-party subpoena, to say nothing of the Local Rules and Your Honor's Practice Pointers. IPC respectfully suggests that this Court should not condone such conduct and should instead deny Plaintiffs' Motion to Compel.[6]

---

[6] Given plaintiffs' awareness of (1) IPC's position that any motion regarding the Subpoena needed to be brought in Indiana, (2) this Court's September 2021 Affiliated Foods order, and (3) the November 2021 Case Management Order prior to filing their motion to compel, this Court should not entertain a request by plaintiffs to submit a reply. Plaintiffs know the

10

### II. In the Event that the Court Determines that the Motion is Properly before this Court, IPC Respectfully Requests Leave to Submit Additional Briefing on the Merits.

For all the reasons stated above, IPC believes that any dispute over the Subpoena should first be heard by the Court in Indiana—a position plaintiffs have known for over nine months. Should the Court, however, determine that it has jurisdiction to hear plaintiffs' Motion prior to any decision on transfer by the Indiana Court, IPC respectfully requests the opportunity to respond to plaintiffs' Motion in full on the merits.

### CONCLUSION

For the foregoing reasons, IPC respectfully requests that the Court deny plaintiffs' Motion to Compel or, in the alternative, delay ruling on it until the Court in the Southern District of Indiana has ruled on IPC's Motion to Quash and any related motion to transfer, should plaintiffs choose to bring one. Should the Court determine that it will decide the Motion notwithstanding IPC's jurisdictional objection and the pendency of IPC's Motion to Quash in Indiana, IPC respectfully requests that it be permitted to respond to plaintiffs' arguments as to relevance and burden.

---

Local Rules do not permit replies as a matter of right on non-dispositive motions. They could have addressed the jurisdictional basis for their Motion in their opening papers, but chose not to do so. And although the Court has since ruled on a motion to compel compliance with a subpoena directed to an out-of-state non-party, Pac-Agri, there Pac-Agri agreed to transfer to this Court *after* plaintiffs had filed a motion to compel in the court of compliance (ECF No. 1026 at 10), and thus the jurisdictional question was not addressed.

11

Dated: March 28, 2022                                    Respectfully submitted,

/S *Jaime Stilson*
Jaime Stilson (#392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402-1498
(612) 492-6746
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation*