# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE PORK ANTITRUST
LITIGATION


This Document Relates To:

COMMERCIAL AND
INSTITUTIONAL INDIRECT
PURCHASER PLAINTIFF ACTION

Case No. 18-cv-1776 (JRT/HB)

**Memorandum in Support of Motion
for Preliminary Approval of Class
Action Settlement Between the
Commercial and Institutional
Indirect Purchaser Plaintiffs and
Defendant Smithfield Foods, Inc.**

## Table of Contents

**Page**

I.  Introduction ........................................................................................................ 1

II.  Background and Basic Settlement Terms .......................................................... 1

III.  Preliminary Approval of the Settlement Should be Granted ............................ 7

     A.  The Proposed Settlement Is the Result of Arm's-Length Negotiations ............. 8

     B.  The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ........................................................................... 9

IV.  The Court Should Certify the Proposed Settlement Class .............................. 13

     A.  The Proposed Settlement Class Satisfies the Requirements of Rule 23(a) ....... 14

          1.  Numerosity ....................................................................................... 14

          2.  Commonality ................................................................................... 14

          3.  Typicality ......................................................................................... 15

          4.  Adequacy of Representation ........................................................... 16

     B.  The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3) .................................................................................................. 16

V.  The Court Should Allow CIIPPs to Provide a Proposed Notice Plan Later .............. 19

VI.  Conclusion ...................................................................................................... 20

i

# Table of Authorities

## Cases

*Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525 (8th Cir. 1996) ......................................................15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 13, 17, 18

*Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.,* 446 F.2d 763 (8th Cir. 1971) .........14

*Blades v. Monsanto Co.*, 430 F.3d 562 (8th Cir. 2005) .......................................................15

*Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251 (Minn. 2000) ..........................17

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...............................................................18

*Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595 (8th Cir. 2020) ..............17

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ...................................................... 14, 15

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ........................................9

*In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652 (D.D.C. 1979) ........................................12

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ............................ 9, 10, 11

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) ................................................10

*In re Corrugated Container Antitrust Litig.*, 1981 WL 2093 (S.D. Tex. Jan. 27, 1981)............. 11, 12

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
     481 F.3d 1119 (9th Cir. 2007) .....................................................................10

*In re Hartford Sales Practices Litig.*, 192 F.R.D. 592 (D. Minn. 1999) .............................................14

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)............................... 9, 11, 12

*In re Packaged Ice Antitrust Litig.*, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. Aug. 2, 2010) ....12

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 150427
     (E.D. Mich. Dec. 13, 2011)........................................................................9

*In re Potash Antitrust Litig.*, 159 F.R.D. 682 (D. Minn. 1995)......................................................17

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697 (M.D. Pa. 2008) ..............12

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ...................................11

*In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980) .........................................12

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ................................11

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ................8

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) ..........19

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ........9, 18

*Jones v. Flowers*, 547 U.S. 220 (2006) .................................................19

*Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569 (D. Minn. 1995) .............14

*Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013) .......................................... 7, 8, 9

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ...................................19

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) .............................................16

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .............................................19

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ..........................................11

*Sandusky Wellness Ctr., LLC v. Medtox Sci, Inc.*, 821 F.3d 992 (8th Cir. 2016) ...........................17

*Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921 (8th Cir. 2015) .................................13

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ..........................................................7

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) .................................8

**Statutes & Rules**

28 U.S.C. § 1715 .............................................................................................................7

Fed. R. Civ. P. 23.......................................................................................................*passim*

Fed. R. Civ. P. 23(e)(2)...............................................................................................7

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................. 13

**Other Authorities**

Class Actions Fairness Act of 2005, 28 U.S.C. § 1715 ................................................. 7

Manual for Complex Litigation (Third) (1995) ............................................................ 8

4 Newberg on Class Actions (4th ed. 2002) ....................................................... 8, 9, 17

## I.     Introduction.

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs")[1] respectfully request the Court's preliminary approval of the settlement of their claims against Smithfield Foods, Inc ("Smithfield"). The proposed settlement is the result of extensive arm's length negotiations and provides the CIIPPs with substantial monetary relief of $42,000,000 ($42 million) as well as non-monetary relief like cooperation in the prosecution of claims against the remaining, non-settling defendants.

The Court should grant preliminary approval of the proposed settlement because it is well within the range of possible approval and is in the best interest of the class members. The Court should also certify the proposed Settlement Class for settlement purposes. In a separate motion, CIIPPs will ask the Court to approve a proposed plan for disseminating notice to the Settlement Class and to schedule a final fairness hearing. At the final fairness hearing, Interim Co-Lead Counsel will seek entry of a final order and judgment dismissing Smithfield and retaining jurisdiction for implementation and enforcement of the settlement agreement.

## II.     Background and Settlement Terms.

This case represents the consolidation of separately filed putative class actions alleging that Defendants engaged in a conspiracy to artificially constrict the supply of pork[2] products

---

[1] As used herein, "CIIPPs" shall mean the current named class representatives in the CIIPP case: Sandee's Bakery; Francis T. Enterprises d/b/a Erbert & Gerbert's; Joe Lopez, d/b/a Joe's Steak and Leaf; Longhorn's Steakhouse; The Grady Corporation; Mcmjoynt LLC d/b/a The Breakfast Joynt; Edley's Restaurant Group, LLC; Basil Mt. Pleasant, LLC; Basil Charlotte, Inc.; Farah's Courtyard Deli, Inc.; and Tri-Ten LLC.

[2] For this Settlement, "Pork" means porcine or swine products processed, produced or sold by Smithfield, or by any of the Defendants or their co-conspirators, including but not limited

in the domestic market of the United States. The CIIPPs allege that the Defendants[3] conspired to constrain the supply, and fix the price, of pork from at least 2009 through the commencement of the present action. (*See* CIIPP Fourth Consolidated and Amended Complaint (Dkt. 808)). The CIIPPs allege that Defendants, through their co-conspirator, Agri Stats, exchanged detailed, competitively sensitive, and closely guarded non-public information about price, capacity, sales volume, and demand. (*Id.* ¶ 2). The CIIPPs allege that Agri Stats provided highly sensitive "benchmarking" reports to most pork integrators, thereby allowing competitors to compare their profits or performance against that of other companies. (*Id.* ¶ 3). The effect of this anti-competitive exchange of non-public information allegedly allowed pork integrators to control the supply and price of pork. (*Id.*) The named CIIPPs allege that

---

to: primals (including but not limited to loins, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chef's prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including, but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products), offal or variety products (including, but not limited to hearts, tongues, livers, head products, spleens, kidneys, feet, stomach, bladder, uterus, snoot, ears, tail, brisket bone, intestines, jowls, neck bones or other bones, skin, lungs, glands, hair, or pet food ingredients), rendered product and byproducts (including, but not limited to, lard, grease, meat meal, bone meal, blood meal, or blood plasma), casings (including, but not limited to, mucosa), and carcasses. (*See* Settlement Agreement ¶ 1n, attached as Exhibit A to the Declaration of Shawn Raiter).

[3] Defendants include JBS USA Food Company, JBS USA Food Company Holdings, Clemens Food Group, LLC, The Clemens Family Corporation, Hormel Foods Corporation, Seaboard Foods LLC, Smithfield Foods, Inc., Triumph Foods, LLC, Tyson Foods, Inc. Tyson Prepared Foods, Inc., Tyson Fresh Meats, Inc., and Agri Stats, Inc.

they and the putative class members paid artificially inflated prices for pork during the Class Period.[4] (*Id.* ¶ 7).

On October 15, 2018, the Court appointed the undersigned as Interim Co-Lead Class Counsel for the CIIPPs. (Dkt. 150). The Court granted Defendants' initial motions to dismiss Plaintiffs' complaints, with leave to amend, in August 2019. (Dkt. 360). On October 16, 2020, the Court denied Defendants' motions to dismiss the CIIPPs Third Consolidated Amended Complaint, except as to certain state-law claims. (Dkts. 519, 520). The CIIPPs filed their Fourth Consolidated Amended Complaint on June 15, 2021. (Dkt. 808).

Unlike many civil antitrust actions, these cases were brought without a formal antitrust investigation by the United States Department of Justice and without the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. Since filing the first Complaint, the CIIPPs—as well as other Plaintiff classes and certain "Direct Action Plaintiffs"—have continued their investigation and development of their case.

During the ongoing discovery and prosecution of this case, Interim Co-Lead Counsel negotiated the proposed settlement with Smithfield. This is the second settlement the CIIPPs have negotiated. Coupled with the CIIPPs' earlier settlement with the JBS Defendants, this settlement would bring the total monetary relief to $54,750,000 ($54.75 million). The Court granted preliminary approval of the CIIPPs' settlement with JBS on May 3, 2021 (Dkt. 767) and granted final approval of that settlement on November 18, 2021. (Dkt. 1007). This settlement with Smithfield has come after substantial adversarial litigation with Defendants in

---

[4] "Class Period" means January 1, 2009 until the date of the order granting Preliminary Approval of the Settlement Agreement and Settlement Class (*See* Settlement Agreement ¶ 1c).

this MDL and much investigation. The CIIPPs' counsel was well-informed, and the Settlement

Agreement with Smithfield arose from arm's-length and good-faith negotiations. The parties

negotiated for months before they reached agreement on the Settlement's terms.

The Settlement Agreement defines the "Settlement Class" as:

> All entities who indirectly purchased Pork from Defendants or co-conspirators or their respective subsidiaries or affiliates in the United States during the Class Period for their own business use in commercial food preparation.

> Specifically excluded from the Settlement Class are Defendants; the officers, directors or employees of any Defendant; the parent companies of any Defendant; the subsidiaries of any Defendant and any entity in which any Defendant has a controlling interest; purchasers of Pork that purchased Pork directly from any Defendant, including those that directly purchased Pork for resale in an unmodified and untransformed form; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Settlement Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action.

(Settlement Agreement ¶ 5).

**Settlement Fund:** Smithfield will pay $42,000,000 (forty-two million United States

dollars) to the CIIPP Settlement Class by paying, or causing to be paid, such sum into an

interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement

Class. (Settlement Agreement ¶ 1u). From the Settlement Fund, and subject to Court approval,

Smithfield shall not object to Interim Co-Lead Counsel withdrawing up to $200,000 to pay

the costs for notice and for Preliminary and Final Approval of the Settlement Agreement. (*Id.*

¶ 6b). Those notice costs up to $200,000 are nonrefundable if, for any reason, the Settlement

Agreement is terminated according to its terms or is not finally approved by the Court. (*Id.*

¶ 6c). Interim Co-Lead Counsel may apply to the Court for a fee award, reimbursement of

incurred or anticipated expenses, and service awards to the representative CIIPPs to be paid

from the proceeds of the Settlement Fund. (*Id.* ¶ 14).

**Cooperation:** Cooperation by Smithfield is a material term of the Settlement

Agreement, and Smithfield agrees to the following:

a. To the extent applicable during the pendency of the CIIPPs' Actions in the *In re Pork Antitrust Litigation*, Smithfield shall contemporaneously provide to CIIPPs (a) any discovery responses, documents, or information it provides to any other plaintiff in the *In re Pork Antitrust Litigation*, and (b) any discovery responses, documents, or information it provides to government entities making substantially similar allegations regarding competition in the Pork industry.

b. Smithfield shall not object to CIIPPs participating in the depositions of up to five Smithfield witnesses, within the scope of discovery in the *In re Pork Antitrust Litigation*.

c. Smithfield shall produce the structured data that has been requested by CIIPPs in discovery and agreed-to by Smithfield in the *In re Pork Antitrust Litigation*, based on the timing, scope, and manner that is agreed to by the parties or ordered by the Court during the course of the litigation. Smithfield further agrees to continue responding to CIIPPs' questions in order to understand and interpret Smithfield's structured data for the litigation.

d. Smithfield agrees to make all good faith efforts to assist CIIPPs in obtaining the authentication and admissibility of Smithfield's documents for purposes of summary judgment and/or trial.

e. Smithfield agrees to make available to testify live at a single CIIPP trial the following: (a) one then-current Smithfield employee who can authenticate a specific set of documents (all of which CIIPPs will provide to Smithfield at least forty-five (45) days before jury selection starts), and (b) one then-current Smithfield employee who can serve as a fact witness on material fact issues on which that employee has personal knowledge to the extent those fact issues remain in dispute at the time of trial.

f. This settlement does not prohibit CIIPPs from seeking phone records from third-party phone carriers relating to Smithfield's current or former employees' phone records but only for the time between January 1, 2008 and June 30, 2018 when those employees were employed by Smithfield.

g. In the event that Smithfield does not complete its production of documents from currently agreed upon custodians and sources in the discovery process (*i.e.*, Smithfield

settles with all plaintiffs), then Smithfield will agree to produce to CIIPPs any document already reviewed and marked responsive and non-privileged.

(Settlement Agreement ¶ 11).

**Released Claims:** In consideration for the $42,000,000 payment and cooperation, the

CIIPPs agree, upon Final Judgment, to release Smithfield from:

> any and all claims, demands, actions, suits, and causes of action, whether statutory, administrative, or common-law, whether at law or in equity, whether seeking injunctive relief or money damages, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, that exist as of the date of the order granting Preliminary Approval, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the indirect purchase of Pork produced, processed or sold by Smithfield or any of the Defendants or their co-conspirators, and purchased indirectly by the Releasing Parties (the "Released Claims").

(*Id.* ¶ 15). The Released Claims, however, do not include:

> (i) claims asserted against any Defendant or co-conspirator other than the Smithfield Released Parties; (ii) any claims made by direct purchasers of Pork as to such direct purchases; (iii) any claims made by consumers that are indirect purchasers of Pork for their personal use; (iv) any claims made by any state, state agency, or instrumentality or political subdivision of a state as to government purchases of Pork; (v) claims wholly unrelated to the allegations in the Actions involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim relating to Pork; (vi) claims concerning any product other than Pork; (vii) claims under laws other than those of the United States relating to purchases of Pork made outside of the United States; and (viii) damage claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State.

(*Id.*)

**Termination:** The Settlement provides either party the right to terminate the Settlement Agreement upon the occurrence of specified conditions, including if the Court does not approve the Settlement Agreement, declines to enter a Preliminary Approval Order, does not enter an Order of Final Approval and a Final Judgment, if the Court approves the Settlement Agreement in a materially modified form, or if the Court *does* enter a Final Approval Order and Final Judgment but such Order and Judgment is reversed on appeal. (*Id.* ¶ 20a). In addition, the Settlement Agreement provides Smithfield with the unilateral right to terminate the Settlement Agreement in accordance with the terms of a Supplemental Agreement—as set forth in a confidential letter, which may only be provided for *in camera* review upon the Court's request—within ten days of Smithfield receiving notice that Settlement Class Members who meet certain criteria excluded themselves from the Settlement Class. (*Id.* ¶ 20b).

The Settlement Agreement also requires Smithfield—withing ten days of filing the Settlement Agreement with the Court in connection with the motion for preliminary approval—to submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. (*Id.* ¶ 24).

## III.    Preliminary Approval Should be Granted.

When parties propose to settle a class action, the Court must review the settlement to ensure that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A district court has broad discretion in evaluating a class-action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606–07 (8th Cir. 1988). Review of a proposed class-action settlement typically proceeds in two stages. *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). At the preliminary approval stage, the court determines whether the settlement is within the range of possible approval

and whether class members should be notified of the terms of the proposed settlement.[5] *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993). The purpose of a court's preliminary evaluation of proposed settlements is simply to determine whether it is within the range of reasonableness and, thus, whether notice to the class of the terms and conditions of the settlement, and scheduling a formal fairness hearing, are worthwhile. 4 Newberg on Class Actions § 11.26.

A proposed settlement agreement should be preliminary approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." Manual for Complex Litigation (Third) § 30.41 at 237 (1995). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White*, 822 F. Supp. 2d at 1416. The proposed settlement between the CIIPPs and Smithfield should be granted preliminary approval because the settlement is well within the range of reasonableness and possible approval.

## A. The Proposed Settlement Agreement is the Result of Arm's-Length Negotiations.

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."

---

[5] In making a final determination of settlement approval, the district court ultimately is required to consider four factors: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005). But, at the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383 (quotation omitted).

4 Newberg on Class Actions § 11.41 (4th ed. 2005) (collecting cases); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The preliminary determination establishes a presumption of fairness when a settlement "has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 08-MDL-1958 (ADM/AJB), 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). The court gives "great weight" to and may rely on the judgment of experienced counsel in its evaluation of a proposed settlement. *Id.*

At the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383 (quotation omitted). The Settlement here is within the range of possible approval because there are no glaring substantive or procedural deficiencies. The Settlement Agreement is the product of extensive and vigorous arm's-length negotiations. The CIIPPs have developed and assessed both their claims and Smithfield's defenses. The CIIPPs and Smithfield are represented by experienced counsel, and the Settlement was reached after years of litigation.

**B. The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *Linerboard*, 292 F. Supp. at 639); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("Moreover, the complexity of this case cannot

be overstated. Antitrust class actions are inherently complex"). Motions have already been vigorously contested, and the discovery process has been and will be complex.[6]

Smithfield has asserted various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly regarding damages, making the outcome of such trial uncertain for both parties. *See, e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial

---

[6] Because Interim Co-Lead Class Counsel may have to litigate against other defendants through trial and appeal, their duties preclude a more detailed discussion of the potential litigation risks.

reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Classes than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, a settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Class. Smithfield's $42 million payment provides compensation that will be available years earlier than if litigation against Smithfield continued through trial and appeal. Settlements of this type create value beyond their direct pecuniary benefit to the class. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, *16 (S.D. Tex. Jan. 27, 1981).

The Settlement Agreement requires Smithfield to provide cooperation to the CIIPPs by providing transactional data and documents, among other cooperation. (Settlement Agreement ¶ 11). This cooperation is valuable and will afford access to transactional data, documents, and other information without further litigation and expensive discovery—a significant class-wide benefit. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093, at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.")

The Settlement Agreement does not alter joint and several liability of any non-settling Defendant or future Defendants for the full damages caused by the alleged conspiracies. (*See* Settlement Agreement ¶ 15). In this regard, the Settlement Agreement is similar to the settlements in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from other current or future defendants, less the actual amount of the initial settlement. 1981 WL 2093, at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability).

Against this backdrop, the Settlement Agreement provides significant relief to CIIPP class members, far greater than the threshold "adequate" relief required by Fed. R. Civ. P. 23(e)(2)(C). The Settlement Agreement requires Smithfield to pay $42,000,000 into an escrow account within 14 business days of the Court's preliminary approval. (Settlement Agreement ¶ 10). The Settlement Fund will be used to compensate the Settlement Class for damages suffered and expenses incurred, and potentially for the benefit of pursuing claims against non-settling defendants. In addition to the monetary relief it offers, the terms of the Settlement Agreement require Smithfield to provide cooperation to the CIIPPs for use in their pursuit of claims against the non-settling Defendants. The cooperation that the CIIPPs have secured from the Settlement will bolster the CIIPPs' claims against the non-settling Defendants.

## IV.   The Court Should Preliminarily Certify the Settlement Class.

At the preliminary stage, the Court must also determine whether to certify the proposed Settlement Class for settlement purposes under Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (describing Rule 23(a) requirements as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation). A settlement class may be certified if it satisfies each requirement set forth in Rule 23(a), and at least one of the separate provisions set forth in Rule 23(b). *Id.* at 613–14; *Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015).

The CIIPPs seek certification of a Settlement Class defined as:

> All entities who indirectly purchased Pork from Defendants or co-conspirators or their respective subsidiaries or affiliates in the United States during the Class Period for their own business use in commercial food preparation.

13

> Specifically excluded from the Settlement Class are Defendants; the officers, directors or employees of any Defendant; the parent companies of any Defendant; the subsidiaries of any Defendant and any entity in which any Defendant has a controlling interest; purchasers of Pork that purchased Pork directly from any Defendant, including those that directly purchased Pork for resale in an unmodified and untransformed form; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Settlement Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action.

(Settlement Agreement ¶ 5). The proposed Settlement Class satisfies the threshold requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

## A.   The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).

### 1.   Numerosity

Rule 23(a)(1), Fed. R. Civ. P., requires that the class be "so numerous that joinder of all members is impracticable." CIIPPs estimate that there are hundreds of thousands of Settlement Class members. This easily satisfies the numerosity requirements. *See Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (approving class of twenty members); *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (approving class with as few as forty members).

### 2.   Commonality

Rule 23(a)(2), Fed. R. Civ. P., requires that there be "questions of law of fact common to the class." The threshold for commonality is low, requiring only that the legal question "linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *see In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999) ("[T]he commonality requirement imposes a very light

14

burden on Plaintiff seeking to certify a class and is easily satisfied.").  For a class to be certified, plaintiffs need to demonstrate "that common issues prevail as to the existence of a conspiracy and the fact of injury." *Blades v. Monsanto Co.*, 430 F.3d 562, 566 (8th Cir. 2005).

The CIIPPs contend that common questions prevail here about whether Defendants illegally conspired to fix the supply and price of Pork in the United States and as to whether the CIIPPs were injured because of Defendants' anti-competitive conduct. The Settlement Class satisfies the commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be typical of those of other class members. This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

The CIIPPs allege claims that arise out of the same alleged conduct of Defendants—whether they illegally conspired to reduce the supply and thereby raise the price of Pork in the United States. (*See* Dkt. 808). The representative Plaintiffs of the CIIPP Settlement Class each allege that they paid artificially inflated prices for Pork, which exceeded the amount they would have paid if the price for Pork had been determined by a competitive market. (*Id.*) Each individual class member has the same interests as the class representatives, suffered the same or similar harm, and must prove the same conspiracy. The typicality requirement is therefore satisfied.

### 4.   Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The focus of Rule 23(a)(4) is "whether (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

The CIIPP class representatives have common interests with the members of the Settlement Class. They share interests in obtaining the best possible monetary recovery and securing cooperation against non-settling Defendants. The named representatives have and will vigorously pursue this matter through qualified counsel. Undersigned counsel has significant antitrust experience and have successfully led other antitrust MDL actions involving intermediate indirect purchasers. (*See* Mem. in Support of Motion to Appoint Counsel for Commercial and Indirect Purchaser Plaintiffs, Dkt. 114). The Court has recognized that the undersigned counsel will adequately represent the CIIPPs. (Order Appointing Co-Lead Counsel, Dkt. 150). Counsel thus far has vigorously prosecuted the interests of the CIIPPs throughout motion practice, discovery, and settlement negotiations.

### B.  The Proposed Settlement Class Satisfies the Requirements of Rule 23(b).

In addition to satisfying the requirements of Rule 23(a), plaintiffs seeking class certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). "The requirements of 'predominance of common issues' and 'superiority' are stated in Rule

16

23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Account Serv./Checking Recovery*, 208 F.R.D. 251, 261 (Minn. 2000).

The Rule 23(b) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. This test is readily met in certain cases, including those alleging violations of antitrust laws. *Id.* at 625; *see also In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) ("As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment."); 4 Newberg on Class Actions § 18.28 at 102 (4th ed. 2002) ("As a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions."). Slight variation in actual damages does not defeat predominance if there are common legal questions and common facts. *Custom Hair Design by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020).

The CIIPPs contend that questions of law or fact common to the CIIPP Settlement Class predominate over any questions affecting only individual members. These questions, which the CIIPPs believe are subject to common proof, include whether Defendants engaged in anticompetitive conduct and/or conspired to artificially lower Pork output and raise prices, and whether the CIIPPs paid artificially inflated prices for Pork during the class period. *See Sandusky Wellness Ctr., LLC v. Medtox Sci, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) ("If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.") Therefore, the CIIPP class satisfies the predominance requirement.

Plaintiffs seeking class certification must also show that a class action is superior to individual claims. Rule 23(b) provides four pertinent considerations: (A) the interest of the

class members in individually controlling the prosecution or defense of separate actions; (B) whether other litigation concerning the controversy already exists; (C) the desirability of concentrating the litigation in the particular forum; and (D) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). But when a class is being certified for settlement, the Court "need not examine the Rule 23(b)(3)(A–D) manageability issues, because it will not be managing a class action trial." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *5 (citing *Amchem Prods., Inc.*, 521 U.S. at 620).

Where class wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). A class action is the superior method to adjudicate this litigation because it promotes greater efficiency than individually litigating hundreds or thousands of class members' claims. The requirements of Rule 23(b) are satisfied in this case.

If the requirements of Rule 23(a) are met, the Court may also certify a class under Rule 23 (b)(2) where: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . ." Claims for non-monetary relief, like those asserted under federal law that does not recognize claims for money damages by indirect purchasers in antitrust actions, are properly certified under Rule 23(b)(2), and the agreement here provides such relief. (*See* Settlement Agreement, ¶ 10).

**V.**     **The Court Should Allow CIIPPs to Provide a Proposed Notice Plan Later.**

After receiving preliminary approval of a settlement agreement, class members must be notified of the settlement. Fed. R. Civ. P. 23(3)(1)(B). For a class proposed under Rule 23(b)(3), whether litigated or by settlement, the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The notice of a class action settlement need only satisfy the broad "reasonableness" standards imposed by due process. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). A notice is adequate if "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). To satisfy due process, the notice must reflect a desire to inform. *Mullane*, 339 U.S. at 315. The notice plan should take reasonable steps to update addresses before mailing and provide for re-mailing of notices to better addresses when returned as undeliverable. *Jones v. Flowers*, 547 U.S. 220, 226–27 (2006). The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810, at *8. Furthermore, in addition to United States

mail, notice may be by electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

Interim Co-Lead Class Counsel request that the Court allow them to defer seeking Court approval for a notice plan until a later time.[7] The CIIPPs will submit a motion for leave to disseminate notice, and that motion will include a proposed form, method, and date for dissemination of notice. The CIIPPs expect to file that motion shortly after the present motion is filed. Indeed, paragraph 6(c) of the Settlement Agreement requires Interim Co-Lead Counsel to use their best efforts to send notice to the class within two months of the date the Court grants preliminary approval.

## VI.   Conclusion.

The CIIPPs respectfully request that the Court preliminarily approve the Settlement Agreement with Smithfield and preliminary certify the Settlement Class. In short order, the CIIPPs will submit a separate motion seeking approval of a proposed notice plan and setting a schedule for the dissemination of notice to the Settlement Class and final fairness hearing for the Settlement Agreement.

---

[7] Similarly, the Court granted the CIIPPs' request to provide notice of the settlement with the JBS defendants after preliminary approval. (Dkt. 756). After the Court granted preliminary approval, (Dkt. 767), the CIIPPs moved for approval of the manner and form of class notice (Dkt. 802), which the Court granted on June 23, 2021. (Dkt. 812).

Dated: April 8, 2022                    **Larson • King, LLP**


                                        By ____*s/ Shawn M. Raiter*_____
                                        Shawn M. Raiter (#240424)
                                        2800 Wells Fargo Place
                                        30 East Seventh Street
                                        St. Paul, MN  55101
                                        (651) 312-6500
                                        sraiter@larsonking.com

                                        Jonathan W. Cuneo (admitted *pro hac vice*)
                                        Blaine Finley (admitted *pro hac vice*)
                                        **Cuneo Gilbert & LaDuca, LLP**
                                        4725 Wisconsin Ave NW, Suite 200
                                        Washington, DC  20016
                                        (202) 789-3960
                                        jonc@cuneolaw.com
                                        bfinley@cuneolaw.com

                                        **Interim Co-Lead Counsel for the Commercial
                                        and Institutional Indirect Purchaser Plaintiffs**