UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION <br><br> This Document Relates To: <br> *All Actions* | Civil No. 18-cv-01776-(JRT-HB) <br><br> **INDIANA PACKERS CORPORATION'S SUPPLEMENTAL RESPONSE TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM*** |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 3

I. PLAINTIFFS FAIL TO SHOW THE SUBPOENA SEEKS RELEVANT INFORMATION THEY CANNOT OBTAIN FROM THE PARTIES ........................... 3

II. PLAINTIFFS' REPURPOSED DISCOVERY REQUESTS ARE GROSSLY OVER BROAD IN ANY EVENT ............................................................................ 5

III. PLAINTIFFS' DEMANDS WOULD IMPOSE SIX-FIGURE BURDENS AND ARE NOT PROPORTIONAL ................................................................................. 9

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACI Worldwide Corp. v MasterCard Techs. LLC*,
  2016 WL 3647850 (D. Neb. July 1, 2016) ...................................................................5

*In re Am. Nurses Ass'n*,
  643 F. App'x 310 (4th Cir. 2016) ................................................................................12

*Angell v. Kelly*,
  234 F.R.D. 135 (M.D.N.C. 2006) ...............................................................................12

*Cook v. Howard*,
  484 Fed. App'x 805 (4th Cir. 2012) ..............................................................................8

*Deluxe Fin. Servs., LLC v. Shaw*,
  2017 WL 7369890 (D. Minn. Feb. 13, 2017) .......................................................3, 8, 9

*Donald v. Outlaw*,
  2020 WL 2899689 (N.D. Ind. June 2, 2020) ...............................................................14

*Gen. Parts Distrib., LLC v. Perry*,
  2013 WL 3223374 (D. Minn. June 25, 2013).................................................................3

*Kyner v. Loveridge*,
  2019 WL 1778663 (S.D. Ind. Apr. 23, 2019) ................................................................8

*Lawson v. Spirit AeroSystems, Inc.*,
  2020 WL 3288058 (D. Kan. June 18, 2020) ...............................................................13

*Legal Voice v. Stormans, Inc.*,
  738 F.3d 1178 (9th Cir. 2013) .....................................................................................12

*In re Levaquin Prods. Liab. Litig.*,
  2010 WL 4867407 (D. Minn. Nov. 9, 2010) .......................................................3, 9, 10

*Little v. JB Pritzker for Gov.*,
  2020 WL 1939358 (N.D. Ill. Apr. 22, 2020) ...............................................................14

*Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*,
  197 F. 3d 922 (8th Cir. 1999) ......................................................................................10

*Nachurs Alpine Solutions Corp. v. Nutra-Flo Co.*,
  2017 WL 1380460 (N.D. Iowa, Apr. 17, 2017)..........................................................3, 5

*In re Plowiecki*,
  2021 WL 4973762 (D. Minn. Oct. 26, 2021) ...........................................................7, 9, 11, 15

*In re Pork Antitrust Litig.*,
  495 F. Supp. 3d 753 (D. Minn. 2020) ...............................................................................4, 7

*Precourt v. Fairbank Reconstruction Corp.*,
  280 F.R.D. 462 (D.S.D. 2011) ..............................................................................................9

*Rossman v. EN Eng'g, LLC*,
  467 F. Supp. 3d 586 (N.D. Ill. 2020) ...................................................................................14

*Spottswood v. Wash. Cnty. MN*,
  2021 WL 838769 (D. Minn. Mar. 5, 2021) ...........................................................................9

*In re Subpoena Served on Affiliated Foods, Inc.*,
  2021 WL 4439796 (N.D. Tex. Sept. 28, 2021).......................................................................7

*In re Turkey Antitrust Litig.*,
  No. 1:19-cv-08318, ECF No. 305 (N.D. Ill. Oct. 6, 2021) ............................................6, 7, 10

*Xcentric Ventures, LLC v. Borodkin*,
  934 F. Supp. 2d 1125 (D. Ariz. 2013) ...................................................................................8

**Other Authorities**

Fed. R. Civ. P. 26........................................................................................................7, 9, 10, 11

Fed. R. Civ. P. 34.......................................................................................................................11

Fed. R. Civ. P. 45................................................................................................................ *passim*

Pursuant to the Court's Order (ECF No. 1251), Indiana Packers Corporation ("IPC") provides the following supplemental response addressing its substantive objections to plaintiffs' Motion to Compel ("Motion") Indiana Packers Corporation to Comply with Subpoena *Duces Tecum* ("Subpoena" or "Requests").[1]

## INTRODUCTION

Notwithstanding all of their bluster, plaintiffs come nowhere close to establishing that their Requests are relevant and proportional, or consistent with Rule 45. They rely on only the most rudimentary descriptions of their claims to support their Requests, repeatedly citing their Complaint filed over two years ago. After almost four years of litigation and (according to plaintiffs) 3.5 million documents produced from the defendants, plaintiffs should be able to explain with specificity what it is they are missing from the productions, and how imposing six-figure burdens on IPC is going to get it for them. Compliance with Rule 45 requires no less, as case law in this Circuit and elsewhere makes clear that avoiding undue burden requires an issuing party to obtain discovery from the actual parties before burdening a non-party.

Plaintiffs also do not even meaningfully try to defend their Subpoena as written, and they cannot, because the Requests are grossly overbroad, seeking "all documents" from IPC relating to the pork industry over a 13-year period. Instead, they ask the Court to credit them for 'narrowing' these Requests by demanding IPC search the custodial documents from the same nine custodians who were under discussion while IPC was a party to the

---

[1] IPC respectfully incorporates by reference its briefing submitted to the court in the Southern District of Indiana as though fully set forth herein. *See* ECF No. 1240, Ex. A.

litigation in 2019. *See* Pl. Br. at 3-5, 11. But IPC is no longer a party and should not be treated like one. Furthermore, as IPC has explained, it would need to process *two terabytes* of data for these nine individuals at a threshold cost of more than $70,000 just to get to a point where further searches could be run. Plaintiffs' Requests are also expected to cause IPC to incur more than $220,000 in first level review costs, and those costs do not include the substantial attorneys' fees likely to be incurred by IPC for its primary outside counsel to conduct higher level attorney reviews and quality control, or, for example, to prepare a privilege log. Imposing those burdens on IPC cannot be justified under almost any circumstances, and certainly have not been justified here. Plaintiffs say nothing about why, at this stage of the proceedings, discovery of these nine individuals, discussed more than two years ago, is necessary, or why any one of them purportedly maintains information that would be relevant to the claims and defenses in the litigation that cannot be obtained from the actual parties.

Their protestations to the contrary aside, plaintiffs are not pursuing information they actually need from a non-party. Instead, they continue to pursue IPC as though it had not been dismissed from the litigation. They are trying to enforce some of their most burdensome *party* discovery requests on a *third party* under the guise of Rule 45, seeking the very same custodians they wanted from IPC when it was a party, and re-pleading the very same allegations that Judge Tunheim found lacking in support of their effort to compel IPC's compliance with their Requests. *See* Pl. Br. at 6-9. IPC was long ago dismissed from this litigation, and respectfully requests that the Court deny plaintiffs' Motion to Compel and grant IPC's Motion to Quash and for Expenses and Fees.

**ARGUMENT**

**I.   Plaintiffs Fail to Show The Subpoena Seeks Relevant Information They Cannot Obtain From The Parties**

Plaintiffs must "make[] a threshold showing that the discovery [they seek] is relevant." *Deluxe Fin. Servs., LLC v. Shaw*, 2017 WL 7369890, at *4 (D. Minn. Feb. 13, 2017) (Bowbeer, M.J.) (citation omitted). They "should be able to explain the ways in which the underlying information bears on the issues" in the litigation. *Id.* (quoting advisory committee notes to the 2015 amendments). Plaintiffs attempt to justify the Requests (Pl. Br. at 1) by saying they "generally" relate to competitive conditions in the pork industry, but it is not enough that information relates to the general subject matter of the litigation; the information sought must be relevant to "issues of dispute" between the parties. *In re Levaquin Prods. Liab. Litig.*, 2010 WL 4867407, at *2 (D. Minn. Nov. 9, 2010) (Tunheim, J.). Plaintiffs give the Court *no* specifics about what it is they are trying to get at, nor do they explain how requiring IPC to incur six-figure costs to review documents for nine custodians over a thirteen year time period would get it for them. Instead, they rest on the argument that as a pork processor and a dismissed party IPC *probably* has information they may find relevant. Pl. Br. at 7-9. That is improper.

Rule 45 also requires plaintiffs to show they cannot obtain the documents they seek from a party to the litigation before weighing down a non-party with their demands. *Nachurs Alpine Solutions Corp. v. Nutra-Flo Co.*, 2017 WL 1380460, at *5 (N.D. Iowa, Apr. 17, 2017) ("[I]n the absence of extenuating circumstances, documents discoverable from both a nonparty and a party must be obtained from a party.") (collecting cases); *Gen.*

3

*Parts Distrib., LLC v. Perry*, 2013 WL 3223374, at *4 (D. Minn. June 25, 2013) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents.") (citation and internal quotation marks omitted). Plaintiffs make no such showing, and there can be no legitimate excuse at this stage for their failure to specifically identify what they are missing from the productions that they can only get from IPC. Plaintiffs told the court in Indiana that defendants' document productions were long ago completed, in September 2021, and defendants have produced more than 3.5 million documents. *In re Pork Antitrust Litig.*, Misc. Case No. 1-22-mc-25, ECF No. 13 (S.D. Ind. Apr. 4, 2022) (Bourne Decl. ¶ 5). Plaintiffs also claim they never followed-up on IPC's objections to the Subpoena for months on end because they were waiting for defendants' productions to wrap up. Pl. Br. (Ind.) at 4 (ECF No. 11). If those claims are true, surely plaintiffs could have come forward with a modicum of specificity about what they asked the defendants for and did not receive that they expect to find exclusively with IPC. Yet they rely solely on the fact that they previously named IPC as a defendant and it is a pork processor. *See, e.g.,* Pl. Br. at 9. Plaintiffs also say there *may* be some gaps in what they have received from the defendants in the litigation to date, or perhaps there is something internal to IPC that they might find useful. *See, e.g.*, *id*. at 9 (claiming without support that "Indiana Packers *likely* received important industry information and *could have* shared that information with a Defendant or other Pork Integrator, thereby furthering the conspiracy, whether intentionally or inadvertently on Indiana Packers' part.") (Emphasis added). Such rank speculation is also insufficient. Plaintiffs have no right to "audit" a non-party's documents in order to

4

determine whether other parties have produced all responsive information in discovery. *ACI Worldwide Corp. v MasterCard Techs. LLC*, 2016 WL 3647850, at *5 (D. Neb. July 1, 2016) ("serving a document subpoena on a nonparty to confirm what was already produced by a party is not reasonable to avoid undue burden or expense, or proportional to the needs of the case.")

Furthermore, plaintiffs' "gap" theory is, charitably speaking, premature as they concede they have yet to even confer with the actual defendants about whether production "gaps" actually exist, or what such gaps represent and why they are essential to their case. *See* Decl. of J. Bourne at ¶ 22 (ECF No. 1224). And they point to no efforts to compel further responses from the actual defendants that have failed, as would be necessary before burdening a non-party to fill these purported "gaps." *Nachurs*, 2017 WL 1380460 at *6 ("[a] plaintiff does not demonstrate a compelling need to seek duplicative third-party requests simply because a party in the underlying action fails to comply with documents requests for the same information") (citation omitted).[2]

## II. Plaintiffs' Repurposed Discovery Requests Are Grossly Over Broad In Any Event

Plaintiffs' failure to explain specifically why the documents they seek are necessary after almost four years of litigation is unsurprising given that the Requests, which they simply repurposed from early discovery requests served on IPC when it actually was a

---

[2] Plaintiffs' "gap" argument proves too much. If, at some point, they establish that there is a bona fide gap where a highly relevant communication is missing, they could discuss such a gap with counsel for IPC to determine whether the putative missing records are available. The solution is not for IPC to conduct an extensive document review in advance just in case plaintiffs are unable to resolve their concerns about missing documents with the actual defendants.

5

party, are all-encompassing and facially overbroad. ***Subpoena Requests 1 and 2***, copied from Plaintiffs' First Request for Production No. 3, seek information about IPC's communications with other pork producers and Agri Stats, specifically, email, text messages and phone records. IPC has been dismissed, so information about its communications with Agri Stats or other pork producers is irrelevant, or to the extent such communications exist, plaintiffs can get them from the parties. Plaintiffs claim they seek "[i]nternal communications" at IPC "concerning its communications with Agri Stats" (Pl. Br. at 7), but those are far removed from the claims and defenses in this case.

***Subpoena Request 4*** seeks undefined categories of IPC "structured data," which plaintiffs only defined months after issuing the Subpoena to include more than a dozen categories of information relating to IPC's pork sales. *See* ECF No. 1240-2 at Ex. 6 (December 1, 2021 letter). Plaintiffs justify their Motion (Pl. Br. (Ind.) at 19) by claiming they seek information from IPC that is the "crux" of their conspiracy allegations, but they say nothing about how IPC's sales data purportedly even relates to their supply restriction conspiracy allegations against the defendants. That is because IPC's sales data would not show that the defendants were conspiring to cut pork supplies, so plaintiffs have no need for this data.

***Subpoena Request 9***, with its fifteen subparts seeking "[a]ll documents relating to Competitive Conditions in the market for Pork," is an extreme request copied from Plaintiffs' First Request for Production No. 18. The court in *Turkey* found that a similar request should be rejected "in full" due to its overbreadth when directed at parties to that litigation. *See* Order at 11, *In re Turkey Antitrust Litig.,* No. 1:19-cv-08318, ECF No. 305

6

(N.D. Ill. Oct. 6, 2021) ("Defendants cannot reasonably be expected to produce 'all' of their documents or communications 'related to Competitive Conditions' as Plaintiffs defined them."); *see also In re Subpoena Served on Affiliated Foods, Inc.*, 2021 WL 4439796, at *5 (N.D. Tex. Sept. 28, 2021) (quashing subpoena issued by the class plaintiffs in *Pork* that made similar requests for "all documents" as facially overbroad and unduly burdensome). The Court should reach the same conclusion here because "[a]ll documents" requests are "disproportionate or irrelevant to the needs of the … suit" where directed at a non-party's communications rather than the actions of the parties themselves, and the issuer "already has much of the relevant information." *In re Plowiecki*, 2021 WL 4973762, at *7 (D. Minn. Oct. 26, 2021) (Tunheim, J.). Plaintiffs try to distinguish *Turkey* and *Affiliated Foods*, noting that they proposed custodians and search terms after the fact. Pl. Br. (Ind.) at 23. But plaintiffs have moved to compel a response to the Subpoena as written, which requests "[a]ll documents" and "communications." Plaintiffs cannot attempt to enforce an overbroad subpoena by claiming that "all" does not mean "all." The Subpoena itself must meet the requirements of Rules 26 and 45. *Id.* at *8.

Plaintiffs attach a smattering of documents they claim establish the relevance of their all-encompassing Requests and infer that Judge Tunheim was wrong to dismiss IPC from the litigation (twice) (Pl. Br. at 7, 9), but those cherry-picked exemplars do not help their cause either. *None* relate to plaintiffs' conspiracy theory that the defendants used Agri Stats as a vehicle for a supply restrictions. *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 766 (D. Minn. 2020) (plaintiffs allege supply restriction conspiracy coordinated through Agri Stats). Plaintiffs instead submit a few trade association solicitations and other benign

7

documents evincing generalized market rumors and speculation. However plaintiffs try to spin them, those documents do not remotely suggest IPC maintains information essential for this litigation that cannot be obtained from the remaining parties. Further, as this Court has said, a Rule 45 subpoena is not a "launching pad for a purely exploratory mission" to see if a party can come up with new claims. *Deluxe Fin. Servs.*, 2017 WL 7369890, at *5.

* * *

Plaintiffs' requests are hopelessly overbroad. Having not even attempted to explain their relevance to this Court with any particularity and instead offering only conjecture that they might find something interesting if only the Court will let them root around in IPC's files (*see, e.g.*, "Indiana Packers almost certainly possesses [relevant] documents" (Pl. Br. (Ind.) at 19)), the Court should deny plaintiffs' Motion and quash the Subpoena, just as other courts have protected former parties subject to similar demands. *See*, *e.g.*, *Cook v. Howard*, 484 Fed. App'x 805, 812-813 (4th Cir. 2012) (finding subpoena properly quashed where "[t]he overwhelming majority of the materials … sought were directed at matters related to the dismissed claims against the [former defendant]"); *Kyner v. Loveridge*, 2019 WL 1778663, at *4 and *6 (S.D. Ind. Apr. 23, 2019) (granting motion to quash subpoenas because the third party was "no longer a defendant," and "her records are no longer relevant"); *Xcentric Ventures, LLC v. Borodkin*, 934 F. Supp. 2d 1125, 1144 (D. Ariz. 2013) (same).

8

### III. Plaintiffs' Demands Would Impose Six-Figure Burdens And Are Not Proportional

Even if the Requests sought relevant information, plaintiffs "'must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.' The court must enforce this duty." *In re Plowiecki*, 2021 WL 4973762, at *8 (quoting Fed. R. Civ. P. 45(d)(1)). Courts consider the following factors to determine whether a subpoena imposes an undue burden: "(1) the relevance of the information requested; (2) the need of the party for production; (3) the breadth of the request for production; (4) the time period covered by the subpoena; (5) the particularity with which the subpoena describes the requested production; and (6) the burden imposed." *In re Levaquin*, 2010 WL 4867407, at *2 (citation omitted); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011). Courts may also consider the proportionality factors set forth in Fed. R. Civ. P. 26(b)(1). *Deluxe Fin. Servs.*, 2017 WL 7369890, at *4. However, non-party status is a significant factor that is given special weight in evaluating undue burden. *Id*. (citing *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F. 3d 922, 927 (8th Cir. 1999)). Furthermore, the fact that IPC was previously a defendant, and was subjected to the burdens and costs of antitrust litigation for more than two years, should also weigh heavily in the Court's assessment of the additional burdens the Subpoena would impose were IPC required to comply. *See, e.g.*, *Spottswood v. Wash. Cnty. MN*, 2021 WL 838769,

at *6 (D. Minn. Mar. 5, 2021) (quashing subpoena to dismissed party where files sought were available from the remaining parties).[3]

Plaintiffs fail—without excuse—to describe with particularity the documents they seek and cannot obtain elsewhere (factors 1, 2, and 5 cited by the *Levaquin* court). The Requests are also simply copied from prior discovery requests served back in November 2018, and are grossly overbroad in scope and timeframe (factors 3 and 4), seeking more than thirteen years of documents and data, including "all Documents" or "Communications" relating to the pork industry. Put another way, the Subpoena seeks information that is not important to resolving the litigation and would impose an undue burden. Fed. R. Civ. P. 26(b)(1).

Plaintiffs argue their all-encompassing Requests should be enforced simply because they later offered to "narrow" them. Pl. Br. at 11 (attempting to distinguish the *Turkey* court's order). Plaintiffs' version of narrowing would require IPC to search the files of the very same nine custodians discussed in 2019 while IPC was a party using 116 search strings with vague terms like "disappearance" that are likely to generate thousands of false positives. *Id.* at 4-5. At the outset, such a request is inappropriate here. "A party cannot issue an unduly burdensome subpoena to force the opposing party to meet and confer on a narrower subpoena. Instead, a court must consider whether a subpoena meets the

---

[3] "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Misc. Docket Matter No. 1*, 197 F.3d at 927 (citation omitted). Plaintiffs deliberately misconstrue IPC's argument on this point, citing in this Court and in Indiana a string of cases for the unremarkable idea that a former party can be subject to a Rule 45 subpoena. Pl. Br. at 9-10; Pl. Br. (Ind.) at 24. IPC never argued it was immune from Rule 45. IPC's point is that it is a non-party and is not subject to the same burdens imposed on parties.

10

requirements of Rules 26 and 45." *In re Plowiecki*, 2021 WL 4973762, at *8. Plaintiffs have moved to compel a response to the Subpoena as written, not a different subpoena that they might have served that complies with Rule 45.[4]

Furthermore, demanding that IPC respond to the Subpoena by offering the same custodians and search terms it would have been required to include during the litigation demonstrates plaintiffs are trying to impose undue burdens here, not limit them. And as IPC has demonstrated, plaintiffs' Requests would require IPC's e-discovery vendor to process an estimated two terabytes of data at a cost of more than $70,000, before the parties even get to the point of engaging in a "search methodology" discussion plaintiffs contemplate as a cost savings, which based on IPC's experience with these counsel while it was a party in the litigation will require dozens of attorney hours. ECF No. 1240-2 at Ex. 10 (CDS Estimate). Once completed, IPC would then still need to retain a large review team to review the documents for responsiveness and privilege. Comparable antitrust cases have required reviews and productions of tens or hundreds of thousands of documents, and there is no reason to expect that the result would be different here given the breadth of these Requests, the time period involved, and the amount of data that would need to be searched. *Id*. The vendor fees and first level review costs alone are estimated to reach close to

---

[4] The Court also should not credit plaintiffs' claim they narrowed their demands by withdrawing Requests 3, 5-7, and 8, which are mostly copied from Rule 34 requests 5, 25, 29, 2 and 6, respectively. Those requests sought a litany of personal information about IPC employees, along internal policies and procedures that plaintiffs already received while IPC was a party. Plaintiffs had no basis to ask for these materials again, nor can they claim withdrawing requests that should never have been propounded in the first place demonstrates that they are reasonable.

11

$300,000. *Id.* Those costs do not even account for higher level reviews by IPC's counsel, or for other tasks, such as preparation of a privilege log, which would be substantial.

Plaintiffs do not—and cannot—credibly dispute the burdens these demands would impose. So when confronted with IPC's estimated costs, plaintiffs could muster no better response than the absurd suggestion that IPC is somehow *benefitted* by spending hundreds of thousands of dollars on unnecessary document reviews to respond to the Subpoena. Pl. Br. (Ind.) at 21. Plaintiffs cannot so easily cast aside the burdens and costs their Requests would impose by suggesting attorney review is for IPC's benefit. In reality, courts shift attorney review costs to the requesting party where they seek compliance with overly broad and invasive requests. *See, e.g.*, *In re Am. Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016) (finding that shifting attorneys' fees for document reviews encourages requesting parties to keep their requests narrow and specific to the issues at hand in the litigation). Plaintiffs could not care less about how much their overly broad demands might cost IPC in attorney review costs because they have neither offered to, nor expect they would be required to, pay for any of those costs.[5]

Plaintiffs also brazenly accuse IPC of shopping for vendors who would quote a high fee in order to manufacture its claims of burden. Pl. Br. (Ind.) at 21. Not only is that

---

[5] To the extent the Court were to order IPC to comply with any portion of the Subpoena—and it should not—compliance should be conditioned on an order that plaintiffs pay all reasonable attorney fees incurred in connection with its efforts to comply. *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (finding that Rule 45(d)(2)(B)(ii) "made cost shifting mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena," and concluding that $20,000 is "significant" and that sufficient cost must be shifted "to render the remainder non-significant." *See also, e.g.*, *Angell v. Kelly*, 234 F.R.D. 135, 137 (M.D.N.C. 2006) (noting that courts have "specifically permitted attorney's fees" for "conducting privilege review of documents for purposes of production") (collecting cases).

12

accusation baseless, it is demonstrably false. IPC's vendor is the same vendor it retained for the litigation when it was a party, is familiar with the data at issue, and was well situated to provide a good faith estimate as to what it would cost to process and review the two-terabytes encompassed by plaintiffs' Requests. Not surprisingly, plaintiffs did not present the Court here or in Indiana with any particularized estimates showing that similar undertakings by other parties in antitrust litigation were materially less expensive. As it is with their relevance arguments, there is nothing behind the empty claim (Pl. Br. (Ind.) at 21) that they "expect" costs would be less.[6] However, for comparison purposes, and as set forth in the Declaration of Jaime Stilson, IPC has obtained a separate processing estimate for the two terabytes of data using a different vendor, and those costs are projected at approximately $100,000 using that vendor.  *See* Decl. of Jaime Stilson at 2.

Unable to defend the outsized costs their demands would impose, plaintiffs make sweeping statements as to IPC's purported size, and speculate that IPC is a big company that can simply afford to be burdened. Pl. Br. at 7; Pl. Br. (Ind.) at 19-20. But corporate entities, big or small, are not subjected to lesser protections than other subpoena recipients. *See, e.g., Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 3288058, at *14 (D. Kan. June 18, 2020) ("The court will not require Spirit to shoulder needless litigation expenses simply because it is a big company."). Plaintiffs are also hard pressed to credibly argue that IPC is a corporate behemoth that can have oppressive non-party discovery heaped on it at will

---

[6] Plaintiffs quibbled with some of the projected licensing and project management costs, claiming those should be excluded from the estimate, but IPC *did* itemize those licensing costs and project management costs. Pl. Br. (Ind.) at 21, n. 10; *see also* ECF No. 1240-2 at Ex. 10 (CDS Estimate). In any event, these fees, while important, are obviously not the main cost drivers here.

based on the thinnest of justifications. IPC is a regional pork processor, and when it was a party, plaintiffs intentionally chose to exclude IPC from the allegations directed at defendants with purportedly significant market share because IPC's relatively small size undermined plaintiffs' claims about defendants' market control. *See* Third Am. Compl. ¶ 88.

In short, plaintiffs' Motion should be denied and IPC's Motion to Quash should be granted. The Court should also decline plaintiffs' invitation to parse these Requests to try find a subset of documents that might be relevant and not cause undue burden. Plaintiffs had nine months to reasonably tailor their Subpoena, and they instead dragged this process out, went silent for months at a time, only to re-emerge and then abruptly move to compel. ECF No. 1240-2 (IPC Br. (Ind.) at 5, 8-9). They have also rejected reasonable offers to produce information that would not require a custodial search but would still provide responsive information. ECF No. 1240-2 at Ex. 11 (December 28, 2021 letter). To rewrite plaintiffs' Subpoena in these circumstances "would be to unfairly reward [them] despite [the] failure to comply with Federal Rule of Civil Procedure 45's mandate that the party serving a subpoena take reasonable steps to avoid the imposition of an undue burden." *Donald v. Outlaw*, 2020 WL 2899689, at *9 (N.D. Ind. June 2, 2020); *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 592 (N.D. Ill. 2020) (refusing to determine which requests were appropriate and which were not because it "is not a court's job to become, in effect, a lawyer for one of the parties"). For these same reasons, plaintiffs' suggestion that they are willing to negotiate custodians and search terms *after* moving to compel is also improper and "too little, too late." *Little v. JB Pritzker for Gov.*, 2020 WL 1939358,

14

at *7 (N.D. Ill. Apr. 22, 2020). The time for negotiation was *before* filing their Motion, not after running to Court to enforce facially oppressive demands for documents they do not need and taking unreasonable positions that treat IPC as though it were never dismissed from the litigation (and *before* IPC had to incur the attorneys' fees associated with opposing the Motion). Plaintiffs moved to compel on these Requests and this record, and their Motion should be denied. *In re Plowiecki*, 2021 WL 4973762, at *8.

## CONCLUSION

IPC respectfully requests that the Court deny plaintiffs' Motion to Compel and grant IPC's Motion to Quash, and award its expenses and fees incurred with these matters.

Dated: April 29, 2022

Respectfully submitted,

*/s Jaime Stilson*
Jaime Stilson (#392913)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402-1498
(612) 492-6746
stilson.jaime@dorsey.com

Britt M. Miller (*pro hac vice*)
Robert Entwisle (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

William Stallings (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000

15

wstallings@mayerbrown.com

*Counsel for Indiana Packers Corporation*

747498677