# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Case No. 0:18-cv-01776-JRT-HB |
| This Document Relates To:<br><br>ALL COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTIONS | |

**DECLARATION OF BLAINE FINLEY IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND FOR APPOINTMENT OF <u>LEAD COUNSEL AND PLAINTIFFS' STEERING COMMITTEE</u>**

I, Blaine Finley, declare and state as follows:

1.      I am a partner at Cuneo Gilbert & LaDuca, LLP ("CGL"). During the pendency of this litigation, my firm has acted as co-lead counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"). I make this declaration based on my personal knowledge and if called as a witness, I could and would competently testify to the matters stated herein.

2.      I submit this declaration in support of CIIPPs' Motion for Class Certification and for Appointment of Lead Counsel and Plaintiffs' Steering Committee. CGL requests that I succeed Mr. Cuneo in the role of CIIPP co-lead counsel. Along with Shawn Raiter

of Larson King, LLP, Jonathan Cuneo of CGL was appointed interim co-lead counsel for CIIPPs at the outset of this litigation. ECF No. 151. The proposed change reflects that I have assumed day-to-day responsibility at CGL for prosecuting the action. Although I have done the considerable bulk of the work in this matter for CGL, Mr. Cuneo continues to be actively involved in day-to-day management of the CIIPP actions and will continue to serve as interim co-lead counsel for CIIPPs, until this motion is granted or denied. Even after this motion is granted, Mr. Cuneo will continue to be involved. Over the past five years, I have become familiar with Mr. Raiter through our work together on a number of different matters, including multiple actions pursuing price-fixing claims on behalf of commercial indirect purchaser plaintiff classes. We work well together and will continue to prosecute the CIIPP claims cooperatively.

3.      CGL has spent time investigating the nature of the conspiracy at issue and its effect on Commercial and Institutional Indirect Purchaser Plaintiffs. CGL has taken other steps to advance its clients' interests in this case, including briefing multiple rounds of motions to dismiss and engaging in extensive discovery negotiations and motion practice.

4.      I and my firm possess considerable expertise in representing commercial indirect purchaser plaintiff classes in matters alleging price-fixing. In 2012, Judge Marianne Battani of the Eastern District of Michigan appointed CGL and Jonathan W. Cuneo interim co-lead counsel for indirect purchaser automobile dealerships in MDL 2311: *In re Automotive Parts Antitrust Litigation*, 2:12-md-02311 (E.D. Mich.).  Mr. Cuneo was appointed to represent putative classes of thousands of automobile dealers bringing dozens

2

of actions stemming from the largest antitrust investigation in the history of the U.S. Department of Justice's Antitrust Division.

5.     The *Auto Parts* litigation involves more than 45 different conspiracies (each their own case) and more than 160 different defendants, most of which are foreign companies. It has been described as the largest, most complex, antitrust litigation in U.S. history. The *Auto Parts* litigation continues today and has resulted in well over $1 billion in indirect purchaser settlements. Under the leadership of Mr. Cuneo along with that of my co-lead counsel Shawn Raiter and Don Barrett, the commercial indirect purchaser automobile dealership plaintiffs have recovered over $400 million in settlements.

6.     Before *Auto Parts*, there had been few, if any, successful antitrust actions brought for commercial indirect purchaser plaintiff classes, like the CIIPPs. CGL has subsequently come to lead other commercial indirect purchaser plaintiff actions, including *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.) (representing a putative class of indirect purchaser pharmacy resellers bringing indirect purchaser actions against drug manufacturers); *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD (S.D. Cal.) (lead counsel for a class of commercial food preparer indirect purchasers); *In re Turkey Antitrust Litig.*; Case No. 1:20-cv-02295 (N.D. Ill.) (settlement class counsel for commercial indirect purchasers of turkey); and *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB (D. Minn.) (co-lead counsel for a putative class of commercial and institutional indirect purchasers).

7.     CGL is the sole court-appointed lead counsel for the Commercial Food Preparer Plaintiff Class in *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-

md-02670-JLS-MDD (S.D. Cal.). In *Packaged Seafood*, the plaintiffs allege a price-fixing conspiracy between the leading packaged tuna manufacturers—Chicken of the Sea, StarKist, and Bumble Bee, and their parent companies. *Id.* Like the present cases, the *Packaged Seafood* litigation involves claims unique to a class of commercial indirect purchasers. Working side by side with lead counsel, I have managed all activities relating to the prosecution of the *Packaged Seafood* commercial indirect purchaser plaintiff litigation for the substantial majority of the matter's duration. Together, Mr. Cuneo and I have litigated the motion for class certification and corresponding expert witness materials. I have taken and defended depositions in the matter, including expert witness depositions, and appeared in court on numerous occasions. CGL has received preliminary approval of a $6.5 million partial settlement in the matter.

8.     In *In re Turkey Antitrust Litig.*, No 20-2296 (N.D. Ill.), I have been appointed settlement co-counsel together with Sterling Aldridge of Barrett Law Group, P.A. for the commercial indirect purchaser class in a partial settlement of the matter that has received final approval. Discovery in the case is ongoing, and I have led, managed, and participated extensively in all activities relating to the prosecution of the commercial indirect purchaser plaintiff litigation for the entirety of the matter's duration.

9.     In *In re Cattle and Beef Antitrust Litig.*, No. 20-1319 (D. Minn.), as court-appointed co-lead counsel along with Sterling Aldridge of Barrett Law Group, P.A., and Shawn Raiter of Larson King, LLP, I have led, managed, and participated extensively in all activities relating to the prosecution of the commercial indirect purchaser plaintiff litigation for the entirety of the matter's duration.

10.     In this pork litigation, I have worked closely with co-lead counsel and an internal attorney team at CGL consisting of Jennifer Kelly, Daniel Cohen, and Amanda Lewis and have led, managed, and participated extensively in all activities relating to the prosecution of the commercial indirect purchaser plaintiff litigation for the entirety of this matter's duration.

11.     Before filing the first CIIPP action in this litigation, CGL invested significant time and resources into this litigation, including investigating the nature of the alleged conspiracy and its effect on the CIIPPs, investigating the supply chain, and coordinating strategy with co-counsel. CGL and the proposed co-lead counsels' firms have already advanced thousands of dollars in developing the case in tandem with the other class plaintiff groups. CGL and the proposed co-lead counsel's firm have participated extensively in the discovery negotiation activities taking place in this matter, including the negotiation of custodians, requests for production of documents, and structured data productions, and have engaged in extensive party and third-party discovery, including motion practice when necessary.

12.     CGL maintains a commitment to diversity, and as part of the prosecution of *Pork Antitrust*, at least one LGBTQIA+ non-attorney team member at CGL has performed extensive, substantive work on the prosecution of the CIIPP matter, and the same team at CGL is expected to continue to work on the instant litigation.

13.     All of the CIIPP named plaintiffs have participated meaningfully in this litigation. CIIPP named plaintiffs have undergone document collections, and altogether have produced discovery amounting to thousands of unique documents. In addition, CIIPP

named plaintiffs stand ready to be deposed and are supplying potential deposition dates to counsel for the defendants, as requested.

14.    Neither CIIPP named plaintiffs nor CIIPP counsel have any known conflicts of interest will compromise their representation of the proposed classes.

**CGL's Qualifications**

15.    CGL devotes the majority of its practice to the representation of clients involved in complex liability and class action litigation involving antitrust, securities, corporate governance, consumer protection, and products liability. The firm's résumé is attached hereto as Exhibit A.

16.    Over the past several years, I have productively worked with interim lead counsel for the other plaintiff classes in this matter, and as a general matter, CGL is committed to coordinating effectively with other plaintiffs' groups in litigating this case, under whatever organization structure the Court should choose to create. Indeed, collegiality is a core virtue of our firm.

17.    All CIIPP counsel and CIIPP named plaintiff support the instant motion.

18.    With 18 attorneys and five locations, CGL possesses the resources necessary to serve as one of the lead firms in this litigation. We are ready and willing to invest the time and expenses needed to bring this action to a successful resolution.

**Exhibits**

19.    Attached to this declaration as Exhibit A is CGL's firm resume, which summarizes the experience and qualifications of myself and the attorneys in the firm.

20.     Attached as Exhibit 1 is a true and correct copy of Dr. Steve R. Meyer, Dr. Barry Goodwin, *Structure and Importance of the U.S. Pork Industry*, NPPC, *available at* https://nppc.org/wp-content/uploads/2021/06/Competition_Paper_FINALWD.pdf.

21.     Attached as Exhibit 2 is a true and correct copy of Brian Deese, Sameera Fazili, and Bharat Ramamurti, *Addressing Concentration in the Meat-Processing Industry to Lower Food Prices for American Families*, September 8, 2021, *available at* https://www.whitehouse.gov/briefing-room/blog/2021/09/08/addressing-concentration-in-the-meat-processing-industry-to-lower-food-prices-for-american-families.

22.     Attached as Exhibit 3 is a true and correct copy of Samantha L. Padilla, Lee L. Schulz, Kate Vaiknoras, Matthew J. MacLachlan, "COVID-19 Working Paper: Changes in Regional Hog Slaughter During COVID-19," Working Paper #AP-095 (December 2021),     USDA     Economic     Research     Service,     *available     at* https://www.ers.usda.gov/webdocs/publications/102784/ap-095.pdf?v=2095.3.

23.     Attached as Exhibit 4 is a true and correct copy of Fordham, Evie, "Smithfield Foods CEO Ken Sullivan to retire in early 2021," FoxBusiness, (October 19, 2020), *available at* https://www.foxbusiness.com/economy/smithfield-foods-ceo-ken-sullivan-retiring.

24.     Attached as Exhibit 5 is a true and correct copy of the Expert Report of Michael A. Williams (filed under seal).

25.     Attached as Exhibit 6 is a true and correct copy of a document identified by Bates Number CLMNS-0000031646 (filed under seal).

26.     Attached as Exhibit 7 is a true and correct copy of Meat+Poultry, *High hog production costs lead to loss at Smithfield*, June 16, 2009, *available at* https://www.meatpoultry.com/articles/1056-high-hog-production-costs-lead-to-loss-at-smithfield.

27.     Attached as Exhibit 8 is a true and correct copy of Steven Meyer, *What Does the Future Hold for the U.S. Swine Industry?*, Kansas State University, 2010 Swine Profitability Conference, *available at* https://www.asi.k-state.edu/doc/swine-info/2010-spc-proceedings.pdf.

28.     Attached as Exhibit 9 is a true and correct copy of a document identified by Bates Number SBF0149251 (filed under seal).

29.     Attached as Exhibit 10 is a true and correct copy of a document identified by Bates Number SBF0149252 (filed under seal).

30.     Attached as Exhibit 11 is a true and correct copy of a document identified by Bates Number CLMNS-0000030331 (filed under seal).

31.     Attached as Exhibit 12 is a true and correct copy of Taphorn Dep. 167:2-7; 169:18-170:19 (filed under seal).

32.     Attached as Exhibit 13 is a true and correct copy of a document identified by Bates Number SMITHFIELD01062388 (filed under seal).

33.     Attached as Exhibit 14 is a true and correct copy of a document identified by Bates Number SMITHFIELD01062391 (filed under seal).

34.     Attached as Exhibit 15 is a true and correct copy of Betsy Freese, *Pork Powerhouses 2008: The Big Squeeze*, Successful Farming, Sept. 4, 2008, available at agriculture.com/livestock/hogs/The-big-squeeze-Pork-Powerhouses-2008_283-ar4443.

35.     Attached as Exhibit 16 is a true and correct copy of Q4 2008 Hormel Foods Corporation Earnings Call Transcript (Nov. 25, 2008).

36.     Attached as Exhibit 17 is a true and correct copy of Q1 2009 Hormel Foods Corporation Earnings Call Transcript (Feb. 19, 2009).

37.     Attached as Exhibit 18 is a true and correct copy of Smithfield Foods at BMO Capital Markets Agriculture, Protein & Fertilizer Conference – Final (May 13, 2009).

38.     Attached as Exhibit 19 is a true and correct copy of a document identified by Bates Number TF-P-002172392 (filed under seal).

39.     Attached as Exhibit 20 is a true and correct copy of a document identified by Bates Number TF-P-000514416 (filed under seal).

40.     Attached as Exhibit 21 is a true and correct copy of Q2 2009 Hormel Foods Corporation Earnings Conference Call – Final (May 21, 2009).

41.     Attached as Exhibit 22 is a true and correct copy of a document identified by Bates Number TF-P-001528132 (filed under seal).

42.     Attached as Exhibit 23 is a true and correct copy of a document identified by Bates Number TF-P-000014052 (filed under seal).

43.     Attached as Exhibit 24 is a true and correct copy of Q3 2009 Tyson Foods, Inc. Earnings Conference Call (August 3, 2009).

44.     Attached as Exhibit 25 is a true and correct copy of a document identified by Bates Number TF-P-000179764 (filed under seal).

45.     Attached as Exhibit 26 is a true and correct copy of a document identified by Bates Number TF-P-000179765 (filed under seal).

46.     Attached as Exhibit 27 is a true and correct copy of a document identified by Bates Number AGSTAT_P-0003383857 (filed under seal).

47.     Attached as Exhibit 28 is a true and correct copy of a document identified by Bates Number CMLNS-0000022228 (filed under seal).

48.     Attached as Exhibit 29 is a true and correct copy of JBS 2008 Earnings Conference Call (August 13, 2009).

49.     Attached as Exhibit 30 is a true and correct copy of a document identified by Bates Number TF-P-001718524 (filed under seal).

50.     Attached as Exhibit 31 is a true and correct copy of a document identified by Bates Number SBF0181317 (filed under seal).

51.     Attached as Exhibit 32 is a true and correct copy of a document identified by Bates Number DPP-Pork0000000031 (filed under seal).

52.     Attached as Exhibit 33 is a true and correct copy of a document identified by Bates Number AGSTAT-P-0002613772 (filed under seal).

53.     Attached as Exhibit 34 is a true and correct copy of Copa Dep. 20:4-18 (filed under seal).

54.     Attached as Exhibit 35 is a true and correct copy of Bollum Dep. 364:8-366:18 (filed under seal).

55.     Attached as Exhibit 36 is a true and correct copy of Copa Dep. 106:6-11 (filed under seal).

56.     Attached as Exhibit 37 is a true and correct copy of a document identified by Bates Number TF-P-000298231 (filed under seal).

57.     Attached as Exhibit 38 is a true and correct copy of a document identified by Bates Number TF-P-000314709 (filed under seal).

58.     Attached as Exhibit 39 is a true and correct copy of a document identified by Bates Number TRI0000433907 (filed under seal).

59.     Attached as Exhibit 40 is a true and correct copy of Ginther Dep. 369:9-377:17 (filed under seal).

60.     Attached as Exhibit 41 is a true and correct copy of a document identified by Bates Number SBF0623353 (filed under seal).

61.     Attached as Exhibit 42 is a true and correct copy of Edwards Dep. 172:8-174:4 (filed under seal).

62.     Attached as Exhibit 43 is a true and correct copy of Copa Dep. 118:19-133:6 (filed under seal).

63.     Attached as Exhibit 44 is a true and correct copy of a document identified by Bates Number SMITHFIELD00676666 (filed under seal).

64.     Attached as Exhibit 45 is a true and correct copy of a document identified by Bates Number SMITHFIELD00456587 (filed under seal).

65.     Attached as Exhibit 46 is a true and correct copy of a document identified by Bates Number AGSTAT-P-0002817067 (filed under seal).

11

66.     Attached as Exhibit 47 is a true and correct copy of a document identified by Bates Number SMITHFIELD00742363 (filed under seal).

67.     Attached as Exhibit 48 is a true and correct copy of a document identified by Bates Number TF-P-000100077 (filed under seal).

68.     Attached as Exhibit 49 is a true and correct copy of the referenced tab titled "Competitors – sept" from native spreadsheet produced as Bates Number TF-P-000220756 (filed under seal).

69.     Attached as Exhibit 50 is a true and correct copy of a document identified by Bates Number TF-P-000218761 (filed under seal).

70.     Attached as Exhibit 51 is a true and correct copy of the referenced tab titled "March" from native spreadsheet produced as Bates Number TF-P-000218763 (filed under seal).

71.     Attached as Exhibit 52 is a true and correct copy of a document identified by Bates Number TF-P-002076990 (filed under seal).

72.     Attached as Exhibit 53 is a true and correct copy of a document identified by Bates Number TF-P-002076991 (filed under seal).

73.     Attached as Exhibit 54 is a true and correct copy of a document identified by Bates Number TF-P-002105264 (filed under seal).

74.     Attached as Exhibit 55 is a true and correct copy of a document identified by Bates Number TF-P-002105265 (filed under seal).

75.     Attached as Exhibit 56 is a true and correct copy of a document identified by Bates Number TF-P-002108462 (filed under seal).

76.     Attached as Exhibit 57 is a true and correct copy of a document identified by Bates Number TF-P-002108463 (filed under seal).

77.     Attached as Exhibit 58 is a true and correct copy of a document identified by Bates Number TF-P-002110757 (filed under seal).

78.     Attached as Exhibit 59 is a true and correct copy of a document identified by Bates Number TF-P-002110758 (filed under seal).

79.     Attached as Exhibit 60 is a true and correct copy of a document identified by Bates Number TF-P-002110288 (filed under seal).

80.     Attached as Exhibit 61 is a true and correct copy of a document identified by Bates Number TF-P-002110289 (filed under seal).

81.     Attached as Exhibit 62 is a true and correct copy of a document identified by Bates Number TF-P-002112531 (filed under seal).

82.     Attached as Exhibit 63 is a true and correct copy of a document identified by Bates Number TF-P-002112532 (filed under seal).

83.     Attached as Exhibit 64 is a true and correct copy of a document identified by Bates Number TF-P-000228062 (filed under seal).

84.     Attached as Exhibit 65 is a true and correct copy of a document identified by Bates Number SBF0459029 (filed under seal).

85.     Attached as Exhibit 66 is a true and correct copy of a document identified by Bates Number SBF0459031 (filed under seal).

86.     Attached as Exhibit 67 is a true and correct copy of a document identified by Bates Number SBF0459032 (filed under seal).

87.     Attached as Exhibit 68 is a true and correct copy of a document identified by Bates Number TF-P-000513839 (filed under seal).

88.     Attached as Exhibit 69 is a true and correct copy of a document identified by Bates Number AGSTAT-P-0002621876 (filed under seal).

89.     Attached as Exhibit 70 is a true and correct copy of Kyle Bagentose, *Local concern over killer pig virus spreading*, Bucks County Courier Times, May 4, 2014, *available at* https://www.buckscountycouriertimes.com/story/news/2014/05/04/local-concern-over-killer-pig/18032473007/.

90.     Attached as Exhibit 71 is a true and correct copy of a document identified by Bates Number HFC-PORKAT000095315 (filed under seal).

91.     Attached as Exhibit 72 is a true and correct copy of a document identified by Bates Number HFC-PORKAT0000068283 (filed under seal).

92.     Attached as Exhibit 73 is a true and correct copy of a document identified by Bates Number HFC-PORKAT0000140175 (filed under seal).

93.     Attached as Exhibit 74 is a true and correct copy of Peil Dep. 218:14-224:18 (filed under seal).

94.     Attached as Exhibit 75 is a true and correct copy of a document identified by Bates Number HFC-PORKAT0000139342 (filed under seal).

95.     Attached as Exhibit 76 is a true and correct copy of a document identified by Bates Number SBF0222683 (filed under seal).

96.     Attached as Exhibit 77 is a true and correct copy of a document identified by Bates Number HFC-PORKAT0000064622 (filed under seal).

14

97.     Attached as Exhibit 78 is a true and correct copy of a document identified by Bates Number HFC-PORKAT0000064626 (filed under seal).

98.     Attached as Exhibit 79 is a true and correct copy of a document identified by Bates Number HFC-PORKAT0000064704 (filed under seal).

99.     Attached as Exhibit 80 is a true and correct copy of a document identified by Bates Number HFC-PORKAT0000130969 (filed under seal).

100.    Attached as Exhibit 81 is a true and correct copy of Taphorn Dep. 167:2-7 (filed under seal).

101.    Attached as Exhibit 82 is a true and correct copy of a document identified by Bates Number SBF0391616 (filed under seal).

102.    Attached as Exhibit 83 is a true and correct copy of a document identified by Bates Number HFC-PORKAT0000272985 (filed under seal).

103.    Attached as Exhibit 84 is a true and correct copy of a document identified by Bates Number TF-P-001381827 (filed under seal).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 2, 2022, in Washington, District of Columbia.

*/s/ Blaine Finley*
Blaine Finley

15