# UNITED STATES DISTRICT COURT
## DISTRICT COURT OF MINNESOTA

IN RE PORK ANTITRUST
LITIGATION


This Document Relates To:

THE DIRECT PURCHASER
PLAINTIFF ACTION

Case No. 18-cv-01776 (JRT-HB)

**MEMORANDUM OF LAW IN
SUPPORT OF DIRECT
PURCHASER PLAINTIFFS'
MOTION FOR INTERIM
PAYMENT OF ATTORNEYS'
FEES, CURRENT AND
ONGOING LITIGATION
EXPENSES, AND SERVICE
AWARDS**

970343.18

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.   CLASS COUNSEL DEDICATED TREMENDOUS RESOURCES TO THIS MATTER AND FACED SIGNIFICANT RISKS TO SUCCESSFULLY RESOLVE THIS CASE WITH THE SETTLED DEFENDANTS ........................................................................................... 3

    A.    Class Counsel Dedicated Tremendous Resources to Resolve DPPs' Claims Against the Settled Defendants ........................................... 3

    B.    Class Counsel Faced Significant Risk of Nonpayment ................................ 5

III.  THE REQUESTED INTERIM FEE AWARD IS APPROPRIATE UNDER CONTROLLING LAW ..................................................................................... 6

    A.    DPPs Seek a Percentage of the Settlement Fund as an Interim Award of Fees ................................................................................ 7

        1.    The Benefit Conferred on the Class is Substantial ......................... 10

        2.    DPPs Faced Substantial Risk in Pursuing the Action ..................... 11

        3.    Class Counsel Faced Complex Issues ............................................... 12

        4.    Class Counsel Utilized Significant Skill and Dedicated Substantial Resources to Achieve the Settlements .......................... 13

        5.    Prior to the Hearing, Interim Co-Lead Counsel Will Report Any Reaction of the Class to this Motion ........................................ 15

        6.    The Requested Fee Percentage is Appropriate and Supported by Authority ..................................................................................... 16

    B.    A Lodestar Cross-Check Confirms that the Fee Requested is Appropriate ................................................................................... 17

IV.  CLASS COUNSEL SHOULD BE REIMBURSED FOR CURRENT AND ONGOING LITIGATION EXPENSES ............................................................ 18

V.   THE CLASS REPRESENTATIVES SHOULD RECEIVE INTERIM SERVICE AWARDS ..................................................................................... 21

VI.  CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ampicillin Antitrust Litig.*,
    526 F. Supp. 494 (D.D.C. 1981) .............................................................................16

*Arenson v. Bd. of Trade*,
    372 F. Supp. 1349 (N.D. Ill. 1974) ......................................................................14

*In re Auto Parts Antitrust Litig.*,
    No. 12-2311, 2015 WL 13715591 (E.D. Mich. Dec. 7, 2015) ...............................21

*In re Auto Parts Antitrust Litig.*,
    No. 12-2311, 2016 WL 9459355 (E.D. Mich. Nov. 29, 2016).................................21

*In re Auto Parts Antitrust Litig.*,
    No. 12-2311, 2018 WL 7108072 (E.D. Mich. Nov. 5, 2018)..................................21

*In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*,
    MDL No. 1871, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012).................................13

*BCJJ, LLC v. LeFevre*,
    No. 8:09-cv-00551, 2011 WL 5597349 (M.D. Fla. Nov. 17, 2011)........................14

*Blue Shield of Va. v. McCready*,
    457 U.S. 465 (1982)................................................................................................16

*Blum v. Stenson*,
    465 U.S. 886 (1984)................................................................................................17

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..................................................................................................8

*Brewer v. S. Union Co.*,
    607 F. Supp. 1511 (D. Colo. 1984)........................................................................14

*In re California Micro Devices Sec. Litig.*,
    965 F. Supp. 1327 (N.D. Cal. 1997) ......................................................................21

*Caligiuri v. Symantec Corp.*,
    855 F.3d 860 (8th Cir. 2017) ............................................................................7, 17

*In re Capacitors Antitrust Litig.*,
    No. 3:17-md-02801-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018)..................9

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ..............................................................7, 10, 11

*Carlson v. C.H. Robinson Worldwide, Inc.*,
  No. 02-3780, 2006 WL 2671105 (D. Minn. Sept. 18, 2006)..................................16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  MDL No. 1917, 2016 WL 721680 (C.D. Cal. Jan. 28, 2016) ................................11

*In re Combustion, Inc.*,
  968 F. Supp. 1116 (W.D. La. 1997)......................................................................16

*In re Folding Carton Antitrust Litig.*,
  84 F.R.D. 245 (N.D. Ill. 1979)..............................................................................10

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. Mar. 30. 2012) ..................................................................13

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) ....................................................................................6

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) .............................................................................7, 17

*Khoday v. Symantec Corp.*,
  No. 11-CV-180, 2016 WL 1637039 (D. Minn. Apr. 5, 2016)....................... *passim*

*Krueger v. Ameriprise Fin., Inc.*,
  No. 11-CV-02781, 2015 WL 4246879 (D. Minn. July 13, 2015) ..........................19

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
  847 F.3d 619 (8th Cir. 2017) ..................................................................................7

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................................12

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)...........................................................................................8, 18

*In re Monosodium Glutamate Antitrust Litig.*,
  2003 WL 297276 (D. Minn. Feb. 6, 2003) ..............................................................8

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004) ................................................................................21

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ..................................................................................9

*In re Packaged Ice Antitrust Litig.*,
  No. 08-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)..............................................10

*In re Packaged Ice Antitrust Litig.*,
  No. 08-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ........................................7, 15

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ...................................................................................................18

*In Re Polyurethane Foam Antitrust Litig.*,
  No. 10-2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015).................................................15

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ...............................................................................10, 21

*In re Processed Egg Prod. Antitrust Litig.*,
  No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012)................................................9

*In re Schering-Plough Corp. Enhance Secs. Litig.*,
  No. CIV.A. 08-2177 DMC, 2013 WL 5505744 (D.N.J. Oct. 21, 2013) ................................13

*In re Sulzer Orthopedics, Inc.*,
  398 F.3d 778 (6th Cir. 2005) .......................................................................................................7

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
  No. 07-5634, 2015 WL 3396829 (N.D. Cal. May. 26, 2015)................................................21

*Trist v. First Fed. Savings & Loan Ass'n of Chester*,
  89 F.R.D. 8 (E.D. Pa. 1980).......................................................................................................14

*In re U.S. Bancorp Litig.*,
  291 F.3d 1035 (8th Cir. 2002) ...............................................................................................8, 16

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,
  643 F. Supp. 2d 1094 (D. Minn. 2009).......................................................................................6

*Vendo Co. v. Lektro-Vend Corp.*,
  433 U.S. 623 (1977)....................................................................................................................11

*In re Vitamins Antitrust Litig.*,
  No. 99-197, 2001 WL 34312839 (D.D.C. 2001) .....................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)..........................................................................................................11

*In re Warner Comm. Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985).............................................................................................14

*Waters v. Intern. Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ....................................................16

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...........................................14

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02-3288, 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ...............21

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ..................................... *passim*

*Yarrington v. Solvway Pharms., Inc.*,
    697 F. Supp. 2d 1057 (D. Minn. 2010) ...........................6, 15, 16, 19

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    395 U.S. 100 (1969) .....................................................................16

*Zillhaver v. UnitedHealth Group, Inc.*,
    646 F. Supp. 2d 1075 (D. Minn. 2009) ...........................................22

## Other Authorities

Federal Rule of Civil Procedure 23(h) .................................................6, 18

A. Conte, *Attorney Fee Awards* § 2.08 (3d ed. 2004) ...............................19

Brian T. Fitzpatrick, *A Fiduciary Judge's Guide to Awarding Fees in Class
    Actions*, 89 Fordham L. Rev. 1151 (2021) ......................................16

Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics
    Walks*, 65 Fordham L. Rev. 247, 248 (1996) ...................................17

Manual for Complex Litigation (Fourth), § 13.21 ..................................21

## I.   __INTRODUCTION__

After almost four years of hard-fought litigation in this complex antitrust class action with no guarantee of compensation, Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs ("DPPs")[1] have secured settlements totaling $101,864,300 ("Settlement Fund") with Defendants JBS[2] and Smithfield,[3] and have commenced the claims process to disburse the net proceeds of the Settlement Fund to qualified Settlement Class members. *See* ECF No. 1208. These settlements reflect the skill, expertise, and hard work of Interim Co-Lead Counsel and other Direct Purchaser Plaintiff counsel,[4] and the benefit to Settlement Class members is substantial, real, and concrete.

Courts in this District use the "percentage-of-the-fund" approach to award attorneys' fees. As such, DPPs respectfully ask the Court to award Class Counsel 33 1/3% of the Settlement Fund or $33,954,766.66 as attorneys' fees, $5 million as reimbursement

---

[1] Interim Co-Lead Counsel are Lockridge Grindal Nauen P.L.L.P. and Pearson, Simon & Warshaw, LLP. *See* Order of Oct. 15, 2018 (ECF No. 149).

[2] Defendants JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company (collectively, "JBS").

[3] Defendant Smithfield Foods, Inc. ("Smithfield" and, with JBS, "Settled Defendants").

[4] Under Co-Lead Counsel's direction, 14 other firms prosecuted this case on DPPs' behalf and, together with DPPs' Interim Co-Lead Counsel, they are referred to collectively in this Memorandum as "Class Counsel." At all times, Interim Co-Lead Counsel directed and organized Class Counsel's work. *See* Declaration of W. Joseph Bruckner filed concurrently herewith ("Bruckner Decl."), ¶ 2. Interim Co-Lead Counsel propose that they be given discretion to allocate an award of attorneys' fees among Class Counsel. Interim Co-Lead Counsel's good-faith determination will reflect each individual Class Counsel's contribution to the institution, prosecution, and resolution of the litigation.

for current and ongoing litigation expenses,[5] and $25,000.00 in service awards to each of the four named DPP Class Representatives ($100,000.00 total).

All Settlement Class members will have notice and an opportunity to be heard on this Motion. In the Court-approved notice regarding the claims process, on April 15, 2022 Interim Co-Lead Counsel informed all Settlement Class members of the JBS and Smithfield settlements that they would seek an interim payment of attorneys' fees in an amount not to exceed 33 1/3% of the Settlement Proceeds, reimbursement of up to $5 million in current and ongoing litigation expenses, and service awards to the named Class Representatives. *See* ECF No. 1208, Exhibit A (Long Form Notice). As Settlement Class members also were informed, this motion will be posted on the case website, https://www.porkantitrustlitigation.com, contemporaneously with the filing of this motion. Interim Co-Lead Counsel also informed Settlement Class members that the Court will determine the amount of the attorneys' fees, litigation expenses, and service awards to be paid in this case. *Id.* Finally, Settlement Class members were told that they may object to this motion and that the deadline to do so is June 14, 2022. *Id.* Prior to the Court's hearing on July 20, 2022, Interim Co-Lead Counsel will report to the Court on any objections or other input received from Class members.

---

[5] *See* Section IV below.

## II.   CLASS COUNSEL DEDICATED TREMENDOUS RESOURCES TO THIS MATTER AND FACED SIGNIFICANT RISKS TO SUCCESSFULLY RESOLVE THIS CASE WITH THE SETTLED DEFENDANTS

Class Counsel have dedicated tremendous time, effort, and expense to this litigation, and they have done so entirely on a contingent basis with no guarantee of compensation or even reimbursement of expenses, to ensure the Class would recover for Defendants' wrongful conduct. A summary of those efforts is provided below.

### A.   Class Counsel Dedicated Tremendous Resources to Resolve DPPs' Claims Against the Settled Defendants

Since the inception of this case through February 28, 2022, Class Counsel invested 47,519.75 hours of attorney and other legal professional time.[6] Bruckner Decl. ¶ 27. Interim Co-Lead Counsel have worked diligently to ensure that throughout the case, Class Counsel's efforts have been coordinated, detailed, vigorous, and efficient. To date, the result of these efforts is a substantial recovery for the DPPs: a Settlement Fund of $101,864,300.

This Court is well acquainted with the history of this case, so Class Counsel will not describe in depth here the litigation, its procedural history, expert analysis, and all of the other work needed to build a case of this magnitude. Instead, following is an overview of Class Counsel's efforts to date:

- Interim Co-Lead Counsel filed the first antitrust complaint on behalf of direct purchasers of pork in June 2018. This complaint was the product of Interim Co-Lead Counsel's preparation, independent investigation, and research into

---

[6] Class Counsel have limited the reporting of their time and lodestar through February 28, 2022 for the purpose of this motion. They will continue to dedicate all necessary and appropriate time and resources to the litigation until it is resolved. Bruckner Decl. ¶¶ 20, 26-27, 46.

the pork industry. Unlike other matters, there were no prior or contemporaneous government investigations or enforcement proceedings. Interim Co-Lead Counsel have prepared and filed multiple amended and consolidated complaints reflecting information obtained from additional investigation and discovery. *See* Bruckner Decl. ¶ 3.

- Interim Co-Lead Counsel have developed numerous case management plans and worked cooperatively with indirect purchaser class counsel, direct action plaintiffs, and Defendants to implement those plans. *Id*. ¶ 4.

- Interim Co-Lead Counsel have prepared and filed comprehensive memoranda of law: (a) successfully in opposition to Defendants' motions to dismiss, (b) regarding numerous discovery issues, (c) seeking preliminary and final approval of settlements with the Settling Defendants, and (d) preparing and filing DPPs' motion for class certification, including expert reports and other exhibits. *Id*. ¶ 5.

- Class Counsel have conducted extensive fact and expert discovery, including preparing for and taking dozens of depositions, with hundreds planned. Class Counsel reviewed, analyzed, and coded a database containing more than 3.4 million documents and other records produced by Defendants and third parties in the litigation, utilized in support of depositions, class certification, and additional facets of the case. *Id*. ¶ 6.

- Class Counsel have consulted with experts throughout the course of this case, including their expert who prepared an extensive report in support of DPPs' motion for class certification. *Id*. ¶ 7; *see also* Expert Report of Dr. Mangum in support of DPPs' motion for class certification, ECF No. 1330.

- Interim Co-Lead Counsel engaged in extensive adversarial negotiations and mediations and ultimately negotiated two settlement agreements with the Settled Defendants. *See* Bruckner Decl. ¶¶ 8-9. Further, Interim Co-Lead Counsel have prepared and executed the Court-approved class notice and settlement administration programs, and are in the process of administering the Court-approved claims process. *Id*.

In addition to the 47,519.75 hours of attorney and other legal professional time

invested in this case through February 28, 2022, Class Counsel have incurred total litigation

expenses in the amount of $2,505,505.75 through April 30, 2022.[7] *Id.* ¶ 30. These expenses, discussed in detail in Section IV below, were required to carefully frame the complex issues of fact and law in the pleadings, to defeat Defendants' motions to dismiss, to effectively manage the case, to undertake well-organized discovery of a complex antitrust case against enormous (and enormously wealthy) business entities, and to support class certification. The expenses are substantial and ongoing.

Class Counsel will continue to vigorously litigate this case against the remaining Defendants, through discovery, class certification, and trial. With respect to the settlements, Interim Co-Lead Counsel will supervise all aspects of settlement and claims administration and supervise the final distribution of settlement proceeds to qualified DPPs. *Id.* ¶ 10.

## B.    Class Counsel Faced Significant Risk of Nonpayment

As discussed below, Class Counsel faced a significant risk of nonpayment. DPPs alleged a price-fixing conspiracy perpetrated by the United States' leading pork integrators and claimed that DPPs and the Class paid significant overcharges as a result. Class Counsel believed in DPPs' case, invested extensive time, effort, and money, and prosecuted it vigorously. Class Counsel also conceived and brought this case without the benefit of any related government investigation or enforcement action. Bruckner Decl. ¶ 11. Class

---

[7] Litigation expenses incurred by Class Counsel that were not paid out of the Litigation Fund are included in this Motion through February 28, 2022. Litigation expenses incurred by Class Counsel that were paid out of the Litigation Fund are included in this Motion through April 30, 2022. Bruckner Decl. ¶ 30.

Counsel did so at the risk of zero recovery and turned away other opportunities because of the complexity and high level of time and expense the case demanded. *Id*.

In the face of this, Class Counsel risked tremendous time and resources and have achieved significant recoveries on behalf of the DPP Class after almost four years of litigation, with six Defendants remaining in the case.

## III.   THE REQUESTED INTERIM FEE AWARD IS APPROPRIATE UNDER CONTROLLING LAW

Rule 23(h) permits a district court in a class action proceeding to "award reasonable attorney's fees and nontaxable costs that are authorized by law[.]" Fed. R. Civ. P. 23(h). In the Eighth Circuit, district courts possess the "sound discretion" to determine the award of attorney fees, *Yarrington v. Solvway Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010), and "the responsibility of scrutinizing attorney fee requests." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). Counsel has the burden to "establish a factual basis to support the award." *Id*.

There are two approaches used by district courts to determine an appropriate fee. The "percentage of the benefit" method "permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Johnston*, 83 F.3d at 244-45. Courts commonly use the percentage of the benefit to calculate attorney fees where awards are held in a common fund. *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1103-04 (D. Minn. 2009); *see also Johnston*, 83 F.3d at 244-45 (citing a Third Circuit task force report recommending, "the percentage of the benefit method be employed in common fund situations").

Alternatively, the lodestar approach is a calculation of the "hours expended by an attorney" multiplied by the "reasonable hourly rate of compensation." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017) (citing *Johnston*, 83 F.3d at 244).

The district court has discretion "to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (quotations and citations omitted). "Although not required to do so," district courts who use the percentage of the benefit approach may verify the reasonableness of the award "by cross-checking it against the lodestar method." *See Keil v. Lopez*, 862 F.3d 685, 700 (8th Cir. 2017) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999)).

### A.    DPPs Seek a Percentage of the Settlement Fund as an Interim Award of Fees

Consistent with this Court's previous fee award to class counsel for the Commercial and Institutional Indirect Purchaser Class (CIIPPs), the percentage of the benefit approach is appropriate again here. *See* ECF No. 1006.[8] DPPs seek an award of 33 1/3% of the

---

[8] Class counsel for the CIIPPs deducted settlement administration costs and the requested future litigation expenses from the settlement fund before calculating the amount of attorneys' fees. *See* ECF Nos. 915, 1006. However, courts support applying the selected percentage to the settlement fund *before* deducting the litigation costs and expenses. *See, e.g.*, *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780-82 (6th Cir. 2005) (affirming fee awards from a common benefit fund based on the gross settlement amount); *In re Packaged Ice Antitrust Litig.*, No. 08-01952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011) ("The fee percentage is applied to the settlement fund before the separate award of litigation costs and expenses are deducted from the fund."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531-35 (E.D. Mich. 2003) (awarding costs in addition to percentage of the fund fee). If the Court wishes to employ here the same methodology used in the CIIPPs'

Settlement Fund or $33,954,766.66 as attorneys' fees.

As noted, the Court has discretion to use the percentage of benefit approach to award attorney's fees. *See, e.g.*, *In re Monosodium Glutamate Antitrust Litig.*, 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003). When a party obtains compensation for the class' benefit in the form of a common fund, courts have long recognized that an award of attorneys' fees and other costs of the litigation should be recovered from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)). This approach equitably apportions the costs of litigation, including attorneys' fees, among the class members who benefit from the common fund. *Boeing*, 444 U.S. at 478. "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel*, 364 F. Supp. 2d at 991 (quoting *Petrovic*, 200 F.3d at 1157); *see also Khoday v. Symantec Corp.*, No. 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *8-9 (D. Minn. Apr. 5, 2016), *aff'd sub nom. Caligiuri*, 855 F.3d 860.

As the district court in *In re Xcel* explained, "[t]here are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method for determining attorney fees[.]" 364 F. Supp. 2d at 991. One benefit is that this structure

---

award, a 33 1/3% fee of the Settlement Fund net of settlement administration costs ($348,520.15) and the requested future litigation expenses ($2,494,494.25, *see* Section IV below) would be $33,007,095.20. *See* Bruckner Decl. ¶ 41 n.5.

incentives attorneys to maximize the recovery for the class while expending fewer legal hours to reach the result, which will "encourage class counsel to prosecute the case in an efficient manner." *Id.* Relying upon similar reasoning, courts in other districts have often used the percentage of benefit approach in large antitrust cases. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (holding that the district court did not abuse its discretion in applying the percentage of the benefit approach); *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018) (finding the percent of the benefit approach was appropriate "[w]here there is an easily quantifiable benefit to the class – namely, the cash recovery achieved through settlement"); *In re Processed Egg Prod. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at *2 (E.D. Pa. Nov. 9, 2012) (noting that the percentage of the benefit method is "generally favored in cases involving a common settlement fund.") (citations and quotations omitted).

When using the percentage of the benefit approach, courts consider the following factors: "(1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was exposed; (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both plaintiffs' and defendants'; (5) the time and labor involved; (6) the reaction of the class; and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases." *Khoday*, 2016 WL 1637039, at *9 (quoting *Yarrington*, 697 F. Supp. 2d at 1062); *see also In re Xcel*, 364 F. Supp. 2d at 993. When applied here, these factors indicate that the fee requested is fair and reasonable.

1.    <u>The Benefit Conferred on the Class is Substantial</u>

On November 17, 2020, DPPs and JBS entered into a settlement that provided for a payment of $24,500,000 and meaningful cooperation. Bruckner Decl. ¶ 8. The Court granted final approval of the JBS Settlement on July 26, 2021. *See* ECF No. 838.

On June 29, 2021, DPPs and Smithfield entered into a settlement that provided for a payment of $83,000,000 and meaningful cooperation. Bruckner Decl. ¶ 8. The Smithfield Settlement was subject to a $5,635,700 reduction based on Class members who opted out during the settlement administration process. *Id.* Thus, the net amount paid by Smithfield equaled $77,364,300. *Id.* The Court granted final approval of the Smithfield settlement on January 31, 2022. *See* ECF No. 1154.

The total amount recovered to date from just two of the Defendants in this case totals $101,864,300. Bruckner Decl. at ¶ 8. There were no objections to either Settlement. ECF Nos. 838, 1154. The monetary benefit, coupled with meaningful cooperation that will assist in the prosecution of the claims against the non-settling Defendants, provide DPPs significant value. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-01952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008). Fee awards in antitrust actions also provide a public benefit. There is a "need in making fee awards to encourage attorneys to bring class actions to vindicate public policy (*e.g.*, the antitrust laws) as well as the specific rights of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979); *In re Cardizem CD*, 218 F.R.D. at 534 ("Society also benefits from the prosecution and settlement of private antitrust litigation."). Society benefits when those

who have violated laws fostering fair competition and honest pricing are required to reimburse affected consumers in civil proceedings. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 635 (1977); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("[I]t is especially important to provide appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust laws.").

2. <u>DPPs Faced Substantial Risk in Pursuing the Action</u>

Antitrust class actions are inherently risky, due in part to their unpredictable nature, as well as the tremendous time and expense required to obtain a successful resolution. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 721680, at \*17 (C.D. Cal. Jan. 28, 2016) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998)); *see In re Cardizem CD*, 218 F.R.D. at 530 (emphasizing a strong public interest in encouraging settlement of complex, class-action lawsuits because they are unpredictable and settlement preserves judicial resources).

Here, the risks were high. DPPs alleged a nationwide conspiracy to fix, raise, maintain, and stabilize the price of pork—one of the nation's most popular meat products— without the support of a parallel government investigation. Bruckner Decl. at ¶ 11. Each of the Defendants have aggressively litigated and fought DPPs on the pleadings and in discovery. In the face of these risks, Class Counsel vigorously represented DPPs and obtained a substantial recovery on behalf of the Class thus far. *Id.* To date Class Counsel have incurred millions of dollars in expenses in prosecuting the case on behalf of the DPP class without any recovery. *Id.* ¶ 30.

3.     Class Counsel Faced Complex Issues

Antitrust class actions are inherently complex. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." (citations and internal quotation marks omitted)). This litigation presents challenging legal and factual issues, and this factor also supports the fee requested.

Investigating and proving an unlawful conspiracy is difficult, especially when not derived from a related criminal investigation. DPPs allege that Defendants combined and conspired to fix, raise, maintain, or stabilize prices of pork sold in the United States in violation of the Sherman Act, 15 U.S.C. § 1. *See generally* ECF No. 431 (DPP Third Consolidated and Amended Complaint). DPPs allege that Defendants implemented their conspiracy in various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and otherwise manipulating pork prices. *Id.* Defendants spared no effort in challenging DPPs' complaint. They argued that DPPs' claims were conjectural and implausible under *Twombly*, that DPPs did not allege facts showing that Defendants acted in parallel to reduce output or to raise prices for pork, and that their production and pricing decisions were the result of legitimate market forces. *See, e.g.*, ECF No. 433 (Defendants' Joint Motion to Dismiss). After two extensive rounds of briefing, the Court denied the motions to dismiss almost entirely. *See* ECF No. 520.

After DPPs prevailed on the motions to dismiss, they turned to litigating the case. To date discovery has involved more than 100 document custodians, more than 3.4 million documents and communications, analysis of millions of telephone calls and messages,

discovery from many third parties, and the depositions of dozens of fact witnesses (with more than 100 anticipated by the time depositions end). Bruckner Decl. ¶ 6. Interim Co-Lead Counsel is coordinating this discovery effort against Defendants, and with the indirect class counsel and numerous Direct Action Plaintiffs. Plaintiffs and Interim Co-Lead Counsel also fulfilled their own discovery obligations, in response to fulsome discovery by Defendants. *Id.*

> 4.   Class Counsel Utilized Significant Skill and Dedicated Substantial Resources to Achieve the Settlements

Not only were Class Counsel confronted with the inherent uncertainties of an antitrust class action litigation alleging a global conspiracy, but they also faced some of the wealthiest multinational corporations in the world, whose skilled and experienced legal counsel mounted a strong and united defense. The Settled Defendants were represented by Quinn Emanuel Urquhart & Sullivan, LLP (JBS) and Gibson, Dunn & Crutcher LLP (Smithfield), leading multinational and national law firms ranked among the Vault Law 100 for most prestigious law firms. Bruckner Decl. ¶ 8. The fact that the nation's top legal counsel represented Defendants is an important factor in analyzing the value of services rendered by Class Counsel. *See, e.g.*, *In re Schering-Plough Corp. Enhance Secs. Litig.*, No. CIV.A. 08-2177 DMC, 2013 WL 5505744, at *25 (D.N.J. Oct. 21, 2013); *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, MDL No. 1871, 2012 WL 6923367, at *5 (E.D. Pa. Oct. 19, 2012) (considering "the performance and quality of opposing counsel" as a factor in awarding attorneys' fees); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 121 (D.N.J. Mar. 30. 2012) (concluding the skill and efficiency of

the attorneys involved favored approval of attorneys' fees in part because the settling defendants were represented by experienced attorneys from prominent law firms); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 357-58 (S.D.N.Y. 2005) (finding that counsel "obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country."); *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work.") (citations omitted); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974) (noting that the quality, vigor, and prior success of opposing counsel is an important factor when assessing the quality of work performed by plaintiffs' counsel).

The breadth and disparity of resources available to opposing parties is also significant when considering the gravity of the risk class counsel faced. *See BCJJ, LLC v. LeFevre*, No. 8:09-cv-00551, 2011 WL 5597349, at *2 (M.D. Fla. Nov. 17, 2011) (considering relative economic resources in determining appropriateness of attorneys' fees); *Brewer v. S. Union Co.*, 607 F. Supp. 1511, 1531 (D. Colo. 1984); *Trist v. First Fed. Savings & Loan Ass'n of Chester*, 89 F.R.D. 8, 13 (E.D. Pa. 1980). In *Brewer*, the district court remarked that inequality of resources available to the parties greatly increases the risk to class counsel. *See* 607 F. Supp. at 1531. That inequality was prominent here; available resources vastly favored Defendants, who are among the world's largest and wealthiest business entities. The Class, meanwhile, was represented by small and medium-sized regional distributors who purchased pork from the Defendants. None of those businesses could have financed this litigation on their own, alone or collectively. *See*

*Khoday*, 2016 WL 1637039, at \*10; *In re Xcel*, 364 F. Supp. 2d at 995-96; *Yarrington*, 697 F. Supp. 2d at 1063; *In Re Polyurethane Foam Antitrust Litig.*, No. 10-2196, 2015 WL 1639269, at \*7 (N.D. Ohio Feb. 26, 2015); *In re Packaged Ice*, 2011 WL 6209188, at \*19.

In order to combat the financial, legal, and substantive resources available to the Defendants, Class Counsel has worked diligently, efficiently, and effectively throughout the course of the case. Class Counsel, led and organized by Co-Lead Counsel, has utilized tremendous legal and organizational skills to ensure that this nationwide class action is vigorously adjudicated, and to ultimately bring two Defendants to the table and enter into significant settlements that provide substantial relief to the Class.

5.   Prior to the Hearing, Interim Co-Lead Counsel Will Report Any Reaction of the Class to this Motion

As noted above in Section I, p. 2, all Settlement Class members have received notice of this Motion, and will have an opportunity to be heard on it. First, on April 15, 2022, they received notice that Interim Co-Lead Counsel would seek an interim payment of attorneys' fees in an amount not to exceed 33 1/3% of the Settlement Proceeds and reimbursement of up to $5 million in current and ongoing litigation expenses. *See* ECF No. 1208, Exhibit A (Long Form Notice). Second, simultaneous with the filing of this motion, Interim Co-Lead Counsel is posting this motion and all supporting exhibits on the case website, https://www.porkantitrustlitigation.com. The deadline for Settlement Class members to object to this motion is June 14, 2022. *Id.*

Prior to the hearing on July 20, 2022, Interim Co-Lead Counsel will report to the Court on any objections or other input received (or the lack thereof) from Class members.

6.   The Requested Fee Percentage is Appropriate and Supported by Authority

The Supreme Court has held repeatedly that private enforcement of U.S. antitrust laws is essential to effective antitrust enforcement. *See, e.g.*, *Blue Shield of Va. v. McCready*, 457 U.S. 465, 472 (1982); *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130-31 (1969). A fee award of 33 1/3% in this case reflects a real-world arm's length transaction between the Settlement Class and Class Counsel, and is a generally accepted percentage in the Eighth Circuit. Indeed, courts in this District routinely approve attorneys' fees in class actions of at least one-third of the common fund created for the settlement class. *See Khoday*, 2016 WL 1637039, at *11; *Yarrington*, 697 F. Supp. 2d at 1064 (noting that awards between 25 and 36 percent of a common fund are common); *In re Xcel*, 364 F. Supp. 2d at 998 (collecting cases routinely approving fee awards of 33 percent); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (approving a fee award representing 35 1/2 percent of the settlement fund).[9]

Thirty-three and one-third percent is a standard percentage in many fee agreements, including large, complex non-class cases. *See* Brian T. Fitzpatrick, *A Fiduciary Judge's*

---

[9] *See also In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (fee of 36 percent); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133, 1142 (W.D. La. 1997) (awarding fee of 36 percent and noting that "50 percent of the fund is the upper limit on a reasonable fee award from a common fund"); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1292-94 (11th Cir. 1999); *In re Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 34312839, at *10 (D.D.C. 2001) (awarding one third of $359 million antitrust recovery, which is "within the fifteen to forty-five percent range established in other cases"); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 499 (D.D.C. 1981) (awarding fee of 45 percent).

*Guide to Awarding Fees in Class Actions*, 89 Fordham L. Rev. 1151 (2021); *see also* Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65 Fordham L. Rev. 247, 248 (1996) (noting that "standard contingency fees" are "usually thirty-three percent to forty percent of gross recoveries"); *Blum*, 465 U.S. at 905 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.").

Here, such a fee award is justified by the remarkable results obtained for the Settlement Class and the risks faced by Class Counsel. The fee award requested here is well within the acceptable range of attorneys' fee awards in protracted, complex, and expensive litigation such as this.[10]

## B. A Lodestar Cross-Check Confirms that the Fee Requested is Appropriate

Although not required, courts may apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. *Keil*, 862 F.3d at 701. A cross-check of the lodestar incurred by Class Counsel indicates that the fee requested constitutes fair and reasonable compensation for the risks assumed, the work done, and the benefits achieved for the members of the Settlement Class.

Under the lodestar methodology for awarding attorney fees, the total hours expended by the attorneys advancing the litigation are multiplied by a reasonable hourly rate of compensation. *See Caligiuri*, 855 F.3d at 865 (citing *Johnston*, 83 F.3d at 244);

---

[10] Indeed, the Court has already awarded such a fee in this matter to counsel for the CIIPP Class. *See* ECF No. 1006.

*Petrovic*, 200 F.3d at 1157. "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Xcel*, 364 F. Supp. 2d at 999. A court may give an upwards of adjustment to a lodestar (through a positive multiplier) to reflect "the contingent nature of success, and … the quality of the attorney's work." *Id.*

A lodestar cross-check in this case supports the requested fee. The risks, complexities and challenges Class Counsel faced are discussed in detail above. During that time, Class Counsel invested more than 47,519.75 hours of attorney and other professional time from case inception through February 28, 2022. Bruckner Decl. ¶ 27. Class Counsel's base lodestar is $23,011,696.75 using historic hourly rates, with a cap of $350.00 per hour on document review.[11] *Id*. Awarding a 33 1/3% fee would result in a conservative multiplier of 1.48 on such a lodestar. *Id*. Such a multiplier is well within accepted ranges. *See, e.g.*, *Khoday*, 2016 WL 1637039, at *11 (multipliers typically range between two and five). Each of the reasons set forth above establishing the reasonableness of the fee award under the percentage approach, establish that the multiplier is within the range of reasonableness.

## IV.  CLASS COUNSEL SHOULD BE REIMBURSED FOR CURRENT AND ONGOING LITIGATION EXPENSES

Under the common fund doctrine, class counsel customarily are entitled to reimbursement of reasonable expenses incurred during the litigation. Fed. R. Civ. P. 23(h); *Mills*, 396 U.S. at 392 (recognizing the right to reimbursement of expenses where a

---

[11] Hourly rates presented in this petition are based on historical rates, *i.e.*, the rate each firm charged at the time the service was performed. Bruckner Decl. ¶ 16.

common fund has been produced or preserved for the benefit of a class); A. Conte, *Attorney Fee Awards* § 2.08, at 50-51 (3d ed. 2004). "It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Yarrington*, 697 F. Supp. 2d at 1065; *Krueger v. Ameriprise Fin., Inc*., No. 11-CV-02781 (SRN/JSM), 2015 WL 4246879, at *3 (D. Minn. July 13, 2015) (citing to Fed. R. Civ. P. Rule 23 and cases); *see also Khoday*, 2016 WL 1637039, at *12 ("Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation.").

Class Counsel have incurred $2,505,505.75 in expenses to advance this litigation.[12] Bruckner Decl. ¶ 30, Exhibits 2-15 (Declarations of Class Counsel), Exhibit 18 (LGN); Declaration of Bobby Pouya filed concurrently herewith, ¶ 12, Exhibit 2. Expenses by category are described in detail in the Bruckner Declaration and its exhibits, and were reasonably necessary to advance the interests of the Settlement Class and to obtain the

---

[12] Litigation expenses incurred by Class Counsel that were not paid out of the Litigation Fund are included in this Motion through February 28, 2022. Litigation expenses incurred by Class Counsel that were paid out of the Litigation Fund are included in this Motion through April 30, 2022. Bruckner Decl. ¶ 30. Settlement administration costs up to $900,000 (ECF Nos. 543-1 ($500,000, JBS Settlement Agreement), 831-2 ($400,000, Smithfield Settlement Agreement)) were previously approved by the Court (ECF Nos. 838 (JBS Final Approval Order), 1154 (Smithfield Final Approval Order) to be paid out of the respective escrow accounts, and are therefore not included in this reimbursement request. Bruckner Decl. ¶ 36 n.3.

favorable results achieved to date. *See* Bruckner Decl. ¶¶ 30-38, Exhibits 19, 20. Due to the risk that they might never be recovered, Class Counsel endeavored to keep expenses to a minimum. *Id.*

Additionally, Class Counsel requests that the Court approve payment of $2,494,494.25 in ongoing and future litigation expenses.[13] *Id.* ¶ 39. As with the already-incurred funds, these funds will only be used for reasonable expenses incurred in the ongoing litigation against the remaining Defendants.[14] *Id.* Many of the costs described above and in the accompanying attorney declarations are not one-time expenses; they are ongoing. *Id.* Six Defendants remain in the case, fact discovery continues through September 1, 2022, class certification motion practice is well underway, expert merits discovery will soon begin, followed by *Daubert* motion practice, dispositive motion practice and, absent acceptable settlements with the remaining Defendants, trial. *See* ECF Nos. 658, 65.[15] The same and similar expenses will be incurred as DPPs continue to

---

[13] Interim Co-Lead Counsel informed all Settlement Class members that they would seek reimbursement of up to $5 million in current and ongoing litigation expenses. ECF No. 1208, Exhibit A (Long Form Notice). The sum of the litigation expenses already incurred ($2,505,505.75) and the request for ongoing and future litigation expenses ($2,494,494.25) is $5 million. Bruckner Decl. ¶ 41.

[14] In any future petition for reimbursement of expenses, or at the Court's request, Interim Co-Lead Counsel will provide an accounting to the Court of their payment of future costs from this award. Bruckner Decl. ¶ 40. If funds from this requested award of future expenses are not fully used by the time the case is resolved in its entirety, Interim Co-Lead Counsel will so report to the Court at that time and propose a method to return any such remaining funds to the benefit of the Class. *Id.*

[15] The Order Amending The Pretrial Scheduling Order Regarding Class Certification Deadlines was entered by the Court in case number 0:21-md-02998-JRT-HB rather than 0:18-cv-01776-JRT-HB.

prosecute this case, and they also will be reasonable and necessary to support this litigation. Bruckner Decl. ¶ 39.

Allowing a portion of class settlement funds to be used for future expenses is a well-accepted practice. *See, e.g.*, *Newby v. Enron Corp.*, 394 F.3d 296, 302 (5th Cir. 2004) (affirming 37.5 percent set aside for establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *In re Auto Parts Antitrust Litig.*, No. 12-2311, 2018 WL 7108072, at *2 (E.D. Mich. Nov. 5, 2018); *In re Auto Parts Antitrust Litig.*, No. 12-2311, 2016 WL 9459355, at *2 (E.D. Mich. Nov. 29, 2016) (approving request to set aside nearly $10 million for use in future litigation); *In re Auto Parts Antitrust Litig.*, No. 12-2311, 2015 WL 13715591, at *2 (E.D. Mich. Dec. 7, 2015); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 07-5634, 2015 WL 3396829, at *3 (N.D. Cal. May. 26, 2015); *In re Pressure Sensitive Labelstock*, 584 F. Supp. 2d at 702; *In re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004); *In re California Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997); *see also* Manual for Complex Litigation (Fourth), § 13.21 ("[P]artial settlements may provide funds needed to pursue the litigation . . . .").

As such, DPPs request reimbursement of current and ongoing litigation expenses in the total amount of $5 million.

## V.     THE CLASS REPRESENTATIVES SHOULD RECEIVE INTERIM SERVICE AWARDS

Courts regularly grant service awards to class representatives in recognition of the time and effort they invested in the case. *Khoday*, 2016 WL 1637039, at *12 ("Courts in

this District routinely grant service awards for named plaintiffs.") (citing *Yarrington*, 697 F. Supp. 2d at 1068 (upholding service awards and recognizing that "unlike unnamed Class Members who will enjoy the benefits of the Settlement without taking on any significant role, the Named Plaintiffs [make] significant efforts on behalf of the Settlement Class and [participate] actively in the litigation") and *Zillhaver v. UnitedHealth Group, Inc*., 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009)). Like in this case, class representatives frequently contribute to the successful resolution of a class action by assisting with the preparation of the pleadings, participating in discovery, continually providing information to class counsel, and participating in settlement negotiations. Their contributions undoubtedly benefit the class as a whole, and courts in this circuit often see fit to compensate class representatives for their service to the class. In determining whether a service award is appropriate, courts consider the following factors: "actions plaintiff[s] took to protect the class's interests, [the] degree to which the class has benefited from those actions, and [the] amount of time and effort [the named] plaintiff[s] expended in pursuing litigation." *Khoday*, 2016 WL 1637039, at *12; *Zillhaver*, 646 F. Supp. 2d at 1085 (quoting *In re U.S. Bancorp Litig*., 291 F.3d at 1038).

Here, DPPs request that the Court confer an interim service award of $25,000.00 on each of the four Class Representatives: Maplevale Farms, Inc.; John Gross and Company, Inc.; Ferraro Foods, Inc. and Ferraro Foods of North Carolina, LLC; and Olean Wholesale Grocery Cooperative, Inc.[16] This lawsuit would not have been possible if these named

---

[16] On April 1, 2022, named plaintiff Joe Christiana Food Distributors, Inc. filed with the Court a Stipulation of Voluntary Dismissal of Claims with Prejudice. *See* ECF 1246.

plaintiffs did not agree to serve as Class Representatives. Unlike indirect purchaser plaintiffs, the named DPPs have a direct business relationship with the Defendants. They have exposed themselves to a substantial business risk by filing this lawsuit against the producers of pork who are key suppliers for their businesses. Throughout this litigation, the Class Representatives advised Class Counsel and approved pleadings, reviewed and responded to written discovery, searched for, gathered, preserved, and produced documents, are preparing for and will sit for depositions, have kept up to date on the progress of the case, and performed other similar activities. Bruckner Decl. ¶¶ 42-45; *see also* the declarations from each Class Representative at ECF Nos. 1322-4 (Maplevale Farms, Inc.), 1322-5 (John Gross and Company, Inc.), 1322-6 (Ferraro Foods, Inc. and Ferraro Foods of North Carolina, LLC), and 1322-7 (Olean Wholesale Grocery Cooperative, Inc.). They were never promised that they would receive any additional compensation for leading the case. Bruckner Decl. ¶ 45. Rather, they devoted their time and efforts solely to recovery some portion of their own overcharges and to enable other Class members to recover theirs. *See* ECF Nos. 1322-4, 1322-5, 1322-6, 1322-7. Their help has been instrumental to the success of this litigation and, DPPs respectfully submit, they are deserving of these service awards. Bruckner Decl. ¶ 45.

## VI.    <u>CONCLUSION</u>

For these reasons, DPPs respectfully request that this Court award interim attorneys' fees in the amount $33,954,766.66, which is equivalent to 33 1/3% of the Settlement Fund, reimbursement of current and ongoing litigation expenses in the amount of $5 million, and

service awards to each of the four Class Representatives in the amount of $25,000

($100,000.00 total).

Date: May 13, 2022

*/s/ W. Joseph Bruckner*
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Joseph C. Bourne (MN #0389922)
Arielle S. Wagner (MN #0398332)
Stephen M. Owen (MN #0399370)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
*wjbruckner@locklaw.com*
*bdclark@locklaw.com*
*jcbourne@locklaw.com*
*aswagner@locklaw.com*
*smowen@locklaw.com*

Clifford H. Pearson (*Pro Hac Vice*)
Daniel Warshaw (*Pro Hac Vice*)
Thomas J. Nolan (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA 92403
T:  (818) 788-8300
F:  (818) 788-8104
*cpearson@pswlaw.com*
*dwarshaw@pswlaw.com*
*tnolan@pswlaw.com*
*bpouya@pswlaw.com*
*mpearson@pswlaw.com*

Bruce L. Simon (*Pro Hac Vice*)
Benjamin E. Shiftan (*Pro Hac Vice*)
Neil Swartzberg (*Pro Hac Vice*)
**PEARSON, SIMON & WARSHAW, LLP**
350 Sansome Street
Suite 680
San Francisco, CA 94104
T:  (415) 433-9000
F:  (415) 433-9008
*bsimon@pswlaw.com*
*bshiftan@pswlaw.com*
*nswartzberg@pswlaw.com*

Melissa S. Weiner (MN #0387900)
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue
Suite 2150
Minneapolis, MN 55402
T: (612) 389-0600
F: (612) 389-0610
*mweiner@pswlaw.com*

*Interim Co-Lead Class Counsel for the Direct Purchaser Plaintiff Class*