# EXHIBIT A

Page 1

```
 1           UNITED STATES DISTRICT COURT
 2               DISTRICT OF MINNESOTA
 3    -------------------------X
 4    IN RE:                   :  Court File No.
 5    PORK ANTITRUST LITIGATION :  0:18-cv-01776-JRT-HB
 6    -------------------------X
 7
 8     REMOTE VIDEOTAPED STENOGRAPHIC DEPOSITION OF
 9                   MICHAEL ANDERSON
10              Monday, April 25, 2022
11              10:32 a.m. Mountain Time
12
13
14
15
16
17
18
19
20
21
22   Job No.:  2022-836283
23   Pages:   1 - 138
24   STENOGRAPHICALLY REPORTED BY:
25   GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR
```

Page 2

```
 1           Deposition of MICHAEL ANDERSON, held
 2   remotely, via videoconference at:
 3
 4
 5           VIA VIDEOCONFERENCE
 6
 7
 8
 9           Pursuant to agreement, before Giselle
10   Mitchell-Margerum, Registered Professional Reporter,
11   Certified Reporting Instructor, Licensed Court Reporter
12   (TN), Certified Court Reporter (GA), Certified Court
13   Reporter (NJ), Certified Court Reporter (WA), Certified
14   Shorthand Reporter (OR), Certified Shorthand Reporter
15   (CA), and Notary Public (Washington, D.C.).
```

Page 3

```
 1                  A P P E A R A N C E S
 2
 3   ON BEHALF OF CONSUMER INDIRECT PURCHASER PLAINTIFFS
 4   AND THE WITNESS:
 5        ABOU AMARA, ESQ.
 6        GUSTAFSON GLUEK PLLC
 7        126 South 6th Street, Suite 2600
 8        Minneapolis, Minnesota 55402
 9        712.333.8844
10
11   ON BEHALF OF DEFENDANT CLEMENS:
12        THOMAS LIS, ESQ.
13        KIRKLAND & ELLIS LLP
14        300 North LaSalle
15        Chicago, IL 60654
16        312.862.2000
17
18   ON BEHALF OF THE WITNESS:
19        CARL MALMSTROM, ESQ.
20        WOLF HALDENSTEIN ADLER
21        FREEMAN & HERZ LLC
22        111 West Jackson, Suite 1700
23        Chicago, IL 60604
24        312.984.0000
25
```

Page 4

```
 1   APPEARANCES (cont'd):
 2
 3   ALSO PRESENT:
 4        KIMBERLY VILLALOBOS, Videographer
```

Page 117

1 them to make future operations decisions by
2 looking at past reports?
3          MR. MALMSTROM:  Objection.
4    Calls for speculation.
5    A.  Yes.
6    Q.  And that includes the pork industry?
7          MR. MALMSTROM:  Objection.
8    Calls for speculation.
9    A.  Yes.
10   Q.  And earlier, you said that you would
11 attend trade conferences.  Correct?
12   A.  Yes.
13   Q.  And you would meet with managers and
14 chefs from competing restaurants.  Correct?
15   A.  Yes.
16   Q.  And you think it was appropriate for
17 you to do so?
18         MR. MALMSTROM:  Objection.
19   Calls for speculation.
20   A.  Yes.
21   Q.  What about conferences in other
22 industries?
23         MR. MALMSTROM:  Objection.
24   Calls for speculation.
25   A.  Yes.

Page 118

1    Q.  And that would include competitors
2 in the pork industry?
3          MR. MALMSTROM:  Objection.
4    Calls for speculation.
5    A.  Yes.
6    Q.  And you said you'd use
7 consultants -- well, let me rephrase.
8          You said you would meet with
9 consultants to get their insight on the
10 industry.  Correct?
11   A.  Yes.
12   Q.  And you think it's appropriate for
13 you to do so?
14         MR. MALMSTROM:  Objection.
15   Calls for speculation.
16   A.  Yes.
17   Q.  You think it's appropriate for
18 members of other industries to meet with
19 consultants to get insights --
20         MR. MALMSTROM:  Objection.
21         MR. LIS:  -- from industries?
22         MR. MALMSTROM:  Objection.
23   Calls for speculation.
24         THE WITNESS:  Yes.
25 BY MR. LIS:

Page 119

1    Q.  Including the pork industry?
2          MR. MALMSTROM:  Objection.
3    Calls for speculation.
4    A.  Yes.
5    Q.  Why did you decide to be a class
6 representative?
7    A.  Because I want to look out for every
8 other Arizonian out there, and the people who
9 live in Peoria, and make sure they are not
10 getting screwed.
11   Q.  So who do you represent as a class
12 rep?
13   A.  I represent the state of Arizona,
14 and everybody else in the United States.
15   Q.  And what are your responsibilities
16 as a class representative?
17   A.  To make sure that I hold -- I hold
18 the best interest of my constituents and my
19 state, and the rest of the citizens in the
20 U.S..  To make sure that people don't do this.
21   Q.  And what do you mean by, "make sure
22 that people don't do this?"
23   A.  Follow through with this lawsuit.
24   Q.  As part of this lawsuit, were you,
25 at any time, instructed to preserve documents?

Page 120

1    A.  Yes.
2    Q.  And by whom?
3    A.  By my legal counsel.
4    Q.  Do you remember when you were
5 instructed?
6    A.  2018.
7    Q.  Do you remember if that was verbally
8 or in writing?
9    A.  It was both verbal, and in the
10 email.
11   Q.  And what categories of documents
12 were you instructed to preserve?
13   A.  Receipts.
14   Q.  Anything else?
15   A.  No.
16   Q.  Did you take any steps to comply
17 with that instruction?
18   A.  I did.  Until they got lost in the
19 shuffle.
20   Q.  And when did you start taking those
21 steps?
22   A.  Right after the initial
23 conversation.
24   Q.  And what steps were those?
25   A.  When I did shop -- when I bought

Page 121

1 pork, I would save the receipt, and I would
2 put them in a folder.
3    Q.  When were your receipts lost?
4    A.  Summer of 2019; 2020.  We had a
5 flood in our house and moved everything.  And
6 then when they went back, I could not find
7 them.
8    Q.  So, besides trying to preserve
9 receipts, did you take any other steps to
10 preserve documents for this case?
11    A.  No.
12    Q.  So, defendants served what is known
13 as a Request for Production of Documents.  Did
14 you ever receive a copy?
15    A.  I never -- I never gave them the
16 documents.  I didn't have them.
17    Q.  Have you ever seen a document called
18 a Request for Production of Documents?
19    A.  Probably in an email.
20    Q.  Did you look -- do you remember
21 looking through a document called, "Request
22 for Production?"
23    A.  No.  I don't.
24    Q.  Okay.
25       MR. LIS:  Kimberly, can with

Page 122

1 pull up tab three?
2    (Exhibit 4 marked for identification)
3 BY MR. LIS:
4    Q.  Do you recognize this document?
5    A.  No.  Not off the top of my head.
6       MR. LIS:  Kimberly, if you
7    could flip through slowly?  If that helps
8    Mr. Anderson.
9       Can we pause here, actually?
10 BY MR. LIS:
11    Q.  Do you remember seeing this
12 document?
13    A.  No.
14    Q.  So, earlier, you said that after you
15 were told to preserve documents, you started
16 saving your pork receipts.  Correct?
17    A.  Yes.
18    Q.  Did you have any pork receipts
19 from -- any earlier pork receipts from before
20 you were emailed?
21    A.  No.
22    Q.  And do you remember when in 2018 you
23 got that email?
24    A.  No.  Not exactly, off the top of my
25 head.

Page 123

1    Q.  Do you remember if it was before or
2 after June 30th?
3    A.  No.  I do not recall.
4    Q.  Is it fair to say that you have no
5 receipts reflecting a pork purchase from 2008
6 to 2018, in your possession, custody, or
7 control?
8    A.  Yes.  That's true.
9    Q.  Do you use email?
10    A.  I do.
11    Q.  How many email addresses?
12    A.  Two.
13    Q.  Have you ever used any of those to
14 discuss pork, or any of the allegations in
15 this case?
16    A.  My regular email with Carl.
17    Q.  So, besides communications with your
18 attorneys, did you use either of your emails
19 to discuss pork or the allegations in the
20 complaint?
21    A.  No.
22    Q.  Did you search your emails from
23 documents --
24    A.  I did --
25    Q.  -- related to this complaint?

Page 124

1       So if we were to search, say,
2 the word, "pork" in your email, would we get
3 any hits --
4    A.  I --
5    Q.  -- besides --
6       MR. MALMSTROM:  Objection.
7    Calls for speculation.
8    A.  Yeah.  You probably would.  But it
9 wouldn't be anything pertaining to this.
10    Q.  Well, what kind of stuff would we
11 see?
12    A.  You might get an ad.  Grocery ad.
13    Q.  Okay.  Anything else?
14    A.  No.
15    Q.  Would we -- would any of those ads
16 reference any of the defendants?
17       MR. MALMSTROM:  Objection.
18    Calls for speculation.
19    A.  Maybe.
20    Q.  You searched for defendants' names
21 in your email?
22    A.  No.
23    Q.  Did you run any searches besides
24 pork?
25    A.  No.