# EXHIBIT E

LEXITAS

## Page 1

```
 1                    VOLUME 1
                    PAGES:  1-186
 2                  EXHIBITS:  See Index
 3
            UNITED STATES DISTRICT COURT
 4           FOR THE DISTRICT OF MINNESOTA
 5
    _____
 6                                )
    IN RE:                        ) No. 0:18-cv-01776-JRT-HB
 7                                )
    PORK ANTITRUST LITIGATION     )
 8                                )
    _____)
 9
10
11
12
13      VIDEOTAPED DEPOSITION of CHRISTOPHER DEERY
14         - CONDUCTED BY VIDEOCONFERENCE -
15            Tuesday, March 29, 2022
16          9:00 a.m. Central Standard Time
17
18
19
20
21
22          Michelle Keegan, RMR, CRR
23                    Lexitas
24      508-478-9795 ~ 508-478.0595 (Fax)
25              www.LexitasLegal.com
```

## Page 2

```
 1  A P P E A R A N C E S:
 2
 3  GUSTAFSON GLUEK PLLC
    By:  Abou B. Amara, Jr., Esq.
 4  Canadian Pacific Plaza
    120 South Sixth Street, Suite 2600
 5  Minneapolis, Minnesota 55402
    Phone:  (612) 333-8844
 6  Email:  aamara@gustafsongluek.com
    Counsel for Consumer Indirect Purchaser
 7  Plaintiffs and the Witness
 8
    HUSCH BLACKWELL LLP
 9  By:  Amanda L. Wall, Esq.
    13330 California Street, Suite 200
10  Omaha, Nebraska 68154
    Phone:  (402) 964-5000
11  Email:  amanda.wall@huschblackwell.com
    Counsel for Triumph Foods, LLC
12
13  HUSCH BLACKWELL LLP
    By:  A. James Spung, Esq.
14  736 Georgia Avenue, Suite 300
    Chattanooga, Tennessee 37402
15  Phone:  (423) 266-5500
    Email:  james.spung@huschblackwell.com
16  Counsel for Triumph Foods, LLC
17
    Also Present:
18  Jacob Figueroa, Videographer
19
20
21
22
23
24
25
```

## Page 3

```
 1                I N D E X
 2
    Videotaped Deposition of:             Page
 3
    CHRISTOPHER DEERY
 4
      By Ms. Wall                           5
 5
      By Mr. Amara                        180
 6
 7
                E X H I B I T S
 8
    No.                                   Page
 9
    Exhibit 1   Resume of Christopher J. Deery,   11
10              Bates-numbered Deery_00125
                through -132
11
    Exhibit 2   Consumer Indirect Purchaser       32
12              Plaintiffs' Fourth Amended
                Consolidated Class Action
13              Complaint (Redacted Version), in
                USDC, District of Minnesota,
14              18-cv-1776 (JRT/HB), 167 pages
                without Bates numbering
15
    Exhibit 3   Images of receipts, 33 pages      65
16              with nonconsecutive Bates
                numbering
17
    Exhibit 4   Consumer Indirect Purchaser      111
18              Plaintiffs' Supplemental
                Objections and Responses to
19              Defendants' First Set of
                Interrogatories, in USDC,
20              District of Minnesota,
                0:18-cv-01776-JRT-HB, 29 pages
21              without Bates numbering
22  Exhibit 5   Images of grocery products and   124
                advertisements, Bates-numbered
23              Deery_00138 and -201
                through -205
24
25
```

## Page 4

```
 1             P R O C E E D I N G S
 2      THE VIDEOGRAPHER:  Good morning.  We are
 3  on the record on March 29, 2022, at approximately
 4  9:00 a.m. Central Time, for the remote video
 5  deposition of Mr. Chris Deery in the matter of In
 6  Re: Pork Antitrust Litigation.
 7      My name is Jacob Figueroa.  I am the
 8  videographer on behalf of Lexitas.
 9      Will counsel please introduce themselves
10  for the record, who they represent, beginning with
11  the party noticing this proceeding.
12      MS. WALL:  Thank you.  This is Amanda Wall
13  with Husch Blackwell for Triumph Foods.
14      MR. AMARA:  Abou Amara, Gustafson Gluek,
15  on behalf of the witness and on behalf of the
16  consumer indirect purchaser plaintiffs.
17      THE VIDEOGRAPHER:  Would the court
18  reporter please swear in the witness.
19
20          CHRISTOPHER DEERY,
21  having been satisfactorily identified and duly
22  sworn by the Notary Public, was examined and
23  testified as follows:
24
25
```

Page 53

1   A. Yeah. We don't really have those here.
2   It's usually, like, lettuce, carrots, vegetables,
3   produce like that.
4   Q. And we talked about Costco and Sam's Club.
5   So is it correct that you're a member of both
6   Costco and Sam's Club?
7   A. Yes.
8   Q. Do you know about how long you've been a
9   member of Costco?
10  A. Not offhand. No.
11  Q. Were you a member of Costco in 2008?
12  A. I can't recall.
13  Q. Do you believe you were a member of Costco
14  sometime within the time frame of 2008 to 2018?
15  A. Yes.
16  Q. What about your Sam's Club membership? Do
17  you recall when you started that?
18  A. I don't, but it would be in the same time
19  frame.
20  Q. Have you ever bought pork products from a
21  convenience store?
22  A. No. That's not a thing here.
23  Q. What about a butcher or a specialty shop?
24  A. No.
25  Q. Dollar Store?

Page 54

1   A. No.
2   Q. Other than the grocery stores we've
3   discussed, is there anywhere else retail storewise
4   that you purchased pork products?
5   A. No. Just the ones we've discussed.
6   Q. Between 2008 and 2018, did you purchase
7   pork products from restaurants?
8   A. Yes. Like going out to eat?
9   Q. Yes.
10  A. Yes.
11  Q. What restaurants?
12  A. I mean, like Texas Roadhouse or something
13  to that effect. I don't know.
14  Q. Okay. At Texas Roadhouse, what pork
15  product do you purchase from them?
16  A. Pork chop.
17  Q. I'm sorry. Did I miss your answer?
18  A. Pork chop.
19  Q. Any other restaurants that come to mind?
20  A. We'd be here all week. No. Like Chili's,
21  TGI Friday's. There's a lot. We could go down
22  the list.
23  Q. What kind of pork products would you eat
24  at Chili's?
25  A. It would be like a pork tenderloin, pork

Page 55

1   sandwich, pulled pork.
2   Q. What about TGI Friday's?
3   A. Same. Barbecue pork, pork chop.
4   Q. How often would you say you eat out at
5   restaurants?
6   A. Probably once a week.
7   Q. Was that also true in 2008 to 2018?
8   A. Yes.
9   Q. And when you eat out at a restaurant
10  approximately once a week, how often would you say
11  you purchase some type of pork product?
12  A. Quite a bit.
13  Q. More than half the time you go out?
14  A. I'd probably say 75 percent of the time.
15  Q. Are the restaurants that we discussed, are
16  those all located in Fargo?
17  A. Correct.
18  Q. Have you on occasion ate at a restaurant
19  outside of North Dakota?
20  A. Yes.
21  Q. Would that be when you're traveling,
22  vacation, things like that?
23  A. Yes.
24  Q. What about fast food establishments? Are
25  there any fast food that you purchase pork at?

Page 56

1   A. No.
2   Q. Have you ever purchased pork through a
3   meal delivery kit like Blue Apron?
4   A. No.
5   Q. Have you ever purchased pork straight from
6   the farm?
7   A. No.
8   Q. Or from a wholesaler?
9   A. No.
10      MS. WALL: All right. I think this is a
11  good time for a break if that works for you,
12  Mr. Deery and Mr. Amara.
13      MR. AMARA: That works.
14      MS. WALL: Okay. How long do you want to
15  take?
16      THE VIDEOGRAPHER: The time is 10:14 a.m.
17  We are going off the record.
18      (Recess from 10:14 a.m. to 10:28 a.m.)
19      THE VIDEOGRAPHER: The time is 10:28 a.m.
20  We are back on the record.
21  BY MS. WALL:
22  Q. Mr. Deery, we're back on the record. And
23  you understand you are still under oath. Correct?
24  A. Correct.
25  Q. All right. You testified that you believe

Page 57

1 there's a conspiracy among industry participants
2 in the pork industry to increase the price of pork
3 based on your observations in grocery stores. Do
4 you recall testifying to that?
5    A. Yes.
6      MR. AMARA: Objection, form.
7    A. Yes.
8    Q. And your observation that pork prices
9 increased was based off of your observations in
10 grocery stores. Correct?
11    A. It wouldn't be observations. It would be
12 I actually bought the product.
13    Q. But your observation that prices of pork
14 products increased was based off of your firsthand
15 knowledge purchasing pork products in grocery
16 stores. Is that fair?
17      MR. AMARA: Objection, misstates prior
18 testimony.
19    A. I guess can you ask the question again?
20 I'm not sure what you're asking.
21    Q. Sure. Your observation that pork prices
22 increased is based off of your firsthand knowledge
23 purchasing pork products in grocery stores?
24      MR. AMARA: Objection to form.
25    A. Yes.

Page 58

1    Q. And you attribute the increase in pork
2 products to pork companies; for example,
3 Smithfield or Tyson. Correct?
4      MR. AMARA: Objection, form.
5    A. And others. But yes.
6    Q. What is your specific factual basis for
7 attributing the increase in pork prices to these
8 pork companies?
9      MR. AMARA: Objection to form.
10    A. Being a consumer in North Dakota, shopping
11 in those grocery stores.
12    Q. Other than being a consumer, do you have
13 any other factual basis for attributing the
14 increase of pork prices to pork companies?
15      MR. AMARA: Objection to form.
16    A. Just what I supplied to my counsel.
17    Q. What was that that you supplied? Are you
18 referring to the receipts?
19    A. Correct.
20    Q. Anything else that you supplied?
21    A. No, ma'am.
22    Q. Do you attribute any part of the increase
23 in pork products to the grocery store itself?
24      MR. AMARA: Objection, calls for
25 speculation.

Page 59

1    A. I don't know.
2    Q. Is it possible that the increase of pork
3 was based off the grocery store increasing the
4 price of pork?
5      MR. AMARA: Objection, calls for
6 speculation. "Possible."
7    A. I don't know.
8    Q. All right.
9      MS. WALL: We are going to turn again to
10 what we marked as Exhibit 2, the complaint. Let's
11 turn to page 103. And we're going to be looking
12 at Paragraph 219.
13    Q. Let me know when you get there.
14    A. Okay.
15    Q. Okay. So Paragraph 219 reads, "Plaintiff
16 Chris Deery was a resident at all relevant times
17 of Fargo, North Dakota. During the Class Period
18 and while residing in North Dakota, plaintiff
19 Deery indirectly purchased pork and pork products
20 for his own use and not for resale that was
21 produced by one or more defendants or their
22 co-conspirators. Plaintiff Deery suffered injury
23 as a result of defendants' conduct alleged
24 herein."
25      Do you see where I read that?

Page 60

1    A. Yes.
2    Q. And did I read that correctly?
3    A. Yes.
4    Q. Which defendants or coconspirators did you
5 purchase pork from between 2008 and 2018?
6      MR. AMARA: Objection, foundation.
7    A. Hormel, Smithfield, Tyson, just to name a
8 few.
9    Q. Any others that come to mind?
10    A. No, ma'am.
11    Q. Can you tell me as a matter of fact that
12 the prices of pork between -- sorry -- the prices
13 of pork produced by defendants or the
14 coconspirators increased between 2008 to 2018?
15      MR. AMARA: Objection, calls for
16 speculation.
17    A. I don't know.
18    Q. Your testimony is you don't know if prices
19 of pork produced by defendants or coconspirators
20 increased between 2008 to 2018. Is that correct?
21    A. Correct.
22      MR. AMARA: Objection, misstates prior
23 testimony.
24      That's not what he said.
25    Q. Mr. Deery, did you testify that you don't

Page 61

1 know as a matter of fact that the prices of pork
2 produced by defendants or coconspirators increased
3 between 2008 to 2018?
4  **A. It has increased.**
5  Q. It has increased. Was that your answer,
6 Mr. Deery?
7  **A. Correct.**
8  Q. And how do you know that?
9  **A. The receipts I gave to counsel. Again,**
10 **being an observer.**
11  Q. Did the prices of pork produced by
12 defendants or their coconspirators ever decrease
13 between 2008 to 2018?
14     MR. AMARA: Objection, foundation.
15  **A. That's all speculation. I don't know.**
16  Q. We talked about your observations or
17 personal knowledge that prices of pork increased.
18     Do you have any similar observations or
19 personal knowledge that prices of pork decreased
20 between 2008 and 2018?
21  **A. If the prices had decreased?**
22  Q. Correct.
23  **A. No.**
24  Q. When you purchased pork between 2008 to
25 2018 at the grocery store, did you receive a

Page 62

1 receipt?
2  **A. Yes.**
3  Q. And do you keep those receipts?
4  **A. Most of the time. Yes.**
5  Q. How long would you say you keep those
6 receipts on hand?
7  **A. Days. To make sure that -- I check my**
8 **bank account and then I shred them.**
9  Q. So on average, how long do you have
10 receipts before you shred them?
11  **A. I don't know. A day. There's a lot of**
12 **fraud.**
13  Q. You keep those receipts for about a day or
14 so?
15  **A. Correct.**
16  Q. And has that been your practice since
17 2008?
18  **A. Correct.**
19  Q. Has counsel ever instructed you to keep
20 receipts from your purchases of pork?
21  **A. Mr. Amara?**
22  Q. Or any other attorney?
23  **A. Yes.**
24  Q. When was the first time you were
25 instructed to keep your receipts?

Page 63

1  **A. I don't recall the exact time. Probably**
2 **three, four years ago.**
3  Q. After you became involved in this lawsuit?
4  **A. From counsel?**
5  Q. Yes.
6  **A. Yes.**
7  Q. Do you recall how soon after you became
8 involved you were instructed to keep your
9 receipts?
10  **A. No. But it was a common practice already.**
11 **I guess some receipts hung around longer too**
12 **because they have coupons on them.**
13  Q. Were there -- sorry. Go ahead.
14  **A. Go ahead.**
15  Q. For the receipts that you would hold onto
16 longer because they had coupons on them, how long
17 would you hold onto those before shredding them?
18  **A. Sometimes a month. That's when the coupon**
19 **expired.**
20  Q. Sure. So if you received the receipts,
21 checked your bank, and then shredded them within a
22 day or so after you were able to confirm they hit
23 your bank and shredded them, do you have a sense
24 for how many receipts, if any, you had between
25 2008 and 2018 when you were instructed to keep

Page 64

1 your pork purchase receipts?
2  **A. I don't know. I would be speculating on**
3 **my part.**
4  Q. Do you know if you had any?
5  **A. Had any what?**
6  Q. Had any receipts from the 2008-2018 time
7 period?
8  **A. To the best of my ability, I gave my**
9 **counsel what I had.**
10  Q. So is it fair to say that if a receipt was
11 not in the production we received from counsel,
12 then you didn't have it?
13  **A. Yeah. I guess at this time, yes. I could**
14 **probably produce more. That's what I had at the**
15 **time, and I gave my counsel what I had at the**
16 **time.**
17  Q. You said you could produce more. Do you
18 have or do you believe you have more receipts from
19 2008 to 2018 that you haven't produced yet to your
20 attorney?
21     MR. AMARA: Objection, calls for
22 speculation.
23  **A. I produced what I had to the best of my**
24 **ability to counsel at this time.**
25  Q. Have you thrown away any receipts since

Page 177

1  A. Number 5?
2  Q. Yes, please.
3  A. The response or the top one?
4  Q. The top is the question. So please just
5  read the question.
6      MR. AMARA: Can we make sure that's
7  reflected on the screen? I'm not seeing it.
8      MS. WALL: You need to scroll down a
9  little bit. Thank you. There you go.
10  A. "Identify and Describe in detail each
11  transaction in which You purchased any pork
12  products that You contend was impacted by the
13  alleged conspiracy, including (a) the identity of
14  all persons or entities from whom You purchased
15  any pork products; (b) a description of the
16  product(s) you purchased; (c) the amount
17  purchased; (d) the prices You paid, including any
18  discounts, rebates or promotions you received; and
19  (e) the dates of the purchase."
20  Q. Let's go to page 14, the next page. So
21  your attorney has asserted some objections to that
22  request. But then halfway down, before we get to
23  Interrogatory 6, starting with "Without."
24  A. "Without waiving the foregoing objections
25  and to the extent any individual Consumer

Page 178

1  remembers such specific details, that information
2  is included in Exhibit A"?
3  Q. Yup. That's the sentence I was going to
4  ask you to read. So perfect.
5      So that response is indicating your
6  response to Interrogatory No. 5 that you just read
7  to the extent that any consumers, such as
8  yourself, remember specific details, that
9  information is included in Exhibit A. Correct?
10  A. Correct.
11  Q. Okay. Let's take a look at Exhibit A. It
12  should be page 26. And when we get there, we'll
13  scroll to the bottom where Mr. Deery is in each of
14  them.
15  A. Okay.
16  Q. All right. And, Mr. Deery, we talked
17  through kind of the lines. You see where your
18  name shows up on this document, Exhibit A.
19  Correct?
20  A. Yes.
21  Q. We talked through these places that you
22  purchased and the pork products, some other
23  details that are contained in Exhibit A. Correct?
24  A. Correct.
25  Q. Is this a complete answer to the question

Page 179

1  that you read in Interrogatory No. 5?
2      MR. AMARA: Objection, calls for a legal
3  conclusion.
4      MS. WALL: How does it call for a legal
5  conclusion, Mr. Amara?
6      MR. AMARA: Because these are the
7  purchases that would be then be adjacent with any
8  corresponding damages.
9      Your question is about damages. And so
10  you're calling for a conclusion to determine the
11  scope of purchases that would result in the
12  damages. That's why it's a legal conclusion.
13      MS. WALL: I think if you go back and read
14  Interrogatory No. 5, the question is asking
15  purchases of pork products that were impacted by
16  the alleged conspiracy.
17      MR. AMARA: Correct. With the objection
18  that he read that said that to the extent that the
19  plaintiff remembers.
20      MS. WALL: Right. So that's fair.
21  Q. So, Mr. Deery, to the extent that you
22  remember, is the response under your name for
23  Exhibit A a complete answer to question to
24  Interrogatory No. 5?
25  A. To the best of my knowledge, yes.

Page 180

1  Q. Okay. Thank you.
2      MS. WALL: I do not have anything else for
3  you.
4      MR. AMARA: Okay. Can we go offline?
5      THE VIDEOGRAPHER: The time is 2:47 p.m.,
6  and we are going off the record.
7      (Recess from 2:47 p.m. to 2:49 p.m.)
8      THE VIDEOGRAPHER: The time is 2:49 p.m.
9  We're back on the record.
10          EXAMINATION BY COUNSEL FOR
11          CONSUMER INDIRECT PURCHASER PLAINTIFFS
12  BY MR. AMARA:
13  Q. So, Mr. Deery, my name is, as you know,
14  Abou Amara, and I'm one of the attorneys on behalf
15  of the consumer indirect purchaser plaintiffs.
16      Ms. Wall has completed her deposition, so
17  I'm just going to ask you some brief questions now
18  on what is referred to as "redirect."
19      Just two areas that I just wanted to
20  clarify some of your testimony that you provided
21  to Ms. Wall. So the first really is around the
22  timeline and how you handled receipts once you
23  made purchases.
24      So from 2009 until you joined the case in
25  the fall of 2018, it was your -- did you testify

Page 181

1. that it was your practice that you purchased pork,
2. then threw the receipts away a day or so after?
3. **A. Correct.**
4. Q. And those purchases between 2009 or 2008
5. and before you joined the case were before you
6. spoke to lawyers about any duty to preserve
7. documents. Is that correct?
8. **A. Correct.**
9. Q. So you were under no duty to keep those
10. documents. Is that correct?
11. **A. Correct.**
12. Q. And so then you joined the case in the
13. fall of 2018. Is that correct?
14. **A. Yes.**
15. Q. And at that time, you don't have any
16. receipts that are dated pre-June 30th, 2018. Is
17. that correct?
18. **A. Yes. That's correct.**
19. Q. And so once you joined the case in the
20. fall of 2018, then you -- can you describe how
21. your practice changed between 2008 to 2018 and
22. 2018, the fall, once you joined the case moving
23. forward?
24. **A. Moving forward, I did have that duty to**
25. **preserve the evidence through my camera. So my**

Page 182

1. **iPhone, I would capture the receipt and then send**
2. **it accordingly to my attorneys.**
3. Q. So was it your intention by taking
4. photographs of the receipts before discarding
5. them, again after June 30th of 2018, it was your
6. intention to preserve those receipts by taking
7. photos of them and sending them to your lawyers?
8. **A. Correct. As soon as I got them.**
9. Q. And that was done to the best of your
10. abilities to reach or to meet your duty to
11. preserve documents?
12. **A. That is correct.**
13. Q. Okay. And have you continued to do so in
14. good faith?
15. **A. That's correct.**
16. MS. WALL: Objection, legal conclusion as
17. to "good faith."
18. Q. I'll restate the question. Did you do
19. that to the best of your abilities?
20. **A. Yes.**
21. Q. And did you do so seeking to comply with
22. what your attorneys told you to comply with?
23. **A. Yes.**
24. Q. Great. So that's the first topic, kind of
25. how you handled receipts generally.

Page 183

1. The second really goes to where you made
2. purchases. You testified earlier -- and correct
3. me if I'm wrong -- that Fargo straddles -- it's in
4. a metropolitan area but straddles two states, the
5. state of Minnesota and the state of North Dakota.
6. Is that correct?
7. **A. Yes, it is.**
8. Q. And I believe you testified that -- well,
9. let me strike that.
10. Opposing counsel showed you a receipt of a
11. purchase of pork made in Minnesota. Is that
12. correct?
13. **A. Yes.**
14. Q. And I believe then you testified that
15. 99 percent of your purchases of pork were made in
16. the state of North Dakota. Is that correct?
17. **A. Yes, that is.**
18. Q. And 1 percent of your pork purchases maybe
19. were in the state of Minnesota. Is that correct?
20. MS. WALL: Objection.
21. **A. It is.**
22. MS. WALL: That's not what he testified
23. to.
24. Q. Mr. Deery, can you restate how you
25. described that ratio earlier when you testified

Page 184

1. with Ms. Wall as to the number of purchases or the
2. percentage of purchases made in North Dakota as
3. opposed to in Minnesota?
4. **A. In North Dakota, it was 99 to 100.**
5. Q. So I just want to make sure I understand
6. that. Are you saying 99 percent of the pork
7. purchases you made were made in the state of North
8. Dakota?
9. **A. Yes. That's correct. In North Dakota.**
10. Q. And then just 1 percent of the purchases
11. you made of pork were in the state of Minnesota.
12. Is that correct?
13. **A. Yes.**
14. MR. AMARA: Okay. With those two complete,
15. I have no further questions.
16. MS. WALL: Nothing further from me.
17. MR. AMARA: And then just for the record,
18. the consumer indirect purchaser plaintiffs will be
19. asking for a read and sign on the deposition
20. transcript here.
21. THE VIDEOGRAPHER: Okay. If there are no
22. further questions, the time is 2:54 p.m. We're
23. going off the record.
24. (Whereupon the deposition
25. was concluded at 2:54 p.m.)