# EXHIBIT L

## Page 1

```
 1
 2  UNITED STATES DISTRICT COURT
 3  DISTRICT OF MINNESOTA
 4  Case No. 0:18-cv-01776-JRT-HB
 5  ----------------------------------
 6
 7  IN RE:
 8  PORK ANTITRUST LITIGATION
 9
10  ----------------------------------
11
12
13
14     REMOTE VIDEO DEPOSITION OF SANDRA STEFFEN
15
16            Friday, April 29, 2022
17               11:00 a.m. (PT)
18
19
20
21
22  Reported by:
23  Joan Ferrara, RMR, FCRR
24  Job No. 2022-837310
25
```

## Page 2

```
 1
 2
 3
 4                April 29, 2022
 5                11:00 a.m. (PT)
 6
 7
 8
 9         Videotaped Deposition of SANDRA
10  STEFFEN, held remotely via Zoom, before
11  Joan Ferrara, a Registered Merit Reporter,
12  Federal Certified Realtime Reporter and
13  Notary Public.
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1
 2  REMOTE APPEARANCES:
 3
 4  KIRKLAND & ELLIS LLP
 5  Counsel for Clemens Food Group, LLC and The
 6  Clemens Family Corporation
 7         60 East South Temple Street
 8         Salt Lake City, Utah 84111
 9  BY:    BRYANT WATSON, ESQ.
10         JENNA STUPAR, ESQ.
11
12
13  GUSTAFSON GLUEK PLLC
14  Counsel for Consumer Indirect Purchasers and
15  The Witness
16         120 South 6th Street
17         Suite 2600
18         Canadian Pacific Plaza
19         Minneapolis, Minnesota 55402
20  BY:    LING S. WANG, ESQ.
21
22
23  ALSO PRESENT:
24         CAYLOB SUAREZ, Videographer
25
```

## Page 4

```
 1
 2  --------------- I N D E X ---------------
 3  WITNESS          EXAMINATION BY       PAGE
 4  SANDRA STEFFEN   MR. WATSON              6
 5
 6
 7  DOCUMENT REQUEST:                     PAGE
 8  1)  Three receipts not already
 9      produced                            77
10
11
12  --------------- EXHIBITS ----------------
13  STEFFEN                             FOR ID.
14     (PROVIDED ELECTRONICALLY TO REPORTER)
15  Exhibit 1   Resumé of Sandra Steffen    27
16  Exhibit 2   Document                    32
17  Exhibit 3   Receipts                    63
18  Exhibit 4   Receipts                    71
19  Exhibit 5   Receipt                     73
20  Exhibit 6   Updated Resumé of Sandra
21              Steffen                     90
22  Exhibit 7   Bankruptcy petition         99
23
24
25
```

Page 73

1  S. STEFFEN
2  buy 10 items, get for them $1 apiece and
3  you're getting 50 cents off each item.
4      And those items are usually
5  indicated on your receipt that -- like if
6  you look up above, it says E-coupon Coke.
7  They had an E-coupon. This could have been
8  a regular sale price, you know, just a
9  weekly sale price. It wasn't like a coupon
10 or special promotion.
11     Q.  Are the sale prices always
12 reflected in the receipt or are they --
13 strike that.
14     Are the sale prices always
15 reflected in the receipts?
16     MS. WANG: Object to form.
17     A.  Don't know.
18     Q.  That's all I have on that
19 exhibit.
20     MR. WATSON: We'll move to the
21 next. It's going to be Tab 6 for you,
22 Ms. Steffen.
23     (Steffen Exhibit 5, Receipt,
24     remotely introduced and provided
25     electronically to the reporter.)

Page 74

1       S. STEFFEN
2  A.  Uh-huh, yes.
3  Q.  Does Tab 6 have a timestamp?
4  A.  I can't read it if it does.
5  Q.  Or does it have a date stamp
6  reflecting when this purchase was made?
7  A.  I don't see it on here.
8  Q.  Do you recall --
9  A.  My original receipt may show it.
10 Q.  Is the balance reflected for this
11 receipt $51.78?
12 A.  Yeah.
13 Q.  And is this a receipt that you
14 produced to counsel?
15 A.  Yes.
16 Q.  Do you have any memory of when
17 you made this purchase?
18 A.  Can I look at my receipts that I
19 have, my originals?
20 Q.  Sure.
21 A.  Okay. Then I can be a little bit
22 more clear about what's going on with this
23 receipt. Because no, I don't have a memory
24 of this purchase. However, this may be a
25 receipt -- there was one receipt that I had

Page 75

1  S. STEFFEN
2  that the date was unreadable.
3      Yeah, this is the one that -- you
4  can't read the date. The date should be --
5  the date should be below where it says
6  "Ralph's Reward Savings" down at the
7  bottom. Right underneath that is a receipt
8  and it's dated apparently.
9      However, I did find this receipt
10 attached to my credit card statement and
11 the date on the amount of this purchase, on
12 the credit card statement, it said it was
13 12/16/17.
14     Q.  And what is it that you pulled
15 the receipt out of, the original receipt,
16 the folder?
17     A.  Oh, that's just my folder that
18 goes in my file cabinet for this
19 litigation.
20     Q.  What other documents do you have
21 in that folder?
22     A.  I have additional receipts. I
23 have a copy of the Fourth Amended
24 Complaint. I have a copy of a
25 questionnaire that I --

Page 76

1       S. STEFFEN
2  MS. WANG: Ms. Steffen -- Sandy,
3  I don't think we need to get into
4  everything that counsel --
5  **THE WITNESS: That's it.**
6  MR. WATSON: Counsel, can you
7  stick to speaking objections, to form?
8  MS. WANG: And I also just want
9  to caution the witness to the extent
10 that any of those documents are
11 communications between you and
12 counsel, please do not reveal that.
13 Q.  How many receipts do you have in
14 there?
15 A.  I have five -- eight total.
16 Q.  And do all of those receipts show
17 pork purchases?
18 A.  Yes.
19 Q.  And did you give those receipts
20 to your counsel for production?
21 A.  All but three.
22 Q.  Is there a reason you did not
23 give the other three receipts to your
24 counsel?
25 A.  I was advised just to hold on to

Page 77

1  S. STEFFEN
2  them.
3  Q.  Who advised you to do that?
4  A.  **My attorneys.**
5  Q.  I believe we have one more
6  exhibit to do.  One moment.
7      MR. WATSON:  We'll request those
8  additional three receipts formally
9  from your counsel and we can address
10  this issue off the record afterwards
11  if that works for opposing counsel.
12     MS. WANG:  Certainly, but I do
13  want to represent to you that any
14  documents that were responsive were
15  produced, so.
16     Would now be a good time to take
17  a quick lunch break?
18     MR. WATSON:  I actually think
19  that we could probably push through
20  and get done within the next probably
21  45 minutes to an hour, but we could
22  also take the lunch break if
23  Ms. Steffen would like to.
24     MS. WANG:  Sandy --
25     **THE WITNESS:  I kind of got lost**

Page 78

1  S. STEFFEN
2  **in all that.**
3     MR. WATSON:  I have about 45
4  minutes left.  Would you prefer to
5  push through and wrap up or would you
6  prefer to take lunch?
7     **THE WITNESS:  I would like to**
8  **take some sort of break.  It doesn't**
9  **have to be, for my part it doesn't**
10 **have to be very long, if we're going**
11 **to wrap this up fairly soon, but I**
12 **would like to take a quick break.**
13     MR. WATSON:  Absolutely.  Why
14  don't we go ahead and take a quick
15  break.  How long do you want,
16  Ms. Steffen?
17     **THE WITNESS:  Ling, it's up to**
18 **you.**
19     MS. WANG:  You know, why don't we
20  take like a 15-minute break.  Does
21  that work?
22     MR. WATSON:  Perfect.  Thanks.
23     THE VIDEOGRAPHER:  The time is
24  1:05 p.m.  We are now going off the
25  record.

Page 79

1  S. STEFFEN
2     (Recess taken from 1:05 p.m. to
3  1:27 p.m. PT)
4     THE VIDEOGRAPHER:  The time is
5  1:27 p.m.  We are now back on the
6  record.
7  BY MR. WATSON:
8  Q.  Besides your counsel, have you
9  discussed this lawsuit with anyone else?
10 A.  No.
11 Q.  Have you read any press releases
12 or newspaper articles regarding this
13 lawsuit?
14 A.  No.
15 Q.  In your own words, what is this
16 case about?
17 A.  **It's my understanding that the**
18 **Defendants conspired to restrict the supply**
19 **of pork which consequently inflated the**
20 **price to consumers.**
21 Q.  And who are the Defendants?
22 A.  **Agri Stats, Hormel, Tyson,**
23 **Clemens, Smithfield, JBS -- there's**
24 **probably others that just aren't popping**
25 **into my head at the moment.**

Page 80

1  S. STEFFEN
2  Q.  When do you understand -- strike
3  that.
4     In your view, when did the
5  alleged conspiracy begin?
6     MS. WANG:  Object to form.
7  Foundation.
8  A.  **I have seen in pleadings, I**
9  **believe, that as early as 2009.**
10 Q.  In coming to reach an
11 understanding about this case, have you
12 relied on any other documents other than
13 those provided to you by your attorneys?
14 A.  **I'm sorry, could you repeat that?**
15 Q.  You stated earlier an
16 understanding of this case and an alleged
17 conspiracy.  How did you come to reach that
18 understanding?
19 A.  **Through discussions with counsel.**
20 Q.  Have you read any legal documents
21 filed in this case?
22 A.  **Yes.**
23 Q.  Which ones?
24 A.  **I believe the first document was**
25 **the Second Amended Complaint -- no, no --**