**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-1776 (JRT/JFD) |

---

*This Document Relates to*:

All Consumer Indirect Purchaser Plaintiff
Actions

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT BETWEEN CONSUMER INDIRECT PURCHASER PLAINTIFFS AND JBS DEFENDANTS AND GRANTING MOTION FOR ATTORNEY FEES AND EXPENSES**

---

After executing the class notice plan the Court approved for disseminating notice of a settlement the Court preliminarily approved, the Consumer Indirect Purchaser Plaintiffs ("Consumer IPPs") filed a Motion for Final Approval of the Class Action Settlement between Consumer IPPs and JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company (collectively, "JBS Defendants"). (Mot. Approval of Settlement, ECF No. 990.) They have also filed a Motion to Award Attorney Fees and Expenses. (Mot. Att'y Fees, ECF No. 949.)

The Court has reviewed the memorandum submitted by the Consumer IPPs in support of their Motion and the various declarations and submissions relating to that motion. The Court has also reviewed the Consumer IPPs' Motion for Attorneys' Fees and Expenses ("Fee Request," ECF No. 951) and the various declarations and submissions relating to that motion. The Court has also reviewed the objections of putative class member Shiyang Huang to these motions. (ECF Nos. 948, 973, 998, 1010,

and 1042).  The Court held a hearing on the motions including hearing argument from both Counsel for the Consumer IPPs and Huang.

Based on the record and proceedings before the Court, it is hereby **ORDERED**:

1.     This Court has jurisdiction over this action and each of the parties to the Settlement Agreement.

2.     This Court certifies a Settlement Class defined as:

> All persons and entities who purchased pork indirectly from any of the Defendants or any co-conspirator, or their respective subsidiaries or affiliates, for personal use in the United States from at least as early as January 1, 2009 until the date of the order granting Preliminary Approval of the Settlement Agreement.  Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.  Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and members of his/her immediate family and judicial staff, and any juror assigned to this action.

This class definition is in all material respects the same settlement class proposed in the Consumer IPPs' Third Amended Consolidated Amended Class Action Complaint, (ECF Nos. 866 (redacted), and 865 (sealed)), and the same class set forth in the Settlement Agreement.  (*See* Decl. of Shana E. Scarlett, Ex. A ("Settlement Agreement") ¶ 5, ECF No. 743.)

3.     The Court appoints the law firms of Hagens Berman Sobol Shapiro LLP and Gustafson Gluek, PLLC as Co-Lead counsel for the Settlement Class.

4.     Upon review of the record, the Court finds that the Settlement Agreement is a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23(e)(2).

To date, Class Representatives have adequately represented the class as demonstrated by their involvement in discovery and participation in the prosecution of this case.  To date, Class Counsel has adequately represented the class as demonstrated by its development of the case across multiple years, extensive motion practice, and work to reach a resolution for the class.  The terms of the Settlement Agreement also support a conclusion that class representatives and class counsel have adequately represented the class.  *See White v. Nat'l Football League*, 822 F. Supp. 1389, 1406 (D. Minn. 1993).

The proposed Settlement Agreement has been negotiated at arm's length as evidenced in part by the extensive negotiations and mediation.  (*See* Decl. of Shana E. Scarlett ¶¶ 4–5, ECF No. 743.)

The settlement provides adequate relief for the class in the form of $20 million in monetary compensation and cooperation from JBS in the ongoing litigation, after considering the Rule 23(e)(2)(C) factors.   The monetary compensation provides substantial, more immediate, and certain relief to the class and eliminates the costs of prosecuting the case against the JBS Defendants.  The cooperation guarantee increases the likelihood of success for the class against the non-settling defendants while decreasing the costs of prosecuting the case against them.  It avoids what would almost

certainly be a long delay by proceeding to trial and through appeals.  The settlement also avoids the substantial risk for the class of moving this complex antitrust case through summary judgment motions, trial, and appeals.  The proposed method of distributing the settlement proceeds to class members who file claims on a pro rata basis based on their purchases is reasonable given the nature of the allegations and the class.  Based on the allegations, it is reasonable to believe at this stage that, if the class's allegations are true, defendants benefited from the harm to class members approximately based on the proportion of purchases class members made.  The proposed attorney fees and their timing—as discussed in more detail below—appears reasonable and in line with similar cases.  The Court has been provided with and reviewed all Rule 23(e)(3) agreements and the full terms of the agreements including the cooperation requirement support a finding that the relief is adequate.

Other than some possible service awards to the Class Representatives which the Court will consider on a case-by-basis to ensure their fairness to the class, the settlement and distribution method treats all class members equitably by providing monetary relief on a pro rata basis based on the qualifying purchases made.

The settlement is also fair, reasonable, and adequate under the four considerations the Eighth Circuit derived before the Rule 23(e)(2) factors were added. Courts were directed to consider (1) the relative merits of the class claims balanced against the settlement terms, (2) the defendant's ability to pay, (3) the complexity and

length of further litigation, and (4) opposition to the settlement from class members. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999). The most important consideration is the strength of the case as compared with the settlement amount. *Id.* at 1150. As discussed, this settlement provides substantial relief against the backdrop of a great deal of uncertainty where the merits are highly contested. Although the JBS Defendants may have the ability to pay a larger settlement, nothing here suggests that alone warrants a larger settlement. *See id.*; *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-1958, 2013 WL 716088, at *7 (D. Minn. Feb. 27, 2013). Proceeding through all remaining parts of this case without a settlement will take years of complex, difficult, and uncertain proceedings. Finally, no class members have objected to the settlement terms, and none have opted out. The only objection to this Motion is to a legal question of whether a settlement class can be certified, not an objection to whether the settlement itself is fair, adequate, or reasonable.

5.       Before granting final approval to a class settlement, the Court must ensure that the class proposed by the settlement meets the Rule 23 requirements to proceed as a class. Plaintiffs propose certification of a class under Rule 23(b)(3).

Plaintiffs "seeking class certification 'must affirmatively demonstrate [their] compliance' with Rule 23." *Hudock v. LG Elecs. U.S.A., Inc.*, 12 F.4th 773, 775 (8th Cir. 2021) (quoting *Comcast Corp v. Behrend*, 569 U.S. 27, 33 (2013)). "[P]laintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule

23(b)." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  Plaintiffs bear the burden of showing that a class action is appropriate and that all the requirements of Rule 23 are met.  *See Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018).

The Court must conduct a "rigorous analysis," and "[f]requently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  When conducting this analysis, however, "the Court accepts the substantive allegations in the plaintiff's complaint as true." *Mathers v. Northshore Mining Co.*, 217 F.R.D. 474, 483 (D. Minn. 2003).  The Court has "broad discretion to decide whether certification is appropriate." *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012).  In exercising this discretion, the Court gives the benefit of the doubt to approving the class. *Mathers*, 217 F.R.D. at 483.

To certify a class, Plaintiffs must demonstrate compliance with all four of Rule 23(a)'s requirements. *In re St. Jude Med.*, Inc., 425 F.3d at 1119.  These requirements are:

> (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The Rule 23(a)(1) numerosity requirement is satisfied.  The proposed timeline for the class spans more than a decade and the proposed class is comprised of millions of people who purchased pork products over that time.

To establish Rule 23(a)(2) commonality, class claims "must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350. In other words, the Court considers whether proceeding as a class will "generate common *answers* apt to drive resolution of the litigation."  *Id.* (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).  Common questions appear to underlie Consumer IPPs claims.  They allege, among other claims, Defendants including the JBS Defendants engaged in a conspiracy that caused an increase in the price pork consumers paid and that this conspiracy was illegal.  Resolution of these allegations and legal claims would generate common answers and resolve the Consumer IPPs claims in one stroke.

To establish Rule 23(a)(3) typicality, the Court must determine "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named

plaintiff[s]." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).  Variations between class members and proposed class members will not preclude finding typicality "if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).  The named plaintiffs' claims are based on the same alleged conspiracy as that of all class members.  Class members—including the named plaintiffs— allegedly suffered a common injury with the main difference between class members being the amount of harm suffered depending on the amount of pork products a class member purchased.  Because they have the same interests, the named plaintiffs are typical and have the same interests in pursuing this case.

Finally at the Rule 23(a) step, the Court must decide whether the named plaintiffs and counsel will "fairly and adequately protect the interests of the Class."  Fed. R. Civ. P. 23(a)(4).  To demonstrate adequacy of representation, a plaintiff must show that "(1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012).  This inquiry requires the Court to evaluate the adequacy of both the named plaintiffs and the class counsel.  Similar to typicality, the named plaintiffs have the same interests as the class as a whole.  They have also actively participated in the case to ensure the class is

well represented.  Class Counsel has demonstrated throughout this litigation that it is well-qualified and experienced and has devoted substantial resources to this case.  They have engaged in substantial investigation and motion practice.  They have accepted considerable risk.  In short, Counsel has competently and vigorously represented the class, and the Court is confident they will continue to do so.

In sum, the class meets the four Rule 23(a) requirements for class certification.

A Rule 23(b)(3) class may be certified if "the court finds that the questions of law or fact common to class members **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3) (emphasis added).  Rule 23(b)(3) provides a non-exhaustive list of considerations: (1) the class members' interests in retaining individual control, (2) the extent and nature of any litigation already begun, (3) the desirability of concentrating the litigation in a particular forum, and (4) the difficulties in managing the class action.  *Id.*

Objector Huang contends that the proposed settlement class fails to meet the requirements of Rule 23(b)(3) because the Consumer IPPs have insufficiently proven that common questions will predominate over individual questions arguing the Consumer IPPs have not introduced enough actual evidence to support such a finding.  For their part, the Consumer IPPs contend that courts apply a relaxed standard to Rule 23(b)(3) when

evaluating whether to certify a class for settlement purposes as opposed to when considering certification for litigation.

The Consumer IPPs framing does not capture how courts handle the Rule 23(b)(3) requirements when certifying a class for settlement. Consumer IPPs are correct insofar as "[s]ettlement is relevant to a class certification." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). The standard, however, is not "relaxed." Rather the analysis is different as the Court must consider the stage of the case and how the settlement will affect the case. Most obviously, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Id.* at 620. This is so because there will be no trial. *Id.* But for other considerations, the standard is, if anything, heightened instead of relaxed. *See id.* This is so for at least two reasons. First, after certifying a class, courts have an ongoing duty to ensure the class meets the class certification requirements through the course of the litigation. *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 612 (8th Cir.), *amended*, 855 F.3d 913 (8th Cir. 2017). A settlement, however, ends litigation, leaving a court without the opportunity to adjust or decertify the class if it later becomes apparent that the class no longer satisfies Rule 23. *See Amchem Prod.*, 521 U.S. at 620. Second, defendants often vigorously resist class certification, but in the settlement context defendants acquiesce to class certification and settlements may present the risk of collusion between class counsel and defendants. *See Petrovic v. Amoco*

*Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999).  A rigorous analysis of Rule 23's requirements protects against this, thereby protecting absent class members.  *See Amchem Prod.*, 521 U.S. at 620.

Objector Huang's framing of what plaintiffs seeking to certify a settlement class must present to a court also does not capture what courts look for when evaluating the Rule 23(b)(3) requirements.  Huang is correct insofar as plaintiffs bear the burden of proving the class meets the Rule 23 requirements.  *See Postawko*, 910 F.3d at 1036.  And that this burden requires plaintiffs to "affirmatively demonstrate" compliance with these requirements, not merely plead that a class exists or that Rule 23's requirements are met. *Dukes*, 564 U.S. at 350.  Huang, however, argues that the Consumer IPPs have presented nothing in support of class certification.

Huang acknowledges that under Eighth Circuit precedent evidence considered at the class certification stage need not be admissible as if the evidence is being introduced at trial.  *See In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 611 (8th Cir. 2011) ("We have never required a district court to decide conclusively at the class certification stage what evidence will ultimately be admissible at trial.")  Instead, courts may engage in a tailored evidentiary analysis that focuses on issues related to class certification.  *See id.* at 612.  If courts were required to make evidentiary determinations at the class certification stage, it would drastically increase the burden on parties and courts.  Parties may feel a need to mount a full challenge to admissibility out of a fear that courts would

be reluctant to later exclude evidence they had considered under a full admissibility standard, even if parties do not formally waive future admissibility arguments.  *Cf. Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[A] preliminary determination . . . may result in substantial prejudice . . . . The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings[.]").  Courts would have to fully weigh admissibility for class certification and then reweigh it at future stages.  And this first evaluation would occur before the completion of merits discovery which may affect the admissibility of some evidence.  An exhaustive and conclusive admissibility analysis at this point while evidence still may shift is inconsistent with the nature of pretrial rulings such as class certification.  *In re Zurn Pex*, 644 F.3d at 613 ("[A]n exhaustive and conclusive *Daubert* inquiry before the completion of merits discovery cannot be reconciled with the inherently preliminary nature of pretrial evidentiary and class certification rulings.").

Huang, instead, contends that the Consumer IPPs have provided no evidentiary support that demonstrates common questions predominate over individualized questions.  It is a little unclear, however, what Huang contends is required of plaintiffs, other than acknowledging whatever they present need only survive a tailored admissibility test.  It appears Huang may be contending that plaintiffs seeking to certify classes must file affidavits, expert testimony, deposition testimony, or other materials alongside their motions for class certification.  While such filings may be helpful or even

necessary to resolve class certification in many cases and especially when defendants

provide evidence in opposition to class certification, the Court is unaware of any binding

law requiring this of parties in every instance.  Such a rule would require parties to

proceed through discovery even when a defendant readily acknowledges liability and

wishes to avoid the burdens of discovery.  It would defeat Rule 23(c)(1)(A)'s command

that a court determine class certification at "an early practicable time."  And it would

drive up the cost of litigation, increase the burdens on courts, and run counter to the

purpose of the Rules of Civil Procedure and the policy of favoring settlements.  *See* Fed.

R. Civ. P. 1 ("[The Rules] should be construed, administered, and employed by the court

and the parties to secure the just, speedy, and inexpensive determination of every action

and proceeding."); *Petrovic*, 200 F.3d at 1148; *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 252 (8th

Cir. 1996).

The Consumer IPPs Third Amended Complaint does not merely plead that it meets

the Rule 23 requirements of class certification through a recitation of the elements or

labels and legal conclusions.  It instead explains why plaintiffs' claims may be treated as a

class including identifying several common questions.  (Third Amended Complaint

¶¶ 244–52, ECF No. 865.)  It also makes numerous factual allegations common to class

members—especially as it relates to Defendants' conduct and the effect of such conduct

on class members—that will drive resolution of class claims in one stroke via common

answers.  (*Id.* ¶¶ 17–155.)  Courts routinely consider the allegations in a complaint when

resolving preliminary matters. *See Dukes*, 564 U.S. at 351–52. At this stage, the Court accepts these substantive factual allegations as true. *See Mathers*, 217 F.R.D. at 483. And based on the focused admissibility analysis permitted at this stage, the Court can consider this evidence as a tailored inquiry indicates the evidence may be admissible. *See* Fed. R. Evid. 801(d)(2), 803(6), 803(8), 807. This evidence is sufficient for the Court to review the Rule 23 requirements including the predominance inquiry, at least here where the JBS Defendants have provided no evidence that could otherwise defeat class certification absent additional evidence from the Consumer IPPs.

The Settlement Agreement here also addresses several issues of individualized questions that often trip up class certification and may trip up pending class certification motions in this litigation. For example, it denies the JBS Defendants the ability to raise a statute of limitations affirmative defense that may present individualized questions, and it resolves whether damages can be calculated on a classwide basis by establishing an amount of damages and a method for distributing the recovery from the JBS Defendants. The Settlement Agreement also excludes many claims that would require individualized inquiries. (Settlement Agreement ¶ 14.) This is relevant to the class certification inquiry. *See Amchem Prod.,* 521 U.S. at 619.

Focusing on the JBS Defendants' alleged liability that is resolved by this settlement, the Consumer IPPs allege common questions of whether the JBS Defendants engaged in a conspiracy to increase the cost of pork products that harmed the Consumer IPPs. The

harms allegedly affected class members in a common manner by raising the price of pork products. These common questions appear to predominate over individualized inquiries that might otherwise serve to preclude this class certification, especially absent a settlement.

Therefore, at least for the purposes of this settlement and the current stage of the litigation, common questions of questions of fact and law predominate over individualized questions.

A class action is also the superior method of resolving the Consumer IPPs claims against the JBS Defendants. Because of the high costs and complexity of prosecuting this case for relatively little damages per class member, most class members would have no realistic day in court absent a class action. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). It is, thus, unlikely that class members would prefer to control individual actions. There is also no evidence that individual class members would prefer to control individual actions as no members opted out. The Court is unaware of other ongoing litigation begun by class members. There is a high desirability to concentrate the litigation. Indeed, the Joint Panel on Multidistrict Litigation directed that related cases filed in other districts be centralized here into a single multidistrict litigation. A class action will prevent inconsistent rulings and reduce the burdens on class members, defendants, and the court system. Even if there could be difficulties managing this class

if it continued to proceed, the Settlement Agreement resolves many of those issues.  *See Amchem Prods.*, 521 U.S. at 620.

In sum, after considering the law, all available evidence, and arguments from the Consumer IPPs and Huang, the proposed settlement class meets all the requirements of Rule 23(a) and Rule 23(b)(3), and the Court will certify a settlement class for the purposes of this settlement.[1]

6.     Consumer IPPs have executed the best notice practicable under the circumstances.  Consumer IPPs' notice constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice.  Consumer IPPs reached over 100,000 potential class members through their direct notice e-mail program.  And Consumer IPPs reached millions of potential class members through the indirect, publication notice efforts conducted in both English and Spanish.  The Notice Administrator estimates that the full program reached 81.1 percent of potential class members.  (Decl. of Eric Schachter

---

[1] To be clear, the Court's determinations that the Settlement Class here meets the Rule 23 standards for class certification, that the Consumer IPPs have presented sufficient evidence, and that this evidence meets the requirements for the Court to consider it on this Motion is limited to the narrow issues before the Court for this Motion.  Accordingly, the Court provides no opinion on whether class certification is appropriate for any plaintiff group including the Consumer IPPs for any claim against any of the other defendants in this consolidated case, including whether certification of a class for litigation would be appropriate.  The Court provides no opinion on whether the facts it considered here would be sufficient to certify a class for other purposes, especially in the face of competing facts presented by defendants or when questions unresolved by a settlement are still in play.  And it provides no opinion on whether it is proper for the Court to consider any of the facts it considered here, including the facts alleged in the Consumer IPPs Third Amended Complaint, for the purposes of any other class certification question or whether they will be admissible at any other stage.

¶ 14, ECF No. 994.)  This is within the range that is generally considered reasonable.  *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010).[2]  It is reasonable given the difficulty of trying to reach a class of this nature and size.  The notice itself informed class members of the nature of the action, the terms of the proposed settlements, the effect of the action and the release of claims, as well as class members' right to exclude themselves from the action and their right to object to the proposed settlements.

7.     The plan of allocation is fair, reasonable, and adequate.  The Settlement Agreement provides for a cash payment of $20 million which has been deposited into the Settlement Fund.  The Agreement provides that the Settlement Fund will fund the payment of valid claims of Settlement Class members, costs of notice, claims administration, payment for service awards to the Named Plaintiffs and attorneys' fees and costs.  The proposed settlement treats class members equitably relative to each other.  *See* Fed. R. Civ. P. 23(e)(2)(D).  Funds will be awarded based on the pro rata share per class member of qualifying class products purchased and will be distributed through an electronic method.  For efficiency's sake, the plan of distribution and the distribution itself may wait until later in the litigation when more monies are available for distribution.

In sum, the Court will certify a settlement class and grant final approval to the Settlement Agreement between the Consumer IPPs and the JBS Defendants.

---

[2] Available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

8.      Counsel for the Consumer IPPs moved for an interim award of attorney fees. The terms of Consumer IPPs' proposed interim award of fees, including timing of payment, satisfies Rule 23(e)(2)(C)(iii).  The Court will award fees to Counsel for the Consumer IPPs using the percentage-of-the-fund approach.  "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic*, 200 F.3d at 1157). "There are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method for determining attorney fees[.]" *Id.* (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980).  As other courts have recognized, "[t]he percentage-of-recovery method is generally favored in cases involving a common fund." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).  This method "rewards counsel for success and penalizes it for failure." *Id.* (quotation omitted).

Counsel for the Consumer IPPs Class request a fee award of 33 percent of the settlement funds.  The requested fee, which totals $6,600,000, is within the range allowed by this and other districts.  *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases ranging from 25 to 36.96 percent).

When using the percentage-of-the-fund approach, the Court considers seven factors: (1) the benefit to the class; (2) the difficulty and novelty of the litigation; (3) the risks to plaintiffs' counsel; (4) the time and labor involved to bring the litigation; (5) the

skill and experience of the attorneys representing the parties; (6) the reactions of class members; and (7) whether the award is consistent with awards in other cases. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017).

Just as it found when approving the settlement, the settlement provides a substantial benefit to the class. It provides $20 million and is coupled with meaningful cooperation terms that will assist in the claims against the non-settling defendants. This benefit is certain and more immediate than proceeding through risky litigation. This cash settlement represents a substantial recovery and benefits the class. *See In re Xcel Energy*, 364 F. Supp. 2d at 994.

This case involves difficult factual and legal issues. Antitrust cases are especially difficult because they "are complicated, lengthy and bitterly fought." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005). This litigation has already required extensive, complex research and analysis. More than three years have passed since the first complaint was filed, and the parties are still in discovery. To get to this point, Plaintiffs had to survive motions to dismiss and file amended complaints. The case against non-settling defendants will continue to require resolution of complex, difficult issues.

Counsel took this case on contingency and has been exposed to significant risk. "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Xcel Energy*, 364 F. Supp. 2d at 994. They faced multiple motions of dismiss which could have ended the case with no compensation. They have

also fronted considerable costs with no guarantee that such costs would be recouped. The substantial risk that Counsel has undertaken to advance this litigation over more than three years strongly favors the fee award. *See Khoday v. Symantec Corp.*, No. 11-180 2016 WL 1637039, at *9 (D. Minn. 2016), *R. & R. adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri*, 855 F.3d.

Counsel has invested significant time and resources. From the beginning of their investigation into the pork industry through June 2021, Counsel for the Consumer IPPs have expended more than 8,977 hours pursuing the class's claims. This effort has included conducting the first extensive factual investigation into the antitrust claims, drafting multiple complaints, reviewing and analyzing over hundreds of thousands of documents, and preparing for depositions. Given the time and resources Counsel has devoted to this case, this factor weights in favor of the award. *See In re Xcel Energy*, 364 F. Supp. 2d at 996.

The attorneys litigating this case have extensive experience and expertise. The attorneys representing parties on all sides of this litigation are well-respected antitrust litigators. They have deep experience in class action antitrust cases and experience taking these complex cases to trial. Defendants' attorneys have also consistently demanded significant skill from Counsel to advance the Consumer IPPs' case. This factor supports awarding a fee. *See id.* at 995–96.

The reaction of the Class supports the award. Only one member of the Consumer IPP Class has objected to the settlement with the JBS Defendants and not due to a deficiency in the negotiations for the settlement. No class members directly objected to the settlement or to an award of attorney fees. As the class seems satisfied with the settlement and the fee award, this factor supports awarding a fee. *See id.* at 996.

The request is consistent with the percent awarded in similar cases. Here, Counsel has requested 33 percent of the settlement funds to cover attorney fees, which is in line with other cases. In this district, courts routinely approve attorney fees of at least one third of the common fund. *See, e.g., In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming an award for 36 percent of the common fund); *In re Xcel Energy*, 364 F. Supp. 2d at 998 (collecting cases ranging from 25 to 36.96 percent).

A lodestar "cross-check" confirms that the requested fees are reasonable. Though it is not required, courts often apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Xcel Energy*, 364 F. Supp. 2d at 999. A court may give an upwards of adjustment to a lodestar (through a positive multiplier) to take into account the contingent nature of the case and the quality of the work. *Khoday*, 2016 WL 1637039, at *11. Counsel for the Consumer IPPs has expended more than 8,977 hours from the outset

of this case investigation through June 2021. All the law firms that have worked to advance the classes' claims have done so under the direction of Hagens Berman or Gustafson Gluek, who were appointed as Interim Co-Lead Counsel. Each law firm who has conducted work on behalf of the Consumer IPPs has submitted a declaration attesting to the hours spent on this case. These reports set forth the timekeepers, customary rates, and hours worked to advance the litigation for the Consumer IPPs. Most of the hours spent on this litigation—more than 98 percent—have been incurred by Interim Co-Lead Counsel. The hourly rates used to calculate this lodestar are reasonable and in line with similar litigation. *See Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1065–66 (D. Minn. 2010). The cross-check yields a multiplier of 1.45. A 1.45 multiplier does not exceed the bounds of reasonableness, particularly in light of the work performed by Counsel prior to this settlement. Indeed, a multiplier of less than two is below the range of multipliers commonly accepted in this district for complex litigation. *See Khoday*, 2016 WL 1637039, at *11.

In sum, Counsel's request for a fee award representing 33 percent of the common fund appears reasonable, and the Court will grant the Motion for fees.

9.    Consumer IPPs' Counsel also requests reimbursement of $322,972.19 in expenses it has advanced for this litigation. As reflected in its declaration, these expenses include expert fees, the costs of maintaining documents produced in discovery, travel expenses, and process fees. (*See, e.g.*, Decl. of Shana E. Scarlett, Exs. B, C, ECF No. 952.)

These past litigation expenses incurred by Counsel for the Consumer IPPs were reasonable and necessary and were of the type normally awarded in class action litigation. *See, e.g.,* Fed. R. Civ. P. 23(h); *Krueger v. Ameriprise Fin., Inc.*, No. 11-02781, 2015 WL 4246879, at *3 (D. Minn. July 13, 2015); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 2013 WL 716460, at *5 (D. Minn. Feb. 27, 2013); *Yarrington*, 697 F. Supp. 2d at 1067.  No class member has directly objected to Counsel's reimbursement of these expenses.  The past litigation expenses incurred in the prosecution of this case shall be reimbursed from the settlement fund.

10.     The Court has considered the relevant case law and authority and finds that awarding attorney fees and reimbursement of expenses to the Consumer IPPs and their counsel is appropriate under Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2).  Notice of the request for fees and reimbursement of expenses was provided to the potential class members via direct and published notice and a settlement web site that identified relevant documents and pleadings.

11.     For the reasons set forth herein, the Court **GRANTS** the Consumer IPPs' Motion for Final Approval.  (ECF No. 990.)

12.     For the reasons set forth herein, the Court **GRANTS** the Consumer IPPs' request for attorney's fees in the amount of 33 percent of the common fund, or $6,600,000.  (ECF No. 949.) Interim Co-Lead Counsel for the Consumer Indirect Class are authorized to allocate the attorney fees awarded herein among counsel who performed

work on behalf of the Consumer Indirect Class in accordance with Interim Co-Lead Counsel's assessment of each firm's contribution to the prosecution of this litigation.

13.     The Court **GRANTS** the Consumer IPPs' request for reimbursement of expenses and costs in the amount of $322,972.19.  (ECF No. 949.)

14.     The Action with respect to Consumer IPPs' Claims is dismissed with prejudice as to the JBS Released Parties (as that term is defined in the Settlement Agreement).  Pursuant to Fed. R. Civ. P. 54(b) the Court finds that there is no just reason for delay and directs that the judgment of dismissal as to the JBS Defendants shall be final and appealable and entered forthwith.

15.     The Court retains continuing and exclusive jurisdiction over the Settlement Agreement for all purposes.

16.     Terms used in this Order that are defined in the Settlement Agreement is, unless otherwise defined herein, used as defined in the Settlement Agreement.

17.     Neither this Order nor the Settlement Agreement shall be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by Settling JBS Defendants or of the truth of any of Consumer IPPs' claims or allegations, nor shall it be deemed or construed to be an admission nor evidence of the Released Parties' defenses.

**IT IS SO ORDERED.**

- 24 -

DATED:  September 14, 2022
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge