## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Civil Action No. 0:18-cv-01776 JRT/JFD |
| This Document Relates To:<br><br>ALL ACTIONS | **CERTAIN DIRECT ACTION PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL** |

## I.   <u>INTRODUCTION</u>

Direct Action Plaintiffs ("DAPs") have filed lawsuits against the Defendant pork processors alleging (1) they conspired to increase the prices of pork sold in the United States beginning at least as early as 2008 and continuing until 2018, in violation of the federal antitrust laws, and (2) that this conspiracy caused DAPs (all of whom are major purchasers of pork products from Defendants) to pay higher prices for the pork products they purchased from Defendants. The undersigned DAPs ("Moving DAPs")[1] submit this memorandum in support of their motion to compel four defendants—Hormel, JBS, Smithfield and Tyson (collectively, "Defendants")[2]—to produce their sales data for four categories of pork products which they sold to the Moving DAPs and which, although covered by a request to produce, they refuse to produce. By contrast, Defendants Clemens

---

[1] Moving DAPs are: Compass Group USA, Inc., Conagra Brands, Inc., Howard B. Samuels as Trustee for Central Grocers, Nestlé USA, Inc., Nestlé Purina PetCare Company, Amory Investments LLC, and Sysco Corporation.

[2] Hormel Foods Corporation and Hormel Foods LLC ("Hormel"), JBS USA, Inc. ("JBS"), Smithfield Foods Inc. ("Smithfield), Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson").

Food Group and Seaboard Foods have produced to DAPs their sales data for the four excluded pork product categories.

Specifically, Moving DAPs seek to compel Defendants to produce structured sales data for the following four categories of pork products: (1) franks—hot dogs and various types of franks that include pork and non-pork meat; (2) multi-ingredient products—such as pepperoni, breakfast burritos, sausage tots, or sausage rolls;[3] (3) offal products—products removed from the carcass during processing, such as fat, hearts, and other organs; and (4) renderings and by-products—including blood meal and bone meal.[4]

These Defendants' sales data, which reflect Moving DAPs' direct purchases of pork products, are needed to assess the impact and harm that DAPs suffered as a result of the alleged conspiracy to raise the price of pork over at least a nine-year period in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.  Defendants refuse to produce these data because Defendants contend that the DAPs are bound by a purported earlier agreement—to which Moving DAPs were not a party—and which predated the transfer of Moving DAPs' cases into this MDL 2998 and, in most cases, even predated a Moving DAP's filing of its lawsuit.  This agreement apparently excluded from production to the classes and the early filing Winn Dixie DAP group ("Winn Dixie"), all or certain of those four categories

---

[3] For example, Hormel sells a variety of sausage products that mix pork and beef, including pepperoni, hot dogs, polish sausage, bologna, and salami.

[4] By-products (what is left over after processing of the "primal" cuts, such as ham and bellies) include edible offal parts like feet, ears, intestines, bungs, and tails, and inedible offal products such as blood, organs, hides, fat, and bone meal.

of pork sales data. As demonstrated below, Defendants have no legitimate basis for withholding such relevant sales data from DAPs, and, because of their refusals, DAPs submit that an order must now issue compelling the production of their sales data.

## II.   <u>BACKGROUND</u>

### A.   DAPs' Request for Production No. 28 Seeks Defendants' Relevant Structured Sales Data for All Pork Products

On October 22, 2021, DAPs served their First Requests for Production of Documents to Pork Integrator Defendants, *i.e.,* all defendants other than Agri Stats (**Exhibit A**). As set forth in **Exhibit A**, Request No. 28 sought, for the "time period January 1, 2005 through December 31, 2020, Structured Data sufficient to show, for each U.S. Pork sale, the categories of information listed below, and Documents sufficient to understand all data fields, codes, or other fields on the invoice . . . ." The Defendants, on November 22, 2021, responded to Request No. 28 as follows:

1.   **JBS:**  JBS cited to "multiple rounds of negotiations over several months addressing the scope of production and associated search terms"—none of which involved Moving DAPs.

    JBS further responded, in pertinent part, that, while JBS USA had already produced its responsive sales data [presumably in the previously filed pending class cases], JBS ***"will produce any such remaining data in the same or similar format to the extent this information is in JBS USA's possession, custody or control, and able to be located by JBS USA through a reasonable search . . . ."*** (*See* JBS Responses and Objections to Certain DAPs First RFPs, attached as **Exhibit B**, at p. 55) (***emphasis added***).

2.   **Smithfield:**  Smithfield stated that it had "conducted a reasonable search of its agreed and Court-ordered data sources" and "produced responsive transaction data" that "may or may not contain every piece of information requested. . . .  Smithfield further responds that it will meet and confer with Plaintiffs if they have additional questions about how to understand any of Smithfield's data productions and may produce documents sufficient to

answer those questions, after conducting a reasonable search." (*See* Smithfield Responses and Objections to Certain DAPs First RFPs, attached as **Exhibit C**, at p. 44).

3. **Hormel:** Hormel, in its response, "referr[ed] the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 37," and stated "that it has already produced responsive structured data. No further structured data will be produced in response to this Request." (*See* Hormel Responses and Objections to Certain DAPs First RFPs, attached as **Exhibit D**, at p. 27).

4. **Tyson:** Tyson responded that it "has produced structured data to the Class Plaintiffs in *In re Pork Antitrust Litig.*, Case No. 0:18-cv-01776 (JRT/HB) (D. Minn.) in accordance with extensive negotiations with Class Plaintiffs, Winn-Dixie, and Bi-Lo and the Court's ESI Protocol, which was then produced to DAPs. (*See* Tyson Responses and Objections to Certain DAPs First RFPs attached as **Exhibit E,** at p. 33).

Following their written responses and over the course of several months, Defendants produced voluminous sales data for many pork products. After timely reviewing and analyzing the sales data productions of all Defendants, Moving DAPs (with the help of their economic consultants) identified by mid-March 2022 certain gaps in Defendants' sales data productions, including, in particular, the absence of data for the four product categories at issue here. Moving DAPs began to meet and confer with Defendants regarding these four categories of pork products that were missing from their sales data.

**B.     DAPs Meet and Confer with Defendants on the Missing Sales Data**

As part of this meet-and-confer process, on May 31, 2022, DAPs wrote a letter to counsel for JBS, Hormel, Smithfield, Seaboard, and Triumph seeking the missing sales data. **(Exhibit F)**. Defendants responded as follows:

- On June 10, 2022, Seaboard produced certain supplemental sales data for the excluded products.

- On July 21, 2022, Triumph confirmed that it had no additional data related to sales of products in these four categories.

- JBS, Hormel, Smithfield, and Tyson all initially refused to produce more data. **(Exhibits G, H, I, and J respectively)** (It was not until August 10, 2022, that Tyson counsel advised that Tyson had not produced all its data—correcting DAPs' misunderstanding that it had).

- Despite protracted meet and confer efforts, Plaintiffs have been forced to move this Court to obtain this data.

It became clear in the meet and confer process that the four Defendants – JBS, Hormel, Smithfield, and Tyson – that continued to refuse to produce the sales data at issue, based their refusal on a supposed deal that Defendants reached in March 2021 with the classes and Winn Dixie, that apparently narrowed defendants' productions of sales data. The details of such an agreement remain unclear, beyond Defendants' insistence that it was a "deal" subject to "extensive negotiation" (albeit with parties other than the Moving DAPs) and that Moving DAPs' requests for the missing data is therefore "dilatory" because "the scope of Defendants' data production was settled" in the spring of 2021 (albeit with parties other than the Moving DAPs).[5]   In sum, Defendants contend they need not meet

---

[5] *See e.g.,* **Exhibit K**:  8/23/22  (in chain ending 8/25/22) **JBS** email from A. Silber to T. Wheeler ("[t]he relevance and necessity of the supplemental sales data now sought by the DAPs remains unsupported, including because DAPs did not request this additional data until May 31, 2022, over a year after the scope of Defendants' data production was settled"); **Exhibit L:** 9/1/22 **Smithfield** email from B. Robison to T. Wheeler (Smithfield will not produce additional data beyond what it produced "in reliance on agreements reached with the class plaintiffs and the DAPs who negotiated those agreements"); **Exhibit**

their discovery obligations to Moving DAPs based on an agreement entered into *before* most Moving DAPs had even filed their actions, *before* Moving DAPs' cases, once filed, had begun to be transferred to this Court (at defendants' request) and consolidated with MDL 2998 (which MDL was not created until June 9, 2021), and *before* moving DAPs had served their own discovery requests, including for production of relevant sales data.

Moving DAPs endeavored to narrow this dispute by proposing that Defendants send, as a first step, the data that Defendants had provided to the class settlement claims administrator in March 2022, which included their sales of the excluded products.  In their settlements with JBS and Smithfield, the direct purchaser class agreed to settle claims relating to *all* pork products ("Pork" was broadly defined and without exclusions), which included claims for the four excluded product categories.[6]  Thus, to administer the class settlement claims, the classes needed Defendants' sales data for the four excluded products as well.  Moving DAPs proposed that defendants provide the sales data that Defendants

---

**H**:  6/25/22 **Hormel** email from C. Coleman to S. Jones (Moving DAPs' requests come too late because "Defendants' productions of structured data were subject to extensive negotiation dating to early 2021 [between Defendants and other parties].")   The Defendants' "deal" with Winn Dixie is not clear.  **JBS** asserts that, while Winn Dixie at one stage in 2021 requested the production of certain data the Moving DAPs now seek, in April 2021, Winn Dixie "explicitly agreed" that "many" of the "products DAPs now seek could be excluded from structured data productions."  *See* **Exhibit G, 7/1/22 JBS** email from A. Silber to S. Jones and T. Wheeler. Whether or not Winn Dixie actually reached an agreement with Defendants is irrelevant to these DAPs, because Moving DAPs were not a party to any such agreement.

[6] Certain Moving DAPs used the same broad definition of Pork in their complaints, including Nestlé USA and Nestlé Purina PetCare, which filed suit on July 8, 2021 and were transferred to this Court on July 28, 2021 (0:21-cv-01715, D Minn.); Howard B. Samuels, solely as Chapter 7 trustee of the estate of Central Grocers, Inc.; Compass Group USA, Inc.; and Conagra Brands.

were ordered to produce for the claims process to determine whether these data could be used for damages analysis.[7]  (*See* August 25, 2022 email from Allison Silber, attached as **Exhibit K**).  Plaintiffs' economic consultants reviewed these summary data for JBS and Smithfield, but concluded that they lacked the necessary detail for variables on prices, weights, purchase dates, and product descriptions to estimate impact and damages resulting from Defendants' conduct.  However, when Moving DAPs so advised JBS and Smithfield, they refused to produce their detailed sales data without Court intervention.  *See* **Exhibits K and L**.

## III.  ARGUMENT

### A.    DAPs are Entitled to this Basic Discovery under the Federal Rules

This Court laid out basic principles for discovery in *Lynch v. Experian Information Solutions, Inc*. 569 F.Supp.3d 959, 962-63 (D. Minn. 2021):  Pursuant to the Federal Rules, parties are entitled to discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . A discovery request is relevant unless the information sought can have no possible bearing on the claims or defenses of the case. *Scheffler v. Molin*, No. CIV. 11-3279 (JNE/JJK), 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012). Nonetheless, '[s]ome threshold showing of

---

[7] "**The court approved definition of Pork in the JBS and Smithfield Settlements is broader than the definition of Pork** in the operative DPP Third Amended and Consolidated Complaint (ECF No. 431)." (*See* Declaration of DPP counsel Joe Bruckner dated 2/15/22, ECF No. 1193 at ¶ 7; emphasis added.) The Court expressly required all Defendants "**to produce supplemental sales data for Pork products that fall within the Settlement Class Definition**" by March 1, 2022. (Order at ECF No. 1208 at ¶ 5; emphasis added.) Significantly, the purchase of the four excluded pork products was expressly part of these class settlements and were compensable in the claims process.

relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.' *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)."

However, even if a very narrow standard of relevance were to be applied here, the requested sales data clearly are relevant to DAPs' claims.

### B.    The Sales Data that DAPs Seek Are Clearly Relevant and Proportionate

This Court has stated: "Beyond being relevant, Rule 26 requires that information sought in discovery also be 'proportional to the needs of the case.' Factors important to a court's proportionality analysis include 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Lynch*, 569 F.Supp.3d at 963 (quoting Fed. R. Civ. P. 26(b)(1)).

Moving DAPs request data covering pork product sales allegedly tainted by collusion, and these data are indisputably relevant. *See, e.g.*, *In re Peanut Farmers Antitrust Litig.*, No. 2:19CV00463, 2020 WL 9216019, at *2 (E.D. Va. Jul. 24 2020) (agreeing with antitrust plaintiffs that structured data was "relevant" and granting motion to compel re same). Indeed, in this case, Judge Bowbeer ordered *non-party* Indiana Packers to produce 5 1/2 years of detailed sales data for almost 800 different pork products (*see* Order on Motion to Compel, May 9, 2022, ECF No. 1356), which Indiana Packers produced shortly thereafter.

In civil antitrust litigation, damages are often calculated by economic experts using modeling that relies on sales data, including product prices and volumes.[8] Yet, these four Defendants seek to deprive Moving DAPs of the ability to prove the overcharges they paid on the excluded products (franks, varietal meats, offal, and rendering by-products) through the simple expedient of refusing to produce the needed data in their possession.

Defendants do not and cannot contest that Moving DAPs purchased significant volumes of the excluded products from Defendants. For example: Nestlé Purina had a contract with Tyson to purchase more than 20 million pounds of pork products—nearly all offal or renderings—from Tyson in just one three-month period in 2018. In early 2018, per Agri Stats data, Nestlé Purina accounted for more than 4% of JBS' pork production by weight. JBS previously advised Nestlé Purina that it bought almost $230 million in pork products from it between 2010-2020.[9]

### C.     DAPs are not Bound by Defendants' Discovery Agreements with the Classes and Winn Dixie

---

[8] As one of Defendants' experts opposing class certification recently stated: "Class Experts . . . estimate their alleged overcharges by comparing prices paid during the alleged conduct period with prices paid during a benchmark period after purportedly accounting for other factors that affected prices paid for the products at issue." (*See,* Expert Report of Dr. Laila Haider, August 24, 2022 at ¶106 (footnotes omitted); ECF No. 1442-1.)   Dr. Haider noted that the prices used by the experts are "a mix of transactional-level and weekly-level sales data from Defendants Clemens, Hormel, JBS, Seaboard-Triumph, Smithfield, and Tyson . . . ,  including the monthly average price paid by a given direct purchaser to a given Defendant for a given product." *Id.*

[9] The Plaintiffs' purchase data reflect purchases of product that Defendants refuse to produce, *e.g.:* Nestlé Purina PetCare bought offal and renderings from JBS, Tyson, and Smithfield (Purina_0000001); Nestlé USA bought pepperoni, salami and multi ingredient pork products from Hormel and Tyson (Nestle_0000001); and Conagra Brands bought pepperoni pork product from Smithfield (CONPOR_0000001-003).

Moving DAPs never agreed to any product exclusions from Defendants' sales data. Moving DAPs cannot be bound by a discovery agreement between class counsel and Defendants to which they were not a party—and which was entered into months before the creation of and subsequent transfer of Moving DAPs' cases into MDL 2998 before this Court on June 9, 2021.[10]

As this Court noted, "the differences between the cases" in this now consolidated action "create individual discovery and motion issues that only apply to some parties." *In Re Pork Antitrust Litig.*, No. 18-1776 (JRT/HB, No. 21-2998 (JRT/HB), 2021 WL 5310590, at *4 (D. Minn. Nov. 14, 2021, ECF No. 985). Consequently, the Court approaches discovery issues raised by individual plaintiffs with an eye to "ensure each member case is resolved on its own legal theories and merits." *Id.* Notwithstanding what other plaintiffs' counsel may or may not have needed and may or may not have negotiated, Moving DAPs need these sales data to support their claims, and they are entitled to it.

To deny Moving DAPs discovery based on Defendants' earlier agreement with the classes and Winn Dixie would be contrary to Rule 26 of the Federal Rules of Civil Procedure, and would contravene Moving DAPs' due process right to opt-out of a class action and prosecute their claims separate and apart from a class. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also Becherer v. Merrill Lynch, Pierce, Fenner,*

---

[10] As the JPML held on June 9, 2021: "[W]e find that the actions listed on Schedule A involve common questions of fact, and that centralization in the District of Minnesota will serve the convenience of the parties and witnesses and **promote the just and efficient conduct of this litigation**." (**Exhibit M**; emphasis added) Denying basic discovery to Moving DAPs based on an agreement before their cases were transferred would be anything but "just."

*and Smith, Inc.*, 193 F.3d 415, 426 (6th Cir. 1999) ("[D]espite the identity of interests, facts, and legal theories that make a class possible in the first place, a plaintiff has the right to pursue his or her separate action. . . . [I]t would defeat the clear purposes of Rule 23 to bar a group of plaintiffs, who were putative members of a class but either opted out or retained their right to opt out, from litigating separately.").

While the classes (and Winn Dixie), in their agreement with the Defendants, may have chosen, for whatever reason, to pursue discovery on a narrower scope of pork products, the Moving DAPs have not. Moving DAPs cannot be bound by such a previous agreement that pertains to claims different from their own. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 115 F.3d 456, 457 (7th Cir. 1997) ("Having opted out of the class action, [opt-out plaintiffs] were no longer members of the class and so in no sense were parties . . . nor in privity with any parties, to the class action.") The classes (and/or Winn Dixie) and Defendants cannot negotiate away rights belonging to Moving DAPs.

Moving DAPs, in short, are entitled to discovery relevant to their own claims. Indeed, as to DAP Nestlé Purina PetCare, Defendants' position is tantamount to a blanket refusal to produce <u>any</u> sales data. Defendants' refusal to produce their data for offal (hearts, lungs, heads, etc.) and pork renderings, if permitted, would eviscerate the claims of Nestlé Purina PetCare, which only bought pork by-products, offal and renderings for its manufacture of pet food.

**D.    Production of the Pork Products Sales Data Will Not "Unduly Burden" Defendants**

A party resisting discovery bears the burden "to clarify and explain their objections and to provide support for those objections." *John Doe I v. Mulcahy, Inc.*, No. 08-cv-306 (DWF/SRN), 2008 WL 4572515, at *2 (D. Minn. Oct. 14, 2008); *Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D. Minn. 1989). "Broad allegations of burdensomeness, without more, will not suffice." *Edeh v. Equifax Info. Servs., LLC*, No. 11-2671 (SRN/JSM), 2013 WL 2480676, at *4 (D. Minn. June 10, 2013). The fact that producing discovery may require time and effort does not inherently render a request unreasonably burdensome. *See Boulay Auto Glass, Inc. v. Illinois Farmers Ins. Co.*, No. Civ. 10-798 (PJS/LJB), 2010 WL 11537438, at *43 (D. Minn. Oct. 21, 2010) (citing *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001)).

As this Court has made clear: "The burden of showing undue burden and disproportionality is on the party resisting disclosure." *Lynch*, 569 F.Supp.3d at 963 (citing *Beseke v. Equifax Info. Servs., LLC*, No. 17-CV-4971 (DWF-KMM), 2018 WL6040016, at *4 (D. Minn. Oct. 18, 2018)).

Defendants' data reflecting their product sales to a Plaintiff are a relevant, necessary, proportional, and routine part of fact discovery in Sherman Act Section 1 antitrust litigation. *See* May 19, 2020 Order, *In re Broiler Chicken Antitrust Litig.*, Case No. 1:16-cv-08637 (N.D. Ill.), Doc No. 3622, at *4 (granting plaintiffs' motion to compel the twenty-plus Defendants to produce, *inter alia*, two full additional years of data for all broilers chicken products [which included offal and rendering by-products], finding the "burden on Defendants of producing the information Class Plaintiffs are seeking, though far from insignificant, is proportional to the needs of the case"). **(Exhibit N).**

## CONCLUSION

Defendants have no justification for withholding relevant sales data from Moving DAPs.  Moving DAPs respectfully submit that the Court should compel Defendants to provide their data reflecting their sales of all pork products.

## L.R. 7.01(a) and 37.1 CERTIFICATION

Pursuant to Local Rules 7.01(a) and 37.1(a), Moving DAPs state that they have conferred with counsel for Defendants but could not agree on a resolution the issues raised in the Motion.

September 20, 2022                    Respectfully submitted,

                                     */s/ David C. Eddy*
                                     David C. Eddy
                                     Dennis J. Lynch
                                     Travis C. Wheeler
                                     NEXSEN PRUET LLC
                                     1230 Main Street, Suite 700
                                     Columbia, SC 29201
                                     Telephone: (803) 771-8900
                                     Facsimile: (803) 253-8277
                                     deddy@nexsenpruet.com
                                     dlynch@nexsenpruet.com
                                     twheeler@nexsenpruet.com

                                     *Attorneys for Plaintiffs Nestlé USA, Inc.;
                                     Nestlé Purina PetCare Company; Conagra
                                     Brands, Inc.; Howard B. Samuels, solely as
                                     Chapter 7 Trustee of the estate of Central
                                     Grocers, Inc.; and Compass Group USA, Inc.*

September 20, 2022                      /s/ Scott E. Gant
                                       Scott E. Gant
                                       Michael S. Mitchell
                                       BOIES SCHILLER FLEXNER LLP
                                       1401 New York Ave., NW
                                       Washington, DC 20005
                                       Tel: 202-237-2727
                                       Fax: 202-237-6131
                                       sgant@bsfllp.com
                                       mmitchell@bsfllp.com

                                       Colleen Harrison
                                       BOIES SCHILLER FLEXNER LLP
                                       333 Main Street
                                       Armonk, NY 10504
                                       Tel: 914-749-8204
                                       Fax: 914-749-8300
                                       charrison@bsfllp.com

                                       Sarah L. Jones
                                       BOIES SCHILLER FLEXNER LLP
                                       725 South Figueroa Street
                                       Los Angeles, California 90017
                                       Tel: 213-629-9040
                                       Fax: 213-629-9022
                                       sjones@bsfllp.com

                                       *Attorneys for Plaintiffs Sysco Corporation and
                                       Amory Investments LLC*