# Exhibit

# A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil Action No. 21-md-02998 |
| THIS DOCUMENT RELATES TO:<br>*Certain Direct Action Plaintiff Actions* | Honorable John R. Tunheim<br>Honorable Hildy Bowbeer |

**CERTAIN DIRECT ACTION PLAINTIFFS' FIRST REQUESTS FOR**
**PRODUCTION OF DOCUMENTS TO PORK INTEGRATOR DEFENDANTS**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Certain Direct Action Plaintiffs[1] hereby request that Defendants Clemens Food Group, LLC; The Clemens Family Corporation; Hormel Foods Corporation; Hormel Foods, LLC; JBS USA Food Company; Seaboard Foods LLC; Seaboard Corporation, Smithfield Foods, Inc.; Triumph Foods, LLC; Tyson Foods, Inc.; Tyson Prepared Foods, Inc.; and Tyson Fresh Meats, Inc. produce the documents and things herein requested within 30 days at the offices of Kaplan Fox & Kilsheimer, LLP, c/o Matthew P. McCahill (mmccahill@kaplanfox.com), or such other time and place as may be agreed upon by counsel.  Pursuant to Federal Rule of Civil Procedure 34(b), unless otherwise specified, all documents must be organized and labeled

---

[1]   The Certain Direct Action Plaintiffs serving these Requests are: Plaintiffs Sysco Corporation, Amory Investments LLC, the *Action Meat* Plaintiffs, Giant Eagle, Inc., Conagra Brands, Inc., Nestlé USA, Inc., Nestlé Purina PetCare Co., Cheney Brothers, Inc., and Subway Protein Litigation Corp. as litigation trustee of the Subway® Protein Litigation Trust.

1

to correspond to the categories in the associated document request. Corrections and supplemental answers and production of documents are required as provided for in the Federal Rules of Civil Procedure.

## **DEFINITIONS**

The following definitions shall apply to these document requests:

1. "And" and "or" are to be read interchangeably so as to give the broadest possible meaning to a particular request in which either or both is used.

2. "Benchmarking Service" means a service that shares information that allows a firm to compare its practices, methods, or performances against those of other companies in the same industry.

3. "Communication" or "Communicated" means, without limitation, any exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior, including but not limited to, any advice, advisement, announcement, articulation, assertion, contact, conversation, written or electronic correspondence, declaration, discussion, dissemination, elucidation, expression, interchange, memoranda, notes, publication, reception, revelation, talk, transfer, transmission, or utterance. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

4. "Competitive Conditions" means Pork costs, pricing, production/output, capacity, sales, demand, supply, imports, exports, or market shares.

5.     "Creditor Conference" means a conference or event relating to Pork that is organized or hosted by a company that provides credit or loan financing for Pork Integrators or a Pork Integrator's contract farmers.

6.     "Creditor Representative" means an employee of a non-Defendant company that provides credit or loan financing to a Pork Integrator for its Pork-related business or to a Pork Integrator's contract farmers for the contract farmers' Pork-related business who has a direct role in providing financing to a Pork Integrator for its Pork-related business or a Pork Integrator's contract farmers for the contract farmers' Pork-related business on behalf of that company.

7.     "Defendant" means any company, organization, entity or Person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any Persons acting or purporting to act on behalf of a Defendant.

8.     "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and shall be construed in its broadest sense to include, without limitation, the final form and all drafts and revisions of any paper or other substance or thing, original or reproduced, and all copies thereof that are different in any way from the original, on which any words, letters, numbers, symbols, pictures, graphics, or any other form of information is written, typed, printed, inscribed, or otherwise visibly shown, and

also every other form of stored or recorded information, whether on film, tape, disks, cards, computer memories, cloud storage, mobile phones or devices, or any other medium and/or device whereby stored information can, by any means whatsoever, be printed or otherwise recovered, generated or displayed in the form of visible, audible, or otherwise perceptible words, letters, numbers, symbols, pictures, or graphics.  Documents include ESI as defined in these requests.  Each and every draft of a Document is a separate Document for purposes of these document requests.

9.      "Document Custodian" refers to Your employees and/or representatives who the parties agree, or the Court orders, must have Documents in Your, the employee's, and/or Representative's possession, custody, or control collected and produced in this matter.

10.      "Electronically stored information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, the cloud, tape, or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., email, phone calls and logs of phone calls, voice mail, text messaging, instant messaging, and ephemeral messaging (SnapChat, Confide, Signal, etc.));
- Email Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);
- Word processed documents (e.g., MS Word or WordPerfect files and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);

4

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Unstructured Data;
- Structured Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Backup and Archival Files (e.g., Veritas, Zip, .GHO, iTunes archives of iPhone content); and
- Cloud based or other virtualized ESI, including application, infrastructure and data.

11.    "Employee" means, without limitation, any Person that You employ or employed during the Relevant Time Period.

12.    "Including" is used to emphasize certain types of Documents requested and should not be construed as limiting the request in any way.  Including therefore means "including, but not limited to," or "including without limitation."

13.    "Industry Analyst" means a Person, other than an employee of a Defendant, a Defendant's parent, a Defendant's subsidiary, or another Pork Integrator, who analyzes Pork Integrators for the purpose or with the effect of advising clients on investment in Pork Integrators.

14.    "Industry Meeting" means a meeting for companies in the Pork industry and at which the Pork industry is discussed, organized or hosted by an entity other than a named

Defendant, a Defendant's parent, a Defendant's subsidiary, or another Pork Integrator, and attended by two or more Pork Integrators, including at least one named Defendant.

15.     "Management" means a Defendant's (a) Board of Directors, (b) officers, (c) CEO, CFO, COO, or President, and (d) senior executives.

16.     "Meeting" means, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video, or telephonic method of communication) of two or more Persons for any purpose, whether planned or arranged, scheduled or not.

17.     "Person" means, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business existing under the laws of the United States, any state, or any foreign country.

18.      "Policy" or "Procedure" means any rule, practice or course of conduct, guidelines or business methods or traditions whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by You.

19.     "Pork" means pig or swine meat sold or purchased fresh or frozen, including smoked ham, sausage, and bacon.

20.     "Pork Farm" means any farm where pigs are raised for eventual slaughter and processing as Pork.  This includes farrow-to-finish operations (which raise pigs from birth to slaughter weight), feeder pig producer operations (which raise pigs from birth to

about 10-60 pounds), and feeder pig finisher operations (which buy feeder pigs and grow them to slaughter weight).

21.    "Pork Grower" means any Person or facility that raises pigs for eventual slaughter and processing as Pork.  This includes farrow-to-finish operations (which raise pigs from birth to slaughter weight), feeder pig producer operations (which raise pigs from birth to about 10-60 pounds), and feeder pig finisher operations (which buy feeder pigs and grow them to slaughter weight).

22.    "Pork Integrator" means Defendants (except Agri Stats) and any non-Defendant entity that raises, buys, slaughters, and processes pigs to make Pork.

23.    "Pork Processing Facility" means a slaughter and/or packing facility where pigs are slaughtered, processed, or prepared to be sold as Pork.

24.    "Pork Supply Factors" refers to the ways in which Defendants control the supply of Pork, including capacity reductions, controlling slaughter rates, and exports.

25.    "Relating to," "referring to," "regarding," "with respect to" or "concerning" mean without limitation the following concepts: concerning, constituting, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part, directly or indirectly.  Documents are considered relating to the subject matter whether they are viewed alone or in combination with other Documents.

26.    "RaboBank" means Coöperatieve Rabobank U. A., New York Branch, Utrecht-America Holdings, Inc., Rabo AgriFinance LLC, Rabobank USA Financial

Corporation, or Utrech-America Finance Co, and any agents, subsidiaries, or affiliates thereof.

27.     "Relevant Time Period" means, unless otherwise specified, January 1, 2008, through and including June 30, 2018.  All requests are limited to the Relevant Time Period unless otherwise specified.

28.     "Representative" shall mean any and all agents, employees, servants, consultants, officers, directors, or other Persons authorized to act on Your behalf.

29.     "Sales Personnel" refers to an employee of a Defendant whose primary job responsibilities include selling that Defendant's Pork to customers in the United States or from the United States to customers outside the United States, as well as any agent or representative authorized by that Defendant to sell its Pork on its behalf.

30.     "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field.

31.     "Studies" or "Analyses" include written presentations or summaries of researched information and/or compiled data and conclusions derived from such information and/or data.

32.     "Telephone Record" means any record of the originating and terminating phone numbers for a particular phone call or facsimile transmission, such as the monthly bill that telephone carriers such as AT&T, CenturyLink, and numerous other telephone carriers provide on a monthly basis.

33.     "Trade Association" means an association of business organizations that promotes the interests of Pork Integrators relating to Pork and in which two or more Pork Integrators are members, including the Pork Act Delegate Body, the National Pork Board, the National Pork Producers Council ("NPPC"), the National Conference ("NPIC"), the 21st Century Pork Club, the North American Meat Institute ("NAMI"), and the American Meat Institute ("AMI").

34.     "United States" or "U.S." means each of the 50 states, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

35.     "Unstructured Data" is data that does not conform to a specific, pre-defined data model, it may be human generated and in various formats that fit into structured database tables and columns. Common examples include, but not are limited to, word processing documents, emails, blogs, social media extracts, tweets, picture captions, GPS data, and others of similar variable formats.

36.     "You," "Your" or "Your company" mean the responding Defendant, including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity that the responding Defendant manages or controls, including those merged with or acquired, together with all present and former directors, officers, employees, agents, attorneys, representatives or any Persons acting or purporting to act on their behalf.

9

## SPECIFIC DOCUMENT REQUESTS

**REQUEST NO. 1:** Documents sufficient to show Your organizational structure, including, but not limited to, departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions that had any role at any time during the Relevant Time Period in the production, processing, distribution, marketing, pricing or sale of Pork.

**REQUEST NO. 2:** All Documents produced to the Department of Justice (including the Federal Bureau of Investigation), Federal Trade Commission, U.S. Department of Agriculture, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators voluntarily or pursuant to any civil investigative demand, grand jury subpoena, or other investigative request between January 1, 2008 and the present, concerning the production, processing, distribution, marketing, pricing or sale of Pork during the Relevant Time Period.

**REQUEST NO. 3:** All Documents relating to any Communications, Meetings, or agreements (whether formal or informal, or proposed or actual) between You and any other Defendant or Pork Integrator.

**REQUEST NO. 4:** All Documents relating to Your threatened, actual, or potential enforcement of a production, capacity, output or supply restriction, reduction, or limitation, including but not limited to any penalties imposed, or any other warning, threat, or retaliation resulting from a failure to act consistent with such restriction, reduction, or limitation.

**REQUEST NO. 5:** For each Document Custodian, all:

a)      electronic and hard copy diaries, calendars, appointment books or notes,

10

b)      contact information maintained in electronic or hard copy format, for any Person who is or was: (i) an owner, employee, consultant, officer, board member, Representative, or agent of a Pork Integrator or Agri Stats; (ii) a Creditor Representative or Industry Analyst; (iii) an employee of a Trade Association; or (iv) an employee of any entity that falls within the definition of Industry Meeting.

c)      trip and travel logs and records, expense reports, and entertainment reports, including any other supporting Documents;

d)      bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you-go cellphones) if such telephones were used for business purposes;

e)      a copy of the Document Custodian's most recently created resume or curriculum vitae (CV);

f)      copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Pork, such as testimony at a deposition, trial, or public hearing;

g)      Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by the Document Custodian for any of Your business purposes in the Pork industry; and

h)      Any severance agreements in connection with the Document Custodian ceasing employment or changing employment status with You (without time limitation).

**REQUEST NO. 6:** Copies of all Telephone Records in your possession, custody, or control, including Telephone Records of your main phone number(s), main fax number(s), and any phone number used as a switchboard for any of your relevant facilities such as your headquarters, administrative offices, Pork Farms, Pork Processing Facilities, and Pork sales offices.

**REQUEST NO. 7:** All Documents relating to Communications with investors, Industry Analysts, Benchmarking Services, and/or Creditor Representatives concerning Competitive Conditions.

**REQUEST NO. 8:** All Documents relating to public statements or announcements, press releases, or corporate Communications by You or by other Pork Integrators concerning Competitive Conditions.

**REQUEST NO. 9:** All Documents relating to Your practice and policies for drafting, approving, and issuing all public Communications regarding Competitive Conditions.

**REQUEST NO. 10:** All Documents relating to budgets, projections, estimates, or related studies, presentations, business plans, or reports prepared or received by Your current or former directors, officers, or Management regarding the following topics:

a)   Pork production, supply, capacity or output;

b)   Pork prices or pricing;

c)   cost and/or cost accounting reports (including, production, sale and distribution) related to Pork;

d)   audited or unaudited financial statements (including all appendices) related to Pork;

e)   cost and supply of raw material and/or inputs related to Pork, including any back integration of raw materials, swaps or sales of raw materials with other Pork Integrators, or hedging of purchased raw materials and/or inputs for Pork;

f)   distribution channels for Pork;

g)   export markets for Pork including a breakdown of country of destination and product form;

h)   Pork product information regarding the types and product forms of Pork sold by You;

i)   forecasted, projected, estimated, planned, or actual demand for Pork;

j)   demand changes or demand fluctuations for Pork sold in the U.S.; and

k)   profits, revenues, and loss information on Pork produced or sold in the U.S. identified on a (i) consolidated basis; (ii) product line or product category basis; and/or (iii) facility-by-facility basis.

**REQUEST NO. 11:** Documents sufficient to show all forms of Your contracts and invoices, and any summaries of the terms, with Pork Growers.

**REQUEST NO. 12:** For the period January 1, 2008 through June 30, 2018, Documents sufficient to identify all of Your Pork Growers, Pork Farms, and Pork Processing Facilities.

**REQUEST NO. 13:** All Documents relating to Competitive Conditions for Pork, including reports, presentations, industry publications, business plans, studies, analyses, or other Documents, including those prepared by or for Industry Analysts or other third parties, concerning: (i) market shares; (ii) consolidation, mergers, acquisitions, or joint ventures; (iii) production or processing capacity, capacity reduction, capacity utilization, or operating rates; (iv) fixed or variable costs; (v) pricing; (vi) inventories; (vii) entry or exit conditions; (viii) inventories; (ix) supplies/supply trends; (x) data, publications, or other sources used in the regular course of business by You to monitor Pork demand in the United States; (xi) substitute products; (xii) exports; (xiii) raw materials; (xiv) Pork Supply Factors; or (xv) other industry statistics.

**REQUEST NO. 14:** All Documents concerning Pork supply or production decisions, reductions, rationalization, industry leadership, industry discipline, production

13

discipline, supply discipline, capacity discipline, or other so-called disciplined approaches or practices relating to the Pork industry.

**REQUEST NO. 15:** All Documents related to Your quoting, changing, or setting the prices or the terms and conditions for sale of Pork, including pricing guidelines, pricing methods, pricing formulas, procedures or authorization procedures for Sales Personnel to quote a price, price changes, price lists, pricing policies, violations of pricing policies and Documents providing guidance to Sales Personnel about implementation of price changes.

**REQUEST NO. 16:** All Documents relating to Pork price announcements, price changes, explanations of the reasons for price changes, price lists, pricing policies, pricing guidelines, pricing methods, pricing formulas, analysis of market prices, monitoring of competitor pricing, price changes of Pork produced or sold in the U.S. (including price announcements or explanations of the reasons for price changes), price increase and surcharge announcements, and any other Communications concerning Pork price increases or the imposition of surcharges.

**REQUEST NO. 17:** All Documents relating to any decision to change the pricing terms for Your customers' contracts for Pork, including any analyses regarding changes from fixed-price to adjustable price provisions.

**REQUEST NO. 18:** All contracts or other agreements, and any summaries of the terms (including duration, price protection, terms for price modification, surcharges, discounts, or rebates) for the sale of Pork in the U.S. to Your customers.

**REQUEST NO. 19:** All Documents relating to Pork customer complaints regarding prices, pricing, or terms or conditions of sale or the refusal or failure to supply

Pork and any responses thereto, and all Documents reflecting any policy of Your company concerning the handling of such customer complaints.

**REQUEST NO. 20:** Documents sufficient to show actual or potential substitutes for Pork, or the elasticity of supply, demand, or price of Pork (including the effect of such substitutes' prices upon Pork pricing, purchase terms, or profits).

**REQUEST NO. 21:** Documents sufficient to identify any tentative, proposed or consummated sale, acquisition, merger, joint venture, divestiture, transfer of assets, spinoff, or any other form of change of ownership or control or business combination concerning any Pork-related business, production facilities, product lines, or other assets (including both businesses or assets owned or controlled by You and those owned or controlled by other Persons), and any minutes, notes, reports, studies, analysis, presentations, expert or market participant comments, and any analysis or other information submitted to or received from any governmental agency.

**REQUEST NO. 22:** All Documents relating to Agri Stats or its affiliates (including Express Markets, Inc.) concerning Pork, including any consideration of the risks and/or benefits of providing information to or receiving information from Agri Stats, the anonymity of individual Pork Integrator data received from Agri Stats, any processes employed by You to de-anonymize Agri Stats data, any contracts or agreements with Agri Stats, any presentations, Communications, or meeting minutes received from or provided to Agri Stats, and all copies of reports provided to or received from Agri Stats.

**REQUEST NO. 23:** All Documents relating to  actual or potential participation or consideration of any Benchmarking Service or any information sharing services relating to

15

Pork industry profitability, pricing, production, or supply other than Agri Stats or Express Markets, Inc.

**REQUEST NO. 24:** All Documents relating to Your membership in any Trade Association or industry group or attendance at any Trade Association, Industry Meeting or Creditor Conference, or investor or analyst conference, including announcements, membership lists, presentations (including speaker notes), agendas, minutes, notes, attendance lists, and correspondence.

**REQUEST NO. 25:** Documents sufficient to describe in detail the Pork products You sold, marketed, or distributed during the Relevant Time Period, including any variations relating to brand name, physical properties and characteristics, packaging, product form, cut, further processing, grade, specialty products and any other factors influencing price.

**REQUEST NO. 26:** Documents sufficient to show by month, quarter, and year Your revenues, profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, or projected profits relating to the sale of Pork in the United States.

**REQUEST NO. 27:** Documents or Structured Data sufficient to show the terms of all purchases, sales, trades, exchanges, or swaps of Pork between You and any other Pork Integrator, including any contracts, co-packing agreements, joint ventures, and/or other agreements, whether formal or informal.

**REQUEST NO. 28:** For the time period from January 1, 2005 through December 31, 2020, Structured Data sufficient to show, for each U.S. Pork sale, the categories of information listed below, and Documents sufficient to understand all data fields, codes, or

other fields on the invoice. These Direct Action Plaintiffs request this information in the most disaggregated form (meaning at the transactional level, not aggregated by month or quarter) in which it is kept, and Defendants should produce the data in a comma-delimited text file (*e.g.*, a file with a file extension of .csv or .txt). If You maintain separate or distinct sets of such data for internal purposes, Agri Stats reporting purposes, or any other purpose, these Direct Action Plaintiffs' request is for each separate set of data for the categories of information listed below.

a)   the terms of each sale;

b)   the invoice number;

c)   the purchase order number;

d)   the location from which the Pork was shipped;

e)   the customer's name, phone number(s), address(es), email address(es), including the identity of the customer that was billed and the location to which the Pork was shipped;

f)   the date You shipped the Pork, the date You billed for the Pork, and the date the customer took delivery;

g)   the grade, cut, product form, and/or type of Pork, including any product numbers, unique purchaser-specific identifier, any description of characteristics, and product descriptions sold for each transaction;

h)   the quantity (and units of measure) for each sale;

i)   all pricing information concerning the sale, including shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;

j)   the currency in which the sale was billed and paid;

k)   any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales;

l)   if a resale, the Supplier of each Pork sold in connection with each sale;

17

m)     the price You paid Your Supplier for each type of Pork sold in connection with each sale, including gross and net aggregate and per-unit prices;

n)     any fixed or variable costs or costs of goods sold concerning the sale (including freight charge and transportation cost, sales and distribution cost, raw materials, intermediates, marketing or sales cost, and any other cost attributed or allocated to the sale);

o)     for any sale or purchase from another Pork Integrator, Electronic Data Interchange fields for which the user can freely enter text, such as "comments" or similar fields;

p)     any Structured Database field summarizing terms of sale or agreements or contracts for customers;

q)     any other data available in Your database Concerning the purchase, sale or distribution of the Pork for each sale.

**REQUEST NO. 29:** From January 1, 2005 through December 31, 2020, Structured Data, databases and Documents regarding your production of Pork sufficient to show the details of your production, processing, and supply of "Pork Products" by day, month, quarter, and year by facility, including but not limited to the following:

a)     The volume--by total number and weight of Hogs--processed;

b)     The product form/type/grade/cut produced or processed and the volume of each;

c)     The processing, production, capacity, and capacity utilization.

**REQUEST NO. 30:** Documents sufficient to show Your Policies, Procedures and practices, whether implemented, adopted, used or considered, concerning compliance with antitrust laws and/or competition laws of the United States and States (including current and former versions of compliance policies and procedures, presentations, seminars, programs, memos, statements signed by Your members or employees that acknowledge

receipt of or compliance with such policies arising from or relating to any prior legal proceedings), and all Documents relating to any inquiries or investigations concerning compliance with such policies.

**REQUEST NO. 31:** Documents relating to actions to conceal or avoid detection of any potential violations of antitrust laws and/or competition laws of the United States and States (including the use of code words or otherwise masking the identity of any Person or entity, meeting in locations or communicating at times or via methods with the intent to avoid detection by any Person or entity, using non-traceable prepaid calling cards or cellphones, non-contract or disposable cell phones, placing calls from public phones, and destroying, secreting, altering or forging Documents).

**REQUEST NO. 32:** All Documents relating to any Direct Action Plaintiff serving these Requests.

**REQUEST NO. 33:** All Documents related to Communications with RaboBank concerning the Pork industry, including Competitive Conditions in the Pork industry.

**REQUEST NO. 34:** All Documents necessary to understand the operation of any of the computer hardware and systems, software, Structured Databases, ESI, database, storage, backup and archiving systems and Communications systems and devices information requested herein (including, but not limited to, Documents describing or defining the fields contained in any such database file naming conventions and standards); user manuals; Help features or documentation; password, encryption, and other security protocols; diskette, CD, DVD, and other removable media labeling standards; email storage conventions, e.g., limitations on mailbox sizes/storage locations; schedule and logs

for storage; software and hardware upgrades (including patches) for the Relevant Time Period (including who and what organization conducted such upgrades); and Backup tape rotation.

**REQUEST NO. 35:** Documents sufficient to identify and describe Your computer hardware and systems (including email systems), software, ESI, Structured Databases, storage, backup and archiving systems and Communications systems and devices used in connection with Documents called for by production of these Requests for Production, including data maps, data dictionaries, explanations of information contained in each system or database, and document retention policies.

**REQUEST NO. 36:** All Documents referenced or relied upon in responding to any Interrogatory served by any Direct Action Plaintiff or any plaintiff in *In re Pork Antitrust Litigation*, Case No. 0:18-cv-01776 (JRT/HB) (D. Minn.).

**REQUEST NO. 37:** All Documents produced to or received from any party or third party related to or in connection with this Action or in *In re Pork Antitrust Litigation*, Case No. 0:18-cv-01776 (JRT/HB) (D. Minn.).

**REQUEST NO. 38:** All Documents that You may rely on in support of, or that You contend supports, Your defenses and affirmative defenses in this Action.

Dated:   October 22, 2021

/s/ *Eric R. Lifvendahl*
Eric R. Lifvendahl
**L&G LAW GROUP, LLP**
Ryan F. Manion
175 W. Jackson Blvd., Suite 950
Chicago, Illinois 60604
Telephone: (312) 364-2500
Email: elifvendahl@lgcounsel.com
Email: rmanion@lgcounsel.com

**KAPLAN FOX & KILSHEIMER, LLP**
Robert N. Kaplan
Matthew P. McCahill
Jason A. Uris
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
Email: rkaplan@kaplanfox.com
Email: mmccahill@kaplanfox.com
Email: juris@kaplanfox.com

**THE COFFMAN LAW FIRM**
Richard L. Coffman
3355 W. Alabama Street, Suite 240
Houston, Texas 77098
Telephone: (713) 528-6700
Email: rcoffman@coffmanlawfirm.com

*Counsel for the* Action Meat *Plaintiffs*

/s/ *Michael S. Mitchell*
Scott E. Gant
Michael S. Mitchell
Sarah L. Jones
**BOIES SCHILLER FLEXNER LLP**
1401 New York Avenue, NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
Email: sgant@bsfllp.com
mmitchell@bsfllp.com
sjones@bsfllp.com

Colleen A. Harrison
**BOIES SCHILLER FLEXNER LLP**
333 Main StreetArmonk, NY 10504
Tel: (914) 749-8200
Email: charrison@bsfllp.com

*Counsel for Plaintiffs Sysco Corporation
and Amory Investments LLC*

**MARCUS & SHAPIRA LLP**
Bernard D. Marcus
Moira Cain-Mannix
Brian C. Hill
One Oxford Center, 35th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 471-3490
Email: marcus@marcus-shapira.com
Email: cain-mannix@marcus-shapira.com
 Email: hill@marcus-shapira.com

*Counsel for Giant Eagle, Inc.*

_/s/ David C. Eddy_
David C. Eddy
Dennis J. Lynch
Travis C. Wheeler
Chase C. Keibler
**NEXSEN PRUET, LLC**
1230 Main Street, Suite 700
Columbia, South Carolina 29201
Telephone: (803) 771-8900
Facsimile: (803) 253-8277
deddy@nexsenpruet.com
dlynch@nexsenpruet.com
twheeler@nexsenpruet.com
ckeibler@nexsenpruet.com

_Attorneys for Plaintiffs Conagra Brands,
Inc.; Nestlé USA, Inc.; and Nestlé Purina
PetCare Co._

_/s/ David B. Esau_
**CARLTON FIELDS, P.A.**
David B. Esau
Email: desau@carltonfields.com
Kristin A. Gore
Email: kgore@carltonfields.com
Garth T. Yearick
Email: gyearick@carltonfields.com
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Tel: (561) 659-7070
Fax: (561) 659-7368
Roger S. Kobert
Email: rkobert@carltonfields.com
405 Lexington Avenue, 36th Floor
New York, New York 10174-3699
Tel: (212) 785-2577
Fax: (212) 785-5203

_Counsel for Plaintiffs Cheney Brothers,
Inc. and Subway Protein Litigation Corp.,
as litigation trustee of the Subway®
Protein Litigation Trust_

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 22nd day of October 2021, counsel of record are being served with a copy of this document via electronic mail.

*/s/ Michael S. Mitchell*
Michael S. Mitchell
**BOIES SCHILLER FLEXNER LLP**
1401 New York Avenue, NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
Email: mmitchell@bsfllp.com

*Counsel for Plaintiffs Sysco Corporation and Amory Investments LLC*