# Exhibit C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br>Certain Direct Action Plaintiff Actions | No. 0:21-cv-02998-JRT-HB<br><br>**SMITHFIELD FOODS, INC.'S RESPONSES AND OBJECTIONS TO CERTAIN DIRECT ACTION PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PORK INTEGRATOR DEFENDANTS** |

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the United States District Court for the District of Minnesota, Defendant Smithfield Foods, Inc. ("Smithfield") provides the following Responses and Objections to Certain Direct Action Plaintiffs' ("DAPs") First Requests for Production to Pork Integrator Defendants ("Requests").

Smithfield serves these responses based upon the information reasonably available to it at this time, and its investigation is ongoing. Accordingly, Smithfield reserves the right to modify, amend, or supplement these responses as additional information becomes available through discovery and/or further investigation.

Smithfield's response to any Request is not an admission that it accepts or admits the existence of any fact set forth in or assumed by the Request or that the documents produced constitute admissible evidence. No response to any portion of any Request shall be deemed a waiver of any objection set forth herein that could be made to any such portion of the Request regarding relevance of the information or its admissibility. A statement by

Smithfield that it will produce or has produced documents in response to a particular Request does not mean that any such documents exist; it means only that, if relevant, responsive, non-privileged documents exist and can be located through a diligent search of Smithfield's reasonably accessible records, Smithfield will produce or has produced them (subject to the responses, Scope Limitations, and specific objections herein).

By serving these responses, Smithfield does not concede the relevance, materiality, or admissibility of any of the information described or suggested herein. Nor does Smithfield waive: (a) any claim for privilege or work-product protection, (b) any objections to the discoverability or admissibility of documents, (c) any other exemptions from disclosure or discovery, or (d) any claims of confidentiality or any rights or obligations pursuant to any protective orders concerning the production of documents. These responses are not to be interpreted as a waiver of Smithfield's right to object to any information as irrelevant or inadmissible in this action or any other action.

## OBJECTION TO INSTRUCTION

Smithfield objects to the instruction that "all documents must be organized and labeled to correspond to the categories in the associated document request" (Requests at p. 2), as purporting to impose obligations not imposed by the Federal Rules. Smithfield will produce documents as they are maintained in the ordinary course of business, as permitted by Federal Rule 34(b), and in accordance with the ESI Protocol. Dkt. No. 292.

## SCOPE LIMITATIONS

Smithfield's Scope Limitations apply to each of the Requests and are hereby incorporated within each response below.

1.      ***Search Methodology***.   Smithfield objects to any request seeking "all" or "any" documents on the grounds that Smithfield cannot guarantee that it has located every single document located anywhere in the company that might be responsive to a particular request.  Such a request, if interpreted literally, would seek documents and ESI far beyond the scope of a reasonable search of appropriate custodian files and non-custodial sources and would seek information that is not reasonably accessible and not proportional. Plaintiffs' counsel acknowledged during the parties' March 8, 2019 meet and confer that Smithfield is not required under the Federal Rules to search for and produce "All Documents" from all possible sources or locations. *See also* B. Clark March 15, 2019 letter.  Smithfield will respond to any request seeking "all" documents by conducting a reasonable search of the reasonably accessible files of certain custodians and certain sources using a search methodology (that may include search terms) that it decides to use. Smithfield will not search for or produce documents beyond these sources or for documents that are not captured in the results of any search term.  Smithfield reserves the right to amend its objections and responses to the Requests after custodians, non-custodial document sources, and search terms have been agreed or ordered.  Smithfield further

3

reserves the right to redact documents produced in response to the Requests as appropriate and as permitted by this Court's orders.

2.      ***Search Methodology***.   For the avoidance of doubt, Smithfield's offer to produce categories of documents below is expressly contingent upon the search for responsive documents being reasonable, limited to a reasonable number of agreed-upon custodians and sources, and the further use of review technologies to isolate potentially relevant information and lessen undue burden.   Information that is not reasonably accessible is not subject to Smithfield's offer to search for responsive documents.

3.      ***Privilege***.   Smithfield objects to each Request, Definition, or Instruction to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, the attorney-work-product immunity, or any applicable privilege, protection, doctrine, or immunity.   No response below should be construed as a waiver of any applicable privilege, protection, doctrine, or immunity.   Smithfield does not intend to produce privileged or protected documents or disclose any privileged or protected material, and any production of such documents or disclosure of such material is inadvertent, unless Smithfield expressly indicates a contrary intent in a writing accompanying its responses. Any documents withheld from production on such grounds will be identified on a privilege log in accordance with the ESI Protocol entered by the Court.

4.      ***Non-Existent Documents***.  Smithfield objects to any Request to the extent it purports, or may be construed, to call for the creation of any documents not kept in the ordinary course of business in Smithfield's possession, custody, or control.

5.      ***Renegotiating Agreements***.  Smithfield objects to any Request to the extent the DAPs are attempting to unravel or renegotiate agreements on the scope of discovery that Smithfield reached with other Plaintiffs. The DAPs chose to remain on the sidelines of this litigation for several years and do not assert claims that are materially different from those asserted by all other plaintiffs, meaning they have no reasonable basis to expand the scope of discovery beyond what Smithfield and other Plaintiffs agreed to.  Therefore, Smithfield will abide by discovery agreements it reached with other Plaintiffs unless Smithfield specifically agrees to a different arrangement with the DAPs.

6.      ***Notice to DAPs***.  In the event Smithfield determines that it will withhold a document based on any of these Scope Limitations, then within five business days of that determination, Smithfield will notify DAPs of that decision and provide an explanation of the basis for so withholding (including the Scope Limitation that forms the basis for Smithfield's decision).

## OBJECTIONS TO DEFINITIONS

1.      Smithfield objects to Definition 2 ("Benchmarking Service") on the grounds that it is overly broad and vague. If the DAPs intend for these Requests to cover benchmarking reports other than Agri Stats, then those other reports should be specified.

2.      Smithfield objects to Definition 3 ("Communications") on the grounds that the definition is overly broad and, as worded, encompasses matters that are not reasonably understood as a "communication" (e.g., "behavior," "contact," or "revelation"). Smithfield will interpret the word "communications" as transmitting information.

3.      Smithfield objects to Definition 4 ("Competitive Conditions") on the grounds that the definition is overly broad because it could be interpreted to cover nearly every aspect of Smithfield's business.

4.      Smithfield objects to Definition 5 ("Creditor Conference") on the grounds that this definition is vague and ambiguous and appears to include information not within Smithfield's possession, custody or control.  During prior meet and confers, Defendants initially questioned the meaning of the phrase "contract farmer."  Plaintiffs later clarified that phrase to mean "someone who is contracted to raise hogs for a specific pork integrator, rather than a farmer who may independently raise hogs and sell to whomever they wish to sell to." B. Clark March 15, 2019 letter.  Smithfield further objects to the phrase "Creditor Conference" as vague and ambiguous because Smithfield cannot know which companies

provide credit or loan financing for other pork producers, nor does Smithfield know which companies organize conferences or events.  If, during its review of its custodians' documents and documents from the disclosed non-custodial sources, Smithfield comes across a document that is otherwise relevant, responsive, and non-privileged and that relates to an industry conference that a representative from Smithfield attended and that Smithfield knows was sponsored by a creditor, Smithfield will produce that document. Smithfield also incorporates by reference its objections to the term "Pork Integrator."

5.      Smithfield objects to Definition 6 ("Creditor Representative") on the grounds that this definition is vague and ambiguous and appears to include information not within Smithfield's possession, custody or control.  During prior meet and confers, Defendants initially questioned the meaning of the phrase "contract farmer."  Plaintiffs later clarified that phrase to mean "someone who is contracted to raise hogs for a specific pork integrator, rather than a farmer who may independently raise hogs and sell to whomever they wish to sell to." B. Clark March 15, 2019 letter.  Smithfield further objects to the phrase "Creditor Representative" as vague and ambiguous because Smithfield cannot know all employees of all entities that provide financing for any pork producer.  Smithfield also incorporates by reference its objections to the term "Pork Integrator."

6.      Smithfield objects to Definitions 7 ("Defendant"), 28 ("Representative"), and 36 ("You," "Your," and "Your company") on the grounds that the definitions are

overly broad, unduly burdensome, and not proportional by including, among other things, entities such as affiliates, subsidiaries, parents, directors, agents, or those "purporting to act on behalf of a Defendant," as well as entities that are purportedly "managed or controlled" by a Defendant. Smithfield will interpret the term "Defendants" to mean only those entities specifically named as defendants in these cases. Because the Court dismissed with prejudice all claims against Indiana Packers Corporation, that entity will be excluded from Smithfield's interpretation of the term "Defendant" in responding to the Requests. Smithfield further objects to these definitions to the extent that they seek information and documents protected from disclosure by the attorney-client privilege, attorney-work-product immunity, or any other lawfully recognized privilege, protection, doctrine, or immunity. If, during its review of its custodians' documents and documents from the disclosed non-custodial sources, Smithfield comes across a document that is otherwise relevant, responsive, and non-privileged, Smithfield will not withhold that document solely on the basis that it mentions a parent company of a Defendant.

7.     Smithfield objects to Definitions 8 ("Document") and 10 ("ESI") on the grounds that they include documents and sources that are inaccessible, not relevant to the parties' claims and defenses, outside Smithfield's possession, custody, or control, and/or not proportional to the needs of the case, such as voicemail, text messages, video and audio recordings, storage media, logs of phone calls, instant messaging, ephemeral messaging,

online access data, network access and server activity logs, backup and archival files, and cloud-based or other virtualized ESI. Any such request is overly broad, unduly burdensome, harassing, and not proportional.

8. Smithfield objects to Definition 9 ("Document Custodian") on the grounds that this definition is vague, ambiguous, and difficult to understand as worded and on the grounds that it seeks the production of information not within Smithfield's possession, custody, or control. The definition seems to conflate Smithfield's possession, custody, and control with that of each of its employees, which is improper.

9. Smithfield objects to Definition 13 ("Industry Analyst") on the grounds that this definition seeks information not within Smithfield's possession, custody, or control and that Smithfield cannot identify all people possibly falling within this definition. Smithfield also incorporates by reference its objections to the term "Pork Integrator." If, during its review of its custodians' documents and documents from the disclosed non-custodial sources, Smithfield comes across a document that is otherwise relevant, responsive, and non-privileged and that relates to pork industry analysts with whom Smithfield communicated, Smithfield will produce the document.

10. Smithfield objects to Definition 14 ("Industry Meeting") on the grounds that it assumes Smithfield's knowledge of whether "two or more Pork integrators" are at a meeting. Smithfield further objects to the definition as overly broad and unduly

burdensome because it is not reasonably limited to meetings attended by Smithfield employees and/or attended on Smithfield's behalf.   Smithfield also incorporates by reference its objections to the term "Pork Integrator."

11.     Smithfield objects to Definition 15 ("Management") on the grounds that this definition includes people who do not maintain information that is relevant to this dispute and because the reference to "senior executives" is vague, is subject to multiple interpretations, and may include individuals who are not a part of Smithfield's "management."   Smithfield interprets "management" to include its executive-level employees at the vice-president level and higher, but not its Board of Directors.

12.     Smithfield objects to Definition 18 ("Policy" or "Procedure") on the grounds that in referring to courses of conduct, business methods, or traditions that may be "informal" or "unwritten" or followed by some unidentified person "implicitly," it includes matters that are not Smithfield's policies or procedures.   Smithfield will interpret these terms to mean formal practices, methods, or courses of action.   However, if, during its review of its custodians' documents and documents from the disclosed non-custodial sources, Smithfield comes across a document that is otherwise relevant, responsive, and non-privileged and that refers to an informal policy or practice, Smithfield will not withhold that document on the basis of this objection.

13.     Smithfield objects to Definition 19 ("Pork") on the grounds that it is vague and ambiguous.  Plaintiffs and Defendants previously agreed upon categories of products that fall within the definition of pork and that are relevant to these cases, and Smithfield will abide by that agreement in producing documents and data.

14.     Smithfield objects to Definition 20 ("Pork Farm") on the grounds that it is nonsensical.  There is no such thing as a pork farm because no one farms pork.  Smithfield further objects to this definition as vague and ambiguous because of the overlap with the definition of "Pork Grower," and Plaintiffs have never explained the difference between the two definitions.  Smithfield will interpret this as referring to a Hog Farm.

15.     Smithfield objects to Definition 21 ("Pork Grower") on the grounds that it is nonsensical.   There is no such thing as a pork grower because no one grows pork. Smithfield further objects to this definition as vague and ambiguous because of the overlap with the definition of "Pork Farm," and Plaintiffs have never explained the difference between the two definitions.  Smithfield will interpret this as referring to a Hog Grower.

16.     Smithfield objects to Definition 22 ("Pork Integrator") on the grounds that this definition is vague and ambiguous, seeks information not within Smithfield's possession, custody, or control, and would require Smithfield to guess at whether any non-Defendant entity fits within the scope of this definition.  Defendants requested clarification from Plaintiffs about whether this definition is conjunctive (e.g., to qualify as a "Pork

Integrator," one must not only process pork, but also raise hogs) or disjunctive (e.g., to qualify as a "Pork Integrator," one need only buy hogs or process pork).   Plaintiffs responded by stating that "the integrator decision would apply to the slaughter or process of pork regardless of whether the hogs were bought, raised, or acquired through other means."  *See* B. Clark March 15, 2019 letter.  Smithfield objects to the original definition and March 15 clarification as contradictory (an entity that operates at only one level of a market is not, by definition, vertically integrated), unduly burdensome, disproportionate to the needs of the case, lacking in particularity, and seeking information that is not relevant to the claim or defense of any party to this action, especially to the extent it seeks "all" documents concerning non-Defendant entities that slaughter hogs or process pork.   On October 28, 2020, Plaintiffs provided Defendants with a list of entities that Plaintiffs consider to be non-Defendant "Pork Integrators."   Defendants objected to that list. Plaintiffs and Defendants subsequently resolved their dispute over the definition of Pork Integrator and agreed to a list of entities that fall within the Plaintiffs' definition.  Smithfield will abide by that agreement in producing documents and data.

17.     Smithfield objects to Definition 24 ("Pork Supply Factors") on the grounds that the definition is argumentative and assumes facts contrary to reality.  Smithfield does not control the supply of pork.  If, during its review of its custodians' documents and documents in the disclosed non-custodial sources, Smithfield comes across a document

that is otherwise relevant, responsive, and non-privileged, Smithfield will not withhold that document on the basis of this objection.

18.     Smithfield objects to Definition 25 ("Relating to," etc.) on the grounds that this definition is overly broad and would require the production of information that is not relevant, or if relevant, not proportional to the needs of these disputes, or would require Smithfield to access, review, and produce information that is not reasonably accessible due to undue burden or cost.  Smithfield will give these terms their ordinary meanings, based on common usage, in responding to the Requests.

19.     Smithfield objects to Definition 29 ("Sales Personnel") to the extent that it includes any "agent or representative" whose documents are not within Smithfield's possession, custody, or control (such as a downstream seller) and also objects on the grounds that the responsibilities of another Defendant's employees are unknown to Smithfield.  Smithfield will interpret "any agent or representative authorized by that Defendant to sell its Pork on its behalf" to mean only documents in the possession, custody, and control of Smithfield's entities that sell pork into the United States or export pork out of the United States.

20.     Smithfield objects to Definition 30 ("Structured Data") on the grounds that this definition is vague and ambiguous (especially the phrase "other structured record or

file") and objects to the extent that this definition includes data that are not proportional and/or not reasonably accessible due to undue burden or cost.

21.     Smithfield objects to Definition 35 ("Unstructured Data") on the grounds that it includes information that is irrelevant (i.e., "picture captions") or, if relevant, not proportional to the needs of this case.  Smithfield further objects to the extent this definition would require the production of data not in Smithfield's possession, custody or control (such as "GPS data" or "tweets"), data that are not reasonably accessible due to undue burden or cost, and/or data that are not proportional.  Finally, Smithfield objects to the phrases "pre-defined data model," "various formats," and "others of similar variable formats" as vague and ambiguous.

## RESPONSES AND OBJECTIONS TO SPECIFIC DOCUMENT REQUESTS

Without waiving the above objections to definitions and Scope Limitations, Smithfield incorporates the above objections and Scope Limitations into the responses below and responds to the Requests as follows.

**REQUEST NO. 1:**

Documents sufficient to show Your organizational structure, including, but not limited to, departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions that had any role at any time during the Relevant Time Period in the production, processing, distribution, marketing, pricing or sale of Pork.

14

**RESPONSE TO REQUEST NO. 1:**

In addition to its objections to the Definitions, Smithfield objects to this Request on the grounds that it is not limited to documents that are relevant to the claims and defenses in this case, such as documents related to employees with final decision-making authority for producing, buying, and/or selling hogs and pork.

Subject to and without waiver of its objections, Smithfield responds that it has already produced reasonably available documents responsive to this Request, including organizational charts with its Initial Disclosures on December 3, 2018, as well as additional documents and information with its ESI Disclosures on March 8, 2019, and with its Supplemental ESI Disclosures on July 16, 2019, which were then provided to the DAPs on August 13, 2021.

**REQUEST NO. 2:**

All Documents produced to the Department of Justice (including the Federal Bureau of Investigation), Federal Trade Commission, U.S. Department of Agriculture, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators voluntarily or pursuant to any civil investigative demand, grand jury subpoena, or other investigative request between January 1, 2008 and the present, concerning the production, processing, distribution, marketing, pricing or sale of Pork during the Relevant Time Period.

**RESPONSE TO REQUEST NO. 2:**

Smithfield invokes Scope Limitations 1-3 and 5 and its objections to the definitions. Smithfield also objects to this Request on the grounds that the phrases "competition in the Pork industry" and "other government agencies or regulators" are vague and ambiguous, and the word "voluntarily" is overly broad and could be interpreted to expand the scope of the Request beyond what is proportional to the needs of the case. Smithfield further objects to the request that it produce documents dated "between January 1, 2008 and the present" on the grounds that this exceeds the proper scope of discovery in these cases.

Subject to and without waiver of its Scope Limitations and objections, Smithfield responds that it has no responsive documents.

**REQUEST NO. 3:**

All Documents relating to any Communications, Meetings, or agreements (whether formal or informal, or proposed or actual) between You and any other Defendant or Pork Integrator.

**RESPONSE TO REQUEST NO. 3:**

Smithfield invokes Scope Limitations 1-3 and 5 and its objections to the Definitions (especially the definition of Pork Integrator). Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects that the Request is not

16

limited to meetings or agreements that have any relevance to this case. Smithfield further objects to this Request to the extent it seeks the same level of discovery from Smithfield about communications with non-defendant Pork Integrators as it does about Smithfield's communications with Defendants. Smithfield further objects to any attempt to expand the list of relevant Pork Integrators beyond what Smithfield has already agreed to use.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and has produced any relevant, non-privileged documents responsive to this Request.

**REQUEST NO. 4:**

All Documents relating to Your threatened, actual, or potential enforcement of a production, capacity, output or supply restriction, reduction, or limitation, including but not limited to any penalties imposed, or any other warning, threat, or retaliation resulting from a failure to act consistent with such restriction, reduction, or limitation.

**RESPONSE TO REQUEST NO. 4:**

Smithfield invokes Scope Limitations 1-2 and 4 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Subject

to and without waiver of its Scope Limitations and objections, Smithfield responds that it has no responsive documents.

**REQUEST NO. 5:**

For each Document Custodian, all:

a) electronic and hard copy diaries, calendars, appointment books or notes;

b) contact information maintained in electronic or hard copy format, for any Person who is or was: (i) an owner, employee, consultant, officer, board member, Representative, or agent of a Pork Integrator or Agri Stats; (ii) a Creditor Representative or Industry Analyst; (iii) an employee of a Trade Association; or (iv) an employee of any entity that falls within the definition of Industry Meeting.

c) trip and travel logs and records, expense reports, and entertainment reports, including any other supporting Documents;

d) bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as you go cellphones) if such telephones were used for business purposes;

e) a copy of the Document Custodian's most recently created resume or curriculum vitae (CV);

f) copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Pork, such as testimony at a deposition, trial, or public hearing;

g) Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by the Document Custodian for any of Your business purposes in the Pork industry; and

h) Any severance agreements in connection with the Document Custodian ceasing employment or changing employment status with You (without time limitation).

**RESPONSE TO REQUEST NO. 5:**

Smithfield invokes Scope Limitations 1-5 and its objections to the Definitions. Smithfield also objects to this Request on multiple grounds.  First, any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case.  Second, Smithfield objects to parts (a), (c), and (d) on the grounds that they are not limited to relevant, business-related calendar entries, trips, calls, and to-do lists, and thus are overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects to part (c) to the extent it seeks documents related to trips from one Smithfield office or facility to another because such documents are irrelevant.  Third, Smithfield objects to part (b) to the extent it seeks something beyond contact information

19

related to people in the pork industry that is contained in a document custodian's Outlook Contacts or hard-copy address book.  Fourth, Smithfield objects to part (d) on the grounds that the request for documents related to home phone and fax numbers and purely personal cell phones is overly broad, unduly burdensome, and not proportional to the needs of the case, and on the grounds that part (d) seeks documents that are not within Smithfield's possession, custody, or control.  Fifth, Smithfield objects to part (e) to the extent it seeks something other than resumes that already exist and are within Smithfield's possession, custody, or control.   Sixth, Smithfield objects to part (f) to the extent that any prior testimony is irrelevant to the parties' claims and defenses in this case and to the extent that any protective order in a prior lawsuit would prevent the production of a document custodian's deposition transcript.  Seventh, Smithfield objects to part (g) to the extent it purports to require the creation of a document that does not exist.  Eighth, Smithfield objects to part (h) on the grounds that it is not limited in time and seeks documents that are irrelevant.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and has produced relevant, non-privileged documents responsive to this Request that exist, relate to work use, are relevant

to the parties' claims and defenses, are reasonably available, and are in Smithfield's possession, custody, or control.

**REQUEST NO. 6:**

Copies of all Telephone Records in your possession, custody, or control, including Telephone Records of your main phone number(s), main fax number(s), and any phone number used as a switchboard for any of your relevant facilities such as your headquarters, administrative offices, Pork Farms, Pork Processing Facilities, and Pork sales offices.

**RESPONSE TO REQUEST NO. 6:**

Smithfield invokes Scope Limitations 1-2 and 5 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that a request for literally all phone records for all calls made to and from all facilities and all offices by all company employees for more than a decade is overly broad, unduly burdensome, and not proportional to the needs of the case. Such a request would capture documents that are irrelevant to the parties' claims and defenses. Smithfield understands this Request to be limited by Plaintiffs' explanations (a) "that only the phone records related to the location of the document custodians are requested to the extent there is a switchboard or a main telephone number from which an executive at a Defendant company may make or receive calls" and (b) that Plaintiffs "only request the records that are in Your possession, custody, or control." B. Clark March 15, 2019 letter.

21

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its relevant offices (as defined in Brian Clark's March 15, 2019 letter) and has produced relevant, non-privileged documents responsive to this Request.

**REQUEST NO. 7:**

All Documents relating to Communications with investors, Industry Analysts, Benchmarking Services, and/or Creditor Representatives concerning Competitive Conditions.

**RESPONSE TO REQUEST NO. 7:**

Smithfield invokes Scope Limitations 1-3 and 5 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects to this Request on the grounds that the terms "Industry Analysts," "Benchmarking Services," and "Creditor Representatives" are vague and ambiguous.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and has produced relevant, non-

privileged documents responsive to this Request in which the primary topic is competition in the pork industry.

**REQUEST NO. 8:**

All Documents relating to public statements or announcements, press releases, or corporate Communications by You or by other Pork Integrators concerning Competitive Conditions.

**RESPONSE TO REQUEST NO. 8:**

Smithfield invokes Scope Limitations 1-3 and 5 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects to this Request on the grounds that the phrases "corporate Communications" and "Competitive Conditions" are vague and ambiguous. Plaintiffs refused Defendants' request for clarification of the term "corporate Communications," claiming that the "difference between 'corporate communications' with 'press releases' and 'public announcements' is intuitive." B. Clark March 15, 2019 letter. Plaintiffs further defined "corporate Communications" as "includ[ing] email communications from, for example, an investor or media representative, that are not public announcements or press releases." Id.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and has produced relevant public announcements, press releases, and communications with investment bankers or journalists related to competition in the United States pork industry.

**REQUEST NO. 9:**

All Documents relating to Your practice and policies for drafting, approving, and issuing all public Communications regarding Competitive Conditions.

**RESPONSE TO REQUEST NO. 9:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects to this Request on the grounds that the phrases "public Communications" and "Competitive Conditions" are vague and ambiguous. Smithfield further objects because this Request is entirely irrelevant.

**REQUEST NO. 10:**

All Documents relating to budgets, projections, estimates, or related studies, presentations, business plans, or reports prepared or received by Your current or former directors, officers, or Management regarding the following topics:

a.  Pork production, supply, capacity or output;

b.  Pork prices or pricing;

c.  cost and/or cost accounting reports (including, production, sale and distribution) related to Pork;

d.  audited or unaudited financial statements (including all appendices) related to Pork;

e.  cost and supply of raw material and/or inputs related to Pork, including any back integration of raw materials, swaps or sales of raw materials with other Pork Integrators, or hedging of purchased raw materials and/or inputs for Pork;

f.  distribution channels for Pork;

g.  export markets for Pork including a breakdown of country of destination and product form;

h.  Pork product information regarding the types and product forms of Pork sold by You;

i.  forecasted, projected, estimated, planned, or actual demand for Pork;

j.  demand changes or demand fluctuations for Pork sold in the U.S.; and

k.  profits, revenues, and loss information on Pork produced or sold in the U.S. identified on a (i) consolidated basis; (ii) product line or product category basis; and/or (iii) facility-by-facility basis.

## RESPONSE TO REQUEST NO. 10:

Smithfield invokes Scope Limitations 1-3 and 5 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects to this Request on the grounds that unaudited financial statements are irrelevant to the parties' claims and defenses and not proportional to the needs of the case.  Smithfield also objects to the phrase "distribution channels for Pork" as vague and ambiguous.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and has produced relevant, non-privileged documents responsive to this Request.

## REQUEST NO. 11:

Documents sufficient to show all forms of Your contracts and invoices, and any summaries of the terms, with Pork Growers.

**RESPONSE TO REQUEST NO. 11:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that the phrase "Pork Growers" is vague and ambiguous.  Smithfield further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case in requesting "all forms of Your contracts and invoices, and any summaries of the terms, with contract farmers or Pork Growers."

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and has produced a representative sample of contracts and invoices that Smithfield uses with its contract growers for the raising of hogs in the United States.

**REQUEST NO. 12:**

For the period January 1, 2008 through June 30, 2018, Documents sufficient to identify all of Your Pork Growers, Pork Farms, and Pork Processing Facilities.

**RESPONSE TO REQUEST NO. 12:**

Subject to and without waiving its objections to the Definitions, Smithfield has produced or will produce relevant, non-privileged lists sufficient to identify (for the time period January 1, 2008 through June 30, 2018) Smithfield's own pork processing plants,

27

Smithfield's own hog farms, and the external hog growers who grow Smithfield-owned hogs according to Smithfield's specifications.

**REQUEST NO. 13:**

All Documents relating to Competitive Conditions for Pork, including reports, presentations, industry publications, business plans, studies, analyses, or other Documents, including those prepared by or for Industry Analysts or other third parties, concerning: (i) market shares; (ii) consolidation, mergers, acquisitions, or joint ventures; (iii) production or processing capacity, capacity reduction, capacity utilization, or operating rates; (iv) fixed or variable costs; (v) pricing; (vi) inventories; (vii) entry or exit conditions; (viii) inventories; (ix) supplies/supply trends; (x) data, publications, or other sources used in the regular course of business by You to monitor Pork demand in the United States; (xi) substitute products; (xii) exports; (xiii) raw materials; (xiv) Pork Supply Factors; or (xv) other industry statistics.

**RESPONSE TO REQUEST NO. 13:**

Smithfield invokes Scope Limitations 1-3 and 5 and its objections to the Definitions (especially the definition of "Competitive Conditions"). Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects to this Request because, taken literally and to its logical extreme, it would cover just about

28

every document in Smithfield's possession. Smithfield also objects to the subparts of this Request to the extent they are not limited to documents relating to competition. For example, Smithfield will interpret this Request as seeking M&A documents that refer to competition, not literally every document related to an M&A transaction. Smithfield further objects to this Request on the grounds that the words and phrases "entry or exit conditions," "inventories," "publications or other sources," and "other industry statistics" are vague and ambiguous.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and has produced relevant, non-privileged management-level presentations analyzing US hog and pork supply, demand, and prices; market shares in various segments of the US pork industry; M&A activity in the US pork industry; and hog and pork exports from the US to other countries.

**REQUEST NO. 14:**

All Documents concerning Pork supply or production decisions, reductions, rationalization, industry leadership, industry discipline, production discipline, supply discipline, capacity discipline, or other so-called disciplined approaches or practices relating to the Pork industry.

**RESPONSE TO REQUEST NO. 14:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects to this Request because the terms "supply rationalization, industry leadership, industry discipline, production discipline, supply discipline, capacity discipline, or other so-called disciplined approaches or practices" are undefined, vague, and ambiguous. By responding to this Request, Smithfield does not agree with the DAPs' characterizations in the Request and is not adopting their assumptions and assertions—in particular, that Smithfield engaged in any of the listed practices in combination with any other entity.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced relevant, non-privileged documents discussing purported leadership or discipline with respect to US pork supply, production, or capacity.

**REQUEST NO. 15:**

All Documents related to Your quoting, changing, or setting the prices or the terms and conditions for sale of Pork, including pricing guidelines, pricing methods, pricing

formulas, procedures or authorization procedures for Sales Personnel to quote a price, price changes, price lists, pricing policies, violations of pricing policies and Documents providing guidance to Sales Personnel about implementation of price changes.

**RESPONSE TO REQUEST NO. 15:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects to the terms "pricing guidelines, pricing methods, pricing formulas, procedures or authorization procedures for Sales Personnel to quote a price, price changes, price lists, pricing policies, [and] violations of pricing policies" as vague and ambiguous.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced relevant, non-privileged documents responsive to this Request.

**REQUEST NO. 16:**

All Documents relating to Pork price announcements, price changes, explanations of the reasons for price changes, price lists, pricing policies, pricing guidelines, pricing methods, pricing formulas, analysis of market prices, monitoring of competitor pricing,

price changes of Pork produced or sold in the U.S. (including price announcements or explanations of the reasons for price changes), price increase and surcharge announcements, and any other Communications concerning Pork price increases or the imposition of surcharges.

**RESPONSE TO REQUEST NO. 16:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects that the terms "pricing policies, pricing guidelines, pricing methods, [and] pricing formulas" are vague and ambiguous. Smithfield also objects to this Request as duplicative, at least in part, of Request No. 15.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced relevant, non-privileged documents responsive to this Request.

**REQUEST NO. 17:**

All Documents relating to any decision to change the pricing terms for Your customers' contracts for Pork, including any analyses regarding changes from fixed-price to adjustable price provisions.

**RESPONSE TO REQUEST NO. 17:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield also objects that the phrases "any decision," "pricing terms," and "any analyses" are vague and ambiguous. Smithfield further objects to this Request on the grounds that it is duplicative, at least in part, of Requests Nos. 15-16.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced relevant, non-privileged documents responsive to this Request.

**REQUEST NO. 18:**

All contracts or other agreements, and any summaries of the terms (including duration, price protection, terms for price modification, surcharges, discounts, or rebates) for the sale of Pork in the U.S. to Your customers.

**RESPONSE TO REQUEST NO. 18:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All contracts" and "any summaries" is overly broad, unduly burdensome, and not proportional to the

needs of the case. Smithfield further objects to this Request on the grounds that the phrases "other agreements," "price protection," and "terms for price modification" are vague and ambiguous.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced relevant, non-privileged documents responsive to this Request.

**REQUEST NO. 19:**

All Documents relating to Pork customer complaints regarding prices, pricing, or terms or conditions of sale or the refusal or failure to supply Pork and any responses thereto, and all Documents reflecting any policy of Your company concerning the handling of such customer complaints.

**RESPONSE TO REQUEST NO. 19:**

Smithfield invokes Scope Limitations 1-3 and 5 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects to this Request on the grounds that the request for all documents related to all customer complaints about non-price "terms or conditions of sale" is overly broad, unduly burdensome, and seeks documents that are irrelevant and not proportional

to the needs of the case.  During the meet and confer process, Plaintiffs confirmed they "are not looking to collect and review every single document within Defendants' companies on this topic."  See B. Clark March 15, 2019 letter.  Plaintiffs also confirmed that this request does not include "documents that discuss a routine issue of timing of product delivery to a customer" and confirmed that they will need to "negotiate sources, search methodology [. . .] with each Defendant individually."  Id.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced relevant, non-privileged documents reflecting customer complaints about price or supply and Smithfield's policy in responding to any such complaints.

**REQUEST NO. 20:**

Documents sufficient to show actual or potential substitutes for Pork, or the elasticity of supply, demand, or price of Pork (including the effect of suchsubstitutes' prices upon Pork pricing, purchase terms, or profits).

**RESPONSE TO REQUEST NO. 20:**

In addition to its objections to the Definitions, Smithfield objects to this Request on the grounds it is vague and ambiguous in referring to "actual or potential substitutes for Pork, or the elasticity of supply, demand, or price of Pork" without any definitions.

35

Subject to and without waiver of its General Objections, Smithfield has conducted a reasonable search and produced documents sufficient to show what it believes to be the actual or potential substitutes for the pork products it sells.

**REQUEST NO. 21:**

Documents sufficient to identify any tentative, proposed or consummated sale, acquisition, merger, joint venture, divestiture, transfer of assets, spinoff, or any other form of change of ownership or control or business combination concerning any Pork-related business, production facilities, product lines, or other assets (including both businesses or assets owned or controlled by You and those owned or controlled by other Persons), and any minutes, notes, reports, studies, analysis, presentations, expert or market participant comments, and any analysis or other information submitted to or received from any governmental agency.

**RESPONSE TO REQUEST NO. 21:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to numerous terms in this Request that are vague and ambiguous ("transfer of assets," "spin-off," "any other form of change of ownership," "business combination," "Pork-related business," "other assets," or "other information submitted to or received from any governmental agency"). Smithfield also objects that this Request seeks documents that are irrelevant and not proportional to the needs of the case.

36

Smithfield also objects to this Request to the extent that disclosing information sufficient to identify a potential transaction that never closed and never became public would breach a confidentiality or non-disclosure agreement with a non-party.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced (if permitted by confidentiality and non-disclosure agreements with non-parties) relevant, non-privileged documents sufficient to show proposed or contemplated mergers, acquisitions, joint ventures, or divestitures involving Smithfield and another Defendant.

**REQUEST NO. 22:**

All Documents relating to Agri Stats or its affiliates (including Express Markets, Inc.) concerning Pork, including any consideration of the risks and/or benefits of providing information to or receiving information from Agri Stats, the anonymity of individual Pork Integrator data received from Agri Stats, any processes employed by You to de-anonymize Agri Stats data, any contracts or agreements with Agri Stats, any presentations, Communications, or meeting minutes received from or provided to Agri Stats, and all copies of reports provided to or received from Agri Stats.

**RESPONSE TO REQUEST NO. 22:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced all: (a) reports received from Agri Stats; (b) documents that Smithfield sent to or received from Agri Stats that relate to the production or pricing of pork in the United States; (c) contracts between Smithfield and Agri Stats; and (d) internal analyses of Agri Stats reports.

**REQUEST NO. 23:**

All Documents relating to actual or potential participation or consideration of any Benchmarking Service or any information sharing services relating to Pork industry profitability, pricing, production, or supply other than Agri Stats or ExpressMarkets, Inc.

**RESPONSE TO REQUEST NO. 23:**

Smithfield invokes Scope Limitations 1-3 and 5 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects on the grounds that the phrase "Benchmarking Service or

information sharing services" is vague and ambiguous. Based on Plaintiffs' March 15 letter, Smithfield understands this Request as not including the USDA within the meaning of a benchmarking or information-sharing service. B. Clark March 15, 2019 letter. Smithfield further objects to the request for "All Documents" related to services other than Agri Stats on the grounds such services, if any exist in the pork industry, are irrelevant and not proportional to the needs of the case, given Plaintiffs' emphasis on Agri Stats alone.

Subject to and without waiver of its Scope Limitations and objections, Smithfield conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced relevant, non-privileged documents sufficient to identify entities other than Agri Stats, if any, providing benchmarking services to Smithfield about the pork industry.

**REQUEST NO. 24:**

All Documents relating to Your membership in any Trade Association or industry group or attendance at any Trade Association, Industry Meeting or Creditor Conference, or investor or analyst conference, including announcements, membership lists, presentations (including speaker notes), agendas, minutes, notes, attendance lists, and correspondence.

**RESPONSE TO REQUEST NO. 24:**

Smithfield invokes Scope Limitations 1-4 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case. Smithfield further objects to this Request to the extent it seeks documents related to "membership in any Trade Association or industry group or attendance at any Trade Association, Industry Meeting or Creditor Conference" because such an overly broad request seeks documents that are irrelevant and not proportional to the needs of this case.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced relevant, non-privileged documents responsive to this Request that exist, relate to work use, are relevant to the parties' claims and defenses, are reasonably available, and are in Smithfield's possession, custody, or control.

**REQUEST NO. 25:**

Documents sufficient to describe in detail the Pork products You sold, marketed, or distributed during the Relevant Time Period, including any variations relating to brand name, physical properties and characteristics, packaging, product form, cut, further processing, grade, specialty products and any other factors influencing price.

**RESPONSE TO REQUEST NO. 25:**

Smithfield invokes Scope Limitation 5.  Smithfield and Plaintiffs reached agreement on which categories of pork products are relevant in these cases, and Smithfield will continue to abide by that agreement.  In addition to that Scope Limitation and its objections to the Definitions, Smithfield objects to this Request because the terms "physical properties and characteristics, packaging, product form, . . ., and any other factors" are vague and ambiguous.

Subject to and without waiving its objections, Smithfield has produced relevant, non-privileged documents and data that list the relevant fresh and packaged pork products Smithfield sold from January 1, 2008 through June 30, 2018.

**REQUEST NO. 26:**

Documents sufficient to show by month, quarter, and year Your revenues, profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, or projected profits relating to the sale of Pork in the United States.

**RESPONSE TO REQUEST NO. 26:**

Smithfield invokes Scope Limitations 1-3 and 5 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that unaudited financial statements are irrelevant to the parties' claims and defenses and not proportional to the needs of the case.

41

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced relevant, non-privileged documents responsive to this Request.

**REQUEST NO. 27:**

Documents or Structured Data sufficient to show the terms of all purchases, sales, trades, exchanges, or swaps of Pork between You and any other Pork Integrator, including any contracts, co-packing agreements, joint ventures, and/or other agreements, whether formal or informal.

**RESPONSE TO REQUEST NO. 27:**

Smithfield invokes Scope Limitation 5. Smithfield and Plaintiffs agreed on a list of relevant Pork Integrators, and Smithfield will continue to abide by that agreement. In addition to that Scope Limitation and its objections to the Definitions, Smithfield objects to this Request because it seeks Structured Data but then asks for "contracts, co-packing agreements, joint ventures, and/or other agreements, whether formal or informal," which would not be found in a structured database containing transaction data. Smithfield also objects to the phrase "other agreements, whether formal or informal" as vague and ambiguous.

Subject to and without waiving its objections, Smithfield responds that it has conducted a reasonable search of its agreed or Court-ordered data sources using a search methodology and produced responsive transaction data in accordance with the Court's ESI Protocol for the date range January 1, 2008 through June 30, 2018.

**REQUEST NO. 28:**

For the time period from January 1, 2005 through December 31, 2020, Structured Data sufficient to show, for each U.S. Pork sale, the categories of information listed below, and Documents sufficient to understand all data fields, codes, or other fields on the invoice. These Direct Action Plaintiffs request this information in the most disaggregated form (meaning at the transactional level, not aggregated by month or quarter) in which it is kept, and Defendants should produce the data in a comma-delimited text file (*e.g.*, a file with a file extension of .csv or .txt). If You maintain separate or distinct sets of such data for internal purposes, Agri Stats reporting purposes, or any other purpose, these Direct Action Plaintiffs' request is for each separate set of data for the categories of information listed below.

a.  the terms of each sale;

b.  the invoice number;

c.  the purchase order number;

d.  the location from which the Pork was shipped;

43

e.  the customer's name, phone number(s), address(es), email address(es), including the identity of the customer that was billed and the location to which the Pork was shipped;

f.  the date You shipped the Pork, the date You billed for the Pork, and the date the customer took delivery;

g.  the grade, cut, product form, and/or type of Pork, including any product numbers, unique purchaser-specific identifier, any description of characteristics, and product descriptions sold for each transaction;

h.  the quantity (and units of measure) for each sale;

i.  all pricing information concerning the sale, including shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;

j.  the currency in which the sale was billed and paid;

k.  any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales;

l.  if a resale, the Supplier of each Pork sold in connection with each sale;

m.  the price You paid Your Supplier for each type of Pork sold in connection with each sale, including gross and net aggregate and per-unit prices;

n.  any fixed or variable costs or costs of goods sold concerning the sale (including freight charge and transportation cost, sales and distribution cost, raw materials, intermediates, marketing or sales cost, and any other cost attributed or allocated to the sale);

o.  for any sale or purchase from another Pork Integrator, Electronic Data Interchange fields for which the user can freely enter text, such as "comments" or similar fields;

p.  any Structured Database field summarizing terms of sale or agreements or contracts for customers;

q.  any other data available in Your database Concerning the purchase, sale or distribution of the Pork for each sale.

**RESPONSE TO REQUEST NO. 28:**

Smithfield invokes Scope Limitations 1-2 and 4-5 as well as its objections to the Definitions.  Smithfield also objects to the time frame in this Request as overly broad, unduly burdensome, and not proportional to the needs of the case.  Smithfield further objects to Plaintiffs' request that Smithfield produce transaction data in a particular format rather than in the format in which the data are kept in the ordinary course of business.

Subject to and without waiver of its Scope Limitations and objections, Smithfield responds that it has conducted a reasonable search of its agreed or Court-ordered data sources using a search methodology and produced responsive transaction data (that may or may not contain every piece of information requested) in accordance with the Court's ESI Protocol for the date range January 1, 2008 through June 30, 2018.  Smithfield further responds that it will meet and confer with Plaintiffs if they have additional questions about how to understand any of Smithfield's data productions and may produce documents sufficient to answer those questions, after conducting a reasonable search.

**REQUEST NO. 29:**

From January 1, 2005 through December 31, 2020, Structured Data, databases and Documents regarding your production of Pork sufficient to show the details of your production, processing, and supply of "Pork Products" by day, month, quarter, and year by facility, including but not limited to the following:

45

a.   The volume--by total number and weight of Hogs--processed;

b.   The product form/type/grade/cut produced or processed and the volume of each;

c.   The processing, production, capacity, and capacity utilization.

**RESPONSE TO REQUEST NO. 29:**

Smithfield invokes Scope Limitations 1-2 and 4-5 as well as its objections to the Definitions.  Smithfield also objects to the time frame in this Request as overly broad, unduly burdensome, and not proportional to the needs of the case.  Smithfield further objects to Plaintiffs' request that Smithfield produce data in a particular format rather than in the format in which the data are kept in the ordinary course of business.

Subject to and without waiver of its Scope Limitations and objections, Smithfield responds that it has conducted a reasonable search of its agreed or Court-ordered data sources using a search methodology and produced or will produce responsive data (that may or may not contain every piece of information requested) in accordance with the Court's ESI Protocol for the date range January 1, 2008 through June 30, 2018.  Smithfield further responds that it will meet and confer with Plaintiffs if they have additional questions about how to understand any of Smithfield's data productions and may produce documents sufficient to answer those questions, after conducting a reasonable search.

46

**REQUEST NO. 30:**

Documents sufficient to show Your Policies, Procedures and practices, whether implemented, adopted, used or considered, concerning compliance with antitrust laws and/or competition laws of the United States and States (including current and former versions of compliance policies and procedures, presentations, seminars, programs, memos, statements signed by Your members or employees that acknowledge receipt of or compliance with such policies arising from or relating to any prior legal proceedings), and all Documents relating to any inquiries or investigations concerning compliance with such policies.

**RESPONSE TO REQUEST NO. 30:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege and the attorney work-product immunity.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and produced any relevant, non-privileged documents sufficient to show Smithfield's compliance policies related to federal or state antitrust laws in the United States. Smithfield further responds that its corporate compliance policy is available online.

**REQUEST NO. 31:**

Documents relating to actions to conceal or avoid detection of any potential violations of antitrust laws and/or competition laws of the United States and States (including the use of code words or otherwise masking the identity of any Person or entity, meeting in locations or communicating at times or via methods with the intent to avoid detection by any Person or entity, using non-traceable prepaid calling cards or cellphones, non-contract or disposable cell phones, placing calls from public phones, and destroying, secreting, altering or forging Documents).

**RESPONSE TO REQUEST NO. 31:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that it includes several terms that are vague and ambiguous ("potential violations," "code words," and "secreting").   By responding to this Request, Smithfield does not agree with Plaintiffs' characterizations in the Request and is not adopting their assumptions and assertions—in particular, that Smithfield violated any law or attempted to conceal any violation of any law.

Subject to and without waiver of its Scope Limitations and objections, Smithfield has conducted a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and has no documents responsive to this Request.

**REQUEST NO. 32:**

All Documents relating to any Direct Action Plaintiff serving these Requests.

**RESPONSE TO REQUEST NO. 32:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiver of its Scope Limitations and objections to the Definitions, Smithfield will conduct a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and will produce relevant, non-privileged documents responsive to this Request.

**REQUEST NO. 33:**

All Documents related to Communications with RaboBank concerning the Pork industry, including Competitive Conditions in the Pork industry.

**RESPONSE TO REQUEST NO. 33:**

Smithfield invokes Scope Limitations 1-3 and its objections to the Definitions (such as the definitions of Pork and Competitive Conditions). Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case.

Subject to and without waiver of its Scope Limitations and objections to the Definitions, Smithfield will conduct a reasonable search of its agreed or Court-ordered document custodians' files and other sources using a search methodology and will produce relevant, non-privileged documents responsive to this Request.

**REQUEST NO. 34:**

All Documents necessary to understand the operation of any of the computer hardware and systems, software, Structured Databases, ESI, database, storage, backup and archiving systems and Communications systems and devices information requested herein (including, but not limited to, Documents describing or defining the fields contained in any such database file naming conventions and standards); user manuals; Help features or documentation; password, encryption, and other security protocols; diskette, CD, DVD, and other removable media labeling standards; email storage conventions, e.g., limitations on mailbox sizes/storage locations; schedule and logs for storage; software and hardware upgrades (including patches) for the Relevant Time Period (including who and what organization conducted such upgrades); and Backup tape rotation.

**RESPONSE TO REQUEST NO. 34:**

Smithfield invokes Scope Limitations 1-4 and its objections to the Definitions. Smithfield also objects to this Request on the grounds that any request for "All Documents" is overly broad, unduly burdensome, and not proportional to the needs of the case.

50

Subject to and without waiver of its Scope Limitations and objections, Smithfield responds that it has already provided a substantial amount of information about its IT systems to Plaintiffs' counsel during the extensive meet and confer process in 2019 and through its ESI Disclosures on March 8, 2019 and its Supplemental ESI Disclosures on July 16, 2019, all of which has been given to the DAPs.  If the DAPs have any additional questions about how to understand any of Smithfield's document or data productions, Smithfield's counsel will meet and confer with the DAPs in an attempt to answer those questions and may produce documents sufficient to answer those questions, after conducting a reasonable search.

**REQUEST NO. 35:**

Documents sufficient to identify and describe Your computer hardware and systems (including email systems), software, ESI, Structured Databases, storage, backup and archiving systems and Communications systems and devices used in connection with Documents called for by production of these Requests for Production, including data maps, data dictionaries, explanations of information contained in each system or database, and document retention policies.

**RESPONSE TO REQUEST NO. 35:**

Subject to and without waiver of its Scope Limitations and objections to the Definitions, Smithfield responds that it has already provided a substantial amount of

51

information about its IT systems to Plaintiffs' counsel during the extensive meet and confer process in 2019 and through its ESI Disclosures on March 8, 2019 and its Supplemental ESI Disclosures on July 16, 2019, all of which has been given to the DAPs.  If the DAPs have any additional questions about how to understand any of Smithfield's document or data productions, Smithfield's counsel will meet and confer with the DAPs in an attempt to answer those questions and may produce documents sufficient to answer those questions, after conducting a reasonable search.

**REQUEST NO. 36:**

All Documents referenced or relied upon in responding to any Interrogatory served by any Direct Action Plaintiff or any plaintiff in *In re Pork Antitrust Litigation*, Case No. 0:18-cv-01776 (JRT/HB) (D. Minn.).

**RESPONSE TO REQUEST NO. 36:**

Smithfield invokes Scope Limitation 3.  In responding to any interrogatories, Smithfield will comply with Federal Rule of Civil Procedure 33(d) and produce any documents referenced in its responses.

**REQUEST NO. 37:**

All Documents produced to or received from any party or third party related to or in connection with this Action or in *In re Pork Antitrust Litigation*, Case No. 0:18-cv-01776 (JRT/HB) (D. Minn.).

52

**RESPONSE TO REQUEST NO. 37:**

Smithfield invokes its objections to the Definitions.  Subject to and without waiving its objections, Smithfield responds that the DAPs have copies of all documents and data that Smithfield has produced in these cases.  Now that the cases have been consolidated, the DAPs will be able to receive copies of documents produced by third parties.  Smithfield will work with the DAPs and the other parties in these cases to make sure the DAPs receive all third-party productions.

**REQUEST NO. 38:**

All Documents that You may rely on in support of, or that You contend supports, Your defenses and affirmative defenses in this Action.

**RESPONSE TO REQUEST NO. 38:**

In addition to Scope Limitations 1-3 and its objections to the Definitions, Smithfield objects to this request as premature to the extent that Smithfield has not determined which documents it may rely on in support of its defenses and affirmative defenses. Subject to and without waiving the above objections, Smithfield will eventually produce nonprivileged, responsive documents that it has not already produced.

Dated: November 22, 2021

*/s/ Brian E. Robison*
John A. Cotter (134296)
John A. Kvinge (0392303)
LARKIN HOFFMAN DALY &
LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 896-3340
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian E. Robison (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
(214) 698-3370
brobison@gibsondunn.com

*Counsel for Smithfield Foods, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 22nd day of November, 2021, all counsel of record are being served with a copy of this document via electronic mail.

*/s/ Brian E. Robison*
Brian E. Robison