# Exhibit D

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **In re Pork Antitrust Litigation** | Case No. 21-md-02998 |
| This Document Relates To: Certain Direct Action Plaintiff Actions | **DEFENDANTS HORMEL FOODS CORPORATION AND HORMEL FOOD, LLC'S OBJECTIONS AND RESPONSES TO CERTAIN DIRECT ACTION PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION** |

Defendants Hormel Foods Corporation ("Hormel Foods" or the "Company") and Hormel Foods, LLC (together with Hormel Foods, the "Hormel Defendants"), by and through their undersigned counsel, hereby serve these Objections and Responses ("Objections and Responses") to Certain Direct Action Plaintiffs' ("DAPs") First Set of Requests for Production of Documents to the Pork Integrator Defendants ("Requests").

The Hormel Defendants' Scope Limitations below are incorporated by reference in each of the Hormel Defendants' Responses as if set forth separately therein, and each Response is made without waiving any of these Scope Limitations. The assertion of additional specific objections to a particular Request or the repetition of an objection shall not be construed as waiving any applicable objection with respect to that or any other Request. The Hormel Defendants reserve the right to assert additional scope limitations and objections or to supplement the Scope Limitations and objections set forth herein.

Any response by the Hormel Defendants that they will produce documents, if any, indicates that the Hormel Defendants will (1) conduct a reasonable search for nonprivileged, responsive documents in the files of Document Custodians; and (2) produce any such nonprivileged documents in a format consistent with the Order Regarding Production of Electronically Stored

Information and Paper Documents entered in *In re Pork Antitrust*, 21-cv-2998 ("ESI Protocol Order" [Doc No. 21]). The Hormel Defendants reserve (a) the right to object to the use of documents and information obtained during discovery in any subsequent proceedings in this or any other action on the grounds of competency, privilege, relevance, materiality, and/or any other proper grounds; (b) the right to object, at any time, to requests or other discovery procedures involving or relating to the subject of these Requests; and (c) the right to revise, correct, supplement, or clarify any of the written responses provided herein.

### SCOPE LIMITATIONS ON THE HORMEL DEFENDANTS' RESPONSES

1.      The Hormel Defendants object to these Requests to the extent they seek to impose obligations beyond what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any Orders which may be entered in this case—including the ESI Protocol Order. The Hormel Defendants further object to the Requests' mischaracterization of Rule 34(b) of the Federal Rules of Civil Procedure, which permits the production of documents as they are kept in the usual course of business. *See* Fed. R. Civ. P. 34(b)(2)(E).

2.      The Hormel Defendants object to these Requests to the extent they seek discovery that is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

3.      The Hormel Defendants object to these Requests to the extent they seek discovery that is not directly related to the claims or defenses at issue in this litigation. Any Request that encompasses time periods, activities, or locations beyond those at issue in this case is overly broad.

4.      The Hormel Defendants object to these Requests to the extent they seek discovery unrelated to the factual allegations in the DAPs' complaints.

5.     The Hormel Defendants object to the production of any electronically stored information that is not reasonably accessible, or that cannot be compiled or produced without unreasonable investments in time and expense. The Hormel Defendants further object to these Requests to the extent they purport to require a search beyond the scope of permissible discovery contemplated by Federal Rule of Civil Procedure 26(b)(2)(C) and the ESI Protocol Order.

6.     The Hormel Defendants object to these Requests to the extent they attempt or purport to seek documents and/or information from Hormel Foods, LLC—which holds the intellectual property of Hormel Foods, has no employees, and has no operations relevant to this litigation. Hormel Foods, LLC has no documents responsive to these Requests.

7.     The Hormel Defendants object to these Requests to the extent they attempt or purport to seek documents and/or information that is not within the Hormel Defendants' possession, custody, or control.

8.     The Hormel Defendants object to these Requests—and the "Relevant Time Period" defined therein—as overly broad, unduly burdensome, and not proportional to the need of the case to the extent they seek documents and/or information generated well before the date of the start of the alleged conspiracy. Subject to and without waiving their objections, including Scope Limitation No. 5, the Hormel Defendants will respond to these Requests for a time period of January 1, 2008 through June 30, 2018.

9.     Unless expressly stated otherwise in a response to a Request, as by referring to noncustodial sources of data or documents, the Hormel Defendants object to any search for production of nonprivileged, responsive documents beyond documents in the files of identified Document Custodians.

10.     The Hormel Defendants object to these Requests to the extent they attempt or purport to seek documents and/or information unrelated to U.S. pork production and sales. Any Request that encompasses activities or locations beyond those at issue in this case and/or entities that do not sell Pork into the United States or export Pork out of the United States is overly broad, unduly burdensome, and disproportionate to the needs of this case. The Hormel Defendants' search for responsive documents and/or information is limited to those located within and relating to the United States, unless otherwise specifically noted.

11.     The Hormel Defendants object to these Requests to the extent they attempt or purport to seek documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege held by the Hormel Defendants. The inadvertent production of any document shall not constitute a waiver of the Hormel Defendants' rights or privileges. The Hormel Defendants reserve the right to seek the return of any inadvertently produced documents in accordance with paragraph 18 of the Protective Order. (*See* Protective Order 18-21 [Doc. No. 18]) If production of a document is deemed to be a waiver of a right or privilege, that waiver shall be a limited waiver pertaining to that document only.

12.     The Hormel Defendants object to the Requests to the extent they purport to direct the form or content of any log of privileged, destroyed or any other documents called for by the Requests. The Hormel Defendants will produce any such logs and information as required by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Minnesota or any other applicable local rules, case law, or court orders, and at a time and in a manner mutually agreed to by the parties.

13.     The Hormel Defendants object to these Requests to the extent they seek confidential business information, proprietary information, commercially sensitive information,

competitively significant information, protected health information, personal information related to the Hormel Defendants' employees, and/or trade secrets of the Hormel Defendants, their predecessors, and/or third-parties. The Hormel Defendants intend to produce any such responsive documents subject to the Protective Order in this matter, where appropriate, but reserve the right to seek further protections if needed.

14.     The Hormel Defendants object to Requests seeking "All Documents" concerning a particular topic because they seek Documents and ESI from sources or locations that are outside the scope of a reasonable search of appropriate custodian files and noncustodial sources, or they seek information that is not reasonably accessible. The Hormel Defendants are not required to attempt to search for and produce "All Documents" from all possible sources or locations under the Federal Rules.

15.     The Hormel Defendants object to the Requests as premature to the extent they seek the production of documents relating to information that is properly the subject of expert analysis. The Hormel Defendants may produce expert reports in this matter and, if so, will comply with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Minnesota or any other applicable local rules, case law, or court orders in producing related documents.

16.     The Hormel Defendants object to the Requests to the extent they seek the production of documents not in the Hormel Defendants' possession, custody, or control, or documents more easily obtained from sources other than the Hormel Defendants, including but not limited to public sources. The Hormel Defendants further object to the Requests to the extent they seek the production of documents already in the DAPs' possession. The Hormel Defendants also object to the Requests on the grounds and to the extent they seek the production of documents

or information available through other means of discovery that are more convenient, more efficient, and more practical, including interrogatories or depositions.

17.    A statement by the Hormel Defendants that they will produce documents in response to a particular Request does not mean that any such documents exist, that any information contained within the Responses is relevant or admissible as evidence, or that any statement or characterization propounded in the Requests is accurate or complete; it means only that, if nonprivileged, responsive documents exist and can be located through a diligent search of the Hormel Defendants' reasonably accessible records, the Hormel Defendants will produce them— subject to the Scope Limitations, Objections to Definitions, specific objections, and responses herein.

18.    The Hormel Defendants negotiated a list of thirty Document Custodians with the Class Plaintiffs in *In re Pork Antitrust Litigation*, No. 18-cv-01776-JRT-HB (D. Minn.), and that list was finalized in November 2020. The Hormel Defendants object to producing documents from the custodial files of any other individuals.

19.    The DAPs chose to remain passive members of the putative Direct Purchaser Plaintiffs ("DPPs") class as the Hormel Defendants negotiated and responded to onerous discovery demands, including the substantial completion of document productions by the Court's deadline. The DAPs' complaints do not make allegations that are materially new or different from those of the DPPs. The Hormel Defendants therefore object to discovery requests, demands, or search terms exceeding the scope of the document productions they have already made.

20.    Finally, the Hormel Defendants' investigation into this matter is ongoing. Accordingly, the Hormel Defendants reserve the right to alter, amend, or supplement their objections and responses as this matter progresses.

## OBJECTIONS TO DEFINITIONS

1.    The Hormel Defendants object to any definition used by the DAPs that purports to expand the meaning, scope, definition, or application of terms previously defined in this action and used by the Hormel Defendants to respond to previous discovery requests.

2.    The Hormel Defendants object to the DAPs' definition of the term "Benchmarking Service" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case because the term is defined as any "service that shares information that allows a firm to compare its practices, methods, or performances against those of other companies in the same industry," without limitation to firms or services related to U.S. pork production and sales.

3.    The Hormel Defendants object to the DAPs' definition of the term "Communications" on the grounds that the definition is overly broad, and, as worded, encompasses matters that are not reasonably understood as a "communication" (for example, "behavior," "contact," or "revelation"). The Hormel Defendants will interpret the term "Communication[]" as the transmission of information via a Document.

4.    The Hormel Defendants object to the DAPs' definition of the term "Competitive Conditions" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case, particularly because the term as defined might include every document in the possession, custody, or control of the Hormel Defendants.

5.    The Hormel Defendants object to the DAPs' definition of the term "Creditor Conference" as vague and ambiguous because the phrase "contract farmers" is not defined. The Hormel Defendants will interpret the term "contract farmers" to mean "someone who is contracted to raise hogs for [the Company], rather than a farmer who may independently raise hogs and sell to whomever they wish to sell to," as clarified by the Plaintiffs' March 15, 2019 Letter to Counsel for Class Plaintiffs in *In re Pork Antitrust Litigation* (hereinafter "March 15 Letter"). In addition,

the definition is overly broad, unduly burdensome, and disproportionate to the needs of the case, and calls for information outside of the Hormel Defendants' possession, custody, or control because it calls for information regarding a credit or loan financing entity's dealings with other "Pork Integrators" and/or their "contract farmers."

6.     The Hormel Defendants object to the DAPs' definition of the term "Creditor Representative" for the same reasons it objects to the definition of the term "Creditor Conference" above.

7.     The Hormel Defendants object to the DAPs' definition of the term "Defendant" as overly broad because it includes "predecessors, wholly-owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant." The Hormel Defendants further object to the definition as vague and ambiguous because (a) "managed" and "controlled" are undefined and unclear; and (b) it is unclear who may be "subsequently named as a Defendant in this litigation," and thus this definition may change over time. The Hormel Defendants also object to the definition as overly broad, unduly burdensome, and disproportionate to the needs of the case because it includes persons "purporting to act on behalf of a Defendant," which would require the Hormel Defendants to have knowledge of matters beyond their custody or control. The Hormel Defendants will interpret "Defendant" to mean a named Defendant as of the date of these Objections and Responses—excluding holding companies and entities that do not sell pork into the United States or export pork out of the United States, consistent with the clarification in the March 15 Letter. See also the below Objection to the definitions of the terms "You," "Your," and "Your company."

8.     The Hormel Defendants object to the DAPs' definition of the term "Document" as overly broad, unduly burdensome, vague, ambiguous, and not in compliance with the Federal Rules of Civil Procedure or applicable local rules. Hormel Foods will interpret "Document" to be synonymous in meaning and equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure.

9.     The Hormel Defendants object to the DAPs' definition of the term "Document Custodian" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. The Hormel Defendants will collect and produce relevant, responsive documents in this litigation from the individuals agreed to by Hormel Foods in *In re Pork Antitrust* and/or so ordered by the Court. The Hormel Defendants further object to this definition to the extent it purports to extend the Hormel Defendants' possession, custody, or control as defined by the Federal Rules of Civil Procedure to each and every "employee['s] and/or representative['s]" possession, custody, or control. In addition, the word "representative" as used in the definition of "Document Custodian" is vague and ambiguous.

10.    The Hormel Defendants object to the DAPs' definition of the term "ESI" to the extent such definition departs from its plain and ordinary meaning, and seeks to impose burdens or obligations on the Hormel Defendants beyond those imposed by the Federal Rules of Civil Procedure, or any applicable local rules, case law, or court orders. The Hormel Defendants further object to the definition of the term "ESI" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case of the case to the extent Requests incorporating this term seek (a) material not in the possession, custody, or control of the Hormel Defendants; (b) production of ESI from sources that are not reasonably accessible in light of the burdens or costs

required to locate, restore, review, and produce whatever responsive information may be found; or (c) seek information that is not relevant to the claim or defense of any party to this action.

11.     The Hormel Defendants object to the DAPs' definition of the term "Employee" because by incorporating the definitions of "Person" and "You" "without limitation," that definition includes individuals and entities who are not employed by the Hormel Defendants, and seeks information beyond the Hormel Defendants' possession, custody, or control. The Hormel Defendants will interpret any references to an "employee" or "employees" to mean the Hormel Defendants' employees.

12.     The Hormel Defendants object to the DAPs' definition of the term "Industry Analyst" on the grounds that this definition seeks information not within the Hormel Defendants' possession, custody, or control, and that it is vague and ambiguous as the Hormel Defendants cannot identify all people possibly falling within this definition.

13.     The Hormel Defendants object to the DAPs' definition of the term "Industry Meeting" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks discovery of meetings with entities other than other Defendants—including untold, undefined and unspecified third parties.

14.     The Hormel Defendants object to the DAPs' definition of the term "Management" on the grounds that this definition includes individuals who do not maintain information that is relevant to this dispute and because the reference to "senior executives" is vague, is subject to multiple interpretations, and may include individuals who are not a part of the Company's "management." The Hormel Defendants will interpret "management" to include its executive-level employees at the Hormel Foods vice-president level and higher, but not its Board of Directors.

15.     The Hormel Defendants object to the DAPs' definition of "Meeting" as vague and ambiguous, overly broad, and unduly burdensome.

16.     The Hormel Defendants object to the DAPs' definition of the term "Person" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. The Hormel Defendants further object to the definition of this term on the grounds that it purports to include individuals and entities beyond the named Defendants that are irrelevant and outside the scope of the case, and that it purports to impose a burden on the Hormel Defendants to obtain information from third parties outside of their control.

17.     The Hormel Defendants object to the DAPs' definitions of the terms "Policy" or "Procedure" on the grounds that, in referring to courses of conduct, business methods, or traditions that may be "informal" or "unwritten" or followed by some unidentified person "implicitly," they include matters that are not the Hormel Defendants' policies or procedures. The Hormel Defendants will interpret these terms to mean formal documented practices, methods, or courses of action.

18.     The Hormel Defendants object to any definition of "Pork" that purports to expand the definition beyond the definition set forth in the DAPs' pleadings: that is, "pig or swine meat sold or purchased fresh or frozen, smoked ham, sausage, and bacon." The Hormel Defendants further object to the extent that the DAPs purport to expand the definition of "Pork" beyond the categories of products that were extensively negotiated with the Class Plaintiffs—including the DPPs.

19.     The Hormel Defendants object to the DAPs' definitions of the terms "Pork Farm" and "Pork Grower" as vague and ambiguous, as the definition for "Pork Grower" appears to encompass the term "Pork Farm."

20.     The Hormel Defendants object to the DAPs' definition of the term "Pork Integrator" on the grounds that this definition is vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case; and seeks information not within the Hormel Defendants' possession, custody, or control. The Hormel Defendants further object to the extent that the DAPs purport to expand the definition of "Pork Integrators" beyond the list of Integrators that was extensively negotiated with the Class Plaintiffs—including the DPPs.

21.     The Hormel Defendants object to the DAPs' definition of the term "Pork Processing Facility" as overly broad and unduly burdensome because the definition is not limited to facilities within the United States.

22.     The Hormel Defendants object to the DAPs' definition of the term "Pork Supply Factors" to the extent that it suggests that "Defendants control the supply of Pork" or that engaging in "capacity reductions, controlling slaughter rates, and exports" equates to "control[ing] the supply of Pork." Hormel Foods is a net purchaser of hogs. Hormel Foods, LLC does not purchase hogs at all and has no relevance to the DAPs' claims. The Hormel Defendants' Responses to these Requests should not be construed as an admission that they controlled the supply of Pork or have the ability to do so.

23.     The Hormel Defendants object to the DAPs' definitions of the terms "relating to," "referring to," "regarding," "with respect to," and "concerning" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent they purport to impose upon the Hormel Defendants obligations greater than those set forth in the Federal Rules of Civil Procedure. The Hormel Defendants further object to the definitions to the extent they incorporate other defined terms to which the Hormel Defendants have objected.

24.     The Hormel Defendants object to the DAPs' definition of the term "Representative" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. The Hormel Defendants further object to the definition to the extent it incorporates other defined terms to which the Hormel Defendants have objected. The Hormel Defendants further object to the definition of this term on the grounds that it purports to include individuals and entities that are irrelevant and outside the scope of the case, and that it purports to impose a burden on the Hormel Defendants to obtain information from third parties outside of its control.

25.     The Hormel Defendants object to the DAPs' definition of the term "Sales Personnel" to the extent that it includes any "agent or representative" whose documents are not within the possession, custody, or control of the Hormel Defendants (such as a downstream seller), and also objects on the grounds that the responsibilities of another Defendant's employees are unknown to the Hormel Defendants. The Hormel Defendants will interpret the phrase "any agent or representative authorized by that Defendant to sell its Pork on its behalf" to refer only to Hormel employees identified as Document Custodians. And the Hormel Defendants will construe any request calling for documents from such custodians as limited to documents in the possession, custody, and control of the Hormel Defendants' entities and operations that sell pork in the United States or export pork from the United States.

26.     The Hormel Defendants object to the DAPs' definition of the term "Structured Data" as vague and ambiguous, overly broad, and unduly burdensome. The Hormel Defendants interpret the term "Structured Data" to mean data stored and maintained in a database in the ordinary course of business, and as distinct from the documents and/or information from the files of Document Custodians. The Hormel Defendants will interpret the term consistent with the ESI

Protocol Order and related agreements already in place or ultimately reached by the Parties, or, as necessary, further ordered by the Court.

27.     The Hormel Defendants object to the DAPs' definitions of the terms "studies" or "analyses" as overly broad because they could include almost any document or file, structured or unstructured.

28.     The Hormel Defendants object to the DAPs' definition of the term "Trade Association" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case because the term is defined as any "association or business organization that promotes the interest of Pork Integrators," without limitation. The Hormel Defendants do not have knowledge of whether an "association or business organization" of which they were not a participant "promote[d] the interest of Pork integrators." The Hormel Foods also note that the vagueness of the term "Pork Integrator" makes it impossible to know what associations might promote their interests.

29.     The Hormel Defendants object to the DAPs' definition of the term "Unstructured Data" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. The Hormel Defendants further object to the definition on the grounds that it purports to impose a burden on the Hormel Defendants to obtain information from third parties outside of its control. The Hormel Defendants interpret the term "Unstructured Data" to mean data stored and maintained in a database in the ordinary course of business, and as distinct from the documents and/or information from the files of Document Custodians. The Hormel Defendants will interpret the term consistent with the ESI Order and related agreements already in place or ultimately reached by the Parties, or, as necessary, further ordered by the Court.

30.     The Hormel Defendants object to the DAPs' definitions of the terms "You," "Your," and "Your company" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case. The Hormel Defendants further objects to the definitions of these terms on the grounds that they purport to include individuals and entities beyond the named Defendants that are irrelevant and outside the scope of the case, and that they purport to impose a burden on the Hormel Defendants to obtain information from third parties outside of its control. The Hormel Defendants interpret these terms to mean a named Defendant in *In re Pork Antitrust Litigation* only as of the date of these Objections and Responses; it does not interpret these terms to include any other predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, other subsidiaries, joint ventures, other affiliates, and any organization or entity managed or controlled by a named Defendant. As specifically applied to Hormel Foods, Hormel Foods interprets these terms to mean the operations of Hormel Foods in its purchasing, manufacturing, processing, and sale of Pork. As specifically applied to Hormel Foods, LLC, Hormel Foods, LLC interprets these terms to mean only Hormel Foods, LLC, and no other entity.

## SPECIFIC OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS

**REQUEST NO. 1:**   Documents sufficient to show Your organizational structure, including, but not limited to, departments, divisions, parents, subsidiaries, joint ventures, affiliates, units or other subdivisions that had any role at any time during the Relevant Time Period in the production, processing, distribution, marketing, pricing or sale of Pork.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 2, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 2:**   All Documents produced to the Department of Justice (including the Federal Bureau of Investigation), Federal Trade Commission, U.S. Department of Agriculture, U.S. Securities & Exchange Commission, states' attorneys general, or other government agencies or regulators voluntarily or pursuant to any civil investigative demand, grand jury subpoena, or other investigative request between January 1, 2008 and the present, concerning the production, processing, distribution, marketing, pricing or sale of Pork during the Relevant Time Period.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 1, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 3:**   All Documents relating to any Communications, Meetings, or agreements (whether formal or informal, or proposed or actual) between You and any other Defendant or Pork Integrator.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Requests for Production Nos. 3 and 4, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 4:**   All Documents relating to Your threatened, actual, or potential enforcement of a production, capacity, output or supply restriction, reduction, or limitation, including but not limited to any penalties imposed, or any other warning, threat, or retaliation resulting from a failure to act consistent with such restriction, reduction, or limitation.

**RESPONSE:** In addition to the Scope Limitations and Objections to Definitions, Hormel Foods objects to this Request as vague and ambiguous. To the extent it seeks documents related to threatened, actual, or potential enforcement of a restriction, reduction, or limitation as part of an agreement or conspiracy with other Defendants, the Hormel Defendants state that it is not aware of the existence of any such documents, and thus no documents will be produced in response to

this Request. The Hormel Defendants further state that they have provided voluminous discovery that would have identified responsive documents if any such documents existed, and it objects to any additional discovery requests, demands, or search terms related to this Request.

**REQUEST NO. 5:**   For each Document Custodian, all:

a)   electronic and hard copy diaries, calendars, appointment books or notes,

b)   contact information maintained in electronic or hard copy format, for any Person who is or was: (i) an owner, employee, consultant, officer, board member, Representative, or agent of a Pork Integrator or Agri Stats; (ii) a Creditor Representative or Industry Analyst; (iii) an employee of a Trade Association; or (iv) an employee of any entity that falls within the definition of Industry Meeting.

c)   trip and travel logs and records, expense reports, and entertainment reports, including any other supporting Documents;

d)   bills, statements, records, and supporting Documents concerning local, long distance, and cellular telephone calls by such employees, including calls made using telephones not paid for by You (such as home office, fax, and personal telephone numbers, personal cellphones, and temporary pay-as-you-go cellphones) if such telephones were used for business purposes;

e)   a copy of the Document Custodian's most recently created resume or curriculum vitae (CV);

f)   copies of any transcripts or recordings of prior testimony relating to Competitive Conditions in the market for Pork, such as testimony at a deposition, trial, or public hearing;

g)   Documents sufficient to show the Document Custodian's complete contact information, including all phone numbers, social media user names or "handles," and email addresses used by the Document Custodian for any of Your business purposes in the Pork industry; and

h)   Any severance agreements in connection with the Document Custodian ceasing employment or changing employment status with You (without time limitation).

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 5, and states that it has already produced nonprivileged, responsive documents in

its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 6:**   Copies of all Telephone Records in your possession, custody, or control, including Telephone Records of your main phone number(s), main fax number(s), and any phone number used as a switchboard for any of your relevant facilities such as your headquarters, administrative offices, Pork Farms, Pork Processing Facilities, and Pork sales offices.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 6, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 7:**   All Documents relating to Communications with investors, Industry Analysts, Benchmarking Services, and/or Creditor Representatives concerning Competitive Conditions.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 7, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 8:**   All Documents relating to public statements or announcements, press releases, or corporate Communications by You or by other Pork Integrators concerning Competitive Conditions.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 24, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search to the extent those

documents were not publicly available through the Company's websites. Hormel Foods further objects to producing documents that are publicly available. No further documents will be produced in response to this Request.

**REQUEST NO. 9:**   All Documents relating to Your practice and policies for drafting, approving, and issuing all public Communications regarding Competitive Conditions.

**RESPONSE:** In addition to the Scope Limitations and Objections to Definitions, Hormel Foods objects to this Request as unduly burdensome, and not proportional to the needs of the case. Hormel Foods further objects to the use of the undefined terms "drafting," "approving," and "issuing" as vague and ambiguous. Subject to and without waiving the above objections, Hormel Foods states that it has already produced nonprivileged documents in its possession, custody, or control and identified through a reasonable search regarding public Communications regarding Competitive Conditions. No documents will be produced in response to this Request.

**REQUEST NO. 10:**   All Documents relating to budgets, projections, estimates, or related studies, presentations, business plans, or reports prepared or received by Your current or former directors, officers, or Management regarding the following topics:

a) Pork production, supply, capacity or output;

b) Pork prices or pricing;

c) cost and/or cost accounting reports (including, production, sale and distribution) related to Pork;

d) audited or unaudited financial statements (including all appendices) related to Pork;

e) cost and supply of raw material and/or inputs related to Pork, including any back integration of raw materials, swaps or sales of raw materials with other Pork Integrators, or hedging of purchased raw materials and/or inputs for Pork;

f) distribution channels for Pork;

g) export markets for Pork including a breakdown of country of destination and product form;

19

h)      Pork product information regarding the types and product forms of Pork sold by You;

i)      forecasted, projected, estimated, planned, or actual demand for Pork;

j)      demand changes or demand fluctuations for Pork sold in the U.S.; and

k)      profits, revenues, and loss information on Pork produced or sold in the U.S. identified on a (i) consolidated basis; (ii) product line or product category basis; and/or (iii) facility-by-facility basis.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 9, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 11:**   Documents sufficient to show all forms of Your contracts and invoices, and any summaries of the terms, with Pork Growers.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 31, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 12:**   For the period January 1, 2008 through June 30, 2018, Documents sufficient to identify all of Your Pork Growers, Pork Farms, and Pork Processing Facilities.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 35, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 13:**  All Documents relating to Competitive Conditions for Pork, including reports, presentations, industry publications, business plans, studies, analyses, or other Documents, including those prepared by or for Industry Analysts or other third parties, concerning: (i) market shares; (ii) consolidation, mergers, acquisitions, or joint ventures; (iii) production or processing capacity, capacity reduction, capacity utilization, or operating rates; (iv) fixed or variable costs; (v) pricing; (vi) inventories; (vii) entry or exit conditions; (viii) inventories; (ix) supplies/supply trends; (x) data, publications, or other sources used in the regular course of business by You to monitor Pork demand in the United States; (xi) substitute products; (xii) exports; (xiii) raw materials; (xiv) Pork Supply Factors; or (xv) other industry statistics.

**RESPONSE:**  Subject to and without waiving Scope Limitations and Objections to Definitions,

Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for

Production No. 18, and states that it has already produced nonprivileged, responsive documents in

its possession, custody, or control and identified through a reasonable search. No further

documents will be produced in response to this Request.

**REQUEST NO. 14:**   All Documents concerning Pork supply or production decisions, reductions, rationalization, industry leadership, industry discipline, production discipline, supply discipline, capacity discipline, or other so-called disciplined approaches or practices relating to the Pork industry.

**RESPONSE:**  Subject to and without waiving the Scope Limitations and Objections to Definitions,

Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for

Production No. 19, and states that it has already produced nonprivileged, responsive documents in

its possession, custody, or control and identified through a reasonable search. No further

documents will be produced in response to this Request.

**REQUEST NO. 15:**  All Documents related to Your quoting, changing, or setting the prices or the terms and conditions for sale of Pork, including pricing guidelines, pricing methods, pricing formulas, procedures or authorization procedures for Sales Personnel to quote a price, price changes, price lists, pricing policies, violations of pricing policies and Documents providing guidance to Sales Personnel about implementation of price changes.

**RESPONSE:**  Subject to and without waiving the Scope Limitations and Objections to Definitions,

Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for

Production No. 14, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 16:** All Documents relating to Pork price announcements, price changes, explanations of the reasons for price changes, price lists, pricing policies, pricing guidelines, pricing methods, pricing formulas, analysis of market prices, monitoring of competitor pricing, price changes of Pork produced or sold in the U.S. (including price announcements or explanations of the reasons for price changes), price increase and surcharge announcements, and any other Communications concerning Pork price increases or the imposition of surcharges.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 15, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 17:** All Documents relating to any decision to change the pricing terms for Your customers' contracts for Pork, including any analyses regarding changes from fixed-price to adjustable price provisions.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 33, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 18:** All contracts or other agreements, and any summaries of the terms (including duration, price protection, terms for price modification, surcharges, discounts, or rebates) for the sale of Pork in the U.S. to Your customers.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for

Production No. 32, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 19:**  All Documents relating to Pork customer complaints regarding prices, pricing, or terms or conditions of sale or the refusal or failure to supply Pork and any responses thereto, and all Documents reflecting any policy of Your company concerning the handling of such customer complaints.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 34, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 20:**   Documents sufficient to show actual or potential substitutes for Pork, or the elasticity of supply, demand, or price of Pork (including the effect of such substitutes' prices upon Pork pricing, purchase terms, or profits).

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 11, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 21:**   Documents sufficient to identify any tentative, proposed or consummated sale, acquisition, merger, joint venture, divestiture, transfer of assets, spinoff, or any other form of change of ownership or control or business combination concerning any Pork-related business, production facilities, product lines, or other assets (including both businesses or assets owned or controlled by You and those owned or controlled by other Persons), and any minutes, notes, reports, studies, analysis, presentations, expert or market participant comments, and any analysis or other information submitted to or received from any governmental agency.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 22, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 22:**  All Documents relating to Agri Stats or its affiliates (including Express Markets, Inc.) concerning Pork, including any consideration of the risks and/or benefits of providing information to or receiving information from Agri Stats, the anonymity of individual Pork Integrator data received from Agri Stats, any processes employed by You to de-anonymize Agri Stats data, any contracts or agreements with Agri Stats, any presentations, Communications, or meeting minutes received from or provided to Agri Stats, and all copies of reports provided to or received from Agri Stats.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 16, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 23:**  All Documents relating to actual or potential participation or consideration of any Benchmarking Service or any information sharing services relating to Pork industry profitability, pricing, production, or supply other than Agri Stats or Express Markets, Inc.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 21, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 24:**  All Documents relating to Your membership in any Trade Association or industry group or attendance at any Trade Association, Industry Meeting or Creditor Conference,

or investor or analyst conference, including announcements, membership lists, presentations (including speaker notes), agendas, minutes, notes, attendance lists, and correspondence.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 5(e), and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 25:** Documents sufficient to describe in detail the Pork products You sold, marketed, or distributed during the Relevant Time Period, including any variations relating to brand name, physical properties and characteristics, packaging, product form, cut, further processing, grade, specialty products and any other factors influencing price.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 39, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 26:** Documents sufficient to show by month, quarter, and year Your revenues, profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, or projected profits relating to the sale of Pork in the United States.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 9(i), and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 27:** Documents or Structured Data sufficient to show the terms of all purchases, sales, trades, exchanges, or swaps of Pork between You and any other Pork Integrator, including

any contracts, co-packing agreements, joint ventures, and/or other agreements, whether formal or informal.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 36, and states that it has already produced responsive structured data. No further documents or structured data will be produced in response to this Request.

**REQUEST NO. 28:** For the time period from January 1, 2005 through December 31, 2020, Structured Data sufficient to show, for each U.S. Pork sale, the categories of information listed below, and Documents sufficient to understand all data fields, codes, or other fields on the invoice. These Direct Action Plaintiffs request this information in the most disaggregated form (meaning at the transactional level, not aggregated by month or quarter) in which it is kept, and Defendants should produce the data in a comma-delimited text file (e.g., a file with a file extension of .csv or .txt). If You maintain separate or distinct sets of such data for internal purposes, Agri Stats reporting purposes, or any other purpose, these Direct Action Plaintiffs' request is for each separate set of data for the categories of information listed below.

    a)      the terms of each sale;

    b)      the invoice number;

    c)      the purchase order number;

    d)      the location from which the Pork was shipped;

    e)      the customer's name, phone number(s), address(es), email address(es), including the identity of the customer that was billed and the location to which the Pork was shipped;

    f)      the date You shipped the Pork, the date You billed for the Pork, and the date the customer took delivery;

    g)      the grade, cut, product form, and/or type of Pork, including any product numbers, unique purchaser-specific identifier, any description of characteristics, and product descriptions sold for each transaction;

    h)      the quantity (and units of measure) for each sale;

    i)      all pricing information concerning the sale, including shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;

    j)      the currency in which the sale was billed and paid;

k)      any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales;

l)      if a resale, the Supplier of each Pork sold in connection with each sale;

m)      the price You paid Your Supplier for each type of Pork sold in connection with each sale, including gross and net aggregate and per-unit prices;

n)      any fixed or variable costs or costs of goods sold concerning the sale (including freight charge and transportation cost, sales and distribution cost, raw materials, intermediates, marketing or sales cost, and any other cost attributed or allocated to the sale);

o)      for any sale or purchase from another Pork Integrator, Electronic Data Interchange fields for which the user can freely enter text, such as "comments" or similar fields;

p)      any Structured Database field summarizing terms of sale or agreements or contracts for customers;

q)      any other data available in Your database Concerning the purchase, sale or distribution of the Pork for each sale.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 37, and states that it has already produced responsive structured data. No further structured data will be produced in response to this Request.

**REQUEST NO. 29:** From January 1, 2005 through December 31, 2020, Structured Data, databases and Documents regarding your production of Pork sufficient to show the details of your production, processing, and supply of "Pork Products" by day, month, quarter, and year by facility, including but not limited to the following:

a)      The volume—by total number and weight of Hogs—processed;

b)      The product form/type/grade/cut produced or processed and the volume of each;

c)      The processing, production, capacity, and capacity utilization.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods states that it has already produced responsive structured data. No further structured data will be produced in response to this Request.

27

**REQUEST NO. 30:**  Documents sufficient to show Your Policies, Procedures and practices, whether implemented, adopted, used or considered, concerning compliance with antitrust laws and/or competition laws of the United States and States (including current and former versions of compliance policies and procedures, presentations, seminars, programs, memos, statements signed by Your members or employees that acknowledge receipt of or compliance with such policies arising from or relating to any prior legal proceedings), and all Documents relating to any inquiries or investigations concerning compliance with such policies.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 25, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 31:**  Documents relating to actions to conceal or avoid detection of any potential violations of antitrust laws and/or competition laws of the United States and States (including the use of code words or otherwise masking the identity of any Person or entity, meeting in locations or communicating at times or via methods with the intent to avoid detection by any Person or entity, using non-traceable prepaid calling cards or cellphones, non-contract or disposable cell phones, placing calls from public phones, and destroying, secreting, altering or forging Documents).

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 27, and specifically denies any implication that the Company has ever acted to conceal or avoid detection of any potential violations of federal or state antitrust or competition laws. Hormel Foods substantially completed its document production to the Class Plaintiffs on September 1, 2021, and is still not aware of any documents relating to such actions. No documents will be produced in response to this Request.

**REQUEST NO. 32:**  All Documents relating to any Direct Action Plaintiff serving these Requests.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 26. Notwithstanding the above objections, Hormel Foods will produce nonprivileged, responsive documents that can be identified by applying search terms consisting of the names of the DAPs to the Document Custodian's custodial files.

**REQUEST NO. 33:**   All Documents related to Communications with RaboBank concerning the Pork industry, including Competitive Conditions in the Pork industry.

**RESPONSE:** In addition to the Scope Limitations and Objections to Definitions, Hormel Foods objects to this request as unduly burdensome and not relevant or proportional to the needs of this case. Subject to and without waiving the forgoing objections, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiff's Request for Production Nos. 7 and 13, and states that it has already produced nonprivileged documents responsive to those Requests in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 34:**   All Documents necessary to understand the operation of any of the computer hardware and systems, software, Structured Databases, ESI, database, storage, backup and archiving systems and Communications systems and devices information requested herein (including, but not limited to, Documents describing or defining the fields contained in any such database file naming conventions and standards); user manuals; Help features or documentation; password, encryption, and other security protocols; diskette, CD, DVD, and other removable media labeling standards; email storage conventions, e.g., limitations on mailbox sizes/storage locations; schedule and logs for storage; software and hardware upgrades (including patches) for the Relevant Time Period (including who and what organization conducted such upgrades); and Backup tape rotation.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 28, and states that it has already produced nonprivileged, responsive documents in

its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 35:** Documents sufficient to identify and describe Your computer hardware and systems (including email systems), software, ESI, Structured Databases, storage, backup and archiving systems and Communications systems and devices used in connection with Documents called for by production of these Requests for Production, including data maps, data dictionaries, explanations of information contained in each system or database, and document retention policies.

**RESPONSE:** Subject to and without waiving the Scope Limitations and Objections to Definitions, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 29, and states that it has already produced nonprivileged, responsive documents in its possession, custody, or control and identified through a reasonable search. No further documents will be produced in response to this Request.

**REQUEST NO. 36:** All Documents referenced or relied upon in responding to any Interrogatory served by any Direct Action Plaintiff or any plaintiff in In re Pork Antitrust Litigation, Case No. 0:18-cv-01776 (JRT/HB) (D. Minn.).

**RESPONSE:** In addition to the Scope Limitations and Objections to Definitions, Hormel Foods objects to Request No. 36 as overly broad, unduly burdensome, and vague and ambiguous, and seeking information that is protected from disclosure by attorney-client privilege, the attorney work-product doctrine, and/or is otherwise privileged. Hormel Foods also objects to this Request as premature to the extent it seeks the production of documents relating to Hormel Foods' responses to interrogatories that the DAPs have not yet served. Hormel Foods further objects to the use of the undefined term "relied upon" as vague, ambiguous, and overly broad, and to the extent that this Request seeks anything more than documents referenced or quoted in response to any interrogatories. Subject to and without waiving the above objections, Hormel Foods refers the DAPs to its responses and objections to the Class Plaintiffs' Request for Production No. 30, and states that it has already produced nonprivileged, responsive documents in its possession, custody,

or control and identified through a reasonable search. No further documents will be produced in response to this Request at this time. Hormel Foods reserves its rights to raise further objections and supplement its response to this Request.

**REQUEST NO. 37:**   All Documents produced to or received from any party or third party related to or in connection with this Action or in In re Pork Antitrust Litigation, Case No. 0:18-cv-01776 (JRT/HB) (D. Minn.).

**RESPONSE:** In addition to the Scope Limitations and Objections to Definitions, Hormel Foods objects to producing documents received from third parties in response to this Request to the extent such productions are prohibited by the terms of the Protective Order entered in *In re Pork Antitrust Litigation* at this time. Hormel Foods further objects to producing third-party documents produced in response to subpoenas served by Class Plaintiffs. Subject to and without waiving the above objections, Hormel Foods states that it understands that all other documents produced in this Action or in *In re Pork Antitrust Litigation* have been produced to the DAPs. No further documents will be produced in response to this Request at this time.

**REQUEST NO. 38:**   All Documents that You may rely on in support of, or that You contend supports, Your defenses and affirmative defenses in this Action.

**RESPONSE to REQUEST NO. 38** In addition to the Scope Limitations and Objections to Definitions, Hormel Foods objects to this request as premature to the extent that Hormel Foods has not determined which documents it may rely on in support of its defenses and affirmative defenses. Subject to and without waiving the above objections, Hormel Foods will produce nonprivileged, responsive documents.

Dated: November 22, 2021

s/ Emily E. Chow

Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
Bryan K. Washburn (#0397733)
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com
bryan.washburn@faegredrinker.com

*Counsel for Defendants Hormel Foods Corporation and Hormel Foods, LLC*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on November 22, 2021, a copy of the foregoing was served by agreement via email to counsel for Sysco Corporation, Amory Investments LLC, the *Action Meat* Plaintiffs, Giant Eagle, Inc., Conagra Brands, Inc., Nestlé USA, Inc., Nestlé Purina PetCare Co., Cheney Brothers, Inc., and Subway Protein Litigation Corp.

  /s/ Robert C. Gallup