UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTION | Case No. 18-cv-1776 (JRT/HB)<br><br>**Declaration of Shawn M. Raiter in Support of Motion for Final Approval of Class Action Settlement Between Commercial and Institutional Indirect Purchaser Plaintiffs and Defendant Smithfield** |

I, Shawn M. Raiter, declare as follows:

1. I am a partner at Larson • King, LLP in St. Paul, Minnesota. This Court has appointed me and my firm, together with Cuneo, Gilbert & LaDuca, LLP, Interim Co-Lead Counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") in this litigation.

2. I submit this Declaration in support of the concurrently filed Motion for Final Approval of Class Action Settlement Between Commercial and Institutional Indirect Purchaser Plaintiffs and Smithfield.

3. After filing their first complaint, counsel for the CIIPPs continued their factual investigation into the conspiracy alleged in the CIIPP complaint, and after the Court largely denied Defendants' motions to dismiss Plaintiffs' complaints, CIIPPs and the other Plaintiff groups commenced discovery. As the Court knows, the parties have engaged in extensive

discovery and motion practice, and the CIIPPs and other class plaintiffs have filed their respective motions for class certification.

4. On behalf of CIIPPs, my co-counsel and I personally conducted settlement negotiations with counsel for Smithfield. We exchanged information and negotiated by phone and over email for more than six months before terms were finally agreed upon.

5. CIIPPs thoroughly investigated the facts underlying CIIPPs' claims prior to reaching the Settlement and were well informed by the time the parties agreed to settle. During the litigation, Interim Co-Lead Counsel researched, analyzed, and evaluated many legal and factual issues. Based on that analysis, and the information obtained from discovery and other sources, Interim Co-Lead Counsel were well informed of the facts and the benefits, risks, and consequences of the proposed settlement with Smithfield. Interim Co-Lead Counsel thoroughly evaluated the relative strengths and weaknesses of the CIIPPs' litigation positions in relation to this settlement.

6. The settlement negotiations with Smithfield were at arm's length and were always hard fought. The Settlement was the product of settlement negotiations that included adversarial bargaining between Interim Co-Lead Counsel and Smithfield's counsel. The parties debated many issues, and negotiated many terms of the settlement, including the amount of payment, the timing of payment, potential conditions on payment, the effect of opt-outs on any settlement, and potential cooperation against other Defendants. Throughout this process, Smithfield has been represented by experienced, sophisticated counsel.

7. There was no collusion or preferential treatment at any time during these negotiations. The negotiations were hard fought and fully informed. CIIPPs sought to obtain

the greatest monetary benefit possible from Smithfield. There was no discussion or agreement at any time regarding the attorneys' fees Interim Co-Lead Counsel would ask the Court to award in this case.

8. In the Settlement Agreement, Smithfield committed to pay $42 million to a settlement fund. Smithfield has made that payment. Smithfield also agreed to provide specified cooperation in the CIIPPs' continued prosecution of the action against the remaining Defendants. The terms of this cooperation are set forth in Paragraph 11 of the Settlement Agreement. Smithfield also agreed that it will not, for a period of 24 months, engage in conduct that would constitute a *per se* violation of Section 1 of the Sherman Act with respect to the sale of Pork.

9. There are tens of thousands of commercial indirect purchasers of Pork products in the United States who are putative members of the Settlement Class. CIIPPs engaged the services of an experienced class action administrator, Epiq Class Action & Claims Solutions, Inc., to administer notice to the Class members. As set forth in the supporting Declaration of Cameron R. Azari, the Court-approved Notice Plan has been successfully implemented, and Settlement Class members were notified of the Settlement.

10. No Settlement Class member has objected to the proposed Settlement or to any other aspect of the Settlement. No Settlement Class member has opted out of the Settlement. No Settlement Class member requested to be heard at the final approval hearing.

11. Counsel for Smithfield has advised that they provided the notice required by 28 U.S.C. § 1715 on or about April 14, 2022 and April 15, 2022. A copy of that notice and its recipients are attached to this declaration as Exhibit A. None of the recipients of that notice

have contacted counsel for the CIIPPs. Counsel for Smithfield have confirmed that none of the recipients of the notice have contacted them, other than one state attorney general who sent an email acknowledging receipt of the CAFA notice.

12. I have practiced law since 1993. I have prosecuted numerous antitrust class actions as lead counsel, co-lead counsel, and in other leadership positions. In my opinion, and in that of my Interim Co-Lead counsel Jonathan Cuneo, the Settlement provides substantial benefits to the Settlement Class, and avoids the delay and uncertainty of continuing protracted litigation with Smithfield. The Settlement with Smithfield is fair, reasonable, and adequate, is in the best interests of the Settlement Class members and should be approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this the 23rd day of September, 2022 in St. Paul, Minnesota.

*/s/ Shawn M. Raiter*
Shawn M. Raiter
