# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

IN RE PORK ANTITRUST
LITIGATION

Case No. 18-1776 (JRT/JFD)

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY
APPROVAL OF THE CLASS
ACTION SETTLEMENT
BETWEEN CONSUMER
INDIRECT PURCHASER
PLAINTIFFS AND DEFENDANT
SMITHFIELD FOODS, INC. AND
TO DIRECT NOTICE TO THE
SETTLEMENT CLASS**

*This Document Relates to:*

All Consumer Indirect Purchaser Actions

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     SUMMARY OF LITIGATION ............................................................ 3

III.    SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS..................... 5

IV.     THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE
        APPROVAL ........................................................................................ 8

        A.    The settlement was reached in arm's-length negotiations between
              experienced and capable counsel. .................................................. 9

        B.    Consumer IPPs have had adequate opportunity to assess the merits of their
              claims and Smithfield's defenses. ................................................. 10

        C.    The settlement provides significant relief to the Settlement Class. ............ 11

V.      THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS 12

        A.    The Proposed Settlement Class Satisfies Rule 23(a). ................................ 13

              1.    Numerosity ................................................................. 13

              2.    Commonality .............................................................. 14

              3.    Typicality ................................................................... 14

              4.    Adequacy ................................................................... 15

        B.    The Proposed Settlement Class Satisfies Rule 23(b)(3). ............................ 16

VI.     THE COURT SHOULD DIRECT NOTICE TO THE SETTLEMENT CLASS.. 17

        A.    The proposed form of class notice clearly and fairly apprises class members
              of the nature of this action and the scope of their rights. ........................... 17

        B.    The proposed manner of notice dissemination is reasonable and represents
              the best notice practicable under the circumstances.................................... 20

VII.    PROPOSED PLAN OF ALLOCATION ............................................... 25

VIII.   PROPOSED SCHEDULE .................................................................... 27

IX.     CONCLUSION .................................................................................. 28

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alpern v. UtiliCorp United, Inc.*,
  84 F.3d 1525 (8th Cir. 1996) ....................................................................... 14

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................... 12

*Caligiuri v. Symantec Corp.*,
  855 F.3d 860 (8th Cir. 2017) ....................................................................... 19

*Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*,
  984 F.3d 595 (8th Cir. 2020) ....................................................................... 16

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ........................................................... 10, 14, 19

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)......................................................................... 18, 19, 20

*In re Emp. Benefit Plans Sec. Litig.*,
  1993 WL 330595 (D. Minn. June 2, 1993)...................................................... 9

*Grier v. Chase Manhattan Auto Fin. Co.*,
  2000 WL175126 (E.D. Pa. Feb. 16, 2000) ..................................................... 9

*Hanlon v. Palace Entm't Holdings, LLC*,
  2012 WL 27461 (W.D. Pa. Jan. 3, 2012)....................................................... 21

*Huyer v. Wells Fargo & Co.*,
  295 F.R.D. 332 (S.D. Iowa 2016) ................................................................ 14

*Khoday v. Symantec Corp.*,
  2016 WL 1637039 (D. Minn. Apr. 5, 2016)................................................... 19

*Khoday v. Symantec Corp.*,
  2016 WL 1626836 (D. Minn. Apr. 22, 2016)................................................. 19

*In re Monosodium Glutamate Antitrust Litig.*,
  205 F.R.D. 229 (D. Minn. 2001).................................................................. 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950). ................................................................. 18

*Paxton v. Union Nat. Bank*,
   688 F.2d 552 (8th Cir. 1982) ...................................................... 15

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) .............................................. 10, 18, 19, 20

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ................................................................... 18

*Pollard v. Remington Arms Co., LLC*,
   320 F.R.D. 198 (W.D. Mo. 2017) ............................................... 25

*Pollard v. Remington Arms Co., LLC*,
   896 F.3d 900 (8th Cir. 2018) ..................................................... 25

*Reynolds v. Nat'l Football League*,
   584 F.2d 280, 285 (8th Cir.1978) ............................................... 18

*Richter v. Bowen*,
   669 F. Supp. 275 (N.D. Iowa 1987)............................................. 13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................... 14

*White v. Nat'l Football League*,
   822 F.Supp. 1389 (D. Minn.1993).......................................... 8, 9

*White v. Nat'l Football League*,
   836 F. Supp. 1458 (D. Minn. 1993) .............................................. 9

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   2013 WL 716088 (D. Minn. Feb. 27, 2013) ............................... 10

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ...........................................*passim*

## OTHER AUTHORITIES

2 Newberg on Class Actions (3d ed. 1992)....................................... 9

3 Newberg on Class Actions (4th ed. 2002)..................................... 19

Manual for Complex Litigation (Fourth) (2004)................................................................. 9

# I.     INTRODUCTION

Consumer Indirect Purchaser Plaintiffs ("consumer IPPs") move the Court for preliminary approval of their second settlement reached in this case, with Defendant Smithfield Foods, Inc. ("Settling Defendant" or "Smithfield"). The settlement provides $75 million in monetary relief to the consumer indirect purchaser class. This settlement is in addition to the $20 million settlement reached between the consumer IPPs and defendants JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company (collectively, "JBS"). In addition to this monetary relief, Smithfield has also agreed to certain cooperation provisions which will strengthen plaintiffs' case against the remaining defendants. This settlement is the result of arm's-length negotiations, conducted before an experienced mediator, which provides substantial monetary and non-monetary relief to the consumer IPP class. The consumer IPPs request that this Court grant preliminary approval of the settlement and certify the proposed Settlement Class for settlement purposes.

Consumer IPPs also move the Court for an order directing notice of the settlement under Rule 23(e). The consumer class has received one set of notices already, of the consumer class settlement with JBS. This second round of notice of the settlement with Smithfield is substantially identical to the notice plan previously approved by this Court, with the addition of an even more robust direct mail notice. Consumer IPPs have successfully obtained additional contact information for the class and now have approximately 17.6 million email addresses of class members obtained through subpoenas to grocery and club stores. One non-party, Amazon, has agreed to provide

010737-11 1449936V1

notice directly to its customers of the settlement. Scarlett Decl., Ex. B.[1] As of September 19, 2022, Amazon has identified 1.8 million customers to be noticed. Scarlett Decl., ¶ 9. Within the coming weeks, additional email addresses will be produced. The settlement administrators will supplement this direct email notice with a robust online indirect notice campaign. Consumer IPPs propose sample banner notices with this motion which direct consumers to the Settlement Class website. This website, www.overchargedforpork.com, is dedicated to communications with class members. It includes important case-related documents, notices, and frequently asked questions, and it will allow class members to submit simple online claims.

An experienced notice and claims administrator, A.B. Data, supports the proposed form and manner of notice dissemination. Courts have appointed A.B. Data as notice, claims, and/or settlement administrator in hundreds of high-volume class action cases, as described in more detail in the Declaration of Eric Schachter, A.B. Data's Vice President. Class Counsel has worked with Mr. Schachter and his team at A.B. Data to develop the proposed forms of class notice as well as the proposed manner of disseminating notice to the Class, and Mr. Schachter attests to its adequacy and constitutionality. The proposed form of notice uses plain and engaging language to provide the information required by Rule 23(c)(2)(B) to the Class, in both English and Spanish. Consumer IPPs also propose

---

[1] "Scarlett Decl." refers to the Declaration of Shana E. Scarlett in Support of Motion for Preliminary Approval of the Class Action Settlement Between Consumer Indirect Purchaser Plaintiffs and Defendant Smithfield Foods, Inc. and to Direct Notice to the Settlement Class, filed concurrently herewith.

010737-11 1449936V1

an abbreviated email notice (to help prevent the emails from being caught in spam filters), full notice for the website (including questions and answers to frequently asked questions), and simple claims forms for class members. Both the form and manner of notice meet the requirements of Rule 23 and of constitutional due process.

In short, consumer IPPs respectfully request that the Court grant their motion for preliminary approval of the Smithfield settlement, certify the Settlement Class for settlement purposes only, and direct notice of settlement to the class.

## II.      SUMMARY OF LITIGATION

Consumer IPPs – the first to file a complaint against the pork industry – have been litigating this case diligently for more than four years. This Court is familiar with the facts, having once granted a motion to dismiss and then denying in large part the second motion to dismiss.[2] Plaintiffs allege defendant pork processors have agreed to stabilize the price and supply of pork through a series of collusive acts, including by limiting the U.S. supply of pork and through the use of Agri Stats. Plaintiffs allege Agri Stats provided the defendants with weekly and monthly reports on the price and supply levels of pork. Scarlett Decl., ¶ 3.

On May 2, 2022, plaintiffs moved for class certification.[3] With their motion, consumer IPPs submit the declaration of an expert economist, Dr. Hal Singer, who testifies as to the impact on the consumer class, and the amount of the overcharge. Using

---

[2] Mem. and Order, ECF No. 519 (filed Oct. 16, 2020).

[3] Consumer Indirect Purchaser Pls.' Mot. for Class Certification, ECF No. 1343 (filed May 2, 2022).

well-accepted econometric methods, regression modeling, Dr. Singer measures first the impact of the conspiracy on the direct purchaser class, and then traces this overcharge through to the end-consumer class.[4] The Non-Settling Defendants filed oppositions to class certification on August 24, 2022.[5] Scarlett Decl., ¶ 6.

From the beginning of the litigation, Hagens Berman Sobol Shapiro LLP (Hagens Berman) and Gustafson Gluek PLLC (Gustafson Gluek) have acted as lead counsel on behalf of the consumer indirect purchaser class.[6] As lead counsel, these two firms have spent thousands of hours pursuing the claims of the class. Over 60 depositions have been taken to date of defendant employees and their alleged co-conspirators – many of which were led by the attorneys at Hagens Berman and Gustafson Gluek. Plaintiffs have taken the depositions of 10 non-parties, many of which were also led by the consumer IPP team. Defendants have produced over 3.8 million documents that have been reviewed, catalogued, and distilled by attorneys representing the three classes, including many attorneys representing the consumer IPPs. And consumer IPPs subpoenaed 79 non-parties for data and information relating to their claims and data to perform an analysis of the

---

[4] Decl. of Hal J. Singer, Ph.D. in Support Consumer Indirect Purchaser Plaintiffs' Mot. for Class Certification, ECF No. 1347 (filed May 2, 2022) ("Singer Decl.").

[5] The Non-Settling Defendants in the consumer IPP case are: Agri Stats, Inc. ("Agri Stats"); Clemens Food Group, LLC, The Clemens Family Corporation, and Hatfield Quality Meats (together and separately, "Clemens"); Hormel Foods Corporation ("Hormel"); Seaboard Foods LLC ("Seaboard"); Triumph Foods, LLC ("Triumph"); and Tyson Foods, Inc., Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. (together and separately, "Tyson"). The consumer IPP class previously settled with JBS.

[6] *See* Order Granting Hagens Berman Sobol Shapiro LLP and Gustafson Gluek PLLC's Mot. for Appointment as Interim Co-lead Counsel for Proposed Consumer Indirect Purchaser Class, ECF No. 141 (filed Oct. 15, 2018).

pass-through of overcharges to the consumer class. Scarlett Decl., ¶ 4.

Unlike many other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice (DOJ) or the assistance of a leniency applicant under the DOJ's Corporate Leniency Program. Rather, the conspiracy was identified by consumer IPPs through the use of investigators and economists, leading to the first complaint filed – the consumer IPP complaint.

### III.   SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

The settlement between Smithfield and the consumer IPPs is the product of confidential, protracted, intense arm's-length negotiations and includes both monetary relief for the class and cooperation in the consumer IPPs' litigation against the non-settling defendants.

Smithfield and consumer IPPs first discussed settlement in August 2021. Discussions quickly stalled, but resumed again in March 2022, and a mediation was held before the Honorable Layn Phillips (Ret.), founder of Phillips ADR Enterprises, on April 18, 2022. An agreement upon the material terms was reached during the mediation, but the parties continued to negotiate the details of the settlement. Scarlett Decl., ¶ 5. The settlement agreement was signed by both parties on August 4, 2022. Scarlett Decl., Ex. A.

The parties' Settlement Agreement includes a Settlement Class defined as:

All persons and entities who indirectly purchased Pork from any of the Defendants or any co-conspirator, or their respective subsidiaries or affiliates, for personal use in the United States from at least as early as

January 1, 2009 until April 2, 2021. Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Scarlett Decl., Ex A at ¶ 5. The settlement provides that Smithfield will pay $75 million into a settlement fund that will be used to compensate the consumer IPP class and cover litigation fees and expenses, including the cost of notifying class members and administering the settlement. Scarlett Decl., Ex. A at ¶¶ 6(b)-(c), 9-10. Lead Counsel believe this sum is fair and reasonable in light of Smithfield's market share of class products and the significant cooperation that Smithfield agrees to provide. Smithfield agrees to provide the following categories of cooperation:

a)     To the extent applicable during the pendency of the consumer IPPs' action in the *In re Pork Antitrust Litigation*, Smithfield shall contemporaneously provide to consumer IPPs (a) any discovery responses, documents, or information it provides to any other plaintiff in the *In re Pork Antitrust Litigation*, and (b) any discovery responses, documents, data, or information it provides to government entities making substantially similar allegations regarding competition in the pork industry.

b)     Smithfield shall not object to consumer IPPs participating in the depositions of up to five Smithfield witnesses, within the scope of discovery in the *In re Pork Antitrust Litigation*.

c)      Smithfield agrees to make all good faith efforts to assist consumer IPPs in obtaining the authentication and admissibility of Settling Defendant's documents for purposes of summary judgment and/or trial.

d)      Smithfield agrees to make available to testify live at a single trial the following: (a) one then-current Smithfield employee who can authenticate a specific set of documents (all of which consumer IPPs will provide to Smithfield at least forty-five (45) days before jury selection starts), and (b) one then-current Smithfield employee who can serve as a fact witness on material fact issues on which that employee has personal knowledge to the extent those fact issues remain in dispute at the time of trial.

e)      The Settlement does not prohibit consumer IPPs from seeking phone records from third-party phone carriers relating to Smithfield's current or former employees' phone records for the time between January 1, 2008, and June 30, 2018, when those employees were employed by Smithfield.

Scarlett Decl., Ex. A at ¶ 11.

The Settlement Agreement sets forth the full terms of the release. By way of summary, upon this court's decision on final approval of the settlement, consumer IPPs agree to release and discharge Smithfield from any and all claims seeking relief that consumer IPPs have or ever may have relating in any way to their indirect purchase of pork produced, processed, or sold by Smithfield or any of the defendants or their co-conspirators. Scarlett Decl., Ex. A at ¶ 15.

The Settlement Agreement allows Smithfield to terminate the agreement at its sole discretion if a certain number of class members request exclusion. Scarlett Decl., Ex. A at ¶ 20(d). In the opinion of Class Counsel, the likelihood of such a provision being invoked is very low and does not present a significant risk to this settlement. Scarlett Decl., ¶ 10. For the purposes of this settlement, pork means:

> [P]orcine or swine products processed, produced or sold by Smithfield, or by any of the Defendants or their co-conspirators, including but not limited to: primals (including but not limited to loins, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chef's prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including, but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products).

Scarlett Decl., Ex. A at ¶ 1(m). This definition is coextensive with the definition of pork in the settlement previously reached with JBS.

## IV.   THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."[7] However, Courts must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

At this preliminary approval stage, the court determines whether the settlement is within the range of possible approval and whether class members should be notified of

---

[7] *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn.1993).

the terms of the proposed settlement.[8] Generally, before directing notice to class

members, courts preliminarily evaluate the proposed class action settlement pursuant to

Rule 23(e).[9] In other words, the court must consider whether it "will likely be able to"

approve the settlement as fair, reasonable, and adequate.[10]

As set forth below, consumer IPPs' agreement with Smithfield is fair, reasonable,

and adequate. Courts attach "[a]n initial presumption of fairness . . . to a class settlement

reached in arm's-length negotiations between experienced and capable counsel after

meaningful discovery."[11]

**A.     The settlement was reached in arm's-length negotiations between experienced and capable counsel.**

Courts consistently find that the terms of a settlement are appropriate where the

parties, represented by experienced counsel, have engaged in extensive negotiation at an

appropriate stage in the litigation and can properly evaluate the strengths and weaknesses

of the case and the propriety of the settlement.[12]

---

[8] *White,* 822 F. Supp. at 1399; 2 Newberg on Class Actions, § 11.24 (3d ed. 1992) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'").

[9] *See* Manual for Complex Litigation, (Fourth) § 21.632 (2004).

[10] Fed. R. Civ. P. 23(e)(1)(B)(i); *see* Fed. R. Civ. P. 23(e)(2).

[11] *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-180, 2000 WL175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993).

[12] *See, e.g., In re Emp. Benefit Plans Sec. Litig.*, Civ. No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (noting that "intensive and contentious negotiations likely

- 9 -

Both sets of counsel – both those representing the consumer IPPs and those representing Smithfield – are experienced in antitrust matters. The negotiations between counsel were conducted before a mediator, well respected in the industry (the Hon. Layn Phillips (Ret.)), who ensured that the negotiations were conducted at arm's length. The judgment of the litigants and their counsel concerning the adequacy of the settlement should therefore be considered.[13]

**B.     Consumer IPPs have had adequate opportunity to assess the merits of their claims and Smithfield's defenses.**

There can be no question consumer IPPs have had a chance to adequately assess the merits of their claims. The investigation into this conspiracy began months before the filing of the complaint, as consumer IPP counsel engaged expert economists and case investigators. Attorneys combed public statements by defendants, press releases, transcripts of investor calls, and filings with the Securities and Exchange Commission. As counsel for the consumer IPP class in the *In re Broiler Chicken Antitrust Litigation*, Hagens Berman was well aware of the role Agri Stats played across the protein markets.

After the motions to dismiss were mostly denied in October 2020, discovery began in earnest. Plaintiffs have deposed over 60 defense witnesses and ten non-party witnesses,

---

result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .'") (citation omitted).

[13] *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

- 10 -

and many of these depositions were taken by Counsel for the consumer IPP class.

Defendants have produced more than 3.8 million pages of documents. And consumer

IPPs subpoenaed 79 non-parties for data and related information to enable an analysis of

the pass-through of overcharges to the consumer class. In his declaration in support of the

consumer IPP motion for class certification, Dr. Singer relied upon approximately 856

gigabytes of raw data (6 gigabytes from Agri Stats, 164 gigabytes from other defendants,

and 686 gigabytes from non-parties for regressions measuring pass-through). To put this

vast amount of data in context, it would take over 1,250 standard CD-ROMs, or over

590,000 standard 3.5-inch floppy disks, to store this data. The work behind this litigation

has been significant. Scarlett Decl., ¶¶ 3-4.

Access to this volume of information has given the consumer IPPs sufficient

understanding of the strengths and weaknesses of their claims and Smithfield's defenses.

The settlement should therefore be accorded a presumption of fairness.

**C.      The settlement provides significant relief to the Settlement Class.**

The settlement provides "adequate" relief for the class, in accordance with Fed. R.

Civ. P. 23(e)(2)(C). Smithfield is estimated to have an adjusted market share of 32% of

the processing market.[14] Scarlett Decl., ¶ 7. The $75 million settlement represents $2.36

---

[14] The market share number is adjusted for the purposes of this motion to demonstrate the value of this settlement to the class if every defendant settled on similar terms. The defendants have approximately 80 percent market share, and so this calculation adjusts defendants' market share to 100 percent. This discrepancy is because the Court dismissed Indiana Packers on the motions to dismiss. But Indiana Packers is still alleged to be a co-conspirator, having participated in Agri Stats, and thus its approximate 4% market share should properly be included as within the scope of commerce impacted by this

million valuation for each market share point (an increase from the approximately $1 million per market share point of the JBS settlement).

This is an outstanding result. In addition to the financial compensation, the cooperation that consumer IPPs have secured from the settlement will bolster consumer IPPs' claims against the seven remaining non-settling defendants.

The proposed settlement also "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Funds will be awarded based on the purchase of qualifying class products. Although consumer IPPs are not requesting distribution of funds at this time, they propose that class members be allowed to submit claims through a simplified and open online claims process. The funds will then be distributed through an electronic method, pro rata, to each class member based on qualifying purchases.

## V.   THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

At the preliminary approval stage, the Court must also determine whether to certify the proposed Settlement Class for settlement purposes under Rule 23.[15] Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b).[16]

---

conspiracy. Singer Decl., ¶ 70 (Figure 9 showing Agri Stats 2014 U.S. Domestic Market Share).

[15] *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

[16] *Id.* at 613-14; *see also In re Monosodium Glutamate Antitrust Litig.*, 205 F.R.D. 229, 231 (D. Minn. 2001) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

The settlement proposes essentially the same Settlement Class as used in the JBS settlement, which is consistent with the one alleged in the Consumer Indirect Purchaser Plaintiffs' Second Amended Consolidated Class Action Complaint, November 6, 2019, ECF Nos. 392 (sealed), 393 (redacted), defined as:

> [A]ll persons and entities who purchased pork indirectly from any of the Defendants or any co-conspirator, or their respective subsidiaries or affiliates, for personal use in the United States from at least as early as January 1, 2009 until April 2, 2021. Specifically excluded from the Settlement Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Settlement Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and members of his/her immediate family and judicial staff, and any juror assigned to this action.

Scarlett Decl., Ex. A at ¶ 5.

As explained below, this Settlement Class satisfies all the requirements of Rule 23.

**A.    The Proposed Settlement Class Satisfies Rule 23(a).**

**1.    Numerosity**

The numerosity requirement of Rule 23(a)(1) is satisfied where joinder of all putative class members is "impracticable." Generally, a class of forty or more plaintiffs is sufficient to satisfy the numerosity requirement.[17] Certainly here, where the proposed class spans over a decade, and the product (pork) is nearly ubiquitous in American households, the low threshold of numerosity is satisfied.

---

[17] *Richter v. Bowen*, 669 F. Supp. 275, 281 n.4 (N.D. Iowa 1987) (citing 3B J. Moore, Moore's Fed. Procedure 23.05[1]).

## 2.    Commonality

There are also "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists where plaintiffs' claims depend on a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[18] Consumer IPPs are relying on several common contentions, including: (1) defendants conspired to decrease pork output and increase pork prices; and (2) defendants' conduct caused overcharges for pork consumers.

## 3.    Typicality

Under Rule 23(a), typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). Typicality is closely related to commonality and "a finding of one generally compels a finding of the other."[19] Typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff."[20] "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory."[21]

---

[18] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[19] *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 335 (S.D. Iowa 2016).

[20] *DeBoer*, 64 F.3d at 1174.

[21] *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

Here, typicality is satisfied because consumer IPPs' claims are based on the same antitrust conspiracy. Each class member has allegedly suffered the same harm through the purchase of pork in grocery stores that was subject to an overcharge. The Plaintiffs allege that no individual class member could have known of the conspiracy – the Agri Stats reports themselves are highly secretive, provided only to industry participants and never released to the public. Each individual class representative has the same interests in pursuing these claims on behalf of the absent class. Their claims are typical.

### 4.    Adequacy

The proposed plaintiffs are adequate representatives of the proposed class. Fed. R. Civ. P. 23(a)(4). Courts ask whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."[22]

Here, the named plaintiffs have no material conflict with other class members. Each purchased pork from grocery stores, unaware of the existence of the defendants' alleged agreement to fix, raise, maintain, and stabilize pork prices, and suppress pork output. No one individual class member could avoid the claimed overcharges. Each named plaintiff is aligned with the class in establishing the defendants' liability and maximizing class-wide damages.

Interim co-lead class counsel is also adequate. As the Court has already recognized in appointing Hagens Berman and Gustafson Gluek, each of these firms and

---

[22] *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

their attorneys are qualified and experienced in representing antitrust plaintiffs. Interim co-lead counsel has represented victims of antitrust conspiracies across the country and will continue to vigorously represent the class here.

The named plaintiffs have fulfilled their duties as class representatives by actively participating in the litigation. Each representative has approved the terms of this settlement and remains apprised of the status of the case. Scarlett Decl., ¶ 8.

**B.    The Proposed Settlement Class Satisfies Rule 23(b)(3).**

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

First, common questions of law or fact predominate over individual questions. "Slight variation in *actual damages* does not defeat predominance if there are common legal questions and common facts."[23] Here, plaintiffs allege that a series of common questions lies at the heart of all plaintiffs' claims, including: whether the defendants conspired to lower pork output and raise prices; whether the defendants' information exchange was anticompetitive; whether the defendants' conspiracy caused market-wide supra-competitive pork prices; and whether higher pork prices were passed on to pork consumers.

---

[23] *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 602 (8th Cir. 2020) (emphasis in original).

Second, a class action is the superior mechanism for trying plaintiffs' claims. Rule 23 instructs that the matters pertinent to this inquiry include: (a) class members' interests in individually controlling the prosecution of separate actions; (b) whether other litigation exists concerning this controversy; (c) the desirability of concentrating the litigation in this forum; and (d) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). In this case, the first three factors weigh heavily in favor of class certification: class members have little economic incentive to sue individually based on the amount of potential recovery involved, and no other known litigation exists regarding these claims.

The Court need not consider the final factor (whether a trial would be manageable) when assessing a potential settlement, as a settlement obviates the need for a trial. Finally, the proposed Settlement Class is ascertainable. Here, a class member may self-identify simply by reviewing the class definition. Moreover, as explained in the next section, consumer IPPs can use grocery store data as an additional mechanism to help identify class members.

## VI.   THE COURT SHOULD DIRECT NOTICE TO THE SETTLEMENT CLASS

### A.   The proposed form of class notice clearly and fairly apprises class members of the nature of this action and the scope of their rights.

In any class action certified under Rule 23(b)(3), the court must direct notice of class certification to class members using "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The class notice "must clearly and concisely state in plain, easily understood language" the following: (i) the nature of the

action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members. *Id.*

Because class members are bound by the results of a certified Rule 23(b)(3) class action unless they affirmatively opt out, this class notice is required as a matter of constitutional due process to protect the rights of the absent class members.[24] To meet the requirements of Rule 23 and constitutional due process, the class notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[25]

The information provided to the class members in the notice must be structured "in a manner that enables class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known."[26] As such, the notice of settlement must be sufficiently detailed to permit class members to determine the potential costs and benefits involved, or at least whether additional investigation into the matter would be an efficient use of their time.[27] Notice need not

---

[24] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974).

[25] *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

[26] *Reynolds v. Nat'l Football League*, 584 F.2d 280, 285 (8th Cir.1978).

[27] *Id.*

provide "a complete source of information" or an exact amount of recovery for each class member.[28] Best notice practicable means "individual notice to all members who can be identified through reasonable effort."[29] Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice.[30] Furthermore, in addition to United States mail, notice may be made by publication,[31] electronic means, or other appropriate means.[32]

Plaintiffs' proposed Website Notice (Schachter Decl., Ex. D),[33] which is substantially identical to the one approved by this Court for the JBS settlement, meets these requirements and follows the model class notice guidelines set forth in leading class action treatises.[34] The proposed Website Notice contains all of the information necessary to allow class members here to make informed decisions, as well as information required by Rule 23(c)(2)(B). Schachter Decl., ¶ 25, Ex. D. The proposed Website Notice contains

---

[28] *Petrovic*, 200 F.3d at 1153 (citing *DeBoer*, 64 F.3d at 1176).

[29] *Eisen*, 417 U.S. at 173.

[30] *Id*. at 176.

[31] *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2016 WL 1637039, at *4 (D. Minn. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

[32] Fed. R. Civ. P. 23(c)(2)(B).

[33] "Schachter Decl." refers to the Declaration of Eric Schachter in Support of Motion for Approval of the Class Action Settlement Between Consumer Indirect Purchaser Plaintiffs and Defendant Smithfield Foods, Inc. and to Direct Notice to the Settlement Class, filed concurrently herewith.

[34] *See* 3 Newberg on Class Actions § 8:31 at 253-59 (4th ed. 2002); Certification Notice, Ann. Manual Complex Lit. § 21.311 (4th ed.).

a brief overview of the case, describes the central elements of consumer IPPs' claims in clear and simple language, states the class definition, and advises of the option and procedure under which any class member may opt out. *Id.* It states that the judgment will bind class members who do not opt out and that any member who does not opt out may appear in the case through his or her own lawyer. *Id.* Also, should additional information be needed, the proposed Website Notice clearly designates and provides contact information for the claims administrator and Class Counsel. *Id.*

The proposed Website Notice plainly satisfies the requirements of due process and the specific requirements of Rule 23(c)(2)(B).

## B.    The proposed manner of notice dissemination is reasonable and represents the best notice practicable under the circumstances.

In a class action certified under Rule 23(b)(3), the rule provides for "the best notice that is practicable under the circumstances," including individual notice to all members who can be identified through reasonable effort. The requirement for the best notice practical "is essentially an interest in due process."[35] Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice.[36] And while direct mail notice is typically considered the best form of notice under Rule 23(c)(2)(B), courts routinely approve notice programs that do not include direct mail notice when such notice is impracticable, tailored to the

---

[35] *Smith v. SEECO, Inc.*, 865 F.3d 1021, 1025–26 (8th Cir. 2017) (citing *Eisen*, 417 U.S. 156 at 173-74).

[36] *Eisen*, 417 U.S. at 176; *see also Petrovic*, 200 F.3d at 1153.

- 20 -

relevant circumstances and designed to reach class members.[37] Indeed, the amendments to Rule 23(c)(2)(B) that went into effect on December 1, 2018, codify what the case law has long held and puts notice by "electronic means, or other appropriate means"—such as notice via email—on an equal footing as notice by United States mail.

Consumer IPPs propose a state-of-the-art notice program designed by an experienced notice and claims administrator, A.B. Data. The notice program includes (1) direct email notice, (2) publication notice, (3) internet notice, (4) an earned media plan, (5) banner ads, (6) a case-specific website, and (7) a case-specific toll-free number. This program is substantially identical to the notice plan approved by this Court for the JBS settlement.

**Direct Email**. Consumer IPPs have already subpoenaed and received contact information for approximately 17.6 million potential class members (although deduplication has not yet occurred). Consumer IPPs have received contact information from Target and 7-11. In addition, consumer IPPs continue to seek contact information for class members from Sam's Club and Costco. If these entities have not produced customer contact information by October 15, 2022, consumer IPPs will file motions to compel this data production. In addition, Amazon is willing and able to send email notice

---

[37] *See, e.g.*, *Hanlon v. Palace Entm't Holdings, LLC*, No. 11-987, 2012 WL 27461, at *6 (W.D. Pa. Jan. 3, 2012) (finding that both publication and email notice satisfied Rule 23 and due process requirements where the email list contained those persons most likely to be members of the class); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 569-70 (S.D. Iowa 2011) (approving a notice plan that provided direct notice to the roughly 115,000 known class members through email).

directly to the class members for which Amazon has purchase data. *See* Scarlett Decl., Ex. B (Declaration from Amazon regarding ability to provide direct notice).

For all of these class members for whom consumer IPPs have contact information, A.B. Data will send individual email notice to each potential class member whose email addresses are known. Schachter Decl., ¶¶ 10-12. A.B. Data will perform several tasks to maximize deliverability and avoid spam and junk filters. *Id.* These tasks include running the list of recipient email addresses through a deliverability analysis to ensure the email addresses are valid and working with A.B. Data contacts at the email service providers to develop sending strategies to achieve optimal deliverability. *Id.* A.B. Data will also incorporate certain best practices to maximize deliverability, such as ensuring no inclusion of words or phrases known to trigger spam or junk filters, not including attachments to the email, and sending the emails in tranches over a period of days or weeks. *Id.*

The email notice will also include a case specific website, www.overchargedforpork.com, where Class Members will have access to the updated Website Notice, exclusion and objection deadlines, the Settlement Agreement, and other information about the settlement. *Id.*, ¶ 25. The proposed Email Notice is included as **Exhibit C** to the Schachter Declaration. A more detailed long-form notice (the Website Notice) will be available for download on the case-specific website and will also be included in the "frequently asked questions" or FAQ section of the website. The proposed Website Notice is included as **Exhibit D** to the Schachter Declaration.

- 22 -

**Publication Notice**. To supplement the direct notice program, consumer IPPs also propose a publication notice program. The publication plan includes paid media and earned media components. A.B. Data proposes using both traditional digital targeting and a hyper-targeted strategy that includes behavioral, placement, and context targeting to reach Settlement Class members online. *Id.*, ¶ 15-17. Moreover, the Notices have been designed to be highly visible and noticeable. A.B. Data will place the Notices in a "premium position" on websites and social media sites. *Id.*, ¶ 14. Each of the following elements of publication notice have been specifically designed to be readable, noticeable, targeted, and widely disseminated to sources calculated to reach potential Settlement Class members. *Id.*

**Banner Advertisements**. Digital banner and social media newsfeed advertisements, targeted specifically to Settlement Class members, will provide the Class with additional opportunities to be apprised of the settlement and their rights. These banner advertisements and social media newsfeed advertisements will appear on a rotating schedule in multiple formats across desktop and mobile devices in both English and Spanish. *Id.*, ¶¶ 13-18.

The banner advertisements will be placed via *Google Display Networks* and *Google AdWords* and on the social media platforms *Facebook*, *Instagram*, and *YouTube*, leading social media sites in the United States. *Id.* A case-specific Facebook page will also be created as a landing page for the links in the Facebook and Instagram newsfeed ads. *Id.*, ¶ 16. A.B. Data also proposes displaying these banner advertisements for 30 days, which is expected to generate a minimum of 348,000,000 impressions. *Id.*, ¶¶ 14,

- 23 -

20. Clicking on any such Banner Notice will bring the reader to the case website where they can obtain detailed information about the case. *Id.*, ¶ 14. An example of a proposed Banner Notice is included as **Exhibit E** to the Schachter Declaration.

**Sponsored Internet Search Listings**. Additionally, sponsored search listings, directing Settlement Class members to the case website, will be acquired on Google, the most visited search engine. *Id.*, ¶ 19. When identified target phrases and keywords relevant to the action are used in searches on Google, links to the Settlement website will appear on the search result pages. *Id.* This earned media component will be available to Settlement Class members throughout the U.S. and will assist them in finding and accessing the case website.

**Informational Release**. As a further supplement to the above-described elements, a news release will be distributed via *PR Newswire*'s US1 Newsline distribution list to approximately 10,000 news outlets, including print, broadcast, and digital websites across the United States. *Id.*, ¶ 22. The news release will also be translated and published to *PR Newswire*'s U.S. Hispanic media contacts and Hispanic news websites. *Id.* News about the Settlement will also be sent via Twitter to the followers of *PR Newswire* and A.B. Data. *Id.* While A.B. Data cannot guarantee that any news stories will result from these efforts, if they do, Settlement Class members will have additional opportunities to learn about their rights.

**Settlement Website**. Notice of, and information regarding the Smithfield settlement will be added to the settlement website established for this case and related settlements. *Id.*, ¶ 25. The Website Notice, which contains a detailed summary of the

terms of the settlement, will be posted prominently. *Id*. The website will also provide, among other things, a summary of the case, all relevant documents, important dates, and any pertinent updates concerning the litigation or the settlement process. *Id*. The website will be secure, with an "https" designation. *Id*. The Banner Notices will link directly to the case website, and Google Analytics and Facebook Pixel tracking codes will be placed on the website to ensure accurate optimization with the digital and social media ads. *Id*. Answers to FAQs also will be updated as appropriate. The case website address is displayed prominently on all Notice documents.

**Toll-Free Number and Mailing Address**. A.B. Data will continue to maintain the case-specific toll-free telephone number with an automated interactive voice response system. *Id*., ¶¶ 23-24. The automated interactive voice response system will present callers with a series of choices to hear prerecorded information concerning the Settlement. *Id*.

## VII.   PROPOSED PLAN OF ALLOCATION

Courts evaluate claims processes to ensure that they are fair and reasonable and not so burdensome as to discourage class members from submitting claims.[38] Here, the claims form is simple to complete, in order to encourage the filing of claims. Schachter Decl., Ex. F. Class members will be given the opportunity to submit their contact information and the number of qualifying purchases through the website (or through hard copy claims forms) using a brief, simple set of questions. *Id*., ¶ 26. No documentation is

---

[38] *See Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 216-17 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018).

required unless there is a potentially suspicious number of purchases or amount of costs claimed. *Id.*

Moreover, the distribution plan provides for efficient and cost-effective disbursement of the settlement funds to class members. Settlement Class members must submit a timely, valid claim through the settlement website or by mail to be eligible to receive payment. *Id.* Payments will be sent electronically to each eligible claimant using the email address provided on the Claim Form. *Id.* at ¶ 28. At the time of distribution, each eligible claimant will be provided with several electronic options to instantaneously receive their payment, such as a virtual debit card, PayPal, or redemption through other ecommerce platforms. *Id.* This will reduce administrative costs and provide claimants with a convenient and efficient way to receive their funds without having to deposit a check or visit a bank. Settlement Class members can also request a traditional paper check payment by mail. *Id*. This comports with current best practices.

Consumer IPPs propose that class member be able to submit claims through June 30, 2023. If that deadline needs to be moved, because of additional settlements or for another reason, consumer IPPs will make such a request to the Court. After the initial round of settlements, consumer IPPs propose a second round of distribution be made to class members which would take into account the efficiencies of administrative costs. This may mean that the second-round distribution will be made only to class members who participated in the first round of distribution, and a flat amount for distribution, or tiered amounts of distribution, would be the most efficient way to effect a second round.

- 26 -

Any remaining funds after the second round of distribution would escheat to the relevant governmental authorities responsible for enforcing the antitrust laws. *Id.*, ¶ 29.

Thus, consumer IPPs respectfully request that the Court approve the proposed claim form, as well as the proposed plan of plan of allocation, with respect to the settlement between consumer IPPs and Smithfield.

## VIII.  PROPOSED SCHEDULE

The last step in the settlement approval process is the final approval hearing at which the court may hear all evidence necessary to evaluate the proposed settlement. At that hearing, proponents of the settlement may explain and describe their terms and conditions and offer argument in support of the settlement's approval, and members of the Settlement Class or their counsel may be heard regarding the proposed settlement if they choose.

Consumer IPPs propose the following schedule for the dissemination of notice, period for objections, and motion for final approval:

| EVENT | DATE |
|---|---|
| Notice campaign begins through direct email and implementation of publication notice campaign | 30 days from order directing notice |
| Last day for Co-Lead Counsel to move for attorneys' fees, expenses, and service awards for named representatives | 76 days from order directing notice |
| Last day for Settlement Class members to request exclusion from the class, to object to Settlement, to file notices to appear at the final approval hearing | 90 days from order directing notice |

| | |
|---|---|
| Co-Lead Counsel to provide Smithfield with a list of all persons and entities who have timely and adequately requested exclusion from the Settlement Class | 97 days from order directing notice |
| Co-Lead Counsel shall file a motion for final approval of the Settlement and all supporting documents, as well as responses to any objections to the settlement or attorneys' fees | 14 days before the Final Approval Hearing |
| Final Approval Hearing, and Hearing on Request for Attorneys' Fees and Expenses | 40 days after the last day to request exclusion from the Settlement, or as soon thereafter as may be heard by the Court |

## IX.    CONCLUSION

For these reasons, consumer IPPs respectfully request that the Court preliminarily approve the Settlement with Smithfield, certify the Settlement Class, and direct notice in the form and manner, and on the schedule, proposed here.

DATED: September 27, 2022          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:    */s/ Shana E. Scarlett*
        SHANA E. SCARLETT
Rio Pierce
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.om

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000

- 28 -

Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Elaine T. Byszewski
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave., Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
elaine@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Joshua J. Rissman (#391500)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

*Counsel for Consumer Indirect Purchaser Plaintiffs*

- 29 -