- 1 -

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Case No. 0:18-cv-01776 (JRT/JFD) |
| *This Document Relates to:*<br><br>All Consumer Indirect Purchaser Plaintiff Actions | **DECLARATION OF SHANA E. SCARLETT IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT BETWEEN CONSUMER INDIRECT PURCHASER PLAINTIFFS AND DEFENDANT SMITHFIELD FOODS, INC. AND TO DIRECT NOTICE TO SETTLEMENT CLASS** |

I, Shana E. Scarlett, state under oath, as follows:

1. I am a partner at Hagens Berman Sobol Shapiro LLP. I am admitted to this Court *pro hac vice* and am one of the Interim Co-Lead Counsel (along with Gustafson Gluek PLLC) appointed by the Court to represent the Consumer Indirect Purchaser Plaintiffs ("consumer IPPs") in this litigation. I have full knowledge of the matters stated herein and would testify to these facts if called upon.

2. Consumer IPPs seek preliminary approval of the settlement with Smithfield Foods, Inc. ("Smithfield"). This settlement provides $75 million in total relief to the consumer IPP class. The settlement is the result of arm's-length negotiations, conducted in front of an experienced mediator, which provides substantial monetary and non-monetary relief to the consumer IPP class.

3. Consumer IPPs allege defendant pork processors have agreed to stabilize the price and supply of pork through a series of collusive acts, including limiting the U.S. supply of pork and through the use of the secretive service, Agri Stats. Agri Stats provided defendants with detailed weekly and monthly reports on the price and supply levels of pork. The investigation into this conspiracy began months before the filing of the complaint, as consumer IPP counsel engaged expert economists, and case investigators. Attorneys combed public statements by defendants, press releases, transcripts of investor calls, and filings with the Securities and Exchange Commission. Lead counsel was well read in the nature of the market, including the involvement of Agri Stats, a service that provided defendants with detailed weekly and monthly reports on the price and supply levels of pork.

4. After the motions to dismiss were denied in October 2020, discovery began in earnest. Plaintiffs have deposed over 60 defense witnesses and ten non-party witnesses, with many of these depositions taken by Class Counsel for the consumer IPP class. Defendants have produced 3.8 million pages of documents. And consumer IPPs have subpoenaed 79 non-parties for data and information relating to their claims and data to perform an analysis of the pass-through of overcharges to the consumer class. In his declaration in support of the consumer IPP motion for class certification, Dr. Singer relied upon approximately 856 gigabytes of raw data (6 gigabytes from Agri Stats, 164 gigabytes from other defendants, and 686 gigabytes from non-parties for regressions measuring pass-through).

5. Smithfield and consumer IPPs first discussed settlement in August 2021. Discussions quickly stalled but resumed again in March 2022. A mediation was held before the Honorable Layn Phillips (Ret.), founder of Phillips ADR Enterprises, on April 18, 2022. An agreement upon terms was reached on the same day. The settlement agreement was signed by both parties on August 4, 2022.

6. The Non-Settling Defendants filed oppositions to class certification on August 24, 2022. The Non-Settling Defendants in the consumer IPP case are: Agri Stats, Inc. ("Agri Stats"); Clemens Food Group, LLC, The Clemens Family Corporation, and Hatfield Quality Meats (together and separately, "Clemens"); Hormel Foods Corporation (Hormel); Seaboard Foods LLC ("Seaboard"); Triumph Foods, LLC ("Triumph"); and Tyson Foods, Inc., Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. (together and

separately, "Tyson"). The consumer IPP class previously settled with JBS for $20 million.

7. Smithfield is estimated to have an adjusted market share of 32% of the pork processing market.

8. The named plaintiffs have fulfilled their duties as class representatives by actively participating in the litigation. Each representative has approved the terms of this settlement and remains apprised of the status of the case.

9. Many of the major grocery stores retain consumers' purchase histories and contact information, including customers' email addresses. Consumer IPPs have already issued subpoenas for the production of this information and will prioritize acquiring it from third-party grocery stores. As of September 19, 2022, Amazon identified 1.8 million customers to be noticed.

10. The Settlement Agreement allows Smithfield to terminate the agreement at its sole discretion if a certain number of class members request exclusion. In my opinion, the likelihood of such a provision being invoked is very low and does not present a significant risk to this settlement.

11. Attached hereto as **Exhibit A** is a true and correct copy of the Long-form Settlement Agreement Between Consumer Indirect Purchaser Class Plaintiffs and Smithfield, dated August 4, 2022.

12. Attached hereto as **Exhibit B** is a true and correct copy of the Declaration on Behalf of AmazonFresh, LLC, dated June 23, 2022.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: September 27, 2022

                                                  */s/ Shana E. Scarlett*
                                                  SHANA E. SCARLETT