# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br><br>This Document Relates to:<br>*All Direct Actions* | Case No. 18-cv-1776 (JRT/JFD) |

### DECLARATION OF LINDSEY STRANG ABERG
### IN SUPPORT OF DEFENDANTS' OPPOSITION TO
### CERTAIN DIRECT ACTION PLAINTIFFS' MOTION TO COMPEL

LINDSEY STRANG ABERG, being duly sworn deposes and says:

1. I am over eighteen (18) years of age. I make this declaration based on my personal knowledge and my review of pertinent records.

2. Since September 2016, I have been a practicing attorney in good standing. I have been an attorney at the law firm Axinn, Veltrop & Harkrider LLP ("Axinn") since July 2018.

3. Defendants Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. (collectively, "Tyson") retained Axinn to represent Tyson in connection with a lawsuit known as *In re Pork Antitrust Litigation* ("the Pork litigation"). I have worked as an attorney on the Pork litigation since I joined Axinn in July 2018. I submit this declaration on behalf of Tyson in support of Defendants' Opposition to Certain Direct Action Plaintiffs' Motion to Compel.

4. I was the lead associate managing data collection efforts and was supported in my role primarily by Brooke J. Oppenheimer, Axinn's Counsel of eDiscovery, Cyber & Data Protection, and Axinn associates Victoria J. Lu, and Keith J. Holleran.

5. From January 2021 through June 2021, Axinn communicated with various Tyson employees to identify the data systems utilized by each relevant division of Tyson in connection with pork product sales, costs, and procurement in response to requests for structured data by Plaintiffs in the Pork litigation. These communications included multiple teleconferences and emails. On the basis of these and subsequent discussions, it was ultimately determined that there were at least twelve (12) separate data systems from which structured data would need to be collected and produced in response to Plaintiffs'

- 1 -

data requests in the Pork litigation. The process to identify these data sources was both time-consuming and complex, as the necessary knowledge regarding the different data systems is held by various different individuals at Tyson. By way of example, I learned that separate individuals at Tyson held the necessary knowledge about pork primal sales data as compared to lunch meat ham sales, and that yet another set of individuals held the necessary knowledge regarding lunch meat ham sales sold under the "Hillshire" brand (a company Tyson acquired in 2014).

6. Once the relevant data systems were identified, I worked directly with Tyson to identify relevant data fields and products contained in each of the relevant systems. This process was also time-consuming and complex. The complexity derived from multiple challenges, including that Tyson's "Prepared Foods" products contain multiple proteins and are therefore not easy to identify by protein category, as well as that each of Tyson's different data systems contains hundreds of different data fields, many of them coded such that their meanings are not immediately apparent.

7. From at least June 2021 to May 2022, I had regular contact with Tyson's IT teams and in-house attorneys to facilitate the collection of data from the various identified data systems in connection with the Pork litigation. I also had primary responsibility for ensuring the data we collected would satisfy the Plaintiffs requesting such data such that none of these efforts would need to be redone. To promote this objective, I personally liaised with Plaintiffs' counsel over the course of several meet and confers and letter exchanges to discuss the specific contents and limitations of Tyson's data systems.

8.      During the June 2021 to September 2021 time period, I participated in dozens of teleconferences and email exchanges with Tyson regarding data for the Pork litigation. During this time period, I was focused on facilitating the initial collection and production of data by the applicable September 1, 2021 deadline.

9.      Based on Axinn's billing records, which I personally reviewed, I can conservatively estimate that Axinn attorneys, including myself, spent more than **400 hours** on work related to the identification, collection, and production of Tyson's structured data for the Pork litigation.

10.     While the attorney time spent on Tyson's data collection efforts was extensive, it is exceeded by the time dedicated by Tyson's own employees and IT contractors who had the requisite access and knowledge needed to actually export the data responsive to Plaintiffs' requests. **In total, Tyson estimates that it devoted approximately 1,200 hours to data collection efforts in connection with the Pork litigation.** Those hours involved work by a few different Tyson teams, as described below.

11.     First, as further detailed in the Declaration of Tyson's Senior Manager of IT Applications Kelly Joyner, filed concurrently herewith, Tyson IT employees and contractors collectively spent approximately **280 hours** in support of the collection of responsive data in connection with the Pork litigation. Various challenges contributed to the amount of time this effort ultimately required. For example, significant volumes of relevant data were maintained in historic data systems that were no longer in use by Tyson. Accordingly, IT employees unfamiliar with such databases had to devote

- 3 -

considerable time first to obtaining access to and then to determining how to export large volumes of data from such systems. Additionally, on some occasions, Tyson's IT team devoted dozens of hours to large data exports which were determined upon review to be incomplete due to unknown systems failures. This resulted in hours of troubleshooting, and ultimately required the IT team to export the data in smaller increments as a work around.

12. Aside from the IT efforts, Tyson business people also expended considerable effort identifying, defining, and advising on the appropriate parameters to guide the collection of responsive data, as well as actually exporting data in some instances. Such employees were divided principally between three primary business divisions, which each maintain entirely separate sales data in different systems: Tyson Prepared Foods, Hillshire Brands (which Tyson acquired in 2014), and Tyson Fresh Meats.

13. I understand that the Prepared Foods and Hillshire Brands divisions of Tyson each separately maintain information on sales of "further processed" pork products such as lunch meat and sausage. I understand that Tyson business people with knowledge of such sales and their respective data systems collectively contributed approximately **420 hours** in support of the data collection effort. The largest portion of such hours was spent by an Internal Sales Reporting Specialist on Tyson's Finance team, who joined Tyson through the Hillshire acquisition and was one of the few remaining Tyson employees with the necessary knowledge and access to export data from the outmoded Hillshire Brands database. This employee had to devote dozens of hours over

- 4 -

the course of multiple weekends to export a decade's worth of data in quarterly increments. This was necessary because she experienced repeated database crashes until she narrowed her queries to generate piecemeal data exports. Tyson IT's attempts to improve the employee's computing power to facilitate faster processing speeds were unavailing. It was later determined that all the exports performed by this employee on her first attempt had to be redone because the protein field parameters she applied to limit the export to pork products was determined to be under-inclusive. For example, certain lunch meat products were coded as "ham" instead of "pork" as a protein type.

14. Separately, another team of Tyson employees was responsible for collecting the production, cost, and sales data related to the "Fresh Meats" side of Tyson's business. Tyson Fresh Meats maintains data entirely separately from Tyson Prepared Foods and uses a different data processing system. The Tyson Fresh Meats data generally relates to pork primal products such as hams and bellies.

15. On the Tyson Fresh Meats side, I understand that more than **500 hours** were spent collecting responsive Tyson Fresh Meats data in connection with the Pork litigation. Specifically, those efforts included:

    a. **295 hours** of time spent identifying and collecting data from Tyson Fresh Meats data systems, from the period of 2005 to 2020.

    b. **180 hours** of time spent reviving and restoring archived Tyson Fresh Meats data systems so that data from the earlier portion of the agreed-upon time period could be exported. This restoring and reviving of archived systems cost Tyson approximately **$20,000 in actual fees** to storage facilities.

- 5 -

c. **30 hours** of machine running time to generate the data from Tyson Fresh Meats data systems, from the period of 2005 to 2020. Note that this machine time had a noticeable impact on Tyson's business operations.

16. I also understand Defendants collectively (i.e., Tyson and its co-defendants) have produced to date an estimated 175 gigabytes of structured sales data, containing 1.4 billion observations and involving more than $150 billion of commerce.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29, 2022 in Washington, D.C.

/s/ Lindsey Strang Aberg
Lindsey Strang Aberg