UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br><br>This Document Relates to:<br>*All Direct Actions* | Case No. 18-cv-1776 (JRT/JFD) |

**DECLARATION OF KELLY JOYNER
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
<u>CERTAIN DIRECT ACTION PLAINTIFFS' MOTION TO COMPEL</u>**

KELLY JOYNER, being duly sworn deposes and says:

1. I am over eighteen (18) years of age. I make this declaration based on my personal knowledge, my review of pertinent records, my discussions with Tyson Foods Inc. employees, and my years of experience at Tyson Foods, Inc.

2. I am employed by Tyson Foods, Inc. as the Senior Manager, Information Technology ("IT") Applications. I have been employed in various IT-related roles at Tyson Foods, Inc. since February 1998. I submit this declaration on behalf of Defendants Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. (collectively, "Tyson") in support of Defendants' Opposition to Certain Direct Action Plaintiffs' Motion to Compel the Additional Data.

3. I am aware that Tyson has retained attorneys at the law firm Axinn, Veltrop & Harkrider LLP ("Axinn") to represent Tyson in connection with a lawsuit known as *In re Pork Antitrust Litigation* ("the Pork litigation").

4. From January 2021 through June 2021, I am aware that Axinn had communications with various Tyson employees to identify the data systems utilized by each relevant division of Tyson in connection with pork product sales, costs, and procurement in response to requests for structured data by the plaintiffs in the Pork litigation. I understand that it was ultimately determined that there were at least twelve (12) separate data systems from which structured data would need to be collected and produced in response to data requests in the Pork litigation.

5. I understand the complexity and breadth of relevant data systems at Tyson is attributable to various factors, including, among others (1) Tyson Prepared Foods and

- 1 -

Tyson Fresh Meats maintain entirely separate data using different data systems; (2) even within Tyson Prepared Foods and Tyson Fresh Meats, various sales, rebate, costs, and production data are maintained separately; (3) Tyson acquired Hillshire Brands Company in 2014, and Hillshire data continued to be maintained separately for several years thereafter; and (4) certain older data were decommissioned or "archived," and most individuals knowledgeable about such systems are no longer employed by Tyson. Moreover, Tyson Prepared Foods only migrated to its current, SAP-based sales data system in April 2019, meaning even relatively recent sales data from prior to that date derives from one of several now outmoded data systems, which use different fields and product codes from the current system.

6. On or around June 2021, I was contacted to lend IT management support and oversight to the collection of data from the various identified data systems in connection with the Pork litigation. From at least June 2021 to May 2022, I had regular contact with Tyson's in-house attorneys and Axinn attorneys regarding the same. In my role as Senior Manager, IT Applications, I had primary responsibility for managing this data collection process, including liaising with Tyson's in-house legal team and Axinn and coordinating the efforts of Tyson IT employees and outside IT consultants in their efforts to identify, collect, and transmit the data requested by the plaintiffs in the Pork litigation.

7. During the June 2021 to May 2022 time period, I participated in dozens of teleconferences and email exchanges with Tyson's attorneys regarding data for the Pork litigation. During the earlier part of this time period, I was focused on facilitating the

initial collection and production of data by the applicable September 1, 2021 deadline. Later, I was reengaged to oversee the reproduction of certain data to correct errors identified by Tyson's attorneys subsequent to the data's initial production.

8. Ultimately, the process to collect and produce the data required for the Pork litigation was so complex and time-consuming that it became unworkable for Tyson's own full-time employees to manage the process in addition to their regular work duties. Accordingly, we engaged a team of outside IT consultants at Infosys to work directly with Axinn and with Tyson employees to assist in the process.

9. All told, myself and the IT team I managed collectively contributed at least **280 hours** of time over the course of several months to collect data for the Pork litigation. This estimate does not include efforts by Tyson business people, whom I do not manage, who also contributed significantly to the data collection efforts. The IT efforts of my own team included, among other things, (1) engagement of outside consultants (Infosys) to re-export data that was determined to have inadvertently excluded certain relevant products and fields; and (2) extensive and close coordination—over the course of several weeks—between Tyson business people, Tyson IT, Infosys, and Axinn to guide the identification and selection of relevant parameters (e.g., fields and product codes) to apply to limit the new export to relevant data; and (3) expenditures of dozens of hours of additional work by Infosys, with continued oversight and involvement by Tyson and Axinn, to re-export the large volumes of data according to the parameters identified via collaboration with Tyson and Axinn.

10. There was a significant amount of trial and error as we encountered numerous unforeseen challenges and failures, including situations in which data that took dozens of hours to collect were later determined to be incomplete and needed to be supplemented due to unknown systems failures.

11. These efforts have caused significant distraction from the ordinary business responsibilities of relevant employees, and has required such individuals to work outside of business hours to contribute to the needs of the Pork litigation.

12. Prior to undertaking this extensive data collection process, I requested and Axinn provided parameters for the scope of "pork" products for which data was requested. Axinn advised that structured data was not required for multi-protein products containing pork (e.g., hot dogs and other multi-protein sausages), multi-ingredient products containing pork (e.g., breakfast sandwiches), or for offal, variety meats, and pork byproducts. These parameters were relayed to the various Tyson employees responsible for setting the parameters to apply to the data collection, and I understand that those employees endeavored to collect and produce only data for the relevant, in-scope "pork" products as articulated by Axinn. I understand the data produced by Tyson to date covers more than 12,000 product SKUs.

13. Based on my previous experience overseeing data collection in the Pork litigation, I understand that the additional sales and related cost data now requested is maintained in eight (8) separate systems, most of which are outdated and no longer in use by Tyson. It would be time-consuming and labor-intensive to apply revised parameters

- 4 -

to collect expanded data for previously excluded products from each of these separate systems.

14.     Collecting this additional data would require Tyson to essentially begin again at stage one and redo the process it took our large team several months to complete satisfactorily, using different product parameters.  Such effort would again require extensive collaboration and time investment between various Tyson business people—who have the necessary knowledge of the relevant products and codes within each of the various data systems—and Tyson and outside IT professionals—who have access to the computing power necessary to collect the required large volumes of data spanning a 15-year time period.  I estimate that on the IT side alone, the effort would take approximately **200 hours**, as it would be roughly comparable to our previous collection efforts.  Since this work would need to be managed by employees who have important job responsibilities unrelated to the Pork litigation, I anticipate we would need at least 2.5 months to complete the project.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 27, 2022 in Springdale, Arkansas.

/s/ Kelly Joyner
Kelly Joyner