# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **In re Pork Antitrust Litigation**<br><br>This Document Relates To All Actions | Case No. 18-cv-01776-JRT-JFD<br><br>**DECLARATION OF PETER FERRELL** |

Pursuant to 28 U.S.C. § 1746, I, Peter Ferrell, declare as follows:

1. I have worked for Hormel Foods Corporation ("Hormel Foods" or the "Company") since June 2011. I am currently the Director of Cost Accounting. My responsibilities include accounting tasks integral to the Company's financial reporting and management of the business. I have personal knowledge of the facts stated in this Declaration.

2. My job responsibilities include working with Hormel Foods' databases and financial information. I have been directly involved in helping the Company respond to requests for transactional data during this litigation. I understand that Plaintiffs in this litigation are requesting additional information about Hormel Foods' sales of products that were not previously at issue in the case. There would be significant burden entailed in complying with that request.

3. The first step in extracting sales information from the Company's databases is to identify the list of relevant products. Hormel Foods is a branded food-products company that sells thousands of products across a wide range of grocery categories. Over the period at issue in the litigation, the Company sold tens of thousands Stock Keeping Units ("SKUs"). As

just a few examples, this includes products such as peanut butter, guacamole, canned goods, multiple different types of sausages, and fresh meat products.

4. In response to discovery requests seeking information about Hormel Foods' sales of "Pork" products—based upon the definition of "Pork" alleged in the complaints and discovery—I conducted a largely manual review of more than 20,000 SKUs. There is no field in the Company's databases that would allow for a shortcut, as Hormel Foods does not categorize its products based upon whether it qualifies for a litigation-derived definition of "Pork." After omitting products like peanut butter and guacamole and narrowing the list of SKUs to products that might constitute "Pork," I was left with a list of more than 20,000 SKUs to review. I did that by applying product categories that I understood had been negotiated during the litigation to identify SKUs for which reports needed to be generated. There is no feasible way to delegate this task. Because my normal job responsibilities are intensive, time-sensitive, and important to the Company's operations, I spent many nights and weekends working to finalize a list of "Pork" products for use in the litigation.

5. I understand that Plaintiffs now seek information for a different specified set of products based upon a different definition of "Pork." As I understand it, Plaintiffs are asking for reports that include sales of any product that includes pork as an ingredient, as well as byproducts, offal, and various products (e.g., bones, blood, lard, feet) that were previously excluded from the definition of "Pork" used in the litigation and thus from the list of "Pork" products I had prepared.

6. Complying with this request would necessitate an entirely new review of the Company's list of SKUs. It would also be far more complicated. The definition "Pork" used in the litigation is generally consistent with industry standards of identity, i.e., established

industry categories such as bacon that have clearly defined meanings. Tracking all products sold over more than 10 years that may have included pork as an ingredient would be much more difficult and time-consuming.

7.  In fact, I do not believe that I could reliably determine the full list of all products containing pork. For example, various product lines such as Hormel Chili® include specific SKUs that contain pork and others that do not. I do not have access to any data fields to sort such products, and it would instead be necessary for someone to review ingredient lists of products sold over time. Our business is not designed to validate such a product list, so it would take a significant manual effort to do so and may not be possible.

8.  Based on my previous experience in developing a reliable list of "Pork" products relevant to the litigation, it would require many hours of time and effort to generate a new list. Our accounting and finance team is currently short staffed; for example, I normally manage 20 controllers, and we currently have five positions unfilled. Our team is also deeply involved in the Company's restructuring that was recently announced. Under these circumstances, the process of identifying and producing additional data for the litigation would be extraordinarily disruptive. The responsibility would fall on me and other businesspeople who would be needed to investigate ingredient lists and validate the product list. Trying to complete this task on a deadline would cause significant burden to our business, disrupt my ability to execute necessary business functions, and adversely affect my ability to fulfill my job responsibilities.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 22, 2022        /s/ Peter Ferrell
                                 Peter Ferrell