**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Actions | Civil No. 18-1776 (JRT/JFD)<br><br>**MOTION FOR LETTERS OF ROGATORY FOR TYSON EMPLOYEE SUMIO MATSUMOTO** |

**CONTAINS CONFIDENTIAL MATERIAL – FILED UNDER SEAL**

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT .................................................................................................. 3

    A.    Only Mr. Matsumoto can explain his process for deanonymizing the Agri Stats reports, and that makes him a critical witness. .................................... 4

    B.    If the Court cannot issue the letters rogatory before the October 31 deadline, good cause exists to amend the scheduling order. ......................... 7

III. CONCLUSION ............................................................................................... 9

## I. INTRODUCTION

Plaintiffs[1] seek the sworn testimony of Sumio Matsumoto, a Tyson employee who helped Tyson reverse engineer Agri Stats reports to identify the defendant competitors' data during the class period. On September 19, 2022, Tyson told Plaintiffs that Mr. Matsumoto lives in Canada, works for a Canadian subsidiary of Tyson, and will not sit for a deposition willingly. Although Tyson exerts control over Mr. Matsumoto and could require him to sit for a deposition as part of his job duties, Tyson is unwilling to do so.[2]

Plaintiffs met and conferred with Tyson's counsel on September 28 in a final attempt to resolve this dispute without court intervention. As a compromise, Plaintiffs offered to hold the deposition remotely over Zoom, or in a Canadian office at Plaintiffs' expense before the October 31 discovery deadline. Tyson rejected both offers. Thus, Plaintiffs are forced to ask the Court to issue letters rogatory pursuant to Federal Rule of Civil Procedure 28(b) and 28 U.S.C.A. § 1781. Plaintiffs have partnered with local counsel to assist with the transmittal of the letters rogatory to the Canadian courts and ensure compliance with Canadian law.

---

[1] "Plaintiffs" refers to the Consumer Indirect Purchaser Plaintiffs, the Direct Purchaser Plaintiffs, the Commercial and Institutional Indirect Purchaser Plaintiffs, the Commonwealth of Puerto Rico, and Direct Action Plaintiffs, who bring this motion together.

[2] During the parties' conference, Tyson did not dispute that it has control over Mr. Matsumoto. Tyson's counsel said that Tyson would not require Mr. Matsumoto to sit for a deposition "or be fired" because they did not believe he held a position with sufficient seniority and suggested his testimony on exports could be obtained by U.S. witnesses. Declaration of Shana Scarlett in Support of Letters Rogatory ("Scarlett Decl.") at ¶ 8.

010737-11 1449936V1

On September 28, after the conference with Tyson, Plaintiffs called the Court to schedule a hearing for this dispute; the Court indicated it was available on November 16 – two weeks after the close of fact discovery. Tyson said that it will object if this deposition takes place after the close of fact discovery. Yet if Tyson wants certainty that this deposition will take place before the October 31 deadline, it could require Mr. Matsumoto to cooperate as part of his job duties and attend the deposition on a date of Tyson's choosing. In such instances, under Canadian law, no judicial intervention would be required.[3] Since Tyson will not exert its authority over its employee, Mr. Matsumoto's deposition might take place after the October 31 discovery cutoff, however, Plaintiffs believe that good cause exists for their small exception to the scheduling order.

For the reasons advanced below, Plaintiffs respectfully ask the Court to issue the letters rogatory. And if the Court cannot issue these letters before the close of fact discovery, Plaintiffs request the Court to modify the scheduling order to accommodate the deposition of Mr. Matsumoto.[4]

---

[3] Voluntary depositions taken in Canada do not require prior permission from the Canadian courts and may be taken by private attorneys at the U.S. Embassy or any other location via notice. *See* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Canada.html; Meenu T. Sasser, *Discovery In Other States and Countries*, BL FL-CLE 6-1 § 6.3 (10th ed. 2019) (recognizing that "[t]he 'notice' procedure is the easiest and most expedient" of the methods for taking depositions in foreign countries).

[4] Although Tyson will object to Mr. Matsumoto's deposition taking place after the October 31 cutoff, Plaintiffs and Tyson have agreed to seek an extension of the deadline to accommodate two other Tyson employee deponents – both of whom have scheduling commitments that made securing the dates for a deposition before October 31 challenging. A stipulation regarding an extension to accommodate these depositions is forthcoming.

## II.     ARGUMENT

Federal Rule of Civil Procedure 28(b) states that a deposition may take place in a foreign country "under a letter of request, whether or not captioned a 'letter rogatory.'" Fed. R. Civ. P. 28(b)(1)(B). Letters rogatory are how "a court in one country requests a court of another country to assist in the production of evidence located in the foreign country."[5] The court has discretion on whether to issue such a letter.[6] Both the United States and Canada use letters rogatory to depose foreign witnesses.[7] Courts generally issue letters rogatory "whenever it is determined on a case-by-case basis that their use will facilitate discovery"[8] Courts "will generally deny an application for issuance of a letter rogatory only upon a showing of good cause by the party opposing issuance."[9] Here, Mr. Matsumoto's testimony meets the threshold for issuing the letters rogatory. Tyson cannot meet its burden of showing good cause in opposition.

---

[5] *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1273 (11th Cir. 2015) (citations omitted).

[6] *Int'l Swimming League, Ltd. v. Fed'n Internationale de Natation*, No. 18-CV-07394-JSC, 2020 WL 7042861, at *2 (N.D. Cal. Dec. 1, 2020) (citations and quotations omitted).

[7] *See In re DiGiulian*, 314 F. Supp. 3d 1, 4 (D.D.C. 2018) (compelling a American witness to sit for a deposition for a foreign proceeding in Canada); *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 777 (S.D.N.Y. 2012) ("the Canada Evidence Act provides that a court outside of Canada may serve letters rogatory upon a Canadian court. . . . This process mirrors the enforcement of letters rogatory by U.S. courts when discovery is sought in the United States for use in litigation before foreign tribunals.")

[8] 8 Charles Alan Wright, et al., Federal Practice and Procedure § 2005.1 at 70 (3d ed. 2010).

[9] *Bombardier Recreational Prod., Inc. v. Arctic Cat, Inc.*, No. 12-CV-2706 (MJD/LIB), 2014 WL 10714011, at *6 (D. Minn. Dec. 5, 2014).

### A. Only Mr. Matsumoto can explain his process for deanonymizing the Agri Stats reports, and that makes him a critical witness.

From the very first Complaint filed in this case Plaintiffs have alleged the Defendants used Agri Stats to facilitate their price fixing scheme, and "while nominally anonymous, the reports [from Agri Stats] contain such detailed figures covering every aspect of pork production and sales that producers can accurately identify the companies behind the metrics."[10] In their initial disclosures, Tyson identified only <u>one</u> employee as the person with knowledge of Tyson's Agri Stats report analysis: Deborah McConnell.[11] Critically, Tyson did *not* identify Sumio Matsumoto as a potential source of information on Agri Stats deanonymization, either in its initial disclosures or amended disclosures. Rather, Plaintiffs learned of Mr. Matsumoto's participation in Tyson's efforts to deanonymize the reports while preparing for the deposition of Ms. McConnell.

Ms. McConnell's deposition took place on June 23, 2022.[12] Plaintiffs learned while preparing for Ms. McConnell's deposition that Tyson learned its competitors' competitively sensitive data related to profits, pricing, and production monthly by deanonymizing the Agri Stats reports. These efforts were spearheaded by Ms. McConnell each month. During the deposition, Plaintiffs asked Ms. McConnell repeatedly to explain Tyson's process for deanonymizing the Agri Stats reports.

---

[10] *See* Class Action Complaint, ECF No. 1 (June 28, 2018), ¶ 61.

[11] *See* Scarlett Decl. at ¶ 3 (filed concurrently).

[12] *See* Scarlett Decl., Ex. A (McConnell Tr. at 1).

Ms. McConnell testified one source for her attempts were "Sumio's estimates."[13] Ms. McConnell would send spreadsheets with her best estimate for each packers' identity to Mr. Matsumoto and ask him "to review the data 'cause we used it for benchmarking all the time. But to see if – if they had a different estimate for some of the names."[14] Sometimes, Ms. McConnell and Mr. Matsumoto would meet in person (in the United States) to reverse engineer these Agri Stats reports. For example, on the invitation for one such meeting –called the "Agristats competitor review" meeting – Ms. McConnell wrote:[15]

> We need to collectively work together…again…
> We were able to define the 3 eastern plants for Sept.…and validate it.
> Our selection for the 3 in oct was not as close……(when we validated)
> For November, using the same criteria (export %, live wt, etc) we are NOT CLOSE AT ALL!!!!
> We need input from retail and processor sales to help with the identification process..
> Please bring your Oct and Nov 'books'……that is all you will need….thanks, Debbie
> Noel wants to meet (as a group) on 2.11.10 to review the competitor information…..

Thus, Mr. Matsumoto served as a source for deanonymizing the reports and a check on Ms. McConnell's own deanonymization attempts.

When pressed, Ms. McConnell testified that she did not know Mr. Matsumoto's method for determining the identity of competitors in the report: "I guess I don't know

---

[13] *Id.* at 56:19-57:27.

[14] *Id.* at 78:12-79:5.

[15] Scarlett Decl., Ex. B (Deposition Exhibit 982).

the source of his guesses, but he gave me guesses to use as some indicator to come up with an estimate" of competitors' identities in the Agri Stats reports.[16]

Ms. McConnell was also cagey about documents that appear to have been authored by Mr. Matsumoto, such as deanonymized Agri Stats export information in a spreadsheet tab titled "Sumio Export competitors."[17] Questioned about this file, Ms. McConnell stated, "it's not one of my documents."

Only Sumio Matsumoto can testify to his process for identifying competitors in the reports and as to whether he authored the spreadsheet tabs Ms. McConnell distanced herself from. Ms. McConnell said that his logic for deanonymizing the reports would include "what he knows and believes from the market, the world, his connections, his thoughts."[18] But at least some documents suggest that Mr. Matsumoto's "connections" may have included communications with competitors; in one email, Mr. Matsumoto instructs a connection to "keep monitoring on Smith's movements and their offer/sales auctions in China" noting that "US should face a big challenge to sell pork due to big supply of hogs. SFD [Smithfield] may dump products with very cheap price to China just to help US inventory."[19] Critically, Plaintiffs allege that one way pork packers kept pork supply artificially suppressed in the United States (despite not growing all hogs) was by disappearing pork on the export markets – exactly what Mr. Matsumoto describes here.

---

[16] McConnell Tr. at 74:16 to 75:17.

[17] McConnell Tr. 62:1-64:24.

[18] McConnell Tr. 93:17-94:25.

[19] Scarlett Decl., Ex. C. (TF-P-002357534).

010737-11 1449936V1

Where Sumio Matsumoto got this information about Smithfield, and whether information such as this allowed him to help Ms. McConnell deanonymize the Agri Stats reports are questions only he can answer.[20] For these reasons, the Court should use its discretion to issue the letters rogatory. "Plaintiffs have satisfied the minimal threshold of relevance, for discovery purposes" in seeking to depose Mr. Matsumoto.[21]

**B.     If the Court cannot issue the letters rogatory before the October 31 deadline, good cause exists to amend the scheduling order.**

During the party's meet and confer process, Plaintiffs warned Tyson that its insistence on the issuance of letters rogatory might delay proceedings and cause Mr. Matsumoto's deposition to require an amendment of the scheduling order.[22] Tyson indicated it would oppose any modification of the scheduling order to accommodate the delays caused by this process.

Tyson bears responsibility for the delay. Under Rule 26, Tyson had a duty to disclose the name and address of each individual likely to have discoverable information.[23] Even though Plaintiffs' first complaint described how defendants used Agri Stats to identify competitors within the reports and manipulate the market, Tyson

---

[20] Ms. McConnell did not tell Plaintiffs at her deposition that Mr. Matsumoto moved to Canada; Plaintiffs did not learn about Mr. Matsumoto's transfer to Canada until September 16.

[21] *In re Potash Antitrust Litig.*, 161 F.R.D. 405, 410 (D. Minn. 1995).

[22] Scarlett Decl., ¶ 13.

[23] *See* Fed. R. Civ. P. Rule 26 (1)(A)(i). And because Rule 26(e) requires a party to supplement discovery responses "in a timely manner," a party's "failure to disclose in a timely manner is equivalent to a failure to disclose." *United States v. STABL, Inc.*, 800 F.3d 476, 487 (8th Cir. 2015).

- 7 -

only disclosed one witness as having knowledge of Agri Stats: Deb McConnell. Despite collecting documents and continuing its investigation, Tyson never amended its disclosures to include Mr. Matsumoto. Yet Tyson knew that Mr. Matsumoto attended meetings to deanonymize the plants in Agri Stats reports and "validate" the "identification process."[24] Had Tyson disclosed Mr. Matsumoto and given his address early in the discovery period, Plaintiffs would have known he lived abroad and could have issued the letters rogatory earlier.

Instead, Plaintiffs had to dig through more than one million documents to learn about Mr. Matsumoto's involvement themselves.[25] The depth of Mr. Matsumoto's involvement was not known to Plaintiffs until Ms. McConnell testified in late July.[26] After receiving Ms. McConnell's deposition transcript and reviewing documents to better understand Mr. Matsumoto's role, Plaintiffs approached Tyson on September 9, 2022 to schedule the final three Tyson fact witness depositions, including Mr. Matsumoto.[27]

---

[24] Scarlett Decl., Ex. B (Deposition Exhibit 982).

[25] Tyson has produced 1,020,776 documents. Some of these productions have occurred well after the substantial completion deadline – including producing thousands of pages in the week before depositions. *See* Scarlett Decl., ¶ 11 Tyson's most recent document production took place on September 26, 2022. *Id*.

[26] Plaintiffs could not have avoided discovery issues by scheduling depositions earlier, because Tyson was still making significant document productions well after the substantial completion deadline. For example, four days before the first Tyson witness was set to be deposed in April 2022, Tyson produced more than 13,300 documents – 10,000 of these directly mentioned the deponent. *See* Scarlett Decl., ¶ 12 (Gingerich Tr. at 11:21-13:15). Plaintiffs did not get the benefit of reviewing these documents before the deposition. *Id*.

[27] Scarlett Decl., ¶ 6. According to the Court's Order, Plaintiffs were entitled to 10 depositions of Tyson witnesses. *See* Pretrial Scheduling Order, ECF No. 658 (January 26,

Initially, Tyson did not respond regarding Mr. Matsumoto's deposition. Plaintiffs reminded Tyson about the request on September 16, and only then did Tyson disclose that Mr. Matsumoto lived abroad.[28] Counsel for Tyson told Plaintiffs that Mr. Matsumoto was now an employee of Hillshire Canada (a Tyson subsidiary), that they represented him, but he would not willingly sit for a deposition.[29] The parties met and conferred three days later and upon reaching an impasse, sought a hearing from the Court that same day.[30]

This may still be resolved before the close of fact discovery; but "[e]ven in the worst-case scenario, the [Court] can address any problems by other means, such as extending the fact discovery cutoff"[31] for the limited purposes of completing this and any other yet completed depositions. Good cause exists here, where the delay is the result of the defendants' conduct.

### III.   CONCLUSION

For these reasons, Plaintiffs ask the court to issue the letters rogatory, and if it becomes necessary, order to allow the deposition of Sumio Matsumoto to be taken after the discovery deadline on October 31, 2022.

---

2021). At the beginning of September, Plaintiffs approached Tyson to schedule the final three Tyson depositions.

[28] Scarlett Decl., ¶ 7.

[29] Scarlett Decl., ¶¶ 7-8.

[30] Scarlett Decl., ¶ 13.

[31] *Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*, No. SACV1900835JVSDFMX, 2020 WL 5900155, at *2 (C.D. Cal. Aug. 17, 2020)

010737-11 1449936V1

DATED: October 13, 2022 Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Shana E. Scarlett*
    SHANA E. SCARLETT
Rio Pierce
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.om

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Joshua J. Rissman (#391500)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

*Interim Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs*

| | |
|---|---|
|     */s/ Bobby Pouya* |     */s/ Kyle G. Bates* |

Bobby Pouya (Pro Hac Vice)
Clifford H. Pearson (Pro Hac Vice)
Daniel L. Warshaw (Pro Hac Vice)
Michael H. Pearson (Pro Hac Vice)
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pswlaw.com
dwarshaw@pswlaw.com
bpouya@pswlaw.com
mpearson@pswlaw.com

Melissa S. Weiner (MN #0387900)
PEARSON, SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com

Benjamin E. Shiftan
PEARSON, SIMON & WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bshiftan@pswlaw.com

***Co-Lead Class Counsel for Direct Purchaser Plaintiffs***

Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
T: (415) 633-1908
kbates@hausfled.com

Peter B. Schneider
SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
3700 Buffalo Speedway, Suite 300
Houston, Texas 77098
T: (713) 338-2560
F: (415)421-7105
pschneider@schneiderwallace.com

Todd M. Schneider
Matthew S. Weiler
SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
2000 Powell St., Suite 1400
Emeryville, California 94608
T: (415) 421-7100
tschneider@schneiderwallace.com
mweiler@schneiderwallace.com

Garrett W. Wotkyns
SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
T: (480) 428-0145
gwotkyns@schneiderwallace.com

Domingo Emanuelli-Hernández
Attorney General
Guarionex Díaz Martínez
Assistant Attorney General
Antitrust Division

- 11 -

Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
T: (787) 721-2900, ext. 2600, 2601
F: (787) 721-3223
gdiaz@justicia.pr.gov

*Counsel for the Commonwealth of Puerto Rico*

     /s/ W. Joseph Bruckner
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Joseph C. Bourne (MN #0389922)
Arielle S. Wagner (MN #0398332)
Simeon A. Morbey (MN #0391338)
Stephen M. Owen (MN # 0399370)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
jcbourne@locklaw.com
aswagner@locklaw.com
samorbey@locklaw.com
smowen@locklaw.com

*Co-Lead Class Counsel for Direct Purchaser Plaintiffs*

     /s/ Matthew P. McCahill
Matthew P. McCahill
Robert N. Kaplan
Jason A. Uris
KAPLAN FOX & KILSHEIMER, LLP
850 Third Avenue, 14th Floor
New York, New York 10022
T: (212) 687-1980
rkaplan@kaplanfox.com
mmccahill@kaplanfox.com
juris@kaplanfox.com

     /s/ Shawn M. Raiter
Shawn M. Raiter (MN# 240424)
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6518
sraiter@larsonking.com

Jonathan W. Cuneo (*pro hac vice*)
Blaine Finley (*pro hac vice*)
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
bfinley@cuneolaw.com

*Co-Lead Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs*

Scott E. Gant
Michael S. Mitchell
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
T: 202-237-2727
sgant@bsfllp.com
mmitchell@bsfllp.com
sjones@bsfllp.com

Colleen Harrison
BOIES SCHILLER FLEXNER LLP

- 12 -

Eric R. Lifvendahl
Ryan F. Manion
L&G LAW GROUP, LLP
175 W. Jackson Blvd., Suite 950
Chicago, Illinois 60604
T: (312) 364-2500
elifvendahl@lgcounsel.com
rmanion@lgcounsel.com

Richard L. Coffman
THE COFFMAN LAW FIRM
3355 W. Alabama St., Suite 240
Houston, Texas 77098
T: (713) 528-6700
rcoffman@coffmanlawfirm.com

Bernard D. Marcus
Moira Cain-Mannix
Brian C. Hill
Rachel A. Beckman
MARCUS & SHAPIRA LLP
One Oxford Center, 35th Floor
Pittsburgh, Pennsylvania 15219
T: (412) 471-3490
marcus@marcus-shapira.com
cain-mannix@marcus-shapira.com
hill@marcus-shapira.com
beckman@marcus-shapira.com

***Counsel for MDL DAPs Action Meat Distributors, Inc., Topco Associates, LLC, Alex Lee, Inc./Merchants Distributors, LLC, Associated Food Stores, Inc., Brookshire Grocery Company, Colorado Boxed Beef Co., Certco, Inc., The Golub Corporation, Nicholas & Co., PFD Enterprises, Inc., SpartanNash Company, Springfield Grocer Company, The Distribution Group d/b/a Van Eerden Foodservice Co., Troyer Foods, Inc., URM Stores, Inc., and Giant Eagle, Inc*. on behalf of all Direct Action Plaintiffs**

333 Main Street
Armonk, NY 10504
T: 914-749-8204
charrison@bsfllp.com

Sarah L. Jones
BOIES SCHILLER FLEXNER LLP
725 South Figueroa Street
Los Angeles, California 90017
T: 213-629-9040
sjones@bsfllp.com

***Counsel for Sysco Corporation and Amory Investments LLC***

David C. Eddy
Dennis J. Lynch
Travis C. Wheeler
Chase C. Keibler
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, South Carolina 29201
Telephone: (803) 771-8900
Facsimile: (803) 253-8277
Email: deddy@nexsenpruet.com
Email: dlynch@nexsenpruet.com
Email: twheeler@nexsenpruet.com
Email: ckeibler@nexsenpruet.com

***Counsel for Plaintiffs Conagra Brands, Inc.; Nestlé USA, Inc.; Nestlé Purina PetCare Co.; Howard B. Samuels, acting solely in his capacity as Chapter 7 trustee for the bankruptcy of the estate of Central Grocers, Inc.; and Compass Group USA, Inc.***

Richard A. Arnold, Esquire
William J. Blechman, Esquire
Kevin A. Murray, Esquire
Douglas H. Patton, Esquire
Samuel J. Randall, Esquire
Michael A. Ponzoli, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, Florida  33131
Tel:     (305) 373-1000
Fax:    (305) 372-1861
rarnold@knpa.com
wblechman@knpa.com
kmurray@knpa.com
dpatton@knpa.com
srandall@knpa.com
mponzoli@knpa.com

- 13 -

*Counsel for The Kroger Co., Albertsons Companies, Inc., Hy-Vee Inc., Save Mart Supermarkets, and US Foods, Inc.*

Patrick J. Ahern
Theodore B. Bell
AHERN & ASSOCIATES, P.C.
Willoughby Tower
8 South Michigan Avenue, Suite 3600
Chicago, Illinois 60603
T: (312) 404-3760
patrick.ahern@ahernandassociatespc.com
theo.bell@ahernandassociatespc.com

*Counsel for Plaintiffs Winn-Dixie Stores, Inc.; Bi-Lo Holdings, LLC; and Kraft Heinz Foods Company*

William C. Lavery
Christopher P. Wilson
Danielle Morello
Wyatt M. Carlock
BAKER BOTTS LLP
700 K Street NW
Washington, DC 20001
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
william.lavery@bakerbotts.com
christopher.wilson@bakerbotts.com
danielle.morello@bakerbotts.com
wyatt.carlock@bakerbotts.com

*Attorneys for Plaintiff ALDI, Inc.*

Philip J. Iovieno
Nicholas A. Gravante, Jr.
Karen C. Dyer
Lawrence S. Brandman
Jack G. Stern
Gillian Groarke Burns
Mark A. Singer
Elizabeth R. Moore
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
T: (212) 504-6000
philip.iovieno@cwt.com
nicholas.gravante@cwt.com
karen.dyer@cwt.com
lawrence.brandman@cwt.com
jack.stern@cwt.com
gillian.burns@cwt.com
mark.singer@cwt.com

David B. Esau
Email: desau@carltonfields.com
Kristin A. Gore
Email: kgore@carltonfields.com
Garth T. Yearick
Email: gyearick@carltonfields.com
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Tel: (561) 659-7070
Fax: (561) 659-7368

Roger S. Kobert
Email: rkobert@carltonfields.com
405 Lexington Avenue, 36th Floor
New York, New York 10174-3699
Tel: (212) 785-2577
Fax: (212) 785-5203

Aaron A. Holman
Email: aholman@carltonfields.com
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Tel: (407) 849-0300
Fax: (407) 648-9099

*Counsel for Cheney Brothers, Inc.; Subway Protein Litigation Corp., as Litigation Trustee of the Subway® Protein Litigation Trust; Buffalo Wild Wings, Inc.; Jimmy John's Buying Group SPV, LLC; Sonic Industries Services Inc.; CKE Restaurants Holdings, Inc.; Wawa, Inc; and Restaurant Services, Inc.*

Paul E. Slater
Joseph M. Vanek
David P. Germaine
Alberto Rodriguez
Jeffrey H. Bergman
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
pes@sperling-law.com
jvanek@sperling-law.com
dgermaine@sperling-law.com
arodriguez@sperling-law.com
jbergman@sperling-law.com

elizabeth.moore@cwt.com

***Counsel for MDL DAPs Jetro Holdings, LLC and BJ's Wholesale Club, Inc. and Co-Counsel for Plaintiffs Kraft Heinz Foods Company; Winn-Dixie Stores, Inc.; and Bi-Lo Holdings, LLC***

Phillip F. Cramer
Christina Lopez
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
Tel: (615) 742-4200
pcramer@srvhlaw.com
clopez@srvhlaw.com

***Counsel for Associated Grocers of the South, Inc., Dollar General Corporation, Dolgencorp, LLC, Meijer, Inc., Meijer Distribution Inc., Publix Super Markets, Inc., Raley's, United Natural Foods, Inc., SuperValu, Inc., Associated Grocers of Florida, Inc., Unified Grocers, Inc., Tony's Fine Foods, and Wakefern Food Corp.***

- 15 -