- 1 -

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>*This Document Relates to:*<br><br>All Actions | Case No. 0:18-cv-01776 (JRT/JFD)<br><br>**DECLARATION OF SHANA E. SCARLETT IN SUPPORT OF MOTION FOR LETTERS ROGATORY FOR TYSON EMPLOYEE SUMIO MATSUMOTO** |

**REDACTED PUBLIC VERSION**

- 1 -

I, Shana E. Scarlett, state under oath, as follows:

1. I am a partner at Hagens Berman Sobol Shapiro LLP. I am admitted to this Court *pro hac vice*, and am one of the Interim Co-Lead Counsel (along with Gustafson Gluek PLLC) for the Consumer Indirect Purchaser Plaintiffs appointed by the Court to represent the Consumer Indirect Class in this litigation. I submit this declaration in support of Plaintiffs' Motion for Letters of Rogatory for Tyson Employee Sumio Matsumoto. I have full knowledge of the matters stated herein and would testify to these facts if called upon.

2. From the very first Complaint filed in this case Plaintiffs have alleged the Defendants used Agri Stats to facilitate their price fixing scheme, and "while nominally anonymous, the reports [from Agri Stats] contain such detailed figures covering every aspect of pork production and sales that producers can accurately identify the companies behind the metrics."

3. In their initial disclosures, Tyson identified only <u>one</u> employee as the person with knowledge of Tyson's Agri Stats report analysis: ███████████. Tyson did *not* identify Sumio Matsumoto as a potential source of information on Agri Stats deanonymization, either in its initial disclosures or amended disclosures. Rather, Plaintiffs learned of Mr. Matsumoto's participation in Tyson's efforts to deanonymize the reports while preparing for the deposition of ███████████.

4. ███████████ deposition took place on June 23, 2022. Plaintiffs learned while preparing for ███████████ deposition that Tyson learned its competitors' competitively sensitive data related to profits, pricing, and production monthly by

- 1 -

deanonymizing the Agri Stats reports. During the deposition, Plaintiffs asked ▓▓▓ ▓▓▓▓▓▓ repeatedly to explain Tyson's process for deanonymizing the Agri Stats reports.

5. Multiple times over the course of the deposition, ▓▓▓▓▓▓▓▓▓ credited Tyson employee Sumio Matsumoto as someone who helped her estimate the identity of competitors in the Agri Stats data.

6. After receiving ▓▓▓▓▓▓▓▓▓ deposition transcript and reviewing documents to better understand Mr. Matsumoto's role, Plaintiffs approached Tyson on September 9, 2022 to schedule the final three Tyson fact witness depositions, including Mr. Matsumoto.

7. Initially, Tyson did not respond regarding Mr. Matsumoto's deposition. Plaintiffs reminded Tyson about the request on September 16. In reply that same day, counsel for Tyson told Plaintiffs that Mr. Matsumoto lives in Canada, works for a Canadian subsidiary of Tyson (Hillshire Canada), and will not sit for a deposition willingly.

8. Plaintiffs met and conferred with Tyson's counsel on September 28 in a final attempt to resolve this dispute without court intervention. During the parties' conference, Tyson did not dispute that it has control over Mr. Matsumoto. Tyson's counsel said that Tyson would not require Mr. Matsumoto to sit for a deposition "or be fired" because they did not believe he held a position with sufficient seniority and suggested his testimony on exports could be obtained by U.S. witnesses.

9. Only Sumio Matsumoto can testify to his process for identifying competitors in the reports and as to whether he authored the spreadsheet tabs ▮ ▮ distanced herself from. As a compromise, Plaintiffs offered to hold the deposition remotely over Zoom, or in a Canadian office at Plaintiffs' expense before the October 31 discovery deadline.

10. Although this dispute could be resolved before the close of fact discovery, if it is not, good cause exists to amend the scheduling order to allow the deposition of Mr. Matsumoto. Under Rule 26, Tyson had a duty to disclose the name and address of each individual likely to have discoverable information. Even though Plaintiffs' first complaint described how defendants used Agri Stats to identify competitors within the reports and manipulate the market, Tyson only disclosed one witness as having knowledge of Agri Stats: ▮ Despite collecting documents and continuing its investigation, Tyson never amended its disclosures to include Mr. Matsumoto. Had Tyson disclosed Mr. Matsumoto and given his address early in the discovery period, Plaintiffs would have known he lived abroad and could have issued the letters rogatory earlier.

11. Instead, Plaintiffs had to dig through more than one million documents learn about Mr. Matsumoto's involvement themselves. Tyson has produced 1,020,776 documents. Some of these productions have occurred well after the substantial completion deadline – including producing thousands of pages in the week before depositions. Tyson's most recent document production took place on September 26, 2022.

12. Plaintiffs could not have avoided discovery issues by scheduling depositions earlier, because Tyson was still making significant document productions well after the substantial completion deadline. For example, four days before the first Tyson witness was set to be deposed in April 2022, Tyson produced more than 13,3000 documents – 10,000 of these directly mentioned the deponent. Plaintiffs did not get the benefit of reviewing these documents before the deposition.

13. The parties met and conferred three days after Tyson disclosed to Plaintiffs that Mr. Matsumoto lived abroad and would not willingly sit for a deposition. The parties met and conferred three days later and upon reaching an impasse, sought a hearing from the Court that same day. Plaintiffs warned Tyson that its insistence on the issuance of letters rogatory might delay proceedings and cause Mr. Matsumoto's deposition to require an amendment of the scheduling order.

14. In support of this Motion, Plaintiffs submit the following under seal, because Tyson has designated these exhibits as Confidential or Highly Confidential, pursuant to the protective order:

Exhibit A – Excerpts from the Transcript of ▮▮▮▮▮

Exhibit B – Deposition Exhibit 982

Exhibit C – TF-P-002357534

Exhibit D – Excerpts from the Transcript of Mark Gingerich

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: October 13, 2022

              */s/ Shana E. Scarlett*
              SHANA E. SCARLETT

- 5 -