1         UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
2
       ------------------------------------------------------------
3                                       )
    In Re:  Pork Antitrust            )   File No. 18CV1776
4    Litigation                        )        21MD2998
                                        )        (JRT/JFD)
5                                       )
                                        )
6                                       )   Minneapolis, Minnesota
                                        )   October 17, 2022
7                                       )   10:06 A.M.
                                        )
8                                       )
       ------------------------------------------------------------
9
            BEFORE THE HONORABLE JUDGE JOHN R. TUNHEIM
10              UNITED STATES DISTRICT COURT JUDGE
                              AND
11           MAGISTRATE JUDGE JOHN F. DOCHERTY
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
12      **(CASE MANAGEMENT CONFERENCE & FINAL FAIRNESS HEARING)**

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1      APPEARANCES
          For Direct Purchaser      Lockridge Grindal Nauen PLLP
 2      Plaintiffs:                 JOSEPH BRUCKNER, ESQ.
                                    JOSEPH C. BOURNE, ESQ.
 3                                  100 Washington Avenue South
                                    Suite 2200
 4                                  Minneapolis, MN 55401

 5                                  Pearson Simon & Warshaw
                                    BOBBY POUYA, ESQ.
 6                                  CLIFFORD H. PEARSON, ESQ.
                                    15165 Ventura Boulevard
 7                                  Suite 400
                                    Sherman Oaks, CA 91403
 8
          On behalf of the         Gustafson Gluek PLLC
 9      Consumer Indirect          DANIEL C. HEDLUND, ESQ.
        Plaintiffs:                 MICHELLE J. LOOBY, ESQ.
10                                  JOSHUA J. RISSMAN, ESQ.
                                    120 South Sixth Street
11                                  Suite 2600
                                    Minneapolis, MN 55402
12
          On behalf of the         Cuneo Gilbert & LaDuca, LLP
13      Commercial and             ALEC BLAINE FINLEY, ESQ.
        Institutional Indirect      4725 Wisconsin Avenue NW
14      Purchaser Plaintiffs:       Suite 200
                                    Washington, DC 20016
15
                                    Larson King, LLP
16                                  SHAWN M. RAITER, ESQ.
                                    30 East Seventh Street
17                                  Suite 2800
                                    St. Paul, MN 55101
18
          For the Commonwealth of  Hausfeld
19      Puerto Rico:               KYLE G. BATES, ESQ.
                                    600 Montgomery Street
20                                  Suite 3200
                                    San Francisco, CA 94111
21
          For the Dollar General   Sperling & Slater
22      DAPs:                      ALBERTO RODRIGUEZ, ESQ.
                                    55 West Monroe Street
23                                  Chicago, IL 69693

24

25
```

```
 1        For the Cheney Bros.      Carlton Fields
          DAPs:                     GARTH T. YEARICK, ESQ.
 2                                  525 Okeechobee Boulevard
                                    West Palm Beach, FL 33401
 3
          For the Kroger DAPs:      Kenny Nachwalter
 4                                  SAMUEL J. RANDALL, ESQ.
                                    1441 Breckell Avenue
 5                                  Suite 1100
                                    Miami, FL 33131
 6
          For the Topco DAPs:       Kaplan Fox & Kilsheimer LLP
 7                                  ROBERT N. KAPLAN, ESQ.
                                    850 Third Avenue
 8                                  New York, NY 10022
 9        For Aldi Inc.:            Baker Botts
                                    WYATT M. CARLOCK, ESQ.
10                                  700 K Street N.W.
                                    Washington, DC 20001
11
          For Nestle DAPs:          Nexsen Pruet LLC
12                                  DAVID C. EDDY, ESQ.
                                    1230 Main Street
13                                  Suite 700
                                    Columbia, SC 29202
14
          For the Sysco DAPs:       Bois Schiller Flexner
15                                  SCOTT E. GANT, ESQ.
                                    1401 New York Avenue NW
16                                  Washington, DC 20005
17
          For Deft Clemens Food     Greene Espel
18        Group, LLC:               MARK L. JOHNSON, ESQ.
                                    222 South Ninth Street
19                                  Suite 2200
                                    Minneapolis, MN 55402
20
          For Defendant Hormel      Faegre Drinker Biddle & Reath
21        Foods:                    EMILY ELIZABETH CHOW, ESQ.
                                    90 South Seventh Street
22                                  Suite 2200
                                    Minneapolis, MN 55402
23

24

25
```

```
 1      For Defendant JBS USA:     Spencer Fane LLP
                                   JESSICA J. NELSON, ESQ.
 2                                 100 South Fifth Street
                                   Suite 1900
 3                                 Minneapolis, MN 55402

 4                                 Quinn Emanuel Urquhart &
                                   Sullivan
 5                                 SAMI H. RASHID, ESQ.
                                   51 Madison Avenue
 6                                 22nd Floor
                                   New York, NY 10010
 7
        For Defendant              Larkin Hoffman Daly & Lindgren
 8      Smithfield Foods:          JOHN A. COTTER, ESQ.
                                   JOHN A. KVINGE, ESQ.
 9                                 8300 Norman Center Dr., Ste 1000
                                   Minneapolis, MN 55437
10
        For Deft Seaboard          Stinson LLP
11      Foods:                     PETER J. SCHWINGLER, ESQ.
                                   50 South Sixth Street
12                                 Suite 2600
                                   Minneapolis, MN 55402
13
        For Deft Triumph Foods:    Husch Blackwell
14                                 CHRISTOPHER A. SMITH, ESQ.
                                   190 Carondelet Plaza
15                                 Suite 600
                                   St. Louis, MO 63105
16
        For Deft Tyson Foods:      Axinn Veltrop & Harkrider
17                                 JAROD TAYLOR, ESQ.
                                   90 State House Square
18                                 Hartford, CT 06103

19                                 Dykema Gossett
                                   DAVID P. GRAHAM, ESQ.
20                                 900 South Seventh Street
                                   Suite 4000
21                                 Minneapolis, MN 55402

22

23

24

25
```

1                        **10:06 A.M.**

2

3                    **(In open court.)**

4              THE COURT:  You may be seated.  Good morning,

5       everyone.  It is good to see you all today.  This is

6       Multi-District Litigation 21-2998, and we're here for an

7       initial case management conference.  I wouldn't say initial

8       since things have been going on for a while, but at least

9       an in-person conference.

10             So we should have counsel note appearances.  I

11      will just try to make it a little bit orderly here.  First

12      for the Direct Purchaser Plaintiffs.

13             MR. POUYA:  Bobby Pouya, Pearson Simon & Warshaw,

14      for the direct purchasers.

15             MR. CLIFFORD PEARSON:  Good morning, Your Honor.

16      Clifford Pearson, DPPs.

17             MR. BRUCKNER:  Good morning, Your Honor.  Joe

18      Bruckner, Lockridge Grindal Nauen, for the direct

19      purchasers.

20             MR. BOURNE:  Good morning, Your Honor.  Joe

21      Bourne for Direct Purchaser Plaintiffs.

22             THE COURT:  All right.  Excellent.  Thank you.

23             The Consumer Indirect Purchaser Plaintiffs.

24             MR. HEDLUND:  Good morning, Your Honor.  Dan

25      Hedlund, Gustafson Glick.

1           MR. RISSMAN:  Good morning, Your Honor.  Josh

2     Rissman, Gustafson Glick.

3           MS. LOOBY:  Michelle Looby, Gustafson Glick.

4           THE COURT:  All right.  Great.  Excellent.

5           So the Commercial and Institutional Indirect

6     Purchaser Plaintiffs.

7           MR. RAITER:  Good morning, Your Honor.  Shawn

8     Raiter, Larson King.

9           MR. FINLEY:  Good morning, Your Honor.  Blaine

10    Finley, Cuneo Gilbert & LaDuca.

11          THE COURT:  All right.  We have got you.

12          Direct Action Plaintiffs, let's see.

13    Commonwealth of Puerto Rico?

14          MR. BATES:  Good morning, Your Honor.  Kyle Bates

15    for the Commonwealth of Puerto Rico.

16          THE COURT:  All right.  Very well.

17          And I don't think we have anyone here from

18    Winn-Dixie Direct Action Plaintiffs, I don't believe, and

19    the Dollar General Direct Action Plaintiffs.

20          MR. RODRIGUEZ:  Good morning, Your Honor.

21    Alberto Rodriguez from Sperling & Slater.

22          THE COURT:  All right.  Good morning.

23          Cheney Brothers?

24          MR. YEARICK:  Good morning, Your Honor.  Garth

25    Yearick from Carlton Fields.

```
 1                    THE COURT:  Okay.

 2                    And Kroger Direct Action Plaintiffs?

 3                    MR. RANDALL:  Good morning, Your Honor.  Samuel

 4          Randall from Kenny Nachwalter.

 5                    THE COURT:  All right.

 6                    Topco.

 7                    MR. KAPLAN:  Robert Kaplan, Kaplan Fox &

 8          Kilsheimer LLP.  Your Honor, good morning.

 9                    THE COURT:  Good morning.

10                    Okay.  Aldi?

11                    MR. CARLOCK:  Good morning, Your Honor.  Wyatt

12          Carlock from Baker Botts.

13                    THE COURT:  Very well.

14                    And Sysco.

15                    MR. GANT:  Good morning, Your Honor.  Scott Gant

16          from Bois Schiller Flexner.

17                    THE COURT:  Very well.

18                    And Nestle?

19                    MR. EDDY:  Good morning, Your Honor.  David Eddy

20          from Nexsen Pruet for the Nestle DAPs.

21                    THE COURT:  Very well.  I don't think we have

22          anyone here from Kraft.

23                    All right.  Defendants.  Clemens Food Group?

24                    MR. JOHNSON:  Good morning, Your Honor.  Mark

25          Johnson, Greene Espel, and folks from Kirkland Ellis are on
```

 1    the line.

 2             THE COURT:  Okay.  Very well.

 3             Hormel?

 4             MS. CHOW:  Good morning, Your Honor.  Emily Chow

 5    from Faegre Drinker.

 6             THE COURT:  All right.  Good morning to you.

 7             JBS?

 8             MR. RASHID:  Good morning, Your Honor.  Sami

 9    Rashid from Quinn Emanuel Urquhart & Sullivan.

10             MS. NELSON:  Good morning, Your Honor.  Jessica

11    Nelson from Spencer Fane.

12             THE COURT:  All right.  Very well.

13             And Seaboard?

14             MR. SCHWINGLER:  Good morning, Your Honor.  Peter

15    Schwingler from Stinson.

16             THE COURT:  Good morning to you.  Seeing everyone

17    that I have seen over Zoom many times.  It's nice to see

18    you in person.

19             Let's see.  Smithfield?

20             MR. COTTER:  Good morning, Your Honor.  John

21    Cotter from Larkin Hoffman.  I am also here with John

22    Kvinge from Larkin Hoffman, and Brian Robison is on the

23    phone.

24             THE COURT:  All right.  Very well.

25    Triumph Foods?

1          MR. SMITH:  Good morning, Your Honors.

2     Christopher Smith, Husch Blackwell.

3          THE COURT:  Very well.

4          And Tyson.

5          MR. TAYLOR:  Good morning.  Jarod Taylor from

6     Axinn Veltrop & Harkrider.  My colleague Tiffany Rider is

7     also on by phone, and David Graham from Dykema is also here

8     with me this morning.

9          THE COURT:  Very well.  Did I miss anybody?

10          All right.  Very well.  Again, thank you for

11     coming in today.  I apologize it's a little bit of a chilly

12     morning here in Minnesota, but it will get colder, so we

13     will fortunately try to do just about everything we can

14     over Zoom as we go forward and save time and costs and will

15     enable people to participate more fully.

16          So I wanted to have Magistrate Judge Docherty

17     with here today.  This is a little unusual.  In the MDLs

18     I've handled in the past, I have handled nearly all of it

19     myself without the assistance of a magistrate judge, but

20     since this case and the Beef case have been proceeding for

21     some time with the expert direction of our magistrate

22     judges, I thought it helpful to keep that process going.

23          And so Magistrate Judge Docherty has joined us in

24     this case with the retirement of Judge Bowbeer.

25          So I wanted to go through first the issues for

1  discussion today in the status conference.  There is a

2  number of matters we want to try to resolve this morning.

3  I anticipate Magistrate Judge Docherty kind of running the

4  schedule going forward, along with handling all

5  nondispositive matters, and let's see.

6          And we will probably issue a quick order after

7  the hearing on the leadership structure, but I wanted to

8  hear from everyone first, anything that anyone would like

9  to say today, but first, I'm not sure there is anything we

10  need to address on procedural status.

11          I think there are 30 cases that have been filed

12  by Direct Action Plaintiffs that have been centralized.  I

13  think that's accurate.  Anyone wish to talk about the

14  procedural status at this stage?

15          All right.  Now, discovery status, I know you

16  have been addressing this, Judge Docherty.  Anything you

17  want to say about the discovery at this point?

18          MAGISTRATE JUDGE DOCHERTY:  Good morning,

19  everyone.  The only thing, my understanding of the status

20  of any outstanding discovery matters is as follows, and if

21  I miss anything or if there is anything to contribute,

22  please speak up.

23          It looks like there are a fair number of

24  depositions that are going to have to be taken after

25  October the 31st, which is the cutoff for fact discovery.

1    Judge Tunheim and I spoke about that before taking the

2    bench this morning.  An extension to allow that is not

3    going to be a problem.

4            I believe that there was in the written, in the

5    past tense, in your joint letter to me a motion to compel

6    concerning non-fed data.  That has been ruled on.  It's

7    under seal, but it has been ruled on.  It's on the docket,

8    and I assume it's accessible to all of you.

9            And then there is a pending request for letters

10   rogatory that I have not honestly done much with yet, but

11   it's going to be a priority given the clunkiness of the

12   letters rogatory process.

13           So that's my take on sort of the action items for

14   fact discovery.  Is there anything that I have missed or

15   that we should talk about before going on?

16           Yes, sir.  And your name --

17           MR. EDDY:  David Eddy, Nexsen Pruet LLC, for the

18   Nestle DAPs.

19           Your Honor, I think you may have conflated the

20   order that you entered yesterday in Beef on the motion to

21   compel.

22           MAGISTRATE JUDGE DOCHERTY:  I am sorry.

23           MR. EDDY:  I have a pending motion to compel

24   which you heard on October 5 which is under advisement, and

25   I just wanted to set that straight for the record.

 1            MAGISTRATE JUDGE DOCHERTY:  Thank you.  I

 2     appreciate that.  I did indeed conflate those two, and it

 3     probably won't be the last time.  I'm sorry.

 4            Sir?

 5            MR. BOURNE:  Good morning.  Joe Bourne from

 6     Lockridge Grindal Nauen for the Direct Purchaser

 7     Plaintiffs.

 8            I wanted to add, Your Honor, in addition to

 9     certain fact witness depositions that are going to have to

10     occur after October 31st, the parties have been discussing

11     an extension for answers to certain written discovery, such

12     as contention interrogatories, to conclude after the

13     depositions are complete, and we anticipate no issues among

14     the parties reaching agreement as to that.

15            MAGISTRATE JUDGE DOCHERTY:  All right.  Do the

16     parties have a view as to what the appropriate length of an

17     extension in fact discovery would be?  Since you're at the

18     podium, I guess you get to start.

19            MR. BOURNE:  Your Honor, the parties have not

20     discussed a wholesale extension of fact discovery.

21     Instead, we anticipated seeking certain or conducting

22     certain depositions and answering certain written discovery

23     after the close of fact discovery so that, you know, it

24     wouldn't be a wholesale continuation.  It would just be

25     certain limited items.

1        However, the parties have not -- if Your Honor

2     believes that a general extension of a certain amount of

3     time would be appropriate, I would imagine that 30 days or

4     somewhere between 30 and 60 days might be appropriate.

5     However, the parties have not met and conferred about that.

6        MAGISTRATE JUDGE DOCHERTY:  Okay.  Is this

7     something the parties should perhaps meet and confer on

8     before the November 17th status conference with the

9     understanding that there won't be any problem with taking

10    depositions between October 31st and November 17th?

11       MR. BOURNE:  Yes, Your Honor.  We will do that.

12       MAGISTRATE JUDGE DOCHERTY:  Okay.  Anyone object

13    to that framework for going forward?

14       All right.

15       MR. TAYLOR:  Your Honor, Jared Taylor for the

16    Tyson defendants.  Defendants do not object to speaking

17    with plaintiffs about this issue in advance of the next

18    conference, but I think we would just want to note that,

19    you know, our position might be that no general extension

20    is warranted.

21       I think defendants are happy with the certainty

22    that there won't be, for example, any additional written

23    discovery and would instead prefer to address discrete

24    issues individually, as Mr. Bourne explained that we have

25    been doing to date.

1          So just a preview as to what our position is

2     likely to be.

3          MAGISTRATE JUDGE DOCHERTY:  Understood.  Thank

4     you.

5          MR. FINLEY:  Good morning, Blaine Finley, on

6     behalf of the Commercial Indirect Purchaser class.  In

7     addition with any potential extension of discovery, my

8     class, and possibly the consumer class, would be interested

9     in meeting and conferring to receive clarification and

10    whether that extension would allow us to ask questions at

11    the depositions of any opt-out plaintiffs that may resell

12    the products in question to our class members.

13         My group at least would take the position that

14    such question would be appropriate in the vein of

15    efficiency so that we can have one deposition where there

16    is defendant questioning and if necessary questioning from

17    my class of these distributors that buy these products from

18    defendants and resell to my group's class members.

19         MAGISTRATE JUDGE DOCHERTY:  Okay.  I'm hearing a

20    fair amount of information that probably is better suited

21    for a meet and confer and is not quite ready for prime time

22    here this morning.

23         MR. GANT:  Scott Gant from Bois Schiller Flexner

24    for Sysco and Emery DAPs.

25         To your point, Your Honor, the issue that

 1    Mr. Finley just raised was not previewed with us, came as a

 2    surprise to me to hear him raising it just now.  This has

 3    been the subject of discussion between the two indirect

 4    classes and Direct Action Plaintiffs for months.

 5            It had been dropped and not addressed for at

 6    least 45 days.  So I was surprised to hear it, and I take

 7    your suggestion, Your Honor, that we discuss this outside

 8    of the context of today's conference.

 9            THE COURT:  All right.

10            Mr. Hedlund?

11            MR. HEDLUND:  Good morning, Your Honors.  Great

12    to see you all in person.

13            We would join Mr. Finley's statement with regard

14    to wanting to follow up on those DAP depositions in terms

15    of the pass-through issues, but agree that we can discuss

16    them in a meet and confer.

17            MAGISTRATE JUDGE DOCHERTY:  Okay.  All right.

18            THE COURT:  Okay.  Very well.  We will get this

19    moving.

20            Anything on the status of motions?  Let's talk

21    about the class action hearing because we've got that

22    process moving along quite well, and I think we have

23    different views as to the timing of the hearing.

24            Anyone wish to speak to that this morning?

25    Mr. Pouya?

1          MR. POUYA:  Thank you, Your Honor.  Bobby Pouya

2     for the Direct Purchaser Plaintiffs.

3          So the parties' position on the class

4     certification hearing and scheduling process were set forth

5     in docket number 1511 filed on September 23rd.  For the

6     class plaintiffs what we proposed is that we have a hearing

7     on December 19th of this year.  That is slightly earlier

8     than we had anticipated, but there is two, two reasons for

9     that.

10          One is in terms of a change in the structure of

11     the schedule.  What we had anticipated was for the

12     plaintiffs to potentially file a *Daubert* motion against the

13     defense experts.  What we decided is, that's not necessary.

14     So those dates that were related to that motion practice

15     have moved off the calendar.

16          They're no longer applicable, and that's what

17     previously took the briefing through February 6th of 2023.

18     The other thing that we have done is, we have determined

19     that we're willing to shorten the timing for our opposition

20     to the *Daubert* motions, to file those oppositions on

21     November 1st rather than November 18th, and relatedly any

22     rebuttal expert reports will be moved up from November 18th

23     to November 1st.

24          And then defendants' schedule for their replies

25     in support of their *Daubert* motions would move up in kind.

1    The reply briefing for our class certification would stay

2    the same, and it would be put in approximately a month

3    before the class certification hearing.  The *Daubert*

4    motions will be completed.

5            Part of the reasons we're willing to do it is, we

6    can accommodate it based on the current schedule.  We

7    believe it's sufficient.  Takes away briefing over the

8    holidays, but we also understood in contacting the Court

9    that the Court will be in trial from January through March

10   of 2023 and that this was the only, potentially the only

11   hearing available this year, and if not, it would float.

12   It would have to be in April of 2023.

13           So we believe it's important to get a -- and

14   appropriate to get that hearing on the calendar so we can

15   keep things moving because one thing we may also be talking

16   about today or at least at the next conference is what

17   happens after class cert.

18           So obviously we have to take the step of class

19   cert to get to the next step, and we believe the hearing at

20   that point is appropriate.  We have also submitted, the

21   cases are set forth in the briefing, that an evidentiary

22   hearing is neither necessary or appropriate in this

23   instance.

24           And we would have simply a normal hearing, which

25   is common in the class certification motions at this stage,

1   to have a hearing on December 19th or as soon as the matter

2   could be heard by the Court so that we can keep the

3   schedule moving.

4          Thank you, Your Honor.

5          THE COURT:  All right.

6          MR. TAYLOR:  Thank you, Your Honors.  Again,

7   Jared Taylor.

8          Defendants obviously disagree, and our position

9   is largely set forth in the joint letter to which Mr. Pouya

10  referred.  Just briefly, there is no reason to accelerate

11  the class certification proceedings as plaintiffs propose.

12  We all agreed to the schedule that is currently set in

13  June.

14         The Court's criminal trial between, in January

15  and March will not delay those proceedings materially, if

16  at all, practically speaking.  An April hearing date for

17  papers that close in January is not a material delay.

18         There was a similar time, I believe, between the

19  close of the papers on the motions to dismiss and the

20  hearing on the motions to dismiss.  Three months interim in

21  that period is not going to significantly alter the shape

22  of this case.

23         What it would do is truncate the time that

24  defendants have to depose plaintiffs' experts and work on

25  their reply in the *Daubert* motions.  As Mr. Pouya noted,

1    plaintiffs' proposed alterations to the deadline do not

2    move up plaintiffs' deadline to file and serve their reply

3    in support of their motion for class certification.

4         Defendants need that reply to understand the

5    context of their experts' positions in their report so that

6    they can adequately depose those experts.  So that

7    effectively gives defendants less time than they would

8    otherwise currently have to depose those experts and then

9    to incorporate that deposition into their own replies on

10   the *Daubert* motions by December 12th.

11        Plaintiffs then propose having a hearing just

12   five business days after that.  As Your Honors are aware,

13   these papers are voluminous.  They are complicated.

14   Defendants submit a five-day period between the close of

15   the papers and a hearing on something this critical and

16   complicated will rob both defendants of their opportunity

17   to adequately present their case and the Court of the

18   opportunity to adequately consider it.

19        I note we have already been here for what is a

20   relatively simple status conference, about 30 minutes.

21   Defendants respectfully submit that an hour and 30 minutes

22   is not sufficient time to adequately vet all of the issues

23   that will be before the Court.

24        We intend to request an evidentiary hearing, as

25   noted in the joint letter, and even if an evidentiary

1   hearing were not granted, although those are typical in

2   cases like this, even attorney argument will likely take

3   more than an hour and a half, defendants submit, to be

4   safe.

5          The one last point in opposition to moving the

6   schedule is that on October 4th, so just earlier this

7   month, plaintiffs asked defendants to make their experts

8   available for deposition in the event that the hearing is

9   set for December 19th.

10          Defendants were able to do so for a date in late

11   October for one of their experts.  For the other expert,

12   they were simply unable to, having gotten that request only

13   on October 4th.  The rest of October was full with respect

14   to our expert's professional calendar.

15          He has other obligations that I understand are

16   not something as simple as a vacation or days off but

17   actual professional commitments throughout the month.  So,

18   you know, that's just another example of the kind of wrench

19   that would unnecessarily be thrown into the works with a

20   late alteration to the schedule such as this.

21          Thank you, Your Honors.

22          THE COURT:  All right.  Do you wish to reply?

23          MR. POUYA:  Just briefly, Your Honors.  So I

24   think the positions have been set forth based on the

25   argument and in the papers.  The only things I would add

1    is, we're obviously willing to work with the Court to put

2    together whatever, whatever structure is appropriate.  We

3    were simply concerned about this, this four-month spread

4    that is potentially between these hearings.

5            So we would appreciate whatever consideration

6    that the Court may provide to put something that works on

7    calendar to keep the case moving.  That's our primary

8    concern.

9            THE COURT:  All right.  Anyone else wish to speak

10   on this subject?

11           Okay.  Here's what I'm inclined to do:  I'm

12   inclined to have the hearing sometime in late January.  It

13   could spill into early February, but that time frame.  I do

14   have a criminal trial, the magazine fraud case, although

15   one never knows if that is going to actually go.

16           One of the persons scheduled for that trial, the

17   big first trial, has just pled guilty, and that may change

18   how that works, but I would just as soon have this moving

19   along.  I think December 19th, I appreciate the concern for

20   speed in moving everything along, I think that's a little

21   bit too early.

22           And so I would be inclined to set a date that

23   works for the parties probably in late January.  I think

24   that works best for the Court's schedule, and even if I'm

25   in trial, I will take the day off for this hearing, and I

1    will probably set up --

2           I guess at this point I'm not inclined to do an

3    evidentiary hearing.  I don't really think that's

4    necessary, but certainly will set aside enough time, and

5    the parties should talk about how much time they think they

6    need for the arguments, and we'll accommodate that.

7           MR. POUYA:  Thank you, Your Honor.  We appreciate

8    the Court's consideration.

9           THE COURT:  You can, Heather, you can work with

10   them in setting up a date that will work in the latter part

11   of January.  Okay?

12          All right.

13          MR. TAYLOR:  Your Honor, may I ask one clarifying

14   question?

15          THE COURT:  Sure.  Absolutely.

16          MR. TAYLOR:  Defendants obviously haven't had the

17   opportunity to discuss the Court's inclination.  I think

18   January and February will work well for defendants, and we

19   can be prepared by then.

20          With respect to the evidentiary hearing, I

21   frankly don't know the consensus among the group as to how

22   critical that is and whether we think it would be something

23   worth fighting for, but we don't want to do something that

24   the Court is not telling us to do.

25          Would the Court accept papers should we think

1      that it's a critical issue for defendants?

2               THE COURT:  That would be fine.  If you can get

3      that in quickly, that would be helpful and then any reply

4      by the plaintiffs so we can make that a conclusive

5      decision.  I'm not inclined to do it, but I will listen to

6      your argument if you have arguments you wish to make on

7      that.

8               MR. TAYLOR:  Thank you, Your Honor.

9               THE COURT:  Okay.  All right.  We'll leave enough

10     time for this, but you should talk about how much time you

11     think you need for the arguments, and we'll set aside the

12     time.

13              All right.  Let's see.  I've noted at least the

14     mention of some potential Rule 11 issues that are lurking.

15     So let's talk about the consolidated complaint first which

16     might resolve this.  I think we have a request for a 30-day

17     extension there.

18              Anyone wish to speak about that?

19              MR. EDDY:  David Eddy, Your Honor.  I spoke with

20     Jared Taylor over the last few days.  We have an agreement

21     in principle to extend the DAPs' filing date of the

22     consolidated complaint 30 days to December 5.  December 12

23     would be the date we, the parties, submit a proposed order

24     for the process of later filed DAP cases.

25              THE COURT:  Okay.

 1              MR. EDDY:  And then January 20 would be the date

 2      for the defendants' response to the DAPs' consolidated

 3      complaint.

 4              THE COURT:  Sounds fine with the Court.

 5              Is it okay with defense?

 6              MR. TAYLOR:  Yes, Your Honor.  That reflects what

 7      we discussed and agreed to.

 8              THE COURT:  Okay.  Good.  I think that works out

 9      just fine.

10              MR. EDDY:  Thank you.

11              THE COURT:  The 30 days was a little short, and I

12      appreciate the fact that it's not an easy task to put

13      together a consolidated complaint, but I think in the end

14      it will make this work a lot better, so --

15              MR. TAYLOR:  Your Honor, I'm not sure whether,

16      whether that's all the Court had for the moment on the

17      consolidated complaint.  If -- we did have one other issue

18      that we wanted to raise with respect to that before we move

19      topics.

20              THE COURT:  Yeah.  Go ahead.

21              MR. TAYLOR:  When DAPs requested their extension,

22      defendants asked, you know, what's -- we would not have any

23      problem with an extension.  We grant those more or less as

24      a matter of course, of course, but we did ask what was

25      necessitating the extension if there was something

1    particular and particularly whether DAPs expected

2    substantive amendments instead of more or less an

3    administrative consolidation.

4           And the response we got was, "DAPs need the

5    additional time to harmonize and update their complaint

6    language."

7           So defendants would like to clarify that this

8    process is not intended to invite or even permit

9    substantive amendments at this point and that it should be

10   a consolidation of the allegations that have already been

11   brought.  A consolidation will streamline the case.

12          Defendants believe that pivoting to new theories

13   or substantial allegations at this point would instead

14   disrupt it, and there was of course an agreed date for

15   bringing motions to amend, which was by April 30th, 2022.

16   Either all or nearly all DAPs did in fact amend by that

17   date, and Judge Bowbeer was clear at a January status

18   conference that any amendments after that time would

19   require not only a motion to amend but good cause to move

20   the scheduling order.

21          So we just don't want to be dealing with

22   surprises at this point.

23          THE COURT:  Anyone wish to speak to that?

24   Mr. Kaplan?

25          MR. KAPLAN:  Yes, Your Honor.  We've had -- it's

1    Robert Kaplan.

2              We've had a lot of discovery, and we assume that

3    we can use material from discovery in this amended

4    complaint and if there are already claims that are pled, we

5    can re-plead those claims, and if one DAP didn't plead

6    those claims wants to plead those claims, they can do that.

7              That's what we did in Broilers.  When we did the

8    consolidated complaint, we updated all the facts from

9    discovery, so we assume we can do that.

10             THE COURT:  But you're not talking about new

11   causes of action.

12             MR. KAPLAN:  Not that I'm aware of, but I don't

13   want to bind all the DAPs.  We have not discussed this.

14             THE COURT:  It's a consolidation of what has been

15   done up until this point, so I'm not really expecting

16   substantive amendments.  If you feel that there is

17   something critical that needs to be added, you can file a

18   motion with the Court.

19             MR. KAPLAN:  All right, Your Honor.  I assume we

20   can add facts from discovery.

21             THE COURT:  That's fine.  I don't have a problem

22   with that.

23             Yes?

24             MR. BATES:  Just briefly, Your Honor.  Kyle Bates

25   from Hausfeld for Puerto Rico.

1          One point of clarification, and it's mostly a

2     nomenclature issue.  My understanding was that defendants

3     and Direct Action Plaintiffs agreed that Puerto Rico would

4     not need to sign on to a consolidated amended complaint.

5          Puerto Rico's operative complaint has been

6     answered by all defendants, and we just wanted to confirm

7     that that was the Court's understanding in issuing the

8     pretrial order.

9          THE COURT:  That was my understanding.  Did you

10    have any point on that?

11         MR. TAYLOR:  No, Your Honor.  We agree.

12         THE COURT:  That's fine, Mr. Bates.

13         Okay.  All right.  Let's see.  I take it there is

14    nothing new on the status of the two state court actions

15    that are going on and nothing new to report there?

16         MR. TAYLOR:  Correct, Your Honor.

17         THE COURT:  Okay.  In terms of, it looks like

18    there is some, still some jurisdictional issues.  Maybe

19    discovery has started in New Mexico.  They seem to be a

20    little bit behind; is that true?

21         MR. TAYLOR:  Yes.  I believe some jurisdictional

22    issues are still outstanding.  I don't believe discovery

23    has started in earnest.  We have just gotten a protective

24    order on file.

25         THE COURT:  All right.

```
 1              MR. TAYLOR:  But it's starting.
 2              THE COURT:  Okay.  Very well.  What I would
 3      intend to do if necessary is just, you know, try to make
 4      sure that we harmonize timing as much as possible with
 5      state court actions, and if there is anything that the
 6      Court needs to do, you can let me know, but I think that
 7      it's best to have them moving along the same track at the
 8      same time as much as possible.
 9              All right.  Nothing we need to discuss about
10      settlement.  We will have the final fairness hearing at the
11      end here.  Leadership structure, got some ideas here.
12      Anyone wish to talk about that at this stage?
13              I anticipate issuing a order after this hearing,
14      consulting with Judge Docherty, and getting this matter
15      moving, but is there anything anyone would like to discuss
16      on this?
17              Mr. Bruckner?
18              MR. BRUCKNER:  Good morning, Your Honors.  Joe
19      Bruckner for the Direct Purchaser Plaintiffs.
20              As Your Honors know, we did petition the Court to
21      be appointed lead counsel for the direct purchasers.  The
22      Court granted that order back in 2018.  To cut to the
23      chase, if the Court needs more information from us, we're
24      happy to provide it, but otherwise we will stand on our
25      papers.
```

```
1              Not to speak for the other two classes, but I

2      believe they're in a similar situation, and they sent a

3      similar letter to the Court apprising you of such.  So

4      unless the Court has questions, I'm happy to sit down.

5              THE COURT:  I don't, Mr. Bruckner.

6              Anyone else?  Mr. Hedlund?

7              MR. HEDLUND:  Yeah.  Just to echo Mr. Bruckner's

8      statements, the consumer indirects are the same, and my

9      co-lead counsel Shana Scarlett from Hagens Berman is on the

10     phone, so she is here virtually, but we stand on the

11     papers.

12             THE COURT:  All right.  Very well.

13             MR. FINLEY:  And, Your Honor, Blaine Finley for

14     the commercial indirects.

15             We stand on our papers as well and echo the

16     comments of the other two classes.

17             THE COURT:  Okay.  Very well.  Anyone else?

18             Okay.  We will get that order out quickly.  I

19     appreciated receiving information from everyone, and I

20     understand, Mr. Bates, we've got a kind of a separate

21     request for Puerto Rico.  I do think that separate

22     representation in case-wide leadership for the Commonwealth

23     is probably in order.

24             MR. BATES:  Thank you, Your Honor.

25             THE COURT:  Okay.  Thank you for the suggestion
```

1    of the monthly status conferences.  We will start plugging

2    those in and getting the timing associated with everything

3    else that is going on.

4         I do think that it would be helpful for in

5    advance of the monthly status conferences that we have a

6    joint agenda so we make sure we address everything that

7    both sides wants.  So I will expect the leadership to work

8    together on a joint agenda for each of these conferences.

9         Mr. Hedlund?

10        MR. HEDLUND:  Just briefly, and kind of just a

11   date issue, but I noticed that, we noticed that one of the

12   dates that we had suggested was January 16th, which is

13   Martin Luther King Day, so that will need to be adjusted,

14   but otherwise I think they're all good.

15        THE COURT:  That would not be a day we should

16   have a conference so --

17        Mr. Pouya?

18        MR. POUYA:  Your Honor, how far in advance of the

19   hearings do you want the agendas?

20        THE COURT:  If we could get it at least three

21   days in advance, that would be helpful.

22        MR. POUYA:  Okay.

23        THE COURT:  All right.  Let's see.  I think that

24   in terms of the pretrial schedules, Judge Docherty

25   referenced that.  I think that we should focus on that as

1    being a primary issue for a November conference if everyone

2    can get together on a schedule, and we're inclined to be

3    approving of any schedule the parties can agree to.  I do

4    want to move the matter along as quickly as possible.

5          Part of the case is old.  The rest of it is

6    relatively new, but I do want to move things along as

7    quickly as possible.  So the schedule I think we can

8    probably address in November.

9          Judge Docherty, what do you think?

10         MAGISTRATE JUDGE DOCHERTY:  I agree.  I agree.  I

11   think the parties need to meet and confer about some of

12   that before it's ready for us.

13         THE COURT:  Okay.  I would anticipate a fairly

14   firm schedule, of course subject to what goes on in the

15   case, but have that ready by the November status

16   conference.

17         Okay.  And then in terms of the timing on class

18   certification and the related *Daubert* hearings, we will --

19   do you have a date in mind, Heather, for a hearing?  Did

20   you look at the January calendar at all?

21         COURTROOM DEPUTY:  I was looking at it.  The last

22   of week is pretty open if you want to just pick a day.

23         THE COURT:  We may be done with whatever trial we

24   have then anyway.  So last week in January, let's work back

25   from that.  Is there a date that week that is, has a big

1    conflict for anybody?  The week is fairly open for the

2    Court, if you could check your calendars.

3          This would be, we would set aside a day.  It's

4    not going to be a day-long hearing, I don't think, but we

5    will set aside plenty of time for it.  So look at a date

6    that is relatively clear last week in January.

7          MR. BRUCKNER:  Your Honor, Joe Bruckner.  That

8    would be the week of January 22 or 29?

9          COURTROOM DEPUTY:  I'm thinking Monday the 30th

10   on.  Monday, Tuesday, Wednesday is pretty good for you.

11         THE COURT:  First part of that week, Monday

12   through Wednesday.

13         MR. BRUCKNER:  Your Honor, that's fine for the

14   Direct Purchaser Plaintiffs.

15         THE COURT:  Any conflicts anyone has Monday,

16   Tuesday, Wednesday that week?

17         MR. TAYLOR:  I don't think we will have any

18   conflicts, Your Honor.  Maybe if we do, we can shortly

19   after this conference apprise the Court.

20         THE COURT:  That's fine.  Let's set it for

21   Tuesday, which is what date, Heather?

22         COURTROOM DEPUTY:  January 31st.

23         THE COURT:  January 31st, we will set aside that

24   date, and if there is any conflicts please let me know

25   right away.  We can move it if necessary.  Okay?

 1           And then maybe the parties can work back from

 2     that date in terms of the relative responses that are due

 3     before then.  Okay?  All right.  Anything else besides the

 4     final fairness hearing and the attorneys' fees order for

 5     Smithfield.

 6           Yes?

 7           MR. POUYA:  On that last point, I hope to

 8     streamline it.  Since we're not moving on a *Daubert*, I

 9     think the current deadlines can remain in place for that

10     hearing date.

11           MR. TAYLOR:  Yeah.  No objection.

12           THE COURT:  You would have time after the last

13     filings are in to prepare for the hearing, so I think it

14     was a, five days is a little short.  I agree with that.  So

15     hopefully you won't have to be doing too much work over the

16     holidays this way.

17           MR. POUYA:  Thank you, Your Honor.

18           THE COURT:  Okay.  All right.  Any other issue we

19     should discuss today?

20           Did you have anything, Judge Docherty?

21           MAGISTRATE JUDGE DOCHERTY:  I have nothing

22     further.  Thank you.

23           THE COURT:  All right.  Okay.  We will issue an

24     order shortly on the leadership structure.  I appreciate

25     the parties' submissions.  Everything seemed to make good

1    sense to me, so we will issue an order on that.  You're

2    going to address the Canadian deposition issue and the

3    other order that is pending.

4         So anything else for today?  All right.  Well,

5    thank you all for coming in today.  Again, I appreciate it

6    very much.  I just felt that it would be helpful to have an

7    initial conference where we were all together here in the

8    courtroom, and we will do most of our work going forward

9    over Zoom.

10        If we're doing any evidentiary related matters,

11   we will probably do that in person, and we may actually,

12   the class certification motion, we may do that in person,

13   but certainly our monthly status conferences I anticipate

14   using Zoom for that to save on everybody's travel costs.

15        All right?  Thanks very much for coming in today.

16   We will be in recess.

17        COURTROOM DEPUTY:  All rise.

18        THE COURT:  Actually we should turn to the

19   Smithfield final fairness hearing.  Anyone not involved can

20   leave if you want to.  Otherwise we will take that up right

21   now.

22        **(Magistrate Judge Docherty exits the courtroom.)**

23        THE COURT:  Let's proceed.  We have a final

24   fairness hearing today on the Smithfield settlement with

25   Commercial and Institutional Indirect Purchaser Plaintiffs.

1              MR. RAITER:  Thank you, Your Honor.  Shawn Raiter

2      on behalf of the Commercial and Institutional Indirect

3      Purchaser Plaintiffs.

4              As you know, we have a settlement here today for

5      final fairness consideration with the Smithfield

6      defendants.  This is the second settlement that the

7      Commercial Indirect Purchasers have entered.  This would be

8      a total of roughly 55 million dollars with the two

9      settlements.

10             The settlement with Smithfield is a 42 million

11     dollar, all cash, no reversion settlement that includes

12     cooperation.  It includes injunctive relief, which is set

13     forth in the proposed order and in the long form settlement

14     agreement.

15             We have had no objections, no opt-outs.  The

16     Court is certainly familiar with the standard that you

17     apply on a Rule 23 final fairness, so I don't intend to

18     click through those factors unless you have questions about

19     them in particular.

20             So factually what we will go through is the

21     notice that we provided, which was carried out as the

22     declaration of Cam Azari sets forth.  That notice included

23     direct mail, notice via e-mail to about 90 some thousand

24     restaurant associated e-mail addresses.  These are classes

25     that are difficult to identify everyone.  There is no list.

1   There is no census.  There is no thing that tells us

2   exactly where to find them.

3            So they put together information from different

4   sources to come up with a group of e-mails, and about

5   90,000 as I said or more than 90,000 were sent.  We roughly

6   estimate the class to be somewhere north of 300,000

7   members, 350, maybe.  So we got we believe direct mail

8   notice to about a quarter of the class roughly.

9            We then did media outlets.  We did social media,

10  paper click banner ads, and the reach according to the

11  experts was something north of 70 percent, with each of

12  those institutional purchasers receiving notice at least

13  two times.

14           We have filed with the Court the CAFA notice

15  compliance that the defendant provided.  We have not heard

16  anything from any of those recipients.  So the notice we

17  believe was effective, was efficient, was fair and

18  reasonable under the circumstances, and we've heard nothing

19  to the contrary.

20           This being the second settlement, one thing that

21  we see in cases like this is there is some public awareness

22  of these lawsuits just by Internet presence and media

23  presence, and typically if someone wants to know about the

24  case they can find the information.

25           We have had the settlement website for the first

1      settlement up and running and documents being posted for

2      this settlement as well.  So the reaction obviously from

3      the class was good.  It was well-received.  We think the

4      settlement was fair and reasonable under the circumstances.

5           We do have the benefit of some expert input about

6      the volume of commerce and estimated damages.  We have not

7      put those in the papers given where we stand right now with

8      the defendants, but we believe that the settlement if the

9      Court has questions or wants more information, we would be

10     happy to give it to you in camera.

11          But we believe this is a good resolution given

12     Smithfield's participation, given its volume of commerce

13     and given the presence of the remaining defendants in the

14     case who still have joint and several liability for the

15     full amount, as you know.

16          The agreed injunctive relief is an agreement that

17     Smithfield will not commit a per se violation of Section 1

18     of the Sherman Act for 24 months.  That would be in your

19     order, and obviously this is complex litigation, and

20     settlements are favored.  This was the result of

21     substantial negotiations.

22          We did not use a mediator, but we negotiated a

23     long time with very able defense counsel, and it was dozens

24     of communications that resulted finally in the terms that

25     we have before you.  So I know that Your Honor will give

1    counsel's opinion some weight.  We know you're familiar

2    with the case law, and I believe we can wholeheartedly

3    support this settlement.

4         We are not asking you at this point to approve a

5    plan of allocation for either this settlement or the JBS

6    settlement.  We will do that at some point when we think we

7    have enough money, hopefully maybe some more if we were to

8    reach other settlements, to justify the costs of starting a

9    claim administration and a claim process.

10        But the idea in a settlement like this is you

11   would be looking at the pro rata share that a class member

12   would have based on their pork purchases of some sort, and

13   you would have some data that we now have from certain

14   sources in the case, third-party sources in particular,

15   that does show some transactional purchase history that we

16   will probably use in some kind of a pro rata allocation at

17   some point, but that would be the subject of a future

18   motion we would ask you to approve, an allocation plan and

19   an allocation process.

20        We have asked for attorneys' fees of 33 percent

21   of the gross amount after the deduction of notice and

22   administration and after the deduction of a future

23   litigation costs set-aside.  The total amount sought as set

24   out in the papers, that's $13,270,913.12.

25        That represents about 31 percent of the gross

1    settlement fund if you went at it that way, and that

2    approach, by having taken out the notice costs and the

3    future litigation expenses, something that the Court has

4    approved in the past, and that's the request based on the

5    time that we have in the case.

6           We have set out, Your Honor, the number of hours

7    in the case, the relative rates.  We have got at the time

8    this was submitted in July of 2022 about 16,800 attorney

9    hours, 2600 hours for paralegals and law clerks.  The

10   Lodestar at that time was $12,450,000.

11          If Your Honor was to approve the fee request,

12   that would result in a positive multiplier of 1.38, which

13   as Your Honor knows from the case law is well within

14   reasonable amounts.  The litigation continues.  That

15   Lodestar multiplier will have already decreased as of today

16   because we continued to work.

17          And as you know, the class certification process

18   is well underway, and we still have depositions being taken

19   of some of our clients, and whether we settle or not with

20   anybody else remains to be seen.  So we think that that's a

21   reasonable fee request given the work that has been done,

22   the risk that's been taken, the investment that has been

23   made.

24          We have asked for reimbursement of 1.6 million

25   dollars in past expenses.  That was put out in the long

1   form notice again and the short form notice, and we've

2   received no response from any class member about those past

3   costs.  Those costs are in addition to the $1,020,000 that

4   the Court previously awarded as a future litigation fund.

5   We went through that fund, and we went another million six

6   out-of-pocket already.

7           Those costs, Your Honor, the majority of them are

8   expert related and data related.

9           THE COURT:  There is one discrepancy there,

10  Mr. Raiter, I just wanted to ask about.  I'm not sure it's

11  a problem, but the e-mail notice says not to exceed 1.4

12  million, and you've incurred some more expenses since that

13  time?

14          MR. RAITER:  Yeah.  And so what we did in the

15  long form notice, I believe we had asked for up to 7

16  percent as a future set-aside.  The long form notice asked

17  for only 5 percent.  So essentially what happened was, we

18  went from a smaller past expense number and a larger

19  future, and we exchanged those for a larger past and a

20  smaller future.

21          So the future litigation set-aside amount that we

22  are requesting is 5 percent, and that was set out in the

23  notice, if that makes sense to Your Honor.  We had been

24  incurring more expense by the time the notice finally was

25  sent.

1              THE COURT:  That's fine.

2              MR. RAITER:  So the notice, the long form again

3      said 5 percent as a future set-aside.  That would equate to

4      2.1 million dollars.  We are hopeful we won't go through

5      that at this point, but it remains to be seen whether we

6      will.  We certainly have class certification and expert

7      reports in.  We are working on our reply, the rebuttal

8      report.

9              We will have expert depositions.  We will have

10     additional time.  If any of that money remains, that money

11     would revert back into the settlement fund and would be

12     disbursed to class members.  So we're certainly happy to

13     provide the Court with any accounting or information you

14     would need to see where the money is being spent.

15             But the vast, vast majority of it is going to

16     experts, data hosting, data cleaning, data acquisition.

17     Fortunately during COVID, we haven't had a lot of travel.

18     We have some reduction in what we would see in normal

19     litigation expenses because of COVID and because of Your

20     Honor's willingness to do things by Zoom.

21             So that's where we are on those costs, and we

22     would ask that we be reimbursed for those.  We also asked

23     for class representatives service awards of $7500 each.  We

24     have eleven representative plaintiffs in the group.  You

25     previously awarded $7500 in the JBS settlement, so we would

1      have a total of $15,000.

2              As you know, Your Honor, there is case law that

3      suggests that for businesses in antitrust cases you can see

4      awards exceeding $100,000.  Businesses in particular really

5      share a big burden in these cases.  They have to go into

6      their business records.  They actually have records to

7      produce.  They have data to produce.  They sit for

8      depositions.

9              Most of our representatives have already sat or

10     have still been requested for a deposition, and obviously

11     if we need to try the case, they're willing to come try the

12     case.  So we believe an additional award from the

13     settlement is appropriate of $7500.

14             We're in a -- these cases are interesting because

15     as these settlements go by, if we don't ask for a service

16     award from you at this point, we may lose the opportunity

17     to get it from the settlement.  So we're trying to kind of

18     gauge.  Feels like we should take something from each of

19     these if possible.

20             But we know there will be a point where Your

21     Honor may say that's too much money or that doesn't seem

22     fair.  So what we are doing is trying to eek these out as

23     we go, and hopefully we might have other settlements or

24     something that we would come back and ask again.  So this

25     may not be our last ask, but we are certainly aware that we

1    are asking more than once for a service award.

2            So, Your Honor, unless you have a questions, we

3    think this is a fair, reasonable, adequate settlement.

4    It's again the result of very, very hard fought litigation.

5    A lot of information exchanged.  A good understanding of

6    the risks and benefits on both sides, both the plaintiffs

7    and the defendants, to proceeding in litigation like this,

8    and we think that this is a good result for this class.

9            THE COURT:  All right.  Thank you, Mr. Raiter.

10           Mr. Cotter?

11           MR. COTTER:  Good morning, Your Honor.  John

12   Cotter for Smithfield.  I'm here with John Kvinge, and

13   Brian Robison is by phone.

14           We have nothing to add.  The class counsel has

15   covered all the points, and so we have nothing to add.  On

16   the issue of attorneys' fees we simply don't take a

17   position.  That's between you and counsel for the

18   plaintiffs.

19           THE COURT:  All right.

20           MR. COTTER:  I have nothing else.

21           THE COURT:  Thank you, Mr. Cotter.

22           Anyone else that's here wish to speak?  All

23   right.  I don't have any more questions.

24           Thank you, Mr. Raiter, for your comprehensive

25   outline of what has gone on in terms of the settlement

1     discussions and the notice that has been provided.

2            The Court finds that the settlement is in order,

3     and I don't have any disagreement with the attorneys' fees

4     request either.  So I will issue the necessary orders.  I

5     think we have a draft order on both that have been

6     submitted.

7            Am I correct?

8            MR. RAITER:  You are, Your Honor.

9            THE COURT:  Okay.  We will get those out right

10    away, so thank you.

11           MR. RAITER:  Thank you.

12           THE COURT:  All right.  Anything else for today?

13    Thank you, everyone.  We will be in recess.

14           COURTROOM DEPUTY:  All rise.

15           **(Court was adjourned.)**

16                *        *         *

17           I, Kristine Mousseau, certify that the foregoing

18    is a correct transcript from the record of proceedings in

19    the above-entitled matter.

20

21

22

23    Certified by:  s/  *Kristine Mousseau, CRR-RPR*
                      Kristine Mousseau, CRR-RPR

24

25