# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE PORK ANTITRUST LITIGATION** <br><br> **This Document Relates To:** <br><br> *All Plaintiff Actions* | Civil No. 18-cv-01776 <br><br> **JBS USA FOOD COMPANY'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' NOTICE OF DEPOSITION OF JBS USA FOOD COMPANY PURSUANT TO RULE 30(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE** |

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Minnesota, Defendant JBS USA Food Company ("JBS USA"), by and through its undersigned counsel, hereby responds and objects to Plaintiffs' September 14, 2022 Notice Of Rule 30(b)(6) Deposition and Exhibit A ("Notice"). The following responses and objections ("Response") are based on information currently available and known to JBS USA, and are subject to the Protective Order entered in this case and as amended ("Protective Order"), Dkt. Nos. 212, 1155, 1156.

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Each of the following is incorporated into JBS USA's Response, including the objections set forth separately in the Specific Responses set forth below, whether or not specifically referenced therein.

1.   JBS USA objects to the definition of the terms "You," "Your" and "Defendant," as vague, ambiguous, overly broad, unduly burdensome and disproportionate to the needs of the case, including to the extent that the Subject Matter Areas included on Exhibit A ("Subject Matter Areas") incorporating these terms seek information that is irrelevant or not in JBS USA's possession, custody, or control. For the purposes of responding to the Notice, and consistent with prior discovery responses, JBS USA will interpret "You" and "Your" as referring to the pork-producing operations of JBS USA in the United States, and "Defendant" as referring to the pork-producing operations in the United States of other entities named as a Defendant. For purposes of this Response, JBS USA interprets these terms to exclude legal representatives.

2.   JBS USA objects to the definition of the term "Pork" as vague, ambiguous, overly broad, unduly burdensome and disproportionate to the extent it ignores the parameters for "Pork" as defined in this litigation and exceeds the scope of the definition of "Pork" set forth in complaints in this litigation. *See, e.g.*, Sysco Am. Compl. ¶ 2 n. 2 ("'pork' includes pig meat purchased fresh or frozen, smoked ham, sausage, and bacon"); Puerto Rico 3rd Am. Compl. ¶ 2 n. 2 (same). For the purposes of responding to the Notice, and consistent with prior discovery requests and responses, JBS USA will interpret "Pork" to mean pig meat purchased fresh or frozen, smoked ham, sausage, and bacon that is produced in the United States.

1

3. JBS USA objects to the definition of "Person" as vague, ambiguous, overly broad, unduly burdensome and disproportionate to the needs of this case as it purports to include people and entities beyond the named Defendants that are irrelevant and outside the case.

4. JBS USA objects to the definition of the term "Benchmarking Services" as vague, ambiguous, overly broad, unduly burdensome and disproportionate to the needs of the case. For purposes of this Response, JBS USA will interpret "Benchmarking Services" as referring to Agri Stats or Express Markets, Inc.

5. JBS USA objects to the definition of the term "AgStar" as vague and overbroad, including as to the extent Subject Matter Areas incorporating this term seek information pertaining to undefined "predecessors, affiliates, subsidiaries, predecessors, [sic] assignors, and related companies." For purposes of this Response, JBS USA will interpret "AgStar" to mean Compeer Financial.

6. JBS USA objects to the definition of the term "RaboBank" as vague and overbroad, including as to the extent Subject Matter Areas incorporating this term seek information pertaining to undefined "agents, subsidiaries, or affiliates". For purposes of this Response, JBS USA will interpret "RaboBank" as referring to Coöperatieve Rabobank U. A., New York Branch, Utrecht-America Holdings, Inc., Rabo AgriFinance LLC, Rabobank USA Financial Corporation, or Utrech-America Finance Co.

7. JBS USA objects to the definition of the terms "concerning," "reflecting," "regarding," and "relating to" because these definitions are overly broad and would require preparing corporate designee(s) to testify about information that is either not relevant, or if relevant, not proportional to the needs of the case.

8. JBS USA objects to the definition of the term "communication" because the definition is overly broad and would require preparing corporate designee(s) to testify about information that is either not relevant, or if relevant, not proportional to the needs of the case.

9. JBS USA objects to the term "Hog Growers" as vague and ambiguous. For purposes of this Response, JBS USA will interpret this term to mean a third-party entity with whom JBS USA entered into a contract to grow JBS USA-owned hogs to slaughter weight.

10. JBS USA objects to instruction 16 to the extent it requires JBS USA to do anything beyond making a conscientious, good-faith effort to designate a knowledgeable person or knowledgeable persons and/or to prepare a corporate designee or corporate designees to answer questions about the designated Subject Matter Areas within the scope set forth in the Specific Responses set forth below.

11. JBS USA objects to the definition of the "Relevant Time Period" because the definition is overly broad and would require preparing corporate designee(s) to testify about information that is either not relevant, or if relevant, not proportional to the needs of the case. Consistent with prior discovery responses, and unless otherwise specified, the applicable time period for purposes of this Response is January 1, 2008 through June 30, 2018.

**SPECIFIC RESPONSES AND OBJECTIONS TO SUBJECT MATTER AREAS**

This specific Response is made subject to, and without waiving, the foregoing Scope Limitations and Objections to Definitions and Instructions, which are incorporated by reference

in the Responses below.

1.      Your organizational structure, the organizational structure of any of Your subsidiaries, divisions, and/or affiliates, the commercial relationship(s) between You and each such subsidiary, division, and/or affiliate.

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not proportional to the needs of the case including as to the undefined terms "subsidiaries," "divisions," "affiliates," and "commercial relationship(s)," because it does not "describe with reasonable particularity the matters for examination," Fed. R. Civ. P. 30(b)(6), and due to a failure to provide guidance about what aspects of JBS USA's organizational structure or the purported and undefined "commercial agreements" will be the subject of examination. JBS USA further objects to this Subject Matter Area as overly broad, unduly burdensome and disproportionate to the needs of the case, including because it purports to seek information unrelated to Pork or the claims asserted in this case. JBS USA further states that it has already produced numerous organizational charts covering most years of the Relevant Time Period. *See* JBS-PORK-00000001 to JBSPORK- 00000286 and JBS-PORK-00000307 to JBS-PORK-00000321.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding those who served in the key roles involved in decisions concerning (i) the price and supply of Pork; (ii) the price and supply of hogs used to produce Pork; (iii) JBS USA's sales of Pork products; and (iv) the use of Agri Stats by JBS USA's Pork business (the "Pork Management Team") during the Relevant Time Period and regarding the current corporate organization structure of JBS USA's United States parent company and its United States subsidiaries with responsibilities related to items (i)-(iv) above.

2.      The manner in which You account for, track, or calculate the costs of Pork production, including identification of any structured data, computer systems, programs, or databases not already produced to Plaintiffs, and/or summary reports, studies or analyses you keep or kept reflecting Your costs.

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area including because JBS USA has no obligation to prepare a corporate witness to provide testimony regarding "any structured data, computer systems, programs, or databases not already produced to Plaintiffs" that may or may not contain cost information related to JBS USA's Pork production during the Relevant Time Period. JBS USA has already produced over 550,000 documents totaling over 2.5 million pages, as well as structured data detailing its purchases of hogs, that include detailed information about JBS USA's costs of Pork production during the Relevant Time Period. At this very late stage in the discovery process, JBS USA rejects the notion that this deposition can or should be used to evaluate the need for further discovery and particularly because the Plaintiffs that noticed this deposition have never raised any material issues with JBS USA's responses and objections to requests for document productions in this case. JBS USA further objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not

3

proportional to the needs of the case because it does not "describe with reasonable particularity the matters for examination," Fed. R. Civ. P. 30(b)(6) and to the extent it seeks information contained in any unspecified "summary," "reports," "studies," or "analyses" that may or may not reference costs pertaining to JBS USA's Pork production during the Relevant Time Period.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the main ways JBS USA tracked its primary Pork production costs in the United States during the Relevant Time Period.

**3.   Your decision-making about whether, when and how to make sales to and purchases from any Competitor of hogs or Pork.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area to the extent it seeks information about JBS USA's decision-making for each sale to or purchase from any Competitor of hogs or Pork. JBS USA has already produced over 550,000 documents totaling over 2.5 million pages as well as structured data with detailed information about JBS USA's sales of Pork and purchases of hogs during and beyond the Relevant Time Period. JBS USA further objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not proportional to the needs of the case including as to the undefined term "decision-making."

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the main factors JBS USA assessed regarding whether and when to purchase or sell Pork or hogs from or to Clemens Food Group, LLC, Hormel Foods Corporation, Seaboard Foods LLC, Smithfield Foods, Inc., Triumph Foods LLC, Tyson Foods, Inc., and Indiana Packers Corporation in the United States during the Relevant Time Period and how such purchases and sales were effectuated.

**4.   Your pricing and cost composition of any value added or further processed product containing Pork, including: (i) the characteristics of products that You categorize as "further processed" or "value-added," (ii) the manner in which You set prices for such products, including whether and how changes in the market value of non-further processed products influence the prices for further processed products, (iii), the cost composition of further processed products, including what portions of costs are attributable to: Pork, other ingredients (like breading, etc.), labor, energy, transportation, packaging, and any other costs, (iv) the use of transfer pricing and internal accounting of Pork costs for Your divisions, subsidiaries or affiliates in charge of further processed products, and (v) the use of third parties to further processed Pork that You sell.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area to the extent it seeks information about each cost or price related to the sale Pork. JBS USA has already produced over 550,000 documents totaling over 2.5 million pages as well as structured data with detailed information about JBS USA's sales of Pork and purchases of hogs during and beyond the

4

Relevant Time Period, which would also reflect any prices of sales to affiliates and subsidiaries. JBS USA further objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not proportional to the needs of the case including as to the undefined and/or unspecified terms "value added," "further processed," "containing Pork," "pricing," "cost composition," "other ingredients," "divisions, subsidiaries or affiliates," and "third parties". JBS USA further objects to this Subject Matter Area on the grounds that it is overly broad, unduly burdensome and disproportionate to the needs of the case, including because it does not "describe with reasonable particularity the matters for examination," Fed. R. Civ. P. 30(b)(6), by seeking unspecified "pricing and cost composition" for "any value added or further processed product containing Pork" over the course of more than a decade. JBS USA further objects to the extent this Subject Matter Area is duplicative of Subject Matter Area 2.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding: (i) the main Pork products JBS USA categorizes as "further processed" and "value-added" in the United States; (ii) the main factors that influence the pricing of such Pork products in the United States; (iii) the main cost components for such products sold by JBS USA in the United States; and (iv) JBS USA's general practices concerning transfer pricing (if any) for "further processed" Pork products JBS USA sells in the United States.

**5.   Your Pork sold as exports, including volume of Your Pork sold as exports, the terms of the contracts for export purchases, and prices You received for exported Pork, and your decision-making to increase export in Pork.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not proportional to the needs of the case including as to the undefined term "decision-making" and as to the unspecified "contracts". JBS USA further objects to this Subject Matter Area as unduly burdensome, over broad and not proportional to the needs of the case because it does not "describe with reasonable particularity the matters for examination," Fed. R. Civ. P. 30(b)(6) seeking information about unspecified terms of the contracts for export purchases, which are not relevant to the allegations in this case and because it seeks information without limitation about prices received for exported Pork over more than a decade.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the annual percentage of JBS USA's Pork that was processed at its plants in Louisville, Marshalltown, Worthington, Beardstown, and Ottumwa during the Relevant Time Period and sold as exports out of the United States, to the extent such information is known or reasonably available, and the main factors JBS USA assessed regarding whether to export such Pork out of the United States and at what price.

**6.   The prices You paid for inputs, aside from hogs, used to produce Pork during the Relevant Time Period.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area to the extent it seeks

5

information about each cost or price related to the sale of Pork. JBS USA has already produced over 550,000 documents totaling over 2.5 million pages, which contain detailed information about JBS USA's input costs during the Relevant Time Period. JBS USA further objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not proportional to the needs of the case including as to the undefined and unspecified term "inputs". JBS USA further objects to this Subject Matter Area on the grounds that it is overly broad, unduly burdensome and disproportionate to the needs of the case, including because it does not "describe with reasonable particularity the matters for examination," Fed. R. Civ. P. 30(b)(6) in its request without limitation for all prices paid for all inputs, without any regard to the magnitude of such inputs or lack thereof, used to produce Pork over the course of more than a decade. JBS USA further objects to the extent this Subject Matter Area is duplicative of Subject Matter Areas 2 and 4.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the main costs that are associated with JBS USA's production of Pork in the United States during the Relevant Time Period.

**7.     The factors that You considered or that affected the price that You paid for hogs and other inputs used to produce Pork before and during the Relevant Period, the relationship between the price that You paid for hogs and other inputs and the price You received for the sale of Pork, and any executive level decision-making regarding the cost of hogs and inputs and the relationship to the price You received for the sale of Pork, and your tracking of the profitability of each hog slaughtered by You.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not proportional to the needs of the case including as to the undefined and unspecified terms "other inputs" and "inputs" and the undefined term "decision-making." JBS USA further objects to this Subject Matter Area on the grounds that it is overly broad, unduly burdensome and disproportionate to the needs of the case, including in its request for information prior to the Relevant Time Period and in its request without limitation or specificity about prices paid for "other inputs", without any regard to the magnitude of such inputs or lack thereof, over the course of more than a decade. JBS USA further objects to the extent this Subject Matter Area is duplicative of Subject Matter Areas 3 and 6.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the main factors that impact the price of hogs purchased by JBS USA in the United States; whether and, if so, how JBS USA considered the prices JBS USA paid for hogs in the United States in assessing the prices at which JBS USA sold Pork in the United States; and the main ways JBS USA measured profitability of hogs it slaughtered in the United States during the Relevant Time Period.

**8.     Your reasons for reductions in slaughter, and documents reflecting same; and Your decision-making regarding the operations of Your hog slaughter facilities that impact the volumes of Pork You produce, including considerations regarding: capacity, staffing, number of shifts, and operating hours of hog slaughter facilities.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not proportional to the needs of the case including as to the undefined terms "reductions," "decision-making," "operations," and "impact." JBS USA further objects to this Subject Matter Area on the grounds that it is overly broad, unduly burdensome and disproportionate to the needs of the case, including in its request without limitation or specificity for information regarding "documents reflecting the same." JBS USA further objects to the extent this Subject Matter Area is duplicative of Subject Matter Areas 3, 6, and 7.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding JBS USA's annual volume of hogs slaughtered and the main factors that generally impact the amount of hogs JBS USA slaughtered during the Relevant Time Period.

**9.     Your data on the weight of heads killed prior to December 28, 2009.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case because it seeks information that can be obtained from the structured data that JBS USA produced pertaining to the years from 2007 through 2020 that reflects weights for hogs that JBS USA purchased during that period. JBS USA has undertaken and exhausted efforts to obtain the same data for the years prior to 2007 including restoration of data from back up tapes and confirms that such structured data does not exist for the years prior to 2007. Moreover, JBS USA has already entertained and responded in writing to inquiries regarding its produced structured data. In light of the foregoing, JBS USA will not prepare a corporate designee to provide testimony on this Subject Matter Area.

**10.    Your processes used to track the price sold and availability of hogs.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not proportional to the needs of the case including as to the undefined terms "price sold" and "availability." JBS USA further objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case to the extent it seeks information that can be obtained from the structured data that JBS USA produced pertaining to the years from 2007 through 2020 that reflects the volume and prices of hogs JBS USA purchased during that period. JBS USA further objects to the extent this Subject Matter Area is duplicative of Subject Matter Areas 2 and 7.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the main ways JBS USA tracks (i) the availability of hogs for sale in the United States and (ii) the market prices of hogs available for sale in the United States during the Relevant Time Period.

**11.     Your volumes of hogs purchased prior to December 28, 2009 and the categorization of the purchases as long-term or spot market.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case because it seeks information that can be obtained from the structured data that JBS USA produced pertaining to the years from 2007 through 2020 that reflects weights for hogs that JBS USA purchased during that period, and also categorizes the type of purchase. JBS USA has undertaken and exhausted efforts to obtain the same data for the years prior to 2007 including restoration of data from back up tapes and confirms that such structured data does not exist for the years prior to 2007. Moreover, JBS USA has already entertained and responded in writing to inquiries regarding its produced structured data. In light of the foregoing, JBS USA will not prepare a corporate designee to provide testimony on this Subject Matter Area.

**12.     Your decision-making regarding the volume of hogs purchased during the Relevant Time Period, including considerations regarding Your long-term contracts with suppliers, Your spot market purchases from suppliers, efforts to reduce the supply of Pork, efforts to increase prices of Pork, commentary by industry analysts, public statements by Your competitors, and the amount of Pork You planned to export.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not proportional to the needs of the case including as to the undefined terms "decision-making," "considerations," "efforts," and "competitors." JBS USA further objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case because it seeks information without limitation or specificity concerning "commentary by industry analysts" and "public statements by Your competitors" for a period of over a decade. JBS USA further objects to the Subject Matter Area to the extent it is duplicative of Subject Matter Areas 3, 7, and 8.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the main factors JBS USA assessed regarding the volume of hogs JBS USA purchased in the United States during the Relevant Time Period, and the main factors JBS USA assessed regarding whether to purchase hogs on the spot market or via long-term contracts in the United States during the Relevant Time Period.

**13. Your contractual agreements with third-party Hog Growers during the Relevant Time Period, including: the number of Hogs Grown for You by third-party Hog Growers, and the Liquidation of hogs and/or sows by third-party hog growers.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, ambiguous, unduly burdensome, and not proportional to the needs of the case including as to the undefined terms "Hogs Grown" and "third-party hog growers." JBS USA further objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case to the extent it seeks information without limitation or specificity concerning all contractual agreements with Hog Growers for a period of over a decade. For purposes of this Response, JBS USA will interpret Hog Grower to mean a third-party entity with whom JBS USA entered into a contract to grow JBS USA-owned hogs to slaughter weight.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the general terms of JBS USA's agreements with Hog Growers during the Relevant Time Period; the approximate annual number or percentage of JBS-owned hogs JBS USA slaughtered in the United States during the Relevant Time Period that were raised by Hog Growers; and any Liquidation[1] of JBS-owned hogs or sows by Hog Growers (or lack thereof) in the United States during the Relevant Time Period.

**14. Your plans, strategies, and execution of any acquisition, merger, or joint venture with another hog producing or Pork producing entity.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague and ambiguous including as to the term "any," "plans," "strategies," and overly broad, unduly burdensome and disproportionate to the needs of the case, including in its request for any "joint venture." JBS USA further objects to this Subject Matter Area to the extent it seeks information not relevant to the causes of action or defenses of any party to this action, or not proportionate to the needs of this alleged conspiracy case. Given the foregoing objections, JBS USA excludes routine agreements pertaining to the routine buying, processing, packaging, marketing, or selling of Pork, as well as routine buying or raising of hogs.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony describing executed acquisitions, mergers, or joint ventures, to the extent applicable, with another hog-producing or Pork-producing entity in the United States during the Relevant Time Period.

---

[1] The Notice defines Liquidation as "the slaughter of hogs or sows for purposes of reducing the herd."

9

**15.     Your participation in industry or trade group meetings attended by You and at least one other of Your competitors at which the domestic market for Pork was discussed, and any leadership positions held by Your personnel in such industry or trade groups, including, but not limited to, the 21st Century Pork Club and "Just Pigs."**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, and ambiguous including as to the undefined terms "industry or trade group," "competitors," and "leadership positions". JBS USA further objects to this Subject Matter Area as it does not identify any specific leadership positions. Plaintiffs have access to discovery from JBS USA, the other defendants, and numerous third party trade associations and industry groups from which Plaintiffs can compile the information they seek. Plaintiffs have also had numerous opportunities to depose those trade associations and industry groups, as well as those who attended and would have knowledge of attendance at such groups or meetings. Given the foregoing objections, JBS USA will not prepare a corporate designee to provide testimony on this Subject Matter Area.

**16.     Your attendance at industry conferences, meetings, or summits attended by at least and one of Your competitors at which: presentations were given, speeches were made, or panelists presented regarding the domestic market for Pork, presentations were given by Agri Stats regarding Pork, or You and any of Your competitors discussed the domestic market for Pork, or You and any of Your competitors made plans for a future meeting to discuss the domestic market for Pork.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, and ambiguous including as to the undefined terms "industry conferences, meetings, or summits," and "competitors." Plaintiffs have access to discovery from JBS USA, the other defendants, and numerous third party trade associations and industry groups from which Plaintiffs can compile the information they seek. Plaintiffs have also had numerous opportunities to depose those trade associations and industry groups, as well as those who attended and would have knowledge of attendance at such groups or meetings. JBS USA also does not maintain any repository of employees' attendance or participation in industry groups or meetings in a central location. Given the foregoing objections, JBS USA will not prepare a corporate designee to provide testimony on this Subject Matter Area.

**17.     Your efforts to collect and analyze information about Your competitors' production of Pork, including plans to liquidate hogs, reduce harvest, plans to reduce capacity at facilities, plans to close facilities, and plans to reduce hours of operation.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague,

10

overbroad, and ambiguous including as to the undefined terms "collect," "analyze," "competitors," "liquidate," "reduce capacity," and "reduce harvest."

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the main sources of JBS USA's market intelligence regarding the Pork production of Clemens Food Group, LLC, Hormel Foods Corporation, Seaboard Foods LLC, Smithfield Foods, Inc., Triumph Foods LLC, Tyson Foods, Inc., and Indiana Packers Corporation in the United States during the Relevant Time Period and how the same was used during the Relevant Time Period.

**18.     Your analyses, budgets, forecasts, projections, business plans, or strategic plans with respect to Your volumes of production Pork and the pricing of Pork.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, and ambiguous including as to the undefined terms "analyses," "budgets," "projections," "business plans," "strategic plans," "pricing," and "production Pork." JBS USA has already produced over 550,000 documents totaling over 2.5 million pages as well as structured data that include detailed information concerning JBS USA's prices and production of Pork during the Relevant Time Period. JBS USA further objects to this Subject Matter Area to the extent it is duplicative of Subject Matter Areas 2, 4, 7, 10, and 12.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the annual budgeting and forecast process concerning the amount of Pork that JBS USA processed in the United States during the Relevant Time Period.

**19.     Your monitoring of Pork prices and Pork supply in the domestic market.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, and ambiguous including as to the undefined term "monitoring." JBS USA further objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case because as drafted, it could be read to seek any information JBS USA received, whether true or not and without limitation or specificity, about Pork prices and supply in the United States over a period of more than a decade. JBS USA further objects to this Subject Matter Area to the extent it is duplicative of Subject Matter Area 17.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding JBS USA's main sources of market intelligence regarding Pork supply and prices in the United States during the Relevant Time Period and how the same was used during the Relevant Time Period.

**20.     Your policies and/or codes of conduct, including any discussions of: communications with competitors or their employees; participation in industry trade groups, conferences, or meetings; hiring employees, officers, or directors or former employees, officers, or directors of competitors; appointing employees, officers or directors or former employees, officers, or directors to Your Board of Directors; and compliance with, or training related to, the antitrust laws.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, and ambiguous including as to the undefined terms "policies," "codes of conduct," "discussions of: communications," "competitors," "industry trade groups, conferences, or meetings," "Board of Directors," and "compliance." JBS USA further objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case including because this litigation does not pertain to employment practices or appointments to Board of Directors. JBS USA further objects to this Subject Matter Area because it directly calls for privileged information and for conclusions of law. JBS USA notes that it has produced JBS USA's codes of conduct that could be located by a reasonable search and that those documents speak for themselves. Given the foregoing objections, JBS USA will not prepare a corporate designee to provide testimony on this Subject Matter Area.

**21.     Your relationship with AgStar, including any communications with AgStar, any meetings with AgStar, and any financial relationship between You and AgStar.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, and ambiguous including as to "Agstar" and the undefined terms "relationship," "communications," and "financial relationship." JBS USA further objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case because as drafted, it could be read to seek any information regarding any interaction or communication with anyone associated with "Agstar" over a period of more than a decade.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding any loans or financial instruments entered into between JBS USA and Compeer Financial, to the extent any existed, during the Relevant Time Period.

**22.     Your relationship with Rabobank, including any communications with Rabobank, any meetings with Rabobank, and any financial relationship between You and Rabobank.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, and ambiguous including as to the undefined terms "relationship," "communications," and "financial relationship." JBS USA further objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case because as drafted, it

could be read to seek any information regarding any interaction or communication with anyone associated with Rabobank over a period of more than a decade.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding any loans or financial instruments entered into between JBS USA and Coöperatieve Rabobank U. A., New York Branch, Utrecht-America Holdings, Inc., Rabo AgriFinance LLC, Rabobank USA Financial Corporation, or Utrech-America Finance Co., to the extent any existed, during the Relevant Time Period.

**23.     The existence and language of Your written policies and/or codes of conduct concerning: communications with competitors or their employees; participation in industry trade groups, conferences, or meetings; hiring employees, officers, or directors or former employees, officers, or directors of competitors; appointing employees, officers or directors or former employees, officers, or directors to Your Board of Directors; and compliance with, or training related to, the antitrust laws (including certification and frequency of such training). This Topic includes when and how the language of such written policies were changed.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, and ambiguous including as to the undefined terms "policies," "codes of conduct," "concerning: communications," "competitors," "industry trade groups, conferences, or meetings," "Board of Directors," and "compliance." JBS USA further objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case including because this litigation does not pertain to employment practices or appointments to Board of Directors. JBS USA notes that it has produced JBS USA's codes of conduct that could be located by a reasonable search and that those documents speak for themselves. JBS USA further objects to this Subject Matter Area to the extent it directly calls for privileged information and for conclusions of law. JBS USA further objects to this Subject Matter Area to the extent it is duplicative of Subject Matter Area 20. Given the foregoing objections, JBS USA will not prepare a corporate designee to provide testimony on this Subject Matter Area.

**24.     Any government investigation, inquiry, or conversation with regulators involving or related to competition in the Pork industry for which You were asked to or did provide information or documents.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, and ambiguous including as to the undefined terms "investigation, inquiry, or conversation," "competition," "related to," and "information or documents." JBS USA further objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case including because JBS USA operates in a pork industry that is highly regulated and because the type of discovery sought necessarily amounts to a fishing expedition. *See, e.g., Broiler Antitrust Litig.*, Dkt. 3624 at 26 (Court: "I think this is a fishing expedition farther along than general fishing in discovery."). JBS USA further objects to this

13

Subject Matter Area to the extent it calls for privileged information and for conclusions of law. Given the foregoing objections, JBS USA will not prepare a corporate designee to provide testimony on this Subject Matter Area.

**25.     The operating capacity of each of your processing plants, including: the capacity utilization of each of your plants by month during the Relevant Time Period; the documents that track or reflect capacity utilization; and the time periods during which You did not operate Your processing plant(s) at capacity.**

**RESPONSE**

In addition to its Objections to Instructions and Definitions, all of which are specifically incorporated herein, JBS USA objects to this Subject Matter Area on the grounds that it is vague, overbroad, and ambiguous including as to the undefined terms "operating capacity," and "at capacity." JBS USA further objects to this Subject Matter Area on the grounds that it is unduly burdensome and not proportional to the needs of the case because as drafted, it appears to seek information about any document that references capacity and about JBS USA's daily plant operations over the period of over a decade. JBS USA further objects to this Subject Matter Area to the extent it is duplicative of Subject Matter Areas 8, 11, 12, and 18.

Subject to and without waiving the foregoing, JBS USA will be prepared to provide general, high-level testimony regarding the annual capacity utilization at the Louisville, Marshalltown, Worthington, Beardstown, and Ottumwa plants during the Relevant Time Period and the main way that JBS USA tracked that to the extent such information is known or reasonably available.

Dated: September 20, 2022

| | |
|---|---|
| SPENCER FANE LLP<br>   Donald G. Heeman, #286023<br>   Jessica J. Nelson, #347358<br>   Randi J. Winter, #391354<br>   100 South Fifth Street, Suite 2500<br>   Minneapolis, MN 55402<br>   Telephone: (612) 268-7000 Facsimile: (612) 268-7001<br>   dheeman@spencerfane.com<br>   jnelson@spencerfane.com<br>   rwinter@spencerfane.com | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By: /s/ Sami H. Rashid<br>   Stephen R. Neuwirth (*pro hac vice*)<br>   Michael B. Carlinsky (*pro hac vice*)<br>   Sami H. Rashid (*pro hac vice*)<br>   Richard T. Vagas (*pro hac vice*)<br>   David B. Adler (*pro hac vice*)<br>   Heather Christenson (*pro hac vice*)<br>   51 Madison Avenue, 22nd Floor<br>   New York, NY 10010<br>   Telephone: (212) 849-7000<br>   Facsimile: (212) 849-7100<br>   stephenneuwirth@quinnemanuel.com<br>   michaelcarlinsky@quinnemanuel.com<br>   samirashid@quinnemanuel.com<br>   richardvagas@quinnemanuel.com<br>   davidadler@quinnemanuel.com<br>   heatherchristenson@quinnemanuel.com |

*Attorneys for Defendant JBS USA Food Company*