# Exhibit C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-cv-1776 (JRT/JD) |
| This Document Relates to:<br>All Actions | |

**PLAINTIFFS' AMENDED NOTICE OF DEPOSITION OF JBS USA FOOD COMPANY PURSUANT TO RULE 30(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition(s) of corporate representative(s) of JBS USA Food Company regarding the subject matters identified in, and based on definitions provided in, Exhibit A. The deposition(s) will take place on September 27, 2022 commencing at 9:00am MT. Pursuant to the Deposition Protocol Order dated November 30, 2021 (ECF No. 1018, § IV(A)), the deposition will occur remotely. A Zoom link and access credentials will follow.

The deposition will be taken before an officer authorized to administer oaths pursuant to the Federal Rules of Civil Procedure and the Court's Remote Deposition Protocol Order. Plaintiffs reserve the right to make a video recording of the deposition testimony, and to use such video at the time of any trial.

NOTICE IS FURTHER GIVEN that Plaintiffs reserve the right to utilize electronic exhibits during the deposition.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, JBS USA Food Company shall designate one or more officers, directors, representatives or agents, or other persons most knowledgeable, regarding all information known or reasonably available to it relating to the subject matters identified in Exhibit A.

**Attorneys intending to appear remotely should provide their name and email address to the Veritext Court Reporting Service (Pork@veritext.com) at least 48 hours prior to the commencement of the deposition.**

DATED: September 22, 2022                                    Respectfully submitted,

| | |
|---|---|
| */s/ David P. Germaine* | */s/ Michael S. Mitchell* |
| Paul E. Slater | Michael S. Mitchell |
| Joseph M. Vanek | Scott E. Gant |
| David P. Germaine | Sarah L. Jones |
| Alberto Rodriguez | **BOIES SCHILLER FLEXNER LLP** |
| Jeffrey H. Bergman | 1401 New York Ave., NW |
| **SPERLING & SLATER, P.C.** | Washington, DC 20005 |
| 55 West Monroe Street, Suite 3200 | Tel: 202-237-2727 |
| Chicago, IL 60603 | Fax: 202-237-6131 |
| Tel: (312) 641-3200 | mmitchell@bsfllp.com |
| Fax: (312) 641-6492 | sgant@bsfllp.com |
| pes@sperling-law.com | sjones@bsfllp.com |
| jvanek@sperling-law.com | |
| dgermaine@sperling-law.com | Colleen Harrison |
| arodriguez@sperling-law.com | **BOIES SCHILLER FLEXNER LLP** |
| jbergman@sperling-law.com | 333 Main Street |
| | Armonk, NY 10504 |
| Phillip F. Cramer | Tel: 914-749-8204 |
| Christina Lopez | Fax: 914-749-8300 |
| **SHERRARD ROE VOIGT & HARBISON, PLC** | charrison@bsfllp.com |
| 150 3rd Avenue South, Suite 1100 | *Counsel for Plaintiffs Sysco Corporation and Amory Investments LLC* |
| Nashville, Tennessee 37201 | |
| Tel: (615) 742-4200 | */s/ David C. Eddy* |
| pcramer@srvhlaw.com | David C. Eddy |
| clopez@srvhlaw.com | Dennis J. Lynch |
| | Travis C. Wheeler |
| | **NEXSEN PRUET, LLC** |

*Counsel for Plaintiffs Dollar General Corporation, Dolgencorp, LLC, Raley's, United Natural Foods, Inc.*

/s/ *Philip J. Iovieno*
Philip J. Iovieno
Nicholas A. Gravante, Jr.
Jack G. Stern
Mark A. Singer
Elizabeth R. Moore
Zygimante Andrijauskaite
**CADWALADER, WICKERSHAM & TAFT LLP**
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
E-mail: philip.iovieno@cwt.com
E-mail: nicholas.gravante@cwt.com
E-mail: jack.stern@cwt.com
E-mail: mark.singer@cwt.com
E-mail: elizabeth.moore@cwt.com
E-mail: zygimante.andrijauskaite@cwt.com

*Counsel for Plaintiffs Jetro Holdings, LLC, BJ's Wholesale Club, Inc., Sherwood Food Distributors, L.L.C., Harvest Meat Company, Inc., Western Boxed Meat Distributors, Inc., and Hamilton Meat, LLC and Co-Counsel for Plaintiffs Kraft Heinz Foods Company*

/s/ *Patrick J. Ahern*
Patrick J. Ahern
**Ahern and Associates, P.C.**
Willoughby Tower
8 South Michigan Avenue
Suite 3600
Chicago, Illinois 60603
(312) 404-3760
patrick.ahern@ahernandassociatespc.com

*Co-Counsel for Plaintiffs Kraft Heinz Foods Company*

/s/ *William J. Blechman*
Richard A. Arnold, Esquire

1230 Main Street, Suite 700
Columbia, South Carolina 29201
Telephone: (803) 771-8900
Facsimile: (803) 253-8277
Email: deddy@nexsenpruet.com
Email: dlynch@nexsenpruet.com
Email: twheeler@nexsenpruet.com

*Counsel for Plaintiffs Conagra Brands, Inc., Nestlé USA, Inc., Nestlé Purina PetCare Co.; and Howard B. Samuels, acting solely in his capacity as Chapter 7 trustee for the bankruptcy of the estate of Central Grocers, Inc. and Compass Group USA, Inc.*

/s/ *Kyle G. Bates*
Kyle G. Bates
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
T: (415) 633-1908
kbates@hausfled.com

Peter B. Schneider
**SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP**
3700 Buffalo Speedway, Suite 300
Houston, Texas 77098
T: (713) 338-2560
F: (415)421-7105
pschneider@schneiderwallace.com

Todd M. Schneider
Matthew S. Weiler
**SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP**
2000 Powell St., Suite 1400
Emeryville, California 94608
T: (415) 421-7100
tschneider@schneiderwallace.com
mweiler@schneiderwallace.com

Garrett W. Wotkyns
**SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP**
8501 N. Scottsdale Road, Suite 270

William J. Blechman, Esquire
Kevin A. Murray, Esquire
Douglas H. Patton, Esquire
Samuel J. Randall, Esquire
Michael A. Ponzoli, Esquire
**KENNY NACHWALTER, P.A.**
1441 Brickell Avenue, Suite 1100
Miami, Florida  33131
Tel:     (305) 373-1000
Fax:    (305) 372-1861
E-mail:        rarnold@knpa.com
                    wblechman@knpa.com
                    kmurray@knpa.com
                    dpatton@knpa.com
                    srandall@knpa.coSm
                    mponzoli@knpa.com

*Counsel for Plaintiffs The Kroger Co.,*
*Albertsons Companies, Inc.,*
*Hy-Vee Inc., Save Mart Supermarkets,*
*and US Foods, Inc.*

Scottsdale, Arizona 85253
T: (480) 428-0145
gwotkyns@schneiderwallace.com

Domingo Emanuelli-Hernández
Attorney General
Guarionex Díaz Martínez
**Assistant Attorney General**
**Antitrust Division**
**Puerto Rico Department of Justice**
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
T: (787) 721-2900, ext. 2600, 2601
F: (787) 721-3223
gdiaz@justicia.pr.gov

*Counsel for the Commonwealth of Puerto Rico*

**EXHIBIT A**

**INSTRUCTIONS AND DEFINITIONS**

The following terms are defined below solely for the purpose of this notice of deposition:

1. "You," "Your," or "Defendant" means JBS USA Food Company and its affiliates, subsidiaries, divisions, predecessors, assignors, related companies, parent companies, and any entities with ownership or control over JBS USA Food Company, and shall include its current and former directors, employees, agents, purported assignors and representatives, both individually and collectively.

2. "Pork Antitrust Litigation" refers to the action captioned *In Re Pork Antitrust Litigation*, Case No. 18-cv-1776 (JRT/HB), pending in the United States District Court for the District of Minnesota, and any related action currently pending in the District of Minnesota or subsequently transferred to the District of Minnesota.

3. "Pork" means pig or swine meat sold or purchased fresh frozen or processed, including smoked ham, sausage, and bacon.

4. "Price" means the amount of money asked for or given in exchange for a good or service. "Price" shall include, but is not limited to, list price, invoice price, and net price.

5. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

6. "Benchmarking Service" means a service that shares information that allows a firm to compare its practices, methods, or performances against those of other companies in the same industry. Providers of Benchmarking Service include, but are not limited to: Agri Stats, Inc.; EMI; Daily Livestock Report; USDA; or Kerns & Associates.

7. "AgStar" means Compeer Financial, its predecessors, affiliates, subsidiaries, predecessors, assignors, and related companies.

8. "Rabobank" means Coöperatieve Rabobank U. A., New York Branch, Utrecht-America Holdings, Inc., Rabo AgriFinance LLC, Rabobank USA Financial Corporation, or Utrech-America Finance Co, and each of their agents, subsidiaries, or affiliates thereof.

9. "Plaintiffs" means all plaintiffs to the action captioned *In Re Pork Antitrust Litigation*, Case No. 18-cv-1776 (JRT/HB), pending in the United States District Court for the District of Minnesota, and any related action currently pending in the District of Minnesota or subsequently transferred to the District of Minnesota.

10. "Concerning," "reflecting," "regarding," and "relating to" are used in the broadest possible sense and mean, in whole or in part, addressing, analyzing, constituting, containing, commenting, in connection with, dealing, discussing, describing, embodying, evidencing, identifying, pertaining, referring, reporting, stating, or summarizing.

11. "Communication" is used in the broadest possible sense and means every conceivable manner or means of disclosure, transfer, or exchange of oral or written information between one or more persons, entities, devices, platforms, or systems.

12. "Indiana Packers" means Indiana Packers Corporation and any of its subsidiaries or affiliates.

13. "Competitor" means Indiana Packers and any Defendant in this litigation, with the exception of Agri Stats.

14. "Liquidation" or to "liquidate" shall mean the slaughter of hogs or sows for purposes of reducing the herd.

15. "Hog Growers" means anyone that You entered into a contract with to grow JBS-owned hogs on JBS's behalf.

16. The terms defined above are to be construed broadly and to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure. The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. The terms "all" and "each" shall both be construed as all and each. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

17. Unless otherwise specified, the applicable time period for purposes of the below topics is January 1, 2008 through the present (the "Relevant Time Period").

## SUBJECT MATTER AREAS FOR THE RELEVANT TIME PERIOD

1. Your organizational structure, the organizational structure of any of Your subsidiaries, divisions, and/or affiliates, the commercial relationship(s) between You and each such subsidiary, division, and/or affiliate.

2. The manner in which You account for, track, or calculate the costs of Pork production, including identification of any structured data, computer systems, programs, or databases not already produced to Plaintiffs, and/or summary reports, studies or analyses you keep or kept reflecting Your costs.

3. Your decision-making about whether, when and how to make sales to and purchases from any Competitor of hogs or Pork.

4. Your pricing and cost composition of any value added or further processed product containing Pork, including: (i) the characteristics of products that You categorize as "further

processed" or "value-added," (ii) the manner in which You set prices for such products, including whether and how changes in the market value of non-further processed products influence the prices for further processed products, (iii), the cost composition of further processed products, including what portions of costs are attributable to: Pork, other ingredients (like breading, etc.), labor, energy, transportation, packaging, and any other costs, (iv) the use of transfer pricing and internal accounting of Pork costs for Your divisions, subsidiaries or affiliates in charge of further processed products, and (v) the use of third parties to further processed Pork that You sell.

5.  Your Pork sold as exports, including volume of Your Pork sold as exports, the terms of the contracts for export purchases, and prices You received for exported Pork, and your decision-making to increase export in Pork.

6.  The prices You paid for inputs, aside from hogs, used to produce Pork during the Relevant Time Period.

7.  The factors that You considered or that affected the price that You paid for hogs and other inputs used to produce Pork before and during the Relevant Period, the relationship between the price that You paid for hogs and other inputs and the price You received for the sale of Pork, and any executive level decision-making regarding the cost of hogs and inputs and the relationship to the price You received for the sale of Pork, and your tracking of the profitability of each hog slaughtered by You.

8.  Your reasons for reductions in slaughter, and documents reflecting same; and Your decision-making regarding the operations of Your hog slaughter facilities that impact the volumes of Pork You produce, including considerations regarding: capacity, staffing, number of shifts, and operating hours of hog slaughter facilities.

9.  Your data on the weight of heads killed prior to December 28, 2009.

10. Your processes used to track the price sold and availability of hogs.

11. Your volumes of hogs purchased prior to December 28, 2009 and the categorization of the purchases as long-term or spot market.

12. Your decision-making regarding the volume of hogs purchased during the Relevant Time Period, including considerations regarding Your long-term contracts with suppliers, Your spot market purchases from suppliers, efforts to reduce the supply of Pork, efforts to increase prices of Pork, commentary by industry analysts, public statements by Your competitors, and the amount of Pork You planned to export.

13. Your contractual agreements with third-party Hog Growers during the Relevant Time Period, including: the number of Hogs Grown for You by third-party Hog Growers, and the Liquidation of hogs and/or sows by third-party hog growers.

14. Your plans, strategies, and execution of any acquisition, merger, or joint venture with another hog producing or Pork producing entity.

15. Your participation in industry or trade group meetings attended by You and at least one other of Your competitors at which the domestic market for Pork was discussed, and any leadership positions held by Your personnel in such industry or trade groups, including, but not limited to, the 21st Century Pork Club and "Just Pigs."

16. Your attendance at industry conferences, meetings, or summits attended by at least and one of Your competitors at which: presentations were given, speeches were made, or panelists presented regarding the domestic market for Pork, presentations were given by Agri Stats regarding Pork, or You and any of Your competitors discussed the domestic market for Pork, or You and any of Your competitors made plans for a future meeting to discuss the domestic market for Pork.

17. Your efforts to collect and analyze information about Your competitors' production of Pork, including plans to liquidate hogs, reduce harvest, plans to reduce capacity at facilities, plans to close facilities, and plans to reduce hours of operation.

18. Your analyses, budgets, forecasts, projections, business plans, or strategic plans with respect to Your volumes of production Pork and the pricing of Pork.

19. Your monitoring of Pork prices and Pork supply in the domestic market.

20. Your policies and/or codes of conduct, including any discussions of: communications with competitors or their employees; participation in industry trade groups, conferences, or meetings; hiring employees, officers, or directors or former employees, officers, or directors of competitors; appointing employees, officers or directors or former employees, officers, or directors to Your Board of Directors; and compliance with, or training related to, the antitrust laws.

21. Your relationship with AgStar, including any communications with AgStar, any meetings with AgStar, and any financial relationship between You and AgStar.

22. Your relationship with Rabobank, including any communications with Rabobank, any meetings with Rabobank, and any financial relationship between You and Rabobank.

23. The existence and language of Your written policies and/or codes of conduct concerning: communications with competitors or their employees; participation in industry trade groups, conferences, or meetings; hiring employees, officers, or directors or former employees, officers, or directors of competitors; appointing employees, officers or directors or former employees, officers, or directors to Your Board of Directors; and compliance with, or training related to, the antitrust laws (including certification and frequency of such training). This Topic includes when and how the language of such written policies were changed.

24. Any government investigation, inquiry, or conversation with regulators involving or related to collusion, coordination, or concerted action related to pricing or supply in the Pork industry for which You were asked to or did provide information or documents.

25. The operating capacity of each of your processing plants, including: the capacity utilization of each of your plants by month during the Relevant Time Period; the documents that track or reflect capacity utilization; and the time periods during which You did not operate Your processing plant(s) at capacity.

## CERTIFICATE OF SERVICE

I, Sarah Jones, hereby affirm that on September 22, 2022, I caused a true and correct copy of the following document to be served via e-mail to all counsel listed on the attached schedule.

1. PLAINTIFFS' AMENDED NOTICE OF 30(b)(6) DEPOSITION OF JBS

DATED: September 22, 2022 /s/ *Sarah L. Jones*
Sarah L. Jones