UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Case No. 18-cv-1776 (JRT/JFD) |
| This Document Relates To: ALL ACTIONS | **ORDER**<br>**FILED UNDER SEAL** |

This matter is before the Court on a Motion to Compel Production of Sales Data (Dkt. No. 1493) filed by certain Direct Action Plaintiffs ("Moving DAPs"). The Moving DAPs are Compass Group USA, Inc. ("Compass"); Conagra Brands, Inc. ("Conagra"); Howard B. Samuels solely as Trustee for the estate of Central Grocers, Inc. ("Central Grocers"); Nestlé USA, Inc. ("Nestlé USA"); Nestlé Purina PetCare Company ("Nestlé Purina"); Amory Investments LLC ("Amory"); and Sysco Corporation ("Sysco"). (Moving DAPs' Mot. Compel at 1 n.1, Dkt. No. 1493.) The responding Defendants are Hormel Foods Corporation and Hormel Foods LLC ("Hormel"); JBS USA, INC. ("JBS"); Smithfield Foods, Inc. ("Smithfield"); and Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. ("Tyson") (collectively, "Responding Defendants"). (*Id.* at 1.)

The Moving DAPS move to compel the production of invoice-level sales data for four categories of pork products:

> (1) franks—hot dogs and various types of franks that include pork and non-pork meat; (2) multi-ingredient products—such as pepperoni, breakfast burritos, sausage tots, or sausage rolls; (3) offal products—products removed from the carcass during processing, such as fat, hearts, and other organs; and (4) renderings and by-products—including blood meal and bone meal.

(Moving DAPs' Mem. Supp. Mot. Compel at 2, Dkt. No. 1495.) According to the Moving DAPs, this sales data is necessary to assess the impact and harm caused by the alleged conspiracy to raise the price of pork over a roughly nine-year period. (*Id.*)

The Responding Defendants oppose the motion as untimely and the discovery sought as only marginally relevant, not proportional to the needs of the case, unduly burdensome, and prejudicial. (Responding Defs.' Mem. Opp'n Mot. Compel at 2–3, Dkt. No. 1521.) The Responding Defendants point out that, at the time the motion was filed, only one month of fact discovery remained and that the Moving DAPs waited until the eleventh hour to request the additional sales data. The Responding Defendants also describe an agreement that Defendants, Class Plaintiffs, and early DAPs negotiated in the spring of 2021, which excluded from structured data discovery the four categories of pork products now at issue.

## I.   Background

### A.   Early Structured Data Discovery

Class Plaintiffs first asked for structured sales data in November 2018. (*See* Responding Defs.' Ex. 4, Dkt. No. 1522-4.) As defined in the first set of requests for production of documents, "structured data" means "data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field." (*Id.* at 9.) The parties in the case at that time, which did not include the Moving DAPs, subsequently negotiated an agreement for the production of structured data (Dkt. No. 530), which the Court approved on November 12, 2020 (Dkt. No. 532). The deadline to "reach agreement on production of structured data or seek relief from the court"

2

was January 15, 2021, although that deadline was later extended to April 5, 2021 (Dkt. No. 749). The deadline for the substantial completion of structured data productions was September 1, 2021.

The existing parties then negotiated the products that would be subject to structured data productions. In March 2021, Defendants advised Plaintiffs that the agreement would need to apply to the early filing Winn Dixie DAP group ("Winn Dixie") as well as the Class Plaintiffs, and that Defendants would not be willing to collect data separately for Winn Dixie. (Responding Defs.' Ex. 5 at 2, Dkt. No. 1522-5.) Winn Dixie did not agree to exclude the four categories of pork products. (*See* Responding Defs.' Ex. 10 at 2–4, Dkt. No. 1522-10.) Nevertheless, by April 5, 2021, the Class Plaintiffs, the Commonwealth of Puerto Rico, and Defendants agreed to exclude the four categories from the definition of "pork," noting that Winn Dixie had "a different position on certain products and can't agree to exclude all [the excluded] products." (Responding Defs.' Ex. 9 at 2–8, Dkt. No. 1522-9.) Winn Dixie did not, however, seek relief from the Court by the April 5 deadline or ask to extend that deadline. (*See* Responding Defs.' Ex. 10 at 2.)

Structured data discovery commenced, with Defendants undertaking substantial efforts to meet the September 1, 2021 deadline. (*E.g.*, Joint Update Ltr., Dkt. No. 810; *see* Responding Defs.' Mem. Opp'n at 7–9.) Meanwhile, the Judicial Panel on Multidistrict Litigation began transferring the Moving DAPs' cases to the District of Minnesota for coordination with or consolidation in the MDL. Sysco, Amory, Nestlé USA, and Nestlé Purina were transferred in June and July 2021; Conagra in August 2021; Central Grocers

3

in November 2021; and Compass in June 2022. (*See* Responding Defs.' Mem. Opp'n at 10.)

Days after the Sysco action was transferred in June 2021, Defendants directed Sysco's counsel to the November 2020 Order governing structured data productions and asked if Sysco would abide by the deadlines. (*See* Defs.' Ltr. Ex. D, July 8, 2021, Dkt. No. 820-4.) On August 13, 2021, Smithfield emailed discovery materials to the DAPs and attached an email from March 2021 describing the categories of products that were excluded from structured sales data. (Responding Defs.' Ex. 14, Dkt. No. 1522-14.) JBS sent a similar email and attachment. (Responding Defs.' Ex. 15, Dkt. No. 1522-15.)

### B. Consolidation and Coordination of Cases

The Honorable John R. Tunheim, United States District Judge, held a status conference in July 2021 and advised the parties that "it makes no sense to proceed on separate tracks except on issues that are peculiar to a particular case and not the other." (Status Conf. Tr. at 30, *In re: Pork Antitrust Litig.*, No. 21-MD-2998 (D. Minn. July 14, 2021), Dkt. No. 14.) Judge Tunheim asked the parties to submit a proposed case management order for the MDL that coordinated "very closely" with the schedule in Case No. 18-CV-1776 such that "we're basically on the same track for everything." (Tr. at 32.) In November 2021 Judge Tunheim consolidated all cases into a single MDL and applied all existing orders and deadlines unless a party moved to modify the order or deadline. (Order Consol. at 12, Nov. 14, 2021, Dkt. No. 985.) Judge Tunheim observed that "the differences between the cases may create individualized discovery and motions issues that only apply to some parties." (*Id.* at 9.) But Judge Tunheim also wrote that "the parties and

4

the Court will need to harmonize the existing orders between the cases" and emphasized that consolidation would result in "increasing efficiency, decreasing the burdens and costs to parties, nonparties, witnesses, and the Court, and decreasing the risk of inconsistent rulings." (*Id.* at 9, 10.)

On December 10, 2021, Defendants and the newly transferred DAPs submitted a joint statement to the Court to address case management issues and propose deadlines for the MDL DAPs. (Joint Statement, Dkt. No. 1046.) The parties agreed to a deadline of December 1, 2021 for the substantial completion of production of any additional structured data requested by the DAPs. (*Id.* at 3.) Defendants also noted their position that the previously negotiated scope of structured data would apply to the MDL DAPs absent good cause to renegotiate. (Proposed Pretrial Case Management Order at 4 n.5, Dkt. No. 1046-1.) Defendants and the DAPs agreed to operate under the proposed schedule until a formal order was issued. (*See* Joint Statement at 2.) The December 1 deadline passed without a request for additional structured data from the Moving DAPS or a request for an extension of any deadlines related to structured data.

The Honorable Hildy Bowbeer, United States Magistrate Judge, now retired, held an informal dispute resolution ("IDR") conference on December 22, 2021, and denied the MDL DAPs' request for Defendants to run additional search terms. (IDR Conf. Tr. at 26–27, Dec. 22, 2021, Dkt. No. 1082.) Magistrate Judge Bowbeer explained that the Defendants had already responded to "discovery requests that involved tremendous overlap in the issues and have produced millions of documents." (*Id.* at 27.) Further, the search strategy had been "negotiated over a significant period of time with highly capable class

counsel who have been living with this case since 2018." (*Id.*) Those factors affected the proportionality analysis, as did the fact of consolidation. (*Id.*) The MDL DAPs, therefore, had the burden to assess what they already had and to explain why any deficiencies in production were important to the issues in the case. (*Id.* at 28.)

### C. The DAPs' Discovery Requests for Structured Sales Data

In October 2021, a group of DAPs that included Sysco, Amory, Conagra, Nestlé USA, and Nestlé Purina served on the Responding Defendants discovery requests, including Request for Production 28, seeking structured data for pork sales. (Moving DAPs' Ex. A at 16–18, Dkt. No. 1496-1; *see* Moving DAPs' Mem. Supp. at 3.) "Pork" was defined by the DAPs as "pig or swine meat sold or purchased fresh or frozen, including smoked ham, sausage, and bacon." (Moving DAPs' Ex. A at 6.) The definition did not include the four categories of products now at issue.

In discovery responses served in November 2021, Defendant JBS noted that it had already produced structured data sufficient to show its sales of pork in the United States but would produce "any such remaining data" after a reasonable search; the Smithfield, Hormel, and Tyson Defendants also referred to previously produced structured data in their responses. (Moving DAPs' Ex. B at 53–54, Dkt. No. 1497; Ex. C at 45, Dkt. No. 1497-1; Ex. D at 27, Dkt. No. 1497-2; Ex. E at 33, Dkt. No. 1497-3.) The Moving DAPs reviewed the structured data productions, met and conferred with some of the Responding Defendants in January and February 2022, and provided additional information or clarification. (*See* Responding Defs.' Exs. 12, 16, 17.)

The Moving DAPs claim they did not realize until mid-March 2022 that data for the four product categories at issue was missing from Defendants' productions. (Moving DAPs' Mem. Supp. at 4.) On May 31, 2022, the Moving DAPs sent a letter to the Responding Defendants formally asking for the sales data for the four excluded categories of pork products. (Moving DAPs' Ex. F, Dkt. No. 1497-4.) Smithfield responded on June 13, 2022, pointing out that "the parties negotiated at length last year over the scope of the defendants' data productions, and Smithfield relied upon agreements reached during those talks in producing its voluminous transaction data from multiple different databases." (Moving DAPs' Ex. I, Dkt. No. 1496-9.) Hormel explained on June 25, 2022, that its "productions of structured data were subject to extensive negotiation dating to early 2021," and Hormel did "not view it as reasonable for DAPs to join the litigation after Hormel Foods produced its sales data and then seek to relitigate data to be produced long after the Court's deadline for production of structured data has passed." (Moving DAPs' Ex. H, Dkt. No. 1496-8.) JBS pointed out in August 2022 that the DAPs did not request the additional sales data until May 31, 2022, more than a year after the scope of data production was negotiated, and nine months after most of JBS's structured data was produced. (Moving DAPs' Ex. K, Dkt. No. 1496-11.) The Moving DAPs filed the instant motion on September 20, 2022.

On October 4, 2022, Judge Tunheim entered Pretrial Order No. 1 (Dkt. No. 1525). The order did not extend or set a new deadline for structured data productions and explicitly did "not assume that additional structured data requests or new proposed search terms will

7

necessarily be deemed proportional to the needs of the case." (Pretrial Order No. 1 at 4 & n.5.)

## II. Legal Standards

### A. Federal Rule of Civil Procedure 26(b)(1)

Federal Rule of Civil Procedure 26(b)(1) establishes the scope and limitations of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party seeking the discovery must meet a threshold burden to show relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). "Once the party seeking the discovery has made a threshold showing of relevance, the court generally looks to the party resisting discovery to show specific facts demonstrating lack of relevancy or undue burden." *Baker v. Cenlar FSB*, No. 20-CV-0967 (JRT/HB), 2021 WL 2493767, at *3 (D. Minn. June 18, 2021).

Rule 26 also requires information sought in discovery to be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Factors important to the proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

### B. Federal Rule of Civil Procedure 16(b)(4)

Federal Rule of Civil Procedure 16(b)(4) provides that a pretrial schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The

8

primary measure of good cause is the movant's diligence in attempting to meet deadlines." *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020) (quoting *Albright v. Mountain Home Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019)). The "exacting" good cause standard "demands a demonstration that the existing schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 581–82 (D. Minn. June 7, 1999) (quotation omitted). As with other scheduling matters, the good cause showing "falls within the magistrate judge's broad discretion." *Shank v. Carleton College*, 329 F.R.D. 610, 614 (D. Minn. Jan. 7, 2019). "[W]hile diligence is the primary factor for assessing good cause, nothing limits the Court's 'broad discretion in establishing and enforcing the deadlines' in the scheduling order." *Portz v. St. Cloud State Univ.*, No. 16-CV-1115 (JRT/LIB), 2017 WL 3332220, at *3 (D. Minn. Aug. 4, 2017) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)).

### III.   Discussion

The Moving DAPs argue that the sales data they seek is relevant and proportional to the needs of the case, that they are not bound to the early parties' agreement excluding certain pork products from structured data productions, and that production of the requested data will not unduly burden the Responding Defendants. The Moving DAPs do not discuss timeliness, however, which is the core issue.

The extended deadline for the parties to reach agreement on the production of structured data or seek relief from the Court was April 5, 2021, and the deadline for the substantial completion of structured data productions was September 1, 2021. Granted, the

9

first Moving DAP was not transferred to the District of Minnesota until June 2021—after the April 2021 deadline for the parties to reach agreement, but before the substantial completion date. Each Moving DAP knew or should have known of these deadlines not long after it was transferred here.

The Moving DAPs also knew as early as July 2021 that Judge Tunheim wanted all parties to proceed on the same schedule, unless there were unique issues in a particular case, and the Moving DAPs knew in November 2021 that all previous deadlines applied to them unless they filed a motion to extend them. But the Moving DAPs waited ten months from the entry of the consolidation order to file the instant motion.

The Moving DAPs contend that they were not aware of the excluded categories of products until March 2022. If true, that was a serious lack of diligence, in light of the August 2021 emails advising the DAPs of the products that would be excluded from structured sales data productions. The Court also notes the statement in footnote 5 of the joint Proposed Pretrial Case Management Order filed on December 10, 2021, reflecting Defendants' belief that the previously negotiated scope of structured data would apply to the MDL DAPs. Either the Moving DAPs knew about the scope agreement or, if not, this statement should have prompted them to ask. The Moving DAPs were also put on notice by Magistrate Judge Bowbeer in December 2021 that they were likely to be held to previous agreements between the early parties to the case.

Given all of the circumstances, the Court finds the Moving DAPs' motion untimely. To the extent the pretrial schedule would need to be modified to extend the deadlines for discussions about and production of structured data, the Court finds that good cause does

10

not exist. *See* Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet deadlines," *Ellingsworth*, 949 F.3d at 1100, and the Moving DAPs, except Compass,[1] have not been diligent. The deadlines to reach agreement on structured data productions, for substantial completion of structured data productions, and for additional structured data productions expired long ago, and the Moving DAPs do not have carte blanche to seek the production of additional sales data. The Court finds that the Moving DAPs, with the exception of Compass, should have sought relief from the Court no later than the end of December 2021, and that this untimeliness, which is not excused by diligence, is sufficient reason to deny the motion as to all Moving DAPS other than Compass.

The Moving DAPS did not formally move to modify any deadlines, however, neither side addressed good cause or diligence, and limiting the analysis to timeliness or its lack leaves the motion unresolved as to Compass. The Court will therefore separately consider whether the discovery sought by the Moving DAPs is relevant and proportional, and will consider the delay by the Moving DAPs as a highly significant factor.

Beginning with relevance, the Moving DAPs argue that the structured sales data for the excluded products is relevant to their claim that they overpaid for the excluded products. (Moving DAPs' Mem. Supp. at 9.) The Moving DAPs, particularly Nestlé Purina, purchased significant quantities of such products. (*Id.*) The Responding Defendants concede that the definition of "pork" in some of the Moving DAPs' complaints includes

---

[1] The Court acknowledges that Compass was transferred here on June 23, 2022.

11

processed pork products and pork by-products, which can include offal, organs, and rendered products. (Responding Defs.' Mem. Opp'n at 22; *see, e.g.*, Nestlé Second Am. Compl. ¶ 2 n.2, Dkt. No. 1316.) Defendants also point out, however, that the complaints refer to the "homogenous" nature of products like pork loins, bacon, and ribs (*e.g.*, Nestlé Second Am. Compl. ¶ 94), but products like breakfast burritos might be highly differentiated. (Responding Defs.' Mem. Opp'n at 23.) That point is well-taken, but the excluded products at issue also include homogenous products like offal, blood meal, and bone meal. On the whole, the Court finds the excluded products somewhat relevant to the Moving DAPs' claims, particularly the Nestlé DAPs.

Of the proportionality considerations, delay is the most significant. The Court discussed this earlier and there is no need to belabor the point again here. The Moving DAPs' delay in seeking relief from the Court weighs strongly against a finding of proportionality. Further, the Moving DAPs' delay in seeking relief from the Court undermines the claim that the four excluded categories are important to the issues in this litigation.

The parties' relative access to relevant information is another critical factor. The Moving DAPs are just as likely to have the purchase records for the excluded products as Defendants are to have the sales records. The Moving DAPs have not explained why their own purchase data will not suffice.

The burden and expense of producing the additional data also favors the Responding Defendants. After negotiating the scope of structured data productions for months, they spent thousands of hours collecting and producing 175 gigabytes of data. Tyson, for

12

example, spent more than 1,200 hours on data collection. (Strang Aberg Decl. ¶ 10, Dkt. No. 1521-2.) Collecting the additional data would require a "redo" starting from stage one. (Joyner Decl. ¶ 14, Dkt. No. 1521-3.)

The remaining proportionality factors (the amount in controversy and the parties' resources) do not favor one side or the other. However, there are other relevant proportionality factors in play, one of which is the negotiated agreement in April 2021. Even though the negotiations occurred before most of the Moving DAPs were transferred to this Court, the parties' agreement on structured data productions was negotiated over a long period of time and between highly competent counsel. As Magistrate Judge Bowbeer remarked in December 2021, that is a factor in the proportionality analysis. The consolidation of cases in November 2021 is also a relevant factor that weighs against proportionality. Judge Tunheim advised the parties in the consolidation order that consolidation would result in greater efficiency, decreased burdens and costs, and a lower risk of inconsistent rulings. The Moving DAPs' present motion is at odds with those goals.

Having considered relevance and the applicable proportionality factors, the Court finds that the relevance of the additional sales data is outweighed by proportionality concerns. The Court also finds that the moving DAPs (except Compass) have not been diligent and, to the extent the pretrial schedule must be modified, good cause does not exist to allow the requested discovery. Accordingly, **IT IS HEREBY ORDERED** that:

1. The Motion to Compel Production of Sales Data (Dkt. No. 1493) is **DENIED**.
2. This Order shall be unsealed in its entirety 30 days from the date it is filed, unless the parties show in writing good cause to keep specific portions of the Order

under seal. Accordingly, the parties shall promptly meet and confer regarding any redactions that may be required to protect confidential information referred to in this Order, and shall file a joint letter and proposed redacted order within 14 days from the date this Order is filed, identifying with specificity the redactions they believe are required and the basis for those redactions.

Date: November 16, 2022                              *s/ John F. Docherty*
                                                                                           JOHN F. DOCHERTY
                                                                                           United States Magistrate Judge