# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Case No. 0:18-cv-01776-JRT-JFD |
| This Document Relates To:<br><br>ALL COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTIONS | Judge John R. Tunheim<br>Magistrate John F. Docherty<br><br>**REPLY MEMORANDUM IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND FOR APPOINTMENT OF LEAD COUNSEL AND PLAINTIFFS' STEERING COMMITTEE** |

**REDACTED**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................iii

INTRODUCTION ........................................................................................... 1

I.   The Existence of the Antitrust Violation Is Capable of Common Proof. ............... 4

    A.   Defendants' Alleged Conspiracy Will Be Proven via Common Evidence... 4

    B.   Integrator Defendants Control Pork Production and Conspired To Reduce Output. ........................................................................................ 4

II.  Antitrust Impact and Damages Are Capable of Common Proof............................ 5

    A.   Impact Is Capable of Proof on a Class-Wide Basis. ..................................... 5

    B.   Impact is Capable of Being Shown at the Class Member Level.................. 6

    C.   Any Differences Among Class Members Do Not Affect the Common Impact Showing. ................................................................................... 7

        1.   CIIPP Class Representative Testimony Confirms that Common Impact Is Expected. .................................................................. 7

        2.   Empirical Analysis Confirms Class Members' Impact, Despite Any Pricing Practice Variations................................................... 9

III. Damages Will Be Established Through Common Proof. ....................................... 9

    A.   Dr. Williams' Models Employ a Valid Benchmark Period for Impact and Damages Measurement. .............................................................. 10

    B.   Overcharge and Damages Can Be Reliably Estimated on a Class-Wide Basis. ................................................................................... 10

IV.  Defendants' State Law Arguments Misapprehend the Theory of CIIPPs' Case and Governing Law. ........................................................................................ 10

    A.   State Antitrust Laws Do Not Contain Variations Material to Class Certification............................................................................... 13

    B.   Relevant Consumer Protection Laws Do Not Contain Any Differences Material to this Case.................................................................... 16

C.     States' Unjust Enrichment Law Do Not Contain Any Differences Material to this Case. ................................................................................. 19

      1.     None of the Purported Differences in Unjust Enrichment State Law Are Material in the Present Factual Context. ................................... 19

      2.     The Specific Purported Conflicts Defendants Raise Are Illusory. .. 21

      3.     At a Minimum, the Court Should Certify the Unjust Enrichment Subclass. ............................................................................................. 24

D.     The Jury Will Not Be Forced to Consider "Myriad" Statutes of Limitations. ................................................................................................... 24

E.     Any Material Variations in State Law the Court Identifies Should Be Addressed via Subclasses. ........................................................................... 26

V.     Rule 23 Does Not Demand a Class Representative from Each State. ..................... 27

VI.     The Proposed Classes Are Ascertainable. ............................................................. 30

VII.     CONCLUSION ...................................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aceto Corp. v. Therapeutics MD, Inc.*, 2013 WL 3761073 (S.D. Fla. July 17, 2013)......22

*Aetna Life Ins. Co. v. Satterlee*, 475 N.W.2d 569 (S.D. 1991) ........................................21

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).........................................................3, 28

*Anderson v. Travalex Insurance Servs.*, No. 8:18-CV-362, 2020 WL 1323489 (D. Neb.
   Mar. 20, 2020) ...........................................................................................................28

*Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795 (8th Cir. 2017) ............................33

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ......................................28

*Brown v. Wells Fargo*, 284 F.R.D. 432 (D. Minn. 2012)..................................................31

*Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323 (S.D. Fla. 2014)............................22

*Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (Cal. 2010).....................................................13

*Commercial Fed. Bank v. Qwest Corp.*, 695 N.W.2d 41 (Iowa Ct. App. 2004)..............23

*Cox v. Spirit Airlines, Inc.*, 341 F.R.D. 349 (E.D.N.Y. 2022).........................................25

*Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822 (D. Minn. 2010) ...................................24

*Doe v. Blum*, 729 F.2d 186 (2d Cir. 1984) .......................................................................27

*Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423 (S.D.N.Y. 1986).............21

*Dowling Fam. P'ship v. Midland Farms*, 865 N.W.2d 854 (S.D. 2015) .........................21

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998) ...........................28, 29

*Feiner v. Innovation Ventures LLC*, 2013 WL 2386656 (S.D. Fla. May 20, 2013) .........22

*Ford v. TD Ameritrade Holding*, 995 F.3d 616 (8th Cir. 2021).......................................33

*H & T Fair Hills, Ltd. v. All. Pipeline L.P.*, 2021 WL 2526737 (D. Minn. June 21, 2021) ...................................................................................................................... 33

*Hall v. Lhaco, Inc.*, 140 F.3d 1190 (8th Cir. 1998) ............................................ 30

*Horne v. Flores*, 557 U.S. 433 (2009) .............................................................. 28

*Hosp. Auth. of Metro Gov't of Nashville v. Momenta Pharm. et al.*, 333 F.R.D. 390 (M.D. Tenn. 2019) .................................................................................................. 20

*In re Abbott Lab'ys Norvir Anti–Trust Litig.*, Nos. C 04–1511 CW, C 04–4203 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007) .......................................................... 20

*In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018) ................................ 29

*In re Auto. Parts Antitrust Litig. (Fuel Senders)*, 29 F. Supp. 3d 982 (E.D. Mich. 2014) 22, 23

*In re Auto. Parts*, 2013 WL 2456612 (E.D. Mich. Jun. 6, 2013) ..................... 17

*In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468 (N.D. Ill. May 27, 2022) 11, 12, 15, 16, 19, 24, 26

*In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2018 WL 999899 (N.D. Ill. Feb. 21, 2018) ..................................................................................................... 14

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618 (E.D. Mich. 2000) .................. 23

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales and Marketing Litig.*, 270 F.R.D. 521 (N.D. Cal. 2010) ....................................................................................................... 29

*In re Domestic Drywall Antitrust Litig.*, 2016 WL 4409333 (E.D. Pa. Aug. 18, 2016) ... 30

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 1180550 (D. Kan. Mar. 10, 2020) ................................................................... 18

iv

*In re Hartford Sales Practices Litig.*, 192 F.R.D. 592 (D. Minn. 1999) ..........................26

*In re Levaquin Products Liab. Litig.*, 752 F. Supp. 2d 1071 (D. Minn. 2010) ................24

*In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ..................................................................................................12, 25

*In re Linerboard Antitrust Litig.*, 305 F.3d 145 (3d Cir. 2002)..........................................25

*In re McCormick & Co., Inc.*, 217 F. Supp. 3d 124 (D.D.C. 2018) ..................................20

*In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527 (S.D.N.Y. 2021)12, 25

*In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168 (D. Mass. 2013) .......12, 25

*In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83 (D. Mass. 2008) ...12, 26

*In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226 (N.D. Ohio 2014)..................12

*In re Prempro Prod. Liab. Litig.*, 230 F.R.D. 555 (E.D. Ark. 2005) ..........................16, 20

*In re Processed Egg*, 851 F. Supp. 2d 867 (E.D. Pa. 2012) ..................................17, 22, 23

*In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294 (D. Mass. 2021) ..................................................................................................................................12

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. 2020) ..................................................................................................12

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017) ..............................................................20

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 07–MD–01819 CW, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ..........................................................23

*In re TFT-LCD*, 267 F.R.D. 583 (N.D. Cal. 2010)..........................................................15

*In re Union Pac. R.R. Emp. Pracs. Litig.*, No. 803CV437, 2005 WL 1027078 (D. Neb. Mar. 31, 2005) ........................................................................................................ 2

*In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2020 WL 5778756 (E.D. Va. Aug. 14, 2020) ..................................................................................................... 12

*In re Zurn Pex Prod. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011)...................................... 8, 9

*Insulate SB, Inc. v. Advanced Finishing Systems*, 2014 WL 943224 (D. Minn. Mar. 11, 2014). ..................................................................................................................... 30

*Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 951 (D. Minn. 2020) .......... 17

*Johannessohn v. Polaris Indus., Inc.*, 9 F.4th 981 (8th Cir. 2021).................................... 13

*Kammer Asphalt Paving Co., Inc. v. East China Township Schools*, 443 Mich. 176 (Mich. 1993) ...................................................................................................................... 23

*Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010) ..................... 20

*Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004 (D. Minn. 2012)................................ 17

*Klay v. Humana*, 382 F.3d 1241 (11th Cir. 2004)....................................................... 26, 29

*LaMotte v. Punch Line of Columbia, Inc.*, 370 S.E.2d 711 (S.C. 1988) .......................... 18

*Langan v. Johnson & Johnson Consumer Co.*, 897 F. 3d 88 (2d Cir. 2018) ................... 29

*LePage v. Blue Cross and Blue Shield of Minnesota*, 2008 WL 2570815 (D. Minn. June 25, 2008) ................................................................................................................. 23

*McKeage v. TMBC*, 847 F.3d 992 (8th Cir. 2017) .......................................................... 33

*Melton v. Century Arms, Inc.*, 2017 WL 1063449 (S.D. Fla. Mar. 20, 2017)................. 22

*Mono Advert., LLC v. Vera Bradley Designs, Inc.*, 285 F. Supp. 3d 1087 (D. Minn. 2018) ................................................................................................................................. 23

*Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187 (Mich. Ct. App. 2006) ... 23

*Morrison v. YTB Int'l*, 649 F.3d 533 (7th Cir. 2011) ........................................................ 29

*Mullins v. Direct Digital*, 795 F.3d 654 (7th Cir. 2015) ...................................... 31, 33, 34

*Mund v. EMCC, Inc.*, 259 F.R.D. 180 (D. Minn. 2009).................................................... 11

*Neale v. Volvo Cars*, 794 F.3d 353 (3d Cir. 2015 ............................................................ 27

*Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136 (Neb. 2000) ............................... 18

*Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14 (D. Mass. 2010)........................................... 20

*Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774 (S.C. 2021)................................ 18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ..................................................... 11

*Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505 (D. Minn. 2014) ............................ 20

*Rikos v. Procter & Gamble*, 799 F.3d 497 (6th Cir. 2015) ............................................... 32

*Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781 (S.D. Fla. Nov. 26,
   2007) ............................................................................................................................... 22

*Sandusky Wellness Ctr. v. Medtox Sci.*, 821 F.3d 992 (8th Cir. 2016).................. 31, 32, 33

*Schumacher v. Schumacher*, 627 N.W.2d 725 (Minn. Ct. App. 2001) ............................ 23

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline*, 737 F. Supp.
   2d 380 (E.D. Pa. 2010) .......................................................................................... 17, 23

*State Farm Mut. Auto. Ins. Co. v. Brown*, 2017 WL 1291995 (S.D. Fla. Mar. 30, 2017) 22

*Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371 (8th Cir. 2018)................... 14, 18, 26

*Tyler v. Alltel Corp.*, 265 F.R.D. 415 (E.D. Ark. 2010).................................................... 20

*Tyson Foods v. Bouaphakeo*, 577 U.S. 442 (2016).......................................... 1, 2, 3, 9, 14

*United Wis. Servs. v. Abbott Labs. (In re Terazosin Hydrochloride)*, 220 F.R.D. 672 (S.D. Fla. 2004) ........................................................................................................... 19, 20

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) .................. 28

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................... 15, 25, 28

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) .......................... 25

*Webb v. Exxon Mobil Corp.*, 856 F.3d 1150 (8th Cir. 2017) ............................................ 13

*Westway World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223 (C.D. Cal. 2003) ............... 20

*Williams v. Wells Fargo Bank N.A.*, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011) ........ 22

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100 (1969) ..................................... 1

**Other Authorities**

ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS (9th ed. 2022) ... 15

Fed. R. Civ. P. 23 advisory committee's note to 1966 revision, 28 U.S.C. app. (1994 ed.)
................................................................................................................................. 1, 3

Judge John F. Docherty, Practice Pointers and Preferences ............................................... 16

Judge John R. Tunheim, Practice Pointers and Preferences ............................................... 16

**Rules**

D. Minn. L.R. 7.1 ............................................................................................................. 16

Fed. R. Civ. P. 11 ............................................................................................................ 16

Fed. R. Civ. P. 23 ............................................................................................................ 16

Fed. R. Civ. P. 23(b)(3)(D) ............................................................................................. 31

Fed. R. Civ. P. 23(c)(1)(A) ............................................................................................. 32

Fed. R. Civ. P. 7 .................................................................................................. 16

**Treatises**

Manual for Complex Litigation (4th ed. 2004) ................................................. 33

R. Leflar, American Conflicts Law (3d ed. 1977) ............................................ 11

Restatement (First) of Restitution (1937) ........................................................ 21

William B. Rubenstein, 2 Newberg on Class Actions (5th ed. 2021) ......................... 25, 33

## INTRODUCTION

The fundamental question at class certification "is whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Where "the same evidence will suffice for each member to make a prima facie showing," *id.*, certification of a class action "achieve[s] economies of time, effort, and expense, and promote[s] uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23 advisory committee's note to 1966 revision, 28 U.S.C. app. at 319 (1994 ed.).

In their motion for class certification, Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") requested certification of (1) a Rule 23(b)(2) class for injunctive relief, and (2) a Rule 23(b)(3) class to recover damages caused by Defendants' alleged conspiracy. CIIPPs have demonstrated that the core issues in this case turn on common evidence and that those issues predominate over any individual issues that are unique to particular class members. *First*, the existence and nature of the conspiracy is established through common evidence of market structure, Defendants' opportunities to collude with one another, their public and private communications, and, importantly, their use of Agri Stats to exchange highly confidential competitive information. *Second*, CIIPPs have proffered multiple bodies of evidence to show "antitrust impact" — the requirement that each class member be "injured to some extent." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 114 (1969); *see id.* at 114 n.9 (explaining that antitrust injury requires proving "the fact," as distinct from the "amount[,] . . . of damage"). That evidence includes

1

expert testimony about the structure and characteristics of the U.S. pork market, *see* Williams Rep. ¶¶ 70-127; Defendants' own expectations about the effects of their supply restriction conduct, *see* Memorandum in Support of Commercial and Institutional Indirect Purchaser Plaintiffs' Motion for Class Certification and Appointment of Lead Counsel and Plaintiffs' Steering Committee ("Mem.") at 7-17, ECF No. 1428; and multiple economic models prepared by Plaintiffs' expert economist, Dr. Michael Williams, analyzing pricing and sales data Defendants and third party distributors produced during discovery, *see* Corrected Expert Report of Michael A. Williams, Ph.D. ¶¶ 202-280, ECF No. 1429 ("Williams Rep."). *Third*, while "damages or some affirmative defenses peculiar to some individual class members" do not preclude certification, *Tyson*, 577 U.S. at 453, Dr. Williams proves damages via an economic analysis courts have used repeatedly in indirect purchaser cases. *See* Williams Rep. ¶ 288, Table 12.

Defendants' opposition to CIIPPs' motion does not even cite Rule 23(b)(2), nor do they contest the propriety of certifying a (b)(2) class. *See* CIIPP Opposition Mem., ECF No. 1473 ("Opp. Mem."). That concession speaks volumes, for such a class "is, by its very nature, assumed to be a homogenous and cohesive group." *In re Union Pac. R.R. Emp. Pracs. Litig.*, No. 803CV437, 2005 WL 1027078, at *5 (D. Neb. Mar. 31, 2005). Defendants instead focus on CIIPPs' request for certification of a Rule 23(b)(3) class. They attempt to litigate the merits of the case, demand CIIPPs satisfy proof requirements that are inapposite to the theory of their claims and found nowhere in the governing law, attempt to undermine Dr. Williams' analysis, and contend that the alleged conspiracy is simply too

complicated to be adjudicated in a proceeding where the impacted may fairly and efficiently assert their claims.

For its part, the thrust of the omnibus brief boils down to, "We didn't do it." *See* Omnibus Opp. Mem., ECF No. 1441 ("Omni. Mem."). Although Defendants are entitled to present that argument to a jury, it is beside the point at class certification, where the relevant question is whether CIIPPs' case turns on common proof. *Tyson*, 577 U.S. at 453. CIIPPs have shown that the existence of the conspiracy is a common question capable of being answered with reference to common evidence. Despite Defendants' efforts, the core issues in dispute — antitrust violation, impact, and damages — remain capable of class-wide proof through a common body of evidence that will not vary from one class member to the next. Ironically, much of the evidence Defendants mount in opposition to Plaintiffs' motion for class certification goes to common, class-wide issues. While Plaintiffs will explain why the jury should reject this evidence, Defendants' *own evidentiary presentation* shows that CIIPPs' claims will rise or fall based on a common body of evidence — precisely the situation in which certification of a (b)(3) action is appropriate. *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) (citing Fed. R. Civ. P. 23 advisory committee's note to 1966 revision, 28 U.S.C. app. at 697).

This matter thus remains a classic antitrust case of the type courts in this circuit and elsewhere have repeatedly certified. CIIPPs respectfully request that the Court find that CIIPPs have carried their burden of showing that Rule 23's requirements are satisfied by a preponderance of the evidence and grant their motion for certification of the proposed (b)(2) and (b)(3) classes.

3

I.    **The Existence of the Antitrust Violation Is Capable of Common Proof.**

CIIPPs allege that Defendants engaged in a conspiracy constituting a single continuing violation of antitrust law. Defendants advance arguments about the feasibility of conducting such a conspiracy. Opp. Mem. at 3-8; Omni. Mem. 13-35. CIIPPs and their experts contest Defendants' arguments, *Daubert* Opp. Mem. ("*Daubert* Opp. Mem."), but the critical point in the context of class certification is that the issues will be contested using common proof and ultimately will result in a common outcome via a decision about whether Defendants joined the conspiracy alleged by CIIPPs.

A.    **Defendants' Alleged Conspiracy Will Be Proven via Common Evidence.**

CIIPPs' theory of harm is unitary and simple: Defendants conspired to restrict domestic supply of pork products by engaging in several types of conduct, among them collusion regarding exports and the use of Agri Stats to monitor competitors. Mem. at 6-18. Whether this antitrust conspiracy existed is a common question that can be answered via common proof—a fact that militates in favor of class certification and, in the antitrust context, is supported by a considerable body of caselaw. Mem. at 22-23.

B.    **Integrator Defendants Control Pork Production and Conspired To Reduce Output.**

Vertical integration is common in the pork industry, including among Defendants, whether because Defendants own their own production facilities or are in long-term commercial relationships with hog producers. *See* Williams Rep. ¶¶ 44-55; Omni. Mem. at 13. Dr. Williams' showing that pork production in the actual world was statistically significantly lower than production but-for the alleged conspiracy confirms that Defendants were able

4

to exercise sufficient control over pork and the corresponding input markets to restrict supply. *See* Williams Rep. ¶¶ 143-170; Declaration of Blaine Finley in Support of Commercial and Institutional Indirect Purchaser Plaintiffs' Reply in Support of Their Motion For Class Certification ("Finley Decl."), Ex. 1, Expert Reply Report of Michael A. Williams, Ph.D. ("Williams Reply Rep."), ¶¶ 71-87.

## II.    Antitrust Impact and Damages Are Capable of Common Proof.

Considering the overlap between Defendants' motion to exclude the testimony of Dr. Williams ("*Daubert* Mem."), Plaintiffs incorporate by reference their opposition to Defendants' *Daubert* motion rather than repeat their arguments here. Because they provide important context for this filing, CIIPPs also incorporate by reference the class certification motions, reply memoranda, and *Daubert* opposition briefs that the other proposed classes have filed in this matter.

### A.    Impact Is Capable of Proof on a Class-Wide Basis.

Defendants claim that Plaintiffs' ▮▮▮▮ direct purchaser antitrust impact estimate is inapt. Opp. Mem. at 12, 17. Defendants helpfully point out that a precise formulation of Dr. Williams' impact result is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which is exactly the kind of "all or nearly all" showing invoked by the class certification process. Williams Rep. ¶ 262; Opp. Mem. at 12-13. Dr. Williams confirms that his model estimates impact to all or nearly all direct purchasers on at least one purchase when he narrows the scope of the test to the class period ▮▮▮▮▮▮▮▮▮▮▮ and to only direct purchasers that distribute

pork to CIIPP class members during that timeframe █████████████████
Williams Reply Rep. ¶ 147. Defendants suggest that Dr. Williams' methodology ████
████████████████████████████████████████████████ Opp. Mem. at 13;
Omni. Mem. at 42. But as Dr. Williams explains, their expert, Dr. Haider, only received
this result because she modified Dr. Williams' methodology to no longer compare actual
prices with predicted but-for prices. "Williams Reply Rep." ¶¶ 153-159.

Defendants claim that Dr. Williams' methodology is unsupported, but numerous
courts have found it relevant and reliable in the class certification context. *See* Mem. at 34.

### B.     Impact is Capable of Being Shown at the Class Member Level.

Defendants posit that Dr. Williams erred by analyzing the entire conspiracy and
should have begun his analysis at the point when CIIPPs' claims for monetary damages are
unquestionably timely. Opp. Mem. 17. As explained more fully in CIIPPs' response to
Defendants' *Daubert* motion, this argument confuses the question of how to analyze the
conspiracy's effects as an *economic* matter with the *legal* requirement of respecting the
statute of limitations.

From an economic standpoint. Dr. Haider's choice █████████████████
████ from the class period is arbitrary, because it is motivated exclusively by the legally-
driven statute of limitation. Williams Reply Rep. ¶¶ 80-82, 103-106. ██████████
████████████████████████████████████████████████████
████████████████████████ Williams Rep. ¶¶ 160-170. But other specifications of
economic analysis rebuts this "finding." ██████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████ Williams Reply Rep. ¶¶ 170-171, Figures 5-6.

Defendants highlight a backup analysis where Dr. Williams reported transaction-specific regression estimates ████████████████████████████████████ ████ and claim that these estimates "contradict" Dr. Williams' principal findings. *Daubert* Mem. at 26-27. Notably, ███████████████████ Defendants' comparison of these figures, which correspond to individual distributors and result from using a model designed to detect impact to individual CIIPP class members, does not undermine the common overcharge figure estimated based on transactional data showing Defendants' sales to all relevant direct purchasers. Williams Rep. ¶ 226.

### C. Any Differences Among Class Members Do Not Affect the Common Impact Showing.

Defendants suggest that (i) variations among CIIPP class members reflected in restaurant size and purchasing volume and (ii) variations in their purchasing practices make certification of the proposed classes improper. Opp. Mem. at 4-6, 19. But their arguments are inconsistent with the evidentiary record. Evidence about CIIPP class representatives' business practices and an extensive analysis of transactional data tracing overcharges from Defendants to CIIPP class members both confirm that certification is warranted.

### 1. CIIPP Class Representative Testimony Confirms that Common Impact Is Expected.

CIIPP class members are fundamentally a unitary, identifiable group: restaurants and other businesses that buy pork and prepare food. Foodservice distributors, such as

Sysco and US Foods, form a channel that distributes pork and other food products from Defendants to restaurants. *See* Finley Decl., Ex. 2 (Edley's Dep.) 13:24-14:8; Ex. 3 (Grady Dep.) 102:21-103:4; Ex. 4 (Farah Dep.) 39:21-40:13; Ex. 5 (Longhorn's Dep.) 35:5-16; Ex. 6 (Breakfast Joynt Dep.) 34:5-19; Ex. 7 (Joe's Steak and Leaf) 69:8-16; Ex. 8 (Basil Charlotte Dep.) 46:8-16, 68:17-69:5; Ex. 9 (Basil Mt. Pleasant Dep.) 29:2-11; Ex. 10 (Sandee's Dep.) 24:2-12; Ex. 11 (Francis T. Dep) 99:12-16. Testimony confirms that CIIPPs are fundamentally price takers in this foodservice supply chain. *See* Finley Decl., Ex. 3 (Grady Dep.) 158:4-25; Ex. 4 (Farah Dep.) 62:10-21; Ex. 5 (Longhorn's Dep) 48:7-12; Ex. 6 (Breakfast Joynt Dep.) 34:5-19; Ex. 7 (Joe's Steak and Leaf Dep.) 69:8-16; Ex. 8 (Basil Charlotte Dep.) 62:2-7; Ex. 10 (Sandee's Dep.) 39:18-40:23, 52:11-21. Defendants' contention that bargaining power and related pricing concepts enabled class members to avoid paying overcharges is rebutted by the record. Defendants posit, for example, that large restaurants' bargaining power allowed them to evade the supracompetitive price increases caused by the Defendants' conduct. Opp. Mem. at 5-7. The record suggests, however, that food distributors' pricing practices ███████ ████████████████████████████████████████████████████ *See* Finley Decl., Ex. 12 (David Allen Dep.) 181:5-13, 183:23-184:25. Defendants have adduced no evidence that bargaining power changed, let alone systematically increased, such that CIIPP class members were suddenly able to negotiate favorable prices at the beginning of the conspiracy. On this evidentiary record, hypothetical differences among class members are not a basis for denying certification. *See In re Zurn Pex Prod. Liab. Litig.*, 644 F.3d 604, 618-19 (8th Cir. 2011) (individual defenses subject to evidence-based "rigorous analysis").

### 2.     Empirical Analysis Confirms Class Members' Impact, Despite Any Pricing Practice Variations.

Although Defendants suggest that various pricing practices may have enabled CIIPP class members to avoid being affected by the alleged conspiracy, Opp. Mem. at 5-7, their argument is again inconsistent with the record. █████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████ *See* Williams Rep. ¶¶ 227-280; Williams Reply Rep. ¶¶ 140-192 *See Zurn*, 644 F.3d at 619 (rejecting individualized issue argument where defendant failed to provide sufficient *evidence* that individual conditions or differences would impact liability to the class). That is unsurprising, for the conspiracy would not be profitable if it did not broadly impact the CIIPPs class.

## III.    Damages Will Be Established Through Common Proof.

Damages issues have no bearing on CIIPPs' motion for certification of a (b)(2) class, and the need for calculations "peculiar to some individual class members" does not make certification of a Rule 23(b)(3) class improper. *Tyson*, 577 U.S. at 453. Defendants nevertheless assert that Dr. Williams cannot reliably estimate the damages class members suffered from the alleged conspiracy. Opp. Mem. at 12, 16-17. Contrary to Defendants' assertions, Dr. Williams specifies his benchmark period correctly and estimates damages attributable to commerce during the class period. Opp. Mem. at 12, 16-17.

A.    **Dr. Williams' Models Employ a Valid Benchmark Period for Impact and Damages Measurement.**

Defendants lodge several arguments about the benchmark and damages period Dr. Williams used. Opp. Mem. at 12, 16-17; Omni. Mem. at 40-47. But his models reliably estimate damages during all periods relevant to the case. Dr. Williams shows that the "market abnormalities" Defendants claim are present in his benchmark period are already accounted for in his regression models. Williams Reply Rep. ¶¶ 117-121. Williams Rep. ¶¶ 205-226, 281-288, Table 12: Omni. Mem. at 30, 40-43. Whatever Defendants' criticisms of Dr. Williams' findings, they go only to their persuasiveness, not Dr. Williams' ability to show damages using common proof.

B.    **Overcharge and Damages Can Be Reliably Estimated on a Class-Wide Basis.**

Defendants claim that Dr. Williams fails to estimate a common overcharge for the class period. Opp. Mem. at 7. ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████. ¶¶ 287-288. When Dr. Williams modified his model to respond to Dr. Haider's criticisms, he found that ████████████████████████████████

████████████  Williams Reply Rep. ¶¶ 102-108.

IV.   **Defendants' State Law Arguments Misapprehend the Theory of CIIPPs' Case and Governing Law.**

As part of its Rule 23 analysis, the Court should consider whether differences in state law give rise to individualized issues that predominate over common issues. *See Mund*

10

*v. EMCC, Inc.*, 259 F.R.D. 180, 184 (D. Minn. 2009). Purported conflicts only matter, however, if they relate to issues actually in dispute. "'If the laws of both states *relevant to the set of facts* are the same, or would produce the same decision in the lawsuit, there is no real conflict between them.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 838 n.20 (1985) (Stevens, J., concurring in part) (emphasis added) (quoting R. Leflar, American Conflicts Law § 93, p. 188 (3d ed. 1977)).

As CIIPPs' motion demonstrated, there are no real conflicts in this case for a straightforward reason: CIIPPs' common evidence will establish liability for all members of the proposed classes, regardless of their state of residence. CIIPPs' motion included three appendices setting out statutory language and case law citations from each of the 28 jurisdictions in the proposed class. Far from the "handful of citations" Defendants disparage, the appendices show that every one of the state antitrust laws class members proceed under is construed in harmony with federal law. *See* ECF No. 1482-2, App. A. The appendices further show that state consumer protection and unjust enrichment laws provide an independent remedy for the antitrust conspiracy that CIIPPs will prove. *See id.* Apps. B, C.

The central issues at trial will accordingly track the undisputed elements of a federal Sherman Act claim: (1) Did Defendants conspire to fix prices and limit supply the supply of pork? (2) Did their conspiracy affect substantially all members of the CIIPPs class? (3) What damages class members suffer by reason of the conspiracy? Courts, most notably in *In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *20 (N.D. Ill. May 27, 2022), have repeatedly found certification appropriate in such cases. *See In re Ranbaxy*

*Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294, 306-07 (D. Mass. 2021); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 573 (S.D.N.Y. 2021); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2020 WL 5778756, at \*24-28 (E.D. Va. Aug. 14, 2020), *report and recommendation adopted*, No. 2:18MD2836, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 32-39 (E.D.N.Y. 2020); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at \*27 (N.D. Cal. Feb. 21, 2017); *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 292 (N.D. Ohio 2014) (noting the claims simply do not "pose a novel theory of antitrust harm, such that it might be questionable whether a specific state statute extends to prohibit the complained-of conduct" in certifying a class); *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 176, 184-85 (D. Mass. 2013); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 107 (D. Mass. 2008) ("certifying a multi-state class action is superior to my other option of certifying more than thirty separate class actions.").

Rather than address the issues that will predominate at trial, Defendants seek to create a sideshow by pointing to minor differences in state law and differences that are inapposite to CIIPPs' claims. Defendants offer no explanation for why these issues will not be addressed through common proof. *See Broilers*, 2022 WL 1720468 at \*20 (finding certain state laws' requirement of in-state activity "irrelevant" in light of "the obvious fact that Broilers are purchase[d] in substantial numbers throughout the United States"). Nor do they explain why, to the extent individualized issues remain, they cannot be addressed through straightforward evidentiary presentations.

This Court should find, as others have, that any differences in state law do not create individualized issues that predominate over common questions.

## A.   State Antitrust Laws Do Not Contain Variations Material to Class Certification.

Defendants begin by suggesting that differences in state antitrust laws undermine predominance. Opp. Mem. 23. After a cursory effort to show a trend against certification of multi-state classes in the Eighth Circuit,[1] the only antitrust issue Defendants point to is states' treatment of duplicative liability — the principle that "where multiple levels of purchasers have sued, or where a risk remains they may sue," courts should employ "joinder, interpleader, consolidation, and like procedural devices to bring all claimants before the court [and] avoid duplication in the recovery of damages." *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (Cal. 2010).

This issue is irrelevant to the motion before the Court because it is well established that "[a] class may be certified based on common issues 'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Stuart v. State Farm Fire & Cas. Co.*, 910

---

[1] *Johannessohn v. Polaris Indus., Inc.*, 9 F.4th 981 (8th Cir. 2021), was a putative *consumer* class action brought under state laws that "requir[ed] individualized fact findings on the issue of reliance." *Id.* at 985. In *Webb v. Exxon Mobil Corp.*, 856 F.3d 1150 (8th Cir. 2017), the plaintiff property owners sought certification of breach-of-contract claims notwithstanding "individualized issues" concerning their circumstances, such as "each property's unique features and conditions, [the] presence of groundwater, possible mitigating factors, and complicated assessments of diminution in value." *Id.* at 1157. No such issues are present here.

F.3d 371, 375 (8th Cir. 2018) (quoting *Tyson* 577 U.S. at 453). Since duplicative liability concerns "damages," Opp. Mem. 23, it provides no basis for denying CIIPPs' motion for class certification.

In any event, there is no possibility of duplicative damages in this case. A review of state antitrust statutes confirms that they tend to contain parallel language concerning the avoidance of duplicate liability. *See* Reply Appendix A. And even if state laws differed, there is no risk of duplicative liability in connection with the claims CIIPPs assert.

The CIIPP class consists of entities in *Illinois Brick* repealer states that indirectly purchased specified pork products from defendants or co-conspirators for their own use in *commercial food preparation*, ECF No. 1334, at 2-3. The Consumer class — the only class that could claim duplicate damages — consists of persons and entities who indirectly purchased certain enumerated commoditized pork products *for personal consumption*. ECF No. 1340 at 1. Definitionally, Consumer class members do not claim damages in connection with prepared meals sold by CIIPPs, such as restaurants. Defendants do not cite a single instance in which Plaintiffs' damages calculations result in duplication of damages. *See* Opp. Mem. 23. This is unsurprising, for no party sits below the CIIPPs in the chain of distribution; CIIPPs are the "end users" of the commoditized pork products they purchase. *See* Opp. Mem. 3 (conceding that CIIPPs are "commercial end-users" that reside "near the end of the pork distribution chain"); *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2018 WL 999899, at *5 (N.D. Ill. Feb. 21, 2018), *enforcement granted,* No. 16 C 8637, 2018 WL 3398141 (N.D. Ill. July 12, 2018) ("CIIPPs' claims in this case seem to be based on their purchases of Broilers as, in effect, commercial end-users of Broilers, not on

14

their resale of Broilers to other consumers downstream from them."). As the *Broilers* court noted granting class certification of a similar indirect purchaser class, duplicative liability is "irrelevant" in a case with appropriately defined classes. *See Broilers*, 2022 WL 1720468 at *20.

Courts have repeatedly noted that, aside from *Illinois Brick*, most states have harmonized their antitrust jurisprudence with federal law — meaning a violation of the Sherman Act constitutes a violation of state law. *See, e.g.*, *In re TFT-LCD*, 267 F.R.D. 583, 608-13 (N.D. Cal. 2010) (certifying indirect purchaser classes under many state laws and not identifying any predominance issue); ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS 669 (9th ed. 2022) (noting most state statutory provisions are comparable to Sections 1 and 2 of the Sherman Act). As noted, Appendix A to CIIPPs' motion demonstrates that the state laws under which CIIPPs' proposed class harmonize their state law claims. CIIPPs' trial showing will thus focus on the elements of a federal antitrust claim — a showing that will simultaneously "drive the resolution" of their state law claims. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

While Defendants quote the Eighth Circuit's observation that "variations in state law *may* swamp any common issues" Opp. Mem. 21 (emphasis added), they do not identify any material differences in state antitrust law. To the extent that the state antitrust laws impose state-specific requirements, those requirements will be proved through the common documentary and expert proof at the heart of CIIPPs' motion. For example, some states' statutes require a showing that the conspiracy affected those states' markets. Dr. Williams' analysis of the nationwide pork market shows those effects. *See Broilers*, 2022 WL

1720468 at *20 (finding the in-state activity requirement "irrelevant" in light of "the obvious fact that Broilers are purchase[d] in substantial numbers throughout the United States").

Defendants fault CIIPPs for failing to provide "model jury instructions and verdict forms, as well as a grouping of state laws by their relevant differences." Opp. Mem. 22 (citing *In re Prempro Prod. Liab. Litig.*, 230 F.R.D. 555, 562 (E.D. Ark. 2005)). Neither the Federal Rules of Civil Procedure, this Court's Local Rules, nor this Court's individual practices impose such a burden. *See* Fed. R. Civ. P. 7, 11, 23; L.R. 7.1; Judge John R. Tunheim, Practice Pointers and Preferences; Judge John F. Docherty, Practice Pointers and Preferences. Importantly, *Prempro* was a multi-state mass tort case involving "common law causes of action." *Prempro*, 230 F.R.D. at 562. Federal law provided no guiding liability standard, and states had not harmonized their common law with the non-existent federal standard. *See id.* To the extent the *Prempro* court's statement is good law, it is best understood as a requirement of Rule 23's rigorous analysis in that specific litigation context.

### B.   Relevant Consumer Protection Laws Do Not Contain Any Differences Material to this Case.

Defendants next point to three purported differences in states' consumer protection laws, asserting that "a jury attempting to decide liability would be faced with multiple standards." Opp. Mem. 23. But while there are differences in state consumer protection laws, Defendants overlook a key fact that makes those differences irrelevant to the motion before the Court: CIIPPs' claims are premised on proof of an antecedent antitrust violation.

As CIIPPs' motion demonstrated, the states represented in the CIIPP class uniformly hold that, where such an antitrust violation is proven, state consumer protection law provides a remedy. Mem. at 50. Stated differently, state consumer protection laws uniformly provide a remedy for the type of core antitrust violation at issue in CIIPPs' claims.

Ignoring this feature of state law, Defendants first point to ostensible differences in "the form of conduct that will qualify as anticompetitive or unfair conduct prohibited under the consumer statutes." Opp. Mem. 23. Differences in the conduct that states view as "unfair" would matter if CIIPPs asserted freestanding consumer protection claims, because many state consumer protection statutes are interpreted broadly to encompass a wide variety of unlawful conduct *beyond* or *in addition to* antitrust violations. *See e.g.*, *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 951, 956 (D. Minn. 2020), aff'd, 9 F.4th 981 (8th Cir. 2021); *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1013 (D. Minn. 2012); *In re Processed Egg*, 851 F. Supp. 2d 867, 894 (E.D. Pa. 2012); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline*, 737 F. Supp. 2d 380, 406 (E.D. Pa. 2010); *In re Auto. Parts*, 2013 WL 2456612, at *23 (E.D. Mich. Jun. 6, 2013). The traditional elements of deception-based claims drop out of the picture, however, when a consumer protection claim is premised on an antitrust violation. *See* App. B. Thus, it is no surprise that the cases Defendants generally cite did not involve a consumer protection claim premised on an antitrust violation.[2] In the sole antitrust case Defendants cite, *In re*

*EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 1180550 (D. Kan. Mar. 10, 2020), plaintiffs asserted both antitrust and consumer protection claims. The court declined to certify the consumer protection claims because "the factfinder properly could reach different conclusions about the legality of the same conduct based on the varying state law tests it must apply." *Id.* at *54 (emphasis added). This is not the case here, where the antitrust conspiracy was alleged to have been conducted via *per se*, horizontal conduct among competitors aimed at restricting output and increasing price.

Defendants next assert that "[t]he measure of damages varies by state." Opp. Mem. 24. Again, potential differences in states' treatment of damages do not preclude class certification. *See Stuart*, 910 F.3d at 375. But the argument fails for a more fundamental reason. The authorities Defendants cite do not show differences in how *damages* are calculated, but in the different *remedies* — i.e., damages vs. injunctive relief — states have made available for violations of their consumer protection laws. *See* Opp. Mem. 24. Consistent with their fiduciary obligations to the class, CIIPPs' representatives have pursued all provable remedies. Defendants cite no case (and CIIPPs are aware of none) holding that the pursuit of all available remedies defeats predominance.

Third, in a variation on their duplicative liability argument, Defendants contend that "some states" exclude businesses that purchase for resale from their consumer protection laws, and that the need to apply different standards to different class members undermines

---

[2] *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 142 (Neb. 2000); *LaMotte v. Punch Line of Columbia, Inc.*, 370 S.E.2d 711, 712 (S.C. 1988), *overruled by Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774 (S.C. 2021).

predominance. Opp. Mem. 25. But again, while state laws may differ, those differences are irrelevant to this case. No party is below the CIIPPs in the chain of distribution, so this is not a case where businesses purchase for resale. *See supra*, IV.A.

### C.   States' Unjust Enrichment Law Do Not Contain Any Differences Material to this Case.

Defendants follow the same strategy for CIIPPs' restitution claims, asserting that states vary with respect to the form of injustice a plaintiff must establish, the required connection between the parties, the availability of an "upstream disgorgement" defense, and the requirement that there be no adequate remedy at law. Opp. Mem. 26-27.

### 1.   None of the Purported Differences in Unjust Enrichment State Law Are Material in the Present Factual Context.

In *Broilers*, the court certified a single four-state class asserting an unjust enrichment claim in the face of similar challenges posited by Defendants concerning purported differences among the applicable states' laws. The court concluded that differences in consumer protection laws concerning reliance and intent are not relevant to a price-fixing claim. Similarly, any state where unjust enrichment claims are the primary basis for recovery will be satisfied by proof of a Sherman Act violation. 2022 WL 1720468, at *20.

*Broilers* is consistent with other decisions certifying multistate unjust enrichment classes in actions premised upon an underlying Sherman Act violation. In *United Wis. Servs. v. Abbott Labs. (In re Terazosin Hydrochloride)*, 220 F.R.D. 672 (S.D. Fla. 2004), for example, the court certified a single multistate class, finding the "standards for evaluating various states classes' unjust enrichment claims are virtually identical" in the

antitrust context. *Id.* at 697 n.40. Many other courts have certified multistate unjust enrichment classes in actions premised upon antitrust law violations.[3] Even a court denying certification of a multistate unjust enrichment class (outside of the antitrust context) recognized that the antitrust context presents a "special situation[:] in cases where plaintiffs alleged anticompetitive conduct that artificially inflated prices, courts have found that they could demonstrate unjust enrichment because all purchasers would have paid more than they should have." *In re McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 145 (D.D.C. 2018).

The Defendants cite various district court cases from this Circuit in which courts declined to certify classes in unjust enrichment cases, yet none are antitrust cases.[4] Defendants are correct that courts sometimes decline to certify multistate unjust enrichment classes in other contexts, although results are hardly uniform.[5]  But concerns about state

---

[3] *See, e.g.*, *Hosp. Auth. of Metro Gov't of Nashville v. Momenta Pharm. et al.*, 333 F.R.D. 390, 414 (M.D. Tenn. 2019); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 14-md-02503, 2017 WL 4621777, at *19-20 (D. Mass. Oct. 16, 2017); *In re Abbott Lab'ys Norvir Anti–Trust Litig.*, Nos. C 04–1511 CW, C 04–4203 CW, 2007 WL 1689899, at *1–2, *9–10 (N.D. Cal. June 11, 2007).

[4] *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 513 (D. Minn. 2014) (unjust enrichment claim relating to forced purchase of insurance by mortgagors); *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 423 (E.D. Ark. 2010) (customers of wireless company alleged unfair collection of early disconnect penalty); *Prempro*, 230 F.R.D. at 563 (consumer fraud claims brought by purchasers of pharmaceutical product).

[5] Courts have certified multistate unjust enrichment classes in a variety of other contexts. *See, e.g.*, *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 19–21 (D. Mass. 2010) (stating, "unjust enrichment claims in different states are substantially similar" and certifying a 34-state class); *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 343 (N.D. Cal. 2010); *Westway World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 224 (C.D. Cal. 2003) (certifying nationwide class of unjust enrichment claimants).

law differences have little or no bearing in an action premised upon allegations of horizontal, *per se* antitrust law violations.

## 2. The Specific Purported Conflicts Defendants Raise Are Illusory.

First, Defendants contend that South Dakota law requires the plaintiff to show "mistake, coercion, or request," Opp. Mem. 26 (citing *Dowling Fam. P'ship v. Midland Farms*, 865 N.W.2d 854 (S.D. 2015)), and cite this as an example of how the states' standards vary as to what is "unjust" conduct. But the quoted language comes from the Restatement (First) of Restitution (1937),[6] and, as such, is hardly specific to South Dakota. This principle has not presented an obstacle, over the past 85 years, to the assertion of unjust enrichment claims based on antitrust violations, as "[b]y their essence, antitrust violations involve coercion." *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423, 1442 (S.D.N.Y. 1986). More importantly, Defendants have not cited a single decision holding that a conspiracy to violate the antitrust laws would *not* be sufficiently "unjust" to satisfy the requirements of any state's law of unjust enrichment.

Second, Defendants contend that laws of some states require a "not too attenuated" relationship between the plaintiff and the defendant than other states require. Opp. Mem. 26. But Defendants vastly overstate what the cited lines of authority hold. There is no

---

[6] The cited 2015 *Dowling Fam. P'ship* decision cites to a 1991 decision, *Aetna Life Ins. Co. v. Satterlee*, 475 N.W.2d 569, 574 (S.D. 1991), which cites the Restatement (First) of Restitution, § 112 (1937) ("A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons.").

privity requirement, or anything resembling it, under the unjust enrichment law in these states. For example, numerous cases under Florida law show it is sufficient that the indirect purchaser confer a direct *benefit* by purchasing the relevant product, not that the purchaser have direct *contact* with the defendant. *Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) ("Defendant erroneously equates direct *contact* with direct *benefit* in arguing that "[b]ecause plaintiff here did not purchase either his phone or his batteries from Motorola, plaintiff conferred no direct benefit on Motorola.""). [7] In Michigan, the federal district court has held that the "critical inquiry [i]s not whether the benefit is conferred directly on the defendant, but whether the plaintiff can establish the relationship between his detriment and the defendant's benefit 'flow from the challenged conduct.'" *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669 (E.D.

---

[7] *Accord e.g.*, *State Farm Mut. Auto. Ins. Co. v. Brown*, 2017 WL 1291995, at *7 (S.D. Fla. Mar. 30, 2017); *Melton v. Century Arms, Inc.*, 2017 WL 1063449, at *9 (S.D. Fla. Mar. 20, 2017); *Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323, 1326 (S.D. Fla. 2014) ("[I]t would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant."); *In re Auto. Parts Antitrust Litig. (Fuel Senders)*, 29 F. Supp. 3d 982, 1017 (E.D. Mich. 2014) (Florida law); *Feiner v. Innovation Ventures LLC*, 2013 WL 2386656, at *5 (S.D. Fla. May 20, 2013) ("[W]hile there was no direct contact between the manufacturer [Defendant] and Plaintiff by purchasing the [product], plaintiff directly conferred a benefit on [Defendant] in the form of payment"); *In re Processed Eggs*, 851 F. Supp. 2d at 929 (Florida law); *Aceto Corp. v. Therapeutics MD, Inc.*, 2013 WL 3761073, at *17 (S.D. Fla. July 17, 2013); *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011); The *Aceto* court explained that "[i]n other words, just because the benefit conferred by plaintiffs on defendants did not pass directly from plaintiffs to defendants—but instead passed through a third party—does not preclude an unjust-enrichment claim. Indeed, to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims." 2013 WL 3761073, at *17.

Mich. 2000).[8] There are many examples, as courts applying the laws of these states repeatedly reject these sorts of challenges to unjust enrichment claims brought by indirect purchasers.[9]

Third, Defendants contend that some states require a Plaintiff pursuing an unjust enrichment claim (or any equitable claim for relief) lack an adequate remedy at law, while others do not. While this is literally true, the distinction makes no practical difference. It is well-settled that "a party [may] plead alternative or inconsistent claims or defenses." *Mono Advert., LLC v. Vera Bradley Designs, Inc.*, 285 F. Supp. 3d 1087, 1091 (D. Minn. 2018). Thus, "a party may plead alternative theories of relief under both legal and equitable grounds." *LePage v. Blue Cross and Blue Shield of Minnesota*, 2008 WL 2570815, at *8 (D. Minn. June 25, 2008) (declining to dismiss unjust enrichment claim in a case where the plaintiff also asserted a federal statutory claim). *Accord, e.g.*, *Daigle v. Ford Motor Co.*,

---

[8] *Accord, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 07–MD–01819 CW, 2010 WL 5094289, at *7 (N.D. Cal. Dec. 8, 2010) (Michigan law does not require a benefit to be conferred directly by plaintiff to a defendant) (citing *Kammer Asphalt Paving Co., Inc. v. East China Township Schools*, 443 Mich. 176, 187-88 (Mich. 1993); *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187 (Mich. Ct. App. 2006);

[9] *Sheet Metal Workers*, 737 F. Supp. 2d at 434 (rejecting claim that antitrust injury suffered by Iowa plaintiffs was too remote); *Commercial Fed. Bank v. Qwest Corp.*, 695 N.W.2d 41 (Iowa Ct. App. 2004) (subcontractors seeking unjust enrichment claim against owner); *In re Processed Eggs*, 851 F. Supp. 2d at 929–30 (no requirement under Kansas law that benefit flow directly from the plaintiff to defendants, and acknowledging that courts have upheld unjust enrichment claims brought by indirect purchasers of price-fixed parts); *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001) (remanding dismissal of claim for unjust enrichment for consideration of whether the defendants benefitted by illegal or unlawful conduct); *In re: Automotive Parts Antitrust Litig.*, 29 F. Supp. 3d at 1024 (New York law).

713 F. Supp. 2d 822, 826 (D. Minn. 2010); *In re Levaquin Products Liab. Litig.*, 752 F. Supp. 2d 1071, 1081 (D. Minn. 2010). While the result may be different under state law pleading rules, this is the rule in federal court.

### 3.    At a Minimum, the Court Should Certify the Unjust Enrichment Subclass.

Should the Court have reservations about certifying a 26-state unjust enrichment class, CIIPPs seek certification of this claim only as to those class members from the states that do not provide a state antitrust cause of action or a state consumer protection claim triggered by antitrust conduct — Massachusetts and Mississippi. This was the avenue selected by the plaintiffs in *Broilers*, in which they only sought (and obtained) certification of their unjust enrichment claim as to class members of four states. 2022 WL 1720468 at *20.[10] CIIPP Longhorn's Steakhouse of Mississippi stands ready to serve as a class representative for such a subclass. *See infra* IV.D.

### D.    The Jury Will Not Be Forced to Consider "Myriad" Statutes of Limitations.

In a final effort to show that differences in state law create predominance-defeating individual issues, Defendants recast their statute-of-limitations argument, asserting that the jury "would have to navigate numerous limitations periods" for different states and types of claims. Opp. Mem. 27. Like Defendants' attack on Dr. Williams' model, this attack fails because Dr. Williams' model accounts for all relevant limitations period, and Dr. Williams will offer appropriate estimates based on the Court's *in limine* rulings. *See supra* Part II.C.

---

[10] This is not reflected in the court's opinion yet is reflected in the parties' briefing.

The jury will not be asked "to navigate the numerous limitations periods" applicable to different states and types of claims (Opp. Mem. 27), but simply to pass on the credibility of Dr. Williams' testimony and accept it or not. If the jury accepts his testimony, damages will be proven "in one stroke." *Wal-Mart*, 564 U.S. at 350. If the jury rejects his testimony, CIIPPs recover nothing.

Moreover, "potential differences in limitations periods" have repeatedly been held not to preclude certification. *Cox v. Spirit Airlines, Inc.*, 341 F.R.D. 349, 371 (E.D.N.Y. 2022) (citing William B. Rubenstein, 2 Newberg on Class Actions § 4:57 (5th ed. 2021)). "Challenges based on the statute of limitations . . . have usually been rejected and will not bar predominance" because it goes "to the right of the class-member to recover, in contrast to underlying common issues of the defendant's liability." *In re Namenda*, 338 F.R.D. at 573 (quoting *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002)); *see also In re Lidoderm*, 2017 WL 679367, at *27 (rejecting statute of limitations-based predominance challenge to certification of class where seventeen states' antitrust laws were at issue); *Nexium*, 297 F.R.D. at 176 (rejecting statute of limitations-based predominance challenge to class where 26 state laws were at issue and explaining "the variance in state laws and statutes of limitations do not bar class certification under Rule 23(b)(3)."); *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) ("In other words, the mere fact that [statute of limitations] concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones."). Thus, apart from the fact that individualized damages calculations

do not preclude certification, *Stuart*, 910 F.3d at 375, the limitations period is no obstacle

to certification of CIIPPs' proposed (b)(3) class.

### E. Any Material Variations in State Law the Court Identifies Should Be Addressed via Subclasses.

Here, as in *Broilers*, Defendants "do not identify any difference among the state

laws at issue that are relevant to the price fixing claim in this case." *Broilers*, 2022 WL

1720468, at *20. Even if the Court agreed with Defendants' arguments, however, the

appropriate remedy would be the certification of subclasses. *See Average Wholesale*, 252

F.R.D. at 93 (where "applicable state laws can be sorted into a small number of groups,"

differences in state law should be addressed via "certification of subclasses embracing each

of the dominant legal standards" (quoting *Klay v. Humana*, 382 F.3d 1241, 1262 (11th Cir.

2004)); *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 607 n.14 (D. Minn. 1999)

(similar).

The logical dividing line should the Court find subclasses necessary is the type of

remedy provided by state law: An "Antitrust Subclass" would include members from states

that provide CIIPPs a statutory antitrust remedy;[11] a "Consumer Protection Subclass"

would include members from states that lack a statutory antitrust remedy but provide a

statutory consumer protection remedy;[12] and, as suggested above, an "Unjust Enrichment

---

[11] Arizona, California, District of Columbia, Iowa, Kansas, Maine, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. *See* Compl. ¶¶ 219-249.

[12] Arkansas, Florida, and South Carolina. *See* Compl., ¶¶ 250-263.

Subclass" would include members from states that lack both an antitrust and consumer protection remedy but permit parties injured by a proven antitrust violation to recover unjustly retained benefits.[13] Under this proposed certification of subclasses for each type of claim, there exists a CIIPP named plaintiff with standing to bring each of the three types of claims. *See* Compl. ¶¶ 14, 15, 19.

## V.    Rule 23 Does Not Demand a Class Representative from Each State.

Unable to show that differences in state law preclude certification, Defendants ask the Court to adopt a rule that every state in a multistate class must be represented by its own representative and seek, on the basis of that rule, to limit the proposed classes to the states where class representatives reside. Opp. Mem. 28-30. Defendants' proposal conflates two separate requirements: (1) that class representatives have Article III standing, and (2) that those representatives fairly and adequately represent the class. Both requirements are satisfied here.

When a party sues on behalf of a class, "the named plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Doe v. Blum*, 729 F.2d 186, 190 n.4 (2d Cir. 1984) (internal quotations omitted). Because "a class action is a *representative* action brought by a named plaintiff or plaintiffs," Article III is satisfied "so long as at least one named plaintiff has standing." *Neale v. Volvo Cars*, 794 F.3d 353, 364 (3d Cir. 2015) (citing *Horne v. Flores*, 557 U.S.

---

[13] Mississippi and Massachusetts. *See* Compl., ¶¶ 264-281.

433, 446 (2009), and *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264, and n.9 (1977) ("[W]e have at least one individual plaintiff who has demonstrated standing . . . . Because of the presence of this plaintiff, we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit.")).

The "irreducible constitutional minimum of standing requires a showing of injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) (internal quotations and alteration omitted). "Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998).

Rule 23 does not demand that representatives have standing to assert class members' claims, because the "injuries in fact" different class members suffer are distinct. *See Anderson v. Travalex Insurance Servs.*, No. 8:18-CV-362, 2020 WL 1323489, at *4 (D. Neb. Mar. 20, 2020). Rather, the Rule demands that the representative "be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Products*, 521 U.S. at 625-26. "[T]he four requirements in Rule 23(a)—numerosity, commonality, typicality, and adequate representation—ensure that the appropriate representative for the class of claims to be litigated is the named plaintiff, and 'effectively limits class claims to those fairly encompassed by the named plaintiff's claims.'" *Anderson*, 2020 WL 1323489, at *4 (quoting *Wal-Mart*, 564 U.S. at 349). Where Rule 23

is satisfied, common proof provides a legally sufficient basis for the finder of fact to resolve the class's claims. *See Klay*, 382 F.3d at 1262 (holding plaintiff could represent class members from other states because "if a claim is based on a principle of law that is uniform among the states, class certification is a realistic possibility"); *In re Conseco Life Ins. Co. Lifetrend Ins. Sales and Marketing Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (holding plaintiff could represent class members from other states where showing required to establish breach of contract claims under different states' laws "not vary greatly from state to state").

It is therefore unsurprising that Defendants' proposed state-representative rule has been rejected by multiple courts. *See Langan v. Johnson & Johnson Consumer Co.*, 897 F. 3d 88, 93 (2d Cir. 2018) ("[A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of [standing] under Article III."); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018) ("[T]he fact that judgments for some class members will nevertheless enter under the laws of states other than the states under which any of the class representatives' judgments will enter, where those laws are materially the same, has no relevant bearing on the personal stake of the named plaintiffs in litigating the case to secure such judgments."); *Fallick*, 162 F.3d at 422. *See also Morrison v. YTB Int'l*, 649 F.3d 533, 536 (7th Cir. 2011) (concluding that alleged difference in the state law governing class members' claims "has nothing to do with *standing*" but raises a question about manageability).

Defendants' authorities are not to the contrary. In *Hall v. Lhaco, Inc*., 140 F.3d 1190 (8th Cir. 1998), an ERISA plan participant attempted to "maintain an action for benefits and other equitable relief against a purported plan administrator who no longer has any connection with his ERISA plan." *Id.* at 1191. The court of appeals affirmed the district court's grant of summary judgment to the plan, leaving the case without *any* class representatives who possessed Article III standing. *Id.* at 1196-98 ("[B]ecause Hall does not have standing to pursue his § 502(a)(3) claim, he cannot be the representative of a class of persons with such claims."). The district court's statement in *In re Domestic Drywall Antitrust Litig.*, 2016 WL 4409333 (E.D. Pa. Aug. 18, 2016), that certain indirect purchasers "lack[ed] standing to sue under the laws of states in which they do not reside" appears in the "Background" section of an order granting a motion to intervene. The court's analysis related entirely to whether the requirements of Fed. R. Civ. P. 24 were satisfied. *Id.* at *2-3. Defendants append an "*accord, e.g.*" to *Domestic Drywall.*  Opp. Mem. 28. But the case they cite, *Insulate SB, Inc. v. Advanced Finishing Systems*, resolved two motions to dismiss, a motion to stay discovery, and a motion for expedited discovery. 2014 WL 943224, at *1 (D. Minn. Mar. 11, 2014).

Here, named Plaintiffs possess the same interest and allege they suffer the same kind of antitrust injury as all members of the proposed class by having paid overcharges on purchases of pork products. Certification is, therefore, entirely consistent with Article III and Rule 23.

## VI.    The Proposed Classes Are Ascertainable.

Defendants maintain that the court may not certify a class because "CIIPPs offer

30

no evidence that their proposed class is ascertainable." Opp. Mem. 30. Ascertainability is

not a "separate, preliminary requirement" that appears in the text of Rule 23. *See Sandusky*

*Wellness Ctr. v. Medtox Sci.*, 821 F.3d 992, 996 (8th Cir. 2016). The "implicit" requirement

that a class be ascertainable is encompassed in a "rigorous analysis of the Rule 23

requirements," *id.* — most particularly, "the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3)(D); *see Mullins v. Direct Digital*, 795 F.3d 654, 663 (7th Cir.

2015), *cert. denied*, 577 U.S. 1138 (2016). As Defendants correctly observe, that analysis

does not require Plaintiffs to produce a list of class members before the class is even

certified, but, as Defendants are forced to concede, focuses on whether the class is (1)

"objectively ascertainable" and (2) plaintiffs proffer "a *precise* definition of the class."

Opp. Mem. at 30 (emphasis added; quoting *Brown v. Wells Fargo*, 284 F.R.D. 432, 444

(D. Minn. 2012) (Tunheim, J.)).[14]

   The proposed classes meet both requirements. To begin with, each criterion of class

membership is an objective fact that can be established through documentary evidence,

transactional data, and/or sworn testimony. The classes include entities who (1) indirectly

purchased (2) particular pork products (3) for use in commercial food preparation in the

United States. ECF No. 1334, at 2-3. That an entity purchased pork for use in commercial

---

[14] For this reason, Defendants' suggestion that CIIPPs' motion must be denied because it
did not intone the shibboleth "ascertainability" is mistaken. Opp. Mem. at 30-32. CIIPPs'
opening memorandum specifically addressed each element of Rules 23(a) and (b),
including "the likely difficulties in managing a class action." Mem. at 54.

food preparation is reflected in the nature of its business — e.g., the fact that it is a restaurant.

Defendants complain that CIIPPs have not *already* introduced records showing specific entities that form part of the class. Opp. Mem. 30-31 & n.10. But apart from the fact that structured data relied on by Dr. Williams is replete with the very data Defendants contend is lacking, *see, e.g.*, Williams Rep. ¶ 230; Williams Reply Rep. ¶ 127, Defendants misconstrue Plaintiffs' burden. Rule 23 does not require class members (much less their representatives) to provide a White Pages of the class at class certification. *Cf.* Fed. R. Civ. P. 23(c)(1)(A) (class certification to be decided "[a]t an early practicable time"). Plaintiffs instead must show — and the Court should find — that class membership is *capable* of being established through clearly defined, objective, and administratively feasible means. *See Sandusky Wellness*, 821 F. 3d at 996 ("the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria" (quoting *Rikos v. Procter & Gamble*, 799 F.3d 497, 525 (6th Cir. 2015)).

Numerous tools are available to the Court to identify members of the proposed classes should the remaining Defendants proceed through trial and judgment. As noted, CIIPP class members' place in the distribution chain and information about the types of products they purchased are readily apparent in the voluminous transactional data produced by third parties and analyzed by Dr. Williams. *See, e.g.*, Williams Rep. ¶¶ 230-255; Williams Reply Rep. ¶ 127. Moreover, the Court may rely, "as [courts] have for decades, on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and

the court to take into account the size of the claims, the cost of the techniques, and an empirical assessment of the likelihood of fraud or inaccuracy." *Mullins*, 795 F.3d at 667 (quoting Manual for Complex Litigation §§ 21.66-.661 (4th ed. 2004) and Newberg on Class Actions § 12:20). Such procedures have repeatedly been found consistent with a rigorous analysis of Rule 23. *See, e.g.*, *McKeage v. TMBC*, 847 F.3d 992, 998 (8th Cir. 2017) (class ascertainable where members identifiable through review of defendants' sales contracts); *Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795, 805–06 (8th Cir. 2017); *Sandusky Wellness*, 821 F.3d at 997 (fax numbers were "objective criteria that make the recipient clearly ascertainable"); *H & T Fair Hills, Ltd. v. All. Pipeline L.P.*, 2021 WL 2526737, at *5 (D. Minn. June 21, 2021) (class ascertainable where members identifiable through review of defendants' property records and class members' ability to submit documentation to verify their legal interest).

Defendants assert that class members "cannot rely" on sworn affidavits, because "[s]elf-identification is not an objective criterion." Opp. Mem. at 31. But the facts affiants would attest to — their position in the distribution chain, the types of pork products they bought, and that they used the meat for commercial food preparation — are objective facts. If funds are distributed through a court-administered process, defendants could have the opportunity to contest affiants' membership in the class, as due process may require.

As for precision of the class definition, Defendants offer no argument that it is impermissibly vague, for good reason. CIIPPs do not propose a fail-safe class that includes only entities with "a valid claim on the merits." *Cf. Ford v. TD Ameritrade Holding*, 995 F.3d 616, 624 (8th Cir. 2021). They do not propose a class defined by "subjective criteria,

such as by a person's state of mind," *Mullins*, 795 F.3d at 660. The class definition instead "identif[ies] a particular group, harmed during a particular time frame, in a particular location, in a particular way," *id.*, the very type of definition demanded by a rigorous analysis of Rule 23's requirements.

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant CIIPPs' Motion.

Dated: November 18, 2022        **CUNEO GILBERT & LADUCA, LLP**

By: */s/ Blaine Finley*
     Jonathan W. Cuneo (*pro hac vice*)
     Joel Davidow (*pro hac vice*)
     Blaine Finley (p*ro hac vice*)
     4725 Wisconsin Ave. NW
     Suite 200
     Washington, DC 20016
     Telephone: 202.789.3960
     Facsimile: 202.589.1813
     jonc@cuneolaw.com
     joel@cuneolaw.com
     bfinley@cuneolaw.com

By: */s/ Shawn M. Raiter*
     Shawn M. Raiter (MN#240424)
     **LARSON · KING LLP**
     30 East Seventh Street Suite
     2800 St. Paul, MN 55101
     Telephone: (651)312-6518
     sraiter@larsonking.com

     ***Interim Co-Lead Counsel for Commercial and Institutional Indirect Purchaser Plaintiffs***

     Don Barrett (*pro hac vice*)
     Katherine Barrett Riley (*pro hac vice*)
     Sterling Aldridge (*pro hac vice*)
     **BARRETT LAW GROUP, P.A.**
     P.O. Box 927
     404 Court Square
     Lexington, MS 39095
     Telephone: (662) 834-2488
     dbarrett@barrettlawgroup.com
     kbriley@barrettlawgroup.com
     saldridge@barrettlawgroup.com

Jon Tostrud (*pro hac vice*)
Anthony Carter (*pro hac vice*)
**TOSTRUD LAW GROUP, PC**
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com

David M. Cialkowski (MN#0306526)
Ian F. McFarland (MN#0392900)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
david.cialkowski@zimmreed.com
ian.mcfarland@zimmreed.com

Marcus Bozeman (*pro hac vice*)
**BOZEMAN LAW FIRM P.A.**
400 W. Capitol Avenue, Ste. 1700
Little Rock, AR 72201
mbozeman@bozemanfirm.com

*Interim Plaintiffs' Steering Committee for Commercial and Institutional Indirect Purchaser Plaintiffs*