## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Court File No. 18-cv-1776 (JRT/JFD) |
| This Document Relates To:<br><br>*Commonwealth of Puerto Rico v. Agri Stats, et al.*, No. 19-cv-2723 (JRT/JFD)<br><br>*Sysco Corporation v. Agri Stats Inc., et al.*, No. 21-cv-1374 (JRT/JFD)<br><br>*Amory Investments LLC v. Agri Stats, Inc.*, et al., No: 21-cv-1697 (JRT/JFD) | **JBS USA FOOD COMPANY'S OPPOSITION TO MOTION TO COMPEL**<br><br>**<u>REDACTED</u>** |

JBS USA Food Company ("JBS USA") respectfully submits this memorandum of law in opposition to the motion to compel (Dkt. 1593) filed by three Direct Action Plaintiffs ("DAPs"): Sysco Corporation, Amory Investments LLC, and the Commonwealth of Puerto Rico (collectively, the "Moving DAPs").

## <u>PRELIMINARY STATEMENT</u>

The Moving DAPs' motion comes too late. The Moving DAPs waited to bring their motion about the disputed topics (Topics 20 and 23) until after the close of fact discovery and *seven weeks after* JBS USA's corporate designee had already sat for a day-long deposition on September 27, 2022. And they inexcusably remained silent for weeks and weeks, failing to notify the Court when ordered to do so of their request to take another corporate deposition of JBS USA following the close of fact discovery. The Moving DAPs' conduct is further troubling because they *never* met and conferred with JBS on the

two specific topics they belatedly raise.  Given their delay and lack of diligence, the Moving DAPs' motion should be denied as untimely.

The requested extra Rule 30(b)(6) deposition to address Topics 20 and 23—which seek testimony on JBS USA's internal antitrust compliance policies—is also disproportionate to the needs of the case, for multiple reasons.  The Moving DAPs already have access to the policies themselves, as well as substantial fact testimony about them. Thus, the incremental value of additional corporate testimony on the disputed topics is minimal, especially in light of the Moving DAPs' delay in bringing the dispute to the Court, the fact that only three DAPs are seeking the testimony, and that the Moving DAPs are not seeking the same type of corporate testimony from other Defendants.

Further, the burden of preparing a corporate witness to testify regarding policies and codes of conduct aimed at compliance with the antitrust laws outweighs any benefit.  The topics invade the attorney-client privilege and necessarily invoke testimony on legal conclusions, which is improper to seek from a lay Rule 30(b)(6) witness.  Based on the questions asked by the Moving DAPs on these topics during the numerous fact depositions of JBS USA witnesses, the requested deposition will also invariably center around the policies' application to various vague and incomplete hypothetical scenarios posed by the Moving DAPs.  Even with burdensome preparation, a corporate witness could not testify on such topics in any meaningful way.  The motion should therefore be denied for these reasons as well.

2

## FACTUAL BACKGROUND

**A. The Parties Negotiate Rule 30(b)(6) Topics and DAPs Take the Corporate Deposition of JBS USA**

Counsel for DAPs and JBS USA began meeting and conferring generally about DAPs' proposed 30(b)(6) topics in August 2022.  Moving DAPs' Mem. in Supp. Mot. to Compel, Dkt. 1594 ("DAP Br.") at 1 n.2; DAP Ex. D at 7-11.[1]  DAPs served a formal Notice of 30(b)(6) Deposition on JBS USA on September 14, 2022, which included the two topics at issue in this motion.  DAP Ex. A.[2]  Specifically, in Topics 20 and 23, DAPs requested testimony on JBS USA's policies and codes of conduct concerning compliance with antitrust laws.  DAP Ex. A at 11.  JBS USA served its Responses and Objections six days later on September 20, 2022, objecting to Topics 20 and 23, among other reasons, on the grounds that the topics directly call for privileged information and conclusions of law. DAP Ex. B at 13-14.  JBS USA further objected that the topics are unduly burdensome and disproportionate because this litigation does not pertain to employment practices and JBS USA has already produced the codes of conduct, which speak for themselves.  *Id.*  JBS USA also objected to the topics because they are vague, overbroad, and ambiguous as to several undefined terms.  *Id.*  Based on these objections, JBS USA informed DAPs that

---

[1]  The Moving DAPs' exhibits are attached to the Declaration of Michael Mitchell (Dkt. 1596) and are referred to herein as "DAP Ex. __."

[2]  The notice was served by not only the Moving DAPs, but also multiple other DAPs that have not joined the pending motion.  *Id.*

"JBS USA will not prepare a corporate designee to provide testimony on the Subject Matter Area[s]" of Topics 20 and 23.  *Id.*

The day after receiving JBS USA's objections, DAPs "request[ed] a meet and confer regarding [JBS USA's] objections and responses to ***Topics 15, 16 and 24***"—*i.e.*, Topics not at issue in Moving DAPs' motion.  DAP Ex. D at 4 (emphasis added).  JBS USA made itself available for a meet and confer the very next day.  *Id.*  During that meet and confer on September 22, the parties only discussed the three topics identified by DAPs (Topics 15, 16 and 24).  DAPs never once raised Topics 20 and 23 during that call.  Only after the meet and confer call did DAPs take issue with Topics 20 and 23. The DAPs stated in a September 22, 2022 email serving their amended Rule 30(b)(6) notice: "With respect to Topics 15, 16, 20, and 23, we have not revised those in the amended notice.  We will plan to file a motion to compel on those topics assuming JBS maintains its objections and its refusal to provide a corporate designee on them."  DAP Ex. D.[3]  JBS USA served amended objections and responses on September 23, 2022, maintaining its objections to Topics 20 and 23 and again informing the DAPs that JBS USA would not prepare a corporate designee on those topics.  DAP Ex. E at 14-15.

DAPs proceeded to take the deposition of JBS USA's corporate witness on September 27, 2022.  Declaration of Jessica J. Nelson ("Nelson Decl.") Ex. 1, Manternach Tr: 46:21-47:9; 48:7-19.  JBS USA's corporate designee, Ross Manternach, sat for nearly

---

[3]  Like the original Rule 30(b)(6) notice, the amended notice was served by not only the Moving DAPs, but also multiple other DAPs that have not joined the pending motion. DAP Ex. C.

a full day deposition on the record.  Mr. Manternach dedicated substantial time to preparing for the deposition, spending between 21-24 hours in at least five different meetings with other employees and JBS USA's inside and outside legal counsel.  *Id.* at 13:11-22, 14:11-12, 15:7-9, 15:14-16:1, 17:4-6, 20:25-21:1.  Mr. Manternach was prepared to testify on a myriad of topics covering the time period of January 1, 2008 through June 30, 2018, including:  information about the JBS personnel who made decisions about the price, supply, and sales of pork; how JBS tracked pork production costs; decisions about purchases from and sales to competitors; the factors that influence pork pricing; the annual percentage of JBS's pork processed at specific plants; pork-production costs generally; the factors that influence pork purchasing; the factors that affected the amount of hogs JBS slaughtered; how JBS tracks hog availability and market price; the factors JBS considered in how to purchase hogs; the terms of JBS's agreements with Hog Growers; JBS's executed acquisitions, mergers, or joint ventures with other hog-producing or pork-producing entities; the sources of JBS's market intelligence regarding pork supply and prices, as well as certain pork producers' production;  JBS's annual budgeting and forecast process; information about loans and financial instruments between JBS and certain entities; and the annual capacity utilization of JBS plants.  DAP Ex. E.

## B. The Moving DAPs Do Not Raise the Disputed Topics in Required Court Submissions or Attempt to Meet and Confer with JBS USA

Following the deposition, the Moving DAPs inexplicably remained silent regarding their desire to seek further testimony on Topics 20 and 23 for nearly two months, despite being ordered by the Court to disclose unresolved discovery issues and promptly meet and

confer to attempt to resolve them.  The Court issued a Pretrial Order on October 4, 2022,

setting the close of fact discovery for October 31, 2022, and directing the parties to "*notify*

*the Court as soon as practicable if they anticipate that any part of discovery cannot be*

*completed by this deadline*."  *See* 10/04/22 Pretrial Order No. 1, Dkt. 1525 at 3, 5 (emphasis

added).  The Pretrial Order also required the parties to meet and confer in a sincere effort

to resolve or narrow any disagreements.  *Id.* at 10.  Finally, the Order directed the parties

to submit to the Court by October 13, 2022 "[a]n overview of the status of discovery in all

related cases to date" and "[a]n overview of the status of *any motions, orders, or other*

*events of import in all related cases to date*."  *Id.* at 11 (emphasis added).

    In response, the parties submitted a joint case management report, which stated that

the "Parties *have completed* the substantial majority of the depositions they intend to take

in this action" and specifically identified all the remaining depositions expected to take

place after the close of fact discovery, including several Rule 30(b)(6) depositions.  Dkt.

1542 at 2 (emphasis added).  In the report, the parties also provided an overview of all

pending and contemplated discovery motion practice.  Dkt. 1542 at 5-7 ("Plaintiffs are

filing a motion requesting the Court issue a letter rogatory to facilitate the deposition of

Sumio Matsumoto").  The Moving DAPs did not raise the prospect of additional 30(b)(6)

testimony or motion practice against JBS USA in the joint report.  Nor did the Moving

DAPs raise the possibility of another 30(b)(6) deposition of JBS USA's corporate witness

during the October 17, 2022 Case Management Conference, where the parties discussed

the status of pending and forthcoming depositions and motions.  10/17/2022 CMC Tr., Dkt.

1561 at 10:19-12:14, 15:18-18:3.

Continuing their silence, the Moving DAPs made no mention of seeking additional deposition discovery from JBS USA on the two specific Rule 30(b)(6) topics when the parties filed a Stipulation Regarding Completion of Certain Discovery After the Fact Discovery Deadline and corresponding Proposed Order on November 3, 2022. Dkts. 1576, 1577. That stipulation sought the Court's permission to take certain depositions, including several 30(b)(6) depositions and one JBS USA fact witness, after the close of fact discovery. Dkt. 1576. Because the Moving DAPs did not raise the possibility of another Rule 30(b)(6) deposition of JBS USA, the Court's order on the stipulation did not allow for such testimony following the close of fact discovery. Dkt. 1582.

Discovery closed on October 31, 2022, and the Moving DAPs did not bring their motion to compel until November 14, 2022, the very last day to file non-dispositive motions. Before bringing the motion, the Moving DAPs made no further attempt to meet and confer with JBS USA. Moreover, a number of other Defendants have taken a similar position as JBS USA in response to 30(b)(6) deposition topics regarding antitrust-compliance policies. *See, e.g.*, Nelson Decl. Ex. 10 at 11-12 ("Hormel Foods will not provide Rule 30(b)(6) testimony for this Subject Matter Area"); Nelson Decl. Ex. 11 at 22 ("Seaboard will not designate a 30(b)(6) witness on this topic"); Nelson Decl. Ex. 12 (Triumph is "prepared to offer high-level testimony authenticating applicable policies, which have been produced and addressed at previous depositions. Triumph will not offer legal opinion, or disclose interpretations of those policies provided by counsel as that would invoke attorney-client privilege."). Yet the Moving DAPs have only filed a motion to compel against JBS USA.

**C. JBS USA Provides Significant Discovery and Deposition Testimony**

JBS USA has produced over 2.8 million pages of documents in this litigation at considerable expense and burden, including all versions of its codes of conduct that were applicable during the relevant time period of January 1, 2008 through June 30, 2018. Nelson Decl. ¶ 2; DAP Ex. E at 2, 14-15; DAP Ex. F (example of JBS USA's code of conduct). In addition to the Rule 30(b)(6) deposition of Mr. Manternach, JBS USA has already provided substantial testimony in eight depositions of JBS USA fact witnesses (with another fact witness deposition to be taken on December 12). Nelson Decl. ¶ 3. The eight fact witnesses who have been deposed held wide swaths of responsibility in JBS USA's pork business during the relevant time period and included the President of and most senior executive of the pork business, the head of hog procurement, two heads of sales, an individual in risk management, and others involved in sales and pricing.

These eight JBS fact witnesses were questioned extensively by DAPs about JBS USA's codes of conduct, including its internal antitrust compliance policies. *See, e.g.*, Nelson Decl. Exs. 2-9, Dooley Tr. 55:13-16, 57:12-58:24, 75:11-17, 78:15-79:8; Albright Tr. 71:7-72:12; Hiller Tr. 120:11-25; Brooks Tr. 125:5-127:23; Lorenger Tr. 119:8-23; Mills Tr. 115:15-116:25; Uber Tr. 64:8-68:19; DeGroot Tr. 33:13-34:17.

## ARGUMENT

Information sought in discovery must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Factors important to the proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "[E]ven if relevant, discovery is not permitted where . . . compliance would be unduly burdensome." *Dekker v. Cenlar FSB*, No. 21-cv-162 (MJD/TNL), 2022 WL 4354855, at *2 (D. Minn. Sept. 20, 2022) (quoting *Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2*, 197 F.3d 922, 925 (8th Cir. 1999)).

District courts have broad discretion to limit discovery and decide discovery motions. *Allen v. Reid*, No. 15–cv–1905 (WMW/JJK), 2016 WL 7670606, at *8 (D. Minn. Nov. 29, 2016) (citing *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993)). Because the discovery rules should be construed to secure the just, speedy, and inexpensive determination of every action, "judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

Here, the Court should exercise its discretion and deny Moving DAPs' request for another Rule 30(b)(6) deposition of JBS USA after the close of fact discovery on Topics 20 and 23, because the motion is untimely and the requested discovery is disproportionate to the needs of the case.

## I.    THE MOVING DAPS' MOTION SHOULD BE DENIED AS UNTIMELY

As this Court has recognized, a party's delay in seeking to compel discovery is a "highly significant factor" in the proportionality analysis. 11/16/2022 Order, Dkt. 1608 at 11. Indeed, the Court made clear early in this case that "[t]he parties must *promptly* bring disputes to the Court" when they are not able "to resolve those disputes through a diligent, good faith meet-and-confer process." 1/26/21 Pretrial Scheduling Order, Dkt. 658 at 9

(emphasis added).  The Court underscored the importance of diligence in bringing timely motions, stating that "*simply because this Scheduling Order establishes a deadline for filing a particular type of non-dispositive motion does not mean the Court will automatically deem any motion brought by that deadline to have been timely filed*."  *Id.* (emphasis added).  When determining whether a motion is timely filed, the Court considers "whether the relief sought by the motion is likely to impact the parties' ability to meet the other deadlines in this Order and whether it appears that with the exercise of diligence, the motion could have been brought sooner."  *Id.* at 9-10.

The Moving DAPs have been anything but diligent in bringing their motion.  The Moving DAPs went forward with a day-long deposition of the corporate witness without even meeting and conferring on the two specific disputed topics.  They then sat silently for several weeks before filing their motion.  They remained silent even after the Court ordered the parties to meet and confer to attempt to resolve outstanding discovery disputes and to "notify the Court as soon as practicable" of any part of discovery that may occur after the fact discovery cutoff.  10/04/22 Pretrial Order No. 1, Dkt. 1525 at 5, 10.  They further failed to raise the issue in the parties' various submissions ordered by the Court.  *See* Dkts. 1542, 1576.  And the Moving DAPs made no mention of seeking further corporate testimony from JBS USA at the Case Management Conference, where the parties and Court discussed "the status of discovery in all related cases to date" and "[a]n overview of the status of any motions, orders, or other events of import in all related cases to date."  10/04/22 Pretrial Order No. 1, Dkt. 1525 at 11; 10/17/2022 CMC Tr., Dkt. 1561 at 10:19-12:14, 15:18-18:3.  Instead, without explanation, they waited for the fact discovery deadline to pass, and then

10

filed this motion nearly two months after Mr. Manternach was deposed and on the last day of the non-dispositive motion deadline. They did so despite failing to properly meet and confer with JBS USA on Topics 20 and 23, in violation of the Pretrial Orders, Local Rule 7.1, and the Judges' Practice Pointers.

Given the Court's orders and the Moving DAPs' inexcusable delay, the fact that the motion was filed on the non-dispositive motion deadline does not make the motion timely. *See* 1/26/21 Pretrial Scheduling Order, Dkt. 658 at 9; 11/16/2022 Order, Dkt. 1608 at 11 (finding that delay in seeking relief from the Court, coupled with moving parties' lack of diligence, is sufficient reason to deny motion to compel discovery). Courts have considerable discretion to deny motions to compel as untimely to promote the "interests of dispatch and fairness" even when the moving parties have technically complied with applicable motion deadlines. *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010) ("Deadlines do not grant the parties carte blanche rights to demand sizeable discovery requests up to the last possible minute."); *see also Aardwolf Indus., LLC v. Abaco Machs. USA, Inc.*, No. CV 16-01968-GW (JEMx), 2017 WL 4769431, at *1-2 (C.D. Cal. July 10, 2017) (denying as untimely a motion to compel filed more than a month before discovery cutoff, noting that plaintiff did nothing for months before seeking "last minute . . . discovery relief").

Indeed, courts have rejected requests for Rule 30(b)(6) testimony in similar situations. *See, e.g.*, *ChriMar Sys. Inc. v. Cisco Sys. Inc.*, 312 F.R.D. 560, 562-64 (N.D. Cal. 2016) (refusing to authorize a second 30(b)(6) deposition where the party seeking

discovery did not timely meet and confer and finding that a second deposition would unduly burden the responding party).

## II.      A SECOND RULE 30(B)(6) DEPOSITION IS NOT PROPORTIONATE

### A.      The Testimony Sought Is Not Important to the Moving DAPs' Claims

As the Court has previously emphasized, proportionality requires consideration of the incremental value of the additional discovery sought.  *See* 12/17/21 Transcript of IDR Hearing, Dkt. 1082 at 27:17-29:3.  The burden is on the Moving DAPs to show why they information they have already obtained in discovery is deficient, and why further discovery is therefore necessary.  *Id.*  This burden comes from the fact that the parties are not operating on a "blank slate" (*id.* at 28:11-17)—JBS USA has already provided significant discovery on the disputed topics and there have been numerous Court orders and party submissions aimed at bringing discovery to a prompt close in this matter.

The Moving DAPs request another 30(b)(6) deposition regarding the enforcement of, and compliance with, JBS USA's internal antitrust compliance policies.  To be clear, JBS USA has already produced the versions of its codes of conduct—which include JBS USA's antitrust compliance polices—that were applicable during the relevant time period (January 1, 2008 through June 30, 2018) and could be located by a reasonable search.  Nelson Decl. ¶ 3; DAP Ex. E at 2, 13-14; DAP Ex. F (example of JBS USA's code of conduct).  Corporate testimony is not necessary on "the existence and language of [JBS USA's] written policies and/or codes of conduct" or "when and how the language of such written policies were changed" (DAP Br. at 4) because the policies speak for themselves.

12

Moreover, Plaintiffs have had the opportunity to question eight JBS USA fact witnesses regarding the subjects of Topics 20 and 23, including significant questioning on the code of conduct that contains its internal antitrust compliance policies.  Nelson Decl. Exs. 2-9, Dooley Tr. 55:13-16, 57:12-58:24, 75:11-17, 78:15-79:8; Albright Tr. 71:7-72:12; Hiller Tr. 120:11-25; Brooks Tr. 125:5-127:23; Lorenger Tr. 119:8-119:23; Mills Tr. 115:15-116:25; Uber Tr. 64:8-68:19; DeGroot Tr. 33:13-34:17.

Each case that the Moving DAPs cite in their memorandum is inapposite because those cases address the relevance of admitting antitrust policies as evidence, rather than the proportionality or burden of preparing a 30(b)(6) witness for another deposition regarding those policies after the close of fact discovery where the opposing party already has the policies and considerable fact testimony about them.[4]  Moreover, there are cases holding the opposite—excluding evidence of antitrust compliance policies at trial, finding that the evidence presented too great a risk that the jury would be misled about the proper scope and interpretation of the Sherman Act.  *See, e.g.*, *MM Steel, LP v. Reliance Steel & Aluminum Co.*, No. 4:12–CV–1227, 2013 WL 6588836, at *3 (S.D. Tex. Dec. 16, 2013) (granting motion in limine to exclude evidence of internal antitrust compliance policies);

---

[4]  *See In re Polyurethane Foam Antitrust Litig. Direct Purchaser Class*, No. 1:10 MD 2196, 2015 WL 12747961, at *9-10 (N.D. Ohio Mar. 6, 2015) (denying motion in limine to exclude evidence of defendant companies' antitrust policies); *J & M Distrib., Inc. v. Hearth & Home Techs., Inc.*, No. 13-CV-72 (SRN/TNL), 2015 WL 144797, at *1-3 (D. Minn. Jan. 12, 2015) (same); *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 781960, at *2 (N.D. Cal. Mar. 13, 2007) (same); *In re Linerboard Antitrust Litig.*, 504 F. Supp. 2d 38, 58 n.13 (E.D. Pa. 2007) (denying motion to strike internal antitrust compliance policies as inadmissible evidence).

*United States v. North*, No. 3:06 CR 323(CFD), 2007 WL 1630366, at *1 (D. Conn. June 5, 2007) (same).

Given all the information already possessed by the Moving DAPs, even if the policies themselves are somewhat relevant, the incremental value of additional corporate testimony on the policies is negligible at best. Indeed, "the Moving DAPs' delay in seeking relief from the Court undermines the claim that the [discovery is] important to the issues in this litigation." *See* 11/16/2022 Order, Dkt. 1608 at 12; *see also* 8B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2285 (3d ed. 2022) (noting that delays in seeking a court order may weaken or undermine the argument that the additional discovery is important).

Tellingly, only three of 20 DAPs with claims remaining against JBS USA have joined this motion. And significantly, many other Defendants have taken a similar position as JBS USA on these types of antitrust compliance policy 30(b)(6) deposition topics, yet for some unexplained reason, Moving DAPs are singling out only JBS USA. Nelson Decl. Exs 10-12. These facts demonstrate that corporate deposition testimony on these topics is not important to the Moving DAPs' claims.

### B. The Burden of Additional 30(b)(6) Testimony on Topics 20 and 23 Outweighs the Benefit

The Moving DAPs' request for another Rule 30(b)(6) deposition is also unduly burdensome given these circumstances and the topics at issue, and that burden outweighs any benefit. Preparation of a 30(b)(6) witness is unduly burdensome where a party has already provided other types of discovery on the 30(b)(6) topics. *See Blackmore v. Union*

14

*Pacific Railroad Company*, No. 8:21CV318, 2022 WL 3718115, at *7 (D. Neb. Aug. 29, 2022). Preparing a corporate witness for another deposition after the close of fact discovery is even more burdensome, especially on topics that inevitably call for legal conclusions and that can easily be manipulated by the DAPs to explore incomplete hypotheticals.

First, the burden of preparing a corporate witness on Topics 20 and 23 outweighs the benefit because the topics call for legal conclusions and privileged information. Internal antitrust compliance policies necessarily "present legal conclusions as to the scope and meaning of the Sherman Act." *MM Steel, LP*, 2013 WL 6588836, at *3; *see also North*, 2007 WL 1630366, at *1.

It is beyond dispute that it is improper to seek lay testimony from a 30(b)(6) deponent regarding legal conclusions. *See Fairview Health Services v. Quest Software Inc.*, No. 20-cv-1326 (SRN/LIB), 2021 WL 5087564, at *6 (D. Minn. Sept. 24, 2021) (denying motion to compel Rule 30(b)(6) testimony regarding corporation's interpretation of contracts, finding the topics sought impermissible legal conclusions); *Schyvincht v. Menard, Inc.*, No. 18 CV 50286, 2019 WL 3002961, at *2-3 (N.D. Ill. July 10, 2019) (same); *Majestic Bldg. Maint., Inc. v. Huntington Bancshares, Inc.*, No. 2:15-CV-3023, 2018 WL 3358641, at *11 (S.D. Ohio July 10, 2018) (granting protective order with respect to Rule 30(b)(6) topics that improperly sought legal conclusions); *Stowers v. Supreme Court of Appeals of W. Va.*, No. 2:18-CV-00560, 2019 WL 2319305, at *1 (S.D. W. Va. May 29, 2019) (finding proposed topics that ask witness to offer a legal opinion inappropriate inquiries for Rule 30(b)(6) deposition); *Cat Iron, Inc. v. Bodine Envtl. Servs., Inc.*, No. 10-CV-2102, 2011 WL 2457486, at *7 (C.D. Ill. June 15, 2011) ("The designated

30(b)(6) deponent cannot be asked to offer legal conclusions. . . .").  For that reason, a corporate deposition regarding the code of conduct would be largely futile because much of the time would be spent instructing the deponent not to answer.

Second, based on the questions asked of the JBS USA fact witnesses, it appears that the Moving DAPs are primarily seeking to interrogate JBS USA's corporate designee on the application of its internal antitrust compliance policies to various vague and incomplete hypothetical scenarios.  For example, during the deposition of Mr. Dooley, the President of the pork business during the relevant time period, DAPs repeatedly asked the deponent to apply the code of conduct and antitrust compliance provision to various hypothetical communications and inquiries.  Nelson Ex. 2, Dooley Tr. 100:25-101:3 (█████████

████████████████████████████████████████████████

██████████████████████████; *id.* 111:15-20 (██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████; *id.* 170:4-7 (██████████

████████████████████████████████████████████████

█████████████████████████████████ .

DAPs asked the other witnesses similar lines of questions about whether a variety of vague and hypothetical situations "would be a violation of JBS's conduct of conduct."  Nelson Ex. 7, Mills Tr. 116:4-6, 117:2-4 (Q: ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

[redacted]; Nelson Ex. 4, Hiller Tr. 168:13-23 ([redacted]; Nelson Ex. 6, Lorenger Tr. 120:3-5 ([redacted]; *id.* 121:8-10 ([redacted]; *id.*123:6-8 ([redacted]; *id.* 128:9-12 ([redacted].

Preparing a corporate witness to answer vague questions about the policies' application to fact-specific, incomplete hypothetical scenarios presents a significant burden because the Rule 30(b)(6) designee would need to be extensively trained—likely by JBS USA's in-house counsel—about the application of the internal policies to many different instances and scenarios. This would effectively require the deponent to give a legal opinion on behalf of the corporation on the purpose of the antitrust compliance policy and how it would be applied in hypothetical instances. Not only would this infringe on the attorney-client privilege, but it would provide DAPs with no meaningful, new testimony while, at the same time, requiring significant time for both the witness and JBS USA to prepare for the deposition.

Given that subject areas covered in Topics 20 and 23—beyond the policy language itself, which the Moving DAPs already possess—primarily call for testimony that is improper for a Rule 30(b)(6) deposition, the burden of preparing JBS USA's corporate designee to sit for another deposition on these topics outweighs the benefit.

## **CONCLUSION**

For all the foregoing reasons, the Court should deny the Moving DAPs' motion to compel as untimely and disproportionate to the needs of the case.

Dated:  December 2, 2022

**SPENCER FANE LLP**

By: */s/ Jessica J. Nelson*
   Donald G. Heeman, #286023
   Jessica J. Nelson, #347358
   Randi J. Winter, #391354
   100 South Fifth Street, Suite 2500
   Minneapolis, MN  55402
   Telephone:  (612) 268-7000
   Facsimile:  (612) 268-7001
   dheeman@spencerfane.com
   jnelson@spencerfane.com
   rwinter@spencerfane.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
   Stephen R. Neuwirth (*pro hac vice*)
   Michael B. Carlinsky (*pro hac vice*)
   Sami H. Rashid (*pro hac vice*)
   Richard T. Vagas (*pro hac vice*)
   David B. Adler (*pro hac vice*)
   Heather Christenson (*pro hac vice*)
   51 Madison Avenue, 22nd Floor
   New York, NY 10010
   Telephone:  (212) 849-7000
   Facsimile:  (212) 849-7100
   stephenneuwirth@quinnemanuel.com
   michaelcarlinsky@quinnemanuel.com
   samirashid@quinnemanuel.com
   richardvagas@quinnemanuel.com
   davidadler@quinnemanuel.com
   heatherchristenson@quinnemanuel.com

*Attorneys for Defendant JBS USA Food Company*