**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Case No. 18-cv-1776 (JRT/JFD) |
| This Document Relates To: All Actions | |

**DEFENDANTS' RESPONSE TO**
**CERTAIN DIRECT ACTION PLAINTIFFS' OBJECTIONS,**
**MADE SUBJECT TO LOCAL RULE 72.2, TO MAGISTRATE JUDGE'S**
**ORDER DATED NOVEMBER 16, 2022 DENYING MOTION TO COMPEL**

## I. INTRODUCTION

Objecting DAPs[1] fail to meet the high standard of showing that Judge Docherty's denial of their motion to compel was "clearly erroneous or contrary to law," which they concede is the standard here. (Objecting DAPs' Objection ("Obj.") 1-2, ECF No. 1650.) First, Objecting DAPs misconstrue Judge Docherty's order to claim that he "committed clear error in finding Moving DAPs did not act in a timely manner to seek the requested data." (Obj. 2.) Objecting DAPs received Defendants' structured sales data by September 2021, were explicitly informed in August 2021 that the data they now seek was not included in those productions, failed to ask Defendants for the additional data until May 2022, and did not move to compel until the closing weeks of fact discovery in September 2022. That lack of diligence provided ample justification for Judge Docherty's refusal to modify the Court's scheduling order to accommodate Objecting DAPs' attempt to redo highly burdensome data discovery after the close of discovery.

Judge Docherty further properly found that Objecting DAPs' request was not proportional to the needs of the case given Objecting DAPs' delay in seeking this data, the considerable burden and expense required to produce additional data, the Court's

---

[1] Of the over 60 Direct Action Plaintiffs ("DAPs") in the consolidated MDL, only 7 moved to compel additional structured data ("Moving DAPs"). (ECF No. 1493.) Of those 7, Amory Investments LLC ("Amory") and Sysco Corporation ("Sysco") chose not to join the Objections. The group of Objecting DAPs is limited to Compass Group USA, Inc. ("Compass"); Conagra Brands, Inc. ("Conagra"); Howard B. Samuels solely as Trustee for the estate of Central Grocers, Inc. ("Central Grocers"); Nestlé Purina PetCare Company and Nestlé USA, Inc. (collectively, "Nestlé").

All Objecting DAPs are represented by Nexsen Pruet.

interest in ensuring that consolidation streamlines the litigation and in keeping the various cases on the same track, and Objecting DAPs' failure to demonstrate why their own data is insufficient—a failure that persists to this day.  Judge Docherty's weighing of the various proportionality factors was well within his discretion.

In sum, Judge Docherty properly rejected Objecting DAPs' last-minute attempt to renegotiate the scope of highly burdensome productions of structured data.  Refusing to disrupt the case schedule to order a do-over of that discovery was not clear error.  Defendants respectfully request the Court overrule Objecting DAPs' objections and sustain Judge Docherty's decision.

## II. FACTUAL BACKGROUND

Because the history of structured data productions and the relevant procedural background were so integral to the Court's consideration of the motion, Defendants set forth a complete recitation of the facts on pages 3 to 16 of their opposition to the motion to compel.  (Defs.' Opp'n, ECF No. 1521.)  Judge Docherty's order reiterated the key points, and it is notable that Objecting DAPs do not dispute any of that procedural history.

### A. Initial Structured Data Negotiations and Deadlines

Between November 2020 and April 2021, Defendants engaged in extensive negotiations with Class Plaintiffs, the Commonwealth of Puerto Rico, and Winn-Dixie and Bi-Lo ("Early DAPs") to determine, among other things, the specific products that would be subject to data productions.  (Order Denying Moving DAPs' Motion to Compel ("Order") 3, ECF No. 1608.)  By April 5, 2021, after multiple extensions of the deadline

to reach agreement, those parties finally resolved the scope of Pork products subject to discovery. (*Id.*; Defs.' Opp'n 6 (citing Defs.' Opp'n Ex. 9, ECF No. 1522-9).) With the scope of structured data settled, Defendants "undert[ook] substantial efforts to meet the Court's September 1, 2021 deadline" for substantial completion of data productions. (Order 3; *see also* Defs.' Opp'n 7-9.)

### B. Coordination with Objecting DAPs on Structured Data and Related Deadlines

Objecting DAPs Nestlé and Conagra filed complaints that were transferred to this action in July and August 2021, respectively. Central Grocers' complaint was transferred in November 2021. While Compass was not transferred until June 2022, it shares counsel with the remaining Objecting DAPs.

On August 2, 2021, Defendants and DAPs consolidated into the MDL negotiated and submitted a Proposed Pretrial Case Management and Scheduling Order to govern DAP discovery. (Joint Statement 2, ECF No. 1046; Proposed Pretrial Case Management Order, ECF No. 1046-1.) That agreed-upon schedule set **December 1, 2021**, as the deadline for Defendants to produce "any additional structured data" requested by DAPs. (Joint Statement 3.) Defendants and DAPs agreed to operate under that proposed schedule until entry of a formal court order. (*See id.* at 2.) In the joint schedule, Defendants expressly stated their contention that the "scope of structured data . . . negotiated with the Classes, Commonwealth of Puerto Rico, and Direct Action Plaintiffs Winn-Dixie and Bi-Lo Holdings should govern in the MDL" and reserved their right to

oppose any requests for additional structured data. (Proposed Pretrial Case Management Order 4 n.5; *see also* Order 5, 10.)

Defendants also produced discovery materials to DAPs in August 2021, including letters clearly stating the scope of structured data that Defendants had agreed to produce and what they were excluding. (*See* Order 4 (citing Defs.' Opp'n Exs. 14-15, ECF Nos. 1522-14, 1522-15).) Those letters were sent to DAPs—including counsel for Objecting DAPs—on August 13, 2021. Thus, Objecting DAPs were on notice of the scope of structured data as soon as they were transferred to this action and prior to completion of document discovery.[2]

Yet, at no point prior to either the September 1, 2021 deadline for substantial completion of document production or the December 1, 2021 deadline for additional DAP data requests, did Objecting DAPs make any attempt to revisit data productions. (*See, e.g.*, Defs.' Opp'n 12-14.) Defendants ultimately produced approximately 175 gigabytes of sales data containing 1.4 billion observations related to tens of thousands of different products over 16 years involving more than $150 billion of commerce. (*See id.* at 9; Order 12.) (Sales data is just one category of structured data Defendants have

---

[2] At oral argument, counsel for Objecting DAPs stated, "[Y]ou will not see my firm listed on any of the exhibits that the defendants put forward." (Ex. 1, Oct. 5, 2022 Mot. Hr'g Tr. 32:13-15.) That is misleading. The reason that no Nexsen Pruet lawyer was on Defendants' transmittal emails is that DAPs told Defendants to send that correspondence to a single source, Kaplan Fox paralegal Mandrika Moonsammy. Nexsen Pruet attorneys *were* on the email directing Defendants to send the materials to Mr. Moonsammy. (Ex. 2, Aug. 5, 2021 email from M. Mitchell for DAPs, cc D. Eddy, requesting discovery materials and Aug. 5, 2021 email from M. McCahill, cc D. Eddy, directing Defendants to send materials to M. Moonsammy.)

produced.) As detailed in declarations, Defendants spent thousands of hours identifying, collecting, and producing that sales data. (*See generally* Defs.' Opp'n 25-27 and cited declarations and affidavits.)

Objecting DAPs did not request unique structured data productions before the December 1, 2021 deadline. Instead, on October 22, 2021, DAPs (including Objecting DAPs) served Rule 34 requests for production adopting the same definition of "Pork" used by the Class Plaintiffs and applied throughout discovery, which Judge Docherty recognized did not include the products subject to Objecting DAPs' motion. (*See* Order 6; *see also* DAP RFPs 6 (Definition No. 19), ECF No. 1522-3.) In response, Defendants explicitly responded that their data productions were complete. (*See* Moving DAPs' Mem. Support Mot. Compel 4, ECF No. 1495.) The December 1, 2021 data deadline passed, and no Objecting DAP requested any additional structured data or an extension of the relevant deadlines.

### C. Objecting DAPs Demand Additional Structured Data

Objecting DAPs did not inform Defendants of their intent to substantially broaden the scope of data discovery until May 31, 2022—over nine months after the August 2021 letters informed them of the negotiated scope of structured data productions, nine months after they received structured data in September, six months after receiving Defendants' November responses to DAPs' requests for production, and six months after the December 2021 deadline for any additional production of structured data specific to DAPs. With document discovery long closed and the parties working to complete

6

depositions, Objecting DAPs' new demand sought data related to thousands of new products ranging from breakfast burritos to blood meal.

Defendants promptly responded that they would not agree to additional data production.  (*See, e.g.*, Defs. Opp'n 16 (citing Defs. Opp'n Exs. 19-21, ECF Nos. 1522-19, 1522-20, 1522-21).)  Objecting DAPs did not move to compel until September 20, 2022.

### III.   STANDARD OF REVIEW

The "standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential."  *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013) (citing *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007)).  For discovery orders, "the Court will defer to the magistrate judge's broad discretion . . . to manage and define appropriate discovery unless the magistrate judge's determinations were clearly erroneous or contrary to law." *Id.* at 238 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 72(a).  An order is "clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Shukh*, 295 F.R.D. at 235 (internal quotation marks omitted).  A decision is "contrary to law" only where "it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Id.* (internal quotation marks omitted); *see also Hormel Foods Corp. v. Cereol, S.A.*, No. CIV.01-2243(JRT/FLN), 2003 WL 21402601 (D. Minn. June 16, 2003) (noting that a district judge's disagreement with a magistrate judge's ruling does not justify vacating it under Rule 72).

## IV.   ARGUMENT

### A.   Judge Docherty's Ruling on Timeliness Was Neither Clearly Erroneous nor Contrary to Law

Objecting DAPs claim that "Judge Docherty committed clear error in finding Moving DAPs did not act in a timely manner to seek the requested data." (Obj. 2.) Claiming that the only deadline applicable to the timeliness ruling was the Court's non-dispositive motion deadline, Objecting DAPs assert that Judge Docherty erred by requiring them to show "good cause" for waiting more than a year after completion of document discovery to ask the Court to order a do-over of structured data productions. (*Id.*)

Objecting DAPs, however, do not and cannot dispute that Defendants made extraordinary efforts to comply with the Court's September 1, 2021 deadline for substantial completion of document productions. And they ignore the subsequent December 2021 deadline for data productions specific to DAPs. Revisiting structured data at this stage would also require modification of the October 31, 2022 fact discovery cutoff. (Order 10-11; *see also* Pretrial Order No. 1, ECF No. 1525.) Judge Docherty's ruling that Objecting DAPs' request would require modification of the scheduling orders was not clearly erroneous.

Rule 16 requires good cause for modifying deadlines, and DAPs cite no case for their novel proposition that good cause must be shown only to modify certain deadlines and not others. Objecting DAPs argued for new production deadlines, and the burden to show good cause was therefore on them. They did not meet that burden.

8

Objecting DAPs then claim that Judge Docherty erred by requiring diligence of Objecting DAPs. (*See* Obj. 3.) But Judge Docherty addressed Objecting DAPs' diligence in the context of analyzing good cause. As Judge Docherty noted, and Objecting DAPs do not contest, "diligence is the primary factor for assessing good cause." (Order 9 (quoting *Portz v. St. Cloud State Univ.*, No. 16-CV-1115 (JRT/LIB), 2017 WL 3332220, at *3 (D. Minn. Aug. 4, 2017)).)

Judge Docherty rejected Objecting DAPs' excuse that they were unaware of products omitted from Defendants' data productions, noting that "[i]f true, that was a serious lack of diligence, in light of the August 2021 emails advising the DAPs of the products that would be excluded." (Order 10; *see also* Defs.' Opp'n 3-6, 10-16.) While the good cause standard applies, such an extreme lack of diligence justifies denying their motion even if it did not. *See, e.g.*, *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010) ("Deadlines do not grant the parties carte blanche rights to demand sizable discovery requests up to the last possible minute.").

Objecting DAPs' lack of good cause and their delay in seeking new data are sufficient to sustain Judge Docherty's ruling. This Court has recognized that the addition of new DAPs—who 1) knowingly sat on the sidelines while Defendants negotiated discovery agreements with Class Plaintiffs and Early DAPs, and then 2) demanded that they be permitted to proceed on the same schedule as other Plaintiffs—cannot be allowed to upend the Court's management of this case and Defendants' efforts to comply with the

Court's deadlines.  Judge Docherty's ruling was a proper exercise of the Court's discretion to manage discovery and enforce deadlines.[3]

### B. Judge Docherty Properly Weighed Relevance, Proportionality, and Burden.

Objecting DAPs fail to meet the high burden of clear error with respect to proportionality.  Pointing to two third-party productions, while ignoring Defendants' detailed explanations about the burden involved in producing data on new products, Objecting DAPs claim that the production they request is not unduly burdensome or disproportionate.  (*See* Obj. 5-6.)  Objecting DAPs do not provide the Court with any of the facts necessary to make an apples-to-apples comparison, such as the scope of those third-parties' productions, what was included or excluded and why, the number of databases accessed for their productions, whether any databases were archived or no longer in use, the costs involved, or myriad other necessary considerations.  The Court does have detailed affidavits from Defendants noting the thousands of hours required for their productions to date and why the specific data requested now would also be unduly burdensome.  (*See, e.g.*, K. Joyner Decl. ¶¶ 13-14, ECF No. 1521-3 (describing work that would be required to comply with Objecting DAPs' requests); T. Tweeten Decl. ¶¶ 4-6, ECF No. 1521-5 (same).)[4]  Particularly since Objecting DAPs offer no basis to disregard

---

[3] Objecting DAPs incorrectly claim that Judge Docherty denied Compass's "motion without explanation."  Judge Docherty expressly addressed Compass (Order 11), while dedicating extensive analysis to his holding that considerations of proportionality and burden justify denial of the motion as to Compass and all Moving DAPs (*id.* at 11-13).

[4] Objecting DAPs also claim that Defendants produced the structured data requested to the claims administrators for the Smithfield and JBS settlements.  That is false.  Defendants produced to the claims administrators spreadsheets showing high-level total

10

those declarations, third-party productions do not indicate that Judge Docherty's ruling was "clearly erroneous."

Nor does Judge Docherty's proportionality determination regarding Smithfield and JBS amount to clear error. Objecting DAPs argue that affidavits quantifying burden are required as a matter of law for such a determination, and that finding a lack of proportionality without them is clear error. (*See* Obj. 4.) Unsurprisingly, they cite no case for that proposition, either in their original motion or in their objections.

Objecting DAPs ignore Judge Bowbeer's admonition that "we're not writing on a blank slate" and that any proportionality analysis must "take into account what has already been done." (Defs.' Opp'n Ex. 2, 28:15-17, ECF No. 1522-2.) They also ignore the long history involving each Defendant's months-long negotiations to reach finality on the scope of their structured data productions, the thousands of hours Defendants have already devoted to identifying, collecting and producing structured data that fell within this agreed-upon scope in accordance with the Court's discovery deadlines, and the 175 gigabytes of sales data that were produced to Objecting DAPs. (*See* Order 12-13; *see also id* at 3-4; Defs.' Opp'n 4-9, 25-27.) Judge Docherty appropriately exercised his

---

sales information but nowhere near the invoice-level detail that the Moving DAPs demanded. During the meet-and-confer process, Smithfield and JBS gave Objecting DAPs samples of those high-level spreadsheets to see if the high-level data would suffice to avoid motion practice. Objecting DAPs' counsel said in emails that the high-level data would not suffice. It is highly misleading for Objecting DAPs to imply that Smithfield and JBS gave the settlement administrator invoice-level data that they refused to give Objecting DAPs.

discretion to determine that additional data productions are unwarranted given all of that effort (along with the other considerations cited in Judge Docherty's Order at 11-13).

Objecting DAPs also argue that Judge Docherty committed clear error by holding Objecting DAPs to an overly strict relevance standard. (*See* Obj. 10.) Objecting DAPs' overstate Judge Docherty's finding on relevance. Although Judge Docherty stated that the belatedly requested data was only "somewhat" relevant, he held that any "relevance of the additional sales data [was] outweighed by proportionality concerns," rather than deny the motion for lack of relevance. (Order 12, 13.) Such weighing of relevance and proportionality considerations is proper under the Federal Rules and is an appropriate application of Judge Docherty's broad discretionary authority to manage discovery. *See* Fed. R. Civ. P. 26(b)(1) (Discovery sought must be "proportional to the needs of the case."); *Blue Cross Blue Shield of Minnesota v. Wells Fargo Bank, N.A.*, No. CIV. 11-2529 DWF/JJG, 2012 WL 5471113, at *2 (D. Minn. Nov. 9, 2012) (recognizing magistrate judge's discretionary authority related to discovery issues).

### C. Judge Docherty Did Not Commit Clear Error with Respect to Objecting DAPs' Own Data.

In Defendants' initial opposition, they argued that Moving DAPs should rely on their own purchase data given the burden entailed in Defendants making new data productions. (Defs.' Opp'n 27-28.) As Defendants noted, "No Moving DAP has explained why its own purchase data is not sufficient to meet its needs." (*Id.* at 28.) Judge Docherty similarly found that "Moving DAPs have not explained why their own purchase data will not suffice." (Order 12 (cited in Obj. 8).) That remains the case

today—Objecting DAPs still have not explained *why* their data are insufficient, despite having ample opportunity to do so with two briefs and oral argument.

Objecting DAPs have it backwards when they argue that "Defendants made no suggestion . . . that DAPs' own data were sufficient." (Obj. 8.) Only Objecting DAPs can know what data they or their experts believe they need for their theories of the case. Yet Objecting DAPs present nothing to explain why their data are insufficient or why their experts need data about the same transactions from Defendants. All they offer the Court is the conclusory assertion that their data is "just not adequate." (*Id.* at 9.) At this late stage, such *ipse dixit* cannot carry the day.

### D.  The *Broiler Chickens* Order Is Not Relevant.

Objecting DAPs' contention that Judge Docherty "committed clear error by not even discussing an order from the *Broiler Chickens Antitrust* case" is frivolous. (Obj. 7-8.) As an initial matter, "a court is not required to address every argument advanced by a party. . . . [T]here is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court." *See, e.g.*, *Miller v. Metro. Life Ins. Co.*, No. 17CIV7284ATSN, 2018 WL 5993477, at *5 n.5 (S.D.N.Y. Nov. 15, 2018) (internal quotation marks omitted) (rejecting argument in statement of objections that magistrate judge erred when it "did not address four of [defendant's] points"). Furthermore, even if that decision were squarely on all fours, two courts can exercise their discretion differently without abusing that discretion. *Cf. InternetAd Sys., LLC v. ESPN, Inc.*, No. CIV.A.3:03CV2787-D, 2004 WL 5181346, at *3 (N.D. Tex. Oct. 8, 2004) (holding that abuse of discretion requires more than pointing to other decisions

deemed "preferable or better reasoned") (citing *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (it is "unusual to find an abuse of discretion in discovery matters")).

But the facts of the *Broilers* decision do not parallel the facts here. There, the class plaintiffs sought to top-off prior data productions with an additional two years of data to account for the time that had passed since plaintiffs filed their case. And the *Broilers* plaintiffs "represent[ed] . . . that these supplemental productions will be consistent in form with each Defendants' prior productions of the same categories of information" to minimize burden. *See* May 19, 2020 Order 3, *In re Broiler Chicken Antitrust Litig.*, Case No. 1:16-cv-08637 (N.D. Ill.), ECF No. 3622 (ECF No. 1694-14 in this action). The burden considerations were thus entirely different, as was the procedural posture. There, Plaintiffs had not sat on their hands for a year before seeking to renegotiate the scope of the products to be included in the structured data at the end of discovery.

While Objecting DAPs now claim that that decision "should have been <u>the</u> guide for the Court," (Obj. 8 (emphasis in original)), Moving DAPs' own brief belies that notion. Moving DAPs' only discussion of that case in its original briefing is in a parenthetical to a single citation to that order. Judge Docherty's alleged failure to discuss a non-binding decision from another district court is not clear error or contrary to the law.

## V.     CONCLUSION

Defendants respectfully request the Court sustains Judge Docherty's order.

Dated:  December 14, 2022

/s/  *Tiffany Rider Rohrbaugh*
Tiffany Rider Rohrbaugh (*pro hac vice*)
Rachel J. Adcox (*pro hac vice*)
Allison Vissichelli (*pro hac vice*)
Lindsey Strang Aberg (*pro hac vice*)
Brandon Boxbaum (*pro hac vice*)
Keith Holleran (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
trider@axinn.com
radcox@axinn.com
avissichelli@axinn.com
lstrang@axinn.com
bboxbaum@axinn.com
kholleran@axinn.com

Jarod Taylor (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8109
jtaylor@axinn.com

Craig M. Reiser (*pro hac vice*)
Kail Jethmalani (*pro hac vice*)
Andrea N. Rivers (*pro hac vice*)
Victoria J. Lu (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200
creiser@axinn.com
kjethmalani@axinn.com
arivers@axinn.com
vlu@axinn.com

David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center

Respectfully submitted,

*/s/ Craig. S. Coleman*
Craig S. Coleman (#0325491)
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
craig.coleman@faegredrinker.com
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com

Jacob D. Bylund
Stephanie A. Koltookian
Robert C. Gallup (#0399100)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Ave., 33rd Floor
Des Moines, IA 50309
(515) 248-9000
jacob.bylund@faegredrinker.com
stephanie.koltookian@faegredrinker.com
robert.gallup@faegredrinker.com

Jonathan H. Todt
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 842-8800
jonathan.todt@faegredrinker.com

John S. Yi
FAEGRE DRINKER BIDDLE &

15

90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

*Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc.*

*/s/ Donald G. Heeman*
Donald G. Heeman (#0286023)
Jessica J. Nelson (#0347358)
Randi J. Winter (#0391354)
SPENCER FANE LLP
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402-4206
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen R. Neuwirth (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Sami H. Rashid (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
David B. Adler (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samirashid@quinnemanuel.com
richardvagas@quinnemanuel.com
davidadler@quinnemanuel.com

*Counsel for JBS USA Food Company*

REATH LLP
One Logan Square, Suite 2200
Philadelphia, PA 19103
(215) 988-2700
john.yi@faegredrinker.com

*Counsel for Hormel Foods Corp. and Hormel Foods, LLC*

*/s/ John A. Cotter*
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
LARKIN HOFFMAN DALY & LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
(972) 707-1809
brian@brownfoxlaw.com

*Counsel for Smithfield Foods, Inc.*