# EXHIBIT B

## EXHIBIT B – Defendants

The parties will soon file and argue a series of litigation-shaping motions, including class certification, summary judgment, and *Daubert*s. These motions will require detailed discussions of the industries at issue in this case—including hog production and pork processing. Given the importance of the dynamics of these industries to *In re Pork*, Defendants respectfully propose that this Court hold an "industry day" in early January, prior to the class certification hearing or any summary judgment briefing, at which the parties can make off-the-record, attorney presentations to the Court regarding the aspects of these industries that are relevant to the critical motions to come. Holding an industry day first, before arguments on the motions, will allow the Court to best assess the parties' arguments and lead to efficient advocacy that focuses on the dispositive issues.

*First*, off-the-record "industry days" are increasingly common and a well-established tool to manage complex cases. For example, in *In re Blue Cross Blue Shield Antitrust Litigation*, the MDL court held an off-the-record "Economics Day" regarding the dynamics of the insurance industry "to allow the parties to provide the court with an overview of the economic issues associated with the case." *See, e.g.*, Ex A, Dkt. 906, No. 2:13-cv-20000-RDP (Dec. 9, 2016 N.D. Ala.). These sessions can involve presentations from attorneys for both sides on a set list of topics approved by the court, and are typically not considered evidence or recorded via stenographic means, although courts may retain a video copy for future reference. *See, e.g.*, Ex. B, Joint Order No. 2, *In re London Silver Fixing, Ltd., Antitrust Litigation*, No. 14-MD-2573 (VEC) (S.D.N.Y. Aug. 5, 2015) (antitrust court ordering "a non-adversarial tutorial regarding the gold and silver markets," which consisted of attorney presentations); *In re Aluminum Warehousing Antitrust Litig.*,

### EXHIBIT B – Defendants

2014 WL 4277510, at *1 (S.D.N.Y. Aug. 29, 2014) (explaining court had conducted "a factual tutorial on the structure of the industry").

The Manual for Complex Litigation recognizes the propriety and need for subject-matter presentations in complex cases such as this, and the ABA has endorsed this practice. *See* Manual for Complex Litigation § 23.32 n.1656 (4th ed. 2004) (explaining that "[t]he object of this exercise should be education, not argument"); ABA Civil Trial Practice Standard 7 (August 2007) ("Tutorials are intended to provide the court with background information to assist the court in understanding the . . . complex subject matter involved in the case.").[1]

***Second***, Defendants believe an Industry Day would efficiently advance the resolution of this case. The production of pork is a complex, multistep, and multiplayer process that is likely not familiar to a lay audience. The parties dispute whether Defendants acted in their unilateral self-interest, but each side's arguments depend on the basic economics of how pigs go from sow to market hog to pork belly to hickory smoked bacon. Educating the Court on the entities involved at each stage of the process and how, when, and why they interact will provide important context for the issues in dispute at class certification, summary judgment, and beyond.

For example, the parties agree that **hog production** is a distinct industry from **pork**

---

[1] Courts outside the antitrust context have frequently held such "science" or "industry" days in products-liability and mass-tort litigation. *See, e.g.*, Stipulated Order Granting Defendant's Motion for a NuvaRing "Science Day," Dkt. 226, *In re NuvaRing Prods. Liab. Litig.*, 4:08 MDL 1964 RWS (E.D. Mo. July 22, 2009); Agreed Order Regarding Presentations to the Court, *In re Celexa and Lexapro Prods. Liab. Litig.*, Dkt. 113, MDL No. 1736, 4:06-md-01736-RWS (E.D. Mo. Feb. 12, 2007) (allowing parties to make informal, live presentations to the court); *In re Depakote*, No. 14-CV-847-NJR-SCW, 2015 WL 4775868, at *3 n.2 (S.D. Ill. Feb. 13, 2015) (describing similar "Science Day").

## EXHIBIT B – Defendants

*processing*. Some Defendants only process pork; they buy all of their hogs from independent third-party producers. Others process pork that comes both from hogs they raise and those they buy. As the class papers demonstrate, the parties dispute the degree to which these third-party producers make independent production decisions, and whether plaintiffs can prove their case without accounting for hog production. Permitting the parties to present foundational knowledge on the economics of hog production and pork processing, such as the multi-year pig life cycle, or the types of producer contracts between processors and producers will likely prove helpful in determining issues such as class certification, *Dauberts* and summary judgment

Similarly, all plaintiff groups allege that exports played some role in the alleged conspiracy. But assessing whether exports were independent (as Defendants maintain) or collusive (as plaintiffs imply) will benefit from background information about how pork is exported: why certain parts of the pig are exported because of foreign demand, how brokers facilitate the export of pork to different markets at certain prices, and how the government regulates and promotes the export of pork. An industry day would help familiarize the court with these fundamentals before it considers the parties' arguments.

Of course, every case involves some specialized information. But an industry day is uniquely appropriate and efficient in sprawling, multi-year antitrust lawsuits like *In re Pork* because these cases require a nuanced understanding of market conditions. For example, *In re Blue Cross* involved a similarly sweeping antitrust lawsuit against much of the health insurance industry, and so Judge Proctor there held an off the record session to "educate" the court on the "economic issues associated with" the insurance industry in "an

**EXHIBIT B – Defendants**

*objective* format." Ex A.  An industry day would be similarly beneficial here.

An industry day would *complement* the briefing and hearings for the upcoming motions, not replace them.  Industry days are becoming increasingly common in complex antitrust cases for a reason:  they allow the court to efficiently cut through the noise of voluminous filings and gain a baseline understanding of the industry at issue.  Once the parties have covered foundational issues at an industry day, they can streamline their motion arguments and presentations to focus on the key issues that will decide the case.  Given that the entire class hearing will last only four hours, it is impractical to include an education session during that proceeding.

Defendants suggest that the Court should order the parties to meet and confer and submit a proposed format for a potential Industry Day to take place prior to the class certification hearing in early January, subject to the Court's availability.  Defendants propose that the Industry Day consist of attorney presentations of approximately 2.5 hours per side, on a list of topics proposed by the parties and approved by the Court.  While Defendants respectfully suggest that the Court hold the industry day off-the-record as in the examples cited above so that it remains informal and can "educate the court on these issues in a non-adversarial manner," Ex. A, the court can also hold such a session on the record if that is its preference.  Defendants are willing to meet and confer with Plaintiffs to determine a final list of topics, and would propose topics such as (1) *industry participants*, who the participants are at different stages of the hog and pork markets, (2) the *hog life cycle*, the dynamics of hog production, and (3) *processing industry background*, the components of processing operations.

4

Exhibit A attachment to Defendants' Exhibit B

CASE 0:18-cv-01776-JRT-JFD    Doc. 1681-2    Filed 12/16/22    Page 7 of 16
Case 2:13-cv-20000-RDP    Document 906    Filed 12/09/16    Page 1 of 2
FILED
2016 Dec-09 PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO.: 2406) | Master File No.: 2:13-CV-20000-RDP<br>This document relates to all cases. |

## ORDER REGARDING ECONOMICS DAY

On December 20, 2016, the court will hold "Economics Day" to allow the parties to provide the court with an overview of the economic issues associated with the case in an *objective* format and *without* advocacy. Recognizing that the purpose of Economics Day is to educate the court on these issues in a non-adversarial manner, the parties have agreed to the following ground rules which will govern Economics Day:

1. Economics Day presentations will be "off the record" without a court reporter and *shall not be publicly disclosed, used, or admissible for any purpose* in the litigation. Attendance will be limited. No counsel or any other person shall utilize any form of recording during the proceedings. If, for any reason, a presenter becomes a witness in the litigation, the presentation may not be used to cross examine or impeach the presenter since the purpose of presentations are intended solely to educate the court about the economic issues in the litigation. All persons attending Economics Day agree, as a condition of their attendance, to all of the ground rules set forth herein.

2. The Blues shall provide the court with their pre-Economics Day submission on or before December 12, 2016. Plaintiffs shall provide the court with their pre-Economics Day submissions on or before December 14, 2016.

3. The presenters at Economics Day presenters will not be placed under oath. Nor will presenters be subject to cross examination. The court will have the opportunity to ask questions of the presenters as the court deems appropriate. The court may (or may not) consider requests from counsel or the parties to pose certain questions to a party, participant, counsel or expert.

4. The court anticipates that the format will be lecture-style presentations that incorporate the use of demonstrative visual aids. Parties will be allowed to lead the experts through a modified direct format to focus the lecture presentation.

5. The anticipated schedule for Economics Day is as follows:

   a. Economics Day will commence at 9:00 am;

   b. The Blues will be allowed from 9:00 am to 12:00 noon for their presentation;

   c. Provider Plaintiffs and Subscriber Plaintiffs will each be allotted two hours for their respective presentations during the period from 1:00 pm to 5:30 p.m.

**DONE** and **ORDERED** this December 9, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

Exhibit B attachment to Defendants' Exhibit B

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/05/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
IN RE: :
 :
 : 14-MD-2548 (VEC)
COMMODITY EXCHANGE, INC., GOLD : 14-MC-2548 (VEC)
FUTURES AND OPTIONS TRADING :
LITIGATION :
 :
 :
*This Document Relates to All Actions* :
------------------------------------------------------------ X
IN RE: :
 :
 : 14-MD-2573 (VEC)
LONDON SILVER FIXING, LTD., : 14-MC-2573 (VEC)
ANTITRUST LITIGATION :
 :
 :
*This Document Relates to All Actions* :
------------------------------------------------------------ X

## JOINT ORDER NO. 2

VALERIE CAPRONI, United States District Judge:

WHEREAS the above-captioned actions, *In re: Commodity Exchange, Inc., Gold Futures and Options Trading Litigation*, 14-MD-2548 (the "Gold MDL"), and *In re: London Silver Fixing, Ltd., Antitrust Litigation*, 14-MD-2573 (the "Silver MDL") have been assigned to the Undersigned;

WHEREAS pursuant to the Court's request for a non-adversarial tutorial regarding the gold and silver markets, the parties submitted a joint letter on July 24, 2015, attaching a list of agreed-upon topics (the "Jointly-Proposed Topics") along with additional topics that Defendants propose over Plaintiffs' objections (the "Disputed Topics"); and

WHEREAS on July 24, 2015, Plaintiffs and Defendants submitted separate letters articulating their respective positions as to whether Defendants should be permitted to present information to the Court on the Disputed Topics during the course of the tutorial;

IT IS HEREBY ORDERED that:

1. After reviewing the parties' submissions, the Court agrees that all of the Jointly-Proposed Topics should be presented, along with some, but not all, of the Disputed Topics. In particular, the Court finds that the following Disputed Topics should be presented in the order in which they appear in the parties' list of proposed topics: Relationship Between Spot and Futures Markets; Data Available to Market Participants; Volume & Nominal Value Traded on Each Venue; Trading Volume in Futures at COMEX Market Open/Close, AM Fixing, PM Fixing; Hedgers vs. Speculators on COMEX; Use of One Kind of Gold/Silver Instrument to Hedge Risks from Another Kind of Gold/Silver Instrument; and Information Available During the Fixing Process (to the extent necessary to understand the feedback loop that occurs during the fix).

2. The following Disputed Topics should be presented at the conclusion of all the other topics, only to the extent that time permits: Open Interest in COMEX Futures; Available Metrics About Spot Trading Volume.

3. The following Disputed Topics should not be presented: Organizational Structure of Hedging at Banks; Regulatory Requirements Applicable to Market Makers.

4. The Court further understands that, for practical reasons, the litigating attorneys rather than expert witnesses will be presenting the various topics for the tutorial. To the extent the parties wish to use electronic devices in their presentation or need easels or whiteboards, they should contact Chambers and the Court's Audio & Visual Department at least two weeks in advance to make arrangements.

5. The tutorial will be held in Conference Room 6 on the lower level of the Thurgood Marshall U.S. Courthouse at 40 Foley Square, New York, New York 10007. The Conference Room can accommodate approximately 35 party attendees so counsel for all

3

parties should coordinate to ensure that there is sufficient space for the presenters and other attendees.  In addition to party attendees, the Court will also be reserving several seats for Court staff and members of the press who have expressed interest in the tutorial.

**SO ORDERED.**

**Date:   August 5, 2015**
**          New York, NY**

**VALERIE CAPRONI**
**United States District Judge**

3

# EXHIBIT B -
## All Plaintiffs' Argument Regarding Defendants' Proposed Industry Day

Defendants ask the Court to hold a day-long, off-the-record, so-called Industry Day for the parties to make presentations to the Court regarding how the pork industry works. Plaintiffs respectfully submit that the Court should deny Defendants' request for the following reasons.

First, the proposal is a transparent end-run around the Court's prior rejection of Defendants' request for an evidentiary hearing in connection with class certification. *See* Joint Letter Br., ECF No. 1511 (parties disputed need for evidentiary hearing); Oct. 17, 2022 Hearing Tr. ("I guess at this point I'm not inclined to do an evidentiary hearing. I don't really think that's necessary, but certainly will set aside enough time, and the parties should talk about how much time they think they need for the arguments, and we'll accommodate that."). The arguments Class Plaintiffs presented in their opposition to the evidentiary hearing request apply with equal force to Defendants' Industry Day proposal and are not repeated here. *See* ECF No. 1511. Given that Defendants have stipulated to a four-hour class certification hearing, a separate off-the-record Industry Day is superfluous.

Second, Defendants' proposal is contrary to the principles that motions should be decided *on the record* and court proceedings should be tethered to pending motions that provide context and avoid the court rendering advisory opinions. This is true for all motions and is especially critical for dispositive motions such as class certification and summary judgment. *See, e.g.*, Fed. R. App. P. 10 (defining parameters of record on appeal); Fed. R. Civ. P. 43(c) (motions must be decided on record facts, affidavits, oral testimony or depositions). Defendants seek to educate the Court about the pork industry – through off-

the-record presentations by counsel – in order to inform the Court's decisions with respect to class certification (and, eventually, summary judgment in all Plaintiffs' cases).[1] However, if relevant to these proceedings and based on evidence, such information would be included in the parties' filings in connection with these very motions. And if it informs the Court's decisions on these motions, it should be part of the record for any eventual appellate review.

Moreover, in addition to numerous direct actions, this MDL includes three class actions with hundreds of thousands of class members. The absent members of the proposed classes have a due process interest in access to the evidence and proceedings in the case. An off-the-record Industry Day would deprive them of access to any information about the proceeding, even though it might impact their substantive claims, as Defendants expressly request that it *not* be stenographically recorded. *See, e.g.*, *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("For example, in class actions – where by definition some members of the public are also parties to the case – the standards for denying public access to the record should be applied with particular strictness." (cleaned up)); *In re Cendant Corp.*, 260 F.3d 183, 193 (3d Cir. 2001) (addressing importance of "openness of class actions").

---

[1] Defendants' citations to supposedly "non-adversarial" tutorials in other circumstances are misleading. The idea that such a presentation will involve anything other than advocacy for conflicting positions is belied by Defendants' admission that they seek to use Industry Day to influence the Court's decisions on key motions such as class certification and summary judgment. Stripped bare of the fiction that this process would be non-adversarial, the parties and Court are left with attorney argument and nothing more – which is precisely what motion practice is for.

2

Third, the pork industry is not complex or highly technical, unlike industries at issue in other cases in which courts have convened "science days," as set forth below. Moreover, the pork industry has been thoroughly explained in the parties' complaints, in briefing on motions to dismiss and class certification, and in related expert reports, and will be further discussed in the upcoming four-hour hearing on class certification.[2] There is no reason for the parties or the Court to devote even more time, "off the record," to expound on their arguments as it relates to pending and forthcoming motions.

The genesis of the type of "tutorial" Defendants request comes from the few courts that have held "science day" proceedings in cases involving complex and highly technical scientific issues. Those courts typically have done so early in the case to help determine how best to administer complex proceedings, as even the authority Defendants cite makes clear. *See* Manual for Complex Litig. § 23.32 & n.1656 (4th ed. 2004) (addressing "approach to handling the issue of expert evidence *at the initial pretrial conference*" (emphasis added)). Those science days have typically been on the record and have arisen from the court's desire to gain an understanding of the science and technology at issue in the case in order to engage with experts and administer complex litigation.[3]

---

[2] Defendants' suggestion that additional time is needed to present industry characteristics that are relevant to the upcoming class certification hearing (and eventually summary judgment) rings hollow. The Court previously noted its willingness to "set aside a day" for the hearing. Oct. 17, 2022 Hearing Tr. 32:3. The parties conferred, and Defendants stated that "four hours total presentation among all the parties should be sufficient." Nov. 18, 2022 Hearing Tr. 21:19-20.

[3] *See, e.g.*, *Armstrong v. Costco Wholesale Corp. & Nice-Pak Prod., Inc.*, 234 F. Supp. 3d 367, 368-69 (E.D.N.Y. 2017) (five related consumer fraud class actions involving flushable wipes); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 41 (E.D.N.Y. 2015) (citing hearing transcript); *Andrews v. Blick Art Materials, LLC*, 324 F.R.D. 317, 318 (E.D.N.Y.

There is nothing particularly complex or technical about the pork industry that would justify expending court and party resources on an Industry Day. Furthermore, Plaintiffs are not aware of any courts holding an Industry Day over the objection of a party. Indeed, the few antitrust cases Defendants cite have involved the *court's request* for a tutorial to better understand some aspect of the industry or the *parties' agreement* that it would be beneficial.

Finally, the timing of Defendants' request for a five-hour hearing in early January is impracticable. While Defendants may have been preparing for an Industry Day for some time, that leaves little time for Plaintiffs to prepare, much of it over the holidays. The class certification hearing is scheduled for January 31, and in the meantime, the Class Plaintiffs, Court, and non-settling Defendants will be busy preparing for a lengthy class certification hearing at the end of January.

If the Court nevertheless is inclined to consider holding an Industry Day, Plaintiffs respectfully request that the Court order Defendants to file a motion under Local Rule 7.1 and allow formal briefing.

---

2017) (science day would "assist the court in learning about technology and other factors relevant to the case … [including] technical issues which may be raised with respect to blind people using the Internet to 'see' for purchases and related matters"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, Case No. 3:19md2885, 2021 WL 918214 (N.D. Fla. Mar. 10, 2021) (holding a science day "where both parties and their experts presented evidence of whether a relevant scientific association exists between certain medications and illicit substances—identified by Defendants—and hearing loss and/or tinnitus."); *In re Mirena IUS Levonogestrel-Related Prods. Liab. Litig. (No. II)*, 387 F. Supp. 3d 323, 346 (S.D.N.Y. 2019) (holding a science day in which "scientists other than the parties' general causation experts could give the Court a tutorial on background scientific concepts … [including] the nature and history of the IIH disease, the chemistry of LNG and its use in various contraceptives, and the history and operation of the Mirena IUD.").