# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK PROCESSING ANTITRUST LITIGATION<br><br>This Document Relates To All Class Actions | Case No. 18-cv-1776 (JRT/JFD)<br><br>The Honorable Chief Judge John R. Tunheim |

**SUR-REPLY IN SUPPORT OF DEFENDANTS' OPPOSITION TO ALL CLASS PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION**

In an about-face from four years of litigated claims, Plaintiffs have fundamentally altered their alleged conspiracy, trying to save their class motions.  Until last month, Plaintiffs alleged Defendants conspired to cut pork supply by: (1) reducing their hog supply, and (2) increasing their exports of pork.  *See* App. A.  But now, in response to Defendants' oppositions to their class motions, Plaintiffs have done a U-turn. For the first time, they claim "[i]t is entirely consistent with the conspiracy for hog production to ***increase, decrease, or remain flat***," CIIPP *Daubert* Br., Dkt. 1637 at 29-30, and "the alleged conspiracy does not require … ***even that [Defendants] increase exports at all***," Mangum Reply Rpt., Dkt. 1617, ¶ 81 (all emphases added unless noted).

| Last Four Years | Now |
|---|---|
| Defendants conspired to reduce pork supply by "***cut[ting] sow numbers***" in a "coordinated, historic and unprecedented" manner. *E.g.*, Compl., Dkt. 808 ¶¶ 124-25; *see also id.* ¶¶ 75, 128-55, 167. | "**This case, in brief, is about pork chops, *not hogs*.**" Dkt. 1637 at 30; *see also* Singer Reply Rpt., Dkt. 1626, ¶¶ 27, 32-33, 171; Mangum Reply Rpt. ¶¶ 17, 32; Williams Reply Rpt. ¶¶ 53, 58, 194, 196, 200, 203. |

More striking, Plaintiffs admit the entire premise of their case is wrong.  Their expert now concedes that Defendants ***<u>do</u>*** "***want more hogs—not less***," Williams Reply Rpt., Dkt. 1635, ¶ 58, as most Defendants are net purchasers of hogs.  Thus, the alleged conspiracy that Plaintiffs moved to certify—the only one permitted past the pleading stage and subject to years of discovery—is no longer before the Court.

In its place, Plaintiffs play a shell game.  Depending on the page of their briefs or expert reports, Plaintiffs both reiterate—and repudiate—the most fundamental aspects of the alleged conspiracy: ***what*** Defendants conspired to reduce (or do at all), ***how*** Defendants

1

carried out the conspiracy, and ***to what effect***. The Eighth Circuit does not permit courts to certify class actions based on allegations that Defendants conspired to fix pork prices somehow, in some undefined way. The analysis must be centered on the allegations in Plaintiffs' complaints. Plaintiffs' class certification motions must be denied.

**I.      PLAINTIFFS SEEK TO CERTIFY A GAME OF WHAC-A-MOLE.**

Three years ago, the Court dismissed Plaintiffs' allegations for failing to allege Defendant-"specific" supply cuts in furtherance of the alleged conspiracy. *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *7-9 (D. Minn. Aug. 8, 2019). In response, Plaintiffs added allegations that Defendants reduced pork supply by cutting the ***hogs*** they "directly control[led]," publicly called for ***hog reduction***, and monitored each other's ***hog herd levels*** via Agri Stats. Apps. A, B. On the basis of those allegations, the Court permitted Plaintiffs' claims to proceed. 495 F. Supp. 3d 753, 769-70 (D. Minn. 2020) (relying on charts of ***hog*** production and exports, and allegations such as "Tyson cut its sows by over 25% between 2008 and 2009"). Ever since, years of discovery focused on those claims.

Class certification necessarily requires Plaintiffs to ***<u>define</u>*** what Defendants did wrong so the Court can determine whether that asserted conduct caused class-wide injury. Here, Plaintiffs initially purported to test the price impact of (1) reduced sows and (2) increased exports. Dkt. 1343 at 5-6; Dkt. 1428 at 5-10; Dkt. 1320 at 4-11. But they built their models on a fundamental misunderstanding of the pork industry. Plaintiffs' models controlled only for the cost of ***raising*** hogs—on the mistaken assumption that the industry is "completely vertically integrated" and Defendants ***<u>own</u>*** the majority of hogs they slaughter. But as Defendants proved—including with a report from an agricultural

economist who specializes in this industry—Defendants do **_not_** control hog production. Nor did they have any incentive to cut hog production; rather, as net buyers of hogs they, too, want lower prices. Mintert Rpt. ¶¶ 57, 79-96. In fact, it is unrefuted that Defendants make higher profits with higher hog supply. *Id.* ¶¶ 88-92 & Ex. 7. For that reason, controlling for the *price* of hogs that Defendants *buy* virtually *erases* the supposed overcharges. Haider Rep. ¶¶ 115-25; Dkt. 1441 at 58-59.

Unable to counter the evidence, Plaintiffs now concede it. Hog reduction, they admit, is not part of the conspiracy: it could have "increased" or "decreased." Dkt. 1637 at 29-30. And to the extent hog supply decreased, Plaintiffs now speculate that was an *effect*, not the cause, of their amorphous claim. *E.g., id.* at 28; Williams Reply Rpt. ¶¶ 53-55.

The contradictions do not end there. Plaintiffs originally alleged exports increased; now, on reply, they claim Defendants might not have "increase[d] exports at all" and, even if they had, doing so may have *increased* (not decreased) domestic pork supply. Mangum Reply Rpt. ¶ 81; Williams Reply Rpt. ¶¶ 227-29; Dkt. 1637 at 30-31. Put simply, Plaintiffs have abandoned the supply reduction theories that survived motions to dismiss and replaced them with contradictions and confusion. *See* App. C.

## II.    PLAINTIFFS' ALLEGED CONSPIRACY CANNOT BE CERTIFIED.

Plaintiffs' bait and switch both exposes fatal problems with their class motions and causes new ones. As *Comcast* makes clear, Plaintiffs have the burden of proving that their alleged theories of harm (hog reductions and increased exports) led to an increased price across the class. *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) (an impact model must translate "the *legal theory of the harmful event* into an analysis of the economic

3

impact *of that event*.").[1] But Plaintiffs concede their models do not isolate the effects of sow liquidations, exports, or both. Rather than doing so in reply, Plaintiffs disclaim the relevance of the allegations this Court relied on in denying the motions to dismiss, App. B, and raise their conspiracy theory to a level of abstraction that would not survive *Twombly*. At class certification, the complaint governs: "Plaintiff[s] cannot use a motion for class certification . . . to introduce an unpled claim and corresponding theories of liability." *Johansson v. NelNet, Inc.*, 2022 WL 6232089, at *4 (D. Neb. July 21, 2022).[2]

Plaintiffs have thus walked directly into the core problem in *Comcast*. Like here, the expert in *Comcast* "calculated damages resulting from 'the alleged anticompetitive conduct as a whole' and did not attribute damages to any one particular theory of anticompetitive impact." 569 U.S. at 36-37. The Supreme Court rejected that methodology because three of "the alleged distortions" had been dismissed and the plaintiffs had not isolated the damages from the remaining theory. *Id.* That's what Plaintiffs have done here: they initially asserted two economically distinct liability theories for how Defendants reduced supply (sow cuts and exports). Their experts assumed that

---

[1] Daniel L. Rubinfeld, *Reference Guide on Multiple Regression* at 310, in FED. JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 303 (3d ed. 2011) (explaining that, because causality "cannot be inferred by data analysis alone," one must infer causality "on the basis of an *underlying causal theory*" (emphasis added)).

[2] *Accord, e.g., In re Canon Cameras*, 237 F.R.D. 357, 358 n.1 (S.D.N.Y. 2006) (denying class certification and holding plaintiffs to "only those factual allegations pled in the" complaint); *Guadiana v. State Farm Fire & Cas. Co.*, 2009 WL 6325542, at *8 (D. Ariz. Dec. 18, 2009) (similar); *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011) (similar); *see WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins.*, 897 F.3d 987, 993 (8th Cir. 2018) (only well-pled theories make it to later stages of litigation).

Defendants conspiratorially did both, but now Plaintiffs admit one is out (cutting sows) and the other (exports) is uncertain at best. And yet Plaintiffs do not isolate the effects of whatever liability theory remains from hog reduction. This is *Comcast* on its face.

The problem *Comcast* addresses—and that is baked into Plaintiffs' models—is no technicality. Plaintiffs must identify a ***theory of harm*** and prove they can show a class of buyers was injured ***from it*** in order to "separate lawful from unlawful conduct." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000). Plaintiffs' models are incapable of that task. Defendants primarily purchase hogs (and want more hogs)—yet Plaintiffs do not account for the purchase price of hogs in their models. Defendants pointed out that exports rose and fell based on a variety of external events, and Plaintiffs' response is to claim exports are not necessary to the case at all. In short, Plaintiffs' replies make clear that four years into the case, Plaintiffs are refusing to commit to any theory at all. But if sow cuts and increased exports were not part of the conspiracy, then how did Defendants restrict pork supply, and how (and when) did it lead to higher pork prices?

Plaintiffs offer ***no*** answers to these fundamental questions, cite ***no*** theory that survived a motion to dismiss, and commit to ***no*** mechanism whatsoever. Dkt. 1441 at 53. They hope they can duck the question of what theory of harm is being certified by abstracting to a level of generality and vagueness. The problem is that *Comcast*, *Twombly*, *Concord*, and dozens of other cases require more. *E.g.*, *supra* n.2. Without a cognizable, testable, or definable theory of harm, there is no class. It is that simple. Plaintiffs were able to survive motions to dismiss based on conspiracy theories about hog cuts and export increases; they cannot now survive class certification by abandoning them at this late stage.

Dated:  December 22, 2022                    Respectfully submitted,

/s/ *Mark L. Johnson*
Mark L. Johnson (#0345520)
Davida S. McGhee (#0400175)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
dwilliams@greeneespel.com

Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
Jenna Stupar (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
jenna.stupar@kirkland.com

Mark L. Johnson (#0345520)
Davida S. McGhee (#0400175)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
dwilliams@greeneespel.com

***Counsel for Clemens Food Group, LLC and The Clemens Family Corporation***

/s/ Craig S. Coleman
Craig S. Coleman (#0325491)
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
FAEGRE DRINKER BIDDLE &
REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com

Jacob D. Bylund (*pro hac vice*)
Stephanie A. Koltookian (*pro hac vice*)
Robert C. Gallup (#0399100)
FAEGRE DRINKER BIDDLE &
REATH LLP
801 Grand Ave., 33rd Floor
Des Moines, IA 50309
(515) 248-9000
jacob.bylund@faegredrinker.com
stephanie.koltookian@faegredrinker.com
robert.gallup@faegredrinker.com

Jonathan H. Todt (*pro hac vice*)
FAEGRE DRINKER BIDDLE &
REATH LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 842-8800
jonathan.todt@faegredrinker.com

John S. Yi (*pro hac vice*)
FAEGRE DRINKER BIDDLE &
REATH LLP
One Logan Square, Suite 2200
Philadelphia, PA 19103

/s/ Jarod Taylor
Jarod Taylor (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8109
jtaylor@axinn.com

Rachel J. Adcox (*pro hac vice*)
Tiffany Rider Rohrbaugh (*pro hac vice*)
Kenina J. Lee (*pro hac vice*)
Lindsey Strang Aberg (*pro hac vice*)
Brandon Boxbaum (*pro hac vice*)
Allison Vissichelli (*pro hac vice*)
Keith Holleran (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
radcox@axinn.com
trider@axinn.com
klee@axinn.com
lstrang@axinn.com
bboxbaum@axinn.com
avissichelli@axinn.com
kholleran@axinn.com

Craig M. Reiser (*pro hac vice*)
Kail Jethmalani (*pro hac vice*)
Andrea N. Rivers (*pro hac vice*)
Victoria J. Lu (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200
creiser@axinn.com
kjethmalani@axinn.com
arivers@axinn.com
vlu@axinn.com

David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center

7

| | |
|---|---|
| (215) 988-2700<br>john.yi@faegredrinker.com<br><br>**Counsel for Hormel Foods Corporation** | 90 South Seventh Street<br>Minneapolis, MN 55402<br>(612) 486-1521<br>dgraham@dykema.com<br><br>**Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.** |
| /s/ *Peter H. Walsh*<br>Peter H. Walsh (#0388672)<br>HOGAN LOVELLS US LLP<br>80 South Eighth Street, Suite 1225<br>Minneapolis, MN 55402<br>(612) 402-3000<br>peter.walsh@hoganlovells.com<br>William L. Monts (*pro hac vice*)<br>Justin W. Bernick (*pro hac vice*)<br>HOGAN LOVELLS US LLP<br>Columbia Square<br>555 Thirteenth Street, NW<br>Washington, D.C. 20004<br>(202) 637-5600<br>william.monts@hoganlovells.com<br>justin.bernick@hoganlovells.com<br><br>**Counsel for Agri Stats, Inc.** | /s/ *William L. Greene*<br>William L. Greene (#0198730)<br>Peter J. Schwingler (#0388909)<br>William D. Thomson (#0396743)<br>STINSON LLP<br>50 South Sixth Street, Suite 2600<br>Minneapolis, MN 55402<br>(612) 335-1500<br>william.greene@stinson.com<br>peter.schwingler@stinson.com<br>william.thomson@stinson.com<br><br>J. Nicci Warr (*pro hac vice*)<br>STINSON LLP<br>7700 Forsyth Blvd., Suite 1100<br>St. Louis, MO 63105<br>(314) 863-0800<br>nicci.warr@stinson.com<br><br>**Counsel for Seaboard Foods LLC and Seaboard Corporation** |

8

*/s/ Christopher A. Smith*
Aaron Chapin (#0386606)
Christopher A. Smith (*pro hac vice*)
Tessa K. Jacob (*pro hac vice*)
A. James Spung (*pro hac vice*)
Jason Husgen (*pro hac vice*)
Sarah L. Zimmerman (MDL registered)
Kate Ledden (MDL registered)
Tanner Cook (MDL registered)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Ste 600
St. Louis, MO 63105
(314) 480-1500
aaron.chapin@huschblackwell.com
chris.smith@huschblackwell.com
tessa.jacob@huschblackwell.com
james.spung@huschblackwell.com
jason.husgen@huschblackwell.com
sarah.zimmerman@huschblackwell.com
kate.ledden@huschblackwell.com
tanner.cook@huschblackwell.com

***Counsel for Triumph Foods, LLC***