```
 1                     UNITED STATES DISTRICT COURT
                          DISTRICT OF MINNESOTA
 2
       ------------------------------------------------------------
 3                                      )
       In Re:  Pork Antitrust           )   File No. 18CV1776
 4     Litigation                       )       & 21MD2998
                                        )         (JRT/JFD)
 5                                      )
                                        )
 6                                      )   Minneapolis, Minnesota
                                        )   December 20, 2022
 7                                      )   11:02 A.M.
                                        )
 8                                      )
       ------------------------------------------------------------
 9
             BEFORE THE HONORABLE CHIEF JUDGE JOHN R. TUNHEIM
10
                 UNITED STATES DISTRICT COURT JUDGE
11
                                 AND
12
            MAGISTRATE JUDGE JOHN F. DOCHERTY
13
               UNITED STATES MAGISTRATE JUDGE
14

15        (STATUS CONFERENCE VIA VIDEO CONFERENCE)

16

17

18

19

20

21

22

23

24

25
```

```
 1        APPEARANCES
           For Direct Purchaser      Lockridge Grindal Nauen PLLP
 2         Plaintiffs:               BRIAN D. CLARK, ESQ.
                                     JOSEPH BRUCKNER, ESQ.
 3                                   STEPHEN M. OWEN, ESQ.
                                     100 Washington Avenue South
 4                                   Suite 2200
                                     Minneapolis, MN 55401
 5
                                     Pearson Simon & Warshaw
 6                                   MICHAEL H. PEARSON, ESQ.
                                     800 LaSalle Avenue
 7                                   Suite 2150
                                     Minneapolis, MN 55402
 8
                                     Lockridge Grindal Nauen PLLP
 9                                   JOSEPH C. BOURNE, ESQ.
                                     100 Washington Avenue South
10                                   Suite 2200
                                     Minneapolis, MN 55401
11
           On behalf of the         Hagens Berman Sobol Shapiro
12         Consumer Indirect        SHANA E. SCARLETT, ESQ.
           Plaintiffs:              715 Hearst Avenue
13                                  Suite 202
                                    Berkeley, CA 94710
14
                                    Gustafson Gluek PLLC.
15                                  JOSHUA J. RISSMAN, ESQ.
                                    120 South Sixth Street
16                                  Suite 2600
                                    Minneapolis, MN 55402
17
           For the Commercial       Cuneo Gilbert & LaDuca, LLP
18         Indirect Purchaser       ALEC BLAINE FINLEY, ESQ.
           Plaintiffs:              4725 Wisconsin Avenue NW
19                                  Suite 200
                                    Washington, DC 20016
20
           For the Commonwealth of  Hausfeld
21         Puerto Rico:             KYLE G. BATES, ESQ
                                    YELENA DEWALD, ESQ.
22                                  600 Montgomery Street
                                    Suite 3200
23                                  San Francisco, CA 94111
24         For Winn-Dixie Stores,   Ahern and Associates, P.C.
           Inc., DAPs:              PATRICK AHERN, ESQ.
25                                  590 North Sheridan Road
                                    Lake Forest, IL 60045
```

```
 1        For Dollar General       Sperling & Slater
          DAPS:                    JEFFREY H. BERGMAN, ESQ.
 2                                 55 West Monroe Street
                                   Chicago, IL 69693
 3
          For Cheney Brothers      Carlton Fields
 4        DAPs:                    GARTH T. YEARICK, ESQ.
                                   AMANDA JESTEADT, ESQ.
 5                                 KRISTIN A. GORE, ESQ.
                                   525 Okeechobee Boulevard
 6                                 West Palm Beach, FL 33401

 7        For Kroger DAPs:         Kenny Nachwalter
                                   WILLIAM J. BLECHMAN, ESQ.
 8                                 SAMUEL J. RANDALL, ESQ.
                                   MICHAEL PONZOLI, ESQ.
 9                                 1441 Breckell Avenue
                                   Suite 1100
10                                 Miami, FL 33131

11        For Kroger DAPs:         Kaplan Fox & Kilsheimer LLP
                                   ROBERT N. KAPLAN, ESQ.
12                                 850 Third Avenue
                                   New York, NY 10022
13
          For Compass Group USA,   Nexsen Pruet LLC
14        Inc. (22CV1610):         DAVID C. EDDY, ESQ.
                                   1230 Main Street
15                                 Suite 700
                                   Columbia, SC 29202
16
          For Sysco DAPs:          Boies Schiller Flexner
17                                 SARAH L. JONES, ESQ.
                                   SCOTT E. GANT, ESQ.
18                                 1401 New York Avenue NW
                                   Washington, DC 20005
19
          For Kraft DAPs:          Cadwalader, Wickersham & Taft
20                                 JACK G. STERN, ESQ.
                                   200 Liberty Street
21                                 New York, NY 10281

22        For Deft. Agri Stats,    Hogan Lovells
          Inc.:                    LIAM E. PHIBBS, ESQ.
23                                 555 13th Street NW
                                   Washington, DC 20004
24

25
```

```
 1     For Defendant JBS USA:    Spencer Fane LLP
                                 JESSICA J. NELSON, ESQ.
 2                               100 South Fifth Street
                                 Suite 1900
 3                               Minneapolis, MN 55402

 4                               Quinn Emanuel Urquhart &
                                 Sullivan
 5                               SAMI H. RASHID, ESQ.
                                 51 Madison Avenue
 6                               22nd Floor
                                 New York, NY 10010
 7
       For Defendant            Gibson Dunn & Crutcher
 8     Smithfield Foods:        BRIAN EDWARD ROBISON, ESQ.
                                 2100 McKinney Avenue, Ste 1100
 9                               Dallas, Texas 75201

10     For Defendant Clemmens   Kirkland & Ellis, LLP
       Food Group:              DANIEL E. LAYTIN, ESQ.
11                               JENNA STUPAR, ESQ.
                                 MAX SAMELS, ESQ.
12                               NICHOLAS RUGE, ESQ.
                                 300 North LaSalle
13                               Chicago, IL 60654

14     For Defendant Hormel     Faegre Drinker Biddle & Reath
       Foods Corporation:       CRAIG S. COLEMAN, ESQ.
15                               90 South Seventh Street
                                 Suite 2200
16                               Minneapolis, MN 55402

17     For Defendant Seaboard   Stinson LLP
       Foods, LLC:              PETER J. SCHWINGLER, ESQ.
18                               50 South Sixth Street
                                 Suite 2600
19                               Minneapolis, MN 55402

20     For Defendant Triumph    Husch Blackwell
       Foods, LLC:              CHRISTOPHER A. SMITH, ESQ.
21                               ABRAHAM J. SPUNG, ESQ.
                                 190 Carondelet Plaza
22                               Suite 600
                                 St. Louis, MO 63105
23
       For Defendant Tyson      Axinn Veltrop & Harkrider LLP
24     Foods:                   TIFFANY RIDER ROHRBAUGH, ESQ.
                                 JAROD TAYLOR, ESQ.
25                               950 F Street NW, 7th Floor
                                 Washington, DC 20004
```

```
 1                        11:02 A.M.

 2

 3             (In open court via video conference.)

 4             THE COURT:  All right.  Good morning, everyone.

 5    This is Multi District Litigation 21-2998, In Re:  Pork

 6    Antitrust Litigation.  We have a status conference today.

 7    Good morning, everyone.

 8             Heather is going to go through and read the list

 9    of names so that you are noted for the record.  I do that

10    that way.  It's just a little easier than having everyone

11    go through and state their names.  If we miss anybody, we

12    will have you state your name after Heather is finished.

13             Go ahead.

14             COURTROOM DEPUTY:  Okay.  Starting with

15    plaintiffs.  Brian Clark.

16             MR. CLARK:  Good morning.

17             COURTROOM DEPUTY:  Joseph Bourne.

18             MR. BOURNE:  Good morning.

19             COURTROOM DEPUTY:  No good mornings.  I will get

20    through this faster.

21             Michael Pearson.  Amanda Jesteadt.  Michael

22    Ponzoli.  Stephen Owen.  Joshua Rissman.  Shana Scarlett.

23    Blaine Finley.  Kyle Bates.  Yelena Dewald.  Patrick Ahern.

24    Jeffrey Bergman.  Garth Yearick.  Kristin Gore.  William

25    Blechman.  Samuel Randall.
```

1          Robert Kaplan.  David Eddy.  Sarah Jones.  Scott

2     Gant.  Jack Stern.  Liam Phibbs.  Daniel Laytin.  Jenna

3     Stupar.  Max Samels.  Nicholas Ruge.  Craig Coleman.

4     Jessica Nelson.  Sami Rashid.  Peter Schwingler.  Brian

5     Robison.  Christopher Smith.  Jarod Taylor.  Tiffany

6     Rohrbaugh.

7          THE COURT:  All right.  Did we miss anyone who

8     wishes to be noted today?

9          All right.  Very well.  Let's start.  We have a

10    list of agenda items here.  We will run through them, and

11    then anything else anyone wishes to raise, that is fine

12    with the Court as well.

13         We have Judge Docherty here with us, and I will

14    let him handle the first issue if there are issues

15    remaining to discuss about depositions.

16         MAGISTRATE JUDGE DOCHERTY:  Sure.  Good morning,

17    everybody.

18         The first item on the joint agenda is two

19    depositions, one of a company called Sioux-Preme, and the

20    other of a former U. S. Department of Agriculture employee

21    Courtney Knupp.  I hope I'm pronouncing that correctly.

22         Basically the depositions are, the defendants say

23    that these depositions are relevant, but they were noticed

24    or subpoenaed within the fact discovery period.  It is not

25    on them that the depositions have not yet taken place.

1         My initial question to either the plaintiffs or

2    the defendants is, are you looking for a ruling today?  Are

3    you letting us know that a motion to compel may be

4    forthcoming?  What exactly is the ask this morning?

5         MR. BOURNE:  Good morning, Your Honor.  Joe

6    Bourne for the Direct Purchaser Plaintiffs and speaking for

7    the plaintiffs.  The plaintiffs would respectfully request

8    a ruling that either the depositions are untimely and may

9    not proceed or that the defendants need to file a motion to

10   modify the scheduling order and seek to show good cause.

11        We believe it's appropriate to rule on the basis

12   of the orders already in the case and the papers and

13   discussion here today that the depositions are untimely.

14        MAGISTRATE JUDGE DOCHERTY:  All right.  And

15   what's the view of the defendants on this?

16        MS. STUPAR:  Hi, Your Honor.  Jenna Stupar

17   appearing here.

18        I think that we are open.  As we've stated in our

19   papers, we think that these depositions can and should be

20   permitted to proceed.  If Your Honor wants to create a

21   record of that via some sort of an order, that is okay by

22   us.

23        In our view, we don't need to modify the

24   scheduling order, although we would be happy to do that if

25   that's Your Honor's preference.  Because these depositions

1   were timely noticed already, in our view, we think that

2   that covers, is already covered and they can proceed once

3   all the parties agree on some dates.  That said, we're very

4   open to if Your Honor has a stated preference on how to

5   proceed.

6           MAGISTRATE JUDGE DOCHERTY:  Okay.  Just a couple

7   of questions, Ms. Stupar.  I mean, I'm happy to give a

8   ruling here this morning.  My questions center on the

9   Sioux-Preme deposition.

10          MS. STUPAR:  Okay.

11          MAGISTRATE JUDGE DOCHERTY:  I notice that you

12  indicate that the relevance of that deposition was known

13  November the 18th, but it became more relevant November the

14  18th when you received the plaintiffs' expert report.

15          When was it that the Sioux-Preme deposition was

16  noticed?

17          MS. STUPAR:  So we initially, so we noticed them

18  first for structured data, and that occurred in May.  They

19  produced that in July.  It was about 700,000 rows of data,

20  which takes a while to go through especially if you're me

21  and not great with data, and so then we noticed the

22  deposition subpoena on September 16.  So that's about 45

23  days before the close of fact discovery.

24          MAGISTRATE JUDGE DOCHERTY:  And then I noticed

25  that you indicate that you were working with Sioux-Preme to

1    limit the scope of the deposition.  Could you expand a

2    little bit more on that, specifically on the timeline of

3    those discussions, not so much the content.

4         MS. STUPAR:  Sure.  So we first issued our

5    notice, as we said, in September 16.  Plaintiffs cross

6    noticed that about ten days later, and then Sioux-Preme

7    served I think some responses and objections within a

8    couple of weeks, and we had a handful of phone calls.

9         There were a few in October before the close of

10   fact discovery, and then those obviously ended up

11   continuing on as we were trying to negotiate the scope and

12   the timing with Sioux-Preme.

13        We had initially served twelve topics.

14   Plaintiffs' cross notice was just an exact mirror of the

15   twelve topics, and Sioux-Preme because I guess they had

16   been acquired a couple of years ago, they were trying to

17   figure out what was reasonable for them in terms of

18   personnel that they had available, information that they

19   would have available in order to put a witness up if they

20   were going to do so at all.

21        And so because they had kind of an acquisition

22   concern and wanted to know what they had in terms of

23   personnel, turnover, that kind of thing, they needed to

24   take some time to figure out internally what was doable for

25   them and what they were willing to do based on *Bergan*

1     (phonetic).

2              MAGISTRATE JUDGE DOCHERTY:  As to both of these,

3     what is your best estimate as to when the depositions would

4     actually be taking place if they were to be allowed?

5              MS. STUPAR:  With Sioux-Preme we are already in

6     the end of December, and Sioux-Preme I would assume,

7     especially given that it's a two-hour deposition, my

8     thought is we could probably do that in January.  Ms. Knupp

9     is going to be a little bit more difficult just because my

10    understanding is that the government is still conducting

11    its *Touhy* analysis.

12             That said, in October they had originally

13    contemplated some dates in late November that they offered

14    for Ms. Knupp, and then they said, gosh, this is taking

15    longer than we expected, we are going to need a little more

16    time.

17             So it will I guess depend on them.  However, it's

18    been several weeks, and so I'm hopeful, you know, that both

19    of these could occur in January.  Our goal certainly is to

20    get them done as soon as possible.

21             MAGISTRATE JUDGE DOCHERTY:  Thank you.

22             Mr. Bourne, it sounds like in contrast to the

23    motion we had concerning the JBS 30(b)(6) a little while

24    ago that these depositions are not taking place because of

25    facts beyond the control of the party that is seeking the

1    deposition.

2          Why would I not on those facts find, if I need

3    to, good cause to amend the scheduling order for the

4    limited purpose of allowing these two depositions?

5          MR. BOURNE:  Your Honor, the plaintiffs believe

6    that good cause is not present because the deadline to

7    complete fact discovery was October 31st.  The deadline to

8    move, file nondispositive motions was November 14th.  We

9    negotiated extensively a stipulation that described the

10   parameters of the discovery that would occur after October

11   31st, and this deposition, these two depositions, were not

12   part of that.

13         And the defendant could have -- the defendant

14   group could have acted diligently by either seeking to

15   include the deposition in the stipulation or by filing a

16   motion by November 14th.

17         MAGISTRATE JUDGE DOCHERTY:  All right.  I'm

18   prepared to make a decision on this, and I don't anticipate

19   there being a written order to follow, so the transcript of

20   what I am about to say would be the discovery order for

21   purposes of either further review or any other purpose

22   really.

23         Given that these two depositions have been

24   delayed because of things that are not within the

25   defendants' control, the government's *Touhy* analysis with

1   the case of the Department of Agriculture deposition of --

2   I'm sorry -- Ms. Knupp and also the negotiations with

3   Sioux-Preme, which is a closer question, but all the same,

4   I am not keen on penalizing a party for seeking to work

5   with the third party that has been brought into the

6   litigation by means of a subpoena.

7          And therefore I will find that there is good

8   cause to amend the pretrial scheduling order, find that the

9   defendants have been diligent in seeking to advance these

10  depositions, and as I say, I will allow a very limited

11  modification of the pretrial scheduling order to allow

12  these two depositions, one of Sioux-Preme and one of

13  Ms. Knupp, to take place beyond the close of fact

14  discovery.

15         I do want to be updated, though.  If it looks

16  like these depositions are not going to occur in January, I

17  don't know what I would be able to do about that, but I do

18  want to be informed.

19         And, Ms. Stupar, would you please do that?

20         MS. STUPAR:  Yeah, of course, Your Honor.  I

21  appreciate it.

22         THE COURT:  Ms. Stupar, do you have any questions

23  about what I just did or any questions for clarification?

24         MS. STUPAR:  Not at all, Your Honor.  You were

25  clear.  Thank you.

1          MAGISTRATE JUDGE DOCHERTY:  Mr. Bourne, any

2     requests for clarification?

3          MR. BOURNE:  No.  Thank you, Your Honor.

4          MAGISTRATE JOHN DOCHERTY:  Thank you.

5          THE COURT:  All right.  Thank you.  Let's move

6     on.

7          The defendants are proposing using an industry

8     day proceeding, who wishes to speak on this?

9          MR. LAYTIN:  It's Dan Laytin from Kirkland &

10     Ellis for the Clemens Family Corporation.  May I proceed?

11          THE COURT:  Go ahead.

12          MR. LAYTIN:  Thank you, Your Honor.

13          We have three points that we would like to say

14     with respect to our request for an industry day.  The first

15     is that we are now entering a phase of this litigation

16     where there are critical motions to be decided by Your

17     Honor, class certification, *Daubert* motions and summary

18     judgment, that will require the Court to apply the law to

19     the facts related to the alleged conduct.

20          In cases like this, the class certification

21     motion, *Daubert* motion and summary judgment are just

22     critical to the shaping of this case.

23          The second point is, like many MDLs, the focus of

24     our hearings together have most often been on the shape of

25     the table and not what is on the table.  Here, what is on

1       the table is important.

2               First in two ways:  The first is with respect to

3       the industries at issue.  We sometimes use them

4       interchangeably, but they are not, when we talk about the

5       hog industry and the pork industry.  The hog industry is

6       how hogs are born and raised, and then the pork industry is

7       how those hogs are taken and then processed into pork loin

8       and then ultimately bacon and et cetera.

9               And how these industries work and interact is

10      critical to the plaintiffs' allegations of a conspiracy

11      here which alleges a hog supply conspiracy.  Not all the

12      defendants here are in both industries, and so we believe

13      that the how, when and why pork processors get their hogs,

14      how they own them, whether they contract for them, whether

15      they get them on the spot market is key.

16              The second issue that we think is key is exports.

17      Plaintiffs claim that defendants used increased exports to

18      effectuate a conspiracy.  "Exports" is a word that

19      encapsulates a lot of concepts in the pork industry.  We

20      could be talking about the parts of the pig.

21              For example, Your Honor, many parts of the pig

22      are more often than not destined for the export market,

23      like ears and feet.  We could be talking about the disease

24      events that impact international demand for pork.

25              These are important industry issues that are not

1    obvious, that are not intuitive and that we have not had

2    the opportunity to discuss with Your Honor.

3            The third point is, we are open, we defendants,

4    are open to any procedure to allow us, both parties, to

5    educate the Court on these important topics.  We believe so

6    strongly that an education day would be helpful, that

7    whether -- that on any dimension that we put in the papers

8    we are open to Your Honor's guidance and discussion.

9            For example, we proposed that industry day be off

10   the record.  In the *Blue Cross/Blue Shield* case, that's the

11   way Judge Proctor did it.  He thought that it would

12   facilitate more open discussion and allow him to ask more

13   questions, but we are not wedded to that.

14           Other courts have been on the record, and if

15   that's Your Honor's preference, we're happy to do that.

16   With respect to the length and timing, we believe that an

17   industry day would be best suited before Your Honor heard

18   argument on the motion for class certification.

19           We believe that because we have four hours for

20   argument, which as plaintiffs noted we think is sufficient

21   for the argument, but we think that argument could be more

22   efficient, better focused and result in a more complete

23   understanding of the issues if it was preceded by a period

24   of time for us to educate the Court on these important

25   points.

1          And then with respect to attorney argument or

2     attorney presentation, that is our, that's our proposal,

3     but again, we're open.  We sort of feel like we're Sam in

4     "Green Eggs and Ham" not to go all in on the pork

5     reference, but we are open to any opportunity to discuss

6     these important issues before Your Honor.

7          So I'll end with that, and I'm happy to address

8     any questions that Your Honor has or that are responsive to

9     anything the plaintiffs say.

10          THE COURT:  So, Mr. Laytin, you're proposing

11     basically lawyer discussion, not bringing in experts, to

12     talk about aspects; is that correct?

13          MR. LAYTIN:  That's correct, Your Honor.

14          THE COURT:  Okay.  All right.  Has that been used

15     in any of these other, like the *Chicken Broiler* or any of

16     these other cases or not, do you know?

17          MR. LAYTIN:  We did not do it in the *Chicken*

18     *Broiler* case, although there the court had two full days of

19     argument and testimony on the class certification motion,

20     so we did not do it there.  I'm unaware whether it was done

21     in other proteins cases.

22          THE COURT:  All right.  Any other defendant wish

23     to speak on this?

24          Okay.  Who is speaking for the plaintiffs?

25          MR. BOURNE:  Good morning, Your Honor.  Joe

1    Bourne from Lockridge Grindal Nauen.

2              THE COURT:  Good morning, Mr. Bourne, again.

3              MR. BOURNE:  The plaintiffs believe this is

4    unnecessary.  The pork industry simply isn't that complex.

5    As, you know, I think we heard Mr. Laytin say, this is

6    really about presenting additional argument and attorney

7    advocacy to the Court in connection with upcoming critical

8    hearings like class certification and eventually summary

9    judgment.

10             The plaintiffs believe that argument about the

11   industry, to the extent that it's necessary, can be

12   addressed at the hearings on those motions, as well as in

13   the parties' voluminous briefs and expert reports.  A

14   separate additional day of attorney advocacy about aspects

15   of the industry that the parties believe strengthen their

16   claims or defenses is not something that would be helpful

17   to the Court in our view.

18             It would also --

19             THE COURT:  Go ahead.

20             MR. BOURNE:  It would also take a lot of the

21   Court's time and the parties' time and resources to prepare

22   and conduct this hearing and with the class certification

23   now coming up in just over a month at the end of January,

24   the class plaintiffs believe it's important not to delay

25   that hearing and to proceed full steam ahead.

1          Holding this hearing in early January as the

2     defendants propose would give the plaintiffs little time to

3     prepare, and that would be over the holidays, which is not

4     a good timeline for people to have to put together a

5     massive amount of work in preparing a day long presentation

6     like this.

7          THE COURT:  So, Mr. Bourne, I understand what the

8     defendants' counsel would likely do at this proceeding to

9     discuss aspects of the industry.  What would plaintiffs be

10    presenting if we did something like this?

11         MR. BOURNE:  The plaintiffs would anticipate

12    presenting on whatever topics the parties agreed would be

13    part of the day.  Certainly we think the same ground rules

14    should apply.  So if it's attorney presentation, then it

15    should be attorney presentation for both sides.  Your Honor

16    already rejected an evidentiary hearing, so we don't

17    believe there is any need or benefit to calling in experts

18    to testify.

19         We would anticipate additional topics that we

20    would propose and seek to include if the industry day went

21    forward, such as benchmarking and data sharing in the

22    industry and the impact of the defendant Agri Stats's data

23    model that is, we allege, has changed fundamentally ways in

24    which the industry works.

25         But we have not met and conferred about those

1    topics.  Thus far the parties have disagreed about whether

2    an industry day is necessary at all.

3              THE COURT:  All right.  Any other plaintiffs

4    lawyer wish to make a comment?

5              MR. BLECHMAN:  Yes, Your Honor, William Blechman

6    from Kenny Nachwalter if I might.

7              THE COURT:  Sure.

8              MR. BLECHMAN:  Thank you and good morning.

9              Mr. Bourne covered most of the remarks that the

10   Direct Action Plaintiffs have, but I just wanted to respond

11   to one or two points presented by defense counsel.

12              I heard defense counsel say to the Court that an

13   important reason why defendants want this so-called

14   industry day is because they have had, and I wrote this

15   down, No opportunity to discuss facts and issues with the

16   Court that they want to talk about in the industry day.

17              I was struck by the remark, Your Honor, because

18   as Mr. Bourne notes, almost basically about a month from

19   now, the Court is going to hear four hours or more on class

20   cert which presumably are going to raise a number of these

21   issues, and then there will be summary judgment and other

22   motions that come out later.

23              So I think there actually has been an

24   opportunity, to say nothing of the proceedings that Your

25   Honor has held up until now considering motions to dismiss

1    and the allegations that have been made in the pleadings

2    and the defendants' response.

3              What's more, speaking just more broadly, Your

4    Honor, the concern that we have about these kinds of

5    proceedings is that they typically occur sort of untethered

6    to motions, and what you have in this case is that you have

7    pending motions that will make what the defendants want to

8    cover with the Court duplicative, as best I can tell, in

9    answering the Court's questions about what would be

10   presented.  Seems like there is a fair amount of

11   duplication there.

12             Finally, just in the broader sense of things,

13   Your Honor, as Your Honor knows better than do I, the Court

14   takes facts presented in evidentiary hearings, in motion

15   practice, and applies the law, in proceedings where there

16   is a real accountability for what both parties are saying

17   with regard to the ultimate Court's determination and

18   disposition of pending motions.

19             We see no basis to alter that kind of paradigm

20   that is memorialized in the Federal Rules of Civil

21   Procedure.  Most industry days with which I am familiar,

22   Your Honor, occur very early in a case involving very

23   complicated or complex industries or inventions, for

24   example in patents and things like that.

25             That is not presented here, and Mr. Bourne has

1    already covered that.  So I will not belabor the point, but

2    those were the remarks, Your Honor, I wanted to add.  Thank

3    you.

4              THE COURT:  Thank you, Mr. Blechman.  Any

5    plaintiffs' lawyer?

6              Okay.  Mr. Laytin.

7              MR. LAYTIN:  Just briefly, Your Honor.  Thank

8    you.

9              The plaintiffs' remarks could be distilled down

10   into, it's not worth it and it's not timely.  With respect

11   to the resources or timing, this is an enormous case that

12   is, you know, challenges the very basis of multiple

13   industries, and we think it's worth it if Your Honor agrees

14   to have a day, some portion of a day reserved for education

15   of the Court on these critical issues.

16             And we don't believe that complaints about the

17   resources or timing or delay are well founded in that

18   context.  With regard to Mr. Blechman's comments about this

19   being essentially too late for an industry day or the

20   industry is not complex enough, we don't think that's

21   well-founded, either.

22             Again, Judge Proctor in the *Blue Cross/Blue*

23   *Shield* case held multiple economics days over the course of

24   the ten-year period when issues arose.  We think that's a

25   best practice where the Court will be relied on to write

1    opinions that come in the context of an industry that is,

2    again, not intuitive.

3         There are 40 some lawyers on this Zoom.  I don't

4    believe any of us understood the intricacies and the

5    underlying market economics behind how the sausage is made,

6    quite literally.

7         We think taking some portion of a day to educate

8    Your Honor in a way that will make it, future arguments

9    more pointed, more efficient and more helpful we think is,

10   there is no down side.  And the final point is, it is

11   curious to us that the plaintiffs don't want the

12   opportunity to educate the Court on these important topics.

13        We don't see a real down side to taking several

14   hours and talking about the facts that are relevant to the

15   industries in this important case.  Thank you.

16        MR. BLECHMAN:  Your Honor, may I respond just

17   briefly?

18        THE COURT:  You may, Mr. Blechman.

19        MR. BLECHMAN:  I'm in the *Blue Cross* case, as is

20   Mr. Laytin.  I would like to think that Mr. Laytin and I

21   will agree that this case is not the *Blue Cross* case in

22   terms of the economics and the facts and the nuances and

23   the scale that is presented.

24        This case is a commodity case, and Your Honor

25   asked about the *Broiler Chicken* case.  There was not an

1    industry case there.  We don't think it's necessary here at

2    all.

3              And final point, Your Honor, is this:  With

4    regard to educating the Court, the reason that we oppose

5    this industry day is because we regard it as our charge,

6    our responsibility to the Court, to educate the Court about

7    these kinds of issues through the vehicle of motion

8    practice and responding to motions, in writing motions and

9    memoranda.

10             That's what we view as our charge.  I acknowledge

11   to Your Honor that it is, it is the strategy of defendants

12   often to try to present something as more complicated, and

13   I acknowledge to you that it's the strategy of plaintiffs

14   at times to try to simplify, but in this case we're dealing

15   with a commodity product.

16             You have some indication of how this might go

17   because it wasn't done in the *Broiler Chicken* case, and the

18   Court is about to be educated considerably more about these

19   issues in its consideration of motions that are already

20   pending.

21             Thank you.

22             MR. BOURNE:  Your Honor?

23             THE COURT:  Yes, Mr. Bourne.

24             MR. BOURNE:  Really briefly.  The class

25   plaintiffs believe that the relevant aspects of the

```
 1    industry will be sufficiently addressed and discussed at

 2    the class certification hearing.

 3            We would also suggest that to the extent the

 4    Court is considering this and has questions about the

 5    usefulness of an industry day that we could see how the

 6    class certification hearing goes, and if the Court believes

 7    that additional education such as the defendants have

 8    proposed would be helpful, we could revisit it at that

 9    point.

10            THE COURT:  All right.  Any final word on this,

11    Mr. Laytin?

12            MR. LAYTIN:  Only that to talk about these

13    products as commodities again conflates the multiple

14    industries at issue.  There is the hog industry, but no one

15    is going to say when they bring home bacon and they are

16    told they got the wrong one, whether it's hickory smoked or

17    some other thing, that everything in this industry is a

18    commodity.

19            And it's exactly these points, what is a hog,

20    what is a pork product, what is a value added product, that

21    we think would benefit from the light of day.  Thank you.

22            THE COURT:  All right.  Thank you for your

23    arguments on this, and I think although an industry day

24    might be interesting, I don't think it's particularly

25    necessary at this stage of this case.
```

1          However, I'm not going to hold an industry day

2     per se, but I'm prepared to add one additional hour to each

3     side's time on the class certification motion for the

4     purpose of adding what I might say are educational elements

5     to that hearing so that the Court has the benefit of some

6     additional thoughts from an educational standpoint, but I

7     don't think we need to do a separate day for an industry

8     day.

9          So we will move that to a period of six hours

10    rather than four for the class certification hearing, and

11    please feel free to be educational as part of your

12    arguments if you wish to do that.

13         All right?

14         MR. LAYTIN:  Thank you, Your Honor.

15         THE COURT:  Okay.  Let's proceed to the next

16    issue, which I think is, maybe there is nothing to be done

17    at this point in time, but schedule for authenticity and

18    admissibility of potential trial exhibits, is there any

19    report on this?

20         I think this is still maturing.

21         MR. BOURNE:  Joe Bourne here, Your Honor.

22         This is still maturing.  We have been working on

23    meeting and conferring for the last couple months with

24    defendants, and we anticipate having hopefully another

25    update or potentially being able to file a stipulation or

1    something to that effect before the January status

2    conference.

3              THE COURT:  All right.  That sounds good.

4              Let's move on to the Seaboard issue.  I think,

5    Judge Docherty, are you going to handle this?

6              MAGISTRATE JUDGE DOCHERTY:  I could.  It didn't

7    look from the papers that there was anything to handle.  It

8    looked like Seaboard had spun off Daily's Premium Meats,

9    that the structured data that was kept by Daily's Premium,

10   the parties have met and conferred and have agreed on that.

11             But is there more to say, other than what was in

12   the joint agenda?  Any plaintiffs' lawyer who wishes to

13   speak to that?

14             MR. OWEN:  Yes, Your Honor.  Good morning.  My

15   name is Steve Owen of the law firm Lockridge Grindal Nauen

16   on behalf of the Direct Purchaser Plaintiffs.

17             Just to add, a part of those meet and confer

18   efforts and Seaboard's production of daily structured data

19   from after the spin-off period was that DPPs raised several

20   questions specific to the structured data and raised

21   specific points for clarification that the DPPs wanted

22   clarified.

23             To date, Seaboard has not provided answers to

24   those questions.  However, as of yesterday afternoon,

25   Seaboard represented to the DPPs that they would provide

1    answers to those questions shortly after the new year.  So

2    that is just an update with respect to that issue.

3                MAGISTRATE JUDGE DOCHERTY:  All right.  Well, I

4    appreciate being brought up to speed on that.

5                Any other plaintiffs' lawyer that wants to speak

6    to the spin-off of Daily's from Seaboard?  Any defense

7    lawyer that wants to be heard on this?

8                MR. SCHWINGLER:  Peter Schwingler for Seaboard.

9    I've got nothing to add, Your Honor.

10               MAGISTRATE JUDGE DOCHERTY:  Okay.  All right.

11   Thanks very much, and if there is something to be decided,

12   it looks like it would be in January and not now.  Okay.

13               MR. OWEN:  Thank you.

14               MAGISTRATE JUDGE DOCHERTY:  Thank you both.

15               THE COURT:  All right.  Why don't you, Judge

16   Docherty, you can tee up the letter rogatory issue here

17   that is pending.

18               MAGISTRATE JUDGE DOCHERTY:  Yes.  I just had a

19   question about that.  There was an indication that a,

20   something called a long chambers day had been requested.  I

21   assume, because I've never heard that term before, but I

22   don't know every term, that this is happening in Canada and

23   isn't something that we need to be concerned with, other

24   than knowing generally what's going on.

25               Ms. Scarlett, is that correct?

1          MS. SCARLETT:  Yes, Your Honor.  Shana Scarlett

2     on behalf of the plaintiffs.

3          What has happened is that Tyson has retained

4     counsel on behalf of the witness, and Mr. Taylor could

5     speak for Tyson, but I believe they intend to challenge the

6     order.  They have requested a two-day hearing at this point

7     I think in front of the Canadian court, which will happen

8     around February 10th.

9          But perhaps Mr. Taylor has a little bit more

10    inside information since Tyson has not yet filed its

11    responsive papers with the Court.

12         MAGISTRATE JUDGE DOCHERTY:  Just to be clear, as

13    far as you know, there is nothing in the U. S. court

14    concerning Mr. Matsumoto's deposition now that the letters

15    rogatory are out the door.

16         MS. SCARLETT:  Nothing that I'm aware of, Your

17    Honor.

18         MAGISTRATE JUDGE DOCHERTY:  Mr. Taylor, is there

19    anything more to say about Mr. Matsumoto's deposition?

20         MR. TAYLOR:  As Ms. Scarlett noted, he has a

21    hearing scheduled for February 10th, and my understanding

22    is, there is nothing for this Court to do pending the

23    outcome of that hearing.

24         MAGISTRATE JUDGE DOCHERTY:  Thank you both for

25    clearing that up.  I appreciate it.

 1                    MS. SCARLETT:  Thank you, Your Honor.

 2                    THE COURT:  All right.  Very well.  The

 3      consolidated amended complaint was filed by the Direct

 4      Action Plaintiffs.  I noted that on the docket.  The only

 5      issue here is, Triumph is going to file a motion for

 6      summary judgment; is that correct?

 7                    MR. SMITH:  Yes, Your Honor.  We intend to file a

 8      motion for leave to move for summary judgment on the DAP

 9      consolidated complaint.

10                    THE COURT:  Okay.  And so the motion for leave

11      will be filed soon; is that correct?

12                    MR. SMITH:  Yes.  Our intention is to file that

13      motion for leave with the proposed motion for early summary

14      judgment with the January 20th response date.

15                    THE COURT:  All right.  Go ahead.  Sorry.

16                    MR. SMITH:  I apologize, Your Honor.  That's our

17      deadline to respond to the DAP consolidated complaint.

18                    THE COURT:  All right.  Anyone else wish to speak

19      on this?

20                    MR. KAPLAN:  Robert Kaplan.

21                    THE COURT:  Go ahead, Mr. Kaplan.

22                    MR. KAPLAN:  Number one, there has been no meet

23      and confer.  We filed the complaint on December 5th, so I'm

24      not sure exactly what they are proposing to file.

25                    Secondly, Judge Docherty entered a scheduling

1    order on December 1st.  That's docket 1651.  That has a

2    schedule for expert reports.  Expert reports are due June

3    5, 2023.  There is a schedule.  Dispositive motions are not

4    due until May 17, 2024.

5             Our experts are relevant to summary judgment.  We

6    will be using expert opinions to oppose summary judgment.

7    So I would suggest, Your Honor, this is premature.  We

8    would file something.

9             Like I said, I don't know what they're moving on,

10   but most likely we will be opposing it on the grounds that

11   it's premature and that we haven't had expert reports or

12   expert discovery.

13            MR. SMITH:  If I could just respond briefly?

14            THE COURT:  Go ahead, Mr. Smith.

15            MR. SMITH:  I think a little bit of color might

16   be helpful.  If you recall, this is an issue that we

17   flagged in the October status report.  With respect to

18   Triumph, I think it's a very simple motion for summary

19   judgment.

20            If Your Honor will recall in addressing the

21   second motion to dismiss, the Court relied, and plaintiffs

22   pressed, allegations that -- of parallel conduct in the

23   reduction of sow herds.

24            For defendant Indiana Packers, there were no such

25   allegations, so Indiana Packers was dismissed.  For others,

1     like my client Triumph Foods, there were allegations that

2     we made sow herd reductions at particular facilities, and

3     the Court relied on that in denying the motions to dismiss.

4          Your Honor, respectfully those allegations

5     weren't true when they were made.  Now that fact discovery

6     is closed, they are demonstrably false.  When the DAPs

7     filed their consolidated amended complaint, they recognized

8     this, and they have conceded that Triumph Foods never had

9     any live operations and had no sows.

10          Respectfully, if we had no sow operations, we

11    couldn't review sows that we didn't have.  Triumph is

12    unique in the sense that it's solely a pork processor.  We

13    have no power over hogs to buy, and after processing pork,

14    Triumph's role in the supply chain ends because Triumph

15    doesn't even price or sell the products that it processes

16    at its facility in St. Joe.

17          Again, discovery is closed.  There is no evidence

18    of any agreement, no evidence of parallel conduct as to

19    Triumph, no evidence that Triumph reduced supply.  We

20    shouldn't have been in this case to begin with, but DAPs

21    filing an amended complaint after the close of fact

22    discovery and continuing to press these allegations, we

23    believe that the time to resolve that is now.

24          It is a simple motion.  It is an expensive case

25    for my client, and we would just simply like an opportunity

1    to present to the Court why that makes sense and why it

2    makes sense now, and they will be free to respond to our

3    motion for leave, but again we think this is a very simple

4    motion.

5           And if there is no evidence to support any of the

6    core allegations, respectfully there is nothing that an

7    expert could opine on.

8           MR. KAPLAN:  Your Honor, the core allegations

9    here also involve a conspiracy to limit slaughter to keep

10   their fair share of the slaughter market.  Triumph is

11   involved in the slaughter market.

12          Triumph is a processor of harvesting the hogs to

13   create the pork, and that's the core allegation of our

14   complaint, and Triumph is right in the middle of it.

15          THE COURT:  All right.  Well, thank you.  The

16   Court will review the motion that Triumph intends to bring,

17   together with the response, and will issue an order quickly

18   on whether the motion can be brought now.

19          MR. SMITH:  Thank you, Your Honor.

20          THE COURT:  All right.  Okay.  Briefing on class

21   certification, do we have any issues here to discuss?

22          MR. LAYTIN:  Your Honor, it's Dan Laytin for

23   Clemmens Family Corporation.  I think we're in the previous

24   section of our status conference.  This also is a preview

25   of coming attractions that we are not asking for any action

1    today, but we will similarly be seeking leave to file a

2    surreply in opposition to class certification.

3            And in brief, the issue is that plaintiffs' class

4    reply for the first time really changed their theory of the

5    case from the one that Mr. Smith just articulated that was

6    really based on a conspiracy to reduce hog production, and

7    that has decreased the number of sows that each hog

8    producer has and decreased the hogs that were processed.

9            As Mr. Smith said, that is the basis on which

10   Your Honor decided the two motions to dismiss because the

11   primary alleged vehicle of the conspiracy was sow and hog

12   reduction.  Plaintiffs' original class papers proceeded

13   with that theory in mind.

14           They allege that defendants controlled the hog

15   supply, and they therefore in their regression controlled

16   for the cost of raising hogs but not buying hogs because,

17   again, the plaintiffs' view of the world was that

18   defendants controlled and owned the hog supply.

19           The problem for plaintiffs, as defendants pointed

20   out in their class opposition, is that defendants don't own

21   the hog supply, and independent hog producers do instead;

22   and therefore packers benefit from increased hog supply,

23   not less because they of course can buy hogs for cheaper.

24           When you include the price of hogs in the

25   regressions that plaintiffs' experts offered, the

1    overcharge falls away.  So the problem we have is that

2    plaintiffs have shifted to a new theory on reply, and just

3    to quote CIIPPS' experts, Plaintiffs do not allege a

4    conspiracy to restrict hog production.

5            That is an about-face, and it's not just the

6    CIIPPs' expert Williams.  The DPPs' expert Mangum and

7    CIPPs' expert Singer all say similar things.  That is an

8    about-face that has real big implications, and it has

9    implications for class and for *Daubert* and for summary

10   judgment.

11           But because it comes so late and these

12   declarations by plaintiffs' experts come so late in the

13   class process, we believe that we need an opportunity to

14   file a short surreply on the opposition to class to address

15   these new arguments and these new declarations and

16   allegations.

17           And so we will shortly be filing a motion for

18   leave to do just that, and we would propose to do it in the

19   6,000 remaining words that we have that were allocated to

20   us for the class briefing.

21           THE COURT:  When are you filing your motion,

22   Mr. Laytin?

23           MR. LAYTIN:  We could do it on whatever schedule

24   the Court would like.  We could do it expeditiously within

25   a week.

1          THE COURT:  All right.  That sounds good.  Why

2     don't you do it within a week?

3          Anyone, plaintiffs, wish to speak on this?

4          MR. CLARK:  Brian Clark speaking on behalf of the

5     class plaintiffs.

6          We have some issues with this proposal.  The

7     first time we heard about this possibility of a surrebuttal

8     report was on Thursday, December 15th, the day before the

9     status report was due and in one of the very final

10    exchanges of the draft of that status report before the

11    parties.  Our reply expert reports were filed November

12    18th.

13         Defendants have not even requested a meet and

14    confer yet, and we were not provided until in the last

15    three minutes any purported basis for a surrebuttal report,

16    and any motion for leave would not be fully briefed until

17    at most a few weeks before the hearing.  We have the

18    holidays here.

19         We have not waited to file such a motion.  It

20    could have even been filed last week if the defendants had

21    bothered to request a meet and confer, but it seems to us

22    in light of this, and Mr. Laytin described it as a preview,

23    it seems like defendants are taking the Court's temperature

24    on this issue before even meeting and conferring or filing

25    a motion.

1              And plaintiffs' suggestion, as the Court

2       suggested, that the temperature is quite cold in

3       Minneapolis on this issue today.  Big picture:  These are

4       class plaintiffs' motions.  We should have the last word.

5       That is the way motions work.

6              In addition, this briefing schedule and structure

7       that has been in place for almost two years since January

8       2021, it's the result of a long-established and agreed upon

9       schedule and structure.

10              And the Court, as it always does, received an

11       initial brief, an opposition brief and a reply brief and

12       accompanying reports.  But to add an entirely new round of

13       briefing here, and it will be a round because if defendants

14       file a surreply, plaintiffs are entitled to respond to it

15       with a sur-surrebuttal report from our experts.

16              And to do this at the 11th hour at the January

17       31st class certification hearing we just don't think is

18       fair.  These reports were proper rebuttal.  I mean this is

19       the first time we have heard this argument from defendants

20       in the last five minutes now on what the exact issue is,

21       but our conspiracy has always been the same.

22              What defendants are really saying here is, they

23       have defined our conspiracy in a way they view as about

24       hogs, reducing hog supply.  That's not our conspiracy.

25       That's the way they framed it, and the purpose of this

1    surrebuttal is for them to continue framing a conspiracy

2    that they cannot found, that we have not alleged.

3            The hearing on the motions is weeks away with the

4    holidays intervening.  It's prejudicial to even have to go

5    through this exercise on briefing of their request for a

6    surrebuttal.  I will just note the defendants have declined

7    to depose all but one class expert regarding their reply

8    reports.  Our concern is, defendants are anticipating a

9    sur-surreply report from plaintiffs in response, and then

10   the depositions of plaintiffs' experts will happen after

11   that.

12           But at some point this briefing has to end.

13   Somebody has to have the last word, and we suggest the

14   typical end of briefing with the reply report is the

15   appropriate place to do it.  I will just kind of note the

16   experience of when this happened before.

17           Defendants in *Broilers* made the same request.

18   Different facts, same result.  There is something new, we

19   need a surrebuttal.  They filed their motion for leave to

20   file the surrebuttal report, and attached to that motion

21   was the actual surrebuttal expert report.

22           And of course if defendants do that, we are going

23   to have to file an opposition, and we will also want to

24   attach our sur-surrebuttal expert report, and at that point

25   we are millions of dollars down the road in a case that, as

1    was pointed out, is expensive.

2              We don't think that is a wise use of resources

3    over the holidays.  I think we should be focused on

4    educating and preparing the Court at the January 31st

5    hearing.  Defendants have every opportunity to make these

6    arguments on how they would like to say we have defined our

7    conspiracy.  We disagree.

8              And we will tell you about that on January 31st,

9    but to spend the holidays going through this exercise again

10   with defendants we don't think is a wise use of resources,

11   and we would ask the Court since the preview has been made

12   to confirm that briefing is closed and avoid this exercise

13   over the holidays.

14             THE COURT:  Mr. Laytin, is there a planned

15   surrebuttal expert report?

16             MR. LAYTIN:  No, Your Honor.  No.

17             THE COURT:  All right.  Well, I don't have a

18   problem with a very short surrebuttal brief, and I will

19   permit that if you could get that in within a week and then

20   the plaintiffs' reply a week after that.  Keep these short.

21             I don't think that additional expert reports are

22   necessary, but if you want to make any additional argument

23   I'm fine with that, and the plaintiffs have a week to

24   reply.

25             All right?

```
 1                    MR. LAYTIN:  Thank you, Your Honor.

 2                    MR. SMITH:  Just in the nature of a five page,

 3        five pages for plaintiffs, five pages for defendants,

 4        something short or --

 5                    THE COURT:  Yes.  Yes.  Five pages is sufficient.

 6              All right.  And then I would just note for the

 7        record that we received the Direct Action Plaintiffs'

 8        objection to Judge Docherty's November 16th order on a

 9        motion to compel.  We will be looking at that right away.

10              All right.  Anything else anyone wishes to

11        address today?

12              All right.  We will adjourn and for those in the

13        Beef matter, we will return in about ten minutes to begin

14        that hearing, and I hope everyone has a lovely holiday

15        season.

16              And we have another, do we have another status

17        conference scheduled at this point, Heather?

18                    COURTROOM DEPUTY:  We don't, Your Honor.

19                    THE COURT:  Do we have some dates we are looking

20        at?  I think I would like to do a separate status

21        conference separate from the class certification motion,

22        earlier probably.

23                    COURTROOM DEPUTY:  Earlier than the motion?

24                    THE COURT:  Yeah.

25                    COURTROOM DEPUTY:  The week before, how about on
```

 1    January 26th?

 2              MR. KAPLAN:  Your Honor?

 3              THE COURT:  Yes.  Go ahead, Mr. Kaplan.

 4              MR. KAPLAN:  There is a multi district panel

 5    hearing on that day that some of us will be --

 6              THE COURT:  All right.  That's not a good day.

 7    How about earlier?  We may have to take some time off from

 8    trial.

 9              COURTROOM DEPUTY:  Tuesday the 24th?

10              MR. KAPLAN:  That's fine.

11              THE COURT:  Tuesday the 24th work?  We would

12    probably set afternoon time since we anticipate being in

13    trial, but we would move it earlier if the trial goes away.

14              COURTROOM DEPUTY:  How about three o'clock?

15              THE COURT:  Three o'clock Central Time.

16              MR. SMITH:  Your Honor, for class plaintiffs,

17    that works.  Thank you.

18              THE COURT:  All right.  Let's plan it for 3:00

19    p.m. Central Standard Time on January 24th.

20              MAGISTRATE JUDGE DOCHERTY:  Judge, I'm on

21    criminal duty then, but I can make that happen.  Initial

22    appearances are usually earlier in the afternoon.

23              THE COURT:  Okay.  Well, we will issue an order

24    pausing criminal duty matters for an hour.

25              All right.  Have a good holiday, everyone.  Thank

1    you all for participating by video conference today.  We

2    will see you next month.

3              MR. KAPLAN:  Thank you, Your Honor.

4              MR. LAYTIN:  Thank you.

5              MR. BOURNE:  Thank you.

6                        **(Court was adjourned.)**

7                        *         *         *

8              I, Kristine Mousseau, certify that the foregoing

9    is a correct transcript from the record of proceedings in

10   the above-entitled matter.

11

12

13

14   Certified by:  s/  *Kristine Mousseau, CRR-RPR*
                        Kristine Mousseau, CRR-RPR
15

16

17

18

19

20

21

22

23

24

25