# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-1776 (JRT/JFD) |
| | **[FILED UNDER SEAL]** |
| This Document Relates to: | **CLASS PLAINTIFFS' SUR-REBUTTAL IN SUPPORT OF PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION** |
| *All Direct Purchaser Actions* | |
| *All Commercial and Institutional Indirect Purchaser Actions* | |
| *All Consumer Indirect Purchaser Actions* | |

# TABLE OF ABBREVIATIONS

| Short Cite | Long Cite |
| --- | --- |
| CIPP Compl. | Consumer Indirect Purchaser Plaintiffs' Fourth Amended Consolidated Class Action Complaint, ECF No. 1111 (Jan. 12, 2022) |
| CIPP MCC | Consumer Indirect Purchaser Plaintiffs' Motion for Class Certification, ECF No. 1343 (May 2, 2022) |
| CIIPP MCC | Memorandum in Support of Commercial and Institutional Indirect Purchaser Plaintiffs' Motion for Class Certification and Appointment of Lead Counsel and Plaintiffs' Steering Committee (corrected), ECF No. 1428 (Aug. 18, 2022) |
| DPP MCC | Memorandum of Law in Support of Direct Purchaser Plaintiffs' Motion for Class Certification, ECF No. 1320 (May 2, 2022) |
| Haider Rpt. | Expert Report of Dr. Laila Haider, ECF No. 1442-1 (Aug. 24, 2022) |
| Mangum Reply Rpt. | Expert Reply Report of Russell W. Mangum III, Ph.D. Regarding Class Certification, ECF No. 1617 (Nov. 18, 2022) |
| Mintert Rpt. | Expert Report of James Mintert, Ph.D., ECF No. 1442-2 (Aug. 24, 2022) |
| Scarlett Decl. | Declaration of Shana E. Scarlett in Support of Class Plaintiffs' Sur-Rebuttal in Support of Plaintiffs' Motions for Class Certification, filed concurrently herewith |
| Singer Reply Rpt. | Reply Declaration of Dr. Hal J. Singer, Ph.D. in Support of Consumer Indirect Purchaser Plaintiffs' Motion for Class Certification, ECF No. 1626 (Nov. 18, 2022) |
| Sur-Reply | Sur-Reply in Support of Defendants' Opposition to all Class Plaintiffs' Motions for Class Certification, ECF No. 1684 (Dec. 22, 2022) |
| Williams Opening Rpt. | Corrected Expert Report of Michael A. Williams, Ph.D., ECF No. 1429 (Aug. 18, 2022) |
| Williams Reply Rpt. | Expert Reply Report of Michael A. Williams, Ph.D., ECF No. 1635 (Nov. 18, 2022) |

INTRODUCTION

There have been two constants in this case. Plaintiffs have consistently alleged a conspiracy to stabilize the price of pork sold in the United States. And Defendants have consistently tried to re-frame the conspiracy as one to reduce the supply of hogs. In their latest filing, Defendants characterize Plaintiffs' class certification reply briefs as an "about-face," a "U-turn" and a "shell game." Sur-Reply at 1. But nothing could be further from reality. For nearly five years, Plaintiffs have alleged a conspiracy that reduced the supply of pork on the plates of American households. Discovery is closed. Plaintiffs have deposed over 80 of Defendants' current and former employees. Rather than squarely face the evidence, Defendants resort to misrepresenting Plaintiffs' articulation of the conspiracy. Not only is this far afield from the requirements of class certification, it also fails on the merits.

**A.     Plaintiffs have consistently alleged a conspiracy with a real harm – the increased price of pork sold to American customers.**

Plaintiffs alone are responsible for framing the illegal agreement they allege, the existence of which will be determined by the finder of fact.[1] Plaintiffs have not repudiated any of their claims, but have consistently and constantly alleged a conspiracy to stabilize the price of pork. As early as the motion to dismiss hearing in May 2020, Plaintiffs' counsel emphasized: "This is not a conspiracy to constrain the supply of pigs.

---

[1] *Davis v. Hall*, 375 F.3d 703, 717 (8th Cir. 2004) ("despite the defendants' attempt to characterize Davis's case as one hinging on a constitutional right of investigation, Davis, not the defendants, is the master of his complaint").

This conspiracy is one to constrain the supply and price of pork being sold into the U.S. Market." Tr., ECF No. 510 (May 13, 2020) at 50.

Plaintiffs next moved for class certification, on a robust factual record, laying out the means Defendants used to effectuate the conspiracy, including: (1) herd reductions by vertically integrated Defendants who account for no less than 34 percent of slaughtered hogs (Mintert Rpt. Ex. 2; Singer Reply Rpt. ¶ 43); (2) using Agri Stats to track and monitor competitors' supply, pricing and profit information; (3) increasing exports to limit pork available in the domestic market; and (4) underutilization of capacity. CIPP MCC at 5-20; DPP MCC at 3-28; CIIPP MCC at 5-18.

Ignoring this constant and detailed explanation of the evidence, Defendants seek to reframe the conspiracy to exclude the pieces they do not like. But it is hornbook law that that "plaintiffs should be given the full benefit of their proof."[2] No case law supports Defendants' attempt to take the conspiracy alleged by Plaintiffs (to stabilize the price of pork sold in the U.S.), reframe it as one to depress the supply of hogs, and limit its mechanisms to (1) reducing hog supply and (2) increasing exports. Sur-reply at 1. Defendants' argument fails on this ground alone.

**B.     The reduction in hog production levels was one lever of the conspiracy.**

Defendants' motion also fails on the facts. Plaintiffs have not disavowed the mechanisms of the conspiracy. Conspiracies of this size cannot, and need not, be implemented all in one piece. Herd reductions were a critical piece of the conspiracy, but

---

[2] *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).

they were not the only means. All of Plaintiffs' experts agree that direct ownership of hogs was not essential to the success of the conspiracy, but for the 34 percent of hog herds directly owned by Defendants,[3] herd reductions were one piece of the conspiratorial conduct. Singer Reply Rpt., ¶ 12; Mangum Reply Rpt., ¶ 83; Williams Reply Rpt., ¶¶ 51-60.

Defendants claim that they have "proved" (through Dr. Mintert) that "Defendants do ___not___ control hog production." Sur-Reply at 3. But in fact, Dr. Mintert agrees with Plaintiffs' experts, and conceded that Defendants control over 90 percent of hog production, either through direct ownership or "vertical coordination" (where contract conditions impose terms and conditions that vertically restrain the production of hogs). Singer Reply Rpt., ¶ 44. Seen in this context, Defendants' actions to reduce hog supply is a relevant piece of this conspiracy, but not the only one.

But *even if* the supply of hogs were controlled by non-Defendants, that fact would not prevent Defendants from collusively reducing the supply of *pork products*. Defendants' claim is that downstream producers cannot profitably agree to reduce the supply of a downstream product, thereby increasing its price, if they do not own or contractually control the supply of an economically important upstream input. Thus, according to Defendants' logic, producers of bread could not profitably agree to reduce the supply of bread, thereby increasing its price, if they did not own or contractually control the supply of wheat.

---

[3] *See* Singer Rpt. ¶ 43 (Dr. Mintert "shows in Exhibit 2 of his report that Pork processors directly owned approximately 34 percent of all hogs slaughtered").

But Defendants are incorrect in their premise, reasoning, and conclusion. As Dr. Haider testified, the demand for hogs is *derived* from consumers' demand for pork products.[4] In the conspiracy period (i.e., January 2009 through June 2018), Defendants collectively accounted for 85 to 87 percent of daily hog slaughter capacity, a large majority of the market demand for hogs.[5] The effect of the agreement among pork producers was to decrease the market demand for hogs and, thus, the quantity of hogs sold.[6] This is true regardless of whether "most of the hog supply in the U.S. is owned, produced, and controlled by non-Defendants." Haider Rpt., ¶ 55.

C.  **Plaintiffs have alleged a conspiracy which includes increased exports.**

Defendants next cite the reports of Drs. Williams and Mangum to suggest that Plaintiffs have disclaimed that increased exports were a part of this conspiracy. This is nonsense. In the cited portions of Dr. Williams' report (¶¶ 227-229), Dr. Williams merely takes issue with the defense experts' use of a total supply number (which includes international supply of pork) and explains that this "would create the illusion of increased supply" even if the conspiracy was successful in decreasing domestic supply. For this reason, Dr. Williams continues to support his measurement of the conspiracy "on the domestic supply of pork products." Williams Reply Rpt., ¶ 229.

---

[4] Scarlett Decl., Ex. 1 (Haider Tr.) at 166:4-21; 305:14-306:3 ("It relates to derived demand, right? So if there's increase in demand for a product, that will increase the demand for inputs of the product. And so, of course, hogs are an important … input.").

[5] Williams Opening Rpt. at 37, Table 2.

[6] As Dr. Haider testified: "A decrease in hog demand would result in a decline in the equilibrium quantity of hogs. Again, as a – as a general matter, yes, holding all else equal." Scarlett Decl., Ex. 1 (Haider Tr.) at 171:1-16.

Similarly, in the cited paragraph of Dr. Mangum's reply report, Dr. Mangum explains that Defendants have incorrectly assumed that all Defendants must "have acted in identical fashion." Instead, "the alleged conspiracy does not require that each Defendant increase exports by the same amount, or even that they increase exports at all." Mangum Reply Rpt., ¶ 81. Rather, the analyses that Dr. Mangum (and each of plaintiffs' experts) performs is to account all factors other than the conspiracy, and then examine what impact the conspiracy had on the U.S. supply of pork.

**D.     Plaintiffs' measurements correctly measure the harm alleged.**

Finally, Defendants suggest Plaintiffs built economic models on a fundamental misunderstanding of the pork industry, controlling only for the cost of raising hogs and not the price of hogs. Sur-Reply at 3. But the selection of variables is not dispositive in the class certification context, and only represents a disagreement among experts in the specification of the overcharge regression model. Regardless, substituting this variable introduces an inexcusable error into the model. By using hog prices instead of hog costs, Dr. Haider circularly attempts to explain the price of pork using a variable that is, itself, determined by the price of pork. Singer Reply Rpt. ¶¶ 88-89; Williams Reply Rpt. ¶¶ 113-16; Mangum Reply Rpt. ¶¶ 141-46. Defendants cannot reframe the conspiracy to introduce fundamental flaws into the Plaintiffs' regression models.

## CONCLUSION

Defendants' sur-reply has done nothing to undermine Plaintiffs' demonstration that liability and impact may be shown through evidence common to the class.

DATED: January 5, 2023        Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:    */s/ Shana E. Scarlett*
SHANA E. SCARLETT
Rio Pierce
715 Hearst Avenue, Suite 202
Berkeley, California 94710
(510) 725-3000
shanas@hbsslaw.com
riop@hbsslaw.om

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
(206) 623-7292
steve@hbsslaw.com
breannav@hbsslaw.com

Elaine T. Byszewski
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
(213) 330-7150
elaine@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Joshua J. Rissman (#391500)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
(612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

*Co-Lead Counsel for Consumer Indirect*

*Purchaser Class*

*/s/ Joseph C. Bourne*
Joseph C. Bourne (MN #0389922)
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Arielle S. Wagner (MN #0398332)
Simeon A. Morbey (MN #0391338)
Stephen M. Owen (MN # 0399370)
Sarah M. Lundberg (MN #0390026)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
jcbourne@locklaw.com
wjbruckner@locklaw.com
bdclark@locklaw.com
aswagner@locklaw.com
samorbey@locklaw.com
smowen@locklaw.com
smlundberg@locklaw.com

*/s/ Bobby Pouya*
Bobby Pouya
Clifford H. Pearson
Daniel L. Warshaw
Michael H. Pearson
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 92403
T: (818) 788-8300
cpearson@pwlaw.com
dwarshaw@pwlaw.com
bpouya@pwlaw.com
mpearson@pwlaw.com

Melissa S. Weiner (MN #0387900)
PEARSON WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
T: (612) 389-0600
mweiner@pwlaw.com

- 7 -

Bruce L. Simon
Benjamin E. Shiftan
Neil Swartzberg
PEARSON WARSHAW, LLP
350 Sansome Street, Suite 680
San Francisco, CA 94104
T: (415) 433-9000
F: (415) 433-9008
bsimon@pwlaw.com
bshiftan@pwlaw.com
nswartzberg@pwlaw.com

*Co-Lead Class Counsel for Direct Purchaser Class*

*/s/ Shawn M. Raiter*
Shawn M. Raiter (MN# 240424)
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
T: (651) 312-6518
sraiter@larsonking.com

*/s/ Blaine Finley*
Jonathan W. Cuneo
Joel Davidow
Blaine Finley
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
T: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.co

*Co-Lead Counsel for Commercial and Institutional Indirect Purchaser Class*

- 8 -