

Samuel J. Randall
Direct Line: 305-381-7484
Email: srandall@knpa.com

FOUR SEASONS TOWER
1441 BRICKELL AVENUE
SUITE 1100
MIAMI, FLORIDA 33131
TELEPHONE 305.373.1000
FACSIMILE 305.372.1861
WWW.KNPA.COM

**REDACTED PUBLIC VERSION**

February 3, 2023

Honorable John R. Tunheim                                               *Via CM/ECF*
United States District Judge
U.S. District Court, District of Minnesota
300 South Fourth Street
Minneapolis, MN  55415

    Re:   *In re Pork Antitrust Litigation,* Case No. 18-cv-1776

Dear Judge Tunheim:

    The Court should deny Triumph's letter request for leave to file an early summary judgment brief, more than 15 months before the due date set by the Court.  *See* ECF 1651.  At the request of all parties in the MDL (including Triumph), the Court recently scheduled briefing on such motions after completion of expert discovery.[1]  It would be inefficient and unduly prejudice DAPs to have one Defendant's motion briefed now.  Although there is both direct and circumstantial evidence of Triumph's participation in the conspiracy, DAPs are in the process of preparing expert disclosures – due on June 5, 2023 – that are relevant to the Court's consideration of any summary judgment motion.  Triumph's request is nothing more than an attempt to force briefing on an incomplete record and create additional work for the Court.

    Triumph's request also reflects a fundamental misunderstanding of the law governing antitrust conspiracies and the process through which such cases proceed.  Under the governing law, courts evaluate circumstantial evidence of a Section One Sherman Act conspiracy based on certain "plus factors."  *See, e.g., Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*, 203 F.3d 1028, 1033 (8th Cir. 2000).  Expert testimony is potentially important in considering many of the Eighth

---

[1] Although the parties disagreed as to the exact due date for Plaintiffs' expert reports, all parties, including Triumph, agreed that summary judgment motions should follow expert discovery.  Defendants advocated for an April 17, 2024 deadline for summary judgment motions, while DAPs requested May 17, 2024.  *See* ECF No. 1606.

TEXAS OFFICE
THE CARILLON
2630 EXPOSITION BOULEVARD, 203A
AUSTIN, TEXAS 78703
TELEPHONE 512.480.8023
FACSIMILE 512.480.8037

WASHINGTON SATELLITE OFFICE
1101 PENNSYLVANIA AVE., N.W. 3RD FLOOR
WASHINGTON, D.C. 20004-2436
TELEPHONE 202.756.4373
FACSIMILE 202.756.7323

**Honorable John R. Tunheim** February 3, 2023

**Page 2**

---

Circuit's plus factors, including "(1) a shared motive to conspire; (2) action against self-interest; [and] (3) market concentration." *See id.* For example, DAPs intend to show through expert testimony that the pork industry was concentrated and that Triumph had a shared motive to conspire with its co-Defendants. It would therefore deprive DAPs of a meaningful opportunity to respond to Triumph's motion if the Court requires early summary judgment briefing. Indeed, there is a reason that Triumph does not cite to any antitrust case in which a court ordered briefing on the "plus factors" analysis prior to the completion of expert discovery – to the best of Plaintiffs' knowledge, no court has ever done so. This Court should not be the first.

Further, by requiring briefing on an incomplete record, Triumph's request would create substantial inefficiencies. As this Court is well aware, when an antitrust plaintiff produces direct evidence of agreement, this ends the inquiry into the sufficiency of that plaintiff's proof. *In re Cattle Antitrust Litig.*, No. 19-cv-1129 (JRT/HB), 2020 WL 5884676, at *4 (D. Minn. Sept. 29, 2020) ("Allegations of direct evidence of an agreement, if sufficiently detailed, are independently adequate."). As explained below, there is direct evidence of Triumph's participation in the alleged conspiracy that would warrant the denial of Triumph's proposed motion, even on an incomplete record. DAPs submit that, if briefed, the Court should deny Triumph's summary judgment motion at this juncture based on the direct evidence of Triumph's participation in the conspiracy (as detailed below). However, it would run contrary to Eighth Circuit law to grant the proposed motion for summary judgment without consideration of expert testimony that is relevant to the motion. In other words, the only two legally appropriate resolutions to Triumph's proposed motion *at this juncture* are to deny it, or to hold it in abeyance following the completion of expert discovery and to consider it with the other Defendants' dispositive motions due in May 2024.

Moreover, because conspiracy evidence often implicates multiple Defendants at the same time, it would be much more efficient for the parties to brief, and the Court to consider, all summary judgment motions at the same time and on a complete record. Some of the same evidence and issues relevant to Triumph's proposed summary judgment motion would need to be presented again to the Court in response to later-filed motions for summary judgment from other Defendants.

Triumph's letter also reflects apparent confusion concerning the conspiracy that DAPs allege and the record evidence developed of Triumph's participation in that conspiracy.[2] For example, Triumph misstates DAPs' alleged conspiracy as limited to a reduction of hog-breeding sows. But DAPs' allegation is that Triumph conspired to increase the price of pork it sold in the United States. Triumph and its co-Defendants implemented this conspiracy through at least four concerted and interrelated means: (1) they coordinated to reduce and/or maintain the number of

---

[2] Triumph's assertion that it did not own sows also elides the extent to which it was vertically integrated. Triumph is a pork processing company and its corporate parents (the Triumph members that control the company's actions) all raise hogs. This indirect ownership of the sows that Triumph processed did not prevent it from conspiring to limit the supply of sows in the United States, as detailed in Ex. 1.



**Honorable John R. Tunheim** February 3, 2023

Page 3

---

sows that birthed hogs; (2) they allocated market share above which each Defendant agreed to not slaughter hogs for domestic consumption; (3) they coordinated to further decrease domestic supply of pork by increasing exports; and (4) they exchanged confidential competitive information on production, sales prices and profits, including through Agri Stats, to further increase pork prices and monitor their conspiracy.

Triumph participated in each aspect of this conspiracy. Indeed, there is *direct* evidence of Triumph's participation in both the sow and export supply restraints. Specifically, in March 2016, a member of Triumph's Board of Managers met with a senior Tyson executive and informed that executive that Triumph and Seaboard – which were planning to build a new processing facility – had a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[3] Because the document explicitly acknowledges the existence of an agreement between Triumph and Seaboard to not "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" without requiring any additional inference, this document is direct evidence of Triumph's participation in the conspiracy. The evidence also negates Triumph's argument that its indirect sow ownership rendered it incapable of taking steps to reduce or maintain the supply of sows in the United States.

There is also direct evidence that Triumph's sales agent (Seaboard) fixed prices on pork exports. On July 27, 2009, ▇▇▇▇▇▇ (Seaboard) spoke with a manager of international sales at Farmland (a part of Smithfield), and then reported to colleagues that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[4] Once again, no inference is required for the fact finder to conclude that an agreement existed – Triumph's sales agent acknowledged reaching such an agreement and the steps that Smithfield would take to implement it.

Although this evidence, even standing alone, creates a question of fact as to Triumph's participation in the alleged conspiracy, it would still be inefficient to brief summary judgment now. This is because, as noted above, in a conspiracy case, evidence that implicates one Defendant may also tend to implicate other Defendants as well. Indeed, just as these two cited documents support the conclusion that Triumph conspired, they are also relevant to the liability of Smithfield, Seaboard, and Tyson. And there are many more additional documents upon which DAPs will rely at summary judgment or trial that will implicate all Defendants in the conspiracy that DAPs allege.

Plaintiffs' expert reports are not due until June 5, 2023, and Plaintiffs' rebuttal expert reports are not due until March 10, 2024, with summary judgment motions to be filed on May 17,

---

[3]   Ex. 1 (TF-P-001292691).

[4]   Ex. 2 (SBF0181716).



**Honorable John R. Tunheim**  February 3, 2023
**Page 4**

2024.  *See* ECF No. 1651.  Triumph has not set forth any valid reason why the Court should modify this carefully calibrated schedule to which it previously agreed.

Regards,

Samuel J. Randall
*Submitted on behalf of all DAPs*

SJR:mb

Enclosures

655088

