# HUSCH BLACKWELL

Christopher A. Smith
Partner

190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Direct: 314.480.1836
Fax: 314.480.1505
chris.smith@huschblackwell.com

February 6, 2023

**VIA CM/ECF**
Hon. John R. Tunheim
United States District Judge
U.S. District Court, District of Minnesota
Warren E. Burger Federal Building
316 N. Robert Street
St. Paul, MN 55101

Re:     *In re Pork Antitrust Litigation*, Case No. 0:18-cv-1776 (JRT/JFD)
Reply Letter in Support of Triumph Food, LLC's ("Triumph") Motion for Leave to
File Summary Judgment as to the Direct Action Plaintiffs' ("DAPs") Consolidated
Amended Complaint (Doc. 1761).

Dear Judge Tunheim:

Triumph has endured two years of scorched-earth antitrust discovery costing the company millions
of dollars and countless hours away from its primary objective—producing pork.  Plaintiffs have
not only deposed every Triumph CEO in the history of the company, the hog procurement officer,
and the senior accounting team, but they also received documents and data touching every aspect
of Triumph's business, including every hog that went in and every pound of pork that went out of
Triumph's facility in St. Joseph, Missouri.  Those documents tell a clear narrative, but one that
DAPs do not want heard.

DAPs allege Triumph was part of a conspiracy to fix pork prices by reducing the supply of pork.
That is a hard allegation to make against a company that only exponentially grew during the alleged
reduction conspiracy.  They allege that Triumph reduced sow herds so that its packing facility
produced less pork.  Yet Triumph has no sows at all, and the record shows that during the alleged
"sow reduction" Triumph was purchasing more hogs and processing more pork, and at a rapid
pace.  They allege that Triumph manipulated exports—an allegation that is ridiculous on its face.
Triumph does not control exports.  In fact, Triumph does not and cannot sell or price the pork it
produces.  Triumph simply processes pork.

Plaintiffs may want to attempt to distract from the *undisputed* facts set forth in Triumph's proposed
motion or try to offer "facts" of their own.  They are free to do so in response to the motion after
it is filed.  But that is no basis to deny leave.  DAPs' opposition (Doc. 1798) is a smoke screen.
Each of their points actually demonstrates why Triumph's motion should be heard
now.  Addressing their points in turn:

Husch Blackwell LLP

# HUSCH BLACKWELL

Page 2

1.  **DAPs do not need "plus factor" evidence**:  DAPs argue they need time to develop expert evidence as to "plus factors."  Triumph's motion has nothing to do with "plus factors," because "plus factors" are irrelevant where, as here, DAPs have no evidence of any conduct by Triumph demonstrating participation in DAPs' alleged reduction conspiracy.  DAPs do not need "plus factors" evidence to address the threshold questions raised in Triumph's motion.

2.  **DAPs are free to oppose Triumph's motion with their "direct evidence"**:  DAPs say they have "direct evidence" of an agreement "by Triumph" to participate in the conspiracy.  Assuming they believe that to be true, they can submit the evidence in response to Triumph's motion.  Perhaps the reason they do not want to is because the so-called evidence they preview in their letter is evidence of nothing, is not even admissible, and is irrelevant as to Triumph.[1]

3.  **If Triumph materially misunderstands DAPs' case, DAPs may say so in briefing with evidence:**  DAPs suggest that Triumph has their liability theory wrong and that it is more than simply reducing sow herds or diverting domestic sales to exports, but that it also includes "coordinating" with codefendants on those matters, exchanging information through Agri Stats, and "allocating market share."  DAPs' suggestion makes Triumph's confusion (if any) entirely understandable, because DAPs have never pinpointed exactly what Triumph did to participate in the purported conspiracy, leaving Triumph to make educated guesses.  (Indeed, DAPs reveal their "market share allocation" theory for the first time—*ever*—in their opposition.)  No matter.  DAPs are free to raise these arguments in response to Triumph's motion.  If DAPs believe they have pled viable theories and can support those with admissible evidence to challenge Triumph's motion—something they tellingly do not say they have—they are free to raise that evidence in response to Triumph's motion.  DAPs offer nothing to show Triumph's motion should not be heard now.  Just the opposite.

4.  **Triumph never "agreed" to defer its request for leave to file summary judgment:**  Both DAPs and Class Plaintiffs state that Triumph "agreed" that no summary judgment motion would be filed before merits expert discovery.  That representation is inaccurate, and Plaintiffs have since told Triumph they did not intend to make that representation to

---

[1] This letter request is not the place to debate the purported evidence, but what DAPs preview as "direct evidence" demonstrates why summary judgment should be heard now.  The first piece of "direct evidence" DAPs offer is hearsay upon hearsay, in a document Triumph had no hand in creating or producing.  It is neither admissible nor direct evidence, much less evidence of an agreement by Triumph.  DAPs' creative speculation as to its meaning is just that: unsupported speculation that has no evidentiary support.  The second piece of "direct evidence" is a document that is meaningless, but even if it had any clear meaning, Plaintiffs concede it has absolutely nothing to do with Triumph.  Again, even if Plaintiffs' evidence were direct, admissible, or relevant to Triumph, it is properly the subject of briefing in opposition to Triumph's summary judgment motion—not a reason to prevent Triumph's motion from being heard now.  Triumph welcomes the opportunity to test DAPs' supposed evidence against the actual record in this case.

## HUSCH BLACKWELL

Page 3

the Court.[2]  Regardless, the Federal Rules of course permit summary judgment at any time.  And there is not a single line of text in any pretrial order or case management conference transcript that changes that for this case; in fact, the Court has contemplated the possibility of early summary judgment motions for years. *See* Doc. 658 at 17.  Triumph has indicated for months in case management conferences, pre-conference submissions, and direct correspondence to DAPs it would be seeking leave to file its motion.  No plaintiff has ever raised such an objection before, despite numerous opportunities to do so.

5. **DAPs' "efficiency" argument ignores the targeted scope of Triumph's motion:** Finally, DAPs argue that briefing summary judgment now will create inefficiencies because DAPs' alleged evidence "might" involve multiple Defendants.  This is merely an effort to infuse complexity and confusion where none exists.  The basis of Triumph's motion is simple and straightforward; it is singularly focused on Triumph's conduct (or lack thereof), not whatever conduct evidence Plaintiffs believe they have regarding other Defendants.  If DAPs have no evidence that Triumph participated in their reduction conspiracy cartel, what others may or may not have done is irrelevant.  Efficiency and justice dictates allowing Triumph an opportunity to be heard and heard now.

For all these reasons, Triumph respectfully requests leave to file summary judgment on this narrow, and conclusive, record.

Respectfully submitted,

*/s/ Christopher A. Smith*
Counsel for Defendant
Triumph Foods, LLC

---

[2] DAPs and Class Plaintiffs filed letters that state that Triumph "agreed that summary judgment motions should follow expert discovery" (DAPs' opposition, Doc. 1798, at 1 n.1) or "agreed … that merits expert discovery should proceed before summary judgment filings" (Class opposition, Doc. 1800, at 1).  After receiving these submissions, on Monday, February 6, 2023, counsel for Triumph and counsel for Plaintiffs had a meet and confer during which Plaintiffs' counsel confirmed that they did not intend to represent Triumph had "agreed" to defer a motion for leave to file an early summary judgment motion, but rather that Plaintiffs believe Triumph's motion is inconsistent with the Court's order regarding merits expert discovery and dispositive motions. Defendants had made clear in meet and confers leading up to the entry of the proposed scheduling order that the summary judgment deadline was not intended to preclude any party from filing a motion for leave to file a summary judgment motion before the deadline.