## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>ALL ACTIONS BROUGHT BY DIRECT<br>ACTION PLAINTIFFS | Civil No. 18-cv-1776-JRT-JFD<br><br>The Honorable Judge John R. Tunheim |

## REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION
## TO DISMISS THE DIRECT-ACTION PLAINTIFFS' CLAIMS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ............................................................................................... 1

II.     DAPS' TIME-BARRED CLAIMS CANNOT BE REVIVED BY
        FRAUDULENT CONCEALMENT OR AMERICAN PIPE TOLLING ................. 2

        A.      DAPs Failed to Adequately Plead Fraudulent Concealment. ........................ 2

                1.      DAPs' Allegations of Pretextual Statements Do Not Plead
                        Fraudulent Concealment. ........................................................... 3

                2.      "Secret Meetings" Do Not Constitute Acts of Concealment. ............... 6

                3.      Surreptitious Communications Do Not Establish Fraudulent
                        Concealment. ............................................................................ 7

                4.      DAPs Failed to Sufficiently Allege Diligence. ...................................... 9

        B.      *American Pipe* Does Not Apply to DAPs' PSA and Multi-Ingredient
                Claims. ............................................................................................ 10

III.    DAPS' FAILURE TO ALLEGE A VIOLATION OR INJURY "RELATING
        TO THE PURCHASE, SALE, OR HANDLING OF LIVESTOCK" IS
        FATAL TO THEIR PSA CLAIM. ..................................................................... 11

IV.     CERTAIN DAPS FAIL TO PLAUSIBLY ALLEGE THAT MULTI-
        INGREDIENT PRODUCTS AND BY-PRODUCTS WERE AFFECTED BY
        THE PURPORTED CONSPIRACY ................................................................. 12

V.      CONCLUSION ................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**CASES**

*Accent Delight Int'l Ltd. v. Sotheby's*,
   2023 WL 2307179 (S.D.N.Y. Mar. 1, 2023) ........................................................................6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................7

*In re Cattle Antitrust Litigation*,
   2021 WL 7757881 (D. Minn. Sept. 14, 2021) .....................................................................12

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
   523 F.2d 389 (6th Cir. 1975) .................................................................................................9

*In re Fla. Cement & Concrete Antitrust Litig.*,
   746 F. Supp. 2d 1291 (S.D. Fla. 2010) ................................................................................13

*GO Computer, Inc. v. Microsoft Corp.*,
   508 F.3d 170 (4th Cir. 2007) .................................................................................................4

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009) ................................................................................10

*Hope v. Klabal*,
   457 F.3d 784 (8th Cir. 2006) .................................................................................................9

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................................................14

*Litovich v. Bank of Am. Corp.*,
   568 F. Supp. 3d 398 (S.D.N.Y. 2021) ................................................................................3, 6

*In re Milk Prods. Antitrust Litig.*,
   84 F. Supp. 2d 1016 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999) ........4, 6, 7, 8, 9

*New Prime, Inc. v. Eaton Corp.*,
   2017 WL 5992466 (W.D. Mo. Mar. 16, 2017) .............................................................3, 8, 9

*Padilla v. Porsche Cars N. Am., Inc.*,
   2020 WL 1472301 (S.D. Fla. Mar. 24, 2020) .......................................................................3

*Pocahontas Supreme Coal Co.*, *Inc. v. Bethlehem Steel Corp.*,
   828 F.2d 211 (4th Cir. 1987) ................................................................4

*In re Pork Antitrust Litig.*,
   495 F. Supp. 3d 753 (D. Minn. 2020)................................................1, 2, 3, 9

*Premium Props. Unlimited, LLC v. Mercantile Bank Mortg. Co.*,
   732 F. App'x 414 (6th Cir. 2018) ..........................................................8

*In re Processed Eggs Products Antitrust Litigation*,
   2011 WL 4945864 (E.D. Pa. Oct. 17, 2011) ...............................................13

*Ripplinger v. Amoco Oil Co.*,
   916 F.2d 441 (8th Cir. 1990) ............................................................1, 8

*Rx.com v. Medco Health Sols.*, *Inc.*,
   322 F. App'x 394 (5th Cir. 2009) .......................................................4, 8, 9

*SD3, LLC v. Black & Decker (U.S.), Inc.*,
   215 F. Supp. 3d 486 (E.D. Va. 2016) .......................................................6

*In re Sugar Industry Antitrust Litigation*,
   579 F.2d 13 (3d Cir. 1978) ...............................................................13

*Sullivan v. DB Invs.*,
   667 F.3d 273 (3d Cir. 2011)  .............................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ....................................................13

*United States v. Perdue Farms, Inc.*,
   680 F.2d 277 (2d Cir. 1982) ..............................................................12

*In re Wholesale Grocery Prods. Antitrust Litig.*,
   722 F. Supp. 2d 1079 (D. Minn. 2010)....................................................4, 9

*In re Wirebound Boxes Antitrust Litigation*,
   128 F.R.D. 262 (D. Minn. 1989) ...........................................................6

*Zarecor v. Morgan Keegan & Co.*,
   801 F.3d 882 (8th Cir. 2015) .............................................................10

*In re Zinc Antitrust Litig.*,
   155 F. Supp. 3d. 337 (S.D.N.Y. 2016) .....................................................13

**STATUTES**

7 U.S.C. § 213 ...................................................................................................................12

## I.    INTRODUCTION

The "heart" of DAPs' consolidated complaint is that Defendants carried out a decades-long conspiracy that "was agreed to and conducted in part via public statements between the Defendants."  *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 774 (D. Minn. 2020) ("*Pork*").  Just like Class Plaintiffs, DAPs allege that Defendants publicly disclosed "their supply restriction efforts in public earnings calls and other sources" and that "each of the Packer/Processor Defendants and Co-Conspirators exploited these public statements to communicate their planned supply restrictions to their competitors in furtherance of the conspiracy."  DAPCC ¶ 264.  DAPs' "belief that Defendants conducted this conspiracy via public statements" cannot be reconciled with their assertion that "Defendants were also concealing it."  *Pork*, 495 F. Supp. 3d at 774.  Nothing in DAPs' consolidated complaint or their Opposition warrants revisiting the Court's holding.

Fraudulent concealment requires "an act of affirmative misrepresentation *over and above the acts* creating the alleged cause of action."  *Ripplinger v. Amoco Oil Co*., 916 F.2d 441, 442 (8th Cir. 1990) (emphasis added).  Merely pointing to acts in furtherance of the alleged conspiracy and complaining that Defendants failed to admit to wrongdoing—as DAPs and Class Plaintiffs have done—is plainly insufficient.  To hold otherwise would nullify the statute of limitations in every conspiracy case.  Such expansion of the fraudulent-concealment doctrine would be particularly "illogical" in a case like this where DAPs (and Class Plaintiffs) "made public statements an essential part of their conspiracy allegations." *Pork*, 495 F. Supp. 3d at 773.  DAPs' time-barred claims should thus be dismissed.

DAPs' PSA claims and multi-ingredient and by-product claims should be dismissed

1

in their entirety on the separate grounds that DAPs failed to state a cause of action.  DAPs'
failure to allege any injury "relating to the purchase, sale, or handling of livestock" is fatal
to their PSA claims.  DAPs likewise failed to allege any facts plausibly showing that
Defendants conspired to restrict the supply of pork by-products, and DAPs now foreswear
any claims based on multi-ingredient products.  Accordingly, the Court should grant
Defendants' Motion.

## II.   DAPS' TIME-BARRED CLAIMS CANNOT BE REVIVED BY FRAUDULENT CONCEALMENT OR AMERICAN PIPE TOLLING

DAPs allege that Defendants' purported conspiracy started at least as early as January
2009 and raised pork prices by late 2009.  Mem. 14.  Because DAPs did not sue until nearly
a decade later, "the statute of limitations has run unless exceptions apply."  *Pork*, 495 F.
Supp. 3d at 772.  Neither of the exceptions DAPs invoke—fraudulent concealment and
*American Pipe* tolling—supports DAPs' overreaching claim that they may seek damages
back to 2009.  Instead, the Court should dismiss all Sherman Act claims that accrued before
June 29, 2014, and all PSA and multi-ingredient/by-product claims that accrued more than
four years before the filing of their individual complaints.

### A.   DAPs Failed to Adequately Plead Fraudulent Concealment.

DAPs acknowledge that they "allege the same basic pork supply reduction
conspiracy as the Direct Purchaser Class."  Opp. 28.  Class Plaintiffs and DAPs both allege
that Defendants coordinated supply cuts via extensive public statements that supposedly
evidence the conspiracy.  Mem. at 16-17.  As this Court reasoned in rejecting Class
Plaintiffs' fraudulent-concealment claim, allegations of coordination through public
statements cannot be reconciled with the assertion that Defendants fraudulently concealed

the conspiracy.  *Pork*, 495 F. Supp. 3d at 774; *accord Padilla v. Porsche Cars N. Am., Inc.*, 2020 WL 1472301, at *4 (S.D. Fla. Mar. 24, 2020) (defendant cannot fraudulently conceal publicly disclosed information); *New Prime, Inc. v. Eaton Corp.*, 2017 WL 5992466, at *4 (W.D. Mo. Mar. 16, 2017) (same); *Litovich v. Bank of Am. Corp.*, 568 F. Supp. 3d 398, 440-41 (S.D.N.Y. 2021) (same).

DAPs insist that a different result is compelled here because they allege that Defendants (1) proffered pretextual explanations for their supply cuts; (2) discussed supply cuts in secret meetings; and (3) communicated surreptitiously to prevent or otherwise limit records of their communications.  Opp. 14-22.  But the Class Plaintiffs made the same kinds of allegations, which the Court found inadequate to support fraudulent concealment in the face of extensive public statements that disclosed the conspiracy.  *See Pork*, 495 F. Supp. 3d at 773 (noting that Class Plaintiffs alleged that Defendants concealed the conspiracy with (1) "pretextual (non-conspiracy) reasons to explain why production was slowing"; (2) "secret meetings";  and (3) "use of the telephone or in-person meetings in order to prevent the existence of written records" and "limiting any explicit reference to competitor pricing or supply restraint communications on documents"); *see also* Dkt. 431 ¶¶ 106, 133, 181-186; Dkt. 432 ¶¶ 110, 120, 137, 185-190, 262, 264; Dkt. 392 ¶¶ 156-162.  Even having had the benefit of extensive discovery, DAPs are unable to muster any materially different allegations that warrant revisiting the Court's rejection of Class Plaintiffs' fraudulent-concealment claim.

### 1.    DAPs' Allegations of Pretextual Statements Do Not Plead Fraudulent Concealment.

DAPs argue that Defendants fraudulently concealed the conspiracy by attributing

price increases to non-conspiratorial factors such as increased input costs.  Opp. 19.  Class Plaintiffs likewise alleged that Defendants fraudulently concealed the conspiracy by offering pretextual statements.  *See, e.g.*, Dkt. 431 ¶¶ 133 (alleging that Defendants couched their supply restrictions "in pretext so as to conceal what was really occurring"), 186 (alleging that in June 2012, Smithfield "attributed the stability in the pork market to other reasons" than the alleged conspiracy).  The Court has already held that such allegations are insufficient to establish fraudulent concealment.

*First*, "[s]imply denying the existence of an antitrust violation" or "attribut[ing] the change in prices to factors other than an illegal conspiracy" "does not constitute fraudulent concealment."  *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1023 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999).  To hold otherwise "would effectively nullify the statute of limitations in these cases."  *Id.* (citing *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218–19 (4th Cir. 1987)); *accord GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 179 (4th Cir. 2007); *Rx.com v. Medco Health Sols., Inc.*, 322 F. App'x 394, 398 (5th Cir. 2009); *In re Wholesale Grocery Prods. Antitrust Litig.*, 722 F. Supp. 2d 1079, 1085 (D. Minn. 2010); *see also* Mem. at 18 (citing cases).

*Second*, DAPs failed to allege facts plausibly showing that Defendants actually made any false, pretextual statements.  For example, Plaintiffs argue that Defendants claimed that "the PEDv outbreak in 2013 and 2014 [was] causing higher prices, despite internal recognition that these claims were mere pretext."  Opp. 19 (citing DAPCC ¶¶ 398, 399). But DAPs themselves concede, just like Class Plaintiffs, that the PEDv outbreak "disrupted" the ability of producers to "readily supply pork to the market," "caused industry supply

disruptions," and "muted" pork production in 2014, thereby admitting that this massive, industrywide epidemic had an impact on pork prices. DAPCC ¶¶ 260, 321, 347. In any event, DAPs do not identify a single purportedly false statement about PEDv that any of the Defendants communicated to DAPs. Instead, they merely cite one document acknowledging that unidentified packers leveraged the PEDv shortage to obtain higher prices and another suggesting that PEDv did not have a significant impact on the price for pork belly. *Id.* ¶¶ 398, 399. These two non-examples do not remotely satisfy DAPs' burden under Rule 9(b).

Other examples of false pretexts are equally meritless. DAPs argue that Clemens made "significant adjustments" in its pricing to Nestle Purina based on Agri Stats reports and that Clemens' CFO suggested that his sales executive explain the price increases by citing to Agri Stats reports. Opp. 21. But this vague allegation does not even identify any statement anyone actually made to a DAP, much less a false one. Likewise, DAPs allege that certain Defendants claimed that increases in raw material and input costs were responsible for increases in pork prices, but DAPs allege nothing plausibly showing that these statements were false. *Id.* at 20. At most, DAPs allege that certain Defendants' internal documents show that short supply also contributed to price increases. *Id.*[1]

*Third*, DAPs failed to allege that any purported pretextual statements were actually

---

[1] While the Court cannot, on a motion to dismiss, weigh the underlying factual record to reaffirm its fraudulent-concealment ruling, Defendants note that DAPs' allegations consistently mischaracterize the record, and, in many instances, the Opposition asks the Court to credit baseless allegations. The DAPs' claim that Defendants made false statements about price increases is an example. Opp. 7, 20. Given the seriousness of that charge in a litigation implicating significant ongoing commercial relationships, Defendants feel compelled to state that it is not true and not supported by the record.

communicated to DAPs.  This is fatal because "the fraudulent 'cover-up' must have been directed to the plaintiff him or herself."  *Accent Delight Int'l Ltd. v. Sotheby's*, 2023 WL 2307179, at *13 n.8 (S.D.N.Y. Mar. 1, 2023); *accord Milk Prods.*, 84 F. Supp. 2d at 1024 ("Plaintiffs must also allege that this concealment was successful—that is, that as a result of Defendants' concealment, Plaintiffs failed to discover the existence of the antitrust claim."). DAPs' generalized allegations that Defendants made false statements to customers or the public at large are insufficient to plead fraudulent concealment under Rule 9(b).  *Litovich*, 568 F. Supp. 3d at 440-41.

### 2.    "Secret Meetings" Do Not Constitute Acts of Concealment.

DAPs' allegations that Defendants held clandestine meetings—particularly through the Pork Club—do not plead fraudulent concealment.  Opp. 15, 18, 22.  Indeed, the Court rejected the Class Plaintiffs' fraudulent-concealment claim even though they alleged the exact same thing.  *See, e.g.*, Dkt. 431 ¶¶ 106 (alleging that Defendants discussed competitive issues through the Pork Club, which had a no-attribution rule limiting disclosure of discussions held at the meetings), 113 (alleging that pork supply was discussed at the Annual Meat Conference in 2016-2018).  Allegations that Defendants "participated in 'clandestine meetings' at which price fixing was discussed" do not constitute acts of concealment.  *Milk Prods.*, 84 F. Supp. 2d at 1023; *accord SD3, LLC v. Black & Decker (U.S.), Inc.*, 215 F. Supp. 3d 486, 497 (E.D. Va. 2016) (holding secret meetings "is neither fraudulent nor concealment").

*In re Wirebound Boxes Antitrust Litigation*, a case cited by DAPs, is not to the contrary.  There, the court found that plaintiffs' allegations that the defendants represented

to others that they were conducting trade-association meetings when in fact they were meeting in secrecy regarding the conspiracy constituted an act of concealment.  128 F.R.D. 262, 266 (D. Minn. 1989).  But "alleging that Defendants participated in 'clandestine meetings,' is not tantamount to representing to others that the meetings were valid trade association meetings when in fact they were meetings in furtherance of a conspiracy." *Milk Prods.*, 84 F. Supp. 2d at 1023 (cleaned up).  DAPs identify no statement made by any Defendant that misrepresented the Pork Club or any other trade associations.

Nor would such allegations even make sense here.  The Pork Club was allegedly attended by 60 industry participants, the vast majority of which are not alleged to have had anything to do with the purported conspiracy.  DAPCC ¶ 204.  Other trade-association meetings, such as the Annual Meat Conference, that DAPs allege were critical to the conspiracy were attended by hundreds of retailers.  In fact, a number of DAPs served on the planning committee for these meetings.  Mem. at 8.  DAPs do not dispute these facts, but argue that the Court should ignore them because Defendants cited extrinsic evidence outside the pleadings.  Opp. 26.  Not so.  These facts are apparent on the face of the documents that DAPs cite in their Complaint.  *See* DAPCC ¶ 212, n.51 (citing Robison Decl. Exs. A-C, Dkts. 1757-1, 1757-2, 1757-3).  Such documents may be considered on a Rule 12(b) motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, n.13 (2007).  And they compel the conclusion that Defendants did not attend "secret meetings" and never made any misrepresentations about them.

### 3.   Surreptitious Communications Do Not Establish Fraudulent Concealment.

DAPs' allegations that Defendants kept some of their conspiratorial communications

secret by avoiding written records do not constitute acts of concealment either.  Opp. 14-19,
21-22.  Class Plaintiffs also made the same allegations, but this Court held they were
insufficient to establish fraudulent concealment.  *See, e.g.*, Dkt. 431 ¶¶ 182 (alleging that
Defendants engaged in "surreptitious communications" "by the use of the telephone or in-
person meetings in order to prevent the existence of written records" and "limiting any
explicit reference to competitor pricing or supply restraint communications on documents");
185 (alleging that in December 2010, Smithfield's Larry Pope referred to information that
he obtained privately).  That DAPs reference additional exemplars of such purportedly
secret communications obtained through discovery does not compel a different result.

The Eighth Circuit requires that acts of concealment be "an act of affirmative
misrepresentation over and above the acts creating the alleged cause of action."  *Ripplinger*,
916 F.2d at 442; *accord Milk Prods.*, 84 F. Supp. 2d at 1022-23.  Exchange of information
is the very act that DAPs claim gives rise to their antitrust claims and thus cannot constitute
acts of concealment.  In any conspiracy case, plaintiffs will allege that the supposed
conspirators communicated with each other about the conspiracy.  If such communications
constituted fraudulent concealment, then there would be no limitations period in any
conspiracy case. Certainly, Defendants have no obligation to disclose their various
communications to DAPs or anyone else.  Concealing internal communications simply
"does not constitute an affirmative act of concealment."  *Premium Props. Unlimited, LLC
v. Mercantile Bank Mortg. Co.*, 732 F. App'x 414, 417–18 (6th Cir. 2018); *accord Medco*,
322 F. App'x at 398; *Eaton*, 2017 WL 5992466, at *3; *Milk Prods.*, 84 F. Supp. 2d at 1023.

In sum, none of the purported acts of concealment—pretextual explanations, secret

meetings, and covert communications—suffices to establish fraudulent concealment, particularly in light of the extensive public statements by Defendants that DAPs claim evidence the conspiracy. *Pork*, 495 F. Supp. 3d at 774; *Eaton*, 2017 WL 5992466, at *4; *Milk Prods.*, 84 F. Supp. 2d at 1023; *Medco*, 322 F. App'x at 398.

### 4. DAPs Failed to Sufficiently Allege Diligence.

Nearly every element of DAPs' contrived conspiracy was in the public domain by 2009. Defendants allegedly signaled their intentions to restrict pork supply through public statements by 2009. DAPCC ¶¶ 231, 258, 278, 283, 286, 294-96, 298, 305. Agri Stats also disclosed the type of detailed information contained in its reports in articles published in 2008 and 2009. Robison Decl. Exs. E, F, Dkts. 1757-5, 1757-6. According to DAPs, Defendants likewise publicly disclosed that they had access to their competitors' information. DAPCC ¶ 313. Moreover, since 2009, publicly-available data allegedly demonstrated abnormal wholesale and consumer pork prices, as well as unusual profits earned by Defendants. *Id*. ¶¶ 371-72, 383-87.

DAPs are sophisticated businesses who undoubtedly should have investigated the purported abnormal pork prices that they were paying and that were reported in government publications since 2009. *See Hope v. Klabal*, 457 F.3d 784, 792 (8th Cir. 2006) (detailing the standard of reasonable diligence for "a sophisticated business person"). Yet, DAPs only allege in nonspecific, conclusory fashion that they conducted a reasonable investigation, which is plainly insufficient to show the diligence required for DAPs to invoke fraudulent concealment. *See Wholesale Grocery*, 722 F. Supp. 2d at 1086; *Milk Prods.*, 84 F. Supp. 2d at 1024-25; *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975);

*Hinds Cnty., Miss. v. Wachovia Bank N.A*., 620 F. Supp. 2d 499, 521 (S.D.N.Y. 2009).

DAPs tacitly acknowledge that they have not adequately pled diligence, blaming the defect on having to "file a single complaint," which purportedly forced them "into group pleading over DAPs' objections." Opp. 11. Consolidated complaints do not relax or suspend normal pleading burdens. Even so, DAPs failed to include any allegations of specific inquiries they undertook in the individual complaints they filed before the filing of the consolidated complaint. DAPs had ample opportunity to allege facts showing that they exercised diligence to uncover their cause of action, but repeatedly failed to do so.

**B.    *American Pipe* Does Not Apply to DAPs' PSA and Multi-Ingredient Claims.**

There is no dispute whether the PSA claims are tolled under *American Pipe*. They are not, so the Court should dismiss the Kroger and Publix DAPs' PSA claims that accrued before December 2017 and the Action Meat DAPs' PSA claims that accrued before April 2018.

DAPs' multi-ingredient claims that accrued more than four years before the filing of their individual complaints should likewise be dismissed. The DPP class's claims plainly do not encompass "products and by-products containing pork," including "offal and individual parts . . . used in pet foods . . . and/or rendered products (e.g., meat meals and bone meal)." DAPCC ¶ 1 n.4. As the Eighth Circuit has held, "*American Pipe* tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action." *Zarecor v. Morgan Keegan & Co*., 801 F.3d 882, 888 (8th Cir. 2015). DAPs' contrary authority from the Ninth Circuit and the Eastern District of Pennsylvania does not justify disregarding the Eighth Circuit's clear guidance on the scope of *American Pipe* tolling.

**III.   DAPS' FAILURE TO ALLEGE A VIOLATION OR INJURY "RELATING TO THE PURCHASE, SALE, OR HANDLING OF LIVESTOCK" IS FATAL TO THEIR PSA CLAIM**

DAPs acknowledge that the PSA provides a private right of action only for violations of "provisions . . . relating to the purchase, sale, or handling of livestock," rather than for "any of the provisions of the PSA," as DAPs asserted in their complaint. *Compare* DAPCC ¶ 470 *with* Opp. 30. DAPs now make a statement that is just as baseless, however: "Defendants concede that DAPs allege that Defendants committed violations of the PSA relating to the 'purchase, sale, or handling or [sic] livestock." Opp. 30-31. Defendants concede no such thing, and DAPs' opposition fails to cure the deficiency raised in Defendants' motion.

DAPs make two arguments in support of a purported violation and injury "relating to the purchase, sale, or handling of livestock." First, they argue that "pork is dead swine." Opp. 31. As explained in Defendants' opening brief, however, "livestock" and "meat food products" like pork are mutually exclusive under the PSA; "meat food products" are defined as "edible" products while "livestock" is defined as a whole animal. *See* Mem. 24. DAPs argue that violations relating to meat food products are automatically also violations relating to livestock, but that would render the limitation of the private right of action a nullity.

DAPs next argue that their injuries relate to livestock because the purported "conspiracy included the reduction of swine." Opp. 31. As noted above, the PSA provides a private right of action only for injuries "relating to the *purchase*, *sale*, or *handling* of livestock." DAPs do not allege any purchase or sale of swine. And the alleged "reductions" are not a form of "handling" under the PSA. "Handling" refers to activities like feeding, watering, holding, delivering, shipping, weighing, loading and unloading for a third party—

not to a packer's decision on whether or when to slaughter sows in its own herd.  *See, e.g.*, *United States v. Perdue Farms, Inc.*, 680 F.2d 277, 282 n.4 (2d Cir. 1982).  "Handling" is thus generally performed by intermediaries like stockyards, not by packers.  *See* 7 U.S.C. § 213 (prohibiting *stockyards* from engaging in unfair practices with respect to handling and related services).

DAPs argue that the PSA "should be construed liberally to give effect to its purposes," but they fail to identify those purposes.  Opp. 30.  The legislative history states unequivocally that protecting livestock producers was the purpose expanding the private right of action to cover packers.  *See* Robison Decl. Ex. H (H. Rep. No. 94-1043) at 4-5 ("Purpose and Need for Legislation"), Dkt. 1757-8.  That is why Congress limited the private right of action to injuries relating to the purchase, sale, or handling of livestock; otherwise, Congress would have created a private right of action for any violation of the PSA.  This Court acknowledged these realities in *In re Cattle Antitrust Litigation* and should reaffirm that understanding here.  *See* 2021 WL 7757881, at *9 n.15 (D. Minn. Sept. 14, 2021) ("Only Producer Plaintiffs may bring a PSA claim . . . .").

## IV.   CERTAIN DAPS FAIL TO PLAUSIBLY ALLEGE THAT MULTI-INGREDIENT PRODUCTS AND BY-PRODUCTS WERE AFFECTED BY THE PURPORTED CONSPIRACY

Ironically, DAPs fault *Defendants'* purported lack of specificity about the products encompassed by DAPs' claims when it is *DAPs'* responsibility to put Defendants on notice of the scope of those claims.  Opp. 32.  Even worse, DAPs attempt to mislead the Court by asserting that Defendants "invented" DAPs' position that products like burritos are included.  *Id*. 33, 37-38.  DAPs moved to compel structured data for multi-ingredient products expressly

including "breakfast burritos" *because DAPs claimed burritos are covered by their claims*. Dkt. 1495. DAPs' allegations do not encompass such multi-ingredient products, however, as DAPs now seem to acknowledge; nor do DAPs provide any factual allegations relating to non-meat by-products like blood and bone meal. Any claim relating to multi-ingredient products and by-products must therefore be dismissed. *See* Mem. 25–27; *see also In re Zinc Antitrust Litig.*, 155 F. Supp. 3d. 337, 369 (S.D.N.Y. 2016) (factual allegations "just too little to push this conspiracy over the line into plausibility"); *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1319-20 (S.D. Fla. 2010) (allegations supported "something more modest" than a broad conspiracy involving multiple products).

Because DAPs now emphatically foreswear the inclusion of multi-ingredient products like burritos, dismissal of such products is a simple matter and would prevent DAPs from backtracking later. Defendants do not seek dismissal of further-processed pork products such as lunch meat, where other ingredients may be used to preserve or flavor a pork product like ham or loins. *See* Opp. 38.

With respect to by-products, DAPs first ask the Court simply to infer that the alleged conspiracy encompasses products like blood and bone meal despite the lack of any actual allegations about those products. None of the cases DAPs cite support DAPs' request. The defendants in *In re Processed Eggs* sought dismissal of any claimed conspiracy relating to *any and all* processed egg products, in a case the Court noted was *titled "In re Processed Eggs Products Antitrust Litigation," despite* allegations specifically about processed egg products. 2011 WL 4945864, at *3, *4 n.4 (E.D. Pa. Oct. 17, 2011) (noting allegations including "wholesale prices of shell eggs are closely linked to the prices of processed egg products").

*In re Sugar Industry Antitrust Litigation*, 579 F.2d 13 (3d Cir. 1978), and *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008), both addressed whether plaintiffs are categorically barred from bringing antitrust claims for purchases of products downstream from the price-fixed product, rather than the sufficiency of the allegations about the primary products at issue.

Here, in contrast, the question is squarely the adequacy of DAPs' factual allegations about by-products. DAPs answer that question themselves in their opposition: "DAPs' Complaint is focused on pork . . . ." Opp. 37. Not non-meat by-products like bone meal, which are far removed from any factual allegations in the complaint.

DAPs next try to hang their hat on the broad scope of products covered by settlement agreements with two defendants. DAPs cite no precedent for doing so. The case law shows instead that the scope of a settlement agreement has no bearing on the sufficiency of the underlying complaint. *See Sullivan v. DB Invs.*, 667 F.3d 273, 312 (3d Cir. 2011) (en banc) (certifying class settlement agreement has no bearing on "substantive adjudication of the underlying causes of action"). *Cf. In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 190, 194-97 (S.D.N.Y. 2005) (courts may certify settlement classes broader than classes certified earlier).

## V.   <u>CONCLUSION</u>

Defendants respectfully request that the Court grant Defendants' Motion for the reasons set forth above and in Defendants' memorandum in support of the Motion.

Dated: March 21, 2023                    /s/ Richard Parker

                                         Richard Parker (*pro hac vice*)
                                         Josh Lipton (*pro hac vice*)
                                         GIBSON, DUNN &CRUTCHER, LLP
                                         1050 Connecticut Avenue, N.W.
                                         Washington, D.C. 20036-5306
                                         (202) 955-8500
                                         rparker@gibsondunn.com
                                         jlipton@gibsondunn.com

                                         Brian Robison (*pro hac vice*)
                                         BROWN FOX PLLC
                                         6303 Cowboys Way, Suite 450
                                         Frisco, TX 75034
                                         (972) 707-1809
                                         brian@brownfoxlaw.com

                                         John A. Cotter (#0134296)
                                         John A. Kvinge (#0392303)
                                         LARKIN HOFFMAN DALY &
                                         LINDGREN LTD.
                                         8300 Norman Center Drive, Suite 1000
                                         Minneapolis, MN 55427-1060
                                         (952) 835-3800
                                         jcotter@larkinhoffman.com
                                         jkvinge@larkinhoffman.com

                                         ***Counsel for Smithfield Foods, Inc.***

/s/ Daniel E. Laytin, P.C.

Mark L. Johnson (#0345520)
Davida S. McGhee (#0400175)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
dwilliams@greeneespel.com

Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
Jenna M. Stupar (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
Jenna.stupar@kirkland.com

**Counsel for Clemens Food Group, LLC
and The Clemens Family Corporation**

/s/ Craig S. Coleman

Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
Isaac B. Hall (#0395398)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com
isaac.hall@faegredrinker.com

Jacob D. Bylund (*pro hac vice*)
Stephanie A. Koltookian (*pro hac vice*)
Robert C. Gallup (#0399100)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Ave., 33rd Floor
Des Moines, IA 50309
(515) 248-9000
jacob.bylund@faegredrinker.com
stephanie.koltookian@faegredrinker.com
robert.gallup@faegredrinker.com

John S. Yi (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2200
Philadelphia, PA 19103
(215) 988-2700
john.yi@faegredrinker.com

Jonathan H. Todt (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 842-8800
jonathan.todt@faegredrinker.com

**Counsel for Hormel Foods Corporation and
Hormel Foods, LLC**

/s/ Sami H. Rashid
Sami H. Rashid (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
Richard T. Vagas (*pro hac vice*)
David B. Adler (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
samirashid@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
richardvagas@quinnemanuel.com
davidadler@quinnemanuel.com

Donald G. Heeman (#0286023)
Jessica J. Nelson (#0347358)
Randi J. Winter (#0391354)
SPENCER FANE LLP
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402-4206
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

**Counsel for JBS USA Food Company**

/s/ William L. Greene
William L. Greene (#0198730)
Peter J. Schwingler (#0388909)
William D. Thomson (#0396743)
Jon W. Ripa (#0402069)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
peter.schwingler@stinson.com
william.thomson@stinson.com
jon.ripa@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

**Counsel for Seaboard Foods LLC**

/s/ Christopher A. Smith
Aaron Chapin (#0386606)
Christopher A. Smith (*pro hac vice*)
Tessa K. Jacob (*pro hac vice*)
A. James Spung (*pro hac vice*)
Jason Husgen (*pro hac vice*)
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Telephone: (314) 480-1500
aaron.chapin@huschblackwell.com
chris.smith@huschblackwell.com
tessa.jacob@huschblackwell.com
james.spung@huschblackwell.com
jason.husgen@huschblackwell.com

**Counsel for Triumph Foods, LLC**

/s/  Tiffany Rider Rohrbaugh
Tiffany Rider Rohrbaugh (*pro hac vice*)
Rachel J. Adcox (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
trider@axinn.com
radcox@axinn.com

Jarod Taylor (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8109
jtaylor@axinn.com

David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

**Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.**

*/s/ William L. Monts III* _____
Peter H. Walsh (#0388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
(612) 402-3000
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

**Counsel for Agri Stats, Inc.**