UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Sysco Corporation v. Agri Stats, Inc., et al.*<br>Case No. 21-CV-1374 | Case No. 18-CV-1776 (JRT/JFD) |
| IN RE: CATTLE AND BEEF ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Sysco Corporation v. Cargill, Inc., et al.*<br>Case No. 22-CV-1750 | Case No. 22-MD-3031 (JRT/JFD) |

**DECLARATION OF BARRETT G. FLYNN IN SUPPORT OF
MOTIONS TO PERMIT WITHDRAWAL OF COUNSEL**

Pursuant to 28 U.S.C. § 1746, Barrett G. Flynn declares as follows:

1. I am an Associate General Counsel, Litigation & Regulatory at Sysco Corporation ("Sysco") and an attorney admitted to practice law in Texas. I have been in my current role since 2019 and have held various in-house counsel roles at Sysco since 2013.

2. I supervise Sysco's antitrust litigations against protein suppliers pending in U.S. federal district courts, including the above-captioned actions, and have done so since their inception. I also have responsibility for Sysco's relationship with Burford Capital Limited ("Burford") related to Burford's investment in those antitrust claims, and have been Burford's principal point of contact with Sysco.[1]

---

[1] For purposes of this Declaration, "Burford" refers to Burford Capital Limited and other affiliated entities, including the Respondents in *Sysco Corp. v. Glaz LLC, et al.*, No 23-cv-1410 (N.D. Ill.).

1

**A.  Burford's Investment In Sysco's Antitrust Claims**

3.  Sysco and its related companies distribute food and related products to hundreds of thousands of restaurants, healthcare and educational facilities, lodging establishments, and other customers nationwide.  Sysco is a direct-action plaintiff in the above-captioned litigations ("*Pork*" and "*Beef*"), as well as the *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 (N.D. Ill.) (Durkin, J.) ("*Broilers*") (collectively, the "Antitrust Litigations").

4.  Sysco's lead counsel in these matters since the start of the Antitrust Litigations has been Boies Schiller Flexner LLP ("Boies Schiller"); the lead partner on the representation has been Scott Gant.

5.  In September 2019, Mr. Gant approached Sysco with a proposal from Burford, a multi-billion dollar litigation funding firm, which wanted to make an investment in Sysco's claims in the *Broilers* litigation.  Burford offered to provide Sysco with non-recourse capital in exchange for a share of proceeds of any future settlements of those claims.  Burford and Sysco negotiated the terms of the proposed investment and, after a due diligence process, in October 2019 the parties executed a litigation funding agreement through which Burford invested in Sysco's *Broilers* claims.  Over time, Burford proposed expanding the parties' relationship, and ultimately made additional investments in Sysco's *Pork* claims in June 2020 and in Sysco's *Beef* and other antitrust claims in December 2020 (the December 2020 Capital Provision Agreement is still in force between the parties and is referred to herein as the "CPA").

6.  As explained in more detail in Sysco's Petition to Vacate Arbitration Award filed in the U.S. District Court for the Northern District of Illinois, Burford and Sysco restructured their relationship in March 2022 through an amendment to the CPA (the

"Amendment"), which contained a provision that gives Burford a limited consent right over settlements in the Antitrust Litigations.[2]

**B. Sysco Negotiates Proposed Settlements and Burford Refuses to Consent**

7. Beginning in late 2021 and into 2022, Sysco engaged in settlement discussions with several antitrust defendants. After many months of arms'-length negotiations, including two full-day mediation sessions, in August 2022, Sysco reached agreements in principle with certain suppliers to settle Sysco's claims against them (the "Proposed Settlements"), including in the above-captioned litigations.

8. I relied on Sysco's outside counsel, Mr. Gant, throughout these negotiations. Mr. Gant participated in the mediation sessions personally, and I consulted with him regularly in connection with the negotiations that continued thereafter. Mr. Gant also assisted in the preparation of the draft settlement agreements. Throughout this process, Mr. Gant never advised me that he considered any component of the Proposed Settlements to be too low, or that he would advise Sysco against entering into any of them. In fact, Mr. Gant had earlier advised Sysco of the total estimated value of our claims in the *Broilers* litigation against all defendants; the relevant components of the Proposed Settlements fall within the range that Mr. Gant provided. Mr. Gant never advised Sysco that he no longer considered his advice to be reliable, nor did he ever provide a different range.

9. In late August and early September 2022, I participated in discussions with Burford by email and phone regarding the Proposed Settlements. On September 2, Kelly Daley, my contact at Burford, informed me by email that Burford did not consent to the Proposed Settlements and requested another call for the following week. I agreed, and we arranged to speak on September 6 on a call that would include Burford representatives, Mr. Gant, and me.

---

[2] *See Sysco Corp. v. Glaz LLC, et al.*, No. 23-CV-1451, ECF No. 18 (N.D. Ill. Mar. 20, 2023).

3

### C. September 2, 2022 Communications Among Burford and Boies Schiller

10. I have come to learn that between my September 2 call with Ms. Daley and our scheduled September 6 call among Burford, Sysco, and Mr. Gant, Jonathan Molot, Burford's Chief Investment Officer ("CIO"), threatened to sue Sysco in communications with his colleagues and then privately called Mr. Gant on September 2. I did not learn about the call between Mr. Molot and Mr. Gant until January 2023, as neither Burford nor Mr. Gant informed me of it before or after it took place. Instead, I only learned of this call when Burford produced documents in an arbitration Burford initiated against Sysco (the "Arbitration") that included Mr. Molot's internal summary of the call.[3] While I do not purport to be an ethics expert, it is hard for me to reconcile Burford's descriptions of its conversations with Mr. Gant with Mr. Gant's duties to Sysco as his client. It is certainly inconsistent with all of my interactions—both when I was in private practice and as an in-house lawyer—between attorney and client.

11. Mr. Molot wrote the summary "just" after he "spoke to Scott Gant." *See id.* According to Mr. Molot's written summary of his call with Mr. Gant—which, as noted above, was initiated by Burford at a time when it was actively contemplating asserting claims against Mr. Gant's client, Sysco—Burford's CIO first asked Mr. Gant to agree that the Proposed Settlements were unreasonably low, and Mr. Gant obliged. *See id.* According to the summary, Mr. Gant then added that his advice would be to reject the Proposed Settlements, something that Mr. Gant never communicated to Sysco. *See id.*[4] Per Mr. Molot's written summary of

---

[3] *See* Second Decl. of Patrick C. Swiber in Support of Am. Pet. to Vacate Arbitration Award Ex. J, *Sysco Corp. v. Glaz LLC, et al.*, No. 23-CV-1451, ECF No. 19-2 (N.D. Ill. Mar. 20, 2023).

[4] Burford's summary of the call inexplicably states that Mr. Gant asserted that Sysco never sought Boies Schiller's advice regarding the value of the Proposed Settlements, which is false. As noted above, Sysco involved, relied on, and consulted with Boies Schiller throughout the settlement process. The summary also attributes statements to Mr. Gant about Sysco's purported business reasons for desiring to accept the Proposed Settlements; Mr. Gant lacked any factual basis for making such statements, which entirely misrepresent Sysco's actual

4

the call, Mr. Gant then suggested that Sysco was undervaluing its claims and proactively opined to Burford's CIO that the terms of Burford's amended deal with Sysco left Sysco with little economic incentive to maximize settlement amounts. *See id.* In other words, Mr. Gant, who had participated in the settlement process for months, told Burford (who Mr. Gant and Boies Schiller represent in related litigation) that he thought Sysco's Proposed Settlements were too low *without* first telling that to his client Sysco.

12. Mr. Gant went even further. Mr. Molot's summary of the call next states that he told Mr. Gant that Sysco was creating an enormous problem for itself; clearly understanding the implication, Mr. Gant agreed and stated that Sysco was "buying a lawsuit with Burford" and shared his view that Sysco "seems to view that risk differently from how he [Mr. Gant] would view it." *See id.* Whatever Mr. Gant may have said to Burford concerning Burford's deal with Sysco, potential claims Burford could assert against Sysco, or the strength of such claims, Mr. Gant said nothing to me or Sysco on any of those topics, and did not inform me that he had discussed those topics with Burford. I am appalled that Mr. Gant did not just opine on a potential lawsuit against his own client, Sysco, but his words actively encouraged it.

13. As noted, Sysco's attorneys at Boies Schiller, including Mr. Gant, never disclosed the September 2 call to me, neither that it took place nor what was discussed. Based on what Mr. Gant *had* discussed with Sysco—including Mr. Gant's prior advice concerning a reasonable range of settlement values and his role in the negotiations themselves—I believed that Boies Schiller supported the Proposed Settlements. As he had been fully involved in the settlement process for months without expressing any concerns, I expected Mr. Gant to advocate for the Proposed Settlements on the scheduled September 6 call among Sysco,

---

position and views. Sysco believed then, and believes now, that the Proposed Settlements are reasonable resolutions of its claims, and rejected numerous lower offers.

5

Burford, and Mr. Gant. Even in preparatory discussions I had with Mr. Gant before the September 6 call with Burford, Mr. Gant gave me no warning of the ambush that was to come.

14. Consistent with Sysco's obligations under the CPA,[5] from time to time I authorized Mr. Gant to provide Burford with information relating to material case developments in the Antitrust Litigations. The CPA expressly protects Sysco's right not to have to share with Burford information that is subject to attorney-client privilege, *see id.* § 9.4, and the Irrevocable Instructions Sysco was required to sign permitting Burford to speak with Sysco's counsel are expressly subject to that limitation and all others in the CPA. I never gave Mr. Gant a blanket authorization to share any information with Burford without limitation, nor did I ever authorize Mr. Gant to share confidential, strategic, or otherwise privileged information with Burford. I certainly never authorized Mr. Gant to share with Burford views he had never shared with me. Because Mr. Gant would periodically confirm with me that I consented to him informing Burford about new litigation *developments*—and never specifically asked for authorization to discuss privileged matters with Burford—I was confident that Mr. Gant understood the limitations on what he could share with Burford, and believed Mr. Gant was keeping me informed about his relevant communications with Burford. Regardless of what Mr. Gant may have thought he could share with Burford (which in any event should not have included views he had never shared with Sysco), I cannot understand how any outside counsel could believe it was proper to express to his client's potential litigation adversary (as Mr. Molot told Mr. Gant on the call Burford was) the views that (i) his client was proceeding to settle "based entirely on their business considerations and not on the merits of the suits" (which was not only inappropriate for Mr. Gant to say to Burford, but also

---

[5] *See* Decl. of Patrick C. Swiber in Support of Pet. to Vacate Arbitration Award Ex. A, *Sysco Corp. v. Glaz LLC, et al.*, No. 23-CV-1451, ECF No. 2-1 (N.D. Ill. Mar. 8, 2023) (CPA).

entirely false),[6] (ii) his client was "buying a lawsuit," and (iii) that Sysco "did not seem as concerned about [that litigation risk] as he believed they should be."

15. I also trusted that Burford took seriously the covenants it made to Sysco in the CPA when communicating with Mr. Gant, including its commitment under Section 5.2(d) to "do nothing that compromises the professional duties of" Sysco's counsel. *See* CPA § 5.2(d). I understand this to encompass, among others, the duty to communicate material developments, provide candid advice, and preserve confidential information.

**D.  September 6, 2022 Call Among Sysco, Burford, and Boies Schiller**

16. On September 6, 2022, the scheduled call took place, and the participants in addition to myself and Mr. Gant were Ms. Daley, Mr. Molot, and (undisclosed to me on the call) Mark Klein, all from Burford. While the specific reasons are not relevant to Sysco's present Motions before this Court, I explained in detail on this call why Sysco believes that the Proposed Settlements are commercially reasonable, explained the merits of the settlements from Sysco's perspective, and responded fully to all of Burford's questions.

17. Mr. Molot threatened on this call that Burford would sue Sysco if it entered into any of the Proposed Settlements without Burford's consent. I also recall that Ms. Daley asserted that Burford had the contractual right to prevent Sysco from settling without its consent; I expressed my surprise and strong disagreement.

18. On the September 6 call, Mr. Gant also stated his supposed view that one component of the Proposed Settlements was too low. As noted above, Mr. Gant had never expressed that view to me in advance of that call, including in the many months we worked together on the Proposed Settlements, and I was shocked to hear him express that view for

---

[6] Another document produced by Burford in January 2023 indicates that, shortly before this September 2 conversation with Mr. Molot, Mr. Gant had told another Burford executive that Sysco's management had "checked out" with respect to the antitrust cases. Not only was it completely inappropriate for Mr. Gant to disparage his own client to Burford and stir up strife between the two, Mr. Gant's statement was also baseless and false.

7

the first time with Burford on the line. As noted, even in our preparatory discussion before the September 6 call with Burford, Mr. Gant did not state this view. I was taken aback to hear our lawyer share that view for the first time in an adversarial call with Burford during which Burford had threatened to sue Sysco, without any warning from Mr. Gant and in a way that undermined Sysco's position.

19.  I spoke to Mr. Gant in the days after the September 6 call, and he never once disclosed his September 2 call with Mr. Molot, or any of his prior communications with Burford about the settlements. I understand he likewise failed to disclose to Sysco's lawyers at Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb") on a September 9 call they had with Mr. Gant on which they specifically inquired about his communications with Burford.

20.  If Burford's summary is accurate, the secret September 2 conversation between Sysco's outside counsel and Burford, in which Mr. Gant offered Burford so-called "advice" regarding the value of the Proposed Settlements that he never shared with his client Sysco and which essentially encouraged Burford to pursue a claim against Sysco (and which Burford later cited as a key reason underlying the Arbitration it filed against Sysco), raises serious concerns about whether Boies Schiller violated its ethical obligations and fiduciary duties to Sysco, including its duties to communicate material developments, provide candid advice, and preserve confidential information, as well as its duty to reasonably consult with the client about the means by which the client's objectives can be accomplished.

21.  Burford and Mr. Gant have a broad economic relationship, as I understand that Mr. Gant represents Burford both directly (as counsel for a Burford affiliate) and indirectly (as counsel for parties Burford has funded) in the Antitrust Litigations.[7] Mr. Gant's conduct

---

[7] In early 2021, after the execution of the CPA, I became aware that Mr. Gant represented Burford directly in the *Broilers* litigation as counsel to Amory Investments LLC, through which Burford litigates as a direct-action plaintiff claims that Amory purchased. Mr. Gant took on this relationship after the signing of the CPA between Burford and Sysco; while this representation was disclosed to Sysco, Mr. Gant has never fully disclosed to Sysco the full

thus also raises concerns about whether Boies Schiller violated its duty to provide unconflicted advice and to perform services without representing differing interests, and its fiduciary duties of loyalty and confidentiality. Applicable ethical rules are also implicated to the extent that Burford exercised control over the judgment of Sysco's counsel with respect to settlement and confidentiality in order to further its own financial interest in obtaining a large return on its investment, prioritizing its greed over Sysco's rights and interests as the plaintiff and Sysco's right to a relationship with its counsel free from Burford's improper influence.

22. Just days after the September 6 call, Burford initiated the Arbitration against Sysco in which Burford has sought (and since received) injunctive relief blocking Sysco from executing the Proposed Settlements.

23. Throughout the events described above, Mr. Gant apparently forgot who his client was or, at the very least, chose to value one client relationship over another. Moreover, he continued to do so after the September 2 call by failing to tell Sysco about the call; allowing Sysco to be ambushed at the September 6 meeting; and also resisting my direct instructions that he cooperate with Cleary Gottlieb by providing them with information and support necessary to their preparation of Sysco's defenses in the Arbitration.

E. **Sysco's Termination of Boies Schiller**

24. After learning in January 2023 of Mr. Gant's September 2 conversation with Burford, Sysco took steps to understand the situation and consulted with professional

---

extent of his work, or Boies Schiller's work, for Burford. I have recently become aware that Mr. Gant has appeared at Burford marketing events. *See, e.g.*, Burford Capital, Quantifying risk: Unlocking the value of pending antitrust claims (Sept. 15, 2020), https://www.burfordcapital.com/media-room/media-room-container/webcast-quantifying-risk-unlocking-the-value-of-pending-antitrust-claims/.

Sysco has not waived, and does not waive, any conflicts resulting from Mr. Gant's representation of Burford in any substantially related matters, his relationship with Burford, or Boies Schiller's relationship with Burford.

9

responsibility counsel. Among other things, I personally spoke with Mr. Gant and asked him for his recollections of the September 2 call. Mr. Gant claimed to have little recollection of the call and, although he expressed the view that Mr. Molot's summary was not complete or accurate, did not specifically deny making any of the statements attributed to him therein. I did not feel that Mr. Gant was candid with me during our discussion about the September 2 call.

25. Sysco discharged Boies Schiller for cause on February 23, 2023.[8] This decision was not made lightly, and was the result of our investigation of the relevant events and full consideration of our options. While Sysco has not yet secured replacement counsel, it also cannot proceed with Boies Schiller in light of the events discussed above, which led Sysco to lose its trust and confidence in the firm.

26. As of the date of this Declaration, Sysco has not been able to secure replacement counsel of its choice, in part because Burford's assertion of a veto right over Sysco's ability to settle its antitrust claims presents an obstacle for certain counsel already involved in the Antitrust Litigations (Sysco would prefer to engage such counsel because of the efficiencies and the ease with which they can get up to speed at this stage), and in part because Burford has asserted a contractual right to refuse, and has to date refused, consent to a fee arrangement proposed by potential replacement counsel.[9]

---

[8] Boies Schiller has continued to perform some limited work on Sysco's matters during this interim period when the Court has not yet approved the request that Boies Schiller be permitted to withdraw as counsel to Sysco. According to Boies Schiller's invoices, thus far in March, Boies Schiller attorneys have spent 2.1 hours working on the *Beef* case and 0.3 hours working on the *Pork* case.

[9] With regard to the latter, Burford has a limited consent right (not to be unreasonably withheld) only if Sysco desires to enter into a fee arrangement with new counsel that is superior to the fee that would have been paid to Boies Schiller (Burford otherwise has no consent right); nevertheless, for three weeks, Burford refused even to respond to Sysco's written request that it take a position on whether it considers that consent right to have been triggered with respect to one proposed fee arrangement that Sysco provided to Burford (*i.e.*, does it consider the proposed fee arrangement to be "superior") and, if so, to provide such consent or its basis for refusing to do so given that it may not unreasonably withhold consent to superior fee proposals.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Phoenix, Arizona on March 24, 2023

                                                                                                         Barrett G. Flynn

---

When it did respond, Burford merely reiterated its previous position. In effect, Burford is abusing a potential contractual right to extort Sysco in order to paralyze it in the Antitrust Litigations, and has subsequently threatened Sysco in writing to use such paralysis as a basis to invoke a contractual provision that would allow Burford to take over control of the Antitrust Litigations entirely. Moreover, we are concerned that Burford is abusing its consent rights to obstruct Sysco's efforts to retain independent counsel in order to steer Sysco towards counsel whose loyalty will once again be to Burford rather than Sysco. It is unclear how long it will take for Sysco to work through this obstacle, which may require Sysco to make an urgent application for relief from the arbitral tribunal.