## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*Sysco Corp. v. Agri Stats, Inc., et al.*,<br>Case No. 21-cv-1374 (D. Minn.) | Civil Action No. 18-cv-01776<br><br>Honorable John R. Tunheim<br>Honorable John F. Docherty |

## CARINA VENTURES LLC'S REPLY MEMORANDUM IN SUPPORT OF
## JOINT MOTION FOR SUBSTITUTION OF PLAINTIFF

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

I.   THE ASSIGNMENT IS VALID UNDER FEDERAL LAW ................................ 3

    A.   Federal Law Governs the Validity of the Assignment Agreement ................. 3

    B.   Federal Antitrust Claims Are Freely Assignable ............................... 6

    C.   Champerty Is Irrelevant to the Assignment of Federal Claims ........................ 8

    D.   Champerty Is Inconsistent With the Purposes of the Federal Antitrust Laws 10

II.  DEFENDANTS' STATE-LAW ARGUMENTS ARE MERITLESS
    IN ANY EVENT ................................................................................. 13

    A.   The Assignment Is Valid Under Illinois Law ................................. 13

    B.   The Assignment Is Valid Under Minnesota Law ............................ 17

    C.   The Assignment Is Valid Under Delaware Law ............................. 19

    D.   Defendants' Bare Policy Arguments Are Unavailing ...................................... 21

III. SUBSTITUTION WILL FACILITATE CONDUCT OF THE
    LITIGATION ................................................................................... 22

    A.   Substitution Is Appropriate Because Carina, Not Sysco, Holds the
    Interest in the Pending Claims.......................................................... 22

    B.   Substitution Will Not Impair Defendants' Discovery of Sysco ...................... 23

    C.   Substitution Cannot Be Denied Based on Defendants' Unsupported
    Belief That It Will Hinder Resolution of the Claims ....................... 24

    D.   Defendants' Aspersions on Carina Are Meritless ........................... 26

IV.  DEFENDANTS IGNORE THE DOZENS OF ASSIGNMENTS IN
    THIS CASE, INCLUDING SOME BY SYSCO ................................................ 28

V.   DEFENDANTS' DISCOVERY DEMANDS ARE UNWARRANTED
    AND ANTITHETICAL TO THE GOAL OF ENCOURAGING
    SETTLEMENT OF LITIGATION ..................................................................... 29

CONCLUSION ................................................................................................. 31

# TABLE OF AUTHORITIES

**CASES**                                                                        **Page(s)**

*Abbott Ford, Inc v. Superior Court,*
    741 P.2d 124 (Cal. 1987) ................................................................................. 10

*Acorn Bankshares, Inc. v. Suburban Bancorp, Inc.,*
    1985 WL 2671 (N.D. Ill. Sept. 18, 1985) ........................................................ 15

*Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC,*
    269 F.R.D. 355 (S.D.N.Y. 2010) ..................................................................... 24

*APCC Servs., Inc. v. AT&T Corp.,*
    281 F. Supp. 2d 41 (D.D.C. 2003) ..................................................................... 4

*Apple Inc. v. Pepper,*
    139 S. Ct. 1514 (2019) ...................................................................................... 11

*Arnold v. LME, Inc.,*
    537 F. Supp. 3d 1050 (D. Minn. 2021) ............................................................... 5

*Barnes Coal Corp. v. Retail Coal Merchants Ass'n,*
    128 F.2d 645 (4th Cir. 1942) ............................................................................... 4

*Bass v. Phoenix Seadrill/78, Ltd.,*
    749 F.2d 1154 (5th Cir. 1985) ............................................................................. 8

*Bentinck v. Franklin,*
    38 Tex. 458 (1873) ............................................................................................ 10

*Bettin v. Bettin,*
    2006 WL 541033 (Minn. Ct. App. Mar. 7, 2006) ........................................... 18

*Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.,*
    210 F.3d 18 (1st Cir. 2000) ................................................................................. 5

*Bieter Co. v. Blomquist,*
    848 F. Supp. 1446 (D. Minn. 1994) ................................................................. 12

*Birner v. Gen. Motors Corp.,*
    2007 WL 269847 (C.D. Ill. Jan. 26, 2007) ................................................ 15, 16

*Bluebird Partners, L.P. v. First Fid. Bank, N.A. New Jersey,*
    85 F.3d 970 (2d Cir. 1996) .................................................................................. 4

*Bullets2Bandages, LLC v. Caliber Corp.*,
  2019 WL 5684400 (S.D. Cal. Nov. 1, 2019)................................................................27

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 297 (E.D. Mich. 2001) .............................................................................4, 8

*Carlson v. Green*,
  446 U.S. 14 (1980)..........................................................................................................4

*Carter v. Berger*,
  777 F.2d 1173 (7th Cir. 1985) .......................................................................................8

*Charge Injection Techs., Inc. v. E.I. DuPont de Nemours & Co.*,
  2015 WL 1540520 (Del. Super. Ct. Mar. 31, 2015)....................................................30

*Charge Injection Techs., Inc. v. E.I. Dupont De Nemours & Co.*,
  2016 WL 937400 (Del. Super. Ct. Mar. 9, 2016)...................................................19, 20

*Chester Cnty. Refuse Auth. v. BFI Waste Servs. of Pennsylvania, LLC*,
  2017 WL 2799160 (Del. Super. Ct. June 27, 2017) .....................................................20

*Clover Cmtys. Beavercreek, LLC v. Mussachio Architects P.C.*,
  2023 WL 3864965 (N.D.N.Y. June 7, 2023)..................................................................4

*Commissions Imp. Exp., S.A. v. Republic of Congo*,
  118 F. Supp. 3d 220 (D.D.C. 2015)..............................................................................22

*Consol. Exp., Inc. v. New York Shipping Ass'n, Inc.*,
  602 F.2d 494 (3d Cir. 1979) .........................................................................................12

*Cont'l Circuits LLC v. Intel Corp.*,
  435 F. Supp. 3d 1014 (D. Ariz. 2020) ..........................................................................30

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ........................................................................................9, 10

*Couf v. Equitable Life Assurance Soc'y of the United States*,
  2003 WL 27384629 (D. Minn. Dec. 17, 2003) ............................................................23

*Del Webb Cmtys., Inc. v. Partington*,
  652 F.3d 1145 (9th Cir. 2011) ......................................................................................10

*DNAML Pty, Ltd. v. Apple Inc.*,
  2015 WL 9077075 (S.D.N.Y. Dec. 16, 2015) ............................................................3, 5

*In re Dozier Fin., Inc.*,
   587 B.R. 637 (Bankr. D.S.C. 2018) ................................................... 5

*Dubuque Stone Prods. Co. v. Fred L. Gray Co.*,
   356 F.2d 718 (8th Cir. 1966) ................................................... 22, 31

*Eastman Chem. Co. v. Alphapet Inc.*,
   2011 WL 13054223 (D. Del. Dec. 9, 2011) ................................. 27

*ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*,
   53 F.3d 186 (8th Cir. 1995) .................................................. 23, 27

*Entergy Arkansas, Inc. v. Nebraska*,
   358 F.3d 528 (8th Cir. 2004) ...................................................... 9

*In re Estate of Hoffbeck*,
   415 N.W.2d 447 (Minn. Ct. App. 1987) ................................... 19

*In re Estate of Milborn*,
   461 N.E.2d 1075 (Ill. App. Ct. 1984) ...................................... 14

*In re Fine Paper Litig. State of Wash.*,
   632 F.2d 1081 (3d Cir. 1980) ...................................................... 3

*FTC v. Boehringer Ingelheim Pharms., Inc.*,
   892 F.3d 1264 (D.C. Cir. 2018) ................................................. 9

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
   991 F.3d 370 (2d Cir. 2021) ..................................................... 23

*Galinski v. Kessler*,
   480 N.E.2d 1176 (Ill. App. Ct. 1985) ...................................... 14

*Gibson v. Gillespie*,
   152 A. 589 (Del. Super. Ct. 1928) ........................................... 20

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
   332 F.3d 976 (6th Cir. 2003) ................................................... 30

*Great W. Cas. Co. v. Kirsch Transp. Servs., Inc.*,
   2022 WL 4182377 (S.D. Iowa June 3, 2022) ...................... 23, 26

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
   995 F.2d 425 (3d Cir. 1993) ............................................ 3, 5, 6

*Hall v. State*,
   655 A.2d 827 (Del. Super. Ct. 1994) .......................................................................... 20

*Hawaii v. Standard Oil Co. of California*,
   405 U.S. 251 (1972) .................................................................................................... 11

*Heavenly Ham Co. v. HBH Franchise Co.*,
   2005 WL 331558 (N.D. Ill. Feb. 7, 2005) ................................................................ 5, 6

*Henderson v. Kibbie*,
   71 N.E. 1091 (Ill. 1904) ............................................................................................. 14

*Howlett By & Through Howlett v. Rose*,
   496 U.S. 356 (1990) ...................................................................................................... 4

*Humanigen, Inc. v. Savant Neglected Diseases, LLC*,
   238 A.3d 194 (Del. Super. Ct. 2020) ......................................................................... 19

*Hume v. United States*,
   132 U.S. 406 (1889) .................................................................................................... 19

*Illinois Brick Co. v.Illinois*,
   431 U.S. 720 (1977) .......................................................................................... 7, 11, 25

*In re Int'l Oil Trading Co.*,
   548 B.R. 825 (Bankr. S.D. Fla. 2016) ........................................................................ 30

*Jalin Realty Cap. Advisors, LLC v. A Better Wireless, NISP, LLC*,
   2017 WL 1968285 (D. Minn. Apr. 18, 2017) ............................................................. 22

*John Wiley & Sons, Inc. v. DRK Photo*,
   882 F.3d 394 (2d Cir. 2018) ......................................................................................... 7

*Kansas City Chiefs Football Club, Inc. v. Allen*,
   2013 WL 1339820 (W.D. Mo. Mar. 30, 2013) ........................................................... 13

*Kiefer-Stewart Co. v. Seagram & Sons*,
   340 U.S. 211 (1951) .................................................................................................... 12

*Knott v. McDonald's Corp.*,
   147 F.3d 1065 (9th Cir. 1998) ...................................................................................... 3

*Landi v. Arkules*,
   835 P.2d 458 (Ariz. Ct. App. 1992) ........................................................................... 10

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007) ......................................................................................... 4

*Lerman v. Joyce Int'l, Inc.*,
   10 F.3d 106 (3d Cir. 1993) ............................................................................. 4

*Leuthold v. Redwood County*,
   288 N.W. 165 (Minn. 1939) ......................................................................... 17

*Liu v. T & H Mach., Inc.*,
   191 F.3d 790 (7th Cir. 1999) ....................................................................... 14

*Martin v. Morgan Drive Away, Inc.*,
   665 F.2d 598 (5th Cir. 1982) ......................................................................... 6

*Maslowski v. Prospect Funding Partners LLC*,
   944 N.W.2d 235 (Minn. 2020) .................................................. 10, 17, 19, 25

*MeccaTech, Inc. v. Kiser*,
   2008 WL 1774992 (D. Neb. Apr. 15, 2008) ................................................ 13

*Milk Dealers Bottle Exch. v. Schaffer*,
   224 Ill. App. 411 (1st Dist. 1922) ................................................................ 16

*Miller UK Ltd. v. Caterpillar, Inc.*,
   17 F. Supp. 3d 711 (N.D. Ill. 2014) ........................................... 14, 15, 17, 30

*Mojave Desert Holdings, LLC v. Crocs, Inc.*,
   995 F.3d 969 (Fed. Cir. 2021) ....................................................................... 7

*Moroccanoil, Inc. v. Conforti* ,
   2021 WL 2310092 (D.N.J. June 4, 2021) ................................................... 30

*MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*,
   2022 WL 3155035 (S.D. Fla. July 21, 2022) ............................................... 4

*Nationstar Mortg. LLC v. Fiesta Del Norte Homeowners Ass'n*,
   2020 WL 10787496 (D. Nev. May 13, 2020) .............................................. 24

*Nationstar Mortg. LLC v. Fiesta Del Norte Homeowners Ass'n*,
   2020 WL 6111654 (D. Nev. Oct. 16, 2020) ................................................ 24

*In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Sec. Litig.*,
   636 F. Supp. 1138 (C.D. Cal. 1986) .............................................................. 5

*Nat'l Sec. Couns. v. CIA*,
   960 F. Supp. 2d 101 (D.D.C. 2013) ................................................................. 5

*In re Nucorp Energy Sec. Litig.*,
   772 F.2d 1486 (9th Cir. 1985) ...................................................................... 4

*Oil, Inc. v. Martin*,
   44 N.E.2d 596 (Ill. 1942) ............................................................................ 14

*Onvoy, Inc. v. SHAL, LLC*,
   669 N.W.2d 344 (Minn. 2003) ...................................................................... 18

*In re Opana ER Antitrust Litig.*,
   2016 WL 738596 (N.D. Ill. Feb. 25, 2016) ............................................... 3, 6

*Osprey, Inc. v. Cabana, L.P.*,
   532 S.E.2d 269 (S.C. 2000) ......................................................................... 10

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
   392 U.S. 134 (1968) ............................................................................... 11, 12

*Perry v. Thomas*,
   482 U.S. 483 (1987) ................................................................................. 5, 6

*Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*,
   649 F.2d 530 (7th Cir. 1981) ...................................................................... 12

*Potvin v. Speedway LLC*,
   891 F.3d 410 (1st Cir. 2018) ........................................................................ 26

*In re Preston Trucking Co.*,
   392 B.R. 623 (D. Md. 2008) .......................................................................... 4

*Prudential Ins. Co. of America v. Doe*,
   140 F.3d 785 (8th Cir. 1998) ....................................................................... 13

*Radovich v. Nat'l Football League*,
   352 U.S. 445 (1957) ...................................................................................... 11

*Residential Funding Co., LLC v. Terrace Mortg. Co.*,
   725 F.3d 910 (8th Cir. 2013) ....................................................................... 18

*Rodgers v. U.S. Steel Corp.*,
   508 F.2d 152 (3d Cir. 1975) .......................................................................... 8

*Saladini v. Righellis*,
  687 N.E.2d 1224 (Mass. 1997) ................................................................. 10

*Schomp v. Schenck*,
  40 N.J.L. 195 (N.J. Sup. Ct. 1878) ......................................................... 10

*Shipley v. Arkansas Blue Cross & Blue Shield*,
  333 F.3d 898 (8th Cir. 2003) ..................................................................... 9

*Spiller v. Atchison, T. & S.F. Ry. Co.*,
  253 U.S. 117 (1920) .................................................................................... 7

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008) ....................................................................... 4, 5, 7, 8

*Star Windshield Repair, Inc. v. W. Nat. Ins. Co.*,
  768 N.W.2d 346 (Minn. 2009) ................................................................. 17

*In re Steel Antitrust Litig.*,
  2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ............................................. 4

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981) ................................................................................... 11

*Tool-Plas Sys., Inc. v. Camaco, LLC*,
  2010 WL 1347686 (E.D. Mich. Mar. 31, 2010) .................................... 30

*United States v. Two Bank Accts. Described as Bank Acct. in the Amount of
  $197,524.99 Bank of Am. Seattle, Washington*,
  2009 WL 803615 (D.S.D. Mar. 24, 2009) .............................................. 13

*Urena v. Nationwide Ins. Co. of Am.*,
  2017 WL 735583 (D.S.C. Feb. 24, 2017) ............................................... 30

*Viamedia, Inc. v. Comcast Corp.*,
  2017 WL 2834535 (N.D. Ill. June 30, 2017) ......................................... 30

*W. Auto Supply Co. v. Gamble-Skogmo, Inc.*,
  348 F.2d 736 (8th Cir. 1965) ..................................................................... 4

*Wallach v. Eaton Corp.*,
  837 F.3d 356 (3d Cir. 2016) ....................................... 3, 5, 8, 9, 10, 11, 30

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  395 U.S. 100 (1969) ................................................................................... 11

*Zoslaw v. MCA Distrib. Corp.*,
   693 F.2d 870 (9th Cir. 1982) ........................................................................ 9

**STATUTES**

28 U.S.C. § 1927 ........................................................................................... 10

31 U.S.C. § 3727 ............................................................................................. 7

**RULES AND REGULATIONS**

Fed. R. Civ. P. 1 ............................................................................................ 28

Fed. R. Civ. P. 11 .......................................................................................... 10

**OTHER AUTHORITIES**

8 Williston on Contracts § 18:1 (4th ed.) ..................................................... 17

25 Fed. Proc., L. Ed. § 59:433 ........................................................... 2, 28, 31

Restatement (Second) Conflict of Laws § 187 (1971) ................................. 13

Restatement (Second) of Contracts § 317 (1981) ........................................... 9

## INTRODUCTION

With leave of the Court (ECF Nos. 1977, 1979), Carina Ventures LLC ("Carina") submits this reply memorandum in support of its joint motion with Sysco Corporation ("Sysco") to substitute Carina for Sysco as plaintiff in this case (ECF No. 1940, the "Substitution Motion").

Defendants' opposition brief largely addresses facts that no longer exist, and it offers no cogent reason not to approve substitution. The actual facts here are straightforward. Originally, Sysco was the plaintiff and Burford[1] was providing litigation finance capital to Sysco *in a case owned, controlled, and litigated by Sysco*. A dispute arose between Sysco and Burford over a limited settlement consent provision to which Sysco had voluntarily agreed. Sysco lost its challenge when an arbitral tribunal granted Burford's request for a temporary injunction. Subsequently, Sysco settled its dispute with Burford and assigned the entirety of its claims to Carina. With the Assignment and Novation Agreement ("Assignment" or "Assignment Agreement"), Sysco transferred all interest in its claims relevant to this case, and Carina now possesses the sole right to prosecute those claims. *See* ECF No. 1940, Ex. A. Accordingly, Sysco no longer owns or controls the claims in issue; Carina does. It follows straightforwardly from that assignment that Carina should be substituted for Sysco under Rule 25, as is commonplace in antitrust assignments. None of the rhetoric in Defendants' brief about control by litigation funders

---

[1] We use Burford for convenience; in fact, three Burford Capital LLC affiliates were the finance providers to Sysco and a separate affiliate, Carina, is the assignee of Sysco's claims and the proposed plaintiff in these cases.

over litigation is relevant to the clear-cut issue at hand, as Carina stands before the Court as the sole owner of the claims, not as a litigation funder.

Nor is Defendants' complaint that Carina will pursue these claims more zealously than Sysco a valid reason to avoid substitution.  It may well be that Defendants would prefer to continue litigating against Sysco, over which they have significant commercial leverage as suppliers of much-needed protein products in a tight economic market.  But nothing in Rule 25 entitles Defendants to litigate against their preferred plaintiff.  What matters is that Sysco was entitled to assign its claims, and it has done so for valid business reasons.  And at any rate, as courts have recognized, Defendants' tired rhetoric that litigation funders impede resolution of cases makes no sense:  there is no reason to think that Carina and Burford – sophisticated entities with substantial experience in high-stakes litigation – would irrationally turn down favorable settlements that reflect the merits of the claims.

Looking past Defendants' irrelevant rhetoric, Defendants' opposition offers no sound reason why the Substitution Motion should not be granted.  Federal antitrust claims – indeed, federal claims generally – are freely assignable, and when an assignment is made during the course of litigation, assignees routinely obtain substitution pursuant to Rule 25(c).  *See* 25 Fed. Proc., L. Ed. § 59:433 (explaining the Rule's "primary purpose" is "to insure that litigation be conducted by the real party in interest").  Permeating Defendants' opposition is their mistaken belief that the claims are "Sysco's claims" when they are not. Like dozens of other claims in this litigation, they were validly assigned and are now Carina's claims.  Defendants' request that the Court invalidate the Assignment on

champerty or unconscionability grounds is fundamentally mistaken because *federal law*, not state law, governs here.  And even if state law applied, any defense of champerty or unconscionability would be meritless as a matter of law – and an opposition to a Rule 25 motion would not in any event be the right forum in which to advance such an argument.

Defendants' gambit here is clear:  they are trying to escape liability for hundreds of millions of dollars of unlawful overcharges, and they appear willing to advance any argument they can for that escape hatch, no matter how implausible.  Defendants are causing delay and wasting judicial resources by opposing what should be a straightforward application of Rule 25.  The Substitution Motion does not affect any of Defendants' substantive rights, necessitate additional discovery, or require any change to the case schedule.  Carina's motion for substitution should be granted.

## I.    THE ASSIGNMENT IS VALID UNDER FEDERAL LAW

### A.    Federal Law Governs the Validity of the Assignment Agreement

It is clear that "the validity of the assignment of an antitrust claim is a matter of federal common law."  *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir. 1993).[2]  That is not unique to antitrust law, though federal common

---

[2] *See also Wallach v. Eaton Corp.*, 837 F.3d 356, 366 (3d Cir. 2016) (federal common law determines whether assignment of an antitrust claim requires consideration to be valid); *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1090 (3d Cir. 1980) ("the status of assignments under the Sherman and Clayton Acts is a matter of federal law"); *Knott v. McDonald's Corp.*, 147 F.3d 1065, 1068 n.4 (9th Cir. 1998) (agreeing with *Gulfstream* that "assignments of antitrust claims are governed by federal law"); *In re Opana ER Antitrust Litig.*, 2016 WL 738596, at *5 (N.D. Ill. Feb. 25, 2016) ("The validity of assignments under the Sherman and Clayton Acts is a matter of federal common law."); *DNAML Pty, Ltd. v. Apple Inc.*, 2015 WL 9077075, at *3 (S.D.N.Y. Dec. 16, 2015) ("Whether a federal antitrust claim may be assigned is itself a matter of federal law."); *In*

law is particularly relevant in the antitrust domain.  *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 905 (2007) (explaining that "Congress intended § 1 [of the Sherman Act] to give courts the ability 'to develop governing principles of law' in the common-law tradition.").  Rather, the applicability of federal common law is a corollary of the general principle that the contours and bounds of "a federal cause of action are defined by federal law." *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 375 (1990); *see also Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 289-92 (2008) (treating assignability of federal claim as a matter of federal law).  This includes both the survivability, *see Carlson v. Green*, 446 U.S. 14, 23 (1980), and assignability of federal claims, *Bluebird Partners, L.P. v. First Fid. Bank, N.A. New Jersey*, 85 F.3d 970, 973 (2d Cir. 1996) (collecting cases).[3]

---

*re Steel Antitrust Litig.*, 2015 WL 5304629, at *4 n.3 (N.D. Ill. Sept. 9, 2015) (adopting and applying *Gulfstream)*; *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, 2022 WL 3155035, at *7-*8 (S.D. Fla. July 21, 2022) (adopting and applying *Gulfstream*); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 305 (E.D. Mich. 2001) (agreeing that "federal law, not state law, governs the assignment of federal claims").

[3] *See, e.g.*, *W. Auto Supply Co. v. Gamble-Skogmo, Inc.*, 348 F.2d 736, 740 (8th Cir. 1965) ("the weight of federal authority" is that the survivability of federal claims is determined by "federal and general common law") (collecting cases); *Barnes Coal Corp. v. Retail Coal Merchants Ass'n*, 128 F.2d 645, 650 (4th Cir. 1942) (same); *Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 112 (3d Cir. 1993) (Alito, J.) (extending *Gulfstream* to validity of assignment of RICO claims); *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1489 (9th Cir. 1985) ("Because of the case law and the strong federal policies surrounding assignment of a federal securities law claim . . . federal law governs the assignment of claims under the Trust Indenture Act."); *Clover Cmtys. Beavercreek, LLC v. Mussachio Architects P.C.*, 2023 WL 3864965, at *8 (N.D.N.Y. June 7, 2023) (assignability of Fair Housing Act claim is a matter of federal common law); *In re Preston Trucking Co.*, 392 B.R. 623, 630 (D. Md. 2008) ("[B]ecause the WARN Act is a federal statute, the assignability of claims brought under it is governed by federal law."); *APCC Servs., Inc. v. AT&T Corp.*, 281 F. Supp. 2d 41, 50 (D.D.C. 2003) (rejecting argument that plaintiffs' Federal Communications Act claims are not assignable under Virginia law because assignability is a matter of federal

As numerous courts have recognized, federal common law ensures that "the rules governing assignments of federal antitrust claims accord with the 'overall purposes of the antitrust statutes,'" and avoids "a patchwork of 'differing state law standards.'" *Wallach*, 837 F.3d at 366 (quoting *Gulfstream*, 995 F.2d at 438); *see also Gulfstream*, 995 F.2d at 438 (question of validity of an assignment is an issue "closely interwoven with [the] broad scheme of federal statutory regulation" under the Sherman and Clayton Acts); *accord Arnold v. LME, Inc.*, 537 F. Supp. 3d 1050, 1055 (D. Minn. 2021) (quoting *Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 25-26 (1st Cir. 2000) (Tunheim, J.)) ("[W]hen 'the federal statute in question demands national uniformity, federal common law provides the determinative rules of decision . . . .'"); *DNAML*, 2015 WL 9077075, at *3 ("'[I]t would be intolerable to permit the states to determine the transferability and thus the value, of interests created by federal law.'") (citation omitted).

The sum total of Defendants' analysis on this point is: "Assignments are contracts, so their validity is judged by state law." Opp. 15 (citing *Perry v. Thomas*, 482 U.S. 483, 491 n.9 (1987); *Heavenly Ham Co. v. HBH Franchise Co.*, 2005 WL 331558, at *8 (N.D. Ill. Feb. 7, 2005)). As explained above, that simplistic analysis is wrong. The validity of an assignment of federal claims is governed by federal law, not state law. And neither of

---

common law), *aff'd sub nom. Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008); *In re Dozier Fin., Inc.*, 587 B.R. 637, 654 n.14 (Bankr. D.S.C. 2018) ("[T]he Court looks to federal law for any limitations on the assignability of federal claims."); *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 144-45 (D.D.C. 2013) (assignability of FOIA claims a matter of federal common law); *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Sec. Litig.*, 636 F. Supp. 1138, 1152 (C.D. Cal. 1986) ("Where a claim for relief is created by a federal statute, federal law governs the assignability of the claim.").

the cases cited by Defendants support a contrary conclusion.  Not only did *Perry* and

*Heavenly Ham* not involve an assignment, they did not involve *any* federal (much less

federal antitrust) claims at all.  The plaintiff in *Perry* brought a variety of California tort,

breach of contract, and fiduciary duty claims, 482 U.S. at 484, while *Heavenly Ham* was a

diversity case involving a number of state contract and business tort claims, 2005 WL

331558, at *1.  Absent any federal claims, state law of course governed the validity of the

contracts at issue in those cases.  The only possible hook Defendants' could rely on is a

footnote in *Perry* that contains *dicta* discussing the interplay between state law and the

FAA in determining the enforceability of an agreement to arbitrate – a matter unrelated to

the issue here.[4]

### B.   Federal Antitrust Claims Are Freely Assignable

It is equally "clear" that, under federal law, antitrust claims are freely assignable.

*Gulfstream*, 995 F.2d at 431 ("There is no serious doubt that an antitrust claim can be

expressly assigned."); *Opana ER*, 2016 WL 738596, at *5 (same) (collecting cases).  That

is true for federal claims generally.  As the Supreme Court has held, "history and precedent

are clear" that federal law has long permitted "[a]ssignees of a claim" "to bring suit."

_____

[4] Although it was not cited by Defendants, we note that a long-ago Fifth Circuit decision, *Martin v. Morgan Drive Away, Inc.,* decided, as a matter of federal common law, to apply state-law limitations on assignments.  665 F.2d 598, 604-05 & n.5 (5th Cir. 1982). However, the decision itself acknowledged a dearth of precedent on the issue at that time and "hidden tension" between its decision and other circuits' holdings "that federal and not state law governs the validity of a release of antitrust claims" given the "interests of uniformity of treatment of antitrust claims." *Id.* at 605.  Since then, *Martin*'s conclusion has been undermined by the Supreme Court's decision in *Sprint*, as well as the persuasive authority of *Wallach*, *Gulfstream*, and the numerous other cases that have followed them. Indeed, the Fifth Circuit has not followed *Martin*'s approach in any subsequent case.

*Sprint*, 554 U.S. at 275.  Thus, an assignee "may properly bring suit to redress the injury originally suffered by his assignor."  *Id*. at 287.  Absent contrary Congressional intent, federal claims may be freely assigned.  *See Mojave Desert Holdings, LLC v. Crocs, Inc.*, 995 F.3d 969, 978 (Fed. Cir. 2021) (recognizing *Sprint*'s "general rule . . . applicable to federal causes of action" that "choses in action [are] generally assignable"); *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 407 (2d Cir. 2018) (discussing *Sprint*'s "recognition of a generally permissive regime for the assignment of federal causes of action" but holding that § 501(b) of the Copyright Act limits assignments); *Spiller v. Atchison, T. & S.F. Ry. Co.*, 253 U.S. 117, 135 (1920) (federal cause of action for damages "must be regarded as assignable at law, in the absence of any expression of a legislative intent to the contrary").[5]

Clearly, neither the Sherman Act nor the Clayton Act contains any prohibition on assignment of antitrust claims.  To the contrary, as courts have repeatedly held, the free assignability of claims is particularly important in the federal antitrust context because of *Illinois Brick Co. v. Illinois*.  431 U.S. 720, 746 (1977).  There, the Supreme Court held that only direct purchasers have statutory standing to sue for antitrust violations.  At the same time, however, the Court recognized the need to "encourag[e] vigorous private enforcement of the antitrust laws."  *Id.* at 745.  As numerous courts have held, free assignability of antitrust claims is important to that objective because it enables "a direct purchaser [who] is uninterested in pursuing its claims, whether because it deems them

---

[5] Congress well knows how to limit assignments of federal claims.  *See* 31 U.S.C. § 3727 (governing assignment of claims against the United States).

7

valueless or because it cannot afford the expense of litigation, [to assign them to a] willing and interested assignee." *Wallach*, 837 F.3d at 370; *Carter v. Berger*, 777 F.2d 1173, 1177 (7th Cir. 1985) (free assignability of claims "increase[s] the deterrent power of the antitrust laws"). Here, Sysco's assignment to Carina promotes the objectives of the federal antitrust laws.

### C.    Champerty Is Irrelevant to the Assignment of Federal Claims

Against this backdrop, Defendants' invocation of state public-policy defenses such as champerty is a non-starter. Federal common law does not recognize champerty or other state-law restrictions on the free assignability of federal causes of action. *See*, *e.g.*, *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1158 n.7 (5th Cir. 1985) (disapproving district court's attempt "to fashion a federal common law of champerty for maritime cases"); *Cardizem CD*, 200 F.R.D. at 305 (rejecting claim that assignee was not a typical class representative and holding that New York's champerty law would be "immaterial" in light of the "convincing[ ]" proposition that "federal law, not state law, governs the assignment of federal claims"); *cf. Rodgers v. U.S. Steel Corp.*, 508 F.2d 152, 163 (3d Cir. 1975) ("There is no federal common law offense of barratry").

Indeed, *Sprint* forecloses any federal-law champerty defense. The dissenting opinion in that case would have held that the assignee lacked Article III standing in part based on champerty and maintenance, which it said reflected common-law limitations on the assignability of claims. *See Sprint*, 554 U.S. at 306 (Roberts, C.J., dissenting). But the majority opinion rejected that argument, holding that the "party with legal title" to a claim has standing to bring suit, and leaving room only for the possibility that prudential federal

concerns may prohibit "bad faith" assignments.  *Id.* at 285, 292.  The Court held, moreover, that any "bad faith" exception would not include assignments made "for ordinary business purposes," which are freely permitted.  *Id.* at 292.  That is the case here.  Through the Assignment, Carina now holds the "legal title" to the claims, *id.* at 285, and Sysco made the Assignment as part of a settlement of ongoing litigation – an ordinary and "legitimate business purpose," *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 889-90 (9th Cir. 1982), *FTC v. Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1267 (D.C. Cir. 2018).

A federal champerty defense is also inconsistent with the Restatement of Contracts, to which courts in this Circuit look in determining the scope of federal common law.  *See*, *e.g.*, *Entergy Arkansas, Inc. v. Nebraska*, 358 F.3d 528, 547 (8th Cir. 2004); *Shipley v. Arkansas Blue Cross & Blue Shield*, 333 F.3d 898, 902-03 (8th Cir. 2003); *Wallach*, 837 F.3d at 367-68 (relying on the Restatement to assess the validity of an antitrust assignment because it promotes "national uniformity").  The Restatement makes clear that "the historic common-law rule that a chose in action could not be assigned has largely disappeared." Restatement (Second) of Contracts § 317 cmt. c (1981) (explaining that the rule remains applicable to "claims for damages for personal injury, and to certain claims against the Government").  The Second Circuit has likewise explained that the "purchasing of claims, whether before or after suit has been brought upon them, for the purpose of turning a profit is nonetheless not categorically forbidden."  *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 103 (2d Cir. 2007) (discussing the purchase of antitrust claims out of bankruptcy).  Instead, "such assignments are widely permitted" and "allow holders of

claims to transfer the risk of loss to someone better able or more willing to pursue the claim or to undertake the risk." *Id.*

Consistent with the Restatement, courts widely recognize that champerty is a disfavored doctrine and the "consistent trend across the country is toward limiting, not expanding, champerty's reach." *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1156 (9th Cir. 2011); *see also Cordes*, 502 F.3d at 103. A number of states never adopted, or have long rejected, common law prohibitions on champerty and maintenance.[6] And federal recognition of champerty would run contrary to the consistent trend among the states. *See*, *e.g.*, *Maslowski v. Prospect Funding Partners LLC*, 944 N.W.2d 235, 241 (Minn. 2020) (abolishing champerty); *Osprey, Inc. v. Cabana, L.P.*, 532 S.E.2d 269, 279 (S.C. 2000) (same); *Saladini v. Righellis*, 687 N.E.2d 1224, 1225-27 (Mass. 1997) (abolishing champerty and explaining that any "concerns that the doctrine of champerty was thought to address" should be done "directly, rather than attempting to mold an ancient doctrine to modern circumstances"). Moreover, federal courts already have ample tools to address the same concerns that motivated champerty. *See* Fed. R. Civ. P. 11; 28 U.S.C. § 1927.

### D.   Champerty Is Inconsistent With the Purposes of the Federal Antitrust Laws

Applying champerty to prohibit such assignments would frustrate the "overall purposes of the antitrust statutes," *Wallach*, 837 F.3d at 368, impeding Congress's aim of

---

[6] *See*, *e.g.*, *Landi v. Arkules*, 835 P.2d 458, 464 n.1 (Ariz. Ct. App. 1992); *Abbott Ford, Inc v. Superior Court*, 741 P.2d 124, 141 n.26 (Cal. 1987) ("California . . . has never adopted the common law doctrines of champerty and maintenance."); *Schomp v. Schenck*, 40 N.J.L. 195, 206 (N.J. Sup. Ct. 1878); *Bentinck v. Franklin*, 38 Tex. 458, 468 (1873).

"encourag[ing] . . . 'private attorneys general,'" *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 262 (1972). "[L]ongstanding policy" encourages "vigorous private enforcement of the antitrust laws," *Illinois Brick*, 431 U.S. at 745, and the "vindication of rights" in private antitrust suits "supplements federal enforcement and fulfills the objects of the statutory scheme," *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 642 (1981); *see also Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130-31 (1969) ("[T]he purpose" of creating and encouraging private antitrust lawsuits "was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws."); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 136 (1968) (reversing court of appeals rulings which "seemed to threaten the effectiveness of the private action as a vital means for enforcing the antitrust policy of the United States"); *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1516 (2019) (rejecting Apple's proffered view of the Sherman Act, which would "contradict the longstanding goal of effective private enforcement and consumer protection in antitrust cases"). Indeed, in the "face of such a policy," the Supreme Court has cautioned against adding "requirements to burden the private litigant beyond what is specifically set forth by Congress in those laws." *Radovich v. Nat'l Football League*, 352 U.S. 445, 454 (1957).

For this reason, the Third Circuit declined to hold that antitrust assignments must be supported by consideration because such a requirement "could discourage private enforcement of the antitrust laws in derogation of *Illinois Brick*." *Wallach*, 837 F.3d at 369-70 ("Part of creating incentives for private antitrust suits is making federal courts a welcome forum for such litigation, and erecting the barrier of consideration threatens to

shut out otherwise meritorious suits from resolution."). A champerty limitation to antitrust assignability would have the same chilling effect. An assignment like the one at issue here is consistent with the goals of the antitrust laws by permitting a claim holder to assign claims to someone who will continue to vigorously prosecute them.

A federal common law doctrine prohibiting antitrust assignments on champerty grounds is also incompatible with the Supreme Court's longstanding rejection of defenses to federal antitrust claims based on purported illegal conduct by the plaintiff. "Proof of the plaintiff's unrelated unlawful conduct is not a valid in pari delicto defense to an antitrust charge." *Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 n.5 (7th Cir. 1981) (citing *Perma Life Muffler*, 392 U.S. at 140; *Kiefer-Stewart Co. v. Seagram & Sons*, 340 U.S. 211, 214 (1951)). Indeed, *Perma Life* "has been understood to have abolished the defense of illegality even when the plaintiff's wrongdoing is unrelated to antitrust policy." *Consol. Exp., Inc. v. New York Shipping Ass'n, Inc.*, 602 F.2d 494, 526 (3d Cir. 1979) (collecting cases), *vacated on other grounds*, 448 U.S. 902 (1980); *see also Bieter Co. v. Blomquist*, 848 F. Supp. 1446, 1448 (D. Minn. 1994) ("The general rule is that the defenses of unclean hands and *in pari delicto* are not available in antitrust cases."). In *Perma Life*, the Court explained that it would be "inappropriate[ ]" to invoke "common-law barriers to relief where a private suit serves important public purposes." 392 U.S. at 138. Accordingly, the Defendants certainly cannot use champerty to obtain dismissal of

12

Carina's claims.  For the same reason, they cannot use champerty to invalidate the transfer of interest or deny substitution.[7]

## II.    DEFENDANTS' STATE-LAW ARGUMENTS ARE MERITLESS IN ANY EVENT

Even if state law governed the validity of the Assignment Agreement – which it does not – none of Defendants' state law arguments have any merit.  Contrary to Defendants' contention, the Assignment is permissible under the law of all three states discussed by Defendants.

### A.    The Assignment Is Valid Under Illinois Law

We begin with Illinois law – which is the law that this Court would apply if it were conducting a choice of law analysis, because it is the choice of law specified in the Assignment Agreement.[8]  *See* ECF No. 1940, Ex. A ¶ 7.  Illinois law provides that legal

---

[7] This is consistent with the rule – discussed further below – that illegality in an assignment agreement can be raised only between the parties.

[8] Defendants' choice-of-law analysis is, again, wrong.  Because the court's jurisdiction is based on a federal question, the "court applies *federal* choice-of-law canons."  *United States v. Two Bank Accts. Described as: Bank Acct. in the Amount of $197,524.99 Bank of Am. Seattle, Washington*, 2009 WL 803615, at *2 (D.S.D. Mar. 24, 2009) (citing *Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 791 (8th Cir. 1998)) (emphasis added); *see also MeccaTech, Inc. v. Kiser*, 2008 WL 1774992, at *9 (D. Neb. Apr. 15, 2008) ("In federal question cases, the Court looks to federal choice of law principles.").  "[T]he general policy of the federal courts deciding federal question cases involving choice-of-law is to apply the approach outlined by the Restatement (Second) of Conflict of Laws."  *Kansas City Chiefs Football Club, Inc. v. Allen*, 2013 WL 1339820, at *5 (W.D. Mo. Mar. 30, 2013).  Under this approach, a choice-of-law provision will be upheld, unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state" and that state's law would apply in the absence of a choice of law clause.  Restatement (Second) Conflict of Laws § 187 (1971).  Neither prong of that exception applies here.  Illinois has a substantial relationship because

13

claims are generally freely assignable.  *See Liu v. T & H Mach., Inc.*, 191 F.3d 790, 797 (7th Cir. 1999).   Illinois law does recognize champerty, but it only reaches "officious intermeddling in a suit," *Galinski v. Kessler*, 480 N.E.2d 1176, 1178 (Ill. App. Ct. 1985), which means "volunteering one's services where they are neither asked for nor needed," *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 725 (N.D. Ill. 2014) (citing *In re Estate of Milborn*, 461 N.E.2d 1075, 1078 (Ill. App. Ct. 1984)).   Thus, only *unwanted* intermeddling is champertous – for example, where the officious intermeddler imposes its will on the other party.  *See Miller UK Ltd.*, 17 F. Supp. 3d at 725.

Because champerty is designed fundamentally to protect a claimant from *unwanted* intermeddling by a third party, it is settled under Illinois law that champerty can only be raised by a party to the alleged champertous agreement.  As the Illinois Supreme Court has repeatedly explained, "[i]t is the rule in Illinois, and also, as we believe, the general rule, that the defense of champerty can only be interposed in an action between the parties to the champertous contract, and does not furnish any reason for refusing relief in the proceeding to which the champertous agreement relates."  *Oil, Inc. v. Martin*, 44 N.E.2d 596, 600 (Ill. 1942) (quoting *Henderson v. Kibbie*, 71 N.E. 1091, 1094 (Ill. 1904) (collecting cases)); *see also Miller UK Ltd.*, 17 F. Supp. 3d at 726.  Champerty is thus consistent with "the broader

---

it is the forum where some of the assigned claims are pending, and one of Carina's officers resides in Illinois.  Likewise, Delaware does not have a "materially greater" interest than Illinois – its sole connection is that both Carina and Sysco are incorporated in Delaware. But the same is true for multitudes of companies and is insufficient to overcome Illinois's interest.  Indeed, Minnesota – as the forum for this dispute – has a greater interest than Delaware.  In any event, as shown below, the Assignment does not violate any policy of Delaware.

rule that illegality of contract is a defense has application only to an action seeking enforcement of the illegal contract and only between the immediate parties to it." *Miller UK Ltd.*, 17 F. Supp. 3d at 726 (collecting cases). Under Illinois law, champerty provides a mechanism for a party to negate the oppressive and unwanted conduct of its contractual counterparty. It does not provide grounds for a nonparty to invalidate an agreement supported by the parties to it. Thus, an argument that the Assignment is champertous would only be available in an action between Carina and Sysco. *See Acorn Bankshares, Inc. v. Suburban Bancorp, Inc.*, 1985 WL 2671, at *7 (N.D. Ill. Sept. 18, 1985). It affords Defendants no basis to resist substitution.[9]

Moreover, even if Defendants could assert champerty, their argument would fail on the merits because no "officious intermeddling" occurred here. Long before it began discussions with Burford, after Sysco had discovered it was a victim of antitrust cartels by the various protein suppliers, rather than remain as a passive member of the various class actions that had been filed, it launched an affirmative recovery strategy, which entailed filing complaints as a direct action plaintiff ("DAP"). Sysco had already opted out of some of the class actions and filed DAP complaints by the time it first began negotiations with

---

[9] Defendants cite *Birner v. Gen. Motors Corp.*, 2007 WL 269847, at *2 (C.D. Ill. Jan. 26, 2007), in support of their suggestion that the Assignment may be "void as against public policy." Opp. 17. Leaving aside that *Birner* is a district court decision from another jurisdiction, it does not concern an antitrust assignment governed by federal common law. While the *Birner* decision does not identify the source of law it applied, even assuming it is Illinois, the decision is not probative. The court, responding to the specific argument made by the plaintiff, including reliance on the Uniform Commercial Code, did not address any of the Illinois law discussed in this section – including that that champerty can only be raised by a party to an agreement.

Burford and it had retained counsel for, and was actively working on, other DAP complaints.  *See* Compl. at 7-8, *Sysco Corp. v. Glaz LLC*, No. 1:23-cv-01451 (N.D. Ill. Mar. 8, 2023), ECF No. 1.

Accordingly, the claims assigned to Carina by Sysco were neither stale nor "hunt[ed] up."  *See Birner*, 2007 WL 269847, at *2.[10]  Sysco, on its own initiative, developed the claims.  Sysco has now assigned to Carina its rights in those claims.  Illinois has, for over a century, upheld assignments which were intended to secure just compensation for the violation of rights.  *See Milk Dealers Bottle Exch. v. Schaffer*, 224 Ill. App. 411, 415 (1st Dist. 1922) (assignment of suit for replevin would not violate Illinois public policy if the assignee's motive was to assist the assignor secure its rights).[11] Likewise, there is no suggestion that Carina imposed its will on Sysco.  Rather, Sysco and Burford negotiated an arm's length agreement whereby Sysco received $140 million in capital that was collateralized by Sysco's claims in this and several other food antitrust suits.  Sysco brought its own claims in the first instance and specifically sought funding from Burford for this case.  Years later, a dispute arose between the parties relating to a contractual settlement consent provision, Sysco and the Burford affiliates reached a

---

[10] "[T]he law will not tolerate a principle which will allow a man of litigious disposition to go about the community, *hunting up* stale claims, or even meritorious ones, against his neighbors, either for the purpose of harassing them, or for speculation."  *Birner*, 2007 WL 269847, at *2 (emphasis added) (citation omitted).

[11] "While the common-law crime of champerty has not been abolished by statute in this State, the tendency of decisions is to depart from the severity of the old law and at the same time to preserve the principle which tends to defeat the mischief to which the old law was directed, namely, the traffic of merchandizing in quarrels, of huckstering in litigious discord."  *Milk Dealers*, 224 Ill. App. at 415 (citation and internal quotation marks omitted).

settlement, and Sysco assigned its claims to Carina, another Burford affiliate. At every step, Sysco – a multibillion-dollar company represented by capable outside counsel – bargained for agreements it found valuable and useful. It is absurd to suggest that Burford "stirred up a suit" in these massive industry-wide antitrust cases that have attracted essentially every industry participant as a litigant. Nor did it seek to "foment 'useless' litigation for sake of harassment . . . or promote or cause 'meritless litigation'" in these cases which are surely not "useless" or "meritless." *Miller UK Ltd.*, 17 F. Supp. 3d at 725.

### B. The Assignment Is Valid Under Minnesota Law

Under Minnesota law,[12] claims are likewise freely assignable. *See Leuthold v. Redwood County*, 288 N.W. 165, 167 (Minn. 1939) ("The law of this state is that an assignment of a chose in action is valid and complete in itself upon the mutual assent of the assignor and assignee without notice to the debtor." (citation omitted); *Star Windshield Repair, Inc. v. W. Nat. Ins. Co.*, 768 N.W.2d 346, 351 (Minn. 2009) (Anderson, J. concurring) (noting Minnesota's "long-standing approval of permitting assignment of choses in action"). Further, champerty poses no bar to assignability in Minnesota; the Supreme Court abolished the doctrine. *See Maslowski*, 944 N.W.2d at 238 ("Our review of changes in the legal profession and in society convinces us that the ancient prohibition against champerty is no longer necessary."). That should end the inquiry; Defendants' champerty arguments are facially meritless.

---

[12] *See supra* note 6.

Defendants' reliance on the common-law doctrine of unconscionability is misplaced for two reasons.  *First*, unconscionability does not render an agreement void; rather, unconscionable agreements are "voidable or unenforceable *by the party* imposed upon" and "are therefore subject to ratification."  8 Williston on Contracts § 18:1 (4th ed.) (emphasis added); *see also Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 353 & n.9 (Minn. 2003) (discussing the difference between void and voidable contracts).  Even assuming the Assignment was unconscionable (it isn't), only *Sysco* would have the option to avoid or ratify the agreement, and it has not asked for any such relief.

*Second*, the argument that the Assignment is unconscionable is, frankly, frivolous.[13] "The concept of unconscionability was developed to prevent the unjust enforcement of onerous contractual terms which one party is able to impose [on] the other because of a significant disparity in bargaining power."  *Bettin v. Bettin*, 2006 WL 541033, at *3 (Minn. Ct. App. Mar. 7, 2006) (citation and internal quotation marks omitted).  Here, the assignment "was a freely negotiated agreement between two sophisticated parties" represented by "experienced and able counsel."  *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 917 (8th Cir. 2013) (citation omitted).  It is absurd to suggest that Sysco – a Fortune 100 company with more than $68 billion in revenue and more than

---

[13] Defendants' unconscionability argument appears to target Sysco's earlier litigation funding contract, in which it granted a limited consent right to settle an earlier dispute and ensure an alignment of interests.  In parroting Sysco's prior arguments regarding that agreement, Defendants do not even attempt to explain how an assignment of antitrust claims – something numerous plaintiffs in this very lawsuit, including Sysco, have done without objection – can be unconscionable.

$1 billion in profits in 2022[14] – needs this Court to save it from the Assignment Agreement. That agreement was not a contract that "no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other." *In re Estate of Hoffbeck*, 415 N.W.2d 447, 449 (Minn. Ct. App. 1987) (quoting *Hume v. United States*, 132 U.S. 406, 411 (1889)). Instead, the Assignment resolved contentious litigation and provided value to both parties. Moreover, none of the concerns alluded to by the *Maslowski* court are present here. This was not an agreement "between parties of unequal bargaining power" or an agreement involving an uncounseled or unsophisticated party. *See Maslowski*, 944 N.W.2d at 241. Nor is this a case where a non-party litigation funder attempts to exercise control of a plaintiff's prosecution of a claim. *See id*. Here, Carina is the sole owner of the claims and is the plaintiff.

### C.    The Assignment Is Valid Under Delaware Law

The Assignment is also permissible under Delaware law, even though it is not applicable.[15] Under Delaware law, "[c]hamperty and maintenance are common law offenses of officiously intermeddling in a stranger's suit." *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 203 (Del. Super. Ct. 2020). "The historical justification for prohibiting any form of champerty or maintenance was to prevent disinterested third-parties from stirring up or encouraging fraudulent and frivolous lawsuits." *Charge Injection Techs., Inc. v. E.I. Dupont De Nemours & Co.*, 2016 WL

---

[14]    *See* Sysco Corporation 2022 Annual Report, *available at* https://investors.sysco.com/~/media/Files/S/Sysco-IR/documents/annual-reports/Sysco_2022-Annual-Report_Web.pdf.

[15] *See supra* note 6.

937400, at *2 (Del. Super. Ct. Mar. 9, 2016). Just as in Illinois, under Delaware law, this assignment is not champertous – Carina did not "stir up" this suit nor is it "fraudulent" or "frivolous." Sysco had already commenced this suit – alleging obviously meritorious claims – long before it assigned those claims to Carina.

Moreover, Delaware champerty doctrine primarily seeks to deter two types of intermeddling, neither of which are at issue here. *First*, "Delaware has long defined a champertous cause of action as 'an agreement between the owner of a claim and a volunteer that the latter may take the claim and collect it, *dividing the proceeds with the owner, if they prevail*.'" *Se. Chester Cnty. Refuse Auth. v. BFI Waste Servs. of Pennsylvania, LLC*, 2017 WL 2799160, at *7 (Del. Super. Ct. June 27, 2017) (emphasis added) (quoting *Gibson v. Gillespie*, 152 A. 589, 593 (Del. Super. Ct. 1928)); *Hall v. State*, 655 A.2d 827, 829 (Del. Super. Ct. 1994) (same). Here, there is no agreement to divide the proceeds. Instead, Carina owns the claim outright; Sysco will not receive *any* proceeds. The Assignment Agreement makes clear that Sysco transferred all rights to any proceeds from the claims and "retain[s] no rights" regarding the claims. ECF No. 1940, Ex. A ¶ 4. *Second*, the "doctrine of champerty 'is based upon the ground that no encouragement should be given to litigation by the introduction of a party to enforce those rights which the owners are *not disposed to prosecute*.'" *Charge Injection Techs.*, 2016 WL 937400, at *4 (emphasis in original) (quoting *Gibson*, 152 A. at 593). Sysco was clearly disposed to prosecute its claims because it had already done so. Under no circumstances could the Assignment here fall within Delaware's definition of champerty.

### D.      Defendants' Bare Policy Arguments Are Unavailing

Defendants devote a large portion of their brief suggesting that the Assignment violates a supposed prohibition against a third party controlling a party's lawsuit. Defendants contend (at 19) that "[t]here cannot be a sincere dispute that an agreement giving a litigation funder control over litigation claims and settlement is unlawful." In fact, there is sincere dispute. The Tribunal presiding over the arbitration between Sysco and Burford rejected Sysco's very argument on that point – and, in particular, rejected the opinions of Prof. Maya Steinitz, on which Defendants now attempt to rely. *See* Compl., Ex. C at 110-11, *Glaz LLC v. Sysco Corp.*, No. 1:23-cv-02489 (S.D.N.Y. Mar. 23, 2023), ECF No. 1-3 ("With great respect for Professor Steinitz's scholarship, the Tribunal majority nonetheless considers that . . . Burford's asserted consent right does not fall foul of any champerty or public policy or legal ethics barriers.") (crediting, instead of Prof. Steinitz, the expert opinions of Cornell Law Professor W. Bradley Wendel); *see also id.*, ECF No. 25-1 (Prof. Wendel's expert report).[16] In any event, that dispute is now beside the point: the Assignment Agreement does not give Carina control over Sysco's claims; it transfers ownership of Sysco's claims to Carina.

Defendants also cite (at 20) Prof. Steinitz's (rejected) opinions for the suggestion that assignment of Sysco's claims is "particularly problematic" in the antitrust context. Respectfully, Prof. Steinitz's opinion to that effect deserves no credence whatsoever. In

---

[16] It is procedurally improper for Defendants to purport to incorporate by reference an expert report submitted by a different party in a different case that did not involve assignment of claims.

addition to having had her other opinions rejected by the arbitral Tribunal, she has no expertise in antitrust law, and her opinions are diametrically opposite to the numerous court decisions that have held that the assignability of claims is critical to the purposes of the federal antitrust laws. None of Defendants' policy objections offer any basis to depart from the clear, well-established rule that federal antitrust claims are freely assignable.

## III.   SUBSTITUTION WILL FACILITATE CONDUCT OF THE LITIGATION

### A.   Substitution Is Appropriate Because Carina, Not Sysco, Holds the Interest in the Pending Claims

Contrary to Defendants' arguments, "substitution would 'facilitate the conduct of the litigation.'" *Jalin Realty Cap. Advisors, LLC v. A Better Wireless, NISP, LLC*, 2017 WL 1968285, at *3 (D. Minn. Apr. 18, 2017) (quoting *Commissions Imp. Exp., S.A. v. Republic of Congo*, 118 F. Supp. 3d 220, 231 (D.D.C. 2015)), *report and recommendation adopted*, 2017 WL 1967353 (D. Minn. May 11, 2017). To paraphrase *Jalin Realty*: "As [Sysco] retains no interest in the present case and [Carina] has the sole interest in the present case, allowing substitution would facilitate the conduct of the remaining litigation. In other words, because [Carina] now possesses all right to [the claims] and [Sysco] retains no interest in the present action, substitution is appropriate." 2017 WL 1968285, at *4; *see also ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995) (holding that the district court abused discretion by denying substitution following transfer of interest in property at issue); *Dubuque Stone Prods. Co. v. Fred L. Gray Co.*, 356 F.2d 718, 723-24 (8th Cir. 1966) (assignee was real party in interest under Rule 17(a) with the right to bring suit). Indeed, because Sysco's assignment to Carina is "complete

and unequivocal," Carina has "a legitimate interest in participating fully in the pursuit of those claims." *Great W. Cas. Co. v. Kirsch Transp. Servs., Inc.*, 2022 WL 4182377, at *3 (S.D. Iowa June 3, 2022).

Refusing substitution would frustrate – not facilitate – the conduct of the litigation. The Assignment is clear:   Carina possesses the *sole* power to prosecute these claims. Without Carina's participation, the action cannot "continue unabated." *ELCA Enters.*, 53 F.3d at 191 (citation omitted).  Because Carina is "clearly the real party in interest" and the sole beneficiary of the claims, it "should be substituted as the plaintiff in this case." *Couf v. Equitable Life Assurance Soc'y of the United States*, 2003 WL 27384629, at *2 (D. Minn. Dec. 17, 2003).  Defendants point the Court to no controlling case law which warrants departing from this well-worn course.

### B.    Substitution Will Not Impair Defendants' Discovery of Sysco

Defendants correctly point out (at 23-24) that discovery from Sysco, not from Carina, is relevant to the pending claims.  But that is no reason to reject substitution.  As Defendants themselves point out, during discovery (which ended more than eight months ago) they *already* "took significant and critical discovery from Sysco."  Opp. 6, 25. Granting the Substitution Motion will not change Defendants' access to, or ability to rely on, that discovery.  Defendants speculate that Carina may attempt "to dodge admissions and discovery proffered by Sysco," *id*. at 22, but it is blackletter law that an assignee "step[s] into the shoes of the assignor" and "is the functional equivalent of the original plaintiff." *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 389 (2d Cir. 2021) (citation omitted).  Not only did Sysco agree during the meet-and-confer process

to make witnesses available for trial, but the Court could always order witnesses to appear if necessary.  Accordingly, substitution will in no way impair Defendant's ability to obtain or use discovery from Sysco.

### C.      Substitution Cannot Be Denied Based on Defendants' Unsupported Belief That It Will Hinder Resolution of the Claims

Defendants also argue that substitution will complicate the resolution of these cases. But its lead argument on that score makes little sense.  Defendants point to expert discovery that is currently underway, and to summary judgment briefing scheduled to begin approximately nine months from now.  Opp. 25.  But those procedures will not be delayed in any way by the Substitution Motion.  Defendants' cases are not only non-binding, but they bear no resemblance to the posture of this case.  The pending motion in *Nationstar Mortgage LLC v. Fiesta Del Norte Homeowners Ass'n*, 2020 WL 10787496 (D. Nev. May 13, 2020), went to the heart of the substitution issue because it concerned the original plaintiff's standing and subject matter jurisdiction at the commencement of the litigation. *See also Nationstar Mortg. LLC v. Fiesta Del Norte Homeowners Ass'n*, 2020 WL 6111654, at *1 (D. Nev. Oct. 16, 2020).[17]  And in *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, substitution was sought for a defendant/counterclaim plaintiff by a new entity moving to amend the answer to assert non-liability for the original claim while still prosecuting the counterclaim.  269 F.R.D. 355, 356, 358 (S.D.N.Y. 2010), *judgment*

---

[17] In addition, the substitution motion in *Nationstar* was denied without prejudice because the movants failed to address the 9th Circuit's guidance on Rule 25(c).  2020 WL 10787496, at *1.

*entered*, 2010 WL 4237319 (S.D.N.Y. Oct. 5, 2010).   Carina and Sysco's Substitution Motion involves nothing of the sort.

Defendants' speculation (at 25-26) that substitution would make *settlement* of these claims more difficult is not a valid consideration under Rule 25.   There should be no mistake about what is going on here.   Defendants clearly prefer to continue to litigate against Sysco because of their hope to leverage their "business affiliations and mutual involvement in the pork industry" in settlement negotiations.   Opp. 27.   But that is irrelevant under Rule 25, which does not permit courts to deny substitution based on Defendants' preference for the assignor's settlement strategy over the assignee's. Defendants are not entitled to their choice of plaintiff.   Now that Sysco has validly assigned its claims to Carina, Carina is entitled to be substituted for Sysco.

The Court should also give no credence to Defendants' rhetoric about Carina's supposed "greed."   The "greedy" litigation funder is a tired trope – often used by Defendants to cast aspersions on the litigation funding industry, but just as frequently rejected by courts as utterly non-sensical.   *See*, *e.g.*, *Maslowski*, 944 N.W.2d at 241 (rejecting the argument in abolishing champerty).   As rational economic actors, Burford and Carina have no motive whatsoever to turn down favorable settlement offers that fairly reflect the merits of these claims.   But they also have no motive – unlike Sysco – to accept settlements that do not fairly reflect the value of the claims because of other, unrelated commercial considerations.   Having a plaintiff that is commercially unbeholden to the Defendants *advances* the antitrust laws' goal of "vigorous private enforcement of the antitrust laws." *Illinois Brick*, 431 U.S. at 745.

Judge Durkin, who presides over the *Broilers* case, put it well, when he rejected Sysco's effort to have its petition to vacate the arbitral award reassigned to him. *First*, the resolution of just one set of claims in a large MDL like this action "will have little impact on the contours of the case." Order at 2, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-8637 (N.D. Ill Apr. 13, 2023), ECF No. 6510. *Second*, potential settlement is not a relevant consideration: "While district judges sometimes mediate settlement, it is never appropriate to presume settlement." *Id*. at 4. Sysco has validly assigned its claims to Carina. Whether Carina will pursue a different litigation or settlement strategy as the new owner of the claims is far beyond the purview of Rule 25.

### D.  Defendants' Aspersions on Carina Are Meritless

Likewise, Defendants' effort to characterize Carina as a "sham" entity does not move the needle. To begin, Carina is no "sham" – it is an affiliate of Burford designed to hold and manage the specific claims acquired in the Assignment Agreement. There is nothing unusual or sinister about such a structure.

Empty rhetoric aside, none of Defendants' professed "concerns" about Carina are well founded. Defendants suggest that Carina might be judgment proof. But unlike *Potvin v. Speedway LLC*, there are no claims against Carina here. 891 F.3d 410, 416-17 (1st Cir. 2018). And Defendants' purported concern that Carina might not be able to pay for any discovery sanctions is utterly speculative. None of Defendants' remaining cases advance their arguments. Opp. 23-24. In each one, live claims remained *against* the entity seeking

to step out of the litigation, or the assignor retained ownership and control over some of the claims at issue.[18]  Neither of those concerns are present here.

Defendants also complain that discovery of Carina will be a "farce."  But as they acknowledge, Sysco "possesses all of the information relevant to the case," Opp. 23, and Defendants have already taken that discovery, *id*. at 6, 25.

Defendants' complaint about the 30(b)(6) deposition of Amory Investments LLC ("Amory") is a red herring.  *Id.* at 28.  Amory bought claims in a bankruptcy proceeding from an entity that has been dissolved.  Under those circumstances, designating a Burford witness was entirely appropriate.  In contrast, Defendants have *already taken* a 30(b)(6) deposition of Sysco, at which Sysco's Director of Pork testified as Sysco's designee.  There simply is no comparison.  Tellingly, Defendants did not file any motion based on the perceived inadequacy of the Amory 30(b)(6) designee, and they chose not to seek third-party discovery from the bankrupt entity's former employees.  Defendants' irrelevant and untimely complaints about the Amory 30(b)(6) deposition are simply part of their campaign to smear Burford.

Put simply, it is Defendants, not Carina and Sysco, that are unnecessarily complicating this litigation by opposing the Substitution Motion.  Substitution under Rule 25(c) "is designed to allow an action to continue unabated when an interest in a lawsuit changes hands," *ELCA Enters.*, 53 F.3d at 191 (internal citation and quotation marks

---

[18] *See Great W. Cas.*, 2022 WL 4182377, at *3; *Eastman Chem. Co. v. Alphapet Inc.*, 2011 WL 13054223, at *3 (D. Del. Dec. 9, 2011); *Bullets2Bandages, LLC v. Caliber Corp.*, 2019 WL 5684400, at *4 (S.D. Cal. Nov. 1, 2019).

omitted), and "ensure that litigation" is "conducted by the real party in interest," 25 Fed. Proc., L. Ed. § 59:433. Rather than minimizing the need for judicial involvement, Defendants seek to turn a routine substitution request into collateral discovery and adjudication of Carina's claims. Defendants' interpretation of Rule 25(c) also defies the directive that the Rules of Civil Procedure be "construed, administered, and employed" to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## IV.   DEFENDANTS IGNORE THE DOZENS OF ASSIGNMENTS IN THIS CASE, INCLUDING SOME BY SYSCO

There have been dozens of assignments in this case already – including some by Sysco. *See* ECF No. 827-1, Ex. B. Defendants conveniently make no mention of this fact. But if Defendants have their way, it would usher in a wave of additional discovery requests from Defendants to other assignees, justified by the same rationale Defendants advance here: the desire to know details about the *circumstances* of an assignment to purportedly assess its validity. That result is wholly unwarranted. As the prior assignments reflect, federal antitrust claims are freely assignable. There is no basis for investigating the reasons for the assignment. Carina is entitled to do what every other assignee is doing in this case: prosecute the claims it owns in its own name. Treating Carina differently from other assignees serves no purpose, and would open up a Pandora's box that would impede the orderly administration of the cases.

## V.  DEFENDANTS' DISCOVERY DEMANDS ARE UNWARRANTED AND ANTITHETICAL TO THE GOAL OF ENCOURAGING SETTLEMENT OF LITIGATION

As Defendants point out, Sysco's assignment to Carina brought to an end the contentious litigation between Sysco and Burford.  These sophisticated parties, represented by experienced counsel, determined that it was best to resolve their dispute, and effectuate the Assignment.[19]  For good reasons, when parties resolve disputes consensually, courts seek to enforce those settlements.  Defendants' actions here, however, are at odds with that objective.  After Sysco and Burford successfully worked to put their differences behind them, Defendants want to investigate the process and terms of the Sysco-Burford resolution[20] – and potentially risk undoing it.  Acceding to Defendants' demand for such information would be contrary to the strong federal policy favoring the enforcement of voluntary settlements.

---

[19] In settling their dispute, Sysco and Burford voluntarily dismissed all proceedings between them.  *See, e.g.*, Stipulation of Dismissal, *Sysco Corp. v. Glaz LLC*, No. 1:23-cv-01451 (N.D. Ill. June 28, 2023), ECF No. 56; Stipulation of Dismissal, *Glaz LLC v. Sysco Corp.*, No. 1:23-cv-02489 (S.D.N.Y. June 29, 2023), ECF No. 43.  As part of that resolution, Sysco assigned its food antitrust claims – including its claims in this case – to Carina, a Burford affiliate.  Pursuant to the Assignment Agreement, Sysco agreed to "unconditionally sell[], assign[] and transfer[] . . . all of [Sysco's] right, title and interest" in the claims to Carina.  ECF No. 1940, Ex. A ¶ 2.  Accordingly, Carina "possesses all rights to prosecute, enforce and collect the Claims," and Sysco "retain[s] no rights to do so."  *Id.* ¶ 4.  Defendants mischaracterize the Assignment, saying that Sysco sold or assigned its lawsuits to Carina.  Opp. 10.

[20] *See, e.g.*, Opp. 30 (seeking "information related to the underlying agreement between Sysco and Burford; the terms of the assignment between Sysco and Carina; any rights retained by Sysco; any consideration negotiated between Sysco and Carina (and/or Burford); and updated discovery regarding Sysco's assessment of its claims and rationale for assigning them away.").

Defendants' discovery demands (at 30-31) are also irrelevant and disproportionate to the needs of the case under Rule 26.[21]  The Assignment is the document that effectuates the transfer of Sysco's claims in this case to Carina.  Defendants need nothing more than the Assignment itself.  Any broader discovery would sanction a fishing expedition into protected communications[22] that are simply not relevant to the Substitution Motion.[23]  Further, several of the pieces of "information" Defendants demand (at 32) are not really factual in nature and instead raise issues of law that are premature and/or unaffected by the Substitution Motion.

---

[21] The cases Defendants cite (at 30) are inapposite.  *Tool-Plas Sys., Inc. v. Camaco, LLC* involved a pre-suit assignment, thus raising the question of whether the substituted party could have filed suit in the first instance.  *See* 2010 WL 1347686, at \*1 (E.D. Mich. Mar. 31, 2010).  *Urena v. Nationwide Ins. Co. of Am.* did not even involve a Rule 25(c) motion.  *See* 2017 WL 735583, at \*1 (D.S.C. Feb. 24, 2017).  And *Moroccanoil, Inc. v. Conforti* involved a corporate merger under Canadian law, not an express assignment like this case.  *See* 2021 WL 2310092, at \*1 (D.N.J. June 4, 2021).

[22] Not only are communications made in furtherance of settlement negotiations protected from third party discovery, *see Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003), but courts have routinely held that plaintiff's communications with a litigation funder, or potential litigation funder, are protected work product, *see, e.g.*, *Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at \*1 (N.D. Ill. June 30, 2017) (St. Eve, J.); *Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1021 (D. Ariz. 2020); *In re Int'l Oil Trading Co.*, 548 B.R. 825, 831-36 (Bankr. S.D. Fla. 2016); *Charge Injection Techs., Inc. v. E.I. DuPont de Nemours & Co.*, 2015 WL 1540520 at \*5 (Del. Super. Ct. Mar. 31, 2015); *Miller UK Ltd.*, 17 F. Supp. 3d at 730.

[23] For example, Defendants seek to obtain information related to "any consideration negotiated between Sysco and Carina (and/or Burford)."  Opp. 30.  But that information is irrelevant to whether an assignment of antitrust claims is valid.  *See Wallach*, 837 F.3d at 369-70 ("Part of creating incentives for private antitrust suits is making federal courts a welcome forum for such litigation, and erecting the barrier of consideration threatens to shut out otherwise meritorious suits from resolution.").

At bottom, the substitution of Carina for Sysco neither asks, nor requires, Defendants to forgo any substantive rights or arguments. *See* 25 Fed. Proc., L. Ed. § 59:433 ("Substitution of parties pursuant to Rule 25(c) is a procedural mechanism designed to facilitate the continuation of an action when an interest in the lawsuit is transferred and does not affect substantive rights of parties and is not designed to create new relationships among parties to a suit.") (footnotes omitted); *Dubuque*, 356 F.2d at 724 ("assignment did not cause [defendant] to lose the right to assert, against [assignee], any defenses which it could have asserted against [assignor]").  In short, they have no reasonable basis to object.

## CONCLUSION

For these reasons, Carina respectfully requests that the Court grant the motion and substitute Carina Ventures LLC for Sysco Corporation as plaintiff in this action.

Dated:  August 7, 2023                              Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
Travis G. Edwards
Dustin G. Graber
KELLOGG, HANSEN, TODD, FIGEL
     & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
tedwards@kellogghansen.com
dgraber@kellogghansen.com

Scott E. Gant
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
sgant@bsfllp.com

Colleen A. Harrison
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8204
charrison@bsfllp.com

Christopher A. Seeger
Jennifer Scullion
SEEGER WEISS LLP
55 Challenger Road
Ridgefield Park, NJ 07660
Tel: 212-584-0700
cseeger@seegerweiss.com
jscullion@seegerweiss.com

*Counsel for Carina Ventures LLC*