# EXHIBIT 5

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Court File No. 0:18-cv-01776-JRT-HB |
| This Document Relates To:<br><br>All Consumer Indirect Purchaser Actions | **CONSUMER INDIRECT PURCHASER PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES** |

The Consumer Indirect Purchaser Plaintiffs[1]—Borhan Ishani Afoosi, Michael Anderson, Rebekah Kingsley, Sandra Steffen, Michael Pickett, Lisa Axelrod, David Look, Joseph Realdine, Ryan Kutil, Kory Bird, Barbara Brueggemann, Duncan Birch, Paul Glantz, Jordan Chambers, Robert Eccles, Jennifer Sullivan, Anbessa Tufa, Susan McCullough, Kenneth King, Craig Thomsen, Alika Naehu, Wanda Duryea, Michael Reilly, Edwin Blakey, Jeffrey Allison, Kenneth Neal, Chad Nodland, Chris Deery, Laura Wheeler, Christina Hall, Chase Hoke, Donya Collins, Thomas Cosgrove, Rebecca Green Watson, and Charles Dye (collectively, "Consumers")— through counsel, hereby serve these objections and responses to Defendants' First Set of Interrogatories, served on January 26, 2021.

These responses are made without waiving or intending to waive, but to the contrary, preserving and intending to preserve:

a)      all questions as to competency, relevancy, materiality, privilege, and

admissibility as evidence for any purpose of any of the documents

---

[1] Plaintiffs Lisa Axelrod, Barbara Brueggemann, and Anbessa Tufa seek to withdraw as proposed class representatives and named plaintiffs. Consumers are dismissing the remaining claims for states where only unjust enrichment claims remain after the Motion to Dismiss Order (ECF 361): Mississippi, Massachusetts, and Virginia. This means Plaintiffs Paul Glantz, Rebecca Green Watson, and Susan McCullough will also be withdrawn as class representatives and named plaintiffs.

provided in connection herewith;

b)      the right to object on any ground to the use of the documents produced

hereunder, or the subject matter thereof, at any trial or hearing in this

matter, or in any related or subsequent action or proceeding;

c)      the right to object on any ground, at any time, to a demand for further

response or documents; and

d)      the right to, at any time, revise, supplement, correct, or add to these

responses.

The failure of Consumers to object on a particular ground to a specific interrogatory

should in no way be construed to be a waiver of the right to object on additional grounds or to

supplement their objections and responses at a later time after further investigation and/or in

response to clarifications or interpretations provided by the Defendants.

A response to any interrogatory shall not be deemed an admission or acknowledgement

that such interrogatory calls for information that is relevant to the subject matter of this litigation

or admissible at any trial thereof.

## **OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.      Consumers object to Defendants' Instructions and Definitions to the extent they

expand the Interrogatories to information and documents beyond what is available from a

reasonable search of Consumers' electronic and/or hard-copy files or is reasonably within

Consumers' knowledge or control.

2.      Consumers' object to the Instructions and Definitions to the extent they require

the production of information already within Defendants' possession and control and/or that is

equally available from public sources or other third-party sources.

2

3.    Consumers object to Defendants' definition of the term "Communications" on the grounds that "means any contact whatsoever" is overly broad and will, instead, interpret the term consistent with commonsense and the remaining definition provided. Consumers object to the extent this definition seeks to require the disclosure of materials protected by the attorney-client privilege, the work-product doctrine, and/or the common-interest doctrine.

4.    Consumers object to Defendants' definition of the terms "CIPP", "You," and "Your" as overly broad, unduly burdensome, and not in compliance with the Federal Rules of Civil Procedure. Consumers object to the extent this definition seeks Consumers to disclose any information about putative class members. Consumers will only respond on behalf of the plaintiffs named in their operative complaint, *see* ECF 392.

5.    Consumers object to Defendants' definition of the term "Describe" as overly broad, unduly burdensome, and not in compliance with the Federal Rules of Civil Procedure. Consumers object to the extent this definition seeks to require the disclosure of materials protected by the attorney-client privilege, the work-product doctrine, and/or the common-interest doctrine. Consumers will not disclose or produce documents or information relating to any expert or other person or entity retained by Consumers' counsel to assist in the preparation of their case. Consumers will not disclose or produce documents or information revealing the subject of expert analysis.

6.    Consumers object to Defendants' definition of the term "Document" as overly broad, unduly burdensome, vague, ambiguous, and not in compliance with the Federal Rules of Civil Procedure. In particular, the inclusion of "all copies of documents" is overly broad, not proportional to the needs of the case, and potentially seeks information and documents not in the possession, custody, or control of any individual Consumer. Consumers will interpret

3

"Document" to be synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a). Consumers object to the extent this definition seeks to require the disclosure of materials protected by the attorney-client privilege, the work-product doctrine, and/or the common-interest doctrine.

7.    Consumers object to Defendants' definitions of the terms "Identify" as overly broad, unduly burdensome, vague, ambiguous, not proportional to the needs of the case, and seeking irrelevant information. Consumers will respond to these Interrogatories with information and documents reasonably within their possession, custody, or control. Consumers object to the extent this definition seeks to require the disclosure of materials protected by the attorney-client privilege, the work-product doctrine, and/or the common-interest doctrine. Consumers will not disclose or produce documents or information relating to any expert or other person or entity retained by Consumers' counsel to assist in the preparation of their case. Consumers will not disclose or produce documents or information revealing the subject of expert analysis.

8.    Consumers object to Defendants' definition of the term "Person" as overly broad, unduly burdensome, vague, ambiguous, not proportional to the needs of the case, and seeking irrelevant information. In particular, the inclusion of "all parents, subsidiaries, affiliates, partners, joint venturers, agents, employees, representatives, accountants, investment bankers, or attorneys acting on behalf of the corporation or other entity" is information not necessarily known by Consumers and includes individuals and entities beyond the named parties that are irrelevant and outside the scope of the case. In addition, the word "representatives" as used in the definition of "Person" is vague, ambiguous, and overly broad. Consumers object to the extent this definition seeks to require the disclosure of materials protected by the attorney-client privilege, the work-product doctrine, and/or the common-interest doctrine. Consumers will not disclose or produce

4

documents or information relating to any expert or other person or entity retained by Consumers' counsel to assist in the preparation of their case. Consumers will not disclose or produce documents or information revealing the subject of expert analysis.

9.      Consumers object to Defendants' definition of the terms "Relating to," "referring to," "reflecting," and "regarding" as vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of the case to the extent they purport to impose upon Consumers obligations greater than those set forth in the Federal Rules of Civil Procedure. In particular, the phrase "or is in any way, directly or indirectly, relevant to the subject" as vague and ambiguous, not proportional to the needs of the case, and potentially seeking irrelevant information.

10.     Consumers object to Defendants' definition of the term "Representative" as vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of the case. In particular, the persons identified in this definition are duplicative of those in Defendants' definition of the term "Person," seeks information not necessarily known by Consumers, and includes individuals and entities beyond the named parties that are irrelevant and outside the scope of the case. Consumers object to the extent this definition seeks to require the disclosure of materials protected by the attorney-client privilege, the work-product doctrine, and/or the common-interest doctrine.

11.     Consumers object to Defendants' third instruction as vague, ambiguous, overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeking information protected by the attorney-client privilege, the work-product doctrine, and/or the common-interest doctrine.

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

### Interrogatory No. 1:

Describe in detail the "price-fixing agreement" that You contend the Defendants entered into, *see* Compl. ¶ 6, including a description of (a) what the Defendants allegedly agreed to do or not do (*e.g.*, was it an agreement to limit hog production, and if so what was agreed to; was it an agreement involving pork processing facilities, and if so what was agreed to; was it an agreement to fix prices of some product at a certain level, and if so what was agreed to; was it an agreement involving exports, and if so what was agreed to; etc.); (b) the product(s) that were subject to the alleged agreement (*e.g.*, was it an agreement relating to sows, or hogs more generally; if it was an agreement relating to the prices or production levels of pork products, which product(s) were subject to the agreement; if it was an export agreement, which product(s) were subject to the agreement); (c) the facilities and/or geographic area(s) covered by the alleged agreement (*e.g.*, if You allege an agreement to limit hog production, was it a nationwide agreement, a global agreement, or was it focused on hog production in a particular area; or if You allege an agreement relating to pork processing, which plants or geographic areas were involved); (d) the date when the agreement was allegedly formed; and (e) the identity of all entities that You contend participated in the alleged conspiracy, whether or not named as a Defendant in this Action.

### Response to Interrogatory No. 1:

Consumers object to this Contention Interrogatory on the ground that it is premature. A party "need not provide their answer to . . . a contention interrogatory immediately." *Scheffler v. Molin*, No. CIV. 11-3279 JNE/JJK, 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012). Courts in this District defer contention interrogatories until the end of fact discovery, when the parties have read the essential documents in the case and deposed witnesses. *See, e.g.*, *Cambria Co. LLC v. Pental Granite & Marble, Inc.*, Civil No. 12–228 (JRT/AJB), 2013 WL 12147608 at *3 (D. Minn. Oct. 17, 2013); *Frank v. Gold'n Plump Poultry, Inc.*, Civ. No. 04-1018 (PJS/RLE), 2006 WL 8444696 at *2 (D. Minn. Aug. 16, 2006); *United States v. Cameron-Ehlen Group, Inc.*, Case No. 13-cv-3003 (WMW/DTS), 2019 WL 1453063 at *2 (April 2, 2019); *ADC Telecommunications, Inc. v. Thomas & Betts Corp.*, No. 98CV2055, 2001 WL 1381098 at *4 (D. Minn. Oct. 18, 2001). Applying these principles, Defendants' Contention Interrogatory is premature. Defendants and third parties are just beginning to produce documents and have

taken no depositions to date.

Moreover, Consumers object to this Interrogatory to the extent is seeks information protected from disclosure pursuant to the common-interest and work-product doctrines and/or attorney-client privilege, including intangible information related to the mental impressions, conclusions, opinions, and/or legal theories of Consumers' counsel and/or Consumers' experts, which are protected from disclosure pursuant to the work-product doctrine. Consumers will not respond with documents or information that are protected from disclosure by the attorney-client privilege, the attorney-work-product doctrine, the common-interest doctrine, or any other applicable privilege, right, immunity, or exemption from discovery, whether set forth in the Federal Rules of Civil Procedure, common law, case-law doctrine, or the constitution and other laws of the United States or applicable state law. Consumers will not respond with documents or information seeking the subject of expert analysis.

Without waiving the forgoing objections, Consumers will provide a substantive response to this Interrogatory, subject to any applicable objections, after the completion of fact discovery, at which time Consumers will respond to this Interrogatory with documents and information reasonably within their possession, custody, or control only and will not produce documents or information relating to any expert or other person or entity retained by Consumers' counsel to assist in the preparation of their case. Consumers may produce expert report(s) in this matter, and if so, will comply with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Minnesota or any other applicable local rules, case law, or court orders in producing related documents.

**Interrogatory No. 2:**

Describe in detail Your contention that Agri Stats reports were used in connection with the alleged conspiracy, *see* Compl. at ¶¶ 17-90, including (a) the specific Agri Stats report(s) that You contend

were allegedly used in connection with the alleged conspiracy; (b) the specific type or category of information in those reports that You contend was allegedly used in connection with the alleged conspiracy; and (c) detailed explanation of how such information was allegedly used in connection with the alleged conspiracy (*e.g.*, if You contend that the information was used to monitor the alleged conspiracy, what information was used and how that information was used to monitor the alleged conspiracy).

**Response to Interrogatory No. 2:**

Consumers object to this Contention Interrogatory on the ground that it is premature. A party "need not provide their answer to . . . a contention interrogatory immediately." *Scheffler v. Molin*, No. CIV. 11-3279 JNE/JJK, 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012). Courts in this District defer contention interrogatories until the end of fact discovery, when the parties have read the essential documents in the case and deposed witnesses. *See, e.g.*, *Cambria Co. LLC v. Pental Granite & Marble, Inc.*, Civil No. 12–228 (JRT/AJB), 2013 WL 12147608 at *3 (D. Minn. Oct. 17, 2013); *Frank v. Gold'n Plump Poultry, Inc.*, Civ. No. 04-1018 (PJS/RLE), 2006 WL 8444696 at *2 (D. Minn. Aug. 16, 2006); *United States v. Cameron-Ehlen Group, Inc.*, Case No. 13-cv-3003 (WMW/DTS), 2019 WL 1453063 at *2 (April 2, 2019); *ADC Telecommunications, Inc. v. Thomas & Betts Corp.*, No. 98CV2055, 2001 WL 1381098 at *4 (D. Minn. Oct. 18, 2001). Applying these principles, Defendants' Contention Interrogatory is premature. Defendants and third parties are just beginning to produce documents and have taken no depositions to date.

Without waiving the forgoing objections, Consumers will provide a substantive response to this Interrogatory, subject to any applicable objections, after the completion of fact discovery.

**Interrogatory No. 3:**

Identify with specificity all public statement(s) that You contend the Defendants (including anyone speaking on behalf of the Defendants) made in furtherance of the alleged conspiracy, including the date, time, location, the speaker, the content and the circumstances of the statement(s) made.

**Response to Interrogatory No. 3:**

Consumers object to this Contention Interrogatory on the ground that it is premature. A party "need not provide their answer to . . . a contention interrogatory immediately." *Scheffler v. Molin*, No. CIV. 11-3279 JNE/JJK, 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012). Courts in this District defer contention interrogatories until the end of fact discovery, when the parties have read the essential documents in the case and deposed witnesses. *See, e.g.*, *Cambria Co. LLC v. Pental Granite & Marble, Inc.*, Civil No. 12–228 (JRT/AJB), 2013 WL 12147608 at *3 (D. Minn. Oct. 17, 2013); *Frank v. Gold'n Plump Poultry, Inc.*, Civ. No. 04-1018 (PJS/RLE), 2006 WL 8444696 at *2 (D. Minn. Aug. 16, 2006); *United States v. Cameron-Ehlen Group, Inc.*, Case No. 13-cv-3003 (WMW/DTS), 2019 WL 1453063 at *2 (April 2, 2019); *ADC Telecommunications, Inc. v. Thomas & Betts Corp.*, No. 98CV2055, 2001 WL 1381098 at *4 (D. Minn. Oct. 18, 2001). Applying these principles, Defendants' Contention Interrogatory is premature. Defendants and third parties are just beginning to produce documents and have taken no depositions to date.

Without waiving the forgoing objections, Consumers will provide a substantive response to this Interrogatory, subject to any applicable objections, after the completion of fact discovery.

**Interrogatory No. 4:**

Identify and Describe in detail all data and/or analyses upon which Your allegations are based, including but not limited to data and/or analyses underlying (a) Figures 1-10 and 12-15 and the chart in Paragraph 153 of the Complaint; (b) Your allegation that the concentration level in the pork industry "exceeds the DOJ threshold for a 'moderately concentrated industry,'" Compl. ¶¶ 153-54; (c) Your allegation that each Defendants' market share remained stable throughout the alleged conspiracy period, *see* Compl. ¶¶ 151-52; (d) Your allegation that "the demand for pork is inelastic," *see* Compl. ¶ 188; (e) Your allegation that "[b]eginning in 2009, the pork industry showed abnormal price movements," Compl. ¶ 124; and (e) Your allegation that the spread between Defendants' revenues and costs increased during the alleged conspiracy period, *see*

Compl. ¶¶ 127-132.

**<u>Response to Interrogatory No. 4:</u>**

Consumers object to this Interrogatory as duplicative of Document Request No. 4. Consumers object to this Interrogatory on the ground that it is a premature contention interrogatory. Discovery is not yet over; in fact, Defendants and third parties are just beginning to produce documents and have taken no depositions to date. Consumers object to this Interrogatory to the extent is seeks information protected from disclosure pursuant to the common-interest and work-product doctrines and/or attorney-client privilege, including intangible information related to the mental impressions, conclusions, opinions, and/or legal theories of Consumers' counsel and/or Consumers' experts, which are protected from disclosure pursuant to the work-product doctrine. Consumers will not respond with documents or information that are protected from disclosure by the attorney-client privilege, the attorney-work-product doctrine, the common-interest doctrine, or any other applicable privilege, right, immunity, or exemption from discovery, whether set forth in the Federal Rules of Civil Procedure, common law, case-law doctrine, or the constitution and other laws of the United States or applicable state law. Consumers learned of the facts supporting their claims in this Action through discussions with counsel and these data and analyses will not be disclosed. Consumers will not respond with documents or information seeking the subject of expert analysis.

Without waiving the foregoing objections, and because Defendants appear focused on publicly-available documents and information obtained prior to discovery, Consumers represent their allegations are further supported by the following data:

**(a) Figures 1-10 and 12-15 and the chart in Paragraph 153 of the Complaint;**

- Figure 1 – This figure is based on data compiled by the USDA regarding Annual Commercial Hog Production by weight, (accessible at the following  link

  https://www.ers.usda.gov/webdocs/DataFiles/51875/MeatStatsFull.xlsx?v=1423.7)

- Figure 2 – This figure is based on data compiled by the USDA regarding average hog wholesale prices (accessible at the following link

  https://www.ers.usda.gov/webdocs/DataFiles/51875/WholesalePrices.xlsx?v=7286.5)

- Figure 3 – This figure is based on data compiled by the USDA  regarding pork cutout composite prices, (accessible at the following link

  https://www.ers.usda.gov/webdocs/DataFiles/51875/WholesalePrices.xlsx?v=7286.5)

- Figure 4 – There are three series depicted in this chart. Each series is based on the following:

  - Orange line: This series is based on data compiled by the USDA  regarding pork cutout composite prices, (accessible at the following link

    https://www.ers.usda.gov/webdocs/DataFiles/51875/WholesalePrices.xlsx?v=7286.5)

  - Blue line: This series is based on data compiled by the USDA regarding live hog costs (accessible at the following link

    https://www.ers.usda.gov/webdocs/DataFiles/51875/LivestockPrices.xlsx?v=9620.9)

  - The grey bars (estimated Hog-Composite spread) are calculated by the difference between the pork cut out composite price and the live hog price, both on a composite basis.

- Figure 5 – This is a bar chart that looks at the statistical significance of the Hog-composite spread calculated in the previous figure. The Welch's t-test was used to check the statistical significance.

- Figure 6 – This was based on Tyson's publicly available financial data. Operating Income was calculated based on Revenues – (Op. Cost + Cost of Sales ).

- Figure 7 – This was based on Smithfield's publicly available financial data. Operating Income was calculated based on Revenues – (Op. Cost + Cost of Sales ).

- Figure 8 – This was based on the CPI average price data for bacon (available at https://fred.stlouisfed.org/series/APU0000704111)

- Figure 9 – This was based on the CPI Average Price Data for Other Pork (available at https://beta.bls.gov/dataViewer/view/timeseries/APU0000FD4101)

- Figure 10 – This was based on the CPI average price data for Ham (available at https://beta.bls.gov/dataViewer/view/timeseries/APU0000FD2101)

- Figure 12 – This chart was based on publicly available information, such as USDA Packers and Stockyards Program Reports.

- Figure 13 – This chart was based on publicly-available information regarding mergers in the pork industry.

- Figure 14 – This chart was based on publicly-available information, such as data published in pork checkoff reports.

- Figure 15 – This chart was based on the same data used in Figure 14. The standard deviation is a common statistical measurement of spread or dispersion around the mean value in a dataset.

**(b) Your allegation that the concentration level in the pork industry "exceeds the DOJ threshold for a 'moderately concentrated industry,'" Compl. ¶¶ 153-54;**

- The HHI values for the pork industry were calculated based on information provided in a publicly-available presentation from Smithfield for their November 30, 2016 investor day.

- The HHI values for the other industries were taken from the Economic Census (2012): https://www.census.gov/data/datasets/2012/econ/census/2012-manufacturing.html

**(c) Your allegation that each Defendants' market share remained stable throughout the alleged conspiracy period, *see* Compl. ¶¶ 151-52;**

- The allegation was based on the analysis in Figures 14 & 15.

**(d) Your allegation that "the demand for pork is inelastic," *see* Compl. ¶ 188;**

- The allegation was based on a review of various publicly available calculations of demand elasticity in the pork market.

**(e) Your allegation that "[b]eginning in 2009, the pork industry showed abnormal price movements," Compl. ¶ 124; and**

- The allegation was based on the previously described analysis, such as in Figures 2 through 11.

**(e) Your allegation that the spread between Defendants' revenues and costs increased during the alleged conspiracy period, *see* Compl. ¶¶ 127-132.**

- This allegation was based on the previously described analysis in Figures 2-7.

**Interrogatory No. 5:**

Identify and Describe in detail each transaction in which You purchased any pork products that You contend was impacted by the alleged conspiracy, including (a) the identity of all persons or entities from whom You purchased any pork products; (b) a description of the product(s) You purchased; (c) the amount purchased; (d) the prices You paid, including any discounts, rebates or

13

promotions You received; and (e) the date(s) of the purchase.

**Response to Interrogatory No. 5:**

Consumers object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. Consumers interpret "pork product" to mean any product that is the basis of Consumers' complaint, *see* ECF 392, and/or any product the purchase of which Consumers claim is the basis of any damage sustained, and includes pig or swine meat sold or purchased fresh or frozen, or any processed pork product, including but not limited to smoked ham, sausage, and bacon. Consumers object to this Interrogatory as duplicative of Document Request Nos. 1 and 2.

Without waiving the foregoing objections and to the extent any individual Consumer remembers such specific details, that information is included in Exhibit A. This response is based upon facts and information known by Consumers at the time of their response to these interrogatories and on the current status of the proceedings. Consumers' discovery and investigation are not yet complete and are continuing as of the date of these responses. Consumers reserve the right to supplement, modify, or amend these responses in accordance with the Federal Rules of Civil Procedure, and in light of relevant decisions in this case.

**Interrogatory No. 6:**

For each transaction described in response to Interrogatory No. 5, Identify (a) the hog producer that produced the hog from which the product You purchased was derived and (b) the pork processor that processed the pork product You purchased.

**Response to Interrogatory No. 6:**

Consumers object to this Interrogatory as unduly burdensome and not proportional to the needs of the case. Consumers object to the undefined terms "hog producer" and "pork processor" as vague and ambiguous, duplicative, and is subject to ongoing discovery from

Defendants, third parties, and direct-action plaintiffs. As such, responsive information is more readily available to Defendants' as it is in their possession, custody, and control. Consumers interpret "pork product" to mean any product that is the basis of Consumers' complaint, *see* ECF 392, and/or any product the purchase of which Consumers claim is the basis of any damage sustained, and includes pig or swine meat sold or purchased fresh or frozen, or any processed pork product, including but not limited to smoked ham, sausage, and bacon. Consumers object to this Interrogatory as duplicative of Document Request Nos. 1 and 2.

Without waiving the foregoing objections and to the extent any individual Consumer knows such specific details, that information is included in Exhibit A. This response is based upon facts and information known by Consumers at the time of their response to these interrogatories and on the current status of the proceedings. Consumers' discovery and investigation are not yet complete and are continuing as of the date of these responses. Consumers reserve the right to supplement, modify, or amend these responses in accordance with the Federal Rules of Civil Procedure, and in light of relevant decisions in this case.

**Interrogatory No. 7:**

Identify all persons or entities in the chain of distribution between the Defendants and You, including all direct purchasers and intermediaries who purchased and resold Defendants' pork products.

**Response to Interrogatory No. 7:**

Consumers object to this Contention Interrogatory on the ground that it is overbroad, vague and ambiguous, and premature. A party "need not provide their answer to . . . a contention interrogatory immediately." *Scheffler v. Molin*, No. CIV. 11-3279 JNE/JJK, 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012). Courts in this District defer contention interrogatories until the end of fact discovery, when the parties have read the essential

documents in the case and deposed witnesses. *See, e.g.*, *Cambria Co. LLC v. Pental Granite & Marble, Inc.*, Civil No. 12–228 (JRT/AJB), 2013 WL 12147608 at *3 (D. Minn. Oct. 17, 2013); *Frank v. Gold'n Plump Poultry, Inc.*, Civ. No. 04-1018 (PJS/RLE), 2006 WL 8444696 at *2 (D. Minn. Aug. 16, 2006); *United States v. Cameron-Ehlen Group, Inc.*, Case No. 13-cv-3003 (WMW/DTS), 2019 WL 1453063 at *2 (April 2, 2019); *ADC Telecommunications, Inc. v. Thomas & Betts Corp.*, No. 98CV2055, 2001 WL 1381098 at *4 (D. Minn. Oct. 18, 2001). Applying these principles, Defendants' Contention Interrogatory is premature. Defendants and third parties are just beginning to produce documents and have taken no depositions to date. Information responsive to this Interrogatory is subject to ongoing discovery from Defendants, third parties, and direct-action plaintiffs. As such, responsive information is more readily available to Defendants' as it is in their possession, custody, and control.

Moreover, Consumers object to this Interrogatory to the extent is seeks information protected from disclosure pursuant to the common-interest and work-product doctrines and/or attorney-client privilege, including intangible information related to the mental impressions, conclusions, opinions, and/or legal theories of Consumers' counsel and/or Consumers' experts, which are protected from disclosure pursuant to the work-product doctrine. Consumers will not respond with documents or information that are protected from disclosure by the attorney-client privilege, the attorney-work-product doctrine, the common-interest doctrine, or any other applicable privilege, right, immunity, or exemption from discovery, whether set forth in the Federal Rules of Civil Procedure, common law, case-law doctrine, or the constitution and other laws of the United States or applicable state law. Consumers will not respond with documents or information seeking the subject of expert analysis.

Without waiving the forgoing objections, Consumers will provide a substantive response to this Interrogatory, subject to any applicable objections, after the completion of fact discovery, at which time Consumers will respond to this Interrogatory with documents and information reasonably within their possession, custody, or control only and will not produce documents or information relating to any expert or other person or entity retained by Consumers' counsel to assist in the preparation of their case. Consumers may produce expert report(s) in this matter, and if so, will comply with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Minnesota or any other applicable local rules, case law, or court orders in producing related documents.

**Interrogatory No. 8:**

Describe in detail all bases for Your contention that "the overcharges on pork can be traced from defendants to plaintiffs and class members," Compl. ¶ 258, including a description of all analysis that You (or anyone acting on Your behalf) undertook to trace overcharges from Defendants to You, the information underlying such analysis, and the source of the information.

**Response to Interrogatory No. 8:**

Consumers object to this Contention Interrogatory on the ground that it is premature. A party "need not provide their answer to . . . a contention interrogatory immediately." *Scheffler v. Molin*, No. CIV. 11-3279 JNE/JJK, 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012). Courts in this District defer contention interrogatories until the end of fact discovery, when the parties have read the essential documents in the case and deposed witnesses. *See, e.g.*, *Cambria Co. LLC v. Pental Granite & Marble, Inc.*, Civil No. 12–228 (JRT/AJB), 2013 WL 12147608, at *3 (D. Minn. Oct. 17, 2013); *Frank v. Gold'n Plump Poultry, Inc.*, Civ. No. 04-1018 (PJS/RLE), 2006 WL 8444696 at *2 (D. Minn. Aug. 16, 2006); *United States v. Cameron-Ehlen Group, Inc.*, Case No. 13-cv-3003 (WMW/DTS), 2019 WL 1453063 at *2 (April 2, 2019); *ADC Telecommunications, Inc. v. Thomas & Betts Corp.*, No. 98CV2055, 2001 WL 1381098 at *4

(D. Minn. Oct. 18, 2001). Applying these principles, Defendants' Contention Interrogatory is premature. Defendants and third parties are just beginning to produce documents and have taken no depositions to date.

Moreover, Consumers object to this Interrogatory to the extent is seeks information protected from disclosure pursuant to the common-interest and work-product doctrines and/or attorney-client privilege, including intangible information related to the mental impressions, conclusions, opinions, and/or legal theories of Consumers' counsel and/or Consumers' experts, which are protected from disclosure pursuant to the work-product doctrine. Consumers will not respond with documents or information that are protected from disclosure by the attorney-client privilege, the attorney-work-product doctrine, the common-interest doctrine, or any other applicable privilege, right, immunity, or exemption from discovery, whether set forth in the Federal Rules of Civil Procedure, common law, case-law doctrine, or the constitution and other laws of the United States or applicable state law. Consumers will not respond with documents or information seeking the subject of expert analysis.

Without waiving the forgoing objections, Consumers will provide a substantive response to this Interrogatory, subject to any applicable objections, after the completion of fact discovery, at which time Consumers will respond to this Interrogatory with documents and information reasonably within their possession, custody, or control only and will not produce documents or information relating to any expert or other person or entity retained by Consumers' counsel to assist in the preparation of their case. Consumers may produce expert report(s) in this matter, and if so, will comply with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Minnesota or any other applicable local rules, case law, or court orders in producing related documents.

**Interrogatory No. 9:**

Describe in detail all bases for Your contention that "while the direct purchasers were the first to pay supracompetitive prices, the overcharge was passed along the distribution chain and absorbed by plaintiffs and class members when they purchased the pork for personal use," Compl. ¶ 258, including the amount of the alleged overcharges that were passed along to You, all analysis that You (or anyone acting on Your behalf) undertook to determine that direct purchasers and other intermediaries in the chain of distribution between the Defendants and You passed along the alleged overcharges, the information underlying such analysis and the source of the information.

**Response to Interrogatory No. 9:**

Consumers object to this Contention Interrogatory on the ground that it is premature. A party "need not provide their answer to . . . a contention interrogatory immediately." *Scheffler v. Molin*, No. CIV. 11-3279 JNE/JJK, 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012). Courts in this District defer contention interrogatories until the end of fact discovery, when the parties have read the essential documents in the case and deposed witnesses. *See, e.g.*, *Cambria Co. LLC v. Pental Granite & Marble, Inc.*, Civil No. 12–228 (JRT/AJB), 2013 WL 12147608 at *3 (D. Minn. Oct. 17, 2013); *Frank v. Gold'n Plump Poultry, Inc.*, Civ. No. 04-1018 (PJS/RLE), 2006 WL 8444696 at *2 (D. Minn. Aug. 16, 2006); *United States v. Cameron-Ehlen Group, Inc.*, Case No. 13-cv-3003 (WMW/DTS), 2019 WL 1453063 at *2 (April 2, 2019); *ADC Telecommunications, Inc. v. Thomas & Betts Corp.*, No. 98CV2055, 2001 WL 1381098 at *4 (D. Minn. Oct. 18, 2001). Applying these principles, Defendants' Contention Interrogatory is premature. Defendants and third parties are just beginning to produce documents and have taken no depositions to date.

Moreover, Consumers object to this Interrogatory to the extent is seeks information protected from disclosure pursuant to the common-interest and work-product doctrines and/or attorney-client privilege, including intangible information related to the mental impressions, conclusions, opinions, and/or legal theories of Consumers' counsel and/or Consumers' experts,

which are protected from disclosure pursuant to the work-product doctrine. Consumers will not respond with documents or information that are protected from disclosure by the attorney-client privilege, the attorney-work-product doctrine, the common-interest doctrine, or any other applicable privilege, right, immunity, or exemption from discovery, whether set forth in the Federal Rules of Civil Procedure, common law, case-law doctrine, or the constitution and other laws of the United States or applicable state law. Consumers will not respond with documents or information seeking the subject of expert analysis.

Without waiving the forgoing objections, Consumers will provide a substantive response to this Interrogatory, subject to any applicable objections, after the completion of fact discovery, at which time Consumers will respond to this Interrogatory with documents and information reasonably within their possession, custody, or control only and will not produce documents or information relating to any expert or other person or entity retained by Consumers' counsel to assist in the preparation of their case. Consumers may produce expert report(s) in this matter, and if so, will comply with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Minnesota or any other applicable local rules, case law, or court orders in producing related documents.

**Interrogatory No. 10:**

Describe in detail all bases for Your contention that the putative "classes are readily identifiable and is one for which records should exist," Dkt. 392 ¶ 248, including the manner in which such persons can be identified, the records supporting such an identification, and a description of all records supporting Your membership in the putative class.

**Response to Interrogatory No. 10:**

Consumers object to this Contention Interrogatory on the ground that it is premature. A party "need not provide their answer to . . . a contention interrogatory immediately." *Scheffler v. Molin*, No. CIV. 11-3279 JNE/JJK, 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012). Courts

in this District defer contention interrogatories until the end of fact discovery, when the parties

have read the essential documents in the case and deposed witnesses. *See, e.g.*, *Cambria Co.*

*LLC v. Pental Granite & Marble, Inc.*, Civil No. 12–228 (JRT/AJB), 2013 WL 12147608 at *3

(D. Minn. Oct. 17, 2013); *Frank v. Gold'n Plump Poultry, Inc.*, Civ. No. 04-1018 (PJS/RLE),

2006 WL 8444696 at *2 (D. Minn. Aug. 16, 2006); *United States v. Cameron-Ehlen Group,*

*Inc.*, Case No. 13-cv-3003 (WMW/DTS), 2019 WL 1453063 at *2 (April 2, 2019); *ADC*

*Telecommunications, Inc. v. Thomas & Betts Corp.*, No. 98CV2055, 2001 WL 1381098 at *4

(D. Minn. Oct. 18, 2001). Applying these principles, Defendants' Contention Interrogatory is

premature. Defendants and third parties are just beginning to produce documents and have

taken no depositions to date.

Additionally, this Interrogatory seeks information and documents that are in the hands

of third parties and direct-action plaintiffs, many of which have been subpoenaed by the parties

in this litigation; information responsive to this Interrogatory will likely be included in the

forthcoming productions by those third parties and direct-action plaintiffs.

Moreover, Consumers object to this Interrogatory to the extent is seeks information

protected from disclosure pursuant to the common-interest and work-product doctrines and/or

attorney-client privilege, including intangible information related to the mental impressions,

conclusions, opinions, and/or legal theories of Consumers' counsel and/or Consumers' experts,

which are protected from disclosure pursuant to the work-product doctrine. Consumers will not

respond with documents or information that are protected from disclosure by the attorney-client

privilege, the attorney-work-product doctrine, the common-interest doctrine, or any other

applicable privilege, right, immunity, or exemption from discovery, whether set forth in the

Federal Rules of Civil Procedure, common law, case-law doctrine, or the constitution and other

laws of the United States or applicable state law. Consumers will not respond with documents or information seeking the subject of expert analysis.

Without waiving the forgoing objections, Consumers will provide a substantive response to this Interrogatory, subject to any applicable objections, after the completion of fact discovery, at which time Consumers will respond to this Interrogatory with documents and information reasonably within their possession, custody, or control only and will not produce documents or information relating to any expert or other person or entity retained by Consumers' counsel to assist in the preparation of their case. Consumers may produce expert report(s) in this matter, and if so, will comply with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Minnesota or any other applicable local rules, case law, or court orders in producing related documents.

Dated: March 29, 2021

s/*Brittany Resch*_____
Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Brittany Resch (#0397656)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
bresch@gustafsongluek.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL
SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

22

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL
SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

*Co-lead Counsel for Consumer Indirect*
*Purchaser Plaintiffs*

Thomas H. Burt
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Ave.
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
burt@whafh.com

Carl V. Malmstrom (#391908)
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC
70 W. Madison St., Suite 1400
Chicago, Illinois 60602
Telephone (312) 984-0000
Facsimile: (312) 214-3110
malmstrom@whafh.com

Kevin Landau
Miles Greaves
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, New York 10038
Telephone: (212) 931-0704
Facsimile: (212) 931-0703
klandau@tcllaw.com
mgreaves@tcllaw.com

Rick Paul
Ashlea Schwarz
PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
rick@paulllp.com
ashlea@paulllp.com

Kenneth A. Wexler
Kara A. Elgersma
Justin N. Boley
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
kaw@wexlerwallace.com
kae@wexlerwallace.com
jnb@wexlerwallace.com

Simon B. Paris
Patrick Howard
SALTZ, MONGELUZZI, BARRETT
& BENDESKY, P.C.
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 496-8282
Facsimile: (215) 496-0999
sparis@smbb.com
phoward@smbb.com

Brian D. Penny
GOLDMAN SCARLATO & PENNY, P.C.
Eight Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, Pennsylvania 19428
Telephone: (484) 342-0700
penny@lawgsp.com

24

Marc H. Edelson, Esq.
EDELSON & ASSOCIATES, LLC
3 Terry Drive, Suite 205
Newtown, Pennsylvania 18940
Telephone: (215) 867-2399
medelson@edelson-law.com

Dianne M. Nast
NAST LAW LLC
1101 Market Place, Suite 2801
Philadelphia, Pennsylvania 19107
Telephone: (215) 923-9300
Facsimile: (215) 923-9302
dnast@nastlaw.com

*Counsel for Consumer Indirect Purchaser
Plaintiffs*