# UNITED STATES DISTRICT COURT
# DISTRICT COURT OF MINNESOTA

IN RE PORK ANTITRUST
LITIGATION


This Document Relates To:

THE DIRECT PURCHASER
PLAINTIFF ACTION

Case No. 18-cv-01776 (JRT-HB)

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR
FINAL APPROVAL OF THE
CLASS ACTION SETTLEMENT
BETWEEN DIRECT
PURCHASER PLAINTIFFS AND
SEABOARD FOODS LLC**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    LITIGATION BACKGROUND ........................................................... 2

III.   SUMMARY OF THE SETTLEMENT AND NOTICE ......................... 5

       A.    Settlement Negotiations and the Settlement Terms ..................... 5

       B.    The Court-Approved Notice Plan Has Been Implemented and No
             Class Member Has Objected to the Settlement ............................. 8

IV.    LEGAL ARGUMENT ........................................................................ 9

       A.    The Court-Approved Notice Program Satisfies Due Process and Has
             Been Fully Implemented ............................................................. 9

       B.    The Settlement Satisfies the Standard for Final Approval .......... 11

V.     CONCLUSION ................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987)...............................................................................9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).........................................................................................9

*Christina A. v. Bloomberg*,
  No. Civ. 00-4036, 2000 WL 33980011 (D.S.D. Dec. 13, 2000) ............................15

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005)..................................................................13

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ............................................................................17

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ......................................................................12, 15

*E.E.O.C. v. Faribault Foods, Inc.*,
  Civ. Nos. 07-3976, 07-3986, 07-3977, 07-3985, 2008 WL 879999
  (D. Minn. Mar. 28, 2008).................................................................................15

*In re Employee Benefit Plans Sec. Litig.*,
  No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) .....................................14

*Ficalora v. Lockheed Cal. Co.*,
  751 F.2d 995 (9th Cir. 1985) ............................................................................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)...............................................................................12

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ............................................................................12

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C. 2002)..........................................................................18

*Martin v. Cargill, Inc.*,
  295 F.R.D. 380 (D. Minn. 2013).........................................................................13

*MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.*,
  546 F.3d 533 (8th Cir. 2008) ............................................................................12

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
   281 F.3d 629 (7th Cir. 2002) ........................................................................6, 16

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ..................................................................9, 12, 15

*In re Rambus Inc. Derivative Litig.*,
   No. C 06-3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .................................18

*In re Shopping Carts Antitrust Litig.*,
   MDL No. 451, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ....................................17

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
   451 U.S. 630 (1981)......................................................................................6, 16

*In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*,
   631 F. Supp. 2d 1151 (D. Minn. 2009)...........................................................13, 15

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ...........................................................................12

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)...........................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...........................................................................17, 18

*Welsch v. Gardebring*,
   667 F. Supp. 1284 (D. Minn. 1987).....................................................................14

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013)...........................14

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11.22 (4th ed. 2002) ...............12

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................9

Fed. R. Civ. P. 23(e)(1)(A) .................................................................................12

*Manual for Complex Litigation*, § 21.632 (4th ed. 2004)...............................................12

## I.      **INTRODUCTION**

The Direct Purchaser Plaintiffs ("DPPs") hereby seek final approval of the Settlement[1] with Defendant Seaboard Foods LLC ("Seaboard" or "Settling Defendant"). This is the third settlement in this litigation, and it provides the Certified Class[2] with significant and substantial relief. Pursuant to the Settlement Agreement, Seaboard will pay $9.75 million in monetary relief and will provide cooperation to DPPs, as defined in the Agreement. Combined with DPPs' earlier settlements with the JBS and Smithfield Defendants, this brings the total settlements to date to $111,614,300. *See* Declaration of Michael H. Pearson in Support of Motion ("Pearson Decl.") at ¶ 3.

In granting preliminary approval of this Settlement, the Court found it fell within the range of reasonableness and ordered notice to be provided to the Class members. *See*

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as in the Settlement Agreement (ECF No. 1936-1, also referred to herein as "Settlement").

[2] The term "Class" or "Certified Class" is consistent with the definition of the term in the Court's Order granting class certification and Preliminary Approval Order: "All persons and entities who directly purchased one or more of the following types of pork, or products derived from the following types of pork, from Defendants, or their respective subsidiaries or affiliates, for use or delivery in the United States from June 29, 2014 through June 30, 2018: fresh or frozen loins, shoulders, ribs, bellies, bacon, or hams. For this lawsuit, pork excludes any product that is marketed as organic or as no antibiotics ever (NAE); any product that is fully cooked or breaded; any product other than bacon that is marinated, flavored, cured, or smoked; and ready-to-eat bacon. Excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action." *See* ECF No. 1887; Preliminary Approval Order at 2-3.

Preliminary Approval Order, Aug. 25, 2023, ECF No. 2014 (hereinafter referred to as "Preliminary Approval Order"), at 2. Co-Lead Class Counsel[3] and A.B. Data Ltd., the Court-appointed claims administrator (*see id.* at 3-4), have executed the Notice Plan in accordance with the Court's Preliminary Approval Order. *Id.* The reaction of the Class members has been uniformly positive, with no member of the Certified Class objecting to the Settlement. *See* Sections IV.A and IV.B.4 below. This process has confirmed that the Settlement with Seaboard is fair, reasonable, and adequate, and should be granted final approval by the Court.

This Settlement provides substantial relief to the Class members while eliminating the risk, uncertainty, and expense of continuing litigation, and preserving DPPs' right to obtain additional settlements or judgments against the numerous remaining Defendants. DPPs therefore respectfully request that the Court grant final approval to the Settlement and enter final judgment.

## II.   LITIGATION BACKGROUND

This is an antitrust class action against certain producers of Pork. DPPs filed their class action lawsuit on June 29, 2018, and it and subsequently-filed cases were consolidated before Judge John R. Tunheim in this Court. DPPs allege that Defendants combined and conspired to fix, raise, maintain, or stabilize prices of Pork sold in the United States in violation of the Sherman Act, 15 U.S.C. § 1. *See generally* DPP Third Consolidated and

---

[3] Co-Lead Class Counsel are Lockridge Grindal Nauen P.L.L.P. and Pearson Warshaw, LLP. *See* ECF No. 1887 at 5. Co-Lead Class Counsel was appointed Class Counsel of the Seaboard Settlement. *See* Preliminary Approval Order at 3.

Amended Complaint, ECF No. 431. DPPs allege that Defendants implemented their conspiracy in various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and otherwise manipulating Pork prices. *Id.*[4]

Defendants moved to dismiss all Plaintiffs' complaints. In August 2019, the Court granted their motions and granted Plaintiffs leave to amend. ECF No. 360. DPPs amended their complaint, and after extensive briefing by the parties, on October 16, 2020, the Court largely denied Defendants' motions to dismiss. ECF No. 519, *amended* Oct. 20, 2020, ECF No. 520.

Since the initial complaint was filed, DPPs have continued their factual investigation into the conspiracy alleged in their complaint, and once the Court largely denied Defendants' motions to dismiss Plaintiffs' complaints, DPPs commenced extensive discovery. *See* Pearson Decl. ¶ 4. During discovery, DPPs obtained responses to multiple sets of interrogatories, and received millions of documents in response to their requests for production and third-party subpoenas. *See Id.* ¶ 5. DPPs, along with other plaintiffs, have taken dozens depositions of the Defendants and third parties. *Id.* DPPs have also provided responses to written discovery, produced documents, and appeared for depositions noticed by the Defendants. *Id.*

---

[4] Unlike other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. *See* Corporate Leniency Policy, U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy.

On November 17, 2020, DPPs and the JBS Defendants entered into a settlement that provided for a payment of $24,500,000 and meaningful cooperation. Pearson Decl. ¶ 6. The Court granted final approval of that settlement on July 26, 2021. *See* ECF No. 838. On June 29, 2021, DPPs and the Smithfield Defendants entered into a settlement that provided for a payment of $83 million[5] and meaningful cooperation. Pearson Decl. ¶ 6. The Court granted final approval of that settlement on January 31, 2022. *See* ECF No. 1154. Notice to the DPP Class of these prior settlements was approved by the Court and successfully implemented by A.B. Data, Ltd. (the Court-appointed Settlement Administrator, *see* ECF Nos. 631, 845) each time. *See* ECF Nos. 838, 1154.

On March 29, 2023, the Court certified the DPP Class. *See* ECF No. 1887 at 4-5, and at 69 (granting class certification). In October 2023, Co-Lead Class Counsel and the Claims Administrator commenced the initial distribution of settlement proceeds from the JBS and Smithfield settlements to qualified claimants. *See* Pearson Decl. ¶ 7.

DPP Class Counsel performed a thorough investigation prior to reaching the Seaboard Settlement and, given that the case had proceeded for nearly six years, and that class certification proceedings and fact discovery were completed by the time of the settlement, Class Counsel were well informed by the time the parties agreed to settle. *See* Pearson Decl. ¶¶ 8, 11. This settlement, the terms of which are detailed in this brief and the

---

[5] The Smithfield settlement was subject to a $5,635,700 reduction based on the opt-outs received during the settlement administration process. The total net amount paid by Smithfield equaled $77,364,300. *See* Pearson Decl. ¶ 6.

supporting documents, represents a significant recovery for DPPs given Seaboard's relatively small market share.

### III.   SUMMARY OF THE SETTLEMENT AND NOTICE

#### A.   Settlement Negotiations and the Settlement Terms

The parties have had ample opportunity to assess the merits of DPPs' claims and Seaboard's defenses, through investigation, research, settlement discussions and contested motion practice; and to balance the value of Class members' claims against the substantial risks and expense of continuing litigation. The Settlement comes after extensive arm's-length negotiations between the parties. *See Id.* ¶¶ 4-5, 8. These discussions commenced after the Court mostly denied all Defendants' second motions to dismiss in October 2020. ECF No. 520; Pearson Decl. ¶ 4. During the subsequent two years the parties completed fact discovery, litigated class certification, and engaged in highly confidential, extensive arm's-length negotiations. Pearson Decl. ¶¶ 9-10. The hard-fought negotiations were kept confidential, and often stalled as the parties vigorously litigated the case. *Id*. The negotiations included many conferences and written exchanges between counsel, and the parties ultimately utilized the assistance of experienced mediator Gregory Lindstrom. *Id*. ¶ 10. The parties and Mr. Lindstrom held a full day remote mediation on May 18, 2023. *Id*. While the parties made substantial progress during that session, they did not reach agreement on all material terms. *Id*. The parties ultimately executed the Settlement Agreement on June 12, 2023. *See id*. ¶ 11; *see also* Settlement Agreement. Throughout all of these settlement discussions, counsel for DPPs focused on obtaining the best possible result for the DPP Class. Pearson Decl. ¶ 9.

The Settlement Agreement allowed (but did not obligate) Seaboard to terminate the Settlement Agreement if potential members of the Certified Class representing more than a specified portion of relevant transactions opt out of the Certified Class. Settlement Agreement ¶ 20. The threshold number of opt outs was not met, and therefore the termination option was not triggered. Pearson Decl. ¶ 12.

In addition to the payment of money, the Settlement requires Seaboard to cooperate with DPPs in their continued prosecution of the action against the remaining Defendants. *See* Settlement Agreement ¶ 11. This cooperation includes providing DPPs with copies of discovery responses or other information provided to any other plaintiff in the *In re Pork Antitrust Litigation* or any government entity making substantially similar allegations regarding competition in the Pork industry; authenticating documents for summary judgment and trial; and providing a live witness for testimony at trial. *Id*. This agreement to cooperate is significant because pursuant to the Sherman Act, the remaining Defendants are jointly and severally liable for any damages resulting from Seaboard's Pork sales to DPPs during the Class Period. *See Texas Indus., Inc. v. Radcliff Materials, Inc*., 451 U.S. 630, 646 (1981); *Paper Sys. Inc. v. Nippon Paper Indus. Co*., 281 F.3d 629, 633 (7th Cir. 2002). Thus, this cooperation will assist Plaintiffs in maximizing their claims against the remaining Defendants.

In consideration for these settlement benefits, DPPs and the proposed Certified Class agree to release certain Released Claims (as defined in the Settlement Agreement) against the Seaboard Released Parties (as defined in the Settlement Agreement). *See* Settlement Agreement ¶¶ 10, 15, 16. The release does not extend to any other Defendants

or co-conspirators, or to unrelated claims for breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claims. *Id*. ¶ 15.

The Settlement (with accrued interest) will be used to: (1) pay for notice costs and costs incurred in the administration of the Settlement and distribution of Settlement; (2) pay taxes and tax-related costs associated with the escrow account for proceeds from the Settlement; (3) make a distribution to Class members in accordance with a proposed plan of distribution (to be filed in the future and approved by the Court); (4) pay any Court-awarded attorneys' fees and expenses to Counsel for the Class (to be filed in the future and approved by the Court); and (5) pay any Court-awarded service awards to the named Plaintiffs (to be filed in the future and approved by the Court). DPPs do not intend to distribute settlement proceeds to qualified Class members or to seek attorneys' fees or costs (other than the costs of notice) from the Settlement at this time. In separate motions at appropriate dates in the future, DPPs will move the Court to approve a plan to distribute net settlement proceeds, and will move the Court for an award of attorneys' fees, costs, and service awards to the named Plaintiffs.

In sum, the Settlement Agreement: (1) is the result of extensive good faith negotiations between knowledgeable and skilled counsel; (2) was entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced class counsel, is fair, reasonable, and adequate. Based on both the monetary and cooperation elements of the Settlement Agreement, Co-Lead Class Counsel believes the

Settlement Agreement is in the best interests of the Class members and warrants the Court's approval. Pearson Decl. ¶ 17.

**B.    The Court-Approved Notice Plan Has Been Implemented and No Class Member Has Objected to the Settlement**

The Court entered the Preliminary Approval Order on August 25, 2023, and approved sending notice of the proposed Settlement to the Class. ECF No. 2014. Pursuant to the Preliminary Approval Order, DPPs sent notice to all known Class members of the proposed Settlement and the fairness hearing to be held on February 27, 2024. The Claims Administrator, A.B. Data Ltd., using customer information obtained from Defendants, mailed 70,104 print notices and emailed 4,325 electronic notices to potential class members. *See* Schachter Decl. ¶¶ 3, 5. On a public website dedicated to this litigation, www.porkantitrustlitigation.com, the Claims Administrator also posted notice of the objection deadline (November 24, 2023) and many other case-related documents, including the full text of the Settlement Agreement, instructions on how to attend the Court's fairness hearing, instructions on how to object to the Settlement, and other details regarding the Settlement and the approval process. *Id.* ¶ 8. The Claims Administrator has also operated a toll-free telephone number to field Class member questions. *Id.* ¶ 9.

Importantly, and as explained in Section IV.A and B.4 below, no Class member has objected to the proposed Settlement. Pearson Decl. ¶ 16; Schachter Decl. ¶ 10.

On June 28, 2023, Seaboard notified the appropriate federal and state officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b), which requires that appropriate federal and state officials (in this case, the U.S. and state attorneys general) be

notified of any proposed class action settlement. The statute provides that a court may not grant final approval to a proposed settlement sooner than 90 days after such notice is served. The 90-day waiting period has long passed, and none of the notified federal or state officials have objected to or otherwise commented on the proposed settlement.

## IV.   <u>LEGAL ARGUMENT</u>

### A.   The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented

When a proposed class action settlement is presented for court approval, the Federal Rules require "the best notice that is practicable under the circumstances," and that certain specifically identified items in the notice be "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). A settlement notice is a summary, not a complete source, of information. *See, e.g.*, *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988).

The Notice Plan approved by this Court (*see* Preliminary Approval Order at 4-5)—which relies primarily on direct notice to Class members supplemented by publication notice—is commonly used in class actions like this one. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting Fed. R. Civ. P. 23(c)(2)); Fed. R. Civ. P. 23(c)(2)(B). It constitutes valid, due, and sufficient notice to class members, and is the best notice practicable under the circumstances. The content of the Court-approved notice complies with the requirements of Rule 23(c)(2)(b). Both the summary and long-form notice clearly and concisely explained in plain English the nature of the action and the terms of the

Settlements. *See* Schachter Decl. ¶ 6. The notices provided a clear description of who is a member of the Class and the binding effects of Class membership. *Id.* They also explained how to exclude oneself from the Class, how to object to the Settlement, and how to contact Co-Lead Class Counsel. *Id.* The notices also explained that they provided only a summary of the Settlement, and that the Settlement Agreement, as well as other important documents related to the litigation, are available online at www.porkantitrustlitigation.com. *See id.* In addition, the information from that website, as well as the toll-free call-in number for the Settlements, were available in both English and Spanish. *See id.* ¶¶ 8, 9. Consequently, every provision of the Settlement was available to each Class member.

The Notice Plan was implemented by the Court-appointed settlement administrator, A.B. Data Ltd. (*See* Preliminary Approval Order at 4.) Specifically, using customer information obtained from Defendants, A.B. Data Ltd. mailed 70,104 print notices and emailed 4,325 electronic notices to potential class members. *See* Schachter Decl. ¶¶ 3, 5. A.B. Data Ltd. also published notice on multiple websites for 30 days, including Supermarket News (www.supermarketnews.com) and Nation's Restaurant News (www.nrn.com). *See id.* ¶ 7. In addition, A.B. Data Ltd. continues to maintain the case website, where Class members can view and print important documents and obtain other information related to the litigation. *See id.* ¶ 8. A.B. Data Ltd. also continues to maintain a toll-free call-in number to answer Class members' questions. *See id.* ¶ 9.

The Settlement Administrator reviewed and processed all requests for exclusion. *See id.* ¶ 10. This process included determining the timeliness and validity of any requests for exclusion, identifying the entities that fell within the scope of valid requests for

exclusion, conducting appropriate follow-ups with requested opt-outs to determine the scope and value of any assignments or partial assignments, and assisting the parties in determining the opt-out calculations. *See id.* As a result of this process, the Administrator has come up with a recommended list of valid opt outs, which is set forth at Exhibit C of the Schachter Declaration. Included on this list are seven entities that transmitted their requests two days after the deadline. *See* Schachter Decl. Ex. C (late requests noted with "**"). Given the proximity to the deadline and the fact that the deadline ran concurrently with the Thanksgiving holiday, it is the recommendation of Co-Lead Class Counsel and the Claims Administrator that these late requests be included.[6] Pearson Decl. ¶ 16; Schachter Decl. ¶ 10. This recommended list of opt outs includes certain partial assignments which are set forth at Exhibit D to the Schachter Declaration.

The Court set November 24, 2023, as the deadline for Class members to object to the Settlement. Preliminary Approval Order at 8. No Class member has objected to the proposed Settlement. Pearson Decl. ¶ 16; Schachter Decl. ¶ 10.

### B.    The Settlement Satisfies the Standard for Final Approval

Whether a proposed settlement should be approved is within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of controversies, particularly in the context of class action

---

[6] On January 24, 2023, the Court entered an Order approving the opt out list for the Certified Class (including the same seven entities that submitted late requests). *See* ECF No. 2086. As Class members were able to opt out of the Certified Class, the Seaboard settlement, or both, it is necessary for a separate Seaboard Settlement opt out list (even if it is the same as the Certified Class) to be approved.

lawsuits. *See MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.*, 546 F.3d 533, 541 (8th Cir. 2008) (noting "strong public policy of encouraging settlement"); *Petrovic*, 200 F.3d at 1148 ("[S]trong public policy favors agreements, and courts should approach them with a presumption in their favor.") (internal citation omitted); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation[.]"); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) (approval of a settlement "is committed to the sound discretion of the trial judge").

Review of a proposed settlement generally proceeds in two stages: first, preliminary approval, followed by a fairness hearing on final approval. *See Manual for Complex Litigation*, § 21.632 (4th ed. 2004). Between preliminary and final approval, the class is notified of the proposed settlement and given an opportunity to object to the settlement, opt out of the settlement class, or otherwise be heard. This procedure safeguards class members' procedural due process rights and enables courts to fulfill their roles as guardians of class interests. *See* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11.22, *et seq*. (4th ed. 2002).

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, before a class action may be settled, voluntarily dismissed or compromised, the court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(A); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (quoting *Grunin*, 513 F.2d at 123); *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995). In determining whether

a settlement is fair, reasonable, and adequate, courts in the Eighth Circuit examine a range of factors, which typically include: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d 1151, 1156 (D. Minn. 2009). The court must also assess whether a proposed settlement is "within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013).

This Court preliminarily approved the Settlement and now, DPPs respectfully submit, it should grant final approval.

### 1.     The Settlement was Negotiated at Arm's-Length and has the Support of Experienced Class Counsel

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties[.]" *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("[P]rior to approving settlement . . . the court must determine there has been no fraud or collusion in arriving at the settlement agreement[.]").

If a settlement is negotiated at arm's length, there is a presumption that the settlement is procedurally sound. *See, e.g.*, *In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d at 1158 ("Where sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the

settlement.") (quoting *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)). Indeed, courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g., In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .'") (citation omitted).

Here, there is no dispute that the proposed Settlement is the product of extensive, arm's length negotiations. *See* Section III.A above. The parties have had ample opportunity to assess the merits of DPPs' claims and Seaboard's defenses through investigation, research, settlement discussions and contested motion practice, and to balance the value of Class members' claims against the substantial risks and expense of continuing litigation. *See* Pearson Decl. ¶ 8.

Further, "[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Benefit Plans Sec. Litig.*, 1993 WL 330595, *5 (citation omitted); *see also Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight" to opinions of experienced counsel).

Indeed, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *Christina A. v. Bloomberg*, No. Civ. 00-4036, 2000 WL 33980011, *4 (D.S.D. Dec. 13, 2000) ("The Court attributes significant weight to Plaintiffs' attorney's assertion that the Settlement Agreement is fair, reasonable and provides significant benefits to the Plaintiff class. Indeed, Plaintiffs' lead attorney . . . based this assertion on his 22 years of experience in this field and his participation in similar cases in 15 other states."). Co-Lead Counsel's approval of a settlement weighs in favor of the settlement's fairness. *E.E.O.C. v. Faribault Foods, Inc.*, Civ. Nos. 07-3976, 07-3986, 07-3977, 07-3985 (RHK/AJB), 2008 WL 879999, *4 (D. Minn. Mar. 28, 2008); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005).

When, as here, experienced counsel represent the parties, and rigorous negotiations were conducted at arms' length (in this instance with the assistance of a mediator), the judgment of the litigants and their counsel concerning the adequacy of the Settlement should be considered. *See Petrovic*, 200 F.3d at 1149; *DeBoer*, 64 F.3d at 1178. Co-Lead Class Counsel unequivocally believes the Settlement is in the best interests of the Class members and should be approved by the Court. *See* Pearson Decl. ¶ 17.

## 2.   The Settlement Provides Significant Relief to the Class

The Settlement Agreement with Seaboard provides substantial relief to the Class in terms of monetary relief and cooperation. Seaboard has paid $9.75 million into the interest-bearing Settlement Fund. *See* Pearson Decl. ¶ 3. This payment removes any concerns about the ability to pay the settlement amount. *See In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d at 1156. In addition to the payment of money, the

Settlement requires Seaboard to provide specified cooperation in the DPPs' continued prosecution of the action against the remaining Defendants. This cooperation includes providing DPPs with copies of discovery responses or other information provided to any other plaintiff in the *In re Pork Antitrust Litigation* or any government entity making substantially similar allegations regarding competition in the Pork industry; authenticating documents for summary judgment and trial; and providing a live witness for testimony at trial. *Id*. This agreement to cooperate is significant because pursuant to the Sherman Act, the remaining Defendants are jointly and severally liable for any damages resulting from Seaboard's Pork sales to DPPs during the Class Period. *See Texas Indus.*, 451 U.S. at 646; *Paper Sys.*, 281 F.3d at 633. Thus, this cooperation will assist Plaintiffs in recovering the maximum amount of their damages against the remaining Defendants.

In consideration for these settlement benefits, DPPs and the proposed Certified Class agree to release certain Released Claims (as defined in the Settlement Agreement) against the Seaboard Released Parties (as defined in the Settlement Agreement). *See* Settlement Agreement ¶¶ 10, 15, 16. The release does not extend to any other Defendants or co-conspirators, or to unrelated claims for breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claims. *Id*. ¶ 15.

In sum, this Settlement with Seaboard provides substantial monetary and non-monetary relief to the Class and falls well within the range of possible approval.

**3.** **The Settlement Eliminates Significant Risk to a Class Facing Complex, Lengthy and Expensive Litigation**

Courts consistently hold that the complexity, expense and likely duration of litigation are all factors supporting approval of a settlement. *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir. 1981). In particular, "antitrust cases, by their nature, are highly complex." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044 (2005); *In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 WL 1950, *6 (S.D.N.Y. Nov. 18, 1983) ("[A]ntitrust price fixing actions are generally complex, expensive and lengthy.").

This case is no different. While the DPPs believe their case is strong, the Settlement eliminates significant risks they would face if the action were to proceed against Seaboard, including the complexity, length and expense of these types of litigations. Indeed, as reflected in the extensive docket, this case is more than five years old, and the DPPs have expended significant effort to defeat motions to dismiss, conducting extensive discovery, litigating class certification, and plan and prepare for trial. The Settlement allows Class members to recover a significant sum from one of the smaller Defendants and allow the DPPs to maximize future recoveries from the remaining Defendants. Absent settlement, the DPPs would need to defeat Defendants motions for summary judgment, go to trial, and bear the burden of establishing liability, impact and damages before obtaining any recovery from Seaboard. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 118 ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'")

(quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998)). Continued litigation against the remaining Defendants, absent future settlements, will involve significant additional expenses and protracted legal battles.

Therefore, the complexity, length and expense of further litigation, which the Settlement mitigates at least as to Seaboard, also favor final approval.

### 4.   Class Members Support the Settlement

As discussed in Section IV.A, A.B. Data Ltd. implemented the Notice program as Ordered by this Court. *See* Preliminary Approval Order at 4-5. Both the mailed notice and the case website informed Class members of the terms of the Settlement and the November 24, 2023 deadline for objections. Preliminary Approval Order at 8. No Class member has objected. *See* Schachter Decl. ¶ 10.

That no Class member has objected is an impressive result for a settlement of this prominence and for such a class of sophisticated businesses and individuals. Moreover, only a handful of the thousands of the eligible Class members have opted out of the Settlement. The Class's overwhelming affirmation strongly supports the fairness and reasonableness of the Settlement. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (finding that "the settlement group's reaction to this settlement has been overwhelmingly positive and supports approval" and that "[t]he existence of a relatively few objections certainly counsels in favor of approval"); *In re Rambus Inc. Derivative Litig.*, No. C 06-3513, 2009 WL 166689, *3 (N.D. Cal. Jan. 20, 2009) ("The

reaction of the class to the proffered settlement . . . is perhaps the most significant factor to be weighed in considering its adequacy . . . .") (internal quotations and brackets omitted).

## V.   **CONCLUSION**

For the reasons set forth herein, Co-Lead Class Counsel respectfully request that the Court grant final approval to the Seaboard Settlement Agreement.

Date:  February 13, 2024

*/s/ Michael H. Pearson*
Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
PEARSON WARSHAW, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pwfirm.com
dwarshaw@pwfirm.com
bpouya@pwfirm.com
mpearson@pwfirm.com

Bruce L. Simon (*Pro Hac Vice*)
Jill M. Manning (*Pro Hac Vice*)
PEARSON WARSHAW, LLP
555 Montgomery Street, Suite 1205
San Francisco, CA 94111
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pwfirm.com
jmanning@pwfirm.com

*Direct Purchaser Plaintiffs Co-Lead Class Counsel*

W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Joseph C. Bourne (MN #0389922)
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
jcbourne@locklaw.com

Melissa S. Weiner (MN #0387900)
PEARSON WARSHAW, LLP
328 Barry Avenue South, Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pwfirm.com