**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>*Sysco Corp. v. Agri Stats, Inc., et al.*,<br><br>Case No. 21-cv-1374 (D. Minn.) | Civil No. 18-cv-1776-JRT-JFD<br><br><br>The Honorable John R. Tunheim<br>The Honorable John F. Docherty |

***PORK* DEFENDANTS' RESPONSE TO OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 9, 2024 ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ...................................................... 1

I.  BURFORD LITIGATES TO BLOCK SYSCO'S EXECUTION OF "FULLY NEGOTIATED" SETTLEMENTS .................................................................... 2

II. SYSCO KNOWS THAT CEDING CONTROL OF LITIGATION TO A FUNDER VIOLATES PUBLIC POLICY AND UNDERMINES THE INTEGRITY OF THE COURTS ............................................................................. 4

III. CARINA IS SPAWNED TO RESOLVE SYSCO'S LITIGATION WITH BURFORD OVER CONTROL OF SYSCO'S CLAIMS .......................................... 5

ARGUMENT ................................................................................................................... 7

I.  THE ORDER APPROPRIATELY EXERCISED THE COURT'S DISCRETION TO PREVENT A LITIGATION FUNDER FROM USING RULE 25 TO SHOEHORN ITSELF INTO A LITIGATION PARTY ............................................. 7

II. THE SYSCO-BURFORD DISPUTE UNDERSCORES WHY DIRECT FUNDER CONTROL OVER LITIGATION VIOLATES PUBLIC POLICY IN ALL RELEVANT JURISDICTIONS .......................................................................... 11

CONCLUSION .............................................................................................................. 13

i

# INTRODUCTION

Created, owned, and fully controlled by litigation funder Burford Capital ("Burford"), Carina Ventures LLC ("Carina") was formed on June 12, 2023 for the sole purpose of receiving an assignment of Direct Action Plaintiff Sysco Corporation's ("Sysco") claims in several antitrust cases, including this one. Shortly thereafter, Sysco and Carina (collectively "Objectors") jointly moved the Court under Federal Rule of Civil Procedure 25 to substitute Carina for Sysco as a Plaintiff. (ECF 1940 ("Motion").) The Motion asked the Court to ratify a litigation funder's creation of an investment vehicle to take direct control of a real-party-in-interest's legal claims and participate in the case as a litigant. Magistrate Judge Docherty correctly rejected that extraordinary request.

The operative holding in Magistrate Judge Docherty's February 9, 2024 Order (ECF 2104) ("Order") is quite narrow and specific. Recognizing the multiple practical, prudential, and policy problems caused by granting party status to a litigation funder after years of litigation, the Order exercised the Court's broad discretion to deny Rule 25 substitution. The Order contains no legal error and is not an abuse of discretion. It raises no issue warranting oral argument and should be affirmed.

## PROCEDURAL AND FACTUAL BACKGROUND

Although the Objectors strain to create factual disagreements with the Order, their own representations and admissions establish the core, operative facts. In short, Burford created Carina to resolve contentious litigation with Sysco that arose when Burford sought to prevent Sysco from entering settlements. (ECF 2126 at 3-4.) To resolve that litigation and "alleviat[e] Sysco's burden to pursue expensive litigation against commercially

1

important suppliers," Sysco assigned its claims in this lawsuit to Carina—"a subsidiary of Burford"—"to allow Carina to continue litigating as the named plaintiff." (*Id.* at 4.) Because that history provided Magistrate Judge Docherty with ample grounds for discretionary denial of Rule 25 substitution, Defendants review it here.[1]

I.  **BURFORD LITIGATES TO BLOCK SYSCO'S EXECUTION OF "FULLY NEGOTIATED" SETTLEMENTS**

Sysco sued Defendants in the Southern District of Texas on March 8, 2021. The JPML transferred the case to this Court for consolidation with *In re Pork Antitrust Litigation* ("*Pork*"). (*See* ECF 1972 at 5.) Defendants took significant discovery from Sysco, including document productions and depositions. (*Id.*) Sysco's witnesses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See id.* at 5-6.) Instead of supporting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Sysco's witnesses testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 6-7.)

Burford invested in Sysco's legal claims by fronting it $140 million in exchange for a financial interest in *Pork* and other Sysco antitrust lawsuits. (New York Litig. Dkt. 10 at 1.)[2]

The relationship between Sysco and Burford fractured when Burford refused to

---

[1] A full recitation of the facts in opposition to the motion is set forth in ECF 1972 at 1-13.

[2] *See Glaz LLC. v. Sysco Corp.*, Case No. 1:23-cv-02489-PPG (S.D.N.Y) ("New York Litigation"); *Sysco Corp. v. Glaz LLC*, No. 23-cv-1451 (N.D. Ill.) ("Illinois Litigation").

consent to "reasonable settlements" that Sysco entered with several "of its key suppliers." (*See* Illinois Litigation Dkt. 1 at 6-7.) According to Sysco, Scott Gant—Sysco's counsel in *Pork* before being terminated and reemerging as Carina's counsel—played a pivotal role in Burford's veto of Sysco's settlements. (*See* New York Litigation Dkt. 38-7 at 1.) While representing Sysco, Mr. Gant told Burford that the settlements were, in his view, "unreasonably low" and were motivated by Sysco's "separate business considerations that are leading them to want to dispose of these cases." (*Id.*; *see also* ECF 1884 at 3-4.)

In September 2022, Burford initiated arbitration to enjoin Sysco from executing the agreed-to settlements. (New York Litigation Dkt. 18 at 2).) On March 8, 2023, following entry of a preliminary injunction blocking Sysco from executing those settlements, Sysco and Burford filed dueling lawsuits: Sysco sued in the Northern District of Illinois to vacate the panel's decision, and Burford sued in New York state court (removed to the Southern District of New York) to confirm the decision. (*See* n.2.)

During the same timeframe, Sysco's dispute with Burford disrupted this litigation when Sysco sought a stay while it searched for new counsel. (ECF 1845.) As Sysco explained to this Court, Burford barred it "from executing months old, fully-negotiated settlements with multiple defendants in this case,"[3] complicating its ability to find new counsel after it terminated Mr. Gant and his firm, Boies Schiller. (*Id.* at 2.) When the Court

---

[3] Sysco now describes those "fully-negotiated settlements" as mere "*proposed* settlements" and "prior settlement *offers*", see ECF No. 2126, pp. 3, 10 (emphases added), which only underscores the lengths to which it will go to do Burford's bidding. Those "fully-negotiated" settlements remain valid and binding, and JBS (a defendant that reached settlements with Sysco) reserves all rights, including to seek their enforcement by this Court.

3

required the Objectors to comply with Local Rule 83.7 (ECF 1872), Sysco argued, *inter alia*, that Boies Schiller had "encouraged [Burford's] litigation *against* Sysco" (ECF 1884 at 2) and made "false and misleading statements to this Court" (*id.* at 6). The Court then granted the motion, staying Sysco's *Pork* claim so it could retain new counsel. (ECF 1890.)

**II.   CEDING CONTROL OF LITIGATION TO A FUNDER VIOLATES PUBLIC POLICY AND UNDERMINES THE INTEGRITY OF THE COURTS**

Until joining the Motion with Carina, Sysco repeatedly explained to multiple courts why the law prohibits Burford from controlling Sysco's claims.

According to Sysco, Burford's control of Sysco's claims "violates well-established public policy in all potentially relevant jurisdictions," including "Illinois and Minnesota, the states in which the underlying Antitrust Litigations are pending." (New York Litigation Dkt. 18 at 7.) Indeed, Sysco recognizes that allowing a funder to control settlement and resolution of a plaintiff's claims violates "public policy in every state." (*Id.* at 11.) Sysco also admits that ceding control of litigation to a funder is "unconscionable in Minnesota … where the case law is clear that a litigation funder cannot wrest control of claims from the litigant." (*Id.* at 15.)

Sysco has also extensively advocated that direct control over its claims by Burford undermines "the integrity of the US court system." (*Id.* at 12-13.) The courts are "intended to be a forum where disputes may be resolved and justice may be done, not a casino in which financial speculators may gamble with claims that are not their own or prolong litigation for motives that (as here) having nothing to do with the funded litigants' own claims." (*Id.*) In contrast to Sysco which sought to resolve its antitrust claims on its own terms,

4

Burford seeks "to make more money on Sysco's claims and Burford's unrelated investments by forcing Sysco to continue litigating against its will." (*Id.* at 13.) Sysco recognizes that exercise of litigation control by a funder constitutes "naked speculation in litigation [that] is precisely what public policy forbids." (*Id.*) And Sysco is "aware of no case in which *any* court has permitted a litigation funder to buy control over a party's settlement decision." (*Id.*)

When requesting that this Court stay *Pork*, Sysco directed the Court to its pleadings in the Sysco-Burford litigation. (*See* ECF 1845 at 3.) And in pleadings submitted to this Court, Sysco advised that a funder's assertion of control over litigation raises "deep-rooted public policy" concerns. (ECF 1846-1 at 7.)

### III. CARINA IS SPAWNED TO RESOLVE SYSCO'S LITIGATION WITH BURFORD OVER CONTROL OF SYSCO'S CLAIMS

Knowing the policy and practical problems caused by a funder controlling litigation decisions, Sysco resolved its litigation with Burford by assigning its antitrust claims to Burford's newly created "special purpose financing vehicle," otherwise known as Carina. (*See* ECF 1952 at 1-2 (noting that "Burford and Sysco agreed to settle their dispute …" and "[a]s part of that resolution, Sysco assigned its food antitrust claims—including its claims in this case—to Carina, a Burford affiliate").)

Carina was formed on June 12, 2023. (ECF 1973-2.) By June 28, 2023, Sysco had assigned its antitrust claims to Carina, purportedly transferring its right to "any settlement of or award or judgment entered" and full control of "all related pre- and post-trial proceedings." (ECF 1940, Ex. A at 1, 5.) The next day, the Objectors jointly moved for

5

substitution, claiming that "the Court should substitute Carina as the Plaintiff in the above-captioned action, remove Sysco from the docket and all ECF notices as a party, and the action should proceed as if it had been originally commenced by Carina." (*Id.* at 1.)

The assignment and motion to substitute were the culmination of Burford's plan to take control of the litigation. Sysco pointed to the following Burford recap of a call with Mr. Gant as evidence of his breach of ethical obligations:

> He asked what happened with the possibility of an assignment which it sounds like he had discussed with Kelly. I said that we were discussing it internally and that even though it would create some problems for us, we would try to make it work if it would create peace. He suggested that it would have the advantage of taking the pressure off of Sysco in business negotiations because they could say the cases aren't theirs to settle. He also said he was not overly concerned about how defendants would use an assignment in the litigation. He reminded me that lots of other claims had been assigned - a great number from direct to indirect purchasers. While defendants might move for discovery he seemed to think that the magistrate would not give them a lot of leeway on that and the district judge would likely agree.
>
> Jon
>
> Jonathan T. Molot | Chief Investment Officer
> O: +1 212 235 6835
> M: +1 202 486 6373
> Burford Capital
> www.burfordcapital.com

(New York Litigation Dkt. 38-7 at 3.)

Following extensive briefing on the Motion, Magistrate Judge Docherty held a two-hour hearing on August 21, 2023 that included argument from Sysco's counsel and two attorneys representing Carina. (ECF 2006.) During the Court's January 18, 2024 status conference, Magistrate Judge Docherty explained that he was continuing to review "the extensive procedural history in multiple forums" relevant to the motion. (Tr. 34:16-25.) The Order's factual findings painstakingly cited to the Objectors' own representations to this and other federal courts. (Order at 6-10.)

6

**ARGUMENT**

The Order should be affirmed. First, review of Magistrate Judge Docherty's Order is extremely deferential, and he committed no clear legal or factual error in exercising his broad discretion in declining to permit something called a "special purpose financing vehicle" to substitute as a Plaintiff at this stage of the litigation. (*See* ECF 1952 at 1.) Second, whether analyzed under state or federal law, courts uniformly reject the specter of litigation funders, particularly those who are strangers to the case and have no injury of their own, from asserting direct control over legal claims. The Order is well-grounded in both the facts and the law.

**I.  THE ORDER APPROPRIATELY EXERCISED THE COURT'S DISCRETION TO PREVENT A LITIGATION FUNDER FROM USING RULE 25 TO SHOEHORN ITSELF INTO A LITIGATION PARTY**

The Objectors misstate the standard of review applicable to their objections and ignore Magistrate Judge Docherty's broad discretion to deny substitution.

Review of a Magistrate Judge's order on non-dispositive pretrial matters is "extremely deferential." *Shukh v. Seagate Tech, LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013). Reversal or modification is appropriate only if an order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Shukh*, 295 F.R.D. at 235. A finding is clearly erroneous when review of the "entire evidence" definitively confirms that "a mistake has been committed." *Id.* (quoting *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011)).

7

The Objectors seek de novo review, implying that Magistrate Judge Docherty reached legal conclusions and ruled on issues that he declined to address. Most notably, while Defendants advocated that the Court invalidate Sysco's assignment of its claims to Carina as violative of public policy, the Order expressly declined to rule on that issue. (Order at 14-15.)[4] Nor did the Order reject Carina's Article III standing as a matter of law. (*Id.* at 14.) Instead, Magistrate Judge Docherty explicitly limited the Order to "the question of whether the Court should exercise its discretion to allow the substitution under Rule 25(c)." (*Id.* at 15.) And in rejecting substitution, the Order made clear that its reasoning stemmed from the "practical problems" (*id.* at 3) and "prudential considerations" (*id.* at 14) Carina's substitution presents, not application of a legal rule. (*See also id.* at 14-16.) Indeed, the Order referred to the applicable discretionary standard more than a dozen times as it explained the factors informing the decision. (*Id.* at 3, 4, 15, 16, 18, 24.)

From the filing of their Motion, the Objectors have proceeded as if the Court must accept substitution as a *fait accompli*. Their objections continue that effort (*see* ECF 2127 at 6-7; ECF 2126 at 6-7), but the Order correctly rejected it as contrary to the law. "Substitution of parties under Rule 25(c) falls within the sound discretion of the trial court," and courts "may refuse to substitute parties in an action." *Fischer Bros. Aviation v. NWA,*

---

[4] The Objectors both cite *Burroughs v. Mackie Moving Sys. Corp.*, 690 F.3d 1047 (8th Cir. 2012), for the proposition that a decision based on public policy triggers de novo review. But de novo review applied there because the district court relied on Missouri's public policy to decide an "issue of law" that provided for a dispositive decision on the merits, namely whether state law requires the "stacking" of auto-policy limits. *Id.* at 1053. The Eighth Circuit reversed based on its review of state statutes and case law. That post-trial decision is far afield from a discretionary procedural decision on a non-dispositive motion.

8

*Inc.*, 117 F.R.D. 114, 145-46 (D. Minn. 1987).[5] Given the Court's discretion to decide substitution, the Objectors citation to cases in which courts allowed substitution based on other facts, records, and considerations does nothing to establish error here. As Sysco knows and Magistrate Judge Docherty found, "no litigation funder has apparently ever before asked to be substituted for its client under Rule 25(c)." (Order at 27; *see also* New York Litigation Dkt. 18 at 13.)

Both the law and the record support the Order's concerns about Burford's unfettered control over antitrust claims and its attempt to use Carina to turn itself into a litigant. In addition to citing the widespread condemnation of giving funders control over claims in which they have no interest other than an investment, the Order specifically highlighted "the harm of forcing litigation to continue that should have settled." (Order at 16-17.) Magistrate Judge Docherty explained in detail how Carina's incentives diverge from Sysco's in ways that undermine the purpose of antitrust laws and impede the judicial function. (*Id.* at 17.) Carina's interest lies in maximizing Burford's return on investment, not deciding what it needs for its business to be made whole. (*Id.*) As the Order held, a litigant motivated by financial returns on invested capital is far removed from one seeking to remedy business losses allegedly resulting from antitrust violations. (*Id*. at 22.)

---

[5] Objectors' case law confirms that courts have discretion to deny substitution, even where an assignment has occurred. *See ELCA Enters. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190-91 (8th Cir. 1995) (recognizing Rule 25 decision as discretionary and confirming that a named plaintiff may continue to prosecute a claim, "even if they do not remain the real party in interest"); *Columbian Bank & Trust Co. v. Miller*, 384 F. App'x 524, 525 (8th Cir. 2010) (recognizing Rule 25 permits continued prosecution by the original party after transfer).

9

Rather than dispute the point, Sysco openly admits it. Sysco has already represented to this Court that Burford's assertion of control over Sysco's claims blocked the execution of settlements that Sysco negotiated, which "forces multiple parties to continue to litigate before this Court against their will." (ECF 1845 at 2.) Even now, Sysco's Objection concedes that "Sysco's business is distribution, not litigation, and Sysco does not always want to assume the significant costs and hazards associated with litigation." (ECF 2126 at 12; *see also id.* at 9 ("Sysco's settlement with Burford was motivated in part by Sysco's desire to extricate itself from litigation and *avoid the significant commercial risks and hazards associated therewith*.") (emphasis added).) Sysco invokes the public policy in favor of settlements to ask the Court to effectuate *its own* settlement with Burford to resolve a problem of its own making, but simultaneously admits that Burford interfered with execution of Sysco's settlements in the case. (*Id.* at 9-11.) The record amply supports Magistrate Judge Docherty's judgment that turning a litigation funder into a plaintiff will undermine the Court's interest in the fair, efficient, and orderly resolution of claims. (*See* Order at 19-21.) That has already happened, and Burford should not be allowed to use Carina to "step into the shoes of the party it was funding … and conduct the litigation for itself, in search of a larger payoff." (Order at 27.)

In opposing the Motion, Defendants also noted numerous additional problems that Carina's substitution would create at this stage of the litigation. (ECF 1972 at 21-29.) Carina has no discernable assets and therefore no clear accountability to the Court or Defendants for its conduct in the litigation. (*Id.* at 28-29.) Nor has Carina shown that substitution would not "impair the substantive rights of the parties." *Great Western*

10

*Casualty Co. v. Kirsch Transp.* Serv's, 2022 WL 4182377 at *3 (S.D. Ia., June 3, 2022). Instead, Carina refused to stipulate to treating evidence obtained from Sysco as that of a party opponent, or to its willingness to cover any costs that may be assessed. (*See* ECF 1972 at 22; *Beef*, ECF 293 at 13.) Additionally, discovery of Carina would now run into summary judgment filings, thereby further "lengthen[ing] and complicat[ing]" resolution of Sysco's claims. *See Advanced Mktg. Grp., Inc. v. Bus. Payment Sys.*, 269 F.R.D. 355, 359 (S.D.N.Y. 2010); (ECF 1972 at 25.) Substitution at this stage of the litigation would be highly disruptive to the Court's efforts to streamline DAP claims and adhere to a common case-management schedule. (*Id.*) The Order was correct to be concerned with "a mid-litigation Rule 25(c) substitution" (Order at 28), consistent with the issues Defendants raised.

In sum, Magistrate Judge Docherty's conclusion about the implications of allowing Burford to litigate Sysco's alleged antitrust injury through Carina was well within his discretion. Sysco has previously articulated the same concerns, and the Objectors cannot reasonably claim the Court's judgment was erroneous given their own history.

## II. THE SYSCO-BURFORD DISPUTE UNDERSCORES WHY DIRECT FUNDER CONTROL OVER LITIGATION VIOLATES PUBLIC POLICY IN ALL RELEVANT JURISDICTIONS

While the Order did not rule on the validity of Sysco's assignment, state and federal courts uniformly reject the prospect of a funder directly controlling litigation.

The Objectors do not dispute that all potentially relevant states condemn an arrangement giving a funder decision-making authority over legal claims. Defendants' opposition to the Motion reviewed state law in detail and explained why it governs the

11

assignment's validity. (ECF 1972 at 15-20; *see also* ECF 2009.) For example, in *Mazlowski v. Prospect Funding Partners, LLC*, 944 N.W.2d 235 (Minn. 2020), even while abandoning the doctrine of champerty, the Minnesota Supreme Court directed courts to be "careful to ensure that litigation financiers do not attempt to control the course of the underlying litigation" because "it is difficult to conceive of any stipulation more against public policy than a contract requiring the litigation financier's permission to settle the underlying litigation." *Id.* at 241 (cleaned up). The Order prudently rejected the Objectors' attempt to use Rule 25 to formalize precisely that outcome here.

The Objectors labor to cite federal cases on any number of propositions—such as the general assignability of claims—none speaking to the propriety of a funder morphing into a plaintiff. No federal court has countenanced that abuse of Rule 25, and federal law aligns with the states in forbidding it. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018) ("[G]iving to the lender any control over litigation strategy or settlement decisions" must be "deem[ed] unenforceable"); *Koro Co. v. Bristol-Myers Co.*, 568 F. Supp. 280, 286-88 (D.D.C. 1983) ("Champerty is prohibited in the District of Columbia, as it is in New York. The same is true under federal common law as it has been interpreted by this Court."); *District Distribs., Inc. v. Heublein, Inc.*, 1971 WL 559, at *3-*4 (D.D.C. May 28, 1971) (holding that assignment of antitrust claim "effected a champertous action" under federal common law); *In re DesignLine Corp.*, 565 B.R. 341, 349 (Bankr. W.D.N.C. 2017) (rejecting funding agreement as champertous in bankruptcy due to funder control). In short, while the Objectors are eager to take the Court into any number of rabbit holes searching for some

12

route to approval of Burford's control over Sysco's antitrust claims, Sysco is "aware of no case upholding such an agreement; on the contrary, it is self-evident to courts confronting this issue that they are unenforceable." (New York Litigation Dkt. 34 at 4.)

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny the Objectors' objections to the Order and affirm denial of their motion for substitution.

Dated: March 8, 2024

/s/ Craig S. Coleman
Richard A. Duncan (#0192983)
Aaron D. Van Oort (#0315539)
Craig S. Coleman (#0325491)
Emily E. Chow (#0388239)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
richard.duncan@faegredrinker.com
aaron.vanoort@faegredrinker.com
craig.coleman@faegredrinker.com
emily.chow@faegredrinker.com

Jacob D. Bylund (*pro hac vice*)
Robert C. Gallup (#0399100)
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Ave., 33rd Floor
Des Moines, IA 50309
(515) 248-9000
jacob.bylund@faegredrinker.com
robert.gallup@faegredrinker.com

John S. Yi (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2200
Philadelphia, PA 19103
(215) 988-2700
john.yi@faegredrinker.com

Jonathan H. Todt (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 842-8800
jonathan.todt@faegredrinker.com

**Counsel for Hormel Foods Corporation and Hormel Foods, LLC**

14

*/s/ Daniel E. Laytin, P.C.*
Mark L. Johnson (#0345520)
Davida S. McGhee (#0400175)
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
mjohnson@greeneespel.com
dwilliams@greeneespel.com

Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
Jenna M. Stupar (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 861-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
jenna.stupar@kirkland.com

**Counsel for Clemens Food Group, LLC and The Clemens Family Corporation**

*/s/ John A. Cotter*
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
LARKIN HOFFMAN DALY & LINDGREN LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Richard Parker (*pro hac vice*)
Josh Lipton (*pro hac vice*)
GIBSON, DUNN &CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500
rparker@gibsondunn.com
jlipton@gibsondunn.com

Brian Robison (*pro hac vice*)
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
(972) 707-1809
brian@brownfoxlaw.com

**Counsel for Smithfield Foods, Inc.**

15

*/s/ Sami H. Rashid*
Sami H. Rashid (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)
David B. Adler (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
samirashid@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
richardvagas@quinnemanuel.com
davidadler@quinnemanuel.com

Donald G. Heeman (#0286023)
Jessica J. Nelson (#0347358)
Randi J. Winter (#0391354)
SPENCER FANE LLP
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402-4206
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

**Counsel for JBS USA Food Company**

*/s/ Peter J. Schwingler*
Peter J. Schwingler (#0388909)
Tess L. Erickson (#402534)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
(612) 217-8800
pschwingler@jonesday.com
terickson@jonesday.com

William L. Greene (#0198730)
William D. Thomson (#0396743)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
william.thomson@stinson.com

J. Nicci Warr (*pro hac vice*)
STINSON LLP
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

**Counsel for Seaboard Foods LLC**

16

*/s/ Christopher A. Smith*
Aaron Chapin (#0386606)
Christopher A. Smith (*pro hac vice*)
Tessa K. Jacob (*pro hac vice*)
A. James Spung (*pro hac vice*)
Jason Husgen (*pro hac vice*)
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard, Ste 1500
St. Louis, MO 63105
Telephone: (314) 480-1500
aaron.chapin@huschblackwell.com
chris.smith@huschblackwell.com
tessa.jacob@huschblackwell.com
james.spung@huschblackwell.com
jason.husgen@huschblackwell.com

**Counsel for Triumph Foods, LLC**

*/s/ Tiffany Rider Rohrbaugh*
Tiffany Rider Rohrbaugh (*pro hac vice*)
Rachel J. Adcox (*pro hac vice*)
Lindsey Strang Aberg (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
trider@axinn.com
radcox@axinn.com
lstrang@axinn.com

Jarod Taylor (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8109
jtaylor@axinn.com

David P. Graham (#0185462)
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

**Counsel for Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc.**

17

*/s/ William L. Monts III*
Peter H. Walsh (#0388672)
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
(612) 402-3000
peter.walsh@hoganlovells.com

William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

***Counsel for Agri Stats, Inc.***

US.362476842.01