**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF MINNESOTA**

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br><br>This Document Relates To:<br><br>THE DIRECT PURCHASER PLAINTIFF CLASS ACTION | Case No. 18-cv-01776 (JRT-JFD)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE DIRECT PURCHASER CLASS ACTION SETTLEMENT WITH HORMEL FOODS CORPORATION** |

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................. 1

II.     LITIGATION BACKGROUND ......................................................................... 3

III.    THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR
        PRELIMINARY APPROVAL ........................................................................... 6

        A.      The Proposed Settlement is the Result of Arm's-Length Negotiations
                Conducted After Extensive Investigation and Discovery, and is
                Supported by Experienced Class Counsel ....................................................... 7

        B.      The Settlement Provides Significant Relief to the DPP Class and
                Should be Preliminarily Approved by the Court ........................................... 9

IV.     THE SETTLEMENT IS ON BEHALF OF A CERTIFIED CLASS .................... 11

V.      THE COURT SHOULD APPROVE THE SETTLEMENT AND NEED
        NOT PROVIDE AN ADDITIONAL EXCLUSION PERIOD .............................. 11

VI.     DPPS WILL SEEK AN INTERIM PAYMENT OF LITIGATION
        EXPENSES FROM THE HORMEL FOODS AND SEABOARD
        SETTLEMENTS, BUT NOT A DISTRIBUTION TO THE CLASS OR
        PAYMENT OF ATTORNEY FEES OR CLASS REPRESENTATIVE
        SERVICE AWARDS AT THIS TIME ................................................................. 13

VII.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ............ 14

        A.      The Content and Form of the Proposed Notices Are Fairly Balanced,
                Easy to Read, and Contain All Rule 23 Notice Requirements .................... 15

        B.      The Proposed Notice Plan Provides the Best Notice Practicable
                Under the Circumstances ............................................................................. 16

                1.      Direct-Mailed Notice to Class Members with Known Street
                        Addresses ........................................................................................ 18

                2.      Direct-E-Mailed Notice to Class Members with Known E-
                        Mail Addresses ............................................................................... 18

                3.      Media Publication Campaign ......................................................... 19

                4.      Informational Web Site And Toll-Free Telephone Number ........... 20

VIII.   THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING ........... 20

IX.     CONCLUSION .................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aranda v. Caribbean Cruise Line, Inc.*,
  No. 12 C 4069, 2017 WL 818854 (N.D. Ill. March 2, 2017) ...................................... 19

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill 2014) ........................................................................... 16, 19

*City of Greenville v. Syngenta Crop Prot.*,
  No. 3:10-CV-188, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ................................. 17

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .................................................................................... 12

*DaSilva v. Esmor Correctional Servs. Inc.*,
  215 F.R.D. 477 (D.N.J. 2003) ..................................................................................... 12

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ........................................................................................ 8

*In re Domestic Air Transp. Antitrust Litig.*,
  141 F.R.D. 534 (N.D. Ga. 1992) ................................................................................. 19

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974). Notice ....................................................................................... 16

*In re Emp. Benefit Plans Sec. Litig.*,
  No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ............................................ 7

*Grier v. Chase Manhattan Auto Fin. Co.*,
  No. A.99-180, 2000 WL 175126 (E.D. Pa. Feb. 16, 2000) ........................................... 7

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) .................................................................................... 6, 7

*Hughes v. Kore of Indiana Enterprise, Inc.*,
  731 F.3d 672 (7th Cir. 2013) ...................................................................................... 17

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg.,
  Sales Pracs. & Prod. Liab. Litig.*,
  No. 1:15-md-2627, 2022 WL 2128630 (E.D. Va. 2022) ............................................. 12

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) ............................................................... 15

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
   281 F.3d 629 (7th Cir. 2002) ................................................................... 10

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) .............................................................. 8, 15

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
   451 U.S. 630 (1981) ................................................................................. 10

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ..................................................................... 6

*Welsch v. Gardebring*,
   667 F. Supp. 1284 (D. Minn. 1987) ........................................................... 7

*White v. Nat'l Football League*,
   822 F. Supp. 1389 (D. Minn. 1993) ................................................ 6, 7, 10

*White v. Nat'l Football League*,
   836 F. Supp. 1458 (D. Minn. 1993) ........................................................... 7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   No. 08-MDL-1958, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) ............... 7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ................. 8

**Other Authorities**

Fed. R. Civ. Proc. 23(c)(2)(B) ........................................................... 15, 16, 18

Fed. R. Civ. Proc. 23(c)(2)(B)(i)–(vii) ......................................................... 16

Fed. R. Civ. Proc. 23(e) ........................................................................... 6, 15

Fed. R. Civ. Proc. 23(e)(4) ............................................................................ 12

MANUAL FOR COMPLEX LITIG., §§ 21.312, 21.631 (4th ed. 2011) .................. 15

MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004) ................................... 6

2 MCLAUGHLIN ON CLASS ACTIONS, § 6:21 (19th ed.) ................................... 12

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.) ............................. 11

2 NEWBERG ON CLASS ACTIONS, § 11.24 (3d ed. 1992) ................................................ 6, 10

4 NEWBERG ON CLASS ACTIONS, § 11.53 (4th ed. 2002) ................................................ 15

## I.  __INTRODUCTION__

The Direct Purchaser Plaintiffs ("DPPs") in this certified antitrust class action respectfully move the Court to (1) preliminarily approve a proposed settlement of their claims against Defendant Hormel Foods Corporation and Hormel Foods, LLC[1] ("Hormel Foods"), and (2) approve the content and dissemination of the notice (*see* Section VII below).[2]

This is the fourth settlement in this litigation, and it provides the DPP Certified Class with significant and substantial relief from one of the smaller Defendants in this action. Pursuant to the Settlement Agreement and as set forth below, Hormel Foods will pay $4,856,000.00 and will provide other non-monetary relief for the benefit of the DPP Class. Combined with DPPs' earlier settlements with the JBS, Smithfield, and Seaboard Defendants, this brings the total settlements to date to $116,470,300. (*See* Clark Decl. ¶ 5.)

As discussed in this memorandum, the Settlement Agreement is the product of protracted arm's-length settlement negotiations that took place over six weeks, and provides substantial monetary and non-monetary relief to the Certified Class. It should be granted preliminary approval because it is within the range of possible final approval, it is fair, reasonable, and adequate, and it is in the best interests of the Certified Class members.

---

[1] The DPPs previously stipulated to—and the Court then ordered—the dismissal of Hormel Foods, LLC without prejudice. (Stipulation for Dismissal, ECF No. 622; Order Granting Stipulation for Dismissal, ECF No. 640.)

[2] Unless otherwise noted, all capitalized terms shall have the same meaning as in the Settlement Agreement (also referred to herein as "Settlement"), which is filed concurrently herewith as Exhibit A to the Declaration of Brian D. Clark ("Clark Decl.").

In addition to approving the notice plan set forth herein, DPPs request that the Court set a schedule for the Final Fairness Hearing of the Settlement. At the Final Fairness Hearing, Co-Lead Class Counsel[3] will request entry of a final order and judgment dismissing Hormel Foods and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

With regard to the notice plan, the Court previously granted DPPs' motion for class certification as to the non-settling Defendants, which included Hormel Foods at the time. (*See generally* Memorandum Opinion and Order dated March 29, 2023, ECF No. 1887 ("Class Certification Order" or "Cert. Order").) On August 25, 2023, this Court approved the Class Notice Plan, which provided Certified Class members a final opportunity to opt out of the Certified Class. (*See* ECF No. 2014.) That Class Notice Plan was successfully implemented and on January 24, 2024 this Court entered an order approving the final exclusion list. (*See* ECF No. 2086.) DPPs now seek approval of the content and dissemination of their notice plan related to the Settlement with Hormel Foods, which will notify Certified Class members of the Settlement and its terms, and will provide an opportunity to object to the settlement but not a further opportunity to opt out. (*See* Section V below.) Consistent with the notices already approved by this Court and disseminated for the three DPP settlements to date, the proposed multi-method notice plan includes direct-mailed notices, email notices, notices published online, and a continuing informational website and toll-free telephone line to communicate with Class members. As described in

---

[3] Co-Lead Class Counsel are Lockridge Grindal Nauen P.L.L.P. and Pearson Warshaw, LLP. (*See* Cert. Order at 68.)

this memorandum, the proposed notices and notice plan exceed the requirements for Rule 23 notice and accordingly should be approved. Hormel Foods, the Settling Defendant, has reviewed the notice documents and does not object to their contents. (Clark Decl. ¶ 14.)

## II.   <u>LITIGATION BACKGROUND</u>

This is an antitrust class action against certain producers of Pork. DPPs filed their class action lawsuit on June 29, 2018, and it and subsequently-filed cases were consolidated before Judge John R. Tunheim in this Court. DPPs allege that Defendants combined and conspired to fix, raise, maintain, or stabilize prices of Pork sold in the United States in violation of the Sherman Act, 15 U.S.C. § 1. (*See generally* DPP Third Consolidated and Amended Complaint, ECF No. 431.) DPPs allege that Defendants implemented their conspiracy in various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and otherwise manipulating Pork prices. (*Id.*)[4]

Defendants moved to dismiss all Plaintiffs' complaints. In August 2019, the Court granted their motions and granted Plaintiffs leave to amend. (ECF No. 360.) DPPs amended their complaint, and after extensive briefing by the parties, on October 16, 2020, the Court largely denied Defendants' motions to dismiss. (ECF No. 519, *amended* Oct. 20, 2020, ECF No. 520.)

---

[4] Unlike other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. *See* Corporate Leniency Policy, U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy.

Since the initial complaint was filed, DPPs have continued their factual investigation into the conspiracy alleged in their complaint, and once the Court largely denied Defendants' motions to dismiss Plaintiffs' complaints, DPPs commenced extensive discovery. (*See* Clark Decl. ¶ 3.) During discovery, DPPs obtained responses to multiple sets of interrogatories, and received millions of documents in response to their requests for production and third-party subpoenas. (*See Id*. ¶ 4.) DPPs, along with other plaintiffs, have taken dozens of depositions of the Defendants and third parties. (*Id*.) DPPs have also provided responses to written discovery, produced documents, and DPP's named representatives have appeared for depositions noticed by the Defendants. (*Id*.)

On November 17, 2020, DPPs and the JBS Defendants entered into a settlement that provided for a payment of $24,500,000 and meaningful cooperation. (Clark Decl. ¶ 5.) The Court granted final approval of that settlement on July 26, 2021. (*See* ECF No. 838.) On June 29, 2021, DPPs and the Smithfield Defendants entered into a settlement that provided for a payment of $83 million[5] and meaningful cooperation. (Clark Decl. ¶ 5.) The Court granted final approval of that settlement on January 31, 2022. (*See* ECF No. 1154.) On June 12, 2023, DPPs and Seaboard Foods LLC entered into a settlement that provided for a payment of $9,750,000 and meaningful cooperation. (Clark Decl. ¶ 5.) The Court granted final approval of that settlement on March 5, 2024. (*See* ECF No. 2137.) Notice to the DPP Class of these prior settlements was approved by the Court and successfully implemented

---

[5] The Smithfield settlement was subject to a $5,635,700 reduction based on the opt-outs received during the settlement administration process. The total net amount paid by Smithfield equaled $77,364,300. (*See* Clark Decl. ¶ 5.)

by A.B. Data, Ltd. (the Court-appointed Settlement Administrator, *see* ECF Nos. 631, 845, 2014) each time. (*See* ECF Nos. 838, 1154, 2137.)[6]

> On March 29, 2023, the Court certified the following DPP Class:
>
> All persons and entities who directly purchased one or more of the following types of pork, or products derived from the following types of pork, from Defendants, or their respective subsidiaries or affiliates, for use or delivery in the United States from June 29, 2014 through June 30, 2018: fresh or frozen loins, shoulders, ribs, bellies, bacon, or hams. For this lawsuit, pork excludes any product that is marketed as organic or as no antibiotics ever (NAE); any product that is fully cooked or breaded; any product other than bacon that is marinated, flavored, cured, or smoked; and ready-to-eat bacon.
>
> Excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

Cert. Order at 4-5 (the "Certified Class"), and at 69 (granting class certification).

DPP Co-Lead Class Counsel performed a thorough investigation prior to reaching the Hormel Foods Settlement and, given that the case had proceeded for nearly six years, and that class certification proceedings and fact discovery were completed by the time of the settlement, Co-Lead Class Counsel were well informed by the time the parties agreed to settle. (*See* Clark Decl. ¶¶ 8, 11.) This Settlement, the terms of which are detailed in this

---

[6] Currently, Co-Lead Class Counsel are working with A.B. Data to complete the Court-approved claims process. (*See* ECF No. 2144 (providing a status update to the Court regarding the distribution).) Like the Seaboard settlement, the Hormel Foods Settlement is not part of this current claims process and distribution, but instead will be part of a future distribution. However, any Class member who submits a valid claim as part of the current distribution will not be required to resubmit its claim for this or future recoveries.

brief and the supporting documents, represents a significant recovery for DPPs based on the record and Hormel Foods' position in the market.

## III. THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL

Parties proposing to settle a class action must obtain the court's approval of the settlement. Fed. R. Civ. Proc. 23(e). Federal Rule of Civil Procedure ("Rule") 23(e) contemplates a sequential process for courts evaluating class action settlements. At this preliminary approval stage, the court determines whether the settlement is within the range of possible approval and whether class members should be notified of the terms of the proposed settlement. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); 2 NEWBERG ON CLASS ACTIONS, § 11.24 (3d ed. 1992) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'"). Generally, before directing notice to the class members, a court makes a preliminary evaluation of the proposed class action settlement pursuant to Rule 23(e). *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004).

If the court preliminarily approves the settlement and authorizes notice to the class, and once the class has had the opportunity to consider the settlement, then on final approval the court must determine whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. Proc. 23(e); *see also, e.g.*, *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The court has broad discretion in evaluating a class action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988). The law strongly favors resolving

litigation through settlement, particularly in class actions. *White*, 822 F. Supp. at 1416

("The policy in federal court favoring the voluntary resolution of litigation through

settlement is particularly strong in the class action context.") (citation omitted); *In re Zurn*

*Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2012 WL 5055810, *6 (D. Minn.

Oct. 18, 2012).

DPPs respectfully submit that the proposed Settlement Agreement with Hormel

Foods satisfies the preliminary approval standard and should be approved by the Court.

### A.   The Proposed Settlement is the Result of Arm's-Length Negotiations Conducted After Extensive Investigation and Discovery, and is Supported by Experienced Class Counsel

"The Court is entitled to rely on the judgment of experienced counsel in its

evaluation of the merits of a class action settlement." *In re Emp. Benefit Plans Sec. Litig.*,

No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) (citation omitted); *see also*

*Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight"

to opinions of experienced counsel). Courts attach "[a]n initial presumption of fairness . . .

to a class settlement reached in arm's-length negotiations between experienced and capable

counsel after meaningful discovery." *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-

180, 2000 WL 175126, *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin*, 513 F.2d at 123;

*White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993).

Indeed, courts consistently find that the terms of a settlement are appropriate where

the parties, represented by experienced counsel, have engaged in extensive negotiations at

an appropriate stage in the litigation and can properly evaluate the strengths and

weaknesses of the case and the propriety of the settlement. *See, e.g., In re Emp. Benefit*

*Plans Sec. Litig.*, 1993 WL 330595, at \*5 (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, \*6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .'") (citation omitted). When, as here, experienced counsel represent the parties, and rigorous negotiations were conducted at arms' length, the judgment of the litigants and their counsel concerning the adequacy of the settlement should be considered. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

Here, the parties to the Settlement have had ample opportunity to assess their claims and defenses through investigation, discovery, research, settlement discussions, and contested motion practice, and to balance the value of Certified Class members' claims against the substantial risks and expense of continuing litigation. The proposed Settlement comes after extensive confidential, protracted arm's-length negotiations between the parties over the past six weeks. (*See* Clark Decl. ¶¶ 6, 8, 9, 11.) The hard-fought negotiations were kept confidential as the parties vigorously litigated the case. (*Id.*) The negotiations included many conferences and written exchanges between counsel. (*Id.*) The parties ultimately executed the Settlement Agreement on March 29, 2024. (*See id.* ¶ 10; *see also* Settlement Agreement.) Throughout all of these settlement discussions, counsel for DPPs focused on obtaining the best possible result for the DPP Certified Class. (Clark Decl. ¶ 11.)

In sum, the Settlement Agreement: (1) is the result of extensive good-faith and hard-fought negotiations between knowledgeable and skilled counsel; (2) was entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced class counsel, is fair, reasonable, and adequate. Based on both the monetary and cooperation elements of the Settlement Agreement, Co-Lead Class Counsel believes the Settlement Agreement is in the best interests of the Certified Class members and should be approved by the Court. (Clark Decl. ¶ 12.)

**B.    The Settlement Provides Significant Relief to the DPP Class and Should be Preliminarily Approved by the Court**

The Settlement Agreement with Hormel Foods provides substantial relief to the Certified Class in terms of monetary relief and the ability to prove their claims at trial as the case proceeds against the remaining Defendants. Under the terms of the Settlement Agreement, within 14 days of the Court's preliminary approval of the Settlement, Hormel Foods will pay $4,856,000 into the Settlement Fund, which shall be deposited into an interest-bearing escrow account.[7] (*See* Settlement Agreement ¶¶ 9-10.) The Settlement Fund will be used to compensate the Certified Class for the damages suffered and expenses incurred, including attorneys' fees, litigation expenses, and the costs of notice. (*Id.* ¶¶ 9-10, 11-13.) The Settlement Agreement does not contain any reduction or termination provisions. (Clark Decl. ¶ 7.)

---

[7] Plaintiffs respectfully request that the Court appoint Huntington Bank as the Escrow Agent.

In addition to the payment of money, the Settlement permits DPPs to prove their claims against the remaining Defendants at trial. (*See* Settlement Agreement ¶ 3.) This includes assisting DPPs with authenticating documents for trial and providing DPPs the same access to potential trial witnesses as provided to any non-settling Defendant. (*Id.*) This agreement is significant because pursuant to the Sherman Act, the remaining Defendants are jointly and severally liable for any damages resulting from Hormel Foods' Pork sales to DPPs during the Class Period. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981); *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 633 (7th Cir. 2002)*.* Thus, this agreement will assist Plaintiffs in maximizing their claims against the remaining Defendants.

In consideration for these settlement benefits, DPPs and the proposed Certified Class agree to release certain Released Claims (as defined in the Settlement Agreement) against the Hormel Foods Released Parties (as defined in the Settlement Agreement). (*See* Settlement Agreement ¶¶ 10, 14, 15.) The release does not extend to any other Defendants or co-conspirators, or to unrelated claims for breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claims. (*Id.* ¶¶ 14, 15.)

In sum, DPP Class Counsel believe this Settlement with Hormel Foods provides substantial monetary and non-monetary relief to the Certified Class and falls well within the range of possible approval. For these reasons, DPPs respectfully submit that the Court should grant preliminary approval to the Settlement Agreement and authorize notice to the Certified Class. *See White*, 822 F. Supp. at 1399; 2 Newberg on Class Actions, § 11.24.

## IV.    THE SETTLEMENT IS ON BEHALF OF A CERTIFIED CLASS

As noted above in Section II, on March 29, 2023, the Court granted DPPs' motion for class certification and certified the DPP Class. (Cert. Order at 4-5, 69.) "If the court has certified a class prior to settlement, it does not need to re-certify it for settlement purposes." 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.). Here, the parties do not request any changes to the Certified Class, so the Court need not re-certify it.

## V.    THE COURT SHOULD APPROVE THE SETTLEMENT AND NEED NOT PROVIDE AN ADDITIONAL EXCLUSION PERIOD

The Court previously certified the Class on March 29, 2023. (*See* Cert Order.). Thereafter, on August 25, 2023, the Court approved a notice program that provided a final opportunity for Certified Class members to exclude themselves. (*See* ECF No. 2014.) Specifically, the long form class notice provided the following notice to Certified Class Members:

> The notice provides Class Members with an opportunity to opt out of the Settlement, the Certified Class defined above, or both. If you exclude yourself from both the Settlement and the Certified Class, you will not receive any of the Settlement benefits and cannot participate in any future settlements on behalf of the Certified Class and will not be bound by any future judgments. If you exclude yourself from only the Certified Class, but not the Settlement, you will receive the benefits of the Settlement, but cannot participate in any future settlements on behalf of the Certified Class and will not be bound by any future judgments. If you exclude yourself from only the Settlement, you will not receive any of the Settlement benefits and you will remain in the Certified Class and be bound by future settlements and judgments. …
>
> **If you do not exclude yourself from the Certified Class, you will be bound by any judgment or future settlement with the Non-Settling Defendants and may not have another opportunity to exclude yourself**. If you have a pending lawsuit against one or more of the Non-Settling Defendants or Seaboard, speak to your lawyer in that lawsuit immediately to

determine whether you must exclude yourself from this Class or the Settlement to continue your lawsuit. (emphasis added)

As Certified Class Members have already been provided an opportunity to exclude themselves, an additional opportunity should not be permitted here.

While Rule 23(e)(4) grants district courts the discretion to afford class members of a previously-certified class an additional opt-out opportunity, it is often unnecessary[8] and the Rules Committee has urged district courts to exercise their discretion to allow additional opt-out opportunities with caution,[9] as "a second opt-out opportunity might inject additional uncertainty into settlement and create opportunities unrelated to the purpose of the second opt-out, potentially defeating some settlements and making others more costly." *See* Certification of a settlement class—No additional opportunity to opt-out at settlement stage if class already certified, 2 MCLAUGHLIN ON CLASS ACTIONS, § 6:21 (19th ed.) (quoting and citing MANUAL FOR COMPLEX LITIGATION (4th), § 22.611 at 313);

---

[8] *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992) (holding that "Class Members were given notice of the action and afforded an opportunity to opt-out [when litigation class was certified and] also were given notice of the proposed settlement and afforded the opportunity to object. This is all that Rule 23 requires."); *DaSilva v. Esmor Correctional Servs. Inc.*, 215 F.R.D. 477, 483 (D.N.J. 2003), *aff'd*, 167 Fed. App'x. 303 (3d Cir. 2006) ("In class action litigation 'potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation "as soon as practicable after the commencement" of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class.' ") (quoting *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 549 (1974)).

[9] *See* 2003 Report of the Judicial Conference, Committee on Rules of Practice and Procedure (commentary on amended Rule 23(e)(3)) [now (e)(4)].

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:15-md-2627, 2022 WL 2128630, *6 n.9 (E.D. Va. 2022)).

This class action lawsuit has been litigated for nearly six years, including through three prior rounds of settlements with opportunities to opt out at each stage and, most recently, notice to the Certified Class of the Court's order granting class certification, with yet another opportunity to opt out. Now, the litigation, its progress, and its prospects are well known to members of the DPP Class. Co-Lead Class Counsel respectfully submit that an additional opportunity to opt out is unnecessary and the Settlement before the Court now should be approved with only an objection period.

**VI.    DPPS WILL SEEK AN INTERIM PAYMENT OF LITIGATION EXPENSES FROM THE HORMEL FOODS AND SEABOARD SETTLEMENTS, BUT NOT A DISTRIBUTION TO THE CLASS OR PAYMENT OF ATTORNEY FEES OR CLASS REPRESENTATIVE SERVICE AWARDS AT THIS TIME**

In conjunction with the Court's consideration of final approval of this settlement, DPPs will move the Court to approve the replenishment of the DPPs' future litigation expense fund[10] in an amount up to $1,460,600.00, which is 10 percent of the total amount of undistributed proceeds from the settlements with Seaboard ($9,750,000.00) and Hormel Foods ($4,856,000.00, and with the Seaboard settlement proceeds $14,606,000.00 total). So that Class members have ample notice of this expense reimbursement request, Co-Lead

---

[10] Co-Lead Class Counsel previously sought the payment of up to $5 million in incurred and future litigation expenses, which was approved by this Court. (*See* ECF No. 1424.) The details of the litigation expenses sought will be fully set forth in the forthcoming motion for interim payment of litigation expenses, but as of the filing of this Motion the previously approved future litigation expense fund is nearly exhausted. (*See* Clark Decl. ¶ 12.)

Class Counsel will file this motion 30 days before the deadline for Class members to object to the Settlement, and the notice to the Class also will inform Class members of their right to object to this expense reimbursement request even if they do not object to the Hormel Foods settlement. This forthcoming second petition for interim payment of litigation expenses will be limited and deducted *pro rata* based on the settlement proceeds from the Seaboard and Hormel Foods settlements. (*See* Clark Decl. ¶ 12.)

At this time, Plaintiffs and their counsel are not seeking attorneys' fees or class representative service awards from the Settlement proceeds. However, they will do so in the future, and will notify the Class and file a motion with the Court at an appropriate time.[11] At this time, DPPs also are not seeking to distribute the net Settlement proceeds from the Hormel Foods Settlement to qualified Class members. (*See* Clark Decl. ¶ 12.)

## VII.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

DPPs respectfully request the Court's approval of the notice plan, which will inform Class members of the proposed Settlement with Hormel Foods. Plaintiffs have retained A.B. Data, Ltd. to administer the notice plan.  A.B. Data is an experienced national class action notice provider and claims administrator and Court-appointed administrator of the JBS, Smithfield, and Seaboard settlements, as well as the claims and distribution process. (Declaration of Eric Schachter ("Schachter Decl.") filed concurrently herewith, ¶¶ 1-5, Ex. A; ECF Nos. 631, 845, 1208, 2014.)

---

[11] As set forth in the proposed notice documents and the Settlement Agreement at ¶ 6.b, DPPs may withdraw up to $400,000 of the Settlement Fund to pay for actual costs of notice and for Preliminary Approval and Final Approval of this Settlement Agreement.

### A. The Content and Form of the Proposed Notices Are Fairly Balanced, Easy to Read, and Contain All Rule 23 Notice Requirements

For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) states:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Under Rule 23(e), Class Members are entitled to reasonable notice of the proposed Settlement. *See* MANUAL FOR COMPLEX LITIG., §§ 21.312, 21.631 (4th ed. 2011). The form of notice is "adequate if it may be understood by the average class member." 4 NEWBERG ON CLASS ACTIONS, § 11.53 (4th ed. 2002). Class notice is intended as a summary, rather than a complete source of information. *See Petrovic*, 200 F.3d at 1153; *Mangone v. First USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001). The class notice's form and content are committed to a district court's sound discretion. *See Mangone*, 206 F.R.D. at 231.

Settlement notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The notice conforms to the seven plain language requirements of Rule 23(c)(2)(B) and state the following information: (1) the nature of the action; (2) the definition of the Class certified; (3) the class claims, issues, or

defenses; (4) that a Class member may enter an appearance through an attorney if the member so desires; (5) that a Class member may object to the Settlement and the process for doing so; (6) that the exclusion period has passed; and (7) the binding effect of a Class judgment. *See* Fed. R. Civ. Proc. 23(c)(2)(B)(i)-(vii); Schachter Decl. Exs. B, C. With this and the other information they contain, the notices' contents address material information required.

The notices avoid legalese in favor of modern language and provide a toll-free number and website link to direct Class members to additional sources of information, including pleadings and orders from the case. Accordingly, the proposed notices provide the best written notice practicable to Class members.

### B.   The Proposed Notice Plan Provides the Best Notice Practicable Under the Circumstances

Federal case law on notice requires "only the best notice that is practicable." *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 255 (N.D. Ill 2014) (quoting *Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676-77 (7th Cir. 2013)). Best notice practicable means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Id.* at 176. In addition to United States mail, direct notice may be by electronic means or other appropriate means. Fed. R. Civ. Proc. 23(c)(2)(B). If names and addresses cannot be identified by reasonable effort then, other

methods may be substituted. *See Hughes*, 731 F.3d at 677; *see also City of Greenville v. Syngenta Crop Prot.*, No. 3:10-CV-188, 2012 WL 1948153, *4 (S.D. Ill. May 30, 2012).

The proposed notice plan in this case satisfies these criteria and is the same as the notice plan previously approved by the Court in the JBS, Smithfield, and Seaboard settlements. (*See* ECF Nos. 631, 845, 2014.) DPPs also recently completed the claims process for the JBS and Smithfield settlements, which has resulted in updated contact information for Class members. (*See* ECF No. 1864.) Namely, DPPs propose to the Court a plan of notice that comports with due process and provides reasonable notice to known and reasonably identifiable customers of the Defendants pursuant to Rule 23. The class notice documents, consisting of the long form, short form, and publication notice, comply with the requirements of Rule 23(c)(2)(B). (*See* Schachter Decl. Exs. B (long form), C (short form), D (publication).) The notice documents define the Certified Class, describe the nature of the action, summarize the class claims, inform the Class members that DPPs will move for an interim payment of litigation expenses in an amount up to $1,460,600.00, and explain the procedure to object to the proposed Settlement and/or the interim litigation expense payment request. (*Id.*) The notice documents describe the terms of the Settlement Agreement and inform the Certified Class members that there is no plan of distribution of the Hormel Foods settlement proceeds at this time. (*Id.*) The notice documents will provide the date, time, and place of the Final Fairness Hearing (once that hearing is set by the Court) and will inform Certified Class members that they do not need to enter an appearance through counsel, but may do so if they choose. (*Id.*)

A.B. Data is very familiar with providing such notice to DPP Class members from working with multiple settlements with notice, settlement claims, and distribution. The target audience for this notice plan is businesses and individuals that purchased the subject Pork. The proposed notice plan is designed to provide notice to these Class members consistent with the due process requirements of Rule 23. Defendants maintained and produced records showing addresses for the vast majority of Class members. Accordingly, A.B. Data has developed a multi-method campaign for the notice plan based on and similar to notice campaigns the Court approved for earlier settlements.

      1.    <u>Direct-Mailed Notice to Class Members with Known Street Addresses</u>

DPPs propose to send paper long-form notices to Class members with addresses that are reasonably accessible based on records produced by Defendants. (Schacter Decl. Ex. B.) The long-form notice will be sent to approximately 55,000 mailing addresses associated with potential Class members in this manner. (Schachter Decl. ¶¶ 7, 8.) A.B. Data will also post the long-form notice on the existing case website, https://porkantitrustlitigation.com/. (*Id.*) A.B. Data will track mail that the post office returns as undeliverable, and where feasible will resend using third-party information providers. (*Id.* ¶ 10.)

      2.    <u>Direct-E-Mailed Notice to Class Members with Known E-Mail Addresses</u>

The notice rule states notice may be given by one or more methods, including electronic mail. Fed. R. Civ. Proc. 23(c)(2)(B). A.B. Data will send an email notice, Schacter Decl. Ex. C, to the approximately 3,000 email addresses associated with potential

Class members. (*Id.* ¶ 8.) A.B. Data implements certain best practices to increase deliverability and determine how many emails are successfully delivered. (*Id.* ¶ 10.)

The Email Notice will provide Class members with an electronic link to the case website, https://porkantitrustlitigation.com/. (*Id.* ¶ 9.) The website provides more detailed information including case documents and the long form notice.

### 3.    Media Publication Campaign

When not all Class members can be identified through reasonable effort, "there is no other requirement of mandatory individual notice, and the Court must exercise its discretion to provide the best notice practicable under the circumstances." *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 539, 539 (N.D. Ga. 1992); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854 at *2 (N.D. Ill. March 2, 2017) (publication permissible if class members not reasonably identifiable), *affirmed sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018); *Birchmeier*, 302 F.R.D. at 255 ("making broad-based forms of notice appropriate"). For those Class members whose addresses and email addresses are not reasonably accessible, A.B. Data has developed a public awareness media campaign similar to campaigns used for prior settlements in this case.

This media campaign will include posting on multiple websites. A.B. Data will publish a banner ad like Exhibit D to the Schacter Declaration. The Banner Ad will run in Supermarket News (www.supermarketnews.com) and Nation's Restaurant News (www.nrn.com). The ads will run for four weeks. (Schachter Decl. ¶ 11.)

4. <u>Informational Web Site And Toll-Free Telephone Number</u>

To provide detailed information about the case and specific information to Class members, A.B. Data will update and continue to operate and monitor the case website for this case at https://porkantitrustlitigation.com/. (*See* Schachter Decl. ¶¶ 8, 9, 12.)

**VIII. <u>THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING</u>**

The last step in the settlement approval process is the Final Fairness Hearing, at which the Court may hear all evidence necessary to evaluate and determine whether to grant final approval to the proposed Settlement. At that hearing, proponents of the Settlement may explain and describe their terms and conditions and offer argument in support of the Settlement's approval, and members of the Certified Class or their counsel may be heard regarding the proposed Settlement if they choose. DPPs propose the following schedule of events necessary for disseminating notice to the Certified Class and the Final Fairness Hearing.

| DATE | EVENT |
|---|---|
| June 3, 2024. | Settlement Administrator to provide direct mail and email notice, and commence implementation of the notice plan. |
| July 3, 2024 (30 days after the commencement of Notice). | Co-Lead Class Counsel shall file and post on the case website a motion for interim payment of litigation expenses. |
| August 3, 2024 (60 days after the commencement of Notice). | Last day for Certified Class members to object to the Settlement and/or DPPs' motion for interim payment of litigation expenses, and for Certified Class members to file notices to appear at the Final Fairness Hearing. |
| 14 days before Final Settlement Fairness Hearing. | Co-Lead Class Counsel shall file and post on the case website a motion for final approval of the Settlement and all supporting papers, and respond to any objections to the proposed Settlement. |
| 45 days after last day to object to the Settlement, or as soon thereafter as the matter may be heard by the Court. | Final Fairness Hearing and hearing on DPPs' motion for interim payment of litigation expenses.[12] |

## IX.   CONCLUSION

For these reasons, DPPs respectfully request that the Court preliminarily approve the Settlement with Hormel Foods, approve the proposed notice plan for dissemination to the Certified Class, and schedule the Final Fairness Hearing for the Settlement.

---

[12] Under the terms of the Settlement Agreement (¶ 23), within 10 days of the filing of this motion for preliminary approval, Hormel Foods shall serve appropriate Federal and State officials with all required materials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Under the Act, this Court may not enter an order giving final approval of the proposed settlement earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under 28 U.S.C. § 1715 (b). DPPs' proposed timetable and "no sooner than" Final Settlement Fairness Hearing date proposed above will allow time for the notice required under the Act.

Date:  April 5, 2024

*/s/ Michael H. Pearson*
Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
PEARSON WARSHAW, LLP
15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
cpearson@pwfirm.com
dwarshaw@pwfirm.com
bpouya@pwfirm.com
mpearson@pwfirm.com

Bruce L. Simon (*Pro Hac Vice*)
Jill M. Manning (*Pro Hac Vice*)
PEARSON WARSHAW, LLP
555 Montgomery Street
Suite 1205
San Francisco, CA 94111
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pwfirm.com
jmanning@pwfirm.com

*Direct Purchaser Plaintiffs Co-Lead Class Counsel*

W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Joseph C. Bourne (MN #0389922)
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
jcbourne@locklaw.com

Melissa S. Weiner (MN #0387900)
PEARSON WARSHAW, LLP
328 Barry Avenue South
Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pwfirm.com