UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTIONS | Case No. 18-cv-1776 (JRT/HB)<br><br>**Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement Between the Commercial and Institutional Indirect Purchaser Plaintiffs and Defendants Hormel Foods Corporation and Hormel Foods, LLC** |

**Table of Contents**

**Page**

I. Introduction ..................................................................................................................1

II. Background and Basic Settlement Terms .........................................................................1

III. Preliminary Approval of the Settlement Should be Granted ............................................7

    A. The Proposed Settlement Is the Result of Arm's-Length Negotiations ............. 8

    B. The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ........................................................................9

IV. Because Class Certification Was Previously Granted, The Court Does Not Need to Certify Settlement Classes ............................................................................13

V. The Court Should Allow CIIPPs to Provide a Proposed Notice Plan Later ...............13

VI. Conclusion .................................................................................................................15

i

# Table of Authorities

**Cases**

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ...................................................... 8

*In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652 (D.D.C. 1979) .......................................................... 12

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ............................... 9, 10, 11

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) .................................................. 10

*In re Corrugated Container Antitrust Litig.*, 1981 WL 2093 (S.D. Tex. Jan. 27, 1981) ............. 11, 12

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
    481 F.3d 1119 (9th Cir. 2007) ........................................................................................................ 10

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................... 9, 11, 12

*In re Packaged Ice Antitrust Litig.*, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. Aug. 2, 2010) .... 11

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 150427
    (E.D. Mich. Dec. 13, 2011) .............................................................................................................. 9

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697 (M.D. Pa. 2008) .............. 12

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................... 11

*In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980) ........................................................ 12

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ............................................... 11

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ................................ 7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) .......... 14

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ........ 8, 18

*Jones v. Flowers*, 547 U.S. 220 (2006) ................................................................................................. 14

*Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013) ............................................................... 7, 9

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ................................................. 14

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .................................................................. 14

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ............................................................ 10

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ............................................................................. 7

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) ............................................ 7, 8

**Statutes & Rules**

28 U.S.C. § 1715 ..................................................................................................................................... 7

Fed. R. Civ. P. 23 ........................................................................................................................... *passim*

Fed. R. Civ. P. 23(e)(2) ........................................................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................................. 13

**Other Authorities**

Manual for Complex Litigation (Third) § 30.41 (1995) ..................................................................... 8

4 NEWBERG ON CLASS ACTIONS § 11.26 (4th ed. 2002) ..................................................................... 8

4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ..................................................................... 8

4 NEWBERG ON CLASS ACTIONS § 13.18 (4th ed. 2002) ................................................................... 13

## I. Introduction.

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs")[1] respectfully request the Court's preliminary approval of the settlement of their claims against Hormel Foods Corporation and Hormel Foods, LLC[2] (collectively, "Hormel Foods"). The proposed settlement is the result of extensive arm's length negotiations and provides the CIIPPs with substantial monetary relief of $2,429,000.00 as well as non-monetary relief.

The Court should grant preliminary approval of the proposed settlement because it is well within the range of possible approval and is in the best interest of the class members. In a separate motion, CIIPPs will ask the Court to approve a proposed plan for disseminating notice to the Certified Classes and to schedule a final fairness hearing. At the final fairness hearing, Co-Lead Counsel will seek entry of a final order and judgment dismissing Hormel Foods and retaining jurisdiction for implementation and enforcement of the settlement agreement.

## II. Background and Settlement Terms.

This case represents the consolidation of separately filed putative class actions alleging that Defendants engaged in a conspiracy to artificially constrict the supply of pork[3] products

---

[1] As used herein, "CIIPPs" shall mean the current named class representatives in the CIIPP action: Sandee's Bakery; Francis T. Enterprises d/b/a Erbert & Gerbert's; Joe Lopez, d/b/a Joe's Steak and Leaf; Longhorn's Steakhouse; The Grady Corporation; Mcmjoynt LLC d/b/a The Breakfast Joynt; Edley's Restaurant Group, LLC; Basil Mt. Pleasant, LLC; Basil Charlotte, Inc.; Farah's Courtyard Deli, Inc.; and Tri-Ten LLC.

[2] The CIIPPs previously stipulated to—and the Court then ordered—the dismissal of Hormel Foods, LLC without prejudice. (Dkts. 622 & 640).

1

in the domestic market of the United States. The CIIPPs allege that the Defendants[4] conspired to constrain the supply, and fix the price, of pork from at least 2009 through the commencement of this action. (*See* CIIPP Fourth Consolidated and Amended Complaint (Dkt. 808)). The CIIPPs allege that Defendants, through their co-conspirator, Agri Stats, exchanged detailed, competitively sensitive, and closely guarded non-public information about price, capacity, sales volume, and demand. (*Id.* ¶ 2). The CIIPPs allege that Agri Stats provided highly sensitive "benchmarking" reports to most pork integrators, thereby allowing competitors to compare their profits or performance against that of other companies. (*Id.* ¶ 3). The effect of this anti-competitive exchange of non-public information allegedly allowed pork integrators to control the supply and price of pork. (*Id.*) The named CIIPPs allege that

---

[3] For this Settlement, "Pork" means porcine or swine products processed, produced or sold by Hormel Foods, or by any of the Defendants or their co-conspirators, including but not limited to: primals (including but not limited to loins, shoulders, picnics, butts, ribs, bellies, hams, or legs), trim or sub-primal products (including but not limited to backloins, tenderloins, backribs, boneless loins, boneless sirloins, riblets, chefs prime, prime ribs, brisket, skirt, cushion, ground meats, sirloin tip roast, or hocks), further processed and value added porcine products (including but not limited to bacon, sausage, lunch meats, further processed ham, or jerky products), offal or variety products (including but not limited to hearts, tongues, livers, head products, spleens, kidneys, feet, stomach, bladder, uterus, snoot, ears, tail, brisket bone, intestines, jowls, neck bones or other bones, skin, lungs, glands, hair, or pet food ingredients), rendered product and byproducts (including but not limited to lard, grease, meat meal, bone meal, blood meal, or blood plasma), casings (including but not limited to mucosa), and carcasses. (*See* Settlement Agreement ¶ 1o, attached as Exhibit A to the Declaration of Shawn Raiter).

[4] Defendants include: Smithfield Foods, Inc., JBS USA Food Company, Clemens Food Group, LLC, The Clemens Family Corporation, Hormel Foods Corporation, Hormel Foods, LLC, Seaboard Foods LLC, Seaboard Corporation, Triumph Foods, LLC, Tyson Foods, Inc., Tyson Prepared Foods, Inc., Tyson Fresh Meats, Inc., and Agri Stats, Inc. (*See* Settlement Agreement ¶ 1h).

they and the putative class members paid artificially inflated prices for pork during the Class Period.[5] (*Id.* ¶ 7).

On October 15, 2018, the Court appointed Larson King, LLP and Cuneo Gilbert & LaDuca as Interim Co-Lead Class Counsel for the CIIPPs. (Dkt. 150). The Court granted Defendants' initial motions to dismiss Plaintiffs' complaints, with leave to amend, in August 2019. (Dkt. 360). On October 16, 2020, the Court denied Defendants' motions to dismiss the CIIPPs Third Consolidated Amended Complaint, except as to certain state-law claims. (Dkts. 519, 520). The CIIPPs filed their Fourth Consolidated Amended Complaint on June 15, 2021. (Dkt. 808). On March 29, 2023, the Court certified CIIPP classes, and appointed the same two firms as Co-Lead Class Counsel. (Dkt. 1887).

Unlike many civil antirust actions, these cases were brought without a formal antitrust investigation by the United States Department of Justice and without the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. Since filing the first Complaint, the CIIPPs—as well as other Plaintiff classes and certain "Direct Action Plaintiffs"—have continued their investigation and development of their case.

During the ongoing prosecution of this case, Co-Lead Counsel negotiated the proposed settlement with Hormel Foods. This is the third settlement the CIIPPs have negotiated. Coupled with the CIIPPs' earlier settlements with the JBS and Smithfield Defendants, this settlement would bring the total monetary relief to more than $57 million. (*See* Dkts. 1007 & 1548). This settlement with Hormel Foods has come after much investigation and substantial adversarial litigation with Defendants in this MDL. The CIIPPs'

---

[5] "Class Period" means June 28, 2014 to June 30, 2018 (*See* Settlement Agreement ¶ 1d).

3

counsel was well-informed, and the Settlement Agreement with Hormel Foods arose from arm's-length and good-faith negotiations. The Settlement Agreement defines the "Certified Classes" has having "definitions consistent with the litigation classes certified by the Court on March 29, 2023 (Dkt. No. 1887)." Those classes are defined as:

> **Injunctive Class:** All entities that indirectly purchased uncooked pork bacon, or one or more of the following types of raw pork, whether fresh or frozen: loins, shoulder, ribs, hams, or pork chops from defendants or co-conspirators for their own use in commercial food preparation in the United States from June 28, 2014 to June 30, 2018. For this lawsuit, pork excludes any product that is marketed as organic and/or no antibiotics ever and any product other than bacon that is marinated, seasoned, flavored, or breaded, but it includes uncooked and cooked ham water added products.
>
> **Damages Class**: All entities that indirectly purchased uncooked pork bacon, or one or more of the following types of raw pork, whether fresh or frozen: loins, shoulder, ribs, hams, or pork chops from defendants or co-conspirators for their own use in commercial food preparation in the Repealer Jurisdictions[6] from June 28, 2014 to June 30, 2018. For this lawsuit, pork excludes any product that is marketed as organic and/or no antibiotics ever and any product other than bacon that is marinated, seasoned, flavored, or breaded, but it includes uncooked and cooked ham water added products.[7]

---

[6] "Repealer Jurisdictions" are states that have "repealed" the Supreme Court's holding in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and provide standing to indirect purchasers. Commercial and Institutional Indirect Purchaser Plaintiffs assert damages claims in: Arkansas, Arizona, California, District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. The class period for Kansas, Massachusetts, Mississippi, South Carolina, and Tennessee class members begins June 28, 2015.

[7] Excluded from the classes are: Natural persons who purchased pork for their personal use and not for commercial food preparation (End-User Consumers); purchases of pork directly from Defendants; purchases of pork for resale in unaltered form; purchases of pork from an intermediary who has further processed the pork; the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; any federal, state governmental entities, any judicial officer presiding over this action and the members of

(*See* Settlement Agreement ¶ 5).

**Settlement Fund:** Hormel Foods will pay $2,429,000.00 (two million four hundred twenty-nine thousand United States dollars) to the CIIPPs by paying, or causing to be paid, such sum into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Certified Classes. (*See* Settlement Agreement ¶ 1t). From the Settlement Fund, and subject to Court approval, Hormel Foods shall not object to Co-Lead Counsel withdrawing up to $150,000.00 to pay the costs for notice and for Preliminary and Final Approval of the Settlement Agreement. (*Id.* ¶ 6b). Those notice costs up to $150,000.00 are nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court. (*Id.* ¶¶ 6b; 20(e)). Co-Lead Counsel may apply to the Court for a fee award, reimbursement of incurred or anticipated expenses, and service awards to the representative CIIPPs to be paid from the proceeds of the Settlement Fund. (*Id.* ¶ 13).

**Other Terms:** In the Settlement Agreement, Hormel Foods agrees that it will assist with the authentication of Hormel Foods documents that CIIPPs may use at trial. (*See* Settlement Agreement ¶ 3c). Hormel Foods also agrees that it will continue to comply with federal antitrust laws. (*Id.* ¶ 10).

**Released Claims:** In consideration for the $2.429 million payment and other terms described above, the CIIPPs agree, upon Final Judgment, to release Hormel Foods from:

> from any and all claims, demands, actions, suits, and causes of action, whether statutory, administrative, or common-law, whether at law or in equity, whether seeking injunctive relief or money damages, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Classes has

---

his/her immediate family and judicial staff, any juror assigned to this action; and any coconspirator identified in this action.

objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, that exist as of the date of the order granting Preliminary Approval, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the indirect purchase of Pork produced, processed or sold by Hormel Foods or any of the Defendants or their co-conspirators, and purchased indirectly by the Releasing Parties (the "Released Claims"). Without limitation, Released Claims include (a) claims arising out of purchases made at any time before, during or after the Class Period up until the date of the Order granting Preliminary Approval, and (b) claims against the Released Parties arising out of Hormel Foods' ownership or partial ownership of other entities in which Hormel Foods has or has had an interest.

(*See* Settlement Agreement, ¶ 14). The Released Claims, however, do not include:

(i) claims asserted against any Defendant or co-conspirator other than the Hormel Foods Released Parties; (ii) any claims made by direct purchasers of Pork as to such direct purchases; (iii) any claims made by consumers that are indirect purchasers of Pork for their personal use; (iv) any claims made by any state, state agency, or instrumentality or political subdivision of a state as to government purchases of Pork; (v) claims wholly unrelated to the allegations in the Actions involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim relating to Pork; (vi) claims concerning any product other than Pork; (vii) claims under laws other than those of the United States relating to purchases of Pork made outside of the United States; and (viii) damage claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State.

(*Id.*)

**Termination:** The Settlement provides either party the right to terminate the Settlement Agreement upon the occurrence of specified conditions, including if the Court does not approve the Settlement Agreement, declines to enter a Preliminary Approval Order, does not enter an Order of Final Approval and a Final Judgment, if the Court approves the

6

Settlement Agreement in a materially modified form, or if the Court *does* enter a Final Approval Order and Final Judgment but such Order and Judgment is reversed on appeal. (*See* Settlement Agreement, ¶ 19).

The Settlement Agreement also requires Hormel Foods—withing ten days of filing the Settlement Agreement with the Court in connection with the motion for preliminary approval—to submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. (*See* Settlement Agreement, ¶ 23).

### III.  Preliminary Approval Should be Granted.

When parties propose to settle a class action, the Court must review the settlement to ensure that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A district court has broad discretion in evaluating a class-action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606–07 (8th Cir. 1988). Review of a proposed class-action settlement typically proceeds in two stages. *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013). At the preliminary approval stage, the court determines whether the settlement is within the range of possible approval and whether class members should be notified of the terms of the proposed settlement.[8] *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993). The purpose of a court's

---

[8] In making a final determination of settlement approval, the district court ultimately is required to consider four factors: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005). But, at the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383 (quotation omitted).

7

preliminary evaluation of proposed settlements is simply to determine whether it is within the range of reasonableness and, thus, whether notice to the class of the terms and conditions of the settlement, and scheduling a formal fairness hearing, are worthwhile. 4 NEWBERG ON CLASS ACTIONS § 11.26.

A proposed settlement agreement should be preliminary approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." Manual for Complex Litigation (Third) § 30.41 at 237 (1995). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White*, 822 F. Supp. 2d at 1416. The proposed settlement between the CIIPPs and Hormel Foods should be granted preliminary approval because the settlement is well within the range of reasonableness and possible approval.

### A. The Proposed Settlement Agreement is the Result of Arm's-Length Negotiations.

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) (collecting cases); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The preliminary determination establishes a presumption of fairness when a settlement "has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 08-MDL-1958 (ADM/AJB), 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013). The court gives "great weight" to and may rely on the judgment of experienced counsel in its evaluation of a proposed settlement. *Id.*

8

At the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin*, 295 F.R.D. at 383 (quotation omitted). The Settlement here is within the range of possible approval because there are no glaring substantive or procedural deficiencies. The Settlement Agreement is the product of extensive litigation and vigorous arm's-length negotiations. The CIIPPs have developed and assessed both their claims and Hormel Foods' defenses. The CIIPPs and Hormel Foods are represented by experienced counsel, and the Settlement was reached after years of litigation.

### B. The Settlement Agreement Achieves an Excellent Result for the Certified Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Motions have been vigorously contested, and the discovery process has been and will be complex.[9]

---

[9] Because Interim Co-Lead Class Counsel may have to litigate against other defendants through trial and appeal, their duties preclude a more detailed discussion of the potential litigation risks.

Hormel Foods has asserted various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly regarding damages, making the outcome of such trial uncertain for both parties. *See, e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, considering the time value of

money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Classes than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, a settlement providing the substantial benefits afforded here represents an excellent result for the members of the Certified Classes. Hormel Foods' $2.429 million payment provides compensation that will be available years earlier than if litigation against Hormel Foods continued through trial and appeal. Settlements of this type create value beyond their direct pecuniary benefit to the class. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, *16 (S.D. Tex. Jan. 27, 1981).

Hormel will authenticate records for trial and will provide CIIPPs the same access to potential trial witnesses as provided to any non-settling defendants. (Settlement Agreement ¶ 11). This is valuable and provides a class-wide benefit. *See, e.g., In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the

form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093, at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.")

The Settlement Agreement does not alter joint and several liability of any non-settling Defendant or future Defendants for the full damages caused by the alleged conspiracies. (*See* Settlement Agreement ¶ 14). In this regard, the Settlement Agreement is similar to the settlements in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from other current or future defendants, less the actual amount of the initial settlement. 1981 WL 2093, at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability).

Against this backdrop, the Settlement Agreement provides significant relief to CIIPP class members, far greater than the threshold "adequate" relief required by Fed. R. Civ. P. 23(e)(2)(C). The Settlement Agreement requires Hormel Foods to pay the settlement funds into an escrow account within 14 business days of the Court's preliminary approval. (*See* Settlement Agreement ¶ 10). The Settlement Fund will be used to compensate the eligible members of the Certified Classes for damages suffered and expenses incurred, and potentially for the benefit of pursuing claims against non-settling defendants. In addition to the monetary

relief it offers, the Settlement Agreement provides for Hormel Foods' assistance to authenticate documents that the CIIPPs may use at trial and an agreement that it will continue to comply with antitrust laws.

### IV. Because Class Certification Was Previously Granted, The Court Does Not Need to Certify Settlement Classes.

On March 29, 2023, the Court granted the CIIPPs' motion for class certification and certified a damages class and an injunctive relief class. (Dkt. 1887). "If the court has certified a class prior to settlement, it does not need to recertify it for settlement purposes." 4 NEWBERG ON CLASS ACTIONS, § 13:18 (5th ed. 2011). In cases certified before settlement—as happened here—the Advisory Committee's notes state that the only class certification issues at the settlement stage concern "whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1) Advisory Committee Note to 2018 amendment.

The Settlement Agreement uses the same Certified Classes the Court approved in its March 29, 2023 order. The parties do not request any changes to the Certified Classes, so the Court need not recertify them for settlement purposes.

### V. The Court Should Allow CIIPPs to Provide a Proposed Notice Plan Later.

After receiving preliminary approval of a settlement agreement, class members must be notified of the settlement. Fed. R. Civ. P. 23(3)(1)(B). For a class proposed under Rule 23(b)(3), whether litigated or by settlement, the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any

member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The notice of a class action settlement need only satisfy the broad "reasonableness" standards imposed by due process. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). A notice is adequate if "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). To satisfy due process, the notice must reflect a desire to inform. *Mullane*, 339 U.S. at 315. The notice plan should take reasonable steps to update addresses before mailing and provide for re-mailing of notices to better addresses when returned as undeliverable. *Jones v. Flowers*, 547 U.S. 220, 226–27 (2006). The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810, at *8. Furthermore, in addition to United States mail, notice may be by electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

Co-Lead Class Counsel request that the Court allow them to defer seeking Court approval for a notice plan until a later time.[10] The CIIPPs will submit a motion for leave to disseminate notice, and that motion will include a proposed form, method, and date for

---

[10] Previously, the Court granted the CIIPPs' request to provide notice of the settlement with the JBS defendants after preliminary approval. (Dkt. 756). After the Court granted preliminary approval, (Dkt. 767), the CIIPPs moved for approval of the manner and form of class notice (Dkt. 802), which the Court granted on June 23, 2021. (Dkt. 812).

dissemination of notice. The CIIPPs expect to file that motion shortly after the present motion is filed.

**VI. Conclusion.**

The CIIPPs respectfully request that the Court preliminarily approve the Settlement Agreement with Hormel Foods. In short order, the CIIPPs will submit a separate motion seeking approval of a proposed notice plan and setting a schedule for the dissemination of notice and final fairness hearing for the Settlement Agreement.

Dated: April 5, 2024

**Larson • King, LLP**

By ___*s/ Shawn M. Raiter*___
Shawn M. Raiter (#240424)
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500
sraiter@larsonking.com

Michael Flannery (admitted *pro hac vice*)
**Cuneo Gilbert & LaDuca, LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
(202) 789-3960
mflannery@cuneolaw.com

**Co-Lead Counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs**