# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Consumer Indirect Purchaser Actions | Civil No. 0:18-cv-1776-JRT-JFD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT BETWEEN CONSUMER INDIRECT PURCHASER PLAINTIFFS AND HORMEL FOODS CORPORATION** |

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. SUMMARY OF LITIGATION ............................................................................. 1

III. SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS ..................... 3

IV. THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL .......................................................................................................... 4

    A. The Settlement was reached in arm's-length negotiations between experienced and capable counsel. ............................................................... 5

    B. Consumer IPPs have had adequate opportunity to assess the merits of their claims and Hormel Foods' defenses. ............................................................. 6

    C. The Settlement provides significant relief to the class ................................ 7

V. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS .. 8

    A. The Proposed Settlement Class Satisfies Rule 23(a). ................................... 9

        1. Numerosity ....................................................................................... 9

        2. Commonality ................................................................................. 10

        3. Typicality ....................................................................................... 10

        4. Adequacy ....................................................................................... 11

    B. The Proposed Settlement Class Satisfies Rule 23(b)(3). ............................ 12

VI. REQUEST TO DEFER NOTICE ........................................................................ 14

VII. CONCLUSION .................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alpern v. UtiliCorp United, Inc.*,
 84 F.3d 1525 (8th Cir. 1996) ............................................................................. 12

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ........................................................................................... 10

*Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*,
 984 F.3d 595 (8th Cir. 2020) ............................................................................. 14

*DeBoer v. Mellon Mortg. Co.*,
 64 F.3d 1171 (8th Cir. 1995) ........................................................................ 8, 12

*In re Emp. Benefit Plans Sec. Litig.*,
 1993 WL 330595 (D. Minn. June 2, 1993) ......................................................... 7

*Grier v. Chase Manhattan Auto Fin. Co.*,
 2000 WL175126 (E.D. Pa. Feb. 16, 2000) .......................................................... 7

*Grunin v. Int'l House of Pancakes*,
 513 F.2d 114 (8th Cir. 1975)) .............................................................................. 5

*Huyer v. Wells Fargo & Co.*,
 295 F.R.D. 332 (2013) ....................................................................................... 12

*In re Monosodium Glutamate Antitrust Litig.*,
 205 F.R.D. 229 (2001) ....................................................................................... 10

*Paxton v. Union Nat. Bank*,
 688 F.2d 552 (8th Cir. 1982) ............................................................................. 13

*Petrovic v. Amoco Oil Co.*,
 200 F.3d 1140 (8th Cir. 1999) ....................................................................... 8, 15

*Richter v. Bowen*,
 669 F. Supp. 275 (N.D. Iowa 1987) .................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ........................................................................................... 11

*White v. Nat'l Football League*,
    822 F. Supp. 1389 (D. Minn.1993) ............................................................................... 6, 7

*White v. Nat'l Football League*,
    836 F. Supp. 1458 (D. Minn. 1993) ................................................................................. 7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    2013 WL 716088 (D. Minn. Feb. 27, 2013) .................................................................... 7

**FEDERAL STATUTES**

Sherman Act § 1 ............................................................................................................... 2, 15

**FEDERAL RULES**

Fed. R. Civ. P. 23 ............................................................................................................*passim*

## I. INTRODUCTION

Consumer Indirect Purchaser Plaintiffs ("Consumer IPPs") move the Court for preliminary approval of their third settlement reached in this case, with Hormel Foods Corporation ("Hormel Foods").[1] The Settlement provides $4,465,000 (four million, four hundred and sixty-five thousand U.S. dollars) in monetary relief to the consumer indirect purchaser class. This brings recovery in the consumer class to $99.465 million – truly meaningful recovery on behalf of the Consumer IPP class. This Settlement is in addition to the $20 million settlement reached between the Consumer IPPs and Defendants JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company (collectively, "JBS"), as well as the $75 million settlement reached between Consumer IPPs and Defendant Smithfield Foods, Inc. ("Smithfield"). This settlement is the result of arm's-length negotiations and provides substantial monetary relief to the Consumer IPP class. The consumer IPPs request that this Court grant preliminary approval of the settlement and certify the proposed settlement class.

## II. SUMMARY OF LITIGATION

Consumer IPPs – the first to file a complaint against the pork industry – have been litigating this case diligently for more than five years. This Court is familiar with the

---

[1] Consumer IPPs previously stipulated to—and the Court then ordered—the dismissal of Hormel Foods, LLC without prejudice. Stipulation for Dismissal, ECF No. 622 (filed Jan. 7, 2021); Order Granting Stipulation for Dismissal, ECF No. 640 (filed Jan. 15, 2021).

allegations, having certified the consumer indirect purchaser Class on March 29, 2023.[2] The Consumer IPPs allege that the pork processors stabilized the price and supply of pork during the class period through the use of Agri Stats reports, the culling of herds, and the use of exports. Scarlett Decl., ¶ 3.[3]

From the beginning of the litigation, Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Gustafson Gluek PLLC ("Gustafson Gluek") have acted as Co-lead Counsel on behalf of the consumer IPP Class.[4] As Co-lead Counsel, these two firms have spent thousands of hours pursuing the claims of the Class. Plaintiffs have taken over 90 depositions of defendants' employees and their co-conspirators – many of which were led by the attorneys at Hagens Berman and Gustafson Gluek. Plaintiffs have taken the depositions of ten non-parties, many of which were also led by the Consumer IPP team. Defendants produced nearly 4 million documents that have been reviewed, catalogued, and distilled by attorneys representing the three classes. And Consumer IPPs subpoenaed

---

[2] Mem. and Order, ECF No. 1887 (filed Mar. 29, 2023). The Non-Settled Defendants in the Consumer IPP case are: Agri Stats, Inc. ("Agri Stats"); Clemens Food Group, LLC, The Clemens Family Corporation, and Hatfield Quality Meats (together and separately, "Clemens"); Seaboard Foods LLC ("Seaboard"); Triumph Foods, LLC ("Triumph"); and Tyson Foods, Inc., Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. (together and separately, "Tyson"). The consumer IPP class previously settled with JBS for $20 million and with Smithfield for $75 million.

[3] "Scarlett Decl." refers to the Declaration of Shana E. Scarlett in Support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement Between Consumer Indirect Purchaser Plaintiffs and Hormel Foods Corporation, filed concurrently herewith.

[4] *See* Order Granting Hagens Berman Sobol Shapiro LLP and Gustafson Gluek PLLC's Mot. for Appointment as Interim Co-lead Counsel for Proposed Consumer Indirect Purchaser Class, ECF No. 141 (filed Oct. 15, 2018).

79 non-parties for data and information relating to their claims and data to perform an analysis of the pass-through of overcharges to the consumer Class. Scarlett Decl., ¶ 4.

Unlike many other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice (DOJ) or the assistance of a leniency applicant under the DOJ's Corporate Leniency Program. Rather, the alleged conspiracy was identified by Consumer IPPs through the use of investigators and economists, leading to the first complaint filed – the Consumer IPP complaint.

### III.  SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

The Settlement between Hormel Foods and the Consumer IPPs is the product of confidential, protracted, intense arm's-length negotiations and has resulted in significant monetary relief for the class. The Settlement Agreement was signed by both parties on March 29, 2024. *Id.*, Ex. A.

The Settlement Agreement provides that Hormel Foods will pay $4,465,000 (four million, four hundred and sixty-five thousand U.S. dollars) into a settlement fund that will be used to compensate the Consumer IPP Class and cover litigation fees and expenses, including the cost of notifying Class Members and administering the settlement. Scarlett Decl., Ex. A at ¶¶ 6(b-c), 9-10. Lead counsel believe this sum is fair and reasonable in light of Hormel Foods' market share of class products. Hormel Foods further agrees to the following:

      a)    If Hormel Foods receives a request for testimony at trial from any non-settling defendant for any trial involving the Consumer IPPs, through a

subpoena or through any informal means, it will provide notice to the Consumer IPPs involved in the trial within two (2) business days. Hormel Foods will provide the Consumer IPPs the same access to potential trial witnesses as provided to any non-settling defendant. *Id.* at ¶ 3(b).

      b)    Hormel Foods agrees that it will work with the Consumer IPPs in good faith to provide a declaration from a records custodian addressing the factual predicates for authentication of documents that the Consumer IPPs include in an exhibit list for trial. *Id.* at ¶ 3(c).

The Settlement Agreement sets forth the full terms of the release. By way of summary, upon this Court's decision on final approval of the settlement, Consumer IPPs agree to release, acquit, and forever discharge Hormel Foods from any and all claims seeking relief that Consumer IPPs have or ever may have relating in any way to their indirect purchase of pork produced, processed, or sold by Hormel Foods or any of the defendants or their co-conspirators. Scarlett Decl., Ex. A at ¶ 14.

## IV.   THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."[5] However, Courts must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

---

[5] *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn.1993).

At the preliminary approval stage, courts determine whether settlements are within the range of possible approval and whether Class Members should be notified of the terms of the proposed settlement.[6] Generally, before directing notice to Class Members, courts preliminarily evaluate proposed class action settlements pursuant to Rule 23(e).[7] In other words, a court must consider whether it "will likely be able to" approve the settlement as fair, reasonable, and adequate.[8]

As set forth below, Consumer IPPs' agreement with Hormel Foods is fair, reasonable, and adequate. Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery."[9]

### A. The Settlement was reached in arm's-length negotiations between experienced and capable counsel.

Courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an

---

[6] *White,* 822 F. Supp. at 1399; 2 Newberg on Class Actions, § 11.24 (3d ed. 1992) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'").

[7] *See* Manual for Complex Litigation, (Fourth) § 21.632 (2004).

[8] Fed. R. Civ. P. 23(e)(1)(B)(i); *see* Fed. R. Civ. P. 23(e)(2).

[9] *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-180, 2000 WL175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993).

appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement.[10]

Both sets of counsel – both those representing the Consumer IPPs and those representing Hormel Foods – are experienced in antitrust matters. The judgment of the litigants and their counsel concerning the adequacy of the Settlement should therefore be considered.[11]

**B.     Consumer IPPs have had adequate opportunity to assess the merits of their claims and Hormel Foods' defenses.**

There can be no question Consumer IPPs have had a chance to adequately assess the merits of their claims. The investigation into this alleged conspiracy began months before the filing of the complaint, as Consumer IPP counsel engaged expert economists and case investigators. Attorneys combed public statements by defendants, press releases, transcripts of investor calls, and filings with the Securities and Exchange Commission.

After the motions to dismiss were mostly denied in October 2020, discovery began in earnest. Plaintiffs have deposed over 90 defense witnesses and 10 non-party witnesses, and many of these depositions were taken by counsel for the Consumer IPP Class.

---

[10] *See, e.g., In re Emp. Benefit Plans Sec. Litig.*, Civ. No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (noting that "intensive and contentious negotiations likely result in meritorious settlements"); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters'") (citation omitted).

[11] *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

Defendants produced nearly 4 million pages of documents. Scarlett Decl., ¶ 4. And Consumer IPPs subpoenaed 79 non-parties for data and related information to enable an analysis of the pass-through of overcharges to the consumer class. *Id.* In his declaration in support of the Consumer IPP motion for class certification, Dr. Singer relied upon approximately 856 gigabytes of raw data (6 gigabytes from Agri Stats, 164 gigabytes from other defendants, and 686 gigabytes from non-parties for regressions measuring pass-through). *Id.* To put this vast amount of data in context, it would take over 1,250 standard CD-ROMs, or over 590,000 standard 3.5-inch floppy disks, to store this data. The Court then certified the Consumer IPP Class in March 2023.[12] The work behind this litigation has been significant. Scarlett Decl., ¶¶ 3-4.

Access to this volume of information has given the Consumer IPPs sufficient understanding of the strengths and weaknesses of their claims and Hormel Foods' defenses. The Settlement should therefore be accorded a presumption of fairness.

### C.    The Settlement provides significant relief to the class.

The Settlement provides "adequate" relief for the class, in accordance with Fed. R. Civ. P. 23(e)(2)(C). Hormel Foods is estimated to have an adjusted market share of 8% of the processing market.[13] Scarlett Decl., ¶ 7. The $4.465 million Settlement with Hormel

---

[12] Mem. and Order, ECF No. 1887 (filed Mar. 29, 2023).

[13] The market share number is adjusted for the purposes of this motion to demonstrate the value of these Settlements to the Class if every defendant settled on similar terms. The defendants have approximately 80 percent market share, and so this calculation adjusts defendants' market share to 100 percent. This discrepancy is because the Court dismissed Indiana Packers on the motions to dismiss. But Indiana Packers is still alleged to be a co-conspirator, having participated in Agri Stats, and thus its approximate 4%

Foods represents a $0.5 million valuation for each market share point. This is an outstanding result.

The proposed Settlement also "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Funds will be awarded based on the purchase of qualifying class products. Although Consumer IPPs are not requesting distribution of funds at this time, they propose that Class Members be allowed to submit claims through a simplified and open online claims process. The funds will then be distributed through an electronic method, *pro rata*, to each Class Member based on qualifying purchases.

## V.     THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

At the preliminary approval stage, the Court must also determine whether to certify the proposed Settlement Class for settlement purposes under Rule 23.[14] Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b).

This settlement proposes essentially the same Settlement Class that this Court certified for litigation purposes on March 29, 2023,[15] defined as:

> All persons and entities who indirectly purchased raw pork bacon, or one or more of the following types of raw pork,

---

market share should properly be included as within the scope of commerce impacted by this conspiracy. Decl. of Hal J. Singer, Ph.D. in Supp. of Consumer Indirect Purchaser Pls.' Mot. for Class Certification, ¶ 70 (Figure 9 showing Agri Stats 2014 U.S. Domestic Market Share), ECF No. 1347 (filed under seal May 2, 2022).

[14] *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

[15] The only difference between this proposed Settlement Class definition and the certified Litigation Class definition is that the proposed Settlement Class definition omits a comma included the Litigation Class definition.

whether fresh or frozen: bellies, loins, shoulder, ribs or pork chops from defendants or co-conspirators for personal consumption in the Repealer Jurisdictions[16] from June 28, 2014 to June 30, 2018. For this lawsuit, pork excludes any product that is marketed as organic, no-antibiotics ever (NAE) and any product other than bacon that is marinated, seasoned, flavored, or breaded.[17]

ECF No. 1887 at 7-8.

As explained below (and for the same reasons as a nearly identical Litigation Class was certified in this case), this Settlement Class satisfies all the requirements of Rule 23.

## A.    The Proposed Settlement Class Satisfies Rule 23(a).

### 1.    Numerosity

The numerosity requirement of Rule 23(a)(1) is satisfied where joinder of all putative class members is "impracticable." Generally, a class of forty or more plaintiffs is sufficient to satisfy the numerosity requirement.[18] Certainly here, where the proposed

---

[16] The Consumer IPPs' "Repealer Jurisdictions" are Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Carolina, Tennessee, Utah, and West Virginia. The class period for Kansas, Tennessee, and South Carolina class members begins June 28, 2015.

[17] Excluded from the Class are Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action; and any coconspirator identified in this action.

[18] *Richter v. Bowen*, 669 F. Supp. 275, 281 n.4 (N.D. Iowa 1987) (citing 3B J. Moore, Moore's Fed. Procedure 23.05[1]).

class spans over a decade, and the product (pork) is nearly ubiquitous in American households, the low threshold of numerosity is satisfied. *See* ECF No. 1887 at 32 (noting that "[t]he Rule 23(a) numerosity requirement" for the nearly identical Consumer IPP Litigation Class "is plainly satisfied").

### 2. Commonality

There are also "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists where plaintiffs' claims depend on a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Consumer IPPs are relying on several common contentions, including: (1) defendants conspired to decrease pork output and increase pork prices; and (2) defendants' conduct caused overcharges for pork consumers. *See* ECF No. 1887 at 33 ("Proof of and defenses to the Defendants' alleged conspiracy will be common to all class members, as is typical of all nationwide horizontal price-fixing conspiracy class actions."); *id*. at 36 ("Because the entire United States and all pork products constitute the relevant geographic and product markets for the Consumer IPPs' rule of reason claim, they have satisfied the commonality requirement here.").

### 3. Typicality

Under Rule 23(a), typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). Typicality is closely related to commonality and "a finding of one generally

compels a finding of the other."[19] Typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff."[20] "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory."[21]

Here, typicality is satisfied because Consumer IPPs' claims are based on the same antitrust conspiracy. Each class member has allegedly suffered the same harm through the purchase of pork in grocery stores that was subject to an overcharge. The Plaintiffs allege that no individual class member could have known of the conspiracy. Each individual class representative has the same interests in pursuing these claims on behalf of the absent class. *See* ECF No. 1887 at 37 (noting that Consumer IPP class representatives "purchased pork during the class period, represent others in the same position, and the Defendants' alleged conspiracy impacted the prices those representatives paid."). Their claims are typical.

### 4.  Adequacy

The proposed plaintiffs are adequate representatives of the proposed class. Fed. R. Civ. P. 23(a)(4). Courts ask whether "(1) the class representatives have common interests

---

[19] *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 339 (2013).

[20] *DeBoer*, 64 F.3d at 1174.

[21] *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."[22]

Here, the named plaintiffs have no material conflict with other class members. Each purchased pork from grocery stores, unaware of the existence of the defendants' alleged agreement to fix, raise, maintain, and stabilize pork prices, and suppress pork output. No one individual class member could avoid the claimed overcharges. Each named plaintiff is aligned with the class in establishing the defendants' liability and maximizing class-wide damages. *See* ECF No. 1887 at 41 (finding the Class Plaintiffs' representatives adequate).

Co-lead class counsel is also adequate. As the Court has already recognized in appointing Hagens Berman and Gustafson Gluek, each of these firms and their attorneys are qualified and experienced in representing antitrust plaintiffs. Co-lead counsel have represented victims of antitrust conspiracies across the country and will continue to vigorously represent the Class here.

The named plaintiffs have fulfilled their duties as class representatives by actively participating in the litigation. Scarlett Decl., ¶ 8.

### B.   The Proposed Settlement Class Satisfies Rule 23(b)(3).

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and

---

[22] *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied here.

First, common questions of law or fact predominate over individual questions. "Slight variation in *actual damages* does not defeat predominance if there are common legal questions and common facts."[23] Here, plaintiffs allege that a series of common questions lies at the heart of all plaintiffs' claims, including: whether the defendants conspired to lower pork output and raise prices; whether the defendants' information exchange was anticompetitive; whether the defendants' conspiracy caused market-wide supra-competitive pork prices; and whether higher pork prices were passed on to pork consumers. *See* ECF No. 1887 at 60 (concluding that "Class Plaintiffs have successfully shown that damages can be established with classwide evidence" and that "Rule 23(b)(3)'s predominance requirement is satisfied").

Second, a class action is the superior mechanism for trying plaintiffs' claims. Rule 23 instructs that the matters pertinent to this inquiry include: (a) class members' interests in individually controlling the prosecution of separate actions; (b) whether other litigation exists concerning this controversy; (c) the desirability of concentrating the litigation in this forum; and (d) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). In this case, the first three factors weigh heavily in favor of class certification: class members have little economic incentive to sue individually based on the amount of

---

[23] *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 602 (8th Cir. 2020) (emphasis in original).

potential recovery involved, and no other known litigation exists regarding these claims. *See* ECF No. 1887 at 61 (stating that "the superiority requirement is readily satisfied" in this case).

The Court need not consider the final factor (whether a trial would be manageable) when assessing a potential settlement, as a settlement obviates the need for a trial. Finally, the proposed Settlement Class is ascertainable. Here, a class member may self-identify simply by reviewing the class definition.

## VI. REQUEST TO DEFER NOTICE

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all Class Members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Plaintiffs request that the Court agree to defer formal notice of the Settlement Agreement to the Class because each provision of notice to a class of this size costs hundreds of thousands of dollars. Accordingly, providing separate notice to the Class each time that Plaintiffs enter into a settlement with any of the non-settling defendants will lead to inefficiencies and reduce the amount of funds available for distribution to the Class.

It will likely be in the best interests of the Settlement Class to combine the notice of the Hormel Foods settlement with notice(s) of future settlement(s) with other defendants, should additional settlements be reached in the near future. Proceeding in this

way creates attendant efficiencies and cost savings for the Class, resulting in more money from the settlements making it into the pockets of Class members.

If the Court approves Plaintiffs' request to defer notice, Plaintiffs will propose a detailed notice plan in a subsequent motion that will be filed at a point reasonably calculated to maximize the funds available for distribution to the Class. The proposed notice plan will, pursuant to Rule 23(c)(2)(B), provide the "best notice practicable" to all Class members who will be bound by the proposed Settlement Agreement.

## VII. CONCLUSION

For these reasons, Consumer IPPs respectfully request that the Court preliminary approve the Settlement with Hormel Foods and certify the Settlement Class.

DATED: May 6, 2024

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Shana E. Scarlett*
    SHANA E. SCARLETT
Rio Pierce
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.om

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

- 15 -

Elaine T. Byszewski
Abigail D. Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave., Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
elaine@hbsslaw.com
abigailp@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Joshua J. Rissman (#391500)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com

*Counsel for Consumer Indirect Purchaser Plaintiffs*

- 16 -