# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Consumer Indirect Purchaser Actions | Civil No. 18-cv-01776 (JRT-JFD)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT BETWEEN CONSUMER INDIRECT PURCHASER PLAINTIFFS AND SEABOARD FOODS LLC** |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. SUMMARY OF LITIGATION ............................................................................ 1

III. SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS ...................... 3

IV. THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL ......................................................................................................... 5

    A. The Settlement was reached in arm's-length negotiations between experienced and capable counsel. ................................................................ 6

    B. Consumer IPPs have had adequate opportunity to assess the merits of their claims and Seaboard's defenses. ......................................................... 7

    C. The Settlement provides significant relief to the Class. .............................. 8

V. THE COURT HAS CERTIFIED A LITIGATION CLASS ................................... 9

VI. REQUEST TO DEFER NOTICE ......................................................................... 10

VII. CONCLUSION .................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*DeBoer v. Mellon Mortg. Co.*,
  64 F.3d 1171 (8th Cir. 1995) ............................................................................... 6

*In re Emp. Benefit Plans Sec. Litig.*,
  1993 WL 330595 (D. Minn. June 2, 1993) ........................................................ 6

*Grier v. Chase Manhattan Auto Fin. Co.*,
  2000 WL175126 (E.D. Pa. Feb. 16, 2000) ........................................................ 6

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ............................................................................... 6

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ............................................................................ 6

*White v. Nat'l Football League*,
  822 F.Supp. 1389 (D. Minn.1993) ...................................................................... 5

*White v. Nat'l Football League*,
  836 F. Supp. 1458 (D. Minn. 1993) .................................................................... 6

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
  2013 WL 716088 (D. Minn. Feb. 27, 2013) ....................................................... 6

### Other Authorities

2 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 11.24 (3d ed. 1992) ....................... 5

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.) ............................... 9

Fed. R. Civ. P. 23(e) ................................................................................................ 5, 8, 10

Fed. R. Civ. P. 23(c) ................................................................................................. 10, 11

Manual for Complex Litigation, (Fourth) § 21.632 (2004) ................................................ 5

## I. INTRODUCTION

Consumer Indirect Purchaser Plaintiffs ("Consumer IPPs") move the Court for preliminary approval of their fourth settlement reached in this case, with Defendant Seaboard Foods LLC ("Seaboard"). The Settlement provides $10,000,000 (ten million U.S. dollars) in monetary relief to the Consumer IPP Class. This brings recovery in the consumer class to $109.465 million—an excellent recovery on behalf of the Consumer IPP Class. This Settlement is in addition to the $4.465 million settlement reached between Consumer IPPs and Defendant Hormel Foods Corporation ("Hormel Foods"); the $20 million settlement reached between the Consumer IPPs and Defendants JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company (collectively, "JBS"); and the $75 million settlement reached between Consumer IPPs and Defendant Smithfield Foods, Inc. ("Smithfield"). This settlement is the result of arm's-length negotiations and provides substantial monetary relief to the Consumer IPP Class. The Consumer IPPs request that this Court grant preliminary approval of the settlement and certify the proposed settlement class.

## II. SUMMARY OF LITIGATION

The Consumer IPPs—the first to file a complaint against the pork industry—have been litigating this case diligently for more than five years. This Court is familiar with the allegations, having certified the Consumer IPP class on March 29, 2023.[1] The Consumer

---

[1] Mem. and Order, ECF No. 1887 (filed Mar. 29, 2023), corrected version at ECF No. 2225 (filed May 8, 2024). The Non-Settled Defendants in the Consumer IPP case are: Agri Stats, Inc. ("Agri Stats"); Clemens Food Group, LLC, The Clemens Family

IPPs allege that the pork processors stabilized the price and supply of pork during the class period through the use of Agri Stats reports, the culling of herds, and the use of exports. Scarlett Decl., ¶ 3.[2]

From the beginning of the litigation, Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Gustafson Gluek PLLC ("Gustafson Gluek") have acted as Co-Lead Counsel on behalf of the Consumer IPP Class.[3] As Co-Lead Counsel, these two firms have spent thousands of hours pursuing the claims of the Class. Plaintiffs have taken over 90 depositions of defendants' employees and their co-conspirators—many of which were led by the attorneys at Hagens Berman and Gustafson Gluek. Plaintiffs have taken the depositions of 10 non-parties, many of which were also led by the Consumer IPP team. Defendants produced nearly 4 million documents that have been reviewed, catalogued, and distilled by attorneys representing the three classes. And Consumer IPPs subpoenaed 79 non-parties for data and information relating to their claims and data to perform an analysis of the pass-through of overcharges to the Consumer Class. Scarlett Decl., ¶ 4.

---

Corporation, and Hatfield Quality Meats (together and separately, "Clemens"); Triumph Foods, LLC ("Triumph"); and Tyson Foods, Inc., Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. (together and separately, "Tyson").

[2] "Scarlett Decl." refers to the Declaration of Shana E. Scarlett in Support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement Between Consumer Indirect Purchaser Plaintiffs and Seaboard Foods LLC, filed concurrently herewith.

[3] *See* Order Granting Hagens Berman Sobol Shapiro LLP and Gustafson Gluek PLLC's Mot. for Appointment as Interim Co-lead Counsel for Proposed Consumer Indirect Purchaser Class, ECF No. 151 (filed Oct. 15, 2018).

Unlike many other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice ("DOJ") or the assistance of a leniency applicant under the DOJ's Corporate Leniency Program. Rather, the alleged conspiracy was identified by Consumer IPPs through the use of investigators and economists, leading to the first complaint filed—the Consumer IPP complaint.

### III.   SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

The Settlement between the Consumer IPPs and Seaboard is the product of confidential, protracted, intense arm's-length negotiations and has resulted in significant monetary relief for the class. The Settlement Agreement was signed by both parties on June 20, 2024. Scarlett Decl., Exhibit A.

The Settlement Agreement provides that Seaboard will pay $10,000,000 (ten million U.S. dollars) into a settlement fund that will be used to compensate the Consumer IPP Class and cover litigation fees and expenses, including the cost of notifying Class Members and administering the Settlement. Scarlett Decl., Exhibit A at ¶¶ 5(b–c), 9. Lead counsel believe this sum is fair and reasonable in light of Seaboard's market share of class products. Seaboard further agrees to the following:

    a)    Seaboard agrees to contemporaneously provide to Consumer IPPs (1) any discovery responses, documents, or information it provides to any other plaintiff in the *In re Pork Antitrust Litigation*, and (2) any discovery responses, documents, data, or information it provides to government entities making

- 3 -

substantially similar allegations regarding competition in the Pork industry. *Id.* at ¶ 10(a).

      b)    Seaboard agrees to use reasonable efforts to authenticate documents and/or things produced by it in the action where the facts indicate that the documents and/or things at issue are authentic, whether by declarations, affidavits, hearings, and/or trials as may be necessary. Seaboard agrees to use reasonable efforts to provide the facts necessary to establish that documents and/or things produced by it in the action are "business records," a present sense impression, an excited utterance, or a recorded recollection under the Federal Rules of Evidence where the facts indicate that the documents and/or things at issue satisfy the criteria for treatment as business records, present sense impressions, excited utterances or recorded recollections, whether by declarations, affidavits, hearings, and/or trials as may be necessary. *Id.* at ¶ 10(b).

      c)    Seaboard agrees to make available to testify live at a single Consumer IPP trial the following: (1) one then-current Seaboard employee who can provide testimony pursuant to Paragraph 10(b) of the Settlement Agreement regarding a specific set of documents, and (2) one then-current Seaboard employee who can serve as a fact witness on material fact issues on which that employee has personal knowledge to the extent those fact issues remain in dispute at the time of trial. *Id.* at ¶ 10(c).

The Settlement Agreement sets forth the full terms of the release. By way of summary, upon this Court's decision on final approval of the Settlement, Consumer IPPs

agree to release, acquit, and forever discharge Seaboard from any and all claims seeking relief that Consumer IPPs have or ever may have relating in any way to their indirect purchase of pork produced, processed, or sold by Seaboard or any of the defendants or their co-conspirators. Scarlett Decl., Exhibit A at ¶ 14.

## IV. THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."[4] However, Courts must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, courts determine whether settlements are within the range of possible approval and whether class members should be notified of the terms of the proposed settlement.[5] Generally, before directing notice to class members, courts preliminarily evaluate proposed class action settlements pursuant to Rule 23(e).[6] In other words, a court must consider whether it "will likely be able to" approve the settlement as fair, reasonable, and adequate.[7]

---

[4] *White v. NFL*, 822 F. Supp. 1389, 1416 (D. Minn.1993).

[5] *White*, 822 F. Supp. at 1399; 2 Newberg on Class Actions, § 11.24 (3d ed. 1992) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'").

[6] *See* Manual for Complex Litigation, (Fourth) § 21.632 (2004).

[7] Fed. R. Civ. P. 23(e)(1)(B)(i); *see* Fed. R. Civ. P. 23(e)(2).

010737-11 1449936V1

As set forth below, Consumer IPPs' agreement with Seaboard is fair, reasonable, and adequate. Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arms-length negotiations between experienced and capable counsel after meaningful discovery."[8]

### A. The Settlement was reached in arm's-length negotiations between experienced and capable counsel.

Courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement.[9]

Both sets of counsel—those representing the Consumer IPPs and those representing Seaboard—are experienced in antitrust matters. The judgment of the litigants and their counsel concerning the adequacy of the Settlement should therefore be considered.[10]

---

[8] *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *White v. NFL*, 836 F. Supp. 1458, 1476–77 (D. Minn. 1993).

[9] *See, e.g.*, *In re Emp. Benefit Plans Sec. Litig.*, Civ. No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (noting that "intensive and contentious negotiations likely result in meritorious settlements"); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters'") (citation omitted).

[10] *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

## B. Consumer IPPs have had adequate opportunity to assess the merits of their claims and Seaboard's defenses.

There can be no question that Consumer IPPs have had a chance to adequately assess the merits of their claims. The investigation into this alleged conspiracy began months before the filing of the complaint, as Consumer IPP counsel engaged expert economists and case investigators. Attorneys combed public statements by defendants, press releases, transcripts of investor calls, and filings with the Securities and Exchange Commission.

After the motions to dismiss were mostly denied in October 2020, discovery began in earnest. Plaintiffs have deposed over 90 defense witnesses and 10 non-party witnesses, and many of these depositions were taken by counsel for the Consumer IPP Class. Defendants produced nearly 4 million pages of documents. Scarlett Decl., ¶ 4. And Consumer IPPs subpoenaed 79 non-parties for data and related information to enable an analysis of the pass-through of overcharges to the consumer class. *Id.* In his declaration in support of the Consumer IPP motion for class certification, Dr. Singer relied upon approximately 856 gigabytes of raw data (6 gigabytes from Agri Stats, 164 gigabytes from other defendants, and 686 gigabytes from non-parties for regressions measuring pass-through). *Id.* To put this vast amount of data in context, it would take over 1,250 standard CD-ROMs, or over 590,000 standard 3.5-inch floppy disks, to store this data. The Court then certified the Consumer IPP Class in March 2023.[11] The work behind this

---

[11] Mem. and Order, ECF No. 1887 (filed Mar. 29, 2023), corrected version at ECF No. 2225 (filed May 8, 2024).

- 7 -

litigation has been significant. Scarlett Decl., ¶¶ 3–4.

Access to this volume of information has given the Consumer IPPs sufficient understanding of the strengths and weaknesses of their claims and Seaboard's defenses. The Settlement should therefore be accorded a presumption of fairness.

## C.     The Settlement provides significant relief to the Class.

The Settlement provides "adequate" relief for the Class, in accordance with Fed. R. Civ. P. 23(e)(2)(C). Seaboard is estimated to have an adjusted market share of approximately 4% of the processing market.[12] Scarlett Decl., ¶ 7. The $10 million Settlement with Seaboard represents a $2.5 million valuation for each market share point. This is an outstanding result.

The proposed Settlement also "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Funds will be awarded based on the purchase of qualifying class products. Although Consumer IPPs are not requesting distribution of funds at this time, they propose that Class Members be allowed to submit claims through a simplified and open online claims process. The funds will then be distributed through an electronic method, *pro rata*, to each Class Member based on qualifying purchases.

---

[12] The market share number is adjusted for the purposes of this motion to demonstrate the value of these settlements to the Class if every defendant settled on similar terms. The defendants have approximately 80% market share, and so this calculation adjusts defendants' market share to 100%. This discrepancy is because the Court dismissed Indiana Packers on the motions to dismiss. But Indiana Packers is still alleged to be a co-conspirator, having participated in Agri Stats, and thus its approximate 4% market share should properly be included as within the scope of commerce impacted by this conspiracy. Decl. of Hal J. Singer, Ph.D. in Support of Consumer IPPs' Mot. for Class Certification, ¶¶ 70, 77 (Figure 9 showing Agri Stats 2014 U.S. Domestic Market Share).

- 8 -

## V.     THE COURT HAS CERTIFIED A LITIGATION CLASS

This Court previously granted Consumer IPPs' motion for class certification and later corrected that Order. "If the court has certified a class prior to settlement, it does not need to re-certify it for settlement purposes."[13] Consumer IPPs do not seek any changes to the Class definition below, so there is no need for this Court to re-certify the Class for settlement purposes.

This Settlement proposes the same Settlement Class that this Court certified for litigation purposes on May 8, 2024,[14] defined as:

> All persons and entities who indirectly purchased raw pork bacon, or one or more of the following types of raw pork, whether fresh or frozen: bellies, loins, shoulder, ribs or pork chops from defendants or co-conspirators for personal consumption in the Repealer Jurisdictions[15] from June 28, 2014 to June 30, 2018. For this lawsuit, pork excludes any product that is marketed as organic, no-antibiotics ever (NAE) and any product other than bacon that is marinated, seasoned, flavored, or breaded.[16]

---

[13] 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.).

[14] The class was originally certified on March 29, 2023. ECF No. 1887 at 7–8. The Court issued an Amended Memorandum Opinion and Order Granting Class Plaintiffs' Motions for Class Certification on May 8, 2024, in which a comma previously omitted from the Consumer IPP class definition was added. ECF No. 2225 at 7–8.

[15] The Consumer IPPs' "Repealer Jurisdictions" are Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Carolina, Tennessee, Utah, and West Virginia. The class period for Kansas, Tennessee, and South Carolina Class Members begins June 28, 2015.

[16] ECF No. 2225 at 7–8. Excluded from the Class are defendants, the officers, directors or employees of any defendant; any entity in which any defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any

As set out in the prior motion papers and at the hearing before this Court, this Class satisfies all the requirements of Rule 23.

## VI. REQUEST TO DEFER NOTICE

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all class members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Plaintiffs request that the Court agree to defer formal notice of the Settlement Agreement to the Class because each provision of notice to a class of this size costs hundreds of thousands of dollars. Accordingly, providing separate notice to the Class each time that Plaintiffs enter into a settlement with any of the Non-Settling Defendants will lead to inefficiencies and reduce the amount of funds available for distribution to the Class.

It will likely be in the best interests of the Settlement Class to combine the notice of the Seaboard Settlement and the Hormel Settlement with notice(s) of future settlement(s) with other defendants, should additional settlements be reached in the near future. Proceeding in this way creates attendant efficiencies and cost savings for the

---

defendant; any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action; and any coconspirator identified in this action. *Id.*, n.11.

Class, resulting in more money from the settlements making it into the pockets of Class Members.

If the Court approves Plaintiffs' request to defer notice, Plaintiffs will propose a detailed notice plan in a subsequent motion that will be filed at a point reasonably calculated to maximize the funds available for distribution to the Class. The proposed notice plan will, pursuant to Rule 23(c)(2)(B), provide the "best notice practicable" to all Class Members who will be bound by the proposed Settlement Agreement.

## VII. CONCLUSION

For these reasons, Consumer IPPs respectfully request that the Court preliminarily approve the Settlement with Seaboard and certify the Settlement Class.

DATED: July 30, 2024

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:  */s/ Shana E. Scarlett*
　　　SHANA E. SCARLETT
Rio S. Pierce
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

- 11 -

Elaine T. Byszewski
Abigail D. Pershing
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave., Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
elaine@hbsslaw.com
abigailp@hbsslaw.com

GUSTAFSON GLUEK PLLC

By: */s/ Daniel C. Hedlund*
    DANIEL C. HEDLUND

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Joshua J. Rissman (#391500)
Abou B. Amara, Jr. (#401146)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
aamara@gustafsongluek.com

*Co-Lead Counsel for Consumer Indirect Purchaser Plaintiffs*