# UNITED STATES DISTRICT COURT
# DISTRICT COURT OF MINNESOTA

IN RE PORK ANTITRUST
LITIGATION


This Document Relates To:

THE DIRECT PURCHASER
PLAINTIFF CLASS ACTION

Case No. 18-cv-01776 (JRT-JFD)

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
PRELIMINARILY APPROVE
THE DIRECT PURCHASER
PLAINTIFF CLASS'S
PROPOSED SETTLEMENTS
WITH THE TYSON, CLEMENS,
AND TRIUMPH DEFENDANTS,
AND TO APPROVE CLASS
NOTICE**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................. 1

II.     LITIGATION BACKGROUND .......................................................................... 3

III.    THE PROPOSED SETTLEMENTS MEET THE STANDARDS FOR
        PRELIMINARY APPROVAL .............................................................................. 6

        A.      The Proposed Settlements are the Result of Arm's-Length
                Negotiations Conducted After Extensive Investigation and
                Discovery, and are Supported by Experienced Class Counsel ................... 8

        B.      The Settlements Provide Significant Relief to the DPP Class and
                Should be Preliminarily Approved by the Court ........................................ 10

IV.     THE SETTLEMENTS ARE ON BEHALF OF A CERTIFIED CLASS .............. 12

V.      IN APPROVING THESE SETTLEMENTS THE COURT NEED NOT
        PROVIDE AN ADDITIONAL OPPORTUNITY TO OPT OUT ........................ 12

VI.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ............ 14

        A.      The Content and Form of the Proposed Notices Are Fairly Balanced,
                Easy to Read, and Contain All Rule 23 Notice Requirements ................... 16

        B.      The Proposed Notice Plan Provides the Best Notice Practicable
                Under the Circumstances ........................................................................... 18

                1.      Direct-Mailed Notice to Class Members with Known Street
                        Addresses ....................................................................................... 20

                2.      Direct-E-Mailed Notice to Class Members with Known E-
                        Mail Addresses ............................................................................... 21

                3.      Media Publication Campaign .......................................................... 21

                4.      Informational Web Site And Toll-Free Telephone Number ............ 22

VII.    THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING ........... 22

VIII.   CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aranda v. Caribbean Cruise Line, Inc.*,
   No. 12 C 4069, 2017 WL 818854 (N.D. Ill. March 2, 2017) ..................................................22

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014)..........................................................................................22

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..........................................................................................13

*DaSilva v. Esmor Correctional Servs. Inc.*,
   215 F.R.D. 477 (D.N.J. 2003) ..........................................................................................13

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) .......................................................................................9, 18

*In re Domestic Air Transp. Antitrust Litig.*,
   141 F.R.D. 534 (N.D. Ga. 1992)........................................................................................21

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ..........................................................................................................18

*In re Emp. Benefit Plans Sec. Litig.*,
   No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ....................................................8

*Grier v. Chase Manhattan Auto Fin. Co.*,
   No. A.99-180, 2000 WL 175126 (E.D. Pa. Feb. 16, 2000) ....................................................8

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ..........................................................................................7, 8

*Hashw v. Dep't Stores Nat'l Bank*,
   182 F. Supp. 3d 935 (D. Minn. 2016)................................................................................19

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. &*
   *Prod. Liab. Litig.*, No. 1:15-md-2627, 2022 WL 2128630 (E.D. Va. 2022)..........................13

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) ..........................................................................................17

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)..........................................................................................................21

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) .......................................................................9, 17

*Pollard v. Remington Arms Co., LLC*,
    320 F.R.D. 198 (W.D. Mo. 2017) ...........................................................................19

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,
    No. 4:05-CV-01108-ERW, 2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ...............7

*Stewart v. M.D.F., Inc.*,
    83 F.3d 247 (8th Cir. 1996) .....................................................................................7

*Taqueria El Primo LLC v. Illinois Farmers Ins. Co.*,
    630 F. Supp. 3d 1121 (D. Minn. 2022) ............................................................18, 19

*In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*,
    716 F.3d 1057 (8th Cir. 2013) ...............................................................................17

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
    No. 11-MD-2247 ADM/JJK, 2012 WL 13065005 (D. Minn. Jan. 19, 2012) ........21

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ...................................................................................7

*Welsch v. Gardebring*,
    667 F. Supp. 1284 (D. Minn. 1987) .........................................................................8

*White v. Nat'l Football League*,
    822 F. Supp. 1389 (D. Minn. 1993) ...............................................................6, 7, 11

*White v. Nat'l Football League*,
    836 F. Supp. 1458 (D. Minn. 1993) .........................................................................8

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) ...........................7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ......................8, 21

**Other Authorities**

2 McLaughlin on Class Actions, § 6:21 (19th ed.) ......................................................13

Fed. R. Civ. Proc. 23(c)(2)(B) ...........................................................................16, 18, 21

Fed. R. Civ. Proc. 23(c)(2)(B)(i)–(vii) ........................................................................18

Fed. R. Civ. Proc. 23(e) .......................................................................................6, 7, 17

Fed. R. Civ. Proc. 23(e)(4).................................................................................................13

MANUAL FOR COMPLEX LITIG., §§ 21.312, 21.631 (4th ed. 2011)................................17

MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004)................................................7

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.) .........................12

2 NEWBERG ON CLASS ACTIONS, § 11.24 (3d ed. 1992) ..........................................6, 11

4 NEWBERG ON CLASS ACTIONS, § 11.53 (4th ed. 2002) .............................................17

## I.    **INTRODUCTION**

The Direct Purchaser Plaintiffs ("DPPs") in this certified antitrust class action respectfully move the Court to (1) preliminarily approve proposed settlements of their claims against the Tyson,[1] Clemens,[2] and Triumph[3] Defendants, and (2) approve the content and dissemination of the notice (*see* Section VI below).[4]

Pursuant to the Settlement Agreements and as set forth below, Tyson will pay $50 million plus notice and administration costs of up to $2 million, Clemens will pay $10 million, and Triumph will pay $4 million. These settlements total $64 million, and bring the total amount recovered by the DPP Class to $180,470,300. (*See* Pearson Decl. ¶ 5.) These Settlements provide the DPP Certified Class with significant and substantial relief, and resolve all claims in this litigation against the Pork integrators, with only Defendant Agri Stats, Inc. remaining.

As discussed in this memorandum, the Settlement Agreements are the product of separate, confidential, protracted arm's-length settlement negotiations. The Settlements should be granted preliminary approval because they are within the range of possible final

---

[1] Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. (collectively, "Tyson").

[2] Clemens Food Group, LLC and The Clemens Family Corporation (collectively, "Clemens").

[3] Triumph Foods, LLC ("Triumph," and with Tyson and Clemens, the "Settling Defendants").

[4] Unless otherwise noted, all capitalized terms shall have the same meaning as in the Settlement Agreements (also referred to herein as "Settlements"), which are filed concurrently herewith as Exhibits A (Tyson), B (Clemens), and C (Triumph) to the Declaration of Michael H. Pearson ("Pearson Decl.").

approval, are fair, reasonable, and adequate, and are in the best interests of the Certified

Class members. In addition to approving the notice plan set forth herein, DPPs request that

the Court set a schedule for the Final Fairness Hearing of the Settlements. At the Final

Fairness Hearing, Co-Lead Class Counsel[5] will request entry of a final order and judgment

dismissing the Settling Defendants and retaining jurisdiction for the implementation and

enforcement of the Settlement Agreements.

With regard to the notice plan, the Court previously granted DPPs' motion for class

certification as to the non-settling Defendants, which included Tyson, Clemens, and

Triumph. (*See generally* Memorandum Opinion and Order dated March 29, 2023, ECF No.

1887 ("Class Certification Order" or "Cert. Order").) On August 25, 2023, this Court

approved the Class Notice Plan, which provided Certified Class members a final

opportunity to opt out of the Certified Class. (*See* ECF No. 2014.) That Class Notice Plan

was successfully implemented and on January 24, 2024 this Court entered an order

approving the final exclusion list. (*See* ECF No. 2086.) DPPs now seek approval of the

content and dissemination of their notice plan related to the Settlements with the Settling

Defendants, which will notify Certified Class members of the Settlements and their terms,

and will provide an opportunity to object to the Settlements, but not a further opportunity

to opt out of the Class. (*See* Section V below.) Consistent with the notices already approved

by this Court and disseminated for the four DPP settlements to date, the proposed multi-

method notice plan includes direct-mailed notices, email notices, notices published online,

---

[5] Co-Lead Class Counsel are Lockridge Grindal Nauen PLLP and Pearson Warshaw, LLP. (*See* Cert. Order at 68.)

and a continuing informational website and toll-free telephone line to communicate with Class members. As described in this memorandum, the proposed notices and notice plan meet the requirements for Rule 23 notice and accordingly should be approved. The Settling Defendants have reviewed the notice documents and do not object to their contents. (Pearson Decl. ¶ 18.)

## II.    LITIGATION BACKGROUND

This is an antitrust class action against certain producers of Pork. DPPs filed their class action lawsuit on June 29, 2018, and it and subsequently-filed cases were consolidated before Judge John R. Tunheim in this Court. DPPs allege that Defendants combined and conspired to fix, raise, maintain, or stabilize prices of Pork sold in the United States in violation of the Sherman Act, 15 U.S.C. § 1. (*See generally* DPP Third Consolidated and Amended Complaint, ECF No. 431.) DPPs allege that Defendants implemented their conspiracy in various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and otherwise manipulating Pork prices. (*Id.*)[6]

Defendants moved to dismiss all Plaintiffs' complaints. In August 2019, the Court granted their motions and granted Plaintiffs leave to amend. (ECF No. 360.) DPPs amended their complaint, and after extensive briefing by the parties, on October 16, 2020, the Court

---

[6] Unlike other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. *See* Corporate Leniency Policy, U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy.

largely denied Defendants' motions to dismiss. (ECF No. 519, *amended* Oct. 20, 2020, ECF No. 520.)

Since the initial complaint was filed, DPPs have continued their factual investigation into the conspiracy alleged in their complaint, and once the Court largely denied Defendants' motions to dismiss Plaintiffs' complaints, DPPs commenced extensive discovery. (*See* Pearson Decl. ¶ 3.) During discovery, DPPs obtained responses to multiple sets of interrogatories, and received millions of documents in response to their requests for production and third-party subpoenas. (*See Id*. ¶ 4.) DPPs, along with other plaintiffs, have taken dozens of depositions of the Defendants and third parties. (*Id*.) DPPs have also provided responses to written discovery, produced documents, and DPPs' named representatives have appeared for depositions noticed by the Defendants. (*Id*.)

On March 29, 2023, the Court certified the following DPP Class:

All persons and entities who directly purchased one or more of the following types of pork, or products derived from the following types of pork, from Defendants, or their respective subsidiaries or affiliates, for use or delivery in the United States from June 29, 2014 through June 30, 2018: fresh or frozen loins, shoulders, ribs, bellies, bacon, or hams. For this lawsuit, pork excludes any product that is marketed as organic or as no antibiotics ever (NAE); any product that is fully cooked or breaded; any product other than bacon that is marinated, flavored, cured, or smoked; and ready-to-eat bacon.

Excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

Cert. Order at 4-5 (the "Certified Class"), and at 69 (granting class certification).

On March 31, 2025, the Court denied motions for summary judgment brought by all remaining Defendants in the DPP case (Tyson, Clemens, Triumph, and Agri Stats). *See* ECF No. 2929. At the time of the Settlements, trial was set for June 2, 2025.

These latest three Settlements are in addition to four settlements DPPs previously reached in this case. On November 17, 2020, DPPs and the JBS Defendants entered into a settlement that provided for a payment of $24,500,000 and meaningful cooperation. (Pearson Decl. ¶ 5.) The Court granted final approval of that settlement on July 26, 2021. (*See* ECF No. 838.) On June 29, 2021, DPPs and the Smithfield Defendants entered into a settlement that provided for a payment of $83 million[7] and meaningful cooperation. (Pearson Decl. ¶ 5.) The Court granted final approval of that settlement on January 31, 2022. (*See* ECF No. 1154.) On June 12, 2023, DPPs and Seaboard Foods LLC entered into a settlement that provided for a payment of $9,750,000 and meaningful cooperation. (Pearson Decl. ¶ 5.) The Court granted final approval of that settlement on March 5, 2024. (*See* ECF No. 2137.) On March 29, 2024, DPPs and Hormel Foods Corporation entered into a settlement that provided for a payment of $4,856,000 and meaningful cooperation. (Pearson Decl. ¶ 5.) The Court granted final approval of that settlement on October 3, 2024. (*See* ECF No. 2618.) Notice to the DPP Class of these prior settlements was approved by the Court and successfully implemented by A.B. Data, Ltd. (the Court-appointed

---

[7] The Smithfield settlement was subject to a $5,635,700 reduction based on the opt-outs received during the settlement administration process. The total net amount paid by Smithfield equaled $77,364,300. (*See* Pearson Decl. ¶ 5.)

Settlement Administrator, *see* ECF Nos. 631, 845, 2014, 2218) each time. (*See* ECF Nos. 838, 1154, 2137, 2618.)

As with these prior approved settlements, DPP Co-Lead Class Counsel performed a thorough investigation prior to reaching these proposed Settlements with the Settling Defendants and, given that the case has proceeded for nearly seven years, and that class certification proceedings, fact discovery, and summary judgment proceedings were completed by the time of the Settlements, Co-Lead Class Counsel were well informed by the time the parties agreed to settle. (*See* Pearson Decl. ¶¶ 8, 9, 14, 15) These Settlements, the terms of which are detailed in this brief and the supporting documents, represent a significant recovery for DPPs based on the record.

## III.   THE PROPOSED SETTLEMENTS MEET THE STANDARDS FOR PRELIMINARY APPROVAL

Parties proposing to settle a class action must obtain the court's approval of the settlement. Fed. R. Civ. Proc. 23(e). Federal Rule of Civil Procedure ("Rule") 23(e) contemplates a sequential process for courts evaluating class action settlements. At this preliminary approval stage, the court determines whether the settlement is within the range of possible approval and whether class members should be notified of the terms of the proposed settlement. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); 2 NEWBERG ON CLASS ACTIONS, § 11.24 (3d ed. 1992) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'"). Generally, before directing notice to the class members, a court makes a preliminary

evaluation of the proposed class action settlement pursuant to Rule 23(e). *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004). "At the preliminary approval stage, the 'fair, reasonable, and adequate' standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05-CV-01108-ERW, 2009 WL 4782082, at *3 (E.D. Mo. Dec. 8, 2009) (*citing White*, 836 F. Supp. at 1466).

If the court preliminarily approves the settlement and authorizes notice to the class, and once the class has had the opportunity to consider the settlement, then on final approval the court must determine whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. Proc. 23(e); *see also, e.g.*, *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The court has broad discretion in evaluating a class action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988). The law strongly favors resolving litigation through settlement, particularly in class actions. *White*, 822 F. Supp. at 1416 ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context.") (citation omitted); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2012 WL 5055810, *6 (D. Minn. Oct. 18, 2012). "The judicial policy favoring settlement . . . rests on the opportunity to conserve judicial resources, not expend them further." *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 252 (8th Cir. 1996) (citations omitted).

DPPs respectfully submit that the proposed Settlement Agreements with the Settling Defendants satisfy the preliminary approval standard and should be approved by the Court.

A.   **The Proposed Settlements are the Result of Arm's-Length Negotiations Conducted After Extensive Investigation and Discovery, and are Supported by Experienced Class Counsel**

"The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Emp. Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) (citation omitted); *see also Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight" to opinions of experienced counsel). Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery." *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-180, 2000 WL 175126, *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin*, 513 F.2d at 123; *White*, 836 F. Supp. at 1476-77.

Indeed, courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiations at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g.*, *In re Emp. Benefit Plans Sec. Litig.*, 1993 WL 330595, at *5 (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .'") (citation omitted). When, as here, experienced counsel represent the parties, and rigorous negotiations were conducted at arms' length,

the judgment of the litigants and their counsel concerning the adequacy of the settlement should be considered. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

Here, the parties to the Settlements have had ample opportunity to assess their claims and defenses through investigation, discovery, research, settlement discussions, and contested motion practice, including motions for summary judgment, and to balance the value of Certified Class members' claims against the substantial risks and expense of continuing litigation. The proposed Settlements come after extensive confidential, protracted arm's-length negotiations between Co-Lead Class Counsel and each of the Settling Defendants, separately. (*See* Pearson Decl. ¶¶ 6, 8, 10, 14.) The hard-fought negotiations were kept confidential as the parties vigorously litigated the case, including during the time that the motions for summary judgment were being argued and under submission. (*Id.*) The negotiations included many conferences and written exchanges between counsel. (*Id.*) The parties ultimately executed the Settlement Agreements in April, 2025. (*See id.* ¶¶ 11-13; *see also* Settlement Agreements.) Throughout all of these settlement discussions, counsel for DPPs focused on obtaining the best possible result for the DPP Certified Class. (Pearson Decl. ¶ 8.)

With regard to Tyson, after engaging in initial discussions the parties agreed to retain Judge Daniel Weinstein (ret.), a nationally renowned mediator. (Pearson Decl. ¶ 11.) The settlement negotiations with Tyson were thorough and extensive. With the assistance of Judge Weinstein, DPPs and Tyson exchanged mediation briefs, made presentations addressing the merits of the case, and exchanged settlement offers and demands. (*Id.*) This

process included numerous conferences with Judge Weinstein and his team, two videoconference mediations, as well as other discussions. (*Id.*) None of these efforts resulted in a settlement, and there were times when it appeared that the parties had reached an impasse. (*Id.*) Following the Court's Order on Defendants' motions for summary judgment (ECF No. 2929), the parties continued to negotiate regarding the settlement terms, ultimately executing the Tyson Settlement Agreement on April 15, 2025. (*See* Tyson Settlement Agreement; *see also* Pearson Decl. ¶ 11.)

In sum, the Settlement Agreements: (1) are the result of extensive good-faith and hard-fought negotiations between knowledgeable and skilled counsel; (2) were entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced class counsel, are fair, reasonable, and adequate. Based on the monetary compensation and the stage of the litigation, Co-Lead Class Counsel believes the Settlement Agreements are in the best interests of the Certified Class members and should be approved by the Court. (Pearson Decl. ¶ 15.)

### B.    The Settlements Provide Significant Relief to the DPP Class and Should be Preliminarily Approved by the Court

The Settlements with the Settling Defendants provide substantial relief to the Certified Class. Tyson has agreed to pay $50 million plus up to $2 million for notice and administration costs. (*See* Tyson Settlement Agreement ¶¶ 10, 6.b.) Clemens has agreed to pay $10 million. (*See* Clemens Settlement Agreement ¶ 10.) Triumph has agreed to pay $4 million. (*See* Triumph Settlement Agreement ¶ 10.) Under the terms of the Settlement Agreements, within 14 days of the Court's preliminary approval of the Settlements, each

of the Settling Defendants will deposit the settlement proceeds into separate interest-bearing escrow accounts.[8] (*See* Settlement Agreements ¶¶ 9-10.) Upon the Court's later approval, the Settlement Funds will be used to compensate the Certified Class for the damages suffered and expenses incurred, including attorneys' fees, litigation expenses, and the costs of notice. (Pearson Decl. ¶¶ 16, 19.) The Settlement Agreements do not contain any reduction or termination provisions. (*Id*. ¶ 7.)

In consideration for these Settlements, DPPs and the Certified Class agree to release certain Released Claims (as defined in the Settlement Agreements) against the Tyson, Clemens, and Triumph Released Parties (as defined in the Settlement Agreements). (*See* Settlement Agreements ¶¶ 10, 14, 15.) The release does not extend to any other Defendants or co-conspirators, or to unrelated claims for breach of contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claims. (*Id*. ¶¶ 14, 15.)

In sum, DPP Class Counsel believe the Settlements with the Settling Defendants provide substantial monetary relief to the Certified Class and fall well within the range of possible approval. For these reasons, DPPs respectfully submit that the Court should grant preliminary approval to the Settlement Agreements and authorize notice to the Certified Class. *See White*, 822 F. Supp. at 1399; 2 NEWBERG ON CLASS ACTIONS, § 11.24.

---

[8] Plaintiffs respectfully request that the Court appoint Huntington Bank as the Escrow Agent.

## IV.  THE SETTLEMENTS ARE ON BEHALF OF A CERTIFIED CLASS

As noted above in Section II, on March 29, 2023, the Court granted DPPs' motion for class certification and certified the DPP Class. (Cert. Order at 4-5, 69.) "If the court has certified a class prior to settlement, it does not need to re-certify it for settlement purposes." 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.). Here, the parties do not request any changes to the Certified Class, so the Court need not re-certify it. Therefore, the class certification analysis under Rule 23 has been completed.

## V.  IN APPROVING THESE SETTLEMENTS THE COURT NEED NOT PROVIDE AN ADDITIONAL OPPORTUNITY TO OPT OUT

The Court previously certified the Class on March 29, 2023. (*See* Cert Order.). Thereafter, on August 25, 2023, the Court approved a notice program that provided Certified Class members a final opportunity to exclude themselves from the Class. (*See* ECF No. 2014.) Specifically, the long form class notice provided the following notice to Certified Class Members:

> The notice provides Class Members with an opportunity to opt out of the Settlement, the Certified Class defined above, or both. If you exclude yourself from both the Settlement and the Certified Class, you will not receive any of the Settlement benefits and cannot participate in any future settlements on behalf of the Certified Class and will not be bound by any future judgments.  If you exclude yourself from only the Certified Class, but not the Settlement, you will receive the benefits of the Settlement, but cannot participate in any future settlements on behalf of the Certified Class and will not be bound by any future judgments.  If you exclude yourself from only the Settlement, you will not receive any of the Settlement benefits and you will remain in the Certified Class and be bound by future settlements and judgments. …
>
> **If you do not exclude yourself from the Certified Class, you will be bound by any judgment or future settlement with the Non-Settling Defendants and may not have another opportunity to exclude yourself**.

> If you have a pending lawsuit against one or more of the Non-Settling Defendants or Seaboard, speak to your lawyer in that lawsuit immediately to determine whether you must exclude yourself from this Class or the Settlement to continue your lawsuit.

*Id.* (emphasis added).

While Rule 23(e)(4) grants district courts the discretion to afford class members of a previously-certified class an additional opt-out opportunity, it is often unnecessary[9] and the Rules Committee has urged district courts to exercise their discretion to allow additional opt-out opportunities with caution,[10] as "a second opt-out opportunity might inject additional uncertainty into settlement and create opportunities unrelated to the purpose of the second opt-out, potentially defeating some settlements and making others more costly." *See* Certification of a settlement class—No additional opportunity to opt-out at settlement stage if class already certified, 2 MCLAUGHLIN ON CLASS ACTIONS, § 6:21 (19th ed.) (quoting and citing MANUAL FOR COMPLEX LITIGATION (4th), § 22.611 at 313); *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:15-md-2627, 2022 WL 2128630, *6 n.9 (E.D. Va. 2022)).

---

[9] *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289 (9th Cir. 1992) (holding that "Class Members were given notice of the action and afforded an opportunity to opt-out [when litigation class was certified and] also were given notice of the proposed settlement and afforded the opportunity to object. This is all that Rule 23 requires."); *DaSilva v. Esmor Correctional Servs. Inc.*, 215 F.R.D. 477, 483 (D.N.J. 2003), *aff'd*, 167 Fed. App'x. 303 (3d Cir. 2006) ("In class action litigation 'potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation "as soon as practicable after the commencement" of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class.' ") (quoting *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 549 (1974)).

[10] *See* 2003 Report of the Judicial Conference, Committee on Rules of Practice and Procedure (commentary on amended Rule 23(e)(3)) [now (e)(4)].

This class action lawsuit has been litigated for nearly seven years, and Class members have received several notices of its progress, including notice of the Certified Class. Now, the litigation, its progress, and its prospects are well known to members of the DPP Class, and have proceeded past summary judgment and close to trial. Co-Lead Class Counsel respectfully submit that an additional opportunity to opt out is unnecessary.[11]

## VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

DPPs respectfully request the Court's approval of the notice plan set forth herein. Plaintiffs have retained A.B. Data, Ltd. to administer the notice plan. A.B. Data is an experienced national class action notice provider and claims administrator and Court-appointed administrator of the JBS, Smithfield, Seaboard, and Hormel Foods settlements, as well as the claims and distribution process. (Declaration of Eric Schachter ("Schachter Decl.") filed concurrently herewith, ¶¶ 1-5, Ex. F; ECF Nos. 631, 845, 1208, 2014, 2218.)

The notice documents define the Class, describe the nature of the action, summarize the Class claims, and provide direct purchasers of Pork notice of:

- The terms of the Tyson, Clemens, and Triumph Settlements, and the procedures for objecting thereto;

- Co-Lead Class Counsel's second request for payment of attorney's fees (not to exceed 33⅓% of the Seaboard, Hormel Foods, Tyson, Clemens, and Triumph settlement proceeds plus interest)[12] and Class Representative

---

[11] The proposed notice allows Class members to object to one or more of the proposed Settlements, should they so choose. *See* Section VI below.

[12] On July 22, 2022, the Court awarded interim attorney's fees equal to 33⅓% of the JBS and Smithfield settlements. (*See* ECF No. 1424.) Therefore, Co-Lead Class Counsel's forthcoming fee request will be limited to payment *pro rata* from the Seaboard, Hormel Foods, Tyson, Clemens, and Triumph settlements.

service awards (not to exceed $25,000 per Class Representative),[13] and the procedures for objecting thereto;[14]

• The claims process for the settlements with Seaboard, Hormel Foods, Tyson, Clemens, and Triumph (which total $78,606,000 plus interest);[15] and

• The date, time, and place of the final approval hearing (once that hearing is set by the Court), and the fact that Class members do not need to enter an appearance through counsel, but may do so if they choose.

The proposed Notice Plan also will tell DPPs that unless they want to amend or supplement their initial claim, those who submitted a qualified claim in the first claims process will not be required to take any additional steps to receive their *pro rata* portion of the net settlement proceeds. Class members who did not participate in the first claims

---

[13] On July 22, 2022, the Court awarded service awards of $25,000 to each Maplevale Farms, Inc., John Gross and Company, Inc., Ferraro Foods, Inc. and Ferraro Foods of North Carolina, LLC, and Olean Wholesale Grocery from the JBS and Smithfield settlements. (*See* ECF No. 1424.) When the Court certified the litigated class, it did not approve Plaintiff John Gross and Company, Inc. as a Class Representative (*see* ECF No. 1887). Therefore, Gross will not request a service award in the upcoming motion. Co-Lead Class Counsel's forthcoming second request for Class Representative service awards will be limited to payment *pro rata* from the Seaboard, Hormel Foods, Tyson, Clemens, and Triumph settlements, and the proposed notice to the Class will say as much.

[14] Co-Lead Class Counsel previously sought the payment of up to $5 million in incurred and future litigation expenses from the JBS and Smithfield settlements, which was approved by this Court. (*See* ECF No. 1424.) Additionally, in conjunction with the Seaboard and Hormel Foods settlements, Co-Lead Class Counsel sought payment of $1,460,600.00 as a replenishment of the future litigation expense fund, which was approved by this Court. (*See* ECF No. 2617.) The details of the litigation expenses incurred will be fully set forth in the forthcoming motion for payment of attorneys' fees and class representative service awards, but as of the filing of this Motion the previously approved future litigation expense fund remains capitalized. (*See* Pearson Decl. ¶ 16.)

[15] Proceeds from the JBS and Smithfield settlements have already been distributed to qualified claimants. (*See* ECF No. 2204.) Therefore, the second claims process and distribution will be limited to payment *pro rata* from the Seaboard, Hormel Foods, Tyson, Clemens, and Triumph.

process will have the opportunity to submit Claim Forms via mail, email, or using the

Settlement Website. (*See* Schachter Decl. Ex. C.) Class members will be able to review

their Pork purchase records, based on Defendants' records, on the settlement website. Class

members may choose to rely on those purchase amounts, or may submit documentation to

correct or update their purchase amounts if they choose to do so.[16] (*See* Schachter Decl. ¶

9.)

     In the event that after the distribution (and any redistribution, if appropriate)

insufficient settlement proceeds remain to support a further distribution, the proposed

notice also includes the disclosure that Co-Lead Class Counsel may move the Court for

approval of a potential c*y pres* recipient. DPPs will explain and set forth the parameters of

any such distribution(s) in a yet-to-be-filed motion. By disclosing this course of action at

this time, it is DPPs' intention that further notice regarding the distribution, including the

potential *cy pres* recipients, will not be required.

### A. The Content and Form of the Proposed Notices Are Fairly Balanced, Easy to Read, and Contain All Rule 23 Notice Requirements

     For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a

settlement, Rule 23(c)(2)(B) states:

> The notice must clearly and concisely state in plain, easily
> understood language: (i) the nature of the action; (ii) the
> definition of the class certified; (iii) the class claims, issues, or
> defenses; (iv) that a class member may enter an appearance

---

[16] The Purchase Audit Request form (*see* Schachter Decl. Ex. D.)will be available to Class members on the Settlement Website should any claimant wish to provide additional information. The Purchase Audit Request form and any supporting documentation will then be reviewed by the Settlement Administrator and, if necessary, Co-Lead Class Counsel.

through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Under Rule 23(e), Class Members are entitled to reasonable notice of the proposed Settlement. *See* MANUAL FOR COMPLEX LITIG., §§ 21.312, 21.631 (4th ed. 2011). The form of notice is "adequate if it may be understood by the average class member." 4 NEWBERG ON CLASS ACTIONS, § 11.53 (4th ed. 2002). Class notice is intended as a summary, rather than a complete source of information. *See Petrovic*, 200 F.3d at 1153; *Mangone v. First USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001). "Valid notice of a settlement agreement 'may consist of a very general description' of settlement terms." *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1065 (8th Cir. 2013) (quoting *Grunin*, 513 F.2d at 122). The class notice's form and content are committed to a district court's sound discretion. *See Mangone*, 206 F.R.D. at 231.

Settlement notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The notice conforms to the seven plain language requirements of Rule 23(c)(2)(B) and states the following information: (1) the nature of the action; (2) the definition of the Class certified; (3) the class claims, issues, or defenses; (4) that a Class member may enter an appearance through an attorney if the member so desires; (5) that a Class member may object to one or more of the Settlements and the process for doing so; (6) that the exclusion period has passed; and (7) the binding

effect of a Class judgment. *See* Fed. R. Civ. Proc. 23(c)(2)(B)(i)-(vii); Schachter Decl. Exs. A, B. With this and the other information they contain, the notices' contents address material information required.

The notices avoid legalese in favor of modern language and provide a toll-free number and website link to direct Class members to additional sources of information, including pleadings and orders from the case. Accordingly, the proposed notices provide the best written notice practicable to Class members.

**B.    The Proposed Notice Plan Provides the Best Notice Practicable Under the Circumstances**

Federal case law asserts notice must be "the best practicable" under the circumstances to apprise interested parties of the pending settlement and provide them an opportunity to object. *Taqueria El Primo LLC v. Illinois Farmers Ins. Co.*, 630 F. Supp. 3d 1121, 1125 (D. Minn. 2022) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). "Notice of a settlement proposal need only be as directed by the district court, Fed. R. Civ. P. 23(e), and reasonable enough to satisfy due process." *DeBoer*, 64 F.3d at 1176 (citing *Grunin*, 513 F.2d at 120–22). Best notice practicable means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Id.* at 176. In addition to United States mail, direct notice may be by electronic means or other appropriate means. Fed. R. Civ. Proc. 23(c)(2)(B); *see, e.g.*, *DeBoer*, 64 F.3d at 1176 (finding notice through mail and in a printed national publication to be sufficient, even if

it was "neither extensive nor remarkably thorough."); *Taqueria El Primo LLC*, 630 F. Supp. 3d at 1127 (approving the use of email and postcard notice). If names and addresses cannot be identified by reasonable effort then, other methods may be substituted. *See, e.g.*, *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 211 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) (approving the use of social media and email to notice potential class members when names and addresses were not readily available from existing records); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 946 (D. Minn. 2016) (approving notice through national publications when data was missing for a portion of the class).

The proposed notice plan in this case satisfies these criteria and is the same as the notice plan previously approved by the Court in the JBS, Smithfield, Seaboard, and Hormel Foods settlements. (*See* ECF Nos. 631, 845, 2014, 2218.) DPPs also completed the claims process for the JBS and Smithfield settlements, which has resulted in updated contact information for Class members. (*See* ECF No. 1864.) Thus, DPPs propose to the Court a plan of notice that comports with due process and provides reasonable notice to known and reasonably identifiable customers of the Defendants pursuant to Rule 23. The notice documents, consisting of the long form, short form, and publication notice, comply with the requirements of Rule 23(c)(2)(B). (*See* Schachter Decl. Exs. A (long form), B (short form), E (publication).) The notice documents define the Certified Class, describe the nature of the action, summarize the Class claims, inform the Class members that DPPs will move for payment of attorneys' fees and Class Representative service awards, describe the claims and distribution process, and explain the procedure to object to the proposed

Settlements and/or the fees and service awards request. (*Id.*) The notice documents describe the terms of the Settlement Agreements and inform the Certified Class members of the claims and distribution process. (*Id.*) The notice documents will provide the date, time, and place of the Final Fairness Hearing (once that hearing is set by the Court) and will inform Certified Class members that they do not need to enter an appearance through counsel, but may do so if they choose. (*Id.*)

The claims and notice administrator, A.B. Data, is very familiar with providing such notice to DPP Class members from working with multiple settlements with notice, settlement claims, and distribution. The target audience for this notice plan is businesses and individuals that purchased the subject Pork. Defendants maintained and produced records showing addresses for the vast majority of Class members. Accordingly, A.B. Data has developed a multi-method campaign for the notice plan based on and similar to notice campaigns the Court approved for earlier settlements.

      1.    <u>Direct-Mailed Notice to Class Members with Known Street Addresses</u>

DPPs propose to send paper long-form notices to Class members with addresses that are reasonably accessible based on records produced by Defendants. (Schachter Decl. Ex. A.) The long-form notice will be sent to approximately 55,000 mailing addresses associated with potential Class members in this manner. (Schachter Decl. ¶¶ 7, 8.) A.B. Data will also post the long-form notice on the existing case website, https://porkantitrustlitigation.com. (*Id.*) A.B. Data will track mail that the post office

returns as undeliverable, and where feasible will resend using third-party information providers. (*Id.* ¶ 10.)

   2. <u>Direct-E-Mailed Notice to Class Members with Known E-Mail Addresses</u>

  The notice rule states notice may be given by one or more methods, including electronic mail. Fed. R. Civ. Proc. 23(c)(2)(B). A.B. Data will send an email notice, Schacter Decl. Ex. B, to the approximately 3,000 email addresses associated with potential Class members. (*Id.* ¶ 8.) A.B. Data implements certain best practices to increase deliverability and determine how many emails are successfully delivered. (*Id.* ¶ 10.)

  The Email Notice will provide Class members with an electronic link to the case website, https://porkantitrustlitigation.com. (*Id.* ¶ 8.) The website provides more detailed information including case documents and the long form notice.

   3. <u>Media Publication Campaign</u>

  When not all Class members can be identified through reasonable effort, "there is no other requirement of mandatory individual notice, and the Court must exercise its discretion to provide the best notice practicable under the circumstances." *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 539, 539 (N.D. Ga. 1992); *see also Mullane*, 339 U.S. at 317 (approving of publication as a substitute for individual notice); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088 at *6 (finding notice by publication sufficient where "class members cannot be identified for purposes of sending individual notice"); *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11–MD–2247 ADM/JJK, 2012 WL 13065005, at *5 (D. Minn. Jan. 19, 2012) (finding notice by

publication sufficient where class members cannot be identified for purposes of sending individual notice); *Aranda v. Caribbean Cruise Line, Inc*., No. 12 C 4069, 2017 WL 818854 at \*2 (N.D. Ill. March 2, 2017) (publication permissible if class members not reasonably identifiable), *affirmed sub nom. Birchmeier v. Caribbean Cruise Line, Inc*., 896 F.3d 792 (7th Cir. 2018); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 255 (N.D. Ill. 2014) ("making broad-based forms of notice appropriate"). For those Class members whose addresses and email addresses are not reasonably accessible, A.B. Data has developed a public awareness media campaign similar to campaigns used for prior settlements in this case.

This media campaign will include posting on multiple websites. A.B. Data will publish a banner ad like Exhibit E to the Schacter Declaration. The Banner Ad will run in Supermarket News (www.supermarketnews.com) and Nation's Restaurant News (www.nrn.com). The ads will run for four weeks. (Schachter Decl. ¶ 11.)

### 4.    Informational Web Site And Toll-Free Telephone Number

To provide detailed information about the case and specific information to Class members, A.B. Data will update and continue to operate and monitor the case website for this case at https://porkantitrustlitigation.com. (*See* Schachter Decl. ¶¶ 8, 9, 12.)

## VII.    THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING

The last step in the settlement approval process is the Final Fairness Hearing, at which the Court may hear all evidence necessary to evaluate and determine whether to grant final approval to the proposed Settlements. At that hearing, proponents of the Settlement may explain and describe their terms and conditions and offer argument in

support of the Settlement's approval, and members of the Certified Class or their counsel may be heard regarding the proposed Settlements if they choose. DPPs propose the following schedule of events necessary for disseminating notice to the Certified Class and the Final Fairness Hearing.

| DATE | EVENT |
|---|---|
| Within 10 days of the filing of this Motion for Preliminary Approval. | Deadline for the Settling Defendants to serve appropriate Federal and State officials with all required materials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. |
| Within 14 days of the Court's Order on this Motion for Preliminary Approval. | Settlement Administrator to provide direct mail and email notice, and commence implementation of the notice plan. DPPs to file their Motion for Payment of Attorneys' Fees and Class Representative Service Awards. |
| 30 days after the commencement of Notice. | Last day for Certified Class members to file additional claims or challenge calculated purchase amounts; object to the Settlements; object to DPPs' Motion for Payment of Attorneys' Fees and Class Representative Service Awards; and for Certified Class members to file notices to appear at the Final Fairness Hearing. |
| 14 days before Final Settlement Fairness Hearing. | Co-Lead Class Counsel shall file for final approval of the Settlements and all supporting papers, and respond to any objections. |
| No sooner than 90 days after mailing of CAFA Notices.[17] | Final Fairness Hearing and hearing on DPPs' Motion for Payment of Attorneys' Fees and Class Representative Service Awards. |

---

[17] Under the terms of each Settlement Agreement (¶ 23), within 10 days of the filing of this Motion for Preliminary Approval, each Settling Defendant will serve appropriate Federal and State officials with all required materials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Under the Act, this Court may not enter an order giving final approval of the proposed settlement earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under 28 U.S.C. § 1715 (b). DPPs' proposed timetable and "no sooner than"

## VIII.  <u>CONCLUSION</u>

For these reasons, DPPs respectfully request that the Court preliminarily approve the Settlements with Tyson, Clemens, and Triumph, approve the proposed notice plan for dissemination to the Certified Class, and schedule the Final Fairness Hearing for the Settlements.

Date:  April 22, 2025

| | |
|---|---|
| */s/ Michael H. Pearson* | */s/ Brian D. Clark* |
| Clifford H. Pearson (*Pro Hac Vice*) | W. Joseph Bruckner (MN #0147758) |
| Daniel L. Warshaw (*Pro Hac Vice*) | Brian D. Clark (MN #0390069) |
| Bobby Pouya (*Pro Hac Vice*) | Joseph C. Bourne (MN #0389922) |
| Michael H. Pearson (*Pro Hac Vice*) | LOCKRIDGE GRINDAL NAUEN PLLP |
| PEARSON WARSHAW, LLP | 100 Washington Avenue South |
| 15165 Ventura Boulevard | Suite 2200 |
| Suite 400 | Minneapolis, MN 55401 |
| Sherman Oaks, CA 91403 | Telephone: (612) 339-6900 |
| Telephone: (818) 788-8300 | Facsimile: (612) 339-0981 |
| Facsimile: (818) 788-8104 | wjbruckner@locklaw.com |
| cpearson@pwfirm.com | bdclark@locklaw.com |
| dwarshaw@pwfirm.com | jcbourne@locklaw.com |
| bpouya@pwfirm.com | |
| mpearson@pwfirm.com | |

Melissa S. Weiner (MN #0387900)
PEARSON WARSHAW, LLP
328 Barry Avenue South
Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pwfirm.com

*Direct Purchaser Plaintiffs Co-Lead Class Counsel*

---

Final Settlement Fairness Hearing date proposed above will allow time for the notice required under the Act.