## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Case No. 0:18-cv-1776-JRT-JFD |
| This Document Relates to: *All Actions* | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

   I.    THE ORDER ADDRESSES A CONTROLLING QUESTION OF LAW ............. 2

   II.   THERE ARE SUBSTANTIAL GROUNDS
        FOR DIFFERENCE OF OPINION ON THE
        ANSWER TO THE CONTROLLING LEGAL QUESTION ................................ 7

   III.  AN IMMEDIATE APPEAL WOULD MATERIALLY
        ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION ........... 10

CONCLUSION ................................................................................................................ 13

i

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*In re Air Crash off Long Island, N.Y. on July 17, 1996*,
   27 F. Supp. 2d 431 (S.D.N.Y. 1998) ........................................................................ 12

*Allen v. Piepho*,
   No. 21-cv-02689, 2023 WL 7986430 (D. Minn. Nov. 17, 2023) ................................. 5

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999) ........................................................................................ 3

*Behr v. AADG, Inc.*,
   No. 14-CV-3075-CJW, 2016 WL 11969653 (N.D. Iowa Oct. 5, 2016) ....................... 9

*Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*,
   203 F.3d 1028 (8th Cir. 2000) (en banc) ................................................................ 3, 9

*In re Broiler Chicken Antitrust Litig.*,
   702 F. Supp. 3d 635 (N.D. Ill. 2023) ............................................................... 1, 6, 7, 8

*Cornish-Adebiyi v. Caesars Ent., Inc.*,
   No. 1:23-CV-02536-KMW-EAP, 2024 WL 4356188 (D.N.J. Sept. 30,
   2024), *appeal docketed*, No. 24-3006 (3d Cir. Oct. 29, 2024) .................................. 10

*In re Domestic Drywall Antitrust Litig.*,
   163 F. Supp. 3d 175 (E.D. Pa. 2016) ......................................................................... 4

*In re Domestic Drywall Antitrust Litigation*,
   No. 13-MD-2437, 2016 WL 2941114 (E.D. Pa. May 20, 2016) ............................ 3, 13

*Duffy v. Yardi Sys., Inc.*,
   758 F. Supp. 3d 1283 (W.D. Wash. 2024) ................................................................ 10

*In re Gen. Motors LLC Ignition Switch Litig.*,
   427 F. Supp. 3d 374 (S.D.N.Y. 2019) ......................................................................... 9

*Gibson v. Cendyn Grp., LLC*,
   No. 2:23-cv-00140-MMD-DJA, 2024 WL 2060260 (D. Nev. May 8,
   2024), *appeal docketed*, No. 24-3576 (9th Cir. June 7, 2024) .................................... 9

*Hill v. Henderson*,
   195 F.3d 671 (D.C. Cir. 1999) ................................................................................. 12

*In re Manufactured Home Lot Rents Antitrust Litig.*,
   No. 1:23-cv-06715 (N.D. Ill. Apr. 24, 2025) .................................................................. 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................................ 3

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.*,
   No. 10-4948, 2015 WL 4898662 (D. Minn. Aug. 17, 2015)
   (Tunheim, J.) .................................................................................................................. 4

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   No. 11-1049, 2021 WL 2433737 (D.D.C. June 15, 2021) .......................................... 11

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
   709 F. Supp. 3d 478 (M.D. Tenn. 2023) ..................................................................... 10

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
   No. 11–820 ADM/JSM, 2012 WL 5389674 (D. Minn. Nov. 2, 2012) ............... *passim*

*Simon v. G.D. Searle & Co.*,
   816 F.2d 397 (8th Cir. 1987) ....................................................................................... 11

*Sportsman ex rel. Sportsman v. Cal. Overland, Ltd.*,
   No. 17-1064, 2018 WL 2441771 (D. Minn. May 31, 2018) ........................................ 4

*Union Cnty. v. Piper Jaffray & Co.*,
   525 F.3d 643 (8th Cir. 2008) ....................................................................................... 11

*United States v. Agri Stats, Inc.*,
   No. 0:23-cv-03009-JRT-JFD (D. Minn.) .................................................................... 13

*Watkins Inc. v. McCormick & Co.*,
   579 F. Supp. 3d 1118 (D. Minn. 2022) .................................................................... 7, 9

*White v. Nix*,
   43 F.3d 374 (8th Cir. 1994) ........................................................................................... 2

*In re WorldCom, Inc. Sec. Litig.*,
   No. 02 Civ.3288, 2003 WL 22953644 (S.D.N.Y. Dec. 16, 2003) .............................. 12

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
   494 F. Supp. 1190 (E.D. Pa. 1980) ............................................................................. 11

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................. *passim*

# **INTRODUCTION**

Defendants Agri Stats, Inc, Clemens Food Group, LLC, The Clemens Family Corporation, JBS USA Food Company, Seaboard Foods LLC, Smithfield Foods, Inc., Triumph Foods, LLC, Tyson Foods, Inc., Tyson Prepared Foods, Inc. and Tyson Fresh Meats, Inc. (collectively, "Defendants") move the Court to amend and certify for interlocutory appeal under 28 U.S.C. § 1292(b) its April 28, 2025 Amended Memorandum Opinion and Order, ECF No. 2955[1] (the "Order") denying Defendants' motions for summary judgment.[2]  This case centers on an important and unsettled question of law:

> Whether it is permissible to infer an unlawful Section 1 conspiracy from evidence that competitors participated in a third-party service that provided historical average pricing information.

That is a legal question that controlled the outcome of the Order:  This Court stated that "the evidence regarding Agri Stats's role in the alleged conspiracy in particular tips the scale in favor of Plaintiffs," Order at 107, and whether a Defendant subscribed to the Agri Stats sales reports was the decisive factor in whether its motion for summary judgment was granted or denied.  There are also substantial grounds for difference of opinion on this legal question, as evidenced by the fact that the United States District Court for the Northern District of Illinois (Durkin, J.) reached the opposite conclusion on materially identical facts. *See In re Broiler Chicken Antitrust Litig.* ("*Broilers*"), 702 F. Supp. 3d 635, 674-75 (N.D. Ill. 2023).  Giving the Eighth Circuit an opportunity to consider that question now will

---

[1] The Court issued its original summary judgment order on March 31, 2025.  ECF No. 2929.  The Court's amended order corrected a scrivener's error.  *See* ECF Nos. 2954-55.

[2] Each Defendant directs this motion only against those plaintiffs against which it is still litigating.

1

materially advance the ultimate termination of this suit, as the Circuit's decision could obviate the need for a multitude of trials in district courts across the country—including the Northern District of Illinois—and a multitude of appeals to follow.

In short, the Order meets all the requirements of § 1292(b). Indeed, as the Eighth Circuit has recognized, dispositive rulings in complex multidistrict antitrust litigation are the paradigmatic case for certification. *See White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994). The Eighth Circuit should therefore be given a chance to weigh in on this critically important legal question, before the parties expend inordinate time and resources trying a multitude of cases that may well be foreclosed as a matter of law.

## **ARGUMENT**

An interlocutory appeal is warranted when (1) an order "involves a controlling question of law"; (2) "there is a substantial ground for difference of opinion" on that question; and (3) certification may "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Each of those requirements is satisfied here.

### I. THE ORDER ADDRESSES A CONTROLLING QUESTION OF LAW

The first prong of the certification standard focuses on whether an order turns on the resolution of a question of law, rather than on applying settled law to disputed facts or addressing other "matter[s] for the discretion of the trial court," such as discovery disputes. *White*, 43 F.3d at 377 (quotation marks omitted) (holding that discovery rulings generally do not present controlling questions of law due to their "discretionary nature"). Whether an inference of a Section 1 conspiracy may be drawn from participation in a third-party information service like Agri Stats is a question that readily meets that standard.

2

In the antitrust context, summary judgment must be granted to the defendant unless the plaintiffs' evidence "tends to exclude the possibility" of independent action. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*, 203 F.3d 1028, 1033 (8th Cir. 2000) (en banc). And as this Court correctly recognized, "***antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case***." Order at 24 (emphasis added) (quoting *Matsushita,* 475 U.S. at 588). In practice, this means that district courts do not have as much latitude in antitrust cases as in other cases to assess the range of inferences a reasonable jury might draw from the available evidence. *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 124 (3d Cir. 1999) ("The extent of what constitutes a reasonable inference in the context of an antitrust case . . . is somewhat different from cases in other branches of the law in that 'antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case.'" (quoting *Matsushita*, 475 U.S. at 588)).

Consistent with that understanding, courts have recognized that whether an inference of a Section 1 conspiracy may permissibly be drawn is a legal question appropriate for certification under § 1292(b). For example, in *In re Domestic Drywall Antitrust Litigation*, the court concluded that certification under § 1292(b) was appropriate to determine "whether a jury can properly infer a conspiracy based on communications between Defendants and stock analysts, even though the stock analysts were not alleged to be part of the conspiracy." No. 13-MD-2437, 2016 WL 2941114, at *2 (E.D. Pa. May 20, 2016). The court reached that conclusion even though, like this Court in this case, it had discussed additional conduct allegedly suggestive of a conspiracy in its summary judgment

3

order. *See generally In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175 (E.D. Pa. 2016) (discussing, in addition to stock analyst communications, the timing and similarity of defendants' pricing practices, interfirm communications, and non-price supply-limiting conduct). As the court recognized in doing so, the "controlling question of law" analysis asks whether a material issue turns on the resolution of a question of law rather than fact, not whether it is the only question the court resolved. And a question need not be entirely divorced from facts to be appropriate for certification. *See Schwendimann v. Arkwright Advanced Coating, Inc.*, No. 11–820 ADM/JSM, 2012 WL 5389674, at *3 & n.3 (D. Minn. Nov. 2, 2012) (certifying a question regarding whether "a photocopy of a prior, unrelated assignment" could satisfy a statutory requirement for a writing to effectuate a patent assignment, which the court acknowledged was "fact-specific").

Here, too, whether Defendants' participation in Agri Stats supports an inference of a conspiracy turns on a legal question—*i.e.*, the range of permissible inferences in a Section 1 case—not on any "highly fact-dependent" inquiry regarding the details of that participation. *Contra, e.g.*, *Sportsman ex rel. Sportsman v. Cal. Overland, Ltd.*, No. 17-1064 (DWF/KMM), 2018 WL 2441771, at *2 (D. Minn. May 31, 2018) (declining to certify "fact driven question" of whether Minnesota's choice-of-law analysis was properly applied); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.*, No. 10-4948 (JRT/TNL), 2015 WL 4898662, at *3-4 (D. Minn. Aug. 17, 2015) (Tunheim, J.) (declining to certify interlocutory appeal of "decidedly fact-based" questions). The Court agreed that the Agri Stats reports at issue "do not contain actual current or future pricing information about any competitor," and instead offer comparisons only to "averages." Order at 66.

4

The Court nevertheless found those facts suggestive of a conspiracy because of its view of the law—as evidenced by the opposite conclusion reached by another district court on materially identical facts. *See infra* Part II. Indeed, other plaintiffs pursuing class action litigation in the Northern District of Illinois targeting information sharing in the mobile home rental industry recently submitted this Court's Order as supplemental authority on "the role of information exchanges in supporting an inference of an agreement to fix prices in violation of Section 1 of the Sherman Act." Pls.' Notice Supp. Authority, *In re Manufactured Home Lot Rents Antitrust Litig.*, No. 1:23-cv-06715 (N.D. Ill. Apr. 24, 2025), ECF No. 199. In short, whether a category of business conduct—such as participation in a third-party information service—gives rise to an inference of a Section 1 conspiracy is a question of law.

It is also a question that played a critical role in this Court's resolution of Defendants' summary judgment motions, which if granted could have terminated this litigation entirely. *See Allen v. Piepho*, No. 21-cv-02689 (SRN/ECW), 2023 WL 7986430, at *2 (D. Minn. Nov. 17, 2023) (deeming questions "controlling" where "reversal of the district court's order would terminate the action, or is quite likely to influence the course of the litigation"); *Schwendimann*, 2012 WL 5389674, at *3 (deeming a legal question "controlling" where "reversal of the . . . Orders would terminate [plaintiff's] patent infringement suit"). Whether a Defendant participated in Agri Stats controlled whether that Defendant obtained summary judgment. The Court denied the motion of every Defendant but Hormel, and it identified Hormel's "reluctan[ce]" and "refus[al]" to "participate in Agri Stats reports" as the critical "difference" between Hormel and the other

5

Defendants. Order at 128; *see also id.* at 129 ("Hormel's apprehension about and refusal to subscribe to the Agri Stats's sales reports, ***the most suspicious and suggestive element in this case***, undermines an inference that Hormel knowingly joined the conspiracy.") (emphasis added). Accordingly, the Court's reliance on Agri Stats evidence was outcome-determinative, and it turned on the answer to a legal question—whether a conspiracy can be inferred from subscription to a service that provides historical average price information.[3] That suffices to satisfy the first prong of the certification standard.

The impact of the Court's answer to this controlling legal question was particularly pronounced here because of the weakness of the evidence put forth by Plaintiffs to avoid summary judgment. For example, the Court acknowledged that Defendants' "independent business justifications" for the hog reductions at issue were "compelling," and that, in contrast, Plaintiffs' "evidence of parallel hog reductions is probably the weakest." Order at 48-50. But the Court relied on Agri Stats to compensate for the weaknesses in Plaintiffs' case, including the problems that two of the five allegedly "parallel" sow reductions "were separated by years," and that Plaintiffs' only evidence that the alleged cuts were conspiratorial was their hired expert's say-so. Order at 49 (reasoning that "other evidence" overcame the otherwise-insufficient support for the claimed parallel hog reductions). By contrast, the Court described participation in Agri Stats as, *inter alia*, the issue that "tips

---

[3] The very different outcome in *Broilers* further illustrates that this question is controlling. In part because Judge Durkin answered the same legal question differently than this Court, six defendants, including Agri Stats itself, were granted summary judgment and did not face the threat of company-ending liability at the jury trial held in October 2023. *See Broilers*, 702 F. Supp. 3d at 669-78.

6

the scale in favor of Plaintiffs," Order at 107, the "most telling" plus factor supporting the inference of conspiracy, *id*. at 98, and "the most suspicious and suggestive element in this case," *id.* at 129. Participation in Agri Stats thus ultimately controlled the outcome.

## II. THERE ARE SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION ON THE ANSWER TO THE CONTROLLING LEGAL QUESTION

There are also "substantial ground[s] for difference of opinion" on the answer to the controlling legal question, as the varying outcomes in other courts demonstrate. *See* 28 U.S.C. § 1292(b). Such grounds exist where there are "conflicting and contradictory opinions, or a dearth of authority exists on a particular issue." *Schwendimann*, 2012 WL 5389674, at *3 (citation omitted); *see also, e.g.*, *Watkins Inc. v. McCormick & Co.*, 579 F. Supp. 3d 1118, 1122 (D. Minn. 2022) (concluding "substantial ground" requirement is satisfied where "there is conflicting case law in other jurisdictions and no controlling precedent within the Eighth Circuit"). Here, as the Court has recognized, its conclusion that competitors' participation in Agri Stats gives rise to an inference of an unlawful Section 1 conspiracy stands in direct conflict with the *Broilers* court's resolution of the same question. Order at 67 (acknowledging "disagree[ment]" with *Broilers*). The Court's decision is also at odds with other cases involving similar issues of third-party information services. And the Eighth Circuit has not yet weighed in on the scope of inferences permissible under antitrust law with respect to competitors' participation in third-party information services, leaving an untold number of companies that use comparable services in other industries unclear about the state of the law in this Circuit.

Starting with *Broilers*, the facts there did not differ materially from the facts relevant to the controlling question here. There, as here, the defendants participated in Agri Stats, and the reports that Agri Stats supplied provided only historical pricing averages, not current or competitor-specific price information. *See Broilers*, 702 F. Supp. 3d at 678-79. But, unlike this Court, Judge Durkin concluded that participation in Agri Stats could not support an inference of an unlawful Section 1 conspiracy in the broiler chicken market. As he explained:

> Plaintiffs' argument boils down to the idea that it is irrational to divulge detailed information to Agri Stats knowing that your competitors can deanonymize it and use it against you. But what is irrational is to refrain from participation in Agri Stats when all your competitors are doing so. Greater information exchange alone does not demonstrate a conspiracy. With the information exchange provided by Agri Stats creating the baseline in the Broiler industry, competing businesses participating in Agri Stats could believe that they had to participate in order to keep pace with their competitors and that they would need to work harder to make sure that they took better advantage of the information in the reports than their competitors.

*Id*. at 674-75; *see also id.* at 678 ("Plaintiffs simply have not produced sufficient evidence for a reasonable jury to find by a preponderance of the evidence that Agri Stats agreed with the producer defendants to restrict supply and increase the price of Broilers."). Put simply, Judge Durkin considered essentially the same facts material to the question presented but reached the opposite conclusion on the law.

To be sure, the *Broilers* case arose in a court in a different circuit. But certification does not require an intra-circuit split; it requires only substantial ground for difference of opinion. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 392-93 (S.D.N.Y. 2019) ("substantial difference of opinion" prong met based on disagreement

8

from courts outside the circuit); *Behr v. AADG, Inc.*, No. 14-CV-3075-CJW, 2016 WL 11969653, at *4 (N.D. Iowa Oct. 5, 2016) (substantial ground for difference of opinion based on case law from other circuits where the question presented a complex and novel issue). And the Eighth Circuit has not weighed in on this particular dispute, which reinforces the need for interlocutory review. *See, e.g.*, *Watkins*, 579 F. Supp. 3d at 1122 (substantial ground for difference of opinion where there was "conflicting case law in other jurisdictions and no controlling precedent within the Eighth Circuit"); *Schwendimann*, 2012 WL 5389674, at *4 (substantial ground for difference of opinion based on conflicting related case law and a "dearth of authority" on the issue).[4]

Moreover, while the conflict between this Court's decision and the *Broilers* decision is especially acute, the disagreement over the controlling question of law here extends to the use of third-party information services more broadly. Both the Third and Ninth Circuits, for instance, are currently considering appeals from district court decisions refusing to draw an inference of a Section 1 conspiracy from evidence of participation in or use of a third-party information service. *See Gibson v. Cendyn Grp., LLC*, No. 2:23-cv-00140-MMD-DJA, 2024 WL 2060260, at *9 (D. Nev. May 8, 2024) (concluding that plaintiffs failed to plausibly allege concerted action under Section 1 based on defendants'

---

[4] While the Eight Circuit has not yet had occasion to address the specific context of third-party information services, the Eighth Circuit has held that the direct sharing of actual historic prices between competitors "does not tend to exclude the possibility of independent action." *Blomkest*, 203 F.3d at 1033-34. Although the Court found *Blomkest* distinguishable, Order at 89, there is at the very least serious tension between that decision and this Court's Order, which is all the more reason the Eighth Circuit should be given the opportunity to weigh in now.

9

shared use of algorithmic pricing software where defendants adopted the software at different times and were not obligated to follow its recommendations), *appeal docketed*, No. 24-3576 (9th Cir. June 7, 2024); *Cornish-Adebiyi v. Caesars Ent., Inc.*, No. 1:23-CV-02536-KMW-EAP, 2024 WL 4356188, at *7 (D.N.J. Sept. 30, 2024) (stating, on motion to dismiss, that "independent self-interest [was] an obvious alternative explanation for defendants' common behavior" (quotation marks omitted)), *appeal docketed*, No. 24-3006 (3d Cir. Oct. 29, 2024). Other district courts have reached a contrary conclusion on similar issues related to the application of antitrust law to third-party information services. *See, e.g.*, *Duffy v. Yardi Sys., Inc.*, 758 F. Supp. 3d 1283, 1294 (W.D. Wash. 2024) (denying motion to dismiss claims based on allegation that property management companies used algorithmic pricing software to coordinate rental prices); *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 508 (M.D. Tenn. 2023) (same).

In short, whether participation in a service like Agri Stats gives rise to an inference of a Section 1 conspiracy is a question on which courts not only can, but do, disagree. The second certification factor is therefore satisfied as well.

### III. AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

Finally, an immediate appeal would materially advance the ultimate termination of the litigation. Certification is especially appropriate "where a decision on appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases." *Schwendimann*, 2021 WL 5389674, at *5 (citing *White*, 43 F.3d at 376). "In fact, the certification procedure of 28 U.S.C. § 1292(b) was intended specifically to expedite the

disposition of 'big' cases like [an] MDL," *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1190, 1244 (E.D. Pa. 1980), because an order that "will affect so many cases amplifies the importance of obtaining clarity from the court of appeals," *In re Rail Freight Fuel Surcharge Antitrust Litig.*, No. 11-1049, 2021 WL 2433737 at *12 (D.D.C. June 15, 2021). Accordingly, when permitting an appeal could obviate the need for numerous, duplicative trials and appeals down the road, that weighs strongly in favor of certification. *Compare Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987) (resolving interlocutory appeal on novel issue from approximately 40 consolidated cases), *with Union Cnty. v. Piper Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008) (denying interlocutory appeal where case "lack[ed] novel controlling issues of law and d[id] not consist of a substantial number of consolidated cases").

This MDL thus presents the model case for certification. This case is complex and resource-intensive, involving three consolidated class actions, along with claims from seventy distinct direct action plaintiff ("DAP") groups. As a result of the Order, sixty-four of those DAPs now stand to be remanded to their initial filing courts spread across the country, resulting in a multitude of trials and potential appeals. If the Eighth Circuit disagrees with this Court's resolution of the legal question at hand, and instead shares Judge Durkin's view that participation in Agri Stats is not evidence of a Section 1 conspiracy, permitting certification now could not only significantly narrow the scope of future litigation, but eliminate the need for it entirely. Accordingly, "the ultimate termination of this multidistrict litigation will be materially advanced by an immediate appeal, rather than postponing review until after the individual cases are remanded for trial to district courts

throughout the country." *In re Air Crash off Long Island, N.Y. on July 17, 1996*, 27 F. Supp. 2d 431, 434 (S.D.N.Y. 1998).

An interlocutory appeal will also promote the coordination benefits that are intended by consolidation as a multidistrict litigation. "An appeal before retransfer enhances the likelihood of achieving the coordination benefits sought by § 1407 . . . as the circuit of the § 1407 transferee court can give the issues a unified treatment, and its interlocutory decision is likely to be accepted as binding law of the case once the cases are transferred back to their courts of origin." *Hill v. Henderson*, 195 F.3d 671, 678 (D.C. Cir. 1999); *accord In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ.3288, 2003 WL 22953644, at *8 (S.D.N.Y. Dec. 16, 2003) ("An appropriate appeal while the cases remain consolidated for pre-trial purposes may materially advance the ultimate termination of the litigation by avoiding protracted litigation and multiple appeals in courts throughout the country." (quotation marks omitted)).

The need for interlocutory review is particularly acute, given that the Northern District of Illinois has reached the opposite legal conclusion on the same facts. Twenty-three of the DAPs filed their lawsuits in the Northern District of Illinois.[5] Sending the parties to conduct pretrial and trial proceedings and trials in a jurisdiction that has reached

---

[5] Action Meat Distributors, Inc.; Aldi, Inc.; Alex Lee, Inc. and Merchant Distributors, LLC; Associated Food Stores, Inc.; Brookshire Grocery Company; Butts Foods, LP; Certco, Inc.; Conagra Brands, Inc.; Colorado Boxed Beef Co.; Giant Eagle, Inc.; The Golub Corp.; Gregg Szilagyi (as Chapter 7 Trustee of the estate of Central Grocer's Inc.); Nicholas & Co., Inc.; Pacific Food Distr. Enterprises, Inc.; Quirch Foods, LLC; Quirch Louisiana LLC (f/k/a Scariano Brothers, LLC); SpartanNash Company; Springfield Grocery Company; The Distribution Group d/b/a Van Eerden Foodservice Co.; Topco Associates LLC; UniPro Foodservice, Inc.; URM Store, Inc.; and Troyer Foods, Inc.

12

a directly contrary conclusion on this controlling and overlapping legal question will raise a host of complicated questions and inevitable disputes. *See Drywall*, 2016 WL 2941114, at *3 (noting that whether facts support an inference of conspiracy "may greatly impact trial, including expert testimony, the court's jury charge, and the permissible inferences from the evidence"). The situation will only get more complicated as those issues find their way to multiple different circuits on appeal, heightening the risk of conflicting decisions, all ultimately stemming back to this Court's Order. Resolution of this controlling question by the Eighth Circuit now is thus the best means of achieving an efficient and uniform adjudication of this complex litigation, while providing much-needed guidance about the common use of third-party information services.[6]

## **CONCLUSION**

For these reasons, the Court should certify for interlocutory appeal its April 28, 2025 Amended Order denying Defendants' motions for summary judgment.

---

[6] Certification also would provide helpful guidance on the similar issues regarding the use of Agri Stats' reports that this Court will have to confront in adjudicating the DOJ's civil enforcement action against Agri Stats. *See United States v. Agri Stats, Inc.*, No. 0:23-cv-03009-JRT-JFD (D. Minn.).

Date:  April 29, 2025

**JONES DAY**

*/s/ Peter J. Schwingler*
Peter J. Schwingler (#0388909)
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
(612) 217-8800
pschwingler@jonesday.com

**STINSON LLP**

William L. Greene (#0198730)
William D. Thomson (#0396743)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
william.greene@stinson.com
william.thomson@stinson.com

J. Nicci Warr (*pro hac vice*)
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
(314) 863-0800
nicci.warr@stinson.com

*Counsel for Seaboard Foods LLC*

**LARKIN HOFFMAN DALY & LINDGREN LTD.**

*/s/ Brian Robison*
John A. Cotter (#0134296)
John A. Kvinge (#0392303)
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55427-1060
(952) 835-3800
jcotter@larkinhoffman.com
jkvinge@larkinhoffman.com

Respectfully submitted,

**AXINN, VELTROP & HARKRIDER LLP**

*/s/ Tiffany Rider Rohrbaugh*
Tiffany Rider Rohrbaugh (*pro hac vice*)
Lindsey Strang Aberg (*pro hac vice*)
1901 L Street NW
Washington, DC 20036
(202) 912-4700
trider@axinn.com
lstrang@axinn.com

Denise L. Plunkett (*pro hac vice*)
630 Fifth Avenue, 33rd Floor
New York, NY 10111
(212) 728-2200
dplunkett@axinn.com

Jarod Taylor (*pro hac vice*)
90 State House Square
Hartford, CT 06103
(860) 275-8100
jtaylor@axinn.com

**TAFT STETTINIUS & HOLLISTER LLP**

Scott M. Rusert (#0231113)
A. Christopher Brown (#0403283)
SRusert@taftlaw.com
CBrown@taftlaw.com
2200 IDS Center 80 South 8th Street
Minneapolis, MN 55402-2210
(612) 977-8400

*Counsel for Tyson Foods, Inc.; Tyson Fresh Meats, Inc.; and Tyson Prepared Foods, Inc.*

14

**MILBANK LLP**

Richard Parker (*pro hac vice*)
1850 K St. NW
Washington, DC 20006
(202) 835-7530
rparker@milbank.com

**GIBSON, DUNN & CRUTCHER, LLP**

Josh Lipton (*pro hac vice*)
1700 M Street, NW
Washington, D.C. 20036-4504
(202) 955-8500
jlipton@gibsondunn.com

**BROWN FOX PLLC**

Brian Robison (*pro hac vice*)
6303 Cowboys Way, Suite 450
Frisco, TX 75034
(972) 707-1809
brian@brownfoxlaw.com

*Counsel for Smithfield Foods, Inc.*


**SPENCER FANE LLP**

*/s/ Donald G. Heeman*
Donald G. Heeman (#0286023)
Randi J. Winter (#0391354)
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402-4206
(612) 268-7000
dheeman@spencerfane.com
rwinter@spencerfane.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Sami H. Rashid (*pro hac vice*)
Michael B. Carlinsky (*pro hac vice*)

**KIRKLAND & ELLIS LLP**

*/s/ Daniel E. Laytin, P.C.*
Daniel Laytin, P.C. (*pro hac vice*)
Christa Cottrell, P.C. (*pro hac vice*)
Jenna M. Stupar (*pro hac vice*)
Amarto Bhattacharyya (*pro hac vice*)
Nicholas M. Ruge (*pro hac vice*)
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
daniel.laytin@kirkland.com
christa.cottrell@kirkland.com
jenna.stupar@kirkland.com
amarto.bhattacharyya@kirkland.com
nicholas.ruge@kirkland.com

*Counsel for Clemens Food Group, LLC and The Clemens Family Corporation*


**HOGAN LOVELLS US LLP**

*/s/ Justin W. Bernick*
Peter H. Walsh (#0388672)
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
(612) 402-3000
peter.walsh@hoganlovells.com
William L. Monts (*pro hac vice*)
Justin W. Bernick (*pro hac vice*)
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Agri Stats, Inc.*

| | |
|---|---|
| David B. Adler (*pro hac vice*)<br>Heather Christenson (*pro hac vice*)<br>Allison Silber (*pro hac vice*)<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>samirashid@quinnemanuel.com<br>michaelcarlinsky@quinnemanuel.com<br>davidadler@quinnemanuel.com<br>heatherchristenson@quinnemanuel.com<br>allisonsilber@quinnemanuel.com<br><br>Michael D. Bonanno (*pro hac vice*)<br>Christopher G. Michel (*pro hac vice*)<br>1300 I Street NW, Suite 900<br>Washington, D.C. 20005<br>Telephone: (202) 538-8000<br>Facsimile: (202) 538-8100<br>mikebonanno@quinnemanuel.com<br>christophermichel@quinnemanuel.com<br><br>*Counsel for JBS USA Food Company* | **HUSCH BLACKWELL LLP**<br><br>*/s/ Christopher A. Smith*<br>Aaron Chapin (#0386606)<br>Christopher A. Smith (*pro hac vice*)<br>Tessa K. Jacob (*pro hac vice*)<br>A. James Spung (*pro hac vice*)<br>Jason Husgen (*pro hac vice*)<br>Sarah L. Zimmerman (MDL registered)<br>Kate Ledden (MDL registered)<br>Tanner Cook (MDL registered)<br>8001 Forsyth Blvd., Ste. 1500<br>St. Louis, MO 63105<br>Telephone: (314) 480-1500<br>aaron.chapin@huschblackwell.com<br>chris.smith@huschblackwell.com<br>tessa.jacob@huschblackwell.com<br>james.spung@huschblackwell.com<br>jason.husgen@huschblackwell.com<br>sarah.zimmerman@huschblackwell.com<br>kate.ledden@huschblackwell.com<br>tanner.cook@huschblackwell.com<br><br>*Counsel for Triumph Foods, LLC* |