# UNITED STATES DISTRICT COURT
# DISTRICT COURT OF MINNESOTA

IN RE PORK ANTITRUST
LITIGATION


This Document Relates To:

THE DIRECT PURCHASER
PLAINTIFF CLASS ACTION

Case No. 18-cv-01776 (JRT-JFD)

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR
FINAL APPROVAL OF THE
CLASS ACTION SETTLEMENTS
BETWEEN DIRECT
PURCHASER PLAINTIFFS AND
THE TYSON, CLEMENS, AND
TRIUMPH DEFENDANTS**

1035601.7

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.  INTRODUCTION ............................................................................. 1

II.  LITIGATION BACKGROUND ......................................................... 2

III.  SUMMARY OF THE SETTLEMENTS AND NOTICE ...................... 6

    A.  Settlement Negotiations and Terms .................................... 6

    B.  The Court-Approved Notice Plan Has Been Implemented and No Class Member Has Objected to the Settlements ........................... 9

IV.  LEGAL ARGUMENT ................................................................... 10

    A.  The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented .............................................. 10

    B.  The Settlements Satisfy the Standard for Final Approval .......... 12

V.  CONCLUSION ............................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987)............................................................................10

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)......................................................................................11

*Christina A. v. Bloomberg*,
    No. Civ. 00-4036, 2000 WL 33980011 (D.S.D. Dec. 13, 2000) ...........................15

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005)..............................................................14

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ........................................................................16

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) ...................................................................13, 16

*E.E.O.C. v. Faribault Foods, Inc.*,
    Civ. Nos. 07-3976, 07-3986, 07-3977, 07-3985, 2008 WL 879999
    (D. Minn. Mar. 28, 2008)..............................................................................16

*In re Employee Benefit Plans Sec. Litig.*,
    No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) .............................14, 15

*Ficalora v. Lockheed Cal. Co.*,
    751 F.2d 995 (9th Cir. 1985) ........................................................................14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)............................................................................12

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975) ........................................................................12

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002)........................................................................18

*Martin v. Cargill, Inc.*,
    295 F.R.D. 380 (D. Minn. 2013)......................................................................14

*MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.*,
    546 F.3d 533 (8th Cir. 2008) ........................................................................12

iii

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ...................................................................10, 12, 16

*In re Rambus Inc. Derivative Litig.*,
  No. C 06-3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ...................................18

*In re Shopping Carts Antitrust Litig.*,
  MDL No. 451, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) .....................................17

*In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*,
  631 F. Supp. 2d 1151 (D. Minn. 2009)....................................................13, 14, 16

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988) ...................................................................13

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005)...................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)..............................................................16, 17, 18

*Welsch v. Gardebring*,
  667 F. Supp. 1284 (D. Minn. 1987) ...........................................................15

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
  No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013)...........................15

## Other Authorities

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, §§ 11.22 (4th ed. 2002) .............13

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................10, 11

Fed. R. Civ. P. 23(e)(1)(A) ...................................................................13

*Manual for Complex Litigation*, § 21.632 (4th ed. 2004)...........................................13

## I. __INTRODUCTION__

The Direct Purchaser Plaintiffs ("DPPs") seek final approval of their Settlement Agreements[1] with the Tyson,[2] Clemens,[3] and Triumph[4] Defendants. Pursuant to the Settlement Agreements, each of the Settling Defendants have funded separate, interest-bearing escrow accounts: Tyson paid $50 million,[5] Clemens paid $10 million, and Triumph paid $4 million. These settlements total $64 million, and bring the total amount recovered by the DPP Class in the action to $180,470,300. (*See* Declaration of Michael H. Pearson ("Pearson Decl.") filed concurrently herewith, at ¶ 12.) These Settlements provide the DPP Certified Class[6] with significant and substantial relief, and resolve all claims in this litigation against the Pork integrator Defendants, with only Defendant Agri Stats, Inc. remaining.

In granting preliminary approval of the Settlements, the Court found they fell within the range of reasonableness and ordered notice to be provided to the Class members. *See*

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as in the Settlement Agreements (ECF Nos. 2945-1, 2945-2, 2945-3, also referred to herein as "Settlements").

[2] Tyson Foods, Inc., Tyson Prepared Foods, Inc., and Tyson Fresh Meats, Inc. (collectively, "Tyson").

[3] Clemens Food Group, LLC and The Clemens Family Corporation (collectively, "Clemens").

[4] Triumph Foods, LLC ("Triumph," and with Tyson and Clemens, the "Settling Defendants").

[5] The Settlement Agreement with Tyson also provides that Tyson will separately pay up to $2 million for notice and administration costs.

[6] The term "Class" or "Certified Class" is consistent with the definition of the term in the Court's Order granting class certification and Preliminary Approval Order. (*See* ECF No. 1887; ECF No. 2959 ("Preliminary Approval Order") at 3.)

Preliminary Approval Order at 4-5. Co-Lead Class Counsel[7] and A.B. Data Ltd., the Court-appointed claims administrator,[8] have executed the Notice Plan in accordance with the Court's Preliminary Approval Order. (Pearson Decl. ¶ 13.) The reaction of the Class members has been uniformly positive, with no member of the Certified Class objecting to the Settlements.[9] (Declaration of Tracy Hanson ("Hanson Decl.") filed concurrently herewith at ¶ 19; Sections IV.A and IV.B.4 below.)[10]

This process has confirmed that the Settlements are fair, reasonable, and adequate, and should be granted final approval by the Court. These Settlements provide substantial relief to the Class members while eliminating the risk, uncertainty, and expense of continuing litigation against the Settling Defendants. DPPs therefore respectfully request that the Court grant final approval to the Settlement Agreements and enter final judgment.

## II.    LITIGATION BACKGROUND

This is an antitrust class action against certain producers of Pork. DPPs filed their class action lawsuit on June 29, 2018, and it and related cases were consolidated before Judge John R. Tunheim in this Court. DPPs allege that Defendants combined and conspired

---

[7] Co-Lead Class Counsel are Lockridge Grindal Nauen PLLP and Pearson Warshaw, LLP. *See* ECF No. 1887 at 5. Co-Lead Class Counsel was appointed Class Counsel of the Settlements. *See* Preliminary Approval Order at 4.

[8] Preliminary Approval Order, at 4.

[9] As these Settlements were on behalf of the Certified Class and occurred after the deadline to opt out of the Certified Class, no additional opportunity for Class members to opt out of the Settlements was provided. *See* Preliminary Approval Order at 3.

[10] The DPP Class was simultaneously provided notice of DPPs' Motion for Payment of Attorneys' Fees and Class Representative Service Awards, ECF No. 3020. There were no objections to that motion.

to fix, raise, maintain, or stabilize prices of Pork sold in the United States in violation of the Sherman Act, 15 U.S.C. § 1. (*See generally* DPP Third Consolidated and Amended Complaint, ECF No. 431.) DPPs allege that Defendants implemented their conspiracy in various ways, including via coordinated supply restrictions, sharing competitively sensitive price and production information, and otherwise manipulating Pork prices. (*Id.*)[11]

Defendants moved to dismiss all Plaintiffs' complaints. In August 2019, the Court granted their motions and granted Plaintiffs leave to amend. (ECF No. 360.) DPPs amended their complaint, and after extensive briefing by the parties, on October 16, 2020, the Court largely denied Defendants' motions to dismiss. (ECF No. 519, *amended* Oct. 20, 2020, ECF No. 520.)

Since the initial complaint was filed, DPPs have continued their factual investigation into the conspiracy alleged in their complaint, and once the Court largely denied Defendants' motions to dismiss Plaintiffs' complaints, DPPs commenced extensive discovery. (*See* Pearson Decl. ¶ 3.) During discovery, DPPs obtained responses to multiple sets of interrogatories, and received millions of documents in response to their requests for production and third-party subpoenas. (*See Id.* ¶ 4.) DPPs, along with other plaintiffs, have taken dozens of depositions of the Defendants and third parties. (*Id.*) DPPs have also

---

[11] Unlike other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice or the assistance of a leniency applicant under the Department of Justice's Corporate Leniency Program. *See* Corporate Leniency Policy, U.S. Dep't of Justice, https://www.justice.gov/atr/corporate-leniency-policy.

provided responses to written discovery, produced documents, and DPPs' named representatives have appeared for depositions noticed by the Defendants. (*Id.*)

On March 29, 2023, the Court certified the following DPP Class:

All persons and entities who directly purchased one or more of the following types of pork, or products derived from the following types of pork, from Defendants, or their respective subsidiaries or affiliates, for use or delivery in the United States from June 29, 2014 through June 30, 2018: fresh or frozen loins, shoulders, ribs, bellies, bacon, or hams. For this lawsuit, pork excludes any product that is marketed as organic or as no antibiotics ever (NAE); any product that is fully cooked or breaded; any product other than bacon that is marinated, flavored, cured, or smoked; and ready-to-eat bacon.

Excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

ECF No. 1887 at 4-5, and at 69 (granting class certification).

On March 31, 2025, the Court denied motions for summary judgment brought by all remaining Defendants in the DPP case (Tyson, Clemens, Triumph, and Agri Stats). *See* ECF No. 2929. At the time of the proposed Tyson, Clemens, and Triumph Settlements, trial was set for June 2, 2025.

These latest three Settlements are in addition to four settlements DPPs previously reached in this case. On November 17, 2020, DPPs and the JBS Defendants entered into a settlement that provided for a payment of $24,500,000 and meaningful cooperation. (Pearson Decl. ¶ 5.) The Court granted final approval of that settlement on July 26, 2021. (*See* ECF No. 838.) On June 29, 2021, DPPs and the Smithfield Defendants entered into a

settlement that provided for a payment of $83 million[12] and meaningful cooperation. (Pearson Decl. ¶ 5.) The Court granted final approval of that settlement on January 31, 2022. (*See* ECF No. 1154.) On June 12, 2023, DPPs and Seaboard Foods LLC entered into a settlement that provided for a payment of $9,750,000 and meaningful cooperation. (Pearson Decl. ¶ 5.) The Court granted final approval of that settlement on March 5, 2024. (*See* ECF No. 2137.) On March 29, 2024, DPPs and Hormel Foods Corporation entered into a settlement that provided for a payment of $4,856,000 and meaningful cooperation. (Pearson Decl. ¶ 5.) The Court granted final approval of that settlement on October 3, 2024. (*See* ECF No. 2618.) Notice to the DPP Class of these prior settlements was approved by the Court and successfully implemented by A.B. Data, Ltd. (the Court-appointed Settlement Administrator, *see* ECF Nos. 631, 845, 2014, 2218) each time. (*See* ECF Nos. 838, 1154, 2137, 2618.)

As with these prior approved settlements, DPP Co-Lead Class Counsel performed a thorough investigation prior to reaching these proposed Settlements with the Settling Defendants and, given that the case has proceeded for nearly seven years, and that class certification proceedings, fact discovery, and summary judgment proceedings were completed by the time of the Settlements, Co-Lead Class Counsel were well informed by the time the parties agreed to settle. (*See* Pearson Decl. ¶ 8.) These Settlements, the terms

---

[12] The Smithfield settlement was subject to a $5,635,700 reduction based on the opt-outs received during the settlement administration process. The total net amount paid by Smithfield equaled $77,364,300. (*See* Pearson Decl. ¶ 5.)

of which are detailed in this brief and the supporting documents, represent a significant recovery for DPPs based on the record.

### III.     SUMMARY OF THE SETTLEMENTS AND NOTICE

####     A.     Settlement Negotiations and Terms

The parties to the Settlements have had ample opportunity to assess their claims and defenses through investigation, discovery, research, settlement discussions, and contested motion practice, including motions for summary judgment, and to balance the value of Certified Class members' claims against the substantial risks and expense of continuing litigation. The proposed Settlements come after extensive confidential, protracted arm's-length negotiations between Co-Lead Class Counsel and each of the Settling Defendants, separately. (*See* Pearson Decl. ¶ 8.) The hard-fought negotiations were kept confidential as the parties vigorously litigated the case, including during the time that the motions for summary judgment were being argued and under submission. (*Id*.) The negotiations included many conferences and written exchanges between counsel. (*Id*.) The parties ultimately executed the Settlement Agreements in April of 2025. (*See id*. ¶¶ 8, 9-11); *see also* Settlement Agreements.) The Settlement Agreements do not contain any reduction or termination provisions. Throughout all of these settlement discussions, counsel for DPPs focused on obtaining the best possible result for the DPP Certified Class. (*Id*. ¶ 8.)

With regard to Tyson, in addition to the negotiations generally described above, the parties utilized the services of Judge Daniel Weinstein (ret.), a nationally renowned mediator. (Pearson Decl. ¶ 9.) The settlement negotiations with Tyson were thorough and extensive. With the assistance of Judge Weinstein, DPPs and Tyson exchanged mediation

briefs, made presentations addressing the merits of the case, and exchanged settlement offers and demands. (*Id*.) This process included numerous conferences with Judge Weinstein and his team, two videoconference mediations, as well as other discussions. (*Id*.) None of these efforts resulted in a settlement, and there were times when it appeared that the parties had reached an impasse. (*Id*.) Following the Court's Order on Defendants' motions for summary judgment (ECF No. 2929), the parties continued to negotiate regarding the settlement terms, ultimately executing the Tyson Settlement Agreement on April 15, 2025. (*See* Tyson Settlement Agreement; *see also* Pearson Decl. ¶ 9.)

Separately, Co-Lead Class Counsel conducted confidential settlement negotiations with counsel for Clemens and Triumph. These negotiations occurred while the parties continued to vigorously litigate the case. There was no collusion or preferential treatment at any time during the negotiations. (*See* Pearson Decl. ¶ 8.) Pursuant to the Settlement Agreement, Clemens paid $10 million in monetary relief, and the parties executed the Clemens Settlement Agreement on April 21, 2025. (*Id*. ¶ 10.) Pursuant to the Settlement Agreement, Triumph paid $4 million in monetary relief, and the parties executed the Triumph Settlement Agreement on April 17, 2025. (*Id*. ¶ 11.)

In consideration for these settlement benefits, DPPs and the Certified Class agree to release certain Released Claims (as defined in the Settlement Agreements) against the Tyson, Clemens, and Triumph Released Parties (as defined in the Settlement Agreements). *See* Settlement Agreements ¶¶ 10, 14, 15. The release in each of the Settlements does not extend to any other Defendants or co-conspirators, or to unrelated claims for breach of

contract, negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claims. *Id.* ¶¶ 14, 15.

The Settlements (with accrued interest) will be used to: (1) pay notice costs and costs incurred in the administration of the Settlements and distribution of Settlements; (2) pay taxes and tax-related costs associated with the escrow account for proceeds from the Settlements; (3) make a distribution to Class members in accordance with a proposed plan of distribution (to be filed in the future and approved by the Court); (4) pay any Court-awarded attorneys' fees and expenses to Counsel for the Class (*see* ECF No. 3020); and (5) pay any Court-awarded service awards to the named Plaintiffs (*id.*). DPPs intend to distribute settlement proceeds to qualified Class members in the near future. In a separate motion, DPPs will move the Court to approve a plan to distribute net settlement proceeds from the settlements with Seaboard, Hormel Foods, Tyson, Clemens, and Triumph (which total $78,606,000 plus interest).[13]

In sum, the Settlement Agreements: (1) are the result of extensive good faith negotiations between knowledgeable and skilled counsel; (2) were entered into after

---

[13] Proceeds from the JBS and Smithfield settlements have already been distributed to qualified claimants. (*See* ECF No. 2204.) Therefore, the second claims process and distribution will be limited to payment *pro rata* from the previously approved settlements with Seaboard and Hormel Foods, and from these proposed settlements with Tyson, Clemens, and Triumph. The Notice Plan informed DPP Class members that unless they wanted to amend or supplement their initial claim, those who previously submitted a qualified claim in the first claims process could rely on the information in that claim to receive their *pro rata* portion of net settlement proceeds in subsequent distributions. Class members who did not participate in the first claims process had the opportunity to submit Claim Forms via mail, email, or using the Settlement Website. Class members can review their Pork purchase records, based on Defendants' records, on the settlement website.

extensive factual investigation and legal analysis; and (3) in the opinion of experienced Co-Lead Class Counsel, are fair, reasonable, and adequate. Co-Lead Class Counsel believes the Settlements are in the best interests of the Class members and warrant the Court's approval. (Pearson Decl. ¶ 16.)

### B. The Court-Approved Notice Plan Has Been Implemented and No Class Member Has Objected to the Settlements

The Court entered the Preliminary Approval Order on April 28, 2025, and approved sending notice of the proposed Settlements to the Class. ECF No. 2959. Pursuant to the Preliminary Approval Order, DPPs sent notice to all known Class members of the proposed Settlements and the fairness hearing to be held on August 13, 2025. The Claims Administrator, A.B. Data Ltd., using customer information obtained from Defendants, mailed 42,778 print notices and emailed 1,399 electronic notices to potential class members. (*See* Hanson Decl. ¶¶ 11, 13.) On a public website dedicated to this litigation, www.porkantitrustlitigation.com, the Claims Administrator also posted notice of the claims and objection deadline (June 11, 2024) and many other case-related documents, including the full text of the Settlement Agreements, instructions on how to participate in the Court's fairness hearing, instructions on how to object to the Settlements and/or the Motion for Payment of Attorneys' Fees and Class Representative Service Awards, and other details regarding the Settlements and the approval process. (*Id*. ¶ 17.) The Claims Administrator has also operated a toll-free telephone number to address Class member questions. (*Id.* ¶ 18.)

Importantly, and as explained in Section IV.A and B.4 below, no Class member has objected to the proposed Settlements. (Pearson Decl. ¶ 14; Hanson Decl. ¶ 19.)

Each of the Settling Defendants notified the appropriate federal and state officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b), which requires that appropriate federal and state officials (in this case, the U.S. and state attorneys general) be notified of any proposed class action settlement. The statute provides that a court may not grant final approval to a proposed settlement sooner than 90 days after such notice is served. The 90-day waiting period has passed, and none of the notified federal or state officials have objected to or otherwise commented on the proposed Settlements. (Hanson Decl. ¶¶ 4 (Triumph), 8 (Clemens); ECF No. 2992 (Tyson).)

## IV.    LEGAL ARGUMENT

### A.    The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented

When a proposed class action settlement is presented for court approval, the Federal Rules require "the best notice that is practicable under the circumstances," and that certain specifically identified items in the notice be "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). A settlement notice is a summary, not a complete source of information. *See, e.g.*, *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988).

The Notice Plan approved by this Court (*see* Preliminary Approval Order at 4-5)—which relies primarily on direct notice to Class members supplemented by publication

notice—is commonly used in class actions like this one. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting Fed. R. Civ. P. 23(c)(2)); Fed. R. Civ. P. 23(c)(2)(B). It constitutes valid, due, and sufficient notice to class members, and is the best notice practicable under the circumstances. The content of the Court-approved notice complies with the requirements of Rule 23(c)(2)(B). Both the summary and long-form notice clearly and concisely explained in plain English the nature of the action and the terms of the Settlements. (*See* Hanson Decl. ¶ 14.) The notices provided a clear description of who is a member of the Class and the binding effects of Class membership. (*Id.*) They also explained how to exclude oneself from the Class, how to object to the Settlements, and how to contact Co-Lead Class Counsel. (*Id.*) The notices also explained that they provided only a summary of the Settlements, and that the Settlement Agreements and other important litigation documents are available online at www.porkantitrustlitigation.com. (*See id.*) In addition, the information from that website, as well as the toll-free call-in number for the Settlements, were available in both English and Spanish. (*See id.* ¶¶ 17, 18.) Consequently, every provision of the Settlements was available to each Class member.

The Notice Plan was implemented by the Court-appointed settlement administrator, A.B. Data Ltd. (*See* Preliminary Approval Order at 4.) Specifically, using customer information obtained from Defendants, A.B. Data Ltd. mailed 42,778 print notices and emailed 1,399 electronic notices to potential class members. (*See* Hanson Decl. ¶¶ 11, 13.) A.B. Data Ltd. also published notice in print (Supermarket News and Nation's Restaurant News, June 2025) and on multiple websites for 30 days, including Supermarket News (www.supermarketnews.com) and Nation's Restaurant News (www.nrn.com). (*See id.* ¶¶

15, 16.) In addition, A.B. Data Ltd. continues to maintain the case website, where Class members can view and print important documents and obtain other information related to the litigation. (*See id.* ¶ 17.) A.B. Data Ltd. also continues to maintain a toll-free call-in number to answer Class members' questions. (*See id.* ¶ 18.)

As these Settlements were on behalf of the Certified Class and occurred after the deadline to opt out of the Certified Class, no additional opportunity for Class members to opt out of the Settlements was provided. (*See* Preliminary Approval Order at 3.)

The Court set June 11, 2025, as the deadline for Class members to object to the Settlements. (Preliminary Approval Order at 7.) No Class member has objected to the proposed Settlements. (Pearson Decl. ¶ 14; Hanson Decl. ¶ 19.)

## B.    The Settlements Satisfy the Standard for Final Approval

Whether a proposed settlement should be approved is within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of controversies, particularly in the context of class action lawsuits. *See MSK Eyes, Ltd. v. Wells Fargo Bank, N.A.*, 546 F.3d 533, 541 (8th Cir. 2008) (noting "strong public policy of encouraging settlement"); *Petrovic*, 200 F.3d at 1148 ("[S]trong public policy favors agreements, and courts should approach them with a presumption in their favor.") (internal citation omitted); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation[.]"); *Grunin v. Int'l House of*

*Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) (approval of a settlement "is committed to the sound discretion of the trial judge").

Review of a proposed settlement generally proceeds in two stages: first, preliminary approval, followed by a fairness hearing on final approval. *See Manual for Complex Litigation*, § 21.632 (4th ed. 2004). Between preliminary and final approval, in this case the class was notified of the proposed settlement and given an opportunity to object to the settlement and to appear at the fairness hearing if they choose. This procedure safeguards class members' procedural due process rights and enables courts to fulfill their roles as guardians of class interests. *See* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, §§ 11.22, *et seq.* (4th ed. 2002).

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, before a class action may be settled, voluntarily dismissed or compromised, the court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(A); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (quoting *Grunin*, 513 F.2d at 123); *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995). In determining whether a settlement is fair, reasonable, and adequate, courts in the Eighth Circuit examine a range of factors, which typically include: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d 1151, 1156 (D. Minn. 2009). The court must also assess whether a proposed settlement is "within the range

of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin v. Cargill, Inc*., 295 F.R.D. 380, 383 (D. Minn. 2013).

This Court preliminarily approved the Settlements and now, DPPs respectfully submit, it should grant final approval.

### 1.    The Settlements were Negotiated at Arm's-Length and have the Support of Experienced Class Counsel

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties[.]" *Ficalora v. Lockheed Cal. Co*., 751 F.2d 995, 997 (9th Cir. 1985); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("[P]rior to approving settlement . . . the court must determine there has been no fraud or collusion in arriving at the settlement agreement[.]").

If a settlement is negotiated at arm's length, there is a presumption that the settlement is procedurally sound. *See, e.g.*, *In re UnitedHealth Grp. Inc. Shareholder Derivative Litig*., 631 F. Supp. 2d at 1158 ("Where sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.") (quoting *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)). Indeed, courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g.*, *In re Employee Benefit Plans Sec. Litig*., No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2,

1993) (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .'") (citation omitted).

Here, there is no dispute that the proposed Settlements are the product of extensive, arm's length negotiations. (*See* Section III.A above.) The parties have had ample opportunity to assess the merits of DPPs' claims and the Settling Defendants' defenses through investigation, research, settlement discussions and contested motion practice, and to balance the value of Class members' claims against the substantial risks and expense of continuing litigation. (*See* Pearson Decl. ¶ 8.)

Further, "[t]he court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Benefit Plans Sec. Litig.*, 1993 WL 330595, *5 (citation omitted); *see also Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight" to opinions of experienced counsel). Indeed, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *Christina A. v. Bloomberg*, No. Civ. 00-4036, 2000 WL 33980011, *4 (D.S.D. Dec. 13, 2000) ("The Court attributes significant weight to Plaintiffs' attorney's assertion that the Settlement Agreement is fair, reasonable and provides significant benefits to the Plaintiff class. Indeed, Plaintiffs' lead attorney . . . based this assertion on his 22 years of experience in this field and his participation in similar

cases in 15 other states."). Co-Lead Counsel's approval of a settlement weighs in favor of the settlement's fairness. *E.E.O.C. v. Faribault Foods, Inc.*, Civ. Nos. 07-3976, 07-3986, 07-3977, 07-3985, 2008 WL 879999, *4 (D. Minn. Mar. 28, 2008); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005).

When, as here, experienced counsel represent the parties, and rigorous negotiations were conducted at arms' length, the judgment of the litigants and their counsel concerning the adequacy of the Settlement should be considered. *See Petrovic*, 200 F.3d at 1149; *DeBoer*, 64 F.3d at 1178. Co-Lead Class Counsel unequivocally believes the Settlements are in the best interests of the Class members and should be approved by the Court. (*See* Pearson Decl. ¶ 16.)

## 2. The Settlements Provide Significant Relief to the Class

The Settlement Agreements provide substantial monetary relief to the Class and fall well within the range of possible approval. The Settling Defendants have paid $64 million into separate interest-bearing escrow accounts. (*See* Pearson Decl. ¶¶ 9-11.) These payments remove any concerns about the ability to pay the settlement amount. *See In re UnitedHealth Grp. Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d at 1156.

## 3. The Settlements Eliminate Significant Risk to a Class Facing a Complex, Lengthy, and Expensive Trial

Courts consistently hold that the complexity, expense, and likely duration of litigation are all factors supporting approval of a settlement. *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir. 1981). In particular, "antitrust cases, by their nature, are highly complex." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d

96, 122 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044 (2005); *In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 WL 1950, *6 (S.D.N.Y. Nov. 18, 1983) ("[A]ntitrust price fixing actions are generally complex, expensive and lengthy.").

This case is no different. While the DPPs believe their case is strong, the Settlements eliminate significant risks they would face if they continued to litigate against the Settling Defendants, including the complexity, length and expense of these types of litigations. Indeed, as reflected in the extensive docket, this case is more than seven years old, and the DPPs have expended significant effort to defeat motions to dismiss, conduct extensive discovery, litigate class certification, prevail at summary judgment, and plan and prepare for trial. The Settlements allow Class members to recover significant sums from the remaining integrator Defendants. Absent settlement, the DPPs would need to go to trial, and bear the burden of establishing liability, impact and damages before obtaining any recovery from the Settling Defendants. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 118 ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'") (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998)). Continued litigation against the Settling Defendants would involve significant additional expenses and protracted legal battles.

Therefore, the complexity, length and expense of further litigation, which the Settlements eliminate, also favor final approval.

### 4.    Class Members Support the Settlements

As discussed in Section IV.A, A.B. Data Ltd. implemented the Notice program as Ordered by this Court. (*See* Preliminary Approval Order at 4-5.) Both the mailed notice and the case website informed Class members of the terms of the Settlements and the June 11, 2025 deadline for objections. (Preliminary Approval Order at 7.) No Class member has objected. (*See* Pearson Decl. ¶ 14.)

That no Class member has objected is an impressive result for a settlement of this prominence and for such a class of sophisticated businesses and individuals. The Class's overwhelming affirmation strongly supports the fairness and reasonableness of the Settlements. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (finding that "the settlement group's reaction to this settlement has been overwhelmingly positive and supports approval" and that "[t]he existence of a relatively few objections certainly counsels in favor of approval"); *In re Rambus Inc. Derivative Litig.*, No. C 06-3513, 2009 WL 166689, *3 (N.D. Cal. Jan. 20, 2009) ("The reaction of the class to the proffered settlement . . . is perhaps the most significant factor to be weighed in considering its adequacy . . . .") (internal quotations and brackets omitted).

## V.    CONCLUSION

For these reasons, Co-Lead Class Counsel respectfully request that the Court grant final approval to the Tyson, Clemens, and Triumph Settlement Agreements.

Date:  July 30, 2025

/s/ Michael H. Pearson
Clifford H. Pearson (*Pro Hac Vice*)
Daniel L. Warshaw (*Pro Hac Vice*)
Bobby Pouya (*Pro Hac Vice*)
Michael H. Pearson (*Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
*cpearson@pwfirm.com*
*dwarshaw@pwfirm.com*
*bpouya@pwfirm.com*
*mpearson@pwfirm.com*

Melissa S. Weiner (MN #0387900)
**PEARSON WARSHAW, LLP**
328 Barry Avenue South
Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
*mweiner@pwfirm.com*

*Direct Purchaser Plaintiffs Co-Lead Class Counsel*

/s/ Brian D. Clark
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Joseph C. Bourne (MN #0389922)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
*wjbruckner@locklaw.com*
*bdclark@locklaw.com*
*jcbourne@locklaw.com*