UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 0:18-cv-1776-JRT-JFD |
| This Document Relates to:<br><br>All Consumer Indirect Purchaser Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT BETWEEN THE CONSUMER INDIRECT PURCHASER PLAINTIFFS AND TYSON FOODS, INC., TYSON FRESH MEATS, INC., AND TYSON PREPARED FOODS, INC.**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | SUMMARY OF LITIGATION TO DATE | 2 |
| III. | SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS | 3 |
| IV. | THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL | 4 |
| | A. The Settlement was reached in arms-length negotiations between experienced and capable counsel. | 5 |
| | B. Consumer IPPs have had adequate opportunity to assess the merits of their claims and Tyson's defenses. | 6 |
| | C. The Settlement Provides Significant Relief to the Class | 6 |
| V. | THE COURT HAS CERTIFIED A LITIGATION CLASS | 7 |
| VI. | REQUEST TO DEFER NOTICE | 8 |
| VII. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Cases**

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995)..................................................................................5

*Grier v. Chase Manhattan Auto Fin. Co.*,
   No. A.99-180, 2000 WL175126 (E.D. Pa. Feb. 16, 2000) ..............................5

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975)..................................................................................5

*In re Emp. Benefit Plans Sec. Litig.*,
   Civ. No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) .....................5

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   No. 08- MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013)..................5

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999)................................................................................5

*White v. Nat'l Football League*,
   822 F. Supp. 1389 (D. Minn.1993) ......................................................................4

*White v. Nat'l Football League*,
   836 F. Supp. 1458 (D. Minn. 1993) .....................................................................5

**Rules**

Fed. R. Civ. P. 23(e)(1)(B)(i) ...............................................................................4

Fed. R. Civ. P. 23(e)(2) .........................................................................................4

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................6

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................................7

Rule 23(c)(2)(B) ............................................................................................... 8, 9

**Other Authorities**

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.) ...............7

I. **INTRODUCTION**

The Consumer Indirect Purchaser Plaintiffs ("Consumer IPPs") move the Court for preliminary approval of the fifth settlement[1] reached in this case, with Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc. (together and separately, "Tyson"). The Settlement provides $85,000,000 (eighty-five million U.S. dollars) in monetary relief to the consumer indirect purchaser class bringing total recovery, thus far, for the Consumer IPP class to $207,965,000 (two-hundred and seven million, nine hundred and sixty-five thousand U.S. dollars). This Settlement is in addition to the: (1) $20 million settlement reached between the Consumer IPPs and Defendants JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company (collectively, "JBS"); (2) the $75 million settlement reached between the Consumer IPPs and Defendant Smithfield Foods, Inc. ("Smithfield"); (3) the $4.465 million settlement reached between the Consumer IPPs and Defendant Hormel ("Hormel"); (4) the $10 million settlement reached between the Consumer IPPs and Defendant Seaboard Foods LLC; and (5) the $13.5 million settlement reached between the Consumer IPPs and Defendants Clemens Food Group, LLC, The Clemens Family Corporation, and Hatfield Quality Meats ("Clemens"). This settlement is the result of arm's-length negotiations and provides substantial monetary relief to the Consumer IPP class. The Consumer IPPs request that this Court grant preliminary approval of the settlement and certify the proposed settlement class.

---

[1] The Non-Settled Defendants in the Consumer IPPs' action are: (i) Agri Stats, Inc. ("Agri Stats"); and (ii) Triumph Foods, LLC ("Triumph").

1

## II. SUMMARY OF LITIGATION TO DATE

Consumer IPPs – the first to file a complaint against the pork industry – have been litigating this case diligently for more than seven years. This Court is familiar with the allegations, having certified the consumer indirect purchaser Class on March 29, 2023 and ruled on the parties' summary judgment motions in March of this year. The Consumer IPPs allege that the pork processors stabilized the price and supply of the price of pork through the use of Agri Stats, production restraints, slaughter reductions and the use of exports. Declaration of Daniel C. Hedlund in Support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement Between Consumer Indirect Purchaser Plaintiffs and Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc., filed concurrently herewith ("Hedlund Decl."), ¶ 3.

From the beginning of the litigation, Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Gustafson Gluek PLLC ("Gustafson Gluek") have acted as Co-lead Counsel on behalf of the Consumer IPP Class. As Co-lead Counsel, these two firms have spent thousands of hours pursuing the claims of the Class. Plaintiffs have taken nearly 100 depositions of defendants' employees and their co-conspirators – many of which were led by the attorneys at Hagens Berman and Gustafson Gluek. Plaintiffs have taken the depositions of ten non-parties, many of which were also led by the Consumer IPP team. Defendants produced nearly 4 million documents that have been reviewed, catalogued, and distilled by attorneys representing the three classes. And the Consumer IPPs subpoenaed 79 non-parties for data and information relating to their claims and data to perform an analysis of the pass-through of overcharges to the consumer Class. Hedlund Decl., ¶ 4.

2

Unlike many other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice (DOJ) or the assistance of a leniency applicant under the DOJ's Corporate Leniency Program. Rather, the alleged conspiracy was identified by the Consumer IPPs through the use of investigators and economists, leading to the first complaint filed – the Consumer IPP complaint.

After years of discovery, the Defendants brought 12 motions for summary judgment and a motion to exclude most of Plaintiffs' experts in the case. Hagens Berman and Gustafson Gluek took the lead drafting and arguing many of the oppositions to these motions. After the Court's recent denial of summary judgment, the Parties are now preparing for trial.

### III.  SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

The Settlement between Tyson and the Consumer IPPs is the product of confidential, protracted, intense arm's-length negotiations and has resulted in significant monetary relief for the class. The Consumer IPPs and Tyson negotiated this settlement with the assistance of an experienced mediator, Fouad Kurdi. Settlement discussions with Tyson started in July 2024, and continued on-and-off unsuccessfully for nearly a year. On June 6, 2025, the parties held a mediation with Fouad Kurdi that also ended without an agreement. The parties continued their discussions with the assistance of the mediator until the settlement agreement was successfully executed on September 25, 2025. *Id.*, ¶ 2; Exhibit A ("Ex. A.").

The Settlement Agreement provides that Tyson will pay $85,000,000 (eighty-five million U.S. dollars) into a settlement fund that will be used to compensate the Consumer

3

IPP Class and cover litigation fees and expenses, including the cost of notifying Class Members and administering the settlement. *See* Ex. A. Lead counsel believe this sum is fair and reasonable in light of Tyson's market share of class products. Tyson further agrees to assist the Consumer IPPs with the authentication and admission of up to 50 documents at the Consumer IPP trial. *Id*. at ¶ 3(c).

The Settlement Agreement sets forth the full terms of the release. By way of summary, upon this Court's decision on final approval of the settlement, Consumer IPPs agree to release, acquit, and forever discharge Tyson from any and all claims seeking relief that Consumer IPPs have or ever may have relating in any way to their indirect purchase of pork produced, processed, or sold by Tyson or any of the defendants or their co-conspirators. *Id*. at ¶¶ 14–15. The release exempts claims wholly unrelated to the allegations in the Actions, such as product liability, breach of contract and others. *Id.*

## IV. THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."[2] However, courts must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In other words, a court must consider whether it "will likely be able to" approve the settlement as fair, reasonable, and adequate.[3]

---

[2] *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn.1993).

[3] Fed. R. Civ. P. 23(e)(1)(B)(i); *see* Fed. R. Civ. P. 23(e)(2).

As set forth below, Consumer IPPs' agreement with Tyson is fair, reasonable, and adequate. Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery."[4]

### A. The Settlement was reached in arms-length negotiations between experienced and capable counsel.

Courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement.[5]

Both sets of counsel—those representing the Consumer IPPs and those representing Tyson—are experienced in antitrust matters. The judgment of the litigants and their counsel concerning the adequacy of the Settlement should therefore be considered.[6]

---

[4] *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-180, 2000 WL175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993).

[5] *See, e.g., In re Emp. Benefit Plans Sec. Litig.*, Civ. No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (noting that "intensive and contentious negotiations likely result in meritorious settlements"); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08- MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters'") (citation omitted).

[6] *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

5

### B. Consumer IPPs have had adequate opportunity to assess the merits of their claims and Tyson's defenses.

There can be no question Consumer IPPs have had a chance to adequately assess the merits of their claims. The investigation into this alleged conspiracy began months before the filing of the complaint, as Consumer IPP counsel engaged expert economists and case investigators. Attorneys combed public statements by defendants, press releases, transcripts of investor calls, and filings with the Securities and Exchange Commission.

After the motions to dismiss were mostly denied in October 2020, discovery began in earnest. Plaintiffs deposed over 90 defense witnesses and 10 non-party witnesses, and many of these depositions were taken by counsel for the Consumer IPP Class.

Defendants produced nearly 4 million pages of documents. Hedlund Decl., ¶ 4. And Consumer IPPs subpoenaed 79 non-parties for data and related information to enable an analysis of the pass-through of overcharges to the consumer class. *Id*. The Court then certified the Consumer IPP Class in March 2023. Following class certification, Consumer IPPs prosecuted merits expert discovery and prevailed at summary judgment. The work behind this litigation has been significant. *Id*.

Access to this volume of information has given the Consumer IPPs sufficient understanding of the strengths and weaknesses of their claims and Tyson's defenses. The Settlement should therefore be accorded a presumption of fairness.

### C. The Settlement Provides Significant Relief to the Class

The Settlement provides "adequate" relief for the class, in accordance with Fed. R. Civ. P. 23(e)(2)(C). Tyson is estimated to have an adjusted market share of 20% of the

6

Defendants and Co-Conspirators' alleged overcharges to the class.[7] Hedlund Decl., ¶ 6. The $85 million Settlement with Tyson represents a $4.250 million valuation for each market share point. This is an exceptional result.

The proposed Settlement also "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Funds will be awarded based on the purchase of qualifying class products. Although Consumer IPPs are not requesting distribution of funds at this time, they propose that Class Members be allowed to submit claims through a simplified and open online claims process. The funds will then be distributed through an electronic method, pro rata, to each Class Member based on qualifying purchases.

## V. THE COURT HAS CERTIFIED A LITIGATION CLASS

This Court previously granted Consumer IPPs' motion for class certification and later corrected that Order. "If the court has certified a class prior to settlement, it does not need to re-certify it for settlement purposes."[8] Consumer IPPs do not seek any changes to the Class definition below, so there is no need for this Court to re-certify the Class for settlement purposes.

---

[7] The market share number takes the estimated market share for in-class products calculated by Dr. Singer in his merits reports (Table 4), and adjusts the market share of the defendant co-conspirators to 100 percent for the purposes of this motion to demonstrate the value of these Settlements to the Class if every defendant settled on similar terms. The defendants have approximately 85 percent market share, and so this calculation adjusts defendants' market share to 100 percent.

[8] 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.).

This settlement proposes the same Settlement Class that this Court already certified on March 29, 2023, defined as:

> All persons and entities who indirectly purchased raw pork bacon, or one or more of the following types of raw pork, whether fresh or frozen: bellies, loins, shoulder, ribs or pork chops from defendants or co-conspirators for personal consumption in the Repealer Jurisdictions[9] from June 28, 2014 to June 30, 2018. For this lawsuit, pork excludes any product that is marketed as organic, no-antibiotics ever (NAE) and any product other than bacon that is marinated, seasoned, flavored, or breaded.[10]

ECF No. 1887 at 7–8.

As set out in the prior motion papers and at the class certification hearing before this Court, this Class satisfies all the requirements of Rule 23.

## VI.   REQUEST TO DEFER NOTICE

Rule 23(e) requires that, prior to final approval of a settlement, notice of that settlement must be distributed to all Class Members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

---

[9] The Consumer IPPs "Repealer Jurisdictions" are Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Carolina, Tennessee, Utah, and West Virginia. The class period for Kansas, Tennessee, and South Carolina class members begins June 28, 2015.

[10] Excluded from the Class are Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action; and any coconspirator identified in this action.

Plaintiffs request that the Court agree to defer formal notice of the Settlement Agreement to the Class because each provision of notice to a class of this size costs hundreds of thousands of dollars. Accordingly, providing separate notice to the Class each time that Plaintiffs enter into a settlement with any of the non-settling defendants will lead to inefficiencies and reduce the amount of funds available for distribution to the Class.

It will likely be in the best interests of the Settlement Class to combine the notice of the Tyson settlement with notice(s) of future settlement(s) with other defendants, should additional settlements be reached in the near future. Proceeding in this way creates attendant efficiencies and cost savings for the Class, resulting in more money from the settlements making it into the pockets of Class members.

If the Court approves Plaintiffs' request to defer notice, the settlement agreement requires that within 75 days, Plaintiffs will propose a detailed notice plan in a subsequent motion that will be filed at a point reasonably calculated to maximize the funds available for distribution to the Class. The proposed notice plan will, pursuant to Rule 23(c)(2)(B), provide the "best notice practicable" to all Class members who will be bound by the proposed Settlement Agreement. Plaintiffs will begin work on this notice plan immediately.

## VII.    CONCLUSION

For these reasons, Consumer IPPs respectfully request that the Court preliminarily approve the Settlement with Tyson.

Respectfully submitted,

Dated:  October 1, 2025

By: */s/ Daniel Hedlund*
Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Joshua J. Rissman (#391500)
Abou B. Amara, Jr. (#401146)
Gabrielle M. Kolb (#504386)
**GUSTAFSON GLUEK PLLC**
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
aamara@gustafsongluek.com
gkolb@gustafsongluek.com

By: */s/ Shana E. Scarlett*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman
Breanna Van Engelen
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

steve@hbsslaw.com
breannav@hbsslaw.com

Elaine T. Byszewski
Abigail D. Pershing
**HAGENS BERMAN SOBOL SHAPIRO LLP**
301 N. Lake Ave., Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
elaine@hbsslaw.com
abigailp@hbsslaw.com

***Co-Lead Counsel for the Consumer Indirect Purchaser Plaintiff Class***