**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

IN RE PORK ANTITRUST LITIGATION                Civil No. 18-1776 (JRT/JFD)

This Document Relates To:                **OPINION AND ORDER ON MOTION FOR**
                                          **RECUSAL AND VACATUR**

ALL ACTIONS

Defendants Agri Stats, Inc., Clemens Family Corporation, Clemens Food Group, LLC, Seaboard Foods, LLC, Smithfield Foods, Inc., Triumph Foods, LLC, Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc. filed a Motion to Recuse and for Vacatur of Daubert and Summary Judgment Rulings. Defendants' motion is based on the contention that one of the Court's law clerks exhibited bias that should be imputed to the Court. The Court finds that neither recusal nor vacatur are required or warranted under 28 U.S.C. § 455(a) or under the Due Process Clause. Accordingly, the Court will deny Defendants' motion for recusal and vacatur.

**BACKGROUND**

**I.      FACTS & PROCEDURAL HISTORY**

After the Court's law clerk greeted some of Plaintiffs' attorneys in the courtroom following the oral hearing for the *Daubert* motion on November 26, 2024, Defendants' attorneys investigated his relationship with Plaintiffs' firms by reaching out to counsel and by searching his posts on social media. (*See* Dec. 7, 2024, Letter from Defendants to Court

(included in the record as 1ˢᵗ Decl. of Daniel Laytin ¶ 2, Ex. 6, Apr. 28, 2025, Docket Nos. 2964, 2968)).   On December 7, 2024, Defendants submitted a letter to the Court expressing their concerns with the law clerk's assistance in the litigation (*id.*), and on February 13, 2025, Defendants Agri Stats, Inc., Smithfield Foods, Inc., Clemens Food Group, LLC, and The Clemens Family Corporation filed a sealed Motion for Conference to discuss their "potential concern" (Docket No. 2902).

The Court issued a Memorandum and Opinion and Order Denying Parties' Motions to Exclude Expert Witnesses in response to the *Daubert* motions, *In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/LIB), 2025 WL 965367 (D. Minn. Mar. 31, 2025), and a Memorandum and Opinion and Order on Motions for Summary Judgment, No. 18-cv-1776 (JRT/LIB), 2025 WL 964545 (D. Minn. Mar. 31, 2025) on March 31, 2025.[1]

On April 15, 2025, the Court issued a Sealed Order on Motion for Conference (Docket No. 2938) denying Defendants' Motion for Conference.  In this letter, the Court provided additional information about the law clerk's employment history and the role of the law clerk in this litigation and in other antitrust matters pending before the Court. The Court indicated that while still in law school the law clerk had worked for two firms, Lockridge Grindal Nauen PLLP and Robins Kaplan LLP, and for the Minnesota Attorney General's Office.  (*Id.* at 1-2.)  The Court confirmed that the law clerk had been completely

---

[1] An Amended Memorandum and Opinion and Order on Motions for Summary Judgment, *In re Pork Antitrust Litig.*, 781 F. Supp. 3d 758 (D. Minn. 2025), issued on April 28, 2025.

screened from work in other antitrust cases pending before the Court because of his work at the Minnesota Attorney General's Office and because of a pending offer from Robins Kaplan. The Court noted that the "*Pork* case was underway" during the time the law clerk worked as a summer clerk at Lockridge Grindal Nauen "while a law student in 2022" and that the law clerk likely "was aware that attorneys at the firm were working on the case" but "had no personal involvement whatsoever in *Pork* and was never subject to knowledge of any litigation strategy, disputed evidentiary facts, or confidential information regarding *Pork*." (*Id.* at 2.) The Court further noted that the law clerk would continue to be screened from the other antitrust matters and would be screened from any further work in this matter. (*Id.* at 3.)

## DISCUSSION

### I.    STANDARD OF REVIEW

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(a) provides "an objective standard of reasonableness." *United States v. Martinez*, 446 F.3d 878, 883 (8th Cir. 2006) (quoting *United States v. Poludniak*, 657 F.2d 948, 954 (8th Cir. 1981)). "The issue is whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *Id.* (internal quotation marks omitted)); *see also United States v. Ruff*, 472 F.3d 1044, 1046 (8th Cir. 2007) ("A judge must recuse when his or her impartiality might reasonably be questioned by the

average person on the street who knows all the relevant facts of a case.") (internal quotation marks omitted).

Canon 2 of the Code of Conduct for United States Judges states: "A Judge Should Avoid Impropriety and the Appearance of Impropriety in all Activities."  Commentary to Canon 2 further states: "An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired."  CODE OF CONDUCT FOR UNITED STATES JUDGES, Canon 2A (*Guide to Judiciary Policy*, Vol. 2A, Ch. 2) (effective March 12, 2019).

"A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise."  *United States v. Ali*, 799 F.3d 1008, 1017 (8th Cir. 2015) (citations omitted); *see also United States v. Roads*, 97 F.4th 1133, 1136 (8th Cir. 2024) ("Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise.").  Finally, a motion to recuse under § 455(a) is committed to the discretion of the Court.  *See Roads*, 97 F.4th at 1136.

The Due Process Clause of the United States Constitution states that no one shall be "deprived of life, liberty or property without due process of law."  U.S. Const., amend. V.  The Due Process Clause "demarks only the outer boundaries of judicial

-4-

disqualifications" and application of this constitutional standard to recusals is "confined to rare instances." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009).

## II.   ANALYSIS

### A.   Recusal

Defendants argue that recusal and vacatur are required under § 455(a) because (1) the clerk's prior employment on related cases and pending employment offer create a conflict and clear appearance of bias that required the clerk to be completely screened from all Agri Stats related cases and (2) the clerk's bias can be imputed to the Court. (Mem. in Supp. of Certain Defs.' Mot. to Recuse and for Vacatur of Daubert and Summary J. Mots. ("Defs.' Mem.") at 12, Docket No. 2963.)  Defendants further argue that "the Court's screening of the clerk from future work on this case essentially acknowledges" that there is an appearance of impropriety.  (*Id.* at 1–2.)

Plaintiffs disagree on all points and further argue that Defendants' recusal motion was not timely.

The Court finds that the clerk did not have a clear appearance of bias.  Moreover, even if the clerk had an appearance of bias, such bias should not be imputed to the Court.

### 1.   Law Clerk's Alleged Bias

Defendants argue that concerns regarding the law clerk's bias are raised by (1) his work at a firm involved in antitrust litigation that is not a party to this matter, (2) his work at the Minnesota Attorney General's Office, (3) his social medial posts, (4) his work at Lockridge Grindal Nauen, and (5) the Court's decision to screen the law clerk from further

involvement in the matter.  Although the Court will address each of these points in turn, it concludes that the law clerk's work on this matter was within the ethical guidelines.

As an initial matter, Canon 3F (Conflicts of Interest) of the Code of Conduct for Judicial Employees states that

> A conflict of interest arises when a judicial employee knows that he or she (or the spouse, minor child residing in the judicial employee's household, or other close relative of the judicial employee) might be so personally or financially affected by a matter that a reasonable person with knowledge of the relevant facts would question the judicial employee's ability properly to perform official duties in an impartial manner.

CODE OF CONDUCT FOR JUDICIAL EMPLOYEES, Canon 3F (*Guide to Judiciary Policy*, Vol. 2A, Ch. 3).  No party has offered any evidence that the law clerk would be personally or financially affected by the resolution of any aspect of the *Pork* matter.

### a.    Work for Non-Parties

Defendants argue that the law clerk's work for three different entities engaged in antitrust work creates an "appearance of impropriety."  (Defs.' Mem. at 1.)  However, "[e]xperience is not disqualifying for public service."  *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 681 F. Supp. 3d 993, 1021 (D. Minn. 2023).

While the clerk has a pending offer of employment from a firm participating in another antitrust case before the Court, the clerk does not have and has never had an offer from any of Plaintiffs counsel's firms.  In this respect, the facts seem similar to those of *Hamid v. Price Waterhouse*, where the Ninth Circuit reasoned:

> Because of the very large number of defendants and law firms involved in this case, the likelihood that a law clerk would have some sort of connection to one of them is higher than in most cases, and the likelihood that that connection would matter is lower.  A reasonable observer would more likely see any relationship "as implicit in the special circumstances [of the complexity of the case and large number of parties and law firms involved] rather than as an odd coincidence the failure to avoid which might suggest bias."

51 F.3d 1411, 1417 (9th Cir. 1995) (quoting *In re Allied–Signal, Inc.,* 891 F.2d 967, 971–72 (1st Cir. 1989)).

### b.   Social Media Posts

Defendants point to the law clerk's interactions with LinkedIn posts of former firms or individual Plaintiffs' attorneys as evidence of an "appearance of impropriety."  (Defs.' Mem. at 1–2.)  For example, Defendants characterized the law clerk's selection of the hand-clapping emoji to react to a LinkedIn post announcing an attorney's appointment to the American Antitrust Institute Advisory Board (*see* 2nd Decl. of Daniel Laytin ¶ 2, Ex. 8 at 7, June 9, 2025, Docket Nos. 3063–64) as follows: "The clerk publicly 'celebrated' a social media post that both announced that one of his former employers was suing Agri Stats and explicitly identified this case."  (Defs.' Mem. at 1.)  But viewing the full post, it is clear that the clerk was not celebrating the suing of a Defendant but, rather, the appointment of a former colleague to a prestigious position.

With respect to this and the other posts (which Defendant characterizes as "active social media interactions with Plaintiffs' attorneys in this case") (*id.* at 10), the liking or celebration of posts indicates merely that the law clerk continued to acknowledge and

celebrate his classmates' and colleagues' successes.  This behavior is in line with the Handbook "Maintaining the Public Trust: Ethics for Federal Judicial Law Clerks"[2] (p. 17 of which was cited by Defendants) and the District of Minnesota's Social Media Policy.  The Court finds any other posts made while the law clerk was still in law school are irrelevant.

Arguably, it is Defendants' collation of specific posts and Defendants' characterization of those posts that fabricated an appearance of impropriety in this instance, not any actions of the law clerk.

### c.    Work as a Law Clerk for Plaintiff's Counsel

Canon 3F(2)(a) of the Code of Conduct for Judicial Employees provides additional restrictions for law clerks "because of their relationship to a judge or the nature of their duties," stating that a

> law clerk should not perform any official duties in any manner with respect to which . . . such law clerk knows that:
> . . .
> (ii) he or she served as a lawyer in the matter in controversy, **or a lawyer with whom he or she previously practiced law had served (during such association) as a lawyer concerning the matter** . . . .

CODE OF CONDUCT FOR JUDICIAL EMPLOYEES, Canon 3F(2)(a) (*Guide to Judiciary Policy*, Vol. 2A, Ch. 3) (emphasis added).

---

[2]    https://www.cafc.uscourts.gov/wp-content/uploads/HR/Forms/Maintaining-the-Public-Trust_2019-Revised-Fourth-Edition.pdf

Defendant argues that because the law clerk worked at a law firm representing a Plaintiff during the summer after the law clerk's 1L year in law school, the language in the Code of Conduct should be used as a basis to establish the law clerk's conflict of interest.

It is undisputed that the law clerk did not serve as a lawyer in—or do **any** work for—the specific matter in controversy. Although the law clerk did work with Plaintiffs' lawyers on a different matter while a law clerk at Lockridge Grindal Nauen, the law clerk did not "previously practice[] law" with Plaintiffs' lawyers—because he was a law student at the time and was not licensed to practice law.

Further, because the law clerk had just finished his 1L year of law school while working at the same firm as Plaintiffs' lawyers, his work on any antitrust matters at the firm reflected this minimal level of expertise. The law clerk prepared memoranda on "the law relating to corporate sales agreements," "the use of Rule 1006 representative testimony at trial," and "the legal standards for preparing and introducing summary exhibits in the Seventh Circuit" as well as performed "research related to discovery of cellphone records." (Ps.' Opp. to Defs.' Mot. to Recuse and for Vacatur at 3–4, May 15, 2025, Docket No. 3040.) Such work would not have provided the law clerk with any personal knowledge of facts concerning this proceeding. *Cf. id.*, Canon 3F(2)(a)(i).

For these reasons, the Court concludes that the law clerk adhered to the appropriate standards in performing the duties of his office, as required by Canon 3 of the Code of Conduct for Judicial Employees.

### d.    Court's Screening of the Law Clerk

Defendant repeatedly argues that "the Court itself . . . recognized the appearance of impropriety" by screening the law clerk from future work on this matter.  (*E.g.*, Defs.' Reply in Supp. of Certain Defs.' Mot. to Recuse ("Defs.' Reply") at 14, June 9, 2025, Docket No. 3062.)  The Court strongly disagrees.  The Court screened the law clerk from future work on this matter to specifically shield the law clerk from further intrusive investigations and allegations of impropriety, which can be terrifying to a law clerk who is a new lawyer.  The Court is, in fact, troubled by Defendants' intrusive and unprofessional attacks on an outstanding law clerk who was highly professional throughout his one-year clerkship.

\* \* \*

In short, the Court concludes that the law clerk's work on this matter was within the ethical guidelines, and the law clerk did not have a bias that would have required lack of involvement with this case.

### 2.    Judicial Disqualification

Even if the law clerk was found to have a bias or conflict of interest—which the Court does not find—the Court finds that disqualification and recusal is **not** necessary because a reasonable observer who was fully informed of the facts based on the record would not question the judge's impartiality.  *See Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1311, 1313 (10th Cir. 2015); *see also* Commentary to Canon 2 of the CODE OF CONDUCT FOR UNITED STATES JUDGES ("An appearance of impropriety occurs when reasonable

minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired.")

Both "bench and bar recognize . . . that judges, not law clerks, make the decisions." *In re Allied-Signal Inc.*, 891 F.2d at 971. And "a law clerk's views cannot be attributed to the judge for whom the clerk works." *In re Corrugated Container Antitrust Litig.*, 614 F.2d 958, 968 (5th Cir. 1980). Moreover, "recusal must be limited to truly extraordinary cases where . . . the judge's views have become 'so extreme as to display clear inability to render fair judgment[.]'" *Cobell v. Kempthorne*, 455 F.3d 317, 332 (D.C. Cir. 2006) (quoting *Liteky v. United States,* 510 U.S. 540, 551 (1994)).

First, as noted in the Court's Order Denying Defendants' Motion for Conference (Docket No. 2938), the law clerk was asked to assist in a very limited aspect of this case only because the judge's other law clerks were unavailable. The primary law clerk assigned to the case was working on the Defendants' many summary judgment motions— a significant, time-consuming task. "Individual judges must enjoy considerable independence in deciding precisely how to use their law clerks," and "the greater the extent to which the potentially disqualifying circumstance facilitates the just and efficient resolution of a case, the less likely a knowledgeable observer will consider it a sign of judicial partiality." *In re Allied-Signal Inc.*, 891 F.2d at 971–72. Any reasonable person

with knowledge of the narrow scope of the law clerk's work on this case, and the reasons for that limited involvement, would have no reason to question the judge's impartiality.

Further, there is no reason to think that the law clerk had any reason to provide biased advice to the judge or, indeed, that the law clerk had any effect on the judge's decisions.  For example, in *Hamid v. Price Waterhouse*, 51 F.3d 1411 (9th Cir. 1995), the Ninth Circuit noted that "a reasonable person might be concerned whether a law clerk's advice to a judge would be biased in favor of the position taken by a firm, if the law clerk had worked there before his clerkship, was on a leave of absence, and planned to work there after his clerkship."  *Id.* at 1416–17.  But the Ninth Circuit further held that recusal was **not** necessary when a law clerk had previously worked for a firm involved in a case prior to his clerkship and ended up not returning to that firm.  As in *Hamid*, and as further discussed above, there is no reason for a reasonable person here to be concerned that the law clerk's advice to the judge in this case would have been biased in favor of any specific Plaintiff firm's position.

Nor is there any indication that the law clerk's advice had any impact on the Court's decisions.  The law clerk's work was limited to assisting in the Court's review of the *Daubert* motions—and the Court's holdings were consistent with the Court's holdings at the earlier class certification stage, when the law clerk in question did not yet work for the Court.  In addition, to the extent that Defendants argue that the law clerk was biased in favor of Plaintiffs, Plaintiffs noted in their Opposition to Defendants' Motion to Recuse

that the "only new *Daubert* arguments were those advanced by Plaintiffs" and the "Court rejected Plaintiffs' *Daubert* motions . . . ."  (Ps.' Mem. in Opp. to Defs.' Mot. to Recuse at 17, May 16, 2025, Docket No. 3040.)

Finally, the law clerk in question is one of more than a half-dozen law clerks who have worked on this matter over the course of more than seven years and dozens of motions.  This complex multi-district litigation is now ready for its first trial.  At no other point have Defendants questioned the Court's ability to properly perform its duties in an impartial manner.  Thus, while Defendants' motion may have been timely to the extent it is based on Defendants' knowledge of a specific law clerk's conduct, the Court notes that Defendants' waiting until after both the *Daubert* and summary judgement orders had been issued weighs in favor of finding the timing of Defendants' motion to be more tactical than sincere.  *See, e.g.*, *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 566 (8th Cir. 1997) (finding because a recusal motion was not filed until after the district court had granted summary judgment to the opposing party on the merits of the case, the motion was untimely); *In re Kansas Public Employees Retirement Sys.*, 85 F.3d 1353, 1360 (8th Cir. 1996) (recusal motion that is untimely and interposed for suspect tactical reasons "can and should" be denied on that basis alone).

The Court therefore concludes that a reasonable observer who was fully informed of all of the facts available in the record would not question the judge's impartiality.  For these reasons, Defendants' motion for recusal will be denied.

**B.     Vacatur**

When determining whether a § 455(a) violation requires vacatur, provided that the motion is made within a reasonable time, "it is appropriate to consider the risk of injustice to the particular parties, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988).

At least because the Court has found there is no § 455(a) violation, vacatur is not required.  However, the Court further finds that each of the factors to be considered also weigh against vacatur.

**1.     Risk of Injustice to the Parties**

Defendants argue that there is "a risk of injustice given the gravity of the *Daubert* challenges and the centrality of the expert opinions to the summary judgment decision" and that, in the absence of vacatur, they would be "forced to proceed to trial under tainted dispositive orders[.]"  (Defs.' Reply" at 13.)  Because the *Daubert* order is highly consistent with the Court's prior orders—and, indeed, the Court considered the experts presented by both parties to be of the highest quality—the risk of injustice to Defendants is minimal or non-existent.  Requiring that the many months of work that went into both the summary judgement and *Daubert* motions and hearings to be repeated would be a burden and would risk injustice to all the parties.

### 2.    Risk that Denial of Relief Will Produce Injustice in Other Cases

Defendants argue that failure to vacate will lead to future violations—and thus denial of vacatur will produce injustice in other cases.  Rather, it seems much more likely that vacatur in this instance would incentivize counsel to dig through more law clerks' personal lives to attempt to find evidence that would create the insinuation of a conflict when a judge issues a ruling that counsel does not like.  Accordingly, the Court finds that this factor also weighs in favor of denying vacatur.

### 3.    Risk of Undermining the Public's Confidence in the Judicial Process

Defendants argue the risk of undermining the public's confidence in the judicial process weighs in favor of vacatur because the "public has a right to expect that federal cases are adjudicated free from the appearance of impropriety."  (Defs.' Reply at 16.)

The Court finds, however, that vacating an order that is the culmination of years of work by the Court and multiple clerks because of an alleged conflict of one clerk who worked on one limited project would make it seem as though the clerk—not the judge— was making the decisions.  Denying vacatur is consistent with the understanding of bench and bar that "judges, not law clerks, make the decisions."  *In re Allied-Signal Inc.*, 891 F.2d at 971.

### C.    Due Process Clause

Defendants argue that the Due Process Clause also requires recusal because "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."  *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 881

(2009).  For all the same reasons that neither the law clerk nor the judge acted improperly under § 455(a), the Due Process Clause does not require recusal.  *Id.* at 890  ("[T]he codes of judicial conduct provide more protection than due process requires[.]").  Moreover, each of the cases cited by Defendants as "situations including similar conflicts" (Defs.' Mem. at 23) are not related to law clerk conduct, and most are criminal (not civil) cases.[3]

The Court concludes that denying Defendants' motion to recuse will not violate their rights under the Due Process Clause.

## CONCLUSION

The Court concludes that the law clerk's work on this matter was within the ethical guidelines and therefore, no law clerk bias can be imputed to the judge.  Even if the law clerk was found to have sufficient bias to give rise to a conflict of interest, the Court finds that disqualification and recusal is not necessary because a reasonable observer who was

---

[3] *Jackson v. Cool*, 111 F.4th 689 (6th Cir. 2004) (assessing sentencing judge's bias when petitioner was convicted of capital offenses and the sentencing judge had enlisted the prosecutor to draft his opinion sentencing petitioner to death and finding objective risk of sentencing judge's bias was too high to be constitutionally tolerable under the Due Process Clause); *Cain v. White*, 937 F.3d 446 (5th Cir. 2019) (finding judges' practice of arresting and incarcerating criminal defendants for nonpayment of court-imposed fines and fees without determination of ability to pay violated the Due Process Clause, where fines and fees revenue went into a judicial expense fund over which judges exercised total control and the fund supported salaries judges' staff); *Rivera v. Superintendent Houtzdale SCI*, 738 F. App'x 59 (3rd Cir. 2018) (concluding that the District Court abused its discretion by declining to conduct an evidentiary hearing on criminal defendant's due process claim and remanding for a hearing to be held because the Clerk of Courts was a relative of an alleged victim and had sent an e-mail to a court administrator asking for the reassignment of the criminal defendant's case to a specific judge).

fully informed of the facts based on the record would not question the judge's impartiality. Finally, the Court finds that vacatur is not necessary.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Certain Defendants' Motion to Recuse and for Vacatur of Daubert and Summary Judgment Rulings [Docket No. 2961] is **DENIED**.

DATED:  October 6, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

-17-