**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE PORK ANTITRUST LITIGATION                Civil No. 18-1776 (JRT/JFD)


This Document Relates To:                       **ORDER GRANTING IN PART AND**
                                                **DENYING IN PART DEFENDANTS'**
ALL ACTIONS                                     **REQUESTS FOR LEAVE TO FILE MOTIONS**
                                                **FOR RECONSIDERATION OF SUMMARY**
                                                **JUDGMENT**

---

On April 28, 2025, the Court issued an Amended Memorandum Opinion and Order

on Motions for Summary Judgment. *In re Pork Antitrust Litig.*, 781 F. Supp. 3d 758 (D.

Minn. 2025). Defendants Clemens Food Group, LLC and The Clemens Family Corporation

("Clemens"), JBS USA Food Company (JBS), Seaboard Foods LLC ("Seaboard"), Smithfield

Foods, Inc. ("Smithfield"), and Triumph Foods, LLC ("Triumph"), filed letters requesting

leave to file motions for reconsideration of the Court's summary judgment decisions

under Local Rule 7.1(j).[1] The Court will grant Defendant Triumph's request to permit the

parties to more fully brief the appropriate application of the single enterprise theory and

of agency theory. Because the other Defendants' requests are attempts to relitigate

---

[1] Defendants' letters requesting leave to file motions for reconsideration can be found at
Docket No. 2971 (Clemens), Docket No. 2972 (Triumph), Docket No. 2974 (Smithfield), Docket
No. 2975 (JBS), and Docket No. 2976 (Seaboard).

arguments that the Court has already considered or are based on factual quibbles, the other Defendants' requests to file motions for reconsideration will be denied.

**DISCUSSION**

Under the Local Rules, after demonstrating compelling circumstances, a party may file a motion to reconsider with the permission of the Court. D. Minn. LR 7.1(j). Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (quotation and citation omitted). A motion to reconsider should not be employed to relitigate old issues, but to "afford an opportunity for relief in extraordinary circumstances." *Dale & Selby Superette & Deli v. United States Dept. of Agric.*, 838 F. Supp. 1346, 1348 (D. Minn. 1993); *see also Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999) (noting a motion for reconsideration is "not a vehicle for simple reargument on the merits").

**A.    Clemens**

Clemens presents three points it contends it should be permitted to reargue on the merits—but such reargument is not the purpose of a motion for reconsideration, and its request will be denied.

First, Clemens requests the Court reconsider its conclusion that "Plaintiffs have presented sufficient evidence that restraining production was one lever that Defendants pulled to artificially decrease the supply of pork . . . and thereby fix pork prices above

competitive levels." *In re Pork Antitrust Litig.*, 781 F. Supp. 3d at 809. Clemens argues that Plaintiffs must—but cannot—show "that Clemens chose to produce 'less pork' during the alleged conspiracy." (Clemens' Letter Req. Permission File Mot. Recons. at 1, April 28, 2025, Docket No. 2971.) Clemens appears to be arguing that Plaintiffs must show that Clemens at some point sold less pork than the amount of pork sold at the start of the relevant period.[2] Clemens' arguments are nothing more than asking the Court to re-weigh the evidence.

Clemens further argues that because it submitted evidence that it was planning to open a new hog processing facility, Clemens must have been acting independently. The Court has previously considered all the evidence, including this point, and maintains "there is sufficient evidence for a reasonable jury to find by a preponderance of the evidence that Clemens knowingly joined the conspiracy." *Id.* at 837.

---

[2] As explained by the Court in its summary judgment order, "Plaintiffs are arguing that pork production increased at a slower rate that cannot be explained by other controlling factors of the time." *In re Pork Antitrust Litig.*, 781 F. Supp. 3d at 807. Thus, Plaintiffs do not need to show Clemens at any point **decreased** the amount of pork sold relative to a starting amount but, rather, that their rate of increasing pork production was less than the output expected in a competitive market. Moreover, to the extent that Clemens is arguing that Plaintiffs' expert's model was not calibrated for Clemens' production capacity specifically (versus all Defendants in aggregate), the Court still finds that Plaintiffs have presented sufficient evidence that would allow a jury to conclude that Clemens restrained pork production.

Finally, Clemens argues that the Court did not consider evidence that Clemens used Agri Stats to look for opportunities to sell for less.[3]  Again, Clemens is seeking to reargue a point on the merits.

In short, because Clemens is attempting to reargue evidence already considered by the Court—which is not the purpose of a motion for reconsideration—its request will be denied.

**B.    JBS**

JBS, like Clemens, contends it should be permitted to reargue multiple factual points on the merits.  But, again, such reargument is not the purpose of a motion for reconsideration, and its request will be denied.

JBS contends that the Court's opinion "rested heavily" on its view that communications between the Lorenger brothers were suspicious, and such reliance was improper because one of the brothers worked for a dismissed defendant, Indiana Packers Corporation.  (JBS's Letter Req. Permission File Mot. Recons. at 1, April 29, 2025, Docket No. 2975.)  First, the Court disagrees with JBS's characterization of its analysis.  The Court considered numerous aspects of Plaintiffs' evidence related to JBS to reach the decision

---

[3] Clemens points to the Court to the statements quoted in its summary judgment PowerPoint (Docket No. 2815 at 26; *see also* Decl. of Daniel Laytin, Sealed CLMNS Ex. 33 at 273 (Freed Decl.), June 7, 2024, Docket No. 2329.)  It is an issue for the jury to decide what weight to give to the testimony highlighted by Clemens and whether the testimony indicates that Clemens used Agri Stats to decrease pork prices for consumers (versus, for example, getting better prices on vendor supplies or increasing worker efficiency and, thus, increasing its own profits).  (*See* Freed Decl. at 273–276.)

that there is sufficient evidence from which a reasonable jury could conclude by a preponderance of the evidence that JBS joined with its competitors to reduce supply and increase the price of pork.  *Id.* at 840–844.  Second, the Court's findings did not depend on Indiana Packers Corporation's status as a co-conspirator and, indeed, the Court noted the communications provided evidence as to JBS's knowledge of other Defendants' proposed actions (e.g., Tyson and Seaboard).  *See id.* at 842.  The Court will decline to allow JBS to reargue these points in a motion for reconsideration.

JBS further contends that there is no evidence that JBS engaged in parallel conduct. The Court has already considered and rejected JBS's arguments in its prior order, and JBS is improperly asking the Court to reweigh the evidence.

JBS also argues that the Court erred in not finding JBS adequately refuted Plaintiffs' contention that JBS used Agri Stats to target higher prices.  Again, the Court has already considered JBS's arguments, *see, e.g., id.* at 843, and concluded there is sufficient alternative evidence at the summary judgment stage to allow Plaintiffs' claims to proceed.

Finally, JBS notes that JBS was not a member of the 21st Century Pork Club.  *Cf id.* at 842.  Since JBS has represented Karl Skold was not a JBS employee at the time of a 2012 21st Century Pork Club meeting, and Plaintiffs have accepted this assertion (*see* DAPs' Letter Opp'n JBS's Req. for Recons. at 2, May 9, 2025, Docket No. 3017), the Court agrees that identifying JBS as a member of the 21st Century Pork Club was a factual error. Plaintiffs, however, presented evidence that JBS participated in other trade associations.

(*See, e.g.,* Certain Direct Action Plaintiffs' Mem. in Opp'n. to JBS's Mot. for Summ. J. at 11-12, Aug. 26, 2024, Docket No. 2510.) Moreover, JBS's membership in the 21st Century Pork Club was not dispositive. Thus, the Court is not persuaded that the motion for summary judgment must be reconsidered on the basis of this minor factual error.

Because JBS is attempting to reargue grounds already considered by the Court and further because JBS has not identified any factual errors that would have altered the Court's conclusion that Plaintiffs have produced sufficient evidence from which a jury could conclude by a preponderance of the evidence that JBS joined the conspiracy with its competitors to reduce supply and increase the price of pork. Accordingly, JBS's request to file a motion for reconsideration will be denied.

### C.    Seaboard

Seaboard also asks the Court to reconsider factual evidence, attempting to improperly relitigate issues already considered by the Court.

Seaboard first argues that because it submitted testimony that it did not use Agri Stats reports when setting prices, it should be treated like Hormel (which was fully dismissed as a Defendant at the summary judgment stage). But the Court has already considered Seaboard's arguments, *In re Pork Antitrust Litig.*, 781 F. Supp. 3d at 847, and noted that the major distinction between Hormel and the other defendants is that Hormel never subscribed to the Agri Stats sales report, only the Agri Stats processing report, s*ee id.* at 839.

Seaboard further contends that the Court's opinion did not address arguments that it did not restrict growth: that it was not part of a gentlemen's agreement and that it submitted evidence that it increased sow production during 2016 and 2017.  As the Court previously noted, even though it "does not **discuss** [in its Opinion] every piece of evidence offered by the Parties in support of their positions," the Court did consider all the evidence and arguments.  *Id.* at 831 (emphasis added).

With respect to Seaboard's argument that it was not part of any gentlemen's agreement, if the relevant email and summary of the meeting (Decl. of Shana E. Scarlett, Sealed Pls.' Ex. 180, Aug. 25, 2024, Docket Nos. 2462, 2469) are found to be admissible, it will be up to the jury to decide how much weight to give this information, along with any other evidence.[4]  With respect to Seaboard's point that it submitted evidence that it increased sow production during 2016 and 2017, Seaboard is seeking to reargue this point on the merits—which is not the purpose of a motion for reconsideration.[5]

---

[4] The Court further confirms that it has received Triumph's Letter of September 4, 2025, and the attached Affidavit of Brad Freking (Docket No. 3136).

[5] As discussed in *supra*, note 2, with respect to Clemens, since "Plaintiffs are arguing that pork production increased at a slower rate that cannot be explained by other controlling factors of the time," *In re Pork Antitrust Litig.*, 781 F. Supp. 3d at 807, Seaboard's evidence that it added sows to the industry in 2016 and 2017 does not contraindicate that their rate of increasing their pork production was less than the increase that would have been expected in a competitive market.

Seaboard's arguments are simply attempts to reargue evidence already considered by the Court, and such arguments cannot be the basis of a proper motion for reconsideration. Accordingly, its request will be denied.

### D.    Smithfield

Smithfield contends the Court erred in its analysis of parallel conduct support its request for reconsideration. The Court disagrees.

First, Smithfield contends that the Court's recitations that "Smithfield liquidated 130,000 sows in 2009," *In re Pork Antitrust Litig.*, 781 F. Supp. 3d at 801, and at "the beginning of the relevant period," *id.* at 848, was an error of fact. However, even if Smithfield's reductions **began** before the relevant period, Smithfield's reductions in 2009 and the other evidence detailed by the Court, *see id.* at 847–852—including evidence that Smithfield attempted orchestrate herd reductions by its competitors during the relevant period, *see id.* at 802, 849–850—provide sufficient evidence from which a reasonable jury could conclude by a preponderance of the evidence that Smithfield joined the conspiracy with its competitors to reduce supply and increase the price of pork.

Smithfield further argues that Plaintiffs did not identify any specific actions taken by Smithfield, specifically, to restrict supply in parallel with other Defendants. The Court has already considered and rejected Smithfield's arguments. The Court will decline to allow Smithfield to reargue these points in a motion for reconsideration.

E.    Triumph

Triumph's request presents different arguments than the other Defendants. As further discussed below, the Court will allow Triumph to file a motion for reconsideration so that the parties can further brief certain issues.

The Court concluded that Plaintiffs presented enough evidence "to support a finding that Triumph is sufficiently intertwined with its LLC members' sow operations for liability purposes." *Id.* at 854. The Court also cited *In re Cattle Antitrust Litig.* when discussing Plaintiffs' argument that the collective conduct of Triumph and its members demonstrates Triumph's involvement in sow reductions: "[I]n a single-enterprise situation, it is the affiliated corporations' collective conduct—i.e., the conduct of the enterprise they jointly compose—that matters; it is the enterprise which must be shown to satisfy the elements of a [Sherman Act] claim." No. 19-1129, 2021 WL 7757881, at *17 (D. Minn. Sept. 14, 2021) (alterations in original) (quoting *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 631 (9th Cir. 2018)). The Court further noted that "additional evidence suggests that Triumph is liable for Seaboard's conduct under agency theory." *In re Pork Antitrust Litig.*, 781 F. Supp. 3d at 856.

Triumph contends that the Court inappropriately applied the single enterprise theory and agency theory to conclude that Triumph could be assigned liability for its members' actions and for Seaboard, respectively. Because the Court determines that the Parties have not fully briefed if either of these theories should apply, the Court will grant Triumph's request to file a motion for reconsideration.

With respect to Triumph's control over hog production (and, thus, hog reductions), Triumph appears to contend that the Court could only find Triumph could have had control if it holds that the actions of Triumph's independently owned hog producer members could be imputed to Triumph for liability purposes under a single enterprise theory.[6] But, while Triumph claims that it has no control of its members' hog production levels, decisions, operations, or sales, Plaintiffs have presented evidence to the contrary. *See id.* at 853–54. In their memoranda addressing Triumph's motion for reconsideration, the Court asks the parties to address if the actions of Triumph's independently owned hog producer members could be imputed to Triumph for liability purposes under a single enterprise theory—and, if not, if Triumph should be liable for the actions[7] of its members (and why).

As for its sales, Triumph claims that it contracted responsibility for selling its pork, setting prices, and deciding whether its pork would be exported or sold domestically to Seaboard. *See id.* at 855 (citing Triumph Ex. 2, Docket No. 2295). In their memoranda addressing Triumph's motion for reconsideration, the Court asks the parties to address if

_____

[6] *See also* Triumph's Mem. Supp. Mot. Certify Interlocutory Appeal, Apr. 29, 2025, Docket No. 2979.

[7] Such actions should include the subscription to and use of the Agri Stats reports. (*See, e.g.*, Singer Report, App. 3, App. Table 1, August 25, 2024, Docket No. 2464-3 (indicating that "Triumph (Christensen Farms)" subscribed to Agri Stats reports between 2008 and 2018).)

the actions of Seaboard can be imputed to Triumph under agency theory—and, if not, if Triumph should be liable for the actions of Seaboard (and why).

Triumph also requests leave to file a motion for reconsideration because, it argues, the Court's failure to make a final ruling on the admissibility of certain evidence was improper.[8]  The Court disagrees.  Because the evidence may be presented in an admissible form at trial, the Court will, as stated in its prior order, reserve the final admissibility of this exhibit.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Clemens Food Group, LLC and The Clemens Family Corporation's Request to File a Motion for Reconsideration of the Court's Summary Judgment Opinion [Docket No. 2971] is **DENIED**;

2. Defendant JBS USA Food Company's Request to File a Motion for Reconsideration of the Court's Summary Judgment Opinion [Docket No. 2975] is **DENIED**;

---

[8] Triumph selectively quoted from *Life Invs. Ins. Co. of Am. v. Fed. City Region, Inc.*, 687 F.3d 1117, 1122 (8th Cir. 2012) to incorrectly imply that the Court must find at the summary judgment stage whether evidence will be available at trial.  "The standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it **could** be presented at trial in an admissible form."  *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasis added).

3. Defendants Seaboard Foods LLC's Request to File a Motion for Reconsideration of the Court's Summary Judgment Opinion [Docket No. 2976] is **DENIED**;

4. Defendant Smithfield Foods, Inc.'s Request to File a Motion for Reconsideration of the Court's Summary Judgment Opinion [Docket No. 2974] is **DENIED**;

5. Defendant Triumph Foods, LLC's Request to File a Motion for Reconsideration of the Court's Summary Judgment Opinion [Docket No. 2972] is **GRANTED** to the extent the request is related to the applicability of the single enterprise theory or agency theory;

6. Defendant Triumph shall file its motion and memorandum in support no later than two weeks from the date of this order; Plaintiffs shall file any memorandum in opposition no later than four weeks from the date of this order; Triumph shall have one additional week to file a reply; and

7. Parties should follow the page limits and/or word count requirements and filing procedures in accordance with the Local Rules.

DATED: October 7, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge