**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE PORK ANTITRUST LITIGATION

Civil No. 18-1776 (JRT/JFD)

This Document Relates To:
ALL ACTIONS

**NOTICE OF HEARING ON MOTION**

---

A hearing on Defendant Triumph Foods, LLC's Motion for Reconsideration (Docket No. 3164) is hereby set for January 7, 2026, via Zoom before the Honorable Judge John R. Tunheim.

At the hearing, the Court requests that the parties select one attorney on each side to take the lead and be prepared to focus on the following questions:

**Pleading**

1. Are general allegations from Plaintiffs that Triumph was intertwined with both its hog-producing members and with Seaboard sufficient to provide Triumph notice of Plaintiffs' intent to use single enterprise and agency theory to support Triumph's liability?

   - Was the notice sufficient to allow Triumph to tailor its defense while discovery was still open?

2.  What impact should it have on the pleading standard given that the Eighth Circuit has never applied the single enterprise theory **offensively**?

    - Has any Circuit court **declined** to apply the single enterprise theory offensively?

**Single Enterprise Theory**

3.  Does an offensive application of the single enterprise theory require a showing of common ownership between all parties?

4.  Do the members of Triumph sell a substantial portion of their pork to pork processors other than Triumph?

5.  How long were the members of Triumph in business before they formed Triumph?

**Agency Theory**

6.  Should the Court determine if Seaboard is Triumph's agent under traditional common law agency—which would require Seaboard (the agent) be subject to Triumph's control—or does either party suggest a different test applies in antitrust cases?

7. Although Triumph retains ownership of the pork sold by Seaboard, Seaboard sets the price under the Marketing Agreement between the parties.  And it seems that Seaboard is paid under the Agreement based on the amount of pork **processed**, not the amount of pork **sold**.

   - How is **revenue** sharing between Triumph and Seaboard effectuated under the Marketing Agreement between the parties?

   - How is Seaboard compensated for its sales through a marketing fee? (Please identify the specific clauses in the Marketing Agreement)

8. Per the Missouri Secretary of State website, Triumph Foods was organized in 2003, and the Marketing Agreement was signed in February 2004 and amended in 2009 and 2015. Are the Plaintiffs alleging that the 2015 amendment substantially changed the revenue sharing between the parties to somehow further the conspiracy?

9. Even if the Marketing Agreement did not create an agency relationship with respect to all aspects of the relationships, did it create an agency relationship with respect to the transactions Plaintiffs allege involve an antitrust violation (e.g., setting the price)?

-3-

-4-

DATED:  December 3, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge