# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| *IN RE PORK ANTITRUST LITIGATION* | Civil No. 18-1776 (JRT/JFD) |
| This Document Relates to:<br><br>All Commercial and Institutional Indirect Purchaser Class Plaintiff Actions | |

## LONG-FORM SETTLEMENT AGREEMENT BETWEEN COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER CLASS PLAINTIFFS AND TYSON FOODS, INC., TYSON FRESH MEATS, INC., AND TYSON PREPARED FOODS, INC.

THIS SETTLEMENT AGREEMENT ("Settlement Agreement") is made and entered into as of the 31st day of December, 2025 ("Execution Date") by and between the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"),[1] through Co-Lead Class Counsel (as hereinafter defined) for the Certified Classes (as hereinafter defined), and Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc. (collectively "Tyson"), and all of its predecessors; successors; assigns; and any and all past, present, and future parents, owners, divisions, departments, subsidiaries, affiliates, directors, officers, agents, and employees (collectively referred to "Tyson") in the above-

---

[1] As used herein, "CIIPPs" shall mean the current named plaintiffs in the CIIPPs' Action: Sandee's Bakery; Francis T. Enterprises d/b/a Erbert & Gerbert's; Joe Lopez, d/b/a Joe's Steak and Leaf; Longhorn's Steakhouse; The Grady Corporation; Mcmjoynt LLC d/b/a The Breakfast Joynt; Edley's Restaurant Group, LLC; Basil Mt. Pleasant, LLC; Basil Charlotte, Inc.; Farah's Courtyard Deli, Inc.; and Tri-Ten LLC.

captioned action (the "Action"). The CIIPPs, on behalf of the Certified Classes, and Tyson are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, the CIIPPs on behalf of themselves and as representatives of the Certified Classes of similarly situated persons or entities allege in the Action, among other things, that Tyson and other Defendants "entered into a conspiracy from at least 2009 to the present to fix, raise, maintain, and stabilize the price of pork." (CIIPPs' Fourth Amended Consolidated Complaint, ECF No. 808, ¶ 2);

WHEREAS, Co-Lead Class Counsel have been appointed by the Court to represent the Certified Classes of commercial and institutional indirect purchasers of Pork (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Tyson in any way arising out of or relating in any way to the indirect purchase of Pork produced, processed or sold by Tyson or any of the Defendants or their alleged co-conspirators for commercial use;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the settlement;

WHEREAS, the CIIPPs have concluded, after investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of the CIIPPs to enter into this Settlement Agreement with Tyson to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Certified

Classes, and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of the CIIPPs and the Certified Classes;

WHEREAS, Tyson denies all allegations of wrongdoing in the Action. However, despite its belief that it is not liable for, and has good defenses to, the claims alleged in the Action, Tyson desires to settle the Action, and thus avoid the expense, risk, exposure, inconvenience, and distraction of continued litigation of the Action or of any action or proceeding relating to the matters being fully settled and finally put to rest in this Settlement Agreement;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the Parties that the claims of the CIIPPs and the Certified Classes be settled and compromised and dismissed on the merits with prejudice as to Tyson, subject to Court approval:

1.    <u>General Definitions</u>. The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

a.    "Tyson Released Parties" means Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc. and their former, current and future parents, subsidiaries and affiliates, and any of their respective former, current and future, direct or indirect trustees, directors, officers, shareholders, managers, members, attorneys, equity holders, agents, insurers and employees. Furthermore,

notwithstanding the foregoing, "Tyson Released Parties" does not include any Defendant other than Tyson named by CIIPPs in the Action, either explicitly or as a third-party beneficiary.

b.    "Action" means the class action filed by the CIIPPs in the above captioned proceeding.

c.    "Certified Classes" means the classes defined in Paragraph 5 below.

d.    "Class Period" means June 28, 2014 through June 30, 2018.

e.    "Co-Lead Class Counsel" means Cuneo Gilbert & Laduca, LLP and Larson King LLP as appointed by the Court to represent the Certified Classes of commercial and institutional indirect purchasers of Pork.

f.    "Complaint" means the CIIPPs' Fourth Amended Consolidated Complaint in the Action, ECF No. 808.

g.    "Court" means the United States District Court for the District of Minnesota.

h.    "Defendants" means Agri Stats, Inc., Clemens Food Group, LLC, The Clemens Family Corporation, JBS USA Food Company, Seaboard Foods LLC, Smithfield Foods, Inc., Triumph Foods, LLC, Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc.

i.    "Escrow Account" means the escrow account with the escrow agent to receive and maintain funds contributed by Tyson for the benefit of the Certified Classes.

j.      "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and the CIIPPs (by and through Co-Lead Class Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Certified Classes, as set forth in Paragraphs 9 and 11 below.

k.      "Final Approval" means an order and judgment by the Court that finally approves this Settlement Agreement and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Tyson with prejudice from the Action.

l.      "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) final approval of the Settlement Agreement by the Court ("Final Approval"); and (b) either (1) 30 days have passed from the date of Final Approval with no notice of appeal having been filed with the Court; or (2) Final Approval has been affirmed by a mandate issued by any reviewing court to which any appeal has been taken, and any further petition for review (including certiorari) has been denied, and the time for any further appeal or review of Final Approval has expired.

m.      "Indirect Purchaser States" means Arizona, Arkansas, California, District of Columbia, Florida, Iowa, Illinois, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North

Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

n.  "Person" means without limitation, any individual, corporation, partnership or any variation thereof (*e.g.*, limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, group or other form of legal entity or business.

o.  "Pork," for purposes of this Settlement Agreement only, means porcine or swine products processed, produced or sold by Tyson, or by any of the Defendants or their co-conspirators: uncooked pork bacon, or one or more of the following types of raw pork, whether fresh or frozen: loins, shoulder, ribs, hams, or pork chops. "Pork" excludes any product that is marketed as organic and/or no-antibiotics ever and any product other than bacon that is marinated, seasoned, flavored, or breaded, but it includes uncooked and cooked ham water added products.

p.  "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

q.  "Released Claims" shall have the meaning set forth in Paragraph 14 of this Agreement.

r.  "Releasing Party" or "Releasing Parties" shall refer individually and collectively to the Certified Classes and all members of the Certified

Classes, including the CIIPPs, each on behalf of themselves and their respective predecessors and successors; their current and former, direct and indirect parents, subsidiaries and affiliates; their present and former shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, attorneys, insurers, heirs, executors, administrators, devisees, and representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and any of their past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement.  As used in this Paragraph, "subsidiaries" means entities controlling, controlled by or under common ownership or control with, in whole or in part, any of the Releasing Parties.

s.     "Settlement Administrator" means the firm retained by CIIPPs (by and through Co-Lead Class Counsel) to disseminate the Class Notice and to administer the payment of Settlement Funds to the Certified Classes, subject to approval of the Court.

t.    "Settlement Fund" means $48,000,000 (forty-eight million U.S. dollars), the amount Tyson shall pay or cause to be paid into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Certified Classes, pursuant to Paragraphs 9 and 11 below.

2.    <u>The Parties' Efforts to Effectuate this Settlement Agreement</u>.  The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.    <u>Mutual Litigation Standstill</u>.  Tyson and its counsel shall cease all litigation activities against the CIIPPs except to the extent expressly authorized in the Settlement Agreement.  The CIIPPs and their counsel shall cease all litigation activities against Tyson except to the extent expressly authorized in the Settlement Agreement.  Tyson acknowledges that the CIIPPs have the right to continue litigating their claims in the Action against non-settling Defendants and alleged co-conspirators, including seeking without limitation damages attributable to the entire alleged antitrust violation, including alleged damages attributable to sales made by Tyson, and seeking to prove at trial against non-settling Defendants that Tyson participated in the alleged antitrust violation.  The CIIPPs acknowledge that Tyson has the right to continue fully defending itself against claims asserted by parties other than the CIIPPs in the litigation ("Non-CIIPP Claims") and that Tyson may coordinate with non-settling Defendants in the joint defense of such Non-CIIPP Claims.  Once no claims are operative against Tyson in this litigation, Tyson shall cease all litigation activities, including any cooperation with the non-settling Defendants.  To

- 8 -

minimize disputes regarding the Mutual Litigation Standstill, Tyson and the CIIPPs agree to the following specific requirements and authorizations for this Action:

    a.    <u>Proof of Alleged Conspiracy</u>: CIIPPs and their retained experts necessarily must present arguments and evidence concerning the existence of an antitrust conspiracy, which Tyson strongly denies, and in doing so will make such arguments relating to Tyson.  Pursuant to the "Trial" provision below, however, Tyson shall have the right to rebut any arguments and evidence relating to it to the extent necessary to defend the Non-CIIPP Claims.

    b.    <u>Trial Witnesses</u>: If Tyson receives a request for testimony at trial from any non-settling Defendant for any trial involving the CIIPPs, through a subpoena or through any informal means, it will provide notice to the CIIPPs involved in the trial within two (2) business days.  Tyson will provide the CIIPPs the same access to potential trial witnesses as provided to any non-settling Defendant.

    c.    <u>Authentication and Admissibility of Documents</u>: Tyson agrees to make all good faith efforts to assist the CIIPPs in obtaining the authentication and admissibility of up to 75 of Tyson's documents for purposes of trial.  The CIIPPs agree to make all good faith efforts to provide this list of documents to Tyson at least 45 days before jury selection starts.

d.  <u>Experts</u>: Tyson has jointly retained experts with non-settling Defendants and may continue those engagements—including coordination and/or cost-sharing with non-settling Defendants—as necessary to defend Non-CIIPP Claims.  Tyson will make explicit to any such joint experts that they are not offering testimony or opinions on behalf of Tyson against any of the CIIPPs.

e.  <u>Trial</u>: In any trial limited to the CIIPPs, and not including any Non-CIIPP Claims, Tyson will not participate in the proceedings in any way, other than complying with Paragraph 3.b. ("Trial Witnesses"). In any trial that includes the CIIPPs and Non-CIIPP Claims, Tyson shall have the right to present argument and examine or cross-examine witnesses to the extent necessary to defend the Non-CIIPP Claims.

4.  <u>Motion for Preliminary Approval</u>.  Co-Lead Class Counsel will make best efforts to move for preliminary approval no later than December 31, 2025.  The CIIPPs will request a prompt hearing on the motion for preliminary approval, which Tyson will not oppose.  No later than three (3) business days in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Co-Lead Class Counsel to Tyson.  To the extent that Tyson objects to any aspect of the motion, it shall communicate such objection to Co-Lead Class Counsel, and the Parties shall meet and confer to resolve any such objection.  The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification for settlement purposes of the Certified Classes.

5.    <u>Certified Classes</u>.  The Certified Classes shall have the same definition and consist of the litigation class certified by the Court on March 29, 2023 (ECF No. No. 1887) and later amended on May 8, 2024 (ECF No. 2225) defined as follows:

> <u>Injunctive Class</u>: All entities that indirectly purchased uncooked pork bacon, or one or more of the following types of raw pork, whether fresh or frozen: loins, shoulder, ribs, hams, or pork chops from defendants or co-conspirators for their own use in commercial food preparation in the United States from June 28, 2014 to June 30, 2018. For this lawsuit, pork excludes any product that is marketed as organic and/or no antibiotics ever and any product other than bacon that is marinated, seasoned, flavored, or breaded, but it includes uncooked and cooked ham water added products.

> <u>Damages Class</u>: All entities that indirectly purchased uncooked pork bacon, or one or more of the following types of raw pork, whether fresh or frozen: bellies, loins, shoulder, ribs, hams, or pork chops from defendants or co-conspirators for their own use in commercial food preparation in the Repealer Jurisdictions[2] from June 28, 2014 to June 30, 2018. For this lawsuit, pork excludes any product that is marketed as organic, no-antibiotics and/or no antibiotics ever (NAE) and any product other than bacon that is marinated, seasoned, flavored, or breaded, but it includes uncooked and cooked ham water added products.[3]

---

[2] "Repealer Jurisdictions" are those states that have "repealed" the Supreme Court's holding in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and provide standing to indirect purchasers.  The CIIPPs assert damages claims in Arkansas, Arizona, California, District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.  The class period for Kansas, Massachusetts, Mississippi, South Carolina, and Tennessee class members is from June 28, 2015.

[3] Excluded from the classes are: Natural persons who purchased pork for their personal use and not for commercial food preparation (End-User Consumers); purchases of pork directly from Defendants; purchases of pork for resale in unaltered form; purchases of pork from an intermediary who has further processed the pork; the Defendants; the officers, directors

6.      <u>Settlement Notice</u>.  After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

      a.      Individual notice of this Settlement shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Co-Lead Class Counsel, to members of the Certified Classes, in conformance with a notice plan to be approved by the Court.

      b.      Neither the Certified Class, Co-Lead Class Counsel, nor Tyson shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Certified Classes or obtaining approval of the settlement or administering the settlement.  Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

      c.      Co-Lead Class Counsel shall use best efforts to send out notice to the Certified Classes as soon as practicable and no later than 75 days after Preliminary Approval by the Court of the Settlement Agreement.  Any costs of notice that Co-Lead Class Counsel are permitted to withdraw

---

or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; any federal, state governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action; and any coconspirator identified in this action.

from the Settlement Fund, either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is rescinded according to its terms or is not finally approved by the Court.

7.    <u>Motion for Final Approval and Entry of Final Judgment</u>.  If the Court grants Preliminary Approval, then the CIIPPs, through Co-Lead Class Counsel—in accordance with the schedule set forth in the Court's Preliminary Approval—shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court.  No later than three (3) business days in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Co-Lead Class Counsel to Tyson for its review.    To the extent that Tyson objects to any aspect of the motion, it shall communicate such objection to Co-Lead Class Counsel, and the Parties shall meet and confer to resolve any such objection.  The motion for Final Approval shall seek entry of an order and Final Judgment:

a.    Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Certified Classes within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing the implementation, performance, and consummation of the Settlement Agreement;

b.    Determining that the Settlement Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and

the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c.     Dismissing the Action with prejudice as to Tyson in all class action complaints asserted by the CIIPPs or the Certified Classes;

d.     Discharging and releasing Tyson Released Parties from all Released Claims;

e.     Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

f.     Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Tyson shall be final and appealable and entered forthwith.

The Parties shall take all reasonable steps to obtain Final Approval of the Settlement Agreement.

8.     This Settlement Agreement shall become final only when (a) the Court has entered an order finally approving this Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure; (b) the Court has entered Final Judgment dismissing the Action against Tyson on the merits with prejudice as to all members of the Certified Classes and without costs, and (c) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of a Final Judgment as described in clause (b) above has expired or, if appealed, approval of this Settlement Agreement and the Final Judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further

appeal or review or any such appeal is otherwise disposed of.  It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining if the conditions for final approval have been satisfied.  On the Execution Date, the CIIPPs and Tyson shall be bound by the terms of this Settlement Agreement, and the Settlement Agreement shall not be rescinded except in accordance with Paragraph 19 of this Settlement Agreement.

9.    <u>Escrow Account</u>.  The Escrow Account shall be administered by Co-Lead Class Counsel for the CIIPPs and Certified Classes under the Court's continuing supervision and control pursuant to the Escrow Agreement.

10.    <u>Settlement Consideration</u>.    In consideration for the release of Released Claims and the dismissal of the Action, within 30 calendar days after the Court grants Preliminary Approval of this Settlement Agreement, Tyson shall pay the Settlement Fund $48,000,000 (forty-eight million U.S. dollars).

11.    <u>Qualified Settlement Fund</u>.  The Parties agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Co-Lead Class Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the relation-back election (as defined in Treas. Reg. § l.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of Co-Lead Class Counsel to timely and properly

prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.468B-1. Co-Lead Class Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § l.468B2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. Tyson shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.     <u>Distribution of Settlement Fund to Certified Classes</u>. Members of the Certified Classes shall be entitled to look solely to the Settlement Fund for settlement and satisfaction against the Tyson Released Parties for the Released Claims, and shall not be entitled to any other payment or relief from the Tyson Released Parties. Except as provided by order of the Court, no member of the Certified Classes shall have any interest in the Settlement Fund or any portion thereof. The CIIPPs, members of the Certified Classes, and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Certified Classes. Tyson and the other Tyson Released Parties shall not be liable for any costs, fees, or expenses of any of the CIIPPs' and Co-Lead Class Counsel's attorneys, experts, advisors, or

representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13.    Fee Awards, Costs and Expenses, and Service Payments to the CIIPPs. Subject to Co-Lead Class Counsel's sole discretion as to timing, Co-Lead Class Counsel will apply to the Court for a fee award, plus expenses, and costs incurred, and service payments to the CIIPPs to be paid from the proceeds of the Settlement Fund.  Tyson shall have no responsibility, financial obligation, or liability for any such fees, costs, or expenses.  Within 15 days after any order by the Court awarding attorneys' fees, expenses, class representative service awards or expenses, the Escrow Agent shall pay the approved attorneys' fees, costs, and service award via wire transfer from the Settlement Fund as directed by Certified Class Counsel in accordance with and attaching the Court's order.  In the event the Settlement does not become Final or the amount of attorneys' fees, costs, or service payments is reversed or modified, within 15 calendar days of the order from a court of appropriate jurisdiction, Co-Lead Class Counsel will cause the difference in the amount paid and the amount awarded to be returned to the Settlement Fund.

14.    Release.  Upon Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the Tyson Released Parties from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Certified Classes has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, that exist as of the date of the order

granting Preliminary Approval on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, losses, damages, and the consequences thereof that have been asserted in the Action, or could have been asserted, under federal or state law in any way arising out of or relating in any way to the indirect purchase of Pork produced, processed or sold by the Tyson Released Parties or any of the Defendants or their Co-Conspirators, and purchased directly by the Releasing Parties (the "Released Claims").  Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant or co-conspirator other than the Tyson Released Parties; (ii) any claims wholly unrelated to the allegations in the Actions that are based on breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim; or (iii) damages claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State.  This reservation of claims set forth in (i), (ii) and (iii) of this Paragraph does not impair or diminish the right of the Tyson Released Parties to assert any and all defenses to such claims.  During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Certified Classes shall be preliminarily enjoined and barred from asserting any Released Claims against the Tyson Released Parties.  The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment.  Upon Final Judgment, the Releasing Parties

further agree that they will not file any other suit against the Tyson Released Parties arising out of or relating to the Released Claims.

15.     Further Release.  In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

16.  <u>Non-Disparagement</u>.  The Parties agree they will not disparage this Action or one another, such as by making public statements to the media that disparage either of the Parties or their conduct in connection with the Action.

17.  This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

18.  This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

19.  <u>The CIIPPs' and Tyson's Option to Rescind</u>.  If the Court does not approve this Settlement Agreement in all material respects, or if the Court does not grant Preliminary Approval of the Settlement Agreement, or if the Court does not enter Final Approval and Final Judgment as provided for in Paragraphs 1(l) and 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraphs 1(l) and 7 of this Settlement Agreement, then the CIIPPs and Tyson shall each, in their sole discretion, have the option to rescind this Settlement Agreement in its entirety within ten (10) business days of the event giving rise to such option.

20.  <u>Effect of Rescission</u>.  If the CIIPPs or Tyson rescind this Settlement Agreement under Paragraph 19, then: (a) this Settlement Agreement shall become null and void; (b) this Settlement Agreement, including its exhibits, and any and all negotiations, documents, information, and discussions associated with it shall be without prejudice to the rights of Tyson or the CIIPPs, shall not be deemed or construed to be an admission or

denial, or evidence or lack of evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth or falsity of any of the claims or allegations made in the Action, and shall not be used directly or indirectly, in any way, whether in the Action or in any other proceeding, unless such documents and/or information is otherwise obtainable by separate and independent discovery permissible under the Federal Rules of Civil Procedure; (c) the Parties shall return to their litigation positions before the Execution Date; (d) the CIIPPs shall in no way whatsoever be prejudiced in resuming full discovery and adjudication of the Action as they stood as of the Execution Date, and Tyson shall be prohibited from arguing to CIIPPs or the Court that any agreements with other plaintiffs or parties in any way limit CIIPPs' ability to do so; (e) with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(b), all other funds in the Escrow Account shall be returned to Tyson within five (5) business days of the Escrow Agent receiving notice of rescission; (f) Co-Lead Class Counsel shall immediately consent to such return of remaining funds in the Escrow Account; and (g) the Parties' position shall be returned to the status quo ante.

21.    <u>Choice of Law and Dispute Resolution</u>.  Any disputes relating to this Settlement Agreement shall be governed by Minnesota law without regard to conflicts of law provisions, and with the exception of any dispute regarding the provisions of Paragraphs 14 or 15, any and all disputes regarding this Settlement Agreement will be discussed in good faith by the Parties prior to any Party seeking Court involvement.

22.    <u>Mandatory and Exclusive Jurisdiction</u>. The Parties and any Releasing Parties hereby irrevocably agree to the exclusive jurisdiction of the Court for any suit, action,

proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 14 or 15, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 14 or 15 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement.   In the event that the provisions of Paragraphs 14 or 15 are asserted by any Tyson Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Tyson Released Party shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions.  Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court.  Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Agreement.

23.   <u>Class Action Fairness Act</u>.  Within ten (10) business days of filing of this Settlement Agreement in court with the abovementioned motion for preliminary approval, Tyson, at its sole expense, shall submit all materials required to be served upon appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.

§ 1715, shall arrange for such notices to be served, and shall confirm to Co-Lead Class Counsel that such notices have been served.

24.    <u>Costs Relating to Administration</u>.  The Tyson Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Fund.

25.    <u>Binding Effect</u>.    This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Certified Classes, the Releasing Parties, and the Tyson Released Parties.  Without limiting the generality of the foregoing, upon certification of the Certified Classes and Final Approval, each and every covenant and agreement herein by the CIIPPs shall be binding upon all members and potential members of the Certified Classes and Releasing Parties who have not validly excluded themselves from the Certified Classes.

26.    <u>Sole Remedy</u>.    This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Tyson Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Tyson Released Party.

27.    <u>Counsel's Express Authority</u>.    Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

28.    It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

29.    <u>Notices</u>.  All notices under this Settlement Agreement shall be in writing. Each such notice shall be given by: (a) email, and either (b) hand delivery; (c) registered or certified mail, return receipt requested, postage pre-paid; or (d) Federal Express or similar overnight courier.

If directed to the CIIPPs, the Certified Class, or any member of the Certified Classes, notice shall be sent to:

> Michael J. Flannery
> Cuneo Gilbert & Laduca, LLP
> Two City Place Drive, Second Floor
> St. Louis, MO 63141
> Telephone: (314) 226-1015
> mflannery@cuneolaw.com
>
> Shawn M. Raiter
> Larson King LLP
> 30 East Seventh Street, Suite 2800
> St. Paul, MN 55101
> (651) 312-6518
> sraiter@larsonking.com

If directed to Tyson, notice shall be sent to:

> Tiffany Rider
> Axinn, Veltrop & Harkrider, LLP
> 1901 L Street NW
> Washington, DC 20036
> (202) 912-4700
> trider@axinn.com
>
> John Terzaken
> Simpson Thacher & Bartlett

900 G Street NW
Washington, DC 20001
John.Terzaken@stblaw.com

John M. Tanski
Vice President & Associate General Counsel
Law Department, Global Litigation, People Law & Casualty Claims
Tyson Foods, Inc.
2200 W Don Tyson Pkwy
Springdale, AR 72762
john.tanski@tyson.com

Or such other address as the Parties may designate, from time to time, by giving notice to all parties hereto in the manner described in this Paragraph.

30.    No Admission.  Whether or not Final Judgment is entered or this Settlement Agreement is rescinded, the Parties expressly agree that this Settlement Agreement and its contents, and any and all statements, negotiations, documents, and discussions associated with it, are not and shall not be deemed or construed to be an admission of liability by any Party or Tyson Released Party.

31.    No Third-Party Beneficiaries.  No provision of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Tyson Released Party, the CIIPPs, member of the Certified Classes, or Co-Lead Class Counsel.

32.    No Party is the Drafter.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

33.    Headings.  The headings used in this agreement are inserted for convenience only and shall not constitute a part hereof.

34.   <u>Amendment and Waiver</u>.  This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.  The waiver by any Party of any particular breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.  This Settlement Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Settlement Agreement.  Any breach of this Settlement Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law.  Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without the requirement of posting a bond or other security.

35.   <u>Execution in Counterparts</u>.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.  Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

36.   <u>Integrated Agreement</u>.  This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous  undertakings,  communications,  representations,  understandings, negotiations, and discussions, either oral or written, between the Parties.  In entering into

this Settlement Agreement, the CIIPPs and Tyson have not relied upon any representation or promise made by the CIIPPs or Tyson that is not contained in this Settlement Agreement. The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

37.    <u>Voluntary Settlement</u>.  The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties and reflects a settlement that was reached through extensive arm's-length negotiations, with the assistance of Fouad Kurdi, mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

38.    <u>Confidentiality</u>.  The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation and are subject to the provisions of Federal Rule of Evidence 408.  The Parties may disclose to the public the fact of settlement and the settlement amount any time after the Execution Date.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the date first above written.

By: _____

**LARSON KING LLP**

Shawn M. Raiter
30 East Seventh Street, Suite 2800
St. Paul, MN 55101

By: _____

**AXINN, VELTROP & HARKRIDER LLP**

Tiffany Rider Rohrbaugh
Lindsey Strang Aberg

(651) 312-6518
sraiter@larsonking.com

**CUNEO GILBERT & LADUCA,
LLP**

Michael J. Flannery
Two City Place Drive, Second Floor
St. Louis, MO 63141
Telephone: (314) 226-1015
mflannery@cuneolaw.com

Evelyn Riley
Cody McCracken
Lissa Morgans
Cuneo Gilbert & Laduca, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
evelyn@cuneolaw.com
cmccracken@cuneolaw.com
lmorgans@cuneolaw.com

*Co-Lead Counsel for Commercial and
Institutional Indirect Purchaser
Plaintiffs*

1901 L Street NW
Washington, DC 20036
(202) 912-4700
trider@axinn.com
lstrang@axinn.com

Denise L. Plunkett
Victoria J. Lu
630 Fifth Avenue, 33rd Floor
New York, NY 10111
(212) 728-2200
dplunkett@axinn.com
vlu@axinn.com

Jarod Taylor
90 State House Square
Hartford, CT 06103
(860) 275-8109
jtaylor@axinn.com

**TAFT STETTINIUS & HOLLISTER
LLP**

Scott M. Rusert (#0231113)
A. Christopher Brown (#0403283)
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2210
(612) 977-8400
SRusert@taftlaw.com
CBrown@taftlaw.com

*Counsel for Tyson Foods, Inc., Tyson Fresh
Meats, Inc., and Tyson Prepared Foods,
Inc.*