# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION | Civil No. 18-1776 (JRT-JFD) |
| | Honorable John R. Tunheim |
| This Document Relates to: | |
| All Consumer Indirect Purchaser Actions | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION
SETTLEMENTS BETWEEN THE CONSUMER INDIRECT PURCHASER
PLAINTIFFS AND TRIUMPH FOODS, LLC AND AGRI STATS, INC.**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF LITIGATION.......................................................................... 2

III.  SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS ................................ 4

      A.    The Triumph Settlement Agreement ...................................................... 5

      B.    The Agri Stats Settlement Agreement .................................................... 5

IV.   THE SETTLEMENTS FALL WITHIN THE RANGE OF POSSIBLE
      APPROVAL ...................................................................................................... 10

      A.    The Settlements were reached in arms-length negotiations between
            experienced and capable counsel. ......................................................... 11

      B.    Consumer IPPs have had adequate opportunity to assess the merits
            of their claims and Agri Stats's and Triumph's defenses. .................... 13

      C.    The Settlements provide significant relief to the class. ........................ 14

V.    THE COURT HAS CERTIFIED A LITIGATION CLASS............................................ 15

VI.   REQUEST TO DEFER NOTICE........................................................................ 16

VII.  CONCLUSION............................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) ..................................................................................13

*In re Emp. Benefit Plans Sec. Litig.*,
1993 WL 330595 (D. Minn. June 2, 1993)..............................................................11

*Grier v. Chase Manhattan Auto Fin. Co.*,
2000 WL 175126 (E.D. Pa. Feb. 16, 2000) ............................................................10

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ..................................................................................10

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ................................................................................13

*In re Pork Antitrust Litig.*,
781 F. Supp. 3d 758 (D. Minn. 2025)........................................................................1

*White v. Nat'l Football League*,
822 F. Supp. 1389 (D. Minn.1993)..........................................................................10

*White v. Nat'l Football League*,
836 F. Supp. 1458 (D. Minn. 1993)..........................................................................10

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
2013 WL 716088 (D. Minn. Feb. 27, 2013) ...........................................................11

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

## I.    INTRODUCTION

After eight years, the Consumer Indirect Purchaser Plaintiff Class (Consumer IPPs) moves the Court for preliminary approval of their settlements with the final two defendants in this case, Triumph Foods, LLC (Triumph) and Agri Stats, Inc. (Agri Stats) (together and separately, "Settling Defendants"). The Triumph Settlement provides $4.1 million in monetary relief for the class, and the Agri Stats settlement provides for unprecedented conduct relief to the class. If granted preliminary, and then final, approval, the Consumer IPP litigation will reach its end.

With these last two settlements, this brings recovery to the Consumer IPP Class to $212,065,000 – a substantial amount of recovery by any measure. In addition, the conduct reform agreed to by Agri Stats substantially changes the scope of information sharing that would be permitted in the industry. Should Agri Stats resume its pork reports, Agri Stats has agreed to substantially reshape their form, including removing participant lists, stopping the sales reports altogether, aggregating critical plant-level fields and removing suspect fields altogether. Thus, the settlement puts a permanent end to the reports that this Court concluded were "the most suspicious" of Agri Stats's products.[1]

After nearly a decade of hard-fought litigation, there can be no question these settlements are non-collusive and the result of arms-length settlement negotiations conducted by sophisticated counsel. Each of the settlements fall within the range of possible final approval, and are fair, reasonable and adequate.

---

[1] *See In re Pork Antitrust Litig.*, 781 F. Supp. 3d 758, 839 (D. Minn. 2025).

- 1 -

Consumer IPPs are currently working on notices which will address all of the settlements in the Consumer IPP Class where notice is still required (namely, the settlements with Hormel, Seaboard, Tyson, and Clemens, in addition to these recent settlements with Triumph and Agri Stats). Plaintiffs request that notice be deferred at this time but intend to file a consolidated motion to direct notice shortly.

## II.    SUMMARY OF LITIGATION

This Court needs no general recounting of the history of this litigation. Consumer IPPs – the first to file a complaint against the pork industry – have been litigating this case for more than eight years. This Court is familiar with the allegations, having certified the consumer indirect purchaser class in March 2023 and ruled on the parties' summary judgment motions in March 2025. Consumer IPPs allege that the pork processors artificially controlled the price and supply of pork during the class period through the use of Agri Stats reports, the culling of herds, restraining slaughter and the use of exports. Scarlett Decl., ¶ 3.[2]

From the beginning of the litigation, Hagens Berman Sobol Shapiro LLP (Hagens Berman) and Gustafson Gluek PLLC (Gustafson Gluek) have acted as co-lead Counsel on behalf of the Consumer IPP Class. As co-lead Counsel, these two firms have spent thousands of hours pursuing the claims of the Class. During the course of discovery, Plaintiffs took nearly 100 depositions of Defendants' employees and their co-conspirators – many of which were led by the attorneys at Hagens Berman and Gustafson Gluek.

---

[2] "Scarlett Decl." refers to the Declaration of Shana E. Scarlett in Support of Plaintiffs' Motion for Preliminary Approval, filed concurrently herewith.

Plaintiffs have taken the depositions of 10 non-parties, many of which were also led by the Consumer IPP team. Defendants produced nearly 4 million documents that have been reviewed, catalogued, and distilled by attorneys representing the three classes. And the Consumer IPPs subpoenaed 79 non-parties for data and information relating to their claims and data to perform an analysis of the pass-through of overcharges to the Consumer IPP Class. *Id.*, ¶ 4.

Unlike many other civil antitrust actions, this case was developed and brought without the benefit of a formal antitrust investigation by the U.S. Department of Justice (DOJ) or the assistance of a leniency applicant under the DOJ's Corporate Leniency Program. Rather, Consumer IPPs identified the conspiracy through the use of investigators and economists, leading to the first complaint filed – the Consumer IPP complaint. *Id.*, ¶ 5.

After years of discovery, the Defendants brought 12 motions for summary judgment and a motion to exclude most of Plaintiffs' experts in the case. Co-lead counsel for the Consumer IPP Class took the lead drafting and arguing many of the oppositions to these motions. After the Court's ruling on summary judgment, Hagens Berman and Gustafson Gluek also took the lead opposing the Defendants' flurry of motions for reconsideration, motions for interlocutory appeal, and motion to recuse the Court. Until the date of settlement, the Parties had been preparing at breakneck speed for a trial in 2026. *Id.*, ¶ 6.

These settlements are the last for the Consumer IPP class in this long-running litigation. This Court previously granted final approval to the Consumer IPP settlements with JBS (Dkt. 1491) and Smithfield (Dkt. 1903). And this Court has granted preliminary approval to the Consumer IPP settlements with Hormel (Dkt. 2414), Seaboard (Dkt. 2453),

Clemens (Dkt. 3073), and Tyson (Dkt. 3193). In total, Consumer IPPs have recovered over

$212 million on behalf of class members:

| Defendant | Adjusted market shares for Consumer class products[3] | Consumer Settlements |
|---|---|---|
| Smithfield | 31.6% | $75,000,000 |
| JBS | 22.6% | $20,000,000 |
| Tyson | 19.9% | $85,000,000 |
| Seaboard | 7.9% | $10,000,000 |
| Triumph | 7.6% | $4,100,000 |
| Clemens | 5.8% | $13,500,000 |
| Hormel | 4.6% | $4,465,000 |
| Agri Stats | 0.0% | N/A |
| **TOTAL** | 100% | **$212,065,000** |

*Id.*, ¶ 7. Consumer IPPs will move for notice to be directed to the class for all remaining

settlements shortly.

## III.    SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

Consumer IPPs' most recent settlements with Triumph and Agri Stats are the

product of confidential, protracted, intense arm's-length negotiations and have resulted in

significant monetary relief and conduct reform for the class. The Triumph Settlement

Agreement was signed on March 3, 2026, and the Agri Stats Settlement Agreement was

executed on March 30, 2026. Scarlett Decl., Ex. A (Triumph Settlement); *id.*, Ex. B (Agri

Stats Settlement). Plaintiffs review the terms briefly below.

---

[3] The market share number takes the estimated market share for in-class products calculated by Dr. Singer in his merits reports, Table 4 (Dkt. 2464-3 at ¶ 76), and adjusts the market share of the defendant co-conspirators to 100 percent.

- 4 -

### A.    The Triumph Settlement Agreement

The Settlement Agreement provides that Triumph will pay $4,100,000 (four million, one hundred thousand U.S. dollars) into a settlement fund that will be used to compensate the Consumer IPP Class and cover litigation fees and expenses, including the cost of notifying Class Members and administering the settlement. *See* Scarlett Decl., ¶ 8; *id.*, Ex. A at ¶¶ 6, 10. The settlement does not have a reduction or termination provision and is non-reversionary. The settlement was reached after summary judgment was denied, but while Triumph's motion for reconsideration of the summary judgment order was pending. Lead counsel believes this sum is fair and reasonable in light of Triumph's market share of class products and the strength of evidence at any trial against Triumph. When the Triumph settlement was being negotiated, Consumer IPPs were preparing for a trial against their remaining defendant, Agri Stats. In the settlement agreement, Triumph agreed to cooperate at that trial, with the authentication and admission of up to 50 documents at the Consumer IPP trial. *Id.*, Ex. A at ¶ 3(b). At the time, this was valuable consideration for the class. Scarlett Decl., ¶ 8.

In consideration for these Settlements, Consumer IPPs agree to release certain claims (as defined in the Settlement Agreements) against Triumph which arise out of the facts of this case. Scarlett Decl., Ex. A at ¶ 14. This release does not extend to any other Defendants or Co-Conspirators, or to unrelated claims. *Id.*

### B.    The Agri Stats Settlement Agreement

Consumer IPPs and Agri Stats reached a settlement on March 30, 2026, which provides for significant conduct reform, which Consumer IPPs believe will have enormous

pro-consumer benefits in the pork market should Agri Stats choose to re-start selling pork reports. *See* Scarlett Decl. ¶ 10; *id.,* Ex. B. This unprecedented conduct reform includes the permanent cessation of the sales reports.

The Agri Stats settlement negotiations took place over the course of multiple months before the parties reached a resolution, although the parties had general settlement discussions over a period of years. There were many times along the way that the parties reached impasse, only to try again as the case progressed towards trial. The settlement was negotiated with the assistance of economists on the Consumer IPP team who are deeply familiar with the Agri Stats reports. Scarlett Decl. ¶¶ 10-11.

The Settlement provides for a significant amount of conduct reform that Consumer IPPs believe will address the concerns that motivated this lawsuit. Agri Stats has agreed to:

      a.      Retain an experienced outside attorney with responsibility for antitrust compliance.

      b.      Conduct annual employee antitrust compliance training;

      c.      Implement a written antitrust compliance policy and training:

          (i)      Prohibiting Agri Stats and its employees from disclosing to a competitor of a pork subscriber, orally or in writing (including through custom reports), any non-public information collected from a pork subscriber other than the anonymized information disclosed in Agri Stats' reports;

          (ii)      Prohibiting any Agri Stats pork report from containing actual competitor- or plant-level price or production volume data.

          (iii)      Implementing data security measures to prevent pork customer employees who transition from firm A to firm B from accessing firm A data.

(iv) Implementing data security measures to prevent Agri Stats employees who transition to a customer firm from accessing non-public or non-anonymized Agri Stats data.

(v) Prohibiting Agri Stats and its employees from assisting with identifying and/or de-anonymizing pork subscriber data in Agri Stats' reports;

(vi) Ensuring that all data values within all data fields in Agri Stats pork reports consist of data from at least three entities[4] with no entity representing more than 70% of the data, except for quartile data fields and plant-level data fields (that are not removed as set forth in Exhibit A, as discussed below);

(vii) Agri Stats will suppress any fields that have categorical values (for example a field that takes on values of YES and NO, or a plant shift field which lists the shifts a plant operates, or the breed processed at a particular plant) if any given value of that category has fewer than three firms. If, at any time, the number of plants increases or the number of firms that take on a particular value increases, the field no longer needs to be suppressed. Conversely if the number of plants decreases or the number of firms that take on a particular value decreases such that fewer than three firms take on a particular value, the field will be suppressed even if it had not been in the past;

(viii) Requiring that, other than data available for anyone to purchase as set forth below, every data field in Agri Stats pork reports shall be composed of data that is at least 45 days old on average;

d. Implement provisions protecting confidentiality of competitor data in Agri Stats pork customer contracts.

e. Remove all participant lists in pork reports.

f. Remove all flags in pork reports.

g. Remove in the pork reports made available to a report recipient all plant-level production-related data fields identified in Exhibit A for

---

[4] If the unit of the report is the plant, the 3- count rule should apply to plants; if the unit of the report is the firm, the 3-count rule should apply to firms.

pork subscribers other than the report recipient. Notwithstanding the foregoing, Agri Stats may provide to a subscriber a subscriber's rank and percentile for these data fields.

h.    Modify the pork reports as necessary to (1) delete variance fields and/or (2) suppress "linking" of data fields across reports that would otherwise disclose the plant-level data field identified in Exhibit A.

i.    Nothing in this Settlement Agreement prohibits or limits EMI's ability to provide nationwide average price data by product category for anyone (including consumers) to purchase.  Agri Stats also shall publish a pork performance report containing the production-related data fields identified in Exhibit B for anyone (including consumers) to purchase. Neither Agri Stats nor EMI may refuse a purchase of such reports on the basis that the purchaser is not a protein producer unless the persons or entities have unresolved claims pending against Agri Stats. The prices for such reports shall be no more than the average price being charged to Agri Stats' or EMI's regular customers as of the date of purchase. Except as set forth in this paragraph, nothing in this Settlement Agreement shall prohibit Agri Stats or EMI from adjusting or altering prices to any customer or adjusting other terms and conditions of purchase from time to time in its sole discretion. Such reports shall be made available without requiring the submission of data from subscribers, except that Agri Stats and EMI may continue to require processors to submit data.

j.    Agri Stats will not introduce any averages in any pork reports or subsections that do not comply with the 3 entity / 70% rule set forth above.

k.    Agri Stats will give class counsel two weeks' notice in the unforeseen event that pork reports resume.

l.    No non-public export data collected from a subscriber will be provided to any competitor other than the information disclosed in Agri Stats' regular pork reports.

m.    Agri Stats will provide no forward-looking industry forecasts to pork processors, including regarding how future industry production decisions might impact future prices or profitability. For the avoidance of doubt, nothing in the Settlement Agreement prohibits or limits EMI's ability to provide forward-looking industry forecasts based on publicly available data for anyone (including consumers) to purchase and EMI may not refuse such a purchase on the basis that

- 8 -

the purchaser is not a protein producer unless the persons or entities have unresolved claims pending against Agri Stats.

n.    In the unforeseen event that Agri Stats resumes publication of pork processing reports in the future, Agri Stats agrees that it will not re-add the plant-level data fields set forth in Exhibit A for subscribers other than the report recipient under a different numbering system, report, or mechanism for delivery to a report recipient. For the avoidance of doubt, nothing in the Settlement Agreement prohibits or limits 1) subscriber disclosure of data to Agri Stats or Agri Stats' addition of new reports or services, so long as such reports or services incorporate corresponding restrictions to those set forth herein; or 2) the renumbering and reordering of reports or data fields.

o.    Agri Stats will not disclose any non-public data collected from a pork subscriber to any competitor of the subscriber other than the anonymized information disclosed in Agri Stats' regular reports, including through electronic tools like the sales data miner, web application programming interfaces ["API"] services, or other web services provided by Agri Stats and/or its parents, subsidiaries, owners, or contractors. For the avoidance of doubt, nothing in the Settlement Agreement prohibits Agri Stats from providing pork reports to subscribers in different electronic formats, so long as the format complies with the other provisions of this Settlement Agreement.

p.    Agri Stats shall cease, and will not resume in the future, publication of any and all sales reports. Agri Stats shall cease, and will not resume in the future, publication of any and all price data for product categories that are not otherwise available to the public from EMI pursuant to paragraph i.

q.    With the exception of paragraph p., this conduct relief shall remain in effect for five years, starting from the unforeseen date that Agri Stats resumes the pork reports.

r.    Nothing in this Settlement Agreement shall be construed to prohibit Agri Stats from petitioning the Court for modification of the Conduct Relief for good cause shown.

s.    This Section sets out the total scope of Agri Stats' Conduct Relief agreed upon by the parties, and Agri Stats shall have no further obligations other than or beyond those set forth in this Section.

- 9 -

Scarlett Decl., Ex. B at ¶ 9.

In consideration for these Settlements, Consumer IPPs agree to release certain claims (as defined in the Settlement Agreements) against Agri Stats which arise out of the facts of this case. Scarlett Decl., Ex. B at ¶ 11. This release does not extend to any other Defendants or Co-Conspirators, or to unrelated claims. *Id.*

### IV.    THE SETTLEMENTS FALL WITHIN THE RANGE OF POSSIBLE APPROVAL

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."[5] However, courts must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In other words, a court must consider whether it "will likely be able to" approve the settlement as fair, reasonable, and adequate.[6]

Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery."[7] Given that these settlements were negotiated at arms-length between experienced counsel, and were negotiated after extensive litigation in this case, Consumer IPPs believe that these settlement agreements are fair, reasonable, and adequate and should be granted preliminary approval.

---

[5] *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn.1993).

[6] Fed. R. Civ. P. 23(e)(1)(B)(i); *see* Fed. R. Civ. P. 23(e)(2).

[7] *Grier v. Chase Manhattan Auto Fin. Co.*, No. A.99-180, 2000 WL175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993).

**A.      The Settlements were reached in arms-length negotiations between experienced and capable counsel.**

Courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement.[8] Here, there can be no doubt these negotiations were hard fought.

Settlement discussions between Consumer IPPs and Triumph began in June 2024. The parties discussed settlement many times over the ensuing 20 months, before the settlement agreement between Consumer IPPs and Triumph was finally executed on March 3, 2026. During these 20 months, the parties were also heavily litigating the case, including Triumph filing its summary judgment motion on June 7, 2024 (Dkt. 2284), Plaintiffs' opposition on August 26, 2024 (Dkt. 2502), a contested summary judgment hearing on December 12 and 13, 2024, and the Court's summary judgment order on March 31, 2025 (Dkt. 2929). After summary judgment, contentious litigation continued as Defendants collectively filed a flurry of motions for reconsideration, interlocutory appeal, recusal of the Court, and Triumph moved for reconsideration of the summary judgment order. Dkt. 2961, 2971, 2972, 2974, 2975, 2976, 2978, 2983, 3164. Settlement only finally happened

---

[8] *See, e.g., In re Emp. Benefit Plans Sec. Litig.*, Civ. No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (noting that "intensive and contentious negotiations likely result in meritorious settlements"); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's-length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters'") (citation omitted).

while the motion for reconsideration was fully submitted to the Court. At no time was there anything other than arms-length and hard-fought discussions between the parties. Scarlett Decl., ¶ 9.

As to Agri Stats, the settlement negotiations were no less fierce. In November 2024, Consumer IPPs and Agri Stats first spoke regarding possible resolution and conduct reform, with the parties initially at impasse. Discussions occurred throughout 2025 with many stops and starts regarding the precise contours of conduct reform. In spring of 2026, with a trial date in place, the parties finally had traction regarding the contours of the conduct reform and spent weeks negotiating the precise details. Consumer IPPs involved economists on their side to assist with terms and identification of the fields eventually found in Exhibit A and B to the agreement. The parties signed a final agreement on March 30, 2026. Throughout the settlement discussions, the same set of counsel were litigating the same summary judgment and post-summary judgment procedures as referenced above. The settlement was the product of arms-length negotiations and hard-fought discussions between the parties. *Id.*, ¶¶ 10-11.

Both sets of counsel – those representing the Consumer IPPs and those representing Triumph and Agri Stats – are experienced in antitrust matters. Defense counsel for Triumph and Agri Stats are some of the largest and most sophisticated defense firms in the country. Counsel for Consumer IPPs have decades of experience between them. Plaintiffs' counsel support and believe these settlements are in the best interests of the class. *Id.*, ¶ 12. The

- 12 -

judgment of the litigants and their counsel concerning the adequacy of the Settlement should therefore be considered.[9]

## B. Consumer IPPs have had adequate opportunity to assess the merits of their claims and Agri Stats's and Triumph's defenses.

There can be no question Consumer IPPs have had a chance to adequately assess the merits of their claims. Consumer IPPs filed this case in 2018 – eight years ago. But the investigation into this alleged conspiracy began months before the filing of the complaint, as Consumer IPP counsel engaged expert economists and case investigators. Attorneys combed public statements by Defendants, press releases, transcripts of investor calls, and filings with the Securities and Exchange Commission. Scarlett Decl., ¶ 13.

After the motions to dismiss were mostly denied in October 2020, discovery began in earnest. Plaintiffs deposed over 90 defense witnesses and 10 non-party witnesses, and many of these depositions were taken by counsel for the Consumer IPP Class. *Id.*, ¶ 14.

Defendants produced nearly 4 million pages of documents. And Consumer IPPs subpoenaed 79 non-parties for data and related information to enable an analysis of the pass-through of overcharges to the consumer class. The Court then certified the Consumer IPP Class in March 2023. Following class certification, Consumer IPPs prosecuted merits expert discovery and prevailed at summary judgment. The work behind this litigation has been significant. *Id.*, ¶ 15.

---

[9] *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

Access to this volume of information has given the Consumer IPPs sufficient understanding of the strengths and weaknesses of their claims and Agri Stats's and Triumph's defenses. Moreover, the significant settlement negotiations allowed co-lead counsel to assess the significant risk of non-payment by Agri-Stats and Triumph should Consumer IPPs have been successful at trial.  The Settlements should therefore be accorded a presumption of fairness.

**C.     The Settlements provide significant relief to the class.**

The settlements provide "adequate" relief for the class, in accordance with Fed. R. Civ. P. 23(e)(2)(C). Triumph is estimated to have a market share of 7.6 percent of the Defendants and Co-Conspirators' alleged overcharges to the class. Scarlett Decl., ¶ 7. The settlement of $4.1 million represents substantial relief to the class, considering the difficulty of prevailing at trial. As for Agri Stats, the conduct reform in the settlement agreement will correct information asymmetry in the market through the public availability of the reports, removes the anticompetitive pieces of the report (such as participant lists and rankings), removes plant level pricing and production volume information, and ceases the publication of sales reports. Scarlett Decl., Ex. B at ¶ 9. This is substantial conduct reform that will change the industry should Agri Stats reintroduce pork reports.

The proposed Settlement also "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). For Triumph, funds will be awarded based on the purchase of qualifying class products. Consumer IPPs will move quickly to propose notices and a plan for distribution to ensure the return of these funds to class members.

- 14 -

## V.    THE COURT HAS CERTIFIED A LITIGATION CLASS

This Court previously granted Consumer IPPs' motion for class certification and later corrected that Order. "If the court has certified a class prior to settlement, it does not need to re-certify it for settlement purposes."[10] There is no need for this Court to re-certify the Class for settlement purposes as the settlements propose the same Settlement Class that this Court already certified on March 29, 2023, defined as:

> All persons and entities who indirectly purchased raw pork bacon, or one or more of the following types of raw pork, whether fresh or frozen: bellies, loins, shoulder, ribs or pork chops from defendants or co-conspirators for personal consumption in the Repealer Jurisdictions[11] from June 28, 2014 to June 30, 2018. For this lawsuit, pork excludes any product that is marketed as organic, no-antibiotics ever (NAE) and any product other than bacon that is marinated, seasoned, flavored, or breaded.[12]

Dkt. 1887 at 7–8. As set out in the prior motion papers and at the class certification hearing before this Court, this Class satisfies all the requirements of Rule 23.

---

[10] 4 Newberg and Rubenstein on Class Actions, § 13:18 (6th ed.).

[11] The Consumer IPPs "Repealer Jurisdictions" are Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Carolina, Tennessee, Utah, and West Virginia. The class period for Kansas, Tennessee, and South Carolina class members begins June 28, 2015.

[12] Excluded from the Class are Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant; any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action; and any coconspirator identified in this action.

## VI.   REQUEST TO DEFER NOTICE

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Plaintiffs request that the Court agree to defer formal notice of the Settlement Agreements to the Class because each provision of notice to a class of this size costs hundreds of thousands of dollars. Accordingly, providing separate notice to the Class each time that Plaintiffs enter into a settlement with any of the non-settling Defendants will lead to inefficiencies and reduce the amount of funds available for distribution to the Class.

It is in the best interests of the Settlement Class to combine the notice of the Triumph and Agri Stats settlements with notices of settlements reached with other Defendants. Proceeding in this way creates attendant efficiencies and cost savings for the Class, resulting in more money from the settlements making it into the pockets of Class members.

Consumer IPPs are already in the process of working with claims administrators for a plan of notice and distribution that will be effective and efficient for the class.

## VII.   CONCLUSION

For these reasons, Consumer IPPs respectfully request that the Court preliminarily approve the Settlements with Triumph and Agri Stats.

DATED: March 31, 2026              Respectfully submitted,

                                   HAGENS BERMAN SOBOL SHAPIRO LLP


                                   By: */s/ Shana E. Scarlett*
                                         SHANA E. SCARLETT

                                   John M. Grant
                                   715 Hearst Avenue, Suite 300
                                   Berkeley, CA 94710
                                   Tel: (510) 725-3000
                                   shanas@hbsslaw.com
                                   john.grant@hbsslaw.com

                                   Steve W. Berman
                                   Breanna Van Engelen
                                   HAGENS BERMAN SOBOL SHAPIRO LLP
                                   1301 Second Avenue, Suite 2000
                                   Seattle, WA 98101
                                   Tel: (206) 623-7291
                                   steve@hbsslaw.com
                                   breannav@hbsslaw.com


                                   GUSTAFSON GLUEK PLLC


                                   By: */s/ Joshua J. Rissman*
                                         JOSHUA J. RISSMAN

                                   Daniel E. Gustafson (#202241)
                                   Daniel C. Hedlund (#258337)
                                   Michelle J. Looby (#388166)
                                   Joshua J. Rissman (#391500)
                                   120 South 6th Street, Suite 2600
                                   Minneapolis, MN 55402
                                   Telephone: (612) 333-8844
                                   Facsimile: (612) 339-6622
                                   dgustafson@gustafsongluek.com
                                   dhedlund@gustafsongluek.com
                                   mlooby@gustafsongluek.com
                                   jrissman@gustafsongluek.com

                                   *Co-Lead Counsel for Consumer IPP Class*


- 17 -